1  Mark C. Mao, CA Bar No. 236165
   Sean P. Rodriguez, CA Bar No. 262437
2  Beko Reblitz-Richardson, CA Bar No. 238027
   **BOIES SCHILLER FLEXNER LLP**
3  44 Montgomery St., 41st Floor
   San Francisco, CA 94104
4  Tel.: (415) 293-6800
   mmao@bsfllp.com
5  srodriguez@bsfllp.com
   brichardson@bsfllp.com
6
7  James Lee (admitted *pro hac vice*)
   Rossana Baeza (admitted *pro hac vice*)
8  **BOIES SCHILLER FLEXNER LLP**
9  100 SE 2nd St., 28th Floor
   Miami, FL 33131
10 Tel.: (305) 539-8400
   jlee@bsfllp.com
11 rbaeza@bsfllp.com
12
   Amanda K. Bonn, CA Bar No. 270891
13 **SUSMAN GODFREY L.L.P**
   1900 Avenue of the Stars, Suite 1400
14 Los Angeles, CA 90067
   Tel: (310) 789-3100
15 Fax: (310) 789-3150
16 abonn@susmangodfrey.com

William Christopher Carmody
(admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram (admitted *pro hac vice*)
Ra O. Amen (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com
ramen@forthepeople.com

17 *Attorneys for Plaintiffs*

18 **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

19

20 CHASOM BROWN, MARIA NGUYEN,
   WILLIAM BYATT, JEREMY DAVIS, and
21 CHRISTOPHER CASTILLO, individually
   and on behalf of all other similarly situated,

22         Plaintiffs,

23
   vs.
24
   GOOGLE LLC,
25
          Defendant.
26

Case No.:  5:20-cv-03664-LHK

**PLAINTIFFS' OPPOSITION TO**
**GOOGLE'S MOTION TO DISMISS THE**
**FIRST AMENDED COMPLAINT**

The Honorable Lucy H. Koh
Courtroom 8 – 4th Floor
Date: February 25, 2021
Time: 1:30 p.m.

27

28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

    I.      INTRODUCTION ............................................................................................. 1

    II.     FACTUAL BACKGROUND ........................................................................... 3

          A.    Plaintiffs Never Consented to Google's Interception ................................ 3

          B.    Google Did Not Obtain the Websites' Consent, Either .............................. 4

          C.    Google Now Admits It Intercepts Private Browsing Communications ........................................................................................... 4

          D.    Google Associates the Private Browsing Data with Preexisting User Profiles and Sells It to Advertisers for Hundreds of Millions of Dollars ............................................................................... 5

ARGUMENT .......................................................................................................................... 5

    I.      Plaintiffs State a Claim Under the Wiretap Act ...................................... 5

          A.    Google's Consent Defense Is Meritless ................................................. 6

               1.    Plaintiffs Did Not Consent ........................................................ 6

               2.    Websites Did Not Consent ...................................................... 10

          B.    Consent Is Irrelevant Because Google Intercepted the Private Browsing Communications with the Intent to Commit a Criminal or Tortious Act .......................................................................... 12

               1.    The FTC Consent Decree ......................................................... 13

               2.    The California Consumer Privacy Act ("CCPA") ....................... 13

               3.    The Comprehensive Computer Data Access and Fraud Act ("CDAFA") ................................................................. 14

               4.    Intrusion Upon Plaintiffs' Seclusion and Constitutional Right to Privacy ...................................................... 14

          C.    The "Ordinary Course of Business" Exception Does Not Apply ............. 15

    II.     Plaintiffs State Claims Under the California Invasion of Privacy Act ................. 16

    III.    Plaintiffs State a Claim Under the CDAFA ......................................................... 18

i

IV.    Plaintiffs State Constitutional and Common Law Privacy Claims ........................20

       A.    Plaintiffs Had a Reasonable Expectation of Privacy ................................20

       B.    Google's Conduct Was "Highly Offensive" ...............................................22

V.    Plaintiffs' Claims Are Timely ........................................................................24

VI.    CONCLUSION ........................................................................................25

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) (Koh, J.)..............................................................24, 25

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) (Koh,
J.) ...................................................................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................................5

*Belluomini v. Citigroup, Inc.*,
No. CV 13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ...............................22

*Bliss v. CoreCivic, Inc.*,
No. 19-16167, 2020 WL 6279679 (9th Cir. Oct. 27, 2020) .............................................3, 24

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) (Koh, J.) ....................................................................19

*Cain v. State Farm Mutual Auto. Ins. Co.*,
62 Cal. App. 3d 310 (1976) ........................................................................................................25

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..............................................................................6, 10

*In re Carrier IQ*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)......................................................................................19

*Cover v. Windsor Surry Co.*,
No. 14-CV-05262-WHO, 2015 WL 4396215 (N.D. Cal. July 17, 2015) ...............................25

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ...........................................................................................*passim*

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019).......................................................................................8

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ......................................18

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002)........................................................................................................16, 17

iii

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986, 992, 125 (2011)................................................................22

*Gonzales v. Uber Technologies, Inc.*,
    305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018)........................................................22

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020)............................................................23, 24

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3rd Cir. 2015)...............................................................21, 23, 24

*In re Google Inc. ("Gmail")*,
    No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh,
    J.) .................................................................................................*passim*

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014)..............................................................22, 23

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
    No. CV1803019SJOJPRX, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018)..............................13

*Henry Schein, Inc. v. Cook*,
    2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ......................................................19, 20

*In re iPhone Application Litigation*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) (Koh, J.)......................................................22

*Kight v. CashCall, Inc.*,
    200 Cal. App. 4th 1377 (2011) ......................................................................17

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ..................................25

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) (Koh, J.)......................................................22

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ....................................................................5, 21

*Matera v. Google Inc. ("Gmail II")*,
    No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) (Koh,
    J.) ...............................................................................................6, 10, 16

*In re Maxim Integrated Prod., Inc.*,
    No. 12-244, 2013 WL 12141373 (W.D. Pa. Mar. 19, 2013)..........................................14

*Mirkarimi v. Nevada Prop. 1 LLC*,
    No. 12CV2160-BTM-DHB, 2013 WL 3761530 (S.D. Cal. July 15, 2013)....................16, 17

iv

*Moreno v. San Francisco Bay Area Rapid Transit District*,
 No. 17-CV-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017).................................22

*In re Nickelodeon Cons. Priv. Litig.*,
 827 F.3d 262 (3d Cir. 2016) ...................................................................................21, 23, 24

*O'Shea v. Cty. of San Diego*,
 No. 19-CV-1243-BAS-BLM, 2020 WL 2767357 (S.D. Cal. May 28, 2020) ........................25

*Opperman v. Path, Inc.*,
 205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...............................................................................20

*People v. Nakai*,
 183 Cal. App. 4th 499 (2010) ...............................................................................................17

*Perkins v. LinkedIn Corp.*,
 53 F. Supp. 3d 1190 (N.D. Cal. 2014) (Koh, J.).....................................................................8

*In re Pharmatrak, Inc.*,
 329 F.3d 9 (1st Cir. 2003) ................................................................................................6, 10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
 214 F. Supp. 3d 808 (N.D. Cal. 2016)..................................................................................15

*Plumlee v. Pfizer, Inc.*,
 No. 13-CV-00414-LHK, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) .................................25

*Quan v. Smithkline Beecham Corp.*,
 149 F. App'x 668 (9th Cir. 2005)..........................................................................................25

*Revitch v. New Moosejaw, LLC*,
 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................................................17, 18

*S.D. v. Hytto Ltd.*,
 No. 18-CV-00688-JSW, 2019 WL 8333519 (N.D. Cal. May 15, 2019)................................16

*Saling v. Royal*,
 No. 2:13-CV-1039-TLN-EFB, 2015 WL 5255367 (E.D. Cal. Sept. 9, 2015) ......................25

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
 313 F. Supp. 3d 1056 (N.D. Cal. 2018).................................................................................19

*United States v. Christensen*,
 828 F.3d 763 (9th Cir. 2015) .....................................................................................2, 19, 20

*In re Vizio, Inc., Consumer Privacy Litig.*,
 238 F. Supp. 3d 1204 (C.D. Cal. 2017).................................................................................24

*Watkins v. L.M. Berry & Co.*,
    704 F.2d 577 (11th Cir. 1983) ....................................................................................... 10, 12

*Wilson v. City of Oakland*,
    No. C-11-05377 DMR, 2012 WL 669527 (N.D. Cal. Feb. 29, 2012) ................................... 25

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) (Koh, J.) ................................................................. 6, 22

*Yunker v. Pandora Media, Inc.*,
    No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ............................... 22

**Statutes**

18 U.S.C. § 2511(2)(d) ................................................................................................ 2, 6, 12, 15

18 U.S.C. § 2520(e) ............................................................................................................... 24

Cal. Civ. Code § 1798.100(b) .................................................................................................. 14

Cal. Civ. Code § 1798.140(o)(1) .............................................................................................. 14

Cal. Civ. Code § 1798.155 ....................................................................................................... 14

Cal. Civ. Proc. Code § 335.1 .................................................................................................... 25

Cal. Civ. Proc. Code § 340(c) .................................................................................................. 25

Cal. Penal Code § 502(c)(2) ............................................................................................. 14, 18, 20

Cal. Penal Code § 502(e)(5) .................................................................................................... 24

Cal. Penal Code § 631(a) .................................................................................................... 16, 24

Cal. Penal Code § 632(a) .................................................................................................. 2, 16, 24

vi

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

This case arises out of Google's surreptitious interception and collection of data from users who had set their web browser to a "private browsing" mode, including Google's "Incognito" mode.  Google never disclosed that it would intercept and collect data from users who were in private browsing mode.  Rather, Google explicitly promised that users were in control and had the power to stop Google's data collection by using private browsing mode.  Those Google promises were (and still are) false.  Google's Motion ("MTD") confirms, as alleged, that Google intercepts and collects data from its users' private browsing communications.  In its effort to evade liability, Google now admits that its promises of consumer privacy and control are, and always have been, a ruse.  The truth is that users are powerless to stop Google's data collection.

Google's contention that Plaintiffs consented to Google's interception of their private browsing communications is simply false.  Plaintiffs did not consent, and they could not have consented since Google concealed what Google was doing.  FAC ¶¶ 1, 4, 85, 191, 214.  Google repeatedly (and falsely) assured Plaintiffs that they were "in control of what information you share with Google," across all of Google's services, and that they could "browse the web privately" without Google "linking any activity to you."  FAC ¶¶ 42, 146.  Google never once disclosed that it would intercept Plaintiffs' communications while Plaintiffs were in private browsing mode.  FAC ¶¶ 1-4, 42-43.  One cannot consent to what one does not know.

Google's contention that *websites* gave consent is equally false.  Google never disclosed to websites that Google would intercept users' private browsing communications, and websites never consented to these interceptions.  FAC ¶¶ 75-77, 83, 215.  Instead, Google represented to websites that it would adhere to Google's own privacy policies, including Google's assurances that Google would not collect data from users in "private browsing" mode.  FAC ¶¶ 76, 83.  Google only recently (after the filing of this lawsuit) launched a "Consent Mode (Beta)" to address this consent issue.  FAC ¶¶ 73, 140.  Websites have not consented to Google's interception of private browsing communications.  FAC ¶¶ 77, 83.

Consent is also no defense to Plaintiffs' Wiretap Act claim because Google intercepted the private browsing communications for the purpose of violating four other laws. *See* 18 U.S.C. § 2511(2)(d) (consent is not a defense if the "communication is intercepted for the purpose of committing any criminal or tortious act"). Google intercepted Plaintiffs' private communications for the purpose of associating data from those private communications with users' preexisting profiles, further enriching those profiles, and then using those enhanced profiles to generate advertising revenues for Google across multiple websites. FAC ¶¶ 91-93, 104, 108, 113-15. Those subsequent acts by Google constituted independent violations of law. FAC ¶¶ 154-65.

Google's remaining defenses to Plaintiffs' Wiretap Act and California Invasion of Privacy ("CIPA") claims also fail. The "ordinary course of business" exception to the Wiretap Act would only apply "if the alleged interceptions were an instrumental part of the transmission" of the private browsing communications. *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *8 (N.D. Cal. Sept. 26, 2013) (Koh, J.) [hereinafter *Gmail*]. Here, Google's interception of Plaintiffs' private browsing communications was *not* an "instrumental part of the transmission" of those communications—on the contrary, Google's surreptitious interception had no bearing on Plaintiffs' communications with the websites. FAC ¶ 213. And Google's argument that the communications (which Google affirmatively promised would be private) are not "confidential" under CIPA § 632 rests on a misunderstanding of California law and is contrary to the facts alleged.

Plaintiffs have also stated a claim under the Comprehensive Computer Data Access and Fraud Act ("CDAFA"). The Ninth Circuit has rejected the "circumvention" requirement Google attempts to read into the CDAFA. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). Even applying that requirement, Plaintiffs' allegations would still be sufficient. Google's "terms of use" defense gets it backwards: Courts decline to hold *users* liable under the CDAFA for exceeding the scope of a website's terms of use. Those authorities have nothing to do with this case, where Google has acted contrary to *its own* privacy policies.

Plaintiffs have also properly alleged constitutional and common law privacy claims. Plaintiffs had a reasonable expectation of privacy, both because of the "sensitive" nature of their

2

private browsing communications *and* because of the "surreptitious and unseen" nature of Google's interception. *Davis v. Facebook, Inc.*, 956 F.3d 589, 602-04 (9th Cir. 2020). Google's "surreptitious data collection" also amounts to highly offensive conduct. *Id.* at 606. Google responds by raising a factual dispute as to whether it correlates private browsing data with individual users, which is contrary to Plaintiffs' allegations (FAC ¶¶ 92-108, 115) and cannot be resolved on a motion to dismiss. In any event, even if Google were correct about this (it's not), Plaintiffs would still have stated claims because Google "set an expectation that [private browsing] data would not be collected, but then collected it anyway." *Davis*, 956 F.3d at 602.

Finally, Plaintiffs' claims are timely. "[E]ach interception is a discrete violation" that triggers its own statute of limitations. *Bliss v. CoreCivic, Inc.*, No. 19-16167, 2020 WL 6279679, at *3-4 (9th Cir. Oct. 27, 2020). Any applicable statutes of limitations were also tolled because Google's false and misleading statements prevented Plaintiffs from discovering the truth.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs Never Consented to Google's Interception

People care deeply about retaining control over their browsing data. FAC ¶¶ 60, 162. This is particularly important for users' private browsing data, which often reveals sexual interests, political views, and other sensitive, private information. FAC ¶ 162. Recognizing consumers' concerns and expectations of privacy, Google repeatedly and uniformly assured users that they were "in control of what information [they] share with Google" and that users could adjust their privacy settings "across [Google's] services" to "control what [Google] collect[s] and how [their] information is used." FAC ¶¶ 2, 42. To exercise this "control" across Google's services, users were specifically invited by Google to "browse the web privately" by selecting a private browsing mode, including Google Incognito mode and equivalent features on other browsers. FAC ¶ 42. These private browsing modes, according to Google, "let[] you browse the web without linking any activity to you." FAC ¶ 146. When users selected Google's Incognito mode, in Google's Chrome browser, they were automatically taken to a Google pop-up disclosure screen that further assured them that "Chrome won't save . . . your browsing history." FAC ¶ 52. Instead, the

3

1    disclosure stated that only three entities, *excluding Google*, "might" be privy to private browsing

2    activity.  *Id.*  With no disclosure of Google's interception, and relying on Google's representations,

3    Plaintiffs reasonably believed that Google would not keep a record of, or make a use of, their

4    private browsing data.  FAC ¶¶ 3, 41-43, 53, 168, 173, 178, 188, 214.  Accordingly, Plaintiffs

5    could not have consented to Google's interception of their private browsing communications.

6    FAC ¶¶ 1, 3, 41-43, 85, 191, 214.

7         **B.    Google Did Not Obtain the Websites' Consent, Either**

8         Google never obtained consent from websites for its interception of users' private browsing

9    communications.  FAC ¶¶ 75, 83.  To utilize certain Google services, Google requires websites to

10   embed Google's custom code into their existing code, which are then sent to users' browsers to

11   generate secret, duplicated messages that are sent to Google's servers.  FAC ¶¶ 67-68, 78-79.  But

12   Google never disclosed to websites that Google intercepts and collects data from private browsing.

13   FAC ¶¶ 73-77.  To the contrary, Google assured websites that Google would adhere to its own

14   privacy policies—which include the very same privacy assurances to users that they could "control

15   what [Google] collect[s] and how [their] information is used" across Google's services, by entering

16   "private browsing" mode.  FAC ¶¶ 2, 42, 76, 83.  Only after the filing of this lawsuit did Google

17   launch a new "Consent Mode (Beta)" feature, which is (Google claims) intended to assist websites

18   to identify whether a particular user has consented to its use of Google Analytics and other Google

19   services.  FAC ¶¶ 73, 140.

20        **C.    Google Now Admits It Intercepts Private Browsing Communications**

21        Without providing any notice to users or obtaining consent, Google's software scripts

22   (pieces of Google code embedded within websites that use Google for analytics and advertising

23   services) secretly cause users' browsers to send copies of their private browsing communications

24   to Google's servers in California.  FAC ¶ 5.  When a user visits a webpage, the user's browser

25   sends a GET request to the website, which tells the website precisely what content the user is

26   asking the website to display, as well as a referrer header containing the URL information of what

27   the user has been viewing and requesting from other websites.  FAC ¶¶ 5, 63.  Google's embedded

28

                                          4

code within websites also causes the user's browser to send a duplicate copy of that GET request, along with other browsing information, to Google's servers.  FAC ¶¶ 63, 65.  Google's duplication and receipt of the user-website GET Request occurs in addition to but concurrent with the transmission of the GET request from the user's browser to the website.  FAC ¶ 64.  Google now admits it intercepts and collects data from these private browsing communications.  MTD at 1-2.

**D.      Google Associates the Private Browsing Data with Preexisting User Profiles and Sells It to Advertisers for Hundreds of Millions of Dollars**

Google maintains "profiles" on its users—collections of information regarding the users' attributes and online history—which Google uses to generate advertising revenues and for other purposes.  FAC ¶¶ 89-93, 113-23.  After intercepting a user's private browsing communications, Google sets out to identify the user so that it can package the data with the "profile" Google maintains on the user.  FAC ¶¶ 89-116.  Google profits from the private browsing data it collects because this data enriches Google's profiles on users, which means that Google can charge advertisers and websites more for its services.   FAC ¶¶ 115-16.  Google also profits because the data improves Google's own algorithms and technology.  FAC ¶ 115.

## ARGUMENT

A motion to dismiss must be denied if the complaint "state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## I.      Plaintiffs State a Claim Under the Wiretap Act

As alleged and now admitted by Google, Google intercepts private browsing communications.  FAC ¶¶ 202-17; MTD at 1-2.  Google's primary defense is its meritless contention that Plaintiffs and the websites consented to that interception.  MTD at 9.

5

**A.      Google's Consent Defense Is Meritless**

As in prior cases before this Court, Google has not met its burden of establishing consent. As "'the party seeking the benefit of the exception,' it is Google's burden to prove consent." *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (Koh, J.) [hereinafter *Gmail II*] (citation omitted).  There is only consent when the disclosure gives users notice of the "specific practice" at issue.  *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847-48 (N.D. Cal. 2014).   Here, Google cannot meet its burden because Google never disclosed its interception of private browsing communications.  On the contrary, the uniform disclosures that Google cites repeatedly assured users that Google would *not* intercept communications from users in "private browsing" mode.  None of the cherry-picked documents submitted by Google provide any support for Google's consent defense.[1]

1.      <u>Plaintiffs Did Not Consent</u>

Google's principal argument is that Plaintiffs consented by agreeing to Google's Privacy Policy, which provides that Google "collect[s] information about your activity in our services, . . . includ[ing] . . . [a]ctivity on third-party sites and apps that use our services."  MTD at 5; Ex.[2] 1 at 3 (Google Privacy Policy).[3]

However, that provision never mentions private browsing, and it in no way discloses Google's interception of private browsing communications.  As detailed in the FAC, Google's Privacy Policy states that private browsing mode (including Incognito mode) prevents Google from collecting the data it typically collects by way of the services it provides to websites:

---

[1] Google's Motion ignores that "consent is usually a question of fact, where a fact-finder needs to interpret the express terms of any agreements to determine whether these agreements adequately notify individuals regarding the interceptions."  *Gmail II*, 2016 WL 5339806, at *17.  Moreover, "consent under § 2511(2)(d) is 'not an all-or-nothing proposition.'"  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (Koh, J.) (quoting *Gmail*, 2013 WL 5423918, at *12).  Rather, "a party may consent to the interception of . . . only a subset of its communications." *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003).

[2] Exhibit 1 is attached to the concurrently filed declaration of Amanda Bonn.

[3] Google references an earlier version of the Privacy Policy in its brief but admits that "subsequent versions" [including the one attached here as Ex. 1] "contained identical or substantively identical disclosures."  MTD at 6 n.6.

6

- "[A]cross **our services**, you can adjust your privacy settings to **control what we collect** and how your information is used."
- "You can use **our services** in a variety of ways to manage your privacy.  For example, . . . [y]ou can [] choose to browse the web privately using Chrome in Incognito mode."
- "**Our services** include . . . [p]roducts that are integrated into third-party apps and sites, like ads . . . ."

FAC ¶ 42; Ex. 1 at 1 (emphases added).  Google's Privacy Policy thus promises users that they can "control what [Google] collect[s]" "across [Google's] services," including services Google provides to websites.  Google invites users to exercise that control by choosing to browse privately.  A reasonable user would understand that using a private browsing mode prevents Google from collecting the data it typically collects from third-party websites.  FAC ¶¶ 3, 41-43, 53.

Other uniform Google disclosures similarly demonstrate a lack of consent, promising that users can "control" what information Google collects by choosing to browse privately:

- "You're in control of what information you share with Google when you search. **To browse the web privately, you can use private** browsing . . . ."

FAC ¶ 42.  With its promise of "control" and invitation to browse privately, Google assures users that they can "control" the information they "share with Google" by "us[ing] private browsing."  Without disclosing its interception and instead promising privacy, users reasonably understood that Google would not intercept private browsing communications.  FAC ¶¶ 3, 41-43, 53.

And if there were any doubt (there wasn't), Google's Incognito Screen—a uniform, pop-up disclosure generated when users enter the "private browsing" mode of Google's own Chrome browser—assures users that only three entities, *not including Google*, might view user's activity:

- "Chrome won't save . . . [y]our browsing history [and] [c]ookies and site data."
- "Your activity might still be visible to: the websites you visit, your employer or school, or your internet service provider."

FAC ¶ 52.  Google also made numerous statements throughout the Class Period reiterating that it would not view private browsing communications.  *See* FAC ¶¶ 42, 146 (listing numerous promises).[4]  Nothing in Google's Privacy Policy, or in any other Google disclosure, informed users

---

[4] *E.g.*, FAC ¶ 42 ("When you have incognito mode turned on in your settings, your search and browsing history will not be saved."); *id.* ¶ 146 (describing "Incognito mode" as "the popular feature in Chrome that lets you browse the web without linking any activity to you").

7

1    that Google would continue to intercept, collect, and use their data even when the users entered

2    "private browsing" mode.  FAC ¶¶ 44-59.

3           It is axiomatic that one cannot consent to what one does not know.  Google turns this axiom

4    on its head by claiming users somehow consented to a practice Google never disclosed.  This Court

5    already rejected a version of this argument in *Gmail*.  2013 WL 5423918, at *13-14.  In that case,

6    users alleged that Google illegally intercepted emails to and from Gmail users, and then used those

7    emails to create user profiles and to send targeted advertising.  This Court rejected Google's

8    consent defense, reasoning that "[n]othing in the [Privacy] Policies suggests that Google intercepts

9    email communication in transit between users."  *Id.*  Instead, the policies "obscure[d] Google's

10   intent to engage in such interceptions" by "explicitly stat[ing] that Google collects 'user

11   communications . . . *to Google.*'"  *Id.* at *14.

12          At least as much obfuscation, by Google, is present here as in *Gmail*.  In this case, Google's

13   Privacy Policy "obscure[d] Google's intent," *id.*, by stating that users could "control what we

14   collect" and "browse privately" by placing their browsers in "private browsing" mode.  FAC ¶ 42.

15   Google's Incognito Screen similarly "obscure[d] Google's intent" by telling users that "*websites*"

16   "might" see Plaintiffs' communications, omitting that Google's embedded code within those

17   websites would also intercept and redirect the communications *to Google*.  *See also In re*

18   *Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019)

19   (rejecting consent defense because consent was not the "only plausible interpretation").[5]

20          Google's argument otherwise depends on cutting and pasting together snippets from two

21   *separate documents*, to pretend both documents were presented to users at once.  They were not.

22   Google supplements the Incognito Screen with an additional webpage attached to its motion

23   (Exhibit 19) in an effort to make it appear as if the Incognito Screen disclosed more than it truly

24   did.  In its motion, Google writes: "[The Incognito Screen] made clear that . . . 'your activity might

---

[5] Users also have no ability to opt out. FAC ¶ 66; *cf. Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) (Koh, J.) (deeming the plaintiffs to have consented to the conduct at issue in light of their "ability to opt out," and distinguishing *Gmail*, in which "users who sought to use Gmail could not opt out of the allegedly unlawful conduct").

8

1    still be visible to' inter alia, 'Websites you visit, *including the ads and resources on those sites*.'"

2    MTD at 10.  But the italicized words in Google's MTD are *not* part of the Incognito Screen at the

3    point of collection.  Instead, those words come from Exhibit 19—a printout from some other

4    webpage that Google attached to its Motion.  Google's Request for Judicial Notice, ECF No. 84,

5    does not tell the Court how Plaintiffs would have accessed Exhibit 19, nor the time period when

6    Exhibit 19 would have been accessible.

7        In any event, Exhibit 19 does not establish consent either.  In Exhibit 19, Google never

8    discloses that "Google" is one of the "ads and resources on" websites that might be privy to private

9    browsing communications.  In fact, Exhibit 19 makes no reference to Google at all.  The references

10   in Exhibit 19, to "ads and resources on" websites, cannot possibly be understood as telling users

11   that *Google itself* will intercept, collect, and use every single GET request communication by the

12   user to these websites—in addition to other browser information.

13       Equally unavailing is Google's suggestion that it told users that private browsing mode

14   would *only* conceal their browsing activity from other household members.  MTD at 4.  Google's

15   statements were not so limited.  This family-privacy aspect of private browsing is irrelevant.  A

16   user can seek privacy from both their family and from Google—these are not mutually exclusive.

17   The Incognito Screen promises as much, explaining that "Now, you can browse privately, *and

18   other people who use this device won't see your activity*" while never mentioning that Google

19   itself will continue to intercept communications.  FAC ¶ 52 (emphasis added).

20       Finally, Google's repeated focus on the fact that Incognito mode does not share a browser's

21   existing cookies with websites during private browsing sessions is simply irrelevant—Google

22   appears to be litigating some other case entirely.  MTD at 6-8 & n.7.  Plaintiffs do *not* allege that

23   Google intercepts their private browsing communications through Google cookies.  Instead,

24   *Plaintiffs allege that hidden code, embedded within websites that use Google for analytics and*

25   *advertising services, surreptitiously caused Plaintiffs' browsers to transmit copies of Plaintiffs'*

26   *communications and other browsing history to Google's servers.*  FAC ¶¶ 5, 63-65.

27

28                                         9

1    Google's consent defense is contrary to this Court's decisions regarding what constitutes

2    consent.   If credited, Google's arguments would destroy consumers' reasonable privacy

3    expectations.  Furthermore, Google's consent defense is belied by the numerous cited disclosures,

4    each of which represented that private browsing kept users' activity hidden from Google.  FAC ¶¶

5    42, 146 (listing statements).  If Google continues to intercept communications even while users

6    have enabled private browsing mode, as it now brazenly admits, then what "control" do users have

7    to prevent such interceptions?  Google has no answer.  Given what Google has said (and not said)

8    about its interception of private browsing communications, Google's recycled consent defense,

9    which this Court already rejected in *Gmail*, should be rejected once more.

10                   2.    <u>Websites Did Not Consent</u>

11    Nor did the recipients of users' private browsing communications (the websites) consent

12   to Google's interception.  Here, again, "it is Google's burden to prove consent."  *Gmail II*, 2016

13   WL 5339806, at *17.  "Consent . . . is not to be cavalierly implied" as doing so would "thwart"

14   the Wiretap Act's "strong purpose to protect individual privacy by strictly limiting the occasions

15   on which interception may lawfully take place."  *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581

16   (11th Cir. 1983).  This Court has accordingly "cautioned that implied consent applies only in a

17   narrow set of cases."  *Gmail*, 2013 WL 5423918, at *12 (citing *Watkins*, 704 F.2d at 581.).  Google

18   cannot meet its burden to show any consent by websites.

19    Google's principal contention is that websites must have consented because they allowed

20   Google's custom code to be embedded on their websites.  MTD at 11.  Google's choice of wording

21   is again telling: it argues that the websites impliedly consented to "Google's receipt of the Data

22   *generally*."  MTD at 12.  But implied consent, like express consent, "is not an all-or-nothing

23   proposition."  *Gmail*, 2013 WL 5423918, at *12.  "[A] party may consent to the interception of

24   only part of a communication or to the interception of only a subset of its communications." *Id.*

25   (citing *In re Pharmatrak*, 329 F.3d 9, 19 (1st Cir. 2003)).  Here, there is no such consent.  *See also*

26   *Campbell*, 77. F. Supp. 3d at 847-48 (rejecting implied consent defense because the defendant did

27   not establish "consent to the specific practice" being challenged).

28

1    As a threshold matter, Google misrepresents the technical process by which Google

2 receives copies of the user-website GET requests.  Contrary to Google's description, the embedded

3 Google code does not transmit the data from the websites to Google.  Instead, similar to *Davis*,

4 Google's embedded code secretly causes the *user's browser*, not the websites, to send an additional

5 message to Google's servers containing the duplicated GET request.  FAC ¶¶ 5, 63; 956 F.3d at

6 608 (describing identical process).  The websites are not directly part of the transmission between

7 the user's browser to Google's server, and therefore the websites could not have consented to that

8 communication. That would be akin to a person (the websites) consenting to a stranger (Google)

9 breaking into another person's home (the user) to listen in on an unauthorized conversation.  No

10 lawful consent exists to such circumstances.

11    In any event, the websites' act of allowing Google to embed Google's code does not

12 address the "critical question," which is whether the websites "had adequate notice of the

13 interception" at issue.  *Gmail*, 2013 WL 5423918, at *12.  Google provided no such notice to the

14 websites *when users enabled private browsing mode*.  FAC ¶¶ 75-76, 83.  To the contrary, Google

15 assured websites that Google would always adhere to its own privacy policies, including its

16 promise to allow users to "adjust your privacy settings to control what we collect and how your

17 information is used" and the opportunity "to browse the web privately."  FAC ¶¶ 42, 76, 83.  The

18 only thing websites consented to was permitting their users to exercise the very privacy controls

19 Google promised, which Google now claims should be construed as meaningless.[6]

20    Google speculates that the websites must have known that Google had the capability of

21 intercepting the websites' communications with Plaintiffs.  MTD at 12.  But Google's capabilities

22 are beside the point—websites would not have expected Google to contravene its own privacy

23 policies, even if Google had the capability to do so.  Regardless, a website's general awareness of

24 Google's capability is also "insufficient to establish implied consent."  *Gmail*, 2013 WL 5423918,

25 at *12.  Google does not identify any occasion where it actually informed any website that it would

26
27 ───────────────────────────

[6] Google's cited cases on this point are inapposite, decided years before private browsing mode even existed.  MTD at 11-12 (citing *In re Doubleclick Inc. Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001); *Chance v. Ave. A*, 165 F. Supp. 2d 1153 (W.D. Wash. 2001)).

28
                                             11

1  intercept private browsing communications, and inferring consent would "thwart" the Wiretap

2  Act's "strong purpose to protect individual privacy."  *Watkins*, 704 F.2d at 582.

3       Google also contends that "[n]othing in [its] disclosures regarding Analytics states or

4  suggests that a user's browser mode affects Analytics' receipt of the Data."  MTD at 12 (citing

5  Exs. 21–23, 26).  But any such omission from Google's disclosures actually supports Plaintiffs'

6  argument, not Google's: the purported disclosures did ***not*** inform the websites that visitors in

7  private browsing mode would continue to have their communications intercepted, contrary to

8  Google's other representations to users and websites.  *See* FAC ¶¶ 75-76, 83.

9       Finally, Google claims that it is "implausible" for Plaintiffs to allege that websites expected

10 Google to refrain from intercepting "private browsing" communications.  MTD at 12.  Not so.  In

11 fact, Google represents to websites that they ***must*** receive consent from their users in order for

12 those users to be tracked through Google Analytics.  *See, e.g.*, MTD Ex. 23 at 1.  It is therefore

13 entirely *plausible* that websites would believe that Google would honor its visitors' use of "private

14 browsing" by not intercepting those visitors' communications with the website. Google's actions

15 speak much louder than its brief.  After this lawsuit was filed, Google began testing a "Consent

16 Mode" to help websites distinguish between sessions where the website has indeed received user

17 consent to Google Analytics and other Google services.  FAC ¶ 73.

   **B.      Consent Is Irrelevant Because Google Intercepted the Private Browsing
18           Communications with the Intent to Commit a Criminal or Tortious Act**

19      Google's motion should in any case be denied as to the Wiretap Act claim because of the

20 unlawful-purpose exception to the consent defense.   Consent is *not* a defense where the

21 "communication is intercepted for the purpose of committing any criminal or tortious act in

22 violation of the Constitution or laws of the United States or of any State."  18 U.S.C. § 2511(2)(d).

23 As detailed in the FAC, that unlawful-purpose exception applies here.  FAC ¶¶ 154-65.

24      Here, Google's "purpose" was to associate data from the intercepted private browsing

25 communications with preexisting user profiles, enriching those profiles; to sell these profiles to

26 advertisers; and to send targeted advertisements, based on the intercepted communications.  FAC

27

28

_____

1    ¶¶ 91, 93, 115, 160-64.  These subsequent acts by Google all occurred *after* Google's initial

2    interception, constituting violations of other laws.  FAC ¶¶ 154-65, 233.  Google does *not* dispute

3    that a post-interception violation of these laws would qualify for the unlawful-purpose exception.

4    Instead, Google disputes the facts:  Google contends that it does not correlate private browsing

5    communications with individual users (MTD at 19-20).  Those contentions are contrary to

6    Plaintiffs' allegations (FAC ¶¶ 92-112) and cannot be resolved on a motion to dismiss.

7                          1.     The FTC Consent Decree

8          In 2010, the FTC charged Google with violating its privacy promises, and Section 5 of the

9    Federal Trade Commission Act ("FTCA"), in connection with the launch of its social network,

10   Google Buzz.  FAC ¶ 25.  The FTC and Google entered into a consent decree (the "FTC Consent

11   Decree") which ordered Google to obtain "express affirmative consent" from each user "prior to

12   any new or additional sharing" of that user's information that is "a change from stated sharing

13   practices in effect at the time [Google] collected such information."  FAC ¶¶ 25-26, 158.

14         When Google collected data from users in private browsing mode, Google intended to (and

15   later did) share that data with third parties, including advertising customers, in a manner that

16   violated the FTC's Decree.  FAC ¶¶ 159-60.  That sharing was a subsequent act by Google

17   (occurring *after* the interception) which violated the Decree because it contradicted Google's

18   "stated sharing practices" without first obtaining users' "express affirmative consent." *Id.*

19         These violations of the FTC Consent Decree, which occurred after the interceptions, trigger

20   the "criminal or tortious act" exception to the consent defense.  *Cf. Hameed-Bolden v. Forever 21*

21   *Retail, Inc.*, No. CV1803019SJOJPRX, 2018 WL 6802818, at *8 (C.D. Cal. Oct. 1, 2018) (holding

22   that a claim for "unlawful" business practices under the UCL can be predicated on an FTCA

23   violation); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at

24   *33 (N.D. Cal. May 27, 2016) (Koh, J.) (addressing a UCL claim predicated on a FTCA violation).

25                         2.     The California Consumer Privacy Act ("CCPA")

26         Google's subsequent use of the intercepted communications also violated the CCPA, which

27   similarly protects Plaintiffs' browsing data.  The CCPA required Google to disclose its data

28
                                                13

1    collection "at or before the point of collection" and forbade Google from "us[ing] personal

2    information collected for additional purposes without providing the user with notice consistent

3    with this section."  Cal. Civ. Code § 1798.100(b).  "Personal information" includes private

4    browsing communications.  Cal. Civ. Code § 1798.140(o)(1).  Here, Google intercepted the private

5    browsing communications with the intent to (and later did) "use" the data "for additional purposes

6    without providing the consumer with notice." FAC ¶¶ 52, 156-57.  Google associated the data with

7    users' preexisting profiles, enriching those profiles; sold it to advertisers; and used the data to

8    direct targeted advertisements, based on the data, to Plaintiffs and their devices.  FAC ¶¶ 91, 93,

9    115, 160-64.  This violation of the CCPA is a tortious act.  *See* Cal. Civ. Code § 1798.155.

10            3.    The Comprehensive Computer Data Access and Fraud Act ("CDAFA")

11           The CDAFA makes it a "public offense" to "[k]nowingly access[] and *without permission*

12   take[], cop[y], or *make[ ] use of* any data from a computer, computer system, or computer network."

13   Cal. Penal Code § 502(c)(2) (emphasis added); *see id.* § (d)(1) (violation of (c)(2) is a felony).

14   Google's copying (interception) of Plaintiffs' private browsing communications and scraping for

15   other browser information, in and of itself, violated this statute.  *See infra* Section III.  Moreover,

16   Google's *subsequent* use of the communications constituted additional, independent violations of

17   the CDAFA.  Google "ma[d]e use of [the] data" in a manner for which it lacked permission,

18   namely: associating the data with users' preexisting profiles; selling it to advertisers; and using it

19   to direct targeted advertisements, based on the data, to Plaintiffs and their devices.  FAC ¶¶ 91, 93,

20   115, 160-64.  Google's subsequent "use" of the data, in violation of the CDAFA, satisfies Section

21   2511(2)(d)'s unlawful-purpose exception.  *See In re Maxim Integrated Prod., Inc.*, No. 12-244,

22   2013 WL 12141373, at *15 (W.D. Pa. Mar. 19, 2013) (holding that a violation of the Computer

23   Fraud and Abuse Act "is sufficient to satisfy the requirements of the crime-tort exception").

24            4.    Intrusion Upon Plaintiffs' Seclusion and Constitutional Right to Privacy

25           Google's subsequent use of Plaintiffs' private browsing communications also constituted

26   separate and independent torts in the form of intrusion upon seclusion and a violation of Plaintiffs'

27   constitutional right to privacy.  *See infra* Section IV.  "[S]ubsequent disclosure of the contents of

28

14

the intercepted conversations for the alleged purpose of *further* invading the [Plaintiffs'] privacy" is a tortious act that satisfies the Section 2511(2)(d) unlawful-purpose exception. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016). Plaintiffs' private browsing activity may reveal their sexual interests, dating preferences and political or religious views, among other types of "sensitive" information and "habits" they desire to keep private. FAC ¶ 162; *Davis*, 956 F.3d at 604. Google further intrudes upon Plaintiffs' right to privacy when it sells this information to advertisers and uses the information to send targeted advertisements to Plaintiffs and to Plaintiffs' devices. FAC ¶¶ 115, 163-64.

**C.     The "Ordinary Course of Business" Exception Does Not Apply**

Google's final defense to Plaintiffs' Wiretap Act claim is the "ordinary course of business" exception. MTD at 13. That exception does not apply for two independent reasons. *First*, Plaintiffs allege that Google's conduct violated Google's own privacy policies and disclosures. FAC ¶¶ 42-59. Those violations are dispositive: The fact "that Google violated Google's own agreements and internal policies with regard to privacy . . . preclude[s] application of the ordinary course of business exception." *Gmail*, 2013 WL 5423918, at *8.

*Second*, Google has not carried its burden of showing that its interception of users' communications "facilitates the transmission of the communication at issue" or is "an instrumental part of the transmission." *Gmail*, 2013 WL 5423918, at *8. Plaintiffs allege that Google's interception neither "facilitates" nor is an "instrumental part of" the transmission from the user's computer to the website. FAC ¶¶ 63-66. Rather, Google's code causes the user's computer to generate an additional duplicated and enriched transmission, scraped from the user's computer to Google's servers. *Id.* That additional transmission is neither "part of" nor "instrumental" to the communication between the user's computer and the website. *Id.*

Rather than even attempt to meet the narrow confines of this exception, Google contends that the "underlying service" Google is providing is not the communication between the user and the website, but rather Google's provision of analytics to websites, and that Google's interception facilitates *that other* analytics service. MTD at 13. But if Google's wholesale reinterpretation of

15

the ordinary-course-of-business exception were adopted, then this exception would swallow the rule.  Nearly every interceptor of communications will be able to claim that the interception was useful to facilitate some *other*, unrelated service that the interceptor wished to provide to someone. That is why this Court, in *Gmail*, rejected Google's proposed reinterpretation of the ordinary-course-of-business exception.  2013 WL 5423918, at *9 ("Congress did not intend to allow electronic communication service providers unlimited leeway to engage in any interception that would benefit their business models, as Google contends.").[7]

## II.   Plaintiffs State Claims Under the California Invasion of Privacy Act

Google's interception of Plaintiffs' private browsing communications also violated sections 631 and 632 of the California Invasion of Privacy Act ("CIPA").  FAC ¶¶ 218-29.  Here again, Google's principal defense is that Plaintiffs and the websites consented to Google's interceptions.  CIPA requires that *all* parties consent.  *Gmail II*, 2016 WL 5339806, at *16; Cal. Penal Code §§ 631(a), 632(a).  As explained above, Google cannot prevail on the consent argument, because no parties consented.  Other than the "consent" argument, Google offers no other basis to dismiss Plaintiffs' Section 631 claim.  *See* MTD at 14.

As to Plaintiffs' Section 632 claim, Google contends that Plaintiffs' communications do not qualify as "confidential" for purposes of Section 632(a).  MTD at 14.  A communication qualifies as "confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002).  The test for "confidential" does *not* require the plaintiff to show an "additional belief that the information would not be divulged [by the defendant] at a later time to third parties."  *Mirkarimi v. Nevada Prop. 1 LLC*, No. 12CV2160-BTM-DHB, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013).  The plaintiff only needs to show a reasonable "expectation that the conversation was not being simultaneously disseminated to an unannounced

---

[7] *See also S.D. v. Hytto Ltd.*, No. 18-CV-00688-JSW, 2019 WL 8333519, at *9 (N.D. Cal. May 15, 2019) (holding that the ordinary-course-of-business exception must be construed "narrowly" and rejecting the defendant's reliance on the exception because the defendant "failed to explain why it would be difficult or impossible to provide its service without the objected-to-interception").

1   second observer," when the communication occurred.  *Id.*; *see also Kight v. CashCall, Inc.*, 200

2   Cal. App. 4th 1377, 1397 (2011) ("[T]hat plaintiffs may have known the information discussed in

3   their phone calls would be disclosed to other [of defendant's] employees does not mean the

4   plaintiffs had no reasonable expectation that their telephone conversation[s] were not being

5   secretly overheard.").

6       Here, Plaintiffs have alleged that the communications were "confidential."  Plaintiffs allege

7   that they expected that their private browsing communications were not being overheard by

8   Google.  FAC ¶¶ 61, 214, 227; *Flanagan*, 27 Cal. 4th at 776; *Mirkarimi*, 2013 WL 3761530, at *2.

9   Those expectations were reasonable because Google never disclosed its interception and instead

10  promised privacy.  *See, e.g.*, FAC ¶ 42 ("[A]cross our services, you can adjust your privacy settings

11  to control what we collect and how your information is used.").  And users would have certainly

12  expected to be confidential the additional information that Google also scrapes from the browser.

13      Google contends that "California appeals courts have generally found that Internet-based

14  communications are not 'confidential' within the meaning of section 632," but Google cites just

15  one California state court decision:  *People v. Nakai*, 183 Cal. App. 4th 499 (2010).  In *Nakai*, the

16  communications at issue were "chat" messages sent through Yahoo.  *Nakai* does not control here

17  because Yahoo's privacy policy stated Yahoo could "archive" and "save" these chat messages. *Id.*

18  at 518.  Here, Plaintiffs pled the opposite:  Google's disclosures told its users that their private

19  browsing communications were private and would "not be saved" by Google.  FAC ¶ 42.

20      The federal cases Google cites are likewise inapposite.  Most of them did not even consider

21  web browser communications.[8]  Only one of Google's federal authorities, the *New Moosejaw*

22  decision, addressed web browser communications.  *Revitch v. New Moosejaw, LLC*, 2019 WL

23  5485330 (N.D. Cal. Oct. 23, 2019).  In *New Moosejaw*, the website at issue was in the business of

24  selling clothing to consumers.  The communications at issue were requests (clicks) from the

25  browser to view details about various items of clothing.  *Id.* at *1.  The *New Moosejaw* court held

---

[8] All of Google's cases here lead back to *Nakai*, which turned on the fact that Yahoo's chat service could "archive" and "save" any messages.  This case involves the opposite representation, namely that Plaintiffs' private browsing was private.  FAC ¶ 42.

28                                              17

that "these particular internet communications" were not "confidential." *Id.* at *3. Here, by contrast to *New Moosejaw*, Plaintiffs have alleged that Google intercepted their communications with thousands of different websites—including dating websites, political websites, and many other highly sensitive and confidential websites, while private browsing mode was enabled. FAC ¶ 162. The reasoning from *New Moosejaw* does not apply.

### III.     Plaintiffs State a Claim Under the CDAFA

Plaintiffs allege that Google violated the CDAFA (FAC ¶¶ 230-38), which creates civil liability for anyone who "[k]nowingly access[es] and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2). Plaintiffs detail how Google acted without permission, including by creating "hidden" software code that "sends secret instructions back to the user's browser, without alerting the user" and "render[ing] ineffective any barriers users may wish to use to prevent access to their information, including by browsing in Incognito mode." FAC ¶¶ 5, 65-66.

*First*, Google's "consent" arguments (MTD at 16-17) fail for the reasons explained above.

*Second*, Google's "term of use" arguments (MTD at 16) are irrelevant. Citing *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010), Google argues that there can be no CDAFA liability where a defendant just "violated a contractual term of use." MTD at 16. This argument is irrelevant, because Plaintiffs' CDAFA claim is not based on a violation of a "terms of use" document. Instead, Plaintiffs allege that Google acted "without permission" by secretly and without notice taking and using their data. *Power Ventures* provides no basis for Google's motion.[9]

*Third*, Google's contention that there must be some "circumvention" of a "technical or code-based barrier" (MTD at 16) is incorrect. In 2015, the Ninth Circuit clarified that, unlike the Computer Fraud and Abuse Act, the CDAFA "does not require *unauthorized* access. It merely

---

[9] The *Power Ventures* reasoning is based on constitutional concerns that do not apply here, where notice could hinge solely on compliance with a website's terms of use such that the website owner could define the scope of criminal liability. 2010 WL 3291750, at *11-12. Google cannot complain that it lacked notice or is being subject to liability based on its own terms of use.

requires *knowing* access."  *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (emphasis in original).  The "term 'access' as defined in the [CDAFA] includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly."  *Id.*  Citing *Christensen*, numerous courts have rejected Google's contention and ruled that circumvention is *not* required.  *See, e.g.*, *Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017).

*Fourth*, even were the Court to apply some circumvention requirement, contrary to *Christensen*, Plaintiffs' factual allegations are sufficient.  Google secretly embedded software code that caused Plaintiffs' browsers to send Google a secret copy of the user-website GET request, and additional data scraped from the browser, rendering ineffective Plaintiffs' efforts to prevent access to their information by initiating a private browsing mode.  FAC ¶¶ 5, 65-66.  That is sufficient to state a CDAFA claim.  *In re Carrier IQ*, 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015) (denying motion to dismiss CDAFA claim where plaintiffs alleged that "hidden" software transmitted data without notice or any way to stop the functionality); *see also Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1073-74 (N.D. Cal. 2018) (denying motion to dismiss CDAFA counterclaim where defendants alleged "hidden" software exceeded authorized use).

*Fifth*, Google's reliance on *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) (Koh, J.) is misplaced.  There, the plaintiffs asserted both CFAA and CDAFA claims, and the plaintiffs did not cite (and the Court therefore did not reference) the Ninth Circuit's *Christensen* decision.  *Id.* at 131 (citing pre-*Christensen* case law suggesting elements of CFAA and CDAFA claims "do not differ materially") (citation omitted).  The Court found that that the plaintiffs' "boilerplate" allegations were insufficient, because their assertion that Apple acted without permission was just a "legal conclusion" unsupported by factual allegations.  *Id.* at 123, 132.  Here, by contrast, Plaintiffs include detailed factual allegations establishing that Google acted without permission.  FAC ¶¶ 41-66, 73-77, 84-88, 148-50, 168-70, 173-75, 178-80, 183-85.

*Sixth*, even setting aside whether Google had permission to access Plaintiffs' private browsing data (Google did not), Google's argument would still fail because the CDAFA also

19

1    forbids Google's "use" of that data without permission.  Cal. Penal Code § 502(c)(2) (liability both

2    for "takes" and "makes use"); *Christensen*, 828 F.3d at 789 ("[CDAFA's] focus is on unauthorized

3    taking or use of information.").  Here, Plaintiffs did not give their permission for Google to

4    associate the private browsing data with individual user profiles, to sell it to third parties, or to use

5    it to send targeted advertisements to Plaintiffs and Plaintiffs' devices.  FAC ¶¶ 91, 93, 115, 157-

6    64, 232-34.  These "use" allegations are separate and independent violations of the CDAFA. *See*

7    *Cook*, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017) ("[S]ubsequently misusing the information

8    obtained constitutes a section 502 violation.").

9    **IV.    Plaintiffs State Constitutional and Common Law Privacy Claims**

10          Plaintiffs have also stated claims for intrusion upon seclusion and invasion of privacy.

11   FAC ¶¶ 239-66.  "Because of the similarity of the tests, courts consider the[se] claims together and

12   ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly

13   offensive."  *Davis*, 956 F.3d at 601.  Plaintiffs have met both elements.[10]

14          **A.    Plaintiffs Had a Reasonable Expectation of Privacy**

15          Plaintiffs have alleged a reasonable expectation of privacy, both because of the highly

16   sensitive nature of their private browsing communications *and* because Google led them to believe

17   that it would not intercept these communications.  FAC ¶¶ 3-4, 41-43, 53, 146, 162, 233.

18          Plaintiffs' allegations are consistent with and sufficient under the Ninth Circuit's *Davis*

19   decision.  *Davis* addressed the same kind of web-browsing communications at issue in this case—

20   GET requests sent from a user's browser to the website, telling the website what content to display.

21   956 F.3d at 607; FAC ¶¶ 63, 208.  Like Google, Facebook received copies of the GET requests

22   users sent to third-party websites.  956 F.3d at 607; FAC ¶ 63.  Like Google, Facebook obtained

23   these copies because Facebook's embedded code caused the users' browsers to generate copies of

24   the  user-website  GET  requests  and  transmit  them  to  Facebook  "through  a  separate,  but

25

26   ──────────────────────
     [10] Google's consent defense also fails in connection with these claims.  *See supra* Section I.A;
27   *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1074 (N.D. Cal. 2016) (denying summary judgment
     on basis that jury could find that privacy policy provisions "do not explicitly address—and thus
     do not obtain knowing consent for–" the challenge practices).

28                                                        20
     ──────────────────────────────────────────────────────────────────

1    simultaneous, channel in a manner undetectable by the user."  956 F.3d at 596, 608; FAC ¶¶ 64,

2    213.  Like Google, Facebook "compile[d] these browsing histories into personal profiles which

3    are sold to advertisers to generate revenue."  956 F.3d at 596; FAC ¶¶ 91-112, 115, 160-64.  Like

4    Google, Facebook first "set an expectation" with its users that this data would not be collected

5    under certain circumstances (when users logged off Facebook), "but then collected it anyway."

6    956 F.3d at 602; FAC ¶¶ 3-4, 41-43.

7         The Ninth Circuit held that the plaintiffs had a reasonable expectation of privacy in their

8    browsing communications, explaining: "the allegations that Facebook allegedly compiled highly

9    personalized profiles from sensitive browsing histories and habits prevent us from concluding that

10   the Plaintiffs have no reasonable expectation of privacy."  956 F.3d at 604.  The plaintiffs' privacy

11   expectation was also reasonable because of Facebook's "allegedly surreptitious and unseen"

12   method of collecting the GET requests—a method that is very similar to Google's practices at

13   issue in this case.  *Id.* at 603.  Google has likewise "compiled highly personalized profiles from

14   sensitive browsing histories and habits" after "set[ting] an expectation" that this data would not be

15   collected during private browsing sessions.  *Id.* at 602, 604.  That is abundantly sufficient.  *See

16   also In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 293-95 (3d Cir. 2016) (holding, under

17   analogous New Jersey law, that users had a reasonable expectation of privacy when Viacom

18   promised that it would not collect information but then did); *In re Google Inc. Cookie Placement

19   Consumer Privacy Litig.*, 806 F.3d 125, 151 (3rd Cir. 2015) (holding, under California law, that

20   users had a reasonable expectation of privacy in their browsing histories).

21        Google's contention that Plaintiffs have only "conclusorily" alleged that Google associates

22   the data with users' Google profiles (MTD at 19) is meritless.  Plaintiffs include detailed

23   allegations regarding that association with profiles (FAC ¶¶ 89-112), and discovery is required to

24   resolve this factual dispute.  *See Manzarek*, 519 F.3d at 1031.  In any event, Plaintiffs' expectation

25   of privacy was reasonable regardless of whether Google subsequently associated the intercepted

26   data with users' profiles.  Under *Davis*, "the critical fact was that the online entity represented to

27   the plaintiffs that their information would not be collected, but then proceeded to collect it

28

21

anyway." 956 F.3d at 603.  Indeed, Plaintiffs' expectation of privacy was even higher here than in *Davis*, in which the plaintiffs used a normal (non-private) browsing mode and were merely attempting to shield their browsing activity from Facebook.  956 F.3d at 602-03.  Here, *all* of the intercepted communications were sensitive, as shown by Plaintiffs' decision to enable private browsing mode.  Users enable "private browsing" in order to shield their dating activity, sexual interests, or political or religious views, among other sensitive information.  FAC ¶ 162.

Finally, in light of *Davis*, Google does not (and cannot) cite any authority to support its contention that "web browsing data that is not associated with a particular user or their device after the session is closed, cannot support [a] privacy claim[]."  MTD at 20-21.  Each case Google cites for this proposition came before *Davis* and is also factually inapposite.[11]

## B.   Google's Conduct Was "Highly Offensive"

Plaintiffs have also alleged facts establishing that Google's conduct was "highly offensive," particularly insofar as it collected extremely personal information after users enabled

---

[11] *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) (Koh, J.) only rejected the claim that plaintiffs had a reasonable expectation of privacy in the "limited information" LinkedIn collected, "a user's browsing history among LinkedIn profiles." *Id.* at 1025, 1030. The data here concerns private communications far beyond browsing a single website's professional profiles. *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (Koh, J.) dismissed the Wiretap Act Claim because the intercepted data was not the "content" of any communication; it was "information about the identities of parties to a communication." *Id.* at 1061.  The GET requests at issue in this case contain far more "content," including specific content displayed by the website. *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 974-75 (N.D. Cal. 2014), involved an amendment of Google's privacy policy, which is inapposite here.  *Moreno v. San Francisco Bay Area Rapid Transit District,* No. 17-CV-02911-JSC, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) turned on the fact that the plaintiff was "on notice that [the defendant] would be accessing the information." Here, Plaintiffs allege just the opposite.  *In re Yahoo Mail Litigation*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (Koh, J.) held plaintiffs' allegations were "conclusory" and "merely allege[d] that [their] emails were 'private.'"  *Id.*  Here, the communications were private because *private* browsing mode was enabled.  FAC ¶ 162.

The four cases Google cites in footnote 16 (MTD at 22) are even further afield.  In *Yunker v. Pandora Media, Inc.* the plaintiff failed to even allege that the defendant intercepted the communications at issue.  No. 11-CV-03113 JSW, 2013 WL 1282980, at *7 (N.D. Cal. Mar. 26, 2013).  *Gonzales v. Uber Technologies, Inc.* concerned Lyft drivers' geolocation data, which is automatically shared with prospective riders.  305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018). *Belluomini v. Citigroup, Inc.* rejected a claim that a bank violated the account holder's right to privacy merely by giving the account holder's contact information to a third-party.  No. CV 13-01743 CRB, 2013 WL 3855589, at *7 (N.D. Cal. July 24, 2013).  And *Folgelstrom v. Lamps Plus, Inc.* rejected a claim that a retailer invaded the plaintiff's right to privacy by asking for his zip code during credit card transactions. 195 Cal. App. 4th 986, 992, 125 (2011).

---

1    private browsing and "using duplicitous tactics." *In re Nickelodeon*, 827 F.3d at 295.  Google's

2    arguments are the same arguments that the Ninth Circuit rejected in *Davis*, 956 F.3d at 606, and

3    they should likewise be rejected in this case.  Google's "surreptitious" interception targets private

4    browsing of thousands of different websites, including dating websites, political websites, and

5    myriad highly sensitive websites. *Davis*, 956 F.3d at 606; FAC ¶ 162.  A user enables private

6    browsing mode to prevent others, including both family and Google, from finding out that he or

7    she is viewing these kinds of sites and the specific content therein. FAC ¶¶ 3, 41-42, 162.  Google

8    touted private browsing mode as a safe space to do all these things but then intercepted Plaintiffs'

9    private-browsing communications anyway, and thereafter used that data to profile and target users.

10   FAC ¶¶ 1-4, 41-42, 91, 93, 115, 160-64; *see Davis*, 956 F.3d at 606 (holding that "allegations of

11   surreptitious data collection" suffice for highly offensive conduct).  Again, Google's conduct is

12   even more offensive than the conduct in *Davis*, where the plaintiffs were not using a private

13   browsing mode.  The fact that Google employees recognized that Google's privacy disclosures are

14   a "mess" (FAC ¶ 36) also suggests the conduct is highly offensive.  *See Davis*, 956 F.3d at 606.

15         Google contends that its conduct cannot be "highly offensive" because its "routine"

16   interceptions of Plaintiffs' private browsing communications "served a legitimate commercial

17   purpose." MTD at 22.  But none of the cases cited by Google, applying the (purported) "legitimate

18   commercial purpose" standard, involved *private* browsing communications.[12]   The Third Circuit

19   (applying California law) has already rejected Google's argument, and held that the "routine"

20   nature of interceptions is an irrelevant "smokescreen."  *In re Google Inc. Cookie*, 806 F.3d at 150.

21   "[U]sers are entitled to deny consent, and they are entitled to rely on the public promises of the

---

[12]*In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 817, 830 (N.D. Cal. 2020) found that the plaintiffs did not have a reasonable expectation of privacy for communications mistakenly picked up by Google Assistant. Here, Google intentionally "picked up private [browsing] communications." *Id.* at 817.  Google's reliance on *In re Nickelodeon*, 827 F.3d at 294 is also misplaced.  The court distinguished Google's conduct in that case from Viacom's, because Viacom "created an expectation of privacy on its websites" by promising users that it would not collect children's data. *Id.* at 292.  *In re Google, Inc. Privacy Policy*, 58 F. Supp. 3d at 981 is inapposite. The plaintiffs' complaint was that Google changed its privacy policy after the plaintiffs had already purchased Android devices in reliance on the old privacy policy.  Here, by contrast, Plaintiffs allege that Google has violated its current Privacy Policy, not an old one.

1   companies they deal with." *Id* at 151.  As in *Davis*, Plaintiffs' allegations of "surreptitious" data

2   collection are sufficient.  956 F.3d at 606.[13]

3   **V.      Plaintiffs' Claims Are Timely**

4           Each wrongful interception of data, and each subsequent use of that data, is a separate

5   violation that has its own statute of limitations.  For Wiretap Act claims, which require plaintiffs

6   to bring an action within two years after the claimant "first has a reasonable opportunity to discover

7   the *violation*," the Ninth Circuit recently clarified that "each interception is a discrete *violation*."

8   *Bliss v. CoreCivic, Inc.*, No. 19-16167, 2020 WL 6279679, at *3-4 (9th Cir. Oct. 27, 2020)

9   (emphasis added) (citing 18 U.S.C. § 2520(e)).  The same logic applies to Plaintiffs' CIPA claims,

10  which likewise refer to "'communication' in the singular." *Id.* at *3; Cal. Penal Code § 631(a)

11  (proscribing the unauthorized interception of "any message, report, or communication"); *id.* §

12  632(a) (proscribing the interception of a "confidential communication").  Similarly, CDAFA's

13  statute of limitations is pegged to "the date of the *act* complained of, or the date of the discovery

14  of the damage, whichever is later." Cal. Penal Code § 502(e)(5) (emphasis added).  The same rule

15  should apply for Plaintiffs' intrusion upon seclusion and constitutional claims.  Accordingly,

16  Plaintiffs have stated claims for all of Google's conduct that occurred, at the very least, during the

17  statute-of-limitations period prior to the filing of the original Complaint.

18          In any event, the statutes of limitations have been tolled under: (1) the fraudulent

19  concealment doctrine; and (2) the delayed discovery doctrine.  "[A] statute of limitations may be

20  tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that

21  the plaintiff, acting as a reasonable person, did not know of its existence." *In re Animation Workers*

22  *Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015) (Koh, J.) (citation omitted).  This is

23  what Plaintiffs allege happened here.  FAC ¶¶ 42, 52, 146 (listing numerous false statements by

24  _____

25  [13] *See also Nickelodeon*, 827 F.3d at 292 ("Viacom created an expectation of privacy on its websites and then obtained the plaintiffs' personal information under false pretenses."); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("[R]outine data collection

26  practices may be highly offensive if a defendant disregards consumers' privacy choices while simultaneously holding itself out as respecting them."); *In re Google Assistant*, 457 F. Supp. 3d at

27  830 (noting that "courts have repeatedly found the surreptitious recording of a plaintiff's conversations or activity to constitute an actionable intrusion").

28

1  Google concerning private browsing, including the dates, speakers, and contents).  At a minimum,

2  these were "misleading partial disclosures," tolling the statutes of limitations.  *In re Animation*

3  *Workers*, 123 F. Supp. 3d at 1203.  "The fact-intensive nature of fraudulent concealment makes

4  disposition of that issue 'generally inappropriate' on the pleadings." *In re Lithium Ion Batteries*

5  *Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014).

6         For similar reasons, the statutes of limitations were also tolled under the delayed discovery

7  doctrine.  "In California, the discovery rule postpones accrual of a claim until the plaintiff

8  discovers, or has reason to discover, the cause of action."  *Cover v. Windsor Surry Co.*, No. 14-

9  CV-05262-WHO, 2015 WL 4396215, at *4 (N.D. Cal. July 17, 2015) (citation omitted).  Google

10 criticizes Plaintiffs for failing to ask Google directly whether it was intercepting their private

11 browsing communications.  MTD at 24.  That argument "puts the cart before the horse, however,

12 as Plaintiffs were not obligated to investigate their claims *until* Plaintiffs had reason to suspect the

13 existence of their claims."  *In re Animation Workers*, 123 F. Supp. 3d at 1204.  The two 2018

14 articles cited in the FAC are not "evidence" of the particular misconduct at issue here because they

15 do not suggest that Google was intercepting communications from users in private browsing mode

16 (nor does Google claim otherwise).  MTD at 24 (citing FAC ¶¶ 106, 109).  Google's reliance on

17 *Plumlee v. Pfizer, Inc.*, is therefore misplaced.  *See* No. 13-CV-00414-LHK, 2014 WL 695024, at

18 *8 (N.D. Cal. Feb. 21, 2014) (Koh, J.).  Finally, the limitations periods for the CIPA, constitutional,

19 and common law privacy claims are two years, not one.  *See* Cal. Civ. Proc. Code § 335.1.[14]

20 **VI.    CONCLUSION**

21        For the foregoing reasons, this Court should deny Google's Motion to Dismiss.  If this

22 Court disagrees, any dismissal should be without prejudice and with leave to amend.

23 ─────────────────
[14] The cases Google cites can all be traced back to *Cain v. State Farm Mutual Auto. Ins. Co.*, 62
24 Cal. App. 3d 310 (1976), which held that privacy claims are governed by the one-year statute of
   limitations for personal injury actions.  The statute was codified at § 340(c).  In 2003, that provision
25 was moved to § 335.1 and the limitations period was extended to two years.  Courts now apply
   that two-year limitations period to privacy claims. *See Quan v. Smithkline Beecham Corp.*, 149 F.
26 App'x 668, 670 (9th Cir. 2005); *see also Wilson v. City of Oakland*, No. C-11-05377 DMR, 2012
   WL 669527, at *3 (N.D. Cal. Feb. 29, 2012); *O'Shea v. Cty. of San Diego*, No. 19-CV-1243-BAS-
27 BLM, 2020 WL 2767357, at *2 (S.D. Cal. May 28, 2020); *Saling v. Royal*, No. 2:13-CV-1039-
   TLN-EFB, 2015 WL 5255367, at *3 (E.D. Cal. Sept. 9, 2015).
28                                                       25
─────────────────────────────────────────────────────────────────

Dated: November 18, 2020                     SUSMAN GODFREY L.L.P.


                                             By: /s/ Amanda Bonn
                                             Amanda Bonn (CA Bar No. 270891)
                                             abonn@susmangodfrey.com
                                             1900 Avenue of the Stars, Suite 1400
                                             Los Angeles, CA 90067
                                             Telephone: (310) 789-3100

                                             Mark C. Mao (CA Bar No. 236165)
                                             mmao@bsfllp.com
                                             Sean Phillips Rodriguez (CA Bar No. 262437)
                                             srodriguez@bsfllp.com
                                             Beko Rebitz-Richardson (CA Bar No. 238027)
                                             brichardson@bsfllp.com
                                             Alexander Justin Konik (CA Bar No. 299291)
                                             akonik@bsfllp.com
                                             BOIES SCHILLER FLEXNER LLP
                                             44 Montgomery Street, 41st Floor
                                             San Francisco, CA 94104
                                             Telephone: (415) 293 6858
                                             Facsimile (415) 999 9695

                                             James W. Lee (*pro hac vice*)
                                             jlee@bsfllp.com
                                             Rossana Baeza (*pro hac vice*)
                                             rbaeza@bsfllp.com
                                             BOIES SCHILLER FLEXNER LLP
                                             100 SE 2nd Street, Suite 2800
                                             Miami, FL 33130
                                             Telephone: (305) 539-8400
                                             Facsimile: (305) 539-1304

                                             William Christopher Carmody (*pro hac vice*)
                                             bcarmody@susmangodfrey.com
                                             Shawn J. Rabin (*pro hac vice*)
                                             srabin@susmangodfrey.com
                                             Steven Shepard (*pro hac vice*)
                                             sshepard@susmangodfrey.com
                                             SUSMAN GODFREY L.L.P.
                                             1301 Avenue of the Americas, 32nd Floor
                                             New York, NY  10019
                                             Telephone: (212) 336-8330

                                             John A. Yanchunis (*pro hac vice*)
                                             jyanchunis@forthepeople.com
                                             Ryan J. McGee (*pro hac vice*)

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

rmcgee@forthepeople.com
Michael F. Ram (*pro hac vice*)
mram@forthepeople.com
Ra  O. Amen (*pro hac vice*)
ramen@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

27