QUINN EMANUEL URQUHART & SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel listed in signature blocks below*

BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin  (*pro hac vice*)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel listed in signature blocks below*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CHASOM BROWN, MARIA NGUYEN, WILLIAM BYATT, JEREMY DAVIS, and CHRISTOPHER CASTILLO, individually and on behalf of all other similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 5:20-cv-03664-LHK-SVK

**JOINT LETTER BRIEF RE: ESI ORDER DISPUTE**

Judge: Hon. Susan van Keulen
Trial Date: Not Set
Close of Fact Discovery: August 2, 2021

Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding their Stipulated Order re Discovery of Electronically Stored Information, which was so-ordered on October 15, 2020 (Dkt # 80) without stating any time period for preservation, as referenced in Section 4(a) of the Model ESI Order.  Counsel for the parties have met and conferred since September 30, 2020, but have reached an impasse regarding the cutoff date for the parties' ESI preservation.  The parties attach competing orders in which their respective proposed additions are highlighted.  There are 255 days left until the close of fact discovery and a trial date has not been set yet.

## PLAINTIFFS' STATEMENT

### 1.   OVERVIEW OF PLAINTIFFS' CLAIMS

Google surreptitiously and without consent intercepted Plaintiffs' private browsing communications, without disclosing that interception and instead repeatedly promising in uniform disclosures that users could browse privately.  First Amended Complaint ("FAC") ¶¶ 1, 2, 42 (Dkt. # 68).  Google's interception included private communications in "Incognito" mode.  FAC ¶ 54.  Google collected data from those private communications, merged that data with other data to create detailed profiles, and then used the data and profiles to generate billions of dollars of revenues.  FAC ¶¶ 89, 91, 93, 104, 108, 115.  Google's conduct violated the Wiretap Act, the California Invasion of Privacy Act, the Comprehensive Computer Data Access and Fraud Act, and intruded upon Plaintiffs' seclusion and their right to privacy under the California Constitution.  FAC ¶¶ 192-266.

### 2.   THE PRESERVATION CUTOFF DATE SHOULD BE JUNE 1, 2008 WITH TWO STATED EXCEPTIONS

Google launched its private browsing mode ("Incognito) with Chrome on September 2, 2008, and Plaintiffs therefore reasonably proposed that the ESI preservation period for this action start on June 1, 2008.  Documents concerning Google's development and 2008 launch of Incognito mode – including internal Google communications from that time period – are relevant in terms of understanding Google's purpose for creating Incognito mode, how it was designed, and Google's strategy for marketing it, including Google's decision to not disclose that it would collect user's data when they chose to "go Incognito."

These ESI materials dating back to 2008 are relevant to both Plaintiffs' claims and Google's defenses, and Google should at a minimum preserve them.  Plaintiffs can then seek production.  *E.g.*, *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732, at *2 (N.D. Cal. Dec. 13, 2013) (requiring defendant to produce documents from the time period when the original version of the offending software was developed, notwithstanding that the plaintiffs only used later versions and that the request "would add ten years to the limitations period," reasoning that "[i]f there are communications, for example, about the Software, that could be relevant to the fraud and contract claims that form basis of Plaintiffs' case, those communications should be preserved and produced").[1]

Other litigation against Google confirms the importance of preserving (and producing) Google's internal communications.  For example, internal Google emails filed in an action brought by the Arizona Attorney General include admissions by Google employees that, for example, Google's efforts to obtain "consent" for its data collection practices are a "mess."  FAC ¶¶ 34-36.

---

[1] *See also Garcia v. Resurgent Capital Servs., L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *6 (N.D. Cal. Aug. 30, 2012) (holding that pre-limitations period conduct is relevant insofar as it "can be used to assess the nature and frequency of a party's violation of the [the law], as well as judge whether non-compliance with the statue was intentional").

CASE NO. 5:20-cv-03664-LHK-SVK
JOINT LETTER BRIEF RE: ESI ORDER DISPUTE

To the extent there are similar communications surrounding the 2008 launch of Incognito mode, or in the years since, Plaintiffs are entitled to those documents.  Such documents go to the heart of this case, for Plaintiffs' claims and Google's defenses, and they should be preserved.

Such materials are also relevant to assessing damages.  By launching Incognito mode, Google likely intended to capitalize on users' desire to keep certain browsing activity private (FAC ¶¶ 60, 162), and remain competitive after Apple launched a private browsing mode in 2005.  Google would have lost money by providing a truly *private* browsing mode, in which Google no longer collected the data at issue in this lawsuit.  Google's motion to dismiss concedes that, if Incognito had prevented Google from obtaining these communications, then the result would have a been a revenue loss to Google.  *See* Mot. to Dismiss Plaintiffs' First. Am Compl. at 12 (Dkt # 82).  Documents concerning the value of that data to Google, as assessed in connection with the 2008 launch of Incognito and over time, are relevant and should be preserved.  *See Joseph v. J.J. MacIntyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1162 (N.D. Cal. 2003) ("[E]vidence of pre-limitations period [conduct] would likely be admissible to show background, to establish a foundation for other evidence, as well as to show Plaintiff's vulnerable state of mind and establish the extent of general damage.").

Plaintiffs' two exceptions are reasonable.  The first provides a way for the parties to *limit* the burden on Google, focusing on custodians who might have relevant documents from the earlier period.  The second seeks to ensure preservation of documents concerning other litigation and the DoubleClick acquisition, discrete sets of documents that Google can readily preserve so that the parties can then negotiate any production.  The DoubleClick acquisition is particularly relevant since DoubleClick has become Google Ad Manager, one of the services through which Google intercepts Plaintiffs' private browsing communications.  FAC ¶ 78.

In response, Google focuses on how certain decisions cited above involved production requests, not preservation periods.  This misapprehends the point.  These cases show that pre-limitations period conduct is often relevant, requiring document production.  Preservation is necessary so that those documents can be produced.

**3.    GOOGLE'S PROPOSAL OF A JUNE 1, 2014 CUTOFF WOULD RESULT IN  THE DESTRUCTION OF CLEARLY RELEVANT DOCUMENTS**

Google's proposal to use June 1, 2014 as the start date for preservation would impermissibly result in the destruction of many relevant documents, including documents concerning the 2008 launch of Incognito, documents relating to other privacy matters against Google that pre-dated 2014, documents demonstrating the value of this data to Google over time, and documents that otherwise support Plaintiffs' claims and undermine Google's defenses.  While discovery regarding Google's conduct during the class period will inevitably be more extensive than the discovery that pre-dates the class period, and Plaintiffs will not seek documents from all custodians back to 2008, that does not mean Google can or should destroy these earlier documents.

Google's focus on the class period (starting on June 1, 2016) is misplaced.  Google had by then been intercepting private communications as a matter of course for many years, with private browsing in Apple's Safari browser (starting in 2005) and then continuing with Incognito (in 2008) and other browsers.  One critical question is why Google chose to do that, promising privacy and without disclosing Google's interceptions.  Documents from before the class period will answer that question, and Plaintiffs' proposal is reasonable.  *Cf. Basich v. Patenaude & Felix, APC*, No. C11-04406 EJD HRL, 2012 WL 2838817, at *2 (N.D. Cal. July 10, 2012) (rejecting defendant's argument that it should only be required to produce documents created within the statute of limitations, explaining that "courts have recognized that even if the statute of limitations bars

liability for conduct outside the limitations period, evidence of pre-limitations conduct may nonetheless be admissible for other purposes").

Plaintiffs worry that Google has already destroyed such documents. During the parties' meet and confer, Google did not provide the preservation start date used in its internal hold notice. Google may have instructed employees only to preserve documents back to June 1, 2014, or even June 1, 2016. If so, that may have already caused Google employees to delete earlier documents, including documents tied to the 2008 launch of Incognito. Plaintiffs already served requests for documents from the Incognito launch 2008, and Google has refused to produce those documents. At a minimum, Google should cease any further document destruction, preserve what documents currently exist back to June 1, 2008, and negotiate over what documents should be produced.

## 4.     GOOGLE'S PROPOSED COMPROMISE TO PRESERVE ONLY SOME UNSPECIFIED DOCUMENTS FROM 2008 IS INSUFFICIENT

As a fallback, Google proposes that it only be required "to preserve ESI from 2008 for certain to-be-identified custodians and repositories on this discrete topic." Plaintiffs have been and still are open to a scenario where Google only preserves documents back to 2008 (not just "from 2008") for some custodians and repositories. Despite Plaintiffs' repeated requests, however, Google has provided zero information on potential custodians. Google has not identified any custodians or repositories that would be subject to this compromise, nor any way for Plaintiffs to evaluate the sufficiency of any compromise. Only preserving some unspecific set of documents "from 2008" would authorize Google to otherwise destroy documents from the intervening period, including relevant documents regarding the use of private browsing and value to Google. Plaintiffs wish to conduct discovery in a focused and efficient manner, and they will seek production of documents back to 2008 only for some custodians and some repositories. For now, Plaintiffs simply seek to ensure that Google does not in the meantime destroy those documents.

## GOOGLE'S STATEMENT

For all Plaintiffs' artful rhetoric, this is a case about Google's disclosures to users of private browsing modes during the Class Period of June 1, 2016 to the present. Plaintiffs claim that Google's disclosures led them to believe that enabling their browsers' "private browsing" mode would prevent Google from receiving certain data generated by their browsing on websites that use Google's Analytics and Ad Manager services. These allegations are nothing but an attempted end-run around the consented-to terms of Google's Privacy Policy and the unequivocally worded Chrome Privacy Notice. Building on this slender reed, Plaintiffs then speculate that Google "merged that data with other data to create detailed profiles" to "generate billions of dollars of revenue." FAC §§II.A-C. As Google has shown in its motion to dismiss, Dkt. 82, these are unsupported, implausible allegations. But for purposes of this ESI dispute, even taking these embroidered allegations at face value, Plaintiffs' demand that Google preserve and produce more than 12 years' worth of ESI – *three times* the Class Period – is unjustified, disproportional to the needs of this case, and amounts to a quixotic expedition that Plaintiffs will later use to compel overbroad document productions. Plaintiffs have failed to offer any authority that justifies the broad preservation time frame they seek.

Consistent with Plaintiffs' stated goal of "conduct[ing] discovery in a focused and efficient manner,"[2] Google has instead proposed a preservation period of June 1, 2014 to present, extending

---

[2]   Pls. 9/30/20 Ltr. ("Plaintiffs wish to conduct discovery in a focused and efficient manner").

*two years before* the Class Period, which starts on June 1, 2016. Because Google's position appropriately balances proportionality and relevance, Google respectfully asks the Court to order a June 1, 2014 start date as the proper preservation period for discovery. *See* Ex. B.[3]

### 1.     Plaintiffs Cannot Justify Preservation Starting In 2008 Or Their Two "Exceptions"

Plaintiffs seek to justify a categorical preservation period starting in 2008 on the basis that ESI concerning the development and launch of Incognito is relevant to  (1) "understanding Google's purpose for creating Incognito mode, how it was designed, and Google's strategy for marketing it" and (2) assessing damages.  Plaintiffs are taking a sledgehammer to crack a nut. Even assuming *arguendo* that the development and launch of Incognito in 2008 *is* relevant to the FAC's claims that Google misled private browsing users from June 2016 onward (it is not), Plaintiffs' requested preservation period is too sweeping and unsupported by the grounds they put forth.

Plaintiffs concede this, and offer the first "exception" to their sweeping request, claiming that *after* the overbroad preservation period is put in place, "the parties will discuss in good faith whether the preservation date may be modified for persons who are not agreed custodians once they complete their meet-and-confer process." Ex. A (Plaintiffs' First Modified ESI Stipulation). But this does not address the fundamental overbreadth of a 12-year preservation period, covering custodians and ESI that far exceeds the scope of issues that Plaintiffs claim they intend to probe through such discovery (namely, the launch of Incognito mode and Google's motivations for creating it). Plaintiffs have already propounded 150 RFPs to which a 2008 preservation period may apply— despite many of these requests having no bearing upon Incognito's launch or damages stemming from conduct that occurred during the Class Period. That Plaintiffs "will not seek [ESI] from all custodians back to 2008" is immaterial, as such data is still as burdensome to preserve.

Plaintiffs' second exception seeks to expand – not narrow – the preservation period. Plaintiffs seek to preserve two *additional* categories of ESI that are patently untethered to the FAC's allegations: (1) documents produced in far-flung cases that do not even relate to private browsing or Chrome – including the Arizona Attorney General case they cite; and (2) documents related to the acquisition of DoubleClick (k.n.a. Ad Manager) in March 2008.[4] Tellingly, Plaintiffs' portion of this letter makes little effort to justify their request to preserve the first category, which has no apparent relevance to the issues in this lawsuit, and their attempt to justify the relevance of the DoubleClick acquisition falls flat when their own-cited allegations (at best) concern Ad Manager's purported interceptions of user data *during the Class Period* not the product's acquisition in 2008.

With regard to prior lawsuits against Google—some of which were filed over *twelve years ago* and involve patents issued nearly *twenty years ago*—Plaintiffs plainly seek the preservation of cloned discovery from cases that do not involve overlapping claims, defenses, or Google products.[5]

---

[3]   However, if the Court deems necessary some preservation concerning the origins of Incognito, Google already offered as a compromise to preserve ESI for January 1 to December 31, 2008 regarding the September 2008 launch of Incognito mode (which Plaintiffs outright rejected).

[4]   Plaintiffs seek ESI including documents related to Google's valuation or analysis regarding Google's acquisition of DoubleClick; however, as stated *supra*, they fail at the threshold to justify how the March 2008 acquisition is relevant to the parties' conduct during the Class Period.

[5]   Plaintiffs seek the preservation of discovery in the following cases, *none of which involve Chrome or private browsing mode*: *I/P Engine, Inc. v. AOL, Inc.*, No. 11-cv-512 (E.D. Va.) (patent infringement action concerning patents issued in 2001 and 2004); *Function Media, LLC v. Google,*

It is axiomatic that cloned discovery is improper and violates Federal Rule of Civil Procedure 34(b)(1)(A).[6] But Plaintiffs have failed to make even a threshold showing of relevance, and thus their broad request to preserve such ESI (and insinuation that it's relevant to the current action) in the first instance should be denied. Yet again, Plaintiffs are fishing in the hopes of catching a break.

None of Plaintiffs' authorities support the broad preservation period they seek. Only *Worley v. Avanquest N. Am. Inc.*, 2013 WL 6576732 (N.D. Cal. Dec. 13, 2013) even addresses preservation obligations, albeit in a fraud case against the producing party for creating software designed to defraud purchasers because the product could not deliver the advertised benefits. The same cannot be credibly said of Incognito mode, nor can Plaintiffs attempt to shoehorn this case to fit *Worley* by attributing nefarious motives to Incognito mode's creation. The remaining cases recognize that discovery into pre-limitations conduct may be appropriate – e.g., where continuing violations pre-date the Class Period, or where the parties' earlier interactions or knowledge is relevant to their conduct during the Class Period. Although neither fact is present here, Google's offer of a pre-Class Period preservation starting in 2014 and a limited 2008 compromise aligns with those decisions.

## 2.    Google's Proposal Strikes the Right Balance Between Preservation and Proportionality

A preservation date of June 1, 2014 (which, consistent with Plaintiffs' authorities, precedes the Class Period) will adequately capture documents proportional to the needs of the litigation and relevant to the parties' claims and defenses—subject to Google's stated objections.

During the meet and confer process, Google even offered as a compromise to preserve ESI from 2008 for certain to-be-identified custodians and repositories on this discrete topic. Plaintiffs rejected this proposal without further inquiry into custodians or repositories. Only now are Plaintiffs interested in "evaluat[ing] the sufficiency of [such] proposal," but they cannot micromanage Google's discovery process (or insist that ESI "back to 2008" be preserved until they are satisfied). If the Court deems appropriate some preservation beyond the proposed six-year period, preserving ESI from 2008 for appropriate custodians would cover that.

Lastly, there is no question that Google has complied and intends to continue complying with all discovery obligations. Relevant documents are being preserved. Beyond rank speculation, Plaintiffs have offered no support to demonstrate that relevant documents have been destroyed.

---

*Inc.*, No. 07-cv-00279 (E.D. Tex.) (patent infringement action concerning patents issued in 2002 and 2007); *British Telecomm's PLC v. Google, Inc.*, 11-cv-01249-UNA (D. Del.) (patent infringement action concerning patents issued in 2000-2004); *Xerox Corp. v. Google, Inc.*, 10-cv-00136 (D. Del.) (patent infringement action concerning patent issued in 2001 and 2004); *Microsoft Corp.. et al. v. GeoTag Inc.*, 11-cv-00175 (D. Del.) (patent infringement action concerning patent issued in 1999); *Bid for Position LLC v. Google, Inc.*, 07-CV-582 (E.D. Va.); *Woods v. Google Inc.*, No. 11-cv-1263-JF (N.D. Cal.) (class action concerning Google's alleged overcharging in AdWords and alleged misrepresentation regarding location targeting); *Goddard v. Google Inc.*, No. 08-2738 JF (N.D. Cal.) (class action concerning Google's failure to police ads by allegedly fraudulent mobile subscriptions in Google AdWords); *Rockstar Consortium US LP v. Google*, No. 13-cv-893 (E.D. Tex.) (patent infringement action concerning patents issued in 2000, 2007, 2008, and 2011).

[6]    *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) (collecting cases); *see also Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) (seeking "all documents produced in another matter is not generally proper.  The propounding party cannot meet its burden to establish relevance [as they are] not in a position to even know what they are actually asking for.").

1   DATED: November 20, 2020            QUINN EMANUEL URQUHART &
2                                       SULLIVAN, LLP

3
                                        By   /s/ *Viola Trebicka*
4                                            Andrew H. Schapiro (admitted *pro hac vice*)
                                             andrewschapiro@quinnemanuel.com
5                                            191 N. Wacker Drive, Suite 2700
                                             Chicago, IL 60606
6                                            Tel: (312) 705-7400
7                                            Fax: (312) 705-7401

8                                            Stephen A. Broome (CA Bar No. 314605)
                                             sb@quinnemanuel.com
9                                            Viola Trebicka (CA Bar No. 269526)
                                             violatrebicka@quinnemanuel.com
10                                           865 S. Figueroa Street, 10th Floor
11                                           Los Angeles, CA 90017
                                             Tel: (213) 443-3000
12                                           Fax: (213) 443-3100

13                                           Josef Ansorge (admitted *pro hac vice*)
                                             josefansorge@quinnemanuel.com
14                                           1300 I Street NW, Suite 900
                                             Washington D.C., 20005
15                                           Tel: (202) 538-8000
                                             Fax: (202) 538-8100
16
                                             Jonathan Tse (CA Bar No. 305468)
17                                           jonathantse@quinnemanuel.com
                                             50 California Street, 22nd Floor
18                                           San Francisco, CA 94111
                                             Tel: (415) 875-6600
19                                           Fax: (415) 875-6700

20                                           Thao Thai (CA Bar No. 324672)
                                             thaothai@quinnemanuel.com
21                                           555 Twin Dolphin Drive, 5th Floor
                                             Redwood Shores, CA 94065
22                                           Tel: (650) 801-5000
                                             Fax: (650) 801-5100
23
                                             *Attorneys for Defendant*
24                                           Google LLC

25

26

27

28

DATED: November 20, 2020          BOIES SCHILLER FLEXNER LLP

By    /s/ *Amanda K. Bonn*
      Amanda K. Bonn

      Mark C. Mao (CA Bar No. 236165)
      mmao@bsfllp.com
      Sean Phillips Rodriguez (CA Bar No. 262437)
      srodriguez@bsfllp.com
      Beko Reblitz-Richardson (CA Bar No. 238027)
      brichardson@bsfllp.com
      Alexander Justin Konik (CA Bar No. 299291)
      akonik@bsfllp.com
      44 Montgomery Street, 41st Floor
      San Francisco, CA 94104
      Telephone: (415) 293 6858
      Facsimile (415) 999 9695

      James W. Lee (*pro hac vice*)
      jlee@bsfllp.com
      Rossana Baeza (*pro hac vice*)
      rbaeza@bsfllp.com
      100 SE 2nd Street, Suite 2800
      Miami, FL 33130
      Telephone: (305) 539-8400
      Facsimile: (305) 539-1304

      William Christopher Carmody (*pro hac vice*)
      bcarmody@susmangodfrey.com
      Shawn J. Rabin (*pro hac vice*)
      srabin@susmangodfrey.com
      Steven Shepard (*pro hac vice*)
      sshepard@susmangodfrey.com
      SUSMAN GODFREY L.L.P.
      1301 Avenue of the Americas, 32nd Floor
      New York, NY 10019
      Telephone: (212) 336-8330

      Amanda Bonn (CA Bar No. 270891)
      abonn@susmangodfrey.com
      SUSMAN GODFREY L.L.P.
      1900 Avenue of the Stars, Suite 1400
      Los Angeles, CA 90067
      Telephone: (310) 789-3100

      John A. Yanchunis (*pro hac vice*)
      jyanchunis@forthepeople.com
      Ryan J. McGee (*pro hac vice*)
      rmcgee@forthepeople.com

-7-                          CASE NO. 5:20-cv-03664-LHK-SVK

MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*