1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5   CHASOM BROWN, MARIA NGUYEN, AND   )  C-20-03664 LHK
    WILLIAM BYATT, INDIVIDUALLY AND   )
6   ON BEHALF OF ALL SIMILARLY        )  SAN JOSE, CALIFORNIA
    SITUATED,                         )
7                                     )  FEBRUARY 25, 2021
              PLAINTIFF,              )
8                                     )  PAGES 1-66
         VS.                          )
9                                     )
    GOOGLE LLC AND ALPHABET INC.,     )
10                                    )
              DEFENDANTS.             )
11  _____    )

12

13           TRANSCRIPT OF ZOOM PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
14            UNITED STATES DISTRICT JUDGE

15

16  A P P E A R A N C E S:

17  FOR THE PLAINTIFFS:    SUSMAN GODFREY LLP
                           BY:  AMANDA K. BONN
18                         1900 AVENUE OF THE STARS, SUITE 1400
                           LOS ANGELES, CALIFORNIA  90067
19
                           BY:  ALEXANDER P. FRAWLEY
20                         1301 AVENUE OF THE AMERICAS, 32ND FLOOR
                           NEW YORK, NEW YORK  10019
21

22       APPEARANCES CONTINUED ON NEXT PAGE

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2      APPEARANCES (CONTINUED)

 3

 4      FOR THE PLAINTIFFS:     BOIES SCHILLER FLEXNER LLP
                                BY:  MARK C. MAO
 5                              44 MONTGOMERY STREET, 41ST FLOOR
                                SAN FRANCISCO, CALIFORNIA  94104
 6
                                BY:  JAMES LEE
 7                              100 SE 2ND STREET, 28TH FLOOR
                                MIAMI, FLORIDA  33131
 8

 9

10      FOR THE DEFENDANTS:     QUINN EMANUEL URQUHART & SULLIVAN
                                BY:  ANDREW H. SCHAPIRO
11                              191 N. WACKER DRIVE, SUITE 2700
                                CHICAGO, ILLINOIS  60606
12

13                              BY:  STEPHEN A. BROOME
                                     VIOLA TREBICKA
14                              865 S. FIGUEROA STREET, 10TH FLOOR
                                LOS ANGELES, CALIFORNIA  90017
15

16

17

18

19

20

21

22

23

24

25
```

```
1      SAN JOSE, CALIFORNIA                    FEBRUARY 25, 2021

2                         P R O C E E D I N G S

3           (ZOOM PROCEEDINGS CONVENED AT 1:36 P.M.)

4               THE CLERK:  GOOD AFTERNOON, YOUR HONOR.

5               THE COURT:  GOOD AFTERNOON.  LET ME INCREASE THE

6      VOLUME.

7               THE CLERK:  THANK YOU.

8               THE COURT:  CAN YOU HEAR ME?

9               THE CLERK:  YES.

10               THE COURT:  OKAY.  THANK YOU.

11               THE CLERK:  THANK YOU.

12           CALLING CASE 20-3664, BROWN, ET AL, VERSUS GOOGLE LLC.

13           COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD,

14      STARTING WITH COUNSEL FOR THE PLAINTIFFS.

15               MS. BONN:  GOOD MORNING, YOUR HONOR.

16           MY NAME IS AMANDA BONN WITH SUSMAN GODFREY ON BEHALF OF

17      PLAINTIFFS.

18           ALSO WITH ME TODAY IS JAMES LEE FROM BOIES SCHILLER, AND

19      MY COLLEAGUE, ALEX FRAWLEY, ALSO FROM SUSMAN GODFREY.

20               THE COURT:  GOOD AFTERNOON.  WELCOME.

21               MS. TREBICKA:  GOOD AFTERNOON, YOUR HONOR.

22           MY NAME IS VIOLA TREBICKA.  I'M WITH QUINN, EMANUEL.  I

23      REPRESENT GOOGLE.

24           AND HERE WITH ME ARE MY PARTNERS, MR. ANDREW SCHAPIRO AND

25      MR. STEPHEN BROOME.
```

1          AND JUST AS AN OUTLINE FOR THE HEARING, WE HAVE SPLIT UP

2     THE ARGUMENTS DEPENDING ON THE QUESTIONS THAT YOUR HONOR WILL

3     HAVE, AND MR. SCHAPIRO WILL BE TAKING ANY QUESTIONS YOU HAVE

4     ABOUT THE OVERARCHING ISSUE OF CONSENT; MR. BROOME WILL BE

5     ANSWERING ANY QUESTIONS YOU HAVE ABOUT THE FIRST TWO CAUSES OF

6     ACTION; AND I WILL BE TAKING THE LAST THREE.

7          THE COURT:  ALL RIGHT.  THANK YOU.

8          WHAT ABOUT MR. MAO, ARE YOU STATING YOUR APPEARANCE, OR --

9          MR. MAO:  YES.  GOOD AFTERNOON, YOUR HONOR.

10     MARK MAO, BOIES SCHILLER, FOR PLAINTIFFS.  I MIGHT ANSWER

11     SOME TECHNICAL QUESTIONS IF THERE ARE ANY THAT ACTUALLY COME UP

12     IN THE HEARING.

13          THE COURT:  ALL RIGHT.  OKAY.

14     GOOD AFTERNOON AND WELCOME TO EVERYONE.

15          LET ME FIRST ASK THE PLAINTIFFS, YOU'VE READ THE

16     DEFENDANTS' REPLY.  IS THERE ANY BIG TAKE AWAY RESPONSE THAT

17     YOU HAVE TO THAT REPLY BRIEF?

18          MS. BONN:  I DO, YOUR HONOR, AND I WANT TO START BY

19     SAYING I THINK THAT THE CORE ARGUMENT THAT WAS MADE IN GOOGLE'S

20     REPLY ABOUT THE NATURE OF CONSENT IS DEEPLY TROUBLING FOR THIS

21     REASON:  THIS CASE IS ABOUT GOOGLE GIVING USERS AN ILLUSION OF

22     PRIVACY AND CONTROL, AMONG OTHER WAYS, THROUGH THE INCOGNITO

23     SPLASH SCREEN, WHICH TELLS USERS, "NOW YOU'RE IN INCOGNITO

24     MODE, NOW YOU CAN BROWSE THE WEB PRIVATELY."

25          AND THEN IT LAYS OUT CERTAIN EXCEPTIONS.  IT SAYS, "YOUR

1    ACTIVITY MIGHT STILL BE AVAILABLE TO THE WEBSITES YOU VISIT,

2    YOUR EMPLOYER, YOUR SCHOOL, YOUR INTERNET PROVIDER."

3        IN THEIR REPLY BRIEF, GOOGLE TAKES THE POSITION THAT

4    THERE'S A MORE GENERAL STATEMENT THAT'S BURIED IN ONE OF OUR

5    PRIVACY POLICIES THAT TALKS ABOUT HOW OUR GOOGLE ANALYTICS

6    TYPICALLY WORKS, AND BECAUSE WE MADE THIS GENERAL STATEMENT IN

7    ONE OF OUR PRIVACY POLICIES, THAT SHOULD CREATE A DEFAULT

8    ASSUMPTION FOR ANYBODY BROWSING THE WEB THAT YOU SHOULD JUST

9    KNOW THAT IF YOU VISIT A WEBSITE THAT HAPPENS TO RUN GOOGLE

10   ANALYTICS, WE ARE COLLECTING YOUR DATA UNLESS WE SPECIFICALLY

11   TELL YOU THAT WE ARE DOING SOMETHING THAT, QUOTE, "PREVENTS US

12   FROM COLLECTING THAT DATA."

13       AND THAT NOTION, WHICH IS AT THE HEART OF GOOGLE'S REPLY

14   BRIEF, TURNS THE ENTIRE CONCEPT OF CONSENT ON ITS HEAD.  GOOGLE

15   IS SAYING CONSENT MEANS, FRANKLY, THERE'S NO ROLE FOR THE USER.

16   THE USER CAN'T EVEN OPT OUT OF WHAT WE'RE DOING.

17       IN ORDER TO VITIATE CONSENT, GOOGLE WOULD HAVE TO

18   SPECIFICALLY TELL USERS, "WE'RE PREVENTING OURSELVES FROM DOING

19   WHAT WE TYPICALLY DO," AND WE THINK THE CONCEPT OF CONSENT IS

20   PRECISELY THE OPPOSITE.

21       THE WIRETAP ACT AND THE OTHER CAUSES OF ACTION WE HAVE

22   RAISED ARE BASED ON THE ASSUMPTION THAT PEOPLE SHOULD BE ABLE

23   TO TRUST THAT THEIR COMMUNICATIONS ARE NOT BEING WIRETAPPED

24   UNLESS THE SPECIFIC PRACTICE IS DISCLOSED AND THEY

25   AFFIRMATIVELY AND ACTUALLY CONSENT.

1          AND SO I THINK THE CORE ISSUE THAT WE REALLY TAKE WITH

2     GOOGLE'S REPLY BRIEF IS THAT IT TURNS THE ENTIRE CONCEPT OF

3     CONSENT UNDER THE WIRETAP ACT AND THE BURDEN OF PROOF ON ITS

4     HEAD.

5          AND THAT'S WHAT'S SO DEEPLY TROUBLING, BECAUSE IN THIS

6     CASE, PEOPLE ARE JUST VISITING THIRD PARTY WEBSITES AND THEY'RE

7     DOING SO WHEN THE LAST AND FINAL WORD THEY'VE RECEIVED BEFORE

8     THEY DO THAT IS THAT THEY'RE IN A PRIVATE BROWSING MODE, AND

9     GOOGLE IS BASICALLY SAYING THERE'S VERY LITTLE YOU CAN DO TO

10    PREVENT US FROM COLLECTING YOUR DATA AND YOU SHOULD HAVE SIMPLY

11    ASSUMED THAT'S WHAT WE WERE DOING.

12          THE COURT:  CAN YOU CLARIFY WHAT SPECIFIC ACTIONS YOU

13    THINK THE USER HAS CONSENTED TO, WHAT SPECIFIC ACTIONS YOU

14    THINK THE THIRD PARTY WEBSITE HAS CONSENTED TO, AND WHAT IS THE

15    ADDITIONAL ACTION THAT GOOGLE IS DOING THAT YOU THINK NEITHER

16    CONSENTED TO?

17          MS. BONN:  ABSOLUTELY, YOUR HONOR.

18          SO STARTING WITH THE FIRST QUESTION, THE USER, WHAT HAS

19    THE USER CONSENTED TO, WHEN THEY SEE THE INCOGNITO SPLASH

20    SCREEN BEFORE THEY START PRIVATELY BROWSING, IT TELLS THEM,

21    "YOUR ACTIVITY MIGHT STILL BE VISIBLE," "MIGHT STILL BE VISIBLE

22    TO THE WEBSITE YOU VISIT."

23          SO, FOR INSTANCE, A USER MAY KNOW WHEN THEY VISIT THE

24    NEW YORK TIMES WEBSITE, OF COURSE THE NEW YORK TIMES --

25          THE COURT:  I'M SORRY TO INTERRUPT YOU.  THAT'S AT A

1    VERY GENERAL LEVEL.

2         I'M LOOKING AT THE NINTH CIRCUIT'S DECISION IN IN RE:

3    FACEBOOK INTERNET TRACKING LITIGATION.  THEY HAVE A NICE, MORE

4    DETAILED DESCRIPTION OF AT LEAST HOW, LIKE, THE GET REQUEST

5    WORKS, WHAT INFORMATION IS BEING TRANSMITTED TO FACEBOOK VERSUS

6    A WEB PAGE.

7         CAN YOU GIVE ME THAT LEVEL OF DETAIL, NOT JUST GENERALLY

8    WHAT THE PRIVACY POLICY AND THE TERMS OF SERVICE SAYS?

9              MS. BONN:  YES.

10              THE COURT:  LIKE, WHAT SPECIFIC INFORMATION IS BEING

11    REQUESTED FROM WHOM, TRIGGERED BY WHAT ACTION?  YOU KNOW, AT

12    THE LEVEL OF PAGE 607 OF THE NINTH CIRCUIT'S DECISION.

13         GO AHEAD, PLEASE.

14              MS. BONN:  YEAH, ABSOLUTELY.

15         SO I THINK TO START WITH, WHAT GOOGLE IS ACTUALLY

16    COLLECTING ARE -- I THINK FALL INTO THREE CATEGORIES.  NUMBER

17    ONE, GOOGLE IS, THROUGH THEIR GOOGLE ANALYTICS SCRIPT,

18    DIRECTING THE USER'S BROWSER TO SEND A DUPLICATE COPY OF THE

19    GET REQUEST TO GOOGLE'S SERVERS, AND THAT IS THE SAME THING

20    THAT'S HAPPENING IN FACEBOOK.

21         THE OTHER TWO CRITICALLY IMPORTANT THINGS THAT GOOGLE IS

22    COLLECTING ARE THAT THEY'RE ALSO DIRECTING THE BROWSER TO SEND

23    TO GOOGLE THE USER'S PRIOR WEB BROWSING HISTORY IN THE SAME

24    SESSION.  SO NOT MERELY THE GET REQUEST TO THE PARTICULAR

25    WEBSITE THAT'S BEING VISITED, BUT ALSO INFORMATION ABOUT THE

1      USER'S PRIOR WEB BROWSING DURING THAT SESSION.

2           AND NUMBER THREE, THE OTHER THING WE ALLEGE IN OUR

3      COMPLAINT IS THAT TYPICALLY IN CHROME, WHEN A USER IS USING

4      CHROME, GOOGLE CAN SEE SOMETHING CALLED THE X-CLIENT DATA

5      HEADER.

6           BUT WHEN A USER IS IN A PRIVATE BROWSING MODE, SUCH AS

7      INCOGNITO, THEY DON'T RECEIVE THE X-CLIENT DATA HEADER.

8           AND WHAT THAT MEANS IS GOOGLE IS ALSO COLLECTING FROM THE

9      BROWSER INFORMATION THAT TELLS THEM, "AH-HA, THIS USER IS IN

10     PRIVATE BROWSING MODE," AND THAT PROVIDES THEM WITH ADDITIONAL

11     INFORMATION AND CONTEXT ON TOP OF THE GET REQUEST.

12          SO I THINK THAT THE THREE KEY THINGS THAT WE ALLEGE IN OUR

13     COMPLAINT ARE, NUMBER ONE, THE REDIRECTION OF THE GET REQUEST;

14     NUMBER TWO, THE SCRAPING OF THE PRIOR BROWSING HISTORY FROM THE

15     SESSION; AND, NUMBER THREE, THE ABSENCE OF THE X-CLIENT DATA

16     HEADER WHICH TELLS GOOGLE, "AH-HA, THIS USER IS IN PRIVATE

17     BROWSING MODE RIGHT NOW.  THIS USER THINKS THAT WHATEVER

18     THEY'RE DOING IN THIS BROWSING SESSION IS SOMETHING THEY WANT

19     TO BE PRIVATE."

20             THE COURT:  AND YOU'RE SAYING NO USER OR ANY THIRD

21      PARTY WEBSITE COULD CONSENT TO ANY OF THESE THREE CATEGORIES OF

22      INFORMATION?

23             MS. BONN:  WE THINK THAT ON THE FACTS HERE, THEY

24      DIDN'T CONSENT FOR TWO REASONS.

25             NUMBER ONE, ON THE INCOGNITO SPLASH SCREEN, THERE'S NOT A

1      DISCLOSURE OF THAT PRACTICE.  THAT'S NOT BEING DISCLOSED TO

2      USERS.

3           AND IN FACT, A REASONABLE USER, LOOKING AT THE INCOGNITO

4      SPLASH SCREEN, HAS NO REASON TO THINK THAT GOOGLE IS SCRAPING

5      ANY OF THAT DATA.  AND TO THE CONTRARY, IT SAYS, "YOUR ACTIVITY

6      MIGHT STILL BE VISIBLE TO THE WEBSITES YOU VISIT."

7           BY NEGATIVE IMPLICATION, THAT WOULD LEAD A REASONABLE USER

8      TO THINK, "IT'S JUST THE WEBSITE THAT I VISIT.  IT'S NOT GOOGLE

9      TAKING THAT INFORMATION, AGGREGATING IT WITH MY PRIOR WEB

10     BROWSING HISTORY, AND ALSO GOOGLE KNOWING THAT ALL OF THAT

11     BROWSING HISTORY IS INFORMATION I WANTED TO BE CONSIDERED

12     PRIVATE BROWSING."

13           AND THEN ON --

14               THE COURT:  LET ME --

15               MS. BONN:  OH, GO AHEAD.

16               THE COURT:  LET ME ASK GOOGLE'S COUNSEL, DO YOU AGREE

17     THAT THE DATA ISSUE IN THIS CASE IS THE SAME AS THE DATA AT

18     ISSUE IN FACEBOOK TRACKING LIKE PLAINTIFFS' COUNSEL JUST SAID?

19               MR. SCHAPIRO:  YES, MUCH OF THE -- I WOULD SAY YES,

20     MOST OF THE DATA, PROBABLY ALL OF IT, IS THE SAME IF WE TAKE

21     THEM AT THEIR WORD FOR WHAT WE'VE JUST HEARD FROM MS. BONN.

22           THE DIFFERENCE, OF COURSE, IS THAT IN THIS CASE, THE

23     PRIVACY POLICY TO WHICH ALL THE PLAINTIFFS HAVE CONSENTED AND

24     AGREED EXPRESSLY DISCLOSES THE COLLECTION OF THAT DATA.

25           THE PRIVACY POLICY IS EXHIBIT 1 TO THE OPPOSITION BRIEF OF

1       THE PLAINTIFFS, BUT WE CITE THE RELEVANT PORTIONS ON PAGE 2 OF

2       OUR BRIEF, WHICH IS TAB 1 OF THE DEFENSE BINDER WHICH YOU HAVE.

3            AND WE HAVE DISCLOSED -- GOOGLE DISCLOSES THERE, "WE

4       COLLECT INFORMATION ABOUT THE SERVICES THAT YOU USE AND HOW YOU

5       USE THEM, LIKE WHEN YOU VISIT A WEBSITE THAT USES OUR

6       ADVERTISING SERVICES OR VIEW OR INTERACT WITH OUR ADS OR

7       CONTENT.  THIS INFORMATION INCLUDES DETAILS OF HOW YOU USED OUR

8       SERVICE, SUCH AS SEARCH QUERIES, INTERNET PROTOCOL ADDRESS,

9       REFERRAL URL, COOKIES THAT MAY UNIQUELY IDENTIFY YOUR BROWSER,

10      LOCATION INFORMATION, SUCH AS GPS."

11           AND IT WAS INTERESTING THAT MS. BONN SAID A MOMENT AGO,

12      SHE WAS SAYING, WELL, THIS IS DATA ABOUT THE PRIOR WEB BROWSING

13      HISTORY IN THE SAME SESSION.

14           AND I THINK THAT'S IMPORTANT TO MAKE CLEAR HERE, YOUR

15      HONOR, BECAUSE ABOUT -- PRIVATE BROWSING, AS THE INTRODUCTORY

16      SPLASH SCREEN THAT MS. BONN POINTED TO A MOMENT AGO MAKES

17      CLEAR, HAS A PURPOSE, AND THE PURPOSE IS MADE CLEAR ON THAT

18      FIRST SCREEN THAT YOU SEE.

19           THIS IS ALSO ON PAGE 2 OF OUR BRIEF.

20           IT SAYS --

21               THE COURT:  LET ME ASK YOU A QUESTION.

22               MR. SCHAPIRO:  OF COURSE.

23               THE COURT:  YOU SUBMITTED A VOLUMINOUS NUMBER OF

24      PRIVACY POLICIES WITH YOUR MOTION.  WHICH IS THE SORT OF

25      OPERATIVE ONE THAT THE ORDER SHOULD FOCUS ON?  IS IT EXHIBIT 1

1    TO YOUR DECLARATION THAT YOU JUST REFERENCED?  OR --

2              MR. SCHAPIRO:  YES.  WELL, SO --

3              THE COURT:  IS THAT THE ONE THAT I SHOULD FOCUS ON?

4              MR. SCHAPIRO:  EXHIBIT 1 TO OUR DECLARATION, WHICH IS

5    TAB 4, IS THE STARTING POINT, AND MAYBE TO SOME EXTENT THE

6    ENDING POINT.

7         AND I WANT TO BE CLEAR THAT THE PLAINTIFFS THEMSELVES BASE

8    MOST OF THEIR CLAIMS ON THE LANGUAGE OF THAT PRIVACY POLICY, AS

9    WELL AS EXHIBIT 18 TO OUR SUBMISSION, WHICH IS TAB 21 OF YOUR

10   DEFENSE BINDER.  THAT IS THE OTHER DOCUMENT TO WHICH THE

11   PLAINTIFFS POINT WHEN THEY SAY "WE WERE DECEIVED ABOUT WHAT

12   PRIVATE BROWSING MEANS."

13        SO THOSE TWO DOCUMENTS, PLUS EXHIBIT 19, WHICH IS THE

14   DOCUMENT THAT PLAINLY SAYS HOW PRIVATE BROWSING WORKS IN

15   CHROME.

16        ALL OF THESE ARE RELIED ON AND FORM THE BASIS OF THE

17   COMPLAINT.

18              THE COURT:  OKAY.  LET ME -- I JUST WANT TO MAKE SURE

19   THAT I -- THERE'S SO MANY VERSIONS THAT ARE ATTACHED AS

20   EXHIBITS AND I JUST WANT TO MAKE SURE THAT THE ORDER FOCUSES ON

21   THE RIGHT ONE.

22        SO, MR. SCHAPIRO, YOU'RE SAYING EXHIBIT 1 TO YOUR

23   DECLARATION, AND THEN EXHIBIT 18 AND 19 ARE WHAT THE COURT

24   SHOULD FOCUS ON?  IS THAT RIGHT?

25              MR. SCHAPIRO:  YES, YOUR HONOR.  YES.

```
1              THE COURT:  OKAY.  ALL RIGHT.

2          NOW, AS FAR AS ALL THE OTHER VERSIONS, BECAUSE THERE ARE

3      MANY, IS THERE ANYTHING THAT I SHOULD BE LOOKING FOR IN THOSE

4      OTHER VERSIONS?

5              MR. SCHAPIRO:  SO IF YOU MEAN OTHER VERSIONS OF, FOR

6      EXAMPLE, THE PRIVACY POLICY, I THINK THE PARTIES ARE IN GENERAL

7      AGREEMENT THAT THERE'S -- THAT THERE'S NOT A MEANINGFUL

8      DIFFERENCE OR A REASON TO FOCUS ON ONE OR THE OTHER.  I BELIEVE

9      THAT THERE'S A FOOTNOTE IN THE PLAINTIFFS' SUBMISSION THAT SAYS

10     THAT AS WELL.

11         IF YOU'RE ASKING WHETHER THERE ARE ANY OTHER DOCUMENTS

12     THAT WE WOULD POINT TO, THE ONLY OTHER ONE I WOULD REFER THE

13     COURT TO IS THE CHROME PRIVACY NOTICE, WHICH IS EXHIBIT 17,

14     TAB 20 OF THE DEFENSE BINDER.

15         BUT IF YOU'RE ASKING ABOUT THE POLICY -- PRIVACY POLICY

16     WHICH CHANGED OVER TIME, I THINK WE'RE BOTH POINTING TO THE ONE

17     THAT IS ATTACHED TO BOTH OF OUR PAPERS AS EXHIBIT -- OUR

18     EXHIBIT 1 AND THEIR EXHIBIT 1.

19             MS. BONN:  YOUR HONOR, I'D LIKE TO JUST -- I DO HAVE

20     A SLIGHT, A SLIGHT DISAGREEMENT WITH THAT, AND ONE ADDITIONAL

21     EXHIBIT THAT I THINK IS IMPORTANT TO POINT OUT.  I DON'T KNOW

22     IF NOW IS THE APPROPRIATE TIME.

23             THE COURT:  THAT'S FINE.  I WOULD LIKE SOME GUIDANCE

24     FROM THE PARTIES.  THERE'S SO MANY VERSIONS OF SOME OF THE SAME

25     DOCUMENTS HERE, AND SO IT'S REALLY HELPFUL IF THE PARTIES COULD
```

1    GUIDE ME TO WHAT ARE THE MOST KEY ONES THAT THE ORDER SHOULD

2    FOCUS ON AND THE ANALYSIS SHOULD FOCUS ON.  ARE THERE

3    DIFFERENCES THAT ARE MATERIAL THAT NEED TO BE CONSIDERED?

4         IT DOES SEEM THAT EXHIBIT 1 TO, MS. BONN, YOUR

5    DECLARATION, AND EXHIBIT 1 TO MR. SCHAPIRO'S DECLARATION SEEM

6    TO BE THE SAME AND WHAT THE PARTIES WANT THE COURT TO FOCUS ON.

7         WOULD YOU AGREE WITH THAT, OR NOT?

8         MS. BONN:  GENERALLY.  I WILL SAY THAT THERE'S

9    CERTAIN LANGUAGE WHICH WE HIGHLIGHT IN OUR BRIEF, NAMELY, THIS

10   IS THE LANGUAGE IN THE PRIVACY POLICY THAT SAYS "YOU CAN ALSO

11   CHOOSE TO BROWSE THE WEB PRIVATELY USING CHROME IN INCOGNITO

12   MODE AND ACROSS OUR SERVICES YOU CAN CONTROL WHAT WE COLLECT."

13        IN GOING THROUGH ALL OF THE EXHIBITS BEFORE THIS HEARING,

14   IT LOOKS TO ME THAT THAT LANGUAGE CAME INTO EFFECT IN THE

15   PRIVACY POLICY IN OR AROUND MAY OF 2018, AND I BELIEVE THAT

16   VERSION OF THE POLICY IS EXHIBIT 8 TO GOOGLE'S REQUEST FOR

17   JUDICIAL NOTICE.  THERE MAY HAVE BEEN EARLIER VERSIONS OF THE

18   POLICY THAT DIDN'T HAVE THAT LANGUAGE, AND SO I THINK THAT IS A

19   MATERIAL DISTINCTION, YOU KNOW, THAT MAY MATTER.  SO I WANTED

20   TO FLAG EXHIBIT 8 FOR YOUR HONOR.

21        THE COURT:  OKAY.  SO LET ME JUST RECAP THIS JUST TO

22   MAKE SURE THAT WE FOCUS ON -- SO EXHIBIT 1 TO THE SCHAPIRO

23   DECLARATION AND EXHIBIT 1 TO THE BONN DECLARATION SHOULD BE THE

24   SAME, RIGHT?  IT'S THE -- WELL, I GUESS THEY'RE SLIGHTLY -- NO.

25        THE SCHAPIRO DECLARATION EXHIBIT 1 IS FROM MARCH 25, 2016

1    UNTIL JUNE 28, 2016; AND THEN THE BONN DECLARATION EXHIBIT 1 IS

2    THE PRIVACY POLICY EFFECTIVE MARCH 31, 2020.

3          MS. BONN:  THAT'S CORRECT, YOUR HONOR.

4        AND EXHIBIT 8 I THINK IS WHAT SHOWS THAT SOME OF THE

5    LANGUAGE THAT WE RELY ON IN OUR EXHIBIT 1 DIDN'T JUST BECOME

6    AVAILABLE IN 2020.  IT ACTUALLY WAS PART OF THEIR PRIVACY

7    POLICY AS FAR BACK AS MAY OF 2018.

8          THE COURT:  OKAY.  SO THE EXHIBITS THAT YOU ALL WANT

9    ME TO LOOK AT AND FOCUS ON IN THE ORDER ARE SCHAPIRO EXHIBIT 1,

10   BONN EXHIBIT 1, AND THEN DEFENSE EXHIBITS 8, 17, 18, AND 19.

11   IS THAT RIGHT?

12         MR. SCHAPIRO:  YES, YOUR HONOR.

13         THE COURT:  OKAY.  DO YOU AGREE WITH THAT, MS. BONN?

14   IS THAT THE RELEVANT UNIVERSE?  I CAN SORT OF NOT PAY AS CLOSE

15   ATTENTION, FRANKLY, TO ALL THE OTHER VERSIONS?

16         MS. BONN:  I THINK THAT'S RIGHT, YOUR HONOR.

17         THE COURT:  I DON'T MEAN IT THAT WAY, BUT --

18         MS. BONN:  I THINK THAT'S RIGHT ON THE USERS' SIDE,

19   YOUR HONOR.

20       ON THE WEBSITE CONSENT QUESTION AND THE WEBSITE SIDE,

21   PLAINTIFFS WOULD POINT TO EXHIBIT 21 TO THE SCHAPIRO

22   DECLARATION.

23         THE COURT:  EXHIBIT 21.  OKAY.

24       THEN LET ME ASK THE DEFENDANTS, ARE THERE ANY -- ON THE

25   ISSUE OF WEBSITE CONSENT, DO YOU HAVE ANY EXHIBITS THAT YOU

1    WANT THE COURT TO FOCUS ON?  OR IS THAT STILL THE RIGHT

2    UNIVERSE?

3                MR. SCHAPIRO:  I THINK THAT'S THE RIGHT UNIVERSE.  MY

4    COLLEAGUE, MR. BROOME, IS THE ONE WHO WAS FOCUSSED ON WEBSITE

5    CONSENT, SO HE WILL LET ME KNOW IF THERE'S ANYTHING DIFFERENT,

6    BUT I DON'T BELIEVE THERE IS.

7                MR. BROOME:  I BELIEVE, YOUR HONOR, EXHIBITS 24 AND

8    25 ARE THE AGREEMENT, THE TERMS -- GOOGLE'S TERMS WITH ITS

9    ANALYTICS AND AD MANAGER CUSTOMERS.

10               THE COURT:  OKAY.  ALL RIGHT.  SO THEN LAST CALL, THE

11   FOCUS WILL BE ON BONN NUMBER 1, SCHAPIRO NUMBER 1, AND THEN

12   DEFENSE EXHIBITS 8, 17, 18, 19, 21, 24, AND 25.  IS THAT NOW

13   THE UNIVERSE OF WHAT THE COURT SHOULD FOCUS ON FOR THE ORDER

14   AND ITS ANALYSIS?

15          I'M SEEING MR. SCHAPIRO SHAKING YOUR HEAD YES.

16               MR. SCHAPIRO:  YES, YOUR HONOR.

17               THE COURT:  OKAY, THANK YOU.  THAT REALLY HELPS.

18          LET ME FOLLOW UP ON A POINT THAT MR. SCHAPIRO SAID, AND

19   THIS GOES -- VOLLEYS BACK TO MS. BONN.

20          WHAT IS YOUR ANSWER -- WHAT'S YOUR BEST ARGUMENT TO

21   MR. SCHAPIRO'S POINT THAT, OKAY, THE DATA MAY BE THE SAME, BUT

22   THE REPRESENTATIONS OF GOOGLE ARE DIFFERENT THAN FACEBOOK?

23          WHAT'S YOUR BEST ARGUMENT TO THAT POINT?

24               MS. BONN:  I THINK, NUMBER ONE, YOU KNOW, OUR BEST

25   ARGUMENT IS THE INCOGNITO SPLASH SCREEN.  THAT IS THE LAST AND

1      FINAL THING A USER SAW BEFORE THEY ENGAGED IN THE CONDUCT THAT

2      GOOGLE THEN INTERCEPTED.

3           NUMBER TWO, EVEN IN THE PRIVACY POLICY ITSELF, WHICH

4      GOOGLE POINTS TO, LOOKING AT THE VERSION THAT CAME INTO EFFECT

5      IN MAY OF 2018, WHICH IS EXHIBIT 8, THAT SAME PRIVACY POLICY

6      ALSO SAYS "YOU CAN ALSO CHOOSE TO BROWSE THE WEB PRIVATELY

7      USING CHROME IN INCOGNITO MODE, AND THAT ACROSS OUR SERVICES

8      YOU CAN CONTROL WHAT WE COLLECT."

9           AND WE ALLEGE THAT THAT IS FALSE BECAUSE YOU ACTUALLY

10     CAN'T CONTROL THE FACT THAT GOOGLE IS ENGAGING IN THIS

11     INTERCEPTION BY USING CHROME MODE OR THROUGH ANY OTHER METHOD.

12     NO MATTER WHAT THE USER DOES, EVEN IF THEY USE GOOGLE

13     INCOGNITO, WHEN THEY VISIT A THIRD PARTY WEBSITE THAT HAS THAT

14     EMBEDDED SECRET GOOGLE ANALYTIC SCRIPT, IT IS CAUSING THEIR

15     BROWSER TO SEND THAT INFORMATION THAT WE DISCUSSED EARLIER TO

16     GOOGLE.

17          AND SO EVEN IF YOU ACCEPT GOOGLE'S ARGUMENT THAT ITS

18     PRIVACY POLICY SHOULD TRUMP THE INCOGNITO SCREEN, WHICH WE

19     FUNDAMENTALLY DISAGREE WITH, EVEN THAT PRIVACY POLICY AS OF

20     MAY 2018 HAS LANGUAGE THAT TELLS USERS, "YOU CAN CONTROL WHAT

21     WE COLLECT ACROSS OUR SERVICES AND YOU CAN BROWSE THE WEB

22     PRIVATELY THROUGH INCOGNITO MODE."

23          WE THINK THAT WOULD GIVE A REASONABLE USER THE BELIEF THAT

24     WHATEVER ELSE IT MIGHT SAY IN THE PRIVACY POLICY, AS LONG AS

25     THEY'RE IN INCOGNITO MODE, THEY CAN TAKE STEPS TO CONTROL

1    WHAT'S COLLECTED.

2          THE COURT:  I HAVE ONE LAST ISSUE, OR QUESTION

3    DIRECTLY ON CONSENT, AND I DON'T KNOW WHO'S GOING TO HANDLE IT

4    FOR THE PLAINTIFFS.  I THINK, MS. BONN, YOU'RE HANDLING

5    CONSENT.

6          IN YOUR OPPOSITION, YOU ARGUE THAT THE WEBSITES COULD NOT

7    HAVE CONSENTED TO THE TRANSMISSION OF THE DATA BECAUSE THE

8    DUPLICATED GET REQUESTS GOOGLE INTERCEPTED ARE ADDITIONAL

9    MESSAGES THAT THE WEBSITES ARE NOT DIRECTLY PART OF.

10         SO THEN RESPOND TO GOOGLE'S ARGUMENT THAT IF GOOGLE IS THE

11   RECIPIENT OF THE COMMUNICATION, THEN IT'S EXEMPT FROM LIABILITY

12   UNDER THE WIRETAP ACT.

13         MS. BONN:  WELL, I THINK GOOGLE IS CLEARLY NOT THE

14   INTENDED RECIPIENT, AND THAT'S WHERE THIS IS SQUARELY WITHIN

15   FACEBOOK IF THEY'RE SURREPTITIOUSLY COLLECTING THIS DATA.  SO

16   THAT ARGUMENT IS A NON-STARTER.

17         AND I THINK GOOGLE MISAPPREHENDED IN THEIR REPLY BRIEF THE

18   REASON WHY WE EXPLAINED WHAT'S HAPPENING WITH THE TECHNOLOGY,

19   BECAUSE I THINK THE QUESTION IS, FOR EITHER A USER OR A

20   WEBSITE, WAS THE PRACTICE SPECIFICALLY DISCLOSED SUCH THAT

21   WHOEVER IS ON THE OTHER SIDE COULD HAVE CONSENTED?

22         AND OUR POINT IS THE WEBSITES DID NOT, COULD NOT HAVE

23   CONSENTED GIVEN THE NATURE OF THE COLLECTION THAT'S AT ISSUE

24   HERE.  IT MAKES IT EVEN LESS PLAUSIBLE, LESS LIKELY THAT THESE

25   WEBSITES WERE KNOWINGLY CONSENTING TO THIS TYPE OF COLLECTION.

1      AND THAT WAS REALLY OUR POINT.

2          GOOGLE HAS THE BURDEN OF PROVING WEBSITE CONSENT.  WE

3      DON'T THINK THEY COME CLOSE ANYWAY, BUT PARTICULARLY INSOFAR AS

4      THEY HAVE PRESENTED NO EVIDENCE THAT THEY DISCLOSED TO THE

5      WEBSITES THAT EVEN WHEN USERS ARE IN PRIVATE BROWSING MODE, THE

6      WEBSITES WOULD SOMEHOW BE CONSENTING NOT ONLY TO SENDING THE

7      GET REQUEST TO GOOGLE, BUT ALSO THAT ADDITIONAL INFORMATION

8      THAT'S ALSO BEING SENT SIMULTANEOUSLY.

9          THE COURT:  I HAVE TWO MORE QUESTIONS FOR THE

10     PLAINTIFFS, I HAVE ONE QUESTION FOR THE DEFENDANTS, AND THEN

11     I'M -- I'M GOING TO ALLOW YOU TO MAKE SHORT COMMENTS.

12         LET ME GO TO THE QUESTION ABOUT THE NATURE OF THE

13     WEBSITES.

14         SO IN THE PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS,

15     THE PLAINTIFFS DISTINGUISH THE NEW MOOSEJAW CASE ON THE GROUNDS

16     THAT THE COMMUNICATIONS IN THAT CASE WERE, YOU KNOW, ABOUT

17     CLOTHING AND IT WASN'T SORT OF HIGHLY SENSITIVE OR CONFIDENTIAL

18     WEBSITE INFORMATION.

19         SO THEN HOW DO YOU RESPOND TO GOOGLE'S ARGUMENT THAT THE

20     NATURE OF THE WEBSITES IS NOT RELEVANT AND THAT YOUR CLAIMS

21     COVER WEBSITES LIKE THE CLOTHING WEBSITE IN MOOSE --

22     NEW MOOSEJAW AND IT'S NOT LIMITED TO HIGHLY SENSITIVE OR

23     CONFIDENTIAL WEBSITES?

24         MS. BONN:  THANK YOU, YOUR HONOR.

25         AND MY COLLEAGUE, ALEX FRAWLEY, WILL BE ADDRESSING THAT

1    QUESTION.

2              MR. FRAWLEY:  GOOD AFTERNOON, YOUR HONOR.

3         SO I THINK WHAT GOOGLE IS DOING HERE IS MISCONSTRUING THE

4    LAW.  GOOGLE'S ARGUMENT IN THEIR REPLY AND IN THEIR OPENING

5    BRIEF IS THAT THERE'S THIS GENERAL RULE ABOUT INTERNET

6    COMMUNICATIONS AND THAT THEY CAN'T BE CONFIDENTIAL BECAUSE THEY

7    CAN BE SHARED.

8         BUT THAT IS EXPRESSLY WHAT CALIFORNIA COURTS HAVE

9    FORECLOSED AS THE STANDARD.  IN THE -- IN 2002, THE CALIFORNIA

10   SUPREME COURT HELD THAT THE ISSUE IS NOT WHETHER THE

11   COMMUNICATION MIGHT LATER BE SHARED.  THAT'S NOT WHAT

12   CONFIDENTIALITY TURNS ON.

13        THE QUESTION IS WHETHER THE USER -- THE COMMUNICATOR HAS

14   AN EXPECTATION THAT THE COMMUNICATION IS NOT BEING

15   SIMULTANEOUSLY OVERHEARD OR RECORDED.

16        SO GOOGLE'S FOCUS IS ON KIND OF THE WRONG STANDARD THAT

17   THE CALIFORNIA SUPREME COURT HAS ALREADY REJECTED.

18        AND NEW MOOSEJAW KIND OF RECOGNIZES THIS BECAUSE

19   NEW MOOSEJAW SAYS, SURE, BROWSING COMMUNICATIONS MIGHT BE

20   CONFIDENTIAL, BUT THOSE PARTICULAR ONES WEREN'T.

21        SO WHAT GOOGLE'S PROBLEM IS, IS THAT THEY'RE REALLY JUST

22   TOO CAUGHT UP IN INTERNET-BASED COMMUNICATIONS GENERALLY AND

23   NOT GRAPPLING WITH PRIVATE BROWSING COMMUNICATIONS AS HERE.

24              MS. BONN:  AND TO ADD TO THAT, YOUR HONOR, I MEAN,

25    THIS CASE IS ABOUT USERS WHO EXPLICITLY MADE A CHOICE TO USE A

1    PRIVATE BROWSING MODE.  THEY SPECIFICALLY EXPRESSED THEIR USER

2    PREFERENCE THAT THEIR BROWSING BE TREATED AS PRIVATE AND

3    CONFIDENTIAL.

4         SO WHETHER OR NOT A USER CHOSE TO USE THAT PRIVATE

5    BROWSING MODE TO GO TO ONE PARTICULAR TYPE OF WEBSITE OR

6    ANOTHER IS BESIDE THE POINT.

7         THE USER IN OUR CASE HAS EXPRESSED THEIR PREFERENCE THAT

8    WHAT THEY DO IN THAT PRIVATE BROWSING SESSION IS CONFIDENTIAL,

9    IT IS PRIVATE, AND THAT'S WHAT DISTINGUISHES THE CONDUCT AT

10   ISSUE HERE FROM OTHER GENERAL CASES ABOUT INTERNET SHOPPING OR

11   THE LIKE, LIKE NEW MOOSEJAW.

12        THE COURT:  I HAVE ONE LAST QUESTION FOR THE

13   PLAINTIFFS.  I'LL GIVE THE DEFENDANTS AN OPPORTUNITY TO RESPOND

14   TO ANYTHING THE PLAINTIFFS HAVE SAID, AND I WANT TO MAKE SURE

15   THAT MS. TREBICKA ARGUES TODAY.

16        OKAY.  SO HERE'S THE LAST QUESTION FOR THE PLAINTIFFS.  IN

17   ARGUING THAT EACH INTERCEPTION IS A SEPARATE VIOLATION THAT HAS

18   ITS OWN STATUTE OF LIMITATIONS, YOU ARGUE THAT THE SAME RULES

19   SHOULD APPLY FOR INTRUSION UPON SECLUSION AND INVASION OF

20   PRIVACY CLAIMS AS APPLIES TO WIRETAP ACT CLAIMS, AND WHAT'S

21   YOUR BEST AUTHORITY TO SUPPORT DOING SO?

22        MS. BONN:  YOU KNOW, TO BE CLEAR, I'M NOT SURE THAT I

23   CAN PINPOINT A SPECIFIC CASE THAT'S GOING TO GET US THERE.

24        I THINK THAT THE BEST AUTHORITY IS THAT CALIFORNIA LAW,

25   LIKE UNDER THE WIRETAP ACT, RECOGNIZES THE DOCTRINE OF SEPARATE

1    ACCRUALS AND THAT WHEN THERE'S SOME SORT OF CONDUCT THAT CAUSES

2    A SEPARATE INJURY, IT CAN TRIGGER A NEW LIMITATIONS PERIOD.

3         AND THAT'S REALLY THE BASIC POINT WE'RE MAKING.  IF

4    SOMEONE INVADES YOUR PRIVACY ON THREE DIFFERENT OCCASIONS, AS

5    LONG AS YOU'RE TIMELY WITHIN EACH SPECIFIC OCCASION, THAT

6    SHOULD BE ENOUGH.

7         AND FRANKLY, WE JUST DON'T THINK THAT THERE'S AUTHORITY

8    GOING THE OTHER WAY THAT SUGGESTS THAT IF GOOGLE HAS INVADED

9    YOUR PRIVACY OR INTRUDED UPON YOUR SECLUSION, THAT SOMEHOW

10   GOOGLE CAN SAY, "YEAH, BUT WE DID THE SAME THING THREE YEARS

11   EARLIER, TOO, SO ALL OF IT SHOULD BE TIME BARRED."

12        SO IT'S REALLY THAT FUNDAMENTAL PRINCIPLE.  SO OTHER THAN

13   WHAT'S IN OUR BRIEF, I CAN'T PINPOINT A CASE THAT'S GOING TO

14   HELP MAKE THAT EXPLICIT LINK.

15        BUT I THINK THE GENERAL RULES ABOUT ACCRUING STATUTES OF

16   LIMITATION IN CALIFORNIA SUPPORT THAT SAME BELIEF AND I DON'T

17   THINK THAT GOOGLE CAN POINT TO ANYTHING TO THE CONTRARY.

18             THE COURT:  ALL RIGHT.

19        LET ME ASK GOOGLE A QUESTION, AND THEN I'M GOING TO LET

20   YOU JUST RESPOND TO EACH OTHER BRIEFLY, PLEASE.

21        SO FOR GOOGLE, THE QUESTION PERTAINS TO THE ORDINARY

22   COURSE OF BUSINESS EXCEPTION, WHICH I DEFINITELY DEALT WITH IN

23   THE GMAIL LITIGATION AWHILE BACK.

24        SO WHY DOES THE PRODUCTION OF A DUPLICATE COMMUNICATION TO

25   GOOGLE EITHER FACILITATE THE TRANSMISSION OF THE COMMUNICATION

```
 1    AT ISSUE, OR WHY IS IT INCIDENTAL TO THE TRANSMISSION OF THE

 2    COMMUNICATION?  WHO IS ARGUING THAT POINT?

 3              MR. BROOME:  YES, YOUR HONOR.

 4         STEPHEN BROOME.  I'M HAPPY TO ADDRESS THAT POINT.

 5              THE COURT:  GO AHEAD.

 6              MR. BROOME:  ALL RIGHT.  SO THE DEVICE AT ISSUE HERE

 7    IS, IS -- THE DEVICE THAT IS ALLEGED TO HAVE INTERCEPTED

 8    PLAINTIFFS' COMMUNICATIONS WITH THE WEBSITES IS GOOGLE'S

 9    ANALYTICS AND ADS CODE THAT THE WEBSITES EMBED INTO THEIR

10    WEBSITES WHICH THEN CAUSES THIS DUPLICATED GET REQUEST TO BE

11    SENT TO GOOGLE'S SERVERS, AND THAT'S AT -- AND THAT'S ALLEGED

12    AT PARAGRAPHS 65 TO 79 OF THE AMENDED COMPLAINT, AND I THINK

13    PLAINTIFFS ACKNOWLEDGE THAT THAT IS THE DEVICE AT PAGE 4 OF

14    THEIR OPPOSITION WHERE THEY SAY GOOGLE'S EMBEDDED CODE WITHIN

15    THE WEBSITES CAUSES THE USER'S BROWSER TO SEND A DUPLICATE

16    COPY.

17         WELL, YOUR HONOR HELD IN GMAIL THAT THE ORDINARY COURSE OF

18    BUSINESS EXCEPTION REQUIRES A NEXUS BETWEEN THE NEED TO ENGAGE

19    IN THE INTERCEPTION AND THE ABILITY TO PROVIDE THE UNDERLYING

20    SERVICING -- UNDERLYING SERVICE OR GOOD.

21         WELL, HERE THE UNDERLYING SERVICE OR GOOD THAT THE CODE IS

22    USED FOR IS ANALYTICS AND AD SERVICES.  IT'S NOT TO FACILITATE

23    THE TRANSMISSION FROM PLAINTIFFS' BROWSERS TO THE WEBSITES.

24         THAT'S -- THAT'S -- I THINK THEIR ARGUMENT IS THAT THE

25    BROWSER IS DOING THAT.
```

1    BUT THE BROWSER IS NOT AN INTERCEPTING DEVICE UNDER THE

2    STATUTE.  THE INTERCEPTING DEVICE THAT THEY IDENTIFY HERE IS

3    THE CODE.

4        AND, YOU KNOW, THEY DO NOT ALLEGE THAT -- UNLIKE IN GMAIL

5    WHERE YOUR HONOR FOUND THAT GOOGLE COULD FACILITATE THE

6    TRANSMISSION OF E-MAILS WITHOUT ANALYZING THE CONTENT OF

7    E-MAILS FOR PURPOSES OF CREATING AD PROFILES, PLAINTIFFS HERE

8    DON'T ALLEGE THAT GOOGLE COULD PROVIDE THE ANALYTICS OR AD

9    MANAGER SERVICES WITHOUT RECEIVING THIS DATA, AND IT CAN'T.  I

10   MEAN, IT'S ESSENTIAL TO IT.  IT IS -- IT IS THE SERVICE THAT

11   GOOGLE IS PROVIDING.

12       SO THIS IS NOT LIKE GMAIL -- THIS IS NOT LIKE GMAIL AT

13   ALL.  HERE THE, THE PURPOSE OF THE DEVICE IS SERVING ADS AND

14   ANALYTICS.

15           THE COURT:  ALL RIGHT.

16   WHO FROM THE PLAINTIFFS' SIDE WANTS TO RESPOND TO THAT?

17           MR. LEE:  THANK YOU, YOUR HONOR.

18   JAMES LEE.  I'LL TAKE THAT ONE.

19       SO YOUR HONOR IS FAMILIAR WITH THIS ISSUE.  FIRST, YOU'VE

20   ALREADY ACTUALLY HEARD AND REJECTED A VERY SIMILAR ARGUMENT IN

21   THE GMAIL LITIGATION.  IN THE GMAIL LITIGATION, YOU HELD THAT A

22   VIOLATION OF GOOGLE'S OWN PRIVACY POLICIES PRECLUDES

23   APPLICATION OF THE ORDINARY COURSE OF BUSINESS EXCEPTION.

24       SO JUST OUT THE GATE, WE'VE ALLEGED THAT GOOGLE VIOLATED

25   ITS OWN POLICIES AND DISCLOSURES, SO ORDINARY COURSE OF

1    BUSINESS EXCEPTIONS DOESN'T APPLY HERE.

2         BUT TO ANSWER YOUR QUESTION MORE DIRECTLY, THE SECOND

3    REASON WHY THIS ARGUMENT FAILS IS THAT WE'VE ALLEGED THAT

4    GOOGLE'S INTERCEPTION IS NOT INSTRUMENTAL TO THE TRANSMISSION.

5         REMEMBER, WHEN A USER BROWSES THE INTERNET, THE

6    TRANSMISSION IS BETWEEN THE WEBSITE AND THE USER'S BROWSER.

7    GOOGLE'S INTERCEPTION HAS NOTHING TO DO WITH FACILITATING THAT

8    TRANSMISSION.

9         NOW, GOOGLE WANTS TO ARGUE, AS MR. BROOME JUST DID, HEY,

10   THAT'S NOT THE TRANSMISSION.  THE TRANSMISSION INVOLVES A

11   SERVICE BETWEEN THE WEBSITE AND GOOGLE CALLED GOOGLE ANALYTICS.

12        WELL, IF THAT'S TRUE, YOUR HONOR, THEN GOOGLE IS NOT

13   ACTING AS AN ELECTRONIC COMMUNICATION SERVICE IN THAT CAPACITY.

14   TO BE AN ELECTRONIC COMMUNICATION SERVICE, IT MUST BE PROVIDING

15   USERS, USERS, THE ABILITY TO SEND OR RECEIVE DATA, AND AN

16   EXAMPLE OF THAT WOULD BE GMAIL OR GCHAT.

17        GOOGLE ANALYTICS ISN'T DOING THAT AT ALL FOR THE USERS, SO

18   GOOGLE IS NOT ACTING AS AN ECS IN THAT CONTEXT.

19        EVEN IF IT WERE, EVEN IF WE WERE TO ACCEPT MR. BROOME'S

20   ARGUMENT THAT GOOGLE WAS SOMEHOW AN ECS IN THIS CONTEXT, IT

21   STILL DOESN'T HELP BECAUSE THE PURPOSE OF GOOGLE ANALYTICS IS

22   TO PROVIDE WEBSITES WITH ANALYTIC DATA.

23        BUT GOOGLE HERE ISN'T INTERCEPTING DATA SIMPLY TO PROVIDE

24   THE NEW YORK TIMES WITH ANALYTICS ABOUT THE SITE'S WEB TRAFFIC

25   OR DEMOGRAPHICS.  GOOGLE IS DUPLICATING THAT DATA, ADDING OTHER

1    DATA STRAIGHT FROM THE BROWSERS, PAIRING IT WITH OTHER USER

2    PROFILES, AND SELLING IT TO OTHERS.  THAT IS SEPARATE AND APART

3    FROM THE SERVICE THEY'RE PROVIDING THE NEW YORK TIMES.

4        SO YOU HEARD THIS LAST WEEK I THINK AT THE CALHOUN

5    HEARING.  IF YOU'RE TO ACCEPT GOOGLE'S POSITION, THAT MEANS

6    GOOGLE CAN USE THE CONTENT OF THE COMMUNICATION IT RECEIVES FOR

7    ANY PURPOSE.  THAT'S THEIR ACTUAL ARGUMENT.  AND THEN THEY CAN

8    JUST HIDE BEHIND THE FACT THAT IT IS PART OF SOME OTHER

9    SERVICE.

10       THAT'S INCONSISTENT WITH THE ECPA.  THE EXCEPTION IS

11   CERTAINLY NOT THAT BROAD.

12       AND IN THE GMAIL LITIGATION, YOUR HONOR POINTED THIS VERY

13   THING OUT, AND I'M QUOTING YOU HERE.  YOU SAID, "CONGRESS DID

14   NOT INTEND TO ALLOW ELECTRONIC COMMUNICATION SERVICE PROVIDERS

15   UNLIMITED LEEWAY TO ENGAGE IN ANY INTERCEPTION THAT WOULD

16   BENEFIT THEIR BUSINESS MODELS, AS GOOGLE CONTENDS."

17       YOU REJECTED THIS SAME TYPE OF ARGUMENT IN THE GMAIL

18   LITIGATION, YOU SHOULD REJECT IT TODAY.

19           MR. BROOME:  MAY I BRIEFLY RESPOND THERE, YOUR HONOR?

20           THE COURT:  YEAH, PLEASE.

21           MR. BROOME:  ONE THING MR. LEE DID NOT IDENTIFY OR

22   QUIBBLE WITH IS WHAT IS THE DEVICE AT ISSUE HERE.  I THINK

23   WE'RE ALL ON THE SAME PAGE THAT THE DEVICE IS THE CODE ON -- ON

24   THE WEBSITES THAT SERVES THE ANALYTICS AND ADS SERVICES, AND SO

25   I THINK THAT TAKES US OUT OF THIS, THIS CONCEPT THAT THE

1      TRANSMISSION AT ISSUE HERE IS BETWEEN THE USER'S BROWSER AND

2       THE WEBSITES.

3           THAT'S NOT -- YOU KNOW, THE TRANSMISSION AT ISSUE HERE IS

4      BETWEEN THE WEBSITES AND GOOGLE.  THAT'S WHAT THE DEVICE IS

5      INTERCEPTING.

6           MR. LEE ALSO MADE THE POINT THAT GOOGLE IS NOT AN ECS.

7      WELL, SECTION 2510 DEFINES AN ECS AS "ANY SERVICE WHICH

8      PROVIDES TO USERS THEREOF," WHICH IN THIS CASE IS THE WEBSITES,

9      "THE ABILITY TO SEND OR RECEIVE ELECTRONIC COMMUNICATIONS."

10          AND SECTION 2510(12) DEFINES ELECTRONIC COMMUNICATIONS TO

11     INCLUDE "ANY TRANSFER OF DATA OF ANY NATURE TRANSMITTED IN

12     WHOLE OR IN PART BY WIRE THAT AFFECTS INTERSTATE OR FOREIGN

13     COMMERCE."

14          ON THE FACTS ALLEGED, GOOGLE ANALYTICS AND ADS CODE FALLS

15     SQUARELY WITHIN THESE DEFINITIONS.

16          THE OTHER POINT I'D JUST LIKE TO ADDRESS IS THAT MR. LEE

17     SAID, WELL, NOW WE'RE SETTING UP A STANDARD WHERE GOOGLE CAN

18     USE THIS DATA FOR ANY PURPOSE IT LIKES AND AN ECS CAN USE THIS

19     DATA FOR ANY PURPOSE IT LIKES, AND THAT'S NOT WHAT WE'RE SAYING

20     AT ALL.

21          WE'RE SAYING THAT GOOGLE CAN USE THIS DATA FOR THE

22     PURPOSES FOR WHICH THE WEBSITES TRANSMIT THE DATA TO GOOGLE,

23     AND THAT'S TO PROVIDE ADS AND ANALYTIC SERVICES.

24          AND JUST FINALLY ON THE POINT THAT, YOU KNOW, GOOGLE IS

25     PACKAGING THIS UP, ALL THIS DATA UP AND SELLING IT OFF TO THIRD

1    PARTIES, THAT'S NOT TRUE, AND I DON'T THINK THERE ARE ANY WELL

2    PLEADED ALLEGATIONS OTHER THAN JUST PURELY CONCLUSORY

3    ALLEGATIONS.  BUT THAT'S NOT HOW GOOGLE SERVICES WORK.

4         THE COURT:  HOW DO THEY WORK?  WHAT DO THEY SELL?

5    HOW DO THEY SELL IT?

6         MR. BROOME:  GOOGLE SERVES THE ADS.  SO THE WEBSITES

7    INSTALL THE CODE ON THEIR SITES, THAT SENDS A SIGNAL TO THE

8    USER'S BROWSER WHICH THEN -- IT'S VERY SIMILAR TO FACEBOOK,

9    IT'S THE SAME TRANSMISSION OF DATA, AND THAT SENDS THE DATA TO

10   GOOGLE.

11        SO FOR GOOGLE ANALYTICS, GOOGLE THEN HAS THAT DATA AND IS

12   ABLE TO SERVE ADS ON THE WEBSITE, ON THE WEBSITE ITSELF.

13        IT'S NOT LIKE GOOGLE IS TAKING THE DATA, PACKAGING IT UP,

14   AND SENDING IT OFF TO ADVERTISERS.  ADVERTISERS WITH CONTRACTS

15   WITH WEBSITES AND GOOGLE TO DO THE ANALYSIS -- GOOGLE DOES THE

16   ANALYSIS INTERNALLY AND THEN POPULATES AN AD ON THE SITE.

17        THE COURT:  SO YOU'RE DENYING THAT GOOGLE USES THE

18   INFORMATION TO ENHANCE ITS USER PROFILES?

19        MR. BROOME:  IT DEPENDS WHAT YOU MEAN BY "USER

20   PROFILES."  BUT, I MEAN, WE DON'T REALLY HAVE USER PROFILES.

21        BUT THE TYPES OF DATA THAT ARE BEING TRANSMITTED TO GOOGLE

22   ARE THEN -- YES, THEY ARE ANALYZED, AND THAT WOULD INCLUDE IN

23   SOME CASES BROWSING HISTORY.

24        IN THE CONTEXT OF PRIVATE BROWSING BECAUSE THE COOKIES,

25   YOU KNOW, ARE -- THE EXISTING COOKIES ON THE BROWSER ARE NOT

1    SHARED IN THAT TRANSMISSION, AND THE COOKIES ARE DELETED WHEN

2    THE PRIVATE BROWSING SESSION IS CLOSED.

3        SO YOU COULD HAVE A SITUATION, YOU KNOW, IF A PERSON WENT

4    TO FIVE WEBSITES THAT ALL USED GOOGLE SERVICES, THEN GOOGLE

5    WOULD HAVE A RECORD OF THOSE FIVE WEBSITES BEING VISITED AND,

6    YOU KNOW, ITS ADVERTISING ALGORITHMS COULD ANALYZE THOSE FIVE

7    SITES, AND THEN THE AD THAT YOU SEE ON THE SIXTH SITE MAY BE

8    REFLECTIVE OF THAT PRIOR BROWSING HISTORY.

9        SO THAT'S THE WAY THAT IT'S USED.

10       BUT IT'S NOT PACKAGED UP AND SOLD TO THIRD PARTIES.

11           THE COURT:  ALL RIGHT.

12       LET ME HEAR FROM MR. LEE.  GO AHEAD AND RESPOND, PLEASE.

13           MR. LEE:  SURE.  SO I THINK THAT THE BIGGEST

14   MISCONCEPTION HERE IS WHAT THE TRANSMISSION IS, RIGHT?

15       MR. BROOME SUGGESTED THAT THE TRANSMISSION IS BETWEEN THE

16   WEBSITE AND GOOGLE THROUGH THE SERVICE GOOGLE ANALYTICS.

17       BUT THAT'S ACTUALLY INCONSISTENT WITH OUR ALLEGATIONS.

18   IT'S ALSO INCONSISTENT WITH THE TECHNOLOGY.

19       THE WAY IT REALLY WORKS IS THE SCRIPTS ARE EMBEDDED INTO

20   THE WEB PAGES BY GOOGLE, THROUGH GOOGLE ANALYTICS, RIGHT?  AND

21   WHEN A USER VISITS A WEB PAGE, THAT CODE DIRECTS THE USER'S

22   BROWSER TO THEN SEND A DUPLICATE COMMUNICATION TO GOOGLE.

23       SO THE BROWSE -- THE TRANSMISSION AT ISSUE CANNOT BE

24   BETWEEN GOOGLE AND THE WEBSITES.  THEY'RE NOT ACTUALLY MEETING

25   IN THE MIDDLE.  GOOGLE IS TAKING THAT INFORMATION DIRECTLY FROM

1    THE USER'S BROWSER.

2         SO I THINK THAT WE JUST, FROM THE OUTSET, DON'T AGREE THAT

3    THE TRANSMISSION IS AS MR. BROOME SUGGESTS.  I THINK WE'RE A

4    LITTLE FAR AFIELD HERE IN THAT THE TRANSMISSION IS REALLY

5    BETWEEN THE USER AND THE WEBSITE.

6         BUT EVEN IF THAT WEREN'T THE CASE, I THINK MR. BROOME'S

7    CHARACTERIZATION IS INCORRECT, AND IN EITHER CASE, WE'RE STILL

8    NOT -- GOOGLE IS STILL NOT ACTING AS AN ECS IN THAT CONTEXT.

9              MR. BROOME:  IF I COULD JUST --

10             THE COURT:  I DON'T WANT TO HEAR ANY MORE ON THAT.

11        IF YOU WANT TO RESPOND ANY MORE TO OTHER POINTS THAT HE

12   MADE?

13             MR. LEE:  YEAH, JUST ON THE USER PROFILE ISSUE,

14   JUDGE, WE OBVIOUSLY ALLEGE IN PRETTY GOOD DETAIL WHAT GOOGLE

15   DOES IN TERMS OF ONCE IT RECEIVES THE PRIVATE BROWSING

16   HISTORIES, HOW IT PAIRS IT WITH OTHER INFORMATION IT ALREADY

17   HAS, PRIOR BROWSING HISTORIES, AS WELL AS UNIQUE USER

18   IDENTIFIERS.

19        AND THEN ONCE THEY HAVE ALL THAT, THEN THEY CAN PAIR IT

20   WITH THE PROFILES THAT THEY DO KEEP.

21        AND IT'S -- I DON'T REALLY THINK IT'S REALLY A

22   CONTROVERSIAL POINT THAT WE KNOW THAT GOOGLE KEEPS USER

23   PROFILES AND THAT'S HOW THEY MONETIZE THEIR BUSINESS.  THEY'RE

24   THE LARGEST TRACKING COMPANY IN THE UNIVERSE.  SO TO SUGGEST

25   THAT THEY MAY OR MAY NOT HAVE USER PROFILES I THINK IS A LITTLE

```
 1     BIT SILLY.
 2              THE COURT:  OKAY.  SO IS THAT YOUR COMPLETE RESPONSE?
 3     ONCE YOU COMPLETE YOUR RESPONSE, THEN I'LL GO BACK TO
 4     MR. BROOME AND LET HIM RESPOND.
 5              MR. LEE:  SURE.  YES, YOUR HONOR.
 6              THE COURT:  ANY OTHER POINTS YOU WANTED TO MAKE?
 7              MR. BROOME:  SORRY.  WAS THAT TO ME, YOUR HONOR?
 8              THE COURT:  NO.  I WANTED MR. LEE TO FINISH BEFORE --
 9     THIS IS VOLLEYBALL, SO I WANT HIM TO FINISH BEFORE HE VOLLEYS
10     IT BACK TO YOU AND THEN YOU CAN RESPOND.
11              MR. BROOME:  UNDERSTOOD.
12              THE COURT:  MR. LEE, DID YOU FINISH?
13              MR. LEE:  YES.  MR. BROOME HAS THE BALL.
14              THE COURT:  OKAY.
15          GO AHEAD, PLEASE, MR. BROOME.
16              MR. BROOME:  YES, YOUR HONOR.
17          I DON'T THINK WE'RE IN DISAGREEMENT ABOUT THE DATA FLOW OR
18     THE COMMUNICATION FLOW HERE.  WE AGREE THAT USERS COMMUNICATE
19     WITH WEBSITES, WEBSITES INSTALL CODE THAT CAUSES THE USER'S
20     BROWSER TO SEND THE DATA TO GOOGLE.
21          BUT MY POINT ABOUT THE ORDINARY COURSE OF BUSINESS
22     EXCEPTION IS THAT THE ALLEGED INTERCEPTING DEVICE IS THE CODE,
23     AND THAT CODE IS NOT DESIGNED TO FACILITATE TRANSMISSIONS
24     BETWEEN THE USER'S BROWSER AND THE WEBSITES.
25          THAT'S WHERE THEY'RE SAYING, YOU KNOW, THE CODE IS
```

1    DESIGNED TO FACILITATE A REDIRECTION OF THAT COMMUNICATION OR A

2    COPYING OF THAT COMMUNICATION TO GOOGLE'S SERVER.

3         AND SO THE QUESTION UNDER THE ORDINARY COURSE OF BUSINESS

4    EXCEPTION IS, WHAT THE PURPOSE OF THAT?  AND THE PURPOSE OF

5    THAT INTERCEPTION, IF WE WANT TO CALL IT THAT, IS SO THAT

6    GOOGLE CAN PROVIDE THE ADS AND ANALYTIC SERVICES THAT THOSE

7    WEBSITES HAVE CONTRACTED FOR.

8              THE COURT:  ALL RIGHT.

9              MR. BROOME:  I DO HAVE A COUPLE OF POINTS ON WEBSITE

10   CONSENT, BUT I DON'T KNOW IF YOU WANTED ME TO ADDRESS THOSE NOW

11   OR LATER.

12             THE COURT:  WELL, I WANTED TO ASK MS. TREBICKA

13   WHAT -- OF ANY OF THE QUESTIONS THAT I ASKED TODAY, DID ANY OF

14   THOSE COVER AREAS THAT YOU WERE GOING TO ARGUE?  WOULD YOU LIKE

15   TO MAKE ANY POINTS?

16             MS. TREBICKA:  SURE.  THANK YOU, YOUR HONOR.  I

17   REALLY APPRECIATE IT.

18        I DID WANT TO CLARIFY SOMETHING, WHICH REALLY CUTS ACROSS

19   SEVERAL CLAIMS, BUT IN PARTICULAR THE INTRUSION UPON SECLUSION

20   AND THE INVASION OF PRIVACY CLAIMS, WHICH IS THAT WE DON'T

21   UNDERSTAND THE COMPLAINT TO ALLEGE THAT GOOGLE IS ASSOCIATING

22   PRIVATE BROWSING DATA FROM SIGNED UP USERS WITH AN INDIVIDUAL'S

23   GOOGLE ACCOUNT PROFILE.  IT'S INCORRECT FACTUALLY.  IT DOESN'T

24   HAPPEN.

25             BUT IF THAT IS INDEED THE THEORY OF THE CASE AND THEY HAVE

```
 1    A BASIS UNDER RULE 11 TO MAKE THOSE ALLEGATIONS, THEN I THINK

 2    THEY CAN AMEND THE COMPLAINT TO STATE THIS THEORY IN A CLEAR

 3    AND NON-CONCLUSORY MANNER.

 4         SO THAT'S -- THAT'S ONE WAY TO TRY TO STATE A CLAIM.

 5         IF, IN FACT, WE ARE CORRECT AND THE COMPLAINT DOES NOT

 6    PROPERLY ALLEGE THAT THIS PRIVATE BROWSING DATA FROM SIGNED UP

 7    USERS IS CONNECTED TO AN ACCOUNT PROFILE, THEN THAT IS

 8    INSUFFICIENT TO STATE A CLAIM UNDER THE INVASION OF PRIVACY

 9    CAUSES OF ACTION.

10         AND THAT IS WHAT YOUR HONOR HELD IN IN RE: YAHOO! MAIL

11    SPECIFICALLY, AND THERE IS A FOOTNOTE THERE WHICH IS

12    PARTICULARLY IMPORTANT.  IT'S FOOTNOTE 12 OF THAT DECISION, THE

13    2014 DECISION.

14         AND I FIND THAT FOOTNOTE IMPORTANT NOT ONLY BECAUSE IT

15    SETS UP THIS, THIS IDEA THAT IF YOU HAVE JUST A GENERIC PROFILE

16    THAT -- WHERE BROWSING DATA IS LINKED, THAT IS INSUFFICIENT TO

17    STATE A CLAIM UNDER AN INVASION OF PRIVACY OR INTRUSION UPON

18    SECLUSION CAUSE OF ACTION.

19         IF YOU HAVE, HOWEVER -- IF YOU HAVE ALLEGATIONS ABOUT

20    LINKING THIS TO A PROFILE, THEN THAT'S ANOTHER MATTER.

21         AND WHY I FIND THIS IMPORTANT ALSO IS BECAUSE YOUR HONOR

22    DISTINGUISHES THE UNG VERSUS FACEBOOK CASE, WHICH WAS A STATE

23    COURT DECISION THAT IS ACTUALLY ON THE EXACT SAME FACT PATTERN

24    AS THE IN RE: FACEBOOK INTERNET TRACKING CASE.

25         AND THERE, TOO, THE JUDGE IN THAT CASE HELD THAT FOR USERS
```

1    WHOSE BROWSING DATA WAS ALLEGEDLY LINKED TO AN ACCOUNT, THEN,

2    YES, THEY MAY HAVE STATED A CLAIM.  FOR THOSE USERS WHERE THEIR

3    BROWSING DATA WAS NOT LINKED TO AN ACCOUNT, THEN THEY HAVE NOT

4    STATED A CLAIM.

5         THAT DICHOTOMY IS VERY CLEAR IN THE CASE LAW, AND IT'S

6    ALSO WHAT DISTINGUISHES THE IN RE: FACEBOOK TRACKING LITIGATION

7    CASE IN THE NINTH CIRCUIT.

8         SO IF WE DON'T HAVE THAT HERE, IF THERE ARE NO PROPER

9    ALLEGATIONS, WHICH WE SUBMIT THERE AREN'T, THAT THIS PRIVATE

10   BROWSING DATA OF LOGGED OUT USERS, WHO ARE THE USERS ON BEHALF

11   OF WHOM PLAINTIFFS ARE SUING HERE, IF THAT DATA IS NOT LINKED

12   TO A USER ACCOUNT, THEN WE DO NOT HAVE A SUFFICIENT BASIS TO

13   STATE A CLAIM UNDER THE INTRUSION UPON SECLUSION AND THE

14   INVASION OF PRIVACY CAUSES OF ACTION.

15            THE COURT:  ALL RIGHT.

16        WHO FROM PLAINTIFF WANTS TO RESPOND, AND THEN WE'LL GO

17   BACK TO MR. BROOME ON WEBSITE CONSENT.  ANYONE WANT TO RESPOND

18   TO THIS POINT?

19            MS. BONN:  I THINK, YOUR HONOR, MR. FRAWLEY IS

20   ADDRESSING THE SECLUSION ISSUES.

21            THE COURT:  OH, OKAY.

22        GO AHEAD, PLEASE.

23            MR. FRAWLEY:  SURE.  THANK YOU, YOUR HONOR.

24        SO WE DO DISAGREE ABOUT THE FACTUAL ALLEGATIONS THAT WE

25   MADE.  AS MR. LEE, MY COLLEAGUE, SAID, WE THINK WE ALLEGE

1    CLEARLY AND IN DETAIL HOW GOOGLE ASSOCIATES THE PRIVATE

2    BROWSING COMMUNICATIONS WITH PROFILES.

3         BUT EVEN SETTING THAT ASIDE FOR A MOMENT, WE DISAGREE WITH

4    GOOGLE'S ARGUMENT JUST NOW THAT THAT'S A NECESSARY PREDICATE

5    FOR STATING INVASION OF PRIVACY CLAIMS.  AND IF YOU LOOK AT THE

6    MOST RECENT CASE LAW, AND MOST IMPORTANTLY WHAT THE NINTH

7    CIRCUIT SAID IN THE FACEBOOK CASE LAST YEAR, WHAT THE NINTH

8    CIRCUIT SAID WAS THAT -- THE CRITICAL ISSUE WAS THAT THE ENTITY

9    REPRESENTED THAT CERTAIN DATA WOULD NOT BE COLLECTED, BUT THEN

10   COLLECTED IT ANYWAY.

11        AND THAT'S THE SAME THING THAT HAPPENED IN THE NICKELODEON

12   CASE.  VIACOM MADE A REPRESENTATION THAT IT WOULDN'T COLLECT

13   CERTAIN DATA, AND THEN IT COLLECTED IT ANYWAY, AND THAT'S WHY

14   THE PLAINTIFFS STATED A CLAIM.

15        AND THE SAME THING BEFORE THAT IN THE IN RE: GOOGLE COOKIE

16   CASE.

17        SO HERE GOOGLE SAID A REPRESENTATION THAT IT WOULD NOT

18   COLLECT USER'S PRIVATE BROWSING DATA THROUGH THE SPLASH SCREEN

19   AND THROUGH OTHER UNIFORM DISCLOSURES, BUT THEN IT DID EXACTLY

20   THAT.  AND THAT'S THE CRITICAL FACT -- THAT WAS THE, QUOTE,

21   "CRITICAL FACT" IN THE FACEBOOK CASE.

22        AS FOR YAHOO!, YOUR HONOR IS OBVIOUSLY VERY FAMILIAR WITH

23   YAHOO!.  OUR UNDERSTANDING OF YAHOO! IS THAT -- THE ISSUE IN

24   YAHOO! IS THAT THE PLAINTIFFS WERE JUST ARGUING THAT E-MAIL

25   GENERALLY COMES WITH AN EXPECTATION OF PRIVACY, AND YOUR HONOR

1    CORRECTLY POINTED OUT, NO, YOU CAN'T JUST SAY THAT I HAVE A

2    GENERAL EXPECTATION OF PRIVACY IN WHAT I E-MAIL, YOU HAVE TO

3    ALLEGE PARTICULAR FACTS ABOUT WHAT KINDS OF E-MAILS YOU'RE

4    TALKING ABOUT, AND THE PLAINTIFFS DIDN'T DO THAT IN YAHOO!.

5        BUT HERE WE'RE NOT JUST SAYING THAT WE HAVE AN EXPECTATION

6    OF PRIVACY IN BROWSING COMMUNICATIONS GENERALLY.  WE'RE SAYING

7    THAT THESE ARE PARTICULAR KINDS OF BROWSING COMMUNICATIONS.

8    THESE ARE PRIVATE BROWSING COMMUNICATIONS.  THIS WAS A SAFE

9    PLACE WHERE GOOGLE, USING DUPLICITOUS TACTICS, TO QUOTE THE

10   NICKELODEON LANGUAGE, INVITED USERS, AS A MEANS OF CONTROL,

11   SAYING ON THE SPLASH SCREEN, ONLY THESE THREE ENTITIES CAN SEE

12   YOU, RIGHT, NOT GOOGLE, AND THEN THEY STILL COLLECTED THE DATA

13   ANYWAY.

14       SO THAT'S REALLY THE HEART OF THE FACEBOOK CASE, THAT'S

15   THE HEART OF THE NICKELODEON CASE, AND THAT'S THE HEART OF THE

16   GOOGLE COOKIE CASE.  AND WE HAVE THE SAME DECEPTION HERE.

17           MR. LEE:  IF I MAY, YOUR HONOR, JUST TO BE CLEAR,

18   WE -- THE PLAINTIFFS HAVE ALLEGED, IN PROBABLY A DOZEN

19   PARAGRAPHS, HOW THE PRIVATE BROWSING DATA GETS LINKED TO THE

20   USER PROFILES.  IT STARTS ON PARAGRAPH 70.  WE DO A LITTLE BIT

21   MORE BEGINNING ON PARAGRAPH 93 THROUGH PARAGRAPH 115.

22           THE COURT:  93 THROUGH 115.  ALL RIGHT.

23       LET ME GO BACK TO MS. TREBICKA IF YOU WANT TO RESPOND TO

24   MR. FRAWLEY.

25           MS. TREBICKA:  SURE, YOUR HONOR.

1    TAKING THE CASES OF, LIKE THE FACEBOOK COOKIE PLACEMENT

2    AND IN RE: NICKELODEON, WHAT WE HAVE THERE THAT WE DON'T HAVE

3    HERE IS AN EXPLICIT PROMISE THAT THE DEFENDANT WOULD NOT TRACK

4    AND THAT IT DID.

5        AND THE PROMISES -- THE EXPLICIT PROMISES IN THOSE CASES

6    ARE NOT PRESENT HERE, PUTTING RHETORIC ASIDE OF COURSE.

7    FACEBOOK STATED, "IF YOU LOG OUT OF FACEBOOK, WE WILL NOT

8    RECEIVE THIS INFORMATION."

9        YOU DON'T FIND THAT HERE.

10       SAME IN NICKELODEON, VERY PROMINENT DISCLOSURES, "HEY,

11   GROWNUPS, WE DON'T COLLECT ANY PERSONAL INFORMATION ABOUT YOUR

12   KIDS," AND THEN THE ALLEGATIONS WERE THAT THEY DID.

13       SO THE NATURE OF THE PROMISE HERE IS VERY DIFFERENT FROM

14   THE CASES THAT MR. FRAWLEY -- THAT MR. FRAWLEY MENTIONED, EVEN

15   WITHOUT GOING TO A FINDING OF CONSENT, JUST ON THE BASIS OF

16   THIS EXPLICIT PROMISE IN THOSE CASES THAT DOESN'T EXIST HERE.

17       AS TO THE ADDITION THAT MR. LEE MADE ABOUT THERE BEING

18   ALLEGATIONS IN THE COMPLAINT THAT THIS PRIVATE BROWSING DATA OF

19   LOGGED OUT USERS IS ACTUALLY LINKED TO A PROFILE, WE DON'T

20   THINK THAT THEY RISE TO THE LEVEL OF PLAUSIBLE ALLEGATIONS.

21       THERE IS ONE CRITICAL OMISSION IN THOSE ALLEGATIONS, WHICH

22   IS THAT NOWHERE DO PLAINTIFFS ALLEGE THAT THE COOKIES PLACED

23   DURING THE PRIVATE BROWSING ACTUALLY REMAIN AFTER THE BROWSER

24   IS CLOSED, AND THAT'S A PROBLEM BECAUSE ALL OF THE MATERIALS

25   THAT ARE CODED IN THE COMPLAINT ESTABLISH THAT IT'S COOKIES

```
1     THAT ARE USED TO IDENTIFY THE BROWSER WHEN THE USER IS LOGGED

2     OUT, AND THE COOKIES THAT ARE ASSOCIATED WITH A PRIVATE

3     BROWSING SESSION ARE DELETED AFTER THE PRIVATE BROWSING SESSION

4     IS CLOSED.  SO THAT'S A HUGE PROBLEM.

5          AND THEN THE REMAINING SCATTERSHOT ALLEGATIONS, THEY JUST

6     DON'T ADD UP.  THEY'RE NOT PLAUSIBLE.

7          AND I'D LIKE TO POINT YOUR HONOR'S ATTENTION TO

8     LOW V. LINKEDIN WHERE PLAINTIFFS THERE HAD SIMILAR ALLEGATIONS

9     ABOUT WHAT A DEFENDANT COULD DO TO LINK THE DATA THAT WAS

10    OTHERWISE UNIDENTIFIED TO A PARTICULAR IDENTITY, AND YOUR HONOR

11    SAID THAT'S JUST NOT ENOUGH.  THESE SPECULATIONS ARE NOT

12    ENOUGH.  YOU NEED SOMETHING MORE CONCRETE AND SOMETHING THAT

13    MAKES SENSE, AND WE DON'T HAVE THAT HERE.

14          THE COURT:  I WILL SAY THAT THE LOW V. LINKEDIN CASE,

15     IT WAS REALLY A RULE 8.  THEY HAD VERY VAGUE, INSUFFICIENT

16     ALLEGATIONS.  I GAVE THEM LEAVE TO AMEND HOPING THAT THEY WOULD

17     PROVIDE MORE AND THEY NEVER COULD SATISFY RULE 8.

18         MR. FRAWLEY, YOU WANT A QUICK RESPONSE?  OTHERWISE I'M

19     GOING TO GO BACK TO MR. BROOME ON WEBSITE CONSENT.

20          MR. FRAWLEY:  NO, YOUR HONOR.  THANK YOU.

21          THE COURT:  ALL RIGHT.

22          MR. MAO:  YOUR HONOR, THIS IS MR. MAO.  MAY I JUST

23     RESPOND REAL QUICKLY ON THAT?

24          THE COURT:  OKAY.  GO AHEAD.

25          MR. MAO:  SORRY.  I KIND OF -- I'M THE PERSON THAT
```

1      DRAFTED THE COMPLAINT.

2          THE COMPLAINT MAKES VERY CLEAR THAT THERE ARE MORE THAN

3      ONE WAY IN WHICH GOOGLE IDENTIFIES USERS, AND I APPRECIATE

4      WHILE MS. VIOLA AND GOOGLE TAKE THE POSITION THAT IN ORDER FOR

5      GOOGLE TO IDENTIFY, YOU MUST BE LINKED TO A MY ACCOUNT OR A

6      GOOGLE ACCOUNT, AND THAT'S SIMPLY NOT TRUE.

7          IF YOU LOOK AT THE COMPLAINT, ONE OF THE THINGS IN WHICH

8      THE PLAINTIFFS HAVE POINTED OUT IS THERE'S THIS THING CALLED

9      GOOGLE ANALYTICS USER I.D., WHICH IS SOMETHING THAT GOOGLE USES

10     TO HELP ASSOCIATE DATA AND BROWSING HISTORY SPECIFICALLY WITH

11     INDIVIDUALS THAT THEY HAVE IDENTIFIED ALONGSIDE WITH WEBSITES,

12     THAT WEBSITES CANNOT IDENTIFY THAT UNLESS GOOGLE IS ACTUALLY

13     HELPING ASSOCIATE THAT THROUGH ITS WIDE NETWORK OF ADMISSIONS,

14     BASICALLY, THROUGH THE INTERNET.

15         SO THE REASON WHY THAT IS IMPORTANT, YOUR HONOR, IS

16     BECAUSE YOU CAN SEE THERE ARE MULTIPLE WAYS IN WHICH GOOGLE IS

17     TAGGING HERE.  AND WHAT'S AT ISSUE HERE IS THAT WE HAVE ALLEGED

18     THAT BUT FOR THE FACT THAT GOOGLE HAS MANIPULATED AND

19     CIRCUMVENTED THE BROWSER, THAT TYPE OF IDENTIFICATION WOULD NOT

20     BE POSSIBLE.

21         AND HERE, IF GOOGLE IS GOING TO SAY:  WE'RE NOT GOING TO

22     BE TRACKING YOUR BROWSING HISTORY," THEY CAN'T CIRCUMVENT THAT

23     BY SAYING, "WELL, WE WILL PASS YOUR BROWSING HISTORY WHILE YOU

24     HAVE THE SESSION OPEN, WE'LL HELP OTHER PEOPLE SAVE THAT, TRACK

25     THAT, AND THEN WE TARGET YOU.  OH, AND BY THE WAY, WHEN YOU

1    CLOSE THE BROWSER, THEN YOU'VE DELETED YOUR COOKIES AND WE HAVE

2    NOT MADE A TECHNICAL VIOLATION, BECAUSE ALTHOUGH WE READ YOUR

3    COOKIES AND SAVED IT REMOTELY DURING THAT SESSION, WE DELETED

4    IT THEREAFTER AND THEREFORE YOU HAVE NOT BEEN IDENTIFIED."

5         THAT IS -- THAT IS JUST ABSOLUTELY FALSE AND MISLEADING TO

6    CONSUMERS.  WHY WOULD A REASONABLE CONSUMER BELIEVE THAT THERE

7    WOULD BE ANY DIFFERENCE BETWEEN WHETHER THEY'RE SAVING THE

8    BROWSING HISTORY REMOTELY OR WITH OTHER PEOPLE AS OPPOSED TO

9    SAVING IT LOCALLY?

10        BUT THAT IS -- WHEN YOU SAY THAT YOU'RE NOT GOING TO TRACK

11   CONSUMERS, YOU'RE NOT GOING TO TRACK THEIR BROWSING HISTORY,

12   GOOGLE SHOULD BE HELD TO THAT PROMISE.

13         THE COURT:  LET ME GO TO MR. BROOME.

14        YOU WANTED TO ADDRESS THE WEBSITE CONSENT ISSUE.  GO

15   AHEAD, PLEASE.

16         MR. BROOME:  YES, YOUR HONOR, I DO, ALTHOUGH I THINK

17   MS. TREBICKA MAY HAVE A BRIEF RESPONSE TO MR. MAO, IF THAT'S

18   OKAY.  BUT YES, THAT'S FAIR.

19         MS. TREBICKA:  IF IT DOESN'T LENGTHEN TOO MUCH THE

20   ARGUMENT, YOUR HONOR.

21         THE COURT:  GO AHEAD, PLEASE.

22         MS. TREBICKA:  I'LL KEEP IT BRIEF.

23        SO THE USER I.D. ISSUE, OF COURSE, IS DISCLOSED, AND IT

24   SPECIFICALLY IS DISCLOSED THAT THE USER I.D. IS SOMETHING

25   THAT'S GENERATED BY THE WEBSITE, NOT BY GOOGLE, AND THAT THIS

1        USER I.D. IS WEBSITE SPECIFIC.  THAT IS THE HELP CENTER ARTICLE

2        THAT PLAINTIFFS CITE IN THEIR FIRST AMENDED COMPLAINT, AS WELL

3        AS AT PAGE 60 -- AT PARAGRAPH 69, I BELIEVE, BUT I CAN FIND THE

4        EXACT CITE IF THAT'S IMPORTANT.

5            SO IT DOESN'T WORK AS A UNIVERSAL IDENTIFIER TO LINK

6        SOMETHING TO A PROFILE OR SOMETHING MORE, MORE SPECIFIC THAN

7        JUST THE GENERIC PROFILE LIKE THE ONES THAT WERE AT ISSUE IN

8        IN RE: YAHOO!.

9            BUT MORE IMPORTANTLY, YOUR HONOR, I THINK WHAT MR. MAO IS

10       CONFUSING IS CAPABILITY VERSUS LIABILITY OR CULPABILITY, RIGHT?

11       CAPABILITIES, THERE MAY BE MANY.  OF COURSE GOOGLE IS A BIG

12       COMPANY.  OF COURSE IT COLLECTS A LOT OF INFORMATION.

13           THE QUESTION IS, WHAT ACTUALLY HAPPENS TO THIS

14       INFORMATION?  AND THAT'S WHERE THE ALLEGATIONS DO FALL SHORT

15       AND ARE CONTRARY TO THE FACTS.

16               THE COURT:  LET ME LET MR. MAO RESPOND.

17               MR. MAO:  YES, YOUR HONOR.

18           WE FUNDAMENTALLY DISAGREE.  JUST BECAUSE GOOGLE HAS HELPED

19       OTHER PARTIES PAIR UP INFORMATION THAT THEY WOULD NOT OTHERWISE

20       INDEPENDENTLY BE ABLE TO COLLECT AND THEREAFTER KIND OF WIPED

21       ITS HANDS CLEAN OF THAT DOES NOT MEAN THAT IT HAS NOT CREATED

22       LIABILITY FOR ITSELF.

23           AND HERE WE EXPRESSLY --

24               THE COURT:  I'M SORRY TO INTERRUPT YOU.

25               MR. MAO:  YEAH.

1          THE COURT:  CAN YOU BE SPECIFIC?  I THOUGHT YOU HAD

2     SAID THE USER I.D. IS GOOGLE ANALYTICS, BUT MS. TREBICKA IS

3     SAYING NO, THAT'S GENERATED BY THE WEBSITE, IT'S NOT GOOGLE'S

4     USER I.D., UNLESS I MISUNDERSTOOD BOTH OF YOU.

5          MR. MAO:  SO WHAT WE --

6          THE COURT:  SO CAN YOU TELL ME JUST THE MECHANICS OF

7     HOW THIS IS WORKING, THIS CIRCUMVENTION OF THE BROWSING THAT

8     YOU ARE REFERENCING?  JUST WHAT ARE THE MECHANICS OF HOW THIS

9     IS WORKING?

10          MR. MAO:  YES.  SO GOOGLE ON THE TECHNICAL SIDE

11     BASICALLY COLLECTS THE USER I.D. ACROSS A MULTITUDE OF

12     WEBSITES.

13          THE COURT:  OKAY.

14          MR. MAO:  BECAUSE THEY KNOW THE USER I.D. ACROSS A

15     MULTITUDE OF WEBSITES, THEY KNOW WHO THE USER IS AND THEY'RE

16     ABLE TO CROSS REFERENCE ALL OF THAT, YOUR HONOR.

17          SO IF THEIR ARGUMENT IS, WELL, WE THEREAFTER DELETE THE

18     USER I.D., IT'S A SEMANTIC WITHOUT A DIFFERENCE IF THEY ALREADY

19     COLLECTED ALL OF THAT BROWSING HISTORY AND ALLOCATED IT AMONGST

20     AND BASICALLY RETAGGED YOU, RIGHT, ALTHOUGH YOU'VE BEEN

21     INCOGNITO AND THEY PROMISED NOT TO TRACK YOU, BUT THEY JUST

22     RETAG YOU WITH ALL OF THAT INFORMATION ON THE BASIS OF THE FACT

23     THAT IT HAS ALL OF THIS USER I.D. COLLECTED AND THEREAFTER

24     SAYS, "WELL, WE DELETED THE USER I.D., YOUR HONOR, AND THE USER

25     HISTORY WAS JUST COLLECTED USING THAT USER I.D., BUT WE DELETED

1    THESE I.D.'S, YOUR HONOR, SO I DON'T SEE WHY WE HAVE A PROBLEM

2    HERE," THAT IS FUNDAMENTALLY CONTRARY TO THE REPRESENTATIONS

3    THEY'VE MADE ON THE SPLASH SCREEN SAYING THEY'RE NOT GOING TO

4    TRACK USER HISTORY.

5         AND WHEN THEY SAY THAT THAT IS NOT AN ACT OF SELLING USER

6    DATA, UNLESS THEY'RE DENYING EXACTLY WHAT I HAVE EXPLAINED HERE

7    AS TO HOW USER I.D. WORKS, I DON'T SEE HOW THAT IS NOT SELLING

8    USER DATA FROM THE PERSPECTIVE OF THE CONSUMER.

9              THE COURT:  WELL, WHAT'S THE --

10             MR. MAO:  WEBSITES THEMSELVES WOULD NOT BE ABLE TO DO

11   THIS.

12             THE COURT:  WHAT -- OKAY.

13             MS. TREBICKA:  I CAN RESPOND TO THE TECHNICAL --

14             THE COURT:  WELL, CAN I JUST -- CAN I JUST FINISH

15   WITH EACH SPEAKER AND THEN I WILL GIVE YOU AN OPPORTUNITY TO

16   RESPOND.

17        WHAT ARE YOU CONTENDING THAT GOOGLE THEN DOES WITH THE

18   COLLECTED BROWSING HISTORY?

19             MR. MAO:  I GUESS PART OF WHAT THEY'RE DOING IS

20   TRYING TO SELL THEIR OWN SERVICES BECAUSE -- AND I DON'T HAVE

21   THAT IN FRONT OF ME, YOUR HONOR, BUT I DO BELIEVE WE ALLEGED IN

22   THE COMPLAINT THAT GOOGLE THEN REQUIRES WEBSITES TO PAY MONEY

23   IN ORDER TO COLLECT THAT DATA, AND SOME OF THE DATA WHICH

24   THEY'VE COLLECTED AND HELPED COMPILE IN GOOGLE ANALYTICS

25   INCLUDES BROWSING DATA, DATA IN WHICH USERS HAVE SPECIFICALLY

1    TAGGED AS BEING PRIVATE.

2          THE COURT:  AND MR. BROOME SAID THAT THEY'RE

3    COLLECTING THE BROWSING DATA ON WEB PAGES 1 THROUGH 5, BUT THEN

4    THEY MAY SELL THAT, THAT THE USER WENT AROUND WEB PAGES 1

5    THROUGH 5 TO WEB PAGE 6 TO SELL AN AD TO WEB PAGE 6.

6       IS THAT WHAT YOU'RE SAYING?  SO YOU'RE SAYING THAT THEY'RE

7    NOT REALLY NECESSARILY COLLECTING THE DATA FOR THE WEB PAGE FOR

8    WHICH THEY'RE PROVIDING THAT SERVICE, 1 THROUGH 5, RIGHT?

9    LET'S SAY THEY'RE PROVIDING THAT SERVICE 1 THROUGH 5, BUT

10   THEY'RE GOING TO COLLECT THAT DATA FROM WEB PAGES 1 THROUGH 5,

11   BUT THEN THEY MIGHT SELL IT TO WEB PAGE 6.  I THINK THAT'S WHAT

12   I UNDERSTOOD MR. BROOME TO BE SAYING.

13          MR. MAO:  YES, BUT --

14          MR. BROOME:  THE --

15          THE COURT:  I'M SORRY, CAN YOU JUST -- I'M SORRY.  I

16   WANT TO FINISH WITH MR. MAO.  YOU WILL HAVE AN OPPORTUNITY.

17   I'D APPRECIATE IF YOU COULD JUST WAIT.  I WILL GIVE YOU AN

18   OPPORTUNITY TO SPEAK.

19       GO AHEAD.

20          MR. MAO:  SORRY, YOUR HONOR, YES.

21       I BELIEVE THAT ACTUALLY GOOGLE WILL ACKNOWLEDGE THAT THEY

22   WOULD ACTUALLY BE WILLING TO SELL THAT TO ANY OF THE WEBSITES 1

23   THROUGH 6, RIGHT?

24       BUT OUR ALLEGATION IS THAT EVEN THOSE WEBSITES THEMSELVES

25   WOULD HAVE EXPECTED GOOGLE TO COMPLY WITH LAW AND RESPECT USER

1    CONTROLS.  BUT GOOGLE IS JUST COLLECTING THAT, COMPILING THAT,

2    AND THEN SELLING IT REPRESENTING THAT THEY'VE ADHERED TO USER

3    PREFERENCES, AND THAT WE BELIEVE IS FUNDAMENTALLY ILLEGAL, YOUR

4    HONOR.

5              THE COURT:  ALL RIGHT.

6         LET ME GO TO MS. TREBICKA.  YOU WERE GOING TO COMMENT ON

7    THE MECHANICS OF HOW IT WORKS.  WHY DON'T YOU GO AHEAD AND

8    PLEASE EXPLAIN THAT.

9              MS. TREBICKA:  YES, YOUR HONOR.

10        AND USER I.D. IS SOMETHING THAT IS SET IN ASSOCIATION WITH

11   GOOGLE ANALYTICS ONLY.  THERE ARE TWO GOOGLE SERVICES AT ISSUE

12   IN THIS COMPLAINT, GOOGLE AD MANAGER AND GOOGLE ANALYTICS, AND

13   USER I.D. IS A GOOGLE ANALYTICS FUNCTION.  AND FOR GOOGLE

14   ANALYTICS, THE DATA THAT GOOGLE COLLECTS IS ACTUALLY ON BEHALF

15   OF EACH WEBSITE.  IT IS NOT COMINGLED AMONG WEBSITES.  SO

16   THAT'S NUMBER ONE.

17        NUMBER TWO, THERE ARE NO ALLEGATIONS IN THE COMPLAINT THAT

18   GOOGLE SOMEHOW CROSS-REFERENCES THESE USER I.D.'S.  SO THE WAY

19   THAT THE USER I.D. WORKS IS THE NEW YORK TIMES SETS A USER I.D.

20   FOR ME AS 123.  THE WASHINGTON POST SETS THE USER I.D. FOR ME

21   AS ABC.  THEY'RE COMPLETELY DIFFERENT.  THERE'S NO ALLEGATIONS

22   IN THE COMPLAINT THAT THOSE ARE ACTUALLY CORRELATED AND PUT

23   TOGETHER, SO WE'RE FAR OUTSIDE THE COMPLAINT HERE.

24        WHAT THERE IS IN THE COMPLAINT IS A CITATION TO A HELP

25   CENTER ARTICLE, AND IT'S FOOTNOTE 18 IN THE COMPLAINT FROM --

1    IT RELATES TO PARAGRAPH 69 AND IT EXPLAINS EXACTLY HOW USER

2    I.D. WORKS AND IT'S IN CONTRADICTION TO WHAT MR. MAO EXPLAINED.

3         SO I'LL REST THERE BECAUSE I DON'T WANT TO CONTINUE ON

4    THIS FOR A LONG TIME UNLESS YOUR HONOR HAS ANY QUESTIONS ABOUT

5    WHAT I SAID.

6         THE COURT:  NO.  THANK YOU.

7         ALL RIGHT.  LET'S GO TO -- CAN WE GO TO WEBSITE CONSENT

8    AND THEN I'D LIKE TO BRING THIS TO A CLOSE.

9         MR. BROOME:  SURE, YOUR HONOR.

10         THE COURT:  IS THAT POSSIBLE?

11         ALL RIGHT.  GO AHEAD, PLEASE.

12         MR. BROOME:  YOUR HONOR, I JUST WANT TO MAKE ONE

13    POINT OF CLARIFICATION ABOUT SELLING THE DATA BECAUSE I THINK

14    THAT'S AN IMPORTANT POINT, AND MY POINT IS THAT GOOGLE IS NOT

15    SELLING THE DATA.

16         WHEN I SAY -- GOOGLE -- WHAT'S HAPPENING IS IF AN

17    ADVERTISER WANTS TO TARGET A PARTICULAR DEMOGRAPHIC, SAY

18    READERS OF THE NEW YORK TIMES, AND SOMEBODY GOES ON TO THE

19    NEW YORK TIMES, THE TIMES CONTRACTS WITH GOOGLE AND GOOGLE GETS

20    THAT DATA, THEN THE USER GOES TO ANOTHER WEBSITE AND THE

21    ADVERTISER WANTS TO DISPLAY AN AD ON THAT NEXT WEBSITE TO

22    PEOPLE WHO READ THE NEW YORK TIMES OR PEOPLE WHO READ, YOU

23    KNOW, NEWS, AND GOOGLE HAS THE CAPABILITY TO DO THAT.

24         BUT THAT DOESN'T MEAN THAT GOOGLE IS THEN -- IS TAKING THE

25    DATA, SELLING IT TO THE ADVERTISER, OR SELLING IT TO THE

1    WEBSITE.  GOOGLE HAS THE DATA IN ITS SYSTEMS.

2        THAT WAS THE ONLY POINT OF CLARIFICATION I WANTED TO MAKE

3    ON THAT POINT.

4        AND IF YOUR HONOR HAS NO FURTHER QUESTIONS, I'LL ADDRESS

5    WEBSITE CONSENT.

6        THE COURT:  GO AHEAD, PLEASE.

7        MR. BROOME:  AS I UNDERSTOOD MS. BONN'S ARGUMENT,

8    SHE'S MAKING ESSENTIALLY TWO POINTS.  ONE IS THAT THE WEBSITES

9    CAN'T CONSENT UNDER THE CIRCUMSTANCES HERE, AND THE SECOND IS

10   THAT THE WEBSITES DON'T CONSENT.

11       AND SO I'LL ADDRESS THE FIRST POINT, THAT THE WEBSITES

12   CAN'T CONSENT, BECAUSE THERE ARE ADDITIONAL MESSAGES THAT ARE

13   BEING SENT DIRECTLY BETWEEN THE USER'S BROWSER AND GOOGLE'S

14   SERVER TO WHICH THE WEBSITES ARE NOT A PARTY.

15       WELL, I THINK THEY'RE ESSENTIALLY TRYING TO SET UP A RULE

16   WHERE IT WOULD BE IMPOSSIBLE FOR WEBSITES TO CONSENT TO SHARING

17   THIS KIND OF DATA WITH GOOGLE AND OTHER WEB SERVICE PROVIDERS

18   IN THE MANNER IN WHICH IT IS ROUTINELY SHARED.

19       EVERY COMMUNICATION REQUIRES AT LEAST TWO PARTIES, A

20   SENDER AND A RECIPIENT, AND UNDER PLAINTIFFS' THEORY WHERE

21   THERE ARE, YOU KNOW, SEPARATE MESSAGES, ADDITIONAL MESSAGES IN

22   THE FORM OF DUPLICATED GET REQUESTS, THEY GO DIRECTLY TO

23   GOOGLE'S SERVER.  THOSE COMMUNICATIONS, I THINK WHAT THEY'RE

24   SAYING IS THOSE ARE BETWEEN PLAINTIFFS AND GOOGLE.

25       BUT IF THAT'S THE CASE, THAT WOULD MAKE GOOGLE A PARTY AND

1    EXEMPT FROM LIABILITY UNDER SECTION 2511(2)(D).

2         YOU KNOW, THAT OBVIOUSLY RUNS SQUARELY INTO THE NINTH

3    CIRCUIT'S FACEBOOK INTERNET TRACKING DECISION WHERE THE COURT

4    REJECTED APPLICATION OF THE PARTY EXCEPTION TO WEB SERVICE

5    PROVIDERS UNDER THOSE CIRCUMSTANCES.

6         SO THEIR THEORY CREATES THIS PARADOX THAT TRANSFORMS THE

7    WIRETAP ACT FROM A ONE PARTY CONSENT STATUTE UNDER WHICH EITHER

8    THE SENDER OR THE RECIPIENT CAN CONSENT TO THE INTERCEPTION,

9    AND IT TRANSFORMS IT INTO A SENDER CONSENT STATUTE UNDER WHICH

10   ONLY THE SENDER CAN CONSENT.  SO ONLY THE PLAINTIFFS CAN

11   PROVIDE CONSENT, AND THAT'S OBVIOUSLY INCONSISTENT WITH THE

12   STATUTORY FRAMEWORK.

13        AND I THINK IT'S WORTH NOTING THAT THE NORTHERN DISTRICT

14   OF CALIFORNIA COURT'S OWN WEBSITE USES THIRD PARTY SERVICE

15   PROVIDERS TO DISPLAY ADS IN THE SAME, THE EXACT SAME KIND OF AD

16   TECHNOLOGY AT ISSUE HERE.

17        SO UNDER PLAINTIFFS' THEORY, THIS COURT LACKS AUTHORITY

18   UNDER THE WIRETAP ACT TO AUTHORIZE THE TRANSMISSION OF THE DATA

19   NECESSARY TO PROVIDE THE AD SERVICES THAT THIS COURT HAS

20   CONTRACTED FOR, SO I THINK THAT IS INCONSISTENT WITH THE

21   STATUTORY FRAMEWORK.

22        THE SECOND POINT THAT MS. BONN MADE IS THAT WEBSITES DO

23   NOT CONSENT TO THE TRANSMISSION OF DATA FOR USERS IN PRIVATE

24   BROWSING MODE, AND I THINK THIS ARGUMENT IS BOTH IRRELEVANT AND

25   IMPLAUSIBLE.

1       IT'S IRRELEVANT BECAUSE THAT SPECIFICITY OF CONSENT IS NOT

2   REQUIRED UNDER THE STATUTE.  THE WEBSITES CONSENT TO SENDING

3   THIS DATA TO GOOGLE GENERALLY SO THAT THEY CAN GET GOOGLE'S

4   SERVICES, AND NOTHING IN GOOGLE'S DISCLOSURES SUGGEST THAT A

5   USER'S BROWSER MODE OR SETTINGS AFFECTS WHETHER GOOGLE RECEIVES

6   THIS DATA.

7           THE COURT:  CAN I INTERRUPT YOU A SECOND?

8           MR. BROOME:  SURE.

9           THE COURT:  YOU'RE SAYING THAT THE NORTHERN DISTRICT

10  OF CALIFORNIA WEBSITE HAS ADS?  CAN YOU POINT THEM OUT?  I HAVE

11  THE WEBSITE UP.

12          MR. BROOME:  YES.

13          THE COURT:  WHAT ARE YOU REFERRING TO?  I HAVE THE

14  HOME PAGE UP FOR THE COURT.  I SEE ABOUT THE COURT, CASES AND

15  E-FILING, JUDGES, CALENDARS, RULES, FORMS, FEES.

16      WHERE ARE THE ADS?  YOU JUST SAID THAT THE NORTHERN

17  DISTRICT OF CALIFORNIA U.S. DISTRICT COURT WEBSITE HAS ADS ON

18  IT.  WHERE ARE THEY?

19          MR. BROOME:  I DID, BUT I MAY HAVE MISSPOKEN.  I

20  BELIEVE IT'S THIRD PARTY SERVICES.  I'M JUST CHECKING WITH MY

21  TEAM HERE.

22          THE COURT:  WELL, SHOW ME THE ADS.

23          MR. BROOME:  I'M SORRY.  IT'S GOOGLE ANALYTICS.

24          THE COURT:  I HAVE THE WEBSITE UP, AND I'M DEEPLY

25  DISTURBED THAT YOU WOULD SAY THAT THE COURT'S WEBSITE IS

```
 1          SELLING STUFF FOR THIRD PARTIES.
 2              I DON'T SEE ANY THIRD PARTY ADS.  I DON'T SEE ANY ADS.  I
 3      MEAN --
 4                  MR. BROOME:  I BELIEVE -- I MAY HAVE MISSPOKEN, YOUR
 5      HONOR.  I BELIEVE IT'S GOOGLE ANALYTICS.
 6                  THE COURT:  BUT WHAT ADS ARE YOU TALKING ABOUT HERE?
 7                  MR. BROOME:  IT'S NOT ADS, YOUR HONOR.  IT'S GOOGLE
 8      ANALYTICS SERVICES.
 9                  THE COURT:  SO YOU'RE TRACKING EVERYBODY WHO VISITS
10      THE COURT'S WEBSITE?  IS THAT WHAT YOU'RE SAYING?
11                  MR. BROOME:  NO.  I'M SAYING THAT THE --
12                  THE COURT:  THEY'RE SENDING A DUPLICATE GET REQUEST?
13                  MR. BROOME:  I'M SAYING THAT THE COURT HAS CONTRACTED
14      WITH THIRD PARTY SERVICE PROVIDERS AND IT WOULD BE -- THE COURT
15      IS CONTRACTED WITH THIRD PARTY SERVICE PROVIDERS, WHICH I
16      BELIEVE IS GOOGLE ANALYTICS, THAT TRANSMITS THIS SAME KIND OF
17      DATA FLOW SO THAT THE COURT CAN ANALYZE ITS WEB TRAFFIC.
18                  THE COURT:  OKAY.  SO LET ME -- LET ME ASK YOU A
19      QUESTION.  SO IS GOOGLE THEN TELLING THE NORTHERN DISTRICT OF
20      CALIFORNIA WEBSITE TO TRANSMIT A DUPLICATE COPY OF THE GET
21      REQUEST FOR ANY USER WHO'S ACCESSING THE NORTHERN DISTRICT OF
22      CALIFORNIA'S WEBSITE?  ARE YOU SENDING A DUPLICATE COPY TO
23      GOOGLE FOR GOOGLE ANALYTICS TO KEEP TRACK OF WHO IS ACCESSING
24      THE COURT'S WEBSITE?
25                  MR. BROOME:  YES, THAT'S HOW IT WOULD WORK.  AND,
```

1    AGAIN, IT'S NOT LINKED TO --

2          THE COURT:  OKAY.  BUT HOW IS THAT -- HOW IS SENDING

3    THAT DUPLICATE COPY -- I MEAN, THAT FALLS DIRECTLY WITHIN THE

4    IN RE: FACEBOOK INTERNET TRACKING LITIGATION.  YOU'RE KEEPING

5    TRACK OF ANY USER -- YOU'RE NOT JUST PROVIDING THE SERVICE THAT

6    THE COURT HAS CONTRACTED.  YOU'RE SAYING, IN ADDITION, GIVE ME

7    A COPY BEYOND WHAT YOU'RE DOING, PROVIDING THIS SERVICE TO THE

8    COURT, WE WANT TO KNOW AND KEEP TRACK OF EVERY USER WHO IS

9    ACCESSING THE COURT'S WEBSITE.

10        I DON'T SEE HOW THAT IS IMPORTANT FOR GOOGLE TO PROVIDE

11   THE SERVICE TO THE COURT.

12         MR. BROOME:  NO, YOUR HONOR.  THAT --

13         THE COURT:  WHAT IS GOOGLE DOING WITH SENDING A

14   DUPLICATE GET REQUEST TO ITSELF --

15         MR. BROOME:  THAT IS --

16         THE COURT:  -- OF ANY USER -- WELL, OKAY, LET'S GO --

17   AND THAT'S WHY I ASKED AT THE BEGINNING.  LET ME JUST READ FROM

18   IN RE: FACEBOOK INTERNET TRACKING LITIGATION, PAGE 607.  IT

19   SAYS, "WHEN AN INDIVIDUAL INTERNET USER VISITS A WEB PAGE, HIS

20   OR HER BROWSER SENDS A MESSAGE CALLED A 'GET REQUEST' TO THE

21   WEB PAGE'S SERVER.  THE GET REQUEST SERVES TWO PURPOSES:  IT

22   FIRST TELLS THE WEBSITE WHAT INFORMATION IS BEING REQUESTED,

23   AND THEN INSTRUCTS THE WEBSITE TO SEND THE INFORMATION BACK TO

24   THE USER.  THE GET REQUEST ALSO TRANSMITS A REFERER HEADER

25   CONTAINING THE PERSONALLY-IDENTIFIABLE URL INFORMATION.

1       TYPICALLY, THIS COMMUNICATION OCCURS ONLY BETWEEN THE USER'S

2       WEB BROWSER AND THE THIRD-PARTY WEBSITE."

3           BUT THIS TALKS ABOUT "ON WEBSITES WITH FACEBOOK PLUG-INS,

4       FACEBOOK'S CODE DIRECTS THE USER'S BROWSER TO COPY THE REFERER

5       HEADER FROM THE GET REQUEST AND THEN SEND A SEPARATE BUT

6       IDENTICAL GET REQUEST AND ITS ASSOCIATED REFERER HEADER TO

7       FACEBOOK'S SERVER.  IT IS THROUGH THIS DUPLICATION AND

8       COLLECTION OF GET REQUESTS THAT FACEBOOK COMPILES USERS'

9       BROWSING HISTORIES."

10          AND MY UNDERSTANDING WAS THAT GOOGLE IS DOING THE SAME

11      THING.  YOU ARE BEYOND JUST PROVIDING THE SERVICE OF HAVING AN

12      INDIVIDUAL USER ACCESS A WEB PAGE.  YOU ARE HAVING THAT USER'S

13      BROWSER COPY THE REFERER HEADER FROM THE GET REQUEST AND SEND A

14      SEPARATE BUT IDENTICAL GET REQUEST AND ITS ASSOCIATED REFERER

15      HEADER BACK TO GOOGLE.

16          SO THAT DOESN'T HAVE ANYTHING TO DO WITH ACTUALLY

17      PROVIDING THE USER ACCESS TO THAT WEBSITE.  IT'S JUST, LET ME

18      GET TRACK OF WHAT EVERY USER WHO'S ACCESSING THIS WEBSITE, WHAT

19      THE REFERER HEADER IS, AND THEIR -- I GUESS I'M DISTURBED THEN

20      IF YOU'RE SAYING THAT YOU'RE GETTING THAT DUPLICATE AND

21      COLLECTING THAT DUPLICATE INFORMATION OF USERS' BROWSING

22      HISTORY FROM EVERYONE ACCESSING THE COURT'S WEBSITE.  IS THAT

23      WHAT GOOGLE IS DOING?

24              MR. BROOME:  LET ME EXPLAIN.

25              THE COURT:  IS THAT WHAT GOOGLE IS DOING?  I HEARD --

1    OKAY.  YOU AGREE, THOUGH, THAT HOW THE NINTH CIRCUIT DESCRIBES

2    THIS DUPLICATION OF GET REQUESTS IS CORRECT?

3              MR. BROOME:  YES.

4              THE COURT:  OKAY.

5              MR. BROOME:  YES.

6              THE COURT:  SO YOU WOULD AGREE THAT THAT IS WHAT

7    GOOGLE IS DOING WITH ANY INDIVIDUAL USER WHO ACCESSES THE

8    COURT'S WEBSITE?  YOU ARE GETTING A DUPLICATE COPY OF THE GET

9    REQUEST AND THE ASSOCIATED REFERER HEADER, RIGHT?

10             MR. BROOME:  YES.  AND THE COURT -- EVERY WEBSITE,

11   INCLUDING -- EVERY WEBSITE OWNER THAT CONTRACTS WITH ANALYTICS

12   UNDERSTANDS THAT THAT'S THE PROCESS, BECAUSE THEY HAVE TO --

13   THEY HAVE TO INSTALL THE CODE ON THEIR WEBSITE, AND WHAT

14   HAPPENS THEN IS THAT INFORMATION -- IT'S NOT JUST GOING INTO

15   GOOGLE'S SYSTEMS FOR GOOGLE TO DO WHATEVER IT WANTS WITH IT.

16        FOR ANALYTIC SERVICES --

17             THE COURT:  ARE YOU SAYING THAT GOOGLE DOESN'T USE

18   THAT AT ALL TO ENHANCE ITS TARGETED ADVERTISING --

19             MR. BROOME:  FOR ANALYTIC SERVICES, NO.

20             THE COURT:  -- THAT INFORMATION?  NO, NO, FOR

21   TARGETED ADVERTISING.  I DON'T WANT US TO -- I'M JUST ASKING

22   ABOUT TARGETED ADVERTISING.

23             MR. BROOME:  SURE.  ANALYTICS --

24             THE COURT:  I FIND IT UNUSUAL THAT -- TO MAKE THE

25   EXTRA EFFORT TO GET THIS SEPARATE BUT IDENTICAL GET REQUEST AND

1   ITS ASSOCIATED REFERER HEADER, THAT GOOGLE WOULD NOT USE THAT

2   INFORMATION -- THAT IS NOT FOR THE PURPOSE OF THE USER

3   ACCESSING THE WEB PAGE, IT'S SENDING A DUPLICATE COPY, RIGHT --

4   THAT THAT WOULD NOT BE USEFUL IN SOME WAY TO GOOGLE PERHAPS IN

5   ENHANCING TARGETED ADVERTISING.

6           MR. BROOME:  YES, YOUR HONOR.  IF I CAN -- IF I CAN

7   EXPLAIN?

8       THE DUPLICATED GET REQUEST IS SENT TO GOOGLE SO THAT

9   GOOGLE CAN PROVIDE THE ANALYTIC SERVICES THAT THE WEBSITE

10  CONTRACTS FOR.

11      SO WE CHECKED THE DEVELOPER TOOLS ON THE COURT'S WEBSITE

12  AND IT APPEARS TO BE USING THIRD PARTY SERVICE PROVIDERS.

13  ALMOST ALL THIRD PARTY WEB SERVICE PROVIDERS THAT PROVIDE

14  ANALYTIC SERVICES USE THIS SAME DATA FLOW, THIS SAME PROCESS.

15  THAT'S -- FOR ANALYTIC SERVICES, THAT DATA IS NOT USED FOR

16  ADVERTISING.  IT'S STORED IN GOOGLE'S SERVERS ON THE WEBSITE'S

17  BEHALF.  IT'S NOT JUST THROWN INTO THE MIX FOR GOOGLE TO DO

18  WHATEVER IT WANTS WITH IT.

19      BUT THE WEBSITES, INCLUDING THE COURT, THE COURT'S

20  WEBSITE, ARE -- UNDERSTAND THE PROCESS.  IT'S NOT JUST -- IT'S

21  NOT TO FACILITATE THE COMMUNICATION OF THE -- BETWEEN THE USER

22  AND THE WEBSITE.  IT'S TO FACILITATE THE COLLECTION OF THIS

23  DATA SO THAT THE COURT AND EVERY OTHER WEBSITE THAT CONTRACTS

24  FOR THESE SERVICES CAN UNDERSTAND WHAT -- YOU KNOW, WHERE USERS

25  ARE GOING ON THEIR SITE.  WHAT FUNCTIONS ARE THEY USING?

```
1    WHAT -- WHERE DO THEY GO AFTER THEY USE THIS PARTICULAR

2    FUNCTION?  WHAT FUNCTIONS ARE THEY NOT USING?

3         THESE ARE VERY COMMON --

4         THE COURT:  NONE OF THIS WAS IN YOUR BRIEFING ON THIS

5    MOTION.  I'M HEARING THIS FOR THE FIRST TIME.  I WOULD HAVE

6    BEEN INTERESTED IN FOLLOWING UP.

7         LET ME HEAR FROM THE PLAINTIFFS.  DO YOU WANT A

8    DECLARATION FROM GOOGLE ON EXACTLY WHAT THE COMPANY IS DOING

9    WITH USERS' INFORMATION TO THE COURT'S WEBSITE?  BECAUSE I'M

10   NOW VERY CURIOUS, NOW THAT THEY'VE PUT THAT AT ISSUE, AND I'D

11   LIKE SOME DISCOVERY ON THAT.

12        MS. BONN:  ABSOLUTELY, YOUR HONOR, 100 PERCENT.

13        AND THIS IS A CORE ISSUE --

14        THE COURT:  WHAT IS IT THAT YOU WANT?  WHAT IS IT

15   THAT YOU WANT?  BECAUSE I'M VERY CURIOUS NOW.  IF THEY'RE GOING

16   TO SAY THE COURT IS INVOLVED IN DOING THIS, THEN LET'S GET A

17   LOT OF DISCOVERY ON EXACTLY WHAT IS HAPPENING SO THAT THE COURT

18   IS AWARE OF WHAT'S HAPPENING WITH USERS' INFORMATION TO THE

19   COURT'S WEBSITE.

20        MR. MAO:  YOUR HONOR, THIS --

21        THE COURT:  WHAT INFORMATION DO YOU WANT?

22        MR. MAO:  SORRY, YOUR HONOR.

23        LET ME ALSO MAKE A REALLY QUICK POINT ON THAT.  YOU JUST

24   HEARD MR. BROOME ADMIT TO TWO POINTS ON WHICH HE WAS ACTUALLY

25   ARGUING TO THE CONTRARY EARLIER IN THIS HEARING, WHICH IS, ONE,
```

```
1     THAT THEY'RE NOT COLLECTING THIS INFORMATION, THAT GOOGLE IS
2     NOT COLLECTING AND COMPILING THIS INFORMATION, HE JUST CONCEDED
3     THAT GOOGLE IS; AND THE SECOND THING WAS HE WAS ARGUING THAT
4     GOOGLE ANALYTICS IS FOR THE SOLE PURPOSE OF TARGETED
5     ADVERTISING.
6          NOW HE IS ARGUING THAT GOOGLE ANALYTICS HAS A MULTITUDE OF
7     OTHER PURPOSES, JUST LIKE OTHER ANALYTICS COMPANIES THAT ARE
8     OUT THERE.
9          I THINK THOSE ARE TWO CRITICAL CONCESSIONS WHICH DEFEAT
10    THEIR OWN ARGUMENTS EARLIER IN THIS HEARING.
11              MS. BONN:  YOUR HONOR, ON THE DISCOVERY POINT --
12              THE COURT:  I'M SORRY.  ONE SECOND, PLEASE.
13    WHAT WOULD BE THE OTHER PURPOSES OF GOOGLE ANALYTICS THEN?
14              MR. MAO:  YOUR HONOR, I BELIEVE HE CONCEDED IN THE
15    FIRST ADMISSION, WHICH WAS THAT IT WAS TO COMPILE USER
16    PROFILES, YOUR HONOR.
17              THE COURT:  ALL RIGHT.
18    MS. BONN, WHAT WERE YOU GOING TO SAY?
19              MS. BONN:  ON THE QUESTION YOUR HONOR ASKED, WHICH IS
20    WHAT DISCOVERY WOULD WE BE INTERESTED IN, I THINK THERE ARE
21    SEVERAL ISSUES THAT WOULD BE SOMETHING THAT OUGHT TO BE
22    PRODUCED IN DISCOVERY.
23         NUMBER ONE, JUST USING THE EXAMPLE OF THE COURT'S WEBSITE,
24    WHAT INFORMATION -- WHAT INFORMATION IS GOOGLE COLLECTING WHEN
25    USERS VISIT THE COURT WEBSITE?
```

1        NUMBER TWO, WHAT IS THE TECHNICAL MECHANISM THROUGH WHICH

2    GOOGLE COLLECTS THAT INFORMATION?

3        NUMBER THREE, WHAT DOES GOOGLE THEN DO WITH THAT

4    INFORMATION?  AND SPECIFICALLY, DOES GOOGLE ASSOCIATE IT WITH

5    USER -- OTHER USER PROFILE DATA?  DOES IT USE THAT INFORMATION

6    FOR ITS OWN TARGETED ADVERTISING PURPOSES?

7        SO I THINK THOSE ARE THE CORE QUESTIONS ON WHICH DISCOVERY

8    ON THAT POINT WOULD BE ILLUMINATING.

9            THE COURT:  AND WOULD A DEPOSITION BE MORE

10   APPROPRIATE?

11           MS. BONN:  I DO THINK, YOUR HONOR -- WE'VE BEEN

12   TALKING ABOUT THIS -- I THINK THAT WE ARE GOING TO TAKE A

13   30(B)(6) DEPOSITION.  I THINK WHAT WE REALLY NEED IS GOOGLE TO

14   DESIGNATE SOMEONE WHO UNDERSTANDS GOOGLE'S TECHNICAL PROCESSES

15   AND CAN WALK US THROUGH, WHAT IS IT THAT -- WHEN SOMEONE VISITS

16   A WEBSITE, OKAY, WHAT INFORMATION DOES GOOGLE COLLECT?  WHAT'S

17   THE TECHNICAL MECHANISM BY WHICH THEY COLLECT IT?  WHAT THEN

18   HAPPENS TO THAT DATA?  WHAT USES DOES GOOGLE MAKE OF IT?

19   BASICALLY FROM CRADLE TO GRAVE.

20       I THINK WE NEED A CORPORATE DESIGNEE WHO UNDERSTANDS

21   EXACTLY WHAT GOOGLE DOES WITH DATA THAT'S COLLECTED FROM

22   WEBSITES WHEN USERS ARE IN PRIVATE BROWSING MODE.

23           THE COURT:  SO CLEARLY BEFORE THIS HEARING, BUT NOT

24   FOR THE BRIEFING ON THE MOTION TO DISMISS, GOOGLE LOOKED INTO

25   THE COURT'S WEBSITE, SO I WOULD LIKE A DECLARATION ABOUT

1     EXACTLY WHAT GOOGLE DOES.  WHEN CAN YOU PROVIDE THAT?  WITH

2     USERS' INFORMATION WHO VISIT THE COURT'S WEBSITE.

3              MR. BROOME:  I CAN -- I'LL CONSULT WITH GOOGLE.  I

4     THINK WE COULD PROBABLY GET IT TO YOU WITHIN THE NEXT TWO

5     WEEKS.

6              THE COURT:  NO, NO.  DIDN'T YOU DO INVESTIGATION?

7     YOU DIDN'T RAISE ANY OF THIS IN YOUR HEARING LAST WEEK WITH ME,

8     AND CLEARLY YOU DID INVESTIGATION ABOUT THE COURT'S WEBSITE.

9     WHEN WAS THAT INVESTIGATION CONDUCTED?

10             MR. BROOME:  THAT WAS YESTERDAY, YOUR HONOR, AS WE

11    WERE EXPLORING THE WEBSITE CONSENT ISSUE.

12         AND I DO WANT TO MAKE CLEAR THAT --

13             THE COURT:  OKAY.  I THINK YOU SHOULD AT LEAST AT A

14    MINIMUM PRODUCE WHAT YOU FOUND YESTERDAY.  YOU CLEARLY HAD

15    ENOUGH THAT YOU WANTED TO RAISE THIS ISSUE AT THIS HEARING

16    ABOUT THE COURT'S ROLE IN BEING ONE OF THESE WEB PAGES, AND SO

17    I'D LIKE TO KNOW WHAT YOU FOUND YESTERDAY.  CAN YOU PROVIDE

18    THAT DECLARATION ON MONDAY?

19             MR. BROOME:  YES, YOUR HONOR.

20         AND JUST TO BE CLEAR, WE DIDN'T DO ANY, LIKE,

21    INVESTIGATION WITHIN GOOGLE.  WE JUST -- WE, AS THE LAWYERS,

22    OUTSIDE COUNSEL, LOOKED ON THE COURT'S WEBSITE USING DEVELOPER

23    TOOLS WHICH ARE PUBLICLY AVAILABLE.  IT WASN'T LIKE WE WENT

24    INTO GOOGLE'S SYSTEMS AND FIGURED THIS OUT AND DIDN'T DISCLOSE

25    THE INFORMATION TO PLAINTIFFS.

 1          THE COURT:  SO YOU DIDN'T CONSULT WITH YOUR CLIENTS

 2   AT ALL ABOUT WHETHER THEY WERE A SERVICE PROVIDER TO THE COURT?

 3   YOU DIDN'T GET ANY VERIFICATION OF THAT?

 4          MR. BROOME:  WE JUST WENT -- YOU CAN USE IT ON THE

 5   COURT'S WEBSITE IF YOU USE DEVELOPER TOOLS.  IT'S PUBLICLY

 6   AVAILABLE INFORMATION.

 7          THE COURT:  WELL, THEN YOU SHOULD BE ABLE TO PROVIDE

 8   IT TOMORROW THEN IF IT'S THAT CLEAR.

 9          MR. BROOME:  WE CAN PROVIDE THAT INFORMATION

10   TOMORROW, YES.

11          THE COURT:  OKAY.  WHY DON'T YOU PROVIDE -- WHY DON'T

12   YOU FILE THAT TOMORROW WITH AN AFFIDAVIT.

13          AND THEN ON MONDAY I WOULD LIKE A DECLARATION FROM GOOGLE

14   ABOUT WHAT INFORMATION THEY ARE COLLECTING ABOUT USERS WHO

15   VISIT THE COURT'S WEBSITE AND WHAT THAT IS USED FOR IN ANY WAY

16   IN ENHANCING USER PROFILE DATA OR IN TARGETED ADVERTISING.

17          I THINK THE COURT SHOULD KNOW AT A MINIMUM.

18          MR. BROOME:  HAPPY TO DO THAT, YOUR HONOR.

19          THE COURT:  SO I WOULD LIKE THAT DECLARATION ON

20   MONDAY, PLEASE, AND SOMEBODY FROM GOOGLE WHO HAS THAT

21   INFORMATION.

22          AND THEN WHATEVER THIRD PARTY TOOLS YOU USED, IF YOU COULD

23   PRODUCE THAT TOMORROW WITH A DECLARATION JUST EXPLAINING WHAT

24   YOU DID AND WHAT YOU FOUND.  I THINK THAT WOULD BE HELPFUL.

25          MR. BROOME:  THAT'S VERY SIMPLE, YOUR HONOR.  WE CAN

1    CERTAINLY PUT THAT IN TOMORROW.

2            THE COURT:  OKAY.

3        NOW, DOES GOOGLE THEN USE ANY OF THE INFORMATION THAT IT

4    COLLECTS FROM USERS WHO VISIT THE COURT'S WEBSITE IN ANY WAY

5    FOR TARGETED ADVERTISING TO THOSE USERS, INDIRECTLY OR

6    DIRECTLY?

7            MR. BROOME:  IF IT'S THROUGH THE ANALYTICS -- IF IT'S

8    JUST GOOGLE ANALYTICS, THEN NO, THAT DATA IS NOT USED FOR

9    TARGETED ADVERTISING.

10           THE COURT:  OKAY.  WHAT ABOUT ANY OTHER GOOGLE

11   ENTITY?  ANY OTHER GOOGLE --

12           MR. BROOME:  THAT I DON'T KNOW IF THEY'RE -- FOR 100

13   PERCENT IF THE COURT USES AD MANAGER, AND IF THAT WERE THE

14   CASE, THEN THAT WOULD BE A SERVICE THAT THE COURT PROVIDES --

15   CONTRACTED FOR AND -- TO SERVE ADS BASED ON THAT INFORMATION.

16       BUT I WOULD HAVE TO INVESTIGATE THAT WITH THE CLIENT TO

17   TELL YOUR HONOR DEFINITIVELY.

18           THE COURT:  SO DO THE PLAINTIFFS HAVE A VIEW ON --

19           MR. MAO:  YOUR HONOR, I WOULD JUST QUICKLY POINT OUT

20   JUST ON THE TECHNICAL END, I BELIEVE THAT GOOGLE ANALYTICS

21   CAUSES AN AUTOMATIC SCRIPT TO SEND PART -- A DUPLICATED PART OF

22   THAT MESSAGE ALSO TO GOOGLE AD MANAGER, REGARDLESS OF WHETHER

23   OR NOT THE WEBSITE HAS ACTUALLY IMPLEMENTED GOOGLE AD MANAGER.

24       SO SAYING THAT GOOGLE ANALYTICS HAS THE SOLE PURPOSE OF

25   JUST ONE PURPOSE -- I FEEL LIKE MR. BROOME HAS, YOU KNOW,

```
 1        CHANGED WHAT IS THE DECLARED PURPOSE OF GOOGLE ANALYTICS

 2        MULTIPLE TIMES, BUT I DON'T THINK THAT'S EVER CLEAR AS TO THE

 3        FULL PURPOSE IN WHICH GOOGLE ANALYTICS IS BEING USED FOR.

 4             AND I JUST WANT TO POINT OUT THAT EVEN IF A WEBSITE DOES

 5        NOT HAVE GOOGLE AD MANAGER ON IT, GOOGLE DOES OBTAIN

 6        INTENTIONALLY A SURREPTITIOUS COPY OF THE URL, INCLUDING IN

 7        PRIVATE BROWSING MODE, WHICH IS ONE OF THE REASONS WHY WE FILED

 8        THE COMPLAINT, YOUR HONOR.

 9             THE COURT:  SO WHAT INFORMATION SHOULD GOOGLE PROVIDE

10        IN ITS DECLARATION ON MONDAY ABOUT WHAT GOOGLE DOES WITH

11        INFORMATION IT COLLECTS FROM USERS WHO VISIT THIS COURT'S

12        WEBSITE?

13             MR. MAO:  I THINK, YOUR HONOR, WE WOULD NEED TO KNOW

14        PARTICULARLY WITH REGARD TO PRIVATE INFORMATION THAT THE USERS

15        HAVE FLAGGED, BECAUSE IT -- GOOGLE HAS NOT CONTENDED OR

16        DISPUTED AT THIS HEARING THAT, FOR EXAMPLE, WHEN YOU ENTER INTO

17        INCOGNITO MODE, THAT DATA IS SPECIFICALLY DESIGNED BY GOOGLE TO

18        BE TAGGED AS INCOGNITO.  IN OTHER WORDS, THE X-CLIENT DATA

19        HEADER IS NOT THERE.

20             I THINK ONE OF THE CRITICAL THINGS WHICH MUST BE

21        ASCERTAINED IS WHEN USERS ARE IN PRIVATE MODE, FOR EXAMPLE, ON

22        THE COURT WEBSITE, FOR EXAMPLE, IF THEY WANT TO KNOW WHAT THEIR

23        DOCKET HISTORY LOOKS LIKE, OR MAYBE EVEN WHAT THEIR CRIMINAL

24        DOCKET HISTORY LOOKS LIKE, WHETHER OR NOT THAT DATA IS ACTUALLY

25        BEING TRACKED BY GOOGLE FOR MULTIPLE PURPOSES, FROM USER --
```

1    COMPILING USER PROFILE INFORMATION TO RETARGETING ADS, FOR

2    EXAMPLE, LIKE DO YOU NEED BAIL BOND SERVICES?

3         EVEN IF THEY FEEL LIKE THAT'S SOMETHING THAT GOOGLE IS

4    ENTITLED TO BECAUSE THEY'RE ALL OVER THE INTERNET, THAT DOES

5    NOT MEAN THAT THE USER HAS, ONE, THAT EXPECTATION; TWO, HAS NOT

6    TOLD GOOGLE OTHERWISE, HEY, PLEASE DO NOT TRACK ME DURING THIS,

7    FOR EXAMPLE, ON THE COURT WEBSITE; OR, THREE, THAT GOOGLE HAS

8    NOT UNLAWFULLY PROFITED FROM SUCH VENTURES, YOUR HONOR.

9         THE COURT:  SO YOU SAID THAT EVEN IF THE COURT WAS

10   NOT A CUSTOMER OF GOOGLE AD MANAGER SERVICES, THAT GOOGLE

11   ANALYTICS MIGHT STILL SEND THE REFERER HEADER INFORMATION TO AD

12   MANAGER?  IS THAT CORRECT?

13        MR. MAO:  YES, YOUR HONOR, AND PART OF THAT PURPOSE

14   IS TO COMPILE USER PROFILES.  THAT'S OUR ALLEGATION, YOUR

15   HONOR.

16        THE COURT:  I WOULD LIKE TO KNOW IF THAT'S WHAT'S

17   HAPPENING WITH USER INFORMATION FOR USERS WHO VISIT THE COURT'S

18   WEBSITE.  I REALLY WOULD LIKE TO KNOW WHAT IS HAPPENING WITH

19   INFORMATION OF USERS WHO VISIT THIS COURT'S WEBSITE.

20        MR. BROOME:  SURE.

21        THE COURT:  CAN YOU ANSWER THAT QUESTION?  EVEN IF

22   THE COURT IS NOT A CONSUMER OF AD MANAGER, IS GOOGLE ANALYTICS

23   SENDING INFORMATION TO AD MANAGER ANYWAY?  ANY INFORMATION?

24        MR. BROOME:  WE WOULD WELCOME THE OPPORTUNITY TO

25   ELABORATE ON THAT POINT, YOUR HONOR, IN A DECLARATION.

```
1              THE COURT:  ALL RIGHT.

2          WHAT ELSE?  ANYTHING ELSE?

3              MS. BONN:  I DID BRIEFLY WANT TO RESPOND TO

4    MR. BROOME'S POINTS ABOUT WEBSITE CONSENT OTHER THAN THIS ISSUE

5    THAT WE'VE GOTTEN INTO, IF THAT'S APPROPRIATE FOR YOUR HONOR.

6              THE COURT:  OKAY.  BRIEFLY, PLEASE.

7              MS. BONN:  YEAH.  I THINK, NUMBER ONE, I JUST WANTED

8    TO FLAG THAT DURING THE CALHOUN HEARING LAST WEEK, I BELIEVE

9    MR. BROOME STATED THAT IF IT WERE GOOGLE'S BURDEN TO PROVE THAT

10   WEBSITES CONSENTED, QUOTE, "THAT IS AN IMPOSSIBLE BURDEN."

11         IN FACT, IT IS GOOGLE'S BURDEN TO PROVE THAT WEBSITES

12   CONSENTED, AND WE DON'T THINK THEY HAVE MET THAT BURDEN.

13   THEY'VE ADMITTED IT'S AN IMPOSSIBLE BURDEN.

14         AND WE WOULD LIKE TO FLAG EXHIBIT 21 TO THE RJN TO YOUR

15   HONOR.  IN THAT DOCUMENT, WHICH TALKS ABOUT GOOGLE ANALYTICS

16   DATA PROCESSES ON THIRD PARTY WEBSITES, IT SPECIFICALLY HAS A

17   DISCLOSURE THAT IT WILL FOLLOW ITS OWN PRIVACY POLICY.  IT

18   SAYS, "THE GOOGLE PRIVACY POLICY AND PRINCIPLES DESCRIBE HOW WE

19   TREAT PERSONAL INFORMATION WHEN YOU USE GOOGLE'S PRODUCTS AND

20   SERVICES, INCLUDING GOOGLE ANALYTICS."

21         SO OUR POINT IS THAT GOOGLE REPRESENTED TO WEBSITES THAT

22   IT WOULD ABIDE BY ITS PRIVACY POLICIES, AND AS WE'VE SET FORTH

23   IN OUR BRIEFING, GOOGLE'S PRIVACY POLICIES, SINCE AT LEAST MAY

24   OF 2018, TOLD USERS THAT THEY CAN BROWSE THE WEB PRIVATELY IN

25   INCOGNITO, AND THAT ACROSS GOOGLE SERVICES, USERS CAN CONTROL
```

```
1     WHAT GOOGLE DOES WITH THEIR DATA AND WHAT'S COLLECTED.

2         SO THIS ARGUMENT OF WEBSITE CONSENT SIMPLY GOES BACK TO

3     THE ENTIRE PROBLEM THAT WE'VE BEEN DEALING WITH FROM THE

4     GET-GO, WHICH IS THAT GOOGLE GIVES PEOPLE THE ILLUSION OF

5     PRIVACY THROUGH INCOGNITO.  IT GIVES USERS AND THEN TELLS

6     WEBSITES THAT USERS CAN CONTROL THEIR DATA WHEN, IN REALITY,

7     THEY CAN'T.  EVEN WHEN THEY'RE IN INCOGNITO MODE, GOOGLE STILL

8     COLLECTS THIS DATA, REGARDLESS OF WHAT THE USER HAS DONE.

9              THE COURT:  ALL RIGHT.

10         MR. BROOME, DO YOU WANT A BRIEF RESPONSE TO THAT?

11              MR. BROOME:  YEAH, JUST BRIEFLY, YOUR HONOR.

12         THE STATUTE IS A ONE PARTY CONSENT STATUTE.  IT

13     AUTHORIZES -- IT ALLOWS FOR CONSENT BY EITHER THE SENDER OR THE

14     RECIPIENT.

15         AND I THINK MS. BONN'S POINT IS THAT IT ALL COMES BACK TO

16     PLAINTIFFS' CONSENT, RIGHT, AND IF PLAINTIFFS DON'T CONSENT,

17     THEN THE WEBSITES DON'T CONSENT, AND THAT REALLY MAKES IT A ONE

18     PARTY CONSENT STATUTE, AND THAT'S NOT WHAT THE STATUTE PROVIDES

19     FOR.

20              THE COURT:  ALL RIGHT.  I DON'T HAVE ANY MORE

21     QUESTIONS.  IF THERE WAS ONE LAST STATEMENT EITHER SIDE WANTED

22     TO MAKE, I'D GIVE YOU AN OPPORTUNITY TO DO IT NOW.  OTHERWISE I

23     WANT TO THANK YOU VERY MUCH FOR ANSWERING ALL OF MY QUESTIONS

24     AND PROVIDING HELPFUL INFORMATION TODAY.

25              MR. SCHAPIRO:  YOUR HONOR, IF I MAY JUST SUM UP IN A
```

1      MINUTE OR TWO?

2                THE COURT:  JUST A MINUTE, NOT TWO.

3                MR. SCHAPIRO:  OKAY.  I'LL MAKE IT 55 SECONDS.

4           FIRST OF ALL, ON THE TOPIC THAT JUST CAME UP, WE ARE

5      COMFORTABLE THAT WE'LL BE ABLE TO ALLEVIATE YOUR CONCERNS,

6      WHICH ARE WELL TAKEN.  I TOTALLY GET IT.

7           BUT I DO HOPE -- AT THE END OF THE DAY, I WILL SAY I AM

8      ENCOURAGED BY WHERE WE STARTED, WHICH IS THAT THE COURT WILL BE

9      LOOKING AT EXHIBIT 1, EXHIBIT 8, EXHIBIT 18, AND EXHIBIT 19,

10     AND I THINK -- AND WHICHEVER OTHER ONES THAT THE PLAINTIFFS

11     HAVE ADDED, OF COURSE, BECAUSE I THINK WHEN YOU ACTUALLY DIG

12     INTO THE DISCLOSURES THAT WERE MADE IN THIS CASE, IT BECOMES

13     CLEAR THAT THIS CASE DOES NOT FIT INTO THE FACEBOOK MOLD AT

14     ALL, UNLESS WE'RE TALKING ABOUT THE SMITH V. FACEBOOK CASE

15     WHICH GOES THE OTHER WAY.

16          THIS IS A CASE IN WHICH, AS I THINK WE ESTABLISHED AT THE

17     BEGINNING, THE DATA COLLECTION AT ISSUE IS DISCLOSED.  THERE IS

18     NOT A STATEMENT HERE IN WHICH WE SAY, "WE ARE NOT GOING TO DO

19     THIS."

20          INSTEAD, THE PLAINTIFFS POINT TO THEIR UNDERSTANDING OF

21     WHAT THE WORD "PRIVACY" MEANS, OR THEIR UNDERSTANDING OF WHAT

22     "INCOGNITO BROWSING" MUST MEAN.

23          BUT IF YOU READ THE ENTIRE SPLASH SCREEN OR THE PRIVACY

24     POLICY ITSELF OR EXHIBIT 18 AND 19 TO WHICH THE PLAINTIFFS

25     POINT, IT BECOMES QUITE CLEAR THAT THIS ISN'T A FACEBOOK CASE

1    AT ALL, THIS IS A CASE IN WHICH EVERYTHING THAT THE PLAINTIFFS

2    COMPLAIN OF WAS DISCLOSED AND THERE'S NO BASIS TO SUSTAIN THESE

3    CLAIMS.

4          THANK YOU, YOUR HONOR.

5              THE COURT:  ALL RIGHT.  THANK YOU.

6          I'LL GIVE PLAINTIFF AN EQUAL 45 SECONDS.

7              MS. BONN:  THANK YOU, YOUR HONOR.

8          WE THINK THAT THE SPLASH SCREEN IS THE LAST AND FINAL

9    THING THAT USERS SAW BEFORE THEY DID WHAT THEY THOUGHT WAS

10   PRIVATE BROWSING.  YOUR HONOR DECIDED THE PERKINS VERSUS

11   LINKEDIN CASE, AND I THINK YOUR HONOR INDICATED HOW IMPORTANT

12   THE LAST AND FINAL SCREEN IS BEFORE THE USER ENGAGES IN THE

13   CONDUCT THAT'S INTERCEPTED.

14         HERE THAT LAST AND FINAL SCREEN THEY SAW, THE INCOGNITO

15   SCREEN, TELLS THEM, "YOU'RE INCOGNITO, NOW YOU CAN BROWSE THE

16   WEB PRIVATELY," AND THAT IS WHAT GIVES USERS A REASONABLE

17   EXPECTATION THAT THEY WERE NOT BEING INTERCEPTED.

18         GOOGLE POINTS TO TWO OTHER DOCUMENTS, THEIR PRIVACY

19   POLICY.  WE WOULD LIKE TO ASK YOUR HONOR TO TAKE A LOOK AT

20   EXHIBIT 8, AND SPECIFICALLY ON EXHIBIT 8, IT'S THE PORTION ON

21   PAGE 1 WHERE IT SAYS, "YOU CAN BROWSE THE WEB PRIVATELY IN

22   CHROME AND YOU CAN CONTROL WHAT WE COLLECT."

23         THEY ALSO POINTED TO THEIR CHROME POLICY, AND IF YOUR

24   HONOR LOOKS AT THAT, WE'D ASK THAT YOU PLEASE TAKE A LOOK AT

25   EXHIBIT 17, PAGE 13, WHERE THEY SAY THAT "GOOGLE'S SERVERS

```
1     AUTOMATICALLY RECORD THE PAGE REQUESTS MADE WHEN YOU'RE LOGGED

2     IN AND YOU VISIT OUR SITES."

3          GOOGLE'S OWN DOCUMENTS WOULD LEAD USERS TO BELIEVE, IF

4     THEY ARE NOT LOGGED IN, IF THEY ARE IN INCOGNITO MODE, IF

5     THEY'RE NOT VISITING GOOGLE, THEY ARE NOT BEING TRACKED.

6          AND YET, THAT'S EXACTLY WHAT GOOGLE WAS DOING.  THEY WERE

7     COLLECTING THAT DATA ANYWAY, AND THEIR VIEW IS BASICALLY

8     THERE'S NO WAY THAT USERS COULD SAY OTHERWISE OR COULD STOP IT,

9     AND THAT'S REALLY WHAT'S AT THE HEART OF THIS CASE.

10          THE COURT:  ALL RIGHT.  WELL, I WANT TO THANK YOU ALL

11     VERY MUCH, AND I THINK WE'RE ADJOURNED.  THANK YOU.

12          MR. BROOME:  THANK YOU, YOUR HONOR.

13          THE COURT:  THANK YOU VERY MUCH.  TAKE CARE.  BE

14     WELL.

15          MS. BONN:  THANK YOU, YOUR HONOR.

16          THE CLERK:  COURT IS ADJOURNED.

17          (THE PROCEEDINGS WERE CONCLUDED AT 3:02 P.M.)

18

19

20

21

22

23

24

25
```

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18            DATED:  FEBRUARY 26, 2021

19

20

21

22

23

24

25