**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, MARIA NGUYEN, WILLIAM BYATT, JEREMY DAVIS, and CHRISTOPHER CASTILLO, individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK<br><br>**DECLARATION OF STEPHEN BROOME IN RESPONSE TO COURT'S REQUEST**<br><br>Judge:   Honorable Lucy H. Koh |

I, Stephen Broome, declare as follows:

1. I am a partner in the law firm Quinn Emanuel Urquhart & Sullivan, LLP and counsel of record for Defendant Google LLC ("Google") in the above-captioned matter. I am a member in good standing of the state bar of California and admitted to practice in this Court. I make this declaration based on personal knowledge and, if called upon to do so, could testify competently thereto.

2. During the February 25, 2021 hearing on Google's motion to dismiss, I argued that the alleged interception of electronic communications between users and websites that use Google's services is not a violation of the Wiretap Act because, among other reasons, Google had the consent of the website publishers, demonstrated by their choice to embed Google code in their webpages to enable Google to provide them with the services for which they contracted. I made this argument pursuant to 18 U.S.C. § 2511(2)(d), which provides that it is not unlawful for a person to intercept a communication where one of the parties to the communication has given prior consent to such interception. Plaintiffs argued that websites lack authority to provide consent under 18 U.S.C. § 2511(2)(d). In response, I argued that many websites install code (or "scripts") supplied by third-party service providers to re-direct the type of data at issue here (*e.g.*, GET or POST requests) so that the websites may obtain the provider's services. I further made the point that the Court's website, too, is one of the many websites that use such third party-services. Therefore, under Plaintiffs' reading of 18 U.S.C. § 2511(2)(d), this Court would lack authority to authorize the transmission of data necessary to provide the third-party services for which the Court may have contracted, which would make no sense.

3. Your Honor inquired as to when and how Google's counsel learned that the Court's website uses third-party web-services, and requested that I submit an affidavit explaining our understanding of this issue.

4. On the afternoon of February 24, 2021, I was preparing for the oral argument with my colleagues at Quinn Emanuel. During preparation on the website consent issue, we noted that the use

1  by web-service providers of re-directed GET or POST requests in order to provide analytics,
2  advertising, or other web-services to websites is commonplace.[1]

3       5.    To illustrate this point, one of the members of our team clicked on the publicly-
4  available "Developer Tools" function within the Chrome browser to view the source code for the
5  Court's home page (https://www.cand.uscourts.gov/) to determine which, if any, third-party services
6  the Court uses on its homepage.  These are the same publicly available "Developer Tools" to which
7  Plaintiffs refer in their First Amended Complaint and are available to all Chrome users. *See* Dkt. 68 at
8  ¶¶ 86, 95, 96. To do this we visited https://cand.uscourts.gov/ (using Chrome) and then clicked on
9  "View," "Developer," "Developer Tools," and "Sources." We did not use any other method to
10 determine whether the Northern District of California's website used any third-party services.

11      6.    On the Court's website, the Sources page lists a number of scripts, including Google
12 scripts for Maps and Fonts, that the Court has installed on its website.  As shown in the screenshot
13 below, two of those scripts are in the folder titled "adsense/search," which we understood to indicate
14 that the Court is using a Google advertising service:

---

[1] This is consistent with a point in an amicus brief we had recently read that was submitted in connection with a recent petition for certiorari in the U.S. Supreme Court, which noted the ubiquity of third-party analytics services on government websites. *See* Brief for the Internet Association et al. as Amicus Curiae at 17, *Facebook v. Davis* (No. 20-727) (U.S. Dec. 28, 2020) ("Web analytics services are so commonly used across the web that they are employed on the websites of the White House, the United States Department of Justice, the United States Senate, and at least nine of the United States Courts of Appeals"; "Indeed, the use of web analytic services is so firmly established—and the value so widely recognized—that websites operated by agencies in the executive branch of the United States government are 'required' to implement them on all public facing federal websites.") (citations omitted).



7. Indeed, when a search is run in the search box in the top-right corner of the Court's website, the search results page displays advertisements along with the search results.

8. During the argument, I asserted that the Court was using Google's Analytics service. After again visiting the Court's website following the hearing, and using the "Developer Tools" function within Chrome, it does not appear that the Court has the Analytics script on its website. I apologize for any confusion and appreciate the opportunity to clarify my statements.

9. Our review of the Court's website was limited exclusively to using the publicly-available "Developer Tools" function within the Chrome browser, and for the limited purpose of finding a simple way of explaining the common and innocuous nature of websites' use of third-party services.

10. We did not consult with Google regarding the third-party services that the Court uses, or use any non-public information whatsoever.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed in Los Angeles, California on February 26, 2021.

/s/ Stephen Broome
Stephen Broome