BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Andrew H. Schapiro (pro hac vice)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Plaintiffs; additional counsel
listed in signature blocks below*

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>        Plaintiffs,<br><br>                v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 5:20-cv-03664-LHK-SVK<br><br>**JOINT DISCOVERY STATEMENT PURSUANT TO DKT. 133, 133-1 RE: ADDITIONAL DISCOVERY DISPUTES**<br><br>Referral: Hon. Susan van Keulen, USMJ |

April 23, 2021

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:    Joint Discovery Statement Pursuant to Dkt. 133, 133-1 re: Additional Discovery
       Disputes
       *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK  (N.D. Cal.)

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's April 13, 2021 Discovery Order (Dkt. 133, 133-1), Plaintiffs and Google LLC ("Google") jointly submit this statement containing (1) joint letter briefs concerning search terms (Dispute P2) and Plaintiffs' RFP No. 10 (Dispute P6); (2) an updated version of Dkt. 133-1 that reflects the current status of the disputes identified in the chart (Chart A); and (3) charts setting out disputes regarding Plaintiffs' written discovery (Chart B) and Google's written discovery (Chart C).

<u>JOINT STATEMENT REGARDING GOOGLE SEARCH TERMS (Chart A # P2)</u>
<u>PLAINTIFFS' STATEMENT</u>

Plaintiffs made many concessions to try to resolve this dispute, but the parties unfortunately reached an impasse on: (1) certain additional searches for the ten Google-selected custodians; and (2) the searches Google should run for the seven Court-ordered custodians. Plaintiffs' proposed order includes the specific searches in dispute.

(1)   <u>Searches for Google-Selected Custodians</u>:   On April 8, in response to Plaintiffs' January 29 search term proposal, Google proposed 92 searches, with restrictive combination and proximity requirements. Seeking a compromise, on April 8, Plaintiffs agreed to many of Google's searches and in total proposed 100 searches. Having previously proposed 92 searches, Google now proposes applying just 76 of those 100 searches and refuses to add "Sin Rastro."

On April 21, Google for the first time provided Plaintiffs with counts tied to this dispute, disclosing that the disputed searches yield about 220,000 additional documents. With the privacy of millions of Americans at stake, and given the scope of this dispute, 220,000 is not a large set of documents. Plaintiffs proposed a reasonable number of targeted searches, based on the restrictive framework proposed by Google, and Google should review those additional 220,000 documents to determine whether they are responsive to Plaintiffs' requests.

The searches Google refuses to run include some of the most important searches, such as "Incognito", "brows* /2 private*", "private mode", and "Sin Rastro." Incognito is not a common term, and for many years Google only had Incognito for Chrome. Plaintiffs propose adding "private mode" because Google employees have described Incognito as a "private mode." Plaintiffs propose "Sin Rastro" because Google employees organized a 2019 "Incognito Summit" as part of a "Sin Rastro" initiative (roughly translated from Spanish as "leave no trace") with a presentation including key admissions by Google employees, such as "Google and others are still tracking me – It's not truly private." These searches are needed to identify responsive documents that will be missed with Google's restrictive searches.

(2)   <u>Searches for Court-Ordered Custodians</u>:   Plaintiffs' respectfully request that the Court order Google to run the same set of searches proposed above with all Court-ordered custodians apart from Mr. Pichai and Mr. Rakowski, the two custodians for whom the Court ordered production for only 2008 through 2010. For any custodians for whom Google will use only ten searches, Plaintiffs proposed six reasonable searches, including for example "Incognito" and "private* /3 (brows* OR mode)." Earlier today, Google rejected all but one of these searches (agreeing only to include "InPrivate") and proposed more restrictive combination and proximity searches along with other limits.   Google claims the delta is about 180,000 documents, without providing hit counts. Plaintiffs' proposed searches are appropriate and necessary to identify documents that are responsive to Plaintiffs' requests and relevant to Plaintiffs' claims and Google's defenses. The searches properly track and focus on key issues in this case, including Incognito, private browsing, Google's Privacy Policy (which Google cites in support of its consent defense), and people's ability to control Google's data collection.   Google's proposed modifications are overly restrictive and would result in Google withholding key documents.

*Proposed compromise*: Google notes that many of the 400,000 additional documents are communications and newsletters from third parties. As a compromise, Plaintiffs are willing to work with Google to develop a protocol to exclude emails from certain third parties. Google's proposal to limit collection to google.com would improperly exclude all communications from third-parties, including websites asking about Incognito and employees' personal email accounts.

## GOOGLE'S STATEMENT

(1) *Searches for Google-Selected Custodians:* After receiving the first 149 (out of 168) expansive RFPs, Google crafted 92 search terms to review potentially responsive documents for ten custodians. Since then, Google has compromised and agreed to 40 more of Plaintiffs' terms. This dispute centers on Google's attempt to find a compromise for certain terms that are facially overbroad, disproportionate, and burdensome, pulling in roughly 220,000 more documents (many false hits), including (i) standalone terms like "Incognito," "privacy policy," "your data," and "Sin Rastro," (ii) "private /3 mode," and "private /3 brows*," which Plaintiffs seek alone or in conjunction with similarly generic terms, and (iii) dozens of other search terms with either no limiters or broad proximity connectors like /50 or /75.

By contrast, Plaintiffs proposed only *one* compromise, relating to a *single* term ("privacy policy"), in response to Google's explanation that this term appears in countless advertising communications and newsletters sent by third-parties. Google proposed combining it with "Google," "Chrome," or "private browsing" to exclude tens of thousands of irrelevant emails. Plaintiffs instead proposed that Google disclose and negotiate a list of more than a thousand third-party domains to exclude emails from review. That is not a way to resolve this dispute efficiently.

As for "Incognito" and "private /3 mode," these overbroad terms would capture documents relating to Google products that offer the Incognito feature but that are not at issue in this case (like YouTube, Search, and Maps). Plaintiffs have already agreed during the parties' negotiations that only documents relating to Chrome's Incognito mode are relevant; they just demand that Google review *every* document that hits on these over-inclusive and commonly used terms.

Such "catch-all" terms flout Rule 26's proportionality factors (as well as completely disregard the Court's order to compromise) , and no prejudice would ensue if their request was denied. "Key" documents would not be withheld from production because Google is running search terms about Google's disclosures, private browsing, Incognito/ private mode—thus inclusion of the requested terms, alone or with other generic terms Plaintiffs seek, would render these targeted searches (and the extensive efforts to negotiate them) superfluous, and force Google to dig through many haystacks in search of the proverbial needle. "Sin Rastro" is a similarly unreasonable term in isolation because it is the internal name that Google used to refer to a project to implement an Incognito mode in Google Maps and other products not at issue here. Without limiting terms (e.g., "Chrome" or "private browsing"), "Sin Rastro" would hit on a disproportionate percentage of irrelevant documents.

Dozens of other terms suffer from broad proximity connectors like /50 or /75, which are inappropriate and not sufficiently targeted to locate responsive documents. Google accepted some of these terms as a compromise. But narrower connectors are necessary to ensure these generic, non-browsing related terms (like "user" and "data") appear together in a phrase or sentence.

**Google's compromises**: Despite its relevance and scope objections, Google is running 135 searches, some already employing terms like "incognito," "private mode," "private browsing," and "privacy policy" with other terms, ensuring the production of relevant and responsive documents. Plaintiffs have rejected Google's other compromises and concerns out of hand.

(2) *Broadening Searches for Court-Ordered Custodians:* Plaintiffs' request that the Court set aside its order limiting these custodians to ten terms should be denied. Seeking the 135 search terms that Google agreed to run as a compromise for the Google-Selected custodians is improper and will not deny Plaintiffs of "key documents." Likewise, Plaintiffs' five overbroad terms like "Incognito" and "privacy policy" yield 180,000 more documents for these custodians than the 220,000 additional documents Plaintiffs seek for the ten original custodians—yielding 400,000 more documents beyond those captured by the parties' more tailored and targeted terms.

1    <u>JOINT STATEMENT REGARDING CLASS MEMBER IDENTIFICATION (CHART. A # P6)</u>

2                                      <u>PLAINTIFFS' STATEMENT</u>

3            The Parties have reached an impasse regarding Plaintiffs' RFP 10: "Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members." Google's compromise offer (below) to "show that the logged-out private browsing activity of users is not linked—and is not reasonably linkable—to specific users" improperly evades RFP 10 based on distinctions between (1) users (*i.e.*, someone named Brown is browsing a website in private browsing mode) and (2) devices (*i.e.*, that Plaintiff Brown's device is browsing a website in private browsing mode).

           Recent developments prove (1) the requested documents exist and (2) the importance of this discovery. At the 30(b)(6) deposition in this case, Google's representative confirmed that when a user is engaged in Incognito mode, the "X-Client Data header" is not sent to Google. Google also admits that it maintains raw referrer header logs containing X-Client Data Header fields. Class members may be ascertained by looking for entries without the X-Client Data header. The entries likely also contain other data sufficient to identify class members, like device IDs, IP addresses, Google IDs unique to specific devices, and similar information.

           During the *Calhoun* 30(b)(6) deposition, Google's representative also referenced undisclosed



GOOG-BRWN-00026434.

           This revelation is troubling for two reasons. *First*, after the Court ordered Google to file declarations explaining all Google tracking technologies used on the Court's website, neither Google declaration mentioned Google's ▮▮▮▮▮▮▮▮ cookies. During the Court-ordered 30(b)(6) deposition about how Google tracks, collects, and uses information from consumers who browse the Court's website, the designated corporate representative did not disclose these unique Google tracking mechanisms either. *Second*, Google's own documents show that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮, and Google is refusing to allow Plaintiffs to conduct discovery on this data. Google created this problem, admits that it collects private browsing data, and yet refuses to cooperate with Plaintiffs' efforts to ascertain the putative class.

           With RFP 10, Plaintiffs at this time do not seek all data for every putative class member or any address information. Plaintiffs instead reasonably seek and should be given responsive documents that will enable the parties to meaningfully assess the identification of class members. Plaintiffs can begin with data for the named Plaintiffs. On April 21, Plaintiffs sent Google a letter requesting production of the data associated with these Google tracking technologies for the named Plaintiffs' accounts (identified by email addresses) and devices (identified by device identifiers) (responsive to RFP 18) and also records related to the X-Client-Data header and identifiers that can be used to identify class members.

           To move the parties forward, Plaintiffs respectfully request that the Court order Google to produce documents responsive to RFP 10 as follows: (1) data regarding Google's collection of the X-Client-Data header, including browsing data where there is no X-Client-Data header; and (2) data tied to the ▮▮▮▮▮▮▮▮ cookies described above. Google's submission below is just the latest example of the word games that Google is playing to block the discovery that Plaintiffs need to prepare their class certification motion.

## GOOGLE'S STATEMENT

The putative class is limited to Google account holders who were in a private browsing mode while logged out of their Google accounts on their device's browsers. *See* FAC ¶ 192. Google cannot produce documents in response to RFP 10 because it does not maintain or associate "electronic or physical address information" with the private browsing activity of users who are *not* logged into their Google Accounts. Nor does Google maintain any other system or process for identifying logged-out users while in private browsing mode. Google has made this clear in meet-and-confer and in deposition testimony. To avoid this dispute, Google also agreed to produce documents showing that the logged-out private browsing activity of users is not linked—and is not reasonably linkable—to specific users. Simply put, RFP 10 requests documents that do not exist. Plaintiffs refuse to acknowledge that truth.

As Google explains in its Privacy Policy, when users are logged into their Google Accounts, and have provided the relevant permissions, Google will associate the data it receives with the users' Google Accounts. (*See* https://myactivity.google.com/myactivity for user tools to review and delete such data.) By contrast, when users are not logged in—such as Plaintiffs and putative class members—Google *does not* associate the data it receives with the users' Google Accounts, or any other electronic or physical address information. Instead, Google associates the data of logged-out users with resettable identifiers (like the ████████████ cookies) tied to the browser or device. But in Incognito or private browsing mode, every session starts without cookies and any cookies created during the session are deleted from the browser when the user closes that session. These cookies do not persist across separate private browsing sessions. Data associated with such ephemeral identifiers is neither linked, nor reasonably linkable, to specific users. Google maintains detailed policies and procedures to enforce this segregation to ensure users' privacy. *See* Monsees 30(b)(6) Tr. 184:3-22 (testifying that data for logged-in and logged-out users are fully segregated).

Because Google's real-world efforts to ensure user privacy run contrary to their fanciful tales about ████████████████ Plaintiffs ignore all of this. Instead, they go beyond RFP 10 to now demand that Google, in effect, produce *all* data Google receives when users visit websites that use Google services, regardless of whether those users are logged in or not. That would impose an unprecedented burden, even if possible. Worse, Plaintiffs seemingly intend to attempt to re-identify pseudonymous data, correlate logged-in and logged-out activity, and engage in browser "fingerprinting"—for *millions* of logged-out private browsing users, without any consent. Each of these steps would violate Google's anti-fingerprinting policies and data usage rules, as well as its legal obligations and public commitment to user privacy. Plaintiffs' demand that Google facilitate this "fingerprinting" is ironic given that they allege that such techniques—in which Google does not engage and in fact forbids—are unlawful. *See, e.g.*, FAC ¶¶ 100–104. Plaintiffs' request for Google to produce "browsing data where the X-Client-Data header is and is not present" is unworkable because it would entail producing the user data of hundreds of millions of Google Account holders without the users' lawful consent. *See* 18 U.S.C. § 2702(a)(1). In addition, because the X-Client-Data header is only sent from Chrome to specific Google domains (not including Google Analytics), the absence of the header *cannot* be used to ascertain purported class members as it would improperly include *all* users browsing on a non-Chrome browser and all visitors to a site that uses Google Analytics, regardless of whether they were privately browsing.

Plaintiffs' argument that Google's declarations and testimony omitted information about data Google receives from the services the Court has installed on its website is meritless. Google stated that it received "cookies"; neither the Court nor Plaintiffs asked about the type or internal name of those cookies.

**Google's compromise**: Google will (i) produce documents to show that the logged-out private browsing activity of users is neither linked nor reasonably linkable to specific users, (ii) meet and confer with Plaintiffs to discuss production of statistical information it maintains in the ordinary course of business about the use of Chrome Incognito mode; and (iii) consider additional specific written requests in the regular course of discovery.

| Chart A: Updated Version of Dkt. 133-1 | | | |
|---|---|---|---|
| Dispute No. | Dispute | Status of Dispute as of 4/23 Joint Submission | Status as of 4/29/21 Hearing |
| Disputes Identified by Plaintiffs | | | |
| P1 4/7/21 | **Selection of Google custodians**: The parties have a dispute regarding which Google employees to include as document custodians. | <u>Joint Statement</u>: The Court resolved the dispute briefed at Dkt. 127 with its Dkt. 133 ruling.  Plaintiffs are continuing to assess the extent to which there should be other custodians based on additional discovery from Google, including recent 30(b)(6) deposition testimony. | |
| P2 4/7/21 | **Google's search terms**: The parties have a dispute regarding which search terms Google should apply to identify potentially responsive documents. | <u>Joint Statement</u>: Pursuant to the Court's April 13 Order (Dkt. 133-1), the parties are submitting one-page statements regarding search terms. | |
| P3 4/7/21 | **Google's production of Plaintiffs' data**: The parties have a dispute regarding Plaintiffs' RFP No. 18: "Documents concerning Plaintiffs, including Plaintiffs' use of Google services, all data collected by Google from and regarding Plaintiffs, and Google's use of all data collected by Google from and regarding Plaintiffs." | <u>Plaintiffs' Position</u>:   Pursuant to the Court's April 13 order (Dkt. 133), Google produced certain documents using a *Calhoun*-modeled order.  Google's production was incomplete.   On April 21, Plaintiffs requested additional productions responsive to RFP No. 18, and clarification on what Google was withholding – such as unique identifiers used internally by Google.  Plaintiffs also do not believe that Google has produced Plaintiffs' information for Google Analytics or Google Ad Manager, which is at issue in the Complaint.  This dispute is not yet ripe for further resolution.<br><br><u>Google's Position</u>:   Google has produced documents associated with Plaintiffs' Google Accounts per the Court's April 13 Discovery Order, Dkt. 133-1 at 3.  To the extent Plaintiffs seek additional responsive productions, Google is prepared to meet and confer to understand the scope of the additional productions sought. | |

| Chart A: Updated Version of Dkt. 133-1 | | | |
|---|---|---|---|
| Dispute No. | Dispute | Status of Dispute as of 4/23 Joint Submission | Status as of 4/29/21 Hearing |
| P4 4/7/21 | **Google server logs**: The parties have a dispute regarding preservation and production of Google server logs regarding Google's collection and use of private browsing information. | Plaintiffs' Position:  Pursuant to the Court's April 13 order (Dkt. 133), Google produced certain *Calhoun* materials.  Reviewing those materials, Plaintiffs identified information that also bears on Disputes P3, P6, and P7. Plaintiffs provide examples of this information in the one-page statement addressing Dispute P6 (RFP 10).  Google's Position:  Google has produced the *Calhoun* deposition transcript and all documents produced in *Calhoun* regarding this issue per the Court's April 13 Discovery Order, Dkt. 133-1 at 4. | |
| P5 4/7/21 | **Google's preservation of custodial ESI:** The parties have a dispute regarding the extent to which the Court's ESI Order (Dkt. 91) requires Google to preserve custodial ESI back to June 1, 2008. | Joint Statement:  Prior dispute resolved by April 13 order (Dkt. 133) and there is no current dispute. | |
| P6 4/7/21 | **Class member identification:** The parties have a dispute regarding Plaintiffs' RFP No. 10: "Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members." | Joint Statement:  Pursuant to the Court's April 13 order (Dkt. 133), the parties are submitting one-page statements regarding this dispute.  This dispute is also addressed in Chart B. | |
| P7 4/7/21 | **Logged in and logged out:** The parties have a dispute regarding what constitutes | Plaintiffs' Position:  Plaintiffs are reviewing the materials from the *Calhoun* case and continuing to meet and confer with Google.  Regardless, over 10 months into the case, Google has yet to produce internal documents regarding what Google means by "logged out" for purposes of | |

| Chart A: Updated Version of Dkt. 133-1 | | | |
|---|---|---|---|
| Dispute No. | Dispute | Status of Dispute as of 4/23 Joint Submission | Status as of 4/29/21 Hearing |
| | logged in and logged out behavior. | Google Analytics and Google Ad Manager. Although Google states vaguely that there is no disagreement here, Google still has not produced documentation or information regarding how Google's undisputed practice of tracking logged out users affects the collection, storage, and use of data in Google Analytics and Google Ad Manager. There is no ripe dispute at this moment.<br><br>Google's Position:  Google has explained, including in writing, that it interprets "logged out" consistently with Plaintiffs' class definition:  *i.e.*, a user who browsed privately while logged out of her Google account on her browser. Plaintiffs speculate that Google is withholding documents based on some narrower or different definition of "logged out." It is not. There is no real dispute here. | |
| P8 4/7/21 | **Plaintiffs' Consulting Experts:** The parties may have a dispute regarding Plaintiffs' ability to show protective order materials to their retained experts. | Joint Statement:  This dispute has been resolved for the four consulting experts identified by Plaintiffs.   The parties will notify the Court if any other disputes arise in connection with these or other experts. | |
| P9 4/23/21 | **Google production of custodial documents responsive to particular requests**: The parties have a dispute regarding whether Google will produce custodial documents responsive to certain document requests. | Plaintiffs' Position: Plaintiffs identify in Exhibit B particular document requests for which Google is refusing to produce any custodial documents:  Plaintiffs' RFPs 84, 85, 86, 87, 92, 97, 128, 129, 130.  These requests were served in October, and the parties have been meeting and conferring about them since then. Google has begun reviewing custodial documents for production to Plaintiffs, and Google should not be withholding documents responsive to these requests. | |

| Chart A: Updated Version of Dkt. 133-1 | | | |
|---|---|---|---|
| Dispute No. | Dispute | Status of Dispute as of 4/23 Joint Submission | Status as of 4/29/21 Hearing |
| | | Google's Position:  This dispute is not ripe.  Plaintiffs' proposed compromises as to RFP Nos. 84-87, 92, 97, and 128-130 were first communicated to Google on April 22, 2021. The parties have not sufficiently met and conferred on these proposals.  Plaintiffs have not justified their request for these documents, a majority of which relate to Google's purported "market power." Further, to evaluate the compromise, Google needs to understand what it means that Plaintiffs seek production of documents responsive to these requests "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review.  The sporadic meet and confer requests, mostly on paper, did not even manage to discuss each RFP because of the sheer volume (168 RFPs to date). These are not the type of robust efforts the Court envisioned before a party is able to declare impasse. | |
| P10 4/23/21 | **Google timeline for producing custodial documents**: The parties have a dispute regarding the timeline for Google's production of custodial documents. | Plaintiffs' Position:  Google has refused to provide any timeline for producing custodial documents, or the volume of custodial documents Google is reviewing. Plaintiffs are concerned that Google has not assigned enough reviewers to this case to quickly produce custodial documents.  Plaintiffs need those documents in time to complete depositions prior to the August 2 close of fact discovery.<br><br>Google's Position:  Google has been making rolling productions on a two-week cadence and is anticipating substantial completion of its document production of the initial 10 custodians in June.  Google is willing and able to complete its discovery obligations, but not without Plaintiffs' meaningful participation.  The scope of discovery is still unsettled because Plaintiffs propounded 168 RFPs and facially overbroad search terms, many of which they have failed to narrow or | |

| Chart A: Updated Version of Dkt. 133-1 | | | |
|---|---|---|---|
| Dispute No. | Dispute | Status of Dispute as of 4/23 Joint Submission | Status as of 4/29/21 Hearing |
| | | discuss.  Further, Plaintiffs insist on reopening the Court's order on search terms for 6 of the 17 custodians, and continue to insist on overbroad search terms for the additional custodians. It is impossible to provide a more accurate estimate when the scope of document discovery is a constantly moving and ever expanding target, and Plaintiffs fail to make meaningful compromises. | |
| P11 4/23/21 | **Google's production of Board documents**: The parties have a dispute regarding Google's production of documents responsive to RFP No. 13: "Handouts and presentations to or from any Google C-level executive or board member and committee or board meeting minutes discussing any private browsing mode, including Incognito mode." | Plaintiffs' Position:  Google proposed limiting its production to board meeting materials discussing private browsing mode back to June 1, 2014.  Plaintiffs propose also including the period June 1, 2008 through December 31, 2010, and that Google specify which search terms Google is using to identify these documents.  Plaintiffs also seek a date certain for Google's production of these documents.  This dispute is ripe for a decision by the Court. This dispute is also addressed in Chart B.  Google's Position:  This dispute is not ripe. Google offered as a compromise to search board meeting materials starting in June 2014, two years before the Class Period. Plaintiffs initially sought June 2008 to June 2009; now Plaintiffs have expanded the period they seek, but have done nothing to justify the need for board meeting materials for an additional period of 2.5 years. In any event, Google is investigating whether board materials from that period exist. Google is willing to identify the search terms used for this targeted search. | |
| P12 4/23/21 | **Google production of other non-custodial documents**:  The parties have a dispute | Joint Statement:  The parties disagree over whether Google must produce non-custodial documents responsive to various requests.  The parties are still | |

| **Chart A: Updated Version of Dkt. 133-1** | | | |
|---|---|---|---|
| **Dispute No.** | **Dispute** | **Status of Dispute as of 4/23 Joint Submission** | **Status as of 4/29/21 Hearing** |
|  | regarding whether Google will produce non-custodial documents responsive to certain document requests. | meeting and conferring regarding these requests. The dispute is not yet ripe. |  |
| P13 4/23/21 | **Google's responses to Interrogatory Nos. 5–7**: The parties have a dispute regarding Google's responses to these interrogatories. | <u>Plaintiffs' Position</u>:  Google has refused to respond to Plaintiffs' Interrogatory Nos. 5–7 on the ground that Plaintiffs' first four interrogatories should be construed as 27 discrete interrogatories.  Plaintiffs asked Google to reconsider its counting of the first four interrogatories.<br><br><u>Google's Position</u>:  Plaintiffs' interrogatories are unduly compound.  For example, Interrogatory 4 seeks "For the period since June 1, 2008, identify Google's current and former officers, directors, managers, employees, and consultants with responsibility for or knowledge of" six discrete and non-overlapping topics.  As a compromise, Google offered to raise the interrogatory limit to 30 interrogatories per side.  Plaintiffs have not responded. |  |
| **Disputes Identified by Google** | | | |
| D1 4/7/21 | Plaintiffs' Responses to Google's Requests for Admissions No. 1 | <u>Google's Position</u>:  The parties have met and conferred and have identified unresolved disputes in Chart C per the Court's April 13 Discovery Order. Dkt. 133, 133-1 at 9. |  |
| D2 4/7/21 | Plaintiffs' Responses to Google's Interrogatories Nos. 1, 2, 4, 5. | <u>Google's Position</u>:  The parties have met and conferred and have identified unresolved disputes in Chart C per the Court's April 13 Discovery Order. Dkt. 133, 133-1 at 9. |  |
| D3 4/7/21 | Plaintiffs' Response to Google's Requests for Production Nos. 2, 3, 6, 7. | <u>Google's Position</u>:  The parties have met and conferred and have identified unresolved disputes in Chart C per the Court's April 13 Discovery Order. Dkt. 133, 133-1 at 9-10. |  |

| Chart A: Updated Version of Dkt. 133-1 | | | |
|---|---|---|---|
| Dispute No. | Dispute | Status of Dispute as of 4/23 Joint Submission | Status as of 4/29/21 Hearing |
| D4 4/7/21 | Plaintiffs' Responses to Google's Requests for Admissions Nos. 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15, 16, 17. | <u>Google's Position:</u>  Google identified deficiencies in Plaintiffs' responses to these requests on March 12, 2021. Well over a month later and just days before this submission was due, Plaintiffs provided their reply on April 19, 2021.  The parties are continuing to meet and confer on these requests. | |
| D5 4/7/21 | Plaintiffs' Responses to Google's Interrogatories Nos. 7, 9, 10. | <u>Google's Position:</u>  Google identified deficiencies in Plaintiffs' responses to these requests on March 12, 2021.  Well over a month later and just days before this submission was due, Plaintiffs provided their reply on April 19, 2021.  The parties are continuing to meet and confer on these requests. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 4/29/21 Hearing** |
| P6 4/23/21 | Plaintiffs RFP 10: Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members. | The parties have submitted one-page letter briefs regarding this dispute. To move the parties forward, Plaintiffs respectfully request that the Court order Google to produce documents responsive to RFP 10 as follows: (1) data regarding Google's collection of the X-Client-Data header, including browsing data where there is no X-Client-Data header; and (2) data tied to the ▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮ described in the submission. | As outlined in its one-page letter brief, Google will (i) produce documents to show that the logged-out private browsing activity of users is neither linked nor reasonably linkable to specific users, (ii) meet and confer with Plaintiffs to discuss production of statistical information it maintains in the ordinary course of business about the use of Chrome Incognito mode; and (iii) consider additional specific written requests in the regular course of discovery. | |
| P9 4/23/21 | Plaintiffs RFP 84: Documents relating to how Google attempted to comply or complied with the California Consumer Privacy Act (CCPA), Europe's General Data Privacy Regulation (GDPR), and similar legislation. | Plaintiffs ask that the Court order Google to produce custodial documents responsive to this request, as Google has taken the position that its practices regarding the collection and use of private browsing information were enacted in accordance with these laws. SAC ¶ 40 (Dkt No. 136-1). Plaintiffs propose that this request be limited to the applicable time periods for each custodian, and Plaintiffs will not require any additional searches. | This dispute is not ripe. Plaintiffs' compromise offer was first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review. Further, Google notes that Plaintiffs' request is not narrowly tailored to the purported relevance. Compliance with the CCPA may be relevant to the retention of the | |

| | | | logs--a tangential discovery-on-discovery issue. Plaintiffs have not justified how compliance or attempted compliance with the CCPA, GDPR, and undefined "similar legislation" has any relevance here. | |
|---|---|---|---|---|
| P9<br>4/23/21 | Plaintiffs RFP 85: Documents relating to how Google lobbied for or against bills and proposed laws in the United States similar to or based on the California Consumer Privacy Act (CCPA). | Plaintiffs ask that the Court order Google to produce custodial documents responsive to this request, as Google has taken the position that its practices regarding the collection and use of private browsing information were enacted in accordance with the CCPA. SAC ¶ 40. Plaintiffs propose that this request be limited to the applicable time periods for each custodian, and Plaintiffs will not require any additional searches. | This dispute is not ripe. Plaintiffs' compromise offer was first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review.<br><br>Further, Google notes that Plaintiffs' request is not narrowly tailored to the purported relevance. Compliance with the CCPA may be relevant to the retention of the logs--a tangential discovery-on-discovery issue. Plaintiffs have not justified how lobbying efforts have any relevance here, or why this request, aimed at speech and activities protected by the First Amendment and/or the Noerr-Pennington doctrine, is proportional to the needs of this litigation. | |
| P9<br>4/23/21 | Plaintiffs RFP 86: Documents back to | Plaintiffs ask that the Court order Google to produce custodial | This dispute is not ripe. Plaintiffs' compromise offer was | |

14

| | | | | |
|---|---|---|---|---|
| | January 1, 2005 concerning Google's response to Apple's launch of private browsing in 2005, including any response involving the competitive threat posed to Google's power in any market. | documents responsive to this request limited to the applicable time period for each custodian and without any additional searches. Plaintiffs seek these documents in connection with their allegations that Google intentionally intercepts private browsing communications so that Google can profit from the collection and use of that private browsing information, reinforcing Google's market power. SAC ¶¶ 43, 67, 78, 82, 89, 93, 109, 114-16, 119, 121, 128-30, 133, 135. These documents are relevant without limitation to Google's intent, Google's defenses (including the unlawful-purpose exception Judge Koh applied in her order denying the motion to dismiss), and damages. Google has already produced relevant documents concerning, for example,  *E.g.*, GOOG-BRWN-00027368 | first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review. Google assumes, but would like confirmation, that the request no longer seeks documents going back to 2005. Plaintiffs provided their purported relevance explanations less than an hour before the filing deadline. Although Google has not had a chance to respond to these (much less meet and confer with Plaintiffs on them), they are insufficient to justify the broad fishing expedition into Google's purported "market power" that Plaintiffs seek. | |

| | | | |
|---|---|---|---|
| | | ███████████████ <br> ███████████████ <br> ████████ With Plaintiffs proposing no additional searches tied to this request, there is no burden in terms of Google producing these custodial documents. If such custodial documents exist, within the set of documents collected using other search terms, Google should produce them. | |
| P9 <br> 4/23/21 | Plaintiffs RFP 87: Documents back to January 1, 2005 concerning the actual, potential, or anticipated impact of private browsing mode on Google's power in any market, including Search, browsers, and advertising markets. | Plaintiffs ask that the Court order Google to produce custodial documents responsive to this request limited to the applicable time period for each custodian and without any additional searches. Plaintiffs seek these documents in connection with their allegations that Google intentionally intercepts private browsing communications so that Google can profit from the collection and use of that private browsing information, reinforcing Google's market power. SAC ¶¶ 43, 67, 78, 82, 89, 93, 109, 114-16, 119, 121, 128-30, 133, 135. These documents are relevant without limitation to Google's intent, Google's defenses (including the unlawful-purpose exception Judge Koh applied in her order denying the motion to dismiss), and damages. Google has already produced relevant documents concerning, for example, ██ ████ ███████ ████ ████ ████ ████ | This dispute is not ripe. Plaintiffs' compromise offer was first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review. Google assumes, but would like confirmation, that the request no longer seeks documents going back to 2005. <br><br> Plaintiffs provided their purported relevance explanations less than an hour before the filing deadline. Although Google has not had a chance to respond to these (much less meet and confer with Plaintiffs on them), they are insufficient to justify the broad fishing expedition into Google's | |

| | | | purported "power in any market" that Plaintiffs seek. | |
|---|---|---|---|---|
| | |  *E.g.*, GOOG-BRWN-00027368  With Plaintiffs proposing no additional searches tied to this request, there is no burden in terms of Google producing these custodial documents. If such custodial documents exist, within the set of documents collected using other search terms, Google should produce them. | | |
| P9 4/23/21 | Plaintiffs RFP 92: Documents back to January 1, 2005 concerning any effort by Apple to limit Google's ability to track users and collect data, including the actual, potential, or anticipated impact on Google. | Plaintiffs ask that the Court order Google to produce custodial documents responsive to this request limited to the applicable time period for each custodian and without any additional searches. Plaintiffs seek these documents in connection with their allegations that Google intentionally intercepts private browsing communications so that Google can profit from the collection and use of that private | This dispute is not ripe. Plaintiffs' compromise offer was first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review. Google assumes, but | |



browsing information, reinforcing Google's market power. SAC ¶¶ 43, 67, 78, 82, 89, 93, 109, 114-16, 119, 121, 128-30, 133, 135. These documents are relevant without limitation to Google's intent, Google's defenses (including the unlawful-purpose exception Judge Koh applied in her order denying the motion to dismiss), and damages. Google has already produced relevant documents concerning, for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *E.g.*, GOOG-BRWN-00027368 ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ With Plaintiffs proposing no additional searches tied to this request, there is no burden in terms of Google producing these custodial documents. If such custodial documents exist, within the set of documents collected using other

would like confirmation, that the request no longer seeks documents going back to 2005.

Plaintiffs provided their purported relevance explanations less than an hour before the filing deadline. Although Google has not had a chance to respond to these (much less meet and confer with Plaintiffs on them), they are insufficient to justify the broad fishing expedition into the purported "impact on Google" associated with Apple's actions.

| | | search terms, Google should produce them. | | |
|---|---|---|---|---|
| P9 4/23/21 | Plaintiffs RFP 97: Documents concerning this lawsuit, including email, instant message, and text message communications by Google employees on or after June 2, 2020. | Plaintiffs ask that the Court order Google to produce custodial documents responsive to this request, which is limited to the period on or after June 2, 2020, without adding any additional searches. | This dispute is not ripe. Plaintiffs' compromise offer was first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review.<br><br>Plaintiffs also have failed to justify what relevant information they hope to obtain by seeking all documents concerning this lawsuit. This request appears to be designed to seek information protected from discovery by the attorney-client privilege. | |
| P9 4/23/21 | Plaintiffs RFP 128: Documents concerning Google's market power in search since January 1, 2005, including any impact on that market power based on Google's collection of data while users are in private browsing mode. | Plaintiffs ask that the Court order Google to produce custodial documents responsive to this request limited to the applicable time period for each custodian and without any additional searches. Plaintiffs seek these documents in connection with their allegations that Google intentionally intercepts private browsing communications so that Google can profit from the collection and use of that private browsing information, reinforcing Google's market power. SAC ¶¶ 43, 67, 78, 82, 89, 93, 109, 114-16, 119, | This dispute is not ripe. Plaintiffs' compromise offer was first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review. Google assumes, but would like confirmation, that the request no longer seeks documents going back to 2005. | |



| | | 121, 128-30, 133, 135. These documents are relevant without limitation to Google's intent, Google's defenses (including the unlawful-purpose exception Judge Koh applied in her order denying the motion to dismiss), and damages. Google has already produced relevant documents concerning, for example, ■■■■ ■■■■ ■■■■ *E.g.*, GOOG-BRWN-00027368 ■■■■ ■■■■ ■■■■ . With Plaintiffs proposing no additional searches tied to this request, there is no burden in terms of Google producing these custodial documents. If such custodial documents exist, within the set of documents collected using other search terms, Google should produce them. | Plaintiffs provided their purported relevance explanations less than an hour before the filing deadline. Although Google has not had a chance to respond to these (much less meet and confer with Plaintiffs on them), they are insufficient to justify the broad fishing expedition into Google's purported "market power" that Plaintiffs seek. | |

| P9 4/23/21 | Plaintiffs RFP 129: Documents concerning Google's power in the market(s) for internet browsers since January 1, 2005, including any impact on that market power based on Google's collection of data while users are in private browsing mode. | Plaintiffs ask that the Court order Google to produce custodial documents responsive to this request limited to the applicable time period for each custodian and without any additional searches. Plaintiffs seek these documents in connection with their allegations that Google intentionally intercepts private browsing communications so that Google can profit from the collection and use of that private browsing information, reinforcing Google's market power. SAC ¶¶ 43, 67, 78, 82, 89, 93, 109, 114-16, 119, 121, 128-30, 133, 135. These documents are relevant without limitation to Google's intent, Google's defenses (including the unlawful-purpose exception Judge Koh applied in her order denying the motion to dismiss), and damages. Google has already produced relevant documents concerning, for example, <br/><br/>*E.g.*, GOOG-BRWN-00027368  | This dispute is not ripe. Plaintiffs' compromise offer was first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review. Google assumes, but would like confirmation, that the request no longer seeks documents going back to 2005.<br/><br/>Plaintiffs provided their purported relevance explanations less than an hour before the filing deadline. Although Google has not had a chance to respond to these (much less meet and confer with Plaintiffs on them), they are insufficient to justify the broad fishing expedition into Google's purported "market power" that Plaintiffs seek. | |

| | | | | |
|---|---|---|---|---|
| | | <br><br>With Plaintiffs proposing no additional searches tied to this request, there is no burden in terms of Google producing these custodial documents.   If such custodial documents exist, within the set of documents collected using other search terms, Google should produce them. | | |
| P9<br>4/23/21 | Plaintiffs RFP 130: Documents concerning Google's power in the market(s) for advertising services since January 1, 2005, including any impact on that market power based on Google's collection of data while users are in private browsing mode. | Plaintiffs ask that the Court order Google to produce custodial documents responsive to this request limited to the applicable time period for each custodian and without any additional searches.   Plaintiffs seek these documents in connection with their allegations that Google intentionally intercepts private browsing communications so that Google can profit from the collection and use of that private browsing information, reinforcing Google's market power. SAC ¶¶ 43, 67, 78, 82, 89, 93, 109, 114-16, 119  , 121, 128-30, 133, 135. These documents are relevant without limitation to Google's intent, Google's defenses (including the unlawful-purpose exception Judge Koh applied in her order denying the motion to dismiss), and damages.   Google has already produced relevant documents | This dispute is not ripe. Plaintiffs' compromise offer was first made on April 22. The parties have not sufficiently met and conferred on this request. For example, Google needs to understand what it means that Plaintiffs do not require "any additional searches," and which custodians' documents Plaintiffs envision would be subject to this review.   Google assumes, but would like confirmation, that the request no longer seeks documents going back to 2005.<br><br>Plaintiffs provided their purported relevance explanations less than an hour before the filing deadline. Although Google has not had a chance to respond to these (much less meet and confer with Plaintiffs on them), they are | |

| | | | |
|---|---|---|---|
| | | concerning, for example, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮ *E.g.*, GOOG-BRWN-00027368 ▮▮▮ ▮▮▮▮▮▮▮ With Plaintiffs proposing no additional searches tied to this request, there is no burden in terms of Google producing these custodial documents. If such custodial documents exist, within the set of documents collected using other search terms, Google should produce them. | insufficient to justify the broad fishing expedition into Google's purported "market power" that Plaintiffs seek. | |
| P11 4/23/21 | Plaintiffs RFP No. 13: Handouts and presentations to or from any Google C-level executive or board member and committee or board meeting minutes discussing any private browsing mode, | In addition to the period June 1, 2014 through the present (to which Google agrees), Plaintiffs propose including the period June 1, 2008 through December 31, 2010, and ask that Google specify which search terms Google is using to identify these documents. Plaintiffs also seek a date certain for Google's | This dispute is not ripe. Google offered as a compromise to search board meeting materials starting in June 2014, two years before the Class Period. Plaintiffs initially sought June 2008 to June 2009; now Plaintiffs have expanded the period they seek, but have done nothing to justify the need for | |

| | including   Incognito mode. | production   of   these   documents. SAC ¶ 146. | board meeting materials for an *additional* period of 2.5 years. In any   event,   Google   is investigating   whether   board materials from that period exist. Google is willing to identify the search   terms   used   for   this targeted search. | |

| Chart C: Disputes re: Google's Written Discovery | | | | |
|---|---|---|---|---|
| **Discovery Request** | **Plaintiffs' Response** | **Google's Compromise** | **Plaintiffs' Compromise** | **Status as of 4/29/21 Hearing** |
| **Google's First Set of Discovery Requests** | | | | |
| **RFA No. 1:** Admit that, when YOU signed up for YOUR Google Account, YOU reviewed and consented to the GOOGLE PRIVACY POLICY. | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. Otherwise Denied.<br><br>**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each | Because Plaintiffs' current responses do not address Google's Privacy Policy, a link to which is provided in the request, and does not admit or deny whether Plaintiffs consented to it, Google requests Plaintiffs amend their response to RFA No. 1 to: (1) provide individualized responses for each Plaintiff based on that Plaintiff's particular knowledge and circumstances, rather than repeating *verbatim* boilerplate responses for each Plaintiff, as they have done; (2) clearly admit or deny that they reviewed Google's Privacy Policy when they signed up for their respective Google Accounts; and (3) state whether Plaintiffs consented to the terms of the Privacy Policy when they signed up for their respective Google Accounts. Plaintiffs have stood on their | Plaintiffs properly responded to this request. Plaintiffs describe what they recall reviewing when they opened their Google Accounts and otherwise denied the request. Although no further amendment is required, Plaintiffs are willing to meet and confer further in light of the Court's motion to dismiss ruling and the filing of their Second Amended Complaint. | |

| | | | |
|---|---|---|---|
| | time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. Otherwise Denied.<br><br>**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. Otherwise Denied.<br><br>**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode | responses and the parties are at impasse. Plaintiffs' belated offer to "meet and confer further in light of the Court's motion to dismiss ruling and the filing of their Second Amended Complaint" makes little sense. The RFA asks about historical facts, which should be unaffected by the Court's motion to dismiss ruling and the filing of the SAC. | | |

| | session in Chrome), to be the Google Privacy Policy. Otherwise Denied. | | |
|---|---|---|---|
| **Interrogatory No. 1:** Describe with particularity each time YOU reviewed the GOOGLE TERMS OF SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s) of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed). | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito | Because Plaintiffs again attempt to re-define Google's Privacy Policy, which is hyperlinked in the Interrogatory's definition, Google requests Plaintiffs amend their responses to respond to the Interrogatory as written, including by responding based on the clear definitions included with the Interrogatory. In addition, Plaintiffs should provide individualized responses for each Plaintiff based on that Plaintiff's particular knowledge and circumstances, rather than repeating *verbatim* boilerplate responses for each Plaintiff, as they have done. Plaintiffs' self-serving *verbatim* response that they each reviewed only the Incognito "splash screen" and the Google "representations outlined in paragraphs 2 and 42 of the First Amended Complaint" is deficient because it deprives | Plaintiffs provided responses that fairly reflect their experiences relevant to this litigation. These experiences are similar and that is reflected in the similarity of some but not all of Plaintiffs' discovery responses.

Google made numerous representations that users can manage their privacy and omit Google as an entity that can view users' activity while in private browsing mode. These are mentioned in paragraphs 2 and 42 of the then-operative complaint, as well as the Google Incognito Splash Screen. As their responses state, these are the representations that Plaintiffs recall, and Plaintiffs do not recall when these were reviewed, or what other disclosures were reviewed.

Although Google represents the Privacy |

| | splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google | Google of the actual facts regarding which documents at issue in this case (and which versions of those documents), and which portions of those documents, each Plaintiff actually reviewed. Plaintiffs have stood on their responses and the parties are at impasse. | Policy (and other alleged disclosures) were hyperlinked and referenced in the discovery requests, Google asks for a detailed review of "any prior versions" of those alleged disclosures. It is not unreasonable for Plaintiffs to limit their responses to what they recall reviewing, as they have done in their responses. | |

| | representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.<br><br>**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands | | | |

| | this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to. | | | |
|---|---|---|---|---|
| **Interrogatory No. 2:** Describe with particularity YOUR use of CHROME, including: the date YOU first began using CHROME on each device (*e.g.*, mobile devices, tablets, laptops, and/or desktops); the frequency with which YOU used CHROME on each device; which browser modes YOU used in CHROME on each device; whether you logged into a Google account when you used CHROME on each device; which Google account(s) YOU logged into when YOU used CHROME on each | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown responds that he has used Chrome on his laptop computer since at least 2016 as the primary web browser. Since June 2016, Plaintiff Brown used Chrome on his laptop, and in the last approximate two years began using Chrome's private browsing mode more often on his laptop, at least a few times per month, and at least a few times per week on his Android phone. Plaintiff Brown uses private browsing mode on both his laptop and phone to browse ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ To the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode, but may have logged into his Google accounts, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ | Google requests Plaintiffs respond with more particularity regarding when they first began using Chrome. Several Plaintiffs appear to have simply stated that they have been using Chrome on certain devices since the start of the class period. Google is entitled to know Plaintiffs' best recollections as to when they first began using Chrome. This is particularly relevant to, among other things, the disclosures Plaintiffs would have been shown at that time. Plaintiffs' agreed to provide amended verified responses with more specificity nearly a | After meeting and conferring, Plaintiffs agreed to amend their responses and will do so. Accordingly, this request is not ripe for the Court's consideration. | |

| | | |
|---|---|---|
| device; which website(s) YOU visited while using CHROME on each device; whether you ever reviewed or deleted data on MY GOOGLE ACTIVITY; and how often YOU enabled CHROME INCOGNITO MODE while logged out of your Google account. | ▮▮▮▮▮▮▮▮▮ when using Chrome in its non-private mode. To the best of Plaintiff Brown's knowledge, Plaintiff Brown has not reviewed or deleted his My Google Activity.<br><br>**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt responds that he has used Chrome since it was released. Since June 2016, Plaintiff Byatt has almost exclusively used Chrome on his laptop computers, as well as on his Android phone. Since June 2016, Plaintiff Byatt estimates that he uses the Chrome private browsing mode approximately one hour each day. Plaintiff Byatt uses private browsing mode on both his laptop and phone. Plaintiff Byatt uses private browsing mode on both his laptop and phone to browse ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ To the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode, but may have been logged into his Google accounts, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮ when using Chrome in its non-private browsing mode. Plaintiff Byatt has reviewed his My Google Activity and, prior to this litigation, may have removed an entry from the My Google | month ago, but have not done so yet. |

Activity, but cannot recall what it was or when he did.

**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo responds that he has used Chrome on his desktop computers since at least 2016 as the primary web browser. Since June 2016, Plaintiff Castillo has used Chrome for most of his browsing activity on his devices, including his desktop and Android phone. Since June 2016, Plaintiff Castillo has used Chrome in both the non-private browsing mode and private browsing modes for his browsing activity on his devices, including his desktop and Android phone. Since June 2016, Plaintiff Castillo estimates that he uses the Chrome private browsing mode approximately two or three times per week. Plaintiff Castillo uses private browsing mode on both his desktop and phone to browse ███████████ ██████. To the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode, but may have been logged into his Google account, ███████████████ when using Chrome in its non-private browsing mode. To the best of Plaintiff Castillo's knowledge, Plaintiff Castillo has not reviewed or deleted his My Google Activity.

| | Davis: Notwithstanding and subject to these objections, Plaintiff Davis responds that he has used Chrome on desktop and laptop computers since at least 2008. Since June 2016, Plaintiff Davis has exclusively used Chrome on desktop and laptop computers, as well as tablets and his phone, and the overwhelming majority of his browsing activity is done in private browsing mode in Chrome, which is at least hundreds of thousands of visits to websites during this time. In fact, Plaintiff Davis utilizes private browsing mode by default on all of his devices and web browsers (Chrome on his laptops and tablets, Chrome and Safari on his iPhone), and to the best of Plaintiff Davis' knowledge, the only time browsing activity may be done outside of private browsing mode is when Plaintiff Davis clicks a hyperlink from an email and that hyperlink launches his browser in non-private browsing mode on his iPhone. Otherwise, all of Plaintiff Davis' browsing activity is performed in private browsing mode. To the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts when using Chrome's private browsing mode. To the best of Plaintiff Davis' knowledge, Plaintiff Davis has not reviewed or deleted his My Google Activity. | | | |
| Interrogatory No. 4: Without limitation as to time period, describe | Brown:   Plaintiff Brown objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs | Google will accept Plaintiffs' position that user data related to | Google's request for a "top 10" list is unreasonable. After | |

| | | | | |
|---|---|---|---|---|
| with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE. | of the litigation, considering Google requests each and every instance when Plaintiff Brown may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Brown does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*e.g.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Brown is willing to meet and confer with Defendant regarding his objection. | browsing when private browsing mode was not enabled is irrelevant in this case—on the condition that limitation applies to all parties. Further, Google appreciates that—if Plaintiffs have not saved any information related to their private browsing sessions—it will be difficult to describe with particularity all websites with which they have shared any data at issue in private browsing mode. If Plaintiffs confirm they have not saved any information related to their private browsing sessions, then Google will agree to accept a list of the top ten websites that Plaintiffs believe they visited most frequently in private browsing mode. Plaintiffs have not agreed to this compromise. They have agreed to identify *some* of the websites they visited, but not the top ten they visited most frequently. This is insufficient because it will allow Plaintiffs to cherry pick websites that | meeting and conferring, Plaintiffs agreed to provide information regarding websites they recall visiting during the class period, but Plaintiffs' counsel reasonably did not commit to the "top 10" list proposed by Google, where Plaintiffs may or may not have such a list. Google rejected that offer, and the night before this submission raised for the first time a concern that Plaintiffs would "cherry pick" websites that "lack robust or prominent disclosures."<br><br>Despite numerous requests, Google has been unable to produce or otherwise identify any notice or policy that discloses Google's surreptitious collection activity while users are in private browsing mode. If Google can identify any such "robust" or "prominent" disclosure, it should do so, and further meet and confer with Plaintiffs on the | |

| | | lack robust or prominent disclosures. The parties are at impasse. | resolution of any remaining dispute. | |
|---|---|---|---|---|
| | | | Given that Google itself collects and has information regarding Plaintiffs' private browsing, which Google continues to withhold, this demand for a "top 10" list is pointless. | |
| | | Plaintiffs' assertion that "Google itself ... has information regarding Plaintiffs' private browsing" is misleading. As Google has repeatedly explained, Google does not associate logged-out private browsing data with specific users, such as Plaintiffs. Moreover, Plaintiffs have failed to provide any information about what sites they visited at what time, with what device, and which cookie values may have been sent to Google from that device. On the information provided, Google cannot probabilistically identify Plaintiffs' private browsing sessions without overriding internal technical barriers and violating its policies against re-identification of user data. | | |
| **Interrogatory No. 5:** Describe with particularity each time | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown responds that he used private browsing | Google acknowledges Plaintiffs' representation that they "cannot recall | Plaintiffs' responses are sufficient and Google's position is unreasonable | |

| | | | | |
|---|---|---|---|---|
| YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location. | mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Brown cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Brown used Chrome's private browsing mode for approximately the last two years to browse ███████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████ The vast majority of this private browsing activity was done in Chrome, but Plaintiff Brown may have tried the private browsing mode with Microsoft's web browser once or twice. The overwhelming majority of Plaintiff Brown's private browsing activity was done in California.<br><br>**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Byatt cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Byatt used Chrome's private browsing mode, and recalls using the Chrome private browsing mode to browse ████████████ The overwhelming majority of this private browsing activity was done in Chrome, but Plaintiff Byatt may | the particular details of each and every time [they] engaged in private browsing mode." In light of this position, Google requests that Plaintiffs confirm whether they can identify and describe *any* private browsing session with particularity during which Google allegedly collected the data at issue and provide the responsive information they recall. This is important information which Google does not maintain. But Plaintiffs have refused to provide it with any particularity—such as by identifying the particular websites they visited—and the parties are at impasse. | and contrary to the discovery responses. Plaintiffs objected to this interrogatory as not proportional to the needs of this litigation, but they nonetheless *did* provide details of their private browsing activity (which was designated as confidential) with estimated timeframes for the activity they could recall.<br><br>Requiring Plaintiffs to recreate each and every private browsing session, including details of what, where, and when, demonstrates the unreasonable positions Google taken throughout this litigation, especially where Google itself has tracked and has records of that private browsing activity that Google continues to withhold. | |



have browsed privately in Firefox, but cannot recall any specific details of that activity. The majority of Plaintiff Byatt's private browsing activity was done in Florida.

**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Castillo cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Castillo used Chrome's private browsing mode, and recalls using the Chrome private browsing mode in approximately 2016 and 2017 to browse ███████ ███████████████████. Also, more recently Plaintiff Castillo used Chrome's private browsing mode to ████████████████████ ████████████████████ ████████████████████. Otherwise, Plaintiff Castillo occasionally uses Chrome's private browsing mode to ████████████. The majority of Plaintiff Castillo's private browsing activity was done in California.

**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis

| | responds that the overwhelming majority of his browsing activity is done by default in private browsing mode in Chrome. In fact, Plaintiff Davis utilizes private browsing mode by default on all of his devices and web browsers (Chrome on his laptops and tablets, Chrome and Safari on his iPhone), and to the best of Plaintiff Davis' knowledge, the only time browsing activity may be done outside of private browsing mode is when Plaintiff Davis clicks a hyperlink from an email and that hyperlink launches his browser in non-private browsing mode. Otherwise, all of Plaintiff Davis' browsing activity is performed in private browsing mode. The majority of Plaintiff Davis' private browsing activity was done in Arkansas. | | | |
|---|---|---|---|---|
| **RFP No. 2:** All DOCUMENTS and COMMUNICATIONS RELATED TO CHROME and CHROME INCOGNITO MODE. | Notwithstanding and subject to these objections, Plaintiff Brown responds that the disclosures outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects, and he could exercise such control by enabling private browsing mode, are responsive to this Request. Further, the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) is responsive to this Request. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to meet and confer with Google to determine whether Google wishes for | Google asks that Plaintiffs run search terms across the full forensic images they have collected based on the additional context provided in Google's February 4, 2021 letter to Plaintiffs regarding what it seeks with this request.

Plaintiffs have indicated that there are no responsive documents but have refused to identify the repositories searched and search terms used, as Google | The parties discussed this request during a meet and confer on April 2, and Google confirmed this dispute was no longer at issue based on Plaintiffs' written correspondences.

Google has never made a request or suggested search terms for Plaintiffs' devices, and it only raised that particular aspect of this dispute the night before this submission. | |

| | Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Brown will supplement his Response to this Request as discovery proceeds.

**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt responds that the disclosures outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects, and he could exercise such control by enabling private browsing mode, are responsive to this Request. Further, the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) is responsive to this Request. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to meet and confer with Google to determine whether Google wishes for Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Byatt will supplement his Response to this Request as discovery proceeds.

**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo responds that the disclosures outlined in paragraphs 2 and 42 of the First | previously requested. The Parties are at impasse. | Plaintiffs' responses fairly reflect their efforts to search for and identify any further responsive documents. Plaintiffs have not located or identified any further responsive documents and have informed Google. | |

| | Amended Complaint, which made clear that he was in "control" of what information Google collects, and he could exercise such control by enabling private browsing mode, are responsive to this Request. Further, the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) is responsive to this Request. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to meet and confer with Google to determine whether Google wishes for Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Castillo will supplement his Response to this Request as discovery proceeds.<br><br>**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis responds that the disclosures outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects, and he could exercise such control by enabling private browsing mode, are responsive to this Request. Further, the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) is responsive to this Request. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to | | | |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | meet and confer with Google to determine whether Google wishes for Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Davis will supplement his Response to this Request as discovery proceeds. | | | |
| **RFP No. 3:** All DOCUMENTS and COMMUNICATIONS RELATED TO browsing the Internet while in a private browsing mode. | Notwithstanding and subject to these objections, Plaintiff Brown responds that the disclosures outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects, and he could exercise such control by enabling private browsing mode, are responsive to this Request. Further, the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) is responsive to this Request. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to meet and confer with Google to determine whether Google wishes for Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Brown will supplement his Response to this Request as discovery proceeds. | Google asks that Plaintiffs run search terms across the full forensic images they have collected based on the additional context provided in Google's February 4, 2021 letter to Plaintiffs regarding what it seeks with this request. Plaintiffs have indicated that there are no responsive documents but have refused to identify the repositories searched and search terms used, as Google previously requested. The Parties are at impasse. | The parties discussed this request during a meet and confer on April 2, and Google confirmed this dispute was no longer at issue based on Plaintiffs' written correspondences. Google never made a request or suggested search terms for Plaintiffs' devices, and only raised that particular aspect of this dispute the night before this submission. Plaintiffs' responses fairly reflect their efforts to search for and identify any further responsive documents. Plaintiffs have not located or identified any further responsive documents and have informed Google. |

| | | | | |
|---|---|---|---|---|
| **RFP No. 6:** All disclosures, representations, or statements by GOOGLE related to collection of DATA AT ISSUE YOU reviewed since June 1, 2016. | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice, to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures, but he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) each time he began a private browsing mode session in Chrome. He likewise does not recall whether he reviewed any other disclosures, representations, or statements included in this request, in part because, as described, he is not certain which specific disclosures, representations, or statements they refer to. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to meet and confer with Google to determine whether Google wishes for | Plaintiffs' allegations arise from Google's alleged conduct of collecting browser activity despite alleged representations by Google that they would not do so. Google has a right to know which of its alleged representations Plaintiffs related to the data at issue. Given Plaintiffs' identical, self-serving responses, Google requests that Plaintiffs identify whether their responses are meant to assert that (1) the only responsive documents they reviewed are the documents/versions identified in the FAC, and (2) whether all Plaintiffs reviewed the exact same documents/versions? In lieu of a proper response, Plaintiffs claim Google should identify specific alleged representations and allow Plaintiffs to then confirm whether they were reviewed, but this is an attempt to shift Plaintiffs' burden of undertaking reasonable efforts to respond to the | The parties discussed this request during a meet and confer on April 2, and Plaintiffs do not believe it was discussed to an impasse.<br><br>As their responses state, Plaintiffs reference the disclosures they recall but do not recall when these were reviewed, or what other disclosures were reviewed.<br><br>Due to the voluminous documents Google has produced, Plaintiffs offered that if Google identified specific documents for Plaintiffs' review, Plaintiffs would meet and confer with Google to discuss. That offer has been rebuked.<br><br>Plaintiffs believe this request is irrelevant, and since Google has admitted to the surreptitious collection of private browsing information, any responsive materials would already be in Google's possession, custody, or control. | |

| | | | |
|---|---|---|---|
| | Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Brown will supplement his Response to this Request as discovery proceeds.<br><br>**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice, to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures, but he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) each time he began a private browsing mode session in Chrome. He likewise does not recall whether he reviewed any other disclosures, representations, or statements included in this request, in part because as described he is not | request and the parties are at impasse. | | |

|  | certain which specific disclosures, representations, or statements they refer to. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to meet and confer with Google to determine whether Google wishes for Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Byatt will supplement his Response to this Request as discovery proceeds.<br><br>**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice, to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures but he |  |  |  |

| | reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) each time he began a private browsing mode session in Chrome. He likewise does not recall whether he reviewed any other disclosures, representations, or statements included in this request, in part because, as described, he is not certain which specific disclosures, representations, or statements they refer to. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to meet and confer with Google to determine whether Google wishes for Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Castillo will supplement his Response to this Request as discovery proceeds.<br><br>**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by | | | |

| | | | |
|---|---|---|---|
| | enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice, to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures, but he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) each time he began a private browsing mode session in Chrome. He likewise does not recall whether he reviewed any other disclosures, representations, or statements included in this request, in part because, as described, he is not certain which specific disclosures, representations, or statements they refer to. Google already produced many or all of these documents in response to Plaintiffs' First Requests for Production, and Plaintiff is willing to meet and confer with Google to determine whether Google wishes for Plaintiff to now re-produce those same documents. There are no additional non-privileged documents or communications responsive at this time. Plaintiff Davis will supplement his Response to this Request as discovery proceeds. | | |
| **RFP No. 7:** All disclosures, representations, or statements by any third-party website related to | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown states that he is not aware of any third-party websites disclosing that Google collects the DATA AT ISSUE while the user is in private browsing mode, including Incognito mode. | Plaintiffs' responses are not responsive to Google's request. The RFP is not limited to disclosures about the DATA AT ISSUE being collected by Google | Plaintiffs objected to this request as irrelevant and not proportional to the needs of this litigation insofar as the request seeks data shared while not in a private browsing |

| | | | | |
|---|---|---|---|---|
| collection of DATA AT ISSUE YOU reviewed since June 1, 2016. | **Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt states that he is not aware of any third-party websites disclosing that Google collects the DATA AT ISSUE while the user is in private browsing mode, including Incognito mode.<br><br>**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo states that he is not aware of any third-party websites disclosing that Google collects the DATA AT ISSUE while the user is in private browsing mode, including Incognito mode.<br><br>**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis states that he is not aware of any third-party websites disclosing that Google collects the DATA AT ISSUE while the user is in private browsing mode, including Incognito mode. | while the user is in private browsing mode; it simply seeks documents related to the collection of the DATA AT ISSUE, by any entity. Further, Plaintiffs suggest that the request is too broad and that Google should identify specific documents for Plaintiffs' review. But this is nonsensical because the request calls for representations by third-party websites *reviewed by Plaintiffs*, which is information Google does not have. In lieu of a production related to RFP No. 7, Google is willing to accept Plaintiffs' representation that they have not reviewed any third-party statements about the collection of the data at issue. | mode. Plaintiffs' compromise offer relates to their compromise offer with Google Interrogatory No. 4. Despite their objections, Plaintiffs agreed to provide information regarding websites they recall visiting during the class period but without committing to any "top 10" list. Google rejected that offer, and the night before this submission raised for the first time a concern that Plaintiffs would "cherry pick" websites that "lack robust or prominent disclosures."<br><br>Given that Google itself collects and has information regarding Plaintiffs' private browsing, which Google continues to withhold, this demand for a "top 10" list is pointless. | |
| **Google's Second Set of Discovery Requests** | | | | |
| **RFA No. 2:** Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU indicated to Google that YOU agreed to Google's | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google's representations that he was in "control" of what information Google collects and could | In response to Google's concerns, which include the fact that Plaintiffs' responses attempt to re-write the scope of the RFA by focusing on a highly selective and self- | After meeting and conferring, Plaintiffs agreed to amend their responses and will do so. | |

| then-current TERMS OF SERVICE. | exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.<br><br>**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google's representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google | serving reading of the Privacy Policy, Plaintiffs have agreed to amend their responses but have not done so yet. | Accordingly, this request is not ripe for the Court's consideration. | |

Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google's representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google's representations that he was in "control" of what information Google collects and could

| | | | | |
|---|---|---|---|---|
| | exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied. | | | |
| **RFA No. 3:** Admit that YOU reviewed the GOOGLE PRIVACY POLICY before you first used INCOGNITO MODE. | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First | In response to Google's concerns, which include nearly identical concerns to those for RFA No. 1 above, Plaintiffs have agreed to amend their responses but have not done so yet. | After meeting and conferring, Plaintiffs agreed to amend their responses and will do so. Accordingly, this request is not ripe for the Court's consideration. | |

| | Amended Complaint. Otherwise Denied. | | | |
| --- | --- | --- | --- | --- |
| | **Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied. | | | |
| | **Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands | | | |

| | this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied. **Davis:** Notwithstanding and subject to these objections, Plaintiff Davis admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied. | | | |
|---|---|---|---|---|
| **RFA No. 4:** Admit that YOU have never | Notwithstanding and subject to these objections, Plaintiff Brown admits that, | In response to Google's concerns, which include | After meeting and conferring, Plaintiffs | |

| | | | | |
|---|---|---|---|---|
| indicated to Google that YOU did not agree to the GOOGLE PRIVACY POLICY. | at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied. | nearly identical concerns to those for RFA No. 1 above, Plaintiffs have agreed to amend their responses but have not done so yet. | agreed to amend their responses and will do so.<br><br>Accordingly, this request is not ripe for the Court's consideration. | |
| **RFA No. 5:** Admit that the GOOGLE PRIVACY POLICY discloses that Google collects through its SERVICES the categories of Data that YOUR FAC alleges Google illegally "intercepted." *See, e.g.*, FAC ¶¶ 202-17. | Denied. | Plaintiffs offered an unqualified denial. But it is indisputable that the Privacy Policy discloses this information. *See, e.g.*, Dkt. 54-3 at 2-4 (listing "unique device identifiers," "Log information," "internet protocol address," "device event information," "referral URL," "cookies and similar technologies to identify your browser or device"). The request is not limited to any | Plaintiffs properly denied this request. As stated in the Court's ruling on Google's motion to dismiss, "Google Privacy Policy does not disclose Google's alleged data collection while Plaintiffs were in private browsing mode." Dkt. 113 at 15. Google seeks an admission that at a minimum risks confusing and misleading the jury, where Google's Privacy | |

| | | particular mode, such as private browsing mode. Google requested that Plaintiffs amend their answer to RFA No. 5 to admit that Google's collection of these categories of information is disclosed in the GOOGLE PRIVACY POLICY. Plaintiffs have refused to do so. The parties are likely at impasse. | Policy clearly does not disclose the data collection at issue. Further, Google's request to compel a different response is procedurally improper. *See, e.g., Salyer v. Salyer Am. Fresh Foods*, No. C 05-3562 JWRS, 2006 WL 3050850, at *2 (N.D. Cal. Oct. 23, 2006) (proper procedure with denials is not to seek to compel revised responses but to instead later seek reasonable expenses). | |
| --- | --- | --- | --- | --- |
| **RFA No. 6:** Admit that each GOOGLE PRIVACY POLICY YOU reviewed disclosed that Google collects information about users' visits to websites that use Google's services. | Denied. | Plaintiffs offered an unqualified denial. But it is indisputable that the Privacy Policy discloses, *inter alia*, that "We collect information about the services that you use and how you use them, like when you … visit a website that uses our advertising services, or view and interact with our ads and content." Dkt. 54-3, at 2. The request is not limited to any particular mode, such as private browsing mode. Google requested that Plaintiffs amend | Plaintiffs properly denied this request. As stated in the Court's ruling on Google's motion to dismiss, "Google Privacy Policy does not disclose Google's alleged data collection while Plaintiffs were in private browsing mode." Dkt. 113 at 15. Google seeks an admission that at a minimum risks confusing and misleading the jury, where Google's Privacy Policy clearly does not disclose the data | |

| | | their answer to RFA No. 6 to admit that the Privacy Policy discloses this information. Plaintiffs refused to do so. The parties are likely at impasse. | collection at issue. Further, Google's request to compel a different response is procedurally improper. *See, e.g., Salyer v. Salyer Am. Fresh Foods*, No. C 05-3562 JWRS, 2006 WL 3050850, at *2 (N.D. Cal. Oct. 23, 2006) (proper procedure with denials is not to seek to compel revised responses but to instead later seek reasonable expenses). | |
| **RFA No. 7:** Admit that the GOOGLE PRIVACY POLICY does not represent that using private browsing mode will prevent Google from receiving information through its SERVICES. | Denied. | Plaintiffs cannot point to a statement in the Google Privacy Policy that represents that using private browsing mode will prevent Google from receiving information through its services. Yet they provided an unqualified denial. Google requests that, to the extent appropriate, Plaintiffs qualify their denial based on the substance of the request. *See* § 2260 Responses to Requests—Denials, 8B Fed. Prac. & Proc. Civ. § 2260 (3d ed.). ("A denial of a matter on which an admission has been | Plaintiffs properly denied this request. As stated in the Court's ruling on Google's motion to dismiss, "Google Privacy Policy does not disclose Google's alleged data collection while Plaintiffs were in private browsing mode." Dkt. 113 at 15. Google seeks an admission that at a minimum risks confusing and misleading the jury, where Google's Privacy Policy clearly does not disclose the data collection at issue. Further, Google's | |

| | | requested must fairly meet the substance of the requested admission. If good faith requires that a party qualify its answer or deny only a part of the requested matter, it must specify so much of the request as is true and deny only the remainder."). The parties are likely at impasse. | request to compel a different response is procedurally improper. *See, e.g., Salyer v. Salyer Am. Fresh Foods*, No. C 05-3562 JWRS, 2006 WL 3050850, at *2 (N.D. Cal. Oct. 23, 2006) (proper procedure with denials is not to seek to compel revised responses but to instead later seek reasonable expenses). | |
|---|---|---|---|---|
| **RFA No. 11:** Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be visible to YOUR internet service provider. | Denied. | Plaintiffs offered an unqualified denial. But the "Incognito Screen" discussed in the FAC which "appears whenever a user enters Incognito mode" clearly states "Your activity might still be visible to … Your internet service provider." FAC ¶ 52. Moreover, in response to RFA 14, Plaintiffs admit that "when [he/she] visited websites using Chrome in Incognito mode, [his/her] activity might still be visible to [his/her] internet service provider." Google requested that Plaintiffs amend their answers to RFA No. 11 in light of these contradictions. | Plaintiffs properly denied this request. Google defined "communications" as the internet communications that Plaintiffs alleged Google intercepted. Plaintiffs allege that interception was never disclosed. Google creatively seeks an admission that Plaintiffs consented to Google's interception, which Plaintiffs fundamentally deny. There is no conflict between Plaintiffs' responses to this request and request 14. Further, Google's request to compel a different response is procedurally improper. *See, e.g., Salyer v. Salyer* | |

| | | Plaintiffs refused to do so. The parties are likely at impasse. | *Am. Fresh Foods*, No. C 05-3562 JWRS, 2006 WL 3050850, at *2 (N.D. Cal. Oct. 23, 2006) (proper procedure with denials is not to seek to compel revised responses but to instead later seek reasonable expenses). As a compromise, Plaintiffs are willing to admit that the Incognito Splash Screen includes certain statements. | |
| **RFA No. 12:** Admit that, during the CLASS PERIOD, you understood the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege YOU reviewed did not mean that your internet browsing activity would be completely private from everyone. | Plaintiff Brown admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites, his employer or school, and/or his internet service provider. Plaintiff Brown did not, however, consent to Google's interception of that activity. Otherwise denied. | Plaintiffs' responses are deficient because they fail to respond to the substance of the Request, which asks them to admit that, during the class period, they ***understood*** their activity in private browsing mode would not be completely private from everyone. Plaintiffs' response admits that their private browsing activity was not, in fact, private from everyone, but ignores the Request's focus on whether Plaintiffs ***understood*** that fact during the class period— which they obviously did given they have admitted | Plaintiffs fairly responded to this request. Plaintiffs' response tracks Google' Incognito Splash Screen in terms of how activity "might" be visible to three identified categories, none of which were Google. In the motion to dismiss ruling, Judge Koh wrote that "the Incognito Splash Screen omits Google from the list of entities that can view a user's activity in private browsing mode …." Dkt. 113 at 17. Adding "understood" to this response could be misleading given Google's failure to | |

| | | | | |
|---|---|---|---|---|
| | | the reviewed the Incognito Notice which discloses this fact. Google requested Plaintiffs amend their response to meet the substance of the requested admission. Plaintiffs refused to do so. The parties are likely at impasse. | disclose the data collection at issue, and Plaintiffs responses are proper. As a compromise, Plaintiffs are willing to admit that the Incognito Splash Screen includes certain statements. | |
| **RFA No. 14:** Admit that, when YOU browsed the web in Incognito mode, YOU understood that YOUR activity might still be visible to the websites YOU visited and YOUR internet service provider. | Plaintiff Brown admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites. Plaintiff Brown further admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to his internet service provider. Plaintiff Brown did not, however, consent to Google's interception of that activity. Otherwise Denied. | Plaintiffs' responses are deficient because they fail to address whether Plaintiffs **_understood_** their activity might still be visible to the websites they visited and their internet service provider. Google requested Plaintiffs amend their response to meet the substance of the requested admission. Plaintiffs refused to do so. The parties are likely at impasse. | Plaintiffs fairly responded to this request. Plaintiff's response tracks Google' Incognito Splash Screen in terms of how activity "might" be visible to three identified categories, none of which were Google. In the motion to dismiss ruling, Judge Koh wrote that "the Incognito Splash Screen omits Google from the list of entities that can view a user's activity in private browsing mode ...." Dkt. 113 at 17. Adding "understood" to this response could be misleading given Google's failure to disclose the data collection at issue, and | |

| | | | Plaintiffs responses are proper.     As     a compromise,  Plaintiffs are willing to admit that the  Incognito  Splash Screen includes certain statements. | |
|---|---|---|---|---|
| **RFA No. 15:**   Admit that the INCOGNITO NOTICE   does   not represent that Incognito mode prevents Google from   collecting   the information   that   you allege Google illegally "intercepted." | Denied. | Plaintiffs     offered     an unqualified   denial.   But the "Incognito   Screen" discussed   in   the   FAC which              "appears whenever  a  user  enters Incognito            mode" contains                   no representation            that Incognito  mode  prevents Google  from  collecting the  information  at  issue. FAC    ¶    52.    Google requested        Plaintiffs amend  their  answer  to RFA No. 15 in light of this   indisputable   fact. Plaintiffs  refused  to  do so. The parties are likely at impasse. | Plaintiffs        properly denied  this  request.   In the  motion  to  dismiss ruling, Judge Koh wrote that      "the      Incognito Splash   Screen   omits Google  from  the  list  of entities  that  can  view  a user's  activity  in  private browsing     mode     …." Dkt.  113  at  17.  Google seeks  an  admission  that at   a   minimum   risks confusing              and misleading     the     jury. Further,         Google's request  to  compel  a different    response    is procedurally    improper. *See, e.g., Salyer v. Salyer Am.  Fresh  Foods*,  No.  C 05-3562   JWRS,   2006 WL 3050850, at *2 (N.D. Cal.   Oct.   23,   2006) (proper  procedure  with denials  is  not  to  seek  to compel            revised responses  but  to  instead later   seek   reasonable expenses). | |

| RFA No. 17: Admit that Google's alleged conduct has not affected YOUR alleged ability "to sell [YOUR] own personal data, via other websites such as Killi." *See* FAC ¶¶ 170, 175, 180, 185, 190. | Denied. | Plaintiffs offered an unqualified denial. This fact should be indisputable. Indeed, Plaintiffs elsewhere admit that they cannot recall ever attempting to sell their data. If Plaintiffs have a good faith basis for denying that Google's conduct has not affected their purported ability to sell their personal data via other websites, such as Killi, Google requests they provide it. Google requested that Plaintiffs confirm they will amend their answer to RFA No. 17 to admit that the statement is true. Plaintiffs refused to do so. The parties are likely at impasse. | Plaintiffs properly denied this request. Google's conduct as adversely affected Plaintiffs and Class Members in terms of their ability to sell their personal data, as Google has already collected, used, and profited from their private browsing data. Further, Google's request to compel a different response is procedurally improper. *See, e.g.*, *Salyer v. Salyer Am. Fresh Foods*, No. C 05-3562 JWRS, 2006 WL 3050850, at *2 (N.D. Cal. Oct. 23, 2006) (proper procedure with denials is not to seek to compel revised responses but to instead later seek reasonable expenses). | |
| **Interrogatory No. 7:** Describe with particularity each specific "Google representation" that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google | Google requested that Plaintiffs provide individualized and particularized responses to this Interrogatory, as opposed to boilerplate *verbatim* responses prepared by counsel. The notion that *each* Plaintiff (1) reviewed *only* the "representations outlined | Plaintiffs had similar understandings and experiences when engaging in private browsing mode—they believed they were browsing privately, but in fact Google was unlawfully intercepting and collecting data from those private browsing | |

| | | | | |
|---|---|---|---|---|
| communications when [YOU] were in 'private browsing mode,'" see FAC ¶¶ 3, 149, including by stating whether YOU in fact reviewed each representation and, if so, when YOU first reviewed each representation, and whether YOU in fact relied upon each representation in using private browsing mode. | representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall the exact dates he reviewed these disclosures for the first time or thereafter. He likewise does not recall whether he reviewed any other disclosures.<br><br>**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands | in paragraphs 2 and 42 of the First Amended Complaint" (i.e., no other portions of the Privacy Policy) and the Incognito Screen (which they did not even mention in their Original complaint); and (2) has identical recollections (or rather, lack of recollection) regarding reviewing the other documents identified in this Interrogatory and Plaintiffs' responses, simply is not credible, is deficient on its face, and deprives Google of the actual facts and circumstances concerning the basis for Plaintiff's understanding of how private browsing mode was intended to work. That information is highly material, particularly at the class certification stage.<br><br>Plaintiffs refused to amend their response. The parties are likely at impasse. | communications. Each of Plaintiffs' responses fairly reflect their experiences. Whether Plaintiffs may recall in detail each and every disclosure (aside from those outlined in the SAC) does not undercut Plaintiffs' claims. Notably, even though the high level of specificity Google demands is not warranted, in addition to the information Plaintiffs provided, Plaintiffs also provided specific information about how each time they began a private browsing mode session in Chrome, they reviewed the Incognito Splash Screen that appeared for each session. | |

this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall the exact dates he reviewed these disclosures for the first time or thereafter. He likewise does not recall whether he reviewed any other disclosures.

**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode.

| | He does not recall the exact dates he reviewed these disclosures for the first time or thereafter. He likewise does not recall whether he reviewed any other disclosures.<br><br>**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall the exact dates he reviewed these disclosures for the first time or thereafter. He likewise does not recall whether he reviewed any other disclosures. | | | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| **Interrogatory No. 9:** Describe with particularity YOUR understanding of the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" *see* FAC ¶ 3, including by stating the basis for YOUR understanding and stating whether YOU believed using private browsing would completely conceal YOUR internet browsing activity from everyone, or if not, identifying the persons or entities which YOU understood would still be able to view YOUR internet browsing activity when YOU were in private browsing mode. | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall whether he reviewed any other disclosures. He further responds that he understood that certain information "might" still be visible to the websites he visited, his employer or school if the browsing occurred on those networks or computers, and his internet service provider, but he never consented to Google's concurrent interception and secret transmission of any information while he was in private browsing mode. | Google requested that Plaintiffs provide individualized and particularized responses to this Interrogatory, as opposed to an identical, boilerplate response prepared by counsel. The response that *each* Plaintiff (1) reviewed *only* the "representations outlined in paragraphs 2 and 42 of the First Amended Complaint" (*i.e.*, no other portions of the Privacy Policy) and the Incognito Screen (which they did not even mention in their Original complaint); and (2) has identical recollections (or rather, lack of recollection) regarding reviewing the other documents identified in this Interrogatory, is not credible, is deficient on its face, and deprives Google of the actual facts and circumstances concerning the basis for Plaintiff's alleged understanding. That information is highly material, particularly at the class certification stage. | Plaintiffs properly responded to this interrogatory. Plaintiffs' responses are consistent with their allegations in the SAC. These responses reflect their uniform understanding of "private browsing" and "browse privately" based on Google's disclosures. Even though the high level of specificity Google demands is not warranted, in addition to the information Plaintiffs provided, Plaintiffs also provided specific information about how each time they began a private browsing mode session in Chrome, they reviewed the Incognito Splash Screen that appeared for each session. | |

| | | | |
|---|---|---|---|
| | **Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall whether he reviewed any other disclosures. He further responds that he understood that certain information "might" still be visible to the websites he visited, his employer or school if the browsing occurred on those networks or computers, and his internet service provider, but he never consented to Google's concurrent interception and secret transmission of any information while he was in private browsing mode. | Plaintiffs refused to amend their response. The parties are likely at impasse. | | |

| | | | | |
|---|---|---|---|---|
| | **Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall whether he reviewed any other disclosures. He further responds that he understood that certain information "might" still be visible to the websites he visited, his employer or school if the browsing occurred on those networks or computers, and his internet service provider, but he never consented to Google's concurrent interception and secret transmission of any information while he was in private browsing mode. | | | |

| | **Davis:** Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall whether he reviewed any other disclosures. He further responds that he understood that certain information "might" still be visible to the websites he visited, his employer or school if the browsing occurred on those networks or computers, and his internet service provider, but he never consented to Google's concurrent interception and secret transmission of any information while he was in private browsing mode. | | | |

| | | | | |
|---|---|---|---|---|
| **Interrogatory No. 10:** Describe with particularity YOUR alleged awareness that YOU are able to sell YOUR personal data, via other websites such as Killi (https://killi.io/earn/), *see* FAC ¶¶ 170, 175, 180, 185, 190, including by describing when YOU first became aware of this alleged fact, how YOU became aware of this alleged fact, whether you contend that YOU could sell to Killi or other entities the categories of "personal data" that YOU allege Google misappropriated, whether you have ever attempted to sell such data (and if not, why not), and whether YOU contend that Google's alleged conduct has affected YOUR alleged ability to sell YOUR personal data via other websites such as Killi. | **Brown:** Notwithstanding and subject to these objections, Plaintiff Brown responds that he has been aware of the value of his personal data for years, and he chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Brown cannot recall specifically when he first learned of websites like Killi, but he knew about companies like Brave and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Brown's recollection, he cannot recall attempting to sell his personal data, but because Plaintiff Brown could sell his personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Brown was in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing compensation to Plaintiff Brown.<br><br>**Byatt:** Notwithstanding and subject to these objections, Plaintiff Byatt responds that he has been aware of the value of his personal data for years, and he chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Byatt cannot recall specifically when he first learned of websites like Killi, but he knew about companies like Brave | Google requested that Plaintiffs provide individualized and particularized responses to this Interrogatory, as opposed to an boilerplate *verbatim* responses prepared by counsel. The response that *each* Plaintiff has the exact same recollection is not credible. Moreover, Plaintiffs have not answered several of the questions posed. For example, Plaintiffs responses do not explain: (1) whether they contend that they could sell to Killi or other entities the categories of "personal data" that they allege Google misappropriated; (2) why they never chose to sell such data; or (3) whether they contend that Google's alleged conduct has affected their ability to sell their personal data via other websites such as Killi."<br><br>Plaintiffs refused to amend their response. The parties are likely at impasse. | Plaintiffs' responses to this interrogatory are sufficient. Their responses are consistent with Plaintiffs' allegations in the SAC. Contrary to Google's assertion, Plaintiffs answered the multiple, discrete questions in this interrogatory. Each Plaintiff responded that he or she "could sell" his or her personal data; and that he or she "cannot recall attempting to sell" his or her personal data. As Plaintiffs explained to Google during the meet and confer process, personal data has value, and as Plaintiffs' objections state, it is irrelevant whether any Plaintiff or Class Member *actually* sold their personal data, or *why* they decided not to sell their personal data. | |

and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Byatt's recollection, he cannot recall attempting to sell his personal data, but because Plaintiff Byatt could sell his personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Byatt was in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing compensation to Plaintiff Byatt.

**Castillo:** Notwithstanding and subject to these objections, Plaintiff Castillo responds that he has been aware of the value of his personal data for years, and he chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Castillo cannot recall specifically when he first learned of websites like Killi, but he knew about companies like Brave and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Castillo's recollection, he cannot recall attempting to sell his personal data, but because Plaintiff Castillo could sell his personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Castillo was in private browsing mode has inherent value, and Google

| | unlawfully collected that personal data without providing compensation to Plaintiff Castillo.<br><br>**Davis:** Notwithstanding and subject to these objections, Plaintiff Davis responds that he has been aware of the value of his personal data for years, and he chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Davis cannot recall specifically when he first learned of websites like Killi, but he knew about companies like Brave and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Davis' recollection, he cannot recall attempting to sell his personal data, but because Plaintiff Davis could sell his personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Davis was in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing compensation to Plaintiff Davis. | | | |

Respectfully,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

BOIES SCHILLER FLEXNER LLP

*/s/ Andrew H. Schapiro*

*/s/ Mark C. Mao*

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Sean Phillips Rodriguez (CA Bar No.
262437)
srodriguez@bsfllp.com
Beko Reblitz-Richardson (CA Bar No.
238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293 6858
Fax: (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Tel: (305) 539-8400
Fax: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor

1

2

Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736

3

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com

4

MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500

5

San Francisco, CA 94102
Tel: (415) 358-6913

6

*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ATTESTATION OF CONCURRENCE</u>**

I am the ECF user whose ID and password are being used to file this Joint Discovery

Statement. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified

above has concurred in the filing of this document.

Dated: April 23, 2021

By _____ */s/ Andrew H. Schapiro* _____
    Andrew H. Schapiro
    *Counsel on behalf of Google LLC*