QUINN EMANUEL URQUHART & SULLIVAN, LLP

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK<br><br>**GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS SIX AND SEVEN OF PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>The Honorable Lucy H. Koh<br>Courtroom 8 – 4th Floor<br>Date:  September 30, 2021<br>Time:  1:30 p.m.<br>Amended Complaint Filed: April 15, 2021 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that, on September 30, 2021 at 1:30 p.m. the undersigned will appear before the Honorable Lucy H. Koh of the United States District Court for the Northern District of California at the San Jose Courthouse, Courtroom 8, 4th Floor, 280 South 1st Street, San Jose, CA 95113, and will then and there present Defendant Google's Motion to Dismiss Counts Six and Seven of Plaintiffs' Second Amended Complaint ("Motion").

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the Declaration of Andrew H. Schapiro and exhibits attached thereto, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

## ISSUE PRESENTED

Whether Counts Six and Seven of the Second  Amended Complaint, ECF No. 136-1 ("SAC"), along with the documents referenced and incorporated therein and judicially noticeable documents, show that Plaintiffs fail to state a claim upon which relief can be granted, thus warranting dismissal of Counts Six and Seven under Rule 12(b)(6).

## RELIEF REQUESTED

Google requests that the Court dismiss Counts Six and Seven of the SAC without leave to amend.

DATED:  May 17, 2021

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By ___/s/ Andrew H. Schapiro___
Andrew Schapiro

Attorneys for Defendant, Google LLC

GOOGLE'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................................1

BACKGROUND....................................................................................................................2

ARGUMENT .........................................................................................................................4

I.      PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED ............4

    A.      Plaintiffs Do Not State A Claim For Breach Of The Incognito Screen's
        Language ......................................................................................................5

        1.      The Incognito Screen Is Not Part Of The Alleged Contract .........................5

        2.      The Incognito Screen Does Not Contain The Alleged Promises..................7

    B.      Plaintiffs Do Not State A Claim For Breach of the Privacy Policy Or The
        Documents Linked To The Privacy Policy ...............................................10

    C.      Plaintiffs Do Not State A Claim For Breach Of The Chrome Privacy Notice.........13

II.     PLAINTIFFS' UCL CLAIM SHOULD BE DISMISSED .......................................16

    A.      Plaintiffs Lack UCL Standing ..................................................................16

        1.      The Information Google Allegedly Received Is Not Plaintiffs'
            Property ......................................................................................................17

        2.      The Alleged Misuse or Misappropriation of Personal Information
            Does Not Satisfy The UCL's "Lost Money Or Property" Standing
            Requirement ...............................................................................................18

        3.      The Cases On Which The Court Relied In *Calhoun*  Are Inapposite .........20

    B.      Plaintiffs' UCL Claim Should Be Limited to Injunctive Relief Because
        They Fail to Allege Entitlement to Monetary Damages ...........................23

    C.      Plaintiffs Fail to Allege They Relied on Any Purported Misstatement or
        Omission....................................................................................................24

CONCLUSION .....................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Facebook, Inc.*,
  No. C 18-05982 WHA, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ..................................... 20

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................................. 24

*Archer v. United Rentals, Inc.*,
  195 Cal. App. 4th 807 (2011)............................................................................................... 18

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) ................................................................................. 24

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ....................................................................... 4

*Beecher v. Google  N. America Inc.*,
  2018 WL 4904914 (N.D. Cal. Oct. 9, 2018)........................................................................... 4

*Block v. eBay, Inc.*,
  747 F.3d 1135 (9th Cir. 2014) ..................................................................................... 6, 8, 15

*Brandwein v. Butler*,
  218 Cal. App. 4th 1485 (2013) ............................................................................................. 14

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*,
  971 F.2d 272 (9th Cir. 1992)................................................................................................. 14

*Calhoun v. Google*,
  2021 WL 1056532 (N.D. Cal. Mar. 17, 2021) ...................................... 1, 2, 10, 16, 20, 21, 23

*Claridge v. RockYou, Inc.*,
  785 F. Supp. 2d 855 (N.D. Cal. 2011) ................................................................................. 19

*Cottle v. Plaid, Inc.*,
  2021 WL 1721177 (N.D. Cal. Apr. 30, 2021) ........................................................... 16, 20, 21

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................................... 4

*Edwards v. Arthur Andersen LLP*,
  44 Cal. 4th 937 (2008).......................................................................................................... 15

*F.B.T. Prods., LLC v. Aftermath Recs.*,
  621 F.3d 958 (9th Cir. 2010)................................................................................................... 6

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011).................................................................................................. 20

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*,
  109 Cal. App. 4th 944 (2003)............................................................................................ 6, 8

GOOGLE'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................................................................ 22, 23

*Frances T. v. Vill. Green Owners Assn.*,
  42 Cal. 3d 490 (1986) ............................................................................................................ 7

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) .............................................................................. 18

*Great Minds v. Off. Depot, Inc.*,
  945 F.3d 1106 (9th Cir. 2019) ............................................................................................... 6

*Hart v. TWC Prod. & Tech. LLC*,
  2021 WL 1032354 (N.D. Cal. Mar. 17, 2021) ............................................................... 17, 18

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................. 1, 4, 6, 7, 22

*In re Facebook Privacy Litig.*,
  572 Fed. Appx. 494 (9th Cir. 2014) ............................................................................... 19, 20

*In re Facebook Privacy Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011),
  *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ............................................................................... 18

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................................... 5, 6, 7, 9, 11, 21

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................................... 9, 13, 21, 24

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................................. 24

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
  794 F. Supp. 2d 1067 (N.D. Cal. 2011) ............................................................................... 18

*In re Google Location History Litigation*,
  2021 WL 519380 (N.D. Cal. Jan. 25, 2021) ........................................................................ 12

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................... 19

*In re iPhone Application Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................................................................... 18

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,
  440 F. Supp. 3d 447 (D. Md. 2020) ..................................................................................... 21

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..................................................................... 22

*In re Zynga Privacy Litig.*,
  2011 WL 7479170 (N.D. Cal. June 15, 2011) ..................................................................... 19

*Iqbal v. Ziadeh,*
　　10 Cal. App. 5th 1 (2017) ........................................................................................... 8

*Korea Supply Co. v. Lockheed Martin Corp.,*
　　29 Cal. 4th 1134 (2003) .......................................................................................... 23

*Kremen v. Cohen,*
　　337 F.3d 1024 (9th Cir. 2003) ......................................................................... 17, 19

*Kwikset Corp. v. Superior Ct.,*
　　51 Cal. 4th 310 (2011) ............................................................................................ 21

*Madrid v. Perot Sys. Corp.,*
　　130 Cal. App. 4th 440 (2005) ........................................................................... 23, 24

*Miron v. Herbalife Int'l, Inc.,*
　　11 F. App'x 927 (9th Cir. 2001) ............................................................................... 7

*Murphy v. Allstate Ins. Co.,*
　　2020 WL 5095862 (E.D. Cal. Aug. 28, 2020) ......................................................... 4

*Pemberton v. Nationstar Mortg. LLC,*
　　331 F. Supp. 3d 1018 (S.D. Cal. 2018) .................................................................. 14

*Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman,*
　　65 Cal. App. 4th 1469 (1998) ................................................................................... 9

*Progressive West Ins. Co. v. Super. Ct.,*
　　135 Cal. App. 4th 263 (2005) ................................................................................... 4

*Sageser v. Stewart Title of Seattle, LLC,*
　　2010 WL 11682499 (W.D. Wash. Sept. 20, 2010) .................................................. 9

*Silvaco Data Sys. v. Intel Corp.,*
　　184 Cal. App. 4th 210 (2010) ................................................................................. 18

*SunPower Corp. v. SolarCity Corp.,*
　　2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ....................................................... 18

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.,*
　　83 F. Supp. 3d 855 (N.D. Cal. 2015) ....................................................................... 8

*Theme Promotions, Inc. v. News Am. Mktg. FSI,*
　　546 F.3d 991 (9th Cir. 2008) .................................................................................. 23

*Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n,*
　　903 F.3d 862 (9th Cir. 2018) .................................................................................. 14

*Wal-Noon Corp. v. Hill,*
　　45 Cal. App. 3d 605 (1975) .................................................................................. 8, 9

*Wesch v. Yodlee, Inc.,*
　　2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ....................................................... 18

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ........................................................................... 4

**Rules/Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................................ 19

Cal. Bus. & Prof. Code § 17204 ................................................................................... 1, 16, 20

Cal. Civ. Code § 654 ................................................................................................................. 17

Cal. Civ. Code § 1639 ................................................................................................................. 6

Cal. Civ. Code § 3444(a) ...................................................................................................... 22, 23

GOOGLE'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT

**INTRODUCTION**

On the heels of this Court's order in *Calhoun v. Google*, 2021 WL 1056532 (N.D. Cal. Mar. 17, 2021), in which the Court held that the *Calhoun* plaintiffs stated a breach of contract claim based on Google's statements in the Chrome Privacy Notice, Plaintiffs now add a new contract claim based on Google's alleged failure to disclose it receives data from private browsing users. But the *Brown* Plaintiffs are differently situated and their attempt fails. Nowhere in the documents that Plaintiffs claim comprise their contract[1] did Google make the promise it allegedly breached— namely, that "Google would not collect and use private browsing data." Second Amended Complaint ("SAC") ¶ 271.

"[A] plaintiff must, in actions involving breach of a written contract, allege the ***specific provisions*** in the contract creating the obligation the defendant is said to have breached." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) (Koh, J.) (citations omitted) (emphasis added). Plaintiffs have failed to do so.  Instead, they rely on inferences they allegedly drew from the fact that Google's various disclosures allegedly *do not mention* Google's receipt of data from private browsing users. But an allegedly omitted term cannot give rise to an affirmative contractual obligation to do—or not do—the thing omitted.

Plaintiffs also add a claim for violation of California's Unfair Competition Law ("UCL"). This claim fails because Plaintiffs' allegation that Google misappropriated certain information Plaintiffs exchanged with websites that use Google's Analytics and Ad Manager services does not satisfy the UCL's heightened standing requirement, which limits individual civil actions under the UCL to "person[s] who ha[ve] suffered injury in fact *and* ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). Google respectfully

---

[1]  Plaintiffs allege that their contract with Google consists of: (1) the Google Terms of Service; (2) the Google Chrome and Chrome OS Additional Terms of Service; (3) the Chrome Privacy Notice; (4) the Google Privacy Policy; (5) the "Search & Browse Privately" page linked to the Privacy Policy; and (6) the Incognito Screen (the screen displayed every time a user begins a new Incognito session). SAC ¶ 268. Under Plaintiffs' theory that documents linked to the Privacy Policy—such as the "Search & Browse privately" page—are "incorporated" into their contract, *see id.*, *all* documents linked to the Privacy Policy are incorporated.

1  contends that this Court's decision to the contrary in *Calhoun* was wrongly decided and deviates

2  from decisions by the Ninth Circuit and courts in this District both before and since *Calhoun*. The

3  claim should also be dismissed to the extent that it seeks monetary relief because the relief Plaintiffs

4  seek—disgorgement of Google's allegedly "unjust profits," SAC ¶ 284—is not available under the

5  UCL, as this Court recognized in *Calhoun*, and because Plaintiffs fail to adequately plead that they

6  relied on Google's alleged misrepresentations or omissions.

## BACKGROUND

8          The Court is familiar with the background to this dispute.  *See* Dkt. 113 (3/12/21 Order).  In

9  brief, Google's Chrome browser offers a private browsing mode—known as Incognito—that allows

10  users to conceal their browsing activity from "other people who use [their] device."  *See* SAC ¶ 52.

11  Google explains to Chrome users that Incognito mode allows users to "limit the information Chrome

12  stores on your system," such as "[b]asic browsing history information like URLs, cached page text,

13  or IP addresses of pages linked from the websites you visit." Ex. 22 (5/20/2020 Chrome Privacy

14  Notice), at 10. Incognito mode also prevents the user's browsing activity from being linked to their

15  device after they close their private browsing session by deleting new cookies from the browser at

16  the end of the session. *Id.* ("Sites may deposit new cookies on your system while you are in

17  [Incognito mode], but they'll only be stored and transmitted until you close the last incognito or

18  guest window."); *see also* Ex. 23 ("Search & browse privately" page) ("Cookies are deleted after

19  you close your private browsing window or tab."). Thus, for users who are logged out of their

20  Google accounts browsing in Incognito mode (like Plaintiffs and the putative class members, SAC

21  ¶ 192), information Google receives from third party websites using its services—such as Google

22  Analytics and Ad Manager—is not linked to users' devices after they close their private browsing

23  session. And, in Incognito mode, Google does not link the information to users (*i.e.*, to their Google

24  accounts, which may contain their name or other identifying information) unless they sign into their

25  Google Accounts. *See* Ex. 23 ("Important: If you sign in to your Google Account to use a web

26  service like Gmail, your searches and browsing activity might be saved to your account.").

27          Plaintiffs intend to represent classes of Android device owners and Google Account holders

28  "who accessed a non-Google website containing Google Analytics or Ad Manager … and who were

1   (a) in 'private browsing mode' in th[eir] device's browser, and (b) were not logged into their Google

2   account on th[eir] device's browser, whose communications, including identifying information and

3   online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016

4   through the present." *Id.* ¶ 192.

5          Plaintiffs allege they believed using Incognito/private browsing mode would prevent Google

6   from receiving the data Google receives to provide its Analytics and Ad Manager services to third-

7   party websites, such as "a referer header containing the URL information," "IP address,"

8   "[i]nformation identifying the browser software," "'User-ID' issued by the website," "Geolocation

9   of the user," and "[i]nformation contained in 'Google Cookies'" (collectively, the "Data"). *Id.*

10  ¶¶ 41, 63, 192. Plaintiffs' alleged belief is purportedly based on the Incognito screen, the Privacy

11  Policy, and other support pages that are linked to the Privacy Policy. *Id.* ¶¶ 44-59.

12         In support of their newly added breach of contract claim, Plaintiffs allege that "[t]he Privacy

13  Policy, the Incognito Screen, and the 'Search & Browse Privately' page … promise that users can

14  control Google's collection and use of their browsing data, including by enabling a private browsing

15  mode such as Incognito mode, and that Google would not collect and use private browsing data."

16  SAC ¶ 271. Plaintiffs, however, do not point to any specific provisions in these documents that

17  contain a promise that "Google would not collect and use private browsing data."

18         Plaintiffs similarly allege that the Chrome Privacy Notice (to which they have not referred

19  in their prior pleadings and do not allege they reviewed) "promises Plaintiffs and Class members

20  that Google does not collect or use private browsing communications." *Id.* ¶ 269. But, again,

21  Plaintiffs do not identify a specific provision of the Chrome Privacy Notice that makes such a

22  promise. Plaintiffs note that the Chrome Privacy Notice "explain[s] that 'you can limit the

23  information Chrome stores on your system by using incognito mode' and that, within Incognito

24  mode, 'Chrome won't store certain information, such as: Basic browsing history information like

25  URLs, cached page text, or IP addresses of pages linked from the websites you visit [and] Snapshots

26  of pages that you visit." *Id.* Although Plaintiffs conclusorily allege that "Google breached these

27  promises," *id.* ¶ 270, they do not explain how. As shown below, *see infra* at 11-12 & n.5, the

28

1   statements are accurate—Incognito mode *does* limit the information that "*Chrome* stores *on your*

2   *system*," and Plaintiffs do not allege otherwise.

3       Plaintiffs also added a claim under California's UCL, alleging that they "have suffered

4   injury-in-fact, including the loss of money and/or property as a result of Google's unfair and/or

5   unlawful practices, to wit, the unauthorized disclosure and taking of their personal information

6   which has value." *Id.* ¶ 282. Plaintiffs also conclusorily allege that they "have suffered harm in the

7   form of diminution of the value of their private and personally identifiable data and content." *Id.*

8   Plaintiffs seek "restitution and disgorgement" of "Google's profits and revenues from their targeted-

9   advertising and improvements of Google's other products." *Id.* ¶ 284.

10   **ARGUMENT**

11   **I.**   **PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED**

12       This Court has previously explained that "a plaintiff must, in actions involving breach of a

13   written contract, 'allege the ***specific provisions*** in the contract creating the obligation the defendant

14   is said to have breached.'" *Anthem*, 162 F. Supp. 3d at 978 (quoting *Young v. Facebook, Inc.*, 790

15   F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (emphasis added)).[2]

16       Here, Plaintiffs fail to identify a "specific provision" in their alleged contract with Google

17   that makes the promise Google allegedly breached—*i.e.*, that "Google would not collect and use

18   private browsing data." SAC ¶¶ 269, 271. That is because Google did not make such a promise.

19   Plaintiffs' breach of contract claim should thus be dismissed.

20

21

22   [2] *See also Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) (plaintiff must
"identify the ***specific provision*** of the contract allegedly breached by the defendant") (emphasis

23   added) (citing *Progressive West Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 281 (2005)); *Beecher
v. Google N. America Inc.*, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9, 2018) ("Under governing

24   law, [the plaintiff] must point to ***specific contractual*** terms which were allegedly breached.")
(emphasis added); *Murphy v. Allstate Ins. Co.*, 2020 WL 5095862, at *2 (E.D. Cal. Aug. 28, 2020)

25   (dismissing breach of contract claim where plaintiff "fails to identify the ***specific provision*** of the
policy that the defendant breached") (emphasis added); *Becton, Dickinson & Co. v. Cytek

26   Biosciences Inc.*, 2020 WL 1877707, at *4 (N.D. Cal. Apr. 15, 2020) (granting motion to dismiss

27   breach of contract claim where the complaint failed to "identif[y] … the ***particular contractual
provision*** on which [plaintiff] relies for its assertion that [defendant's] use [of plaintiff's

28   information] is prohibited") (emphasis added).

1    A.    **Plaintiffs Do Not State A Claim For Breach Of The Incognito Screen's**

2    **Language**

3    Plaintiffs allege that Google breached a promise in the Incognito screen that "Google would

4    not collect and use private browsing data."[3] SAC ¶ 271. Their claim fails because the Incognito

5    screen: (1) is not part of the alleged contract; and (2) in any event does not contain the promise

6    alleged.

7    1.    **The Incognito Screen Is Not Part Of The Alleged Contract**

8    Plaintiffs allege that "Google's relationship with its users is governed by the Google Terms

9    of Service, the Google Chrome and Chrome OS Additional Terms of Service, and the Chrome

10   Privacy Notice." SAC ¶ 268. Plaintiffs contend that these documents "incorporate and/or should be

11   construed consistent with . . . the Incognito Screen," *id.*, but they are wrong.

12   *First*, "[t]o properly incorporate another document, the document . . . [must at least] guide[]

13   the reader to the incorporated document" by specifically referencing it. *See In re Facebook, Inc.*

14   *Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v.*

15   *Davis*, 2021 WL 1072289 (U.S. Mar. 22, 2021) (internal quotation omitted). Neither the Google

16   Terms of Service, the Google Chrome Terms of Service, the Chrome OS Additional Terms of

17   Service, nor the Chrome Privacy Notice refer to or mention the Incognito Screen. The Incognito

18   Screen is therefore not incorporated in, or otherwise a part of, Plaintiffs' alleged contract with

19   Google.

20   The Ninth Circuit's decision in *Facebook Internet Tracking* is instructive. There the parties

21   agreed that Facebook's Statement of Rights and Responsibilities ("SRR") was a contract with users.

22   956 F.3d at 610. The Ninth Circuit explained, however, that the SRR did not contain the promise

23   that Facebook allegedly breached—*i.e.*, "an explicit promise not to track logged-out users." *Id.* For

24

25   [3] The class is not limited to users of Chrome's Incognito mode, but includes putative class members
     who used a private browsing mode in non-Chrome browsers as well. SAC ¶ 192. Users of a non-
26   Chrome private browsing mode self-evidently would not necessarily have seen the Incognito Screen,
     and even if they did, could not reasonably have understood it to be describing the effect of using a
27   non-Chrome private browsing mode. Therefore, the Incognito Screen cannot be relied on by any
     putative class member who did not use Chrome's Incognito mode.
28

GOOGLE'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT

1    that promise, the plaintiffs "rel[ied] on language from the Data Use Policy and the Help Center

2    pages." *Id.* The Ninth Circuit dismissed the breach of contract claim because the "SRR does not

3    reference a Data Use Policy, and thus, it does not guide the reader to the incorporated document on

4    which Plaintiffs rely. As such, as a matter of law, any promise not to track logged-out users therein

5    was not incorporated." *Id.*; *see also Anthem*, 162 F. Supp. 3d at 980 ("Plaintiffs cannot bring a breach

6    of contract claim … based on language from documents that might not even have been part of the

7    alleged contract.").

8        The same is true here. None of the documents that Plaintiffs contend comprise their contract

9    with Google mentions the Incognito Screen—thus that document is not incorporated into the alleged

10   contract.

11       *Second*, Plaintiffs' allegation that their contract with Google "should be construed consistent

12   with the . . . Incognito Screen" SAC ¶ 268, is incorrect. Under California law, "[t]he terms of a

13   contract must be construed in a manner that . . . is consistent *with the contract as a whole*." *Great*

14   *Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (emphasis added). Because the

15   Incognito Screen is not part of the contract, there is no basis to interpret the alleged contract

16   "consistent with" the Incognito Screen.

17       Moreover, "[w]hen a contract is reduced to writing, the intention of the parties is to be

18   ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. The SAC does not allege

19   that any contractual terms are ambiguous so that resort to parol evidence is required. *See F.B.T.*

20   *Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 963 (9th Cir. 2010) (Under California law, "[p]arol

21   evidence is properly admitted to construe a contract only when its language is ambiguous."). Even

22   if resort to parol evidence were permissible under the circumstances alleged, it may not be used to

23   insert new promises into the contract.[4] *See Founding Members of the Newport Beach Country Club*

24   _____

25   [4]  Plaintiffs do not allege that the Incognito Screen is a standalone contract. *See* SAC ¶ 268 (alleging
     that the contract "incorporates and/or should be construed consistent with … the Incognito Screen").
26   Nor could they. The Incognito Screen is "written in an informal, conversational style, indicating that
     the [document] is not [] a set of legally enforceable promises," and it lacks "explicit promissory
27   language" that "communicate[s] promises both by the user . . . and by [the defendant]," that is
     necessary to create an enforceable promise. *See Block v. eBay, Inc.*, 747 F.3d 1135, 1139 (9th Cir.
28   2014); *see also Facebook Internet Tracking*, 956 F.3d at 610 (affirming dismissal of claim for breach

1   *v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955 (2003) (parol evidence permissible

2   solely to "prove a meaning to which the contract is reasonably susceptible").

3           The Incognito Screen is not a part of the alleged contract.

4   **2.**      **<u>The Incognito Screen Does Not Contain The Alleged Promises</u>**

5           Even if Plaintiffs could establish that the Incognito Screen is an enforceable contract, it does

6   not contain the alleged promises. Plaintiffs must "allege the ***specific provisions*** in the contract

7   creating the obligation the defendant is said to have breached." *Anthem*, 162 F. Supp. 3d at 978

8   (emphasis added). And the obligation sued upon must actually be "express[ed]" in the contract. *See*

9   *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) ("[I]n order for [a breach of

10  contract] action to be based on an instrument in writing, the writing must *express* the obligation sued

11  upon") (citations omitted) (emphasis added); *Facebook Internet Tracking*, 956 F.3d at 610

12  (affirming dismissal of breach of contract claim under Rule 12(b)(6) in part because Facebook's

13  SRR "does not contain an *explicit promise* not to track logged out users") (emphasis added); *Frances*

14  *T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 512-13 (1986) ("Plaintiff's allegation that defendants

15  breached that contract by failing to install additional lighting must fail because she does not allege

16  that any provision in any of the writings imposed such an obligation on defendant").

17          Plaintiffs allege that, in the Incognito Screen, Google promised that: (1) "Google would not

18  collect and use private browsing data"; and (2) "users can control *Google's* collection and use of

19  their browsing data … by enabling a private browsing mode such as Incognito mode." SAC ¶ 271

20  (emphasis added). The Incognito Screen plainly contains no such promises:

21

22

23

24

25

---

26  of Facebook's Data Use Policy, which plaintiffs argued "constitutes an additional agreement

27  separate from the SRR," because the "Privacy and Data Use Policies do not outline shared
    commitments to which users must abide" thereby creating the "exchange for a promise" that is

28  necessary to form a contract).



SAC ¶ 52.

Plaintiffs argue that, upon reading the Incognito Screen, they "reasonably expected that Google would not collect their data while in Incognito mode," and "reasonably understood 'You've gone incognito' and 'Now you can browse privately' to mean they could browse privately, without Google's continued tracking and data collection." *See id.* ¶¶ 51-59. But even if credited, Plaintiffs' allegations still fail to state a contract claim because: "It is not the parties' subjective intent that matters, but rather their objective intent, as evidenced by the words of the contract." *Block*, 747 F.3d at 1138 (citations omitted); *see also Newport Beach Country Club*, 109 Cal. App. 4th at 955-56 ("When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible…. The parties' undisclosed intent or understanding is irrelevant to contract interpretation."); *Iqbal v. Ziadeh*, 10 Cal. App. 5th 1, 8, 12 (2017) (rejecting evidence that attorney who drafted the contract intended term to have certain meaning because "[t]here is no evidence counsel expressed this intention to anyone" and "[c]ounsel's undisclosed, subjective intent is irrelevant to interpreting the release's language objectively").

Moreover, to the extent Plaintiffs argue that certain promises were *implied*, that would contradict their allegation that the alleged contract was reduced to writing. Plaintiffs "cannot prevail on claims for breaching an express and implied contract for the same subject matter." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 873 (N.D. Cal. 2015) (citing *Wal-*

*Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975)). This is because "where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled." *Wal-Noon*, 45 Cal. App. 3d at 613. Simply put, Plaintiffs may not turn their unilateral understanding of what it means to use "Incognito" or to "browse privately" into express contractual promises by Google not to receive certain data when users are in private browsing mode.

Plaintiffs' allegation that "Google *could have* disclosed on this Incognito Screen that Google would track users and collect their data while they were browsing privately, but Google did not do that" (SAC ¶ 53) reinforces the point. Plaintiffs' theory is that the Incognito Screen *does not disclose* Google is among the entities that may receive private browsing data. But the alleged failure to disclose a practice cannot give rise to contract liability where, as here, the contract does not specifically promise that the defendant will not engage in the practice. *See, e.g.*, *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019) ("[S]imple failure to disclose a practice doesn't constitute a breach of contract"); *Sageser v. Stewart Title of Seattle, LLC*, 2010 WL 11682499, at *3 (W.D. Wash. Sept. 20, 2010) (dismissing breach of contract claims based on defendant's "alleged failure to disclose"); *Facebook Internet Tracking*, 956 F.3d at 610 (affirming dismissal of breach of contract claim where the alleged contract lacked "an *explicit promise* not to track logged-out users" (emphasis added)); *Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1478 (1998) (court may not "insert language which one party now wishes were there").[5]

_____

[5] Nor do statements on the Incognito Screen that, in Incognito mode, "*Chrome* won't save" certain information, such as "browsing history" and "cookies and site data" support Plaintiff's contract claim. *See* SAC ¶¶ 52, 54 (emphasis added). *First*, Plaintiffs do not allege that the statement is promissory or that Google acted contrary to the statement. *See, e.g.*, SAC ¶ 271 (identifying the two alleged promises in the Incognito Screen that Google allegedly breached and not mentioning the "Chrome won't save" language). *Second*, the statement is accurate: When a user closes her Incognito session, browsing history, and cookies and site data, are deleted from the user's Chrome browser so that "other people who use this device won't see your activity." *Id.* ¶ 52; *see also* Exs. 23 ("[c]ookies are deleted after you close your private browsing window or tab"), 24 ("[w]hen you browse privately, other people who use the device won't see your history"). Plaintiffs do not allege

Plaintiffs' breach of contract claim based on the Incognito Screen should be dismissed.

**B.** **Plaintiffs Do Not State A Claim For Breach of the Privacy Policy Or The Documents Linked To The Privacy Policy**

Plaintiffs similarly allege that Google breached the Privacy Policy and documents linked to the Privacy Policy—such as the "Search & browse privately" page—in which Plaintiffs claim Google promised that: (1) "Google would not collect and use private browsing data"; and (2) "users can control Google's collection and use of their browsing data, including by enabling a private browsing mode such as Incognito mode." SAC ¶ 271. These arguments also fail.

*First*, the Court held in *Calhoun* that, because Google amended its Terms of Service on March 31, 2020 to state that the Privacy Policy is "not part of these terms," Google could not rely on the Privacy Policy vis-a-vis the *Calhoun* Plaintiffs—notwithstanding the fact that *all* of them signed up for their Google accounts and consented to Google's Terms of Service (which incorporated the Privacy Policy) *before* March 31, 2020. *See Calhoun*, 2021 WL 1056532, at *8. Under that reasoning, the *Brown* Plaintiffs should not be permitted to state a contract claim based on the Privacy Policy after March 31, 2020. This is particularly true here, where Plaintiffs do not allege that they agreed to be bound by the Privacy Policy, and in their discovery responses, have *denied* that they consented to the Privacy Policy.[6]

*Second*, Google's alleged promises in the Privacy Policy and the "Search & browse privately" page that "Google would not collect and use private browsing data" appear nowhere in those documents. SAC ¶ 271. Indeed, the Court held that Plaintiffs did not expressly consent to Google's receipt of data while in private browsing mode in part because, in the Court's view,

---

otherwise. To the extent Plaintiffs point to the Court's statement in its prior Order that, upon viewing the Incognito Screen, "a reasonable user might associate Chrome with Google because Chrome is Google's browser," ECF No. 113, at 18, that argument fails in the context of a breach of contract analysis because the alleged contract separately defines "Chrome" and "Google" and interpreting these terms as being synonymous would violate fundamental rules of contract interpretation, as explained further below. *See infra* at 14 & n.10.

[6] For example, in response to Google's Request for Admission No. 1, which asked Plaintiffs to "Admit that, when YOU signed up for YOUR Google Account, You reviewed and consented to the Google PRIVACY POLICY," Plaintiffs denied that they consented to the Privacy Policy.

10

Google's Privacy Policy and documents linked to the Privacy Policy contain a "general disclosure [that] *never mentions* private browsing." ECF No. 113, at 15-16 (emphasis added); *id.* at 16 (referring to "Google's *failure to mention* private browsing"); *id.* (stating that "Google's representations regarding private browsing … *omit* Google as an entity that can view users' activity while in private browsing mode"); *id.* at 18 ("this webpage [linked to the Privacy Policy] never references Google"). The Court "conclude[d] that Google *did not notify* users that Google engages in the alleged data collection while the user is in private browsing mode." *Id.*at 20. Further, Plaintiffs allege that "[t]here is nothing on [the Search & Browse Privately page] about Google Analytics, Google Ad Manager, any other Google data collection tool...." SAC ¶ 48. The Court's prior holdings, and Plaintiffs' allegations, that Google's receipt of data from users in private browsing mode is "never mention[ed]" in Google's disclosures precludes Plaintiffs' new allegations that this topic is affirmatively addressed in those documents. *See Facebook Internet Tracking*, 956 F.3d at 610 (affirming dismissal of breach of contract claim because the alleged contract "does not contain an *explicit promise* not to track logged-out users").

*Third*, Plaintiffs' allegation that Google breached promises in the Privacy Policy and "Search & Browse Privately" page that "users can control Google's collection and use of their browsing data, including by enabling a private browsing mode such as Incognito mode," SAC ¶ 271, is too generalized to support their breach of contract claim.  Plaintiffs cite the Privacy Policy's statement that: "[A]cross our services, you can adjust your privacy settings to control what we collect and how your information is used." *Id.* ¶¶ 42, 44, 75. But this general statement is not specific to private browsing—it refers to several privacy settings across Google's services. Moreover, the statement is accurate—Google *does* provide privacy settings that offer users control.

For example, the current Privacy Policy explains numerous ways that users can "control the information Google collects whether or not you're signed in to a Google Account," including:

> Browser settings: For example, you can configure your browser to indicate when Google has set a cookie in your browser. You can also configure your browser to block all cookies from a specific domain or all domains…

> Device-level settings: Your device may have controls that determine what information we collect. For example, you can modify location settings on your Android device.

1   Ex. 16, at 10; *see also* Ex. 12 (3/31/2020 Privacy Policy), at 10-11 (same). The Privacy Policy and

2   documents linked therein contain numerous, additional examples of the privacy settings through

3   which Google provides users "control." *See id.* Accordingly, Plaintiffs cannot establish Google

4   acted contrary to its general statements about "control."

5          Another court in this district recently came to the same conclusion. In *In re Google Location*

6   *History Litigation*, the court held that the Privacy Policy's general statement that "users 'can adjust

7   [their] privacy settings to control what [Google] collect[s] and how [their] information is used'" was

8   insufficient to state a claim for breach of contract because it "does not actually bind Google to offer

9   any particular privacy settings, but rather, merely explains to users where they can go to adjust their

10  settings." 2021 WL 519380, at *9 (N.D. Cal. Jan. 25, 2021) (internal citation omitted). The court

11  went on to explain: "Plaintiffs do not allege that they had no control whatsoever over their privacy

12  settings, rather, they allege that they were misled about the effect of the Location History setting

13  specifically." *Id.* Plaintiffs' reliance on the same general statement fails for the same reason.

14         Plaintiffs also fail to plausibly allege that the "Search & browse privately" page supports

15  their claim. That page, too, states that users have "control" in private browsing mode and specifically

16  explains what such "control" entails—choosing to browse privately allows the user "to search the

17  web *without saving your search activity to your account*." Ex. 23 (emphasis added). It goes on to

18  explain that by choosing to browse privately the user controls the retention of cookies created during

19  that session: "[y]ou might see search results and suggestions based on your location or other searches

20  you've done *during* your current [private] browsing session," but "[c]ookies are deleted *after* you

21  close your private browsing tab." *Id.* (emphasis added). Plaintiffs allege neither that these statements

22  are untrue, nor that private browsing does not perform the described functions. Nor can they credibly

23  argue that private browsing does not provide users a measure of "control."

24         Moreover, the Search & browse privately page directly links to a more specific Help Center

25  article entitled "How private browsing works in Chrome" which, under Plaintiffs' incorporation-

26  by-reference theory (SAC ¶ 268), is also a part of their contract with Google. That page further

27  explains that "[c]ookies and site data are remembered while you're browsing, but deleted when you

28  exit Incognito mode." Ex. 24 at 1. And it explains that although "Incognito mode stops Chrome

12

from saving your browsing activity *to your local history*," "[y]our activity … might still be visible to: []Websites you visit, including the ads and resources used on those sites." *Id.* (emphasis added). It goes on to explain that, in Incognito mode, "[a] *web service*, website, search engine, or provider may be able to see: []Your IP address… [and] Your activity when you use a *web service*."[7] *Id.* (emphasis added). Simply stated, the page further clarifies how Incognito mode provides "control," and makes clear that such "control" is not absolute. Nowhere do these pages promise that "control" means Google will not receive any data from private browsing users.

Plaintiffs' claim based on breach of the Privacy Policy and documents linked therein should be dismissed.

**C.**        **Plaintiffs Do Not State A Claim For Breach Of The Chrome Privacy Notice**

Plaintiffs cite the Chrome Privacy Notice in support of their new contract claim. SAC ¶¶ 268-69. Yet, they do not allege that they reviewed it. Regardless, Plaintiffs allege that Google breached the following statements in the Chrome Privacy Notice:

> You can limit the information *Chrome* stores *on your system* by using incognito mode or guest mode. In these modes, *Chrome* won't store certain information such as: []Basic browsing history information like URLs, cached page text, or IP addresses of pages linked from the websites you visit [and] Snapshots of pages that you visit….

Ex. 22 at 10 (emphasis added); SAC ¶ 269.

Plaintiffs conclusorily allege that "Google breached these promises," SAC ¶ 270, but do not explain how. Incognito is a browser mode in Chrome that does "limit the information *Chrome stores on your system*." Ex. 22 at 10 (emphasis added).  In the very next paragraph, the Chrome Privacy Notice explains: "Chrome won't share existing cookies with sites you visit in incognito or guest mode. Sites may deposit new cookies on your system while you are in these modes, but they'll only

---

[7]  Plaintiffs do not allege that Google breached a promise in the Privacy Policy or the Search & Browse Privately page that users could browse the web "privately." *See* SAC ¶ 271. Nor could they in light of the foregoing disclosures, which make clear that private browsing is not *completely* private. *See Facebook Consumer Priv. User Profile*, 402 F. Supp. 3d 767 at 782 ("privacy" is not "an all-or-nothing proposition" and there can be "degrees and nuances to . . . expectations of privacy") (citation omitted). Thus, the mere fact that Google referred to "private" browsing is insufficient to establish that Google promised that it would not receive information through Ad Manager or Analytics from users in private browsing/Incognito mode.

be stored and transmitted until you close the last incognito or guest window." *Id.* Plaintiffs neither dispute that this is how Incognito mode works, nor plausibly allege that Incognito mode does *not* "limit the information Chrome stores on your system."

Rather, Plaintiffs allege that *Google* improperly received information from websites using Google's Ad Manager and Google Analytics services while users were in a private browsing mode. *See* SAC ¶ 192. The Chrome Privacy Notice plainly does not promise that would not occur.[8] To the contrary, the alleged contract separately defines "Chrome" and "Google." *Compare*, Ex. 19 (3/31/2020 Google Terms of Service), at 2 ("When we speak of 'Google,' 'we,' 'us,' and 'our,' we mean Google LLC and its affiliates"),[9] *with* Ex. 22 (5/20/2020 Chrome Privacy Notice), at 1 ("In this Privacy Notice, we use the term 'Chrome' to refer to all the products in the Chrome family listed above."), *and id.* (stating that "this policy describes features that are specific to Chrome" and distinguishing Chrome from Google). That is because Chrome—while a Google product—is not Google. Interpreting "Google" and "Chrome" to be synonymous in the documents upon which Plaintiffs rely would, among other things, violate the rule that defined terms must be given their defined meaning. *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1038 (S.D. Cal. 2018) ("California contract law treats a defined contract term according to the definition set forth in the contract."). Relatedly, courts will not "interpret a contract so as to render one of its provisions meaningless." *Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 903 F.3d 862, 872 (9th Cir. 2018).[10]

---

[8]   Google acknowledges the Court's prior statement in considering Google's consent defense that, when reading the Incognito Screen, "a user might reasonably associate Chrome with Google because Chrome is Google's browser." ECF No. 113 at 18. However, for the reasons discussed in this section, that argument fails in the context of a breach of contract analysis.

[9]   "Affiliates" is separately defined to mean: "[A]n entity that belongs to the Google group of companies, which means Google LLC and its subsidiaries, including the following companies that provide consumer services in the EU: Google Ireland Limited, Google Commerce Ltd. and Google Dialer, Inc." *See, e.g.*, Ex. 16 at 20.

[10]   *See also Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 278-79 (9th Cir. 1992) (it is "a fundamental rule of contract interpretation" that terms should not be interpreted so as to "render other portions of the contract meaningless" and "[i]t is well settled that a contract should be interpreted so as to give meaning to each of its provisions"); *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013) ("[W]hen interpreting a contract, we strive to interpret the parties'

14

1    For example, the Chrome Privacy Notice states: "You can stop *Chrome* from accepting

2 cookies *from Google* or other sites. Learn more." Ex. 22 at 3. It also states that "*Chrome* periodically

3 sends information *to Google* to check for updates, get connectivity status, validate the current time,

4 and estimate the number of active users." *Id.* at 4. Interpreting "Chrome" to be synonymous with

5 "Google" here would render these and numerous other provisions nonsensical or meaningless.

6    Even more, the documents that Plaintiffs claim comprise their contract differentiate between

7 information saved "to your device" and information saved in other locations, *see* Ex. 23 ("Search &

8 browse privately") (stating that "Browsing in private usually means… [t]he searches you do or sites

9 you visit won't be saved *to your device*… " but "Important: if you sign in to your Google Account

10 [while in private browsing] … your searches and browsing activity might be saved *to your account*")

11 (emphasis added); *see also* Ex. 24 at 1 ("How private browsing works in Chrome") ("Incognito

12 mode stops Chrome from saving your browsing activity *to your local history*.") (emphasis added).

13    Plaintiffs do not allege that they ever reviewed the Notice and thus they do not and cannot

14 claim to have confused these terms and concepts. However, even assuming Plaintiffs could plausibly

15 allege that they (1) conflated the Chrome browser with Google or (2) conflated the storage of

16 information locally on their browser with information stored in other locations within Google, it

17 cannot not save their claim. Plaintiffs may not conflate defined terms or concepts in their alleged

18 contract in a manner that violates fundamental principles of contract interpretation.

19                                    *        *        *        *        *

20    In sum, Plaintiffs' alleged contract with Google does not contain the promise that Google

21 allegedly breached—*i.e.*, that "Google would not collect and use private browsing data." Plaintiffs'

22 reliance on Google's statements about users' "control" over their data fails because the statements

---

24 agreement to give effect to all of a contract's terms, and to avoid interpretations that render any

25 portion superfluous"); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008) ("[W]hen courts construe an instrument, a judge is not to insert what has been omitted, or to omit what has

26 been inserted") (quotation omitted); *see also Block*, 747 F.3d at 1138-39 (rejecting an interpretation that would have placed eBay in routine breach as "an absurd outcome" and noting that "[i]f a

27 contract is to be a basis of liability for the [defendant]'s violation of [a rule] . . . it must be a contract

28 in which the [defendant] promises to abide by [that rule]" (quotation omitted)).

are too general and vague to support a breach of contract claim. And Plaintiffs' reliance on Google's statements that Incognito mode "limits the information *Chrome* stores *on your system*" fails because Plaintiffs do not and cannot plausibly allege that Incognito mode does *not* limit the information that Chrome stores on a user's system.

Accordingly, Plaintiffs' breach of contract claim should be dismissed.

## II.   PLAINTIFFS' UCL CLAIM SHOULD BE DISMISSED

Plaintiffs' UCL claim should be dismissed because they lack UCL standing.  The claim should also be dismissed to the extent Plaintiffs seek disgorgement of Google's profits because the California Supreme Court has made clear such relief is not available under the UCL.  Plaintiffs also fail to adequately allege reliance.

### A.   Plaintiffs Lack UCL Standing

Plaintiffs lack UCL standing because they have not plausibly alleged that they "lost money or property" as a result of Google's conduct. *See* Cal. Bus. & Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and *has lost money or property* as a result of the unfair competition." (emphasis added)). Plaintiffs do not allege that they paid any money to Google. Instead, they conclusorily and vaguely allege that they lost property in the form of "the unauthorized disclosure and taking of their personal information which has value as demonstrated by its use and sale by Google" and the "diminution of the value of their private and personally identifiable data and content." SAC ¶ 282.  But in decision after decision, the Ninth Circuit and courts in this District have held that such information is not personal property and its alleged misappropriation fails to satisfy the UCL's heightened standing requirement. *See infra* at 18-20 & n.11.

Google acknowledges that this Court held otherwise in *Calhoun*, 2021 WL 1056532, at *22. Google respectfully submits that that decision was incorrect, and the Court should reach a different outcome here. Indeed, since the Court's *Calhoun* decision, two additional district courts have concluded that the alleged misappropriation of data exchanged on the Internet does not satisfy the UCL's "lost money or property" standing requirement. *See Cottle v. Plaid, Inc.*, 2021 WL 1721177, at *14 & n.8 (N.D. Cal. Apr. 30, 2021) ("disagree[ing] with the holding in *Calhoun*" and holding

16

1   that Plaid's alleged misappropriation of the plaintiffs' personal banking information did not satisfy

2   the UCL's "lost money or property" standing requirement); *Hart v. TWC Prod. & Tech. LLC*, 2021

3   WL 1032354, at *7-8 (N.D. Cal. Mar. 17, 2021) (dismissing plaintiff's UCL claim for lack of

4   statutory standing because misappropriation of "private geolocation data" does not constitute "lost

5   money or property required to state an economic injury under the UCL").

### 1.   The Information Google Allegedly Received Is Not Plaintiffs' Property

7       The Ninth Circuit has held that whether an intangible property right exists turns on a three

8   part test: "First, there must be *an interest capable of precise definition*; second, *it must be capable*

9   *of exclusive possession or control*; and third, the putative owner must have established a legitimate

10  claim *to exclusivity*." *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (emphasis added)

11  (citation omitted); *see also* Cal Civ. Code § 654 ("The ownership of a thing is the right of one or

12  more persons to possess and use it *to the exclusion of others*. In this Code, the thing of which there

13  may be ownership is called property.") (emphasis added).

14      Plaintiffs allege that Google receives the following data when private browsing users visit

15  websites that have installed Google's Ad Manager and Analytics services: "a referer header

16  containing the URL information of what the user has been viewing and requesting from websites

17  online," "IP address," "[i]nformation identifying the browser software," "'User-ID' issued by the

18  website," "Geolocation of the user," and "[i]nformation contained in 'Google Cookies.'" SAC ¶ 63.

19  Plaintiffs do not allege that any of these categories of information is capable of exclusive possession

20  or control. That is for good reason—none of them is.

21      Information showing "what the user has been viewing and requesting from websites online"

22  is not capable of "exclusive possession or control" by the user. Indeed, the data reflecting this

23  activity exists only because the websites collect it (either themselves, or through service providers).

24  The information reflects activity on *their* websites. It cannot be "exclusively possessed or

25  controlled" by Plaintiffs.

26      The other categories of information are created by entities who assign the information to

27  users to provide services or perform certain functions. For example, users cannot be said to

28  "exclusively possess or control" their IP address—it is assigned to them by their internet service

provider, routinely exchanged every time a user accesses the Internet or visits a website, and can be changed at any time depending on their location or other factors. Nor can users legitimately claim to "exclusively possess or control" cookies that are placed on their browsers by websites or other entities.

Moreover, "[i]nformation is not property unless some 'positive law' makes it so." *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012) (Koh, J.) (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010)). No law makes the information at issue here Plaintiffs' personal property.

In short, because none of the personal information that Plaintiffs allege Google misappropriated is capable of "exclusive possession or control" by users, and no "positive law" makes the information Plaintiffs' property, the information is not Plaintiffs' property under California law.

        **2.**      **The Alleged Misuse or Misappropriation of Personal Information Does Not Satisfy The UCL's "Lost Money Or Property" Standing Requirement**

With few exceptions, state and federal courts in California have consistently held that "a plaintiff's 'personal information' does not constitute money or property under the UCL." *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (Koh, J.).[11] Indeed,

---

[11] *Accord Hart*, 2021 WL 1032354, at *7-8 (misappropriation of "private geolocation data" does not constitute "lost money or property required to state an economic injury under the UCL"); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (rejecting argument that plaintiffs suffered loss because "they would not have used Yodlee if they knew the truth of its practices . . . because Plaintiffs have not paid Yodlee any money and have not alleged that they paid PayPal any money for use of its service"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) ("[T]he sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes."); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ("A plaintiff's 'personal information' does not constitute property under the UCL."); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (dismissing UCL claim based on alleged "unlawful collection and recordation of [plaintiffs'] personal identification information" because "plaintiffs have failed to demonstrate how such privacy violation translates into a loss of money or property," which is "fatal" to a UCL claim); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1086 (N.D. Cal. 2011), *aff'd sub nom. Joffe v. Google, Inc.*, 729 F.3d 1262 (9th Cir. 2013),

personal information cannot be "'lost' in the sense understood under the UCL. . . . [P]laintiff's PII—e.g., his login and password information—did not cease to belong to him, or pass beyond his control." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011).  The same is true with respect to the information Plaintiffs allege Google misappropriated. They have not "lost" their IP addresses or browsing data, for example.

In *iPhone*, this Court correctly held that personal information similar to what Plaintiffs allege Google received—*e.g.*, "Plaintiffs' addresses and current whereabouts; the unique device identifier ('UDID') assigned to the iDevice; the user's gender, age, zip code and time zone; and app-specific information such as which functions Plaintiff performed on the app," 844 F. Supp. 2d 1040, 1050 (N.D. Cal. 2012)—did not constitute property because this "broad category of information" is not "an interest capable of precise definition" or "capable of exclusive possession or control." *Id.* at 1074-75 (citing *Kremen*, 337 F.3d at 1029). While the Court permitted an amended UCL claim to go forward that "articulate[d] a more traditional theory of a UCL violation" based on allegations that consumers "*overpaid* for their iDevices as a result of Apple's failure to disclose its practices," it "declined to recognize Plaintiffs' personal information as a type of 'currency' or 'a form of property,' that was taken from Plaintiffs as a result of Defendants' business practices." *Id.* at 1072 (emphasis added).

Similarly, in *Facebook Privacy Litigation*, where the plaintiffs alleged "that they were harmed both by [Facebook's] dissemination of their personal information and by losing the sales value of that information," the Ninth Circuit "affirm[ed] the district court's dismissal of the plaintiffs' UCL claim because plaintiffs failed to allege that they 'lost money *or property* as a result

---

*amended and superseded on reh'g*, 746 F.3d 920 (9th Cir. 2013), *and aff'd sub nom. Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013) ("interception of data packets that a plaintiff has sent over a wireless network are not lost property for purposes of determining Proposition 64 standing. Such an indefinite claim of lost property would circumvent the intent of voters, when passing the amendment, to increase the pleading requirements to state a claim for Section 17200 violation"); *In re Zynga Privacy Litig.*, 2011 WL 7479170, at *2 (N.D. Cal. June 15, 2011), *aff'd*, 750 F.3d 1098 (9th Cir. 2014) (allegation "that Defendant unlawfully shared their 'personally identifiable information' with third-party advertisers" failed under the UCL because "personal information does not constitute property for purposes of a UCL claim").

of the unfair competition.'" 572 F. App'x at 494 (citing *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011) (emphasis added)).[12]

Most recently, in *Cottle*, the court "disagree[d] with the holding in *Calhoun*" that alleged misappropriation of personal information is sufficient for UCL standing because *Calhoun* "rests on four cases that address Article III standing, which is different from UCL standing." 2021 WL 1721177, at *14 n.8. The court rejected the plaintiffs' argument that they "lost money or property" when Plaid allegedly misappropriated "consumer bank login information" and used the login information to collect "information available in the accounts to which it has access, including transactions, addresses, and contacts, as well as information about joint account holders, authorized users, and minor children's related accounts." *Id.* at *2.  The court explained that Plaintiffs' "theory of economic injury"—*i.e.*, "the loss of the inherent value of their personal data"—was insufficient to confer UCL standing:

> [T]he Ninth Circuit has rejected a similar theory in an unpublished decision. In *In re Facebook Privacy Litig.*, 572 Fed. Appx. 494, 494 (9th Cir. 2014), the court held that the loss of sales value of personal information disclosed by a defendant was sufficient "to show the element of damages" for breach of contract and fraud claims. At the same time, it affirmed the dismissal of the plaintiffs' UCL claim "because plaintiffs failed to allege that they 'lost money or property as a result of the unfair competition." *Id.* (citing Cal. Bus. & Prof. Code § 17204); *see also Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019) (noting that the Ninth Circuit rejected the theory that the "lost value of [the plaintiff's] personal information" establishes standing under the UCL in *In re Facebook Privacy Litigation* and denying leave to amend based on that theory).

*Id.* This reasoning applies equally here.

### 3.   <u>The Cases On Which The Court Relied In *Calhoun*  Are Inapposite</u>

The cases on which the Court relied in upholding the *Calhoun* Plaintiffs' UCL claim—with the exception of *Fraley* (discussed *infra*)—held that alleged violations of privacy rights in personal information are sufficient only to confer Article III standing, not UCL standing, which is

---

[12] The Ninth Circuit held that the same alleged harm *was* sufficient to satisfy the damages element of plaintiffs' breach of contract and fraud claims. *Facebook Priv. Litig.*, 572 F. App'x at 494.  This underscores that certain types of harm, including non-economic damages (e.g. "the dissemination of . . . personal information") and non-restitutionary disgorgement (e.g. lost "sales value of that information") do not meet the more exacting standard of "lost money or property" under the UCL.

1    "substantially narrower than federal standing under [A]rticle III." *Kwikset Corp. v. Superior Ct.*, 51

2    Cal. 4th 310, 324 (2011).

3          *Facebook Internet Tracking Litigation*, for example, did not involve a UCL claim.  The

4    Ninth Circuit held that state law claims that required the plaintiff to have incurred "damages" to

5    confer Article III standing could be satisfied where the plaintiffs may be entitled to "disgorgement

6    of profits resulting from unjust enrichment, *even where an individual has not suffered a*

7    *corresponding loss*." 956 F.3d at 599 (emphasis added). But the requirements under the UCL are

8    materially different—the UCL *does* require the plaintiff to have suffered a loss of money or

9    property. That unjust enrichment from alleged misappropriation of personal information does not

10   equate to "*lost* money or property" for purposes of UCL standing has been recognized by other

11   courts in this district. *See Facebook Consumer Priv. User Profile*, 402 F. Supp. 3d at 804 ("It's true,

12   as discussed in connection with the unjust enrichment claim, that Facebook may have gained money

13   through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs

14   lost money. Further, the plaintiffs here do not allege that they paid any premiums (or any money at

15   all) to Facebook to potentially give rise to standing under California law.").

16         In the other cases cited in *Calhoun*, where courts denied motions to dismiss UCL claims

17   predicated on alleged violations of privacy rights in personal information, the courts found that such

18   violations were sufficient to confer Article III standing, but UCL standing in each case was

19   predicated on the fact that the plaintiffs *paid* for goods and services and lost some or all of the value

20   of those payments as a result of the defendants' conduct. In *In re Marriott International, Inc.,*

21   *Customer Data Security Breach Litigation*, for example, the court noted that, for purposes of Article

22   III standing, there has been a "growing trend across courts . . . to recognize the lost property value

23   of [personal identifying] information." 440 F. Supp. 3d 447, 461 (D. Md. 2020). But when it came

24   to UCL standing, the court found that there was "lost money or property" because plaintiffs alleged

25   "they would not have stayed at a Marriott Property, purchased products or services at a Marriott

26   Property, and/or would have paid less." *Id.* at 492; *see also Cottle*, 2021 WL 1721177, *14

27   (explaining that *Marriott* is "readily distinguishable" because "it did not consider whether [loss of

28   property value in personal identifying information] constituted economic injury for purposes of the

1    UCL," but only whether that was "sufficient to establish injury-in-fact for purposes of constitutional

2    standing").

3        Similarly, in *Anthem*, this Court concluded that the plaintiffs alleged "lost money or

4    property" because "[e]ach California Plaintiff states that they *paid* money for health insurance

5    premiums, which were used to pay for services offered by Defendants." 2016 WL 3029783, at *30

6    (N.D. Cal. May 27, 2016) (emphasis added). The Court emphasized that the plaintiffs did *not* "seek

7    Loss of Value of PII under the UCL." *Id.* at *30 n.7.

8        Likewise, in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, this Court again found

9    UCL standing where (1) a plaintiff alleged "'benefit of the bargain' losses as a result of [the

10   plaintiff's] *payments* to Defendants"; and (2) other plaintiffs "alleged out-of-pocket expenses as a

11   result of the Data Breaches" in the form of "*money [paid]* for credit monitoring services." 2017 WL

12   3727318, at *20-21 (N.D. Cal. Aug. 30, 2017). With respect to the plaintiffs who failed to allege

13   that they paid any money as a result of the data breach, but merely pleaded that their data was stolen

14   such that they faced "imminent risk of *future* costs," the Court dismissed the UCL claim for lack of

15   standing because "Plaintiffs' 'intangible' allegations of future costs do not show that Plaintiffs have

16   'specifically … lost money or property' as a result of Defendants' misconduct." *Id.* at *22.

17       Finally, in *Fraley v. Facebook, Inc.*, this Court recognized that "several courts have held that

18   the unauthorized release of 'personal information' does not constitute a loss of money or property

19   for purposes of establishing standing under the UCL." 830 F. Supp. 2d 785, 811 (N.D. Cal. 2011)

20   (collecting cases). The Court reasoned that "this line of cases [is] inapplicable to Plaintiffs'

21   misappropriation claims, which … is of *an entirely different nature than a privacy tort claim*":

> Plaintiffs here do not assert that their personal information has inherent economic value and that the mere disclosure of such data constitutes a loss of money or property. Rather, Plaintiffs insist they have sustained economic loss resulting from Facebook's failure to compensate them for their valuable endorsement of third-party products and services to their Facebook Friends, *and that under § 3344, they have an expectation interest in a minimum statutory damages award of $750.*
>
> To the extent Plaintiffs allege they have a right to be paid for their endorsements and can establish how much these endorsements are worth, see SAC ¶ 91, the Court finds that they have alleged a loss of money or property sufficient to state a claim under the UCL.

*Id.* (emphasis added).[13]   Here, Plaintiffs do not allege that they are entitled to similar statutory damages.  Rather, they allege that they were harmed because Google received "their personal information which has value," SAC ¶ 282—*i.e.*, precisely the kind of harm that the Court recognized in *Fraley* is *not* sufficient for UCL standing.  830 F. Supp. 2d at 811.

Plaintiffs' UCL claim should be dismissed for lack of UCL standing.

**B.**   **Plaintiffs' UCL Claim Should Be Limited to Injunctive Relief Because They Fail to Allege Entitlement to Monetary Damages**

Plaintiffs do not allege that Google took any money from them.  Nor do they identify any "property" that could be "returned" to them. The only remedy Plaintiffs seek for their UCL claim is "restitution and disgorgement" of Google's allegedly "unjust profits." SAC ¶ 284.  Accordingly, Plaintiffs seek only nonrestitutionary disgorgement—*i.e.*, money obtained from third parties by the defendant (in contrast to money taken from the alleged victims). The California Supreme Court has held that nonrestitutionary disgorgement is "not available" under the UCL.  *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460-62 (2005); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL."); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1009 (9th Cir. 2008) (same).

Indeed, this Court recognized in *Calhoun* that "'nonrestitutionary disgorgement of profits is not an available remedy' under the UCL." 2021 WL 1056532, at *22 (citing *Korea Supply*, 29 Cal. 4th at 1152). Although the Court stated that "the only monetary remedy Plaintiffs may seek is restitution," *id.*, "in the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest." *Madrid*, 130 Cal. App. 4th at 453.  In *Madrid*, the

---

[13] Cal. Civ. Code § 3444(a) provides in relevant part: "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent … shall be liable for any damages sustained by the person or persons injured as a result thereof…. in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use…."

Court of Appeal made clear that "even assuming [the defendant] sold [plaintiff's] confidential information, plaintiff fails to show that such profit, received from third parties, would qualify as money taken from plaintiff or money in which plaintiff had a vested ownership interest, so as to be recoverable as restitution in this UCL action." *Id.* at 456; *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 840 (N.D. Cal. 2020) ("claiming that a defendant 'may have gained money through its sharing or use of the plaintiffs' information' is 'different from saying the plaintiffs lost money'" and holding that "Plaintiffs have not shown that they have a vested interest in any money earned from unspecified "'personal content and information.'" (quoting *Facebook Consumer Privacy User Profile*, 402 F. Supp. 3d at 804)).

Accordingly, Plaintiffs have failed to state a claim for restitution and their claim (should it survive) should be limited to injunctive relief only.

### C. Plaintiffs Fail to Allege They Relied on Any Purported Misstatement or Omission

Where, as here, "the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation or omission, a plaintiff must have actually relied on the misrepresentation or omission, and suffered economic injury as a result of that reliance, to have standing to sue." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014) (Koh, J.). Therefore, plaintiffs must allege "actual reliance and injury at the pleading stage for claims under *all three prongs of the UCL* where such claims are premised on misrepresentations." *Id.* at 1048 (emphasis added); *see also Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (Koh, J.) (dismissing UCL claim based on fraudulent and unfair prongs because "Plaintiffs have not specified which statements any of them saw or relied on"). Because Plaintiffs fail to allege that they relied on any specific misrepresentation or omission by Google, their UCL claim should be dismissed.

### CONCLUSION

For the foregoing reasons, Plaintiffs' claims for Breach of Contract and violation of the UCL should be dismissed with prejudice.

DATED: May 17, 2021

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By   /s/ Andrew H. Schapiro
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

GOOGLE'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

GOOGLE'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT