BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel
listed in signature blocks below*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

|  |  |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>GOOGLE LLC,<br><br>　　　Defendant. | Case No. 5:20-cv-03664-LHK-SVK<br><br>**JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES**<br><br>Referral: Hon. Susan van Keulen, USMJ |

May 26, 2021

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    Joint Submission in Response To Dkt. 147, 147-1, 159, 159-1 re: Status of
               Discovery Disputes
               *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK  (N.D. Cal.)

Dear Magistrate Judge van Keulen:

      Pursuant to Your Honor's April 30 and May 10 Discovery Orders (Dkt. 147, 147-1, 159, 159-1), Plaintiffs and Google LLC ("Google") jointly submit this statement containing a table identifying the status of the remaining discovery disputes and a separate chart outlining disputes regarding Plaintiffs' written discovery requests.

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | **Disputes Identified by Plaintiffs** | |
| P1 4/7/21 | **Selection of Google custodians**: The parties have a dispute regarding which Google employees to include as document custodians. | <u>Plaintiffs' Statement</u>: Plaintiffs seek an order requiring Google to add five (5) additional custodians. Google provided Plaintiffs with a list of 226 Google employees who may have relevant ESI. On April 27, from that list, Plaintiffs asked Google to add seven custodians – which would bring the total number of custodians in this case (so far) from 17 to 24 custodians. Google only agreed to add two of those individuals as custodians. The other five Google employees should also be included as custodians: <ul><li><u>Benj Azose</u>: He is a member of the Google Chrome Product Analysis team with responsibility for the "Privacy Sandbox," which aims to make browsing "more private." Mr. Azose also has responsibility for "Chrome Privacy," which aims to "meaningfully improve the privacy of all Chrome users."</li><li><u>Nina Ilieva</u>: She is a Google software engineer who "[d]evelped [an] infrastructure to manage user identity within the ads space," with a focus on "better privacy experiences for users." Ms. Ilieva has also "built a metrics collection pipeline with built in algorithmic privacy."</li><li><u>Russ Ketchum</u>: He is the Google head of product management for Google Analytics focused on Google's collection and storage of user data, including through a log-in or hashed ID. In one article about Google Analytics, Mr. Ketchum explains: "If there's a log-in or hashed ID [advertisers] can pass to us, that's the most</li></ul> | |

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | deterministic and that's what we'll use," but "if you're a business who doesn't have that log-in, that's where the Google signals can augment that." <br>• <u>Sammit Adhya</u>:  She has worked as a Google product manager for Privacy and Data Protection and as a Google Technical Program Manager for Privacy Engineering.  Her LinkedIn profile states that she has served as the "Privacy Engineering Lead for Alphabet portfolio companies driving privacy by design, privacy excellence principles, and GDPR compliance for products." <br>• <u>Suneeti Shah Vakharia</u>:  She is a Google product manager with "[t]echnology policy expertise [that] includes privacy and data protection." <br><br>Google's primary objection has been that these individuals report to other custodians, but that is not an issue because Google can easily de-duplicate documents and then only review and produce the uniquely relevant documents. <br><br>Plaintiffs identified these individuals almost a month ago, on April 27, and Google's claim that this is "premature" is based only on Google's refusal to provide timely responses to Plaintiffs' letters, denying the parties the ability to meet and confer further.  Google did not respond to Plaintiffs' April 27 letter until May 19. Plaintiffs promptly responded on May 21, but Google still has not responded to that letter. Plaintiffs seek a ruling now because Google will otherwise insist that further briefing may only occur with the next joint statement, further delaying production. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | Plaintiffs attach a proposed order regarding these proposed five custodians.  Ex. A.<br><br>Plaintiffs are also continuing to seek additional information from Google to identify relevant custodians, with the expectation that Plaintiffs will in the end seek no more than 50 custodians.  Plaintiffs believe that additional meeting and conferring would be useful in terms of those additional custodians.<br><br>Google's Position:   Plaintiffs' request for the Court to adjudicate the propriety of these five custodians through this submission is equal parts premature and improper. Indeed, the descriptions above reflect *new information* that Plaintiffs presented to Google for the first time just days before this submission. Google is reviewing this information, which goes beyond the threadbare citations to job titles and job descriptions that Plaintiffs offered on April 27 (among several *dozen other* potential custodians Plaintiffs do not mention in this submission but likewise demanded Google investigate). After investigating them, Google addressed these other potential custodians in its May 19 response, which ostensibly helped narrow the potential custodians in dispute. In any event, Google has not had an opportunity to fully evaluate Plaintiffs' new "good cause" arguments, much less meet and confer in an attempt to resolve or narrow the universe of custodians they seek. Further, Plaintiffs' process of adding custodians piecemeal -- before even reviewing the full universe of the custodial documents of existing custodians -- is disruptive to the discovery process. Each additional custodial demand is | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | time-intensive for Google to investigate; it also needlessly wastes judicial resources in the event no impasse is reached. Plaintiffs claim that an extension to the fact discovery cutoff was necessitated by Google's rolling production, but Plaintiffs refuse to review those rolling productions before making scattershot custodian demands. Plaintiffs cannot have it both ways.<br><br>Moreover, Google rejects Plaintiffs' continuing attempt to improperly use the Joint Discovery Statement (i) as a vehicle for raising disputes where the parties are not yet at an impasse and (ii) to replace Court-ordered letter briefing for the disputes that are ripe for adjudication. Contrary to their assertion, "Google [has not] insist[ed] that further briefing may only occur with the next joint statement." The proper process is for Plaintiffs to briefly summarize the dispute and then ask for a briefing schedule in the joint submission.<br><br>Because this dispute would benefit from further discussion between the parties, Google respectfully requests that the Court reject Plaintiffs' Proposed Order (*see* Ex. A), and order the parties to continue to meet and confer to resolve or at least narrow the custodians at issue. In the event there are any remaining disputes, those can be briefed in advance of the following conference. | |
| P2 4/7/21 | **Google's search terms**: The parties have a dispute regarding which search terms Google should apply to identify | Plaintiffs' Statement: Plaintiffs also seek the Court's guidance in terms of any search limitations for the additional custodians. The Court previously ordered Google to add additional custodians but with a limit of ten | |

5

Case No. 5:20-cv-03664-LHK-SVK
JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
|  | potentially responsive documents. | searches. For these additional custodians, Plaintiffs are concerned that the smaller set of searches will omit key documents, where those narrowed searches may not be a good fit for these custodians. Plaintiffs requested that Google apply the broader set of searches being used for the Google-selected custodians, but Google has so far refused to do that. That dispute is not yet ripe, and Plaintiffs have requested hit counts to help inform those negotiations. If limited to just ten searches for these additional custodians, Plaintiffs intend to propose specific searches for these custodians beyond the six searches being used for the other Court-ordered custodians to identify potentially responsive documents.

The parties are also having ongoing meet and confer discussions regarding the searches needed to identify responsive documents regarding Google's storage and use of private browsing data, including with twice-baked cookies and for example Google's "████" cookies. Because Plaintiffs only proposed six searches for the Court-ordered custodians, and the Court permitted ten searches, Plaintiffs anticipate proposing additional searches but not exceeding ten searches for those custodians.
In connection with P9, the parties are also meeting and conferring regarding search terms. Plaintiffs proposed a compromise on May 21 and are still waiting for Google's response to that proposed compromise.

Google's Position:  Plaintiffs' requests raise three glaring concerns. |  |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | *First,* Plaintiffs yet again ask the Court to set aside its April 13, 2021 order limiting additional Google custodians to "10 identical search terms," ECF 133-1, this time on the unsupported basis that "the smaller set of searches will omit key documents" for additional document custodians. This argument has already been raised and rejected. On April 23, Plaintiffs asked the Court to "order Google to run the *same set of [135+] searches*" for five of the Court-ordered custodians that Google is running for the original custodians. ECF 139-3 at 4. The Court denied that request. *See* ECF 148 at 3 (directing "Google [to] use only the following [six] search as modified or directed"). Plaintiffs again seek to re-open the scope of search terms applicable to newly-added custodians. Plaintiffs' request for hit counts cannot be used to circumvent this clear limitation on the terms that are appropriate for additional custodians. Accordingly, Google intends to abide by the Court's prior orders for the two additional custodians that Google has already accepted (and any other custodians accepted or ordered by the Court).<br><br>*Second,* Google intends to abide by the April 13, 2021 order limiting the number of search terms applicable to later-added custodians. New search terms that Plaintiffs seek (and Google adds) will be run on the original custodians, not the broader set of custodians from whom Plaintiffs improperly seek more expansive productions, despite the Court's prior orders.<br><br>*Third,* Plaintiffs indicated for the first time in this submission that for the seven Court-ordered custodians | |

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | (Dkt. 133-1) they "anticipate proposing additional searches but not exceeding ten searches." But the parties were ordered to propose and resolve terms for those custodians by April 23. ECF 133-1 at 1. Now, over a month later, Plaintiffs seek a do-over, claiming they have four terms in reserves; not so. Plaintiffs' proposal to at some point propose more terms not only violates the Court's April 13 and 30 orders, it is prejudicial to Google because it (i) renders illusory the various compromises that Google offered (and Plaintiffs accepted) when Google agreed to run certain terms even after the Court ordered further narrowing, which it did to expeditiously resolve this dispute; (ii) ignores well-founded concerns that Google has regarding burden and proportionality; and (iii) negates the value of negotiating search terms based on hit report data and related metrics, if the universe of applicable search terms is ever-expanding.<br><br>Google requests the Court's intervention in order to foreclose Plaintiffs from continuing to re-litigate issues and re-open negotiations that have been fully resolved by the Court or between the parties. | |
| P3 4/7/21 | **Google's production of Plaintiffs' data**: The parties have a dispute regarding Plaintiffs' RFP No. 18: "Documents concerning Plaintiffs, including Plaintiffs' use of Google services, all data collected by Google from and regarding Plaintiffs, and | Plaintiffs' Position: On April 30, Your Honor ordered Google to produce "authenticated" and "unauthenticated data" concerning the named plaintiffs and their devices by May 12. Google evaded this Order, and continues to refuse to cooperate. Although Plaintiffs asked many times between April 30 and May 12, Google only vaguely told Plaintiffs to capture their cookies in new private sessions, without explaining what to capture and how, or whether these cookies even include all the twice-baked identifiers. | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | Google's use of all data collected by Google from and regarding Plaintiffs." | Plaintiffs repeatedly asked how such cookies are generated so that the data could be accurately and completely captured. Plaintiffs can see different Google cookies but do not understand when and why they are set, or where the twice-baked cookies are, if they are there at all in what was captured – because this has not been disclosed to the public.<br><br>In addition, Google is refusing to run searches on the unauthenticated data, based on the data produced with the authenticated, although Google's own internal search tool can easily search with such data. GOOG-BRWN-00028290 (screenshot of tool). For example, Google can search based on IP addresses and device IDs, both of which Google already has with the "authenticated data." But Google refuses to so do. In short, Google is refusing basic discovery on how it is collecting data for "unauthenticated users," including its undisclosed twice-baked cookies, when the allegations are at the core of the case.<br><br>Here is an image of the tool: | |

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | In any event, Plaintiffs have tried their best to follow Google's vague instructions.  Plaintiffs have now provided the information to Google that Plaintiffs believe Google has requested.

Relatedly, in the parties' May 6 joint submission to Your Honor (Dkt. 155), Plaintiffs submitted a proposed order that would grant their experts clean room access to that internal | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
|  |  | Google search tool for purposes of determining what information Google has collected regarding the named plaintiffs' and their devices, using both authenticated and unauthenticated identifiers. Dkt. 156. Plaintiffs continue to believe such clean-room access is appropriate. Google is going to great lengths to avoid producing any unauthenticated data. The most efficient course is for Plaintiffs' experts to access the search tool, which allows for searches by IP addresses, device IDs, and twice-baked cookie identifiers. |  |
|  |  | Google's Position: There has been no evasion: Google produced data pursuant to the Court's order. Dkt. 147-1 at 2. The Court ordered Google to produce data "*provided Plaintiffs have provided the necessary device information.*" (*Id.*) (emphasis added). And Google produced data associated with the Google accounts that Plaintiffs had identified in a timely manner. But Plaintiffs only provided "necessary device information" to query unauthenticated data yesterday (May 25), when they sent cookie values allegedly taken from a browser used by one named plaintiff. Google will search for, and intends to produce, data associated with those cookie values. Google is unable to do more because Google's systems—including the tool Plaintiffs reference—are not designed to derive unauthenticated identifiers from authenticated identifiers. To search for specific unauthenticated data, Google needs unauthenticated identifiers. |  |
|  |  | Plaintiffs' request for access to a clean room remains unsupported, burdensome, and disproportionate to the |  |

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | dispute. If the remaining Plaintiffs also provide Google with their unauthenticated identifiers, then Google will also provide data associated with those identifiers, to the extent any exists. There is no cause for Plaintiffs to look over Google's shoulders. To preserve cookie values from their browsers, Plaintiffs do not need to understand "when and why" they are set, or "where the twice-baked cookies are." As explained previously, they need only use the publicly available Chrome browser Developer Tools to see and copy any Google cookie values. If Plaintiffs continue to insist on clean room access, Google respectfully requests a briefing schedule so it may seek a protective order.<br><br>Finally, in a clear circumvention of this Court's rules against attachments, Plaintiffs have pasted a screenshot of protected material (for no good reason). Google is concerned that the joint submission format has devolved from a succinct vehicle to apprise the Court of disputes and obtain briefing schedules (if necessary) to a wild-west format without rules or parameters that is increasingly prejudicial to Google. | |
| P4<br>4/7/21 | **Google server logs**: The parties have a dispute regarding preservation and production of Google server logs regarding Google's collection and use of private browsing information. | <u>Plaintiffs' Position</u>:   In connection with this dispute, following the April 13 hearing, Your Honor ordered the parties to meet and confer regarding cross-use of documents between this case and *Calhoun*. Dkt. 133-1 at 4. The parties have done so, and Plaintiffs include below a separate dispute (P15) focused on that issue.<br><br>With respect to certain Google server logs, the parties have reached an impasse. On May 17, Plaintiffs sent Google a | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | draft joint dispute letter regarding preservation of certain relevant logs, but Google refuses to include any statement or submit that letter, insisting that the parties first present the issues in this submission.<br><br>The dispute focuses on what Google has identified as "raw referer" logs, which contain information that can be used to identify class members. These logs contain users' HTTP-entries without the X-Client-Data header, which by Google's own admission can serve to identify class members during Incognito sessions. *E.g.*, GOOG-BRWN-00029447–29448.<br><br>Plaintiffs seek an order requiring Google to preserve these "raw referrer" logs, to prevent any further destruction of data that can be used to identify class members and relevant private browsing information. Google is interpreting the Court's *Calhoun* ruling to authorize no preservation of any logs, including these key logs that were not at issue in *Calhoun*.<br><br>Google previously represented to the Court that the logs at issue in the *Calhoun* Order applied to only three types of data logs: "Identity logs, Analytics logs, and Display Ad logs." See Dkt. 119 at 2. That does not include these "raw referer" logs, and Google apparently is not preserving those based on a broad reading of the Court's *Calhoun* ruling, contending that order permits Google to not preserve any logs. Google claims below that "raw referer logs" are "part of" Google's Display Ad logs. That | |

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | underscores the narrowly tailored nature of Plaintiffs' revised request.<br><br>Furthermore, on May 25, Google wrote to Plaintiffs to clarify that Google is now taking the position that it will not allow any deponent to testify on any type of data preservation regarding the class or class period, and objected to all such preservation obligations as "irrelevant" because "any dispute regarding Google's log retention policies is (now) moot in light of the protective order issued in Calhoun."<br><br>This dispute is ripe. Plaintiffs sent Google a draft joint dispute letter. The Court may either rule on this issue at the June 2 hearing or order Google to respond so that the parties can submit that joint dispute letter. Plaintiffs include a proposed order for this dispute. Ex. B.<br><br>Google's Position:   Plaintiffs are wrong on two counts. *First*, what Plaintiffs call the "raw referer logs" are a part of Google's Display Ad logs, and already the subject of extensive briefing resulting in this Court's order that Google "need not suspend its standard retention periods." *Calhoun et al. v. Google LLC*, No. 5:20-cv-5146, Dkt. 174. Because this Court already explained that the ruling on log preservation in *Calhoun* would apply equally to the same logs in *Brown* (*see* Dkt. 147-1 at 1)—this dispute is moot.<br><br>*Second*, there is no support for Plaintiffs' claim that this data "can be used to identify class members and relevant private browsing information." In any event, to the extent | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | the Court is inclined to grant Plaintiffs' request for additional briefing on this issue, a two-page letter brief (one page for each side) suffices. | |
| P5 4/7/21 | **Google's preservation of custodial ESI:** The parties have a dispute regarding the extent to which the Court's ESI Order (Dkt. 91) requires Google to preserve custodial ESI back to June 1, 2008. | <u>Joint Statement</u>:  The Court resolved this dispute. | |
| P6 4/7/21 | **Class member identification:** The parties have a dispute regarding Plaintiffs' RFP No. 10: "Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members." | <u>Plaintiffs' Position</u>:  Plaintiffs appreciate the Court's assistance in ordering Google to "as an initial step," produce identification data for the named Plaintiffs.  Dkt. 147-1.  Google has unfortunately evaded that Order, as described above in P3.  Google is refusing to otherwise explain how unauthenticated users are identified and tracked, including by twice-baked cookies.  Plaintiffs have a separate dispute that overlaps to some extent with this dispute, which Plaintiffs include as P16 below.<br><br>As Google's own statement to this issue and P3 demonstrate, Google is flatly refusing to provide discovery and information on how unauthenticated users are tracked, including through the use of twice baked cookies while they are in private browsing mode.<br><br><u>Google's Position</u>: There is no evasion or refusal to provide discovery; Google welcomes written discovery on unauthenticated identifiers and is providing a 30(b)(6) | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | witness on that very topic. As explained in response to P3, Google has produced the information required by the Court's order. Google produced authenticated user-level data with x-client-data values to permit Plaintiffs to test their theories.<br><br>However, instead of analyzing that production to determine whether their theory of class member identification is practicable, Plaintiffs ignore it, claiming it is insufficient and demanding potentially sensitive data related to browsing of 5,000 users who have not consented to such a use (*see* P16). Google produced information the Court ordered. There should be no dispute on P6 at this time. | |
| P7 4/7/21 | **Logged in and logged out:** The parties have a dispute regarding what constitutes logged in and logged out behavior. | <u>Plaintiffs' Position:</u> The parties are continuing to meet and confer on this issue. Google appears to agree that "logged in" data should mean authenticated user data within Google's terminology. But Google refuses to explain what is part of "logged out" data, which Google appears to agree should include unauthenticated user data. Specifically, Google tracks unauthenticated users using undisclosed Google identifiers such as twice-baked cookies, for which Google refuses to produce explanatory documentation that describes how such identifiers are generated, and how they are paired with authenticated data.<br><br>In addition, Google refuses to clarify whether a "logged out" user includes both individuals and devices, or only individuals. It is unclear if Google is using such terminology to evade discovery responses. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | <u>Google's Position</u>:  Plaintiffs have it backwards. Google has not refused to produce documents related to unauthenticated identifiers. Instead, Google has consistently explained to Plaintiffs that—because their allegations are explicitly limited to data Google receives when a user *is not logged in* to their Google Account on the browser—Google should not have to produce documents that solely relate to data Google receives when a user *is logged in* to their Google Account (*i.e.* authenticated) on the browser. There can be no confusion regarding the definition of "logged out" data; it refers to data Google receives while a user is not logged in to their Google Account on the browser. Because the user is not authenticated, there is no distinction between an individual and a device (or browser) in that scenario. | |
| P8 4/7/21 | **Plaintiffs' Consulting Experts:** The parties may have a dispute regarding Plaintiffs' ability to show protective order materials to their retained experts. | <u>Joint Statement</u>:  There is no dispute at this time. | |
| P9 4/23/21 | **Google production of custodial documents responsive to particular requests**: The parties have a dispute regarding whether Google will produce custodial documents responsive to certain document requests. | <u>Joint Submission</u>: The parties continue to meet and confer regarding this issue, but have not yet resolved this dispute. The parties are hopeful that they can resolve this dispute before the next submission to the Court. | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| P10 4/23/21 | **Google timeline for producing custodial documents**: The parties have a dispute regarding the timeline for Google's production of custodial documents. | Plaintiffs' Position:  Although Judge Koh recently granted the parties' stipulated request to extend the close of fact discovery until November 2 (Dkt. 171), Google should still be required to substantially complete custodial document production (at least for the first 17 custodians) by June 18.  The parties sought additional time in part due to Google's delay in producing custodial documents, and there is no basis for Google's proposal to now push that delay out by another three months.  Keeping the June 18 deadline is especially important given that Google has taken the position that Plaintiffs should hold off on seeking to add certain additional custodians until after production of documents for the initial 17 custodians.  Extending that deadline will cause unnecessary delay and other problems.  Plaintiffs will meet and confer with Google regarding deadlines for production of other documents, for new custodians and non-custodial documents.

Google's Position:  The parties have agreed (and the Court since ordered) all deadlines in the current schedule to be extended by three months (Dkt. 171). It is reasonable to extend the deadline for substantial completion of custodial documents of June 18 by the same amount of time. The Court only set the June 18 substantial completion deadline "in light of the close of fact discovery on August 2, 2021." Dkt. 147-1 at 2-3. Further, in the May 19, 2021 Joint Case Management Statement (Dkt. 169), the parties provided a joint statement stating that "[t]he parties agree that additional time is necessary to complete fact discovery and jointly  propose  extending  the  current  deadlines  by | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | approximately 3 months." Dkt. 169 at 10 (emphasis added). Despite Google taking the position that Plaintiffs should hold off on seeking additional custodians until after it finishes the custodial production of the original custodians, Plaintiffs continue to proceed in piecemeal fashion by seeking additional custodians as discussed in P1, and are also seeking to propose additional search terms contrary to the parties' prior agreement and the Court's orders (see P2), which further complicates de-duplication, delays production, and increases costs.<br><br>Accordingly, Google respectfully asks that the Court extend the intermediate deadline for Google to complete all custodial document production from June 18 to September 17.   In the event that the Court declines to extend the substantial completion deadline for all custodians by 90 days (to track the Joint Case Management Statement and stipulated extension for the completion of fact discovery), Google asks that the Court issue an order clarifying that (i) the June 18 deadline only applies to the current set of search terms that Google is running for the original Google custodians, and (ii) separate deadline(s) to be negotiated by the parties will apply to documents produced in response to any new terms added for the original custodians, as well documents produced for the Court-ordered custodians (ECF 148) and all other custodians agreed by the parties or ordered by the Court. | |
| P11 4/23/21 | **Google's production of Board documents**: The parties have a dispute regarding Google's | <u>Plaintiffs' Position</u>:  The parties agreed on search terms for purposes of identifying documents responsive to RFP 13, but Google has unilaterally insisted on limiting its | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | production of documents responsive to RFP No. 13: "Handouts and presentations to or from any Google C-level executive or board member and committee or board meeting minutes discussing any private browsing mode, including Incognito mode." | collection to Board-level documents without collecting or reviewing the requested "Google C-level executive" documents. To complete production of documents responsive to this request, Google should not only collect Board presentations and minutes but also collect and search C-level executive presentations and minutes. If those documents are held by Alphabet instead of Google, then Plaintiffs can seek those documents by subpoena. It does not matter what the teams were at those times, whether it was the "OC" or some other team. Google should collect and produce these C-Level executive documents. The parties are continuing to meet and confer and not yet at an impasse.<br><br>Google's Position:  Google agrees this dispute is not ripe. Google has agreed to all of Plaintiffs' proposed search terms for purposes of identifying Board meeting materials responsive to RFP 13, and will produce responsive documents by May 28. Plaintiffs now seek to expand their original request and demand that Google also produce handouts, presentations and minutes from two separate and distinct teams: Google's "OC and L Team" meetings. This is improper because the L Team (Larry Page's Team) was not in operation during any relevant time period and thus is out of scope, and most of the executives on the OC (Operating Committee) were not Google officers. The parties continue to meet and confer. | |
| P12 4/23/21 | **Google production of other non-custodial documents**: The parties have a dispute regarding whether Google will produce | Joint Submission: The parties met and conferred but have not yet resolved this dispute.  The parties are hopeful that they can resolve this dispute before the next submission to the Court. | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | non-custodial documents responsive to certain document requests. | | |
| P13 4/23/21 | **Google's responses to Interrogatory Nos. 5-7**: The parties have a dispute regarding Google's responses to these interrogatories. | Plaintiffs' Position:  Google  initially  refused to respond to Plaintiffs'  Interrogatory  Nos. 5-7 on the ground that Plaintiffs'  first four interrogatories  should be construed as 27 discrete interrogatories.   On April 30, the Court ordered Google to respond to Interrogatory Nos. 5-7 by May 12. Dkt. 147-1.  Google is still refusing to respond to Interrogatory No. 5, which is listed in Chart B, below. The parties' dispute about Interrogatory No. 5 is ripe. Moreover, Google  until its draft of this joint  submission was taking the position  that Plaintiffs'  first four interrogatories  should count as 27 interrogatories,  and that Plaintiffs  have therefore used their full allotment. Plaintiffs sent Google  a detailed letter on April 20 explaining   why each of the first four interrogatories should be construed as a single interrogatory.  Google did not meaningfully  respond, instead vaguely stating that Google  "disagree[s] with the contentions  and authorities that [Plaintiffs] raised." Now Google  claims below that the actual count is 11, not 27. But Google has still not provided  any justification  for this count, which is still incorrect,  even though Plaintiffs  sent Google  a detailed letter about this issue on April 20. Plaintiffs  hoped to avoid burdening the Court with a dispute about counting  interrogatories,  but it unfortunately appears necessary.  Plaintiffs have tried to resolve this | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | dispute so that they can plan ahead, for future interrogatories. Plaintiffs ask that the Court order Google to treat Plaintiffs' first seven interrogatories as seven interrogatories, so that Plaintiffs can then proceed with their additional interrogatories without fear that Google will again refuse to answer those interrogatories based on Google's incorrect counting of Plaintiffs' interrogatories.<br><br>Google's Position: This dispute is not ripe for judicial intervention. Plaintiffs requested a meet and confer on this issue only a few days ago, which the parties have not completed. Google has served its responses and objections to Interrogatory Nos. 5-7 by May 12, 2021 in accordance with the Court's Order. (Dkt. 147-1.) In an attempt to resolve the issue, Google has offered to agree that Plaintiffs' Interrogatory Nos. 1-4 shall be deemed to constitute 11 separate interrogatories (instead of 27 disparate interrogatories). Plaintiffs now seek to turn Google's attempt to compromise into a detriment. In any event, Google remains willing to continue to meet and confer with Plaintiffs on May 27 and will update the Court at the June 2 hearing.<br><br>Google's willingness to compromise, however, should not detract from the issue. It is prejudicial and unduly burdensome to count Plaintiff's compound and sprawling inquiries as a single interrogatory. For example, one interrogatory seeks Google personnel with responsibility for or knowledge of Google's (1) Incognito mode, (2) creation of and modification to Google's privacy policies and representations related to private browsing, (3) | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | collection and use of data in connection with users' activity while in private browsing mode, (4) Google's creation and use of profiles or other aggregated data with data collected in connection with users' activity while in a private browsing mode, (5) interactions with regulators, and (6) compliance with CCPA, GDPR, and similar legislation. Plaintiffs' hopelessly compound interrogatories are disproportionately burdensome and circumvent any reasonable discovery limits without a showing of good cause. Google hopes the parties can arrive at a mutual understanding on the number of Interrogatories Plaintiffs should be deemed to have propounded to date. | |
| P14 5/26/21 | **Access to non-public Google source code:** The parties have a dispute regarding Plaintiffs' requests for access to non-public Google source code. | <u>Plaintiffs' Position</u>: Plaintiffs propounded at least eight RFPs seeking access to specific Google source code. Google has so far insisted that Plaintiffs should look only to publicly available source code. But publicly available code is not a reasonably usable substitute for the complete, versioned, unobfuscated, and commented code that Google uses to create the functionalities at issue.<br><br>Google source code is relevant to at least three aspects of this case: Google's collection of private browsing data; Google's association of private browsing data with other user data; and Google's use of private browsing data, including for Google's own enrichment in ways that are issue with the calculation of damages.<br><br>At a minimum, Google should begin by producing source code for Google internal and external facing applications, tools, and processes that use twice-baked cookies and | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | other Google identifiers to map browsing activity with users and their devices. Google should also produce source code showing how Google's Ad Personalization service targets advertisements to users and/or devices. Plaintiffs have retained experts to inspect this Google source code, and Google has approved them. Coordinating the inspection will take time, and there is no basis for Google to continue withholding this source code from Plaintiffs' experts. Plaintiffs request the Court's assistance in ordering Google to comply in a timely manner. Plaintiffs sent Google a detailed letter about these issues on April 30. Google only responded the night before this joint submission was due. Plaintiffs include a proposed order for this dispute. Ex. C. Google's Position: Again, this issue is not ripe. Plaintiffs prematurely seek adjudication via this Joint Discovery Statement on an issue that the parties have not met and conferred on. Making non-public Google source code available for inspection is a weighty issue, and the necessity of relying on source code in this litigation is far from a foregone conclusion. Google has responded to Plaintiffs' letter and looks forward to continuing to meet and confer on this issue. Google has numerous concerns with Plaintiff's request for non-public source code. *First*, Google's source code | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | represents highly sensitive trade secrets and Plaintiffs have failed to meet their threshold showing that it is relevant and necessary in this case. *Second*, the vast majority of Plaintiffs' expansive and ill-formed requests for the "complete, versioned, unobfuscated, and commented code" are irrelevant to Plaintiffs' allegations. *Third*, Google has already identified for Plaintiffs relevant public source code and other documents produced which inform the three specific topics Plaintiffs raise above. Importantly, Plaintiffs have not identified any deficiency or missing information.<br><br>And, to the extent Plaintiffs argue they require more discovery into "Google's collection of private browsing data; Google's association of private browsing data with other user data; and Google's use of private browsing data," those are topics more efficiently handled through less burdensome written discovery, such as RFAs, interrogatories, or stipulation. For example, written discovery would enlighten the fact that Google does not dispute that it receives certain data from user's private browsing sessions from publishers that choose to implement Google services—such as Ad Manager and Analytics—consistent with both its Privacy Policy and other relevant disclosures.<br><br>In any event, Google is open to meeting and conferring on this issue to resolve or narrow disputes and respectfully requests that the Court deny Ex. C at this time. | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| P15<br>5/26/21 | **Cross-use:** The parties have a dispute regarding cross-use of discovery between *Brown* and *Calhoun*. | <u>Plaintiffs' Position</u>: Plaintiffs continue to believe cross-use of documents is appropriate and useful, and Plaintiffs now submit a proposed order that would permit that cross-use of documents and more efficient coordination among counsel in *Brown*, *Calhoun*, and *Hewitt*.<br><br>Without an order permitting some cross-use of documents, Plaintiffs are concerned that Google will continue to withhold relevant documents and prevent efficient coordination among counsel. For example, Plaintiffs first learned about Google's undisclosed twice-baked cookie identifiers, used to track individuals who are class members in this case, through the Court-ordered production of documents from *Calhoun*—documents that Google had previously withheld in the *Brown* action.<br><br>Consistent with the Court's directions, Plaintiffs sought to negotiate an order that would permit cross-use of relevant documents, without indiscriminate cross-use. Plaintiffs also sought to ensure the ability of counsel to discuss issues as they arise without fear of Google accusing counsel for Plaintiffs of violating any protective order, while also ensuring that any information shared among counsel remains subject to the protective orders.<br><br>To move this dispute forward to a resolution, and to permit the parties to proceed efficiently, Plaintiffs include a proposed order for this dispute. Ex. D. Plaintiffs drafted this proposed order in consultation with counsel for the plaintiffs in *Calhoun* and *Hewitt*, and the plaintiffs in those cases have agreed to it. Plaintiffs modeled this | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | order on the "Discovery Coordination Order" signed by Judge Koh in *In re Qualcomm Antitrust Litigation*, 5:17-md-02773-LHK at No. 305 (Jan. 24, 2018).<br><br>Google's cross-use objections are continuing to cause delay and inefficiencies, and there is no basis for any objection to this proposed order. The proposed order permits Google to redact information and withhold documents where that information or those documents relate solely to one or two cases, with a process for resolving any disputes. The proposed order also permits discussion among counsel for the three actions, to permit greater coordination and efficiency across these actions.<br><br>Modification of the protective orders is necessary because Google refuses to provide basic information regarding the discovery that is occurring in the two actions, including for example the identification of agreed-upon and proposed custodians. Google has refused to provide that information, and also refused to permit plaintiffs' counsel to share that information, where Google may have provided information by way of meet and confers that it may claim is confidential. Without modifying the protective orders, plaintiffs' counsel cannot share information and effectively coordinate. Google seeks to prevent the parties from even discussing Google-produced documents dealing with common issues involving, for example, Google's storage and use of browsing information. The proposed modification ensures that any such discussions are subject to the protections afforded Google under the protective orders, and there is no basis for any Google objection to these provisions. | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | Google's Position:   This dispute is premature. The Court ordered the parties to meet and confer on the issue of cross-use.   To that end, Google has already proposed a specific plan to cross-use relevant documents between *Brown* and *Calhoun*. The parties can (and should) orally confer related to Google's proposal first. Instead, the day of this filing, Plaintiffs provided Google with their proposed order (Exhibit D). Regrettably, Plaintiffs have made no attempt to negotiate with Google—or even provide advance notice of the proposals in this document to allow Google a meaningful opportunity to review and respond. Counsel for Google in this matter has not had sufficient time to review Plaintiffs' proposal with their client, much less to confer with the Plaintiffs in *Brown*, *Calhoun*, and *Hewitt*, or with Google's (separate) outside counsel in *Hewitt*, on the substance of the proposed order, which includes many new proposals. For these reasons, Google respectfully requests that the Court order the parties to meet and confer, or, in the alternative, set a briefing schedule so that Google may seek a protective order. <br><br> In the short time that Google has had to review Plaintiffs' proposal, however, Google objects to it as unduly burdensome and prejudicial as it essentially contemplates the indiscriminate cross-use of documents, which the Court rejected in the April 29 hearing. (*See* Apr. 29, 2021 Hrg. Tr. 60:16-19 ("stating that cross-use "doesn't mean full on without limitations").) Specifically, Plaintiffs propose amending the Protective Orders in each case to allow discussion among counsel in the three actions. Such an | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | amendment would impose no limits on cross-use and would thus amount to indiscriminate sharing of documents-- without Google even knowing which documents are being shared--which is inappropriate and prejudicial to Google. The order in the *Qualcomm MDL* is not instructive here because the overlap between *Brown*, *Calhoun*, and *Hewitt* is much more limited than the overlap appears to have been in that litigation. *Brown*, *Calhoun*, and *Hewitt* are not coordinated cases. That the Court deemed it proper to relate them before the same court for efficiency reasons does not mean that full cross-use of discovery is proper. In fact, the unlimited cross-use Plaintiffs demand is highly prejudicial to Google in that it will lead to the production of irrelevant documents, constant discovery battles on the basis of discovery produced in other cases, and an impermissible broadening of the scope of discovery in each case. Google is moving expeditiously to resolve this dispute and has offered to meet and confer with the Plaintiffs next week. | |
| P16 5/26/21 | **X-Client Data:** The parties have a dispute regarding Plaintiffs' RFP 120: "Documents sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client Data Header." | Plaintiffs' Position:  Google should be ordered to produce data responsive to RFP 120 or, in the alternative, grant Plaintiffs' experts the access needed to search for and obtain data responsive to this request. Google has refused to produce this data and also refused to respond to a joint dispute letter that Plaintiffs sent regarding this request, essentially taking the position that class-focused document discovery is on hold while the parties proceed with the P3 and P6 efforts. | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | This is a discrete request for data, and it should be produced without any further delay. Discovery to date confirms the "X-Client-Data Header" can be used to identify class members. For example, according to Google's responses to Plaintiffs' interrogatories, Google first introduced the X-Client-Data Header in 2012 (before the start of the class period) and that (with "one limited exception") the X-Client-Data Header "has not been transmitted to Google while users are in Incognito mode." This means the parties can use the absence of the X-Client-Data Header to identify users in Incognito mode. Google's employees agree.<br><br>With RFP 120, Plaintiffs do not seek production of all logs or data. Plaintiffs seek a narrowly tailored and relevant set of data sufficient to identify browsing tied to Incognito mode, based on the absence of the X-Client-Data Header. Such data can be collected using a search query for records without the X-Client-Data Header. Alternatively, if Google is unwilling to write the query necessary to collect and produce this X-Client Data, Plaintiffs should be permitted to do that. Plaintiffs' experts, if granted access to Google's data, could write a query to obtain this data.<br><br>Production of this data now would also potentially mitigate some of the prejudice from Google's failure to preserve certain logs. For example, if those logs have a six-month retention period, Google may be able to produce this data now, and then again in six months, limiting some of the ongoing prejudice to Plaintiffs. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | This dispute is ripe. Plaintiffs include RFP 120 in Chart B below.<br><br>Google's Position:  This dispute has already been briefed and ruled on by the Court. There is nothing further to be done. Specifically, Plaintiffs already presented the Court with their theories about using x-client-data header values to identify potential class members, and Google has already explained why the absence of the x-client-data header cannot be used to identify private browsing data received through Google Analytics or from a non-Chrome browser. Dkt. 140 at 4-5. The Court has ordered Google to produce x-client-data header values associated with the Named Plaintiffs (Dkt. 147-1 at 2) and Google has done so. Now, instead of analyzing that data to test their theory, Plaintiffs request the private browsing information related to the browsing of 5,000 strangers to this litigation who never consented. Google should not be compelled to produce such information in violation of the SCA and Google's privacy commitments. To the extent the Court is inclined to grant Plaintiffs' request for further briefing, one page per side should suffice. And such briefing should only take place once Plaintiffs have analyzed the x-client-data header values that have been produced to them and have shown that their theory is viable (it is not). | |
| | **Disputes Identified by Google** | | |
| D1 | Google's Requests for Admission Nos. 1, 2, 3, 4 | Joint Position:  Plaintiffs indicated on the parties' May 18, 2021 meet and confer that they would provide amended | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | responses to RFA Nos. 1, 2, and 4 by May 24, 2021. The parties are continuing to meet and confer on RFA No. 3. | |
| D2 | Google's Interrogatories Nos. 7, 9, 10 | <u>Joint Position</u>: Plaintiffs indicated on the parties' May 18, 2021 meet and confer that they would provide amended responses by June 1, 2021. | |
| D3 | Google's Requests for Production No. 2, 7 | <u>Joint Position</u>: The parties are continuing to meet and confer. Google maintains that Chrome Device Settings are relevant and responsive to RFP No. 2. Plaintiffs will inform Google by June 1, 2021, whether they will produce Chrome Device Settings. Plaintiffs will provide an amended response to RFP No. 7. | |
| D4 | Google's Requests for Admission Nos. 12 and 14 | <u>Google's Position</u>: Plaintiffs responses to these requests are insufficient: <ul><li>RFA No. 12: Plaintiffs fail to respond to the substance of the Request, which asks them to admit that, during the class period, they *understood* their activity in private browsing mode would not be completely private from everyone. Plaintiffs' response admits that their private browsing activity was not, in fact, private from everyone, but ignores the Request's focus on whether Plaintiffs *understood* that fact during the class period.</li><li>RFA No. 14: this request seeks an admission that Plaintiffs understood their activity might by visible to websites and their internet service provider when browsing in Incognito mode. Plaintiffs' responses are deficient because they fail to address whether Plaintiffs *understood* their activity might still be visible to the websites they visited and their internet</li></ul> | |

| Dispute No. | Dispute | Status as of 5/26/21 Joint Submission | Status as of 6/2/21 Hearing |
|---|---|---|---|
| | | service provider, which is directly requested by the RFA.<br><br>Plaintiffs' Position: Plaintiffs fairly responded to these requests, and have met and conferred with Google on the relevance and scope of them. Plaintiffs maintain that their responses track Google's Incognito Splash Screen in terms of how activity "might" be visible to three identified categories, none of which are Google. In the motion to dismiss ruling, Judge Koh wrote that "the Incognito Splash Screen omits Google from the list of entities that can view a user's activity in private browsing mode." Dkt. 113 at 17. Adding "understood" to this response could be misleading given Google's failure to disclose the data collection at issue, and Plaintiffs' responses are proper. As a compromise, Plaintiffs are willing to admit that the Incognito Splash Screen includes certain statements. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 6/2/21 Hearing |
| P6 4/23/21 | Plaintiffs RFP 10: Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members. | | | |
| P13 4/23/21 | Plaintiffs Interrogatory No. 5: Please IDENTIFY one copy of each version of each and every PUBLIC DISCLOSURE in which a WEBSITE that uses a GOOGLE THIRD-PARTY SERVICE informs USERS that USERS' INFORMATION will be collected (by the WEBSITE or by GOOGLE) notwithstanding the USERS' BROWSER SETTINGS. | Google has refused to respond, notwithstanding the Court's April 30 Order requiring Google to do so. Dkt. 147-1. | The parties have not met and conferred on this Interrogatory, as Plaintiffs only requested to meet and confer on this issue a few days ago. Google served its amended responses and objections to Interrogatory No. 5, among others, on May 12, 2021 in accordance with the Court's Order (Dkt. 147-1) and withdrew its objection to Plaintiffs exceeding the 25-interrogatory limit. The Court made no determination in its April 30 Order as to the propriety of Interrogatory No. 5. The parties are meeting and conferring on this dispute on May 27. | |

| P15<br>5/26/21 | Plaintiffs' RFP 120: Documents sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client Data Header | | | |
|---|---|---|---|---|

Respectfully,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/ Andrew H. Schapiro*

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

BOIES SCHILLER FLEXNER LLP

*/s/ Mark C. Mao*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Sean Phillips Rodriguez (CA Bar No. 262437)
srodriguez@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293 6858
Fax: (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Tel: (305) 539-8400
Fax: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor

1

2

Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736

3

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com

4

MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500

5

San Francisco, CA 94102
Tel: (415) 358-6913

6

*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Discovery Statement. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: May 26, 2021

By _____ */s/ Andrew H. Schapiro* _____
Andrew H. Schapiro
*Counsel on behalf of Google LLC*

JOINT SUBMISSION IN RESPONSE TO DKT. 147, 147-1, 159, 159-1 RE: STATUS OF DISCOVERY DISPUTES