1   Mark C. Mao, CA Bar No. 236165          William Christopher Carmody
    Beko Reblitz-Richardson, CA Bar No. 238027   (admitted *pro hac vice*)
2   **BOIES SCHILLER FLEXNER LLP**          Shawn J. Rabin (admitted *pro hac vice*)
3   44 Montgomery St., 41st Floor           Steven M. Shepard (admitted *pro hac vice*)
    San Francisco, CA 94104                 Alexander Frawley (admitted *pro hac vice*)
4   Tel.: (415) 293-6800                    **SUSMAN GODFREY L.L.P.**
    mmao@bsfllp.com                         1301 Avenue of the Americas,
5   brichardson@bsfllp.com                  32nd Floor
                                            New York, NY  10019
6   James Lee (admitted *pro hac vice*)     Tel.: (212) 336-8330
7   Rossana Baeza (admitted *pro hac vice*) bcarmody@susmangodfrey.com
    **BOIES SCHILLER FLEXNER LLP**          srabin@susmangodfrey.com
8   100 SE 2nd St., 28th Floor              sshepard@susmangodfrey.com
    Miami, FL 33131                         afrawley@susmangodfrey.com
9   Tel.: (305) 539-8400
    jlee@bsfllp.com                         John A. Yanchunis (admitted *pro hac vice*)
10  rbaeza@bsfllp.com                       Michael F. Ram, CA Bar No. 104805
                                            Ryan J. McGee (admitted *pro hac vice*)
11  Amanda K. Bonn, CA Bar No. 270891       **MORGAN & MORGAN**
12  **SUSMAN GODFREY L.L.P**                201 N. Franklin Street, 7th Floor
    1900 Avenue of the Stars, Suite 1400    Tampa, FL 33602
13  Los Angeles, CA 90067                   Tel.: (813) 223-5505
    Tel: (310) 789-3100                     jyanchunis@forthepeople.com
14  Fax: (310) 789-3150                     mram@forthepeople.com
    abonn@susmangodfrey.com                 rmcgee@forthepeople.com
15
16  *Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated, | Case No.:  5:20-cv-03664-LHK |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF THE SECOND AMENDED COMPLAINT** |
| vs. | The Honorable Lucy H. Koh |
| GOOGLE LLC, | Courtroom 8 – 4th Floor |
| Defendant. | Date: September 30, 2021 Time: 1:30 p.m. |

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES.................................................................1

    I.       INTRODUCTION................................................................................................1

    II.     FACTUAL BACKGROUND ...............................................................................2

          A.     Google Promised Plaintiffs that Google Would Not Collect Their Private Browsing Data.............................................................2

          B.     Google Collects and Profits from Plaintiffs' Private Browsing Data..........................................................................................3

          C.     This Court's Denial of Google's Motion to Dismiss Plaintiffs' First Amended Complaint .......................................................4

          D.     Plaintiffs' Amendment Following the *Calhoun* Ruling .............................4

ARGUMENT ......................................................................................................................5

    I.       Plaintiffs State a Breach of Contract Claim ...........................................................5

          A.     Google Breached Promises About Private Browsing on the Splash Screen..................................................................................5

                1.     The Splash Screen is incorporated into the contract .......................5

                2.     The Splash Screen is in any case relevant for interpreting the contract .................................................................7

                3.     With its Splash Screen, Google promised it would not collect private browsing data...........................................8

          B.     Google Breached Promises About Private Browsing in Google's Privacy Policy and the Search & Browse Privately Page.........................12

          C.     Google Breached Promises About Private Browsing in Google's Chrome Privacy Notice .........................................................17

    II.     Plaintiffs State a UCL Claim .................................................................................19

          A.     Plaintiffs Properly Allege UCL Standing.................................................19

                 1.     Under *Calhoun*, the personal information Google unlawfully collected is Plaintiffs' property ...................................19

i

2. The California Legislature has recognized that consumers have a property interest in their personal information ..................................................................................20

3. Google's misappropriation of Plaintiffs' personal information constitutes a taking of property sufficient for UCL standing.................................................................................20

4. The reasoning and the precedents the Court relied on in *Calhoun* apply with equal force here.............................................22

B. Plaintiffs Properly Allege Entitlement to Restitution...............................23

C. Plaintiffs Are Not Required to Allege Reliance for the UCL Claim Asserted Here, and, in any Event, Have Alleged It .......................24

III. CONCLUSION .........................................................................................24

ii

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Beasley v. Conagra Brands, Inc.*,
5     374 F. Supp. 3d 869 (N.D. Cal. 2019)......................................................................24

6

*Blaustein v. Burton*,
    9 Cal. App. 3d 161 (1970)..................................................................................21
7

*Block v. eBay, Inc.*,
8     747 F.3d 1135 (9th Cir. 2014)....................................................................8, 10

9

*Bradach v. Pharmavite, LLC*,
10     735 F. App'x 251 (9th Cir. 2018)......................................................................24

11

*Calhoun v. Google*,
    No. 20-CV-05146-LHK, 2021 WL 1056532 (N.D. Cal. Mar. 17, 2021) (Koh, J.) .........*passim*
12

13

*Cottle v. Plaid, Inc.*,
    20-CV-03056, 2021 WL 1721177 (N.D. Cal. Apr. 30, 2021) .............................21, 22, 23, 24

14

*Davis v. Facebook*,
15     956 F.3d 589 (9th Cir. 2020) ........................................................................*passim*

16

*F.B.T. Productions., LLC v. Aftermath Records*,
    621 F.3d 958 (9th Cir. 2010) .................................................................................8
17

*Founding Members of the Newport Beach Country Club v. Newport Beach*
18     *Country Club, Inc.*,
    109 Cal. App. 4th 944 (2003) .......................................................................8, 10
19

*Frances T. v. Vill. Green Owners Association*,
20     42 Cal. 3d 490 (1986) .........................................................................................10

21

*Great Minds v. Office Depot, Inc.*,
22     945 F.3d 1106 (9th Cir. 2019) .............................................................................8

23

*Hart v. TWC Product & Technology LLC*,
    No. 20-CV-03842, 2021 WL 1032354 (N.D. Cal. Mar. 17, 2021) ..................................21, 22
24

*In re Anthem, Inc. Data Breach Litigation*,
25     162 F. Supp. 3d 953 (N.D. Cal. 2016)...............................................................6, 7, 10

26

*In re Anthem Inc. Data Breach Litigation*,
27     2016 WL 3029783 (N.D. Cal. May 17, 2016)........................................................20

28

iii

*In re Facebook, Inc., Consumer Privacy User Profile Litigation,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019)...............................................................................*passim*

*In re Facebook Privacy Litigation,*
    572 F. App'x 494 (9th Cir. 2014)........................................................................................20

*In re Google Assistant Privacy Litigation,*
    457 F. Supp. 3d 797 (N.D. Cal. 2020).................................................................................14

*In re Google Location History Litigation,*
    No. 5:18-CV-05062-EJD, 2021 WL 519380 (N.D. Cal. Jan. 25, 2021) .................................17

*In re iPhone Application Litigation,*
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)......................................................................23

*In re Marriott International, Inc., Customer Data Security Breach Litigation,*
    440 F. Supp. 3d 447 (D. Md. 2020).................................................................................20, 23

*In re Yahoo! Inc. Customer Data Seurity Breach Litigation,*
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)......................................................................20

*Iqbal v. Ziadeh,*
    10 Cal. App. 5th 1 (2017)...................................................................................................10

*Jerome's Furniture Warehouse v. Ashley Furniture Industries, Inc.,*
    No. 20CV1765-GPC(BGS), 2021 WL 148063 (S.D. Cal. Jan. 15, 2021) .............................24

*Johnson v. Pluralsight, LLC,*
    728 F. App'x 674 (9th Cir. 2018).......................................................................................24

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011)..................................................................................................22, 23

*Marchand v. Northrop Grumman Corp.,*
    No. 16-CV-06825-BLF, 2017 WL 2633132 (N.D. Cal. June 19, 2017)..................................7

*Miron v. Herbalife International Inc.,*
    11 F. App'x 927 (9th Cir. 2001)..........................................................................................10

*Mountain F. Enterprises, Inc. v. Wiarcom, Inc.,*
    No. 2:19-CV-02023-JAM-CKD, 2020 WL 1547442 (E.D. Cal. Apr. 1, 2020).......................7

*Pemberton v. Nationstar Mortgage,*
    331 F. Supp. 3d 1018 (S.D. Cal. 2018) ...............................................................................19

*Principal Mutual Life Insurance Co. v. Vars, Pave, McCord & Freedman,*
    65 Cal. App. 4th 1469 (1998).............................................................................................12

iv

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ........................................................................................ 23, 24

*Rodman v. Safeway, Inc.*,
    No. C 11-03003 JSW, 2011 WL 5241113 (N.D. Cal. Nov. 1, 2011) .................................. 8, 9

*Sageser v. Stewart Title of Seattle*,
    LLC, No. C09-582-RAJ, 2010 WL 11682499 (W.D. Wash. Sept. 20, 2010) ...................... 12

*Santa Clara Waste Water Co. v. Allied World National Assurance Co.*,
    18 Cal. App. 5th 881 (2017) .................................................................................................. 11

*Shaw v. Regents of University of California*,
    58 Cal. App. 4th 44 (1997) ................................................................................................. 1, 5

*SunPower Corp. v. SolarCity Corp.*,
    No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .............................. 20

*Turlock Irrigation District v. FERC*,
    903 F.3d 862 (9th Cir. 2018) ................................................................................................ 19

*Wal-Noon Corp. v. Hill*,
    45 Cal. App. 3d 605 (1975) .................................................................................................. 10

*Williams v. Apple Inc.*,
    No. 19-CV-04700-LHK, 2021 WL 2186223 (N.D. Cal. May 28, 2021) (Koh, J.) ................ 9

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* ...................................................................................... 24

California Consumer Privacy Act ................................................................................ 20, 21, 22

California Privacy Rights Act ............................................................................................ 21, 22

**Other Authorities**

Restatement (Second) of Contracts § 211 ...................................................................................... 9

1

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3      After this Court denied Google's motion to dismiss Plaintiffs' First Amended Complaint

4   (Dkt. 113) and Google's motion to dismiss the breach of contract and UCL claims asserted in

5   *Calhoun v. Google*, Plaintiffs filed a Second Amended Complaint (Dkt. 136-1) adding breach of

6   contract and UCL claims in this case.  Plaintiffs' two new claims rely on the same conduct and

7   representations this Court considered when it denied Google's previous motion to dismiss, and

8   Plaintiffs' allegations are consistent with allegations this Court already deemed sufficient to plead

9   these two claims in *Calhoun*.  There is no basis for Google's motion to dismiss either claim.

10     Google does not deny that its relationship with Plaintiffs and putative class members is

11  governed by contract, nor that this contract includes and/or incorporates Google's Chrome Privacy

12  Notice, Privacy Policy, and Search & browse privately webpage.  SAC ¶ 268.  These are the same

13  materials that Google relied upon in its previous motion to dismiss, arguing that Plaintiffs

14  "consented to Google's Terms of Service and Privacy Policy."  Dkt. 82 at 10.  Google likewise

15  pointed to the "conspicuous full-screen" Splash Screen that Google presents to users "every time

16  they open[] an Incognito window," which according to Google "ma[kes] clear [w]hat private

17  browsing means."  *Id.* at 10.

18     Google now retreats from the Splash Screen, claiming that it has nothing to do with the

19  contract.  This is presumably because this Court disagreed with Google's interpretation of the

20  Splash Screen, holding that "a user might have reasonably concluded [from the Splash Screen]

21  that Google would not see his or her [private browsing] activity."  Dkt. 113 at 17.  But multiple

22  documents within the Google contract "guide" the reader to the Splash Screen, thus incorporating

23  it into the contract.  *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54, 67 (1997).  While

24  Google's Splash Screen is part of the Google contract, it is in any case relevant in terms of

25  construing Google's promises, which Google breached.

26

27

1

28

1    Plaintiffs also state a contract claim based on Google's promises within Google's Privacy

2   Policy, Chrome Privacy Notice, and Search & browse privately webpage.  SAC ¶¶ 268-72.  In

3   both the Privacy Policy and Search & browse privately webpage, Google promised users "control"

4   over Google's data collection and invited users to exercise that "control" by browsing privately.

5   SAC ¶¶ 42, 271.  The Chrome Privacy Notice also promised that, within Incognito mode, "Chrome

6   won't store certain information, such as: Basic browsing history."  SAC ¶ 269.  Google breached

7   those promises by collecting that private browsing information, using users' devices and Chrome

8   to store and transfer that private browsing information to Google servers.  Google tries to sidestep

9   these promises by focusing on different provisions that describe how private browsing supposedly

10  provides privacy from one's family.  But Google did not just promise privacy from one's family.

11  Google also promised privacy *from Google*.  Whether Google upheld the former cannot excuse a

12  breach of the latter.

13    There is also no basis to dismiss Plaintiffs' UCL claim.  Google asks this Court to disregard

14  its prior order in *Calhoun v. Google*, No. 20-CV-05146-LHK, 2021 WL 1056532, at *18 (N.D.

15  Cal. Mar. 17, 2021) (Koh, J.).  *Calhoun* was correctly decided, and it controls here.  As in *Calhoun*,

16  Plaintiffs allege a property interest in their data and that Google's conduct deprived them of that

17  property and diminished its value.  SAC ¶¶ 282-83.

18  **II.**    **FACTUAL BACKGROUND**

19       **A.**    **Google Promised Plaintiffs that Google Would Not Collect Their Private Browsing Data**

20

21    Plaintiffs are Google account holders who chose to use private browsing modes, including

22  Google's Incognito mode, based on Google's representations about private browsing.  SAC ¶ 3.

23  Google uniformly assured Plaintiffs and others that they were "in control of what information

24  [they] share with Google" and that they could adjust their privacy settings "across [Google's]

25  services" to "control what [Google] collect[s] and how [their] information is used."  SAC ¶¶ 2, 42.

26  To exercise this "control," Google invited users to "browse the web privately," including within

27  Google's Incognito mode and other private browsing modes.  SAC ¶ 42.  Google told users that

28

2

1    within Incognito mode, "Chrome won't store certain information, such as: Basic browsing history

2    information."  SAC ¶ 269.  And when users selected Incognito mode, they were automatically

3    taken to a Google pop-up Splash Screen that further assured them that only certain categories of

4    third parties "might" be able to view their activity without identifying Google as an entity that

5    might (or in fact would) collect their private browsing data.  SAC ¶ 52; Dkt. 82 at 2.  According

6    to Google's Splash Screen, only three entities, excluding Google, "might" be privy to users' private

7    browsing activity.  SAC ¶ 52.  Based on these representations, Plaintiffs reasonably believed that

8    Google would not collect or make a use of their private browsing data.  SAC ¶¶ 3, 41-43, 53, 269,

9    271.

10           These Google promises were contractual.  Google's relationship with users is governed by

11   the Google Terms of Service, the Google Chrome and Chrome OS Additional Terms of Service,

12   and the Chrome Privacy Notice.  SAC ¶ 268.  And this contract incorporates Google's Privacy

13   Policy, a webpage titled "Search & browse privately," and the Splash Screen.  SAC ¶ 268.

14           **B.      Google Collects and Profits from Plaintiffs' Private Browsing Data**

15           In breach of its promises, Google's software scripts (pieces of Google code embedded

16   within websites that use Google for analytics and advertising services) cause users' browsers to

17   surreptitiously send copies of their private browsing communications to Google's servers.  SAC

18   ¶ 5.  The data sent to Google shows the precise content the user is asking a website to display, as

19   well as a referrer header containing the URL information of what the user has been viewing and

20   requesting from other websites.  SAC ¶¶ 5, 63.  Google admits that it intercepts and collects this

21   data even when Plaintiffs are in a private browsing mode.  Motion to Dismiss SAC ("Mot.") at 1-

22   2, Dkt. 164.

23           Google collects this data because it is very valuable.  Its value can be (and has been)

24   quantified, and there is a market for it.  SAC ¶¶ 123-28.  A number of platforms now allow

25   consumers to monetize their browsing data, and Google would have to pay for this data but for

26   Google's improper collection of it.  SAC ¶¶ 135, 138.  Google's conduct is particularly egregious

27

28
                                                     3

because users' private browsing data reveals sexual interests, political views, and other deeply sensitive, private information.  SAC ¶ 162.  Google uses that private browsing data to charge advertisers and websites more for its services.  SAC ¶¶ 115-16.  Google thus generates billions of dollars in illicit profits each year.  SAC ¶ 1.

### C.   This Court's Denial of Google's Motion to Dismiss Plaintiffs' First Amended Complaint

In denying Google's motion to dismiss Plaintiffs' First Amended Complaint, this Court already assessed the Google promises cited above, and held that "based on Google's representations regarding private browsing, Plaintiffs could have reasonably assumed that Google would not receive their data while they were in private browsing mode." Dkt. 113 at 36.

### D.   Plaintiffs' Amendment Following the *Calhoun* Ruling

Plaintiffs filed their Second Amended Complaint following this Court's denial of Google's motions to dismiss in both this case and in the related *Calhoun* case.  The *Calhoun* plaintiffs are users of the Chrome browser who allege, in part, that they chose not to "Sync" their browsers with their Google accounts based on a promise in the Chrome Privacy Notice that Google would not receive users' personal information so long as they did not turn on "sync" mode.  2021 WL 1056532, at *18.  This Court denied Google's motion to dismiss the *Calhoun* plaintiffs' contract claim, reasoning that the Chrome Privacy Notice is part of a user's contract with Google and that statements within the Chrome Privacy Notice "could have led a reasonable user to conclude that, because they did not sync, Google would not receive their personal information." *Id.*  This Court also denied Google's motion to dismiss the UCL claim for lack of statutory standing, explaining that "the Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing." *Id.* at *22.

Consistent with the *Calhoun* ruling, Plaintiffs amended their complaint to add a breach of contract claim (Count Six), relying on the same representations this Court addressed in the prior order in this case.  SAC ¶¶ 267-76.  Plaintiffs also added a UCL claim (Count Seven)—predicated

4

1   on Google's unlawful and unfair conduct, including Google's violation of the laws discussed in

2   the prior order.  SAC ¶¶ 277-84.

3   **ARGUMENT**

4   **I.      Plaintiffs State a Breach of Contract Claim**

5          "The elements for breach of contract under California law are: (i) the existence of a

6   contract; (ii) the plaintiff's performance or excuse for nonperformance of its side of the agreement;

7   (iii) the defendant's breach; and (iv) resulting damage to the plaintiff."  *In re Facebook, Inc.,*

8   *Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019).  Google does not

9   dispute that its relationship with Plaintiffs is governed by contract, nor that the contract is

10  comprised of and/or incorporates the Chrome Privacy Notice, the Privacy Policy, and the Search

11  & browse privately page.  Google instead raises meritless arguments attempting to evade promises

12  contained in its Incognito Splash Screen and other contractual documents.

13          **A.      Google Breached Promises About Private Browsing on the Splash Screen**

14                  1.      The Splash Screen is incorporated into the contract

15  Google's Chrome Privacy Notice and Privacy Policy each incorporate the Splash Screen

16  by directing users to it.  "For the terms of another document to be incorporated into the document

17  executed by the parties the reference must be clear and unequivocal, the reference must be called

18  to the attention of the other party and he must consent thereto, and the terms of the incorporated

19  document must be known or easily available to the contracting parties."  *Shaw v. Regents of Univ.*

20  *of Cal.*, 58 Cal. App. 4th 44, 54 (1997).  "The contract need not recite that it 'incorporates' another

21  document, so long as it guides the reader to the incorporated document."  *Id.*

22          Google's Chrome Privacy Notice (which is indisputably part of the contract) invites users

23  to "us[e] incognito mode," thus "guid[ing] the reader" to the Splash Screen.  *Shaw*, 58 Cal. App.

24  4th at 54; Exs.[1] 20 at 9-10, 21 at 8-9, 22 at 11-12.  And Google's Privacy Policy, incorporated into

25

26  [1] Unless otherwise noted, "Ex." refers to the exhibits attached to the Declaration of Andrew H. Schapiro in support of Google's Motion to Dismiss Counts Six and Seven of the SAC.  Dkt. 165.

27

28

PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF THE
SECOND AMENDED COMPLAINT
Case No. 5:20-cv-03664-LHK

1    the contract,[2] invites users to "choose to browse the web privately using Chrome in Incognito

2    mode," likewise "guid[ing] the reader" to the Splash Screen. Exs. 8 at 2, 9 at 2, 10 at 2, 11 at 2,

3    12 at 2, 13 at 2, 14 at 2, 15 at 2, 16 at 2.  In its prior motion to dismiss, Google described the Splash

4    Screen as a "conspicuous," "full-screen" notice "shown to Plaintiffs every time they opened an

5    Incognito window or tab" that is "presented precisely to ensure users understand what Incognito

6    mode means."  Dkt. 82 at 10; Dkt. 92 at 4; *see also* SAC ¶¶ 52-53.  Google therefore did not just

7    guide users to the Splash Screen; Google made sure that users saw it and understood the terms

8    governing Incognito mode, each and every time they opened an Incognito window.

9         Google's reliance on *Davis v. Facebook*, 956 F.3d 589 (9th Cir. 2020) is misplaced.  The

10   *Davis* court ruled that Facebook's Statement of Rights and Responsibilities ("SRR") did not

11   incorporate a new Data Use Policy on the ground that the SRR did not guide users to the Data Use

12   Policy.  *Id.* at 610.  The SRR instead directed users to an older version of the Data Use Policy,

13   called the "Privacy Policy."  *Id.*  The Ninth Circuit explained: "Although the [SRR] directs readers

14   to the Privacy Policy, Plaintiffs rely on the latest version of this document, titled 'Data Use Policy'

15   . . . .  The [SRR] does not reference a Data Use Policy and *thus, it does not guide the reader* to the

16   incorporated document on which Plaintiffs rely."  *Id.* (emphasis added).

17        Here, by contrast, Plaintiffs do not rely on any outdated reference.  The contract currently

18   and at all relevant times "guide[s] the reader" to the Splash Screen, inviting people to use Incognito

19   mode and consequently be shown the "conspicuous" Splash Screen "every time [they] open[] an

20   Incognito window or tab."  Dkt. 82 at 10.  *Davis* supports Plaintiffs' position, as Plaintiffs seek

21   incorporation of what was at all times the latest version of Google's Splash Screen.  Google's

22   reliance on *In re Anthem, Inc. Data Breach Litigation* is also misplaced, particularly because the

23   plaintiffs in that case "ma[de] no attempt to connect the [allegedly incorporated] language . . . with

24   the terms of Plaintiffs' alleged contracts."  162 F. Supp. 3d 953, 980 (N.D. Cal. 2016) (Koh, J.).

25   Here, the connection is clear.

26   _____

     [2] *See infra* section I.B.

27

28                                                6

1    That the Chrome Privacy Notice and Privacy Policy do not explicitly mention Google's

2    Splash Screen is of no moment. "Under California law, the incorporation by reference doctrine is

3    not one to prioritize form over substance." *Mountain F. Enters., Inc. v. Wiarcom, Inc.*, No. 2:19-

4    CV-02023-JAM-CKD, 2020 WL 1547442, at *3 (E.D. Cal. Apr. 1, 2020). "Indeed, California

5    case law makes it quite easy to incorporate a document by reference." *In re Facebook, Inc.,*

6    *Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019).

7    A document can be incorporated into the contract even when the contract does not

8    explicitly mention the document. For example, in *Marchand v. Northrop Grumman Corp.*, this

9    Court held that a document was incorporated into a contract notwithstanding that the contract

10   referred to the document by the wrong name. "[I]t [was] enough that the [contract] directed" the

11   plaintiff to the document and that the plaintiff "received the document." No. 16-CV-06825-BLF,

12   2017 WL 2633132, at *5 (N.D. Cal. June 19, 2017). Similarly, Google "directed" Plaintiffs to the

13   Splash Screen and ensured that Plaintiffs received it, every time they started Incognito mode.

14                     2.    The Splash Screen is in any case relevant for interpreting the contract

15   Even if the Court were to accept Google's argument that the Chrome Privacy Notice and

16   Privacy Policy do not incorporate the Splash Screen, those documents should still be construed

17   consistent with the Splash Screen or to include implied terms consistent with the Splash Screen.

18   SAC ¶ 268. The Splash Screen reiterates what Google represented to users in Google's Chrome

19   Privacy Notice and Privacy Policy. Even Google previously took this position: "any

20   misunderstanding Plaintiffs allege they had about the Privacy Policy's disclosures would have

21   been definitively resolved by the *full-page* [Splash Screen]—shown to Plaintiffs *every time* they

22   used [Incognito] mode." Dkt. 92 at 1 (emphases in original). Similarly, this Court already held

23   that "Google's representations regarding private browsing," including on the Splash Screen,

24   "present private browsing as a way that users can manage their privacy and omit Google as an

25   entity that can view users' activity while in private browsing mode." Dkt. 113 at 16. Having

26   previously relied on the Splash Screen, on the basis that it reflected an agreement between Google

27

28

7

1    and users, Google's attempt to now shun the Splash Screen is both irrelevant and puzzling, and it

2    should be rejected.

3            Google's discussion of the parol evidence rule also misses the mark.  Mot. at 6-7.  As one

4    of Google's cases explains, the "test of admissibility of extrinsic evidence to explain the meaning

5    of a written instrument is not whether it appears to the court to be plain and unambiguous on its

6    face, but whether the offered evidence is relevant to prove a meaning to which the language of the

7    instrument is reasonably susceptible."  *Founding Members of the Newport Beach Country Club v.*

8    *Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955 (2003).  Google's interpretation

9    of the relevant contractual provisions should be rejected for the reasons described below.  But to

10   the extent this Court concludes that the provisions are reasonably susceptible to both Google's and

11   Plaintiffs' respective interpretations, this Court may consider the Splash Screen.  *See Rodman v.*

12   *Safeway, Inc.*, No. C 11-03003 JSW, 2011 WL 5241113, at *2 (N.D. Cal. Nov. 1, 2011) (on a

13   motion to dismiss, considering FAQs to resolve a "dispute . . . over the meaning of contract

14   language" because "at a minimum at this procedural stage, the Court finds that the language

15   regarding prices in the contract is reasonably susceptible to both parties' interpretations").  For

16   these and other reasons, Google's cases are inapposite.[3]

17              3.    With its Splash Screen, Google promised it would not collect private
                     browsing data
18
19          "[T]he contract language must be assessed objectively, from the perspective of a reasonable

20   [Google] user."  *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at

21   [3] In *Great Minds v. Office Depot, Inc.*, neither party argued that the contract incorporated another
     document nor that the contract should be construed consistent with a separate document.  945 F.3d
22   1106, 1110 (9th Cir. 2019).  The same is true of *Block v. eBay, Inc.*, 747 F.3d 1135, 1139 (9th Cir.
     2014).  To the extent *Block* is relevant, *Block* suggests that the Splash Screen contained enforceable
23   promises.  The Ninth Circuit in *Block* ruled that the provisions at issue were not enforceable
     because they did not "contain explicit promissory language," and the court distinguished other
24   provisions that used phrases such as "you will not" or "we will."  *Id.*  The Splash Screen uses
     promissory language, including "Chrome *won't* save" and "you can."  SAC ¶ 52.  Finally, *F.B.T.*
25   *Productions., LLC v. Aftermath Records* is inapposite because the extrinsic evidence was industry
     custom and the parties' course of performance.  621 F.3d 958, 966 (9th Cir. 2010).
26

27                                                      8

28

789.  "[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it." *Williams v. Apple Inc.*, No. 19-CV-04700-LHK, 2021 WL 2186223, at *5 (N.D. Cal. May 28, 2021) (Koh, J.) (citing Restatement (Second) of Contracts § 211(2) cmt. e).  Here, this Court has already held that a reasonable user could interpret Google's Splash Screen to mean that Google would not collect private browsing data.  *See* Dkt. 113 at 17 ("Based on the omission of Google from the list of entities that can see a user's activity, a user might have reasonably concluded that Google would not see his or her activity."); *id.* at 18 ("[A] reasonable user could have read this sentence [on the Splash Screen] to state that Incognito mode provided privacy from Google and privacy from other people who use the same device."); *id.* ("[A] reasonable user could read [another] statement [on the Splash Screen] to mean that their browsing history . . . would not be saved.").  There is nothing left for this Court to assess.  *See Rodman*, 2011 WL 5241113, at *3 (denying motion to dismiss breach of contract claim "[b]ecause Plaintiff adequately alleges the existence of a contract, which both parties construe to be binding, and which is susceptible to Plaintiff's reasonable construction").

Google does not even offer a competing interpretation of its Splash Screen.  Instead, Google raises a slew of meritless arguments, many of which do not even apply.  First, Google asserts that Plaintiffs must "allege the specific provisions in the contract" establishing the obligation breached.  Mot. at 7.  Plaintiffs point to three such provisions on the Splash Screen:

- Google promised users that "You've gone incognito" and "Now you can browse privately," and yet Google continued to collect and track users' private browsing data.  SAC ¶ 53.
- Google promised that "Chrome won't save . . . [y]our browsing history . . . cookies and site data" and yet "Google's code continues to send the user's browsing history and other data directly to Google's servers."  SAC ¶ 54.
- Google promised that the only entities to whom a user's "activity might still be visible" are "the websites you visit[,] [y]our employer or school[, and] [y]our internet service provider," and yet users' activity is actually visible to Google.  SAC ¶ 56.

1    The cases Google cites are inapposite because the plaintiffs in those cases did not identify any

2    provisions in the relevant contracts. Mot. at 2, 7.[4]

3         Google next claims that "[i]t is not the parties' subjective intent that matters, but rather

4    their objective intent, as evidenced by the words of the contract." Mot. at 8. Plaintiffs do not rely

5    on any "subjective intent." Plaintiffs rely on "the words of" the Splash Screen, *Block*, 747 F.3d at

6    1138, which is incorporated into the contract. *Newport Beach*, 109 Cal. App. 4th at 944 and *Iqbal*

7    *v. Ziadeh*, 10 Cal. App. 5th 1 (2017) are distinguishable because those cases addressed a party's

8    attempt to vary the terms of a written contract through extrinsic evidence. Here, Google does not

9    (and cannot) argue that the Splash Screen is inconsistent with the other contractual documents.[5]

10        Google also suggests that Plaintiffs cannot "argue that certain promises were implied"

11   because, according to Google, "that would contradict [Plaintiffs'] allegation that the alleged

12   contract was reduced to writing." Mot. at 8. But as Google's own case law explains, "[t]hat which

13   is necessarily implied in the language of a contract is as much a part of it as that which is

14   expressed." *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 611 (1975). To the extent this Court

15   agrees with Google regarding incorporation, then the Splash Screen establishes an implied contract

16

17   [4] The plaintiffs in *In re Anthem, Inc. Data Breach Litigation* did "not refer to any contractual
     language or any contractual provisions that the [] Defendants allegedly breached." 162 F. Supp.
18   3d at 979. Likewise, in *Frances T. v. Vill. Green Owners Association*, the plaintiff did "not allege
     that any provision" in the contract imposed the purported obligation at issue. 42 Cal. 3d 490, 512
19   (1986). In *Miron v. Herbalife Int'l, Inc.*, the plaintiff relied on documents that imposed obligations
     on entirely different entities—not the defendant. 11 F. App'x 927, 929 (9th Cir. 2001). And the
20   contract claim in *Davis v. Facebook* was dismissed because the plaintiffs relied on a document that
     was not incorporated into the contract, as discussed above. 956 F.3d at 610.
21

22   [5] These two cases more appropriately fit with Google's argument that the contract should not be
     construed "consistent with" the Splash Screen (assuming the Splash Screen is not incorporated).
23   Mot. at 6. But they do not support that argument either. In *Newport Beach*, the extrinsic evidence
     offered by the plaintiffs—a letter written two years before the operative contract—actually
24   supported the defendant's interpretation of the contract. 109 Cal. App. 4th at 960. Google, by
     contrast, does not even contend that the Splash Screen supports its interpretation of the contract.
25   And the Splash Screen is nothing like the extrinsic evidence in *Iqbal*, namely, a declaration from
     the defendant's attorney attesting to his own "subjective intent" when he drafted the contract. 10
26   Cal. App. 5th at 12.

27                                                    10

28

1    whereby Google promised not to collect private browsing data.  "Where there is both an express

2    and implied contract, relief is available under an implied contract if the material terms do not

3    conflict with the express contract."  *Santa Clara Waste Water Co. v. Allied World Nat'l Assurance*

4    *Co.*, 18 Cal. App. 5th 881, 889 (2017).  There is no conflict here.  As explained above, the Splash

5    Screen reiterates what Google represented to users in Google's Chrome Privacy Notice and

6    Privacy Policy.

7         Finally, Google states that an "alleged failure to disclose a practice cannot give rise to

8    contract liability."  Mot. at 9.  But Plaintiffs allege more than a mere failure to disclose.  Google's

9    Splash Screen promised that Google would not collect private browsing data, and Google breached

10   this promise.  *See* SAC ¶¶ 52-56, 271-72.  The Court's recent decision in *Calhoun v. Google* is

11   instructive.  2021 WL 1056532, at *18.  This Court denied Google's motion to dismiss the contract

12   claim, reasoning that statements in the Chrome Privacy Notice "could have led a reasonable user

13   to conclude that, because they did not sync, Google would not receive their personal information."

14   *Id.*  The same outcome is warranted here, particularly because this Court already held that Google

15   "made representations [including on the Splash Screen] that could suggest to a reasonable user that

16   the data would not be shared with Google while the user was in private browsing mode."  Dkt. 113

17   at 38; *see also id.* at 17-18 (analyzing the Splash Screen's "three relevant representations regarding

18   private browsing mode," and holding that a "reasonable user" could interpret them to mean that

19   Google would not collect private browsing data).[6]

20

21

---

22   [6] Google argues in a footnote that Plaintiffs do not allege that Google breached the Splash Screen's
     "Chrome won't save . . ." promise.  Mot. at 9 n.5.  Google is wrong.  *See* SAC ¶¶ 53-54.  Google's
23   argument that "Chrome" is defined to mean something other than Google also fails.  Mot. at 9 n.5.
     As a threshold matter, the purported definition of "Chrome" that Google cites is expressly limited
24   to the use of "Chrome" within the Chrome Privacy Notice.  Ex. 22 at 1.  More fundamentally,
     Google's argument ignores Plaintiffs' allegation that Chrome duplicates and saves a copy of the
25   browsing history remotely on Google servers.  SAC ¶¶ 5, 63, 64.  Google therefore does save the
     data, including by sending it out for saving remotely on Google servers.  *See infra* section I.C.
26

27                                                      11

28

1        *In re Facebook, Inc., Consumer Privacy User Profile Litigation* does not support Google's

2    motion.  402 F. Supp. 3d at 801.  In that case, the court dismissed the contract claim as to one

3    aspect of the challenged conduct because "Facebook began disclosing this practice in its

4    contractual language" years earlier.  *Id.*  Here, Google never disclosed its collection of private

5    browsing data.  And *Davis v. Facebook*, 956 F.3d at 610, and *Sageser v. Stewart Title of Seattle*,

6    LLC, No. C09-582-RAJ, 2010 WL 11682499, at *2 (W.D. Wash. Sept. 20, 2010) are

7    distinguishable because the plaintiffs in those cases relied exclusively on documents that were not

8    incorporated into the contract.[7]  The claim in this case is based on documents that are indisputably

9    part of the contract, including the Chrome Privacy Notice.  *See infra* Section I.C.

10       **B.    Google Breached Promises About Private Browsing in Google's Privacy Policy
                 and the Search & Browse Privately Page**

11       Setting the Splash Screen entirely aside, Plaintiffs state a contract claim based on Google's

12   Privacy Policy and Search & browse privately webpage.  As detailed in the SAC, Google's Privacy

13   Policy promises that private browsing mode (including Incognito mode) prevents Google from

14   collecting the data it typically collects by way of the services it provides to websites:

15   - "[A]cross *our services*, you can adjust your privacy settings to ***control what we collect***
       and how your information is used."
16   - "You can use *our services* in a variety of ways to manage your privacy.  For example, . .
       . [y]ou can [] choose to browse the web privately using Chrome in Incognito mode."
17
     - "***Our services*** include . . . [p]roducts that are integrated into third-party apps and sites . . ."
18
     SAC ¶¶ 42, 45, 271; Ex. 8 at 1 (emphases added).  In denying Google's previous motion to dismiss,
19
     this Court already considered and ruled upon these Google promises.  *See* Dkt. 113 at 19 (citing
20
     the same three statements, and holding that "Plaintiffs allege that, in reality, private browsing does
21
     not permit them to manage their privacy or control what Google collects because Google collects
22
     this information even when they use private browsing mode."); *id.* at 29 ("Plaintiffs . . . allege that
23
     Google violated its own internal policies with regard to privacy," including the Privacy Policy).
24

25   _____
     [7] *Principal Mutual Life Insurance Co. v. Vars, Pave, McCord & Freedman* is even further afield.
26   65 Cal. App. 4th 1469, 1483 (1998).  That case was about the enforceability of a lease's attornment
     clause under the doctrine of third-party beneficiaries.
27
                                              12
28   _____

1    Similarly, Google's Search & browse privately page, which is also incorporated into the

2    contract,[8] promises that users can "control" what information Google collects by choosing to

3    browse privately:

4    - "You're in control of what information you share with Google when you search.  To browse
         the web privately, you can use private browsing . . . ."

5    SAC ¶¶ 42, 48, 271, Ex. 23 at 1.  As with the Privacy Policy, this Court already interpreted

6    Google's Search & browse privately page.  *See* Dkt. 113 at 29 (citing this page as an example of

7    how "Google violated its own internal policies with regard to privacy"); *id.* at 18 (quoting from

8    this page and explaining that "Plaintiffs allege that, in reality, users are not in control of what

9    information they share with Google when they use private browsing mode").

10    Google argues that "Plaintiffs should not be permitted to state a contract claim based on

11    the Privacy Policy after March 31, 2020"—when Google amended its Terms of Service.  Mot. at

12    10.  However, the Chrome Privacy Notice (which is indisputably part of the contract) separately

13    incorporates the Privacy Policy, including during the period after March 31, 2020.  It provides

14    hyperlinks to the Privacy Policy and explains that "Regardless of where your information is

15    processed, we apply the same protections described in the Google Privacy Policy."  Frawley Decl.

16    Ex. A[9] at 16; *see also* Ex. 22 at 17 ("Information that Google receives when you use Chrome is

17    used and protected under the Google Privacy Policy"); Frawley Decl. Ex A at 16 (same).  The

18    Chrome Privacy Notice has incorporated the Google Privacy Policy throughout the Class Period.

19

20    [8] Google does not challenge Plaintiffs' allegation that the contract incorporates the Search &

21    browse privately page.  SAC ¶ 268.  The Privacy Policy invites users to "search and browse
      privately," and that language contains a hyperlink to the "Search & browse privately" page.  *See*
      Exs. 8 at 21, 9 at 21, 10 at 22, 11 at 23, 12 at 24, 13 at 26, 14 at 26, 15 at 26, 16 at 26.  The Privacy

22    Policy therefore "guide[s] the reader" to the Search & browse privately page.  *Davis*, 956 F.3d at

23    610.

24    [9] Google's Request for Judicial Notice omits the current version of the Chrome Privacy Notice,

25    which was amended on January 15, 2021.  The current version is attached to the Declaration of
      Alexander Frawley, concurrently filed herewith.  Plaintiffs have submitted a Request for Judicial

26    Notice concerning this version of the Chrome Privacy Notice.  Both this version and the prior
      versions incorporate the Privacy Policy by reference.

27

28

1  *See* Ex. 21 at 12 (same); Ex. 20 at 2 ("The Google Privacy Policy describes how we treat personal

2  information when you use Google's products and services, including when you use Chrome

3  browser and Chrome OS to access those products and services.").[10]

4      In any event, Google has admitted, in this case and others, that the pre-March 2020 Terms

5  of Service incorporated the Privacy Policy.  *See* Dkt. 82 at 5 ("The ToS in effect during [the

6  beginning of the Class Period] required Plaintiffs to consent to Google's Privacy Policy."); *see*

7  *also* Ex. 17 at 4 ("By using our Services, you agree that Google can use such data in accordance

8  with our privacy policies."); Ex. 18 at 3 (same); *In re Google Assistant Privacy Litig.*, 457 F. Supp.

9  3d 797, 831 (N.D. Cal. 2020) ("[Google] do[es] not dispute that the TOS and the Privacy Policy

10  are binding agreements to which they are parties.  Hence, there is no dispute that any provisions

11  contained therein would be actionable in Plaintiffs' breach of contract claim.").   Therefore, any

12  breaches of the Google Privacy Policy are actionable as to all private browsing modes through, at

13  a minimum, March 30, 2020.[11]  *Calhoun* did not hold to the contrary.[12]

14

15  _____

16  [10] The Chrome Privacy Notice is one of the "service-specific additional terms" that "govern" when there is a conflict with the Terms of Service.  Ex. 19 at 14; *see also Calhoun*, 2021 WL 1056532,

17  at *19 (recognizing the Chrome Privacy Notice as one of the "service-specific additional terms" incorporated into the Terms of Service).

18  [11] Google also argues that Plaintiffs should not be permitted to rely on the Privacy Policy because,

19  according to Google, Plaintiffs have not alleged that they agreed to be bound by it.  Mot. at 10. This is a bizarre argument for Google to make, given Google's insistence throughout this and other

20  litigation (and presumably with regulators and others) that its Privacy Policy is an enforceable contract.  In any case, "California law requires the Court to assume as a legal matter . . . that users

21  reviewed, understood, and agreed to all . . . contractual terms when they signed up for their accounts."  *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 777.  If

22  the Court had agreed with Google's arguments about the Privacy Policy in its motion to dismiss the FAC, surely Google would not care whether Plaintiffs acknowledged their agreement to it.

23  Google's stray remark about Plaintiffs' discovery responses is irrelevant for the same reason.  It is also incorrect.  Plaintiffs have amended their responses to clarify that they consented to the then-

24  current Privacy Policy when they signed up for their Google accounts.

25

26  [12] In *Calhoun*, this Court merely noted that "a reasonable user consenting to Google's Terms of Service on or after March 31, 2020 might have concluded that she was not consenting to Google's

27  Privacy Policy."  2021 WL 1056532, at *8.

14

28  _____

1    Google next argues that the Privacy Policy and the Search & browse privately page do not

2    promise that Google will not collect private browsing data.  Mot. at 10-11.  According to Google,

3    these documents merely failed to disclose Google's collection of private browsing data.  *Id.*  For

4    support, Google mischaracterizes a number of statements from this Court's Order denying

5    Google's motion to dismiss the FAC.  *See* Mot. at 10-11.  For example, Google partially quotes

6    this Court's reference to a "general disclosure [that] never mentions private browsing."  Dkt. 113

7    at 16.  In fact, that statement by the Court had nothing to do with any of the language at issue now.

8    That statement addressed separate language in the Privacy Policy to which Google pointed in

9    support of its consent defense, which the Court rejected.  Similarly, Google quotes two snippets

10   from a sentence of this Court's prior Order while omitting a key part.  Here is the full sentence,

11   with the omitted part in bold.  "In addition to Google's failure to mention private browsing,

12   Google's representations regarding private browsing **present private browsing as a way that**

13   **users can manage their privacy** and omit Google as an entity that can view users' activity while

14   in private browsing mode."  Dkt. 113 at 16.  Google also quotes this Court's statement about a

15   "webpage [linked to the Privacy Policy] never references Google."  Dkt. 113 at 18 (alteration by

16   Google).  But this statement addressed Ex. 19 to Google's motion to dismiss the FAC (Ex. 24 to

17   this Motion).  Exhibit 24 is not the basis for any claim in either the FAC or SAC.

18   Google also argues that the statements on which Plaintiffs rely are "too generalized" to

19   support a breach of contract claim, including the Privacy Policy's promise about users being able

20   to "control what we collect."  Mot. at 11.  Google claims that this statement "refers to several

21   privacy settings," and that Google "does provide privacy settings that offer users control."  *Id.*  But

22   this case is not about other privacy settings that (purportedly) function as described.  Whether

23   Google offered other controls has no bearing on whether Google breached its promise to users that

24   private browsing is a way to control the data that Google collects.

25   Google's argument about the Search & browse privately page fails for similar reasons.

26   Google references other statements on this page that Plaintiffs do not allege were breached, and

27

28
                                                    15

1    Google criticizes Plaintiffs for failing to do so.  Mot. at 12.  But Plaintiffs need not allege that

2    Google breached every single representation about private browsing, such as disclosures about

3    how private browsing provides privacy within a household.  What matters is that Google presented

4    private browsing as a means for users to control the data that Google collects, but then Google

5    collected private browsing data anyway, in violation of its promises.

6          Google's reliance on the "How private browsing works in Chrome" page is also unavailing.

7    Mot. at 12-13 (citing Ex. 24).  As a threshold matter, this exhibit is not properly before the Court.[13]

8    More fundamentally, Google claims that Exhibit 24 "clarifies how Incognito mode provides

9    'control,'" but the word "control" appears nowhere in Exhibit 24.  Rather, Exhibit 24, like

10   Google's Splash Screen, provides a list of entities that "might" see a user's private browsing

11   activity, and omits Google from the list.  That is why this Court rejected Google's reliance on this

12   document in its Order denying Google's motion to dismiss the First Amended Complaint.  Dkt.

13   113 at 18.  As before, Exhibit 24 offers no support for Google's motion.

14         Finally, Google relies on *In re Google Location History Litigation*, but that case is easily

15   distinguishable.  No. 5:18-CV-05062-EJD, 2021 WL 519380, at *8 (N.D. Cal. Jan. 25, 2021); Mot.

16   at 12.  The plaintiffs in that case alleged that "they were misled about the effect of [Google's]

17   Location History setting."  *Id.* at *9.  But the "only [contractual] provision" they cited was the

18   Privacy Policy's statement that users can "adjust [their] privacy settings to control what [Google]

19   collect[s] and how [their] information is used."  *Id.*  This Court dismissed the contract claim

20   because that provision does not address the Location History setting.  *Id.*  Here, by contrast,

21   "Google's Privacy Policy has presented Incognito mode as a way that users can control the

22   information that Google collects." Dkt. 113 at 19; *see also In re Facebook, Inc., Consumer Priv.*

23   *User Profile Litig.*, 402 F. Supp. 3d at 801 (plaintiffs stated a claim for breach of contract based

24   on statement in Facebook's contract that "you can control how [your information] is shared

25   through your privacy and application settings").

26   ─────────────

[13] Google's Motion does not explain how any part of the contract "guide[s] the reader" to Exhibit

27   24.  *Davis*, 956 F.3d at 610.

16

28   ─────────────────────────────────────────────

1

### C.     Google Breached Promises About Private Browsing in Google's Chrome Privacy Notice

2

3       Google's Chrome Privacy Notice also promises that Google does not collect private

4   browsing data, including by representing that "[y]ou can limit the information Chrome stores on

5   your system by using incognito mode" and that, within Incognito mode, "Chrome won't store

6   certain information, such as: Basic browsing history information like URLs, cached paged text, or

7   IP addresses of pages linked from the websites you visit [and] Snapshots of pages that you visit."

    SAC ¶¶ 269-70; Ex. 22 at 11.[14]

8       Google first focuses on language in the "next paragraph" of the Chrome Privacy Notice,

9   i.e., another part of the document, and not the provisions on which Plaintiffs rely.  Mot. at 13.

10  Once again, Google cannot escape liability by arguing that it fulfilled entirely separate promises.

11  Whether Incognito mode provided some privacy within a household has no bearing on whether

12  Google breached its separate promises of privacy from Google.

13      Google next cites a purported definition of "Chrome" within the Chrome Privacy Notice:

14  "In this Privacy Notice, we use the term 'Chrome' to refer to all the products in the Chrome family

15  listed above."  Mot. at 14 (citing Ex. 22 at 1).  Google argues that this "definition" somehow

16  renders implausible Plaintiffs' interpretation of the promise that, within Incognito mode, "Chrome

17  won't store certain information, such as: Basic browsing history information like URLs, cached

18  paged text, or IP addresses."  Ex. 22 at 11.  But this "definition" was before the Court on Google's

19  prior motion to dismiss, and this Court still held that "a reasonable user could read [the foregoing]

20  statement to mean that their browsing history and IP address would not be saved."  Dkt. 113 at 19.

21      Plaintiffs' claim is consistent with the Chrome Privacy Notice's references to both

22  "Chrome" and "Google."  In violation of the promise that "Chrome won't store . . . browsing

23  history" within Incognito mode, Chrome stores private browsing information and sends it to

24

25  [14] Whether Plaintiffs read the Chrome Privacy Notice is irrelevant.  Mot. at 13.  "California law requires the Court to assume as a legal matter . . . that users reviewed, understood, and agreed to all . . . contractual terms."  *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 776.

26

27                                             17

28

1   Google servers.  SAC ¶¶ 5, 63-65.  This is precisely how Google's unlawful interception works.

2   *See Davis*, 956 F.3d at 607-09.  Google is using the browser to copy and then transfer personal

3   information to Google servers.  That process necessarily involves Chrome, for a time, storing that

4   information.  And while the Chrome Privacy Notice states that "Chrome periodically sends

5   information to Google" (Ex. 22 at 5), Plaintiffs reasonably expected that their private browsing

6   data would not be among the information that Chrome stores or sends to Google servers.[15]  Because

7   of Google's promise that Chrome would not store private browsing data, people reasonably

8   understood that neither Chrome nor Google would store any private browsing data.  Google

9   breached that promise, and Google's cases are inapposite for this and other reasons.[16]

10          Finally, Google argues that certain Google documents differentiate information saved "to

11  your device" from information "saved in other locations" (whatever that means).  Mot. at 15.  Once

12  more, Google points to provisions different from those on which Plaintiffs ground their claim,

13  including statements within Exhibit 24.  *See supra* n.13 and accompanying text.  Google appears

14  to be emphasizing disclosures that tout the household-privacy benefit of private browsing.  But

15  whether Google provided this separate benefit is irrelevant.  A user can seek privacy from both

16  their family and from Google—these are not mutually exclusive.  Google promised both, but only

17  delivered one.  Google therefore breached the contract.  *See* Dkt. 113 at 18 (discussing the Splash

---

18  [15] In two footnotes, Google cites the Chrome Privacy Notice's "definition" of "Chrome," and asks

19  this Court to reconsider its prior holding that, on the Splash Screen, "a user might reasonably

20  associate Chrome with Google because Chrome is Google's browser."  Mot. at 10 n.5, 14 n.8

    (citing Dkt. 113 at 18).  However, the "definition" is expressly limited to the use of "Chrome"

21  within the Chrome Privacy Notice: "*In this Privacy Notice*, we use the term 'Chrome' . . . ."  Ex.

    22 at 1 (emphasis added).

22  [16] In *Pemberton v. Nationstar Mortgage* LLC, the plaintiffs argued that a federal statute varied the

23  meaning of defined terms within a contract.  The court disagreed, refusing to "look beyond the

    contract to ascertain the[] meaning" of terms that the "contract expressly defines."  331 F. Supp.

24  3d 1018, 1038 (S.D. Cal. 2018).  Here, by contrast, Plaintiffs do not offer extrinsic evidence to

    vary the meaning of a defined term.  And in *Turlock Irrigation District v. FERC*, the court

25  concluded that an agency's interpretation of "adverse impact" rendered meaningless another

26  provision that provided examples of events that qualified as an "adverse impact."  903 F.3d 862,

    871 (9th Cir. 2018). Here, Plaintiffs' arguments in no way render any provisions meaningless.

27

28

Screen and holding that "a reasonable user could have read [it] to state that Incognito mode provided privacy from Google *and* privacy from other people who use the same device" (emphasis added)).

## II.   Plaintiffs State a UCL Claim

### A.   Plaintiffs Properly Allege UCL Standing

#### 1.   Under *Calhoun*, the personal information Google unlawfully collected is Plaintiffs' property

Plaintiffs allege a property interest in their personal information, and that Google's conduct deprived them of that property and diminished its value. SAC ¶ 282. In *Calhoun*, Google made the same argument that it makes here with respect to its unlawful collection of browsing data—that the plaintiffs' personal information was not their property. 2021 WL 1056532, at *22. This Court rejected Google's argument and held that the *Calhoun* plaintiffs had UCL standing because they alleged that Google unlawfully collected their personal information (*id.*), and the same ruling is warranted in this case.

As the Court explained in *Calhoun*, "the Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing." *Id.* (citing *In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (plaintiffs plausibly alleged harm when their personal information was disclosed in a data breach); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information."); *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (plaintiffs adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (plaintiffs plausibly alleged injury from the loss of value of their personal information)).

As in *Calhoun*, Plaintiffs here allege that Google unlawfully collected (and indeed continues to collect) their personal information (here, private browsing communications).

19

1

2     2. <u>The California Legislature has recognized that consumers have a property interest in their personal information</u>

3    Google cites this Court's opinion in *SunPower Corp. v. SolarCity Corp.*, for the proposition

4 that "[i]nformation is not property unless some 'positive law' makes it so."  No. 12-CV-00694-

5 LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012).  In fact, the California Legislature has

6 recently enacted a number of positive laws affirming that consumers, such as Plaintiffs, have a

7 property interest in their personal information.  This "makes it so."

8    The California Consumer Privacy Act ("CCPA") was passed in 2018 and became effective

9 January 1, 2020.  It provides consumers with the right to direct businesses to refrain from selling

10 their personal information to third parties.  Cal. Civ. Code §§ 1798.120(a), 1798.125(a).  The

11 CCPA broadly defines "personal information" to include "*browsing history* [and] *search history*."

12 *Id.* § 1798.140(o)(1)(F) (emphases added).  Such personal information encompasses the "the legal

13 right to exclude others," which is "[a]n essential element of individual property."  *Blaustein v.*

14 *Burton*, 9 Cal. App. 3d 161, 177 (1970).

15    In November 2020, voters passed the California Privacy Rights Act ("CPRA"), with the

16 stated purpose of "further protect[ing] consumers' rights, including the constitutional right of

17 privacy."  CPRA § 3.  The CPRA strengthens the data protections provided by the CCPA,

18 explaining that "[c]onsumers should know who is collecting their personal information . . . , how

19 it is being used, and to whom it is disclosed," and that "*[c]onsumers should be able to control the*

20 *use of their personal information*."  CPRA § 3.A.1-2 (emphasis added).  The CPRA provides

21 consumers with more tools and power to value and protect their personal information.  *Id.* § 2(e)(f).

22     3. <u>Google's misappropriation of Plaintiffs' personal information constitutes a taking of property sufficient for UCL standing</u>

23    In *Davis v. Facebook*, the Ninth Circuit held that the plaintiffs "adequately pleaded an

24 entitlement to Facebook's profits from users' personal data."  956 F.3d at 600.  The Ninth Circuit

25 stated, "Plaintiffs have adequately alleged that Facebook's tracking and collection practices would

26 cause harm or a material risk of harm to their interest in controlling their personal information."

27 *Id.* at 599.  In *Calhoun*, this Court held that Google's misappropriation of the plaintiffs' personal

20

28

1    information constitutes a taking of property sufficient for UCL standing.  2021 WL 1056532, at

2    *21 (citing *Davis v Facebook* and other recent cases).

3           None of Google's cases address scenarios in which a plaintiff took concrete steps to protect

4    particularly sensitive data, and all but *Hart v. TWC Product & Technology LLC*, No. 20-CV-03842,

5    2021 WL 1032354 (N.D. Cal. Mar. 17, 2021) and *Cottle v. Plaid, Inc*., 20-CV-03056, 2021 WL

6    1721177 (N.D. Cal. Apr. 30, 2021) predate the CCPA, *Davis*, and the CPRA.  Although *Hart* and

7    *Cottle* were decided after the implementation of California's privacy statutes, neither case

8    addressed those statutes, and they are inapplicable to this matter for several other reasons.

9           First, *Hart* and *Cottle* involve a much less pervasive data collection than what Google has

10   committed (and continues to commit) in this case.  *Hart* involved the collection of geolocation

11   data. 2021 WL 1032354 at *1.  *Cottle* involved the collection of bank login credentials.  2021 WL

12   1721177 at *1-2.  Here, Google has mined and continues to mine browsing activity and private

13   browsing communications (SAC ¶¶ 4, 8, 52, 64, 67, 122), learning intimate details about users'

14   lives, relationships, values, hobbies, private activities, interests, future plans, and internet usage

15   (SAC ¶¶ 9, 10, 70, 97, 100-04, 106, 116, 162)—so Google may create valuable user profiles (SAC

16   ¶¶ 69, 93, 121).  This comprehensive collection is clearly quantifiable.  SAC ¶¶ 123, 127-28, 134.

17          Unlike the instant action, neither the *Hart* nor *Cottle* plaintiffs alleged the existence of a

18   private market for the type of data collected by defendants.  In *Hart*, the court identified this as a

19   fatal flaw to the plaintiff's UCL claims, stating that the plaintiff failed to show how his personal

20   data had "economic value *to him*."  2021 WL 1032354 at *7 (emphasis in original).  Here, Plaintiffs

21   have sufficiently alleged that their personal information has significant value, that the value can

22   be quantified, and that there is a market for Plaintiffs' personal information, which compensates

23   individuals for use of their data.  SAC ¶¶ 123, 127-28, 134, 170, 175, 180, 185, 190.  These

24   allegations are consistent with the passage of the CCPA and the CPRA, which codified the property

25   interest in one's personal information.

26          In *Cottle*, the court disagreed with this Court's holding in *Calhoun*, stating that *Calhoun*

27

28

21

1  "rests on four cases that address Article III standing, which is different from UCL standing."

2  *Cottle*, 2021 WL 1721177, at *14 n.8.  *Cottle* misapprehends the issue of UCL standing.  The

3  California Supreme Court has held that to satisfy the "loss of money or property" element of the

4  UCL, a plaintiff need only suffer "economic injury" as defined by the federal courts for Article III

5  standing purposes.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321-22 (2011).  In *Kwikset*,

6  the court stated that the definition of "injury in fact" under the UCL is co-extensive with the Article

7  III "economic injury" analysis, and even an "identifiable trifle" of economic injury will do.  *Id.* at

8  324.  This Court's holding in *Calhoun* was correct and the Court should reach the same conclusion

9  in this case.[17]

10
11
        4.     <u>The reasoning and the precedents the Court relied on in *Calhoun* apply with equal force here</u>

12       Acknowledging that *Calhoun* is directly on point, Google argues that this Court's decision

13  was wrong.  Mot. at 1-2 ("Google respectfully contends that this Court's decision to the contrary

14  in *Calhoun* was wrongly decided . . . .").  Google largely parrots *Cottle*'s argument that *Calhoun*

15  is wrongly decided because "Article III standing [] is different from UCL standing."  *Cottle*, 2021

16  WL 1721177, at *14 n.8.

17       Though Google correctly cites the California Supreme Court's decision in *Kwikset* as the

18  controlling authority on the matter, Google's sole quotation from *Kwikset*, stating that UCL

19  standing is "substantially narrower than federal standing under [A]rticle III," misrepresents the

20  California Supreme Court's overall holding.  *Kwikset Corp.*, 51 Cal. 4th at 324.  *Kwikset*, in fact,

---

21  [17] The other cases that Google cites are easily distinguished.  *In re Facebook Consumer Privacy*

22  *User Profile Litigation* predates the CCPA's January 1, 2020 effective date.  402 F. Supp. 3d at
776.  There, the sole reason for dismissing the UCL claim was that "the plaintiffs' theory of

23  economic loss [was] purely hypothetical."  *Id.* at 804.  As set forth above, that is not the case here.
In *In re iPhone Application Litigation*, the plaintiffs did not allege that the money they paid to the

24  apps had been redirected to Apple.  2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (Koh,
J.).  In *In re Marriott International Inc., Customer Data Security Breach Litigation*, the court did

25  not decide whether the plaintiffs had UCL standing based on a loss of value of their personal
information.  But the court acknowledged that the plaintiffs might have UCL standing on that

26  ground under *Kwikset*.  440 F. Supp. 3d at 492 n.17.

27
                                    22

28

1  stated that the two standing requirements are similar in many respects and, often, functionally

2  identical.  *See id.* at 323 ("proof of injury in fact will in many instances overlap with proof of the

3  next element of [UCL] standing, to have 'lost money or property.'").

4  Most Ninth Circuit case law agrees with, and even expands upon, *Kwikset*'s coextensive

5  treatment of the two requirements—*Cottle* is an aberration.  For example, numerous in-circuit

6  cases approvingly quote *Reid v. Johnson & Johnson*, that "[t]o establish standing to bring a claim

7  under [the UCL, FAL, and CLRA], plaintiffs must meet an economic injury-in-fact requirement,

8  which demands no more than the corresponding requirement under Article III of the U.S.

9  Constitution."  780 F.3d 952, 958 (9th Cir. 2015); *see, e.g.*, *Beasley v. Conagra Brands, Inc.*, 374

10  F. Supp. 3d 869, 879 (N.D. Cal. 2019) (same); *Bradach v. Pharmavite, LLC*, 735 F. App'x 251,

11  254 (9th Cir. 2018) (plaintiff "has standing to sue under California law because California law

12  'demands no more than the corresponding requirement under Article III' for CLRA and UCL

13  claims." (quoting *Reid*)); *see also Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir.

14  2018) (since plaintiff  "has satisfied Article III's injury-in-fact requirement, he has alleged an

15  injury in fact sufficient to support statutory standing under the UCL." (citing *Reid*)).

16  *Cottle* does not cite any binding authority which directly supports its holding that the

17  Article III and UCL standing requirements are different, much less so significantly different as to

18  render any cross-citations categorically unreliable.  This Court's reliance on Article III cases in

19  *Calhoun* is supported by established circuit law.  This Court should ignore Google's protestations

20  to toss *Calhoun* aside and embrace the *Cottle* court's lone contrary holding.

21  **B.      Plaintiffs Properly Allege Entitlement to Restitution**

22  In *Calhoun*, the Court rejected Google's argument that the plaintiffs were not entitled to

23  restitution.  2021 WL 1056532, at *22.  The Court held that, under the UCL, "the only monetary

24  remedy Plaintiffs may seek is restitution."  *Id.*  Here, the Court should reject Google's same

25  argument.  Plaintiffs have properly alleged entitlement to restitution for Google's unlawful

26  collection of their personal data.

27

28

1

### C.     Plaintiffs Are Not Required to Allege Reliance for the UCL Claim Asserted Here, and, in any Event, Have Alleged It

2

The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair,

3

or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200, *et seq.*  Here, Plaintiffs only allege claims

4

under the unlawful prong and unfair prong.  SAC ¶¶ 279-81.  Because Plaintiffs' claims do not

5

sound in fraud, Plaintiffs need not allege reliance.  *See Jerome's Furniture Warehouse v. Ashley*

6

*Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 148063, at *4 (S.D. Cal. Jan. 15,

7

2021).  Were there such a requirement, Plaintiffs have satisfied it, alleging: "Plaintiffs relied upon

8

Google's false and misleading representations and omissions that they controlled use of their data

9

through private browsing modes such as Incognito and, based on those misrepresentations,

10

believed that Google was not intercepting and using their private data when they were in such

11

private browsing modes."  SAC ¶ 149; *see also* SAC ¶¶ 3, 6, 41, 53, 57, 60, 61, 149, 246.

12

## III.     CONCLUSION

13

For the foregoing reasons, this Court should deny Google's Motion to Dismiss.  If this

14

Court disagrees, any dismissal should be without prejudice and with leave to amend.

15

Dated: June 15, 2021                           SUSMAN GODFREY L.L.P.

16

17

By: */s/ Amanda Bonn*

18

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com

19

1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

20

Telephone: (310) 789-3100

21

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

22

Beko Rebitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com

23

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor

24

San Francisco, CA 94104

25

Telephone: (415) 293 6858
Facsimile (415) 999 9695

26

James W. Lee (*pro hac vice*)

27

24

28

1

jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

2

3

4

5

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

6

7

8

9

10

11

12

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

13

14

15

16

17

18

19

*Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

25