**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No. 191305)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
lweaver@bfalaw.com

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
jaybarnes@simmonsfirm.com

*Counsel for Calhoun Plaintiffs; additional counsel listed in signature blocks below*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400

*Counsel for Defendant; additional listed below*

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (Cal. Bar No. 238027)
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
mmao@bsfllp.com

**SUSMAN GODFREY LLP**
William Christopher Carmody (*pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
bcarmody@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
jyanchunis@forthepeople.com

*Counsel for Brown Plaintiffs; additional listed below*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br>　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE LLC,<br>　　Defendant. | Case No. 5:20-cv-5146-LHK-SVK<br><br>**JOINT SUBMISSION RE: POSSIBLE APPOINTMENT OF A SPECIAL MASTER**<br><br>Referral: Hon. Susan van Keulen, USMJ |
| CHASOM BROWN, *et al.*, on behalf of themselves and all others similarly situated,<br>　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE LLC,<br>　　Defendant. | Case No. 5:20-cv-3664-LHK-SVK |

June 18, 2021
**Submitted via ECF**
Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:   **Joint Submission re: Possible Appointment of Special Master**
*Calhoun v. Google LLC*, Case No. 5:20-cv-5146, Dkt. No. 220-1, Dispute 1.3
*Brown v. Google LLC*, Case No. 5:20-cv-3664, Dkt No. 191-1, Disputes P3 & P6

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's Order dated June 8, 2021 in *Calhoun, et al. v. Google LLC* (Dkt. No. 220-1, Dispute 1.3), and Your Honor's Order dated June 8, 2021 in *Brown, et al. v. Google LLC* (Dkt. No. 191-1, Disputes P3 & P6), the *Calhoun* Plaintiffs, the *Brown* Plaintiffs, and Defendant Google LLC ("Google") jointly submit this statement containing the parties' views on the possible appointment of a special master.

The statement starts with a joint statement from all parties reporting on the status of discussions and those points where agreement has been reached, followed by separate position statements from the *Calhoun* and *Brown* Plaintiffs and Google regarding those points in dispute.

**JOINT STATEMENT OF ALL PARTIES:**

The parties conferred several times during the week of June 14, 2021, including a joint video conference with counsel for all parties on June 17, 2021. The parties jointly report the following:

1. The parties agree that the appointment of a Special Master for specific purposes pursuant to Fed. R. Civ. P. 53 is appropriate in these two related cases, and all parties agree that the role would supplement, not supplant, Your Honor's current role, consistent with the ABA's recently adopted "Guidelines for the Appointment and Use of Special Masters" (the "ABA Guidelines") Guideline 4.

2. The parties agree that the Special Master should (at a minimum) be appointed as a "Technology Master" as described in Section 1.8 of the Academy of Court Appointed Master's Benchbook, to address issues regarding *Calhoun* Dispute 1.3 and *Brown* Disputes P3 and P6.

3. The parties have a disagreement in terms of the extent to which the Special Master should be permitted to address other discovery disputes and the process by which the parties should work with the Special Master to address and resolve any disputes. The parties address this disagreement in the portions below.

4. The parties also have a disagreement concerning the next steps in appointing the Special Master. Given the parties' agreement to the appointment of a Special Master, and to avoid further delay, Plaintiffs proposed an additional submission on June 23 with any competing appointment orders and names of proposed Special Masters. Google disagrees. This dispute is addressed below.

**JOINT STATEMENT OF THE *CALHOUN* AND *BROWN* PLAINTIFFS**:

The authority of Magistrate Judges to appoint Special Masters is well-established. *See, e.g.*, *Shakman v. Clerk of Cook County*, 994 F.3d 832 (7th Cir. 2021); *Glover v. Udren*, No. CIV.A. 08-990, 2012 WL 1436564 (W.D. Pa. Feb. 16, 2012), *report and recommendation adopted,* No. CIV. 08-990, 2012 WL 1450150 (W.D. Pa. Apr. 25, 2012). Special Master appointments often "streamlin[e] discovery . . . and – somewhat surprisingly – reduce cost and delay." Hon. Shira Scheindlin (Ret.), *The Use of Special Masters in Complex Cases*, Law360 (Aug. 15, 2017).

Courts routinely define the scope of a Special Master's duties broadly to address matters that may arise. *See, e.g.*, *LV v. New York City Dep't of Educ.*, No. 03-CV-9917 (LAP), 2021 WL 1941834, at *1 (S.D.N.Y. May 14, 2021) (enabling special master to "[p]erform such other duties, and have such other authority, as the Parties may mutually agree upon, or as the Court may further order"); *Moussouris v. Microsoft Corp.*, No. C15-1483JLR, 2017 WL 1652910, at *1 (W.D. Wash. May 2, 2017) (defining special master's scope of authority on additional matters "as the court may determine after notice of the parties"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, 2011 WL 6141066, at *2 (N.D. Cal. Dec. 8, 2011) (empowering special master to assist in "other matters in which the Court wishes to utilize his services").

As Google agrees, it is appropriate here to appoint a Special Master at a minimum to assist as a "Technology Master" in connection with *Calhoun* Dispute 1.3 and *Brown* Disputes P3 and P6. Such an appointment was made, for example, in the Ford Motor Company unintended acceleration case, where the Court appointed a Special Master to provide assistance with discovery into the source code for the electronic throttle control system. *See Johnson v. Ford Motor Company*, 3:13-cv-6529 (S.D. W. Va.). The Magistrate Judge appointed a technical advisor to meet with the parties and their experts, review the relevant source code, request additional information, and advise the Court on related discovery orders. *See* Order Appointing Technical Advisor for the Court dated April 28, 2016 (*Johnson* Dkt. No. 740).

In the near term, the *Calhoun* and *Brown* Plaintiffs believe a Special Master can provide useful assistance with these disputes. That may include not only the production of additional data but also any disputes regarding the scope of any clean room access by Plaintiffs and their experts, if permitted by the Court. With that technical expertise, the Special Master may be able to assist with other disputes as well, such as the scope of any source code review (*Brown* Dispute P14). On June 16, Google's 30(b)(6) representative admitted that Google maps identifiers in various ways, including ways that link authenticated and unauthenticated data. A Special Master could help coordinate any clean room access and any source code review based on that testimony and other evidence, including to assess both the completeness of Google's productions and Google's representations. Similarly, the *Calhoun* Plaintiffs believe a Special Master can help identify efficient ways to produce information relating to the Named Plaintiffs in appropriate formats and also sample data on a class-wide basis (*Calhoun* Dispute 1.3).

To make this process useful and efficient, Plaintiffs propose a weekly or bi-weekly check-in with the Special Master to discuss pending discovery disputes, to do that *before* the parties reach impasse, not in lieu of meet and confer sessions but to facilitate constructive negotiation. As the ABA Guidelines note, Courts should "consider using special masters not only after particular issues have developed, *but at the outset of litigation*." ABA Guideline 1 (emphasis added). While the parties appreciate that Your Honor has scheduled frequent discovery hearings, Plaintiffs are hopeful that the assistance of a Special Master will reduce the number of disputes presented to the Court for resolution. As noted after the adoption of the ABA Guidelines:

> Even where the [special master's] role is one a magistrate judge may be in a position to perform, there is still a question of making the best and highest use of the magistrate judge's time. The real benefit a special master provides to case management is not resolving disputes that should be going to the court. ***It is avoiding disputes that should be resolved without the need for court intervention***. The 2015 amendments to the Federal Rules of Civil Procedure reflect a philosophy that not just the court but also "the parties" should construe, administer, and employ the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." But that admonition is not self-executing. And when counsel for whatever reason cannot agree on what is "reasonable," those issues come back to the court in the form of expensive, time-consuming, and contentious motions. ***The fact that magistrate judges might be able to herd cats does not mean that they are best employed in doing so***.

Merril Hirsh, "A Revolution That Doesn't Offend Anyone: The ABA Guidelines for the Appointment and Use of Special Masters," THE JUDGES' JOURNAL, Vol. 58, No. 4 at 33 (Fall 2019) (emphasis added); *see also* Judge Scheindlin at 3 ("I recommend that judges raise the issue of referring matters to a special master at the outset of the case.").

The *Calhoun* Plaintiffs also believe it may be helpful for the Special Master to address ESI disputes, including but not limited to disputed ESI Search Terms and the possible use of TAR. *See* ACAM Benchbook, Section 1.4. ESI disputes are some of the more technical disputes in discovery, particular in a technology case like this one, where understanding the jargon used by engineers in everyday communications is vital to ensuring that appropriate and proportional search terms are used. Deeper involvement of a Special Master with technical expertise will enable the Court to make determinations about search terms not based on just the number of them but also based on their efficacy. Decisions about what data should be produced, and in what format, can be rooted in a technical understanding of what is collected and how by Google; how sampling can be accomplished; and what compromises are appropriate. Similarly, recent 30(b)(6) deposition testimony confirms Google's use of unique technical terms and codenames to reference relevant data collection, storage, and use practices, and guidance from a Special Master could be especially helpful in terms of resolving technical disputes in common to both cases.

Given the parties' agreement that there should be a Special Master, and unless the Court prefers some other approach, Plaintiffs plan to submit a proposed appointment order on June 23, along with the names, CVs, and contact information for a proposed Special Master.

**Plaintiffs' Response to Google's Statement Below:**

*First*, Plaintiffs disagree that the Special Master's role should be strictly limited to *Calhoun* Dispute 1.3 and *Brown* Disputes P3 and P6. There are additional disputes for which the parties and the Court would benefit from technical expertise, such as source code review (*Brown* Dispute P14). Similarly, the *Calhoun* Plaintiffs seek input on disputes regarding technical ESI search terms. There is no justification for precluding a Special Master who has the relevant background and experience from assisting in resolving these disputes. Also, additional disputes requiring technical expertise may arise as fact discovery progresses. Restricting the Special Master's authority at this early juncture is unnecessary and counterproductive, as courts routinely issue Rule 53 orders empowering Special Masters to address additional issues as they may arise. *See, e.g.*, *LV*, 2021 WL 1941834, at *1; *Moussouris*, 2017 WL 1652910, at *1; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2011 WL 6141066, at *2.

*Second*, Plaintiffs do not envision the Special Master supplanting the Court's role in managing discovery, and they do not seek the appointment of a general Discovery Master. Plaintiffs wish to empower the Special Master to resolve issues requiring technical expertise, which in these cases may touch upon multiple aspects of discovery including electronically stored information.

*Third*, Plaintiffs' proposal of bi-weekly check-ins (starting in the coming weeks) would streamline the resolution of disputes. There is no hearing scheduled before the Court until August 12, 2021. Regular check-ins with the Special Master could resolve disputes in the interim and alleviate the need to raise them with the Court at the next hearing. To the extent resolution requires the Court to order additional evidence, regular check-ins would help crystallize issues and the

requested relief for the Court. Google's fear that the check-ins would increase briefing and the number of disputes is misplaced.

*Fourth*, Plaintiffs object to Google's proposal to strip the Special Master of authority to issue binding oral and written guidance. Google's proposed limitation on the Special Master's authority would increase burdens by creating additional briefing before the Court. Allowing the Special Master to issue oral guidance, transcribed by a court reporter, would achieve the parties' goal in using the technical expertise of a Special Master efficiently to resolve disputes.

*Fifth*, Plaintiffs disagree with Google's reading of this Court's orders inviting the parties to submit their views on the appointment of a Special Master. Plaintiffs read the Court's orders as requesting the parties to submit proposed Rule 53 orders defining the scope of the appointment for the Special Master. By contrast, Google asks the Court to direct the parties to prepare an order of appointment at a later date. Plaintiffs believe prolonging the submission of proposed orders will only further delay discovery.

Plaintiffs will continue to meet and confer with Google and hope to resolve some or all of these areas of disagreement. If the parties are unable to reach an agreement who should be the Special Master on an appointment order, absent an objection by the Court, Plaintiffs intend to submit a proposed Rule 53 order on June 23 along with proposals for the Special Master.

**STATEMENT OF DEFENDANT GOOGLE LLC**:

The parties in *Brown* and *Calhoun* and the Court would benefit from the appointment of "a special master under Rule 53 with sufficient technical expertise to assist the Court in evaluating the parties' arguments and responses on the foregoing issues in particular and, if necessary, on future discovery disputes." *Brown*, Dkt. 191-1 at 2; *Calhoun*, Dkt. 220-1 at 1. Consistent with the Court's order, the special master's scope of authority should be limited to assisting the Court's decisionmaking on the technical, data-related aspects of Disputes P3/P6 in *Brown* and Dispute 1.3 in *Calhoun* and if necessary, any other technical data-related discovery issues in future disputes. *Brown*, Dkt. 191-1 at 2; *Calhoun*, Dkt. 220-1 at 1. This role should be akin to the Technology Master described in Section 1 of the Academy of Court-Appointed Masters Benchbook ("Benchbook").[1] In particular, for the reasons below, the Court should appoint a common technical special master for *Brown* and *Calhoun* and direct the parties to prepare an order of appointment that: (1) defines the disputes to be addressed by the special master as disputes that require its technical expertise, and (2) authorizes the special master to request a hearing or further briefing on discrete questions and file reports and recommendations on the court docket, but without the additional authority to exercise the appointing court's power to compel, take, and record evidence.

1. **The Scope Of Disputes For The Special Master Should Be Limited To Disputes That Require The Special Master's Technical Expertise.**

---

[1] https://www.courtappointedmasters.org/acam/assets/File/public/handbook/section_1.pdf (describing that a "Technology Master," such as "[a] master[] with technical expertise can be very helpful," "[i]n cases intertwined with technology, scientific, or complex issues" and "can provide the courts and parties with the expertise necessary to understand and resolve problems."

The Court has indicated it seeks assistance with respect to technical, data-related issues that may be beyond the expertise or knowledge of the average lawyer. That is prudent: the parties have access to their own technical experts to help them understand the matter and construe arguments; the Court should have the ability to similarly rely on the insights of a neutral advisor with sufficient technical expertise.

Appropriately, the Court raised its consideration of the appointment of a technical special master in the context of lingering disputes related to productions of plaintiffs' data, which involve highly technical issues related to Google's data logs.[2] Google has fully complied with its discovery obligations and the Court's orders in both cases, has produced corporate witnesses for four separate full-day depositions, and has made seven document productions totaling over 3,500 pages in response to these issues. Yet in both cases, Plaintiffs have continued to demand additional irrelevant and unduly burdensome discovery. The appointment of a technical special master with the necessary expertise to readily understand the discovery Google has already provided and what Plaintiffs in both cases have requested and may request in the future, would be helpful in resolving such disputes in an efficient and fair manner. Should the Court determine that the technical special master's expertise would also be useful to resolving other discovery disputes concerning technical issues before the Court, Google welcomes the opportunity to address those issues before the special master as well.

**2. There Is No Demonstrated Need For A Discovery Master or Electronic Discovery Master**

Plaintiffs have indicated that they favor the appointment of a special master whose duties would encompass those of a general "Discovery Master" *and* an "Electronic Discovery Master" pursuant to the Benchbook.[3] Plaintiffs essentially envision a discovery master supplanting the Court's responsibility to manage discovery in these litigations. That is neither proper nor necessary here.

Duties of a general discovery master typically involve "manag[ing] a discovery plan, issu[ing] orders resolving discovery disputes, ... and monitor[ing] ongoing discovery."[4] The Court to date has already demonstrated its ability and willingness to manage these cases efficiently. The Court has instituted an orderly process whereby the Parties identify disputes and submit arguments in a chart filed on the docket. This process has more often than not resulted in compromises, or at least a narrowing of the disputes. The Court then has proceeded methodically to resolve or at least provide guidance on any remaining issues without delay, either in writing or orally at the hearings. That the Court may need additional assistance on the technical aspects of Disputes P3/P6 in *Brown* and Dispute 1.3 in *Calhoun* due to their technical nature does not justify shifting the general

---

[2] Disputes P3/P6 in *Brown* and Dispute 1.3 in *Calhoun* are instructive. Disputes P3/P6 in *Brown* concern "Google's production of Plaintiffs' data" and "class member identifications," *Brown*, Dkt. 191-1 at 2, 3, while Dispute 1.3 concern "Plaintiffs' RFP No. 5, request for data associated with Plaintiffs or their PI." *Calhoun*, Dkt. 220-1 at 1.

[3] https://www.courtappointedmasters.org/acam/assets/File/public/handbook/section_1.pdf.

[4] https://www.courtappointedmasters.org/acam/assets/File/public/handbook/section_1.pdf (defining "Discovery Master").

discovery disputes to a general special master. Such approach is unnecessary, unduly burdensome, and would frustrate the real mission of this exercise: to afford the Court with advice and input from a technically-proficient neutral special master as the Court weighs the arguments and positions of the Parties.

At this juncture, the Court has deep, institutional knowledge of the parties' discovery disputes that have been vigorously litigated over the past few months. Introducing a general discovery master in light of the Court's orderly process would slow down, rather than streamline, any resolution of the Parties' discovery disputes. It would take a significant amount of time for a person not familiar with the prior record to digest the subject matter of the disputes, their history, and the related interim orders, briefing, and oral argument—for not one, but two litigations.

Nor is there a need here for an Electronic Discovery Master, which is described in the Benchbook as a master who "can resolve problems that arise from determining what information is readily accessible or recoverable, what is an appropriate native format, and whether meta data needs to be disclosed."[5] None of the pending technical discovery disputes relate to Google's ESI sources or production information. The parties have long since resolved those disputes and memorialized ESI production issues in their respective ESI Protocols. Nor are any perceived delays in resolving ESI disputes the result of lack of diligence or attention by the Court, such that a discovery master is necessary. As an example, *Calhoun* Plaintiffs stated during the June 17, 2021 meet and confer that they intended to raise the Dispute 1.6 ("ESI Search Terms") with the appointed special master. But the Court is well-equipped to handle this dispute and has already ordered a joint letter submission to be due next week, June 25, 2021. *Calhoun*, Dkt. 220-1 at 2. And Google and the *Brown* Plaintiffs have resolved all but one issue related to ESI search terms for the original *Brown* custodians and are well on their way to resolving remaining ESI search term disputes with the Court's assistance. Adding yet another layer of review for these issues would delay—not expedite—their determination.

Plaintiffs' additional request that the special master hold weekly or bi-weekly "check-in" hearings open for all discovery matters is also unnecessary, impractical, and burdensome. Given the mostly one-side nature of discovery in these cases, Google is concerned that Plaintiffs will use an all-purpose discovery master as *carte blanche* to raise even more disputes and request even more briefing, thus creating even more burden on Google, and eventually this Court, than they already have to date. Certainly, the resolution of the limited Disputes in P3/P6 in *Brown* and/or Dispute 1.3 in *Calhoun*—*i.e.*, the disputes on which the Court has proposed the appointment of a technical advisor—does not require such a burdensome process.

**3. The Special Master's Authority Should Be Appropriately Limited To Filing Written Reports And Recommendations On The Court Docket**

The technical special master should be authorized to file written reports and recommendations on the court docket.

The special master should not be authorized to issue orders to resolve disputes either orally or in writing without filing on the case docket with a right for parties to object or otherwise address.

---

[5] https://www.courtappointedmasters.org/acam/assets/File/public/handbook/section_1.pdf (defining "Electronic Discovery Master")

Requiring the special master to issue written reports and recommendations on the court docket, as opposed to providing oral or written guidance without filing, would assist in providing the Court and the Parties with a full and complete record of the technical special master's advice on how to resolve the discovery disputes.

The special master should likewise not be authorized to order additional discovery from the parties. That would only delay resolution of the disputes, increase the risk of wasting party and judicial resources, and because as discussed above, Google has already fully complied with its discovery obligations and the Court's order by producing the extensive discovery related to at least Disputes P3/P6 in *Brown* and Dispute 1.3 in *Calhoun*.

Limiting the authority of the technical special master in this manner strikes the right balance of providing the Court with the needed technical assistance on technical discovery disputes while allowing the Court, in parallel, to continue to resolve the discovery disputes.

**Google's Response to Plaintiffs' Statement Above:**

Plaintiffs' proposal to nominate special masters and submit proposed orders appointing the special master by next week before the Court has had an opportunity to weigh in on the special master issues discussed above puts the cart before the horse. The Court must first resolve the threshold issue of scope of duties and authority before the Parties can propose nominations and proposed order for the technical special master. The Plaintiffs themselves do not appear to be aligned as to the full scope of the technical special master's role in this case. Only the *Calhoun* Plaintiffs appear to stretch the scope of disputes that the technical special master would handle to also include disputes related to ESI discovery generally. It would be more appropriate to assign the technical special master to assist on disputes that require its technical expertise—something all parties agree on. A person who is well-suited to be a technical special master may not necessarily be well-suited to also address general discovery disputes. Accordingly, Google respectfully requests to submit its nominations for special masters and proposed order appointing the special master after the Court has ruled on scope.

Further, Plaintiffs' discussion of its proposal of weekly or bi-weekly "check-ins" with the Special Master confirms Google's concerns and would render the process anything but "useful and efficient." Plaintiffs propose weekly or bi-weekly "check-ins" "to discuss pending discovery disputes . . . "*before* the parties reach impasse." *See supra* (emphasis in original). The special master should not have to do the parties' job for them. The parties should be doing the meeting and conferring among each other before going to the Court. Plaintiffs' proposal effectively circumvents the efficient and streamlined process in the Court's discovery standing order for the parties to first "meet and confer to attempt to resolve the dispute" before reaching out the Court (or a mediator) for resolution. None of the ABA Guidelines that Plaintiffs recite contemplate such a unilateral discovery process.

| | |
|---|---|
| | Respectfully, |
| **BLEICHMAR FONTI & AULD LLP** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| By: */s/ Lesley Weaver* | By: */s/ Andrew H. Schapiro* |
| Lesley Weaver (Cal. Bar No. 191305) | Andrew H. Schapiro (admitted *pro hac vice*) |
| Angelica M. Ornelas (Cal. Bar No. 285929) | andrewschapiro@quinnemanuel.com |
| Joshua D. Samra (Cal. Bar No. 313050) | 191 N. Wacker Drive, Suite 2700 |
| 555 12th Street, Suite 1600 | Chicago, IL 60606 |
| Oakland, CA 994607 | Tel: (312) 705-7400 |
| Tel.: (415) 445-4003 | Fax: (312) 705-7401 |
| Fax: (415) 445-4020 | |
| lweaver@bfalaw.com | Stephen A. Broome (CA Bar No. 314605) |
| aornelas@bfalaw.com | stephenbroome@quinnemanuel.com |
| jsamra@bfalaw.com | Viola Trebicka (CA Bar No. 269526) |
| | violatrebicka@quinnemanuel.com |
| **DiCELLO LEVITT GUTZLER LLC** | 865 S. Figueroa Street, 10th Floor |
| | Los Angeles, CA 90017 |
| By: */s/ David A. Straite* | Tel: (213) 443-3000 |
| David A. Straite (admitted *pro hac vice*) | Fax: (213) 443-3100 |
| One Grand Central Place | |
| 60 East 42nd Street, Suite 2400 | Jomaire Crawford (admitted *pro hac vice*) |
| New York, New York 10165 | jomairecrawford@quinnemanuel.com |
| Tel.: (646) 933-1000 | 51 Madison Avenue, 22nd Floor |
| dstraite@dicellolevitt.com | New York, NY 10010 |
| | Tel: (212) 849-7000 |
| Amy E. Keller (admitted *pro hac vice*) | Fax: (212) 849-7100 |
| Adam Levitt (admitted *pro hac vice*) | |
| Adam Prom (admitted *pro hac vice*) | Josef Ansorge (admitted *pro hac vice*) |
| Ten North Dearborn Street, 6th Fl. | josefansorge@quinnemanuel.com |
| Chicago, Illinois 60602 | 1300 I Street NW, Suite 900 |
| Tel.: (312) 214-7900 | Washington D.C., 20005 |
| akeller@dicellolevitt.com | Tel: (202) 538-8000 |
| alevitt@dicellolevitt.com | Fax: (202) 538-8100 |
| aprom@dicellolevitt.com | |
| | Jonathan Tse (CA Bar No. 305468) |
| **SIMMONS HANLY CONROY LLC** | jonathantse@quinnemanuel.com |
| | 50 California Street, 22nd Floor |
| By: */s/ Jay Barnes* | San Francisco, CA 94111 |
| Jason 'Jay' Barnes (admitted *pro hac vice*) | Tel: (415) 875-6600 |
| Mitchell M. Breit (admitted *pro hac vice*) | Fax: (415) 875-6700 |
| An Truong (admitted *pro hac vice*) | |
| Eric Johnson (admitted *pro hac vice*) | *Counsel for Defendant Google LLC* |
| 112 Madison Avenue, 7th Floor | |
| New York, NY 10016 | |
| Tel.: (212) 784-6400 | |

Fax: (212) 213-5949
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com

*Counsel for Calhoun Plaintiffs*

**BOIES SCHILLER FLEXNER LLP**

By:   */s/ Mark C. Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Sean Phillips Rodriguez (CA Bar No. 262437)
srodriguez@bsfllp.com
Beko Rebitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Alexander Justin Konik (CA Bar No. 299291)
akonik@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (pro hac vice)
jlee@bsfllp.com
Rossana Baeza
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

**SUSMAN GODFREY LLP**

By:   */s/ Amanda Bonn*
Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com

Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Tel: (212) 336-8330

**MORGAN & MORGAN**

By:   */s/ John A. Yanchunis*
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
Michael F. Ram (pro hac vice)
mram@forthepeople.com
Ra O. Amen (pro hac vice)
ramen@forthepeople.com
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
*Counsel for Brown Plaintiffs*

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Submission. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: June 18, 2021                                By: */s/ Andrew H. Schapiro*
                                                                Andrew H. Schapiro
                                                                *Counsel on behalf of Google*