TREBICKA EX. A

REDACTED VERSION
OF DOCUMENT SOUGHT
TO BE SEALED

| | |
|---|---|
| Mark C. Mao, CA Bar No. 236165 | William S. Carmody (admitted *pro hac vice*) |
| Sean P. Rodriguez, CA Bar No. 262437 | Shawn Rabin (admitted *pro hac vice*) |
| Beko Richardson, CA Bar No. 238027 | Steven M. Shepard (admitted *pro hac vice*) |
| **BOIES SCHILLER FLEXNER LLP** | Alexander Frawley (admitted *pro hac vice*) |
| 44 Montgomery St., 41st Floor | **SUSMAN GODFREY L.L.P.** |
| San Francisco, CA 94104 | 1301 Avenue of the Americas, 32nd Floor |
| Tel.: (415) 293-6800 | New York, NY 10019-6023 |
| Fax: (415) 293-6899 | Tel.: (212) 336-8330 |
| mmao@bsfllp.com | Fax: (212) 336-8340 |
| srodriguez@bsfllp.com | bcarmody@susmangodfrey.com |
| brichardson@bsfllp.com | srabin@susmangodfrey.com |
| | sshepard@susmangodfrey.com |
| James Lee (admitted *pro hac vice*) | afrawley@susmangodfrey.com |
| Rossana Baeza (admitted *pro hac vice*) | |
| **BOIES SCHILLER FLEXNER LLP** | John A. Yanchunis (admitted *pro hac vice*) |
| 100 SE 2nd St., 28th Floor | Ryan J. McGee (admitted *pro hac vice*) |
| Miami, FL 33131 | **MORGAN & MORGAN** |
| Tel.: (305) 539-8400 | 201 N. Franklin Street, 7th Floor |
| Fax: (303) 539-1307 | Tampa, FL 33602 |
| jlee@bsfllp.com | Tel.: (813) 223-5505 |
| rbaeza@bsfllp.com | jyanchunis@forthepeople.com |
| | rmcgee@forthepeople.com |
| Amanda K. Bonn, CA Bar No. 270891 | |
| **SUSMAN GODFREY L.L.P** | |
| 1900 Avenue of the Stars, Suite 1400 | |
| Los Angeles, CA. 90067 | |
| Tel: (310) 789-3100 | |
| Fax: (310) 789-3150 | |
| abonn@susmangodfrey.com | |

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK-SVK<br><br>**PLAINTIFFS' MOTION TO COMPEL REGARDING DISPUTE P3** |

**INTRODUCTION**

Since September 2020, Plaintiffs have sought relevant discovery concerning Plaintiffs' data (Dispute P3, RFP 18). Unfortunately, Google has persistently opposed this discovery, made limited and obscured productions,[1] and withheld relevant data that should have been produced pursuant to the Court orders.

Testimony by Google's 30(b)(6) representative, Dr. Glenn Berntson, on June 16 confirmed that Google is withholding data mapped to and associated with identifiers linked to Plaintiffs and their devices, including device identifiers, IP addresses, and Google Analytics identifiers. Dr. Berntson testified that Google stores data mapped to and associated with these identifiers (such as "mapped" twice baked cookies), and that Google stores mapping tables showing how the data is tied and associated.

Based on that testimony and other recent discovery, Plaintiffs now request an order from the Court requiring Google to: (1) produce all data linked or mapped to any identifier associated with Plaintiffs or their devices, including without limitation (including all data associated or mapped with authenticated, unauthenticated, device-based, pseudonymous, and any other identifiers, such as mapped ▮ and device identifiers mapped to their Google Analytics IDs); (2) produce an adequately prepared corporate representative to testify about all of Google's mapping and tracking across all of Google's technologies; and (3) provide Plaintiffs' attorneys and experts, with the assistance of the Special Master, onsite access to a clean room in which Plaintiffs' attorneys and experts will be permitted to access and use internal Google tools, logs, and data for purposes of identifying the authenticated and unauthenticated data concerning the named Plaintiffs and their devices, including the Dremel tool reflected in Exhibit 1. Plaintiffs respectfully request the Court grant and compel this relief by July 16, 2021.

---

[1] Since briefing on these disputes was ordered, Google has very recently made voluminous productions: on the evening of June 14, Google produced approximately 59,280 pages of documents, and on the evening of June 18, Google made three productions to Plaintiffs totaling approximately 91,750 pages of documents. All previous productions totaled approximately 78,542 pages, chiefly consisting of Google's publicly-available policies. Plaintiffs have been reviewing and continue to review these documents.

## BACKGROUND

On September 30, 2020, Plaintiffs served RFP No. 18 (Dispute P3). RFP 18 requests "Documents concerning Plaintiffs, including Plaintiffs' use of Google services, all data collected by Google from and regarding Plaintiffs, and Google's use of all data collected by Google from and regarding Plaintiffs." *See* Dkt. 140 at 6–7. The parties met and conferred regarding this request, with Google demanding and Plaintiffs providing certain consent forms. Dkt. 133-1, at 3. Google never denied that Plaintiffs' data is mapped and stored at Google; instead, Google has claimed that internal Google policies prevented it from accessing and producing Plaintiffs' data. Plaintiffs at all times sought all data that Google has on Plaintiffs and their activity, as well as identifiers and other mechanisms by which Google maps and tracks Plaintiffs (whether by their accounts, devices, electronic addresses, or otherwise).

In late May and early June 2021, pursuant to Google's request and the Court's guidance, Plaintiffs provided Google with what Google deems "unauthenticated cookies' values" in the form of NID, ANID, and IDE values contained in cookies placed on Plaintiffs' devices while they were browsing privately in Chrome's Incognito mode. On June 2, this Court ordered Google to use those values to produce "all of the unauthenticated data that is associated from this search by th[o]se identifiers." Dkt. 194-3, at 30:24–25. On June 9, Google produced what it alleged were "data associated with the ▮▮▮▮▮▮▮▮ in the Display Ad Log that has X-Client-Data Header information." Ex. 3. Despite Plaintiffs repeatedly framing the scope of the request to include all data (*e.g.*, all twice-baked cookie values associated or mapped with Plaintiffs or their devices, electronic addresses, and any other identifier by which Google maps or tracks Plaintiffs), Google produced limited information based on those particular "unauthenticated cookies' values," without more. *See* Ex. 2. The values included general metadata and "uid" values, but Google did not provide any other data (*e.g.*, identifiers mapped to accounts, devices, electronic addresses, or other means by which Google maps or tracks Plaintiffs) or explanation of this production. Ex. 3.

At the June 16 Rule 30(b)(6) deposition, Google produced Dr. Glenn Berntson, a Google engineering director focused on Google Ad Manager authorized buyers and open bidding. Dr. Berntson had limited knowledge of Google Analytics, was not familiar with technologies outside

1  of Google Ad Manager, and could not adequately explain technologies involved with mapping and
2  tracking Plaintiffs and their relevant activity. Ex. 5, at 17:24–19:18, 195:5–195:5; see Ex. 6
3  (internal Google design document for twice-baked cookies). Dr. Berntson was not prepared to
4  testify about Google's ▮▮▮ mapping database or the internal Dremel search tool for ▮▮▮.
5      Even though the parties repeatedly met and conferred about the Dremel tool, an image of
6  which was included in a prior submission to the Court, Dkt. 177, at 11, Dr. Berntson was not
7  familiar with and unable to explain the majority ▮▮▮▮▮▮ available for search via
8  that tool. Ex. 5, at 48:16–51:16, 76:19–23, 149:17–150:20, 182:1–182:24, 184:16–185:9. For
9  example, ▮▮▮▮▮▮
10 ▮▮▮▮▮▮ and Dr. Berntson was not
11 prepared to testify on these parameters. Ex. 5 at 51:1–17, 150:15–20, 182:1–24. Plaintiffs had
12 asked Google to produce Plaintiffs' authenticated and unauthenticated data associated with their
13 device identifiers and IP addresses as far back as May 21. Ex. 7. Although Google had refused to
14 produce this data, Google was on notice of Plaintiffs' interest in these identifiers, and yet Google
15 produced a Rule 30(b)(6) witness unprepared to answer any questions about those identifiers and
16 potential searches.
17     Dr. Berntson's testimony at the same time confirmed that there are other identifiers that
18 can and should be used to produce data responsive to Plaintiffs' requests. For example, Dr.
19 Berntson testified that, ▮▮▮▮▮▮
20 ▮▮▮▮▮▮ Ex. 5, at 78:15–
21 81:20, 126:1–131:1. This is ▮▮▮▮▮▮
22 ▮▮▮ Ex. 5, at 294:20–302:8. This data is then ▮▮▮
23 ▮▮▮▮▮▮
24 ▮▮▮ by Google. Ex. 5, at 122:10–123:7, 301:7–
25 302:8]]; Ex. 8, at '78436, '78439. None of this data mapped and stored with the device identifiers
26 and IP addresses has been produced by Google, including for the Plaintiffs.
27     Dr. Berntson also explained that such device data is mapped to the twice-baked cookies
28 ▮▮▮, but he could not identify where

because he was not prepared. Ex. 5, at 322:8–325:1. He did testify, however, that a ███████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████ Ex. 5, at 52:1–53:7, 150:15–153:18, 266:4–271:20. Google has produced none of these "mapped" twice-baked cookies or mapping tables for the Plaintiffs. Dr. Berntson's testimony demonstrates that Google could obtain such data from Google's data storage for the Plaintiffs.

Dr. Berntson also conceded that Google Analytics IDs provided by websites are collected alongside device identifiers such as the ADID and IDFA. Ex. 5, at 52:1–53:7, 150:15–152:4, 171:22–172:8, 246:10–252:19, 270:15–271:20. The data associated with Plaintiffs' Google Analytics IDs also has not been produced by Google, and counsel for Google avoided questions regarding the Google Analytics cookies or cookie values that Google would need from Plaintiffs, if any, to obtain their Google Analytics IDs and associated data. Ex. 7. Indeed, Dr. Berntson testified that Google collects device identifiers for data mapping with Google's advertising services with Google Analytics. Ex. 5, at 266:18–267:9, 309:19–310:18. Again, Google has not produced any of this data mapped and stored with the Google Analytics IDs, including for the Plaintiffs.

## LEGAL STANDARDS

A motion to compel is ripe when a party has failed to respond adequately to a discovery request. Fed. R. Civ. P. 37(a)(3). A party "may obtain discovery regarding any nonprivileged material that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). "The relevance standard is commonly recognized as one that is necessarily broad in scope in order to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty v. Comentiy Capital Bank & Comentiy Bank*, 2017 WL 1885677, *2 (S.D. Cal. May 9, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Wide

access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).

The purpose of Rule 30(b)(6) is to streamline the discovery process. *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251 F.R.D. 534, 538 (D. Nev. 2008). Rule 30(b)(6) "requires a corporation to designate a deponent sufficiently knowledgeable to testify on the corporation's behalf about information know or reasonably available to the corporation." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 289 (N.D. Cal. 2015) (citing Fed. R. Civ. P. 30). Corporations must not only produce sufficient persons to satisfy the request, "but more importantly, prepare them so that they may give complete, knowledge, and binding answers on behalf of the corporation." *Id.* (quoting *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 10-cv-01189-LHK, 2011 WL 3895118, *2 (N.D. Cal. Aug. 29, 2011)).

When technologies fall within relevant discovery, courts have ordered production of those technologies for inspection and testing by a party's attorneys and experts. *See*, *e.g.*, *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2011 WL 2293224, *3 (N.D. Cal. June 8, 2011) (requiring Apple to allow plaintiffs' expert to inspect an internal tool); *S. Peninsula Hosp., Inc. v. Xerox State Healthcare, LLC*, No. 3:15-cv-000177-TMB, 2019 WL 1873297, *6 (D. Alaska Feb. 5, 2019) (compelling defendant to provide plaintiff's expert with onsite access to a database for purposes of "demonstrat[ing] the existence of the class").

## **ARGUMENT**

For nearly nine months, Plaintiffs have sought access to data Google collected from and associated with their browsing activity, including the identifiers Google has used to track Plaintiffs through their devices and other means. Google has made incomplete productions consisting of partial data, then designated a witness with limited knowledge on these technologies for Plaintiffs' June 16 30(b)(6) deposition, thus obstructing Plaintiffs' basic discovery. Plaintiffs' attorneys and experts are entitled to production of all of Plaintiffs' data, the deposition of an adequately prepared corporate designee, and should be permitted clean room access to Google's tools and data to explore and gather Plaintiffs' data, including without limitation to ascertain the identifiers that

Google has used to map and track Plaintiffs and test first-hand how Google's mapping and tracking technologies work between Google's products, such as Google Analytics and Google Ad Manager.

### A. The Court Should Compel Google to Produce All Data Regarding Plaintiffs

Plaintiffs have sought and are entitled to their data, including all authenticated and unauthenticated identifiers Google uses to map and track Plaintiffs, and the data so associated with them. These include the ▌

▌ identifiers, ▌ identifiers, as well as any identifiers Google keys or maps to those identifiers, such as ▌ (for both Google Analytics and Google Ad Manager), and ▌. Ex. 1; Ex. 5, at 52:1–53:7, 197:3–198:11. These identifiers, and the data so associated with them, are at the heart of this case.

The Court should order production of this data no later than July 16, 2021.

#### 1. Plaintiffs' Data is Highly Relevant

At the core of this litigation, Plaintiffs allege Google, without consent, surreptitiously intercepts and collects Plaintiffs' and Class Members' activity while in private browsing mode, including Chrome's Incognito mode. *See, e.g.*, Dkt. 136-1 ¶¶ 11, 63, 168, 173, 178, 183, 188, 192. This data collection includes the website information, as well as Plaintiffs' and Class Members' respective IP addresses, browser and device information, user IDs, geolocation data, and cookie data, which Google uses to fingerprint individuals across the internet for Google's benefit, deriving revenue from marketing and improving its products. *Id*, ¶¶ 63, 100.

Discovery has revealed that Google maps and tracks Plaintiffs' and Class Members' private browsing activity even when they are not logged into any accounts (Google or otherwise). Dkt. 140 at 4. Although Google argues private browsing activity is not associated with "specific users," Dkt. 140, at 5, Google does not deny that the data is still captured and stored with "unauthenticated identifiers" such as twice-baked cookies, then mapped with other data, such as device IDs, IP addresses, user agent strings, and non-resettable identifiers (*e.g.*, identifiers associated with operating system installations). Ex. 5, at 153:22–155:18. Indeed, Dr. Berntson testified that ▌

1
2  ███████████████████████████████████████████████ Ex. 5, at 52:1–53:7, 114:21–
3  118:19, 120:1–123:7, 150:15–152:4, 171:22–172:8, 180:5–181:12, 246:10–252:19, 270:15–
4  271:20.

Instead, Google opposes locating this data because it might violate Google policies and procedures. Dkt. 155, at 5. This opposition is disingenuous: Google systems store all of this information together regardless of what their human personnel do. Ex. 8, at '78435, '78436, '78438. And Plaintiffs provided their consent (for purposes of discovery) to access and produce this data in April. Dkt. 133-1, at 3. Plaintiffs are entitled to the data Google stores and maps to their accounts, devices and hardware, and other identifiers that Google uses to map and track Plaintiffs. The content, format, and volume of this information is paramount.

**2. Google Faces No Undue Burden to Produce Plaintiffs' Data**

Google has demonstrated it can readily access Plaintiffs' data via Dremel and other internal technologies. Google has purportedly used some of Plaintiffs' data to produce some of this data based on the use of these technologies. Google can and should fulfill this discovery obligation without any further delay. *See*, *e.g.*, *In re Google Litig.*, No. C 08-03172 RMW, 2011 WL 286173 (N.D. Cal. Jan. 27, 2011) (compelling discovery where party failed to demonstrate the burdensome nature of the discovery request).

**B. The Court Should Compel Google to Produce an Adequately Prepared Rule 30(b)(6) Deponent**

Plaintiffs' Rule 30(b)(6) deposition notice contained 12 topics. Ex. 4. Google refused to provide any testimony concerning its preservation of logs, databases, storage systems, and data structures containing Plaintiffs' data for purposes of this litigation, including any changes during the class period (Topic 5). Ex. 5, at 13:1–16, 358:10–16. Dr. Berntson was not prepared to testify about any aspect of logs, databases, storage systems, and data structures containing Plaintiffs' data other than those in Google Analytics and Google Ad Manager—whether it be identification of them (Topic 1), Google's ability to search them (Topic 2), the origins of them (Topic 3), and the respective retention policies (Topic 4). Ex. 5, at 312:2–313:18, 366:16–367:13. Dr. Berntson was

not prepared to testify about ▇▇▇▇▇▇▇▇▇▇ in Dremel, which relate to Google's identification and correlation of users, devices, electronic addresses, and other identifiers (Topic 6). Ex. 5, at 47:18–48:14, 48:16–51:16, 76:19–23, 149:17–150:20, 182:1–182:24, 184:16–185:9.

Google's refusal to permit Dr. Berntson to testify about Topic 5, and failure to adequately prepare Dr. Berntson on Topics 1, 2, 3, 4, and 6, is tantamount to a failure to appear. *Lofton*, 308 F.R.D. at 289 (citing *JSR Micro, Inc. v. QBE Ins. Corp.*, No. C-09-03044 PJH (EDL), 2010 WL 1957465, *2 (N.D. Cal. May 14, 2010)).

The Court should order Google to produce an adequately prepared and knowledgeable witness or witnesses for testimony on Topics 1 through 6 no later than July 16, 2021.

### C. The Court Should Compel Google to Provide Plaintiffs' Attorneys and Experts With Clean Room Access, With the Special Master.

Google has represented that it can use the Dremel tool to pull data associated with Plaintiffs and their devices. Dkt. 155, at 4. Instead of doing a search by Plaintiffs' device identifiers, Google tried to lead Plaintiffs off the trail with new cookie values that Google wants Plaintiffs to generate from new private browsing sessions, while refusing to explain how Google tracks or stored Plaintiffs' data, including with Google Analytics. Ex. 7. When Google produced the data, it was clear that these searches were not done with the data that Google had available, including device identifiers and IP addresses. *See* Ex. 2. Plaintiffs inquired to determine how the data was derived, and Google admitted it only conducted a limited search using Dremel using just the new cookie values, but not the other data on the Plaintiffs that it already held. Ex. 3.

Google did not produce any "unauthenticated data" associated with any of Plaintiffs' various devices or IP addresses (information that Plaintiffs provided in February) and only produced data strictly keyed "to Plaintiffs' [new] raw cookie values," without any data derived through Dremel or other technologies Google uses to map one value (*e.g.*, cookie values) with another value (*e.g.*, device identifiers or IP addresses). Ex. 5, at 153:22–155:18. Plaintiffs specifically inquired what other twice-baked cookies and unauthenticated identifiers are associated with Plaintiffs, their devices, or browsers, and how those identifiers are derived, to which Google refused to respond. Further, in Google's production ▇▇▇▇▇▇▇▇▇▇▇

1 ██████████████████████████████ Ex. 3, was listed as "<redacted>" for each Plaintiff.
2 *See*, *e.g.*, Ex. 2, at '78399.

3   In addition, Google tracks Plaintiffs' logins on third party websites with Google Analytics, which again is mapped to the Plaintiffs' device identifiers. Ex. 5, at 266:18–267:9, 269:18–271:10. None of Plaintiffs' mapped data with Google Analytics was produced. All of this is the same limited production Google proposed in the May 6 Joint Submission. Dkt. 155, at 4. Google has thus refused to produce "identification data for the named Plaintiffs . . . [including] authenticated data identifiers as to both the individuals and their devices provided Plaintiffs have provided the necessary device information, as well as unauthenticated data." Dkt. 147-1, at 2.

  Google has refused to be cooperative, and has been trying to burn the limited time that Plaintiffs have to complete discovery. The Court should order Google, by July 16, 2021, to permit Plaintiffs' attorneys and experts with clean room access, with the Special Master, including access to and use of the following tools and data: 1) the search tool shown in Goog-Brwn-000028920; 2) any logs, databases, or other data structures containing data and information concerning the named plaintiffs, their devices, and/or their browsers, whether authenticated or unauthenticated; and 3) any additional tools or data necessary for purposes of identifying the authenticated and unauthenticated identifiers tied to the named plaintiffs, their devices, and/or their browsers. In advance of this access, the Court should also order Google to provide Plaintiffs' attorneys and experts with documents sufficient to guide their use of the tools and data, including documents that describe the data format and fields.

### 1. Plaintiffs' Data is Highly Relevant.

Plaintiffs incorporate by reference the arguments from Section (A)(1) above. Google stores Plaintiffs' data in various logs, databases, and other data structures accessible only by Google.

### 2. The Proposed Clean Room is Proportional to the Litigation.

Plaintiffs' request for clean room access is *less* burdensome than alternatives and provides Google with safeguards against dissemination; neither technical nor confidentiality issues prevent this request. Plaintiffs have retained and disclosed their consulting experts to Google, and Google approved those experts to receive and review all information designated under the Protective

Order—from confidential documents to source code. Dkt. 81. Google's initial opposition to Plaintiffs' clean room request was based on the "simple, non-prejudicial alternative" of Plaintiffs providing cookie values from their private browsing sessions to Google so that Google can produce the data Plaintiffs requested. Dkt. 155, at 5; Dkt. 177, at 12–13. Plaintiffs provided those values, and Google limited the production to cryptic, incomplete data, well short of the data Plaintiffs have repeatedly sought. Google has taken a paradoxical position, acknowledging that its internal tools are "confidential" under the protective order, but Plaintiffs' attorneys' and experts' testing any of those tools would be unduly burdensome and not proportional to the litigation. Dkt. 177, at 12–13. Plaintiffs have identified the existence of mapping and tracking technologies, confirmed at least basic functionality of those mapping and tracking technologies (*e.g.*, that one identifier, such as a twice-baked cookie value, can be used to obtain other identifiers, such as device and hardware IDs), and now seek unencumbered access to those technologies and other tools and data to obtain all data associated with Plaintiffs and their devices and understand how Google uses it. Plaintiffs' attempts to obtain this discovery through less-drastic means have been met with opposition and incomplete responses, and Google has no basis to complain that Plaintiffs' request for a clean room is too difficult or burdensome. *See*, *e.g.*, *In re Google Litig.*, 2011 WL 286173 (compelling discovery where party failed to demonstrate the burdensome nature of the discovery request).

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court enter the order submitted with this motion.

Dated: June 23, 2021                                Respectfully submitted,


                                                    By: /s/ Michael F. Ram
                                                        Michael F. Ram

                                                    Michael F. Ram (SBN 104805)
                                                    mram@forthepeople.com
                                                    MORGAN & MORGAN
                                                    COMPLEX LITIGATION GROUP
                                                    711 Van Ness Avenue, Suite 500
                                                    San Francisco, CA 94102
                                                    Telephone: (415) 358-6913

|  |  |
|---|---|
| 1 | John A. Yanchunis (pro hac vice) |
|  | jyanchunis@forthepeople.com |
| 2 | Ryan J. McGee (pro hac vice) |
|  | rmcgee@forthepeople.com |
| 3 | Ra O. Amen (pro hac vice) |
|  | ramen@forthepeople.com |
| 4 | MORGAN & MORGAN, P.A. |
|  | 201 N Franklin Street, 7th Floor |
| 5 | Tampa, FL 33602 |
| 6 | Telephone: (813) 223-5505 |
| 7 | Amanda Bonn (CA Bar No. 270891) |
|  | abonn@susmangodfrey.com |
| 8 | SUSMAN GODFREY L.L.P. |
|  | 1900 Avenue of the Stars, Suite 1400 |
| 9 | Los Angeles, CA 90067 |
| 10 | Telephone: (310) 789-3100 |
| 11 | Mark C. Mao (CA Bar No. 236165) |
|  | mmao@bsfllp.com |
| 12 | Beko Reblitz-Richardson (CA Bar No. 238027) |
|  | brichardson@bsfllp.com |
| 13 | BOIES SCHILLER FLEXNER LLP |
|  | 44 Montgomery Street, 41st Floor |
| 14 | San Francisco, CA 94104 |
| 15 | Telephone: (415) 293 6858 |
|  | Facsimile (415) 999 9695 |
| 16 |  |
|  | Jesse Panuccio (admitted *pro hac vice*) |
| 17 | jpanuccio@bsfllp.com |
|  | BOIES SCHILLER FLEXNER LLP |
| 18 | 1401 New York Ave, NW |
|  | Washington, DC 20005 |
| 19 | Tel.: (202) 237-2727 |
| 20 | Fax: (202) 237-6131 |
| 21 | James Lee (admitted *pro hac vice*) |
|  | jlee@bsfllp.com |
| 22 | BOIES SCHILLER FLEXNER LLP |
|  | 100 SE 2nd Street, Suite 2800 |
| 23 | Miami, FL 33131 |
| 24 | Telephone: (305) 539-8400 |
|  | Facsimile: (305) 539-1307 |
| 25 |  |
|  | William Christopher Carmody (*pro hac vice*) |
| 26 | bcarmody@susmangodfrey.com |
|  | Shawn J. Rabin (*pro hac vice*) |
| 27 | srabin@susmangodfrey.com |
|  | Steven Shepard (*pro hac vice*) |
| 28 | sshepard@susmangodfrey.com |

11

PLAINTIFFS' MOTION TO COMPEL RE: P3         CASE NO. 5:20-CV-03664-LHK

|   |   |
|---|---|
| 1 | Alexander P. Frawley (*pro hac vice*) |
|   | afrawley@susmangodfrey.com |
| 2 | SUSMAN GODFREY L.L.P. |
|   | 1301 Avenue of the Americas, 32nd Floor |
| 3 | New York, NY  10019 |
|   | Telephone: (212) 336-8330 |

*Attorneys for Plaintiffs*