QUINN EMANUEL URQUHART & SULLIVAN, LLP

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK<br><br>**GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS SIX AND SEVEN OF PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>The Honorable Lucy H. Koh<br>Courtroom 8 – 4th Floor<br>Date:  September 30, 2021<br>Time:   1:30 p.m.<br>Amended Complaint Filed: April 15, 2021 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................................1

ARGUMENT .......................................................................................................................3

I.     PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE
DISMISSED ...........................................................................................................3

       A.     The SAC Does Not State A Claim For Breach Of The Incognito
Screen ........................................................................................................3

           1.     The Incognito Screen Is Not Incorporated In The Alleged
Contract ..........................................................................................3

           2.     The Incognito Screen Does Not Contain The Alleged
Promises .........................................................................................5

       B.     The SAC Does Not State A Claim For Breach Of The Privacy
Policy Or The Documents Linked To The Privacy Policy............................7

       C.     The SAC Does Not State A Claim For Breach Of The Chrome
Privacy Notice .........................................................................................11

II.     PLAINTIFFS' UCL CLAIM SHOULD BE DISMISSED .....................................13

CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amtower v. Photon Dynamics, Inc.*,
158 Cal. App. 4th 1582 (2008) ............................................................................... 4

*Backhaut v. Apple, Inc.*
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ................................................................. 15

*Beasley v. Conagra Brands, Inc.*,
374 F. Supp. 3d 869 (N.D. Cal. 2019) ................................................................. 15

*Blaustein v. Burton*,
9 Cal. App. 3d 161 (1970) .................................................................................... 13

*Block v. eBay, Inc.*,
747 F.3d 1135 (9th Cir. 2014) .............................................................. 1, 5, 8, 10, 11

*Bradach v. Pharmavite, LLC*,
735 F. App'x 251 (9th Cir. 2018) ........................................................................ 14

*Calhoun v. Google LLC*,
2021 WL 1056532 (N.D. Cal. Mar. 17, 2021) ............................................ 2, 7, 8, 14

*Chan v. Drexel Burnham Lambert, Inc.*,
178 Cal. App. 3d 632 (1986) ................................................................................. 4

*Cottle v. Plaid, Inc.*,
2021 WL 1721177 (N.D. Cal. Apr. 30, 2021) ..................................................... 13

*Dunkel v. eBay Inc.*,
2014 WL 1117886 (N.D. Cal. Mar. 19, 2014) ..................................................... 10

*Edwards v. Arthur Andersen LLP*,
44 Cal. 4th 937 (2008) ........................................................................................... 1

*Huynh v. Quora, Inc.*,
2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ................................................... 13

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................... 1

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..................................................................... 1, 5, 8, 10

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................... 1, 4, 9, 10

*In re Facebook Priv. Litig.*,
572 Fed. App'x. 494 (9th Cir. 2014) .................................................................... 13

*In re Google Location History*,
    2021 WL 519380 (N.D. Cal. Jan. 25, 2021) ............................................................. 10

*In re iPhone Application Litig.*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ......................................................... 13

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
    2021 WL 148063 (S.D. Cal. Jan. 15, 2021) ............................................................. 15

*Johnson v. Pluralsight, LLC*,
    728 F. App'x 674 (9th Cir. 2018) ............................................................................. 14

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) .............................................................................. 2, 13

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ............................................................................................. 14

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (2005) .................................................................................. 15

*Marchand v. Northrop Grumman Corp.*,
    2017 WL 2633132 (N.D. Cal. June 19, 2017) ............................................................ 4

*Mountain F. Enters., Inc. v. Wiarcom, Inc.*,
    2020 WL 1547442 (E.D. Cal. Apr. 1, 2020) .............................................................. 3

*Murphy v. Hartford Accident & Indem. Co.*,
    177 Cal. App. 2d 539 (1960) ..................................................................................... 1

*Pemberton v. Nationstar Mortg. LLC*,
    331 F. Supp. 3d 1018 (S.D. Cal. 2018) ................................................................... 12

*People v. Hallner*,
    43 Cal. 2d 715 (1954) .............................................................................................. 14

*Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman*,
    65 Cal. App. 4th 1469 (1998) ............................................................................... 7, 13

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ................................................................................... 14

*Rodney v. Safeway, Inc.*,
    2011 WL 5241113 (N.D. Cal. Nov. 1, 2011) ............................................................. 5

*Rodriguez v. Google LLC*,
    2021 WL 2026762 (N.D. Cal. May 21, 2021) ....................................................... 2, 14

*Shaw v. Regents of Univ. of Cal.*,
    58 Cal. App. 4th 44 (1997) ..................................................................................... 3, 4

*St. Paul Mercury Insurance Co. v. American Safety Indemnity Co.*,
    2014 WL 2120347 (N.D. Cal. May 21, 2014) ............................................................ 4

*Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n,*
   903 F.3d 862 (9th Cir. 2018) .................................................................................................. 12

*Wal-Noon Corp. v. Hill,*
   45 Cal. App. 3d 605 (1975) ...................................................................................................... 7

*Williams v. Apple,*
   2021 WL 2186223 (N.D. Cal. May 28, 2021) ...................................................................... 1, 2

*Williams v. Foster,*
   216 Cal. App. 3d 510 (1989) .................................................................................................. 14

## **Statutory Authorities**

Cal. Civ. Proc. Code § 1858 ......................................................................................................... 1

California Consumer Privacy Act ............................................................................................... 14

California Privacy Rights Act ..................................................................................................... 14

## **Additional Authorities**

MERRIAM-WEBSTER, *https://www.merriam-webster.com/dictionary/incognito#* (last visited June
   29, 2021)..................................................................................................................................... 6

GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT

## INTRODUCTION

In asking the Court to find that Google's Privacy Policy and other notices made a contractual promise that "Google would not collect and use private browsing data," SAC ¶ 271, Plaintiffs ignore the following bedrock principles of California contract law: (1) the contract must actually "*express* the obligation sued upon*," *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) (Koh, J.) (emphasis added) (quoting *Murphy v. Hartford Accident & Indem. Co.*, 177 Cal. App. 2d 539 (1960)); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (allegedly breached promise must be "explicit"); (2) the provision must include "explicit promissory language" and not merely a "description of how [the defendant's] system works," *Block v. eBay, Inc.*, 747 F.3d 1135, 1138–39 (9th Cir. 2014); (3) a "simple failure to disclose a practice doesn't constitute breach of contract," *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019); and (4) "when courts construe an instrument, a judge is 'not to insert what has been omitted, or to omit what has been inserted,'" *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008) (quoting Cal. Civ. Proc. Code § 1858).

The Court should decline Plaintiffs' invitation to disregard these established rules and *infer* such a promise from the alleged fact that the documents at issue—which make explicitly clear that "private browsing" does not provide complete privacy from all entities on the web—do not specifically mention that Google may be among those entities if Plaintiffs visit websites that choose to use Google's web services. A court may not imply a promise that is not explicitly stated in the contract simply because a "reasonable user" might infer it from an omission. That turns contract law on its head, and would foment doubt regarding interpretation of standard form contracts in California.

Plaintiffs place great reliance on the Court's earlier holdings that: (1) a "reasonable user" could interpret Google's Incognito Screen and other disclosures in the manner Plaintiffs allege, Dkt. 113 at 18–19; and (2) "courts in construing and applying a standardized form contract seek to effectuate the reasonable expectations of the average member of the public who accepts it." *Williams v. Apple*, 2021 WL 2186223, at *5 (N.D. Cal. May 28, 2021) (Koh, J.). But their reliance here sidesteps a foundational tenet of contract law: before the Court may determine whether a contract

GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT

term is reasonably susceptible to Plaintiffs' interpretation, Plaintiffs first must identify a specific contractual provision that ***affirmatively*** expresses the alleged promise. There is none here. Accordingly, this case is distinguishable from *Williams*, where plaintiffs alleged that by storing data on "non-Apple remote servers," Apple breached its express promise that users' "*content will be ... stored by Apple*." *Id.* at *1-2 (emphasis in original); *see also Calhoun v. Google LLC*, 2021 WL 1056532, at *18 (N.D. Cal. Mar. 17, 2021) (Koh, J.) (holding plaintiffs stated breach of contract claim based on Google's statement that "the personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google account by turning on sync"). In stark contrast, Plaintiffs here cannot point to a single statement in their alleged contract that affirmatively expresses the promise alleged. Their contract claim must be dismissed.

Plaintiffs' UCL claim should also be dismissed because there is no legally viable allegation of lost money or property. Plaintiffs simply ignore Google's argument that the data Google allegedly misappropriated is not their "property" because it fails to meet the requirements of *Kremen v. Cohen*, including that intangible property "be capable of exclusive possession or control." 337 F.3d 1024, 1030 (9th Cir. 2003). Plaintiffs offer no response to *Kremen*, nor attempt to explain how they could "exclusively" possess or control data like an IP address, cookies, or the URL of a website they visited. That is because they cannot. Plaintiffs also fail to meaningfully distinguish the long line of precedent holding that such data is not "property" under the UCL. Indeed, last month, in *Rodriguez v. Google LLC*, Judge Seeborg dismissed the plaintiffs' UCL claim—brought by the same counsel against Google—because "no federal court has wedged individual digital data into the UCL's 'money or property' box." 2021 WL 2026762, at *8 (N.D. Cal. May 21, 2021). Although *Rodriguez* did not acknowledge *Calhoun*, Judge Seeborg's decision accords with the consistent precedent defining rules upon which businesses and litigants have relied for over a decade. The UCL claim here should be dismissed for the same reason, and for the other reasons explained in the Motion and below.

1

### ARGUMENT

2  **I.    PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED**

3      **A.    The SAC Does Not State A Claim For Breach Of The Incognito Screen**

4          **1.    The Incognito Screen Is Not Incorporated In The Alleged Contract**

5        *First*, Plaintiffs misapprehend California's incorporation by reference doctrine in arguing

6  that the information in the Incognito Screen is incorporated into Google's Privacy Policy and

7  Chrome Privacy Notice. That doctrine requires, at a minimum, that (1) "*the reference [to the*

8  *document] must be clear and unequivocal*," and (2) "the *reference* must be called to the attention of

9  the other party and he must consent thereto." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44,

10  54 (1997) (emphasis added). Neither is the case here. Indeed, Plaintiffs concede (Opp. 5-6) that their

11  alleged contract does not refer to the Incognito *Screen* but argue that the Screen's contents are

12  nevertheless incorporated in documents that mention Incognito *mode*. Not surprisingly, Plaintiffs

13  cite no case supporting such an expansive application of the incorporation by reference doctrine.[1]

14        Plaintiffs correctly observe (Opp. 5) that "[t]he contract need not recite that it '*incorporates*'

15  another document to avail itself of the doctrine's benefits"—*i.e.*, the contract need not use specific

16  language, like "incorporates." But, "[t]he *reference* must, nevertheless, be 'clear and unequivocal,'"

17  as the cases on which Plaintiffs rely (Opp. 7) make clear. *See Mountain F. Enters., Inc. v. Wiarcom,*

18  *Inc.*, 2020 WL 1547442, at *3 (E.D. Cal. Apr. 1, 2020).[2] That reference is lacking here.

19

---

20  [1]  Plaintiffs read too much into *Shaw*'s use of the word "guide," advancing an interpretation that

21  would read out *Shaw*'s requirement that there be a "clear and unequivocal" "*reference*" to the incorporated document. Indeed, in *Shaw*, the Court of Appeal held that the parties' agreement

22  incorporated the University's Patent Policy because: "The patent Agreement (1) directs Shaw to 'Please read the Patent Policy on reverse side and above,' and (2) states that, in signing the patent

23  agreement, Shaw is 'not waiving any rights to a percentage of royalty payments received by University, *as set forth in University Policy Regarding Patents*." 58 Cal. 4th at 54 (emphasis

24  in original). This is the type of "clear and unequivocal" reference California law requires.

25  [2]  *Wiarcom* supports Google's position. There, WiarCom argued that its user agreement incorporated

26  terms and conditions on its webpage by including the statement: "Service is to be provided in accordance with the current Terms and Conditions of Service found at www.WiarCom.com." 2020

27  WL 1547442, at *3. The court held even this reference was insufficient to incorporate the terms because the user would have to go to the webpage and find the relevant link. *Id.* Here, users would

28  have to download and open Chrome, and initiate an Incognito session.

And while Plaintiffs are correct that it is "easy" for contracting parties to "incorporate a document by reference" if they so wish (Opp. 13), they must actually do it; the bar is not so low that even a document *not* referenced (like the Incognito Screen) can be incorporated *by* reference. The very name of the doctrine—"incorporation *by reference*"—demonstrates the flaw in Plaintiffs' argument. *See Facebook Consumer Priv.*, 402 F. Supp. 3d at 791 ("the *reference* to the *document* [must] be *unequivocal*" (emphasis added)); *see also Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608-09 (2008) ("[T]he subject document must contain some clear and unequivocal reference to the fact that that the terms of the external document are incorporated," and even if the other document is "mention[ed]" in the contract, that "is not the same as specifically directing the parties' attention to the terms of the external document in a manner that could be construed as eliciting the parties' consent to its separate terms.").[3]

Plaintiffs also ignore *Shaw*'s requirement that "the reference must be called to the attention of the other party and he must consent thereto." 58 Cal. App. 4th at 54. Under Plaintiffs' theory, the Privacy Policy incorporates by reference the Incognito Screen (merely by mentioning "incognito mode") even for Google account holders who never use Incognito mode, are never shown the Incognito Screen, and thus cannot be said to have "consented" to any alleged term therein. This is particularly problematic given Plaintiffs seek to represent users of non-Chrome private browsers.

---

[3] *See also St. Paul Mercury Insurance Co. v. American Safety Indemnity Co.*, 2014 WL 2120347, at *10 (N.D. Cal. May 21, 2014) (California law "requir[es] specific identification of the extrinsic terms for which incorporation is sought…. Even if the other party is aware of the extrinsic document, an express incorporation is required."); *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 643-45 (1986) (California law "requires the incorporating document to refer to the incorporated document with particularity."). Plaintiffs' reliance (Opp. 7) on *Marchand v. Northrop Grumman Corp.*, 2017 WL 2633132, at *5 (N.D. Cal. June 19, 2017), for the proposition that "[a] document can be incorporated into the contract even when the contract does not explicitly mention the document," is misplaced. *Marchand* involved a plaintiff seeking to avoid an arbitration clause incorporated in a "Dispute Resolution Process" form. The court stated "there is no dispute that the reference to the DRP was clear and unequivocal, that it was drawn to Marchand's attention, or that she received a copy of the DRP." *Id.* The dispute was whether a reference to a dispute resolution "Guide" was clear and unequivocal given that "the document was not entitled the 'Guide.'" The Court found the plaintiff received a copy of the Guide and held that "[r]egardless of how the document is titled, it is enough that the Acknowledgement Form directed [plaintiff] to it." *Id.* Here, by contrast, the alleged contract does not mention the Incognito Screen *by any name*.

GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS SIX AND SEVEN OF PLAINTIFFS' SECOND AMENDED COMPLAINT

*Second*, Plaintiffs' argument (Opp. 8) that the Incognito Screen should be used to "interpret" their alleged contract "to prove a meaning to which the language of the instrument is reasonably susceptible," is meritless. Plaintiffs rely entirely on case law demonstrating that, before the Court can even consider extrinsic evidence, Plaintiffs first need to identify a specific, affirmative representation that is "reasonably susceptible" of Plaintiffs' interpretation. *See, e.g.*, *Rodney v. Safeway, Inc.*, 2011 WL 5241113, at *2 (N.D. Cal. Nov. 1, 2011) (using FAQ page to interpret Safeway's affirmative representations regarding the manner in which users would be charged for groceries purchased online). There is none. Plaintiffs also cite no authority for the proposition that, in interpreting a standardized consumer contract, a court may consider extrinsic statements made to some consumers (*e.g.*, users of Incognito) but not others (*e.g.*, users of other private browsers).[4]

## 2.   The Incognito Screen Does Not Contain The Alleged Promises

Even if the Incognito Screen were incorporated into the alleged contract—it is not—it merely provides a "description of how [Incognito mode] works" and is not a binding promise. *Block*, 747 F.3d at 1138–39; *see also Facebook Internet Tracking*, 956 F.3d at 611 (affirming dismissal of breach of contract claim because a data policy "provide[d] information—not commitments— regarding Facebook's use of information and how users can control that information").[5] The Incognito Screen is an informative notice on how private browsing works on Chrome, not a binding commitment. Plaintiffs' claim that Google breached statements therein thus fails at the outset.

---

[4]  Contrary to Plaintiffs' argument (Opp. 7-8), Google is not "shun[ning] the [Incognito] Screen," and there is nothing inconsistent about Google's position that the Incognito Screen would have dispelled confusion by Plaintiffs (all of whom allege they used Incognito mode) regarding the scope of privacy Incognito offers. The Incognito Screen is informational and provides *notice* that Incognito mode offers privacy from "other people who use this device," but does not provide *complete* privacy from everyone. The Ninth Circuit's *Block* decision holds that companies can provide information to consumers without turning their statements into contractual promises. 747 F.3d at 1138-39.

[5]  In *Block*, the Ninth Circuit affirmed dismissal of a breach of contract claim based on eBay's statement in its User Agreement that "We are not involved in the actual transaction between buyers and sellers," because the statement "contains no promissory language." 747 F.3d at 1138. The Court contrasted these informational statements with "other clauses in the agreement [that] contain explicit promissory language" and "communicate promises both by the user (e.g., 'While using eBay sites, services and tools, you will not … violate any laws….'), and by eBay (e.g., 'If we resolve a dispute in the buyer's favor, we will refund the buyer for the full cost of the item…')." *Id.* at 1138-39.

1    Plaintiffs' argument also fails because the Incognito Screen does not contain the alleged

2  promise. Plaintiffs argue they "allege more than a mere failure to disclose. Google's Splash Screen

3  *promised that Google would not collect private browsing data*." Opp. 11 (emphasis added). But

4  forcefully repeating *ipse dixit* does not make it true. A plain reading of the Incognito Screen belies

5  Plaintiffs' assertion. Indeed, in support of their argument, Plaintiffs point to the Court's earlier

6  finding that, "[b]ased on the *omission* of Google from the list of entities that can see a user's activity,

7  a user *might* have reasonably concluded that Google would not see his or her activity." Opp. 9

8  (quoting Dkt. 113 at 17) (emphasis added). The Court's determination concerning Google's express

9  consent defense at the pleading stage in no way suggested that the alleged omission is tantamount

10  to an express contractual promise that "Google would not collect private browsing data." That would

11  be inconsistent with California principles of contract interpretation.

12    Plaintiffs next point (Opp. 9) to "three [] provisions on the Splash Screen" in which they

13  claim Google made the alleged promise. *First*, Plaintiffs point to the Incognito Screen's statements

14  "You've gone incognito" and "Now you can browse privately…." *Id.* (citing SAC ¶ 53). But

15  "incognito" does not mean "invisible,"[6] and "Now you can browse privately…." does not constitute

16  an express, unequivocal promise that browsing is *unseen by anyone*, particularly given that (1) the

17  remainder of that sentence qualifies it by stating "and other people who use this device won't see

18  your activity," and (2) the Incognito Screen makes clear that a user's activity is not completely

19  private and can be viewed by numerous third parties.

20    *Second*, Plaintiffs argue that the statement "*Chrome* won't save" certain information, like

21  "browsing history" and "cookies and site data" is a promise that Chrome will not send data to

22  Google's servers. Opp. 9 (citing SAC ¶ 54). Plaintiffs do not specifically allege that Google

23  breached this alleged "promise," *see* SAC ¶ 271, nor could they plausibly do so. The statement

24

---

25    [6]  Webster's defines "incognito" to mean "with one's *identity* concealed." MERRIAM-WEBSTER,

26  https://www.merriam-webster.com/dictionary/incognito# (last visited June 29, 2021) (emphasis added). That is precisely what Incognito mode does. When a user initiates an Incognito session, he

27  or she is automatically logged out of their Google account, cookies previously placed on the user's browser are not shared, and cookies placed during the Incognito session are deleted when the session

28  is closed. *See* Exs. 22 at 10, 23-24. Plaintiffs do not dispute this is how Incognito mode works.

means precisely what it says: in Incognito mode, Chrome—*i.e.*, the browser application on a user's device—will not save "browsing history" or "cookies or site data" on the device after the user closes the session. This ensures that Incognito mode functions as intended and "other people who use this device won't see your activity." The Chrome Privacy Notice reinforces this point, stating "[y]ou can limit the information Chrome stores *on your system* by using incognito mode." Ex. 22 at 10 (emphasis added). The SAC does not allege that Chrome saves browsing history or cookies in violation of that promise; instead, the SAC alleges that, when users in Incognito—*or* another browser's private mode—visit a website that has installed Ad Manager or Analytics, Google receives "duplicate" GET requests "initiated by Google code [installed by the websites] and *concurrent* with the communications with the [] website." SAC ¶¶ 63-64, 192 (emphasis added). That is not a breach of any alleged promise on the Incognito Screen.

*Third*, Plaintiffs argue that Google promised "the *only* entities to whom a user's 'activity might still be visible' are 'the websites you visit[,] [y]our employer or school[, and] [y]our internet service provider." Opp. 9 (emphasis added) (citing SAC ¶ 56). But to make this argument, Plaintiffs must insert the word "only" where it does not exist, thus asking the court to violate the rule against "insert[ing] language which one party now wishes were there." *Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1478 (1998).[7]

**B.      The SAC Does Not State A Claim For Breach Of The Privacy Policy Or The Documents Linked To The Privacy Policy**

Plaintiffs fail to allege a "specific provision" in the Privacy Policy that Google breached. As Google explained in its opening brief, in *Calhoun*, this Court stated that Google could not rely on the Privacy Policy after March 31, 2020, when Google amended its Terms of Service to state that the Privacy Policy is "not part of these terms," even for users—like the *Calhoun* Plaintiffs—who

---

[7]  Plaintiffs mistakenly rely on *Wal-Noon Corp. v. Hill*, for the proposition that a contract term "*necessarily implied* in the language of a contract is as much a part of it as that which is expressed." 45 Cal. App. 3d 605, 611 (1975) (emphasis added). Unlike the notice requirement that *Wal-Noon* held was "indispensable to effectuate [t]he intentions of the parties" and therefore "necessarily implied" before the lessor's express duty to repair was triggered, *id.*, the Incognito Screen does not "necessarily imply" that Google will not receive private browsing data, and this Court did not suggest that it does. In any event, Plaintiffs do not plead an implied contract. *See* SAC ¶¶ 267-276.

signed up for their accounts years *before* March 31, 2020. Under the Court's reasoning, the *Brown* Plaintiffs should not be permitted to plead a contract claim based on the Privacy Policy after March 31, 2020. It is undisputed that the Privacy Policy is not a standalone contract—Plaintiffs allege it is "incorporated" in the Terms of Service. SAC ¶ 271. As the Court stated in *Calhoun*, however, it has not been incorporated since March 31, 2020—over a year before Plaintiffs added a contract claim. *See* 2021 WL 1056532, at *8. Plaintiffs argue (Opp. 13) that *Calhoun* is distinguishable because "the Chrome Privacy Notice … separately incorporates the Privacy Policy, including during the period after March 31, 2020." But that was also true in *Calhoun*, where plaintiffs sue Google for breach of alleged promises in the same Chrome Privacy Notice.[8]

In any event, the three Privacy Policy statements on which Plaintiffs rely (Opp. 12) merely "provide[] information—not commitments—regarding" Incognito mode and other privacy features Google offers. *Facebook Internet Tracking*, 956 F.3d at 611; *see also Block*, 747 F.3d at 1138-39. The Ninth Circuit has held that such informational statements are not contractual promises.

Even if the statements were contractual—they are not—they do not make the promise alleged. Plaintiffs argue that the Court previously held that "Google's representations [in the Privacy Policy] regarding private browsing present private browsing as a way that users can manage their privacy and omit Google as an entity that can view users' activity while in private browsing mode." Opp. 15 (citing Dkt. 113 at 16). But concluding that certain disclosures "present private browsing as a way that users can manage their privacy" is not equivalent to a specific "promise[] that private browsing mode (including Incognito mode) prevents Google from collecting the data it typically collects by way of the services it provides to websites." *See* Opp. 12. Moreover, it is undisputed that

---

[8]  Google does not dispute that the Privacy Policy was incorporated in the Terms of Service until March 31, 2020, and hyperlinked to the Terms of Service and the Chrome Privacy Notice at all relevant times. But it would be inconsistent to hold that, in light of the March 31, 2020 amendment to Google's Terms of Service, Google may not rely on the Privacy Period as evidence that the *Calhoun* Plaintiffs—who signed up for their Google accounts years before March 31, 2020, and expressly allege that the Privacy Policy was part of their contract with Google until March 31, 2020—consented to the data collection practices described in the Privacy Policy, while simultaneously holding that the *Brown* Plaintiffs may state a breach of contract claim based on the Privacy Policy even after March 31, 2020.

GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS SIX AND SEVEN OF
PLAINTIFFS' SECOND AMENDED COMPLAINT

private browsing *does* provide users "a way that users can manage their privacy"—it provides privacy from "other people who use the device," *and*, as Google's disclosures explain, it prevents private browsing data from being linked to the user or their device once the private browsing session is closed. *See* Exs. 22 at 10, 23-24. Plaintiffs do not challenge that, nor can they credibly dispute that, these functions provide users ways to "manage their privacy." Privacy is not "an all-or-nothing proposition" and there are "degrees and nuances to … expectations of privacy." *Facebook Consumer Priv.*, 402 F. Supp. 3d at 782. Thus, Google's presentation of private browsing mode as "a way to manage privacy" cannot be transformed into a contractual promise that "Google would not collect or use private browsing data."

Plaintiffs also argue that Google breached the Privacy Policy's statement that "[a]cross our services, you can adjust your privacy settings to control what we collect and how your information is used." Opp. 12 (emphasis deleted). But as Google demonstrated in its Motion (at 11-12), that statement is not specific to private browsing. The Privacy Policy guides users to a number of privacy settings that serve different privacy-related functions. In arguing (Opp. 15) that "this case is not about other privacy settings that (purportedly) function as described," Plaintiffs miss the point—the statement is accurate because Google *does* offer numerous privacy settings across its services that provide users control over what data Google collects and how their data is used. Plaintiffs do not allege otherwise.[9] Indeed, a court in this district recently concluded that this very statement "does not actually bind Google to offer any particular privacy settings, but rather, merely explains to users

---

[9]  Plaintiffs correctly observe that, in its prior Order, the Court held that "Google's Privacy Policy has presented Incognito mode as a way that users can control the information that Google collects." Opp. 16 (citing Dkt. 113 at 9). Google respectfully submits that the Court's finding in the context of analyzing Google's express consent defense at the pleading stage is not a basis for finding that Google made an express contractual promise that "Google would not collect and use private browsing data." *See* SAC ¶ 271. The Privacy Policy simply does not say that. Moreover, the Privacy Policy and the other documents Plaintiffs claim comprise their contract explain how Incognito mode provides "privacy" and "control" in terms that do not amount to a specific promise by Google that it "would not collect and use private browsing data."

where they can go to adjust their settings." *In re Google Location History*, 2021 WL 519380, at *9 (N.D. Cal. Jan. 25, 2021).[10]

Plaintiffs go even further afield in relying (Opp. 12) on a combination of the Privacy Policy's statements that (1) "[y]ou can use our services in a variety of ways to manage your privacy. For example, . . . [y]ou can [] choose to browse the web privately using Chrome in Incognito mode" and (2) "Our services include… products that are integrated into third-party apps and sites." Plaintiffs do not allege they used "products that are integrated into third-party apps and sites" to manage their privacy—they allege only that they used a private browsing mode. And, as explained above, "browse the web privately" does not mean Google will not receive data from private browsing users given that Google elsewhere explains how private browsing works and that it is not fully private.[11]

Plaintiffs' reliance on the "Search & browse privately" page is similarly misplaced. The page is linked to the Privacy Policy, but it is neither a standalone contract nor incorporated in the current Terms of Service. *See Facebook Internet Tracking*, 956 F.3d at 611. Rather, it is a Help Center article and, similar to the Incognito Screen, merely provides a "description of how [private browsing] works." *See Block*, 747 F.3d at 1138-39; *Dunkel v. eBay Inc.*, 2014 WL 1117886, at *4 (N.D. Cal. Mar. 19, 2014) (dismissing breach of contract claim because plaintiffs "fail[ed] to properly allege ... how the 'Help' pages are incorporated into the User Agreement or how the 'Help' articles themselves constitute a contract"). Contrary to Plaintiffs' refrain, that information does not comprise a "promise" that private browsing will make users invisible to Google web services used

---

[10]  Plaintiffs' argument (Opp. 16) that *Location History* is "easily distinguishable" because that particular statement was "the only contractual provision" the *Location History* plaintiffs cited, is misplaced because Google cites the case in support of its argument that *that* particular statement in the Privacy Policy—*i.e.* the statement on which Plaintiffs rely—does not bind Google in the manner Plaintiffs contend. Plaintiffs also argue (*id.*) that the sentence "does not address the Location History setting," but neither does it mention private browsing.

[11]  Plaintiffs' reliance (Opp. 16) on *Facebook Consumer Privacy*, 402 F. Supp. 3d at 801 is misplaced. Facebook's user agreement represented that "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings." *Id.* Facebook allegedly breached this provision by "disclos[ing] user information to whitelisted apps and business partners without permission, and without giving plaintiffs the ability to prevent this disclosure." *Id.* Google, by contrast, represented neither that users "own" private browsing data, nor that private browsing mode prevents Google from receiving such data.

Case No. 5:20-cv-03664-LHK
GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS SIX AND SEVEN OF PLAINTIFFS' SECOND AMENDED COMPLAINT

by third party web publishers. *See* Opp. 13. Rather, the page makes clear that users still may "see search results and suggestions based on ... searches you've done *during* your current browsing session," but "[c]ookies are deleted *after* you close your private browsing window or tab." Ex. 23 (emphasis added). The page also explains that choosing to browse privately allows the user "to search the web *without saving your search activity to your [Google] account*." *Id.* (emphasis added). There is no basis for transforming this information into binding promises that Google would not receive any private browsing data.[12]

## C.   The SAC Does Not State A Claim For Breach Of The Chrome Privacy Notice

Nor does the Chrome Privacy Notice promise that Google will not receive any data from private browsing users. Rather, similar to statements discussed above, it provides a "description of how [Incognito mode] works." *Block*, 747 F.3d at 1138. Plaintiffs' argument (Opp. 17) that Google "breached" the Chrome Privacy Notice's statement that Incognito mode "limit[s] the information Chrome stores *on your system*," is particularly misguided. Incognito mode indisputably *does* limit the information Chrome stores on a user's system. *See, e.g.*, Ex. 22 at 10 ("[s]ites may deposit new cookies on your system while you are in these modes, but they'll only be stored and transmitted until you close the last incognito or guest window"). Plaintiffs do not and cannot allege otherwise.

Not surprisingly, Plaintiffs point to the Court's prior statement that, when reading the Chrome Privacy Notice (something Plaintiffs do not allege they did), "a user might reasonably associate Chrome with Google because Chrome is Google's browser." Opp. 18 & n.15 (citing Dkt. 113 at 18). But, again, the finding that a user may "reasonably associate Chrome with Google" in the context of analyzing an express consent defense—for which the Court found Google has the burden to show that there was no other "plausible interpretation," *see* Dkt. 113 at 14—has no place in a breach of contract analysis. That is particularly true here, where the alleged contract separately

---

[12]   The "How private browsing works in Chrome" page provides similar information specifically with respect to Chrome's Incognito mode, and makes clear that neither private browsing generally, nor Incognito mode, are completely private. Ex. 24. Plaintiffs' argument (Opp. 16) that the document "is not properly before the Court" is meritless. The page appears in the same Help Center in which the "Search & browse privately" page appears. Moreover, the "Search & browse privately" page contains a *direct link* to the "How private browsing works in Chrome" page. Thus, under Plaintiffs' incorporation by reference theory, if one Help Center page is incorporated, so is the other.

*defines* "Chrome" and "Google" and makes no sense if the terms are conflated.[13] *See* Mot. at 15; *see also Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1038 (S.D. Cal. 2018) ("California contract law treats a defined contract term according to the definition set forth in the contract.").[14] Plaintiffs make no effort to reconcile their argument that users asserting a breach of contract claim may conflate "Chrome" (the browser application) and "Google" (the company) with controlling precedent that defined terms must be given their defined meaning and courts cannot "interpret a contract so as to render one of its provisions meaningless." *Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 903 F.3d 862, 872 (9th Cir. 2018). Nor could they convincingly do so. The notion that users may conflate defined terms in consumer agreements and notices to conjure breach of contract claims would result in an unworkable standard that would drastically impede businesses' ability to delineate the promises they intend to make and those they do not.

Plaintiffs add a new argument (Opp. 18) that Google breached the Chrome Privacy Notice because when Google's Ad Manager and Analytics services receive information from Incognito users, "the process necessarily involves Chrome, for a time, storing that information." This theory is not alleged in the SAC and, not surprisingly, Plaintiffs do not cite any allegations in support. *See* Opp. 18:2-5. Even if such facts had been alleged, they would be insufficient. The paragraph of the Chrome Privacy Notice that Plaintiffs claim Google breached makes clear *in the first sentence* that Incognito mode is designed to "limit the information Chrome stores *on your system*," not the information that Google receives through Ad Manager and Analytics. And in the next paragraph, Google makes clear that certain information *will* "be stored and transmitted until you close the last incognito or guest window." Ex. 22 at 10. Google is not "emphasizing disclosures that tout the household-privacy benefit of private browsing," Opp. 18—it is emphasizing the actual words of the

---

[13]  Plaintiffs tacitly admit the distinction but argue that "the 'definition' is expressly limited to the use of 'Chrome' within the Chrome Privacy Notice." Opp. 18 n.15. It is not clear why this matters, given the question is whether Google breached a promise *in* the Chrome Privacy Notice. Moreover, Plaintiffs allege that the Chrome Privacy Notice is part and parcel of their alleged contract, and thus the definition of "Chrome" should be construed consistently throughout their alleged contract.

[14]  Plaintiffs attempt to distinguish *Pemberton* on the basis that they "do not offer extrinsic evidence to vary the meaning of a defined term." Opp. 18 n.16. But in arguing that "reasonable users" may conflate "Chrome" with "Google," Plaintiffs *do* seek to vary the meaning of defined terms.

Case No. 5:20-cv-03664-LHK

alleged contract. Plaintiffs' effort to transform the Chrome Privacy Notice's statements into a promise that "neither Chrome *nor Google* would store any private browsing data," Opp. 18 (emphasis added), requires the Court to add words to the alleged contract that Plaintiffs "now wish[] were there," in violation of California law, *Principal Mut. Life Ins.*, 65 Cal. App. 4th at 1478.

## II.   PLAINTIFFS' UCL CLAIM SHOULD BE DISMISSED

**Plaintiffs lack UCL Standing.** Plaintiffs lack UCL standing because (1) they do not allege they paid any money to Google and (2) the data they allege Google improperly collected is not their "property." Tellingly, Plaintiffs offer *no response* to Google's argument (at Mot. § II.A.1) that the data Google allegedly received is not Plaintiffs' property because it fails to meet the requirements set forth in *Kremen*, 337 F.3d at 1030. Although *Kremen* is controlling authority that the Court is bound to follow, Plaintiffs do not even address it. Nor do they offer any explanation as to how the data at issue—*e.g.*, IP addresses, cookies, URLs—could possibly be "exclusively" possessed and controlled by them, or otherwise meet *Kremen*'s requirements.[15]

Plaintiffs also fail to meaningfully distinguish the consistent line of precedent—including by the Ninth Circuit and several recent decisions from courts in this district—holding that a defendant's collection or use of a plaintiff's data is insufficient to establish "lost money or property" under the UCL.[16] Plaintiffs assert (Opp. 23) that one such recent decision—*Cottle v. Plaid, Inc.*, 2021 WL 1721177 (N.D. Cal. Apr. 30, 2021)—is "an aberration." That assertion is demonstrably false. *See, e.g.*, *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (Koh, J.) (collecting cases); *In re Facebook Priv. Litig.*, 572 Fed. App'x. 494, 494 (9th Cir. 2014); *see also* Mot. at 18 & n. 11 (collecting cases). And it is baffling coming from Plaintiffs' counsel, who just weeks earlier received a decision from Judge Seeborg dismissing a similar UCL claim

---

[15]  The only case Plaintiffs cite that is even remotely responsive to Google's argument is fifty years old and in any event held that "California does not now accord individual property type protection to abstract ideas." *Blaustein v. Burton*, 9 Cal. App. 3d 161, 177 (1970).

[16]  Plaintiffs' reliance (Opp. 21) on their conclusory allegations of the "existence of a private market for the type of data collected by defendants," is misplaced. *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at *7 (N.D. Cal. Dec. 19, 2019) ("[E]ven if Plaintiffs intended to sell their own data—an intention they have not alleged—it is unclear whether or how that data has been devalued because of the 2018 Data Breach.").

against Google on the basis that "no federal court has wedged individual digital data into the UCL's 'money or property' box." *Rodriguez*, 2021 WL 2026762, at *8. Respectfully, *Calhoun* is the aberration. In fact, other than *Calhoun*, the *only* case cited by the parties in which a court found UCL standing where the plaintiff had not paid money to the defendant, or incurred other out of pocket expenses, is *Fraley*, which is inapposite for the reasons explained in the Motion at 22-23.[17]

Plaintiffs' contention (Opp. 20) that this long line of precedent has been overturned by the California Consumer Privacy Act ("CCPA") and the California Privacy Rights Act ("CPRA") (which is not effective until January 1, 2023) is also unavailing. To the contrary, given the Legislature would have been aware of the more-than-a-decade's worth of decisions—including one by the Ninth Circuit—holding that personal data is not property under the UCL, the fact that the Legislature chose *not* to include a specific provision in either statute making such information a consumer's property refutes Plaintiffs' argument. *See Williams v. Foster*, 216 Cal. App. 3d 510, 521 (1989) ("It is a rule of statutory construction that the legislature is presumed to have been aware of longstanding judicial construction of a statute and approve it where that construction is not altered by subsequent legislation.") (citing *People v. Hallner*, 43 Cal. 2d 715, 719 (1954)). The CCPA/CPRA provide users certain *rights* in information—rights that Plaintiffs do not allege Google violated—but such rights do not make the information at issue Plaintiffs' property any more than HIPAA makes a doctor's records about her patients the patients' property. Notably, the *Calhoun* Plaintiffs made the same CCPA/CPRA argument, and the Court did not address it. And Google has cited numerous decisions since the passage of CCPA/CPRA that continue to hold that the data at issue is not a user's property.

Finally, Plaintiffs' contention (Opp. 22) that UCL and Article III Standing are "functionally identical" misstates *Kwikset* and the multitude of cases holding otherwise. *See, e.g.*, *Kwikset Corp.*

---

[17] In *all* of the UCL cases Plaintiffs cite, the plaintiff had standing because he/she paid money to the defendant. *See, e.g.*, *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (plaintiff "alleged that he would not have been willing to pay as much as he did for Benecol, if anything"); *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254 (9th Cir. 2018) (plaintiff "suffered an injury by buying the supplement when, he contends, he would otherwise not have purchased it had he known the truth"); *Johnson v. Pluralsight*, LLC, 728 F. App'x 674, 676 (9th Cir. 2018) (plaintiff "alleged monetary harm in the form of unlawfully retained subscriptions payments by Pluralsight").

*v. Superior Ct.*, 51 Cal. 4th 310, 324 (2011) ("[T]he economic injury requirement is qualitatively more restrictive than federal injury in fact, embracing as it does fewer kinds of injuries.").

**Plaintiffs fail to allege reliance.** Plaintiffs incorrectly assert that "[b]ecause Plaintiffs' claims do not sound in fraud, Plaintiffs need not allege reliance." All of Plaintiffs' claims indisputably are based on Google's alleged "misrepresentation[s] or omission[s]" in the Incognito Screen and other disclosures and, accordingly, under the Court's decision in *Backhaut v. Apple, Inc.*—which Plaintiffs simply ignore—they must allege "actual reliance and injury at the pleading stage for claims under *all three prongs of the UCL*." 74 F. Supp. 3d 1033, 1048 (N.D. Cal. 2014). The cases Plaintiffs cite are in accord. *See, e.g.*, *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 879 (N.D. Cal. 2019) ("California courts have also extended this reliance requirement to claims under the unlawful prong of the UCL that are based, as here, on allegations of misrepresentation and deception."); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, 2021 WL 148063, at *6 (S.D. Cal. Jan. 15, 2021) (similar).

Plaintiffs' contention (Opp. 24) that they adequately alleged reliance in conclusory allegations that neither (1) identify the specific statements on which each plaintiff relied, nor (2) state that a plaintiff would have acted differently but for the alleged misrepresentation, is meritless.

**Plaintiffs' UCL claim should be limited to injunctive relief.** Contrary to Plaintiffs' assertion (Opp. 23), Google does not argue that restitution is unavailable under the UCL. Rather, Plaintiffs do not allege a *basis* for restitution, which, "in the context of the UCL … is limited to the return of property or funds in which the plaintiff has an ownership interest." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005). That is because Plaintiffs neither seek nor identify money or property that could be returned to them if restitution were ordered. Plaintiffs instead seek "restitution and disgorgement" of Google's allegedly "unjust profits" (SAC ¶ 284), which the California Supreme Court has held is not permitted under the UCL. *See* Mot. 23-24.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims for Breach of Contract and violation of the UCL should be dismissed with prejudice.

1  DATED: June 29, 2021

2

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

3  **By**  _____/s/ Andrew H. Schapiro_____

Andrew H. Schapiro (admitted *pro hac vice*)
4  andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
5  Chicago, IL 60606
Telephone: (312) 705-7400
6  Facsimile: (312) 705-7401

7  Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
8  Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
9  865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
10  Telephone: (213) 443-3000
Facsimile: (213) 443-3100

11

12  Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
13  Redwood Shores, CA 94065
Telephone: (650) 801-5000
14  Facsimile: (650) 801-5100

15  Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
16  1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
17  Telephone: 202-538-8000
Facsimile: 202-538-8100

18

19  Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
20  New York, NY 10010
Telephone: (212) 849-7000
21  Facsimile: (212) 849-7100

22  Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
23  50 California Street, 22nd Floor
San Francisco, CA 94111
24  Telephone: (415) 875-6600
Facsimile: (415) 875-6700

25

26  *Attorneys for Defendant Google LLC*

27

28