# EXHIBIT A
# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK<br><br>GOOGLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL REGARDING DISPUTE P3<br><br>Referral: Hon. Susan van Keulen, USMJ |

## I. INTRODUCTION

This Court has explained that Plaintiffs are not entitled to "carte blanche to all of Google's systems." Dkt. 194-4 (June 2, 2021 Hearing Tr.) 35:13. Yet carte blanche is exactly what Plaintiffs' motion seeks, demanding that Google produce broad swaths of irrelevant information, products, and services not at issue in this lawsuit. This case is about Google's receipt of information when Plaintiffs used a browser in private browsing mode—while logged out of their Google Accounts—to visit websites choosing to run Google Analytics or Google Ad Manager services. Plaintiffs' request for license to embark on a fishing expedition far beyond the bounds of that subject should be denied.

Plaintiffs seem to be in search not of evidence to demonstrate a well-founded claim, but rather a theory of the case, to be constructed via random, sweeping discovery demands. They initially alleged that Google illegally tracked their private browsing activity through the x-client-data header. *See* Dkt. 1 ¶¶ 81, 91. But after learning that the x-client-data header is used to test new Chrome features and not even sent from Chrome in private browsing mode, Plaintiffs changed course. Plaintiffs next alleged that Google tracked their activity through "cookies" and "'fingerprinting' techniques" to create a "cradle-to-grave profile of users." *See* Dkt. 136-1 ¶¶ 8, 80, 91, 93. But substantial discovery—documents, data and deposition testimony—has conclusively undermined their "cradle-to-grave" allegations. The record demonstrates that Google has strict anti-fingerprinting policies and cookies do not persist on a browser across private browsing sessions. Their theories having hit a dead-end, Plaintiffs now seek irrelevant and burdensome discovery, eschewing targeted written discovery and instead asking this Court to order Google to (i) produce additional data and identifiers irrelevant to this litigation; (ii) prepare and produce *another* Rule 30(b)(6) witness on topics for which Dr. Berntson was already prepared and on a further topic designed to relitigate the log preservation dispute; and (iii) provide access to all of Google's internal systems containing any data concerning the named Plaintiffs. *See* Dkt. 198-5 at 1–2.

The motion to compel should be denied. *First*, Google has already produced authenticated data and relevant unauthenticated data; this Court should not order Google to produce additional data from irrelevant products or services. As Dr. Glenn Berntson testified, the private browsing data at issue is neither joined across separate private browsing sessions, nor mapped to Plaintiffs' Google Accounts.

*See*, *e.g.*, Pls. Ex. 5 (Berntson Tr.) 372:8–373:16. Google cannot produce documents that do not exist, and should not be required to prove a negative. There is no "cradle-to-grave profile" containing the data at issue. *Second*, Dr. Berntson was an exceptionally well-prepared and highly knowledgeable witness whose testimony refuted Plaintiffs' core allegations about Google's data practices. Plaintiffs are not entitled to a repeat simply because they do not like his sworn testimony. *Third*, Plaintiffs' demand for direct access to Google's internal systems—to either take yet another run at theories that have already been discredited under oath or fish for new ones—has no basis in fact or in law, and should be rejected.

## II.    BACKGROUND

The release of personal user data by Google requires that user's consent. In April 2021, this Court ordered Plaintiffs to submit consent notifications from their Google Account email addresses. Dkt. 133-1 at 3.[1] For the eight accounts for which Plaintiffs provided consent notifications, Google timely produced authenticated data consisting of Subscriber information, My Activity data, Supplemental Web and App Activity ("sWAA") settings, Web and App Activity ("WAA") settings, Account Activity information, GAIA-keyed Footprints data, and GAIA-keyed-X-Client-Data header, to the extent that such data exists. The production totaled more than 140 documents spanning over 1,900 pages.

On June 2, the Court ordered Plaintiffs to provide cookie values containing unauthenticated identifiers and ordered Google to produce associated data before Dr. Berntson's Rule 30(b)(6) deposition. Dkt. 194-4 30:23–31:2. On June 8, this Court requested briefing on the parties' discovery disputes P3[2] and P6[3]. Dkt. 191-1 at 2, 3. On June 9, Google produced data associated with the relevant unauthenticated identifiers to Plaintiffs. On June 16, Plaintiffs deposed Dr. Berntson for nearly seven

---

[1] Plaintiffs have provided consent notifications for only eight of the 12 Google Accounts they have disclosed . One named Plaintiff, Monique Trullijo, has provided no consent notification for any account. Google will not produce account content without the user's requisite consent.

[2] P3 relates to Plaintiffs' RFP 18, which requested "Documents concerning Plaintiffs, including Plaintiffs' use of Google services, all data collected by Google from and regarding Plaintiffs, and Google's use of all data collected by Google from and regarding Plaintiffs."

[3] P6 relates to Plaintiffs' RFP 10, which requested "Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members."

1  hours and did not ask him a single question about the unauthenticated data that Google produced. Nor
2  did Plaintiffs ask Dr. Berntson hardly any questions about the data Google receives while users are in
3  a private browsing mode. On June 23, Plaintiffs submitted a motion to compel on dispute P3.
4  Discovery is ongoing—Google produced profile data related to Plaintiffs William Byatt and Chasom
5  Brown on June 29.

6  **III.   ARGUMENT**

7  **A.   Plaintiffs Seek To Compel the Production of Irrelevant Data**

8  Not "all data collected by Google from and regarding Plaintiffs" (Mot. At 3) is relevant to this
9  litigation. Indeed, the Court stated that discovery "will continue to ***tie back to the proper definition[ ]***
10 ***of the class***." Dkt. 194-4 35:15–16 (emphasis added). The relevant class here is individuals who (i)
11 use private browsing mode on a browser, and (ii) without logging into their Google Account, and then
12 (iii) visit a website that has chosen to run Google Analytics or Google Ad Manager services. Dkt. 136-
13 1 (SAC) ¶ 192. Plaintiffs' class definition circumscribes the scope of relevance. Data that Google
14 receives through unrelated services and products, such as Gmail, Youtube, Google Assistant, or
15 Search (www.google.com) is irrelevant. Likewise, data that Google receives from non-browser apps
16 (such as Google Maps for iOS or Android) is irrelevant. The class consists of individuals ***using a***
17 ***browser*** on a mobile device or desktop—not other apps. And data that Google receives when a user is
18 logged into their Google Account is irrelevant too. Indeed, Plaintiffs' counsel explained at the June 2
19 hearing that "Incognito and private [browsing] states are by definition logged out states" (Dkt. 194-4
20 14:10–12), and the Court emphasized that "we're really focused on the identifiers for unauthenticated
21 data, and that's really what this is about." *Id*. 29:19–21. Google agrees. Because Plaintiffs' class
22 definition is expressly limited to private browsing users who "were not logged in to their Google
23 account on that device's browser" (Dkt. 136-1 ¶ 192), Google should not be compelled to produce
24 authenticated data it received when Plaintiffs were logged into their Google Accounts. Nor should
25 Google be required to scour its servers to locate unauthenticated data Google received from services
26 not at issue in this case.
27 Rather than focus on the pertinent identifiers that Google actually uses for unauthenticated
28 data—and for which Google has produced associated data—Plaintiffs expand their demand for all data

1  associated with "█████" listed in Dremel . . . are at the heart of this case." Mot. at 6. This
2  confused[4] statement is utterly false: Plaintiffs' Exhibit 1 (GOOG-BRWN-0028920) is neither a
3  Dremel tool nor does it list █████ relevant to this case. "███" is a tool used by all of
4  Google and . . . by many, many different teams." Berntson Tr. 17:15–21. The tool shown in Plaintiffs'
5  Exhibit 1 includes data relating to irrelevant products and services.
6      Dr. Berntson explained that, for the data at issue here—*i.e.*, data Google receives from
7  Analytics and Ad Manager while users are logged out and in a private browsing mode— the identifier
8  Google uses to associate data is the █████ cookie. *Id.* 279:1-279:11 ("When you create an incognito
9  session, the incognito session starts off with an █████ that is not shared with anything else
10 on your device . . . █████ that has no mapping to anything else."); *id.*
11 372:18-373:10 (no mapping from GAIA to █████ when a user is signed out and in Incognito mode).
12 Of the identifiers Plaintiffs focus on, Dr. Berntson's testimony established that they are unrelated to
13 the data collection at issue:

- ████████████████████████████████████████████
- ████████████████████████████████████████████
- ████████████████████████████████████████████
- ████████████████████████████████████████████
- ████████████████████████████████████████████

22 Indeed, based on the class definition and Dr. Berntson's testimony, there is only one relevant category.
23 As Dr. Berntson testified, ████████████████████████████████████
24 ████████████ *Id.* 51:22–24. Despite the record, Plaintiffs continue to press their unsubstantiated
25 theory, requesting that the Court order Google to produce information related to each category,

---

[4] The "█████" listed in the Google Display Server are designed to display information stored in a *database*, called █████, but as Dr. Berntson explained, Dremel is a tool used to query *logs*. Berntson Tr. 307:2–9." █████ has nothing to do with logs." *Id.* 311:12–13.

1  including by granting access to a clean room. The record simply does not support Plaintiffs' highly
2  intrusive, blunderbuss request.
3      Plaintiffs' additional argument that Google failed to produce data mapped to mobile device
4  identifiers (Mot. at 3) is a red herring. As Dr. Berntson testified, **_Google does not map private_**
5  **_browsing data to mobile device identifiers_**. *See*, *e.g.*, Berntson Tr. 280:2–5. Plaintiffs disingenuously
6  tell the Court that Dr. Berntson testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
7  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Mot. at 6–7), but
8  fail to mention that Dr. Berntson repeatedly and consistently testified that no such mapping takes
9  place for browser communications in private browsing mode. *See* Berntson Tr. 280:2–5 ("Q: Okay. So
10 in what state in incognito does the incognito ▇▇▇ get mapped to the device ID? A: It doesn't."); *id*.
11 285:22–286:3 ("[I]f somebody is in incognito mode … we're not actively mapping to the device ID …
12 at all."); *id*. 253:20–254:2 ("For traffic in a browser, whether that browser is on a desktop or a mobile
13 device, we use ▇▇▇ for mapping the entries from Google Analytics to Google Ad Manager, and so
14 the ▇▇▇ is not used in that case.") *id*. 290:17–21 ("If it's coming from a browser, we use ▇▇▇
15 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
16 ▇▇▇▇.").
17      Plaintiffs' further request for data associated with "all authenticated and unauthenticated
18 identifiers Google uses to map and track Plaintiffs" (Mot. at 6) is unduly burdensome. It would require
19 Google to produce irrelevant information to prove a negative, namely that Google does not join the
20 separate private browsing sessions at issue nor map them to Plaintiffs' Google Accounts. This Court
21 should not compel Google to scour its servers for irrelevant data in an attempt to do so. "Since as a
22 practical matter it is never easy to prove a negative, it is hardly likely that conclusive factual data
23 could ever be assembled." *Elkins v. United States*, 364 U.S. 206, 218 (1960). *See Reece v. Basi*, 2014
24 WL 2565986 at *5 (E.D. Cal. June 6, 2014) (where plaintiff's request for production would require
25 the defendant to prove a negative, the court stated, "discovery cannot be compelled with respect to
26 these requests as framed"); *OMG Fid. Inc. v. Sirius Technology, Inc.*, 2007 WL 1994230 at *1 (N.D.
27 Cal. July 5, 2007) (finding that it would be inappropriate to allow trade secret plaintiffs to make
28 competitors prove a negative through discovery). The burden is particularly acute here because

1    relevant discovery could be more easily established through straightforward written discovery. *See*
2    Fed. R. Civ. P. 26(b)(2)(C)(1) (discovery properly limited where the information is obtainable "from
3    some other source that is more convenient, less burdensome, or less expensive").

   **B.   Dr. Berntson Was a Knowledgeable and Well-Prepared Rule 30(B)(6) Witness**

   Dr. Berntson is an Engineering Director with almost a decade of experience at Google. He interviewed eight Google employees, spent at least 25 hours of his time in preparation for the deposition, and reviewed over 60 documents to testify on behalf of Google concerning Topics 1 to 4 and 6 to 12. Berntson Tr. 376:14–378:7. Counsel for Plaintiffs spent close to seven hours questioning Dr. Berntson, and stated on the record that his answers were not only "helpful" in certain instances (*id.* 34:6, 148:21, 174:16, 178:8. 181:11), but "[s]uper helpful" (*id.* 123:16–17, 175:11, 177:14–15, 251:4. 379:4–5) and "extremely helpful" in others (*id.* 144:18). Yet Plaintiffs now disingenuously claim that Dr. Berntson was not adequately prepared and knowledgeable. That assertion is utterly baseless—as review of the transcript easily confirms—and this Court should reject Plaintiffs' request for another Rule 30(b)(6) witness. *See, e.g., Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, 2014 WL 7206849, at *3 (N.D. Cal. Dec. 18, 2014) ("The [30(b)(6)] designee's role is to provide the entity's interpretation of events and documents. It is not expected that the designee have personal knowledge as to all relevant facts….") (internal citations omitted).

   Plaintiffs identify three categories of information on which Dr. Berntson was allegedly unprepared to testify: (1) Topic 5 (Google's document preservation efforts in connection with this litigation); (2) "aspect[s] of logs, databases, storage systems, and data structures containing Plaintiffs' data *other than* those in Google Analytics and Google Ad Manager (*i.e.*, the *only* services at issue in this case); and (3) "██████████████ in Dremel" (which was not a Topic listed in Plaintiffs' 30(b)(6) notice).

   *First*, Plaintiffs assert that Google refused to "permit Dr. Berntson to testify about Topic 5." (Mot. at 8). However, Google informed Plaintiffs more than two weeks before the deposition that it objected to preparing a corporate representative on Topic 5—"Google's ***preservation for purposes of this litigation*** of the logs, databases, storage systems, and data structures." *See* Ex. 1 (Google's Responses & Objections) at 7–8 (emphasis added). Google objected to Topic 5 as moot given the

Court's prior ruling on Google's Motion for a Protective Order concerning the log preservation dispute. *See Calhoun v. Google LLC*, Case No. 20-cv-05146-LHK (SVK) (N.D. Cal.), Dkt. 173-1 ("Google need not suspend its standard retention periods applicable to data logs"); *id*. Dkt. 192-1 at 1 (preservation of potential class members' data "not relevant in light of the Court's ruling in Dkt. 173-1"). Topic 5 also amounts to improper discovery on discovery and implicates the attorney-client and work product privileges. *See* Ex. 1 at 7-8.

By contrast, Dr. Berntson *was* prepared to, *and did*, provide testimony about "general retention practices and protocols" of relevant data, about which the Court permitted Plaintiffs to ask. Dkt. 194-4 55:5–6. Dr. Berntson prepared for and provided testimony on Topic 4 ("Google's retention policies and practices for the logs, databases, storage systems, and data structures"), related to the relevant Analytics and Ad Manager data at issue. *See* Berntson Tr. 362:24–369:9.

*Second*, that Google did not prepare Dr. Berntson on data practices "other than those" that relate to Analytics and Ad Manager was not something that Plaintiffs learned for the first time in the deposition—Google's objections to Plaintiffs' 30(b)(6) notice, served two weeks before the deposition, made clear that Google would produce a corporate witness on Topics 1-4 and 6-7 only "for data received through Google Analytics or Google Ad Manager," and for Topic 11 only for "how Google logs and stores data generated by . . . Google Ad Manager and Google Analytics." *See* Ex. 1 at 5–13. This was entirely appropriate given Plaintiffs' class definition and the data flow at issue, and Plaintiffs did not complain until they filed this Motion.

*Third*, Plaintiffs' contention that Dr. Berntson was not prepared to testify "about ▇▇▇▇▇▇ ▇▇▇▇▇▇ in Dremel" is similarly meritless. None of Plaintiffs' Topics specifically addressed the Dremel tool, and not every aspect of the tool is relevant in this case, as Dr. Berntson's testimony makes clear.

In support of their argument that aspects of Dremel that Dr. Berntson did not specifically address are relevant, Plaintiffs submit the Declaration of John Yanchunis—a lawyer for Plaintiffs (and not the lawyer who took Mr. Berntson's deposition)—that purports to offer unsupported lay testimony about Google's technical abilities to "query data" in its systems. The Yanchunis Declaration contains significant inaccuracies about specific exhibits and Dr. Berntson's ability to provide testimony. Mr.

1  Yanchunis cherry-picks a handful of moments from a *seven-hour* deposition of a diligent and fully
2  prepared witness. But even those few snippets do not support his claim. Specifically, Mr. Yanchunis
3  represents that Plaintiffs' Ex. 1 (GOOG-BRWN-00028920) is "a screenshot of Google's Dremel
4  tool." Yanchunis Dec. ¶ 3. But, as discussed above, Dr. Berntson's sworn testimony made clear that
5  this is incorrect because the document cited is not a Dremel tool. Berntson Tr. 307:2–9; *id.* at 311:12–
6  13. Mr. Yanchunis further represents that Plaintiffs' Ex. 6 (GOOG-BRWN-00026161) is an "internal
7  Google design document for twice-baked cookies"[5] and that Dr. Berntson "could not provide any
8  testimony concerning the contents of this document." Yanchunis Dec. ¶ 8. That is also false.
9  Plaintiffs' Ex. 6 is an internal Google design document ▮▮▮▮▮ it
10 does not mention "twice-baked cookies," and Dr. Berntson provided testimony on the document in
11 particular (Berntson Tr. 195:17–19) as well as ▮▮▮▮▮ in general (*see, e.g., id.* at 77:1,
12 144:4–10, 197:11–198:11, 199:1–23, 201:3–8). Indeed, Dr. Berntson explained that ▮▮▮▮▮
13 requires a GAIA ID—*i.e.*, an ID associated with a signed-in user, Berntson Tr. 203:20-204:1 ("The
14 only way of creating a ▮▮▮▮▮ is if the user is signed in, and so if a user hasn't signed in,
15 we can't join an ID to the ▮▮▮▮▮ because there's no Gaia.")—and thus ▮▮▮▮▮ is
16 irrelevant. Finally, Mr. Yanchunis' declaration represented that Dr. Berntson could not provide any
17 testimony on the logs listed in Plaintiffs' Ex. 8 (GOOG-BRWN-00078435–38). *See* Yanchunis Dec. ¶
18 10. That, too, is incorrect. Dr. Berntson provided testimony about those logs. *See, e.g.*, Berntson Tr.
19 216:18–217:5, 367:2–24.
20     The single authority Plaintiffs cite to support their request for an additional 30(b)(6)
21 representative—*Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276 (N.D. Cal. 2015)—is
22 inapposite. In *Lofton*, the transcripts showed the witnesses were unprepared to testify on two specific
23 and focused topics: whether certain assertions were made in prior proceedings and by what method
24 particular account notes were produced. *Id.* at 289. In contrast, Plaintiffs here noticed—and Dr.
25 Berntson prepared for—eleven extremely broad and general topics about sophisticated engineering

---

[5] Contradicting Plaintiffs' theories on "twice-baked cookies," Dr. Berntson testified "[t]he term 'twice-baked cookie' referred to the fact that [Google] use[s] very strong encryption of the information that is stored in the cookie document client side." Berntson Tr. 96:18–22.

systems, including identifying logs that contain private browsing information (Topic 1), Google's ability to search for private browsing information (Topic 2), how identifiers are created (Topic 6), and how data generated by Google's provision of products and services is logged, stored, and structured (Topic 11). Dr. Berntson did the work. He was plainly knowledgeable about, and prepared to provide testimony on, the topics for which he was designated. Plaintiffs have no basis to argue otherwise. *See, e.g.*, *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8–11 (C.D. Cal. Oct. 26, 2016) (recognizing that "[i]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything").

### C. The Proposed Clean Room Is Not Proportional to the Litigation

Plaintiffs request "unencumbered access" to a clean room to test theories on "mapping and tracking technologies" that have already been discredited by Google's sworn testimony. The request is beyond the pale. Granting Plaintiffs *carte blanche* access to a clean room in the hope that they find something different from what has been explained to them under oath already is the exact type of fishing expedition the Federal Rules of Civil Procedure are designed to prohibit. *See, e.g.*, *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 2016 WL 146574 at *1 (N.D. Cal. Jan. 13, 2016) (following the 2015 amendments to the Federal Rules, "[n]o longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence . . . [and] a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case.").

Unsurprisingly, Plaintiffs' motion identifies no authority supporting their request. Plaintiffs cite *Elan Microelectronics Corp. v. Apple, Inc.* for the proposition that this Court previously "requir[ed] Apple to allow plaintiffs' expert to inspect an internal tool." 2011 WL 2293224 at *3 (N.D. Cal. June 8, 2011); Mot. 5. But in *Elan*, the "only real dispute before the Court" was whether inspection of the software tool should be video recorded—the Court specifically noted that neither party "dispute[d] that Apple's tool was discoverable," *see id.*, which is wholly distinguishable from the current dispute in which Google contends the inspection Plaintiffs seek is neither relevant, proportional, nor warranted based on existing discovery.

Likewise, Plaintiffs' reliance on *S. Peninsula Hosp., Inc. v. Xerox State Healthcare, LLC* is misplaced. 2019 WL 1873297 at *6 (D. Alaska Feb. 5, 2019). There, the Court allowed a plaintiff access to a database maintained by the defendant, but only after the defendant had "objected to producing structured data or to performing queries of [the database] because of the time burden." *Id*. at *6-7. The Court explained that the defendant "ha[d] declined to provide any materials as to Plaintiffs' class action claims, which [was] essentially going to defeat class certification in advance." *Id*. at *7 (citation omitted). That is not remotely the situation here. Here, Plaintiffs admit they provided "cookie values from their private browsing sessions to Google" and Google then ran searches and produced information to Plaintiffs based on those values. Mot. at 10.[6] That Plaintiffs were not satisfied with the substance of the information they received does not mean Google's production is deficient. Indeed, Plaintiffs' own motion explains that "Google has very recently made ***voluminous*** productions … totaling approximately 91,750 pages of documents." Mot. at 1 n.1 (emphasis added).[7] Nor does it warrant "unencumbered access" to Google's proprietary and commercially sensitive "technologies," "tools," and "data," in hopes of finding something to support their unfounded allegations that Google maps private browsing sessions to create "cradle-to-grave profiles."[8]

Finally, to the extent there is any remaining need to test any theory, Plaintiffs admit there are "less-drastic means" of obtaining this discovery, which the parties are already employing. Mot. at 9.

## IV.   CONCLUSION

Google asks the Court to deny Plaintiffs' motion to compel.

---

[6] *See also Berger v. Home Depot USA, Inc.*, 2011 WL 13224880, at *7 (C.D. Cal. Feb. 23, 2011) (denying request for "direct access to defendant's integrated computer network, including information that is confidential, proprietary, and irrelevant to the instant action" because plaintiff failed to show prior "inadequate discovery" or "need for additional discovery of defendant's computer system.") (citation omitted).

[7] Plaintiffs' suggestion that the Protective Order provides all of the necessary "safeguards against dissemination" of Google's proprietary information conflicts with a case they cite in the very same paragraph. Mot. at 10. In *In re Google Litigation*, for instance, the Court specifically noted "the potential harm from the disclosure of a firm's proprietary source code, even with the safeguards offered by a protective order." 2011 WL 286173, at *5 (N.D. Cal. Jan. 27, 2011).

[8] Plaintiffs' request to run searches for myriad unauthenticated identifiers (including IP addresses, which are often shared by multiple users using the same internet connection) would also pose a serious risk of exposure of user data without consent, which would be a clear violation of the Stored Communications Act. *See* 18 U.S.C. § 2702(a)(1).

| | |
|---|---|
| DATED: June 30, 2021 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By   */s/ Andrew H. Schapiro* |
| | Andrew H. Schapiro (admitted *pro hac vice*) |
| | andrewschapiro@quinnemanuel.com |
| | 191 N. Wacker Drive, Suite 2700 |
| | Chicago, IL 60606 |
| | Telephone: (312) 705-7400 |
| | Facsimile: (312) 705-7401 |
| | |
| | Stephen A. Broome (CA Bar No. 314605) |
| | stephenbroome@quinnemanuel.com |
| | Viola Trebicka (CA Bar No. 269526) |
| | violatrebicka@quinnemanuel.com |
| | 865 S. Figueroa Street, 10th Floor |
| | Los Angeles, CA 90017 |
| | Telephone: (213) 443-3000 |
| | Facsimile: (213) 443-3100 |
| | |
| | Josef Ansorge (admitted *pro hac vice*) |
| | josefansorge@quinnemanuel.com |
| | Carl Spilly (admitted *pro hac vice*) |
| | carlspilly@quinnemanuel.com |
| | 1300 I. Street, N.W., Suite 900 |
| | Washington, D.C. 20005 |
| | Telephone: 202-538-8000 |
| | Facsimile: 202-538-8100 |
| | |
| | Jomaire A. Crawford (admitted *pro hac vice*) |
| | jomairecrawford@quinnemanuel.com |
| | 51 Madison Avenue, 22nd Floor |
| | New York, NY 10010 |
| | Telephone: (212) 849-7000 |
| | Facsimile: (212) 849-7100 |
| | |
| | Jonathan Tse (CA Bar No. 305468) |
| | jonathantse@quinnemanuel.com |
| | 50 California Street, 22nd Floor |
| | San Francisco, CA 94111 |
| | Telephone: (415) 875-6600 |
| | Facsimile: (415) 875-6700 |
| | |
| | *Attorneys for Defendant Google LLC* |