# EXHIBIT A

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Case No. 19-cv-04286-BLF |
| | **ORDER ON DEFENDANTS' MOTION TO DISMISS THE THIRD CONSOLIDATED AMENDED COMPLAINT** |
| | [Re: ECF 120] |

The instant litigation comprises three separately-filed cases that the Court has consolidated. *See* ECF 42; ECF 109. The cases generally allege that Defendants Google LLC and Alphabet, Inc. (collectively, "Google") unlawfully intercepted, recorded, disclosed, and used the private conversations of thousands of users of the Google Assistant software. Presently before the Court is Defendants' motion to dismiss the entire consolidated suit. ECF 120. Having considered the parties' arguments and the applicable law, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss.

## I. BACKGROUND

This is a putative consumer class action concerning the Google Assistant, a virtual assistant software developed by Defendants Google LLC and Alphabet, Inc. for use on various Google Assistant Enabled Devices ("GAEDs") manufactured by Defendants and by third parties. Specifically, the operative Third Consolidated Amended Class Action Complaint ("3AC"), which was filed on November 9, 2020, ECF 118, contains the following allegations:

The Google Assistant is a voice-activated software, which means that users can ask questions of and give instructions to the Google Assistant using their voices. 3AC ¶¶ 2-4, 79. This software comes preloaded onto certain devices, such as the Google Home, the Google Pixel smartphones, and third party-manufactured smartphones that use the Google Android operating system; it can also

be installed on a range of devices. *Id.* Because the Google Assistant is voice-activated, it is constantly listening for "hotwords"—i.e., "Okay Google" or "Hey Google." *Id.* ¶ 80. It does this by recording and analyzing short snippets of audio, which are stored locally in the Google Assistant Enabled Device's random-access memory ("RAM"); these snippets are continuously overwritten, however, if no hotwords are detected. *Id.* ¶ 81. When the hotwords are detected, the Google Assistant switches into "active listening" mode, meaning that it begins recording and analyzing audio in order to carry out the user's command. *Id.* ¶ 82. The Google Assistant can also be manually activated by pressing a button on the device. *Id.*

Plaintiffs allege that Defendants keep and use the audio recordings for two purposes other than carrying out the user's command: (1) to target personalized advertising to users, and (2) to improve the voice recognition capabilities of the Google Assistant. 3AC ¶¶ 83, 113. Sometimes, the Google Assistant may be triggered into active listening mode when the Google Assistant misperceives other words as the hotwords. This is known as a "false accept." *Id.* ¶ 244. Plaintiffs believe that in such situations, Defendants do not destroy the audio recordings, but rather continue to use them for personalized advertising and to analyze the accuracy of the Google Assistant—just as Defendants would do with authorized recordings. *Id.* ¶¶ 83, 105-113. As evidence, Plaintiffs point to the investigation carried out by VRT NWS, in which VRT NWS reviewed "more than a thousand" audio recordings and "identified 153 conversations" that were recorded due to false accepts. *Id.* ¶ 104.

This suit is based on Defendants' use of audio recordings in "false accept" situations. 3AC ¶ 1, 6-8, 244. In Plaintiffs' view, such use is an invasion of privacy, especially because many of the recorded conversations take place in individuals' homes. *Id.* ¶¶ 85-88; *see also* ¶¶ 18-75. Plaintiffs also believe that this practice contravenes the privacy assurances that Defendants make to users in their Privacy Policy. *Id.* ¶ 90. Plaintiffs are particularly troubled by the fact that some of the recordings include the conversations of children because they do not believe that these children can consent to being recorded. *Id.* ¶ 115.

Based on the foregoing, Plaintiffs have sued Google LLC and its parent company Alphabet Inc. under various state and federal laws. There are 10 claims in the 3AC: (1) violation of the federal

Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*; (2) violation of the federal Stored Communications Act ("SCA"), 18 U.S.C. §§ 2702 *et seq.*; (3) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632; (4) intrusion upon seclusion under California common law; (5) invasion of privacy, in violation of Article I, Section 1 of the California Constitution; (6) breach of contract under California common law; (7) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (8) violation of the California Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code §1750, *et seq.*; (9) fraud, deceit, and/or misrepresentation under California common law; and (10) request for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* 3AC ¶¶ 148-288.

These claims are brought by seven Named Plaintiffs:

- Melissa Spurr is a resident of Union County, New York. 3AC ¶ 18. She alleges that she owned at least three Google Home devices during the Class Period. *Id*. ¶ 20.

- B.S. is a minor member of Plaintiff Spurr's household; as such, she has allegedly interacted with Plaintiff Spurr's Google Home device during the Class Period. 3AC ¶¶ 19-20. She brings suit by and through her legal guardian, Plaintiff Spurr. *Id*.

- Lourdes Galvan is a resident of Los Angeles County, California. 3AC ¶ 27. She alleges that she interacted with a Google Assistant-enabled Samsung Galaxy Tab and a Google Assistant-enabled Samsung smartphone during the Class Period. *Id*. ¶ 29.

- E.G., is a member of Plaintiff Galvan's household; she was a minor during a portion of the Class Period but now brings suit on her own. 3AC ¶¶ 28-29. Like Plaintiff Galvan, E.G. alleges that she owned and interacted with a Google Assistant-enabled Samsung Galaxy Tab and a Google Assistant-enabled Samsung smartphone during the Class Period. *Id*. ¶ 29.

- Asif Kumandan is a resident of Kings County, New York. 3AC ¶ 38. He alleges that he owned a Google Assistant-enabled Google Pixel smartphone during the Class Period. *Id*. ¶ 39.

- Edward Brekhus is a resident of Marin County, California. 3AC ¶ 45. He alleges

United States District Court
Northern District of California

United States District Court
Northern District of California

that he owned a Google Assistant-enabled Google Home Mini device during the Class Period. *Id.* ¶ 46. Brekhus obtained the device pursuant to a Spotify promotion. *Id.*

- Jon Hernandez is a resident of Los Angeles County, California. 3AC ¶ 61. Hernandez alleges that he purchased a Google Home Mini device during the Class Period. *Id.* ¶ 62. He further alleges that he owned two other GAEDs during the Class Period. *Id.* ¶ 67.

Defendants now move to dismiss the 3AC pursuant to Fed. R. Civ. P. 12(b)(6). Mot. at 1, ECF 120. The motion has been fully briefed and was heard on May 6, 2021. See Opp., ECF 124; Reply, ECF 129; ECF 134 (minute entry for hearing).

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim will normally survive a motion to dismiss if it offers a "short and plain statement ... showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a mere possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz*, 234 F.3d at 435.

4

1    Fraud allegations elicit a more demanding standard. Rule 9(b) provides: "In alleging fraud

2    ..., a party must state with particularity the circumstances constituting fraud.... Malice, intent,

3    knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

4    This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and

5    how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

6    2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule 9(b) is that

7    defendants be given fair notice of the charges against them. *See, e.g., In re Lui*, 646 Fed. Appx. 571,

8    573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give

9    defendants notice of the particular misconduct ... so that they can defend against the charge and not

10   just deny that they have done anything wrong.") (quotation omitted*); Odom v. Microsoft Corp*., 486

11   F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an

12   adequate answer"). This heightened-pleading standard can apply even to claims that do not innately

13   require proof of fraud. *E.g., Vess*, 317 F.3d at 1103–05.

14   If such a claim nonetheless avers fraudulent conduct, then at least those averments must

15   satisfy Rule 9(b); and, if a claim rests "entirely" on a "unified course of fraudulent conduct," then

16   "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*.

17   at 1103–04. Finally, "[a] motion to dismiss a complaint or claim 'grounded in fraud' under Rule

18   9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under

19   Rule 12(b)(6) for failure to state a claim." *Id*. at 1107.

20   A court's review on a 12(b)(6) motion to dismiss "is limited to the complaint, materials

21   incorporated into the complaint by reference, and matters of which the court may take judicial

22   notice." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019) (citing *Tellabs, Inc. v.

23   Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Moreover, in evaluating the complaint, the

24   court must "accept factual allegations in the complaint as true and construe the pleadings in the light

25   most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

26   1025, 1031 (9th Cir. 2008). At the same time, a court need not accept as true "allegations that

27   contradict matters properly subject to judicial notice" or "allegations that are merely conclusory,

28   unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d

United States District Court
Northern District of California

1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

## III.    REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Defendants have submitted five exhibits that they ask the Court to review in ruling on their motion to dismiss. *See* Mot. 2-3; Bali Decl., ECF 121 ¶¶ 2-7, Exhs. A-F. Defendants believe these exhibits are either incorporated by reference in the 3AC or subject to judicial notice. Plaintiffs do not oppose this request.

There are two doctrines that permit district courts to consider material outside the pleadings without converting a motion to dismiss into a motion for summary judgment: judicial notice under Federal Rule of Evidence 201 and incorporation by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). The judicial notice doctrine permits a court to take judicial notice of matters that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. For instance, though public records are generally subject to judicial notice, a court may not take judicial notice of disputed facts within public records. *Id.*

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja,* 899 F.3d at 1002. This doctrine permits a court to consider a document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court generally "may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Khoja,* 899 F.3d at 1003 (internal quotations omitted). Because all inferences must still be drawn in the nonmoving party's favor, however, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

Exhibit A is a copy of the current version of the Google Terms of Service, effective as of

United States District Court
Northern District of California

March 31, 2020. Bali Decl. ¶ 2. Exhibit B is a copy of the Google Privacy Policy, effective as of December 19, 2019. *Id*. ¶ 3. Exhibit C is a copy of the Google Terms of Service, effective as of October 25, 2017. *Id*. ¶ 4. Exhibit D is a copy of the Google Terms of Service, effective as of April 14, 2014. *Id*. ¶ 5. These documents "form the basis" for Plaintiffs' claims for breach of contract as they contain the contract terms that were allegedly breached. *See* 3AC ¶¶ 237, 242. Defendants' request to incorporate by reference Exhibits A-D is GRANTED. *See Ritchie*, 342 F.3d at 908; *accord Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 n.1 (N.D. Cal. 2019) (granting Facebook's request to incorporate by reference the Terms of Service because the consolidated complaint relied upon them to allege the breach of contract claims and statutory claims).

Defendants also ask the Court to consider Exhibit E— a true and correct copy of the "Transcript of Proceedings Before the Honorable Beth Freeman United States District Judge" from the April, 9 2020 hearing on Google's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint. Mot. at 2-3; Bali Decl. ¶ 6. Courts may properly take judicial notice of other court filings and matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006). Defendants' request for judicial notice of Exhibit E is GRANTED.

Lastly, Exhibit F purports to be a copy of the "Manage audio recordings in your Web & App Activity" webpage from Google's Help Center. Bali Decl. ¶ 7. This document is not incorporated by reference by the 3AC; rather, Defendants ask the Court take judicial notice of it because it appears on a publicly accessible website. Mot. at 3 (citing Fed. R. Evid. 201(b)). The existence of this document is a judicially noticeable fact, and therefore the Court GRANTS Defendants' unopposed request. *See, e.g.*, *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (collecting cases in which courts have taken judicial notice of publicly available policies and agreements). The Court notes, however, that this notice does not establish that the document is valid or otherwise binding on the Plaintiffs. *See Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010).

## IV.    DISCUSSION

The Court made extensive findings regarding the legal viability of Plaintiffs' previous complaint when considering Defendants' previous motion to dismiss. *See* Order on Motion to

Dismiss, ECF 80. The Court addressed each element of each claim in detail. *See generally id*; *see also* Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint, ECF 56 at i-ii (attacking Plaintiffs' claims in turn). Defendants adopt a more particularized approach in the instant motion. *See* Mot. at i-ii. The Court addresses each argument raised by Defendants in turn.

### A. Counts 1, 3, 4, and 5 and the Reasonable Expectation of Privacy

Plaintiffs bring claims 1, 3, 4, and 5 for violation of the Wiretap Act, violation of CIPA § 632, intrusion upon seclusion under California common law, and invasion of privacy in violation of the California Constitution. According to Defendants, Plaintiffs Galvan, E.G., and Kumandan's privacy claims fail because they have not alleged that Google intercepted their private communications. Mot. at 6-10.

To state a claim under the Wiretap Act or CIPA § 632 or for intrusion upon seclusion or invasion of privacy, Plaintiffs must allege facts showing that they had a reasonable expectation of privacy in the oral communications that they allege were recorded without their consent. *See* Order on Motion to Dismiss at 11 (must allege "reasonable expectation of privacy" in oral communications to state a claim under the Wiretap Act) (quoting *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978)); *id*. at 28 (to state a CIPA Section 632 claim, plaintiffs must allege "confidential communications," which requires a "reasonable expectation of privacy") (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 117, n.7 (2006)); *id*. at 31 (the intrusion must have occurred "under circumstances that would give rise to a reasonable expectation of privacy" to state a claim for intrusion upon  seclusion or invasion of privacy); *see also Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 285, 288 (2009).

Defendants argue that the 3AC does not allege facts showing that Plaintiffs frequently had oral communications near their devices under circumstances giving rise to a reasonable expectation of privacy. Mot. at 7-10. The Court addressed this argument in part in its order on Defendants' previous motion to dismiss. This Court concluded that the Named Plaintiffs' allegations were "too vague" to infer that Plaintiffs' respective GAEDs intercepted their private conversations. Order on Motion to Dismiss at 11. Although this Court rejected Defendants' suggestion that Plaintiffs were required to identify specific communications that Plaintiffs reasonably believed to be private and

United States District Court
Northern District of California

1    that were wrongly recorded, it nonetheless found that Plaintiffs failed to allege that they had a

2    reasonable expectation of privacy in the intercepted communications. *Id*. In support of this

3    conclusion, the Court pointed to the lack of "facts regarding the participants in the conversations,

4    the locations of the conversations, or examples of content from the conversations." *Id*. at 12. The

5    Court highlighted that lack of detail was "especially glaring" for Plaintiffs who interacted with

6    smartphones because "smartphones are by their nature mobile and are frequently used in public

7    places." *Id*. The 3AC includes extensive amendments about the Named Plaintiffs' usage of their

8    GAEDs. 3AC ¶¶ 18-75

9        In light of these amendments, the Court is satisfied that Plaintiffs allege sufficient facts to

10   show that they frequently had oral communications near their devices under circumstances giving

11   rise to a reasonable expectation of privacy. Plaintiffs Galvan and E.G., who are members of the

12   same household, allege that they own a Samsung smartphone and a Galaxy Tab device. 3AC ¶ 29.

13   Plaintiffs Galvan and E.G. allegedly charge these devices in their living or dining room during the

14   day and in the bedroom at night. *Id*. ¶ 31. They further allege that they have private conversations

15   with family members "in their home, bedroom, and car" in the presences of the GAEDs. *Id*. ¶¶ 30-

16   31. For example, on September 17, 2018, the Galvan family had a "private disciplinary

17   conversation" "concerning personal responsibility. This confidential conversation was recorded

18   without a hot word." *Id*. ¶ 32; *see also id*. ¶ 33 (conversation about Galvan parents' childhood in the

19   inner city). Similarly, Plaintiff Kumandan alleges that he "frequently carried his Google Pixel

20   smartphone on his person, including to areas within his home where he has a reasonable expectation

21   of privacy." *Id*. ¶ 39. Kumandan alleges that his GAED recorded a conversation between him and

22   his wife about BBQ sauce at their joint residence "where they have expectation of privacy." *Id*. ¶

23   40; *see also id*. ¶ 42 (On July 6, 2019, "Google recorded Plaintiff Kumandan's interaction with his

24   family member and/or a friend which took place in privacy and to the exclusion of all other persons

25   where Plaintiff Kumandan had a reasonable expectation of privacy"). Contrary to Defendants'

26   assertion to the contrary, Mot. at 8, these allegations properly detail the circumstances under which

27   Plaintiffs' private conversations occurred. Plaintiffs Galvan, E.G., and Kumandan all allege that the

28   GAEDs intercepted conversations between family members that occurred inside their respective

United States District Court
Northern District of California

9

homes. Such interceptions occurred "surreptitiously" without Plaintiffs uttering a hot word or manually activating the devices. *Id.* ¶¶ 32, 43. While Defendants seem to take issue with the fact that Plaintiffs' decline to go into more granular detail about the content of their conversations, this demand has already been rejected by the Court, Order on Motion to Dismiss at 11, and undermines the alleged private nature of the conversations. In sum, the Court finds that Plaintiffs had a subjective expectation that these conversations were not being overheard or recorded and that this expectation was objectively reasonable. *McIntyre*, 582 F.2d at 1223.

Defendants further argue that Plaintiffs fail to allege facts showing that false accepts routinely occur. Mot. at 10. As an initial matter, Plaintiffs need not plead this allegation in light of amendments to the 3AC. In the Court's previous Order, it held Plaintiffs must allege that "they frequently have oral communications near their respective Google Assistant Enabled Devices under circumstances giving rise to a reasonable expectation of privacy" coupled with an allegation that "false accepts routinely occur" to support an inference that their private conversations were intercepted. Order on Motion to Dismiss at 12; *see also id.* ("At the motion hearing, Defendants represented that through their accounts, users can view all their past conversations with the Google Assistant, including false accepts. If that is the case, Plaintiffs are advised to avail themselves of that information."). This holding was made in context of the previous complaint, in which the Plaintiffs failed to identify *any* conversations that Defendants surreptitiously recorded. Plaintiffs have now rectified this problem and have identified multiple conversations that Defendants recorded even where Plaintiffs did not utter a hot word or manually activate the devices. *See generally* 3AC ¶¶ 18-75.

The Court declines to heed Defendants' objection for a second reason. Defendants object that the allegations in the complaint do not establish that false accepts occur frequently and that "[t]he relevant inquiry is how frequently the Assistant records communications which are not intended for it, and Plaintiffs' own allegations show that this figure is low." Mot. at 10. But this inquiry is more properly considered at the summary judgment phase. At the motion to dismiss phase, the complaint is construed in a light most favorable to the plaintiff, *Everest & Jennings, Inc. v. American Motorists Ins.* Co., 23 F.3d 226, 228 (9th Cir.1994), and all reasonable inferences are to

be drawn in favor of the plaintiff, *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir.1997). In the 3AC, Plaintiffs Galvan, E.G., and Kumandan allege that they often engaged in private conversations near their GAEDs and identified specific occurrences of private conversations that were allegedly intercepted. 3AC ¶¶ 27-44. Plaintiffs further allege that "[o]f the 11 recorded conversations reflected in the Google account connected to Plaintiff Galvan's smart phone, all 11 were non-consensually recorded by Google and the Google Assistant Enabled Device" and "[o]f the seven recorded conversations that Plaintiff Kumandan's Google account currently reflects, five, or 71%, were non-consensually recorded by Google and Google Assistant Enabled Device." *Id*. ¶¶ 36, 44. Drawing all reasonable inferences in favor of the Plaintiffs, the 3AC adequately alleges that false accepts routinely occur.

The Court DENIES Defendants' Motion to Dismiss based on a failure to allege that Google intercepted Plaintiffs' private communications

### B.     Count 1 and Unlawful Disclosure or Use

The Wiretap Act "is designed to prohibit 'all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials engaged in investigation of specified types of major crimes.'" *Greenfield v. Kootenai County*, 752 F.2d 1387, 1388 (9th Cir. 1985) (quoting S. Rep. No. 1097, 90th Cong., 2d Sess.). In Count 1 of the 3AC, Plaintiffs allege that the Defendants violated 18 U.S.C. § 2511(1)(a) of the Wiretap Act, which makes it unlawful for a person to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." *Id*. § 2511(1)(a); *see* 3AC ¶¶ 160-162. The Wiretap Act also imposes liability on any person who "intentionally discloses" to "any other person the contents of any wire, oral, or electronic communication," or "intentionally uses" the "contents of any wire, oral or electronic communication" while "knowing or having reason to know that the information was obtained through the [unlawful] interception," *id*. § 2511(1)(c)-(d); Plaintiffs allege that Defendants also violate these provisions. *See* 3AC ¶¶ 163-168.

Defendants now argue that Plaintiffs' theory that Google is liable under § 2511(1)(c)-(d) for disclosing and using unlawfully intercepted oral communications to target personalized advertising to them fails as a matter of law. Mot. at 11-13. Defendants contend that (1) "the only Plaintiffs who

United States District Court
Northern District of California

allege that they were targeted with personalized advertisements are Kumandan, Galvan, and E.G.",
(2) "'liability for disclosure or use is contingent on the original interception being unlawful'"; and
(3) "there are no allegations that Google *disclosed* Plaintiffs' communications to a third party for
the purpose of targeting advertisements." Mot. at 11 (quoting Order on Motion to Dismiss at 15)
(emphasis in original).

First, the Court agrees with Defendants that the Plaintiffs' allegations of targeted advertising
are limited to Plaintiffs Galvan, E.G., and Kumandan. In the 3AC, Galvan and E.G. allege the
following facts regarding Google's use of private conversations for targeted advertising:

> Several times, topics of Plaintiff Galvan's and Plaintiff E.G.'s
> private conversations were used to target advertisements to them. In
> one such instance, Plaintiff E.G. was doing research on Los Angeles
> gangs and was having a conversation regarding these gangs during
> her parents' childhood (who both grew up in the inner city).
> Following this conversation, Plaintiff E.G. receive targeted
> advertising in the form of suggested videos by YouTube, a Google-
> owned company.

3AC ¶ 33. Kumandan alleges:

> On at least one occasion, the subject matter of a conversation
> between Plaintiff Kumandan and his wife were used to target
> advertisements to Plaintiff Kumandan. In one such instance,
> Plaintiff Kumandan was speaking to his wife about BBQ sauces.
> Plaintiff Kumandan did not search for or otherwise interact with
> Google regarding the same subject matter. Following this
> conversation, Plaintiff Kumandan received targeted advertisement
> where an ad for a BBQ sauce was displayed on Plaintiff
> Kumandan's Instagram page. This conversation took place in
> Plaintiff and his spouse's joint residence where they have
> expectation of privacy

*Id*. ¶ 40. Plaintiffs do not argue otherwise. *See* Opp. at 10. Accordingly, the Court DISMISSES
WITHOUT LEAVE TO AMEND any Wiretap Act claim based on targeted advertising by Plaintiffs
Spurr, B.S., Brekhus, and Hernandez.

Defendants next argue that Plaintiffs' Wiretap Act claim must be dismissed because
Plaintiffs Galvan, E.G., and Kumandan fail to plead facts showing that the alleged interception was
unlawful. Mot. at 11-12; *see Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009); 18 U.S.C. § 2511(c),

United States District Court
Northern District of California

(d) (prohibiting the use or disclosure of the contents of any wire communications "obtained through the interception of a wire . . . communication in violation of this subsection"). But, as explained in Section III.A, Plaintiffs Galvan, E.G., and Kumandan successfully alleged that Defendants intercepted a "wire, oral, or electronic communication." 18 U.S.C. § 2511(a)(1). And the Court has previously held that Plaintiffs successfully alleged that such interception was intentional. Order on Motion to Dismiss at 9-10.

Defendants' final argument is that there are no allegations that Google disclosed any recordings to any third party. This argument speaks solely to the viability of Plaintiffs' claims under 18 U.S.C. § 2511(c). *See* Mot. at 11 ("there are no allegations that Google *disclosed* Plaintiffs' communications to a third party for the purpose of targeting advertisements" (emphasis in original)). Plaintiffs Galvan and E.G. allege that, for the purposes of targeted advertising, Defendants disclosed the contents of E.G.'s conversations to YouTube:

> Several times, topics of Plaintiff Galvan's and Plaintiff E.G.'s private conversations were used to target advertisements to them. In one such instance, Plaintiff E.G. was doing research on Los Angeles gangs and was having a conversation regarding these gangs during her parents' childhood (who both grew up in the inner city). Following this conversation, Plaintiff E.G. received targeted advertising in the form of suggested videos by YouTube, a Google-owned company. The video concerned an individual whose name was specifically mentioned in the conversation. Plaintiffs Galvan and E.G. have recognized that other ads have been targeted to them following their private conversations in their home.

3AC ¶ 33. According to Defendants, these allegations fail as a matter of law because "E.G. does not allege that Google disclosed the conversation to any third party, as YouTube is not a third party, but rather 'a Google-owned company.'" Mot. at 12 (quoting 3AC ¶ 33, citing Bali Decl., Exh. B at 19, 35). In response, Plaintiffs argue that whether YouTube is a third party entity is a factual question that requires interrogation into the nature of the relationship between Defendants and YouTube. While the relationship between a defendant and a third party entity often may require a factual interrogation in some circumstances, there are no allegations in the current pleading to

13

United States District Court
Northern District of California

suggest that YouTube is a third party. This is true even when construing Plaintiffs' allegations in a light most favorable to their claims. Indeed, the pleading itself states that YouTube is a Google-owned company. 3AC ¶ 33. Accordingly, the Court DISMISSES WITHOUT LEAVE TO AMEND Galvan and E.G.'s Wiretap Act claim to the extent it is predicated on unlawful disclosure for the purpose of targeted advertising.

Meanwhile, Kumandan alleges that, for the purposes of targeted advertising, Defendants disclosed the contents of his conversation to Instagram:

> On at least one occasion, the subject matter of a conversation between Plaintiff Kumandan and his wife were used to target advertisements to Plaintiff Kumandan. In one such instance, Plaintiff Kumandan was speaking to his wife about BBQ sauces. Plaintiff Kumandan did not search for or otherwise interact with Google regarding the same subject matter. Following this conversation, Plaintiff Kumandan received targeted advertisement where an ad for a BBQ sauce was displayed on Plaintiff Kumandan's Instagram page.

3AC ¶ 40. Defendants take an everything-but-the-kitchen-sink approach to Kumandan's pleading, arguing that there is no allegation that this conversation occurred near Kumandan's GAED, no allegation as to the temporal gap between the conversation recording and the targeted advertising, and no allegation that Google disclosed Kumandan's conversation to Instagram. Mot. at 11.

None of these arguments carry the day. First, the Court has already found that Kumandan properly alleged that the conversation occurred near his Google Pixel. Second, the Court is unaware of any authority suggesting that Kumandan needs to specify the exact time period between his alleged conversation and the targeted Instagram advertisement. Viewing the pleadings in the light most favorable to Plaintiffs, the Court finds it sufficient that Kumandan pled that the targeted advertisement occurred after the identified intercepted conversation. Finally, the Court rejects Defendants' argument that Plaintiffs must allege the specific mechanics behind Google's alleged disclosure to Instagram. *See* Mot. at 11 ("there are no facts at all connecting the advertisement that was displayed on Instagram to Google or the Assistant, and [Plaintiffs'] attempt to draw such a

14

connection is pure speculation"). While Google suggests that Kumandan's pleadings are wholly speculative, the Court finds it eminently plausible that Google disclosed Kumandan's intercepted conversations to Instagram, thus enabling Instagram to provide Kumandan with targeted advertisements.

Finally, Defendants argues that "to the extent Plaintiffs contend that Google *used* Kumandan's and/or E.G.'s conversations to target advertisements, such use is expressly permitted under the Privacy Policy and thus not actionable." Mot. at 12 (emphasis in original). The Privacy Policy, of which the Court has taken judicial notice, contains a section entitled "Information we collect as you use our services." Bali Decl., Exh. B at 29. That section states, "We collect information about your activity in our services, which we us to do things like recommend a YouTube video you might like." *Id.*; *see also id.* at 23 (Google "collect[s] information about your activity in our services, which we use to do things like recommend a YouTube video you might like.").

In the Court's previous order, it found that Google's Privacy Policy was too vague to conclusively establish consent to *disclosure* of the recordings. *See* Order on Motion to Dismiss at 21-22. The Court now finds that Google's Privacy Policy is too vague to conclusively establish consent to *use* of the recordings. The question before the Court is whether the Privacy Policy adequately indicated to users that Defendants would use recordings made absent manual activation or the utterance of a hot word, such that users could fairly be said to have "agreed" to these disclosures. *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019). The Court considers this question "objectively, from the perspective of a reasonable . . . user." *Id.* The Court find that while Google's Privacy Policy does disclose that it will collect and use information for targeted advertising, it does not sufficiently apprise users that it will use recordings made in the absence of manual activation or a hot word utterance. *See In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d at 792 ("Although

15

United States District Court
Northern District of California

Facebook points to a section in its Data Use Policy entitled 'Service Providers' which says 'we give your information to the people and companies that help us provide, understand, and improve the services we offer,' that statement does not come close to disclosing the massive information-sharing program with business partners that the plaintiffs allege in the complaint."). As such, it cannot serve as a valid consent.

### C.    Count 2: Stored Communications Act

Count 2 alleges violations of the Stored Communications Act ("SCA"). As the Ninth Circuit has explained, the SCA is modeled off the common law of trespass. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072–73 (9th Cir. 2004). "Just as trespass protects those who rent space from a commercial storage facility to hold sensitive documents, the Act protects users whose electronic communications are in electronic storage with an ISP or other electronic communications facility." *Id.* (internal quotations and citations omitted). An ECS provider "shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service"; if it does so, it is liable for unlawful disclosure of customer communications under § 2702(a). 18 U.S.C. § 2702(a)(1). Defendants now argue that, as with Plaintiffs' Wiretap Act claims, "there are no factual allegations supporting any contention that Google disclosed information to third parties for the purpose of targeted advertising." Mot. at 12. Accordingly, Defendants request that the Court dismiss  Plaintiffs' unlawful disclosure claim under 18 U.S.C. § 2702(a)(1) based on targeted advertising.

The Court has dismissed Plaintiffs Spurr, B.S., Galvan, E.G., Brekhus, and Hernandez's Wiretap Act claims under 18 U.S.C. § 2511(c) based on a theory of targeted advertising. *See* Section III.B. Accordingly, the Court DISMISSES WITHOUT LEAVE TO AMEND any SCA claim based on targeting advertising by Plaintiffs Spurr, B.S., Galvan, E.G., Brekhus, and Hernandez.

### D.    Count 6: Common Law Breach of Contract

Count 6 is a claim for breach of contract based on Defendants' Terms of Service ("TOS") and the Privacy Policy contained therein. 3AC ¶¶ 181-196. In order to plead a claim for breach of contract, Plaintiffs must allege: (1) the existence of a contract with Defendants, (2) their

performance under that contract, (3) Defendants breached that contract, and (4) they suffered damages. *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at *14 (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). Defendants move to dismiss on the grounds that Plaintiffs fail to (1) plead how any website is incorporated into the Terms of Service ("TOS"), (2) identify any conduct by Google that is in breach of any contractual term, or (3) identify any damages suffered by Plaintiffs. *See* Mot. at 13-18.

### i. Specific Contractual Provisions: FAQ in the Nest Help Center

In the Court's order considering Defendants' previous motion to dismiss, it found that Plaintiffs adequately identified certain provisions of Google's Privacy Policy. Order on Motion to Dismiss at 33-34. This Court found, however, that certain identified provisions of the Privacy Policy could not form the basis for a breach of contract claim because the operative complaint made no reference to such provisions. *Id*. at 34 ("The Consolidated FAC makes no reference to this provision, which means the Court cannot consider it to be alleged for purposes of the instant motion."). Finally, the Court concluded that Plaintiffs were unable to base their contract claim on provisions from "different websites, including the 'Google Nest Help Center' and the 'Google Safety Center'" because the websites were not binding on the parties. *Id*. at 34-35 ("But this vague statement is hardly sufficient to establish that the particular websites cited by Plaintiffs are part of the TOS or otherwise are binding upon the parties.").

Defendants now argue that the FAQ in the Nest Help Center is not incorporated into Google's Terms of Service, and therefore cannot be the basis for a breach of contract claim. Mot. at 13-14. Plaintiffs respond that "[c]ontrary to Google's argument, the allegations regarding Google's breach are not premised on the FAQs referenced in the [3]AC. Rather, the citation to the FAQs is simply included to aid the interpretation of the potentially ambiguous term 'use audio features' in the context of GAEDs." Opp. at 12. Accordingly, the Court DISMISSES Plaintiffs' breach of contract claim to the extent that it is premised on the FAQ in the Nest Help Center.

### ii. Breach

The Court now turns to whether Plaintiffs have alleged that Defendants breached the terms of the Privacy Policy. Plaintiffs allege that they entered into a valid contract with Google, "which

Google breached in three separate and distinct ways: (1) by recording Plaintiffs' private conversations when they are not using their Google Assistant Enabled Devices; (2) by disclosing to third parties Plaintiffs' private conversations without their consent; and (3) by changing the way Defendants collected and used information without Plaintiffs' knowledge or consent." 3AC ¶ 236. According to Defendants, Plaintiffs have failed to plausibly plead facts to support their claims. Mot. at 14-16.

Plaintiffs adequately allege the first two identified theories of breach, but miss the mark on the third. Plaintiffs' first theory—that Google breached the Privacy Policy by recording Plaintiffs' private conversations when they are not using their GAEDs—is predicated on the following Privacy Policy provision:

> **Your activity**
>
> We collect information about your activity in our services, which we use to do things like recommend a YouTube video you might like. The activity information we collect may include:
>
> ...
>
> • Voice and audio information when you use audio features.

Bali Decl., Exh. B at 21; TAC ¶ 242. Defendants claim that Plaintiffs have failed to allege a breach of this provision because it "does not say that Google will collect audio information only when the user utters a hotword or manually activates the device. . . . audio features are being used when the Assistant is activated; there is nothing in this provision limiting the meaning of 'use' to only *intentional* uses.'" Mot. at 14-15 (emphasis added). In other words, Defendants ask the Court to find as a matter of law that this provision is broad enough to permit Google to record conversations even where a hotword on manual activation does not occur.

The Court declines to do so. At the motion to dismiss stage, the Court must draw all reasonable inferences in favor of Plaintiffs. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Under this standard, the Court cannot conclude

18

United States District Court
Northern District of California

that the Privacy Policy provision's reference to the "*use* [of GAED] audio features" applies to scenarios in which the Plaintiffs do not affirmatively use GAED audio features, but the GAED nonetheless records audio. TAC ¶ 242 (emphasis added); *see also* Transcript ("Tr.") at 7:3-10 ("[THE COURT:] In my view the Plaintiffs have [it] right that audio features are used when the consumer chooses to use them, not when the device mistakenly or otherwise picks up unintended conversations. And so I think it is at least a reasonable inference that the phrase 'when audio features are used' really is limited to when there is a decision to manually engage or to state a hotword."). And while Defendants stress that "the Nest FAQ make clear that Google Home records conversations when a hotword is 'detected' not when it is spoken," Mot. at 15, they simultaneously argue that the Nest FAQ is not incorporated into the Privacy Policy and is thus not a proper basis of Plaintiffs' breach of contract claim, Mot. at 13-14.

Plaintiffs' second theory—that Google breached the Privacy Policy by disclosing to third parties Plaintiffs' private conversations without their consent—is predicated on the following Privacy Policy provision:

> **When Google shares your information**
>
> We do not share personal information with companies, organizations, or individuals outside of Google except in the following cases:
>
> **With your consent**
>
> We'll share personal information outside of Google when we have your consent. For example, if you use Google Home to make a reservation through a booking service, we'll get your permission before sharing your name or phone number with the restaurant. We'll ask for your explicit consent to share any sensitive personal information.
>
> **With domain administrators**
>
> . . .
>
> **For external processing**

> We provide personal information to our affiliates and other trusted businesses or person to process it for us, based on our instructions and in compliance with our Privacy Policy and any other appropriate confidentiality and security measures.
>
> **For legal reasons**
>
> . . .

Bali Decl., Exh. B at 29; TAC ¶¶ 245, 251. Defendants contend that they have not breached this provision solely because "this Court already found that the Privacy Policy permits disclosure 'for external processing' without consent." Mot. at 16 (citing Order on Motion to Dismiss at 35). But the Court's determination was driven by its finding that the operative complaint did "not adequately plead that Plaintiffs' 'personal information' has been shared. The vague and conclusory allegation that Plaintiffs 'private conversations' were recorded and disclosed does not suffice." Order on Motion to Dismiss at 35. As the Court explained at length above, this deficiency has now been rectified. And the parties do not dispute that Plaintiffs have not consented to the disclosure of their personal information. Mot. at 16; Opp. at 15. This theory of breach may thus proceed.

Plaintiffs' third theory—that Google breached the Privacy Policy by changing the way Defendants collected and used information without Plaintiffs' knowledge or consent —is predicated on the following Privacy Policy provision:

> The information Google collects, and how that information is used, depends on how you use our services and how you manage your privacy controls.

Bali Decl., Exh. B at 29; TAC ¶¶ 252. According to Plaintiffs Brekhus and Hernandez, Defendants breached this provision because

> [Google] changed the method that [it] collected information and changed the way the information was used without regard to how Plaintiffs and the Purchaser Subclass used the services or managed their privacy controls, without notice to or consent by Plaintiffs. As alleged herein, Google changed the method of collecting information from being based on actions by the user, such as

20

> manual activation or using "hot words," to being based on sounds not made by the user necessarily, but by other items in the home such as smoke alarms, glass breaking, or other noises.

TAC ¶¶ 253. But nothing in the identified contract provision suggests that Google is contractually prohibited from making changes to how it collects or uses consumer information. Tr. at 7:14-16 ("[THE COURT:] I haven't actually seen anything in the pleading that would tell me that Google promised not to do that."), 38:22-25 ("[THE COURT:] You have pointed to nothing in the documents -- in the contracts that tells me that Google promised to never update and -- or to say: We promise we will never do a software update you don't like."), 40:12-13 ("[THE COURT:] You are basically suing on a bug that was unintentional, claiming it to be a breach of contract."). And Plaintiffs do not point this Court to a *single* instance where another court has allowed a similar theory of breach to proceed. *See* Opp. at 16-17. Accordingly, the Court DISMISSES the third theory of Plaintiffs' contract claim WITHOUT LEAVE TO AMEND.

### iii. Damages

Plaintiffs proffer three damages theories: (1) benefit of the bargain, (2) "harm to [Plaintiffs'] "privacy interests," and (3) "disgorgement of profits made by Google as a result of its breach of contract." 3AC ¶¶ 254-256; *see* Opp. at 17-18. Defendants believe all of these theories to be flawed. *See* Mot. at 17-18.

The first theory is benefit of the bargain damages: "the services Plaintiffs . . . received in exchange for the purchase price of Google Assistant Enabled Devices were worth less than the services they paid for because Plaintiffs' information was recorded without their consent and divulged to third parties." 3AC ¶ 254. Also known as expectation damages, a benefit of the bargain measure of damages is intended "to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." *Coughlin v. Blair*, 262 P.2d 305, 314 (Cal. 1953); *see also Twin City Fire Ins. Co. v. Philadelphia Life Ins. Co.*, 795 F.2d 1417, 1425 (9th Cir. 1986).

Courts have approved damages based on benefit of the bargain in several technology cases

21

involving privacy. For instance, in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, Plaintiff

Mortensen alleged that he paid "$19.95 each year since December 2007 for Yahoo's premium

email service" but did not acquire the full value of Yahoo's service because it was not secure. 313

F. Supp. 3d 1113, 1130 (N.D. Cal. 2018). There, Plaintiff Mortensen plausibly lost the benefit of

the bargain in that he received a less valuable email service than the one he paid for. *See id.*

Similarly, in *In re Anthem, Inc. Data Breach Litig.*, plaintiffs paid premiums to defendants for

health insurance plans. No. 15-MD-02617-LHK, 2016 WL 3029783, at *7-*8 (N.D. Cal. May 27,

2016). When the defendants experienced various breaches of its database containing individuals'

health record information, the plaintiffs alleged, *inter alia,* that the defendants had breached their

privacy policies. *Id.* at *9. The Court allowed the plaintiff to pursue a theory of benefit of the

bargain losses on the theory that some portion of their premiums went toward paying for robust

security measures, which they allegedly did not receive. *Id.* at *13.

    The Court previously found that Plaintiffs failed to allege that they have paid anything to

Defendants for the GAEDs:

> Not only does the Consolidated FAC say nothing about any fee or
> premium paid, it appears that the Google Assistant is available free
> of charge for use on Google Assistant Enabled Devices. *See* Consol.
> FAC ¶ 21. As a result, it cannot be said that Plaintiffs received less
> than what they paid for—they appeared to have paid nothing. *See In
> re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D.
> Cal. 2013) (rejecting plaintiffs' benefit of the bargain theory because
> "the FAC fails to allege that Plaintiffs actually provided
> consideration for the security services which they claim were not
> provided"). The Court therefore does not believe that benefit of the
> bargain is a viable damages theory.

Order on Motion to Dismiss at 37.

    Defendants argue that Plaintiffs B.S., Galvan, E.G., and Brekhus "fail to allege that they

paid Google anything for the Assistant, much less any privacy protective features." Mot. at 17.

And the allegations in the 3AC of Plaintiffs Kumandan, Spurr, and Hernandez, Defendants

contend, do not rectify the problem the Court previously identified because while they "allege that

they 'purchased Google Manufactured Devices,'" they "fail to allege that they paid a premium for

a certain level of privacy protection they did not receive." Mot. at 17 (quoting 3AC ¶ 238).

The Court easily concludes that Plaintiffs Kumandan, Spurr, and Hernandez have adequately pled expectation damages. The 3AC explicitly alleges that "Plaintiffs Kumandan, Spurr, Hernandez and Google Manufactured Device Subclass Members would not have purchased, or would not have paid as high a price, for the Google Assistant Enabled Devices if they had known that Google would breach the TOS and Privacy Policy by recording and revealing Plaintiffs private conversations." 3AC ¶ 254.

The same cannot be said for the remaining Plaintiffs. There is no allegation even supporting an inference that B.S. even owned a GAED. *See* 3AC ¶ 20 ("Plaintiff Spurr owned at least three Google Home devices during the Class Period."). And Brekhus explicitly alleges that he obtained his GAED for free via a promotion with third-party company Spotify. 3AC ¶ 46. That Brekhus "*would not have paid for Spotify* or ordered the Google Home device . . . had he known that any of Google's representations were false," has no bearing on the benefit of Brekhus' bargain *with Defendants*. 3AC ¶ 55 (emphasis added). Finally, while Plaintiffs Galvan and E.G. allege that they owned a Samsung smart phone and a Galaxy Tab during the Class Period, 3AC ¶ 29, the Court cannot infer from this information that they purchased the devices from Google (as opposed to some other entity). Accordingly, the Court GRANTS Defendants' motion on this ground as to Galvan, E.G., B.S. and Brekhus and DENIES Defendants' motion on this ground as to Kumandan, Spurr, and Hernandez.

Plaintiffs' second theory of damages—harm to their privacy interests—is adequately pled. Generally, a plaintiff may seek damages for "the detriment caused by the breach." *Stephens v. City of Vista*, 994 F.2d 650, 657 (9th Cir. 1993) (citing Cal. Civ. Code § 3300). In this case, the detriment Plaintiffs say they suffered was an invasion of their privacy. Plaintiffs are entitled to seek compensatory damages or perhaps nominal damages for such harm. *See In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 802; Cal. Civ. Code § 3360. As discussed a length above, Plaintiffs have amended their complaint to sufficiently allege an invasion of their privacy, and the 3AC plausibly alleges that Plaintiffs' own private conversations were intercepted. Accordingly, the Court DENIES Defendants' motion on this ground.

Plaintiffs' third theory of damages is that Plaintiffs are entitled to "disgorgement of the

United States District Court
Northern District of California

profits Google has obtained as a result of the improved functionality of Google Assistant resulting from its sharing of private conversations in breach of its contract with Plaintiff[s] and Class Members." 3AC ¶ 256. The Ninth Circuit has said that "under California law, a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim, such that disgorgement is a proper remedy." *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 Fed. App'x 665, 669 (9th Cir. 2010) (citing *Ajaxo Inc. v. E\*Trade Group, Inc.*, 135 Cal. App 4th 21, 56-57 (2005)). The Ninth Circuit has further held that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at \*5-\*6.

To plead a theory of disgorgement, Plaintiffs must show "that they retain a stake in the profits garnered." *Id.* at \*6. The Court previously concluded that

> Plaintiffs attempt to plead that they are entitled to the "substantial profits" that Defendants' have earned using their "personal information" because Defendants' use was unauthorized. Consol. FAC ¶¶ 199-200. But Plaintiffs have not adequately alleged that their unspecified "personal information" has financial value or that Defendants have profited from the information. Although courts have found that individuals' browsing history may plausibly carry financial value, *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at \*6., Plaintiffs have not pleaded any description of the "personal information" that Defendants' allegedly used. Without such facts, Plaintiffs' assertion that Defendants garnered "substantial profits" from the information is purely conclusory. *See, e.g.*, *Varga v. Wells Fargo Bank, N.A.*, 796 Fed. App'x 430, 431 (9th Cir. 2020) ("Varga's conclusory assertion that she was 'deprived of the contractual and consumer protections and benefits' of the notice provision is insufficient to plausibly allege" damages.). The Court finds that Plaintiffs have plausibly demonstrated that any profits were unjustly earned by virtue of Defendants' use being allegedly unauthorized. *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at \*6.

Order on Motion to Dismiss at 38.

To rectify these defects, the 3AC alleges that "[t]he unlawfully-obtained private conversations have financial value, in that they enabled Google to improve the functionality of the Google Assistant and to better target advertisements to Google users, thereby increasing Google's revenue." 3AC ¶ 256. While Defendants argue that this allegation is pure speculation, Mot. at 18,

Plaintiffs have offered at least one example of the financial value of their intercepted personal information. Plaintiff Kumandan pled that he had a conversation inside his home with his wife about BBQ sauce, and that, later, he received a targeted Instagram advertisement for BBQ sauce. 3AC ¶ 40. Plaintiff also allege that "[i]mproving the functionality of Google Assistant is necessary to allow Google to continue to compete with the increasingly crowded virtual assistant market and to buttress the price of the Google Manufactured Devices."). *Id.* ¶ 10. Drawing all inferences in favor of Plaintiffs, the Court finds it plausible that Google was able to monetize Plaintiffs' unauthorized recordings via targeted advertising and by improving the Google Assistant functionality. The Court DENIES Defendants' motion on this ground.

### E.    Counts 8 and 9 and Fed. R. Civ. P. 9(b)

In Count 8, Plaintiffs Brekhus and Hernandez allege that Defendants have violated the CLRA by making "improper representations" about Google Home devices and by advertising Google Home devices "with intent not to sell them as advertised." 3AC ¶¶ 263-270. In Count 9, Plaintiffs Brekhus and Hernandez allege that Defendants have engaged in common law fraud, deceit, and/or misrepresentation by "fraudulently and deceptively inform[ing] Plaintiffs that the Google Home Product had adequate security measures in place and that Defendants would not misuse their personal information." 3AC ¶¶ 271-278. Defendants move to dismiss both claims, arguing that neither claim meets the requisite  Fed. R. Civ. P. 9(b) standard. Mot. at 18-20, 22-23.

Fraud allegations must be pled "with particularity." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal marks omitted). Rule 9(b)'s heightened pleading standard extends to Plaintiffs' CLRA claim as it sounds in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Plaintiffs do not dispute that the fraud and CLRA claims fall under this standard. *See* Opp. at 21-25. They do dispute whether their pleadings meet this standard. *Id*.

The Court finds the pleadings as to these claims exceedingly thin. Indeed, the Court struggled to identify a specific, cogent theory of fraudulent conduct alleged in the 3AC pursuant to

which Brekhus and Hernandez intend to sue. *See* Tr. at 43:19-44:18 (clarifying theory of fraud). The allegation in the 3AC that Defendants promised "adequate security measures" is vague to the point of meaninglessness. 3AC ¶ 272 ("Defendants have fraudulently and deceptively informed Plaintiffs that the Google Home Product had adequate security measures in place and that Defendants would not misuse their personal information."). It is Plaintiffs' responsibility to detail what these security measures would be, and how Google failed to provide them. *See Cafasso*, 637 F.3d at 1055.

In the opposition brief and at the motion hearing, Plaintiffs clarified that their theory of fraud is predicated on Google's ability to *expand* the circumstances upon which the GAEDs would initiate recordings. Opp. at 22 ("the claims are that Google promised that the Google Home devices would active in only three limited circumstances, when in fact, Google retained the ability to unilaterally add additional circumstances, and it did so in the form of 'alarm events.'"); *see also* Tr. at 43:19-44:12 ("THE COURT: So you are saying that Google had a present intention to change the terms that it didn't disclose? That's what you are saying? [PLAINTIFFS]: Yes, Your Honor . . . We allege that at the time they made those representations, they knew that they could and would change the circumstances under which . . . the devices could record and transmit."). To this end, the pleading includes allegations that GAEDs belonging to third parties began recording audio after the detection of smoke alarms or breaking glass. 3AC ¶¶ 108-109. In response, Google explained that these recordings were accidental and were triggered by a software update that was consequently rolled back. *Id.* ¶ 110.

Acknowledging that this theory is less amorphous than Plaintiffs' "adequate security measures" theory, the Court nonetheless finds that it still falls far short of Rule 9's requirements. First, the Court is unable to find where this *unified theory* of fraud is alleged in the complaint. Instead, Plaintiffs have peppered relevant allegations throughout without providing the Court any guiding common thread. *Cf. Tinian Women Ass'n v. United States Dep't of the Navy*, 976 F.3d 832, 841 (9th Cir. 2020) ("Potentially relevant facts and regulations are scattered in different parts of the complaint, and a district court's job is not to piece together a jigsaw puzzle of claims."). And, even ignoring this flaw, the 3AC is void of facts that so much as suggest that (1) Brekhus and

Hernandez justifiably and detrimentally relied on Defendants' alleged misrepresentations or (2) Google, *at the time of the alleged misrepresentations*, had the intent to mislead or omit material information about the future circumstances under which the GAEDs would record audio. Plaintiffs must plead additional facts that establish these "indispensable elements of fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages" (internal marks and citation omitted).

The Court GRANTS Defendants' motion to dismiss Counts 8 and 9. While the Court remains skeptical that Plaintiffs can fix the identified defects, because this is the first instance the Court has had to consider these claims, Plaintiffs are allowed LEAVE TO AMEND. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**F.    Count 7: California UCL**

Count 7 is brought under California's Unfair Competition Law ("UCL"), which prohibits any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The California Supreme Court has clarified that the UCL, because it is "written in the disjunctive," prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts of practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *accord Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). To plead a UCL claim, a plaintiff's allegations must show that a defendant's conduct violates one of these three "prongs." *Id.* In addition, because a UCL claim may only be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition," Cal. Bus. & Prof. Code § 17204, a plaintiff must "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). This requirement is sometimes referred to as "UCL standing." *Id.* at 320-21.

In their motion to dismiss, Defendants contend that Plaintiffs have failed to allege economic injury, which would preclude any UCL claim. Mot. at 20-21. Defendants also challenge

the sufficiency of Plaintiffs' allegations as to both of the UCL prongs alleged ("unlawful" and "unfair"). Mot. at 23-24.

### i. Economic injury

The Court begins by addressing Defendants' contention that Plaintiffs have not alleged economic injury, as necessary to bring a UCL claim. Mot. at 20. Under California law, a UCL plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). "There are innumerable ways in which economic injury" may be shown; for instance:

> A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Id.* at 323.

In the instant case, Plaintiffs advance two theories of economic injury. First, Plaintiffs allege overpayment for their Google Assistant Enabled Devices, i.e. "that had they known their private communications would be intercepted, recorded, disclosed, and misused, they would not have made their purchase, or would have paid less for them. Opp. at 18 (citing 3AC ¶¶ 11, 126, 254, 261). Certainly, overpayment is an economic injury under the UCL. *See, e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018). The question becomes whether Plaintiffs have pleaded sufficient facts to establish overpayment here.

This Court previously held that the complaint sufficiently alleged that "Plaintiffs Kumandan and Spurr 'purchased their Google Manufactured Device either directly from Google or from actual or apparent agents of Google.'" Order on Motion to Dismiss at 45 (quoting Consol. FAC ¶ 215). Neither the 3AC, nor Defendants' motion, changes that conclusion. *See U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); *see also* Reply at 14 ("Plaintiffs B.S., Galvan, E.G., Brekhus, and Hernandez have not alleged economic loss"). The Court thus turns to consider the

28

1    allegations of Galvan, E.G., B.S., Brekhus, and Hernandez.

2         Defendants maintain that the 3AC contains insufficient details regarding Plaintiffs'

3    purchase of their GAEDs. Mot. at 20. According to Defendants, the 3AC does not allege that

4    Plaintiffs purchased and overpaid for their devices. *Id.* They continue: "Plaintiffs contend

5    generally that they 'would not have purchased a [GAED], or would have paid less' had they

6    known about Google's alleged conduct ([3]AC ¶ 261), but absent any further detail explaining

7    how Plaintiffs suffered an economic loss from a service they paid nothing for, this is nothing more

8    than a legal conclusion." *Id.*

9         That is true of Named Plaintiff B.S., who allegedly interacted with a GAED that she did

10   not own. 3AC ¶ 20 ("Plaintiff Spurr owned at least three Google Home devices"). It is also true of

11   Named Plaintiffs Galvan and E.G., who allegedly interacted with devices not manufactured by

12   Defendants, a Samsung smartphone and the Samsung Galaxy Tab, *id.* ¶ 29, and Named Plainitff

13   Brekhus, who interacted from a device he received for free pursuant to his paid Spotify

14   subscription, *id.* ¶ 46. Because these Named Plaintiffs have failed to allege that they paid any

15   money for a Google Assistant Enabled Device, they cannot have been injured by overpayment.

16   *See* Order on Motion to Dismiss at 45. Named Plaintiff Hernandez, however, alleges that he

17   purchased a Google Home Mini device from Best Buy in December 2018. 3AC ¶ 62. He also

18   alleges that he "would not have purchased the Google Home device, nor would he have set it up or

19   used it, had he known that any of Google's representations [about activation phrases and manual

20   activation] were false." *Id.* ¶ 66. The Court therefore finds that Plaintiff Hernandez has plausibly

21   alleged that he would not have purchased his GAED, or would have paid less for it, if he had been

22   aware of Defendants' practices with regard to false accepts.

23        Plaintiffs' second theory of economic injury is that they have a "property interest" in the

24   recordings that were unlawfully obtained by Google and that they are therefore entitled to

25   restitution. 3AC ¶¶ 261-62; *see* Opp. at 19 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29

26   Cal. 4th 1134, 1144 (2003)). According to Plaintiffs, "Google profited from the use of Plaintiffs'

27   unauthorized recordings by using them to improve the functionality of Google Assistant and for

28   targeted advertising." Opp. at 23. The California Supreme Court has "defined an order for

'restitution' as one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken.'" *Korea Supply Co.*, 29 Cal. 4th at 1144. In other words, restitution under the UCL must "restore the status quo" by "returning to the plaintiff" funds taken from him or "benefits in which the plaintiff has an ownership interest." *Id.* at 1148-49; *see also Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018) ("[I]t is well-established that nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment, is unavailable in a ... class action under the FAL, CLRA, and UCL." (internal quotation marks omitted)). Defendants object, and contend that Plaintiffs fail to allege that their voice recordings have any value or, in the alternative, that Plaintiffs fail to connect such value to "'a realistic economic harm or loss that is attributable to [Google's] alleged conduct.'" Mot. at 20-21 (quoting *In re Facebook Internet Tracking Litig.*, 140 F.Supp.3d 922, 931 (N.D. Cal. 2015).

The Court finds that Plaintiffs' theory of economic loss here is "purely hypothetical." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019); *see also id.* at 784 ("The plaintiffs do not plausibly allege that they intended to sell their non-disclosed personal information to someone else."). While Plaintiffs contend that the value of their "voice recordings can be inferred by the fact that Google uses them to improve the functionality of Google Assistant and to target advertising," Opp. at 19, there are no facts to suggest that Plaintiffs intended to monetize their individual voice recordings, nor is there any facts that suggest there is a market in which Plaintiffs could sell such recordings. That Defendants were able to monetize and profit from the unauthorized recordings does not give rise to an inference that Plaintiffs "lost money or property," Cal. Bus. & Prof. Code § 17204. As another court in this district has explained, claiming that a defendant "may have gained money through its sharing or use of the plaintiffs' information" is "different from saying the plaintiffs lost money." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 804. And while Plaintiffs cite to *In re Facebook, Inc. Internet Tracking Litigation* in a Hail Mary attempt to save this theory, there, the Ninth Circuit discussed the value of Facebook user's browsing histories in the context of the Computer Data and Access Fraud Act ("CDAFA"), disgorgement, and Article III standing. 956

30

F.3d 589, 600-601 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021) ("California law requires disgorgement of unjustly earned profits[1] regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources . . . This unauthorized use of their information for profit would entitle Plaintiffs to profits unjustly earned. Thus, Plaintiffs sufficiently alleged a state law interest whose violation constitutes an injury sufficient to establish standing to bring their claims for CDAFA violations and California common law trespass to chattels, fraud, and statutory larceny."). Indeed, the "requirement that injury be economic renders standing under section 17204 substantially narrower than federal standing under [Article III], which may be predicated on a broader range of injuries. *Kwikset* Corp., 51 Cal. 4th at 324.

In sum, the Court GRANTS Defendants' motion to dismiss Galvan, E.G., B.S., and Brekhus's UCL claims for failure to adequately plead economic injury. Plaintiffs Kumandan, Spurr, and Hernandez have adequately pled economic injury. Because their UCL claims shall go forward, the Court proceeds to consider of the adequacy of Plaintiffs Kumandan, Spurr, and Hernandez's pleadings under the unlawful and unfair prongs of the UCL.

---

[1] This Court has already stressed the difference between disgorgement—which the Ninth Circuit considered in *In re Facebook, Inc. Internet Tracking Litigation*—and restitution—which Plaintiffs seek here:

> "'Disgorgement' is a broader remedy than restitution" in that disgorgement "has been used to refer to surrender of all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice." [*Korea Supply Co*., 29 Cal. 4th] at 1145 (emphasis in original). By contrast, restitution under the UCL must "restore the status quo" by "returning to the plaintiff" funds taken from him or "benefits in which the plaintiff has an ownership interest." *Id*. at 1148-49. Put another way, restitutionary disgorgement "focuses on the plaintiff's loss, and nonrestitutionary disgorgement "focuses on the defendant's unjust enrichment." *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014). Although the defendant's benefit and the plaintiff's loss are often the same, nonrestitutionary disgorgement may also be had "where a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss." *Id*. (internal quotations and alterations omitted).

Order on Motion to Dismiss at 46.

United States District Court
Northern District of California

### i. Unlawful Prong

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180. In other words, to be "unlawful" under the UCL, Defendants' conduct must violate another "borrowed" law. *HSBC Bank Nevada*, 691 F.3d at 1168. "Virtually any state, federal or local law can serve as the predicate for an action under section 17200." *Id.* (quoting *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002)) (alterations omitted). Here, Plaintiffs predicate their "unlawful" claim on Defendants' alleged violations of (1) the Wiretap Act, (2) the SCA, (3), CIPA §632, (4) the common law prohibition of intrusion upon seclusion, (5) the California Constitution's right of privacy, (6) the CLRA, and (7) Cal. Bus. & Prof. Code § 22576,[2] for having breached the Privacy Policy. Opp. at 20; 3AC ¶ 258.

Because Plaintiffs assert each of these alleged violations as independent counts, the Court has already considered the adequacy of Plaintiffs' allegations as to those counts. The Court's findings in that regard are equally determinative of the validity of Plaintiffs' UCL claim. See Mot. at 24 ("To the extent this claim is premised on other claims that are subject to dismissal, Plaintiffs' 'unlawful' UCL claim fails as well."). The Court has not dismissed any of these claims in full but has narrowed them where appropriate; accordingly, the Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiffs' UCL unlawful claim to the extent it is predicated on aspects of predicate claims the Court has dismissed.

### ii. Unfair Prong

---

[2] This provision states:

> An operator of a commercial Web site or online service that collects personally identifiable information through the Web site or online service from individual consumers who use or visit the commercial Web site or online service and who reside in California shall be in violation of this section if the operator fails to comply with the provisions of Section 22575 or with the provisions of its posted privacy policy in either of the following ways:
>
> (a) Knowingly and willfully.
>
> (b) Negligently and materially.

Cal. Bus. & Prof. Code § 22576. Plaintiffs allege that Defendants violate this provision by virtue of its breach of contract, as alleged in Count 6. *See* 3AC ¶¶ 241, 258.

Plaintiffs allege that Defendants have "engaged in business acts or practices deemed 'unfair' under the UCL." 3AC ¶ 259. "The UCL does not define the term 'unfair.' In fact, the proper definition of 'unfair' conduct against consumers is currently in flux among California courts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (internal quotations omitted). For some years, the California Courts of Appeal formulated different tests, such as whether the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Cel-Tech*, 20 Cal. 4th at 184 (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999)) ("*South Bay* test"), or whether "the gravity of the harm to the alleged victim" outweighs "the utility of the defendant's conduct," *id.* (quoting *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996)) ("*State Farm Fire* test"). Then, in *Cel-Tech*, the California Supreme Court appeared to confine "unfair" to "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." 20 Cal. 4th at 187. "It further required that 'any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *HSBC Bank Nevada*, 691 F.3d at 1170 (quoting *Cel–Tech*, 20 Cal. 4th at 185). The *Cel-Tech* Court explained that the prior definitions were "too amorphous" and "provide[d] too little guidance to courts and businesses." *HSBC Bank Nevada*, 691 F.3d at 1169 (quoting *Cel–Tech*, 20 Cal. 4th at 185).

However, the *Cel-Tech* court expressly limited its decision, stating, "Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as 'fraudulent' or 'unlawful' business practices or 'unfair, deceptive, untrue or misleading advertising.'" *Cel–Tech*, 20 Cal. 4th at 187 n.12. Consequently, California courts remain divided on whether the *Cel-Tech* definition applies to "consumer actions" or whether the *State Farm Fire* and *South Bay* tests remain valid. *See HSBC Bank Nevada*, 691 F.3d at 1170. The Ninth Circuit has noted this continued controversy but awaits the California Supreme Court's resolution of it. *See id.*; *Hodsdon*, 891 F.3d at 866. In this case, the parties follow the Ninth

33

United States District Court
Northern District of California

1   Circuit's lead and argue under *Cel-Tech* and the prior balancing tests from *State Farm Fire* and

2   *South Bay*. *See* 3AC ¶ 259; Mot. at 23-24; Opp. at 20-21.

3          First, as to Plaintiffs' claim that Defendants' conduct is unfair under the *Cel-Tech* test, the

4   Court finds that Plaintiffs have alleged harm to competition or violation of the "letter, policy, or

5   spirit of the antitrust laws." *HSBC Bank Nevada*, 691 F.3d at 1170. *See* Mot. at 24. In particular,

6   Plaintiffs argue that "Google's actions . . . have violated California's strong public policy of

7   protecting privacy. Google's conduct of intercepting, recording, disclosing, and otherwise

8   misusing Plaintiffs' and Class members' private conversations violated the Wiretap Act, SCA,

9   CIPA §632, California common law, the California constitution, and breached its contract with

10  Plaintiffs." Opp. at 21 (citing 3AC ¶ 260). Plaintiffs also cite to the United States House of

11  Representatives Subcommittee on Antitrust, Commercial and Administrative Law report entitled

12  "Investigation of Competition in Digital Markets." 3AC ¶ 123. According to Plaintiffs, this report

13  finds that "as competition has been reduced online, consumers have been subject to privacy abuses

14  by Google, including through the use of the voice assistant, Google Assistant" and that "there is a

15  significant potential for misuse of data collected by voice assistants to harm competition or

16  consumers." *Id*. At this current juncture, the Court finds these allegations sufficient under *Cel-*

17  *Tech*.

18         Second, as to the pre-*Cel-Tech* definitions of "unfair," some courts have treated the *State*

19  *Farm Fire* and *South Bay* tests as distinct tests; others, including the Ninth Circuit, have referred

20  to them together as the "balancing test," *see HSBC Bank Nevada*, 691 F.3d at 1169; *accord*

21  *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1146 (N.D. Cal. 2013). In any event, the parties

22  agree that both tests require the Court to "weigh the utility of the defendant's conduct against the

23  gravity of the harm to the alleged victim." *HSBC Bank Nevada*, 691 F.3d at 1169; *see* Mot. at 23;

24  Opp. at 20. Plaintiffs contend that "Google's conduct of secretly intercepting, recording,

25  disclosing, and misusing their communications harmed them by invading their privacy and there is

26  no corresponding benefit to consumers. Opp. at 21 (citing 3AC ¶ 260). According to Defendants,

27  Plaintiffs have failed to pass the balancing test because they "admit that the Assistant provides a

28  substantial benefit to consumers" and "concede that they took advantage of these benefits and

34

1     wish to continue doing so." Mot. at 24 (citing 3AC ¶¶ 4, 20, 29, 39, 51, 65, 67, 79, 80, 82, 127).

2          At the motion to dismiss stage, the Court cannot say that the benefits from Google

3     Assistant's unauthorized recordings necessarily outweighs the harms from such recordings. *See*

4     *McCoy v. Alphabet, Inc*., No. 20-CV-05427-SVK, 2021 WL 405816, at *10 (N.D. Cal. Feb. 2,

5     2021) ("At the motion to dismiss stage, the Court cannot say that the benefits from collecting that

6     information to develop new products, features, and technologies for the benefit of the users and

7     the public necessarily outweighs the harm."); *In re iPhone Application Litig*., 844 F. Supp. 2d

8     1040, 1073 (N.D. Cal. 2012) ("While the benefits of Apple's conduct may ultimately outweigh the

9     harm to consumers, this is a factual determination that cannot be made at this stage of the

10     proceedings."); *see also* Order on Motion to Dismiss at 51 ("Just how 'occasional' the error is,

11     however, is a question of fact that remains unanswered at this stage. Moreover, the harm that is

12     asserted here is the invasion of privacy, which is difficult to quantify. The Court cannot say, as a

13     matter of law, that the utility of the Google Assistant necessarily outweighs the harm from false

14     accepts.").

15          Defendants' motion to dismiss on the unfair prong of the UCL is DENIED.

16     **G.     Count 10: Declaratory Judgment**

17          Finally, Defendants move to dismiss Count 10, Plaintiffs' request for declaratory judgment

18     under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*[3] Declaratory relief is appropriate

19     when (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in

20

21

22     [3] In the instant motion, Defendants insist that they previously moved to dismiss this claim. Mot. at

23     24. A review of Google's prior briefing reveals that Google did, indeed, move to dismiss
    Plaintiffs' declaratory judgment claim—in a single footnote buried at the end of twenty-five page

24     brief. This Court's Standing Orders are clear that "[f]ootnotes shall not be used to cite to legal
    authorities or evidence." Standing Order for Civil Cases IV.F. The Court assumed that it did not

25     need to caution parties not to raise dispositive arguments in footnotes. *See Estate of Saunders v.*
    *Comm'r*, 745 F.3d 953, 962 fn. 8 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on

26     reply, are generally deemed waived"); *Khoja v. Orexigen Therapeutics, Inc*., 498 F. Supp. 3d
    1296, 1309 fn. 4 (S.D. Cal. 2020); *Cheever v. Huawei Device USA, Inc*., No. 18-CV-06715-JST,

27     2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019); *Sanders v. Sodexo, Inc*., No. 2:15-cv-00371-
    JAD-GWF, 2015 WL 4477697, at *5 (D. Nev. July 20, 2015) ("'Many courts will disregard

28     arguments raised exclusively in footnotes.'" (quoting Bryan Garner, The Redbook: A Manual on
    Legal Style 168 (3d ed. 2013))).

United States District Court
Northern District of California

issue," and (2) "it will terminate and afford relief from the uncertainty… giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (citations omitted). "A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009); *see also Tyson v. Nationstar Mortg. LLC*, No. 15-cv-01548, 2016 WL 39903, at *5 (N.D. Cal. Jan. 4, 2016) (dismissing declaratory relief where "Plaintiffs' declaratory relief claim is duplicative of their TILA rescission claim").

The Court finds that Plaintiffs have not met the requirements for declaratory relief. Pursuant to their declaratory judgment claim, Plaintiffs seek a declaration that "Defendants continue to owe a legal duty to not intercept, record, disclose, and otherwise misuse Plaintiffs' and Class Members' confidential communications under, *inter alia*, the common law, the Wiretap Act, the SCA, CIPA, Cal. Penal Code §632, and Cal. Bus. & Prof. Code §22576." 3AC ¶ 283. They also seek an injunction "enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, and to implement functionality sufficient to prevent unauthorized recordings in the future." *Id*. ¶ 284. The injunctive relief Plaintiffs seek is duplicative of the relief Plaintiffs seek under the UCL. *Compare* 3AC ¶ 262 with *id*. ¶ 284. In other words, if Plaintiffs are successful in their alternate claims for relief, Plaintiffs' claim for declaratory relief would be unnecessary. *See Tyson*, 2016 WL 39903, at *5. Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' cause of action for declaratory relief.

## V.    ORDER

For the foregoing reasons, the Court rules on Defendants' motion to dismiss the 3AC as follows:

- Count 1: GRANTED IN PART and DENIED IN PART WITHOUT LEAVE TO AMEND
- Count 2: GRANTED IN PART and DENIED IN PART WITHOUT LEAVE TO AMEND
- Count 3: DENIED

- Count 4: DENIED

- Count 5: DENIED

- Count 6: GRANTED IN PART and DENIED IN PART WITHOUT LEAVE TO AMEND

- Count 7: GRANTED IN PART and DENIED IN PART WITHOUT LEAVE TO AMEND

- Count 8: GRANTED WITH LEAVE TO AMEND

- Count 9: GRANTED WITH LEAVE TO AMEND

- Count 10: GRANTED WITHOUT LEAVE TO AMEND

Any amended complaint is **due by August 2, 2021**. Plaintiffs are directed to file a redlined complaint as an attachment to any amended complaint. Leave to amend is restricted to Counts 8 and 9; Plaintiff may not add new parties or claims without obtaining prior express leave of the Court. Any future motion to dismiss SHALL be limited to Counts 8 and 9. Briefing on the motion shall be limited to 5 pages for the opening and opposition briefs and 3 pages for the reply brief.

**IT IS SO ORDERED.**

Dated: July 1, 2021

_____
BETH LABSON FREEMAN
United States District Judge