| | |
|---|---|
| BOIES SCHILLER FLEXNER LLP<br>Mark C. Mao (CA Bar No. 236165)<br>mmao@bsfllp.com<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293 6858<br>Facsimile: (415) 999 9695<br><br>SUSMAN GODFREY L.L.P.<br>William Christopher Carmody (pro hac vice)<br>bcarmody@susmangodfrey.com<br>Shawn J. Rabin (pro hac vice)<br>srabin@susmangodfrey.com<br>1301 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (212) 336-8330<br><br>MORGAN & MORGAN<br>John A. Yanchunis (pro hac vice)<br>jyanchunis@forthepeople.com<br>Ryan J. McGee (pro hac vice)<br>rmcgee@forthepeople.com<br>201 N. Franklin Street, 7th Floor<br>Tampa, FL 33602<br>Telephone: (813) 223-5505<br><br>*Attorneys for Plaintiffs; additional counsel listed in signature blocks below* | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Andrew H. Schapiro (*pro hac vice*)<br>andrewschapiro@quinnemanuel.com<br>191 N. Wacker Drive, Suite 2700<br>Chicago, IL 60606<br>Telephone: (312) 705-7400<br>Facsimile: (312) 705-7401<br><br>Stephen A. Broome (CA Bar No. 314605)<br>stephenbroome@quinnemanuel.com<br>Viola Trebicka (CA Bar No. 269526)<br>violatrebicka@quinnemanuel.com<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br><br>Diane M. Doolittle (CA Bar No. 142046)<br>dianedoolittle@quinnemanuel.com<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065<br>Telephone: (650) 801-5000<br>Facsimile: (650) 801-5100<br><br>*Attorneys for Defendant; additional counsel listed in signature blocks below* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 5:20-cv-03664-LHK-SVK<br><br>JOINT LETTER BRIEF PURSUANT TO DKT. 191-1 RE: DISPUTE P16 (X-CLIENT-DATA HEADER)<br><br>Referral: Hon. Susan van Keulen, USMJ |

July 9, 2021

Submitted via ECF
Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

    Re:    Joint Letter Brief Pursuant to Dkt. 191 & 191-1 re: Dispute P16 (X-Client-Data Header); *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

    Pursuant to Your Honor's June 8, 2021 Discovery Order (Dkt. 191 & 191-1), Plaintiffs and Google LLC ("Google") provide this joint letter brief regarding Dispute P16 and the X-Client-Data header, focusing on the following from the Court's order: "What is Plaintiffs' factual basis to dispute Google's position that there are multiple reasons why the X-Client Data field may be empty and therefore the empty field does not necessarily identify class members?  Google is to respond to Plaintiffs' position."

## PLAINTIFFS' STATEMENT

To identify class members and the private browsing information Google collected from those class members, in October 2020, Plaintiffs served RFP 120 seeking "[d]ocuments sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client Data header." Dispute P16 focuses on RFP 120, with Google refusing to produce these documents.

Critically, Google does not dispute that the X-Client-Data header is not transmitted to Google during Incognito browsing communications. In a sworn declaration, the Google employee "responsible for the X-Client-Data header" stated that the "X-Client-Data header is not sent in Chrome's Incognito Mode." Dkt. 112-5. In response to Plaintiffs' Interrogatory No. 2, Google also stated that the "X-Client-Data header was introduced in 2012" and "has not been transmitted to Google while users are in Incognito mode, with one limited exception" (from February 28, 2020 to March 12, 2020, it was transmitted to Google for certain Chrome versions).

Google's main argument (below, focusing on the limited and incomplete data Google produced in connection with Dispute P3) highlights the inverse, that it may have data entries where the user is in Incognito and the X-Client Data header is actually present. This is irrelevant for purposes of RFP 120, which only seeks production where the header is *absent*. While this may make calculations based on the absence of the X-Client-Data header conservative, it provides no basis for Google to withhold documents responsive to RFP 120. The relevant and undisputed fact is that the X-Client-Data header is not transmitted in Incognito mode.

With this submission, and for the reasons below, Plaintiffs ask that the Court order Google to produce documents (including unauthenticated data) responsive to RFP 120 so that Plaintiffs may then identify class members and determine what data Google collected (and continues to collect) from their private browsing activities, using the empty X-Client-Data header field as the starting point.

Plaintiffs' request is reasonable for many reasons, and there is no basis for Google to continue withholding relevant data responsive to RFP 120.

*First*, there can be no dispute that the requested data is relevant to identifying class members. Google's claim that the "X-Client Data header is not a tool to identify putative class members" misses the point. Regardless of its design, the X-Client-Data header provides an undisputed signal that a user is in Incognito mode. Google's own document ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ GOOG-BRWN-00204684. That is because, with the exception of one instance spanning a few days in 2020 where the X-Client-Data header was transmitted in Incognito mode (identified above), this X-Client-Data header is ▓▓▓▓▓▓▓▓▓▓▓ GOOG-BRWN-00051406. Unless Google's interrogatory response (that the X-Client-Data header "has not been transmitted to Google while users are in Incognito mode, with one limited exception") is false, Google cannot dispute this. This alone establishes relevance and a basis for production in response to RFP 120.

*Second*, Plaintiffs' request for this discovery is also consistent with numerous statements by Google's employees, explaining how Google itself uses the X-Client-Data header (or the X-Chrome Variations header) to identify Incognito browsing. Google employees recognize that they can identify Incognito activity by looking at records ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ GOOG-BRWN-00035610. In one internal communication regarding Google's ability to detect Incognito mode, a Google employee wrote: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ GOOG-BRWN-00175187. In another internal email, a Google employee confirmed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ GOOG-BRWN-00176433. Google's prior

1 | representation to the Court that the "absence of the [X-Client-Data header] header *cannot* be used to ascertain purported class members" (Dkt. 139 (emphasis in original)) is incorrect given these
2 | many Google documents recognizing the opposite.

3 |     ***Third***, Google has identified only theoretical or identifiable instances when the absence of the X-Client Data header would not involve Incognito browsing.  The only instances identified by
4 | Google are (i) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Berntson Tr. 375:5–375:7); (ii) ▮▮
5 | ▮▮▮▮▮▮▮▮▮▮▮▮ (Berntson Tr. 375:8–375:12); (iii) ▮▮▮▮▮▮▮▮▮▮
6 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Berntson Tr. 375:13–375:19); and (iv) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Berntson Tr. 375:20–376:11).  Google has not demonstrated that these "exceptions" would make up any appreciable amount of the total browsing communications without the X-Client Data header that
7 | Google cannot readily identify, or that class members would actually design their networks to specifically remove the X-Client Data header.

8 |
9 |     ***Fourth***, Google maintains systems and processes to identify Incognito browsing, including ready-made tools that run queries based on the X-Client-Data header field.  For example, ▮▮▮▮▮▮
10 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-BRWN-00027227.  Google's document titled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 | ▮▮▮▮▮▮▮▮▮▮▮▮▮.  GOOG-BRWN-00204684.  This is in turn linked to Google's ▮▮▮▮▮▮▮
12 | ▮▮▮▮▮▮▮▮▮▮▮  GOOG-BRWN-00027227.  Google has an ▮▮▮▮▮▮▮▮▮▮▮▮ to track Incognito browsing and also one or more dashboards on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-BROWN-00067720; GOOG-
13 | BRWN-00183909.  Other Google-produced documents indicate that Google collects and reports ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  GOOG-BRWN-00169278.  Google has been focused on tracking Incognito usage ever since Google launched Incognito in 2008.  GOOG-BRWN-00226130; *see also*
14 | GOOG-BRWN-00185091 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Google claims that these tools only measure Incognito browsing "in the
15 | aggregate."  Regardless of whether that is correct, that is still done using the empty X-Client-Data header field.

16 |
17 |     ***Fifth***, if Google produces the data requested by RFP 120, the parties can then further evaluate that data to identify exceptions.  With RFP 120, Plaintiffs' experts can evaluate those records.  On June 11, in connection with this joint submission, Plaintiffs asked Google to "identify
18 | all logs or data sources that include the X-Client Data field" and to "[p]lease provide one or two examples of each such log or data source that include the X-Client-Data field, so that we can then
19 | evaluate the different fields and further assess the ability to use the X-Client Data field to identify class members."  Although the parties are continuing to meet and confer, *Google has so far refused*
20 | *to identify all such logs and data sources and to provide any such examples, or to even identify the data parameters sources with the X-Client-Data field would cover.*  In any case, distinguishing
21 | Incognito records from non-Incognito records that also lack the X-Client-Data header should not be difficult, as this is something Google employees already do on a regular basis.  For example, the
22 | data requested by RFP 120 should include for example ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, where internal Google documents represent that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 | ▮."  GOOG-BRWN-00168636 (emphasis added).  Google has repeatedly—and falsely— represented throughout this litigation that Google does not maintain any "system or process for
24 | identifying logged-out users while in private browsing mode" (Dkt. 140 at 6), that Google "does not maintain data in the ordinary course of business that identifies logged-out users in private browsing
25 | mode" (Jan. 21, 2021 Google letter), that "Google does not maintain information to identify whether a user was private browsing" (Feb. 5, 2021 Google letter), and that Google does "not distinguish
26 | between users who are in a private browsing mode and users who are not in a private browsing mode" (Jan. 13, 2021 Google letter).  These recently-produced Google documents prove false
27 | Google's representations to the Court and Plaintiffs.

28 |

*Sixth*, this discovery focused on identifying class members is permissible.  "Indeed, to deny discovery where it is necessary to determine the existence of a class or set of subclasses would be an abuse of discretion."  *In re Intuit Data Litig.*, No. 15CV01778EJDSVK, 2017 WL 3616592, at *2 (N.D. Cal. Aug. 23, 2017) (van Keulen, J.).  Even if the requested data includes some non-Incognito browsing records, that provides no basis to withhold this discovery from Plaintiffs.  *See, e.g.*, *Hall v. Marriott Int'l., Inc.*, No. 3:19-CV-1715-JLS, 2021 WL 1906464, *13–14, 30 (S.D. Cal. May 12, 2021) (allowing discovery outside of the class definition because it would assist plaintiff's evaluation of claims); *see also Digital Envoy, Inc. v. Google, Inc.*, No. 5:04-CV-1497 RS, 2005 WL 8162581, at *2 (N.D. Cal. July 15, 2005) (allowing for discovery broader than plaintiff's allegations).  Courts have "broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (internal quotations omitted).  This Court has the authority to order this discovery because it is likely to substantiate class allegations.  *Montolete v. Bolger*, 767 F.2d 1416, 1424–25 (9th Cir. 1985).

*Seventh*, Google's claim that it is somehow barred from producing this data is baseless.  Plaintiffs seek production of private browsing data that Google had no authorization to collect in the first place; the users were not logged into Google.  The SCA provides no basis to withhold any of this data.  Google's SCA's argument focuses solely on "authenticated" data, with no basis to oppose production of this "unauthenticated" data.  Further, Google's Privacy Policy stated during the Class Period that Google "will share personal information [to m]eet any applicable law, regulation, <u>legal process</u>, or enforceable governmental request." (emphasis added).  This is a legal process, with a protective order.  The Court can and should order Google to produce this unauthenticated data.  Google should not be permitted to use its Privacy Policy as a shield and sword, claiming that its Privacy Policy somehow constitutes consent to collect unauthenticated data (it does not) but then disclaiming Google's consent to produce this data as part of this legal process.  The two cases Google cites help Plaintiffs, not Google.  *See Suzlon Energy Ltd. v. Microsoft Corp*, 671 F.3d 726, 731 (9th Cir. 2011) (finding no consent where "Hotmail service agreement … stated that his emails would be disclosed only according to U.S. law and under other circumstances not relevant here" and "Microsoft never told Sridhar that his communications might be monitored or disclosed"); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073–74 (9th Cir. 2004) (finding lack of consent to disclose personal information where information was sought through an "invalid" and "false subpoena" that "was a piece of paper masquerading as legal process").

*Eighth*, Google's burden argument is meritless.  Google claims that it would be "burdensome" to collect and produce these records, but Google presents no support for that claim.  Google is the largest search company in the world.  It very clearly has the ability to search for and produce these records if ordered to do so by the Court.  This is permissible discovery.  *E.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports from dynamic databases").

*Ninth*, Google has no other basis to withhold this discovery.  Google contends that there are Incognito browsing records *with* an X-Client-Data header (false positives), but that just means that any calculation based on the absence of the X-Client-Data header will be conservative.  RFP 120 only seeks production of records where the X-Client-Data header is empty.  Google also claims that some of the exceptions may involve a significant number of records, but Plaintiffs need data responsive to RFP 120 to assess that claim and quantify those exceptions.  Google's say-so is not a basis to withhold this discovery.  Google also argues that Plaintiffs rely on a few "outdated" documents "that do not accurately reflect Google's current systems or practices," yet provides no explanation on how the Google systems and practices described in those documents have been replaced or changed.  Contrary to Google's assertions, the more "recent" documents Plaintiffs confirm the relevance of this discovery.

Plaintiffs therefore respectfully request that the Court order Google to produce data responsive to RFP 120 within ten (10) days of any ruling on this submission.  There is no basis for

| | |
|---|---|
| 1 | Google to continue to withhold this highly relevant data, just like there was no basis for Google to withhold Plaintiffs' data. Google's scattershot efforts to obstruct discovery based on inaccurate representations to Plaintiffs and the Court, feigned privacy concerns, incomplete productions of Plaintiffs' data, and unfounded claims of burden should not be credited.[1] |

---

[1] Dispute P16 and this submission focuses only on documents responsive to RFP 120, regarding the X-Client-Data header. Plaintiffs continue to investigate other ways of identifying class members who used Incognito mode, such as the absence of any ▮▮▮▮▮. *See, e.g.*, GOOG-BRWN-00168636 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-BRWN-00140433 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see also* GOOG-BRWN-00167899 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs are also investigating ways to identify class members who used private browsing modes other than Incognito. For example, with respect to the InPrivate browsing mode for Internet Explorer, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-BRWN-00229314.
Case No. 5:20-cv-03664-LHK-SVK
JOINT LETTER BRIEF PURSUANT TO DKT. 191-1 RE: DISPUTE P16

## GOOGLE'S STATEMENT

Plaintiffs' expansive request for "full records from web browsing communications that do not include any X-Client Data header" (at 4) sweeps in millions of records per day and vast amounts of irrelevant data, including authenticated browsing data of users who are signed in to their accounts and not in incognito mode. As this Court explained on June 2, 2021 "we're really focused on the identifiers for unauthenticated data, and that's really what this is about." Hr. Tr. 29:19–21. Plaintiffs' extraordinary request should be denied.

*First*, the Court asked Plaintiff to provide a factual basis for disputing Google's position that the X-Client-Data header is not a tool to identify putative class members (users browsing in Incognito mode while not logged into a Google Account). Plaintiffs have failed to do so. In fact, there are many reasons why Chrome browsing records that lack an X-Client-Data header do not correspond to activity by putative class members. The data Google has already produced provides a perfect illustration: Google produced authenticated data (related to Plaintiffs' Google Accounts) which contains many instances of an empty X-Client Data header. Inversely, Google produced unauthenticated data linked to cookies (provided by Plaintiffs and purportedly set in Incognito mode) which included X-Client-Data headers. That is because there are cases in which the X-Client-Data header is absent for reasons other than incognito browsing (false positives) and cases in which the X-Client-Data header is present even in incognito browsing (false negatives). This confirms that the absence of the X-Client-Data header is not a reliable proxy for private browsing. Even if it were, it could only approximately measure likely Incognito browsing sessions in the aggregate—it would not identify users or putative class members.

*Second*, Plaintiffs' request would offend the privacy interests of *millions* of unsuspecting Google users—including non-putative class members. Google is under a legal obligation to guard this data, and it goes to great lengths to do so, employing strict protocols, policies, and procedures. Access to the data is limited to a need-to-know basis and monitored through audit logs. Google built the policies, teams, and expertise to handle this sensitive data with integrity and to safeguard it from unauthorized access or exfiltration. Requiring Google to hand over data related to *millions* of users to counsel representing just *five* users is unreasonable and disproportionately burdensome— particularly because the absence of the X-Client-Data header is not a reliable means to identify class members.

To the extent this Court is inclined to grant Plaintiffs' motion to compel, Google respectfully requests the opportunity to present oral argument and/or supplemental briefing.

### 1. The X-Client-Data Header Is Not A Reliable Proxy For Incognito Browsing

Neither Plaintiffs' briefing nor their cited documents provide any "factual basis to dispute Google's position that there are multiple reasons why the X-Client Data field may be empty and therefore the empty field does not necessarily identify class members." (Dkt. 191-1 at 5.) The following facts in the record remain unrebutted and undermine Plaintiffs' request to obtain *all* browsing data with an empty X-Client Data header:

*Not all Incognito browsing records have an empty X-Client Data field.* When a Chrome user visits a website that has installed specific Google services, the browser will send the X-Client-Data header to particular Google domains associated with those services. As Google has confirmed in written discovery and affidavits, the X-Client-Data Header is not transmitted in Incognito mode or to Google Analytics services. But the unauthenticated data Google produced, keyed to cookies purportedly set during Plaintiffs' Incognito sessions, showed that the X-Client-Data field is not empty for all Chrome Incognito browsing sessions. *See* GOOG-BRWN-00078394. Dr. Glenn Berntson's testimony explained that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Berntson Tr. 389:11–18. For

1  example, although Chrome may ███████████████████████████████████
███████████████████████████ (*id.* 387:10–17) ███████████████████████
███████████████████████████████████████████████████████████████ *id.* 297:15–298:18. This is not a trivial exception. The number of cases where an Incognito browsing session has values in the X-Client-Data field ████████████████████████ *Id.* 398:3–5.

***"Empty X-Client-Data Field" does not equal "Incognito Browsing."*** Dr. Berntson testified about four false negative scenarios in which the X-Client Data Header is empty even when the browser is not in incognito: (i) ████████████████████████████," *id.* 375:5–6; (ii) ███████████████████████████████████████ *id.* 375:8–9; (iii) ████████████████████████████████████████████████████████████, *id.* 386:13–24; and (iv) if a ███████████████████████████████████████████████████████████████████████████████████," *id.* 375:21–24. Plaintiffs do not dispute this, but rather attempt to downplay these as rare or theoretical exceptions. That is wrong. The first two exceptions alone would mean ████████ of false positives because (i) there are ████████████████ of installations of the Chrome browser *every day*; *see, e.g.,* GOOG-BRWN-00046910, at -922 (noting estimated ████████ "installs/day" of the Chrome browser for iOS alone as of July 21, 2015); and (ii) ████████ of users who are not active 30 days after installation; *see, e.g.,* GOOG-BRWN-00218343, at -366 (noting that, out of approximately ████████ installs, only ████ of Chrome for iOS users were still active 30 days after installation as of April 2016). The volume of the other two reasons for false positives cannot be accurately quantified: (iii) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Bernston Tr. 375:16–19, but Google has no way of excluding these cases because they are due to an action taken by the browser and are not observable from the server, *id.* 384:23–24; and (iv) ████████████████████████
███████████████████████████████████████████████████████████████████████████. As a further illustration, the authenticated data Google produced, keyed to Plaintiffs' Google Accounts (and presumptively not in Incognito mode), included entries without any X-Client-Data header values. See GOOG-BRWN-00048193.

***Plaintiffs' Cited Documents Confirm Google's Position***. They confirm that (1) absence of the X-Client-Data header is not an accurate proxy to determine Incognito mode; and (2) Google may use the X-Client-Data header to infer a rough measure for incognito use in the aggregate but *not* on an individual browser or user basis. For that reason, Plaintiffs' attempt to show an inconsistency between Google's representations and these documents falls flat. That Google may use the absence of the X-Client Data header as a tool to approximate total traffic does not contradict the representation that Google does not have a "system or process for identifying logged-out users while in private browsing mode" (Dkt. 140 at 6) (emphasis added).

*First,* Plaintiffs rely on outdated documents predating the class period that do not accurately reflect Google's current systems or practices.[2] *Second,* the more recent documents Plaintiffs cite undermine their contentions. For instance, GOOG-BRWN-00204684 states that the ████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████ *Id.* at -685, -684. Similarly, GOOG-BRWN-00051406 (duplicated at GOOG-BRWN-00035610) confirms that the absence of the X-Client-Data header is not a reliable means for identifying Incognito mode because the X-Client-Data header is not sent from various user agents. *Id.* at -416–18. GOOG-BRWN-00176433 relates to "search" (not the data at issue) and states that ████████████████████████████████████████████████████████████████████

---

[2] Plaintiffs rely on documents that pre-date the June 1, 2016 class period, such as GOOG-BRWN-00035610 (2014); GOOG-BRWN-00046910 (2015); GOOG-BRWN-00051406 (2014); GOOG-BRWN-00226130 (2008); and GOOG-BRWN-002293144 (2008).

███████████████████████████ *Id.* at -433.

*Third*, Plaintiffs misleadingly equate non-identifying statistical dashboards with an identification tool for users in private browsing mode. The referenced dashboards are used for measuring approximate aggregate statistics on Incognito usage—*not* identifying individual users. *See* GOOG-BRWN-00067720; GOOG-BRWN-00169278; GOOG-BRWN-00175184 at -187; GOOG-BRWN-00183909; GOOG-BRWN-00226130; GOOG-BRWN-00185091 (usage metrics are recorded for both Incognito and non-Incognito chrome usage together and this metric function cannot "exclude incognito" because it "has no awareness"). None of these documents support Plaintiffs' contention. When asked directly, Dr. Berntson testified that (i) Google does not use the absence of the X-Client-Data header to identify users in Incognito mode; and (ii) the absence of the X-Client-Data header is not a good means to identify users in Incognito mode. Berntson Tr. 374:4–10.

### 2. Plaintiffs' Request Is Overbroad, Unduly Burdensome, and Would Unnecessarily Compromise the Privacy of Millions of Users

Plaintiffs now incorrectly claim they seek only "unauthenticated" data or data related to private browsing. They actually request all browser communication "data entries" with an empty X-Client-Data header field. As discussed above, this expansive data request is overbroad because it implicates billions of entries related to users who are indisputably not putative class members.

The requested records also implicate serious user privacy concerns that weigh heavily against ordering the production. Because users can log into their Google Account in incognito mode, the requested data would include irrelevant authenticated browsing data associated with a particular Google Account. Indeed, the Stored Communications Act ("SCA") prohibits Google from producing authenticated user data without users' consent or a court order. 18 U.S.C. §§ 2701–11; *see also Suzlon Energy Ltd. v. Microsoft Corp*, 671 F.3d 726, 728 (9th Cir. 2011) (it is "illegal for an entity that provides an electronic communication service to the public to produce the contents of its stored communications"—even in response to a subpoena or document request); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071-72 (9th Cir. 2004) (subpoena issued by attorneys to email provider for litigants' email "patently unlawful" because it sought production of email without consent). A court order here is not justified.

It would also be burdensome and not proportional because Google would have to produce records (including confidential business information related to fields collected) that have nothing to do with the claims at issue here. The sheer amount of data implicated by Plaintiffs' request is sufficient to substantiate Google's burden.

Moreover, even *if* Plaintiffs' request could be limited to relevant data of Incognito browsing sessions, the data sought does not identify putative class members—which is Plaintiffs' stated goal in requesting this data. At most, it may identify *instances* of unjoined Incognito browsing sessions, temporarily linked to cookie values that were deleted from the user's browser when the incognito session was closed. Plaintiffs do not address how that information could be translated into identifying class members.

Finally, Plaintiffs' case citations are inapposite.[3] Plaintiffs suggest here they are entitled to nearly unlimited discovery "[e]ven if the requested data includes some non-Incognito browsing

---

[3] None of the authorities Plaintiffs cite or of which Google is aware have blessed the production of such sensitive and highly-regulated data of millions of users—and for good reason. As Plaintiffs' own authorities confirm, courts show restraint and narrowly tie production to the specific allegations

records," which is information wholly irrelevant to their allegations or class definition. This information is not helpful to resolving "'any factual issue necessary for the determination' of whether a class action is maintainable." *Salgado v. O'Lakes*, 2014 WL 7272784, at *4 (E.D. Cal. Dec. 18, 2014) (quotation omitted). Plaintiffs' request should be denied.

---

and class definitions. *See, e.g.*, *In re Intuit Data Litig.*, 2017 WL 3616592, at *2 (N.D. Cal. Aug. 23, 2017) (appropriate to consider whether discovery sought fell within the class definition); *Digital Envoy, Inc. v. Google, Inc.*, 2005 WL 8162581, at *3 (N.D. Cal. July 15, 2005) (ordering discovery within "[a] fair reading" of complaint); *Hall v. Marriott Int'l., Inc.*, 2021 WL 1906464, at 18-19 (S.D. Cal. May 12, 2021) (limiting discovery to putative class and not broader discovery requested).

| | |
|---|---|
| | Respectfully, |

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | BOIES SCHILLER FLEXNER LLP |
| */s/ Andrew H. Schapiro* | */s/ Beko Reblitz-Richardson* |
| Andrew H. Schapiro (admitted *pro hac vice*) | Mark C. Mao (CA Bar No. 236165) |
| andrewschapiro@quinnemanuel.com | mmao@bsfllp.com |
| 191 N. Wacker Drive, Suite 2700 | Sean Phillips Rodriguez (CA Bar No. 262437) |
| Chicago, IL 60606 | srodriguez@bsfllp.com |
| Tel: (312) 705-7400 | Beko Reblitz-Richardson (CA Bar No. 238027) |
| Fax: (312) 705-7401 | brichardson@bsfllp.com |
| | 44 Montgomery Street, 41st Floor |
| Stephen A. Broome (CA Bar No. 314605) | San Francisco, CA 94104 |
| stephenbroome@quinnemanuel.com | Tel: (415) 293 6858 |
| Viola Trebicka (CA Bar No. 269526) | Fax: (415) 999 9695 |
| violatrebicka@quinnemanuel.com | |
| 865 S. Figueroa Street, 10th Floor | James W. Lee (*pro hac vice*) |
| Los Angeles, CA 90017 | jlee@bsfllp.com |
| Tel: (213) 443-3000 | Rossana Baeza (*pro hac vice*) |
| Fax: (213) 443-3100 | rbaeza@bsfllp.com |
| | 100 SE 2nd Street, Suite 2800 |
| Jomaire A. Crawford (admitted *pro hac vice*) | Miami, FL 33130 |
| jomairecrawford@quinnemanuel.com | Tel: (305) 539-8400 |
| 51 Madison Avenue, 22nd Floor | Fax: (305) 539-1304 |
| New York, NY 10010 | |
| Telephone: (212) 849-7000 | William Christopher Carmody (*pro hac vice*) |
| Facsimile: (212) 849-7100 | bcarmody@susmangodfrey.com |
| | Shawn J. Rabin (*pro hac vice*) |
| Josef Ansorge (admitted *pro hac vice*) | srabin@susmangodfrey.com |
| josefansorge@quinnemanuel.com | Steven Shepard (*pro hac vice*) |
| Carl Spilly (admitted *pro hac vice*) | sshepard@susmangodfrey.com |
| carlspilly@quinnemanuel.com | Alexander P. Frawley (*pro hac vice*) |
| 1300 I Street NW, Suite 900 | afrawley@susmangodfrey.com |
| Washington D.C., 20005 | SUSMAN GODFREY L.L.P. |
| Tel: (202) 538-8000 | 1301 Avenue of the Americas, 32nd Floor |
| Fax: (202) 538-8100 | New York, NY 10019 |
| | Tel: (212) 336-8330 |
| Jonathan Tse (CA Bar No. 305468) | |
| jonathantse@quinnemanuel.com | Amanda Bonn (CA Bar No. 270891) |
| 50 California Street, 22nd Floor | abonn@susmangodfrey.com |
| San Francisco, CA 94111 | SUSMAN GODFREY L.L.P. |
| Tel: (415) 875-6600 | 1900 Avenue of the Stars, Suite 1400 |
| Fax: (415) 875-6700 | Los Angeles, CA 90067 |
| | Tel: (310) 789-3100 |
| *Attorneys for Defendant Google LLC* | |
| | John A. Yanchunis (*pro hac vice*) |
| | jyanchunis@forthepeople.com |
| | Ryan J. McGee (*pro hac vice*) |
| | rmcgee@forthepeople.com |
| | MORGAN & MORGAN, P.A. |
| | 201 N Franklin Street, 7th Floor |
| | Tampa, FL 33602 |
| | Tel: (813) 223-5505 |
| | Fax: (813) 222-4736 |

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Discovery Statement. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: July 9, 2021

By  */s/ Andrew H. Schapiro*
Andrew H. Schapiro
*Counsel on behalf of Defendant Google LLC*