QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel
listed in signature blocks below*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 5:20-cv-03664-LHK <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Judge: Hon. Lucy H. Koh <br> Courtroom 8 – 4th Floor <br> Date: July 28, 2021 <br> Time: 2:00 p.m. |

Pursuant to Federal Rule of Civil Procedure 16, Civil Local Rules 16-9 and 16-10, the Standing Order for All Judges of the Northern District of California, the Court's Case Management Order of May 20, 2021 (Dkt. 171), and in advance of the Further Case Management Conference set by the Court for Wednesday, July 28, 2021, at 2:00 p.m., Plaintiffs and Defendant Google LLC ("Google") submit this Joint Case Management Statement to report the parties' progress since the previous Joint Case Management Statement was filed on May 19 (Dkt. 169).

## I.      JURISDICTION AND SERVICE

Google has been served and the Court has jurisdiction over this matter.

## II.     FACTS

The parties have no new facts to add at this time, although discovery is ongoing.

## III.    LEGAL ISSUES

The parties have no new legal issues to present at this time.

## IV.     MOTIONS

### Motions Decided Since the Last Joint CMC Statement

The Court granted various motions to seal. *See* Dkts. 172, 174, 183, 190, 197. The Court set a schedule for further briefing on specified issues in the May 26 Joint Discovery Statement. Dkt. 191. The Court required the parties to submit recommended candidates for appointment as a Special Master, Dkt. 196, appointed Mr. Douglas Brush as the Special Master, Dkt. 220, and referred certain discovery disputes to him, Dkt. 221. The Court issued an Order related to the parties' status report regarding ESI production and outstanding issues. Dkt. 209. Finally, the Court related two cases to this one: *Delahunty v. Google*, No. 21-CV-03360-LHK (N.D. Cal. filed May 5, 2021), and *Toronto v. Google*, No. 21-CV-03725-LHK (N.D. Cal. filed May 18, 2021). Dkt. 201.

### Pending Motions

The parties briefed Google's motion to dismiss Counts Six and Seven. Dkts. 164, 192, 208. The hearing has been scheduled for September 30, 2021 at 1:30 PM.

The parties also briefed Plaintiffs' motion to compel regarding Dispute P3 (Google's production of Plaintiffs' data). Dkts. 199, 211.

1      Anticipated Motions

2      ***Plaintiffs' Statement:***

3          Plaintiffs will move for class certification and may also seek summary judgment and/or

4      adjudication on certain claims or issues.  Plaintiffs also anticipate filing additional discovery

5      disputes with Magistrate Judge van Keulen.

6      ***Google's Statement:***

7          Google anticipates opposing class certification and moving for summary judgment. Google

8      also anticipates briefing additional discovery disputes for Magistrate Judge van Keulen.

9  **V.      AMENDMENT OF PLEADINGS**

10         On April 15, 2021, the Court, pursuant to stipulation of the parties, granted Plaintiffs'

11     request for leave to file their Second Amended Complaint.  Dkt 138; Dkt 136-1 ("SAC").

12  **VI.     EVIDENCE PRESERVATION**

13     ***Plaintiffs' Statement:***

14         Plaintiffs remain concerned that Google is not preserving records of Google's collection and

15     use of private browsing data, including "raw" logs, and data matching tables.  These records are

16     relevant to class member identification and damages.  Google does not dispute that raw logs and

17     matching tables would be relevant, and yet Google refuses to respond to discovery or meet and

18     confer on these topics, including on preservation.  Contrary to Google's claims, the "raw" logs are

19     not subsumed by any ruling in any related case.  Dkt. 199.

20     ***Google's Statement:***

21         Google is preserving evidence in compliance with its discovery obligations. Google also

22     continues to respond to Plaintiffs' discovery in the ordinary course, and has participated (and

23     continues to participate) in numerous meet and confer discussions on these topics. It is indisputable

24     that "raw" logs are logs, and Magistrate Judge van Keulen has already ruled that "Google need not

25     suspend its standard retention periods applicable to data logs that reflect event-level data." *Calhoun*

26     *et al. v. Google LLC*, No. 5:20-cv-5146, Dkt. 174. Because the logs at issue in *Brown* are subsumed

27     within the logs at issue in Calhoun, the Magistrate Judge already held that the ruling in *Calhoun*

28

**JOINT CASE MANAGEMENT STATEMENT**

1   would apply equally in *Brown*. Dkt. 147-1 at 1 (in response to Plaintiffs raising this precise issue,

2   Judge van Keulen wrote: "*See* Order filed in related case, *Calhoun, et al., v. Google* (20- 5146)").

## VII.   DISCLOSURES

4   The parties exchanged initial disclosures on September 8, 2020.  Plaintiffs served amended

5   disclosures on March 16, 2021.

## VIII.   DISCOVERY

7   A.   Case Schedule

8   The Court's May 20 Order (Dkt. 171) includes the current case schedule.

9   B.   Written Discovery Since the Last Joint CMC Statement

10   Google served responses and objections to Plaintiffs' Fourth Set of RFPs on May 24, to

11   Plaintiffs' Third Set of RFAs on May 31, and to Plaintiffs' Fourth Set of Interrogatories on May

12   31.  Plaintiffs served amended objections and responses to Google's First and Second Sets of RFAs

13   on May 24.  Plaintiffs served objections and responses to Google's Third Set of Interrogatories on

14   June 4. On June 7, Plaintiff Monique Trujillo served objections and responses to Google's First and

15   Second Set of RFAs, First and Second Set of Interrogatories, and First Set of RFPs.  Plaintiffs served

16   amended objections and response to Google's RFP No. 7 on June 11.  Google served its Fourth Set

17   of Interrogatories, Third Set of RFAs, and Second Set of RFPs on June 22, and Plaintiffs' responses

18   are due on July 22.  Plaintiffs served their Fifth Set of Interrogatories on July 16, and Google's

19   responses are due on August 26.

20   C.   Depositions

21   ***Plaintiffs' Statement:***

22   On June 16, 2021, Google produced Dr. Glenn Berntson as a corporate representative on

23   certain topics.  While Plaintiffs seek to compel additional testimony on the basis that Dr. Berntson

24   was in many ways unprepared (Dkt. 199), the deposition still proved fruitful.  Dr. Berntson

25   confirmed that Google can and does map unauthenticated user data (which would include private

26   browsing information) with authenticated data, including through Google's ███████

27   (based on Google's ██████ identifiers and association with "GAIA" account identifiers).  *See*

28   GOOG-BRWN-00026161; Tr. at 210:15-23.  This mapping is very important for Google's bottom

**JOINT CASE MANAGEMENT STATEMENT**

1   line, allowing cross-device tracking for increased revenues.  Tr. at 198:7-11; GOOG-BRWN-

2   00026161.

3          Dr. Berntson also confirmed that Google collects ████████████████████

4   ████████████████████████████████████████████████████████████████████

5   █████████  Tr. at 64:12-17. ███████████████████████████████  Tr. at 64:23-

6   24. ████████████████████████████████████  Tr. at 71:5-6. ██████████

7   ████████████████████████████████████████████████████████████████████

8   ████████████████  Tr. at 72:4-10. ██████████████████████████████████

9   ████████████████████████████████████████████. Tr. at 296:21-297:4███

10  ████████████████████████████████████████████. Plaintiffs have asked for

11  these raw GWS logs for the named Plaintiffs, and for Google to explain what other general data

12  parameters are available to GWS.  Google refuses to respond.  Moreover and critically, Google

13  would not allow Dr. Berntson to testify about what ESI has been preserved.

14         ***Google's Statement:***

15         Plaintiffs misrepresent Dr. Berntson's testimony. *First*, as Google explained in briefing

16  submitted on July 30, 2021, Dr. Berntson testified repeatedly that **the "unauthenticated" data at**

17  **issue in this case**—data Google receives when users who are signed out of their Google Account

18  use their browser in private browsing mode to visit a website that uses Google Analytics or Google

19  Ad Manager—**is not mapped to authenticated data**, *i.e.* Google Accounts. *See* Dkt. 210-4 at 5;

20  Berntson Tr. 203:20–204:1 ████████████████████████████████ *id*. 280:2–5 ███

21  ████████████████████████████████████████████████████████████████████

22  ████; *id*. 285:22–286:3 ████████████████████████████████████████████

23  ████████████████████. *Second*, Dr. Berntson was a knowledgeable and well-prepared witness.

24  *See* Dkt. 210-4 at 6. *Third*, Google did not prevent Dr. Berntson from answering any questions. *See*

25  Berntson Tr. 233:11–12 ("I'm not instructing him not to answer"); *id*. 233:24–234:1 ("go ahead and

26  ask your questions"). *Fourth*, as Google has explained to Plaintiffs in written correspondence,

27  Google has already produced GWS log data with x-client-data header values.

28

**JOINT CASE MANAGEMENT STATEMENT**

D.  <u>Protective Order</u>

The parties were able to agree on all terms of a protective order, which Magistrate Judge Susan van Keulen approved on October 15, 2020 with one revision to the provision related to the right to further relief.  Dkt. 81.

E.  <u>ESI Protocol</u>

The parties stipulated to an order related to ESI discovery, which Judge van Keulen approved on October 15, 2020.  Dkt. 80.

F.  <u>Discovery Updates</u>

a.  **<u>Logs</u>**

*Plaintiffs' Statement:*

Plaintiffs remain concerned that Google is withholding and destroying logs containing private browsing information collected from Plaintiffs and putative class members, and Plaintiffs continue to seek testimony and other discovery focused on those issues.  *See* Dkt. 199.  On July 16, for the first time, Google indicated that it has been withholding discovery on "log sources," apparently arguing that they are different from "logs," although both collect data on users.  Google refuses to provide basic information about what data parameters it has in logs on those tracked in private mode, and Google refuses to give Plaintiffs their own data from logs from the "unauthenticated" system and Google Analytics.  Contrary to Google's representations, Magistrate Judge van Keulen indicated that she is open to additional briefing on preservation issues, and also ordered Google to testify about its preservation practices generally.  Google still refuses to produce a deponent on preservation issues.

*Google's Statement:*

*First*, Plaintiffs misunderstand the meaning of the term "log source" despite the fact that it is explained in produced documents. A "log source" is a server that writes logs. Plaintiffs are certainly not demanding Google produce its web servers. Rather, Plaintiffs seek the production of logs. Google has produced information about, and from, relevant logs in this case. *Second*, Plaintiffs attempt to relitigate the log preservation dispute. After extensive briefing, hearings, and court-ordered discovery, Magistrate Judge Susan van Keulen ordered that Google need not suspend its

CASE NO. 5:20-cv-03664-LHK

standard retention periods applicable to data logs. *See Calhoun v. Google* Dkt. 174. Magistrate Judge

van Keulen already confirmed that her order in *Calhoun* equally applies in this case. Dkt. 147-1 at

1. Plaintiffs should not be permitted to ignore this court order because they don't like its holding.

*Third*, Dr. Berntson *was* prepared to, *and did*, provide testimony about "general retention practices

and protocols" of relevant data, about which the Court permitted Plaintiffs to ask. *See* Dkt. 194-4

55:5–6; Berntson Tr. 362:24–369:9.

> ## b. Documents

**Plaintiffs' Statement:**

Plaintiffs continue to negotiate with Google regarding Google's production of relevant

documents.  Google has so far produced a relatively small number of documents, with 21 Google

custodians.  Some of these documents were produced with errant images (e.g., text cut off from

diagrams) or reference materials in hyperlinks that have not been produced.  Plaintiffs continue to

identify these errant productions through letters to Google, but Google has only responded to one

letter and has not provided what it admits was omitted in productions.

Plaintiffs recently requested that Google include an additional 30 custodians.  On June 18,

Google produced documents for 17 custodians.  Those documents highlight the importance of

custodial documents (and depositions).  For example, ██████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████ GOOG-BRWN-00409986; GOOG-BRWN-

00226901. █████████████████████████████████████████████████████████

████████████████████████████████████████ GOOG-BRWN-00140297. ████

█████████████████████████████████ GOOG-BRWN-00184283, ██████████

███████████████████████████████████████████████ GOOG-BRWN-

00153850 (emphasis added). █████████████████████████████████████████

████████████████████████████████ GOOG-BRWN-00224755, ████████████

███ ████ ██ ████ ██████ ██ ████████████ GOOG-BRWN-

00140297. █████████████████████████████████████████████████████████

███████████████████████████████████ (GOOG-BRWN-00147873), ███

**JOINT CASE MANAGEMENT STATEMENT**

1  ████████████████████████████████████████████████████

2  ███████████████████████████████████████  GOOG-BRWN-

3  00048967. These documents underscore that Plaintiffs' discovery requests have not been overly

4  broad, and Plaintiffs' requests for additional custodial documents (and depositions) are reasonable.

5  **Google's Statement:**

6  Google has produced more than 77,000 documents in this case, spanning more than 420,000

7  pages. On June 18, Google substantially completed its production for 17 custodians. Plaintiffs

8  continue to broaden their requests for the production of documents, including by requesting that

9  Google produce documents from an additional 30 custodians--but refusing to inform Google

10  whether Plaintiffs will seek documents from additional custodians prior to the August 12 deadline

11  set by the Court for identifying custodians. Google is considering Plaintiffs' requests for additional

12  custodians. Plaintiffs' insistence on including out-of-context snippets of some of the documents

13  Google has produced has no relevance to the issue of whether Plaintiffs are entitled to documents

14  from an additional 30 (or more) custodians in this case. To the extent Plaintiffs find that the

15  documents that Google has already produced are relevant to the case, it only indicates that Google

16  has fulfilled its obligation to produce relevant documents. It does not justify Plaintiffs seeking

17  documents from an additional unlimited number of custodians in this case.

18  Plaintiffs have identified a small number of technical issues regarding Google's document

19  productions, which Google continues to timely investigate. As Magistrate Judge van Keulen has

20  already held, the production of all hyperlinked documents would be unduly burdensome and not

21  proportional to the needs of the case. However, Google has considered and will continue to consider

22  Plaintiffs' reasonable requests regarding hyperlinked documents, and, as a courtesy, has produced

23  and will continue to produce responsive, non-privileged hyperlinked documents as appropriate.

24  c.  **Depositions**

25  **Plaintiffs' Statement:**

26  Plaintiffs want to take more depositions, but Google is dragging its feet.  For example,

27  Google only *today* provided dates for the 30(b)(6) deposition that Plaintiffs noticed on May 24, and

28  Google's earliest proposed date is August 27.  Plaintiffs also sent Google two deposition notices on

**JOINT CASE MANAGEMENT STATEMENT**

July 5 and three more on July 9, yet Google has only offered a date for two of them, and not until August 19 and 31 (after the next discovery hearing).  There is no reason for Google's ongoing delay.  Plaintiffs followed up with Google to explain their concern about timing, and to ask that Google provide dates for all five deponents in July and August.  Google refused.  Plaintiffs also requested that Google agree to increase the number of depositions from 10 to 25, with a good cause standard for more depositions, but Google has not yet agreed.  Plaintiffs are concerned about meeting the discovery deadline in light of Google's delay, and anticipate raising these issues at the August 12 discovery hearing.

**Google's Statement:**

Google has, is, and will continue to make its witnesses available to Plaintiffs for deposition. Google provided several dates of availability for its Rule 30(b)(6) witness in response to Plaintiffs' May 24 notice. Plaintiffs complain about a witness being made available on August 31, but that witness only became a custodian recently, and the parties have not yet completed negotiating the search terms to be run over his documents. Surely, Plaintiffs would prefer to take a witness' deposition after their documents have been produced. A number of the witnesses Plaintiffs have sought to depose are also joint custodians in both *Brown* and *Calhoun*; pursuant to the agreement on coordination of certain discovery being negotiated in these cases, those depositions will have to be coordinated with Plaintiffs in *Calhoun* as well. Finally, Google will strive to minimize any delays in providing witnesses, but a number of witnesses work and live outside of the United States, and some are based in countries that prohibit pre-trial discovery, thus requiring Google to move the witnesses (some of whom are unvaccinated) to a different country during a pandemic. Google asks for Plaintiffs' patience and cooperation arranging depositions that require travel during a pandemic.

### d.  Class Certification

**Plaintiffs' Statement:**

Plaintiffs continue to seek documents and testimony relevant to class certification.  Internally, Google employees have acknowledged that ███████████████████ GOOG-BRWN-00204429, and that ███████████████ ████████████████████ GOOG-BRWN-00406075.  Google employees at the

**JOINT CASE MANAGEMENT STATEMENT**

1    same time acknowledged that Incognito is ███████████ because ███████████

2    ███████    GOOG-BRWN-00028052.  ███████████████████████████

3    ███████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████

5    ███████████████   GOOG-BRWN-00062891.

6         Currently, without disclosure or consent, Google has two types of tracking systems—one

7    with "authenticated" identifiers, and one with "unauthenticated" identifiers.  The only difference is

8    that Google's authenticated system keys data to users' Google accounts, while Google's

9    unauthenticated system tracks users by their devices, including with what Google internally calls

10   "twice-baked" cookie identifiers such as ████████ and ████████  GOOG-BRWN-

11   00160353.  ████████████████████████████████   GOOG-BRWN-

12   00078290.  Google tracks private browsing activity (including Incognito browsing) using these

13   █████████ and Google creates a █████████████████████████████████

14   █████████████████████   *Id.*  Google's unauthenticated system tracks users even when

15   they are not logged into any Google account or service and are in a private browsing mode.  ███████

16   ███████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████

18   ███████████████████   GOOG-BRWN-00047368.  Google keeps this tracking

19   system a secret, including by redacting references to it in filings.  Yet Google argues that users

20   somehow "consented" to a practice that is too secret for Google to publicly discuss.

21        Pursuant to Magistrate Judge van Keulen's Order (Dkt. 191), Plaintiffs filed a motion to

22   compel (Dkt. 199) and a joint dispute letter (Dkt. 218).  Plaintiffs' motion requests that Google (1)

23   produce all data linked or mapped to any identifier associated with Plaintiffs or their devices,

24   including authenticated and unauthenticated identifiers; (2) produce a corporate representative to

25   testify about Google's mapping and tracking across all of Google's technologies; and (3) provide

26   Plaintiffs' attorneys and experts, with the assistance of the Special Master, onsite access to a clean

27   room so that Plaintiffs' attorneys and experts may use internal Google tools, including the Dremel

28

**JOINT CASE MANAGEMENT STATEMENT**

tool, to identify authenticated and unauthenticated data concerning the named Plaintiffs and their devices.  Dkt. 199.

The joint dispute letter concerns Plaintiffs' request for "[d]ocuments sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client Data header."  Plaintiffs seek this data as the ███████ for identifying class members, which is exactly how Google describes the X-Client Data Header.  *See* GOOG-BRWN-00204684 ████████████████████████████████████████████ ██████████████████████████████████ Google employees recognize that ████████████████████████████████████████████ ██████████████████████████ GOOG-BRWN-00035610.  Plaintiffs look forward to litigating this issue before Magistrate Judge van Keulen and with the Special Master.

Recently, Google also disclosed that its ██████████████████████████████████ ████████████████████.  Google is refusing to identify or produce logs for the ████ and the related ███████████ although at minimum, such logs and information is relevant to the identification of class members.  Google is also refusing to respond to basic discovery requests on what data parameters are available in Google's logs and sources, and Google refuses to give Plaintiffs their own data in Google's raw logs and its unauthenticated system.

Finally, Google refused to respond to Plaintiffs' Interrogatory No. 9, which asked Google to "explain why this case should not be certified as a class action."  Google's refusal is particularly frustrating because Google propounded an analogous interrogatory on Plaintiffs, No. 11, which asked Plaintiffs to "describe with particularly why this case should be certified as a class action."  Plaintiffs provided a substantive response.

***Google's Statement:***

Plaintiffs' statement above is rife with false and misleading information and takes statements in documents out of context. Google has produced unauthenticated log data keyed to cookie values Plaintiffs provided. But Plaintiffs request "Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class

**JOINT CASE MANAGEMENT STATEMENT**

1   members." (RFP 10.) As Google has explained for months, Google cannot produce this information

2   because Google does not associate electronic or physical address information with the data at issue;

3   and the data at issue is not reasonably linkable to individual users. Magistrate Judge van Keulen

4   ordered Plaintiffs to brief the dispute (P6) regarding "Documents sufficient to identify all alleged

5   class members." *See* Dkt. 191-1 at 3. But Plaintiffs declined and decided to brief only the dispute

6   regarding data associated with the named Plaintiffs (P3).

7          Plaintiffs' incomplete description above of Google's "unauthenticated" identifiers is

8   profoundly misleading. Yes, Google uses cookies to personalize advertising and provide analytic

9   services. That is no secret. Google has public disclosures, including videos, explaining "How

10  Google Uses Cookies." *See* https://policies.google.com/technologies/cookies. But, as Google has

11  emphasized since the beginning of this case (*see* Dkt. 53 at 1) and substantial discovery has

12  confirmed, pre-existing cookies are not shared when a user launches an Incognito session, and

13  cookies placed during an Incognito session are deleted when the session is closed. Therefore, there

14  is no linking of private browsing data across sessions, or to an individual user.

15         Regarding the use of the X-Client-Data Header to identify class members, Magistrate Judge

16  van Keulen ordered Plaintiffs to brief the following question: "What is Plaintiffs' factual basis to

17  dispute Google's position that there are multiple reasons why the X-Client Data field may be empty

18  and therefore the empty field does not necessarily identify class members?" Dkt. 191-5. Plaintiffs

19  failed to identify any such factual basis in response. In fact, as Dr. Berntson testified, ██████████

20  ████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████████████████████.

23  Berntson Tr. 389:11–18; *id.* 375:5–24; Dkt. 218 at 8. Therefore, the absence of the X-Client-Data

24  Header is not a reliable means to identify purported class members.

25         With respect to Interrogatory No. 9, Plaintiffs seek to shift *their* burden of demonstrating

26  why their putative class should be certified to Google, and demand that Google provide an

27  explanation of why the class should *not* be certified. This request comes more than six months before

28  the parties are scheduled to brief class certification, before plaintiffs have adequately responded to

**JOINT CASE MANAGEMENT STATEMENT**

Google's discovery requests, before Google has deposed a single plaintiff, and before the parties have engaged in any class certification expert discovery. Rule 23 does not require or contemplate that the defendant in a putative class action must provide the plaintiff all conceivable reasons why the class should not be certified prior to the defendant submitting its opposition to plaintiff's class certification motion. Certainly, Google should not be required to do so at this early juncture.

e. **Source Code**

*Plaintiffs' Statement:*

Plaintiffs also requested access to non-public Google source code. The parties exchanged letters and met and conferred about Plaintiffs' requests. Plaintiffs' current proposal is that Google make available for inspection the source code relevant to Google's mapping of logged-out browsing activity with device and publisher identifiers, including source code showing how Google tracks users across websites and devices for advertisement conversions. In addition, based on recent admissions, Plaintiffs also believe that Google should produce source code relating to its ██ and Chrome tracking systems, which track Incognito usage.

Source code inspection is critical to obtaining a detailed and exhaustive understanding of how these functionalities are implemented and operate, including particular design choices made by software engineers that may not show up in documents. Plaintiffs also note that they have requested clean room access to Google's systems so that some of these questions can be more directly addressed; Google flatly refused. If necessary, Plaintiffs will raise these issues in the next joint discovery submission on August 2.

*Google's Statement:*

This issue is not ripe yet. In fact, Plaintiffs' source code ask is a moving target that makes it very difficult for Google to respond to meaningfully. What Plaintiffs refer to as their "current proposal" above was made for the first time in this CMC statement. And it is now its third proposal in less than three months. Plaintiffs' ever-changing source code requests belies their relevance or necessity.

It is established that a party must justify a request for non-public source code by establishing that the source code is both relevant and *necessary* in a litigation. See, e.g., *In re Apple and AT&T*

-13-

**JOINT CASE MANAGEMENT STATEMENT**

*Antitrust Litig.*, 2010 WL 1240295, at *2, *3 (N.D. Cal. Mar. 26, 2010) (rejecting plaintiffs' request for source code discovery because "Plaintiffs only speculate that the . . . source code may be relevant" and therefore "have not met their burden and have not established that the . . . source code sought is relevant and necessary") (emphasis added); *see also 3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 111-12 (2019) (denying a motion to compel source code after finding that plaintiffs have neither "demonstrated with any specificity that they require access to defendants' source code" nor "properly explained why existing discovery, such as manuals, technical documents, and other non-source code information, is insufficient for them" to support their allegations); *Campbell v. Facebook Inc*., 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2016) (denying plaintiffs' motion to compel inspection of Facebook's "highly proprietary source code," finding it "unreasonable and disproportionate in light of the narrow issues . . . in the case"); *Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483, 491 (D.P.R. 2011) (denying request for production of source code after determining that the source code's relevance was "questionable" and "even if relevant, compelling disclosure of the [s]ource [c]ode . . . would be unnecessary and would merely burden defendants without commensurate benefit"); *Viacom Int'l Inc. v. Youtube Inc*., 253 F.R.D. 256, 260-61 (S.D.N.Y. 2008) (finding that "speculative" reasons for inspecting confidential source code, *i.e.*, an "undisputed trade secret," that was the product of "50,000 man hours of engineering time and millions of dollars of research and development costs" was insufficient).

Plaintiffs have not come close. Plaintiffs claim that "[s]ource code inspection is critical to *obtaining a detailed and exhaustive* understanding of how these functionalities are implemented and operate, including *particular* design choices made by software engineers that may not show up in documents." Despite the broad ask, Google has already produced public source code, documents, and testimony that provide the understanding Plaintiffs seek. Plaintiffs have failed to identify any missing information in what Google has produced that would necessitate the burden of producing source code. Indeed, Plaintiffs' own position statements above in Sections VIII(C) and VIII(F)(d) confirm their own belief that they *have* received responsive information to their proposal here through at least Google's documents and deposition testimony. Plaintiffs have failed to show why all of this discovery is insufficient thus far to show the requested functionality.

It is true that Plaintiffs have requested clean room access but the purported basis for their request has nothing to do with source code. Plaintiffs' clean room access request is being separately briefed and it relates to their request that "Plaintiffs' attorneys and experts may use internal Google tools, including the Dremel tool, to identify authenticated and unauthenticated data concerning the named Plaintiffs and their devices." Plaintiffs' request for *carte blanche* access to Google's internal logs, databases, and tools is similarly unjustified, but is in any event being briefed separately.

Google will provide its response to Plaintiffs' most recent source code letter and their most "current" proposal in this Statement and is willing to continue to meet and confer with Plaintiffs on this issue.

### f.  Cross-Use

*Plaintiffs' Statement:*

Magistrate Judge van Keulen ordered the parties to negotiate a protocol that would permit the "cross-use" of documents between this matter and the related *Calhoun* matter, and Plaintiffs continue to negotiate that protocol with Google.  If the parties are unable to reach an agreement, they will submit competing proposed orders on August 2.

*Google's Statement:*

The parties have agreed in principle to cross-use of certain non-custodial documents and documents of those individuals who are custodians in both cases, as well as to conduct joint depositions for these individuals who are overlapping custodians. The parties continue to meet and confer regarding the details so that they can finalize the proposed stipulation and order, and will provide an update in the August 2, 2021 joint submission.

### g.  Expert Discovery

*Plaintiffs' Statement:*

Plaintiffs continue to seek documents and testimony relevant for purposes of expert analysis and opinions, including regarding damages.  Google recently approved access to Google-produced documents and data for two experts engaged by Plaintiffs who will focus on damages.  Discovery to date already supports Plaintiffs' allegations that Google profits from its collection and use of private browsing data, and Plaintiffs will seek more discovery into these profits for purposes of

-15-

**JOINT CASE MANAGEMENT STATEMENT**

1  establishing their damages.  For example, recently produced internal Google documents show that

2  ███████████████████████████. *See, e.g.*, GOOG-BRWN-00169228 (email explaining that

3  the Chrome team was ████████████████████████████████████  After the

4  filing of this lawsuit, Google added a third-party cookie blocking tool to the Incognito Splash

5  Screen, ████████████████████████.  GOOG-BRWN-00247512.  Facing

6  increasing pressure to keep up with competing browsers that actually respect users' privacy, ████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████  GOOG-

9  BRWN-00173283; GOOG-BRWN-00181841.  Accordingly, ██████████████████

10 ████████████████████████████████████████████████████

11 ████████  GOOG-BRWN-00181904.  While the new Incognito screen includes a switch to

12 "block" third-party cookies, Plaintiffs believe Google has merely relabeled some Google tracking

13 technologies to "first party," including cookies and the ██████████████████████

14 ██████████████████████.  The upshot is that the new

15 Incognito Splash Screen is no less misleading than Google's prior version, with Google continuing

16 to impermissibly intercept and profit from Plaintiffs' private browsing.

17      **Google's Statement:**

18      It is unclear what issue, if any, Plaintiffs are trying to identify or raise above with respect to

19 expert discovery. Nowhere do Plaintiffs argue that Google's production of documents related to

20 damages are insufficient; their position statement above shows, to the contrary, that Google has been

21 producing relevant documents. Plaintiffs' attempt to preview the damages position for the Court by

22 submitting a mini-brief through the Joint Case Management Statement is improper and

23 unnecessary.

24      Google will continue to produce responsive, non-privileged documents as discovery

25 progresses.

26 //

27 //

28

**JOINT CASE MANAGEMENT STATEMENT**

h. **Google's Affirmative Defenses**

*Plaintiffs' Statement:*

Google has not yet filed its Answer to the Second Amended Complaint, not even for counts One through Five (which Google did not move to dismiss).  The hearing on Google's motion to dismiss Counts Six and Seven will be on September 30.  Because the close of fact discovery is on November 2, Plaintiffs are concerned that they will not have enough time to take discovery on any affirmative defenses that Google plans to assert.  Plaintiffs therefore asked Google to inform Plaintiffs of any affirmative defenses it plans to assert, so that Plaintiffs may begin seeking that discovery.  Google has not yet responded.

*Google's Statement:*

The Court granted Plaintiffs' request to seek leave to file a Second Amended Complaint, the stipulated motion to dismiss briefing schedule and timing of Google's answer (Dkt. 138), and Plaintiffs' request to extend the deadline to file its opposition to the motion to dismiss by two weeks (Dkt. 175). Google intends to assert its affirmative defenses at the appropriate time when the response is due in accordance with Federal Rules of Civil Procedure and the Court's order in Dkt. 138.

i. **Dispute D3 (Google RFP No. 2 re: Plaintiffs' Chrome Device settings)**

*Google's Statement:*

In the May 26, 2021 joint submission to the Court, Plaintiffs agreed to "inform Google by June 1, 2021, whether they will produce Chrome Device Settings." Dkt. 177 at 33.  Plaintiffs failed to do so.  Despite follow-up, Plaintiffs still have not indicated whether they will produce the settings.  Google plans to bring Plaintiffs' failure to provide an answer to the attention of the Magistrate Judge.

*Plaintiffs' Statement:*

Plaintiffs met and conferred with Google on the scope of RFP No. 2 on April 2, at which point Google agreed that any dispute under RFP No. 2 had been resolved. Weeks later, Google raised what is now Dispute D3, requesting access to Plaintiffs' Chrome settings. Plaintiffs have since conferred with Google numerous times, confirmed that the default Chrome settings have not

-17-

**JOINT CASE MANAGEMENT STATEMENT**

1   been changed, and requested that Google provide the relevance of this onerous request. Google has

2   not provided a basis, and Google's request does not include any information related to Plaintiffs'

3   private browsing activity, as there is no "Incognito" menu or setting in Chrome.

4      Plaintiffs are concerned that Google's request encompasses highly sensitive and irrelevant

5   data and may also be an end-run around Magistrate Judge van Keulen's prior rulings. If Google still

6   insists on this intrusive discovery, Plaintiffs anticipate raising these issues in the August 2 discovery

7   filing.

8   **IX.  SETTLEMENT AND ADR**

9      No settlement discussions have taken place.  Pursuant to ADR Local Rule 3-5 and Civil

10  Local Rule 16-8, on August 19, 2020, the parties met and conferred regarding the available dispute

11  resolution options and filed their respective ADR Certifications.  The parties do not believe that

12  ADR is appropriate at this time.

13  **X.  PROPOSED CASE SCHEDULE**

14     On May 20, the Court granted the parties' joint request to extend the case deadlines.  Dkt.

15  171.

16

17  DATED: July 21, 2021     QUINN EMANUEL URQUHART &
                SULLIVAN, LLP

18

19

            By  */s/ Andrew H. Schapiro*

20                Andrew H. Schapiro (admitted *pro hac vice*)
              andrewschapiro@quinnemanuel.com

21                191 N. Wacker Drive, Suite 2700
              Chicago, IL 60606

22                Tel: (312) 705-7400
              Fax: (312) 705-7401

23

24                Stephen A. Broome (CA Bar No. 314605)
              stephenbroome@quinnemanuel.com

25                Viola Trebicka (CA Bar No. 269526)
              violatrebicka@quinnemanuel.com

26                865 S. Figueroa Street, 10th Floor
              Los Angeles, CA 90017

27                Telephone: (213) 443-3000
              Facsimile: (213) 443-3100

28                Diane M. Doolittle (CA Bar No. 142046)

**JOINT CASE MANAGEMENT STATEMENT**

dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemauel.com
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant*
Google LLC

**JOINT CASE MANAGEMENT STATEMENT**

1    DATED: July 21, 2021                 SUSMAN GODFREY L.L.P.

2

3                                    By    /s/ *Amanda Bonn*
                                        _____

4                                         Amanda Bonn (CA Bar No. 270891)
                                          abonn@susmangodfrey.com
5                                         SUSMAN GODFREY L.L.P.
                                          1900 Avenue of the Stars, Suite 1400
6                                         Los Angeles, CA 90067
                                          Telephone: (310) 789-3100
7

8                                         Mark C. Mao (CA Bar No. 236165)
                                          mmao@bsfllp.com
9                                         Sean Phillips Rodriguez (CA Bar No. 262437)
                                          srodriguez@bsfllp.com
10                                        Beko Rebitz-Richardson (CA Bar No. 238027)
                                          brichardson@bsfllp.com
11                                        Alexander Justin Konik (CA Bar No. 299291)
                                          akonik@bsfllp.com
12                                        BOIES SCHILLER FLEXNER LLP
                                          44 Montgomery Street, 41st Floor
13                                        San Francisco, CA 94104
                                          Telephone: (415) 293 6858
14                                        Facsimile (415) 999 9695
15

16                                        James W. Lee (*pro hac vice*)
                                          jlee@bsfllp.com
17                                        Rossana Baeza
                                          rbaeza@bsfllp.com
18                                        BOIES SCHILLER FLEXNER LLP
                                          100 SE 2nd Street, Suite 2800
19                                        Miami, FL 33130
                                          Telephone: (305) 539-8400
20                                        Facsimile: (305) 539-1304

21                                        William Christopher Carmody (*pro hac vice*)
                                          bcarmody@susmangodfrey.com
22                                        Shawn J. Rabin (*pro hac vice*)
                                          srabin@susmangodfrey.com
23                                        Steven Shepard (*pro hac vice*)
                                          sshepard@susmangodfrey.com
24                                        Alexander P. Frawley (*pro hac vice*)
                                          afrawley@susmangodfrey.com
25                                        SUSMAN GODFREY L.L.P.
26                                        1301 Avenue of the Americas, 32nd Floor
                                          New York, NY  10019
27                                        Telephone: (212) 336-8330

28

                                              -20-                     CASE NO. 5:20-cv-03664-LHK
01980-00178/12860298.1    **JOINT CASE MANAGEMENT STATEMENT**
                          **Error! Unknown document property name.**

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (pro hac vice)
mram@forthepeople.com
Ra  O. Amen (pro hac vice)
ramen@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

**JOINT CASE MANAGEMENT STATEMENT**

**ATTESTATION**

I, Andrew H. Schapiro, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


DATED:   July 21, 2021                         By:    */s/ Andrew H. Schapiro*

CASE NO. 5:20-cv-03664-LHK

**JOINT CASE MANAGEMENT STATEMENT**