# EXHIBIT A
# Redacted Version of Document Sought to be Sealed

BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel
listed in signature blocks below*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK-SVK<br><br>**JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES**<br><br>Referral: Hon. Susan van Keulen, USMJ |

August 2, 2021

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:   Joint Submission in Response to Dkt. 191, 191-1 re: Status of Discovery Disputes
      *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's June 8, 2021 Discovery Orders (Dkts. 191, 191-1), Plaintiffs and Google LLC ("Google") jointly submit this statement containing a table identifying the status of the remaining discovery disputes and a separate chart containing disputes regarding Plaintiffs' written discovery requests.  Plaintiffs submit proposed orders in connection with Disputes P1 and P2 (custodial documents and searches), P14 (source code), and P15 (cross-use).

Pursuant to the Court's July 30 order (Dkt. 222), Plaintiffs identify the following two priority issues:  P1 (custodial documents) and P14 (source code).  Google identifies P10 (timeline for producing Google custodial documents) and P17 (timing and number of Google depositions) as its priority issues.

**Google's Separate Preliminary Statement**. Google respectfully asks the Court to impose time and page limits on the parties for future discovery chart submissions.  Google proposed a word limit to Plaintiffs when they provided their initial submission to Google, but Plaintiffs rejected Google's proposal.  Google then made a similar proposal in its email to the Court on Friday, July 30, 2021.  It took this Court's intervention later that day to bring Plaintiffs' initial submission of 99 pages in chart format down to 34 pages on Friday, July 30 at 4:08 PM PT before the Monday, August 2 deadline.  As a result, Google had only the weekend to respond to 34 pages of briefing on Plaintiffs' affirmative disputes with Google's discovery efforts.  To avoid prejudice to parties and unwieldy submissions in the future, Google respectfully asks that the Court impose exchange schedules that allow sufficient time for parties to consider and respond to each other's positions,

1   and a 75-word limit on such submissions (with an extension up to 125 words), as set forth in

2   Google's concurrently-submitted Proposed Order.

3       **Plaintiffs' Response to Google's Separate Preliminary Statement**.  Plaintiffs have no

4   objection to imposing exchange schedules for future discovery chart submission, which Google

5   proposed for the first time today with its preliminary statement.  Plaintiffs are also willing to adopt

6   word limits if helpful to the Court.  There was, however, no prejudice to Google in the preparation

7   of this filing.  In emails and during a video conference on July 27, Plaintiffs described, in detail,

8   each and every issue raised in this submission, and also asked Google to provide owed responses to

9   many pending issues, so that the parties would not have to brief all issues.  On Wednesday, July 28,

10  Plaintiffs sent Google an email identifying the list of issues Plaintiffs intended to address.  The only

11  reason Plaintiffs did not provide a draft before Thursday was because they were waiting (and are

12  still waiting) for Google to state its position on these issues, to determine whether briefing would

13  be necessary.  As with past submissions, Google delayed and refused to do that, requiring Plaintiffs

14  to brief issues where Google then abandoned its opposition.  Google never notified Plaintiffs that it

15  intended to request an emergency conference, and the dispute summary chart Plaintiffs sent Google

16  on July 29 was in fact 25 pages.  With respect to the dispute summary chart, there is no actual dispute

17  that it conforms to the format ordered by this Court and utilized by the parties since the inception of

18  discovery.  Much of the contents of the chart consist of short updates on the prior disputes (for

19  example, noting that there are no further disputes).  The only reason the initial submission was 99

20  pages is because Plaintiff included attachments regarding disputed discovery requests (consistent

21  with prior submissions) and also disputed custodians and searches.  Regarding custodians and

22  searches, the attachment simply restated the contents of letters Plaintiffs previously sent Google,

23  and Plaintiffs proposed including that information to assist the Court.  Plaintiffs have since removed

24  the attachments regarding the custodians and searches, and Plaintiffs are separately asking the Court

25  for permission to brief those issues.

26

27

28

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | **Disputes Identified by Plaintiffs** | |
| P1 4/7/21 | **Selection of Google custodians**: The parties have a dispute regarding which Google employees to include as document custodians. | <u>Plaintiffs' Position</u>:  The parties are at an impasse on the selection of Google custodians.  Plaintiffs' proposed order includes the names of the disputed custodians, Plaintiffs' proposed searches for each custodian, and Plaintiffs' proposed cap on custodians and deadline for adding additional custodians and searches.<br><br>Google is refusing to collect and produce ESI from key Google employees who clearly and uniquely have relevant ESI.   This includes Google employees who prepared Google documents describing "known misconceptions" regarding Incognito, the absence of consent, and Google's substantial and unjust enrichment from the conduct at issue.<br><br>As noted in the proposed order, there are 26 custodians in dispute and 8 more where Google has not yet agreed to the requested searches.  Consistent with the Court's June 30 Order (Dkt. 209), Plaintiffs identified support for each person and proposed searches tailored to each custodian. Plaintiffs proposed presenting information regarding each disputed custodian to the Court, and Google then sought an emergency hearing.   Google also refused to provide hit counts for the disputed custodians and instead insists that Plaintiffs' simply take Google at its word that certain custodians are not likely to have relevant information.  This is an untenable position.  Pursuant to the Court's order, Plaintiffs are separately seeking leave to submit briefing. As noted in Dispute P10 below, Plaintiffs seek a September 10 deadline for producing these additional documents. | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | Plaintiffs believe the cap for Google custodians should be 60. Plaintiffs initially thought 50 would be sufficient, but Google's June 18 production warrants additional custodians. Plaintiffs currently seek in total 55 custodians. Plaintiffs anticipate identifying additional custodians as they continue to review Google's June 18 production and any future productions. Plaintiffs propose a good cause standard for any additional custodians above 60.<br><br>Plaintiffs ask that the Court's deadline for adding additional custodians and search terms be October 1, three weeks after the requested September 10 deadline for substantial completion of all additional custodial documents, and approximately six weeks after the August 12 hearing. Plaintiffs need time to review these productions and identify additional custodians and search terms. The deadline should in any case be after Google's production for these additional custodians.<br><br>Google's Position: *Request for Additional Custodians.* Plaintiffs requested 34 additional custodians. After evaluating Plaintiffs' good cause arguments, and the dozens of documents cited (some of which Plaintiffs take out of context or selectively quote), Google agreed to add eight custodians, bringing the total number of ESI custodians to 29. Further, Google provided detailed responses for the remaining proposed custodians as to why Plaintiffs failed to establish good cause and did not, as Plaintiffs allege, simply ask Plaintiffs to take Google's word that they would not have relevant, non-duplicative information. Google is still evaluating four other custodians (proposed on July 27). | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | The parties will provide an update on the unresolved custodians at the August 12, 2021 hearing.<br><br>*Cap on the Number of Custodians.* Google continues to believe that a cap of 30 custodians is appropriate and proportional to this litigation (consistent with the parties' Joint Submission, Dkt. No. 202). This is the case for at least three reasons: (i) for every additional custodian added, Google must undertake the time-intensive steps of collecting their ESI, processing and ingesting it (which generally takes several days per custodian), running the agreed-upon search terms (the universe of which varies by custodian), de-duplicating the documents, running a last in time email thread analysis, and now structuring or re-arranging Google's entire document review to prioritize certain custodian reviews to accommodate deposition scheduling; (ii) very few of the additional requested custodians possess unique, relevant knowledge that cannot be obtained from the 29 current custodians; (iii) Plaintiffs cannot seek to add every employee who appears as the "author" or "recipient" of a produced document, where Google is producing *tens of thousands* of documents from team shared drives (used by the existing custodians); and (iv) Plaintiffs' good cause arguments, which take a substantial amount of time to investigate (and, where necessary, explain factual errors in the analysis) already reveal a misapprehension as to the extent to which certain projects, teams, and codenames are relevant (and the extent to which such discovery requires custodial vs. non-custodial searches). A cap on custodians is necessary to make discovery proportional and reasonable. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | *Deadline for Adding Custodians and Terms.* The Court has already informed the parties that it will set a deadline "within *days or weeks, not months*, of the August 12 hearing" to add further custodians and terms. Dkt No. 209 (emphasis added). Consistent with that Order, the deadline should be August 27, 2021 -- not October 1. This date is crucial where (i) plaintiffs in both cases are already starting to notice depositions, which may require cross-case coordination on deposition dates and logistics for any overlapping custodians; (ii) custodial ESI requires time to collect and process before it can even be tested using search terms, so the sooner this final process begins, the sooner Google can test terms and generate hit counts (in the event of a dispute); (iii) the piecemeal testing of search terms and exporting ESI over months is time-consuming, inefficient, and burdensome, so an imminent deadline will ensure a more streamlined approach to testing terms and document review; and (iv) a final custodian list is needed so Google can complete (not begin) its production for new custodians at least two months before the fact discovery ends.<br><br>*Meet and Confer Efforts.* Google remains willing to meet and confer with Plaintiffs and provide hit count data, and thus it is unclear what Plaintiffs complain of. Plaintiffs requested search terms on July 16 and 27; Google provided hit report data on July 23 and August 2. As Google informed Plaintiffs, Google is testing the terms in Plaintiffs' Proposed Order against eight newly-added custodians, and expects to provide those counts this week. | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| P2 4/7/21 | **Google's search terms**: The parties have a dispute regarding which search terms Google should apply to identify potentially responsive documents. | <u>Plaintiffs' Statement</u>: Plaintiffs' proposed order includes the disputed search terms.  Based on the June 18 production, it is clear that Google employees routinely use code-words and codenames in connection with relevant internal projects, including for example "▮▮▮▮," "▮▮▮▮," "▮▮▮▮," and "▮▮▮▮▮." It is therefore unsurprising that these codenames return a higher hit count than more commonplace search terms. In addition, based on Plaintiffs' review of Google's productions, it has become evident that search terms such as "▮▮▮," "▮▮▮," and "▮▮," are clearly relevant to understanding how Google can identify unauthenticated users, which is critical to class certification. Google should run those additional searches and produce any additional documents not later than September 10.  Plaintiffs repeatedly requested hit counts, and the assertions below are the first time Google has provided any.  Google's ongoing delay with all meet and confer efforts—including providing hit counts for the first time today—makes further delay prejudicial.  Given the importance of these additional searches and the important issues at stake in this litigation, this is a reasonable number of additional documents.  Plaintiffs will nonetheless attempt to further negotiate with Google over the next ten days and then update the Court on August 12.<br><br><u>Google's Position</u>: *Breadth of the Newly Proposed Terms.* Plaintiffs proposed new or supplemental terms for *every single custodian in this case*, which if accepted, would require the review of over one million previously-unreviewed documents. Virtually all of these proposed | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | terms are inconsistent with the narrowing that the Court has already ordered in response to similar disputed terms (e.g., <████>). *See* Dkt. 148 (denying Plaintiffs' request for terms like <████> that "require[] further limitation" and ordering the "parties to meet and confer").<br><br>Even after being reminded of the Court's ruling, Plaintiffs refused to narrow standalone terms like (i) <███ OR '█████">, which pulls in over 250,000 additional documents alone, and (ii) <██* OR ████ OR cookie*>, which pulls in over 350,000 additional documents—each more than the term <Incognito> itself. Plaintiffs' other terms (e.g., <unauth*>, <████>, <████>, and <████>) fare little better. Plaintiffs should be ordered to propose limitations to these terms—not force Google to guess as to such narrowing, particularly where (as explained in the next section) Google fundamentally disagrees as to propriety of running certain terms for certain custodians in the first instance.<br><br>*Relevance of the Proposed Terms.* Google is also concerned that Plaintiffs have proposed a number of facially irrelevant terms like <██*>, referring to the ████ cookie, for Ads custodians or <████>, which relates to Chrome metrics, for Analytics custodians. This is also driving up the hit counts and exacerbating the burden of this review. Google should not be required to apply terms that do not apply to the specific custodians whose documents Google is searching. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | *Additional Terms for the Google-Selected Custodians.* The nearly 20 new terms proposed for these custodians alone would require the review of nearly 470,000 additional documents.   A supplemental review of this size is not proportionate, particularly where Google has already produced thousands of documents for these custodians, and where many disputed terms are likely to pull in many non-responsive documents. Plaintiffs should be ordered to meet and confer as to the relevance and scope of these terms before the Court takes up their premature Proposed Order.<br><br>*Additional   Search   Terms   for   the   Court-Ordered Custodians.*   In disregard of the April 13, 2021 Order limiting these custodians to "10 identical search terms" and setting a deadline of April 23, 2021 for their identification (Dkt. No. 133-1), Plaintiffs proposed 11 new terms for Google to run against their ESI.  The request comes nearly three months after the deadline and contradicts their prior representation to this Court and Google that they "anticipate proposing additional searches but not exceeding ten" (*id.*).<br><br>Now, not only do Plaintiffs seek even more terms, but the terms themselves fail to heed the Court's prior guidance on breadth, scope, and burden.  Asking Google to review an additional 70,000 documents for these custodians alone, without   regard   for   relevance   or   breadth,   is   not proportionate, particularly where Google has already produced thousands of documents for these custodians, and many of the new terms suffer from the same gating relevance concerns.  Again, Plaintiffs should be ordered to | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | meet and confer on these disputed terms before prematurely submitting a Proposed Order for the Court to take action on. | |
| P3 4/7/21 | **Google's production of Plaintiffs' data**: The parties have a dispute regarding Plaintiffs' RFP No. 18: "Documents concerning Plaintiffs, including Plaintiffs' use of Google services, all data collected by Google from and regarding Plaintiffs, and Google's use of all data collected by Google from and regarding Plaintiffs." | <u>Joint Position</u>:  Pursuant to this Court's June 8 Order (Dkt. 191-1), the Parties submitted briefing on this dispute (Dkt. Nos. 199, 210).<br><br>The Court did not refer this dispute to Special Master Brush (*see* Dkt. 221), and the parties ask the Court for clarification on whether the Court intends to rule on Plaintiffs' motion or whether the Court intends to also refer P3 to the Special Master. | |
| P4 4/7/21 | **Google server logs**:  The parties have a dispute regarding preservation and production of Google server logs regarding Google's collection and use of private browsing information. | <u>Plaintiffs' Position</u>:  Plaintiffs believe Google is still not preserving relevant logs, including logs never identified by Google and not at issue in *Calhoun*.  Google has yet to even provide basic information regarding the logs at issue and the data parameters for what any identified logs actually collect.  Google has refused to respond to discovery or meet and confer efforts on what the logs specifically store from Incognito browsing, and what logs reflect Google's storage and use of that data.  Further, Google still refuses to explain how each of these logged processes interact with each other.<br><br>Plaintiffs sent Google multiple meet-and-confer correspondence, but Google refuses to produce relevant and responsive data.  For example, Google's internal documents | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | demonstrate that ███████████████, and Google has detailed instructions for its own employees to ████████████████████████, and yet Google refuses to produce the ████ data. *See* GOOG-BRWN-00027227. Google's latest claim that ████ cannot track private browsing users is directly contravened by its own internal documents, and even if URLs are not transmitted with ████ logs, it does not mean Incognito *use* is not captured in those ████ logs—it only narrows the *scope* of the information. Given what the documents say, Google's claim should be tested through discovery. And in fact, opposing counsel admitted for the first time on August 2 that if certain parameters called '████████' were pulled from Plaintiffs' browsers, Google can pull the associated ████ data for each of the Plaintiffs. In the prior months, Google completely refused to discuss such details, even regarding Plaintiffs' data.<br><br>Plaintiffs believe it would be appropriate to also refer this dispute to the Special Master. In connection with the other disputes referred to the Special Master, Google will need to provide this basic information—identifying the logs and data sources tied to Google's collection, storage, and use of private browsing information. Based on those efforts, with the Special Master, the parties and the Special Master may be able to provide additional information to the Court that is relevant in terms of Google's preservation and production obligations.<br><br>Google's Position:    Through    meet    and    confer correspondence, Plaintiffs have posed new requests to | |

Case No. 5:20-cv-03664-LHK-SVK
JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | Google to produce specific types of data. Google responded explaining that ███ does not have any URL information and therefore cannot track private browsing activity. But Google also communicated that it is willing to work with Plaintiffs. The parties are therefore not at an impasse on the new requests, and the dispute should not be referred to the Special Master. As for Plaintiffs' prior requests, Google's log preservation was already the subject of extensive briefing resulting in this Court's order that Google "need not suspend its standard retention periods." *Calhoun et al. v. Google LLC*, No. 5:20-cv-5146, Dkt. 174. Because this Court already explained that the ruling on log preservation in *Calhoun* would apply equally to the same logs in *Brown* (*see* Dkt. 147-1 at 1)—this dispute should be moot. Plaintiffs' attempt to get a second bite at the apple through the Special Master should be rejected. | |
| P5 4/7/21 | **Google's preservation of custodial ESI**:  The parties have a dispute regarding the extent to which the Court's ESI Order (Dkt. 91) requires Google to preserve custodial ESI back to June 1, 2008. | <u>Joint Statement</u>:  There is no dispute at this time. | |
| P6 4/7/21 | **Class member identification**: The parties have a dispute regarding Plaintiffs' RFP No. 10: "Documents sufficient to identify all alleged class members, including all electronic or physical address | <u>Joint Statement</u>:  The Court referred this dispute to Special Master Brush (Dkt. 221).  The parties provided materials to Special Master Brush and conducted their first conference with Special Master Brush on July 30. | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | information associated with alleged class members." | | |
| P7 4/7/21 | **Logged in and logged out**: The parties have a dispute regarding what constitutes logged in and logged out behavior. | Joint Statement:  The Court referred this dispute to Special Master Brush (Dkt. 221).  The parties provided materials to Special Master Brush and conducted their first conference with Special Master Brush on July 30. | |
| P8 4/7/21 | **Plaintiffs' Consulting Experts**: The parties may have a dispute regarding Plaintiffs' ability to show protective order materials to their retained experts. | Plaintiffs' Position:  Plaintiffs retained two damages experts, whom Google approved to access materials designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  Google objected to these experts accessing materials designated "HIGHLY CONFIDENTIAL – SOURCE CODE," such that some but not all of Plaintiffs' experts would be permitted to review such materials.  Seeking to resolve this issue without Court intervention, Plaintiffs asked Google to clarify that the two damages experts may nonetheless speak with Plaintiffs' counsel and other experts about materials designated "HIGHLY CONFIDENTIAL – SOURCE CODE" (provided they are not given direct access to those materials).  Google refused.  There is no basis for Google to completely wall-off Plaintiffs' damages experts from anything that the technical experts uncover during source code review, and to limit their communications.  Plaintiffs' counsel and experts (like Google's experts) must be permitted to speak openly with one another without fear of touching upon something that only some experts are permitted to know.  Plaintiffs ask that the Court order Google to agree to this compromise position, with Plaintiffs reserving the right to | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | at a later date (if appropriate) seek permission for these damages experts (and others) to review such materials.<br><br>Google's Position: This dispute is not ripe. Since no source code has been produced, this request is premature. If and when Google produces any proprietary source code, the parties should meet and confer regarding whether, and if so to what degree, certain of Plaintiffs' experts should be permitted to review and or share information about that code. | |
| P9<br>4/23/21 | **Google production of custodial documents responsive to particular requests**: The parties have a dispute regarding whether Google will produce custodial documents responsive to certain document requests. | Plaintiffs' Position: The parties have one remaining dispute tied to these requests. Plaintiffs sent an email on June 4, with a proposal that would resolve this dispute. Google still has not stated its position. Plaintiffs are hopeful that the parties can resolve this dispute before August 12.<br><br>Google's Position:   Through months of meeting and conferring, the parties have resolved all but one request regarding P9. Plaintiffs' did not make a proposal on June 4 to resolve the remaining issue; Plaintiffs merely referenced a May 21 proposal made by the Plaintiffs, which Google had already rejected. Google is willing to continue meeting and conferring on this issue and is hopeful that the remaining dispute can be resolved prior to August 12. | |
| P10<br>4/23/21 | **Google timeline for producing custodial documents**: The parties have a dispute regarding the timeline for Google's production of custodial documents. | Plaintiffs' Position:   Plaintiffs ask that the Court order Google to substantially complete production of all additional custodial documents by September 10. This is necessary so that Plaintiffs can review those documents and prepare for depositions. This is also necessary given that Google produced still more documents for the initial 17 custodians (including redacted documents) on July 31, | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | which Plaintiffs are currently reviewing. Further delay will prejudice Plaintiffs, and there is no reason one of the largest companies in the world, represented by one of the largest law firms in the world, cannot meet this production date in order to complete discovery in accordance with the Court's deadlines. The short turnaround is due only to Google ongoing efforts to delay any resolution of these issues. Plaintiffs will continue to discuss this issue with Google over the next ten days to see whether the parties can make further progress.<br><br>Google's Position: Google substantially completed its production for the 17 original and Court-ordered custodians on June 18, 2021. As discussed with Plaintiffs, Google served its initial privilege log on July 23. As discussed *infra* at P19, Google informed Plaintiffs that it would follow up with the production of redacted documents, which was completed on July 31, Google expects to serve a supplemental privilege log on August 13, 2021.<br><br>Since its first substantial completion, Google added 12 custodians, yielding 29 total current custodians. It is unfortunate that Plaintiffs failed to consult with Google before unilaterally seeking a production deadline of September 10, 2021 for such documents, but that turnaround is untenable for practical reasons, including:<br><br>*First*, the parties must first negotiate hit counts for the disputed terms referenced in P2. Plaintiffs' Proposed Order sidesteps that process. If Plaintiffs refuse to narrow these terms, which hit on roughly a million unreviewed | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | documents, a briefing schedule may be necessary—making a September 10, 2021 deadline unrealistic.<br><br>*Second*, Plaintiffs cannot have it both ways: if they want a swift turnaround, the scope of their terms must be commensurate with that reality. As the parties learned during the first substantial completion sprint, document review not only consists of collecting and reviewing ESI, but reviewing for redactions, imaging documents, and engaging in an email thread-conforming exercise. Even with additional reviewers, this process requires more than five weeks to complete.<br><br>Given the uncertainty of the review's size, Google cannot project a date certain for its substantial completion. Nevertheless, to ensure discovery continues to proceed apace, Google will review and produce responsive, non-privileged documents for the several dozens of new, *undisputed* terms. Google hopes the parties can narrow the disputed terms and report at the hearing a reasonable deadline commensurate with a reduced, proportionate review size. | |
| P11<br>4/23/21 | **Google's production of executive documents**: The parties have a dispute regarding Google's production of documents responsive to RFP No. 13: "Handouts and presentations to or from any Google C-level executive or board member and committee or | <u>Plaintiffs' Position</u>: Google unilaterally insisted on limiting production in response to RFP No. 13 to Board-level documents, without collecting or reviewing the requested "Google C-level executive" documents. Google collected, reviewed, and produced certain executive-level documents in *Calhoun*, using certain search terms. *See Calhoun*, Dkt. 181-1 (issue 1.8). Plaintiffs ask that the Court order Google to conduct a similar search of executive-level documents in this case, using the search | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | board meeting minutes discussing any private browsing mode, including Incognito mode." | terms that Google already agreed to for the Board-level documents. There is very little burden on Google in doing so, and there is no basis for Google to withhold these relevant executive level documents. While Plaintiffs believe it would be a waste of time to serve another document request "directed to documents authored/received" by an officer/director of Google" such that there is a complete overlap with the *Calhoun* request, and those documents, Plaintiffs will do so if the Court prefers that approach. Plaintiffs will continue to meet and confer with Google and update the Court on August 12.<br><br>Google's Position: This dispute is not ripe. Plaintiffs' RFP No. 13 seeks "[h]andouts and presentations to or from any Google C-level executive or board member and committee or board meeting minutes discussing any private browsing mode, including Incognito mode." Google produced the responsive Board documents on May 26. At a meet and confer on May 18, Plaintiffs asked that Google identify any central repository of C-level executives' meeting materials and made clear that they were only seeking non-custodial documents. Google then investigated internally and informed Plaintiffs on June 21 that there is no non-custodial repository for the requested documents. Plaintiffs remained silent on this issue until a meet and confer on July 27, 2021, where Plaintiffs requested for the first time that Google conduct a search similar to that in *Calhoun*. Plaintiffs' request is unreasonable. The *Calhoun* RFP, as modified by the Court, is "directed to documents authored/received by an officer/director of Google," Dkt. 173-1. By contrast, the RFP at issue here concerns only | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | non-custodial C-level executives' meeting materials; Google has not located any such documents following a reasonable search. | |
| P12 4/23/21 | **Google production of other non-custodial documents**: The parties have a dispute regarding whether Google will produce non-custodial documents responsive to certain document requests. | Plaintiffs' Position:  The parties set forth their respective positions on the disputed RFPs in Chart B, below.  The disputes regarding the RFPs listed in Chart B are ripe for resolution.   These are issues that Plaintiffs raised in December 2020, with Google dragging its feet for months on these disputed RFPs.  In addition, Plaintiffs ask that the Court set a September 3 deadline for Google to substantially complete production of non-custodial documents.  The requested documents are important for depositions Plaintiffs plan to take this fall and expert analysis, and there is no basis for any further delay with Google's productions.<br><br>Google's Position:  This dispute is not ripe.  Plaintiffs only suggested September 3 as a substantial completion date for the RFPs listed in Chart B for the first time on July 29. Prior to July 29, Google participated in good faith in numerous meet and confer video conferences and exchanged numerous letters with Plaintiffs about these issues.  Through these efforts, the parties were able to resolve a large number of disputes originally raised by the Plaintiffs.  And, as detailed below, the parties continue to meet and confer regarding some of these RFPs listed in Chart B. Depending on the scope of documents that Google ultimately produces, Google may need more time to search for, review and produce non-custodial documents.  Google has already collected and produced non-custodial documents and continues to do so.  There is no urgency for | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | a deadline to be set for the completion of the production of non-custodial documents.  Google proposes that any deadline for production, if imposed, be decided upon after the full scope of Google's document production is known. | |
| P13 4/23/21 | **Google's responses to Plaintiffs' Interrogatories**: The parties have a dispute regarding Google's responses to Plaintiffs' interrogatories. | <u>Joint Statement re: Interrogatory Counting</u>:  The parties have agreed that Plaintiffs' first seven interrogatories will count as nine interrogatories towards their 25-interrogatory limit.<br><br><u>Plaintiffs' Position</u>:  The parties have disputes that are ripe for resolution concerning (1) Plaintiffs' Interrogatory No. 5, and (2) Plaintiffs' Interrogatory No. 9.<br><br>*Interrogatory No. 5*:  This interrogatory asks Google to identify public disclosures in which a website that uses a Google third-party service informs users that users' information will be collected notwithstanding the users' browser settings.  On April 30, the Court ordered Google to respond to this interrogatory by May 12.  Dkt. 147-1.  Google failed to do so, responding only with objections (primarily "burden").  Plaintiffs offered to limit the scope of this interrogatory to the top-25 visited websites for each of Google Analytics and Google Ad Manager only to account for Google's burden objection, but Google still refuses to respond.  If Google believes that the answer to Plaintiffs' compromise proposal is "none," then that is how Google should respond to the interrogatory.  The parties' dispute about Interrogatory No. 5 is ripe and is presented in Chart B. | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | *Interrogatory No. 9*: This interrogatory asks Google to explain "why this case should not be certified as a class action." Google has refused to respond. This interrogatory is based on and consistent with Your Honor's decision in *Garza v. Brinderson Constructors, Inc.*, which ordered a response to the same interrogatory. *See* No. 15-CV-05742-EJD-SVK, 2017 WL 2861128, at *2 (N.D. Cal. July 5, 2017) (rejecting defendant's argument that interrogatory asking defendant to "explain why this case should not be certified as a class action" was premature and ordering supplemental response).  In that case, the close of fact discovery was only four months away. *Id.* The close of fact discovery in this case is only three months away, even less than in *Garza*.<br><br>Google cites *Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009), out of context.  That case did not involve an interrogatory request like the one here, which this Court has previously found appropriate.  Rather, *Mazur* involved the mere recitation of the burden of proof standard in a motion for class certification. *Id.* at 566.  Google's burden argument is therefore irrelevant.<br><br>Further, after Plaintiffs served this interrogatory, Google served its own interrogatory asking Plaintiffs to explain why the case should be certified.  Google then requested a two-week extension for its own interrogatory response, and Plaintiffs agreed.  Plaintiffs substantively responded to Google's interrogatory, but Google has refused to respond to Plaintiffs' interrogatory.  Contrary to Google's assertions, Plaintiffs' response is adequate, and Plaintiffs | |

Case No. 5:20-cv-03664-LHK-SVK

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | responded to the extent they could. Google should do the same. Google can—at a minimum—set forth its anticipated arguments in opposition to class certification. That's precisely what this Court ordered the defendant to do in *Garza*. *Garza*, 2017 WL 2861128, at \*2. This dispute is ripe, and is presented in Chart B.<br><br>Google's Position:<br><br>*Interrogatory No. 5*: This dispute is not ripe. Google responded to this interrogatory on May 12 in accordance with the Court's order and the parties met and conferred on this issue on July 27, 2021, where Google informed Plaintiffs that it was still investigating if and how it could provide Plaintiffs most their proposal of the top-25 most visited websites that used Google Analytics and Google Ad Manager. Google informed Plaintiffs on August 1 of its counter-proposal that addresses Plaintiffs' compromise based on the information it retains in the ordinary course, which Plaintiffs rejected on the day of filing. Google maintains its objections that public disclosures of such websites are equally burdensome for Google as it is for Plaintiffs but will continue to work with Plaintiffs to resolve this dispute.<br><br>*Interrogatory No. 9*: This contention interrogatory is improper and entirely premature at this stage of the litigation. Rule 23 places the burden on Plaintiffs to demonstrate why the case should be certified as a class action. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 566 (N.D. Cal. 2009) ("The party seeking class certification bears the | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | burden of establishing that the requirements of Rule 23(a) and (b) have been met."). It is not Google's burden to demonstrate why the case should not be certified as a class action--particularly at this early stage, before any plaintiffs have been deposed or expert discovery conducted. Moreover, Plaintiffs' assertion that they "responded substantively" when Google served a similar interrogatory in an attempt to shift the burden of demonstrating whether the class should be certified back where it belongs--on Plaintiffs--is incorrect. Plaintiffs offered nothing of substance and cited no evidence. They merely provided essentially the same, conclusory allegations stated in their complaint regarding how Google's alleged conduct and disclosures are uniform and then conclusorily asserted that each of the elements of Rule 23 is satisfied. Plaintiffs' boilerplate response to Google's interrogatory does not entitle them to a sneak peek into Google's work product regarding class certification.<br><br>Moreover, even if the Court were to order Google to respond to Interrogatory No. 9, the Court should not do so now. As the Court noted in *Garza*, "[c]ourts have discretion to 'order that the [contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *Garza v. Brinderson Constructors, Inc.*, 2017 WL 2861128, at *2 (N.D. Cal. July 5, 2017) (citing Fed. R. Civ. Proc. 33(a)(2)). Courts applying Rule 33(a)(2) "tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *1 | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | (N.D. Cal. Dec. 11, 2008). Here, Google has not completed discovery or investigation of facts related to this matter. Notably, Google has not deposed any of the named Plaintiffs yet. Nor has any expert discovery relevant to class certification been conducted. Furthermore, unlike *Garza* where the class certification briefing was due within approximately three months of the date of the order, here briefing for class certification is not set to begin until February 14, 2020. Dkt. 171.  For these reasons, the interrogatory is improper and premature. | |
| P14 5/26/21 | **Access to non-public Google source code**: The parties have a dispute regarding Plaintiffs' requests for access to non-public Google source code. | Plaintiffs' Position:  Plaintiffs requested production of source code in October 2020, and Google has yet to produce any. Plaintiffs ask that the Court order Google to, no later than August 31, make available source code relevant to Google's mapping of logged-out browsing activity with device and publisher identifiers, including source code showing how Google tracks users across websites and devices for advertisement conversions and general user measurement. This source code is relevant to Plaintiffs' allegations that Google profits from its collection of private browsing data insofar as Google can charge clients more for its targeted advertising services. SAC ¶¶ 91-93, 115. Plaintiffs raised this issue by letter on June 30, the parties have met and conferred, and this issue is ripe for a decision by the Court. We are three months from the close of discovery, and Google still refuses to produce source code. "There is . . . no source code exception to the production requirements of Fed. R. Civ. P. 34." *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *1 (N.D. Cal. May 4, 2012); *see also* | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | *Forterra Sys., Inc. v. Avatar Factory*, 2006 WL 2458804, at *1 (N.D. Cal. Aug. 22, 2006) (explaining that source code should be produced to the extent it is discoverable under the Federal Rules). Source code inspection is critical to obtaining a detailed and exhaustive understanding of how these Google functionalities are implemented and operate, including particular and relevant design choices made by Google software engineers that may not show up in documents. Relatedly, documents may not capture how the functionalities evolve over time. Source code does. Finally, Google is defending on the ground that its tracking systems do not function as Plaintiffs claim. Plaintiffs should be permitted to examine the source code to test Google's assertions. This dispute is ripe, and Plaintiffs' experts are already concerned that there will not be enough time to finish source code review by the November 2 deadline for the close of fact discovery. Plaintiffs therefore include a proposed order for this dispute. <br><br> Google's Position: This issue is not ripe. Plaintiffs' source code proposal has been a moving target; the proposal in this submission is now Plaintiffs' *fourth* proposal in three months. This new proposal requests source code related to "general user measurement" and now broadens its request from " ▮ and Chrome tracking systems," which they requested for the first time in the July 21, 2021 Joint CMC Statement (Dkt. 224 at 13), to tracking systems generally. Google has not had adequate time to provide its response, much less meet and confer, on Plaintiffs' new proposal. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
|  |  | A party must justify a request for non-public source code by establishing that the source code is both relevant and necessary in a litigation. Plaintiffs have done neither. *See, e.g.*, *In re Apple and AT&T Antitrust Litig.*, 2010 WL 1240295, at *2, *3 (N.D. Cal. Mar. 26, 2010) (rejecting plaintiffs' request for source code discovery because "Plaintiffs only speculate that the . . . source code may be relevant" and therefore "have not met their burden and have not established that the . . . source code sought is relevant and necessary") (emphasis added); *see also 3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 111-12 (2019) (denying a motion to compel source code after finding that plaintiffs have neither "demonstrated with any specificity that they require access to defendants' source code" nor "properly explained why existing discovery, such as manuals, technical documents, and other non-source code information, is insufficient for them" to support their allegations); *Campbell v. Facebook Inc.*, 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2016) (denying plaintiffs' motion to compel inspection of Facebook's "highly proprietary source code," finding it "unreasonable and disproportionate in light of the narrow issues . . . in the case"); *Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483, 491 (D.P.R. 2011) (denying request for production of source code after determining that the source code's relevance was "questionable" and "even if relevant, compelling disclosure of the [s]ource [c]ode . . . would be unnecessary and would merely burden defendants without commensurate benefit"); *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 260-61 (S.D.N.Y. 2008) (finding that "speculative" reasons for inspecting confidential source |  |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | code, i.e., an "undisputed trade secret," that was the product of "50,000 man hours of engineering time and millions of dollars of research and development costs" was insufficient).<br><br>The opinions Plaintiffs cite were rendered in patent cases, where the source code was at the heart of the matter.  Even so, they undercut Plaintiffs' claim that they are entitled to Google's highly confidential and proprietary source code. *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *1 (N.D. Cal. May 4, 2012) (even in patent infringement cases, source code is still "subject to the proportionality and burden considerations imposed by Fed.R.Civ.P. 26"); *Forterra Sys., Inc. v. Avatar Factory*, 2006 WL 2458804, at *1, *2 (N.D. Cal. Aug. 22, 2006) (determining that "source code is at the heart of the dispute" of that patent infringement case and that the Patent Local Rules 3-1(c) and 3-4(a) "require[] the source code for the aspects or elements of the accused product identified by the preliminary invalidity contentions").  They do not control here.<br><br>As Google explained in its portion of the CMC statement (Dkt. 224 at 13-15), Plaintiffs' ever-changing source code requests belie their relevance or necessity. Google has already produced public source code, over 423,000 pages of documents, and deposition testimonies that provide the information Plaintiffs seek.  Plaintiffs confirm they have received responsive information to their proposal here through at least Google's documents and deposition testimony in Sections VIII(C) and VIII(F)(d) of the CMC | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | Statement (Dkt. 224). Plaintiffs are not entitled to "a *detailed and exhaustive* understanding of how these Google functionalities are implemented and operate," "design choices made by Google software engineers that may not show up in documents," or "how the functionalities evolve over time." This fishing expedition goes beyond what is necessary and proportional in this case.<br><br>Google will revise its draft letter (again) to respond to Plaintiffs' fourth source code proposal and is willing to continue to meet and confer with Plaintiffs on this issue. | |
| P15<br>5/26/21 | **Cross-use**: The parties have a dispute regarding cross-use of discovery between *Brown* and *Calhoun*. | Joint Statement: The parties were unable to resolve this dispute. They are now submitting competing proposed cross-use orders. The parties coordinated to brief this dispute only once, in the *Calhoun* submission. The parties incorporate by reference those arguments and their competing proposed orders. | |
| P16<br>5/26/21 | **X-Client Data**: The parties have a dispute regarding Plaintiffs' RFP 120: "Documents sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client Data Header." | Joint Statement: Pursuant to this Court's June 8 Order (Dkt. 191-1), the parties on July 9 submitted a joint letter brief (Dkt. 218). The Court referred this dispute to Special Master Brush (Dkt. 221). The parties provided materials to Special Master Brush and conducted their first conference with Special Master Brush on July 30. | |
| P17<br>8/2/21 | **Depositions**: The parties have a dispute about the timing and number of depositions. | Plaintiffs' Position: The parties have two ripe disputes: (1) the process for noticing and scheduling depositions; and (2) the number of depositions. | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | Plaintiffs seek to schedule and take depositions, but Google is dragging its feet and undermining Plaintiffs' ability to complete fact discovery in the remaining months. For example, Google waited until July 21 to provide dates for a 30(b)(6) deposition that Plaintiffs noticed on May 24, and Google's earliest proposed date is August 27. Plaintiffs also sent Google two deposition notices on July 5 and three more on July 9, yet Google has only offered a date for two of them, and not until August 19 and 31. Plaintiffs confirmed those dates, though how those proceed will of course depend on any rulings by the Court on August 12.

Plaintiffs ask that the Court order Google to (1) provide available dates within one week of receiving any deposition notice, and (2) offer dates within five weeks of any deposition notice. This is necessary to prevent further delay and obstruction, and to ensure that the parties can complete depositions in a timely manner.

Plaintiffs also ask that the Court increase the number of depositions to 40. There are already 29 custodians, and Plaintiffs seek additional custodians. Plaintiffs anticipate that more than 40 depositions will be needed in this case. This is unsurprising given the scope and complexity of this lawsuit, involving tens of millions of Americans and their devices. Google's position that 10 depositions is sufficient is unrealistic. In any event, Plaintiffs seek clarity now so that they can prioritize witnesses and begin noticing more depositions, particularly given Google's delay in providing dates for depositions. There is no time to defer this dispute until after Plaintiffs have taken close to 10 depositions. | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | Finally, Google's claim that Plaintiffs have not confirmed deposition dates for the few deponents Google's has offered is untrue. Plaintiffs have confirmed dates for all deponents for whom Google has provided dates.<br><br>Google's Position: Plaintiffs have taken two Rule 30(b)(6) depositions, and have had the benefit of an additional two transcripts from the *Calhoun* matter. Google also proposed dates for three more depositions in *Brown*, and are looking into the remaining three. And although Google has proposed dates for depositions for at least Messrs. Rakowski and Liao, Plaintiffs have not confirmed that they will take the depositions on the dates Google offered, instead demanding that Google's witnesses keep the dates open indefinitely. Indeed, Plaintiffs asked Google to hold those depositions dates it offered open while they "seek input from the Court on their disputes with the August 12 hearing," but notably fail to even identify this dispute as one of their top two disputes. Google is committed to producing witnesses in a timely manner, but Plaintiffs must likewise commit to proceed reasonably. Further, some of these depositions may fall under the joint deposition provision the parties are actively negotiating, which means that the parties have to coordinate across both cases.<br><br>Plaintiffs fail to justify their need for more than ten depositions. That there are more than ten custodians does not mean there needs to be more than ten individuals providing testimony. Further, Plaintiffs' attempt to get an *unlimited* number of Rule 30(b)(6) depositions is wrongheaded and burdensome. Given the nature of the | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | case--which involves Google's disclosures and practices relating to its receipt of data from private browsing users-- Plaintiffs conceivably could take all depositions under Rule 30(b)(6). As a compromise, Google offered that the *Brown* plaintiffs can take ten depositions (individual and Rule 30(b)(6)) in their case, and an additional five depositions jointly with the *Calhoun* Plaintiffs. The *Brown* Plaintiffs declined Google's offer. | |
| P18 8/2/21 | **Hyperlinked Documents**: The parties may have a dispute regarding Google's production and identification of hyperlinked documents. | <u>Plaintiffs' Position</u>: Based on Google's June 18 production, it appears that Google employees primarily use hyperlinks in their emails instead of attachments. As a result, although Google employees routinely share documents that might otherwise be included and produced as attachments, Google is either not producing these hyperlinks or producing them separately, without identifying which hyperlink refers to which document. In essence, Google is either producing emails without their attachments or without identifying the attachments.<br><br>Consistent with Your Honor's directions in *Calhoun*, Plaintiffs have been identifying for Google a select number of hyperlinks, asking that Google either identify the corresponding documents by production number or that Google produce and identify the document. It is not enough for Google to just produce the document, because it is otherwise not clear which document corresponds to which link.  Plaintiffs have so far sent Google five letters regarding these links, dated June 4, June 29, two dated July 15, and July 27. | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | Google is both dragging its feet in responding and failing to provide the requested information.  It is not enough for Google to just produce those documents, separately.  For depositions, Plaintiffs need to know which document is the linked document.  For example, Google produced one document prepared for Mr. Pichai that ███████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████  –  with the underlined "<u>here</u>" representing a hyperlink to another Google document.  It is not enough for Google to just produce that document; Plaintiffs need to know what document is being referenced for Mr. Pichai.<br><br>Plaintiffs ask that the Court order Google to produce and identify requested hyperlinks on a rolling basis not later than two weeks after requested, with Google permitted to seek a protective order to the extent it believes that Plaintiffs' demands are unreasonable.   Locating and producing very small subsets of discrete documents should not take as long as it is taking, and Google needs to identify those linked documents for upcoming depositions.  To date, of the 64 hyperlinks Plaintiffs provided, Google has identified just *two* of the responsive documents on July 22.  In that July 22 production, additional responsive documents were produced but not identified by Google.  Plaintiffs continue to undertake what is an unreasonable burden of reviewing documents and guessing whether they correspond to hyperlinked documents.  Google is in the best position to identify the documents and should do so moving forward.<br><br><u>Google's Position</u>:  This dispute is not ripe.  As an initial matter, Plaintiffs' representation that it only became apparent "that Google employees primarily use hyperlinks | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | in their emails instead of attachments" from Google's June 18, 2021 production does not appear to be accurate based on Plaintiffs' focus on specific metadata related to Google's hyperlinked documents, including parent-child relationships, during ESI protocol negotiations in the fall of 2020 combined with their June 4, 2021 hyperlink request and their professed awareness of *Calhoun*'s April 30 request for 900+ hyperlinks and the Court's subsequent order that *Calhoun* Plaintiffs can only identify 40 hyperlinks (*Calhoun*, Dkt. 220-1 at 1).<br><br>Plaintiffs have served five discrete requests for hyperlinked documents, for a total of 64 hyperlinks. With no complaint from Plaintiffs, Google has already responded to the first two requests and has not only been identifying the productions specific to Plaintiffs' hyperlinked requests, but has informed Plaintiffs, per their request, which hyperlinked documents were previously produced and their corresponding Bates numbers. During the parties' July 27 meet and confer, Plaintiffs raised no issues with Google's past two productions or identification of hyperlinked documents. It is unclear what additional information Plaintiffs are seeking with respect to hyperlinked documents outside of what they have previously requested in their hyperlink request letters but Google is willing to work with Plaintiffs to provide any additional, reasonable information.<br><br>Google only received the remaining three hyperlink requests in the last two weeks. Google is reviewing and plans to respond shortly but it is burdensome for Google to | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | separately investigate and pull these hyperlinked documents for review, especially in a piecemeal manner. In addition, Google only learned of Plaintiffs' request for a two-week turn-around time to produce requested hyperlinked documents for the first time in Plaintiffs' position statement above, which further demonstrates that the parties are not at an impasse.  Plaintiffs' request that Google bear the burden of seeking a protective order if their informal demands for document production become unreasonable is a subversion of the rules. | |
| P19 8/2/21 | **Google's Privilege Log and Production**: The parties have a dispute about various entries on Google's privilege log and redactions. | <u>Plaintiffs' Position</u>: For the first 17 custodians, Google provided its first privilege log on July 23.  Google will provide another privilege log on August 13.  Plaintiffs are reviewing Google's privilege logs, and Plaintiffs have already identified a number of deficiencies.  For example, Google appears to have withheld in their entirety a number of communications that do not include any attorneys, and which at most should have been produced with redactions.  Plaintiffs are preparing a letter to Google identifying these deficiencies.<br><br>This dispute is not yet ripe for resolution.<br><br><u>Google's Position</u>:  This dispute is not ripe.  During a meet and confer on July 27, 2021, Plaintiffs raised for the first time that they intend to challenge certain unidentified entries on Google's July 23 privilege log (for the documents that Google has withheld on the basis of privilege).  Because Plaintiffs have failed to identify any specific log entries for discussion, Google agrees that this dispute is at best premature.  Nevertheless, Google will serve a privilege | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | log for the documents that it has redacted on the basis of privilege on August 13, 2021. For both logs, Google is and remains prepared to promptly investigate any such issues (once identified) and meet and confer with Plaintiffs in the hopes that any issues can be resolved without Court intervention. | |
| P20<br>8/2/21 | **Google's Affirmative Defenses**: The parties have a dispute about Google's (potential) assertion of affirmative defenses. | <u>Plaintiffs' Position</u>: Plaintiffs ask the Court to order Google to identify any affirmative defenses it plans to raise to Counts 1 through 5 of the Second Amended Complaint. Plaintiffs are concerned about the timing for Google's assertion of affirmative defenses. Google has moved to dismiss only Counts 6 and 7 of the Second Amended Complaint, yet Google did not file an Answer to Counts 1 through 5. Google appears to be planning to wait until after the Court decides the motion to file its Answer and assert any defenses. But the hearing has been scheduled for September 30, and the close of fact discovery is November 2. As such, there is a chance that Google will file its Answer after the fact discovery cutoff. Plaintiffs accordingly asked Google to identify any affirmative defenses that it plans to raise in connection with Counts 1 through 5, so that Plaintiffs may begin those discovery efforts. Google refused.<br><br><u>Google's Position</u>: Plaintiffs demand that Google provide its affirmative defenses before the pleadings are settled. This is improper and finds no support in law or logic. In exchange for agreeing that Plaintiffs may file their Second Amended Complaint, the Parties agreed that "Google shall file its Answer 30 days after the Court's ruling on the motion to dismiss." Dkt. 138 at 2-3. The Court so-ordered | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | the stipulation on April 15, 2021.  Dkt. 138.  Plaintiffs' request is therefore improper and should be denied.  If the Court is considering entertaining Plaintiffs' request, Google respectfully seeks formal briefing. | |
| P21 8/2/21 | **Mr. Pichai's ESI**:  The parties have a dispute about the temporal scope of productions for Mr. Sundar Pichai. | Plaintiffs' Position: Plaintiffs requested that Google produce additional custodial documents for Mr. Pichai, adding the period February 1, 2015 through the present with specified searches.  The Court previously ordered production of Mr. Pichai's documents only through the end of 2010. Dkt. 133-1. The Court, however, made clear that "if the Plaintiffs, through these productions, are able to have additional documents that point to his continued involvement that is not duplicative of others' involvement, you may come back to me for that request."  April 13, 2021 Discovery Hearing Tr. at 41:6-15.  Plaintiffs identified such documents for Google.  Google has not yet responded to Plaintiffs' proposal.  Google's Position:  As Plaintiffs' statement reveals, this issue is not ripe for resolution.  Had Plaintiffs waited for Google to respond to its July 22, 2021 letter, on which the parties have not yet met and conferred, they would have learned that (i) Google vigorously disputes their speculation that Mr. Pichai "should have highly relevant documents" and "likely has documents that are unavailable through other custodians," which in any event is a far cry from satisfying the apex standard that applies to Mr. Pichai as Google's CEO; and (ii) many of the search terms (including factually irrelevant codenames) in Plaintiffs' Proposed Order are either overbroad or have absolutely no bearing on the claims or defenses, making | |

Case No. 5:20-cv-03664-LHK-SVK

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | them disproportionate to the needs of this case and burdensome.   Plaintiffs' attempted end-run around the meet and confer process should be rejected and their Proposed Order compelling further production denied.  If the Court is inclined to entertain this dispute, Google respectfully seeks an opportunity to brief this issue. | |
| **Disputes Identified by Google** | | | |
| D3 | Google's Request for Production No. 2 | Google's Statement:  In the May 26, 2021 joint submission to the Court, Plaintiffs agreed to "inform Google by June 1, 2021, whether they will produce Chrome Device Settings." Dkt. 177 at 33. Plaintiffs failed to do so. Despite continued follow-up, Plaintiffs still have not indicated whether they will produce the settings.<br><br>In the parties' July 21, 2021 Joint Case Management Statement, Plaintiffs stated they were "concerned that Google's request encompasses highly sensitive and irrelevant data" and that "Google has not provided a basis" for the relevance of the request. This is simply untrue. Not only did Google explain the relevance in the parties' meet and confer, it has done so in writing--for example, in email correspondence on June 4, 2021, counsel for Google explained that the information is relevant because "users can make changes to their Chrome settings, which include options related to privacy, site settings, and cookies.  In addition to being relevant, the information is also responsive to RFP No. 2, which asks for all documents and communications related to Chrome and Chrome Incognito Mode." In the same email thread, counsel for Google also explained it was not seeking the sensitive user information | |

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | Plaintiffs were concerned about on the parties' meet and confer, stating, "[a]s noted previously, Plaintiffs are welcome to redact password and financial information to the extent it is reflected in any of the information requested." Plaintiffs indicated they were considering Google's proposal on June 11, but have not engaged further despite follow-up.<br><br>Plaintiffs' Statement: Plaintiffs oppose production of their Chrome Device Settings. Plaintiffs' Chrome Device Settings include highly sensitive and irrelevant information, including not only payment information but also detailed browsing history data Your Honor previously ruled should *not* be produced. Dkt. 147-1 at 3–4 (substantially limiting production of browsing data). As such, Google's request not only seeks irrelevant data but is a disguised and improper end run around the Court's prior order. Google's procedural complaints are also meritless. Plaintiffs met and conferred with Google on April 2, and Google agreed that any dispute under RFP No. 2 had been resolved. In the parties' April 23 submission, Google still had not raised what is now the current scope of Dispute D3. Dkt. 140 at 39. Google did not raise the current scope of Dispute D3 until weeks later, requesting full production of this highly sensitive data. During that meet and confer, Plaintiffs expressed their concern and stated their opposition to Google's request. Nevertheless, Plaintiffs offered to investigate Google's request, confirmed it encompassed highly sensitive and irrelevant data (including data Your Honor barred Google from seeking), conferred with Google numerous times, | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/12/21 Hearing |
|---|---|---|---|
| | | confirmed in writing to Google that their default Chrome settings have not changed, and again requested that Google explain the relevance of this onerous production request. Google still has not demonstrated how the Chrome Device Settings have any relevance. There is no "Incognito" menu or setting in those Chrome Device Settings. Also, Google has not explained how the Chrome Device Settings interact with, conflict with, or override the Incognito splash screen disclosures, such as whether and how browsing history, cookies and site data, and information entered into forms are changed while in Incognito mode because of changes made at the Chrome Device Settings level. Google's request for production of this data should therefore be denied, including as an improper and invasive intrusion of Plaintiffs' privacy in violation of the Court's prior order. If there are changes to specific settings that Google contends are relevant, as Google asserts above without specifying those settings, Google should seek discovery of those changes by way of interrogatories or in deposition. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| P12 8/2/21 | Plaintiffs' RFP 30: Documents concerning any changes to Google's controls regarding private browsing mode that were proposed or considered but not adopted by Google. | These documents are relevant both in terms of liability and Google's consent defense, demonstrating that Google could have made changes but intentionally continued collecting Incognito browsing data without disclosure or consent. For example, Google's June 18 production shows that Google considered changing the Incognito functionality of to address known misconceptions, such as limiting tracking, limiting server logging, and adding login field alerts. Google understood that changes to Incognito were necessary in light of Google's deficient disclosures and data collection without users' consent, and there is no basis for Google to withhold documents responsive to this request. Google agreed to produce custodial documents responsive to this request, and Google should also produce all | This dispute is not ripe. Despite several months of meeting and conferring, Plaintiffs have failed to properly describe what documents they are seeking, and Plaintiffs' current "examples" of responsive documents do not appear to be responsive to this RFP at all.<br><br>Plaintiffs did not define "controls" when it served its Second Set of RFPs. Google understands "controls" within the context of this RFP to relate to things such as Privacy and Security controls in Chrome, and logged-out ad setting controls. Any proposals for changes to such controls that were not ultimately adopted are unlikely to lead to the production of admissible evidence, and are not proportional to the needs of this case. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | | | | |
|---|---|---|---|---|
| **Chart B: Disputes re: Plaintiffs' Written Discovery** | | | | |
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | non-custodial documents responsive to this request. | On July 28, for the first time, Plaintiffs' draft position statement espoused the view that documents related to proposed changes in the Incognito icon, the Incognito name, or the Incognito splash screen would fall under this request. Google does not understand an icon or the name of a product to be a "control," and as such, these types of documents fall outside of the scope of this request.<br><br>Plaintiffs have now changed their position statement on the eve of filing to identify examples of "known misconceptions, such as limiting tracking, limiting server logging, and adding login field alerts." Google is willing to continue to meet and confer with Plaintiffs to determine whether the parties can come to an acceptable | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | | compromise with respect to this request. | |
| P12 8/2/21 | Plaintiffs' RFP 50: Documents sufficient to identify all websites and publishers that use Google Analytics. | Google on May 25 represented that it was working on a proposal to resolve this dispute. On July 27, Google informed Plaintiffs that it was still working on this proposal, and Google only made its proposal on August 1.

These documents are relevant and especially important given (1) Google's refusal to produce the data it collects in connection with private browsing communications with publishers that use Google Analytics and (2) Google's assertion of a publisher consent defense. Google is withholding documents relevant to the parties' claims and defenses.

Plaintiffs served this request in October 2020, and Google is still refusing to produce these | This dispute is not ripe because Google provided a proposal to Plaintiffs on August 1 and Plaintiffs have not yet responded to that proposal.

In addition, Plaintiffs' request is overly broad and not proportional to the needs of the case considering that millions of websites and publishers use Google Analytics, and Plaintiffs have not provided a reason that the identification of millions of third parties is relevant to the case, or likely to lead to admissible evidence.

Plaintiffs' proposal is unduly burdensome, and would require Google to not only identify millions of websites and publishers (which may | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | documents. Google's proposal to further delay any resolution threatens to prejudice Plaintiffs.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016) and only those websites for which Google collects data when putative class members visit in a private browsing mode, with the expectation that the data would include any changes during that period (e.g., if a publisher used Google Analytics for only portions of that time period, the data would identify those time periods). | require notice being sent to millions of third parties), but also a detailed report of any time periods since June 1, 2016 when the website or publisher did not use Google Analytics. Google's systems are not set up to provide information in this way. Any trivial amount of relevance this information may have is clearly outweighed by the significant time and expense that Google must expend to even determine if it can provide the information Plaintiffs seek.<br><br>Google proposed that it provide Plaintiffs with a list of the top 25 websites that use Google Analytics, in terms of website traffic (defined by the number of Client IDs per property on a given day), for one day per year from June 1, 2016 to the present, which Plaintiffs rejected on the day of filing. Google is | |

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | | investigating additional proposals. | |
| P12 8/2/21 | Plaintiffs' RFP 57: Documents sufficient to identify all websites and publishers that use Google Analytics UserID. | Google on May 25 represented that it was working on a proposal to resolve this dispute. On July 27, Google informed Plaintiffs that it was still working on the proposal, and Google only made its proposal on August 1. <br><br> This is relevant discovery tied to RFP 50, with Google Analytics UserID used to profile and track users, including in private browsing mode. SAC ¶¶ 63, 69, 81, 82, 93. <br><br> Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google's proposal to further delay any resolution threatens to prejudice Plaintiffs. <br><br> As a compromise, Plaintiffs propose limiting Google's | This dispute is not ripe because Google provided a proposal to Plaintiffs on August 1 and Plaintiffs have not yet responded to that proposal. <br><br> In addition, Plaintiffs' request is overly broad and not proportional to the needs of the case considering that millions of websites and publishers use Google Analytics, and Plaintiffs have not provided a reason that the identification of millions of third parties is relevant to the case, or likely to lead to admissible evidence. <br><br> Plaintiffs' proposal is unduly burdensome, and would require Google to not only identify millions of websites and publishers (which may require notice being sent to | |

| | | Chart B: Disputes re: Plaintiffs' Written Discovery | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | production to the class period (since June 1, 2016) and only those websites for which Google collects data when putative class members visit in a private browsing mode, with the expectation that the data would include any changes during that period (e.g., if a publisher used Google Analytics for only portions of that time period, the data would identify those time periods). | millions of third parties), but also a detailed report of any time periods since June 1, 2016 when the website or publisher did not use Google Analytics. Google's systems are not set up to provide information in this way. Any trivial amount of relevance this information may have is clearly outweighed by the significant time and expense that Google would need to expend to even determine if it can provide the information requested by Plaintiffs.<br><br>Google proposed that it provide Plaintiffs with a list of the top 25 websites that use Google Analytics, in terms of website traffic (defined by the number of Client IDs per property on a given day), for one day per year from June 1, 2016 to the present, which Plaintiffs rejected on the day of filing. Google is | |

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | | investigating additional proposals. | |
| P12 8/2/21 | Plaintiffs' RFP 64: Documents sufficient to show all ways in which Google uses data gathered through Google cookies, including data collected in connection with users' activity while in a private browsing mode. | Google on May 25 represented that it was working on a proposal to resolve this dispute. On July 27, Google represented that it was preparing a draft stipulation to resolve this request. Google has not yet provided this stipulation and Google only made its proposal on August 1.<br><br>These documents are relevant to Plaintiffs' claims (how Google uses data, for purposes of liability and damages) and also Google's consent defense (whether such uses have been disclosed).<br><br>Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google's proposal to further delay any resolution threatens to prejudice Plaintiffs. | Plaintiffs request for "technical documents sufficient to show, during the class period, how Google tracks individual consumers, their devices, and their locations," is overly broad and not tied to Plaintiffs' claims in this case. This case relates to Google Analytics and Google Ad Manager, but Plaintiffs seek documents related to all of Google's apps and services, including those, like Google Maps and many others, that are clearly outside of the scope of this case.<br><br>Google proposes that it produce non-privileged documents sufficient to show the requested information for Google Analytics and Google Ad Manager. Plaintiffs' demand that Google produce documents related to all of its services and apps is not | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | proportional, is unduly burdensome, and is not related to the core allegations of this case. | |
| P12 8/2/21 | Plaintiffs' RFP 65: Documents sufficient to identify all websites and publishers that use Google Ad Manager. | Google on May 25 represented that it was working on a proposal to resolve this dispute. On July 27, Google informed Plaintiffs that it was still working on the proposal, and Google only made its proposal on August 1.<br><br>These documents are relevant for the same reasons explained above regarding RFP 50.<br><br>Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google's proposal to further delay any resolution threatens to prejudice Plaintiffs.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016) and only | This dispute is not ripe because Google provided a proposal to Plaintiffs on August 1 in order to resolve this dispute and Plaintiffs have not yet responded to that proposal.<br><br>In addition, Plaintiffs' request is overly broad and not proportional to the needs of the case considering that millions of websites and publishers use Google Ad Manager, and Plaintiffs have not provided a reason that the identification of millions of third parties is relevant to the case, or likely to lead to admissible evidence.<br><br>Plaintiffs' proposal is unduly burdensome, and would require Google to not only identify millions of websites | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | those websites for which Google collects data when putative class members visit in a private browsing mode, with the expectation that the data would include any changes during that period (e.g., if a publisher used Google Analytics for only portions of that time period, the data would identify those time periods). | and publishers (which may require notice being sent to millions of third parties), but also a detailed report of any time periods since June 1, 2016 when the website or publisher did not use Google Analytics. Google's systems are not set up to provide information in this way. Any trivial amount of relevance this information may have is clearly outweighed by the significant time and expense that Google would need to expend to even determine if it can provide the information requested by Plaintiffs. Google proposed that it provide Plaintiffs with a list of the 25 Publisher Accounts with the most impressions for a given day for each year for Ad Manager for the period of June 1, 2016 to the present, which Plaintiffs rejected on the day of filing. Google is | |

| | | Chart B: Disputes re: Plaintiffs' Written Discovery | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | | investigating additional proposals. | |
| P12 8/2/21 | Plaintiffs' RFP 68: Documents sufficient to show all ways in which Google uses data gathered through Google Ad Manager, including data collected in connection with users' activity while in a private browsing mode. | Google on May 25 represented that it was working on a proposal to resolve this dispute.  On July 27, Google represented that it was preparing a draft stipulation to resolve this request.  Google has not yet provided this stipulation.  These documents are relevant to Plaintiffs' claims (how Google uses data, for purposes of liability and damages) and also Google's consent defense (whether such uses have been disclosed).  Google claims this dispute is not ripe, but Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents.  Google's proposal to further delay any resolution threatens to prejudice Plaintiffs.   If Google proposes a stipulation | This dispute is not ripe because Google is in the process of undertaking a factual investigation that will allow it to prepare a stipulation in order to resolve this request.  As Google repeatedly explained to Plaintiffs, the information sought by this request is well-suited to being established through a fact stipulation rather than the production of documents due (among other reasons) to the burden involved with collecting and producing responsive documents. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | prior to August 12, Plaintiffs will consider it, and the parties can then update the Court. <br><br> As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | | |
| P12 8/2/21 | Plaintiffs' RFP 71: Documents sufficient to show all types and the amount of data collected with X-Client Data Header, GStatic, and Approved Pixels, including in connection with users' activity while in a private browsing mode. | Google on May 25 represented that it was working on a proposal to resolve this dispute. On July 27, Google represented that it was preparing a draft stipulation to resolve this request. Google has not yet provided this stipulation. <br><br> These documents are relevant for purposes of class certification and identifying class members. *See* SAC ¶¶ 80, 81, 93, 101-04. <br><br> Google claims this dispute is not ripe, but Plaintiffs served this request in October 2020, and Google is still refusing to | This dispute is not ripe because Google has informed Plaintiffs that it is preparing a fact stipulation that would resolve this issue. <br><br> This type of information is well-suited to being established through a fact stipulation rather than the production of documents due to the burden involved with collecting and producing responsive documents. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | produce these documents. Google's proposal to further delay any resolution threatens to prejudice Plaintiffs. If Google proposes a stipulation prior to August 12, Plaintiffs will consider it, and the parties can then update the Court. As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | | |
| P12 8/2/21 | Plaintiffs' RFP 73: Documents sufficient to show all system or geolocation data collected by Google and associated, directly or indirectly, with any user or user device that has used private browsing mode. | Google on May 25 represented that it was working on a proposal to resolve this dispute. On July 27, Google represented that it was preparing a draft stipulation to resolve this request. Google has not yet provided this stipulation.  These documents are relevant to Plaintiffs' allegations that Google uses geolocation data to associate private browsing data with user profiles, which in turn allows Google to profit | This dispute is not ripe because Google has informed Plaintiffs that it is preparing a fact stipulation that would resolve this issue.  This type of information is well-suited to being established through a fact stipulation rather than the production of documents due to the burden involved with collecting and producing responsive documents. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | from its collection of private browsing data. SAC ¶¶ 63, 81-82, 93, 105, 108.  This request is also narrowly tailored, only seeking documents "sufficient to show."<br><br>Google claims this dispute is not ripe, but Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google's proposal to further delay any resolution threatens to prejudice Plaintiffs.   If Google proposes a stipulation prior to August 12, Plaintiffs will consider it, and the parties can then update the Court.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | | |
| P12<br>8/2/21 | Plaintiffs' RFP 75: Documents concerning Google's association of data collected while users are in private browsing mode with | Google on May 25 represented that it was working on a proposal to resolve this dispute.  On July 27, Google | This dispute is not ripe because Google has informed Plaintiffs that it is preparing a | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
|---|---|---|---|---|
| | unique user profiles through Google Analytics User-ID. | informed Plaintiffs that it is still working on the proposal.<br><br>This request relates to Plaintiffs' allegations that Google uses Analytics User-ID to associate private browsing data with user profiles, which in turn allows Google to profit from its collection of private browsing data. SAC ¶¶ 63, 69, 81-82, 93.<br><br>Google claims this dispute is not ripe, but Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google's proposal to further delay any resolution threatens to prejudice Plaintiffs. If Google proposes a stipulation prior to August 12, Plaintiffs will consider it, and the parties can then update the Court. | fact stipulation that would resolve this issue.<br><br>This type of information is well-suited to being established through a fact stipulation rather than the production of documents due to the burden involved with collecting and producing responsive documents. | |

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | As a compromise, Plaintiffs propose limiting this request to documents "sufficient to show" Google's association of data collected while users are in private browsing mode with unique user profiles through Google Analytics User-ID during the class period (since June 1, 2016). | | |
| P12 8/2/21 | Plaintiffs' RFP 154: Please produce all DOCUMENTS and COMMUNICATIONS related to the 2019 Third-Party Cookies Study, authored by Deepak Ravichandran and Ntish Korula, and published on August 27, 2019. | The study was authored by Google employees and sought to "quantify the effect that disabling access to third-party cookies would have on the programmatic ad revenue of web publishers" that use Google Ad Manager, one of the Google services at issue. Plaintiffs appropriately seek information relating to how "the availability of personalized data" for users impacts publishers' (and therefore Google's) advertising revenues. After Plaintiffs filed this lawsuit, | This dispute is not ripe because it is an end-run around to obtain custodial files without first establishing good cause for the two co-authors, as Plaintiffs are not just seeking the study and article, which are publicly available,[1] but also "the underlying data for the study, all drafts of the article, and all of the authors' communications concerning the data, the study, and the article." Pls' 5/18/21 Ltr. to Google at 3. Notably, even after reviewing Google's | |

[1] https://services.google.com/fh/files/misc/disabling_third-party_cookies_publisher_revenue.pdf.

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | Google changed its own Incognito Splash Screen to add an additional option of "block[ing] third-party cookies." The study and the article are highly relevant, and Google should produce the requested documents. Google is meanwhile refusing to add either author as a custodian. | June 18 production, Plaintiffs have separately failed to establish good cause to add the two co-authors as custodians. Plaintiffs are also incorrect that Google added an option to block third-party cookies after Plaintiffs filed this lawsuit. Publicly available information shows that Google released this feature on May 19, 2020 as part of Chrome 83.[2] | |
| P12 8/2/21 | Plaintiffs' RFP 155: Please produce all DOCUMENTS and COMMUNICATIONS related to GOOGLE'S attempts to better understand the methodology and differences in results between the 2019 Third-Party Cookies Study and the study titled "Online Tracking and Publishers' Revenues: An Empirical Analysis"— preliminarily drafted by Veronica Marotta, Vibhanshu Abhishek, and Alessandro | The 2019 Third-Party Cookies Study stated that "Researchers at Google are in communication with the authors [of the 'Online Tracking' report] to better understand their methodology and the difference in results." As a compromise, Plaintiffs are willing to limit this Request to those communications. Google is meanwhile refusing to add either author as a custodian. | This dispute is related to Plaintiffs' RFP 154 (immediately above) and is similarly not ripe. Again, Plaintiffs are seeking custodial files from individuals for whom they have failed to establish good cause. And Plaintiffs' purported relevance for the two co-authors to understand third parties' methodology and differences is irrelevant particularly when there is no | |

---

[2]https://support.google.com/chrome/answer/9977812?hl=en; https://support.google.com/chrome/a/answer/10314655.

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | Acquisti, and referenced in the 2019 Third-Party Cookies Study | | indication that the co-authors' own methodology and differences were incorrect. | |
| P12 8/2/21 | Plaintiffs' RFP 158: For the period since June 1, 2016, contact information and private browsing data collected by Google for a sample of 5,000 individuals with Google accounts based in the United States. | Plaintiffs served this request consistent with prior Orders of this Court. *Currie-White v. Blockbuster, Inc.*, No. C 09-2593 MMC (MEJ), 2010 WL 1526314, at *3 (N.D. Cal. Apr. 15, 2010) ("[T]he Court finds that Plaintiff is entitled to discovery of contact information for a representative number of putative class members in order to substantiate her class allegations."); *In re Facebook Priv. Litig.*, No. 5:10-CV-02389-RMW, 2015 WL 3640518, at *2 (N.D. Cal. June 11, 2015) ("[P]laintiffs are allowed to take discovery about putative class members before filing a motion for class certification."); *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 615 (N.D. Cal. 2006) | Plaintiffs represented to Google that this request falls "within the scope of RFP 10," which this Court has referred to the Special Master as part of P6.

It is improper and inefficient for the Plaintiffs to propound more than one RFP seeking the same information, or to bring the same dispute before the Court more than once in an attempt to get a second bite at the apple, should the Special Master find against them with respect to P6. | |

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | (stating that "there is no hard and fast rule that discovery relating to class issues is not proper before class certification has been filed or granted."). Plaintiffs reasonably seek these documents to substantiate their class action allegations, such as allegations of numerosity, common questions, and so on. Google seeks to defer any production until after the Special Master decides P6. If the Court wishes, Plaintiffs are willing to raise their dispute regarding this request with the Special Master. | | |
| P12 8/2/21 | Plaintiffs' RFP 161: Documents sufficient to identify all devices from which Google collected data while users were in private browsing mode during the class period. | Plaintiffs reasonably seek these documents to substantiate their class action allegations, such as allegations of numerosity and common questions, and to identify class members. Google seeks to defer any production until | Plaintiffs represented to Google that this request falls "within the scope of RFP 10," which this Court has referred to the Special Master as part of P6. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | after the Special Master decides P6. If the Court wishes, Plaintiffs are willing to raise their dispute regarding this request with the Special Master. | It is improper and inefficient for the Plaintiffs to propound more than one RFP seeking the same information, or to bring the same dispute before the Court more than once in an attempt to get a second bite at the apple, should the Special Master find against them with respect to P6. | |
| P12 8/2/21 | Plaintiffs' RFP 162: Documents concerning all the ways Google has profited or otherwise benefitted through its collection of user information while users were in a private browsing mode during the class period. | This information is highly relevant to Plaintiffs' prayer for non-restitutionary disgorgement, which is available remedy for Plaintiffs' claims. Google should produce these documents. If the request were fully duplicative of other requests, then Google would have no problem agreeing to produce these documents, but Google continues to oppose production of these documents. They should be produced. | This dispute is not ripe, nor should it be considered by the Court. RFP 162 appears to be fully duplicative of other RFPs previously propounded by Plaintiffs and negotiated by the parties. Despite repeated requests from Google, Plaintiffs have never articulated what information is sought by this request that is not already sought by RFP Nos. 100 (sales documents regarding Google Analytics relating to how Google profited from the activities described in the FAC), 101 (sales documents regarding Google Ad Manager relating | |

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | | to how Google profited from the activities described in the FAC), 103 ("[d]ocuments concerning all ways in which Google has benefited from the conduct alleged in this lawsuit, including without limitation advertising revenues, impact on Google's market power, and improvement or development of additional Google services or products. , 111 ("[d]ocuments sufficient to determine how Google generates revenues, cost savings, and/or profit from such products and/or services," as well as, "[d]ocuments sufficient understand how Google uses the class members' data to increase the prices, revenues, and/or profits associated with each such product and/or service (e.g., premium pricing for targeted versus non-targeted advertising)," and "[a]ll planning | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | | documents (e.g., business plans, marketing plans, sales plans, capital expenditure plans) related to such products and/or services"), or 124 (documents concerning any valuation of user data). | |
| P12 8/2/21 | Plaintiffs' RFP 163: Documents concerning the extent to which Google's data privacy policies abide by or conflict with the laws in various jurisdictions in which Google operates, including the EU General Data Protection Regulation 2016/679, the California Consumer Privacy Act (CCPA), and Lei Geral de Proteção de Dados (LGPD). | Google's counsel asserts that Google's data collection and storage practices are consistent with and required by these laws, identifying these laws in particular, and Plaintiffs reasonably seek these documents to test that assertion. These documents are especially important given that Google's employees apparently disagree with Google's lawyers, admitting that Google collects data without user consent and that " ███████████████ ███ ████ ████ █████ ███████████ GOOG-BRWN-00164056. Google should not be permitted to withhold these relevant documents. | This dispute is not ripe because Plaintiffs provided a proposal to resolve this request on July 27, which Google was considering. Then, on July 29, Plaintiffs served their positions in this chart, which walk back and abandon the proposal that it made just two days prior. In any case, the parties are still meeting and conferring regarding this request. | |

Case No. 5:20-cv-03664-LHK-SVK
JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | | Chart B: Disputes re: Plaintiffs' Written Discovery | | |
|---|---|---|---|---|
| Chart A Dispute No. | Request | Plaintiffs' Proposal | Google's Proposal | Status as of 8/12/21 Hearing |
| | | As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | | |
| P12 8/2/21 | Plaintiffs' RFP 166: All internal dashboard information for Incognito mode, Google Analytics, and Google Ad Manager. | Google uses internal dashboard to track certain metrics, and Plaintiffs reasonably seek relevant information from those Google dashboards.<br><br>For example, documents produced by Google demonstrate that Google has ███████ GOOG-BROWN-00067720; GOOG-BRWN-00183909.<br><br>As a compromise, Plaintiffs propose limiting Google's | This dispute is not ripe because throughout weeks of meeting and conferring Plaintiffs have repeatedly refused to clarify what they are seeking and completely changed course with respect to the types of information they seek through this RFP.<br><br>Plaintiffs originally claimed to want documents related to dashboards for individual users, a request that was overly broad and unduly burdensome as each user with a Google account can access their own dashboard to manage their Google services. Plaintiffs waited until July 27 to attempt to clarify their request. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | production to the class period (since June 1, 2016). | Based on the new information provided by the Plaintiffs, Google is investigating this request to determine if a compromise can be made. | |
| P12 8/2/21 | Plaintiffs' RFP 167: All internal Google wiki information for Incognito mode, Google Analytics, and Google Ad Manager. | Google uses internal wikis to track certain metrics, and—like the dashboards—Plaintiffs reasonably seek relevant information from those wikis. As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016) and limit the Incognito-related production to the Incognito Chrome browsing mode. | This request is impermissibly broad, including because it requests all "wiki information" for two entire products or services (i.e., Google Analytics and Google Ad Manager)—each of which have features that have nothing to do with Plaintiffs' allegations concerning the alleged data that Google receives while users are browsing in a private browsing mode.<br><br>To be clear, Google has already collected information from non-custodial, internal sites related to Incognito mode for Chrome, Google Analytics, and Google Ad Manager and is producing the non-privileged documents | |

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | | that it finds that are responsive to Plaintiffs' other requests, subject to Google's objections, but RFP 167 is impermissibly broad, not tied to the claims or defenses in this case, and in no way proportional to the needs of the case. | |
| P12 8/2/21 | Plaintiffs' RFP 168: All documents and videos that Google used or uses to educate its employees about Incognito mode, Google Analytics, and Google Ad Manager. | Plaintiffs are willing to narrow this request to documents and videos concerning Incognito mode for the Chrome browser. | This dispute is not ripe because Plaintiffs first presented this proposal on July 29, as included in this Discovery Chart, and Google is still considering it. | |
| P13 4/23/21 | Plaintiffs Interrogatory 5: Please IDENTIFY one copy of each version of each and every PUBLIC DISCLOSURE in which a WEBSITE that uses a GOOGLE THIRD-PARTY SERVICE informs USERS that USERS' INFORMATION will be collected (by the WEBSITE or by GOOGLE) notwithstanding the USERS' BROWSER SETTINGS. | *See* Plaintiffs' statement in Chart A at P13. Plaintiffs on June 29 proposed the following compromise, which Google did not agree to:<br><br>For the 25 top-visited websites that use Google Analytics and the 25 top-visited websites that use Google Ad Manager, please identify any public disclosures in which the website informed users that | *See* Google's response above in Chart A to P13 and Chart B to Plaintiffs' RFP Nos. 50, 57, and 64. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 191, 191-1 RE: STATUS OF DISCOVERY DISPUTES

| | Chart B: Disputes re: Plaintiffs' Written Discovery | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 8/12/21 Hearing** |
| | | users' browsing data is collected (by the website or by Google) notwithstanding whether a user is in a private browsing mode. | | |
| P13 8/2/21 | Plaintiffs Interrogatory 9: Please explain why this case should not be certified as a class action. | *See* Plaintiffs' statement in Chart A at P13. | *See* Google's response above in Chart A to P13. | |

Respectfully,

1

2 QUINN EMANUEL URQUHART & SULLIVAN, LLP

BOIES SCHILLER FLEXNER LLP

3

_/s/ Andrew H. Schapiro_

_/s/ Mark C. Mao_

4 Andrew H. Schapiro (admitted _pro hac vice_)
andrewschapiro@quinnemanuel.com
5 191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
6 Tel: (312) 705-7400
Fax: (312) 705-7401
7
Stephen A. Broome (CA Bar No. 314605)
8 sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
9 violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
10 Los Angeles, CA 90017
Tel: (213) 443-3000
11 Fax: (213) 443-3100

12 Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
13 555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
14 Telephone: (650) 801-5000
Facsimile: (650) 801-5100
15
Jomaire A. Crawford (admitted _pro hac vice_)
16 jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
17 New York, NY 10010
Telephone: (212) 849-7000
18 Facsimile: (212) 849-7100

19 Josef Ansorge (admitted _pro hac vice_)
josefansorge@quinnemanuel.com
20 1300 I Street NW, Suite 900
Washington D.C., 20005
21 Tel: (202) 538-8000
Fax: (202) 538-8100
22
Jonathan Tse (CA Bar No. 305468)
23 jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
24 San Francisco, CA 94111
Tel: (415) 875-6600
25 Fax: (415) 875-6700

26 _Attorneys for Defendant Google LLC_

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Sean Phillips Rodriguez (CA Bar No. 262437)
srodriguez@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293 6858
Fax: (415) 999 9695

James W. Lee (_pro hac vice_)
jlee@bsfllp.com
Rossana Baeza (_pro hac vice_)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Tel: (305) 539-8400
Fax: (305) 539-1304

William Christopher Carmody (_pro hac vice_)
bcarmody@susmangodfrey.com
Shawn J. Rabin (_pro hac vice_)
srabin@susmangodfrey.com
Steven Shepard (_pro hac vice_)
sshepard@susmangodfrey.com
Alexander P. Frawley (_pro hac vice_)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

27

28

John A. Yanchunis (_pro hac vice_)
jyanchunis@forthepeople.com
Ryan J. McGee (_pro hac vice_)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor

64

Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

## **ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Discovery Statement. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: August 2, 2021                                   By_____*/s/ Andrew H. Schapiro*_____
                                                                          Andrew H. Schapiro
                                                                          *Counsel on behalf of Google LLC*