# EXHIBIT A
# Redacted Version of Document Sought to be Sealed

Pages 1 - 63

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan van Keulen, Magistrate Judge

PATRICK CALHOUN, et al., on          )
behalf of themselves and all         )      **UNDER SEAL**
others similarly situated,           )       **BY ORDER**
                                     )      **OF THE COURT**
            Plaintiffs,              )
                                     )
  VS.                                )    **NO. C 20-05146-SVK**
                                     )        **C 20-03664-SVK**
GOOGLE LLC,                          )
                                     )
            Defendant.               )
_____)

San Francisco, California
Thursday, August 12, 2021

***SEALED BY ORDER OF THE COURT***

TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS

APPEARANCES: (Appearances via Zoom videoconference.)

For Plaintiffs:
                    BLEICHMAR, FONTI & AULD LLP
                    555 12th Street - Suite 1600
                    Oakland, California 94607
                BY: LESLEY E. WEAVER
                    ATTORNEY AT LAW

                    DICELLO LEVITT & GUTZLER LLC
                    One Grand Central Place
                    60 East 42nd Street - Suite 2400
                    New York, New York 10165
                BY: DAVID A. STRAITE
                    ATTORNEY AT LAW


            (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

```
 1    APPEARANCES:  (CONTINUED)

 2    For Plaintiffs:
                           SIMMONS HANLY CONROY LLC
 3                         112 Madison Avenue - 7th Floor
                           New York, New York 10016
 4                    BY:  JASON "JAY" BARNES
                           ATTORNEY AT LAW
 5
                           SUSMAN GODFREY LLP
 6                         1301 Avenue of the Americas
                           32nd Floor
 7                         New York, New York 10019
                      BY:  ALEXANDER P. FRAWLEY
 8                         ATTORNEY AT LAW

 9                         SUSMAN GODFREY LLP
                           1901 Avenue of the Stars - Suite 950
10                         Los Angeles, California 90067
                      BY:  AMANDA K. BONN
11                         ATTORNEY AT LAW

12                         BOIES, SCHILLER & FLEXNER LLP
                           44 Montgomery Street  - 41st Floor
13                         San Francisco, California 94104
                      BY:  BEKO OSIRIS RA REBLITZ-RICHARDSON
14                         HSIAO C. MAO
                           ATTORNEYS AT LAW
15
                           BOIES SCHILLER & FLEXNER LLP
16                         100 SE 2nd Street - Suite 2800
                           Miami, Florida 33131
17                    BY:  JAMES W. LEE
                           ATTORNEY AT LAW
18
                           MORGAN & MORGAN
19                         One Tampa City Center
                           201 North Franklin Street - 7th Floor
20                         Tampa, Florida 33602
                      BY:  RYAN McGEE
21                         ATTORNEY AT LAW

22

23

24

25
```

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant:
                         QUINN, EMANUEL, URQUHART
 3                          & SULLIVAN LLP
                         865 South Figueroa Street - 10th Floor
 4                       Los Angeles, California  90017
                   BY:   VIOLA TREBICKA
 5                       STEPHEN A. BROOME
                         ATTORNEYS AT LAW
 6
                         QUINN EMANUEL URQUHART
 7                          & SULLIVAN, LLP
                         191 N. Upper Wacker Drive - Suite 2700
 8                       Chicago, Illinois 60606
                   BY:   ANDREW H. SCHAPIRO
 9                       TEUTA FANI
                         ATTORNEYS AT LAW
10
                         QUINN, EMANUEL, URQUART
11                          & SULLIVAN LLP
                         51 Madison Avenue - 22nd Floor
12                       New York, New York 10010
                   BY:   JOMAIRE A. CRAWFORD
13                       JOSEF T. ANSORGE
                         ATTORNEYS AT LAW
14

15   Also Present:  Douglas A. Brush, Special Master

16

17

18

19

20

21

22

23

24

25
```

UNDER SEAL BY ORDER OF THE COURT

```
 1   Thursday - August 12, 2021                    9:33 a.m.
 2                      P R O C E E D I N G S
 3                         ---o0o---
 4        THE CLERK:  This is a sealed hearing in Case
 5   20-cv-3664, Brown, et al. versus Google LLC, et al., and case
 6   20-cv-5146, Calhoun et al. versus Google LLC.
 7        Counsel, please identify yourselves for the record and
 8   we'll start with plaintiffs.
 9        MS. BONN:  Good morning, Your Honor.  This is Amanda
10   Bonn representing the Brown plaintiffs.
11        THE COURT:  Good morning.  I have so many people on
12   the screen, that it will be helpful when you announce
13   yourselves to give a wave so something for both me and the
14   court reporter.  That will be helpful.
15                   (Court reporter interruption.)
16        THE COURT:  All right.  Ms. Bonn got us started, so
17   who is next?
18        MR. MAO:  Good morning, everyone.  This is Mark Mao of
19   Boies, Schiller, Flexner, also for the plaintiffs.
20        THE COURT:  Good morning.
21        MR. RICHARDSON:  Good morning.  Beko Richardson,
22   Boies, Schiller, Flexner, on behalf of plaintiffs.
23        THE COURT:  Good morning.
24        MR. LEE:  Good morning.  James Lee, Boies, Schiller &
25   Flexner on behalf of plaintiffs.
```

UNDER SEAL BY ORDER OF THE COURT

```
 1          THE COURT:  Mr. Lee, good morning.

 2      Anyone else?

 3          MR. FRAWLEY:  This is Alexander Frawley from Susman

 4  Godfrey on behalf of the Brown plaintiffs.

 5          MR. McGEE:  Good morning, Your Honor.  Ryan McGee from

 6  Morgan & Morgan on behalf of the plaintiffs.

 7          THE COURT:  Good morning.

 8      Anyone else for Brown plaintiffs today?  All right.

 9          MS. BONN:  That's it, Your Honor.

10          THE COURT:  Let's, again, the defense appearance,

11  please.

12          MR. SCHAPIRO:  Good morning, Your Honor.  This will be

13  for both Brown and Calhoun, so we can do it again if you wish,

14  but I'm Andrew Schapiro for Google.

15      And maybe it's simplest if I just introduce my colleagues,

16  who can then wave.  I'll go in the order in which they appear

17  in my Zoom screen, unless you would prefer them each to

18  introduce themselves.

19          THE COURT:  That will be fine, as long as I get the

20  wave.  That's the important thing.

21          MR. SCHAPIRO:  Okay.  My colleague Teuta Fani, who

22  goes by "Tea."

23          THE COURT:  Ms. Fani, good morning.

24          MR. SCHAPIRO:  For Google.  Then we have Viola

25  Trebicka.
```

UNDER SEAL BY ORDER OF THE COURT

```
1              THE COURT:  Ms. Trebicka, good morning.

2              MR. SCHAPIRO:  Steve Broome.  And -- oh, I skipped

3    Joey.  Josef Ansorge, who goes by "Joey."

4              THE COURT:  Mr. Ansorge, good morning.

5              MR. SCHAPIRO:  And Jomaire Crawford.

6              THE COURT:  And where is Ms. Crawford?  There she is.

7    All right.  Good morning.

8         All right.  And the Calhoun plaintiffs, please.

9              MS. WEAVER:  Good afternoon, Your Honor.  Lesley

10   Weaver of Bleichmar, Fonti & Auld.

11             THE COURT:  Good morning.

12             MR. BARNES:  Jay Barnes of Simmons, Hanly, Conroy.

13             THE COURT:  Good morning.

14             MR. STRAITE:  And good morning, Your Honor.  David

15   Straite for the Calhoun plaintiffs.

16             THE COURT:  Good morning.

17        Anyone else for the Calhoun plaintiffs?

18                        (No response.)

19             THE COURT:  All right.

20        And our appearances for the defendants are in, as the

21   same.  Thank you.

22        All right.  Additionally, for logistics, if you're not

23   speaking, or -- I appreciate there are certain, perhaps, team

24   leaders who don't want to be off video, any more than you would

25   step aside from counsel table if we were my courtroom, I
```

UNDER SEAL BY ORDER OF THE COURT

1   understand.  But if you're -- otherwise if you're not speaking,
2   if you would turn off your video until we get to your matter.
3   We have a lot of ground to cover.  Again, that will just help
4   me and the court reporter better manage who we're talking to.
5   And I appreciate that.  Thank you.

6       I know everyone makes a contribution in this case.  And
7   some of you aren't even appearing.  Some of you are in the
8   gallery.  I know the work it takes to manage and run and
9   actually litigate cases of this size.  And I know that the
10  contributions are vast.  So I'm asking you to turn off your
11  video.  I'm not minimizing your role at all and I do look
12  forward to hearing from those who will be speaking today.

13      Okay.  Oh -- and our special master, Mr. Brush?
14      Ms. Fanthorpe, is he here?  Is he in the gallery?
15          MR. BRUSH:  I am, Your Honor.
16          THE COURT:  All right.  Thank you, Mr. Brush.
17      Let's go ahead and bring him in as a panelist.  Just -- I
18  want to be sure everyone is aware Special Master Brush is here,
19  and he and I have conferred on a couple of the matters that are
20  pending, and we'll get to that in due course.

21      And there we go.  Excellent.  Okay.

22      So where we're going to start today -- here is actually
23  what we will be covering, we're going to start with the
24  discovery schedules in this case.  I have conferred with
25  Judge Koh, and I have proposed to her a very modest adjustment,

**UNDER SEAL BY ORDER OF THE COURT**

1  which she has indicated she will accept.

2      Following this adjustment, the parties will need to file a

3  stipulation with her in each case reflecting these dates and if

4  these impact dates -- further dates beyond the fact discovery

5  cut-off, you'll need to include that in your proposal to her as

6  well, but she is expecting that.

7      After we address the discovery schedule, we'll turn to a

8  couple of matters that I believe are appropriately referred to

9  Special Master Brush, and then we will turn to the proposed

10  cross-use agreement between the parties.  And then we will take

11  up the Brown disputes that have been identified as priorities,

12  and that is the ESI dispute and then the Google deposition

13  issue.

14      Then we will turn to the Calhoun-specific matters starting

15  with the Calhoun ESI dispute, and then the issues that Google

16  has raised in Calhoun the production of damage documents and

17  interrogatory responses.  And then last, but not least, we'll

18  turn to our next steps in this proceeding.

19      All right.  Here is what we're going to do with regards to

20  the discovery schedule in this matter, and it's important that

21  you keep these dates in mind as we work through other deadlines

22  on these other matters that I will be setting today.

23      First, with regards to the Brown matter, my recommendation

24  to Judge Koh is for a modest extension.  I'm just looking for

25  my note here.  I somehow dropped it.  There we go.  A modest

UNDER SEAL BY ORDER OF THE COURT

1  extension of 60 days.  And in Calhoun, a modest extension of

2  30 days.  That will align the discovery cut-offs in the cases,

3  which I think will be helpful, particularly with regard to the

4  cross-use.  However, that's not quite the end of it because if

5  you bump 60 and 30 days respectively, you end up right on top

6  of the holidays.  So it's those days, plus a little more to get

7  us past.  So discovery -- the recommended discovery cut-off in

8  this case to Judge Koh is now January 21st, 2022.  January 21.

9  All right?

10      Again, I have made that proposal to Judge Koh I have

11  informed her she'll be getting a stipulation from the parties

12  reflecting that and you may address other dates.

13          MR. SCHAPIRO:  And, Your Honor, just for

14  clarification, are you saying that these -- first of all, those

15  are fine with us.

16      Are you saying that these additions are for each date in

17  the calendar, or are you talking about just for the close of

18  discovery?

19          THE COURT:  I'm just talking about the close of fact

20  discovery.

21          MR. SCHAPIRO:  Perfect.  Thank you.

22          THE COURT:  That's the issue in front of me, and

23  that's the deadline that then we're working off of in terms of

24  not insubstantial production dates that are coming up as a

25  result of the follow-on disputes.  All right?

UNDER SEAL BY ORDER OF THE COURT

1        So that is the adjustment to the discovery schedule.

2        Turning to the matters to be referred to Special Master

3   Brush.  I looked at the Brown dispute P14 regarding source

4   code.  I will say that a review of the summary -- and it's

5   obviously not the first time I've seen this argument or at

6   least seen the issue -- but turning to the presentation in the

7   summary table, I did read through that.

8        I will note and, again, admonish both parties that the

9   summary table is not the place for legal argument, extended

10  legal argument.  It is a place to identify issues and inform

11  the Court of the status of the dispute.

12       And I appreciate not all disputes are created equal, and

13  sometimes it takes a little bit more explanation.  And I think

14  what was provided here in the initial, probably, initial

15  paragraphs in each side are fine.  But when you find yourselves

16  inserting case cites and cutting and pasting from a draft brief

17  that you have ready to go you know you've gone too far.

18       In reading the summary and in looking at relevant law that

19  I'm familiar with, because this comes up not infrequently, I

20  would note that the fact -- the fact that Google does

21  something, that is collect data from the plaintiffs, and that

22  that fact is relevant -- what's the data, what do they do with

23  it -- doesn't necessarily mean that the actual source code,

24  that is, the actual, you know, the inner workings of how that

25  is done is relevant.  Now, it may be, but certainly from the

**UNDER SEAL BY ORDER OF THE COURT**

1  material that I've seen so far, I'm not convinced that it's

2  necessary.

3      Just because it exists and would say how it's done,

4  doesn't necessarily mean that that is relevant.

5      I think that this dispute follows naturally from the

6  ongoing dispute that the parties have currently before Special

7  Master Brush, which is the -- what data is collected and

8  retrieving that data, both as to the plaintiffs and as it

9  relates to class identification.

10     So it seems to me that whether or not source code is

11  needed, follows from that, unwinding those issues.  And so that

12  this is properly and most efficiently referred to Special

13  Master Brush.  And I have conferred with the special master and

14  he concurs.  So that issue is moving before him.  And he will

15  manage resolution of that dispute.

16     Second, turning to the Calhoun dispute regarding a

17  cleanroom, that's Dispute 1.13, it's not clear to me from the

18  description here, whether the plaintiffs is -- if this is an

19  issue about production of how data is produced, how data that

20  you've already received or is in the process of being produced,

21  how you are given access to it.

22     Or if it is, in fact, a request for other data.  Perhaps

23  it is a back way around into a request for source code.  I

24  don't know.  I would like that clarification.

25     So who can address that for me for the Calhoun plaintiffs?

UNDER SEAL BY ORDER OF THE COURT

1    MS. WEAVER:  Good afternoon.  Lesley Weaver of

2  Bleichmar Fonti, and I can address that for you today.

3       It's a good question, and maybe we can open the hearing

4  with some good news.  We did have a very productive meet and

5  confer yesterday with Google on a topic that we hope, we

6  plaintiffs hope, relates to this issue.

7       To answer your question, we think what -- we still --

8  plaintiffs still do not know what data is collected.  And our

9  access -- our request for access to a cleanroom here is to have

10  an expert look at the logs and look at the data and identify

11  the fields so that we, then, have the knowledge of what is

12  collected; and hopefully, we can tie this to a compromise on

13  the preservation log issue, which has been pending for so long.

14       So to answer your question, we are still in the dark about

15  what data is collected, where it is maintained, and how it is

16  used, although we have -- we've taken three 30(b)(6)s and we've

17  learned a lot.  But, unfortunately, these threshold questions

18  have not been answered except for, for example, in -- and we do

19  wish to update the Court.  Both Mr. Brush -- because we had an

20  August 2nd submission and then we had an August 4th deposition,

21  that was the third 30(b)(6).  So we've learned more things.  We

22  learned in that deposition some really interesting things, ███

23  ███████████████████████████████████████████████████████

24  ████████████████████████████████████████

25       But we didn't learn everything because the deponent was

UNDER SEAL BY ORDER OF THE COURT

1   only instructed to provide us information about two of the

2   logs.  Although Your Honor ordered Google to testify about all

3   the logs on March 5th, in all three depositions, the first two

4   deponents weren't able to discuss those logs.  And here, this

5   deponent, was only invited to discuss two.

6       We are all exhausted.  We all want to be constructive.  So

7   we had this meet and confer yesterday and what plaintiffs are

8   proposing is that we simultaneously get access with our experts

9   and the engineers at Google who actually know this information;

10  not the 30(b)(6) deponents, but the people the deponents have

11  been talking to to get the information.  And then we let our

12  experts sit down and look at the logs.  And then we can

13  meaningfully have a meeting of the minds around:  Hey, these

14  are the fields that the plaintiffs are really interested in.

15  They are in these logs, and this is a productive plan.

16      We're very mindful, Your Honor, of our September 2nd

17  deadline to move for class certification and we need that

18  classwide proof.

19      It's the first thing, Your Honor, asked us, I think, in

20  the second hearing.  You said:  Why do you need proof of the

21  other data, you've got so much in your complaint?

22      And we said:  Your Honor, it's a class case, so we need to

23  be able to show, throughout the class period, what the pattern

24  and practice is.

25      We're willing to be reasonable and sample or use excerpts

UNDER SEAL BY ORDER OF THE COURT

1  of the logs.  We just learned on August 4th, finally, this

2  deponent could address for at least two of the logs, they can

3  ████████ ██████  We want to continue on that progress.

4       So what we would ask is that we get access, what we would

5  ask, actually, is to give Your Honor a status report on Friday.

6       And we want to keep talking with Google.  We each put in

7  five pages.  Hopefully, we've got at least some areas of

8  compromise.  When we were talking with Google yesterday, we

9  said:  It might be we don't reach perfect agreement on all the

10  logs, but at least we can get somewhere.  And if you give us

11  this access and let us talk to these engineers, then we can get

12  somewhere, and we can get a proposal before you.  And maybe

13  even at next Friday's filing, we can give you a date when we

14  can get you a proposal.

15       That's at least what we're thinking, Your Honor.

16            THE COURT:  All right.  All right.

17            MR. SCHAPIRO:  Your Honor, that's a lot to respond to

18  and --

19            THE COURT:  I don't need the response to this

20  substance --

21            MR. SCHAPIRO:  I thought.  It sounded as if you were

22  getting ready to send this to Special Master Brush.  And if you

23  are, then I won't respond point by point.  We'll save it for

24  the special master.

25       I disagree with some of the factual statements from

UNDER SEAL BY ORDER OF THE COURT

1   Ms. Weaver.  I agree with her that we've made some progress in
2   discussions.  And I'll hand it back to you, unless you want to
3   hear more from me.
4            THE COURT:  I appreciate that, Mr. Schapiro.
5        I do intend to refer this question to the special master.
6   I am very pleased to hear that, excuse me, the parties did roll
7   up their sleeves and have, what sounds like, a constructive
8   discussion; not that anyone has conceded positions or is
9   necessarily agreeing to what the other is proposing; but it
10  sounds like it is a very specific and focused discussion, and
11  that there has been progress.
12       And that is what I need to see more of from everybody, and
13  both sides in both cases, which is, constructive progress.  And
14  as you'll see as we work through these other issues, there has
15  clearly not been enough of that.
16       So, Ms. Weaver, yes.  Good news.  And that's always a good
17  place to start.
18       If the parties want to make a further submission, I'll let
19  you make that request to Special Master Brush, and he will
20  respond.  He will manage this issue.  So the issue of cleanroom
21  access in Calhoun is referred to Special Master Brush.
22       All right.  Let's turn to the proposed cross-use issue.
23  Let me get my notes in order.  It's always a little bit -- let
24  me just work through my pieces of paper here.
25       All right.  So this was in the Calhoun -- came up in the

UNDER SEAL BY ORDER OF THE COURT

1   Calhoun matter, but it is proposed as -- obviously, it's

2   cross-use for both Calhoun and Brown.  I did receive a proposed

3   plaintiffs' order and a proposed Google order, and then a

4   redline.  And it appears to me that the redline is the

5   plaintiffs' order, then with Google's adjustments, inserts, and

6   deletions noted in redline.  And I just wanted to be sure that

7   I'm reading that correctly.

8           MS. TREBICKA:  That's correct, Your Honor.

9           THE COURT:  Okay.  Excellent.  Thank you.

10      All right.  Then I am -- let's look at that then.  That is

11  Docket 253-3.  I think that that forms a -- there is a workable

12  format here.  I have a couple of adjustments as follows:

13      And that is, on page 2.  Let's see.  That's paragraph 1I,

14  referring to the definition of joint -- of "joint deposition."

15  The deletions there specifically requiring Google's

16  certification of substantial completion of discovery.  I am

17  accepting that deletion.

18      You will see, throughout today's proceedings, impediments

19  to reaching the deadlines that I'm going to set on production.

20  With regards to it's here, Google's certification of

21  substantial completion.  It's also -- we'll come to a request

22  in a moment that Google has that the plaintiffs have agreed on

23  something.

24      I'm taking those impediments out because I'm going to set

25  deadlines and those are going to drive this process.

UNDER SEAL BY ORDER OF THE COURT

1  All right?  We're not going to have any other interim

2  milestones to be touched on.  You all are going to have to work

3  together, sleeves rolled up, with those deadlines in mind.

4      So paragraph I will read:  Joint deposition refers to a

5  deposition taken simultaneously by counsel for plaintiffs in

6  both matters.

7      And it wasn't clear to me, do the parties have an

8  agreement on excluding 30(b)(6) or not excluding 30(b)(6)?

9          MS. WEAVER:  Your Honor, Lesely Weaver.

10     We're excluding 30(b)(6) from this.  It's for individual

11 capacity depositions.

12         THE COURT:  All right.  And, Google, does that comport

13 with your understanding?

14         MS. TREBICKA:  Yes, Your Honor.  That's something that

15 we have also agreed to.

16         THE COURT:  All right.

17         MS. TREBICKA:  In the name of compromise.

18         THE COURT:  So then that deletion in its entirety is

19 adopted.

20     All right.  Then I am accepting all of the changes until

21 we get over to paragraph 3, which is largely Google's proposal

22 on how to do this going forward.

23     And my question, Ms. Trebicka, probably for you, is I

24 think the proposal in paragraph 3 sounds reasonable, provided

25 that releasing documents to the vendor is the -- is the end of

UNDER SEAL BY ORDER OF THE COURT

1   process.  I mean, you release documents to the vendor and then

2   they're, you know, stamped, prepared for production, and they

3   are out the door.

4          MS. TREBICKA:  Your Honor, so once we release the

5   documents to the vendor, there is some work that the vendor

6   needs to do to prevent errors.  One we need -- the vendor needs

7   to Bates stamp.  The vendor needs to make sure that the prior

8   Bates stamp off the same document also appears, so that

9   plaintiffs know what the cross-use document is.

10      So there is some -- they are moved to a different

11  database.  So it's not going to be -- once we release, the

12  production will not be instantaneous.

13         THE COURT:  I understand that.  Let me -- my more

14  specific question is, it's not a situation where Google

15  releases documents to the vendor, all that magic happens, and

16  then they come back to Google for further review or evaluation

17  or something before production.  Vendor is the last stop before

18  production.

19         MS. TREBICKA:  Yes.  I mean, it goes through outside

20  counsel because we send the production out by e-mail and

21  everything, but otherwise, yes, the vendor is the last

22  substantive step.

23         THE COURT:  Okay.

24         MS. TREBICKA:  Outside counsel, obviously, turns it

25  out in very short order.

UNDER SEAL BY ORDER OF THE COURT

1        THE COURT:  That's what I wanted to be sure, that we

2   were -- that this timeline is reflecting essentially the end of

3   or nearly the end of the production process, not the start.

4        MS. TREBICKA:  Right.

5        THE COURT:  That clarification -- thank you,

6   Ms. Trebicka.  Then I accept the changes -- paragraph 3 will

7   read as edited in the redline.

8        MS. WEAVER:  Your Honor, may I ask a point of

9   clarification on your previous ruling?

10       THE COURT:  Yes.

11       MS. WEAVER:  In paragraph 1, when we were looking at

12  the individual -- I may have just misheard you.  It's 1I,

13  "Joint deposition refers to a deposition, right now, taken

14  simultaneously by counsel for plaintiffs in both matters" -- I

15  apologize to the court reporter there for getting excited.

16       It seems to me that "of any deponent in his/her individual

17  capacity" should be included and not redlined, and that the

18  last sentence, "It should exclude depositions taken pursuant to

19  Federal Rule of Civil Procedure 30(b)(6)," should also be

20  included and not excluded. I'm guessing that was just an

21  oversight.

22       THE COURT:  Correct, Ms. Weaver.

23       MS. WEAVER:  Thank you.  Sorry.

24       THE COURT:  No, that's all right.

25       MS. WEAVER:  Appreciate it.

UNDER SEAL BY ORDER OF THE COURT

1      THE COURT:  A little redline confusion there.  So I'm

2  glad you caught that at the time.  Let me just make a note here

3  as well.

4      Okay.

5      All right.  Proposed paragraph 5.  This, again, relates to

6  an impediment to production that the Court is rejecting.  I

7  will not accept proposed paragraph 5.

8      This absolutely requires coordination between the

9  plaintiffs -- counsel for plaintiffs in both actions.  I expect

10  that to happen in this case.

11      And if -- I think the example -- an example that came up

12  was the officer and director documents, and if there is a

13  compromise negotiated just, for example, on a set of documents

14  in the Brown case and then they are produced for cross-use, and

15  Google can make that clear, this is -- this is produced, this

16  reflects the compromise, if Calhoun wants to challenge that,

17  and somehow in the Calhoun case they -- you don't like it or

18  they think they are entitled to more, they can -- they can

19  raise that.

20      But, I have to say, if a compromise has been reached with

21  one group of plaintiffs, my presumption is going to be that

22  it's reasonable.  Unless there is truly a unique fact in the

23  other case that requires something different, then I am going

24  with -- I'm going to go with the compromise.

25      So I want the parties to understand that there is a

UNDER SEAL BY ORDER OF THE COURT

1   presumption of reasonableness of a compromise, and documents

2   will be produced pursuant to that.  But I'm not going to

3   require any type of certification.  Again, we're not going to

4   have any, "We're waiting, we would have produced, but we are

5   still waiting for a green light," because you're going to be

6   driving hard for the dates I'm going to set momentarily.

7   All right?

8       I hope that that is clear.

9       So paragraph 5, as proposed, will be deleted.

10      I believe the remaining changes that gets us over to

11  deposition coordination.

12      So, yes, I think plaintiffs' notice of deposition, other

13  plaintiffs can join it.  That should be fine.

14      I think the treatment of -- I think attending the joint

15  depositions, as well as treatment of material in paragraph 11,

16  that looks fine.

17      What we're going to do about length of the deposition, I

18  had it noted in paragraph 11, but you actually addressed it

19  separately in paragraph 12.  A joint deposition will be

20  10 hours.  10 hours.

21      And if the witness -- I mean, you get one deposition of

22  this witness.  That deposition will be 10 hours on the record.

23  That's 10 hours of testimony.  And if the witness wants to

24  break that over two days, then that is fine.

25      We all know, some witnesses are better just powering

UNDER SEAL BY ORDER OF THE COURT

1   through it, and that's their preference.  There are many

2   witnesses for whom that is an extraordinary amount of time to

3   be giving testimony.  And I think it does -- it is likely to

4   impair the quality of the deposition.

5      So it's not who's taking the deposition, it's not their

6   call.  All right?  You should be prepared for your 10 hours.

7      But, it is the witness's call.  And if the witness wants a

8   break, and continue it the next day, then that's -- that's

9   fine.  But this is not an opportunity for a five-hour

10   deposition and then a month later another five-hour deposition.

11      That's -- there is one deposition.  It can be 10 hours in

12   total.  If the witness wants a break, the witness then the

13   witness gets a break to the next day.  Okay.

14      Any questions.  Ms. Trebicka?

15         **MS. TREBICKA:**  Not on this provision, Your Honor.

16         **THE COURT:**  Okay.  Ms. Weaver?

17         **MS. WEAVER:**  Yes, Your Honor.  Are you finished with

18   the entire documents or are we looking at -- because the

19   issue --

20         **THE COURT:**  That's a fair question.  My question was

21   are we all clear on the deposition?

22         **MS. WEAVER:**  Yes.

23         **MS. TREBICKA:**  Your Honor, to clarify on the length of

24   the deposition, because I did have a question about

25   paragraphs 10 and 11 --

UNDER SEAL BY ORDER OF THE COURT

```
 1              THE COURT:  Hm-hmm.

 2              MS. TREBICKA:  Which -- you said they sounded fine.  I

 3   wasn't sure whether that meant that they looked fine with

 4   Google's revisions or without.

 5              THE COURT:  With the revisions.

 6              MS. TREBICKA:  Got it.  Thank you.

 7              THE COURT:  As redlined.  As redlined.

 8              MS. TREBICKA:  Okay.

 9              THE COURT:  I'm accepting the document as redlined,

10   except where I have noted.

11         And then discovery coordination among counsel.  I think

12   that that looks fine.

13         All right?  Any other questions?

14         Yes, Ms. Weaver?

15              MS. WEAVER:  That is the issue I would like to

16   address, particularly in conjunction with your ruling that on

17   issues now, we need to be coordinating and making that clearer

18   for us.

19         We have been constrained -- the reason -- one reason -- I

20   think the big reason that we cannot reach agreement with Google

21   on this, although we all tried very hard, is that it's putting

22   plaintiffs in a difficult position to require coordination, and

23   then prohibit them from talking.

24         And so Google has actively enforced the protective orders

25   in this case by writing counsel e-mails asking:  You did not
```

UNDER SEAL BY ORDER OF THE COURT

1  disclose custodians to each other -- for example -- correct?

2      And then we're required to certify to Google's counsel

3  that we haven't talked about things.

4      If Brown and Calhoun, on the plaintiffs' side, can't talk

5  to each other, we're kind of ambushed in the selection of --

6      **THE COURT:**  What's the fix that you're after?  I don't

7  disagree, Ms. Weaver.  I'm -- again, as I am making changes

8  through it, I may not appreciate the impact.

9      Tell me specifically where you're concerned.

10     **MS. WEAVER:**  I think, in paragraph 14, I think we

11 should be allowed to discuss -- well, you know, anything that

12 could be where Google is going to seek coordination.

13     **THE COURT:**  Right.  But the changes didn't seem to

14 substantively change paragraph 14, so perhaps that's my

15 confusion.

16     **MS. WEAVER:**  I agree.  And I think maybe we didn't

17 address it here because I don't think we had perceived this to

18 be so broad.

19     And so, maybe, if I could ask, maybe the parties could

20 confer on an additional sentence, or we could discuss one here,

21 just to say:  Counsel for the plaintiffs in the matter shall be

22 allowed to review and discuss any documents produced in either

23 matter in connection with good faith preparation.

24     I think that, you know, the second sentence there covers

25 it, in fact, that it's deemed privileged; but we don't want to

UNDER SEAL BY ORDER OF THE COURT

 1    be charged a violation of the protective order.

 2            THE COURT:  Understood.  I got it.

 3            MS. WEAVER:  Okay.  Thanks.

 4            THE COURT:  I got it.  I got it.

 5       Let' hear from Google on this.

 6            MS. TREBICKA:  Yes, Your Honor.

 7       That's exactly -- what Ms. Weaver articulated is exactly

 8    what this paragraph also says.  It says that counsel shall be

 9    allowed to review any documents produced in either matter in

10    connection with good faith preparation for any joint

11    deposition.

12       So I think that's covered.  What we've --

13            THE COURT:  I will add "and discuss."  All right?

14            MS. WEAVER:  Thank you.

15            THE COURT:  And I think that that takes care of it.

16       Mr. Straite, did you need to be heard?

17            MR. STRAITE:  Thank you, Your Honor.

18       I think your last sentence covered what I was going to

19    say.  It's in line 12 of that paragraph 14, you see we had put

20    in that we may discuss the documents in connection with good

21    faith consideration of or preparation for.

22       If we just add in those three words "consideration of or,"

23    that will then cover plaintiffs' concerns.  Because then we can

24    properly coordinate with Brown counsel and they can properly

25    coordinate with us, and we can share documents as we're

UNDER SEAL BY ORDER OF THE COURT

1    considering possible candidates for deposition, rather than

2    just limiting it to preparation for previously agreed.

3    That's -- that'll fix -- those three words will fix everything.

4         THE COURT:  Which three words specifically is that,

5    Mr. Straite?

6         MR. STRAITE:  In line 12, the last three words,

7    "consideration of or," if we add those back in, I think that

8    covers everything.

9         THE COURT:  I see.

10        All right.

11        MS. TREBICKA:  May I address it, Your Honor?

12        THE COURT:  Quickly, yes.

13        MS. TREBICKA:  So we're talking about a very limited

14   universe of documents here.  We're not talking about the

15   cross-use documents.  Plaintiffs' counsel can already

16   coordinate and discuss the cross-use documents.

17        What this is only referring to is documents that have not

18   been produced in a case; and that's what we're trying to limit

19   here.  We think that adding "consideration of preparation" just

20   broadens it too much.

21        THE COURT:  I think it's fine.  I'm going to allow it.

22        MS. TREBICKA:  Okay.

23        THE COURT:  Thank you, Mrs. Trebicka.  I do hear

24   Google's objection, but we just can't slice the prosciutto that

25   thin.  We've got to give plaintiffs an opportunity to have a

UNDER SEAL BY ORDER OF THE COURT

1     discussion.

2         So -- and it may be that certain documents are just --

3     it's just not quite clear where they fall.  And given the

4     massive, massive productions in this case, and those still to

5     come, something may be cross-use, but there may be something

6     related that didn't get stamped that way that at least the

7     parties they have to be able to have a discussion.

8         And I think the protective orders in this case provide

9     adequate protection to balance those concerns.  The concerns

10    are legitimate.  I think the protective order covers them.

11        Okay.  We're going to move on.

12            MS. WEAVER:  Your Honor, there is one remaining issue

13    that we briefed that we didn't quite catch in the redline.

14            THE COURT:  What's that?

15            MS. WEAVER:  Paragraph 7 and 8, Google wants to

16    produce in Calhoun, the Brown plaintiffs' discovery responses,

17    and in Brown, the Calhoun plaintiffs' discovery responses.  And

18    the plaintiffs resist that.

19            THE COURT:  And I'm going to allow it.  I'm going to

20    allow it.  I read that with that consideration.  Thank you.

21            MS. WEAVER:  All right.

22            THE COURT:  Thank you.  Turnabout is fair play.

23    Everybody pretty much gets to see everything.

24        Okay.  Let's turn to the Brown ESI dispute.  Perhaps it's

25    slightly inappropriately mislabeled as P1, when, in fact, it is

UNDER SEAL BY ORDER OF THE COURT

1    a P1/P3 dispute, which exceeds the list; but not to worry, I

2    have dealt with it accordingly.

3         Okay.  I have to say, this is an area -- first of all, let

4    me ask:  Are there any updates?  I'm working off of the

5    submission from August 2nd --

6              MR. RICHARDSON:  Yes, Your Honor.

7              THE COURT:  -- and I was, to put it mildly,

8    disappointed that there hadn't been more progress.

9         So Mr. Beko Richardson.

10             MR. RICHARDSON:  Yes, Your Honor.  There has been

11   progress.  And, I guess, I'll start with the good news.

12        So we started with 35 additional custodians.

13             THE COURT:  I'm sorry, Mr. Beko Richardson.  I need

14   you to say your appearance, like, who you're speaking on behalf

15   of, again.  That will help the court reporter.

16             MR. RICHARDSON:  Yes, Your Honor.  Beko Richardson on

17   behalf of the Brown plaintiffs.

18        And we did make progress with P1 on the issue of

19   custodians.

20             THE COURT:  Okay.

21             MR. RICHARDSON:  Based on our review of the

22   June 18th production, we identified 35 additional custodians.

23   We now have 19 in dispute.  Google agreed to add eight, and we

24   agreed to drop eight; so the dispute is now over 19 individual

25   custodians.

UNDER SEAL BY ORDER OF THE COURT

1          THE COURT:  So you're at how many total custodians in

2    that case right now?

3          MR. RICHARDSON:  So we are currently at 29 custodians

4    that Google has agreed to and 19 in dispute.

5          THE COURT:  Okay.  Well, that's where it was left.

6    There were 29.  At least that's what my records reflect.  Or am

7    I --

8          MR. RICHARDSON:  Correct.  Google has not agreed to

9    add any additional custodians.  We agreed, as an effort to

10   compromise, to drop eight of our requested custodians, leaving

11   19 in dispute.

12         THE COURT:  The parties have agreed on 29; correct?

13         MR. RICHARDSON:  Correct, Your Honor.

14         THE COURT:  Okay.  And, from Google, is that correct?

15         MS. CRAWFORD:  That's correct, Your Honor.  29

16   custodians.

17         THE COURT:  All right.  So here is what really

18   concerned me in looking at this case, this particular dispute

19   in Brown.

20         First, that I gave the parties pretty clear direction when

21   we addressed this back in June, where I was prepared to set

22   hard limits on custodians and deadlines for terms.  The parties

23   had made some progress, but I went back and looked at my order

24   on your ESI dispute from that time, and I think that the

25   direction was pretty clear.

UNDER SEAL BY ORDER OF THE COURT

1    I was very concerned to see the scope of the dispute that

2  was still open before me.  I'm glad there has been some

3  progress, but not enough; particularly with regards to the

4  plaintiffs' request for an additional or wanting a cap of 60

5  custodians, when I have signaled all along that that is

6  excessive.  And I think it had gone from 50 to 60.  So we had

7  this movement in the wrong direction.

8    And I appreciate that the defendants are getting documents

9  and reviewing documents, and that's what's behind this.  But

10  this is not a case -- it does not show enough discretion and

11  discipline to see those numbers expanding that way.

12    Now, it sounds like, again, there has been some progress.

13  So we're at 29.  There are 19 in dispute.  And I'm going to cap

14  custodians at 42.  42.  All right?  That's how many custodians

15  there will be.

16    And, Mr. Richardson, the deadline for Brown -- let me get

17  my dates here to identify.  So it will be 42 custodians.  Those

18  will be identified by August 23rd.  Identified by August 23rd.

19    In the meantime, and you don't have to take all that time,

20  obviously, if you can make that selection sooner, but not

21  waiting -- not waiting for finalization of the custodian list,

22  but the parties need to get underway on completing their meet

23  and confers as to the terms, as to the search terms.

24    I appreciate Google's argument that: No.  No.  We have to

25  take this first.  We need to know who the custodians are, then

UNDER SEAL BY ORDER OF THE COURT

1   we can constructively address the terms in toto.

2      No.  We're going to move forward.  And those terms will be

3   agreed to on August 30th.  No later than August 30th.  That

4   means sleeves rolled up, in a room, and Google and the Brown

5   plaintiffs hammering it out as to the 42 custodians.  Those

6   that -- again, terms are -- terms are still being negotiated

7   for -- that that gets done.  That will be done by August 30th.

8        MR. RICHARDSON:  Your Honor, this is Beko Richardson

9   again.

10     If I can give a little bit more good news on the search

11   term front, we were able to hammer out an agreement this

12   morning that resolved all of our disputes regarding the

13   existing 17 custodians as to the additional search terms.

14        THE COURT:  Okay.

15        MR. RICHARDSON:  I think that if we're able to reach

16   an agreement on the additional custodians, the additional

17   search terms should not be an issue.

18        THE COURT:  Good.  That is good news indeed.

19     If there is a dispute, then on August 31st, you can send

20   me -- you can make a joint submission to me that has --

21   you know, identifies by custodian the agreed terms, the

22   plaintiffs' disputed terms, that is the terms they want that

23   the parties can't reach agreements, with hit counts.  And then

24   Google's position, either -- you know, it's either a

25   compromise, modify the term this way, or Google's position is,

UNDER SEAL BY ORDER OF THE COURT

1    you know, this term is too -- either too broad or it has a

2    syntax problem.  But, you know, identify Google's position --

3    all right -- as to the terms in dispute.  That's all I want.

4        So it's a very functional, custodian name, here -- here

5    are Jane Doe's -- here are the agreed terms, here are the

6    disputed terms with hit counts, and here is Google's position

7    on those.

8        And that list had better not have 19 custodians on it.

9    All right?  19.  I didn't give you 19.  Better not have the

10   next, you know, 13 or however many that we're still in -- we

11   have a ways to go, if they only agreed to the first 17, but you

12   will get there.  All right?

13       I'm glad you've made progress.  Let's capitalize on that

14   momentum.  Get the terms shut down.  All right?

15       If not, give me that submission on the 31st, but as you

16   can see, I'll just deal with it in terms of a blunt instrument.

17   So I think you want to try to negotiate.

18          **MR. RICHARDSON:**  Understood, Your Honor.  Thank you.

19          **MS. CRAWFORD:**  Thank you.

20          **THE COURT:**  Production deadlines.  Google, productions

21   will be completed.  All right?  This is in both cases and this

22   actually goes for the plaintiffs as well, we will come to that

23   a little bit later in today's discussion.

24       Deadline for production of documents is September 30th.

25   Documents will be produced September 30th.  And the reason for

UNDER SEAL BY ORDER OF THE COURT

1  that, here is the thinking behind it -- and I appreciate this

2  is going to, obviously, require a change in the culture of

3  production by Google, but it's got to happen and it's got to

4  happen now.

5       That gives the plaintiffs the October time frame to

6  review -- assimilate and review documents.  And it leaves you

7  all November and the workable part of December for depositions.

8  You've got a little bit of overflow time after the first of the

9  year, but not much.

10      All right?

11      That's tight.  That I understand, but this is the time

12 we're doing it.  The pace in this case and in Calhoun, from

13 both sides, has been too slow.  And we've got some -- and I

14 appreciate, it's complicated and there is a lot of -- a lot of

15 material here.

16      And I have weighed carefully the plaintiffs'

17 responsibilities to limit and focus their demands where

18 appropriate, and Google's responsibility to be forthcoming with

19 relevant and responsive documents.

20      So that's the -- that's the time frame we are working off

21 of, and you'll see that it flows throughout the remaining

22 decisions.

23          MR. SCHAPIRO:  Your Honor, I hear what you say when

24 you say that you have weighed carefully the burden and what you

25 expect.  I, nevertheless, want to take a run at this because it

UNDER SEAL BY ORDER OF THE COURT

1   would not be fair to the team or even to the Court to be

2   promising things that I think, as a practical matter, are not

3   possible.

4       If we have -- if I understood your prior order a moment

5   ago -- and on some of this I can defer to Ms. Crawford who

6   understands the day-to-day of it.  But if your prior order is

7   that terms are to be agreed on August 30th, completing a

8   document production by September 30th, especially a document

9   production that's not riddled with error, is just not possible.

10      I think Ms. Crawford can, maybe, give a sense of the steps

11  that have to happen and the numbers involved --

12          THE COURT:  I'm well aware of the steps because we

13  have been through it before.  But what it requires is running

14  the terms against the custodians, and those hit documents go to

15  the vendors for production.  And review and screen -- I mean

16  that's what I meant.  Google will have to change its culture of

17  production and that will -- you know, you have all rights

18  reserved; there is no waiver of privileges; we have robust

19  protective orders.  But that is what we are up against, and the

20  parties have created this.

21      The parties have created this.  Everyone has known that

22  the day will come when productions have to be out the door.

23      I can shorten -- I can shorten.  I will hear a request.

24  I'll hear from you and Mr. Richardson on tightening the time on

25  identification of terms.  But I'm trying to allow the parties

UNDER SEAL BY ORDER OF THE COURT

1   enough room to negotiate that on the front end, and it just has

2   to happen.  It has to happen.

3        MR. SCHAPIRO:  So, yes, I think we would take you up

4   on that, to shorten the amount of time at the front end here on

5   the terms.  And I would, nevertheless, ask if maybe you could

6   see your way to it adding an extra week to that process.

7        Because, of course, it's not just -- you run the hit count

8   and maybe you get -- so you run the terms and maybe you get

9   100,000 documents from someone.  They then need to be reviewed

10  for are they responsive to any document request and for

11  privilege before even being sent to the vendor.  So you don't,

12  obviously, just send 80,000 from one custodian to a vendor --

13       THE COURT:  That's where Google will have to adjust

14  and address the process.  And, you know, you have to go to

15  spot-reviewing for relevance and responsiveness; what are the

16  terms returning?  You can do that pretty quickly.

17       And the plaintiffs bear the burden; right?  If they are

18  not focused, they have more than they can manage before

19  depositions get started.  But they have to manage that on the

20  front end with their focused requests.  But to a certain extent

21  the burden is on them.

22       MR. SCHAPIRO:  So can we push that August 30th, let's

23  say to August 23rd, and can I get a few days past

24  September 30th so I'm not tarred and feathered by the team and

25  the client?

UNDER SEAL BY ORDER OF THE COURT

1          THE COURT:  Mr. Richardson?

2          MR. RICHARDSON:  Your Honor, we have no objection to

3    August 23rd for a joint submission and we're happy to try and

4    make the proposal tomorrow, if possible, and try and resolve

5    this even before then.

6          THE COURT:  Okay.

7      Ms. Crawford?

8          MS. CRAWFORD:  If I may be heard, Your Honor.  The

9    issue that I foresee is one as is it relates to the

10   identification of new custodians who --

11         THE COURT:  Hang on one second, Ms. Crawford.  I want

12   to be sure that the court reporter can hear you okay.  Your

13   voice is a little muffled.

14         MS. CRAWFORD:  Is this any better?

15         THE COURT:  That is better.  So be as close to the

16   microphone and speak slowly.

17         MS. CRAWFORD:  Absolutely.

18      As it relates to the August deadline that has been set for

19   the 42 -- the identification of the 42, the full list of 42

20   custodians, in the event that plaintiffs proposed a custodian

21   who's not yet been discussed between the parties, there are a

22   number of steps that must be taken to collect data, process

23   data, for those individuals that may require additional time

24   due to this process that we're contemplating.

25      For custodial data that's already capable of being tested

UNDER SEAL BY ORDER OF THE COURT

1   using the search terms, we will make best efforts, Your Honor,

2   to comply with that timeline that's been proscribed.  But if we

3   don't have the data, there is sort of a one- to two-week

4   turnaround before we even have the ability to test terms for a

5   new custodian that has not been discussed between the parties.

6        So I just want to, one, let the Court know that this is an

7   additional wrinkle; and, two, ask that it be factored into the

8   dates and the deadlines that we're discussing.

9        THE COURT:  I appreciate that, Ms. Crawford.

10       I am not unfamiliar with the process, and I know that

11   would be difficult.  And the plaintiffs should be keeping that

12   in mind.  I've given them a pretty short leash in terms of

13   additive custodians.  So I -- well, Mr. Richardson?

14       MR. RICHARDSON:  Your Honor, we will select the 13

15   from the 19.  There won't be any surprises.  We will get this

16   done.

17       THE COURT:  Okay.  Then I will, pursuant to Google's

18   request, will set the deadline for the 23rd for final

19   identification of the 42 and search terms.  But that requires

20   the parties to meet and confer, and that is next week.

21   All right?  That is, let's get these terms done and agreed to,

22   and this submission to me.  If there is any dispute, you can

23   make that submission on the 24th.  Okay?

24       Obviously -- and, you know, the submission to me is the

25   result of the meet and confer efforts.  It's not the start of

UNDER SEAL BY ORDER OF THE COURT

1   meet and confer.  But it sounds like you all have -- you've

2   been paying attention to this.  So that's good.

3        MR. RICHARDSON:  Your Honor, just to clarify.  With

4   those modifications, does that mean that the September 30th

5   date will hold?

6        THE COURT:  Well, that's just what I'm looking at.  I

7   did consider a very early October date.  Perhaps October sounds

8   better to Google than September.  It's only a matter of a few

9   days, Mr. Richardson.

10        MR. RICHARDSON:  I would defer to the Court.

11       And yet I would just note that we are still awaiting a

12   privilege log in connection with the production on June 18th.

13   So even if there is a September 30th deadline, I think we're

14   still going to be working through document issues for some

15   number of weeks afterwards.  So I'm reluctant to agree to

16   anything that prolongs this.  I think September 30th is

17   appropriate.  But if Your Honor wishes to push that into

18   October, we have no objection.

19        THE COURT:  My concern with pushing the date is the

20   practical reality of getting depositions scheduled in November

21   and December.  It can be hard to wrangle deponents.  I'm not

22   worried about counsel; I know that they'll be there, but it can

23   be difficult to manage deponents.  So that's -- that is, in

24   part, what's driving that deadline.

25        MR. RICHARDSON:  Yeah.  On that issue, I would just

UNDER SEAL BY ORDER OF THE COURT

1   add that the last time, you know, we had hoped for more of a

2   rolling production, but it was one large production on

3   June 18th, with some smaller productions before. So I would

4   expect a large production on June -- on September 30th that

5   would take us some time to get through, and then notice

6   depositions, and proceed with those depositions. So I would

7   submit that September 30th is appropriate.

8         **THE COURT:** Okay. Here's what I'll do. I'll extend

9   the deadline to October 6th. October 6th. All right? That's

10   seven days.

11     October 6th will be the deadline for production, and this

12   will be a rolling production. And I appreciate, you know,

13   we're under the gun and there is a lot of steps that have to

14   happen.

15     Mr. Schapiro, we lost you.

16     He should be back. There he is.

17     So October 6th -- if you missed that, Mr. Schapiro,

18   October 6th is the deadline that spares the tarring and

19   feathering, but I'm confident that these teams can and will

20   work together. We'll get that done. You will get that done.

21         **MR. SCHAPIRO:** Thank you, Judge.

22         **THE COURT:** But there will be a rolling production. I

23   want to make that very clear. To the extent, again, the

24   documents are out from the vendor, then they get in the

25   database and they get produced.

UNDER SEAL BY ORDER OF THE COURT

1          Pardon me.

2               **MR. SCHAPIRO:**  Thank you, Your Honor.

3               **THE COURT:**  All right.  We're going to -- we still

4     have a lot of ground to cover, and we've made good progress.

5     I'll tell you what, we will just address the Brown issue on the

6     Google depositions and then we're going to take a short break

7     for the court reporter, and then we'll return to the Calhoun

8     specific issues.

9          So this is P17.  Let me get my notes for that.

10         And let me just ask, is there a -- this is a dispute about

11    the timing and number of Google depositions.  And the parties

12    have had some difficulty and they're back and forth in

13    scheduling and getting back to each other.

14         Has there been any progress on this since August 2nd,

15    since the submission to me?

16              **MS. BONN:**  This is Amanda Bonn for the Brown

17    plaintiffs, Your Honor.

18         Unfortunately, I don't think there has been much progress

19    made.  That said, I think that Your Honor's guidance on the

20    numbers of custodians, obviously, you know, crosses over into

21    depositions.

22         You know, our two concerns are, 10 is just not enough; and

23    number two, we need to have some reasonable process for getting

24    things on calendar.  We can't have three months go by from a

25    notice to a deponent sitting.

UNDER SEAL BY ORDER OF THE COURT

1        THE COURT:  All right.  We'll work.  I think that the

2   plaintiffs' proposal for timing, which is to provide dates for

3   a deponent within a week of getting the notice, and then to

4   offer dates that are then within five weeks of that notice is

5   reasonable.  I will also require the plaintiffs to confirm

6   dates in 48 hours.

7        Is there already an agreement for this protocol in place

8   in Calhoun?

9        MS. TREBICKA:  There is not, Your Honor.

10       THE COURT:  Okay.  Then we're going to use the same

11  process in Calhoun.  Okay?  We're going to use the same

12  schedule, that will make it clear for everyone in both Calhoun

13  and Brown.

14       The protocol for getting noticed will be as proposed by

15  plaintiffs.  That's on page 28 of the Brown summary chart, with

16  the addition of confirmation of the date coming back from

17  plaintiffs -- or coming back from the producing party within

18  48 hours.

19       All right.  You all are going to be managing.

20       With regards to number of depositions, same question, has

21  that been addressed in Calhoun?

22       MS. WEAVER:  It has not, Your Honor.

23       THE COURT:  Okay.  Then that is ripe as well.

24       I'm going to allow, in each Brown and Calhoun, I will

25  allow a total of 20 depositions.  20 depositions.  All right?

UNDER SEAL BY ORDER OF THE COURT

1      That will include -- that includes joint depositions, that

2   includes 30(b)(6) depositions, not the ones I previously have

3   ordered around the database issue because I ordered those

4   early, and I believe I indicated those would not count against

5   the limits.

6      But that's -- that will be the limit for the number of

7   depositions.  All right?

8      If a plaintiff believes that the sun, stars, moon must

9   move for an additional deposition, you can make that request to

10  the Court.  I'm just going to tell you right now, one, it will

11  be a good cause showing.  And I'm very unlikely to allow,

12  you know, any more than a couple of additional depositions.

13     So this is not -- it's not an open door to start with 20

14  and see where you are.  This is, you should be working with 20

15  as the limit, and if you end up with a -- you know, a name or

16  two that you believe you have to have, you may come to

17  the Court and seek that.  I'll hear from both sides.

18          MS. BONN:  Your Honor, could I ask for clarification

19  on just a couple of questions?

20          THE COURT:  Of course.

21          MS. BONN:  One is I understood Your Honor to be saying

22  20 depositions per case.  And a joint deposition would count as

23  a depo against each case?

24          THE COURT:  Right.

25          MS. BONN:  And then the second question I had is, you

UNDER SEAL BY ORDER OF THE COURT

1    know, if we serve a 30(b)(6) notice in the Brown case and

2    Google designates six different witnesses on different topics,

3    we have very little control over how many witnesses they choose

4    to designate.  And so can we get some guidance on how to deal

5    with how we count 30(b)(6) depositions?  Is it one notice

6    counts as one depo against the limit?

7         THE COURT:  Well, again, I expect the parties to work

8    that out.  I don't want gamesmanship where a party notices a

9    bunch of people to try to use up the depo count.  I also don't

10   want notices that are, you know, far and wide categories that

11   aren't necessarily related.  All right?

12        MS. BONN:  Understood.  Thank you.

13        THE COURT:  So a 30(b)(6) notice that has, you know,

14   all related topics, if there need to be multiple witnesses then

15   that's going to be one witness on that notice.  But if that

16   notice has far-reaching topics, then those are going to be

17   separate -- you know, separate and individual, and they will

18   count separately.

19        MS. BONN:  Understood.

20        MS. TREBICKA:  Your Honor --

21        THE COURT:  I think the parties all get it.  You're

22   all very experienced with this.  And if you can't, you can

23   submit the notice and the number of depos to me.  I'll call it.

24   But you really -- I don't think you -- I don't think that will

25   satisfy either side, let's put it that way.

UNDER SEAL BY ORDER OF THE COURT

1          MS. TREBICKA:  Your Honor, may Google suggest

2   something?

3      How about it be measured by hours?  Every seven hours is a

4   deposition for a 30(b)(6) notice.  It's just because I can

5   foresee how there may be disagreements in the future over are

6   these really related topics, do they go over into another

7   topic?

8          THE COURT:  I appreciate that suggestion,

9   Ms. Trebicka.  I always preferred, as a litigant, and often

10  judges also prefer, using hours instead of -- instead of

11  numbers.  And I think perhaps for managing the 30(b)(6)

12  depositions, that may be a good way to go.  I think that that's

13  probably a good idea.

14      Ms. Bonn?

15          MS. BONN:  I tend to agree with that, Your Honor.  I

16  just think it's more of a bright-line rule and it will avoid

17  disputes.

18          THE COURT:  Which is music to my ears, Ms. Weaver.

19          MS. WEAVER:  I agree.

20          THE COURT:  Mr. Mao?

21          MR. MAO:  Your Honor, this is Mr. Mao for the

22  plaintiffs in Brown.

23      Just a quick point of clarification, because of one your

24  prior rulings, Judge, which is that you indicated that on a

25  joint deposition, it would be a total of 10 hours.  So I just

UNDER SEAL BY ORDER OF THE COURT

1    want to make sure that, insofar as Ms. Trebicka is talking

2    about a seven-hour count, that does not apply to any in which

3    we actually choose to put into the 20, by way of a joint

4    deposition, and those instead will be a 10-hour, in order for

5    that to count against each of our individual 20s.

6        THE COURT:  Right.  So Ms. Trebicka's suggestion as to

7    30(b)(6) depositions, that we count each seven hours as a -- as

8    one deposition.  And I think we all agree that's a nice

9    bright-line rule.

10       I believe, you're addressing the situation, Mr. Mao, if

11   it's a joint 30(b)(6); is that -- is that what you're asking?

12       MR. MAO:  Actually, Your Honor, I haven't thought

13   about that.  I was just making sure, because your initial --

14   Ms. Trebicka's initial statement sounded like it was

15   encompassing all depositions.  And in order to avoid further,

16   you know, conflict on this, I just wanted to make sure that the

17   10 hours for individual joint depositions would not count

18   against -- would not, you know, somehow end up as a seven-hour

19   deposition instead.

20       THE COURT:  I think the parties can navigate their way

21   through that.  And I would expect you would be able to address

22   a joint 30(b)(6), ten-hour deposition as well.  All right?

23       MS. TREBICKA:  Agreed.

24       THE COURT:  Okay.  I expect everyone to be reasonable

25   and manage these.  But thank you for requesting the

UNDER SEAL BY ORDER OF THE COURT

1   clarification, Mr. Mao.  I want to be sure that is clear.

2   All right?

3        Okay.  Now, let's take a break for the court reporter.

4   Let's take we'll take a ten-minute recess, and then we will

5   reconvene and move to the Calhoun matters and next steps.

6        All right?  Please be back 10 minutes.  Thank you.

7                    (Recess taken at 10:40 a.m.)

8                    (Proceedings resumed at 10:50 a.m.)

9           THE CLERK:  Court is back in session.

10          THE COURT:  All right.  We have Ms. Ekhaus?  We do.

11  All right.  Then we are ready to go.

12       All right.  Turning to the Calhoun ESI dispute, this is

13  from the parties' submission on July 23rd, Docket 251.  This

14  was a specially-ordered submission.  I understand the parties

15  are still disputing ESI search terms.

16       Has there been any progress on this front?

17       Who's got the mic for Calhoun on this, please?

18          MR. STRAITE:  Your Honor, this is David Straite for

19  plaintiffs.

20       We did confer yesterday with the Calhoun team -- I'm sorry

21  with the Google team, and invited further conversations on

22  this.  We have not had further discussions this morning;

23  however, we did hear Your Honor's rulings on other matters, and

24  hearing you loud and clear on tone, et cetera, would it be

25  helpful to Your Honor if the parties met and conferred again

UNDER SEAL BY ORDER OF THE COURT

1   tomorrow and Monday and got you what we hope would be further

2   revisions on Tuesday?

3       I have not run this by Google's counsel.  We are just

4   thinking, in light of what you ruled earlier today, we're

5   hearing you.

6       THE COURT:  All right.  Okay.  Let me ask a clarifying

7   question for myself.  I appreciate that proposal, Mr. Straite.

8   I'll hear from Google, if they think that might be productive

9   or not.

10      But as I understand, the dispute is over -- there're 23

11  terms in dispute, 23 search terms.  The chart, Exhibit A, has

12  48 terms on it.  So what are the disputed terms, or am I

13  misreading the chart?

14      MR. STRAITE:  Yes, Your Honor, you are misreading the

15  chart.  Because the numbers are -- we preserved the original

16  numbers.  So if you see Chart 1, 2, 3, 4, 5, 6, and there is no

17  7, and there are others that are missing.  So the actual number

18  is 23, even though the numbering retained the original numbers.

19  For clarity, we retained the original numbers.

20      THE COURT:  Got it.  Silly me.  I looked at the last

21  page and the last number.  I did not actually go through and

22  count them all by hand.

23      MR. STRAITE:  That falls on Jomaire and David.  We

24  apologize.

25      THE COURT:  Well, that certainly clears up that

UNDER SEAL BY ORDER OF THE COURT

1    question.

2        Okay.  These are the terms in dispute.  We're at 1.3 --

3    call it 1.4 million unique hits.

4        If the parties want to meet and confer further, but tell

5    me where you think we are, or would that be beneficial.

6        Ms. Crawford?

7        MS. CRAWFORD:  Well, I think Mr. Straite's comments,

8    his invitation to further meet and confer, we've remained

9    willing to meet and confer.  We put a proposal in our joint

10   submission suggesting that a cap of 350,000 document hits is

11   appropriate, and can be reviewed in the amount of time that we

12   have to complete fact discovery; especially in light of the

13   extensions that your Court has just ordered.

14       If they -- if plaintiffs believe it would be beneficial

15   for us to meet and confer tomorrow, we remain willing to do so.

16   We've proposed a number of suggestions to the terms in order to

17   cut down the universe.  So we're hoping that that input and

18   feedback we've given over time will ensure a fruitful

19   discussion.

20       THE COURT:  Okay.

21       MR. STRAITE:  And, Your Honor, further to that

22   optimistic view, there are three additional things that, maybe,

23   also will help us move to resolution.

24       As we noted in the submission and to Your Honor in the

25   last hearing, the 1.4 million unique hits, that is a

UNDER SEAL BY ORDER OF THE COURT

1    duplicative number.  The de-duplication here that Google is

2    using doesn't happen until after the search terms are agreed.

3        We spoke with our ESI experts and we know that the

4    de-duplication could, if we chose to, could be done prior to

5    the hit count.

6        So, if it's possible with Google's litigation platform, it

7    would be helpful to see the de-duplicated number, and get that

8    1.4 million down to a more realistic number, just from that

9    alone.

10       Number two, it will be helpful to know if there are

11   specific search terms that Google is disputing on burdens

12   grounds.  So far we've gotten an aggregate objection --

13           THE COURT:  You're going a little fast there,

14   Mr. Straite.

15       If there is a specific ground that Google is?

16           MR. STRAITE:  So if there are objections that Google

17   has to specific ESI terms.  So far we've gotten objections to

18   the aggregate number.  So we're hearing that 1.4 million unique

19   hits is too big a number in the aggregate.

20       What may be useful is if we can focus on a

21   search-term-by-search-term burdens argument.  So if there are

22   two or three that are constituting the real bulk of their

23   objections, but there are other search terms that we can agree

24   to, we're not yet hearing from Google a term-by-term argument.

25   We're talking about the aggregate number, and that's proving to

UNDER SEAL BY ORDER OF THE COURT

1  be an obstacle to resolution.

2         THE COURT:  All right.

3         MS. CRAWFORD:  If I may respond, Your Honor.  What we

4  did in combing through all of the disputed search terms is

5  that -- well, first disputed and undisputed.  We accepted a

6  number of undisputed --

7         THE COURT:  Yeah.  We're past that.  We got that.

8         MS. CRAWFORD:  -- where we did not have burden

9  arguments.  And so the remainder of the terms that appear in

10 the chart that was attached to the joint submission represent

11 the terms for which we believe there is a significant burden

12 associated with running them.

13        And there are footnotes explaining why each of the terms

14 and the counts associated with them reflect the arguments that

15 we've made.

16        THE COURT:  Okay.  I appreciate that.

17        I think that both parties are mindful, particularly with

18 regards to the deadlines.  Plaintiffs need to be seeking and

19 retrieving a manageable universe of documents; however, I do

20 not think that a proposal of 350,000, a cap, an arbitrary cap,

21 is appropriate.

22        So let me put that out there so that the parties can meet

23 and confer constructively.  It would really be around the

24 terms.

25        Ms. Crawford, I don't know how quickly, if Google's

UNDER SEAL BY ORDER OF THE COURT

1   platform or how quickly you could produce a de-duplication hit

2   count number.  I've never understood it to be that facile of a

3   process, but the technology, I'm quite sure, has moved

4   beyond -- has kept improving while I've been on the bench.

5       So that may be helpful.  I'm just going to give the

6   parties some guidelines.  That may be helpful.

7       I'm not inclined to set an arbitrary cap.  There could be,

8   you know, all of the hits could be responsive.  And reflect

9   communications on the very issues keyed in this dispute.  And

10  if all of those were responsive, they would all have to be

11  produced.

12      But, it doesn't sound like the plaintiffs are quite there

13  yet.  And, frankly, I don't see that yet in the terms here.

14  But I do see a lot of effort in these terms and an effort to

15  focus and circumscribe searches.  I think the parties can

16  continue to do a little better.

17      But in light of the deadlines, I can't give you too much

18  time.  So roll up your sleeves.  Have a meet and confer.  You

19  may resubmit the chart to me on Monday.  You know, with

20  whatever the remaining terms in dispute are.  And if there is

21  additional or more refined hit count information, great.

22      And I'll make a call.

23          MR. STRAITE:  Thank you, Your Honor.

24          THE COURT:  Ms. Crawford?

25          MS. CRAWFORD:  I think -- I just want to preface that

UNDER SEAL BY ORDER OF THE COURT

1    hit counts do take some time.  So we'll meet and confer

2    tomorrow.  We'll make sure that folks are on stand-by over the

3    weekend to turn those counts around.

4         And if we need to have a further conversation on Monday

5    before the submission goes in, if one needs to go in, then we

6    will certainly do that.

7         We've provided a lot of guidance as for how these terms

8    can be narrowed.  And I'll also share with counsel for Calhoun

9    what we've been able to do in the Brown action in order to

10   resolve a lot of the search term disputes without resort to

11   further intervention by Your Honor.  And so, hopefully, we can

12   report more favorable progress on Monday.

13        THE COURT:  Okay.  All right.

14        I'm all for giving the parties an opportunity to make

15   this -- the production more manageable.  The production

16   deadlines will remain, of October 6th.  So that will need to

17   be -- need to be managed, and that's going to require

18   management on both sides.

19        So -- all right.  I'll defer to Monday.

20        And if you reach agreement and there is no further

21   submission, please let me know that as well.

22        MR. STRAITE:  Thank you, Your Honor.

23        MS. CRAWFORD:  Thank you.

24        THE COURT:  All right.  The dispute regarding the

25   production of damage-related documents from the plaintiffs to

UNDER SEAL BY ORDER OF THE COURT

1    Google.  This is Dispute 2.7.  And I did review that and I --

2    let me just find my notes here.  I seem to have moved the wrong

3    page.

4        Yes.  So let me just -- as I understood the Calhoun

5    plaintiffs' position, it was that they were looking for

6    documents; if they have responsive documents, they will produce

7    them.  And perhaps the production deadline now informs this

8    decision.

9        But just as Google must engage in a rolling production, so

10   must the plaintiffs.  So if these documents have been

11   identified, they need to be produced well in advance of the

12   deadline, in any event, to the extent they exist -- pardon my

13   cup of water in the screen.  To the extent they exist, the

14   production will be completed by -- I'm sorry, I said September

15   30th -- by October 6th.  By October 6th.  All right?

16            MS. WEAVER:  Understood, Your Honor.

17       The only point of clarification that I could give is that

18   this particular topic is an example of asymmetry of

19   information.  And we when get what Google has on the

20   plaintiffs -- and I can give you a concrete example -- it may

21   be that we then realize is something this relevant.

22       Here is the example:  We received from Google documents

23   relating to a given client's ▮▮ ▮▮▮▮.  We, as the lawyers,

24   weren't even aware of that issue.  We do think it directly

25   impacts privacy.  Maybe we would want to go back to the

UNDER SEAL BY ORDER OF THE COURT

1   plaintiff and say:  Okay.  This is now relevant in the case.

2        But other than that, we have produced what we have.  We

3   are actively seeking.  We understand our obligations and we

4   will comply with them.

5        **THE COURT:**  All right.  And that's what the order will

6   reflect.  To the extent --

7        **MS. FANI:**  Your Honor, if I could just clarify one

8   thing.  To the extent that plaintiffs seek to rely on any of

9   these documents in their motion for class certification, we ask

10  that they either provide the documents in advance of the

11  September 2nd deadline for that motion, or that they provide

12  some notice that no such documents exist by that date.

13       **THE COURT:**  Well, if they need it for class cert,

14  you'll see them.  Right?  I mean, if they are relying on them,

15  you will see them.  They will not be pointing to documents that

16  have not been produced, because they will do that by

17  identifying a specific Bates number.

18       So I think that that -- that addresses that issue.  And I

19  would expect nothing less.

20       With regards to the response to Interrogatory Number 7,

21  Dispute 2.12, I appreciate the parties are arguing about,

22  ultimately, what's relevant or what -- what facts remain

23  relevant to the unlawful competition claims.  But, at this

24  point in discovery, ultimately, that would be an issue for

25  Judge Koh at trial.  At this point in discovery, the request is

UNDER SEAL BY ORDER OF THE COURT

1   proper and needs to be responded to.

2       The plaintiffs will identify with some specificity, not

3   just pointing to the large pile of Google catalogs, what

4   they -- what statements by Google constitute the

5   representations, where they -- where it exists, and if --

6   plaintiffs will answer the question did they review it.

7       The answer, understandably, may be, "I don't remember,"

8   but the question will be answered.

9       And then the ultimate dispute over relevance of this

10  information will be an issue for Judge Koh.  But at this stage,

11  it is relevant and proportional to the matter, and it will be

12  answered.

13      So plaintiffs will answer Interrogatory 7.  The Calhoun

14  plaintiffs will answer Interrogatory Number 7, and you'll do

15  that and provide those verified responses in two weeks, by

16  August 26th, two weeks.

17      All right.  Those are all of the disputes.  Those are the

18  priority disputes that the parties had identified.  Those are

19  the disputes that I had an opportunity to work through.

20      I did not parse through the summary charts to identify

21  additional disputes.  I am confident they are there.  I am

22  hopeful that today's directives give the parties direction.

23  And that those can be resolved.

24      I also appreciate -- I do limit the parties because,

25  frankly, that's just all the time I have to get through.  These

UNDER SEAL BY ORDER OF THE COURT

1   issues are complicated and it takes a fair amount of court time

2   which is -- which is fine.  That's why I'm here.

3        If there are remaining disputes in the submission of

4   August 2nd, in either Brown or Calhoun, that a party feels need

5   to be addressed at this time, and there may well be, then each

6   side in each of the cases, can identify -- can identify three

7   additional disputes that you think the Court needs to pay

8   attention to at this time.  And you can submit those to me,

9   identify those, and it's just a list, tomorrow.  All right?  By

10  close of business tomorrow.

11       So Calhoun plaintiffs, you can pick three more.  Google,

12  you can pick three more in that case.  You don't have to pick

13  three.  It's okay.  You can defer -- decide to defer some.  You

14  can, in light of today's discussions, determine perhaps some

15  more meet and confer, or maybe we don't want to try the Court's

16  patience with this issue.  And that's fine.  You're not --

17  they're not forever waived.  You're just not putting them on

18  the list for my attention.

19       Same goes in Brown.  You can identify -- the Brown

20  plaintiffs you can identify three; Google can identify three.

21  But let me just be clear:  These are going in my discovery

22  queue.  On August 2nd when I had rolled off of crim duty and

23  came to pay attention to the discovery queue, your August 2nd

24  submissions were disputes 12 and 13, respectively.  12 and 13.

25       So I did my best.  As you well know, you're not the only

UNDER SEAL BY ORDER OF THE COURT

1   case and not the only discovery cats to be herded.  And, I

2   mean, that with all, you know, respect and sincerity.

3       So I think our next timing for our next group session, if

4   you will, I'll -- let's set that for September 30th since that

5   day is now available because Google is not pushing documents

6   out the door.  September 30th, 9:30 a.m.  9:30 a.m.  I'll

7   take -- let's be realistic.  I'll take submission from the

8   parties, two issues each side, two for plaintiffs in each case,

9   two for Google.

10      On the -- I've got some other commitments that preceding

11  week.  I'll take them by noon on the 24th.  Noon on the 24th.

12  And I will do my best to get through those disputes and be

13  prepared for a further session on the 30th.

14          MS. BONN:  Your Honor, I had one request for

15  clarification.

16      I think Google and the Brown plaintiffs both were hoping

17  for some clarification.  Our issue P3 is sort of a mirror issue

18  of the Calhoun cleanroom issue, and it was just unclear to us

19  whether that dispute had been referred to Special Master Brush

20  or not.

21      I assumed, based on the comments in the Calhoun case that

22  it would likely be the same in ours, but we just were hoping

23  for some clarification there.

24          THE COURT:  Your dispute P3?

25          MS. BONN:  Correct, Your Honor.

UNDER SEAL BY ORDER OF THE COURT

1          THE COURT:  Yes, to the extent -- if that's a

2    cleanroom dispute, then that will be addressed by the special

3    master.

4          MS. BONN:  Thank you, Your Honor.  We appreciate it.

5          THE COURT:  Yeah.  I overlooked that.

6          MR. MAO:  Sorry, Your Honor.  This is Mr. Mao for the

7    plaintiffs for Brown.

8          I just did a close reading of what Your Honor just said,

9    which is that to the extent it includes the cleanroom access,

10   there is a portion of that which is beyond the cleanroom, which

11   is your prior order, Your Honor, on all unauthenticated data.

12         THE COURT:  That's for the special master.  The

13   production of plaintiffs' data is all for the special master.

14         MR. MAO:  Thank you, Your Honor.

15         THE COURT:  Aren't you glad you're here, Mr. Brush?

16         MR. BRUSH:  I am, Your Honor.

17         And, actually, I was just going to key in.  So it was a

18   perfect touchpoint.  Just to go on record and, again, with

19   these two issues here, before me, I do want to reiterate, the

20   parties, we did have a conference informally a couple of weeks

21   ago.  And just to go on record and be crystal clear about it,

22   please do not waste my or the Court's time with a lot of things

23   that are needlessly complicated.  The issue themselves are

24   already complicated.

25         So as we look through these things, particularly around

UNDER SEAL BY ORDER OF THE COURT

1   what's being asked for, we really want to avoid anything that's

2   a fishing expedition, overly broad.  So really make sure you

3   tailor things, and really be thoughtful when you come to me.

4        I really want to be able to move through these issues

5   quickly and not, quite frankly, have do the work for you.  So I

6   do expect the parties to come with things resolved to the

7   extent that they can, and then really ask me to help issues

8   that are not.

9        So, you know, by all means, please continue to work with

10  each other.  I sat here for two hours.  It sounds like

11  everybody is willing to.  I want to reiterate that fact,

12  please, come to me with things in a more fully-baked form than

13  just "we want this" or "we want that."

14            MR. SCHAPIRO:  Will do.

15            THE COURT:  The disputes before Special Master Brush,

16  just as the disputes before me are the end of the meet and

17  confer efforts.  The end of the meet and confer.

18       Now, I appreciate that, like today, where you get guidance

19  that warrants some further meet and confer, that's fine.  I

20  know there was some back and forth, some tussling between the

21  parties on preparation of the summary charts.  The charts, that

22  is never the place where you put a position that you hadn't yet

23  communicated to the other side.

24       There are no surprises in the chart.  I think an argument

25  was made that:  Well, we got, you know, these issues and we

UNDER SEAL BY ORDER OF THE COURT

1   didn't have enough time to respond.

2       There should be no seeing issues for the first time by the

3   time you get the submission to the Court, or the submission to

4   Mr. Brush.   Those -- the chart that comes before me and

5   submissions that you make to Special Master Brush, are the end

6   of your meet and confer process.   They are not the start.

7       You have worked through it.   And you have mutually agreed

8   that all you can do is disagree, and you need someone to call

9   it in or out, and that's what we're going to do.

10       All right?

11       I think the parties get that.

12       I also appreciate you've got deadlines, and clients, and a

13   tremendous amount -- a tremendous amount to accomplish.   But

14   this is a highly capable group, and I'm confident you can get

15   there.

16       Other questions for the Court today?

17       Thank you, Special Master Brush.   I appreciate that.   I

18   wanted to be sure you did have a moment to address the group

19   with me.   And I believe I referred to this earlier, let me just

20   make clear, Special Master Brush and I have conferred and we

21   will continue to confer as needed in the case.   We will -- we

22   will be staying on the same page, so -- as you would expect.

23       Ms. Weaver, did you have a question?

24           MS. WEAVER:   I did.   Thank you.

25       And it's really, Mr. Brush, for you.

UNDER SEAL BY ORDER OF THE COURT

 1        We did have a request to submit additional briefing as a

 2   result of our August 4th, 30(b)(6) deposition, which touches

 3   upon the matters in front of you.  We had raised it with

 4   Judge van Keulen.  You are now running the show.  We wondered

 5   if it's time for that to just update you, or how would you like

 6   to handle that?

 7        MR. BRUSH:  Yeah.  Have I been provided the transcript

 8   of the 30(b)(6) from August 30th?

 9        MS. WEAVER:  August 4th.  No, you haven't.

10        MR. BRUSH:  I'm sorry.  August 4th.  My apologies.

11        MS. WEAVER:  No worries.

12        MR. BRUSH:  Yes.  If I can get that, I would like to

13   review that to see what was brought up and if it gives context

14   or clarity around any of the issues.

15        MS. WEAVER:  Okay.  We can do that.  But you do not

16   want any additional briefing, I am inferring; is that correct?

17        MR. BRUSH:  That's correct.  At this point, we're

18   still getting our feet on rest with this data to see what is

19   there, and if there are any issues with that.  So just give me

20   a few moments with that, because more data is not going to be

21   potentially helpful at this moment.

22        But to that point too, you know, for the parties again,

23   you know, I would like to -- I would like to have an update

24   early next week on where we are, whether it's something that's

25   formally filed with the Court or otherwise, on the -- on the

UNDER SEAL BY ORDER OF THE COURT

1    issues, if there is going to be an additional meet and confer

2    over the next 24 hours that helps resolve anything before it

3    comes to me.

4             MS. WEAVER:   Thank you.   Understood.

5             THE COURT:   All right.   Any other issue from

6    plaintiffs in either case for today, clarification of the

7    issues we've already addressed?

8                          (No response.)

9             THE COURT:   All right.   And for Google in either case.

10   Mr. Schapiro?

11            MR. SCHAPIRO:   Nothing, Your Honor.   Thank you for

12   your time.

13            THE COURT:   As always, I find counsels' input in this

14   process helpful.   I know you worked hard to prepare for this,

15   as does the Court and the special master.   So thank you for

16   that.   And for everyone's attendance.

17       I do appreciate it, and it helps us to move smoothly.

18       I want to note for the record, I think this is our

19   shortest joint discovery hearing, in that we haven't yet hit

20   the two-hour mark.   So I'm going to take that as progress.

21       All right.   Keep up the hard work.   Get me that submission

22   on Monday, as necessary.   And I think the other deadlines are

23   quite clear.   I will issue an order reflecting today's rulings.

24       Thank you.   All right.

25       That concludes this matter and we're adjourned.

UNDER SEAL BY ORDER OF THE COURT

1          MS. BONN:  Thank you, Your Honor.

2          MS. WEAVER:  Thank you, Your Honor.

3          MR. SCHAPIRO:  Thank you.

4               (Proceedings adjourned at 11:18 a.m.)

5                        ---o0o---

6

7                CERTIFICATE OF REPORTER

8          I certify that the foregoing is a correct transcript

9  from the record of proceedings in the above-entitled matter.

10

11  DATE:   Friday, August 13, 2021

12

13

14

15

16  _____

17     Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
       Official Reporter, U.S. District Court

18

19

20

21

22

23

24

25