# EXHIBIT A
# Redacted Version of Document Sought to be Sealed

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel
listed in signature blocks below*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

    Plaintiffs,

    v.

GOOGLE LLC,

    Defendant.

Case No. 5:20-cv-03664-LHK

**JOINT CASE MANAGEMENT
STATEMENT**

Judge: Hon. Lucy H. Koh
Courtroom 8 – 4th Floor
Date: September 29, 2021
Time: 2:00 p.m.

1      Pursuant to Federal Rule of Civil Procedure 16, Civil Local Rules 16-9 and 16-10, the

2   Standing Order for All Judges of the Northern District of California, the Court's Case Management

3   Order of May 20, 2021 (Dkt. 171), and in advance of the Further Case Management Conference set

4   by the Court for Wednesday, September 29, 2021, at 2:00 p.m., Plaintiffs and Defendant Google

5   LLC ("Google") submit this Joint Case Management Statement to report the parties' progress since

6   the previous Joint Case Management Statement was filed on July 21 (Dkt. 224).

7          **<u>Google's Preliminary Statement</u>**

8      Google respectfully seeks the Court's intervention on Plaintiffs' improper inclusion of

9   purported summaries of evidence, detailed descriptions of and quotations from documents produced

10  in discovery, and extended legal arguments in this Joint Case Management Statement ("Joint

11  Statement").

12     The Northern District of California's Standing Order (the "Standing Order") provides that,

13  with respect to discovery, the parties should identify: "Discovery taken to date, if any, the scope of

14  anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report

15  on whether the parties have considered entering into a stipulated e-discovery order, a proposed

16  discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes." With

17  respect to class certification, the Standing Order asks for: "a proposal for how and when the class

18  will be certified, and whether all attorneys of record for the parties have reviewed the Procedural

19  Guidance for Class Action Settlements."

20     Plaintiffs' sections in this Joint Statement go far beyond what is contemplated by the

21  Standing Order. Plaintiffs include self-serving summaries of depositions and documents, Plaintiffs'

22  views of what the discovery taken to date proves on the merits, and argument on the putative class

23  is or is not ascertainable. Plaintiffs initially prepared and served on Google a 10-page draft. When

24  Google objected to the draft because it contained improper summaries and arguments, Plaintiffs

25  circulated a 9-page draft instead, leaving most of the offending material. Google felt compelled to

26  respond, but believes this process is contrary to the Standing Order, unproductive, and will quickly

27  get out of hand. Plaintiffs will continue to burden the Court with even lengthier joint case

28  management statements, and will force Google to respond similarly. The Standing Order does not

contemplate that the parties litigate the merits of the case through a joint case management statement, and it is extremely burdensome and an inefficient use of party and judicial resources for the parties to do so. Google respectfully asks that the Court order the parties to strictly abide by the Standing Order and limit joint case management statements to a brief update to the Court on the status of the case.

**Plaintiffs' Response**

Consistent with prior joint statements (Dkts. 169, 224), Plaintiffs seek to provide a meaningful update to the Court regarding discovery in this matter. While Plaintiffs believe these updates are consistent with the Standing Order, Plaintiffs are of course willing to proceed subject to any guidance the Court provides regarding these joint statements. Google's complaints are otherwise meritless. Plaintiffs' initial draft did not include anything improper. Plaintiffs revised that initial draft only to avoid a needless and pointless dispute, with Google threatening to seek emergency relief from the Court.

**I.   JURISDICTION AND SERVICE**

Google has been served and the Court has jurisdiction over this matter.

**II.   FACTS**

The parties have no new facts to add at this time, although discovery is ongoing.

**III.   LEGAL ISSUES**

The parties have no new legal issues to present at this time.

**IV.   MOTIONS**

Motions Decided Since the Last Joint CMC Statement

The Court granted various motions to seal (Dkts. 226, 238, 240) and motions for admission *pro hac vice* (Dkts. 234, 266, 268). The Court granted the parties' joint stipulation to continue discovery deadlines. Dkt. 261. The parties identified and briefed various discovery disputes before Magistrate Judge van Keulen, some of which have been resolved. Dkts. 230, 231, 235, 242, 243, 249, 251, 253, 258, 259, 262, 263. Judge van Keulen also issued a scheduling order and revised scheduling order related to the disputes before Special Master Brush. Dkt. Nos. 269, 273.

Pending Motions

**JOINT CASE MANAGEMENT STATEMENT**

1    Two motions to seal remain outstanding, including Dkts. 225, 257.

2    <u>Anticipated Motions</u>

3    ***Plaintiffs' Statement:***

4    Plaintiffs will move for class certification and may also seek summary judgment and/or

5    adjudication on certain claims or issues.  Plaintiffs also anticipate filing additional discovery

6    disputes with Magistrate Judge van Keulen.

7    ***Google's Statement:***

8    Google anticipates opposing class certification and moving for summary judgment.  Google

9    also anticipates briefing additional discovery disputes for Magistrate Judge van Keulen.

10   **V.    AMENDMENT OF PLEADINGS**

11    On April 15, 2021, the Court, pursuant to stipulation of the parties, granted Plaintiffs'

12   request for leave to file their Second Amended Complaint.  Dkt 138; Dkt 136-1 ("SAC").

13   **VI.    EVIDENCE PRESERVATION**

14   ***Plaintiffs' Statement:***

15   Plaintiffs remain concerned that Google is not preserving records of Google's collection and

16   use of private browsing data, in violation of its "duty to preserve evidence that is relevant or could

17   reasonably lead to the discovery of admissible evidence."  *Bright Sols. for Dyslexia, Inc. v. Doe 1*,

18   No. 15-CV-01618-JSC, 2015 WL 5159125, at *2 (N.D. Cal. Sept. 2, 2015).  Plaintiffs have asked

19   Google whether it is preserving this data and Google has not provided a meaningful response.

20   Plaintiffs are seeking to negotiate a preservation plan with Google and will raise these issues with

21   Magistrate Judge van Keulen.

22   ***Google's Statement:***

23   Google has fulfilled its preservation obligations, including by preserving and producing

24   records associated with cookie values that Plaintiffs provided and asserted were set during their

25   private browsing sessions.  Magistrate Judge van Keulen ordered "Google need not suspend its

26   standard retention periods applicable to data logs that reflect event-level data of Chrome users in

27   the United States."  (*Calhoun*, Dkt. 174.)  Nonetheless, Google is prepared to continue the ongoing

28   discussions with Plaintiffs.

## VII.   DISCLOSURES

The parties exchanged initial disclosures on September 8, 2020.  Plaintiffs served amended disclosures on March 16, 2021.

## VIII.   DISCOVERY

A. Case Schedule

On August 24, 2021, the parties submitted a stipulation and proposed order continuing all case deadlines (Dkt. 256), which the Court granted on August 26 (Dkt. 261).

B. Written Discovery Since the Last Joint CMC Statement

Plaintiffs served their Fifth Set of Requests for Production on August 6, and Google served responses and objections on September 7.  Plaintiffs served their Sixth and Seventh Sets of Requests for Production on August 27 and September 10, and Google's responses are due on October 1 and October 10.  Plaintiffs served their Sixth Set of Interrogatories on August 27, and Google's responses are due on September 27.  Google served its response to Plaintiffs' Interrogatory No. 5 and its objections and responses to Plaintiffs' Fifth Set of Interrogatories on August 30.

On July 30, Plaintiffs served objections and responses to Google's Third Set of Requests for Admission, Fourth Set of Interrogatories, and Second Set of Requests for Production.  Google served its Fourth Set of Requests for Admission on July 22, and Plaintiffs served objections and responses on August 23.  Google served its Fifth Set of Interrogatories on August 13, and Plaintiffs' responses are due on September 20, 2021.  Google served its Fifth Set of Requests for Admissions on September 7, and Plaintiffs' responses are due on October 7.

C. Depositions

*Plaintiffs' Statement:*

On August 19, 2021, Plaintiffs deposed the Google employee described by Google's counsel as the "father" of Incognito mode, Brian Rakowski.  Mr. Rakowski testified that although Google references "private browsing" in its Privacy Policy and states in its Incognito Splash Screen that you can browse "privately," he would not describe Incognito as "private browsing" (Tr. 83:16-84:3) and admitted that the word "private" carries a connotation that "may not match" what happens with

1  Google's Incognito mode (Tr. 97:21-98:17).  Plaintiffs will upon request provide the Court with the

2  full deposition transcript or a summary of that deposition.

3      ***Google's Statement:***

4      As explained above, the Joint Case Management Statement is not an appropriate vehicle for

5  Plaintiffs to summarize and interpret deposition testimony, or to argue the meaning of evidence.  In

6  any event, Plaintiffs mischaracterize Mr. Rakowski's testimony.  In response to the question about

7  how he would describe Incognito Mode, Mr. Rakowski testified that he would describe an Incognito

8  window as a "new browser, a new computer." (Tr. 84:4-8.)  Mr. Rakowski later clarified that when

9  he testified that the words "private," "anonymous," and "invisible" were ambiguous, he was

10  referring to the fact that the terms, when used in isolation, such as in the name of a feature, "might

11  be misconstrued" (Tr. 318:5-22).  He explained that, with context, the terms "can be super helpful"

12  in explaining how Incognito works. (Tr. 318:23-25-319:1-6.)

13      D.  <u>Protective Order</u>

14      The parties were able to agree on all terms of a protective order, which Magistrate Judge

15  Susan van Keulen approved on October 15, 2020 with one revision to the provision related to the

16  right to further relief.  Dkt. 81.

17      E.  <u>ESI Protocol</u>

18      The parties stipulated to an order related to ESI discovery, which Judge van Keulen approved

19  on October 15, 2020.  Dkt. 80.

20      F.  <u>Discovery Updates</u>

21        **1.**  **Documents**

22      ***Plaintiffs' Statement:***

23      Plaintiffs have serious concerns regarding the adequacy and timing of Google's productions.

24  Plaintiffs are currently awaiting Google's further production of custodial documents through the

25  Court-ordered October 6, 2021 completion deadline, including from custodians who wrote that

26  "*Incognito has always been a misleading name*" (GOOG-BRWN-00475063 at -65 (emphasis

27  added)) and that Incognito requires "really fuzzy, hedging language" because Incognito is "*not truly*

28  *private*" (GOOG-BRWN-00406065 at -67 (emphasis added)).  Google did not identify these key

Google employees even as potential custodians, and Google then opposed production of their documents. Plaintiffs have still not received a complete production of documents for the vast majority of the 42 Google custodians. Plaintiffs worry that Google's future productions will reveal still other Google employees who should have been included as document custodians.

Plaintiffs also have concerns regarding Google's compliance with Magistrate Judge van Keulen's order requiring production for the first 17 Google custodians by June 18. Dkt. 147-1. For those 17 custodians, Google produced about 43,000 documents by June 18. On September 1, over two months after that deadline, Google produced about 70,000 documents from the files of those 17 custodians. That September 1 production included highly relevant documents that Google very clearly should have produced by June 18 but for some reason did not previously produce, including for example an email in which a Google executive wrote:

> [I]nstead of the expected result of "Going to incognito mode stops Google logging in all products," we would have "Users have a way to set up Incognito to tell Google to stop logging for all products." This is not what Sundar promised.
>
> Hence I see the solution mostly as a remedy for Google to tell regulators that we gave the option to the users, but they didn't see it, and not a feature for the users.

GOOG-CABR-00503271 at -74. The newly produced custodial documents also include admissions regarding how "[u]ser expectation of the protections afforded by Incognito are significantly different from the reality" with users expecting (incorrectly) "that Google properties respect their privacy" (GOOG-CABR-00412665 at -75), efforts to "expand Incognito mode to also offer some privacy towards Google" (GOOG-CABR-00413286 at -86), and concerns regarding adding "cookie consent" in Incognito because that would "reveal Incognito's shortcomings" (GOOG-CABR-00395420 at -22). The four documents cited above should have been produced in this case before June 18, particularly since they each include "Incognito," which is a search term. The parties are meeting and conferring on these issues, including to identify which of the about 70,000 documents produced on September 1 for these custodians were not previously produced but hit on the agreed-to and Court-ordered search terms, to determine what happened and why Google did not produce these documents by June 18. The parties will promptly raise any issues with Magistrate Judge van Keulen.

**JOINT CASE MANAGEMENT STATEMENT**

1   Plaintiffs also await production of additional non-custodial documents, which have been

2   equally illuminating, such as a document with Google employees admitting that Google "*must enter*

3   *a contract with the user regarding what happens when they enter Incognito Mode*" (GOOG-BRWN-

4   00027632 at -34 (emphasis added)).

5   **Google's Statement:**

6   Google has produced more than 575,000 documents in this case, spanning more than ***four***

7   ***million*** pages.  As explained above, Plaintiffs improperly use the Joint Case Management Statement

8   to summarize and interpret a handful of these documents, or argue the meaning of evidence.  In any

9   event, although Plaintiffs' section mis-states and misinterprets the evidence, Google will not

10  respond tit-for-tat to Plaintiffs' gratuitous mis-interpretation of evidence, because it is not proper

11  for a joint CMS.  Nor has it any bearing on whether Google has satisfied its production obligations

12  or whether Plaintiffs are entitled to documents from additional custodians.  In fact, Plaintiffs already

13  presented their arguments for more than 42 custodians in this case, and Magistrate Judge Van

14  Keulen rejected those, ruling that Plaintiffs were entitled to documents from no more than 42

15  custodians.

16   Plaintiffs' vague complaints about the adequacy of Google's production is not borne out by

17  the facts.  Google fully complied with Magistrate Judge van Keulen's Order to search (using specific

18  search terms), review, and substantially complete the production from the first 17 custodians by no

19  later than June 18, 2021.  Dkt. 147-1 at 3.  Almost two months after the June 18 substantial

20  completion deadline, Magistrate Judge van Keulen entered an order that Google cross-produce

21  certain documents in both the *Brown* and *Calhoun* matters.  Dkt. 243.  Pursuant to that order, Google

22  re-produced in both cases, with new cross-production Bates numbers, all non-custodial documents

23  and custodial documents (of overlapping custodians) previously produced in either just *Calhoun* or

24  *Brown*.  The September 1 production of which Plaintiffs complain was one of Google's first cross

25  productions.  Therefore, approximately 56,000 documents of the 70,000 which Plaintiffs claim came

26  from the 17 relevant custodians and were produced on September 1 were custodial documents that

27  Google had already produced to Plaintiffs.  Plaintiffs are well aware of this fact, as Google's cross-

28  production contained a cross reference showing which documents had already been produced with

-8-

**JOINT CASE MANAGEMENT STATEMENT**

Bates numbers from the Brown matter.  As for the rest, they are documents that had been produced in *Calhoun*, but not produced in this case.  It is expected that not all of the documents that were produced in *Calhoun* would be produced in this matter, as the cases involve different issues, the Plaintiffs in both cases propounded different Requests for the Production of Documents, and the parties agreed on different search terms.  Indeed, if Plaintiffs believed that all documents being produced in one case would also be produced in the other, they would not have sought an order for the cross-production of documents.  Plaintiffs first raised this issue on the afternoon of September 17, and did not specify how many or which documents it claims should have been produced by June 18, but were not.  In any case, Google has not withheld documents from the Plaintiffs; Plaintiffs have now even more documents than are relevant and responsive as a result of the cross-use order.  That four documents that mention "Incognito" may have been initially missed (but have now been produced) is hardly sufficient ground to impugn Google's herculean efforts to produce almost four million pages in this litigation.  Plaintiffs do not, and cannot, claim any prejudice.  Nor have Plaintiffs presented any facts that suggest that Google did not substantially complete its production of the documents of 17 custodians as ordered by Magistrate Judge van Keulen.

## 2.  Depositions

*Plaintiffs' Statement:*

Google has over 100,000 employees, and Plaintiffs are at this point limited to 42 document custodians and 20 depositions.  Plaintiffs anticipate that it will be difficult to fully address the many issues in this case with only 20 depositions, but they are of course working to do that consistent with Magistrate Judge van Keulen's rulings.   Plaintiffs anticipate seeking to depose, among others, Google CEO Sundar Pichai and Google CMO Lorraine Twohill.  Mr. Pichai and Ms. Twohill are both document custodians, and they were involved with key decisions and communications relating to Google's collection and use of private browsing information.  For example, Mr. Pichai was informed in 2019 as part of a project driven by Ms. Twohill that Incognito should not be referred to as "private" because that ran "the risk of exacerbating *known misconceptions* about protections Incognito mode provides."   GOOG-BRWN-00048967.C at -68.C (emphasis added).  As part of those discussions, Mr. Pichai decided that he "*didn't want to put incognito under the spotlight*"

**JOINT CASE MANAGEMENT STATEMENT**

1   (GOOG-BRWN-00388293 at -93), and Google continued without addressing those known issues.

2   Plaintiffs anticipate additional document productions for Mr. Pichai and Ms. Twohill in the coming

3   weeks.  Plaintiffs have also been asking Google for information about foreign custodians whose

4   depositions may require additional steps to schedule and conduct.  On August 17, Plaintiffs asked

5   Google to identify which of the current 42 custodians may require such steps.  They parties have

6   met and conferred, but Google has not yet provided that information.  Plaintiffs will raise any issues

7   regarding the scheduling and number of Google depositions with Magistrate Judge van Keulen.

8           ***Google's Statement:***

9           Google learned for the first time of Plaintiffs' desire to depose Mr. Pichai and Ms. Twohill

10  from Plaintiffs' draft portion in this Statement.  Neither of these two depositions is appropriate, and

11  Google will address Plaintiffs' claims in the context of a proper discovery dispute.  Plaintiffs'

12  continued attempts to use the joint CMS to argue about evidence (instead of updating the Court)

13  improperly burdens the Court and is disruptive of the discovery process.

14          In any event, Plaintiffs continue to overreach by singling out two senior-level Google

15  executives as "anticipated" deposition targets and mischaracterizing two documents plucked from

16  hundreds of thousands of pages of discovery.  Plaintiffs' mis-characterization of these documents is

17  particularly important because "[o]n the proverbial sliding scale, the closer that a proposed witness

18  is to the apex of some particular peak in the corporate mountain range, and the less directly relevant

19  that person is to the evidence proffered in support of his deposition, the more appropriate the

20  protections of the apex doctrine become." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259,

21  263 (N.D. Cal. 2012).  Moreover, Mr. Pichai's status as a Court-ordered document custodian, and

22  Ms. Twohill's status as a custodian (whom Google agreed to add in the spirit of compromise,

23  including to reduce the number of Plaintiffs' disputes that are already before Magistrate Judge van

24  Keulen), in no way reflects their propriety or suitability as deponents.  Google will seek relief from

25  Magistrate Judge van Keulen if Plaintiffs continue to pursue apex depositions that are inappropriate,

26  seek irrelevant information, are not proportional to the needs of this case, or can be achieved through

27  less intrusive and less burdensome methods.

28

### 3.  <u>Class Certification</u>

*Plaintiffs' Statement:*

Plaintiffs continue to seek documents and testimony relevant to class certification. Google claims there is no way to identify class members, but Google's documents indicate that there are many ways to identify class members using Google data. *See, e.g.*, GOOG-BRWN-00167899 at -99 (Google ▮▮▮▮ data - ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); GOOG-CABR-00799195 at -95 (asking if "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); GOOG-BRWN-00168623 at -36 (Google GWS data - "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); GOOG-BRWN-00204684 at -84 (Google X-Client-Data header - identification of users in Incognito mode based on "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); GOOG-BRWN-00229314 at -14 (describing Google's identification of users in ▮▮▮▮▮▮▮▮▮▮▮" browsing). The "father" of Incognito mode, Brian Rakowski, also testified that Google collects personal information from Incognito browsing, including, for example (and as alleged) "referrer-header" information, IP addresses, and other information that Mr. Rakowski admitted could be used for fingerprinting (Tr. 47:18-51:13). Despite what Google's own internal documents and employees say, Google has blocked discovery into how users and their devices may be identified, meaning there are likely other ways to identify class members. Plaintiffs are continuing to address these issues with Magistrate Judge van Keulen and the Special Master.

*Google's Statement:*

Google has not blocked discovery into these issues. On the contrary, Google has continuously cooperated with Plaintiffs and has provided documents and testimony on their ever-shifting theories of whether and/or how users and their devices may be identified. Google is not alone in attempting to explain to Plaintiffs that private browsing users cannot be identified. Plaintiffs' definition of the putative class includes individuals who have privately browsed on browsers other than Chrome. Plaintiffs subpoenaed Apple, Mozilla, and Microsoft, seeking identification of those putative class members who browsed using the private browsing mode on

**JOINT CASE MANAGEMENT STATEMENT**

1    Safari, Firefox, and Internet Explorer/Edge respectively.   Each of those companies consistently

2    stated that they do not possess documents or information sufficient to ascertain the identity of

3    individuals who have used the private browsing mode on their browsers.

4         The parties submitted briefing on this issue, in which Google cited Rule 30(b)(6) deposition

5    testimony explaining why the absence of the x-client-data header could not be used to identify

6    individual users in Incognito mode.   Google further pointed to documents indicating x-client-data

7    headers were present in logs in Incognito mode and absent in non-Incognito mode. (Dkt. 218 at 7-

8    8.)  Magistrate Judge van Keulen referred this dispute to the Special Master (Dkt. 221).  With regard

9    to ▮▮▮, Plaintiffs confuse aggregate data Google maintains to estimate the total percentage of

10   Incognito mode usage with a means to identify individual Incognito-mode users.   To demonstrate

11   that ▮▮▮ data can not be used to identify individual users, Google is willing to produce ▮▮▮ data

12   associated with Plaintiffs' browsers but—*as it has informed Plaintiffs repeatedly*—Google requires

13   Plaintiffs' ▮▮▮ ID from their browsers to produce that data. Once Plaintiffs provide these

14   identifiers, Google can produce the ▮▮▮ data they are seeking.  Finally, Plaintiffs misleadingly cite

15   the Rakowski testimony.  Mr. Rakowski did not say that *Google* uses the data to fingerprint.  As has

16   become clear from multiple documents, testimony, and other evidence, it does not.  *See, e.g.*,

17   GOOG-BRWN-00028757.R (Monsees Depo), 314:23-315:3, Apr. 9, 2021 ("▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮").

21        **4.  Injunctive Relief**

22        ***Plaintiffs' Statement:***

23        Through discovery, Plaintiffs are learning that Google not only collects and uses private

24   browsing information, but that Google also provides no way for Plaintiffs and class members to

25   review and seek deletion of the private browsing information impermissibly collected.  Google is

26   therefore not only violating its promises as to collection but also Google's many promises in terms

27   of the ability to control Google's storage and use of information.  For example, Google's Privacy

28   Policy promises that "across our services, you can adjust your privacy settings to control what we

-12-

**JOINT CASE MANAGEMENT STATEMENT**

1   collect and how your information is used."   Plaintiffs served discovery focused on these issues,

2   including with respect to whether and how Google might be able to modify its processes to address

3   such issues by, for example, stopping Google's collection of private browsing information,

4   permitting users to review the private browsing information collected by Google, and deleting the

5   private browsing information Google previously collected and currently stores.  Plaintiffs also asked

6   questions about these issues during Mr. Rakowski's deposition, where he testified that he was not

7   aware of any process by which users can delete the private browsing data that Google has

8   impermissibly collected.  Tr. at 302:10-14.  Google's suggestion below that this submission is the

9   "first indication" of Plaintiffs seeking such relief is meritless.  Plaintiffs will raise any issues

10   regarding this discovery with Magistrate Judge van Keulen.

11          ***Google's Statement:***

12          This submission is the first indication that Plaintiffs seek this wrongheaded relief: an

13   injunction forcing Google to associate data it receives when users are logged out and in private

14   browsing mode with data it receives when users are logged in to their accounts—so that Google

15   could then identify private browsing users (something it currently does not do)—contrary to various

16   Google policies and longstanding rules and expectations by regulators in the U.S. and

17   abroad.  Plaintiffs' newly-minted injunctive relief request is improper, unwarranted, and should

18   never be granted because it would (ironically for a privacy lawsuit) undermine the privacy

19   protections Google affords to all its unauthenticated users on the internet.  In fact, if a user has

20   chosen to log in to their Google Account in private browsing mode and has consented to their site

21   activity data being associated with their Google Account, then they already can review, delete, and

22   set retention periods for the data at issue.  However, if a user is not logged in to their Google Account

23   in private browsing mode—***like the putative class in this case***—then the data at issue is not

24   associated with them.  There is no way for them to delete the data simply because the data is not

25   associated with the user or their Google Account by design.  Even if Google could associate such

26   unauthenticated logged-out private browsing data with verified individual identities it should not be

27   ordered to do so because such association would lead to much less, not more, privacy on the

28

**JOINT CASE MANAGEMENT STATEMENT**

1  internet.  Plaintiffs and their attorneys cannot be allowed to prioritize their economic interest in

2  certifying a class over the privacy interests of the class members they purport to represent.

3      **5.  Expert Discovery**

4      *Plaintiffs' Statement:*

5      Plaintiffs disclosed a new consulting expert to Google on September 13, who will assist

6  Plaintiffs in reviewing the extensive amount of documents Google is expected to produce leading

7  up to its October 6 deadline.  Google's deadline to assert any objections to this expert is September

8  27.  Plaintiffs do not anticipate any objection, particularly because this expert consulted on a case

9  against Google in the recent past, and because Plaintiffs provided more information than what is

10  required by the Protective Order.  The parties are also having ongoing negotiations regarding

11  Google's production of documents relevant to calculating damages.  For example, one 2020 Google

12  document states ███████████████████████████████████████████████

13  ███████████████████████████████████████████████" (GOOG-

14  BRWN-00181879 at -79).  Google has not yet produced all documents tied to that estimate or the

15  other ways in which Google generates revenues using private browsing information.  Plaintiffs'

16  damages experts seek these documents in connection with their analysis and opinions.  If necessary,

17  Plaintiffs will raise any issues regarding this discovery with Magistrate Judge van Keulen.

18      *Google's Statement:*

19      Plaintiffs' portion does not raise "any identified discovery disputes" or "scope of anticipated

20  discovery" that is not already underway.  Plaintiffs also mischaracterize Google's documents and

21  document production to date and improperly put forth its damages theory under the "Expert

22  Discovery" header in the Joint Case Management Statement, which is inappropriate.  Google is

23  reviewing Plaintiffs' disclosures for its proposed consulting expert and will respond in a timely

24  manner in accordance with the Protective Order (Dkt. 81).

25      **6.  Special Master**

26      *Plaintiffs' Statement:*

27      With the Special Master's assistance, Plaintiffs are making progress with their efforts to

28  understand the full scope of Google's collection and use of private browsing data, which, even after

-14-

1   more than a year of discovery, still remains unknown.  Upon the Special Master's recommendation,

2   the Court has ordered Google to identify all data sources that may contain information collected

3   from private browsing sessions.  Dkt. No. 273.  And for each data source, Google must also provide

4   the name, a description of its purpose and function, the default retention status, and the current

5   retention status, including by identifying when a change to retention status was implemented.  *Id.*

6   This information will inform the production of data by Google, as outlined in the recent order.

7          **Google's Statement:**

8          On September 16, Magistrate Judge van Keulen ordered Google to "identify to the Special

9   Master and Plaintiffs all databases and data logs (collectively, "data sources") that may contain

10  responsive information." (Dkt. 273.)  On September 17, Google identified 70 potentially relevant

11  and responsive data sources, and their retention periods, to the Special Master and Plaintiffs.  On

12  September 22, the parties will meet and confer under the Special Master's supervision to discuss

13  these data sources.

14          **7.  Privilege**

15          ***Plaintiffs' Statement:***

16          The parties have been meeting and conferring on many issues relating to Google's privilege

17  assertions, with Google withholding or redacting thousands of documents that are responsive to

18  Plaintiffs' requests, including many for which no attorney is included in the communication, where

19  attorneys otherwise appear to be playing a business role, or where it appears that non-lawyers copied

20  Google in-house counsel only to limit production.  For example, the parties have a dispute regarding

21  a document cited and quoted in the last Case Management Statement, which Google subsequently

22  clawed back.  *See* GOOG-BRWN-00048967.C.  That is a "comms" document prepared for Google

23  CEO Sundar Pichai.  Google claims the redacted statements reflect or seek legal advice, but

24  Plaintiffs contest Google's characterization and seek re-production of that document without

25  Google's improper redactions.  This would not be the first time Google employees have included

26  Google lawyers to try to withhold non-privileged documents.  *See In re Google Inc.*, 462 F. App'x

27  975 (Fed. Cir. 2012) (denying Google's petition and affirming that Google email including Google

28  attorney was not privileged or work product).

**JOINT CASE MANAGEMENT STATEMENT**

1    Google's attacks on Plaintiffs' counsel, below, are meritless.  Google redacted or withheld

2    thousands of documents, claiming that they seek or reflect legal advice by Google's in-house

3    attorneys.  But when the privilege claim is based on an attorney's role as in-house counsel, that

4    "warrants heightened scrutiny" because "[i]n-house counsel may act as integral players in a

5    company's business decisions or activities, as well as its legal matters." *Oracle Am., Inc. v. Google*,

6    *Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011). Plaintiffs requested additional information

7    to assess the extent to which Google in-house attorneys referenced in Google's privilege log were

8    actually providing legal advice, but Google has so far refused to provide that information.  And the

9    documents produced by Google demonstrate that Google's in-house counsel in fact routinely play

10   a non-legal business role.

11       As part of the meet and confer process, and consistent with the protective order, Plaintiffs'

12   counsel cited for Google's counsel certain non-privileged documents produced by Google that

13   demonstrate certain Google privilege assertions are unwarranted. Those documents are not

14   privileged.  Plaintiffs identified numerous documents that were designated privileged by Google

15   employees but that Google's counsel has not clawed back, acknowledging that they are not

16   privileged.  Google clawed back two (of many) documents cited by Plaintiffs.  Plaintiffs promptly

17   complied with Google's requests.  Unlike the cases cited by Google below, after the claw back

18   notices, Plaintiffs' counsel took the proper steps: (1) sequestering the documents; (2) never using

19   the documents in public court filings or depositions; and (3) seeking to resolve the issues with the

20   Court through *in camera* review. *See Bahdjedjian v. W. Diocese of the Armenian Church of N. Am.*,

21   2020 WL 5353982, at *5 (C.D. Cal. Apr. 29, 2020) (counsel failed "to resolve the issue with

22   defendants" and "rather than seeking relief from the court" they "postured, insulted, and threatened

23   defendants—and then publicly filed the disputed documents"); *ColorTokens, Inc. v. Medovich*, 2018

24   WL 10419783, at *2 (N.D. Cal. Oct. 22, 2018) (counsel used privileged documents during a

25   deposition and as exhibits in state court litigation rather than availing themselves of the "proper

26   recourse . . . to bring the dispute before the state court"); *U.S. ex rel. Hartpence v. Kinetic Concepts,*

27   *Inc.*, 2013 WL 2278122, at *2 (C.D. Cal. May 20, 2013) (counsel did not seek "guidance from the

28   court" and instead "repeatedly us[ing] [privileged documents] in the pleadings"); *Rico v. Mitsubishi*

1   *Motors Corp.*, 171 P.3d 1092, 1095-96 (Cal. 2007) (attorneys used defense counsel's notes during

2   the deposition of a defense expert); *Clark v. Superior Ct.*, 125 Cal. Rptr. 3d 361, 374 (Cal. App.

3   2011) (counsel "affirmatively used some of the substantive information contained in the privileged

4   documents to question witnesses" and "to craft a claim against [the defendant]").

5          Plaintiffs have at all times acted ethically and in compliance with all applicable rules.

6   Plaintiffs cited documents to raise with Google their "factual basis sufficient to support a reasonable,

7   good faith belief that *in camera* inspection may reveal evidence that information in the materials

8   [redacted or withheld] is not privileged." *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp.

9   3d 855, 864 (N.D. Cal. 2019) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th

10  Cir. 1992)).   Google in turn doubled down on its improper privilege assertions, clawing back

11  documents that are clearly not privileged. Regardless, Plaintiffs sequestered those documents.

12  Going forward, Plaintiffs will continue to act ethically and in compliance with the protective order.

13  Finally, Plaintiffs will of course notify Google in the event Plaintiffs identify a privileged

14  communication that should not have been produced.   Google's suggestion that Plaintiffs "have no

15  intention" of doing so is meritless.   Even assuming that Google's privilege assertions are proper, it

16  is unfair for Google to assume the worst of Plaintiffs when Google's lawyers in the first instance

17  declined to mark the documents as privileged.

18         Plaintiffs are seeking to promptly resolve these privilege issues with Magistrate Judge van

19  Keulen, including through *in camera* review, in advance of the upcoming depositions.

20         ***Google's Statement:***

21         Counsel for Plaintiffs have committed and continue to commit inexcusable ethical violations

22  by seeking out, reviewing, and attempting to use privileged documents that have been inadvertently

23  produced by Google.   This is particularly concerning given that the pace at which Google must

24  produce documents in order to comply with Court-ordered production deadlines necessarily means

25  that some privileged material is produced inadvertently.   California and federal law make clear that

26  attorneys who inadvertently receive materials subject to attorney-client privilege should "[r]efrain

27  from examining the materials any more than is essential to ascertain if the materials are privileged"

28  and must "immediately notify the sender that he or she possesses material that appears to be

**JOINT CASE MANAGEMENT STATEMENT**

privileged." *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 817 (2007) (citing *State Fund Comp. Ins. v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999)); *see also U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122, at *2 (C.D. Cal. May 20, 2013) ("The 'receipt of privileged communications imposes a duty on counsel to take some reasonable remedial action.'") (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001)).

Notably, Plaintiffs do not dispute that they have failed to notify Google of the inadvertent production of privileged communications. Indeed, Plaintiffs have yet to notify Google of the inadvertent production of even a <u>single</u> privileged document.[1] However, Plaintiffs have not only failed to notify Google of such inadvertent productions, but have also searched for, reviewed, and attempted to use Google's privileged communications to gain a strategic advantage in this case. As one example, upon receiving a document from Google that contained redactions of email communications between Google in-house counsel and Google employees bearing "Redacted - Privilege" labels, Plaintiffs' counsel actively searched for other versions of the same email thread to determine whether privileged material was redacted in each produced version. When Plaintiffs' counsel found that Google inadvertently failed to redact the same privileged communications in a second version of the document, Plaintiffs did not notify Google of the inadvertent production. Instead, Plaintiffs used the privileged information by (i) taking screenshots of material that they knew Google considered privileged; (ii) causing the privileged material to be further disseminated and reviewed by even more members of Plaintiffs' legal team by inserting those screenshots in correspondence to Google (along with the "GOOGLETEAM@lists.susmangodfrey.com" email list that Plaintiffs have identified as their

---

[1]   For example, Google inadvertently produced a document with an unredacted section titled "Feedback from legal" that reflects the legal advice of counsel regarding proposed descriptions of the operation of Chrome's Incognito mode on June 18. 2021. Plaintiffs never made any attempt to notify Google of the inadvertent production of this document. Instead, they proceeded to cite the document in the July 21, 2021 Case Management Statement filed with the Court. *See* Dkt. 224 at 7 (citing GOOG-BRWN-00153850). During subsequent meet and confers and in correspondence, Plaintiffs have refused to acknowledge that they have any obligation to inform Google of the inadvertent production of privileged materials whatsoever, and their conduct in this case indicates that they have no intention to provide any such notification in the future.

**JOINT CASE MANAGEMENT STATEMENT**

1   "service email" in this case, which is also the service email that Plaintiffs use for other, unrelated

2   cases against Google); and (iii) citing the screenshots and unredacted communications in support of

3   their (incorrect) claim that the material constitutes "business advice" that is not privileged.[2]

4         The law is clear: once counsel examines a document that has been transmitted between an

5   attorney and client, "that examination would suffice to ascertain the materials are privileged, and

6   any further examination would exceed permissible limits." *Clark v. Superior Ct.*, 196 Cal. App. 4th

7   37, 53-55 (2011) (holding that counsel's subsequent review of inadvertently produced documents

8   to determine if the dominant purpose of the documents was business or legal advice "necessarily

9   involved an assessment of its contents," supporting the trial court's conclusion that counsel breached

10  his ethical obligations).  As Judge Seeborg held in *ColorTokens, Inc. v. Medovich*, 2018 WL

11  10419783, at *3 (N.D. Cal. Oct. 22, 2018):

12        Under *State Fund*, Medovich's counsel had a duty to stop reviewing the documents as soon

13        as it was clear they contained communications between a client and the client's attorney. To

14        the extent Medovich wished to contest the designation of these documents as privileged, the

15        proper recourse was to bring the dispute before the state court. Accordingly, Medovich's

16        counsel failed to perform their ethical duties under State Fund with respect to both the patent

17        emails and the Pillsbury firm emails.

18  Moreover, in the instances where Google redacted privileged communications in certain documents

19  and inadvertently produced unredacted versions of documents containing the same privileged

20  communications, it should be clear to Plaintiffs that the production was inadvertent, thereby

21  triggering Plaintiffs' obligation to notify Google.  *See Bahdjedjian v. W. Diocese of the Armenian*

22

23        [2] In an attempt to whitewash their egregious breach of ethical rules, Plaintiffs cite *Dolby Lab'ys*

24  *Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 864 (N.D. Cal. 2019) for the proposition that
    they are allowed to insert screenshots of inadvertently produced unredacted documents in

25  correspondence to Google to raise their "good faith belief" that the redacted communications are
    not privileged.  That is incorrect.  In *Dolby*, the Plaintiffs identified redacted documents and raised

26  a challenge to the redactions based on the unredacted contents of the documents and the descriptions
    provided in the producing party's privilege log.  They did not—as Plaintiffs have done here—create

27  images of an unredacted version of the document at issue and insert those images in correspondence
    challenging the basis for the redactions.   The former course of action is permissible; as discussed

28  *infra*, the latter is an obvious violation of well-settled ethics rules.

CASE NO. 5:20-cv-03664-LHK
**JOINT CASE MANAGEMENT STATEMENT**

1 | *Church of N. Am.*, 2020 WL 5353982, at \*3 (C.D. Cal. Apr. 29, 2020) ("Defendants' production

2 | contained visible redactions—'prominent notations of confidentiality'—that clearly conveyed their

3 | assertion of privilege . . . Once those redactions were removed, Plaintiff's counsel had no reason to

4 | review the underlying material to 'ascertain' if it was privileged; the redactions made perfectly clear

5 | that Defendants believed it was.").  Plaintiffs' counsel's "continued review, use, and disclosure of

6 | [Google's] potentially privileged/confidential material [i]s unquestionably an ethical violation." *Id.*

7 | at \*4.

8 | Plaintiffs claim that their conduct is entirely proper because, after receiving clawback

9 | notifications from Google, they have informed Google that they will comply with their obligations

10 | under the Protective Order.  But that is not the law.  Plaintiffs have a duty to inform Google of the

11 | inadvertent production of privileged materials as soon as they come across any such documents—

12 | particularly here, where Court-ordered deadlines have forced a pace of production that inevitably

13 | results in inadvertent production of privileged documents.  Plaintiffs have failed to do so.  Google

14 | intends to raise this troubling behavior with Magistrate Judge van Keulen and seek appropriate

15 | relief.

16 | **8.  Google Product Changes**

17 | *Plaintiffs' Statement:*

18 | On August 18, 2021, public reports surfaced about Google's plan to rewrite the Incognito

19 | Splash Screen disclosures considered by Your Honor in connection with both of Google's motions

20 | to dismiss, including the pending motion to dismiss Plaintiffs' breach of contract claim.   Yet the

21 | proposed revised Splash Screen continues to exclude Google from the list of entities that an

22 | Incognito user may be visible to.  Google is aware of this problem, but seemingly refuses to fix it.

23 | In an internal document, one Google employee complained that the Incognito Splash Screen fails to

24 | explain "Who am I currently protected from?" and suggested that it be rewritten to clarify that "You

25 | are protected from other people who use this device" but "*You are not protected from Google.*"

26 | GOOG-BRWN-00048773 at -73 (emphasis added).  The document includes a drawing, with a

27 | checkmark next to stick figures (i.e., "other people who use this device") but a big "X" next to

28 | Google's logo. *Id.*  Further, as discussed in the Second Amended Complaint, after this lawsuit was

-20-

**JOINT CASE MANAGEMENT STATEMENT**

1  filed, Google began testing a "Consent Mode (Beta)" for Google Analytics, where websites for the

2  first time would be required to indicate to Google whether the users agreed to be tracked by Google

3  Analytics and Ad Manager.  SAC ¶ 140, Dkt. 136-1.  Plaintiffs seek documents and additional

4  information regarding these changes and will raise any issues with Magistrate Judge van Keulen.

5         ***Google's Statement:***

6         This is another improper attempt by Plaintiffs to litigate the merits of their case in the Joint

7  Case Management Statement.  Indeed, Plaintiffs do not identify any discovery disputes in their

8  portion above.  Plaintiffs have not previously raised GOOG-BRWN-00048773 for Google's

9  attention and cite it out of context, as it is a ***proposed*** communication mechanism with hand

10  drawings for the Incognito brand across different Google products, including those not at issue in

11  this lawsuit.  Further, Plaintiffs' portion simply serves to summarize what they have found so far,

12  which is far from describing any "anticipated discovery" as contemplated in the Standing Order for

13  All Judges of the Northern District of California.

14         **9.  Plaintiffs' Deficient Response to Google's Interrogatory No. 12**

15         ***Google's Statement:***

16         Google's Interrogatory No. 12 requests Plaintiffs describe with particularity whether they

17  "agreed to all terms in the documents [they] allege are part of the contract between [Plaintiffs] and

18  Google," citing the following documents referenced at Paragraph 268 of Plaintiffs' Second

19  Amended Complaint: Google's Terms of Service, Chrome Terms of Service, Google's Privacy

20  Policy, Chrome Privacy Notice, and the Chrome Incognito Notice.  Plaintiffs respond by vaguely

21  alleging that "the Chrome Privacy Notice promises Plaintiff and Class members that Google does

22  not collect or use private browsing communications," and that "Google's Privacy Policy, the

23  Incognito Screen and the 'Search & Browse Privately' page" make similar promises.  This is an

24  evasive response that does not attempt to answer the Interrogatory; namely, Plaintiffs do not indicate

25  whether they ***agreed*** to a single term in the documents they allege are part of their contract with

26  Google.  Alleging a few self-serving "promises" in the identified documents does not respond to the

27  substance of the Interrogatory, and Plaintiffs should amend their response to do so.  According to

28  Plaintiffs, these documents are central to the case; indeed, the documents were selected precisely

**JOINT CASE MANAGEMENT STATEMENT**

because they had been identified as the basis for Plaintiffs' contract with Google in Plaintiffs' Second Amended Complaint. Plaintiffs cannot now raise "burden" to shield information germane to what they assert is the basis of their claim.

**Plaintiffs' Statement:**

Plaintiffs fairly responded to this request and in good faith met and conferred with Google regarding the burdensome nature of Google demanding that Plaintiffs identify each and every representation agreed to among the thousands of pages of documents that Google produced. Plaintiffs offered to review particular statements or representations that Google identified for this discovery request, but Google declined. In their operative complaint, Plaintiffs allege that "Google's relationship with its users is governed by the Google Terms of Service, the Google Chrome and Chrome OS Additional Terms of Service, and the Chrome Privacy Notice, which incorporate and/or should be construed consistent with the Privacy Policy, the 'Search & Browse Privately' page, and the Incognito Screen." Dkt. 136-1. Plaintiffs fairly responded to the interrogatory by identifying terms from those documents to which they agreed and which are relevant for purposes of their breach of contract claim. Google's demand that Plaintiffs review thousands of pages and state whether each and every term constitutes an enforceable commitment to which Plaintiffs agreed, notwithstanding relevance to this case, creates an undue burden. The parties are raising this issue with Magistrate Judge van Keulen.

**10. Plaintiffs' Blanket Refusal to Answer Google's RFA Nos. 30, 32, and 34**

**Google's Statement:**

Google's requests seek admissions regarding Plaintiffs' understanding of Google's collection of the data described in their Complaint through popular Chrome modes, *see, e.g.*, RFA No. 30 (understanding of collection through Chrome's Basic Mode), and whether Plaintiffs interpreted Google's Chrome Privacy Notice to convey whether Google would collect that data from users in those modes. *See, e.g.*, RFA No. 32 (Basic Mode); RFA No. 34 (Using Chrome without Sync enabled). Plaintiffs' interpretation of the Chrome Privacy Notice—a document they allege governed their relationship with Google, and which they claim Google breached—and the various mode descriptions therein (including the data, if any, Google receives in various modes), is plainly

relevant in this action.  Plaintiffs' suggestion that some of this discovery could also be relevant in the *Calhoun* case is not reason to characterize it as absent class member discovery for *Calhoun* and deny Google relevant discovery in this litigation.  Plaintiffs should not be surprised that relevant information might overlap between the two cases--not only has the Court ordered the two related and required that copies of discovery responses served in one of the matters be provided in the related matter, *see* Dkt. 243 at 4, but *Calhoun* is focused on users browsing in an unsynced state (of which Incognito Mode is one).  Further, Plaintiffs' interpretation of the Chrome Privacy Notice, which is sought by the requests, is at issue in both cases.  Google sent Plaintiffs a letter on September 13 regarding their refusal to respond to the requests, and Plaintiffs have indicated a response letter is forthcoming.

**Plaintiffs' Statement:**

These RFAs reflect an improper attempt by Google to conduct purported absent class member discovery in the *Calhoun* matter.  Google admitted to this in a September 13 letter, alleging that the RFAs are relevant in part because Google contends the named Plaintiffs in *Brown* are class members in *Calhoun* and vice versa.  Plaintiffs' operative complaint makes no mention of "sync" and Mr. Rakowski testified that the "basic" or "regular" mode, which would be at issue in *Calhoun*, is different from the Incognito mode at issue in this action. Tr. at 26:25-28:25, 209:19-210:2.  Other RFAs served with this discovery request further demonstrate Google's attempt to conduct discovery in *Calhoun* with the *Brown* Plaintiffs.  Such discovery is improper, and Plaintiffs should not be required to respond to discovery requests relating to another case to which they are not parties and Google has not even demonstrated how Plaintiffs could be absent class members.  That these cases were ordered related for purposes of coordinating discovery against Google, and the Court ordered that Plaintiffs' discovery responses in *Brown* and *Calhoun* be cross-produced, should not be construed as an invitation for Google to conduct discovery of Plaintiffs in a case to which they are not a party.  The parties are raising this issue with Magistrate Judge van Keulen.

## IX.   SETTLEMENT AND ADR

No settlement discussions have taken place.  Pursuant to ADR Local Rule 3-5 and Civil Local Rule 16-8, on August 19, 2020, the parties met and conferred regarding the available dispute

1    resolution options and filed their respective ADR Certifications.  The parties do not believe that

2    ADR is appropriate at this time.

3    **X.      PROPOSED CASE SCHEDULE**

4              On August 26, 2021 the Court granted the parties' stipulation and proposed order extending

5    the case deadlines.  Dkt. 261.

6

7    DATED: September 22, 2021               QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
8

9                                       By   */s/ Andrew H. Schapiro*
10                                           Andrew H. Schapiro (admitted *pro hac vice*)
                                             andrewschapiro@quinnemanuel.com
11                                           191 N. Wacker Drive, Suite 2700
                                             Chicago, IL 60606
12                                           Tel: (312) 705-7400
                                             Fax: (312) 705-7401
13
                                             Stephen A. Broome (CA Bar No. 314605)
14                                           stephenbroome@quinnemanuel.com
                                             Viola Trebicka (CA Bar No. 269526)
15                                           violatrebicka@quinnemanuel.com
                                             865 S. Figueroa Street, 10th Floor
16                                           Los Angeles, CA 90017
                                             Telephone: (213) 443-3000
17                                           Facsimile: (213) 443-3100

18                                           Diane M. Doolittle (CA Bar No. 142046)
                                             dianedoolittle@quinnemanuel.com
19                                           555 Twin Dolphin Drive, 5th Floor
                                             Redwood Shores, CA 94065
20                                           Telephone: (650) 801-5000
                                             Facsimile: (650) 801-5100
21
                                             Josef Ansorge (admitted *pro hac vice*)
22                                           josefansorge@quinnemanuel.com
                                             Carl Spilly (admitted *pro hac vice*)
23                                           carlspilly@quinnemauel.com
                                             carlspilly@quinnemanuel.com
24                                           1300 I. Street, N.W., Suite 900
                                             Washington, D.C. 20005
25                                           Telephone: 202-538-8000
                                             Facsimile: 202-538-8100
26
                                             Jomaire A. Crawford (admitted *pro hac vice*)
27                                           jomairecrawford@quinnemanuel.com
                                             51 Madison Avenue, 22nd Floor
28                                           New York, NY 10010

                                      -24-                    CASE NO. 5:20-cv-03664-LHK

1  Telephone: (212) 849-7000
   Facsimile: (212) 849-7100
2
   Jonathan Tse (CA Bar No. 305468)
3  jonathantse@quinnemanuel.com
   50 California Street, 22nd Floor
4  San Francisco, CA 94111
   Telephone: (415) 875-6600
5  Facsimile: (415) 875-6700
6  *Attorneys for Defendant*
   Google LLC
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT CASE MANAGEMENT STATEMENT**

1 | DATED: September 22, 2021 | SUSMAN GODFREY L.L.P.

2

3 | By | */s/ Mark C. Mao*

4 | Amanda Bonn (CA Bar No. 270891)
5 | abonn@susmangodfrey.com
  | SUSMAN GODFREY L.L.P.
6 | 1900 Avenue of the Stars, Suite 1400
  | Los Angeles, CA 90067
7 | Telephone: (310) 789-3100

8 | Mark C. Mao (CA Bar No. 236165)
  | mmao@bsfllp.com
9 | Sean Phillips Rodriguez (CA Bar No. 262437)
  | srodriguez@bsfllp.com
10 | Beko Rebitz-Richardson (CA Bar No. 238027)
   | brichardson@bsfllp.com
11 | Alexander Justin Konik (CA Bar No. 299291)
   | akonik@bsfllp.com
12 | BOIES SCHILLER FLEXNER LLP
13 | 44 Montgomery Street, 41st Floor
   | San Francisco, CA 94104
14 | Telephone: (415) 293 6858
   | Facsimile (415) 999 9695
15

16 | James W. Lee (*pro hac vice*)
   | jlee@bsfllp.com
17 | Rossana Baeza
   | rbaeza@bsfllp.com
18 | BOIES SCHILLER FLEXNER LLP
   | 100 SE 2nd Street, Suite 2800
19 | Miami, FL 33130
   | Telephone: (305) 539-8400
20 | Facsimile: (305) 539-1304

21 | William Christopher Carmody (*pro hac vice*)
   | bcarmody@susmangodfrey.com
22 | Shawn J. Rabin (*pro hac vice*)
   | srabin@susmangodfrey.com
23 | Steven Shepard (*pro hac vice*)
   | sshepard@susmangodfrey.com
24 | Alexander P. Frawley (*pro hac vice*)
   | afrawley@susmangodfrey.com
25 | SUSMAN GODFREY L.L.P.
26 | 1301 Avenue of the Americas, 32nd Floor
   | New York, NY  10019
27 | Telephone: (212) 336-8330

28

**JOINT CASE MANAGEMENT STATEMENT**

-26-

CASE NO. 5:20-cv-03664-LHK

1

2          John A. Yanchunis (*pro hac vice*)
           jyanchunis@forthepeople.com
3          Ryan J. McGee (*pro hac vice*)
           rmcgee@forthepeople.com
4          Michael F. Ram (pro hac vice)
           mram@forthepeople.com
5          Ra  O. Amen (pro hac vice)
           ramen@forthepeople.com
6          MORGAN & MORGAN, P.A.
           201 N Franklin Street, 7th Floor
7          Tampa, FL 33602
           Telephone: (813) 223-5505
8          Facsimile: (813) 222-4736

9

10              *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT CASE MANAGEMENT STATEMENT**

**ATTESTATION**

I, Andrew H. Schapiro, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  September 22, 2021          By:   */s/ Andrew H. Schapiro*
                                            Andrew H. Schapiro (admitted *pro hac vice*)