BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel listed in signature blocks below*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel listed in signature blocks below*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 5:20-cv-03664-LHK-SVK

**JOINT SUBMISSION IN RESPONSE TO DKT. 242 RE: STATUS OF DISCOVERY DISPUTES**

Referral: Hon. Susan van Keulen, USMJ

September 24, 2021

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:     Joint Submission in Response to Dkt. 242 re: Status of Discovery Disputes
        *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's August 12, 2021 Discovery Order (Dkt. 242), Plaintiffs and Google LLC ("Google") jointly submit this statement summarizing the status of the parties' disputes, and identifying two issues each for resolution at the September 30 conference.  Plaintiffs identify P12 (Google's production of non-custodial documents) and P19 (Google's privilege assertions).  Google identifies D7 (Plaintiffs' counsel's improper review and use of Google's privileged documents) and D9 (Plaintiffs' blanket refusal to answer Google's RFA Nos. 30, 32, and 34).

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| **Disputes Identified by Plaintiffs** | | | |
| P1<br>4/7/21 | **Google custodians** | Joint Statement: There is no dispute at this time. | |
| P2<br>4/7/21 | **Google search terms** | Joint Statement: There is no dispute at this time. | |
| P3<br>4/7/21 | **Google production of Plaintiffs' data** | Joint Position: The parties are currently addressing this dispute with Special Master Brush. | |
| P4<br>4/7/21 | **Google server logs** | Plaintiffs' Position: On August 31, Plaintiffs requested that Google provide a proposed preservation plan, similar to what Google proposed in *Calhoun*. Plaintiffs are still awaiting that proposal. There is no ripe dispute, and Plaintiffs hope that Google will provide the promised proposal before the September 30 hearing.<br><br>Google's Position: Google preserved and produced records associated with cookie values that Plaintiffs provided and asserted were set during their private browsing sessions. Nonetheless, Google is prepared to continue the ongoing discussions with Plaintiffs. | |
| P5<br>4/7/21 | **Google preservation of custodial ESI** | Joint Statement: There is no dispute at this time. | |
| P6<br>4/7/21 | **Class member identification** | Joint Statement: The parties are currently addressing this dispute with Special Master Brush. | |
| P7<br>4/7/21 | **Logged in/out** | Joint Statement: The parties are currently addressing this dispute with Special Master Brush. | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| P8<br>4/7/21 | **Plaintiffs' consulting experts** | Plaintiffs' Position: Plaintiffs retained and disclosed to Google another technical expert who will assist Plaintiffs with reviewing Google's upcoming productions. There is no dispute at this time, and Plaintiffs do not expect there will be any dispute. The expert previously consulted in a case against Google, and Plaintiffs provided more information than what is required by the Protective Order. Google's deadline for objecting is September 27. Plaintiffs hope for a response before then.<br><br>Plaintiffs also recently disclosed its retention of Concur IP Consulting, who will provide eleven consultants to assist Plaintiffs, including with reviewing upcoming Google productions. Plaintiffs do not expect any dispute with these consultants either, again because Plaintiffs provided far more information than required by the Protective Order.<br><br>Google's Position: Google is reviewing Plaintiffs' disclosures for their proposed consulting experts and will respond in a timely manner in accordance with the Protective Order (Dkt. 81). | |
| P9<br>4/23/21 | **Google production of custodial documents responsive to particular requests** | Joint Statement: There is no dispute at this time. | |
| P10<br>4/23/21 | **Google timeline for producing custodial documents** | Plaintiffs' Position: Plaintiffs seek clarification regarding the October 6 production deadline. The Court ordered Google to complete production for the first 17 custodians by June 18. For those 17 custodians, Google produced approximately 43,000 documents by June 18. On | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | September 1, pursuant to the Court's cross-use order, Google produced about 70,000 documents for those custodians, including many relevant, responsive, non-privileged documents that hit on the agreed-to and Court-ordered search terms in this case, including "Incognito," and which therefore should have been produced by June 18. *See* Dkt. 275 (case management statement citing documents). The parties are meeting and conferring on those issues, to ensure there are no similar issues with the October 6 production. As clarification on the October 6 deadline, Plaintiffs (1) have no objection to Google producing "earlier-in-time" emails later, by October 20, and (2) propose an October 27 deadline for any privilege logs and production tied to those logs (one week longer than the 14 days stated Your Honor's standing order). These additional deadlines should permit the parties to conduct additional depositions in early November.<br><br><u>Google's Position</u>: Google fully complied with the Court's Order to search (using specific search terms), review, and substantially complete the production from the first 17 custodians by no later than June 18, 2021. Dkt. 147-1 at 3. Almost two months after the June 18 substantial completion deadline, the Court entered an order that Google cross-produce certain documents in both the *Brown* and *Calhoun* matters. Dkt. 243. Pursuant to that order, Google re-produced in both cases, with new cross-production Bates numbers, all non-custodial documents and custodial documents (of overlapping custodians) previously produced in either just *Calhoun* or *Brown*. The September 1 production of which Plaintiffs complain was one of | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
|  |  | Google's first cross productions.  Therefore, approximately 56,000 documents of the 70,000 which Plaintiffs claim came from the 17 relevant custodians and were produced on September 1 were custodial documents that Google had already produced to Plaintiffs.  Plaintiffs are well aware of this fact, as Google's cross-production contained a cross reference showing which documents had already been produced with Bates numbers from the Brown matter.  As for the rest, they are documents that had been produced in *Calhoun*, but not produced in this case.  It is expected that not all of the documents that were produced in *Calhoun* would be produced in this matter, as the cases involve different issues, the Plaintiffs in both cases propounded different Requests for the Production of Documents, and the parties agreed on different search terms.  Indeed, if Plaintiffs believed that all documents being produced in one case would also be produced in the other, they would not have sought an order for the cross-production of documents.<br><br>Plaintiffs first raised this issue on the afternoon of September 17, and did not specify how many or which documents it claims should have been produced by June 18, but were not.  In any case, Google has not withheld documents from the Plaintiffs; Plaintiffs have now even more documents than are relevant and responsive as a result of the cross-use order.  Plaintiffs do not, and cannot, claim any prejudice.  Nor have Plaintiffs presented any facts that suggest that Google did not substantially complete its production of the documents of 17 custodians as ordered by the Court. |  |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | Google understands the October 6 deadline to apply to documents pursuant to search terms on which the parties have already agreed. Due to the extra time and expense related to producing earlier-in-time emails, and the lack of any unique information contained therein, Google respectfully requests that the Court order that earlier-in-time emails need not be produced. If they are produced, consistent with Google's last court-ordered production deadline and parties' understanding, the parties agree that they will be produced after October 6.<br><br>Google further submits that three weeks is not enough time to complete its privilege log for productions of this size. The pace of production is resulting in the inadvertent production of privileged documents. It is imperative that Google have the time to properly review and log privileged documents, especially considering Plaintiffs' continued improper use of privileged documents inadvertently produced. Google therefore requests that any privilege log for documents subject to the October 6, 2021 deadline be due no earlier than November 17, 2021. | |
| P11<br>4/23/21 | **Google's production of executive documents** | Joint Statement: There is no dispute at this time. | |
| P12<br>4/23/21 | **Google production of other non-custodial documents** | Joint Statement: The parties set forth their respective positions on the disputed RFPs in Chart B, below.<br><br>Plaintiffs' Position: Most of these disputes were raised in the last joint submission, and the parties have been unable | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | to resolve them. All of the RFPs included in Chart B were served last year, in September and October 2020, and the parties recently met and conferred about them, including the day before filing this submission. Plaintiffs ask that the Court order production of these additional documents by October 13, one week after the current deadline, so that Google has additional time.<br><br>Google's Position: Should the Court order the production of any additional documents, the parties agree that those documents should not be subject to the October 6 deadline, as collecting, reviewing, and then running the production of new documents, not currently subject to that order, would be unreasonably burdensome and not proportional to the needs of the case. The production deadline for any new documents the Court may order to be produced should be based on the volume of documents that need to be reviewed and produced as well as the associated burden of collecting any specific type of document or information. | |
| P13<br>4/23/21 | **Google's responses to Plaintiffs' interrogatories** | Plaintiffs' Position: Google is again miscounting and as a result refusing to respond to Plaintiffs' interrogatories. Google has taken the position that Plaintiffs' Interrogatory No. 10 should count as 16 interrogatories, and that Interrogatory No. 11 should count as 20 interrogatories. Google also refuses to respond to Interrogatory No. 11 on the ground that Plaintiffs have exceeded the 25-interrogatory allotment. Google will presumably refuse to respond to Plaintiffs' Sixth Set of Interrogatories (due on September 27) on that same basis. | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
| --- | --- | --- | --- |
| | | Plaintiffs seek an order requiring Google to respond to Interrogatory Nos. 10 and 11 and to treat them as two interrogatories (one each). Plaintiffs' interrogatories are not compound. Rather than propound broad interrogatories that would only lead to confusion and objections, Plaintiffs specify the details they want addressed in the answers. Google improperly uses this specificity against Plaintiffs, arguing that every detail counts as a separate interrogatory.<br><br>To the extent the Court would benefit from additional briefing, Plaintiffs respectfully request permission to submit a two-page joint letter brief addressing Google's improper counting. The letter brief will also address Google's refusal to identify relevant information in response to Interrogatory No. 10.<br><br>This dispute is ripe. Plaintiffs sent Google a letter about this dispute on September 13, and the parties subsequently met and conferred. Google later, without addressing the substance of Plaintiffs' letter, changed its counting of Interrogatory No. 10 from 16 to 4. But Interrogatory No. 10 is just one interrogatory.<br><br>Google's Position: This dispute is not ripe, as the parties have not properly met and conferred as required by Magistrate Judge van Keulen's Discovery Standing Order. Nevertheless, Plaintiffs' Interrogatory Nos. 10 and 11 are improperly compound because they seek distinct responses related to four discrete Google products. Plaintiffs should not be allowed to continue to shoehorn in discrete subparts into each interrogatory to | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | circumvent the 25-interrogatory limit under Rule 33. Google proposed a compromise of counting Interrogatory Nos. 10 and 11 as four interrogatories each, which would bring Plaintiffs exactly to 25 interrogatories. Plaintiffs rejected that compromise. To the extent Plaintiffs' Interrogatory Nos. 10 and 11 are counted as four interrogatories each reaching the 25-interrogatory limit, Plaintiffs should be required to seek leave from the Court based on good cause to propound any additional interrogatories in accordance with Google's Proposed Order seeking to streamline discovery. | |
| P14<br>5/26/21 | **Access to non-public Google source code** | Joint Statement: The parties are currently addressing this dispute with Special Master Brush. | |
| P15<br>5/26/21 | **Cross-use** | Joint Statement: There is no dispute at this time. | |
| P16<br>8/2/21 | **X-Client Data** | Joint Statement: The parties are currently addressing this dispute with Special Master Brush. | |
| P17<br>8/2/21 | **Depositions** | Joint Statement: The parties are working together on a process for noticing and scheduling depositions, including foreign deponents and any former Google employees. There is a dispute, however, regarding the number of remaining depositions for Plaintiffs. The issue is whether the two prior 30(b)(6) depositions count toward the Court-ordered 20-deposition limit. The parties now seek clarification from the Court.<br><br>Plaintiffs' Position: The two prior 30(b)(6) depositions should not count toward Plaintiffs' limit because they were | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | taken pursuant to Court orders. *See* Dkt. 242-1 at 2 ("30(b)(6) depositions taken pursuant to this Court's prior orders do not count toward this limit.").<br><br>Plaintiffs' April 14 deposition of Jesse Adkins—regarding Google's collection of information from users who visit the Court's website—was taken pursuant to this Court's March 18 Case Management Order.  The Court ruled: "Google investigated the Court's website for the motion to dismiss hearing and raised the Court's website at the hearing because Google recognized the relevance of this information.  Having chosen to put this issue in controversy, Google must produce a witness for deposition." Dkt. 116 at 2.<br><br>Plaintiffs' June 16 deposition of Dr. Glenn Berntson was taken pursuant to this Court's April 30 Order.  For Dispute P6, the Court ordered that Google produce all "authenticated" and "unauthenticated" data for the named plaintiffs, and stated that, "[f]ollowing Plaintiffs' review of the supplemental production, the Court may entertain a request for a focused 30(b)6 deposition on identification data." Dkt. 147-1 at 2.  Plaintiffs deposed Dr. Berntson pursuant to that Order.  During the June 2 hearing, the Court referenced this deposition in connection with the April 30 Order, and further ordered that Google produce all of the data by June 9, "a week before the deposition." Tr. at 31:1-2.  The Court subsequently asked for additional briefing on P3 and P6 "following the 30(b)6 depositions scheduled in these cases on June 11 and June 16, respectively." Dkt. 191-1 at 2. | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | Google's Position: Neither the Adkins deposition nor the Berntson deposition was "taken pursuant to this Court's prior orders." These were fact depositions Plaintiffs noticed to further the merits of their claim. Google was not ordered by this Court to sit for a deposition; Google complied with a deposition notice in the regular course of discovery, and both Google and counsel spent time preparing and sitting for the depositions. There is no ground in logic or equity that these be exempted from the 20 deposition limit per the Court's August 12 Order. Dkt. 242-1 at 2.<br><br>The Court stated at the August 12 discovery hearing that, "in each *Brown* and *Calhoun*, I will allow a total of 20 depositions. . . . that includes 30(b)(6) depositions, not the ones I previously have ordered around the database issue because I ordered those early, and I believe I indicated those would not count against the limits." Hearing Tr. 41:24-42:5, August 12, 2021.<br><br>The Court has previously ordered depositions "around the database issue" in the *Calhoun* matter only. As Plaintiffs acknowledge, the Adkins deposition was taken pursuant to Judge Koh's March 18 Case Management Order. It was neither "around the database issue" nor ordered by this Court. The same holds true for the Bernston deposition. Plaintiffs misinterpret the Court's April 30 Order. In that Order, the Court stated that, "[f]ollowing Plaintiffs' review of the supplemental production, the Court ***may*** entertain a request for a focused 30(b)(6) deposition on | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | identification data." Dkt. 147-1 at 2 (emphasis added). Plaintiffs served a Rule 30(b)(6) deposition notice on May 24 and the Bernston deposition was scheduled for June 6. At the June 2 hearing, the Court asked, "obviously in my Order from April 30th I ordered the production of the authenticated identifiers, unauthenticated identifiers for individuals and their devices, and then the need ***perhaps*** there for an additional deposition. And I see in your CMC Statement that you have a deposition set there in the next couple of weeks, on June 6th. So one question I have is how that relates to this inquiry?" Hearing Tr. 25:22-26:4, June 2, 2021 (emphasis added). It is clear from the record that the Court merely suggested a potential need for a deposition, but never ordered one. | |
| P18<br>8/2/21 | **Hyperlinked documents** | <u>Plaintiffs' Position</u>: On September 9, Plaintiffs proposed a stipulation regarding Google's identification of hyperlinked documents. Plaintiffs are awaiting Google's response.<br><br><u>Google's Position</u>: The parties met and conferred regarding Plaintiffs' proposal on September 14, 2021, and Google intends to provide a formal written response this week. There is no dispute to raise at this time, and Google is optimistic that the parties will be able to resolve Plaintiffs' request without Court intervention. | |
| P19<br>8/2/21 | **Google's privilege logs and production** | <u>Plaintiffs' Position</u>: Plaintiffs respectfully seek the Court's assistance in (1) conducting an *in camera* review of one particular document that Google improperly clawed back and (2) compelling Google to promptly respond to Plaintiffs' challenges to Google's privilege assertions. As | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | explained in connection with D7, Google's accusations regarding Plaintiffs' conduct are meritless.<br><br>(1) Plaintiffs ask the Court to conduct an *in camera* review of one document (GOOG-BRWN-00048967) that was cited and quoted in a joint filing with the Court but then clawed back and redacted by Google. This document is an "Incognito Comms" document consisting of talking points prepared for Google CEO Sundar Pichai in advance of a 2019 Google conference. The document was quoted in Dkt. 224 at 8 (July 21, 2021 Joint Case Management Statement) and was also quoted in a draft joint discovery dispute chart that Plaintiffs sent to Google on July 29. Plaintiffs also referenced the document in a July 22 meet and confer letter. Then Google on August 10 clawed it back. Google claims the redacted portions consist of communications from and to in-house counsel Leslie Liu and Jessica Gan Lee. But many non-attorneys worked on this document, and comments by those non-attorneys should not be redacted. Further, numerous documents indicate that Ms. Liu and Ms. Gan Lee function in a business role. Plaintiffs do not believe that any of these communications concerned the provision of legal advice and instead constitute key factual admissions. Plaintiffs respectfully ask the Court to order Google to provide this document for *in camera* review, identifying the specific text that has been redacted, or in the alternative to permit the parties to submit a joint-letter brief on this issue.<br><br>(2) For the first 17 Google custodians, where the Court ordered production by June 18, Google provided a privilege | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | log on July 23 and a supplemental privilege log on August 13.  Plaintiffs promptly identified many deficiencies in those logs, with letters sent on August 9 and September 8. Those deficiencies include Google (i) withholding in their entirety many communications that do not include any attorneys that should at most have been produced with redactions; (ii) failing to identify the attorney whose legal advice is purportedly sought or included; (iii) redacting communications that do not appear to be privileged; and (iv) copying in-house counsel on communications for the purpose of limiting production on non-privileged communications.  Plaintiffs promptly raised these issues, in letters and meet and confers, but Google is dragging its feet on addressing these issues.  Plaintiffs therefore request the Court order Google to (i) review the privilege log entries with issues identified by Plaintiffs, (ii) produce any non-privileged, responsive documents that it has erroneously withheld within seven (7) days with an amended privilege log, and (iii) promptly address any future issues raised by Plaintiffs.  Quinn Emanuel has over 800 lawyers, and compliance with the October 6 production deadline does not, as Google suggests below, warrant further delay on resolving these important privilege issues.<br><br>Google's Position:  Google respectfully requests that the Court deny Plaintiffs' requests (1) to conduct an unwarranted *in camera* review; and (2) to compel Google to promptly respond to Plaintiffs' challenges to Google's privilege assertions.  As explained further below in Google's affirmative dispute D7, Plaintiffs have violated their ethical obligations by seeking out, reviewing, and | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | attempting to use what they know to be inadvertently produced privileged documents.<br><br>First, Plaintiffs have not shown that *in camera* review is appropriate here, as the limited redactions applied to GOOG-BRWN-00048967.C consist of (1) requests to Google in-house counsel Leslie Liu, Jessica Gan Lee, and Troy Sauro for legal advice regarding Google's public statements related to Incognito mode; (2) responses from in-house counsel advising on the proposed disclosures; and (3) statements from non-attorneys reflecting and conveying the advice of counsel regarding the same draft disclosures. Google has sent correspondence to Plaintiffs providing this same explanation.<br><br>There is no basis for Plaintiffs' unsupported assertion that "numerous documents indicate that Ms. Liu and Ms. Gan Lee function in a business role." In fact, even their public LinkedIn profiles clearly show that their duties are squarely focused on legal advice. *See* https://www.linkedin.com/in/liuleslie/ and (https://www.linkedin.com/in/jessica-gan-lee-5698817a/).<br><br>Second, Plaintiffs have not "identified many deficiencies in Google's privilege log" as they claim. Instead, Plaintiffs sent Google an 11-page letter on September 8, 2021 that consists of (1) ethically improper screenshots and citations of privileged communications to and from Google in-house counsel Chelsea Tanaka that were inadvertently produced by Google (*see* Dispute D7); (2) unsupported and unexplained assertions claiming that hundreds of Google's | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | privilege log entries somehow reflect non-privileged documents; and (3) a blanket demand for Google to re-do its privilege log *in toto* and re-review all documents listed on its privilege logs. Plaintiffs have failed to properly challenge the sufficiency of Google's privilege explanations, and therefore have failed to trigger a duty for Google to respond. Google remains willing to meet and confer with Plaintiffs regarding specific privilege log entries that they believe should be amended and/or documents that Plaintiffs believe should be produced.<br><br>Finally, Google is deeply concerned that Plaintiffs appear to be using their privilege challenges to force Google to divert resources from reviewing and producing documents by the Court's October 6, 2021 substantial completion deadline (by, *e.g.*, copying and pasting hundreds of privilege log entries into letters in order to task Google with researching each of the underlying documents). In light of the impending substantial completion deadline and Plaintiffs' clear violations of their ethical duties related to inadvertently produced privileged communications (*see* Dispute D7), Google requests that Plaintiffs be foreclosed from lodging additional privilege challenges until October 20, 2021.<br><br>If the Court is inclined to grant one of Plaintiffs' requests, Google respectfully seeks an opportunity to brief these issues. | |
| P20<br>8/2/21 | **Google's affirmative defenses** | <u>Joint Statement</u>: There is no dispute at this time. | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| P21<br>8/2/21 | **Mr. Pichai's ESI** | Joint Statement: There is no dispute at this time. | |
| | | **Disputes Identified by Google** | |
| D6<br>9/24/21 | **Plaintiffs' discovery requests** | Joint Position: Since the August 12 hearing, Plaintiffs have propounded two more sets of RFPs, which include 66 new requests, and one additional set of ROGs, with seven new requests. Google has not yet responded to this discovery, and there is no ripe dispute. The parties will meet and confer in good faith regarding this additional discovery and about limiting the number of any additional RFPs and ROGs. For the RFPs served after the August 12 discovery hearing, the parties will negotiate a production timeline. If the parties are unable to come to an agreement, they will seek leave from the Court to file a four-page joint brief. | |
| D7<br>9/24/21 | **Plaintiffs' counsel's improper review and use of Google's privileged documents** | Google's Position: Counsel for Plaintiffs have committed and continue to commit inexcusable ethical violations by (1) failing to notify Google of the inadvertent production of privileged communications; and (2) seeking out, reviewing, and attempting to use privileged documents that have been inadvertently produced by Google.<br><br>Plaintiffs do not dispute that they have failed to notify Google of the inadvertent production of privileged communications. That alone is a serious violation of their duty to inform Google of the inadvertent production of privileged materials as soon as they come across any such documents—particularly here, where Court-ordered deadlines have forced a pace of production that inevitably results in inadvertent production of privileged documents. | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | Nor can Plaintiffs contest that they have also searched for, reviewed, and attempted to use Google's privileged communications to gain a strategic advantage in this case. Plaintiffs' only defense is that this use was somehow warranted as part of the meet and confer process. But well-settled rules regarding counsel's duty to notify a producing party of the inadvertent production of privileged information are not suspended because the parties are meeting and conferring. Here, upon receiving a document from Google that contained redactions of email communications between Google in-house counsel and Google employees bearing "Redacted - Privilege" labels, Plaintiffs' counsel actively searched for other versions of the same email thread to determine whether privileged material was redacted in each version produced by Google. When Plaintiffs' counsel found that Google inadvertently failed to redact the same privileged communications in a second version of the same document, Plaintiffs used the privileged information in an attempt to challenge Google's privilege log by (i) taking screenshots of material that Plaintiffs' counsel knew Google considered privileged; (ii) causing the privileged material to be further disseminated and reviewed by even more members of Plaintiffs' legal team by inserting those screenshots in correspondence transmitted to Google (along with the "GOOGLETEAM@lists.susmangodfrey.com" external group email list that Plaintiffs have identified as their "service email" in this case, which Plaintiffs' counsel also uses as the service email for other, unrelated cases against Google); and (iii) citing the screenshots and unredacted | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | communications in support of their (incorrect) claim that the material at issue constitutes "business advice" that is not privileged.<br><br>As to Plaintiffs' claim that Google "clawed back only two of the documents cited by Plaintiffs, thus confirming that Google's privilege assertions for the other two documents were baseless," Plaintiffs appear to refer to two additional screenshots of unredacted documents that they also improperly included in correspondence to argue that those documents are not privileged. Google is evaluating those two documents. However, Plaintiffs still refuse to accept that they have an ethical obligation to inform Google of its inadvertent productions of unredacted documents. Instead, they view such productions as a strategic opportunity to exploit. That is not how the rules work.<br><br>Additional detail and legal cites are available in the joint CMS, Dkt. 275 at 17-20. Google respectfully seeks an opportunity to brief this issue and has prepared and attached here a Proposed Order outlining some of the relief regarding Plaintiffs' privilege log challenges that is warranted in light of their obvious disregard of their ethical duties.<br><br><u>Plaintiffs' Position</u>: Google's attacks on Plaintiffs' counsel are meritless. Plaintiffs have at all times acted ethically and in compliance with this Court's orders. Google redacted or withheld thousands of documents on the basis that they seek or reflect legal advice by Google in-house counsel, and Plaintiffs have a reasonable, good faith belief that many | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | of these privilege claims are improper. Plaintiffs' counsel cited for Google's outside counsel certain non-privileged documents produced by Google that demonstrate certain Google privilege assertions are unwarranted. Plaintiffs did so as part of the meet and confer process. Google clawed back only two of the documents cited by Plaintiffs, confirming that Google's privilege assertions for the other documents were baseless. Although those two documents are not privileged, Google doubled down on its improper privilege assertions by clawing them back. Regardless, consistent with the protective order, Plaintiffs promptly complied with Google's clawback requests and took the proper steps: (1) sequestering the documents and (2) never using the documents in public court filings or depositions. The email distribution list being used by Plaintiffs does not include any attorneys who are not working on this case. Plaintiffs have at all times acted ethically and in compliance with this Court's orders, as Plaintiffs explained in the September 22 Case Management Statement. If the Court wishes the parties to submit further briefing, Plaintiffs will do so.<br><br><u>Plaintiffs also request that the Court deny Google's proposed order. This proposed order barely addresses privilege issues, instead focusing on broad discovery topics (like RFA and Interrogatory limits) that the parties have barely discussed.</u> Google's initial draft of this submission stated (in a different section) that it planned to propose a stipulation that would "allow discovery to proceed in an orderly fashion." Before proposing any stipulation, Google jumped to a proposed order. | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | The parties discussed the issues in Google's proposed order for the first time during a meet and confer the day before filing this submission. Plaintiffs left that meet and confer with the understanding that the parties would continue these discussions. Google then sent a revised draft of the proposed order four hours after this submission was due to be filed.<br><br>Plaintiffs disagree with much of the proposed order. Plaintiffs cannot at this time commit to any set number of interrogatories while there is an outstanding dispute about how many interrogatories have been propounded thus far. *See* P13. Plaintiffs also see no reason to stay privilege challenges, which need to be resolved for the upcoming depositions. For the same reason, Google should not be granted a four-week extension above Your Honor's two-week Standing Order for producing a privilege log. Delaying the privilege log until November 17 will result in Google holding back relevant documents through December, and fact discovery closes on January 21.<br><br>But the parties might be able to agree on some of the other issues raised in the proposed order. Plaintiffs request that the Court deny the proposed order so the parties can meet and confer and hopefully resolve some of these issues, consistent with Your Honor's instructions. | |
| D8<br>9/24/21 | **Plaintiffs' deficient response to Google's Interrogatory No. 12** | <u>Google's Position:</u> Google's Interrogatory No. 12 requests Plaintiffs describe with particularity whether they "agreed to all terms in the documents [they] allege are part of the contract between [Plaintiffs] and Google," citing the | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | following documents referenced at Paragraph 268 of Plaintiffs' Second Amended Complaint: Google's Terms of Service, Chrome Terms of Service, Google's Privacy Policy, Chrome Privacy Notice, and the Chrome Incognito Notice. Plaintiffs respond by vaguely alleging that "the Chrome Privacy Notice promises Plaintiff and Class members that Google does not collect or use private browsing communications," and that "Google's Privacy Policy, the Incognito Screen and the 'Search & Browse Privately' page" make similar promises. This is an evasive non-response that does not attempt to answer the Interrogatory; namely, Plaintiffs do not indicate whether they *agreed* to a single term in the documents they allege are part of their contract with Google. Alleging a few self-serving "promises" in the identified documents does not respond to the substance of the Interrogatory, and Plaintiffs should amend their response to do so. Plaintiffs' argument that this would be too burdensome an endeavor ignores that the request asks only whether Plaintiffs "agreed to all terms in the documents [they] allege are part of the contract," and the initial step is simply answering with a "yes" or "no." If the answer is "no," Plaintiffs should then identify the terms in their alleged contract with Google to which they did not agree. If Plaintiffs are suggesting their amended responses to RFA Nos. 1 and 2 should be read to mean they agreed to all terms in the documents referenced, Plaintiffs should simply amend their responses to Interrogatory No. 12 to say so.<br><br><u>Plaintiffs' Position</u>: Plaintiffs fairly responded to this interrogatory and in good faith met and conferred with | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | Google regarding the burdensome nature of Google demanding that Plaintiffs identify each and every representation agreed to among the thousands of pages of documents that Google produced.  Plaintiffs offered to review particular statements or representations that Google identified for this discovery request, but Google declined.  Plaintiffs allege that "Google's relationship with its users is governed by the Google Terms of Service, the Google Chrome and Chrome OS Additional Terms of Service, and the Chrome Privacy Notice, which incorporate and/or should be construed consistent with the Privacy Policy, the 'Search & Browse Privately' page, and the Incognito Screen." Dkt. 136-1.  Plaintiffs fairly responded to the interrogatory by identifying terms from those documents to which they agreed and which are relevant for purposes of their breach of contract claim.  Google's demand that Plaintiffs review thousands of pages and state whether each and every term constitutes an enforceable commitment to which Plaintiffs agreed, notwithstanding relevance to this case, creates an undue and disproportionate burden.<br><br>Also, Plaintiffs' response to Interrogatory No. 12 is consistent with their revised responses to RFA Nos. 1 (that when Plaintiffs signed up for their Google accounts, Plaintiffs generally agreed to the then-current Privacy Policy) and 2 (that when Plaintiffs signed up for their Google accounts, Plaintiffs generally agreed to the then-current Terms of Service, which incorporated the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Private" page, and the Incognito Splash Screen). | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | Plaintiffs have fairly framed their contract claim with the operative complaint and discovery responses. | |
| D9 9/24/21 | **Plaintiffs' blanket refusal to answer Google's RFA Nos. 30, 32, and 34** | Google's Position:  Google's requests seek admissions regarding Plaintiffs' understanding of Google's collection of the data described in their Complaint through popular Chrome modes, *see, e.g.*, RFA No. 30 (understanding of collection through Chrome's Basic Mode), and whether Plaintiffs interpreted Google's Chrome Privacy Notice to convey whether Google would collect that data from users in those modes. *See, e.g.*, RFA No. 32 (Basic Mode); RFA No. 34 (Using Chrome without Sync enabled).  This goes directly to a key issue of Plaintiffs' interpretation of the Chrome Privacy Notice—a document they allege governed their relationship with Google, and which they claim Google breached—and the various mode descriptions therein (including the data (if any) Google receives in various modes).  The RFAs are plainly relevant in this action.  Google sent Plaintiffs a letter on September 13 regarding their refusal to respond to the requests, and Plaintiffs have indicated a response letter is forthcoming.  Despite Plaintiffs' suggestion otherwise, Google's September 13 letter obviously did not "admit[]" it was seeking absent class discovery for the *Calhoun* matter.  In response to Plaintiffs' objection to the RFAs that "Google may attempt to use any response in any other litigation, including *Calhoun*," which is not grounds to refuse to answer a request for admission, Google pointed out that this concern was nevertheless overblown, given that the information is directly relevant to this litigation, the class definitions between *Calhoun* and *Brown* overlap, making *Brown* Plaintiffs putative class members in | |

| Dispute No. | Dispute | Status as of 9/24 Joint Submission | Status as of 9/30 Hearing |
|---|---|---|---|
| | | *Calhoun*, and a cross-use order has been entered requiring written discovery responses in this case be provided to parties in *Calhoun*.<br><br>Plaintiffs' Position: These RFAs reflect an improper attempt by Google to conduct purported absent class member discovery in the *Calhoun* matter. Google admitted to this in a September 13 letter, alleging that the RFAs are relevant in part because Google contends the named Plaintiffs in *Brown* are class members in *Calhoun* and vice versa. Plaintiffs' operative complaint makes no mention of "sync" and Mr. Rakowski testified that the "basic" or "regular" mode, which would be at issue in *Calhoun*, is different from the Incognito mode at issue in this action. Tr. at 26:25-28:25, 209:19-210:2. Other RFAs served with this discovery request further demonstrate Google's attempt to conduct discovery in *Calhoun* with the *Brown* Plaintiffs. Such discovery is improper, and Plaintiffs should not be required to respond to discovery requests relating to another case to which they are not parties and Google has not even demonstrated how Plaintiffs could be absent class members. That these cases were ordered related for purposes of coordinating discovery against Google should not be construed as an invitation for Google to conduct discovery of Plaintiffs in a case to which they are not parties. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| P12 9/24/21 | Plaintiffs' RFP 30: Documents concerning any changes to Google's controls regarding private browsing mode that were proposed or considered but not adopted by Google. | This request (served in October 2020) is intended to capture changes to Incognito mode that Google employees proposed and considered but that Google did not adopt. Google already agreed to produce custodial documents responsive to this request, but Google refuses to search for and produce responsive non-custodial documents.<br><br>Although Google employees knew Incognito "was always a misleading name" with many "known misconceptions" among users (GOOG-BRWN-00475063 at -65; GOOG-BRWN-00048967.C at -68.C), Google did not fix those problems. Instead, Google employees repeatedly proposed changes that Google executives rejected, such as (1) changing Incognito "to provide privacy towards Google (vs. only local privacy)" (GOOG-CABR-00413286 at -86), (2) changing Incognito to send instructions to Google that would prevent Google from logging private browsing information or | Google is already searching for and producing *custodial* documents responsive to this request. To be clear, Google's collection of custodial documents is not limited to email. Google also collects additional documents from the custodian that are identified as potentially containing responsive information. Google has agreed to produce responsive documents from custodial sources. Now Plaintiffs ask that Google go through the burdensome exercise of identifying any additional *noncustodial* sources that may have documents responsive to an ill-phrased and vague request which is likely to sweep in many irrelevant documents. Plaintiffs' submission proves the overbreadth and vagueness of the request: Plaintiffs purported examples of documents they are seeking are not even responsive to this RFP at all.<br><br>Plaintiffs did not define "controls" when it served its Second Set of RFPs. Google understands "controls" within the context of this RFP to relate | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | require Google to delete such information (GOOG-BRWN-00063504 at -04), (3) changing Incognito from session-based tracking and profiling by Google, with known problems, to "[REDACTED]" (GOOG-CABR at 00551305 at -10), (4) changing Incognito to add alerts whenever someone tries to log in to any Google account while browsing privately, (5) changing Incognito to merge it with Guest mode or make it "Temporary Browsing" where Google would be making "less promises about Anonymity" (GOOG-CABR-00143976 at -229), (6) changing Incognito to add "cookie consent" recognizing that seeking consent would "reveal Incognito's shortcomings," GOOG-CABR-00395420 at -22.<br><br>There is no basis for Google to withhold these documents, which are relevant both in terms of liability and Google's consent defense, demonstrating that Google could have made changes to Incognito but | to things such as Privacy and Security controls in Chrome and logged-out ad setting controls. Any proposal for changes to such controls that were not ultimately adopted are unlikely to lead to the production of admissible evidence, and are not proportional to the needs of this case. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | intentionally continued collecting Incognito browsing data without disclosure or consent.<br><br>As a compromise, Plaintiffs propose that Google limit its investigation to first speaking with any of the 42 Google document custodians who were involved with any discussions regarding Incognito mode to identify any sources of non-custodial documents that might be responsive to this request and then searching for documents in those locations. | | |
| P12<br>9/24/21 | Plaintiffs' RFP 49: Google's technical documents relating to how Google tracks individual consumers, their devices, and their locations. | These documents are relevant in terms of liability (based on Google's collection and use of private browsing data) and Google's consent defense (the extent to which Google's tracking practices line up with its disclosures). These documents are likely also relevant in terms of calculating damages.<br><br>As a compromise, instead of producing all responsive documents, Plaintiffs propose that Google produce technical documents | Plaintiffs' request for "technical documents sufficient to show, during the class period, how Google tracks individual consumers, their devices, and their locations," is on its face overly broad and not tied to Plaintiffs' claims in this case. The class definition in this case relates to Google Analytics and Google Ad Manager. Instead, Plaintiffs seek documents related to ***all*** Google apps and services, including those, like Google Maps and many others, that are clearly outside of the scope of this case. Plaintiffs' demand that Google | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | sufficient to show, during the class period, how Google tracks individual consumers, their devices, and their locations.<br><br>Google's proposed compromise is inadequate. Collection of information for Google Analytics and Ad Manager is just one part of the case. Other collection and tracking mechanisms are relevant to Plaintiffs' allegations about how Google impermissibly uses private browsing data. | produce documents related to all of its services and apps is not proportional, is unduly burdensome, and is not related to the core allegations of this case.<br><br>As a compromise, Google proposes that it produce non-privileged documents sufficient to show the requested information for Google Analytics and Google Ad Manager. This compromise is reasonable because Plaintiffs specifically limit the definition of both sub-classes to "All individuals . . . who accessed a non-Google website containing Google Analytics or Ad Manager[.]" SAC ¶192. | |
| P12 9/24/21 | Plaintiffs' RFP 50: Documents sufficient to identify all websites and publishers that use Google Analytics. | Google admits that it collected and continues to collect private browsing information when class members visit websites that use Google Analytics. With this request, Plaintiffs properly seek to identify the websites that use Google Analytics. By refusing to produce documents responsive to this request, Google seeks to prevent Plaintiffs and from discovering the scope of | Plaintiffs previously raised a request for similar information in connection with its Interrogatory 5. Dkt. 230 at 19-21; 62-63. The Court resolved that dispute, ordering "[b]y August 30, 2021, Google is to identify the top 25 visited websites for each of Google Analytics and Google Ad Manager." Google did so. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | Google's impermissible data collection.<br><br>Google admits that it has the information to identify the websites that use Google Analytics, but Google does not want to produce the information because it claims it is "sensitive." There is a protective order in place, and this is no basis for Google to withhold this information.<br><br>This information is highly relevant. It is relevant to, without limitation, Google's publisher consent argument (to identify those publishers), liability (to identify the full scope of Google's collections, damages—quantified based on Google's collection), class issues (where Plaintiffs and putative class members could look at this list to determine which websites they visited while in private browsing mode), and any injunctive relief (both in terms of deleting private information collected by Google and stopping future collection). | Plaintiffs' request is overly broad and not proportional to the needs of the case considering that millions of websites and publishers use Google Analytics, and Plaintiffs have not provided a reason that the identification of millions of third parties is relevant to the case, or likely to lead to admissible evidence.<br><br>Plaintiffs' proposal is unduly burdensome, and would require Google to not only identify millions of websites and publishers (which may require notice being sent to millions of third parties), but also a detailed report of any time periods since June 1, 2016 when the website or publisher did not use Google Analytics. Google's systems are not set up to provide information in this way. Any trivial amount of relevance this information may have is clearly outweighed by the significant time and expense that Google must expend to even determine if it can provide the information Plaintiffs seek. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016) and only those websites for which Google collects data when putative class members visit in a private browsing mode, with the expectation that the data would include any changes during that period (e.g., if a publisher used Google Analytics for only portions of that time period, the data would identify those time periods). | Google proposes that its response to Interrogatory 5 is sufficient with respect to providing any potentially relevant information that is responsive to this request. | |
| P12 9/24/21 | Plaintiffs' RFP 57: Documents sufficient to identify all websites and publishers that use Google Analytics UserID. | This is relevant discovery tied to RFP 50, with Google Analytics UserID used to profile and track users, including in private browsing mode. SAC ¶¶ 63, 69, 81, 82, 93. For this RFP 57, Plaintiffs incorporate their points above regarding RFP 50. | Google incorporates its response above regarding RFP 50. | |
| P12 9/24/21 | Plaintiffs' RFP 64: Documents sufficient to show all ways in which Google uses data gathered | These documents are relevant to Plaintiffs' claims (how Google uses data, for purposes of liability and damages) and also Google's consent | Google has already searched for and produced where available custodial documents that relate to its use of user data. Now Plaintiffs seek something in addition to that, but they have | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | through Google cookies, including data collected in connection with users' activity while in a private browsing mode. | defense (whether such uses have been disclosed).<br><br>This request is not overbroad. Google has blocked Plaintiffs' efforts to discover how private browsing data is used, so Plaintiffs properly seek information about how Google generally uses data gathered through Google cookies, including data collected during private browsing sessions.<br><br>This dispute is ripe. Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google claimed before the August 2 submission that it was in the process of preparing a stipulation to address this Request. Google's subsequent proposed stipulation did not even mention this RFP.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | identified no particular deficiency or presented any argument as to why Google's current production in this case, of now more than 4 million pages of documents, is not sufficient. The associated burden with searching for more documents on this issue far outweighs any potential benefit Plaintiffs may receive.<br><br>In addition, the parties have had discussions regarding entering into a stipulation related to Google's use of data. To the extent the Court finds that additional information should be produced, Google proposes that this fact-specific request be addressed via stipulation. | |
| P12 9/24/21 | Plaintiffs' RFP 65: Documents sufficient | Google admits that it collected and continues to collect private browsing | Plaintiffs previously raised a request for similar information in connection | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | to identify all websites and publishers that use Google Ad Manager. | information when class members visit websites that use Google Ad Manager. For this RFP 65, Plaintiffs incorporate their points above regarding RFP 50. Like RFP 50, RFP 65 seeks highly relevant information that Google can and should produce without further delay | with its Interrogatory 5. Dkt. 230 at 19-21; 62-63. The Court resolved that dispute, ordering "[b]y August 30, 2021, Google is to identify the top 25 visited websites for each of Google Analytics and Google Ad Manager." Google has complied.<br><br>Plaintiffs' request is overly broad and not proportional to the needs of the case considering that millions of websites and publishers use Google Ad Manager, and Plaintiffs have not provided a reason that the identification of millions of third parties is relevant to the case, or likely to lead to admissible evidence.<br><br>Plaintiffs' proposal is unduly burdensome, and would require Google to not only identify millions of websites and publishers (which may require notice being sent to millions of third parties), but also a detailed report of any time periods since June 1, 2016 when the website or publisher did not use Google Ad Manager. Google's systems are not set up to provide information in this way. Any trivial | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | | amount of relevance this information may have is clearly outweighed by the significant time and expense that Google must expend to even determine if it can provide the information Plaintiffs seek.<br><br>Google proposes that its response to Interrogatory 5 is sufficient with respect to providing any potentially relevant information that is responsive to this request. | |
| P12 9/24/21 | Plaintiffs' RFP 68: Documents sufficient to show all ways in which Google uses data gathered through Google Ad Manager, including data collected in connection with users' activity while in a private browsing mode. | Plaintiffs' claims focus not only on Google's collection of private browsing information (e.g., RFPs 50 and 65, above) but also Google's use of that private browsing information, with Plaintiffs seeking relief based on Google's enrichment from that use. With RFP 68, the requested documents are relevant to Plaintiffs' claims (how Google uses data, for purposes of liability and damages) and also Google's consent defense (whether such uses have been disclosed).<br><br>This request is not overbroad. Google has blocked Plaintiffs' efforts | Google has already produced custodial documents that relate to its use of user data. Plaintiffs have presented no argument as to why Google's current production in this case, of now more than 4 million pages of documents, is not sufficient. The associated burden with searching for more documents on this issue far outweighs any potential benefit Plaintiffs may receive.<br><br>In addition, the parties have had discussions regarding entering into a stipulation related to Google's use of data. To the extent the Court finds that additional information should be | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | to discover how Google uses their private browsing information, so Plaintiffs properly seek information about how Google generally uses data gathered through Google Ad Manager, including data collected during private browsing sessions.<br><br>This dispute is ripe. Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google claimed in the August 2 submission that it was in the process of preparing a stipulation to address this Request. Google's subsequent proposed stipulation did not even mention this RFP. Nor did the stipulation address how Google uses information collected from private browsing users.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | produced, Google proposes that this fact-specific request be addressed via stipulation. | |
| P12 9/24/21 | Plaintiffs' RFP 71: Documents sufficient to show all types and the amount of data | These documents are relevant for purposes of class certification and identifying class members and also understanding the full scope of | GStatic and Approved Pixels are not relevant to the claims of this case, and Plaintiffs have not provided any information showing otherwise. In | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | collected with X-Client Data Header, GStatic, and Approved Pixels, including in connection with users' activity while in a private browsing mode. | Google's collection of private browsing information. *See* SAC ¶¶ 80, 81, 93, 101-04. Google does not deny that it collects data with these three features.<br><br>This dispute is ripe. Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google claimed in the August 2 submission that it was in the process of preparing a stipulation to address this Request. Google's subsequent proposed stipulation nowhere used the words "GStatic" or "Pixels," making the proposal wholly inadequate for this RFP. As for the X-Client Data Header, the proposed stipulation was noncommittal, suggesting that the X-Client Data Header "may potentially be sent to Google Ad Manager" when a user is not in a private browsing mode.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | addition, X-Client Data Header is not sent when a user is privately browsing, and so Google does not have documents to produce that relate to the X-Client Data Header for users who are privately browsing. To the extent Plaintiffs seek these documents to make possible their fingerprinting private browsing users, that is a privacy-violative purpose and should be disallowed. Therefore, Google should not be ordered to produce documents responsive to this RFP. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| P12<br>9/24/21 | Plaintiffs' RFP 73: Documents sufficient to show all system or geolocation data collected by Google and associated, directly or indirectly, with any user or user device that has used private browsing mode. | These documents are relevant to Plaintiffs' allegations that Google collects geolocation data and uses geolocation data to associate private browsing data with user profiles, which in turn allows Google to profit from its collection of private browsing data. SAC ¶¶ 63, 81-82, 93, 105, 108.<br><br>Plaintiffs understand that Google in fact collects system and geolocation data from private browsing. For example, one document (GOOG-CALH-00038022 / GOOG-CABR-00424013 at -191) [REDACTED] This request is also narrowly tailored, only seeking documents "sufficient to show."<br><br>This dispute is ripe. Plaintiffs served this request in October 2020, and Google is still refusing to produce | Plaintiffs' request is overly broad, requesting all system and geolocation data from any user or device that has used private browsing. This would result in Google providing all geolocation data to Plaintiffs for potentially millions of users, including from users who are not Plaintiffs in this action. Plaintiffs have not articulated why this extremely broad amount of data is necessary, nor how it would lead to the discovery of admissible evidence. Furthermore, providing this information would be an immense burden to Google, and so the request is not proportional to the needs of the case.<br><br>Google met and conferred with Plaintiffs in an attempt to narrow the request to a more reasonable scope, but Plaintiffs were unwilling to narrow the request. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | these documents. Google claimed in the August 2 submission that it was in the process of preparing a stipulation to address this request. Google's subsequent proposed stipulation listed this RFP, but nowhere else used the word "geolocation," making the proposal wholly inadequate for this RFP.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). | | |
| P12<br>9/24/21 | Plaintiffs' RFP 75: Documents concerning Google's association of data collected while users are in private browsing mode with unique user profiles through Google Analytics User-ID. | This request relates to Plaintiffs' allegations that Google uses Analytics User-ID to associate private browsing data with user profiles, which in turn allows Google to profit from its collection of private browsing data. SAC ¶¶ 63, 69, 81-82, 93.<br><br>Plaintiffs served this request in October 2020, and Google is still refusing to produce these documents. Google claimed in the August 2 submission that it was in the process of preparing a stipulation to address this Request. Google's subsequent | Google has already explained to Plaintiffs that Google Analytics User-ID is generated, assigned, and used by Google Analytics customers. Google Analytics has no formal logic to distinguish between information received from a browser in private browsing mode and information received from a browser in a non-private browsing mode.<br><br>Therefore, Google has no documents to produce with respect to this request. | |

| Chart B: Disputes re: Plaintiffs' Written Discovery | | | | |
|---|---|---|---|---|
| **Chart A Dispute No.** | **Request** | **Plaintiffs' Proposal** | **Google's Proposal** | **Status as of 9/30/21 Hearing** |
| | | proposed stipulation listed this RFP, but nowhere else used the word "User-ID." Nor did the proposed stipulation say anything about how Google associates private browsing data with other datapoints.<br><br>Google explains to the right that "Google Analytics has no formal logic to distinguish between information received from a browser in private browsing mode and information received from a browser in a non-private browsing mode." Assuming that is true, Google should produce responsive documents regarding User-Id generally.<br><br>As a compromise, Plaintiffs propose limiting this request to documents "sufficient to show" how User-ID is or can be paired with Google identifiers (whether unauthenticated or unauthenticated) and that production be limited the class period (since June 1, 2016). | | |

| | | | | |
|---|---|---|---|---|
| P12 9/24/21 | Plaintiffs' RFP 102: Google's documents showing how Google improved its Google products and services (including but not limited to Search, Google Analytics, and Google Ad Manager) based on data Google obtained relating to the allegations at issue in the First Amended Complaint. | Plaintiffs allege that Google uses private browsing data to improve Google's own algorithms and technology, such as Google Search. SAC ¶ 115. As with RFP 94, these documents are crucial for the assessment by Plaintiffs' damages experts. Google should begin producing these documents without further delay.<br><br>Plaintiffs asked Google during a meet and confer to identify which Google products benefit from Google's collection of private browsing data. Google has not provided that information. Google should produce responsive documents for any Google product that so benefits.<br><br>This dispute is ripe. The parties met and conferred on September 23.<br><br>As a compromise, Plaintiffs will agree to limit production to the class period. Plaintiffs also clarify that this Request is limited to how Google improved its products and services based on Google's collection of private browsing data. | In a letter dated March 1, 2021 Plaintiffs indicated that they would like to meet and confer regarding this request, but Plaintiffs failed to raise this request during the numerous meet and confers conducted for more than six months. Plaintiffs waited until earlier this month to raise this request again, and the parties first met and conferred on September 23.<br><br>This request is overly broad, and would require Google to investigate whether documents exist relating to ***all*** of its many products and services, including products and services that are not at issue in this case such as Google Maps and YouTube. As such, this request is overly burdensome and not proportional to the needs of the case. | |
| P12 9/24/21 | Plaintiffs' RFP 103: Documents concerning all ways | Google benefits from its use of the private browsing data Google collects. SAC ¶¶ 70, 115, 121. This | In a letter dated March 1, 2021 Plaintiffs indicated that they would like to meet and confer regarding this | |

| | | | | |
|---|---|---|---|---|
| | in which Google has benefited from the conduct alleged in this lawsuit, including without limitation advertising revenues, impact on Google's market power, and improvement or development of additional Google services or products. | information is highly relevant to Plaintiffs' prayer for non-restitutionary disgorgement, which is an available remedy for Plaintiffs' claims. Google should begin producing these documents without further delay. As a compromise, Plaintiffs will agree to limit production to the class period.<br><br>As one discrete example, Google should produce all documents relating to Google's internal estimate that [REDACTED] (GOOG-BRWN-00181879 at -79). Google has not yet produced all documents tied to that estimate and the other ways in which Google generates revenues using private browsing information. Plaintiffs' damages experts need these documents to begin their assessments.<br><br>This dispute is ripe. Plaintiffs served this request in October 2020, and the parties exchanged letters and met and conferred on this request. Google should produce the requested documents. | request, but Plaintiffs failed to raise this request during the numerous meet and confers conducted for more than six months.<br><br>Plaintiffs waited until earlier this month to raise this request again, and the parties first met and conferred on September 23.<br><br>Any documents that are called for by this RFP and are relevant to this case are called for by other of Plaintiffs' RFPs, including RFP 99 (revenues and profits); RFP 101 (sales documents for Google Ad Manager); RFP 102 (documents showing how Google improved its Google products and services."<br><br>It is inefficient for the Plaintiffs to propound multiple RFPs seeking the same documents, and then to expect Google to negotiate each of those RFPs separately, and to seek assistance from the Court for each RFP. | |

| | | | | |
|---|---|---|---|---|
| P12 9/24/21 | Plaintiffs' RFP 104: All documents pertaining to Google's decision to collect user data while users are in private browsing mode, including any assessments of the value of such data to Google or the cost of avoiding collecting such data. | These documents are relevant to Plaintiffs' allegations that Google collects private browsing data while users are in a private browsing mode, despite Google's representations to the contrary, for Google's own benefit. SAC ¶¶ 41-43, 47-50. As with RFP 94, these documents are crucial for Plaintiffs' damages experts to begin their assessments. Google does not deny that it profits from its collection of private browsing information, nor could Google. Google should begin producing these documents without further delay.<br><br>This dispute is ripe. The parties met and conferred on September 23. | In a letter dated March 1, 2021 Plaintiffs indicated that they would like to meet and confer regarding this request, but Plaintiffs failed to raise this request during the numerous meet and confers conducted for more than six months.<br><br>Furthermore, Google has already produced more than 4 million pages of documents in this matter, including documents from custodians and search terms that Plaintiffs chose specifically to obtain the types of documents that would be responsive to this request. Plaintiffs have not provided any reason that the custodial productions related to this request are insufficient.<br><br>Google is willing to meet and confer with Plaintiffs regarding this request. | |
| P12 9/24/21 | Plaintiffs' RFP 163: Documents concerning the extent to which Google's data privacy policies abide by or conflict with the laws in various jurisdictions in which Google operates, including the EU General Data | Google's counsel asserts that Google's data collection and storage practices are consistent with and required by these laws, identifying these laws in particular, and Plaintiffs reasonably seek these documents to test that assertion. These documents are especially important given that Google's employees apparently disagree with Google's lawyers, admitting that Google collects data | The requested documents are not relevant to the case, as this case deals with U.S. users and U.S. laws. Google's compliance with foreign laws is not at issue, nor would the production of such documents be likely to lead to the discovery of relevant, admissible evidence. | |

| | | | | |
|---|---|---|---|---|
| | Protection Regulation 2016/679, the California Consumer Privacy Act (CCPA), and Lei Geral de Proteção de Dados (LGPD). | without user consent and that "[REDACTED]." GOOG-BRWN-00164056 at -57 n.5. Google should not be permitted to withhold these relevant documents.<br><br>This dispute is ripe. Plaintiffs raised this issue in the August 2 submission, and Google is still refusing to produce responsive documents.<br><br>As a compromise, Plaintiffs propose limiting Google's production to the class period (since June 1, 2016). Plaintiffs have also agreed that Google need not search "legal folders" to identify non-custodial documents responsive to this request. | | |
| P12 9/24/21 | Plaintiffs' RFP 166: All internal dashboard information for Incognito mode, Google Analytics, and Google Ad Manager. | Google uses internal dashboards to track certain metrics, including with Incognito browsing, and Plaintiffs reasonably seek relevant information from those Google dashboards.<br><br>For example, documents produced by Google demonstrate that Google has [REDACTED] | Google has produced information in response to this request. Nevertheless, Google is reviewing Plaintiffs' additional information requests and will respond in due course. | |

| | | [REDACTED]." GOOG-BROWN-00183909 at -09; GOOG-BRWN-00183909. *See also* GOOG-BRWN-00167899 at -99 [REDACTED]); GOOG-BRWN-00027227 [REDACTED]<br><br>During a meet and confer, Google asked Plaintiffs to specify what specific internal dashboard information they sought. Because Plaintiffs lacked insight into Google's internal dashboard tracking practices, Plaintiffs asked Google to disclose the types of information Google tracks, so that Plaintiffs can identify relevant dashboard metrics and narrow this request. Google produced a spreadsheet disclosing these metrics, and Plaintiffs then sent Google a letter on August 30 seeking the production of records and data associated with specific metrics. Google still has not produced that data or provided a date certain for production. Google should produce all responsive data without further delay. | | |
|---|---|---|---|---|

Respectfully,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

BOIES SCHILLER FLEXNER LLP

*/s/ Mark C. Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Sean Phillips Rodriguez (CA Bar No. 262437)
srodriguez@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293 6858
Fax: (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Tel: (305) 539-8400
Fax: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor

Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Discovery Statement. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: September 24, 2021

By *_/s/ Andrew H. Schapiro_*
Andrew H. Schapiro
*Counsel on behalf of Google LLC*