# EXHIBIT B

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S EMAIL ADDRESS
josefansorge@quinnemanuel.com

December 14, 2020

**VIA E-MAIL**
BRICHARDSON@BSFLLP.COM

Beko Reblitz-Richardson
Boies Schiller Flexner LLP
44 Montgomery St.
41st Floor
San Francisco, CA 94104
Phone 415 293 6804

Re:   Google's Responses to Plaintiffs' First Set of Requests for Production (Nos. 1–19)

Dear Counsel:

I write on behalf of Google Inc. ("Google") in response to your November 6 and 20, 2020 letters, and in furtherance of our November 18, 2020 meet and confer—all of which relate to Google's responses and objections to Plaintiffs' First Set of Requests for Production (Nos. 1–19).

**Custodial Documents**

As discussed during our meet and confer, Google is willing to produce custodial documents. Google has not yet begun to collect, review, and produce such documents. This is consistent with Plaintiffs' September 30, 2020 letter, where Plaintiffs asked that Google "hold off on the collection, review, and production of custodial documents." Moreover, due to the high cost associated with reviewing custodial documents, the parties agree that they will engage in custodian and search term negotiations once the parties have had an opportunity to meet and confer on Plaintiffs' Second Set of Requests for Production, which adds 130 requests. As you agreed during our call, the goal is to arrive at settled-on terms that will be run to identify documents for a single review, so as to minimize the burden on Google that would result from *seriatim* reviews of the same universe of documents.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Google's December 14, 2020 Ltr. to Plaintiffs' Counsel

**Requests for Production**

*Request No. 1*: In its current form, the request seeks documents Google provided to any regulators in connection with any request concerning Google's data collection practices and disclosures. As an initial matter, indiscriminate requests for cloned discovery from other litigation are improper. *In re eBay Seller Antitrust Litig.*, 2010 WL 2836815, at *3 (N.D. Cal. July 19, 2010) (determining that there was "little or no overlap of issues" justifying cloned discovery in antitrust case where purportedly collateral litigation involved consumer protection and usury claims); *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) ("Plaintiff argues that discovery in the state cases is relevant to this action because those four cases also allege that Ampco failed to pay wages to employees for all hours worked. Although Plaintiff identifies certain similarities between the state cases and this case, such similarities are not enough to require a carte blanche production of all documents from the state cases."); *King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("This Court is inclined to agree that '[c]loned discovery', requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case . . . This is because, without more, the Court cannot ascertain whether the documents requested actually relate to Plaintiffs' claims and defenses.") (citation omitted). In lieu of citations to specific factual and/or legal "overlaps" between the instant litigation and the myriad regulatory actions identified in Plaintiff's requests, your November 20 letter provides vague allusions to, *e.g.*, "data collection practices across Google services" or "the development and reasons for the disclosures and data collection practices." As such, this request remains overly broad and unduly burdensome.

Further, even if cloned discovery were proper, the request as currently worded is so overbroad as to be unworkable. The examples we offered on the call—a City Attorney in San Francisco investigating location data for scooters or a government agency in Namibia inquiring into Gmail accessibility—were solely *hypothetical* cases designed to show the overbreadth of the request. Plaintiffs' November 20 letter does not provide any proposal to narrow or refine this request to reduce the substantial burden associated with responding to it. Instead, Plaintiffs seek additional burdensome discovery by asking Google to, *inter alia*, identify "all other regulators to which Google has provided documents that could be responsive to this request." Asking Google to canvas all of its worldwide interactions with regulators to help Plaintiffs broaden their fishing expedition does not resolve the defects we identified above.

Nevertheless, in the interest of resolving our dispute over this request, Google is willing to produce documents in response to this request if narrowed to something more workable. During our meet and confer call, you asked that Google provide a proposal. Google proposes that the parties agree to limit RFP No. 1 to: (i) US regulator inquiries; (ii) during the purported class period; (iii) related to privacy; (iv) in the context of browsing; and (v) relating to logged-out activity. Please let us know if this is an acceptable solution for Plaintiffs.

*Request No. 2*: This request seeks copies of discovery and unredacted versions of the filings in what the parties have been calling the Arizona AG investigation. *State of Arizona ex rel. Mark Brnovich, Attorney General v. Google LLC*, No. CV 2020-006219 (Ariz. Superior Ct. 2020).

Google's December 14, 2020 Ltr. to Plaintiffs' Counsel

You argue that "the Arizona action focuses on location data, the Google productions are clearly relevant (as explained in the FAC) because they concern Google's privacy disclosures and data collection practices generally, with Google employees commenting that Google lacks consent for its data collection practices." However, you have not identified any privacy disclosures relevant to the claims here that would overlap with the privacy disclosures at issue in the Arizona action. As we discussed during our meet and confer, Plaintiffs' class action is limited to Google's collection of data through Google Analytics and Google Ad Manager when users were private browsing while logged out of their Google Accounts. *See, e.g.*, AC ¶ 192. The fundamental issue is that there is little overlap between the subject matter in this case and the Arizona AG investigation, and you have not demonstrated to the contrary. Merely referring to the Arizona AG investigation in the Complaint does not mean that Plaintiffs are automatically entitled to duplicate discovery—and Google has already explained that producing cloned discovery in this case is unduly burdensome. At this point, we do not believe there is a proper justification for producing unredacted versions of the filings, or other documents from that investigation.

**Request Nos. 3–9**: Google has already agreed, and has begun, to produce documents in response to these requests. Google does not object to Plaintiffs proposing search terms related to these requests (for inclusion in the custodial searches mentioned *supra*). As the parties agreed during our meet and confer, Plaintiffs will review the rolling productions and identify any key deficiencies. Please let us know if there is any aspect to RFP Nos. 3 through 9 to be addressed at this time.

**Request No. 10**: This request seeks "[d]ocuments sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members." Plaintiffs have sued Google for data Google collected while Plaintiffs were private browsing and logged out of their accounts, *see* Compl. ¶ 192. Google does not associate a user's electronic or physical address information with a user's logged-out activity. Therefore, Google will not produce documents in response to this request.

Plaintiffs' citations to *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), do not support Plaintiff's position because, as the court expressly noted in *Williams-Sonoma*, *Oppenheimer* was decided before the 2015 amendments to Federal Rule of Civil Procedure 26(b)(1) substantially narrowed the scope of permissible discovery.[1] As to *Williams-Sonoma*, Plaintiffs' assertions are also incorrect, as Plaintiffs ignore the simple truth that this request seeks the exact information (data sufficient to identify absent class members) that the Ninth Circuit prohibited. Plaintiffs' brand-new assertion that they "seek [this] discovery for the purpose of substantiating their allegations" is wholly conclusory. Plaintiffs do not explain *how* this discovery

---

[1] *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9thCir. 2020) ("Rule 26(b)(1) was amended to its current form after 1978 when *Oppenheimer* was decided. As quoted above, the rule then indicated that discovery must be 'relevant to the subject matter involved in the pending action' that related to a party's claim or defense. Now, the 'subject matter' reference has been eliminated from the rule, and the matter sought must be 'relevant to any party's claim or defense.' That change, however, was intended to restrict, not broaden, the scope of discovery.") (citations omitted).

3

Google's December 14, 2020 Ltr. to Plaintiffs' Counsel

would serve this end, nor does it provide justification as to *why* Plaintiffs could not obtain sufficient information via less burdensome means.

You claim that you provided us "with additional information regarding the identification of class members and pointed you to the detailed allegations in the First Amended Complaint regarding the Google processes that make it possible to identify class members." 11/20 Letter at 3. That is incorrect. The only example you provided on the meet and confer was that whenever a Chrome user visits a site that uses Google Analytics, Google receives the x-client-data header. After the meet and confer, Plaintiffs provided additional information (Ex. A) consisting of a quote from a February 6, 2020 article on a third-party blog ("9TO5Google") about the x-client-data header. The text Plaintiffs cited includes a link to "precisely which domains" receive the x-client-data header. **Google Analytics is not one of those domains**. Moreover, even if Google Analytics were one of those domains and did receive the x-client-data header, that data would still not be sufficient to identify the class. As the Complaint alleges, the x-client-data header is ***not*** sent in Chrome's Incognito browsing mode. Since—according to your own allegations—the x-client-data header is not sent for users in Incognito mode on Chrome or for users in private browsing mode on other browsers—this header cannot identify Plaintiffs' purported class.

***Request Nos. 11–12***: These requests seek documents sufficient to identify Google's employees with knowledge of the "alleged conduct" and show their roles and responsibilities. Google does not maintain documents in the ordinary course of business sufficient to identify persons with knowledge of the "alleged conduct," which is vague and ambiguous and undefined in Plaintiffs' Requests. To reach a compromise on these requests, however, Google has agreed to produce, "documents sufficient to identify current Google personnel with responsibility for the relevant conduct relating to Google Chrome, Google Analytics, and Google Ad Manager" (Request No. 11) and "documents sufficient to show the roles of current Google personnel with responsibility for the relevant conduct relating to Google Chrome, Google Analytics, and Google Ad Manager" (Request No. 12).

***Request Nos. 13***: This request seeks "[h]andouts and presentations to or from any Google C-level executive or board member and committee or board meetings minutes discussing any private browsing mode, including Incognito mode." As we have explained in our Responses and Objections and during our call, this is likely to sweep up many irrelevant matters and is therefore not targeted to the claims and defenses in this case. During the call, Plaintiffs asked Google to make a proposal to narrow this RFP. To be able to provide you with a proposal, please confirm that Plaintiffs willing to agree that Google may redact irrelevant information from the Board of Director documents—as the courts permitted in these cases cited by Plaintiffs. *See Holley v. Gilead Scis., Inc.*, No. 18-CV-06972-JST(JSC), 2020 WL 2097602, at *3 (N.D. Cal. May 1, 2020) ("Gilead agrees to produce responsive Board of Directors documents through December 31, 2016 provided that it may redact irrelevant information given the commercially sensitive nature of matters discussed at Board meetings. The Court agrees."); *Lewis v. The CCPOA Benefit Tr. Fund*, No. C-08-03228-VRW DMR, 2010 WL 3398521, at *4 (N.D. Cal. Aug. 27, 2010) ("Defendants may redact any information contained within the requested materials that does not pertain to the "governmental plan" analysis."). The parties' stipulated ESI protocol also provides that a party

4

Google's December 14, 2020 Ltr. to Plaintiffs' Counsel

may identify "documents that they believe should be redacted before productions, triggering an expedited duty to meet and confer." ECF No. 80 at 8(d).

**Request Nos. 14–15**: The parties agreed to defer discussion on these RFPs until the Court rules on the parties' preservation dispute. Now that the Court has ruled on the preservation dispute, Google is prepared to discuss these RFPs.

**Request No. 16**: This request asks for "[d]ocuments concerning each change Google has made, has considered or is considering with respect to its privacy and data-collection disclosures and practices in connection with any private browsing mode, including Incognito mode, and Google's reasons for each change." As we stated on the call, Google is willing to produce custodial documents responsive to this request once the parties reach some agreement regarding custodians. Google is also willing to produce responsive documents from internal sites focused on private browsing, to the extent they exist and can be located following a reasonable search.

**Request No. 17**: This request asks for "[d]ocuments discussing, analyzing, or evaluating any of the rights and claims asserted in this lawsuit." As we explained, this is not only overbroad, but is also likely to capture a large amount of privileged documents. To the extent the parties can reach agreement on this request, Google would consider producing custodial documents responsive to this request once the parties reach some agreement regarding custodians.

**Request No. 18**: This request asks for Google's documents concerning Plaintiffs and data Google collected regarding Plaintiffs. During our meet and confer, Google explained that it can only produce metadata to Plaintiffs due to the Stored Communications Act ("SCA") and that it is only willing to produce such metadata regarding Plaintiffs' MyActivity/MyAccount data. Google has since propounded a related discovery request for Plaintiffs to produce relevant content in this litigation. *See* Google's RFP No. 18. Unlike Google, Plaintiffs' ability to produce their own data is not constrained by the SCA, and thus the best source for this information is Plaintiffs themselves. We look forward to your production in response to our document request.

**Request No. 19**: During our meet and confer, you clarified that this request asks for Google's data retention policies and practices related to relevant logs. As we have explained, Plaintiffs allegations are solely focused on data allegedly obtained while users were logged out of their Google accounts, and thus the request for data collected while users were "logged in" is overly broad. *See Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 2012 WL 1940662, at *2 (E.D. Cal. May 29, 2012) ("The alleged wrongful conduct at issue in the litigation, of course, is critical to determining the scope of permissible discovery."). As to your questions regarding any changes to Google's retention policies and their "impact" on the data at issue in this lawsuit (*i.e.*, "logged out" data), Plaintiffs can obtain that information by reviewing the retention policies related to logged-out data themselves. As such, Google is willing to produce documents sufficient to show its data retention policies and practices for the data at issue in this case: logged-out data collected through Analytics and Ad Manager.

Google's December 14, 2020 Ltr. to Plaintiffs' Counsel

**Objections**

In your November 20 letter, Plaintiffs asked that Google respond to each issue raised in your November 6 correspondence regarding Google's objections. Although a number of the identified issues pertaining to objections are moot, Google responds to them below in full. Please let us know whether Plaintiffs wish to meet and confer on any of these objections.

*Objection No. 1* **(objecting to Plaintiff's definitions to the extent they seek the identification of "any" or "all" documents, communications, things, etc.)**: Google is currently not withholding any documents on the basis of this objection.

*Objection No. 2* **(objecting to Plaintiffs' definitions of GOOGLE, YOU, and YOUR as overly broad)**: Google objected to Plaintiffs' definition of Google as overly broad to the extent the definition purported to "include entities other than Google, which is the only named defendant in the present action." Google's R&Os at 2. As you know, Plaintiffs reached a stipulation with Alphabet tolling the statute of limitations and dismissing it from this case. *See* ECF. No. 57. We were therefore surprised to read in your November 6 letter that Plaintiffs are considering seeking discovery of Alphabet. Please provide additional information so that we can better understand on what basis Plaintiffs intend to seek discovery of Alphabet at this time in light of Plaintiffs' stipulated dismissal of Alphabet.

*Objection Nos. 4* **(objecting to Plaintiffs' definition of PERSONS as overly broad)** *and* **5 (objecting to Plaintiffs' definition of IDENTIFY to the extent it seeks privileged information)**: Google is currently not withholding any documents on the basis of this objection.

*Objection No. 6* **(objecting to Plaintiffs' definition of REGULATORS as overly broad)**: Google objected to Plaintiffs' definition of REGULATORS as overly broad because it purports to include "all government agencies and regulators that have requested documents or information from Google." Google explained during the meet and confer that this definition is so broad as to be unworkable. As written it includes any municipal authority in the world that has sought information from Google. Google has provided suggestions on how the requests pertaining to REGULATORS should be narrowed to be proportional and more likely to capture potentially relevant documents. Google maintains its objection to the definition of REGULATORS. Google expects that this objection will be addressed as the parties are negotiating a resolution to RFP Nos. 1 and 2.

*Objection No. 7* **(objecting to definitions of INCLUDE, INCLUDING, and CONCERNING as overly broad)**: Google is currently not withholding any documents on the basis of this objection.

*Objection No. 8* **(objecting to Plaintiffs' definitions/instructions/requests to the extent they seek information that is not reasonably accessible and whose inclusion is not proportional to the needs of the case)**: Google is currently not withholding any documents on the basis of this objection.

Google's December 14, 2020 Ltr. to Plaintiffs' Counsel

***Objection No. 10* (objecting to definition of "data" as vague and ambiguous and stating that Google understands "data" to refer to "information processed or stored by a computer")**: Google is currently not withholding any documents on the basis of this objection and will produce documents in accordance with its understanding of the term "data."

***Objection No. 13* (objecting to failure to specify temporal scope of requests and stating that Google will produce documents within the purported Class Period)**: Google objected to the requests specified in the objection because Plaintiffs did not identify their temporal scope. As you know, Google is willing to produce documents going back to June 1, 2016. However, Google does not agree to Plaintiffs' proposed approach to use the same *preservation* time period the Court will impose as the relevant period for *production*, as Plaintiff has not demonstrated why the two time periods should be coterminous and Plaintiff can obtain sufficient discovery via the production of documents from a narrower time period. Google proposes that the parties as a default use the beginning of the class period—June 1, 2016—for document productions. Google remains willing to meet and confer with Plaintiffs on any individual RFPs that Plaintiffs believe should have an earlier proposed start date.

***Objection No. 15* (objecting to requested October 30, 2020 production data and stating that Google will produce documents on a rolling basis)**: The issues Plaintiffs raised with regard to Google's objection is moot because Google has started its rolling production.

\* \* \* \*

We look forward to continuing to work with Plaintiffs to address and resolve any issues related to discovery in this matter.

Sincerely,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*[signature: Josef Ansorge]*

Josef Ansorge

JA

# EXHIBIT A

**Josef Ansorge**

| | |
|---|---|
| **From:** | Mark C. Mao <mmao@bsfllp.com> |
| **Sent:** | Wednesday, November 18, 2020 2:47 PM |
| **To:** | Josef Ansorge |
| **Cc:** | Beko Richardson |
| **Subject:** | X-Client-Data Header |

[EXTERNAL EMAIL]

# Josef:

# Nice to meet you for the first time.

### "Who can see my X-Client-Data?

The X-Client-Data header is *only* sent by Chrome when connecting to a *Google-owned domain*. As a significant part of Chrome is open source as Chromium, we can actually see precisely which domains are given your X-Client-Data header. Among those, you'll see "doubleclick.com" and "doubleclick.net," both of which are domains used by the Google Marketing Platform, which was previously known as DoubleClick. That means any ad served up by Google's ad platform will receive your X-Client-Data header.

In fact, this same ID is sent to those Google servers regardless of whether you're logged in with your Google Account or not, which could theoretically tie your logged-out browsing back to your Google Account. The only time X-Client-Data is *not sent* to Google's servers is when you're browsing in Incognito mode." https://9to5google.com/2020/02/06/google-chrome-x-client-data-tracking/#:~:text=The%20X%2DClient%2DData%20header%20is%20used%20to%20help%20Chrome,of%20Chrome%20is%20currently%20enrolled.

Take care for now.

**Mark C. Mao**
Partner

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(t) 415 293 6858
(c) 415 999 9695
mmao@bsfllp.com
www.bsfllp.com

The information contained in this electronic message is confidential document intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in

error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]