# EXHIBIT C

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S EMAIL ADDRESS
josefansorge@quinnemanuel.com

January 21, 2021

**VIA E-MAIL**
BRICHARDSON@BSFLLP.COM

Beko Reblitz-Richardson
Boies Schiller Flexner LLP
44 Montgomery St.
41st Floor
San Francisco, CA 94104
Phone 415 293 6804

Re:   *Chasom Brown, et al., v. Google LLC*, Case No. 5:20-CV-03664-LHK

Dear Counsel:

I write on behalf of Google LLC ("Google") in response to your December 23, 2020 letter regarding Google's responses and objections to Plaintiffs' First Set of Requests for Production (Nos. 1–19).

**Custodial Documents**

Google is prepared to discuss with Plaintiffs the Google employees that should be included as custodians. Google has identified employees that are likely to have non-duplicative responsive information. We are available to meet and confer regarding the identity of custodians so the parties can reach agreement.

**Requests for Production**

*Requests Nos. 1 & 2*: As you know, since November 18, the parties have been in the process of meeting and conferring on the scope of Plaintiffs' request for Google's productions to regulators. At Plaintiffs' request, on December 14, 2020, Google also offered to compromise on these RFPs by producing documents provided in response to: (i) U.S. regulator inquiries; (ii) during the purported class period; (iii) related to privacy; (iv) in the context of web-browsing and (v) while signed out of a Google account. The "signed-out" limitation is reasonable because Plaintiffs' claims are expressly limited to signed-out activity. FAC ¶ 192. There is a stark

Google's January 21, 2021 Ltr. to Plaintiffs' Counsel

difference between signed-in and signed-out users. The Privacy Policy makes clear that, "[w]hen you're signed in, we [] collect information that we store *with your Google Account*, which we treat as personal information." Similarly, Google's private browsing disclosures explain under the heading "How private browsing works," "**Important**: If you sign in to your Google Account to use a web service like Gmail, your searches and browsing activity might be *saved to your account*." Because these disclosures eviscerate any potential claim relating to signed-*in* browsing activity, Plaintiffs chose to limit their claims—and the putative class—to signed-*out* activity. *See* FAC ¶ 192.

In response to our proposal, you asked five questions in your December 23 letter. We respond to each below. In light of the ongoing nature of the parties' negotiations, we are disappointed that Plaintiffs escalated these RFPs to Magistrate Judge van Keulen without waiting for Google to respond to questions you posed and arguments you made a day before Christmas Eve. Your actions therefore indicate that Plaintiffs are no longer interested in meeting and conferring on these requests, and we will respond to your legal arguments in your joint letter brief to the Magistrate. However, because Google continues to be interested in resolving this dispute without Court intervention, we provide the following responses to your questions:

1. *Please let us know if there are any responsive documents based on Google's proposed narrowing of this request.*

    Yes. There are responsive documents based on Google's proposed narrowing of this request.

2. *Please let us know if there have been any regulator inquiries specifically concerning Google's collection of private browsing data.*

    No. There have been no regulator inquiries specifically concerning Google's collection of data from users in private browsing mode.

3. *Please let us know if there have been any regulator request, investigation, or action concerning Google's collection of browsing data generally.*

    Yes, Google is aware of regulator requests concerning Google's collection of browsing data generally.

4. *Please let us know if Google is willing to produce any documents relating to any of the six regulator proceedings identified in the FAC.*

    No, at this time Google is only willing to produce documents based on its narrowed proposal, and the six regulator inquiries Plaintiffs identified do not meet the criteria of Google's narrowed proposal. Do Plaintiffs have a counter-proposal that Google could consider?

Google's January 21, 2021 Ltr. to Plaintiffs' Counsel

> 5. *Please let us now* [sic] *if Google is willing to produce documents sufficient to identify any other regulators for which there may be documents responsive to this request, limited to US regulators, privacy, and back to June 1, 2014.*
>
> Google is willing to, in response to an interrogatory, provide information identifying U.S. regulator inquiries to Google regarding the privacy of web browsing data from June 1, 2016 through the present.

***Request Nos. 3–9***: You ask that Google "provide us with additional information in terms of what non-custodial documents Google intends to collect and review for purposes of these requests, so that we can evaluate the sufficiency of that approach." Letter at 7. However, Google's only obligation is to confirm whether or not we will agree to provide the requested information. There is no obligation to provide discovery on discovery to Plaintiffs' satisfaction. In the interest of resolving any dispute, and without waiving any right to object to similar requests in the future, Google will provide the following response: For the purposes of these requests, Google has collected Google's public statements regarding incognito mode, developer documentation, Chromium code, and privacy design documents.

***Request No. 10***: Google has explained that it does not maintain data in the ordinary course of business that identifies logged-out users in private browsing mode. In short, the data of logged-out users in private browsing mode is not linked to specific users, and therefore cannot be used to identify class members. In response, Plaintiffs request "documents from more than one source, to link the data collected by Google from user's private browsing to those users." As we understand your letter, Plaintiffs are requesting that Google preserve and produce all of the data Google collects via Analytics and Ad Manager from logged-in and logged-out users in the United States, so that Plaintiffs (or their experts) can attempt to (i) identify private browsing sessions of logged-out users and then (ii) link those private browsing sessions to the users' Google Accounts. This is a surprising request from Plaintiffs suing Google for purported violations of the Electronic Communications Privacy Act, as Google would plainly be violating the Stored Communications Act ("SCA") if it did produce such information. *See* 18 U.S.C. § 2702(a)(1) ("a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service").

Moreover, Plaintiffs' unfounded speculation about how they might be able to link private browsing data to individual users in order to identify class members does not justify producing user-level data in response to RFP No. 10.

With regard to the X-Client Data Header, because Google does not send the X-Client-Data Header via Google Analytics, its absence cannot be used to determine whether a particular user was in Incognito mode. Likewise, because the X-Client-Data Header is not sent when a user uses Safari to visit a site that uses Ad Manager, the absence of the X-Client-Data Header cannot be used to identify Safari users in private browsing mode.

With regard to the "User-ID," the source you reference (Analytics Help Answer 3123668) explains that the Google Analytics "User-ID" is generated by Google Analytics *customers* (*i.e.*, website

3

Google's January 21, 2021 Ltr. to Plaintiffs' Counsel

publishers, like the New York Times). Because the "User-ID" is generated by Google Analytics customers to be used for their own purposes, it relates only to activity on websites under that specific customer's control (*e.g.* www.nytimes.com). Such unique, *publisher-specific* identifiers obviously cannot be used to identify putative class members in this case.

To be clear, Google is not refusing to produce any documents in response to RFP No. 10, but it will not preserve and produce the user-level data of ***all*** logged-in and logged-out users in the United States that you now request. Even if it were feasible to produce such a massive amount of data— which it is not—Plaintiffs fail to articulate why a complete set of the data is necessary. Production of such data would also potentially implicate the privacy rights of users. Indeed, Plaintiffs have objected to producing information related to their own private browsing on the ground that they do not want such information memorialized (*see* Chasam Brown's, William Byatt's, Christopher Castillo's, Jeremy Davis', and Maria Nguyen's responses to Google's Interrogatory No. 6). Plaintiffs' demand that Google produce such information for all US-based users is thus inconsistent with their refusal to produce such information themselves.

Google is prepared to produce documents to show that the logged-out private browsing activity of users is not linked—and is not reasonably linkable—to specific consumers. Please let us know if this resolves the parties' dispute, or if we need to continue to discuss the information Plaintiffs seek.

*Request Nos. 11–12*: Google intends to produce this information to Plaintiffs by the end of the month. Once you have our production, we are willing to meet and confer to see if it addresses your concerns. Further, Google's custodian proposal will identify the relevant tenure of the individual custodians to address your concern about former employees.

*Request Nos. 13*: Google is willing to produce board meeting materials discussing private browsing mode (if any) dating back to June 1, 2014, under the condition that Google can make relevance redactions to those documents.

*Request Nos. 14–15*: If it will resolve the parties' dispute on RFP No. 14, Google is prepared to produce documents related to Google's December 2008 launch of Incognito mode, to the extent that such documents exist, are within Google's possession, custody, or control, and can be located following a reasonable search of documents during the time period June 1, 2008 to May 31, 2009. Please confirm your agreement.

Similarly, if it will resolve the parties' dispute on RFP No. 15, Google is prepared to produce documents related to private browsing mode in Edge, Firefox, Safari, Brave, and Opera, to the extent that such documents exist, are within Google's possession, custody, or control, and can be located following a reasonable search. Please confirm your agreement.

*Request No. 16*: Google confirms that it has internal sites focused on private browsing. We understand that this resolves the parties' dispute related to Request No. 16.

*Request No. 18*: Google has explained that the logged-out private browsing activity of users is not linked—and is not reasonably linkable—to individual users. That includes Plaintiffs.

Google's January 21, 2021 Ltr. to Plaintiffs' Counsel

Google is willing to produce metadata associated with Plaintiffs' MyActivity/MyAccount data in response to this RFP. As we explained in our December 14 letter, Google is constrained by the SCA in its production of data. That includes Plaintiffs' data. From Google's perspective, Plaintiffs have provided account names which they may not have control over, and Google may therefore be in violation of the SCA if it produces documents without the real user's consent. The easiest way to produce content associated with specific accounts is for the account holder(s) (here, Plaintiffs) to use https://takeout.google.com/ to select the services for which Plaintiffs wish to export content, download that content, and then produce that content in the ordinary course of discovery. We trust this explanation resolves the parties' dispute over this request. We are available to meet and confer telephonically if Plaintiffs have outstanding questions or concerns.

**Objections**

*Objection No. 2* (**objecting to Plaintiffs' definitions of GOOGLE, YOU, and YOUR as overly broad**): Google can confirm that none of the relevant ESI Custodians it has identified is an employee of Alphabet. They are all employees of Google. Google currently is not aware of any relevant ESI Custodians or non-custodial sources that are employed by Alphabet.

*Objection No. 13* (**objecting to failure to specify temporal scope of requests and stating that Google will produce documents within the purported Class Period**): Thank you for agreeing to use June 1, 2016 as the default start for production. Google is unwilling to use June 1, 2008 as a start date for production for RFP Nos. 1-2, 11-12, and 16. As to RFP No. 13, as explained above, Google is willing to produce board meeting materials back to June 1, 2014.

\*   \*   \*   \*

We look forward to continuing to work with Plaintiffs to address and resolve any issues related to discovery in this matter.

Sincerely,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*[signature: Josef Ansorge]*

Josef Ansorge

JA