# EXHIBIT A

# Redacted Version of Document Sought to be Sealed

1   Mark C. Mao, CA Bar No. 236165
    Beko Reblitz-Richardson, CA Bar No. 238027
2   Erika Nyborg-Burch (admitted *pro hac vice*)
    **BOIES SCHILLER FLEXNER LLP**
3   44 Montgomery St., 41st Floor
    San Francisco, CA 94104
4   Tel.: (415) 293-6800
    mmao@bsfllp.com
5   brichardson@bsfllp.com
    enyborg-burch@bsfllp.com
6
7   James Lee (admitted *pro hac vice*)
    Rossana Baeza (admitted *pro hac vice*)
8   **BOIES SCHILLER FLEXNER LLP**
9   100 SE 2nd St., 28th Floor
    Miami, FL 33131
10  Tel.: (305) 539-8400
    jlee@bsfllp.com
11  rbaeza@bsfllp.com
12
    Amanda K. Bonn, CA Bar No. 270891
13  **SUSMAN GODFREY L.L.P**
    1900 Avenue of the Stars, Suite 1400
14  Los Angeles, CA 90067
    Tel: (310) 789-3100
15  Fax: (310) 789-3150
16  abonn@susmangodfrey.com

William Christopher Carmody
(admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY  10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
mram@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
**MORGAN & MORGAN**
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

18  *Attorneys for Plaintiffs*

19
20  # UNITED STATES DISTRICT COURT
    ## NORTHERN DISTRICT OF CALIFORNIA

21  CHASOM BROWN, WILLIAM BYATT,
22  JEREMY DAVIS, CHRISTOPHER
    CASTILLO, and MONIQUE TRUJILLO
23  individually and on behalf of all similarly
    situated,
24
            Plaintiffs,
25
26  vs.
27  GOOGLE LLC,
28          Defendant.

Case No.:  5:20-cv-03664-LHK-SVK

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION SEEKING RELIEF FOR
GOOGLE'S FAILURE TO OBEY
DISCOVERY ORDER**

The Honorable Susan van Keulen
Courtroom 6 - 4th Floor
Date: November 23, 2021
Time: 10:00 a.m.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that, on November 23, 2021, at 10:00 a.m., the undersigned will appear before the Honorable Susan van Keulen of the United States District Court for the Northern District of California at the San Jose Courthouse, Courtroom 6, 4th Floor, 280 South 1st Street, San Jose, CA 95113, and will then and there present Plaintiffs' motion (the "Motion") seeking compliance with the Court's April 30 Discovery Order (Dkt. 147-1) through additional productions or, in the alternative, an order establishing certain facts and precluding Google from opposing class certification or making any other arguments in this case in connection with the withheld materials. The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Mark C. Mao, the Declaration of Erika Nyborg-Burch and exhibits attached thereto, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

## ISSUE PRESENTED

Whether, under Federal Rule of Civil Procedure 37(b), the Court should issue an evidentiary sanction against Defendant Google LLC ("Google") for its violation of this Court's April 30 Discovery Order (Dkt. 147-1).

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court enter the proposed order requiring Google to within one week comply with the April 30 Discovery Order, including by searching for and producing identifiers and all data in Google's possession, custody, or control linked to any identifiers associated with the named Plaintiffs or their devices, including IP addresses and device- and browser-keyed identifiers.  To the extent Google fails to do so, Plaintiffs request that the Court rule that certain facts are established for this action and that Google be precluded from opposing class certification or making any other arguments in this case on the ground that the withheld data is not linked with or linkable to users.

Dated: October 14, 2021                     BOIES SCHILLER FLEXNER LLP

i

1

2          By: /s/ Mark C. Mao
           Mark C. Mao (CA Bar No. 236165)
3          mmao@bsfllp.com
           44 Montgomery Street, 41st Floor
4          San Francisco, CA 94104
           Telephone: (415) 293 6858
5          Facsimile (415) 999 9695

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................4

    I.    Google's Initial Obstruction of Plaintiffs' Discovery. .............................................4

    II.   This Court's April 30 Order Requiring Google to Produce All Authenticated and Unauthenticated Data. ...............................................6

    III.  Google's Continued Obstruction, In Violation of the April 30 Order. ..................7

    IV.  Through Special Master Brush's Process, Google Has Been Forced to Admit that It Has Withheld Data Linked to Numerous Identifiers and Data In Violation of this Court's April 30 Order. ...................................9

    V.   Google's Violations of the April 30 Order Are Preventing Compliance With the Court's Three-Step September 16 Order. ...............................11

ARGUMENT ............................................................................................................................12

    I.    Legal Standard.......................................................................................................12

    II.   Google Has Violated the April 30 Order...............................................................13

    III.  Google Should Be Required to Comply with the April 30 Order. ........................15

    IV.  Alternatively, Plaintiffs Are Entitled to Evidentiary Sanctions. ..........................17

CONCLUSION ........................................................................................................................19

iii

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Apple Inc. v. Samsung Elecs. Co.*,
   2012 WL 1595784 (N.D. Cal. May 4, 2012)..........................................................................19

*Digital Envoy, Inc. v. Google, Inc.*,
   2005 WL 8162581 (N.D. Cal. July 15, 2005) .......................................................................16

*Guifu Li v. A Perfect Day Franchise, Inc.*,
   2011 WL 3895118 (N.D. Cal. Aug. 29, 2011) (Koh, J.)......................................................18

*Guifu Li v. A Perfect Day Franchise, Inc*,
   281 F.R.D. 373 (N.D. Cal. 2012) (Koh, J.) ....................................................................13, 17

*Hall v. Marriott Int'l., Inc.*,
   2021 WL 1906464 (S.D. Cal. May 12, 2021) ......................................................................16

*Hanni v. Am. Airlines, Inc.*,
   2009 WL 1505286 (N.D. Cal. May 27, 2009)................................................................18, 19

*In re Intuit Data Litig.*,
   2017 WL 3616592 (N.D. Cal. Aug. 23, 2017) .....................................................................16

*Lanier v. San Joaquin Valley Offs. Ass'n*,
   2016 WL 4764669 (E.D. Cal. Sept. 12, 2016) .....................................................................18

*Nat'l Hockey League v. Metro. Hockey Club*,
   427 U.S. 639 (1976) .............................................................................................................13

*Oracle USA, Inc. v. SAP AG*,
   264 F.R.D. 541 (N.D. Cal. 2009) .........................................................................................19

*Sanchez v. Rodriguez*,
   298 F.R.D. 460 (C.D. Cal. 2014)..........................................................................................12

*Sas v. Sawabeh Info. Servs.*,
   2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) ......................................................................18

*Unigard Security Ins. Co. v. Lakewood Eng. Mfg. Corp.*,
   982 F.2d 363 (9th Cir. 1992) ................................................................................................13

*United States v. Sumitomo Marine & Fire Insurance Company, Ltd.*,
   617 F.2d 1365 (9th Cir. 1980) ..............................................................................................18

iv

*Zurich Am. Ins. Co. of Illinois v. World Priv. Sec., Inc.*,
  2020 WL 8610839 (C.D. Cal. Nov. 23, 2020) ........................................................................ 17

**Rules**

Fed. R. Civ. P. 37(b) .............................................................................................................. *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **INTRODUCTION**

3       Plaintiffs assert claims against Google based on Google's surreptitious collection and use

4   of personal information from their private browsing communications, including URLs, referrer

5   headers, user agents, IP addresses, and other information. There is no dispute that Google collects

6   this information. ████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  Given Google's practices, it is no surprise that Google's own employees understood that Google's

13  disclosures regarding private browsing have been "a lie" (GOOG-BRWN-00630517), where

14  Incognito "has always been a misleading name" (GOOG-BRWN-00475063).

15      Plaintiffs have sought production from Google of the information Google collected from

16  the private browsing of Plaintiffs and other class members and also data showing how Google uses

17  that private browsing information, including the extent to which that data is linked or linkable to

18  users. Plaintiffs requested that discovery a year ago, in September 2020. Since then, Google has

19  gone to great lengths to withhold that discovery and obstruct Plaintiffs' ability to pursue these

20  claims and seek class certification. There have been numerous filings and hearings, and a Special

21  Master to assist with Plaintiffs' efforts to actually receive the data to which they are entitled.

22  Google's obstruction has now risen to the level of directly violating a Court Order.

23      On April 30, 2021, this Court ordered Google to produce all identifiers and data associated

24  with the named Plaintiffs and their devices, including not only what Google classifies as

25  "authenticated" identifiers and data but also what Google classifies as "unauthenticated" identifiers

26  and data. Dkt. 147-1 at 2 (the "Order"). Those are Google's two classifications, authenticated and

27  unauthenticated, so this discovery order encompassed all identifiers and data associated with the

28                                          1

1   named Plaintiffs and their devices, including all so-called "authenticated identifiers."  Dkt. 147-1

2   at 2.  This Court issued the Order in response to the parties' disputes regarding class member

3   identification (issue "P6") and described the ordered production as an "initial step" in Plaintiffs'

4   efforts to discover how to identify putative class members.

5       The Court's directions were clear.  During the hearing, Magistrate Judge van Keulen

6   explained that "what the plaintiffs are asking for is pieces of information from different places

7   because they want to see if they can piece together, by combination of that information, class

8   members.  And that's why – I mean, it seems to me that they have a right to try to do that with

9   whatever information you [Google] have."  April 29, 2021 Hearing Tr. at 19:2-7.  That is

10  information she ordered Google to produce, so that the parties and their experts could seek to

11  "piece together" that information.  After that Order, Google made a limited production to Plaintiffs

12  and represented to the Court that there was nothing more it could produce.  *See* Dkt. 211 at 1

13  (Google claiming it had "already produced authenticated data and relevant unauthenticated data").

14      Google's representations to the Court were false.  With Special Master Brush's assistance,

15  Plaintiffs now know that Google withheld data that it should have produced pursuant to the Court's

16  Order, on the basis of Google's own litigation say-so about whether the data is linked with or

17  linkable to Plaintiffs and their devices.  Plaintiffs have learned that Google can readily query

18  various data sources to produce additional identifiers and data linked to identifiers associated with

19  the named Plaintiffs and their devices, including both "authenticated" and "unauthenticated"

20  identifiers.  This data would include, for example and without limitation, data linked to IP

21  addresses associated with Plaintiffs and their devices.

22      Google's position in this litigation conflicts with what its employees readily admit.

23  Google's employees acknowledge numerous ways to identify and track private browsing activity

24  (*see* Dkt. 275 at 11), because the "data collected while Incognito is strictly **NOT** anonymous" and

25  is actually

26

27

2

1
2
3
4      Google simply does not

5 want to turn over relevant discovery that would enable Plaintiffs and their experts to conduct their

6 analysis.

7      Google's misconduct is highly prejudicial to Plaintiffs.  Almost six months after this

8 Court's Order, Plaintiffs have barely any of the data the Court ordered Google to produce.  For

9 example, while Google provided the IP addresses from Plaintiffs' accounts, Google refuses to

10 produce any data associated with those IP addresses.  With the close of fact discovery quickly

11 approaching, and almost no data to provide their experts, Plaintiffs must now turn to the Court for

12 assistance, because even the Special Master agrees that the parties are at an impasse on certain

13 gateway legal issues regarding prior orders.

14      Just as importantly, Google needs to fully comply with the Court's April 30 Order so that

15 the current proceedings before the Special Master can be completed.  On September 16, the Court

16 ordered that Google provide a list of all relevant data sources, provide the parameters and fields

17 available in these data sources, and search for data based on identifiers used for these sources.  *See*

18 Dkt. 273.  Without Google's compliance on the April 30 Order, even with the Special Master's

19 assistance, the parties simply cannot complete the tasks ordered in the September 16 Order.

20 Compliance is especially important in terms of identifiers, where Google's documents (as

21 explained to the Special Master)

22      which Google has continued to withhold.

23      With this Rule 37(b) Motion, Plaintiffs seek to address the prejudice caused by Google's

24 obstruction and violation of the Court's April 30 Order.  Plaintiffs first ask that the Court provide

25 Google with one week to produce the identifiers and data, so that Plaintiffs may "test it and []

26 make of the data what they will."  Apr. 29 Hearing Tr. at 20:7-8.  To the extent Google fails to do

27 so, Plaintiffs ask that the Court's order make clear that Google's failure establishes certain facts

28

3

1   and precludes Google from presenting certain arguments.  Such an order would properly reflect

2   the principal that this Court recently recognized in precluding Google from utilizing information

3   asymmetries in the context of the parties' dispute about identifying the websites that use Google

4   Analytics and Ad Manager.  Google should not be able to withhold information to gain an

5   advantage at Plaintiffs' expense.

## BACKGROUND

6

7   **I.      Google's Initial Obstruction of Plaintiffs' Discovery.**

8              For over a year, Plaintiffs have been seeking the discovery at issue in this Motion.  On

9   September 30, 2020, Plaintiffs served RFP 10, seeking "Documents sufficient to identify all

10  alleged class members, including all electronic or physical address information associated with

11  alleged class members."  Ex. A (RFPs Set One, Google's R&Os at 13).  Google refused to produce

12  any documents, including on the ground that the "identity of 'alleged class members' . . . is not

13  ascertainable."  *Id.*  Plaintiffs on the same day served RFP 18, seeking "Documents concerning

14  Plaintiffs, including Plaintiffs' use of Google services, all data collected by Google from and

15  regarding Plaintiffs, and Google's use of all data collected by Google from and regarding

16  Plaintiffs." *Id.* at 20.  Google objected to that Request too, only agreeing to "collect data associated

17  with Plaintiffs' Google Accounts and Google Account IDs."  *Id.* at 21.

18             In the ensuing months, Google obstructed discovery into these crucial issues on the basis

19  of Google's say-so about whether the data sought is linked or linkable, stating:

20      •   "Google does not associate a user's electronic or physical address
            information with a user's logged-out activity."  Ex. B at 3 (December 14,
21          2020 letter).

22      •   "Plaintiffs' unfounded speculation about how they might be able to link
            private browsing data to individual users in order to identify class members
23          does not justify producing user-level data in response to RFP No. 10."  Ex.
            C at 3 (January 21, 2021 letter).
24

25      •   "[L]ogged-out private browsing data is not linked or reasonably linkable to
            a specific consumer."  Ex. D at 1 (February 18, 2021 letter).
26

27      •   "Google does not link logged out private browsing activity with an
            individual's Google Account and does not store electronic or physical
28

                                                    4

─────────────────────────────────────────────────────────────

1
2
  address information for logged-out users who are privately browsing. Google has offered to produce documents to show the logged-out private browsing activity of users is not linked, and is not reasonably linkable, to a user's Google Account." Dkt. 129 at 3 (April 7 filing).

3
4
5
6
  Google's objections have been grounded on an improper distinction drawn by Google between data linked to users' Google accounts and data linked to various other identifiers used by Google to track users, including IP addresses.  Plaintiffs explained this sleight of hand to the Court during the April 13 discovery hearing: "Google identifies consumers, including class members

7
8
9
here at issue, by their devices and other electronic addresses. . . . [W]hen we say 'class members,' we are referring to any and all data in which Google has on our class members, whether it be by account, by device, or by any type of electronic address."  Apr. 23 Tr. at 14:8-18.  In response,

10
11
12
Google acknowledged that "there's certain types of identifiers," including an "IP address," but argued that it should not need to produce this information insofar as the data is "not tied to a specific person under all conditions."  Apr. 23 Tr. at 15:16-20.

13
14
15
  Google continued to present this objection in the next joint discovery submission and hearing, with Google arguing that it need not produce any data that *Google itself* does not consider to be indisputably attributable to a specific person.

16
17
18
    Google associates the data of logged-out users with resettable identifiers (like the ▮▮▮▮ and ▮▮▮▮ cookies) tied to the browser or device. . . . *Data associated with such ephemeral identifiers is neither linked, nor reasonably linkable, to specific users.* Dkt. 140 at 5.

19
20
21
Plaintiffs gave lie to this claim by citing to Google's own documents explaining Google's secret, twice-baked cookie tracking system, which includes "unique browser identifiers" to track and collection personal information from logged-out private browsing.

22
23
24
    Based on Google's own documents, these secret cookies are unique ways for Google to identify and track users who are not logged into a Google account (including private browsing users) but are still interacting with Google websites ▮▮▮▮ and Google services ▮▮▮▮.

*Id.* at 4.

25
26
27
  Almost a full year into the litigation, Plaintiffs reasonably sought further discovery into these Google tracking mechanisms to "meaningfully assess the identification of class members."

28

*Id.*  Plaintiffs proposed to begin with the data for the named Plaintiffs, including by requesting production of all "unauthenticated" data associated with the named Plaintiffs or their devices.  *Id.* Google still refused on the ground that the data sought "is neither linked, nor reasonably linkable, to specific users" (*id.* at 5), and to date has not made any cogent production.

**II.     This Court's April 30 Order Requiring Google to Produce All Authenticated and Unauthenticated Data.**

Google lost this debate over data-related production.

During the April 29 discovery hearing, addressing similar issues in the *Calhoun v. Google* matter (5:20-cv-05146-LHK-SVK), Google explained that "what we would like to do is focus the requests for data that are associated with Plaintiffs to data that we can authenticate as being associated with those plaintiffs, and that's the Google account data, the GAIA information." *Calhoun* Apr. 29 Tr. at 44:6-10.   The Court rejected Google's proposed limitation, holding that Google should produce device-keyed data "whether or not it can authenticate it's only used by this plaintiff."

> *I think that the request is appropriate for Google to turn over the information it has on the named plaintiffs*, the profile data, and if there is more robust profile data that is created for Google employees and that – that would seem to be the appropriate level of production, *along with the device data, whether or not it's – whether or not it can authenticate it's only used by this plaintiff*, but any device data associated with the plaintiffs and the more robust profile data.

*Calhoun* April 29 Tr. at 46:16-24 (emphases added).

Google made the same argument during the *Brown* portion of the hearing, going so far as to belittle Plaintiffs' counsel in front of the Court for his "speculation."

> "[W]e felt like there's quite a lot of speculation … and we wanted to explain to you that this is actually not something that we just have or can quickly query, nor do we think their proposed path is one that will lead to that outcome."  Apr. 29 Tr. at 20:1-6.

But the Court again rejected Google's request to withhold discovery on the basis of Google's say-so about the data.  She instead held that Plaintiffs are entitled to the data to evaluate

6

and test how data is linked or might be linkable to particular users and devices, including Plaintiffs' other identifiers.

> • "Well, but what the ***Plaintiffs are asking for is pieces of information from different places because they want to see if they can piece together, by combination of that information, class members. And that's why – I mean, it seems to me that they have a right to try to do that with whatever information you have***." Apr. 29 Tr. at 19:2-7 (emphasis added).
>
> • "But ***they can test it***. They can test it and they can make of the data what they will." Apr. 29 Tr. at 20:7-8 (emphasis added).

The Court subsequently issued its April 30 Order requiring Google to produce all "authenticated" and "unauthenticated" data for the named Plaintiffs, thus accepting Plaintiffs' compromise proposal to begin the process of class member identification by evaluating data associated with identifiers for the named Plaintiffs and their devices.

> For RFP Nos. 10 (class identification) and 18 (individuals' data), as an initial step, ***Google will produce identification data for the named Plaintiffs***. Google will promptly supplement any production made to date with ***authenticated data identifiers*** as to both the individuals and their devices provided Plaintiffs have provided the necessary device information, ***as well as unauthenticated data***.

Dkt. 147-1 at 2 (emphases added).[1]  Google did not appeal that order, and instead simply chose to ignore it.

## III.     Google's Continued Obstruction, In Violation of the April 30 Order.

Google has violated that clear order. Like it did before this Court's April 30 Order, Google continued to insist that all productions be limited to data that Google considers to be indisputably associated with a particular user – at a level of "indisputability" that even Google does not use for its own ad services, and which is contrary to the rules of discovery.

---

[1] Prior to the April 29 hearing, Google informed Plaintiffs that it required them to sign and email consent notices before Google would produce to Plaintiffs any of the data associated with their accounts or devices. On or around April 14, Plaintiffs' counsel emailed consent notices to Google's counsel and the address google-legal-support@google.com. Plaintiffs' counsel helped their clients model the notices off of a consent notice template this Court ordered for the plaintiffs in the related *Calhoun* case. While Plaintiffs dispute that any consent notice was required, those consent notices were broad enough to encompass "authenticated" and "unauthenticated" data.

7

---

1    Following this Court's April 30 Order, Plaintiffs asked Google for assistance in locating

2    all identifiers that might be used to query data associated with the named Plaintiffs or their devices.

3    *See* Ex. E (May 11 Letter).  Plaintiffs also identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Plaintiffs asked Google to use

6    this tool to gather the data for its Court-ordered production.  *See* Ex. E (May 11 Letter).

7    Google refused, insisting that production be limited to data associated with brand new

8    private browsing sessions.  In a May 12 letter, Google offered: "if Plaintiffs provide Google with

9    their unauthenticated identifiers, Google will provide data associated with those identifiers as well,

10   to the extent any exists."  Ex. G at 2 (May 12 letter).  Google's letter instructed Plaintiffs to open

11   a new private browsing session and to send to Google the cookie values listed within the

12   "Developer tools" function on the browser.  *Id.*  The upshot is that Google was asking Plaintiffs to

13   generate new cookie values, and Google would only produce data associated with those new

14   cookie values, without running other queries for data previously collected by Google.

15   On May 26, in the parties' joint submission, Plaintiffs brought Google's obstruction to the

16   Court's attention.   Plaintiffs explained that Google was refusing to query its data based on

17   identifiers associated with the named Plaintiffs, like IP addresses and device IDs.

18           Google is refusing to run searches on the unauthenticated data, based on the
            data produced with the authenticated, although Google's own internal search
19          tool can easily search with such data. GOOG-BRWN-00028920 (screenshot
            of tool). For example, Google can search based on IP addresses and device
20          IDs, both of which Google already has with the "authenticated data." But
            Google refuses to so do. In short, Google is refusing basic discovery on how
21          it is collecting data for "unauthenticated users," including its undisclosed
            twice-baked cookies, when the allegations are at the core of the case.
22

23   Dkt. 177 at 8-9.

24   In response, Google represented to the Court that Google cannot produce any

25   "unauthenticated" data other than data associated with brand new private browsing sessions:

26           Plaintiffs only provided "necessary device information" to query
            unauthenticated data yesterday (May 25), when they sent cookie values
27          allegedly taken from a browser used by one named plaintiff. Google will

28                                                    8

1

2

search for, and intends to produce, data associated with those cookie values. Google is unable to do more because Google's systems—including the tool Plaintiffs reference—are not designed to derive unauthenticated identifiers from authenticated identifiers.

3

*Id.* at 11.

4

5

During the June 2 hearing, this Court again instructed Google that Plaintiffs are entitled to all of the named Plaintiffs' data to test Google's say-so about that data.

6

7

8

9

I think it is appropriate for Plaintiffs to be able to test statement and that position in some fashion, whether it is flat out the clean room proposal or something else, some other form of access, but there needs to be some way for the Plaintiffs to understand and to test or challenge whether or not the unauthenticated identifiers can be derived from the authenticated identifiers.

10

June 2 Tr. at 33:1-7. The Court subsequently ordered the parties to brief the P3 (class member data) and P6 (class member identification) disputes, including Plaintiffs' request for cleanroom

11

access to the ▮▮▮▮▮▮▮▮ Dkt. 191-1 at 2.

12

13

In their brief, Plaintiffs requested that Google comply with this Court's April 30 Order,

14

including by producing "all data linked or mapped to any identifier associated with Plaintiffs or

15

their devices, including without limitation (including all data associated or mapped with

16

authenticated, unauthenticated, device-based, pseudonymous, and any other identifiers, such as

17

mapped ▮▮▮▮▮ and device identifiers mapped to their Google Analytics IDs." Dkt. 199 at 1.

18

Google, in response, represented to the Court that it had "already produced authenticated

19

data and relevant unauthenticated data," citing the data tied to the Plaintiffs' new private browsing

20

sessions. Dkt. 211 at 1. The Court subsequently referred these disputes to Special Master Douglas

21

Brush.  *See* Dkt. 220 at 2.  The proceedings before Special Master Brush have revealed that

22

Google's representations about their prior productions were false.

23

**IV.    Through Special Master Brush's Process, Google Has Been Forced to Admit that It Has Withheld Identifiers and Data Linked to Numerous Identifiers In Violation of this Court's April 30 Order.**

24

25

With the Special Master's assistance, Plaintiffs are finally beginning to appreciate the full

26

extent to which Google has violated this Court's April 30 Order.  In response to Special Master

27

Brush's request for Google to summarize its data production to date, Google admitted that it has

28

9

1   withheld data linked to numerous identifiers, including without limitation identifiers that Plaintiffs

2   provided to Google.  On September 14, Google admitted:

3            "Google has *not produced* data keyed to the following information Plaintiffs provided:"

4       • "User-agent. Google does not use user-agents as identifiers and user-agents *are*
           *not sufficiently unique to identify individual users*."
5
        • "X-Client-Data header. Google does not use X-Client-Data header as an
6          identifier and the header *is not sufficiently unique to identify any individual*
           *user*"
7
        • "IP Address. Google does not use IP address as an identifier and *IP addresses*
8          *are not a reliable means to identify individual users*"

9       • ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
10

11  Ex. H at 1 (Google's Sept. 14 letter) (emphases added).  These Google admissions contradicted

12  Google's prior representations to the Court that Google could not produce any "unauthenticated"

13  data aside from the data associated with fresh private browsing cookies.  It was now clear that

14  Google has been withholding data based its own say-so about the data's relevance and joinability

15  or linkability, in direct violation of this Court's instructions.[2]

16          Google also added a new objection to the production of "authenticated" identifiers.  While

17  the April 30 Order requires Google to produce such "authenticated" identifiers associated with

18  Plaintiffs, Google informed the Special Master that it would not produce any of this "authenticated

19  data."   Google tried to justify non-compliance by again attempting to re-define the scope of

20  relevant data to which Plaintiffs are entitled:

21               "Because Plaintiffs' allegations are limited to specific unauthenticated
                 data (data Google receives when a user is in a private browsing mode
22               and logged out of their Google Account), Google has not identified
23

24  _____
    [2] Google's objection hinges on a factor that has no legal relevance to Plaintiffs' unlawful
25  interception claim.  Whether or not Google uses the data for certain purposes proves nothing about
    whether Google collects that data from users without their consent.   Moreover, regardless of how
26  Google uses these identifiers internally, Plaintiffs are entitled to use this data in discovery, expert
    reports, class certification, and at trial to demonstrate that class members are identifiable (among
27  other purposes).

28                                                 10

those potential sources of ESI that contain only authenticated data (data Google receives when a user is logged in to their Google Account)."

Ex. I (Google's Sept. 17 letter).   Google's representation makes clear that it maintains "authenticated" identifiers and data linked to those identifiers, but has unilaterally decided not to produce any of this information, in violation of this Court's Order.

**V.      Google's Violations of the April 30 Order Are Preventing Compliance With the Court's Three-Step September 16 Order.**

Google's failure to comply with the Court's April 30, 2021 Order has created a ripple effect impeding virtually every aspect of the disputes put before the Special Master.  For instance, on September 16, 2021, the Court ordered that Google provide a list of all relevant data sources and logs, the parameters and fields available in these sources, and searches based on identifiers used for these sources. *See* Dkt. 273.  Given Google's refusal to comply with the April 30, 2021 Order, however, the Special Master cannot meaningfully complete the tasks required by the September 16 Order because Google refuses to provide the relevant information.  By way of illustration, Plaintiffs recently learned that, contrary to Google's prior representations, Google's data sources and logs for "twice baked" identifiers like ████ actually differentiate between ████████ ████████ and other variants such as ████████ Ex. J, GOOG-CABR-00400309 (stating that ████████ is a number that can identify a user," ████████ is a way to associate a user with ████████ and ████████...[is] used for targeting" while also confirming that each of these identifiers are "different").  Plaintiffs noted these differences to Google and the Special Master on October 3, 2021, citing to numerous Google documents. Ex. K (Plaintiffs' October 3 letter).  Yet, Google refuses to provide an explanation of what IDs, mapped IDs, cookies, and other variants each of the data sources are based on (e.g., is the log based on an ID or a cookie value or some variant?).

Plaintiffs cannot propose searches against data sources in a manner contemplated by the September 16 Order without this additional information.  To conduct a meaningful search, Google has to both explain and actually provide Plaintiffs' identifiers as previously ordered. *See* Ex. K (Plaintiffs' October 3 letter).  Had Google complied with the April 30 Order, Plaintiffs could have

11

1    proposed searches tied to the actual ██████ architecture built by Google, with relevant identifiers,

2    and would not need to guess as to what they are, how they are comprised, and how they are used

3    – all of which are important to comply with the September 16 Order.   By refusing to comply with

4    the April 30 Order, Google has thwarted the objective behind the September 16 Order as well.

5         Google's obstruction also involves other known more basic identifiers, such as IP

6    addresses.  Under Step 3, Plaintiffs requested that Google run searches to identify data associated

7    with the named Plaintiffs or their devices, including by querying data based on IP addresses and

8    device identifiers.  Google again refused and, in doing so, made clear that Google can run these

9    searches and is simply choosing not to, once again based on its own assertions about the data's

10   import.

- Google does not agree to search for or produce ██████ or ██████ identifiers associated with [Plaintiffs'] IP addresses *because such a production would include information associated with users who are not Plaintiffs* and who have not consented.

- Google does not agree to search for or produce ██████ or ██████ associated with [specific device identifiers] *because such a production would include information associated with users who are not Plaintiffs* and who have not consented.

16   F (emphases added).

17       When the depths of Google's defiance of this Court's April 30, 2021 Order were finally

18   revealed, Plaintiffs explained to Special Master Brush at a recent hearing that Google was openly

19   violating that order.  In response, Google inexplicably claimed that it did not need to comply with

20   that Order until the Court explicitly reconfirmed to Google that it must do so.  Special Master

21   Brush invited Plaintiffs to seek relief from this Court regarding the "scope" of the April 30, 2021

22   Order.  Accordingly, Plaintiffs now move for relief under Federal Rule of Civil Procedure 37(b).

### ARGUMENT

### I.    Legal Standard

25       Under Rule 37(b)(2)(A), when a party fails to comply with a discovery order, a court may

26   impose "whatever sanctions are just . . . up to dismissal of part or all of the party's claims."

27   *Sanchez v. Rodriguez*, 298 F.R.D. 460, 463 (C.D. Cal. 2014).  Such remedies may include but are

12

1   not limited to establishing facts in favor of the moving party, prohibiting the party in violation

2   from supporting designated claims or introducing designated matters in evidence, imposing

3   monetary sanctions in the form reasonable expenses caused by the failure to obey, treating this

4   failure as contempt, staying the proceedings until the order is obeyed, and dismissing the action.

5   *See* Fed. R. Civ. P. 37(b)(2).  Relief is warranted "not merely to penalize those whose conduct may

6   be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in

7   the absence of such a deterrent."  *Nat'l Hockey League v. Metro. Hockey Club,* 427 U.S. 639, 643

8   (1976).  In addition, "discovery misconduct may be punished under the court's 'inherent powers'

9   to manage its affairs."  *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 396 (N.D. Cal.

10  2012) (Koh, J.) (quoting *Unigard Security Ins. Co. v. Lakewood Eng. Mfg. Corp.*, 982 F.2d 363,

11  368 (9th Cir. 1992)).

12  **II.      Google Has Violated the April 30 Order.**

13          The plain language of this Court's April 30 Order requires Google to produce both

14  "authenticated" and "unauthenticated" data associated with the named Plaintiffs or their devices.

15  *See* Dkt. 147-1 at 2 ("Google will promptly supplement any production [of named Plaintiffs'

16  identification data] made to date with authenticated data identifiers *as to both the individuals and*

17  *their devices* provided Plaintiffs have provided the necessary device information, *as well as*

18  *unauthenticated data*." (emphasis added)).   This Order reflects the Court's recognition, as

19  articulated at the April 29 hearing, that Plaintiffs are entitled to this data to determine whether it

20  substantiates their theories that data is linked or linkable to particular users and devices.  Apr. 29

21  Tr. at 19:2-7; 20:7-8.  This Court reiterated the importance of compliance with this Order at the

22  June 2 hearing, reminding Google that "there needs to be some way for the Plaintiffs to understand

23  and to test or challenge whether or not the unauthenticated identifiers can be derived from the

24  authenticated identifiers."  June 2 Tr. at 33:1-7.

25          Pursuant to this Court's Order, Google should have produced all responsive identifiers and

26  data.  This production should have included all data linked to identifiers associated with Plaintiffs

27  or their devices and browsers, including both "authenticated" and "unauthenticated" identifiers.

28

13

1    Yet, almost six months later, Google has still not complied with the Court's Order, leaving

2    Plaintiffs with no way to "test or challenge" Google's contentions.

3            Google first represented that it had fully complied with the Order by producing data

4    associated with the cookies from brand new private browsing sessions, and that Google could not

5    produce any other unauthenticated data, whether correlated with other unauthenticated identifiers,

6    or authenticated identifiers. *See* Background III, *supra.* But, when called upon to substantiate this

7    claim to Special Master Brush, Google revealed that it has been withholding data in its possession

8    linked to numerous identifiers. *See* Background IV, *supra.* Google has attempted to justify its

9    non-compliance on the ground that it deems some of the unauthenticated and authenticated

10   information irrelevant. *Id.* Yet nothing in this Court's April 30 Order authorized Google to

11   redefine the scope of required production. Instead, the Court ordered Google to produce the data,

12   including both authenticated and unauthenticated data. *See* Dkt. 147-1 at 2. Google's most recent

13   submissions confirm that it is capable of compliance as a technical matter, but will not do so absent

14   (further) intervention from this Court.

15           Plaintiffs suspect that Google is holding back data because Google is worried that

16   production will substantiate Plaintiffs' theories. Google's internal documentation makes clear that

17   IP addresses, user agents, and ███████ cookies can be used to uniquely identify logged-out users,

18   including private browsing users.

19        • Within Incognito, "[u]sers who perform a Google search, it is logged
20          against a ██████ (lifetime 18 months) that is identifiable by IP
             address". GOOG-BRWN-00386511. "Incognito mode … does not
21          anonymize IP address despite a common misconception that it does."
             GOOG-BRWN-00467569.

22        • "[W]e actually keep all of these ███████ logs tied to IP address
          for 9 months." GOOG-BRWN-00613802.
23

     Google's documents also explain that these identifiers ████████████████
24
     ████████████████████████████████████████████████
25
     ████████████████████████████
26
                     ██████████████████████████
27
                     █████████████████████

                              14

28

---



In any event, the parties can fight another day about whether the withheld data is linked with or linkable to users, including through the disputes referred to Special Master Brush. Plaintiffs now merely seek data for their experts to evaluate, consistent with this Court's Order and instructions.

**III.    Google Should Be Required to Comply with the April 30 Order.**

Google should be required to search for and produce all data in Google's possession, custody, or control linked to any identifiers associated with the named Plaintiffs or their devices, including IP addresses and device- and browser-keyed identifiers. This is what the Court ordered Google to produce, and Google should have produced that data months ago.

Google is improperly attempting to re-litigate an issue that the Court has already resolved. Leading up to the April 30 Order, Google argued that it should not be required to produce the data it deems "unauthenticated" because such data "*is neither linked, nor reasonably linkable, to specific users.*"  Dkt. 140 at 5; *see also* April 13 Hearing Tr. at 15:16-20 (arguing that Google should not need to produce any data that is "not tied to a specific person under all conditions"); Ex. H at 1 (Google's September 14 Letter) (asserting that Google need not produce data linked to identifiers that, according to Google, "are not a reliable means to identify individual users"). But, as the Court already recognized, "what the Plaintiffs are asking for is pieces of information from

15

1   different places because they want to see if they can piece together, by combination of that

2   information, class members.  And that's why – I mean, it seems to me that they have a right to try

3   to do that with whatever information you have."  Apr. 29 Tr. at 19:2-7.  The Court knew what

4   Google meant by "unauthenticated" data and why Google objected to such a production, and yet

5   the Court still ordered Google to produce "unauthenticated data", as well as "authenticated"

6   identifiers, for the named Plaintiffs.  Dkt. 147-1 at 2.

7        The Court had good reason to issue the April 30 Order.  "Indeed, to deny discovery where

8   it is necessary to determine the existence of a class or set of subclasses would be an abuse of

9   discretion."  *In re Intuit Data Litig.*, 2017 WL 3616592, at *2 (N.D. Cal. Aug. 23, 2017) (van

10  Keulen, M. J.).

11        It does not matter whether "such a production would include information associated with

12  users who are not Plaintiffs."  Ex. L at 5 (September 29 Letter).  Google's Privacy Policy provides

13  that Google "will share personal information outside of Google . . . to [m]eet any applicable law,

14  regulation, legal process, or enforceable governmental request."  Ex. M at 11 (Google Privacy

15  Policy).  Here, this Court's April 30 Order already requires Google to produce all data associated

16  with the Plaintiffs or their devices, and there is a Protective Order in place between the parties to

17  protect the confidentiality of all productions.  *See* Dkt. 81.  It is also ironic for Google to, on the

18  one hand, claim that data sought is not reasonably linkable to any person and, on the other hand,

19  refuse to produce the data on the ground that doing so would violate someone else's privacy.

20  Google cannot have it both ways.  Regardless, that a production might include data associated with

21  non-class members provides no basis for Google to withhold the discovery.  *See, e.g.*, *Hall v.*

22  *Marriott Int'l., Inc.*, 2021 WL 1906464, *13–14, 30 (S.D. Cal. May 12, 2021) (allowing discovery

23  outside of the class definition because it would assist plaintiff's evaluation of claims); *see also*

24  *Digital Envoy, Inc. v. Google, Inc.*, 2005 WL 8162581, at *2 (N.D. Cal. July 15, 2005) (allowing

25  for discovery broader than plaintiff's allegations).

26        Because of Google's violation, Plaintiffs may need additional time to complete fact

27  discovery and prepare opening expert reports.  Google's non-compliance has deprived Plaintiffs

28

16

1  and their experts of five months that could have been spent evaluating the data.  Moreover, this

2  Court's April 30 Order was just the "initial step" in the process of discovering class members.

3  Dkt. 147-1 at 2.  Plaintiffs have separately requested cleanroom access and source code review,

4  and the Special Master has decided to postpone any decision about those requests until after

5  Google completes its productions of Plaintiffs' data.  Google's obstruction has severely prejudiced

6  Plaintiffs' and their experts' ability to complete and evaluate those inspections, with the close of

7  fact discovery now just three months away, and expert reports due three weeks thereafter.

8  Plaintiffs hope to revisit timing with the Court after Google completes its required production.

9  **IV.    Alternatively, Plaintiffs Are Entitled to Evidentiary Sanctions.**

10         If Google is unwilling to produce all of the data, as required by the April 30 Order, then

11  the Court should issue an evidentiary sanction.  If a party does "not obey[] a Discovery Order,"

12  Rule 37(b)(2)(A)(i) permits the court to "direct[] that the matters embraced in the order or other

13  designated facts be taken as established for purposes of the action."  This Court issued the April

14  30 Order to give Plaintiffs an opportunity to ==piece together, by combination of that information,==

15  ==class members."==   Apr. 29 Hearing Tr. at 19:2-7.  Because Google failed to comply, the Court

16  should "take[] as established for purposes of the action" that all of Google's so-called

17  "unauthenticated" data is linked or linkable to users, including all private browsing information

18  Google collected during the class period.  Fed. R. Civ. P. 37(b)(2)(A)(i).  "Court intervention to

19  protect Plaintiffs' ability to prove the[ir] allegations is necessary" when, as here, "[t]he withheld

20  evidence is uniquely within the possession of the Defendants" and "there was no way for Plaintiffs

21  to test their theory" as a result of the "documents withheld."  *Guifu Li v. A Perfect Day Franchise,*

22  *Inc*, 281 F.R.D. 373, 393 (N.D. Cal. 2012) (Koh, J.); *see also Zurich Am. Ins. Co. of Illinois v.*

23  *World Priv. Sec., Inc.*, 2020 WL 8610839, at *5 (C.D. Cal. Nov. 23, 2020) ("As a result of

24  [defendant's] shortcomings, the Court finds that evidentiary sanctions against it are warranted.

25  Plaintiffs assert that there are certain factual matters at issue in [Plaintiff's] discovery that must be

26  established for the purposes of this action.  Accordingly, the Court finds that the following matters

27  are established for the purposes of this action . . . .").

28

1    Google should likewise be precluded from presenting any arguments in this case

2    concerning whether such data is linked or linkable to Plaintiffs and other class members.  *See* Fed.

3    R. Civ. P. 37(b)(2)(A)(ii) (permitting the court to "prohibit[] the disobedient party from supporting

4    or opposing designated claims or defenses, or from introducing designated matters in evidence").

5    "Preclusionary orders ensure that a party will not be able to profit from its own failure to comply."

6    *Sas v. Sawabeh Info. Servs.*, 2015 WL 12711646, at *9 (C.D. Cal. Feb. 6, 2015) (quoting *United

7    States v. Sumitomo Marine & Fire Insurance Company, Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980)).

8    "[I]t is entirely reasonable to sanction [Google's] defiance of the [April 30] Order by precluding

9    them from presenting evidence on [issues for which Google] ha[s] not provided timely and

10   complete discovery."  *Sas*, 2015 WL 12711646, at *11 (C.D. Cal. Feb. 6, 2015).   Otherwise,

11   Google will benefit from any evidentiary gaps that it has caused by refusing to comply with this

12   Court's April 30 discovery Order.   "Discovery is first and foremost a way for one party to

13   determine the evidence supporting another party's allegations, so it can properly investigate that

14   evidence prior to trial."  *Lanier v. San Joaquin Valley Offs. Ass'n*, 2016 WL 4764669, at *8 (E.D.

15   Cal. Sept. 12, 2016).   Google "has thwarted [Plaintiffs'] efforts to understand the basis of"

16   Google's ascertainability defense, so it is "appropriate, based on these failures, to preclude

17   [Google] from introducing further facts or evidence in response to these issues."  *Id.*

18      Evidentiary sanctions are particularly important for Plaintiffs' anticipated motion for class

19   certification.  For example, in *Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118, at *3

20   (N.D. Cal. Aug. 29, 2011) (Koh, J.), after the defendant refused to produce a corporate

21   representative, in violation of a Court Order, the plaintiffs moved for a preclusion remedy, arguing

22   that "the information withheld from Plaintiffs could very well bear on whether or not Plaintiffs are

23   able to establish commonality of issues across the putative class."  This Court granted the motion:

24   "[t]o remedy the prejudice suffered by Plaintiffs in their class certification motion, [defendant] is

25   prohibited from utilizing declaration evidence (from Mr. Zou or any other corporate designee)

26   regarding its corporate structure or ownership in its opposition to class certification/collective

27   action."  *Id.* at *4; *see also Hanni v. Am. Airlines, Inc.*, 2009 WL 1505286, at *5 (N.D. Cal. May

28

18

27, 2009) (defendant moved for sanctions because "Plaintiffs' repeated failure to comply with their discovery obligations has prejudiced [defendant's] ability to prepare for Plaintiffs' class certification motion," and the court ruled that "Plaintiffs may not rely on any discovery provided after the close of class certification discovery in support of their motion for class certification or in opposition to Defendant's motion to deny class certification.").

This Court recently applied these principles to an unrelated discovery dispute in this case that did not even involve Google's failure to comply with a Court Order.  Plaintiffs and Google had reached an impasse as to Plaintiffs' requests for Google to identify all websites that use Google Analytics or Google Ad Manager.  This Court did not require Google to identify all of the websites, but the Order cautioned that "before Google can argue or assert that any specific website did not use Google Analytics, Google must respond to this interrogatory as to that website at least 30 days in advance of making any such assertion or argument."  Dkt. 288-1 at 1; *id.* at 2 (same for Ad Manager).  The Court should now apply the same logic to Google's refusal to produce all of the data associated with the Plaintiffs or their devices.  Preclusion is all the more appropriate here because Google has already been ordered to produce the data.

Indeed, Google's months' long obstruction warrants preclusion regardless of whether Google ultimately agrees to produce the data.  Google has jeopardized Plaintiffs' experts' ability to "conduct the required analysis within the time limits set [by the Court]."  *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 557 (N.D. Cal. 2009) (precluding party from presenting evidence concerning alleged lost profit damages for failing to timely produce the relevant data); *see also Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012) (preclusion warranted for belated production of relevant source code because "Apple's experts were left with no meaningful opportunity to comprehend this code, even as they face criticism from Samsung in deposition (and assuredly at trial) that their code analysis was deficient").

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court order Google to comply with the April 30 Order by producing all data that are associated with Plaintiffs or their devices

19

and all data linked to all identifiers associated with the Plaintiffs or their devices, including without limitation IP addresses and device- and browser-keyed identifiers.  In the alternative, Plaintiffs ask the Court to take as established for purposes of this action that all of Google's so-called "unauthenticated" data is linked or linkable to users.  Google should also be precluded from presenting any arguments in this case concerning whether such data is linked or linkable to Plaintiffs and other class members.

Dated: October 14, 2021                    BOIES SCHILLER FLEXNER LLP

                                           By: */s/ Mark C. Mao*

                                           Mark C. Mao (CA Bar No. 236165)
                                           mmao@bsfllp.com
                                           Beko Rebitz-Richardson (CA Bar No. 238027)
                                           brichardson@bsfllp.com
                                           Erika Nyborg-Burch (*pro hac vice*)
                                           Enyborg-burch@bsfllp.com
                                           BOIES SCHILLER FLEXNER LLP
                                           44 Montgomery Street, 41st Floor
                                           San Francisco, CA 94104
                                           Telephone: (415) 293 6858
                                           Facsimile (415) 999 9695

                                           James W. Lee (*pro hac vice*)
                                           jlee@bsfllp.com
                                           Rossana Baeza (*pro hac vice*)
                                           rbaeza@bsfllp.com
                                           BOIES SCHILLER FLEXNER LLP
                                           100 SE 2nd Street, Suite 2800
                                           Miami, FL 33130
                                           Telephone: (305) 539-8400
                                           Facsimile: (305) 539-1304

                                           William Christopher Carmody (*pro hac vice*)
                                           bcarmody@susmangodfrey.com
                                           Shawn J. Rabin (*pro hac vice*)
                                           srabin@susmangodfrey.com
                                           Steven Shepard (*pro hac vice*)
                                           sshepard@susmangodfrey.com
                                           Alexander P. Frawley (*pro hac vice*)
                                           afrawley@susmangodfrey.com
                                           SUSMAN GODFREY L.L.P.

20

1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

21