# EXHIBIT K

# Redacted Version of Document Sought to be Sealed



October 3, 2021

**VIA ELECTRONIC MAIL**

Special Master Douglas Brush (douglas.brush@accelconsulting.llc)
Accel Consulting, LLC

Andrew Shapiro (andrewschapiro@quinnemanuel.com)
Viola Tribecka (violatrebicka@quinnemanuel.com)
Josef Ansorge (josefansorge@quinnemanuel.com)
Quinn Emanuel Urquhart & Sullivan, LLP

Re:  Plaintiffs' Response to Google's September 29, 2021 Submission
     *Chasom Brown, et al., v. Google LLC,* Case No. 5:20-cv-03664-LHK

Dear Special Master Brush,

We write in response to Google's September 29 letter, which responded to the *Brown* Plaintiffs' September 27 letter addressing Steps 2 and 3. The parties met and conferred for over an hour and a half on September 30 and then for over two hours on October 1.

Although the Plaintiffs remain hopeful on some issues, the parties agree that they are at an impasse on certain other issues. Plaintiffs lay out in this letter some of the general frameworks that the parties appear to agree on, such as searches involving Plaintiffs' IP addresses for Step 3. Concurrently, Plaintiffs explain how other steps that Google proposes for Step 3 were designed to lead to no results, and are inconsistent with the Magistrate Judge's prior orders.

Plaintiffs respectfully ask that the Special Master recommend that:

- For Step 3, for certain disputed sources and searches relating to device and browser identifiers, mapped cookies (i.e., ▬▬▬▬▬▬▬▬▬▬▬▬), as well as third party IDs (i.e., Google Analytics IDs and publisher provided IDs), Google be ordered to conduct the Step 3 searches using all such identifiers, *after Google explains what identifiers the data sources are based on, including whether they are based on variants of any of the above identifiers*.

1



- For Step 3, Google be ordered to search the seven selected data sources using Plaintiffs' IP addresses and ▮▮▮ ID. Specifically, the IP addresses should be searched against all the IP parameters available in ▮▮▮ and the ▮▮ IDs should be used to obtain all of Plaintiffs' histograms, including their histograms relating to Incognito usage.

- For Step 3, Google be ordered to produce samplings of data for P6 and P16, as Plaintiffs had proposed.

- For Step 2, Google be ordered to provide all data parameters for the seven sources selected, as ordered by the Magistrate Judge on September 16.

In the meanwhile, Plaintiffs will continue to meet and confer with Google on issues where there is not yet impasse.

### Step 3: Searches

A. <u>Plaintiffs' proposed Search No. 1, in connection with P3 – Impasse as to Google's production of device and browser identifiers, and searches for Step 3 dependent on the same</u>

Plaintiffs' proposed Search No. 1 focuses on obtaining information from seven data sources (starting with five listed because Google provided incomplete information as to the other two, with the full expectation of expanding this to all seven) that are or may be tied to various identifiers associated with Plaintiffs and their devices. Google has thus far argued that anything keyed to its "GAIA" identifiers are "authenticated," while anything that is keyed to ▮▮▮▮▮▮ ▮▮▮▮▮▮ are "unauthenticated." The distinction is not even something Google employees believe. Instead, Google's developers refer to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (GOOG-CABR-00543136):

[redacted image]



The ▇▇▇ is uniquely identifying because it may be a "twice baked" identifier, "baking in" or mapping to other Google identifiers, such as device IDs and ▇▇▇ (GOOG-CABR-03667866–67):



Google's architecture gives ▇▇▇ nearly as much importance as GAIA IDs. ▇▇▇:

On both September 30 and October 1, Plaintiffs' counsel again pled for Google's counsel to reconsider their position on ▇▇▇ and other device and browser identifiers in Google's sole control and possession.[1] Opposing counsel confirmed that they are still

---

[1] Plaintiffs have asked for their twice-baked cookie identifiers since February 2021. To date, Plaintiffs have received nothing.



unwilling to produce these IDs. As the Special Master should be able to appreciate, *searches against Google's data sources (i.e., Step 3) must be tailored to the actual values upon which the sources are keyed to and organized.*

The production of such IDs for Step 3 is clearly covered by the Magistrate Judge's prior orders. Magistrate Judge van Keulen ordered on April 30 that Google produce Plaintiffs' authenticated and unauthenticated data (Dkt. 147-1 at 2):

| | | | |
|---|---|---|---|
| 4 | P6 4/7/21 | **Class member identification:** The parties have a dispute regarding Plaintiffs' RFP No. 10: "Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members." | For RFP Nos. 10 (class identification) and 18 (individuals' data), as an initial step, Google will produce identification data for the named Plaintiffs. Google will promptly supplement any production made to date with authenticated data identifiers as to both the individuals and their devices provided Plaintiffs have provided the necessary device information, as well as unauthenticated data. Following Plaintiffs' review of the supplemental production, the Court may entertain a request for a focused 30(b)6 deposition on identification data. Google's supplemental production is due by 5/12/21; parties to meet and confer and submit any further dispute to the Court by 5/20/21; to be heard on 5/26/21 at 1:30 p.m. |

As of this date, Plaintiffs still do not have their data pursuant to this Order. Google's position is particularly unreasonable given that during the April 29 hearing preceding the April 30 Order, Magistrate Judge van Keulen also explained:

> I think that the request is appropriate for Google to turn over the information it has on the named plaintiffs, the profile data, and if there is more robust profile data that is created for Google employees and that – that would seem to be the appropriate level of production, *along with the device data, whether or not it's – whether or not it can authenticate it's only used by this plaintiff, but any device data associated with the plaintiffs* and the more robust profile data.

Hearing Tr. at 46:16-24 (emphasis added).

Without the identifiers tied to Plaintiffs, their devices, and their browsers, undertaking Step 3 will likely result in nothing relevant for Plaintiffs. Furthermore, Google documentation shows that the data sources may be based on either the IDs



themselves *or a variant of the IDs* (GOOG-CABR-03665880):[2]



As the above documentation from Google shows, there are multiple variants of device IDs such as ▮▮▮ GAIA IDs, and PPIDs. A Step 3 search may yield nothing if the searches are not based on the correct IDs or their variants.

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



In light of Google's refusal to both provide the IDs or explain what variants of the IDs that the data sources are based on, Google's September 29 counter-proposals for Step 3 share similar flaws and are designed to yield no-results. To summarize:

| Proposed Search | Google's 9/29 Response | Plaintiffs' Issues with Google's Response |
|---|---|---|
| **1.b.** Plaintiffs' GAIA identifier, or any variants of this used in the data sources; | Google agrees to search the five selected sources for GAIA identifiers associated with the following Google Accounts (the Google Accounts from which Google has received consent notifications): ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ | The five sources proposed (Rows 13, 18, 32, 43, and 71) are not keyed to GAIA IDs, and do not have GAIA IDs as a parameter. The parameters Google provided on September 24 and 29 for those five sources demonstrate so.<br><br>Instead, Plaintiffs are seeking searches against the identified seven sources using *variants* of GAIA (e.g., such as ▉▉▉▉▉▉▉▉▉ and other identifiers associated with Plaintiffs' GAIA IDs (such as ▉▉▉▉▉ ▉▉▉▉▉▉▉ ▉▉▉▉▉▉ device IDs, Google Analytics IDs, or PPIDs).<br><br>Google did not commit to responding on these points on September 30 or October 1. |
| **1.c.** ▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ associated with Plaintiffs' GAIA identifier(s); | Google agrees to search the five selected sources for the following ▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ Plaintiffs provided to Google (pseudonymous identifiers purportedly associated with browsers of Plaintiffs from which Google received consent notifications): | Google's proposed cookies are old cookies that Google asked that Plaintiffs generate on their browsers for the first time in April 2021. According to counsel for Google back in April, these *new* cookies only "last three days," which Plaintiffs interpret as meaning they would not be mapped to ▉▉▉▉▉ after three days have passed, and unless Plaintiffs take some action. To date, Plaintiffs still have not been told what actions they needed to take. |

---

[3] Plaintiffs previously revoked consent for this account, and confirmed this with Google's counsel during the October 1 meet and confer.
[4] Plaintiffs previously revoked consent for this account, and confirmed this with Google's counsel during the October 1 meet and confer.



| | | |
|---|---|---|
| | ]Google's specified ▮▮▮ ▮▮▮ ▮▮▮ were omitted due to length.] | In short, Google is proposing to search using stale cookies, which are distinct from the ▮▮▮▮▮▮▮▮▮ As discussed above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Plaintiffs are entitled to searches against Google sources after Google provides them their ▮▮▮▮ Further, within Incognito, "[u]sers who perform a Google search, it is logged against a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs are also entitled to that data. Lastly and perhaps most importantly, Google is refusing to clarify whether the parameters are keyed to cookie values, or Google IDs such as ▮▮▮▮▮ Without a proper explanation, a proper Step 3 search cannot be conducted. |
| **1.d:** IP addresses associated with Plaintiffs, Plaintiffs' accounts, or Plaintiffs' devices (includes all variations noted in September 24 spreadsheet, including "best guess," "proxy," and "closest machine," as referenced in the ▮▮▮▮▮ response); | Google agrees to produce IP address information contained in the five selected sources that (i) denotes the sending host from which Google received data and (ii) is associated with Plaintiffs' GAIA identifiers (authenticated) or provided ▮▮▮▮▮▮▮▮▮▮ (unauthenticated). | Google improperly limited this part of Search 1 to IP addresses that "denote[] the sending host from which Google received data"—thus excluding "best guess," "proxy," and "closest machine" variations of IP addresses. Google's limitation will significantly limit the amount of responsive data. As shown in Google's September 24 spreadsheet submission for ▮▮▮▮▮, Google tracks these other IP variations as well, and there is no reason to exclude them, particularly when Google is already limiting this search to data tied to GAIA identifiers. Google should, as Plaintiffs had requested, produce complete records associated with the IP addresses and variations. |



| | | |
|---|---|---|
| **1.e:** ███████, or their variants, associated with above IP addresses | Google does not agree to search for or produce ███████ associated with the above derived IP addresses because such a production would include information associated with users who are not Plaintiffs and who have not consented. | As discussed above, each ███████ and Plaintiffs are entitled to searches against Google sources after Google provides them their ███████<br><br>Further, within Incognito, "[u]sers who perform a Google search, it is logged against a ███████<br><br>Plaintiffs are also entitled to that data. |
| **1.f.** Device identifiers ███████ or other, see, e.g., GOOG BRWN-00078366); and | Once Plaintiffs provide ███████ values to Google, Google is prepared to search the five selected sources for those identifiers. | Google was ordered to provide Plaintiffs all of their identifiers on April 30, including their device identifiers such as ███████. Google asked Plaintiffs to provide this information, even though Google readily has this in its possession, and some information such as ███████ are solely possessed by Google.<br><br>Google should provide all device IDs and their variants for a diligent search for data.<br><br>Lastly and perhaps most importantly, Google is refusing to clarify whether the parameters are keyed to cookie values, or Google IDs (such as ███████ Without a proper explanation, a proper Step 3 search cannot be conducted by the parties. |
| **1.g:** ███████ associated with above Device identifiers [i.e., the device identifiers specified in | Google does not agree to search for or produce ███████ associated with above identifiers (f) because such a production would include information | As discussed above, each ███████ and Plaintiffs are entitled to searches against Google sources after Google provides them their ███████ |

8



| | | |
|---|---|---|
| Request ███████ ███████ or other] | associated with users who are not Plaintiffs and who have not consented. | Further, within Incognito, "[u]sers who perform a Google search, it is logged against a ████████████████ ████████████████████████ ████████  ████████  ████████████ Plaintiffs are also entitled to that data. |

As Google's September 29 counter-proposals demonstrate, Google needs to not only comply with the Court's April 30 and September 16 orders, it needs to explain its proposals for Step 3. Not only is Google refusing to provide the IDs upon which the data sources are built, Google is refusing to explain what variants of these IDs (e.g., the raw IDs, a hashed ID, or some other variant of the IDs) the data sources are based. If the parties are to move onto Step 3, Google must be more forthcoming and comply with Orders.

Plaintiffs' proposed Search No. 1, in connection with P3 – Some Progress as to IP address and █████████

The Plaintiffs and Google have made some progress with regard to searches against Plaintiffs' ████████████ and IP addresses:

| **Proposed Search** | **Google's 9/29 Response** | **Plaintiffs' Response** |
|---|---|---|
| **1.a.** Plaintiffs' ███████ identifiers, or any variants of this used in the data sources (e.g., see the response to ████████████████ █████) | Once Plaintiffs provide █████ identifiers to Google, Google is prepared to search the five selected sources for those identifiers. | Plaintiffs disagree that Google needs Plaintiffs to provide their ████████████ but Plaintiffs have provided this information.<br><br>Still, ████████████████████████████████ ████████████████████████████████████████ as evidenced by Google's Chromium proto sources available for histograms.[5] Google had produced 9 pages listing hundreds of available Incognito histograms at GOOG-CABR-0000015. |

---

[5] See https://source.chromium.org/chromium/chromium/src/+/main:third_party/metrics_proto/histogram_event.proto. Google's ████████████ ██████ refers to a different proto, https://source.chromium.org/chromium/chromium/src/+/main:third_party/metrics_proto/chrome_user_metrics_extension.proto. Plaintiffs asked on September 30 why Google used this proto instead, because none of the fields produced contained histograms. Counsel for Google could not or would not give an answer.



| | | Google's search needs to be against the actual data source that contains the Incognito histograms, which do not appear to be at ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ On the October 1, Google counsel verbally committed to a more thorough search. |
|---|---|---|
| **1.d:** IP addresses associated with Plaintiffs, Plaintiffs' accounts, or Plaintiffs' devices (includes all variations noted in September 24 spreadsheet, including "best guess," "proxy," and "closest machine," as referenced in the ▉▉▉▉▉▉▉▉ response); | Google agrees to produce IP address information contained in the five selected sources that (i) denotes the sending host from which Google received data and (ii) is associated with Plaintiffs' GAIA identifiers (authenticated) or provided ▉▉▉▉ ▉ ▉▉▉▉▉▉ identifiers (unauthenticated). | Google improperly limited this part of Search No. 1 to IP addresses that "denote[] the sending host from which Google received data"—thus excluding "best guess," "proxy," and "closest machine" variations of IP addresses. Google's limitation will significantly limit the amount of responsive data. As shown in Google's September 24 spreadsheet submission for ▉▉▉▉▉▉▉▉▉, Google tracks these other IP variations as well, and there is no reason to exclude them, particularly when Google is already limiting this search to data tied to GAIA identifiers. Google should, as Plaintiffs had requested, produce complete records associated with the IP addresses and variations. Google has Plaintiffs' IP addresses and the dates on which those IP addresses were associated with Plaintiffs, negating any burden argument.<br><br>Nonetheless, Google's agreement to conduct some type of IP address search is a start. |

   Plaintiffs' request for information keyed to IP addresses (Search 1.d) is especially important given that is how Google logs and stores relevant data. For example, one Google-produced document (GOOG-CABR-03611484) notes "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ By producing complete records tied to IP addresses, Plaintiffs will be able to conduct this analysis, including by ▉▉▉▉▉▉▉▉▉▉▉▉ and other information included in those records. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" IP addresses are particularly important in connection with private browsing modes, where Google employees have discussed how "Incognito mode … does not anonymize IP address despite a common misconception that it does." And Google stores data tied to IP address. *E.g.*, GOOG-BRWN-00467569 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉



For Step 3, Plaintiffs request that the Special Master recommend that Google be ordered to search the seven selected data sources using both Plaintiffs' IP addresses and ▮▮▮ IDs. The IP addresses should be searched against all the IP parameters available in any of the seven data sources, including ▮▮▮▮▮▮▮▮, and the ▮▮▮ IDs should be used to obtain all of Plaintiffs' histograms, including their histograms relating to Incognito usage.

Search Nos. 2 and 3, for P6 and 16 – Impasse amongst the parties

Google has refused to run Search Nos. 2 and 3 and agrees that the parties are at an impasse.

**Search No. 2 (P16 and P6, X-Client Data Header)**: Plaintiffs proposed this search in connection with P6 and P16, which the Court referred to the Special Master. This search is narrowly tailored to yield a small sample of the data at issue with P6 and P16, so that the parties and their experts can begin evaluating that data. As previously explained, that data is relevant in terms of identifying class members, assessing the scope of any liability, and calculating damages. *See, e.g.*, GOOG-BRWN-00204684 at -84 (Google X-Client-Data header - identification of users in Incognito mode based on "absence of . . . X-Client Data header"). Google's refusal to produce any data is based on a certainty threshold (whether the data is with 100% certainty associated with class members) that does not apply in discovery, since this information is clearly relevant based on Google's own records. The parties are at an impasse, and Plaintiffs now ask that the Special Master order Google to run Search No. 2. The parties briefed P16 for the Court and again for the Special Master (Tab 25), and Plaintiffs are of course willing to provide any additional information requested by the Special Master.

**Search No. 3 (P6, ▮▮▮▮▮▮**  Plaintiffs incorporate the points above. Search No. 3 is not duplicative of Search No. 2. With Search No. 3, Plaintiffs seek to obtain a sample of records where the field or fields are tied to the existence of a ▮▮▮▮▮ *See, e.g.*, GOOG-BRWN-00168623 at -36 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Based on the information provided, it appears that there are separate fields focused on the ▮▮▮▮▮ That is separate and apart from the existence of an X-Client-Data header field and value. This seems unremarkable. For example, if Google receives an X-Client-Data header, Google may use that value to populate other fields. That might include not only a field with the ▮▮▮▮▮ but also one stating or indicating whether a ▮▮▮▮▮ was sent (such as an empty ▮▮▮▮▮ sent field). To the extent there are records that include one or more fields tied to the ▮▮▮▮▮ but not the X-Client-Data header value, a search for that information (tied to the ▮▮▮▮▮ will yield potentially relevant data that can be evaluated by the parties' experts. Plaintiffs respectfully ask that you order Google to run Search No. 3.

Plaintiffs note that sample ▮▮▮▮ logs at the front may be particularly important to show joinability and how Google maps IDs.





Because ▮▮▮▮ stands for "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," a front end process, sample records would allow Plaintiffs to show that Google is able to join the transactions in the traffic because "everyone in the (data) soup gets to know each other." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See chart above, for GOOG-CABR-03665880, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### Step 2: Identification of Parameters and Fields

For Step 2, the parties are at an impasse because Google is unilaterally limiting what Plaintiffs may select, and how many parameters and fields Google must produce. This was simply not the Magistrate Judge's Order on September 16, which provided (Dkt. 273, at 2):

> • **Step 2:** The Special Master will supervise a meet and confer with the Parties to identify those data sources that potentially contain responsive information that will be subject to searches and production of responsive records and set a deadline for Google to provide information about each selected data source. For each selected data source, Google will provide, at a minimum: (1) the data schema; (2) definitions and descriptions of each field; (3) tool(s) which Google employees ("Googlers") use to search each data source; and (4) instruction sets and manuals for all tools identified as being used by Googlers to search any data source identified in this step. The Court is informed that the Special Master has directed Google to begin collecting this data mapping information now and Google will provide it to the Special Master and Plaintiffs the day following the identification of data sources in this step.

Nothing in the Order allowed Google to so limit Plaintiffs' request. Plaintiffs respectfully request that the Special Master recommend that Google be ordered to provide all data parameters for the seven sources selected.



**Conclusion**

Plaintiffs request the above recommendations from the Special Master. For those matters where the parties are not at an impasse due to Google's refusal, Plaintiffs will continue to further meet and confer.

Sincerely Yours,


/s/

Mark Mao, Esq.
Boies Schiller Flexner LLP for the Plaintiffs