October 27, 2021

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    Plaintiffs' Submission in Response to Dkt. 297 re: Special Master Brush Report
            *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (N.D. Cal.)

      Pursuant to the Court's Order (Dkt. 297), Plaintiffs respectfully submit these objections to the Special Master's Report and Orders on Referred Discovery Disputes (Dkt. 299) (the "Brush Report"). Consistent with this Court's Order, Plaintiffs include with this submission just five exhibits, labeled A through E, as well as a proposed order. Relevant portions of the exhibits have been highlighted.

███████████████████████████████████████████████. The Court ordered Google to produce *all authenticated and unauthenticated* identifiers and data associated with the named *Plaintiffs or their devices*. Dkt. 147-1 at 2. Google violated that Order for six months on the basis of its lawyers' say-so about the data. ████████████████████████ ███████████████████████████████████████████████████████ Brush Report ¶ 53. ███████████████████████████████████████████████████████████████████ *See* Dkt. 292.

███████████████████████████████████████████████████████████████████████████

Plaintiffs agree that certain aspects of what appear to be contemplated in the protocol may be helpful. But on the whole, the protocol accepts as its starting point a faulty paradigm set forth by Google: that in spite of the Court's clear order from April 30, Google can (a) refuse to produce any authenticated data whatsoever and (b) limit the sources of unauthenticated data it will disclose to Plaintiffs and search. And while the Report attempts to move quickly toward resolution of some disputes, the protocol appears to risk causing further confusion, lack of compliance, and delay.

Google's refusal to comply with an unambiguous Court Order shows that targeted cleanroom access is necessary to break this logjam. Google previously argued against such access by assuring the Court that "[t]here is no cause for Plaintiffs to look over Google's shoulders." Dkt. 177 at 12. As it turns out, supervision is necessary. Google defied the Court for six months; now less than three remain before the close of discovery, leaving no time to continue deferring a decision on cleanroom and source code. Plaintiffs therefore renew these requests, but in a more limited fashion than before—this time aimed at informing ██████████████████████ ██████████████████████████████████.

Plaintiffs also respectfully object to Special Master Brush's recommendations regarding the parties' disputes about class member identification (P6 and P16). █████████████ ████████████████████████████████████████████████████. To the extent Google refuses to produce any classwide data, evidentiary presumptions are warranted.

**OBJECTIONS**

**Paragraph 52**: Plaintiffs seek targeted access to data tools and source code, █████ ████████████████████████████████████████████████████████████████.

*Cleanroom Access to Internal Google Data Querying Tools.* Google's refusal to comply with the April 30 Order makes cleanroom access timely and necessary. Plaintiffs first requested cleanroom access on May 6. During the June 2 hearing, this Court ███████████████████ █████████████████████████████████████████ June 2 Hearing Tr. at 32:1-4, 33:1-7, 35:1-5. ████████████████████████████████████████████ *Id.* at 35:1-5. Weeks later, Google told the Court that it had finished producing the "relevant unauthenticated data," Dkt. 211 at 1, and the Court then referred the entire P3 Dispute to Special Master Brush. Plaintiffs never substantively discussed cleanroom access with Special Master Brush because he indicated that his first priority was to resolve the dispute over the production of the named Plaintiffs' data. There are now less than three months left in the fact discovery period, leaving no time for any additional deferrals.

1

Cleanroom access can inform the parties' ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Access here is particularly warranted to ensure that Google no longer withholds responsive information based on its say-so about the tools and what Google unilaterally deems "relevant" to this case.

Plaintiffs' request is consistent with what this Court and other courts have previously ordered. *See Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 2293224, at *3 (N.D. Cal. June 8, 2011) (requiring Apple to allow plaintiff's expert to inspect an internal tool); *S. Peninsula Hosp., Inc. v. Xerox State Healthcare, LLC*, 2019 WL 1873297, at *6 (D. Alaska Feb. 5, 2019) (compelling defendant to provide plaintiff's expert with onsite access to a database for purposes of "demonstrat[ing] the existence of the class").

Mindful of the Court's comments and Special Master Brush's recommendations, Plaintiffs now propose a more limited form of cleanroom access that will inform the next steps in the process. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Plaintiffs and their experts should be granted five days of supervised onsite access (collectively) to two computers, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ This access will provide Plaintiffs and their experts with the background knowledge they need to maximize ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ If helpful to the Court, Plaintiffs are prepared to submit an expert declaration explaining why such access is critical to Plaintiffs' participation ▬▬▬▬▬▬▬▬▬▬.[1]

***Non-Public Source Code.*** Like with cleanroom access, Special Master Brush asked the parties to defer the source code issue. Thus, other than proposals Plaintiffs made in September 7 and 14 letters to the Special Master—which went unaddressed—there was no briefing, argument, meet-and-confer, or discussion of source code before the Special Master. Plaintiffs therefore respectfully object that the outright denial of source code is unsupported.

Plaintiffs now propose inspecting a far more limited set of source code than Plaintiffs initially proposed. Plaintiffs' proposal focuses on code relevant to Google's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Plaintiffs request the following code, which should include any similar processes or tools.

- ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ GOOG-BRWN-00144662; GOOG-BRWN-00182076.
- ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[1] To ensure compliance with this Court's Order, Plaintiffs did not submit any expert declaration with this filing. *See* Dkt. 297. Any declaration would also address source code.

2

▮▮▮ *See* Ex. A at 4-6, GOOG-CABR-03662096 at -99-101.

- ▮▮▮ GOOG-BRWN-00026161.

For the above code relating to ▮▮▮, Plaintiffs narrowly seek the portions showing how ▮▮▮ *See, e.g.*, GOOG-CABR-03670580▮▮▮

Plaintiffs also seek the below source code, as well as any similar processes or tools.

- ▮▮▮ Ex. 16 to September 14 Submission, GOOG-CALH-00030031.

- ▮▮▮

- *Incognito, Analytics and Ad Manager*: those portions of the code relating to Google's collection of private browsing data, and its transmission to Google.

Source code inspection is warranted. ▮▮▮ The case law also supports Plaintiffs. "There is . . . no source code exception to the production requirements of Fed. R. Civ. P. 34." *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *1 (N.D. Cal. May 4, 2012). Here, source code is discoverable because it demonstrates "whether [Google] fully performed" its obligation not to track users within private browsing modes. *Metavante Corp. v. Emigrant Sav. Bank*, 2008 WL 4722336, at *2 (E.D. Wis. Oct. 24, 2008). "The source code in this case implemented [Google's] desired [use of data], and whether that . . . lived up to [Google's] claims and contractual obligations is the issue here." *In re Facebook PPC Advert. Litig.*, 2011 WL 1324516, at *3 (N.D. Cal. Apr. 6, 2011).

**Paragraph 54**: As detailed below, Plaintiffs respectfully object to the Special Master's finding that ▮▮▮.

**Exhibit A**: Plaintiffs respectfully object to certain aspects of Exhibit A to the Brush Report.

1. *Dispute P3 (Plaintiffs' Data) and Dispute P7 (Logged In/Out)*

   Google Data Sources & Data

Plaintiffs respectfully ask that the Court order Google to supplement its identification of the ▮ data sources with any additional sources that, as required, identify "*all* databases and data logs (collectively, 'data sources') that may contain responsive information." Dkt. 273 (emphasis added). Google did not do that. Google selected some and excluded others, including (in Google's

3

words) all ESI sources that "contain only authenticated data." Dkt. 303-6 at 4. Plaintiffs are entitled to know, as ordered, all of the data sources that contain or may contain their private browsing information and the other information Google has regarding Plaintiffs.

Google improperly excluded "potential sources of ESI that contain only authenticated data." Dkt. 303-6 at 4. Plaintiffs are entitled to this data. In this Court's words, "there needs to be some way for the Plaintiffs to understand and to test or challenge whether or not the unauthenticated identifiers can be derived from the authenticated identifiers." June 2 Tr. at 33:1-7. True, some data will reflect non-Incognito sessions. But this is still Plaintiffs' data, and Plaintiffs can use it to "test" their theories about class member identification and Google's use of their data, particularly when Google's documents support Plaintiffs' theory. *See, e.g.*, Ex. B at 1, GOOG-BRWN-00184875 at -75 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Plaintiffs are separately entitled to "authenticated" data because this data can fall within the class definition. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Plaintiffs' September 14 Submission at 4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Berntson Dep. at 87:6-16, 227:13-15; *see also* Ex. 9 to September 14 Submission, GOOG-BRWN-00027306 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Google has also incorrectly omitted Search data as "out of scope." Dkt. 303-5 at 6. The data is highly relevant to identifying class members.[2] Within Incognito, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-BRWN-00386511; *see also* GOOG-BRWN-00613801 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-CABR-00891789. ▮▮▮▮▮▮ Ex. C at 1, GOOG-BRWN-00433503 at -03.

Plaintiffs' Request for an Additional 30(b)(6) Deponent

Plaintiffs' prior motion to compel explained that Google's 30(b)(6) designee for the June 6 deposition was not adequately prepared to testify about numerous topics, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 199 at 7. Special Master Brush did not address this issue. Plaintiffs again request an order requiring Google to produce an adequately prepared witness.

---

[2] Many class members were logged by Google Search within a private browsing session before or after visiting a third-party website that uses Google Analytics or Ad Manager. Thus, identifiers that Google uses to track Search activity are relevant to identifying class members whose third-party website activity was also illegally intercepted during the same private browsing session.

4

██████████████████████

The Brush Report lays out a detailed but somewhat confusing protocol for ████
███████████████████████████████████████████████████████████████████
████████████████████████████████████ The protocol is in many respects confusing, so Plaintiffs believe the parties would benefit from a clarification discussion at the upcoming hearing. ██
████████████ A clarification discussion will prevent future disputes and motion practice.

*2. Dispute P6 (Class member identification) and Dispute P16 (X-Client Data Header)*

█████████████████████████████████████████████████████ For purposes of identifying class members and quantifying damages, Plaintiffs reasonably seek access to class member data. Plaintiffs made two specific and targeted proposals as a first step. Google rejected both without offering any counter, nor purporting to suggest that it would be burdensome to comply. Special Master Brush never addressed either of Plaintiffs' compromise proposals. Plaintiffs respectfully request an order adopting these compromise proposals.

*First*, Plaintiffs seek a random sample of 1,000 complete records from the ████████████████████████████████████████████████████████████████████
████████████████ This search is consistent with Google's own document ███████
████████████████████████ x. D at 1, GOOG-BRWN-00204684 at -84. ████████████
██████ GOOG-BRWN-00051406. *Second*, Plaintiffs seek a random sample of 100 complete records from each of the ██████████████████████████████████████████████████████
█████████████████████████ Ex. E at 14, GOOG-BRWN-00168623.C at -36, ███████
███████████████████████████████████████████████████████████████████ Both searches are also consistent with this Court's guidance that Plaintiffs "can test it and they can make of the data what they will." Apr. 29 Tr. at 20:7-8. "Indeed, to deny discovery where it is necessary to determine the existence of a class or set of subclasses would be an abuse of discretion." *In re Intuit Data Litig.*, 2017 WL 3616592, at *2 (N.D. Cal. Aug. 23, 2017) (van Keulen, J.).

With just months left in discovery, and Google continuing to withhold basic discovery regarding class members, there may not be enough time for Plaintiffs' experts to fully evaluate this data. Evidentiary presumptions are therefore warranted. "Discovery is first and foremost a way for one party to determine the evidence supporting another party's allegations, so it can properly investigate that evidence prior to trial." *Lanier v. San Joaquin Valley Offs. Ass'n*, 2016 WL 4764669, at *8 (E.D. Cal. Sept. 12, 2016). Google "has thwarted [Plaintiffs'] efforts to understand the basis of" Google's ascertainability defense, so it is "appropriate, based on these failures, to preclude [Google] from introducing further facts or evidence in response to these issues." *Id.* "Court intervention to protect Plaintiffs' ability to prove the[ir] allegations is necessary" when, as here, "[t]he withheld evidence is uniquely within the possession of the Defendants" and "there was no way for Plaintiffs to test their theory" as a result of the "documents withheld." *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 393 (N.D. Cal. 2012) (Koh, J.). Google should not be permitted to withhold relevant private browsing data and then argue at class certification or trial that Plaintiffs have failed to prove their theories about the data.

5

Dated: October 27, 2021                     SUSMAN GODFREY L.L.P.


By: */s/ William Christopher Carmody*

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100


Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Rebitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

John A. Yanchunis (*pro hac vice*)

jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*