**Pages 1 - 42**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan van Keulen, Magistrate Judge

```
CHASOM BROWN, ET AL.,          )
                               )
            Plaintiffs,        )
                               )
   VS.                         )     NO. CV 20-03664-LHK
                               )
GOOGLE LLC, ET AL.,            )
                               )
            Defendants.        )
_____)
```

San Jose  California
Wednesday, October 27, 2021

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES</u>**:

For Plaintiffs:

> SUSMAN GODFREY LLP
> 1900 Avenue of the Stars, Suite 1400
> Los Angeles, CA 90067
> **BY:  AMANDA K. BONN, ESQUIRE**

> BOIES SCHILLER FLEXNER LLP
> 44 Montgomery Street, 41st Floor
> San Francisco, CA 94104
> **BY:  HSIAO C. MAO, ESQUIRE**

> BOIES SCHILLER FLEXNER LLP
> 100 SE 2nd Street, Suite 2800
> Miami, FL 33130
> **BY:  ROSSANA BAEZA, ESQUIRE**

(Appearances continued on the next page)

Reported By:      Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                  Official Reporter

**APPEARANCES:**

For Defendants:

                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
                        191 N. Upper Wacker Drive, Suite 2700
                        Chicago, IL 60606
                BY:  **ANDREW H. SCHAPIRO, ESQUIRE**

                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
                        555 Twin Dolphin Drive, 5th Floor
                        Redwood Shores, CA 94065
                BY:  **SARA E. JENKINS, ESQUIRE**

                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
                        865 South Figueroa Street, 10th Floor
                        Los Angeles, CA 90017
                BY:  **VIOLA TREBICKA, ESQUIRE**

<u>**Wednesday - October 27, 2021**</u>                    <u>**10:00 a.m.**</u>

**P R O C E E D I N G S**

**---oOo---**

**THE CLERK:**  Calling CV 20-3664, Brown, et al. vs. Google LLC, et al.

Counsel, please identify yourselves for the record, beginning with plaintiff.

**MS. BONN:**  Good morning, Your Honor.  This is Amanda Bonn with Susman Godfrey on behalf of the plaintiffs.  Also with me are Mark Mao from Boies Schiller Flexner and Rosanna Baeza, also from Boies Schiller Flexner.

**THE COURT:**  Good morning, Ms. Bonn, Mr. Mao.  Welcome back.  Ms. Baeza, good morning.  Thank you for being here.

And for the defendants this morning.

**MR. SCHAPIRO:**  Good morning.  Andy Schapiro for Google, and with me and likely doing the lion's share of the work today are my colleagues, Viola Trebicka and Sara Jenkins.

**THE COURT:**  Good morning.  Good morning, Ms. Trebicka, Ms. Jenkins.  Thank you for being here.

And we have Ms. Hebel, our court reporter today.  She was lined up to help us out live, so she's here.  So I just want to remind everyone to please speak slowly.  She will turn her screen on and wave her arms if there is any issue in keeping up or understanding counsel.  Sometimes it's a little tough with the various mediums that we have going.

1     All right.  I have two matters --

2          **MS. TREBICKA:**  Your Honor, I apologize.  I have a very

3     small housekeeping matter related to sealing, if I may speak.

4          **THE COURT:**  Sure, Ms. Trebicka.

5          **MS. TREBICKA:**  So the briefing for at least one of the

6     issues being discussed today was under seal, and it was sealed

7     because of the mention of two project names that are

8     confidential.  We did not find the need to move to seal because

9     the mention of the confidential information was so minimal.  We

10    would ask, though, that plaintiffs' counsel refrain from using

11    those two project names so that there's no airing of

12    confidential information at a public hearing and also would

13    like to reserve the right that should the conversation veer

14    into Google confidential information that we'd normally seal,

15    that we be permitted to at least speak to that.

16         **THE COURT:**  That will be fine.  Thank you,

17    Ms. Trebicka.

18       Ms. Bonn, is your team aware of the project names?  Do you

19    know what Ms. Trebicka is referring to?

20         **MS. BONN:**  If Ms. Trebicka will email me the names, I

21    will make sure not to mention them, but in general, I will try

22    to avoid using project names altogether.

23         **THE COURT:**  Okay.

24         **MS. TREBICKA:**  We can do that.  It was in an email

25    last night, but we will resend it.

1      **MS. BONN:**  Thank you.  I appreciate it.

2      **THE COURT:**  If you do that, it will be at the top of

3  the Inbox and folks will have that in hand.

4      I am fairly confident we can navigate today's proceedings

5  without the need for sealing, and so we will proceed.

6  Certainly at this point if the need arises, if either side

7  feels the need arises, you can interject at that point, and I

8  will consider it.

9      Okay.  As I said, I have two matters on today, both of

10  which relate to privilege.  One is the joint submission

11  regarding the clawback dispute at Document 290, and the other

12  is the larger issue relating to the privilege log more

13  generally which was filed under seal at 295-4.

14      It really was the privilege log issue that we had said we

15  would discuss today, but the clawback papers came in so I did

16  get through those and I thought it would just make sense to

17  address it all at once while I have everyone here.

18      With regard to -- let's just start with the clawback issue

19  because I did go through the parties' submission on that.  I

20  went through the document that I had requested for in camera

21  review, and I went very carefully through the supporting

22  declarations that were provided from Ms. Lee and -- is it

23  Ms. Liu?  Am I pronouncing that correctly?

24      **MS. TREBICKA:**  Yes.  Yes, ma'am.

25      **THE COURT:**  Thank you, Ms. Trebicka.

1    That's Liu, L-I-U.

2    And gave careful consideration to the challenges to

3    privilege, to the arguments, and the facts in support of

4    privilege, and I find that Google has made a clear showing with

5    the attorney declarations that the highlighted sections which

6    indicate that which had been redacted as it relates to

7    privilege do relate closely -- either are attorney-client

8    communications or are closely integrated or parts of

9    communications that are closely integrated with attorney-client

10   communications, and those communications appear to be in the

11   realm of legal advice.  That line between legal and business is

12   not always bright, but I am satisfied from the representation

13   under oath by the authors that those conversations do reflect

14   legal advice.

15   I also considered the waiver argument, but as the language

16   that's at issue is not quoted in the case management filings

17   that plaintiff quotes, I don't find waiver on the facts

18   presented in this case.

19   I certainly understand the concerns by plaintiff and

20   concerns around overreaching for privilege and that is

21   always -- always a concern to parties on both sides and

22   especially when there are discussions that focus -- documents

23   that reflect discussions that focus very much on key issues in

24   the case.  But it doesn't matter how key the issues are, if the

25   communication is privileged, that is, between client and

1   attorney, then it is privileged.  And I find that the indicated

2   language here is, and Google's clawback is proper.

3       So with that, as I say, I reviewed that.

4       Ms. Bonn, if plaintiffs would like to be heard further, I

5   will give you a moment for that.

6       **MS. BONN:**  I don't think so, Your Honor.  I think it's

7   clear the Court gave careful consideration to the issue.  We

8   understand the Court's ruling, and I think as the Court said,

9   in the category of documents where there's a lawyer involved

10  who may wear two hats, it can be a fine line, and we understand

11  the Court's judgment, so I have nothing to add.  Thank you.

12      **THE COURT:**  All right.  Thank you.

13      All right.  Then let's turn to the larger issue, larger

14  privilege log issue that is set forth in -- again, I worked off

15  of the sealed copy, but I won't refer to any product or project

16  names.  And on the docket that's 295-4.

17      Again, I read through the concerns set forth by plaintiffs

18  and the responses to those concerns by Google, by defendant,

19  and I read with interest what each side would like the Court to

20  direct to happen next or proposes makes sense to happen next

21  because -- I have to say, I read through it, and I was a little

22  bit of a mind of okay, so what do you want me to do?  And of

23  course in this case with regards to this submission, it's more

24  difficult because I'm, as always with privilege issues and

25  often with document production issues, in general dealing in

1   the abstract and -- but that's the way our assertion of

2   privilege, logging privilege documents, production is set up

3   under the federal rules.  There is obviously a -- always a

4   document production generally.

5        Counsel have to rely on the good faith and compliance with

6   ethical obligations of opposing counsel, and sometimes in a

7   hard-fought case, that can be trying, but you are always

8   relying on counsel's review and selection of relevant documents

9   for production and appropriate assertion of privilege,

10  appropriate and not overly broad assertion of privilege.  And

11  all counsel are called upon to exercise that, as I say, in good

12  faith with a mind towards ethical obligations, and the other

13  side has to accept that, certainly to some degree, unless there

14  is some grounds or concerns or specific deficiency, and that's

15  really how I read this submission, was plaintiff identifying a

16  handful of what plaintiffs perceive as deficiencies in the

17  showing in the privilege log.

18       So let me just share a couple of comments and then we'll

19  talk about a few specifics.  I am also always concerned about

20  the breadth of assertion of privilege, particularly where the

21  facts demonstrate that you have a lot of lawyers involved in a

22  lot of issues, and, again, communications with counsel of

23  course are privileged communications, rendering legal advice

24  are privileged.

25       When engineers or executives talk about that same subject,

1   it is not a subject matter privilege.  If you have two

2   executives or two engineers talking about data collection or

3   privacy issues not relating to a conversation with counsel,

4   just because there are also counsel communications that relate

5   to the same topic does not render those communications

6   privileged.  That's pretty basic privilege 101, and I would

7   certainly expect all of our experienced counsel in this case

8   and particularly those here in front of me today to know that

9   and to be acting on that accordingly in your document review

10   and assertions of privilege.

11       It's not subject matter.  It has to be tied to.  That

12   being said, where you have -- just because there is not a

13   lawyer in the loop reflected in the communication, you often

14   have non-lawyers transmitting legal advice, sharing legal

15   advice, acting on legal advice that is reflected in a document,

16   and as we know from the -- from the Ninth Circuit, transmitting

17   legal advice, sharing it, discussing it, even without the

18   lawyer, is still within the coverage of attorney-client

19   privilege.

20       The key, of course, is a tie, and it doesn't have to be an

21   express tie, obviously, but is -- is a tie to attorney-client,

22   something that makes the communication not just on the same

23   subject matter as a privilege discussion but actually

24   transmission or reflective, and sometimes that's a temporal

25   tie, sometimes it is referred to expressly, sometimes it's an

1   organizational tie, if you will, but that is -- necessarily

2   requires, again, good faith and ethical screening and assertion

3   of privilege, and it does require a good faith belief or a

4   willingness to accept that opposing counsel is acting in good

5   faith.  Let me put it that way.

6       And, again, just going back, I'm always struck by how our

7   system is set up on production and assertion of privilege,

8   document production, assertion of privilege.  It's not that

9   privilege has to be established or privilege is always properly

10  tested through in camera review.  Obviously our system

11  doesn't -- is not set up that way or that would perhaps be all

12  that certainly the magistrate judges did, would be to re-review

13  privilege, and that's not the case.

14      That being said, I do look for instances where -- some

15  concern, there's some red flags, or simply not enough

16  information in a privilege log to support it.

17      So, again, with those perhaps somewhat rambling but

18  general comments in mind, I have a few questions, and I'd like

19  to again get a better sense as to the dispute and kind of bring

20  us around to the parties' recommendations, respective

21  recommendations on how it might make sense to address the

22  concerns that are raised here.

23      And the first is in the first category where there are

24  numerous -- what plaintiff describes as what appears to be

25  ordinary business communications between Google employees with

1   no attorneys in the loop, and really my first question is --

2   and I don't know if your review and work on this drew bright

3   lines around these, but how many documents are we talking about

4   in that category?  And it can be an approximate, but give me

5   some sense of the size of the concern.

6       Ms. Bonn.

7       **MS. BONN:**  Yes, Your Honor.  I could try to get a more

8   precise count, but across the two privilege logs that have been

9   served already, I believe that there are over a hundred, maybe

10  closer to two, that fall in that bucket, and really part of our

11  concern is -- and we agree with Your Honor, there could be an

12  email, for instance, between Engineer A and Engineer B where

13  Engineer A says, "Hey, I spoke to Lawyer C, and Lawyer C told

14  me X, Y and Z."  The lawyer is not going to appear on the

15  communication, and yet their legal advice is reflected.

16      The problem that we have is that there are, I think, over

17  a hundred entries where even in the description of the

18  document, it doesn't identify.  It just says "reflecting legal

19  advice of counsel."  Well, what lawyer's advice is reflected

20  there?  And the problem we have is that the titles of many of

21  these documents and the nature of them suggest that they're

22  actually technical engineering design documents.

23      So it's not merely that we're saying hey, a document has

24  to have a lawyer copied on it to be privileged.  That's not our

25  point.  But if there isn't a lawyer copied and its title and

what we can tell about the document suggests it's a technical

document and the description is a generic description

reflecting advice of counsel that doesn't even tell us who is

the lawyer whose advice is supposedly reflected in the

document, even if they're not copied, that's really the problem

that we have.

And, you know, even today, you know, nearly all of the

documents in that bucket that we've identified have gone

largely unaddressed other than the statements by Google that

while the mere fact that a lawyer isn't on it doesn't render it

unprivileged.  And we agree, but that's not our issue.  Our

issue is these appear to be technical documents.  You haven't

even identified who's the lawyer whose advice is supposedly

reflected in the document even if they're not copied.  And

without that information, we just don't understand how they

could sustain their burden to establish that the document is

privileged in the first place.

**THE COURT:**  Okay.  Would you agree, Ms. Bonn, that

even if the body of the document or -- well, let me ask you.

Is it your position that if there's no lawyer on the "to/from"

or "copied," that the -- in the body of the document, a

specific lawyer has to be identified, or is a reference to -- I

mean, what is --

**MS. BONN:**  I think it could be something else.  It

could be, for example, "I spoke to legal, and legal told me X,

1  Y and Z," right?  The document itself may not identify the

2  specific lawyer, but we need something that suggests that

3  there's something in the document that indicates it's

4  privileged.

5       And part of the problem we have is that a number of these

6  documents are being withheld in their entirety, so it would be

7  one thing if there is a redaction of the document.  It's an

8  engineering document but there's some redacted comment and they

9  tell us it's reflecting advice of counsel, but when there is a

10  document that has a technical title, there is no lawyer on the

11  document, and all the description says is "reflecting advice of

12  counsel," it just strikes us that that's not enough information

13  for us to assess whether there is in fact privileged

14  information or whether it's appropriate to withhold the entire

15  document as opposed to redacting.

16       **THE COURT:**  Okay.  And you referred to two privilege

17  logs, right?  I think a second privilege log was just due or

18  served.  Remind me of the timeline.

19       **MS. BONN:**  There were two logs served:  One in July

20  and one in August.  The first privilege log had almost 1600

21  entries on it.  We raised questions about 144 entries, so about

22  10 percent, less than 10 percent.

23       The second privilege log was served in August, had

24  approximately 2900 entries, and we raised questions about 297

25  entries, so, again, about 10 percent.

1   So, you know, we're really not trying to attack the

2   entirety of their privilege log.  We're trying to really focus

3   on the areas where we have what we think are legitimate

4   questions.

5          **THE COURT:**  Okay.

6          **MS. BONN:**  Today I believe is the deadline for Google

7   to provide an additional privilege log --

8          **THE COURT:**  Okay.

9          **MS. BONN:**  -- that corresponds to the productions that

10  they made leading up to the October 6th substantial completion

11  deadline.  We have not learned yet from Google how many entries

12  will be on that log, but our assumption is it's likely to be

13  substantially larger than the prior logs because the

14  productions they correspond to are substantially larger.

15         **THE COURT:**  All right.  All right.  Okay.  That's

16  helpful.  Thank you.

17  Okay.  Let me hear from Google.  And I did review and I

18  appreciate the statement in terms of the process for reviewing

19  documents.  So let me -- concern around what appears to be the

20  nature of the document, a title "legal advice," and the whole

21  document versus redaction issue.  Who has that?  Ms. Trebicka?

22         **MS. TREBICKA:**  Yes, Your Honor.  That's me.

23  It is a little difficult to discuss this in the abstract,

24  as you may imagine --

25         **THE COURT:**  Of course.

1     **MS. TREBICKA:**  But our review of the privilege log and

2     the challenges that plaintiffs have made in preparation for

3     this hearing reveals that it's -- that the number of these

4     types of documents that have only "legal" in their description

5     and no attorney name is actually much smaller.  But even beyond

6     the number --

7         **THE COURT:**  When you say "legal" in their description,

8     what are you referring to?

9         **MS. TREBICKA:**  What I mean is -- because I think

10    Ms. Bonn is drawing a distinction between a description of a

11    privileged document in the priv log that says the name of the

12    attorney and sort of another type of log or entry in the log

13    that does not have the name of an attorney and only says -- you

14    know, references "advice from legal."

15        So first off, there is many, many more entries that have

16    an attorney's name present, and therefore this idea that

17    plaintiffs can't even apprehend the reasons or the basis for

18    the -- for the withholding, that falls.

19        But for some of these documents that only have -- or the

20    entries that only have a reference to legal, it is often

21    because the underlying document refers to "legal" in the

22    abstract or may refer to multiple attorneys, and that's because

23    often these issues are being discussed with legal folks, and

24    all the engineers or the business folks need to know is that

25    advice or this representation or these concerns or questions or

1   whatever are coming from legal.

2       So it's not unusual to think that that's how people would

3   refer to it in the regular course of business, and of course

4   that's what we've reflected in the privilege log as a result.

5       Often -- I mean, the fact -- Ms. Bonn said these documents

6   appear to be technical documents, for example.  I'm not sure I

7   agree.  I understood the challenge to be primarily for

8   documents that have titles like "Incognito Summary," for

9   example.  I'm not sure that is a technical document, but

10  regardless, the fact that a document may be -- may have a

11  technical nature or even a business nature does not mean that

12  the legal advice that's reflected or discussed in the document

13  is not so intertwined in the document that --

14       **THE COURT:**  No, not necessarily.  You're absolutely

15  right.  I think it raises -- it raises a question of --

16       **MS. TREBICKA:**  Correct.

17       **THE COURT:**  -- has it been properly redacted.  It

18  doesn't -- certainly is not determinative of a conclusion.

19       **MS. TREBICKA:**  And --

20       **THE COURT:**  Were you provided -- well, let me just ask

21  Ms. Bonn this question, and I will come right back to you,

22  Ms. Trebicka.  But, again, I appreciate the organization of the

23  submission to me.

24       Were documents identified in these six categories, that is

25  specific, you know -- "There are 200 documents in Category 1

1    and 25 documents in Category 2, and here are the Bates numbers

2    or the privilege log number."

3         **MS. BONN:**  Yes, Your Honor.  What we did is we sent

4    two letters, one in August and one in September, where we

5    identified the categories of our concern and then we listed the

6    specific documents we were concerned about by privilege log

7    entry number.

8         **THE COURT:**  Okay.

9         **MS. BONN:**  And we identified 144 documents in total in

10   our August letter that we had questions about.

11        **THE COURT:**  Right.

12        **MS. BONN:**  And 297 in the second letter.

13        **THE COURT:**  Right.  And some portion of those fall

14   into this first category?

15        **MS. BONN:**  Correct.  And to give Your Honor a sense, I

16   just went back to double check.  For example, in Google's first

17   privilege log from July, there are 90 entries on that log that

18   appear to be documents that are technical documents that are

19   maintained on a Google Wiki.  They are called something -- they

20   are titled a, quote, Privacy Design Document.  And what we've

21   seen in publicly-available information is that Google has an

22   internal process where any time there is a launch of a new

23   product or a change, a technical change in a product that

24   affects the way in which it collects, uses, or stores user

25   data, they have a system in place in which the engineering team

1  has to fill out a document that explains what the change is,

2  what's --

3         **THE COURT:**  That's posted on the Wiki.

4         **MS. BONN:**  It's posted on the Wiki, and then that

5  document is sent to something called the Privacy Working Group,

6  which is a team of engineers that have specific expertise in

7  privacy, so it may be that at some point a lawyer looks at that

8  document or a lawyer approves that document, but the mere fact

9  that there's a technical document created in the ordinary

10  course of business by one set of engineers for review by a

11  second set of engineers suggests that it's not a privilege

12  document.  There don't appear to be lawyers specifically called

13  out or mentioned as having legal advice specifically reflected

14  in the document, or even if there were, I would expect there to

15  be a redaction as opposed to a complete withholding.

16      So when I say that there are technical documents, that's

17  the major category of technical documents that we're seeing

18  this issue arise with.

19         **THE COURT:**  All right.  And did you -- and I asked

20  this and you probably answered it, but -- maybe my notes

21  weren't quite as quick, but did you provide Google in the same

22  form as this submission with these Categories 1 through 6 --

23  did you identify the specific documents that you believe

24  Category 1 covers?

25         **MS. BONN:**  Yes.  Between our August and our September

letter, we've identified them by log entry number.

**THE COURT:**  How many -- that's where you said it was approximately 200 maybe, roughly, right?  Okay.

**MS. BONN:**  I think so.

**THE COURT:**  Okay.  All right.  That's helpful.

Let me ask a question about -- because it sounds similar, but help me to understand, if we move to the third category, which are documents that are described as memorandum reflecting legal advice -- or, excuse me -- described in the privilege log as memorandum reflecting legal advice, again, this seems to be somewhat of the same concern.  What's the distinction between Category 3 and Category 1?

**MS. BONN:**  It's similar.  Some of the documents in Category 3 may include a lawyer in it, but our sense from the description is it might be something like a PowerPoint or a Wiki document where perhaps there might be something within it that references a lawyer and it might be appropriate to redact, but what we're not seeing is some sort of description that suggests that the entire document is privileged and should have been withheld.

So I think that's -- it's maybe a fine distinction between those two categories, but some of these do appear to have some indication that there is a lawyer whose advice may have been included, but it didn't strike us that the entire document was privileged.

1    THE COURT:  Okay.  All right.

2       Ms. Trebicka, I had heard reference in our previous

3    discussions and in the submission that -- I know there were

4    some letters back and forth and there was some concern about

5    getting responses to letters, so bring me up to date as to what

6    Google has done in response to the issues that plaintiffs

7    raised both in July and in August.

8       MS. TREBICKA:  Your Honor, we have responded to both

9    letters that plaintiffs have served on us, propounded on us,

10   and for the second letter, there was actually -- the letter

11   that plaintiffs sent in September, there was a court order.

12   You asked us to respond by a date certain, and we did.

13      THE COURT:  Right.

14      MS. TREBICKA:  What we did is we essentially responded

15   to plaintiffs' letter point by point.  There were about 30

16   documents in plaintiffs' September letter that identified

17   specific -- what plaintiff saw as deficiencies or challenges

18   with a reasoned basis for the challenge or at least so we

19   understood.  We went back.  We've reviewed those documents.  In

20   a minority -- in a handful of cases, we actually agreed with

21   plaintiffs and redacted instead of withheld and produced those

22   back to plaintiffs.

23      And we also responded to these six categories that

24   plaintiffs have as far as we -- as we understood their

25   challenges, we responded and provided our own legal analysis

1    and basis for why we thought that our privilege log was proper.

2    And we did that, I believe, by October 11th.

3            THE COURT:  Okay.

4            MS. TREBICKA:  And I think -- I can say here what we

5    also put in the submission, which is we're happy to, as a

6    compromise or a way out of this situation, to go back and

7    review the 297 documents that plaintiffs have string cited in

8    their September letter, and if we see a way to redact instead

9    of withhold or even if we agree with a point that plaintiffs

10   are making now about something perhaps not deserving the

11   privilege protection after all, you know, we're happy to make

12   those calls and produce those in short order, but we think

13   that's probably something that could be a reasonable outcome

14   out of this hearing.

15           THE COURT:  Uh-huh.  Uh-huh.  And then I think

16   Google's proposal was also, at least in the submission -- was a

17   re-review of documents previously identified and an agreement

18   to review additional documents going forward?

19           MS. TREBICKA:  Correct.  So as Ms. Bonn stated, our

20   third privilege log is due today.  It will be served at some

21   point today.  And it will be larger than the second one.  And

22   we had suggested that plaintiffs identify, I believe, 200,

23   although Ms. Jenkins may have to correct me on the number --

24           THE COURT:  It says 300 in the submission.

25           MS. TREBICKA:  300.  Okay.  Well, they get 100 in

1   addition.  So 300 entries from this October 27th privilege log

2   that we will re-review with their challenges in hand, and in

3   good faith -- I think we all agree on the legal standard that

4   should apply here, and in good faith we will re-review and

5   provide them either with documents that fall off the priv log

6   or redact certain documents that we think we can.

7           **THE COURT:**  Uh-huh.  Uh-huh.  All right.  Thank you.

8   Okay.

9       Ms. Bonn, Google's proposal to go back, and if I modify

10  that and you can pick 300 documents from the productions that

11  are covered by the July and August dates, whether or not they

12  were the 297 in the letter, as well as some number to be

13  selected and reviewed in the upcoming production or the -- I

14  guess today's privilege log would be a better way to put it --

15  is that -- why is that not a reasonable approach at this point

16  or --

17          **MS. BONN:**  I guess to take it in two parts.  With

18  respect to the logs that have previously been served, I think

19  in combination, we've identified like around 450 documents

20  total that we have questions about, which is less than 10

21  percent of their log entries.  I would hope that those

22  questions could be addressed by Google looking at those

23  documents.  Frankly, I'm not sure why months later they haven't

24  looked at the documents.

25      I thought -- I think our perception after the last hearing

is that is what they were ordered to do in terms of responding to our letter, so it's a little bit disappointing that it's taken months to even look at a couple hundred documents.

In terms of the log that's being served today, it's a little bit hard for us to agree to a number when we don't know how big the log is, and so part of why we, in the meet-and-confer, said we don't feel comfortable agreeing to a cap that we can only challenge 300 documents is -- I mean, is that just -- that might pale in comparison to the number of entries on a log that raise major questions. And I don't think there should be a presumption that a party can log documents knowing that only a tiny fraction will ever be the subject of any inquiry.

So it might help to get a sense of how large the log is that is going to be served today, and then maybe we could have a process where, I think in very short order, plaintiffs could review it and identify documents where they have concerns similar to the other ones. Based on our experience with the logs we've received so far, you know, we've had questions of something like 10 percent of the documents on the log. So I think that's a -- because that was consistent across both of the prior logs, my hope or my assumption is that's probably what we're going to deal with on the next log, but it's difficult to pin down a number without knowing how big the log is.

1    **THE COURT:**  Sure.  And it's difficult until you

2   actually see the log, in any event.

3    Ms. Trebicka or Ms. Jenkins, how many entries are on

4   today's log?

5    **MS. TREBICKA:**  Your Honor, I don't know specifically

6   how many entries are on the log, although I can say that the

7   log is almost complete since it's being served today so there

8   will be no perverse incentives to just throw documents on the

9   log.

10    **THE COURT:**  No, no, no.  Can you email someone and

11   give me a reasonable estimate, a best educated estimate?

12    **MS. TREBICKA:**  Sure.  Sure.  Yes, of course,

13   Your Honor.  We'll try to do that during this hearing.

14    But I -- but just -- I would like to say, though, that

15   the -- there should be a presumption, because Ms. Bonn used the

16   word presum -- there should be a presumption that Google is

17   doing the right thing, and I think that is already reflected in

18   the decision that we just got earlier in this hearing today.

19   We are actually trying and doing the right thing.

20    **THE COURT:**  I understand.

21    **MS. TREBICKA:**  So -- yeah.

22    And I believe Ms. Jenkins would like to address something

23   as well.

24    **THE COURT:**  Sure.

25    Ms. Jenkins.

1      **MS. JENKINS:**  Yes.  So I wanted to address about the

2  initial letter, our initial log back in August which Ms. Bonn

3  was just referencing.

4      **THE COURT:**  Wait.  Wait.  And I know we're talking

5  about logs and letters.

6      **MS. JENKINS:**  Yes.

7      **THE COURT:**  And letters follow logs, so I'm thinking

8  in terms of July log, August log, October log.

9      **MS. JENKINS:**  All right.

10      **THE COURT:**  I know it doesn't match up with letters.

11      **MS. JENKINS:**  So our for July log -- and plaintiffs

12  identified about 144, 145 documents for us to review -- we did

13  go back and review every one of those documents.  We did then

14  find a few where we thought that we could produce them either

15  in redacted form or a couple where we thought that there was an

16  error and we produced it in full.  We've already performed that

17  exercise.  So -- and we didn't understand after doing that that

18  there were still disputes until this filing just last week.  We

19  thought that what we had done was sufficient.

20      And then with respect to the next log, the August log,

21  we -- one of the issues that I just wanted to address about

22  that and potentially the next log coming today, which I can

23  tell you has somewhere around 10,000 entries -- I could be off

24  even by hundreds or --

25      **THE COURT:**  I'll take 10,000.  That doesn't surprise

1     me.

2             MS. JENKINS:  So that's what we're expecting.  With

3     respect to that log, the issue that we're having with the

4     categories is plaintiffs, when they have provided these

5     categories to us in letters and they give us hundreds of

6     documents so they will say, you know, one category is the

7     attorney was on a cc line and there are other people on the

8     document, and those are not necessarily privileged.  While that

9     is correct, we totally recognize that you cannot just put an

10    attorney on a cc line and then call it privileged, we agree

11    with that, we don't think that that's a proper basis for us to

12    go back and need to re-review all documents where the attorney

13    is just on a cc line and there are other people who are on the

14    "to" and "from" line.

15        And that's -- so looking forward to the log with 10,000

16    entries, we think it requires more than them, you know,

17    performing some kind of algorithm on our spreadsheet to just

18    find all of the logs where there's no -- where the attorney is

19    there but there is a certain number of other people there or

20    where an attorney is not present, the name of an attorney is

21    not present, to sort our log by that and then just say here are

22    the, you know, hundreds of ones where there is no attorney,

23    here are the hundreds of ones where there is an attorney but

24    there is also at least five other people, and then put those in

25    categories for us to review doesn't seem proper.

1        So we'd like a little bit of guidance on that as well.

2            **THE COURT:**   Okay.   Well, and I understood Google's

3    proposal as a way to address that in part, which is select a

4    certain number of documents to review, for whatever reason, and

5    we will re-review those with an eye towards is this, in fact,

6    tied to a privileged -- is it a privileged communication, is it

7    transmission of a privileged communication, is it -- you know,

8    a little more -- just to be sure that it wasn't -- I mean,

9    they're running algorithms, you're running algorithms.   Many a

10   document production, the reviewers get a list of attorneys, and

11   if that name is in the "to/from" or "cc," then the document

12   goes in the privilege pile.

13       I mean, that's -- we're dealing with large productions and

14   not a lot of time and that's not an unreasonable way to do it.

15   And by the same token, it's not unreasonable in certain

16   circumstances to consider a finer, more close check, if not of

17   every document, at least a QC check, if you will, of some

18   sampling of the various assertions of privilege.   And I don't

19   think that that's inappropriate in this case.

20       I did see Google's representation about the work it did in

21   terms of going back and reviewing, and, no, not all the

22   documents get addressed, but obviously there was a review in

23   response to the issues raised in the July privilege log.

24       I think the proposal for plaintiffs to select 300

25   documents from the August log, whether they are the documents

they already identified or some other, and Google has offered
to re-review those, that is, re-review 300 from the -- I mean,
I'm not going to close it off.  It can be from the July or
August privilege log.  That's I think a good offer and a
sensible way to proceed.

    And then to allow plaintiffs to select a number, some
number of documents that are in today's privilege log which
Google will review, and, you know, maybe it's -- I agree.  I
think both sides are struggling, okay, what is the right
number, and to a certain extent, the privilege log has to be in
hand and have a chance to take a careful look at that.

    So I think it makes sense given the -- given the estimate,
albeit rough estimate but good enough -- that's what I asked
for -- that the log will be 10,000 documents.  Plaintiffs can
review that, and if they want a re-review of -- let's see.
Google's offer is 300.  I think -- I think that that is -- I
think that's a good place to start, to be candid.  And I know
it's not 10 percent, but I think that plaintiffs, you know,
picking some documents out of each of the categories of concern
and Google going back and taking a more careful look at those
should -- should help to build confidence in the good-faith
effort of counsel on both sides.

    So I think that that's a reasonable place to start, and
if -- with the log in hand if plaintiffs feel that they need
another -- that the number of documents to be reviewed --

1   re-reviewed by Google should be larger, you can ask for an

2   increase in that.  But I think the Google proposal of review

3   three from the past logs -- 300 from the past logs, 300 going

4   forward in this production or on today's log seems reasonable.

5       Mr. Schapiro, your hand is up.

6           **MR. SCHAPIRO:**  Yes.  Thank you, Your Honor.

7       That makes perfect sense to us, and I just wanted to say,

8   as we think about how we will go forward, what will happen in

9   the future when we continue to have privilege logs with

10  thousands of entries, as simple as it might sound to re-review

11  300 --

12          **THE COURT:**  I know.

13          **MR. SCHAPIRO:**  -- documents, if you do 10 documents an

14  hour, which seems about right if people are trying to be

15  careful about this and make sure you are getting it right,

16  that's 30 hours.  It takes an attorney out for almost a week.

17      So we're happy to do that, but my concern in the back of

18  my mind -- and we'll cross this bridge when we come to it, I

19  assume, no need to decide today -- is when we are getting to

20  the point where we have 10,000 or 12,000 entries, there

21  shouldn't just be some default understanding that they can pick

22  10 percent of them on a hunch and we have to go back and take

23  an attorney out for a week to review them.

24          **THE COURT:**  I understand.  I understand.  I think

25  that -- again, some of the concerns raised by plaintiffs,

1  particularly around -- I'm really focused on the first category

2  and to the extent the first and third overlap, just because

3  it's very hard to -- to grasp, it's hard to demonstrate -- it's

4  very hard to tell from a privilege log what the basis for

5  privilege is.  And there -- and it reflects, frankly, the

6  Court's concern that I see in cases generally, and I'm not --

7  I'm not casting aspersions in this case in particular, but

8  where counsel sometimes -- you know, a party starts to -- can't

9  help but to invoke a subject matter privilege under the name of

10  attorney-client.  So it -- you know, that is always a concern

11  from the Court, and I think that Category 1, perhaps in part

12  Category 3, captures that, and so it's worth being sure there's

13  some careful review.

14      I'm well aware of the manpower that's involved and of the

15  other demands on manpower on both sides in this case,

16  particularly as we turn the corner towards the close of

17  discovery.

18      But I think the concerns raised are valid, and I think a

19  more careful look -- and, you know, I want to know if

20  plaintiffs come back because you would like a larger portion of

21  a production reviewed, you can -- you can make a -- state the

22  reasons clearly as to what that's based on and, you know, from

23  the previous review, how many were redone.  Sometimes that's

24  indicative of a need to redo, but I also appreciate it's still

25  under, you know -- it's still Google doing their review.  We're

1   still in a good-faith acceptance of counsel's exercise of their

2   obligations.

3       No question it's a frustrating exercise.  It can be

4   frustrating on both sides.  But if and when there's a specific

5   issue around a specific set of documents that I believe I need

6   to see to make a determination, then we'll address in camera

7   review, and that may be in the future.  Obviously we had to

8   address it previously, and I did think that that was an

9   appropriate one to come to the Court.

10      So I think -- I think the parties have a pretty good sense

11  of how we need to move forward.  I'm not saying it's going --

12  I'm not saying it's entirely clear, but I think we have a -- at

13  least the direction.

14      Ms. Trebicka, you have been very patient.  Yes.

15      **MS. TREBICKA:**  Of course, Your Honor.  Thank you for

16  your guidance.

17      I would like to raise that in accordance with your prior

18  order, we are to respond to privilege challenges within three

19  days, and if it is indeed that we are having to re-review 600

20  documents, 300 plus 300, we would like to ask for a little bit

21  more time so that it can be a thoughtful exercise in

22  conjunction with our client and also provide real fruitful

23  results.  Would it be possible to have -- I invite Ms. Jenkins

24  to jump in here -- but at least a week for each 300?

25      **THE COURT:**  Well, I think that order -- and, Ms. Bonn,

1    I will give you a chance to remind me as well -- was really

2    directed at when you get -- when you get a letter from the

3    other side that says there are issues and concerns, you can't

4    sit on that.  Neither side can.  You need to respond.  I wasn't

5    thinking that 300 documents had to be reviewed in three days,

6    at least as to the going-forward part.

7        So let me hear from Ms. Bonn.

8        **MS. BONN:**  Yeah.  I had a similar question,

9    Your Honor, which is in terms of timing and prioritization, we

10   are starting to notice depositions now.  We are expecting that

11   depositions are going to start in November.  I think it

12   obviously makes sense to try to prioritize any re-review

13   keeping in mind who the upcoming deponents are and which

14   documents they are on because I don't think anyone wants to get

15   into a situation where after a deposition has happened, we're

16   dealing with privilege questions related to that deponent after

17   the fact.  So --

18       **THE COURT:**  Previously privileged --

19       **MS. BONN:**  Correct.  And so my suggestion is that

20   perhaps we can work out some sort of timing that prioritizes

21   upcoming deponents and that ensures that any re-review for

22   documents that plaintiffs have challenged on which a particular

23   deponent is copied is done sufficiently in advance of the

24   deposition that we don't run into some problem regarding

25   deponents.

1          **THE COURT:**  Yes.

2          **MS. BONN:**  That would be one suggestion.

3          **THE COURT:**  Well, and I think that that is -- you

4     know, that's sensible to both sides because neither side wants

5     to review and decide that a privilege with Ms. Jones' name on

6     it is no longer -- that a document is no longer privileged

7     after Ms. Jones has been deposed because if that realization

8     comes post deposition, then she's likely to be deposed again.

9          So it seems to be in both sides' interest to coordinate

10    that effort, and if you have enough information -- it sounds

11    like, Ms. Bonn, you're assuming, "Well, I have these documents.

12    Ms. Jones appears on them.  She's not a lawyer.  But they're

13    currently privileged, so I'm going to put those in my pile of

14    300, and I'd like those to be the first to get reviewed because

15    her deposition is on date X, so we would like those reviewed

16    some number -- that review complete some number of days in

17    advance of the deposition."  Right?

18         **MS. BONN:**  That's what I'm contemplating, Your Honor.

19    I think it makes sense for us to try to prioritize the

20    documents in that way.

21         **THE COURT:**  Yes.  And I think that I would certainly

22    expect the parties to work that out.  And, again, you may need

23    to see the privilege log to really appreciate what that is.

24         But, Ms. Trebicka, that certainly sounds reasonable.

25         **MS. TREBICKA:**  No objection, Your Honor.  Sounds very

1    reasonable.

2            **THE COURT:**  Yeah.  I think it's in both sides' equal

3    interest to prioritize those documents.

4            **MS. BONN:**  Your Honor, I had one other question for

5    clarification.

6        I think part of -- part of what maybe has caused some

7    issues on the July privilege log and we're hearing now that

8    Google did -- says that they did re-review the documents we

9    identified on the July log, but what came out of that is I

10   think nine documents were de-designated, but it didn't appear

11   to me that with respect to the others, that the privilege log

12   entries were modified or enhanced to make more clear to us what

13   the basis is.  And so a re-review is certainly helpful, but

14   what would be helpful, especially for documents in Categories 1

15   and 3, is that if in their re-review Google says, "No, we're

16   seeing this is really privileged and we can put more meat on

17   the bone on the privilege log," to say, "Hey, this is Lawyer

18   A's advice that is specifically referenced here" or something

19   that gives us more information in order to determine that, yes,

20   this is a proper privilege assertion.  I think that is really

21   almost -- I want to say it's of great importance along with the

22   re-review, is giving us some information to say, okay, yes, and

23   now we can see -- now we understand that, yes, you have

24   provided more information on this document.  We can tell you've

25   made that privilege assertion.  We can move on from it.

1     But when we just get, "We've reviewed and here's 10

2     documents" and nothing changes on the log with respect to the

3     other documents, we are kind of left in the same place going

4     how do we assess that?

5          **THE COURT:**  Well, you assess it by you've identified

6     it and you've asked Google to re-review, and, again, it brings

7     us quickly back to reliance on counsel and counsel fulfilling

8     their obligations to the Court.

9          My hesitancy in ordering more is the information that's

10    set forth in -- sort of the standard privilege log

11    information -- it's in my standing order, it's in several of

12    the judges' -- is obviously designed to give enough

13    information, obviously, without revealing any privileged

14    information, and, again, some of those documents may identify a

15    specific lawyer or a specific attorney-client communication,

16    "As we heard from legal in today's meeting" kind of thing, but

17    some may not, but they are still privileged.  Again, we very

18    quickly get into the abstract, and I think that as long as the

19    entries touch all of the bases that are required in the

20    standing order, that that -- that is sufficient, and I

21    appreciate it's frustrating, but I am giving the plaintiffs the

22    opportunity to test that.  Certainly with the past 300, that

23    looks like that would be all of the documents from the August

24    log.  Again, you can mix and match between July and August.

25    I'm not going to hold you to it, but that should give you

that -- that should give you -- I'm trying to not use the word "comfort" because it doesn't fit in this context, but give you some confidence in the integrity of the review.

I think that it is unusual to require counsel to go back without other specific showings, but here we are working with a lot of documents, and, again, it does speak to a particular concern that the Court has that unwittingly -- again, not by bad faith by parties or counsel, but sometimes just in the massive exercise of privilege, it can -- reviewers can slip into a subject matter review, and I do want to be sure that that's not happening and I want Google to be sure that that's not happening because that would not be appropriate.

So I think that the parties -- we essentially all adopt Google's proposal for going forward as to this next production. I will make it clear that -- that plaintiffs can, if they feel like even just being careful and sampling and looking at Category 1 type documents, they can't -- 300 is not possibly enough, you can certainly make a submission for more.

I will try to turn to these inquiries promptly because I'm aware of the deposition issues, and I think, though, that I want counsel to meet and confer and come to an agreement in terms of prioritizing and getting documents produced.

My previous order in terms of responding to issues of privilege remain, but I thought that Google's proposal had a timeline, if I'm reading it correctly, for review.  Google will

1    review up to 300 documents.  Again, I'm reading from the

2    submission of plaintiffs' choosing in the -- off of the

3    October 27 log, and plaintiffs can seek intervention as to any

4    remaining disputes one week after Google's review is complete.

5        And I couldn't -- it wasn't quite clear to me -- Google

6    is -- will re-review the documents within a week of

7    identification, if I'm -- if I understand the proposal, which I

8    think is reasonable.  Review them -- review them within a week.

9    Plaintiffs get a look at that, and you can deal with that, and

10   if you need to come back to me, you can.

11       I think that, again, going forward with the productions,

12   plaintiffs can seek re-review of some number.  I think I've

13   given you some guidance.  And if the parties are going to fight

14   over numbers of documents that are re-reviewed, I'll make that

15   decision very quickly.  You can just make a submission and tell

16   me how many you've produced and what you believe the issue is

17   and how many you want re-reviewed, and I'm sure you'll each

18   have competing numbers, and I'll make that call.  I hope it

19   doesn't come to that.  I hope you're able to work it out from

20   where we are going forward.

21            **MS. TREBICKA:**  Your Honor, may I clarify something?

22            **THE COURT:**  Uh-huh.

23            **MS. TREBICKA:**  So what we had proposed is a re-review

24   of the 300 documents of which we were already aware from the

25   August log, and then a re-review of an additional 300 from the

1    October log, and that's what we had intended to do in a week.

2    However, I understand Your Honor's order to be slightly

3    different today, which is for the August log, there's a 300 --

4    a set of 300 documents which may not have been made known to us

5    before, in which case we would need additional time, more than

6    this one week we were contemplating.

7         **THE COURT:**  Well, let's see how many documents you

8    didn't already know of.

9         **MS. TREBICKA:**  That's fine.

10        **MS. BONN:**  Just to clarify, Your Honor.  I understood

11   the 300 for the prior logs to be not only the August log but

12   the July log, correct?  And you said we can mix and match

13   between the logs, but the number --

14        **THE COURT:**  That's fine.

15        **MS. BONN:**  -- is 300.

16        **THE COURT:**  That's fine.  The number is 300.

17       Again, I'm just giving you an opportunity to if you want

18   to make some adjustments, and perhaps you've learned more from

19   what was turned over and you don't -- maybe you don't need all

20   of a certain category or you want -- again, you can do that.

21   And I would expect that that's done in a reasonable time, and

22   if it has to be some small amount of time more than a week, you

23   know, again, I expect the parties to work that out.

24        **MS. TREBICKA:**  We will work it out.  Thank you,

25   Your Honor.

1    **THE COURT:**  If you can't, you give me a submission

2    with the two proposals side by side, and I'll -- you know, as

3    you have seen as often is the case, nobody will be happy if I

4    pick it.

5    Okay.  And then -- so we've dealt with the past logs.

6    We've dealt with today's log.  I have indicated that we'll

7    continue in this fashion going forward.  I'm not going to set

8    numbers.  And I would expect a learning curve that, you know,

9    Google's work and review remains as diligent as reflected in

10   the submission.

11   I think plaintiffs will also have a bit of a -- you know,

12   a learning curve and all of that should work together to

13   diminish the disputes and concerns, but you can get these

14   before me and I'll turn to them promptly.

15   All right.  Okay.  I'll issue a short order, but I think

16   everyone should be quite clear on how we proceed.

17   Anything else from plaintiffs for today, Ms. Bonn?

18   **MS. BONN:**  No.  Thank you, Your Honor.  We appreciate

19   your guidance and your time.  Thank you.

20   **THE COURT:**  Certainly.

21   And for the defendants today, Mr. Schapiro?

22   **MR. SCHAPIRO:**  Your Honor, one thing.  I don't know if

23   this is the right forum, but since we're all here together, the

24   topic of depositions came up when Ms. Bonn was speaking, and

25   we're all very cognizant of the calendar.  We have been trying

1   to get dates for depositions of the named plaintiffs in Brown,

2   and my understanding is that the plaintiffs' position is they

3   are not going to give us dates or put up their deponents until

4   they get more documents for us -- from us or until they --

5   because there is still some pending disputes, I guess some of

6   the ones with the Special Master.

7       We really feel like we need dates here.  We will not -- we

8   have made clear we're not going to ask any plaintiff about any

9   document that we have not already provided to the other side.

10  We had a similar -- not dispute, but we had a similar standoff

11  for a while with Calhoun.  We went ahead.  We have taken, as of

12  Monday, I think, the depositions of every named plaintiff in

13  Calhoun with the current progress of discovery being as it is.

14      And so we're seeking some guidance, or maybe plaintiffs

15  will tell me if I misunderstood them.  We would really like to

16  get dates for the named plaintiffs on the calendar so it's not

17  just we who are putting up deponents but we are also having a

18  chance to take their depositions.

19          **THE COURT:**  Understood.  I know I had this issue

20  before, at least as to a deponent or a named plaintiff and

21  maybe it was in Calhoun, and I did order in that instance that

22  it go forward.

23      In fairness to plaintiffs, let me ask, Ms. Bonn or

24  Mr. Mao, if you are prepared to address this issue at this

25  time, or do you -- I'll put it on in short order, but in all

 1   fairness, Mr. Schapiro, if it's not in the submission before

 2   me, I'm not going to go discovery by surprise, but sometimes

 3   the parties are ready, and it's just as well to get things

 4   taken care of.

 5       Ms. Bonn.

 6          **MS. BONN:**  I wasn't, Your Honor, and I apologize

 7   because there is someone on our team who does deal with our

 8   named plaintiffs who is not on this call.

 9          **THE COURT:**  Okay.

10          **MS. BONN:**  My understanding is there were some

11   discussions about this issue.  I think that happened before the

12   ruling in Calhoun.

13       My suggestion is maybe offline, Andy, we can check in and

14   try and confer and see if there is some agreement to be

15   reached, but I'm sorry that I'm not more up to speed on that

16   issue to address it with the Court at the moment.

17          **THE COURT:**  Okay.  Well, I know, again, everyone is

18   quite busy.  We have Special Master issues, we have this issue,

19   we have productions, we have privilege logs.  But if this is an

20   issue, let's get it before me this week.  Okay.  So let's meet

21   and confer promptly and get it before me, if needed.

22       Mr. Schapiro.

23          **MR. SCHAPIRO:**  Yes.  Hopefully it won't be needed.

24       Amanda, I will reach out, and you can point us in the

25   right direction.  We'll talk to whoever we should talk to, and

1   hopefully we can get it all done.

2          **THE COURT:**  Yeah.  Again, I will just say I recall the

3   issue was before me, and I did issue an order, so -- in

4   Calhoun.

5       Okay.  Anything else for today's proceedings?

6          **MS. BONN:**  Not from plaintiffs, Your Honor, thank you.

7          **THE COURT:**  All right.  Thank you all very much.

8   Appreciate it.  Have a good day.

9              (Proceedings adjourned at 11:10 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Monday, November 1, 2021

8

9    *Pamela Batalo Hebel*

10   _____
     Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11   U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25