# EXHIBIT A
# Redacted Version of Document Sought to be Sealed

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4
       BROWN, ET AL,                )  CV-20-3664-LHK
 5                                   )
                     PLAINTIFF,      )  SAN JOSE, CALIFORNIA
 6                                   )
              VS.                    )  NOVEMBER 4, 2021
 7                                   )
       GOOGLE LLC, ET AL,            )  PAGES 1-53
 8                                   )
                     DEFENDANT.      )
 9                                   )
       _____)
10                 TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE SUSAN VAN KEULEN
                  UNITED STATES MAGISTRATE JUDGE
12

13                 A P P E A R A N C E S

14

15     FOR THE PLAINTIFF:      BY:  AMANDA K. BONN
                               SUSMAN GODFREY LLP
16                             1900 AVENUE OF THE STARS
                               SUITE 1400
17                             LOS ANGELES, CA 90067

18

19     FOR THE DEFENDANT:      BY:  ANDREW H. SCHAPIRO
                               QUINN EMANUEL URQUHART AND
20                             SULLIVAN, LLP
                               191 N. UPPER WACKER DR., STE 2700
21                             CHICAGO, IL 60606

22          APPEARANCES CONTINUED ON THE NEXT PAGE

23     OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1        APPEARANCES CONTINUED:

2        FOR THE PLAINTIFF:      BY:  RYAN MCGEE
                                 MORGAN AND MORGAN
3                                COMPLEX LITIGATION GROUP
                                 201 N. FRANKLIN STREET, 7TH FLOOR
4                                TAMPA, FL 33602

5
                                 BY:  HSIAO C. MAO
6        FOR THE PLAINTIFF:           BEKO REBLITZ-RICHARDSON
                                 BOIES SCHILLER FLEXNER LLP
7                                44 MONTGOMERY STREET, 41ST FLOOR
                                 SAN FRANCISCO, CA 94104
8
9        FOR THE DEFENDANT:      BY:  JOSEF TEBOHO ANSORGE
                                 QUINN EMANUEL URQUHART & SULLIVAN
10                               51 MADISON AVENUE, 22ND FLOOR
                                 NEW YORK, NY 10010
11
12       FOR THE PLAINTIFF:      BY:  STEPHEN ANDREW BROOME
                                      VIOLA TREBICKA
13                               QUINN EMANUEL URQUHART & SULLIVAN
                                 865 S. FIGUEROA ST, 10TH FLOOR
14                               LOS ANGELES, CA 90017

15

16

17

18

19

20

21

22

23

24

25
```

```
1            SAN JOSE, CALIFORNIA              NOVEMBER 4, 2021

2                       P R O C E E D I N G S

3            (COURT CONVENED AT 10:17 A.M.)

4            (THE FOLLOWING PROCEEDINGS ARE UNDER SEAL.)

5            ///

6                THE CLERK:  CALLING CASE 20-CV-3664.  BROWN, ET AL.

7        VERSUS GOOGLE LLC, ET AL., AND 20-CV-5146, CALHOUN, ET AL.

8        VERSUS GOOGLE, LLC.

9                COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD,

10       BEGINNING WITH BROWN.

11               MS. BONN:  GOOD MORNING, YOUR HONOR.

12           AMANDA BONN WITH SUSMAN GODFREY ON BEHALF OF THE BROWN

13       PLAINTIFFS.

14               THE COURT:  GOOD MORNING.

15               MR. MAO:  GOOD MORNING, YOUR HONOR.

16           MARK MAO ON BEHALF OF PLAINTIFFS.

17               MR. REBLITZ-RICHARDSON:  GOOD MORNING, YOUR HONOR.

18           BEKO REBLITZ-RICHARDSON ON BEHALF OF THE PLAINTIFF.

19               THE COURT:  GOOD MORNING.

20               MR. MCGEE:  GOOD MORNING, YOUR HONOR.

21           RYAN MCGEE ON BEHALF OF THE PLAINTIFFS.

22               THE COURT:  GOOD MORNING.

23               MR. SHAPIRO:  GOOD MORNING, YOUR HONOR.

24           ANDREW SHAPIRO ON BEHALF OF GOOGLE.

25               MR. ANSORG:  GOOD MORNING, YOUR HONOR.
```

```
 1              JOSEF ANSORG, ALSO ON BEHALF OF GOOGLE.

 2                 MR. BROOME:  GOOD MORNING, YOUR HONOR.

 3              STEPHEN BROOME, ALSO FOR GOOGLE.

 4                 MS. TREBICKA:  GOOD MORNING, YOUR HONOR.

 5              VIOLA TREBICKA, ALSO ON BEHALF OF GOOGLE.

 6                 THE COURT:  GOOD MORNING.

 7              GOOD MORNING.  IT'S VERY NICE TO SEE EVERYONE IN PERSON.

 8     WE'VE HAD A LOT OF -- WE HAVE SPENT A LOT OF TIME TOGETHER OVER

 9     THE LAST NINE MONTHS, BUT ALWAYS BY VIDEO.

10              AS I SAID, WE ARE TRANSITIONING TO MORE LIVE PROCEEDINGS,

11     SO THANK YOU FOR THE EFFORT TO BE HERE IN PERSON.  I KNOW IT'S

12     NOT AS CONVENIENT AS ZOOM, BUT CERTAINLY FOR CERTAIN HEARINGS,

13     IT'S VERY HELPFUL TO THE COURT.

14              I ALSO INVITED THE PARTIES TO PREPARE DEMONSTRATIVES,

15     WHICH I UNDERSTAND WE HAVE, AT LEAST IN THE BROWN MATTER, AND

16     PUTTING THAT ON TOP OF THE NEW AV EQUIPMENT, I'VE CHALLENGED

17     THE SYSTEM TODAY.  SO THANK YOU FOR YOUR PATIENCE, WE ARE

18     GETTING STARTED A LITTLE BIT LATE, BUT WE WILL GET UNDERWAY.

19              WE DO HAVE THE SPECIAL MASTER, AND SPECIAL MASTER BRUSH, I

20     WILL HAVE YOU MAKE AN APPEARANCE FOR THE RECORD, PLEASE.

21                 MR. BRUSH:  YES.

22              DOUGLAS BRUSH, SPECIAL MASTER, JOINED BY TIM SCHMIDT.

23                 THE COURT:  THANK YOU.

24              AND THANK YOU BOTH FOR JOINING BY ZOOM TODAY.

25                 MR. BRUSH:  IT'S A PLEASURE.
```

1          THE COURT:  ALL RIGHT.  WE ARE ON FOR A HEARING ON

2     THE PARTIES' OBJECTIONS TO THE REPORT AND RECOMMENDATION BY THE

3     SPECIAL MASTER, THE REPORT AND RECOMMENDATION FOLLOWING SEVERAL

4     MONTHS OF PROCEEDINGS BEFORE THE SPECIAL MASTER RELATED TO

5     SPECIFIC DISCOVERY ISSUES THAT WERE REFERRED TO HIM.

6          AND I OBVIOUSLY KEPT IN TOUCH WITH THE SPECIAL MASTER, AS

7     I DID WITH THE PARTIES AS WELL, AND KEPT AN EYE ON THE

8     PROGRESSION, AND I WAS PLEASED TO SEE THAT THERE WAS SOME

9     PROGRESS THROUGH THAT PROCESS AND AS WE MOVE TOWARDS

10    IDENTIFICATION AND PRODUCTION OF CERTAIN DOCUMENTS.

11          I SEE THE ORDER NOW BEFORE ME, THAT IS THE RECOMMENDED

12    ORDER FROM THE SPECIAL MASTER, AND A METHODOLOGY ON HOW TO NOW,

13    GIVEN ALL THE WORK THE PARTIES HAVE DONE, THE AREAS OF

14    CONTINUED DISAGREEMENT, HOW TO ADDRESS AND TACKLE THOSE AND

15    REALLY BRING THESE ISSUES TO A CLOSE.

16          AND I READ THROUGH THE ORDER WITH CARE, AND THEN I DID

17    HAVE AN OPPORTUNITY TO DISCUSS IT WITH SPECIAL MASTER BRUSH, I

18    WANTED TO BE SURE I UNDERSTOOD THE COMPONENTS, AND THEN I

19    TURNED TO THE PARTIES' OBJECTIONS AND CONCERNS AND I WENT

20    THROUGH THOSE WITH CARE AS WELL.

21          I ALSO WENT BACK AND LOOKED AT THE PREVIOUS SUBMISSIONS

22    FROM THE PARTIES BEFORE THE COURT.  ON THESE ISSUES, THESE AND

23    RELATED ISSUES, AS WELL AS MY ORDERS TO GIVE, AGAIN, SPECIAL

24    CONSIDERATION, TO BE SURE I HAD THE WHOLE CONTEXT, MY

25    RECOLLECTION WAS REFRESHED AS TO WHERE WE HAD BEEN, AND TO THE

1    ISSUES THAT REMAIN.

2         IN REVIEWING THE OBJECTIONS ON BOTH SIDES, I DON'T SEE

3    ARGUMENTS THAT I HAVE NOT SEEN BEFORE, EITHER DIRECTLY BEFORE

4    ME OR BEFORE THE SPECIAL MASTER, EITHER THAT HAVE COME UP

5    EITHER IN BRIEFING OR AT THE HEARING.  AND I THINK I HAVE A

6    PRETTY GOOD IDEA AS TO WHAT THE PARTIES' CONCERNS ARE, AND I

7    LOOK FORWARD TO THE DISCUSSION HERE TODAY.

8         A WORD ABOUT MY PREVIOUS ORDERS, WHICH BOTH SIDES, ALL

9    PARTIES REFER TO FROM TIME TO TIME IN THEIR OBJECTIONS, WHICH

10   IS THIS:  TO THE EXTENT MY ORDERS PREDATE REFERRAL TO THE

11   SPECIAL MASTER, I VIEW THOSE AS A STARTING POINT, AND THEN I

12   REFERRED THE MATTER TO THE SPECIAL MASTER, EXPECTING THE

13   APPLICATION OF HIS EXPERTISE AND HIS WORK AND TIME WITH YOU

14   ALL, TO REALLY HONE AND FINE TUNE MY ORDER AS HIS EXPERTISE

15   DETERMINES, TO FRANKLY, BETTER HONE IT AND BRING IT WITHIN ANY

16   PARAMETERS WITH REGARDS TO WHAT IS RELEVANT AND PROPORTIONAL.

17        I SEE THE PROCESS ON A CONTINUUM, IF YOU WILL.  AND THAT'S

18   HOW I LOOKED AT THE CONTEXT OF PROCEEDINGS, THE SPECIAL

19   MASTER'S RECOMMENDATION AND THE PARTIES' OBJECTIONS TO THOSE.

20        OKAY.  I THINK IT'S EVIDENT FROM THE SPECIAL MASTER'S

21   REPORT AND RECOMMENDATION, THAT THE PARTIES HAVE BEEN GIVEN

22   LOTS OF OPPORTUNITY TO NEGOTIATE DISCOVERY ISSUES, REACH

23   COMPROMISES, WHERE YOU CAN'T REACH A COMPROMISE, TO ASK TO BE

24   HEARD TO TRY TO DEVELOP OTHER WAYS AROUND WHATEVER THE IMPASSE

25   IS, AND THAT PROCESS CONTINUES TODAY.

1          AND THE RESULT OF TODAY'S PROCEEDINGS WILL BE A COURT

2     ORDER THAT WILL, YOU KNOW, I EITHER ADOPT THE SPECIAL MASTER

3     ORDER, ADOPT WITH MODIFICATIONS, BUT IT WILL LEAD TO A CLOSE OF

4     DISCOVERY ON THESE ISSUES.  WE ARE DRIVING THIS TO A

5     CONCLUSION.

6          YOU ALL HAVE YOUR CASE CALENDARS, YOU ALL HAVE OTHER

7     BRIEFING SCHEDULES, SO THAT'S THE OBJECTIVE AND THAT'S WHERE WE

8     ARE HEADED, AND WHAT WILL COME OUT OF THIS PROCEEDING WILL BE A

9     DISCOVERY ORDER FROM THE COURT.

10          AND ALL I KNOW FOR SURE IS THAT WE WILL HAVE -- IT WILL

11     HAVE A TIGHT TIMELINE.  I APPRECIATE THE TIMELINES IN THE

12     SPECIAL MASTER'S RECOMMENDATION, AND WHETHER THOSE PRECISE

13     TIMELINES STAY IN PLACE OR NOT, IT WILL CERTAINLY BE VERY

14     TIGHT, AGAIN, WITH AN EYE TO THE OVERALL CASE SCHEDULE IN BOTH

15     CASES.

16          ALL RIGHT THEN.  LET'S GO AHEAD AND GET UNDER WAY, AND WE

17     WILL START WITH BROWN, AND WE WILL START WITH THE PLAINTIFF'S

18     OBJECTIONS AND THEN WE WILL TURN TO GOOGLE.  AND I DO HAVE HARD

19     COPIES OF THE PRESENTATION SLIDES THAT WERE PROVIDED, WHICH

20     ACTUALLY I LIKE, SO I CAN ALWAYS SCRIBBLE ON THEM.  AND I JUST

21     ASK, BECAUSE WE ARE USING THE P.A. SYSTEM, WE HAVE THE SPECIAL

22     MASTER ON ZOOM, THAT COUNSEL SPEAK INTO THE MICROPHONES, SPEAK

23     SLOWLY AND CLEARLY.

24          IF YOU ARE MORE COMFORTABLE SITTING AT TABLE AND USING THE

25     MICROPHONE THERE, IN LIGHT OF OUR COVID PRECAUTIONS, YOU ARE

1    WELCOME TO DO THAT.  IF YOU WANT TO BE AT THE PODIUM, YOU ARE

2    WELCOME TO DO THAT AS WELL.

3              MS. BONN:  THANK YOU, YOUR HONOR.

4              THE COURT:  I DID SET TIME LIMITS FOR THE

5    PRESENTATIONS TODAY, AGAIN, TO HELP THE PARTIES SORT OF GUIDE

6    AND PRIORITIZE THEIR COMMENTS.  IF YOU WOULD LIKE TO RESERVE

7    SOME TIME, LET ME KNOW.

8              MS. BONN:  WE WOULD, YOUR HONOR.  I THINK WE WOULD

9    LIKE TO RESERVE SEVEN MINUTES, IF WE COULD.

10              THE COURT:  OKAY.  ALL RIGHT.

11              MS. BONN:  THANK YOU.

12         AND I AM GOING TO BRIEFLY -- I THINK I CAN SHARE MY SCREEN

13    AND GET THE SLIDES UP SO FOLKS CAN SEE THEM.

14         THANK YOU, YOUR HONOR.

15         MAY IT PLEASE THE COURT, I DID WANT TO START BY ADDRESSING

16    THE COMMENTS YOUR HONOR JUST MADE, WHICH PLAINTIFFS UNDERSTAND

17    AND APPRECIATE.  AND WE VERY MUCH APPRECIATE THE CHALLENGING

18    TASK THAT THE SPECIAL MASTER HAS HAD BEFORE HIM AND THE WORK

19    HE'S DONE TO MOVE THE BALL FORWARD.  AND THE BALL HAS BEEN

20    MOVED FORWARD, AND WE THINK THAT THE FRAMEWORK HE SETS OUT IS

21    VERY HELPFUL IN TERMS OF A CERTAIN CATEGORY OF DATA.

22         OUR OBJECTIONS, WHICH I HOPE TO FRAME, ARE REALLY TO AN

23    ISSUE THAT AROSE IN THIS WHOLE PROCESS, WHICH IS THAT GOOGLE

24    MADE CERTAIN LEGAL ARGUMENTS THAT CERTAIN CATEGORIES OF DATA

25    WERE EITHER IRRELEVANT OR THAT GOOGLE LEGALLY COULD NOT PRODUCE

1    OR SHARE INFORMATION ABOUT CERTAIN TYPES OF DATA IN ORDER TO

2    PROTECT PRIVACY.

3         AND IN OUR DISCUSSIONS WITH THE SPECIAL MASTER, I THINK

4    THAT THERE WAS A LINE THAT WAS DRAWN WHERE THE SPECIAL MASTER

5    SAID, YOU KNOW, I'M HERE TO ADDRESS TECHNICAL ISSUES, BUT LEGAL

6    OBJECTIONS, A LEGAL POSITION ON WHAT IS OR IS NOT LEGALLY

7    RELEVANT, WHETHER GOOGLE HAS A LEGAL DEFENSE TO PRODUCING

8    CERTAIN DATA, THOSE ARE ISSUES FOR THE COURT TO DECIDE.

9         AND SO THE PROCESS THAT LEAD TO THE REPORT AND

10   RECOMMENDATION THAT WE HAVE NOW IS ONE THAT BASICALLY ACCEPTS

11   AS A STARTING POINT, THAT THE CATEGORIES OF DATA GOOGLE

12   OBJECTED TO ON LEGAL GROUNDS, ARE ESSENTIALLY OFF THE TABLE.

13   AND IT TAKES AS A STARTING POINT, █ DATA SOURCES THAT GOOGLE

14   ESSENTIALLY AGREED TO DISCLOSE INFORMATION ABOUT, AFTER ITS

15   LEGAL OBJECTIONS HAD BEEN MADE AND AFTER THEY CARVED OUT,

16   UNILATERALLY AND IN BROAD CATEGORIES, ENTIRE BUCKETS OF DATA

17   THAT ARE ACTUALLY VERY IMPORTANT FOR THE PLAINTIFFS TO BE ABLE

18   TO IDENTIFY CLASS MEMBERS.

19        SO IN TERMS OF OUR PRESENTATION TODAY, WHAT I WOULD LIKE

20   TO DO IS EXPLAIN VERY BRIEFLY THE TYPES OF DATA THAT WE ARE

21   INTERESTED IN AND WHY, THE PROCESS THAT LEAD TO THIS

22   RECOMMENDATION, AND OUR VIEW OF HOW IT SHOULD BE MODIFIED TO

23   MAKE SURE THAT WE CAN BRING THESE ISSUES TO A CLOSE, AVOID

24   LITIGATING FURTHER DISPUTES AND GET TO A POINT WHERE WE CAN

25   MAKE INFORMED DECISIONS TO NARROW OUR SEARCH REQUESTS.

1    AFTER THAT, MY COLLEAGUE RYAN MCGEE WILL ADDRESS THE ISSUE

2    OF CLASS MEMBER DATA AND OUR 30(B)(6) NOTICE, AND FINALLY

3    MR. MAO WILL ADDRESS THE ISSUE OF SOURCE CODE.

4    SO JUST TO FRAME WHAT THE PLAINTIFFS ARE TRYING TO DO

5    HERE, WE ARE NOT TRYING TO TURN OVER GOOGLE AS AN ENTIRE

6    COMPANY AND EXAMINE EVERY NOOK AND CRANNY OF THEIR DATA

7    SYSTEMS.  THAT'S NOT WHAT WE WANT.  FRANKLY, WE DON'T HAVE THE

8    RESOURCES TO DO THAT.  IT'S NOT WHAT'S CALLED FOR IN THIS CASE.

9    WHAT WE ARE TRYING TO DO IS, I THINK, PRETTY NARROW.  WE

10   WANT TO BE ABLE TO DETERMINE HOW WE CAN IDENTIFY CLASS MEMBERS

11   USING GOOGLE'S DATA, NUMBER ONE.  NUMBER TWO, WE WANT TO BE

12   ABLE TO IDENTIFY THE NUMBER OF INTERCEPTIONS OF PRIVATE

13   BROWSING DATA THAT HAPPENED IN INCOGNITO MODE OR OTHER PRIVATE

14   BROWSING SESSIONS.  AND NUMBER THREE, WE WANT TO BE ABLE TO

15   IDENTIFY THE WAYS AND THE AMOUNTS THAT GOOGLE MAY HAVE PROFITED

16   FROM THOSE INTERCEPTIONS, BECAUSE THAT COULD SUPPORT OUR UNJUST

17   ENRICHMENT DAMAGES MODEL.

18   SO WE ARE TRYING TO DO THAT, AND YET WE DON'T HAVE

19   COMPLETE INSIGHT INTO GOOGLE'S SYSTEMS, GOOGLE'S DATA SOURCES,

20   AND THE WAYS IN WHICH GOOGLE, ITSELF, EITHER DOES OR CAN

21   PROVIDE DATA THAT WOULD HELP SHED LIGHT ON THESE THREE

22   QUESTIONS.

23   AND SO PART OF WHAT WE HAVE BEEN TRYING TO DO IS GAIN

24   ENOUGH INSIGHT THAT WE CAN MAKE TARGETED SPECIFIC REQUESTS THAT

25   ALLOW US TO GET TO THIS POINT.

1    I KNOW THERE'S A LOT ABOUT THE TECHNOLOGY, IDENTIFIERS,

2    AND I WANT TO BRIEFLY EXPLAIN WHY THE CATEGORIES OF IDENTIFIERS

3    WE HAVE BEEN ASKING ABOUT MATTER.

4    IN AN INCOGNITO BROWSING SESSION, THERE ARE A NUMBER OF

5    IDENTIFIERS THAT A USER COULD ESSENTIALLY BE TAGGED WITH BY

6    GOOGLE.  IF I WERE TO OPEN AN INCOGNITO BROWSING SESSION AND

7    START MY BROWSING SESSION AT GOOGLE.COM OR EVEN JUST TYPING

8    INTO THE OMNIBAR AT THE TOP OF MY CHROME BROWSER, GOOGLE WILL

9    TAG ME WITH WHAT'S CALLED A ███████ IDENTIFIER.  THEY WILL

10   ALSO TAG ME WITH A ██████ IDENTIFIER, LIKE THE COURT'S

11   WEBSITE, THAT ISSUE CAME UP EARLIER IN THIS CASE.

12   NUMBER TWO, IN MY BROWSING SESSION, I THEN GO TO A

13   THIRD-PARTY WEBSITE, LIKE NEWYORKTIMES.COM, FOR INSTANCE, THEY

14   WILL TAG ME WITH A ██████ IDENTIFIER.  AND NUMBER THREE, IF

15   WHEN I'M BROWSING A THIRD PARTY WEBSITE, I THEN LOG INTO THAT

16   WEBSITE, SO I'VE RUN THROUGH MY FREE VIEWS OF ARTICLES ON NEW

17   YORK TIME AND I HAVE TO LOG INTO MY ACCOUNT, THEN I MIGHT BE

18   TAGGED WITH SOMETHING CALLED A PUBLISHER PROVIDED ID A PPID,

19   BECAUSE THE *NEW YORK TIMES* KNOWS WHO I AM AND THAT IS SENT TO

20   GOOGLE AS WELL.

21   FINALLY, IF AFTER MY PRIVATE BROWSING SESSION IN INCOGNITO

22   WHERE I HAVE BEEN BROWSING THIRD PARTY WEBSITES, AT THE END OF

23   MY SESSION I SAY I WOULD ALSO LIKE TO CHECK MY GMAIL AND THEN

24   AT THE END OF MY SESSION GO LOG INTO MY GMAIL ACCOUNT, GOOGLE

25   SAYS, AH HA, NOW YOU ARE LOGGED IN, NOW WE WILL TAG YOU WITH

1    SOMETHING CALLED GAIA, AND WE WILL LINK ALL OF THE OTHER

2    BROWSING DATA YOU WERE ENGAGED IN UP UNTIL THAT POINT WITH YOUR

3    AUTHENTICATED GAIA LOGIN AT THE END OF THE SESSION.

4         PART OF WHY I THINK IT'S IMPORTANT TO UNDERSTAND THAT

5    THESE IDENTIFIERS CAN ALSO BE ATTACHED TO A PLAINTIFF IN AN

6    INCOGNITO SESSION, AND YET GOOGLE HAS MADE CATEGORICAL

7    OBJECTIONS TO PRODUCING THINGS LIKE ███████ OR GAIA LOGIN DATA

8    BECAUSE THEY SAY THAT'S NOT THE ACTIONABLE INTERCEPT.

9         AND ACCEPTING THAT AS TRUE FOR THE MOMENT, IT DOES NOT

10   MATTER BECAUSE FROM OUR PERSPECTIVE, ANY OF THOSE IDENTIFIERS

11   THAT ARE USED TO IDENTIFY PLAINTIFFS WHO ARE ENGAGED IN PRIVATE

12   BROWSING IN INCOGNITO, CAN BE USED AS A METHOD OF IDENTIFYING

13   CLASS MEMBERS, WHETHER ALONE OR IN COMBINATION WITH THOSE OTHER

14   DATA SOURCES.

15        SO I THINK IT'S REALLY IMPORTANT TO UNDERSTAND THAT THAT'S

16   WHY WHEN WE HEAR THAT THERE'S A CATEGORICAL OBJECTION, YOU

17   KNOW, WE ARE NOT GOING TO GIVE YOU ANYTHING ABOUT GAIA DATA,

18   LOGGED IN DATA, WE ARE NOT GOING TO GIVE YOU ANYTHING ABOUT

19   ███████ DATA, IT'S TYING ONE HAND BEHIND OUR BACK IN BEING

20   ABLE TO IDENTIFY THE CLASS MEMBERS.

21        AND I THINK YOUR HONOR IS RIGHT, WE STARTED WITH THE

22   APRIL 30TH ORDER, WHICH THEN LEAD TO A PROCESS IN FRONT OF THE

23   SPECIAL MASTER.  BUT I THINK IT'S IMPORTANT TO REMEMBER THAT IN

24   THE COURT'S ORDER, THE COURT SAID LOOK, I THINK THE PLAINTIFFS

25   SHOULD BE ALLOWED TO TEST HOW THEY COULD LINK AUTHENTICATED AND

 1    UNAUTHENTICATED DATA TO IDENTIFY THE PLAINTIFFS.  AND THE COURT

 2    SAID IT'S NOT JUST THE PLAINTIFFS, BUT IT'S THEIR DEVICES.  YOU

 3    KNOW, IF YOU CAN SHOW THAT THERE'S CERTAIN DATA THAT'S LINKABLE

 4    TO SOMEONE'S DEVICE, I DON'T THINK YOU CAN WITHHOLD THAT,

 5    BECAUSE MAYBE, YOU KNOW, MARY'S DAUGHTER USED HER IPHONE AND IT

 6    WASN'T MARY AT THAT MOMENT, THAT KIND OF RESTRICTION ISN'T

 7    FAIR.

 8         AND YET WHAT HAPPENED AFTER THAT IS THAT GOOGLE DID NOT

 9    PRODUCE ALL AUTHENTICATED DATA, THEY TOOK THE POSITION IN FRONT

10    OF THE SPECIAL MASTER THAT AUTHENTICATED DATA IS IRRELEVANT OR

11    OUT OF SCOPE.  AND AS WE SAW EARLIER, THAT'S SIMPLY NOT THE

12    CASE BECAUSE THERE IS AUTHENTICATED, WHAT GOOGLE MAY TERM

13    AUTHENTICATED DATA THAT CAN BE LINKED IN ORDER TO IDENTIFY

14    CLASS MEMBERS.  AND IN FACT, GOOGLE'S OWN DOCUMENTS, AND I'M

15    SHOWING A SLIDE FROM ONE OF THEIR DOCUMENTS, ███████████████

16    ███████████████████████████████████████████████████████████

17    ████████████████████████████████████████████.

18         SO WE ARE NOT JUST SAYING THIS IS TRUE AS A THEORETICAL

19    MATTER, ██████████████████████████████████████████████████

20    ██████████████████████████████████.

21         THEN WHAT GOOGLE DID IS WE SAID OKAY, WELL WHAT ABOUT THE

22    UNAUTHENTICATED DATA, CAN YOU GIVE US UNAUTHENTICATED DATA THAT

23    CAN BE LINKED TO OUR PLAINTIFFS OR THEIR DEVICES BY THEIR IP

24    ADDRESS OR BY THEIR USER AGENT STRING OR BY A ████████ COOKIE,

25    FOR INSTANCE, IF THEY STARTED AN INCOGNITO SESSION WITH A

1   GOOGLE SEARCH.  AND GOOGLE REFUSED TO DO THAT.  THEY SAID, WE

2   DON'T SEARCH FOR YOUR UNAUTHENTICATED DATA USING ANY OF THOSE

3   METRICS BECAUSE IP ADDRESS AND USER AGENT ISN'T ONE HUNDRED

4   PERCENT LINKABLE TO THE PLAINTIFFS, AND BECAUSE ███████ IS

5   IRRELEVANT, IT'S OUT OF SCOPE.

6        AND ONCE AGAIN, GOOGLE'S OWN INTERNAL DOCUMENTS SHOW THAT

7   ████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████

9   █████████████████.

10        SO WHAT DID GOOGLE GIVE TO US?  GOOGLE, IN MAY, SAID

11  PLAINTIFFS, YOU SHOULD GO AND OPEN A NEW INCOGNITO SESSION, A

12  BRAND-NEW INCOGNITO SESSION, A BRAND NEW ONE, FOR THE FIRST

13  TIME IN MAY, AND THEN WE WILL SHOW YOU HOW TO FIND A CERTAIN

14  TYPE OF ██████ COOKIE.  GIVE THAT TO US AND THEN WE WILL LOOK

15  UP SOME DATA.

16        AND ESSENTIALLY WHAT THAT MEANS IS WE DIDN'T ACTUALLY

17  INITIALLY GET ANY DATA FROM BEFORE MAY OF THIS YEAR BECAUSE

18  THEY BASICALLY ASKED US TO GENERATE A NEW INCOGNITO SESSION

19  WITH A NEW ██████ COOKIE.  AND AS IT TURNS OUT, AND WE

20  DISCOVERED FROM THE DOCUMENTS, IT ESSENTIALLY WASN'T EVEN A

21  FRUITFUL EXERCISE BECAUSE A ██████ COOKIES ARE DIFFERENT FROM

22  THE ██████ IDENTIFIER, WHICH IS REALLY WHAT WE ARE FOCUSED

23  ON.

24        AND SO ESSENTIALLY, YOU KNOW, WE WOUND UP NOT ONLY WITH

25  NOT BEING CLOSE TO YOUR HONOR'S ORDER, BUT WITH ENTIRE

1    CATEGORIES OF DATA THAT YOUR HONOR HAD ORDERED, BEING SWEPT

2    AWAY BY LEGAL ARGUMENTS ABOUT RELEVANCE, OR THE NOTION THAT IT

3    WOULD INVADE PRIVACY TO PRODUCE THIS DATA TO THE PLAINTIFFS.

4         THEN WE GOT YOUR SEPTEMBER ORDER, WHICH I THINK SAID GO

5    BACK TO STEP ONE, DISCLOSE WHAT THE SOURCES ARE, THEN DISCLOSE

6    INFORMATION ABOUT THE SOURCES SO WE CAN MEET AND CONFER AND

7    FIGURE OUT WHAT'S REALLY RELEVANT, AND THEN WITH THE SPECIAL

8    MASTER, WORK OUT TARGETED SEARCHES FOR THOSE SOURCES.

9         THE PROBLEM IS GOOGLE THEN TOOK THE SAME APPROACH YET

10   AGAIN.  SO GOOGLE SAID, WE'RE NOT GOING TO IDENTIFY SOURCES

11   THAT CONTAIN ONLY AUTHENTICATED DATA.  SO WE ARE TAKING

12   AUTHENTICATED DATA SOURCES OFF THE TABLE, EVEN THOUGH AS WE SAW

13   EITHER, THEY CAN BE USED TO IDENTIFY INCOGNITO USAGE.  SO THEY

14   DIDN'T IDENTIFY AUTHENTICATED DATA SOURCES.

15        THEN THEY SAID, WE ARE NOT GOING TO IDENTIFY SOURCES THAT

16   CONTAIN SEARCH DATA BECAUSE SEARCH ISN'T AN ACTIONABLE

17   INTERCEPTION.  BUT ONCE AGAIN, WHAT WE SAW EARLIER IS THAT

18   SEARCH DATA CAN BE USED TO IDENTIFY PEOPLE WHO STARTED THEIR

19   INCOGNITO BROWSING SESSION WITH A GOOGLE SEARCH BEFORE THEY

20   THEN WENT ON TO THIRD PARTY WEBSITES.

21        AND IN FACT, GOOGLE'S OWN DOCUMENTS SHOW THAT, AND I'M

22   SHOWING ONE EXAMPLE, ███████████████████████████████

23   ███████████████████████████████████████

24   ███████████████████████████████████████

25   ███████.



```
1           SO GOOGLE'S OWN DOCUMENTS SHOW THAT ███████████

2    ████████████████████████████████████████████████████

3    ███████████████████████, AND THAT GOOGLE UNILATERALLY TOOK

4    SEARCH LOGS OFF THE TABLE.  GOOGLE THEN IDENTIFIED █ SOURCES.

5           THE COURT:  TELL ME WHICH SLIDE YOU ARE ON, MS. BONN.

6    I SEE IT ON THE SCREEN, BUT I'M TRYING TO LOOK FOR IT --

7           MS. BONN:  24 -- 26.

8       OKAY.  THANK YOU, YOUR HONOR.

9           THE COURT:  NOW I TOOK YOU OFF TRACK.

10          MS. BONN:  IN ANY EVENT, LET ME JUST SEE IF I CAN PUT

11   THIS BACK.

12          SO GOOGLE IDENTIFIED █ DATA SOURCES AFTER THEY TOOK

13   "AUTHENTICATED" OFF THE TABLE, AFTER THEY TOOK "SEARCH DATA"

14   OFF THE TABLE, AND WITHIN THE █ THEY IDENTIFIED, WE CAN TELL

15   THAT IT'S INCOMPLETE IN SEVERAL RESPECTS.

16          AND JUST AS ONE EXAMPLE, IN OUR EXHIBIT D THAT WE PUT IN

17   WITH OUR OBJECTIONS TO THE REPORT, IT'S A DOCUMENT OF GOOGLE'S

18   TITLED ██████████████████████████

19          AND IN THIS ██████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████████

22   ████████████████████.

23            █████████████████████████████████████████

24   ████████████████████████████████████████████████   THERE

25   ARE LOGS IN HERE, IN THIS VERY DOCUMENT, THAT WERE NOT INCLUDED
```

1    IN GOOGLE'S LIST OF THE █.

2         SO IN GOOGLE'S INTERNAL PRIMER ON ████████████████,

3    AND HERE ARE THE LOGS YOU LOOK TO, THERE ARE LOGS IN THAT VERY

4    DOCUMENT THAT THEY DIDN'T GIVE US IN THEIR LIST OF █.

5         AND THEN WITHIN THE LIST OF █, THEY DIDN'T PROVIDE ALL OF

6    THE FIELDS OR SCHEMA OR DESCRIPTIONS AS ORDERED, AND THEY SAID,

7    WE WILL ONLY SEARCH FIVE OF THEM.  WE ASKED FOR SEVEN, THEY

8    SAID, WE WILL ONLY SEARCH FIVE, AND WE ARE NOT GOING TO SEARCH

9    ████████ OR ████████ TIED TO YOUR IP ADDRESS, TIED TO YOUR USER

10   AGENT STRING OR TIED TO YOUR DEVICE, ████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████.

13        AND SO THE POINT OF ALL OF THIS, YOUR HONOR, ISN'T TO

14   REHASH THE PAST AND GET MIRED DOWN IN PAST PROBLEMS, BUT IT'S

15   TO SAY THAT THE SPECIAL MASTER'S ORDERS WHICH START WITH THOSE

16   █ DATA SOURCES, ACCEPTS THOSE AS ITS STARTING POINT, GOOGLE'S

17   LEGAL ARGUMENTS THAT THESE OTHER BUCKETS, SHOULD SIMPLY BE OFF

18   THE TABLE.  AND I THINK THAT'S OUR FUNDAMENTAL CONCERN, NUMBER

19   ONE.

20        FUNDAMENTAL CONCERN NUMBER TWO IS THAT WE HAVE BEEN

21   THROUGH THIS PROCESS, ESSENTIALLY TWICE, AND EACH TIME, EVEN

22   FACED WITH WHAT WE THOUGHT WERE RELATIVELY CLEAR COURT ORDERS,

23   GOOGLE HAS REASSERTED ITS RELEVANCE OBJECTIONS, WE CAN'T

24   PRODUCE THIS BECAUSE OF USER PRIVACY OBJECTIONS, OVER AND OVER.

25   AND WE ARE CONCERNED THAT WE ARE JUST GOING TO CONTINUE TO GET

1    MIRED DOWN IN THOSE TYPES OF DEBATES AND DISPUTES THAT WILL

2    SLOW THINGS DOWN.

3         AND FRANKLY, WHEN WE THINK ABOUT WHAT WILL BREAK THIS LOG

4    JAM, WE DO NOT WANT TO SEARCH EVERY SINGLE DATA SOURCE ON THE

5    PLANET, WE DON'T WANT TO SEARCH EVERY DATA SOURCE THAT GOOGLE

6    HAS, BUT WHAT WE DO WANT IS TO HAVE INSIGHT INTO WHAT ARE THE

7    DATA SOURCES, HOW CAN THEY BE SEARCHED, WHAT IS THE DATA THAT'S

8    AVAILABLE SO THAT WE, IN CONJUNCTION WITH OUR EXPERTS, CAN MAKE

9    INTELLIGENT AND INFORMED DECISIONS ABOUT THE SPECIFIC SEARCHES

10   WE WANT TO RUN THAT WILL HELP US IDENTIFY CLASS MEMBERS, THE

11   NUMBER OF ILLEGAL INTERCEPTIONS, AND GET TO OUR DAMAGES MODEL.

12   THAT'S WHAT WE WANT.

13        AND FRANKLY, YOUR HONOR, I THINK THE ONE THING THAT MIGHT

14   HELP BRING THIS LOG JAM, IS ALLOWING OUR EXPERTS TO INSPECT

15   THESE TOOLS, BECAUSE THAT WILL ENABLE OUR EXPERTS TO SEE FOR

16   THEMSELVES, WHAT ARE THE FIELDS THAT CAN BE QUERIED, HOW CAN A

17   QUERY BE FORMED, WHAT DO WE REALLY NEED.

18        AND THAT WILL ALLOW US, IN THE PROCESS THE SPECIAL MASTER

19   ENVISIONS, TO BE TARGETED, CRISP AND CLEAR WITH OUR SEARCHES

20   THAT WE ACTUALLY WANT GOOGLE TO RUN.  SO THAT'S REALLY OUR

21   PRIMARY REQUEST.

22        I THINK WITH THAT FOR TIME REASONS, I'M GOING TO ASK MY

23   COLLEAGUES TO ADDRESS THE OTHER ISSUES, BUT I DO WANT TO MAKE

24   CLEAR YOU KNOW FROM OUR PERSPECTIVE, THE SPECIAL MASTER HAS

25   MOVED THE PROCESS ALONG, WHAT HE PROPOSES IS A HELPFUL WAY TO

```
 1    DEAL WITH THE █ DATA SOURCES THAT GOOGLE HAS IDENTIFIED.  THE

 2    PROBLEM IS THE THINGS THAT GOOGLE HAS UNILATERALLY TAKEN OFF

 3    THE TABLE, AND FRANKLY THE AMOUNT OF TIME THAT'S LEFT TO GET TO

 4    WHERE WE NEED TO GET TO.

 5         THANK YOU.

 6              THE COURT:  THANK YOU, MS. BONN.

 7              MR. MAO:  SORRY, COULD WE ASK FOR A TIME CHECK?

 8              THE COURT:  I HAVE YOU AT 18 MINUTES, BUT I DO NOT

 9     WANT TO ENCOURAGE PEOPLE TO SPEAK VERY FAST.

10              MR. MCGEE:  MY MOTHER IS A RETIRED COURT REPORTER,

11     JUDGE, SO I THINK I WILL SPEAK SLOWLY.

12          GOOD MORNING, YOUR HONOR.  RYAN MCGEE ON BEHALF OF THE

13     PLAINTIFFS.  I WILL BRIEFLY, WITH THE TIME REMAINING, ADDRESS

14     P6, P16 AND THE 30(B)(6).

15          FOR P6, YOUR HONOR, WE ENGAGED WITH THE SPECIAL MASTER'S

16     PROCESS, WHICH WAS NARROW, WITH THE ITERATIVE SEARCHES.  AND

17     WHAT WE WERE LOOKING FOR WERE TWO CLASSES OF INFORMATION.  THE

18     FIRST WERE -- EXCUSE ME, DATA SOURCES THAT CONTAIN THE X CLIENT

19     DATA HEADER, WHICH ALSO GOES INTO P16.  AND FOR THAT, WE ASKED

20     FOR RANDOM SAMPLES OF 1,000 COMPLETE DATA SOURCES THAT

21     CONTAINED VALUES FOR THE X PLAN DATA HEADER.

22          BECAUSE AGAIN, TO REMIND THE COURT, IN THE COMPLAINT AND

23     THROUGHOUT THE PROCESS, WE HAVE ALLEGED THAT A NULL SET FOR THE

24     X CLIENT DATA HEADER WHERE NO VALUE RETURNED IS AN INDICATOR OF

25     INCOGNITO.
```

 1            THE COURT:  I REMEMBER THE ARGUMENT WELL.  THANK YOU.

 2            MR. MCGEE:  THANK YOU, JUDGE.

 3        AND THEN THE SECOND CATEGORY OF THAT WERE ███ RECORDS FROM

 4    ALL ██ DATA SOURCES THAT GOOGLE IDENTIFIED THAT HAD AN ABSENCE

 5    OF ██████.  GOOGLE JUST SAID NO.  THEY DID NOT DEMONSTRATE

 6    ANY BURDEN TO THE COURT, THEY SUBMITTED NOTHING TO THE COURT

 7    THAT SAID IT WAS A BURDEN OR IMPOSSIBLE OR ANYTHING ELSE, THEY

 8    JUST SAID NO.

 9        SO RIGHT NOW WHAT WE ARE ASKING FOR IS A COURT ORDER,

10    WHICH WOULD COMPLY WITH GOOGLE'S PRIVACY POLICY, THAT WOULD

11    PERMIT THEM TO TURN THAT INFORMATION OVER TO US.

12        SO WE WANT THE SAMPLE DATA, YOUR HONOR, FROM THAT PROCESS,

13    WE WANT ALL OF THE DATA SOURCES THAT COULD CONTAIN THE X CLIENT

14    DATA HEADER AND GWS THAT WOULD BE FROM BROWSING SOURCES.

15        AND THEN NUMBER THREE, WE WANT TO RUN ITERATIVE SEARCHES,

16    LIKE WITH P3, FOR THAT INFORMATION.

17        BUT IF THAT'S NOT TURNED OVER, THERE SHOULD BE

18    CONSEQUENCES, AND THOSE WOULD BE SIMILAR TO THE SANCTIONS THAT

19    WE REQUESTED IN THE MOTION THAT YOU HAVE STAYED.  SO THAT'S P6

20    AND P16.

21        AS FOR THE 30(B)(6), AN ADEQUATELY PREPARED REPRESENTATIVE

22    FROM GOOGLE TO TESTIFY.  WE DID BRIEF THIS, BUT TO REMIND THE

23    COURT, THERE WERE THE 15 OF 21 DATA SOURCES THAT

24    DOCTOR BERNTSON WAS ENTIRELY UNPREPARED TO TESTIFY TO FROM THE

25    DREMEL TOOL.  THOSE INCLUDED ADVERTISING ID'S DEVICE ID'S AND

```
1     IP ADDRESSES, AND IT WAS INFORMATION THAT WAS MAPPED TO THOSE

2     ID'S, STORED IN A DIFFERENT PART OF ███████ , THAT AGAIN,

3     DOCTOR BERNTSON WAS UNPREPARED TO TESTIFY TO.

4          AND WITH RESPECT TO TOPIC ONE, THE LOG SOURCES, HE WAS

5     ONLY PREPARED TO TESTIFY TO GOOGLE ANALYTICS AND IT MANAGER.

6          SAME THING WITH TOPIC TWO, THIS WAS THE ABILITY TO SEARCH

7     THOSE SOURCES.  SAME WITH THREE, HOW THE SOURCES WERE COMPILED

8     OR THE ORIGINS OF INFORMATION.  SOURCE FOUR -- OR EXCUSE ME,

9     TOPIC FOUR WERE THE RETENTION POLICIES.  TOPIC SIX WAS THE ID

10    AND CORRELATION OF ID'S, WHICH WOULD AGAIN GO TOWARD THE P6

11    MATTER.  AND THEN TOPIC FIVE WAS ALL TESTIMONY FOR PRESERVATION

12    OF THESE SOURCES.

13          SO JUDGE WITH THAT, WE WILL TURN IT OVER TO MR. MAO.

14          THE COURT:  ALL RIGHT.  THANK YOU, MR. MCGEE.

15          MR. MAO:  MR. MAO.

16          MS. BONN:  I'M SORRY, MS. FANTHORPE, I MAY NEED YOU

17    TO LET ME BACK IN.  I GOT TOO EXCITED.

18          THE COURT:  MR. MAO.

19          MR. MAO:  GOOD MORNING, YOUR HONOR.

20          THE COURT:  GOOD MORNING.

21          MR. MAO:  I GOT FOUR MINUTES, I'M DETERMINED TO DO IT

22    IN THREE.

23          THE COURT:  AGAIN, THAT DOES NOT MEAN SPEAK FAST.

24          MR. MAO:  I UNDERSTAND.

25          SO I HAVE THE RESPONSIBILITY OF EXPLAINING SOURCE CODE.
```

```
 1    BUT WHAT I WANTED TO DO IS I DID WANT TO GO OVER SOME OF THE

 2    SLIDES, BECAUSE WHAT I WANT TO DEMONSTRATE TO YOU, YOUR HONOR,

 3    IS WHY SOURCE CODE AND A LOT OF THE DATA IN WHICH WE ARE

 4    SEEKING, AND MS. BONN WAS COVERING, IS IMPORTANT, NOT JUST FOR

 5    OUR CASE, BUT ALSO BECAUSE OF GOOGLE'S CASE.

 6              THE COURT:  ALL RIGHT.

 7              AND LET ME JUST PREFACE THIS, MR. MAO, WITH, ON THE SOURCE

 8    CODE QUESTION, I KEEP COMING BACK TO THE REASONABLE AND

 9    NECESSARY STANDARD.

10              THIS IS A TOPIC THAT I THINK THE PARTIES ON BOTH SIDES

11    BRIEFED, IT WAS IN A CHART, BUT THERE WERE LOTS -- THEY WERE

12    ESSENTIALLY LEGAL BRIEFS.  SO I DID LOOK AT THOSE CAREFULLY,

13    AND THAT'S REALLY THE QUESTION IN MY MIND, IS WE HAVE THIS

14    METHODOLOGY FROM THE SPECIAL MASTER, OBJECTIONS

15    NOTWITHSTANDING, AND SO HOW DO WE GET TO NECESSITY WHEN IT

16    COMES TO SOURCE CODE, GIVEN WHAT THE PLAINTIFFS ARE SEEKING AND

17    AGAIN, ALLEGATIONS IN THE COMPLAINT, CLASS DEFINITION,

18    METHODOLOGY TO CLOSE OUT PRODUCTION, HOW DO WE GET TO NECESSITY

19    FOR SOURCE CODE?

20              MR. MAO:  YES.

21              SO YOUR HONOR, THE REASON WHY I ALSO STARTED OUT TALKING

22    ABOUT GOOGLE'S DOCUMENTATION IS BECAUSE I DO BELIEVE THAT WE

23    HAVE TARGETED PROCESSES IN WHICH WE SPECIFIED IN THE BRIEFS.

24    SO WE OBVIOUSLY DID NOT SAY ALL CODES, WE ENUMERATED CERTAIN

25    PROCESSES.
```

1          BUT AS YOU WILL SEE LOOKING AT GOOGLE'S OWN DOCUMENTATION,

2     THAT THEY ACTUALLY WANT TO ALLOW US TO INSPECT THAT SOURCE CODE

3     BECAUSE THEY CANNOT MOUNT THEIR DEFENSE.

4          THEY CANNOT HAVE IT BOTH WAYS.  IF WE DO NOT CONDUCT AN

5     INVESTIGATION AS TO HOW THOSE USERS ARE IDENTIFIED AND ALSO HOW

6     MONEY IS MADE ON THOSE SAME USERS, THERE'S NO WAY FOR GOOGLE TO

7     ACTUALLY MOUNT A DEFENSE AS TO OUR ALLEGATIONS, SPECIFICALLY

8     BECAUSE IF YOU LOOK AT SOME OF THE SLIDES, WE ARE ABLE TO

9     DEMONSTRATE THAT THEY CAN IDENTIFY, AND THEY DO IDENTIFY USERS

10     IN INCOGNITO.  AND SECONDLY, THEY MONETIZE OFF OF THOSE USERS.

11          I'M NOT SURE HOW GOOGLE IS GOING TO BE ABLE TO MOUNT A

12     DEFENSE IN RESPONSE, IF THEY CAN'T REBUT THAT EVIDENCE WITH

13     THINGS SUCH AS SOURCE CODE.  OUR SOURCE CODE DOES NOT DO X, OR

14     OUR SOURCE CODE DOES NOT DO Y, BECAUSE SOURCE CODE DOES NOT

15     LIE.  SOURCE CODE DOES EXACTLY WHAT IT DOES, IN TERMS OF WHAT

16     DATA IT POOLS, WHAT DATA IT GIVES TO PUBLISHERS AND ADVERTISERS

17     AND HOW IT ACTUALLY MONETIZES AND CHARGES USERS THAT USE THAT

18     DATA.

19          SO WE SPECIFIED ███████████████████ AND A COUPLE

20     OF THE PROCESSES, THAT WAS SLIDE 42.  BUT THESE ARE ALL

21     PROCESSES, RIGHT, IN WHICH WE ARE SEEKING SOURCE CODE THAT IS

22     LITERALLY BASED OFF OF GOOGLE DOCUMENTATION.  ██████████

23     ████████████  THIS THING LITERALLY HAS NO BARRIERS IN

24     TERMS OF WHERE THE DATA CAN ACTUALLY BE PULLED.

25          WITH REGARD TO GOOGLE'S ALLEGATION THAT THEY DON'T JOIN,

1    AND I NOTE, YOUR HONOR, THAT SOME THEY DON'T JOIN, SOME THEY

2    COULD BE, BUT SETTING THAT ASIDE, THE FACT THAT THEY DO, UNDER

3    THIS SERVICE, WE BELIEVE IS SOMETHING WE CAN PROVE AND SHIFT

4    THE BURDEN TO GOOGLE IN TERMS OF DOCUMENTATION, AND THEN IT'S

5    INCUMBENT UPON GOOGLE TO PROVE THAT THEY DON'T DO THAT.

6         HOW ARE THEY GOING TO DO THAT IF THEY DON'T PRODUCE THE

7    SOURCE CODE, YOUR HONOR, BECAUSE THE ONE THING THAT SHOULD BE

8    UNDISPUTED, IN TERMS OF WHAT THE CODE DOES, IS BEING ABLE TO

9    INSPECT TO SEE IF IT DOES A, OR DOES NOT DO A, THE FACT IT DOES

10   B, OR DOES NOT DO B, HOW DO WE DO THAT WITHOUT THE SOURCE CODE?

11        ANOTHER THING IN WHICH WE SOUGHT IS LITERALLY CODE THAT

12   SHOWS ID LANGUAGE, RIGHT.  AND WE PROVIDED SOME SLIDES ON THAT.

13   YOU CAN SEE EXACTLY WHAT WE SAID IS EXACTLY WHAT'S BEING DONE

14   WITHIN GOOGLE'S DOWN DOCUMENTATION, AND AGAIN, WE NEED SOURCE

15   CODE TO BE ABLE TO SHOW THAT.

16        AND IP ADDRESSES.  I THINK MR. BRUSH AND MR. SCHMIDT AGREE

17   WITH US THAT IP ADDRESS IS A GOOD COMPLEMENT TO THE WAY IN

18   WHICH SEARCHES ARE DONE, AND WE SPECIFIED AND PROPOSED CERTAIN

19   EXAMPLES BY WHICH THEY CAN DO THAT AS WELL, AND THAT'S ONE OF

20   THE REASONS IN WHICH WE NEED SOURCE CODE.

21             THE COURT:  THANK YOU, MR. MAO.

22             MR. MAO:  THANK YOU.

23             MS. BONN:  THANK YOU, YOUR HONOR.

24        AND I THINK WE WILL PASS THINGS OVER.  I DID WANT TO MAKE

25   ONE ADDITIONAL COMMENT, WHICH IS THAT LOGS ARE BEING -- ARE NOT

```
 1     BEING PRESERVED.  EVERY LOG IS NOT BEING PRESERVED.  THEY ARE

 2     BEING DELETED UNDER GOOGLE'S RETENTION POLICIES.  AND PART OF

 3     WHY WE NEED SOURCE CODE IS THAT EVERY DAY, WEEK, MONTH THAT

 4     GOES ON, DATA SOURCES THAT MAY HAVE ONCE EXISTED, MAY NO LONGER

 5     EXIST.  SO WE MAY BE IN A POSITION WHERE LOOKING TO LOGS ALONE,

 6     WON'T TELL US WHAT WE NEED TO KNOW BECAUSE DATA FROM THE TIME

 7     BEFORE THE COMPLAINT MAY NO LONGER BE THERE.  BUT IF WE CAN SEE

 8     GOOGLE'S SOURCE CODE, WE CAN NEVERTHELESS PROVE WHAT GOOGLE WAS

 9     DOING AT THAT TIME, EVEN IF THE DATA THEY ACTUALLY COLLECTED IS

10     NO LONGER PRESENT.

11          SO I THINK THAT REALLY GOES TO THE NECESSITY POINT IN

12     ADDITION TO THE POINTS THAT MR. MAO MADE.

13          THANK YOU, YOUR HONOR.

14             THE COURT:  THANK YOU, MS. BONN.

15          ALL RIGHT.  SPECIAL MASTER BRUSH, I AM GOING TO TURN NOW

16     TO GOOGLE AND THEN I WILL RETURN TO YOU FOR ANY COMMENT OR

17     INPUT.  BUT IF YOU WOULD LIKE TO COMMENT AT THIS JUNCTURE, YOU

18     ARE WELCOME TO.

19             MR. BRUSH:  I HAVE NOTHING AT THIS TIME, YOUR HONOR.

20             THE COURT:  OKAY.  THANK YOU.

21             MR. SHAPIRO:  THANK YOU, YOUR HONOR, AND SPECIAL

22     MASTER.

23          I JUST HAVE -- THERE'S A LOT TO UNPACK THERE, AND I HAVE

24     JUST A COUPLE OF OBSERVATIONS FROM 30,000 FEET, AND THEN MY

25     COLLEAGUE, MR. ANSORG, WILL DO THE ACTUAL UNPACKING.
```

1          THE COURT:  OKAY.  DID YOU WANT TO RESERVE TIME

2     TODAY, MR. SHAPIRO?

3          MR. SHAPIRO:  YES, I THINK WE WANT TO RESERVE SIX

4     MINUTES.  SIX MINUTES, PLEASE.

5          THE COURT:  OKAY.

6          MR. SHAPIRO:  AND I WILL BE COGNIZANT OF THE COURT

7     REPORTER AS I SPEAK.

8          YOUR HONOR, WE BELIEVE THAT THE SPECIAL MASTER PROCESS WAS

9     MORE THAN JUST A STARTING POINT HERE.  WE AND THE SPECIAL

10    MASTER PUT IN MONTHS OF EFFORT, MANY HOURS OF MEET AND CONFERS,

11    BOTH WITH THE SPECIAL MASTER AND WITH OUR COLLEAGUES IN THE

12    BROWN CASE.

13         EVERY ARGUMENT THAT YOU'VE HEARD TODAY WAS ALSO MADE TO

14    THE SPECIAL MASTER, SOME OF THEM WERE MADE TO YOU AS WELL

15    EARLIER IN THIS PROCESS.

16         AND LISTENING TO THE PRESENTATION I HAVE JUST HEARD, I

17    FEEL AS IF WE ARE IN A BIT OF A TIME MACHINE HERE, IT'S AS IF

18    THAT HADN'T HAPPENED.  WE HAVE TRIED, WITH OUR OBJECTIONS, TO

19    BE NARROWED AND TARGETED TO POINT OUT ONE OR TWO AREAS WHERE

20    THERE'S A BURDEN THAT WE THINK WAS UNANTICIPATED OR WAS NOT

21    NECESSARILY MADE CLEAR, THAT WE NEED TO CLARIFY, OR WHERE

22    SOMETHING SIMPLY MAY NOT BE FEASIBLE FOR REASONS THAT REQUIRE

23    FURTHER AIRING.

24         THE PLAINTIFFS IN THIS CASE SEEM TO WANT TO UNDUE MUCH OF

25    THE PROCESS AND ARE ASKING FOR SOMETHING MUCH MORE SWEEPING.

1      I NOTED THERE WAS A SLIDE THAT WAS PRESENTED IN THE

2  PRESENTATION YOU JUST SAW THAT SAID WE HAD PROVIDED ONLY █

3  SOURCES OF DATA.  THAT'S A LOT OF SOURCES, AND THAT WAS IN A

4  PROCESS OVERSEEN BY A SPECIAL MASTER WHO HAS THE TECHNOLOGICAL

5  EXPERTISE TO UNDERSTAND WHAT IS REASONABLE IN A CASE LIKE THIS

6  AND WHAT IS NOT.

7      I WANT TO TAKE ISSUE WITH THE IDEA THAT SOMEHOW THE

8  SPECIAL MASTER DEFERRED TO OUR UNILATERAL CLAIMS ABOUT WHAT

9  THIS CASE INVOLVES.  SPECIAL MASTER BRUSH IS NO SHRINKING

10  VIOLET, HE WAS PERFECTLY HAPPY TO TELL EITHER SIDE IF HE WASN'T

11  BUYING WHAT WE WERE SELLING.  BUT HE GOT IT RIGHT, REGARDING

12  THE TECHNICAL FEASIBILITY AND THE BURDEN OF DIGGING INTO SOME

13  OF THESE AREAS LIKE ███████, AND WHICH WOULD TURN THIS INTO AN

14  ENTIRELY DIFFERENT CASE.

15      SO LIKE I SAID, THERE'S LOTS TO UNPACK HERE.  MR. ANSORG

16  WILL EXPLAIN POINT BY POINT WHY THE POINTS MADE BY THE

17  PLAINTIFFS ARE NOT WELL FOUNDED.  BUT AS YOU SAID AT THE

18  BEGINNING, YOUR HONOR, THE GOAL SHOULD BE TO BRING THIS TO A

19  CLOSE, NOT TO START SOME ENTIRELY NEW CHAPTER OF DISCOVERY.

20          THE COURT:  THANK YOU, MR. SHAPIRO.

21          MR. ANSORG:  THANK YOU, YOUR HONOR.

22      WE WILL SEE IF WE CAN ALSO DO THE PRESENTATION, BUT

23  THERE'S A LOT OF EQUIPMENT.

24          THE COURT:  THERE IS.

25          MR. ANSORG:  IF YOU WILL BEAR WITH ME FOR ONE MOMENT

1    HERE.

2              THE COURT:  CERTAINLY.

3              MR. SHAPIRO:  I HOPE WE ARE NOT ON THE CLOCK WHEN WE

4    ARE SETTING UP.

5              THE COURT:  YOU ARE NOT ON THE CLOCK.

6              MR. ANSORG:  OKAY.  WELL, I'VE GOT A BIT OF A

7    TECHNICAL PROBLEM, BUT I THINK I AM GOING TO CLOSE IT AND SPEAK

8    TO IT DIRECTLY, BECAUSE I'M REFERENCING THE SLIDES THAT YOU

9    HAVE.  IT WILL BE MORE DIRECT.

10         WHAT I WANTED TO START OFF WITH WAS ACTUALLY ONE OF THE

11   SLIDES PLAINTIFFS HAD SHOWN US EARLIER.  AND IN THE FIRST DECK

12   THEY HAD SENT US, IT'S THE THIRD SLIDE -- IN FACT, IT'S THE

13   FOURTH SLIDE, IT'S ENTITLED █████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████   AND YOUR HONOR, I BELIEVE THIS IS ONE OF THE

16   ISSUES THAT REALLY CUTS TO THE HEART OF THE PROBLEM THAT WE

17   HAVE AND IT'S SOMETHING WE DISCUSSED FREQUENTLY WITH THE

18   SPECIAL MASTER AND WITH PLAINTIFFS ON A NUMBER OF DIFFERENT

19   SETTINGS.

20             THE COURT:  MR. ANSORG, LET ME JUST HAVE YOU SLOW

21   DOWN JUST A LITTLE BIT.

22             MR. ANSORG:  YEAH.

23         AND THE CONTEXT FOR THIS DOCUMENT, YOUR HONOR, WHICH I

24   THINK IS SIGNIFICANT, IS THESE ARE ████████████████████████

25   ████████████████████████████████████████████████████████

1  ███████████████████████████████████████████

2  ██████████████████████████████████████

3  ████████████████████████████████████

4  ████████████    AT NO POINT HAVE WE ARGUED THAT IT'S IMPOSSIBLE TO

5  JOIN DATA.  BUT AT NO POINT HAVE PLAINTIFFS ALLEGED THAT IT'S

6  ONLY POSSIBLE OR IMPOSSIBLE TO JOIN THE DATA.

7       THE ALLEGATIONS THAT WERE BROUGHT IN THE COMPLAINT RELATED

8  TO GOOGLE FINGERPRINTING USERS.  THE EVIDENCE HAS SHOWN THAT

9  GOOGLE DOES NOT FINGERPRINT USERS.  IN FACT, PLAINTIFFS ARE NOW

10 ASKING US TO GO OUT AND FINGERPRINT THOSE USERS.  █████████████

11 ███████████████████████████████████████████████████

12 ██████████████████████████████████████

13 ███████████████████████████████████

14 ███████████████████████████████    AND

15 THAT'S AN ENTIRELY DIFFERENT MATTER, YOUR HONOR, THAN THE ONE

16 THAT WE ARE DEALING WITH TODAY.

17       SO THIS IS THE MAIN ISSUE I WANTED TO RAISE.  IF WE GO

18 JUST TO OUR SLIDE DECK, AND THIS IS G2, AND I BELIEVE EVERYBODY

19 HAS THIS.  AND MR. BRUSH, LET ME KNOW IF YOU DON'T HAVE IT AND

20 I WILL TRY AGAIN TO THROW UP THE SLIDE, BUT THE SECURITY

21 SETTINGS HAVE LOCKED IT DOWN, SO RIGHT NOW IT'S DIFFICULT.

22       MR. BRUSH:  MR. ANSORG, BY ALL MEANS, IF YOU ARE

23 REFERENCING EITHER PLAINTIFF'S OR YOUR DECK, JUST CALL OUT THE

24 SLIDES, I HAVE BOTH OF THEM IN FRONT OF ME RIGHT NOW.

25       MR. ANSORG:  OKAY.  THANK YOU, MR. BRUSH.

1          SO G2, TAKING A STEP BACK, AND THIS IS WHAT MR. SHAPIRO

2     REFERENCED, WE HAD EXTENSIVE DISCOVERY IN THIS CASE,

3     YOUR HONOR, NOT JUST THROUGH THE SPECIAL MASTER PROCESS, WHICH

4     HAS COME AT THE END OF THIS, BUT WE ARE AT 14 MONTHS, MORE THAN

5     200 RFP'S, THERE'S MILLIONS OF PAGES THAT HAVE BEEN PRODUCED,

6     THERE'S A REASON WHY PLAINTIFFS ASK ABOUT A LOT OF DIFFERENT

7     CODE WORDS, KEY WORDS, PROJECTS AT GOOGLE, BECAUSE THERE'S BEEN

8     EXTENSIVE -- A HUGE AMOUNT OF DISCOVERY IN THIS CASE.

9          THE SPECIAL MASTERS CORRECTLY HELD THAT SOURCE CODE AND

10    CLEAN ROOM ACCESS ARE NOT WARRANTED IN THIS CASE AND THAT

11    SAMPLES OF ENTRIES WITHOUT THE X CLIENT DATA HEADER SHOULD ALSO

12    NOT BE PRODUCED.  MOREOVER, HE STATED SOMETHING THAT IS WIDELY

13    KNOWN IN THE INDUSTRY, THAT IP ADDRESSES ARE JUST NOT RELIABLE

14    INDICATORS FOR INDIVIDUALS.

15          THE COURT:  IP ADDRESSES BY THEMSELVES.

16          MR. ANSORG:  THAT'S RIGHT, YOUR HONOR.

17          SO MS. BONN, EARLIER, REFERENCED LEGAL ARGUMENTS THAT WE

18    HAD MADE TO NARROW THE DATA AT ISSUE.  AND I WANTED TO TAKE

19    SLIGHT EXCEPTION WITH THAT, YOUR HONOR.  AND THAT'S JUST THAT

20    THESE AREN'T JUST LEGAL ARGUMENTS, THEY ALSO RELATE TO THE

21    ACTUAL DATA ARCHITECTURE.  AUTHENTICATED DATA IS KEPT SEPARATED

22    FROM THE UNAUTHENTICATED DATA.  THAT'S A DIFFERENT LOGIN

23    STRUCTURE.

24          I NOTED SOMETHING WE DISCUSSED WITH YOU PREVIOUSLY, BUT IN

25    THIS CASE WE ARE DEALING WITH A VERY SPECIFIC CLASS, AND A

1    CLASS DEFINITION THAT'S TIED TO BROWSER INFORMATION IN PRIVATE

2    BROWSING MODE, AND USER ACTIONS THAT ARE DEFINED IN THE CLASS

3    AS YOU VISIT A WEBSITE THAT HAS GOOGLE ANALYTICS, OR YOU VISIT

4    A WEBSITE THAT HAS GOOGLE AD MANAGER, AND MOST IMPORTANTLY,

5    YOUR HONOR, YOU DID NOT LOG INTO YOUR GOOGLE ACCOUNT.  AND

6    THERE'S BEEN A LOT OF BACK AND FORTH ON THAT ISSUE, AND I THINK

7    ON JUNE 2ND, MR. MAO TOLD YOU THAT INCOGNITO, BY DEFINITION, IS

8    A LOGGED OUT STATE.

9         SO HE'S TAKEN THOSE TO HEART WHEN WE ARE GOING OUT AND

10   TRYING TO FIGURE OUT WHAT IS THE RELEVANT INFORMATION THAT CAN

11   BE LINKED AND TIED TO SOMETHING.  THE STARTING POSITION HERE IS

12   ONE IN WHICH WE ARE FOCUSED ON SOMETHING EXTREMELY NARROW AND

13   TARGETED, BUT AT THE SAME TIME, IT'S STILL EXPANSIVE BECAUSE

14   THERE'S A LOT OF DIFFERENT GOOGLE SERVICES THAT DRAW ON THE

15   DATA.

16        ONE OF THE TOPICS WE WANTED TO TOUCH ON IS JUST THE BURDEN

17   THAT'S ACTUALLY ASSOCIATED WITH GOING OUT AND IDENTIFYING THE

18   ▪ DIFFERENT SOURCES, RUNNING THE SEARCHES, PROVIDING THE FIELD

19   INFORMATION.  AND IT MAY APPEAR AS IF GOOGLE SIMPLY HAS ONE BIG

20   DATA LAKE WHERE YOU CAN PUSH A BUTTON AND SOMETHING WOULD BE

21   PRODUCED, BUT BECAUSE OF THE NATURE OF DIFFERENT PRODUCTS,

22   THAT'S SIMPLY NOT THE CASE.

23        IN ANY GIVEN INSTANCE, IF WE ARE WORKING WITH A PRODUCT,

24   WE ARE WORKING WITH A TEAM OF ENGINEERS, THEY HAVE

25   SPECIALIZATIONS FOR EACH ONE TO IDENTIFY THE ▪ SOURCES.  WE

1    ARE WORKING WITH A NUMBER OF ENGINEERS OVER A NUMBER OF DAYS,

2    AND THEN THAT INFORMATION HAS TO BE VERIFIED AS WE MOVE

3    FORWARD.  THE SAME IS TRUE FOR THE ███ DATA SOURCES THAT WE

4    IDENTIFIED FOR CALHOUN.

5         THE FIELD DESCRIPTIONS COMPILATIONS IS ONE THAT'S ALSO

6    ASSOCIATED WITH SIGNIFICANT BURDEN.  AND HERE, WE UNDERSTAND IT

7    MAY APPEAR IF THERE'S ALWAYS A FIELD, THERE SHOULD BE A FIELD

8    DESCRIPTION.  BUT BY VIRTUE OF HOW THE SYSTEM IS ORGANIZED WITH

9    THE PROTO'S, A LOT OF DIFFERENT LOGS WILL DRAW ON THE SAME

10   PROTO.  THE FIELD NAME WOULD REMAIN THE SAME, BUT THE USES IN

11   THE FIELD DESCRIPTIONS UNDER EACH LOG WOULD BE DYNAMIC.

12        SO YOU ACTUALLY HAVE TO SIT DOWN AND WORK WITH ENGINEERS.

13   AND FOR THE SOURCES THAT WE PROVIDED, WE AGAIN HAD TO SIT DOWN,

14   ENGINEERS HAD TO HAND-CODE INFORMATION, WE HAD TO PULL AND

15   PROVIDE THAT.

16        FINALLY, RUNNING THE SEARCHES ACROSS THE DATA SOURCES ALSO

17   HAS VERY SPECIFIC BURDENS ASSOCIATED WITH THEM.  THE MOST

18   SIGNIFICANT ONE IS THAT THERE'S A MATERIAL DIFFERENCE BETWEEN

19   SEARCHING ANY DATA THAT'S OLDER THAN ███ DAYS, OR DATA THAT'S

20   YOUNGER THAN ███ DAYS.

21        DATA THAT'S OLDER THAN ███ DAYS REQUIRES CONSTRUCTION ON

22   AN ENTIRELY DIFFERENT PIPELINE, DIFFERENT PROMPTS, YOU

23   BASICALLY HAVE TO WRITE A DIFFERENT SCRIPT.

24        DATA THAT'S YOUNGER, THAT CAN BE SEARCHED BY THE DREMEL.

25   THE DREMEL TOOL, AS PLAINTIFFS REFERENCED EARLIER, IS SOMETHING

1    THAT'S USED TO SEARCH LOGS, IT'S NOT USED TO SEARCH THE KEY

2    VALUE STORAGE INFORMATION WHICH THEY HAVE BEEN REFERRING TO.

3          SO WHEN WE ACTUALLY LOOK AT THE DATA FLOW THAT'S AT ISSUE,

4    YOUR HONOR, AND THIS IS DIRECTLY RELEVANT TO WHY THE SOURCES

5    HAVE BEEN SELECTED, IT'S ONE IN WHICH A ████████ ID IS SET IN A

6    COOKIE, AND THAT'S THE ID COOKIE.  WHEN YOU GO INTO PRIVATE

7    BROWSING MODE -- AND HERE I WOULD ASK YOU TO JUST JUMP AHEAD TO

8    G11 -- WHEN YOU GO INTO PRIVATE BROWSING MODE, COOKIES WILL BE

9    SET WHEN YOU VISIT A CERTAIN SITE.  YOU LEAVE PRIVATE BROWSING

10   MODE, THE COOKIES ARE DELETED.  YOU GO BACK IN NEW PRIVATE

11   BROWSING MODE, YOU VISIT THE EXACT SAME WEBSITE FIVE MINUTES

12   LATER, NEW ██████ ID IS SET WITHIN A NEW COOKIE, AND IT'S

13   REPEATED AGAIN, AND AGAIN, AND AGAIN.

14         AND THE REASON WHY WE HAVE THIS HERE, AND THIS IS

15   SOMETHING WE DEVELOPED IN COMMUNICATION WITH THE BROWN

16   PLAINTIFFS IN RESPONSE TO THE SPECIAL MASTER'S REQUEST, IS THAT

17   IT BEARS DIRECTLY ON THE DATA THAT'S RELEVANT.

18         THE PROBLEM WE HAVE HAD IN THIS CASE, YOUR HONOR, IS THAT

19   PLAINTIFFS FAILED TO PRESERVE THEIR RELEVANT IDENTIFIERS, AND

20   THEREFORE WE HAVE HAD TO ASK THEM TO GO AND RUN THE NEW

21   ██████ ID'S FOR US TO BE ABLE TO PRODUCE THE RELEVANT

22   AUTHENTICATED DATA.

23         THEY DID THAT, WE PRODUCED THAT INFORMATION, WE ARE STILL

24   IN THE PROCESS OF PRODUCING INFORMATION FOR THE UM ID'S WHICH

25   THEY HAVE ALSO ASKED US TO DO.  SO THE NOTION THAT WE HAVE NOT

1    PRODUCED UNAUTHENTICATED DATA IS SIMPLY INCORRECT, YOUR HONOR.

2         I WANT TO GO BACK TO TWO OTHER POINTS HERE ON G9, G10, AND

3    THEN WE ARE GOING TO SKIP AHEAD AND RESERVE THE BALANCE OF OUR

4    TIME.

5         PLAINTIFFS HAVE BEEN REFERENCING DEVICE ID'S.  WE HAVE HAD

6    A LOT OF CONVERSATIONS ABOUT THOSE, YOUR HONOR, WITH THE

7    SPECIAL MASTER AND WITH PLAINTIFFS, THEY ARE CALLED AD ID'S

8    IDFA'S, THEY ARE USED FOR APP BROWSING MODES, THEY ARE NOT USED

9    FOR THE DATA FLOW IN THIS CASE.  THEY'RE NOT USED FOR BROWSER

10   COMMUNICATIONS.  WE DON'T BELIEVE WE SHOULD HAVE TO SEARCH FOR

11   THOSE BECAUSE WE ARE GUARANTEED TO PULL INFORMATION THAT'S NOT

12   RELEVANT.  IT MAY BE RELEVANT TO A DIFFERENT CASE THAT OPPOSING

13   COUNSEL IS ALSO SUING GOOGLE FOR, BUT IT'S NOT RELEVANT TO THE

14   ONE BEFORE US.

15        FINALLY, THE PPID'S, AND HERE I THINK THERE'S A

16   SIGNIFICANT MISUNDERSTANDING, AND IT MADE SENSE TO ME MUCH MORE

17   WHEN MR. MAO WAS PRESENTING JUST NOW, PLAINTIFFS APPEAR TO

18   BELIEVE THE PPID IS SOMEHOW MAPPED TO THE SAME ID THAT WOULD BE

19   SET TO A ▉▉▉▉▉▉▉ COOKIE, AND THAT'S SIMPLY NOT THE CASE.

20        WHAT HAPPENS IS A PPID IS GENERATED, WHICH IS A PUBLISHER

21   PROVIDED IDENTIFIER.  YOU RECEIVE IT FROM THE *NEW YORK TIMES.*

22   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

23   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

24   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

25   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

1    ████████████████████████████████████

2    ████████████████████████████████████

3    ███████████████████████████

4    ███████████████████████████████████

5    ██████████████████████████████████████

6    ████████████████████████████████

7        SO IF PLAINTIFFS NEEDED, YOUR HONOR, AND WHAT THEY HAVE

8    BEEN LOOKING FOR, IS SOME KIND OF REPLACEMENT FOR X CLIENT DATA

9    HEADER, SOMETHING THAT WOULD JOIN ALL THESE SEPARATE SESSIONS

10   THAT WE WERE TALKING ABOUT EARLIER, AND THE PPID DOES NOT DO

11   THAT, IT DOES NOT EXIST.

12       SO THE SPECIAL MASTER CORRECTLY HELD THAT IP ADDRESS, ON

13   ITS OWN, AS YOU SAID YOUR HONOR, CANNOT BE USED TO RELIABLY

14   IDENTIFY A PERSON.

15       ONE OF THE OTHER ASPECTS THAT OPPOSING COUNSEL HAS RAISED

16   WHICH I WOULD LIKE TO FOCUS ON, AND THIS IS AT SLIDE G12, IF

17   YOU WOULD TURN TO THAT, THEY ARE REFERENCING DIFFERENT

18   PROGRAMS, AND THEY ARE CALLED ████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████

21   ███████████████████████████████████

22   ██████████████████████████.

23       AND HERE I'M PROVIDING A SNAPSHOT OF A PARTICULAR DOCUMENT

24   THAT PLAINTIFFS SHOWED, AND INCLUDED WITHIN THEIR MATERIALS,

25   AND THE KEY HERE AT THE TOP IF YOU LOOK AT IT IS THE BASIC ID,

1     ████ ID, GAIA ID, ████ ID, AND THE POINT HERE,

2     YOUR HONOR, IS THAT FOR THIS TO WORK, YOU NEED BOTH OF THE ID'S

3     IN THE SAME COOKIE JAR AT THE SAME TIME.  THAT ONLY HAPPENS

4     WHEN A USER IS LOGGED IN TO THEIR GOOGLE ACCOUNT.

5          AND IN THIS CASE, PLAINTIFFS HAVE NOT ALLEGED THAT THEY

6     ARE NOT LOGGED INTO THEIR GOOGLE ACCOUNT IN PRIVATE BROWSING

7     MODE.  THERE IS NO SCENARIO UNDER THE CLASS DEFINITION IN WHICH

8     THE GAIA ID AND THE ████ ID ARE IN THE COOKIE JAR AT THE

9     SAME TIME, AND FOR THAT REASON, THE ████████████

10    ARE NOT RELEVANT OR AT ISSUE HERE AND SHOULD NOT BE BECAUSE WE

11    ARE ALSO KEEN ON MOVING THIS PROCESS FORWARD AND FINDING SOME

12    RESOLUTION AFTER THE 14 MONTHS.

13         SO IF YOU GO BACK, AND THIS IS NOW TO G14, AND THIS IS THE

14    POINT I WAS JUST RAISING WHICH NOW MAKES SENSE TO ME,

15    YOUR HONOR, AND WE HAVE HAD A LOT OF MEET AND CONFERS WITH

16    OPPOSING COUNSEL, AND SO MUCH SO THAT I BELIEVE MR. MAO AND I

17    KNOW EACH OTHER VERY WELL, AND THERE'S DAYS I SPEAK TO HIM MORE

18    THAN TO MY FAMILY, WHO I LIVE WITH.

19         IF YOU SEE THAT DIAGRAM BEFORE YOU, YOUR HONOR, ████████

20    ████████████████████████████████████████

21    ██████████████████████████████████

22    ██████████████████████████████████

23    ████████████████████████████████████

24    ████████████████████████████.

25         THAT'S A SERVICE THAT GOOGLE PROVIDES FOR PUBLISHERS, THE

1    *NEW YORK TIMES* PROVIDES INFORMATION, AND ONE OF THE

2    REQUIREMENTS FOR THE *NEW YORK TIMES* TO SEND THE PPID TO GOOGLE

3    IS FOR THERE TO BE NO PERSONAL IDENTIFYING INFORMATION IN IT.

4    ██████████████████████████████████████████████

5    ██████████████████████████████████████████████

6    ██████████████████████████████████████████████

7    ████████████

8            THE COURT:  MR. ANSORG, WHAT YOU WERE JUST POINTING

9    TO, I SEE THE PPID CHAIN ON THE FAR RIGHT, AND THEN TO THE

10   RIGHT, THE MIDDLE, IS THE ███████ COOKIE REFERENCE?

11           MR. ANSORG:  YES.  THAT'S RIGHT, YOUR HONOR.

12           THE COURT:  IS THAT WHAT YOU WERE SAYING?

13           MR. ANSORG:  YES.  WHAT I'M SAYING IS, AND I NOW

14   UNDERSTAND WHY MS. BONN WAS REFERRING TO THE PPID, THE

15   ████████, AS WELL AS MR. MAO, AND THERE SEEMS TO BE A

16   MISUNDERSTANDING THAT THE PPID IS USED TO GENERATE THE ████████

17   ID THAT'S THE SAME OR THAT'S TIED TO THE ONE IN THE COOKIE.

18   BUT IT ACTUALLY HAS NOTHING TO DO WITH THAT, IT'S NOT USED FOR

19   ANY OF THOSE PURPOSES.

20           SO I THINK THIS IS A FUNCTION OF THERE'S A LARGE

21   ORGANIZATION WITH A LOT OF PEOPLE WORKING ON DIFFERENT THINGS,

22   AND YOU WILL OCCASIONALLY HAVE A SEMANTIC CLASH WHERE A TERM

23   COULD BE USED TO DESCRIBE A PROCESS AS WELL AS AN ACTUAL

24   OBJECT.

25           AND HERE THE PPID MAP ████████ HAS NOTHING TO DO WITH THE

1    ████████    THAT WE HAVE BEEN DISCUSSING PREVIOUSLY THAT'S RELATED

2    TO OUR ISSUES.

3         AND WITH THAT, YOUR HONOR, UNLESS YOU HAVE ANY FURTHER

4    QUESTIONS, I WOULD LIKE TO KEEP THE BALANCE OF TIME.

5         I'M SORRY ABOUT THE PRESENTATION NOT WORKING.

6         THE COURT:  NOT A PROBLEM, YOU ARE NOT ALONE IN THAT

7    REGARD TODAY, MR. ANSORG.

8         ALL RIGHT.  BEFORE I BRING PLAINTIFFS BACK, SPECIAL MASTER

9    BRUSH, FURTHER COMMENT?  GOOGLE'S COMMENTS SEEM TO BE DIRECTED

10   OR IN RESPONSE TO PLAINTIFF'S OBJECTIONS, WITH SOME TRACKING OF

11   THEIR OBJECTIONS.  QUESTIONS OR CONCERNS AT THIS JUNCTURE?

12         MR. BRUSH:  YEAH.

13        JUST MAYBE, AGAIN, WE HAD DISCUSSED THIS QUITE A FEW TIMES

14   WITH GOOGLE COUNSEL.

15        GOING BACK TO G5 WITH THE FIELD DESCRIPTION, AND AGAIN,

16   JUST TO CLARIFY MY MACRO UNDERSTANDING OF HOW THIS DATA IS

17   COMPILED, MR. ANSORG, IS THAT IT'S -- THIS IS A GENERAL

18   STRUCTURE OF A DATABASE THAT'S GOING TO -- IS THERE A DATABASE

19   SCHEMA THAT DOES POINT AS KIND OF AN INDEX TO FIELD DEFINITIONS

20   THAT COULD BE USED AS OPPOSED TO GOING TO EACH INDIVIDUAL TABLE

21   AND EXTRACTING THE DEFINITION?

22         MR. ANSORG:  YES.  THANK YOU FOR THAT QUESTION,

23   SPECIAL MASTER BRUSH.

24        SO THE WAY THE FILES ARE ENCODED IS WE COULD THINK OF THE

25   PROTOCOL BUFFERS AS SORT OF SEPARATE SOURCE CODE THAT A LOT OF

1   THE DIFFERENT LOGS WILL DRAW ON.



24                                          AND WE HAVE DONE SO AND

25   PROVIDED, I THINK, MORE THAN ▮ FIELD AND FIELD DESCRIPTIONS

1      FOR THE BROWN PLAINTIFFS.

2              ONE OF OUR CONCERNS, IN GENERAL, IS THAT THE FOCUS ON

3      FIELD AND FIELD DESCRIPTIONS, AS WE PROCEED, ISN'T AS HELPFUL

4      IN LANDING US AT A CLOSING LINE, BECAUSE THE MEET AND CONFERS

5      TOOK ON THE VALENCE IN WHICH WE WOULD BE ASKED, WELL, WHAT DOES

6      THIS PARTICULAR FIELD MEAN WHAT DOES IT MEAN WHEN YOU HAVE THIS

7      DESCRIPTION?  AND FRANKLY, THAT'S NOT SOMETHING THE ATTORNEYS

8      ARE CAPABLE OF RESPONDING TO.  EACH QUERY IS ONE WHERE WE WOULD

9      HAVE TO GO OUT AND WORK WITH THE ENGINEERS AND GENERATE FURTHER

10     RESPONSES.

11             SO AS AN INTELLECTUAL EXERCISE, IT'S SEEN TO SLOW THINGS

12     DOWN, AND THERE'S ONE WHERE THE BURDEN FOR SOURCES WHERE

13     THERE'S MORE THAN ███  FIELDS, WAS OVERWHELMING.  IT'S WHERE

14     WE WOULD BE WORKING WITH MULTIPLE ENGINEERS FOR MULTIPLE DAYS

15     TO SIT AND COMPILE SOMETHING THAT OPPOSING COUNSEL WOULD BE

16     ABLE TO UNDERSTAND.

17                 MR. BRUSH:  GOT YOU.

18             SO AS FAR AS YOU CAN POSIT MY POSSIBLE SENSE OF CONFLATING

19     THE LOG ISSUES WITH THE DATA RATE.  BUT IT SOUNDS LIKE THE LOGS

20     ARE -- THEY ARE NOT IN ANY KIND OF STRUCTURED DATABASE FORMAT,

21     IS WHAT I'M HEARING.

22             SO LET ME ASK, WHERE DOES THE STUFF GET WRITTEN TO DISK?

23     IF IT'S COMING FROM PROTOCOL BUFFER DOWN TO STORAGE AREA, WHERE

24     DOES IT GO?

25                 MR. ANSORG:  ████████████████████████

1 ██████████████████████████████████████████

2 ██████████████████████████████████████████

3 ████████████████████████████████████████

4 ██████████████████████████████████████

5 ██████████████████████████████████████████

6 ████████

7   ███████████████████████████████████████

8 ████████████████████████████████████████

9 ██████████████████████████████████████

10       MR. BRUSH:  RIGHT.

11       MR. ANSORG:  THAT'S THE ████ KEY VALUE DATABASE.

12 FOR THOSE, OF COURSE IT WAS MUCH EASIER FOR US TO PROVIDE THE

13 FIELD AND FIELD DESCRIPTIONS, SIR, AND THOSE ARE THE ONES WE

14 DID PROVIDE.  BUT FOR THE ████████████████████████

15 ██████████████████.

16       MR. BRUSH:  I UNDERSTAND.

17       THE COURT:  DOES THAT ANSWER YOUR QUESTION, SPECIAL

18 MASTER BRUSH, ABOUT WHERE IS IT WRITTEN, WHERE DOES IT GO?

19       MR. BRUSH:  IT DOES, YEAH.

20       THE COURT:  ALL RIGHT.

21       MR. BRUSH:  I HAVE A BETTER UNDERSTANDING.

22    THANK YOU.

23       THE COURT:  OTHER QUESTIONS FROM GOOGLE'S

24 PRESENTATION AT THIS TIME?  FROM EITHER YOU OR MR. SCHMIDT?

25       MR. BRUSH:  NO, NOTHING FROM US.

```
1              THANK YOU, YOUR HONOR.

2              MR. MAO:  SORRY, YOUR HONOR, MAY I JUST ADDRESS THE

3     POINTS WHICH WERE MADE IN RESPONSE TO MR. BRUSH?  IT WILL

4     LITERALLY TAKE ME A MINUTE.

5              THE COURT:  BRIEFLY.

6         MR. MAO WOULD BE LIKE TO HEARD IN RESPONSE TO MR. ANSORG'S

7     COMMENT.  MR. MAO.

8              MR. MAO:  SORRY, MR. BRUSH, IT'S KIND OF HARD TO

9     ORIENT MY EYES BECAUSE IT'S LIKE YOU ARE THERE AND YOU ARE

10    HERE.  I APOLOGIZE.

11        SO MR. BRUSH, I DO THINK THAT -- SO ONE OF THE REASONS WHY

12    WE ARE DISCUSSING MORE THAN ███ SOURCES IS BECAUSE WE CAN POINT

13    TO SEVERAL TABLES.  FOR EXAMPLE, THERE'S A PUBLISHER PROVIDED

14    ID TABLE THAT STORES THE MAP ████████ -- SORRY, PPID MAPPED TO

15    ████████.

16             THE COURT:  SLOW DOWN JUST A LITTLE BIT, MR. MAO,

17    BECAUSE THE COURT REPORTER.

18             MR. MAO:  SORRY.

19        THERE'S A TABLE CALLED "PUBLISHER PROVIDED ID'S" THAT SITS

20    BETWEEN ██████ AND THE ████████████████████

21    ██████ IN WHICH WE HAVE BEEN TRYING TO MEET AND CONFER.  AND

22    THEN ONE OF THE OTHER SOURCES IN WHICH MR. ANSORG AND I HAVE

23    BEEN ARGUING ABOUT SINCE FEBRUARY, IS SOMETHING CALLED ████

24    ████████, WHICH IS LITERALLY A RAW LOG AS TO WHERE ALL THE

25    DATA CONVERGES FOR ████████████ AND ALSO IP ADDRESSES.
```

1       AND SO TAKING THE ISSUE WITH THE █ SOURCES, BECAUSE WE

2   UNDERSTOOD THAT WAS THE BEGINNING, BUT WE WERE GOING TO GET TO

3   THAT, SO WE WANTED TO MAKE SURE WE WERE TALKING ABOUT █

4   SOURCES, WE ARE NOT SAYING THE FULL UNIVERSE IS GOING TO BE

5   LIMITED TO THIS BECAUSE WE HAVE NOT BEEN ABLE TO SHOW THE

6   GOOGLE DOCUMENTATION.  AND THAT IS WHY WE BELIEVE CLOSURE ON

7   THIS ISSUE IS TOO EARLY AND PREMATURE.

8       I BELIEVE THE QUESTIONS YOU ASKED, CLEARLY SHOW, AND YOU

9   CAN SEE AS WELL, SPECIAL MASTER BRUSH, THAT MULTIPLE PROCESSES

10  ARE TAPPING INTO THESE TABLES.  CERTAINLY THERE MUST BE LOG

11  SOURCES AND TABLES THAT ARE COMPILED IN THE MIDDLE WHICH HAVE

12  NOT BEEN IDENTIFIED JUST YET.

13      THAT'S IT.  THANK YOU, YOUR HONOR.

14          THE COURT:  ALL RIGHT.

15  QUESTIONS FOR MR. MAO, MR. BRUSH?

16          MR. MAO:  OH, SORRY.

17          MR. BRUSH:  YES.

18      YOU SAID, MR. MAO, THAT THEY SUSPECT MUST BE OR DO YOU

19  HAVE EVIDENCE THAT THERE IS?

20          MR. MAO:  THERE IS.

21      WE CAN POINT TO THOSE SPECIFIC TABLES AND LOG SOURCES

22  USING GOOGLE DOCUMENTATION, IT'S JUST, YOU KNOW, WE REALIZE

23  THAT YOU HAD A VERY DIFFICULT JOB THAT NEEDED TO BE DONE VERY

24  QUICKLY AND WE WERE TRYING TO KEEP TO THE TASK AND STICK TO THE

25  PROCEDURE REQUIREMENTS.

```
1              THANK YOU.

2                   MR. BRUSH:  UNDERSTOOD.  THANK YOU.

3                   THE COURT:  THANK YOU, MR. MAO.

4                   MS. BONN:  AND IF I COULD, YOUR HONOR, I WOULD LIKE

5       JUST A ONE MINUTE REBUTTAL.

6                   THE COURT:  ONE MOMENT, MS. BONN, LET ME JUST MAKE A

7       NOTE.

8              ALL RIGHT.  YOU HAD RESERVED SOME TIME.

9                   MS. BONN:  THANK YOU, YOUR HONOR.

10        I REALIZE WE MAYBE USED MORE THAN I INTENDED, SO I WILL

11       TRY TO KEEP IT BRIEF.

12        I JUST WANTED TO ADDRESS A COUPLE OF KEY POINTS.

13        NUMBER ONE, WE DIDN'T REALLY HEAR ANYTHING WHATSOEVER

14       ABOUT WHY LOG ENTRIES AND DATA SOURCES THAT SHOW AN ABSENCE OF

15       AN X CLIENT DATA HEADER SHOULD SOMEHOW BE OUT OF PLAY.  AND IN

16       FACT, THE DOCUMENT WE SUBMITTED AS EXHIBIT B, ███████████

17       ███████████████████████████████████████████████████████████

18       █████████████████.  SO THAT'S POINT ONE.

19        POINT TWO IS MR. ANSORG SAID PLAINTIFFS HAVEN'T PRESERVED

20       CERTAIN IDENTIFIERS AND THAT'S WHY WE CAN'T LOOK THIS UP.  AND

21       THIS IS THE PROBLEM WE HAVE BEEN HAVING FROM DAY ONE, BECAUSE

22       ██████████████████████████████████████████

23       ████████████████████████████████████████████████

24       █████████████████████████████████████████

25       ██████████████████████████████████████████████
```

1    ████████████████████████████████████████████████

2    ████████████████████████████████████████████.

3         GOOGLE SAYS NO, WE ARE NOT GOING TO DO THAT, INSTEAD

4    PLAINTIFFS, WHY DON'T YOU TELL US WHAT YOUR IDENTIFIERS ARE,

5    AND THEN IF YOU CAN TELL US WHAT YOUR IDENTIFIERS ARE, THEN WE

6    WILL LOOK IT UP.

7         AND THIS HAS THE PROCESS JUST COMPLETELY BACKWARD.  AND

8    THIS IS REALLY THE PROBLEM THAT WE ARE FACING.

9         POINT THREE, GOOGLE SAID, AND THEY HAVE BEEN SAYING IN

10   THEIR BRIEFS AND IN THEIR PAPERS, IN OUR ORDINARY COURSE OF

11   BUSINESS, OKAY, WE DON'T JOIN DATA SOURCE A AND DATA SOURCE B.

12        FROM MY PERSPECTIVE, NUMBER ONE, WE ARE LAWYERS

13   REPRESENTING A PUTATIVE CLASS AND WE ARE ALLOWED TO USE DATA

14   THAT GOOGLE HAS IN ORDER TO IDENTIFY CLASS MEMBERS.  THE FACT

15   THAT GOOGLE SAYS, WELL, WE DON'T DO THAT IN OUR ORDINARY COURSE

16   OF BUSINESS, IS BESIDE THE POINT.

17        WE ARE IN DISCOVERY IN LITIGATION, WE HAVE, FRANKLY, AN

18   OBLIGATION TO TRY TO SEE WHAT WE CAN DO TO DO THAT.  SO GOOGLE

19   SAYING IN OUR ORDINARY COURSE OF BUSINESS, WE DON'T TO THIS, I

20   DON'T SEE WHY THAT MEANS THAT CLASS LAWYERS CAN'T USE THE DATA

21   IN ORDER TO TRY TO IDENTIFY CLASS MEMBERS.

22        FINALLY, GOOGLE SAYS THINGS LIKE, WE DON'T JOIN THIS DATA

23   WITH THAT DATA.  AND I THINK THAT THAT'S A LITTLE BIT OF AN

24   INCOMPLETE PICTURE, BECAUSE WHAT WE FIND IS THAT GOOGLE LINKS

25   IDENTIFIERS AND MAPS IDENTIFIERS FROM THESE DIFFERENT SOURCES.

1    AND BY THAT LINKING AND BY THAT MAPPING, WE CAN THEN TRY TO

2    IDENTIFY CLASS MEMBERS.

3         AND I'M JUST GOING TO SHARE A SLIDE THAT I THINK SORT OF

4    ILLUSTRATES THIS ISSUE.  GOOGLE HAS SOMETHING CALLED A



17         THE COURT:  IS THAT IN THE SLIDE DECK, MS. BONN?

18         MS. BONN:  YES, YOUR HONOR.  I BELIEVE IT'S TOWARD

19    THE END, 46, 47, 48.

20         SO, YOU KNOW, AND JUST TO BRING US BACK TO THE ISSUE, WE

21    HAVE SPENT MONTHS HAVING THESE DISCUSSIONS WITH MR. ANSORG AND

22    OTHERS, WHERE IT'S THIS IS NOT HOW THAT WORKS, THIS ISN'T

23    JOINED WITH THIS, YOU CAN'T DO THIS WITH THAT.  AND REALLY

24    WHERE WE ARE, IS WE ARE SORT OF LEFT IN THE DARK.

25         AND I THINK YOUR HONOR CAN TELL WITH THIS DISCUSSION THAT

1    JUST HAPPENED WITH THE SPECIAL MASTERS, THESE ARE COMPLEX

2    SYSTEMS, SOME OF THEM, INCLUDING ██████████, DO HAVE A LARGE

3    NUMBER OF FIELDS, AND FRANKLY, I THINK THE EASIEST WAY TO CUT

4    THROUGH SOME OF THIS AND GET TO A POINT WHERE WE CAN UNDERSTAND

5    HOW THE SYSTEMS WORK SO THAT WE CAN FORMULATE NARROW, TARGETED

6    SPECIFIC QUERIES, IS TO ALLOW OUR EXPERT TO INSPECT THE ████

7    TOOL, TO INSPECT THE DREMEL TOOL, UNDER SUPERVISION BY THE

8    SPECIAL MASTER AND GOOGLE, RUNNING SEARCHES OR QUERIES THAT CAN

9    BE LINKED TO OUR PLAINTIFFS OR THEIR DEVICES.

10        SO USING THINGS LIKE THEIR IP ADDRESS, THEIR USER AGENT

11   STRING OR OTHER IDENTIFIERS.  THAT IS GOING TO GIVE US SO MUCH

12   MORE INSIGHT INTO HOW THESE SYSTEMS WORK AT GOOGLE, HOW THESE

13   FIELDS CAN BE JOINED, MAYBE HOW THEY CAN'T, SO THAT KEY CAN

14   THEN FORMULATE AN INTELLIGENT QUERY.

15        BUT TO TRY TO DO THAT, LARGELY IN THE DARK, THROUGH A

16   PROCESS IN WHICH GOOGLE SAYS, WELL INSTEAD OF JUST LETTING YOU

17   SEE THE TOOL AND TEST THE TOOL AND INSPECT THE TOOL AND THEN

18   COME BACK WITH A QUERY, WE ARE GOING TO HAVE A PROCESS WHERE WE

19   DESCRIBE SOME FIELDS BUT WE CAN'T GET YOU ALL OF THEM, THAT'S

20   WHAT'S CREATING A LOG JAM.

21        AND YOU KNOW, I UNDERSTAND THAT THINGS, LIKE SOURCE CODE

22   AND TOOLS, ARE SENSITIVE.  I THINK THE COURT HAS BEEN VERY

23   CAUTIOUS, PROBABLY RIGHTLY SO, IN TRYING TO GET THERE, BUT I

24   THINK AT THIS POINT, THERE IS A PROCESS WE CAN PUT IN PLACE

25   THAT WILL ALLOW OUR EXPERTS TO INSPECT WHAT THEY NEED TO

1    INSPECT UNDER SUPERVISION, MAKING SURE IT'S NOT ABUSIVE, AND

2    THAT'S GOING TO HELP INFORM NOT ONLY US, BUT GOOGLE, THE

3    SPECIAL MASTER, AND THE COURT, SO THAT WE CAN ACTUALLY MAKE

4    TARGETED SEARCH REQUESTS FOR THE DATA WE NEED IN A WAY THAT'S

5    NOT BURDENSOME, THAT GETS US TO THAT FINISH LINE.  AND THAT IS

6    REALLY WHAT WE ARE ASKING FOR, YOUR HONOR.

7         THANK YOU.

8              THE COURT:  ALL RIGHT.  THANK YOU, MS. BONN.

9         YOU HAD IDENTIFIED YOUR FIRST COMMENT WAS ON THE X CLIENT,

10   X DATA HEADER, AND THE THIRD WE GOT DOWN INTO WHAT WAS AND

11   WASN'T JOINED.  WHAT WAS YOUR SECOND?

12             MS. BONN:  MY SECOND POINT WAS THAT MR. ANSORG SAID

13   AT ONE POINT, PART OF WHY WE CAN'T SEARCH CERTAIN DATA, IS THAT

14   THE PLAINTIFFS HAVEN'T PRESERVED THEIR IDENTIFIERS.

15             THE COURT:  OH, THAT'S RIGHT.

16             MS. BONN:  AND THEY HAVE TO GIVE IT TO US.  AND WE

17   THINK THAT HAS IT SORT OF BACKWARDS.

18             THE COURT:  GOT IT.  GOT IT.

19             MS. BONN:  THANK YOU, YOUR HONOR.

20             THE COURT:  THANK YOU, MS. BONN.

21        ALL RIGHT.  FROM GOOGLE, FINAL COMMENTS.

22             MR. ANSORG:  YES, YOUR HONOR.  I WILL BE BRIEF.

23        AND WITH THE BALANCE OF MY TIME, I JUST WANT TO ADDRESS

24   FOUR DIFFERENT POINTS.

25             AND LET ME START OFF BY SAYING PLAINTIFFS ARE NOT IN THE

1    DARK, THEY JUST DON'T KNOW OR DON'T LIKE WHAT THE LIGHT IS

2    SHOWING.  WE HAVE HAD 14 MONTHS OF DISCOVERY.  THERE'S BEEN

3    30(B)(6) DEPOSITIONS ON THE VERY TOPIC OF ████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████.  SO IT'S NOT AN ISSUE WHERE

7    THERE'S NO REBUTTAL, IT'S ONE WHICH THERE'S TESTIMONY SAYING

8    WHY THAT'S NOT THE CASE.

9         PLAINTIFFS ARE ASKING FOR SOMETHING WHICH DOESN'T EXIST

10   FOR A REASON, YOUR HONOR, AND THAT'S BECAUSE PRIVATE BROWSING

11   WHEN YOU ARE LOGGED OUT, PREVENTS IDENTIFICATION BY DESIGN.

12   GOOGLE SYSTEMS ARE DESIGNED SO THAT THAT INFORMATION, THE

13   LOGGED OUT PRIVATE BROWSING USER IS NOT GOING TO BE IDENTIFIED.

14        OTHER BROWSERS IN PRIVATE BROWSING MODE WORK THE SAME WAY.

15   THIS SHOULDN'T BE A SURPRISE TO PLAINTIFFS BECAUSE THEY

16   SUBPOENAED APPLE, MICROSOFT, MOZILLA AND ASKED FOR INFORMATION

17   SUFFICIENT TO IDENTIFY ALL USERS WHO USE PRIVATE BROWSING MODE,

18   AND EACH OF THOSE COMPANIES INFORMED THEM THAT THAT INFORMATION

19   DOES NOT EXIST.

20        SO PLAINTIFFS ARE ASKING US, THEREFORE, TO FINGERPRINT

21   USERS SO THAT THEY COULD IDENTIFY THEM BY NAME.  NOW, EVEN IF

22   SOMETHING LIKE THAT COULD BE DONE IN ONE FORM OR ANOTHER, IT

23   PRESENTS PROFOUND PRIVACY IMPLICATIONS, YOUR HONOR.

24        AND THE BURDEN TO DO IT IS SIGNIFICANT.  THERE'S A BIG

25   DIFFERENCE BETWEEN AN ENGINEER SAYING, I'M CONCERNED THAT

1    COMBINING USER AGENT WITH AN IP ADDRESS COULD IDENTIFY A

2    PERSON, AND THEN ACTUALLY DOING THAT FOR ALL POTENTIAL CLASS

3    MEMBERS IN THE UNITED STATES.

4        WE WOULD HAVE TO GO OUT AND BUILD NEW SYSTEMS, VERIFY THEM

5    IN DIFFERENT FORMS.  AND THE AMOUNT OF INFORMATION AT THE

6    ███████ LEVEL, IT'S AN EXTREMELY BURDENSOME EXERCISE, AND ONE

7    THAT'S SURPRISED LAWYERS IN THE PRIVACY CASE THEY ARE SEEKING

8    TO BRING.

9    ████████████████████████████████████

10   ██████████████████████████████████████

11   █████████████████████████████████████

12   ███████████████████████████████████████

13   ████

14       INSTEAD, NOW PLAINTIFFS ARE ASKING US TO ENGAGE IN THE

15   SAME FINGERPRINTING STEPS, ASKING US TO SEARCH FOR ALL USER

16   AGENTS, TIED TO A VERY SPECIFIC USER AGENT.  IT'S A BIT LIKE

17   ASKING THE DMV, PROVIDE ME ALL RECORDS FOR EVERY TOYOTA SIENNA

18   YOU HAVE.  THESE AREN'T DESIGNED TO IDENTIFY THE INDIVIDUAL

19   DATA.

20       AT ONE POINT PLAINTIFFS SAY THAT IF YOU LOG IN IN YOUR

21   PRIVATE BROWSING MODE SESSION INTO GAIA, EVERYTHING YOU DID

22   BEFORE IS JOINED WITH YOUR INFORMATION.  AND THAT'S NOT TRUE.

23   AND IT'S SOMETHING THAT COULD BE EASILY TESTED.  IF PLAINTIFFS

24   GO IN, THEY CONSENT TO THE DIFFERENT SETTINGS, VISIT THE SITES,

25   THEY COULD DO IT WHEN THEY ARE LOGGED IN, THEY COULD DO IT WHEN

1    THEY ARE LOGGED OUT, THEY COULD SEE IF ANY OF THAT INFORMATION

2    ENDS UP.  IT DOESN'T, IT'S NOT THERE.  SO THAT'S SIMPLY NOT

3    TRUE.

4         BUT EVEN IF IT WERE TRUE, YOUR HONOR, IT WOULDN'T HELP

5    PLAINTIFFS BECAUSE THEY DEFINED THE CLASS IN A WAY IN WHICH

6    THEY NEVER LOG IN IN ONE FORM OR ANOTHER.

7         FINALLY, AND I KNOW THIS GOT LOST IN THE PRESENTATION,

8    YOUR HONOR, BUT WHEN MS. BONN CLOSES ON SAYING THE PPID IS

9    MAPPED TO THE ███████, THAT'S EXACTLY THE CONFUSION I WAS

10   TRYING TO ADDRESS EARLIER.

11   ████████████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   █████████████████████████████████████████████████

15   ██████████████████████████████████████████

16   ████████████████████████████████████████████

17   ██████████████

18        PLAINTIFF'S REQUEST FOR SOURCE CODE AND CLEAN ROOM ACCESS

19   WHEN WE DON'T HAVE THOSE BASICS WORKED OUT, ARE NOT WARRANTED.

20        AND WITH THAT, I CONCEDE MY TIME.  THANK YOU FOR YOUR

21   PATIENCE.

22             MR. SHAPIRO:  CAN I HAVE 60 SECONDS ON CLEAN ROOM,

23    YOUR HONOR?

24             THE COURT:  YOU HAVE 60 SECONDS ON CLEAN ROOM.

25             MR. SHAPIRO:  SO, YOUR HONOR I'M HOPING THAT YOU,

1    LIKE AS DID THE SPECIAL MASTER, ARE NOT LEANING TOWARDS

2    ORDERING A CLEAN ROOM.  BUT I JUST WANT TO EMPHASIZE THAT WHAT

3    AN EXTRAORDINARY STEP SOMETHING LIKE THAT WOULD BE, AND THE

4    IDEA THAT THAT'S GOING TO NARROW THE DISCOVERY FIGHTS IN THIS

5    CASE IS SEVERELY MISTAKEN.

6         IT'S LIKE THE HYDRA, THE DISPUTES THAT THAT WOULD GENERATE

7    ABOUT HOW IT WORKS, BUT NOT ONLY HOW IT WORKS, BUT WHAT

8    CONCLUSIONS COULD BE DRAWN FROM THEIR EXPERT NOODLING AROUND

9    USING GOOGLE TOOLS, WOULD MAKE WHAT'S JUST HAPPENED IN THE LAST

10   14 MONTHS SEEM LIKE NOTHING.  IT WOULD MULTIPLY GREATLY, NOT

11   ONLY THE WORK FOR EVERYONE, BUT THE DISPUTES FOR THIS COURT AND

12   FOR THE SPECIAL MASTER.

13        THANK YOU.

14          THE COURT:  THANK YOU.

15        ALL RIGHT.  NOPE, WE ARE DONE, WE ARE DONE.  I'VE HEARD

16   PLENTY.  AND I APPRECIATE EVERYONE KEEPING TRACK, AND TRYING TO

17   TRACK AND RESPOND APPROPRIATELY, AND I'M ONLY LOOKING DOWN AT

18   MY PHONE BECAUSE IT KEEPS TURNING OFF MY TIMER, AND I

19   APOLOGIZE, I'M NOT CHECKING SPORTS SCORES OR ANYTHING ELSE.

20        OKAY.  WE WILL TAKE 10 MINUTES AND THEN COME BACK FOR THE

21   CALHOUN CASE.  THAT WILL GIVE EVERYONE A CHANCE TO ADJUST

22   COMPUTERS AND PAPERS.

23        (WHEREUPON THE PROCEEDINGS WERE CONCLUDED.)

24

25

1

2

3

4                            **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    _____

25    SUMMER A. FISHER, CSR, CRR
      CERTIFICATE NUMBER 13185          DATED: 11/10/21