# Joint Submission Redacted Version of Document Sought to be Sealed

BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel listed in signature blocks below*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel listed in signature blocks below*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK-SVK<br><br>**JOINT SUBMISSION RE: DEPOSITION OF GOOGLE OFFICER SUNDAR PICHAI**<br><br>**FILED UNDER SEAL**<br><br>Referral: Hon. Susan van Keulen, USMJ |

December 17, 2021

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

    Re:    Joint Submission re: Deposition of Google Officer Sundar Pichai
             *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

       Pursuant to Your Honor's November 2021 Civil and Discovery Referral Matters Standing Order, Plaintiffs and Google LLC ("Google") submit this joint statement regarding their dispute over Plaintiffs' request to depose Google officer Sundar Pichai. Counsel for the parties met and conferred and reached an impasse on this request. There are 35 days until the close of fact discovery. Dkt. 277. A trial date has not yet been set. Exhibit A contains each party's respective proposed order.

**PLAINTIFFS' STATEMENT**

Google's CEO Sundar Pichai has been at the forefront of Google's development of and decisions regarding Incognito mode, including Google's misleading disclosures and Google's intentional collection of private browsing information without consent. Mr. Pichai's current position as CEO "does not automatically shield his deposition." *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 939287, at *3 (N.D. Cal. Mar. 6, 2014). "[W]hen a witness has personal knowledge of facts relevant to the lawsuit," like Mr. Pichai does here, "even a corporate president or CEO is subject to deposition." *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06CV408 WQH(AJB), 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007). Mr. Pichai should be deposed because he has "unique firsthand, non-repetitive knowledge of the facts at issue in the case" and Plaintiffs have "exhausted other less intrusive discovery methods." *In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011). As the party seeking to prevent Mr. Pichai's deposition, Google "carries a heavy burden to show why discovery should be denied." *WebSideStory*, 2007 WL 1120567, at *2. Google has not carried that burden.

***Mr. Pichai's Unique, First-Hand Non-Repetitive Knowledge.*** Mr. Pichai's involvement goes back to 2008. He led the team that launched Incognito when Google knew that "[p]eople didn't understand Incognito" (Rakowski Ex. 6, GOOG-BRWN-00409986) and was one of just two people consulted in 2008 about the "scary precedent" of third-party cookie "blocking enabled by default" (Rakowski Ex. 18, GOOG-BRWN-00226088. Google tries to downplay these facts as "old," but the Court already rejected that argument: "It's difficult to stand on the position that development of . . . Incognito is not . . . relevant." Apr. 13 Hearing Tr. at 30:22-25. In addition:

- In 2009, Mr. Pichai was involved in discussions regarding how private browsing restrictions in Internet Explorer "may be an attack on Google ads or analytics," with Mr. Pichai explaining "we are following this" and instructing "pls dont discuss more in this thread." Rakowski Ex. 21, GOOG-BRWN-00225677. Mr. Pichai's restrictions on written communications about that topic establish that Mr. Pichai has unique information inaccessible through other means.

- In 2014, Google conducted a survey resulting in an internal "Perceptions of Google Chrome Incognito" report recognizing "various misconceptions" about Incognito mode that put users' "privacy at risk," which "contributed towards the Privacy/Policy presentation to Sundar [Pichai]." Felt Ex. 4, GOOG-BRWN-00477510. These documents establish Mr. Pichai's knowledge of user misconceptions even before the start of the class period in this case (June 2016).

- In 2015, based on that research contributing to the presentation to Mr. Pichai, Google employees discussed how Incognito mode was "radioactive" and "effectively a lie." Felt Ex. 7, GOOG-BRWN-00630517. There were also internal Google discussions about "ditching the Incognito name entirely." Felt Ex. 6, GOOG-BRWN-00393432. Those Google employees also discussed how Google's use of the Incognito name with other products would "reduce comprehension" and how "expanding on a confusing idea makes it more confusing." Felt Ex. 8, GOOG-BRWN-00393423. Google knew in 2015 that "[u]sers are surprised that Google gets information about their browsing while in incognito mode." Felt Ex. 9, GOOG-CABR-03750737.

- In 2016, it was a "Sundar level decision"—even after Google employees expressed "concerns" with the team "in-depth, and all user research we've done over the last 2 years"—to use the Incognito name and brand with another product (Allo) that had a "completely different" privacy functionality. Felt Ex. 13, GOOG-BRWN-00418249; Felt Ex. 14, GOOG-BRWN-00167337 (stating Mr. Pichai "brought up the idea" to use the Incognito brand with Allo). That happened even

though Google employees knew people would be "confused by the different security/privacy guarantees living under the same icon and name." GOOG-BRWN-00183943.

- By at least 2018, Incognito was internally characterized as a "confusing mess" (Felt Ex. 19, GOOG-CABR-03827263), and Google employee Chris Palmer and others even put together a presentation called "The Incognito Problem" recognizing that "Incognito confuses people," with Google "over-promising and under-delivering." Felt Ex. 22, GOOG-BRWN-00140297. In early 2019, these concerns were again presented to Mr. Pichai in a meeting covering "Enhancements to Incognito, in line with the thinking from Chris Palmer and others." Mardini Ex. 34, GOOG-CABR-04991831. The presentation to Mr. Pichai discussed an "Enhanced Incognito" to "address tracking" (Mardini Ex. 15, GOOG-CABR-05269357). Yet a concrete proposal given to Mr. Pichai shortly thereafter reportedly included what Chrome engineers identified to be "false statements" regarding Incognito mode that Google "should not put out." Mardini Ex. 41, GOOG-BRWN-00457784.

- A concurrent "comms" document prepared for Mr. Pichai warned Mr. Pichai to "not use the words private, confidential, anonymous, off- the-record when describing benefits of Incognito mode; These words run the risk of exacerbating known misconceptions about protections Incognito mode provides (see misconceptions here)." Mardini Ex. 38, GOOG-BRWN-00048967.C. Those "comms" were "closely guarded" and locked down by "Sundar's speech writing team" making it "challenging" for Chrome Engineers to get a "full picture" of what Mr. Pichai was planning to announce publicly. Mardini Ex. 39, GOOG-BRWN-00388293. Mr. Pichai ultimately decided he "didn't want to put incognito under the spotlight." Mardini Ex. 39, GOOG-BRWN-00388293.

- In July 2019, Google employees also discussed what "Sundar promised" to regulators regarding changes where "Google stops logging anything in Chrome incognito mode or private browsing in general" and discussed how "the data collected while Incognito is strictly NOT anonymous" and how "it's not impossible" for Google to "connect it to a user's identity." GOOG-CALH-00452518. This is one of the documents that Google withheld and produced late. *See* Dkt. 275 (CMC statement quoting version of this document).

- In August 2019, Mr. Pichai had another meeting, this time to discuss changes to create a "privacy-focused" Chrome browser, including changes to Incognito mode, recognizing that Chrome private controls were "hidden." Mardini Ex. 44, GOOG-CABR-05269678. This led to Google in 2020 finally blocking third-party cookies by default in Incognito mode, ███████████████████████████████████████████████████

The evidence of Mr. Pichai's unique, first-hand and non-repetitive knowledge far exceeds what is required to support Mr. Pichai's deposition. *E.g.*, *In re Apple Iphone Antitrust Litig.*, No. 11CV06714YGRTSH, 2021 WL 485709, at *3 (N.D. Cal. Jan. 26, 2021).

***Plaintiffs Exhausted Less Intrusive Discovery Methods.*** Plaintiffs sought documents and testimony regarding Mr. Pichai's decisions, but that discovery is insufficient. To begin with, Mr. Pichai rarely provides feedback by email, as he instead conducts meetings with tight restrictions on who can see and access the materials, limiting available document discovery. And none of the depositions to date have provided answers regarding Mr. Pichai's decisions, including his decision to continue using and expanding the Incognito brand despite known user misconceptions and then to not put Incognito mode "under the spotlight." *See, e.g.*, Rakowski Tr. at 136:14–138:4 (unable to recall "at all" user studies about how people did not understand Incognito mode); Felt Tr. at 115:4–115:14 (unable to provide any information about concerns or user studies about Incognito branding shared with Mr. Pichai); *Id.* at 54:17–55:21 (unable to recall information about privacy policy

presentation to Mr. Pichai); Mardini Tr. at 304:25–305:10 (unable to recall discussions about "enhancements" to Incognito mode); *id.* at 334:17–334:25 (unable to recall why Mr. Pichai did not want to put Incognito "under the spotlight"). Google cherry-picks and charts other employees from cited documents to suggest that Plaintiffs must depose them first before seeking to depose Mr. Pichai. But Plaintiffs have already deposed various lower-level Google employees about the cited issues they identified with Incognito. Despite their involvement in these issues, they have been unable to testify about information Mr. Pichai has. The apex doctrine does not require Plaintiffs to depose every conceivable Google employee. *See Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 3939320, at *2 (N.D. Cal. Aug. 24, 2012) (compelling deposition of Vice President and CFO where Plaintiffs deposed "three lower-level employees" but they "did not definitively answer Plaintiffs' questions"); *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) (exhaustion is an important "consideration" but not a "dispositive" or "absolute" requirement). Google also argues that Plaintiffs must first conduct 30(b)(6) depositions before asking for Mr. Pichai's deposition. But Google's cited cases don't even say that. *See Anderson*, 2017 WL 930315, at *3 (denying apex deposition because there was no allegation of unique knowledge); *Stelor Prods.*, 2008 WL 4218107, at *4 (denying apex deposition because Plaintiff "should seek the information from other sources" first).

Google tries to downplay Mr. Pichai's role and characterize him as a passive CEO, but the evidence contradicts their efforts. Plaintiffs are willing to submit the cited documents and testimony to the Court for review. Those materials support Plaintiffs' request to depose Mr. Pichai.

## GOOGLE'S STATEMENT

Plaintiffs' attempt to depose Sundar Pichai, Alphabet's CEO, fails to meet the rigorous requirements for deposing an apex witness and is unsupported by the scant evidence cited. These documents—some of which are over a decade old, with others predating the Class Period—mostly consist of (i) emails between custodians, with stray references, if any, to Mr. Pichai; or (ii) presentations by other Google custodians meant only to update him (and other "Sundar-level" executives) on high-level aspects of Chrome or Incognito, typical for the CEO of any company.

Not only does Plaintiffs' brief demonstrate that Mr. Pichai has no ***unique***, personal knowledge, but it vindicates this Court's previous remarks that "[i]t would seem, perhaps unlikely, that he would have specific information as to … Chrome and Incognito … and he would have so much other information that would not tend to be relevant." April 13, 2021 Hr'g Tr. 33:3-1. Courts recognize that such discovery creates a tremendous potential for abuse or harassment and routinely deny apex depositions under analogous circumstances. *See, e.g.*, *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15-16 (N.D. Cal. May 9, 2011) (denying deposition of Apple's CEO Steve Jobs where defendant "produced witnesses with firsthand knowledge" of discovery sought); *Computer Acceleration Corp. v. Microsoft Corp.*, 2007 WL7684605 (E.D. Tx. June 15, 2007) (denying deposition of Microsoft's CEO Bill Gates where he merely "directed and encouraged ... employees to concentrate" on an issue, and cited emails were authored and received by custodians). Even more, Google's extensive production, spanning over 760,000 pages in this action alone (including ESI from Mr. Pichai's own custodial files), and another 5 million pages via cross-use, confirms lower-level Google custodians and employees have the first-hand knowledge that Plaintiffs seek.

**1. *Plaintiffs' own citations confirm that Mr. Pichai lacks unique, first-hand knowledge.*** After taking just five fact depositions, Plaintiffs rush to the Court seeking to depose the most senior executive in Google's corporate hierarchy. However, as explained below, none of the

cited documents reveal the required "unique first-hand, non-repetitive knowledge." *Affinity Labs*, 2011 WL 1753982, at *15; *Schneider v. Chipotle Mex. Grill, Inc.*, 2017 WL 4127992, at *3 (N.D. Cal. Sept. 19, 2017) (denying apex discovery given failure to show unique knowledge by apex officer). Plaintiffs seem to believe that it is enough for Mr. Pichai to possess *some* relevant knowledge; but that is not the relevant test under the apex doctrine. Because he lacks *unique knowledge*, any deposition of Mr. Pichai would be repetitive, at best, and for that reason is not permitted. *Id.*

Mr. Pichai neither sent nor received many of the cited documents. Worse, some do not even mention him. It defies credulity to suggest a CEO can provide greater insights about emails and presentations than the employees involved in them—particularly where many of them *have been or will soon be deposed* and are best suited to be the initial source of Plaintiffs' inquiries. *See* Dkt. 354-4 ("Plaintiffs have identified for Google 16 of the 20 depositions they have been permitted to take, and they have completed five of those depositions").

| Plaintiffs' Citation | Noticed Deponents and ESI Custodians | Pichai Mentioned? |
|---|---|---|
| GOOG-BRWN-00393432 | Sabine Borsay | No |
| GOOG-BRWN-00393423 | Sabine Borsay | No |
| GOOG-BRWN-00183943 | Sabine Borsay; Alex Ainslie | No |
| GOOG-BRWN-00630517 | Chris Palmer; Adrienne Porter Felt | No |
| GOOG-BRWN-00140297 | Chris Palmer; Alexei Svitkine | No |

Even the documents that do reference Mr. Pichai (alongside other executives) are unremarkable. These merely reveal that in his role as CEO, Mr. Pichai was updated by the employees enmeshed in the details of Google's many products, only one of which is Chrome. For example, GOOG-CABR-04991831 notes Mr. Pichai's involvement in an "*exec[utive] review*" of a concept for "[e]nhancements to Incognito, in line with the thinking from Chris Palmer," whom Plaintiffs will depose in two weeks. GOOG-CABR-05269357 indicates "Chrome and Ads have been working together for … months to chart a path forward for the Web" and *those teams* "have a plan to shepherd the industry forward that we'll walk you through." Mr. Pichai was not a member of those teams; there is no indication that he drove their decisions. Staying abreast of company developments, as any CEO should, is not enough. In GOOG-BRWN-00457784, a proposal about Incognito branding was presented to Mr. Pichai before a Google conference, but (unlike the *Haggarty* case that Plaintiffs cite) there is no indication that Mr. Pichai gave feedback or contributed to any decision-making. *See also* GOOG-CABR-05269678 (update to Mr. Pichai on direction of privacy and user trust for Chrome); GOOG-BRWN-00048967 ("comms" document to inform him how to deliver news that Incognito mode would now be available in Google Maps).

Plaintiffs disingenuously stretch the substance of certain documents to imply greater involvement. For example, they claim Mr. Pichai discussed "re-branding Incognito" but "refused the change" to avoid putting Incognito "'under the spotlight.'" But the document is clear: Mr. Pichai did not "refuse" any change, simply stating the concept in its current form should not be a topic for the conference and "the [team] leads" (with first-hand knowledge) decided to revisit this after the conference. Plaintiffs' failure to depose these leads shows the emptiness of their request.

In other instances, Plaintiffs flat-out misrepresent discovery—inferring causal connections and decisionmaking roles wholly unsupported by the evidence cited. For instance, they speculate that Mr. Pichai *decided* to "use the Incognito name and brand with another product" *after* "disregard[ing]" the "concerns" of "Google employees." But GOOG-BRWN-00167337 shows custodian Sabine Borsay—noticed for deposition—raising an issue with the Allo team directly, not

Mr. Pichai. Mr. Pichai could not "disregard" remarks to which he was not privy—and emails between lower-level employees (knowledge of which cannot be imputed to him as CEO) do not suggest otherwise. GOOG-BRWN-00183943. Mr. Pichai "brought up the idea to call Allo's privacy feature Incognito mode" but ***the Allo team "decided to go with it."*** Any attempt to assign a decisionmaking role to him vis-a-vis Allo is belied by the document itself. It also confirms there are non-apex Googlers responsible for these decisions, rendering his insights redundant.

That Plaintiffs did not receive desired responses at fact depositions likewise falls short of satisfying the standard. Despite persistent questioning about Mr. Pichai's involvement, ***not a single witness*** testified that he would have the knowledge they seek. Indeed, testimony ***contradicts*** any suggestion that he was involved in daily decisionmaking for Chrome or Incognito. *See, e.g.*, Rakowski Tr. 145:7-10 ("Q. Was Mr. Pichai involved with … discussions [involving Incognito changes]?" A. I don't think so. ***It wouldn't be normal. It wouldn't be customary***.") (emphasis added); Mardini Tr. 302:1-10 ("Q. Have you ever communicated with Mr. Pichai concerning incognito mode? A. No … Q. Do you recall a … meeting with Mr. Pichai to discuss … incognito mode? A. I was never in a meeting with Mr. … Pichai."). There is simply no evidence that he knows more than those whose day-to-day job was leading Chrome and Incognito efforts.

**2. *Plaintiffs failed to exhaust less intrusive discovery methods.*** Plaintiffs previously stated in a prior draft of this joint submission that they wish to depose Mr. Pichai "*after* they complete the 30(b)(6) and other remaining depositions," which they have now removed. The fact alone that Plaintiffs have yet to depose numerous lower-level employees that work directly on Chrome and have first-hand knowledge of the relevant disclosures is fatal to their request. Plaintiffs claim that deposition testimony confirms their exhaustion. Not so. *First*, Plaintiffs' questions did not target the unique knowledge Mr. Pichai may have that others lack. *Mehmet v. PayPal, Inc.*, 2009 WL 921637, at *2 (N.D. Cal. Apr. 3, 2009) ("Courts generally refuse to allow the immediate deposition of high-level executives, the so-called 'apex deponents,' before the depositions of lower level employees with more intimate knowledge…."). Plaintiffs cannot leapfrog employees via rank speculation that Mr. Pichai would know more about others' own emails, presentations, and decision-making than they would. *Second*, Plaintiffs served ***three*** Rule 30(b)(6) notices this month. Courts routinely grant protective orders barring depositions of senior executives where Rule 30(b)(6) depositions have not yet occurred. *See, e.g.*, *Anderson v. Cty. of Contra Costa*, 2017 WL 930315, at *4 (N.D. Cal. Mar. 9, 2017) (denying apex deposition and ordering plaintiffs to first "depose a Rule 30(b)(6) witness" on the relevant topics then "meet and confer . . . about the necessity and scope of [the apex] deposition"); *Stelor Prods., Inc. v. Google, Inc.*, 2008 WL 4218107, at *4 (S.D. Fla. Sept. 15, 2008) (denying depositions of Google founders Sergey Brin and Larry Page since the same information may be "obtainable through [the deposition] of a designated spokesperson" (citation omitted)). Plaintiffs cannot avoid the requirement to take less intrusive discovery by misinterpreting these authorities and insisting that only Mr. Pichai knows what was in his mind. Accepting such an argument would vitiate the requirements for an apex deposition, contrary to law. Plaintiffs' steadfast intent to depose Mr. Pichai before the upcoming Rule 30(b)(6) and fact depositions strongly suggests that Plaintiffs are more interested in harassing Mr. Pichai than discovering relevant information. Plaintiffs' request should be denied.

| | |
|---|---|
| | Respectfully, |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | BOIES SCHILLER FLEXNER LLP |
| *Andrew H. Schapiro* | *Mark C. Mao* |
| Andrew H. Schapiro (admitted *pro hac vice*) andrewschapiro@quinnemanuel.com 191 N. Wacker Drive, Suite 2700 Chicago, IL 60606 Tel: (312) 705-7400 Fax: (312) 705-7401 | Mark C. Mao (CA Bar No. 236165) mmao@bsfllp.com Beko Reblitz-Richardson (CA Bar No. 238027) brichardson@bsfllp.com Erika Nyborg-Burch enyborg-burch@bsfllp.com 44 Montgomery Street, 41st Floor San Francisco, CA 94104 Tel: (415) 293 6858 Fax: (415) 999 9695 |
| Stephen A. Broome (CA Bar No. 314605) sb@quinnemanuel.com Viola Trebicka (CA Bar No. 269526) violatrebicka@quinnemanuel.com 865 S. Figueroa Street, 10th Floor Los Angeles, CA 90017 Tel: (213) 443-3000 Fax: (213) 443-3100 | James W. Lee (*pro hac vice*) jlee@bsfllp.com Rossana Baeza (*pro hac vice*) rbaeza@bsfllp.com 100 SE 2nd Street, Suite 2800 Miami, FL 33130 Tel: (305) 539-8400 Fax: (305) 539-1304 |
| Diane M. Doolittle (CA Bar No. 142046) dianedoolittle@quinnemanuel.com 555 Twin Dolphin Drive, 5th Floor Redwood Shores, CA 94065 Telephone: (650) 801-5000 Facsimile: (650) 801-5100 | William Christopher Carmody (*pro hac vice*) bcarmody@susmangodfrey.com Shawn J. Rabin (*pro hac vice*) srabin@susmangodfrey.com Steven Shepard (*pro hac vice*) sshepard@susmangodfrey.com Alexander P. Frawley (*pro hac vice*) afrawley@susmangodfrey.com SUSMAN GODFREY L.L.P. 1301 Avenue of the Americas, 32nd Floor New York, NY 10019 Tel: (212) 336-8330 |
| Jomaire A. Crawford (admitted *pro hac vice*) jomairecrawford@quinnemanuel.com 51 Madison Avenue, 22nd Floor New York, NY 10010 Telephone: (212) 849-7000 Facsimile: (212) 849-7100 | |
| Josef Ansorge (admitted *pro hac vice*) josefansorge@quinnemanuel.com 1300 I Street NW, Suite 900 Washington D.C., 20005 Tel: (202) 538-8000 Fax: (202) 538-8100 | Amanda Bonn (CA Bar No. 270891) abonn@susmangodfrey.com SUSMAN GODFREY L.L.P. 1900 Avenue of the Stars, Suite 1400 Los Angeles, CA 90067 Tel: (310) 789-3100 |
| Jonathan Tse (CA Bar No. 305468) jonathantse@quinnemanuel.com 50 California Street, 22nd Floor San Francisco, CA 94111 Tel: (415) 875-6600 Fax: (415) 875-6700 | |
| *Attorneys for Defendant Google LLC* | John A. Yanchunis (*pro hac vice*) jyanchunis@forthepeople.com Ryan J. McGee (*pro hac vice*) rmcgee@forthepeople.com MORGAN & MORGAN, P.A. 201 N Franklin Street, 7th Floor Tampa, FL 33602 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Tel: (813) 223-5505
Fax: (813) 222-4736

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

## ATTESTATION OF CONCURRENCE

I am the ECF user whose ID and password are being used to file this Joint Letter Brief Re; Log Preservation. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: December 17, 2021        By *Andrew H. Schapiro*
                                   Andrew H. Schapiro
                                   *Counsel on behalf of Google*