1  Mark C. Mao, CA Bar No. 236165
   Beko Reblitz-Richardson, CA Bar No. 238027
2  Erika Nyborg-Burch (admitted *pro hac vice*)
   **BOIES SCHILLER FLEXNER LLP**
3  44 Montgomery St., 41st Floor
   San Francisco, CA 94104
4  Tel.: (415) 293-6800
   mmao@bsfllp.com
5  brichardson@bsfllp.com
   enyborg-burch@bsfllp.com
6
7  James Lee (admitted *pro hac vice*)
   Rossana Baeza (admitted *pro hac vice*)
8  **BOIES SCHILLER FLEXNER LLP**
9  100 SE 2nd St., 28th Floor
   Miami, FL 33131
10 Tel.: (305) 539-8400
   jlee@bsfllp.com
11 rbaeza@bsfllp.com
12
   Amanda K. Bonn, CA Bar No. 270891
13 **SUSMAN GODFREY L.L.P**
   1900 Avenue of the Stars, Suite 1400
14 Los Angeles, CA 90067
   Tel: (310) 789-3100
15 Fax: (310) 789-3150
16 abonn@susmangodfrey.com
17
18 *Attorneys for Plaintiffs*

William Christopher Carmody
(admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY  10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
mram@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
**MORGAN & MORGAN**
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

19
20

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

21 | CHASOM BROWN, WILLIAM BYATT, | Case No.:  5:20-cv-03664-YGR-SVK
22 | JEREMY DAVIS, CHRISTOPHER |
   | CASTILLO, and MONIQUE TRUJILLO | **PLAINTIFFS' MOTION FOR LEAVE TO**
23 | individually and on behalf of all similarly | **AMEND COMPLAINT (R. CIV. P. 15(a))**
   | situated, |
24 | | The Honorable Yvonne Gonzalez Rogers
   | Plaintiffs, | Courtroom 1 - 4th Floor
25 | | Date: March 15, 2022
   | vs. | Time: 2:00 p.m.
26 | |
27 | GOOGLE LLC, | **Redacted Version of Document Sought to**
   | | **be Sealed**
28 | Defendant. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND

## MOTION SEEKING LEAVE TO AMEND COMPLAINT

PLEASE TAKE NOTICE that on March 15, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, the undersigned will appear before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California at the Oakland Courthouse, Courtroom 1, 1301 Clay Street, Oakland, CA 94612. Plaintiffs will and hereby do move the Court for an order pursuant to Rule 15(a) of the Federal Rules of Civil Procedure granting Plaintiffs leave to file their proposed Third Amended Complaint. This Motion is based upon this Notice and Motion, the following Memorandum of Points and Authorities, the Declaration of Mark C. Mao, other materials in the record, argument of counsel, and such other matters as the Court may consider.

### ISSUE PRESENTED

Whether Plaintiffs should be granted leave to file their proposed Third Amended Complaint?

### RELIEF REQUESTED

Plaintiffs respectfully request an Order providing that Plaintiffs may file their proposed Third Amended Complaint, attached as Exhibit A to the concurrently filed Declaration of Mark C. Mao.

Dated: February 3, 2022                    SUSMAN GODFREY L.L.P.

                                           By: */s/ Amanda Bonn*
                                           Amanda Bonn (CA Bar No. 270891)

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION ................................................................................................................ 5

BACKGROUND ................................................................................................................. 7

    I.     Google promised Plaintiffs that it would not collect their private browsing data, but Google still collected the data .................................. 7

    II.    The Court denies both of Google's motions to dismiss .......................... 8

    III.   Discovery has proven that Google intentionally chose profits over privacy, ignoring ███████████████ of Incognito ....................... 10

    IV.   Proposed Amendment ........................................................................ 14

ARGUMENT ..................................................................................................................... 19

    I.     Legal Standard .................................................................................... 19

    II.    All four *Foman* factors favor granting leave to amend ..................... 20

         A.    Prejudice ................................................................................. 20

         B.    Undue Delay ............................................................................ 23

         C.    Bad Faith ................................................................................. 24

         D.    Futility .................................................................................... 25

CONCLUSION ................................................................................................................. 25

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Cases**

4

5

*Aguilar v. Boulder Brands, Inc.*,
   2014 WL 4352169, (S.D. Cal. Sept. 2, 2014) ..........................................................21, 25, 26

6

*Bowen v. Target Corp.*,
   2019 WL 9240985 (C.D. Cal. Nov. 12, 2019) ...................................................................25

7

8

*Clayborne v. Chevron Corp.*,
   2020 WL 11563087 (N.D. Cal. Dec. 2, 2020) ...................................................................21

9

10

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................7, 20, 21

11

*Foman v. Davis*,
   371 U.S. 178 (1962) ..................................................................................................7, 21

12

13

*Hughes v. S.A.W. Ent., Ltd.*,
   2018 WL 6046461 (N.D. Cal. Nov. 19, 2018) ...................................................................20

14

15

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ............................................................................7, 20, 24

16

*McCabe v. Six Continents Hotels, Inc.*,
   2013 WL 12306494 (N.D. Cal. Oct. 10, 2013) .............................................................23, 24

17

18

*Meaux v. Nw. Airlines, Inc.*,
   2006 WL 8459606 (N.D. Cal. July 17, 2006) ............................................................7, 20

19

20

*Nangle v. Penske Logistics*, *LLC*,
   2016 WL 9503736 (S.D. Cal. July 20, 2016) ...................................................................21

21

*Unicolors, Inc. v. Kohl's, Inc.*,
   2016 WL 9211658 (C.D. Cal. Aug. 23, 2016) ............................................................22, 26

22

**Other Authorities**

23

Fed. R. Civ. P. 15 ..................................................................................................7, 20, 24

24

25

26

27

28

4

1

## **INTRODUCTION**

2          Plaintiffs seek leave to amend their Complaint to adjust their class definitions to the

3   evidence Google has produced. The core of this case remains the same: Google's unlawful

4   collection and use of private browsing data by way of Google code embedded within non-Google

5   websites. Judge Koh has twice validated Plaintiffs' theory, denying two separate motions to

6   dismiss. Based on numerous uniform Google disclosures, "Plaintiffs could have reasonably

7   assumed that Google would not receive their data while they were in private browsing mode." Dkt.

8   113 (Order denying MTD FAC) at 36; *see also* Dkt. 363 (Order Denying MTD SAC).

9          Discovery substantiates the claims. ████████████████████████████

10  ████████████████████████████████████ (Ex.[1] 1, GOOG-

11  BRWN-00630517), ████████ (Ex. 2, GOOG-BRWN-00441285 at -86), ████████ (Ex. 3,

12  GOOG-BRWN-00475063 at -65), a ██████████ (Ex. 4, GOOG-CABR-03827263 at -63),

13  and "not truly private" ████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████

19      ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25

26

27  ─────────────────────

[1] "Ex." refers to the exhibits attached to the Declaration of Mark Mao, concurrently filed herewith.

28                                    5

1 ████████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████

3     Plaintiffs now seek leave to amend their class definitions as follows:

4     Class 1 – All ~~Android device owners~~ Chrome browser users with a Google account who

5 accessed a non-Google website containing Google ~~Analytics or Ad Manager~~ tracking or advertising code using such a ~~device~~ browser, and who were (a) in "~~private browsing~~

6 Incognito mode" on that ~~device's~~ browser and (b) were not logged into their Google account on that ~~device's~~ browser, but whose communications, including identifying

7 information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present (the "Class Period").

8
9     Class 2 – All ~~individuals~~ non-Chrome browser users with a Google account who accessed a non-Google website containing Google ~~Analytics or Ad Manager~~ tracking or advertising

10 code using any ~~non Android device~~ such browser, and who were (a) in "private browsing mode" on that ~~device's~~ browser, and (b) were not logged into their Google account on that

11 ~~device's~~ browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June

12 1, 2016 through the present (the "Class Period").

13     While the SAC mentions Google Analytics and Ad Manager in the proposed class

14 definitions, the allegations in the Complaint have never been limited to those two Google services.

15 Rather, the Complaint alleges that Google uses various mechanisms to collect users' private

16 browsing information. As summarized by Judge Koh:

17     Plaintiffs allege that Google collects data from them while they are in private browsing mode "***through means that include*** Google Analytics, Google 'fingerprinting' techniques,

18 concurrent Google applications and processes on a consumer's device, and Google's Ad Manager." According to Plaintiffs, "[m]ore than 70% of all online publishers (websites)

19 use one or more of these Google services."

20 Dkt. 113 at 2 (quoting FAC, Dkt. 68 ¶ 8) (emphasis added). ██████████████████████

21 ██████████████████████████████████████████████████████████████████████

22 █████████████████████████████████ With this amendment, Plaintiffs seek to conform their

23 class definitions to this discovery, ████████████████████████████████████████

24 ████████████████████████████.

25     Leave to amend the class definition is warranted because Google cannot meet its burden to

26 establish any of the *Foman* factors: "undue delay, bad faith or dilatory motive, futility of

27 amendment, and prejudice to the opposing party." *Meaux v. Nw. Airlines, Inc.*, 2006 WL 8459606,

28 <div align="center">6</div>

1    at *1 (N.D. Cal. July 17, 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Second

2    Amended Complaint was filed last April—when discovery was in its infancy. Dkt. 136-1. Google

3    only this month answered that complaint (following the Court's December denial of its motion to

4    dismiss), which makes this Plaintiffs' first opportunity to conform the class definitions to the

5    evidence. Google cannot establish that Plaintiffs seek this amendment in bad faith, nor that

6    amendment will be futile, particularly because their theory of the case remains the one this Court

7    has (twice) affirmed. And since this amendment simply conforms the class definition to discovery

8    Google itself provided, there is no prejudice (the most significant factor). *See Eminence Cap., LLC

9    v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Moreover, Plaintiffs do not seek to extend

10   the case deadlines nor serve new discovery on the basis of this amendment. The amendment is

11   simply guided by "the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather

12   than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000).

13   Google's liability and damages should correspond with the evidence that discovery has yielded.

14                                            **BACKGROUND**

15   **I.    Google promised Plaintiffs that it would not collect their private browsing data, but
            Google still collected the data**

16

17          Plaintiffs are Google account holders who chose to use private browsing modes, including

     Google's Chrome Incognito mode, based on Google's promises about private browsing. SAC ¶ 3.

18
     Google assured users that they were "in control of what information [they] share with Google" and

19
     that they could adjust their privacy settings "across [Google's] services" to "control what [Google]

20
     collect[s] and how [their] information is used." SAC ¶¶ 2, 42. To exercise this "control," Google

21
     invited users to "browse the web privately," including through Google's Incognito mode. SAC ¶

22
     42. When users selected Incognito mode in Google's Chrome browser, they were automatically

23
     taken to a Google pop-up "Splash Screen" disclosure which further assured that "Chrome won't

24
     save the following information: [y]our browsing history…[c]ookies and site data." SAC ¶ 52.

25
            In breach of these promises, Google continued collecting users' private browsing

26
     communications with non-Google websites by way of Google tracking and advertising code

27

28                                                  7

1   embedded within those websites. SAC ¶¶ 5, 8, 102, 120, 122. The information sent to Google

2   shows the precise content the user is asking a website to display, as well as a referrer header

3   containing the URL information of what the user has been viewing and requesting from other

4   websites. SAC ¶¶ 5, 63. Google admits that it intercepts and collects this data even when Plaintiffs

5   are in a private browsing mode. Dkt. 164 (Google's MTD SAC) at 1-2.

6          Google collects and uses private browsing data because it is very valuable. A number of

7   platforms allow consumers to monetize their browsing data, and Google would have to pay for

8   this data but for Google's improper collection of it. SAC ¶¶ 135, 138. Google's conduct is

9   particularly egregious because users' private browsing activity reveals sexual interests, political

10  views, and other deeply sensitive, private information. SAC ¶ 162. Google uses that sensitive data

11  to provide targeted advertisements to users and to charge advertisers and websites more for

12  Google's services—thus generating billions of dollars in illicit profits. SAC ¶¶ 1, 115-16.

13  **II.        The Court denies both of Google's motions to dismiss**

14         Google tried and failed to dismiss Plaintiffs' First Amended Complaint, which included

15  claims under the (1) Federal Wiretap Act, 18 U.S.C. §§ 2510, et seq.; (2) the California Invasion

16  of Privacy Act (CIPA), Cal. Penal Code §§ 631 & 632; (3) the Comprehensive Computer Data

17  Access and Fraud Act ("CDAFA"), Cal. Penal Code §§ 502 et seq.; (4) Invasion of Privacy under

18  the California Constitution; and (5) Intrusion Upon Seclusion under California law. *See* Dkt. 68.

19  Google principally "contend[ed] that users expressly consented to Google's alleged data collection

20  while they were in private browsing mode," arguing that portions of "Google's Privacy Policy

21  disclosed that Google would receive the data from its third-party services [that Google provides to

22  websites]." Dkt 113 (Order Denying MTD FAC) at 15.

23         This Court disagreed, holding that the general provision on which Google relied "never

24  mentions private browsing mode," much less "disclose[s] Google's alleged data collection while

25  Plaintiffs were in private browsing mode." *Id.* at 15-16. To the contrary, in the Google Privacy

26  Policy and elsewhere, "Google's representations regarding private browsing present private

27  browsing as a way that users can manage their privacy and omit Google as an entity that can view

28                                            8

1   users' activity while in private browsing mode." *Id.* at 16. For example, the Privacy Policy

2   promised that private browsing (including Incognito) prevents Google from collecting the data

3   Google typically collects by way of the services that Google provides to websites:

4   "You can use our services in a variety of ways to manage your privacy. For example, . . .
    You can . . . choose to browse the web privately using Chrome in Incognito mode. And

5   across our services, you can adjust your privacy settings to control what we collect and
    how your information is used." Google's Privacy Policy makes clear that "Our services

6   include . . . Products that are integrated into third-party apps and sites, like ads . . . ."

7   *Id.* at 19 (quoting Google's Privacy Policy) (alterations in original). "[I]n reality, private browsing

8   does not permit [users] to manage their privacy or control what Google collects because Google

9   collects this information even when they use private browsing mode." *Id.*

10      In addition to the Privacy Policy, this Court also relied on the Incognito Splash Screen

11   (which is automatically displayed to users at the beginning of every Incognito session), Google's

12   "Search & browse privately" webpage, and Google's Chrome Privacy Notice, holding that "a

13   reasonable internet user could read ***each of*** these statements as representing that 'private browsing

14   mode' prevents Google from collecting users' data." Dkt. 363 (Order Denying MTD SAC) at 21

15   (summarizing Order Denying MTD FAC) (emphasis added). For example, "Although the Splash

16   Screen states that websites may be able to see a user's activity, the Splash Screen does not state

17   that Google sees a user's activity. Based on the omission of Google from the list of entities that

18   can see a user's activity, a user might have reasonably concluded that Google would not see his or

19   her activity." Dkt. 113 (MTD FAC Order) at 17. Similarly, by promising that "Now you can

20   browse privately, *and* other people who use this device won't see your activity," the Splash Screen

21   represents that "Incognito mode provided privacy from Google and privacy from other people who

22   use the same device." *Id.* at 18 (emphasis in original). Based on these and other uniform Google

23   disclosures, "Plaintiffs could have reasonably assumed that Google would not receive their data

24   while they were in private browsing mode." *Id.* at 36.

25      Plaintiffs then filed a Second Amended Complaint (Dkt. 136-1), adding breach of contract

26   and UCL claims. Those two claims rely on the same conduct and Google promises that this Court

27

28                                          9

1   considered when it denied Google's first motion to dismiss. Google consented to Plaintiffs'

2   amendment, Dkt. 136, and ultimately filed another motion to dismiss, seeking to dismiss only the

3   two new claims. Dkt. 164. For the contract claim, Google effectively sought reconsideration of

4   this Court's prior ruling, arguing that—at worst—it had failed to disclose that Google "is among

5   the entities that may receive private browsing data," and that an "alleged failure to disclose a

6   practice cannot give rise to contract liability." Dkt. 164 (MTD) at 9.

7        This Court ***again*** disagreed with Google, holding that "[a] reasonable user could read the

8   contract as promising that 'private browsing mode' would prevent Google from collecting users'

9   data." Dkt. 363 at 19. "A reasonable user could conclude that Google's repeated affirmative

10   assertions that 'private browsing mode' provides internet users with 'privacy' and 'control' were

11   meant to emphasize to users that Google would provide users with the maximum amount of data

12   privacy." *Id.* at 21-22. This Court also explained that "the contract must be interpreted objectively"

13   and that "the objective meaning of a contract is determined by reading the contract 'from the

14   perspective of a reasonable [Google] user.' By offering an interpretation about what Plaintiffs

15   'reasonably expected,' Plaintiffs provide that perspective." *Id.* at 23.

16        This Court also sustained the UCL claim, holding that Plaintiffs "plausibly alleged that

17   Google's data collection practice caused Plaintiffs to lose 'money or property.'" *Id.* at 24.

18   "[B]ecause Google previously has paid individuals for browsing histories, it is plausible that, had

19   Plaintiffs been aware of Google's data collection, they would have demanded payment for their

20   data." *Id.* at 26. And "because there are several browsers and platforms willing to pay individuals

21   for data, it is plausible that Plaintiffs will decide to sell their data at some point." *Id.*

22   **III.**    **Discovery has proven that Google intentionally chose profits over privacy, ignoring**

23             █████████████████    **of Incognito**

24        Though discovery, Plaintiffs have obtained internal Google documents acknowledging

25   ██████████████    concerning Incognito and other private browsing modes. Google was

    aware of but never fixed what its own employees referred to internally as  ███████████

26 

27      •  ████████████████████████ (Ex. 11, GOOG-BRWN-00393432), ████████

28

<div align="center">10</div>

(Ex. 12, GOOG-CABR-03750737 at -55)
(Ex. 13, GOOG-CABR-04981563 at -67).

Ex. 14, GOOG-BRWN-00806426.

- (Ex. 9, GOOG-BRWN-00140297 at -299, -302).
(Ex. 15, GOOG-BRWN-00804212)
(Ex. 4, GOOG-CABR-03827263 at -63).
Ex. 16, GOOG-CABR-03923580 at -81.

- Ex. 17, GOOG-BRWN-00153850.C at -55.C, -56.C. Google employees prepared a document for Google CEO Sundar Pichai regarding "known misconceptions about protections Incognito mode provides" where they warned Mr. Pichai "Do not use the words private, confidential, anonymous, off-the-record when describing benefits of Incognito mode." Ex. 18, GOOG-BRWN-00048967.C at -68.C.

- In 2021, after this lawsuit was filed, ███████████████ that Incognito was "not truly private, thus requiring really fuzzy, hedging language that is almost more damaging." Ex. 5, GOOG-BRWN-00406065 at -67. ███████████████ Ex. 19, GOOG-CABR-04668451. ███████████████ (Ex. 20, GOOG-CABR-04739841 at -41), but Google never made those changes.

Instead of fixing the Incognito Problem, Google CEO Sundar Pichai chose not to. Mr. Pichai led the team that launched Incognito in 2008, which knew then that "[p]eople didn't understand Incognito." Ex. 21, GOOG-BRWN-00409986 at -87. Similarly, a 2015 "Perceptions of Google Chrome Incognito" report ███████████████ Ex. 22, GOOG-BRWN-00477510 at -11, -14. Informed of "known misconceptions" regarding Incognito (Ex. 18, GOOG-BRWN-00048967.C at -68.C), Mr. Pichai decided in 2019 that he did not want to "put incognito under the spotlight" (Ex. 23, GOOG-

11

1   BRWN-00388293 at -93). █████████████████████████████████

2   █████████████████ (Ex. 24, GOOG-CABR-05126022 at -23) ██████████

3   (Ex. 25, GOOG-CABR-05269357.R at -79.R), that concept was never launched, and Google

4   continued collecting users' private browsing information. ██████████████████

5   ████████████████████████████████████

6

7

8

9

10

11

12

13

14

15

16

17

18

19   Ex. 26, GOOG-CABR-05756666 at -84.

20   ███████████████████████████████████

21   ███████████████████████████████████

22   ██████ Ex. 27, GOOG-BRWN-00394965). ████████████████

23   ████████████ Ex. 28, GOOG-CABR-04967959 at -59. █████████

24   ███████████████████████████████████

25   ███████████████████████████████████

26

27   ██████ Ex. 29, GOOG-BRWN-00750077. █████████████████

28

1    ████████████████████████████████████████████████████████

2    ██████████████████████ Ex. 30, GOOG-BRWN-00601022. ████████████

3    ████████████████████████████████ *E.g.,* Ex. 31, GOOG-BRWN-00529122 at -22 ████

4    ████████████████████████████████████████████████████████

5    ████████████ Plaintiffs' allegations that Google's illicit tracking impacts millions of Americans.

6    ███████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ██████████████████████████ (Ex. 10, GOOG-CABR-04324934 at -35). ██████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████████—

18   Ex. 32, Kleber Tr. 34:17-35:1—███████████████████████████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ███████████████████████████████████████ *Id.* 35:4-8.

22   ██████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ██████████████████████████ Ex. 33, Schuh Tr. 146:21-147:6; *see also* Ex. 34, GOOG-

27   BRWN-00397243 at -44 ██████████████████████████████████████

28



13



5 ████████████████████████████████████████ Ex. 35,

6 GOOG-CABR-04588763 at -78.

11 ████████████████████████████████ Ex. 10, GOOG-

12 CABR-0432934 at -37, -39, -40. ████████████

13 ████████ Ex. 36, GOOG-BRWN-00490767 at -72, ████████

14 ████████ *See* Ex. 32 Kleber Tr. 175:20-177:2.[2]

18 ████████ Ex. 37, GOOG-CABR-04787255 at -91. ████

19 ████████ *Id.* ████

20 ████████ Plaintiffs' allegations that Google reaps billions in illicit profits from its collection

21 and use of private browsing information. SAC ¶¶ 1, 113-38.

22 **IV.    Proposed Amendment**

23        Plaintiffs now seek leave to amend only their proposed class definitions:

26 ████████████████████████████████████ Ex. 32, Kleber

27 Tr. 176:1-3. ████████████████████ cookies.

Class 1 – All ~~Android device owners~~ Chrome browser users with a Google account who accessed a non-Google website containing Google ~~Analytics or Ad Manager~~ tracking or advertising code using such a ~~device~~ browser, and who were (a) in "~~private browsing~~ Incognito mode" on that ~~device's~~ browser and (b) were not logged into their Google account on that ~~device's~~ browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present (the "Class Period").

Class 2 – All ~~individuals~~ non-Chrome browser users with a Google account who accessed a non-Google website containing Google ~~Analytics or Ad Manager~~ tracking or advertising code using any ~~non-Android device~~ such browser, and who were (a) in "private browsing mode" on that ~~device's~~ browser, and (b) were not logged into their Google account on that ~~device's~~ browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present (the "Class Period").

There are two changes reflected above. First, rather than divide the classes between Android owners and non-Android owners, the classes are now divided between Chrome Incognito users and users of other private browsing modes. This change does not alter the scope of the case at all—it merely adjusts how class members are categorized between the two classes (by browser as opposed to device).

The second change conforms the class definitions to what Plaintiffs have learned in discovery about ███████████████████████████████████████████ ███████████████████. While the current class definitions mention two such Google services (Analytics and Ad Manager), the Complaint has always alleged that Google uses numerous additional mechanisms to collect private browsing information:

- Google intercepts and collects this data by causing the user's web browsing software to run ***Google software scripts*** (bits of code) that replicate and send the data to Google servers in California. SAC ¶ 5 (emphasis added).

- Google accomplishes its surreptitious interception and data collection through means ***that include*** Google Analytics, Google "fingerprinting" techniques, concurrent Google applications and processes on a consumer's device, and Google's Ad Manager. SAC ¶ 8 (emphasis added).

- Google also authorizes Websites to place ***digital pixels*** ('Google Approved Pixels') embedded within the Websites' code. SAC ¶ 102 (emphasis added).

- Google secretly plants ***numerous tracking mechanisms*** on users' computers and web browsers, which allow Google to track users' browsing histories and correlate them

15

with user, device, and browser IDs, rendering ineffective users' efforts to prevent access to their data. SAC ¶ 122 (emphasis added).

For example, ████████████████████████████████████████

████████████████████████████████████████████. *See* Ex. 10, GOOG-CABR-04324934 at -35.

████ Ex. 38, GOOG-CABR-03738741 at -41. ████████████

████████████████████████████████████████ Ex. 39, GOOG-CABR-00903677 at -77 (emphasis added). ████████████████

*See* Ex. 10, GOOG-CABR-04324934 at -35:

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



Ex. 39,

GOOG-CABR-00903677 at -77

19

20

21

22

23

24

Google collects and joins all of this data notwithstanding its promises that private browsing mode (including Incognito mode) prevents Google from collecting the data it typically collects by way of the services it provides to websites.

25

26

27

28

17

[redacted] Ex. 40, GOOG-CABR-00547295 at -95. Another document describes [redacted]

[redacted]

Ex. 41, GOOG-CABR-04076770 at -75.

As another example of a Google tracking technology, Google collects information about private browsing users' visits to non-Google websites by way of AdSense, which is a service for publisher websites, similar to Google Ad Manager. Ad Manager and AdSense are each Google services that generate targeted advertisements to be displayed on non-Google websites. SAC ¶ 118. Plaintiffs initially specified only Google Ad Manager in their class definition because [redacted] *See* Ex. 42, GOOG-CABR-00543864 at -923. Now, Google appears to take the position that AdSense is somehow not part of the case. Mao Decl. ¶ 10. But Plaintiffs recently served an interrogatory asking Google to explain any differences between AdSense and Ad Manager with respect to how the embedded Google

code cause users' browsers to send copies of users' communications to Google. ███████

██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████

Ex. 43, Google's Resp. to Interrogatory No. 30.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

## ARGUMENT

### I.    Legal Standard

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has stated that 'this mandate is to be heeded.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Similarly, the Ninth Circuit has "repeatedly stressed that the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.* at 1127 (alteration in original). "This leave policy is applied with extreme liberality." *Hughes v. S.A.W. Ent., Ltd.*, 2018 WL 6046461, at *1 (N.D. Cal. Nov. 19, 2018).

"The Supreme Court has identified four factors relevant to whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." *Meaux v. Nw. Airlines, Inc.*, 2006 WL 8459606, at *1 (N.D. Cal. July 17, 2006) (citing *Foman*, 371 U.S. at 182). "As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)). "Absent prejudice, or a strong showing of any of the remaining

19

1    *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."

2    *Id.* (emphasis in original). As "[t]he non-moving party[, Google] bears the burden of demonstrating

3    why leave to amend should not be granted." *Clayborne v. Chevron Corp.*, 2020 WL 11563087, at

4    *1 (N.D. Cal. Dec. 2, 2020).

5    **II.      All four *Foman* factors favor granting leave to amend**

6          Here, Google cannot meet its burden as to any of the *Foman* factors, particularly because

7    Plaintiffs are not seeking to serve new discovery and because the crux of the case remains Google's

8    collection and use of private browsing information collected by way of Google tracking and

9    advertising code embedded within non-Google websites.

10         **A.      Prejudice**

11         Leave to amend should be granted because the prejudice factor "carries the greatest

12   weight," and Google cannot demonstrate any prejudice for several reasons. *Eminence Cap*, 316

13   F.3d at 1052. *First*, Plaintiffs' Complaint has always alleged that Google unlawfully collected

14   third-party browsing data via a *variety* of tracking technologies that merely "include" Google

15   Analytics and Ad Manager, among others. SAC ¶¶  5, 8, 102, 120, 122. Plaintiffs have also long

16   alleged that Google enhances and monetizes Google Search by way of information collected from

17   private browsing users' visits to non-Google websites:

18         Google market power in Search is entirely dependent on its ability to track what consumers
           are doing. The ***trackers that Google has across the internet*** not only tell Google where
19         consumers go subsequent to searching on Google Search, the trackers allow Google to
           track what websites are popular and how often they are visited.
20

21   SAC ¶ 121 (emphasis added). This allegation is substantiated by Google's production of

     documents confirming its various methods of ███████████████ and its ███████████████
22
     ████████████████████████████████████████████████████████████████████████████
23
     ████████████████████████████████████████████████████████████████████████████
24
     ███████████████████████████████
25
26         *Second*, there is no prejudice when "[d]iscovery should not be substantially impacted."

27   *Aguilar v. Boulder Brands*, Inc., 2014 WL 4352169, at *5 (S.D. Cal. Sept. 2, 2014). Plaintiffs have

28                                                    20

1   no plans to propound additional discovery tied to this amendment. Mao Decl. ¶ 7. Plaintiffs have

2   already served their RFPs, and Plaintiffs have already served their forty allotted interrogatories

3   and their seventy-five allotted Requests for Admissions. *Id.*; *see also* Dkt. 298 (Order limiting

4   ongoing discovery). Plaintiffs have already sought dates for all 20 of their permitted depositions,

5   including by allotting three slots for 30(b)(6) depositions. Mao Decl. ¶ 7. And Plaintiffs will not

6   seek an extension of the discovery deadlines on the basis of this amendment.[3]

7       Brand new discovery is unnecessary because, as before, "the focus remains on Defendant's

8   [collection and use of private browsing data from non-Google websites] and their . . .

9   representations" regarding private browsing. *Aguilar*, 2014 WL 4352169, at *5. Plaintiffs'

10  "amendment relates to the same set of facts that were at issue in the original complaint, [and] will

11  therefore not require voluminous discovery and will have little impact on the length of the judicial

12  proceedings since no trial date had been set and motion practice is still ongoing." *Nangle v. Penske*

13  *Logistics*, LLC, 2016 WL 9503736, at *4 (S.D. Cal. July 20, 2016) (granting leave to amend); *see*

14  *also Unicolors, Inc. v. Kohl's, Inc.*, 2016 WL 9211658, at *2 (C.D. Cal. Aug. 23, 2016) (granting

15  leave to amend because the proposed amendment "will not result in significant additional

16  discovery, nor would it affect the scheduled trial date"). The crux of this case has always been

17  Google's collection, storage, and use of private browsing information collected during users' visits

18  to non-Google websites by way of embedded Google code. *See* SAC ¶ 62.

19      Google may argue that the amendment is prejudicial because Plaintiffs are seeking Rule

20  30(b)(6) testimony about its ████████████████████ and Ad Sense (in addition to

21  Analytics and Ad Manager). To be sure, for the Rule 30(b)(6) deposition notices Plaintiffs served

22  back in December, Plaintiffs are seeking testimony relating to AdSense, ██████████████

23  ████████████████████ Mao Decl. ¶ 8. That's not new. Plaintiffs have been

24  seeking that same testimony since December 3, when they served their three Rule 30(b)(6) notices.

25  ─────────────────────────

26  [3] To the extent a modification of the discovery deadlines becomes necessary, it will be for Google to complete its obligations with respect to already served discovery, including Rule 30(b)(6) depositions (for notices served on December 3) and the data productions being overseen by Special

27  Master Brush—for which Google is already far behind its deadlines. Mao Decl. ¶ 7.

28                                              21

*Id.* Plaintiffs reasonably seek this testimony based on documents Google previously produced,

████████████████████████████████████████████████. Google has been resisting

Plaintiffs' Rule 30(b)(6) topics on the grounds that its ████████████ and AdSense are

irrelevant, as ██████████████████████████████████████████████████████████

████████████████████████████████████████. Mao Decl. ¶ 10.

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████ Google is not prejudiced by adjusting the class definition to reflect a fact it has

long been aware of and that has already been the subject of extensive document discovery.

*Third*, that this amendment might increase liability—by referencing Google's tracking and advertising code in the class definition as opposed to merely Analytics and Ad Manager—provides no basis to deny leave. *See McCabe v. Six Continents Hotels, Inc.*, 2013 WL 12306494, at *1 (N.D. Cal. Oct. 10, 2013). In *McCabe*, the plaintiffs initially alleged that the "defendant unlawfully recorded, without consent or notice, calls to toll-free telephone numbers through which callers made reservations for Holiday Inn Hotels." *Id.* During discovery, "plaintiffs came to learn that toll-free reservation numbers associated with Six Continents Hotels' other hotel brands likely were routed to the same call centers as the numbers identified in the complaint." *Id.* Plaintiffs therefore sought leave to amend to "add allegations regarding the additional hotel brands." *Id.* at *2. The court granted leave, reasoning: "While the proposed amended complaint would cover a larger number of telephone numbers and hotel brands, it would be based on the same alleged unlawful practice—the unauthorized recording of telephone conversations." *Id.*

22

1      Here, as in *McCabe,* to the extent the amendment "would cover a larger number of

2   [collections of private browsing information]," leave is warranted because the Complaint is still

3   "based on the same alleged unlawful practice—the unauthorized" collection (and subsequent use)

4   of private browsing communications collected during users' visits to non-Google websites. *Id.*

5   This "proposed amendment does not raise a new legal or factual theory that would alter the nature

6   of the action." *Id.* Plaintiffs have no plans to serve new discovery, nor to extend the case deadlines

7   on the basis of this amendment. Plaintiffs will also be amending their initial disclosures and prior

8   discovery responses to make them consistent with what they have learned in discovery. And if

9   Google has any questions about the amendment, it is free to serve discovery.  Plaintiffs now merely

10  seek to amend their class definitions as they begin to prepare their motion for class certification.

11  To deny leave in these circumstances would lead to a final judgment on "technicalities" rather than

12  the merits—thereby flouting the "underlying purpose of Rule 15." *Lopez*, 203 F.3d at 1127.

13      **B.    Undue Delay**

14      Nor can Google establish that Plaintiffs have delayed in seeking this amendment, much

15  less unduly delayed. This is Plaintiffs' first opportunity to seek this amendment. Plaintiffs

16  previously amended their complaint on April 14, 2021—right after the Court denied Google's

17  motion to dismiss the First Amended Complaint. Dkt. 113; *See* Dkt. 136-1. At that point, discovery

18  was just in its infancy. In fact, this Court had recently criticized Google for moving too slowly and

19  delaying its production of non-public Google documents. *See* Dkt. 116 ("The Court is disappointed

20  that Google has produced just 983 documents [since January 6, 2021], and all but one of those

21  documents is publicly available."). Plaintiffs did not yet have the full collection of non-public

22  Google documents that form the basis of this amendment. Mao Decl. ¶ 6.

23      When Google did finally begin producing documents in earnest (with a substantial

24  completion date of October 6, 2021, Dkt. 242-1), ███████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████████████████

26  ███████████████████████████*Id.*███████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████. In the meantime,

28                                          23

1  the parties were awaiting the Court's decision on Google's motion to dismiss the Second Amended

2  Complaint's two new claims (breach of contract and UCL) (Dkt. 164). The Court denied that

3  motion on December 22, 2021, Dkt. 363. Google then sought and received a ten-day extension on

4  its deadline to file its Answer, which Google ultimately filed on January 14, 2022. Dkt. 387.

5       Around the same time—in December 2021—Google for the first time articulated its

6  position that it would not produce a Rule 30(b)(6) witness concerning some of its tracking ▮

7  ▮ technologies (such as AdSense) because it did not believe such technologies were

8  within the scope of Plaintiffs' class definition. Mao Decl. ¶ 9. Google took this position, despite

9  the fact that (1) Plaintiffs' Complaint has long alleged that Google used a variety of other tracking

10  technologies; (2) the Court's orders on Google's motions to dismiss have also discussed examples

11  of such other technologies; and (3) Google itself had been producing documents in discovery about

12  such other technologies. Plaintiffs now promptly move to conform their proposed class definition

13  to what they have learned in discovery since filing the previous complaint, at the first practical

14  opportunity to do so in light of Google's substantial production of documents in the Fall of last

15  year; the Court's recent resolution of Google's motion to dismiss the SAC (and Google's Answer);

16  and Google's recent arguments concerning Plaintiffs' class definition.

17       Finally, even if Plaintiffs have delayed in seeking this amendment (and they have not),

18  "delay, by itself, is insufficient to justify denial of leave to amend," *Aguilar*, 2014 WL 4352169,

19  at *1, particularly when the amendment is triggered by information learned through discovery.

20  "The volume and complexity of discovery in a case is an acceptable reason for delayed

21  amendment." *Bowen v. Target Corp.*, 2019 WL 9240985, at *3 (C.D. Cal. Nov. 12, 2019).

22      **C.   Bad Faith**

23       Plaintiffs do not seek to amend in bad faith. "Bad faith has been construed by the Ninth

24  Circuit as an amendment sought with wrongful motive or a plaintiff merely . . . seeking to prolong

25  the litigation by adding new but baseless legal theories." *Id.* at *5. To the contrary, Plaintiffs'

26  amendment "can be fairly characterized as a clarification of the allegations. There is nothing

27  deceptive about the scope of Plaintiff's revisions or how she describes the revisions." *Aguilar*,

28

<center>24</center>

2014 WL 4352169, at *4. Plaintiffs are simply clarifying that the class definition should not be limited to information tracked by Analytics and Ad Manager, as (1) the SAC alleged extensively that Google used a variety of tracking technologies and (2) discovery has confirmed as much.

**D.    Futility**

Finally, Google cannot establish that amendment would be futile. This Court has twice affirmed Plaintiffs' theory of the case, namely, that Google promised that private browsing would prevent Google from collecting the data it typically collects by way of the services it provides to non-Google websites. In its initial motion to dismiss, Google argued that Plaintiffs consented to Google's collection of their private browsing information by agreeing to the Google Privacy Policy, which stated: "We collect information about the services that you use and when you use them, like when you . . . visit a website that uses our advertising services, or view and interact with our ads and content." Dkt. 82 at 5 (quoting Google Privacy Policy) (alteration in original) (internal quotation marks omitted). Google's argument tellingly did not rely on a disclosure unique to Google Analytics or Google Ad Manager. Google instead argued that it had generally disclosed that embedded Google tracking and advertising code collects information about users' visits to non-Google websites. This Court disagreed:

> Google argues that . . . Google's Privacy Policy disclosed that Google would receive the data ***from its third-party services***. However, Google's Privacy Policy does not disclose Google's alleged data collection while Plaintiffs were in private browsing mode. . . . In addition . . . , Google's representations regarding private browsing present private browsing as a way that users can manage their privacy and omit Google as an entity that can view users' activity while in private browsing mode.

Dkt. 113 (MTD FAC Order) at 15-16 (emphasis added). This holding applies with respect to any Google tracking or advertising code used to provide services to non-Google websites, including AdSense ███████████. Moreover, amendment "would not be futile because the amendment relates to important concerns useful to the just disposition of this case." *Unicolors, Inc.*, 2016 WL 9211658, at *2. Google's damages should correspond with the evidence.

## CONCLUSION

Plaintiffs respectfully request leave to file their proposed Third Amended Complaint.

25

1

Dated: February 3, 2022                    SUSMAN GODFREY L.L.P.

2

3                                          By */s/ Amanda Bonn*

4                                          Amanda Bonn (CA Bar No. 270891)
                                           abonn@susmangodfrey.com
5                                          SUSMAN GODFREY L.L.P.
                                           1900 Avenue of the Stars, Suite 1400
6                                          Los Angeles, CA 90067
                                           Telephone: (310) 789-3100
7

8                                          Mark C. Mao (CA Bar No. 236165)
                                           mmao@bsfllp.com
9                                          Beko Rebitz-Richardson (CA Bar No. 238027)
                                           brichardson@bsfllp.com
10                                         Erika Nyborg-Burch (*pro hac vice*)
                                           enyborg-burch@bsfllp.com
11                                         BOIES SCHILLER FLEXNER LLP
                                           44 Montgomery Street, 41st Floor
12                                         San Francisco, CA 94104
                                           Telephone: (415) 293 6858
13                                         Facsimile (415) 999 9695
14

15                                         James W. Lee (*pro hac vice*)
                                           jlee@bsfllp.com
16                                         Rossana Baeza (*pro hac vice*)
                                           rbaeza@bsfllp.com
17                                         BOIES SCHILLER FLEXNER LLP
                                           100 SE 2nd Street, Suite 2800
18                                         Miami, FL 33130
                                           Telephone: (305) 539-8400
19                                         Facsimile: (305) 539-1304

20                                         William Christopher Carmody (*pro hac vice*)
                                           bcarmody@susmangodfrey.com
21                                         Shawn J. Rabin (*pro hac vice*)
                                           srabin@susmangodfrey.com
22                                         Steven Shepard (*pro hac vice*)
                                           sshepard@susmangodfrey.com
23                                         Alexander P. Frawley (*pro hac vice*)
                                           afrawley@susmangodfrey.com
24                                         SUSMAN GODFREY L.L.P.
                                           1301 Avenue of the Americas, 32nd Floor
25                                         New York, NY 10019
                                           Telephone: (212) 336-8330
26

27                                         John A. Yanchunis (*pro hac vice*)

28                                                        26

jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

27