# Redacted Version of Document Sought to be Sealed

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

**SUSMAN GODFREY L.L.P.**
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

**MORGAN & MORGAN**
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel listed in signature blocks below*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel listed in signature blocks below*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 5:20-cv-03664-YGR-SVK<br><br>**JOINT LETTER BRIEF RE: PLAINTIFFS' REQUEST FOR AN ADDITIONAL GOOGLE CUSTODIAN**<br><br>Referral: Hon. Susan van Keulen, USMJ |

February 8, 2022

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    Joint Submission re: Additional Google Custodian
              *Brown v. Google LLC*, Case No. 5:20-cv-03664-YGR-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's November 2021 Civil and Discovery Referral Matters Standing Order, Plaintiffs and Google LLC ("Google") jointly submit this statement regarding their dispute over Plaintiffs' request that Google add Bert Leung as an additional custodian. Counsel for the parties met and conferred and have reached an impasse on this request. There are 24 days until the close of fact discovery. A trial date has not yet been set. Exhibit A contains each party's respective proposed order.

### PLAINTIFFS' STATEMENT

Google produced documents late last year revealing that, shortly before Plaintiffs filed this lawsuit in 2020, (a) Google identified, quantified, and monitored Incognito traffic, (b) Google used that same analysis to assess the Google revenue associated with Incognito traffic, and (c) Google employee Bert Leung led this Incognito detection analysis. Google withheld critical documents related to this analysis for over a year—waiting until after Plaintiffs were required to select their custodians (on August 23). Google likewise hid Mr. Leung from its initial disclosures to Plaintiffs.

Plaintiffs now respectfully seek an order requiring Google to review and produce a limited set of custodial documents from the files of Mr. Leung. Given impending discovery deadlines, Plaintiffs propose a very narrow search, limited to the time period from 2019 through 2021, and using only three search terms: Incognito, ChromeGuard, and Chrome Guard.

Plaintiffs are seeking to add Mr. Leung now only because Google (1) refused to identify him as an employee with relevant information, (2) delayed in producing key documents about the Incognito detection analysis, and (3) obstructed Plaintiffs' efforts to raise this dispute with the Court. Despite the parties' ongoing dispute about class member identification, Google failed to identify to Plaintiffs the person who led the company's efforts to detect Incognito usage. Google identified over 200 other Google employees early last year, but somehow not Mr. Leung. *See* GOOG-BRWN-00023909. Then, Google waited to produce key documents regarding Mr. Leung's Incognito detection analysis until shortly before (and in some cases after) its document production deadline. Google notes below that one document about this Incognito detection analysis was produced in June, but concedes that the bulk of the documents were produced in September or later—long after Plaintiffs were required to select potential custodians. Finally, Plaintiffs raised this particular dispute with Google in December—shortly after Google in late November produced a document which clarified Mr. Leung's lead role in the Incognito analysis. This letter brief is only being filed now, in February, due a combination of (1) Google delaying its response to Plaintiffs' initial request and to write its portion of this brief, and (2) meet-and-confer efforts aimed at trying to resolve related document disputes. Plaintiffs have been diligent.

Plaintiffs' timeframe and search term proposal (only three years and three terms) is more than reasonable. Yet Google has not even provided any hit counts. Plaintiffs are willing to negotiate timeframe and terms, but it is unfair for Plaintiffs to negotiate against themselves. For all we know, there may be only 100 documents responsive to the proposal. Plaintiffs have requested Mr. Leung's deposition, and Google should promptly produce custodial documents for that deposition.

Documents referencing the Incognito detection analysis that Mr. Leung led demonstrate that this analysis is plainly relevant, particularly in light of Google's repeated argument that Plaintiffs cannot identify class members. Google completed this Incognito detection analysis just as this lawsuit was filed in June 2020. For that analysis, Mr. Leung used not only Google ads data but also Google's ▮▮▮▮▮▮▮▮▮▮▮▮ and Search data sources, the latter of which Google has repeatedly represented to this Court is "irrelevant." By June 4, 2020, ▮▮▮▮▮▮▮▮▮▮▮▮ (GOOG-CABR-03662990).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- In May 2020, Google employees worked on a document titled "How to Detect Chrome Incognito Mode" (GOOG-BRWN-00204684). Discussing different methods by which Google can detect users when they are in Incognito mode, the authors imbedded multiple hyperlinks indicating that Google had already developed sophisticated methods to isolate Incognito traffic in Chrome.

- Other May 2020 emails refer to ongoing analyses related to Google's ChromeGuard project for Incognito mode. Mr. Leung summarized methods he was developing to measure Incognito traffic. GOOG-BRWN-00438510, GOOG-CABR-00546636, GOOG-CABR-03663606, GOOG-CABR-05280756, GOOG-CABR-00546721, and GOOG-CABR-00547295. For example, in GOOG-CABR-00546636, Mr. Leung identified methods for Incognito detection using Search log data, which produced the closest approximation to the Chrome ▮▮▮▮ logs data.



- In GOOG-CABR-00546721, Mr. Leung stated that the approximation for ad logs was "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮".

- Between May and June 2020, Google prepared a deck titled "Ads Privacy Ecosystem Steering" referencing ongoing methods to track and analyze Incognito usage (GOOG-CABR-04795991). This document shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (id. at -996). The slide references a "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" for the ChromeGuard roll-out. It also contains a hyperlink to a document that likely details how these detection efforts "improved materially."

  - ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- As of June 4, 2002, Google was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (GOOG-CABR-03662990). The document containing these results, authored by Leung, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (id. at -91 and 92).

Despite knowing about this analysis since litigation began, Google did not identify a key data source, ▮▮▮▮▮▮▮▮▮▮▮, that Mr. Leung used to conduct the analysis. It was not until late November that Google produced an email from Mr. Leung explaining that Google was using this source to identify Incognito traffic, and that other data sources may be available as well:



The Special Master directed Google to produce the log schema and to run searches of that log over Google's objection that this log is a "Search" log. The Special Master had good reason to reject Google's argument. Users who are logged by a Search log are the same users who will in the same session visit a non-Google website. People run searches and then visit non-Google websites.

Seeking to blame Plaintiffs for its own delay, Google below misrepresents how this dispute has played out. Here is what happened: Plaintiffs on December 14 identified deficiencies in Google's productions relating to the Incognito analysis. Google did not respond, so Plaintiffs sent a draft letter brief on December 27, seeking production of all non-custodial documents and to add Mr. Leung as a custodian. Once Google finally engaged, its initial offer was only to produce hyperlinks contained within the documents cited in this brief. Then, Google changed course in its (January 26) first draft of this brief, offering to find and produce non-custodial documents. That change necessitated edits, which Plaintiffs turned in two days. Finally, Google suggests below that Plaintiffs should be satisfied with Mr. Liao's documents, but Mr. Liao admitted that he was not responsible for the Incognito analysis. *See* Tr. 167:1-7 ("I am not certain how these numbers were computed. I do not recall the specifics"). Google also suggests that it will dispute the accuracy of the analysis, so it is unfair for Google to withhold custodial documents from the employee responsible for it.

## GOOGLE'S STATEMENT

Plaintiffs' request to add Mr. Leung as a custodian should be denied because Plaintiffs have failed to show good cause for adding an additional custodian beyond the 42 custodian limit this Court has ordered. Dkt. 298. Despite their assertions to the contrary, Plaintiffs failed to diligently pursue Mr. Leung's custodial documents and now seek a redo to make up for their failures.

### Plaintiffs Have Not Shown Good Cause To Add Mr. Leung As A Custodian

Plaintiffs chose 42 custodians for this case, and Mr. Leung was not one of them. Thus, their demand for Google to "review and produce a limited set of documents from the files of Google employee Bert Leung" exceeds the limit on custodians imposed by this Court. *See* Dkt. 298 at 3 ("The Court has imposed a cap of 42 Google custodians. Absent a Court order, where Plaintiffs would need to show good cause and Google permitted an opportunity to respond, the parties will not add any custodians."). Plaintiffs seek to shift the focus of this dispute to the purported reasonableness of the search terms they seek. But no matter how they frame the document searches they demand, they cannot overcome their clear failure to demonstrate good cause for adding a 43rd custodian. "Good cause" is not established by the nature of the search terms or the desire for a particular custodian; it requires "not only a factual basis for believing that the custodian has relevant information and that discovery of the custodian's ESI is proportional to the needs of the case, but also a showing of why plaintiffs did not identify the custodian earlier." *See Handloser v. HCL Am., Inc.*, No. 19-cv-01242-LHK (VKD), 2020 WL 7405686, at *1 (N.D. Cal. Dec. 17, 2020). Plaintiffs have not and cannot meet that standard.

Adding Mr. Leung would be duplicative and unduly burdensome to Google because (i) Plaintiffs already have received full custodial productions from Chris Liao, who is Mr. Leung's

manager and supervised all of the efforts Plaintiffs describe[1]; and (ii) Plaintiffs had every opportunity to ask Mr. Liao about each of the documents they cite at Mr. Liao's deposition and will have the opportunity to depose Mr. Leung as well. *See, e.g.*, *Handloser*, 2020 WL 7405686 at *2 (good cause not established where "[t]he Court cannot discern why plaintiffs expect to discover information from these three custodians that differs from discovery they have already obtained from the other 16 custodians, including (apparently) these three custodians' direct supervisors.").

In fact, Mr. Liao is a custodian of seven of the nine documents that Plaintiffs cite (*i.e.*, GOOG-CABR-00546636, GOOG-CABR-00546721, GOOG-CABR-00547295, GOOG-CABR-03662990, GOOG-CABR-03663606, GOOG-CABR-04795991, and GOOG-CABR-05280756). As to the other two documents, he is either listed as an author (GOOG-BRWN-00204684) or is a participant in the email discussion (GOOG-BRWN-00438510). Plaintiffs' brief fails to explain why Mr. Liao's custodial documents are insufficient or why Mr. Leung would be likely to have non-duplicative discovery. All of the documents Plaintiffs cite were produced in advance of Mr. Liao's deposition in this case, which took place on December 3, 2021. Plaintiffs questioned him at length regarding GOOG-BRWN-00204684, but they elected not to ask him about any of the other documents cited in their brief. Nonetheless, Plaintiffs have requested Mr. Leung's deposition, and Google has provided dates on which that deposition may proceed. Thus, although Plaintiffs failed to question Mr. Liao regarding any of the other documents cited in their brief, they will have an opportunity to ask Mr. Leung about all of them during his deposition.

As to the document Plaintiffs *did* present, Mr. Liao testified at length that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉." Liao Dep. Tr. 163:18-21; *see also id.* at 165:21-166:9 ("▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ 175:2-4 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉"). Plaintiffs' suggestion that "Mr. Liao admitted that he was not responsible for the Incognito detection analysis" is incorrect. Mr. Liao testified that the analyses "were the result of some conversations that involved myself and the two other POCs listed on the document, as well as potentially a number of other people," *id.* at 165:17-20, and, as indicated above, he did not have an opportunity to testify regarding the other documents Plaintiffs cite because Plaintiffs failed to present those documents as exhibits. In short, Plaintiffs' only basis for adding Mr. Leung as a custodian is their apparent dissatisfaction with the scope of Mr. Liao's testimony and their failure to include Mr. Leung in the 42 requests for custodians that they propounded in the summer of 2021— a problem of their own making due to their failure to adequately depose Mr. Liao and their lack of diligence in reviewing documents produced by Google. Those failures do not constitute good cause for expanding the number of custodians beyond what the Court has ordered.

**Plaintiffs Could Have Identified Mr. Leung Earlier And Requested Him As A Custodian**

Plaintiffs suggest that they did not have an opportunity to learn about Mr. Leung until "late last year," but that is incorrect. Most of the documents Plaintiffs cite were produced *more than five months* before this filing and all were produced *at least two months* before this filing.

- June 18, 2021 (GOOG-BRWN-00204684);
- July 31, 2021 (GOOG-BRWN-00438510);
- September 1, 2021 (GOOG-CABR-00546636, GOOG-CABR-00546721, GOOG-CABR-00547295);
- September 24, 2021 (GOOG-CABR-03662990, GOOG-CABR-03663606);
- October 29, 2021 (GOOG-CABR-04795991);
- November 25, 2021 (GOOG-CABR-05280756)

---

[1] Plaintiffs claim–without citing to any supporting documents or testimony–that Mr. Leung "led" the analysis described in the documents cited in their brief. That is incorrect.

Google neither withheld nor delayed production of these documents. Plaintiffs had every opportunity to identify Mr. Leung as a custodian based on his participation in the Incognito analysis for many months, and any delay is exclusively attributable to Plaintiffs' failure to exercise adequate diligence in reviewing documents produced by Google.

Indeed, Plaintiffs identified almost all of their custodians between July and August 2021 - well after Google produced GOOG-BRWN-00204684 on June 18, 2021. Plaintiffs knew about Mr. Leung and his involvement in this analysis, but opted to prioritize other custodians. Plaintiffs' failure to identify Mr. Leung before reaching the court-ordered 42 custodian limit does not constitute good cause to add Mr. Leung as an additional custodian now.

### Google's Identification Of Logs For The Special Master Has Been Proper

Although it is irrelevant to the instant dispute, Plaintiffs' brief accuses Google of failing to identify a relevant data source in a submission to the Special Master. Plaintiffs' class definition excludes searches run on google.com, as the class is limited to users "who accessed a non-Google website containing Google Analytics or Ad Manager," and Google reasonably determined that the log source that it has been ordered to produce by the Special Master was non-responsive. *See* June 2, 2021 Hearing Tr. 35:12-16 ("Discovery . . . is not carte blanche to all of Google's systems . . . it will continue to tie back to the proper definitions of the class."). Rather than showing good cause for adding Mr. Leung as a custodian, Plaintiffs devote much of their brief to inserting screenshots and quotes from documents in an apparent effort to convince the court that their class can be identified via analysis of specific logs. Google disagrees with Plaintiffs' characterizations of these documents, but there is insufficient space in this submission for Google to refute each of Plaintiffs' claims regarding the technical import of these documents. Nonetheless, the screenshots Plaintiffs reference show that Mr. Leung's analysis was an attempt to quantify Incognito traffic, not to identify users in Incognito mode. Further, his analysis showed that the quantity of users in Incognito mode using Search Ads data was assessed independently from the quantity of users in Incognito mode using Display Ads data, which is the relevant data set for this case, based on Plaintiffs' class definition. In any event, arguments about the extent to which class members can be identified via analysis of logs is squarely within the scope of the disputes that this Court delegated to the Special Master.

### Plaintiffs Are Responsible For Any Delay

Finally, in yet another attempt to blame Google for their own failures, Plaintiffs claim that Google should have identified Mr. Leung earlier and is responsible for the delay in filing this motion. Neither assertion is correct. As Plaintiffs concede, Google conducted a reasonable search for employees likely to be in possession of relevant information and disclosed hundreds of employee names to Plaintiffs. Further, Google did not delay in meeting and conferring or in submitting this dispute to the Court. Plaintiffs fail to acknowledge the indisputable fact that their December 14 email did not request that Mr. Leung be added as a custodian. Nor did they request to meet and confer on that issue prior to unilaterally sending Google their first version of this brief. Instead, Plaintiffs' December 14 email requested the production of certain non-custodial documents, a dispute that has since been resolved. After receiving Plaintiffs' first draft of this brief, Google requested that the parties meet and confer to attempt to resolve the disputes and reminded Plaintiffs that many of the issues they raised could be resolved through the process for requesting hyperlinked documents, to which the parties had agreed. Contrary to the expeditious action they now claim they took, Plaintiffs ignored Google's request to meet and confer for a week. When the parties eventually met and conferred, many of Plaintiffs' original disputes were resolved, but Plaintiffs refused Google's request to update their section of the brief to remove mention of disputes that had been resolved. Google, therefore, was forced to expend resources drafting an opposition to a brief directed at disputes that no longer existed. Upon receiving Google's opposition to the brief, Plaintiffs completely rewrote their brief, which then required Google to re-draft its section again. Plaintiffs then insisted on multiple rounds of additional rewrites to their own brief, necessitating rewrites from Google as well. Google never "hid the ball"; Plaintiffs dropped it.

For these reasons, Google respectfully requests that the Court deny Plaintiffs' request.

Respectfully,

| QUINN EMANUEL URQUHART & SULLIVAN, LLP | BOIES SCHILLER FLEXNER LLP |
|---|---|
| */s/ Andrew H. Schapiro* | */s/ Amanda Bonn* |
| **Andrew H. Schapiro (admitted *pro hac vice*)** | **Amanda Bonn (CA Bar No. 270891)** |
| andrewschapiro@quinnemanuel.com | abonn@susmangodfrey.com |
| 191 N. Wacker Drive, Suite 2700 | SUSMAN GODFREY L.L.P. |
| Chicago, IL 60606 | 1900 Avenue of the Stars, Suite 1400 |
| Tel: (312) 705-7400 | Los Angeles, CA 90067 |
| Fax: (312) 705-7401 | Tel: (310) 789-3100 |
| | |
| **Stephen A. Broome (CA Bar No. 314605)** | **Mark C. Mao (CA Bar No. 236165)** |
| sb@quinnemanuel.com | mmao@bsfllp.com |
| **Viola Trebicka (CA Bar No. 269526)** | **Sean Phillips Rodriguez (CA Bar No. 262437)** |
| violatrebicka@quinnemanuel.com | srodriguez@bsfllp.com |
| 865 S. Figueroa Street, 10th Floor | **Beko Reblitz-Richardson (CA Bar No. 238027)** |
| Los Angeles, CA 90017 | brichardson@bsfllp.com |
| Tel: (213) 443-3000 | 44 Montgomery Street, 41st Floor |
| Fax: (213) 443-3100 | San Francisco, CA 94104 |
| | Tel: (415) 293 6858 |
| **Josef Ansorge (admitted *pro hac vice*)** | Fax: (415) 999 9695 |
| josefansorge@quinnemanuel.com | |
| 1300 I Street NW, Suite 900 | **James W. Lee (*pro hac vice*)** |
| Washington D.C., 20005 | jlee@bsfllp.com |
| Tel: (202) 538-8000 | **Rossana Baeza (*pro hac vice*)** |
| Fax: (202) 538-8100 | rbaeza@bsfllp.com |
| | 100 SE 2nd Street, Suite 2800 |
| **Jonathan Tse (CA Bar No. 305468)** | Miami, FL 33130 |
| jonathantse@quinnemanuel.com | Tel: (305) 539-8400 |
| 50 California Street, 22nd Floor | Fax: (305) 539-1304 |
| San Francisco, CA 94111 | |
| Tel: (415) 875-6600 | **William Christopher Carmody (*pro hac vice*)** |
| Fax: (415) 875-6700 | bcarmody@susmangodfrey.com |
| | **Shawn J. Rabin (*pro hac vice*)** |
| **Thao Thai (CA Bar No. 324672)** | srabin@susmangodfrey.com |
| thaothai@quinnemanuel.com | **Steven Shepard (*pro hac vice*)** |
| 555 Twin Dolphin Drive, 5th Floor | sshepard@susmangodfrey.com |
| Redwood Shores, CA 94065 | **Alexander P. Frawley (*pro hac vice*)** |
| Tel: (650) 801-5000 | afrawley@susmangodfrey.com |
| Fax: (650) 801-5100 | SUSMAN GODFREY L.L.P. |
| | 1301 Avenue of the Americas, 32nd Floor |
| *Attorneys for Defendant Google LLC* | New York, NY  10019 |
| | Tel: (212) 336-8330 |

**John A. Yanchunis (*pro hac vice*)**
**jyanchunis@forthepeople.com**
**Ryan J. McGee (*pro hac vice*)**
**rmcgee@forthepeople.com**
**MORGAN & MORGAN, P.A.**
**201 N Franklin Street, 7th Floor**
**Tampa, FL 33602**
**Tel: (813) 223-5505**
**Fax: (813) 222-4736**

**Michael F. Ram (CA Bar No. 104805)**
**mram@forthepeople.com**
**MORGAN & MORGAN, P.A.**
**711 Van Ness Avenue, Suite 500**
**San Francisco, CA 94102**
**Tel: (415) 358-6913**

*Attorneys for Plaintiffs*

## ATTESTATION OF CONCURRENCE

I am the ECF user whose ID and password are being used to file this Joint Letter Brief. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

| Dated: February 8, 2022 | By | /s/ Amanda Bonn |
|---|---|---|