# Letter Brief re 30(b)(6)

# Redacted Version of Document Sought to be Sealed

| | |
|---|---|
| BOIES SCHILLER FLEXNER LLP<br>Mark C. Mao (CA Bar No. 236165)<br>mmao@bsfllp.com<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293 6858<br>Facsimile: (415) 999 9695<br><br>SUSMAN GODFREY L.L.P.<br>William Christopher Carmody (*pro hac vice*)<br>bcarmody@susmangodfrey.com<br>Shawn J. Rabin (*pro hac vice*)<br>srabin@susmangodfrey.com<br>1301 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (212) 336-8330<br><br>MORGAN & MORGAN<br>John A. Yanchunis (*pro hac vice*)<br>jyanchunis@forthepeople.com<br>Ryan J. McGee (pro hac vice)<br>rmcgee@forthepeople.com<br>201 N. Franklin Street, 7th Floor<br>Tampa, FL 33602<br>Telephone: (813) 223-5505<br><br>*Attorneys for Plaintiffs; additional counsel listed in signature blocks below* | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Diane M. Doolittle (CA Bar No. 142046)<br>dianedoolittle@quinnemanuel.com<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065<br>Telephone: (650) 801-5000<br>Facsimile: (650) 801-5100<br><br>Andrew H. Schapiro (*pro hac vice*)<br>andrewschapiro@quinnemanuel.com<br>191 N. Wacker Drive, Suite 2700<br>Chicago, IL 60606<br>Telephone: (312) 705-7400<br>Facsimile: (312) 705-7401<br><br>Stephen A. Broome (CA Bar No. 314605)<br>stephenbroome@quinnemanuel.com<br>Viola Trebicka (CA Bar No. 269526)<br>violatrebicka@quinnemanuel.com<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br><br>*Attorneys for Defendant; additional counsel listed in signature blocks below* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 5:20-cv-03664-YGR-SVK<br><br>**JOINT LETTER BRIEF RE: PLAINTIFFS' 30(b)(6) DEPOSITIONS**<br><br>Referral: Hon. Susan van Keulen, USMJ |

February 17, 2022
Submitted via ECF
Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    Joint Submission re Plaintiffs' 30(b)(6) Notices
               *Brown v. Google LLC*, Case No. 5:20-cv-03664-YGR-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

      Pursuant to Your Honor's November 2021 Civil and Discovery Referral Matters Standing Order, and your Honor's January 13 Order on Discovery Dispute (Dkt. 385), Plaintiffs and Google LLC ("Google") submit this joint statement regarding their dispute over the three 30(b)(6) deposition notices Plaintiffs served on December 3, 2021. Counsel for the parties met and conferred twice on January 18, continued to negotiate through revisions to this joint submission, and then reached impasse on the issues in this letter brief. There are 15 days until the close of fact discovery. A trial date has not yet been set. Exhibit A includes a chart with each disputed topic, Google's response thereto, and the parties' compromise proposals.

**PLAINTIFFS' STATEMENT**

Plaintiffs seek the Court's assistance in obtaining 30(b)(6) testimony relating to (1) damages (Notice 1), (2) Google's collection and storage of private browsing data (Notice 2), and (3) Google's use of that private browsing data (Notice 3).

Below, Plaintiffs outline several categories of disputes that the parties have been unable to resolve. These topics are relevant to Plaintiffs' efforts to identify class members and calculate damages, and they are narrowly tailored and non-burdensome. To further mitigate any burden, Plaintiffs are willing to send Google more detailed outlines one week before the deposition that (a) specifies in greater detail the areas to be explored and (b) includes exemplary deposition exhibits. Google's remaining objections appear designed to prevent Plaintiffs from obtaining testimony that will bind the company on important, substantive topics. Such objections should be rejected.

**Google's Improper Attempt to Designate Prior Fact Witness Testimony**: For many topics, Google improperly seeks to designate prior fact witness testimony in lieu of preparing a witness. Google "may not, as it suggests, review prior deposition testimony and designate it as Rule 30(b)(6) testimony." *Alloc, Inc. v. Unilin*, 2006 WL 2527656, at *2 (E.D. Wis. Aug. 29, 2006). A 30(b)(6) designee must testify "beyond matters personally known" to him; thus, "there is a qualitative difference in the testimony that one witness may give as an individual and as a Rule 30(b)(6) deponent." *Id.*; *see also Foster-Miller v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir. 2000) (affirming sanction for refusing to produce 30(b)(6) witness due to prior fact depositions). Plaintiffs nevertheless agreed to some designations as a compromise. But several are blatantly improper and reveal why prior fact testimony is no substitute for a prepared 30(b)(6) deponent:

- *Notice 1, Topic 1*: Google proposes designating testimony concerning Google's █████████████████████████████████████ exclusively from the *Calhoun* portion of a joint deposition. Google's refusal to put up a witness on this important Incognito-focused analysis is particularly improper because ███████ is a key portion of Plaintiffs' damages model, *see* Dkt. 395 at 13-14, 16-17, and because Google has already suggested (including in this very brief) that it will argue that certain aspects of the ███████ analysis do not apply to this case. Google's reliance below on the Cross-Use Order is misplaced because that Order "exclude[s] depositions taken pursuant to [Rule] 30(b)(6)." Dkt. 243 ¶ 1. Moreover, Google required the *Brown* and *Calhoun* plaintiffs to take separate days for all joint depositions, and precluded one from asking questions during the other's day—meaning the *Brown* plaintiffs did not elicit the testimony Google now seeks to designate. And even if they had elicited the testimony, the designation would be improper because the witness was not prepared to discuss the ███████ calculations. *See* Liao *Calhoun* Tr. 161:21 ("I do not recall the specific assumptions that went into these numbers"); *id.* 165:17-21 ("I do not recall the specific assumptions that went into the calculations"). Plaintiffs reasonably seek a 30(b)(6) witness on a key aspect of their damages model, which focuses on Google's ████████████████████████████████████████.

- *Notice 1, Topic 13*: Google proposes designating testimony about conversion tracking from a witness who testified "I'm not an expert on the conversions systems." Liao Tr. 153:11-12.
- *Notice 3, Topic 12*: Google proposes designating testimony on the topic of identifying class members, including through "PPID mapped ███████ from a fact witness who testified "I

do not have that knowledge" in response to a question about what tools are used to search for "the mappings . . . between PPIDs and ▮▮▮▮" Liao Tr. 37:9-13.[1]

**Topics Re: Search (Not. 1 Topic 16; Not. 3 Topic 5)**: After producing documents explaining how Search makes money from Google's tracking of private browsing users' visits to non-Google websites, Google now objects to providing 30(b)(6) testimony on these issues. That Google may not like the evidence it produced is no reason to refuse to provide this testimony. Search is where many users start their private browsing sessions (making it relevant to class identification), and Google *itself* used search data to identify Incognito users and calculate the financial impact to Google of changing Incognito. Google claims that search information is irrelevant because Plaintiffs' claims are based on users visiting non-Google sites. But Plaintiffs do not seek this testimony to argue that Google violates the wiretap laws when receiving search queries. Rather, this testimony is relevant to (A) damages and (B) identifying class members.

(*A*) *Damages*: In 2020, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-CABR-04455208. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ because Google can demonstrate that the ad resulted in a "conversion." *See* Dkt. 395 at 17. That Google enrichment, tracking users' visits to non-Google websites, is fair game for 30(b)(6) testimony.

(*B*) *Class Member Identification*: Search is also relevant to identifying class members. As the Court can likely imagine, a large proportion of Incognito users begin a browsing session by running a Google search (and subsequently, in the same session, visiting non-Google websites). By identifying people who ran a search in Incognito, Plaintiffs can then see if they went to non-Google websites, where Google intercepted their communications. In Incognito, when users "perform a Google search, it is logged against a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that is identifiable by IP address." GOOG-BRWN-00386511. Using those IP addresses and other data, Plaintiffs can then identify other relevant records related to non-Google website visits. "The idea that users behind ▮▮▮▮ UID is not identifiable if one were to use all of the data we have available is laughable." GOOG-BRWN-00433503. Plaintiffs seek 30(b)(6) testimony regarding Google's tracking of Incognito searches to help identify class members, establish liability, and calculate damages. Even Google's own employees relied on search data for Google's 2020 efforts to quantify Incognito traffic within logs. *See* Dkt. 371 at 12-15 (summarizing these efforts). Google used search data to do precisely what Plaintiffs seek to do here (isolate and identify Incognito traffic and users). Google below misleadingly portrays Search as a "new" product in this case; in fact, Plaintiffs have always sought discovery regarding how Search information can be used to identify users who browsed non-Google websites within a private browsing session.

**Topics Re: Conversion Tracking (Not. 1 Topic 13; Not. 2 Topics 4, 5; Not. 3 Topic 8)**: For liability and damages, Plaintiffs also seek 30(b)(6) testimony concerning conversion tracking, which forms a significant part of Google's ▮▮▮▮▮▮▮▮▮ financial analysis for Incognito monetization. *See* Dkt. 395 at 16-17. Google's relevance objection below is limited to one form of conversion tracking (cross-device conversions), where a user sees an advertisement during one browsing session and then waits until a separate, subsequent browsing to do something (e.g., buy

---

[1] Troublingly, Google has declined Plaintiffs' invitation to submit these transcripts to the Court.

1  something). Google's argument below completely sidesteps Plaintiffs' request for testimony about Google's ability to track a "conversion [that] happens in the *same* incognito session," a capability that Google concedes in its documents and below. GOOG-CABR-00547295.

3  Furthermore, Google's argument that *cross-device* conversions are outside the scope of the class definition is meritless. Internal documents describe how Google was developing a ▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ GOOG-CABR-00547295. Other documents explain how Google's cross-device conversion processes ▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ GOOG-CABR-04765139. These documents undermine Google's argument that cross-device conversion tracking requires a user to sign in to Google, and Plaintiffs reasonably seek testimony about these documents and similar ones. Even the discovery response Google cites below focused on three specific cross-device conversion tracking tools without purporting to address all of Google's cross-device conversion tracking tools and capabilities. Plaintiffs simply seek 30(b)(6) testimony about how Google uses private browsing data collected from users' visits to non-Google websites to track and monetize conversions, whether in the same private browsing session or in other sessions.

**Notice 1, Topics 14, 15, 16**: Plaintiffs seek to prove restitution damages under the UCL, including by "quantify[ing] t[he] diminution in value" to their browsing data. Dkt. 363 (Order Denying MTD SAC) at 30. Similarly, Google admits that it uses private browsing data to "provide, maintain, and improve its services." Interrogatory No. 1. It is unfair for Google to insist that Plaintiffs limit these topics without knowing the full scope of Google's use of private browsing data.

### GOOGLE'S STATEMENT

Over 18 months, Plaintiffs have obtained 5,108 pages of deposition testimony from ten fact witnesses and two Rule 30(b)(6) witnesses, more than 6.8 million pages of documents in response to 235 requests for production, and 40 interrogatory responses. Nonetheless, with only two (of 20) deposition slots remaining, Plaintiffs noticed a staggering 47 Rule 30(b)(6) topics and largely rebuffed Google's attempts to compromise—no matter how irrelevant, duplicative or amorphous the topics or how heavy a burden they would impose on Google to have to prepare corporate witnesses on such a wide range of subjects. Plaintiffs' empty offer of providing outlines and exemplary exhibits one week before a deposition does not cure the fundamentally improper nature of the disputed topics.

**Google's Designated Testimony is Proper:** In response to 11 requests, Google designated deposition testimony from fact witnesses and a prior Rule 30(b)(6) witness as responsive to the topic. These witnesses *are* the most knowledgeable and have been deposed extensively on the *very same topics*. Under such circumstances, courts have consistently permitted prior testimony to serve as corporate testimony to avoid duplication and conserve resources. *See Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 2020 WL 6889168, at *3 (D. Alaska Nov. 22, 2020) ("[A] corporation may also satisfy its Rule 30(b)(6) obligation by offering to be bound by prior deposition testimony regarding a noticed Rule 30(b)(6) topic.") (quoting *EEOC v. Boeing Co.*, 2007 WL 1146446, at *2 (D. Ariz. Apr. 18, 2007)). Plaintiffs' reliance on two out-of-circuit opinions to challenge the propriety of designated testimony is misplaced. *Alloc, Inc. v. Unilin Decor N.V.*, 2006 WL 2527656 (E.D. Wis. Aug. 29, 2006) contains scant discussion of the critical facts supporting a second deposition of the same witness. In *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1 (1. Cir. 2000), the First Circuit appropriately affirmed sanctions against the party seeking to shift its 30(b)(6) burden by asking the propounding party which witnesses should testify and which prior testimony should be designated as 30(b)(6) testimony. Google here is doing the exact opposite.

Plaintiffs' specific complaints mischaracterize the testimony Google has designated:

- **Notice 1, Topic 1**: This topic seeks testimony on the revenue impact of ███████. Plaintiffs do not and cannot dispute that Liao, who himself conducted the revenue impact analysis of ███████ has already provided 26 pages of testimony responsive to this topic in a joint deposition. Instead, Plaintiffs dispute the designated testimony on the ground that it is from the *Calhoun* portion of the joint deposition. This argument is meritless. Plaintiffs' counsel had the opportunity to discuss and strategize with the *Calhoun* counsel about Liao's deposition. Dkt 243 (Cross-Use Order), ¶ 15. They chose to let the *Calhoun* counsel take the lead on this line of questioning and not to pose additional questions during their allotted time on the second day of the two-day joint deposition. Permitting Plaintiffs to reject Liao's testimony on that basis now would defeat the entire purpose and efficiency of the Cross-Use Order Plaintiffs demanded. Plaintiffs selectively quote Liao's testimony that he does not "recall the specific assumptions" in response to an unreasonable memory test question, but left out Liao's helpful elaboration on his answer that "throughout the process, many numbers and different assumptions were used" and that "I believe they are documented in … the document with the title, if I recall correctly, as impact from ███████ and SameSite launches." Liao Tr. 165:18-166:21.
- **Notice 1, Topic 13**: Plaintiffs misleadingly quote Liao's testimony stating that he is "not an expert on conversion systems." But Liao is the engineer who leads the team responsible for maintaining ███████ a cross-device conversion tool specifically referenced in Topic 13. Separately, Google's Rule 30(b)(6) witness Glenn Berntson already provided extensive testimony on the noticed topic: tracking and monetizing of conversions. *See, e.g.*, Berntson Tr. 213:9-21 ("[W]e are looking at personal logs and we're looking at non-personal logs and looking at conversions between the two…"); *id.*, 201:9-21 ("Conversions is simply one of the metrics that an advertiser can choose as the metrics associated with what they pay.").
- **Notice 3, Topic 12**: Once again Plaintiffs mischaracterize Liao's testimony and ignore Berntson's 30(b)(6) testimony, both of which Google designated as responsive to this topic. Regardless, Liao provided over 70 pages of testimony as to "PPID mapped ███████ the noticed topic. Plaintiffs take issue with Liao's lack of knowledge on what tools are used to "search that table for the mappings or linkings between PPIDs and ███████ IDs" in the Oz database. Liao Tr. 37:9-13. However, that question is plainly outside the scope of this topic, which is limited to "Google's ability to identify users or devices based on log-ins in third-party websites within a private browsing session, including by way of a 'PPID mapped ███████ or Analytics UID."

**Google Is Not Required to Indulge Plaintiffs' Duplicative, Irrelevant, and Burdensome Topics**: Plaintiffs' Rule 30(b)(6) notices are replete with topics that are either repetitive of fact testimony, not relevant to their claims and defenses, and/or are so broad and amorphous that they would implicate dozens of Google business units and products. Plaintiffs' Search topics are a case-in-point; they improperly attempt to expand the case to encompass a new Google product—Google Search—more than 19 months after the case began and 18 days before the close of discovery.

- **Search Testimony Purportedly Related to "Damages"**: Plaintiffs seek 30(b)(6) testimony on Google Search Ads, which is irrelevant to the claims and defenses in this case. Plaintiffs do not dispute that their claims are *specifically* limited to third party websites that use Google Ad Manager and Google Analytics. *See* Dkt. No. 136-1 ¶¶ 63-88; 192. Plaintiffs' damages, if any, are limited to revenue from those products—*not* Google Search. Google has already agreed to produce a witness to testify to revenue from Google Ad Manager and Analytics. ████████████████████████████████████ (see GOOG-CABR-04455208) is beside the point. Plaintiffs try to frame ████████████████████ and claim that Google ████████████████████████████████████████████████████████ This is mistaken. ████████████████████████████████████████████████████ Google engineer Deepak Ravichandran testified "There is a wall between display ads and search ads[.]" Ravichandran Tr. 116:23-24. Further,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Plaintiffs cannot explain how such information is relevant to their alleged harm from the purportedly improper collection of data by Google Ad Manager and Google Analytics.

- **Search Testimony Purportedly Related to "Class Member Identification"**: Plaintiffs' purported class is specifically limited to individuals "who accessed a non-Google website containing Google Analytics or Ad Manager." *See* Dkt. No. 136-1 ¶192. More than 18 months of extensive discovery has focused on these two services described in each of their three versions of complaints. Plaintiffs should not be permitted at the eleventh-hour to sweep in a new product outside the class definition based on pure conjecture about how class members purportedly start their browsing session and Plaintiffs' persistently wrongheaded interpretations of Google systems. As Plaintiffs know, ▮▮▮▮▮ is a pseudonymous ID that is explicitly designed to NOT identify users. *See, e.g.* GOOG-CABR-04696286 ("unauthenticated identifiers such as ▮▮▮▮▮ or ▮▮▮▮▮ must never be stored with personally-identifying information (PII) such as Gaia IDs."). And Plaintiffs have already deposed or noticed for deposition three of the four participants on the email chain they cite alleging the relevance of this topic (GOOG-BRWN-00386511). Even if Plaintiffs' unsupported assertion that they have "always" included Search in their discovery requests were correct (it is not), that would not alter the fact that such requests are improper and outside the scope of their class definition.

- **Conversion Tracking**: Google has already provided testimony regarding conversion tracking where relevant to Plaintiffs' claims (*see* Berntson Tr. 195:3-219:13; Liao Tr. 70:17 - 96:20, 112:12 - 117:11; Kleber Tr. 166:9-171:14). Google also agreed to produce a witness to testify on Incognito usage statistics in the U.S. during the Class Period, including the number of ad clicks and ad conversions, to the extent they exist (Google's Response to Not. 1, Topic 8). As Google explained in its verified response to Interrogatory No. 24: "Incognito mode data cannot be used for cross-device conversion tracking by Google unless the user signs into her Google Account. When a user opens an Incognito window, a new 'cookie jar' is created, and any cookies that are set are specific to that browser session instance (the 'Incognito Session Cookies'). When a user ends the Incognito browsing session, the Incognito Session Cookies are deleted. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ cannot use Incognito Session Cookies to track cross-device conversions because there is no identifier to link activity across devices, due to the fact that Incognito Session Cookies are specific to a browser session and are deleted when the session ends." Contrary to Plaintiffs' allegation, this response is not limited to any specific tracking tools and clearly states that cross-device conversion tracking does not exist in the data-flow based on Plaintiffs' own class definition, which excludes signed-in users. Plaintiffs cannot demonstrate a need for any additional testimony regarding a topic such as "conversion tracking" that is outside the scope of Plaintiffs' class definition. Plaintiffs also seemingly seek testimony about "how Google uses private browsing data … to track and monetize conversions … in the same private browsing session." However, as Google has stated repeatedly, including in its verified interrogatory responses, Chrome is designed to prevent websites, and the third-party services installed on those websites such as Google Ad Manager, from detecting whether a user is in Incognito mode. As a result, when Google Ad Manager receives traffic from a Chrome browser, Google Ad Manager does not know whether or not the browser is in Incognito mode.

- **Notice 1, Topics 14, 15, 16**: Plaintiffs provide no explanation as to how Notice 1, Topics 14, 15 and 16 are relevant to the calculation of restitution damages or how they would help to quantify diminution in value of the data alleged to be improperly collected. And because the topics are overly broad, Google cannot determine which witness(es) to educate and designate to testify.

- Finally, although Plaintiffs' offer to provide deposition outlines and sample exhibits sounds reasonable at first blush, it is no compromise at all: (1) it cannot salvage the numerous deficiencies in their topics outlined above; (2) it raises the prospect of additional disputes if, as is likely, Plaintiffs' outlines exceed the scope of the topics to which Google has agreed, causing further uncertainty for the deponents and costly and unnecessary briefing.

| | |
|---|---|
| | Respectfully, |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | BOIES SCHILLER FLEXNER LLP |
| */s/ Andrew H. Schapiro* | */s/ Amanda Bonn* |
| Andrew H. Schapiro (admitted *pro hac vice*) | Mark C. Mao (CA Bar No. 236165) |
| andrewschapiro@quinnemanuel.com | mmao@bsfllp.com |
| 191 N. Wacker Drive, Suite 2700 | Sean Phillips Rodriguez (CA Bar No. 262437) |
| Chicago, IL 60606 | srodriguez@bsfllp.com |
| Tel: (312) 705-7400 | Beko Reblitz-Richardson (CA Bar No. 238027) |
| Fax: (312) 705-7401 | brichardson@bsfllp.com |
| Diane M. Doolittle (CA Bar No. 142046) | 44 Montgomery Street, 41st Floor |
| dianedoolittle@quinnemanuel.com | San Francisco, CA 94104 |
| 555 Twin Dolphin Drive, 5th Floor | Tel: (415) 293 6858 |
| Redwood Shores, CA 94065 | Fax: (415) 999 9695 |
| Telephone: (650) 801-5000 | |
| Facsimile: (650) 801-5100 | James W. Lee (*pro hac vice*) |
| | jlee@bsfllp.com |
| Stephen A. Broome (CA Bar No. 314605) | Rossana Baeza (*pro hac vice*) |
| sb@quinnemanuel.com | rbaeza@bsfllp.com |
| Viola Trebicka (CA Bar No. 269526) | 100 SE 2nd Street, Suite 2800 |
| violatrebicka@quinnemanuel.com | Miami, FL 33130 |
| 865 S. Figueroa Street, 10th Floor | Tel: (305) 539-8400 |
| Los Angeles, CA 90017 | Fax: (305) 539-1304 |
| Tel: (213) 443-3000 | |
| Fax: (213) 443-3100 | William Christopher Carmody (*pro hac vice*) |
| Josef Ansorge (admitted *pro hac vice*) | bcarmody@susmangodfrey.com |
| josefansorge@quinnemanuel.com | Shawn J. Rabin (*pro hac vice*) |
| Carl Spilly (admitted *pro hac vice*) | srabin@susmangodfrey.com |
| carlspilly@quinnemanuel.com | Steven Shepard (*pro hac vice*) |
| 1300 I Street NW, Suite 900 | sshepard@susmangodfrey.com |
| Washington D.C., 20005 | Alexander P. Frawley (*pro hac vice*) |
| Tel: (202) 538-8000 | afrawley@susmangodfrey.com |
| Fax: (202) 538-8100 | SUSMAN GODFREY L.L.P. |
| | 1301 Avenue of the Americas, 32nd Floor |
| Jonathan Tse (CA Bar No. 305468) | New York, NY 10019 |
| jonathantse@quinnemanuel.com | Tel: (212) 336-8330 |
| 50 California Street, 22nd Floor | |
| San Francisco, CA 94111 | Amanda Bonn (CA Bar No. 270891) |
| Tel: (415) 875-6600 | abonn@susmangodfrey.com |
| Fax: (415) 875-6700 | SUSMAN GODFREY L.L.P. |

1 | *Attorneys for Defendant Google LLC* | 1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Letter Brief. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: February 17, 2022     By     */s/ Amanda Bonn*
                                         Amanda Bonn