# EXHIBIT 1
# Redacted Version of Document Filed Under Seal

CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CHASOM BROWN, MARIA NGUYEN,
WILLIAM BYATT, JEREMY DAVIS,
and CHRISTOPHER CASTILLO,
individually and on behalf of all other
similarly situated,

    Plaintiffs,

v.

GOOGLE LLC,

    Defendant.

Case No. 5:20-cv-03664-LHK

**DEFENDANT'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' INTERROGATORIES (NOS. 1–3)**

Pursuant to Federal Rules of Civil Procedure Rule 33, Defendant Google LLC ("Google") hereby responds and objects to Plaintiffs' Interrogatories (Nos. 1–3). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Google's knowledge, investigations, and analysis to date. As discovery proceeds, Google may become aware of additional facts or evidence and its analysis of the case may change. Google reserves all rights to supplement and amend its objections and responses accordingly.

**GENERAL OBJECTIONS**

The following objections apply to each and every interrogatory propounded by Plaintiffs and are incorporated into each of the specific objections by reference as if set forth fully therein:

1. Google objects to Plaintiffs' interrogatories as compound and including twenty-one (21) sub-parts, which counts against the 25 per party limit under Fed. R. Civ. P. 33(a)(1).

2. Google objects to Plaintiffs' definition of "GOOGLE," "YOU," and "YOUR" as encompassing "any of its directors, officers, consultants, agents, representatives, predecessors in interest, subsidiaries, assignees, licensees, employees, attorneys and any other persons acting on GOOGLE LLC'S behalf, including contractors," as well as "purporting to act on" Google's behalf.

Google further objects to these definitions to the extent that it seeks to require Google to produce or otherwise analyze any document or other information that is not within the possession, custody, or control of Google. Google further objects to these definitions to the extent that it purports to impute knowledge of unspecified or unknown parties or persons to Google. Google further objects to these definitions as overly broad, vague, and ambiguous to the extent they purport to include entities other than Google, which is the only named defendant in the present action. Google further objects to these definitions and instruction to the extent that they include Google's attorneys and, therefore, cause interrogatories using "Google" to seek improperly information protected by the attorney-client privilege, the work product doctrine, the common interest privilege and/or any other applicable privileges or immunities.

3. Google objects to Plaintiffs' definition of "PERSON" or "PERSONS" as overly broad and unduly burdensome in that it purports to include "firm, association, organization, partnership, business, trust, corporation, or public entity."

4. Google objects to the definition of "X-CLIENT DATA HEADER" as a "unique digital string of characters as described in paragraphs 94 to 95 of the First Amended Complaint." Paragraph 95 alleges that "Google's Chrome browser *identifies every device* upon installation of Chrome with a *unique digital string of characters* called Google's 'X-Client-Data Header,' such that **Google uniquely identifies the device and user thereafter**" (emphasis added). Plaintiffs' definition and allegations about the X-Client Data Header are factually incorrect. The X-Client Data Header is neither "a unique digital string of characters," nor does it "uniquely identif[y]" a device or user. In its responses below, Google uses the term "X-Client-Data Header" to refer to a string of characters that is randomized based on a number from 0 to 7999 to ensure the header is non-identifying, as described in the publicly available Chrome White Paper (*see* www.google.com/chrome/privacy/whitepaper.html).

5. Google objects to Plaintiffs' definitions of "ALL," "USER," "INCLUDE," "CONCERNING," "RELATE," or "RELATING TO" to the extent that they propose to alter the plain meaning or scope of any specific interrogatory and to the extent that such alteration renders the interrogatory vague, ambiguous, and overbroad.

6. Google objects to Plaintiffs' Definitions, Instructions, and interrogatories to the extent they seek information and/or records that are not reasonably accessible and whose inclusion is not proportional to the needs of the case.

7. Google objects to the Requests to the extent that they seek information shielded from disclosure by the attorney-client privilege, the work-product doctrine, the settlement privilege and/or any other applicable privilege or protection from discovery.

8. Google objects to Plaintiffs' Definitions, Instructions, and interrogatories to the extent they conflict with or encompass information and/or records falling outside the scope of discovery under the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any discovery orders governing this case.

9. Google's responses to these interrogatories are hereby made without waiving or intending to waive, but rather, to the contrary, by preserving and intending to preserve:

    a. All questions as to the competence, relevance, proportionality, materiality, and admissibility as evidence for any purpose of the information or documents, or the subject matter thereof, in any aspect of this action or any other court action or judicial or administrative proceeding or investigation;

    b. The right to object on any ground to the use of any such information or documents, or the subject matter thereof, in any aspect of this action or any other court action or judicial or administrative proceeding or investigation;

    c. The right to object at any time in connection with any further response to this or any other request for information or production of documents; and

    d. The right at any time to supplement its responses.

10. In offering to produce various types of documents, information, or things, Google makes no representation that any such documents, information, or things exist or are actually known (or not known) to exist.

11. Google anticipates that future discovery, independent investigation, or analysis will supply additional facts and add meaning to known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to additions to, changes in, and variations

from the responses set forth herein. Google reserves the right to modify, supplement, withdraw, or otherwise alter its responses to these interrogatories in accordance with the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any discovery orders governing this case.

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

Subject to the foregoing objections, Google objects and responds to Plaintiffs' interrogatories as follows:

**INTERROGATORY NO. 1:**

For the class period, describe Google's collection, storage, and use of data from users' private browsing, including (a) identifying what data Google collects (e.g., URL), (b) how Google collects such data (e.g., Google scripts), (c) where and how such data is stored by Google (e.g., specific Google databases), (d) how such data is used (e.g., profiles, association with other data, advertising, product improvement), and (e) describing any changes during the class period.

**RESPONSE TO INTERROGATORY NO. 1:**

Google incorporates its objections to Plaintiffs' definitions and instructions as if set forth fully herein. Google objects to this interrogatory as vague, ambiguous, and overbroad as to the meaning of "data from users' private browsing." Google will assume for purposes of its responses that "data from users' private browsing" means data generated when users visited a third-party website that used Google Analytics or Ad Manager while private browsing using Chrome and while not logged in to their Google Account, as that is the data at issue in this class action. (*See* Dkt. 68 at ¶ 192). Google further objects to this interrogatory as vague, ambiguous, and overbroad with its undefined use of the term "profiles." In responding to this interrogatory, Google interprets "profiles" as referring to data from separate web browsing sessions and tied to the same authenticated or pseudonymous ID. Google further objects to this interrogatory to the extent it seeks information related to non-Chrome browsers, which may have unique browser features that impact data collection by Google Ad Manager and Google Analytics. Google also objects to this

interrogatory as it contains five (5) discrete sub-parts, which counts against the 25 per party limit under Federal Rule of Civil Procedure ("Rule") 33(a)(1).

Subject to the foregoing general and specific objections, and based on its investigation to date, Google responds to each of the five discrete sub-parts as follows:

**Sub-part (a)**:

As Google has explained in its Privacy Policy, "[w]e collect information about the services that you use and how you use them, like when you … visit a website that uses our advertising services, or view or interact with our ads or content. This information includes: … details of how you used our service, such as search queries … internet protocol [IP] address… and referral URL."

The fact alone that a user is in private browsing mode does not change the types of data collected when Chrome users visit a third-party website that uses Google Analytics or Ad Manager while not logged in to their Google Accounts. Google designed the Chrome browser to prevent visited websites, including Google, from recognizing whether a user is in private browsing mode. As Google's disclosures explain, "although [p]rivate browsing works differently depending on which browser you use," it "usually means" that "[t]he searches you do or sites you visit won't be saved to your device or browsing history," and cookies placed on the browser during a private browsing session "are deleted after you close your private browsing window or tab." This is how private browsing works in Chrome's Incognito mode.

Therefore, depending on (1) the particular website visited, (2) the particular Google service(s) the website uses, (3) the website's specific settings and selections for each of its Google services, and (4) the user settings, browser settings, and other software settings and plug-ins, Google may receive through a service certain data generated by a user's interactions with the service, which data may include: IP address; the web page the user viewed; referral URL; and search queries. To the extent it receives such data, Google receives the data regardless of whether the user is in Incognito mode.

**Sub-part (b)**:

Google collects such data, including cookie values, by way of scripts the websites choose to install for the purpose of sending such data to Google to provide Analytics and Ad Manager

1 services. *See, e.g.*,
2 https://developers.google.com/analytics/resources/concepts/gaConceptsTrackingOverview;
3 https://developers.google.com/ad-manager/api/start.

4 **Sub-part (c)**:

5     Google stores the data at issue in this case in Analytics and Ad Manager protocol buffer
6 logs that do not associate the data with users' Google Accounts.

7 **Sub-part (d)**:

8     Google uses data it receives to provide analytics and advertising services to the websites
9 that use Google Analytics and Google Ad Manager. Google Analytics uses cookies to identify
10 browsers for the purpose of allowing websites to understand how visitors engage with their sites.
11 For instance, Google will assess and report website traffic based on the cookie ID in a Google
12 Analytics' first-party cookie set on a user's browser. Google Ad Manager uses cookies to identify
13 browsers for the purpose of serving tailored advertisements. Therefore, in the advertising context,
14 Google will use the cookie ID in a third-party cookie set on a user's browser to serve personalized
15 advertising.

16     When a user enables Incognito mode in Chrome, however, the browser opens a new tab
17 with a separate (and empty) cookie repository (also referred to as a cookie jar or cookie store). As
18 a result, when a user visits a website in Incognito mode, neither the website, nor Google (assuming
19 the website uses Google's analytics or advertising services), can read cookies that were set on the
20 browser before the user enabled Incognito mode. Because Google Analytics and Ad Manager use
21 cookies to identify browsers, when a user enables Incognito mode, the user appears to Google as
22 a new user. Incognito mode also deletes cookies set during an Incognito session when the session
23 is closed. As a result, the data Google receives during a given Incognito session is not linked to
24 data Google received from previous browsing sessions (in Incognito mode or otherwise) on the
25 same browser. Google therefore does not associate or compile the data from separate Incognito
26 sessions of users logged out of their Google Accounts, nor does Google link such data to a
27 particular browser or user after the Incognito session is closed. Google does not create "profiles"
28 from data received from users who are signed out of their Google Accounts and in Incognito mode.

To the best of Google's knowledge and belief, the foregoing response applies when users visit websites that use Google Analytics and Ad Manager services in non-Chrome browsers' private browsing modes.

Google also uses data it collects to provide, maintain, and improve its services, as well as develop new services.

**Sub-part (e)**:

In May 2020, Google initiated the introduction of a function in Chrome that blocks third party cookies by default when a user is in Incognito mode.

**INTERROGATORY NO. 2:**

Please describe the history of Google's use, transfer, and storage of the X-Client-Data Header, including (a) identifying any period of time during which Google's Chrome browser did not transmit any X-Client-Data Header to Google while users are in Incognito mode, (b) explaining when and why Google made any changes to the transfer of X-Client-Data Header to Google while users are in Incognito mode, (c) explaining when and why Google paired data Google received via Google Analytics or Google Ad Manager with Google Analytics USER-ID or any other user identifier where Google did not also receive any X-Client-Data Header information, and (d) the person involved with any changes to the transfer of X-Client-Data Header while users are in Incognito mode.

**RESPONSE TO INTERROGATORY NO. 2:**

Google incorporates its objections to Plaintiffs' definitions and instructions as if set forth fully herein. Google also objects to the phrase "Google Analytics USER-ID" as vague and ambiguous. For purposes of responding to this Request, Google will assume Plaintiffs intended to reference the "User-ID" described at https://support.google.com/analytics/answer/3123662. Google further objects to this interrogatory as it contains four (4) discrete sub-parts, which counts against the 25 per party limit under Rule 33(a)(1).

1 | Subject to the foregoing general and specific objections, and based on its investigation to
2 | date, Google responds to each of the four discrete sub-parts as follows:
3 | **Sub-part (a):**
4 | The X-Client-Data Header was introduced in 2012. The X-Client-Data Header has not been
5 | transmitted to Google while users are in Incognito mode, with one limited exception: ▉
6 | ▉
7 | ▉
8 | ▉
9 | **Sub-part (b):**
10 | Apart from ▉ described in response to sub-part (a), Google has made
11 | no changes responsive to this Interrogatory.
12 | **Sub-part (c):**
13 | Google does not receive any data via Google Analytics that includes the X-Client-Data
14 | Header. The Google Analytics User-ID is an identifier created and sent by a website that uses
15 | Google Analytics. Google pairs data with User-ID only at a website's request and only for the data
16 | transmitted to Google by that particular website. The User-ID is not used to associate data from
17 | visits to multiple websites owned by different publishers. It therefore is not used to "track" users
18 | from site to site. Google does not use User-ID, or any other ID, as a replacement or proxy for the
19 | X-Client-Data Header.
20 | **Sub-part (d):**
21 | Alexei Svitkine.
22 |
23 | **INTERROGATORY NO. 3:**
24 | During the class period, for each occasion where Google received data via Google
25 | Analytics or Google Ad Manager in connection with any user browsing but where Google did not
26 | also receive any X-Client-Data Header information, identify (a) the time period during which
27 | Google received that data, (b) the total number of occasions Google received that data, with
28 | monthly breakdowns, (c) the total number of users for which Google received that data, with

monthly breakdowns, (d) the types and amount of data that Google received, (e) whether and when such data was paired with Google Analytics USER-ID or any additional user identifier (such as users' Gmail or another Google login), with monthly breakdowns, and (f) how that data was used by Google, including in terms of any profiles.

**RESPONSE TO INTERROGATORY NO. 3:**

Google incorporates its objections to Plaintiffs' definitions and instructions as if set forth fully herein. Google objects to this interrogatory as vague, ambiguous, and potentially overbroad as to the meaning of "where Google received data via Google Analytics or Google Ad Manager in connection with any user browsing." Google will assume for purposes of its response that "data via Google Analytics or Google Ad Manager in connection with any user browsing" means data related to browsing by users who visited a website that used Google Analytics or Ad Manager while not logged in to their Google Account. Google objects to this interrogatory as vague, ambiguous, and potentially overbroad with respect to its undefined use of the term "profiles." In responding to this interrogatory, Google construes "profiles" as referring to tying data from separate web browsing sessions to the same authenticated or pseudonymous ID. Google also objects to the phrase "Google Analytics USER-ID" as vague and ambiguous. For purposes of responding to this Request, Google will assume Plaintiffs intended to reference the "User-ID" mentioned at https://support.google.com/analytics/answer/3123662. Google also objects to this Interrogatory because it does not define "class period."  Google therefore construes the period in question to refer to the putative class period in Plaintiffs' First Amended Complaint, from June 2016 to the present (the "Putative Class Period"). Google also objects to subparts (b) and (d) (to the extent subpart (d) inquires about the "amount" of data) of this Interrogatory as they apply to Analytics, and to subparts (b) and (d) (to the extent subpart (d) inquires about the "amount" of data) of this Interrogatory as they apply to Ad Manager, on the grounds that, as currently phrased, the subparts are overbroad, unduly burdensome, and seek information that is not relevant to the case. Google is willing to meet and confer with Plaintiffs regarding the information sought in these

subparts. Google also objects to this interrogatory as it contains twelve (12) discrete subparts, which counts against the 25 per party limit under Rule 33(a)(1).

Subject to the foregoing general and specific objections, and based on its investigation to date, Google responds as follows:

**Analytics**

**Sub-part (a):**

Throughout the Putative Class Period, Google received data without any X-Client-Data Header information from websites that use Google Analytics.

**Sub-part (c):**

Google does not maintain information in the ordinary course of business showing the total number of users for which Google received data via Google Analytics.

**Sub-part (d):**

Google incorporates its response to Interrogatory 1(a) by reference.

**Sub-part (e):**

Google has not associated any data it received via Google Analytics with a user's Google Account unless that user was signed in to their Google Account and consented to that data being paired with their Google Account.

**Sub-part (f):**

Google processes the data it receives via Google Analytics on behalf of the websites that use Google Analytics to report website utilization statistics. Google does not create "profiles" using data from logged-out users' separate private browsing sessions. Google incorporates its response to Interrogatory 1(d) by reference.

**Ad Manager**

**Sub-part (a):**

Throughout the class period, Google received data without any X-Client-Data Header information from websites that use Google Ad Manager.

**Sub-part (c):**

Google does not maintain information in the ordinary course of business showing the total number of users for which Google received data via Google Ad Manager.

**Sub-part (d):**

Google incorporates its response to Interrogatory 1(a) by reference.

**Sub-part (e):**

Google has not paired data it received via Google Ad Manager with a user's Google Account unless that user was signed in to their Google Account and consented to that data being paired with their Google Account.

**Sub-part (f):**

Google uses the data it receives via Google Ad Manager to serve relevant advertising. Google does not create "profiles" using data from logged-out users' separate private browsing sessions. Google incorporates its response to Interrogatory 1(d) by reference.

DATED: February 5, 2021        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/ Andrew H. Schapiro
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Fax: 202-538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Fax: (415) 875-6700

Thao Thai (CA Bar No. 324672)
thaothai@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Fax: (650) 801-5100

*Attorneys for Defendant Google LLC*

CONFIDENTIAL

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Mateo, State of California. My business address is 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065.

On February 5, 2021, I served true copies of the following document(s) described as **DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES (NOS. 1–3)** on the interested parties in this action as follows:

SEE ATTACHED LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I transmitted PDF format copies of the document(s) described above to the e-mail addresses on the attached Service List pursuant to the agreement between the parties to serve discovery, in lieu of other service methods, by email under Fed. R. Civ. P. 5(b)(2)(E) (*see* Joint Case Management Statement VIII(E), Docket No. 59). The documents were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 5, 2021 at Redwood City, California.

/s/ *Thao Thai*
Thao Thai

1

Case No. 5:20-cv-03664-LHK
DEFENDANT'S RESPONSES & OBJECTIONS TO PLAINTIFFS' INTERROGATORIES (NOS. 1–3)

## SERVICE LIST

*Brown v. Google LLC*
*Case No. 5:20-cv-03664-LHK*

*Attorneys for Plaintiffs Chasom Brown et al.* <u>BOIES SCHILLER FLEXNER LLP</u>

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
Antonio Lavalle Ingram, II, CA Bar No. 300528
Alexander Justin Konik, CA Bar No. 299291
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com
aingram@bsfllp.com
akonik@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA. 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William S. Carmody (admitted pro hac vice)
Shawn Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander P. Frawley (admitted pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023

Tel.: (212) 336-8330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Ra Olusegun Amen (admitted pro hac vice)
Jean Sutton Martin (admitted pro hac vice)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
ramen@forthepeople.com
jean@jsmlawoffice.com

*Attorneys for Plaintiffs*