QUINN EMANUEL URQUHART & SULLIVAN, LLP

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, *et al.*, individually and on behalf of all similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 5:20-cv-03664-YGR<br><br>**GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>The Honorable Yvonne Gonzalez Rogers<br>Courtroom 1 – 4th Floor<br>Date: March 15, 2022<br>Time: 2:00 p.m.<br>Amended Complaint Filed: April 15, 2021<br><br>Trial Date: None Set |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................................. 1

II. BACKGROUND .................................................................................................................. 2

    A.  Incognito Mode Works Exactly As Described In Google's Disclosures ................... 2

    B.  Immense Discovery Has Focused On Google Analytics And Google Ad Manager ......................................................................................................................... 3

    C.  Plaintiffs Include Irrelevant Background And Mischaracterize the Record In An Attempt To Color The Court's View On The Merits ............................................ 4

III. ARGUMENT ....................................................................................................................... 5

    B.  Plaintiffs' Amendment Would Severely Prejudice Google ........................................ 7

    C.  Plaintiffs Have Unduly Delayed Seeking the Expanded Class Definition ............... 11

IV. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) ............................................................................................... 12

*Chodos v. W. Publ'g Co.*,
292 F.3d 992 (9th Cir. 2002) ............................................................................................... 12

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) ................................................................................................. 5

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ............................................................................................... 6

*Jose Rivera v. Invitation Homes, Inc.*,
2022 WL 504161 (N.D. Cal. Feb. 18, 2022) .................................................................... 6, 10

*McCabe v. Six Continents Hotels, Inc.*,
2013 WL 12306494 (N.D. Cal. Oct. 10, 2013) .................................................................... 10

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ............................................................................................... 8

**Rules/Statutes**

F.R.C.P. Rule 15(a)(2) ................................................................................................................. 5

## I. INTRODUCTION

Since the inception of this case in June 2020, the parties and the Magistrate Judge overseeing discovery have been laser-focused on Plaintiffs' theory that Google improperly receives certain data when users in a private browsing mode visit third-party websites using *two* Google web-services that are specifically identified in Plaintiffs' class definition—Google Analytics and Google Ad Manager.[1] Now, after two prior amendments confirming their class definition is limited to Google Analytics and Google Ad Manager, and as 18 months of intense discovery comes to a close, Plaintiffs seek to dramatically expand their class definition to encompass data received through *all* Google web-services. Such an expansion would be highly prejudicial and improper.

*First*, the proposed amendment would significantly prejudice Google. Google has produced more than 6.8 million pages of documents, deposition testimony spanning more than 5,000 pages, and 600 pages of written discovery focused on the services specified in Plaintiffs' existing class definition. Because Plaintiffs' proposed amended class definition no longer specifies the products or services at issue, it purports to require Google to investigate which of its numerous products and services arguably fall within the expanded scope, just as fact discovery is coming to a close. The proposed amendment would also potentially require Google to: (1) supplement its discovery responses to account for the expansion; (2) produce and prepare new witnesses knowledgeable about a range of additional Google services; and (3) reexamine its defenses and identify and produce evidence necessary to defend against the enlarged scope of the case. Requiring Google to undertake these tasks would be prejudicial under any circumstances, but it is particularly so here, where Plaintiffs filed their Motion to Amend just weeks before the close of fact discovery—thereby ensuring it would not be resolved until *after* fact discovery is closed.

*Second*, Plaintiffs fail to justify their inordinate delay in seeking this amendment. Plaintiffs have been aware since before they filed suit that Google receives the disputed data through web-

---

[1] The class definition in Plaintiffs' original Complaint, First Amended Complaint, and Second Amended Complaint is limited to users "who accessed a non-Google website *containing Google Analytics or Ad Manager* using such a device and who were (a) in 'private browsing mode' on that device's browser and (b) were not logged into their Google account on that device's browser…" Dkt. 1 ¶ 95; Dkt. 68 ¶ 192; Dkt. 136-1 ¶ 192 (emphasis added).

services other than Google Analytics and Google Ad Manager. Indeed, Plaintiffs assert that their original complaint alleged that Google receives the data through "a *variety* of tracking technologies" *beyond* the two specific services specified in their class definition. Mot. 20. Moreover, Google's receipt of such data is plainly visible using Chrome's "Developer Tools" that allow users to see, among other things, the third-party web-services that receive such data when users visit a given website. Plaintiffs used this tool in their original complaint to show that Google (and many other web-service service providers) receives data to provide a variety of services (including when users are in private browsing mode). Dkt. 1 ¶ 38. Accordingly, their assertion that this is newly-discovered information is meritless.

A class definition should not be a moving target. The Motion should be denied.

## II.     BACKGROUND

### A.     Incognito Mode Works Exactly As Described In Google's Disclosures

Contrary to Plaintiffs' arguments, Google has never promised that Chrome's private browsing mode—known as Incognito—would prevent Google from receiving data used to provide services, such as Google Analytics and Ad Manager, to third-party websites. In fact, Incognito operates exactly as Google says it does in its disclosures. Each time a user initiates an Incognito session, Google displays a page that says, in Incognito, "you can browse privately, *and other people who use this device* won't see your activity." Dkt. 136-1 ("SAC") ¶ 52 (emphasis added). Google similarly explains in the Chrome Privacy Notice and elsewhere that Incognito "limit[s] the information Chrome stores *on your system*," including "basic browsing history information." *Id.* ¶ 269 (emphasis added). This is true and undisputed: In Incognito, Chrome's "History" tab does not record the websites visited during the Incognito session so that "other people who use this device won't see your activity." *Id.* ¶ 52; *see also* https://support.google.com/chrome/answer/95589 (In Incognito, "[y]our History page ... doesn't store … pages you've visited in Incognito mode").

Incognito also provides privacy in other ways, as Google's disclosures make clear. For example, when a user starts a new Incognito session, she is automatically logged out of her Google Account (and thus activity from that Incognito session is not saved to her Account). Dkt. No. 165-23 ("Search & browse privately"). Incognito also creates a fresh cookie jar, meaning that cookies set on

the browser before the session are not shared with the websites visited (or the web-services on the site) during the session. *See* Dkt. 165-22 (May 20, 2020 Chrome Privacy Notice), at 11. Thus, the device appears as a new visitor to websites and any service-providers whose code the website has chosen to install (including Google), and that new activity is not linked to old activity. Google's disclosures explain that new cookies may be placed on the browser during an Incognito session and that cookies "are remembered while you're browsing, but deleted *when you exit Incognito mode*." Dkt. 165-24 ("How private browsing works in Chrome") (emphasis added). Accordingly, so long as the user does not sign into her Google Account during her Incognito session—something Plaintiffs allege they did not do[2]—Google does not associate the data received during an Incognito session with the user, her Account, or her device after she closes the Incognito session. *See* Dkt. No. 165-23 ("Search & browse privately"); *see also* Broome Decl. Ex. 14 ("How Chrome Incognito keeps your browsing private"). In other words, the data Google receives from the Incognito session is "orphaned." Broome Decl. Ex. 9 (McClelland Rough Tr.), at 69-71, 76-77, 90-92.

### B. Immense Discovery Has Focused On Google Analytics And Google Ad Manager

Google has produced more than *6.8 million pages* of documents from 43 custodians, and a dozen Google employees have sat for depositions. Broome Decl. ¶ 2. Numerous additional Googlers are set to be deposed in the coming weeks, in addition to the Googlers who will be put up for 30(b)(6) depositions. *Id.* Unsurprisingly, the substantial discovery taken to date has focused on the two Google services specified in the class definition of the first three iterations of Plaintiffs' complaint—Google Analytics and Ad Manager.[3] For example, Plaintiffs' first set of interrogatories is expressly limited to

---

[2] The class definition is expressly limited to users who "were not logged into their Google Account." SAC ¶ 192; Mot. 6, 15; *see also* Dkt. No. 165-23 ("**Important**: If you sign in to your Google Account to use a web service like Gmail, your searches and browsing activity might be saved to your account").

[3] Plaintiffs note that Google has produced at least some documents that mention services "outside of Google Analytics and Ad Manager." Mot. 20. Given the volume of documents Google has produced, it is unremarkable that some documents contain references to other Google products or services in addition to the services identified in Plaintiffs' class definition. Contrary to Plaintiffs' assertion, the inclusion of such references in no way "reflect[s] that Google itself understood these other tracking mechanism to be within the scope of Plaintiffs' claims." *Id.* On the other hand, the fact that references to other Google services that receive the disputed data were included in documents cited in Plaintiffs'

"data Google received via Google Analytics or Google Ad Manager." *Id.* Ex. 1 (Plaintiffs' Interrogatories to Defendant Google, LLC, Nos. 2 and 3), at 7:16, 8:25. Throughout discovery, both Magistrate Judge van Keulen and Google have similarly proceeded on the understanding that the case's scope is defined by the two services identified in Plaintiffs' class definition.

The record confirms this. Magistrate Judge van Keulen has emphasized that discovery would be "tied back…to the proper definitions of the class." *Id.* Ex. 3 (June 2, 2021 Hr'g Tr.), at 35:13-16. And in an October 1, 2021 Order, Judge van Keulen limited disputed discovery to Google Analytics and Ad Manager. Dkt. 288-1 at 1, 4. *See also, e.g.*, Broome Decl. Ex. 2 (May 23, 2021 Google letter informing Plaintiffs that RFPs would be limited to Google Analytics and Ad Manager); *id.* Ex. 1 (Google's February 5, 2021 Responses and Objections to Interrogatories), at 4:19-23 (similar objections); *id.* Ex. 5 (Google's January 28, 2022 Responses and Objections to Interrogatories), at 4:1-8 (objecting as unduly burdensome "to the extent it purports to seek information regarding Google Search [] Ads"); *id.* Ex. 4 (June 11, 2021 Responses and Objections to Plaintiffs' Notice of Rule 30(b)(6) Deposition), at 8:9-13 (objecting to topic seeking information regarding "websites that use Google technologies" other than Google Analytics and Ad Manager because "Google offers numerous technology-based products and services to websites, but the class definition in this case is limited to users who visited websites that use Google Analytics and Google Ad Manager.").

### C.     Plaintiffs Include Irrelevant Background And Mischaracterize the Record In An Attempt To Color The Court's View On The Merits

Plaintiffs devote *twelve pages* of their brief to marshaling what they contend is evidence bolstering their claims on the merits. In the process, they misconstrue Judge Koh's prior motion to dismiss orders, and provide purported "background" designed purely to color the Court's view on the merits. For that reason, it should be ignored. In any event, it is simply wrong.

*First*, Plaintiffs selectively quote snippets from Google's document production. Mot. 5-6, 10-19. These are taken out of context and ignore testimony from Google witnesses—including those who

---

brief that were produced as early as August 2021, Broome Decl. ¶ 15 & Ex. 13, show that Plaintiffs were well aware of these other services, but nevertheless waited to seek to amend their complaint for months.

authored the very documents Plaintiffs tout. For example, Plaintiffs incorrectly assert that Exhibit 6 shows "*Google employees* internally described…concerns about 'collecting data without consent in incognito mode.'" Mot. 5 (emphasis added). The quoted language from Exhibit 6 is a single bullet in a 71-page slide deck (of which Plaintiff excerpted only seven slides) that describes comments by various "Key Opinion Formers" in Europe (*e.g.,* government officials, thinktanks, consumer groups, and the media), not comments by "Google employees," as Plaintiffs contend. Plaintiffs' characterization of other internal Google documents is similarly misleading[4]—and wholly irrelevant to their requested relief.

*Second*, Plaintiffs mischaracterize Judge Koh's orders on the pleadings. Plaintiffs argue that "Judge Koh has twice validated Plaintiffs' theory." Mot. 5. Not so. These quotes show only that, *at the pleading stage*, Judge Koh concluded that Plaintiffs and some class members "*could have*" interpreted Google's disclosures as alleged in the complaint. Dkt. 113 at 14 (stating that, at the pleading stage, the issue is whether "a reasonable…user *could have* plausibly interpreted the contract language as not disclosing" the conduct at issue (emphasis added)); *id.* at 16 ("a Google user reading [the Privacy Policy] … *might have* reasonably concluded that Google does not collect this data from users in private browsing mode" (emphasis added)). But Judge Koh explained that "the fact that a contract is 'reasonably susceptible' to one interpretation does not mean that the contract is not 'reasonably susceptible' to a competing interpretation." Dkt. 363 at 19. Nowhere in Judge Koh's prior orders did she hold that Plaintiffs' have alleged the only correct interpretation of the various disclosures at issue. Plaintiffs' arguments to the contrary are meritless and irrelevant to their requested relief.

**III.   ARGUMENT**

    **A.   Legal Standard**

Rule 15(a)(2) provides that leave to amend a complaint should be freely given "when justice so requires." However, leave is "not to be granted automatically." *In re W. States Wholesale Nat. Gas*

---

[4] For example, Plaintiffs claim that Exhibit 12 shows that Google employees have "recogniz[ed] that '[u]sers are surprised that Google gets information about their browsing while in incognito mode.'" Mot. 10-11. However, the quoted language is part of a section addressing a "Proposal" and specifically listed under "[u]nwanted events to be prohibited," in moving forward with that proposal.

*Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (finding district court did not abuse its discretion in denying motion for leave to amend). In assessing whether to grant leave, courts consider: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Id*. "Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (affirming denial of motion for leave to amend complaint).

In evaluating Plaintiffs' motion to amend, the Court should bear in mind the unusual posture in which their motion arises. In the typical class action involving a motion to amend the class definition, the plaintiff seeks to *narrow* an overbroad class in order to gain certification. But here, Plaintiffs seek the opposite, asking to dramatically *expand* their class definition at the eleventh hour from two Google services to *all* Google services that receive the disputed data.

Tellingly, Plaintiffs were not forthcoming when this Court directly asked them at the recent Case Management Conference if they were seeking to expand the class definition.[5] That is because expanding the class in the last days of discovery is highly prejudicial. Indeed, in a recently issued decision, Judge White emphasized the distinction between cases permitting motions to amend the class definition where the amendment was modest and would narrow the class, on the one hand, and an amendment—such as that proposed here—that "would broaden the class definition and would prejudice Defendant," on the other hand. *Jose Rivera v. Invitation Homes, Inc.*, 2022 WL 504161, at *4 (N.D. Cal. Feb. 18, 2022). Judge White rejected such a belated expansion of the class definition. This Court should do the same.

---

[5] *See* Broome Decl. Ex. 7 (February 11, 2022 CMC Hr'g Tr.), at 16:19-25 ("THE COURT: But what are you trying to do? MR. LEE: We're just revising our class definition to conform to discovery, Your Honor. We're not adding any allegations or claims. THE COURT: Are you narrowing it or expanding it? MR. LEE: I think, Your Honor, we're really just clarifying it."). Plaintiffs later acknowledged that their expanded class definition would encompass not merely Google Analytics and Ad Manager, but also services that are not identified in their existing class definition, including "Google Search," "AdSense" and "there may be one or two more." *Id.* 18:1-3, 22:1-8. The proposed amended class definition is not limited to any particular services, but purports to encompass all Google services.

### B. Plaintiffs' Amendment Would Severely Prejudice Google

If Plaintiffs' Motion is granted, they will no doubt seek to extend the discovery schedule (which has already been extended twice) to allow time to demand discovery relating to Google products and services that, to date, have been outside the scope of the case, but which Plaintiffs will argue are encompassed by previously served discovery requests once their class definition is expanded. *See* Mot. 21 n.3 ("To the extent a modification of the discovery deadlines becomes necessary, it will be for Google to complete its obligations with respect to already served discovery…"). Google would be forced to amend its Initial Disclosures and discovery responses; Plaintiffs admit they would have to do the same. Mot. 23 ("Plaintiffs will also be amending their initial disclosures and prior discovery responses" to be consistent with their proposed amendment). Google would be forced to conduct additional document and data searches, interview dozens of engineers and other personnel across product lines, and scramble to prepare Rule 30(b)(6) witnesses for a litany of new topics. This inevitably would be followed by yet another onslaught of discovery motions that would clog up the Court's docket and require expansive judicial and party resources.

Plaintiffs argue that this dramatic expansion of their class definition at this late stage would not significantly prejudice Google because Plaintiffs will refrain from propounding *new* discovery requests. That is little comfort. Discovery is almost over and Plaintiffs have exhausted the generous court-ordered limits on RFAs and interrogatories. Dkt. 298 (limiting parties to 75 RFAs and 40 interrogatories). In a February 16, 2022 email to Google, Plaintiffs claimed that the list of witnesses they wish to depose "won't change based on this amendment," and that they are "willing to stipulate that they will not seek any additional discovery based on this amendment." Broom Decl. Ex. 8. But in the next breath, they asserted that "the parties have supplementation obligations under the rules and there are certain disputes we are currently working through, and we don't see that changing based on this amendment." *Id*. Similarly, at the recent Case Management Conference, Plaintiffs asserted that they are "standing on the discovery already served," but then clarified that they would be "following up" on that discovery by seeking supplementation relating to additional Google products and services such as "Google Search" and "AdSense." Broome Decl. Ex. 7 (February 11, 2022 CMC Hr'g Tr.), at 21:5-6, 22:1-8. Thus, if the amendment is allowed, Plaintiffs apparently intend to demand new

discovery by requiring Google to "supplement" its responses to discovery already served and produced, as well as to prepare Rule 30(b)(6) witnesses for topics Google has legitimately argued are outside the scope of the class definition.

Indeed, Plaintiffs openly admitted they are seeking this amendment, at least in part, to circumvent Google's objections to Plaintiffs' Rule 30(b)(6) deposition notice and other discovery requests. Broome Decl. Ex. 6 (February 1, 2022 Email from A. Frawley to S. Broome) ("This amendment is partly due to objections Google has asserted in response to Plaintiffs' 30(b)(6) deposition notices, seeking to prevent any testimony regarding AdSense and also Google's tracking of people visiting non-Google website after running a Google search").

Plaintiffs have thus acknowledged that, through their proposed amendment, they hope to achieve exactly what Google seeks to avoid. Plaintiffs would seek supplemental discovery responses to account for the amended class definition; they would seek to depose Google witnesses on a panoply of topics that are currently outside the scope of the case; and their expanded class definition would necessarily require Google to conduct extensive investigation to determine which of the numerous products and services Google offers beyond Ad Manager and Analytics could potentially fall within Plaintiffs' expanded class definition.

Even if the Court declines to allow Plaintiffs to use an expanded class definition to seek supplemental discovery, the amendment would still prejudice Google. If the amendment is allowed, Google would have to reevaluate the discovery and witnesses that *it* needs in order to prepare its defenses to claims that now encompass Google services that may receive, store and/or use the data differently from Google Analytics and Google Ad Manager, and which may implicate different defenses.[6] This would be particularly unfair given Plaintiffs' admission that, through their belated amendment, they seek to "increase [Google's] liability." Mot. 22. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of leave to amend where the

---

[6] For example, the Google Fonts API and Google Maps Embed API receive the disputed data, but neither service shares it with other Google services, or uses it for tracking or advertising purposes. *See Calhoun v. Google, LLC*, Case No. 5:20-cv-05146-YGR, Dkts. 430-10, 430-11.

proposed amendments "would have required defendants to have undertaken, at a late hour, an entirely new course of defense.").

The prejudice Plaintiffs' proposed amendment would cause to Google would be substantial. It includes, among other things:

- **Additional Rule 30(b)(6) Testimony.** Plaintiffs seek Rule 30(b)(6) testimony about Google Ad Sense and Google Search Ads, two Google services that currently are outside the scope of discovery. Expanding the class definition at this late stage and permitting Plaintiffs to depose Rule 30(b)(6) witnesses on these and other Google services would require Google to prepare additional witnesses responsible for these services. And because services other than Google Analytics and Google Ad Manager are currently outside the scope of discovery, collecting the documents necessary to prepare the corporate designees is likely to require substantial investigation and additional document production.

- **Additional Document Discovery.** Google has limited its previous responses to Plaintiffs' RFPs to the two services listed in Plaintiffs' existing class definition. *See, e.g.*, Broome Decl. Ex. 2 (May 23, 2021 letter limiting the scope of production for RFP Nos. 21, 31, 33, 35, 111, 112, and 136). Discovery disputes related to the scope of other requests were brought before Magistrate Judge van Keulen, who appropriately limited discovery based on the class definition. *See, e.g.*, Dkt. 288-1 (adopting Google's limitation for RFP No. 49 and 102). If the class definition is expanded, Google could be required to investigate and produce additional documents, some of which Judge van Keulen previously ruled need not be produced.

- **Additional Interrogatory Responses**. Google has limited its previous responses to Plaintiffs' interrogatories to the two services listed in Plaintiffs' existing class definition. *See, e.g.*, Broome Exs. 1, 5, at Interrogatory Nos. 1, 34. If the class definition is expanded, Google could be required to supplement or amend its prior responses to take into account the new service at issue.

- **Additional Expert Work.** Expert reports are currently due March 18, 2022 and Google has been working with its experts for months on the assumption that the case is limited to Google Analytics and Google Ad Manager. It would be highly prejudicial to require Google to go

back to the drawing board and consider its experts' opinions based on an expanded class definition that covers *all* services through which Google receives the disputed data.

Indeed, just recently, in *Jose Rivera*, a court in this District rejected a proposed modification to the class definition that "would significantly alter the scope of the case and go beyond the wrongs alleged in the complaint." 2022 WL 504161, at *3. The Court found that "the Defendant would be prejudiced if the Court were to permit the proposed modification" allowing the plaintiff to expand the class definition at the last minute to increase the defendant's liability because "Defendant has not had sufficient notice of this theory of liability." *Id*. The Court reasoned that the proposed expansion of the class definition—years after the case began—would cause the defendant prejudice "given the length of time this case has been pending" and the fact that plaintiffs had, until now, challenged only one particular form of late fee under a lease agreement and, despite multiple amendments, had not placed the defendant on notice that "Plaintiff would seek to certify a class of encompassing late fees imposed by all its predecessor entities going back to 2014." *Id*. at *4. The court also noted that broadening the class definition would require additional discovery. *See id*. n.2. These rationales are applicable here, where Google has organized its entire defense to respond to Plaintiffs' theories pertaining solely to Google Analytics and Ad Manager, and all of the discovery since the case's inception 18 months ago has focused on the disputed data that Google receives through these two specific services.

The case Plaintiffs cite, *McCabe v. Six Continents Hotels, Inc.*, 2013 WL 12306494, at (N.D. Cal. Oct. 10, 2013), is inapposite. There the court relied on the fact that the alleged unlawful practice "involv[ed] the same call centers that are the subject of the allegations in the current complaint." *Id.* at *2. Here, the Google services are not analogous to the "same call centers." Rather, Google's collection and use of data may vary from service to service. *See Calhoun v. Google, LLC*, Case No. 5:20-cv-05146-YGR, Dkt. 429, at § II.G.

Because expanding the Google services included in Plaintiffs' class definition so late in the case would cause delay and significant prejudice to Google, the Motion should be denied.

### C. Plaintiffs Have Unduly Delayed Seeking the Expanded Class Definition

Plaintiffs' undue delay in seeking an expanded class definition is an additional, independent basis for denying their Motion.

Plaintiffs filed the Motion to Amend on February 3, 2022—only four weeks before discovery is set to close. As a result, Plaintiffs ensured that their Motion would not be resolved until *after* the close of discovery. That alone confirms the Motion is untimely.

Plaintiffs erroneously contend that their proposed amendment is timely because "[d]iscovery has shown" that Google receives the disputed data through services beyond those identified in their class definition. Mot. 19. But the fact that Google receives the disputed data from Chrome Incognito sessions to facilitate Google Analytics, Ad Manager, *and other Google services* is plainly visible using Chrome's Developer Tools, as illustrated in Plaintiffs' Complaint.[7] SAC ¶ 86. Developer Tools allow users to see a list of the web-services (including Google web-services) that the website is using and which receive the disputed data. *See, e.g.*, Broome Decl. Exs. 10-12.[8] Moreover, the documents Plaintiffs cite as the purportedly "new" evidence justifying the amendment were produced last year. Broome Decl. ¶ 15 & Ex. 13 (Exhibits 10 and 38-42 to the Mao Declaration, which Plaintiffs rely upon for justifying the proposed amendment, were produced between August 30, 2021 and October 5, 2021). Plaintiffs' assertion (Mot. 24) that they only recently learned this in discovery is simply not credible.

---

[7] Any Chrome user (in any mode, including Incognito) can select View > Developer > Developer Tools > Sources to see a list of the third-party web services and/or APIs (including the Google third-party web services and APIs) that receive data when users visit a given website. Alternatively, users of most popular browsers can simply right click on the page and select "Inspect Source" (or an equivalent) to see the same information. Plaintiffs know this—they used this function to show in their Complaint that Google Analytics and Google Ad Manager receive the disputed data while Chrome users are in Incognito mode. Plaintiffs have thus been well aware, since before they filed this lawsuit, that Google services other than Analytics and Ad Manager also receive the disputed data while Chrome users are in Incognito mode (or another browser's private browsing mode).

[8] A visit to Plaintiffs' counsel's website (in Incognito or another private browsing mode, or in a browser's regular mode), for example, results in data being sent to several Google services, including Google Fonts and Ad Services, as well as to other web-services provided by TikTok, Facebook, Bing, Mouseflow, New Relic and many others (demonstrating that the use of such data to provide web-services is routine). Broome Decl. Ex. 10.

Indeed, Plaintiffs' alternative argument—that their claims have never been limited to the two Google services specified in their class definition because the "Complaint has always alleged that Google unlawfully collected third-party browsing data via *a variety of tracking technologies that merely 'include' Google Analytics and Ad Manager*," Mot. 20 (emphasis added)—contradicts their argument that they only recently discovered that Google receives the disputed data through other services and thus they could not have amended their class definition sooner, *id.* 23-24. Indeed, the original complaint alleged that Google receives the data from websites that use "Google Approved Pixels." Dkt. 1 ¶¶ 45-46. And the FAC (filed on September 21, 2020) also alleged, for example, "that GStatic is an additional way that Google identifies and tracks consumers, including when consumers are using a private browsing mode." Dkt. 68 ¶ 101. By Plaintiffs' own argument, they have known about a "variety of tracking technologies" other than Google Analytics and Ad Manager since the inception of the case. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[I]n evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'"); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (affirming denial of leave to amend where "'new' facts had been available to [plaintiff] even before the first amendment to his complaint").

But if Plaintiffs had intended to base their claims on data Google received through other services, they would not have expressly limited their class definition to users who accessed third-party websites "*containing Google Analytics or Ad Manager*." SAC ¶ 192 (emphasis added). This language is not illustrative or open-ended; it refers to a defined pair of services and no others. The fact that their 284-paragraph complaint contains a handful of references to other services that receive the disputed data does not mean Plaintiffs' claims encompass those other services. For example, under the existing class definition, data Google received when a private browsing user visited websites that use only Google services *other than* Analytics and Ad Manager would not give rise to a claim, and the user would not be a member of the class. The proposed amendment clearly seeks to expand the scope of the claims and the class.

Even beyond the class definition, the SAC is clear that the claims are limited to Google Analytics and Google Ad Manager. For example, the SAC includes sections titled "Google Collects

Data Using Google Analytics," SAC § III.B, and "Google Collects Data Using Ad Manager," *id.* § III.C, but no similar section for any other Google service.

Nor is there merit to Plaintiffs' argument that "[t]his is Plaintiffs' first opportunity to seek this amendment" because the Court did not rule on Google's motion to dismiss two counts from Plaintiffs' SAC until December 22, 2021. Mot. 23-24. Plaintiffs cite no rule (because there is none) requiring that they wait for the Court to rule on a motion to dismiss two out of eight causes of action before seeking to amend the class definition in their complaint. In fact, Plaintiffs filed the FAC while Google's first motion to dismiss was pending. *See* Dkt. 62.

Plaintiffs' unwarranted delay requires that their Motion be denied.

## IV. CONCLUSION

For the reasons stated, Google respectfully requests that Plaintiffs' Motion be denied.

DATED: February 25, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*