# EXHIBIT 2

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5040**

WRITER'S EMAIL ADDRESS
**sarajenkins@quinnemanuel.com**

May 23, 2021

<u>VIA E-MAIL</u>

Beko Reblitz-Richardson
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104

Re:     <u>Brown, et al. v. Google LLC</u> – U.S. District Court, Northern District of California, San Jose Division: Case No. 5:20-cv-03664-LHK-SVK

Dear Counsel,

I write regarding your letter of May 19, 2021 and the scope of Google's production of custodial documents, subject to search terms.

## I.   The Parties' Negotiation History

We fundamentally disagree with your characterization of the parties' discussions regarding the scope of Google's production of custodial documents as well as your account of the recent telephonic discussions as to when we would get back to you about this issue.[1]

On April 6, 2021, Google informed you that it was "disappointed by Plaintiffs' refusal to revise their overbroad search terms as requested by Google," including facially overbroad terms like <URL>, <profil!>, <lawsuit>, and <"IP address"> and thus Google sought to modify overbroad terms so that they were better aligned with Plaintiffs' document requests. Google's April 6, 2021 letter does not state that Google was abandoning its objections as to the relevance or scope of Plaintiffs' document requests. Google's willingness to "prompt[ly]" reach agreement on the breadth and scope of search terms cannot be interpreted to suggest as much.

---

[1] The letter that Google stated was forthcoming on the May 18 meet and confer related to search terms and new custodians and was sent to you the following day. Google was not referring to this letter, which relates to the scope of custodial documents being produced subject to search terms.

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

In an email from later that day, you asked that Google respond, within 24 hours, as to whether and how Google proposed to narrow the scope of production for the RFPs for which we were negotiating custodial productions search terms. Google responded on April 7, 2021, proposing that Plaintiffs first provide a counterproposal to Google's revised search terms before moving on to such discussions. Thus, it is clear that both sides contemplated narrowing, and that Google's search terms were not the result of any narrowing for responsiveness or privilege, as you seem to suggest.

Thereafter, the parties engaged in subsequent discussions and negotiations regarding search terms, including through Google's April 19, 2021 letter. At no time did Google agree to produce documents subject to the full scope of the relevant RFPs. By virtue of their breadth and scope, the full scope of the RFPs would include attorney-client communications and work product, as well as documents that Google has explained are not relevant to the parties' claims or defenses, or proportional to the needs of this litigation. Nor did Plaintiffs claim as much before May 10. Google's agreement, in prior correspondence, to run certain search terms "notwithstanding its objections" does not indicate Google's agreement to provide documents irrespective of its privilege and relevance objections; read in context, it simply means that, as a compromise, Google will set aside its objections to running such terms as proposed, despite their overbreadth. Further, Google's good faith attempt to resolve "all outstanding" search term issues, should not be misinterpreted as Google having waived properly-asserted privilege and relevance objections. In fact, this would make no sense given that Plaintiffs explicitly proposed responsiveness limitations memorialized in your March 1, 2021 letter.

On May 10, 2021, for the *first* time Plaintiffs claimed that Google agreed to produce documents subject to the full scope of these RFPs, as written, without any narrowing. In light of the foregoing history, we disagreed with your position but agreed to investigate and get back to you.[2]

To avoid any further mischaracterizations of Google's position or the parties' negotiating history on these issues, we set forth below the scope of Google's intended custodial document production (and the scope of related limitations that Plaintiffs inquired about previously).

## II. The Scope of Google's Custodial Production

We understand the discussion regarding the scope of Google's production of custodial documents, subject to search terms, to relate to RFP Nos. 3-6, 14-17, 21, 23, 25-27, 29-39, 42-44, 70, 74, 75, 80, 84-87, 91-93, 94, 96-98, 100-05, 111, 112, 122-25, 128-131, 136, 141, 142, 145, 146.

---

[2] On May 12, 2021, you sent an email asking when Google would get back to you regarding this issue and others. Google was still investigating the issue of scope, and while we stated that we would provide a letter regarding disputes related to P9, Google did not represent that it would provide a letter regarding the scope of Google's custodial productions by May 14, 2021. You then raised this issue on our meet and confer call on May 17, 2021, at which time Google stated that counsel was still looking into it and would send you a letter, but did not represent that we would send a letter that same day.

Of these, RFP Nos. 84-86, 92, 97, and 128-30 are the subject of P9 and we understand that Plaintiffs agree that the proper scope of these RFPs is in dispute and that Google has not agreed to produce documents subject to the full scope of these RFPs.[3]

For the avoidance of doubt, with respect to all RFPs, Google has consistently maintained its objections to the production of documents that are privileged or represent attorney work-product.

In addition to objections for privilege and work-product, with respect to the RFPs identified above regarding custodial productions, the scope of the production of documents is limited by the search terms and custodians that are agreed upon by the parties or ordered by the Court.

Likewise, Google is limiting the production of documents concerning Incognito mode to only those documents that relate to Incognito mode for Chrome, as proposed in your March 1, 2021 letter. This limitation applies to all RFPs related to Incognito mode, including at least RFP Nos. 3-5, 14, 16, 23, 32, 94, 96, and 145.  Apart from these limitations, Google intends to produce custodial documents responsive to the RFPs as written, with the following exceptions:

| RFP No. | Text of Request | Limitations to Scope of Production in Addition to Those Stated Above |
|---|---|---|
| 21 | Google's disclosures and policies relating to the data Google collects directly and indirectly from, about, or on consumers, particularly with regard to data collected in connection with consumers browsing in private browsing mode. | Limited to documents related to private browsing, Google Analytics, and Google Ad Manager. |
| 23 | Documents concerning the Incognito screen displayed when users initiate Incognito mode, including all versions of that screen and documents concerning all proposed or actual changes to that screen. | Limited to documents related to disclosures and statements that appear on the Incognito screen, including all versions of that screen and proposed or actual changes to that screen. |
| 31 | Google's written representations to and agreements with websites, publishers, and web applications that use Google services, including but not limited to what data Google collects and how Google complies with laws and regulations regarding the collection of data. | Limited to documents related to Google Analytics and Google Ad Manager. |
| 33 | Documents concerning the definition, meaning, understanding, or interpretation of any of these following | Limited to documents related to Google's Privacy Policies with |

---

[3] To the extent your inclusion of Google's May 5, 2021 email regarding P9 in your purported timeline is meant to suggest that Google agreed to produce documents responsive to the P9 RFPs without further limitation, that is not supported by facts.  Google's May 5 email stated that any agreement regarding P9 should resolve those disputes in their entirety.  Google stands by this statement.  And although no agreement has been reached yet, Google's May 17 letter sets out Google's most recent proposal, which includes search terms as well as limits to the scope of the relevant custodial productions.

| RFP No. | Text of Request | Limitations to Scope of Production in Addition to Those Stated Above |
|---|---|---|
| | terms and phrases: private, privacy, control, your data, your search and browsing history, browse privately, and incognito. | respect to Chrome, Google Ad Manager, and Google Analytics |
| 35 | Google's internal documents relating to consumers' control over and transparency about how consumers' data is intercepted, collected, stored, used, shared, and disposed. | Limited to documents related to private browsing, Google Ad Manager, and Google Analytics. |
| 93 | Documents concerning Google's 2020 release of "Consent Mode (Beta)." | Limited to documents related to Chrome |
| 111 | For each Google service and/or product that incorporates or utilizes the class members' data (e.g., Google AdWords, Google AdSense, Google Analytics):<br>a. Documents sufficient to determine each such service and/or product.<br>b. Document sufficient to determine how Google prices all such products and/or services.<br>c. Documents sufficient to determine how Google generates revenues, cost savings, and/or profit from such products and/or services.<br>d. Documents sufficient understand how Google uses the class members' data to increase the prices, revenues, and/or profits associated with each such product and/or service (e.g., premium pricing for targeted versus non-targeted advertising).<br>e. Documents sufficient to determine the incremental prices, revenues, market share, and/or profits generated by such products and/or services as a result of the class members' data.<br>f. Documents sufficient to determine the drivers of customer demand for such products and/or services, their success in the marketplace, and their perceived advantages versus any competitive products and/or services.<br>g. All documents concerning the types of customers (by industry, region, etc.) for such products and/or services and the value they place on the class members' data.<br>h. All planning documents (e.g., business plans, marketing plans, sales plans, capital expenditure plans) related to such products and/or services. | Limited to documents related to Google Analytics and Google Ad Manager |
| 112 | All documents pertaining to the value of user data during the Class Period, including:<br>a. Any Google estimates of the value of its user data either generally or to any products and/or services.<br>b. Any third-party estimates of the value of Google's or any other entities' user data either generally or to any products | Limited to documents related to user data from browsing, Google Ad Manager, or Google Analytics. |

| RFP No. | Text of Request | Limitations to Scope of Production in Addition to Those Stated Above |
|---|---|---|
| | and/or service.<br>c. Any estimate of the relationship, if any, between the value of incremental data on a given user and the amount of data already collected on that user (i.e., the diminishing marginal return on data), either generally or to any products and/or services. | |
| 122 | Documents concerning any usage analytics regarding any Chrome browser features, including any analysis and findings regarding consumers' use of Incognito mode. | Limited to documents related to Incognito on Chrome. |
| 123 | Documents concerning any usage analytics regarding any non-Chrome browser features, including any analysis and findings regarding consumers' use of private browsing mode on any non-Chrome browser. | Limited to documents related to private browsing. |
| 124 | Documents concerning any valuation of user data, including data Google collected while users were in private browsing mode. | Limited to documents related to private browsing. |
| 136 | Documents concerning any auto-delete functionality or controls concerning user data, including how such functionality impacts data Google collected while users were in private browsing mode. | Limited to browsing data in Chrome, or data collected through Google Ad Manager or Google Analytics. |

/s/ *Sara Jenkins*
Sara Jenkins