Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William Christopher Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
mram@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
**MORGAN & MORGAN**
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,

Plaintiffs,

vs.

GOOGLE LLC,

Defendant.

Case No.: 4:20-cv-03664-YGR-SVK

**PLAINTIFFS' REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE FOR WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT**

Referral: The Honorable Susan van Keulen

**REQUEST FOR AN ORDER TO SHOW CAUSE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

The undersigned respectfully asks the Honorable Susan van Keulen of the United States District Court for the Northern District of California to issue an order for Google, LLC ("Google") to show cause for why it should not be sanctioned for discovery misconduct. This Request is based on the attached Memorandum of Points and Authorities, the Declaration of Mark C. Mao and exhibits attached thereto, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider.

**ISSUE PRESENTED**

Whether the Court should order Google to show cause for why it should not be sanctioned for discovery misconduct for [REDACTED] from putative class members, from Plaintiffs, the Special Master, and the Court; and (2) violating the Court's November 12, 2021 Order.

**RELIEF REQUESTED**

Pursuant to this Request, and Plaintiffs' October 14, 2021 Rule 37(b) Motion, Plaintiffs respectfully ask the Court to set an evidentiary hearing and order Google to show cause for why it should not be sanctioned for discovery misconduct, including by:

[REDACTED]

[REDACTED]

3. Requiring Google to reimburse Plaintiffs for all fees that have been paid and will be paid to Special Master Brush.

Plaintiffs also ask that the Court order Google employees Chris Liao and Bert Leung to appear at the evidentiary hearing, as well as the Google declarant who swore to the Court that Google complied with the November 12 Order (Dkt. 338).

Dated: February 26, 2022

MORGAN AND MORGAN

By: /s/ *John A. Yanchunis*

John A. Yanchunis
jyanchunis@forthepeople.com
201 N. Franklin St., 7th Floor
Tampa, FL 33602
(813)223-5505

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........ 1

BACKGROUND ........ 4

I. Plaintiffs Uncover the Scope of Google's Misconduct ........ 4

A. Two Weeks Before the Close of Fact Discovery, Plaintiffs Learn that [REDACTED] ........ 4

B. Google Admits That It Removed this [REDACTED] ........ 5

II. 18 Months of Obstruction ........ 7

A. In Late 2020, Google Claims that It Has No Documents to Help Identify Class Members; [REDACTED] ........ 7

B. In 2021, Google Hides [REDACTED] from Plaintiffs and the Court ........ 8

C. Google Undermines the Special Master Process ........ 12

D. With the Court's Help, Plaintiffs Finally Discover the Truth ........ 14

ARGUMENT ........ 17

I. Legal Standard ........ 17

II. Google Violated the November 12 Order, and Abused the Discovery Process Throughout this Case ........ 17

III. Google Should Be Sanctioned ........ 19

A. Evidentiary Sanctions and Jury Instructions ........ 19

B. Reimbursement of Fees Paid to Special Master Brush ........ 22

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784 (N.D. Cal. May 4, 2012) ... 21

*Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) ... 21

*Dahl v. City of Huntington Beach*, 84 F.3d 363 (9th Cir. 1996) ... 17

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ... 17

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ... 22, 23

*Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001) ... 20

*Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118 (N.D. Cal. Aug. 29, 2011) ... 20, 21

*Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373 (N.D. Cal. 2012) ... 17, 19

*Hanni v. Am. Airlines, Inc.*, 2009 WL 1505286 (N.D. Cal. May 27, 2009) ... 21

*HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 1643786 (N.D. Cal. Apr. 2, 2020) ... 23

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ... 19

*Kannan v. Apple Inc.*, 2020 WL 9048723 (N.D. Cal. Sept. 21, 2020) ... 22

*Karnazes v. Cty. of San Mateo*, 2010 WL 2672003 (N.D. Cal. July 2, 2010) ... 22

*Lanier v. San Joaquin Valley Offs. Ass'n*, 2016 WL 4764669 (E.D. Cal. Sept. 12, 2016) ... 20

*Oracle USA, Inc. v. SAP AG*,
264 F.R.D. 541 (N.D. Cal. 2009) ........................................ 21

*Sali v. Corona Reg'l Med. Ctr.*,
884 F.3d 1218 (9th Cir. 2018) ........................................ 17

*Sanchez v. Rodriguez*,
298 F.R.D. 460 (C.D. Cal. 2014) ........................................ 17

*Sas v. Sawabeh Info. Servs.*,
2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) ........................................ 20

*Unigard Sec. Ins. Co. v. Lakewood Eng. Mfg. Corp.*,
982 F.2d 363 (9th Cir. 1992) ........................................ 17

*United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*,
617 F.2d 1365 (9th Cir. 1980) ........................................ 20

*Von Brimer v. Whirlpool Corp.*,
536 F.2d 838 (9th Cir. 1976) ........................................ 20

*Zurich Am. Ins. Co. of Ill. v. World Priv. Sec., Inc.*,
2020 WL 8610839 (C.D. Cal. Nov. 23, 2020) ........................................ 19

**Rules**

Fed. R. Civ. P. 37(a) ........................................ 17

Fed. R. Civ. P. 37(b) ........................................ 3, 12, 17

Fed. R. Civ. P. 37(b)(2) ........................................ 17, 23

Fed. R. Civ. P. 37(b)(2)(A) ........................................ 17, 22

Fed. R. Civ. P. 37(b)(2)(A)(i) ........................................ 19

Fed. R. Civ. P. 37(b)(2)(A)(ii) ........................................ 20

Fed. R. Civ. P. 37(b)(2)(C) ........................................ 22

## INTRODUCTION

On September 2, 2020, Google told the Court that "it is unclear how Plaintiffs could ascertain the members of the proposed class" (including people who used Chrome Incognito). Dkt. 59 at 8. Ever since, Google has concealed from Plaintiffs, the Court, and the Special Master that Google [REDACTED]. Google produced [REDACTED] of Bert Leung's documents on Friday, February 18, 2022—two weeks before the close of discovery and months into the Special Master process. Those documents' revelations are stunning:

As part of the Special Master process to provide "Plaintiffs the tools to identify class members using Google's data," the Court ordered Google to submit a sworn declaration that "to the best of its knowledge, Google has provided a complete list of data sources that contain information relevant to Plaintiffs' claims." Dkt. 331, Ex. 1 ¶ 1. On November 18, 2021, Google falsely certified that it had done so—when, in fact, it failed to [REDACTED] *Compare* Dkt. 338-1 (list of data sources disclosed by Google), *with* Ex. 3, GOOG-BRWN-00845423. And for a log Google did disclose, Google altered evidence by ***deleting*** [REDACTED] before producing it to the Special Master and Plaintiffs. As a result, Plaintiffs and the Special Master had ***no idea the*** [REDACTED] ***existed***.

This was the culmination of Google's concealment, not its inception. To throw Plaintiffs off the scent from the very start, Google failed to disclose Bert Leung and Mandy Liu in a [redacted] Ex. 4, GOOG-BRWN-00023909. Google again failed to disclose Mr. Leung or Ms. Liu in its March 29, 2021, response to Plaintiffs' Interrogatory asking Google to identify employees with knowledge about "Google's collection and use of data in connection with users' activity while in a private browsing mode." Exs. 5, 6. These omissions were inexcusable, given [redacted] *See* Ex. 7.

Without Mr. Leung's or Ms. Liu's documents, Plaintiffs were missing critically important information concerning Google's [redacted] Ex. 8, Liao Tr. 134:7-10. Google did not correct those false statements, either informally or through Mr. Liao's January 6, 2022, errata to his deposition transcript.

But Google not only deceived Plaintiffs—it deceived the Court and the Court's appointed Special Master. During the entire period that Google was concealing [redacted], Google made multiple misleading statements to the Court and the Special Master [redacted], its data production, and the supposed "burdens" it claims to have faced throughout the discovery process.

And Google almost got away with it. But for this Court's recent ruling on Plaintiffs' motion to compel documents from Mr. Leung, Google might have crossed the discovery finish line before

their misconduct caught up to them. That document production made just two weeks before the close of discovery revealed, for the first time, that [REDACTED]. These belatedly produced documents led to an avalanche of further discoveries in the past week, confirming the lengths to which Google went to conceal the [REDACTED] from Plaintiffs, the Special Master, and the Court.

Google's actions simply cannot be reconciled with its obligations to conduct discovery in good faith, tell the truth under oath, and comply with Court orders. Google's conduct cannot be chalked up to a mere discovery dispute. Without appropriate sanctions—ones with teeth—Google has not been, and will not be, deterred. Google's attitude appears to be that it has nothing to lose and everything to gain: Absent real sanctions, it can hide the ball and either (a) get away with it or (b) when caught, simply produce what it should have provided earlier. And monetary sanctions, while certainly warranted, do not suffice. Google generates hundreds of billions of dollars in revenue per year and monetary sanctions are simply immaterial to Google's bottom line. Moreover, discovery is coming to a close and Plaintiffs have been prejudiced, having taken numerous depositions and engaged in a many-months-long Special Master process, all while Google withheld the truth and plainly relevant data in violation of a Court order.

Plaintiffs respectfully ask the Court to reinstate Plaintiffs' October 14, 2021, Rule 37(b) Motion and order Google to show cause why it should not be sanctioned in connection with that motion and this one. Appropriate sanctions may include but are not limited to:

[REDACTED]

[REDACTED]

3. Requiring Google to reimburse Plaintiffs for all fees that have been paid and will be paid to Special Master Brush.

Plaintiffs also submit that an evidentiary hearing is warranted to hear testimony from (1) [redacted]

## BACKGROUND

### I. Plaintiffs Uncover the Scope of Google's Misconduct

#### A. Two Weeks Before the Close of Fact Discovery, Plaintiffs Learn that [redacted]

On September 2, ***2020***, Google told the Court that "it is unclear how Plaintiffs could ascertain the members of the proposed class" (i.e., people who used a private browsing mode, including Chrome Incognito). Dkt. 59 at 8. Since then, Plaintiffs have diligently sought discovery to refute Google's assertion.

Eighteen months later, in a February 18, ***2022*** production, following Plaintiffs' motion to compel documents from Bert Leung (see Dkt. 401), Plaintiffs for the first time learned that internal Google logs and data sources now contain [redacted]

[redacted]

Ex. 9, GOOG-BRWN-00845312 at -18. Prior to this production, Mr. Leung's supervisor, Chris Liao, testified that [redacted]

Documents from Google's February 18 production show that Ex. 10, GOOG-BRWN-00845569 at -69. for the first time just two weeks before the upcoming March 4 close of fact discovery.

Ex. 11, GOOG-BRWN-00845277. Notably, Google has consistently represented to Plaintiffs, the Special Master, and the Court that the absence of the X-Client Data Header cannot be used to detect Incognito use. *E.g.*, Dkt. 140 at 5, Dkt. 218 at 6.

While Google was repeatedly representing to this Court that private browsing users cannot be identified, Ex. 12, GOOG-CABR-05144884 at -933.

**B. Google Admits That It Removed This**

As discovery progressed, Google graduated from concealing evidence to altering evidence.

[redacted]

During a February 23, 2022, meet-and-confer supervised by Special Master Brush, [redacted]. Mao Decl. ¶ 26. [redacted] Ex. 20. Let us be clear: prior to producing this log to Plaintiffs, [redacted] Google poisoned the Special Master process from the start.

[redacted]—an absurd position. The Court's November 12 Order required that Google identify ***all*** relevant logs and produce ***all*** schema and fields, and Google and its counsel understood the purpose of this entire process. [redacted] To the extent Google decided it was necessary to cull the information for some reason (even though this would be contrary to the November 12 Order), surely Google realized that [redacted] should not have been among the withheld fields.

Furthermore, Plaintiffs still have barely any insight into what ***other*** logs contain the [redacted] that ***still*** have not been disclosed. On Friday, February 18, 2022, Google produced for the first time a [redacted] Ex. 3, GOOG-BRWN-00845423 at -24. [redacted] Dkt. 338-1. [redacted] Mao Decl. ¶ 26. [redacted]. *Id.* [redacted]



Mao Decl. ¶ 25.

*Id.*

Google's misconduct has undermined the Special Master process. Had the schema for the log with

## II. 18 Months of Obstruction

### A. In Late 2020, Google Claims that It Has No Documents to Help Identify Class Members;

The above lays out where Google's concealment ended. But it is also important to understand just how far back it began. Google's deception began on September 30, 2020, after Plaintiffs served RFP 10, seeking, "Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members." Ex. 13 at 13. Google refused to produce any documents, *Id.*

Yet three months earlier, in June 2020,

Ex. 1, GOOG-BRWN-00845639 at -40. *See* Ex. 14, GOOG-CABR-04324934 at -35 *see also* Dkt. 395 at 13-14, 16-17 . Ex. 1. Ex. 2. GOOG-BRWN-00845596.

Google did not provide any information about these efforts to Plaintiffs at that time.

**B. In 2021, Google Hides from Plaintiffs and the Court**

Plaintiffs persisted in seeking discovery for purposes of class identification. To identify document custodians, Plaintiffs asked for a list of employees with information about the case. Google provided that list on February 4, 2021, Ex. 4, GOOG-BRWN-00023909. Ex. 2, GOOG-BRWN-00845596.

During the same time period (and perhaps long before), . Ex. 7. , Google neglected to identify either Mr. Leung or Ms. Liu in a March 29, 2021 response to an Interrogatory asking Google to identify employees with knowledge about "Google's collection and use of data in connection with users' activity while in a private browsing mode." Exs. 5, 6.



Plaintiffs also sought to address deficiencies with Google's preservation efforts. On March 23, the parties filed a joint letter brief regarding Google's refusal to suspend its routine deletion periods for any logs. Dkt. 119. Google told the Court that Plaintiffs' demand would require Google to preserve any log in which private browsing data might have been stored, and on that basis characterized "Plaintiffs' preservation demand [a]s extraordinarily burdensome [and] not feasible." Dkt. 119 at 3. Ultimately, "[b]ased upon the facts currently before the Court" and "without prejudice to Plaintiffs' ability to raise a challenge based upon new evidence not currently before the Court," this Court granted Google a Protective Order. *Calhoun v. Google*, 5:20-cv-05146 (N.D. Cal.) at Dkt. 174 (adopted by reference in Dkt. 147-1 at 1). Plaintiffs briefed this preservation dispute, and this Court issued a ruling, without knowing

Ex. 15, GOOG-BRWN-00845477 at -77. Ex. 16, GOOG-BRWN-00845481, at -81. Ex. 15.

By contrast, Google in this case never proposed *Id.*

Google's obstruction likewise infected the parties' dispute over RFP 10, which sought "Documents sufficient to identify all alleged class members." In their April 23, 2021 motion to compel, Plaintiffs, as a compromise, proposed focusing on data from logs containing the "X-Client-Data Header" field, and, specifically, data where this "X-Client Data Header" is missing:

> [redacted] ***Class members may be ascertained by looking for entries without the X-Client Data header.***

Dkt. 140 at 4 (emphasis added). Plaintiffs thus proposed doing [redacted] *See* Ex. 11.

In opposition, Google told the Court that Plaintiffs' proposal was "unworkable" since "the absence of the header cannot be used to ascertain purported class members as it would improperly include all users browsing on a non-Chrome browser." Dkt. 140 at 5. And during the ensuing April 29 discovery hearing, counsel for Google doubled down on those assertions, going so far as to accuse Plaintiffs' counsel of "speculation":

- [W]e felt like there's quite a lot of speculation on behalf of [Plaintiffs' counsel] and we wanted to explain to you that this is actually not something that we just have or can quickly query, nor do we think their proposed path is one that will lead to that outcome. Apr. 29 Tr. at 20:1-6.
- [W]e do not have the information to identify the plaintiffs' private browsing sessions. I know [Plaintiffs' counsel] doesn't like that, but that is the reality. Apr. 29 Tr. at 24:1-13.

As with the preservation dispute, Google did not inform Plaintiffs (or the Court) [redacted]

The Court rejected Google's arguments, holding that Plaintiffs were entitled to test Google's say-so about the data through discovery:

> Well, but what the Plaintiffs are asking for is pieces of information from different places because they want to see if they can piece together, by combination of that information, class members. And that's why – I mean,

> ***it seems to me that they have a right to try to do that with whatever information you have*.**

Apr. 29 Tr. at 19:2-7 (emphasis added). The Court then ordered Google to produce all "authenticated" and "unauthenticated" data relating to the named Plaintiffs. Dkt 147-1 at 2. Ex. 17, GOOG-BRWN-00845437.[1]

In July 2021, Plaintiffs moved to compel responses to RFP 120, which sought "[d]ocuments sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client-Data-Header." Dkt. 218 at 3. Plaintiffs sought this information to *Id.* In opposition, Google complained that producing the information sought would be *Id.* at 9.

Once again, Google did not inform the Court or Plaintiffs that

[1] Part of the document is not visible because of how Google produced it. Plaintiffs used the metadata to complete this quote.

Had Google been forthcoming, the parties could have reached a compromise where [redacted] Because of Google's misrepresentations, Plaintiffs' motion was denied (after being referred to the Special Master). *See* Dkt. 331.

**C. Google Undermines the Special Master Process**

Google's misconduct culminated in its violation of the Court's orders governing the Special Master process. In October 2021, Plaintiffs filed a Rule 37(b) motion because Google was withholding data on the basis of its say-so about the data's relevance. *See* Dkt. 292 at 6-12 (summarizing the data that Google was refusing to produce). In their motion, Plaintiffs asked the Court to order Google to comply with the April 30 Order or, alternatively, prohibit Google from making arguments about any data it refused to produce. *Id.* at 15-19. Special Master Brush informed the Court of his plan to issue a Report and Recommendation regarding certain disputes, and the Court stayed further briefing on Plaintiffs' Rule 37(b) motion "pending resolution of the issues set forth in the forthcoming Report and Recommendation." Dkt. 297.

Special Master Brush's Report validated Plaintiffs' concerns. He found as "fact" that the named Plaintiffs' data has "not yet been fully produced." Dkt. 299 ¶ 53. And this Court, on *de novo* review, upheld his factual finding:

> [T]he Court finds that the Special Master's factual conclusions regarding the deficiencies in Google's production of information about searches conducted to date as well as production of Plaintiffs and putative class data . . . are well founded and adopts those findings. As previously noted by this Court, Google knows what data it has collected regarding Plaintiffs and putative class members and where the data may be found, therefore Google must produce the information and data as directed herein.

Dkt. 331 at 3.

To remedy the problem, Google was ordered to conduct an additional four rounds of iterative searches for the named Plaintiffs' data—in effect, Google got another chance to play by the rules. Plaintiffs would select from among data sources that Google had already identified and

then propose search strings, and Google would produce the data that hit on those strings. Dt. 331, Ex. 1. The Court also found that any burden concerns were Google's own fault:

> To the extent [this process] requires the significant commitment of time, effort, and resources across groups of engineers at Google on very short timelines, that burden . . . arises, at least in part, as a result of Google's reticence thus far to provide critical data source information in these actions.

*Id.* at 4-5.

To address Plaintiffs' concern about Google's failure to identify necessary logs, Google was also required to "provide a declaration, under penalty of perjury from Google, not counsel, that . . . [t]o the best of its knowledge, Google has provided a complete list of data sources that contain information relevant to Plaintiffs' claims." *Id.* Ex. 1 ¶ 1. A Google Discovery Manager provided that declaration on November 18, swearing that "To the best of my knowledge and informed understanding, Google has provided a complete list of sources that contain information about Plaintiffs relevant to Plaintiffs' claims." Dkt. 338. ¶ 3.

This statement, in light of Mr. Leung's recently produced documents, appears to be false. Documents Google produced on February 18, 2022 appear to demonstrate that [redacted]. Ex. 3, GOOG-BRWN-00845423. Moreover, even for the logs that Google *did* disclose, [redacted] Mao Decl. ¶ 26. [redacted] *Id.*; *see also* Ex. 3, GOOG-BRWN-00845423.

Google's obstruction has made a mockery of the whole Special Master process. In the Court's words, this process was intended to, among other things, "***provide the* Brown *. . . Plaintiffs the tools to identify class members using Google's data***." Dkt. 331 at 4 (emphasis added). Yet

Google is still withholding from Plaintiffs

**D. With the Court's Help, Plaintiffs Finally Discover the Truth**

On Thanksgiving Eve 2021 (long after Google's early October document production deadline), Google produced a document that finally set Plaintiffs on the path to uncovering Google's misconduct. Ex. 18, GOOG-CABR-05280756. Mao Decl. ¶ 28. Mao Decl. ¶ 29. Counsel for Google never responded to Plaintiffs' multiple requests. *Id.*

Plaintiffs then propounded an interrogatory asking Google Ex.

19 (emphasis added). Google did not answer that question, either. [redacted] Mao Decl. ¶ 30.

The Thanksgiving Eve production also clarified for Plaintiffs that Mr. Leung was an important witness for this case, so Plaintiffs asked Google to produce custodial documents from his files. Google objected, principally contending that Plaintiffs could not show "good cause" to add another custodian above the limit the Court had previously set. Dkt. 399 (joint letter brief). Plaintiffs countered by arguing that Google had never disclosed Mr. Leung as a potential custodian with relevant information and likewise delayed in producing documents about his role in the [redacted]. *Id.*

Meanwhile, on December 2, Chris Liao, Mr. Leung's immediate supervisor, testified that [redacted] Ex. 8, Liao Tr. 131:14-16. [redacted] *Id.* He went on to elaborate for minutes, never once mentioning [redacted] Ex. 9, GOOG-BRWN-00845312 at -18.

[redacted]



[redacted]

These statements were misleading, at best. [redacted]

Google might have gotten away with concealing critical evidence but for this Court's ruling on the Bert Leung document dispute. The Court agreed with Plaintiffs, ordering Google to provide hit counts for the search terms that Plaintiffs requested and to then meet-and-confer to resolve the dispute. Dkt. 401. It turns out that Plaintiffs' proposal hit on just [redacted] documents, and Google shortly thereafter made a production from Mr. Leung's custodial files. Mao Decl. ¶ 5. That February 18, 2022 production revealed to Plaintiffs, for the first time, [redacted] Ex. 9, GOOG-BRWN-00845312 at -18 [redacted] And days later, Plaintiffs learned, again for the first time, that [redacted].[2] In light of all of these revelations, Plaintiffs are seeking additional discovery from Google relating to [redacted]. *See* Dkt. 424 at P22.

But regardless of whether Plaintiffs obtain additional discovery, Google's persistent efforts over 18 months to obstruct discovery and conceal its implementation of an [redacted] should not be countenanced. Google must be held accountable for its misconduct.

---

[2] Google [redacted]

## ARGUMENT

### I. Legal Standard

Under Rule 37(b)(2)(A), when a party fails to comply with a discovery order, a court may impose "whatever sanctions are just . . . up to dismissal of part or all of the party's claims." *Sanchez v. Rodriguez*, 298 F.R.D. 460, 463 (C.D. Cal. 2014). Such remedies may include but are not limited to establishing facts in favor of the moving party, prohibiting the party in violation from supporting designated claims or introducing designated matters in evidence, imposing monetary sanctions in the form of reasonable expenses caused by the failure to obey, treating this failure as contempt and staying the proceedings until the order is obeyed. *See* Fed. R. Civ. P. 37(b)(2). In the context of Rule 37(b) sanctions, the court reads the term "order" in Rule 37(a) "broadly." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1222 (9th Cir. 2018). A "district court has great latitude in imposing sanctions for discovery abuse." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996).

In addition, "discovery misconduct may be punished under the court's 'inherent powers' to manage its affairs." *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 396 (N.D. Cal. 2012) (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng. Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992)); *see also Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (district courts have inherent power to levy sanctions for "bad faith or conduct tantamount to bad faith," including recklessness combined with "frivolousness, harassment, or an improper purpose.").

### II. Google Violated the November 12 Order, and Abused the Discovery Process Throughout this Case

Google violated the November 12 Order by (1) withholding the [REDACTED], and (2) representing to the Court that it had identified all relevant sources to Plaintiffs. The November 12 Order required Google to "provide a declaration, under penalty of perjury from Google, not counsel, that . . . [t]o the best of its knowledge, Google has provided a complete list of data sources that contain information relevant

to Plaintiffs' claims." *Id.* Ex. 1 ¶ 1. A Google Discovery Manager provided that declaration on November 18. Dkt. 338. ¶ 3.

In fact, [REDACTED]. There is no excuse for these plain-as-day violations of this Court's order, particularly when Google knows that the purpose of this process is to "***provide the* Brown *. . . Plaintiffs the tools to identify class members using Google's data*.*" Dkt. 331 at 4 (emphasis added).

Plaintiffs expect Google to argue that some of the withheld logs did not have to be produced because [REDACTED]. But the whole point of the Special Master process is to "provide the *Brown* . . . Plaintiffs the tools to identify class members using Google's data." Dkt. 331 at 4. [REDACTED]. Dkt. 411 at 2. [REDACTED] Dkt. 418-1 at 26. [REDACTED]. Mao Decl. ¶¶ 26. [REDACTED]

As a result of Google's violations, with just one week left before the close of fact discovery, Plaintiffs still lack a single piece of data associated with the [REDACTED] The Court and Special Master could not have envisioned this outcome.

But the misconduct here goes beyond violating one or two Court Orders. Google has made a mockery of the entire course of discovery. To recap:

- [redacted]
- Google briefed and prevailed in many discovery disputes, including over ESI [redacted]
- [redacted]. Ex. 8, Liao Tr. 134:7-10.

**III. Google Should Be Sanctioned**

To remedy the severe prejudice caused by Google's misconduct, Plaintiffs respectfully seek: (A) evidentiary sanctions and jury instructions related to Google's concealment of the [redacted]; and (B) reimbursement by Google for all fees paid by Plaintiffs' counsel to Special Master Brush.

**A. Evidentiary Sanctions and Jury Instructions**

If a party does "not obey[] a [d]iscovery [o]rder," Rule 37(b)(2)(A)(i) permits the court to "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action." *See also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695 (1982) (affirming sanction as "clearly appropriate" where petitioners engaged in continued delay in "obvious disregard of [court] orders").. Because Google failed to comply with the November 12 Order, the Court should "take[] as established for purposes of the action" that [redacted]. Fed. R. Civ. P. 37(b)(2)(A)(i).

"Court intervention to protect Plaintiffs' ability to prove the[ir] allegations is necessary" when, as here, "[t]he withheld evidence is uniquely within the possession of the Defendants" and "there was no way for Plaintiffs to test their theory" as a result of the "documents withheld." *Guifu*, 281 F.R.D. at 39; *see also Zurich Am. Ins. Co. of Ill. v. World Priv. Sec., Inc.*, 2020 WL 8610839,

at *5 (C.D. Cal. Nov. 23, 2020) ("As a result of [defendant's] shortcomings, the Court finds that evidentiary sanctions against it are warranted. Plaintiffs assert that there are certain factual matters at issue in [Plaintiff's] discovery that must be established for the purposes of this action. Accordingly, the Court finds that the following matters are established for the purposes of this action . . . ."). Such an adverse factual finding "merely serves as a mechanism for establishing facts that are being improperly hidden by the party resisting discovery." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (noting presumption that party resisting discovery "is doing so because the information sought is unfavorable to its interest.").

Google should likewise be precluded from presenting any arguments in this case concerning [REDACTED] *See* Fed. R. Civ. P. 37(b)(2)(A)(ii); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976). "Preclusionary orders ensure that a party will not be able to profit from its own failure to comply." *Sas v. Sawabeh Info. Servs.*, 2015 WL 12711646, at *9 (C.D. Cal. Feb. 6, 2015) (quoting *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980)). "[I]t is entirely reasonable to sanction [Google's] defiance of the [November 12] Order by precluding [it] from presenting evidence on [issues for which Google] ha[s] not provided timely and complete discovery." *Id.* "Discovery is first and foremost a way for one party to determine the evidence supporting another party's allegations, so it can properly investigate that evidence prior to trial." *Lanier v. San Joaquin Valley Offs. Ass'n*, 2016 WL 4764669, at *8 (E.D. Cal. Sept. 12, 2016). Google "has thwarted [Plaintiffs'] efforts to understand the basis of" Google's class identification arguments, so it is "appropriate, based on these failures, to preclude [Google] from introducing further facts or evidence in response to these issues." *Id.* Otherwise, Google will benefit from any evidentiary gaps that it has caused by refusing to comply with this Court's November 12 Order.

Evidentiary sanctions are particularly important for Plaintiffs' anticipated motion for class certification. In *Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118, at *3 (N.D. Cal.

Aug. 29, 2011), the court granted a preclusion remedy after the defendant refused to produce a corporate representative, in violation of a court order. The court agreed with Plaintiffs' concern that "the information withheld from Plaintiffs could very well bear on whether or not Plaintiffs are able to establish commonality of issues across the putative class." *Id.* "To remedy the prejudice suffered by Plaintiffs in their class certification motion" the Court prohibited the defendant from "utilizing declaration evidence . . . regarding its corporate structure or ownership in its opposition to class certification/collective action." *Id.* at *4; *see also Hanni v. Am. Airlines, Inc.*, 2009 WL 1505286, at *5 (N.D. Cal. May 27, 2009) (ordering that plaintiffs who failed to comply with discovery obligations "may not rely on any discovery provided after the close of class certification discovery in support of their motion for class certification or in opposition to Defendant's motion to deny class certification"); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 WL 4598490, at *13 (N.D. Ill. Aug. 29, 2013) (granting preclusion order where defendant "engaged in a pattern of stonewalling" production of databases it claimed contained evidence supporting its statutory defenses against liability).

Google's eighteen-month-long obstruction and misconduct warrants sanctions regardless of whether Google finally abides by the November 12 Order. Google has already jeopardized Plaintiffs' experts' ability to "conduct the required analysis within the time limits set [by the Court]." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 557 (N.D. Cal. 2009) (precluding party from presenting evidence concerning alleged lost profit damages for failing to timely produce the relevant data); *see also Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012) (preclusion warranted for belated production of relevant source code because "Apple's experts were left with no meaningful opportunity to comprehend this code, even as they face criticism from Samsung in deposition (and assuredly at trial) that their code analysis was deficient"); *Hanni*, 2009 WL 1505286, at *5 (prohibiting party from relying on evidence produced after the close of class certification-related discovery when moving for class certification).

Rule 37(b)(2)(A) also "authorizes a court to issue an adverse-inference jury instruction as a remedy when 'bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence.'" *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (quoting *Karnazes v. Cty. of San Mateo*, 2010 WL 2672003, at *2–3 (N.D. Cal. July 2, 2010) (awarding an adverse-inference jury instruction when plaintiff failed to facilitate the deposition of her treating physician))). "[T]he court does not need to find bad faith before it issues an adverse-inference instruction as a sanction." *First Fin. Sec., Inc.*, 2016 WL 5870218, at *6 (granting adverse inference jury instruction sanctions where "gross negligence [] resulted in a failure to turn over [] native-format data", the receipt of which would have provided "a valuable opportunity to verify the accuracy of the highly relevant facts"). [REDACTED] —surpasses gross negligence. As a remedy, Plaintiffs seek an instruction to the jury that [REDACTED]." Such an adverse inference instruction would limit the benefit that Google can extract from its misconduct. *See Kannan v. Apple Inc.*, 2020 WL 9048723, at *9 (N.D. Cal. Sept. 21, 2020) (ordering adverse jury instruction where party adopted a unilateral and limiting interpretation of discovery obligations, and either deleted or withheld responsive documents in sole possession he was ordered to produce).

**B. Reimbursement of Fees Paid to Special Master Brush**

The Federal Rules require one last sanction: Because Google violated a discovery order (three, actually), "the court *must* order [Google], the attorney[s] advising [it], or both to pay the reasonable expenses, including attorney's fees, caused by [its] failure" to comply. Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). The Court repeatedly set forth a detailed process pursuant to which Google would produce data relevant to Plaintiffs' efforts to identify class members and quantify interceptions. In its April 30 and September 16 Orders (Dkts. 147-1, 273), the Court ordered

Google to produce the named Plaintiffs' data in a three-step process overseen by Special Master Brush. Google was ordered to finish production by October 6, 2021, Dkt. 273 at 2, but because of Google's misconduct, the Court concluded on November 12 that Plaintiffs' data had "not yet been fully produced," Dkt. 299 ¶ 53 (Special Master's Report and Recommendation); Dkt. 331 at 3 (affirming finding). In its November 12 Order, the Court gave Google a second chance and restarted the data production process. Dkt. 331 Ex. 1. But here we are again. Only this time, as we have exhaustively explained, Google is *tampering with* evidence, not just concealing it. And that evidence goes to the core purpose of the proceedings before the Special Master: detection of private browsing.

Because Google has frustrated the purpose of the proceedings before the Special Master, Plaintiffs' counsel and the class should not be made to pay for it. Google can avoid these monetary sanctions only if it shows that its violations of the Court's Orders were "substantially justified." Fed. R. Civ. P. 37(b)(2). But there is no way to justify such severe misconduct. *See HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 1643786, at *3 (N.D. Cal. Apr. 2, 2020) (violation "was not substantially justified" where the circumstances "strongly indicate[d]" bad faith); *First Fin. Sec., Inc.*, 2016 WL 5870218, at *7 (same, even though the failure to produce native version of document as ordered by the court was "consistent with technological ignorance and . . . not necessarily the result of subjective bad faith"). Plaintiffs therefore ask the Court to order Google to reimburse Plaintiffs for all fees they have paid and will pay to Special Master Brush.

**CONCLUSION**

Plaintiffs request that the Court issue an Order to Show Cause for why it should not enter any or all of the aforementioned sanctions and remedies for Google's discovery misconduct:

Dated: February 26, 2022 MORGAN AND MORGAN

By */s/ John A. Yanchunis*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Rebitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)

rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

25

PLAINTIFFS' REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE FOR WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT
Case No. 4:20-cv-03664-YGR-SVK