Joint Discovery Chart
Redacted Version of
Document Sought to be
Sealed

BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel listed in
signature blocks below*

QUINN EMANUEL URQUHART & SULLIVAN,
LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel listed in
signature blocks below*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 5:20-cv-03664-YGR-SVK <br><br> JOINT SUBMISSION IN RESPONSE TO DKT. 416 RE: STATUS OF DISCOVERY DISPUTES <br><br> Referral: Hon. Susan van Keulen, USMJ |

February 25, 2022

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

      Re:     Joint Submission in Response to Dkt. 416 re: Status of Discovery Disputes
              *Brown v. Google LLC*, Case No. 5:20-cv-03664-YGR-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

      Pursuant to Your Honor's February 22, 2022 order (Dkt. 416), the *Brown* Plaintiffs and Google LLC ("Google") jointly submit this statement containing a table identifying the status of the remaining discovery disputes.  Plaintiffs identify the following priority disputes: P22, P24, P27.

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | **Disputes Identified by Plaintiffs** | |
| P22 2/24/22 | Google's Incognito Detection: The parties have a dispute about additional discovery tied to certain documents recently produced by Google. | <u>Plaintiffs' Position</u>: On Friday, February 18, following the Court's recent order on the Bert Leung dispute (Dkt. 401), Google produced approximately 270 documents from Mr. Leung's files. The new documents show that Mr. Leung and another Google employee (Mandy Liu) throughout 2020 and 2021 developed and actually implemented a "████████████" field in specific Google logs to identify Incognito browsing data. Until the February 18 production, Google had concealed the implementation of this field (and the relevant logs) from Plaintiffs, the Special Master, and this Court. <br><br>First, Google withheld from Plaintiffs (still unspecified) logs that contain this field. Second, for the only log with the field that Google purports to have identified to Special Master Brush, Google *altered* the log prior to producing it: Google *removed* any trace of the "████████████" field. As a result of Google's alteration of this evidence, Plaintiffs did not choose this log for Search 1, and Plaintiffs still lack any data for this field, with a week left in discovery. Finally, Mr. Leung's boss last December testified (wrongly) that there is no "signal [] for incognito mode browsing on Chrome." Liao Tr. 131:14-16. *See id.* 134:15-20 ("[I]t was determined that there was no reliable way to technically detect incognito in a definitive and reliable and accurate manner. And as a result, ***no*** | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | *further action was taken to build such a hypothetical signal*."). The February 18 document production proves that Mr. Leung's boss was either embarrassingly misinformed or lying. The tiny, tiny handful of documents alluding to the mere possibility of developing such a field (that were produced prior to the February 18, 2022 production) are completely meaningless in light of the aforementioned deception and discovery misconduct.<br><br>Plaintiffs will today file a motion seeking relief for this egregious discovery misconduct.<br><br>Plaintiffs also seek additional discovery concerning the "▮▮▮▮▮▮▮▮▮▮▮" field.<br><br>Plaintiffs have requested that Google produce custodial documents for Ms. Liu using the same terms Google ran on Mr. Leung's files plus a few additional terms and to also make Ms. Liu available for a two-hour deposition not counted again the 20-deposition limit. There is good cause for these requests. Google never disclosed Mr. Leung or Ms. Liu as persons with knowledge or potential custodians, despite the fact that Google's outside counsel have apparently been in direct communication with Mr. Leung since early 2021. And again, Google only last week produced documents showing that the | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | "███████████████████" field had been fully implemented into logs. Moreover, Google altered a schema containing the field that was produced to Plaintiffs, thus preventing Plaintiffs from knowing that Google had in fact implemented it. And again, Mr. Leung's boss testified (wrongly) that no such field was ever implemented. Finally, the documents produced last week shed additional light on Google's success in accurately detecting Incognito traffic, and Plaintiffs reasonably seek further discovery into that issue.<br><br>Plaintiffs are also concerned that Google is now trying to obstruct Plaintiffs from taking Mr. Leung's deposition. Plaintiffs were scheduled to take his deposition today (February 25), but Google, without providing any justification, told Plaintiffs after producing his documents that the deposition would now have to wait until March 4 (the close of discovery), during a week already crowded with other depositions.  Google below tells a story that never happened. The parties agreed in writing that the deposition would go forward on February 25 so long as Google produced his custodial documents by February 18. Google claims to have met that deadline but nevertheless unilaterally pushed the deposition without explanation.<br><br>Google's Position: Desperate to find cause for additional discovery into an issue Plaintiffs have been aware of for *months*, Plaintiffs go as far as to suggest that Google | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | altered the evidence in this action. That is, of course, absurd. Plaintiffs have no justification for additional discovery.<br><br>*First*, Plaintiffs claim that Google had concealed the "████████████" bit and relevant logs until the February 18 production. Wrong. Plaintiffs have been on notice of this field and the "████████████████ █████" project as early as *August 2021,* shortly after the project was completed. These are not "a tiny, tiny handful of documents," and the suggestion that Plaintiffs overlooked them is groundless. On December 31, Plaintiffs specifically requested that Google investigate several hyperlinks in GOOG-CABR-03668216 (technical design document for the project at issue), which was produced in September and referenced the "████████████████████" field multiple times. *See also, e.g.,* GOOG-CABR-00544408 at-12 produced in August 2021 ("████████████████████████████ ██████"); GOOG-CABR-03668991, produced in September 2021 ("In this data source, we are logging 6 fields into ████████████████████ █████"). Google also disclosed ████████████████, a log that contains the "████████████████" bit, as part of the Special Master proceeding. It is one of the 20 data sources Plaintiffs have selected for the second iterative search. And despite Plaintiffs' claims, no logs or evidence were altered. Plaintiffs' selective quote of Liao's testimony in response to questions about dedicated signals to the ████████████████ does not suggest otherwise. Mr. | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | Liao was not misinformed when he testified that "it was determined that there was no reliable way to technically detect incognito in a definitive and reliable and accurate manner." (Tr. 134:16-18.) Pursuant to the Special Master's order, Google produced the top ███████████ ██████████████████████ automated tool ████ ████ If any given field, including in this instance the "████████████████████████" field, is not one of ███████████████████████████. | |
| | | *Second*, Plaintiffs' eleventh hour request that Google add Mandy Liu as the 44th custodian and have her sit for a deposition not counted against the 20-deposition limit should also be denied as meritless. Plaintiffs have had extensive ██████ information about the "███████████████" field and Ms. Liu's involvement in the "██████████████████████" project in their possession for months. This includes multiple design documents authored by Ms. Liu and related comment threads, which were produced in August/September of last year (*i.e.*, almost *six months* before Plaintiffs are now claiming to have just learned of Ms. Liu's existence and involvement in the project). *See e.g.*, GOOG-CABR-00544408 (document titled "████████████████████████████████████████████" listing Ms. Liu as the author on the first page), GOOG-CABR-03668216 (same), GOOG-CABR-03669472 (email sent to Ms. Liu identifying "████████████████████"), and GOOG-CABR-03669574 (email sent by Ms. Liu identifying "██████████████"). Plaintiffs had every opportunity to identify Ms. Liu based on the produced documents for many months and should not be permitted to do so at this late stage of discovery. Adding | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | Ms. Liu would also be duplicative and unduly burdensome because Plaintiffs already have received custodial productions from and will be deposing Bert Leung, who is Ms. Liu's manager and supervised all of her efforts on this front, and Chris Liao, who is Mr. Leung's manager.<br><br>*Third*, there is no dispute requiring the court's intervention as to Mr. Leung's deposition date because Plaintiffs have served a notice for his deposition to proceed on March 4, 2022. In any event, Mr. Leung's deposition was never set on February 25. Google first proposed February 25 for Mr. Leung's deposition on January 11, but despite the Court's order requiring Plaintiffs to confirm this date within 48 hours, Plaintiffs did not do so. On February 21, Google informed Plaintiffs that Mr. Leung was no longer available on February 25 and offered March 4 instead. It is unreasonable to expect a witness to keep proffered dates open indefinitely. Plaintiffs cannot shift the blame to Google for their failure to confirm Mr. Leung's deposition date in due course. | |
| P23<br>2/24/22 | Google's Amended Disclosures: The parties have a dispute about how to handle Google's amended initial disclosures. | <u>Plaintiffs' Position</u>: On February 21, 2022, without any prior meet and confer efforts, Google served amended initial disclosures identifying two additional Google employees who are not document custodians: Steve Ganem and George Levitte. If Google plans to have those individuals submit declarations or testify in this case, then Google should produce their documents and make them available for depositions. Google should not be permitted to disclose and use these witnesses at this late stage.<br><br>Google's suggestion that Plaintiffs alter course at this late | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | stage and forgo other depositions in order to depose these witnesses is unreasonable. The Court ordered production of custodial documents by October 6, 2021, recognizing Plaintiffs would need to review documents, choose deponents, and prepare for those depositions. Plaintiffs did just that, with the remaining depositions focusing on 30(b)(6) testimony and other key deponents. Google's delay in disclosing these two witnesses—less than two weeks before the close of discovery—is equally unreasonable.<br><br>Google's Position: This is a Plaintiff-manufactured dispute inappropriate for Court intervention. Steve Ganem and George Levitte are hardly surprise witnesses. Plaintiffs have known about both for *over a year* but have failed to ask for their depositions or documents. They were both identified in Google's February 4, 2021 production of lists of relevant teams. Mr. Ganem was further highlighted on July 30, 2021 as a replacement for Plaintiffs' request to depose former Google employee Dan Stone. (Plaintiffs declined to notice Mr. Ganem's deposition.) On October 5, 2021, Mr. Ganem signed verifications to interrogatory responses to *Brown* plaintiffs' discovery requests. Finally, Mr. Ganem submitted a declaration in support of Google's opposition to class certification in the related *Calhoun* matter.<br><br>Mr. Levitte has been part of numerous productions and | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | privilege logs as far back as September 1, 2021. Mr. Levitte submitted a declaration in support of Google's opposition to class certification in the related *Calhoun* matter. This manufactured dispute provides yet another example of Plaintiffs' attempting to blame Google for their own apparent failure to exercise even minimal diligence in litigating this case (by, *e.g.*, actually reviewing the documents and discovery responses Google has produced).<br><br>In any event, Plaintiffs are free to notice these depositions now, and they should properly count towards the 20 deposition limit set by this Court. There is no good cause to require production of their custodial documents because Plaintiffs had every opportunity to include these employees in the 43 custodians they have requested to date and failed to do so. *See See Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *1 (N.D. Cal. Dec. 17, 2020) (good cause requires "not only a factual basis for believing that the custodian has relevant information and that discovery of the custodian's ESI is proportional to the needs of the case, but also a showing of why plaintiffs did not identify the custodian earlier."). | |
| P24<br>2/25/22 | Special Master Process and Deadlines: The parties have a dispute about the timeline and deadlines for data production. | Plaintiffs' Position: Plaintiffs have diligently engaged in the Special Master Process in good faith, working weekends and holidays without requesting a single extension and meeting every imposed deadline. Google, however, has repeatedly obstructed and delayed providing information and producing relevant data. The Court ordered Google to produce data in response to Plaintiffs' | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | first iterative search within 4 days, and Google took 45 days. The data Google produced spanned inconsistent time periods, without any overlap, and covered at most only one month and for some sources only 8 days (with Google refusing to search older stored data). These examples are not exhaustive and are prejudicing Plaintiffs. The Court previously adjusted the schedule due to Google's obstruction and delays (Dkts. 371 & 377), and Plaintiffs seek the Court's guidance, as it is clear that all four iterative searches will not be complete by March 4, through no fault of Plaintiffs.<br><br>Below, Google grossly misrepresents what has occurred. To move things forward, Plaintiffs submitted their Second Iterative Search even *before* Special Master Brush found the First Iterative Search was complete. And there was nothing improper about the Second Iterative Search. Special Master Brush reviewed the submission and ordered Google to complete the Second Iterative Search by 6:00pm ET on February 25, 2022. In its November 12 Order, the Court considered the amount of time, effort, and resources these searches might take, and found any burden is in proportion to the demands of this litigation and due to Google's "reticence" to "provide critical data source information." Dkt. 332. There is no undue burden here. That aside, Plaintiffs' Second Iterative Search contains the volume of sources and identifiers because Google failed to | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | make proper productions for the First Iterative Search.<br><br>Finally, as explained above in P22, Google has undermined the entire process by withholding from Plaintiffs any data with the "██████████" field. Google withheld some logs entirely that have this field, and Google *removed* this field from another log before producing it to Plaintiffs, and therefore Plaintiffs did not choose to include that log in the First Iterative Search. Google's concealment and alteration of evidence wasted months of everyone's time.<br><br><u>Google's Position</u>: Google has faithfully followed the expert guidance of Special Master Brush. Google substantially completed the searches and productions of data associated with over 900 identifiers across 18 different data sources ordered by the Special Master on January 20, and supplemented on January 31 the remaining three files that contain confidential third party data and required publisher consent. Google did not receive Plaintiffs' second iterative search requests until *February 22*. And instead of following the Special Master's guidance that the searches would follow a funnel (each subsequent search narrower than the one preceding), Plaintiffs requested that Google search a total of 848 (mostly new) identifiers across more than 20 different data sources. Google is engaging in best efforts to complete the search as soon as possible. However, these searches place an immense burden on Google given | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | the number of identifiers to be decrypted and data sources to be searched across, which requires extensive work by different subject matter engineers. Google is not to blame for the delay caused by Plaintiffs' failure to provide reasonably focused search requests in a timely manner.<br><br>As explained above in P22, Google did not conceal or alter any relevant log or field. As communicated to Plaintiffs multiple times, Google's automated tool ███████████████████████.<br><br>Pursuant to the Special Master's order, Google has provided these fields. If any given field, including in this instance ███████████████████ the "███████████████████" field, is not one of ████████<br><br>Plaintiffs also complain about the production of certain historic data (beyond the queryable window of time). That issue is firmly within the expertise of the Special Master, and is not ripe for this Court's review or ruling. In any event, as the Special Master recognizes, Google does not search these sources for individual users' data in the ordinary course of business, so it requires writing and testing scripts to search and process the data, which can be extremely burdensome. Google has made practical proposals to query historical data and diligently followed the Special Master's guidance to focus on the queryable window for the requested searches. *See* February 16 Special Master Hr. Tr. 21:23-22:18 ("If you put this stuff in offline storage versus reindexing them into searchable format, there are steps there. And we have to recognize the technical challenges with that. Going through the process | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | and stopping everybody to go standup historical data can't be a distraction at this time if we have current data that is enriched and live in current systems that we can be doing that long production. … We can certainly get back to the historical data. Let's look at what we're getting on an ongoing basis and make a determination."). <br><br> The prior discovery extensions have nothing to do with Google's conduct.  On the contrary, Plaintiffs' serial requests for extensions provide further evidence of Plaintiffs' lack of diligence in promptly reviewing documents and data produced by Google in this case. Judge Koh previously extended the fact discovery deadline in this case just prior to being elevated to the Ninth Circuit and found no delay or obstruction by Google.   Dkt. 377. Plaintiffs' request for yet another extension is baseless and should be denied. | |
| P25 <br> 2/25/22 | Google's Privilege Log and Production:  The parties have a dispute about various entries on Google's privilege log and redactions. | Plaintiffs' Position: Pursuant to the Court's instructions, Plaintiffs asked Google to re-review 267 documents from Google's July and August 2021 privilege logs and 268 documents from Google's October 2021 privilege logs. Google has produced 141 documents (approximately 25% of the documents it reviewed again), many of which are of great interest to Plaintiffs. Plaintiffs then requested and Google agreed to an additional 200 challenges. But this is not enough. In light of Google's over-assertion of privilege, Plaintiffs respectfully request permission to submit 15 documents for *in camera* review. <br><br> Google's Position: Google strongly disagrees that its decision to produce 141 documents in response to | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | Plaintiffs' 535 challenges indicates that it has applied "substantial over-assertions of privilege." Plaintiffs elected to challenge a number of duplicate or near-duplicate documents that Google decided to produce after re-review, and thus the documents that Plaintiffs challenged are not a representative sample of the documents listed on Google's privilege log. Nonetheless, the parties met and conferred on this dispute on February 24, 2022, and Google agreed to re-review an additional 200 documents.<br><br>Plaintiffs' request for *in camera* review of 15 documents should be denied. As this Court has noted, *in camera review* "is a last resort . . . [b]ecause as every litigator on this call knows, document production does take an element of good faith and trust." Sept. 30, 2021 Hearing Tr. 30:6-8. Plaintiffs have not even identified the 15 documents that they apparently plan to ask the Court to review, let alone "show[n] a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1950377, at *2 (N.D. Cal. May 1, 2019) (citation omitted). Google has worked with Plaintiffs in good faith to correct any inadvertent privilege designations by re-reviewing documents challenged by Plaintiffs within the framework ordered by this Court, and it will continue to do so. Plaintiffs' request for *in camera* review should be denied. | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| P26<br>2/25/22 | Priority RFPs:  The parties have a dispute regarding Google's production in response to the 20 Priority RFPs. | <u>Plaintiffs' Position</u>:  In October 2021, pursuant to this Court's Order (Dkt. 298), Plaintiffs identified 20 "Priority" RFPs. Google has since then dragged out the production of responsive documents, and Google still has not specified the extent to which it will produce responsive documents or finished producing documents responsive to these Priority RFPs. Just after the parties' February 24 meet and confer, Plaintiffs sent Google a draft Chart A containing Plaintiffs' compromise positions on these Priority RFPs. Google refused to respond or have that included with this submission. Plaintiffs ask that the Court order the parties to meet and confer regarding that chart and submit it no later than March 2, so the Court can then rule on any outstanding disputes regarding these Priority RFPs.<br><br><u>Google's Position</u>:  Plaintiffs sent a 10 page chart hours after the Court-ordered deadline for parties to serve their moving positions.  Worse, Plaintiffs have failed to identify *any* deficiencies in Google's production, instead putting the burden on Google to spoon feed Plaintiffs the information they should find in Google's productions. For its part, Google has diligently investigated Plaintiffs' priority RFPs and has produced many documents that are responsive to those RFPs.  To the extent any documents that Google has agreed to produce have not yet been produced, Google will produce them before the end of fact discovery. | |
| P27<br>2/25/22 | Dashboards Data:  The parties have a dispute regarding | <u>Plaintiffs' Position</u>: Plaintiffs have requested relevant data from three key Google "dashboards" – which provide easy | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | Google's production of data from certain Google dashboards. | access to data for Google employees – and now seek the Court's assistance in ordering that production. (1) Google has a ██████████████ dashboard that provides access to aggregate user metrics, including metrics tied to Incognito browsing. Google previously agreed to produce that Incognito dashboard data, but Google still has not done so. (2) In 2020 and 2021, Google employees Bert Leung and Mandy Liu designed and built a Google process to detect and monitor traffic from "█ ██████████████," including Chrome Incognito, and measure their "impact" to Google, with metrics reported on a Google dashboard available to Google employees. Google first produced documents identifying this dashboard on January 31, 2022, and Plaintiffs still seek relevant metrics. (3) Google has a dashboard designed to analyze the impact to Google of other browsers of blocking Google tracking cookies classified as first-party cookies even on non-Google websites. GOOG-CABR-05871700.<br><br>Google has not produced relevant information from these dashboards. First, Google below does not even purport to have produced data from the UMA dashboard. And the information produced for the third-party cookie dashboard is vastly incomplete, including because Google withheld information related to at least one log that was used for the Incognito detection analysis. Finally, Plaintiffs only recently requested information about the third dashboard based on a document produced this week, and Plaintiffs await Google's hopefully prompt response. | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | <u>Google's Position</u>: There is no dispute because there is nothing to compel. As stated in Google's verified interrogatory responses, Google has produced Incognito dashboard data at GOOG-CABR-04665128 - GOOG-CABR-04665129 and documents describing the metrics that are received from users in private browsing mode at GOOG-CABR-00000015 - GOOG-CABR-00000023, and has exchanged multiple letters and emails with Plaintiffs on this issue. Google believes the prior production and correspondence have adequately addressed Plaintiffs' request. As to (2), Google has produced the screenshots and relevant data from the requested dashboard at GOOG-CABR-05876554 - GOOG-CABR-05876569.<br><br>Plaintiffs raised the third dashboard with hours remaining from the Court-ordered filing deadline. Due to this delay, Google is unable to investigate or respond in a timely manner. | |
| P28<br>2/25/22 | Google's Written Discovery Responses:  The parties have a dispute regarding certain Google discovery responses. | <u>Joint Position</u>: As a result of a productive meet and confer on February 24, the parties have agreed to submit two joint letter briefs to the Court regarding Google's responses to certain RFAs and Interrogatories. The parties were already working on those before the Court issued its order requesting this joint submission. The parties will submit those two letter briefs no later than March 4. | |
| P29<br>2/25/22 | Deposition of Google Employee Borsay:  The parties have a | <u>Plaintiffs' Position</u>: In November 2021, the *Brown* and *Calhoun* plaintiffs requested a joint deposition of Google | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | dispute regarding Plaintiffs' request to depose Sabine Borsay. | employee Sabine Borsay. Ms. Borsay is Google's Product Manager responsible for Chrome Identity and Incognito, and she is one of the ten original custodians Google selected in January 2020. Ms. Borsay authored and has many key documents concerning Googles' collection of private browsing data. For example, she is the sole custodian of a Google presentation stating the "Sin Rastro Incognito story" should be that "Google doesn't collect personal information while in private mode" but then admitting that "[t]hose guarantees *aren't true in Chrome*" where "[u]sers currently believe that none of their data is collected and they are essential[ly] anonymous (ads not personalization, no data collected, no personal data collected, etc.)" and that "[w]hen using our products in Incognito, we require no consent." She has admitted in internal documents that Google is "blurring the boundary w.r.t. what incognito means" and expressed "concerns about the [Incognito] spy icon being misleading" where the "[Incognito] Name and spy [icon] indicate you are invisible." In early December 2021, Google's counsel stated that Ms. Borsay would not be available until mid-February because she was out on maternity leave. Plaintiffs sought to accommodate Google and Ms. Borsay, and Plaintiffs followed up later to schedule that deposition. In response, on February 22, Google's counsel asserted for the first time that "Ms. Borsay will not be able to sit for a deposition in the *Brown* and *Calhoun* actions." <br><br> Plaintiffs proposed a stipulation to avoid the need to brief this issue for the Court, offering to forego deposition in | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | exchange for (1) admission of Ms. Borsay's documents at trial without a sponsoring witness (2) agreement Ms. Borsay would not testify at trial or via declaration and (3) without Google otherwise seeking to have others testify about those documents. Alternatively, Plaintiffs proposed the deposition go forward but agreed to break up the deposition over several days to accommodate Ms. Borsay's childcare needs. Google's proposal to offer Mr. Mardini for another deposition does not work. Mr. Mardini is not a custodian for key documents Plaintiffs seek to cover with Ms. Borsay, and Mr. Mardini previously testified that he had little involvement in or knowledge about Google's 2021 revisions to Google's Incognito disclosures, because Ms. Borsay was leading that project. Mardini Tr. 453:4-7. Ms. Borsay's documents describe how Google was in 2021 seeking to revise Google's Incognito disclosures due to user misconceptions caused by the disclosures at issue in this lawsuit. Mr. Mardini testified that he did not even become involved with Incognito until late 2018 or 2019, and he is not an adequate substitute.<br><br>Plaintiffs submit that Google should either agree to Plaintiffs' reasonable stipulation (without qualifications) or make Ms. Borsay available for her deposition, with any necessary accommodations for Ms. Borsay.<br><br>Google's Position:   Plaintiffs' recitation misstates the parties' prior discussions, and ignores the context of Ms. Borsay's availability and employment status. Ms. Borsay | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | only just returned (less than a week ago) from maternity leave, and Google promptly updated Plaintiffs of her status. Ms. Borsay now has one young child and a newborn under her care. In light of her status as a new mother with infant-care obligations and other childcare issues (████████ ████████████), Ms. Borsay returned on a limited, part-time basis.<br><br>Ms. Borsay is also a German resident—and must be deposed in Germany—a fact of which Plaintiffs have been aware since October 6, 2021. Depositions of German residents may be taken on notice or by issuance of a commission by an American court under the Hague Convention. This is hardly surprising, as this process has been followed by the Parties and this Court since September 2021 for the deposition of other German residents (*i.e.*, Messrs. Schumann, Halavati, and Eisinger)—each of whom traveled from Germany to Switzerland to be deposed. *See e.g.*, Dkts. 301, 301-1, 448, 449. *See also Brown v. Google LLC*, No. 4:20-cv-03664-YGR-SVK, Dkts. 368, 369. Although those Google employees were willing to travel, Germany still has numerous COVID-related restrictions in place and the travel has been entirely voluntary. In any event, it is unreasonable and inappropriate to require a ████ mother to assume such disproportionate risks during a pandemic. Google informed Plaintiffs nearly *three months* ago on December 3, 2021 that Ms. Borsay would not be able to travel for the deposition, yet they did nothing. | |

| Dispute No. | Dispute | Status as of 2/25/22 Joint Submission | Status as of 2/28/22 Hearing |
|---|---|---|---|
| | | To allay Plaintiffs' late concerns, Google offered to produce Ms. Borsay's immediate supervisor (and current custodian) Abdelkarim Mardini, Group Product Manager, whom (i) Google also disclosed in its Initial Disclosures, (ii) whose documents Google has searched and produced, (iii) the *Calhoun* and *Brown* Plaintiffs jointly deposed on November 23-24, 2021, (iv) shares several thousand custodial documents with Ms. Borsay, and (v) is knowledgeable about the specific topics that Plaintiffs intend to probe through Ms. Borsay's deposition.<br><br>Plaintiffs should accept Google's reasonable compromise in light of these extenuating circumstances. However, as an alternative compromise, Google has informed Plaintiffs that it is willing to forego offering Ms. Borsay as an affirmative witness at trial, and enter a stipulation to address the authenticity of documents that are solely in her custodial files (and no other deponent). Google has yet to hear back from Plaintiffs regarding this alternative compromise. | |
| P30 2/25/22 | Discovery Concerning Google's Affirmative Defenses: The parties have a dispute about discovery concerning Google's assertion of certain affirmative defenses. | <u>Joint Position</u>: After a productive February 24 meet and confer, the parties have agreed that Google may serve a supplemental response to Interrogatory No. 40 on March 11 (in two weeks) provided that the Court permits the parties to then meet and confer and if necessary submit any dispute regarding the adequacy of the supplemental response by March 18. | |

Respectfully,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

SUSMAN GODFREY LLP

*/s/ Andrew H. Schapiro*

*/s/ Amanda Bonn*

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293 6858
Fax: (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Tel: (305) 539-8400
Fax: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736

Michael F. Ram (CA Bar No. 104805)

mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

<u>ATTESTATION OF CONCURRENCE</u>

I am the ECF user whose ID and password are being used to file this Joint Discovery Statement. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

| Dated:  February 25, 2022 | By | /s/ Amanda Bonn |
|---|---|---|
| | | Amanda Bonn |