# February 28, 2022 Hearing Transcript

# Redacted Version of Document Sought to be Sealed

```
 1                IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4
       BROWN, ET AL,                    )   CV-20-3664-YGR
 5                                      )
                         PLAINTIFF,     )   SAN JOSE, CALIFORNIA
 6                                      )
              VS.                       )   FEBRUARY 28, 2022
 7                                      )
       GOOGLE LLC,                      )   PAGES 1-84
 8                                      )
                         DEFENDANT.     )   *SEALED TRANSCRIPT*
 9                                      )
       _____ )
10
                      TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE SUSAN VAN KEULEN
                  UNITED STATES MAGISTRATE JUDGE
12
                      A P P E A R A N C E S
13

14        FOR THE PLAINTIFF:    BY:  AMANDA BONN
                                SUSMAN GODFREY L.L.P.
15                              1900 AVENUE OF THE STARS
                                SUITE 1400
16                              LOS ANGELES, CA 90067

17

18        FOR THE DEFENDANT:    BY:  ANDREW H. SCHAPIRO
                                QUINN EMANUEL URQUHART AND
19                              SULLIVAN, LLP
                                191 N. UPPER WACKER DRIVE
20                              SUITE 2700
                                CHICAGO, IL 60606
21

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:       SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1          APPEARANCES CONTINUED:

 2          FOR THE PLAINTIFF:        BY:  ALEXANDER PATRICK FRAWLEY
                                      SUSMAN GODFREY LLP
 3                                    1301 AVENUE OF THE AMERICAS
                                      32TH FL.
 4                                    NEW YORK, NY 10019

 5          FOR THE PLAINTIFF:        BY:  HSIAO C. MAO
                                      BOIES SCHILLER FLEXNER LLP
 6                                    44 MONTGOMERY STREET, 41ST FLOOR
                                      SAN FRANCISCO, CA 94104
 7

 8          FOR THE PLAINTIFF:        BY:  BEKO REBLITZ-RICHARDSON
                                           ERIKA BRITT NYBORG-BURCH
 9                                    BOIES SCHILLER FLEXNER LLP
                                      44 MONTGOMERY STREET
10                                    41ST FLOOR
                                      SAN FRANCISCO, CA 94104
11

12          FOR THE PLAINTIFF:        BY:  JAMES W LEE
                                           ROSSANA BAEZA
13                                    BOIES SCHILLER FLEXNER
                                      100 SE 2ND STREET, SUITE 2800
14                                    MIAMI, FL 33131

15

16          FOR THE PLAINTIFF:        BY:  JOHN A. YANCHUNIS
                                           RYAN MCGEE
17                                    MORGAN AND MORGAN
                                      COMPLEX LITIGATION GROUP
18                                    201 N. FRANKLIN STREET, 7TH FLOOR
                                      TAMPA, FL 33602
19

20          FOR THE DEFENDANT:        BY:  VIOLA TREBICKA
                                           STEPHEN ANDREW BROOME
21                                    QUINN EMANUEL URQUHART & SULLIVAN
                                      865 S. FIGUEROA STREET
22                                    10TH FLOOR
                                      LOS ANGELES, CA 90017
23

24

25
```

```
 1        APPEARANCES CONTINUED:

 2        FOR THE DEFENDANT:      BY:  SARA E. JENKINS
                                  QUINN EMANUEL URQUHART &
 3                                SULLIVAN, LLP
                                  555 TWIN DOLPHIN DR., 5TH FLOOR
 4                                REDWOOD SHORES, CA 94065

 5        FOR THE DEFENDANT:      BY:  JOSEF TEBOHO ANSORGE
                                       JOMAIRE CRAWFORD
 6                                QUINN EMANUEL
                                  51 MADISON AVENUE, 22ND FLOOR
 7                                NEW YORK, NY 10010

 8        FOR THE DEFENDANT:      BY:  CARL SPILLY
                                       TRACY GAO
 9                                QUINN EMANUEL URQUHART & SULLIVAN
                                  LLP
10                                1300 I STREET NW, SUITE 900
                                  WASHINGTON, DC 20005
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          SAN JOSE, CALIFORNIA                FEBRUARY 28, 2022

 2                     P R O C E E D I N G S

 3          (COURT CONVENED AT 1:37 P.M.)

 4              SEALED TRANSCRIPT OF PROCEEDINGS

 5          THE COURT:  GOOD AFTERNOON, EVERYONE.

 6          WELCOME TO THE DISCOVERY HEARING IN BOTH -- WE WILL HAVE A

 7     HEARING IN THE BROWN MATTER AND IN CALHOUN.  AND WE ARE GOING

 8     TO START WITH BROWN.  AND I WILL LET MS. FANTHORPE CALL THAT

 9     MATTER IN JUST A MOMENT.

10          I KNOW WE HAVE A LOT OF COUNSEL HERE, AND CASES LIKE THIS

11     TAKE A LOT OF SUPPORT, AND I THINK EVERYBODY ON THIS CALL

12     APPRECIATES THAT IT IS VERY MUCH A TEAM EFFORT, AND I CERTAINLY

13     APPRECIATE THAT.  AND BY ASKING YOU TO TURN OFF YOUR VIDEO, I

14     AM IN NO WAY DISCOUNTING YOUR CONTRIBUTION TO THE EFFORT IN

15     THIS CASE, IT IS JUST SIMPLY UNMANAGEABLE TO SEE EVERYBODY'S

16     FACE AT ONCE ON THE SCREEN, AND I DO LOOK FORWARD TO OUR RETURN

17     TO LIFE PROCEEDINGS, HOPEFULLY IN THE NOT TOO DISTANT FUTURE.

18     BUT FOR NOW, THIS IS THE FORMAT THAT WE HAVE.

19          SO IF YOU HAVE A SPEAKING ROLE ON THE ISSUES, AS WE WORK

20     THROUGH THEM, OR IF YOU ARE LEAD COUNSEL, FEEL LIKE YOU WANT TO

21     HAVE EYES ON, BE SURE THAT YOUR FACE IS ON THE SCREEN.  I LEAVE

22     THAT TO YOUR DISCRETION, AND ASK YOU TO -- YOU MAY CERTAINLY

23     HAVE YOUR VIDEO ON FOR THOSE PURPOSES.

24          SO WITH THAT, LET'S TRY TO MOVE AHEAD.  AND MS. FANTHORPE,

25     IF YOU WILL CALL THE FIRST CASE, PLEASE, AND GET OUR
```

1    APPEARANCES.

2              THE CLERK:  YES.

3         CALLING CASE 20-CV-3664.  THIS IS A SEALED PROCEEDING.

4    BROWN, ET AL VERSUS GOOGLE, LLC, ET AL.

5         COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD

6    BEGINNING WITH PLAINTIFF.

7              MS. BONN:  GOOD MORNING, YOUR HONOR.

8         AMANDA BONN WITH SUSMAN GODFREY.  AND TO TRY TO SAVE TIME,

9    I'M GOING TO GIVE APPEARANCES FOR MY COLLEAGUES AS WELL.

10        I'M JOINED BY ALEX FRAWLEY FROM SUSMAN GODFREY, BEKO

11   REBLITZ-RICHARDSON FROM BOIES SCHILLER, MARK MAO FROM BOIES,

12   JAMES LEE FROM BOIES, ERIKA NYBORG-BURCH FROM BOIES, ROSSANA

13   BAEZA FROM BOIES.

14        AND FINALLY WE ARE JOINED BY JOHN YANCHUNIS AND RYAN MCGEE

15   FROM MORGAN & MORGAN.

16              THE COURT:  THANK YOU, MS. BONN.  WELCOME ALL.

17        AND FOR GOOGLE TODAY, PLEASE.

18              MR. SCHAPIRO:  GOOD AFTERNOON, YOUR HONOR.

19        I'M ANDREW SCHAPIRO FROM QUINN EMANUEL FOR GOOGLE.  AND

20   WITH ME TODAY, I HAVE MY COLLEAGUES VIOLA TREBICKA -- I WILL

21   ASK PEOPLE TO TURN ON THEIR CAMERAS AS I SAY THEIR NAMES, OR

22   BEFORE.  SO VIOLA TREBICKA, JOMAIRE CRAWFORD, STEPHEN BROOME,

23   SARA JENKINS, JOSEF ANSORGE.

24        AND YOUR HONOR, OUR HARD WORKING ASSOCIATE, TRACY GAO, WAS

25   GOING TO BE HANDLING ONE OF THE ISSUES TODAY.  I THINK WE HAVE

1          NOT YET GOTTEN HER APPEARANCE ON FILE, BUT I WOULD ASK

2          PERMISSION TO LET HER ARGUE.  WE ARE IN THE PROCESS OF FILING

3          THE APPEARANCE, BUT IF YOU WOULD RATHER SHE NOT, WE WILL HAVE

4          SOMEONE ELSE COVER IT.

5                   THE COURT:  NO, THAT WILL BE FINE.  WELCOME, MS. GAO.

6                   MS. GAO:  THANK YOU, YOUR HONOR.

7                   THE COURT:  OKAY.

8                   MR. SCHAPIRO:  OH, YOUR HONOR, I APOLOGIZE, I FORGOT

9          CARL SPILLY IS ALSO HERE, HE WAS ON THE SECOND PAGE OF MY

10         SCREEN, ALSO FROM QUINN EMANUEL FOR GOOGLE.

11                  THE COURT:  EXCELLENT.  ALL RIGHT.  THANK YOU.

12         THANK YOU ALL.

13         WE ALSO ARE JOINED TODAY BY SPECIAL MASTER DOUGLAS BRUSH.

14  AND MR. BRUSH, IF YOU WOULD KEEP YOUR VIDEO ON, PLEASE.  AND AS

15  WELL AS MR. SCHMIDT, WHO WORKS WITH MR. BRUSH AND SUPPORTS HIM

16  IN THE SPECIAL MASTER DUTIES.

17         OKAY.  WE WILL -- LET'S START WITH BROWN.  I RECEIVED THE

18  CHART LAST WEEK, AND IT APPEARS TO ME THAT THERE WERE A TOTAL

19  OF NINE DISPUTES SUBMITTED, THREE OF WHICH WERE HIGHLIGHTED FOR

20  TODAY'S PROCEEDINGS, THAT'S P22, P24, AND P27.  AND THOSE ARE

21  THE ISSUES THAT I HAVE HAD AN OPPORTUNITY TO REVIEW AND PREPARE

22  FOR.  I HAVE NOT YET LOOKED AT ANY OF THE REMAINING DISPUTES,

23  AND WE WILL FIGURE OUT WHAT TO DO WITH THAT IN DUE COURSE.

24         I ALSO DID SEE THAT OVER THE WEEKEND, THE BROWN PLAINTIFFS

25  FILED A MOTION FOR DISCOVERY SANCTIONS RELATING TO THE ISSUE ON

1      THE ███████████████████████ AND I AM CONSULTING WITH

2      JUDGE GONZALEZ ROGERS ON THAT.  I APPRECIATE YOU FILED IT

3      BEFORE ME AND I CERTAINLY EXPECT THEY WILL HANDLE THAT, AND I

4      WILL SET A BRIEFING SCHEDULE AND A HEARING DATE AGAIN IN DUE

5      COURSE.

6           BUT I DON'T WANT TO, AND I'M NOT ADDRESSING THOSE ISSUES

7      HERE TODAY.  I HAVE PLAINTIFF'S MOVING PAPERS, I HAVEN'T HEARD

8      FROM GOOGLE YET, SO I JUST WANT YOU TO KNOW I SEE IT, BUT THAT

9      WILL NOT BE THE SUBJECT OF TODAY'S DISCUSSIONS.

10          STARTING THEN AT P22, WHICH DOES RELATE TO DISCOVERY

11     AROUND THE FIELD ████████████████████ AND I UNDERSTAND

12     THAT ASIDE FROM THE PENDING MOTION, PLAINTIFFS ARE ASKING

13     FOR -- THEY RAISED A CONCERN ABOUT MR. LEUNG'S DEPOSITION, THE

14     TIMING OF MR. LEUNG'S DEPOSITION, AND THEY ASK FOR DEPOSITION

15     AND CUSTODIAL DOCUMENTS OF MS. LIU.  AND I THINK THAT'S WHAT

16     THE ISSUE BOILS DOWN TO.

17          MS. BONN, I WILL START WITH YOU.  AND TELL ME WHO HAS THE

18     MIC ON THIS ONE, PLEASE.

19               MS. BONN:  YES, YOUR HONOR.

20          I THINK I HAVE THE MIC ON THIS, ALTHOUGH TWO OF MY

21      COLLEAGUES, MARK MAO AND RYAN MCGEE, WHO HAVE BEEN A LITTLE BIT

22      MORE INVOLVED IN THE SPECIAL MASTER PROCESS, ARE HERE IF NEEDED

23      TO ANSWER TECHNICAL QUESTIONS.

24          I THINK THAT'S RIGHT.  AND TO BE CLEAR, I THINK YOU ARE

25      RIGHT, IT OVERLAPS WITH THE MOTION WE FILED.  BUT THE BOTTOM

1    LINE IS THAT ON FEBRUARY 18TH, WE RECEIVED A PRODUCTION OF

2    MR. LEUNG'S CUSTODIAL DOCUMENTS PURSUANT TO COURT ORDER.  AND

3    THOSE DOCUMENTS INDICATED FOR THE FIRST TIME, THAT GOOGLE HAD

4    ACTUALLY IMPLEMENTED WHAT THEY SOMETIMES IN THEIR DOCUMENTS

5    CALL A ███████████████████, SOMETIMES A ███████

6    ████████, SOMETIMES ███████████, BUT IT HAS ACTUALLY BEEN

7    BUILT OUT AND IMPLEMENTED IN CERTAIN LOGS.

8         AND THAT RAISED A HOST OF QUESTIONS ON OUR END.  THE

9    THINGS WE'VE ASKED FOR IN THIS BRIEF, NUMBER ONE, WHAT BECAME

10   CLEAR IS THAT MR. LEUNG WAS WORKING WITH ANOTHER GOOGLE

11   ENGINEER NAMED MANDY LIU.  THEY WERE WORKING HAND IN HAND ON

12   THE IMPLEMENTATION ON THIS ███████████ FIELD.  THEY WERE

13   WORKING HAND IN HAND WITH IMPLEMENTING CHANGES TO GOOGLE'S

14   LOGIN PRACTICES AND HOW TO THEN BUILD OUT AND SUPPORT A

15   DASHBOARD, AMONG OTHER THINGS, TO MONITOR AND ANALYZE INCOGNITO

16   TRAFFIC.

17        AND BECAUSE WE DIDN'T HAVE BURT LEUNG'S DOCUMENTS OR

18   MANDY LIU'S, WE WERE MISSING A CRITICAL PIECE OF WHAT WAS

19   REALLY GOING ON.  WE DIDN'T GET THAT INSIGHT UNTIL WE SAW

20   BURT LEUNG DOCUMENTS.  BUT WE ARE ALSO CONCERNED THAT BECAUSE

21   MANDY LIU WAS WORKING ON THIS AS WELL, SHE MAY HAVE DOCUMENTS

22   THAT SHED LIGHT ON THIS ISSUE THAT WE DON'T HAVE.

23        WE MADE WHAT WE THOUGHT WAS A VERY TARGETED PROPOSAL TO

24   RUN THE SAME SEARCH TERMS THEY RAN ON MR. LEUNG'S DOCUMENTS.  I

25   THINK BASICALLY IT'S INCOGNITOCHROMEGUARD, ONE WORD, AND CHROME

1    GUARD, TWO WORDS, OVER 2019 TO 2021.  IN MR. LEUNG'S CASE, IT

2    RESULTED IN FEWER THAN A THOUSAND HITS.

3              THE COURT:  SO MS. BONN, IN THE CHART IN THE PAPERS

4    THAT YOU ASKED FOR, THE SEARCH TERMS, SAME AS FOR MR. LEUNG, AS

5    WELL AS SOME OTHERS, OR A FEW OTHERS, WORDS TO THAT EFFECT.

6    ARE WE PAST THAT, IF YOU GET A SEARCH WITH THE LEUNG DOCUMENTS,

7    IS THAT --

8              MS. BONN:  BOTTOM LINE, IF WE GET THAT, I THINK THAT

9    THAT WILL GET US WHAT WE NEED.  THE FEW OTHERS WE ADDED RELATE

10   TO THE DASHBOARD THEY BUILT OUT.

11        SO IF THEY HIT ON SOME CRAZY NUMBER OF DOCUMENTS, WE COULD

12   FOREGO IT.  I THINK LAST TIME WHEN THE COURT ISSUED AN ORDER ON

13   MR. LEUNG'S DOCUMENTS, GOOGLE GAVE US THE HIT COUNTS.  AND

14   BECAUSE IT WAS SO LOW, THEY AGREED TO PRODUCE IT.  SO I'M

15   HOPING THEY JUST TELL US THE HIT COUNTS.  IF THE OTHER TERMS

16   HIT ON SOME CRAZY NUMBER, WE CAN LIVE WITH JUST THE THREE LEUNG

17   TERMS.

18        AND THEN I THINK WE WOULD LIKE A TWO-HOUR DEPOSITION WITH

19   HER, NOT TO COUNT AGAINST THE 20 THAT WERE COURT ORDERED,

20   BECAUSE HAD WE KNOWN ABOUT HER AT THE OUTSET, WE COULD HAVE

21   ADJUSTED OUR SELECTIONS OF WHO WE WANT TO DEPOSE, BUT NOW WE

22   ARE IN A POSITION WHERE WE CAN'T GO BACK IN TIME.

23              THE COURT:  HAVE YOU USED ALL 20?

24              MS. BONN:  NO.  AND MY COLLEAGUES CAN SHED LIGHT ON

25   THIS IF I'M WRONG, BUT I BELIEVE WE'VE USED SOMETHING LIKE 12,

1    THERE ARE OTHERS HAPPENING THIS WEEK, AND IF WE GET MR. PICHAI

2    AND MS. TWOHILL'S DEPOSITIONS APPROVED AND WE HAVE OUR THREE

3    30(B)(6)'S, I THINK WE WOULD BE AT OR VERY NEAR THE LIMIT.

4         SO, YOU KNOW, WE DON'T WANT TO TAKE A DEPOSITION AND THEN

5    HEAR FROM GOOGLE, AH HA, YOU HAVE NOW HIT 20, YOU CAN'T TAKE

6    PICHAI, EVEN THOUGH WE HAVEN'T GOTTEN A RULING ON THAT YET.

7         SO THAT'S THE POSITION WE ARE IN.

8              THE COURT:  OKAY.

9         YES, MR. MAO?

10             MR. MAO:  SORRY, IF YOU DON'T MIND.

11        IF YOU HAVE QUESTIONS ON THE TOTAL NUMBER OF DEPOSITIONS,

12   WE DO HAVE THAT AS A SEPARATE DISCOVERY DISPUTE.  BUT I THINK

13   THE QUICKEST SUMMARY IS PROBABLY GOING TO BE PROVIDED BY MY

14   COLLEAGUE, BEKO REBLITZ-RICHARDSON.  BUT AGAIN, YOUR COURT,

15   YOUR SCHEDULE.

16             THE COURT:  OKAY.  WELL, I APPRECIATE YOU'VE ASKED IF

17   I WERE TO GRANT YOU A DEPO, THAT IT BE OUTSIDE OF THE 20, AND

18   THAT'S WHAT I WANTED TO KNOW WAS, YOU KNOW, ARE YOU AT THE

19   LIMIT, AND IT SOUNDS LIKE YOU ARE AT OR CLOSE, DEPENDING ON

20   SOME OTHER DISPUTE WHICH WE WON'T GET INTO TODAY, BECAUSE I

21   HAVEN'T LOOKED AT THE SUBMISSIONS ON THAT.

22        OKAY.  ALL RIGHT.  I THINK I UNDERSTAND.

23        MR. SCHAPIRO, FROM GOOGLE'S SIDE, AGAIN WITHOUT UNPACKING

24   ALL OF THE ██████████████████ ISSUES, A TWO-HOUR DEPO

25   WITH A LIMITED TIME AND LIMITED IN TERMS SEARCH, IN LIGHT OF

```
1    THIS, AND I APPRECIATE IT'S DISPUTED WHEN THE TERM CAME TO

2    LIGHT, BUT IN LIGHT OF THE LEUNG PRODUCTION, I WOULD ALSO LIKE

3    TO KNOW WHAT IS UP WITH MR. LEUNG AND GETTING HIS DEPOSITION

4    SCHEDULED.  HE'S AT AN IMPORTANT PART IN THIS CASE, AND I THINK

5    IT'S UNDERSTANDABLY FRUSTRATING THAT HE'S BEEN PUSHED TO

6    FRIDAY.  SO IS THERE A REALLY GOOD REASON WHY HE CAN'T GO

7    SOONER?

8              MR. SCHAPIRO:  YEAH, SURE.

9              THE COURT:  WHY DON'T WE START THERE.

10             MR. SCHAPIRO:  OF COURSE.  AND I WILL START WITH THE

11   LAST ONE.

12        I CAN REPRESENT AS AN OFFICER OF THE COURT THAT

13   MR. LEUNG'S DEPOSITION DATE WAS NOT CHANGED BASED ON ANYTHING

14   HAVING TO DO WITH THE INQUIRIES ABOUT ███████████

15        AND AS WE EXPLAINED IN OUR -- I WILL TELL YOU WHAT IT'S

16   ABOUT IN A MOMENT.  BUT AS INDICATED IN OUR CHART, WE FIRST

17   PROPOSED FEBRUARY 25TH FOR MR. LEUNG BACK ON JANUARY 11TH.  AND

18   THIS COURT HAD ORDERED PLAINTIFFS TO CONFIRM DEPOSITION DATES

19   WITHIN 48 HOURS, WHICH IS A RULE THAT HAS BEEN HONORED IN THE

20   BREACH, YOUR HONOR, IT'S REALLY BEEN AN EXCEPTION TO THE RULE,

21   THINGS HAVE NOT BEEN GOING THAT WAY, BUT IT HAS RARELY BECOME

22   AN ISSUE.

23        THEY DIDN'T DO SO, AND ON FEBRUARY 21ST WE TOLD THEM THAT

24   HE IS NO LONGER AVAILABLE ON THAT DATE.  WE OFFERED A DATE

25   STILL WITHIN THE DISCOVERY PERIOD, WHICH IS MARCH 4TH.  THE
```

```
 1    REASON FOR IT, AND IT IS SORT OF BUSINESS REASON, IS THAT
 2    THERE'S WHAT'S CALLED ███████████████████████████
 3    ███████ -- EVERYTHING IS SEALED HERE, CORRECT?
 4              THE COURT:  YES, SIR.
 5              MR. SCHAPIRO: ████████████████████████████
 6    ████████████████████████████████████████████████████████
 7    █████████████████████████████████  AND SO THAT WAS -- THAT
 8    IS THE REASON THAT FEBRUARY 25TH BECAME UNAVAILABLE.  AND SO
 9    HE'S AVAILABLE DURING --
10              THE COURT:  WHEN DID THIS ██████████ GO INTO EFFECT,
11    MR. SCHAPIRO.
12              MR. SCHAPIRO:  MY UNDERSTANDING -- I LEARNED ABOUT IT
13    A DAY OR TWO BEFORE -- THE DAY BEFORE WE TOLD THE PLAINTIFFS
14    THAT WE COULD NO LONGER DO FEBRUARY 25TH.
15         SO -- AND I WOULD ALSO ARGUE THAT EVEN IF THERE WEREN'T A
16    BUSINESS EMERGENCY THAT MADE THE 25TH A DIFFICULT DATE, WE ARE
17    ENTITLED TO PUT UP WITNESSES ON DATES THAT ARE CONVENIENT TO
18    THE WITNESSES DURING THE DISCOVERY PERIOD.
19         IT WOULD BE DIFFERENT IF WE CAME BACK AND SAID,
20    YOUR HONOR, WE NEED MARCH 14TH, OR SOMETHING LIKE THAT.
21         SO THAT'S THE EXPLANATION.  THERE'S NOTHING NEFARIOUS,
22    CONTRARY TO THE -- ARISING IN THE SPOLIATION MOTION, HAS
23    NOTHING TO DO WITH ██████████████.
24         I WANT TO ADDRESS, IF I MAY, THE REQUEST FOR TIME WITH
25    MS. LIU, BECAUSE YOU SAID A MOMENT AGO, YOUR HONOR, YOU KNOW,
```

1       THAT IT'S DISPUTED WHEN SHE OR THEY LEARNED ABOUT THIS.  BUT I

2       DON'T THINK IT CAN BE REASONABLY DISPUTED.  AND WE'VE

3       IDENTIFIED THE DOCUMENTS IN OUR CHART.  THE PLAINTIFFS HAVE HAD

4       INFORMATION ABOUT NOT ONLY THIS FIELD, BUT MS. LIU'S

5       INVOLVEMENT IN THE ██████████████████████████ PROJECT

6       FOR MONTHS, INCLUDING DESIGN DOCUMENTS THAT WERE OFFERED BY HER

7       THAT WERE PRODUCED IN AUGUST AND SEPTEMBER OF LAST YEAR.

8            SO IF THEY WANT TO TAKE HER DEPOSITION, THAT'S OKAY, BUT

9       WE ARE TRYING TO BRING THIS PROCESS TO AN END.  EVERY

10      DEPOSITION IS A LOT OF WORK FOR US AND FOR THE CLIENT, AND SO

11      IT SHOULD COUNT WITHIN THEIR LIMITS.

12           THEY CAN CHOOSE WHETHER IT'S IMPORTANT, BUT THERE'S BEEN

13      NO LAST MINUTE DEVELOPMENT, AT LEAST DIFFERENT FROM THERE IS IN

14      ANY TYPICAL CASE WHERE THERE ARE A LOT OF DOCUMENTS.  AND AS

15      THE CASE GOES ON, PEOPLE MIGHT NOTICE SOMETHING THAT THEY

16      DIDN'T NOTICE BEFORE THAT WOULD JUSTIFY BREAKING THE LIMITS

17      HERE THAT YOU THOUGHTFULLY SET ON THE NUMBER OF DEPOSITIONS.

18           THE FINAL THING THAT MAY GET -- I GUESS I DON'T NEED TO

19      ADDRESS IT BECAUSE YOUR HONOR DOESN'T NEED TO HEAR IT, IS SOME

20      OF THE SUBSTANCE ABOUT THIS, BUT I GATHER THAT WE WILL HAVE A

21      CHANCE TO TALK ABOUT THAT IN THE BRIEFING.  LET ME SAY FOR THE

22      RECORD, WE VIGOROUSLY DISPUTE THE ACCOUNT THAT IS PAINTED IN

23      THE SPOLIATION BRIEF THAT HAS BEEN SUBMITTED BY THE PLAINTIFFS.

24           I THINK ONE POSSIBILITY, I KNOW YOUR HONOR DID THIS IN

25      OCTOBER WHEN THE PLAINTIFFS, IN OUR VIEW, PREMATURELY CAME IN

1    FOR SEEKING SANCTIONS, YOUR HONOR STAYED IT INDEFINITELY.  WE

2    DO HAVE THE DEPOSITION OF MR. LEUNG COMING UP ON FRIDAY, THAT

3    THEY WILL BE ABLE TO ASK A LOT OF QUESTIONS ABOUT THIS, AND I

4    THINK THEY WILL BE DISABUSED OF SOME OF THE MORE SINISTER

5    READINGS THAT WE SEE IN A SPOLIATION BRIEF.

6         SO ONE OPTION, IF YOUR HONOR WERE WILLING, WOULD BE TO

7    SIMPLY STAY THE BRIEFING, PERHAPS INDEFINITELY, UNTIL WE SEE

8    WHAT COMES OUT OF MR. LEUNG'S DEPOSITION.

9         IN THE ALTERNATIVE, YOU KNOW, OF COURSE WE WILL BRIEF IN

10   THE DUE COURSE.

11            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

12        OKAY.  HERE'S HOW WE WILL PROCEED, MR. LEUNG WILL BE

13   DEPOSED.  IS IT CORRECT, MS. BONN, THAT THERE WASN'T A RESPONSE

14   IN 48 HOURS FROM --

15            MS. BONN:  NO, YOUR HONOR.

16            THE COURT:  EXCUSE ME, LET ME FINISH, FROM --

17            MS. BONN:  SORRY.

18            THE COURT:  FROM WHEN THE FEBRUARY 25TH DATE WAS

19    OFFERED?

20            MS. BONN:  NO, I DON'T THINK THAT'S CORRECT,

21    YOUR HONOR.

22        WE DID CONFIRM PROMPTLY IN JANUARY.  WE SET THE

23   FEBRUARY 25TH DATE, BUT WE ALWAYS INDICATED THAT WE NEEDED TO

24   ENSURE HIS DOCUMENTS WERE COMPLETE BEFOREHAND.

25        AND IN FACT, PRIOR TO GOOGLE AGREEING TO MAKE THE

1       PRODUCTION OUT OF THE 982 HITS, GOOGLE'S COUNSEL CALLED

2       MR. FRAWLEY, WHO IS ON THE LINE, TO REACH AN AGREEMENT ABOUT

3       THE PRODUCTION AND SAID, WE WILL AGREE TO PRODUCE THESE

4       DOCUMENTS WITHOUT HAVING TO GO THROUGH ANOTHER ROUND OF

5       BRIEFING, IF YOU WILL CONFIRM THAT THE FEBRUARY 25TH DATE IS

6       STILL ON AND YOU ARE NOT GOING TO TRY TO PUSH THAT DATE.

7           SO, I MEAN, WE WERE GETTING CALLS FROM GOOGLE'S COUNSEL

8       ASKING US TO CONFIRM THAT DATE AS A PRECONDITION TO PRODUCING

9       THE DOCUMENTS, WHICH WE DID.

10          MR. SCHAPIRO:  YOUR HONOR, I HAVE A COLLEAGUE WHO CAN

11      RESPOND TO THAT, BECAUSE WE DISAGREE.

12          THE COURT:  I UNDERSTAND.  TWO SIDES TO EVERY STORY.

13          BUT BE THAT AS IT MAY, MR. LEUNG WILL BE DEPOSED THIS

14      WEEK, NOT LATER THAN MARCH 4TH, AND IF THAT'S THE AGREED DATE,

15      THAT'S WHEN IT WILL GO FORWARD.

16          I WILL ALLOW A DEPOSITION OF MS. LIU, ALONG WITH A SEARCH

17      OF HER DOCUMENTS, FOR THE LIMITED TIME PERIOD OF 2019 TO 2021,

18      USING THE SAME SEARCH TERMS AS WERE USED FOR MR. LEUNG.

19          THOSE DOCUMENTS ARE TO BE SEARCHED AND PRODUCED NO LATER

20      THAN MARCH 2ND, AND THE WITNESS IS TO BE MADE AVAILABLE FOR

21      DEPOSITION NO LATER THAN MARCH 7TH, MARCH 7TH.

22          THAT'S AS FAR AS I'M WILLING TO GO, IN TERMS OF EXTENDING

23      A DEADLINE.

24          MR. SCHAPIRO:  AND YOUR HONOR, WHEN YOU SAID YOU WILL

25      ALLOW A DEPOSITION, DOES THAT MEAN YOU WILL ALLOW IT OUTSIDE OF

1    THE 20?

2              THE COURT:  JUST WHAT I'M COMING TO, MR. SCHAPIRO.

3              MR. SCHAPIRO:  OKAY.  THANK YOU.

4              THE COURT:  SINCE I HAVE NOT HAD AN OPPORTUNITY TO

5    WORK THROUGH WHATEVER OTHER THAN DEPOSITION COUNT ISSUES ARE,

6    THAT DEPOSITION, THAT TWO-HOUR DEPOSITION WILL NOT COUNT TO THE

7    20.

8         OKAY.

9              MR. SCHAPIRO:  CAN I COME BACK WITH ONE OTHER REQUEST

10   THEN?

11        CAN WE ASK THEN THAT BURT LEUNG BE FIVE HOURS AND MS. LIU

12   BE TWO HOURS SO THAT IT'S THEN THE EQUIVALENT OF ONE DEPOSITION

13   ON THIS TOPIC?

14             THE COURT:  NO, MR. SCHAPIRO.  DENIED.

15        OKAY.  WE ARE NOT GOING TO RESET THE MR. LEUNG ISSUES.

16        ALL RIGHT.  P24, THIS IS A DISPUTE WHICH WAS PHRASED AS

17   SPECIAL MASTER PROCESS AND DEADLINES.

18        THE PARTIES HAVE A DISPUTE ABOUT THE TIMELINE AND

19   DEADLINES FOR DATA PRODUCTION.  I THINK EVERYBODY ON THIS CALL

20   CAN SURMISE THAT WHEN I READ THE NATURE OF THAT DISPUTE, MY

21   NEXT MOVE WAS TO PICK UP THE PHONE TO SPECIAL MASTER BRUSH AND

22   ADDRESS SOME OF THESE ISSUES.

23        AND I WORKED WITH THE SPECIAL MASTER OVER THE WEEKEND ON

24   REALLY TRYING TO HONE WHAT THE ISSUES WERE AND WHAT NEEDED TO

25   BE DONE, WITH A CAREFUL EYE ON THE CLOCK THAT IS RUNNING, AND

```
 1    HENCE THE REQUEST THAT YOU RECEIVED FROM SPECIAL MASTER BRUSH

 2    FOR A CONFERENCE THIS MORNING WITH YOUR EXPERTS, WHICH I

 3    UNDERSTAND TOOK PLACE AND WAS PRODUCTIVE.

 4         WHERE I WANT AND WHERE WE WILL END UP IN RESPONSE TO P24,

 5    IS WITH A DATE CERTAIN FOR COMPLETION OF A DREML SEARCH AND

 6    PRODUCTION, WHICH HOPEFULLY WILL BE BY MARCH 4TH, BUT I

 7    UNDERSTAND THAT THAT IS BEING DISCUSSED, AS WELL AS A DATE

 8    CERTAIN FOR A LIMITED AND FOCUSED HISTORICAL SEARCH USING THE

 9    FLUME TOOL, AND THAT THAT SEARCH WILL ALSO BE COMPLETED ON A

10    DATE CERTAIN.

11         AND THAT'S WHERE WE ARE HEADED.  WHAT THOSE TWO DATES ARE,

12    I UNDERSTAND IS PART OF THE PROCESS THAT IS BEING WORKED

13    THROUGH WITH SPECIAL MASTER BRUSH WITH A FURTHER DISCUSSION,

14    FURTHER CONFERENCE TO TAKE PLACE TOMORROW.

15         MR. BRUSH, DO I HAVE THAT RIGHT?

16         MR. BRUSH:  YES, YOUR HONOR.

17         THE COURT:  THANK YOU.

18         ANY QUESTIONS ON PROCEEDING IN THAT MANNER?  MR. MAO, YOU

19    ARE THOUGHTFULLY RAISING YOUR HAND, BOTH ELECTRONICALLY AND

20    PHYSICALLY, WHICH ACTUALLY IS A BETTER WAY TO GET MY ATTENTION.

21    YOU MAY BE HEARD BRIEFLY, AND THEN OF COURSE I WILL HEAR FROM

22    GOOGLE.

23         MR. MAO:  YES.  THANK YOUR HONOR.  JUST A LOT OF

24    PEOPLE ON THE PANEL.

25         THE COURT:  YES.
```

```
 1          MR. MAO:  SO WE CERTAINLY APPRECIATE MR. BRUSH'S

 2    ASSISTANCE, AND THERE IS ONE ISSUE THAT'S POPPED UP,

 3    PARTICULARLY WITH REGARD TO HOW IT RELATES TO P22, WHICH IS

 4    WHAT MS. BONN HAD JUST ARGUED IN FRONT OF YOU, WHICH IS THAT

 5    THERE ARE A NUMBER OF UNDISCLOSED, PREVIOUSLY UNDISCLOSED █████

 6    ████████████ AND ████████████ LOG SOURCES WHICH HAVE NOT

 7    BEEN IDENTIFIED BY GOOGLE IN WHICH WE HAVE SINCE ASKED FOR

 8    THEIR IDENTIFICATION, AND ALSO FOR THEIR FIELDS AND SCHEMA,

 9    WHICH YET, TO THIS DAY, STILL HAS NOT BEEN PRODUCED.  AND I

10    HOPE YOUR HONOR CAN SEE THE RELEVANCE OF THAT TO THIS CASE.

11          AND IN TERMS OF THE DREML AND ALSO THE FLUME SEARCHES FOR

12    HISTORICAL DATA, THAT IS CERTAINLY GOING TO BE RELEVANT AND

13    IT'S CERTAINLY GOING TO BE IMPORTANT.

14          AND WE DO BELIEVE THAT WE ARE ENTITLED TO A FULSOME

15    PRODUCTION OF NOT JUST THE LOG SCHEMAS, THAT THOSE SCHEMAS

16    SHOULD CONTAIN THE FULL FIELDS.

17          I UNDERSTAND GOOGLE HAS ARGUED THAT WHEN THEY USE THE

18    FRONT DOOR TOOL TO PRODUCE FIELD SCHEMAS, THAT WILL PRODUCE

19    SOMETHING THAT'S JUST A HUNDRED FIELDS AND THAT IS IT, AND

20    THAT'S SIMPLY UNTRUE.

21          ONE THING I WOULD POINT TO, YOUR HONOR, IN THE PAST, IS IF

22    YOU LOOK AT THEIR ██████████ LOG PRODUCTION AND THEIR █████

23    ████████████ PRODUCTION ON THE SCHEMAS BACK IN NOVEMBER, THE

24    TOTAL FIELDS PRODUCED WAS ████  THERE'S NO REASON -- I THINK IT

25    WAS ██████████ AND THEN FOR THE ████████████████, IT WAS
```

1      █████

2           AND THEN IN DECEMBER WHEN THEY PRODUCED THE LOGS FOR

3      ███████, IT WAS  █████   SO WE HAVE THREE LOG SOURCES WHICH WERE

4      PRODUCED WHICH SUBSTANTIALLY DIFFER FROM THE  ████  IN WHICH THEY

5      ARE REPRESENTING THAT THEY CAN ONLY PRODUCE.

6           AND AS WE'VE DISCUSSED IN P22, THE ONE FIELD THAT WAS

7      OMITTED THROUGH THIS ARTIFICIAL FILTERING OF  ████  WAS INDEED THE

8      ██████████████  FIELD FROM ONE OF THE CRITICAL LOGS.

9           SO THAT'S A PRETTY BIG ISSUE, YOUR HONOR, IN TERMS OF IT

10     BEING AN OBSTACLE FOR US TO GO FORWARD, AND WE WOULD LIKE TO

11     RESPECTFULLY REQUEST SOME MOVEMENT ON THAT.

12          AND THEN THE SECOND THING, JUST REAL BRIEFLY YOUR HONOR,

13     IS THAT IT'S COME TO OUR ATTENTION FROM THE JOINT PROCEEDINGS

14     WITH THE CALHOUN FOLKS, THAT GOOGLE DID RETAIN SOME DATA FOR AT

15     LEAST THE CALHOUN PLAINTIFFS, HISTORICAL DATA FROM THE CALHOUN

16     PLAINTIFFS, PRIOR TO THE LITIGATION WHEN THE LITIGATION BEGAN.

17          IT IS UNCLEAR, AND WE'VE ASKED AND GOOGLE HAS NOT YET

18     RESPONDED, AS TO WHETHER OR NOT THEY HAVE DONE THE SAME FOR OUR

19     PLAINTIFFS.  AND IT IS UNCLEAR IF THEY ARE HOLDING ANYTHING

20     BACK AND IF WHAT WITH THEY HELD BACK -- AND IF THERE IS SOME

21     TYPE OF OBJECTION ON RELEVANCE, THEN WE HAVE SERIOUS QUESTIONS

22     REGARDING IF IT'S NOT RELEVANT, WHY WAS IT PRESERVED IN THE

23     FIRST PLACE.

24          THE REASON WHY THAT COMES UP AS PART OF P24, YOUR HONOR,

25     IS BECAUSE YOU CAN IMAGINE IF THOSE ARE AVAILABLE SOURCES,

1    THOSE MIGHT BE ADDITIONAL SOURCES TO BE SEARCHED, AND WE DO

2    HAVE QUESTIONS REGARDING WHEN THAT WAS HELD BACK.

3         SO WITH THAT, YOUR HONOR, THOSE WERE MY MAIN ISSUES ON P24

4    FOR NOW.

5              MR. SCHAPIRO:  YOUR HONOR, IF NECESSARY, MY COLLEAGUE

6    TRACY GAO CAN RESPOND TO THAT, BUT I THINK THAT THIS IS AN

7    ISSUE, TO THE EXTENT I UNDERSTOOD WHAT THE ASK WAS, AND I MAY

8    NOT HAVE, THAT IS WITHIN THE PURVIEW OF THE SPECIAL MASTER.

9         IF YOU WANT US TO GET INTO THE POINT BY POINT RESPONSE,

10   MS. GAO WILL BE HAPPY TO DO THAT.  BUT AS FAR AS I UNDERSTOOD

11   IT, THIS IS SOMETHING THAT IS A TECHNICAL SPECIAL MASTER ISSUE,

12   AND THAT'S NOT PRESENTED WITH THIS PARTICULAR ASK IN THE CHART.

13             THE COURT:  WHAT I UNDERSTOOD MR. MAO -- TO THE

14   POINT, MR. MAO, YOU WERE TRYING TO MAKE WAS, FINE, IF THERE'S

15   GOING TO BE DATES SET FOR A DREML PRODUCTION AND A FLUME

16   PRODUCTION, WE WANT TO BE SURE THAT IT INCLUDES THE ███

17   ███  FIELDS.  AND THAT IS A -- AS WE ALL KNOW FROM THE

18   PATHS TROD IN THIS CASE, THAT'S POTENTIALLY A BIG DEAL AND A

19   BIG ASK, AND I DO EXPECT THAT TO BE ADDRESSED BEFORE SPECIAL

20   MASTER BRUSH.

21        I WANT TO COME BACK TO THE HISTORICAL DATA IN JUST A

22   MOMENT.  BUT MR. BRUSH, HAVING HEARD WHAT MR. MAO HAS TO SAY,

23   MY QUESTION IS JUST, IS THERE ANYTHING THAT THE COURT CAN DO

24   TODAY TO CLARIFY?  DO YOU HAVE ANY QUESTIONS, OR DO YOU SEE

25   THIS AS PART OF THE FURTHER DISCUSSIONS THAT WILL CONTINUE

1    BEFORE YOU TOMORROW WITH THE EXPERTS?

2          MR. BRUSH:  WELL, YOUR HONOR, I HOPE IT IS SOMETHING

3    THAT DOES CONTINUE.  AND FROM WHAT WE'VE HAD DISCUSSIONS WITH

4    PARTIES ON, IS THAT THE PEOPLE BEING DEPOSED THIS WEEK ARE --

5    TO GO BACK TO P22, WERE THE BEST INDIVIDUALS TO ANSWER SPECIFIC

6    QUESTIONS ABOUT THESE FIELDS AND HOW THEY ARE PUT TOGETHER

7    WITHIN THE DATA SOURCES.

8        MY HOPE IS CONTINUING THIS WEEK, IF WE ALSO GET SOME OTHER

9    INFORMATION ABOUT IT, THAT WILL HELP REFINE AND ROUND OFF ANY

10   EDGES ABOUT THESE FIELDS AS THE INDIVIDUALS BEING DEPOSED ARE

11   PRESENTED WITH THE QUESTIONS SO IT COULD BE MORE MEANINGFUL.

12   SO I THINK THERE'S A LOT WORKING IN TANDEM AT THIS POINT.

13       I WOULD ASK THAT PARTIES DO CONTINUE TO WORK AROUND THIS

14   ISSUE AND WORK PARALLEL WITH OTHER AREAS OF SEARCHING.  AND AS

15   WE LOOK FOR PARTIES TO WORK TOGETHER WITH THEIR EXPERTS, THAT

16   TO THE EXTENT THAT WE CAN ANSWER QUESTIONS ON THESE, GREAT,

17   WITH INDIVIDUALS THAT HAVE SOME KNOWLEDGE.  I DON'T WANT TO

18   ALSO PUT EXPERTS OR ENGINEERS ON THE GOOGLE SIDE IN THE HOT

19   SEAT OF ANSWERING QUESTIONS THAT THEY ARE NOT WITHIN THEIR

20   SCOPE OR CAPABILITIES OF ANSWERING ABOUT THESE SPECIFIC AREAS

21   OR HAVE TO BE GUESSING WHERE WE THEN HAVE TO UNDUE THINGS.

22       SO WITH ALL OF THAT, MY HOPE IS THAT WE CAN CONTINUE TO

23   WORK ON THE SEARCH ISSUES IN PARALLEL WITH THIS AND THIS DOES

24   NOT BECOME SOMETHING THAT CREATES A HURDLE TO MOVING FORWARD.

25       THAT'S NOT -- MY IMPRESSION IS THAT WE CAN CONTINUE TO

1    WORK ON THESE ISSUES AND THESE FIELDS CAN BE ADDED IN

2    THROUGHOUT THIS WEEK AS WE FURTHER REFINE THE SEARCHES.  BUT I

3    DO WANT THE OTHER SEARCHES TO CONTINUE TO MOVE FORWARD.

4         THE COURT:  OKAY.  EXCELLENT.

5    LET ME -- AND THIS WAS VERY MUCH -- THANK YOU, SPECIAL

6    MASTER BRUSH.

7         AND THAT REFLECTS VERY MUCH THE SUBSTANCE OF THE

8    CONVERSATIONS I HAVE CONTINUED TO HAVE WITH THE SPECIAL MASTER

9    THROUGHOUT THIS PROCESS, WHICH IS THAT THE PARTIES MUST BE ABLE

10   TO MOVE FORWARD ON MULTIPLE TRACKS.

11        AND WE ARE GOING TO -- THE PROCESS BEFORE THE SPECIAL

12   MASTER ON MANAGING AND CLOSING OUT THE DREML AND FLUME SEARCH

13   OR SEARCHES WILL PROCEED.  THERE WILL BE A DEPOSITION OF

14   MR. LEUNG THIS WEEK, A DEPOSITION OF MS. LIU EARLY NEXT WEEK,

15   IF NOT SOONER, AND THAT MAY FURTHER INFORM THE PROCESS.  BUT IT

16   CERTAINLY -- THOSE WILL NOT HOLD UP THAT PROCESS AT ALL, AND WE

17   WILL PROCEED.  OKAY.

18        WITH REGARDS TO HISTORICAL DATA, MR. SCHAPIRO, IS THERE --

19   DOES GOOGLE HAVE DATA THAT IT PULLED AND RETAINED FOR THE BROWN

20   PLAINTIFFS, THAT IS THE NAMED PLAINTIFFS?

21        YOU ARE ON MUTE.

22        MR. SCHAPIRO:  I APOLOGIZE.  I WAS MUTED.

23        DATA IN WHAT FORM, YOUR HONOR?  DATA THAT HAS -- SORRY.

24   I'M NOT SURE I UNDERSTOOD THE QUESTION.

25        THE COURT:  OKAY.  LET ME TURN TO SPECIAL MASTER

1        BRUSH, BECAUSE I KNOW HE HAD ALERTED ME TO THIS ISSUE.

2

3              MR. BRUSH:  YES, YOUR HONOR.

4        I BELIEVE IN THE CALHOUN MATTER, AND MR. MAO'S REFERENCES

5    PRIOR WAS THERE WERE POTENTIAL PRODUCTIONS THAT WERE EITHER

6    GENERATED AND NOT PRODUCED FROM A SUBSET OF SEARCH DATA FOR

7    NAMED PLAINTIFFS ACROSS BOTH MATTERS.  WHAT WE WANTED TO HAVE

8    AN UNDERSTANDING OF, AND WHAT I THINK I ASKED EARLIER TODAY IN

9    THE MEET AND CONFERS, WAS THE STATE OF THAT DATA.  WAS THIS

10   DATA THAT WAS PRESERVED IN A POST-SEARCH FORMAT THAT COULD BE

11   EASILY PRODUCED THAT COULD HELP REDUCE SOME OF THE DUPLICATIVE

12   CYCLES OF THE DISCOVERY PROCESS?  WAS THIS DATA THAT WAS

13   PRESERVED IN ANOTHER SEARCH MANNER THAT WE WOULD STILL HAVE TO

14   GO BACK AND SEARCH ANOTHER WAY?

15       BUT I GUESS THERE WAS SOME CLARITY THAT THE COURT AND

16   PARTIES NEED ABOUT WHAT EXACTLY WAS THE SEARCH DATA THAT WAS

17   DONE ON THE ONSET OF THIS MATTER THAT MIGHT BE AVAILABLE AND

18   POTENTIALLY HELPFUL IN THE DISCOVERY PROCESS.

19             MR. SCHAPIRO:  SO YOUR HONOR, AND SPECIAL MASTER

20    BRUSH, I HAD UNDERSTOOD THIS TO BE PART OF THE CALHOUN FIRST

21    PRIORITY ISSUE, BUT I THINK I UNDERSTAND WHAT THE QUESTION IS

22    NOW.

23       SO I THINK AT THE END OF THE SESSION THIS MORNING, WE WERE

24   TALKING ABOUT DATA THAT HAS BEEN PRESERVED.  YOU WILL RECALL,

25   YOUR HONOR, AT THE OUTSET OF THIS CASE, I THINK IT WAS OUR

1    FIRST APPEARANCE IN FRONT OF YOU, THERE WAS KIND OF A FIRE

2    DRILL ABOUT THE QUESTION ABOUT WHETHER WE ARE OBLIGATED TO

3    SUSPEND NORMAL RETENTION POLICIES RELATING TO LOGS.  AND THE

4    COMPROMISE THAT CAME OUT OF THAT WAS THAT WE WOULD PRESERVE

5    CERTAIN DATA IN LOGS THAT WAS RELATED TO CERTAIN IDENTIFIERS

6    THAT WERE PROVIDED TO US OR IDENTIFIERS FROM THE PLAINTIFFS,

7    WITH AN UNDERSTANDING THAT, I THINK AS YOUR HONOR EMPHASIZED

8    RIGHT AT THE BEGINNING, MERE PRESERVATION DOES NOT MEAN

9    NECESSARILY PRODUCTION.

10        AND FROM THAT VERY WIDE FUNNEL, WE AFTERWARDS WENT TO THE

11   SMALLER FUNNEL, OR WE TRIED TO GET TO THE SMALLER FUNNEL

12   THROUGH THE VERY SIGNIFICANT AND I THINK HELPFUL EFFORTS OF THE

13   SPECIAL MASTER, SPECIAL MASTER BRUSH, SO THAT WHAT WE HAVE BEEN

14   DOING SINCE THAT TIME IS THEY WERE TOLD, AND IT'S PART OF THE

15   SPECIAL MASTER PROCESS, TO CHOOSE SPECIFIC SEARCHES FOR

16   SPECIFIC FIELDS TO BALANCE PROPORTIONALITY.

17        AND WE HAVE HAD ALL OF THESE MEETINGS.  SO THERE ARE --

18   THERE IS -- IT IS CERTAINLY TRUE THAT THERE'S A BROADER SET OF

19   PRESERVED DATA THAN THERE HAS BEEN PRODUCED DATA.  I AM NOT

20   SURE, WITH REGARD TO BROWN, AGAIN WE FOCUSED ON CALHOUN, WHAT

21   WE HAVE IN TERMS OF COOKIES THAT WERE PRESERVED.  AND MAYBE WE

22   CAN FOLLOW UP WITH THE SPECIAL MASTER TOMORROW, BECAUSE I

23   WOULDN'T WANT TO MISSTATE THAT THERE IS A UNIVERSE LIKE THIS IN

24   BROWN SUCH AS THERE IS IN CALHOUN.

25        MR. BRUSH:  MAY I JUST CLARIFY, MR. SCHAPIRO, WHAT WE

1    WERE DISCUSSING, AND IT IS A BIT OF A CONFUSING SET OF

2    TERMINOLOGY THROUGHOUT THE PROCESS WHERE I THINK THE WORD

3    "PRESERVATION" IS APPLIED IN TWO DIFFERENT AREAS.

4         WHAT I THINK WHAT WE ARE LOOKING FOR, THINGS THAT WERE

5    SEARCHED IN THAT SUBSET OF SEARCH DATA WAS PUT SOMEWHERE, LET'S

6    SAY PRESERVED IN THAT MANNER, NOT NECESSARILY ON A LITIGATION

7    HOLD OF PRESERVED RAW DATA, THE TOP PART OF THE FUNNEL, BUT

8    ACTUAL THINGS THAT WERE SEARCHED, AND IT MAY NOT HAVE BEEN

9    PRODUCED.

10        I THINK EVERYBODY WAS LOOKING FOR CLARITY ON WHETHER THERE

11   WAS INFORMATION THAT MIGHT BE RELEVANT IN THE RESPECTIVE MATTER

12   THAT MIGHT BE AVAILABLE NOW THAT COULD REDUCE THE NEED TO

13   RE-SEARCH DATA.  AND THAT WAS THE ONLY THING I THINK WE WANTED

14   CLARITY ON.

15             MR. SCHAPIRO:  YES.

16        SO I THINK AS TO BROWN, I WOULD NEED TO COME BACK ON THAT.

17   WITH CALHOUN, THERE IS DATA, I DON'T KNOW IF I WOULD REALLY

18   CALL IT SEARCHED, BUT THERE IS DATA THAT IS KEYED OFF OF

19   CERTAIN ID'S THAT WERE PROVIDED, AND THAT DATA WAS PRESERVED.

20   IT HASN'T BEEN -- AT LEAST THE DATA THAT'S BEEN OUTSIDE OF YOUR

21   PROCESS, MR. BRUSH, HASN'T BEEN REVIEWED OR AT LEAST REVIEWED

22   IN ANY CAREFUL WAY.

23        BUT AGAIN, I DON'T THINK, THE GOAL OF THE QUESTION IS,

24   WELL, COULD THIS SAVE US EFFORT, I THINK THE ULTIMATE RESULT OF

25   PRODUCING THIS SET OF SOMEWHAT ROUGH DATA WOULD BE ACTUALLY TO

1    TAKE US BACKWARDS, WE ARE SORT OF AT THE END OF THE PROCESS

2    HERE, AND THAT'S TAKING US BACK UP TO THE WIDE FUNNEL.

3         AND I THINK THE WHOLE REASON THAT WE'VE BEEN IN FRONT OF

4    YOU AND MR. SCHMIDT FOR WHAT I THINK HAVE BEEN A PRODUCTIVE

5    SERIES OF MEETINGS, IS TO CHOOSE SPECIFIC SEARCHES FOR SPECIFIC

6    FIELDS, AND FROM THOSE, THEN TO COME UP WITH ADDITIONAL

7    SEARCHES CHOOSING ADDITIONAL FIELDS.

8         THIS, IN OUR VIEW, AND I'M PREVIEWING THE CALHOUN ARGUMENT

9    HERE, YOUR HONOR, WOULD I THINK TAKE US BACKWARDS AT THIS POINT

10   IN THE WEEK THAT DISCOVERY IS CLOSING.

11             THE COURT:  OKAY.

12        WELL, REGARDLESS OF WHETHER IT'S FORWARD OR BACKWARDS,

13   BECAUSE I THINK THAT IS SOMEWHAT OF A SUBJECTIVE VIEW,

14   OBVIOUSLY, DEPENDING ON WHICH SIDE YOU ARE ON, MR. SCHAPIRO, I

15   WANT YOU TO FOLLOW UP WITH YOUR TEAM AND YOUR TECHNICAL EXPERTS

16   AS TO WHETHER THERE IS A SET OF DATA, I THINK AS SPECIAL MASTER

17   BRUSH REFERRED TO IT, POST-SEARCH DATA THAT RELATES TO THE

18   BROWN PLAINTIFFS THAT HAS BEEN IDENTIFIED BUT NOT PRODUCED.

19        I'M USING THE WORD "IDENTIFIED" INSTEAD OF "PRESERVED,"

20   BUT -- AND BE PREPARED TO INFORM ON THAT TO THE SPECIAL MASTER

21   IN THE SESSION TOMORROW.

22             MR. SCHAPIRO:  WILL DO, YOUR HONOR.

23             THE COURT:  OKAY.

24        MR. BRUSH, WILL THAT BE HELPFUL?  DID I GET THAT RIGHT?

25             MR. BRUSH:  YES, YOUR HONOR.

```
 1              THE COURT:  THANK YOU.

 2          ALL RIGHT.  MR. MAO, THAT'S HOW WE WILL PROCEED.  I KNOW

 3      YOU WERE PATIENTLY RAISING YOUR HAND, BUT I THINK THAT THAT

 4      ADDRESSES THAT ISSUE.

 5          AND AS TO THE -- AS I ALREADY SAID, AS TO THE ROLE OF THE

 6      INCOGNITO FIELDS, THAT'S GOING TO BE -- THAT IS THE SUBJECT OF

 7      DISCOVERY OVER THE COURSE OF THE NEXT WEEK, AND IT MAY

 8      EVENTUALLY INFORM THE DREML OR FLUME SEARCH.  BUT MEANWHILE,

 9      THE WORK ON GETTING THOSE SEARCHES DONE AND SETTING DATES FOR

10      COMPLETION OF THOSE SEARCHES WILL BE RESOLVED BEFORE THE

11      SPECIAL MASTER AND THEY WILL BE RESOLVED SHORTLY.

12              MR. MAO:  IF I MAY JUST MAKE A QUICK POINT ON THAT,

13       YOUR HONOR, JUST REAL QUICK.

14          THE POINT OF ASKING FOR THOSE SCHEMAS AND FIELDS IS TO

15       HELP EXPEDITE THE SEARCH, BECAUSE OTHERWISE WE WOULD HAVE TO

16       SPECIFY --

17              THE COURT:  I UNDERSTAND, MR. MAO.  I UNDERSTAND.

18              MR. MAO:  ALL RIGHT.  I APPRECIATE IT.

19              THE COURT:  THAT'S WHY I'M LEAVING THE MECHANICS IN

20      THE VERY CAPABLE HANDS OF SPECIAL MASTER BRUSH AND MR. SCHMIDT.

21              MR. MAO:  THANK YOU, YOUR HONOR.

22          THANK YOU, MR. BRUSH.

23              THE COURT:  ALL RIGHT.  LET'S MOVE TO P27, THE THIRD

24       AND FINAL IDENTIFIED ISSUE.

25              AND I'M ONLY -- I AM TRYING TO MOVE US THROUGH
```

1    EFFICIENTLY, AND TO THE EXTENT MS. GAO WAS PREPARED TO SPEAK ON

2    THE PRECEDING ISSUE, DON'T WORRY, THERE WILL BE LOTS OF

3    OPPORTUNITIES TO SPEAK IN THIS CASE, I'M SURE.

4         OKAY.  P27 RELATES TO DASHBOARD DATA AND THE PRODUCTION OF

5    DASHBOARD DATA.  I READ THROUGH THIS.

6         I'VE GOT SOME QUESTIONS OF -- WHO HAS THE MIC FOR

7    PLAINTIFFS ON THIS?

8              MS. BONN:  YOUR HONOR, ALEX FRAWLEY WILL BE TAKING

9    THAT FOR PLAINTIFFS AND MARK MAO WILL BE ASSISTING AS WELL.

10             THE COURT:  EXCELLENT.

11        SO MR. FRAWLEY, TO START WITH, WITH REGARDS TO PRODUCTION

12   OF DASHBOARD DATA, IS IT PURSUANT TO A SPECIFIC RFP, THERE

13   WASN'T ONE REFERENCED, OR WAS THIS PART OF SOME OTHER

14   NEGOTIATION OR MEANS BETWEEN THE PARTIES?

15             MR. FRAWLEY:  I BELIEVE THERE ARE RFP'S ON POINT,

16   YOUR HONOR.

17        BUT I CAN SAY FOR THE ███████████████

18   DASHBOARD, WE SENT AN E-MAIL A COUPLE OF WEEKS AGO SAYING THAT

19   WE HAD NOTICED SOME DOCUMENTS REFERENCING THIS DASHBOARD AND WE

20   THOUGHT IT WAS RESPONSIVE TO SOME RFP'S, AND I'M NOT LOOKING AT

21   THE PARTICULAR NUMBER, BUT COUNSEL FOR GOOGLE SAID THEY WOULD

22   PRODUCE A SCREENSHOT FOR US OF THE DASHBOARD, AND OUR

23   UNDERSTANDING IS THEN WE WOULD DISCUSS WHAT DATA WOULD BE

24   PRODUCED FROM THE DASHBOARD.  AND WE GOT A PRODUCTION, AS

25   GOOGLE EXPLAINED IN THEIR CHART, AND WE JUST THINK IT'S

```
1         INCOMPLETE.

2              THE COURT:  OKAY.  SO LET ME STOP YOU THERE, BECAUSE

3         I'VE GOT MORE QUESTIONS, SO WE WILL JUST TAKE THEM ONE AT A

4         TIME.

5              YOU ANTICIPATED MY NEXT QUESTION WHICH IS, MY

6         UNDERSTANDING OF A DASHBOARD, YOU KNOW, IT'S DYNAMIC.  I KNOW

7         WHEN I'VE USED THEM, RIGHT, YOU PULL IT UP AND YOU SEE WHAT'S

8         THE DATA TODAY, AND IT'S ALWAYS CHANGING.

9              SO WHEN YOU ASK FOR PRODUCTION OF A DASHBOARD, TYPICALLY

10        YOU GET A SCREEN SHOT THAT IS ILLUSTRATING AVAILABLE DATA.

11             SO WHAT ARE YOU ASKING FOR WHEN YOU SAY YOU WANT A

12        DASHBOARD PRODUCED, WHAT IS THAT REQUEST?

13             MR. FRAWLEY:  I THINK IT'S EXACTLY WHAT YOU JUST

14        SAID, YOUR HONOR.

15             WE WOULD LIKE TO SEE A SCREEN SHOT THAT WILL SHOW US WHAT

16        EXACTLY CAN BE QUERIED.  I GUESS HOW CAN THE DATA BE QUERIED,

17        CAN IT BE QUERIED BY A CERTAIN TIMELINE?  IS IT QUERIED BY

18        PARTICULAR LOGS, BY PARTICULAR BROWSER TYPES?  WE WANT TO SEE

19        ALL THE DIFFERENT OPTIONS THAT A GOOGLE EMPLOYEE USING THIS

20        DASHBOARD COULD PUNCH IN AND THEN SPIT SOMETHING OUT.

21             AND THAT'S KIND OF WHAT WE THINK WE ARE MISSING.  SO WE

22        THINK THE PRODUCTION IS INCOMPLETE BECAUSE WE HAVE A COUPLE OF

23        GRAPHS THAT SUGGEST THAT THEY WERE PARTICULAR TO CERTAIN TIME

24        PERIODS OR MAYBE ONE LOG, AND WE ARE CURIOUS WHAT OTHER LOGS

25        ARE RELEVANT TO THIS DASHBOARD, WHAT OTHER TIME PERIODS.
```

```
 1            THE COURT:  WELL, BUT IF YOU ARE ASKING FOR SCREEN

 2     SHOTS, AND I TAKE GOOGLE'S RESPONSE, YOU KNOW, THEY ARE

 3     REFERRING TO SPECIFIC PAGES OF PRODUCTION AND NOT A LOT OF

 4     PAGES, BUT THOSE CERTAINLY -- I AM GOING TO GO OUT ON A LIMB

 5     HERE AND PRESUME THAT THOSE ARE SCREEN SHOT PAGES.  SO WHAT --

 6     I MEAN, WHAT -- HAVE YOU HAD -- HAVE YOU SAT DOWN WITH GOOGLE

 7     AND SAID, OKAY, WE'VE GOT THIS SCREEN SHOT, IT SHOWS THAT DATA,

 8     WHAT ELSE?

 9            MS. BONN:  I CAN SHED LIGHT ON THAT BECAUSE I LOOKED

10     THROUGH THE WHOLE PRODUCTION, YOUR HONOR.  IT'S TIED TO THIS

11     ███████████████  BIT.

12        AND WHAT OUR CONCERN IS IT LOOKED TO ME LIKE WHAT THEY

13     PRODUCED IS THEY ACTUALLY RAN SOME QUERIES IN THE DASHBOARD,

14     AND IT LOOKED TO ME LIKE THE QUERIES THAT THEY ACTUALLY RAN

15     WERE TIED TO INCOGNITO BETWEEN NOVEMBER OF LAST YEAR AND THE

16     PRESENT.  AND THEN THEY PRODUCED CERTAIN SCREEN SHOTS SHOWING

17     THE RESULTS OF THOSE QUERIES.

18        BUT WHAT'S UNCLEAR TO US, WHAT WE HAD ASKED FOR IS, FIRST

19     OF ALL, WHAT CAN BE QUERIED?  BECAUSE WHAT THEY DID IS THEY

20     SORT OF JUMPED AHEAD AND THEY RAN A QUERY ON THEIR OWN.  BUT

21     FOR INSTANCE, IT LOOKS TO US LIKE THEY PULLED GLOBAL INCOGNITO

22     DATA, AND WE ARE INTERESTED IN SEEING, WELL, WHAT'S THE U.S.

23     INCOGNITO DATA, WHAT'S THE CALIFORNIA DATA?

24        AND WE DON'T KNOW YET BECAUSE THEY HAVEN'T PRODUCED THE

25     SCREEN SHOT TO US SHOWING WHAT ARE THE OPTIONS THAT CAN BE
```

1     QUERIED.  WHAT KIND OF A CUSTOM TARGETED QUERY THEY CAN RUN ON

2     THE DASHBOARD.

3          SO OUR REAL ISSUE IS WE FEEL LIKE THEY JUMPED AHEAD AND

4     RAN A QUERY, BUT WHAT WE WANTED TO DO IS UNDERSTAND WHAT

5     QUERIES ARE POSSIBLE AND MEET AND CONFER WITH THEM SO THAT WE

6     COULD JOINTLY DECIDE ON THE QUERY THAT NEEDED TO BE RUN.

7          SO THAT'S REALLY THE ISSUE THAT WE HAVE WITH THIS

8     DASHBOARD.

9            THE COURT:  OKAY.  YOU'VE IDENTIFIED MULTIPLE

10    DASHBOARDS.

11         WHEN YOU SAY "WHAT CAN BE QUERIED," WHAT ARE YOU ASKING

12    FOR?  IT SOUNDS LIKE AN INTERROGATORY WITHIN AN INTERROGATORY

13    RESPONSE.  ARE YOU ASKING FOR A LIST?  WHAT ARE YOU ASKING FOR?

14         MS. BONN:  YEAH.  AND I WILL GIVE AN EXAMPLE,

15    YOUR HONOR.

16         THERE ARE OTHER DASHBOARDS WHERE GOOGLE HAS PRODUCED A

17    DROP-DOWN MENU WHERE WE CAN ACTUALLY SEE, THEY HAVE GIVEN US A

18    SCREEN SHOT SHOWING THE DASHBOARD INTERFACE AND THEY HAVE SHOWN

19    US A DROP-DOWN MENU WHERE YOU COULD SEARCH, I BELIEVE IT WAS

20    LIKE THE           DATABASE, HERE ARE THE FOLLOWING QUERIES

21    YOU CAN DO.

22         AND SO WE WERE ABLE TO USE THAT IN DEPOSITIONS AND FIGURE

23    OUT, OKAY, SO HOW CAN YOU EASE THESE TO ACTUALLY QUERY THE

24    DATA.

25         AND SO THE ISSUE WE HAVE IS IT LOOKS LIKE SOMEONE USED THE

1    DASHBOARD, RAN A PARTICULAR QUERY, AND HAVE GIVEN US THE DATA.

2    BUT IT'S NOT SLICED IN THE WAY THAT WE ARE INTERESTED IN, AND

3    WE WANT TO KNOW IF IT CAN BE SLICED IN THE WAY WE ARE

4    INTERESTED IN.

5              THE COURT:  ALL RIGHT.

6         MR. SCHAPIRO, FOR GOOGLE?  THAT WOULD BE --

7              MR. SCHAPIRO:  I THINK IT WILL BE MR. ANSORGE ON

8    THIS, YOUR HONOR.

9              THE COURT:  AH.  MR. ANSORGE.  ALL RIGHT.  WE WILL

10   START THERE.

11             MR. ANSORGE:  YES, YOUR HONOR.

12        WE DO BELIEVE THAT THERE'S AN RFP THAT RELATES TO THIS AND

13   IT'S -- RFP 166 WOULD BE ONE OF THEM.  THE PARTIES MET AND

14   CONFERRED EXTENSIVELY, I'M SURE MY BRETHREN WILL AGREE WITH ME,

15   ON RFP 166.  AND WE HAD BRIEFED IT IN VARIOUS FORMS TO YOU IN

16   DISCOVERY CHARTS, AND THERE WAS AN UNDERSTANDING AS WE

17   COMMUNICATED WITH EACH OTHER, WE ARE GOING TO BE PROVIDING THE

18   SNAPSHOTS OF A PARTICULAR DASHBOARD AND THAT WOULD RESOLVE OUR

19   OBLIGATIONS UNDER RFP 166.

20        SUBSEQUENTLY, AS PLAINTIFF PLAINTIFFS LEARNED OTHER FACTS

21   IN DEPOSITIONS, JUST AS THE ORDINARY COURSE OF DISCOVERY IN A

22   MATTER SUCH AS THIS, THEY HAVE COME BACK WITH FURTHER REQUESTS

23   AS THEY RELATE TO THEM, THAT ARE SORT OF CONTINUOUS, AND EVER

24   EVOLVING.  SO OUR CONCERN ABOUT THE DASHBOARD ISSUE IS IT'S ONE

25   THAT WE HAVE ALREADY ADDRESSED AND PROVIDED INFORMATION FOR.

```
1          THE OTHER TWO PARTS, ONE, TWO AND THREE THAT THEY HAVE

2     LAID OUT HERE, YOUR HONOR, WE PRODUCED DASHBOARD DATA IN THE

3     LEUNG PRODUCTION.  AND DASHBOARD DATA HAS BEEN PRODUCED.  WE

4     NEED TO RUN SOME KIND OF A QUERY FOR THERE TO BE ANY

5     INFORMATION WITHIN A DASHBOARD.

6          THAT DOESN'T STRIKE US AS AN UNUSUAL THING TO HAVE DONE,

7     BUT WE WANT TO BE VERY CLEAR THAT WE HAVE PRODUCED DASHBOARD

8     DATA IN RESPONSE TO EACH OF THESE CATEGORIES.

9               THE COURT:  HAVE YOU PRODUCED A DROP-DOWN MENU AS TO

10    MR. LEUNG AND MS. LIU, THE DASHBOARD THAT'S IDENTIFIED IN

11    SECTION 2, AS NUMBER 2 IN THIS DISPUTE?

12              MR. ANSORGE:  I WILL CONFIRM THAT, YOUR HONOR.

13         IF WE HAVEN'T PRODUCED A DROP-DOWN MENU, WE WOULD BE HAPPY

14    TO ADD THAT IN THE PRODUCTION, THAT'S SOMETHING THAT WOULD NOT

15    TAKE US A LOT OF WORK TO DO, BUT I'M HAPPY TO LOOK AT THAT

16    AND --

17              THE COURT:  DID YOU SAY THAT WOULD TAKE YOU A LOT OF

18    WORK OR WOULD NOT?

19              MR. ANSORGE:  WOULD NOT TAKE A LOT OF WORK.

20              THE COURT:  THAT'S WHAT I EXPECTED YOU TO SAY, I

21    WANTED TO BE CLEAR.

22         SIMILARLY, WITH REGARDS TO NUMBER 1, WHICH IS THE ███ ,

23    OR ██ DASHBOARD, HAVE YOU PRODUCED A DROP-DOWN MENU?

24              MR. ANSORGE:  I WILL HAVE TO GO AND CONFIRM.  I

25    BELIEVE THAT WE HAD, THAT WAS MY UNDERSTANDING.  IF WE HAVE
```

1    NOT, WE WILL DO SO.

2              THE COURT:  OKAY.

3         AND AS TO NUMBER 3, WHICH IS A DASHBOARD THAT DOESN'T HAVE

4    A NAME, BUT IS DESCRIBED AS ONE THAT IS DESIGNED TO █████████

5    ███████████████████████████████████████████████████████,

6    ET CETERA, DO YOU RECOGNIZE THAT DASHBOARD?  YOU DID SAY YOU

7    PRODUCED SOMETHING PURSUANT -- IN RESPONSE.

8              MR. ANSORGE:  YES.  YOUR HONOR.

9         MY UNDERSTANDING IS THAT WE PRODUCED SOMETHING IN RESPONSE

10   TO THAT DASHBOARD IN THE LATEST LEUNG PRODUCTION.  WE WILL GO

11   AND WE WILL CONFIRM WHETHER THERE'S A DROP-DOWN MENU.  IF THERE

12   IS ONE MISSING, WE ARE VERY HAPPY TO PROVIDE THAT TO PLAINTIFFS

13   AS WELL.

14             THE COURT:  ALL RIGHT.  THEN DROP-DOWN MENUS FOR ALL

15   THREE OF THE DASHBOARDS IDENTIFIED IN DISPUTE 27 WILL BE

16   PRODUCED TO PLAINTIFFS NO LATER THAN MARCH 2ND.

17             MR. REBLITZ-RICHARDSON:  YOUR HONOR, MAY I VERY

18   BRIEFLY ADDRESS THE FIRST DASHBOARD, THE █ DASHBOARD?

19        MR. ANSORGE IS CORRECT, IT IS RFP 166.  WE HAD THAT IN THE

20   AUGUST CHART, AND WE REMOVED IT BASED ON GOOGLE'S

21   REPRESENTATION THAT THEY WOULD PROVIDE THAT DATA TO US.

22        THEY STILL HAVE NOT.  WE HAVE THE FIELDS, WE HAVE THE

23   INFORMATION, WE HAVE TESTIMONY FROM A WITNESS SAYING HE CAN

24   READILY USE THAT DASHBOARD TO IDENTIFY INCOGNITO USERS AND

25   INCOGNITO PAGE LOADS, LIMITED TO PEOPLE IN THE UNITED STATES OR

```
 1      LIMITED TO CALIFORNIA, FOR THE CLASS PERIOD.  THAT'S THE DATA

 2      WE'VE ASKED FOR THAT'S READILY AVAILABLE FROM THIS  █

 3      DASHBOARD THAT GOOGLE STILL HAS NOT PROVIDED US.

 4           SO WE HAVE RECEIVED INFORMATION ABOUT WHAT IS GENERALLY

 5      AVAILABLE THROUGH THIS DASHBOARD, BUT WE'VE ASKED FOR AND NOT

 6      RECEIVED THE CORE METRICS THAT ARE AT ISSUE IN THIS CASE.  THE

 7      NUMBER OF INCOGNITO USERS, THE NUMBER OF INCOGNITO PAGE LOADS.

 8      WE'VE ASKED FOR IT THREE OR FOUR TIMES.  WE THOUGHT WE HAD AN

 9      AGREEMENT IN AUGUST, THAT'S WHY WE TOOK IT OUT OF THE CHART

10      THAT WAS SUBMITTED TO YOU, THAT WE HAD AN AGREEMENT ON RFP

11      NUMBER 166, AND WE STILL HAVE NOT RECEIVED THOSE METRICS.

12           THE COURT:  MR. ANSORGE, DO YOU HAVE THIS ONE AS

13      WELL?

14           MR. ANSORGE:  YES, YOUR HONOR.

15      AND I HOPE MY --

16           THE COURT:  AND MR. ANSORGE, I'M GOING TO HAVE YOU

17      SLOW DOWN A LITTLE BIT, PLEASE.

18           MR. ANSORGE:  YES.

19           THE COURT:  SO PROCEED, BUT --

20           MR. ANSORGE:  WILL DO, ABSOLUTELY.  I'M SORRY FOR

21      SPEAKING TOO QUICKLY.

22      I HOPE MY MEMORY IS NOT FAILING ME, BUT MY UNDERSTANDING

23      AND SINCERE BELIEF IS THAT WE DID PROVIDE INFORMATION TO

24      PLAINTIFFS IN RESPONSE TO RFP 166 BECAUSE WE HAD EXTENSIVE MEET

25      AND CONFERS WHERE PLAINTIFFS WOULD ASK US ABOUT ASPECTS OF THAT
```

```
 1    INFORMATION.  AND AT SOME STAGES, RFP 166 JUST HAS TO COME TO A

 2    CLOSE.

 3              THE COURT:  WELL, OKAY, SO LET ME STOP YOU THERE,

 4    MR. ANSORGE.

 5         MR. REBLITZ-RICHARDSON IDENTIFIED SPECIFIC DEPOSITION

 6    TESTIMONY THAT LAID OUT SPECIAL SPECIFIC DATA WITH REGARDS TO

 7    IDENTIFICATION AND USE, YOU KNOW, IN THE UNITED STATES, AND HAS

 8    THAT INFORMATION BEEN PRODUCED, OR DO YOU KNOW, SITTING HERE

 9    TODAY?

10              MR. ANSORGE:  AND THAT PARTICULAR DATA, I BELIEVE

11    MR. REBLITZ-RICHARDSON IS CONFUSING AGGREGATE METRICS THAT ONE

12    OF THE WITNESSES WHO WAS DEPOSED IN ZURICH A FEW WEEKS AGO WAS

13    REFERRING TO THAT HE HAD CONSTRUCTED ON HIS OWN, WITH THE

14    UNDERLYING DASHBOARD THAT HAS BEEN PRODUCED.

15         AND THAT INFORMATION HAS NOT BEEN PRODUCED, WE WOULD HAVE

16    TO WORK WITH, PULL OUT THE SPECIFIC SEARCH THAT HE HAS

17    CONSTRUCTED.

18         THE DIFFERENCE HERE, YOUR HONOR, IS THAT UP UNTIL NOW WE

19    HAVE BEEN DISCUSSING OVERALL AGGREGATE DASHBOARDS THAT ARE

20    SUPPOSED TO REPORT TO INDIVIDUAL UNDERLYING BITS OF DATA.  WHAT

21    MR. REBLITZ-RICHARDSON IS INTRODUCING NOW RELATES TO AGGREGATE

22    STATISTICS FOR 28 DAYS, SO IT'S QUITE A DIFFERENT PROCESS, A

23    DIFFERENT DASHBOARD, DARE I SAY, AND A SEPARATE SET OF DATA

24    THAN WHAT WE HAVE BEEN DISCUSSING SO FAR.

25              THE COURT:  BUT WAS THAT ASKED FOR FROM PLAINTIFFS
```

1           AND DID GOOGLE AGREE TO PRODUCE IT?

2                   MR. ANSORGE:  YOUR HONOR, IT WAS SUBSEQUENTLY ASKED

3           FOR AFTER THE HALAVATI DEPOSITION, AND GOOGLE DID NOT AGREE TO

4           PRODUCE IT AT THAT TIME BECAUSE WE FELT THAT WE HAD FULFILLED

5           OUR OBLIGATIONS UNDER RFP 166, UNDER ALL THE OTHER DASHBOARDS

6           REQUIREMENTS THAT WERE BEING LODGED.  AND THIS PARTICULAR

7           ENGINEER, WHO NO LONGER WORKS IN THIS AREA, WAS ASKED TO

8           RECONSTRUCT AND PULL SEARCHES THAT HE HAD RUN MORE THAN A YEAR

9           AGO, OR TWO YEARS AGO.  WE FELT THAT WAS GOING BEYOND THE SCOPE

10          OF THE DISCOVERY IN THIS CASE.

11                  BUT IF YOUR HONOR WOULD LIKE US TO REVISIT IT AND WORK

12          WITH THE ENGINEER, WE WOULD BE HAPPY TO DO THAT.

13                  THE COURT:  ALL RIGHT.

14              IS THAT THE SEARCH, MR. RICHARDSON?

15                  MR. REBLITZ-RICHARDSON:  THAT IS, YOUR HONOR.

16              THIS IS BASIC CORE INFORMATION FROM THE DASHBOARD

17          REGARDING ███████████████████████ --

18                  THE COURT:  I GOT IT.  I GOT IT THE FIRST TIME.

19                  MR. REBLITZ-RICHARDSON:  THANK YOU.

20                  THE COURT:  OKAY.  AND THAT WAS THE HAVARTI

21          DEPOSITION, WAS THAT RIGHT?

22                  MR. REBLITZ-RICHARDSON:  HALAVATI.  YES, YOUR HONOR.

23                  THE COURT:  HALAVATI.  EXCUSE ME.  THANK YOU.

24              ALL RIGHT.  THEN THE ██ DASHBOARD MATERIAL OR DATA THAT

25          WAS IDENTIFIED IN THAT DEPOSITION AND REQUESTED BY PLAINTIFFS

```
 1        WILL BE PRODUCED.

 2            LET'S GET THAT PRODUCED IN, LET'S SEE, WHERE ARE WE, WE

 3        ARE ON THE 28TH, SO GET THAT PRODUCED BY MARCH 7TH.

 4            MR. REBLITZ-RICHARDSON:  THANK YOU, YOUR HONOR.

 5            MR. ANSORGE:  YOUR HONOR, WE WILL HAVE TO GET IN

 6        TOUCH WITH THE ENGINEER AND MAKE SURE THE SEARCH IS STILL LIVE.

 7            HIS TESTIMONY DURING THE DEPOSITION WAS THAT HE EXPECTED

 8        TO BE, BUT HE HAD NOT WORKED IN THAT AREA OR ON THE PRODUCT FOR

 9        MORE THAN A YEAR.  SO I WANT TO JUST ADD THAT POTENTIAL CAVEAT.

10            THE COURT:  OKAY.  GET ON THE PHONE.

11        THANK YOU, MR. ANSORGE, I APPRECIATE IT.

12            SO FOR P27, THE DROP-DOWN MENUS, TO THE EXTENT NOT ALREADY

13        PRODUCED FOR THE THREE IDENTIFIED DASHBOARDS WILL BE PRODUCED.

14            IN ADDITION, FOR THE ███ DASHBOARD, THE SEARCH REFERENCED

15        IN THE EXPERT'S DEPOSITION, THAT DATA WILL BE PRODUCED BY MARCH

16        7TH.

17            ALL RIGHT.  I BELIEVE THAT CONCLUDES THE BROWN IDENTIFIED

18        DISPUTES.

19            AND I WILL CIRCLE BACK -- WELL, NO, LET ME JUST TAKE CARE

20        OF IT RIGHT NOW.

21            MR. SCHAPIRO:  AND YOUR HONOR, BECAUSE WE WERE JUST

22        CHECKING WITH THE CLIENT, I HAVE ONE MINOR CAVEAT RELATING TO

23        THE FIRST ISSUE.

24            SO WHERE YOU'VE ASKED US TO PRODUCE THE DOCUMENTS FROM

25        MS. LIU --
```

1          THE COURT:  YES.

2          MR. SCHAPIRO:  BY THE 2ND, WE CAN DO THAT, BUT THAT

3     WOULD NOT ALLOW TIME FOR WHAT IS CALLED DE-DUPES, BECAUSE THEY

4     HAVE TO GET UPLOADED INTO RELATIVITY, WHICH IS COLLECTED,

5     UPLOADED INTO RELATIVITY, THE DATABASE --

6          THE COURT:  AND THEN RUN, UH-HUH.

7          MR. SCHAPIRO:  SO THE TWO CHOICES, AND I GUESS WE

8     WOULD ASK THE PLAINTIFFS WHICH THEY WOULD PREFER, WE COULD

9     MANUALLY REVIEW PDF'S, BUT I DON'T THINK WE WOULD BE ABLE TO

10    DE-DUPE THEM IN THAT CASE.  WE HAVE TO REVIEW THEM, PRODUCE

11    THEM, THEY MIGHT GET DUPLICATES THERE WHICH MIGHT MAKE MORE

12    WORK FOR THEM, BUT THEY WOULD GET IT ON, PRESUMABLY -- I THINK

13    WE COULD DO IT BY WEDNESDAY, WHICH IS THE DATE YOU ORDERED, BUT

14    IF WE ADD A COUPLE OF DAYS TO THAT, WE COULD HAVE IT INTO

15    RELATIVITY AND THEY WOULD NOT RECEIVE DUPLICATES.

16         THE COURT:  OKAY.  WHY DON'T YOU GET A HIT COUNT FOR

17    THE PLAINTIFFS AND MEET AND CONFER ON THAT.  IT SEEMS LIKE YOU

18    OUGHT TO BE ABLE TO WORK THAT OUT.  THEY CAN MAKE A CHOICE

19    WHETHER THEY WANT THE WHOLE PRODUCTION OR WANT YOU TO TAKE THE

20    TIME TO DE-DUPE IT.  IT DOES TAKE TIME, OFTEN THAT'S TIME WELL

21    SPENT, BUT I WILL LET THE PARTIES DISCUSS THAT.

22         MR. SCHAPIRO:  THANK YOU, JUDGE.

23         THE COURT:  THANK YOU.

24    MS. BONN, AS I SAID, I DON'T KNOW YET WHICH THE ADDITIONAL

25    DISPUTES I WILL BE ABLE TO GET TO WHEN.  DID PLAINTIFFS HAVE

1    ANOTHER TWO DISPUTES THAT THEY WANT TO BE SURE GO TO THE FRONT

2    OF THE LINE BEYOND THE THREE THAT WERE IDENTIFIED FOR TODAY'S

3    PROCEEDINGS?

4            MS. BONN:  I WILL DEFER TO MR. RICHARDSON AS TO WHICH

5    TWO WE WILL TALK ABOUT TODAY.

6            THE COURT:  WE WON'T GET THEM TO TODAY, IT'S JUST

7    WHERE I WILL TURN MY ATTENTION NEXT, AS TIME ALLOWS, IT WILL BE

8    LATER THIS WEEK.

9            MS. BONN:  I'M TAKING A LOOK.  I THINK FOR US, I'M

10   GOING TO SAY PRIORITY RFP'S AND PRIVILEGE LOG.  BUT IF WE COULD

11   JUST SEND AN E-MAIL TO MS. FANTHORPE AFTER THE HEARING, WE CAN

12   CONFIRM WHICH DISPUTES WE WANTED TO GET.

13        IT LOOKS LIKE MR. RICHARDSON AGREES.

14            THE COURT:  THAT WOULD BE FINE, BUT FIRST I WANT YOU

15   TO LET GOOGLE KNOW WHAT THOSE DISPUTES ARE.  AND YOU CAN ALL

16   HAVE A CONVERSATION BEFORE YOU LET ME KNOW.

17            MS. BONN:  WILL DO, YOUR HONOR.

18        I APOLOGIZE, I HAD ONE FINAL QUESTION IF IT'S ALL RIGHT.

19        I THINK BOTH SIDES RECEIVED THE COURT'S ORDERS ON THE

20   30(B)(6), AND I THINK WE HAVE ALL NEEDED A LITTLE BIT OF TIME

21   DIGEST IT, BUT I THINK WE HAVEN'T RECEIVED DATES AND DESIGNEES

22   YET.  I THINK IT SEEMS UNLIKELY THAT THOSE DEPOSITIONS ARE

23   GOING TO HAPPEN THIS WEEK BECAUSE OF THAT, BUT I THINK WE DON'T

24   WANT IT TO GO MUCH LATER THAN NEXT WEEK.  SO I JUST WANTED TO

25   GET SOME GUIDANCE ON TIMING FOR ACTUALLY GETTING THESE

```
1       30(B)(6) --

2              THE COURT:  THE GUIDANCE IS FOR YOU TO TALK TO

3       COUNSEL, TALK TO GOOGLE AND WORK IT OUT.  YOU GUYS HAVE A

4       DISCOVERY CUTOFF OF FRIDAY.  NOW OFTEN, SCHEDULING DEPOSITIONS

5       HAVE TO ALL FALL A FEW DAYS THEREAFTER, BUT I THINK

6       JUDGE GONZALEZ ROGERS MADE IT VERY CLEAR THE SCHEDULE IS

7       STICKING.

8          SO, YOU KNOW, I'VE GOTTEN DOWN TO THE POINT OF GIVING YOU

9       GUYS TIMELINES FOR BACK AND FORTH BEFORE, BUT EVERYBODY ON THIS

10      CALL, YOU DON'T NEED ME TO MANAGE THAT LEVEL OF DISCOVERY

11      DISCUSSIONS.  IF YOU DO, I WILL DO IT, BUT WE ARE GOING TO DO

12      IT LIVE IN MY CONFERENCE ROOM.  WE ARE GOING TO DO IT LIVE IN

13      MY COURT.  YOU ALL ARE GOING TO BE DOWN THE HALL IN A

14      CONFERENCE ROOM.

15              MS. BONN:  THANK YOU, YOUR HONOR.

16              THE COURT:  OKAY.  ALL RIGHT.

17          LET'S TURN TO CALHOUN, PLEASE.

18              THE CLERK:  CALLING CASE 20-CV-5146.  CALHOUN, ET AL.

19      VERSUS GOOGLE, LLC.

20          COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD,

21      BEGINNING WITH PLAINTIFF.

22              MR. STRAITE:  GOOD AFTERNOON, YOUR HONOR.

23          THIS IS DAVID STRAIT, WITH THE LAW FIRM OF DICELLO LEVITT

24      GUTZLER FOR PLAINTIFFS.

25          JOINING ME TODAY IS MY ASSOCIATE SHARON CRUZ.  I DON'T
```

1       BELIEVE SHE'S EVER ARGUED BEFORE YOUR HONOR, SHE'S AN

2       ASSOCIATE, JUST JOINED US FROM ILLINOIS A.G.'S OFFICE.  AND

3       WITH YOUR PERMISSION, SHE MAY BE ARGUING ONE ISSUE TODAY,

4       CONSISTENT WITH OUR DIRECTIVE TO GIVE OPPORTUNITIES TO YOUNG

5       LAWYERS.

6            ALSO JOINING ME TODAY IS LESLEY WEAVER FROM BLEICHMAR

7       FONTIIN OAKLAND.  ALSO HER ASSOCIATE, JOSH SAMRA.

8            ALSO JOINING ME IS JAY BARNES FROM SIMMONS HANLY CONROY.

9       JOINING HIM ALSO IS AN TRUONG FROM HIS NEW YORK OFFICE.

10           DID I MISS ANYBODY, JAY OR LESLEY?

11               MS. WEAVER:  NO.  WELL DONE, MR. STRAITE.

12               THE COURT:  IT LOOKS LIKE WE'VE GOT EVERYBODY.

13      WELCOME ALL.

14           MR. SHAPIRO, GOOGLE'S APPEARANCES.

15               MR. SCHAPIRO:  SAME CAST OF CHARACTERS, IF THAT WORKS

16      FOR THE COURT REPORTER.  WE ARE HAPPY TO DO IT AGAIN IF

17      THERE'S -- IF IT'S BETTER FOR THE TRANSCRIPT.

18               THE COURT:  WE WILL NOTE FOR THE RECORD IT IS THE

19      SAME COUNSEL FOR GOOGLE AS MADE THEIR REPRESENTATIONS IN BROWN.

20           IN THE INTEREST OF TIME AND THE ZOOM FORMAT, WE WILL MOVE

21      FORWARD.

22           OKAY.  IN CALHOUN, I HAVE FOUR DISPUTES THAT WERE

23      IDENTIFIED BY THE PARTIES.  AGAIN, I HAVE BEEN -- WHERE

24      HELPFUL, I HAVE CONFERRED WITH THE SPECIAL MASTER, BECAUSE

25      THERE IS SOME OVERLAP HERE.

1      SO LET'S START.  LET'S TURN TO DISPUTE 1.15, WHICH

2   ADDRESSED TRANSMISSIONS TO GOOGLE.COM AND GOOGLE API'S.

3      NOW LET ME BE VERY CLEAR, IN ADDRESSING THESE ISSUES, THAT

4   WE ARE NOT REARGUING OR RECONSIDERING PREVIOUS DISCOVERY ORDERS

5   OF THIS CASE.  OBVIOUSLY WE HAVE ALL BEEN HARD AT WORK ON

6   DISCOVERY IN THIS CASE FOR NOW, A YEAR, AND MY ORDERS STAND ON

7   THEIR OWN AS ISSUED, AND THEY CERTAINLY REFLECT THIS COURT'S

8   RULINGS AT THAT RESPECTIVE POINT IN TIME.

9      FURTHER, MY ORDERS ARE THE STARTING PLACE -- WERE THE

10  STARTING PLACE FOR THE SPECIAL MASTER WHO, ALONG WITH

11  MR. SCHMIDT, HAS WORKED HUNDREDS OF HOURS ON THIS CASE AND

12  HUNDREDS OF HOURS WITH THE PARTIES, MOST OF THAT TIME BEING

13  WITH THE PARTIES, TO DEVELOP AND EXECUTE A PROCESS OF

14  IDENTIFYING, COLLECTING AND PRODUCING, POTENTIALLY RELEVANT

15  DATA, ALL OF COURSE WITH AN EYE TO PROPORTIONALITY, AS

16  APPROPRIATE IN THIS ACTION.

17     AS I SAID, I CONFER WITH THE SPECIAL MASTER FREQUENTLY,

18  I'M KEPT UP-TO-DATE ON THE DISPUTES IN FRONT OF HIM AND THE

19  PROGRESS THAT IS AND AT TIMES IS NOT BEING MADE, AND I HAVE A

20  HIGH DEGREE OF CONFIDENCE IN THE PROCESS AS WE WORKED THROUGH

21  IT THIS YEAR, AND OF COURSE SPECIFICALLY THE PROCESS REFLECTED

22  IN THE NOVEMBER 12TH ORDER IS ONE THAT I HAVE A HIGH DEGREE OF

23  CONFIDENCE IN.

24     NOW THERE'S AN UNDERCURRENT HERE OF ISSUES RELATING TO

25  RELEVANCY, AND RELEVANCY FOR DISCOVERY, OF COURSE, IS QUITE

1    BROAD, AND IT'S HARD TO DRAW LINES HERE AS TO -- WELL, IN ANY

2    GIVEN DATA SOURCE, WHAT IS THEIR RELEVANT DATA OR WHAT IS THE

3    RELEVANT DATA, BECAUSE IT'S UNKNOWN EXACTLY WHAT IS IN THE

4    SOURCE.  AND THAT'S ALL PART OF THE PROCESS OF UNPACKING THAT,

5    IS WHAT IS BEFORE THE SPECIAL MASTER.

6         SO ANY RULING I MAKE HERE IN RESPONSE TO THIS DISPUTE

7    TODAY IS WITHOUT PREJUDICE TO GOOGLE ARGUING RELEVANCY OF DATA

8    THAT IS PRODUCED AS IT APPEARS OR FOR THE PURPOSES OF EXPERT

9    REPORTS OR FOR USE AT TRIAL.

10        AGAIN, BECAUSE IT'S PRODUCED IN DISCOVERY, DOESN'T MEAN --

11   YOU ARE NOT TAKING AWAY ANYTHING, IN TERMS OF ARGUMENTS, AS TO

12   THE USE OF THAT INFORMATION LATER IN THE CASE.

13        SO THAT'S -- YOU KNOW, WE'RE AT A POINT WHERE WE HAVE TO

14   GET MATERIAL PRODUCED OUT OF THESE DATA SOURCES.  I'M ALSO

15   MINDFUL, HOWEVER, AS WE HAVE DISCUSSED SEVERAL TIMES, THAT THE

16   PROCESS, AGAIN, PARTICULARLY THE PROCESS REFLECTED IN THE

17   NOVEMBER 12TH ORDER, IS DESIGNED TO FUNNEL AND TO NARROW, GET

18   MORE NARROW AS WE MOVE THROUGH DISCOVERY.

19        AND OBVIOUSLY THERE'S TENSION THERE.  BUT HAVING READ

20   THROUGH THE ISSUES PRESENTED IN THIS DISPUTE, PARTICULARLY IN

21   1.15, AND HAVING DISCUSSED THE ISSUE WITH SPECIAL MASTER BRUSH,

22   WHAT APPEARS TO ME TO BE THE PRUDENT WAY FORWARD AT THIS POINT

23   IS FOR GOOGLE TO SEARCH THE GAIA KEY DATA ACROSS ZWIEBACK

24   ██████ AND ZWIEBACK ██████ WITHOUT LIMITATION.  SEARCH THAT,

25   PRODUCE THAT DATA, AND THEN WE WILL -- THERE MAY BE OTHER

```
 1      ISSUES WITH REGARDS TO RELEVANCY DOWN THE ROAD, BUT LOOKING AT

 2      MY ORDERS AND LOOKING AT THE PROCESS AS IT HAS EVOLVED IN FRONT

 3      OF THE SPECIAL MASTER, THAT IS WHERE WE ARE.

 4              MR. STRAITE:  THANK YOU, YOUR HONOR.

 5          DAVID STRAIGHT FOR PLAINTIFFS.  AND JUST TO CONFIRM,

 6      BECAUSE YOU MENTIONED ZWIEBACK ███████  YOU SAID GAIA KEY, DID

 7      YOU ALSO MEAN BISCOTTI KEY AND ZWIEBACK KEY, THOSE WOULD BE THE

 8      DATA SOURCES THAT WOULD CONTAIN THE ZWIEBACK KEY DATA, SO JUST

 9      TO CLARIFY YOU DID SAY GAIA.

10              THE COURT:  YOU SAID BISCOTTI KEY AND ZWIEBACK KEY?

11              MR. STRAITE:  CORRECT.

12          SO THE DATA SOURCES YOU MENTIONED ARE THE DATA SOURCES

13      LIKELY CONTAIN THE ZWIEBACK DATA.  YOU HAD SAID GAIA KEY

14      INFORMATION IN ZWIEBACK ██████   SO WE JUST WANTED TO CLARIFY

15      THAT YOU MEANT GAIA, BISCOTTI, OR ZWIEBACK KEY DATA IN THOSE

16      DATA SOURCES YOU MENTIONED, WHICH WOULD MAKE MORE SENSE.

17              THE COURT:  LET ME ASK THE SPECIAL MASTER FOR

18      CLARIFICATION, BECAUSE I DEVELOPED THIS AND DID NOT RUN IT BY

19      HIM.

20              MR. BRUSH:  YES, YOUR HONOR.

21          WHAT MR. STRAITE IS RECOMMENDING WOULD BE APPROPRIATE.

22              THE COURT:  OKAY.  SO IT'S GAIA KEY, BISCOTTI KEY AND

23      ZWIEBACK KEY DATA, IN THOSE TWO DATA SOURCES, BEING ZWIEBACK

24      ██████  AND ZWIEBACK ████

25              MR. STRAITE:  CORRECT.
```

1          THE COURT:  IS THAT RIGHT?

2          MR. BRUSH:  YES.

3          THE COURT:  ALL RIGHT.  HANG ON, ONE AT A TIME.

4      OKAY.  WHO ELSE FROM -- WAS THERE ANOTHER COMMENT FROM

5  PLAINTIFFS?

6          MR. STRAITE:  I THINK WE HAD ALSO DISCUSSED WITH

7  SPECIAL MASTER BRUSH THE █████ DATABASE, THAT STANDS FOR DOUBLE

8  CLICK.

9          JAY, DO YOU WANT TO SPEAK TO THOSE?  I KNOW THAT CAME UP

10  IN TODAY'S CONFERENCE.  THAT WOULD BE CONSISTENT WITH WHAT YOU

11  ARE TALKING ABOUT.

12          MR. BARNES:  RIGHT.

13      JUDGE VAN KEULEN, IT'S █████ AND THEN THERE'S DATA IN

14  █████ THAT IS GAIA KEYED, ZWIEBACK KEYED AND DOUBLE KEYED.

15  AND THAT'S THE -- YOU SAID ZWIEBACK █████ BUT THAT'S SORT

16  OF -- █████ IS -- THERE'S █████ AND THEN THERE'S ZWIEBACK

17  KEY, GAIA KEY AND ZWIEBACK KEY, ALL WITHIN █████

18          THE COURT:  OKAY.  THAT'S NOT HOW I WAS READING THE

19  SUBMISSIONS BETWEEN THE PARTIES.

20      MR. BRUSH?

21          MR. BRUSH:  I THINK THE WAY MR. BARNES SUGGESTS --

22  THE ORDER OF OPERATIONS OF WORDS WAS ACCURATE, AND THE BEST WAY

23  TO INTERPRET THAT VERSES SOME OF THE OTHER PRIOR SUBMISSIONS,

24  THE WAY THAT IT WAS JUST EXPLAINED, WAS MEANINGFUL AND HELPFUL,

25  BECAUSE █████ BEING THE LARGER SET, AND WE ARE TALKING ABOUT

```
 1        THE SPECIFIC SUBSETS OF THAT DATA.

 2              THE COURT:  WELL, IT'S THE PLAINTIFFS WHO USE THE

 3        PHRASE ZWIEBACK █████   AND ZWIEBACK ██   WHICH IS WHERE I WAS

 4        FOCUSED.

 5              MR. BARNES:  AND YOUR HONOR, I THINK THE REASON FOR

 6        THAT IS THE OBJECTION TO ZWIEBACK.  THERE'S NOT BEEN THE SAME

 7        SORT OF OBJECTIONS TO DOUBLE AND GAIA.

 8         SO THAT'S, I THINK THAT'S -- THAT'S WHY OUR FOCUS WAS ON

 9        ZWIEBACK, IS BECAUSE THERE'S BEEN THIS RECURRING DISPUTE THAT I

10        THINK THE SPECIAL MASTER CAN ATTEST TO, ABOUT ZWIEBACK.  HE'S

11        HEARD THE WORD ZWIEBACK MORE TIMES THAN I THINK HE WOULD LIKE

12        TO SAY, AND THAT'S WHY I THINK THAT OUR FOCUS WAS ON ZWIEBACK.

13              THE COURT:  ALL RIGHT.

14         I WANT US TO BE CLEAR, BECAUSE I WILL GIVE GOOGLE A CHANCE

15        TO RESPOND.

16         BUT MR. BRUSH, YOU ARE GOING TO HAVE TO CLARIFY THEN

17        BECAUSE I -- IT'S A DIFFERENT VOCABULARY THAN I WAS USING.

18              MS. TREBICKA:  WELL, MAYBE IF MR. --

19              THE COURT:  HANG ON ONE SECOND, LET ME HEAR FROM

20        SPECIAL MASTER BRUSH, AND THEN DON'T WORRY, MS. TREBICKA.

21              MR. BRUSH:  ZWIEBACK ████   GAIA ████   AND DOUBLE

22        CLICK ████   OR ██████   ARE THE DATA SOURCES THAT WE WANT TO

23        SEARCH -- WE WANT TO HAVE SEARCHED WITH PLAINTIFFS'S SEARCH

24        TERMS.

25              THE COURT:  SAY THOSE AGAIN, MR. BRUSH, I WANT TO BE
```

```
1    SURE THEY ARE CLEAR ON THE RECORD.  YOU WERE A LITTLE MUFFLED.

2              MR. BRUSH:  YEAH.

3         AND I'M TRYING TO THINK, SO ZWIEBACK ████  GAIA ████

4    AND DOUBLE CLICK ARE THE DATA SOURCES TO BE SEARCHED WITH THE

5    PLAINTIFF SUPPLIED SEARCH CRITERIA.

6              THE COURT:  ZWIEBACK ████  GAIA ████

7              MR. BRUSH:  AND ████  WHICH IS THE DOUBLE CLICK ████

8    ████

9              THE COURT:  ALL RIGHT.

10             MR. BARNES:  AND ████  SPECIAL MASTER BRUSH, WHICH

11   THERE'S THIS RELATIONSHIP BETWEEN ██  AND ████  RIGHT.

12        I THINK -- JUDGE VAN KEULEN, I THINK YOU MENTIONED ██

13   EARLIER AS WELL.  SPECIAL MASTER BRUSH, I DON'T KNOW IF YOU --

14             THE COURT:  I DID, BUT I HAD IT IN A DIFFERENT

15   CONTEXT.  JUST A MINUTE, MR. BARNES, JUST A MINUTE.

16        MR. BRUSH?

17             MR. BRUSH:  YES.  ALTHOUGH WE THOUGHT THAT HAD BEEN

18   SEARCHED.  BUT IF THERE'S SOMETHING MISSING IN THAT, I WOULD

19   LIKE TO HEAR THAT NOW.

20             MR. BARNES:  WE THINK GAIA AND DOUBLE ██ HAVE BEEN

21   SEARCHED, IS OUR UNDERSTANDING, BUT IT HASN'T BEEN SEARCHED FOR

22   ZWIEBACK.  THAT'S OUR UNDERSTANDING.

23        THERE WAS GAIA ██ THERE WAS DOUBLE ██ BUT THERE WAS NOT

24   ZWIEBACK ██ BECAUSE WE HAD THIS BIG FIGHT OVER ZWIEBACK.

25             THE COURT:  SO MR. BARNES, YOU ARE IDENTIFYING FOUR
```

1       DATA SOURCES THEN?

2              MR. BARNES:  WELL, YOUR HONOR, WE WOULD SAY THAT

3       THERE ARE TWO.  THERE'S ███████  AND THERE'S ████  AND THERE ARE

4       DIFFERENT KEY SPACES WITHIN THOSE DATA SOURCES, AND THE KEY

5       SPACES ARE ZWIEBACK, GAIA, DOUBLE.  ON BOTH OF THEM, RIGHT.

6              AND SO ██████  WE HAVE ASKED FOR PRODUCTION OF GAIA,

7       DOUBLE AND ZWIEBACK.  ████  WE PREVIOUSLY RECEIVED PRODUCTION OF

8       GAIA, AND DOUBLE, BUT NOT ZWIEBACK.

9              THE COURT:  OKAY.

10             ALL RIGHT.  MS. TREBICKA?

11             MS. TREBICKA:  YES, YOUR HONOR.

12       I WILL TRY TO DO MY BEST, BECAUSE IT SEEMS A LITTLE BIT OF

13       A MOVING TARGET IN THE SENSE THAT IT'S NOT EXTREMELY CLEAR

14       WHERE WE ARE HEADED.

15             WHAT WE HAD INITIALLY THOUGHT FROM THE E-MAIL THAT THE

16       SPECIAL MASTER SENT US THIS WEEKEND WAS THAT THE DISCUSSION, AT

17       LEAST, WAS RELATED TO THREE KEY VALUE SPACES, ZWIEBACK, GAIA,

18       AND DOUBLE CLICK, WITH RESPECT TO ██████

19             SO I WILL ADDRESS THAT FIRST, AND THEN WE CAN GO TO THE

20       SECOND PART OF THIS WHICH IS REALLY SOMETHING NEW THAT WE WILL

21       HAVE TO DIGEST AND PROBABLY ADDRESS SEPARATELY.

22             BUT FOR DOUBLE CLICK ██████  AND DOUBLE CLICK IS THE

23       COOKIE THAT RELATES TO THE DISPLAY ADS INFRASTRUCTURE THAT IS

24       THE CORE OF THE CASE, REALLY, WE CAN AGREE TO SEARCH DOUBLE

25       CLICK ██████  AND IT'S GOING TO BE A BIG UNDERTAKING, BUT WE

1    WILL DO IT.

2         THE CONCERN THAT WE HAVE IS WITH ZWIEBACK ███████ AND GAIA

3    ███████ ZWIEBACK ███████ HAS ████ COLUMNS, AND GAIA ███████ HAS

4    ████ SEPARATE COLUMNS.

5         AND LET ME JUST BRIEFLY EXPLAIN IN LAYMAN'S TERMS WHAT A

6    COLUMN IS. ████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ███████ SO IT'S NOT JUST THE COLUMN, WHEN YOU THINK OF IT AS

10   AN EXCEL SPREADSHEET, IT'S ACTUALLY MUCH, MUCH MORE COMPLICATED

11   THAN THAT.

12             THE COURT:  RIGHT.

13             MS. TREBICKA:  AND THESE TWO DATABASES, ARE NOT

14   LIMITED TO ADS, THEY INCLUDE THINGS LIKE GOOGLE ASSISTANT OR

15   GOOGLE PLAY, GOOGLE PAYMENT --

16             THE COURT:  UNDERSTOOD, YEAH.

17             MS. TREBICKA:  -- ET CETERA.

18        SO MY POINT IS THAT EACH OF THESE PRODUCTS ARE DIFFERENT

19   ENOUGH THAT THEY HAVE DIFFERENT TEAMS MANAGING THEM AND ALSO

20   CONTROLLING THE ACCESS TO THESE.  THEY CONTAIN EXTREMELY

21   SENSITIVE DATA.  AND THE REASON THAT THERE IS THIS, ESSENTIALLY

22   LOCK ON THESE SEPARATE COLUMNS, WHICH ARE REALLY ALMOST LIKE

23   SEPARATE DATABASES, RIGHT, WITH A LOT OF INFORMATION, IS

24   BECAUSE GOOGLE IS UNDER VARIOUS OBLIGATIONS TO KEEP THESE UNDER

25   LOCK AND KEY FROM REGULATIONS, CONSENT DECREES, LAWS, DIFFERENT

```
 1          STATES, FEDERAL LAWS, ET CETERA.  AND THERE IS NO ONE MASTER

 2          KEY THAT WILL ALLOW GOOGLE TO ACTUALLY SEARCH THIS IN ANY

 3          EFFICIENT WAY, FOR MANY REASON, INCLUDING BECAUSE OF THESE

 4          DIFFERENT ACCESS POINTS OR THESE DIFFERENT ACCESS PERMISSIONS

 5          THAT NEED TO BE OBTAINED.  AND THIS IS FOR GOOD REASON.

 6               AND I WOULD LIKE TO PUT, JUST BECAUSE IT'S A VERY

 7          COMPLICATED ISSUE, I WOULD JUST LIKE TO PUT IT IN SIMPLE TERMS,

 8          IT'S ALMOST LIKE ASKING SOMEONE TO SEARCH FOR THE WORD

 9          "SUBMARINE" THROUGH ALL COURT RECORDS EVER, STATE, FEDERAL,

10          WHEREVER IT IS, AND SOMEONE WHO HAS THE TASK OF DOING THIS WILL

11          HAVE TO GO TO THE JUVENILE RECORDS DEPARTMENT OR THE CRIMINAL

12          RECORDS OR CHILD WELFARE, WHATEVER, AND GET THE PERMISSION TO

13          SEARCH THAT KIND OF A DATABASE FOR THE WORD "SUBMARINE" IN THE

14          OFF CHANCE THAT THE WORD "SUBMARINE" WILL APPEAR IN THOSE TYPES

15          OF COLUMNS.

16               IT'S JUST NOT -- THE RESULTS ARE VERY LIKELY GOING TO BE

17          NONE, BUT THE BURDEN ASSOCIATED WITH GETTING THOSE PERMISSIONS,

18          WHICH ARE THERE FOR A VERY, VERY GOOD REASON --

19               THE COURT:  I UNDERSTAND THAT -- I GET THE PICTURE,

20          MS. TREBICKA.

21               YOU SAID THERE WAS ANOTHER ISSUE OUTSIDE OF █████

22               MS. TREBICKA:  YES.  AND THAT ISSUE IS ██

23               BUT WE DID HAVE A PROPOSAL, YOUR HONOR, IF YOU WILL BEAR

24          WITH ME.  AND OUR PROPOSAL IS WE HAD A VERY, VERY HELPFUL AND

25          EFFICIENT MEETING AND THE SPECIAL MASTER TODAY, AND I THANK HIM
```

```
 1        FOR HIS TIME, IT INCLUDED GOOGLE EXPERTS AND PLAINTIFF'S

 2        EXPERTS.  THE LAWYERS BARELY TALKED, WHICH I THOUGHT WAS

 3        ACTUALLY A VERY GOOD THING, WE GOT A LOT DONE.

 4            MY PROPOSAL IS, OR OUR PROPOSAL IS TO LET THIS BE

 5        DISCUSSED IN THESE MEETINGS SO THAT WE ARE NOT UNDER AN

 6        OBLIGATION TO SEARCH ███ COLUMNS WHICH WILL TAKE WEEKS, I

 7        WANT TO SAY, BUT IT COULD ALSO BE MONTHS TO GET THOSE DUCKS IN

 8        A ROW TO BE ABLE TO GET IT DONE.  AND FOR WHAT REASON?  TO

 9        SEARCH SOMETHING WHERE THE RESULTS WILL ACTUALLY BE AN NULL

10        SET.

11            SO I WOULD RESPECTFULLY REQUEST THAT YOUR HONOR CONSIDER

12        THIS, ESPECIALLY IN LIGHT OF THE CONFUSION IN THE BEGINNING OF

13        THE HEARING AS TO WHAT IS GOING TO BE SEARCHED AND FOR WHAT

14        REASON, ET CETERA.  I FEEL LIKE THIS IS SOMETHING THAT REALLY

15        SHOULD BE DISCUSSED WITH A LOT MORE EXPERTS INVOLVED, UNDER THE

16        GUIDANCE OF THE SPECIAL MASTER.

17                MR. STRAITE:  MAY WE RESPOND QUICKLY?

18                THE COURT:  NOT YET.

19            AND MS. TREBICKA, WHAT'S YOUR POINT WITH REGARD TO ██

20        THAT THAT HASN'T BEEN SEARCHED AT ALL?

21                MS. TREBICKA:  NO, ██ -- YOUR HONOR, I WILL START, I

22        MAY HAVE TO DEFER TO MY COLLEAGUE, MR. ANSORGE, BUT ██ HAS BEEN

23        SEARCHED, IS MY UNDERSTANDING, FOR GAIA AND DOUBLE CLICK.

24            AS FAR AS ZWIEBACK, WHICH IS THE COOKIE THAT'S ENTIRELY

25        RELATED TO GOOGLE SEARCH ONLY, WHICH IN OUR VIEW IS IRRELEVANT,
```

```
 1      I BELIEVE THAT HAS NOT BEEN ON THE TABLE AND HAS NOT EVEN BEEN
 2      REQUESTED.  SO MY UNDERSTANDING IS THAT IT'S SOMETHING WE AT
 3      LEAST NEED TO PUT SOME MORE THOUGHT TO AND DISCUSS WITH THE
 4      SPECIAL MASTER BEFORE CONSIDERING NEXT STEPS.
 5           THE COURT:  OKAY.
 6      I WILL TAKE YOUR PROPOSAL UNDER CONSIDERATION.  I WILL
 7      CONFER FURTHER WITH SPECIAL MASTER BRUSH AFTER TODAY'S HEARING,
 8      BUT I'M NOT KICKING BACK TO HIM, WE ARE HERE TODAY TO GET THIS
 9      ISSUE RESOLVED, AND THE TIME TO GET THIS ISSUE RESOLVED IS NOW.
10           WE ARE AT THE END, LADIES AND GENTLEMEN, WE ARE AT THE
11      END.  SO I WILL TAKE THE ARGUMENTS PRESENTED TODAY UNDER
12      SUBMISSION AND I WILL ISSUE AN ORDER.
13           MS. TREBICKA:  THANK YOU, YOUR HONOR.
14           MR. STRAITE:  THANK YOU, YOUR HONOR.
15           THE COURT:  LET'S TURN TO 1.21 WHICH RELATES TO
16      30(B)(6) DEPOSITIONS.
17           MR. STRAITE:  THANK YOU, YOUR HONOR.  AND MS. WEAVER
18      WILL BE ARGUING THIS ISSUE.
19           THE COURT:  THANK YOU.
20      ALL RIGHT.  WELL, THIS SOUNDS LIKE THAT THERE ARE SPECIFIC
21      CATEGORIES THAT ARE IN DISPUTE.  IT SOUNDS LIKE THE PARTIES
22      NEED TO MEET AND CONFER ON VARIOUS SPECIFIC ISSUES, UNLESS
23      THERE'S BEEN SOME PROGRESS SINCE THE CHART WAS SUBMITTED.
24      MS. WEAVER?
25           MS. WEAVER:  YES.  THANK YOU, YOUR HONOR.
```

1        I THINK THE PARTIES DO NEED TO MEET AND CONFER.  GOOGLE

2    WROTE IN ITS CHART THAT IT HAS OFFERED US DATES, BUT GOOGLE HAS

3    NOT.  AND OBVIOUSLY WE HAVE THE SIMILAR PROBLEM, THIS IS

4    PULLING THE THREAD A BIT, YOUR HONOR, WE HAVE -- WE'VE NOTICED

5    FOUR OTHER 30(B)(1) WITNESSES, BUT KNOWING WHO GOOGLE WILL

6    IDENTIFY AND WHERE THEY COME OUT ON THE 30(B)(6) HAS REALLY

7    FRUSTRATED OUR ABILITY TO IDENTIFY ADDITIONAL WITNESSES, AS WE

8    ARE STRUGGLING TO WORK WITHIN THE CAP.

9        SO WE WOULD BE HAPPY TO MEET AND CONFER WITH GOOGLE.

10   WE'VE TRIED ON A NUMBER OF OCCASIONS, AND WE WILL APPEAR IN

11   PERSON, IN YOUR -- DOWN THE HALL FROM YOU, WHATEVER IT TAKES,

12   BECAUSE IT DOES HAVE TO GET DONE AND WE DO WANT TO TAKE THESE

13   DEPOSITIONS.

14       THERE ARE CERTAIN TOPICS THAT THEY DID NOT PRODUCE ANY

15   DATES FOR, THE ONLY DATE THEY OFFERED WAS FOUR DAYS BEFORE THE

16   30(B)(1) DEPOSITION OF THIS WITNESS, THEY TOLD US THAT HE WAS

17   THEIR 30(B)(6) DESIGNEE, AND WE WEREN'T PREPARED AT THE TIME,

18   AND WE OFFERED TO MEET AND CONFER.

19           THE COURT:  LET ME ASK YOU THIS, MS. WEAVER.  ARE

20   THERE DISPUTES ABOUT THE SCOPE OF TOPICS, 30(B)(6) CATEGORIES,

21   IS THAT A DISPUTE?

22           MS. WEAVER:  IT'S UNCLEAR TO US, BECAUSE WE GOT A

23   NOTICE, AND HERE GOOGLE IS SAYING THEY OFFERED US DATES, SO I

24   GATHER THEY HAVE SOME OBJECTIONS, BUT THEY HAVEN'T TOLD US WHAT

25   THEY ARE IN ANY MEET AND CONFER.  WHEN WE SPOKE LAST THURSDAY,

1    THEY JUST SAID THEY WOULD OFFER US DATES.

2         THE COURT:  OKAY.  SO IN ADDITION -- SO, ALL RIGHT.

3    SCOPE OF 30(B)(6) NOTICE FROM PLAINTIFF'S POINT OF VIEW,

4    STATUS IS UNKNOWN, THAT IS WHETHER OR NOT THERE'S A DISPUTE.

5    AND YOUR FURTHER CONCERN IS WHO IS TESTIFYING ON WHAT

6    DATES?  WHO ARE THE WITNESSES AND ON WHAT DATES AS TO WHAT

7    CATEGORIES?

8         MS. WEAVER:  YES, EXACTLY.

9    AND ONE OTHER CONCERN, YOUR HONOR, IS THE CAP, BECAUSE --

10        THE COURT:  OKAY.  WELL, WE CAN'T ADDRESS THE CAP

11   UNTIL WE GET TO THESE OTHER ISSUES.

12        MS. WEAVER:  EXACTLY.

13        THE COURT:  ALL RIGHT.

14   SO WHO HAS GOT THIS FOR GOOGLE TODAY, WOULD THAT BE YOU

15   MS. JENKINS?

16        MS. JENKINS:  YES, THAT IS ME.

17   I WOULD JUST LIKE TO START THAT THAT IS INCORRECT.  WE

18   HAVE SERVED RESPONSES AND OBJECTIONS TO THEIR 30(B)(6) NOTICE

19   WHICH STATED WHICH TOPICS WE WOULD BE PROVIDING A WITNESS FOR

20   AND WHERE WE WERE NARROWING THE SCOPE OF THE TOPICS BECAUSE WE

21   THOUGHT THAT IT WAS BEYOND WHAT WAS RELEVANT TO THE CASE.  IT

22   WAS ALSO NOTED IN THOSE RESPONSES AND OBJECTIONS --

23        THE COURT:  WHEN WERE THOSE OBJECTIONS SERVED,

24   MS. JENKINS?

25        MS. JENKINS:  THEY WERE SERVED ON FEBRUARY 16TH.

1          THE PLAINTIFFS DIDN'T SERVE THEIR 30(B)(6) NOTICE UNTIL

2     JAN 14TH.  WE MET AND CONFERRED WITH THEM ON FEBRUARY 1ST AND

3     DISCUSSED SOME OF THE ISSUES THAT WE HAD WITH THEIR TOPICS AND

4     THEN SERVED THE RESPONSES AND OBJECTIONS ON THE 16TH.

5          ON THE 14TH, WE ACTUALLY PROVIDED THEM WITH SOME

6     INFORMATION IN ADVANCE OF OUR TOPICS, BECAUSE WE WERE OFFERING

7     DR. REISINGER, ONE OF THE DEPONENTS WHO WAS BEING -- HE WAS SET

8     FOR A DEPOSITION AS A 30(B)(1) WITNESS, AND SO FOR TWO TOPICS

9     THAT THEY HAD PROVIDED ON THE 14TH, WE GAVE THEM THE EXTENT OF

10    THOSE TWO TOPICS THAT WE WOULD PROVIDE A WITNESS, AND WE

11    DESIGNATED DR. EISINGER TO BE THE WITNESS ON THOSE TWO TOPICS.

12    AND THE PLAINTIFFS REFUSED THAT DESIGNATION AND REFUSED TO TAKE

13    THAT DEPOSITION AS A 30(B)(6) DEPOSITION.  AND WE THINK THAT

14    THE PLAINTIFFS HAVE NOW FOREGONE THE ABILITY TO GAIN 30(B)(6)

15    TESTIMONY ON THOSE TWO TOPICS.

16         THE REASON THAT THEY PROVIDED TO US FOR NOT WANTING TO

17    TAKE THESE 30(B)(6) DEPOSITIONS, PARTICULARLY FOR DR. EISINGER,

18    IS THAT HE IS A GERMAN EMPLOYEE OF GOOGLE.

19         AND AS YOUR HONOR KNOWS, WE HAVE BEEN HAVING TO USE THE

20    HAGUE CONVENTION TO HAVE DEPOSITIONS OF FOREIGN DEPONENTS.  WE

21    HAD GONE THROUGH THE HAGUE CONVENTION FOR DR. EISINGER, AND HAD

22    SET UP HIS DEPOSITION, AND THEY SAID THAT THAT WOULD BE OKAY

23    FOR A 30(B)(1) DEPOSITION BUT NOT FOR A 30(B)(6) DEPOSITION.

24    WE REPEATEDLY ASKED THEM FOR ANY CASE LAW THAT WOULD SUPPORT

25    THAT POSITION, BUT THEY DIDN'T PROVIDE US WITH ANY.

1          THE COURT:  OKAY.  THANK YOU, MS. JENKINS.  I GET IT.

2     THERE ARE DISPUTES ABOUND, ALL FRONTS, IT SOUNDS LIKE.  AND

3     THAT IS UNFORTUNATE AT THIS LATE DATE, AND ESPECIALLY AS ALWAYS

4     HAPPENS.

5          AND AGAIN, WITH EXPERIENCED COUNSEL, YOU ALL ARE WELL

6     AWARE OF THIS, WHEN YOU COME DOWN TO THE END OF DISCOVERY THERE

7     IS ALWAYS A GREAT FLURRY AS BETWEEN 30(B)(1), 30(B)(6), DATES,

8     TIMES, DOCUMENTS, ET CETERA.

9          SO THIS IS WHAT'S GOING TO HAPPEN IS AT THE CONCLUSION OF

10    THE HEARING TODAY, THERE WILL BE AN IN-PERSON MEET AND CONFER

11    BETWEEN PLAINTIFF AND DEFENDANTS.  YOU CAN DO THAT BY VIDEO,

12    BUT THIS WILL NOT BE BY E-MAIL OR BY PHONE, IT WILL BE EITHER

13    IN PERSON OR BY VIDEO CONFERENCE.

14         AND YOU WILL -- AND THE PARTICIPANTS IN TODAY'S MEET AND

15    CONFER ARE THOSE WHO HAVE THE AUTHORITY TO NEGOTIATE AND TO

16    AGREE TO NEGOTIATE AND AGREE AS TO COMPROMISES.

17         AND YOU ARE GOING TO GET THIS WORKED OUT, AND YOU ARE

18    GOING TO GET THIS SET.  AND IF YOU CAN'T DO THAT, THEN YOU WILL

19    BE BEFORE ME, AND WHETHER THAT'S TOMORROW OR THURSDAY, WILL

20    DEPEND ON WHAT HAPPENS ON OUR NEXT ISSUE.

21         BUT AS FOR SCOPE OF DEPOSITION, AND I APPRECIATE OBVIOUSLY

22    THERE ARE DIFFERENCES IN THE CALHOUN AND BROWN CASES, BUT IN

23    BROWN, THE PLAINTIFFS BROUGHT THIS 30(B)(6) SCOPE ISSUE TO ME

24    AS A SEPARATE DISPUTE.  I REVIEWED THAT, I RULED ON IT, AND I

25    ALSO MADE RULINGS RELATING TO DESIGNATING OTHER TESTIMONY.  SO

```
 1     THAT SHOULD BE INFORMATIVE AND INSTRUCTIVE TO THE PARTIES, AT

 2     LEAST IN PART AS TO MY APPROACH ON THIS.

 3          SO YOU ALL WILL MEET AND CONFER FURTHER, AND IN A MOMENT

 4     WE WILL -- I WILL TELL YOU WHAT THE NEXT STEPS ARE IF YOU ARE

 5     NOT ABLE TO COME TO AN AGREEMENT.  BUT THE TIME IS NOW, THIS IS

 6     GOING TO GET RESOLVED AND THESE DEPOSITIONS WILL GET TAKEN IN

 7     THE VERY NEAR FUTURE.

 8          LET'S TURN BRIEFLY TO 2.1, WHICH IS WHAT WE TOUCHED ON

 9     SORT OF IN THE BROWN HEARING, WHICH IS GOOGLE'S MOTION FOR A

10     PROTECTIVE ORDER WITH REGARDS TO LOG RETENTION POLICIES.  AND I

11     HAVE A COUPLE OF VERY BASIC QUESTIONS.

12          AGAIN, I'VE BEEN THROUGH THIS ISSUE AND I WON'T REPEAT MY

13     POSITION ON REVISITING ORDERS, I WILL SAY I HAVE CONFERRED WITH

14     THE SPECIAL MASTER ALSO WITH REGARDS TO LOGS THAT HAVE BEEN

15     IDENTIFIED IN THE PROCESS BEFORE HIM.

16          AND MY FIRST QUESTION, MR. SCHAPIRO OR MS. TREBICKA, IS

17     FOR THE ██ LOGS THAT WERE IDENTIFIED IN THE SPECIAL MASTER

18     PROCESS, AND I KNOW THEN THERE'S ANOTHER ██ THAT THAT SET OF

19     ██ IS THERE A LITIGATION HOLD IN PLACE FOR THOSE LOGS?

20          MS. TREBICKA:  NO, YOUR HONOR.

21          THE IDEA BEHIND THE MOTION FOR PROTECTIVE ORDER WAS THAT

22     PUTTING THESE LOGS ON A LITIGATION HOLD WOULD BE ESSENTIALLY

23     IMPOSSIBLE, IT WOULD OVERRUN GOOGLE.

24          THE COURT:  OKAY.  I WANT YOU TO PUT THOSE ON A

25     LITIGATION HOLD AS TO THOSE ██ FOR NOW, SAME THING WITH THE ██
```

1    LOGS, IT SEEMS THAT WE HAVE BEEN AROUND AND AROUND THIS AND

2    THAT THOSE DATA SETS SHOULD BE PRESERVED.

3          MS. TREBICKA:  YOUR HONOR, THIS WAS THE ISSUE THAT WE

4    LITIGATED IN JANUARY AND WE WON ON, THE MOTION FOR A PROTECTIVE

5    ORDER, ON THE BASIS OF THE BURDEN THAT WE SUBSTANTIATED.

6          SO I GUESS I'M HAVING -- I JUST WANT TO MAKE SURE I

7    UNDERSTAND, IS THIS A LITIGATION HOLD FOR PURPOSES OF THE

8    PLAINTIFF'S DATA SO THAT IT CAN BE MANAGEABLE, OR CAN WE GET

9    SOME CLARIFICATION?

10         THE COURT:  OR UNIVERSAL.

11         MS. TREBICKA:  RIGHT.  WHICH IS NOT POSSIBLE, BUT WE

12   WERE JUST BEFORE YOU IN JANUARY AND I --

13         THE COURT:  I KNOW, I KNOW, I KNOW, THESE ASKS HAVE

14   BEEN FURTHER HONED AND IDENTIFIED THAN JUST WHAT WE WERE

15   DISCUSSING BACK IN JANUARY.

16       MR. BRUSH, WITH REGARDS TO THE ███ YOUR VIEW ON THE -- ON

17   A HOLD THAT IS PRESERVING THE DATA?

18         MR. BRUSH:  MAYBE I WILL ASK THIS BACK TO

19   MS. TREBICKA.

20       I HEAR THAT -- LET ME SEE, I'M JUST THINKING THROUGH THIS,

21   OUT OF THE ███ PLUS ███ ADDITIONAL DATA SOURCES, IS IT -- WHAT

22   WILL BE MORE DOABLE AND AGREEABLE FOR GOOGLE TO DO A SUBSET OF

23   THAT FROM A FIELD LEVEL?  IF THE CONSTRUCT OF THE DATA IS TOO

24   LARGE BECAUSE THE LOGS ARE TOO VOLUMINOUS, WHAT SUBSET ARE YOU

25   ABLE TO PRESERVE TO MEET THE LITIGATION REQUIREMENTS?

```
 1              MS. TREBICKA:  YEAH, THAT'S A GREAT POINT, AND I

 2      WOULD LIKE TO JUST RESURFACE AGAIN FOR EVERYONE, A PRESERVATION

 3      PROPOSAL THAT GOOGLE HAD PROPOSED TO, I BELIEVE IT'S FILED ON

 4      THE DOCKET AS WELL, THAT ADDRESSES PRECISELY THIS ISSUE.

 5              WE HAD A SERIES OF MEET AND CONFERS WITH PLAINTIFFS TO

 6      UNDERSTAND WHAT IT WAS THAT WAS MOST RELEVANT TO THEM, TO THEIR

 7      ABILITY TO PROVE THEIR CASE.  AND ON THE BASIS OF THOSE VERY

 8      EXTENSIVE MEET AND CONFERS, WE CAME TO A PROPOSAL FOR A

 9      PRESERVATION OF CERTAIN DATA.  THIS WAS WITH PLAINTIFF'S INPUT.

10              AND I BELIEVE THAT IS ON THE DOCKET AT -- IT WAS FILED IN

11      AUGUST OF 2021, IT'S DOCKET 293-4.  AND WE THINK THAT'S A VERY

12      GOOD STARTING POINT.  BUT TO ANSWER DIRECTLY THE QUESTION OF

13      THE ███ LOGS, THAT IS PRECISELY THE ISSUE THAT WE LITIGATED AS

14      FAR AS THE MOTION --

15              THE COURT:  I KNOW THAT, MS. TREBICKA, BUT WE ARE

16      MOVING FORWARD, WE ARE MOVING FORWARD.

17              AND WE'VE HAD A NUMBER OF DISCUSSIONS AROUND PRESERVATION,

18      AND TO SPECIAL MASTER BRUSH'S POINT OF, IS THERE A SUBSET OF

19      DATA -- AND I KNOW THAT THE PRESERVATION ISSUES IN PARTICULAR

20      WERE REFERRED TO THE SPECIAL MASTER.

21              MS. TREBICKA:  SO OUR PROPOSAL, YOUR HONOR, AND I

22      THINK IT REALLY ATTEMPTS TO ADDRESS ALL THE CONCERNS THAT

23      PLAINTIFFS HAVE RAISED SO FAR, AS WELL AS ALL THE EXTENSIVE

24      HEARINGS AND OTHER GUIDANCE THAT WE'VE HAD FROM THE SPECIAL

25      MASTER, AND I THINK THAT IS REALLY A VERY GOOD WAY FORWARD, IN
```

1    TERMS OF THE PRESERVATION OF POTENTIALLY RELEVANT DATA.  AND I

2    WOULD LIKE TO HEAR FROM SPECIAL MASTER BRUSH, BECAUSE I DO

3    BELIEVE THAT THIS IS SOMETHING THAT IS WITHIN WHAT WE HAD

4    ENVISIONED AS FAR AS THE PRESERVATION.

5         MR. BRUSH:  YES.  I CAN SPEAK TO THAT.

6         IN THAT SENSE, IS WE ARE REALLY -- IT WAS A MATTER OF

7    TIMING, SO TO SPEAK, AS WE HAVE BEEN GOING THROUGH THIS

8    PROCESS, NOW THAT WE HAVE A VERY GOOD UNDERSTANDING, AND WHAT I

9    HOPE IS A LIGHT AT THE END OF THE TUNNEL OF HOW WE ARE GOING TO

10   COMPLETE THE PROCESS AND THE UNDERSTANDING OF THE DATA SOURCES,

11   THAT WE CAN DEFINE THAT IN A WAY NOW OF HOW WE ARE GOING TO

12   MOVE FORWARD.

13        MY SUGGESTION IS WE HAVE A MEET AND CONFER ON THIS SOONER

14   RATHER THAN LATER, IDEALLY TOMORROW, SO WE CAN GET THIS DOWN ON

15   PAPER, WE CAN GET SOMETHING SUBMITTED AS TO WHAT THE

16   PRESERVATION IS GOING TO LOOK LIKE IN A WAY THAT DOES BALANCE

17   THE NEED OF THE LITIGATION PRESERVATION NEEDS, BUT ALSO IS

18   WITHIN REASONABLE SCOPE OF THE TECHNOLOGY AND CAPABILITIES OF

19   GOOGLE'S TEAM SO WE ARE NOT AGAIN HAVING TO PUT TOO MUCH ON

20   THEM IN A WAY THAT CAN'T BE BENEFICIAL.

21        MS. TREBICKA:  THAT MAKES A LOT OF SENSE TO US,

22   YOUR HONOR.

23        MR. STRAITE:  AND YOUR HONOR, TO MAKE THAT PROCESS

24   WORK, AND WE APPRECIATE THE SPECIAL MASTER TRYING TO FIND A

25   PRESERVATION PROPOSAL THAT COULD WORK, THE ONE THAT'S ON THE

1    DOCKET WON'T WORK, BUT THIS IS A REALLY GOOD IDEA.  THE BEST

2    WAY TO PROCEED, FROM PLAINTIFF'S PERSPECTIVE, WOULD BE TO

3    FINALLY GET PRODUCTION OF THE ALREADY COLLECTED AND IDENTIFIED

4    PLAINTIFF DATA FROM EARLIER IN THE CASE THAT GOOGLE HAS ALREADY

5    PULLED THAT HAS NOT BEEN PRODUCED.

6         WE KNOW THAT ON NOVEMBER 14TH, YOUR HONOR ORDERED THAT

7    GOOGLE PROVIDE AN UNDER OATH DECLARATION THAT IT'S BEEN

8    PRODUCED.  THAT WAS NOT COMPLIED WITH.  INSTEAD, THE GOOGLE

9    EMPLOYEE PUT A DECLARATION ON THE DOCKET, DOCKET 383, THAT SAID

10   IT WAS DONE OR WAS IN PROCESS, AND IT WAS ONLY FOR RELEVANT

11   DATA.

12        SO IT WOULD BE REALLY USEFUL, TO MAKE TOMORROW'S MEET AND

13   CONFER WORK, WOULD BE JUST TO PRODUCE EVERYTHING THAT GOOGLE

14   HAS ALREADY PULLED AND IDENTIFIED FOR THE NAMED PLAINTIFFS, GET

15   THAT PRODUCED, BECAUSE THAT COULD STEER A LOT OF OUR

16   CONVERSATION TOWARD A SENSIBLE COMPROMISE.

17          THE COURT:  WE HAD THIS DISCUSSION A FEW MOMENTS AGO

18   IN BROWN, OR AT LEAST A RELATED DISCUSSION.

19          MR. STRAITE:  EXACTLY.

20        SO IT'S DIFFERENT FOR CALHOUN, BECAUSE FOR CALHOUN WE

21   IDENTIFIED THE NAMED PLAINTIFF IDENTIFIERS IN THE COMPLAINT.

22        SO THAT'S WHY THERE'S A DIFFERENT POSTURE IN THE TWO

23   CASES.  WE HAD ALL THE ID, THE ZWIEBACK IDENTIFIERS AND GAIA,

24   THOSE WERE IN THE SEALED COMPLAINT, THE REDACTIONS, SO I THINK

25   THAT'S WHY GOOGLE HAS ALL THAT DATA FOR OUR PLAINTIFFS.  IT'S A

```
1       GREAT STARTING PLACE, WE DON'T UNDERSTAND WHY IT WASN'T

2       PRODUCED PURSUANT TO YOUR HONOR'S ORDER.  PARAGRAPH 1 OF

3       EXHIBIT 1 THAT RELATES TO CALHOUN IN YOUR ORDER OF

4       NOVEMBER 14TH.

5            SO THAT WOULD BE, LET'S NOT GO BACK, LET'S GO FORWARD, HOW

6       DO WE MAKE TOMORROW'S MEET AND CONFER WORK?  THAT'S THE BEST

7       WAY TO MAKE A COMPROMISED DISCUSSION WORK, IS TO GET THAT DATA

8       PRODUCED.

9            MR. SCHAPIRO:  SO YOUR HONOR, MR. STRAITE IS RIGHT

10      THAT CALHOUN AND BROWN ARE DIFFERENTLY SITUATED IN THIS REGARD.

11      AND SO LET ME ELABORATE ON SOME OF THE THINGS THAT I WAS

12      STARTING TO SAY ABOUT BROWN.

13           THIS WOULD BE A SUBSTANTIAL STEP BACKWARDS, IT WOULD BE

14      HITTING THE RESET BUTTON ON A METHODICAL PROCESS THAT HAS BEEN

15      UNDERWAY FOR SOME MONTHS.  THE PROCESS HAS BEEN, IDENTIFY

16      SOURCES AND PRODUCE DATA, AND FROM THAT, IDENTIFY MORE AND

17      SEARCH AND PRODUCE MORE.

18           AND NOW WHAT'S HAPPENING, I THINK, IS THROUGH THAT

19      PROCESS, THEY DIDN'T FIND WHAT THEY WANTED, SO THEY ARE ASKING

20      FOR WHAT IS ESSENTIALLY A FISHING EXPEDITION IN THE FINAL WEEK

21      OF DISCOVERY, IN LIEU OF THE SPECIAL MASTER.

22           THE COURT:  WELL ACTUALLY, THE REQUEST, MR. SCHAPIRO,

23      AND I APPRECIATE THE ARGUMENT AND --

24           MR. SCHAPIRO:  THANK YOU.

25           THE COURT:  -- AND I UNDERSTOOD IT IN BROWN, BUT
```

1    HERE, AS I UNDERSTAND IT, IT'S, WELL, PLAINTIFF'S SPECIFIC DATA

2    WAS ALREADY IDENTIFIED.  AND, YOU KNOW, MAYBE IT'S HERE, RIGHT,

3    IT'S BEEN IDENTIFIED.  AND AS TO THE NAMED PLAINTIFFS, THAT

4    BLOCK OF INFORMATION CAN BE TURNED OVER SEPARATE FROM ALL OF

5    THE SEARCH AND ITERATIVE SEARCHES AS TO PLAINTIFFS GENERALLY,

6    OR PUTATIVE PLAINTIFFS, PUTATIVE CLASS MEMBERS, THAT HAS BEEN

7    THE SUBJECT OF THE PROCESS.

8         MR. SCHAPIRO:  SO IT TOUCHES ON -- AS DESIGNED, IT

9    TOUCHES ON, BECAUSE WE ARE BEING OVERINCLUSIVE IN TERMS OF WHAT

10   WE PRESERVED, RIGHT, THIS IS LOOKING FOR WHAT DID YOU PRESERVE.

11   AND YOU WILL RECALL, THIS IS WHEN WE WERE EXPLAINING WHY ENTIRE

12   LOGS CANNOT BE PRESERVED.

13        AND SO WE PRESERVED ANYTHING THAT MIGHT IN SOME WAY TOUCH

14   ON ANY OF THESE IDENTIFIERS THAT WERE PROVIDED TO US.  AND THEN

15   WE OBJECTED WHEN THEY ASKED FOR ALL OF IT, AND WE CAME TO YOU,

16   AND THERE'S BEEN A BACK AND FORTH WITH THE SPECIAL MASTER.

17        AND I DO TAKE ISSUE WITH MR. STRAITE'S SUGGESTIONS THAT WE

18   HAVE SOMEHOW THUMBED OUR NOSE AT AN ORDER, BECAUSE I WOULD SAY

19   PRETTY MUCH EVERY SPECIAL MASTER, THEY HAVE MADE THIS ARGUMENT,

20   AND IF THE SPECIAL MASTER THOUGHT WE WERE THUMBING OUR NOSE AT

21   AN ORDER, YOU WOULD HAVE HEARD ABOUT IT A LONG TIME AGO.

22        INSTEAD, WE WERE GOING FORWARD AND SAYING OKAY, IN THIS

23   BIG UNIVERSE OF THINGS THAT MIGHT TOUCH ON SOME OF THE

24   PLAINTIFFS, HOW CAN WE GET TO WHAT'S ACTUALLY USEFUL AND AT THE

25   CORE OF THIS CASE.  AND WHEN I SAY IT JUST TOUCHES ON

```
 1       PLAINTIFF -- NOW FIRST OF ALL, A LARGE PORTION OF OUR, OR A

 2       SUBSTANTIAL PORTION OF IT, I THINK HAS ALREADY BEEN PRODUCED,

 3       BECAUSE SOME OF IT FEEDS INTO MY ACTIVITY OR SOME OF IT IS WHAT

 4       IS CALLED GAIA KEY.

 5              THE COURT:  THAT'S FINE.  I GET THAT.

 6              MR. SCHAPIRO:  BUT OTHER INFORMATION HERE, FOR

 7       EXAMPLE, THIRD PARTY CONFIDENTIAL INFORMATION OF OUR

 8       PUBLISHERS, AS TO WHICH WE HAVE AN OBLIGATION BEFORE WE TURN

 9       ANYTHING OVER TO ANYONE, TO PROVIDE NOTICE FOR EACH OF THESE

10       LOGS, THERE IS SENSITIVE DATA RELATING TO PRODUCTS THAT HAVE

11       NOTHING TO DO WITH THIS CASE.  SO WE WERE SUBSTANTIALLY

12       OVERINCLUSIVE.

13          AND I GUESS MY SUGGESTION WOULD BE IF THERE IS SOME ORDER

14       TO TURN ALL OF THIS OVER, WE THINK IT SHOULD BE CONCEIVED OF,

15       AND I WOULD ASK YOUR HONOR TO RECONSIDER THAT, BECAUSE IT SEEMS

16       LIKE YOU MIGHT BE LEANING THAT WAY, BUT THAT SHOULD BE

17       CONSIDERED NOT THE START, I THINK IT'S DESCRIBED A MOMENT AGO

18       AS THE STARTING POINT, BUT ESSENTIALLY AN ENDING POINT.

19          BECAUSE HERE WE ARE.  AND SO FINE, IN LIEU OF THIS PROCESS

20       THAT WE HAVE BEEN WORKING ON WHERE --

21              THE COURT:  ALL RIGHT.  LET ME STOP YOU THERE,

22       MR. SCHAPIRO.

23          OKAY.  I DO -- I TAKE THE POINT ABOUT PRESERVATION AND THE

24       PRESERVATION PLAN WITH REGARDS TO THE █ LOGS AND THE █ LOGS,

25       AND THEN ANY OTHER LOGS THAT ARE IDENTIFIED BY THE SPECIAL
```

1    MASTER THROUGH THIS PROCESS.  AND I RECALL, AND I HAVE RETURNED

2    TO FROM TIME TO TIME, THE PRESERVATION PLAN THAT WAS PROPOSED

3    BY GOOGLE LAST YEAR, I THINK IT WAS IN AUGUST, AND IT HAS BEEN

4    THE SUBJECT OF ONGOING DISCUSSIONS WITH THE SPECIAL MASTER.

5    AND I THINK THAT RETURNING THAT AND MOVING THAT ISSUE UP, THERE

6    ARE MANY ISSUES BEFORE THE SPECIAL MASTER, BUT THAT I WANT

7    TO -- IF IT RETURNS TO THE SPECIAL MASTER, IT'S GOING TO HAVE

8    SOME VERY SPECIFIC GUIDELINES AND PARAMETERS AS TO WHAT'S GOING

9    TO HAPPEN AND WHEN IT'S GOING TO HAPPEN, BECAUSE AGAIN, WE ARE

10   AT THE END OF THE PROCESS.

11        AND I APPRECIATE YOUR REQUEST, MR. STRAITE, BUT I DON'T

12   THINK THAT THAT NECESSARILY FOLLOWS, TURN ALL OF THIS OVER AND

13   THEN WE CAN START TALKING ABOUT PRESERVATION.

14        BUT I WILL CONFER WITH THE SPECIAL MASTER AND YOU WILL GET

15   MY ORDER ON HOW WE ARE GOING TO PROCEED.

16        MR. BARNES?  BRIEFLY.

17            MR. BARNES:  YES.  BRIEFLY, YOUR HONOR.

18        I THINK THERE WERE REALLY TWO SEPARATE ISSUES.  THE

19    PRESERVATION ORDER, I THINK IS ABOUT CLASS-WIDE DATA.  THE

20    PRESERVED DATA IS ABOUT --

21            THE COURT:  I GOT IT.

22            MR. BARNES:  AND JUDGE VAN KEULEN, THERE'S SOMETHING

23   WE LEARNED ON FRIDAY THAT I THINK YOU OUGHT TO KNOW.

24        AMONGST THOSE LOGS THAT WERE PRESERVED BUT NOT PRODUCED,

25   ARE ███ LOGS FOR WHICH GOOGLE TOLD US THEY HAD A NULL SET

1        PRODUCTION FOR OUR PLAINTIFFS.  SO WE BELIEVE THERE EXISTS DATA

2        THAT GOOGLE HAS PRESERVED THAT, THROUGH THIS SEARCH PROCESS,

3        RETURNED A NULL SET.

4            AND SO OUR POINT IS RATHER THAN DO A SEARCH FOR THOSE LOGS

5        HOW ABOUT JUST HAVE GOOGLE PRODUCE WHAT WAS ALREADY PRESERVED,

6        BECAUSE WE SHOULDN'T BE SEARCHING FOR DATA THAT GOOGLE ALREADY

7        HAS.

8            AND OUR EXPERTS ALL SAY, LOOK, TO ITERATE ON THIS SEARCH

9        PROCESS, THE MOST IMPORTANT THING WE CAN HAVE IS THE DATA

10       GOOGLE HAS ALREADY COLLECTED AND HAS.  AND IF THEY CAN DO THAT,

11       DR. SHAFIQ TOLD US THIS FOR MONTHS, WHY CAN'T THEY JUST GIVE US

12       THE DATA THAT THEY ALREADY HAVE ABOUT OUR PLAINTIFFS, AND THEN

13       I CAN COME UP WITH THE SECOND ROUND --

14            THE COURT:  ALL RIGHT.  MR. BARNES, YOU ARE FURTHER

15       ARGUING MR. STRAITE'S POINT, WHICH I APPRECIATE, BUT I'M GOING

16       TO STOP YOU.

17            MR. STRAITE:  I DID WANT TO SPEAK ON A POINT OF FACT

18       THAT WAS INCORRECT, FOR THE RECORD.

19            THE COURT:  NO.  WE ARE GOING TO HOLD OFF RIGHT

20       THERE, OKAY.

21            AND WHAT I'M GOING TO DO IS -- WHAT WE ARE GOING TO DO IS

22       I WANT TO TURN BRIEFLY TO 2.17, AND THEN WE ARE GOING TO TAKE A

23       RECESS AND WE WILL RECONVENE SHORTLY, OKAY.

24            MR. MAO:  SORRY, JUDGE, CAN I JUST CORRECT SOMETHING?

25            THE COURT:  NO, MR. MAO, YOU MAY NOT.  I WILL GIVE

1      YOU A CHANCE AT THE END.

2          AT 2.17, WITH REGARDS TO THE REQUESTS FOR ADMISSION AND

3      AUTHENTICATION, OBVIOUSLY DEALING WITH AUTHENTICATION OF

4      DOCUMENTS TO THE RFA PROCESS GENERALLY LEADS TO A STIPULATION

5      AS TO PROCESS.  I DO SEE THAT IN GOOGLE'S PORTION IT SAYS, WE

6      MADE A STIPULATION, THAT IS THE -- THAT'S A GOOD START, AND I

7      TAKE PLAINTIFF'S POINT THAT OKAY, BUT THE STIP DOESN'T GO FAR

8      ENOUGH.

9          AND AGAIN, COUNSEL YOU ARE GOING TO WORK THIS OUT.  YOU

10     DON'T NEED A STIPULATION, YOU DO NOT NEED RFA'S THAT COVER EACH

11     AND EVERY POSSIBLE GROUNDS FOR ADMISSIBILITY.  AND YOU ARE

12     GOING TO MAKE THIS WORK.  AND YOU ARE GOING TO ROLL UP YOUR

13     SLEEVES, AND YOU ARE EXPERIENCED TRIAL COUNSEL ON BOTH SIDES,

14     AND PREFERABLY SOMEONE WHO HAS ACTUALLY TRIED A CASE IN FRONT

15     OF JUDGE GONZALEZ ROGERS KNOWS EXACTLY WHAT THIS NEEDS TO LOOK

16     LIKE, AND THIS IS FRANKLY BORDERING ON THE RIDICULOUS.

17         SO THERE WILL BE A MEET AND CONFER, ALL WILL MEET AND

18     CONFER.  YOU WILL START IMMEDIATELY AFTER OUR HEARING TODAY.

19     IF YOU CANNOT COME TO TERMS WITH A STIPULATION, YOU WILL BE

20     BACK IN MY COURT.  YOU KNOW WHAT, WE ARE GOING TO DO THIS

21     THURSDAY AT 9:30, THURSDAY AT 9:30, I'M GOING TO SEND YOU DOWN

22     THE HALL.  YOU ARE GOING TO SIT IN A CONFERENCE ROOM AND YOU

23     ARE GOING TO WORK IT OUT.  AND YOU ARE GOING TO COME BACK INTO

24     MY COURT AND REPORT TO ME ON THE STATUS OF YOUR PROGRESS EVERY

25     HOUR ON THE HOUR, OKAY.  THAT'S THURSDAY FOR DISPUTE 2.17.  THE

1    PARTIES HAVEN'T AGREED TO A STIPULATION BEFORE THEN.  WE WILL

2    GET STARTED AT 9:30 A.M.

3         I'M GOING TO TELL YOU RIGHT NOW THAT I HAVE ANOTHER

4    COMMITMENT FROM 11:30 TO 1:30, SO YOU WILL WORK THROUGH THAT

5    TIME WITHOUT AN OPPORTUNITY TO REPORT TO ME, AND I HAVE A

6    CRIMINAL DUTY CALENDAR AT 2:00.

7         SO MAYBE YOU SHOW UP, MAYBE YOU GET IT DONE BEFORE YOU

8    SHOW UP.  IF YOU HAVE TO SHOW UP, HOPEFULLY YOU GET IT DONE

9    BETWEEN 9:30 AND 11:30 AND IF YOU DON'T, YOU ARE IN FOR THE

10   LONG HAUL, BUT WE ARE GOING TO GET THIS DONE, OKAY.

11        AND I THINK JUST FOR CONVENIENCE OF THE COURT, ALTHOUGH I

12   WOULD LIKE TO GET YOU IN ON THE 30(B)(6) ISSUE SOONER, IN

13   DISPUTE 1.21, WE WILL DO IT THE SAME WAY, IT SHOULD BE TWO

14   DIFFERENT TEAMS OF LAWYERS, YOU WILL BE IN TWO DIFFERENT ROOMS,

15   ONE SET WORKING ON THE 30(B)(6) ISSUES, ONE WORKING ON THE RFA

16   STIPULATION ISSUE, IF YOU ARE UNABLE TO COME TO AGREEMENTS

17   BEFORE THEN.

18        MR. SCHAPIRO:  THAT'S A HECK OF AN INCENTIVE,

19    YOUR HONOR.

20        THE COURT:  YEAH, THAT'S WHAT I FIGURED.

21        OKAY.  AND YET, YOU KNOW, IT ACTUALLY WORKS OUT PRETTY

22   PRODUCTIVE WHEN PEOPLE DO HAVE TO SHOW UP, THEY DO.

23        WE ARE GOING TO TAKE A 15-MINUTE BREAK.  I'M GOING TO

24   CONFER WITH SPECIAL MASTER BRUSH AND MR. SCHMIDT AND MY CLERK

25   ON A COUPLE OF THE ISSUES THAT CAME UP IN OUR HEARING.  WE WILL

```
 1        DO THAT BY PHONE ON A SEPARATE LINE.  YOU ALL CAN TURN OFF YOUR

 2        SCREENS AND STEP AWAY.  AND WE WILL RECONVENE, MS. SUMMER CAN

 3        STRETCH HER FINGERS, AND WE WILL RECONVENE IN 15 MINUTES.

 4             ALL RIGHT.  WE ARE IN RECESS.  THANK YOU.

 5             (RECESS FROM 3:21 P.M. UNTIL 3:46 P.M.)

 6             THE COURT:  WE WILL NOTE FOR THE RECORD THAT THIS

 7        ENTIRE PROCEEDING, BOTH THE BROWN AND CALHOUN MATTERS ARE UNDER

 8        SEAL.  WE HAVE BEEN CONDUCTING BY ZOOM IN A CLOSED WEBINAR.

 9             OKAY.  THANK YOU TO EVERYONE FOR YOUR PATIENCE.  I

10        APPRECIATE IT.  I WANTED TO STEP BACK FOR A MOMENT AND GET

11        CLARITY, BE SURE I CAN -- THAT COUNSEL UNDERSTAND WHAT IS STILL

12        TO BE DONE BEFORE THE SPECIAL MASTER AT THE SESSION TOMORROW SO

13        THAT YOU'VE GOT THE RIGHT FOLKS IN THE ROOM.  TODAY'S SESSION

14        WITH THE EXPERTS WAS PRODUCTIVE, SO THAT WAS GOOD.

15             MR. SCHAPIRO:  I'M SORRY, YOUR HONOR.  PEOPLE ON OUR

16        TEAM AREN'T ABLE TO GET BACK IN.  THEY SAY THAT THE HOST HAS

17        LOCKED MEETING AND CAN'T JOIN.  SORRY.

18             THE COURT:  DID THEY LEAVE THE MEETING?

19             MR. SCHAPIRO:  I DON'T KNOW.  I DON'T BELIEVE SO.  IF

20        THEY DID, THEY SHOULDN'T HAVE.  MR. ANSORGE AND MR. SPILLY, AT

21        LEAST.  IF THEY CAN'T COME BACK IN, I UNDERSTAND, ALTHOUGH I'M

22        VERY SORRY FOR INTERRUPTING.

23             THE COURT:  THAT'S ALL RIGHT.

24             THE CLERK:  LET ME TRY TO UNLOCK IT AND SEE IF THEY

25        WILL POP IN.
```

```
 1              (PAUSE IN PROCEEDINGS.)

 2                   THE CLERK:  I DON'T CURRENTLY HAVE ANY ATTENDEES,

 3        HAVE THEY TRIED TO JOINT BACK IN?

 4                   THE COURT:  LEAVE IT UNLOCKED FOR JUST A MOMENT, IF

 5        YOU CAN, MS. FANTHORPE.

 6                   THE CLERK:  I SEE THEM.  THERE WE GO.

 7                   MS. WEAVER:  WE LOOK FORWARD TO THE TIME WE CAN JUST

 8        WALK BACK IN THE ROOM.

 9                   THE CLERK:  OKAY.  THEY ARE BACK IN, I'M GOING TO

10        LOCK IT.

11                   MR. SCHAPIRO:  SORRY.  AND THANK YOU.

12                   THE COURT:  NOT A PROBLEM.  THANK YOU FOR BRINGING IT

13        TO OUR ATTENTION.

14             OKAY.  I WANTED TO TAKE A BRIEF BREAK BECAUSE I WANTED TO

15        SPEAK WITH SPECIAL MASTER BRUSH AND BE SURE THAT I UNDERSTOOD

16        WHAT HE EXPECTS AND NEEDS TO BE IN THE ROOM TOMORROW WITH HIM

17        TO DRIVE A COUPLE OF THESE OPEN ISSUES TO CLOSE.

18             AND I WANT TO BE SURE THAT COUNSEL KNOWS SO YOU'VE GOT THE

19        RIGHT PEOPLE.  AGAIN, TODAY'S SESSION WAS VERY PRODUCTIVE AND

20        WE WOULD LIKE THE REMAINING SESSIONS THIS WEEK TO PROCEED IN

21        THE SAME WAY.

22             SO IN THE BROWN MATTER, AS TO DISPUTE P24, THAT WAS

23        ALREADY THE SUBJECT OF ONGOING DISCUSSIONS BEFORE THE SPECIAL

24        MASTER WITH REGARDS TO THE DREML AND FLUME SEARCHES, AND THAT

25        PROCESS WILL CONTINUE AS HE WORKED WITH YOU ON IT TODAY, AND
```

1    THAT PROCESS WILL CONTINUE TOMORROW, PER WHATEVER INSTRUCTIONS

2    YOU PREVIOUSLY RECEIVED FROM HIM.

3         ADDITIONALLY, IN ARGUING THIS ISSUE P24, THE ISSUE CAME UP

4    AS TO THE PRODUCTION OF DATA THAT IS SPECIFIC TO THE BROWN

5    PLAINTIFFS.  AND GOOGLE, I WANT TO BE SURE THAT YOU HAVE IN THE

6    PRECEDING WITH SPECIAL MASTER BRUSH TOMORROW, THE PERSON OR A

7    PERSON WHO CAN SPEAK TO HOW THOSE SEARCHES WERE DONE, THAT IS

8    AS TO THE -- USING THE IDENTIFIERS FOR THE BROWN PLAINTIFFS,

9    AND WHERE THAT, WHERE THE RESULTS OF THOSE SEARCHES IS NOW,

10   WHAT FORM IS IT IN, WHERE IS IT, HOW THE SEARCH WAS DONE,

11   WHAT'S THE CURRENT STATUS OF THAT DATA.  OKAY?

12        MR. SCHAPIRO:  YES.

13        MR. MAO:  YOUR HONOR -- SORRY, JUDGE, I JUST WANT TO

14   CLARIFY SOMETHING FOR THE RECORD.

15        THE COURT:  YES, MR. MAO.

16        MR. MAO:  THANK YOU.

17     SO PREVIOUSLY MR. SCHAPIRO AND MR. STRAITE SAID THAT THE

18   BROWN PLAINTIFFS DID NOT PRODUCE OUR IDENTIFIERS.  CLEARLY, AS

19   YOU ARE JUST ACKNOWLEDGING RIGHT NOW, WE DID PROVIDE

20   IDENTIFIERS FOR OUR PLAINTIFFS.  AND THIS IS REGARDING THE

21   PRESERVATION ISSUE.

22     MR. SCHAPIRO IS COMPLETELY INCORRECT IN TERMS OF US NOT

23   PROVIDING IDENTIFIERS, PROVIDED GAIA ID'S.

24        THE COURT:  OKAY.  MR. MAO, WE ARE NOT GOING TO ARGUE

25   THAT POINT NOW, OKAY.  WHAT WE ARE DOING IS, IN WORKING THROUGH

1        THE ISSUES PRESENTED IN P24, THE REQUEST WAS MADE BY YOU TO

2        TURN OVER AND PRODUCE ANY SPECIFIC BROWN PLAINTIFF DATA.  AND

3        MY NOTES REFLECT THAT MR. SHAPIRO INDICATED HE WAS GOING TO

4        HAVE TO GO CHECK AND SEE WHAT EXACTLY THERE WAS.

5            SO I KNOW EACH SIDE HAS THEIR RECORD AS TO WHAT WAS DONE,

6        AND THERE'S PROBABLY A LOT MORE AGREEMENT THAN DISAGREEMENT,

7        THE QUESTION IS WHAT IS THE STATUS OR RESULT OF THOSE EFFORTS

8        TODAY AND WHETHER OR NOT THAT IS SOMETHING THAT CAN BE TURNED

9        OVER TO PLAINTIFFS, WHETHER IT CAN BE, WHETHER IT SHOULD BE.

10           AND SPECIAL MASTER BRUSH IS GOING TO WORK THROUGH THOSE

11       ISSUES WITH THE PARTIES TOMORROW.  AND THE FIRST QUESTIONS HE

12       NEEDS ANSWERED IS, WHAT WERE THE IDENTIFIER, HOW WERE THE

13       SEARCHES DONE, AND WHAT'S THE STATUS OF THAT DATA NOW?

14           AND MR. SCHAPIRO, YOU ARE NODDING, YOU'VE GOT THE BRIEF

15       AND YOU ARE GOING TO GET THE RIGHT PERSON IN THE ROOM.

16               MR. SCHAPIRO:  LET THE RECORD REFLECT I AM NODDING

17        YES.

18               THE COURT:  OKAY.  THANK YOU.

19           AND MR. MAO, I'M CONFIDENT THAT PLAINTIFFS HAVE SOME VIEWS

20       ON THIS AS WELL.  AND AGAIN, BRING YOUR RIGHT PERSON AND -- BUT

21       MR. BRUSH IS PREPARED TO ADDRESS THOSE ISSUES WITH THE PARTIES.

22           WE GET IT, WE HEAR IT, AND IT DOES RELATE TO THESE

23       SEARCHES THAT ARE AT THE CORE OF THE REQUEST IN P24.  WE ARE

24       GOING TO GET THIS ISSUE CLOSED THIS WEEK.  THERE'S GOING TO BE

25       AN, OKAY, HERE'S WHAT'S GOING TO HAPPEN, HERE'S WHAT'S GOING TO

1    HAPPEN NEXT.

2         AND I'M JUST GOING TO REMIND ALL THE PARTIES THAT SOME OF

3    THE ORDERS THIS WEEK, YOU ARE GOING TO THINK ARE IMPOSSIBLE AND

4    YOU'RE NOT GOING TO WANT TO DO IT AND YOU ARE ALSO GOING TO BE

5    FRUSTRATED AND FEEL LIKE YOU DON'T GET SOMETHING THAT YOU

6    REALLY ABSOLUTELY HAVE TO HAVE, BUT YOU KNOW, WE ARE WORKING

7    WITH ALL THE INFORMATION WE HAVE, AND THE COURT IS ABLY

8    ASSISTED BY THE SPECIAL MASTER, BUT WE ARE GOING TO GET THIS

9    DONE, AND GO ON FROM THERE.

10        MR. STRAITE:  AND YOUR HONOR -- AND THANK YOU.

11   DAVID STRAITE FOR CALHOUN PLAINTIFFS.

12        I JUST WANT TO REITERATE, I'M GRATEFUL FOR YOUR ORDER FOR

13   THE BROWN CASE, BECAUSE I MISSPOKE EARLIER WHEN I WAS HAVING A

14   BACK AND FORTH REGARDING THE COMPARISON OF THE CASE.  I

15   MISSTATED THE FACTS.

16        AND MARK MAO IS CORRECT, I WAS WRONG, AND SO I'M GRATEFUL

17   THAT YOU WANT DIDN'T MAKE A DECISION THAT WAS BASED ON ANYTHING

18   WRONG THAT I SAID.

19        SO THANK YOU.  I APOLOGIZE.

20        THE COURT:  I KNOW COUNSEL IS ANXIOUS TO GET THE

21   RECORD CORRECTED, BUT AGAIN, WE'VE GOT TO TAKE THIS IN THE

22   SMALL PIECES THAT I CAN IDENTIFY AND DIGEST.

23        SO I THINK EVERYONE UNDERSTANDS WHERE WE ARE GOING FORWARD

24   WITH REGARDS TO P24.

25        THE OTHER QUESTION THAT CAME UP IN MY DISCUSSION WITH THE

1       SPECIAL MASTER THAT I WANT TO BE SURE -- AND IT DOES RELATE TO

2       THE PROCESS AND BRINGING P24 TO A CLOSE -- IS WHETHER SEARCHES,

3       CAN LIVE ITERATIVE SEARCHES BE CONDUCTED?  AS OPPOSED TO THIS,

4       OKAY, WE NEED TERMS AND WE HAVE TO GO OVER HERE AND PLUG IN AND

5       PROGRAM AND COME BACK TWO DAYS LATER, ET CETERA.  CAN ITERATIVE

6       SEARCHES BE CONDUCTED, ESSENTIALLY, REALTIME?

7           SPECIAL MASTER BRUSH, DID I GET THE QUESTION RIGHT, THAT

8       WAS THE OTHER POINT YOU WANTED TO BE SURE THAT YOU COULD

9       DISCUSS THAT WITH SOMEONE AT THE HEARING TOMORROW.

10          MR. BRUSH:  YES.  EXACTLY, YOUR HONOR.

11          AGAIN, THIS IS SOMETHING THAT I THINK WAS BROUGHT UP IN

12      SOME EARLIER CONVERSATIONS AS WELL AS TODAY, IS IF FOLKS CAN BE

13      AVAILABLE IN A WAY THAT CAN FACILITATE ACTIVE SEARCHES SO WE

14      CAN AVOID SOME OF THE BACK AND FORTH.

15          YOU KNOW, OFTEN WHAT WE HAVE BEEN DOING IS INQUIRIES ARE

16      BEING PRESENTED TO ME, WE PASS THEM OFF, THEY GO TO GOOGLE, AND

17      IT GOES THROUGH THESE SERIES, SO IF WE CAN CUT THOSE ALL DOWN,

18      IF WE HAVE THE RIGHT PEOPLE IN THE ROOM, IF WE CAN CONSTRUCT

19      SOME OF THESE THINGS LIVE, TEST OUT SOME OF THESE QUERIES BEING

20      RUN AND TO PROVIDE SOME RESULTS, IT WOULD, I THINK, HELP

21      EXPEDITE THE REFINEMENT OF THE ITERATIVE SEARCHES, GET THEM

22      DONE, AND THEN MOVING TO HISTORICAL SEARCHES AS QUICKLY AS

23      POSSIBLE.

24          THE COURT:  OKAY.

25          AND THE BACK AND FORTH PROCESS AND THE COUPLE OF DAYS,

1    ET CETERA, WAS THE WAY IT WAS ORIGINALLY SET UP IN THE PROCESS

2    THAT WAS ADOPTED BY THE COURT BACK IN NOVEMBER.  AND IN MY

3    ORDER ADOPTING THAT, OF COURSE I MADE CLEAR THAT THE SPECIAL

4    MASTER HAS THE POWER TO ADJUST THAT AS NEEDED.  AND NOW WE ARE

5    AT THE END, AGAIN, WE ARE WRAPPING UP THE SEARCH AND DISCOVERY

6    PROCESS.

7         SO IF SPECIAL MASTER BRUSH -- IF YOU NEED TO COLLAPSE

8    THOSE TIME FRAMES, YOU CAN DO THAT.  AND THE PARTIES, YOU ARE

9    DIRECTED TO WORK WITH THE SPECIAL MASTER IN THAT REGARD.  AND

10   THE FIRST ISSUE IS, CAN WE DO THESE SEARCHES BASICALLY IN

11   REALTIME?  SO BE SURE YOU'VE GOT SOME FOLKS WHO COULD SPEAK TO

12   THAT.

13        OKAY.  LET'S TURN TO CALHOUN, THE OTHER BROWN ISSUES HAVE

14   BEEN ARGUED TODAY AND I WILL ISSUE AN ORDER ON THOSE.  AND THE

15   BROWN PLAINTIFFS ARE GOING TO LET ME KNOW THEIR NEXT -- THEY

16   CAN IDENTIFY THE NEXT THREE PRIORITIES.  I WENT FROM 2 TO 3,

17   BUT I HAVE NOT YET DECIDED HOW I WILL HANDLE THE ADDITIONAL

18   DISPUTES.

19        THERE WERE NINE DISPUTES TOTAL IN BROWN, AND I KNOW YOU

20   ALL KNOW YOU ARE NOT MY ONLY CASE, BUT I WILL LET YOU AT LEAST

21   SUBMIT PRIORITIES.

22        THAT WILL GO FOR CALHOUN AS WELL.  YOU CAN MEET AND CONFER

23   WITH YOUR TEAM, YOU CAN SEND AN E-MAIL TO MS. FANTHORPE AND

24   IDENTIFY FOR HER ANOTHER THREE DISPUTES.

25        AND GOOGLE, IT GOES FOR YOU TOO, IT IS THREE PER SIDE, AND

```
 1        I APPRECIATE IF YOU DON'T HAVE DISPUTES OTHER THAN THOSE THAT

 2        ARE BEING RAISED BY THE PLAINTIFFS, THAT YOU ARE NOT

 3        MANUFACTURING DISPUTES JUST TO HAVE THREE ON YOUR SIDE.  SO

 4        THANK YOU FOR RESISTING THAT.

 5            OKAY.

 6                  MR. MAO:  THANK YOU, JUDGE.

 7                  THE COURT:  IN CALHOUN, I WILL ISSUE AN ORDER AS TO

 8        1.15, AS TO 1.21, THE 30(B)(6) DEPOSITIONS, AND 2.17, THE RFA

 9        DISPUTE, I THINK YOU ALL KNOW YOU'VE GOT YOUR MEET AND CONFER

10        ORDERS, OTHERWISE I WILL SEE YOU THURSDAY IN MY COURTROOM AT

11        9:30.

12            LET MS. FANTHORPE KNOW NO LATER THAN 5:00 ON WEDNESDAY,

13        PLEASE, 5:00 ON WEDNESDAY, IF YOU NEED TO GO FORWARD WITH THAT

14        HEARING OR NOT.

15                  MR. SCHAPIRO:  CAN I RAISE ONE THING WITH REGARD TO

16        THAT, THAT I THINK SHOULD BE UNCONTROVERSIAL ABOUT THE RFA'S?

17                  THE COURT:  YES.

18                  MR. SCHAPIRO:  YOUR HONOR, I'M VERY MUCH HOPEFUL THAT

19        IT WILL NOT BE NECESSARY AND SO IT WILL ALL BE WORKED OUT BY

20        THURSDAY, I HOPE.  BUT THE RFA'S TECHNICALLY ARE DUE TODAY AND

21        WE ARE TRYING TO OBVIATE THE NEED.  SO CAN WE HAVE ON THE

22        RECORD JUST AN EXTENSION UNTIL THURSDAY OR WHATEVER SO THAT WE

23        ARE NOT FOUND TO HAVE FAILED TO RESPOND?

24                  THE COURT:  YES.

25                  MS. WEAVER:  WE WOULD BE HAPPY TO AGREE WITH THAT.
```

1          MR. SCHAPIRO:  SHOULD WE MAKE IT FRIDAY IN CASE WE

2     ARE ACTUALLY IN YOUR COURTROOM ON THURSDAY?

3          THE COURT:  IN CASE YOU GET VERY CLOSE, YOU CAN HAVE

4     AN EXTENSION UNTIL FRIDAY THE 4TH.

5          MR. SCHAPIRO:  THANK YOU.  I DON'T THINK WE WILL NEED

6     IT.

7          THE COURT:  AND I KNOW, GOOD LAWYERS THAT YOU ARE,

8     YOU WILL MEMORIALIZE THAT IN WRITING AS BETWEEN THE TWO OF YOU.

9          OKAY.  THEN LET'S TURN TO 2.1, WHICH WAS THE SUBJECT OF

10    MUCH DISCUSSION, BOTH WITH REGARDS TO A PRESERVATION PLAN, AS

11    WELL AS PRODUCTION OF CALHOUN PLAINTIFF'S DATA.

12         WITH REGARDS TO THE PRESERVATION PLAN, THE PARTIES ARE

13    GOING TO WORK THAT OUT IN FRONT OF SPECIAL MASTER BRUSH.  IT'S

14    ACTUALLY BEEN ON HIS PLATE FOR QUITE A WHILE, AND A LOT OF

15    THESE ISSUES HAVE TOUCHED ON IT AND NOW IT HAS COME TO A HEAD.

16         SO YOU NEED PEOPLE WITH HIM TOMORROW WHO HAVE FULL

17    AUTHORITY AND ABILITY TO NEGOTIATE AND COMPROMISE.  AND THE

18    293-4 -- DOCKET 293-4 MAY SERVE AS A STARTING POINT.  I KNOW

19    THERE HAVE BEEN -- I THINK THE PARTIES ALREADY KIND OF MOVED

20    PAST THAT, CERTAINLY THE PLAINTIFFS HAD VIEWS ON THAT, SO YOU

21    NEED TO HAVE YOUR -- OR EXCUSE ME, GOOGLE HAD VIEWS ON THAT.

22    SO YOU NEED TO ROLL UP YOUR SLEEVES, GET THAT DONE.

23         AND YOUR WORK WITH THE SPECIAL MASTER, YOU WILL HAVE JUST

24    A COUPLE OF DAYS TO HAMMER OUT AND COME TO TERMS ON A

25    PRESERVATION PLAN.  AND THAT WILL BE DONE AND SUBMITTED TO ME

```
1         NO LATER THAN MARCH 3RD, MARCH 3RD.

2              SPECIAL MASTER BRUSH, IF YOU THINK THERE'S BEEN PRODUCTIVE

3    PROGRESS AND A SMALL ADDITIONAL AMOUNT OF TIME IS NEEDED, THAT

4    IS WITHIN YOUR POWER TO EXTEND.

5                   MR. BRUSH:  UNDERSTOOD, YOUR HONOR.

6                   THE COURT:  ALL RIGHT.

7              AND THEN THE OTHER ISSUE IN 2.1 IS ALSO THE PRODUCTION OF

8    THE CALHOUN PLAINTIFF INFORMATION, AND THAT WILL BE THE SUBJECT

9    OF THE SIMILAR DISCUSSION AS IN BROWN, WHICH IS WHAT DATA WAS

10   COLLECTED AND WHERE IS IT NOW.

11             AND I APPRECIATE THE POSTURE OF THE CASES ARE DIFFERENT,

12   THE RESPONSES TO THAT WILL BE DIFFERENT, AND SPECIAL MASTER

13   BRUSH IS AWARE OF THAT, HE JUST WANTS TO BE SURE HE'S GOT THE

14   RIGHT PEOPLE WHO CAN WORK THROUGH THAT.

15                  MR. BARNES:  JUDGE VAN KEULEN, MAY I ASK A CLARIFYING

16   QUESTION?

17                  THE COURT:  YES, MR. BARNES.

18                  MR. BARNES:  I THINK, MR. SCHAPIRO, WE KNOW OF ▮

19   LOGS.

20                  THE COURT:  MR. BARNES, WE ARE GOING TO START --

21                  MR. BARNES:  I DON'T WANT TO ARGUE, I JUST WANT TO

22   KNOW IF IN BROWN IT WAS, HEY, IDENTIFY THAT WHICH YOU'VE DONE.

23             BASED ON MR. SHAPIRO'S COMMENTS TODAY, I THINK IT'S

24   BROADER THAN THAT, AND I JUST WANT TO MAKE -- GET CLARITY THAT

25   IT IS, IF GOOGLE HAS PRESERVED IT, WE ARE GOING TO FIND OUT
```

```
 1        INDEED WHAT WAS PRESERVED.

 2              THE COURT:  YOU ARE GOING TO HAVE THAT CONVERSATION

 3        WITH THE SPECIAL MASTER.

 4              MR. BARNES:  OKAY.  THANK YOU.

 5              THE COURT:  OKAY.  WHICH IS, I THINK PRETTY MUCH WHAT

 6        I HAD SAID, WHICH IS WHAT WAS PRESERVED AND WHAT'S THE STATUS

 7        OF IT NOW.

 8           SO ALL RIGHT.  AND THEN AS TO THE REMAINING ISSUES FOR

 9        CALHOUN, I THINK WE HAVE ADDRESSED THOSE, AND I WILL SEE YOU IF

10        NECESSARY.

11              ANY QUESTIONS?  WE'VE COVERED A LOT OF GROUND, SOME OF IT

12        HAS ACTUALLY BEEN FORWARD PROGRESS, SOME OF IT MAYBE NOT SO

13        MUCH, BUT I APPRECIATE EVERYONE'S PATIENCE AND DILIGENCE.

14              ANYTHING ELSE IN BROWN FROM THE PLAINTIFFS?  I THINK YOU

15        ARE CLEAR WHAT'S GOING TO HAPPEN WITH THE SPECIAL MASTER.  YOU

16        WILL GET AN ORDER FROM ME ON THE OTHER ISSUES.

17              ANYTHING ELSE THAT MUST BE RAISED?  MR. MAO?

18              MR. MAO:  NO.  WE UNDERSTAND THAT WE NEED TO GIVE YOU

19        ANOTHER THREE NEXT PRIORITY, IS THERE A TURNAROUND ON THAT,

20        JUDGE, I PRESUME TOMORROW OR TONIGHT?

21              THE COURT:  YEAH, TOMORROW IS FINE.  I'M NOT GOING TO

22        GET TO IT RIGHT AWAY, I'VE GOT A FEW OTHER THINGS TO KEEP ME

23        BUSY.

24              AND AGAIN, I HAVEN'T LOOKED AT THE OTHER DISPUTES YET, SO

25        I CAN'T EVEN TELL YOU THAT I'M ONLY GOING TO GET TO THREE OR
```

```
1         I'M NOT GOING TO GET TO ANY OR WHATEVER.

2               MR. MAO:  I APOLOGIZE, JUDGE.

3         I SEE MY COLLEAGUE JAMES LEE AND MR. REBLITZ-RICHARDSON

4    JUST APPEARED AND THEY MIGHT WANT TO SAY SOMETHING, SO I WILL

5    CEDE THE FLOOR TO THEM.

6               THE COURT:  ANYTHING FINAL?  WE ARE GOING TO BRING

7    THIS TO A CLOSE.  NO?  MR. LEE?

8               MR. LEE:  I JUST WANTED TO SAY THANK YOU, JUDGE.

9               MR. MAO:  THANK YOU MR. BRUSH.

10              MR. SCHAPIRO:  MY COLLEAGUE, MS. JENKINS, HAS ONE

11   FINAL THING.

12              THE COURT:  EXCELLENT.  MS. JENKINS?

13              MS. JENKINS:  YES.  WE HAVE ONE SMALL HOUSEKEEPING

14   ISSUE.

15        WE HAVE A DEPOSITION ON WEDNESDAY OF MS. JUNE IN BROWN.

16   AND ON FRIDAY, THEY TOLD US THEY MIGHT BE CANCELLING THAT

17   DEPOSITION.  AND WE WOULD LIKE TO KNOW NOW, IF POSSIBLE, OR

18   WITHIN A VERY SHORT PERIOD OF TIME AFTER THIS HEARING, IF THEY

19   WILL BE CANCELLING THAT DEPOSITION.

20              THE COURT:  OKAY.  WELL, YOU COULD HAVE PICKED UP THE

21   PHONE AND ASKED COUNSEL THAT QUESTION.

22              MS. JENKINS:  WE DID, YOUR HONOR.

23              THE COURT:  OKAY.  I FIGURED THERE WAS A REASON THAT

24   WAS HERE.  SO LET'S GET THAT WRAPPED UP HERE.  IT'S 4:00 HERE

25   ON THE WEST COAST, LET'S GET THAT WRAPPED UP BY 6.
```

1       OKAY.  CALHOUN -- OH, I'M SORRY, MR. SCHAPIRO, WAS THERE

2   ANYTHING ELSE FROM GOOGLE DEFENDANTS?

3           MR. SCHAPIRO:  NO, YOUR HONOR.

4           THE COURT:  OKAY.

5       AND CALHOUN PLAINTIFFS, ANY ISSUES?  I MEAN, YOU'VE GOT

6   THE ISSUES, I'M NOT OPENING IT UP TO NEW ISSUES.  ANY QUESTIONS

7   ABOUT WHERE WE ARE AND WHAT WE ARE DOING?

8           MR. STRAITE:  I THINK WE ARE GOOD, YOUR HONOR.

9       THANK YOU FOR YOUR TIME AND SPECIAL MASTER'S TIME.  BUT I

10  THINK WE KNOW OUR MARCHING ORDERS AND OUR E-MAILS WE ARE

11  SENDING AND OUR MEETINGS WE ARE HAVING THIS WEEK.

12          THE COURT:  OKAY.  ANYTHING FURTHER?  OKAY.

13      AND FROM GOOGLE IN CALHOUN, MR. SHAPIRO?

14          MR. SCHAPIRO:  NOTHING, YOUR HONOR.

15      WE JUST WANT TO COMMEND AND THANK SPECIAL MASTER BRUSH AND

16  MR. SCHMIDT BECAUSE THEY HAVE REALLY PUT BLOOD, SWEAT AND TEARS

17  INTO THIS, AND IT'S PROBABLY NOT MUCH FUN, BUT THEY HAVE

18  MANAGED TO KEEP US ALL IN LINE.  WE APPRECIATE IT.

19          THE COURT:  OKAY.  ALL RIGHT.  AS I SAID, I WILL, IN

20  ADDITION TO MY ORDERS OF TODAY, IN THE NEXT DAY OR TWO, ISSUE

21  BRIEFING AND HEARING SCHEDULE, IT'S NOT GOING TO BE ON SHORT

22  TIME, YOU'VE GOT ENOUGH TO DO IN VERY SHORT TIME ON THE BROWN

23  MOTION THAT WAS FILED OVER THE WEEKEND.

24      OKAY.  ALL RIGHT.  THANK YOU ALL VERY MUCH.  FOR THE NEWER

25  LAWYERS WHO HAVEN'T HAD A CHANCE TO ARGUE AND WHOSE ISSUES DID

1      NOT COME UP OR I DID NOT ENTERTAIN ARGUMENT TODAY, BETTER TO BE

2      PREPARED AND NOT CALLED ON THAN THE OTHER WAY AROUND.  SO KEEP

3      AT IT, AND I LOOK FORWARD TO HAVING YOU IN MY COURT LIVE IN THE

4      NOT TOO DISTANT FUTURE.

5             ALL RIGHT.  THANK YOU ALL VERY MUCH.  THAT CONCLUDES OUR

6      HEARING.

7             THANK YOU, MS. FISHER.  THANK YOU, MS. FANTHORPE.

8             AND WE ARE ADJOURNED.

9             (THE PROCEEDINGS WERE CONCLUDED AT 4:07 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                     **CERTIFICATE OF REPORTER**

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 3/2/22