# Redacted Version of Document Sought to be Sealed

BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel
listed in signature blocks below*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>GOOGLE LLC,<br><br>      Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**JOINT SUBMISSION IN RESPONSE TO DKT. 447 RE: STATUS OF DISCOVERY DISPUTES**<br><br>Referral: Hon. Susan van Keulen, USMJ |

March 11, 2022

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:     Joint Submission in Response to Dkt. 447 re: Status of Discovery Disputes
*Brown v. Google LLC*, Case No. 4:20-cv-03664-YGR-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's March 2, 2022 order (Dkt. 447), the *Brown* Plaintiffs and Google LLC ("Google") jointly submit this statement containing a table identifying the status of the remaining discovery disputes.

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | Disputes Identified by Plaintiffs | |
| P22 2/24/22 | **Google's Incognito Detection**: The parties have a dispute about additional discovery tied to certain documents recently produced by Google. | <u>Plaintiffs' Position</u>: Plaintiffs are continuing to learn more about Google's internal efforts to identify the Incognito traffic at issue in this lawsuit, including by way of Google's ▮▮▮▮▮▮ field, and Plaintiffs seek additional discovery from Google about these efforts. This discovery would have concluded months ago but for Google's efforts to hide this information from Plaintiffs, as outlined in the sanctions motion. Dkt. 430. Because of Google's obstruction, it took 20 months for Plaintiffs to finally receive documents from and depose the two Google employees (Bert Leung and Mandy Liu) most involved in developing Google's ▮▮▮▮▮▮ field. Those documents and depositions have raised additional questions, and Plaintiffs have asked Google to provide limited discovery to answer those questions. <br><br> **1. 30(b)(6) Testimony or Factual Stipulation**: On March 4, Plaintiffs served a Rule 30(b)(6) deposition notice seeking testimony about the ▮▮▮▮▮▮ field and any other Google field containing the word "incognito." On March 8, Google offered to designate portions of Mr. Leung's March 4 deposition as 30(b)(6) testimony in lieu of preparing a Rule 30(b)(6) witness on ▮▮▮▮▮▮. To make that approach work, and streamline the April evidentiary hearing, Plaintiffs proposed a factual stipulation to address information gaps that neither Mr. Leung nor Ms. Liu were prepared to testify about. As one example, neither could recall the date(s) when the ▮▮▮▮▮▮ field was added to Google logs. As another example, Ms. Liu acknowledged | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | that the name of the field had been changed back-and-forth from ███████████ to ██████████ but she could not recall when the name was changed.<br><br>Google below states that it is not even willing to consider Plaintiffs' factual stipulation proposal, which merely seeks to fill in the gaps where Mr. Leung and Ms. Liu could not recall important information (i.e., the purpose of a Rule 30(b)(6) deposition). Therefore, Plaintiffs ask the Court to order Google to prepare a witness to testify about ████████████████████, whereas Plaintiffs will seek testimony regarding the factual issues set forth in their stipulation proposal. Plaintiffs will take this deposition within their already allotted 21 hours for Rule 30(b)(6) testimony. Plaintiffs can submit their proposed stipulation to the Court upon request to rebut Google's incorrect assertion below that the stipulation seeks information unrelated to ██████████████.<br><br>**2. Additional Documents**: Plaintiffs asked Google to produce certain documents that appear as hyperlinks in documents Google produced for Mr. Leung and Ms. Liu. Google has not yet produced all of those documents.<br><br>**3. Other Google Fields Relating to "Incognito" Detection**: Plaintiffs have in the last two weeks also learned about other Google fields aimed at identifying Incognito traffic, including Google fields named ████████████████████ and ██████████████ Plaintiffs asked Google to provide a complete list of all fields including the word "incognito" and additional information about these newly revealed fields, including by way of Rule 30(b)(6) | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | testimony. Google agreed to provide 30(b)(6) testimony, but only for these ▉ specified fields that Plaintiffs have already learned about. Google has not confirmed whether other "incognito" fields exist, nor agreed to provide 30(b)(6) testimony on any such additional fields.<br><br>During the 30(b)(6) deposition last night, Plaintiffs learned about ▉ *additional* logs that contain the ▉ or ▉ field – *logs that were also not disclosed to Plaintiffs or Special Master Brush.* These "incognito" detection fields ▉ Plaintiffs also learned about a Google employee (Quentin Fiard) who is responsible for these "incognito" fields, who Google also omitted from the list of over 200 Google employees with relevant information about this case (previously submitted by Google). Plaintiffs asked Google about this omission, and counsel for Google could not and would not provide an explanation.<br><br>Relatedly, Google last night made a supplemental production of schema for Google's ▉ log. This production revealed for the first time that this Google log contains the ▉ field. After Plaintiffs explained in December that Bert Leung had studied this log, the Special Master ordered Google to produce the schema for this log. The version Google produced *omitted this* ▉ *field* from the schema (just like Google omitted the ▉ field from another log's schema as discussed in the sanctions motion). | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | Plaintiffs also do not understand why Google did not produce documents related to Google's implementation of the ▮▮▮▮▮▮▮▮▮▮ field within the ▮▮▮▮ logs. Plaintiffs would have expected those documents to have been produced as responsive to the agreed-upon terms for document production in this case. | |
| | | Plaintiffs are deeply concerned by these belated disclosures of plainly and highly relevant information, and Plaintiffs seek the following relief, or alternatively leave to brief these issues further. | |
| | | (1) Google immediately provides a list of all field names with "incognito" and all corresponding logs in which those fields are found, as well as the dates when each field was implemented in each log. To the extent any solely concern products not at issue (e.g., Google Maps), Google identifies them. The production should include any comments or annotations for "incognito" fields in those logs, which Google employees have testified exist in ▮▮▮▮▮▮ for those logs. | |
| | | (2) Google prepares a 30(b)(6) witness on all of the fields and annotations identified in Step 1, excluding any that solely relate to products not at issue (e.g., Google Maps). | |
| | | (3) Plaintiffs then meet and confer with Google regarding any need for additional document searches and custodial depositions that arise from the 30(b)(6) deposition. If the parties cannot agree, | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | then Plaintiffs request leave to submit a joint five-page letter brief regarding any disputes.<br><br>Google's Position:   Google's opposition to Plaintiffs' motion for sanctions will show that Plaintiffs' claims that Google hid relevant information or tried to mislead are categorically false.  Google has worked with Plaintiffs and the Special Master productively and in good faith, and that is true of this dispute as much as any others.<br><br>**1. 30(b)(6) Testimony or Factual Stipulation**:<br>Plaintiffs served an additional 30(b)(6) deposition notice just hours before midnight on March 4 seeking corporate testimony on four specific fields they claim exist in Google's logs.  Service of this notice is in violation of Local Rule 37-3, which provides that the "'discovery cut-off' is the date by which, among other things, "all depositions must be concluded."<br><br>Nevertheless, to compromise, Google offered to (i) designate Bert Leung's prior testimony concerning one of those fields ▮▮▮▮▮▮▮▮▮ because he is the person most knowledgeable about this topic, and (ii) designate another witness on the other ▮▮ fields. Google's corporate designee has now testified about those ▮▮ fields; the sole remaining issue is whether Plaintiffs should accept Google's designation of testimony from the deposition Plaintiffs took of Bert Leung for the ▮▮▮▮▮▮▮▮▮ field, for which he is the person most knowledgeable. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 447 RE: STATUS OF DISCOVERY DISPUTES

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | Plaintiffs conditioned their acceptance of this reasonable proposal on Google entering into a proposed stipulation which includes subject matter and topics wholly unrelated to Plaintiffs' belated Rule 30(b)(6) topic and which states— on its face—that Plaintiffs will use it in support of their sanctions motion. Google obviously cannot agree. In sum, Plaintiff's request for additional testimony amounts to a back-door attempt to impose unwarranted punitive measures, and is not a genuine attempt to obtain relevant discovery. For these reasons, it should be denied.<br><br>**2. Additional Documents**: There is no live dispute. Google is conferring in good faith with Plaintiffs to determine what documents they are interested in for Mr. Leung, some of which Google has already agreed to reconsider as discussed in P38. For Ms. Liu, Plaintiffs requested 19 hyperlinks after the close of fact discovery on March 6, 2022 (less than one week ago); as with every other hyperlink request that Plaintiffs made during discovery, Google is investigating those hyperlinks and will produce any responsive, non-privileged, and live hyperlinks in a timely manner. Further, Google produced the design document regarding the implementation of the ███████████████████████ field in the ███████ logs several months ago.<br><br>**3. Other Google Fields Relating to "Incognito" Detection**:<br>Plaintiffs acknowledge that Google has already provided corporate testimony on the new fields Plaintiffs identify (subject to resolution of the dispute related to Bert Leung's | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | testimony, explained in point (1) above.) Plaintiffs ask that they nonetheless be allowed to seek additional documents, additional data, and additional testimony after discovery closes. After more than a year and a half of discovery and several discovery extensions, Plaintiffs' request should be denied. "[D]iscovery is bounded both by Federal Rules and by case management deadlines. The requests for production from Google must and will come to an end …" Dkt. 331 (date). Plaintiffs also appear to be propounding a new request, for a list of "all fields" that contain the term "incognito" in all of Google's logs, in addition to the corporate testimony they have already obtained. This request is overbroad because Google is unable to limit a search of its code repository to field names. A search on "incognito" yields more than ███ hits, many or most of which do not relate to log field names, but instead relate to the source code for "incognito" mode in products like Google Maps, which have nothing to do with Plaintiffs' allegations here about browsing on Chrome. Google has explained throughout the Special Master process that it has ████████████████████████████████. Further, this burdensome request comes after the close of fact discovery, and Plaintiffs do not even attempt to make a showing of good cause to support its timing. In any event, to compromise, Google will agree to search its code repository for ████████████ and ███████████ and provide responsive fields to them if this compromise resolves the dispute. | |
| P24 2/25/22 | **Special Master Process and Deadlines**: The parties have a | Plaintiffs' Position: Plaintiffs (along with their experts when permitted) have attended and diligently participated in all hearings with the Special Master. To date, Plaintiffs | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | dispute about the timeline and deadlines for data production. | still have not received a full disclosure of all relevant data sources and logs, or a full provision of schema and fields. Plaintiffs have offered different ways of limiting Google's schema productions to certain critical fields, and Google continues to provide incomplete schemas, while redacting critical fields.<br><br>Google has refused, for example, to identify all logs that contain "incognito"-named fields. Google has also failed to provide such fields in the schema, even when Plaintiffs selected one of the two identified sources that included an "incognito"-field, withholding that information.<br><br>Google recently conceded that the Second Iterative Search was not conducted properly, omitting critical ████ data specifically requested.  The Second Iterative Search was originally ordered produced by February 25. Google has also not finished its production on the First Iterative Search, including historical data. In its searches, Google has been removing data points showing usage of Chrome Incognito mode such as from Google's ████████████ ████ log searches (e.g., ████████████████ and ██████). Still, Plaintiffs are working hard with the Special Master and Google to complete the additional four searches that the Court ordered.<br><br>Google has not produced all of Plaintiffs' preserved data, even though Google was previously ordered by the Court to produce all of Plaintiffs' "authenticated" and "unauthenticated" data. Google finally produced some data on March 9, but now alleges for the first time that some of this Plaintiffs' data is actually those of its website | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | customers.  Setting aside that Google does not dispute that this is *Plaintiffs' data*, Google's contracts with its customers allow for the production of data pursuant to legal process.  Google has repeatedly been ordered to produce Plaintiffs' data.  Discovery needs to close, and Plaintiffs' private data must be produced and made available.<br><br>Still, Plaintiffs will continue to work with the Special Master toward resolution, but Plaintiffs believe this process has been prejudiced by Google's refusal to comply with the Court's November 12 Order. This process is ongoing, and Plaintiffs respectfully request leave to continue raising these issues with the Court after March 11.<br><br>Google's Position:  After six months of substantial progress under the Special Master's expert guidance, Google's production of almost ███ of Plaintiffs' data, and the Special Master's explicit recognition of the parties' good faith efforts, Plaintiffs' suggestion that  Google has been refusing to comply with a Court order is both offensive and untenable.  If Plaintiffs' portrayal were correct, the Court would have heard exactly that message from the Special Master by now.  Google is confident that is not the message that has been conveyed.<br><br>The reality is very different from what Plaintiffs describe. Google has worked tirelessly in discovery and throughout the Special Master process to explain exceedingly complex systems to Plaintiffs and their experts (including by having its engineers participate in almost daily meet-and-confers in recent weeks, to dispel speculation about what reasonably | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | can and cannot be done, to provide demonstrations, and to bridge the gap between Plaintiffs' endless demands for ever more information (regardless of a showing of need) and what is proportional to the needs of the case.<br><br>Google's continued good faith participation in the Special Master process cannot be questioned.  Since the February 28 hearing, *seven* different Google engineers participated in a series of lengthy meetings with the Special Master, Plaintiffs, and their experts, answered deposition-style questions, performed live iterative searches, and produced all search results. Google has also:<br><br>• Participated in multiple Special Master hearings and sent numerous letters to the Special Master and Plaintiffs explaining the information and respond to various questions;<br>• Disclosed all ▮▮ logs that contain the ▮▮▮▮▮ field, including GAIA-keyed logs and Search logs that are outside the scope of this case; produced the top 100 fields by size consistent with the Special Master's instructions; searched the logs and produced all populated fields;<br>• Produced decrypted IDs extracted from all ▮▮▮ of identifiers provided by Plaintiffs;<br>• As instructed by the Special Master, will be producing by March 14 results for the second interactive searches (▮ identifiers of different types across ▮ data sources) from sources that do | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | not contain confidential third party publisher information;<br>• Produced all preserved data from logs that do not contain confidential publisher information (█████), despite the fact that it is all authenticated data, meaning data from users logged into Google accounts and therefore excluded by Plaintiffs' class definition;<br>• Submitted a reasonable proposal to the Special Master regarding production of data from logs that contain information confidential to hundreds of third party publishers;<br>• Run searches across ████ additional logs requested by Plaintiffs and produced all populated fields.<br><br>Despite these efforts and the Special Master's repeated request that Plaintiffs submit search parameters for Google to start the historical Flume searches, Plaintiffs have not done so. Instead, they continue to ask that Google answer even more questions and provide even more information: more logs, more fields, more information about Google's proprietary system.<br><br>As this Court recognized in the November 12 Order: "The requests for production from Google must and will come to an end." That time has come. Google respectfully requests that this Court and the Special Master declare the conclusion of the Special Master discovery upon production of the remaining outstanding search results. For the avoidance of doubt, the outstanding queries are: (1) second iterative search results from logs that do not contain | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | confidential publisher information (to be produced on March 14); (2) historic ▇▇▇ data search for three days selected by Plaintiffs (to be produced by March 18); and (3) preserved data and second iterative search results from logs that contain confidential third party information and require Google to provide reasonable notice to hundreds of third party publishers (subject to Google's production proposal submitted to Special Master).<br><br>However, as stated above in connection with Dispute P22 (Google's Incognito Detection), although Plaintiffs also appear to be propounding a new request, for a list of "all fields" that contain the term "incognito" in all of Google's logs (which is overbroad because "incognito" as a mode applies to products like Google Maps, which have nothing to do with Plaintiffs' allegations here about private browsing), as a compromise, Google will also agree to search its code repository for ▇▇▇▇▇▇ and ▇▇▇▇▇▇ and provide responsive fields if this compromise resolves the dispute. | |
| P25<br>2/25/22 | **Google's Privilege Log and Production**: The parties have a dispute about various entries on Google's privilege log and redactions. | <u>Plaintiffs' Position</u>: Plaintiffs are working diligently to use their remaining allotted privilege challenges. There is no dispute at this time, but Plaintiffs respectfully request permission to submit a single joint letter brief—not to exceed five pages—regarding any dispute that arises.<br><br><u>Google's Position</u>:  Google is working diligently to re-review the challenges identified by Plaintiffs on March 9, 2022 pursuant to the agreement of the parties. Google | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | agrees to Plaintiffs' proposal to brief all disputes that may arise via a single joint letter brief not to exceed five pages. | |
| P26 2/25/22 | **Priority RFPs**: The parties have a dispute regarding Google's production in response to the 20 Priority RFPs. | <u>Joint Statement</u>: The parties' positions on these Priority RFPs are set forth in the appended Chart A. | |
| P27 2/25/22 | **Dashboards Data**: The parties have a dispute regarding Google's production of data from certain Google dashboards. | <u>Plaintiffs' Position</u>: Google on March 2 made a production in response to the Court's March 1 Order (Dkt. 437), requiring production of ▉ dashboard data. That production was deficient. Plaintiffs then met and conferred with Google to discuss exactly what data should be produced. Google agreed to supplement the prior production to provide all of the information set forth in Plaintiffs' March 10, 2022 email, sent at 11:40 EST.<br><br>Plaintiffs ask that Google be ordered to make this production by March 18, which is two weeks before the deadline for opening expert reports. Google will not commit to a date. That is unreasonable, particularly because Google has already missed its March 7 deadline for this production.<br><br>Plaintiffs also are reviewing screenshots produced by Google for other dashboards for purposes of assessing whether any further discovery is necessary as to those dashboards.<br><br>Following Google's production, and robust meet and confer efforts, if there are any remaining disputes regarding | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | dashboard data, Plaintiffs respectfully request leave to submit a five-page joint letter brief.<br><br>Google's Position: Promptly following the February 28 hearing and pursuant to the March 1 Order, Google produced the "███ search results referenced at the hearing" on March 2, 2022 (Dkt. 437-1 at 14), and specifically called it out in the production letter. Plaintiffs did not raise issues until March 8, 2022. On March 10, Plaintiffs sent an email informing Google for the first time what information they thought was missing. The parties met and conferred on the same day, and Plaintiffs then sent another email clarifying what data they are seeking.<br><br>Plaintiffs seemingly seek "the same data metrics in the same format" as a spreadsheet with 19 different tabs and more than 570 rows. They offered to forego 11 tabs, on the condition that Google honor their burdensome requests including, e.g., on each tab, breaking down the data for all available platforms and for each of Chrome Regular, Incognito, OTR Guest, and E Guest, etc.<br><br>That being said, Google will make best efforts to produce the requested information as soon as practicable. Further, Google can commit to a production schedule as soon as it can reach the relevant engineers to discuss the burden involved. | |
| P28<br>2/25/22 | **Google's Written Discovery Responses**: The parties have a dispute regarding certain Google discovery responses. | Plaintiffs' Position: The parties submitted two joint letter briefs regarding Google's responses to various RFAs and Interrogatories (Dkts. 462, 464), and the Court has not yet ruled on those. To the extent the Court orders Google to provide additional responses, Plaintiffs seek guidance as to | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | how to raise for the Court any disputes regarding the adequacy of Google's responses. Plaintiffs respectfully request permission to submit (only if the parties cannot resolve any disputes through meeting and conferring) a single joint letter brief—not to exceed three pages—regarding any deficiencies in forthcoming supplemental response by Google.<br><br>Google's Position:   As Plaintiffs' position statement indicates, there is currently no live dispute regarding this issue.  To the extent the need arises to brief the Court on any perceived deficiencies in Google's discovery responses, Google respectfully seeks permission for the parties to file a joint letter brief not to exceed 3 pages. | |
| P29 2/25/22 | **Deposition of Google Employee Borsay**: The parties have a dispute regarding Plaintiffs' request to depose Sabine Borsay. | Plaintiffs' Position: On March 2, this Court granted the *Calhoun* and *Brown* Plaintiffs' joint request to depose Google employee Sabine Borsay, requiring Google to make her available by March 15. Dkt. 447-1. Plaintiffs requested dates from Google, offering to accommodate Ms. Borsay's childcare needs, including by taking breaks whenever she requests one and by splitting up the deposition over multiple days. Despite the Court's order, Google informed Plaintiffs that it still does not intend to make Ms. Borsay available for deposition, once again proposing substitute deponents (previously it was Mr. Mardini, who has already been deposed; now it is two other Google employees, neither of whom are document custodians). Plaintiffs wish to depose Ms. Borsay. | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | Google below asks the Court to reconsider its March 2 ruling in this case based entirely on arguments purportedly made during a *Calhoun*-only hearing. At a minimum, the *Brown* plaintiffs should be given an opportunity to participate in any such briefing or hearing before the Court reconsiders its order permitting the *Brown* Plaintiffs to depose Ms. Borsay. | |
| | | In any event, Google's discussion of a Protective Order is unripe because, as an additional compromise, Plaintiffs are willing to defer Ms. Borsay's deposition for some additional period of time until it will be more convenient for her to be deposed. Plaintiffs do not need this deposition for their class certification motion, and will be satisfied so long as they can take it before summary judgment and/or trial. | |
| | | Google's Position:  Google respectfully requests that the Court's March 2, 2022 Order should be reconsidered for the four principal reasons: (i) the Hague Convention applies to Ms. Borsay, a German resident, the parties must comply with its procedural requirements before Plaintiffs can lawfully obtain her testimony; (ii) the Court-ordered deposition is illegal under German law until the Hague Convention process has been satisfied and the parties obtain authorization from the appropriate German authorities; (iii) German employment law prohibits Google from compelling Ms. Borsay to voluntarily attend a deposition, in Germany or elsewhere, over her reasonable objection; and (iv) Ms. Borsay's childcare and health considerations | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | preclude her from voluntarily participating in a deposition at this time.<br><br>In recognition of these factors, and mindful of the fact-discovery cutoff, Google offered Mr. Mardini as a compromise deponent. Plaintiffs rejected it. As a further attempt to resolve this dispute, Google has offered two additional compromises to Plaintiffs to ensure they can obtain testimony on the relevant topics they have identified: (i) deposing Chrome Product Manager Audrey An (also based in Munich, but is available to travel to Zurich to be deposed on March 23, 2022); and (ii) deposing Senior Director of Product Management Matthew Waddell. Mr. Waddell is the most senior Chrome Product Manager, based in California, and able to sit for a deposition the weeks of March 21 and 28, 2022.<br><br>However, in the event that Plaintiffs refuse Google's additional good faith to resolve this dispute, and the Court does not reconsider, Google must seek a protective order to relieve Google of its obligations under the Court's order (*e.g.*, to produce Ms. Borsay in Germany by March 15, 2022 without satisfying the Hague Convention process for obtaining her testimony and German law), and compel the parties to observe the Hague Convention and authorized German procedures for obtaining such testimony, in compliance with U.S. and German law. | |
| P31<br>3/11/22 | **Sundar Pichai and Lorraine Twohill Depositions:** The parties have a dispute about | Joint Statement: There is no ripe dispute at this time. The parties are awaiting rulings on Google's motions for relief from Your Honor's decisions permitting these depositions. Should either or both of those motions be granted, Google | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | whether Mr. Pichai and Ms. Twohill should be deposed. | will agree that Plaintiffs may notice a new deposition or two new depositions (depending upon whether one or both motions are granted). Google has asked that Plaintiffs right now select who those deponents would be. Plaintiffs respectfully ask that they be given one week to make their selections following any Court order regarding those depositions. | |
| P32 3/11/22 | **Privacy Policy Hyperlinks**: The parties have a dispute about Google's production in response to Plaintiffs' RFP No. 21, which seeks production of all Google disclosures and policies relating to the data that Google collects. | Plaintiffs' Position: In October 2020, Plaintiffs served RFP 21, seeking "Google's disclosures and policies relating to the data Google collects directly and indirectly from, about, or on consumers, particularly with regard to data collected in connection with consumers browsing in private browsing mode." During the class representatives' depositions, Google questioned Plaintiffs about Google's Privacy Policies, but Google did so without providing all disclosures hyperlinked to the Privacy Policies. Plaintiffs asked that the Court order Google to either produce (or identify in its prior productions) all of the hyperlinked disclosures from Google's Privacy Policies, for the class period, which Google has so far refused to do.<br><br>As a compromise, Plaintiffs propose (1) that Plaintiffs limit this request to no more than ten (10) hyperlinks that are no longer publicly available from each Privacy Policy effective during the Class Period, with Plaintiffs to identify those no later than March 25, and (2) that Google be precluded from otherwise relying on the absence of, or referencing any, unproduced hyperlinks that are no longer publicly available. By "no longer publicly available," Plaintiffs refer to hyperlinks in a privacy policy that no | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | longer link to the webpage in effect at the time that privacy policy was effective.<br><br>Google's claim below that all "hyperlinks are all publicly available" is untrue. As one example, in the December 18, 2017 version of the Privacy Policy, the hyperlink for "control who you share information with through your Google Account" is broken. Plaintiffs reasonably ask that Google produce up to ten of these outdated or no longer available hyperlinks from each Privacy Policy in effect during the Class Period.<br><br><u>Google's Position</u>: Plaintiffs' initial request is facially overbroad and undefined in scope, unduly burdensome, and not proportional to the needs of the case. This make-work request essentially seeks all hyperlinks embedded in over two dozen historical versions of Google's Privacy Policy that were operative from June 2014 to present—which, based on a conservative estimate—amounts to over 2,700 hyperlinks.<br><br>To be clear, not every hyperlink in Google's general Privacy Policy is a "disclosure[] … related to the data Google collects … in connection with consumers browsing in private browsing mode" (and thus not responsive to RFP No. 21). Plaintiffs have made no effort to show otherwise, nor could they. Moreover, between November 2020 and April 2021, Google produced hundreds of pages of publicly available disclosures concerning Google's data collection. | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | Plaintiffs can currently access the current and historical versions of Google's Privacy Policy by visiting policies.google.com/privacy. Because the hyperlinks within these documents are generally available (including for earlier versions of the Privacy Policy), it would be equally burdensome for Google to pull the appropriate historical versions of those hyperlinks as it would be for Plaintiffs.<br><br>Plaintiffs' proposal also suffers from an important practical defect: if the identified hyperlink goes to a page that no longer exists or redirects to a current resource, there would be nothing for Google to produce. Google cannot recreate publicly available sites as they existed during the Class Period, if they are not in Google's control or no longer exist. A manual search for historical links would be extremely burdensome and disproportionate to the needs of this case. As a more feasible compromise, given the work associated with Plaintiffs' request, Google proposes to investigate ten hyperlinks across all versions of the Privacy Policy (once Plaintiffs have confirmed, in the first instance, that the hyperlinked content truly is not available online). | |
| P33<br>3/11/22 | **Post-Deposition Document Productions:** The parties have a dispute about how to deal with Google's post-deposition document productions. | Plaintiffs' Position: Google has produced relevant documents for Google deponents after they were deposed. For example, Google produced a document from Brian Rakowski's files nearly sixth months after his deposition, which discusses tensions over the name "Incognito" around | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | when Google first introduced Chrome's private browsing mode. GOOG-BRWN-00843204. Another document from Justin Schuh's files—produced a month after his deposition—sheds light on the data Google collects in Incognito mode and Google's hesitation to limit collection. GOOG-CABR-05770831. Plaintiffs have not yet identified all key documents produced post-deposition.<br><br>If permitted by the Court, Plaintiffs have a proposal to address this issue. Following the ruling on Plaintiffs' class certification motion, and for purposes of summary judgment and trial, Plaintiffs would seek to meet and confer with Google regarding this issue and then, if any dispute arises, brief any dispute for the Court. At that time, Plaintiffs may seek some limited additional time with up to five deponents based on this issue. The additional time would be limited to questioning the witness about documents produced after his or her initial deposition, and Plaintiffs would identify those documents to Google in advance of the supplemental deposition—both to limit Google's preparation burden and to ensure that the parties agree on the scope of the deposition beforehand. This proposal will ensure that Plaintiffs are not prejudiced by belated document productions while also allowing the parties to currently remain focused on completing expert discovery and preparing for class certification briefing.<br><br>Google's Position:  Plaintiffs proposal is prejudicial to Google and should not be endorsed by the Court. | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | *First*, it is always that case that some documents of individuals who have already been deposed may be produced after their deposition. This is no ground to re-open depositions. In fact, this is almost ensured here, where Plaintiffs identified (and continue to identify) hundreds of documents from Google's privilege logs for re-review and possible production—many of which appear in the files of already deposed witnesses.     Dkt. 307. Indeed, the documents Plaintiffs cite above were produced by Google after it re-reviewed hundreds of log entries.     GOOG-BRWN-00843204, which was authored by former employee Justin Schuh, was produced on February 11, 2022 following a challenge that Plaintiffs did not assert until January 24, 2022—over five months after Google served its privilege log with this document (on August 13, 2021), and several weeks after the Schuh deposition.<br><br>Plaintiffs also cite GOOG-CABR-05770831, which appears in the files of Brian Rakowski and was likewise produced on February 11, 2022 following a challenge made by Plaintiffs on January 24, 2022—several months after they deposed Mr. Rakowski.<br><br>*Second*, as framed, Plaintiffs' proposal could lead to a request to reopen **_any_** of the twenty fact depositions permitted by this Court (not to exceed five)—a request that would not only be disproportionate to the needs of this case, but one that all but ensures discovery becomes an ever-moving target (particularly if the witness's deposition requires compliance with the Hague Convention process, or other foreign laws or authorities). | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | *Third*, Plaintiffs are in the process of obtaining Rule 30(b)(6) testimony from Google on the very topics covered by the above-cited documents (among others). Any newly-identified or recently-produced documents can be examined during such depositions.<br><br>*Fourth*, Plaintiffs will suffer no prejudice if this Court were to reject their request, particularly where the parties have successfully reached agreement on an authenticity stipulation that can address the full scope of Google's document production, once such production is complete. | |
| P34<br>3/11/22 | **Google's Verification of Interrogatory Responses** | <u>Plaintiffs' Statement</u>: Google has not provided verifications for all of its interrogatory responses based on Rule 33(d), and Google has taken the position that it will only provide verifications for its supplemental or amended interrogatory responses. Under Rule 33(b)(3), "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing <u>under oath</u>." Fed. R. Civ. P. 33(b)(3) (emphasis added). This includes interrogatory responses based on Rule 33(d). The Court asked that the parties not cite legal decisions in these charts, so Plaintiffs have not added that authority here, but the authority is clear. Plaintiffs respectfully request that the Court either order Google to provide verifications for all interrogatory responses based on Rule 33(d) or permit the parties to submit a 1-page joint letter brief (1/2 page per party) regarding this dispute.<br><br><u>Google's Position</u>: This is a new dispute that was discussed during a meet and confer between the parties on March 9, | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | 2022. Google believes the parties may benefit from further discussion now that it has received the foregoing position statement. Although the parties have identified competing authorities that address a party's obligation to verify an interrogatory response pursuant Rule 33(d) (or lack thereof), Google is hopeful that the parties will be able to resolve this dispute without Court intervention. | |
| P35 3/11/22 | **30(b)(6) Depositions**: The parties have a dispute regarding how to address any issues with upcoming 30(b)(6) depositions. | <u>Plaintiffs' Statement</u>: There is no ripe dispute at this time, but Plaintiffs seek the Court's guidance on how to raise any disputes that may arise. Depositions are ongoing because Google was unable to produce many 30(b)(6) witnesses until March 17 and 18 (and later). For the witnesses who have been deposed, some have been unprepared to discuss their assigned topics.<br><br>Plaintiffs will meet and confer with Google about these and similar issues that arise as the 30(b)(6) depositions proceed. Following the conclusion of all depositions, to the extent any disputes remain after meeting and conferring, Plaintiffs respectfully seek permission to submit a joint letter brief—not to exceed five pages.<br><br><u>Google's Position</u>:  Google proposed as many early dates for Rule 30(b)(6) witnesses as possible; in fact, Plaintiffs requested later dates for some of these witnesses. It is not necessary to set out briefing for potential future disputes regarding the readiness of its 30(b)(6) witnesses at this juncture.  To the extent the Court decides to grant Plaintiffs' request for briefing at this time, Google does not object to briefing this dispute but respectfully requests that the Court set a staggered briefing schedule (consistent with the | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | briefing schedules recently ordered by the Court in response to other discovery disputes) so Google has an adequate opportunity to evaluate and respond to Plaintiffs' arguments. | |
| P36 3/11/22 | **Cross-Use of Google Depositions:** The parties have a dispute about the extent to which the parties in each of the *Brown* and *Calhoun* cases may use depositions from the other case. | <u>Plaintiffs' Statement</u>: This issue only arose in the context of negotiations that were occurring separately in the *Calhoun* case. The *Brown* Plaintiffs strongly object to Google's request to use the *Brown* plaintiffs' deposition testimony in the *Calhoun* case. The Court did not order cross-use of any of plaintiffs' productions (Dkt. 243). There is no basis for Google's demand to now change course and permit Google to nonetheless cross-use plaintiffs' testimony. Cross-use is particularly inappropriate in this case, where the plaintiffs' testimony concerns their private browsing activities. It is improper – and also harassing and abusive – for Google to use that testimony in the *Calhoun* case (perhaps in some public trial), which is not about private browsing. The *Brown* plaintiffs did not sign up to testify in *Calhoun*, and they object to Google using their testimony in that case. <br><br> Moreover, Google is not legally permitted to use deposition testimony from the *Calhoun* plaintiffs against the *Brown* plaintiffs in this case, as the *Brown* plaintiffs were not "present or represented at the taking of the deposition," and were not given reasonable notice of those depositions (or Google's intent to use them in this case). Fed. R. Civ. Pro. 32(a). Such testimony is also inadmissible hearsay and Google has not proffered any exception that would apply. | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | By contrast, Google's testimony in the *Calhoun* case may be admissible in this case against Google because (1) Google "was present or represented at the taking of the deposition" Fed. R. Civ. Pro. 32(a) and (2) such testimony qualifies as admissions by a party opponent. Indeed, the Court previously granted Google's request to designate its own testimony from *Calhoun* depositions in lieu of preparing a Rule 30(b0(6) witness in *Brown*. Given that Google's testimony in *Calhoun* depositions may indeed be admissible against Google in this case, the protective order should not bar the *Brown* Plaintiffs from reviewing such deposition transcripts and determining what testimony, if any, they may use at trial or otherwise. <br><br> The *Brown* Plaintiffs' therefore request that the Court deny Google's request for cross-use of the plaintiffs' deposition testimony. <br><br> Google's Position:  Plaintiffs' request relates to Dispute 1.5 in the *Calhoun* action.  In that case, Plaintiffs asked that they receive and be allowed to use transcripts of Google depositions taken in the *Brown* action.  Google agreed provided that Google also be permitted to cross-use deposition transcripts (including exhibits, video recordings, and any errata) from the *Brown* action as evidence in the *Calhoun* action.  Days after the parties ***reached agreement*** and reported in the last joint discovery chart that they would file a stipulation to that effect, the *Calhoun* Plaintiffs reversed course—insisting on  a stipulation that included the *Brown* counsel but struck the negotiated language that | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | would entitle Google to cross-use the transcripts from the *Brown* Named Plaintiffs in the *Calhoun* action.<br><br>There is no logical or legal ground to deny Google's request to cross-produce and cross-use Plaintiffs' deposition transcripts, particularly if Google takes care (as it has agreed) not to produce Plaintiffs' sensitive information—which Plaintiffs are already under an obligation to identify pursuant to the Protective Order (and would be redacted before such transcripts were cross-produced).   Their relevance cannot be disputed - the Plaintiffs in one case are also putative class members in the other.   The *Brown* Plaintiffs claim that Google's disclosures led them to believe Google would routinely obtain their personal information unless they used private browsing mode. In stark contrast, the *Calhoun* Plaintiffs claim that Google's disclosures led them to believe that the status quo is Google does not obtain their personal information unless they affirmatively enabled "sync." Judge Koh recognized the inconsistency between these theories, and held that at the motion to dismiss stage, the fact that "a contract is 'reasonably susceptible' to one interpretation does not mean that the contract is not 'reasonably susceptible' to a competing interpretation." Dkt. 363 at 19. To resolve each case, Google has to prove issues related to the interpretation of the same disclosures regarding information it collects, class members' knowledge of those disclosures and attitudes towards privacy in general. Plaintiffs' testimony under oath is precisely the type of relevant information that Google should be allowed to use. | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| P37<br>3/11/22 | **Google's Preservation**: The parties have a dispute about whether Google is complying with its preservation obligations. | <u>Plaintiffs' Position</u>: Plaintiffs have proposed a targeted and reasonable preservation plan to Google. Plaintiffs proposed that Google extend its default retention period for three discrete categories of logs, as well as any encryption and/or joinability keys associated with any identifiers in such logs, as follows: (1) ████████ Logs (preserve through duration of this case); (2) the ███ logs with the ███████████████ field (preserve for one year longer than the default retention period); and (3) a select few additional logs that contain either (a) the x-client data header, or (b) PPID-mapped biscotti and/or analytics User IDs (preserve for at least 1 year longer than the default retention period): ██████████████████████████; ████████████████████████; ██████████████████████████; ██████████ and ██████████████████████████<br><br>Plaintiffs remain willing to consider any proposals by Google to narrow what is preserved to less than the full content of these logs. For example, Plaintiffs are interested in 1) identifiers, 2) IP addresses, 3) user-agents, 4) HTTP headers, 5) URLs, 6) date and time, and 7) any "incognito"-titled field (e.g., ████████) or field containing Incognito-detection (e.g., ████████ fields). Plaintiffs presently do not have sufficient information to propose such a subset without further input from Google.<br><br>In addition, Plaintiffs also propose that Google disclose the names of all logs in the following categories, as well as their |  |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | default retention periods. Then Plaintiffs can consider what preservation, if any, may be necessary. (1) all source logs from which the ▮▮▮▮ bit in the QSEM logs described above may be inferred; (2) all logs containing any parameter or field with "Incognito" in the name, and the full name/description of the field with "Incognito" in the name for each such log. (For instance, ▮▮ logs that contain an ▮▮▮▮▮▮ bit would be included here); and (3) all logs containing PPID-mapped biscotti and/or Analytics User IDs.<br><br>To the extent the parties cannot reach an agreement, Plaintiffs request permission to submit a five-page joint letter brief regarding their competing proposals.<br><br>Google's Position: Plaintiffs' March 8, 2022 preservation proposal is not a practical one for many reasons, including because rotating encryption keys are a cornerstone of Google's privacy program that applies to users worldwide, and preserving encryption keys would significantly compromise privacy protections for users worldwide. However, Google has offered to meet and confer with Plaintiffs with the goal of agreeing on a reasonable and practical preservation plan. | |
| P38<br>3/11/22 | **Hyperlinks Withheld by Google as "Source Code":** The parties have a dispute about various hyperlinks that Google has refused to produce on the ground that the hyperlink is "source code." | Plaintiffs' Position: In response to various requests for relevant hyperlinks, Google has refused to produce the hyperlinked materials on the basis that they are source code. For example, in its response to Plaintiffs' request for hyperlinks in advance of Bert Leung's deposition, Google refused to produce scripts Mr. Leung used in his analysis of Incognito traffic. These include a "plx script" related to Mr. | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | Leung's Incognito detection work (GOOG-BRWN-00845649), a "useragent match for incognito window" (GOOG-BRWN-00845408), a "proto" related to Ms. Liu's efforts to "use" "X-Client Data header" "to help identify" Incognito traffic (GOOG-BRWN-00845586), and a "function" where "ChromeGuard [i.e., Incognito] detection in ███████ is implemented," which is named ████████████████ (GOOG-CABR-00844941). Plaintiffs understand that the Court has previously rejected Plaintiffs' request to access source code (Dkt. 339-3), but that ruling should not apply here because these requests are narrowly tailored to obtain discrete documents concerning Google's internal efforts to identify Incognito traffic.<br><br>Plaintiffs appreciate Google's compromise proposal below, and Plaintiffs can agree to the second and third portions of it. But production should not be limited to Mr. Leung's work and documents. For example, Plaintiffs have also requested hyperlinks from Ms. Liu's files, and Google (which still has not responded) may object to providing some of those hyperlinks on the ground they are "source code." Plaintiffs believe that any scripts related to any Google efforts to identify Incognito traffic should be produced. To expedite this process, Plaintiffs asked Google to provide a list of all hyperlinks that Google has refused to produce on the ground of "source code." Google declined to provide that list and pointed Plaintiffs to dozens of production letters from which the information can supposedly be compiled. Plaintiffs are trying to do so now and plan to follow-up with Google after identifying the scripts related to Google's Incognito detection efforts. | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | Plaintiffs now ask only that the Court order that Google may no longer withhold such scripts on the ground they are "source code." | |

Google's Position: The Court already considered and rejected Plaintiffs' request for source code. Dkt. 331. That decision "was sound: a party must show "the requisite factual basis of necessity" to obtain source code. Plaintiffs have failed to do so. In reliance on the court's earlier Order, Google has consistently objected to producing hyperlinks that included or related to source code. Plaintiffs did not raise any issues with Google's position or the scope of the Court's order until March 7, 2022.

Further, with respect to the specific source code requested here, Plaintiffs were permitted two additional custodians and have taken nine hours of deposition testimony of the relevant engineers to explore the subject matter in depth.

To date, Google has already undertaken the burden of investigating approximately 750 hyperlinks that Plaintiffs requested in a timely manner. It would be unduly burdensome and not proportional to the needs of the case to now require Google to re-review all hyperlinks (over Google's source code objection) to determine whether they are now responsive to Plaintiffs' RFPs. Further, as a courtesy to Plaintiffs, Google agreed to identify its objections for not producing the requested hyperlinks, including with each production for which documents corresponding to hyperlinks were produced–Plaintiffs have all the information they need to compile the list.

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | Google offers the following compromise: Google has informed Plaintiffs that it is willing to consider producing hyperlinked scripts that Mr. Leung or Ms. Liu used, on the condition that (1) Google is not waiving its position on the production of source code generally, (2) any responsive scripts would be produced   designated as "Highly Confidential - Attorneys' Eyes Only" and not on a  source code computer, and (3) Plaintiffs are not seeking to re-open any Google witnesses' depositions, including Mr. Leung and Ms. Liu.  Google, however, objects to a re-review of all hyperlinks in accordance with the Court's Order. | |
| | | Disputes Identified by Google | |
| D10 3/11/22 | **Google's Interrogatory No. 17**: The parties have a dispute as to whether Plaintiffs must substantively respond to Google's Interrogatory No. 17 | <u>Google's Position</u>:  On December 22, Plaintiffs served Interrogatory No. 40, asking Google to identify all factual bases supporting each of its affirmative defenses in this case.  Following a meet and confer on February 24 and further guidance from the Court on March 2, Google agreed to respond substantively and provide its responses on March 9.  To ensure both sides are clear regarding the facts and documents supporting each side's claims and defenses, on February 8, 2022, Google served a similar Interrogatory on Plaintiffs—Interrogatory No. 17—asking that Plaintiffs similarly identify all facts and documents supporting each of their claims.  On March 4, 2022, Plaintiffs served their Responses & Objections but  did not provide a substantive response.  Rather, they objected to responding primarily on the basis that the Interrogatory was served in violation of L.R. 37-3 because Plaintiffs' response would have been due March 10, which is after the March 4 fact discovery cut-off. As the Court is well aware, Plaintiffs have served numerous | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | requests and deposition notices to which Google will be responding after March 4. Indeed, on Friday, March 4, Plaintiffs served a new Rule 30(b)(6) notice seeking depositions on topics not previously identified. Plaintiffs' request to strictly enforce L.R. 37-3 against Google–while inconsistently asking the Court for leeway with respect to Plaintiffs' own requests–should be denied.<br><br>Plaintiffs' Position: Google's interrogatory is untimely under Local Rule 37-3, and there is no good cause to order any substantive response: Google simply waited too long to serve this discovery request. Google did not serve this interrogatory until February 8, seeking a response after the March 4 close of fact discovery (even after that date had been extended). That violates Local Rule 37-3. Google provides no justification for this untimely interrogatory, and there is none. There is no dispute that Google could have served it earlier, and Google instead ignored the requirements of Local Rule 37-3. The only discovery served by Plaintiffs after the deadline set by Local Rule 37-3 was the one 30(b)(6) notice served on March 4, after Mr. Leung's deposition. That notice contains one topic, concerning the withheld discovery at issue in Plaintiffs' sanctions motion, which Plaintiffs served because Mr. Leung was unable to answer many questions regarding those issues. Google's own discovery misconduct necessitated that 30(b)(6) notice, where good cause does exist under Local Rule 37-3. Google's discovery misconduct does not in turn establish good cause for Google's non-compliance with Local Rule 37-3. Plaintiffs respectfully request that the Court deny Google's request to | |

| Dispute No. | Dispute | Status as of 3/11/22 Joint Submission | Status as of 3/17/22 Hearing |
|---|---|---|---|
| | | compel any substantive response to its untimely interrogatory. | |

JOINT SUBMISSION IN RESPONSE TO DKT. 447 RE: STATUS OF DISCOVERY DISPUTES

Respectfully,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

BOIES SCHILLER FLEXNER LLP

/s/

/s/

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293 6858
Fax: (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Tel: (305) 539-8400
Fax: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Discovery Statement. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: March 11, 2022                    By_____