Plaintiffs' Request for an Order
for Google to Show Cause for
Why it Should Not Be Sanctioned
for Discovery Misconduct

Redacted Version of
Document Sought to
be Sealed

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William Christopher Carmody
(admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
mram@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
**MORGAN & MORGAN**
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,

        Plaintiffs,

vs.

GOOGLE LLC,

        Defendant.

Case No.:  4:20-cv-03664-YGR-SVK

**PLAINTIFFS' REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE FOR WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT**

Referral: The Honorable Susan van Keulen

## REQUEST FOR AN ORDER TO SHOW CAUSE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

The undersigned respectfully asks the Honorable Susan van Keulen of the United States District Court for the Northern District of California to issue an order for Google, LLC ("Google") to show cause for why it should not be sanctioned for discovery misconduct. This Request is based on the attached Memorandum of Points and Authorities, the Declaration of Mark C. Mao and exhibits attached thereto, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider.

### ISSUE PRESENTED

Whether the Court should order Google to show cause for why it should not be sanctioned for discovery misconduct for (1) concealing its logging of a " █████████████████ " to detect, ███████████████████████████████████ from putative class members, from Plaintiffs, the Special Master, and the Court; and (2) violating the Court's November 12, 2021 Order.

### RELIEF REQUESTED

Pursuant to this Request, and Plaintiffs' October 14, 2021 Rule 37(b) Motion, Plaintiffs respectfully ask the Court to set an evidentiary hearing and order Google to show cause for why it should not be sanctioned for discovery misconduct, including by:

1. Taking as established for purposes of the action that (A) Google can detect event-level Incognito traffic within its logs, (B) this Incognito data is linkable to users, so that (C) the class is ascertainable.

2. Instructing the jury that "Google concealed and altered evidence regarding its ability to identify Incognito traffic."

3. Requiring Google to reimburse Plaintiffs for all fees that have been paid and will be paid to Special Master Brush.

Plaintiffs also ask that the Court order Google employees Chris Liao and Bert Leung to appear at the evidentiary hearing, as well as the Google declarant who swore to the Court that Google complied with the November 12 Order (Dkt. 338).

1

2      Dated: February 26, 2022                    BOIES SCHILLER FLEXNER LLP

3
                                                   By: /s/ Mark C. Mao
4                                                  Mark C. Mao (CA Bar No. 236165)
                                                   mmao@bsfllp.com
5                                                  44 Montgomery Street, 41st Floor
                                                   San Francisco, CA 94104
6                                                  Telephone: (415) 293 6858
                                                   Facsimile (415) 999 9695
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                          2
28

1

**TABLE OF CONTENTS**

2

**Page**

3
INTRODUCTION...........................................................................................................1

4
BACKGROUND ...........................................................................................................4

5
    I.    Plaintiffs Uncover the Scope of Google's Misconduct.........................................4

6
            A.    Two Weeks Before the Close of Fact Discovery, Plaintiffs Learn

7
                  that Google Implemented an Incognito Detection Tool Within

8
                  Google Logs. ...............................................................................4

9
            B.    Google Admits That It Removed this Incognito Detection Field
                  from a Log Produced to Special Master Brush, and that Google

10
                  Withheld Other Logs With the Incognito Detection Field.......................5

11
    II.    18 Months of Obstruction..................................................................7

12
            A.    In Late 2020, Google Claims that It Has No Documents to Help
                  Identify Class Members; Meanwhile Bert Leung Has Already

13
                  Begun Working to Detect Incognito Traffic Within Google Logs

14
                  .......................................................................................7

15
            B.    In 2021, Google Hides Mr. Leung and His Significant Progress
                  from Plaintiffs and the Court....................................................8

16
            C.    Google Undermines the Special Master Process.....................................12

17
             D.    With the Court's Help, Plaintiffs Finally Discover the Truth...................14

18
ARGUMENT...............................................................................................................17

19
    I.    Legal Standard .............................................................................17

20
    II.    Google Violated the November 12 Order, and Abused the Discovery

21
          Process Throughout this Case..........................................................17

22
    III.    Google Should Be Sanctioned ...........................................................19

23
            A.    Evidentiary Sanctions and Jury Instructions...........................................19

24
            B.    Reimbursement of Fees Paid to Special Master Brush............................22

25
CONCLUSION............................................................................................................23

26

27
i

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
2012 WL 1595784 (N.D. Cal. May 4, 2012) ....................................................21

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) ..................................................21

*Dahl v. City of Huntington Beach*,
84 F.3d 363 (9th Cir. 1996) ............................................................................17

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001)...........................................................................17

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
2016 WL 5870218 (N.D. Cal. Oct. 7, 2016)..............................................22, 23

*Gibson v. Chrysler Corp.*,
261 F.3d 927 (9th Cir. 2001)...........................................................................20

*Guifu Li v. A Perfect Day Franchise, Inc.*,
2011 WL 3895118 (N.D. Cal. Aug. 29, 2011)...........................................20, 21

*Guifu Li v. A Perfect Day Franchise, Inc*,
281 F.R.D. 373 (N.D. Cal. 2012) ...............................................................17, 19

*Hanni v. Am. Airlines, Inc.*,
2009 WL 1505286 (N.D. Cal. May 27, 2009) .................................................21

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
2020 WL 1643786 (N.D. Cal. Apr. 2, 2020) ...................................................23

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) .........................................................................................19

*Kannan v. Apple Inc.*,
2020 WL 9048723 (N.D. Cal. Sept. 21, 2020) ................................................22

*Karnazes v. Cty. of San Mateo*,
2010 WL 2672003 (N.D. Cal. July 2, 2010) ....................................................22

*Lanier v. San Joaquin Valley Offs. Ass'n*,
2016 WL 4764669 (E.D. Cal. Sept. 12, 2016)..................................................20

ii

*Oracle USA, Inc. v. SAP AG*,
    264 F.R.D. 541 (N.D. Cal. 2009) .......................................................................21

*Sali v. Corona Reg'l Med. Ctr.*,
    884 F.3d 1218 (9th Cir. 2018)............................................................................17

*Sanchez v. Rodriguez*,
    298 F.R.D. 460 (C.D. Cal. 2014) .......................................................................17

*Sas v. Sawabeh Info. Servs.*,
    2015 WL 12711646 (C.D. Cal. Feb. 6, 2015).....................................................20

*Unigard Sec. Ins. Co. v. Lakewood Eng. Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992)..............................................................................17

*United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*,
    617 F.2d 1365 (9th Cir. 1980)............................................................................20

*Von Brimer v. Whirlpool Corp.*,
    536 F.2d 838 (9th Cir. 1976)..............................................................................20

*Zurich Am. Ins. Co. of Ill. v. World Priv. Sec., Inc.*,
    2020 WL 8610839 (C.D. Cal. Nov. 23, 2020) ...................................................19

**Rules**

Fed. R. Civ. P. 37(a)...........................................................................................17

Fed. R. Civ. P. 37(b)...............................................................................3, 12, 17

Fed. R. Civ. P. 37(b)(2)...............................................................................17, 23

Fed. R. Civ. P. 37(b)(2)(A)..........................................................................17, 22

Fed. R. Civ. P. 37(b)(2)(A)(i)............................................................................19

Fed. R. Civ. P. 37(b)(2)(A)(ii)..........................................................................20

Fed. R. Civ. P. 37(b)(2)(C)...............................................................................22

iii

1

## **INTRODUCTION**

2     On September 2, 2020, Google told the Court that "it is unclear how Plaintiffs could

3     ascertain the members of the proposed class" (including people who used Chrome Incognito).

4     Dkt. 59 at 8. Ever since, Google has concealed from Plaintiffs, the Court, and the Special Master

5     that Google implemented a tool to do just that for its own business purposes. Google produced 283

6     of Bert Leung's documents on Friday, February 18, 2022—two weeks before the close of

7     discovery and months into the Special Master process. Those documents' revelations are stunning:

8     • Since June 2020, Mr. Leung and Mandy Liu have worked on a project to █████

9     █████████████████████████████████████████ " Ex. 1 GOOG-

10    BRWN-00845639 at -40;

11    • As part of that effort, Mr. Leung suggested "███████████████████████

12    ████████" in June 2020 (*id.*), and he and Ms. Liu decided to call this field a

      "███████████████████" bit in October 2020 (after this case was filed). Ex. 2,

      GOOG-BRWN-00845596;

13    • Google *actually began logging* the proposed "████████████████ "

14    ████████████████████████████████████████████████████████"

15    Ex. 3, GOOG-BRWN-00845423.

16    As part of the Special Master process to provide "Plaintiffs the tools to identify class

17    members using Google's data," the Court ordered Google to submit a sworn declaration that "to

18    the best of its knowledge, Google has provided a complete list of data sources that contain

19    information relevant to Plaintiffs' claims." Dkt. 331, Ex. 1 ¶ 1. On November 18, 2021, Google

20    falsely certified that it had done so—when, in fact, it failed to disclose ████████ logs that apparently

21    contain the "█████████████████" field. *Compare* Dkt. 338-1 (list of data sources disclosed

22    by Google), *with* Ex. 3, GOOG-BRWN-00845423. And for a log Google did disclose, Google

23    altered evidence by ***deleting the "*██████████████████*" field from the schema*** before

24    producing it to the Special Master and Plaintiffs. As a result, Plaintiffs and the Special Master had

25    ***no idea the "*████████████████*" field existed***.

26

27                                                1

28

1       This was the culmination of Google's concealment, not its inception. To throw Plaintiffs

2   off the scent from the very start, Google failed to disclose Bert Leung and Mandy Liu in a list of

3   200+ persons with knowledge and potential document custodians Google provided Plaintiffs on

4   February 4, 2021. Ex. 4, GOOG-BRWN-00023909. Google again failed to disclose Mr. Leung or

5   Ms. Liu in its March 29, 2021, response to Plaintiffs' Interrogatory asking Google to identify

6   employees with knowledge about "Google's collection and use of data in connection with users'

7   activity while in a private browsing mode." Exs. 5, 6. These omissions were inexcusable, given

8   that (a) Mr. Leung and Ms. Liu had already been working on their project to detect Incognito since

9   mid-2020 and (b) Google's counsel have been directly communicating with Mr. Leung about this

10   case since at least February 1, 2021 (before Google produced its list of potential custodians). *See*

11   Ex. 7.

12       Without Mr. Leung's or Ms. Liu's documents, Plaintiffs were missing critically important

13   information concerning Google's logging of the "███████████████" field. In December

14   2021, Plaintiffs deposed Mr. Leung's supervisor Chris Liao—and asked him about Google's

15   efforts to study whether Incognito could be detected. Mr. Liao falsely testified that any Google

16   project to detect Chrome Incognito had been abandoned and Google did not "go on to build any

17   dedicated signals afterwards either." Ex. 8, Liao Tr. 134:7-10. Google did not correct those false

18   statements, either informally or through Mr. Liao's January 6, 2022, errata to his deposition

19   transcript.

20       But Google not only deceived Plaintiffs—it deceived the Court and the Court's appointed

21   Special Master. During the entire period that Google was concealing Mr. Leung's development

22   and implementation of the "█████████████" bit, Google made multiple misleading

23   statements to the Court and the Special Master concerning its ability to detect Incognito, its data

24   production, and the supposed "burdens" it claims to have faced throughout the discovery process.

25       And Google almost got away with it. But for this Court's recent ruling on Plaintiffs' motion

26   to compel documents from Mr. Leung, Google might have crossed the discovery finish line before

27

28

2

their misconduct caught up to them. That document production made just two weeks before the close of discovery revealed, for the first time, that Mr. Leung did not just analyze Incognito detection (as a handful of previously produced documents had implied). In fact, Mr. Leung figured it out, developing and implementing a "████████████████" detection tool within specific Google logs. These belatedly produced documents led to an avalanche of further discoveries in the past week, confirming the lengths to which Google went to conceal the "████████████████" field from Plaintiffs, the Special Master, and the Court.

Google's actions simply cannot be reconciled with its obligations to conduct discovery in good faith, tell the truth under oath, and comply with Court orders. Google's conduct cannot be chalked up to a mere discovery dispute. Without appropriate sanctions—ones with teeth—Google has not been, and will not be, deterred. Google's attitude appears to be that it has nothing to lose and everything to gain: Absent real sanctions, it can hide the ball and either (a) get away with it or (b) when caught, simply produce what it should have provided earlier. And monetary sanctions, while certainly warranted, do not suffice. Google generates hundreds of billions of dollars in revenue per year and monetary sanctions are simply immaterial to Google's bottom line. Moreover, discovery is coming to a close and Plaintiffs have been prejudiced, having taken numerous depositions and engaged in a many-months-long Special Master process, all while Google withheld the truth and plainly relevant data in violation of a Court order.

Plaintiffs respectfully ask the Court to reinstate Plaintiffs' October 14, 2021, Rule 37(b) Motion and order Google to show cause why it should not be sanctioned in connection with that motion and this one. Appropriate sanctions may include but are not limited to:

1. Taking as established for purposes of the action that (A) Google can detect event-level Incognito traffic within its logs, (B) this Incognito data is linkable to users, so that (C) the class is ascertainable.

2. Instructing the jury that "Google concealed and altered evidence regarding its ability to identify Incognito traffic."

3. Requiring Google to reimburse Plaintiffs for all fees that have been paid and will be paid to Special Master Brush.

3

1   Plaintiffs also submit that an evidentiary hearing is warranted to hear testimony from

2   (1) Mr. Leung (whose deposition Google unilaterally rescheduled to the last day of fact discovery,

3   after Plaintiffs began raising questions concerning the content of his recently-produced

4   documents); (2) Mr. Liao (who gave false testimony concerning Google's Incognito detection);

5   and (3) Google's Court-ordered declarant (who it appears falsely certified that Google had

6   complied with the Court's order to provide a "complete list of data sources that contain information

7   relevant to Plaintiffs' claims").

8                                   **BACKGROUND**

9   **I.      Plaintiffs Uncover the Scope of Google's Misconduct**

10          **A.      Two Weeks Before the Close of Fact Discovery, Plaintiffs Learn that Google
                    Implemented an Incognito Detection Tool Within Google Logs.**

11          On September 2, *2020,* Google told the Court that "it is unclear how Plaintiffs could

12  ascertain the members of the proposed class" (i.e., people who used a private browsing mode,

13  including Chrome Incognito). Dkt. 59 at 8. Since then, Plaintiffs have diligently sought discovery

14  to refute Google's assertion.

15          Eighteen months later, in a February 18, *2022* production, following Plaintiffs' motion to

16  compel documents from Bert Leung (see Dkt. 401), Plaintiffs for the first time learned that internal

17  Google logs and data sources now contain a field dedicated to identifying and tracking Incognito

18  traffic. The name of the field is "                         ":

19



20

21

22

23  Ex. 9, GOOG-BRWN-00845312 at -18.  Prior to this production, Mr. Leung's supervisor, Chris

24  Liao, testified that projects to identify and track Incognito traffic had been discontinued for alleged

25  lack of accuracy. Ex. 8, Liao Tr. 134:7-10. ("We did not, to my best knowledge, go on to build

26  any dedicated signals afterwards either.").

27                                          4

28

1    Documents from Google's February 18 production show that in 2021 Mr. Leung and Ms.

2   Liu finalized and implemented an Incognito-detection tool for both Google "Search" logs (as noted

3   in the above document) as well as "Display" logs, i.e., logs that store data about users' visits to

4   non-Google websites. Ex. 10, GOOG-BRWN-00845569 at -69. Because Google had represented

5   in the Liao deposition that such projects had been abandoned, Plaintiffs had no idea that Google

6   implemented this Incognito-detection tool until Google produced documents for the first time just

7   two weeks before the upcoming March 4 close of fact discovery.

8    Google developed this "██████████████████" tool by relying on something called the

9   "X-Client Data Header." The absence of the "X-Client Data Header" is the "proxy" for detecting

10  Incognito traffic within these logs. Ex. 11, GOOG-BRWN-00845277.  Notably, Google has

11  consistently represented to Plaintiffs, the Special Master, and the Court that the absence of the X-

12  Client Data Header cannot be used to detect Incognito use. *E.g.*, Dkt. 140 at 5, Dkt. 218 at 6.

13   While Google was repeatedly representing to this Court that private browsing users cannot

14  be identified, Mr. Leung and Ms. Liu were in fact developing (and eventually implemented) a tool

15  designed to do precisely that–detect Incognito traffic within Google logs.  Apparently, Google

16  needed such tools so that it can measure and attempt to ████████████████ as a result of a new

17  feature for its Incognito mode that blocks third-party cookies, in addition to a stronger pro-privacy

18  environment that disfavors third-party cookies.  Ex. 12, GOOG-CABR-05144884 at -933.  In

19  essence, when a business purpose arises, Google can readily develop tools to detect Incognito

20  traffic, but when it comes to this litigation, Google tells the Court it cannot be done.

21   **B.     Google Admits That It Removed This Incognito Detection Field from a Log
            Produced to Special Master Brush, and that Google Withheld Other Logs
22           With the Incognito Detection Field**

23   As discovery progressed, Google graduated from concealing evidence to altering evidence.

24  After finally learning that Google had implemented Mr. Leung's and Ms. Liu's

25  "████████████████" detection tool within specific logs, Plaintiffs promptly asked Google

26

27                                           5

28

1  to clarify whether all such logs had already been identified and produced within the Special Master

2  process, in accordance with this Court's November 12 Order, Dkt. 331.

3  During a February 23, 2022, meet-and-confer supervised by Special Master Brush, counsel

4  for Google admitted that Google had only produced schema for ██████████ log while

5  withholding other logs entirely. Mao Decl. ¶ 26. And later that night, counsel admitted that *the*

6  *"*██████████████████*" field had been entirely removed from this schema prior to its*

7  *production*. Ex. 20. Let us be clear: prior to producing this log to Plaintiffs, Google removed from

8  it all traces of a field dedicated to detecting Incognito traffic, a field which could identify class

9  members.  Google poisoned the Special Master process from the start.

10  Google claims that it did not include this critical Incognito detection within the schema

11  produced because this field may not fall within "the largest 100 fields" of a given log–an absurd

12  position. The Court's November 12 Order required that Google identify *all* relevant logs and

13  produce *all* schema and fields, and Google and its counsel understood the purpose of this entire

14  process. There was and is no excuse for removing a field named "incognito." To the extent Google

15  decided it was necessary to cull the information for some reason (even though this would be

16  contrary to the November 12 Order), surely Google realized that "██████████████"

17  should not have been among the withheld fields.

18  Furthermore, Plaintiffs still have barely any insight into what *other* logs contain the

19  Incognito detection field that *still* have not been disclosed. On Friday, February 18, 2022, Google

20  produced for the first time a May 18, 2021 document approving logging the

21  "██████████████" bit in certain logs (and stating there were "██████" logs not listed).

22  Ex. 3, GOOG-BRWN-00845423 at -24. Many of the listed logs do not appear to have been

23  included in Google's Court-ordered declaration that it had identified all relevant sources. Dkt. 338-

24  1. During the February 23 meet-and-confer, Google refused to clarify how many other logs contain

25  this field. Mao Decl. ¶ 26. Plaintiffs repeatedly asked but, rather than answer, Google told Plaintiffs

26  to ask Mr. Leung during his upcoming deposition. *Id.* But while Mr. Leung's deposition had been

27

28

6

1  scheduled for February 25 pursuant to written agreement by the parties, as soon as Plaintiffs began

2  asking questions arising from Mr. Leung's documents, Google unilaterally and without

3  explanation re-set the deposition for March 4, the last day of discovery. Mao Decl. ¶ 25. Google

4  claimed it was necessary to reschedule Mr. Leung's February 25, 2021 deposition because he had

5  a sudden "conflict" arise—but then refused to say what the supposed conflict was in response to

6  multiple demands from Plaintiffs. *Id.*

7       Google's misconduct has undermined the Special Master process. Had the schema for the

8  log with the Incognito field been produced without any alteration, Plaintiffs would have discovered

9  the Incognito detection field months ago. Plaintiffs did not even choose this log for Iterative Search

10  1 because Plaintiffs had no idea that Google had actually implemented an Incognito detection field.

11  Moreover, Plaintiffs and the Special Master would have had sufficient time to navigate the

12  identification and production of all such logs (assuming *arguendo* that Google not only provided

13  the field, but the other logs that also contain this field as well). Instead, discovery is about to close

14  and Plaintiffs do not have a single log entry of their data that includes the Incognito detection field.

15  **II.      18 Months of Obstruction**

16       **A.      In Late 2020, Google Claims that It Has No Documents to Help Identify Class
17             Members; Meanwhile Bert Leung Has Already Begun Working to Detect
           Incognito Traffic Within Google Logs**

18       The above lays out where Google's concealment ended. But it is also important to

19  understand just how far back it began. Google's deception began on September 30, 2020, after

20  Plaintiffs served RFP 10, seeking, "Documents sufficient to identify all alleged class members,

21  including all electronic or physical address information associated with alleged class members."

22  Ex. 13 at 13. Google refused to produce any documents, claiming that "Google does not maintain

23  documents or data in the ordinary course of business that would allow it to 'identify all alleged

24  class members'" and that the "identity of 'alleged class members' . . . is not ascertainable." *Id.*

25       Yet three months earlier, in June 2020, Mr. Leung had already begun working on the

26  project that would culminate in the development and implementation of the

27

28

7

1    "████████████████" field. On June 9, 2020 (a week after this case was filed), Mr. Leung

2    submitted a proposal about his idea to "█████████████████████████████████████

3    ████████████████████████████████████████." Ex. 1, GOOG-BRWN-00845639

4    at -40. This project was important because Google had recently begun ████████████████

5    ████████████████████████████████████████████████████████████████████████

6    ███████████████████████████████████████████. *See* Ex. 14, GOOG-CABR-

7    04324934 at -35 (discussing project "████████████████████████████████████████

8    ████████████████████████████████████████); *see also* Dkt. 395 at 13-14, 16-17

9    (summarizing this financial analysis). Within his June 9 proposal, Mr. Leung flagged the "potential

10   privacy risk of logging inferred Chrome Incognito detection," and Mr. Leung sought "feedback

11   from privacy gurus" about his concern. Ex. 1.  In October, after this lawsuit was filed, Mr. Leung

12   and Ms. Liu named their tool: "████████████████████." Ex. 2. GOOG-BRWN-00845596.

13        Google did not provide any information about these efforts to Plaintiffs at that time.

14   **B.    In 2021, Google Hides Mr. Leung and His Significant Progress from Plaintiffs
             and the Court**

15
16        Plaintiffs persisted in seeking discovery for purposes of class identification. To identify

17   document custodians, Plaintiffs asked for a list of employees with information about the case.

18   Google provided that list on February 4, 2021, and it included over 200 employees. Ex. 4, GOOG-

19   BRWN-00023909. ***The list did not include Mr. Leung or Ms. Liu***, who had already set out on a

20   project to develop a "████████████████████" field. Ex. 2, GOOG-BRWN-00845596.

21        Google surely knew that Mr. Leung and Ms. Liu had relevant information. So did Google's

22   outside counsel. During the same time period (and perhaps long before), Google's counsel was

23   communicating with Mr. Leung about the case. Ex. 7. And while they remained in touch, Google

24   neglected to identify either Mr. Leung or Ms. Liu in a March 29, 2021 response to an Interrogatory

25   asking Google to identify employees with knowledge about "Google's collection and use of data

26   in connection with users' activity while in a private browsing mode." Exs. 5, 6.

27

28

1       Plaintiffs also sought to address deficiencies with Google's preservation efforts. On March

2  23, the parties filed a joint letter brief regarding Google's refusal to suspend its routine deletion

3  periods for any logs. Dkt. 119. Google told the Court that Plaintiffs' demand would require Google

4  to preserve any log in which private browsing data might have been stored, and on that basis

5  characterized "Plaintiffs' preservation demand [a]s extraordinarily burdensome [and] not

6  feasible." Dkt. 119 at 3.  Ultimately, "[b]ased upon the facts currently before the Court" and

7  "without prejudice to Plaintiffs' ability to raise a challenge based upon new evidence not currently

8  before the Court," this Court granted Google a Protective Order. *Calhoun v. Google*, 5:20-cv-

9  05146 (N.D. Cal.) at Dkt. 174 (adopted by reference in Dkt. 147-1 at 1). Plaintiffs briefed this

10  preservation dispute, and this Court issued a ruling, without knowing about the progress that Mr.

11  Leung and Ms. Liu were making in their efforts to detect, log, and preserve Incognito traffic.

12       For example, on April 14, two weeks before this Court's ruling, Mr. Leung and Ms. Liu

13  sought advice from colleagues regarding their efforts. Ms. Liu wrote:

14

15

16

Ex. 15, GOOG-BRWN-00845477 at -77.

17

18  , Ex. 16, GOOG-BRWN-00845481,

at -81. Ms. Liu replied: "

19

." Ex. 15.

20

21       By contrast, Google in this case never proposed to

." *Id.*

22

23  s. Nor did Google disclose to Plaintiffs that Mr. Leung and Ms.

Liu were developing a "                                    for particular logs.  Had Google

24  done so, the parties could have easily reached a compromise in which Google would preserve a

25  far more limited set of data, namely, only the necessary parts of the particular logs in which the

26

27  "                                    " field would live.

9

28

Google's obstruction likewise infected the parties' dispute over RFP 10, which sought "Documents sufficient to identify all alleged class members." In their April 23, 2021 motion to compel, Plaintiffs, as a compromise, proposed focusing on data from logs containing the "X-Client-Data Header" field, and, specifically, data where this "X-Client Data Header" is missing:

> At the 30(b)(6) deposition in this case, Google's representative confirmed that when a user is engaged in Incognito mode, the "X-Client Data header" is not sent to Google. Google also admits that it maintains raw referrer header logs containing X-Client Data Header fields. ***Class members may be ascertained by looking for entries without the X-Client Data header.***

Dkt. 140 at 4 (emphasis added).  Plaintiffs thus proposed doing what Bert Leung was simultaneously doing, as Mr. Leung's "███████████████████████████████████████ ████████████████████████████████████████ *See* Ex. 11.

In opposition, Google told the Court that Plaintiffs' proposal was "unworkable" since "the absence of the header cannot be used to ascertain purported class members as it would improperly include all users browsing on a non-Chrome browser." Dkt. 140 at 5.  And during the ensuing April 29 discovery hearing, counsel for Google doubled down on those assertions, going so far as to accuse Plaintiffs' counsel of "speculation":

- [W]e felt like there's quite a lot of speculation on behalf of [Plaintiffs' counsel] and we wanted to explain to you that this is actually not something that we just have or can quickly query, nor do we think their proposed path is one that will lead to that outcome.  Apr. 29 Tr. at 20:1-6.

- [W]e do not have the information to identify the plaintiffs' private browsing sessions.  I know [Plaintiffs' counsel] doesn't like that, but that is the reality.  Apr. 29 Tr. at 24:1-13.

As with the preservation dispute, Google did not inform Plaintiffs (or the Court) about Mr. Leung's and Ms. Liu's efforts.

The Court rejected Google's arguments, holding that Plaintiffs were entitled to test Google's say-so about the data through discovery:

> Well, but what the Plaintiffs are asking for is pieces of information from different places because they want to see if they can piece together, by combination of that information, class members.  And that's why – I mean,

10

*it seems to me that they have a right to try to do that with whatever information you have.*

Apr. 29 Tr. at 19:2-7 (emphasis added). The Court then ordered Google to produce all "authenticated" and "unauthenticated" data relating to the named Plaintiffs. Dkt 147-1 at 2.

Meanwhile, Mr. Leung and Ms. Liu continued making significant progress. In a May 10, 2021 conversation (produced for the first time on February 18, 2022), Mr. Leung told Ms. Liu that the "███████████████" detection tool is "sensitive"—"not from a privacy perspective, but from a legal (competition) perspective." Ex. 17, GOOG-BRWN-00845437.[1] By that point, Google was apparently no longer concerned that tracking Incognito within its logs raised any "privacy" concerns. Google was instead worried about the "legal" implications, i.e., for lawsuits like this one. Yet Google still did not disclose Mr. Leung or Ms. Liu or their work to Plaintiffs.

In July 2021, Plaintiffs moved to compel responses to RFP 120, which sought "[d]ocuments sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client-Data-Header." Dkt. 218 at 3. Plaintiffs sought this information to "identify class members and determine what data Google collected (and continues to collect) from their private browsing activities, using the empty X-Client-Data header field as the starting point." *Id.* In opposition, Google complained that producing the information sought would be "burdensome and not proportional because Google would have to produce records (including confidential business information related to fields collected) that have nothing to do with the claims at issue here." *Id.* at 9.

Once again, Google did not inform the Court or Plaintiffs that Google was already (or at least on the cusp of) implementing the "████████████████████████ within specific Google logs and that the ██████████████████████████████████████ ██████.

---

[1] Part of the document is not visible because of how Google produced it. Plaintiffs used the metadata to complete this quote.

11

Had Google been forthcoming, the parties could have reached a compromise where Google would only produce data from the specific logs that contain the "████████████████████████". Google instead once again misrepresented its burden, pretending that it would need to produce every piece of data that ████████████████. Because of Google's misrepresentations, Plaintiffs' motion was denied (after being referred to the Special Master). *See* Dkt. 331.

## C.     Google Undermines the Special Master Process

Google's misconduct culminated in its violation of the Court's orders governing the Special Master process. In October 2021, Plaintiffs filed a Rule 37(b) motion because Google was withholding data on the basis of its say-so about the data's relevance. *See* Dkt. 292 at 6-12 (summarizing the data that Google was refusing to produce). In their motion, Plaintiffs asked the Court to order Google to comply with the April 30 Order or, alternatively, prohibit Google from making arguments about any data it refused to produce. *Id.* at 15-19. Special Master Brush informed the Court of his plan to issue a Report and Recommendation regarding certain disputes, and the Court stayed further briefing on Plaintiffs' Rule 37(b) motion "pending resolution of the issues set forth in the forthcoming Report and Recommendation." Dkt. 297.

Special Master Brush's Report validated Plaintiffs' concerns. He found as "fact" that the named Plaintiffs' data has "not yet been fully produced." Dkt. 299 ¶ 53. And this Court, on *de novo* review, upheld his factual finding:

> [T]he Court finds that the Special Master's factual conclusions regarding the deficiencies in Google's production of information about searches conducted to date as well as production of Plaintiffs and putative class data . . . are well founded and adopts those findings. As previously noted by this Court, Google knows what data it has collected regarding Plaintiffs and putative class members and where the data may be found, therefore Google must produce the information and data as directed herein.

Dkt. 331 at 3.

To remedy the problem, Google was ordered to conduct an additional four rounds of iterative searches for the named Plaintiffs' data—in effect, Google got another chance to play by the rules. Plaintiffs would select from among data sources that Google had already identified and

12

then propose search strings, and Google would produce the data that hit on those strings. Dt. 331, Ex. 1. The Court also found that any burden concerns were Google's own fault:

> To the extent [this process] requires the significant commitment of time, effort, and resources across groups of engineers at Google on very short timelines, that burden . . . arises, at least in part, as a result of Google's reticence thus far to provide critical data source information in these actions.

*Id.* at 4-5.

To address Plaintiffs' concern about Google's failure to identify necessary logs, Google was also required to "provide a declaration, under penalty of perjury from Google, not counsel, that . . . [t]o the best of its knowledge, Google has provided a complete list of data sources that contain information relevant to Plaintiffs' claims." *Id.* Ex. 1 ¶ 1. A Google Discovery Manager provided that declaration on November 18, swearing that "To the best of my knowledge and informed understanding, Google has provided a complete list of sources that contain information about Plaintiffs relevant to Plaintiffs' claims." Dkt. 338. ¶ 3.

This statement, in light of Mr. Leung's recently produced documents, appears to be false. Documents Google produced on February 18, 2022 appear to demonstrate that "█████████████" was approved for use in multiple logs that had not been disclosed in Google's Court-ordered declaration. Ex. 3, GOOG-BRWN-00845423. Moreover, even for the logs that Google *did* disclose, Google did not reveal to Plaintiffs or the Special Master that they contained a "█████████████" field. Worse yet, for the only log schema Plaintiffs received that actually contains this field, *Google removed any trace of the field prior to its production*. And Google still hasn't told Plaintiffs which other logs contain this field that have not yet been identified and produced. Mao Decl. ¶ 26. Google likewise removed the schema the ██ fields that Mr. Leung and Ms. Liu were using in conjunction with the "███████████████" field. *Id.*; *see also* Ex. 3, GOOG-BRWN-00845423.

Google's obstruction has made a mockery of the whole Special Master process. In the Court's words, this process was intended to, among other things, "***provide the*** **Brown . . . *Plaintiffs the tools to identify class members using Google's data*.**" Dkt. 331 at 4 (emphasis added). Yet

13

Google is still withholding from Plaintiffs the precise logs and fields that Google itself has been using to identify Incognito traffic during the discovery period. Google has wasted the Court's time, the Special Master's time, and Plaintiffs' time.

### D.   With the Court's Help, Plaintiffs Finally Discover the Truth

On Thanksgiving Eve 2021 (long after Google's early October document production deadline), Google produced a document that finally set Plaintiffs on the path to uncovering Google's misconduct. The document was a July 2020 email from Bert Leung discussing a "█████ ████████████████████████████████████████████████████████████████████ ████████████ Ex. 18, GOOG-CABR-05280756. Plaintiffs now understand this July 2020 "█████ as the beginning of Mr. Leung's efforts to build the "██████████████████" field.

Plaintiffs were alarmed to realize that one of logs that Mr. Leung was studying, the ████████████, had not yet been disclosed. Plaintiffs promptly brought this missing log to the Special Master, and after reviewing the documents, he directed Google to produce the log schema for the log and to run searches of the log. Mao Decl. ¶ 28. Special Master Brush thus overruled Google's objection that the log was irrelevant insofar as it was a "Search" log. From that point forward, Google was indisputably on notice that it could not withhold logs on the basis of the log being a "Search" log, particularly any log that Mr. Leung studied for his analysis, let alone a log in which Mr. Leung actually implemented the Incognito detection field.

Google has since then refused to tell Plaintiffs which other logs Mr. Leung evaluated in the early stages of his ██████████████████." After Special Master Brush overruled Google's objection on the ██████████████, Plaintiffs asked Google whether any other logs that Mr. Leung studied had been withheld. Mao Decl. ¶ 29. Counsel for Google never responded to Plaintiffs' multiple requests. *Id.*

Plaintiffs then propounded an interrogatory asking Google to "identify *every* log and data source that Google reviewed, analyzed, or searched as part of Google's efforts to conduct a 'log analysis of Chrome Incognito' in and around mid-2020. *See, e.g.*, GOOG-CABR-05280756," Ex.

14

19 (emphasis added). Google did not answer that question, either. Google instead evaded it by merely quoting back *one* of the logs that was already mentioned in the email that Plaintiffs cited. *See id.* ("Google used ███████████████ in the analysis of Ad Manager browsing traffic described in GOOG-CABR-05280756."). That evasion is improper. Google has subsequently clarified in meet-and-confers that Mr. Leung's analysis was not limited to the logs mentioned in this one document, and yet Plaintiffs still do not have a complete list of every data source that Mr. Leung studied, much less a complete list of the logs in which "███████████████" field has officially been implemented. Mao Decl. ¶ 30.

The Thanksgiving Eve production also clarified for Plaintiffs that Mr. Leung was an important witness for this case, so Plaintiffs asked Google to produce custodial documents from his files. Google objected, principally contending that Plaintiffs could not show "good cause" to add another custodian above the limit the Court had previously set. Dkt. 399 (joint letter brief). Plaintiffs countered by arguing that Google had never disclosed Mr. Leung as a potential custodian with relevant information and likewise delayed in producing documents about his role in the Incognito detection analysis. *Id.*

Meanwhile, on December 2, Chris Liao, Mr. Leung's immediate supervisor, testified that Google had abandoned any efforts to identify Incognito traffic within its logs. Plaintiffs asked Mr. Liao whether "amongst these privacy signals, is there one for incognito mode browsing on Chrome?" Ex. 8, Liao Tr. 131:14-16. Mr. Liao answered, "No." *Id.* He went on to elaborate for minutes, never once mentioning the creation and implementation of the "███████████████" field, which had been introduced in certain logs by no later than September. Ex. 9, GOOG-BRWN-00845312 at -18.

- [T]here was discussion around proxy signals that we can sue to approximate incognito traffic. However, we were not able to identify any definitive or reliable signal to identify incognito mode in the end. Ex. 8, Liao Tr. 133:23-134:3.
- [I]t was determined that there was no reliable way to technically detect incognito in a definitive and reliable and accurate manner. And as a result, *no further action was taken to build such a hypothetical signal*. *Id.* 134:15-20 (emphasis added).

15

- As I stated before, we do not have a reliable ***signal to infer incognito*** mode at this time we receive an ad query. *Id.* 140:6-10 (emphasis added).

These statements were misleading, at best. Google had already implemented a specific field within Google logs to detect Incognito. Whether Mr. Liao would now contend that signal is 100% accurate is of no moment. Google deemed the signal accurate enough to roll it out for its own use, and Plaintiffs are entitled to this discovery.

Google might have gotten away with concealing critical evidence but for this Court's ruling on the Bert Leung document dispute. The Court agreed with Plaintiffs, ordering Google to provide hit counts for the search terms that Plaintiffs requested and to then meet-and-confer to resolve the dispute. Dkt. 401. It turns out that Plaintiffs' proposal hit on just 982 documents, and Google shortly thereafter made a production from Mr. Leung's custodial files. Mao Decl. ¶ 5. That February 18, 2022 production revealed to Plaintiffs, for the first time, that Google had actually implemented a field within particular logs called "████████████." Ex. 9, GOOG-BRWN-00845312 at -18 (Leung: "████████████████████████████████████████████ ████████████s"). And days later, Plaintiffs learned, again for the first time, that (a) Google had removed this field from a log schema produced to Plaintiffs and (b) continued to withhold in their entirety *other* logs with the field.[2] In light of all of these revelations, Plaintiffs are seeking additional discovery from Google relating to this field. *See* Dkt. 424 at P22.

But regardless of whether Plaintiffs obtain additional discovery, Google's persistent efforts over 18 months to obstruct discovery and conceal its implementation of an Incognito detection tool should not be countenanced. Google must be held accountable for its misconduct.

---

[2] Google might point out in opposition that it produced a tiny number of documents alluding to the possibility of developing a "████████████████" field prior to the February 18, 2022 production. *See generally* Mao Decl. (summarizing the earlier productions). None of those documents showed that Google actually implemented the field in Google logs; they at most reflected the idea of creating such a field. And Plaintiffs had no reason to believe this field had been actually implemented, particularly when Google (1) removed the field from a log schema it produced, and (2) a Google witness testified that Google did not in fact implement any Incognito detection signal.

16

1

<u>ARGUMENT</u>

2

**I.      Legal Standard**

3        Under Rule 37(b)(2)(A), when a party fails to comply with a discovery order, a court may

4   impose "whatever sanctions are just . . . up to dismissal of part or all of the party's claims."

5   *Sanchez v. Rodriguez*, 298 F.R.D. 460, 463 (C.D. Cal. 2014).  Such remedies may include but are

6   not limited to establishing facts in favor of the moving party, prohibiting the party in violation

7   from supporting designated claims or introducing designated matters in evidence, imposing

8   monetary sanctions in the form of reasonable expenses caused by the failure to obey, treating this

9   failure as contempt and staying the proceedings until the order is obeyed.  *See* Fed. R. Civ. P.

10  37(b)(2). In the context of Rule 37(b) sanctions, the court reads the term "order" in Rule 37(a)

11  "broadly."  *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1222 (9th Cir. 2018).  A "district court

12  has great latitude in imposing sanctions for discovery abuse." *Dahl v. City of Huntington Beach*,

13  84 F.3d 363, 367 (9th Cir. 1996).

14       In addition, "discovery misconduct may be punished under the court's 'inherent powers' to

15  manage its affairs." *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 396 (N.D. Cal.

16  2012) (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng. Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.

17  1992)); *see also Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (district courts have inherent

18  power to levy sanctions for "bad faith or conduct tantamount to bad faith," including recklessness

19  combined with "frivolousness, harassment, or an improper purpose.").

20  **II.     Google Violated the November 12 Order, and Abused the Discovery Process
            Throughout this Case**

21

        Google      violated      the      November      12      Order      by      (1)      withholding      the

22  "███████████████" field from Plaintiffs, and (2) representing to the Court that it had

23  identified all relevant sources to Plaintiffs. The November 12 Order required Google to "provide

24  a declaration, under penalty of perjury from Google, not counsel, that . . . [t]o the best of its

25  knowledge, Google has provided a complete list of data sources that contain information relevant

26

27                                          17

28

---

1   to Plaintiffs' claims." *Id.* Ex. 1 ¶ 1. A Google Discovery Manager provided that declaration on

2   November 18. Dkt. 338. ¶ 3.

3          In fact, Google altered one of the log schemas it produced to Plaintiffs by removing the

4   ████████████████" field from the log, and Google continues to withhold a still-

5   unspecified number of other logs that contain this same Incognito detection field, including logs

6   that contain so-called "unauthenticated" data. There is no excuse for these plain-as-day violations

7   of this Court's order, particularly when Google knows that the purpose of this process is to

8   "***provide the* Brown . . . *Plaintiffs the tools to identify class members using Google's data*.**" Dkt.

9   331 at 4 (emphasis added).

10         Plaintiffs expect Google to argue that some of the withheld logs did not have to be produced

11  because those logs contain "Search" data or "authenticated" data. But the whole point of the

12  Special Master process is to "provide the *Brown* . . . Plaintiffs the tools to identify class members

13  using Google's data." Dkt. 331 at 4. Search data is obviously such a tool. As explained in Plaintiffs'

14  portion of the 30(b)(6) letter brief, people run Google searches to visit non-Google websites. Dkt.

15  411 at 2.  Therefore, the Court ordered Google to produce a witness to testify about "Google's

16  ability to identify users or devices based on their Google searches within a private browsing mode."

17  Dkt. 418-1 at 26. In any event, Google has also refused to confirm whether it withheld any logs

18  with this field that are specific to so-called "unauthenticated" data. Mao Decl. ¶¶ 26. If Google has

19  produced all "unauthenticated" data logs that contain the Incognito detection tool, then surely

20  Google would confirm as much. At bottom, in a case where Google has been disputing Plaintiffs'

21  ability to identify class members, there is simply no excuse for Google withhold from Plaintiffs

22  logs that contain the "████████████████" field.

23          As a result of Google's violations, with just one week left before the close of fact

24  discovery,   Plaintiffs   still   lack   a   single   piece   of   data   associated   with   the

25  "████████████████" field. The Court and Special Master could not have envisioned this

26  outcome.

27

28

                                                   18

But the misconduct here goes beyond violating one or two Court Orders. Google has made a mockery of the entire course of discovery. To recap:

- Google omitted Mr. Leung and Ms. Liu from a list of over 200 employees with relevant information and likewise omitted them from an interrogatory response.

- Google briefed and prevailed in many discovery disputes, including over ESI preservation, by misrepresenting the burden associated with Plaintiffs' requests. Google could have simply followed Mr. Leung's lead and produced and preserved a tiny fraction of its data—only the data used for the "██████████████" field.

- A Google witness testified that any projects to identify and track Incognito traffic had been discontinued for alleged lack of accuracy.  Ex. 8, Liao Tr. 134:7-10.

## III.   Google Should Be Sanctioned

To remedy the severe prejudice caused by Google's misconduct, Plaintiffs respectfully seek: (A) evidentiary sanctions and jury instructions related to Google's concealment of the "████████████████" field; and (B) reimbursement by Google for all fees paid by Plaintiffs' counsel to Special Master Brush.

### A.   Evidentiary Sanctions and Jury Instructions

If a party does "not obey[] a [d]iscovery [o]rder," Rule 37(b)(2)(A)(i) permits the court to "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action." *See also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695 (1982) (affirming sanction as "clearly appropriate" where petitioners engaged in continued delay in "obvious disregard of [court] orders")..  Because Google failed to comply with the November 12 Order, the Court should "take[] as established for purposes of the action" that (1) Google can detect event-level Incognito traffic within its logs,  (2) this Incognito data is linkable to users, so that (3) the class is ascertainable. Fed. R. Civ. P. 37(b)(2)(A)(i).

"Court intervention to protect Plaintiffs' ability to prove the[ir] allegations is necessary" when, as here, "[t]he withheld evidence is uniquely within the possession of the Defendants" and "there was no way for Plaintiffs to test their theory" as a result of the "documents withheld." *Guifu*, 281 F.R.D. at 39; *see also Zurich Am. Ins. Co. of Ill. v. World Priv. Sec., Inc.*, 2020 WL 8610839,

19

1    at *5 (C.D. Cal. Nov. 23, 2020) ("As a result of [defendant's] shortcomings, the Court finds that

2    evidentiary sanctions against it are warranted. Plaintiffs assert that there are certain factual matters

3    at issue in [Plaintiff's] discovery that must be established for the purposes of this action.

4    Accordingly, the Court finds that the following matters are established for the purposes of this

5    action . . . ."). Such an adverse factual finding "merely serves as a mechanism for establishing facts

6    that are being improperly hidden by the party resisting discovery." *Gibson v. Chrysler Corp.*, 261

7    F.3d 927, 948 (9th Cir. 2001) (noting presumption that party resisting discovery "is doing so

8    because the information sought is unfavorable to its interest.").

9        Google should likewise be precluded from presenting any arguments in this case

10   concerning whether Google can identify Incognito traffic within logs and whether that data is

11   linkable to users. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii); *Von Brimer v. Whirlpool Corp.*, 536 F.2d

12   838, 844 (9th Cir. 1976). "Preclusionary orders ensure that a party will not be able to profit from

13   its own failure to comply." *Sas v. Sawabeh Info. Servs.*, 2015 WL 12711646, at *9 (C.D. Cal. Feb.

14   6, 2015) (quoting *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369

15   (9th Cir. 1980)). "[I]t is entirely reasonable to sanction [Google's] defiance of the [November 12]

16   Order by precluding [it] from presenting evidence on [issues for which Google] ha[s] not provided

17   timely and complete discovery." *Id.* "Discovery is first and foremost a way for one party to

18   determine the evidence supporting another party's allegations, so it can properly investigate that

19   evidence prior to trial." *Lanier v. San Joaquin Valley Offs. Ass'n*, 2016 WL 4764669, at *8 (E.D.

20   Cal. Sept. 12, 2016).   Google "has thwarted [Plaintiffs'] efforts to understand the basis of"

21   Google's class identification arguments, so it is "appropriate, based on these failures, to preclude

22   [Google] from introducing further facts or evidence in response to these issues." *Id.* Otherwise,

23   Google will benefit from any evidentiary gaps that it has caused by refusing to comply with this

24   Court's November 12 Order.

25       Evidentiary sanctions are particularly important for Plaintiffs' anticipated motion for class

26   certification. In *Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118, at *3 (N.D. Cal.

27

28

                                            20

Aug. 29, 2011), the court granted a preclusion remedy after the defendant refused to produce a corporate representative, in violation of a court order. The court agreed with Plaintiffs' concern that "the information withheld from Plaintiffs could very well bear on whether or not Plaintiffs are able to establish commonality of issues across the putative class." *Id.* "To remedy the prejudice suffered by Plaintiffs in their class certification motion" the Court prohibited the defendant from "utilizing declaration evidence . . . regarding its corporate structure or ownership in its opposition to class certification/collective action." *Id.* at *4; *see also Hanni v. Am. Airlines, Inc.*, 2009 WL 1505286, at *5 (N.D. Cal. May 27, 2009) (ordering that plaintiffs who failed to comply with discovery obligations "may not rely on any discovery provided after the close of class certification discovery in support of their motion for class certification or in opposition to Defendant's motion to deny class certification"); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 WL 4598490, at *13 (N.D. Ill. Aug. 29, 2013) (granting preclusion order where defendant "engaged in a pattern of stonewalling" production of databases it claimed contained evidence supporting its statutory defenses against liability).

Google's eighteen-month-long obstruction and misconduct warrants sanctions regardless of whether Google finally abides by the November 12 Order. Google has already jeopardized Plaintiffs' experts' ability to "conduct the required analysis within the time limits set [by the Court]." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 557 (N.D. Cal. 2009) (precluding party from presenting evidence concerning alleged lost profit damages for failing to timely produce the relevant data); *see also Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012) (preclusion warranted for belated production of relevant source code because "Apple's experts were left with no meaningful opportunity to comprehend this code, even as they face criticism from Samsung in deposition (and assuredly at trial) that their code analysis was deficient"); *Hanni*, 2009 WL 1505286, at *5 (prohibiting party from relying on evidence produced after the close of class certification-related discovery when moving for class certification).

Rule 37(b)(2)(A) also "authorizes a court to issue an adverse-inference jury instruction as a remedy when 'bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence.'" *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (quoting *Karnazes v. Cty. of San Mateo*, 2010 WL 2672003, at *2–3 (N.D. Cal. July 2, 2010) (awarding an adverse-inference jury instruction when plaintiff failed to facilitate the deposition of her treating physician))). "[T]he court does not need to find bad faith before it issues an adverse-inference instruction as a sanction." *First Fin. Sec., Inc.*, 2016 WL 5870218, at *6 (granting adverse inference jury instruction sanctions where "gross negligence [] resulted in a failure to turn over [] native-format data", the receipt of which would have provided "a valuable opportunity to verify the accuracy of the highly relevant facts"). Google's decision to withhold relevant evidence of its employees' successful efforts to identify Incognito traffic—at the same time that it represented to Plaintiffs in depositions and in the Special Master process that such evidence did not exist—surpasses gross negligence. As a remedy, Plaintiffs seek an instruction to the jury that "Google concealed and altered evidence regarding its ability to identify Incognito traffic." Such an adverse inference instruction would limit the benefit that Google can extract from its misconduct. *See Kannan v. Apple Inc.*, 2020 WL 9048723, at *9 (N.D. Cal. Sept. 21, 2020) (ordering adverse jury instruction where party adopted a unilateral and limiting interpretation of discovery obligations, and either deleted or withheld responsive documents in sole possession he was ordered to produce).

## B.    Reimbursement of Fees Paid to Special Master Brush

The Federal Rules require one last sanction: Because Google violated a discovery order (three, actually), "the court *must* order [Google], the attorney[s] advising [it], or both to pay the reasonable expenses, including attorney's fees, caused by [its] failure" to comply. Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). The Court repeatedly set forth a detailed process pursuant to which Google would produce data relevant to Plaintiffs' efforts to identify class members and quantify interceptions. In its April 30 and September 16 Orders (Dkts. 147-1, 273), the Court ordered

22

1  Google to produce the named Plaintiffs' data in a three-step process overseen by Special Master

2  Brush. Google was ordered to finish production by October 6, 2021, Dkt. 273 at 2, but because of

3  Google's misconduct, the Court concluded on November 12 that Plaintiffs' data had "not yet been

4  fully produced," Dkt. 299 ¶ 53 (Special Master's Report and Recommendation); Dkt. 331 at 3

5  (affirming finding). In its November 12 Order, the Court gave Google a second chance and

6  restarted the data production process. Dkt. 331 Ex. 1. But here we are again. Only this time, as we

7  have exhaustively explained, Google is *tampering with* evidence, not just concealing it. And that

8  evidence goes to the core purpose of the proceedings before the Special Master: detection of

9  private browsing.

10       Because Google has frustrated the purpose of the proceedings before the Special Master,

11  Plaintiffs' counsel and the class should not be made to pay for it. Google can avoid these monetary

12  sanctions only if it shows that its violations of the Court's Orders were "substantially justified."

13  Fed. R. Civ. P. 37(b)(2). But there is no way to justify such severe misconduct. *See HRC-Hainan*

14  *Holding Co., LLC v. Yihan Hu*, 2020 WL 1643786, at *3 (N.D. Cal. Apr. 2, 2020) (violation "was

15  not substantially justified" where the circumstances "strongly indicate[d]" bad faith); *First Fin.*

16  *Sec., Inc.*, 2016 WL 5870218, at *7 (same, even though the failure to produce native version of

17  document as ordered by the court was "consistent with technological ignorance and . . . not

18  necessarily the result of subjective bad faith").  Plaintiffs therefore ask the Court to order Google

19  to reimburse Plaintiffs for all fees they have paid and will pay to Special Master Brush.

20  <u>**CONCLUSION**</u>

21       Plaintiffs request that the Court issue an Order to Show Cause for why it should not enter

22  any or all of the aforementioned sanctions and remedies for Google's discovery misconduct:

23

24  Dated: February 26, 2022          MORGAN AND MORGAN

25

26

27       By  */s/ John A. Yanchunis*

28  23

1

2      Mark C. Mao (CA Bar No. 236165)
       mmao@bsfllp.com
3      Beko Rebitz-Richardson (CA Bar No. 238027)
       brichardson@bsfllp.com
4      Erika Nyborg-Burch (CA Bar No. 342125)
       enyborg-burch@bsfllp.com
5      BOIES SCHILLER FLEXNER LLP
       44 Montgomery Street, 41st Floor
6      San Francisco, CA 94104
       Telephone: (415) 293 6858
7      Facsimile (415) 999 9695

8
       James W. Lee (pro hac vice)
9      jlee@bsfllp.com
       Rossana Baeza (pro hac vice)
10     rbaeza@bsfllp.com
       BOIES SCHILLER FLEXNER LLP
11     100 SE 2nd Street, Suite 2800
       Miami, FL 33130
12     Telephone: (305) 539-8400
       Facsimile: (305) 539-1304
13
       Amanda Bonn (CA Bar No. 270891)
14     abonn@susmangodfrey.com
       SUSMAN GODFREY L.L.P.
15     1900 Avenue of the Stars, Suite 1400
       Los Angeles, CA 90067
16     Telephone: (310) 789-3100

17
       William Christopher Carmody (pro hac vice)
18     bcarmody@susmangodfrey.com
       Shawn J. Rabin (pro hac vice)
19     srabin@susmangodfrey.com
       Steven Shepard (pro hac vice)
20     sshepard@susmangodfrey.com
       Alexander P. Frawley (pro hac vice)
21     afrawley@susmangodfrey.com
       SUSMAN GODFREY L.L.P.
22     1301 Avenue of the Americas, 32nd Floor
       New York, NY  10019
23     Telephone: (212) 336-8330

24

25
       John A. Yanchunis (pro hac vice)
26     jyanchunis@forthepeople.com
       Ryan J. McGee (pro hac vice)
27

24

28

1    rmcgee@forthepeople.com
     MORGAN & MORGAN, P.A.
2    201 N Franklin Street, 7th Floor
     Tampa, FL 33602
3    Telephone: (813) 223-5505
     Facsimile: (813) 222-4736
4
5    Michael F. Ram, CA Bar No. 104805
     MORGAN & MORGAN
6    711 Van Ness Ave, Suite 500
     San Francisco, CA 94102
7    Tel: (415) 358-6913
     mram@forthepeople.com
8
9    *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    25

28