**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

| | |
|---|---|
| Diane M. Doolittle (CA Bar No. 142046) | Andrew H. Schapiro (admitted *pro hac vice*) |
| dianedoolittle@quinnemanuel.com | andrewschapiro@quinnemanuel.com |
| Sara Jenkins (CA Bar No. 230097) | Teuta Fani (admitted *pro hac vice*) |
| sarajenkins@quinnemanuel.com | teutafani@quinnemanuel.com |
| 555 Twin Dolphin Drive, 5th Floor | 191 N. Wacker Drive, Suite 2700 |
| Redwood Shores, CA 94065 | Chicago, IL 60606 |
| Telephone: (650) 801-5000 | Telephone: (312) 705-7400 |
| Facsimile: (650) 801-5100 | Facsimile: (312) 705-7401 |
| | |
| Stephen A. Broome (CA Bar No. 314605) | Josef Ansorge (admitted *pro hac vice*) |
| stephenbroome@quinnemanuel.com | josefansorge@quinnemanuel.com |
| Viola Trebicka (CA Bar No. 269526) | Xi ("Tracy") Gao (CA Bar No. 326266) |
| violatrebicka@quinnemanuel.com | tracygao@quinnemanuel.com |
| Crystal Nix-Hines (Bar No. 326971) | Carl Spilly (admitted *pro hac vice*) |
| crystalnixhines@quinnemanuel.com | carlspilly@quinnemanuel.com |
| Alyssa G. Olson (CA Bar No. 305705) | 1300 I Street NW, Suite 900 |
| alyolson@quinnemanuel.com | Washington D.C., 20005 |
| 865 S. Figueroa Street, 10th Floor | Telephone: (202) 538-8000 |
| Los Angeles, CA 90017 | Facsimile: (202) 538-8100 |
| Telephone: (213) 443-3000 | |
| Facsimile: (213) 443-3100 | |
| | |
| Jomaire Crawford (admitted *pro hac vice*) | Jonathan Tse (CA Bar No. 305468) |
| jomairecrawford@quinnemanuel.com | jonathantse@quinnemanuel.com |
| 51 Madison Avenue, 22nd Floor | 50 California Street, 22nd Floor |
| New York, NY 10010 | San Francisco, CA 94111 |
| Telephone: (212) 849-7000 | Telephone: (415) 875-6600 |
| Facsimile: (212) 849-7100 | Facsimile: (415) 875-6700 |

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated, | Case No. 4:20-cv-03664-YGR-SVK |
| | **DECLARATION OF JOSEF ANSORGE IN SUPPORT OF GOOGLE'S OPPOSITION TO PLAINTIFF'S REQUEST FOR AN ORDER TO SHOW CAUSE** |
| Plaintiffs, | |
| v. | Referral: Hon. Susan van Keulen, USMJ |
| GOOGLE LLC, | |
| Defendant. | |

I, Josef Ansorge, declare as follows:

1. I am of counsel at Quinn Emanuel Urquhart & Sullivan LLP, which serves as Google's outside counsel in this litigation. I submit this declaration in support of Google's Opposition to Plaintiffs' Request for the Court to Issue an Order To Show Cause for Why Google Should Not Be Sanctioned for Discovery Misconduct. I make this declaration of my own personal, firsthand knowledge, and if called as a witness, I could and would testify competently thereto.

**Discovery Dispute P16**

2. On May 26, 2021, the parties informed the Court of a discovery dispute, designated P16, related to Plaintiffs' RFP 120: "Documents sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client Data Header." Dkt. 177.

3. On June 8, 2021, the Court ordered the parties to submit supplemental briefing on the following specific question: "What is Plaintiffs' factual basis to dispute Google's position that there are multiple reasons why the X-Client Data field may be empty and therefore the empty field does not necessarily identify class members?" Dkt. 191-1.

4. On July 9, 2021, the parties submitted a joint letter brief in which Plaintiffs responded to the Court's specific factual question ("What is Plaintiffs' factual basis to dispute Google's position that there are multiple reasons why the X-Client Data field may be empty and therefore the empty field does not necessarily identify class members?") and Google responded to Plaintiffs' position. *See* Dkt. 218.

5. On July 13, 2021, the Court appointed Douglas Brush as Special Master. Dkt. 220. On the same day, the Court referred discovery dispute P16 to the Special Master. Dkt. 221.

6. On July 28, 2021, the parties provided the Special Master with materials including briefing on P16 and sources cited in that briefing.

7. On September 10, 2021, the Special Master requested updates from the parties on various discovery disputes, including P16.

8. On September 14, 2021, the parties provided the Special Master with separate updates on various discovery disputes, including P16.

9. On October 6, 2021, the parties informed the Special Master that they were at an impasse regarding P16 and requested his guidance. *See* Dkt. 299 ¶ 35.

10. On October 20, 2021, the Special Master issued a report in which he resolved P16 by denying Plaintiffs' request for documents sufficient to identify "Chrome web browser communications that did not contain any X-Client Data Header" as overbroad. Dkt. 299-1 at 2. The report included findings that the Special Master process has "led to significant progress in resolution of the discovery disputes referred to the Special Master." Dkt. 299 ¶ 49.

11. On October 27, 2021, Plaintiffs submitted objections to the Special Master's October 20, 2021 report, including objections to the Special Master's ruling on P16. Dkt. 311 at 5.

12. On November 12, 2021, the Court issued an order finding that "the discovery disputes at hand [including P16] have been briefed and argued extensively before this Court, before the Special Master, and most recently again before this Court at the hearing on November 4, 2021." Dkt. 331 at 2. The Court conducted a *de novo* review of the Special Master's factual conclusions regarding P16 and adopted his findings. *Id*. at 3.

**Summary of Google's Participation in the Special Master Process**

13. Over the past eight months of Special Master discovery, Google:

- Participated in 23 virtual conferences with Plaintiffs before the Special Master, including four meetings where seven Google engineers answered deposition-style questions and performed live iterative searches;

- Disclosed ▇ potentially relevant data sources, provided relevant information including field names and descriptions, and ran searches across seven sources using Plaintiffs' identifiers;

- Ran searches for more than ▇ search terms/cookie values across ▇ different data sources; produced tens of thousands of pages of decrypted cookies, scripts, and data associated with GAIA IDs, IDE cookie values, NID cookie values, Analytics CID values, and UMA IDs, provided by consenting Plaintiffs and Plaintiffs' experts, including from logs that contain information confidential to third party publishers which required reasonable notice to such

1    publishers for Plaintiffs' first set of searches pursuant to the November 12
2    order;

3   •  Ran additional searches for more than ▮ identifiers across ▮ data sources;
4      provided tens of thousands of pages of decrypted cookies, scripts, and data
5      associated with GAIA IDs, PPIDs, IDE cookie values, NID cookie values,
6      Analytics CID values, UMA IDs, UID values, and combination of IP address
7      and User Agent values, for Plaintiffs' second set of searches pursuant to the
8      November 12 order;

9   •  Produced all preserved data from logs that do not contain confidential third
10     party information, totaling more than ▮ GB; and

11  •  Sent multiple letters to the Special Master and Plaintiffs providing further
12     information, explaining concepts and processes, and responding to various
13     factual questions.

14.   Throughout the Special Master process, Special Master Brush has consistently recognized Google's good faith efforts, for example:

   a.  "I mean we have to assume there's a good-faith effort that Google has made some attempts on this in a seemingly significant matter to use the tools identified to search the data in a responsive and productive way. I do agree that … greater transparency is always helpful, as long as it's not being used as something to play some 'gotcha' games." Special Master Hearing Tr. 27:6-12, Feb. 16, 2022, a true and correct copy of excerpts is attached hereto as **Exhibit 1**;

   b.  "And, again, these are complicated issues. It's complicated technology. I think we're all doing our best." *Id.*, 62:11-13;

   c.  "Again, let's not always frame everything as if there was some malice or trying to hide things. I mean, this is a complicated issue." Special Master Hearing. Tr. 37:14-17, Feb. 25, 2022, a true and correct copy of excerpts is attached hereto as **Exhibit 2**; and

   d.  "What's before me, yes, you have, both sides have worked together." Hr. Tr. 9:6-7, Special Master Hearing Tr. Mar. 5, 2022, a true and correct copy of excerpts is attached hereto as **Exhibit 3**.

**Details of Google's Participation in the Special Master Process and Google's Use of Logs Front Door to List Top ▓ Fields For Requested Log Sources**

15. Following Mr. Brush's appointment on July 13, 2021 as Special Master (Dkt. 220), on July 30, 2021 and September 15, 2021, Google participated in Zoom conferences with Plaintiffs before the Special Master.

16. On September 16, 2021, the Court issued an Order setting forth a three-step process for the Special Master discovery whereby (1) potentially relevant sources are identified, (2) additional information is provided for a subset of those sources, and (3) a further subset of those sources is then searched. Dkt. 273.

17. Pursuant to the Order and the Special Master's instructions, Google:

- Identified ▓ potentially relevant data sources, including the name of the data source, a description of each data source's purpose and function, and information about the default and current retention status;

- Provided additional information about ▓ sources, including schema/fields, field descriptions, and documents relevant to searching and working with the requested sources;

- Searched and produced existing data from ▓ data sources selected by Plaintiffs; and

- Provided a diagram regarding relevant data, data-flow, and identifiers.

18. Google also participated in Zoom conferences with Plaintiffs before the Special Master on September 22, 2021, October 5, 2021, and October 12, 2021.

19. On October 20, 2021, the Special Master issued a report finding that "Google has engaged in and is, at the time of this Special Master's Report and Recommendation, in the process of producing relevant, responsive materials for the respective Plaintiffs under the supervision and as a direct result of the Special Master's intervention in resolving disputes referred to the Special Master." Dkt. 299 ¶ 50.

20. On November 4, 2021, the parties had a live in-person hearing before this Court regarding the Special Master's report and recommendation.

21. On November 12, 2021, the Court issued an Order laying out steps to conclude the Special Master process. *See* Dkt. 331 at 5 ("The requests for production from Google must and will come to an end as provided for in Exhibit 1."); *see also id.* at 8 ("Google shall provide a declaration, under penalty of perjury from Google, not counsel, that 1. To the best of its knowledge, Google has provided a complete list of data sources that contain information relevant to Plaintiffs' claims . . .").

22. On November 15, 2021, Google participated in a Zoom conference with Plaintiffs before the Special Master.

23. On November 18, 2021, Google submitted a declaration from Andre Golueke, a Discovery Manager at Google, stating that "To the best of my knowledge and informed understanding, Google has provided a complete list of sources that contain information about Plaintiffs relevant to Plaintiffs' claims." Dkt. 338 ¶ 3.

24. Plaintiffs did not challenge Mr. Golueke's declaration or the exhibits attached thereto, and the Special Master team found that with the Golueke declaration Google met the requirements of the November 12 order. Attached hereto as **Exhibit 4** is a true and correct copy of Mr. Schmidt's November 22, 2021 email to Counsel for Google.

25. On November 18, 2021, Google also submitted to the Special Master lists of field and field descriptions for ▮ data sources, and lists of all data sources searched prior to and throughout the Special Master process, dates of the searches, all corresponding Bates numbers, identifiers for the searches, names of the tools used, and full search scripts.

26. On November 23, 2021, Google submitted additional information in response to the November 12, 2021 Order.

27. On November 24, 2021, Google participated in a Zoom conference with Plaintiffs before the Special Master. During the meeting, Google explained the technical challenges and burden associated with providing all fields for all potentially relevant ▮ logs, and requested to limit its production to the largest ▮ fields. Google's request was not for the purpose of including or excluding certain fields from its production. Rather, the limitation was driven by the capabilities of ▮—a tool Google maintains in the ordinary course of business capable of automatically generating a list of the top ▮ fields by size for a ▮ log without the delay and

burden associated with expending substantial new engineering resources on a custom solution which may or may not have been achievable. The Special Master revised the order to require Google to provide names for the largest [redacted] fields for individual [redacted] logs.

28. On December 1, 2021, Google produced the ordered field names for the largest [redacted] fields for [redacted] logs as described in Section 3, Numbers 8 and 9 of the November 12, 2021 Order, pulled by the Schema View on Google's readily available tool [redacted]. Attached hereto as **Exhibit 5** is a true and correct copy of Google's December 1, 2021 letter to the Special Master ("Along with this letter, we are providing field names for the largest [redacted] fields for all the additional [redacted] logs as described in Section 3, Numbers 8-9 of the Order …").

29. On December 6, 2022, Google provided additional field information regarding [redacted] previously searched data sources and [redacted].

30. On December 8, 2022, Google provided additional field information regarding [redacted] data sources. Google noted that, "As communicated earlier, including at the November 24 conference, the December 1 submission contains the top [redacted] fields by size for the [redacted] logs pulled through Google's automated tool [redacted]." Attached hereto as **Exhibit 6** is a true and correct copy of Google's December 8, 2021 letter to the Special Master.

31. On December 9, 2022, the Special Master acknowledged that "the undertaking of efforts to pull this information in such a short period of time has been tremendous," and thanked Google for its "hard work and continued cooperation in moving forward with the process." Attached hereto as **Exhibit 7** is a true and correct copy of Mr. Schmidt's December 9, 2021 email to Counsel for Google.

32. On the same day, Counsel for Plaintiffs wrote to the Special Master, raising certain issues regarding Google's compliance with the November 12, 2021 Order. In response, on December 10, 2021, the Special Master team stated that, "we are pleased that Google has now provided Plaintiffs with field names for the potentially relevant data sources where possible … at this time, the Special Master is not going to require Defendant to provide more field descriptions than have already been provided for Section 3 processes[.]" The Special Master team also acknowledged that "the Special Master temporarily modified the field listing requirement to include

the lesser of ▮ fields or all of the fields in each data source." Attached hereto as **Exhibit 8** is a true and correct copy of Mr. Schmidt's December 10, 2021 email to the parties.

33. On December 15, 2021, Google participated in a Zoom conference with Plaintiffs before the Special Master. During the conference, Plaintiffs requested that Google add ▮▮▮▮▮▮▮▮▮▮ as a relevant source and provide additional field information on the basis that this is one of the sources "Google used as part of its mid-2020 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮." During the same conference, Google agreed to add ▮▮▮▮▮▮▮▮ as a source in the Special Master process. Attached hereto as **Exhibit 9** is a true and correct copy of Plaintiffs' December 15, 2021 email to the Special Master and Counsel for Google.

34. On the same day, Google provided the requested information. Attached hereto as **Exhibit 10** is a true and correct copy of Google's December 15, 2021 letter to the Special Master ("In response to Plaintiffs' request made today for additional information related to ▮▮▮▮▮▮▮▮▮▮, Google has used its ▮▮▮▮▮▮▮▮ tool to compile the top ▮ fields by size for ▮▮▮▮▮▮▮▮▮▮.") (emphasis in original).

35. On December 15, 2021, Google received Plaintiffs' first round search requests, asking that Google search more than ▮ identifiers across ▮ data sources. On December 17, 2021, Plaintiffs confirmed that the cookie values all came from the browsers of consenting Plaintiffs and Ms. Antoinette Simmons, who was not a named Plaintiff and is not a named Plaintiff at the time of writing.

36. One of the sources Plaintiffs selected is a log not included in Dkt. 338-1. The source, called ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, is a personal log (or P-log) to which data is written when a user is signed in to a Google Account. Data in p-logs is outside of the case scope because Plaintiffs' class definition is expressly limited to signed out users. Dkt. 136-1 (SAC), ¶ 192; Dkt. 395-2 (TAC), ¶ 192. In any event, Google searched ▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ and, following guidance from the Special Master, produced responsive data to Plaintiffs.

37. On December 21, 2021, the Special Master approved Plaintiffs' request to include "▮▮▮▮▮▮▮▮▮▮ as a potentially relevant data source for which Brown Plaintiffs may request

1 | searches be performed[.]" Attached hereto as **Exhibit 11** is a true and correct copy of Mr. Schmidt's
2 | December 21, 2021 email to the parties.

38.  On the same day, Google made a production of data pursuant to the Special Master process.

39.  On December 24, 2021, Google made a production of data pursuant to the Special Master process.

40.  On December 26, 2021, Google received Plaintiffs' search requests for ▮▮▮▮▮▮▮▮▮▮.

41.  On December 29, 2021, Google made a production of data pursuant to the Special Master process.

42.  On December 30, 2021, Google submitted a letter to the Special Master in response to various factual questions posed by Plaintiffs, and made another production of data pursuant to the Special Master process, including search results for ▮▮▮▮▮▮▮▮▮▮.

43.  Between December 31, 2021 and January 20, 2022, Google made ▮ additional productions of data pursuant to the Special Master process.

44.  On January 19, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master.

45.  On January 31, 2022, Google produced additional data pursuant to the Special Master process and submitted a letter to the Special Master and Counsel for Plaintiffs in response to various factual questions posed by Plaintiffs.

46.  On February 2, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master.

47.  On February 14, 2022, Google agreed to Plaintiffs request to add Bert Leung as their forty-third custodian; in excess of the Court-ordered cap.

48.  On February 16, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master.

49.  On February 22, 2022, Google received Plaintiffs' second round search requests, requesting Google to search more than ▮ identifiers across ▮ data sources.

50.     On February 23, 2022, Google produced additional data pursuant to the Special Master process.

51.     On February 25, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master.

52.     On February 26, 2022, Google produced additional data pursuant to the Special Master process.

53.     On February 28, 2022, four Google engineers participated in a Zoom conference with Plaintiffs' counsel and experts before the Special Master, and Google engineers answered Plaintiffs' experts' questions about log data and tools.

54.     On March 1, 2022, four Google engineers participated in a Zoom conference with Plaintiffs' counsel and experts before the Special Master, and Google engineers answered Plaintiffs' experts' questions about log data and tools.

55.     On the same day, Google sent a letter to the Special Master and Plaintiffs identifying the ▇▇▇▇ logs from which the ▇▇▇▇▇▇▇▇▇▇▇▇ pulls data.

56.     On March 2, 2022, four Google engineers participated in a Zoom conference with Plaintiffs' counsel and experts before the Special Master, and Google engineers answered Plaintiffs' experts' questions about log data and tools.

57.     In providing Plaintiffs information about fields they were seeking, Google agreed to do so using Google's Dremel tool, at Plaintiffs' insistence. Using this tool resulted in the inclusion of an overinclusive set of fields from the underlying GWS proto.

58.     On the same day, Google produced additional data pursuant to the Special Master process and provided a status update email per the Special Master's request.

59.     On March 3, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master. On the same day, Google also sent two letters providing additional information pursuant to the Special Master process, including the comments written by engineers in the underlying log proto for the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ field: "Indicates whether a request may come from Chrome Incognito. Note that the accuracy of this field

is not guaranteed, and this field can only be used for monitoring and analysis purposes. For more information, please refer to go/detect-incognito and go/3p-blocking-browsers."

60. On March 4, 2022, two Google engineers participated in a Zoom conference with Plaintiffs' counsel and experts before the Special Master, and performed live iterative searches. On the same day, Google also produced additional data pursuant to the Special Master process, including the top ▇ fields by size for the ▇▇▇ logs from which the ▇▇▇ ▇▇▇▇▇▇▇ pulls data.

61. On Saturday, March 5, 2022, Google responded to Plaintiffs' letter regarding the Special Master process, in which Google provided the proto comment for the ▇▇▇▇▇▇▇▇▇▇ field, agreed to follow Plaintiffs' counsel's suggestion to produce populated fields for the ▇▇▇ logs from which the ▇▇▇▇▇▇▇▇ ▇▇▇ pulls data, and reiterated the technical burdens associated with providing all field names for all identified logs. Attached hereto as **Exhibit 12** is a true and correct copy of Google's March 5, 2022 letter. The parties subsequently followed Plaintiffs' counsel's proposal to create a list of field names.

62. On the same day, Google participated in a Zoom conference with Plaintiffs before the Special Master. During the conference, the Special Master stated: "maybe it was my fault for saying—[indiscernible]—produce these top ▇▇ hoping that was going to be enough. Clearly, we need to refine things." Ex. 3, Hr. Tr. 67:8-11, Mar. 5, 2022.

63. On March 7, 2022, Google provided a letter update pursuant to the Special Master's request.

64. On March 8, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master.

65. On the same day, Google submitted to the Special Master and Plaintiffs a proposal regarding the process to provide information related to ▇▇▇ log sources that contain confidential third-party publisher information.

66. On March 9, 2022, Google produced all preserved data from ▇▇▇ logs that do not contain confidential third-party publisher information, totaling more than ▇ GB.

-10-                                    Case No. 4:20-cv-03664-YGR-SVK
                                        DECLARATION OF JOSEF ANSORGE

67. On March 10, 2022, Google produced additional data pursuant to the Special Master process, including fields populated by additional searches requested by Plaintiffs across the ▮ logs that contain the "▮▮▮▮▮▮▮▮" field and three other logs, including ▮▮▮▮▮▮▮▮.

68. On the same day, Google provided an email update to the Special Master.

69. On March 12, 2022, Google submitted a status update chart to the Special Master.

70. On Sunday, March 13, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master.

71. On the same day, Google submitted a status update chart to the Special Master.

72. On March 14, 2022, Google produced additional data pursuant to the Special Master process, including additional search results for ▮▮▮▮▮▮▮▮.

73. On March 15, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master.

74. On the same day, Google produced additional data pursuant to the Special Master process.

75. On March 17, 2022, Google produced additional data pursuant to the Special Master process.

76. On March 18, 2022, Google produced additional data pursuant to the Special Master process, including values for ▮ fields Plaintiffs selected for the ▮ logs that contain the "▮▮▮▮▮▮▮▮" fields and three other logs including ▮▮▮▮▮▮▮▮.

77. On the same day, Google submitted a data preservation proposal that included "the ▮▮▮▮▮▮▮▮ (based on ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮ boolean fields)" and "the Display Ads dashboard data (based on ▮▮▮▮▮▮▮▮ boolean field)." (emphasis in original).

78. On the same day, the Special Master urged Plaintiffs to provide search terms and criteria for the final round of searches "prior to business opening Monday EDT, March 21, 2022." Attached hereto as **Exhibit 13** is a true and correct copy of Mr. Schmidt's March 18, 2022 email to the parties.

79. On March 21, 2022, the Special Master again urged Plaintiffs to provide search terms and criteria for the final round of searches. Attached hereto as **Exhibit 14** is a true and correct copy of Mr. Schmidt's March 21, 2022 email to the parties.

80. On March 21, 2022, the Special Master requested to confer with the parties in order to "close[] out the only two open issues: 1. Final searches – what terms and data sources will be run on the final searches of data. 2. Closing out the preservation plan." The Special Master also noted that "To be crystal clear: This is the end of the process. We will not be arguing new issues or expanding discovery." Attached hereto as **Exhibit 15** is a true and correct copy of Special Master Brush's March 22, 2022 email to the parties.

81. On March 22, 2022, the parties met and conferred and Plaintiffs requested the ██████████████████████████████████████████ be added to Google's preservation proposal. On the same day, Google submitted an updated preservation proposal which included this field.

82. On March 23, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master.

83. On the same day, Google provided additional information requested by the Special Master, including deposition transcript and relevant exhibit used at Dr. Sadowski's 30(b)(6) deposition regarding the ██████████████████ and ██████████████ Boolean fields for the ██████ logs. Google also indicated that "to the extent Plaintiffs select any of [the] ██████ log sources for their next round of searches—and the Special Master approves the requests—Google agrees to conduct searches over those sources and produce responsive results." Attached hereto as **Exhibit 16** is a true and correct copy of counsel for Google's March 23, 2022 email to the Special Master and counsel for Plaintiffs.

84. On March 25, 2022, Google produced additional data pursuant to the Special Master process.

85. On March 26, 2022, the Special Master queried "where are we in the search negotiations and a proposed plan for the final searches." In response, Google indicated that it is "ready to initiate the final set of searches," and "look(s) forward to receiving the final set of search

1 requests from Plaintiffs[.]" Attached hereto as **Exhibit 17** is a true and correct copy of counsel for Google's March 26, 2022 email to the Special Master and counsel for Plaintiffs.

86. On March 28, 2022, Google produced additional information pursuant to the Special Master process and again urged Plaintiffs to provide the search terms and criteria for the final round of search under the Special Master process.

87. On March 31, 2022, the Special Master instructed that "Plaintiffs are to provide final searches at this point." On the same day, Google participated in a Zoom conference with Plaintiffs before the Special Master. Attached hereto as **Exhibit 18** is a true and correct copy of the Special Masters' March 31, 2022 email to counsel for Plaintiffs and counsel for Google.

88. On April 1, 2022, Google provided the proto comments for the ▮▮▮▮▮▮ field.

89. On April 2, 2022, Plaintiffs selected final searches in the Special Master process, including searches of log sources that "have an incognito detection bit" and are at issue in Plaintiffs' motion for sanctions. Attached hereto as **Exhibit 39** is a true and correct copy of search parameters forwarded from the Special Master team to Google on April 2, 2022.

**Additional Productions and Discovery Related To Inferring ▮▮▮▮▮▮**

90. Mr. Leung's name appears in approximately 9,500 documents produced between April 2021 and December 2021.

91. From June through November 2021, there were at least 12 documents produced, which were all emails from Bert Leung himself and discussed various Incognito related projects and tasks (*e.g.*, ▮▮▮▮▮▮)[1]

92. Google has produced documents related to ▮▮▮▮▮▮ since at least April 9, 2021. *See e.g.,* GOOG-BRWN-00027543, a true and correct copy attached hereto as **Exhibit 19**; GOOG-BRWN-00028978, a true and correct copy attached hereto as **Exhibit 20**. Mention of and

---

[1] *See e.g.,* GOOG-BRWN-00234190, GOOG-BRWN-00234726, GOOG-BRWN-00234898, GOOG-BRWN-00242105, GOOG-BRWN-00242324, GOOG-BRWN-00386196, GOOG-BRWN-00386197, GOOG-BRWN-00403456, GOOG-BRWN-00405320, GOOG-BRWN-00405532, GOOG-BRWN-00750965. True and correct copies are attached hereto as Exhibits 27 through 37.

details regarding ▮▮▮▮▮▮▮▮▮ have been laid out in numerous documents produced since April 2021: *see e..g.*, GOOG-BRWN-00027543 ("Ads Log Types") Ex. 19; GOOG-BRWN-00146410 "Sell-side Access Only Interaction Logs"), a true and correct copy attached hereto as **Exhibit 21**; GOOG-CABR-03815890 ("Digest for cafe-team@google.com - 25 updates in 13 topics"), a true and correct copy attached hereto as **Exhibit 22**; GOOG-CABR-03848701 ("Digest for cafe-team@google.com - 25 updates in 10 topics"), a true and correct copy attached hereto as **Exhibit 23**; GOOG-CABR-05280756 ("Re: Ramp-up Plan for ChromeGuard"), a true and correct copy attached hereto as **Exhibit 24**; GOOG-CABR-05281934 ("Re: ChromeGuard ramping from 50% to 100% on 7/13 (Monday)"), a true and correct copy attached hereto as **Exhibit 25**; GOOG-CABR-05282988 ("Clickserver Privacy Landscape 2020"), a true and correct copy attached hereto as **Exhibit 26**. Google has produced hundreds of documents related to this method to infer aggregated Incognito web traffic.

93. In September 2021, Google produced the detailed foundational documents for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—the Phase 1 technical design document GOOG-CABR-00544408 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" authored by Mandy Liu produced on September 1, 2021), Trebicka Decl. Ex. 10; and the corresponding master design document GOOG-CABR-00901891 ("▮▮▮▮▮▮▮▮▮▮▮▮▮" authored by Bert Leung produced on September 2, 2021), Trebicka Decl. Ex. 12. From September 2021 through November 2021, Google produced numerous additional documents regarding the project and the ▮▮▮▮▮▮▮▮▮ bit. For example:

    a. Additional project technical design document dated May 4, 2021 showing it was "APPROVED" by four separate "Approvers" and produced September 24, 2021. Trebicka Decl. Ex. 13 (GOOG-CABR-03668216);

    b. Additional master design document dated July 16, 2020 produced on October 6, 2021. Trebicka Decl. Ex. 20 (GOOG-CABR-04470006); Trebicka Decl. Ex. 21 (GOOG-CABR-04796629) (same produced October 29, 2021);

    c. June 4, 2021 email from Mandy Liu identifying bit and ▮▮▮▮ produced November 24, 2021. Trebicka Decl. Ex. 22 (GOOG-CABR-05285402);

      d.      June 10, 2021 email from a Google code reviewer identifying the bit and providing "Approval" of project's computer code produced November 24, 2021. Trebicka Decl. Ex. 23 (GOOG-CABR-05285407);

      e.      June 10, 2021 email from Mandy Liu to the Google code reviewer identifying the bit and providing a modified changelist related to the project produced November 24, 2021. Trebicka Decl. Ex. 24 (GOOG-CABR-05285409); Trebicka Decl. Ex. 25 (GOOG-CABR-05285410) (similar);

      f.      June 12, 2021 email from a Google code reviewer identifying the bit and showing Googler comments related to the project produced on November 24, 2021. Trebicka Decl. Ex. 26 (GOOG-CABR-05285411);

      g.      June 15, 2021 email from Google code reviewer identifying the bit and providing "APPROVAL" of project's computer code produced November 24, 2021. Trebicka Decl. Ex. 27 (GOOG-CABR-05285414);

      h.      June 15, 2021 email from Mandy Liu identifying the bit and ▮▮▮ produced September 24, 2021. Trebicka Decl. Ex. 16 (GOOG-CABR-03668991);

      i.      June 16, 2021 email from a Google code reviewer identifying the bit and providing "APPROVAL" of project's computer code produced November 24, 2021. Trebicka Decl. Ex. 28 (GOOG-CABR-05285416);

      j.      June 16, 2021 emails identifying the bit and providing modified changelist related to the project produced on November 24, 2021. Trebicka Decl. Ex. 29 (GOOG-CABR-05285418); Trebicka Decl. Ex. 30 (GOOG-CABR-05285420);

      k.      June 16, 2021 email identifying the bit and showing Googler comments related to the project produced on November 24, 2021. Trebicka Decl. Ex. 31 (GOOG-CABR-05285422);

      l.      June 21, 2021 emails identifying the bit and ▮▮▮ produced September 24, 2021. Trebicka Decl. Ex. 17 (GOOG-CABR-03669472); Trebicka Decl. Ex. 18 (GOOG-CABR-03669574).

94. On December 3, 2021, Plaintiffs took the deposition of Mr. Chris Liao for five hours on the record.

95. On December 3, 2021, Plaintiffs served a Rule 30(b)(6) notice on Google that included the following topic: "The purpose of the ▮▮▮ bit in ▮▮▮ logs, as well as how it is determined, where it is stored, what other information is stored with the bit, how to retrieve the bit and any associated information, and how long the bit and any associated information are stored. See GOOG-BRWN-00176433." A true and correct copy of Plaintiffs' Rule 30(b)(6) notice is attached hereto as **Exhibit 38**; *see* page 8.

96. On March 4, 2022, Plaintiffs took the deposition of Mr. Bert Leung for seven hours on the record.

97. On March 7, 2022, Plaintiffs took the deposition of Ms. Mandy Liu for 1.7 hours on the record.

98. On March 10, 2022, Plaintiffs took the deposition of Dr. Caitlin Sadowski, Google's designee on the topic of "The purpose of the ▮▮▮ bit in ▮▮▮ logs, as well as how it is determined, where it is stored, what other information is stored with the bit, how to retrieve the bit and any associated information, and how long the bit and any associated information are stored. See GOOG-BRWN-00176433."

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed in Washington, DC on April 4, 2022.

By   */s/ Josef Ansorge*
     Josef Ansorge