QUINN EMANUEL URQUHART & SULLIVAN, LLP

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, *et al.*, individually and on behalf of all similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GOOGLE LLC,<br><br>                    Defendant. | Case No. 4:20-cv-03664-YGR<br><br>**GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE FOR WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT**<br><br>The Hon. Susan van Keulen |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................................1

II.     BACKGROUND ................................................................................................4

        A.      Google Produced Documents Identifying The "███████████
                ███████████████████████.......................4

        B.      The Special Master Declined Further Production of █████████████
                █████████████████████████████████████████████7

                1.      After Extensive Briefing on the Technical Details, the Special Master
                        Rejected Production of Event-Level Data Where "X-Client-Data
                        Header" Was Absent...............................................................................7

                2.      The "████████████ Bit Relies On The Same Imperfect
                        Method the Special Master Already Rejected............................................9

        C.      Plaintiffs Failed to Explore the "████████████" Bit In the
                Intervening Months...........................................................................................10

                1.      Plaintiffs Deposed Chris Liao in December 2021 Yet Asked No
                        Questions about "████████████"..........................................10

                2.      Plaintiffs Knew of Bert Leung Since April 2021—Yet Waited Months
                        to Ask for His Documents or Deposition.................................................11

        D.      Plaintiffs' Supplemental Briefing Does Not Provide a Basis for Sanctions ..........12

        E.      Google Complied With The Court's November 12, 2021 Order..........................14

                1.      Andre Golueke Attests to the Relevant Log Sources.................................14

                2.      Google Produces the Log Schemas Under the Special Master's
                        Supervision .........................................................................................15

        F.      Google Has Since Provided Substantially More Documents, Data, and
                Testimony Related to "████████████" ...............................................16

III.    LEGAL STANDARD .........................................................................................17

IV.     ARGUMENT....................................................................................................18

        A.      Google Neither Violated the November 12 Order Nor Abused the Discovery
                Process.............................................................................................................18

        B.      Evidentiary Sanctions Are Entirely Unwarranted...............................................20

        C.      Jury Instructions Are Unwarranted ..................................................................24

        D.      There Is No Support for Plaintiffs' Request for Monetary Sanctions ....................25

1

V.      CONCLUSION..................................................................................................26

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Pulp Corp. v. United States*,
   41 Fed. Cl. 611 (C.F.C. 1998) ........................................ 25

*AndCake, Inc. v. Sans Souci LLC*,
   2015 WL 12766045 (C.D. Cal. Sept. 24, 2015) ...................... 22

*Apple Inc. v. Samsung Elecs. Co.*,
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ............................. 24

*Apple Inc. v. Samsung Electronics Co.*,
   2012 WL 1595784 (N.D. Cal. May 4, 2012) ...................... 21, 23

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
   2013 WL 4716210 (S.D. Cal. Sept. 3, 2013) ...................... 16

*Calhoun, et al. v. Google*,
   4:20-cv-05146 (N.D. Cal.) ............................... 9, 11, 16

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
   2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) ...................... 23

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ..................................... 17

*First Fin. Sec., Inc. v. Freedom Equity Grp.*,
   2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ...................... 24, 25

*First Mercury Ins. Co. v. Great Divide Ins. Co.*,
   241 F. Supp. 3d 1028 (N.D. Cal. 2017) ............................. 4

*Gomez v. Vernon*,
   255 F.3d 1118 (9th Cir. 2001) ................................. 17, 18

*Guifu Li v. A Perfect Day Franchise, Inc.*,
   2011 WL 3895118 (N.D. Cal. Aug. 29, 2011) ...................... 22, 23

*Hanni v. Am. Airlines, Inc.*,
   2009 WL 1505286 (N.D. Cal. May 27, 2009) ...................... 22

*Hinson v. Metro. Life Ins. Co.*,
   2012 WL 13054268 (N.D. Cal. Aug. 1, 2012) ....................... 4

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ......................................... 16, 19

*Kannan v. Apple, Inc.*,
   2020 WL 9048723 (N.D. Cal. Sept. 21, 2020) ................. 21, 22, 24

*Karnazes v. County of San Mateo*,
   2010 WL 2672003 (N.D. Cal. Jul. 2, 2010) ...................... 24

*Lanier v. San Joaquin Valley Officials Association*,
    2016 WL 4764669 (E.D. Cal. Sept. 12, 2016) ................................................. 22

*Liew v. Breen*,
    640 F.2d 1046 (9th Cir. 1981) ....................................................................... 25

*Manchester v. Sivantos GMBH*,
    2019 WL 988676 (C.D. Cal. Feb. 8, 2019) ....................................................... 22

*Natural-Immunogenics Corp. v. Newport Trial Grp.*,
    2016 WL 11520757 (C.D. Cal. June 16, 2016) .............................. 16, 19, 21, 23

*Navellier v. Sletten*,
    262 F.3d 923 (9th Cir. 2001) ......................................................................... 16

*Nuance Comms., Inc. v. ABBYY Software House*,
    2012 WL 5904709 (N.D. Cal. Nov. 26, 2012) ................................... 19, 21, 24

*Oracle USA, Inc. v. SAP AG*,
    264 F.R.D. 541 (N.D. Cal. 2009) ............................................................ 21, 23

*rePlanet Holdings, Inc. v. Fed. Ins. Co.*,
    2020 WL 1046960 (E.D. Cal. Mar. 4, 2020) .............................................. 17, 20

*Sas v. Sawabeh Info. Servs.*,
    2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) ................................................... 23

*Synapsis, LLC v. Evergreen Data Sys., Inc.*,
    2006 WL 2884413 (N.D. Cal. Oct. 10, 2006) ................................................... 20

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Const. Co.*,
    857 F.2d 600 (9th Cir. 1988) ......................................................................... 21

*Wanderer v. Johnston*,
    910 F.2d 652 (9th Cir. 1990) ......................................................................... 17

*Zurich Am. Ins. Co. of Ill. v. World Private Sec., Inc.*,
    2020 WL 8610839 (C.D. Cal. Nov. 23, 2020) ................................................. 19

## **RULES**

Fed. R. Civ. P. 30(b)(6) ....................................................................................... 7

Fed. R. Civ. P. 37(b) ........................................................................................... 4

Fed. R. Civ. P. 37(b)(2) .......................................................................... 16, 17, 25

Fed. R. Civ. P. 37(b)(2)(C) ............................................................................ 24, 25

Local Rule 7-5(b) ................................................................................................. 4

## I.       INTRODUCTION

Even a cursory review of the facts to which Plaintiffs point in their breathless Motion for Sanctions reveals that—to borrow from Gertrude Stein—there is no *there* there. This motion should never have been filed. Plaintiffs' central thesis is that "Google told the Court that 'it is unclear how Plaintiffs could ascertain the members of the proposed class' (including people who used Chrome Incognito) [while] Google has concealed … that [it] implemented a tool to do just that for its own business purposes." Mot. 1. These claims are entirely false.

Google concealed nothing. The premise of Plaintiffs' request for sanctions is that Google hid from Plaintiffs certain log fields (called "bits") used to approximate web traffic ("█████████████████████████████████████████" and the two related bits "█████████████████" and "█████████████████"), in violation of the Court's November 12, 2021 Order and Google's discovery obligations. That is demonstrably untrue. Google produced documents in June 2021 detailing the ███████████████████" bit, which Plaintiffs *relied on* in their July 2021 briefing regarding the X-Client-Data header. And notwithstanding that Google first logged the ██████████████████" bit only in June 2021, Google produced documents identifying the bit just three months later, in September 2021. Each of the three purportedly "stunning" "revelations" that Plaintiffs identify in the first page of their motion was disclosed in documents produced many months ago. The record demonstrates Plaintiffs (not Google) are responsible for their own failure to ask Google's witnesses any questions about these materials earlier and that there has been no prejudice—much less extreme prejudice meriting sanctions.

Google's approximations of aggregate Chrome Incognito traffic were not only disclosed— they were litigated at length before this Court and the Special Master when Plaintiffs sought production of event-level data without the X-Client-Data header. The hundreds of documents Google produced in response to Plaintiffs' requests for production showed that ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

1  ██████████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████████

3  ████████████████████████████  On these facts, the Special Master denied Plaintiffs' request

4  for event-level data where the X-Client-Data header was absent.

5        Plaintiffs' other allegations of supposed discovery misconduct are equally baseless. Google

6  did not "alter" any log schema. With the Special Master's express guidance, and Plaintiffs'

7  knowledge, Google used an existing tool to automatically pull "the largest ███ fields" for some of

8  the requested logs. Any other solution would have necessitated constructing a tool from scratch.

9  Google did not intentionally exclude any field; it simply produced the output from its existing tool

10  for the more than ██ requested log sources. As soon as the "████████████████" field became

11  a focus in the Special Master process, Google produced additional documentation, including source

12  code descriptions. And Google did not "hide" Bert Leung and Mandy Liu. Last year alone, Google

13  produced more than 9,500 documents that mention Mr. Leung, Ms. Liu, or both—including those

14  describing Google's attempts to infer Chrome Incognito traffic.

15        Because there have been no discovery violations, Plaintiffs are not entitled to any relief. But

16  the evidentiary sanctions Plaintiffs seek are particularly misguided. Plaintiffs ask the Court to deem

17  as an established fact that Google can link event-level Incognito traffic to particular users and that

18  the class is ascertainable. Pulling the lens back: Plaintiffs seek to certify two expansive classes of

19  signed-out users stretching back to 2016: (1) millions of Chrome users in the United States who

20  browsed using Incognito mode; and (2) millions of users of non-Chrome browsers who browsed in

21  other, undefined private browsing modes. TAC ¶ 192. As to the first class, Plaintiffs' fundamental

22  problem is that Chrome is specifically designed so that websites (and the services they use, including

23  Google web services) cannot detect Incognito mode. Further, consistent with Google's Privacy

24  Policy, Google does not associate data from signed-out Incognito sessions with a Google account.

25  Therefore, data collected from members of the first class (signed-out Chrome Incognito users)

26  during Incognito sessions are islands of orphaned data; they are not linked to a user's identity. The

27  "████████████████" bit does not change that answer with respect to users of Chrome's

28  Incognito mode.

1     The second putative class, comprised of users of non-Chrome private browsing modes, is
2 not affected by any of the purported discovery conduct in this Motion, but is similarly
3 unascertainable. Indeed, Plaintiffs subpoenaed Mozilla, Apple, and Microsoft for documents to
4 identify *their* private browsing users. Each responded with a version of the same message Google
5 conveyed: there are no records that can be used to identify private browsing mode users.

6     Against this factual backdrop, Plaintiffs' attempt to use the Court's powers to bypass the
7 question of whether it is possible to identify the class they seek to certify by concocting a baseless
8 motion for sanctions is wholly inappropriate. The absence of the X-Client-Data header is not a
9 reliable method to identify Incognito traffic. But even if it were, because Incognito browsing results
10 in islands of data disconnected from each other and from a user's identity, the absence of the X-
11 Client-Data header in any particular traffic *still* would not help Plaintiffs at class certification.
12 Deeming the class ascertainable to spite Google would only serve to prejudice absent class members
13 (who could not be accurately identified) and ultimately leave the Court to deal with an
14 unmanageable class of uncertain membership.

15     The law also clearly militates against awarding any of the sanctions Plaintiffs seek.

16     *First,* courts weighing evidentiary preclusion sanctions look at two key considerations: the
17 extent of the prejudice and whether a lesser remedy is available. Here, both clearly favor Google.
18 There has been no prejudice because the appropriate lesser remedy—additional discovery—is
19 already underway. Mr. Leung and Ms. Liu have been deposed and their documents have been
20 produced. Through the Special Master process, Google identified for Plaintiffs logs with the
21 ██████████████████████" boolean bit, Plaintiffs recently requested searches of all of the data
22 sources listed in their motion, and Google will produce responsive results of those searches. The
23 schedule of the case allows Plaintiffs ample time to continue incorporating these documents and the
24 discovery in expert reports and their class certification briefing in June 2022.

25     *Second,* an instruction to the jury that "Google concealed and altered evidence" is
26 unwarranted: Google did not conceal or alter any evidence, and this factually incorrect instruction
27 is not designed to fill any evidentiary gap related to any finding the jury may make in this case.

28     *Third*, monetary sanctions are inappropriate where, as here, there has been no violation.

1    For these reasons, Plaintiffs' motion should be denied.[1]

2    **II.   BACKGROUND**

3         **A.   Google Produced Documents Identifying the "████████████**
4    **████████████████████████████**

5         On the first page of their motion, Plaintiffs announce "stunning" "revelations" in documents

6    Google produced in February 2022 about the use of the "███████████████" bit in a project

7    to ████████████████████████████"). Mot. 1. The same argumentative

8    bluster is carried into the two Mao Declarations in support of Plaintiffs' motion.[2] Then, tucked away

9    in a footnote on page 16, Plaintiffs begrudgingly acknowledge that Google produced documents

10   disclosing the same project *last year*. Plaintiffs downplay its importance by claiming it amounted to

11   "a tiny number of documents" and did not show "that Google actually implemented the

12   [████████████"] field in Google logs." Mot. 16 n.2. Plaintiffs are wrong on both

13   counts.

14        In the first two days of September 2021, Google produced two foundational documents

15   detailing the ████████████": a technical design document that explains the technical

16   and engineering steps required by the project, Trebicka Decl. Ex. 10 (GOOG-CABR-00544408),

17   and the corresponding master design document with a general roadmap of high-level details about

18   a project's status and purpose. Trebicka Decl. Ex. 12 (GOOG-CABR-00901891). These documents

19   robustly detail how the project was engineered to achieve its stated goal "to ████████████

20   ████████████s," including by (1) mentioning the "████████████" bit ████████████

21

22   [1]   Plaintiffs' additional request that "the Court [] reinstate [their] October 14, 2021, Rule 37(b)
     Motion" (Dkt. 292) should be denied; the Court has stayed the briefing for that Motion.

23   [2]   Paragraphs 3–12, 15–23, 25, and 27–31 of the Declaration of Mark C. Mao in Support of
     Plaintiffs' Request for an Order to Show Cause (Dkt. 429-3) and Paragraphs 4–8, 10–11, 14–16, 19,
24   22–24, and 26–30 of the Second Declaration of Mark C. Mao in Support of Plaintiffs' Order to
     Show Cause Motion (Dkt. 494-3) contain conclusions and argument in violation of Local Rule 7-
25   5(b) and should be stricken. *See Hinson v. Metro. Life Ins. Co.*, 2012 WL 13054268, at *1 (N.D.
     Cal. Aug. 1, 2012) (striking "in substantial part" an attorney declaration that "contains improper
26   argument in violation of Civ. L.R. 7-5(b)," including summaries of testimony and purported
     descriptions and analysis of documents); *First Mercury Ins. Co. v. Great Divide Ins. Co.*, 241 F.
27   Supp. 3d 1028, 1045 (N.D. Cal. 2017) (sustaining objection to paragraphs in declaration that are
     "argumentative and contain[] legal conclusions concerning this Court's prior order").
28

1   times as a field on which the project would rely; (2) ███████████████████████

2   ███████████████████████████████████████████████████████████████████

3   ███████████████████████████"; and (3) explaining that the "context" in which the

4   project arose was the then "███████████████████████████████████████

5   ███████ and listing the rollout of the project during the ████████████████. *See, e.g.,*

6   Trebicka Decl. Ex. 12 (GOOG-CABR-00901891 at -1891–1892).

7          These two anchoring documents should have left Plaintiffs—and their 25 experts who have

8   permission to view Google's AEO material—with no doubt about the existence and implementation

9   of the project, its technical and factual underpinnings, the role of the "████████████████"

10  bit, and ████████████████████████████████████████. If any doubt

11  remained, it would have been extinguished by Google's further productions from September 24,

12  2021 to November 24, 2021 showing the project's technical design was "APPROVED" and that the

13  "████████████████" bit was a field "we are logging … into ████████  A few illustrative

14  examples:

- Additional project technical design document dated May 4, 2021 showing it was "APPROVED" by four separate "Approvers" and produced September 24, 2021. Trebicka Decl. Ex. 13 (GOOG-CABR-03668216);

- Master design document dated July 16, 2020 produced on October 6, 2021. Trebicka Decl. Ex. 20 (GOOG-CABR-04470006); Trebicka Decl. Ex. 21 (GOOG-CABR-04796629) (same produced October 29, 2021);

- June 10, 2021 email from a Google code reviewer identifying the bit and providing "Approval" of project's computer code produced November 24, 2021. Trebicka Decl. Ex. 23 (GOOG-CABR-05285407);

- June 10, 2021 emails from Mandy Liu (the code reviewer) identifying the bit and providing a modified changelist related to the project produced November 24, 2021. Trebicka Decl. Ex. 24 (GOOG-CABR-05285409); Trebicka Decl. Ex. 25 (GOOG-CABR-05285410) (similar);

- June 15, 2021 email from Mandy Liu identifying the bit and █████ produced September 24, 2021. Trebicka Decl. Ex. 16 (GOOG-CABR-03668991);

- June 21, 2021 emails identifying the bit and █████ produced September 24, 2021. Trebicka Decl. Ex. 17 (GOOG-CABR-03669472); Trebicka Decl. Ex. 18 (GOOG-CABR-03669574).

*See also* Trebicka Decl. Exs. 23, 26–31. Notably, the three documents Plaintiffs highlight as "stunning" "revelations" contain *less* detail than the documents Google produced *six months earlier* in September 2021:

| Plaintiffs' "Stunning" "Revelations" in February 2022 (Mot. 1) | Examples of Information Google Produced in September 2021 |
|---|---|
| "Since June 2020, Mr. Leung and Mandy Liu have worked on a project to ███████ s (Safari ITP, Firefox ETP, *Chrome Incognito*, etc.) in ad serving and *log this information for monitoring and analysis*.'" Mot. 1 (citing Pl. Ex. 1) (emphasis in original). | Google produced the July and December 2020 design documents titled "███████ ███" that explained the project over the course of three dozen pages, including Trebicka Decl. Ex. 10 (GOOG-CABR-00544408 at -409) and the master design document confirming "Proposals [to] introduce a shared piece of infrastructure to identify ███ ███████ . . . [and] ███████". Trebicka Decl. Ex. 12 (GOOG-CABR-00901891 at -894). |
| "As part of that effort, Mr. Leung suggested '███████ ███████ in June 2020 … and he and Ms. Liu decided to call this field a '███████' bit in October 2020 (after this case was filed)." Mot. 1 (citing Pl. Ex. 2) (emphasis in original). | Google produced June 2021 emails stating: "Added a data source to set values for the browser intelligence project on Display Ads side.… we are *logging* fields into ███████ . . . 6. Trebicka Decl. Ex. 16 (GOOG-CABR-03668991); Trebicka Decl. Ex. 17 (GOOG-CABR-03669472); Trebicka Decl. Ex. 18 (GOOG-CABR-03669574). |
| "Google ███████ the proposed '███████' field in multiple logs in or around ███ and has since ███████ ███████ ███████ ███████ ███ ██ █████ ██████.'" Mot. 1 (citing Pl. Ex. 3) (emphasis in original). | Google produced ███████ design documents that clearly explained the ███████ and stating "[t]he solution proposed needs to fulfill the following requirements. . . ███████ Trebicka Decl. Ex 12 GOOG-CABR-00901891 and explaining that "███████ ███████." Trebicka Decl. Ex 13 GOOG-CABR-03668216 at 224. |

**B.      The Special Master Declined Further Production of Data** ████████

███████████████████████████████████████████████████████████████

███████

Plaintiffs' attempt to certify an expansive class of Chrome users who browsed using Incognito mode while signed out of their Google account, TAC at ¶ 192, faces an insurmountable obstacle. Chrome is designed to make Incognito mode undetectable, Liao Decl. ¶ 4, and—consistent with that design and Google's Privacy Policy—Google does not associate data from signed-out sessions with a Google account. Trebicka Decl. Exs. 49 (Berntson 30(b)(6) Tr. 372:18–373:16), 51 (GOOG-BRWN-00000152 (Google Privacy Policy)). Therefore, their class of Incognito users is unascertainable. The " ███████████████████ bit does not resolve that problem.

**1.      After Extensive Briefing on the Technical Details, the Special Master Rejected Production of Event-Level Data Where the "X-Client-Data Header" Was Absent**

Plaintiffs' attempt to use the absence of the X-Client-Data header as a solution to their dispositive class identification problem is not new. In October 2021, the Special Master considered and rejected Plaintiffs' request for event-level data in which the X-Client-Data header was missing so they could attempt to use it to identify Incognito sessions. Dkt. 299. That dispute centered on the

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████.[3] *See, e.g.*, Pl. Ex. 14 (GOOG-CABR-04324934). Google tasked Google Ads engineers Chris Liao and Bert Leung with

███████████████████████████████████████████████ *Id*. Mr. Liao and Mr. Leung used the ██████████████████████████████████████████████████████████

██████ Liao Decl. ¶ 5; Leung Decl. ¶ 3.

On October 19, 2020, Plaintiffs asked for "Documents sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client[-]Data [h]eader." Trebicka Decl. Ex. 48 (Pls. 2nd Set of RFPs). In June 2021, Plaintiffs took a Rule 30(b)(6) deposition

---

[3]   Google began rolling out Chromeguard in May and June 2020. Pl. Ex. 14 (GOOG-CABR-04324934).

1  on this topic. Trebicka Decl. Ex. 49. Google also produced **hundreds** of documents related to this

2  method to infer aggregated Incognito web traffic. Ansorge Decl. ¶ 92. Google objected, however,

3  to providing the event-level data because the burden of providing the information Plaintiffs sought

4  far outweighed its meager benefit.  Dkt. 217-4.

5        The dispute was referred to the Special Master on July 13, 2021. Dkt. 221. Google made two

6  principal arguments. ████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ████████████████. Dkt. 217-4 at 8–10. Plaintiffs, by contrast, argued to the Court and the Special

9  Master that Mr. Liao's use of the ████████████████████████████████████

10  ████████████████████████████████████ *Id.* at 3 (citing Mr. Liao's project

11  documents).

12        *Second*, Google argued that even if the ████████████████████████

13  ████, it could not be used to identify specific users or putative class members. *Id.* at 7. It is

14  undisputed that Incognito sessions during which a user, like the entire putative class, does not log

15  into a Google account are never associated with the user's Google account. Trebicka Decl. Ex. 49,

16  Berntson 30(b)(6) Tr. 372:18–373:16. Instead, the sessions are linked to cookie values that are

17  deleted from the user's browser when the Incognito session is closed. *Id.* at 9. Therefore, even **if** this

18  bit accurately inferred Incognito traffic, that information cannot be translated into identifying class

19  members. *Id.*

20        The Special Master reviewed the briefs and their detailed technical explanations, and agreed

21  with Google. He denied Plaintiffs' request for production of all data from which the X-Client-Data

22  header was absent. Dkt. 299-1 at 2. In the November 12, 2021 Order Plaintiffs now claim Google

23  violated, the Court adopted the Special Master's findings regarding Dispute P16, noting that the

24  findings were "well taken" and "mirror[ed] the Court's handling of [this] issue[] prior to engagement

25  of the Special Master." Dkt. 331 at 3. The Court accurately explained that P16, among others, had

26  been "briefed and argued extensively before this Court, before the Special Master, and most recently

27  again before this Court at the hearing on November 4, 2021. *Id.* at 2.

28

1       **2.**    **The "██████████████████ Bit Relies On The Same Imperfect**

2       **Method the Special Master Already Rejected**

3       The "████████████████" bit at issue here is an extension of the Chromeguard

4   analysis project, using the *same* logic and for the *same* business purpose of ████████

5   ██████ Liao Decl. ¶ 10; Leung Decl. ¶ 8–9. In May 2020, Google Ads engineers Bert Leung and

6   Mandy Liu, under the supervision of Mr. Liao, continued Google's attempt to ████████████

7   ████████████████████████. Liao Decl. ¶ 10; Leung Decl. ¶ 8. To do so on

8   a continuous basis for Chrome Incognito, Mr. Leung created a ██████████████████

9   ████████████████████████████████████████████████

10  ████████████████████. Leung Decl. ¶ 9.

11      Mr. Leung and Ms. Liu named the bit "████████████████████"

12  ████████████████. *Id.* Indeed, the bit's full name (*i.e.*, the one reflected in the

13  project's computer code) is "████████████████████████████

14  ████████████████ even more clearly ██████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████. Liao Decl. ¶ 9. Leung Decl. ¶ 8.

18      As Plaintiffs know, Google is not alone in its inability to identify users of its private browsing

19  mode. Plaintiffs subpoenaed Mozilla, Apple, and Microsoft, asking for "ALL DOCUMENTS

20  sufficient to IDENTIFY all individuals who have used InPrivate Browsing mode in [Firefox; Safari;

21  Microsoft IE/Edge] from June 1, 2016 to the present." Each entity declined to produce documents

22  on the ground that there are no records that can be used to identify private browsing mode users.

23  Trebicka Decl. Exs. 44–46 (responses from Mozilla, Apple, and Microsoft).

24

25

26

27

28

C.   **Plaintiffs Failed to Explore the "**█████████████████**" Bit in the Intervening Months**

1. **Plaintiffs Deposed Chris Liao in December 2021 Yet Asked No Questions about** █████████████████**"**

The alleged prejudice Plaintiffs now claim is of their own making. In the two days Plaintiffs in *Brown* and *Calhoun* deposed Mr. Liao, they asked no questions about the "████████████████" bit or any of the documents specifically identifying it, including those Google had produced more than three months before the deposition. *See supra* § II.A.

Plaintiffs now improperly and baselessly claim Mr. Liao made a misrepresentation about the ████████████████" bit—but counsel did ***not*** ask about that bit. Plaintiffs also assert that Chris Liao "testified that Google had abandoned any efforts to identify Incognito traffic within its logs." Mot. 15. Plaintiffs cite nothing to support this misstatement because Mr. Liao never gave such testimony. *See* Liao Decl. ¶ 13. Plaintiffs also claim Mr. Liao misleadingly answered "no" to the question whether "amongst these privacy signals, is there one for [I]ncognito mode browsing on Chrome?" Mot. 15. Plaintiffs again distort the facts. *See id.* The referenced passage immediately followed a question about the ████████████████████ in a document related to ██████████████████████████████." Trebicka Decl. Ex. 40 ("Liao Tr." at 130:11–19). ████████████████████████████████████████████████████████████████████████████████████████████████████████. Liao Tr. at 130:13–131:11. In that context, counsel then asked:

██████   ██████████████████████████████████████████

Liao Tr. at 131:14–132:3 (emphasis added). Mr. Liao's testimony is correct. ████████
████████████████████████████████████████. Liao Decl. ¶ 13.

Mr. Liao's additional testimony that there is no "████████████████████████
████████████████████ is also entirely accurate. Mot. 16. ██████████████████
████████████████████████. *See supra* § II.B.1; Liao Decl. ¶¶ 5–7.
And the "████████████████ bit is *not* a signal, much less a reliable one. Liao Decl. ¶ 13.

### 2.    Plaintiffs Knew of Bert Leung Since April 2021—Yet Waited Months to Ask for His Documents or Deposition

Plaintiffs claim that "in 2021, Google hid[] Mr. Leung" from Plaintiffs and the Court. Mot. 8. This, again, is demonstrably false. Starting in April 2021, Google produced documents highlighting Bert Leung as an "infrastructure engineer" in the context of addressing Safari's blocking of third-party cookies. *See e.g.*, Trebicka Decl. Ex. 1 (GOOG-BRWN-00033225.C). Messrs. Liao and Leung and Ms. Liu were also identified in a document of potentially relevant Google employees produced in August 2021. Trebicka Decl. Ex. 8 (GOOG-CABR-00064421).[4] And from June 2021 through November 2021, Google produced numerous emails from Mr. Leung, including documents related to inferring Chrome Incognito server-side traffic, *see, e.g.*, Trebicka Decl. Exs. 4 (GOOG-BRWN-00182034), 5 (GOOG-BRWN-00204684), 9 (GOOG-CABR-00484343), and other Chrome Incognito related projects and tasks, *see, e.g.*, Trebicka Decl. Exs. 3 (GOOG-BRWN-00181672), 7 (GOOG-BRWN-00536949), 11 (GOOG-CABR-00547295), 13 (GOOG-CABR-03668216). In fact, Plaintiffs *themselves* cited an email from Mr. Leung regarding inferring Incognito traffic in November 2021 meet and confer correspondence, Trebicka Decl. Ex. 36 (11/09/2021 Ltr. *citing* GOOG-CABR-00547295), and referenced, in even earlier meet and confer correspondence, a document listing both Mr. Liao and Mr. Leung as infrastructure engineers, *see* Trebicka Decl. Ex. 34 (07/16/2021 Ltr. *citing* GOOG-BRWN-00175744).

---

[4]   Plaintiffs successfully argued for cross-production of *Calhoun* documents on the basis that it would make litigation more efficient. Having advocated for these documents, it was their responsibility and duty to conduct a thorough review of the evidence presented to them.

Plaintiffs' complaint that Mr. Leung was not added as a custodian until February 2022 rings hollow. Mr. Leung's name appears in approximately 9,500 documents produced between April 2021 and December 2021. Ansorge Decl. ¶ 90. By contrast, Google's February 2022 productions contained only 297 of Mr. Leung's custodial documents. In any event, that Mr. Leung was not added as a custodian until later in the case is Plaintiffs' own failing.[5]

Similarly, Plaintiffs baselessly accuse Google of derailing Mr. Leung's deposition date. Mot. 6–7. Not so. Google first proposed that the deposition take place on February 25, 2022, but Plaintiffs failed to confirm that date within the Court-ordered 48 hours. *See* Trebicka Decl. Exs. 37 (1/11/2021 email from S. Jenkins), 38 (2/13/2022 email from A. Frawley). A work emergency unrelated to this case made the February 25 date unworkable for Mr. Leung, so his deposition proceeded one week later. Trebicka Decl. Ex. 39 ("Leung Tr.") at 25:14–17.

**D.      Plaintiffs' Supplemental Briefing Does Not Provide a Basis for Sanctions**

On March 21, 2022, Plaintiffs filed supplemental briefing alleging that Google improperly withheld information relating to two additional bits and an additional header. Dkt. 510-1 (identifying the "███████████" bit, the related "██████████████████" bit, and the "X-Geo header"). That is demonstrably untrue:

- As early as November 16, ***2020***, Google's production included documents identifying the X-Geo header and explaining that it "will never be sent in Incognito mode." *See, e.g.*, Trebicka Decl. Ex. 14 (GOOG-BRWN-00023886 at -3887).

- On June 18, 2021, Google produced a document identifying the "██████████████████" as being "used by the ████ [T]eam" and explaining that the "bit is only set in tmp ████ logs." *See, e.g.*, Trebicka Decl. Ex. 15 (GOOG-BRWN-00176433 at -6434).

Plaintiffs relied on documents disclosing this field to argue in their ***July 2021*** briefing that "Google maintains systems and processes to identify Incognito browsing, including ready-made tools that run queries based on the X-Client-Data header field." Dkt. 217-4 at 4 (*citing* GOOG-

---

[5]   Google initially identified ten custodians. Trebicka Decl. Ex. 32 (1/25/21 Ltr. to Plfs). Plaintiffs demanded more. The Court expanded the number to 42. Plaintiffs selected the 32 remaining custodians between April and August 2021. They did not pick Mr. Leung, although they had notice of him since April 2021. Plaintiffs sought to add Mr. Leung as their forty-third custodian in December 2021. Google first objected, but agreed to add him in February given the low number of additional documents for review. Ansorge Decl. ¶ 47.

BRWN-00176433). When Plaintiffs are seeking additional discovery, they know the tools are "use[d]" and "ready-made;" but when they are seeking sanctions, the same tools are only just "discover[ed]" after Google "concealed" their implementation. Dkt. 217-4 at 4; Dkt. 510-1 at 1.

Like the "███████████████" bit, ████████████████████████████████████████[6] Trebicka Decl. Ex. 42 ("Sadowski Tr." 91:2–8). And just like ███████████████," neither of these other bits is "████████████████████████████████," (Sadowski Tr. 76:12–16) and user identification was never their purpose. Both bits were created by a ████ ████████████████████████████████████). *Id*. 70:5–10, 71:8–17; Trebicka Decl. Ex. 15 (GOOG-BRWN-00176433 at -6434). ███████████████████ *Id*. 70:11–72:2. ████████████████████████████████████████████. *Id*. 70:24–71:23.

Plaintiffs argue that the ████████████████████" bit is also stored in two ads logs (███████████ and █████████████") because schema produced by Google on March 11, 2022 referenced the bit. *See* Supp. Mot. 3. That is wrong, too. Google's Rule 30(b)(6) deponent confirmed many times that the bits exist "in and *only* in ████ logs," Sadowski Depo. 70:17–18, and that "if you look in the protocol buffer that has this field, there is an annotation saying that it is specifically *only* used in ████ logs.") *id*. 92:9–11 (emphasis added).[7]

---

[6]  Plaintiffs argue that "Google has used the absence of X-Geo header as another signal for detecting Chrome Incognito usage and stores the signals in Google logs as 'true' or 'false' bits in the ████████████████' and ██████████████████ fields." Supp. Mot. 1. Wrong. Google's Rule 30(b)(6) deponent, Dr. Sadowski, explained that the value of the ██████████████ ████████████████████████████ Sadowski Tr. 76:5–16, 77:20–78:2 (stating the ████████████ ████████████████████████████████). The ██████████ ███████████████████ *Id*. 77:20–25.

[7]  The reason the bits appear to be included in the two ads log is simple.   The ████████████████████████████████" bit is included in the Google Web Services Protocol Buffer, or "GWS proto," a data format used to structure serialized data (also referred to as "proto" in shorthand). As Google has explained, not every log that uses the proto will include every single field found in the proto. *See* Trebicka Decl. Ex. 47 (03/23/2022 Special Master Hr'g Tr. 41:4–6).  At Plaintiffs'

The ███████████████████" bit and the ██████ logs that contained it were ***not***
the focus of the lengthy and deliberative Special Master process because they were entirely
irrelevant to the case Plaintiffs were prosecuting. *See* Golueke Decl. ¶ 11. Until last month,
Plaintiffs' proposed class definition was limited to individuals "who accessed a non-Google website
containing Google Analytics or Ad Manager." *See* Dkt. 395-3 at 55. Google's search engine was
not in scope. Plaintiffs knew of the ███████████████████" bit (and that it was stored in
████████ logs) by June 18, 2021, Trebicka Decl. Ex. 15 (GOOG-BRWN-00176433 at -6434), yet
waited until December 2021 to serve a deposition notice on this topic, Ansorge Decl. Ex. 38 (Pls.
12/3/2021 Rule 30(B)(6) Dep. Not.), for which Google designated Dr. Caitlin Sadowski.

**E.      Google Complied With the Court's November 12, 2021 Order**

On November 12, 2021, the Court ordered Google to (1) "provide a declaration . . . [that]
[t]o the best of its knowledge, Google has provided a complete list of data sources that contain
information relevant to Plaintiffs' claims," and (2) "provide to the Special Master full schemas, a
list of ALL fields with their descriptions, a list of tools used to search the respective data sources,
and instruction sets and manuals for all tools . . . ." Dkt. 331 (the "November 12 Order") at 7. The
Special Master was "to be an intermediary throughout each step" of Google's production of data, to
"evaluate the results for content and compliance with this Order," and "authorized [him] to take all
appropriate measures to perform his duties fairly and efficiently and to enforce this Order as he
deems appropriate including modifying this Order, issuing further orders." *Id*. at 5–6.

**1.      Andre Golueke Attests to the Relevant Log Sources**

On November 18, 2021, Google provided a declaration from Discovery Manager Andre
Golueke stating that, "[t]o the best of [Mr. Golueke's] knowledge and informed understanding,
Google has provided a complete list of sources that contain information about Plaintiffs relevant to
Plaintiffs' claims." Dkt. 338. To make that attestation, Mr. Golueke obtained information from

---

insistence, Google used its Dremel tool to provide Plaintiffs information about fields. Ansorge
Decl. ¶ 57. Using this tool resulted in the inclusion of an overinclusive set of fields from the
underlying GWS proto. The "███████████████" bit is ***not*** written in the ██████████████
██████████████████, and the value of the bit will always default to "false when querying
those logs with the Dremel tool." Trebicka Decl. Ex. 47 at 48:17–23.

1   multiple Google engineers and other Google personnel working on identifying and searching
2   numerous complex data sources for this litigation. Dkt. 338 at 1. Mr. Golueke's declaration attached
3   a list of those data sources, spanning nearly four pages, Dkt. 337-3, and a list of Plaintiffs' data that
4   had been produced or would be produced, spanning 20 pages, Dkt. 337-4. Plaintiffs did not
5   challenge Mr. Golueke's declaration or the exhibits attached thereto. The Special Master found that
6   the Golueke declaration met the requirements of the November 12 order. Ansorge Decl. ¶ 24.

> ### 2. Google Produces the Log Schemas Under the Special Master's Supervision

9   Google had previously identified that for a specific type of log ("█████ logs), the
10  engineering burdens and technical limitations associated with full compliance would be extremely
11  hard to overcome and promptly surfaced those concerns to the Special Master, detailing the burden.
12  *See e.g.*, Trebicka Decl. Ex. 35 (10/1/2021 Correspondence to Special Master). After careful
13  consideration and thoughtful exchanges, the Special Master agreed. And, pursuant to the authority
14  given the Special Master by the Court's November 12 Order, he limited the required identification
15  under the November 12 Order for █████ logs to "the largest ████ fields." Trebicka Decl. Ex. 43
16  (03/05/2022 Special Master Meeting Tr., 67:1–25). Google produced the required fields on
17  December 1, 2021. Ansorge Decl. ¶ 28.

18  Google's request to limit its production to "the largest ████ fields" was not for the purpose
19  of including or excluding certain fields from production. Ansorge Decl. ¶ 27. Rather, the limitation
20  was driven by the capabilities of █████████—a tool Google maintains in the ordinary course
21  of business capable of automatically generating a list of "the largest ████ fields" for a Sawmill log.
22  Ansorge Decl. ¶ 27. █████████ provided Plaintiffs the largest fields in the relevant data
23  sources without the delay and burden associated with expending substantial new engineering
24  resources on a custom solution which may or may not have been achievable. *Id.*

25  Google disclosed all of this. Ansorge Decl. ¶¶ 27–28. Accordingly, Plaintiffs' accusation
26  (Mot. at 1, 18) that Google "altered" the schema of the █████ logs to exclude
27  "████████████" is deceptive and baseless fabrication. In reality, the
28  "████████████ bit was not included because it is not one of "the largest ████ fields" in

1   any of the produced logs. The Special Master acknowledged "maybe it was my fault for saying

2   [indiscernible]—produce these top ████ hoping that was going to be enough. Clearly, we need

3   to refine things." Trebicka Decl. Ex. 43, 03/05/2022 Special Master Meeting Tr., 67:1–11. The

4   parties followed Plaintiffs' counsel's proposal to "refine" the output. Ansorge Decl. ¶¶ 62–66.

5   **F.    Google Has Since Provided Substantially More Documents, Data, and**

6   **Testimony Related to ████████████████"**

7   Since February 2022, Plaintiffs have deposed Mr. Leung for a full day and Ms. Liu for two

8   hours. Ansorge Decl. ¶¶ 96–97. Google produced proto (source code) descriptions for the

9   "████████████████" field, field names for the ██ ████ logs that contain the

10  "████████████████" field, and results showing the "████████████████" field.

11  Ansorge Decl. ¶¶ 59, 67, 76. Plaintiffs' third and final set of searches includes logs containing the

12  "████████████████," the "████████████████," and "████████████████

13  fields. Ansorge Decl. ¶ 89.

14  In March 2022, the parties also attempted to negotiate a preservation proposal. Ansorge

15  Decl. ¶ 81. In light of Plaintiffs' recent focus on the "████████████████" bit, Google

16  proposed preserving that field. *Id*. Plaintiffs' attempt to turn that offer into Google's *failure* to

17  preserve (Mot. 9) is meritless. Google has consistently sought Plaintiffs' agreement to focus on

18  specific fields to preserve, even as Plaintiffs have insisted that Google preserve *all relevant logs*

19  without limitation. *See, e.g.*, Dkt. 293-4. Faced with Plaintiffs' unreasonable and unworkable

20  position, Google moved for a protective order, detailing the technical infeasibility of preserving the

21  quantity of information contained in these logs. Trebicka Decl. Ex. 33, February 5, 2021

22  Correspondence to *Brown* Plaintiffs; Joint Letter Brief re: Log Preservation, Dkt. 119. Google

23  further detailed why the make-work demand was neither necessary for—nor proportional to—

24  Plaintiffs' claims. *Id.*

25  That it is neither possible nor proportional to preserve all logs remains true, notwithstanding

26  the single informal comment from Ms. Liu, a junior engineer, that Plaintiffs cite in their motion. *See*

27  Mot. 9. Notably, when Plaintiffs asked Ms. Liu's supervisor what it would take to change the

28  retention period, Mr. Leung accurately testified that "log retention, which is in force on the log itself,

[] is not under my control" and "the retention of the production log, which include other data as well, is not controlled by this project, nor my team [including Ms. Liu]." Leung Tr. 103:4–6, 107:19–21. The Court's order relieving Google of its obligation to preserve *all* logs that may be relevant to this action was proper, and remains so. *Calhoun v. Google*, 4:20-cv-05146 (N.D. Cal.) at Dkt. 174 (adopted by reference in Dkt. 147-1 at 1).

## III.   LEGAL STANDARD

A court's discretion to sanction a party for failing to obey a discovery order under Rule 37(b)(2) is subject to two fundamental limitations: "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (*quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). The extreme sanctions Plaintiffs seek here—designating disputed facts as established (issue preclusion) and prohibiting Google from presenting arguments on key issues (evidence preclusion)—are particularly circumscribed. Issue preclusion is "rarely impose[d]" and reserved "only for 'discovery abuse that is so extreme and prejudicial that no lesser remedy will cure the harm.'" *Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2016 WL 11520757, at *6 (C.D. Cal. June 16, 2016) (*quoting Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2013 WL 4716210, at *1 (S.D. Cal. Sept. 3, 2013)). Courts similarly decline to order that a party be prohibited from arguing certain facts without a showing of severe prejudice entirely absent here, and only where alternative remedies are unavailable. *See rePlanet Holdings, Inc. v. Fed. Ins. Co.*, 2020 WL 1046960, at *4 (E.D. Cal. Mar. 4, 2020) (*citing Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)).

Absent a violation of a court order under Rule 37(b)(2), a court may impose discovery sanctions under its inherent authority *only* upon an express finding of bad faith. *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) ("inherent-power sanctions [must] be preceded by a finding of bad faith, or conduct tantamount to bad faith"). Even reckless conduct, without "frivolousness, harassment, or improper purpose," cannot justify sanctions entered solely under the court's inherent power. *Fink v. Gomez*, 239 F.3d 989, 993–994 (9th Cir. 2001).

1  **IV.   ARGUMENT**

2      **A.     Google Neither Violated the November 12 Order Nor Abused the Discovery**

3          **Process**

4      Plaintiffs' Motion for Sanctions fails because Google has neither violated a discovery order

5  nor otherwise abused the discovery process.

6      ***Google Complied With the November 12 Order.*** Plaintiffs claim Google violated the

7  November 12 order "by (1) withholding the ████████████████ ' field"—as well as other

8  unrelated fields discussed in supplemental briefing—"from Plaintiffs, and (2) [falsely] representing

9  to the Court that it had identified all relevant sources to Plaintiffs." Mot. 17. Both claims are wrong.

10  As described above, detailed foundational documents in Google's September 2021 productions

11  disclosed both the existence of the "████████████████" bit and its purpose. *See supra* § II.A.

12  The signal on which the other two bits are based was disclosed nearly a year before that, and

13  Plaintiffs themselves relied on a document discussing one of those bits in July 2021. *See supra*

14  § II.D. Every single "stunning" statement Plaintiffs now claim is a "revelation" was produced to

15  them ***in or before September 2021***. *See supra* § II.A. It is unclear why Plaintiffs made no attempt

16  to ask further questions about these bits in discovery until February 2022. The reason could have

17  been that the Special Master already discounted Plaintiffs' arguments concerning the reliability of

18  using the X-Client-Data header as a proxy for Chrome Incognito traffic. Dkt. 299-1 at 2. Or, it could

19  have been mere oversight by Plaintiffs' counsel and the slew of experts they hired to review and

20  analyze Google's AEO material. Either way, Plaintiffs cannot now blame Google for it.

21      Nor was there anything false about Google's certification that, "[t]o the best of its

22  knowledge, Google has provided a complete list of data sources that contain information relevant

23  to Plaintiffs' claims." Dkt. 331 (Nov. 12 Order) at 8. Mr. Golueke's declaration was made after

24  extensive internal confirmation—and was correct. Dkt. 338 at 1. Even if the declaration failed to

25  identify logs that should have been listed, that oversight did not conceal the existence of the bits

26  Plaintiffs focus on, which Google disclosed in multiple documents in and before September 2021.

27  Tellingly, Plaintiffs made no objection to the list provided with Mr. Golueke's declaration despite

28  the fact that, at the time, Plaintiffs knew (i) ████████████████ " resided in ████████

1  logs by no later than June 2021 and (ii) Mr. Golueke's list (properly) did not contain any ███████

2  logs. *See* Trebicka Decl. Ex. 15 (GOOG-BRWN-00176433 at -6434 (document produced in June

3  2021, cited by Plaintiffs in July 2021 briefing, and stating "the ██████████████████████████

4  ████████████████████████████████████████████████

5         Plaintiffs further torture the facts by accusing Google of "tampering with evidence" by

6  "deleting the ██████████████████ field from the schema" of a log it produced, Mot. 1, 23

7  (emphasis removed). That is a reckless misstatement. That bit was simply one of the thousands of

8  fields that did not meet the threshold production requirement the Special Master imposed in an effort

9  to balance thoughtfully the Plaintiffs' purported need for massive amounts of information with real-

10  world technical limitations. *See supra* § II.E.2. Accordingly, the schema Google produced neither

11  violated an order *nor* concealed from Plaintiffs that Google had logged the

12  ██████████████████" bit, which was listed as a field of the ██████ log in numerous emails

13  Google produced between September and November 2021. *See supra* § II.A, E.2.

14         **_Google Complied With All Its Discovery and Disclosure Obligations._** There has been none

15  of the bad faith, frivolousness, or improper purpose required for the Court to impose discovery

16  sanctions under its inherent authority. *Gomez*, 255 F.3d at 1134. Plaintiffs' gross misrepresentations

17  to the contrary, *see* Mot. 19, fall flat:

18         **_Google did not hide Mr. Leung or Ms. Liu._** Last year alone, Google produced more than

19  9,500 documents that mention Mr. Leung, Ms. Liu, or both—including those describing the project

20  of inferring Chrome Incognito status. *See supra* § II.C.2.

21         **_Google Has Scrupulously Followed Its Preservation Obligations._** Google appropriately

22  moved for a protective order when faced with Plaintiffs' unreasonable demands to preserve all logs

23  that may have relevant information. Google's position has always been that the parties must focus

24  preservation on particular relevant fields, and agreed to include the "██████████████████" bit

25  in its preservation proposal. Ansorge Decl. ¶ 81.

26         **_Chris Liao Testified Truthfully._** Plaintiffs' counsel asked no questions about

27  "██████████████" documents produced months before Mr. Liao's deposition. And

28

Plaintiffs' claim that Mr. Liao testified that "any projects to identify and track Incognito traffic had been discontinued" is a fabrication. *See supra* § II.C.1.

### B.     Evidentiary Sanctions Are Entirely Unwarranted

Because Google fully complied with its discovery obligations, sanctions are entirely inappropriate. Even if the Court were to find that Google should have done something differently in discovery, Plaintiffs cannot meet the high bar for the extreme evidentiary sanctions they seek.

Plaintiffs first ask the Court for issue preclusion sanctions, seeking to take as established—without the need for Plaintiffs to provide *any* proof—"that (1) Google can detect event-level Incognito traffic within its logs, and (2) this Incognito data is linkable to users, so that (3) the class is ascertainable." Mot. at 19. Issue preclusion, however, is a "draconian sanction[]"—a last resort to cure the type of extreme prejudice that is absent here. *Nuance Comms., Inc. v. ABBYY Software House*, 2012 WL 5904709, at *2 (N.D. Cal. Nov. 26, 2012); *see also Natural-Immunogenics Corp.*, 2016 WL 11520757, at *6. Tellingly, Plaintiffs cite only two cases where a court ordered issue preclusion for discovery violations; in both cases the defendant provided *no* discovery despite repeated orders and being forewarned of sanctions by the court.[8] Plaintiffs also ask the Court for evidence preclusion sanctions, specifically to prohibit Google from "presenting any arguments . . . concerning whether Google can identify Incognito traffic within logs and whether that data is linkable to users." Mot. 20. Neither sanction is justified.

Courts weigh two predominant considerations when deciding whether or not to order either issue preclusion sanctions: (1) the extent of the prejudice—whether it would be "just"; and (2) whether a lesser remedy than the requested sanction is available. *See, e.g.*, *Natural-Immunogenics Corp.*, 2016 WL 11520757, at *6 (prejudice must be "extreme" and "no lesser remedy" may be

---

[8]   *See Ins. Corp. of Ireland*, 456 U.S. at 707 (establishing personal jurisdiction in district court's discretion where sanctioned party "repeatedly" and "obvious[ly]" violated discovery orders, "ha[d]n't even made any effort" to provide discovery, and was "warned . . . of a possible sanction"); *Zurich Am. Ins. Co. of Ill. v. World Private Sec., Inc.*, 2020 WL 8610839, at *5 (C.D. Cal. Nov. 23, 2020) (taking facts as established where sanctioned party "has not  responded to any written discovery request," "appeared for properly noticed depositions," or "provided an explanation or excuse," and its "counsel stated at oral argument that [it] had no good faith basis for failing to meet its discovery obligations"). That is a far cry from the facts here.

capable of addressing the harm); *Synapsis, LLC v. Evergreen Data Sys., Inc.*, 2006 WL 2884413, at *1 (N.D. Cal. Oct. 10, 2006) (inappropriate to dispose of factual issue absent a showing that the alleged abuses have "so prejudiced [the moving party's] ability to defend this action on the merits that such an extreme sanction would be warranted"); *rePlanet Holdings*, 2020 WL 1046960, at *5 (analysis "cuts against preclusion sanctions" where prejudice is curable and lesser sanctions are available). Both considerations overwhelmingly favor Google.

**There Has Been No Prejudice.** Plaintiffs spend much of their motion misconstruing Google's enormous discovery efforts (*supra* § IV.A) as "obstruction and misconduct," but precious few paragraphs on the actual prejudice they claim to have suffered. In any event, their claims of prejudice are either unsupported or have since been cured.

*First*, Plaintiffs claim that they "lack a single piece of data associated with the ██████████████████████' field." Mot. 18. But that is demonstrably false. *See supra* § II.A & F.

*Second*, Plaintiffs claim that Google has thwarted their ability to respond to Google's yet-to-be-made class certification arguments, Mot. 20, but this is also untrue. ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████. *See supra* § II.B. Plaintiffs thus have had everything they needed to argue (wrongly) that the X-Client-Data header is the magic bullet to their class certification issues since Google produced hundreds of documents related to the ████████████████ *See supra* § II.B. There is no prejudice here. *See Kannan*, 2020 WL 9048723, at *8 (prejudice from incomplete discovery is "limited" where moving party had "access to other sources of information about" the same topic); *see also United States ex rel. Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988) (delayed production that occurred before sanctions hearing "did not prejudice the outcome of [the] action" even if it "caused serious inconvenience").

*Third*, Plaintiffs claim that Google has "jeopardized Plaintiffs' experts' ability to conduct the required analysis within the time limits set by the Court." Mot. 21 (internal quotation marks and alterations omitted). But this is wrong for all the reasons discussed above. Plaintiffs have had detailed technical information concerning the use of the X-Client Data header to approximate

Chrome Incognito traffic since mid-2021, and detailed documents related to ██████████████" since September 2021, months before close of fact discovery. Further, Google just agreed to an extension of expert discovery deadlines at Plaintiff's request. Dkt. 519, 521. Simply stated, the circumstances here are nothing like Plaintiffs' cited authority, in which the sanctioned parties produced complex source code "specifically written to be materially different from [code] already produced" *after* the close of discovery, *Apple Inc. v. Samsung Electronics Co.*, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012), and introduced brand new, "far more complicated and extensive new damages claims" that would require "complex[] . . . additional expert analysis" after the trial date had already been set, *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 556–57 (N.D. Cal. 2009). Even in those cases, the sanctioned parties were precluded only from relying on late-introduced evidence and arguments, not from their fundamental right to make any arguments on the relevant issues at all. *See Apple*, 2012 WL 1595784, at *4; *Oracle*, 264 F.R.D. at 557.

Plaintiffs have identified no decision ordering preclusion sanctions on a similarly limited showing of alleged prejudice. That is no coincidence—courts in this circuit routinely ***deny*** preclusion sanctions on facts far less favorable to the nonmoving party. In *Nuance Communications, Inc.*, the defendant allegedly "produce[d] thousands of highly relevant documents after the discovery deadline had passed" and refused without explanation to allow sufficient time between document production and depositions. *Nuance Communications, Inc. v. ABBYY Software House,* 2012 WL 5904709, at *3. The court denied the plaintiff's motion for issue preclusion sanctions, holding that "if Plaintiff believed that the prejudice it suffered . . . was losing its right to conduct discovery . . . then the appropriate relief was not to ask for issue preclusion sanctions, but to seek a discovery extension so that it could actually have a chance to learn more about its claims." *Id.* Judge Koh denied a similar request in *Guifu Li*, where the defendants had "obstructed the discovery process to avoid disclosure of [company] finances, corporate control and ownership" in violation of eight separate orders. *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390–94 (N.D. Cal. 2012); *see also Manchester v. Sivantos GMBH*, 2019 WL 988676 (C.D. Cal. Feb. 8, 2019) (McDermott, Mag. J.) (preclusion not appropriate sanction for failing to produce arguably responsive software prototypes, because the production request did not specifically mention them); *AndCake, Inc. v.*

*Sans Souci LLC*, 2015 WL 12766045, at *2 (C.D. Cal. Sept. 24, 2015) (Abrams, Mag. J.) (issue preclusion too harsh even where moving party "has been required to approach the Court twice," "no justification has been offered" for withholding discovery," and "there is a trial date approximately six months off").

*Lesser Remedies Are Available.* Plaintiffs cite authorities confirming that the sanctions they seek are a bridge too far. They precluded the nonmoving party only from relying on arguments and evidence that it had not already disclosed by the time of the decision or the close of discovery. In *Hanni v. American Airlines, Inc.*, for example, putative class representatives provided incomplete interrogatory responses and failed to produce records in violation of multiple court orders to do so. 2009 WL 1505286, at *3–4 (N.D. Cal. May 27, 2009) (Laporte, Mag. J.). Despite the extent of these discovery failures, the court precluded them only from "rely[ing] on any discovery provided after the close of class certification discovery in support of their motion for class certification." *Id.* at *5. And in *Lanier v. San Joaquin Valley Officials Association*, a party failed to respond to document requests by the noticed deadline, again failed to respond by a second deadline established by court order, and finally provided only incomplete responses with baseless and improper objections. 2016 WL 4764669, at *1–2 (E.D. Cal. Sept. 12, 2016) (Grosjean, Mag. J.). Recognizing that it was "entitled to preclude the introduction of evidence or issues," the court precluded the sanctioned party only "from introducing further facts or evidence" that he had "not specifically identified and disclosed" by the court-ordered deadline—expressly permitting him to rely on "information he *had* disclosed." *Id.* at *8. The other cases Plaintiffs cite held similarly.[9]

---

[9]  *See Sas v. Sawabeh Info. Servs.*, 2015 WL 12711646, at *3–6, 9 (C.D. Cal. Feb. 6, 2015) (Nagle, Mag. J.) (recommending an order precluding defendants from presenting trial evidence on issues for which they failed to produce compelled documents until less than a month before trial); *Apple*, 2012 WL 1595784, at *3–4 (precluding party from relying on source code produced after close of discovery); *Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 3895118, at *4 (N.D. Cal. Aug. 29, 2011) (precluding party from using declaration evidence on a topic for which it failed to produce a 30(b)(6) deponent but "concluding that . . . other sanctions [are] not appropriate"); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 WL 4598490, at *13–14 (N.D. Ill. Aug. 29, 2013) (precluding party from presenting defenses based on evidence it "continually failed to identify," but rejecting the plaintiff's further "request [to] bar the introduction of *any* evidence in opposition to class certification" as overbroad); *Oracle*, 264 F.R.D. 541, 556–57 (N.D. Cal. 2009) (precluding plaintiff from pursuing only its late-disclosed damages theories).

Preclusion is particularly inappropriate here because the subject of the relevant evidence "remains a contested issue of fact." *See Natural-Immunogenics Corp.*, 2016 WL 11520757, at *6 (where affidavit denying involvement in prior lawsuit was shown to be false but extent of affiant's involvement remained contested, "[i]ssue preclusion sanctions are not appropriate" to resolve the issue); *see also Kannan v. Apple, Inc.*, 2020 WL 9048723, at *9 (N.D. Cal. Sept. 21, 2020) (DeMarchi, Mag. J.) (declining issue preclusion because party "should be permitted to rebut [adverse] evidence with any evidence [it] has already produced"). Critically, substantial evidence produced in discovery negates each one of the three facts the Plaintiffs seek to have established. *First*, Google cannot detect "event-level Incognito traffic" within its logs. ████████████ ████████████████████████████████████████. *See supra* § II.B. *Second*, Plaintiffs do not even allege that the evidence purportedly withheld can establish that Incognito data is "linkable to users." Signed-out Incognito data is, by design, *not* linkable to a user, and there is no evidence or inference to the contrary. *See id*. Finally, a finding that the class is "ascertainable" goes well beyond the purported discovery violation. Plaintiffs' requested relief is wildly out of step with what the allegedly withheld documents say, and Plaintiffs have pointed to *no* evidence—old or new—that could support them.

The evidentiary sanctions Plaintiffs seek would not merely punish Google; they would also harm putative class members because the class (and therefore any recovery) would be diluted by millions of false positives. It would also create an administrative nightmare for the Court once the fiction of ascertainability falls apart at claims administration. Plaintiffs are inviting the Court to rush headlong into class certification without an identifiable class. For all the reasons above, the Court should decline their invitation.

### C.     Jury Instructions Are Unwarranted

Plaintiffs ask for a jury instruction that "Google concealed and altered evidence regarding its ability to identify Incognito traffic." Mot. 22. Such an extreme and prejudicial remedy "should [not] be imposed casually," *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 994 (N.D. Cal. 2012), and is wholly unsupported here. As Plaintiffs' citations demonstrate, an adverse jury instruction is appropriate where discoverable evidence was permanently deleted or a party never

turned over relevant evidence at all. *See, e.g.*, *First Fin. Sec., Inc. v. Freedom Equity Grp.*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (Lloyd, Mag. J.) (potentially relevant text messages permanently deleted); *Karnazes v. County of San Mateo*, 2010 WL 2672003 (N.D. Cal. Jul. 2, 2010) (James, C. Mag. J.) (key witness never appeared for deposition); *Kannan*, 2020 WL 9048723, at *9 (party failed to search email account for responsive documents). That is not this case. Plaintiffs had detailed discovery on the purportedly withheld topic months before showing any interest in pursuing it. *See supra* § II.A. And once Plaintiffs *did* start asking questions, Google answered them. *See supra* § II.E.; *see also Nuance Comms.*, 2012 WL 5904709, at *2–3 (rejecting sanctions including adverse jury instruction where "Plaintiff could have mitigated the harm from any untimely production by simply conducting further discovery").

An adverse instruction would also be gratuitous. Because the Court will decide whether members of Plaintiffs' purported class are ascertainable—the **only** issue to which Plaintiffs claim the "█████████████████" bit is relevant—there is nothing on this topic for the jury to decide *at all*. Plaintiffs' request for an adverse jury instruction bears no relation to the subject of the November 12 order or Google's conduct that purportedly violated it, and should be denied.

### D.  There Is No Support for Plaintiffs' Request for Monetary Sanctions

Like their other requests, the record does not support Plaintiffs' request for monetary sanctions. But even if Google had been noncompliant as Plaintiffs allege, Plaintiffs' reimbursement request for all Special Master fees incurred and to be incurred in these proceedings is dangerously unmoored from reason and the law. Rule 37(b) is clear that a sanctioned party must pay only expenses that are both "reasonable" and actually "caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). Accordingly, any expenses incurred prior to the sanctionable conduct are not compensable. *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981). Indeed, courts generally construe Rule 37(b)(2)(C) as authorizing reimbursement solely for the expenses incurred in preparing the sanctions motion itself. *See First Fin. Sec., Inc.*, 2016 WL 5870218, at *7; *Alaska Pulp Corp. v. United States*, 41 Fed. Cl. 611, 616–17 (C.F.C. 1998) ("Under Rule 37(b)(2), this court may only award the reasonable expenses incurred in bringing this Motion for Sanctions, including any expenses related to the

1   upcoming contempt hearing."). Should the Court grant Plaintiffs motion, it should award them

2   compensation only for the time they spent preparing their Motion for Sanctions.

3   **V.      CONCLUSION**

4            For the foregoing reasons, the Court should deny Plaintiffs' request for an order requiring

5   Google to show cause why it should not be sanctioned for discovery misconduct. At the April 21,

6   2022 evidentiary hearing, Google plans to examine the witnesses the Court has ordered to appear

7   (Chris Liao, Bert Leung, and Andre Golueke). Google does not currently anticipate calling other

8   witnesses for direct testimony, but reserves the right to alert the Court and Plaintiffs of additional

9   witnesses that may become necessary in light of Plaintiffs' Reply brief and Proposed Findings of

10  Fact.

11

12  DATED: April 4, 2022          QUINN EMANUEL URQUHART & SULLIVAN, LLP

13

14                               By_____*/s/ Andrew H. Schapiro*_____
                                     Andrew H. Schapiro (admitted *pro hac vice*)
15                                   andrewschapiro@quinnemanuel.com
                                     191 N. Wacker Drive, Suite 2700
16                                   Chicago, IL 60606
                                     Telephone: (312) 705-7400
17                                   Facsimile: (312) 705-7401

18
                                     Stephen A. Broome (CA Bar No. 314605)
19                                   stephenbroome@quinnemanuel.com
                                     Viola Trebicka (CA Bar No. 269526)
20                                   violatrebicka@quinnemanuel.com
                                     865 S. Figueroa Street, 10th Floor
21                                   Los Angeles, CA 90017
                                     Telephone: (213) 443-3000
22                                   Facsimile: (213) 443-3100

23
                                     Diane M. Doolittle (CA Bar No. 142046)
24                                   dianedoolittle@quinnemanuel.com
                                     555 Twin Dolphin Drive, 5th Floor
25                                   Redwood Shores, CA 94065
                                     Telephone: (650) 801-5000
26                                   Facsimile: (650) 801-5100

27
                                     Josef Ansorge (admitted *pro hac vice*)
28                                   josefansorge@quinnemanuel.com

1

2

Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-81005000

3

4

5

6

7

8

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

9

10

11

12

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

13

*Attorneys for Defendant Google LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28