# Declaration of Andre Golueke

# Redacted Version of Document Sought to be Sealed

DocuSign Envelope ID: 4223A9DD-E7BA-4EAC-8978-149148FD9229

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, *et al.*, individually and on behalf of all similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**DECLARATION OF ANDRE GOLUEKE IN SUPPORT OF GOOGLE'S OPPOSITION TO PLAINTIFFS' REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE FOR WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT**<br><br>Referral: Hon. Susan van Keulen, USMJ |

<u>DECLARATION OF ANDRE GOLUEKE</u>

I, Andre Golueke, declare as follows:

1. I am a Strategy and Operational Support Lead within the Legal Department at Google LLC. I make this declaration based on personal knowledge and information provided to me by Google colleagues and, if called to testify, I could and would competently testify to such facts.

2. I have worked at Google since July 2011, and have worked on the Discovery Team in Google's Legal Department for that entire time. In my role on the Discovery Team, I have become familiar with Google's systems, including its many data repositories. I have also developed expertise at determining how to locate documents that are relevant and responsive to document requests, including by working with product managers and engineers familiar with specific data sources and identifying how best to obtain relevant data. In my current role, I oversee a team of eighteen members of Google's Legal Department, all of whom work on various aspects of discovery.

3. On February 17, 2021, I submitted a declaration in *Calhoun v. Google* related to the burden associated with categorically preserving all My Activity, Analytics, and Display Ads logs that may contain potentially relevant information. I understood from Plaintiffs' complaint in that action that Chrome, Display Ads, and Analytics were the products relevant to their claims. To prepare that declaration, I conducted interviews with relevant Google colleagues to determine how they had compiled potentially relevant log sources and understand what the preservation burden associated with those log sources was. Based on my own personal knowledge and the knowledge I acquired as a result of interviews with relevant Google subject matter experts from ▅▅▅▅, Analytics, and Display Ads logs, I explained that categorical preservation would entail storing an estimated ▅▅▅▅ of additional data every 30 days.

4. Since February 17, 2021, I have received periodic updates from the Google personnel who have been working to comply with Google's discovery obligations in *Brown v. Google* and *Calhoun v. Google* in general, and the Special Master process in particular.

5. On November 12, 2021, this Court ordered Google to provide a declaration attesting to the relevant sources identified, searches conducted, and data produced through the Special Master process. *See* Dkt. 332 at 8 ("Google shall provide a declaration, under penalty of perjury from Google, not counsel, that 1. **To the best of its knowledge, Google has provided a complete list of data sources that contain information relevant to Plaintiffs' claims**; and 2. All responsive data related to the Named Plaintiffs have been produced from all searched data sources in the respective prior searches.") (emphasis added).

6. To prepare a declaration in response to the Court's November 12 order, I worked with Google engineers and other Google personnel and discussed how they went about identifying and searching relevant sources subject to the Special Master process. In particular, I had conversations with and asked questions of engineers who work regularly with the sources related to ▇▇▇ Analytics, and Display Ads to understand how they had searched for and identified relevant sources. Through this process, Google compiled a list of ▇ sources for this case. Those sources covered different products and storage systems, including: Ad Manager and Analytics ▇▇▇ logs, ▇▇▇▇▇▇ key-value databases (▇▇▇ and Analytics tables (▇▇▇▇▇▇).

7. On November 18, 2021, I submitted a declaration in *Brown v. Google* in response to the Court's November 12, 2021 order. *See* Dkt. 338. I attested that "[t]o the best of my knowledge and informed understanding, Google has provided a complete list of sources that contain information about Plaintiffs relevant to Plaintiffs' claims." *Id.* ¶ 3. The ▇ separate data sources were listed in Exhibit A. *See* Dkt. 338-1. That declaration was accurate and complete to my knowledge, information, and belief at the time.

8. I am now informed that a dispute has arisen related to whether additional log sources that include certain specific fields should have been listed in the declaration. Specifically, I understand that Plaintiffs assert that the declaration should have listed (1) all logs that contained a particular Boolean field (known as "bit"), with the name ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"; and (2) various

1 ▓▓▓ logs that contained two additional bits with the names ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓".

3   9.   In preparing my November 18 declaration, I referred to the Court's order and
4 Plaintiffs' class definition to get an understanding of what data sources were relevant to Plaintiffs'
5 claims in this matter. At the time, Plaintiffs' class was limited to users of private browsing
6 software who visited third-party websites that used Google Analytics and Google Ad Manager.
7 Dkt 136-1 at 55. With that definition and those products in mind, I communicated with Google
8 product managers and engineers knowledgeable about those services in order to identify data
9 sources, principally logs, containing relevant data about the claims and products at issue in the
10 case. This culminated in the list of ▓ data sources identified in my declaration, and based on my
11 knowledge of Google's systems, past experience, and discussions with relevant personnel, I
12 verified that to the best of my knowledge that Google had provided a complete list of data sources
13 containing information relevant to Plaintiffs' claims.

14   10.   As discussed above, my focus in compiling the data sources was to search for logs
15 and other sources that contained event-level user data (*i.e.*, data generated based on users' actions)
16 relevant to the products and claims at issue. It was not focused on identifying every data source
17 that contained a particular field name or particular fields. Among other reasons, given the vast
18 number of data sources maintained at Google and the substantial number of fields (sometimes
19 numbering in the tens of thousands) contained in each source, attempting to identify relevant
20 fields, or attempting to identify every data source containing particular fields, would have been
21 very burdensome. Instead, I relied upon my experience and discussions with product managers
22 and engineers who work directly on the products and the topics related to Plaintiffs' claims to
23 identify the data sources containing relevant data. I understand that Plaintiffs claim that Google
24 should have attempted to identify every data source that contained fields related to the
25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" bit. But I do not
27 believe that conducting searches by field names made sense given how many sources and fields
28 exist at Google, given how many have nothing to do with the products and claims at issue here,

and given that there is no available tool to search all of Google's data sources and filter by field name. Furthermore, at the time I was preparing my declaration, I was not aware that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" bit existed.

11. I also understand that Plaintiffs argue that the list included in my declaration should have included logs containing the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" bits. I understand from discussions with engineers at Google that these bits were created by the ▮▮▮▮▮▮ team within Google Search and stored in that team's ▮▮▮▮▮▮ logs. At the time I conducted my search for data sources containing information relevant to Plaintiffs' claims, Plaintiffs' class definition was limited to users who had visited third-party websites that employed Google Ads and Analytics, and did not relate to users of Google Search, which is owned and operated by Google. Dkt 136-1 at 55. Accordingly, I did not consult engineers or other Google personnel associated with Google Search or ▮▮▮▮▮▮ logs when preparing my declaration, and did not include those logs on the list I provided with my declaration. At the time I prepared my declaration, I was not aware that those logs contained fields labeled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮".

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed in Sarasota, Florida, on April 1, 2022.

Andre Golueke

-4- Case No. 4:20-cv-03664-YGR-SVK
DECLARATION OF ANDRE GOLUEKE