Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William Christopher Carmody
(admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
*srabin@susmangodfrey.com*
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505ß
jyanchunis@forthepeople.com
mram@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
**MORGAN & MORGAN**
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.:  4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT**<br><br>The Honorable Susan van Keulen<br>Courtroom 6 - 4th Floor<br>Date: April 21, 2022<br>Time: 10:00 a.m.<br>**Filed Under Seal** |

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.    Google Has No Justification for Its Discovery Misconduct and Concealment. .............................................................................................. 2

        A.    Google Omitted ███████████████████████ from its February and March 2021 Lists of Relevant Employees ...................................................................................................... 2

        B.    Google Never Disclosed the ███████████ Bits in the Parties' April 2021 Preservation Dispute or the July 2021 X-Client Data Header Dispute ........................................................... 2

        C.    Google Did Not Disclose the Logs that Contain ██████████ ███ in Its Court-Ordered November 2021 Declaration ............................. 3

        D.    Google Does Not Explain Why It Could Not Produce More Complete Schema ..................................................................................... 5

        E.    Google's Document Defense Holds No Water. ........................................ 6

        F.    Plaintiffs Learned the Truth through ████████████████ Documents ....................................................................................... 8

    II.    Sanctions Are Warranted Because Google Severely Prejudiced Plaintiffs. ........................................................................................................ 9

        A.    Google's Conduct Severely Prejudiced Plaintiffs in Multiple Ways. ............................................................................................... 9

        B.    This Court Has Authority to Sanction Google. ..................................... 11

        C.    The Punishment Must Fit the Crime. .................................................... 12

CONCLUSION ..................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple v. Samsung Elecs.*
2012 WL 1595784 (N.D. Cal. May 4, 2012) .................................................................... 11, 14

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .................................................................................................... 12

*Buffin v. City & Cty. of San Francisco*,
2018 WL 1070892 (N.D. Cal. Feb. 26, 2018) (Gonzalez Rogers, J.) ............................... 12, 16

*Conway v. Dunbar*,
121 F.R.D. 211 (S.D.N.Y. 1988) ................................................................................................ 14

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) ............................................................................. 13

*Facebook, Inc. v. Onlineinc Inc.*,
No. 3:19-cv-07071-SI (N.D. Cal.) Dkt. 222 ............................................................................. 13

*Kannan v. Apple Inc.*,
2020 WL 9048723 (N.D. Cal. Sept. 21, 2020) .................................................................... 14, 15

*Natural Immunogenics Corp. v. Newport Trial Group.*,
2016 WL 11520757 (C.D. Cal. June 16, 2016) ........................................................................ 14

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001) ...................................................................................................... 13

*North American Watch Corp. v. Princess Ermine Jewels*,
786 F.2d 1447 (9th Cir. 1986) ................................................................................................... 14

*Nursing Home Pension Fund v. Oracle Corp.*,
254 F.R.D. 559 (N.D. Cal. 2008) ............................................................................................... 15

*Sali v. Corona Reg'l Med. Ctr.*,
884 F.3d 1218 (9th Cir. 2018) ................................................................................................... 15

*Sas v. Sawabeh Info. Servs.*,
2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) ..................................................................... 14, 15

*Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*,
2017 WL 2840279 (S.D.N.Y. June 27, 2017) ........................................................................... 14

ii

**Rules**

Fed. R. Civ. P. 26(a) ..................................................................................................................11

Fed. R. Civ. P. 26(e)(1)(A) .........................................................................................................11

Fed. R. Civ. P. 30(b)(6) ................................................................................................................9

Fed. R. Civ. P. 37 .......................................................................................................................14

Fed. R. Civ. P. 37(b) ...................................................................................................................11

Fed. R. Civ. P. 37(b)(2)(C) .........................................................................................................15

Fed. R. Civ. P. 37(c) ...................................................................................................................11

Fed. R. Civ. P. 37(c)(1) ...............................................................................................................12

Fed. R. Civ. P. 37(e) ...................................................................................................................12

Fed. R. Civ. P. 37(e)(1)-(2) .........................................................................................................12

iii

## **INTRODUCTION**

Throughout this case, Google has been adamant that it cannot identify "Incognito" browsing data.  These assertions were false: ███████████████████████

███  █████████  ███████████  ███████████████  █████  █████  █████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ :

███████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

Mao Reply Decl. Ex. 1. Timely disclosure of these bits would have allowed the parties to negotiate preservation of a much smaller data set than what Google represented it would otherwise need to preserve at this time last year. But Google concealed their existence, convinced the Court preservation was burdensome, and spoliated class member data along the way. Specifically, Google did not:

1.  Inform the Court of the ██████████████████ in the context of the parties' preservation dispute;

2.  Identify the employees responsible for these ████████████ in interrogatory responses and custodian lists; or

3.  Identify and produce complete schema for all of the data sources and logs where these ███████████ have been implemented.

To this day, Google *still* has not confirmed to Plaintiffs that it has identified ██████████████

Against this backdrop, notably absent from Google's papers is any suggestion that its repeated failures were due to mere inadvertence. And while Google submits a declaration from its outside counsel, nowhere does that declaration suggest that counsel were *unaware* of these ████████████████. Instead, the remarkable gravamen of Google's Opposition is that despite its multiple efforts to conceal and obscure—including an *admittedly* incomplete and inaccurate Court-ordered declaration on relevant data sources—Plaintiffs should have gleaned enough from a tiny handful of documents that Google trickled out last fall to have caught on to Google's defiance of multiple Court Orders sooner.

1

1   Why did Google go to such great lengths to conceal these facts? Google's brief makes that

2   reason clear: Google's principal opposition to class certification will be to argue that class

3   members cannot be identified and that the private browsing data cannot be linked to individual

4   users. Opp. 2, 7. Google thus intentionally withheld discovery and deleted evidence that could

5   have been used to disprove its arguments. The most appropriate remedy is to issue evidentiary

6   sanctions that will prevent Google from achieving the very objective of its discovery misconduct.

7   **<u>ARGUMENT</u>**

8   **I.     Google Has No Justification for Its Discovery Misconduct and Concealment.**

9   *A.     Google Omitted ███████████████████████ from its February and March 2021 Lists of Relevant Employees*

10  Google offers no explanation for why it omitted ██████████████ in its February

11  2021 list of potential custodians and in its March 2021 interrogatory response. Google does not

12  even mention ████████ anywhere in its Opposition. These witnesses had long worked on the

13  ████████████████████████████████████████████████ and ██████

14  ████████████████████████████████████████ Mot. 8-9; Supp. 2.

15  Google points to the fact that six months later, it cross-produced a *Calhoun* custodian list that

16  ████████████████ Opp. 11. ████████████████████████████

17  ████████████████████████ would Google have disclosed them in *Calhoun* but not in

18  *Brown*? In any event, Google's belated cross-production post-dated the Court's cut-off for

19  custodian disputes.[1] And the belatedly produced *Calhoun* list *also* omits ██████, the person

20  responsible ████████████

21  *B.     Google Never Disclosed the ████████████ Bits in the Parties' April 2021 Preservation Dispute or the July 2021 X-Client-Data Header Dispute*

22  

23  Google secured a protective order on preservation without informing Plaintiffs or the Court

24  that it had, ████████████████████████████████████████████████████

---

25  [1] The Court set an August 24 deadline for final custodian disputes. Dkts. 242-1, 258. Further

26  grasping at straws, Google points out that it had produced some emails from Mr. Leung. Opp. 12. But just four of the cited documents (Trebicka Exs. 1, 3, 4, 5) were produced prior to Plaintiffs'

27  August 24 deadline to select custodians, and these documents, buried in a sea of millions of pages, ██████████████████████████████████████████████████████████

28

1    ██████████████████████████████████████████. *See* Supp. at 1████████

2    ████████████████████████████████████████████████████████████

3    ███████████████████████████████████████.[2] Google recently admitted that it

4    can ██████████████████████████████████████████████████████████

5    ██████ Mao Reply Decl. Ex. 2. Google should have proposed such targeted preservation last

6    April. Had the Court known of ██████████████████████████████████████

7    ████, the Court may have ruled differently on Google's motion for a protective order. Instead,

8    Google presented a false "all or nothing" choice to preserve *all* potentially relevant logs in their

9    *entirety* or omit the log from the preservation plan. *See* Dkt. 119. Google left the Court with that

10   misleading impression for a reason. To this day, Google has never presented a shred of evidence

11   that preserving targeted data related to ██████████████████████████████

12       Similarly, when the parties subsequently briefed their dispute over production of data

13   lacking any X-Client-Data Header (Dkt. 218), Google had by then also implemented the

14   ████████████████████████████████████████████████████████████

15   ██████████████. Mao Reply Decl. Ex. 6. Once again, Google shows no contrition for failing

16   to disclose this information. Instead, Google brags about winning a rigged game, arguing that it

17   convinced the Special Master and the Court to deny Plaintiffs' motion. Mot. 11-12; Opp. 8. This

18   argument only highlights Google's concealment and Plaintiffs' prejudice.

19       C.    *Google Did Not Disclose the Logs that Contain* ██████████ *in Its Court-Ordered November 2021 Declaration*

20       By November 2021, the jig should have been up. The Court required a "declaration, under

21   penalty of perjury from Google, not counsel, that: 1. To the best of its knowledge, Google has

22   provided a complete list of data sources that contain information relevant to Plaintiffs' claims…."

23   Dkt. 331 at 8. Yet Google selected as its declarant Andre Golueke, a "████████████████

24   ████████████████████████████████████████████████████████

25

---

26   [2] ██████████████████████████████████████████████████████████

27   ██████ *See infra* Section I.F. Thus, Google's preservation obligation would have been a fraction of what Google represented.

28

1    Plaintiffs' motion explained that Mr. Golueke's court-ordered declaration "appears to be

2  false" because ███████████████████████████████████████████████████

3  ████████████████████████████████████ Mot. 13 (citing Dkt. 338). Subsequent

4  discovery has confirmed as much: ██████████████████████████████████████

5  ██████████████████████████████████████████████████████. *Compare*

6  Mao Decl. Reply Ex. 6, *with* Dkt. 338-1. And Mr. Golueke's Declaration did not list any of the

7  ██████████████████████████████████████

8    Compounding the problems, Mr. Golueke's subsequent declaration (Dkt. 528-5) admits

9  that he ███████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████ Dkt.

11 528-5 ¶¶ 10-11. Plaintiffs are troubled that Google's investigation failed to address these bits,

12 particularly since ████████████████████████████████████████████████

13 ██████████████████████. *See generally* Ansorge Decl. (Dkt. 528-1) Google itself

14 certainly knew. Google's deliberate choice to select a ██████████████████ as its declarant

15 and then keep him in the dark about ███████████████ cannot be countenanced. Surely that is

16 not what the Court had in mind when it ordered Google to swear under oath that it "provided a

17 complete list of data sources." Dkt. 331; *id.* at 3 ("Google knows what data is has collected

18 regarding Plaintiffs and putative class members and where the data may be found").

19    Google does not even attempt to excuse its failure to identify the ████████████

20 ████████████████████████ As for the other bits, Google wrongly claims that they were, prior

21 to the class definition amendment, "irrelevant to the case" insofar as they live in "Search" logs.

22 Opp. 14.[3] This argument, which Google has clung to like a life-preserver throughout the litigation,

23 is meritless. One purpose of the Special Master process was to provide Plaintiffs "the tools to

24

25 [3] Even this explanation by Google was not forthcoming, ████████████████████████

26 ████████████████ Reply Mao Decl. ¶ 7.

27 ██████████████████████████████████████████████████████████████

28

1   identify class members using Google's data." Dkt. 331 at 4. People who use Google Search within

2   Incognito can and do go on to visit non-Google websites. ████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████. Mot. 14. The Special Master's

5   reasoning applies even more so to logs where Google has since ████████████████████ el

6   ████████████████

### D.   Google Does Not Explain Why It Could Not Produce More Complete Schema

7        For the two logs with ████████████ that Mr. Golueke's declaration actually

8   identified, Google subsequently prevented Plaintiffs from learning about the bit by producing

9   altered log schema that omitted the field from ████████ Reply Mao Decl. ¶¶ 3-4; Mot. at 5-6.

10  Google's purported "largest-██ fields" excuse is implausible, including because (i) Google

11  produced schema for other logs that contained more than ███ fields and (ii) Google readily

12  provided more comprehensive schema for the ████████████ logs once Plaintiffs

13  moved for sanctions. Supplement at 4; Reply Mao Decl. ¶¶ 5-6. Google's Opposition has no

14  response to these points. Nor does Google dispute Plaintiffs' argument that the "largest-███ fields"

15  limitation automatically excluded the ████████ bits, which are boolean fields that show

16  up only as "true" or "false" and thus will never be among the largest fields. Supplement at 4-5.

17       Google suggests that "full compliance" with the November 12 order (i.e., producing full

18  schema with every field) would have posed "engineering burdens." Opp. 15. Setting aside that the

19  November 12 Order already rejected such concerns,[4] they are irrelevant here. All Google had to

20  do was supplement the ███-largest fields with the ████████ bit. Google then goes so far as to

21  blame the Special Master for its own misconduct, quoting the Special Master's statement that

22  "maybe it was my fault for saying . . . produce these top ████████ hoping that was going to be

23  enough." Opp. 16. As this statement implicitly acknowledges, the Special Master would not have

---

[4] "To the extent [this process] requires the significant commitment of time, effort, and resources across groups of engineers at Google on very short timelines, that burden . . . arises, at least in part, as a result of Google's reticence thus far to provide critical data source information in these actions." Dkt. 331 at 4-5.

1  permitted Google to limit its production to the largest-███ fields if Google informed him that doing

2  so would eliminate key ████ fields. Google did not disclose any of that information to the

3  Special Master when it requested permission to limit the schema. *See* Trebicka Decl. Ex 35.

4         E.      *Google's Document Defense Holds No Water.*

5       Google largely attempts to excuse much of the above misconduct by pointing to a small

6  handful of opaque and outdated documents that it produced. But those documents did not clearly

7  disclose that Google had implemented the ██████████ bits. And the doubt that was left

8  by this mere handful of documents was reinforced by Mr. Liao's misleading deposition testimony,

9  which he now attempts to defend by slicing the bologna so thin it is all but transparent.

10       With respect to the ██████████ bit, Google does not point to *any* documents

11  whatsoever that it has produced in this case. Not one. Opp. 12. With respect to the

12  ██████████ bit, Google points to a *single* document. And Google selectively

13  quotes from the document to make it sound more certain than it actually is—the underlined

14  portions of the following quote were omitted in Google's brief: ████████████

15  ████████████ Trebicka Decl. Ex. 15. Moreover, that Google

16  identifies only *one* document about just one of these bits--out of ████ total documents—is

17  alarming given that ██████ was a search term. Dkt. 148. Especially given the ████████

18  belatedly produced only recently, Mao Reply Decl. Ex. 1, Plaintiffs are deeply concerned that

19  Google intentionally held back other documents (including by not disclosing ██████), and

20  Google should be prepared to address this issue at the hearing.

21       With respect to the "██████████" bit, Google misleadingly suggests that it

22  produced documents in the ████████████████████

23  ████████████████████ ████████

24  ███ Opp. 5. This is, quite simply, wrong for three reasons. *First*, ████████████

25  ████████████████████████████

26  ████████████████████████ Trebicka Ex.

27  Decl. Ex. 13. That is because, as explained in detail in the opening Mao Declaration, ████████

28                            6

1  ███████████████████████████████████████████████████

2  ████████████████████████████████████████. Opening  Mao  Decl.  ¶  12

3  (summarizing Trebicka Ex. 13). As the Opening Mao Declaration pointed out, ███████

4  ████████████████████████████████████████. *Id.* ¶ 3. Plaintiffs have

5  sent Google's counsel multiple messages demanding an explanation why ███████ version

6  of the document was not produced ██████████ custodial files last fall. Mao Reply Decl. ¶ 10.

7  Google has never responded, *id.*, and Google's Opposition simply *ignores* these facts altogether.

8       *Second*, the single family of documents that Google produced last fall which mentioned

9  ███████████████████████████████████████████████████

10  ███████████████████████████████████████████████████

11  ███████████████████████████████████████████████████

12  █████████████ Trebicka Decl. Exs. 12, 17-18. The documents all indicated, however, that

13  this "████████████████████████████████████████████████

14  ██████████████████ *Id.*

15  ███████████████████████████████████████████████████

16  ███████████████████████████████████████████████████

17  ████████████████ Google subsequently produced additional variants of the same

18  document on November 24, 2021—Thanksgiving eve. *See* Trebicka Decl. Exs. 23-25.

19       *Third*, after Google produced this handful of documents from ██████ custodial files,

20  Plaintiffs then deposed Mr. Liao. Mr. Liao repeatedly gave misleading if not outright false

21  testimony under oath—testimony appearing to ████████████████████████████

22  Mot. 15-16. When asked if Google █████████████████████████████

23  ███████████████████████████████████████████████████

24  ███████████████████████████████████████████████████

25  ███████████████████████████████████████████████████

26  █████ Opening Mao Decl. Ex. 8, Liao Tr. 136:2-11. Google's Opposition tellingly ignores this

27  portion of Mr. Liao's testimony.

28

1       Moreover, in response to a question about whether ███████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████

5 ██████ Opening Mao Decl. Ex. 8, Liao Tr. 140:6-10. Mr. Liao now attempts to justify his

6 misleading answer by stating that ██████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ███████████████████████ Liao Decl. ¶¶ 5, 7, 13. But the only examples he gives concerning

9 ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ██████████████████████████████ Mr. Liao's testimony was false at worst and deeply

13 misleading at best. ██████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████ *See* Reply Ex. 11.

18       F.     *Plaintiffs Learned the Truth through* ████████████ *Documents*

19       Google would have escaped without any repercussions but for this Court's February 2022

20 order compelling production of documents from Mr. Leung. Dkts. 399, 401. And Mr. Leung's

21 documents led Plaintiffs to Ms. Liu. Opening Mao Decl. Exs. 22-24 ████████████████

22 ██████ Over Google's objection, this Court then ordered production of Ms. Liu's documents, Dkt.

23 437, which were even more revealing. ██████████████████████████████

24 ████████████████████████████████████████████████████████████

25 ██████████████████████ *See* Mao Reply Decl. Ex. 5, GOOG-CABR-

26 03849022 at -022 ██████████████████████

27 ██████████████████████████ Ms. Liu's documents revealed:

28

8

█████████████████████████████████████████████████████

Mao Reply Decl. Ex. 4, GOOG-BRWN-00846508 at -08. ████████████████

███████████████████████████████████████████████████████.

Supplemental Mao Decl. Ex. 4, Liu Tr. 40:10-20. That is something Google (or Plaintiffs' experts)

could have done at any time, even if just for purposes of this case. Because Google did not timely

preserve and produce data where ██████████████████████████████████████████

███████████████████████████████████████████████████████

███████████ Declaration of Christopher Thompson, filed herewith ("Thompson Decl.") ¶ 23.

## II.      Sanctions Are Warranted Because Google Severely Prejudiced Plaintiffs.

### A.      Google's Conduct Severely Prejudiced Plaintiffs in Multiple Ways.

*First*, Google has all but foreclosed discovery into the ██████████████████

█████████████████ bits, which were implemented in 2017. Google's Opposition points

to *zero documents* produced about the ███████████████ bit and *one* document about the

other. Plaintiffs were unable to ask a single fact witness any questions about them. Plaintiffs did

not even learn the name of the person most knowledgeable about these bits until *after* the close of

fact discovery from a Rule 30(b)(6) witness. Supplement at 2. Plaintiffs have no data whatsoever

tied to these bits. Plaintiffs are, quite simply, in the dark about █████████████████

███████████████████████████████████

*Second*, the existence of these bits dating back so long makes clear that Google could have

and should have preserved class member data. ██████████████████████████████

███, which itself is a subset of all the browser traffic that Google logs. Google misleadingly

presented the Court with the false impression that ████████████████████████████████

████████████ and (ii) therefore, the *only* way to preserve relevant data would be to preserve "all

logs" in their entirety. Based on this misleading premise, Google secured a protective order which

it used to justify its continued deletion of relevant ███████████ data throughout the class period.

*Third*, even with respect to the ████████████████ bit, Plaintiffs did not receive

documents from the employees responsible until the final weeks of fact discovery. And Plaintiffs

9

1    *still* do not have documents about how that bit may have related to the ███ bits. Plaintiffs agreed

2    to a narrow search of Mr. Leung and Ms. Liu's documents beginning in 2019 and 2020. Plaintiffs

3    also still lack data associated with any of the ████████████████.[5] And Google still will

4    not confirm whether there are any other ████████████ bits that they are still withholding.

5    Reply Mao Decl. ¶ 9.[6] But for Google's violation of numerous Court orders, Plaintiffs would have

6    learned about these bits far earlier, and would have had opportunities to seek evidence about them.

7    Plaintiffs would have asked other witnesses about these bits, requested more documents about

8    them, discovered other employees responsible for them, and conducted iterative searches using

9    data from them. Google's misconduct deprived Plaintiffs of these opportunities.

10          Google argues it was justified because the ██████████████████████████

11   ████████████ and (ii) cannot be used to identify potential class members. Opp. 9.

12   These arguments are not only meritless, but highlight the prejudice flowing from Google's

13   concealment and destruction. ████████████████████████████████

14   ███████████████████████████ The data was reliable enough for Google

15   to use it for its own business purposes. ████████████████████████████

16   ████████████████████████████████████████████████

17   ███████████████████████████████. Thompson Decl. ¶¶ 10-12, 24-

18   28. To the extent Google disputes the reliability of its ████████████ bits, or whether incognito

19   data could have been linked to specific users' ███ accounts, Google should have provided

20

21   [5] Google points out that Plaintiffs received some data reflecting other fields within these logs. Opp.

22   21. But Plaintiffs still lack any data from these logs for Search 1 or 2. Nor will the prejudice be
     cured should Google ultimately produce such data. Plaintiffs will not receive any of this data prior

23   to their April 15 deadline for opening expert reports. And, contrary to the November 12 Order,
     which provided four rounds of iterative searches (Dkt. 331, Ex. 1), Plaintiffs will never be able to

24   conduct follow-up searches using the data returned from these ██ logs.

25   [6] Google's point about the ████████████████████████████████████

26   ████████████████████████████████████████████ Thompson

27   Decl. ¶¶ 18-20; Mao Reply Ex. 3 Tr. 39:16-41:10 █████████████████████

28                                                10



fulsome discovery so the parties and their experts could properly litigate those issues. Google stacked the deck by hiding the existence of these bits, hiding documents that confirm these bits are accurate, and now, after being caught, claims Plaintiffs should simply accept Google's say-so.

      *B.*    *This Court Has Authority to Sanction Google.*

**Google Violated Multiple Court Orders:** The Court should sanction Google under Rule 37(b), and the Court's inherent authority, because Google violated multiple Court orders and repeatedly misled the Court. In April 2021, this Court ordered Google to produce Plaintiffs' data, explaining that Plaintiffs "have a right" to use the data to refute Google's assertions. Apr. 29 Tr. at 19:2-7 ("[W]hat the Plaintiffs are asking for is pieces of information from different places because they want to see if they can piece together, by combination of that information, class members. And that's why—I mean, ***it seems to me that they have a right to try to do that with whatever information you have***." (emphasis added)). Google did not comply with those April 29 instructions, nor the corresponding April 30 order. (Dkt. 147-2)—**Strike 1.** Google got another chance when the Special Master imposed a three-step data production process in September 2021. Dkt. 273. Google still did not comply, culminating in factual findings by the Special Master and this Court that Plaintiffs' data has "not yet been fully produced." Dkt. 299 ¶ 53; Dkt. 331 at 3— **Strike 2.** Google was granted another do-over with the November 12 order. Still, Google continued hiding ███████████████████ bits that have been implemented in ████████ Google logs—**Strike 3.** Google does not deserve another at bat. "Because the record is clear that [Google] violated the [various] Order[s], equally clear that [Google's] conduct was well within its own control, sanctions of some type are warranted." *Apple*, 2012 WL 1595784, at *3.

**Google Failed to Supplement its Interrogatory Responses:** The Court should also sanction Google under Rule 37(c) based on Google's failure to supplement its interrogatory response to identify ████████████████.[7] Google does not even try to show that its

---

[7] Fed. R. Civ. P. 37(c) (permitting sanctions if a party fails to provide information or identify a witness as required by Rule 26(a) or (e)); Fed. R. Civ. P. 26(e)(1)(A) (stating a party "who has responded to an interrogatory…must supplement or correct its disclosure or response…in a timely

11

1  failure to timely disclose these witnesses was "substantially justified" or "harmless," meaning

2  sanctions are mandatory. Fed. R. Civ. P. 37(c)(1).

3  **Google Spoliated Relevant ████████ Data:** Google should have preserved class

4  members' data that was or could have been associated with the ████████████████

5  ████████████████ bits. Yet Google "failed to take reasonable steps to preserve it" and

6  such data "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

7  Google's only apparent justification for deleting such data during the course of this litigation is

8  that it secured a protective order from the Court concerning the deletion of certain logs *in their*

9  *entirety*. But the Court never ruled that Google had no obligation to preserve event-level data that

10  was or could have been specifically flagged with ██████ bit. Instead, the record before the

11  Court was based on Google's misleading statements suggesting that it could not identify incognito

12  traffic and it would be burdensome to preserve "all logs." The evidence on the whole, and Google's

13  opposition brief, confirm that Google's conduct was not inadvertent: it "acted with the intent to

14  deprive [Plaintiffs] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(1)-(2).

15      *C.*    *The Punishment Must Fit the Crime.*

16      **Evidentiary Sanctions:** This Court should take as established that: ████████████

17  ████████████████████████████████████████████████████████████████████

18  ████████████████ To be clear, there is no ascertainability requirement in the Ninth Circuit.

19  *Buffin v. City & Cty. of San Francisco*, 2018 WL 1070892, at *5 (N.D. Cal. Feb. 26, 2018)

20  (Gonzalez Rogers, J.) ("The Ninth Circuit has not adopted an ascertainability requirement." (citing

21  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017))). Nevertheless, Google's

22  Opposition makes clear that its misguided ascertainability argument is likely what motivated its

23  concealment of evidence and destruction of data.[8] Google should not be permitted to profit from

24

25  manner if the party learns that in some material respect the disclosure or response is incomplete or

26  incorrect, and if the additional or corrective information has not otherwise been made known").

27  [8] Opp. 2 ("Plaintiffs' fundamental problem is that . . . data collected from members of the first
class . . . during Incognito sessions are islands or orphaned data; they are not linked to a user's

28            12

1    its concealment and data destruction by continuing to press such arguments—all while Plaintiffs

2    have been deprived of important evidence they were entitled to use to rebut Google's position.

3         Google's cases concerning terminating sanctions are simply off-point. Opp. at 20-21 (citing

4    cases). Plaintiffs do not seek terminating sanctions, although Google's conduct arguably warrants

5    such relief: Google has "lied to Plaintiffs and the Special Master, destroyed evidence before and

6    after this case began, and impeded resolution of this case by failing to make complete and timely

7    productions to Plaintiffs and the Special Master." *Facebook, Inc. v. Onlineinc Inc.*, No. 3:19-cv-

8    07071-SI (N.D. Cal.) Dkt. 222 (Van, Keulen, M.J.) (holding any "lesser sanction would be

9    inappropriate under the circumstances"). Yet where, as here, the sanction does not amount to a

10   default judgment, the only question is whether the sanction bears "a reasonable relationship to the

11   subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d

12   923, 947 (9th Cir. 2001). Nor does it matter whether the requested sanction will, in Google's view,

13   make it more difficult for Google to oppose class certification. *Craftwood Lumber Co. v. Interline

14   Brands, Inc.,* 2013 WL 4598490, at *13 (N.D. Ill. Aug. 29, 2013) ("Craftwood does not dispute

15   that a preclusion order would leave Interline without a basis for opposing class certification, but

16   notes that this result is of Interline's own making. We agree. The sanction is harsh but warranted").

17        Google next suggests that "lesser remedies are available," implying that this Court should

18   at most preclude Google from relying on particular evidence. Opp. 23. If this Court chooses to

19   employ a preclusion sanction instead of taking facts as established, then this Court should preclude

20   Google from making any *arguments* about any of the ███████████████████████████

21   ████████████████████████████████████. Plaintiffs should be permitted

22   to rely on the (limited) discovery they have into these bits, without Google being allowed to make

23   counterarguments. Preclusion otherwise would carry no teeth—as the defendant, Google would be

24   happy to argue that Plaintiffs failed to prove what the deleted and concealed evidence would show.

25        Google wrongly claims that this Court may only preclude it from "relying on arguments

26   _____

27   identity."); *id.* 7 (describing class member identification as a "dispositive class identification
     problem" and an "insurmountable obstacle").

28                                                    13

1    and evidence that it had not already disclosed by the time of the decision or the close of discovery."

2    Opp. 23. But Google *still* has not produced discovery concerning the ███████████████ and

3    ███████████████ bits, and *still* has not produced any ███████████████

4    ███████████. In any event, "it is well-established that '[b]elated compliance with discovery

5    orders does not preclude the imposition of sanctions.'" *Sas v. Sawabeh Info. Servs.*, 2015 WL

6    12711646, at *7 (C.D. Cal. Feb. 6, 2015) (quoting *North American Watch Corp. v. Princess*

7    *Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986)). "As the Ninth Circuit has explained, the

8    '[l]ast-minute tender of documents does not cure the prejudice to opponents.'" *Sas*, 2015 WL

9    12711646, at *7 (quoting *Princess Erime Jewels*, 786 F.2d at 1451). Even if Google had eventually

10   complied with its obligations (it ***still*** has not), "it would be unjust to allow [Google's] egregious

11   conduct to escape sanction." *Id.* at *11. Sanctions are appropriate where, as here, a party's decision

12   to withhold material until the close of discovery (and after) deprives another of "a meaningful

13   opportunity" to "comprehend" complex discovery. *Apple v. Samsung Elecs.* 2012 WL 1595784,

14   at *3 (N.D. Cal. May 4, 2012). Here, the (extremely limited) discovery came far too late.

15       Google's conduct was "designed to achieve a tactical advantage"; such "obstruction should

16   not be permitted to achieve its objectives." *Conway v. Dunbar*, 121 F.R.D. 211, 214 (S.D.N.Y.

17   1988). "Where the discovery misconduct has deprived the opposing party of key evidence needed

18   to litigate a contested issue, an order prohibiting the disobedient party from contesting that issue—

19   or simply directing that the matter be taken as established—is also appropriate." *Shanghai Weiyi*

20   *Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *11 (S.D.N.Y. June 27, 2017).

21   Google's suggestion that preclusion is inappropriate where the subject "remains a contested issue

22   of fact" is wrong: Were that the standard, there would be no preclusion standard.[9] Opp. 24.

23   _____

24   [9] For support, Google cites *Natural Immunogenics Corp. v. Newport Trial Group.*, 2016 WL
     11520757, at *6 (C.D. Cal. June 16, 2016), which is inapposite because the plaintiff did not even
25   seek sanctions under Rule 37. And the court in *Kannan v. Apple Inc.*, 2020 WL 9048723, at *9
     (N.D. Cal. Sept. 21, 2020) declined to employ preclusion because there was only a "possibility"
26   that the party's deficient evidence collection efforts resulted in withholding evidence. Here, by
     contrast, Plaintiffs have established that Google hid and withheld particular evidence regarding its
27   tracking of Incognito traffic.

28                                                    14

1     **Jury Instruction:** This Court should also instruct the jury that "Google concealed and

2 altered evidence regarding its ███████████████████ Mot. 22. Google argues that

3 this Court cannot order such a sanction because Google did not permanently delete or withhold *all*

4 relevant evidence. But Google's selective production does not absolve Google for the evidence it

5 deleted or withheld. *Kannan*, 2020 WL 9048723, at *10 (ordering jury instruction where party

6 searched some but not *all* locations he was required to search); *Nursing Home Pension Fund v.*

7 *Oracle Corp.*, 254 F.R.D. 559, 564 (N.D. Cal. 2008) (finding "adverse inferences in plaintiffs'

8 favor are warranted with regard to *some categories of evidence* that defendants concede was not

9 produced or preserved."). Google also incorrectly suggests that only this Court will decide whether

10 ████████████████████. Opp. 25. ██████████████████████████

11 ██████████████████████████████████████████████, bears on the

12 offensiveness of Google's conduct and is thus relevant to Plaintiffs' claims for invasion of privacy

13 and intrusion upon seclusion, as well as Plaintiffs' entitlement to punitive damages.

14     **Reimbursement of Special Master Fees:** Finally, Google is mistaken that Plaintiffs may

15 not seek reimbursement of Special Master fees. Rule 37(b)(2)(C) requires the offending party to

16 "pay the ***reasonable expenses***, ***including*** attorney's fees, caused by the failure." (emphasis added);

17 *see also Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1225 (9th Cir. 2018) (affirming sanctions

18 for costs associated with court-ordered deposition). Timely identification by Google of the

19 ███████████ bits would have significantly streamlined the Special Master process, including

20 by making it clear exactly which logs should be searched. Google's misconduct made the whole

21 process far more time consuming and expensive than it needed to be.

22                         **CONCLUSION**

23     Plaintiffs request that the Court issue the sanctions described above and any other sanction

24 the Court deems appropriate. One purpose of sanctions is to "to serve as a general deterrent in both

25 the case at hand and other cases." *Sas*, 2015 WL 12711646, at *10. Absent meaningful sanctions,

26 Google and other parties would be incentivized to do exactly what Google has done here; namely,

27 lie and withhold evidence until (if) caught. That behavior cannot be encouraged.

28                         15

Dated: April 11, 2022                                  BOIES SCHILLER FLEXNER LLP


                                                       By */s/ Mark Mao*


                                                       Mark C. Mao (CA Bar No. 236165)
                                                       *mmao@bsfllp.com*
                                                       Beko Rebitz-Richardson (CA Bar No. 238027)
                                                       brichardson@bsfllp.com
                                                       Erika Nyborg-Burch (CA Bar No. 342125)
                                                       enyborg-burch@bsfllp.com
                                                       BOIES SCHILLER FLEXNER LLP
                                                       *44 Montgomery Street, 41st Floor*
                                                       *San Francisco, CA 94104*
                                                       Telephone: (415) 293 6858
                                                       Facsimile (415) 999 9695

                                                       James W. Lee (*pro hac vice*)
                                                       *jlee@bsfllp.com*
                                                       Rossana Baeza (*pro hac vice*)
                                                       *rbaeza@bsfllp.com*
                                                       BOIES SCHILLER FLEXNER LLP
                                                       100 SE 2nd Street, Suite 2800
                                                       Miami, FL 33130
                                                       Telephone: (305) 539-8400
                                                       Facsimile: (305) 539-1304

                                                       Amanda Bonn (CA Bar No. 270891)
                                                       *abonn@susmangodfrey.com*
                                                       SUSMAN GODFREY L.L.P.
                                                       1900 Avenue of the Stars, Suite 1400
                                                       Los Angeles, CA 90067
                                                       Telephone: (310) 789-3100

                                                       William Christopher Carmody (*pro hac vice*)
                                                       *bcarmody@susmangodfrey.com*
                                                       Shawn J. Rabin (*pro hac vice*)
                                                       *srabin@susmangodfrey.com*
                                                       Steven Shepard (*pro hac vice*)
                                                       *sshepard@susmangodfrey.com*
                                                       Alexander P. Frawley (*pro hac vice*)
                                                       afrawley@susmangodfrey.com
                                                       SUSMAN GODFREY L.L.P.
                                                       1301 Avenue of the Americas, 32nd Floor
                                                       New York, NY  10019
                                                       Telephone: (212) 336-8330

                                                       16

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

17