# Plaintiff's REPLY ISO Request for Order to Show Cause re Discovery Sanctions

# Redacted Version of Document Sought to be Sealed

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William Christopher Carmody
(admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY  10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
*srabin@susmangodfrey.com*
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505ß
jyanchunis@forthepeople.com
mram@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
**MORGAN & MORGAN**
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No.:  4:20-cv-03664-YGR-SVK <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT** <br><br> The Honorable Susan van Keulen <br> Courtroom 6 - 4th Floor <br> Date: April 21, 2022 <br> Time: 10:00 a.m. <br> **Filed Under Seal** |

1

2

# **<u>TABLE OF CONTENTS</u>**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.     Google Has No Justification for Its Discovery Misconduct and
              Concealment. ..................................................................................................... 2

            A.    Google Omitted Quentin Fiard, Bert Leung, and Mandy Liu
                    from its February and March 2021 Lists of Relevant Employees
                    ............................................................................................................. 2

            B.    Google Never Disclosed the Incognito Detection Bits in the
                    Parties' April 2021 Preservation Dispute or the July 2021 X-
                    Client Data Header Dispute ...................................................................... 2

            C.    Google Did Not Disclose the Logs that Contain these Incognito-
                    bits in Its Court-Ordered November 2021 Declaration .............................. 3

            D.    Google Does Not Explain Why It Could Not Produce More
                    Complete Schema ....................................................................................... 5

            E.    Google's Document Defense Holds No Water. .......................................... 6

            F.    Plaintiffs Learned the Truth through Mr. Leung's and Ms. Liu's
                    Documents ................................................................................................... 8

    II.    Sanctions Are Warranted Because Google Severely Prejudiced
              Plaintiffs. ........................................................................................................... 9

            A.    Google's Conduct Severely Prejudiced Plaintiffs in Multiple
                    Ways. .......................................................................................................... 9

            B.    This Court Has Authority to Sanction Google. ........................................ 11

            C.    The Punishment Must Fit the Crime. ....................................................... 12

CONCLUSION ................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple v. Samsung Elecs.*
  2012 WL 1595784 (N.D. Cal. May 4, 2012)................................................................11, 14

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ........................................................................................12

*Buffin v. City & Cty. of San Francisco*,
  2018 WL 1070892 (N.D. Cal. Feb. 26, 2018) (Gonzalez Rogers, J.) ..............................12, 16

*Conway v. Dunbar*,
  121 F.R.D. 211 (S.D.N.Y. 1988)......................................................................................14

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
  2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) ...................................................................13

*Facebook, Inc. v. Onlineinc Inc.*,
  No. 3:19-cv-07071-SI (N.D. Cal.) Dkt. 222 ....................................................................13

*Kannan v. Apple Inc.*,
  2020 WL 9048723 (N.D. Cal. Sept. 21, 2020)..............................................................14, 15

*Natural Immunogenics Corp. v. Newport Trial Group.*,
  2016 WL 11520757 (C.D. Cal. June 16, 2016) ................................................................14

*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001) ...........................................................................................13

*North American Watch Corp. v. Princess Ermine Jewels*,
  786 F.2d 1447 (9th Cir. 1986) .........................................................................................14

*Nursing Home Pension Fund v. Oracle Corp.*,
  254 F.R.D. 559 (N.D. Cal. 2008) ....................................................................................15

*Sali v. Corona Reg'l Med. Ctr.*,
  884 F.3d 1218 (9th Cir. 2018) .........................................................................................15

*Sas v. Sawabeh Info. Servs.*,
  2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) ...............................................................14, 15

*Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*,
  2017 WL 2840279 (S.D.N.Y. June 27, 2017) ..................................................................14

ii

**Rules**

Fed. R. Civ. P. 26(a) ................................................................................................................. 11

Fed. R. Civ. P. 26(e)(1)(A) ....................................................................................................... 11

Fed. R. Civ. P. 30(b)(6) ............................................................................................................. 9

Fed. R. Civ. P. 37 ..................................................................................................................... 14

Fed. R. Civ. P. 37(b) ................................................................................................................. 11

Fed. R. Civ. P. 37(b)(2)(C) ...................................................................................................... 15

Fed. R. Civ. P. 37(c) ................................................................................................................. 11

Fed. R. Civ. P. 37(c)(1) ............................................................................................................ 12

Fed. R. Civ. P. 37(e) ................................................................................................................. 12

Fed. R. Civ. P. 37(e)(1)-(2) ...................................................................................................... 12

## **INTRODUCTION**

Throughout this case, Google has been adamant that it cannot identify "Incognito" browsing data. These assertions were false: Ever since 2017, Google has used incognito detection bits (██████████████, ████████████████, and, since 2021, ████████████████) in at least ██ logs. Just last week, Google finally produced the below "proto comments" for the ████████████████ bit, which has existed since 2017:

> Below is the proto comment for the ████████████ field:
>
> ████████████████████████████████████████

Mao Reply Decl. Ex. 1. Timely disclosure of these bits would have allowed the parties to negotiate preservation of a much smaller data set than what Google represented it would otherwise need to preserve at this time last year. But Google concealed their existence, convinced the Court preservation was burdensome, and spoliated class member data along the way. Specifically, Google did not:

1. Inform the Court of the three Incognito detection bits in the context of the parties' preservation dispute;

2. Identify the employees responsible for these Incognito detection bits in interrogatory responses and custodian lists; or

3. Identify and produce complete schema for all of the data sources and logs where these Incognito bits have been implemented.

To this day, Google *still* has not confirmed to Plaintiffs that it has identified *all* "incognito" fields.

Against this backdrop, notably absent from Google's papers is any suggestion that its repeated failures were due to mere inadvertence. And while Google submits a declaration from its outside counsel, nowhere does that declaration suggest that counsel were *unaware* of these incognito detection bits. Instead, the remarkable gravamen of Google's Opposition is that despite its multiple efforts to conceal and obscure—including an *admittedly* incomplete and inaccurate Court-ordered declaration on relevant data sources—Plaintiffs should have gleaned enough from a tiny handful of documents that Google trickled out last fall to have caught on to Google's defiance of multiple Court Orders sooner.

1

Why did Google go to such great lengths to conceal these facts? Google's brief makes that reason clear: Google's principal opposition to class certification will be to argue that class members cannot be identified and that the private browsing data cannot be linked to individual users. Opp. 2, 7. Google thus intentionally withheld discovery and deleted evidence that could have been used to disprove its arguments. The most appropriate remedy is to issue evidentiary sanctions that will prevent Google from achieving the very objective of its discovery misconduct.

<div align="center">

**ARGUMENT**

</div>

**I.      Google Has No Justification for Its Discovery Misconduct and Concealment.**

> **A.     Google Omitted Quentin Fiard, Bert Leung, and Mandy Liu from its February and March 2021 Lists of Relevant Employees**

Google offers no explanation for why it omitted Bert Leung and Mandy Liu in its February 2021 list of potential custodians and in its March 2021 interrogatory response. Google does not even mention Mr. Fiard anywhere in its Opposition. These witnesses had long worked on the "incognito" detection bits (Fiard since 2017, Leung since 2019, and Liu since 2020), and Google's outside counsel was communicating *directly* with Mr. Leung *about this case*. Mot. 8-9; Supp. 2. Google points to the fact that six months later, it cross-produced a *Calhoun* custodian list that named Mr. Leung and Ms. Liu. Opp. 11. But given the importance of Mr. Leung and Ms. Liu to developing the "incognito" bits, why would Google have disclosed them in *Calhoun* but not in *Brown*? In any event, Google's belated cross-production post-dated the Court's cut-off for custodian disputes.[1] And the belatedly produced *Calhoun* list *also* omits Mr. Fiard, the person responsible for the two live "incognito" bits that date back to 2017.

> **B.     Google Never Disclosed the Incognito Detection Bits in the Parties' April 2021 Preservation Dispute or the July 2021 X-Client-Data Header Dispute**

Google secured a protective order on preservation without informing Plaintiffs or the Court that it had, since 2017, been logging event-level traffic as "incognito" by way of two bits across

---

[1] The Court set an August 24 deadline for final custodian disputes. Dkts. 242-1, 258. Further grasping at straws, Google points out that it had produced some emails from Mr. Leung. Opp. 12. But just four of the cited documents (Trebicka Exs. 1, 3, 4, 5) were produced prior to Plaintiffs' August 24 deadline to select custodians, and these documents, buried in a sea of millions of pages, did not explain that Google implemented Incognito detection bits or that the bits are live.

<div align="center">2</div>

1 ██ logs: ████████ and ████████████. *See* Supp. at 1. Had Google timely

2 identified these bits, Plaintiffs could have narrowed their preservation request to focus on specific

3 data tied to the bits—a small fraction of the data Google logs.[2] Google recently admitted that it

4 can "construct a log source for preservation that only consists of the specific fields and data to be

5 preserved." Mao Reply Decl. Ex. 2. Google should have proposed such targeted preservation last

6 April. Had the Court known of these bits and Google's ability to extract and combine relevant

7 data, the Court may have ruled differently on Google's motion for a protective order. Instead,

8 Google presented a false "all or nothing" choice to preserve *all* potentially relevant logs in their

9 *entirety* or omit the log from the preservation plan. *See* Dkt. 119. Google left the Court with that

10 misleading impression for a reason. To this day, Google has never presented a shred of evidence

11 that preserving targeted data related to these incognito bits would be unduly burdensome.

12      Similarly, when the parties subsequently briefed their dispute over production of data

13 lacking any X-Client-Data Header (Dkt. 218), Google had by then also implemented the

14 ████████████ bit, based on the lack of the X-Client-Data Header, into at least █

15 different ████ logs. Mao Reply Decl. Ex. 6. Once again, Google shows no contrition for failing

16 to disclose this information. Instead, Google brags about winning a rigged game, arguing that it

17 convinced the Special Master and the Court to deny Plaintiffs' motion. Mot. 11-12; Opp. 8. This

18 argument only highlights Google's concealment and Plaintiffs' prejudice.

19     C.   *Google Did Not Disclose the Logs that Contain these Incognito-bits in Its Court-Ordered November 2021 Declaration*

20      By November 2021, the jig should have been up. The Court required a "declaration, under

21 penalty of perjury from Google, not counsel, that: 1. To the best of its knowledge, Google has

22 provided a complete list of data sources that contain information relevant to Plaintiffs' claims…."

23 Dkt. 331 at 8. Yet Google selected as its declarant Andre Golueke, a "Senior Legal Operations

24 Manager" (in other words, a member of Google's legal support staff if not a lawyer himself).

---

26 [2] Google's employees state that Incognito traffic represents ████ of the total Chrome-generated
traffic. *See infra* Section I.F. Thus, Google's preservation obligation would have been a fraction
27 of what Google represented.

28         3

1        Plaintiffs' motion explained that Mr. Golueke's court-ordered declaration "appears to be

2  false" because Mr. Leung's documents "demonstrate that ██████████████ was approved

3  for use in multiple logs that had not been disclosed." Mot. 13 (citing Dkt. 338). Subsequent

4  discovery has confirmed as much: ██████████████ was implemented into all ██ logs in

5  June and July, 2021, and yet Mr. Golueke's Declaration listed just ██ of those logs. *Compare*

6  Mao Decl. Reply Ex. 6, *with* Dkt. 338-1. And Mr. Golueke's Declaration did not list any of the

7  ██ logs that contain the ██████████ or ████████████ bits.

8        Compounding the problems, Mr. Golueke's subsequent declaration (Dkt. 528-5) admits

9  that he "was not aware" that (i) "the ████████████ bit existed" or (ii) that ████

10  "logs contained fields labeled ██████████ or "██████████ mode.'" Dkt.

11  528-5 ¶¶ 10-11. Plaintiffs are troubled that Google's investigation failed to address these bits,

12  particularly since Google's outside counsel does not deny knowing about them well before Mr.

13  Golueke signed his initial declaration. *See generally* Ansorge Decl. (Dkt. 528-1) Google itself

14  certainly knew. Google's deliberate choice to select a "Legal Operations Manager" as its declarant

15  and then keep him in the dark about the "incognito" bits cannot be countenanced. Surely that is

16  not what the Court had in mind when it ordered Google to swear under oath that it "provided a

17  complete list of data sources." Dkt. 331; *id.* at 3 ("Google knows what data is has collected

18  regarding Plaintiffs and putative class members and where the data may be found").

19        Google does not even attempt to excuse its failure to identify the ██ logs with the

20  ██████████████ bit. As for the other bits, Google wrongly claims that they were, prior

21  to the class definition amendment, "irrelevant to the case" insofar as they live in "Search" logs.

22  Opp. 14.[3] This argument, which Google has clung to like a life-preserver throughout the litigation,

23  is meritless. One purpose of the Special Master process was to provide Plaintiffs "the tools to

24

_____

25  [3] Even this explanation by Google was not forthcoming, as these bits showed up in the schema of

26  two non-Search logs (which the Special Master had Google reproduce after these issues arose). Reply Mao Decl. ¶ 7. Therefore, Plaintiffs believe they have a reasonable basis to question how

27  many other logs already contain these bits, including in their schema.

28

_____

1    identify class members using Google's data." Dkt. 331 at 4. People who use Google Search within

2    Incognito can and do go on to visit non-Google websites. And the Special Master expressly

3    rejected Google's argument that Search is "out of scope" when he required Google to include the

4    ██████████ log, which Mr. Leung used for his 2020 analysis. Mot. 14. The Special Master's

5    reasoning applies even more so to logs where Google has since 2017 been marking event-level

6    traffic as "Incognito."

7             D.     *Google Does Not Explain Why It Could Not Produce More Complete Schema*

8          For the two logs with ██████████ that Mr. Golueke's declaration actually

9    identified, Google subsequently prevented Plaintiffs from learning about the bit by producing

10   altered log schema that omitted the field from ███ logs. Reply Mao Decl. ¶¶ 3-4; Mot. at 5-6.

11   Google's purported "largest-100 fields" excuse is implausible, including because (i) Google

12   produced schema for other logs that contained more than 100 fields and (ii) Google readily

13   provided more comprehensive schema for the ██████████ logs once Plaintiffs

14   moved for sanctions. Supplement at 4; Reply Mao Decl. ¶¶ 5-6. Google's Opposition has no

15   response to these points. Nor does Google dispute Plaintiffs' argument that the "largest-100 fields"

16   limitation automatically excluded the Incognito detection bits, which are boolean fields that show

17   up only as "true" or "false" and thus will never be among the largest fields. Supplement at 4-5.

18         Google suggests that "full compliance" with the November 12 order (i.e., producing full

19   schema with every field) would have posed "engineering burdens." Opp. 15. Setting aside that the

20   November 12 Order already rejected such concerns,[4] they are irrelevant here. All Google had to

21   do was supplement the 100-largest fields with the "incognito" bit. Google then goes so far as to

22   blame the Special Master for its own misconduct, quoting the Special Master's statement that

23   "maybe it was my fault for saying . . . produce these top hundred hoping that was going to be

24   enough." Opp. 16. As this statement implicitly acknowledges, the Special Master would not have

25   ―――――――――――――――――――――

26   [4] "To the extent [this process] requires the significant commitment of time, effort, and resources
     across groups of engineers at Google on very short timelines, that burden . . . arises, at least in part,

27   as a result of Google's reticence thus far to provide critical data source information in these
     actions." Dkt. 331 at 4-5.

28   <center>5</center>

―――――――――――――――――――――

permitted Google to limit its production to the largest-100 fields if Google informed him that doing so would eliminate key boolean fields. Google did not disclose any of that information to the Special Master when it requested permission to limit the schema. *See* Trebicka Decl. Ex 35.

       E.       *Google's Document Defense Holds No Water.*

Google largely attempts to excuse much of the above misconduct by pointing to a small handful of opaque and outdated documents that it produced. But those documents did not clearly disclose that Google had implemented the "incognito" detection bits. And the doubt that was left by this mere handful of documents was reinforced by Mr. Liao's misleading deposition testimony, which he now attempts to defend by slicing the bologna so thin it is all but transparent.

With respect to the ██████████████ bit, Google does not point to *any* documents whatsoever that it has produced in this case. Not one. Opp. 12. With respect to the ██████████████ bit, Google points to a *single* document. And Google selectively quotes from the document to make it sound more certain than it actually is—the underlined portions of the following quote were omitted in Google's brief: "i <u>think</u> this has only been used by the ██████ team, <u>AFAICT</u> [as far as I can tell]." Trebicka Decl. Ex. 15. Moreover, that Google identifies only *one* document about just one of these bits--out of ██████ total documents—is alarming given that "Incognito" was a search term. Dkt. 148. Especially given the proto comments belatedly produced only recently, Mao Reply Decl. Ex. 1, Plaintiffs are deeply concerned that Google intentionally held back other documents (including by not disclosing Mr. Fiard), and Google should be prepared to address this issue at the hearing.

With respect to the ██████████████ bit, Google misleadingly suggests that it produced documents in the Fall of 2021 making clear that (i) a "technical design" for the bit dated "May 4, 2021" was "APPROVED" and (ii) Google was "logging" the field "into ██████" by June 2021. Opp. 5. This is, quite simply, wrong for three reasons. *First*, the May 4, 2021 design document from Mr. Liao's files was *not* fully "APPROVED" and implemented. Instead, the face of the document indicates it was only approved by 4 out of 5 required "approvers." Trebicka Ex. Decl. Ex. 13. That is because, as explained in detail in the opening Mao Declaration, the May 4,

6

1   2021 version of the design document reflected an older plan to log in ███ logs which was

2   abandoned the next day on May 5, 2021 to log in ███ logs. Opening Mao Decl. ¶ 12

3   (summarizing Trebicka Ex. 13). As the Opening Mao Declaration pointed out, Google *never*

4   produced the May 5, 2021, version of the document until January 31, 2022. *Id.* ¶ 3. Plaintiffs have

5   sent Google's counsel multiple messages demanding an explanation why the May 5, 2021, version

6   of the document was not produced from Mr. Liao's custodial files last fall. Mao Reply Decl. ¶ 10.

7   Google has never responded, *id.*, and Google's Opposition simply *ignores* these facts altogether.

8       *Second*, the single family of documents that Google produced last fall which mentioned

9   logging "into ███" likewise suggested that the plan had not yet been implemented. On

10  September 24, 2021, Google produced ███ documents from Mr. Liao's custodial files that

11  referenced "logging 6 fields into ███." Six fields were then listed, including "6. ███

12  ███ bit (bool)." Trebicka Decl. Exs. 12, 17-18. The documents all indicated, however, that

13  this "data source factory *will be implemented* and registered in a subsequent CL," suggesting it

14  had not yet been implemented. *Id.* That language, combined with the way "███

15  ███ bit" was written (not in the other way it is typically expressed as a field name

16  ███) made it appear that perhaps a decision had not been finalized on

17  whether to log an incognito bit. Google subsequently produced additional variants of the same

18  document on November 24, 2021—Thanksgiving eve. *See* Trebicka Decl. Exs. 23-25.

19      *Third*, after Google produced this handful of documents from Mr. Liao's custodial files,

20  Plaintiffs then deposed Mr. Liao. Mr. Liao repeatedly gave misleading if not outright false

21  testimony under oath—testimony appearing to confirm that this plan had never been implemented.

22  Mot. 15-16. When asked if Google "explore[d] whether or not you would use the X-Client Data

23  header as a signal" for detecting Incognito traffic and "what was the conclusion on that?" Mr. Liao

24  responded: "Yes . . . . We did explore the use of [X-Client-Data Header]. In the end it was

25  determined that the accuracy of using that header as the indication for incognito mode is rather

26  low." Opening Mao Decl. Ex. 8, Liao Tr. 136:2-11. Google's Opposition tellingly ignores this

27  portion of Mr. Liao's testimony.

28

<div align="center">7</div>

1    Moreover, in response to a question about whether entries in logs related to "incognito

2    mode" could be "identif[ied]" and then "delete[d]," Mr. Liao answered in the negative: "As I stated

3    before, we do not have a reliable signal to infer incognito mode at this time we receive an ad query.

4    And ***as a result, we are also unable to infer incognito mode using the same set of signals from

5    the logs***." Opening Mao Decl. Ex. 8, Liao Tr. 140:6-10. Mr. Liao now attempts to justify his

6    misleading answer by stating that (i) he unilaterally interpreted the word "signal" to require that it

7    must be "reliable" and for a "dedicated purpose" and (ii) he would therefore use the term

8    "heuristic" rather than "signal." Liao Decl. ¶¶ 5, 7, 13. But the only examples he gives concerning

9    the purported inaccuracy of the ████████████ signal is that it may be *over*-inclusive—

10   not that it does not accurately identify incognito traffic that could be flagged and either preserved

11   or deleted (but rather that it may be over-inclusive and *also* include some other traffic, such as

12   traffic that is "spoofed" to resemble Chrome). Mr. Liao's testimony was false at worst and deeply

13   misleading at best. Google *was* in fact using the X-Client-Data Header to log traffic as "incognito"

14   within at least ██ logs, including in (i) the ██ ██ logs that Chris Liao was directly involved in

15   for the ████████████ bit and (ii) at least ██ logs for the ████████████ bit

16   where the proto comments say "represents if an entry comes from a Chrome web browser in the

17   incognito mode" (saying nothing about any inaccuracy). *See* Reply Ex. 11.

18       F.    *Plaintiffs Learned the Truth through Mr. Leung's and Ms. Liu's Documents*

19       Google would have escaped without any repercussions but for this Court's February 2022

20   order compelling production of documents from Mr. Leung. Dkts. 399, 401. And Mr. Leung's

21   documents led Plaintiffs to Ms. Liu. Opening Mao Decl. Exs. 22-24 (instant messages between

22   them). Over Google's objection, this Court then ordered production of Ms. Liu's documents, Dkt.

23   437, which were even more revealing. They show that Google ***perfected*** the accuracy of

24   ████████████ such that it now matches the "expected ██" that Google considers

25   to be the "ground truth" for Incognito traffic. *See* Mao Reply Decl. Ex. 5, GOOG-CABR-

26   03849022 at -022 (email from Mr. Leung characterizing Chrome's UMA data ██ as the

27   "ground truth" for their Incognito detection analysis).  Ms. Liu's documents revealed:

28                                          8

1   | ● Good news: Chrome incognito rate is ████ |

2   Mao Reply Decl. Ex. 4, GOOG-BRWN-00846508 at -08. Ms. Liu explained that Google

3   "exclude[d] mobile app traffic from Chrome traffic" to reach this "good news" result.

4   Supplemental Mao Decl. Ex. 4, Liu Tr. 40:10-20. That is something Google (or Plaintiffs' experts)

5   could have done at any time, even if just for purposes of this case. Because Google did not timely

6   preserve and produce data where ████████ or ████████ is equal to

7   "true", Plaintiffs and their experts were precluded from attempting to use the data the isolate

8   Incognito traffic. Declaration of Christopher Thompson, filed herewith ("Thompson Decl.") ¶ 23.

9   **II.      Sanctions Are Warranted Because Google Severely Prejudiced Plaintiffs.**

10      A.      *Google's Conduct Severely Prejudiced Plaintiffs in Multiple Ways.*

11          *First*, Google has all but foreclosed discovery into the ████████ and

12      ████████ bits, which were implemented in 2017. Google's Opposition points

13      to *zero documents* produced about the ████████ bit and *one* document about the

14      other. Plaintiffs were unable to ask a single fact witness any questions about them. Plaintiffs did

15      not even learn the name of the person most knowledgeable about these bits until *after* the close of

16      fact discovery from a Rule 30(b)(6) witness. Supplement at 2. Plaintiffs have no data whatsoever

17      tied to these bits. Plaintiffs are, quite simply, in the dark about Google's efforts to log and identify

18      "incognito" traffic using these bits since 2017—three years before the case was filed.

19          *Second*, the existence of these bits dating back so long makes clear that Google could have

20      and should have preserved class member data. Incognito traffic makes up ████████ of Chrome

21      traffic, which itself is a subset of all the browser traffic that Google logs. Google misleadingly

22      presented the Court with the false impression that (i) there was no method to specifically identify

23      incognito traffic and (ii) therefore, the *only* way to preserve relevant data would be to preserve "all

24      logs" in their entirety. Based on this misleading premise, Google secured a protective order which

25      it used to justify its continued deletion of relevant "incognito" data throughout the class period.

26          *Third*, even with respect to the ████████ bit, Plaintiffs did not receive

27      documents from the employees responsible until the final weeks of fact discovery. And Plaintiffs

28

*still* do not have documents about how that bit may have related to the earlier bits. Plaintiffs agreed to a narrow search of Mr. Leung and Ms. Liu's documents beginning in 2019 and 2020. Plaintiffs also still lack data associated with any of the three Incognito detection bits.[5] And Google still will not confirm whether there are any other incognito detection bits that they are still withholding. Reply Mao Decl. ¶ 9.[6] But for Google's violation of numerous Court orders, Plaintiffs would have learned about these bits far earlier, and would have had opportunities to seek evidence about them. Plaintiffs would have asked other witnesses about these bits, requested more documents about them, discovered other employees responsible for them, and conducted iterative searches using data from them. Google's misconduct deprived Plaintiffs of these opportunities.

Google argues it was justified because the incognito bits (i) are "unreliable" and merely measure "aggregate" data and (ii) cannot be used to identify potential class members. Opp. 9. These arguments are not only meritless, but highlight the prejudice flowing from Google's concealment and destruction. Google was flagging traffic on an event-by-event basis so that it could then gather "aggregate" statistics about such events. The data was reliable enough for Google to use it for its own business purposes. And those events could, in fact, be joined and linked to specific users by (among other methods) comparing the IP address and user agent string associated with such data to the same pairings in "signed-in" or GAIA logs. Thompson Decl. ¶¶ 10-12, 24-28. To the extent Google disputes the reliability of its incognito detection bits, or whether incognito data could have been linked to specific users' GAIA accounts, Google should have provided

---

[5] Google points out that Plaintiffs received some data reflecting other fields within these logs. Opp. 21. But Plaintiffs still lack any data from these logs for Search 1 or 2. Nor will the prejudice be cured should Google ultimately produce such data. Plaintiffs will not receive any of this data prior to their April 15 deadline for opening expert reports. And, contrary to the November 12 Order, which provided four rounds of iterative searches (Dkt. 331, Ex. 1), Plaintiffs will never be able to conduct follow-up searches using the data returned from these 24 logs.

[6] Google's point about the two bits being included "GWS proto" (Opp. 13 n.7) further illustrates the prejudice Plaintiffs have suffered. These bits' inclusion in that proto means that their logic could have been applied to the data stored within any logs that draw from the proto. Thompson Decl. ¶¶ 18-20; Mao Reply Ex. 3 Tr. 39:16-41:10 (Google counsel explaining GWS proto).

10

fulsome discovery so the parties and their experts could properly litigate those issues. Google stacked the deck by hiding the existence of these bits, hiding documents that confirm these bits are accurate, and now, after being caught, claims Plaintiffs should simply accept Google's say-so.

        *B.*    *This Court Has Authority to Sanction Google.*

**Google Violated Multiple Court Orders:** The Court should sanction Google under Rule 37(b), and the Court's inherent authority, because Google violated multiple Court orders and repeatedly misled the Court. In April 2021, this Court ordered Google to produce Plaintiffs' data, explaining that Plaintiffs "have a right" to use the data to refute Google's assertions. Apr. 29 Tr. at 19:2-7 ("[W]hat the Plaintiffs are asking for is pieces of information from different places because they want to see if they can piece together, by combination of that information, class members. And that's why—I mean, *it seems to me that they have a right to try to do that with whatever information you have*." (emphasis added)). Google did not comply with those April 29 instructions, nor the corresponding April 30 order. (Dkt. 147-2)—**Strike 1.** Google got another chance when the Special Master imposed a three-step data production process in September 2021. Dkt. 273. Google still did not comply, culminating in factual findings by the Special Master and this Court that Plaintiffs' data has "not yet been fully produced." Dkt. 299 ¶ 53; Dkt. 331 at 3— **Strike 2.** Google was granted another do-over with the November 12 order. Still, Google continued hiding *at least* ███ Incognito detection bits that have been implemented in *at least* ██ Google logs—**Strike 3.** Google does not deserve another at bat. "Because the record is clear that [Google] violated the [various] Order[s], equally clear that [Google's] conduct was well within its own control, sanctions of some type are warranted." *Apple*, 2012 WL 1595784, at *3.

**Google Failed to Supplement its Interrogatory Responses:** The Court should also sanction Google under Rule 37(c) based on Google's failure to supplement its interrogatory response to identify Mr. Fiard, Mr. Leung, and Ms. Liu.[7] Google does not even try to show that its

---

[7] Fed. R. Civ. P. 37(c) (permitting sanctions if a party fails to provide information or identify a witness as required by Rule 26(a) or (e)); Fed. R. Civ. P. 26(e)(1)(A) (stating a party "who has responded to an interrogatory…must supplement or correct its disclosure or response…in a timely

11

1    failure to timely disclose these witnesses was "substantially justified" or "harmless," meaning

2    sanctions are mandatory. Fed. R. Civ. P. 37(c)(1).

3         **Google Spoliated Relevant "Incognito" Data:** Google should have preserved class

4    members' data that was or could have been associated with the ████████████ or

5    ████████████████████ bits. Yet Google "failed to take reasonable steps to preserve it" and

6    such data "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

7    Google's only apparent justification for deleting such data during the course of this litigation is

8    that it secured a protective order from the Court concerning the deletion of certain logs *in their*

9    *entirety*. But the Court never ruled that Google had no obligation to preserve event-level data that

10   was or could have been specifically flagged with an incognito bit. Instead, the record before the

11   Court was based on Google's misleading statements suggesting that it could not identify incognito

12   traffic and it would be burdensome to preserve "all logs." The evidence on the whole, and Google's

13   opposition brief, confirm that Google's conduct was not inadvertent: it "acted with the intent to

14   deprive [Plaintiffs] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(1)-(2).

15        *C.    The Punishment Must Fit the Crime.*

16        **Evidentiary Sanctions:** This Court should take as established that: (1) Google can detect

17   event-level Incognito traffic within its logs; (2) this Incognito data is linkable to users; and (3) the

18   class is ascertainable. To be clear, there is no ascertainability requirement in the Ninth Circuit.

19   *Buffin v. City & Cty. of San Francisco*, 2018 WL 1070892, at *5 (N.D. Cal. Feb. 26, 2018)

20   (Gonzalez Rogers, J.) ("The Ninth Circuit has not adopted an ascertainability requirement." (citing

21   *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017))). Nevertheless, Google's

22   Opposition makes clear that its misguided ascertainability argument is likely what motivated its

23   concealment of evidence and destruction of data.[8] Google should not be permitted to profit from

24

25       manner if the party learns that in some material respect the disclosure or response is incomplete or

26   incorrect, and if the additional or corrective information has not otherwise been made known").

27   [8] Opp. 2 ("Plaintiffs' fundamental problem is that . . . data collected from members of the first
     class . . . during Incognito sessions are islands or orphaned data; they are not linked to a user's

28                            12

1  its concealment and data destruction by continuing to press such arguments—all while Plaintiffs

2  have been deprived of important evidence they were entitled to use to rebut Google's position.

3       Google's cases concerning terminating sanctions are simply off-point. Opp. at 20-21 (citing

4  cases). Plaintiffs do not seek terminating sanctions, although Google's conduct arguably warrants

5  such relief: Google has "lied to Plaintiffs and the Special Master, destroyed evidence before and

6  after this case began, and impeded resolution of this case by failing to make complete and timely

7  productions to Plaintiffs and the Special Master." *Facebook, Inc. v. Onlineinc Inc.*, No. 3:19-cv-

8  07071-SI (N.D. Cal.) Dkt. 222 (Van, Keulen, M.J.) (holding any "lesser sanction would be

9  inappropriate under the circumstances"). Yet where, as here, the sanction does not amount to a

10  default judgment, the only question is whether the sanction bears "a reasonable relationship to the

11  subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d

12  923, 947 (9th Cir. 2001). Nor does it matter whether the requested sanction will, in Google's view,

13  make it more difficult for Google to oppose class certification. *Craftwood Lumber Co. v. Interline*

14  *Brands, Inc.,* 2013 WL 4598490, at *13 (N.D. Ill. Aug. 29, 2013) ("Craftwood does not dispute

15  that a preclusion order would leave Interline without a basis for opposing class certification, but

16  notes that this result is of Interline's own making. We agree. The sanction is harsh but warranted").

17       Google next suggests that "lesser remedies are available," implying that this Court should

18  at most preclude Google from relying on particular evidence. Opp. 23. If this Court chooses to

19  employ a preclusion sanction instead of taking facts as established, then this Court should preclude

20  Google from making any *arguments* about any of the incognito detection bits or the identifiability

21  and linkability of data that would have been captured by such bits. Plaintiffs should be permitted

22  to rely on the (limited) discovery they have into these bits, without Google being allowed to make

23  counterarguments. Preclusion otherwise would carry no teeth—as the defendant, Google would be

24  happy to argue that Plaintiffs failed to prove what the deleted and concealed evidence would show.

25       Google wrongly claims that this Court may only preclude it from "relying on arguments

26  _____

27  identity."); *id.* 7 (describing class member identification as a "dispositive class identification
problem" and an "insurmountable obstacle").

28  13

1   and evidence that it had not already disclosed by the time of the decision or the close of discovery."

2   Opp. 23. But Google *still* has not produced discovery concerning the ██████████████ and

3   ████████████████████ bits, and *still* has not produced any data for all ████ bits in the Special

4   Master process. In any event, "it is well-established that '[b]elated compliance with discovery

5   orders does not preclude the imposition of sanctions.'" *Sas v. Sawabeh Info. Servs.*, 2015 WL

6   12711646, at *7 (C.D. Cal. Feb. 6, 2015) (quoting *North American Watch Corp. v. Princess

7   Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986)). "As the Ninth Circuit has explained, the

8   '[l]ast-minute tender of documents does not cure the prejudice to opponents.'" *Sas*, 2015 WL

9   12711646, at *7 (quoting *Princess Erime Jewels*, 786 F.2d at 1451). Even if Google had eventually

10  complied with its obligations (it ***still*** has not), "it would be unjust to allow [Google's] egregious

11  conduct to escape sanction." *Id.* at *11. Sanctions are appropriate where, as here, a party's decision

12  to withhold material until the close of discovery (and after) deprives another of "a meaningful

13  opportunity" to "comprehend" complex discovery. *Apple v. Samsung Elecs.* 2012 WL 1595784,

14  at *3 (N.D. Cal. May 4, 2012). Here, the (extremely limited) discovery came far too late.

15      Google's conduct was "designed to achieve a tactical advantage"; such "obstruction should

16  not be permitted to achieve its objectives." *Conway v. Dunbar*, 121 F.R.D. 211, 214 (S.D.N.Y.

17  1988). "Where the discovery misconduct has deprived the opposing party of key evidence needed

18  to litigate a contested issue, an order prohibiting the disobedient party from contesting that issue—

19  or simply directing that the matter be taken as established—is also appropriate." *Shanghai Weiyi

20  Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *11 (S.D.N.Y. June 27, 2017).

21  Google's suggestion that preclusion is inappropriate where the subject "remains a contested issue

22  of fact" is wrong: Were that the standard, there would be no preclusion standard.[9] Opp. 24.

23  _____

24  [9] For support, Google cites *Natural Immunogenics Corp. v. Newport Trial Group.*, 2016 WL
    11520757, at *6 (C.D. Cal. June 16, 2016), which is inapposite because the plaintiff did not even
25  seek sanctions under Rule 37. And the court in *Kannan v. Apple Inc.*, 2020 WL 9048723, at *9
    (N.D. Cal. Sept. 21, 2020) declined to employ preclusion because there was only a "possibility"
26  that the party's deficient evidence collection efforts resulted in withholding evidence. Here, by
    contrast, Plaintiffs have established that Google hid and withheld particular evidence regarding its
27  tracking of Incognito traffic.

28                                          14

1    **Jury Instruction:** This Court should also instruct the jury that "Google concealed and

2    altered evidence regarding its ability to identify Incognito traffic." Mot. 22. Google argues that

3    this Court cannot order such a sanction because Google did not permanently delete or withhold *all*

4    relevant evidence. But Google's selective production does not absolve Google for the evidence it

5    deleted or withheld. *Kannan*, 2020 WL 9048723, at *10 (ordering jury instruction where party

6    searched some but not *all* locations he was required to search); *Nursing Home Pension Fund v.*

7    *Oracle Corp.*, 254 F.R.D. 559, 564 (N.D. Cal. 2008) (finding "adverse inferences in plaintiffs'

8    favor are warranted with regard to *some categories of evidence* that defendants concede was not

9    produced or preserved."). Google also incorrectly suggests that only this Court will decide whether

10   class members can be identified. Opp. 25. But that Google was knowingly logging and earmarking

11   incognito data, and then concealed such evidence throughout the course of discovery, bears on the

12   offensiveness of Google's conduct and is thus relevant to Plaintiffs' claims for invasion of privacy

13   and intrusion upon seclusion, as well as Plaintiffs' entitlement to punitive damages.

14   **Reimbursement of Special Master Fees:** Finally, Google is mistaken that Plaintiffs may

15   not seek reimbursement of Special Master fees. Rule 37(b)(2)(C) requires the offending party to

16   "pay the ***reasonable expenses***, ***including*** attorney's fees, caused by the failure." (emphasis added);

17   *see also Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1225 (9th Cir. 2018) (affirming sanctions

18   for costs associated with court-ordered deposition). Timely identification by Google of the

19   incognito detection bits would have significantly streamlined the Special Master process, including

20   by making it clear exactly which logs should be searched. Google's misconduct made the whole

21   process far more time consuming and expensive than it needed to be.

22   ## CONCLUSION

23   Plaintiffs request that the Court issue the sanctions described above and any other sanction

24   the Court deems appropriate. One purpose of sanctions is to "to serve as a general deterrent in both

25   the case at hand and other cases." *Sas*, 2015 WL 12711646, at *10. Absent meaningful sanctions,

26   Google and other parties would be incentivized to do exactly what Google has done here; namely,

27   lie and withhold evidence until (if) caught. That behavior cannot be encouraged.

28

15

Dated:  April 11, 2022                                    BOIES SCHILLER FLEXNER LLP


By */s/ Mark Mao*


Mark C. Mao (CA Bar No. 236165)
*mmao@bsfllp.com*
Beko Rebitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP
*44 Montgomery Street, 41st Floor*
*San Francisco, CA 94104*
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
*jlee@bsfllp.com*
Rossana Baeza (*pro hac vice*)
*rbaeza@bsfllp.com*
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Amanda Bonn (CA Bar No. 270891)
*abonn@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

William Christopher Carmody (*pro hac vice*)
*bcarmody@susmangodfrey.com*
Shawn J. Rabin (*pro hac vice*)
*srabin@susmangodfrey.com*
Steven Shepard (*pro hac vice*)
*sshepard@susmangodfrey.com*
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

16

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

17