# EXHIBIT 1

# Redacted Version of Document Sought to be Sealed

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S EMAIL ADDRESS
josefansorge@quinnemanuel.com

April 1, 2022

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

**VIA E-MAIL**

Special Master Douglas Brush
(douglas.brush@accelconsulting.llc)
Accel Consulting, LLC

Timothy Schmidt
(timothy.schmidt@accelconsulting.llc)
Accel Consulting, LLC

Mark Mao
(mmao@BSFLLP.com)
Boies Schiller Flexner LLP

Re:      *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (N.D. Cal.)

Dear Special Master Brush, Mr. Schmidt, Counsel:

Google is providing along with this letter additional information for the
█████████████████ and ██████████████████████ fields.

Below is the proto comment for the ██████████████████ field:

████████████████████████████████████████████████
███████████

The proto comment for the ████████████████████ field has been provided in
Google's March 5, 2022 letter, which we reproduce below:

████████████████████████████████████████████████
████████████████████████████████████████████

Respectfully,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Josef Ansorge

# EXHIBIT 2

# Redacted Version of Document Sought to be Sealed

| From: | owner-googleteam@lists.susmangodfrey.com on behalf of Josef Ansorge |
|---|---|
| To: | Mark C. Mao; Douglas Brush; Timothy Schmidt |
| Cc: | QE Brown; GOOGLETEAM@lists.susmangodfrey.com |
| Subject: | RE: Brown (20-3664) v. Google - Plaintiffs" Proposed Preservation Plan |
| Date: | Tuesday, March 15, 2022 12:56:41 PM |

<mark>EXTERNAL Email</mark>

Dear Mr. Mao,

Thank you for the productive meet and confer yesterday. Below please find our written proposal / suggested framework for preservation.

### 15-MAR-2022 Draft Google Framework for Preservation

Google proposes to preserve a daily sample of 1,000 Display Ads events associated with 1,000 different randomly selected UIDs scoped to activity in the United States based on the Country field:

1. Event_id (information used to identify events in log entries);

2. IP address;

3. User-agent;

4. HTTP header (including x-client-data header field);

5. URL; and

6. Date and time (to the extent that is not legible from Event_id).

Instead of categorically preserving a number of different log sources, Google proposes to construct a log source for preservation that only consists of the specific fields and data to be preserved. In addition, Google proposes preserving:

-  the ▮▮▮▮▮ dashboard data (based on ▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ boolean fields); and

- the Display Ads dashboard data (based on ▮▮▮▮▮▮▮▮▮▮ boolean field).

We are optimistic that the parties can find agreement and look forward to discussing class-wide preservation with you in more detail during today's meet and confer.

Best,

**Josef Ansorge**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8267 Direct
202.538.8000 Main Office Number
202.538.8100 FAX

josefansorge@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Mark C. Mao <mmao@BSFLLP.com>
**Sent:** Wednesday, March 9, 2022 5:06 PM
**To:** Douglas Brush <douglas.brush@accelconsulting.llc>; Timothy Schmidt <timothy.schmidt@accelconsulting.llc>
**Cc:** QE Brown <qebrown@quinnemanuel.com>; GOOGLETEAM@lists.susmangodfrey.com
**Subject:** Brown (20-3664) v. Google - Plaintiffs' Proposed Preservation Plan

**[EXTERNAL EMAIL from mmao@bsfllp.com]**

---

Dear Special Master Brush,

As you have requested, Plaintiffs propose the following to try to move the ball forward on a preservation plan, consistent with the Magistrate Judge's recent orders.

<u>Google to Preserve:</u>

Plaintiffs propose that Google extend its default retention period for three discrete categories of logs, as well as any encryption and/or joinability keys associated with any identifiers in such logs, as follows:

1.  <u>UMA Raw Logs:</u> Google should preserve raw UMA logs through the duration of this case. ███████████████████████████████████████████████ ███████████████████████████████████████ *See* GOOG-CABR-04801490.

2.  ███ ██ Logs with the ██████████████ Bit: Google should preserve all of these logs for at least 1 year longer than the default retention period. Please note that Google considered retaining ████ logs—which include substantially greater data and are costlier to preserve than ████ logs—for up to one year for its own, internal business purposes. *See* GOOG-BRWN-00845467.

3.  <u>Select Additional Logs:</u> Google should preserve the following logs, which appear to contain either (a) the X-Client data header or (b) PPID-mapped biscotti and/or Analytics User IDs, for at least 1 year longer than the default retention period: ████████████████ ; ███



For sources Nos. 2-3, the proposed retention periods may be sufficient, or would provide sufficient time for the parties to agree on a more targeted preservation plan if necessary. Plaintiffs remain willing to consider any proposals by Google to narrow what is preserved to less than the full content of these logs, but Plaintiffs presently do not have sufficient information to propose such a subset without further input from Google and believe the full logs should be preserved at least long enough for the parties to confer about a more targeted preservation plan. For example, Plaintiffs may be willing to meet and confer to agree on the preservation of a smaller subset of the data, specifically – 1) identifiers, 2) IP address, 3) user-agent, 4) HTTP header, 5) URL, 6) date and time, and 7) any "incognito"-titled field (e.g., ████████████████) or field containing Incognito-detection (e.g., ████████████ fields).

<u>Google to Disclose:</u>

Plaintiffs also propose that Google disclose the names of all logs in the following categories, as well as their default retention periods. Once such a disclosure is made, Plaintiffs can consider what preservation, if any, may be necessary.

1. All source logs from which the ████████████ bit in the ██████ logs described above may be inferred.

2. All logs containing any parameter or field with "Incognito" in the name, and the full name/description of the field with "Incognito" in the name for each such log. (For instance, ██████ logs that contain an ████████████████ bit would be included here.)

3. All logs containing PPID-mapped biscotti and/or Analytics User IDs. Google has indicated that it does not have an "existing tool" that "provides a listing of populated fields that indicate whether a given log contains PPID or Analytics User ID."

For these three categories of logs and sources that Plaintiffs are requesting that Google disclose, Plaintiffs may again be willing to meet and confer to agree on the preservation of a smaller subset of the data, specifically – 1) identifiers, 2) IP address, 3) user-agent, 4) HTTP header, 5) URL, 6) date and time, and 7) any "incognito"-titled field (e.g., ████████████████) or field containing Incognito-detection (e.g., ████████████ fields).  Plaintiffs respectfully submit that Google should use whatever means it has available to attempt in good faith to identify such logs; for example, by (1) asking persons likely to have such knowledge, (2) running test searches for such identifiers across a broader set of logs to identify those containing such identifiers, (3) using any tools that would identify such logs (even if such a tool would not "provide a listing of populated fields" as Google's carefully-worded statement above suggests), or (4) any other methods available to Google.

Plaintiffs and their experts remain available to discuss these issues to try to arrive at a sensible

preservation framework.

Respectfully,

**Mark C. Mao**
(He/him/his)
Partner

BOIES SCHILLER FLEXNER LLP

44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(t) 415 293 6858
(c) 415 999 9695
mmao@bsfllp.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

This e-mail contains communication that may constitute attorney/client privileged information and/or attorney work product. If you received this message in error, please notify the sender and delete it immediately.

To unsubscribe from the GOOGLETEAM list, click here

# EXHIBIT 3

# Unredacted Version of Document Sought to be Sealed

```
 1
 2                  UNITED STATES DISTRICT COURT
 3                NORTHERN DISTRICT OF CALIFORNIA
 4                 CASE NO.: 4:20-03664-YGR-AVK
 5
 6  CHASOM BROWN, MARIA NGUYEN and
 7  WILLIAM BYATT, individually and on
 8  Behalf of all other similarly situated,
 9              Plaintiffs,
10  v.
11  GOOGLE, LLC and ALPHABET, INC.,
12              Defendants.
13  _____/
14
15
16                       HEARING
17
18
19   HEARING BEFORE:      Special Master Douglas Brush
20      DATE TAKEN:       Wednesday, March 23rd, 2022
21          TIME:         Unknown
22          TAKEN:        Remotely via Zoom
23
24
25  TRANSCRIBED BY:  KIMBERLY H. NOLAN
```

Page 2

```
 1                A P P E A R A N C E S
 2
 3  For the Plaintiffs:
 4  MARK C. MAO, ESQUIRE
 5  Boies, Schiller & Flexner, LLP
 6  44 Montgomery Street, 41st Floor
 7  San Francisco, California 94104
 8  415.293.6800
 9
10  For Defendant Google, LLC:
11  ANDREW H. SCHAPIRO, ESQUIRE
12  Quinn, Emanuel, Urquhart & Sullivan, LLP
13  191 North Wacker Drive, Suite 2700
14  Chicago, Illinois 60606
15  312.705.7403
16
17  For Defendant Google, LLC:
18  JOSEF ANSORGE, ESQUIRE
19  Quinn, Emanuel, Urquhart & Sullivan, LLP
20  1300 L Street Northwest, Suite 900
21  Washington, D.C. 20005
22  202.538.8000
23
24  Also Present:
25  Tracy Gao, Law Clerk at Quinn, Emanuel, Urquhart & Sullivan
```

Page 3

```
 1                P R O C E E D I N G S
 2            MARCH 23RD, 2022; VIA ZOOM
 3        SPECIAL MASTER BRUSH:   Okay.  Do we have
 4  everybody on -- somebody's just coming in now.  I'll hold my
 5  thoughts.
 6        MR. SCHAPIRO:  That should be it for us.  That's
 7  Viola Trebicka joining.
 8        SPECIAL MASTER BRUSH:  Okay.  Well, great.  Thanks,
 9  everybody, for coming together on this as we wrap up some of
10  the -- well, really the two open discovery issues that are
11  before me on Brown v. Google.
12        I just wanted to kinda set the stage of where we're
13  going with this today, because, really, what we have to do
14  is finish things, and, you know, there's really the two
15  buckets, let's say, of things that are to be finished, and
16  one being the preservation plan and the searches, and that's
17  it.
18        And, so, with that said, I'm a little bit
19  disappointed in the parties' inability to come up with
20  something more cohesive as a preservation plan.
21        Mr. Schmidt and I will kind of take what was given
22  to us and try to come up with something -- a semblance of
23  something that could be court-worthy, and we'll have to --
24  just have to put the issue to rest.
25        This is really, you know, not gonna be today a
```

Page 4

```
 1  forum for arguments on that.  You know, those are long past
 2  due, and I really, quite frankly, expected something to be a
 3  little bit more fully baked than what was presented, so,
 4  like I said, a little disappointed with everybody on how
 5  that was presented.
 6        But we'll muddle through and try to get something
 7  turned around so it can go to the Court, because that's
 8  something that, quite frankly, shouldn't take as much work
 9  that it's gonna need from Mr. Schmidt and myself.
10        But it needs to get done, so we'll take what was
11  provided to us and kind of put together something that -- to
12  send back to you guys that can be filed with the Court.
13        Moving on to the searches, the searches were
14  provided, and I just wanted to go through that and see how
15  we can finalize these.
16        Basically, what we want to be able to do is put
17  together a final round of searches across whatever
18  respective data sources that need to be searched, produce
19  results, and that's it.
20        So, really what we wanna be able to do is make sure
21  the Brown plaintiffs can provide the right identifiers for
22  the right time periods across the correct -- the necessary
23  data sources and then basically put a search on the Google
24  end and produce those results.
25        So, with that, why don't -- I guess we can work
```

Page 5

```
 1  from the letters that were exchanged yesterday.  Well, let
 2  me first ask this.
 3        From the plaintiffs' side, does that -- do you have
 4  what you need at this point to formulate the searches to
 5  myself that we can then QC check and send to Google?
 6        MR. MAO:     Yeah.  We -- I think, Special Master
 7  Brush, we already provided that to you on Monday, and the
 8  identifiers that we selected were the same identifiers which
 9  we had from 2, which Google should have.
10        The one outstanding issue which is in front of you
11  both for that and also for the preservation plan is really
12  the ███████████ bit and where that sits in the
13  fields.  I'm sure you can appreciate that.
14        That's actually a field in the GWIS entry proto,
15  and that's gonna be relevant for the searches and also for
16  your preservation plan, because, as you can probably
17  appreciate, that's sitting at the front end of the proto
18  logs, meaning that it's a field that could be in -- you
19  know, assembled for any customized logs, whether going
20  forward or going back historically.
21        I guess we can ultimately not resolve that issue
22  here and save that issue for the hearing in front of the
23  trial court and the magistrate judge in April, but I do
24  think that it's gonna be an important thing to be briefed
25  for both the preservation plan and just for something to be
```

**Page 6**

1  fleshed out in the searches, because you can probably
2  appreciate the surprise on our side when that showed up in
3  the ███████ and also the ███████ logs for the first
4  time earlier this month (blip) showing up.  So (blip) --
5       SPECIAL MASTER BRUSH:  Showing up as part of the
6  discovery process?
7       MR. MAO:     I'm sorry?
8       SPECIAL MASTER BRUSH:  Showing up as part of the
9  discovery process?
10      MR. MAO:     Showing up as part of your process,
11  Special Master.
12      SPECIAL MASTER BRUSH:  Which is part of the
13  discovery process, but what I'm saying is --
14      MR. MAO:     Right, right, right.  Sorry.  I was
15  unsure if you were differentiating the two.
16      SPECIAL MASTER BRUSH:  No, no, no.  But the
17  umbrella term.
18      MR. MAO:     (Inaudible) lawyer that way.
19      SPECIAL MASTER BRUSH:  What I'm saying is like I
20  think -- therefore, the discovery process before me has
21  served a purpose, then, if you're finding out things.
22  That's what discovery does.
23      So, I wouldn't be terribly surprised that you found
24  out things during discovery, because that's its purpose.
25      So, but that being said, you know, if this is a

**Page 7**

1  field that comes as part of a responsive query, so be it,
2  you know.
3       I guess what I'm asking is how -- you know, again,
4  if we're going off the specific identifiers to search the
5  logs with other characteristics, you know, it's something
6  that is either produced as part of results or not.
7       MR. MAO:     Yeah.  So, let me maybe just
8  simplify that a little bit.  Right?  If you recall, back in
9  November they produced -- Google produced a number of
10  schema.
11      There's some questions regarding how those schema
12  were produced and then was -- you know, there was some -- I
13  guess some -- I'm trying to avoid argument.
14      There was some perception by Google as to what they
15  believe they produced and perception of the plaintiffs as to
16  what they produced by December, which is, you know, a set of
17  schema.
18      That set of schema does not include that field,
19  although the production of that schema now in February and
20  March show that field, and, of course, that ultimately is
21  because that is a GWIS entry proto buffer field which sits
22  at the very front.  It's customizable.  It is, you know,
23  movable and mergeable with other logs.
24      And I guess the issue for me right now, setting
25  aside the searches, is that that's clearly part of the

**Page 8**

1  preservation proposal and issues to be addressed, and you
2  can see that that's actually a glaring -- a glaring issue
3  which Google does not wanna address as part of this.
4       And let me point out, you should look at the
5  proposal -- we've been going back and forth last night -- in
6  front of you.  That's clearly not there, and here's the
7  reason why.  If you go back and --
8       SPECIAL MASTER BRUSH:  Are you saying that's the
9  preservation or the --
10      MR. ANSORGE:   The preservation --
11      SPECIAL MASTER BRUSH:  No.  We're not talking --
12  we're only talking about searches.  Preservation's done.
13  That was not -- we're taking that -- we're not talking about
14  that right now.  We're talking strictly on searches.
15      MR. MAO:     Okay.
16      SPECIAL MASTER BRUSH:  There is no discussion about
17  preservation today.
18      MR. MAO:     Yeah.  I guess the question, then,
19  is, you know, whether or not that's, you know, (blip)
20  search.
21      SPECIAL MASTER BRUSH:  Just going through the
22  process -- I mean, this is it, you know, what are gonna be
23  the search parameters that you wanna supply us that we will
24  search this final round of searches is what I'm getting at.
25  Like that's where we're at.  We need to compile that and

**Page 9**

1  press search and be done with this.
2       MR. MAO:     Okay.  Understood, Special Master.
3       SPECIAL MASTER BRUSH:  Okay.  I'm looking at the
4  letter now.  Is that something you wanna clearly refine a
5  little bit?
6       MR. MAO:     Yeah.  We can do that.  I think part
7  of the problem, as you can appreciate, Special Master, is
8  that there were searches that were supposed to come back
9  from iterative search 2 -- right? --
10      SPECIAL MASTER BRUSH:  Uh-huh.
11      MR. MAO:     -- but you wanted to know where we
12  were at with this, which is why we gave you that.
13      SPECIAL MASTER BRUSH:  But that's -- I think we're
14  framing up around the same thing, is what do you need.  Are
15  we waiting for any further production? Is there something --
16      MR. MAO:     Yeah.  So …
17      SPECIAL MASTER BRUSH:  And if that's the case, I
18  wanna take it to Google and find out -- you know what I'm
19  saying?  I just wanna get the order of operations down.
20      MR. MAO:     Yeah.  It -- I would like to get the
21  remaining searches done for search 2.  For example,
22  remember, we don't even have the histograms and the user
23  actions from the UMA searches for search 2 yet.  And also,
24  for the test parameters that you had ordered, we also
25  haven't gotten a number of the results back yet.

**Page 10**

1    I'm hoping that with the selection -- you know,
2  while we reserve our objections, that the selection of the
3  publishers last night -- and I think that you were copied on
4  -- we can move past those and at least just get the -- you
5  know, the schema, the fields and also the values if they are
6  expressed so that we can move on with them.
7    SPECIAL MASTER BRUSH:  Like I said, on the Google
8  side, are you tracking what Mr. Mao's saying as far as what
9  open productions are out there?  Is there anything that you
10  wanna add color to or specifically a timeline to?
11    MR. ANSORGE:   We're tracking -- what we wanted to
12  do is provide an update on UMA, which Mr. Mao was just
13  referencing.
14    SPECIAL MASTER BRUSH:  Uh-huh.
15    MR. ANSORGE:   There I can tell you we have two
16  engineers who are on the verge of nervous breakdowns, who
17  worked through all weekend, who have been trying to
18  reconstitute the historic data for the searches for these
19  specific pulls, and so far those searches have always timed
20  out.
21    We can provide you more technical detail and color
22  after another call with them today, if that's helpful to
23  you, Special Master Brush.
24    What I understand from their description is that
25  these aren't queries that are usually run.  They're such a

**Page 11**

1  large source that they're having problems with the
2  information being past.
3    I understand there's some confusion with regard to
4  what Mr. Mao was stating earlier with the searches, the
5  Incognito fields in the preservation proposal.  We're happy
6  to address any of those at your convenience.
7    But what we're due for the searches is we're
8  closing out the searches that are in the pipeline.  We have
9  very helpful -- and we appreciate Mr. Mao's forthright
10  approach here -- we received their -- the selection for the
11  publishers that are supposed to receive notice.
12    Our hope was that we would be able to just provide
13  notice once.  Unfortunately, we still don't have the notice
14  from -- or the selection from Calhoun.  Hopefully, if we can
15  get that today we can, you know, have one process whereby we
16  notice all the different publishers.
17    We're not sure what other searches Mr. Mao proposed
18  or sent yesterday.  I believe he's followed the process
19  properly as in sending it to the special master first.  So,
20  I'm not sure how they slot into what we currently have going
21  on, but we are awaiting them with rapt attention.
22    SPECIAL MASTER BRUSH:  Gotcha.  Yeah.  No.  And
23  that's kinda why I firewalled it a little bit, just so we
24  can make sure one process doesn't interfere with the other.
25  So, it sounds like it's a work in progress with a TBD date

**Page 12**

1  based on some other options that have to be done today
2  because there was -- it was either timing or failing out
3  over the --
4    MR. ANSORGE:  Yes.
5    SPECIAL MASTER BRUSH:  Okay.
6    MR. ANSORGE:  Yes.  On the UMA search.  I mean,
7  you can provide more data.  We've got a -- we're gonna have
8  a call with them later where I can give you the different
9  technical details, but my understanding is that -- we've
10  been receiving pings all through the weekend -- they've been
11  trying to troubleshoot in a variety of different ways to
12  pull that specific -- the historic dates that were required
13  and to reconstruct the searches that were done before.
14    I'm hoping that it's not going to be required
15  because we have so much overlap anyway now between the most
16  recent ████████ production and the previous UMA searches that
17  the main concern Plaintiffs had about overlaps should be
18  addressed with what we've already done and the data that
19  we're about to produce.
20    With regard to the publisher notice, we'll await
21  your input.  We would really appreciate it if we could also
22  have them from Calhoun and then do it in one fell swoop, but
23  if it's --
24    SPECIAL MASTER BRUSH:  No, no.  I'm fine with that.
25    MR. ANSORGE:  -- it's that frozen in time, okay,

**Page 13**

1  great.
2    SPECIAL MASTER BRUSH:  Yeah, yeah.  Because -- no,
3  that makes sense.
4    MR. ANSORGE:  Our TBD -- our goal there is seven
5  to eight days for the publisher notice, and that's when we
6  should be done -- well done with everything that's in the
7  pipeline, everything that's been produced.
8    The UMA data should be in well before then, as well
9  as anything else that's outstanding.
10    SPECIAL MASTER BRUSH:  Okay.  Mr. Mao?
11    MR. MAO:      Yeah.  Just for the historical
12  searches, recall, Special Master Brush, we had been asking
13  for those since November in the process, and we're not
14  asking for a lot of dates here.  I would like for that
15  process to be (blip).
16    I don't see -- in terms of them not being produced
17  for search 2, that was not any shortfall or any failing on
18  Plaintiffs' side.  You know, in search 1 it produced the
19  histograms, they produced the user actions, and those are
20  simply omitted in search 2 using a different (blip).
21    MS. ANSORGE:  Yes.  And we're rerunning the
22  searches that can be run quickly and out through the window.
23  There's also duplicative dates.
24    What I was providing an update on is trying to
25  reconstruct the historic searches, and I think that is

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/23/2022**                                        **Pages 14..17**

1  timing out and that's not working.

2      And, Mr. Mao, I apologize.  It's not that this is

3  something that we are doing to spite you.  Believe me, I

4  would love for this to be over and just hand it to you.

5  There's actual technical limitations.

6      The engineer tells me it's timing out and they have

7  been working on it all weekend in light of all their other

8  tasks that they're supposed to be doing.  That's the truth.

9  That's what I'm conveying to you.

10     I think it's not a problem, and it shouldn't be

11  one, because there's already overlap so many times over, and

12  I'm hoping we can lay it to rest.

13     I would also -- I'd just -- if there are any

14  additional searches that the special master team approves,

15  we would respectfully request that they don't require more

16  publisher notice, that that's not something we would have to

17  do again.

18     SPECIAL MASTER BRUSH:  Okay.  So -- go ahead, Mr.

19  Mao.

20     MR. MAO:      No.  Just from the publisher notice

21  thing, we have an interim solution, you know, with both

22  sides reserving their rights on that (blip).

23     In terms of what Mr. Ansorge is saying, that there

24  be no more publisher notice, I'm just not sure that that's

25  an argument we need to get into now, because I'm not even

1  sure what publishers (inaudible) would require notice.  You

2  know, we're talking about a hypothetical now (blip) and I'm

3  not sure what that means.

4      I'm not sure if that (blip) means that we're gonna

5  (blip) on the production or -- I mean, you see which

6  publisher (blip).

7      MR. ANSORGE:  I lost part of the sound there.

8      MR. MAO:   Yeah.  I mean --

9      SPECIAL MASTER BRUSH:  Yeah, Mr. Mao.  Can you

10  please -- please, just restate the question.

11     MR. MAO:      Yeah.  My question is what is -- Mr.

12  Ansorge, I'm not sure what you mean by "no more additional

13  publisher notice."  We (inaudible) --

14     MR. ANSORGE:   (Interposing) Yeah.  I'm happy to

15  address that, Mr. Mao.

16     SPECIAL MASTER BRUSH:  Yeah.  I think that's a

17  clarification -- I'll let Mr. Ansorge clarify that, because

18  I think I'm tracking what he's saying and there might just

19  be a disconnect there.

20     MR. ANSORGE:   So, the list that we provided you,

21  Mr. Mao, you'll see that there is I think 400-plus different

22  publishers.  Some of them, because we've broken it out by

23  how many events they correlate to, is one publisher for one

24  event.  We believe that it's unduly burdensome and not

25  proportional to the needs of the case, where this is all p-

1  log data, to have individual bilateral communications with

2  each publisher for a single individual event.

3      However, we gave Plaintiffs the option to choose

4  different ones if they want to, if there's a specific one

5  that they're interested in.

6      So, our fervent hope is that the publisher notice

7  can be done in one fell swoop, these are the ones that are

8  going to be noticed for Brown, these are the ones that are

9  going to be noticed for Calhoun, if we can have one process

10  by which we do that and then we are closed out and there's

11  no more publisher notice that's required.

12     So, what we're saying is for the next round of

13  searches we would hope that we're not again selecting

14  sources that require publisher notice so that we don't have

15  to go through that process again so that we can in one fell

16  swoop deal with it.  That is our request.

17     So, the next round of searches, if we already know

18  what they are and the special master team approves them and

19  they do require publisher notice, then I would prefer for us

20  to sort that out today before we notice the 30-something

21  publishers that you have selected and then have to notice

22  other ones in a few days afterwards.

23     MR. MAO:      Yeah.  I mean, you see the --

24  Special Master, I hope you see the catch-22 here for the

25  Brown plaintiffs in the sense that -- well, let me -- Mr.

1  Ansorge, before you -- just let me finish my argument.

2      Google is the one with the storage of the data, and I'm

3  not trying to create additional notice requirements for you.

4  We're simply saying these are gonna be our searches and

5  we're entitled to the data we're entitled to.

6      There's also a protective order in place in terms

7  of your concerns about the publisher notice.  We already

8  went along with your interim solution and selected, you

9  know, with reservation of rights, so that this can move

10  forward.

11     I'm not gonna carte blanche agree to something

12  which I don't know what you're actually asking me to agree

13  to before we've actually gone into it.

14     I mean, Mr. Ansorge, what you propose is

15  (inaudible) --

16     SPECIAL MASTER BRUSH:  (Interposing) Well, let me

17  pause -- let me pause you right there, because I just wanna

18  make sure we're clearly understanding this, we're not --

19  okay.

20     So, I believe what, Mr. Mao, you're saying is

21  because you don't have the search results that are being

22  held back at the current time because of publisher

23  notification, you don't have all the information that you

24  need to craft the final searches that may also require

25  publisher notification.  Is that what you're saying?

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/23/2022**                                    Pages 18..21

Page 18

1    MR. MAO:      No.  I don't -- no.  I think what
2    Mr. Ansorge is referring to is that once we submit the final
3    searches he's gonna hold back whatever -- whatever is deemed
4    to have required publisher notice unless we address that
5    today, Mr. Brush, and what I'm saying is how do I do that
6    when I don't know what's gonna be coming back.
7         SPECIAL MASTER BRUSH:  Yeah.  No.  I -- it's --
8    it's --
9         MR. MAO:      We're not talking -- see, we're not
10   talking about the historical corpus right now, we're talking
11   about the -- sorry -- we're not talking about the historical
12   corpus -- sorry -- we're not talking about the results that
13   they are preserving, we're talking about these final
14   searches that you want done.  Right?
15        Like Mr. Ansorge's asking me to say "Yes, if
16   there's any part of that that requires additional publisher
17   notice -- " okay? -- they're not gonna produce that and that
18   Mr. Mao and Mr. Frawley will have forever waived their
19   rights here today on that, and I'm not (inaudible) --
20        SPECIAL MASTER BRUSH:  (Interposing) Well, listen.
21   I mean, I've already ruled on the fact that if there is
22   responsive data that's part of the publisher data corpus and
23   they need to be notified, they will, it's just a matter of
24   timing.  I think I've been pretty clear that that's a --
25   that's something that will happen.

Page 19

1         What we're trying to find out is the most efficient
2    way for the defendants to do it so they can focus energy and
3    time and also getting you the results, because there are
4    limits in resources.  And that's the way I'm looking at it.
5         Mr. Ansorge, is that where -- are you understanding
6    that as well, that if there is responsive data that needs
7    third-party publisher notification that no matter what it's
8    gonna be done, it's just a matter of timing?
9         MR. ANSORGE:  So, I think we might have a slight
10   disconnect on what is responsive data and what is not.  Our
11   understanding from the search for the preserved data was
12   that we were going to identify what publishers it would not
13   be unduly burdensome to notice, because providing notice to
14   hundreds of publishers we believe is unduly burdensome and
15   not proportional to the needs of the case, especially where
16   this is all p-log data, which is not in the class, not part
17   of the actual case, so we're engaged in these individual
18   bilateral communications with all these different publishers
19   for data that might be relevant in a different case.  It's
20   actually not relevant in this case.
21        Our hope was that we would select -- and I
22   understand Plaintiffs are not waiving any of their rights,
23   but they select specific publishers that make up the bulk of
24   the corpus of the events, and we had frontloaded that
25   exercise for them by saying "There's these -- if you pick

Page 20

1    these 20, you get more than 50 percent, there's something
2    like 60,000 different events.  You pick these ten, you'll
3    get more than 80 percent in different formats for a
4    different set of searches."
5         If we do that, we have one moment where there's
6    notice, and we would prefer for that moment to be later in
7    the day if there's more that should be noticed, or if the
8    ruling is that actually all of them need to be noticed and
9    we do have to provide notice to 400 or 500, then we should
10   do that in one fell swoop.
11        If the additional searches that are currently being
12   discussed entail further publisher notice, our request is
13   simply that we would roll those into the publisher notice
14   that's currently going forward.
15        It wasn't intended to raise the temperature or to
16   move into argument in any way, Mr. Mao.
17        SPECIAL MASTER BRUSH:  No, no.  No.  Okay.  I take
18   it there's an important distinction there.  We're talking
19   about the -- you know, and I apologize if I (inaudible) --
20   we're talking about two different buckets of data.
21        You know, we have the data that was initially
22   preserved.  You know, we call that the preserved, not
23   produced historical data, which mixes a lot of the
24   terminology we're using, but it's the data that was
25   initially preserved but not produced.

Page 21

1         Is that the data set we're talking about?
2         MR. ANSORGE:  It's one of the data sets we're
3    talking about.
4         SPECIAL MASTER BRUSH:  One, right.  And then --
5         MR. ANSORGE:  It's one.  So -- yeah.
6         SPECIAL MASTER BRUSH:  And, so, for that, one of
7    the things I suggested was running searches along that and
8    seeing what was responsive to -- what was responsive to the
9    searches that might have third-party publisher notification.
10   Was that something that either could be done or does that
11   make sense in general terms?
12        MR. ANSORGE:  Yeah.  As something that could be
13   done that does make sense.  I believe we had a more detailed
14   discussion about it in the Calhoun case where we were saying
15   if we want to follow the practice that has been implemented
16   in the special master process, then we're running a specific
17   ID over a specific source for a specific period, and the
18   returns that are then, you know, responsive, we then
19   determine what is required for the publisher notice.
20        Here, they were going to receive even more where
21   instead of having to make that cut, we have already produced
22   AdMob and AdSense publisher data, which it's something like
23   400 different publishers right up in the first one, even
24   though neither of those products are part of the categories
25   of the actual services at issue in the class definition.

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/23/2022**                      Pages 22..25

**Page 22**

1   We now are discussing the tail end of logs that
2   require AdManager publisher consent, and for those we've
3   already previously produced logs that require the consent,
4   in January, so there should be clarity in terms of the field
5   structure.
6        We had reached this compromise proposal where we
7   ran IDs, stripped out the values so that Plaintiffs would
8   have the different field structure or kind of schema
9   approximation for certain tests to count IDs.
10       We're now simply talking about how to close out the
11  process most efficiently.  And we're fine with providing
12  this large bulk of preserved data.  Our main concern about
13  the burden relates to the burden in proportion of having
14  individual conversations with hundreds of different
15  publishers.
16       SPECIAL MASTER BRUSH:  No.  I get that.
17       MR. ANSORGE:  The less sophisticated ones have --
18  might not have in-house counsel, might not be familiar with
19  the data flow at all.  We'll have to in different ways
20  explain it.
21       It ends up being a very heavy lift for data that by
22  Plaintiffs' definition is not at issue in this case.
23       MR. MAO:     So, we -- well, we disagree with
24  that, but I'm trying to avoid argument here today, Mr.
25  Brush.

**Page 23**

1        SPECIAL MASTER BRUSH:  Oh, sure.  I'm just trying
2   to (inaudible) that we have two buckets -- that we have kind
3   of two -- they'll give us two buckets or tranches of data.
4        We have the historical -- or the preserved data
5   that has been preserved but not searched.  I would prefer
6   that we find some strategy for this to produce responsive
7   data to search criteria that we have.
8        Now, you've already gotten a good amount of that
9   that doesn't need the third-party consent, so there's been a
10  substantial production of that.
11       For the stuff that's left over, I think we do need
12  to find a way that needs to make it more in scope and in
13  line with the case so it's not a nowhere production, and
14  that's where I'm trying to apply some methodology that we've
15  used in the past in doing a terminology search.
16       Because essentially there is data there that we
17  don't even know is responsive, and it doesn't make sense for
18  Google to have to sit -- go out there and go to do all these
19  publishers who basically don't have data that falls within
20  the responsive scope.  Now, there's that.
21       Now we have all the other data that's in production
22  systems, and production systems being, you know, what's in
23  the Google day-to-day environment, and that goes for stuff
24  that's mirror-term searches, just stuff that's historical
25  logs that are sitting on Google servers.  That stuff, you

**Page 24**

1   know, we've been searching in iterations and doing different
2   searches.
3        As we finalize those searches and we're looking --
4   you know, I think we've talked about -- I'm just gonna use
5   the terminology (inaudible) -- but like these flume searches
6   across a lot of these compressed sequel databases.
7        I would anticipate -- and, Mr. Ansorge, you can
8   tell me -- that there would be a similar problem as we get
9   into this, that there could be publisher data in those final
10  searches that then would require notification.
11       MR. ANSORGE:  So, there's a few logs where that
12  would be the case.  I think it -- to respond to your first
13  question on how to close this out, I think this is what we
14  would propose for the bucket where this is data that was
15  part of the second set of iterative searches.
16       Plaintiffs have I believe selected more than ten --
17  something like 14 -- different publishers.  That provides
18  them the vast bulk of -- 80, 90 percent of all the different
19  event records of those specific searches, and it ends up
20  being a targeted set of notice requirements, and we would
21  propose that we follow that path where Plaintiffs have
22  selected specific searches.
23       We understand they're not waiving their rights, but
24  just in the interest of proceeding and managing to close it
25  out for the preserved data, historically preserved data.

**Page 25**

1        I wouldn't want to be too aggressive, but my
2   opening position, Special Master, would be that, well, none
3   of this is relevant because it's all p-log data, and that's
4   not the data that we've been -- has been subject to targeted
5   searches.
6        However, putting all that aside and having no
7   argument, we've already produced AdMob, AdSense data.  We
8   would be prepared to, in the interest of closing this
9   process out as quickly as possible, not forgoing the
10  targeted searches, because I think that that would be more
11  time-consuming at this stage, and instead focusing on these
12  20 publishers and providing them notice.
13       This will give Plaintiffs, in addition to all the
14  data they already have, another surfeit of information.
15       And I think most important for the historic data
16  discussion is this is data that would start from June 2020
17  in different forms encapsulated daily, and that is provided.
18       So, it covers a lot of the concerns and questions
19  about historic data, and I hope that will obviate the need
20  for at least a large part of further searches.
21       MR. MAO:       That was a lot.  Special Master
22  Brush, I (inaudible).
23       SPECIAL MASTER BRUSH:  (Interposing) No.  I'm
24  unpacking.  I'm just -- yeah.
25       MR. MAO:       I think the main thing here is we,

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
Hearing on 03/23/2022                                    Pages 26..29

Page 26

1  too, want to be finished with the process.  We just want our
2  data so that there's no gas in the hole from them.
3       SPECIAL MASTER BRUSH:  No.  And it's -- look, we
4  wouldn't be in this process if it was easy.  I mean, there's
5  complexities to this that we're working through and I
6  believe both parties are doing in good faith.
7       I mean, to me it keeps falling back that if there's
8  responsive data based on the search criteria -- or the
9  search process in the November 12th order, and the way that
10 we're doing it, it needs to be searched -- well, the
11 identified data sources, you know, need to be searched with
12 the criteria process in the November 12th order, and if it's
13 responsive, it needs to be produced.
14      I mean, that's just the logic I'm trying to follow
15 here in trying to apply this to this problem.  Then we have
16 the issue with the third-party notifications.
17      And, really, that all falls more -- I mean -- well,
18 I mean, it really kinda falls across both.  I mean, this is
19 why we have this process.
20      But I understand we're also -- I do appreciate, you
21 know, Google's position of trying to be efficient in the
22 notification process, and I do understand there's resource
23 constraints on that.  I'm just trying to figure out where
24 the gap -- you know, where the potential gap is here.
25      If we go forward with what Google's proposing,

Page 27

1  without waiving any rights, to get some data into
2  Plaintiffs' hands, might be the best way to go forward just
3  so we get something going.
4       But I appreciate the concerns from Plaintiffs and
5  would -- you know, if there is a concern that we can
6  distinctly say something's not right or missing or, you
7  know, we need you further, then by all means, we would have
8  to readdress that.
9       But we need to kinda get this going forward in some
10 manner, and --
11      MR. ANSORGE:  So, a potential solution, if I may,
12 following up on that opening, Mr. Brush, then would be we
13 provide notice to all the publishers that are entailed in
14 the second round of searches.
15      SPECIAL MASTER BRUSH:  Yeah.
16      MR. ANSORGE:  By my count, that would be 81.  Some
17 of those, there's just individual single events.
18      SPECIAL MASTER BRUSH:  Sure.
19      MR. ANSORGE:  However, I would then respectfully
20 request that we don't provide any notice and do not provide
21 any data from that preserved corpus of p-log data, which
22 entails many different -- hundreds of different publishers,
23 and we focus -- we follow, you know, this line stringently,
24 that if there's something -- a search that was conducted
25 under the November 12th process, we'll provide the notice

Page 28

1  and that's -- you know, some of the -- I'm looking at the
2  second-round searches.
3       Some individual ones -- Glassdoor, Inc. -- is just
4  a single event, so we would have to speak to, you know,
5  counsel at Glassdoor about one plaintiff visiting one
6  website associated with Glassdoor one time, but we'd be
7  willing to do that to close out the process, and that would
8  then be noticed for 81 different publishers for the second
9  round of searches.
10      MR. MAO:    So, Mr. Brush, for the historical
11 corpus, what the clients really want -- sorry -- what the
12 plaintiffs really want are their IDs.  That's one thing.
13 And these other things --
14      SPECIAL MASTER BRUSH:  Mr. Mao, let -- sorry.
15 Let's clarify.  When you say "historical," which data source
16 -- I mean, which -- are you talking about the --
17      MR. MAO:    The preserved corpus, the preserved
18 corpus.
19      SPECIAL MASTER BRUSH:  Okay.  The preserved, not-
20 searched, partially-produced data set.
21      MR. MAO:    Yeah.  I mean, I think -- I think a
22 very small amount of that was produced.  What you're looking
23 for --
24      SPECIAL MASTER BRUSH:  Well, and that's the
25 question -- yeah, yeah.  You led me right into where I was

Page 29

1  going with it.
2       Do we know if -- and maybe we did this in Calhoun.
3  Is there a way to get a percentage, to say, well, look --
4  you know, whether in gigabytes or records or some way to
5  determine, you know, what was not produced because of the
6  need for third-party consent, to say, well, heck, it's only
7  5 percent, so, yeah, let's forgo that, because the bulk of
8  the data is gonna be within the stuff that has been
9  produced.
10      We don't know, unless Google can provide an answer
11 to that now.
12      MR. ANSORGE:  So, we had run some of those numbers
13 for Calhoun.  I would have to go and confirm them for Brown
14 -- and I'll speak to an engineer -- but they are I believe
15 in the range of -- it's something like 10 percent.  And,
16 again, it's data that --
17      SPECIAL MASTER BRUSH:  They being 10 percent that
18 was produced or held back?
19      MR. ANSORGE:  No.  Ten percent that was held back.
20 So, and these are for log sources where, you know, they
21 implicate third-party publisher data, and it's all p-log
22 data, so actually, by definition, not at issue in this case.
23      But that's -- I can get the specific numbers for
24 you.  I'll ask the engineer.
25      SPECIAL MASTER BRUSH:  Why don't we do that?

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/23/2022**                                       Pages 30..33

Page 30

1    MR. ANSORGE:   But it's not a situation where
2  there's more of the not-produced data than produced data.  I
3  mean, the ratio is the other way around.
4          SPECIAL MASTER BRUSH:  Yeah.  No.  If that's the
5  case, that's a substantial amount, and we -- I would be in
6  the position of deprioritizing -- you know, wrestling with
7  that continually in favor of putting the efforts and laser
8  focus on finishing the searches, for the searches that have
9  been completed that need notification, getting those done,
10  and then finalizing the searches.
11          But if that's the case, then we are gonna
12  deprioritize that small subset of data, because there has
13  been a lot that was produced that, quite frankly, was never
14  really honed down or searched.
15          And, so, there would be enough data in there for
16  Plaintiffs to make a determination for final searches.
17          MR. MAO:      So --
18          SPECIAL MASTER BRUSH:  Now --
19          MR. MAO:      Sorry, Mr. Brush.  You're still
20  talking about the historical preserved corpus, right?
21          SPECIAL MASTER BRUSH:  Yeah.  I'm like -- I'm still
22  hesitant to say the word "historical," because there is --
23  when we've said that about some of the -- you know,
24  historical data being everything that's in the production of
25  the live systems and stuff that's in active databases but

Page 31

1  might be in a mere -- or a more offline status.
2          So, we do have some of that historical -- like
3  there's that data that still needs to be potentially
4  searched.  I'm just talking about the stuff that was
5  preserved early on in the matter.
6          MR. MAO:      Right.  And that's what I'm talking
7  about as well.
8          SPECIAL MASTER BRUSH:  Okay.
9          MR. MAO:      Again, I'm --
10          MR. ANSORGE:  We can probably run those numbers
11  just based on the spreadsheet we produced to you -- I'm
12  sorry for interrupting, Mr. Mao.  I'm just adding them up
13  real quickly.
14          MR. MAO:      Yeah.  Mr. Brush, we're looking
15  really primarily there for two things, which is, one, what
16  is stored, not the actual values -- we just wanna know what
17  is actually being stored and kept and what was preserved --
18  and, two, our clients' IDs (blip) that list.
19          So, so long as you're not precluding us from
20  obtaining our IDs, you know, from there searching that for
21  our clients' IDs, and we're able to get an inventory of what
22  is actually stored and preserved, there might be some ways
23  to go forward on this.
24          SPECIAL MASTER BRUSH:  (Interposing) Well, I think
25  we have to start with --

Page 32

1          MR. MAO:      (Inaudible)
2          SPECIAL MASTER BRUSH:  Yeah.  We need some metrics
3  around what's there.  I mean, you have -- you know, let's
4  just say it is, you know, 90 percent of the data.  What's
5  missing, Mr. Mao?
6          MR. MAO:      We don't have 90 percent of the
7  data.
8          SPECIAL MASTER BRUSH:  But we just -- if that's the
9  determination, Mr. Mao, that only 10 percent was held back
10  because of the publisher issue, and you have the rest of
11  that, what's missing specifically?
12          MR. MAO:      Do we really know that for a fact?
13  I get -- that was a question that I've been asking.
14          (Speaking simultaneously)
15          SPECIAL MASTER BRUSH:  Well, we're going to find
16  out by --
17          MR. MAO:      That was a question I'm asking
18  (inaudible).
19          SPECIAL MASTER BRUSH:  Yeah.  Well, that's what I
20  just said.
21          MR. ANSORGE:  (Interposing) Yeah.  But there's a
22  lot of different ways for us to count it.  I mean, I'm
23  getting a count on the actual file size.  We could also look
24  at the events that required -- that are associated with
25  publishers that we've already produced, and that I'm just

Page 33

1  deriving from the spreadsheet that we sent everybody
2  yesterday.  There's 29,000 --
3          SPECIAL MASTER BRUSH:  Let's answer it -- yeah.
4  Let's (inaudible).  I don't wanna misrepresent it on the
5  record.  That's just -- you're setting yourself up for
6  failure; don't do that.  Let's take this one offline.
7          Let's get the counts and make a determination on
8  this data set.  But if that's the case and we have a better
9  understanding -- and maybe, you know, explain it again, even
10  if it's explained in writing, what the data represents that
11  was held back versus what was produced so we have clarity in
12  both numbers, counts and context, I think that will help all
13  of us make a better determination.
14          So, if we can get that -- can we say by close of
15  business today?
16          MR. ANSORGE:  Yes.  Will do.
17          SPECIAL MASTER BRUSH:  Great.  All right.  So,
18  moving past that data, what do we need -- okay.  So, then
19  there's -- okay.  So, there was the iterative round 2 search
20  data that still needs publishers' consent?
21          MR. MAO:      Sorry, Mr. Brush.  Was that to me?
22  You were asking if --
23          SPECIAL MASTER BRUSH:  Oh.  That was actually to
24  Mr. Asorge.
25          MR. MAO:      Oh, okay.

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/23/2022**                              **Pages 34..37**

Page 34

1   SPECIAL MASTER BRUSH:  So, there was -- there was -
2   - was there stuff that was -- taking that date set out,
3   there's still the issue of publisher consent on some of the
4   searches that have been done?
5       MR. ANSORGE:  Yes.  So, the second-round searches,
6   those also --- there are some that require publisher notice.
7   There's 81 if we provide notice to each one.  If we provide
8   notice to the top ten, that's more than 80 percent of the
9   different events.
10      SPECIAL MASTER BRUSH:  Okay.  Now, for those,
11  because they were responsive, just provide notice to all 81
12  and let's get that data turned over.
13      MR. ANSORGE:  Will do.
14      SPECIAL MASTER BRUSH:  Okay.  And for that -- Mr.
15  Mao, for that data, are you saying you need that data
16  produced before you can provide your final search criteria?
17      MR. MAO:      It's hard for me to say, Mr. Brush,
18  without knowing just generally what's in there -- right? --
19  so that's why the inventory would help.  If I could even
20  get, you know, a general sense of what's in there, that'd be
21  helpful.
22      SPECIAL MASTER BRUSH:  Well, I think there's two
23  different -- let's say we're taking away the bucket with the
24  preserved data, just talking about their two searches.
25      MR. MAO:      The -- sorry.  Which searches?

Page 35

1   SPECIAL MASTER BRUSH:  The iterative two searches
2   that still needed publisher consent before they were turned
3   over.
4       MR. MAO:  Oh, yeah.  Those we definitely need, Mr.
5   Brush.  I think you can appreciate there was test data in
6   there, too, and we just wanna see what (inaudible).
7       SPECIAL MASTER BRUSH:  (Interposing) Yeah.  No, no,
8   no.  I'm looking in your favor on that one.  It's a little
9   softball (inaudible).
10      MR. MAO:      Yeah.  I know, I know.  Which is why
11  I kept asking -- like we're talking about the --
12      SPECIAL MASTER BRUSH:  I know.
13      MR. MAO:      -- I don't wanna -- not historical
14  but the preserved data.  Right?  Because I just wanna make
15  sure that we finish out, you know, the testing and iterative
16  searches rounds, like -- you know, like what went in.  We
17  should be able to (blip).
18      SPECIAL MASTER BRUSH:  Yeah.
19      MR. MAO:      Yeah.  That's right.
20      SPECIAL MASTER BRUSH:  Right.  And, so, we need
21  that.  So, I guess it becomes for the 81 that need
22  notification, how long -- I mean, I'm assuming there's a
23  blank -- is there a blanket provision in the contract -- if
24  you don't know that, don't guess -- but as for how long?
25      You know, we talked about anywhere from 21 to 30 days.

Page 36

1   I mean, is there any way to expedite that process by having
2   people pick up the phone with counsel and those parties and
3   say, "Hey, look, here's the situation.  Can we get a 'yes'
4   or 'no' and put it in writing?"
5       MS. ANSORGE:  Yeah.  It's much easier, of course,
6   if we have the 10 or 20 that was the -- that was our
7   thinking, Special Master, that we could, you know, work the
8   phone lines, and if the 10 or 20 -- they're usually large,
9   sophisticated publishers -- New York Post, Fox News.
10      We've spoken to them before.  They understand this.
11  They have familiarity with litigation.  It's quicker, and
12  it's something where we don't require as much notice.
13  That's why we had hoped to focus in on a handful.
14      We can, of course, still, you know, contact Turner,
15  HBO, the key players that there's relationships with, but
16  it's -- my concern is that there's just going to be a whole
17  bunch where, you know, they're not as -- like Glassdoor --
18  I'm just looking at this as an example -- latent digital --
19      SPECIAL MASTER BRUSH:  I get that.  So, it's yes,
20  that you'll -- we'll do what we can to expedite that?
21      MR. ANSORGE:  Yeah.  Well, we'll do what we can to
22  expedite -- we can do it with the 10 or the top 20.
23      I'm not sure how we can do it for 80 different
24  ones, but, of course, we'll do our best and put forward our
25  best efforts to make sure that it doesn't take 21 or 30 days

Page 37

1   or anything like that.  We'll aim to close it out in eight
2   days after we provide the notice.
3       And, of course, that's pushing it from the
4   publisher perspective in terms of what is reasonable notice,
5   but …
6       SPECIAL MASTER BRUSH:  Okay.  That sounds good.
7   All right.  So, why don't we close this out by -- so, I
8   think Google, you owe us a couple status report updates as
9   well as -- you know, by the end of the day as well -- you
10  know, what was timing out, get those updates, and then some
11  context around the preserved data that's still not been
12  produced, that potential 10 percent, let's get some slice-
13  and-dice numbers -- records, percentage, gigabyte counts --
14  and what it represents as far as the number of fields, just
15  so -- you know, and look, if there's been -- if you can even
16  say "Well, look, there's been similar field production from
17  publishers that didn't need the consent," you know, what
18  does that look like, just so we're not guessing.
19      The more context the better is what I'm getting at.
20      MR. ANSORGE:  Yes.  You'd like us to identify what
21  publishers did not require consent?
22      SPECIAL MASTER BRUSH:  No, no, no.  I'm just saying
23  if there's an example -- like what I'm thinking is, I'm
24  imagining in the data that's been produced there was
25  publisher information.

**Page 38**

```
1        MR. ANSORGE:   Yes, yes.
2        SPECIAL MASTER BRUSH:  So, I'm saying haul that out
3   and say, "Look, that's the general structure," then they'd
4   say, "Okay, then we know what's missing in the stuff that
5   would be potentially not produced."  Do you understand what
6   I'm saying?  Just so we know (blip).
7        MR. ANSORGE:   I understand, yeah.
8        SPECIAL MASTER BRUSH:  Okay.  So, we'll look for
9   those -- for that feedback today, and then we're gonna kinda
10  move from there.
11       MR. ANSORGE:   And with regard to the next searches
12  that Plaintiffs would provide, it would be very helpful if
13  Plaintiffs already know at least what sources they are
14  considering, because then, you know, that's something we
15  could factor in in terms of well, this is one that would
16  require publisher notice and we would try to frontload it so
17  that all the notice happens at once, just as a request.
18       If there are to be additional searches, if we
19  already know the sources, it would really be fantastic if
20  you could identify those for us.
21       MR. MAO:       I think we have a good sense of the
22  sources.  The one kind of like "X" factor is really what I
23  mentioned at the beginning of the call, which is the logs
24  that would contain the ██████████████ or the █████
25  ████████████████ fields within the schema.
```

**Page 39**

```
1        You know, if your response is "Well, that could've
2   been in any of the logs that were identified," that's one
3   thing --
4        MR. ANSORGE:   Yeah.
5        MR. MAO:       -- but if it's not, you know, I do
6   think that that's gonna accelerate debate -- I'm sorry --
7   accelerate a conclusion to the debate on what sources to
8   search, because otherwise you're just gonna get a -- you
9   know, a broad request to include all of those sources in the
10  searches, which I don't think is gonna be helpful to Mr.
11  Ansorge.
12       MR. ANSORGE:   So, I think we might be speaking
13  past each other, but I'm glad you've raised that here to
14  just give me an opportunity to I think explain where there's
15  a disconnect.
16       Dr. Sadowski at her deposition testified about that
17  particular field, and there's a 30(b)(6) deposition that
18  Plaintiffs took, that your colleague, Mr. McGee, and there
19  she explained that this is a field that's used by the █████
20  logs, as in it's specific to the ████████ logs, and if a field
21  is specific to a log it can be written to a proto, but when
22  a different product area has a different log that uses the
23  same proto, that doesn't mean that they have access to that
24  field.
25       And this is the fundamental problem that we've had
```

**Page 40**

```
1   when proceeding with the proto as a unit of analysis, or
2   maybe even the field as a unit of analysis, is it's still
3   tied to a very specific log source in this case.
4        So, there are specific █████ logs that we've
5   disclosed to you that have the field that's written, that
6   actually have that value.  If that's a search you're
7   requesting, we can figure out whether those entail publisher
8   data.
9        But I want to clarify that because something is in
10  a proto, that does not mean it's in every log that uses that
11  proto.  The proto is a list of all potential things that
12  could be filled in.
13       A lot of those are access-restricted, can only be
14  filled in by specific logs, and it's for that reason that in
15  our preservation proposal what we have tried to do is move
16  from the log level of analysis into the field level, where
17  if we agree these are the key fields that you're interested
18  in, we will work to figure out what is the longest period of
19  log where that exists.
20       That's separate from us changing the preserved --
21  preservation for entire log infrastructures, and I think
22  it's the most efficient way for us to proceed.
23       MR. MAO:       But that field is already in two of
24  the logs in which -- in two of the five Bert Young logs --
25  right? -- and that's on the ad side, that's not on the
```

**Page 41**

```
1   ████ side.  In my understanding from Dr. Sadowski's
2   deposition, that field had been constructed and had existed
3   ever since 2017.
4        MR. ANSORGE:   And, so, because a field is seen in
5   a proto and the log uses that proto, that does not mean that
6   that particular field has a value.
7        The default will be false for values, and you're
8   going to find that -- you know, it -- UMA uses a GWIS proto
9   for parts of its infrastructure.  That doesn't mean that it
10  has that field written into it.
11       So, it's a -- if we need to search for information
12  related to that specific field, the special master thinks
13  that's, you know, proportional and appropriate for us to
14  proceed, I think we would -- could only do it in the
15  specific █████ logs, except if you're just looking for some
16  kind of description of the field infrastructure overall.
17       But the overall point I'm trying to make is that
18  the level of analysis -- and this is what I tried to argue
19  at our in-person hearing, too, and I'm sorry if I wasn't
20  effective in communicating it -- but I think the most
21  efficient and effective level of analysis for us is the
22  actual field and not the log infrastructure as we're
23  discussing the preservation plan, because we very quickly
24  find ourselves in a scenario where -- right? -- each log
25  will have standard preservation periods, each field will
```

## Page 42

1  have different ones.
2          But what we really need to be focused on are these
3  are the fields Plaintiffs care about, that they know about,
4  that they're focused on, that are in their complaint, and
5  for those we can figure out preservation proposals, and
6  that's what we tried to do in the proposal that we sent you.
7          MR. MAO:        And I'm not trying to lock you down
8  on the logic or the structure -- right? -- I'm literally
9  saying that for the logs you have identified as part of the
10 special master process, one, what logs actually include that
11 field, whether at a proto level or at the actual log level,
12 and then, two, which of those logs actually has that
13 specific field filled.  I realize that there may be --
14         SPECIAL MASTER BRUSH:  (Interposing) Well, there's
15 one nuance -- you're so close.  I think there's one nuance.
16 The problem is which logs have the capability for that
17 proto, because, again, I think what Mr. Ansorge is saying is
18 like just because it can doesn't mean it does exist, and
19 that's where there's this kind of ephemeral thing.  And, so,
20 that map -- and so -- and, honestly, I mean -- and maybe --
21 I don't know what that is, so I'm gonna kick it back to Mr.
22 Ansorge on what that is.  No.
23         Is that even a doable thing to say, okay, with the
24 logs that have been identified as part of this process,
25 which ones could have -- could potentially have that field

## Page 43

1  due to the proto construction, which ones do, and then a
2  count.
3          I don't -- I mean, is that -- it seems like "Is the
4  field there, yes or no" would be the easiest one to answer.
5  How full that is is a little bit more complicated.
6          And then potential field representation I'm
7  guessing is gonna be harder.  Is that a fair assumption?
8          MR. ANSORGE:   So, in general, there is no specific
9  tooling to say, well, this particular field will always be
10 written into a specific log.  There are exceptions, and this
11 is one of those wonderful exceptions.
12         The data that we've already provided to Plaintiffs
13 that they requested, the excerpts of the source code that
14 have been provided, the proto descriptions that have been
15 provided, make clear, along with the corporate testimony
16 that's already been offered, that this is a field that's
17 only filled in by specific ███ logs.
18         We've listed out the ███ logs, we prepared a
19 deponent to testify on those ███ logs, and I won't be
20 able to, I think, add more than what they have already
21 provided, which is there's a field that was built, it's
22 based on the same Heuristic method that we had discussed
23 many times in this case, which is the absence of the "X"
24 Klein data header, and it uses that to attempt to infer when
25 users are not in Incognito mode because they're trying to

## Page 44

1  improve the product for users who are not in Incognito mode,
2  and they therefore use this inferential Heuristic -- it's
3  only used in the ███ logs, and Dr. Sadowski testified
4  it's not used any more, they've built a dashboard
5  infrastructure, but it's not something that's regularly
6  looked at or used.
7          So, it exists.  We're happy to provide information.
8  We've already provided information.  We've offered a
9  30(b)(6) witness on that topic.  We've identified the
10 specific logs in which that field is written.
11         If those are sources that Plaintiffs select for
12 searching and the special master deems it appropriate, we
13 are happy to run the searches over those.
14         I think that would be the most efficient way to
15 proceed.  We'll have to figure out if it requires publisher
16 notice.  My hope is that it won't.
17         MR. MAO:        Just to be clear --
18         SPECIAL MASTER BRUSH:  Wait.  I just heard -- wait
19 --
20         MR. MAO:        Mr. Brush, if I may -- if I may
21 clarify something.  Mr. Ansorge refers to them having
22 identified some of the ███ logs.
23         Our question, again, goes back to what she pointed
24 out -- right? -- that there's two parts, which is, one,
25 there has been no representation that that's actually

## Page 45

1  exhaustive of where that field actually exits, and my main
2  question on that is which of the logs they've identified as
3  part of the special master process -- because those five
4  ███ logs were not identified as part of the special
5  master process -- but which five -- which of the special
6  master process identified logs actually contained that
7  field, like actually uses it, and then, secondly, which one
8  of those logs potentially, you know, could use it either
9  because it is in the schema or because of some other way in
10 which it could be used.
11         Those are different questions.  And, you know, just
12 because they've identified five logs, all of which are
13 outside of the -- you know, were identified outside of the
14 special master process -- okay? -- does not mean that for
15 the special master process we don't need to finish up by
16 asking those two questions, and which you had pointed out.
17         MR. ANSORGE:   And, Mr. Mao, I don't know what more
18 representation we can provide to you than a 30(b)(6)
19 witness.  You noticed the topic in December.
20         We prepared the witness.  They spoke to engineers.
21 They looked -- conducted code searches.  You asked for
22 specific data.  We provided that data.
23         Plaintiffs deposed Google as a corporate designee
24 on this topic.  Dr. Sadowski testified on this topic.  I
25 can't add or subtract from that testimony.  That stands as

**Page 46**

```
1   it exists.
2            My concern here is how does any of this lead us to
3   actually having the next round of searches?  We're -- we
4   appear to be finding ourselves --
5            MR. MAO:     Right.  So, let me -- let me answer
6   that.
7            MR. ANSORGE:     -- in a hall of mirrors.
8            MR. MAO:     Two seconds.  I just need two
9   sentences.  One, you could simply update the logs and this
10  schema produced to answer that question, and then, two, out
11  of that you can identify which of those logs and schemas
12  this field could've either been used or is already being
13  used.  There, two sentences.  There's your tangible.  I'm
14  not trying to argue with you.
15           MR. ANSORGE:     And, so, all that has happened under
16  oath.  Dr. Sadowski testified on behalf of Google on a topic
17  where you were seeking this information -- you sought it in
18  December -- and that has been provided.
19           I'm sorry.  I feel like I'm absolutely being
20  deposed here, Mr. Mao --
21  (Speaking simultaneously)
22           SPECIAL MASTER BRUSH:  To do it successfully I
23  would (inaudible) that definition --
24           MR. ANSORGE:     -- and I don't believe --
25           MR. MAO:     I'm not deposing you.
```

**Page 47**

```
1            MR. ANSORGE:     Okay.  Well, in that case I
2   (inaudible) --
3            MR. MAO:     (Interposing) I'm not saying that
4   she said under oath that she needs to go back to talk to
5   engineers to figure that out.
6            MR. ANSORGE:     Well, then I think -- I would like
7   you to send us that specific quote and passage where she
8   said that she's not -- is not providing an answer.
9            Not only did she identify the specific log sources,
10  we put them on a piece of paper for you so that there'd be
11  no typo, so there'd be absolute clarity on which exist.
12           She explained when they were written and she
13  explained, most importantly, the logic by which they were
14  written, and that logic is one that we have discussed ad
15  infinitum, both before the special master and in other
16  processes, at least since July.
17           There's been 30(b)(b) corporate testimony about the
18  false positives, false negatives associated with the absence
19  of the "X" Klein data header.
20           MR. MAO:     Well, look, we're not arguing the
21  merits of the case right now, we're simply trying to isolate
22  the data, the relevant data.  Right?
23           My point is this popped up in the schema for two of
24  the ███ logs, and I'm simply asking you whether or not
25  you need to update the rest of the logs to either reflect
```

**Page 48**

```
1   that's similarly in there -- okay? -- or that it could be in
2   there, or something else.  Like you've given no explanation
3   or logic to that.
4            And by the way, Dr. Sadowski's deposition,
5   actually, the incongruence is that she didn't point to
6   either of those two logs which ended up showing that field.
7            So how do I reconcile you saying that this field --
8   that the logs -- the five logs she identified is exhaustive
9   when she didn't even list the two additional logs that was
10  produced as part of the special master process which did use
11  that field?
12           MR. ANSORGE:     Yeah.
13           MR. MAO:     How do I reconcile that?
14           MR. ANSORGE:     I think you reconcile that by
15  understanding what we've been trying to explain about protos
16  since October.
17           MS. GAO:     Mr. Mao, let me try to explain this.
18  So, two of the ███ logs, as you see, have this field, but
19  they will always be written as false because that's the
20  default written -- default writing of these logs, because
21  they don't really have the capability to write in the logs.
22           So, even if you select the sources and we run the
23  searches, all of the results you will see will be false.
24           MR. MAO:     So, I think you're wrong there, Ms.
25  Gao, because I think you used the word "capability," and
```

**Page 49**

```
1   that's not true.  I mean, it clearly has the capability to
2   do that.  And the two questions are, one --
3            SPECIAL MASTER BRUSH:  Well, let me pause you right
4   there, Mr. Mao, because I think there's a slight -- it's not
5   a universal capability to try to report it on, it's not --
6   even the option's not (blip) in every data source.  You
7   know, there's a nuance there.
8            MR. MAO:     Right.  And, Mr. Brush --
9            SPECIAL MASTER BRUSH:  So, what -- I guess let's
10  close this out, because we're at time.  So --
11  (Speaking simultaneously)
12           MR. MAO:     I'm just trying to figure that out,
13  Mr. Brush.
14           SPECIAL MASTER BRUSH:  No, no, no.  I understand
15  that.
16           MR. MAO:     Exactly what (inaudible).
17           SPECIAL MASTER BRUSH:  Yeah.  It sounds like there
18  was a lot of information that was provided around this
19  topic, and if there's gaps, by all means.
20           I mean, I'm not saying we don't, but you're not
21  being -- we're not being very productive here getting to the
22  bottom of that.
23           But, you know, are you asking -- and can we do this
24  as kind of an approach -- out of the additional -- out of
25  all the identified logs in the process, is it -- what would
```

**Page 50**

1 it take, Mr. Ansorge, for a person to identify the ones that
2 have the -- yeah.
3         So, I'm trying to get at if there's any way to see
4 if that field does exist in a normal course of business, or
5 what's the percentage -- is there anything to say, you know,
6 these logs were where this field is most likely to appear
7 out of the ones that have been identified?  Is that -- or
8 has that already been done and can it just be provided?
9         MR. ANSORGE:   It's been done.  It would usually be
10 something that's very difficult to do because it would
11 require running of test IDs across all the logs and then
12 comparing them.
13        SPECIAL MASTER BRUSH:  Sure.
14        MR. ANSORGE:   In this case, we were fortunate that
15 it's been done and we had corporate testimony on it under
16 oath and the specific sources were identified, specific log
17 sources.
18        I just harken back to your email from yesterday,
19 sir, which said we're not gonna be opening up any more
20 doors, falling down any other routes of discovery, and my
21 concern is that each of these being used as a condition or
22 precedent for further searches.  It won't actually get us
23 closer to finishing up the process.
24        SPECIAL MASTER BRUSH:  Okay.  This is where I was
25 going with all this, is -- yeah.  Let -- if you can get it

**Page 51**

1 in writing -- because I feel like I'm -- you know, this is
2 not -- you know, we've been watching this argument go back
3 and forth for a while about this specific field, and I
4 understand there's -- the complexity is probably -- the
5 details were being lost.
6         But if you can articulate it well and in a concise
7 manner what you said about how it's been provided, have me
8 take a look at it and then I can make a further
9 determination.
10        Again, I'm not looking to opening up anything else,
11 I just think we need to get it a little bit more concise and
12 in writing as opposed to, you know, orally on Zoom
13 (inaudible) because I have seen some.
14        But if you can point to it specifically and
15 articulate it, I think we can close out this issue offline.
16        MR. MAO:     Mr. Brush, this is a critical issue
17 that you're gonna see come up, so I would ask that we -- the
18 Brown plaintiffs also be copied on the same correspondence.
19 That way we have (inaudible).
20        SPECIAL MASTER BRUSH:  (Interposing) Absolutely.
21 Oh, yes.  No, no, no.  It's not ex parte, it's -- it's --
22 because I wanna absorb it.
23        You know, you're certainly open to rebut in writing
24 on it and kind of get your sense of just -- but I think what
25 we want -- I'm gonna base this thing -- we're over time.

**Page 52**

1 I've heard what I need to hear orally on it.  Let's get it
2 in writing and kinda close this down for the day.
3         MR. MAO:         Yeah.  And it's not -- it's not
4 without reason, Mr. Brush.  Because I'm guessing, just given
5 the volume of traffic that went on last night, you probably
6 have not had a chance to look at the status of the
7 preservation plan discussion, but I think once you've had
8 the time to look at that you're gonna see that this is gonna
9 be germane and relevant to that issue, too.
10        And one of the issues that's gonna pop up on that
11 is this might be one of the elephants in the room as to why
12 we can't have a fulsome discussion about when log retention
13 and preservation periods should start.
14        But, you know, that might be the better subject of
15 a debate for later on.
16        SPECIAL MASTER BRUSH:  Oh, that's right.  We will
17 debate on the preservation.  You guys totally missed the
18 landing on that one, so I'll -- you know, we're gonna have
19 to take that as a separate thing and close that down,
20 because that should've been done two weeks ago.
21        MR. SCHAPIRO:  And, Mr. Brush, we hear you on that,
22 and -- I'll refrain -- so, if you have any questions about
23 the preservation plan as we've described it or submitted it,
24 we -- you know, over the course of the next whatever it is,
25 12 or 24 hours, when you're looking at and assessing them,

**Page 53**

1 we would, of course, be happy to answer any of them in
2 whatever forum or format you deem appropriate.
3         SPECIAL MASTER BRUSH:  Sounds good.  Thank you very
4 much.
5         MR. SCHAPIRO:  Thank you.
6         SPECIAL MASTER BRUSH:  All right.  Thanks,
7 everybody.
8 [END OF HEARING]
9 [END OF TRANSCRIPT]
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
**Hearing on 03/23/2022**                                    Page 54

Page 54

```
1                    CERTIFICATION PAGE

2

3       I, Kimberly H. Nolan, Transcriptionist,

4    do hereby certify that this transcript

5    is a true and accurate record of the

6    electronically recorded proceedings,

7    transcribed by me this 1st day of

8    April, 2022.

9       Kimberly N. Nolan

10   _____

11

12   KIMBERLY H. NOLAN

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**1**

1   13:18

10   29:15,17
  32:9 36:6,
  8,22 37:12

12   52:25

12th   26:9,
  12 27:25

14   24:17

**2**

2   5:9 9:9,
  21,23
  13:17,20
  33:19

20   20:1
  25:12
  36:6,8,22

2017   41:3

2020   25:16

2022   3:2

21   35:25
  36:25

23RD   3:2

24   52:25

29,000   33:2

**3**

30   35:25
  36:25

30(b)(6)
  39:17 44:9
  45:18

30(b)(b)
  47:17

30-something
  16:20

**4**

400   20:9
  21:23

400-plus
  15:21

**5**

5   29:7

50   20:1

500   20:9

**6**

60,000   20:2

**8**

80   20:3
  24:18 34:8
  36:23

81   27:16
  28:8 34:7,
  11 35:21

**9**

90   24:18
  32:4,6

**A**

absence
  43:23
  47:18

absolute
  47:11

absolutely
  46:19
  51:20

absorb   51:22

accelerate
  39:6,7

access   39:23

access-
restricted
  40:13

actions   9:23
  13:19

active   30:25

actual   14:5
  19:17
  21:25
  31:16
  32:23
  41:22
  42:11

ad   40:25
  47:14

add   10:10
  43:20
  45:25

adding   31:12

addition
  25:13

additional
  14:14
  15:12 17:3
  18:16
  20:11
  38:18 48:9
  49:24

address   8:3
  11:6 15:15
  18:4

addressed
  8:1 12:18

Adinteraction
  6:3

Admanager
  22:2

Admob   21:22
  25:7

Adqueries
  6:3

Adsense
  21:22 25:7

aggressive
  25:1

agree   17:11,
  12 40:17

ahead   14:18

aim   37:1

amount   23:8
  28:22 30:5

analysis
  40:1,2,16
  41:18,21

and-dice
  37:13

Ansorge   8:10
  10:11,15
  12:4,6,25
  13:4,21
  14:23
  15:7,12,
  14,17,20
  17:1,14
  18:2 19:5,
  9 21:2,5,
  12 22:17
  24:7,11
  27:11,16,
  19 29:12,
  19 30:1
  31:10
  32:21
  33:16
  34:5,13
  36:5,21
  37:20
  38:1,7,11
  39:4,11,12
  41:4
  42:17,22
  43:8 44:21
  45:17
  46:7,15,24
  47:1,6

48:12,14
  50:1,9,14

Ansorge's
  18:15

anticipate
  24:7

apologize
  14:2 20:19

apply   23:14
  26:15

approach
  11:10
  49:24

approves
  14:14
  16:18

approximation
  22:9

April   5:23

area   39:22

argue   41:18
  46:14

arguing
  47:20

argument
  7:13 14:25
  17:1 20:16
  22:24 25:7
  51:2

arguments
  4:1

articulate
  51:6,15

Asorge   33:24

assembled
  5:19

assessing
  52:25

assuming
  35:22

assumption
  43:7

attempt
  43:24

attention
  11:21

avoid   7:13
  22:24

await   12:20

awaiting
  11:21

———————

B

———————

back   4:12
  5:20 7:8
  8:5,7 9:8,
  25 17:22
  18:3,6
  26:7
  29:18,19
  32:9 33:11
  42:21
  44:23 47:4
  50:18 51:2

baked   4:3

base   51:25

based   12:1
  26:8 31:11
  43:22

basically
  4:16,23
  23:19

beginning
  38:23

behalf   46:16

Bert   40:24

bilateral
  16:1 19:18

bit   3:18
  4:3 5:12
  7:8 9:5
  11:23 43:5
  51:11

blanche
  17:11

blank   35:23

blanket
  35:23

blip   6:4
  8:19
  13:15,20
  14:22
  15:2,4,5,6
  31:18
  35:17 38:6
  49:6

bottom   49:22

breakdowns
  10:16

briefed  5:24

broad  39:9

broken  15:22

Brown  3:11
 4:21 16:8,
 25 29:13
 51:18

Brush  3:3,8
 5:7 6:5,8,
 12,16,19
 8:8,11,16,
 21 9:3,10,
 13,17
 10:7,14,23
 11:22
 12:5,24
 13:2,10,12
 14:18
 15:9,16
 17:16
 18:5,7,20
 20:17
 21:4,6
 22:16,25
 23:1
 25:22,23
 26:3
 27:12,15,
 18 28:10,
 14,19,24
 29:17,25
 30:4,18,
 19,21
 31:8,14,24
 32:2,8,15,
 19 33:3,
 17,21,23

34:1,10,
14,17,22
35:1,5,7,
12,18,20
36:19
37:6,22
38:2,8
42:14
44:18,20
46:22
49:3,8,9,
13,14,17
50:13,24
51:16,20
52:4,16,21
53:3,6

bucket  24:14
 34:23

buckets  3:15
 20:20
 23:2,3

buffer  7:21

built  43:21
 44:4

bulk  19:23
 22:12
 24:18 29:7

bunch  36:17

burden  22:13

burdensome
 15:24
 19:13,14

business
 33:15 50:4

—————————
C
—————————

Calhoun
 11:14
 12:22 16:9
 21:14
 29:2,13

call  10:22
 12:8 20:22
 38:23

capability
 42:16
 48:21,25
 49:1,5

care  42:3

carte  17:11

case  9:17
 15:25
 19:15,17,
 19,20
 21:14
 22:22
 23:13
 24:12
 29:22
 30:5,11
 33:8 40:3
 43:23
 47:1,21
 50:14

catch-22
 16:24

categories
 21:24

chance  52:6

changing
 40:20

characteristic
s  7:5

check  5:5

choose  16:3

Chrome-non-
incognito
 38:25

clarification
 15:17

clarify
 15:17
 28:15 40:9
 44:21

clarity  22:4
 33:11
 47:11

class  19:16
 21:25

clear  18:24
 43:15
 44:17

clients
 28:11

clients'
 31:18,21

close  22:10
 24:13,24
 28:7 33:14
 37:1,7
 42:15
 49:10

51:15
52:2,19

closed   16:10

closer   50:23

closing   11:8
25:8

code   43:13
45:21

cohesive
3:20

colleague
39:18

color   10:10,
21

communicating
41:20

communications
16:1 19:18

comparing
50:12

compile   8:25

complaint
42:4

completed
30:9

complexities
26:5

complexity
51:4

complicated
43:5

compressed

24:6

compromise
22:6

concern
12:17
22:12 27:5
36:16 46:2
50:21

concerns
17:7 25:18
27:4

concise
51:6,11

conclusion
39:7

condition
50:21

conducted
27:24
45:21

confirm
29:13

confusion
11:3

consent
22:2,3
23:9 29:6
33:20 34:3
35:2
37:17,21

constraints
26:23

constructed
41:2

construction
43:1

contact
36:14

contained
45:6

context
33:12
37:11,19

continually
30:7

contract
35:23

convenience
11:6

conversations
22:14

conveying
14:9

copied   10:3
51:18

corporate
43:15
45:23
47:17
50:15

corpus
18:10,12,
22 19:24
27:21
28:11,17,
18 30:20

correct   4:22

correlate
15:23

correspondence
51:18

could've
39:1 46:12

counsel
22:18 28:5
36:2

count   22:9
27:16
32:22,23
43:2

counts   33:7,
12 37:13

couple   37:8

court   4:7,12
5:23

court-worthy
3:23

covers   25:18

craft   17:24

create   17:3

criteria
23:7 26:8,
12 34:16

critical
51:16

current
17:22

customizable
7:22

customized
  5:19

cut   21:21

_____

          D
_____

daily   25:17

dashboard
  44:4

data   4:18,
  23 10:18
  12:7,18
  13:8 16:1
  17:2,5
  18:22
  19:6,10,
  11,16,19
  20:20,21,
  23,24
  21:1,2,22
  22:12,19,
  21 23:3,4,
  7,16,19,21
  24:9,14,25
  25:3,4,7,
  14,15,16,
  19 26:2,8,
  11 27:1,21
  28:15,20
  29:8,16,
  21,22
  30:2,12,
  15,24 31:3
  32:4,7
  33:8,10,
  18,20
  34:12,15,

24 35:5,14
37:11,24
40:8
43:12,24
45:22
47:19,22
49:6

databases
  24:6 30:25

date   11:25
  34:2

dates   12:12
  13:14,23

day   20:7
  37:9 52:2

day-to-day
  23:23

days   13:5
  16:22
  35:25
  36:25 37:2

deal   16:16

debate   39:6,
  7 52:15,17

December
  7:16 45:19
  46:18

deem   53:2

deemed   18:3

deems   44:12

default   41:7
  48:20

defendants

19:2

definition
  21:25
  22:22
  29:22
  46:23

deponent
  43:19

deposed
  45:23
  46:20

deposing
  46:25

deposition
  39:16,17
  41:2 48:4

deprioritize
  30:12

deprioritizing
  30:6

deriving
  33:1

description
  10:24
  41:16

descriptions
  43:14

designee
  45:23

detail   10:21

detailed
  21:13

details   12:9

51:5

determination
  30:16 32:9
  33:7,13
  51:9

determine
  21:19 29:5

differentiatin
g   6:15

difficult
  50:10

digital
  36:18

disagree
  22:23

disappointed
  3:19 4:4

disclosed
  40:5

disconnect
  15:19
  19:10
  39:15

discovery
  3:10 6:6,
  9,13,20,
  22,24
  50:20

discussed
  20:12
  43:22
  47:14

discussing
  22:1 41:23

discussion
  8:16 21:14
  25:16
  52:7,12

distinction
  20:18

distinctly
  27:6

doable  42:23

doors  50:20

due  4:2
  11:7 43:1

duplicative
  13:23

---

**E**

earlier  6:4
  11:4

early  31:5

easier  36:5

easiest  43:4

easy  26:4

effective
  41:20,21

efficient
  19:1 26:21
  40:22
  41:21
  44:14

efficiently
  22:11

efforts  30:7

36:25

elephants
  52:11

email  50:18

encapsulated
  25:17

end  4:24
  5:17 22:1
  37:9 53:8,
  9

ended  48:6

ends  22:21
  24:19

energy  19:2

engaged
  19:17

engineer
  14:6
  29:14,24

engineers
  10:16
  45:20 47:5

entail  20:12
  40:7

entailed
  27:13

entails
  27:22

entire  40:21

entitled
  17:5

entry  5:14

7:21

environment
  23:23

ephemeral
  42:19

essentially
  23:16

event  15:24
  16:2 24:19
  28:4

events  15:23
  19:24 20:2
  27:17
  32:24 34:9

exceptions
  43:10,11

excerpts
  43:13

exchanged
  5:1

exercise
  19:25

exhaustive
  45:1 48:8

exist  42:18
  47:11 50:4

existed  41:2

exists  40:19
  44:7 46:1

exits  45:1

expected  4:2

expedite

36:1,20,22

explain
  22:20 33:9
  39:14
  48:15,17

explained
  33:10
  39:19
  47:12,13

explanation
  48:2

expressed
  10:6

---

**F**

fact  18:21
  32:12

factor
  38:15,22

failing  12:2
  13:17

failure  33:6

fair  43:7

faith  26:6

falling  26:7
  50:20

falls  23:19
  26:17,18

false  41:7
  47:18
  48:19,23

familiar

CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.
Hearing on 03/23/2022          Index: familiarity..fulsome

22:18

familiarity
36:11

fantastic
38:19

favor   30:7
35:8

February
7:19

feedback
38:9

feel   46:19
51:1

fell   12:22
16:7,15
20:10

fervent   16:6

field   5:14,
18 7:1,18,
20,21
22:4,8
37:16
39:17,19,
20,24
40:2,5,16,
23 41:2,4,
6,10,12,
16,22,25
42:11,13,
25 43:4,6,
9,16,21
44:10
45:1,7
46:12
48:6,7,11,

18 50:4,6
51:3

fields   5:13
10:5 11:5
37:14
38:25
40:17 42:3

figure   26:23
40:7,18
42:5 44:15
47:5 49:12

file   32:23

filed   4:12

filled
40:12,14
42:13
43:17

final   4:17
8:24 17:24
18:2,13
24:9 30:16
34:16

finalize
4:15 24:3

finalizing
30:10

find   9:18
19:1 23:6,
12 32:15
41:8,24

finding   6:21
46:4

fine   12:24
22:11

finish   3:14
17:1 35:15
45:15

finished
3:15 26:1

finishing
30:8 50:23

firewalled
11:23

fleshed   6:1

flow   22:19

flume   24:5

focus   19:2
27:23 30:8
36:13

focused
42:2,4

focusing
25:11

follow   21:15
24:21
26:14
27:23

forever
18:18

forgo   29:7

forgoing
25:9

format   53:2

formats   20:3

forms   25:17

formulate

5:4

forthright
11:9

fortunate
50:14

forum   4:1
53:2

forward   5:20
17:10
20:14
26:25
27:2,9
31:23
36:24

found   6:23

Fox   36:9

framing   9:14

frankly   4:2,
8 30:13

Frawley
18:18

front   5:10,
17,22 7:22
8:6

frontload
38:16

frontloaded
19:24

frozen   12:25

full   43:5

fully   4:3

fulsome

52:12

fundamental
  39:25

_____

_____
            G
_____

Gao   48:17,
  25

gap   26:24

gaps   49:19

gas   26:2

gave   9:12
  16:3

general
  21:11
  34:20  38:3
  43:8

generally
  34:18

germane   52:9

gigabyte
  37:13

gigabytes
  29:4

give   12:8
  23:3  25:13
  39:14

glad   39:13

glaring   8:2

Glassdoor
  28:3,5,6
  36:17

goal   13:4

good   23:8
  26:6  37:6
  38:21  53:3

Google   3:11
  4:23  5:5,9
  7:9,14  8:3
  9:18  10:7
  17:2
  23:18,23,
  25  29:10
  37:8  45:23
  46:16

Google's
  26:21,25

Gotcha   11:22

great   3:8
  13:1  33:17

guess   4:25
  5:21  7:3,
  13,24  8:18
  35:21,24
  49:9

guessing
  37:18  43:7
  52:4

guys   4:12
  52:17

GWIS   5:14
  7:21  41:8

_____
            H
_____

hall   46:7

hand   14:4

handful
  36:13

hands   27:2

happen   18:25

happened
  46:15

happy   11:5
  15:14
  44:7,13
  53:1

hard   34:17

harder   43:7

harken   50:18

haul   38:2

HBO   36:15

header   43:24
  47:19

hear   52:1,
  21

heard   44:18
  52:1

hearing   5:22
  41:19  53:8

heavy   22:21

heck   29:6

held   17:22
  29:18,19
  32:9  33:11

helpful
  10:22  11:9
  34:21

38:12
39:10

hesitant
  30:22

Heuristic
  43:22  44:2

Hey   36:3

histograms
  9:22  13:19

historic
  10:18
  12:12
  13:25
  25:15,19

historical
  13:11
  18:10,11
  20:23
  23:4,24
  28:10,15
  30:20,22,
  24  31:2
  35:13

historically
  5:20  24:25

hold   3:4
  18:3

hole   26:2

honed   30:14

honestly
  42:20

hope   11:12
  16:6,13,24
  19:21

25:19
44:16

hoped  36:13

hoping  10:1
  12:14
  14:12

hours  52:25

hundreds
  19:14
  22:14
  27:22

hypothetical
  15:2

_____

        I

ID  21:17

identified
  26:11 39:2
  42:9,24
  44:9,22
  45:2,4,6,
  12,13 48:8
  49:25
  50:7,16

identifiers
  4:21 5:8
  7:4

identify
  19:12
  37:20
  38:20
  46:11 47:9
  50:1

IDS  22:7,9

28:12
31:18,20,
21 50:11

imagining
37:24

implemented
21:15

implicate
29:21

important
5:24 20:18
25:15

importantly
47:13

improve  44:1

in-house
22:18

in-person
41:19

inability
3:19

inaudible
6:18 15:1,
13 17:15
18:19
20:19 23:2
24:5 25:22
32:1,18
33:4 35:6,
9 46:23
47:2 49:16
51:13,19

include  7:18
39:9 42:10

Incognito
5:12 11:5
43:25 44:1

incongruence
48:5

individual
16:1,2
19:17
22:14
27:17 28:3

infer  43:24

inferential
44:2

infinitum
47:15

information
11:2 17:23
25:14
37:25
41:11
44:7,8
46:17
49:18

infrastructure
41:9,16,22
44:5

infrastructure
s  40:21

initially
20:21,25

input  12:21

intended
20:15

interest

24:24 25:8

interested
16:5 40:17

interfere
11:24

interim
14:21 17:8

Interposing
15:14
17:16
18:20
25:23
31:24
32:21 35:7
42:14 47:3
51:20

interrupting
31:12

inventory
31:21
34:19

Is-  38:24

Is-chrome-non-
incognito
38:24

▮▮▮▮▮▮▮▮▮
5:12

isolate
47:21

issue  3:24
5:10,21,22
7:24 8:2
21:25
22:22

26:16
29:22
32:10 34:3
51:15,16
52:9

**issues** 3:10
8:1 52:10

**iterations**
24:1

**iterative**
9:9 24:15
33:19
35:1,15

---

### J

**January** 22:4

**joining** 3:7

**judge** 5:23

**July** 47:16

**June** 25:16

---

### K

**key** 36:15
40:17

**kick** 42:21

**kind** 3:21
4:11 22:8
23:2 38:22
41:16
42:19
49:24
51:24

**kinda** 3:12
11:23
26:18 27:9
38:9 52:2

**Klein** 43:24
47:19

**knowing**
34:18

---

### L

**landing**
52:18

**large** 11:1
22:12
25:20 36:8

**laser** 30:7

**latent** 36:18

**lawyer** 6:18

**lay** 14:12

**lead** 46:2

**led** 28:25

**left** 23:11

**letter** 9:4

**letters** 5:1

**level** 40:16
41:18,21
42:11

**lift** 22:21

**light** 14:7

**limitations**
14:5

**limits** 19:4

**lines** 36:8

**list** 15:20
31:18
40:11 48:9

**listed** 43:18

**listen** 18:20

**literally**
42:8

**litigation**
36:11

**live** 30:25

**lock** 42:7

**log** 16:1
29:20
39:21,22
40:3,10,
16,19,21
41:5,22,24
42:11
43:10 47:9
50:16
52:12

**logic** 26:14
42:8
47:13,14
48:3

**logs** 5:18,
19 6:3
7:5,23
22:1,3
23:25
24:11
38:23

39:2,20
40:4,14,24
41:15
42:9,10,
12,16,24
43:17,18,
19 44:3,
10,22
45:2,4,6,
8,12 46:9,
11 47:24,
25 48:6,8,
9,18,20,21
49:25
50:6,11

**long** 4:1
31:19
35:22,24

**longest**
40:18

**looked** 44:6
45:21

**lost** 15:7
51:5

**lot** 13:14
20:23 24:6
25:18,21
30:13
32:22
40:13
49:18

**love** 14:4

---

### M

**magistrate**

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
Hearing on 03/23/2022                           Index: main..mode

5:23

main  12:17
  22:12
  25:25 45:1

make  4:20
  11:24
  17:18
  19:23
  21:11,13,
  21 23:12,
  17 30:16
  33:7,13
  35:14
  36:25
  41:17
  43:15 51:8

makes  13:3

managing
  24:24

manner  27:10
  51:7

Mao  5:6
  6:7,10,14,
  18 7:7
  8:15,18
  9:2,6,11,
  16,20
  10:12
  11:4,17
  13:10,11
  14:2,19,20
  15:8,9,11,
  15,21
  16:23
  17:20
  18:1,9,18

20:16
22:23
25:21,25
28:10,14,
17,21
30:17,19
31:6,9,12,
14 32:1,5,
6,9,12,17
33:21,25
34:15,17,
25 35:4,
10,13,19
38:21 39:5
40:23 42:7
44:17,20
45:17
46:5,8,20,
25 47:3,20
48:13,17,
24 49:4,8,
12,16
51:16 52:3

Mao's  10:8
  11:9

map  42:20

March  3:2
  7:20

master  3:3,8
  5:6 6:5,8,
  11,12,16,
  19 8:8,11,
  16,21 9:2,
  3,7,10,13,
  17 10:7,
  14,23
  11:19,22

12:5,24
13:2,10,12
14:14,18
15:9,16
16:18,24
17:16
18:7,20
20:17
21:4,6,16
22:16 23:1
25:2,21,23
26:3
27:15,18
28:14,19,
24 29:17,
25 30:4,
18,21
31:8,24
32:2,8,15,
19 33:3,
17,23
34:1,10,
14,22
35:1,7,12,
18,20
36:7,19
37:6,22
38:2,8
41:12
42:10,14
44:12,18
45:3,5,6,
14,15
46:22
47:15
48:10
49:3,9,14,
17 50:13,

24 51:20
52:16
53:3,6

matter  18:23
  19:7,8
  31:5

Mcgee  39:18

meaning  5:18

means  15:3,4
  27:7 49:19

mentioned
  38:23

mere  31:1

mergeable
  7:23

merits  47:21

method  43:22

methodology
  23:14

metrics  32:2

mirror-term
  23:24

mirrors  46:7

misrepresent
  33:4

missed  52:17

missing  27:6
  32:5,11
  38:4

mixes  20:23

mode  43:25
  44:1

moment  20:5,
  6

Monday  5:7

month  6:4

movable  7:23

move  10:4,6
  17:9 20:16
  38:10
  40:15

moving  4:13
  33:18

muddle  4:6

---
          N
---

needed  35:2

negatives
  47:18

nervous
  10:16

News  36:9

night  8:5
  10:3 52:5

normal  50:4

not-  28:19

not-produced
  30:2

notice
  11:11,13,
  16 12:20
  13:5
  14:16,20,
  24 15:1,13

16:6,11,
14,19,20,
21 17:3,7
18:4,17
19:13
20:6,9,12,
13 21:19
24:20
25:12
27:13,20,
25 34:6,7,
8,11 36:12
37:2,4
38:16,17
44:16

noticed
  16:8,9
  20:7,8
  28:8 45:19

notification
  17:23,25
  19:7 21:9
  24:10
  26:22 30:9
  35:22

notifications
  26:16

notified
  18:23

November  7:9
  13:13
  26:9,12
  27:25

nuance  42:15
  49:7

number  7:9
  9:25 37:14

numbers
  29:12,23
  31:10
  33:12
  37:13

---
          O
---

oath  46:16
  47:4 50:16

objections
  10:2

obtaining
  31:20

obviate
  25:19

October
  48:16

offered
  43:16 44:8

offline  31:1
  33:6 51:15

omitted
  13:20

███████
  39:19,20
  40:4 41:1,
  15 43:17,
  18,19
  44:3,22
  45:4 47:24
  48:18

open  3:10
  10:9 51:23

opening  25:2
  27:12
  50:19
  51:10

operations
  9:19

opportunity
  39:14

opposed
  51:12

option  16:3

option's
  49:6

options  12:1

orally  51:12
  52:1

order  9:19
  17:6 26:9,
  12

ordered  9:24

outstanding
  5:10 13:9

overlap
  12:15
  14:11

overlaps
  12:17

owe  37:8

——————————
**P**
——————————

p-  15:25

p-log  19:16
  25:3 27:21
  29:21

paper  47:10

parameters
  8:23 9:24

part  6:5,8,
  10,12 7:1,
  6,25 8:3
  9:6 15:7
  18:16,22
  19:16
  21:24
  24:15
  25:20
  42:9,24
  45:3,4
  48:10

parte  51:21

partially-
produced
  28:20

parties  26:6
  36:2

parties'
  3:19

parts  41:9
  44:24

passage  47:7

past  4:1
  10:4 11:2

23:15
33:18
39:13

path  24:21

pause  17:17
  49:3

people  36:2

percent
  20:1,3
  24:18
  29:7,15,
  17,19
  32:4,6,9
  34:8 37:12

percentage
  29:3 37:13
  50:5

perception
  7:14,15

period  21:17
  40:18

periods  4:22
  41:25
  52:13

person  50:1

perspective
  37:4

phone  36:2,8

pick  19:25
  20:2 36:2

piece  47:10

pings  12:10

pipeline
  11:8 13:7

place  17:6

plaintiff
  28:5

plaintiffs
  4:21 7:15
  12:17
  16:3,25
  19:22 22:7
  24:16,21
  25:13 27:4
  28:12
  30:16
  38:12,13
  39:18 42:3
  43:12
  44:11
  45:23
  51:18

plaintiffs'
  5:3 13:18
  22:22 27:2

plan  3:16,
  20 5:11,
  16,25
  41:23
  52:7,23

players
  36:15

point  5:4
  8:4 41:17
  47:23 48:5
  51:14

pointed

44:23
45:16

pop  52:10

popped  47:23

position
  25:2 26:21
  30:6

positives
  47:18

Post  36:9

potential
  26:24
  27:11
  37:12
  40:11 43:6

potentially
  31:3 38:5
  42:25 45:8

practice
  21:15

precedent
  50:22

precluding
  31:19

prefer  16:19
  20:6 23:5

prepared
  25:8 43:18
  45:20

presented
  4:3,5

preservation
  3:16,20

5:11,16,25
8:1,9,10,
17 11:5
40:15,21
41:23,25
42:5 52:7,
13,17,23

**Preservation's**
8:12

**preserved**
19:11
20:22,25
22:12
23:4,5
24:25
27:21
28:17,19
30:20
31:5,17,22
34:24
35:14
37:11
40:20

**preserving**
18:13

**press** 9:1

**pretty** 18:24

**previous**
12:16

**previously**
22:3

**primarily**
31:15

**problem** 9:7
14:10 24:8

26:15
39:25
42:16

**problems**
11:1

**proceed**
40:22
41:14
44:15

**proceeding**
24:24 40:1

**process** 6:6,
9,10,13,20
8:22
11:15,18,
24 13:13,
15 16:9,15
21:16
22:11 25:9
26:1,4,9,
12,19,22
27:25 28:7
36:1
42:10,24
45:3,5,6,
14,15
48:10
49:25
50:23

**processes**
47:16

**produce**
4:18,24
12:19
18:17 23:6

**produced**
7:6,9,12,
15,16
13:7,16,
18,19
20:23,25
21:21 22:3
25:7 26:13
28:22
29:5,9,18
30:2,13
31:11
32:25
33:11
34:16
37:12,24
38:5 46:10
48:10

**product**
39:22 44:1

**production**
7:19 9:15
12:16 15:5
23:10,13,
21,22
30:24
37:16

**productions**
10:9

**productive**
49:21

**products**
21:24

**progress**
11:25

**properly**
11:19

**proportion**
22:13

**proportional**
15:25
19:15
41:13

**proposal**
8:1,5 11:5
22:6 40:15
42:6

**proposals**
42:5

**propose**
17:14
24:14,21

**proposed**
11:17

**proposing**
26:25

**protective**
17:6

**proto** 5:14,
17 7:21
39:21,23
40:1,10,11
41:5,8
42:11,17
43:1,14

**protos** 48:15

**provide** 4:21
10:12,21
11:12 12:7

20:9
27:13,20,
25 29:10
34:7,11,16
37:2 38:12
44:7 45:18

provided
4:11,14
5:7 15:20
25:17
43:12,14,
15,21 44:8
45:22
46:18
49:18 50:8
51:7

providing
13:24
19:13
22:11
25:12 47:8

provision
35:23

publisher
12:20 13:5
14:16,20,
24 15:6,
13,23
16:2,6,11,
14,19
17:7,22,25
18:4,16,22
19:7
20:12,13
21:9,19,22
22:2 24:9
29:21

32:10
34:3,6
35:2 37:4,
25 38:16
40:7 44:15

publishers
10:3
11:11,16
15:1,22
16:21
19:12,14,
18,23
21:23
22:15
23:19
24:17
25:12
27:13,22
28:8 32:25
36:9
37:17,21

publishers'
33:20

pull   12:12

pulls   10:19

purpose
6:21,24

pushing   37:3

put   3:24
4:11,16,23
36:4,24
47:10

putting   25:6
30:7

Q

QC   5:5

queries
10:25

query   7:1

question
8:18
15:10,11
24:13
28:25
32:13,17
44:23 45:2
46:10

questions
7:11 25:18
45:11,16
49:2 52:22

quicker
36:11

quickly
13:22 25:9
31:13
41:23

quote   47:7

R

raise   20:15

raised   39:13

ran   22:7

range   29:15

rapt   11:21

ratio   30:3

reached   22:6

readdress
27:8

real   31:13

realize
42:13

reason   8:7
40:14 52:4

reasonable
37:4

rebut   51:23

recall   7:8
13:12

receive
11:11
21:20

received
11:10

receiving
12:10

recent   12:16

reconcile
48:7,13,14

reconstitute
10:18

reconstruct
12:13
13:25

record   33:5

records
24:19 29:4

**CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.**
Hearing on 03/23/2022                Index: referencing..run

37:13

referencing
10:13

referring
18:2

refers   44:21

refine   9:4

reflect
47:25

refrain
52:22

regard   11:3
12:20
38:11

regularly
44:5

related
41:12

relates
22:13

relationships
36:15

relevant
5:15
19:19,20
25:3  47:22
52:9

remaining
9:21

remember
9:22

report   37:8
49:5

representation
43:6  44:25
45:18

represents
33:10
37:14

request
14:15
16:16
20:12
27:20
38:17 39:9

requested
43:13

requesting
40:7

require
14:15 15:1
16:14,19
17:24
22:2,3
24:10 34:6
36:12
37:21
38:16
50:11

required
12:12,14
16:11 18:4
21:19
32:24

requirements
17:3 24:20

requires
18:16

44:15

rerunning
13:21

reservation
17:9

reserve   10:2

reserving
14:22

resolve   5:21

resource
26:22

resources
19:4

respectfully
14:15
27:19

respective
4:18

respond
24:12

response
39:1

responsive
7:1 18:22
19:6,10
21:8,18
23:6,17,20
26:8,13
34:11

rest   3:24
14:12
32:10
47:25

restate
15:10

results
4:19,24
7:6 9:25
17:21
18:12 19:3
48:23

retention
52:12

returns
21:18

rights   14:22
17:9 18:19
19:22
24:23 27:1

roll   20:13

rolled   21:23

room   52:11

round   4:17
8:24
16:12,17
27:14 28:9
33:19 46:3

rounds   35:16

routes   50:20

ruled   18:21

ruling   20:8

run   10:25
13:22
29:12
31:10
44:13

CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.
Hearing on 03/23/2022    Index: running..shortfall

48:22

running
  21:7,16
  50:11

_____
        s
_____

Sadowski
  39:16 44:3
  45:24
  46:16

Sadowski's
  41:1 48:4

save  5:22

  ▮▮▮▮▮▮
  12:16

scenario
  41:24

SCHAPIRO  3:6
  52:21 53:5

schema  7:10,
  11,17,18,
  19 10:5
  22:8 38:25
  45:9 46:10
  47:23

schemas
  46:11

Schmidt  3:21
  4:9

scope  23:12,
  20

search  4:23
  7:4 8:20,

23,24 9:1,
9,21,23
12:6
13:17,18,
20 17:21
19:11
23:7,15
26:8,9
27:24
33:19
34:16 39:8
40:6 41:11

searched
  4:18 23:5
  26:10,11
  28:20
  30:14 31:4

searches
  3:16 4:13,
  17 5:4,15
  6:1 7:25
  8:12,14,24
  9:8,21,23
  10:18,19
  11:4,7,8,
  17 12:13,
  16 13:12,
  22,25
  14:14
  16:13,17
  17:4,24
  18:3,14
  20:4,11
  21:7,9
  23:24
  24:2,3,5,
  10,15,19,

22 25:5,
10,20
27:14
28:2,9
30:8,10,16
34:4,5,24,
25 35:1,16
38:11,18
39:10
44:13
45:21 46:3
48:23
50:22

searching
  24:1 31:20
  44:12

second-round
  28:2 34:5

seconds  46:8

seeking
  46:17

select
  19:21,23
  44:11
  48:22

selected  5:8
  16:21 17:8
  24:16,22

selecting
  16:13

selection
  10:1,2
  11:10,14

semblance
  3:22

send  4:12
  5:5 47:7

sending
  11:19

sense  13:3
  16:25
  21:11,13
  23:17
  34:20
  38:21
  51:24

sentences
  46:9,13

separate
  40:20
  52:19

sequel  24:6

served  6:21

servers
  23:25

services
  21:25

set  3:12
  7:16,18
  20:4 21:1
  24:15,20
  28:20 33:8
  34:2

sets  21:2

setting  7:24
  33:5

shortfall
  13:17

should've
  52:20

show  7:20

showed  6:2

showing  6:4,
  5,8,10
  48:6

side  5:3
  6:2 10:8
  13:18
  40:25 41:1

sides  14:22

similar  24:8
  37:16

similarly
  48:1

simplify  7:8

simply  13:20
  17:4 20:13
  22:10 46:9
  47:21,24

simultaneously
  32:14
  46:21
  49:11

single  16:2
  27:17 28:4

sir  50:19

sit  23:18

sits  5:12
  7:21

sitting  5:17
  23:25

situation
  30:1 36:3

size  32:23

slice-  37:12

slight  19:9
  49:4

slot  11:20

small  28:22
  30:12

softball
  35:9

solution
  14:21 17:8
  27:11

somebody's
  3:4

something's
  27:6

sophisticated
  22:17 36:9

sort  16:20

sought  46:17

sound  15:7

sounds  11:25
  37:6 49:17
  53:3

source  11:1
  21:17
  28:15 40:3
  43:13 49:6

sources
  4:18,23

16:14
26:11
29:20
38:13,19,
22 39:7,9
44:11 47:9
48:22
50:16,17

speak  28:4
  29:14

speaking
  32:14
  39:12
  46:21
  49:11

special  3:3,
  8 5:6 6:5,
  8,11,12,
  16,19 8:8,
  11,16,21
  9:2,3,7,
  10,13,17
  10:7,14,23
  11:19,22
  12:5,24
  13:2,10,12
  14:14,18
  15:9,16
  16:18,24
  17:16
  18:7,20
  20:17
  21:4,6,16
  22:16 23:1
  25:2,21,23
  26:3
  27:15,18

28:14,19,
24 29:17,
25 30:4,
18,21
31:8,24
32:2,8,15,
19 33:3,
17,23
34:1,10,
14,22
35:1,7,12,
18,20
36:7,19
37:6,22
38:2,8
41:12
42:10,14
44:12,18
45:3,4,5,
14,15
46:22
47:15
48:10
49:3,9,14,
17 50:13,
24 51:20
52:16
53:3,6

specific  7:4
  10:19
  12:12 16:4
  19:23
  21:16,17
  24:19,22
  29:23
  39:20,21
  40:3,4,14
  41:12,15

42:13
43:8,10,17
44:10
45:22
47:7,9
50:16 51:3

**specifically**
10:10
32:11
51:14

**spite** 14:3

**spoke** 45:20

**spoken** 36:10

**spreadsheet**
31:11 33:1

**stage** 3:12
25:11

**standard**
41:25

**stands** 45:25

**start** 25:16
31:25
52:13

**stating** 11:4

**status** 31:1
37:8 52:6

**storage** 17:2

**stored**
31:16,17,
22

**strategy**
23:6

**strictly**
8:14

**stringently**
27:23

**stripped**
22:7

**structure**
22:5,8
38:3 42:8

**stuff** 23:11,
23,24,25
29:8 30:25
31:4 34:2
38:4

**subject** 25:4
52:14

**submit** 18:2

**submitted**
52:23

**subset** 30:12

**substantial**
23:10 30:5

**subtract**
45:25

**successfully**
46:22

**suggested**
21:7

**supply** 8:23

**supposed** 9:8
11:11 14:8

**surfeit**
25:14

**surprise** 6:2

**surprised**
6:23

**swoop** 12:22
16:7,16
20:10

**systems**
23:22
30:25

———————

**T**

**tail** 22:1

**taking** 8:13
34:2,23

**talk** 47:4

**talked** 24:4
35:25

**talking**
8:11,12,
13,14 15:2
18:9,10,
11,12,13
20:18,20
21:1,3
22:10
28:16
30:20
31:4,6
34:24
35:11

**tangible**
46:13

**targeted**
24:20

25:4,10

**tasks** 14:8

**TBD** 11:25
13:4

**team** 14:14
16:18

**technical**
10:21 12:9
14:5

**tells** 14:6

**temperature**
20:15

**ten** 20:2
24:16
29:19 34:8

**term** 6:17

**terminology**
20:24
23:15 24:5

**terms** 13:16
14:23 17:6
21:11 22:4
37:4 38:15

**terribly**
6:23

**test** 9:24
35:5 50:11

**testified**
39:16 44:3
45:24
46:16

**testify**
43:19

CHASOM BROWN, ET AL. vs GOOGLE, LLC, ET AL.

testimony
  43:15
  45:25
  47:17
  50:15

testing
  35:15

tests  22:9

that'd  34:20

there'd
  47:10,11

thing  5:24
  9:14 14:21
  25:25
  28:12 39:3
  42:19,23
  51:25
  52:19

things  3:14,
  15 6:21,24
  21:7 28:13
  31:15
  40:11

thinking
  36:7 37:23

thinks  41:12

third-party
  19:7 21:9
  23:9 26:16
  29:6,21

thoughts  3:5

tied  40:3

time  4:22
  6:4 12:25

17:22 19:3
28:6 49:10
51:25 52:8

time-consuming
  25:11

timed  10:19

timeline
  10:10

times  14:11
  43:23

timing  12:2
  14:1,6
  18:24 19:8
  37:10

today  3:13,
  25 8:17
  10:22
  11:15 12:1
  16:20
  18:5,19
  22:24
  33:15 38:9

tooling  43:9

top  34:8
  36:22

topic  44:9
  45:19,24
  46:16
  49:19

totally
  52:17

tracking
  10:8,11
  15:18

traffic  52:5

tranches
  23:3

TRANSCRIPT
  53:9

Trebicka  3:7

trial  5:23

troubleshoot
  12:11

true  49:1

truth  14:8

turned  4:7
  34:12 35:2

Turner  36:14

typo  47:11

―――――――

U

Uh-huh  9:10
  10:14

ultimately
  5:21 7:20

UMA  9:23
  10:12
  12:6,16
  13:8 41:8

umbrella
  6:17

understand
  10:24 11:3
  19:22
  24:23
  26:20,22

36:10
38:5,7
49:14 51:4

understanding
  12:9 17:18
  19:5,11
  33:9 41:1
  48:15

Understood
  9:2

unduly  15:24
  19:13,14

unit  40:1,2

universal
  49:5

unpacking
  25:24

unsure  6:15

update  10:12
  13:24 46:9
  47:25

updates
  37:8,10

user  9:22
  13:19

users  43:25
  44:1

―――――――

V

values  10:5
  22:7 31:16
  41:7

variety

12:11

**vast**  24:18

**verge**  10:16

**versus**  33:11

**Viola**  3:7

**visiting**
 28:5

**volume**  52:5

———————————
         **W**
———————————

**wait**  44:18

**waiting**  9:15

**waived**  18:18

**waiving**
 19:22
 24:23 27:1

**wanna**  4:20
 8:3,23
 9:4,18,19
 10:10
 17:17
 31:16 33:4
 35:6,13,14
 51:22

**wanted**  3:12
 4:14 9:11
 10:11

**watching**
 51:2

**ways**  12:11
 22:19
 31:22

32:22

**website**  28:6

**weekend**
 10:17
 12:10 14:7

**weeks**  52:20

**window**  13:22

**wonderful**
 43:11

**word**  30:22
 48:25

**work**  4:8,25
 11:25 36:7
 40:18

**worked**  10:17

**working**
 14:1,7
 26:5

**wrap**  3:9

**wrestling**
 30:6

**write**  48:21

**writing**
 33:10 36:4
 48:20
 51:1,12,23
 52:2

**written**
 39:21 40:5
 41:10
 43:10
 44:10
 47:12,14

48:19,20

**wrong**  48:24

———————————
         **Y**
———————————

**yesterday**
 5:1 11:18
 33:2 50:18

**Yhere's**  17:6

**York**  36:9

**Young**  40:24

———————————
         **Z**
———————————

**Zoom**  3:2
 51:12

# EXHIBIT 4

# Sealed in Entirety

# EXHIBIT 5

# Sealed in Entirety

# EXHIBIT 6

# Redacted Version of Document Sought to be Sealed

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293 6858
Fax: (415) 999 9695

**SUSMAN GODFREY L.L.P.**
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

**MORGAN & MORGAN**
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Counsel for Plaintiffs; additional counsel listed in signature blocks below*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant; additional counsel listed in signature blocks below*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,

     Plaintiffs,

     v.

GOOGLE LLC,

     Defendant.

Case No. 4:20-cv-03664-YGR-SVK

**STIPULATION REGARDING GOOGLE'S** ███████████████████ **FIELD**

Judge:    Honorable Yvonne Gonzalez Rogers

1    Pursuant to Civil Local Rule 7-12, this joint stipulation is entered into between Plaintiffs

2  and Defendant Google LLC ("Google"), collectively referred to as the "Parties."

3    WHEREAS, on March 4, 2022, Plaintiffs served a Rule 30(b)(6) deposition notice seeking

4  testimony about the following topic:

5     Google's development, implementation, and use of any bit or field containing the word
      "incognito" or whose name has ever contained the word "incognito," or whose function
6     was intended to detect Incognito, including the following: ███████████,
      ███████████, ███████████, and ███████████. This Topic
7     includes the reasons why Google developed, implemented, and used any such bit or field.
      This Topic also includes the log or traffic sources as well as the design (including any
8     changes in design) used to determine the bit or field, as well as any logs or data sources
      where such a bit or field is used and how it is used.

9

10    WHEREAS, Google has offered to designate portions of Mr. Bert Leung's March 4, 2022

11 deposition testimony as Rule 30(b)(6) testimony in lieu of producing a witness to provide Rule

12 30(b)(6) testimony about the ███████████ field;

13    WHEREAS, pursuant to the Court's First Order on March 11, 2022 Joint Discovery Dispute

14 Chart (Dkt. 487), Plaintiffs submitted a proposed factual stipulation concerning the

15 ███████████ field to the court room deputy on March 15, 2022.

16    WHEREAS, on March 18, 2022, the Court ruled that "Topics 1-6 [in Plaintiffs' proposed

17 factual stipulation] are appropriate and can proceed either by stipulation or further deposition.

18 Google to notify Plaintiffs as to which option it selected by 3/18/2022 … Topics 7-12 are stricken

19 as beyond the scope of this line of inquiry." Dkt. 505-1 at 1.

20    WHEREAS, on March 18, 2022, Google notified Plaintiffs it agreed to proceed by

21 stipulation.

22    NOW THEREFORE, the Parties stipulate to the following facts, which shall be taken as

23 established for all purposes throughout this case.

24    1.    In May 2020, Google employees Chris Liao, Bert Leung, and Mandy Liu began

25         developing a simple heuristic-based method to approximately infer Chrome

26         Incognito traffic using existing signals in ad requests, and a boolean field to record

27         the outcome of this heuristic-based method.

28

2.  On or about March 11, 2021, Google employees drafted a logging proto to implement a boolean field called ███ that recorded the outcome of the aforementioned heuristic-based method.

3.  The following table identifies all Google logs where the ███ boolean field has been implemented, including Zwieback, GAIA, and Biscotti logs, as well as the date when the ███ boolean field was logged in each data source.

| Log containing ███ | Date source began logging data |
|---|---|
| ███ | June 17, 2021 |
| ███ | July 4, 2021 |
| ███ | July 4, 2021 |
| ███ | July 4, 2021 |
| ███ | June 17, 2021 |
| ███ | June 17, 2021 |
| ███ | June 17, 2021 |
| ███ | July 4, 2021 |
| ███ | July 4, 2021 |
| ███ | July 4, 2021 |
| ███ | July 4, 2021 |
| ███ | July 4, 2021 |
| ███ | July 4, 2021 |

| | July 4, 2021 |
|---|---|
| | July 4, 2021 |
| | June 17, 2021 |
| | June 17, 2021 |
| | June 17, 2021 |
| | June 17, 2021 |

4.    Bert              Leung                     implemented                the

████████████████████████████████████████████████████████

boolean field into the data sources and logs listed above in Paragraph 4.

5.    The Cookie Monitoring Dashboard for Search and Display Ad Serving that uses the

████████████████████████████████████████████████████████

boolean field was officially launched on March 2, 2022.

DATED:  April 11, 2022

QUINN EMANUEL URQUHART &             BOIES SCHILLER FLEXNER LLP
SULLIVAN, LLP

/s/                                          /s/
Andrew H. Schapiro (admitted *pro hac vice*)   Mark C. Mao (CA Bar No. 236165)
andrewschapiro@quinnemanuel.com        mmao@bsfllp.com
Teuta Fani (admitted *pro hac vice*)          Beko Reblitz-Richardson (CA Bar No.
teutafani@quinnemanuel.com             238027)
191 N. Wacker Drive, Suite 2700         brichardson@bsfllp.com
Chicago, IL 60606                      44 Montgomery Street, 41st Floor
Telephone: (312) 705-7400              San Francisco, CA 94104
Facsimile: (312) 705-7401              Tel: (415) 293 6858
                                       Fax: (415) 999 9695

Diane M. Doolittle (CA Bar No. 142046)   James W. Lee (*pro hac vice*)
dianedoolittle@quinnemanuel.com        jlee@bsfllp.com
Sara Jenkins (CA Bar No. 230097)        Rossana Baeza (*pro hac vice*)
sarajenkins@quinnemanuel.com           rbaeza@bsfllp.com
                                       100 SE 2nd Street, Suite 2800

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

Miami, FL 33130
Tel: (305) 539-8400
Fax: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

**[PROPOSED] ORDE**

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: _____, 2022            _____

                                        Honorable Susan van Keulen
                                        United States Magistrate Judge

## **ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this STIPULATION Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

_____ /s/