# GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS - BROWN

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON REFERRED DISCOVERY ISSUES (PRESERVATION PLAN)**<br><br>Referral: Hon. Susan van Keulen, USMJ |

Pursuant to the Court's April 4, 2022 Order (Dkt. 526), Google hereby responds to Plaintiffs' objections to the Special Master's Report and Recommendation on Referred Discovery Issues (Preservation Plan). Dkt. 546.

## I. THE COURT SHOULD ADOPT THE SPECIAL MASTER'S SAMPLING RECOMMENDATION

Sampling is the only practical solution for preserving event-level data from the relevant data sources identified by the Special Master, including ████████████████████████████████ ████████████████████████████████████████████, from which Google agrees to preserve data.[1] Instead of addressing the reality of the amount of data and the necessity of employing the sampling approach in the Special Master's Report & Recommendation, Plaintiffs improperly attempt to relitigate their motion for sanctions. Plaintiffs accuse Google of "conceal[ing] its development and implementation of technologies that Google has used since 2017 to identify private browsing activity," which they claim would have changed the course of this litigation. That is patently untrue. As the Court heard during the April 21, 2022 hearing, Google disclosed these "technologies" early in discovery. Dkt. 528 at 14. Plaintiffs obtained witness testimony and documents, and the parties litigated the reliability of these "technologies" to identify Chrome Incognito before this Court and the Special Master. After extensive technical briefing, the Special Master recommended denying further event-level discovery on their basis and the Court agreed. In any event, relitigating the sanctions motion has no place here because it is entirely irrelevant to the task at hand: determining the best way to preserve data for Plaintiffs' claims while appropriately balancing the twin goals of relevance and burden.

Wholesale preservation is not proportional to the needs of this case. Plaintiffs claim that Google has "offered zero evidence" of the burden associated with the preservation. Dkt. 546 at 3. That is incorrect; the Special Master ably mediated the preservation discussions to balance precisely

---

[1] The Special Master also identified ████████████████████████████████, which are only written when a user is signed in to a Google Account. Data in those logs or keyspaces is outside of the case scope because Plaintiffs' class definition continues to be expressly limited to signed out users. Dkt. 136-1 (SAC), ¶ 192; Dkt. 395-2 (TAC), ¶ 192.

1  Google's burden against any probative value of these sources, which led to the sampling approach
2  articulated in the Special Master's recommendation. To the extent there is any doubt,
3  Google's response should extinguish it: The selected data sources record many billions of entries a
4  day. Harting Decl. ¶ 3. The [REDACTED] that are not currently retained permanently alone
5  consist of more than [REDACTED] of data as of April 24, 2022, and continue to record more than
6  [REDACTED] per day. Id. ¶ 5. Preserving all the data in just these [REDACTED] would require
7  Google to store at least an additional [REDACTED] of additional data every thirty days. Plaintiffs'
8  demand that Google preserve *all* data in all the selected data sources implicates many multiples of
9  these amounts. Even if feasible, it would require immense engineering effort and cost to store and
10 safely host the ever-increasing amount of data for the remainder of the litigation. Id. ¶ 3.
11         Plaintiffs' proposal that Google "reduce its burden further by preserving only traffic for
12 which one of the 'incognito' bits is 'true' or for which there is no value in the 'X-Client-Data
13 Header' field" likewise does not resolve the preservation burden. Dkt. 546-3, ¶ 9. *First*, this would
14 *not* resolve the issue of preservation for the class. The bits that rely on the absence of the X-Client-
15 Data header approximately indicate only Chrome Incognito traffic—not private browsing traffic
16 from other browsers. In fact, even if Plaintiffs' method worked (it does not), preserving the traffic
17 without the X-Client-Data header field would still include all of the non-Chrome traffic, whether in
18 private browsing or not, because the X-Client-Data header is not sent from Safari, Firefox, or Edge.
19         *Second*, even if preservation were to focus on a skewed sample representing only the traffic
20 where the maybe_chrome_incognito "bits" that roughly approximate Chrome Incognito are set to
21 "true," the preservation burden would be significant. Among the b-logs in the Special Master's
22 report, seven write in the [REDACTED]
23 [REDACTED] (hereafter "maybe_chrome_incognito") field. Those seven logs alone
24 capture at least [REDACTED] entries with the maybe_chrome_incognito bit set to [REDACTED] each day.
25 Harting Decl. ¶ 6. The Special Master correctly chose sampling as an appropriate way to preserve
26 data. Plaintiffs have not and cannot make a showing to justify such categorical preservation.
27         Such unprecedented and costly preservation efforts would be grossly disproportionate to the
28 needs of this case. *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D.

Cal. Oct. 29, 2014) ("[T]he proportionality principle applies to the duty to preserve potential sources of evidence" in the same way it applies to the scope of discovery obligations under Rule 26."); Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015) ("perfection in preserving all relevant electronically stored information is often impossible."). Even the sampling proposal that the Special Master has recommended necessitates a significant engineering feat. It will require ▓▓▓▓▓▓▓▓▓▓ of engineering hours to ideate it, accomplish it, and to maintain it for the remainder of the litigation. Harting Decl. ¶ 7. But Google is willing to undertake the cost to resolve the preservation dispute as a reasonable solution tailored to the realities of this litigation.

Finally, Plaintiffs complain that preserving only a sample would "jeopardize Plaintiffs' ability to identify certain class members" and "deprive Plaintiffs and absent class members of key evidence showing their entitlement to relief," on the basis that Plaintiffs' expert Chris Thompson is purportedly able to identify users and evidence related to them using "IP address and user agent combinations." Dkt. 546 at 4. That is rank speculation. In fact, Mr. Thompson's testimony at the April 21, 2022 hearing undermined the very idea of Plaintiffs' ability to identify users and related data.[2] Mr. Thompson testified that IP addresses are not static over time, and confirmed that, even *if* he could identify a device (a dubious proposition given the instability of IP addresses), he is unable to identify the actual human behind a particular set of data when a device is shared by multiple people. Mr. Thompson's testimony also undermined Plaintiffs' bald statement that "Incognito traffic is readily linkable to individual users." The purported "tests" he ran simply confirmed the truism that an identified user Mr. Thompson knew was browsing in Incognito did not have an X-Client-Data header present for that browsing. Mr. Thompson confirmed that nothing in his tests proved the ability to identify Incognito users on the basis of browsing data where the X-Client-Data header was missing. That Plaintiffs' methods are speculative and unlikely to work is not new. These methods were thoroughly discussed (and discounted) during the Special Master preservation-related hearings. Mr. Thompson's testimony at the April 21, 2022 hearing is simply further proof that

---

[2] The April 21, 2022 hearing transcript is not yet available. Once the hearing transcript is available or at the May 3, 2022 hearing, Google will supply hearing transcript cites for the testimony paraphrased in this paragraph.

Plaintiffs' speculative say-so is an insufficient basis to order wholesale preservation and the Special Master's recommendation of preservation based on sampling was appropriate and justified.

However, to address Plaintiffs' concern putative class members may somehow be prejudiced as a result of data deleted in the regular course of business, Google is willing to stipulate that neither party can rely on the absence of preserved Google data to support or oppose any argument in subsequent proceedings.

## II. GOOGLE'S RESPONSE TO PLAINTIFFS' MODIFICATIONS AND OTHER OBJECTIONS

*Plaintiffs' Objection 1: "any random sample should include a sub-sample taken from traffic that has no X-Client-Data or is identified as Incognito by one or more of Google's Incognito bits." Dkt. 546 at 5.*

Google agrees to preserve a random subsample of events for which the "maybe_chrome_incognito" field is set to true or for which there is no value in the X-Client-Data header field, to the extent the selected data source writes in such fields. Google also agrees to preserve the ▮▮▮ dashboard data, which is based on is_chrome_non_incognito and is_chrome_incognito Boolean fields.

*Plaintiffs' Objection 2: "any random sample should be user-based, not log-based." Dkt. 546 at 5.*

The Special Master's recommendation is clear: Google should "[f]or each data source, preserve all records for 10,000 randomly selected US based UIDs from each data source for each day for which there is data." Dkt. 603-1 at 7. In accordance with this instruction, Google is prepared to preserve a daily sample of events associated with 10,000 UIDs randomly selected each day, for each selected data source for which there is data. Plaintiffs object, demanding a more privacy-invasive approach that the same UIDs be used each day (rotated weekly) across all data sources. This is wrongheaded for two reasons. First, it is not feasible because different data sources are keyed by different identifiers. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As Plaintiffs know after the extensive discovery on this issue, Google does not "fingerprint," or associate pseudonymous data with authenticated data. Therefore, Google

1  cannot do what Plaintiffs suggest, which is to identify a random sample of users and associate all of
2  their pseudonymous identifiers to use them to search across logs. Second, even using the same
3  pseudonymous identifiers to search each day will result in a more privacy-invasive approach,
4  because various users who may not even be putative class members will have their data preserved
5  over a longer period of time.

*Plaintiffs' Objection 3: "Google should not otherwise benefit from sampling." Dkt. 546 at 6.*

As stated above, Google is willing to stipulate that neither party can rely on the absence of preserved data to support or oppose any argument in subsequent proceedings.

*Plaintiffs' Objection 4: "Google should be required to preserve data from one additional source, the ▇▇▇▇▇▇▇▇." Dkt. 546 at 6.*

Google agrees to preserve sampled data from ▇▇▇▇▇▇▇▇.

*Plaintiffs' Objection 5: "Google should be required to preserve all mapping and linking tables." Dkt. 546 at 6.*

Plaintiffs ask that Google retain indefinitely all data stored in a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. PPIDs are identifiers that publishers provide to Google in a hashed or encrypted format, "such that it is meaningless to Google."[3] As Dr. Glenn Berntson testified, when Google receives the PPID value from the publishers, Google ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Berntson Depo Tr. at 120:12-16, Mar. 18, 2022. Notably, this Biscotti ID is not stored in a cookie on the user's browser. *Id.* at 122:23-24. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 121:9-11. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Preserving these tables indefinitely for *all* users is too extreme and privacy-violative a measure and should not be ordered. In any event, it would also be meaningless because the mapping table does not record the original PPID input.

*Plaintiffs' Objection 6: "Google should be required to preserve any and all encryption keys necessary to decrypt identifiers and cookies." Dkt. 546 at 6-7.*

---
[3] https://support.google.com/admanager/answer/2880055?hl=en.

1    As Dr. Berntson explained at a Rule 30(b)(6) deposition, encryption keys are a cornerstone
of Google's privacy program: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 175:12-21. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 177:19-22. Moreover, ▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Harting Decl. ¶ 8. Preserving encryption keys
could compromise privacy protections for users worldwide.

| | | |
|---|---|---|
| DATED: April 25, 2022 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By  */s/ Andrew H. Schapiro*
　　　Andrew H. Schapiro

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

|   |   |
|---|---|
| 1 | Josef Ansorge (admitted *pro hac vice*) |
| 2 | josefansorge@quinnemanuel.com |
|   | Xi ("Tracy") Gao (CA Bar No. 326266) |
| 3 | tracygao@quinnemanuel.com |
|   | Carl Spilly (admitted *pro hac vice*) |
| 4 | carlspilly@quinnemanuel.com |
|   | 1300 I Street NW, Suite 900 |
| 5 | Washington D.C., 20005 |
|   | Telephone: (202) 538-8000 |
| 6 | Facsimile: (202) 538-8100 |

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*