# REDACTED Version of Plaintiffs' Response to Google's Objections to Special Master Preservation Order

April 25, 2022

Submitted via ECF

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    Plaintiffs' Response to Google's Objections to Special Master Brush Report
              *Brown v. Google LLC*, Case No. 4:20-cv-03664-YGR-SVK (N.D. Cal.)

Pursuant to the Court's Order (Dkt. 526), Plaintiffs respectfully submit this response to Google LLC's ("Google") Objections (Dkt. 544) to the Special Master's Report and Orders on Referred Discovery Disputes (Dkt. 524) (the "Brush Report").

Google's Objections do *not* claim that the Special Master's Preservation Plan would create an undue *burden* on Google. Indeed, the word "burden" does not even appear in Google's Objections.

Instead, Google objects solely based on *relevance*, or "scope": According to Google, any log that is generated while a user is signed into his or her Google account is irrelevant because the user's activity, while signed in, is "outside of the case scope." Google is wrong because these signed-in logs contain an abundance of identifying information that Plaintiffs expect to use to identify class members' data in the *signed-out* logs.

The "signed out" logs (e.g., ██████ logs) contain the data showing what signed-out users did online while they were browsing in Incognito and other private-browsing modes. Google has no objection to preserving these "signed out" logs. *See, e.g.*, Rows 2-9.

One important purpose, of the Special Master process, was to "provide the *Brown* . . . Plaintiffs the tools to identify class members and their activities using Google's data." Dkt. 331 at 4. That purpose would be hindered if the Court were to uphold Google's objections to the Special Master's report and recommendation.

Relatedly, Google cannot be permitted to oppose discovery and delete data on the one hand, while advancing arguments on information and data that it never made available to Plaintiffs, on the other. *See, e.g.*, *Columbia Pictures Indus. V. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *7–8 (C.D. Cal. May 29, 2007); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). While ascertainability is not a requirement in the Ninth Circuit, *see Buffin v. Cty. & Cnty. of San Francisco*, 2018 WL 1070892, at *5 (N.D. Cal. Feb. 26, 2018) (Gonzales Rogers, J.) (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4, 1126 (9th Cir. 2017)), Google has previewed that it intends to raise it as a defense against class certification. Google should not be permitted to weaponize spoliation of relevant data.

### I. "Signed-In" Data Should Be Preserved Because it Will Help Identify Class Members in the "Signed-Out" Data (Rows 10-33, 44-45, 47-49)

Google objects to preserving the logs listed in rows 10-33, 44-45, and 47-49. Google's objections are all variations on the same theme: these logs are only "written" to "when a user is signed into a Google Account." *E.g.,* Row 10 Objection. Google then contends that the data in these logs "is outside of the case scope because Plaintiffs' class definition is expressly limited to signed out users." *Id.* This "scope" objection is without merit because Plaintiffs expect these logs to contain information relevant and helpful to identifying class members and their event-level transactions in the "signed-out" logs.

Google's "signed out" logs contain a number of identifiers that Plaintiffs expect to use to identify users even when the users are "signed out" of their Google accounts. These identifiers include: the IP address of the device the user is using; the "user agent string"; ████████ ████████████████████████████████████████████████████ But these identifiers may not be enough to identify certain class members. Some class members, for example, may not know the IP addresses of devices they were using years ago. Instead, Plaintiffs expect class members will

1

present (or Google will find) their GAIAs (Google Account IDs), so that they can obtain their IP addresses and ███████████ from the "signed in" logs.

The "signed in" logs that contain users' GAIA IDs will *also* contain the other identifiers that the users were assigned while in private browsing mode, e.g., IP address, "user agent string," ███████████, etc.[1] Those other identifiers (associated with the GAIA in the signed-in logs) can then, in combination, be used to identify the same class member in the signed-out logs.

To take one example: Suppose a class member was *signed in* for most of the day, exactly four years ago, on Wednesday, April 25, 2018. The "signed in" logs for that class member can be searched, relatively easily, by the class member's GAIA ID. Those "signed in logs" disclose the IP address, "user agent string," and other identifiers that were associated with the class member's signed-in activity on that day. Suppose further that, for 30 minutes that afternoon, the class member *signed out* of their Google accounts, entered Incognito mode, and shopped for engagement rings. That activity is part of the class member's claims in this case, and it will show up in the "signed out" logs. The signed-out logs will not contain the class member's GAIA IDs. So in order to find the class member in the signed-out logs, Plaintiffs expect to use the *other* identifiers associated with the class member's internet use that day, such as the combination of IP address and "user agent string." The signed-in logs are therefore helpful in finding those other identifiers that class members were assigned during the class period.

While ascertaining individual class members is not a requirement under *ConAgra Foods*, *supra*, Plaintiffs have nevertheless demonstrated, before the Special Master, that identifying class members' data this way in the "signed out" logs is possible to do. *See* Thompson Declaration in Support of Plaintiffs' Sanctions Motion, Dkt. 536-8, ¶ 25 (███████████████████████████████████████████████████████████████████████████████) (hereafter "Thompson Sanctions Decl."). Google's own engineers recognize ███████████████████████████████████████████████████████ *Id.* ¶ 27 (citing deposition testimony and internal Google documents, including an admission from a Google engineer who ███████████████████████████████████████████████████████████").

A year ago, this Court resolved a similar dispute in Plaintiffs' favor. Back then, Google was resisting production of Named Plaintiffs' so-called "unauthenticated" data. The Court ordered that data produced. The Court explained:

---

[1] Notably, Plaintiffs specifically request that Google be required to preserve all "Basic (Google) Subscriber Information" data within users' "Google Takeout" accounts. This contains subscriber information such as IP addresses and User Agent Strings associated with GAIA addresses, which Google account holders can usually download and request from their My Accounts. This should already be contained within the Special Master's recommendation for either "GAIA ████" or "Gaia ██." *See* Special Master's Report and Recommendation on Referred Discovery Issues, Dkt. 524, Row 44. However, Google never confirmed the source from where the service draws from, or what is within either of the ██ GAIA sources.

2

> Plaintiffs are asking for … pieces of information from different places because they want to see if they can piece together, by combination of that information, class members. And that's why – I mean, it seems to me that they have a right to try to do that with whatever information you have.

Apr. 29, 2021 Hearing Tr. at 19:2-7; *see also* April 30 Order (Dkt. 147-2 at 2) (ordering Google to produce the named Plaintiffs' "authenticated" and "unauthenticated" data). This Court reiterated this ruling during a June 2, 2021 hearing: "***there needs to be some way for the Plaintiffs to understand and to test or challenge whether or not the unauthenticated identifiers can be derived from the authenticated identifiers.***" June 2, 2021 Tr. at 33:1-7.

Without the signed-in logs, it could be more difficult (in some cases, far more difficult) to attribute activity in the signed-out logs to class members. For that reason, the Special Master correctly recommended that these signed-in logs be preserved. A defendant "may not attempt to avoid a class suit merely because [its] own actions have made the class more difficult to identify." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *see also Frlekin v. Apple Inc.*, 309 F.R.D. 518, 526 (N.D. Cal. 2015) (defendant cannot oppose "class certification due to a record-keeping problem of its own making"). Here, where Google is the one arguing that ascertainability is a requirement – which it is not under 9th Circuit law (see e.g., *see Buffin v. Cty. & Cnty. of San Francisco*, *supra*) – it is Google's obligation to preserve all evidence relevant to its alleged defense.

## II. ████████ Data Should Also Be Preserved Because it Will Help Identify Class Members (Row 51)

Google objects to preserving the data contained in ████████████████████████ Row 51. Google does not dispute that ████████████ contains relevant data generated when signed-out users visit third-party websites within a private browsing mode. Google merely contends that ████████████ does not contain "Google Analytics" or "Google Ad Manager" data. Google then argues that Plaintiffs are attempting to expand the scope of discovery to include the third amended complaint, where the class definition encompasses third-party browsing activity captured by tracking and advertising code besides Google Analytics and Google Ad Manger. *See* Row 51.

Google's objection misses the point. ████████████ contains a useful Google identifier called a ████████████, which is different from the other identifiers at issue. That identifier can also be used to identify class members' data in ████████ logs (logs tracking users' activity on non-Google websites). Google's own engineers admit as much: ████████████████████████████████████████████████████████████████████████

Dkt. 411 at 2 (citing GOOG-BRWN-00433503). Therefore, this data has always been relevant to Google's contentions about whether class members can be identified.

This Court has already resolved a similar discovery dispute, and did so *before* Plaintiffs' amendment was granted. Specifically, Google objected to Plaintiffs' Rule 30(b)(6) topic relating to identifying class members using ████████████. In February, this Court granted Plaintiffs' motion to compel the testimony. Dkt. 418-1 at 26 (Topic 5) (requiring Google to designate a witness). That discovery order was issued weeks before Plaintiffs' motion to amend was granted.

3

### III.     Google's Implicit Objection to Preserving ███████ Logs Should Be Rejected

As this Court is well aware from the evidentiary hearing on April 21, 2022, Google maintains at least ███████ logs" that contain the is_chrome_incognito and is_chrome_non_incognito detection bits. These logs are, obviously, highly relevant to Plaintiffs' claims. For example, the ████████████████████████████████████████████████████ Plaintiffs' Sanctions Reply Ex. 1, Dkt. 536-2. The Special Master recommended ███████████ be preserved. *See* Row 49.

Google's response to that recommendation is two-fold. First, Google states "No objection." Second, Google writes that it "agrees to preserve the ████ *dashboard data*." Row 49 Objection (emphasis added).

The second part of Google's response is an impermissible limitation on what must be preserved, and this Court should correct and clarify the scope of preservation now.[2]

The "dashboard data" that Google is agreeing to preserve is *aggregated* data. But Plaintiffs are entitled to not merely *aggregated* data but also the *event-level logs* themselves. Plaintiffs have already demonstrated that the ████████ are "event-level logs" that contain "event-level Incognito usage data." Thompson Sanctions Decl., Dkt. 536-8, ¶¶ 21-22; *see also id.* ¶¶ 8-16 (describing two experiments demonstrating the usefulness of such event-level data). Special Master Brush was well aware of this based on the parties' extensive discussions with him. There is no possibility that Special Master Brush intended to recommend *only* the preservation of the aggregate "dashboard data," and not to recommend also preserving the event-level ██████ logs that feed into those dashboards.

The usefulness of event-level data from these ██████ logs is further shown by ████████ ████████████████████████████████████████████████████████████████████. *See* Thompson Declaration in Support of Plaintiffs' Response to Google's Objections ("Thompson April 25 Declaration"), concurrently filed herewith. Mr. Thompson has already analyzed the data that Google produced on April 22 (one day after the April 21 hearing on Plaintiffs' sanctions motion) and █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ Thompson April 25 Declaration ¶ 11.

In order to dispel any possible confusion on this point, Plaintiffs respectfully request that this Court's order make clear that Google must preserve not o*nly* the "dashboard data" but *also* the event-level ██████ logs themselves.

---

[2] Plaintiffs asked Google to clarify whether Google was in fact objecting to preserving the event-level data from the ██████ logs. Google did not respond.

### IV. Other Sources to Be Discussed at the Hearing

As Plaintiffs had noted in their Objections to the Special Master's Preservation Plan, there is an additional data source the Plaintiffs request be preserved. Dkt. 546 at 7. Although Plaintiffs believe that they identified the correct source (i.e., ▆▆▆▆▆▆▆▆), there may be two other permutations of this same log that should be considered,[3] especially if the Court is considering a customized log. *See* Dkt. 546 at 4. Plaintiffs do not have much information on these two sources, and suggest that this be discussed at the hearing.

In addition, especially after the Order to Show Cause Hearing on April 21, the Court may be best served at the May 3 hearing with assurances from Google that there are no other gaps in what Google has identified. For example, while it appears that the Special Master has identified the relevant Google Analytics logs that contain the ▆▆▆▆▆▆▆▆▆▆, it is unclear if the linking information for these identifiers are in the same logs.[4] Google has not yet produced the ▆▆ search results for Iterative Search 3 with the Special Master that would give further insight.[5] Google should be prepared to answer such questions at the hearing.

Dated: April 25, 2022

SUSMAN GODFREY L.L.P.

By: /s/ *Amanda Bonn*
Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch, CA Bar No. 342125
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP

---

[3] ▆▆▆▆▆▆▆▆ and ▆▆▆▆▆▆▆▆.

[4] For example, Stephen Chung of Google testified on March 10, 2022, that the ▆▆▆▆▆▆▆▆▆▆ log and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ contain the joining data for ▆▆▆▆▆▆

[5] As Plaintiffs noted at the Order to Show Cause hearing – which Google did not dispute – Google did not finish the Iterative Searches before the opening expert reports. Further, Google does not plan to complete its production for Iterative Search 3 until May 20, the same day that the expert rebuttal reports are due.

5

44 Montgomery Street, 41ˢᵗ Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2ⁿᵈ Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32ⁿᵈ Floor
New York, NY  10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*