**Redacted Version of Document Sought to be Sealed**

**ORDER ADOPTING IN PART AND MODIFYING IN PART THE SPECIAL MASTER'S REPORT AND RECOMMENDATION ON REFERRED DISCOVERY ISSUES RE PRESERVATION PLAN**

UNITED STATES
DISTRICT COURT
Northern District of
California

# FAX TRANSMISSION

| **TO:** | | **FROM:** | Justine          Fanthorpe |
|---|---|---|---|
| **FAX NUMBER:** | 94158756700 | **NO. OF PAGES:** (INCLUDING COVER): | 13 |
| **PHONE:** | | **DATE:** | 2022-05-20 |
| **RE:** | Brown v. Google, 20-3664 | **TIME:** | 13:47:01 |

**SUBJECT:**    Brown v. Google, 20-3664

**DETAILS:**

**Justine Fanthorpe**
CRD to Magistrate Judge Susan van Keulen
280 South First Street, Room 2112
San Jose, CA 95113
United States District Court
Northern District of California
https://cand.uscourts.gov
Justine_Fanthorpe@cand.uscourts.gov
Office: 408-535-5375

2022/05/20 13:47:01    2  /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 3 of 14
Case 4:20-cv-03664-YGR   Document 587 *SEALED*   Filed 05/20/22   Page 1 of 9

1

2

3                    UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5

6    CHASOM BROWN, et al.,              Case No.  20-cv-03664-YGR   (SVK)

7            Plaintiffs,                **FILED UNDER SEAL**

8        v.                             **ORDER ADOPTING IN PART AND
                                        MODIFYING IN PART THE SPECIAL**
9    GOOGLE LLC,                        **MASTER'S REPORT AND
                                        RECOMMENDATION ON REFERRED**
10           Defendant.                 **DISCOVERY ISSUES RE
                                        PRESERVATION PLAN**
11
                                        Re: Dkt. Nos. 524, 543-546, 558-561
12

13           The Court has reviewed the Special Master's Report and Recommendation on referred

14   discovery issues relating to Google's preservation of data ("Report") (*Brown* Dkt. 524)[1] and the

15   Parties' objections and responses thereto (*Brown* Dkts. 543-546; 558-561), as well as voluminous

16   previous briefing relating to preservation issues submitted to the Court and to the Special Master.

17   In addition, on May 3, 2022, the Court held a hearing on the Parties' objections to the Report.

18   **I.      Relevant Background**

19           Because it informs this Court's rulings below, the Court provides brief context for the

20   Report and summarizes the history of the discovery disputes in both the *Brown* and *Calhoun*

21   actions that relate to Google's preservation of data, the subject of the Report.

22           The *Brown* and *Calhoun* cases are both putative class actions alleging, *inter alia*, violation

23   of privacy rights by Google arising out of Plaintiffs' use of the Google search engine.   A

24   significant challenge in these cases, where the universe of available data is stratospheric and even

25   the sub-universe of relevant data is unfathomably vast, is finding the balance between accessibility

26

27

28   _____
     [1] The Special Master's recommended preservation plan for *Brown*, which was attached to his
     Report (*Brown* Dkt. 524-1), is attached to this Order as Exhibit A.

*United States District Court*
*Northern District of California*

2022/05/20 13:47:01     3   /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 4 of 14
Case 4:20-cv-03664-YGR   Document 587 *SEALED*   Filed 05/20/22   Page 2 of 9

1    of relevant data and proportionality required under Rule 26. The self-evident impracticality of any

2    party managing every bit of available data is a further challenge.

3        On November 12, 2021, this Court adopted, as modified, the first Report and

4    Recommendation of the Special Master, which provided a complex and detailed process for the

5    identification and production of data from the universe described above. Dkt. 331. As a result of

6    that process (described here in vastly simplified terms), sources of data, known to the Parties, the

7    Special Master and the Court as logs, were identified and then, from specific data fields within

8    those logs, data was produced. It is the preservation of those data sources and fields for the

9    remainder of the litigation that is the subject of the Report.

10       Turning to the relevant history of the preservation issue,[2] on March 23, 2021, the Parties in

11   this case submitted a joint letter brief regarding a dispute over Google's obligation to preserve

12   records of its collection and use of private browsing data. *Brown* Dkt. 118-4. Plaintiffs requested

13   to modify the ESI Order (*Brown* Dkt. 91) to ensure Google's preservation of relevant data. *Id.* In

14   an order dated April 5, 2021, the Court stated:

> Discovery completed thus far indicates that there may be preservation and
> production obligations arising out of certain "systems, server and network logs."
> That issue is currently being addressed in related case *Calhoun v. Google LLC,*
> Case No. 20-cv-5146-LHK, and determinations made in that case are likely to
> impact this case. The Court will address this issue with the Parties at the hearing
> on April 13 [2021]. For now, it will suffice to note that the Parties will be bound
> by any order of this Court as to obligations to preserve and produce evidence, and
> such orders may well supersede the ESI Order.

20   *Brown* Dkt. 125.

21       After the Parties identified disputes concerning Google's preservation of server logs in an

22   April 7, 2021 joint discovery submission (*Brown* Dkt. 129 at 2-3), the Court, following a hearing,

23   again noted that this issue had been the subject of prior briefing and orders in *Calhoun*. *Brown*

24   Dkt. 133-1 at 3-4. The Court required Google to produce certain materials from the *Calhoun* case

25   to the *Brown* Plaintiffs. *Id.*

26

27   _____
     [2] In addition to the relevant history set forth herein, essential background facts are also set forth in
28   the Report §§ I & II. The Court has reviewed and adopts these findings.

United States District Court
Northern District of California

2022/05/20 13:47:01    4  /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 5 of 14
Case 4:20-cv-03664-YGR   Document 587 *SEALED*   Filed 05/20/22   Page 3 of 9

1    Following production of the *Calhoun* materials as ordered by the Court, the Parties again

2    included a dispute about preservation of Google server logs in their April 23, 2021 joint discovery

3    submission. *Brown* Dkt. 139-4 (Issue P4).[3]  Following a hearing, the Court issued an order on

4    April 30, 2021 that for Issue P4 cross-referenced an order issued in *Calhoun*. *Brown* Dkt. 147-1

5    (Issue P4).  The April 30, 2021 order in *Calhoun* stated that "[b]ased on the facts currently before

6    the Court … Google need not suspend its standard retention periods applicable to data logs that

7    reflect event-level data of Chrome users in the United States." *Calhoun* Dkt. 174.  The Court also

8    stated that its order was without prejudice to Plaintiffs' ability to raise a challenge based on new

9    evidence. *Id.*

10    As discovery progressed, issues regarding Google's preservation of data were again raised

11    in several of the Parties' submissions on discovery issues and case management. *See, e.g., Brown*

12    Dkt. 176-4 (Issue P4), Dkt. 275 (Section VI of Joint Case Management Statement), Dkt. 410-3 at

13    20-22 (Topic 9).  In *Brown*, the Parties' final chart of discovery disputes dated March 11, 2022

14    again raised preservation issues, which the Court indicated were before the Special Master. *Brown*

15    Dkt. 484-1 (Issue P37); 487-1 (same).

16    Similarly, the Parties in *Calhoun* raised disputes concerning preservation of data. *See, e.g.,*

17    *Calhoun* Dkt. 313-4 (Issue 2.1).  The issue of data preservation in *Calhoun* was referred to the

18    Special Master following a discovery hearing on September 30, 2021. *See Calhoun* Dkt. 329.

19    In January and February 2022, the Special Master held a number of conferences with all

20    Parties concerning the need for the Parties to develop proposals for a preservation plan. *See*

21    Report § II.6.  At a February 28, 2022 discovery hearing before the Court held jointly in *Brown*

22    and *Calhoun*, the issue of preservation was discussed, and the Court ordered the Parties to work

23    through the issue before the Special Master over the following few days. *Brown* Dkt. 451 (Feb.

24    28, 2022 Hearing Tr.) at 78-80.

25    This discussion at the February 28 hearing was memorialized in the Court's March 1, 2022

26    order on discovery disputes in *Calhoun,* in which the Court ordered the Parties to meet and confer

27

28    [3] The issue numbers refer to the Parties' numbering of their discovery disputes in earlier Court
filings. *See, e.g., Brown* Dkt. 139-4; *see also Calhoun* Dkt. 164.

United States District Court
Northern District of California

2022/05/20 13:47:01    5   /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 6 of 14
Case 4:20-cv-03664-YGR   Document 587 *SEALED*   Filed 05/20/22   Page 4 of 9

1   with the Special Master beginning March 1, 2022 regarding a preservation plan and to submit a

2   preservation plan by March 3, 2022. *Calhoun* Dkt. 516-1 (Issue 2.1). The Court authorized the

3   Special Master to grant a brief extension of this deadline if progress was being made. *Id.*

4   Following an extension granted by the Special Master, the Court's March 15, 2022 order in

5   *Calhoun* required the Parties to reach closure on a preservation plan by March 18, 2022. *Calhoun*

6   Dkt. 565-1 (Issue 2.1); *see also Calhoun* Dkt. 579-1 (same). Reflecting the fact that the Special

7   Master and the Parties had been working to formulate a preservation plan that would cover both

8   the *Brown* and *Calhoun* cases, the Court's March 15, 2022 order in *Brown* likewise ordered the

9   Parties to reach closure on a preservation plan no later than March 18, 2022. *Brown* Dkt. 487-1

10  (Issue P37); *see also Brown* Dkt. 505-1 (same).

11          By the March 18 deadline, it was apparent that, despite months of directives and input

12  from the Special Master, the Parties in both *Brown* and *Calhoun* were not only unable to agree

13  upon a preservation plan but were either incapable or unwilling to agree upon a basic approach to

14  present to the Special Master for his evaluation. Even so, the Special Master continued for several

15  more days to attempt to obtain proposed preservation plans from the Parties. Report § II.12.

16  Finally, on March 28, 2022, the Special Master informed the Court that he did not believe a

17  negotiated compromise could be reached in either case and that he would develop preservation

18  plans for both cases. *Id.* § II.13.

19          Accordingly, the Special Master drafted the preservation plan as set forth in the Report.

20  *Brown* Dkt. 524-1. In general terms, the plan in *Brown* provides for preservation of samples of

21  data and set forth the parameters for such sampling. The plan has two components: (1) a list of

22  seven general instructions that set forth parameters for preservation such as time frame, sample

23  sizes and scope of basic terms; and (2) a list of data sources covered by the plan. *Id.*

24          The Special Master submitted the preservation plans to the Court as a Report and

25  Recommendation. *Brown* Dkt. 524. The Parties had an opportunity to first object and to then

26  respond to their opponents' objections. *Brown* Dkts. 543-546, 558-561. The Court held a hearing

27  on May 3, 2022.

28  ////

United States District Court
Northern District of California

4

2022/05/20 13:47:01 6 /13
Case 4:20-cv-03664-YGR Document 592-3 Filed 05/31/22 Page 7 of 14
Case 4:20-cv-03664-YGR Document 587 *SEALED* Filed 05/20/22 Page 5 of 9

## II. De Novo Review and Findings

- The Report reflects a mix of factual findings and procedural matters. Rule 53 requires this Court to review factual findings de novo; procedural matters, however, are reviewed only for an abuse of discretion. Rule 53(f)(3), (5). As this issue has a long and contentious history, the Court has not parsed substantive from procedural conclusions but rather has reviewed de novo all conclusions of the Special Master reflected in the Report. The Court has taken great care to reconsider the preservation instructions and data sources identified in the Report. In so doing, Court has kept in sharp focus the requirements of Rule 26(b)(1) as it relates to the allegations, the proposed class definitions, and the defenses in these actions. Pursuant to its de novo review, the Court finds that despite extensive efforts and repeated warnings by the Special Master, the Parties failed and refused to engage in constructive collaboration to develop a reasonable, mutually agreeable preservation plan, which forced the Special Master to develop the preservation plan set forth in the Report.

- In developing the preservation plan that is the subject of the Report, the Special Master appropriately took into account the burden of preserving the relevant data sources. *See, e.g.,* Report § 12. From working with the Parties intensively on issues regarding the identification of data sources and production of data pursuant to the Court's November 12, 2021 Order adopting in part and modifying in part the Special Master's previous Report and Recommendation on those issues (Dkt. 331), the Special Master has extensive familiarity with the nature and scope of data sources that are relevant to this case. The Special Master's experience in this regard, along with the record developed over the course of litigation in this case and *Calhoun,* establishes the extraordinary burden to Google associated with preserving, in their entirety, the wide range of data sources that have been identified in these cases. *See* Brown Dkt. 118-4 at 3 (3/23/21 Joint Letter Brief re Log Preservation); Brown Dkt. 558-6 (4/25/22 Harting Decl.) ¶¶ 2-6;[4] Calhoun Dkt. 108-6 (2/17/21 Golueke Decl.) ¶10.

---

[4] Plaintiffs objected to Harting Declaration at the May 3, 2022 hearing (transcript not yet

United States District Court
Northern District of California

2022/05/20 13:47:01   7  /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 8 of 14
Case 4:20-cv-03664-YGR   Document 587 *SEALED*   Filed 05/20/22   Page 6 of 9

United States District Court
Northern District of California

- Pursuant to its de novo review, the Court finds that the preservation plan set forth in the Report, with the modifications set forth below, strikes an appropriate balance between the need to preserve relevant data sources in an immense universe of data, without imposing undue burden and with careful consideration for the practical challenges to both Parties to manage vast data sets.

- Before the May 3, 2022 hearing on the Parties' objections to the Report, the Court instructed the Parties to be prepared to address the following issues at the hearing: (1) How Plaintiffs intend to support class certification and whether the preservation plan affects that approach and, if so, how; (2) How the preservation plan impacts support of or challenges to liability and damages; and (3) What specific alternatives ameliorate any issues identified in response to the inquiries above? *Brown* Dkt. 567. In addressing these issues at the May 3 hearing, counsel for the *Brown* Plaintiffs stated that the *Brown* Plaintiffs do not intend to rely on sampled data or other data that Google has not produced to identify potential class members.

- Against this background, the Court has reviewed the Parties' objections to the preservation plan and, pursuant to its de novo review, rules as set forth below.

### *Brown* **Plaintiffs' Objections (*see* Dkts. 545-546)**

1. Objection to limiting preservation obligations to only a random sample of users (Objection I):

   - **OVERRULED as overbroad and not proportional to the needs of the case**, except that any data sources that are currently being preserved without regard to sampling

---

available) and in their belated request to file a supplement to their motion for sanctions (Dkt. 582-4). Assuming there was a timely objection, it is **OVERRULED**. The Harting Declaration concerns the burden of preservation. This topic was well known to all Parties and one on which Plaintiffs have had the opportunity to depose witnesses. The fact that this specific witness on the issue of burden was not identified is not prejudicial to Plaintiffs.

6

2022/05/20 13:47:01    8  /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 9 of 14
Case 4:20-cv-03664-YGR   Document 587 *SEALED*   Filed 05/20/22   Page 7 of 9

1    pursuant to prior court orders must continue to be preserved.  In addition, Google may not

2    shorten the existing data preservation period for any data source identified in the

3    preservation plan without the **express** permission of the Court, until this case has

4    concluded.

5    2.  Request for modifications to the recommended sample-based preservation plan

6        (Objection II):

7            a.  Any random sample should include a sub-sample taken from traffic that has no *X-*

8                *Client-Data* or is identified as Incognito by one or more of Google's Incognito-bits.

9                – **OVERRULED as overbroad and not proportional to the needs of the case.**

10           b.  Any random sample should be user-based, not log-based.

11               – **OVERRULED as infeasible and as such overbroad and not proportional to**

12               **the needs of the case.**

13           c.  Google should not otherwise benefit from sampling.

14               – **SUSTAINED** as follows: Google may not use the fact that only sampled data,

15               not complete data, is available to challenge class certification generally or

16               attestations by individuals that they are members of the class.

17

18   3.  Remaining objections:

19           a.  Google should be required to preserve data from one additional source, the

20               ""

21               – **SUSTAINED**: Three "█████████████" will be added to the set of data sources

22               which will be preserved using the sample-method laid out in the Report:

23                           i.   "█████████████"

24                           ii.  "█████████████████"

25                           iii. "████████████████"



26               Where any of these three data sources have a "forever" retention period, that

27               retention period may not be changed without the express permission of the Court

28               until this case has been resolved.

United States District Court
Northern District of California

2022/05/20 13:47:01 9 /13
Case 4:20-cv-03664-YGR Document 592-3 Filed 05/31/22 Page 10 of 14
Case 4:20-cv-03664-YGR Document 587 *SEALED* Filed 05/20/22 Page 8 of 9

b. Google should be required to preserve all mapping and linking tables.

&mdash; **SUSTAINED**: Mapping and Linking tables are to be preserved in their entirety.

c. Google should be required to preserve all encryption keys necessary to decrypt identifiers and cookies.

&mdash; **SUSTAINED**: De/Encryption keys are to be preserved in their entirety for the respective time periods ("rotating keys") and data sources.

**Google's Objections (*see* Dkts. 543-544)**

1. Google's objections to preservation of specific data sources identified on the list of 60 data sources:

&mdash; **OVERRULED, except has noted below, as Google had the opportunity to address specific data sources in the intra-party negotiations**:

a. Index 1 – Google is to preserve in the manner prescribed in the Report the data source, " "

b. Where items have been noted as duplicates, Google is to preserve only a single entry of that duplicate item or items in the manner prescribed in the Report.

c. Where Google has provided an alternate naming convention for any item provided in the Report, Google is to preserve the data source based on the corrected name provided in Google's objections

d. For GAIA Kansas, ZWBK Kansas – Google's objection is **SUSTAINED**

2. Google's proposed mutual stipulation that neither party uses the absence of data in argument:

&mdash; **OVERRULED. Plaintiffs do not agree, and the Court finds no basis to limit Plaintiffs' arguments regarding the data.**

## III. CONCLUSION

Accordingly, the Court adopts the Special Master's Report as modified herein and **ORDERS** the Parties to proceed as set forth in the Report (as modified).

United States District Court
Northern District of California

2022/05/20 13:47:01    10  /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 11 of 14
Case 4:20-cv-03664-YGR   Document 587 *SEALED*   Filed 05/20/22   Page 9 of 9

1       **Prior to final disposition of this case, Google may not shorten any data preservation**

2  **length for any data source already being preserved pursuant to Google data retention policy**

3  **or pursuant to prior court orders, or for any data source included in this preservation plan**

4  **as set forth in this Order, and Google may not otherwise modify the preservation plan as set**

5  **forth in this Order without the express permission of the Court.**

6       **SO ORDERED.**

7  Dated: May 20, 2022

8

9  _Susan van Keulen_

10      SUSAN VAN KEULEN
    United States Magistrate Judge

United States District Court
Northern District of California

9

2022/05/20 13:47:01    11 /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 12 of 14
Case 4:20-cv-03664-YGR   Document 587-1 *SEALED*   Filed 05/20/22   Page 1 of 3
Exhibit A to Special Master Report re: Preservation Plan - Brown

| Item No. | Preservation Instructions |
|---|---|
| 1 | Preserve data per data source going back to the first available entry or to July 27, 2016, whichever is later, and continue into the future until this litigation has concluded. |
| 2 | For each data source, preserve all records for 10,000 randomly selected US based UIDs from each data source for each day for which there is data (i.e. retrospectively to the earliest records available in the data source, continuing indefinitely into the future until this litigation has concluded). |
| 3 | Preservation of records to include every field contained in every record selected |
| 4 | Preservation is not to be based on any search criteria other than that the UIDs are US based and that the product (where data sources contain records for more than one Google product) is one of those listed in item number 7 below, but only upon record being selected as one of those generated by one of the 10,000 randomly selected UIDs for each day data is available in the data source. |
| 5 | Wipeout instructions are to be honored (without regards to Google identifying or not identifying account as a class member). |
| 6 | Data dictionary and schema for each preserved data source is to be preserved. Any change to data dictionary and/or schema is to preserved along with the date that changes were made. |
| 7 | Where a listed data source serves as a repository for multiple products, at a minimum, records for the following products will serve as the base for the selection of UIDs for random record selection: Display Ads, Google Analytics, Google Ads, YouTube, and Google APIs. |

2022/05/20 13:47:01   12 /13
Case 4:20-cv-03664-YGR   Document 592-3   Filed 05/31/22   Page 13 of 14
Case 4:20-cv-03664-YGR   Document 587-1 *SEALED*   Filed 05/20/22   Page 2 of 3
Exhibit A to Special Master Report re: Preservation Plan - Brown

| Index | Log Source | Data Source | Possible Duplicate Data Source | Alternate Name or Notes |
|---|---|---|---|---|
| 1 | Analytics Log | | | This Data source name may have been truncated. If there are more than 3 data sources with this "root", please advise Plaintiffs and they may select up to three of these data sources for preservation in the same manner as the other data sources identified herein.<br><br>This data source may have been provided in the 9/17/21 submission as: |
| 2 | Display Ads Logs | | | |
| 3 | Display Ads Logs | | | |
| 4 | Display Ads Logs | | 7 | |
| 5 | Display Ads Logs | | 8 | |
| 6 | Display Logs | | | |
| 7 | Display Logs | | 4 | |
| 8 | Display Logs | | 5 | |
| 9 | Display Logs | | | |
| 10 | GAIA Logs | | | |
| 11 | GAIA Logs | | | |
| 12 | GAIA Logs | | 24 | |
| 13 | GAIA Logs | | 25 | |
| 14 | GAIA Logs | | 26 | |
| 15 | GAIA Logs | | 27 | |
| 16 | GAIA Logs | | 28 | This Data source name may have been truncated. If there are more than 3 data sources with this "root", please advise Plaintiffs and they may select up to three of these data sources for preservation in the same manner as the other data sources identified herein |
| 17 | GAIA Logs | | 29 | |
| 18 | GAIA Logs | | 30 | |
| 19 | GAIA Logs | | 31 | |
| 20 | GAIA Logs | | 32 | |
| 21 | GAIA Logs | | 33 | |
| 22 | GAIA-Keyed Logs | | | |
| 23 | GAIA-Keyed Logs | | | |
| 24 | GAIA-Keyed Logs | | 12 | |
| 25 | GAIA-Keyed Logs | | 13 | |
| 26 | GAIA-Keyed Logs | | 14 | |
| 27 | GAIA-Keyed Logs | | 15 | |
| 28 | GAIA-Keyed Logs | | 16 | |
| 29 | GAIA-Keyed Logs | | 17 | |
| 30 | GAIA-Keyed Logs | | 18 | |
| 31 | GAIA-Keyed Logs | | 19 | |
| 32 | GAIA-Keyed Logs | | 20 | |
| 33 | GAIA-Keyed Logs | | 21 | |
| 34 | Other Ads Logs | | | |
| 35 | Other Ads Logs | | | |

Exhibit A to Special Master Report re: Preservation Plan - Brown

| Index | Log Source | Data Source | Possible Duplicate Data Source | Alternate Name or Notes |
|-------|-----------|-------------|-------------------------------|------------------------|
| 38 | Search Ads Logs | | | |
| 39 | Search Ads Logs | | | |
| 40 | Search Logs | | | |
| 41 | Search Logs | | | |
| 42 | Search Logs | | | |
| 43 | | | | |
| 44 | | | | |
| 45 | | | | |
| 46 | Unknown | | | |
| 47 | | | | |
| 48 | | | | |
| 49 | | | | |
| 50 | Unknown | UMA Logs | | |
| 51 | | | | |
| 52 | Unknown | | | |
| 53 | Unknown | | | |
| 54 | Unknown | | | |
| 55 | Unknown | | | |
| 56 | Unknown | | | |
| 57 | Unknown | | | |
| 58 | Unknown | | | |
| 59 | Unknown | | | |
| 60 | Unknown | | | |