# GOOGLE LLC'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE FOR WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT

## Redacted Version of Document Sought to be Sealed

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, *et al.*, individually and on behalf of all similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**[GOOGLE LLC'S PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' REQUEST FOR AN ORDER FOR GOOGLE TO SHOW CAUSE FOR WHY IT SHOULD NOT BE SANCTIONED FOR DISCOVERY MISCONDUCT**<br><br>The Hon. Susan van Keulen |

## I. INTRODUCTION

Plaintiffs Chasom Brown, *et al.* ("Plaintiffs") filed this motion seeking evidentiary and monetary sanctions against Defendant Google, LLC ("Google") for alleged discovery failures by Google that Plaintiffs claim violated orders of this Court.

At the Court's request (Dkt. 443), Google proposes the following findings of fact and conclusions of law.

## II. PLAINTIFFS' REQUEST FOR SANCTIONS

1. Pursuant to Federal Rule of Civil Procedure 37(b), Plaintiffs move for three sanctions:

2. First, they ask the Court to "[t]ak[e] as established for purposes of the action that (A) Google can detect event-level Incognito traffic within its logs, (B) this Incognito data is linkable to users, so that (C) the class is ascertainable." Mot. 3.

3. Second, they ask the Court to "[i]nstruct[] the jury that 'Google concealed and altered evidence regarding its ability to identify Incognito traffic.'" *Id.*

4. Third, they ask the Court to "[r]equire Google to reimburse Plaintiffs for all fees that have been paid and will be paid to Special Master Brush." *Id.*

5. Plaintiffs premise their motion on the allegation that Google concealed that certain Google engineers created and logged a bit called "maybe_chrome_incognito_DO_NOT_USE_WITHOUT_CONSULTING_ADS_IDENTITY_TEAM," (referred to herein as "maybe_chrome_incognito" for simplicity), that Google failed to identify for Plaintiffs the names of logs storing the bit in a Google declaration ordered by the Court, and that Google altered a produced log schema to remove reference to it. *Id.*

6. In supplemental briefing, Plaintiffs also allege that Google concealed two other bits called "is_chrome_non_incognito_mode" and "is_chrome_incognito." Supp. 1.

7. Plaintiffs allege that Google's conduct violated this Court's November 12, 2021 discovery order, Dkt. 338.

## III. EVIDENTIARY OBJECTIONS

8. Google objects to the declarations of Mark C. Mao in support of Plaintiffs' motion. Specifically, Google objects to paragraphs 3–12, 15–23, 25, and 27–31 of the Declaration of Mark C.

1  Mao in Support of Plaintiffs' Request for an Order to Show Cause (Dkt. 429-3) and Paragraphs 4–8,
2  10–11, 14–16, 19, 22–24, and 26–30 of the Second Declaration of Mark C. Mao in Support of
3  Plaintiffs' Order to Show Cause Motion (Dkt. 494-3). Opp. 4 n.2.
4      9.   Google argues that these declarations contain conclusions and argument in violation of
5  Local Rule 7-5(b).
6     10.   These declarations advance counsel's conclusions and argument rather than "only
7  facts," as the rule requires. *See, e.g.*, Dkt. 429-3 ¶ 10 ("Google went to great lengths to conceal this
8  information throughout the discovery process."); *id.* ¶ 19 ("Tellingly, for certain other logs that
9  apparently do not include a 'maybe_chrome_incognito' field, Google was happy to produce more than
10 the 100 largest fields."); *id.* ¶ 31 ("Plaintiffs have asked Google to remedy the prejudice it has caused
11 in multiple, reasonable ways . . . . Google has simply refused."); Dkt. 494-3 ¶ 24 ("Google also
12 produced schema for ▮ logs containing the 'maybe_chrome_incognito' field . . . further
13 demonstrating that Google has alternatives to produce schema with fields containing 'incognito.'").
14     11.   Accordingly, the Court hereby strikes the Mao Declarations. *See Hinson v. Metro. Life*
15 *Ins. Co.*, 2012 WL 13054268, at *1 (N.D. Cal. Aug. 1, 2012); *First Mercury Ins. Co. v. Great Divide*
16 *Ins. Co.*, 241 F. Supp. 3d 1028, 1045 (N.D. Cal. 2017).
17 **IV.   FINDINGS OF FACT**
18   **A.   The "Maybe_Chrome_Incognito," "Is_Chrome_Non_Incognito_Mode," and**
19         **"Is_Chrome_Incognito" Bits**
20     12.   Plaintiffs' motion principally concerns the existence of three data fields (called "bits")
21 in various Google logs. These bits are named "maybe_chrome_incognito,"
22 "is_chrome_non_incognito_mode," and "is_chrome_incognito," and were developed at different
23 times for different purposes.
24     13.   "Maybe_chrome_incognito" was created as part of a project by Google Ads engineers
25 Bert Leung and Mandy Liu in mid-2020 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮. Dkt. 527-12 ("Leung Decl.") ¶ 19.

14.  "Is_chrome_non_incognito_mode" and "is_chrome_incognito" were created by a team connected with Google's Search engine ▇▇▇▇ to improve that engine's geolocation function, ▇▇▇▇▇▇▇▇▇▇▇▇. Trebicka Decl. Ex. 42 at 70:5–71:23.

15.  The three fields at issue are called "bits" because they are Boolean fields, which means that each contains only a value of "true" or "false." Dkt. 527-10 ("Liao Decl.") ¶ 10; Leung Decl. ¶ 9.

16.  For each bit, the true or false value corresponds to whether a Chrome browser has sent Google a signal called the "X-Client-Data header." Leung Decl. ¶ 8–9.

17.  Generally, the Chrome browser does not send Google the X-Client-Data header when it is in Incognito mode, but there are also other instances unrelated to whether Chrome is in Incognito mode in which the browser does not send the X-Client-Data header. Id. ¶ 5.

**B.  Google Produced Documents Identifying the Bits at Issue Starting in June 2021.**

18.  Google produced documents identifying and describing the bits at issue, along with the methods underlying them, beginning in mid-2021.

19.  In June 2021, Google produced a document identifying the "is_chrome_non_incognito_mode" bit and explaining that it ▇▇▇▇▇▇▇ Trebicka Decl. Ex. 15.

20.  Plaintiffs cited this document to the Court in briefing in July 2021 to argue that "Google maintains systems and processes to identify Incognito browsing, including ready-made tools that run queries based on the X-Client-Data header field." Dkt. 217-4 at 4.

21.  The "is_chrome_incognito" bit is derived directly from the "is_chrome_non_incognito_mode" bit. Trebicka Decl. Ex. 42 at 77:20–25.

22.  After citing a document identifying the "is_chrome_non_incognito_mode" bit in July 2021, Plaintiffs did not seek additional discovery on that bit until December 2021. See Ansorge Decl. Ex. 38 at 8.

23.  In December 2021 Plaintiffs sought Rule 30(b)(6) testimony on this bit, which Google provided on March 10, 2022. Dkt. 527-6 ("Ansorge Decl.") ¶ 98.

24. Regarding the separate "maybe_chrome_incognito" bit, Google produced numerous documents identifying and explaining its purpose, including the foundational design documents underlying the use of the bit, in September 2021. Trebicka Decl. Exs. 10, 12.

25. Additional documents Google produced between September and November 2021 showed various "APPROVALS" for "maybe_chrome_incognito" and identified it as a field to be used as part of Google's efforts to analyze traffic from browsers that block third-party cookies by default. *See* Opp. 5.

26. Plaintiffs did not seek additional discovery on the "maybe_chrome_incognito" bit until February 2022. *See* Dkt. 429-3 ¶ 24.

### C. Google Has Produced Additional Discovery Concerning the Bits at Issue Since Plaintiffs Filed the Instant Motion.

27. Since February 2022, Google has produced substantial additional discovery on the bits at issue.

28. Google has produced Mr. Leung and Ms. Liu for depositions, source code descriptions for the "maybe_chrome_incognito" bit, and field names for ▮▮▮ logs containing that field. Dkt. 527-4 at 16–17.

29. Google also produced Google Engineer Caitlin Sadowski as a Rule 30(b)(6) witness to testify regarding the "is_chrome_incognito" and "is_chrome_non_incognito" bits and produced a list of logs storing those bits. *See, e.g., id.* at 13.

30. Pursuant to the Special Master process, Plaintiffs have requested searches of logs containing the three bits at issue. Dkt. 527-6. The record shows that Google is completing those searches under the Special Master's guidance. *Id.*

### D. The Court Has Already Adjudicated the Use of the X-Client-Data Header to Approximate Chrome Incognito Traffic.

31. The question of whether or not the absence of the X-Client Data header can be used as a detection tool for users in Chrome's Incognito mode, which is central to Plaintiffs' claims that the three bits at issue are relevant to their case, became an issue early on in this litigation.

32. In July 2021, Plaintiffs sought to compel a production of all data for which the X-Client-Data header was absent. *See* Dkt. 176-4 at 29–30.

33. In doing so, Plaintiffs argued that "[d]iscovery to date confirms the 'X-Client-Data Header' can be used to identify class members." *Id.* Google responded that the X-Client-Data Header is an unreliable tool for Incognito detection. *Id.*

34. In response, the Court requested supplemental briefing from the parties on the following question: "What is Plaintiffs' factual basis to dispute Google's position that there are multiple reasons why the X-Client Data field may be empty and therefore the empty field does not necessarily identify class members?" Dkt. 191-1 at 5.

35. In supplemental briefing, Plaintiffs cited documents Google had produced that showed that Google, in some instances, used the absence of the X-Client-Data header to infer the use of Chrome Incognito. Dkt. 217-4 at 4–5.

36. Specifically, Plaintiffs pointed to a Google dashboard ▮▮▮▮ a "Google[] document titled ▮▮▮▮ an ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ and a document they claimed demonstrates that ▮▮▮▮ *Id.* at 4.

37. Google responded that although it may have used the absence of the X-Client-Data header for certain limited purposes, that logic is an unreliable means of identifying Incognito usage with precision because there are many scenarios in which the X-Client-Data header is absent for reasons other than Incognito browsing. *Id.* at 8–11 (citing to Rule 30(b)(6) testimony).

38. Following this briefing, the Court referred the issue, designated dispute P16, to the Special Master. Dkt. 221.

39. In October 2021, following further submissions by the parties on the technical aspects of the dispute, the Special Master denied Plaintiffs' request for a production of all Chrome browser communications in which the X-Client-Data header was absent. Dkt. 299-1 at 2.

40. This Court adopted the Special Master's findings on November 12, 2022, explaining that those determinations were "well taken" and "mirror[ed] the Court's handling of [this] issue[] prior to engagement of the Special Master." Dkt. 331 at 3.

41. Plaintiffs now argue that the Special Master and Court orders (Dkt. 299 and Dkt. 331) resolving this issue gave Google a victory in a "rigged game" because "Google had by then also implemented the maybe_chrome_incognito bit, based on the lack of the X-Client-Data Header, into at least ▮ different ▮ logs." Reply 3.

42. By the time the Special Master ruled on October 20, 2021, however, Plaintiffs had documents detailing the bits that they now contend would have made a difference to their motion. Dkt. 527-4 at 4–6, 12–14.

43. Plaintiffs neither cited any of those documents in their objection to the Special Master's Order, nor claimed that the dispute was "rigged." Dkt. 309-4 at 5.

44. Instead, Plaintiffs made the precise argument they now claim Google foreclosed through nondisclosure: that Google itself used the absence of the X-Client-Data header to identify Incognito traffic. *Id*.

45. For example, Plaintiffs argued that the discovery they sought was "consistent with Google's own document ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*.

46. By the November 4 hearing on the same dispute before this Court, Google had produced still more documents demonstrating the facts Plaintiffs now claim were made available only in Google's February 2022 production. Dkt. 527-4 at 6.

47. At that hearing, Plaintiffs relied on demonstrative slides to argue that Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nov. 5, 2021 Hr'g Tr. 23:7–10.

48. Those slides included a quotation from Mandy Liu-whom Plaintiffs now claim Google failed to disclose in connection with Google's attempts to identify Chrome Incognito traffic - responding to a colleague's question about how Incognito mode is "detected" at Google by explaining, "[t]hat's from the X-Client data header." Dkt. 321-3 at 44.

49. Once again, Plaintiffs did not claim that Google had "rigged" the Special Master's ruling on dispute P16 in light of these facts.

50. The record here confirms the Court's previous ruling that the absence of the X-Client-Data header is an unreliable measure of Chrome Incognito traffic, including because there are many instances in which a browser may not send the X-Client-Data header to Google regardless of whether the browser is in Incognito mode.

51. That Google logged the bits at issue does not suggest otherwise, because Google used those bits only for rough approximations of Incognito traffic, not to identify individual Incognito mode users.

52. Google engineer Chris Liao testified that his team used the X-Client-Data header to provide an approximate aggregate revenue impact projection related to an initiative to block third-party cookies by default in Incognito mode, and that the absence of the X-Client-Data header and, by extension, "maybe_chrome_incognito," could not identify actual incognito traffic with any precision.

53. Similarly, Google engineer Caitlin Sadowski testified that the "is_chrome_non_incognito_mode" and "is_chrome_incognito" bits would also be unreliable and inaccurate ways to identify Incognito usage.

54. Dr. Sadowski provided numerous reasons the X-Client-Data header ▮▮▮▮▮▮ may be absent from browser traffic irrespective of whether it is from a browser in Incognito mode.

55. None of the three bits at issue here is a reliable method to determine whether event-level internet traffic originated with a user of Chrome Incognito.

56. Further, none of the bits at issue is capable of identifying specific Chrome Incognito users.

57. First, the bits each contain only a true or false value based on the presence or absence of the X-Client Data header and do not contain any identifying information. Liao Decl. ¶ 10; Leung Decl. ¶ 9.

58. Second, when a user engages Incognito mode, the data generated by the Chrome browser is both disconnected from the user's identity and from data generated by the same user in other browsing sessions. Leung Decl. ¶ 9.

59. This conclusion is consistent with how data is (and is not) collected in connection with other popular web browsers. Plaintiffs subpoenaed Mozilla, Apple, and Microsoft seeking records sufficient to identify each entity's private browsing users, and each entity responded that, like Google, it is unable to identify private browsing users. Trebicka Decl. Exs. 44–46.

### E. Google Did Not Make False Statements or Tamper With Evidence.

60. Plaintiffs allege that Google or its employees made two false statements. First, they allege that Google Ads engineer Chris Liao incorrectly testified that Google "had abandoned any efforts to identify Incognito traffic within its logs." Mot. 15. Second, they allege that Google employee Andre Golueke incorrectly attested on November 18, 2021 that, to the best of his knowledge and informed understanding, Google had identified to Plaintiffs all data sources containing information relevant to their claims. Mot. 17–18.

61. Mr. Liao testified at his December 2021 deposition that "[t]here is no explicit signal to identify incognito mode traffic," Trebicka Decl. Ex. 40 at 131:14–132:3, and that there is no "reliable signal to infer [I]ncognito mode at the time we receive an ad query," Mao Decl. Ex. 8 at 140:6–10.

62. Mr. Liao's statements are true: "maybe_chrome_incognito" is neither a signal nor a reliable method to infer Chrome Incognito traffic. Liao Decl. ¶ 13; Leung Decl. ¶¶ 3–7.

63. Plaintiffs do not dispute that they did not ask Mr. Liao about "maybe_chrome_incognito" at his deposition, though they had received documents about that bit months before the deposition.

64. On November 12, 2022, the Court ordered Google to provide a declaration attesting that, among other things, "[t]o the best of its knowledge, Google has provided a complete list of data sources that contain information relevant to Plaintiffs' claims." Dkt. 331.

65. On November 18, 2022, Mr. Golueke submitted a responsive declaration attesting that "[t]o the best of my knowledge and informed understanding, Google has provided a complete list of sources that contain information about Plaintiffs relevant to Plaintiffs' claims." Dkt. 338.

66. That declaration attached a list of ▮ data sources. Dkt. 338-1.

67. Prior to submitting this declaration, Mr. Golueke consulted multiple Google engineers and product managers familiar with data sources related to Plaintiffs' claims. Dkt. 338 ¶ 2.

68. The Special Master found that Mr. Golueke's declaration met the requirements set out in the November 12 order. Ansorge Decl. ¶ 24.

69. There is no indication that Mr. Golueke's statement, made to the best of his knowledge and based on his investigation, was not truthful.

70. Plaintiffs also allege that Google tampered with evidence by "deleting the 'maybe_chrome_incognito' field from the schema" of a ▮▮▮▮ log it produced. Mot. 1, 23.

71. Google did not tamper with evidence.

72. ▮▮▮▮ logs include thousands of fields, and Google does not maintain a tool to output schema for such large logs. Google substantiated the engineering burdens and technical limitations that precluded producing full schema. *See* Dkt. 527-4 at 15–16.

73. In light of this technical limitation, Google appropriately asked the Special Master to allow Google to produce only the output of a preexisting tool called ▮▮▮▮ which automatically generates a list of the 100 largest fields in a given ▮▮▮▮ log. Trebicka Decl. Ex. 43.

74. The Special Master permitted Google to do so. *Id.*

75. Because "maybe_chrome_incognito" was not one of the 100 largest fields in the relevant log, it was not included in the log schema Google produced. Google's production of only the 100 largest fields was consistent with the Special Master's order.

F.   **Google Complied With Its Preservation Obligations**

76. Plaintiffs argue that Google's alleged nondisclosure of the bits affected the outcome of a preservation dispute between the parties concerning logs containing private browsing data. Mot. 9; Reply 2–3.

77. Google complied with its preservation obligations.

78. Among other things, Plaintiffs have had documents describing "is_chrome_non_incognito_mode" since June 2021 and "maybe_chrome_incognito" since September 2021.

79. After Plaintiffs expressed an interest in the three bits at issue, Google agreed to include all of those bits in its preservation proposal. Ansorge Decl. ¶ 77.

V. **CONCLUSIONS OF LAW**

    A. **Sanctions Are Not Appropriate Because Google Has Not Violated Any Discovery Order**

80. Rule 37(b) authorizes sanctions against a party only if it has violated a discovery order. *Unigard Sec. Ins. Co. v. Lakewood Eng. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

81. Because Google has not violated any order, no sanctions are warranted here.

82. Plaintiffs allege that Google violated the Court's November 12, 2022 discovery order by "(1) withholding the 'maybe_chrome_incognito' field from Plaintiffs, and (2) representing to the Court that it had identified all relevant sources to Plaintiffs." Mot. 17. Google's conduct, however, did not violate the Court's November 12 order.

83. There is no evidence that Google withheld any information from Plaintiffs. To the contrary, Google has demonstrated that it produced documents to Plaintiffs disclosing one of the ▮▮▮▮ bits in June 2021 and "maybe_chrome_incognito" in September 2021, and Plaintiffs did not ask further questions about those bits until December 2021 and March 2022, respectively.

84. Nor is there evidence that Google made any false representation to Plaintiffs or the Court concerning its search for relevant data sources.

    B. **The Sanctions Plaintiffs Seek Are Not Warranted Here**

85. Federal Rule of Civil Procedure 37(b) authorizes the Court to sanction a party for disobeying a discovery order with the following limitations: "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

86. Absent a violation of a court order, the Court may impose discovery sanctions under its inherent authority only upon an express finding of bad faith. *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001). Google's conduct does not merit sanction under either authority.

### 1. Evidentiary Sanctions

87. Plaintiffs seek two related forms of evidentiary sanction: issue preclusion in the form of an order taking as established "that (1) Google can detect event-level Incognito traffic within its logs, and (2) this Incognito data is linkable to users, so that (3) the class is ascertainable;" and evidentiary preclusion in the form of an order prohibiting Google from "presenting any arguments . . . concerning whether Google can identify Incognito traffic within logs and whether that data is linkable to users." Mot. 20. Neither preclusion sanction is justified.

88. "Courts rarely impose issue preclusion sanctions" and reserve them "only for discovery abuse that is so extreme and prejudicial that no lesser remedy will cure the harm." *Natural-Immunogenics Corp. v. Newport Tr. Grp.*, 2016 WL 11520757, at *6 (C.D. Cal. June 16, 2016).

89. Sanctions precluding a party from offering evidence are similarly disfavored where the alleged prejudice is curable and lesser sanctions are available. *rePlanet Holdings, Inc. v. Fed. Ins. Co.*, 2020 WL 1046960, at *5 (E.D. Cal. Mar. 4, 2020).

90. Here, Plaintiffs have not suffered prejudice and lesser remedies are available to cure the alleged harm. Accordingly, issue and evidence preclusion sanctions are not warranted.

91. Google produced documentation identifying and describing the bits at issue in 2021, months before the close of fact discovery. *See Kannan v. Apple, Inc.*, 2020 WL 9048723, at *8 (N.D. Cal. Sept. 21, 2020) (prejudice from incomplete discovery is "limited" where moving party had "access to other sources of information about" the same topic); *see also United States ex rel. Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988) (delayed production "did not prejudice the outcome of [the] action" even if it "caused serious inconvenience").

92. Moreover, the harm Plaintiffs allege is insufficient access to information important to their case, and Google has already produced or agreed to produce additional discovery on all three bits at issue. *See Nuance Comms., Inc. v. ABBYY Software House*, 2012 WL 5904709, at *3 (N.D. Cal. Nov. 26, 2012) ("[I]f Plaintiff believed that the prejudice it suffered . . . was losing its right to conduct discovery . . . then the appropriate relief was not to ask for issue preclusion sanctions, but to seek a discovery extension so that it could actually have a chance to learn more about its claims."); *Manchester v. Sivantos GMBH*, 2019 WL 988676 (C.D. Cal. Feb. 8, 2019) ("The Court is reluctant to

impose an issue preclusion order where the Request did not specifically mention [the non-produced data] without further evidence of bad faith or prejudice not remediable by less drastic means.").

93. Issue and evidence preclusion sanctions are also inappropriate because Google has presented substantial evidence demonstrating that the bits at issue cannot be linked to individual Chrome Incognito users, which is the fact Plaintiffs seek to establish. *See Natural-Immunogenics Corp.*, 2016 WL 11520757, at *6 ("[D]espite [the discovery misconduct], the [point sought to be established] remains a contested issue of fact that is inappropriate for resolution through issue preclusion sanctions."). The actual (not presumptive) truth of this fact has serious ramifications for putative class members, who would ultimately have to be identified. Under these circumstances, the evidentiary sanctions Plaintiffs seek are inappropriate.

### 2. Jury Instructions

94. Plaintiffs also seek a jury instruction that "Google concealed and altered evidence regarding its ability to identify Incognito traffic." Mot. 22.

95. Such an extreme and prejudicial remedy "should [not] be imposed casually," *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 994 (N.D. Cal. 2012), and it is not warranted here.

96. As a preliminary matter, the instruction Plaintiffs request is inaccurate. Google did not conceal any of the bits at issue; nor did Google alter evidence when it produced the largest 100 fields of a log schema with the Special Master's authorization. For that reason alone, an adverse jury instruction would not be "just." *See Ins. Corp. of Ireland*, 456 U.S. at 707.

97. Adverse jury instructions are typically employed to cure the prejudice that results when a party irrevocably destroys evidence. *See, e.g.*, *Apple*, 888 F. Supp. 2d at 985; *First Fin. Sec., Inc. v. Freedom Equity Grp.*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016).

98. That is not the case here. Google provided detailed discovery on the bits at issue months before Plaintiffs pursued them, and has since provided additional discovery on all three bits. In any case, an adverse jury instruction would not be "related to the particular 'claim'" at issue, *Ins. Corp. of Ireland, 456 U.S. at 707*, because the Court, and not a jury, will decide whether members of Plaintiffs' purported class are ascertainable.

99. For the first time on Reply, Plaintiffs argue that Google's alleged discovery misconduct is relevant to Plaintiffs' claims for invasion of privacy and intrusion upon seclusion, as well as their entitlement to punitive damages. Reply 15. The Court will not consider these belated arguments, which should have been made in the opening papers. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

100. In any event, Google's litigation conduct has no bearing on the merits of Plaintiffs' case, and has not affected any piece of evidence to which the jury would otherwise have access. It would be prejudicial and irrelevant to air these claims before the jury.

### 3. Special Master Fees

101. Plaintiffs further seek an order requiring Google to reimburse Plaintiffs for all fees paid and to be paid to the Special Master in this case pursuant to Rule 37(b)(2)(C). The relief they seek, however, is outside the scope of the reimbursement authorized by Rule 37.

102. Rule 37(b)(2)(C) provides that a sanctioned party must pay only expenses that are both "reasonable" and actually "caused by the failure" resulting in sanctions. Accordingly, any expenses incurred prior to the sanctionable conduct are not compensable. *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981). Nor are discovery expenses that would have been incurred regardless of the misconduct. *Toth v. Trans World Airlines*, 862 F.2d 1381, 1386 (9th Cir. 1988).

103. Instead, courts generally construe Rule 37(b)(2)(C) as authorizing reimbursement solely for the expenses incurred in preparing the sanctions motion itself. *See First Fin. Sec., Inc.*, 2016 WL 5870218, at *7; *Alaska Pulp Corp. v. United States*, 41 Fed. Cl. 611, 616-17 (C.F.C. 1998).

104. Plaintiffs' requested reimbursement is neither "reasonable" nor "caused by the failure" alleged. Because Google did not violate a discovery order and is not subject to sanction under Rule 37(b), no reimbursement is called for.

## VI. CONCLUSION

105. For the foregoing reasons, the Court finds that Google has not violated a discovery order and no sanctions are warranted.

106. Accordingly, Plaintiffs' motion requesting an order for Google to show cause for why it should not be sanctioned for discovery misconduct is DENIED.

| | |
|---|---|
| DATED: April 18, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By  */s/ Andrew H. Schapiro* |
| | Andrew H. Schapiro (admitted *pro hac vice*) |
| | andrewschapiro@quinnemanuel.com |
| | 191 N. Wacker Drive, Suite 2700 |
| | Chicago, IL 60606 |
| | Telephone: (312) 705-7400 |
| | Facsimile: (312) 705-7401 |
| | |
| | Stephen A. Broome (CA Bar No. 314605) |
| | stephenbroome@quinnemanuel.com |
| | Viola Trebicka (CA Bar No. 269526) |
| | violatrebicka@quinnemanuel.com |
| | 865 S. Figueroa Street, 10th Floor |
| | Los Angeles, CA 90017 |
| | Telephone: (213) 443-3000 |
| | Facsimile: (213) 443-3100 |
| | |
| | Diane M. Doolittle (CA Bar No. 142046) |
| | dianedoolittle@quinnemanuel.com |
| | 555 Twin Dolphin Drive, 5th Floor |
| | Redwood Shores, CA 94065 |
| | Telephone: (650) 801-5000 |
| | Facsimile: (650) 801-5100 |
| | |
| | Josef Ansorge (admitted *pro hac vice*) |
| | josefansorge@quinnemanuel.com |
| | 1300 I. Street, N.W., Suite 900 |
| | Washington, D.C. 20005 |
| | Telephone: 202-538-8000 |
| | Facsimile: 202-538-8100 |
| | |
| | Jomaire A. Crawford (admitted *pro hac vice*) |
| | jomairecrawford@quinnemanuel.com |
| | 51 Madison Avenue, 22nd Floor |
| | New York, NY 10010 |
| | Telephone: (212) 849-7000 |
| | Facsimile: (212) 849-7100 |
| | |
| | Jonathan Tse (CA Bar No. 305468) |
| | jonathantse@quinnemanuel.com |
| | 50 California Street, 22nd Floor |
| | San Francisco, CA 94111 |
| | Telephone: (415) 875-6600 |
| | Facsimile: (415) 875-6700 |
| | |
| | *Attorneys for Defendant Google LLC* |