**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,

                    Plaintiffs,

vs.

GOOGLE LLC,

                    Defendant.

Case No.:  4:20-cv-03664-YGR-SVK

**PLAINTIFFS' TRIAL PLAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**REDACTED VERSION**

Judge: Hon. Yvonne Gonzalez Rogers
Date:   September 20, 2022
Time:  2:00 p.m.
Location: Courtroom 1 – 4th Floor

# **TABLE OF CONTENTS**

I. Introduction ........................................................................................................... 1

II. Scope and Length of Trial ..................................................................................... 1

III. Claims ................................................................................................................... 2

IV. Applicable Law ..................................................................................................... 2

V. Elements of Plaintiffs' Claims .............................................................................. 3

VI. Stipulated Facts ..................................................................................................... 3

VII. Scope of Classes .................................................................................................... 3

VIII. Sanctions, Preservation, and Preclusion Rulings ................................................. 4

    A. Sanctions .................................................................................................... 4

    B. Preservation ............................................................................................... 5

    C. Preclusion .................................................................................................. 5

IX. Procedures to Simply Trial Presentation .............................................................. 5

X. Common Issues and Evidence ............................................................................... 6

    A. Google's Form Contract ............................................................................ 6

    B. Google Documentary Evidence ................................................................. 8

    C. Google Employee Testimony .................................................................... 9

    D. Plaintiffs' Testimony .............................................................................. 12

    E. Expert Liability Testimony ...................................................................... 12

    F. Damages Evidence ................................................................................... 14

    G. Injunctive Relief ...................................................................................... 18

XI. Notice Program and Post-Judgment Administration ........................................... 19

XII. Conclusion ........................................................................................................... 22

1

## I.   INTRODUCTION

Plaintiffs respectfully submit this Trial Plan in support of their class certification motion.[1] This Trial Plan provides a roadmap to aid the Court in assessing how a trial can be conducted in an efficient and manageable manner. It includes information regarding how Plaintiffs intend, subject to the Court's guidance, to present their claims and seek relief at trial in a way that is consistent with the requirements of Rule 23. While this Trial Plan is meant to serve as a useful roadmap of the key documents and witnesses to be presented at trial, it is not intended to be an all-inclusive, exhaustive list of documents and witnesses as Plaintiffs will continue to evaluate the case as it proceeds to trial.

Plaintiffs seek certification of two classes for purposes of asserting seven claims. Those claims concern Google's collection of private browsing information from ████ of millions of Americans who used Chrome Incognito mode (Class 1) and the private browsing modes in Safari, Edge, and Internet Explorer (Class 2) during the period dating back to June 1, 2016 and to the present (the Class Period). Plaintiffs will show at trial, using common proof for the Class Period and for all Class Members, how Google collected and stored private browsing information and used that private browsing information to generate ██████████ in revenues. Google did this in violation of its contracts with Class Members and other laws. Plaintiffs now seek monetary, injunctive, and other relief on behalf of Class Members.

## II.   SCOPE AND LENGTH OF TRIAL

Plaintiffs propose that all issues be tried together in a single trial. Subject to the Court's guidance and rulings, Plaintiffs will present a combination of live and videotaped testimony from the five named Plaintiffs, Plaintiffs' six experts, and current and former Google employees and other witnesses. The length of the trial will depend in part on the extent to which the parties can streamline the presentation through various stipulations and also any case that Google wishes to present. Excluding jury selection, Plaintiffs' current estimate is that trial can be completed in

---

[1] Google criticized the *Calhoun* plaintiffs for not submitting a trial plan. *See Calhoun*, 20-cv-5146, Dkt. 429 at 24-25.

1  approximately 20 court days, with Plaintiffs and Google splitting their time equally.[2] Subject to

2  the Court's availability, Plaintiffs are prepared to proceed to trial as early as January 2023.

3  **III.   CLAIMS**

4         Plaintiffs seek class certification with seven claims, all of which have survived Google's

5  motions to dismiss. *See* Dkt. 113 (order denying Google's first motion to dismiss); Dkt. 363 (order

6  denying Google's second motion to dismiss); *see also* Dkt. 504 (order granting Plaintiffs' motion

7  for leave to file their Third Amended Complaint); Dkt. 395-2 (Plaintiffs' Third Amended

8  Complaint, including Plaintiffs' seven claims).  Plaintiffs' claims are: (I) violations of the federal

9  Wiretap Act, (II) violations of the California Invasion of Privacy Act ("CIPA")), (III) violations

10  of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), (IV) invasion

11  of Class Members' privacy and (V) intrusion upon their seclusion in violation of California law,

12  (VI) breach of contract, and (VII) violations of the "unlawful" and "unfair" prongs of California's

13  Unfair Competition Law ("UCL").

14  **IV.   APPLICABLE LAW**

15         Plaintiffs assert one claim under federal law (Count I) and six claims under state law

16  (Counts II-VII). *See* Dkt. 395-2. Google's contract with all Class Members throughout the Class

17  Period included a California choice-of-law provision. Dkt. 83-16 at 8; Ex. 15. Google's California

18  choice-of-law provision reaches "any disputes arising out of or relating to these terms or the

19  Services" (April 14, 2014 – October 24, 2017 Terms of Service and October 25, 2017 – March 30,

20  2020 Terms of Service) and "all disputes arising out of or relating to these terms, service-specific

21  additional terms, or any related services" (March 31, 2020 – January 4, 2022 Terms of Service).

22  *Id.* Plaintiffs' state law claims fall within the scope of the California choice-of-law provision

23  because they "aris[e] out of or relat[e] to" Google's Terms of Service and Google's services. *See,*

24  *e.g.*, Dkt. 395-2 ¶¶ 84–88, 224–25, 233–34, 246, 259–60, 268–72, 282. *See also* Motion § II.B.1;

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27

28  ───────────────────
   [2] This assumes cross examinations and the Defendant's case are of reasonable length.

## V.     ELEMENTS OF PLAINTIFFS' CLAIMS

Plaintiffs intend to present common evidence establishing the elements of their claims. For the Court's convenience and reference, in Appendix A, Plaintiffs provide a chart summarizing the elements of their seven claims.

## VI.    STIPULATED FACTS

For many elements of Plaintiffs' claims, Plaintiffs believe that the parties can streamline trial by stipulating to certain facts. Those stipulated facts could include, for example: (1) the Google disclosures related to private browsing during the relevant time period; (2) Google's collection, storage, and use of Class Members' private browsing information; (3) the revenue Google has generated from its collection, storage, and use of Class Members' private browsing information, for purposes of calculating monetary relief; and (4) Google's continuing collection, storage, and use of Class Members' private browsing information, for purposes of any injunctive relief. Expert discovery is concluding, and that discovery may help identify additional factual issues that are undisputed.

## VII.   SCOPE OF CLASSES

Plaintiffs seek to certify claims on behalf of Class Members nationwide as to Counts I, III, IV, V, VI, and VII of their Third Amended Complaint (Dkt. 395-2): (I) violations of the federal Wiretap Act, (III) violations of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), (IV) invasion of Class Members' privacy and (V) intrusion upon their seclusion in violation of California law, (VI) breach of contract, and (VII) violations of the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL"). Consistent with this Court's recent guidance, *see In re Google RTB Consumer Privacy Litigation*, Case No. 4-21-cv-02155-YGR, Dkt. 233 at 17 (N.D. Cal. June 13, 2022), Plaintiffs seek to certify California-resident only classes as to Count II of their Complaint (violations of the California Invasion of Privacy Act ("CIPA")).

Plaintiffs' damages expert has estimated that from the start of the Class Period through the end of 2021, nationwide, there were about ▮▮▮▮▮▮ members of the Incognito class (Class 1) and about ▮▮▮▮▮▮ members of the class for the Safari, Edge, and Internet Explorer private

1    browsing modes (Class 2). *See* Lasinski Report ¶ 195, Figure 75. Plaintiffs' class administration

2    expert (who has been involved with hundreds of class actions) has also detailed how Class

3    Members can be notified. *See* Weisbrot Report § IV. Notification is straightforward in this case

4    because all Class Members are Google account holders, where Google should have contact

5    information. *Id.* ¶ 26.

6    **VIII.    SANCTIONS, PRESERVATION, AND PRECLUSION RULINGS**

7        One common issue for trial will be application of the Court's sanctions, preservation, and

8    preclusion rulings. *See* Dkts. 588, 587, 288-1.

9        **A. Sanctions**

10        After intensive briefing and a full-day hearing, the Court granted in part Plaintiffs' Motion

11    for Sanctions for Google's Discovery Misconduct. Dkt. 588. The Court found that Google

12    "with[held] relevant discovery focused on Google's Incognito-detection bits," Dkt. 588-1 at 32,

13    which Google developed and used to identify Incognito traffic. This evidence was "relevant to

14    both Plaintiffs' claims and Google's defenses" and Google's withholding of this evidence

15    "prejudiced Plaintiffs' ability to fully address the assertions by Google, its counsel, and its

16    witnesses" concerning Google's ability to identify Incognito traffic. Dkt. 588-1 at 29, 32.

17        As a result, the Court ordered evidentiary sanctions and a jury instruction that would

18    streamline trial: (1) evidentiary sanctions precluding Google from (a) "object[ing] to or

19    present[ing] argument against the timing of the development and implementation of the three

20    Incognito-detection bits at issue or the fact that such bits were implemented," (b) "offer[ing] or

21    rely[ing] on testimony from Chris Liao, Bert Leung, Mandy Liu, or Quentin Fiard for any

22    purpose," and (c) "offering or relying on its Supplemental Response to Interrogatory No. 35"; and

23    (2) if "Google's discovery misconduct is relevant to an issue before the jury," a jury instruction

24    that (a) "Google failed to disclose to Plaintiffs the names of key Google employees responsible for

25    developing and implementing Google's Incognito-detection bits" and (b) that "Google failed to

26    disclose relevant data sources reflecting the use of the Incognito-detection bits." *Id.* This ruling,

27    which Google did not appeal, will inform the presentation of evidence and argument at a class-

28    wide trial.

**B. Preservation**

On May 20, 2022, based on Plaintiffs' objections in connection with Google's preservation obligations, the Court ordered that "Google may not use the fact that only sampled data, not complete data, is available to challenge class certification generally or attestations by individuals that they are members of the class." Dkt. 587 at 7. The Court also ordered that Google must preserve certain data. *Id.* That ruling is relevant for purposes of class certification and any class member attestations presented during any claims process.

**C. Preclusion**

On October 19, 2020, Plaintiffs served requests for production of "[d]ocuments sufficient to identify all websites and publishers that use Google Analytics" (RFP No. 50) and "[d]ocuments sufficient to identify all websites and publishers that use Google Ad Manager (RFP No. 65). Dkt. 288-1. Google refused to produce such documents, and the parties briefed the issue for the Court. Google argued that its response to Plaintiffs' Interrogatory No. 5, in which Google identified the top 25 visited websites for each of Google Analytics and Google Ad Manager, was "sufficient with respect to providing any potentially relevant information that is responsive to this request." Dkt. 281 at 31. The Court ordered that, "before Google can argue or assert that any specific website did not use" either Google Analytics or Google Ad Manager, "Google must respond to this interrogatory as to that website at least 30 days in advance of making any such assertion or argument." Dkt. 288-1 at 1-2. Fact discovery has ended, and Google never supplemented this interrogatory response to assert that any specific website did not use Google Analysis or Google Ad Manager. Google is now precluded from disputing whether any website used Google Ad Manager or Google Analytics. That is relevant for purposes of class certification, trial, and any post-trial attestations.

**IX.  PROCEDURES TO SIMPLIFY TRIAL PRESENTATION**

Consistent with the Court's Standing Order Re: Pretrial Instructions in Civil Cases, Plaintiffs will seek to reach agreement with Google on issues affecting the conduct of trial. This will likely include matters such as a proposed order outlining a variety of stipulations regarding the conduct of the trial, a list of discovery excerpts, audios, and videos likely to be used at trial,

1   the authenticity and admissibility of documents produced by the parties, a joint set of proposed

2   jury instructions, a joint proposed verdict form, and a joint statement of the case to be read to the

3   jury. The parties previously were able to reach certain agreements regarding the authenticity of

4   documents, including that many will be presumed business records under Federal Rule of Evidence

5   803(6) (Dkt. 472), and Plaintiffs anticipate further progress on other issues to streamline the trial

6   of the case.

7   **X.      COMMON ISSUES AND EVIDENCE**

8          Three core questions underpin all of Plaintiffs' claims:

9      1.  Did Google promise Class Members that using a "private browsing mode" (including
           Chrome Incognito mode) would prevent Google from collecting, saving, and using
10          their information when browsing non-Google websites?

11     2.  Did Google nevertheless collect, save, and use Class Members' private browsing
           activity unlawfully?
12
       3.  How much did Google profit from its conduct while harming Class Members?
13
    Each of these questions can be answered from common proof. Below, Plaintiffs preview the
14
    common proof that answer these core questions and how that evidence will be admitted at trial.
15
    For consideration, in Appendix B, Plaintiffs also include an exemplar exhibit list consistent with
16
    the Court's format. [3]
17
       **A.      Google's Form Contract**
18
           The starting point for all of Plaintiffs' claims (and also Google's defenses) is the contract
19
    between Google and Class Members, which is subject to common proof and interpretation. This
20
    Court already ruled that a form contract between Google and Google account holders exists and is
21
    made up of and incorporates: (1) Google's Privacy Policy; (2) Google's "Search & Browse
22
    Privately" page; (3) Google's "Chrome Privacy Notice"; and (4) the "Incognito Splash Screen."
23
    Dkt. 363 at 13-14, 17; *see also* Schneier Report ¶¶ 278-283 (summarizing the representations made
24
    within these documents throughout the Class Period).
25

26

27   _____

28   [3] While certainly not all inclusive, this sample list gives the Court a sense of the key exhibits that
    will be used at trial.

1      Plaintiffs will introduce Google's form contract to show that throughout the Class Period

2  and for all Class Members (all of whom are Google account holders, subject to Google's form

3  contract), Google promised that users could "control" what information Google can collect, that

4  users could exercise that control by using private browsing modes such as Incognito mode, and

5  that Google would not collect users' private browsing information.

6      As summarized by the Court, Google's form contract includes the following statements

7  representing that private browsing mode prevents Google from collecting users' data:

8     • "The Incognito Splash Screen's list of entities that can view a user's activity in
        private browsing mode, which omits Google and instead lists: 'Websites you visit;
9       Your employer or school; Your internet service provider.'"

10    • "The Incognito Splash Screen's statement that: 'Now you can browse privately,
        and other people who use this device won't see your activity.'"

11
      • "The Incognito Splash Screen's Statement that: 'Chrome won't save . . . [y]our
12      browsing history [or] cookies and site data.'"

13    • "The 'Search & Browse privately' page's statement that: 'You're in control of what
        information you share with Google when you search. To browse the web privately,
14      you can use private browsing.'"

15    • "The Chrome Privacy Notice's statement that: 'You can limit the information
        Chrome stores on your system by using Incognito mode or guest mode. In these
16      modes, Chrome won't store certain information, such as: …Basic browsing history
        information like URLs, cached paged text, or IP addresses of pages linked from the
17      websites you visit [and] Snapshots of pages that you visit.'"

18    • "Google's Privacy Policy's statement that: 'You can…choose to browse the web
        privately using Chrome in Incognito mode. And across our services, you can adjust
19      your privacy settings to control what we collect and how your information is used.'"

20  Dkt. 363 at 20-21. The Court further held that: "Given the Court's previous conclusion regarding

21  each of these individual statements, a reasonable user, reading Google's contract with Plaintiffs as

22  a whole, could easily conclude that Google promised that using 'private browsing mode' would

23  prevent Google from collecting Plaintiffs' data." Dkt. 363 at 21. This form contract will define the

24  scope of any consent provided by Class Members regardless of what any users knew or believed

25  about Google's conduct. That is particularly true here where Google's form contract throughout

26  the entire Class Period expressly waived any implied consent defense, providing: "We will not

27  reduce your rights under this Privacy Policy without your explicit consent." Dkt. 83-1 at 12.

28  Plaintiffs intend to present these same Google statements and promises to the jury to support

1    Plaintiffs' claims.

2         **B.**       <u>**Google Documentary Evidence**</u>

3         At trial, Plaintiffs will seek to offer into evidence internal Google documents as common,

4    classwide proof that, internally, Google employees acknowledged that █████████████

5    ███████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████

8    ███████████████████████████████████

9         █████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████

11   ███████████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████

19   ████████████████████████████████

20        For consideration, Appendix B includes a sample exhibit list with 35 documents produced

21   by Google that Plaintiffs intend to present at trial, including short summaries of those documents.[4]

22   Appendix B includes, for example, admissions by Google employees and executives that Incognito

23   was "not truly private" (Entry 31, Ex. 1 at -67), █████████████████████████████

24   ███████████████████████████████████████████████████████

25   ██████████████ Google CEO Sundar Pichai decided that he "didn't want to put incognito under

26   the spotlight" (Entry 22, Ex. 10 at -93 ). Google has stipulated to the authenticity of all of these

27   ───────────────────
     [4] This is not intended to be an all-inclusive exhibit list at this early stage but instead meant to
28   provide the Court with a sample.

1    documents. *See* Dkt. 472. Copies of the documents cited in Appendix B are attached to the

2    concurrently filed Mao Declaration.

3         **C.    Google Employee Testimony**

4         Plaintiffs intend to either seek live testimony or present videotaped deposition testimony

5    excerpts from current and former Google employees. This common proof will demonstrate that

6    ████████████████████████████████████████████████████████████████████████████████████

7    and Google nevertheless utilized tracking beacons that caused users' browsers to send Google

8    information about users' browsing on third-party websites even when the users were in private

9    browsing mode. Plaintiffs intend to cover for example:

10        **Chris  Palmer**: ██████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21        **Ramin  Halavati**: ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████████████████

1

2

3     **AbdelKarim  Mardini**:

4

5

6

7

8

9

10

11

12     **Rory McClelland:**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 **Sundar Pichai:** Plaintiffs seek testimony from Google CEO Sundar Pichai, with further

7 briefing next month on whether they may depose Mr. Pichai. Dkt. 602. ████████████████

8 ██████████████████████████████████████████████████████████

9 ██████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████████

21 ██████████████████████████████████████████████████████████

22 ██████████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████████████

24 ██████████████████████████████████████████████████████████

25 ██████████████████████████████████████████████████████████

26 ██████████████████████████████████████████████████████████

27 ██████████████████████████████████████████████████████████

28 ██████████████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████████

2 ██████

3      **D.**      **Plaintiffs' Testimony**

4      At trial, Plaintiffs intend to present testimony from their five named Plaintiffs.  The named

5 Plaintiffs will testify that reasonable Google users such as themselves interpreted Google's

6 disclosures to mean that Google would not collect, save, and use Class Members' private browsing

7 data. The named Plaintiffs, like all other Class Members, enabled private browsing mode,

8 including Incognito Mode, when they browsed the internet to, in part, prevent Google from

9 collecting, saving or using their private browsing data. Plaintiffs and the Class Members were

10 harmed by Google's surreptitious collection and use of their private browsing data without their

11 consent. Plaintiffs have submitted declarations in support of their class certification motion.

12      **E.**      **Expert Liability Testimony**

13      At trial, Plaintiffs intend to present testimony from their four liability experts. Plaintiffs

14 provided detailed reports for each of these experts, including executive summaries at the start of

15 each report. Professor Schneier, Mr. Hochman, and Mr. Keegan each submitted opening reports,

16 and all four experts (including Mr. Nelson) submitted rebuttal reports addressing portions of

17 Google's opening expert reports. With their expert testimony, based on common proof, Plaintiffs

18 will establish their entitlement to relief. Consistent with their expert reports, Plaintiffs anticipate

19 the following testimony at trial:

20      **Jonathan Hochman**: Mr. Hochman is the founder of Hochman Consultants, an agency

21 that provides clients with online security, ecommerce, and advertising services. Among other

22 topics, ████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████

4 ███████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ███████████████████████████████████████████████████████

10 █████████████████████████████

11      **Professor Bruce Schneier**: Professor Schneier, a lecturer and fellow at the Harvard

12 Kennedy School, is a security technologist who researches, writes, and speaks about computer

13 security and Internet security, as well as the economic, psychological, and sociological aspects of

14 security and privacy. Professor Schneier studies user behavior and human factors related to

15 security and privacy, and his 2014 book *Data and Goliath* explores people's relationship with

16 privacy and their behaviors regarding privacy. Professor Schneier will provide important context

17 for the jury regarding the disclosures at issue in this case, the existence of reasonable expectations

18 of privacy in connection with private browsing communications, and why Google's collection,

19 storage, and use of that information is highly offensive. For example, Professor Schneier will

20 describe how the rise of the Internet and surveillance business models have created significant

21 threats to online privacy, making it more important for users to have a refuge from pervasive

22 tracking. Schneier Report §§ IV.2-3. Professor Schneier will also offer opinions about Google's

23 disclosures, including how they fail to disclose Google's collection of private browsing

24 information and instead falsely present private browsing modes as something that would provide

25 actual privacy, including from Google. *Id.* §§ 11-12.

26      **Mark Keegan**: Mark Keegan is a survey expert who has personally conducted over 1,000

27 consumer surveys reaching more than 250,000 consumers. For this case, Mr. Keegan conducted

28 two surveys of people who used one or more of the private browsing modes at issue (Chrome,

1  Safari, Edge, and Internet Explorer) during the Class Period. Mr. Keegan's first survey provides

2  common statistical evidence, including (1) for each browser at issue, the proportion of users who

3  use that browser's private browsing mode; and (2) the proportion of such users who also have a

4  Google account (a prerequisite for class membership). Keegan Report Opinion 3. Mr. Keegan's

5  second survey ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████

8  ██████████████████████ *See* Keegan Rebuttal Report, Opinions 6-7, ¶¶ 7-8, 156-92. This survey

9  constitutes common, classwide evidence that users reasonably understood the contract to promise

10  that Google would not collect their private browsing data. Mr. Keegan will also explain why

11  ████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  **David Nelson:** Mr. Nelson is a former FBI agent with twenty-four years of experience in

15  cybercrime investigations. Mr. Nelson will rebut Google's technical expert (Professor Georgios

16  Zervas), where Professor Zervas seeks to offer testimony suggesting ████████████████

17  ████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████

24  ██████████████████████████████████

25  **F.    Damages Evidence**

26  At trial, Plaintiffs will also present expert testimony and other evidence regarding the

27  calculation of the monetary relief and statutory damages they seek. The evidence presented will

28  also bear on the appropriateness of awarding punitive damages and nominal damages.

14

1    Plaintiffs' damages expert Michael Lasinski is a Certified Public Accountant with twenty-

2 seven years of experience evaluating the financial aspects of intellectual property for government

3 entities, corporations, and law firms. Mr. Lasinski calculated specific and aggregated amounts for

4 unjust enrichment (in the form of non-restitutionary disgorgement of profits) and actual damages

5 (in the form of restitution), and Mr. Lasinski's report includes an executive summary detailing

6 those calculations, which are summarized below.

7    <u>Unjust Enrichment</u>: Plaintiffs allege that once Google misappropriated Plaintiffs' private

8 browsing data and took away their ability to browse privately, Google then generated █████████

9 ██████ in profit with what it misappropriated. Plaintiffs accordingly seek non-restitutionary

10 disgorgement damages, which are available for at least their contract, CDAFA, and federal

11 Wiretap Act claims. *See* Motion § II.B.4.a (citing authorities).

12    Plaintiffs' calculation of non-restitutionary disgorgement damages begins with Google's

13 own undisputed analysis of the financial impact to Google of blocking one of its methods for

14 tracking users in Incognito mode—something called "third-party cookies." Lasinski Report § 7.1

15 Plaintiffs intend to present documents and testimony regarding how Google employees concluded

16 that blocking third-party cookies by default in Chrome Incognito mode ████████████████████

17 ██████████████████████. *E.g.*, Ex. 64 at -35. Relying on that internal Google financial

18 model as a starting point, and after making certain downward adjustments to exclude profits

19 outside the scope of this case, Mr. Lasinski used Google's public financial documents and other

20 discovery to calculate Google's unjust enrichment by way of the Google tracking and advertising

21 code that enables Google to collect private browsing information from members of each of the two

22 Classes. Lasinski Report § 7.

23    The model and calculations are detailed in Mr. Lasinksi's report, where Mr. Lasinksi

24 concludes that Google was unjustly enriched ███████████████████████████████████████

25 ████████████████████████████████████████████████████ If permitted, and

26 assuming a trial in 2023, Mr. Lasinski could update this calculation for the period through the end

27 of 2022. As described below, Plaintiffs intend to distribute any aggregate unjust enrichment award

28 to class members on a pro rata or per capita basis.

1    <u>Actual Damages</u>: To prove actual damages, Plaintiffs will proffer evidence regarding how

2    Google itself values the opportunity cost of users giving up privacy from Google, in addition to

3    the value of the private browsing data Google acquired and misappropriated. Plaintiffs will present

4    documents and testimony regarding Google's own calculations for this restitutionary value,

5    including the value that Google assigned when █████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████   If permitted, and assuming a trial in 2023, Mr. Lasinski could update this

23   calculation for the period through the end of 2022.

24   <u>Statutory Damages</u>: Plaintiffs seek statutory damages under the federal Wiretap Act (Count

25   One) and CIPA (Count Two), both of which allow for recovery of statutory damages as an

26   alternative to actual damages. Under the federal Wiretap Act, the Court may assess as damages

27   whichever is the greater of: (a) the sum of the actual damages suffered by the plaintiff and any

28   profits made by the violator as a result of the violation; or (b) statutory damages—the greater of

1    (i) $10,000 or (ii) $100 a day for each day of violation. 18 U.S.C. § 2520(c)(2). Under CIPA,

2    damages are the greater of $5,000 or three times the amount of actual damages, if any, sustained

3    by the plaintiff, though proof of actual damages is not necessary for liability. Cal. Penal Code §

4    637.2(a). As this Court recognized in its March 2021 order denying Google's motion to dismiss,

5    "each interception is a separate violation" for both the Wiretap Act and CIPA. Dkt. 113 at 24.

6          The Wiretap Act and CIPA also prohibit attempted interceptions. *See* Cal. Penal Code §

7    631(a) (prohibiting "attempts to read, or to learn the contents or meaning of any message, report,

8    or communication" as well as "attempts to use" any information obtained in violation of the

9    statute); 18 U.S. Code § 2511(1)(a) (applying to any person who "endeavors to intercept"

10   communications in violation of the statute). In addition to statutory damages for Google's actual

11   interceptions, Plaintiffs therefore seek statutory damages for a single violation against each

12   member of Class 1 based on Google developing and distributing Chrome Incognito to each of

13   them, and designing Chrome Incognito such that it would not prevent Google's tracking beacons

14   from collecting Class Members' private browsing information.

15         While Mr. Lasinksi does not offer any opinion regarding what damages rate the Court

16   should use (e.g., whether $100 or $10,000), he proffers four possible bases to which the Court may

17   apply its chosen rate to Google's violations. All four bases rely on data produced by Google, █

18   ████████████████████████████████████████████████████████████████

19   ████████████ which Mr. Lasinski then used to calculate the following through the end of 2021:

20         1.   The total number of ████████████████ in Chrome Incognito mode and the other

21              private browsing modes at issue (Safari, Edge, and Internet Explorer);

22         2.   ████████████████████████████████████████████████

23              ████████████████████████████████████████████████

24              ████████████████████████████████████████████████

25              ████████████████████████████████████████████████

26              ██████████████████████████

27

28

1      3.   ███████████████████████████████████████████

2      ███████████████████████████████████████████████

3      ███████████████████████████

4      4.   The total number of Class Members for each of the two Classes (i.e., a single

5           statutory violation per Class Member).

6 Lasinski Report § 9. All four of these potential bases would enable the Court to calculate statutory

7 damages in the aggregate starting with Google's ███████████ data.

8      If the Court were to for example award statutory damages using the fourth calculation, on

9 a per Class Member basis, that would be a basis to award one statutory damages amount (e.g.,

10 whether $100 or $10,000) for each Class Member. Alternatively, should the Court decide to

11 address statutory damages under Rule 23(c)(4), Class Members could separately by attestation

12 present information to calculate the number of violations to which they were subjected.

13      Punitive Damages: Plaintiffs do not seek a separate phase for punitive damages, as the

14 entitlement to punitive damages and the amount of any such damages can be determined based on

15 the same evidence described above.  Should any punitive damages be awarded, Plaintiffs will also

16 seek to have such damages awarded pro rata or per capita across the class.

17      **G.   Injunctive Relief**

18      Plaintiffs will also present evidence to support their request for injunctive relief. ███

19 ███████████████████████████████████████████████

20 ███████████████████████████████████████████████

21 ███████████████████████████████████████████████

22 ███████████████████████████████████████████████

23 ███████████████████████████████████████████████

24 ███████████████████████   Through documentary evidence and testimony, Plaintiffs will seek

25 to establish the importance not only of stopping Google's continued collection of private browsing

26 information but also addressing the massive amount of private browsing data that Google has

27 accumulated over the years and continues to maintain for its own financial benefit███████████

28 ███████████████████████████████████████████████

1 ████████████████████████████████████████████████████████████

2 ██████████████

3        Any injunctive relief should also include ordering Google to stop relying on any of the

4 "dozens of Google [] products" that Google admits to developing with private browsing data. Dkt.

5 411-1 at 12. Plaintiffs sought discovery on "Google's use of information collected from users

6 within a private browsing mode for purposes of improving and developing Google services,

7 products, and algorithms." *Id.* In briefing with the Court, Google objected on the ground that this

8 discovery request "would implicate dozens of Google business units and products." *Id.* Google has

9 therefore not identified all services, products, and algorithms that have been improved by Google's

10 use of private browsing information.

11        More recently, as a result of the Court's order sanctioning Google for discovery

12 misconduct, Google was forced to finally disclose what Google now claims is the full list of logs

13 that contain Google's Incognito detection bits. █████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ██████████████████████████████

18 **XI.   NOTICE PROGRAM AND POST-JUDGMENT ADMINISTRATION**

19        With respect to any aggregate award against Google, Plaintiffs will employ a generally

20 applicable, classwide methodology to divide any recovery among Class Members. Consistent with

21 the process followed in other class cases, Plaintiffs will present a notice program and claims

22 administration protocol for the Court's review and approval, which would govern the pre-trial

23 notice program as well as post-judgment submission, processing, and resolution of claims with the

24 goal of maximizing Class Member participation and making recovery simple and straightforward.

25        Plaintiffs have already retained Mr. Weisbrot, an experienced and well-regarded expert

26 who provided the substance for both a pre-trial notice program and post-judgment notification and

27 administrative process. *See* Weisbrot Report. Mr. Weisbrot has been involved with the

28 administration of many other class actions in this District and nationwide, including cases with

1    Google involving millions of Google account holders. *Id.* ¶¶ 19, 25. In his expert report, Mr.

2    Weisbrot explains that notification in this case is straightforward because the classes are limited

3    to Google account holders, meaning that Google should have Class Member email addresses. *Id.*

4    Opinions 1, 4. It is therefore possible to provide email notification and directions for filling out an

5    online claims form. This approach is especially useful ███████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████████████████████████

9    ███████    Because the classes are limited to Google account holders, Google could require

10   claimants to "sign in" to verify their identify and preclude claimants from submitting duplicate

11   claims.[5] In any event, as explained in Plaintiffs' Motion and based on established Ninth Circuit

12   precedent, since Google's liability will be determined in the aggregate, and Google will have no

13   claim to any leftover damages, Google has no due process interest in ensuring that all Class

14   Members come forward, whether any given individual is a rightful Class Member, nor how to

15   distribute damages. Motion §§ II.B.4.e; II.C.

16       Plaintiffs' damages expert, Mr. Lasinski, has also explained how any aggregate award can

17   be readily apportioned across and among Class Members. Lasinski Report ¶¶ 196-98. First, any

18   monetary award can be divided by ███████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████████████████████████████

25   █████████████████████████████████████████    This approach obtains relevant information for purposes of

26

27   ─────────────────────────────

     [5] Mr. Weisbrot also proposes numerous supplementary notice procedures, including programmatic

28   display advertising, and social media, video, and radio campaigns. *Id.* § IV.C.

1   apportionment while also being respectful of Class Members' privacy (and not demanding that

2   they disclose which websites they visited privately).

3         Mr. Lasinksi also describes how Google's unjust enrichment is attributable to revenue that

4   Google earns by ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████████████████

15  ████████████████████████████

16        ████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████████████

18  ████████████████████████   the extent Google has chosen not to preserve such data that could be used

19  to verify a class member's claim, this Court has ruled that "Google may not use the fact that only

20  sampled data, not complete data, is available to challenge class certification generally or

21  attestations by individuals that they are members of the class." Dkt. 587 at 7. Alternatively, as

22  explained by Mr. Lasinski, damages can be distributed on a per capita basis by dividing any

23  aggregate award by the total number of Class Members, which Mr. Lasinski has calculated as ██████

24  ██████   members of the Incognito class (Class 1) and about ██████████   members of the class for

25  the Safari, Edge, and Internet Explorer private browsing modes (Class 2). Lasinski Report ¶¶ 194-

26  97.

27

28

1

**XII.    CONCLUSION**

2       As set out in this Trial Plan, Plaintiffs respectfully seek the opportunity to use common,

3   classwide evidence to establish liability and damages, where trying this matter as a class action is

4   consistent with Rule 23's requirements and the due process rights of the parties while assuring a

5   streamlined and efficient trial.

6   Dated:  June 20, 2022                          Respectfully submitted,

7                                                  By: /s/ Mark Mao

8

9                                                  Mark C. Mao (CA Bar No. 236165)
                                                   mmao@bsfllp.com
10                                                 Beko Reblitz-Richardson (CA Bar No. 238027)
                                                   brichardson@bsfllp.com
11                                                 Erika Nyborg-Burch (CA Bar No. 342125)
                                                   Enyborg-burch@bsfllp.com
12                                                 BOIES SCHILLER FLEXNER LLP
                                                   44 Montgomery Street, 41st Floor
13                                                 San Francisco, CA 94104
                                                   Tel.: (415) 293 6858
14                                                 Fax: (415) 999 9695

15
                                                   David Boies (admitted pro hac vice)
16                                                 dboies@bsfllp.com
                                                   BOIES SCHILLER FLEXNER LLP
17                                                 333 Main Street
                                                   Armonk, NY 10504
18                                                 Tel: (914) 749-8200

19
                                                   James Lee (admitted *pro hac vice*)
20                                                 jlee@bsfllp.com
                                                   Rossana Baeza (admitted *pro hac vice*)
21                                                 rbaeza@bsfllp.com
                                                   BOIES SCHILLER FLEXNER LLP
22                                                 100 SE 2nd Street, Suite 2800
                                                   Miami, FL 33131
23                                                 Tel.: (305) 539-8400
                                                   Fax: (305) 539-1307
24

25                                                 Alison L. Anderson (CA Bar No. 275334)
                                                   alanderson@bsfllp.com
26                                                 BOIES SCHILLER FLEXNER LLP
                                                   725 S. Figueroa Street, 31st Floor
27                                                 Los Angeles, CA 90017

28

Tel.: (213) 629-9040

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel.: (415) 358-6913

John A. Yanchunis (admitted *pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (admitted *pro hac vice*)
rmcgee@forthepeople.com
Ra O. Amen (admitted *pro hac vice*)
ramen@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100

Bill Carmody (admitted *pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (admitted *pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (admitted *pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (admitted *pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330

*Attorneys for Plaintiffs*

# Trial Plan Appendix A: Elements of Legal Claims

| Claim | Elements | Predominance |
|---|---|---|
| **Count One: Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*** | Intentionally | <u>Common</u>.  Whether Google acted intentionally is common to all class members and will be proven through Google documents, communications, and software applications that apply to the entire class. |
| | Intercepted, attempted to intercept, endeavored to intercept, or procured any other person to intercept or endeavor to intercept | <u>Common</u>. Whether Google did, attempted to, endeavored to, or procured any other person to intercept any communication by collecteing private browsing communications between class members and non-Google websites, is common to all class members. How Google intercepted these communications was common to all class members and will be proven through the use of expert testimony by Mr. Hochman. |
| | Any wire, oral, or electronic communication | <u>Common</u>.  Whether an individual's browsing information is a communication is common to all class members that does not depend on the individual's particular internet browsing. |

| | | |
|---|---|---|
| **Count Two: California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631** | Used any machine, instrument or contrivance; | <u>Common</u>. How Google intercepted communications--through the use of their tracking beacons-is a common question of  fact for all class members as Google account holders that used private browsing modes. |
| | To intentionally; | <u>Common</u>.  Whether Google acted intentionally is common to all class members, and will be proven through Google's documents and internal communications. |
| | (a) Intercept the content of a communication over any telegraph or telephone wire, line, cable, or instrument; or (b) Read, attempt to read, or learn the contents or meaning of any message, report, or communication; | <u>Common</u>. Whether Google intercepted any communication by collecteing private browsing communications between class members and non-Google websites, is common to all class members. How Google intercepted these communications was common to all class members and will be proven through the use of expert testimony by Mr. Hochman. |
| | While the message, report, or communication is in transit or passing over any wire, line or cable; | <u>Common</u>.  Whether Google intercepted Plaintiffs' browsing information while the communication was in transit or passing over a wire is common to all class members. |
| | Without the consent of all parties to the communication | <u>Common</u>.  Google's arguments regarding consent are common to all class members, likely turning on language in Google's form contracts and broad categories of user actions. |

| | | |
|---|---|---|
| **Count Two: California Invasion of Privacy Act (CIPA), Cal. Penal Code § 632** | Google used an electronic amplifying or recording device; | <u>Common</u>.  Whether Google used an amplifying or recording device by collecting and storing Plaintiffs' private browsing information is common to all class members. |
| | The communication was confidential, i.e., at least one party to the conversation carried an objectively reasonable expectation that the conversation was not being overheard or recorded. | <u>Common</u>.  The question of whether the communication was confidential is based on an objectively reasonable expectation of privacy, and not an individualized subjective standard.  Thus, it is common to all class members. |
| **Count Three: Comprehensive Computer Data Access and Fraud Act (CDAFA), Cal. Penal Code § 502 *et seq.*** | Knowingly accessed; and | <u>Common</u>.  Whether Google knowingly accessed the Plaintiffs' private browsing information is common to all class members. |
| | Without permission; | <u>Common</u>.  That Google did this without providing notice or seeking permission is a common question and Google has not provided any information showing that they did this on an individual basis. |
| | (a)(i) Took, copied, or made use of (ii) any data from a computer, computer system, or computer network; or (b)(i) took or copied (ii) any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network. | <u>Common</u>.  How Google collected, stored, and made use of the Plaintiffs' private browsing information is common amongst all class members and proven through expert testimony by Mr. Hochman. |

| | | |
|---|---|---|
| **Count Four: Invasion of Privacy** | Plaintiffs possessed a legally protected privacy interest; | <u>Common</u>. Whether or not Plaintiffs had a legally protected privacy interest in their private browsing data while in a private browsing mode, is applied class-wide. |
| | Plaintiffs had a reasonable expectation of privacy; and | <u>Common</u>.  Whether Plaintiffs had a reasonable expectation of privacy is based on an objective standard, and not an individualized subjective standard.  Thus, the same standard will apply to all class members. |
| | Google's intrusion upon that privacy was highly offensive. | <u>Common</u>.  Whether Google's invasions on Plaintiffs' privacy is highly offensive turns on whether Google's invasions are: (1) highly offensive to an objectively reasonable person and (2) unaccpetable as a matter of public policy.  Both questions apply uniformly to all class members. |
| **Count Five: Intrusion upon Seclusion** | Google intentionally intruded into a private place, conversation, or mattter as to which the Plaintiffs had a reasonable expectation of privacy; and | <u>Common</u>.  Whether Plaintiffs had a reasonable expectation of seclusion is based on an objective standard, and not an individualized subjective standard.  Thus, the same standard will apply to all class members. |
| | Google's ocurred in a manner highly offensive to the reasonable person. | <u>Common</u>.  Whether Google's intrusions on Plaintiffs' right to seclusion is highly offensive turns on whether Google's intrusions are: (1) highly offensive to an objectively reasonable person and (2) unaccpetable as a matter of public policy.  Both questions apply uniformly to all class members. |

| | | |
|---|---|---|
| **Count Six: Breach of Contract** | The existence of a contract; | <u>Common</u>.  What contracts are at issue (Google's form contracts and Incognito Mode splash page) is common amongst class members.  The meaning of these contracts is based on an objective reading of the contract from the perspective of a reasonable user, not based on an individual Plaintiff's understanding. |
| | Plaintiffs' performance or excuse for non-performance of the contract; | <u>Common</u>.  How Plaintiffs performed as Google account users and in using private browsing modes is common amongst class members through the two separate classes. |
| | Google's breach of the contract; and | <u>Common</u>.  How Google breached the contract is common amongst all class members.  The basis for breach--Google's collection of Plaintiffs' browsing data while in private browsing modes through the use of Google's tracking beacons--is common among class members. |
| | Resulting damage. | <u>Common</u>. Determining the damages that resulting from Google's breach can be modeled and applied on a class-wide basis using common evidence, including Google's own documents describing what Google paid people to allow Google to track their browsing activity. |
| **Count Seven: Unfair Competition Law Claim** | Google engaged in an unlawful or unfair business act or practice. | <u>Common</u>. Whether Google engaged in an unlawful business practice turns on whether Google violated the laws discussed in the previous claims, which turn on common questions of law and fact.  Whether Google engaged in an unfair business practice is common among class members because Google's contracts, statements, and collection of browsing information was executed uniformly amongst all class members. |

**APPENDIX B**

**Exemplar Exhibit List**

This exemplar exhibit list contains as examples exhibits selected from the documents produced by Google. Plaintiffs anticipate that descriptions in the final trial exhibit list would include fewer details. Plaintiffs include these descriptions at this stage to identify key portions from these Google-produced documents. Google stipulated to the authenticity of all of the documents included in this exhibit list (Dkt. 472) but has not yet stipulated to admissibility. To streamline the presentation of evidence at trial, Plaintiffs intend to seek a stipulation from Google to admit these and other Google-produced documents. All of the documents summarized below are attached to the Mao Declaration, concurrently filed with Plaintiffs' motion for class certification.

| No. | Description | Sponsoring Witness | Stipulation to Admit | Objection | Date Admitted |
|-----|-------------|--------------------|----------------------|-----------|----------------|
| 1 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |
| 2 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |
| 3 | ██████████████████ | Adrienne Porter Felt (deposed Google employee) | | | |
| 4 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |
| 5 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |
| 6 | ██████████████████ | Sabine Borsay (to be deposed Google employee) | | | |
| 7 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |
| 8 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |

PLAINTIFFS' TRIAL PLAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 4:20-cv-03664-YGR-SVK

| 9 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |
|---|---|---|---|---|---|
| 10 | ██████████████████ | Martin Shelton (deposed former Google employee) | | | |
| 11 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |
| 12 | ██████████████████ | Adrienne Porter Felt (deposed Google employee) | | | |
| 13 | ██████████████████ | Martin Shelton (deposed former Google employee) | | | |
| 14 | ██████████████████ | Ramin Halavati (deposed Google employee) | | | |
| 15 | ██████████████████ | Chris Palmer (deposed Google employee) | | | |

| | | | | | |
|---|---|---|---|---|---|
| 16 | ██████████████ | Chris Palmer (deposed Google employee) | | | |
| 17 | ██████████████ | Adrienne Porter Felt (deposed Google employee) | | | |
| 18 | ██████████████ | Ramin Halavati (deposed Google employee) | | | |
| 19 | ██████████████ | Rory McClelland (deposed former Google employee) | | | |
| 20 | ██████████████ | AbdelKarim Mardini (deposed Google employee) | | | |
| 21 | ██████████████ | AbdelKarim Mardini (deposed Google employee) | | | |
| 22 | ██████████████ | AbdelKarim Mardini (deposed Google employee) | | | |
| 23 | ██████████████ | Sabine Borsay (to be deposed Google employee) | | | |

PLAINTIFFS' TRIAL PLAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 4:20-cv-03664-YGR-SVK

| | | | | | |
|---|---|---|---|---|---|
| 24 | ████████████████ | AbdelKarim Mardini (deposed Google employee) | | | |
| 25 | ████████████████ | AbdelKarim Mardini (deposed Google employee) | | | |
| 26 | ████████████████ | Ramin Halavati (deposed Google employee) | | | |
| 27 | ████████████████ | Ramin Halavati (deposed Google employee) | | | |
| 28 | ████████████████ | AbdelKarim Mardini (deposed Google employee) | | | |
| 29 | ████████████████ | Sammit Adhya (deposed Google employee) | | | |
| 30 | ████████████████ | Greg Fair (deposed Google employee) | | | |

28

| | | | | | |
|---|---|---|---|---|---|
| 31 | ██████████████ | Lorraine Twohill (deposed Google employee) | | | |
| 32 | ██████████████ | AbdelKarim Mardini (deposed Google employee) | | | |
| 33 | ██████████████ | Ramin Halavati (deposed Google employee) | | | |
| 34 | ██████████████ | AbdelKarim Mardini (deposed Google employee) | | | |
| 35 | ██████████████ | Sabine Borsay (to be deposed Google employee) | | | |

PLAINTIFFS' TRIAL PLAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 4:20-cv-03664-YGR-SVK