1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
William C. Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,

    Plaintiffs,

vs.

GOOGLE LLC,

    Defendant.

Case No.:  4:20-cv-03664-YGR-SVK

**DECLARATION OF MARK KEEGAN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Judge: Hon. Yvonne Gonzalez Rogers
Date:   September 20, 2022
Time:  2:00 p.m.
Location: Courtroom 1 – 4th Floor

DECLARATION OF MARK KEEGAN
Case No. 4:20-cv-03664-YGR-SVK

## **DECLARATION OF MARK KEEGAN**

I, Mark Keegan, declare:

     1.     Counsel for the *Brown* Plaintiffs retained me to provide expert analysis and, if requested, expert testimony, in the *Brown* matter.  I have personal knowledge of the matters set forth herein and am competent to testify.

     2.     I submit this declaration in connection with Plaintiffs' Motion for Class Certification.

     3.     Attached are true and correct copies of (1) the April 15, 2022 Expert Report that I prepared in connection with this matter; and (2) the May 20, 2022 Expert Rebuttal Report that I prepared in connection with this matter. The opinions I provided therein are true and correct to the best of my knowledge.

     4.     For the April 15, 2022 Report, Exhibit 5 is being provided to the Court via an external hard drive. For the May 20, 2022 Report, Exhibit 6 is being provided to the Court via the same external hard drive.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 17th day of June, 2022, at Rye, New York.

Mark Keegan

# Mark Keegan 4.15.2022
# Expert Report and all Appendices
# (Plaintiffs)



31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Chasom Brown, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Civil Action No.: 5:20-cv-03664-YGR** |
| ) | |
| Google LLC, ) | |
| ) | |
| Defendant. ) | |

**Expert Report of Mark Keegan**

**Keegan & Donato Consulting, LLC**
**April 15, 2022**



**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## Table of Contents

I. Executive Summary of Opinions ..................................................................................................... 1

II. Summary of Assignment ............................................................................................................... 2

III. Firm Overview ............................................................................................................................... 3

IV. Methodology .................................................................................................................................. 6

    Study Integrity ................................................................................................................................ 6

    Study Objectives ........................................................................................................................... 6

    Study Population ........................................................................................................................... 6

    Study Design .................................................................................................................................. 7

    Data Collection .............................................................................................................................. 8

    Sampling ........................................................................................................................................ 9

    Bias Management .......................................................................................................................... 9

    Questionnaire .............................................................................................................................. 10

V. Sample Characteristics .............................................................................................................. 12

VI. Findings ...................................................................................................................................... 13

    Internet Browser Use .................................................................................................................. 13

    Private Browsing Mode Use ....................................................................................................... 14

    Google Account Use ................................................................................................................... 15

VII. Conclusions .............................................................................................................................. 16

**Exhibits**

Exhibit 1—Mark Keegan C.V.

Exhibit 2—Documents Considered

Exhibit 3—Questionnaire

Exhibit 4—Tabulated Data

Exhibit 5—Untabulated Data

Exhibit 6—Disposition of Contacts



31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## I. Executive Summary of Opinions

1. Pursuant to the Court's Standing Order, this section includes an executive summary of each opinion that I will offer in this matter.

2. Opinion 1: As described in Section IV, I properly designed and conducted a survey to obtain information regarding Internet browser use, private browsing mode use, and the prevalence of Google account holding among potential members of each of the proposed Classes (as defined below) during the relevant time period.

3. Opinion 2: As described in Section IV, the survey was designed and executed in accordance with accepted standards of survey research, with all findings and conclusions presented with a reasonable degree of scientific certainty.

4. Opinion 3: As described in Section VI, based on the responses obtained from the survey for the relevant period:

   a. Chrome: 64.1 percent of Chrome users used the Chrome private browsing mode (Incognito), and 91.6 percent of Chrome Incognito users had a Google account.

   b. Safari: 59.2 percent of Safari users used the Safari private browsing mode, and 75.5 percent of Safari private browsing users had a Google account.

   c. Edge/Internet Explorer: 40.3 percent of Edge/Internet Explorer users used the Edge/Internet Explorer private browsing mode, and 94.4 percent of Edge/Internet Explorer private browsing users had a Google account.

5. Opinion 4: As described at Section VI, the responses obtained from the survey for the relevant period provide information regarding respondents' use of multiple browsers:

# Mark Keegan

# 5.20.2022 Rebuttal Expert Report and all Appendices

# (Plaintiffs)

# [Document Filed Under Seal]

    a.   <u>Chrome</u>: 60.7% of Chrome users also used Safari and/or Edge/Internet Explorer.

    b.   <u>Safari</u>: 74.2% of Safari users also used Chrome and/or Edge/Internet Explorer.

    c.   <u>Edge/Internet Explorer</u>: 90.4% of Edge/Internet Explorer users also used Chrome and/or Safari.

6. Opinion 5: As described at Sections V and VI, with information obtained from 1,075 respondents, these survey results provide common proof across both Classes regarding characteristics and metrics tied to members of each of the proposed Classes, with a focus on individuals who used the private browsing modes at issue during the relevant time period.

## II. Summary of Assignment

7. Keegan & Donato Consulting LLC was retained by counsel for the Plaintiffs in this action ("Counsel") to design and execute a survey to gauge certain aspects of prospective Class Members' Internet browser use, private browsing mode use, and whether such individuals held a Google account during the time period relevant to this matter.

8. To this end, I designed and executed a nationally representative general population study of 1,075 U.S. respondents. Qualifying respondents were asked a series of questions to determine during the past five years which Internet browser(s) they have used, which Internet browser(s) they have used in private browsing mode, and whether they have held a Google account.

9. A listing of the documents I relied upon in formulating my opinions appears as Exhibit 2.[1]

10. Based on my review of the Third Amended Complaint and directions from Counsel, I assume the following for purposes of my analysis:

    a.   The class period in this case begins on June 1, 2016 ("Class Period").

    b.   The two proposed classes are described in the Third Amended Complaint,[2] with the difference being whether the people used Chrome Incognito mode (the first class) or

---

[1] I was not granted access to any Highly Confidential – Attorneys' Eyes Only materials, nor did I need these materials in formulating my opinions in this case.

[2] Third Amended Complaint ¶192.

other private browsing modes (the second class) ("Classes" with members of the Classes being "Class Members").

    c.    Class Members are limited to people within the United States and with a Google account.

    d.    The private browsing modes at issue in this case are for the Chrome, Safari, and Edge/Internet Explorer browsers ("private browsing modes"; the corresponding browsers are the "browsers").

11.    Keegan & Donato Consulting is being compensated for my work on this assignment at the hourly rate of $600. Keegan & Donato Consulting's compensation is not dependent on the outcome of this case.

12.    As discussed in detail below, my study conforms to best practices of survey research. All findings are presented with a reasonable degree of scientific certainty.

13.    The methodology and results of my study are presented in detail in the sections that follow.

## III. Firm Overview

14.    I am a principal at Keegan & Donato Consulting, a consulting firm serving litigators and their clients. Our areas of expertise include marketing analysis, intellectual property, consumer survey research, damages analysis, forensic economic analysis, and related disciplines.

15.    Keegan & Donato Consulting designs and executes methodologically sound consumer survey research studies and conducts objective evaluation of existing survey research as well as collaborates on a wide range of marketing and complex commercial litigation issues. We are also regularly engaged by clients for non-litigation consulting assignments related to marketing research and strategy.

16.    Over the course of my career, I have personally conducted over 1,000 consumer surveys reaching more than 250,000 consumers. Many of these surveys have been admitted into evidence in federal courts, state courts, at arbitration, to the Trademark Trial and Appeal Board, the National Advertising Division of the Council of Better Business Bureaus, and the United States International Trade Commission.

17.   In the past four years, I have been deposed or testified at trial in conjunction with my involvement in litigation matters 30 times. I have also served as a rebuttal witness.

18.   I am a graduate of the University of Georgia's *Principles of Market Research Program*. This comprehensive course of study, developed in concert with the Market Research Institute International (MRII), is a post-graduate program for marketing industry professionals covering all aspects of the market research process. Coursework is based on the MRII's Market Research Core Body of Knowledge (MRCBOK), a compilation of the underlying principles and essential skills that comprise the market research process. Certification is conferred only upon participants who demonstrate mastery of concepts presented in 284 detailed module studies across 13 core areas of market research, as determined via rigorous proctored examinations. The University of Georgia's *Principles of Market Research Program* is endorsed by all major market research and insights industry associations, including ESOMAR and the Insights Association.

19.   My educational background additionally includes a J.D. from Brooklyn Law School and a B.A. in History from Pace University. I have completed coursework in the MBA program at the Lubin School of Business at Pace University and in Harvard University's Corporate Finance Certificate program. I have also served as a Registered Representative, National Association of Securities Dealers (Series 7, expired).

20.   I have spent the entirety of my career in marketing-related roles. I have served as a marketing consultant to private clients and have advised on a wide range of issues including product development and rollout, advertising, consumer feedback and intelligence, the product life-cycle, and other issues concerning marketing and marketing research. Over the past two decades, I have founded and successfully operated two marketing consulting and marketing research firms, Keegan & Company LLC and Keegan & Donato Consulting, LLC. Prior to that, I served in various marketing management and research roles in both large and small companies including Information Markets Corp., Affiliation Networks, Inc., Uptick Technologies, Cosmos Internet Solutions, Fact Set Research Systems, and BMW of North America, Inc.

21.   As a marketing expert, I have formulated winning brand positioning strategies for some of the best-known consumer brands and services. While at Keegan & Company, I worked with General Electric to position its consumer credit services as an industry leading advantage

available to all. In my time with Information Markets, I worked with consumer brands such as Nike, Pepsi, and Subaru to deliver online engagement services to a younger audience. I also collaborated with AOL, Excite, and NBC to develop and launch an online forum to exchange ideas and expertise among category thought leaders.

22.   I am a member of the American Marketing Association (AMA), the preeminent professional association for marketing practitioners and scholars. From the AMA I have earned the designation of Professional Certified Marketer (PCM). The AMA confers the PCM certification upon individuals who have demonstrated a mastery of comprehensive and core marketing knowledge and principles. PCM certification requires rigorous testing, ongoing professional development, and a commitment to upholding the highest standards in the marketing field. The AMA only accepts into the PCM certification program applicants with demonstrated professional experience in the field of marketing.

23.   Keegan & Donato Consulting is a member of ESOMAR, the leading global association for market, social, and opinion research, the American Association for Public Opinion Research (AAPOR), a professional organization of more than 2,000 public opinion and survey research professionals in the United States and from around the world, the International Trademark Association (INTA), and the Association for Consumer Research (ACR). I have published in an ESOMAR compendium on the benefits of methodologically sound marketing research. I have taught CLE-accredited courses on survey research for litigation at the Florida Bar's Annual IP Symposium and have addressed the Pennsylvania Bar Association's Intellectual Property Law group with a presentation on the building blocks of survey research for litigation, consumer research best practices, and current trends in the industry.

24.   Additional information about my credentials is provided at Exhibit 1 to this report. Exhibit 1 also lists the matters in which I have provided testimony over the last four years.

25.   Prior to this engagement, I had personally used some of the private browsing modes discussed in this Report (including Chrome Incognito mode), but I did not know that Google receives and saves information from my private browsing mode activities, including in particular when I am visiting non-Google websites without being signed in to any Google account. This was something I first learned when I become engaged as an expert for this litigation.

## IV. Methodology

**Study Integrity**

26. This study of 1,075 U.S. respondents was designed and executed in accordance with accepted standards of survey research. This survey follows the guiding principles for survey research for the purpose of litigation as outlined by Shari Diamond,[3] including but not limited to:

- Appropriate universe selection and sampling frame;

- Rigorous and valid survey design that is probative of the relevant issues in the matter;

- Inclusion of representative, qualified respondents;

- Use of procedures to minimize potential biases in data collection;

- Use of objective, non-leading questions;

- Use of procedures to reduce guessing among respondents; and

- Full analysis and reporting of survey data.

27. Additional treatises commonly referenced by researchers conducting survey research for litigation were also instrumental in the design of the current research.[4]

**Study Objectives**

28. The primary objective of the study that I designed and conducted in this case was to obtain information regarding prospective Class Members, focusing on their Internet browser use, private browsing mode use, and whether such individuals have held a Google account during the past five years.

**Study Population**

29. Surveys are conducted by collecting data from a sample, or subset, of the population of interest, i.e., the larger group to which the study results may be projected. This survey is

---

[3] Diamond, S. (2011). "Reference Guide On Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, p. 359-423.

[4] See, for example, McCarthy, J.T. (2020). *McCarthy on Trademarks and Unfair Competition, 5th Ed.;* Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys.*

intended to provide information relevant to the proportion of U.S. respondents who may be Class Members—i.e., the general population of U.S. consumers who engage in Internet browsing and have used private browsing modes during the past five years and may meet the requirements to be included in the prospective Classes.

30. Consistent with typical marketing research practice, only respondents aged 18 and older were permitted to participate in the study.[5] Respondents who met the study population definition were identified through the use of screening questions that qualified respondents on these criteria (see Questionnaire at Exhibit 3).

**Study Design**

31. This research employed a study design wherein respondents were questioned about various Internet browsing and other online behaviors. A range of standard marketing research techniques were employed to address issues that are relevant to this matter.

32. After qualifying respondents through a screening module (discussed below), the main portion of the study asked respondents questions pertaining to three issues:

   · Which Internet browser(s) respondents had used during the past five years;

   · Which Internet browser(s) respondents had used in private browsing mode during the past five years; and

   · Whether respondents held a Google account at any time during the past five years.

33. The Class Period begins June 1, 2016. The past five-year period was used in my survey to simplify the presentation to respondents rather than asking them to recall whether the specifics of a casual event—Internet browsing—occurred five years ago or five years and ten months ago. This five-year period is also conservative as the usage saturation measured could only increase with a lengthened period.

---

[5] Special procedures and precautions must be followed when interviewing minors (see ESOMAR Guideline on Interviewing Children and Young People, www.esomar.org). For this reason, it is typical to interview minors only when there is a specific reason to do so. There was no such reason here.

34. Consistent with standard marketing research practice, several demographic questions were also administered.

**Data Collection**

35. This survey was completed through online interviewing via the Internet. Online interviewing is the dominant data collection method used in marketing research today.[6] Data collection for this study took place in April 2022.

36. The respondent sample for this project was provided by the Dynata[7] consumer panel. Dynata is a leading provider of online sample for research projects in the U.S. and across the globe. Dynata maintains an actively managed online panel of millions of consumers. Membership in the panel is by invitation only, and Dynata employs and enforces a range of policies and procedures to ensure "panel health"—i.e., that the panel is nationally representative and that respondents provide honest and accurate answers to questions. Additional panel health checks include participation limits, screening questions, digital fingerprinting, IP verification, anti-automation filtering, random and illogical responding, capturing and removing flatliners and speeders, among others. Dynata utilizes a "double opt-in" procedure in its recruitment process, which helps to verify the respondent's identity and ensure the panel is populated by quality participants.[8]

37. I have personally used Dynata as a sample provider for many consumer research studies, am familiar with its panel health procedures, and am satisfied that it provides high quality, representative respondents. The Dynata consumer panel constituted the sampling frame of the study.

38. The survey was programmed using Qualtrics, an industry-leading online survey software platform. All survey programming was performed by Keegan & Donato Consulting. The survey software facilitates the programming and execution of advanced survey designs, custom coding, complex skip logic, and advanced rotation and randomization of questions, answer options, and stimuli. All such options were employed wherever appropriate.

---

[6] *Global Market Research 2021: An ESOMAR Industry Report*, p. 58-61.

[7] www.dynata.com.

[8] *Dynata Panel Book*. Available at www.dynata.com/panel-book-form.

**Sampling**

39. Surveys typically, and in this case, are designed such that the results are reliable at the 95 percent confidence level. A total of 1,075 respondents qualified for and completed the questionnaire (see full disposition of contacts at Exhibit 7). Samples of this size are associated with a maximum margin of error of ±3.0 percentage points at 95 percent confidence.[9]

**Bias Management**

40. All efforts were made to present the survey questions in an objective, unbiased, and non-leading format. Respondents were presented with a "don't know," "no opinion," or equivalent answer option wherever appropriate throughout the survey to minimize guessing.

41. It is common in consumer survey research for the researcher to employ various types of randomization of questions and answer options across respondents. Randomization is an important tool that researchers use to minimize the potential for order bias (i.e., order effects) to impact the study's results. Order bias refers to a respondent's tendency to select the first answer in a given list of answer options regardless of the question content[10] or answer the first question in a series of questions differently than later questions.[11] In this study, randomization was used wherever possible to minimize the potential for order bias.

42. To ensure the integrity of the data, I sought to identify "speeders" for potential removal from the sample. Respondents who complete a survey too quickly may introduce respondent-related error into the survey data. Respondents were to be flagged if they completed the

---

[9] "Traditionally, scientists adopt the 95% level of confidence, which means that if 100 samples of the same size were drawn, the confidence interval expected for at least 95 of the samples would be expected to include the true population value." See Diamond, S. (2011). "Reference Guide On Survey Research," in Reference Manual on Scientific Evidence. Federal Judicial Center/National Academy of Sciences, p. 381.

[10] Visser, P. S., Krosnick, J. A., & Lavrakas, P. J. (2000). Survey research. In H. T. Reis & C. M. Judd (Eds.), *Handbook of Research Methods in Social and Personality Psychology*. Cambridge University Press, p. 240.

[11] See Diamond, S. (2011). "Reference Guide On Survey Research," in Reference Manual on Scientific Evidence. Federal Judicial Center/National Academy of Sciences, p. 396: "To control for order effects, the order of the questions and the order of the response choices in a survey should be rotated, so that, for example, one-third of the respondents have Product A listed first, one-third of the respondents have Product B listed first, and one-third of the respondents have Product C listed first. If the three different orders are distributed randomly among respondents, no response alternative will have an inflated chance of being selected because of its position, and the average of the three will provide a reasonable estimate of response level."

survey in less than one-third of the median completion time across all respondents in the sample. No respondent was removed from the sample based on this criterion.

43. Consistent with standard survey methodologies and practices, the screening portion of the questionnaire also employed security questions, including a CAPTCHA question to prevent bots and other automated respondents from participating in the study. Respondents who did not pass the security measures were not permitted to complete the survey.

44. The study was conducted under "double blind" conditions—neither the panel provider nor the survey participants knew the purpose of the study or the sponsoring party. Double blind research is designed to prevent external or circumstantial bias from impacting the survey process and results.

**Questionnaire**

45. In consumer surveys, data are collected by means of a questionnaire. The language and mechanics of the questionnaire is provided in summary below. Screenshots of the questionnaire as it was viewed by respondents are provided at Exhibit 3.

46. The questionnaire opened with a standard survey research statement that conveyed relevant information about duration, privacy issues, etc., and instructed respondents not to guess if they did not know the answer to a question but, instead, to use the "Don't know" option that was provided when appropriate. Only respondents who indicated that they understood the instructions were allowed to continue with the survey.

47. The next question asked respondents to provide their age. Only respondents aged 18 and older were permitted to continue with the survey:

Which of the following age brackets contains your age on your last birthday?

m Under 18

m 18 - 30

m 31 - 40

m 41 - 50

m 51 - 60

m 61 - 70

m 71 or older

48. On the next screen, respondents were asked to indicate the state in which they reside. This question was for demographic information purposes only and was not used to filter out any respondents:

In which U.S. state do you currently reside?



Alabama

49. A CAPTCHA question was included as an additional security measure. This question type confirms that respondents are devoting appropriate attention to their responses and prevents bots and other automated respondents from participating in the study. Only respondents who completed the CAPTCHA correctly were permitted to continue with the survey.

50. Respondents were next asked about the types of Internet browsers they have used during the last five years:

Which of the following Internet web browsers, if any, have you used in the <u>last five years</u>? Please select all that apply.

○ Safari
○ Chrome
○ Edge / Internet Explorer
○ Don't know / Other

51. In the next question, respondents were asked to indicate which private browsing mode(s) they had used during the last five years. This question employed dynamic piping—i.e., only the browsers that each respondent indicated using in the question described above appeared in the list of answer options.

Some Internet web browsers offer a **private browsing mode**. Which of the following types of private browsing, if any, have you used in the last five years? Please select all that apply.

○ Private browsing mode in Chrome ("Incognito")

○ Private browsing mode in Edge / Internet Explorer ("InPrivate")

○ Private browsing mode in Safari ("Private Browsing Mode")

○ None of these

52. The next question was designed to identify respondents who held a Google account during the last five years. Two other account types—Microsoft and Apple—were also included. Respondents were asked:

If you know, which of the following types of accounts have you had at any time during the last five years? Please select all that apply.

○ Google account (e.g., Gmail, Google Docs, Google Drive, Google Photos)

○ Microsoft account (e.g., OneDrive, Microsoft Teams, OneNote)

○ Apple account (e.g., iCloud, Apple Pay, Apple Music)

○ None of these

53. The main questionnaire concluded with several standard demographic questions regarding education level, gender, and household income, as well as a final attention filter question. The full questionnaire is provided at Exhibit 3.

## V. Sample Characteristics

54. The sample for this study is nationally representative, providing a robust, projectable overview of the Internet browsing behaviors of prospective Class Members. Sample demographic characteristics for the study participants are shown in Table 1 below.

*Table 1. Sample characteristics - demographics*

|  | % Respondents (n=1,075) |
|---|---|
| **Age** | |
| 18 - 30 | 19.8 |
| 31 - 40 | 26.1 |
| 41 - 50 | 14.2 |
| 51 - 60 | 13.0 |
| 61 - 70 | 16.9 |
| 71 or older | 9.9 |
| **Education** | |
| Less than high school | 4.7 |
| High school graduate | 23.7 |
| Some college | 23.0 |
| 2-year degree | 8.8 |
| 4-year degree | 26.3 |
| Master's / Professional degree | 11.5 |
| Doctorate | 2.0 |
| **Household income** | |
| Under $35,000 | 22.9 |
| $35,000 - $49,999 | 17.5 |
| $50,000 - $74,999 | 17.8 |
| $75,000 - $99,999 | 12.6 |
| $100,000 - $124,999 | 7.4 |
| $125,000 - $149,999 | 6.8 |
| $150,000 or more | 12.4 |
| I prefer not to answer | 2.7 |
| **Gender** | |
| Male | 49.2 |
| Female | 50.2 |
| Prefer to self-identify | 0.1 |
| Prefer not to answer | 0.5 |

# VI. Findings

55. The results of this study of 1,075 prospective Class Members provides usage statistics for the past five years (referred to below as the "relevant period") among U.S. consumers for the Chrome browser and other Internet browsers; private browsing mode use in Chrome and in other Internet browsers; and Google, Microsoft, and Apple accounts.

**Internet Browser Use**

56. Respondents were first asked about their Internet browser use. A majority of survey respondents—77.5 percent—reported use of the Chrome Internet browser during the relevant period. Nearly half of respondents—46.2 percent—reported using Safari during the relevant

period, and 40.8 percent indicated using Edge/Internet Explorer during the relevant period. A summary of these findings is shown in Table 2 below.

*Table 2. Internet Browser Use during Relevant Period*

|  | n | %<br>(n=1,075) |
|---|---|---|
| Chrome | 833 | 77.5 |
| Safari | 497 | 46.2 |
| Edge / Internet Explorer | 439 | 40.8 |
| Other | 142 | 13.2 |
| Don't know | 31 | 2.9 |

57. A total of 1,024 respondents—95.3 percent of the total sample—reported using at least one of the tested browsers (Chrome, Safari, and/or Edge/Internet Explorer) during the relevant period.

58. As shown in Table 3 below, the survey findings also provide information regarding respondents' use of multiple browsers during the relevant period.

*Table 3. Use of Multiple Browsers during Relevant Period*

|  | n | % |
|---|---|---|
| **Chrome users (n=833)**<br>Also used Safari and/or Edge/Internet Explorer | 506 | 60.7 |
| **Safari users (n=497)**<br>Also used Chrome and/or Edge/Internet Explorer | 369 | 74.2 |
| **Edge / Internet Explorer users (n=439)**<br>Also used Chrome and/or Safari | 397 | 90.4 |

**Private Browsing Mode Use**

59. Respondents were next asked about their use of private browsing mode for the Internet browsers that they indicated they had used during the relevant period. Among respondents who indicated using Chrome during the relevant period (n=833), 64.1 percent indicated using the Chrome private browsing mode (i.e., Incognito) in Chrome. Among respondents who indicated using Safari during the Class Period (n=497), 59.2 percent indicated using private browsing mode in Safari. Among respondents who indicated using Edge/Internet Explorer during the Class Period (n=439), 40.3 percent indicated using private browsing mode in Edge/Internet Explorer. A summary of these findings is shown in Table 4 below.

*Table 4. Private Browsing Use during Relevant Period*

|  | n | % |
|---|---|---|
| ***Chrome users (n=833)*** |  |  |
| Private browsing mode in Chrome ("Incognito") | 534 | 64.1 |
| ***Safari users (n=497)*** |  |  |
| Private browsing mode in Safari ("Private Browsing Mode") | 294 | 59.2 |
| ***Edge / Internet Explorer users (n=439)*** |  |  |
| Private browsing mode in Edge / Internet Explorer ("InPrivate") | 177 | 40.3 |

60. Among those using at least one of the tested browsers (Chrome, Safari, and/or Edge/Internet Explorer) during the Class Period (n=1024), 68.3 percent (n=699) used at least one tested private browsing mode (i.e., Incognito, InPrivate, Private Browsing Mode).

**Google Account Use**

61. Respondents who indicated use of Chrome, Safari, and/or Edge/Internet Explorer during the relevant period (n=1,024) were also asked about their Google, Apple, and Microsoft account usage during the relevant period. As shown in Table 5 below, over 8 in 10 respondents—81.2 percent—reported having a Google account during the relevant period.

*Table 5. Account Use during Relevant Period*

|  | n | %<br>(n=1,024) |
|---|---|---|
| Google account (e.g., Gmail, Google Docs, Google Drive, Google Photos) | 831 | 81.2 |
| Apple account (e.g., iCloud, Apple Pay, Apple Music) | 472 | 46.1 |
| Microsoft account (e.g., OneDrive, Microsoft Teams, OneNote) | 498 | 48.6 |
| None of these | 46 | 4.5 |

62. Table 6 below shows Google account use among users of the specific Internet browsers tested. Google account use across all tested browsers ranged from 77.3 percent (Safari) to 90.0 percent (Chrome).

*Table 6. Google Account Use during Relevant Period Across Specific Browsers*

|  | n | % |
|---|---|---|
| **Chrome users (n=833)** | | |
| Indicated having a Google account during relevant period | 750 | 90.0 |
| **Safari users (n=497)** | | |
| Indicated having a Google account during relevant period | 384 | 77.3 |
| **Edge / Internet Explorer users (n=439)** | | |
| Indicated having a Google account during relevant period | 382 | 87.0 |

63. As shown in Table 7 below, most private browsing mode users across all tested browsers indicated having a Google account during the relevant period.

*Table 7. Google Account Use among Private Browsing Mode Users*

|  | n | % |
|---|---|---|
| **Chrome "Incognito" users (n=534)** | | |
| Indicated having a Google account during relevant period | 489 | 91.6 |
| **Safari "Private Browsing Mode" users (n=294)** | | |
| Indicated having a Google account during relevant period | 222 | 75.5 |
| **Edge / Internet Explorer "InPrivate" users (n=177)** | | |
| Indicated having a Google account during relevant period | 167 | 94.4 |

64. These survey results are common proof across both Classes that provide information regarding characteristics and metrics tied to members of each of the proposed Classes, with a focus on individuals who used the private browsing modes at issue during the relevant time period.

## VII. Conclusions

65. The findings of this study of 1,075 prospective Class Members confirm that Google Chrome, Chrome Incognito, and Google account usage among potential Class Members—i.e., U.S. Internet users—was high during the Class Period.

66. For Chrome, during the past five years:

- 64.1 percent of Chrome users used Chrome Incognito mode; and

- 91.6 percent of Chrome Incognito users had a Google account.

67. For Safari, during the past five years:

   · 59.2 percent of Safari users used the Safari private browsing mode;

   · 75.5 percent of Safari private browsing mode users had a Google account.

68. For Edge/Internet Explorer, during the past five years:

   · 40.3 percent of Edge/Internet Explorer users used the Edge/Internet Explorer private browsing mode;

   · 94.4 percent of Edge/Internet Explorer private browsing mode users had a Google account.

69. The study findings also show that during the relevant period 60.7 percent of Chrome users also used Safari and/or Edge/Internet Explorer, 74.2 percent of Safari users also used Chrome and/or Edge/Internet Explorer, and 90.4 percent of Edge/Internet Explorer users also used Chrome and/or Safari.

I reserve the right to supplement and revise this report and the opinions expressed herein based on the availability of new information.

Mark Keegan

April 15, 2022

Date

**Exhibit 1—Mark Keegan C.V.**

KEEGAN_EXHIBITS_1



31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## Mark T. Keegan, Esq.

**Partner, Keegan & Donato Consulting, LLC**

**Education**

§   Principles of Market Research Program, University of Georgia (graduated 2021)

- Post-graduate program for industry professionals covering all aspects of the market research process

- Coursework based on the Market Research Core Body of Knowledge (MRCBOK), a compilation of the underlying principles and essential skills that comprise the market research process developed by Market Research Institute International (MRII)

- Certification conferred upon participants who demonstrate mastery of concepts presented in 284 detailed module studies across 13 core areas of market research

- Endorsed by all major market research and insights industry associations, including ESOMAR and the Insights Association

§   Professional Certified Marketer (PCM), American Marketing Association (2015 – present)

- AMA certification for individuals who have demonstrated a mastery of comprehensive and core marketing knowledge and principles

- Designation conferred only upon successful completion of rigorous testing spanning full range of marketing principles and concepts

- Ongoing professional development and education credits required on annual basis

- PCM recipients must have demonstrated professional experience in the field of marketing

§   Juris Doctor, Brooklyn Law School (graduated 1995)

§   Bachelor of Arts, History, Pace University (graduated 1990)

§   MBA Coursework, Pace University, Lubin School of Business (1990 – 1991)

§   Corporate Finance Program, Harvard University (coursework)

**Professional Memberships**

§   Admitted to the Bar in the states of New York and Connecticut

§   Member, ESOMAR (World Association of Opinion and Marketing Research Professionals)

§   Member, International Trademark Association (INTA)

§   Member, American Marketing Association (AMA)

§   Member, American Association for Public Opinion Research (AAPOR)

§   Member, Association for Consumer Research (ACR)

§   Registered Representative, National Association of Securities Dealers (Series 7, expired)

**Current Employment**

§   Keegan & Donato Consulting, LLC, Litigation Consultant, Founding Partner (7/2011 – present)

**Consumer Research Experience**

§   Designed and executed over 1,000 consumer research studies reaching more than 250,000 respondents for corporate and litigation clients over the course of two-decade career

§   Focus on trademark and marketing research with principal areas of study including consumer confusion, trade dress, dilution, secondary meaning, genericness, false advertising, consumer perception, consumer understanding, and other consumer research issues

§   Represented a mix of both plaintiffs and defendants in litigation matters spanning a broad range of products, services, and industries

§   Submitted survey research expert reports in relevant venues including federal courts, state courts, at arbitration, to the National Advertising Division of the Council of Better Business Bureaus, and to the Trademark Trial and Appeal Board

§   Founder and owner of two successful marketing and consumer research consulting firms

§   Regularly testify to consumer behavior research, findings, and related issues at trials, depositions, hearings, and other proceedings

§   Qualified to testify as an expert in the field of consumer survey research at federal court trials:

-   *BuzzBallz, LLC v. Jem Beverage Co.*, U.S. District Court (Central District of California), the Honorable William D. Keller presiding

-   *Christopher Lewert v. Boiron, Inc.*, U.S. District Court (Central District of California), the Honorable André Birotte, Jr. presiding

-   *Coty Inc., et al. v. Excell Brands LLC*, U.S. District Court (Southern District of New York), the Honorable Jesse M. Furman presiding

-   *Bodum U.S.A., Inc. v. A Top New Casting, Inc.*, U.S. District Court, Northern District of Illinois, the Honorable Matthew F. Kennelly presiding

§   Qualified as a survey expert by numerous federal court judges (pre-trial)

§   Develop and execute consumer research studies using industry-accepted methodologies, cutting-edge technologies, and industry-leading consumer panel partners

**Marketing and Other Relevant Experience**

§   Served as a marketing consultant to private clients and have advised on a wide range of issues including product development and rollout, advertising, consumer feedback and intelligence, the product life-cycle, and other issues concerning marketing and marketing research

§   Formulated winning brand positioning strategies as a branding expert for some of the best-known consumer brands and services including General Electric (GE), Nike, Pepsi, Subaru, AOL, Excite, NBC, and others

§   Analyzed and evaluated comprehensive marketing campaigns for a broad range of corporate clients to determine their impact on consumers

§   Evaluated all components of integrated marketing communications including advertising, public relations, packaging, sales promotions, and point of sale materials, among others

§   Developed testimony on marketing messages and their intended influence on consumer understanding and behavior

KEEGAN_EXHIBITS_4

**Previous Employment**

§   Keegan & Company LLC, Founding Partner (9/2001 – 12/2015)

Designed and executed consumer research studies, conducted complex litigation consulting, and developed marketing and economic analyses for clients across a range of industries

§   Information Markets Corp, Program Manager (2000 – 2001)

Managed enterprise-wide marketing and product development. Developed use cases and conducted consumer market research. Coordinated with multiple partners including AOL, Excite, and NBC.

§   Affiliation Networks, Inc., Project Manager (1999 – 2000)

Produced online advertising solutions for Fortune 500 clients. Coordinated creative team of account managers, designers, programmers and copywriters.

§   UpTick Technologies, Marketing Consultant (1999)

Managed the creation of innovative marketing products for large brokerage software provider

§   Cosmos Internet Solutions, Marketing Consultant (1998 – 1999)

Developed marketing strategy for business ISP and hosting provider as well as Web site marketing and development for clients

§   FactSet Research Systems, Product Development (1996 – 1998)

Formulated product and communications strategies for leading integrated financial and economic database provider

§   Warren Keegan Associates, Inc., Marketing Consultant (1992 – 1996)

Marketing consultant to clients across a range of industries. Edited and contributed content to marketing textbooks and other academic marketing publications.

§   BMW of North America, Inc., Graduate Appointment (1991)

Reviewed, analyzed, and cataloged broad-based market research on consumer preferences and attitudes in the automobile industry

KEEGAN_EXHIBITS_5

**Submitted Surveys Excluded by Courts**[*]

§   *Kudos, Inc. v. Kudoboard, LLC, et al.* (2021). This Squirt-style survey was designed
    to test for a likelihood of confusion between two competing brands of employee
    recognition software among users and likely purchasers of this type of software. The
    Court disagreed with the survey universe, opining that a narrower population
    definition should have been employed. A rebuttal report that I submitted in this matter
    was accepted by the Court.

§   *The Episcopal Church, et al. v. The Right Reverend Mark J. Lawrence, et al.* (2019).
    In this Teflon-style survey, I interviewed Episcopalians regarding the potential
    genericness of the mark THE EPISCOPAL CHURCH. The Court disagreed with the
    survey universe, opining that the population definition should have included non-
    Episcopalians.

§   *Warner Brothers Entertainment, Inc., et al. v. The Global Asylum, Inc.* (2012). A
    deficiency in the pleadings (the client's failure to submit my resume among other
    credentials) led to the court excluding this survey at a preliminary injunction hearing.
    I did not testify in this matter.

**Lectures, Presentations & Publications**

§   *Squirt vs. Eveready: Battle of the Titans*, 9th Annual Intellectual Property Law
    Symposium, hosted by The Florida Bar Continuing Legal Education Committee and
    Business Law Section, April 12-13, 2018. CLE-accredited presentation.

§   *Panel Power: Online Panel Sampling for Litigation Surveys*, 8th Annual Intellectual
    Property Law Symposium, hosted by The Florida Bar Continuing Legal Education
    Committee and Business Law Section, March 30-31, 2017. CLE-accredited
    presentation.

§   *Evaluating a Brand's Equity in a Nascent Market*, ESOMAR World Research, The
    EUREKA's Project - Success Stories of Market Research, 2016.

§   *Consumer Survey Research for Litigation: With Great Data Comes Great Power*.
    Presentation before the Pennsylvania Bar Association, Intellectual Property Law
    Group, 12/8/2014.

---

[*] Lifetime. Court opinions available upon request.

**Continuing Education**

§   *Online Sample Fraud: Causes, Costs & Cures*, Insights Association Webinar, 2/11/2022.

§   *Quantifying Unjust Enrichment*, Fox Forensic Accounting, 10/6/2021.

§   *Questionnaire Design Best Practices*, ESOMAR/University of Georgia Webinar, 5/19/2021.

§   *Making Online Samples More Representative*, ESOMAR Webinar, 3/17/2021.

§   *Intelligence 360: Solicited + Unsolicited Customer Opinion*, ESOMAR Webinar, 2/17/2021.

§   *The Future of Online Polling After 2020*, ESOMAR Webinar, 12/16/2020.

§   *The Opportunity for UX Research*, ESOMAR/University of Georgia Webinar, 12/8/2020.

§   *BigSurv20: Big Data Meets Survey Science*, Online Conference, November/December 2020.

§   *International Trademark Association (INTA), 141st Annual Meeting (2019)*, Attendee, May 2019.

**Contact Information**

Keegan & Donato Consulting, LLC
31 Purchase Street, Ste. 3-4
Rye, NY 10580
(914) 967-9421
mark@keegandonato.com

KEEGAN_EXHIBITS_7



**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## Mark Keegan Testimony List (Past Four Years)

**Depositions**

| Case Caption | Court | Client |
|---|---|---|
| Kenco Bucket Trucks LLC v. Versabucket LLC, et al. | District Court, Harris County, Texas, 113th Judicial District | Defendants |
| EBIN New York, Inc. v. SIC Enterprise, Inc., et al. | United States District Court, Eastern District of New York | Plaintiff |
| Kudos, Inc. v. Kudoboard, LLC, et al. | United States District Court, Northern District of California | Plaintiff |
| Master Inspector Certification Board, Inc. v. Examination Board of Professional Home Inspectors, Inc. | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Plaintiff (Petitioner) |
| Solid 21 Inc. v. Richemont North America, Inc. et al. | United States District Court, Southern District of New York | Defendants |
| Watching Time, LLC v. International Watchman, Inc. | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Plaintiff (Petitioner) |
| Diamond Resorts U.S. Collection Development, LLC, et al. v. Newton Group Transfers, LLC, et al. | United States District Court, Southern District of Florida, West Palm Beach Division | Defendants |
| Fair Isaac Corporation v. Fido Alliance, Inc. | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Defendant (Applicant) |
| Solid 21, Inc. v. Breitling U.S.A. Inc., et al. | United States District Court, District of Connecticut | Defendants |
| Juul Labs, Inc. v. Eonsmoke, LLC d/b/a 4X PODS, et al. | United States District Court, District of New Jersey | Defendants |
| Restoration Hardware, Inc., et al., v. Bungalow Home, LLC | United States District Court, Southern District of Ohio, Western Division | Plaintiffs |
| United States of America ex. rel., Yoash Gohil v. Sanofi U.S. Services Inc., et al. | U.S. District Court, Eastern District of Pennsylvania | Defendants |
| Alo, LLC v. Acadia Malibu, Inc., d/b/a Alo House Recovery Centers, et al. | U.S. District Court, Central District of California | Plaintiff |

KEEGAN_EXHIBITS_8



**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

| Case Caption | Court | Client |
|---|---|---|
| Farjad Fani, et al. v. Shartsis Friese LLP, et al. | JAMS Arbitration, JAMS Reference No. 1100104777 | Claimants |
| Solid 21, Inc. v. Ulysse Nardin USA Inc., et al. | U.S. District Court, Southern District of Florida | Defendants |
| The Shoppes at River Station, LLC v. College Park Retail Investors, LLC | Superior Court of Fulton County, State of Georgia | Plaintiff |
| Spartan Chemical Company, Inc. v. Ecolab, Inc. | U.S. District Court, Northern District of Ohio, Western Division | Plaintiff |
| Allergan USA, Inc. v. Imprimis Pharmaceuticals, Inc. | U.S. District Court, Central District of California, Southern Division | Defendant |
| The Episcopal Church, et al. v. The Right Reverend Mark J. Lawrence, et al. | U.S. District Court, District of South Carolina, Charleston Division | Plaintiffs |
| Spangler Candy Company v. Tootsie Roll Industries, LLC | U.S. District Court, Northern District of Ohio, Western Division – Toledo | Plaintiff |
| FCOA LLC v. Foremost Title & Escrow Services, LLC | U.S. District Court, Southern District of Florida | Defendant |
| Dentsply International Inc. v. Dental Brands for Less LLC d/b/a Dental Wholesale Direct | U.S. District Court, Southern District of New York | Plaintiff |
| eMove, Inc. and u-Haul International, Inc. v. Hire A Helper, LLC, et al. | U.S. District Court, Southern District of California | Defendants |
| J-B Weld Company, LLC v. The Gorilla Glue Company | U.S. District Court, Northern District of Georgia | Defendant |
| Gulfstream Aerospace Corp. v. Gulfstream Unsinkable Boats, LLC | U.S.P.T.O. Trademark Trial and Appeal Board | Defendant |
| Lokai Holdings, LLC v. Twin Tiger USA LLC | U.S. District Court, Southern District of New York | Plaintiff |
| Michael Kors, LLC v. Chunma, USA, Inc., et al. | U.S. District Court, Central District of California | Defendant |
| Mars, Inc. et al. v. The J.M. Smucker Company, et al. | U.S. District Court, Eastern District of Virginia | Plaintiffs |
| Bodum U.S.A., Inc. v. A Top New Casting, Inc. | U.S. District Court, Northern District of Illinois, Eastern Division | Defendant |

KEEGAN_EXHIBITS_9



31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

Trials

| Case Caption | Court | Client |
|---|---|---|
| Bodum U.S.A., Inc. v. A Top New Casting, Inc. | U.S. District Court, Northern District of Illinois, Eastern Division | Defendant |
| Coty Inc., et al. v. Excell Brands, LLC | U.S. District Court, Southern District of New York | Defendant |
| Christopher Lewert, et al., v. Boiron, Inc., et al. | U.S. District Court, Central District of California | Plaintiffs |
| BuzzBallz, LLC v. BuzzBox Beverages, Inc., et al. | U.S. District Court, Central District of California | Plaintiff |

KEEGAN_EXHIBITS_10



**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## About Us



Mark Keegan brings a wide breadth of experience to Keegan & Donato Consulting, having spent over a decade formulating case strategies in complex litigation. As a founding partner of Keegan & Donato Consulting, Mr. Keegan has actively consulted on a variety of litigation issues ranging from marketing and international business to consumer research for Lanham Act claims.

Prior to his work with Keegan & Donato Consulting, Mr. Keegan assisted a diverse range of companies as a marketing strategist and operations manager. From working with top brands to create innovative online advertising solutions to positioning and communicating a company's competitive advantage, Mr. Keegan's practical execution of successful marketing strategies has benefited several organizations.

Mr. Keegan received his law degree from Brooklyn Law School (1995) and is licensed to practice in New York and Connecticut. His undergraduate work was completed at Pace University where he received a Bachelor of Arts in history.



Tony Donato has served as a consultant in complex litigation matters since 2004. He has a broad range of experience in research, strategy, survey design & execution, data analysis and case management. Mr. Donato has consulted on a wide variety of marketing, intellectual property, and consumer behavior cases covering trademark, copyright, patent, best efforts, advertising, business damages, consumer surveys, business ethics, and other issues.

Mr. Donato has a strong analytical background which he developed in his prior employment as a member of the research team at Harvard Medical School's Division on Addictions. He is the co-author of several peer-reviewed journal articles.

Mr. Donato received a Master of Public Policy from Georgetown University (2002) and a Bachelor of Arts in politics from Ursinus College (2000).

KEEGAN_EXHIBITS_11

Last updated: April 14, 2022

**Exhibit 2—Documents Considered**

KEEGAN_EXHIBITS_12



| Documents Considered - Chasom Brown, et al. v. Google LLC |
|---|
| Third Amended Complaint  re: 5:20-cv-03664; U.s. District Court, Northern District of Cal. |
| Order Denying Motion to Dismiss  re: 5:20-cv-03664; U.S. District Court, Northern District of Cal. |
| Diamond, S. (2011). "Reference Guide On Survey Research," in Reference Manual on Scientific Evidence. Federal Judicial Center/National Academy of Sciences, p. 359-423 |
| Global Market Research 2021: An ESOMAR Industry Report |
| Jacoby, J. (2013). Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys, American Bar Association |
| McCarthy, J.T. (2020). McCarthy on Trademarks and Unfair Competition, 5th Ed. |
| Visser, P. S., Krosnick, J. A., & Lavrakas, P. J. (2000). Survey research. In H. T. Reis & C. M. Judd (Eds.), Handbook of Research Methods in Social and Personality Psychology. Cambridge University Press |
| www.esomar.org |
| www.dynata.com |
| www.dynata.com/panel-book-form |

**Exhibit 3—Questionnaire**

KEEGAN_EXHIBITS_14

Thank you for agreeing to participate in this anonymous survey. The survey is for research purposes only. Your responses will be held confidential and we are not trying to sell you anything.

The survey will take just a few minutes of your time. Before we begin, please read the following instructions:

• This survey makes use of images. If you are currently using a device that does not have image capabilities, please stop now and resume this survey when you have access to a compatible device.

• If you typically wear eyeglasses when reading information or looking at pictures or videos on your electronic device, please put them on now and wear them through the remainder of this survey.

• If you don't know the answer, don't recall, or don't have an opinion on any of the questions that follow, please feel free to select that answer when provided. We do not want you to guess at any of your answers.

• Please do not look up answers to any of the survey questions on the Internet or consult with any other persons regarding your survey answers.

• Your browser's back button will be disabled during the survey. Please use the "Next" button within the survey to advance through the questionnaire.

Do you understand and agree to follow the instructions provided above?

| No |
|---|

| Yes |
|---|

| Don't know |
|---|

**Next >>**

KEEGAN_EXHIBITS_15



Which of the following age brackets contains your age on your last birthday?

Under 18

18 - 30

31 - 40

41 - 50

51 - 60

61 - 70

71 or older

Next >>

KEEGAN_EXHIBITS_16



In which U.S. state do you currently reside?

Next >>

KEEGAN_EXHIBITS_17

What is your gender?

Male

Female

Prefer to self-identify:

Prefer not to answer

Next >>

KEEGAN_EXHIBITS_18

Please complete the CAPTCHA below.

I'm not a robot

reCAPTCHA

Privacy - Terms

Next >>

KEEGAN_EXHIBITS_19

Which of the following Internet web browsers, if any, have you used in the <u>last five years</u>? Please select all that apply.

Safari

Edge / Internet Explorer

Chrome

Other

Don't know

Next >>

KEEGAN_EXHIBITS_20

Some Internet web browsers offer a **private browsing mode**. Which of the following types of private browsing, if any, have you used in the last five years? Please select all that apply.

Private browsing mode in Safari ("Private Browsing Mode")

Private browsing mode in Chrome ("Incognito")

Private browsing mode in Edge / Internet Explorer ("InPrivate")

None of these

Next >>

KEEGAN_EXHIBITS_21

If you know, which of the following types of accounts have you had at any time during the <u>last five years</u>? Please select all that apply.

Microsoft account (e.g., OneDrive, Microsoft Teams, OneNote)

Apple account (e.g., iCloud, Apple Pay, Apple Music)

Google account (e.g., Gmail, Google Docs, Google Drive, Google Photos)

None of these

Next >>

KEEGAN_EXHIBITS_22

Please select "Green" from the list below.

Red

Blue

Green

Yellow

Next >>

KEEGAN_EXHIBITS_23

Now, a few more questions for classification purposes only. Which of the following best describes your educational background?

Less than high school

High school graduate

Some college

2-year degree

4-year degree

Master's / Professional degree

Doctorate

Next >>

KEEGAN_EXHIBITS_24



Which of the following includes your household's approximate annual income in 2021?

Under $35,000

$35,000 - $49,999

$50,000 - $74,999

$75,000 - $99,999

$100,000 - $124,999

$125,000 - $149,999

$150,000 or more

I prefer not to answer

Next >>

KEEGAN_EXHIBITS_25

We thank you for your time spent taking this survey.
Your response has been recorded.

KEEGAN_EXHIBITS_26

**Exhibit 4—Tabulated Data**

KEEGAN_EXHIBITS_27

## Q1 - Beginning instruction



| Answer | % | Count |
| --- | --- | --- |
| Yes | 100.0% | 1075 |
| No | 0.0% | 0 |
| Don't know | 0.0% | 0 |
| Total | 100% | 1075 |

KEEGAN_EXHIBITS_28

Q2 - Age



| Answer | % | Count |
| --- | --- | --- |
| Under 18 | 0.0% | 0 |
| 18 - 30 | 19.8% | 213 |
| 31 - 40 | 26.1% | 281 |
| 41 - 50 | 14.2% | 153 |
| 51 - 60 | 13.0% | 140 |
| 61 - 70 | 16.9% | 182 |
| 71 or older | 9.9% | 106 |
| Total | 100% | 1075 |

KEEGAN_EXHIBITS_29

## Q3 - State



| Answer | % | Count |
|---|---|---|
| Alabama | 1.2% | 13 |
| Alaska | 0.2% | 2 |
| Arizona | 2.5% | 27 |
| Arkansas | 0.6% | 6 |
| California | 13.5% | 145 |

KEEGAN_EXHIBITS_30

| | | |
|---|---|---|
| Colorado | 2.1% | 23 |
| Connecticut | 0.9% | 10 |
| Delaware | 0.2% | 2 |
| District of Columbia | 0.1% | 1 |
| Florida | 7.4% | 80 |
| Georgia | 2.9% | 31 |
| Hawaii | 0.4% | 4 |
| Idaho | 0.2% | 2 |
| Illinois | 3.6% | 39 |
| Indiana | 2.4% | 26 |
| Iowa | 0.9% | 10 |
| Kansas | 0.7% | 8 |
| Kentucky | 1.7% | 18 |
| Louisiana | 1.3% | 14 |
| Maine | 0.5% | 5 |
| Maryland | 1.6% | 17 |
| Massachusetts | 1.7% | 18 |
| Michigan | 3.3% | 35 |
| Minnesota | 1.3% | 14 |
| Mississippi | 0.9% | 10 |
| Missouri | 2.0% | 21 |
| Montana | 0.2% | 2 |
| Nebraska | 0.6% | 6 |
| Nevada | 1.0% | 11 |
| New Hampshire | 0.5% | 5 |
| New Jersey | 3.3% | 35 |
| New Mexico | 0.5% | 5 |
| New York | 5.6% | 60 |
| North Carolina | 3.2% | 34 |
| North Dakota | 0.9% | 10 |

KEEGAN_EXHIBITS_31

| | | |
|---|---|---|
| Ohio | 4.3% | 46 |
| Oklahoma | 1.0% | 11 |
| Oregon | 1.4% | 15 |
| Pennsylvania | 4.6% | 49 |
| Rhode Island | 0.2% | 2 |
| South Carolina | 1.5% | 16 |
| South Dakota | 0.2% | 2 |
| Tennessee | 2.8% | 30 |
| Texas | 8.8% | 95 |
| Utah | 0.8% | 9 |
| Vermont | 0.0% | 0 |
| Virginia | 1.6% | 17 |
| Washington | 1.1% | 12 |
| West Virginia | 1.1% | 12 |
| Wisconsin | 0.8% | 9 |
| Wyoming | 0.1% | 1 |
| Other | 0.0% | 0 |
| None of these | 0.0% | 0 |
| Total | 100% | 1075 |

## Q4 - Gender



| Answer | % | Count |
|---|---|---|
| Male | 49.2% | 529 |
| Female | 50.2% | 540 |
| Prefer to self-identify: | 0.1% | 1 |
| Prefer not to answer | 0.5% | 5 |
| Total | 100% | 1075 |

## Q4_3_TEXT - Prefer to self-identify:

Prefer to self-identify: - Text

Demi-girl

## Q6 - Browsers



| Answer | % | Count |
|---|---:|---:|
| Chrome | 77.5% | 833 |
| Safari | 46.2% | 497 |
| Edge / Internet Explorer | 40.8% | 439 |
| Other | 13.2% | 142 |
| Don't know | 2.9% | 31 |
| Total | 100% | 1075 |

KEEGAN_EXHIBITS_34

## Q7 - Private browsing browsers



| Answer | % | Count |
|---|---|---|
| Private browsing mode in Safari ("Private Browsing Mode") | 28.7% | 294 |
| Private browsing mode in Edge / Internet Explorer ("InPrivate") | 17.3% | 177 |
| Private browsing mode in Chrome ("Incognito") | 52.1% | 534 |
| None of these | 31.7% | 325 |
| Total | 100% | 1024 |

KEEGAN_EXHIBITS_35

Q8 - Accounts



| Answer | % | Count |
|---|---|---|
| Google account (e.g., Gmail, Google Docs, Google Drive, Google Photos) | 81.2% | 831 |
| Microsoft account (e.g., OneDrive, Microsoft Teams, OneNote) | 48.6% | 498 |
| Apple account (e.g., iCloud, Apple Pay, Apple Music) | 46.1% | 472 |
| None of these | 4.5% | 46 |
| Total | 100% | 1024 |

KEEGAN_EXHIBITS_36

Q9 - Green



| Answer | % | Count |
|---|---|---|
| Red | 0.0% | 0 |
| Green | 100.0% | 1075 |
| Blue | 0.0% | 0 |
| Yellow | 0.0% | 0 |
| Total | 100% | 1075 |

## Q10 - Education



| Answer | % | Count |
|---|---|---|
| Less than high school | 4.7% | 50 |
| High school graduate | 23.7% | 255 |
| Some college | 23.0% | 247 |
| 2-year degree | 8.8% | 95 |
| 4-year degree | 26.3% | 283 |
| Master's / Professional degree | 11.5% | 124 |
| Doctorate | 2.0% | 21 |
| Total | 100% | 1075 |

KEEGAN_EXHIBITS_38

## Q11 - Income



| Answer | % | Count |
|---|---|---|
| Under $35,000 | 22.9% | 246 |
| $35,000 - $49,999 | 17.5% | 188 |
| $50,000 - $74,999 | 17.8% | 191 |
| $75,000 - $99,999 | 12.6% | 135 |
| $100,000 - $124,999 | 7.4% | 80 |
| $125,000 - $149,999 | 6.8% | 73 |
| $150,000 or more | 12.4% | 133 |
| I prefer not to answer | 2.7% | 29 |
| Total | 100% | 1075 |

KEEGAN_EXHIBITS_39

## Exhibit 5—Untabulated Data

**Produced electronically.**

KEEGAN_EXHIBITS_40

**Exhibit 6—Disposition of Contacts**

KEEGAN_EXHIBITS_41



**Disposition of Contacts - Chasom Brown, et al. v. Google LLC**

|  | n | % |
|---|---|---|
| Responded to invitation | 1,205 | 100.0% |
| | | |
| Rejected - failed instruction acknowledgement question | 109 | 9.0% |
| Rejected - failed age question (under 18) | 7 | 0.6% |
| Rejected - failed - state (selected "other" or "don't know") | 1 | 0.1% |
| Rejected - failed security question ("Green") | 6 | 0.5% |
| Rejected - speeder | 0 | 0.0% |
| Rejected - over quota | 7 | 0.6% |
| Total qualified respondents | 1,075 | 89.2% |