# MAY 3 HEARING TRANSCRIPT RE SPECIAL MASTER OBJECTIONS

# Redacted Version of Document Sought to be Sealed

```
 1                 UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

 4

 5   CHASOM BROWN, MARIA NGUYEN, AND   )  C-20-03664 YGR
     WILLIAM BYATT, INDIVIDUALLY AND   )
 6   ON BEHALF OF ALL SIMILARLY        )  SAN JOSE, CALIFORNIA
     SITUATED,                         )
 7                                     )  MAY 3, 2022
                      PLAINTIFF,       )
 8                                     )  PAGES 1-65
              VS.                      )
 9                                     )  SEALED PROCEEDINGS
     GOOGLE LLC AND ALPHABET INC.,     )
10                                     )
                      DEFENDANTS.      )
11   _____  )

12

13            SEALED TRANSCRIPT OF ZOOM PROCEEDINGS
              BEFORE THE HONORABLE SUSAN VAN KEULEN
14               UNITED STATES MAGISTRATE JUDGE

15

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFFS:   SUSMAN GODFREY LLP
                           BY:  AMANDA K. BONN
18                         1900 AVENUE OF THE STARS, SUITE 1400
                           LOS ANGELES, CALIFORNIA  90067
19
                           BY:  ALEXANDER P. FRAWLEY
20                              RYAN SILA
                           1301 AVENUE OF THE AMERICAS, 32ND FLOOR
21                         NEW YORK, NEW YORK  10019

22            APPEARANCES CONTINUED ON NEXT PAGE

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1    APPEARANCES (CONTINUED)

 2    FOR THE PLAINTIFFS:     BOIES SCHILLER FLEXNER LLP
                              BY:  MARK C. MAO
 3                                 BEKO REBLITZ-RICHARDSON
                                   ERIKA B. NYBORG-BURCH
 4                            44 MONTGOMERY STREET, 41ST FLOOR
                              SAN FRANCISCO, CALIFORNIA  94104
 5
                              BY:  ALISON L. ANDERSON
 6                            725 S. FIGUEROA STREET, 31ST FLOOR
                              LOS ANGELES, CALIFORNIA  90017
 7
                              MORGAN & MORGAN
 8                            COMPLEX LITIGATION GROUP
                              BY:  JOHN A. YANCHUNIS
 9                                 RYAN J. MCGEE
                              201 N. FRANKLIN STREET, 7TH FLOOR
10                            TAMPA, FLORIDA  33602

11
                              BY:  MICHAEL F. RAM
12                            711 VAN NESS AVENUE, SUITE 500
                              SAN FRANCISCO, CA 94102
13

14    FOR THE DEFENDANT:      QUINN EMANUEL URQUHART & SULLIVAN
                              BY:  ANDREW H. SCHAPIRO
15                            191 N. WACKER DRIVE, SUITE 2700
                              CHICAGO, ILLINOIS  60606
16

17                            BY:  STEPHEN A. BROOME
                                   VIOLA TREBICKA
18                            865 S. FIGUEROA STREET, 10TH FLOOR
                              LOS ANGELES, CALIFORNIA  90017
19

20                            BY:  JOSEF ANSORGE
                              51 MADISON AVENUE
21                            NEW YORK, NEW YORK  10010

22                            BY: XI GAO
                              1300 I STREET NW, SUITE 900
23                            WASHINGTON, DC 20005

24    ALSO PRESENT:           DOUGLAS BRUSH
                              TIMOTHY SCHMIDT
25                            CHRISTOPHER THOMPSON
                              LILLIAN DAI
```

Case 4:20-cv-03664-YGR Document 627 *SEALED* Filed 07/05/22 Page 4 of 66
SEALED PROCEEDINGS                                                    3

```
 1     SAN JOSE, CALIFORNIA                    MAY 3, 2022

 2                    P R O C E E D I N G S

 3        (SEALED ZOOM PROCEEDINGS CONVENED AT 1:05 P.M.)

 4            THE CLERK:  PLEASE COME TO ORDER, THE HONORABLE

 5     SUSAN VAN KEULEN PRESIDING.

 6            THE COURT:  GOOD AFTERNOON, EVERYONE.  WELCOME TO THE

 7     1:00 O'CLOCK CALENDAR.

 8        WE'RE ON TODAY IN THE BROWN VERSUS GOOGLE AND CALHOUN

 9     VERSUS GOOGLE MATTERS FOR A HEARING WITH REGARDS TO REPORT AND

10     RECOMMENDATION FROM THE SPECIAL MASTER ON THE PRESERVATION

11     PLAN.

12        WE WILL TAKE THE MATTERS ONE AT A TIME, STARTING WITH

13     BROWN.  I HAVE APPRISED THE PARTIES OF MY TIME LIMITS AND

14     TOPICS TO HELP GUIDE THE DISCUSSION TODAY.

15        SO LET'S START WITH APPEARANCES, AND THEN WE'LL TURN OUR

16     ATTENTION TO CLOSING THE HEARING.

17            MS. FANTHORPE, CALL THE MATTER, PLEASE.

18            THE CLERK:  CALLING CASE 20-CV-3664, BROWN, ET AL,

19     VERSUS GOOGLE LLC, ET AL.

20        COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD,

21     BEGINNING WITH PLAINTIFF.

22            MS. BONN:  GOOD MORNING, YOUR HONOR.

23        AMANDA BONN WITH SUSMAN GODFREY FOR PLAINTIFFS.

24        AND ALSO ON THE LINE WITH ME ARE MY COLLEAGUE ALEX FRAWLEY

25     FROM SUSMAN GODFREY; MARK MAO, BEKO REBLITZ-RICHARDSON, AND
```

```
 1          ALISON ANDERSON FROM THE BOIES, SCHILLER & FLEXNER LAW FIRM;
 2     JOHN YANCHUNIS AND RYAN MCGEE FROM THE MORGAN & MORGAN LAW
 3     FIRM.
 4               THE COURT:  ALL RIGHT.  THANK YOU, MS. BONN.
 5          IS THAT EVERYONE FOR PLAINTIFFS IN BROWN?
 6               MS. BONN:  YES, YOUR HONOR.
 7               THE COURT:  THANK YOU.
 8          AND APPEARANCES FOR DEFENDANT, PLEASE.
 9               MR. SCHAPIRO:  HELLO, YOUR HONOR.
10          I'M ANDREW SCHAPIRO FROM QUINN, EMANUEL FOR GOOGLE, AND I
11     AM JOINED BY MY COLLEAGUES VIOLA TREBICKA, JOSEPH ANSORGE, ONE
12     OF OUR STAR ASSOCIATES, TRACY GAO, AND OUR COLLEAGUE
13     STEVE BROOME.
14          MS. TREBICKA, MR. ANSORGE, DR. ANSORGE, AND MS. GAO WILL
15     BE DOING THE LION'S SHARE, OR MAYBE THE ENTIRETY OF THE
16     SPEAKING TODAY.
17               THE COURT:  THANK YOU, MR. SCHAPIRO.
18          ALL RIGHT.  I DID RECEIVE THE PARTIES' REQUEST THAT THIS
19     PROCEEDING BE SEALED, AND I HAVE GRANTED THAT REQUEST.
20          I UNDERSTAND THERE WAS A REQUEST FOR SOME ADDITIONAL
21     ATTENDEES TO BE ALLOWED TO BE PRESENT IN THE HEARING, AND I
22     ALLOW THAT IF THE PARTIES AGREE.  I HAVEN'T HEARD BACK.
23          SO WHERE ARE WE ON THAT?  MS. BONN?
24               MS. BONN:  WE HAVE TWO FOLKS THAT ARE IN THE WAITING
25     ROOM, CHRIS THOMPSON, OUR DECLARANT, AND ONE OF OUR CONSULTING
```

1    EXPERTS, LILLIAN DAI, BOTH OF WHOM ARE APPROVED UNDER THE

2    PROTECTIVE ORDER TO VIEW AEO MATERIALS, SO WE REQUEST THAT THEY

3    BE PROMOTED, PLEASE.

4           THE COURT:  ALL RIGHT.  ANY OBJECTION?

5           MR. SCHAPIRO:  YES, YOUR HONOR, WE DO OBJECT.  WE

6    DIDN'T BRING ANY -- OUR EXPERTS WOULD BE GOOGLE ENGINEERS.

7       WE SAW THIS ABOUT TWO HOURS AGO.  WE DIDN'T BRING ANYONE

8    LIKE THAT.

9       WE CERTAINLY WOULD OBJECT TO THEM HAVING ANY SPEAKING ROLE

10   IN SOME SORT JUST IN FAIRNESS.

11          THE COURT:  THEY WON'T HAVE A SPEAKING ROLE.  I CAN

12   ASSURE YOU OF THAT.

13      BUT I DON'T SEE ANY REASON, IF THEY ARE CLEARED FOR AEO,

14   WHY THEY CAN'T ATTEND.

15          MR. SCHAPIRO:  THAT'S ALL RIGHT, SURE.  THEY'LL BE

16   ALLOWED TO SEE THE TRANSCRIPT.  SURE, THAT'S FINE.

17          THE COURT:  ALL RIGHT.

18      MS. FANTHORPE, THOSE INDIVIDUALS CAN BE MOVED FROM THE

19   WAITING ROOM TO ATTENDEES.

20          MR. MAO:  SORRY, YOUR HONOR.  THIS IS MR. MAO.

21      ONE QUICK HOUSEKEEPING MATTER.  THE PLAINTIFF DID NOT

22   REQUEST THAT THE PROCEEDINGS BE SEALED, THOUGH WE UNDERSTAND

23   YOUR HONOR HAD ORDERED IT PURSUANT TO GOOGLE'S MOTION.

24      I JUST WANTED TO MAKE THAT CLEAR.

25          THE COURT:  GOT IT.  I GOT A REQUEST IN EACH CASE.

1    WE'LL SEAL IT.  SINCE WE'RE PROCEEDING BY VIDEO, IT IS

2    EASIER THAN -- I WILL HAVE THE PARTIES REVIEW THE TRANSCRIPT

3    AND WE WILL UNSEAL ANY PUBLIC PORTIONS.

4        MS. FANTHORPE, LET ME KNOW WHEN YOU'VE BEEN ABLE TO GET

5    THOSE FOLKS IN.  I KNOW WE HAVE TO DEAL WITH ZOOM -- WE'RE ON

6    ZOOM TIME.

7        (PAUSE IN PROCEEDINGS.)

8        THE CLERK:  OH, YOUR HONOR, I BELIEVE THEY'RE BOTH

9    ADMITTED.

10       I STILL HAVE FOUR ATTENDEES THAT WILL NEED TO LEAVE SO

11   THAT I CAN LOCK DOWN THIS HEARING.  OTHERWISE THEY HEAR

12   EVERYTHING.

13       MS. BONN:  I APOLOGIZE, MS. FANTHORPE.

14       I SEE THAT ONE OF MY COLLEAGUES, RYAN SILA, FROM SUSMAN

15   GODFREY, AND ERIKA NYBORG-BURCH FROM BOIES SCHILLER ARE ON.  I

16   DON'T THINK THEY WILL HAVE SPEAKING ROLES, BUT IF YOU WOULD

17   PROMOTE THEM SO THEY COULD OBSERVE, WE WOULD APPRECIATE IT.

18       THE CLERK:  THAT'S FOR BROWN, CORRECT?

19       MS. BONN:  CORRECT.

20       THE CLERK:  FOR RYAN SILA, AND I'M SORRY, WHO ELSE?

21       MS. BONN:  ERIKA NYBORG-BURCH.

22       AND I'M SORRY, I SEE MICHAEL RAM FROM MORGAN & MORGAN ALSO

23   JUST JOINED.  IF HE COULD BE PROMOTED AS WELL, WE WOULD

24   APPRECIATE IT.

25       MR. SCHAPIRO:  AND, YOUR HONOR, WHILE THEY'RE PAUSED,

```
 1    JUST SO IT'S NOT DISRUPTIVE, I WANTED TO FLAG THAT ABOUT AN

 2    HOUR AND A HALF IN, A LITTLE AFTER THAT, I'M GOING TO HAVE TO

 3    SIGN OFF.  I HAVE A CONFLICT THAT I MENTIONED WHEN I WAS BEFORE

 4    YOU LAST WEEK.  BUT NO ONE WILL MISS ME BECAUSE THE PEOPLE WHO

 5    ACTUALLY KNOW WHAT THEY'RE TALKING ABOUT WILL REMAIN.  I

 6    BELIEVE MR. BROOME MIGHT HAVE TO DROP OFF, TOO.

 7             THE COURT:  ALL RIGHT.  THANK YOU, MR. SCHAPIRO.

 8        ALL RIGHT.

 9             THE CLERK:  YOUR HONOR, I NEED A MINUTE.

10             THE COURT:  OH, SURE.

11             THE CLERK:  I HAVE MR. RAM IN BETWEEN WORLDS RIGHT

12    NOW.

13        AND THERE'S ONE OTHER ATTENDEE, PARRISH, THAT'S NOT

14    SOMEONE THAT NEEDS TO BE PROMOTED.  I EITHER NEED YOU TO LEAVE

15    THE HEARING, OR I WILL JUST REMOVE YOU FROM THE HEARING.

16             THE COURT:  LET'S GO AHEAD AND CLOSE THE PROCEEDINGS,

17    MS. FANTHORPE.  THANK YOU.

18             THE CLERK:  THE WEBINAR IS LOCKED, YOUR HONOR.

19             THE COURT:  THANK YOU.

20        I ALSO WILL NOTE FOR THE RECORD THAT WE HAVE OUR COURT

21    APPOINTED SPECIAL MASTER, DOUGLAS BRUSH, AND

22    MR. TIMOTHY SCHMIDT IN ATTENDANCE AS WELL.

23        OBVIOUSLY ALL COUNSEL ARE VERY FAMILIAR WITH MR. BRUSH AND

24    MR. SCHMIDT.  YOU'VE SPENT A GREAT DEAL OF TIME WITH THEM IN

25    RECENT MONTHS, AND THEY WORKED TO PUT TOGETHER THE PRESERVATION
```

1    PLAN THAT IS THE SUBJECT OF OUR HEARING HERE TODAY.

2          ALL RIGHT.  IF I CAN -- THE SPECIAL MASTER AND MR. SCHMIDT

3    SHOULD LEAVE YOUR VIDEOS ON.

4          ANYONE WHO ANTICIPATES THAT THEY'LL BE ADDRESSING THESE

5    ISSUES IN BROWN V. GOOGLE, PLEASE LEAVE YOUR VIDEO ON.

6          AND IF OTHERS COULD TURN YOUR VIDEO OFF, THAT WOULD BE

7    HELPFUL.  OBVIOUSLY YOU CAN REAPPEAR AT ANY TIME.

8          ALL RIGHT.  JUST A COUPLE OF GENERAL COMMENTS, AND THEN

9    WE'LL GET UNDERWAY WITH THE LINE OF INQUIRY THAT I OUTLINED FOR

10   THE PARTIES IN MY ORDER OF YESTERDAY.

11         OBVIOUSLY THE PARTIES, WITH THE SPECIAL MASTER, HAVE BEEN

12   WORKING FOR MANY, MANY MONTHS, THE BETTER PART OF A YEAR I

13   THINK IT'S FAIR TO SAY, OVER IN AND AROUND DATA SOURCES,

14   IDENTIFYING CRITICAL SOURCES, EXTRACTING DATA FROM THOSE

15   SOURCES LEADING TO PRODUCTION.  THIS HAS BEEN A MANY, MANY

16   MONTH PROCESS.

17         AS THAT PROCESS CONTINUED AND AS TIME IN THE CASE MOVED

18   ALONG, IT BECAME NECESSARY TO ADDRESS A LONG-TERM PRESERVATION

19   PLAN AND THE PARTIES HAD RAISED THAT, CERTAINLY PLAINTIFFS IN

20   BOTH CASES HAD RAISED THE NEED FOR A PRESERVATION PLAN, AND THE

21   SPECIAL MASTER DIRECTED THE PARTIES TO GET TO WORK ON THAT.

22         AND I HAVE BEEN PROVIDED THE ENTIRE RECORD OF THE

23   PROCEEDINGS ON THIS TOPIC BEFORE THE SPECIAL MASTER, NOT JUST A

24   LOG OF ALL OF THE INFORMAL CONFERENCES, BUT AS WELL AS LAYING

25   OUT THE REQUESTS TO THE PARTIES, THE DIRECTIONS, THE

1    INSTRUCTIONS, THE FOLLOW-UP, WHAT WAS, IN FACT, RECEIVED FROM

2    THE PARTIES, NOTABLY WHAT WAS NOT RECEIVED FROM THE PARTIES,

3    AND THAT WHOLE PROCESS, AND I HAVE HAD AN OPPORTUNITY TO REVIEW

4    THAT AND OBVIOUSLY TO DISCUSS IT WITH THE SPECIAL MASTER SO I

5    COULD APPRECIATE WHAT I WAS, WHAT I WAS SEEING.

6        THE OBJECTIVE OF THAT PROCESS, OF COURSE, WAS FOR THE

7    PARTIES TO CONSTRUCT, AS NEARLY AS THEY COULD, A PRESERVATION

8    PLAN, AND OBVIOUSLY I DON'T THINK ANYONE EXPECTED THAT IT WOULD

9    BE -- THAT IT WOULD COME WHOLESALE AND FULLY APPROVED.  THERE

10   WOULD UNDOUBTEDLY BE ELEMENTS AND COMPONENTS ON WHICH THE

11   PARTIES DISAGREE, BUT THEN THAT WOULD BE SOMETHING THAT THE

12   SPECIAL MASTER COULD HELP THE PARTIES WORK OUT THOSE ISSUES.

13       UNFORTUNATELY, TO BE CANDID, THE INPUT FROM THE PARTIES

14   WAS NOT SUFFICIENT.  AND I APPRECIATE THAT THERE'S AN EARLY

15   DIVERGENCE BETWEEN PRESERVING EVERYTHING AND SAMPLING.

16       BUT, NOTWITHSTANDING THAT, THE PARTIES COULD HAVE AGREED

17   TO DISAGREE ON THAT APPROACH, BUT STILL HAD CONSTRUCTIVE

18   DISCUSSIONS ABOUT DATA SOURCES, AND WHAT INSIDE THOSE SOURCES

19   SHOULD BE PRESERVED, SHOULD IT BE EVERYTHING, SHOULD IT BE

20   SELECT FIELDS, THE TIME PERIOD FOR PRESERVATION, AND THE LIKE.

21       AND IT -- IT WAS SURPRISING TO ME, AS I RECEIVED THE

22   SPECIAL MASTER'S REPORTS, HIS REPORTS TO ME DURING THIS

23   PROCESS, THAT THAT WAS NOT HAPPENING AND THAT WAS NOT COMING

24   TOGETHER.

25       SO WHERE THE PARTIES WERE LEFT, BY THEIR OWN, BY THEIR OWN

Case 4:20-cv-03664-YGR   Document 627   *SEALED*   Filed 07/05/22   Page 11 of 66

1     ACTIONS, OR INACTIONS, WAS, AGAIN, AS TIME MARCHED ON AND WE

2     NEARED THE CLOSE OF DISCOVERY IN THIS CASE, WAS, AT MY

3     INSTRUCTION, FOR THE SPECIAL MASTER TO DEVELOP A PRESERVATION

4     PLAN AND THEN WE WOULD GET INPUT FROM THE PARTIES THROUGH THE

5     RULE 53 PROCESS.

6          AND THAT IS HOW WE GOT HERE.

7          NOW, OF COURSE, THE SPECIAL MASTER HAS PUT TOGETHER, WITH

8     SOME THOUGHT AND CARE, CONSTRUCTED A PRESERVATION PLAN, AND NOW

9     THE PARTIES WANT TO USE THAT AS A STARTING POINT, AND I SEE

10    THAT ON BOTH SIDES, TO BE CANDID.  START AT THAT, AND NOW THEY

11    WANT TO NOT MAKE REFINEMENTS, BUT SIGNIFICANT CHANGES, AND I

12    SEE THAT ON BOTH SIDES.

13         SO I AM -- THAT'S HOW I SEE WHERE WE ARE STARTING, AND I

14    AM MINDFUL OF THAT.

15         AND IN LOOKING AT THAT ISSUE AND LOOKING AT THE PLAN, AS I

16    HAVE IN RECENT WEEKS, I THOUGHT IT WAS -- IT WILL BE MOST

17    HELPFUL TO THE COURT, IN REVIEWING AND ASSESSING THE ADEQUACY

18    OF THE PLAN AND WHETHER OR NOT THERE ARE NEEDS FOR REFINEMENT,

19    TO START WITH THE BIGGEST LEGAL HURDLE AS I SEE IT, NOT THE

20    BIGGEST, BUT THE MOST IMMEDIATE LEGAL HURDLE IN THIS CASE,

21    WHICH IS CLASS CERTIFICATION.

22         AND I APPRECIATE THAN IN BROWN, THAT ISSUE HAS NOT YET

23    BEEN BRIEFED.

24         HOWEVER, WHERE I WANT PLAINTIFFS TO BEGIN IS TO TELL THE

25    COURT HOW YOU INTEND TO DEMONSTRATE A CLASS, AND THEN HOW THE

```
1    PRESERVATION PLAN AFFECTS THAT APPROACH, AND THEN WE'LL GO FROM
2    THERE.
3         BUT ANY CRITICISMS OR CONCERNS THAT YOU HAVE ABOUT THE
4    PROPOSAL FROM THE SPECIAL MASTER HAS TO BE TIED BACK TO HOW YOU
5    INTEND TO DEMONSTRATE THE CLASS.  I NEED TO SEE THAT LINK,
6    BECAUSE THEN I CAN BEGIN TO ASSESS WHETHER OR NOT THAT IS A
7    NECESSARY MODIFICATION.
8         AND THEN MOVING PAST NOT JUST -- I MEAN, IT'S PART OF IT,
9    OF COURSE, AS YOU ALL KNOW, BUT WE TALK ABOUT CLASS
10   CERTIFICATION, BUT I WANTED TO MOVE A LITTLE BIT OUT OF
11   RULE 23, AND THAT LEADS TO MY SECOND QUESTION OF, OKAY, IF
12   WE'RE TALKING ABOUT DAMAGES AND LIABILITY, PROVING UP OR
13   DEFENDING AGAINST THOSE ELEMENTS, AGAIN, HOW DOES THE PLAN
14   ALLOW FOR THAT, OR WHAT IS A SIGNIFICANT CONCERN YOU HAVE IN
15   THE PLAN?
16        I THINK IT'S FAIR TO SAY THAT ALL PARTIES ON BOTH SIDES IN
17   BOTH CASES CAN ASSUME THAT YOU'RE NOT GOING TO GET EVERYTHING
18   ON YOUR LIST OF OBJECTIONS.  SO I ENCOURAGE PARTIES, AS ALWAYS,
19   TO PRIORITIZE AND LINK WHAT YOU NEED OR WHAT YOU -- WHAT
20   CHANGES YOU THINK YOU NEED TO HOW THE CLASS -- HOW THE CASE IS
21   NOW GOING TO BE PUT TOGETHER.  DISCOVERY IS ESSENTIALLY CLOSED,
22   SO THIS OUGHT TO BE ABLE TO BE AN INFORMED DISCUSSION.
23        ALL RIGHT.  SO WITH THAT, WE'LL START WITH PLAINTIFFS.  AS
24   I SAID, I'M ALLOWING ROUGHLY 75 MINUTES.  I DO THAT HALF AN
25   HOUR FOR THE PLAINTIFFS, HALF AN HOUR FOR THE DEFENDANTS, THAT
```

1   GIVES US A LITTLE TIME FOR SOME Q&A AND QUESTIONS.

2          I HAVE INVITED BOTH MR. BRUSH AND MR. SCHMIDT TO ASK

3   QUESTIONS AS COUNSEL ARE PRESENTING IF THERE'S A POINT THAT

4   THEY WANT CLARIFICATION ON, AND JUST TO SIMPLY LITERALLY RAISE

5   THEIR PHYSICAL HAND, NOT THEIR ZOOM HAND, BECAUSE I'LL SEE

6   THAT, AND ASK FOR CLARIFICATION, OR COMMENT IF THERE'S SOME

7   DISCUSSION POINT THAT WOULD HELP TO INFORM THE SPECIAL MASTER

8   GOING FORWARD, AND OBVIOUSLY I WILL BE DOING THE SAME.  ALL

9   RIGHT?

10         SO WITH THAT, MS. BONN, WHO'S GOT THE LEAD FOR YOUR TEAM

11  TO GET US STARTED?

12         MS. BONN:  I DO, YOUR HONOR.

13         AND IF IT WOULD BE HELPFUL, WHAT WE HAD ANTICIPATED DOING

14  IS THAT I WOULD GIVE AN OVERVIEW OF PLAINTIFFS' POSITION ON THE

15  THREE QUESTIONS THAT YOUR HONOR RAISED AND TRY TO KEEP IT TO BE

16  A PRETTY SUCCINCT OVERVIEW, AND THEN MR. MAO IS PREPARED TO

17  DISCUSS OUR RESPONSE ON QUESTION 1 IN GREATER DETAIL.

18         THE COURT:  OKAY.

19         MS. BONN:  MR. FRAWLEY AND MR. MCGEE ARE PREPARED TO

20  DISCUSS OUR RESPONSE ON QUESTION 2 IN GREATER DETAIL, AND THEN

21  I'LL COME BACK ON QUESTION 3.

22         THE COURT:  ALL RIGHT.  JUST KEEP MY TIMEFRAME IN

23  MIND, PLEASE.

24         MS. BONN:  ABSOLUTELY, YOUR HONOR.

25         THE COURT:  THANK YOU.

```
 1              MS. BONN:  AND I'LL START WITH QUESTION 1, WHICH IS

 2   ALSO ONE YOUR HONOR JUST REITERATED, ABOUT HOW DOES THIS RELATE

 3   TO CLASS CERTIFICATION?  WHAT ARE YOU ASKING FOR AND HOW DOES

 4   IT RELATE?

 5        AND WHAT I WANT TO PUT INTO CONTEXT, AND MR. MAO WILL

 6   EXPLAIN IN GREATER DETAIL, IS THAT GIVEN WHERE WE ARE, I DON'T

 7   THINK PLAINTIFFS AFFIRMATIVELY, FOR OUR CLASS CERTIFICATION

 8   MOTION, INTEND TO RELY ON SAMPLED DATA OR, FRANKLY, OTHER DATA.

 9        I THINK WHERE THIS DATA ISSUE COMES INTO PLAY -- EXCUSE

10   ME -- OTHER DATA THAT GOOGLE HAS NOT PRODUCED.

11        WE DO HAVE EXPERTS WHO RELY ON DATA THAT WAS PRODUCED

12   DURING DISCOVERY.

13        BUT WHERE THIS COMES INTO PLAY, I THINK, IS THAT -- AND

14   THE NINTH CIRCUIT IS CLEAR THAT UNDER BRISENO VERSUS CONAGRA,

15   THERE IS NO ASCERTAINABILITY REQUIREMENT.  AND WHAT THE NINTH

16   CIRCUIT SAID IN CONAGRA IS THAT OFTEN IN CLASS ACTIONS, EITHER

17   AFTER A CLASS ACTION SETTLEMENT OR POTENTIALLY AFTER AN

18   AGGREGATED DAMAGE AWARD AND VERDICT, THERE MAY BE A CLAIMS

19   PROCESS IN WHICH CLAIMANTS CAN COME FORWARD AND SUBMIT A CLAIMS

20   FORM UNDER PENALTY OF PERJURY SAYING, YOU KNOW, I HAVE A CLAIM,

21   I THINK I'M A MEMBER OF A CLASS.

22        IN THIS CASE, MARY SMITH COULD COME FORWARD AND SAY, I

23   BROWSED INCOGNITO IN 2018.

24        AND WHAT WE NOW KNOW IS THAT GOOGLE ONCE HAD DATA, AND

25   MR. MAO WILL EXPLAIN IN MORE DETAIL, THAT GOOGLE COULD HAVE
```

1    USED IN ANY SUCH CLAIMS PROCESS TO EITHER VERIFY OR CHALLENGE

2    ANY SUCH CLAIM THAT IS SUBMITTED IN THAT CLAIMS PROCESS.

3         BUT WHAT HAS HAPPENED IS THAT THAT DATA, WHICH ONCE

4    EXISTED, MUCH OF IT HAS ALREADY BEEN DELETED AND IS BEING

5    DELETED ON AN ONGOING BASIS.

6         A SAMPLE OF DATA BEING PRESERVED ON A GOING FORWARD BASIS

7    WOULD NOT ASSIST GOOGLE IN THE EFFORT THEY WISH TO MAKE IN A

8    CLAIMS PROCESS CHALLENGING CLAIMANTS BECAUSE THE ONLY DATA THAT

9    WOULD BE PRESERVED ON A GOING FORWARD BASIS IS FOR A SAMPLE OF

10   10,000.  SO IF A CLAIMANT CAME FORWARD AND THEY WERE NOT IN THE

11   SAMPLE, AGAIN, GOOGLE WOULD NOT HAVE IN ITS POSSESSION ANY

12   LONGER THE DATA IT MAY WANT TO EITHER VERIFY OR CHALLENGE THE

13   CLAIM BEING MADE.

14        AND ONE OF THE OTHER CRITICAL THINGS WE'VE POINTED OUT IS

15   THAT AS IT'S ARTICULATED, THE SAMPLING PLAN PROPOSED CALLS FOR

16   RANDOM SAMPLES OUT OF DISPARATE LOGS, AND BECAUSE THE SAMPLING

17   ISN'T DONE CONSISTENTLY BY I.P. ADDRESS AND USER AGENT PAIRS

18   ACROSS LOGS, IT WOULD ALSO ELIMINATE ANY ABILITY THAT MAY HAVE

19   EXISTED TO LINK UP DATA BETWEEN THE PSEUDONOMIZED OR B LOGS,

20   UNAUTHENTICATED INCOGNITO LOGS, AND THE AUTHENTICATED PERSONAL

21   LOGS WHICH WE TALKED ABOUT FAIRLY EXTENSIVELY AT LAST WEEK'S

22   HEARING.

23        AND SO OUR POINT ON CLASS CERTIFICATION IS THAT THIS IS

24   SOMETHING THAT GOOGLE MAY VERY WELL HAVE WANTED TO USE IN THE

25   CLAIMS PROCESS, BUT THEY HAVE DELETED THAT DATA, AND SAMPLING

1    OR PRESERVING A MERE SAMPLE OF DATA GOING FORWARD, AND IN

2    PARTICULAR WITH THE SAMPLING METHOD THAT HAS BEEN PROPOSED,

3    WILL NOT ASSIST GOOGLE.

4         AND SO OUR POINT, AS TO THIS CLASS CERTIFICATION QUESTION,

5    IS A SIMPLE ONE:  GOOGLE CANNOT RELY ON WHAT IT CHOSE TO DELETE

6    AND NOT PRODUCE TO THE PLAINTIFFS DURING DISCOVERY, NOR BENEFIT

7    FROM THEIR DELETION AND REFUSAL TO PRODUCE THAT DATA.

8         THAT'S A VERY SIMPLE PRINCIPLE UNDER RULE 37 WHICH HAS

9    BEEN HEAVILY BRIEFED BEFORE YOUR HONOR.

10        AND I WOULD LIKE MR. FRAWLEY, IF HE COULD SHARE HIS

11   SCREEN, TO SHOW A SLIDE.  IT'S A PRINCIPLE THAT GOOGLE APPEARS

12   TO HAVE MADE A SLIGHT ADMISSION ABOUT IN ITS BRIEF.

13        IF YOU COULD TURN TO THE NEXT SLIDE.

14        GOOGLE SAYS IN ITS BRIEF, GOOGLE IS WILLING TO STIPULATE

15   THAT NEITHER PARTY CAN RELY ON THE ABSENCE OF PRESERVED GOOGLE

16   DATA TO SUPPORT OR OPPOSE ANY ARGUMENT.

17        AND IF YOU COULD UNSHARE, MR. FRAWLEY.

18        I MEAN, I THINK THE ISSUE HERE IS PLAINTIFFS HAVE A LOT TO

19   SAY BASED ON WHAT WE HAVE BEEN ABLE TO DEMONSTRATE WITH THE

20   DATA THAT HAS BEEN PRODUCED AND WHAT THAT REFLECTS ABOUT WHAT

21   COULD HAVE BEEN DONE WITH OTHER DATA THAT HAS BEEN DELETED.

22        WHY PLAINTIFFS SHOULD BE BARRED FROM MAKING ANY AND ALL

23   ARGUMENTS THAT WE CAN BASED ON THE EVIDENCE WE HAVE RECEIVED I

24   SEE NO BASIS FOR.

25        BUT GOOGLE HAS NOW SAID THAT IT IS WILLING TO MAKE THAT

```
1    STIPULATION IN THEORY AS TO WHAT IT MAY ARGUE, AND YET LAST

2    WEEK WE SAT IN COURT AND LISTENED TO GOOGLE ARGUE ALL DAY THAT

3    INCOGNITO DETECTION BITS THAT HAVE EXISTED SINCE 2017 AND

4    ███████ LOGS ARE UNRELIABLE AND THAT ████████ DATA HAS BEEN

5    DELETED ON A ███████ ROLLING CYCLE EVER SINCE.

6         SO ON THE ONE HAND, GOOGLE SEEMS TO RECOGNIZE THE BASIC

7    PRINCIPLE OF FAIRNESS, THAT IT CANNOT RELY OR MAKE ARGUMENTS

8    ABOUT WHAT HAS BEEN DELETED AND NOT PRODUCED; AND YET IN

9    ACTUALITY, IN THIS CASE IN REAL TIME, WE ARE SEEING THAT THEY

10   WANT TO MAKE ARGUMENTS AS TO WHICH WE NOW ARE DEPRIVED OF DATA

11   WE MAY OTHERWISE HAVE USED.

12        THAT BRINGS ME TO QUESTION 2, WHICH I'LL GIVE AN OVERVIEW

13   OF.  HOW COULD SAMPLED DATA POTENTIALLY BE USED IN CONNECTION

14   WITH QUESTIONS OF LIABILITY AND DAMAGE?

15        AND I THINK HERE IT'S IMPORTANT TO NOTE A DISTINCTION THAT

16   I THINK YOUR HONOR SOMEWHAT POINTED TO AT THE OUTSET, WHICH IS

17   A DISTINCTION BETWEEN PRESERVATION AND PRODUCTION DURING

18   DISCOVERY.

19        DURING THE DISCOVERY PERIOD, WHICH MR. FRAWLEY WILL

20   OUTLINE IN GREATER DETAIL, PLAINTIFFS REPEATEDLY ASKED FOR A

21   PRODUCTION FROM GOOGLE OF SAMPLED CLASS MEMBER DATA IN DISPUTES

22   P6 AND P16 A YEAR AGO IN MAY OF LAST YEAR.  GOOGLE OBJECTED,

23   REFUSED TO PRODUCE THAT DATA, AND ITS OBJECTION WAS SUSTAINED.

24        AND SO AS A RESULT OF GOOGLE'S DECISION, WE WERE DENIED

25   THAT DISCOVERY DURING THE DISCOVERY PERIOD.
```

1            AND SO WE HAD TO ADJUST OUR PLANS, OUR EXPERT APPROACH,

2       OUR QUESTIONING DURING DEPOSITIONS, BECAUSE DESPITE THE FACT

3       THAT WE SOUGHT A PRODUCTION OF SAMPLED DATA, NOT THAT MERELY A

4       SAMPLE SHOULD BE PRESERVED, BUT TO BE CLEAR, A PRODUCTION OF

5       SAMPLED DATA, WE WERE DENIED THAT.

6            AND SO, YOU KNOW, WE HAD TO TAKE OTHER PATHS IN OUR EFFORT

7       TO PROVE LIABILITY AND DAMAGES.

8            BUT WHERE THIS SAMPLING COMES INTO PLAY NOW IS THAT IT WAS

9       ONLY AFTER DISCOVERY, FACT DISCOVERY CLOSED IN THIS CASE THAT

10      GOOGLE FIRST SUGGESTED THAT IT SHOULD PRESERVE ONLY A SAMPLE OF

11      DATA.  THIS CAME ABOUT AFTER DISCOVERY WAS CLOSED.

12           AND SO I SUPPOSE IF GOOGLE'S SUGGESTION IS IT WILL

13      PRESERVE A SAMPLE OF DATA, THE IDEA IS MAYBE THAT DATA WOULD BE

14      PRODUCED, AND THAT IS UNFAIRLY PREJUDICIAL TO THE PLAINTIFFS.

15      DISCOVERY IS OVER.  DEPOSITIONS ARE OVER.  EXPERT REPORTS FROM

16      THE PLAINTIFFS, AND GOOGLE'S OPENING REPORTS, ARE IN.

17           AND SO NOW, FOR GOOGLE, HAVING REFUSED TO PRODUCE SAMPLED

18      DATA, DESPITE OUR REQUEST DURING DISCOVERY, TO NOW PIVOT AND

19      SAY THEY WANT TO PRODUCE IT AFTER DISCOVERY IS CLOSED, AFTER

20      THEY'VE SEEN OUR EXPERT REPORT, AND LARGELY TO DO SO IN SOME

21      SENSE IN A BLACK BOX WHEN WE HAVE SEEN, THROUGH VARIOUS WAYS

22      THAT HAVE BEEN BRIEFED BEFORE YOUR HONOR, THAT WE HAVE AMPLE

23      REASON TO QUESTION THE PROCESSES THAT GOOGLE HAS PUT IN PLACE

24      ON THEIR END, AND YET, WE WOULD BE IN A POSITION WHERE WE'RE

25      UNABLE TO TEST WHATEVER SAMPLING THEY DO IN DEPOSITIONS OR

1   THROUGH OUR EXPERTS.

2        AND SO ESSENTIALLY WHAT THIS AMOUNTS TO IS ALLOWING GOOGLE

3   TO BENEFIT FROM ITS DECISION TO DELETE DATA AND ITS OBJECTION

4   TO PRODUCING DATA DURING DISCOVERY, AND THEN DO IT AFTER THE

5   FACT, AFTER DISCOVERY, TO BACKFILL THEIR OWN ARGUMENTS AND

6   THEIR OWN DEFENSES.

7        AND ONCE AGAIN, UNDER RULE 37, GOOGLE CANNOT RELY ON WHAT

8   IT REFUSED TO PRODUCE AND REFUSED TO PRESERVE.

9        AND FINALLY, THAT BRINGS US TO QUESTION 3, WHAT CAN BE

10  DONE TO AMELIORATE THIS?  AND THERE ARE A FEW POINTS I WOULD

11  LIKE TO MAKE.

12       POINT ONE IS THAT FOR THE DATA THAT HAS ALREADY BEEN

13  DELETED AND IS BEING DELETED ON AN ONGOING BASIS, A GOING

14  FORWARD PRESERVATION PLAN CANNOT BRING DATA THAT HAS ALREADY

15  BEEN DELETED BACK.  AND WE HAVE SET FORTH IN OUR PRIOR PAPERS,

16  WHICH YOUR HONOR HAS AND HAS HAD A HEARING ON, WHAT SANCTIONS

17  AND PRECLUSION ORDERS WE THINK NEED TO FLOW FROM THAT.

18       ON A GOING FORWARD BASIS, TO THE EXTENT THAT A

19  PRESERVATION PLAN IS NECESSARY, WHAT WE WILL DISCUSS IS THAT

20  GOOGLE ADMITTED, FOR THE FIRST TIME ON MARCH 15TH, AFTER FACT

21  DISCOVERY CLOSED, THAT, IN FACT, IT DOESN'T HAVE TO SIMPLY

22  PRODUCE EXISTING -- EXCUSE ME -- PRESERVE EXISTING LOGS IN

23  THEIR ENTIRETY.

24       IT HAS THE CAPABILITY OF PRODUCING WHAT WE'RE COLLOQUIALLY

25  CALLING A SUPER LOG WHERE IT CAN BASICALLY SELECT PARTICULAR

```
 1      FIELDS ACROSS LOGS, DEDUPE THEM, ESSENTIALLY, AND PUT IN A

 2      NARROW SET IN WHAT EFFECTIVELY IS A NEWLY CREATED LOG, BUT

 3      THAT'S BORROWING FROM OTHER LOGS' DATA.

 4           AND WE HAVE PUT IN A DECLARATION FROM MR. THOMPSON THAT IT

 5      WOULD NOT BE BURDENSOME FOR THEM TO PRESERVE THE DATA

 6      ASSOCIATED WITH INCOGNITO TRAFFIC THAT IS FLAGGED BY THE

 7      INCOGNITO DETECTION BITS AFTER DEDUPING AND LIMITING TO

 8      RELEVANT FIELDS AND PRESERVING DATA THAT COULD BE LINKED TO

 9      THOSE ENTRIES WITH I.P. ADDRESS AND USER AGENT STRING FROM

10      P LOGS.

11           GOOGLE IN RESPONSE PUT IN A DECLARATION FROM A

12      MR. HARTING, WHO IS IN CHARGE OF AN AD MANAGER TEAM AT GOOGLE.

13      HE IS ANOTHER PREVIOUSLY UNDISCLOSED WITNESS.  HE DID NOT

14      APPEAR IN GOOGLE'S LIST OF 226 CUSTODIANS.

15           AND NEVERTHELESS, IN HIS DECLARATION, HE SPEAKS TO THE

16      BURDEN ASSOCIATED WITH PRESERVING ALL LOGS IN THEIR ENTIRETY.

17           HE DOES NOT ADDRESS, LET ALONE DISPUTE, A SINGLE POINT

18      MR. THOMPSON MADE ABOUT THE FEASIBILITY OF CREATING A SUPER LOG

19      THAT DEDUPES, LIMITS FIELDS, AND TARGETS INCOGNITO DATA.  HE IS

20      UTTERLY SILENT.

21           SO THE UNREBUTTED RECORD BEFORE THIS COURT IS THAT IT

22      WOULD NOT BE BURDENSOME FOR GOOGLE TO DO THAT.

23           AND, IN FACT, MR. HARTING SEEMS TO SUGGEST IN HIS OWN

24      DECLARATION THAT THE WORK AND EFFORT REQUIRED TO PERFORM A

25      SAMPLING PLAN MIGHT BE EQUALLY BURDENSOME IN TERMS OF THE
```

Case 4:20-cr-00366-YGR   Document 627 *SEALED*   Filed 07/05/22   Page 21 of 66
SEALED PROCEEDINGS

1    ENGINEERING TIME.

2        AND SO THAT I THINK IS A HIGH LEVEL OVERVIEW OF OUR

3    POSITION AND WHAT WE INTEND TO ARGUE.

4        I THINK THAT IN TERMS OF THE CREATION OF A SUPER LOG, TO

5    THE EXTENT THAT THE COURT THINKS THAT IS WARRANTED, I THINK

6    THAT IS A PROCESS THAT WE, FRANKLY, NEED TO HAVE FURTHER

7    DISCUSSION ABOUT TO THE POINT THAT YOUR HONOR MADE AT THE

8    OUTSET, WHICH IS THAT WE NEED A FREER EXCHANGE OF INFORMATION.

9    WE NEED TO BE ABLE TO HAVE A PRODUCTIVE DIALOGUE.  WE NEED TO

10    KNOW WHAT FIELDS ARE AVAILABLE, HOW LONG THEY'RE PRESERVED,

11    WHAT IT WOULD TAKE TO CREATE THE KIND OF SCRIPT THAT'S NEEDED.

12    THAT KIND OF DIALOGUE WOULD NEED TO HAPPEN.

13        SO THAT'S A HIGH LEVEL OVERVIEW OF OUR PRESENTATION.

14        UNLESS YOUR HONOR HAS QUESTIONS FOR ME, I'D LIKE TO TURN

15    IT OVER TO MR. MAO TO ADDRESS OUR POINT 1 IN A LITTLE BIT

16    GREATER DETAIL.

17            THE COURT:  THANK YOU, MS. BONN.

18        MR. MAO.

19            MR. MAO:  SORRY, YOUR HONOR.  I'M TRYING TO GET THE

20     LAY OF THE LAND, AND THAT REQUIRES A FEW CLICKS ON ZOOM.

21        MR. FRAWLEY, CAN I TROUBLE YOU TO PUT UP SLIDE 4 FOR US?

22        SO, YOUR HONOR, YOU MIGHT REMEMBER THIS SLIDE FROM THE

23    ORDER TO SHOW CAUSE HEARING, AND I WANT TO USE THIS AS A

24    STARTING POINT.

25        THE REASON WHY I WANT TO USE THIS AS A STARTING POINT IS

```
1    WHAT YOU'RE GOING TO HEAR MR. FRAWLEY, AND ALSO MR. MCGEE, TALK

2    ABOUT IS THE LAST PAST YEAR, EVER SINCE I BELIEVE MARCH OF LAST

3    YEAR, THE CHALLENGES AND THE REQUESTS IN WHICH PLAINTIFFS HAVE

4    BEEN ASKING FOR GOOGLE TO PRODUCE IN TERMS OF INFORMATION,

5    TECHNICAL DOCUMENTATION, AND DATA FOR IT TO BE ABLE TO BOLSTER

6    AND SUPPORT ITS OWN DEFENSES IN RESPONSE TO PLAINTIFFS' AND

7    CLASS MEMBERS' -- A TESTAMENT TO THEIR HAVING USED INCOGNITO

8    MODE AND HAVING BEEN INTERCEPTED BY GOOGLE TECHNOLOGIES.

9         THE REASON WHY WE WANTED THAT WAS BECAUSE WE WANTED TO

10   TEST WHAT GOOGLE WAS GOING TO ARGUE IN ITS DEFENSE AND WHICH IT

11   HAS SIGNALLED IN MULTIPLE PAPERS, AND ALSO IN PROCEEDINGS IN

12   FRONT OF YOU.

13        AND THE REASON WHY WE WANT TO TAKE ABOUT THE JOINING OF

14   DATA IS BECAUSE WHAT WE, PLAINTIFFS, HAVE ACTUALLY EXPECTED

15   GOOGLE TO DO WAS THAT THEY WERE GOING TO USE THEIR LOGS TO

16   EITHER DISPUTE CERTAIN CLASS MEMBERS EVER HAVING USED

17   INCOGNITO, OR THEY HAVE NOT USED INCOGNITO.

18        THE REASON WHY WE HAD THIS CHART DURING THE OSC WAS ONE OF

19   THE METHODS IN WHICH WE WANTED TO DEMONSTRATE BY WHICH CLASS

20   MEMBER TRAFFIC INDIVIDUAL EVENT COULD ACTUALLY BE IDENTIFIED

21   WAS USING AT LEAST TWO LOGS PUT SIDE TO SIDE, BUT SOMETIMES

22   USING JUST ONE LOG.

23        SO THE SPECIFIC INSTANCE WE WERE USING THERE WAS ACTUALLY

24   I.P. ADDRESS AND USER AGENT STRINGS, WHICH IS SOMETHING I

25   WANTED TO TALK ABOUT.
```

```
1              BUT I JUST WANTED TO NOTE THAT THAT WAS JUST ONE METHOD,

2     BECAUSE AS YOU CAN SEE FROM THIS, ACROSS THESE LOGS YOU HAVE

3     PSEUDONYMOUS ID'S -- SORRY -- YOU HAVE PSEUDONYMOUS ID'S, WHICH

4     ARE BASICALLY, WHICH YOU'VE HEARD IN MULTIPLE HEARINGS AS BEING

5     PPID'S, PEOPLE LOGGING IN, LOGGING OUT OF THIRD PARTY

6     WEBSITES -- PUBLISHER PROVIDED ID'S IS WHAT PPID'S STANDS

7     FOR -- AND THESE ARE THIRD PARTY ID'S WHICH GOOGLE TRACKS, AND

8     THESE ARE GOING TO BE ABLE TO TRACK USERS ACROSS MULTIPLE LOG

9     SOURCES AND IDENTIFY THEM BY THEIR LOGINS ACROSS MULTIPLE

10    SITES.

11             YOU ALSO HAD SOMETHING IN WHICH YOU'VE HEARD THE CALHOUN

12    FOLKS, IN ADDITION TO US, TALK ABOUT, WHICH IS THE UMA DATA, OR

13    ACRONYM FOR USER METRIC ANALYSIS, UMA, WHICH STANDS FOR THE

14    TYPE OF IDENTIFIER THAT'S TIED TO YOUR CHROME INSTANCE, YOUR

15    CHROME APPLICATION, THAT'S GOING TO BE UNIQUELY IDENTIFYING FOR

16    THE USERS AS WELL.

17             BUT WHAT WE WANTED TO TALK ABOUT HERE IN TERMS OF JOINING

18    DATA WAS ONE OTHER METHOD WHICH WE THOUGHT GOOGLE WOULD TRY TO

19    USE TO DISPROVE WHETHER OR NOT ANY PARTICULAR CLASS MEMBER WAS

20    ACTUALLY ENGAGED IN INCOGNITO ACTIVITIES, AND I WANTED TO USE

21    THIS SPECIFIC EXAMPLE BECAUSE I UNDERSTAND THERE ARE SOME

22    DISPUTES REGARDING WHETHER OR NOT GAIA AND ZWIEBACK LOGS ARE

23    SEARCH LOGS AND MAY ACTUALLY BE RELEVANT, BUT I WANTED TO SHOW

24    YOU EXACTLY HOW THIS COMES INTO PLAY.

25             MR. FRAWLEY, IF I COULD TROUBLE YOU TO MOVE NOW TO SLIDE
```

```
 1    NUMBER 8.

 2         OKAY.  SO SLIDE NUMBER 8 IS ACTUALLY, THIS IS ACTUALLY MY

 3    OWN GOOGLE ACCOUNT INFORMATION, YOUR HONOR.  ON THE LEFT-HAND

 4    SIDE IS LITERALLY, IF I WERE TO DOWNLOAD THIS FROM MY ACCOUNT,

 5    YOU WOULD SEE ON THE TOP LEFT-HAND SIDE OF THE SPREADSHEET --

 6    IF YOU HAVE A GOOGLE ACCOUNT, YOUR HONOR, YOU AND ANYBODY, YOU

 7    KNOW, CONDUCTING RESEARCH FOR YOU COULD VERIFY THIS -- YOU

 8    WOULD SEE THAT YOUR GOOGLE ID POPS UP, YOU WOULD SEE YOUR OTHER

 9    IDENTIFIERS POP UP, AND THEN WHAT YOU'RE GOING TO SEE IN THE

10    COLUMNS BELOW THAT ARE ACTUALLY TIME STAMPS, YOUR I.P. ADDRESS,

11    YOUR USER AGENT STRING, AND YOUR LOG INS AND LOG OUTS ARE

12    BASICALLY TIED TO YOUR GOOGLE ID.

13         AND YOU CAN SEE VERY SIMPLE KIND OF LIKE LOGS, IT'S GOING

14    TO BE A FEW PAGES, AND FROM WHAT I CAN SEE, AT LEAST FOR

15    MYSELF, IT -- IT'S GOING BACK UP TO PAGES ON THE FORM.

16         AND THIS IS ONE OF THE REASONS WHY WE WERE TALKING ABOUT

17    I.P. ADDRESSES AND THE USER STRING, BECAUSE USING THESE

18    IDENTIFIERS, OKAY, YOU'RE GOING TO BE ABLE TO LOCATE CLASS

19    MEMBERS IN TERMS OF WHAT THEY WERE DOING AT THE TIME THEIR I.P.

20    ADDRESS, AND NOTE NOTE WHAT THEIR ACTIVITIES MAY BE IN

21    ██████████ LOGS, IN ADDITION TO THE P LOGS.

22         ONE OF THE OTHER REASONS WHY WE WANT TO TALK ABOUT THIS IS

23    BECAUSE --

24         IF YOU DON'T MIND MOVING ON TO SLIDE 5.

25         SORRY, THERE'S A LITTLE BIT OF LAG ON ZOOM.
```

```
1              MR. FRAWLEY, CAN I TROUBLE YOU TO MOVE ON?  SORRY, MAYBE I
2    WAS ON A LAG.
3              -- IS THAT GOOGLE ITSELF ADMITS THAT I.P. ADDRESS AND USER
4    AGENT STRINGS WILL BE USED TO JOIN IDENTIFIED USERS.
5              HERE ARE A NUMBER OF QUOTES, AND THESE ARE ALL FROM GOOGLE
6    DOCUMENTATION AND INTERNAL CORRESPONDENCES.  FIRST ONE, I.P. IS
7    A VIABLE TRACKING VECTOR; SECOND ONE, SINCE I.P. ADDRESSES, YOU
8    KNOW, OFTEN UNIQUELY IDENTIFY USERS; YOU CAN SEE THERE A THIRD
9    ONE, I.P. ADDRESSES AND USER AGENT STRINGS REVEAL INDIVIDUAL
10   USER WITH HIGH PROBABILITY; AND, LASTLY, USER AGENT STRINGS AND
11   I.P. ADDRESSES UNIQUELY IDENTIFY A PARTICULAR USER'S BROWSER.
12             NEXT SLIDE, PLEASE.
13             THIS ISN'T JUST INTERNAL CORRESPONDENCE.  THESE ARE ALSO
14   THINGS IN WHICH GOOGLE EMPLOYEES ARE SPECIFICALLY FLAGGING
15   THOSE PRIVACY RISKS.
16             FIRST, YOU HAVE THEIR --
17             THE COURT:  MR. MAO, LET ME -- I APPRECIATE THAT, AND
18   I RECOGNIZE A NUMBER OF THESE EXCERPTS.
19             BUT, AGAIN, WHAT I'M INTERESTED IN IS, WHAT IS IT ABOUT
20   THE PRESERVATION PLAN THAT WORKS AGAINST -- I MEAN, MS. BONN
21   SAID, WELL, PLAINTIFFS DON'T INTEND TO USE SAMPLING, THAT'S NOT
22   REALLY A FACTOR IN HOW YOU WILL PUT YOUR CLASS TOGETHER, SO
23   THAT'S FINE.
24             BUT SHE SAID, WELL, BUT GOOGLE, THIS WILL HARM GOOGLE,
25   GOOGLE WON'T BE ABLE TO RELY ON THIS WHERE THEY, PERHAPS, COULD
```

1      HAVE USED THE DATA TO CHALLENGE A CLASS.

2            SO I'M -- I APPRECIATE WHAT YOU'RE SAYING, BUT I'M NOT

3      SEEING HOW IT LINKS BACK TO THE CLASS ISSUE.

4            MR. MAO:  SURE.

5            YOUR HONOR, THIS IS WHY MS. BONN REFERRED BACK TO THE

6      ORDER TO SHOW CAUSE HEARING, RIGHT.  WHAT YOU WERE HEARING

7      THERE, YOUR HONOR, WAS GOOGLE TALKING ABOUT HOW THE DATA DID

8      NOT PRODUCE -- OR THE TECHNICAL DOCUMENTS WHICH THEY DID NOT

9      PRODUCE WHICH SHOW X OR Y AND THAT CLASS MEMBERS CAN NOW BE

10     IDENTIFIED.

11           THE PROBLEM HERE, YOUR HONOR, IS THAT WE HAVE SPECIFICALLY

12     ASKED FOR THIS DATA TO BE ABLE TO VERIFY AND TEST AGAINST

13     GOOGLE'S ALLEGATIONS.

14           AND THERE IS A QUESTION REGARDING, YOU KNOW, IF WE WERE TO

15     DO SAMPLING, HOW WE SHOULD ACTUALLY VERIFY ANY ALLEGATIONS,

16     ARGUMENTS, OR EXPERT TESTIMONY WHICH GOOGLE WOULD PUT FORWARD

17     REGARDING THESE ISSUES, REGARDING IDENTIFIABILITY, OR REGARDING

18     ANY OTHER DEFENSES WHICH IT MAY RAISE IN RESPONSE TO CLASS

19     CERTIFICATION.

20           AND THIS IS WHY WE GO BACK TO WHAT GOOGLE SAID, RIGHT,

21     WHICH IS THAT GOOGLE DID NOT GET TO USE, UNDER THAT RULE, WHAT

22     THEY REFUSED TO PRODUCE OR REFUSED TO PRESERVE.

23           SO WE'RE TALKING ABOUT -- YES, I UNDERSTAND, YOUR HONOR,

24     THAT I'M TALKING ABOUT HYPOTHETICALS HERE.  BUT THESE

25     HYPOTHETICALS ARE NOT CONJECTURAL BECAUSE YOU'VE HEARD GOOGLE

1    TALK ABOUT THIS DURING THE OSC HEARING, AND THAT IS SOMETHING

2    WHICH HAS REPEATEDLY STATED THROUGHOUT THIS ENTIRE LITIGATION.

3              THE COURT:  SO IF I'M UNDERSTANDING PLAINTIFFS'

4    POSITION, IT'S THAT, OKAY, THE SAMPLING MODEL, IT'S NOT WHAT

5    YOU WOULD DO, BUT IF THAT'S WHAT GETS ADOPTED, YOUR CONCERN IS

6    WHETHER OR NOT THERE ARE RESTRICTIONS ON GOOGLE'S ABILITY -- ON

7    GOOGLE'S ARGUMENTS GOING FORWARD BECAUSE IT'S NOT A WHOLESALE

8    PRESERVATION.

9         IS THAT THE BOTTOM LINE?

10             MR. MAO:  I THINK THERE'S A COUPLE OF NUANCES ON

11   THAT, BUT I'LL LET MS. BONN FILL IN RIGHT AFTER I FINISH.

12        I THINK FIRST OF ALL, YOUR HONOR, I DO BELIEVE THAT

13   MR. FRAWLEY AND MS. BONN ARE GOING TO COVER HOW WE ACTUALLY

14   CANNOT SANCTION OR AGREE TO GOOGLE DESTROYING CLASS MEMBER

15   DATA, AND THEREFORE, WE HAVE NEVER, EVER AGREED TO THAT.

16        BUT THE SECOND THING IS THAT A LOT OF THIS REALLY HAS TO

17   DO WITH THE DEFENSE IN WHICH GOOGLE HAS MOUNTED SINCE THE

18   BEGINNING OF THE CASE, AND THAT'S THE FUNDAMENTAL RULE OF

19   EVIDENCE, RIGHT, WHICH IS THAT IF THEY ARE GOING TO MAKE AN

20   ARGUMENT BASED UPON FACTS WHICH THEY ALLEGE, THEY MUST PRESENT

21   THE ALLEGED FACTS AND INFORMATION FOR DISCOVERY AND ASSESSMENT

22   BY THE OTHER SIDE, AND THAT JUST HAS NOT HAPPENED.

23        SORRY, MS. BONN, YOU --

24             MS. BONN:  YEAH, I AGREE WITH MR. MAO.

25        TO ANSWER YOUR HONOR'S QUESTION DIRECTLY, I THINK OUR

 1    CONCERN IS THAT GOOGLE, AMONGST OTHER THINGS, IN OPPOSITION TO

 2    CLASS CERT WILL SAY TO THE JUDGE, THE CLASS SHOULD NOT BE

 3    CERTIFIED BECAUSE THERE IS NO WAY TO VERIFY WHETHER A

 4    PARTICULAR PERSON WAS IN INCOGNITO MODE OR NOT.

 5        AND WE BELIEVE THAT IS A FUNDAMENTALLY UNFAIR ARGUMENT FOR

 6    THEM TO BE PERMITTED TO MAKE WHEN THEY HAVE BEEN DELETING THE

 7    DATA THAT WOULD BE NEEDED TO ACTUALLY ATTEMPT TO DO THAT.

 8        AND IN THE ABSENCE OF THAT DATA, THEY BASICALLY WANT TO

 9    BENEFIT FROM IT BY TELLING THE COURT, "AND THEREFORE, IT'S A

10    REASON TO DENY CLASS CERTIFICATION."

11        AND OUR POINT --

12        THE COURT:  BUT PLAINTIFFS HAVE NEVER BEEN ABLE TO

13    MAKE THAT LINK, I MEAN, THAT I'VE SEEN, TO BE ABLE TO TIE -- TO

14    TIE THE INCOGNITO BIT INFORMATION THAT WE DISCUSSED AT GREAT

15    LENGTH A COUPLE OF WEEKS AGO TO A SPECIFIC USER.

16        I APPRECIATE THAT THE EXPERT WHO TESTIFIED ON PLAINTIFFS'

17    BEHALF SAID, WELL, YOU KNOW, THEORETICALLY IT COULD BE DONE.

18        BUT THAT FACTUAL BASIS HAS NEVER BEEN DEMONSTRATED.

19        MS. BONN:  I WOULD LIKE TO ADDRESS THAT, YOUR HONOR.

20    WE HAVE PUT IN AN EXPERT REPORT FROM OUR EXPERT,

21    MR. HOCHMAN, AND HE HAS DEMONSTRATED IT IN ACTUALITY WITH

22    TESTING DATA THAT WE USED DURING THE SPECIAL MASTER PROCESS.

23        SO WE HAD OUR EXPERTS, WORKING WITH OUR PLAINTIFFS, TO

24    GENERATE BOTH INCOGNITO AND REGULAR DATA AND, ON OUR SIDE,

25    TRACK THE INCOGNITO AND REGULAR SESSIONS.

1          AND THEN WE'VE BEEN ABLE, WITH DATA THAT GOOGLE PRODUCED,

2     TO DEMONSTRATE AFFIRMATIVELY THAT IT CAN BE LINKED UP WITH

3     B LOG DATA THAT GOOGLE MAINTAINS.

4          AND I WILL GIVE ONE EXAMPLE THAT I THINK WE POINTED TO IN

5     OUR MOST RECENT PAPER, BUT THE WEEKEND AFTER THE ORDER TO SHOW

6     CAUSE HEARING, GOOGLE FOR THE FIRST TIME MADE A PRODUCTION OF

7     ███████ DATA WITH THE IS_CHROME_INCOGNITO FIELD POPULATED, AND

8     WHAT WE SAW FROM EVERY SINGLE ENTRY THEY PRODUCED IS THAT IT

9     WAS ACCURATE IN DETECTING WHEN OUR PLAINTIFFS AND OUR TEST DATA

10    WERE IN INCOGNITO MODE, AND IT CAN BE LINKED UP TO OUR ACTUAL

11    USERS USING A COMBINATION OF I.P. ADDRESS AND USER AGENT

12    STRING.

13         IF THE COURT WOULD LIKE, WE WOULD BE HAPPY TO SUBMIT OUR

14    EXPERT'S REPORT, AND POTENTIALLY A DECLARATION ON THIS VERY

15    RECENT PRODUCTION OF DATA.

16         SO THE NOTION THAT WE HAVE NOT DEMONSTRATED THAT THIS IS

17    POSSIBLE, WE THINK WE HAVE MADE A VERY STRONG DEMONSTRATION OF

18    THAT, AND WE WOULD BE HAPPY TO SUBMIT OUR EXPERT REPORT TO THE

19    EXTENT THAT WOULD BE HELPFUL TO YOUR HONOR TO REVIEW.

20             THE COURT:  OKAY.  SO -- BUT, AGAIN, GETTING BACK TO

21     THE PRESERVATION PLAN AND THIS APPROACH OF SAMPLING, YOU

22     STARTED THIS DISCUSSION, MS. BONN, BY SAYING, WE'RE NOT GOING

23     TO USE SAMPLING WHEN WE PROVE UP THE CLASS, AND AS I UNDERSTAND

24     THE ARGUMENTS THAT YOU ARTICULATED AND AS FLESHED OUT BY

25     MR. MAO, IT'S, AGAIN, YOU'RE FOCUSSED ON WHAT GOOGLE SHOULD NOT

```
 1     BE ALLOWED TO DO, WHAT SAMPLING DOES NOT CAPTURE AND THAT

 2     GOOGLE SHOULD NOT BE ALLOWED TO RELY ON THAT.

 3          I -- SO I TAKE THAT AS A CRITICISM OF SAMPLING, OR A

 4     CONCERN THAT SAMPLING WITHOUT SOME SAFEGUARDS WOULD -- MAY

 5     ALLOW OR MAY LEAD TO GOOGLE MAKING ARGUMENTS BASED ON DATA THAT

 6     WAS NOT PRESERVED.

 7          AM I TRACKING THAT CONCERN?

 8               MS. BONN:  YES, ABSOLUTELY, YOUR HONOR.

 9               THE COURT:  ALL RIGHT.  AND I'M NOT SURE --

10               MR. MAO:  SORRY, YOUR HONOR.

11               THE COURT:  EXCUSE ME.

12          I HAVE TO GIVE SOME THOUGHT TO -- I'M NOT SURE ALL THOSE

13     ISSUES ARE BEFORE ME.  SOME OF THOSE MAY BE MORE APPROPRIATE TO

14     RAISE IN THE CLASS CERT PROCESS.

15          BUT I'M VERY FOCUSSED ON PRESERVING AND WHAT ARE THE

16     DETRIMENTS TO PLAINTIFFS, WHAT ARE THE DETRIMENTS TO

17     PLAINTIFFS' CLAIMS, LIABILITY OR DAMAGES, OR IF NOT IN THE

18     CLASS FORMATION ITSELF, BY SAMPLING AS OPPOSED TO SOME SORT OF

19     WHOLESALE PRESERVATION, WHICH JUST STRIKES ME AS IT -- I WILL

20     SAY, AS IT ALWAYS HAS IN THIS CASE, IT JUST STRIKES ME AS

21     UNWORKABLE BECAUSE WE'RE TALKING ABOUT SUCH PHENOMENAL MASSES

22     OF DATA, I DON'T EVEN SEE HOW IT CAN BE USED.

23          BUT THAT MAY BE A BIT ESOTERIC, BUT I HAVE THAT SPECIFIC

24     QUESTION, AND WE'RE GOING TO BE OUT OF, OUT OF TIME, AND I KNOW

25     YOU HAD OTHER POINTS YOU WANTED TO ADDRESS.
```

SEALED PROCEEDINGS
30

```
 1          BUT I REALLY THINK WE NEED TO FOCUS ON HOW THIS TIES TO
 2     THE PRESERVATION PLAN.
 3          MR. MAO:  SO, YOUR HONOR, WE HAD VERY -- WE HAD
 4     PRESENTED AT LEAST TWO OTHER EXAMPLES THAT WERE VERY SPECIFIC
 5     THROUGHOUT THE CASE, WHICH IS ONE, THERE'S UMA DATA, WHICH IS
 6     TIED TO SPECIFIC BROWSERS, AND THAT TRACKS WHEN PEOPLE ARE
 7     ACTUALLY USING INCOGNITO.
 8          IT GOES FROM --
 9          THE COURT:  I UNDERSTAND, MR. MAO.  I UNDERSTAND -- I
10     UNDERSTAND THE POINT THAT, FROM PLAINTIFFS' POSITION, YOU'RE
11     SAYING WE CAN TIE DATA TO SPECIFIC USERS.
12          BUT WHAT I DON'T SEE IS -- SO THIS DATA, THIS DATA NEEDS
13     TO BE PRESERVED, AND I KNOW YOU WANT TO -- YOU HAVE THIS IDEA
14     OF A SUPER LOG, AND I'D LIKE TO SEE IF THE SPECIAL MASTER HAS
15     SOME QUESTIONS AROUND THAT.  I'VE SEEN THAT REFERENCED BEFORE.
16          AGAIN, JUST PULLING DATA OUT OF A LOG, IT SEEMS TO ME YOU
17     WOULD LOSE VALUABLE CONTEXT, PERHAPS.
18          I QUESTION THE FEASIBILITY OF SUPER LOG CREATION, BUT I
19     HAVE NOT READ THROUGH YOUR EXPERT DECLARATION IN THAT REGARD.
20          MS. BONN:  AND I THINK WITH THAT, YOUR HONOR, AND
21     BEING MINDFUL OF TIME, I WOULD LIKE TO TURN TO QUESTIONS 2 AND
22     3, WHICH I THINK TIE INTO THIS QUESTION YOUR HONOR IS ASKING.
23          THE COURT:  OKAY.
24          MS. BONN:  AND ON QUESTION 2, WHICH REALLY IS NOT
25     JUST THIS CLASS CERTIFICATION ISSUE, BUT LIABILITY AND DAMAGES,
```

1     I THINK THE CRITICAL POINT WHICH I MENTIONED IS THAT DURING

2     DISCOVERY A YEAR AGO, WE DID WANT PRODUCTION OF SAMPLED DATA.

3     THAT'S WHAT WE ASKED FOR IN P6 AND P16.

4              THE COURT:  UM-HUM.

5              MS. BONN:  GOOGLE OBJECTED AND THE COURT SUSTAINED

6     GOOGLE'S OBJECTION.

7              THE COURT:  UM-HUM.

8              MS. BONN:  AND AS A RESULT OF THAT, YOU KNOW, WE HAD

9     TO MAKE SOME DIFFERENT CHOICES.  AND WE BELIEVE THAT OUR

10    EXPERTS HAVE DEMONSTRATED THAT THROUGH COMMON EVIDENCE THAT

11    PREDOMINATED, GOOGLE'S PRACTICES WERE CLASS-WIDE.  IT CAN BE

12    DEMONSTRATED WITH THE TEST DATA THAT WE HAVE, DOCUMENTS AND

13    DEPOSITION TESTIMONY THAT WE HAVE OBTAINED.

14         BUT WE WERE FORECLOSED, WE WERE FORECLOSED FROM USING

15    SAMPLED CLASS MEMBER DATA TO SUPPORT OUR LIABILITY AND DAMAGES

16    CLAIMS.

17         AND WHAT WE THINK WOULD BE FUNDAMENTALLY UNFAIR IS, AFTER

18    DISCOVERY IS CLOSED, FOR GOOGLE THEN TO BE ABLE, HAVING GONE

19    THROUGH DISCOVERY WITHOUT ANY SUCH SAMPLE BEING TESTED BY

20    PLAINTIFFS, ASKED ABOUT IN DEPOSITIONS, OR ADDRESSED IN OUR

21    OPENING EXPERT REPORTS, FOR GOOGLE TO THEN COME IN AND BENEFIT

22    BY SAYING, OH, WELL, NOW WE'RE GOING TO START PRESERVING THIS

23    SAMPLE.  OH, AND OUR EXPERTS ARE LOOKING AT OUR SAMPLE AND OUR

24    EXPERTS THINK THAT WHAT THIS SAMPLE SHOWS IS THE DAMAGES MODEL,

25    PLAINTIFFS, THAT YOU PUT IN BASED ON THE RECORD ADDUCED IN

1    DISCOVERY DOESN'T HOLD UP TO THE SAMPLED DATA THAT, ON A GOING

2    FORWARD BASIS AFTER DISCOVERY, WE ARE NOW PRESERVING AND GIVING

3    TO YOU.

4         THE COURT:  OKAY.  SO THAT'S A -- THAT'S A -- THAT'S

5    A, YOU KNOW, EXCLUDE, DON'T ALLOW THIS EVIDENCE.  IT'S EITHER

6    AN OBJECTION AT THE CLASS CERT STAGE, OR IT MAY BE APPROPRIATE

7    TO RAISE AT THIS STAGE.  I HAVE TO GIVE THAT SOME CAREFUL

8    THOUGHT.

9         BUT THAT'S -- I UNDERSTAND.  THAT'S NOT A CRITICISM OF

10   SAMPLING.  IT'S A CONCERN ABOUT THE -- ABOUT HOW GOOGLE MIGHT

11   USE IT GOING FORWARD.

12        MS. BONN:  CORRECT.

13        AND I THINK THAT BRINGS US TO, WHAT'S THE ALTERNATIVE?

14        THE COURT:  UH-HUH.

15        MS. BONN:  THAT WAS REALLY QUESTION 3, HOW CAN THIS

16   BE AMELIORATED AND WHAT'S THE ALTERNATIVE?

17        AND WHEN WE SAY WE'VE PROPOSED SORT OF A SUPER LOG

18   PROPOSAL, I WANT TO BE CLEAR THAT THIS CONCEPT IS ACTUALLY ONE

19   THAT GOOGLE PROPOSED.

20        AND, MR. FRAWLEY, IF YOU COULD JUST PULL UP THE SLIDE, I

21   BELIEVE IT'S SLIDE 20.

22        BUT FOR THE VERY FIRST TIME, ON MARCH 15TH, WHICH WAS

23   ALMOST TWO WEEKS AFTER THE CLOSE OF FACT DISCOVERY, GOOGLE FOR

24   THE FIRST TIME SENT US AN EMAIL SAYING, "INSTEAD OF

25   CATEGORICALLY PRESERVING A NUMBER OF DIFFERENT LOG SOURCES,

```
 1    GOOGLE PROPOSES TO CONSTRUCT A LOG SOURCE FOR PRESERVATION THAT

 2    ONLY CONSISTS OF THE SPECIFIC FIELDS AND DATA TO BE PRESERVED."

 3          SO THIS ISN'T A SUGGESTION THAT PLAINTIFFS AND THEIR

 4    EXPERTS SORT OF COOKED UP AND SAID, WE THINK GOOGLE COULD DO

 5    THIS.  THE SUGGESTION WAS MADE BY GOOGLE ITSELF TO US.

 6          AND, FRANKLY, IT CAME AS A BIT OF SURPRISE BECAUSE THE

 7    ENTIRE PRESERVATION DISCUSSION THAT HAD BEEN ONGOING IN FRONT

 8    OF YOUR HONOR SINCE LAST MARCH WAS THIS ALL-OR-NOTHING NOTION,

 9    THAT GOOGLE EITHER HAD TO SIMPLY PRESERVE ALL LOGS AS THEY

10    PRESENTLY EXISTED IN THEIR EXISTING FORM, OR NOTHING, AND THERE

11    WAS NO MIDDLE GROUND.  AND FOR THE FIRST TIME WE GOT AN

12    ADMISSION FROM GOOGLE THAT, IN FACT, IT COULD CREATE A SUPER

13    LOG.

14          AND WHAT I WANT TO GO TO FROM THERE IS THE NEXT SLIDE,

15    SLIDE 21, AND YOUR HONOR SAW THIS AT THE HEARING THE OTHER

16    WEEK.

17          BUT WHAT THIS PROPOSAL FROM GOOGLE SHOWS AND WHAT

18    MR. THOMPSON HAS PUT FORTH IN HIS DECLARATION IS GOOGLE CAN

19    DEDUPE DOWN TO ONLY THE RELEVANT FIELDS ACROSS LOGS, COMBINE

20    THEM, AND WE KNOW FROM THE INCOGNITO DETECTION BITS THAT THEY

21    DON'T EVEN NEED TO PRESERVE ALL OF THE DATA BECAUSE INCOGNITO

22    DATA IN PARTICULAR, WHICH IS APPROXIMATELY ███████ OF CHROME

23    TRAFFIC, WHICH IS ITSELF A SUBSET OF ALL BROWSER TRAFFIC, IS

24    SPECIFICALLY FLAGGED WITH INCOGNITO DETECTION BITS.

25          AND SO WE PUT IN A DECLARATION FROM MR. THOMPSON SAYING
```

1    THAT HE BELIEVES THAT THE BURDEN IS SUBSTANTIALLY OR ALMOST

2    ENTIRELY AMELIORATED BY THIS FUNNEL.

3         GOOGLE, IN RESPONSE -- WE THOUGHT, WELL, PERHAPS IF GOOGLE

4    DISAGREES, THEY WILL PUT IN A DECLARATION SAYING MR. THOMPSON

5    AND PLAINTIFFS ARE WILDLY OFF BASE, THIS ISN'T POSSIBLE, IT

6    ISN'T FEASIBLE, THE BURDEN ASSOCIATED WITH INCOGNITO DATA WOULD

7    BE HIGH.

8         BUT INSTEAD WHAT THEY DID IS THEY PUT IN A DECLARATION

9    FROM MR. HARTING -- AND MR. HARTING, BY THE WAY, IS ANOTHER

10   UNDISCLOSED WITNESS, HE WAS NOT IN THE LIST OF 226.

11        WHEN WE GO TO SLIDE 24, MR. FRAWLEY, HE ALSO FLAGS -- AND

12   THIS IS THE BULK OF HIS DECLARATION.  HE SAYS THAT TO PRESERVE

13   IN THEIR ENTIRETY A CERTAIN SET OF LOGS WOULD BE UNDULY

14   BURDENSOME.

15        WHAT HE NEVER SAYS ANYWHERE IN HIS DECLARATION IS THAT

16   PRESERVING A SUBSET OF DATA FROM THOSE LOGS THAT IS LIMITED BY

17   FIELD, DEDUPED, AND TARGETED TO THE INCOGNITO DATA AND DATA

18   THAT CAN BE LINKED TO IT, HE NEVER SAYS THAT THAT WOULD BE

19   BURDENSOME.

20        HE SIMPLY SAYS THAT PRESERVING ALL OF THESE LOGS IN THEIR

21   ENTIRELY WOULD BE.  HE'S ANSWERING A FUNDAMENTALLY DIFFERENT

22   QUESTION THAN THE SUPER LOG QUESTION.

23        AND BY THE WAY, HE ALSO DOES MENTION IN HIS DECLARATION

24   THAT A NUMBER OF THESE LOGS, WHICH WERE NOT DISCLOSED BY GOOGLE

25   IN THE NOVEMBER 18TH DECLARATION, WERE AD MANAGER LOGS, AND I

```
 1      DO RECALL AT THE HEARING GOOGLE SAYING THAT THE REASON THESE
 2      WEREN'T DISCLOSED IS THAT GOOGLE HAD BEEN FOCUSSED ON AD
 3      MANAGER.  IT APPEARS THAT, IN FACT, THESE LOGS ARE THEMSELVES
 4      AD MANAGER LOGS.
 5           AND IF -- MR. FRAWLEY, THIS IS MY LAST SLIDE.  IF YOU
 6      COULD JUST TURN TO SLIDE 27.
 7           THIS IS REALLY WHAT WE WOULD ASK YOUR HONOR TO CONSIDER.
 8           MR. THOMPSON'S DECLARATION AND THE KEY POINTS ARE ON THE
 9      LEFT, AND HE LAYS OUT WHAT HE THINKS CAN BE DONE THROUGH A
10      SUPER LOG APPROACH AND THAT HE THINKS IT WOULD LIMIT THE
11      PRESERVATION BURDEN, IT WOULD ELIMINATE THE BURDEN BY ███
12      PERCENT.
13           GOOGLE'S DECLARANT DOES NOT ADDRESS THAT, DOES NOT REFUTE
14      THAT POINT, SAYS NOTHING ABOUT IT.
15           AND SO I THINK YOU CAN TAKE THE SLIDES DOWN, MR. FRAWLEY.
16           BUT FUNDAMENTALLY, OUR POINT IS THERE IS NO FACTUAL RECORD
17      THAT PRESERVING A SUBSET OF THE DATA, DEDUPED, LIMITED TO
18      RELEVANT FIELDS, TIED TO INCOGNITO OR DATA THAT COULD BE LINKED
19      TO INCOGNITO WITH I.P. AND USER AGENT, WOULD BE BURDENSOME.
20           AND WE THINK THAT THE ONLY WAY THAT IT WOULD MAKE SENSE TO
21      PIVOT FROM PRESERVATION TO SAMPLING IS IF THERE WAS SOME
22      DEMONSTRATION BY GOOGLE THAT THE BURDEN ASSOCIATED WITH THE
23      SUPER LOG APPROACH, WHICH GOOGLE ITSELF PROPOSED, IS UNDULY
24      BURDENSOME SUCH THAT SAMPLING WOULD BE SOME SORT OF SUBSTITUTE.
25           AND WE SIMPLY THINK THAT THE RECORD EVIDENCE DOES NOT
```

```
 1    SUPPORT ANY SUCH ARGUMENT BY GOOGLE.  TO THE CONTRARY.  THE

 2    UNREBUTTED RECORD EVIDENCE IS THAT GOOGLE IS CAPABLE OF MAKING

 3    SUCH A SUPER LOG, AND THEY HAD NOTHING TO SAY IN RESPONSE TO

 4    MR. THOMPSON'S DECLARATION THAT IF THEY DID THAT, THE BURDEN

 5    ASSOCIATED WITH STORAGE IS SUBSTANTIALLY LESS.

 6         SO THOSE ARE OUR KEY POINTS.

 7            THE COURT:  THANK YOU, MS. BONN.

 8            MS. BONN:  IN THE INTERESTS OF TIME, I'LL PASS IT

 9    OVER.  THANK YOU.

10            THE COURT:  THANK YOU.

11         BEFORE I FORGET, TO THE EXTENT ANY PARTY USES SLIDES

12    TODAY, AT THE CONCLUSION OF THE HEARING, I WILL HAVE YOU EMAIL

13    ONLY THE SLIDES YOU HAVE USED, ONLY THE SLIDES YOU HAVE USED,

14    TO MS. FANTHORPE, AND PLEASE MAKE IT CLEAR IF THIS WAS BROWN

15    PLAINTIFFS, OR IF IT'S GOOGLE, IF IT WAS IN THE BROWN CASE OR

16    CALHOUN CASE.  ALL RIGHT?

17         THANK YOU VERY MUCH.  I APPRECIATE IT, AND I APPRECIATE

18    THE DISCIPLINE OF FOCUSSING ON THE ORGANIZING OF THE COMMENTS

19    AND QUESTIONS ALONG THE LINES THAT I LAID OUT.  THAT HAS BEEN

20    VERY HELPFUL.

21         LET ME HEAR FROM GOOGLE.

22         WHO WILL LEAD US OFF?  MS. TREBICKA?

23            MS. TREBICKA:  YES, YOUR HONOR.  GOOD AFTERNOON.

24    THANK YOU.

25         I WILL START US OFF, AND MY COLLEAGUES, MR. ANSORGE,
```

```
 1    DR. ANSORGE, AND MS. GAO WILL LIKEWISE ADDRESS CERTAIN ISSUES.

 2         BUT I WILL TRY TO AT LEAST LAY THE GROUNDWORK SO THAT THEY

 3    CAN JUMP IN WITH ANYTHING THAT I MAY HAVE MISSED, BECAUSE AS

 4    THE PARTY THAT COMES SECOND, WE'RE TRYING TO MAKE OUR

 5    PRESENTATION AND OUR REMARKS AS RESPONSIVE AS POSSIBLE TO

 6    PLAINTIFFS SO THAT YOUR HONOR CAN SEE WE'RE JOINING ISSUES.

 7         THERE ARE TWO DISTINCT PARTS TO PLAINTIFFS' PRESENTATION,

 8    AND THEY SEEM TO BE A LITTLE BIT AT ODDS WITH EACH OTHER.

 9         FIRST, THEY'VE NOW ASKED FOR EVIDENTIARY SANCTIONS.  WE'RE

10    HERE TO DISCUSS PRESERVATION, AND THAT INITIAL PRESENTATION

11    WHERE PLAINTIFFS ASKED FOR EVIDENTIARY SANCTIONS IS A GOOD

12    ILLUSTRATION FOR WHY WE'VE BEEN UNABLE TO MEET IN THE MIDDLE

13    WHEN DISCUSSING A PRESERVATION PLAN.  WE'RE A LITTLE BIT LIKE

14    SHIPS PASSING IN THE NIGHT.  WHEN WE THINK WE SHOULD BE

15    DISCUSSES SOLUTIONS TO THE PRESERVATION QUESTION, THERE'S ALL

16    OF A SUDDEN A DISCUSSION OF SANCTIONS THAT IS WEDGED IN.

17         RESPECTFULLY, THIS IS NOT A HEARING ON WHETHER PLAINTIFFS

18    SHOULD GET ADVERSE INFERENCES OR ISSUE PRECLUSION.  THAT WAS --

19    THAT'S SOMETHING THAT WAS ALREADY DISCUSSED.  WE THINK IT'S

20    UNMERITORIOUS.  BUT THIS IS NOT THE CONTEXT NOW.

21         AND IF YOUR HONOR IS LEANING IN THAT DIRECTION, THEN WE'D

22    REQUEST ADDITIONAL BRIEFING AND HEARING TIME.

23         AS AN ASIDE, RULE 23 REQUIRES PLAINTIFFS TO SHOW THAT A

24    CLASS ACTION IS MANAGEABLE AND, AND I QUOTE, "THAT A CLASS

25    ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS FOR FAIRLY AND
```

1    EFFICIENTLY ADJUDICATING THE CONTROVERSY."

2        SO WHAT BRISENO SAID IS NOT AT ISSUE HERE, BUT WE WILL BE

3    ARGUING IT AT THE CLASS CERTIFICATION STAGE.

4        NOW, TO THE SECOND ISSUE WHICH, AS I SAID, IT SEEMS TO BE

5    A LITTLE BIT AT ODDS, BUT IT'S THIS ISSUE OF WHAT PLAINTIFFS

6    ACTUALLY ARE SEEKING TO -- WHAT PLAINTIFFS ARE SEEKING TO BE

7    PRESERVED.

8        AND          OF ALL CHROME DATA IS STILL AN INSANE AMOUNT

9    OF DATA.  AND THAT'S WHAT WE'VE BEEN TRYING TO, OR ATTEMPTING

10   TO SHOW THROUGH THE HARTING DECLARATION.

11       PLAINTIFFS MENTIONED THAT GOOGLE DOES NOT ADDRESS IN THE

12   HARTING DECLARATION THIS IDEA OF A MORE LIMITED PRESERVATION --

13       THE COURT:  LET ME JUST ASK A QUESTION THERE,

14   MS. TREBICKA.

15       MS. TREBICKA:  OF COURSE.

16       THE COURT:  BECAUSE I THOUGHT MS. BONN'S POINT AND

17   THAT THE SLIDE -- I THOUGHT, EXCUSE ME, THAT THE          WAS

18   A REFLECTION OF INCOGNITO DATA, NOT CHROME -- NOT CHROME AT

19   LARGE, BUT INCOGNITO SPECIFICALLY.  WAS I --

20       MS. TREBICKA:  CORRECT.  SO I THINK WHAT PLAINTIFFS

21   WERE ATTEMPTING TO SAY IN THAT SLIDE IS THAT ONLY          OF

22   THE OVERALL CHROME DATA IS INCOGNITO DATA AND, THEREFORE, IT

23   SHOULD NOT BE BURDENSOME TO BE PRESERVED.

24       THE COURT:  I SEE.

25       MS. TREBICKA:  AND OUR POINT IS EVEN THAT IS AN

```
1     EXTREMELY LARGE, CRUSHING AMOUNT OF DATA RIGHT NOW, AND TO

2     PRESERVE IT FOR THE DURATION OF THE LAWSUIT IS JUST NOT DOABLE.

3          BUT, YOUR HONOR, WE DON'T SEE -- AND WE'LL ADDRESS THIS IN

4     MORE DETAIL, BUT WE DON'T SEE A REASON TO DEVIATE FROM THE

5     SPECIAL MASTER'S WELL THOUGHT OUT SAMPLE, SAMPLED PRESERVATION

6     RECOMMENDATION.  WE BELIEVE THAT IS THE BASIS OF A WELL THOUGHT

7     OUT PRESERVATION PLAN, AND THAT PLAINTIFFS JUST ADMITTED THAT

8     THEY DON'T NEED THE DATA TO -- FOR CLASS CERT PURPOSES, FOR

9     CONFIRMING CLASS MEMBERSHIP OR OTHERWISE.  FINE.

10         OUR ARGUMENT IS THAT WE ACTUALLY DON'T NEED IT, EITHER.

11    WE DON'T NEED THIS DATA TO MAKE THE POINTS THAT WE NEED TO MAKE

12    IN REBUTTAL OF THEIR CLASS CERTIFICATION CLAIMS.

13         YOUR HONOR, THERE'S TWO ADDITIONAL POINTS THAT I'D LIKE TO

14    ADDRESS IN THIS -- IN THE PRESERVATION CONTEXT, NOW MOVING AWAY

15    FROM THE EVIDENTIARY SANCTIONS.

16         THE FIRST IS THAT WHAT AMOUNTS TO A LARGE, WHOLESALE

17    PRESERVATION OF THESE CHROME -- OF ██████ OF ALL CHROME LOGS

18    IS UNWORKABLE.  THE PLAINTIFFS ARE ASKING FOR THIS TO BE

19    PRESERVED SO THAT THEY CAN -- SO THAT THEY CAN IDENTIFY CLASS

20    MEMBERS.

21         AND, YOUR HONOR, PLAINTIFFS HAVE ATTEMPTED TO SHOW THAT

22    THROUGH THE I.P. ADDRESS PLUS USER AGENT COMBINATION, HOW THAT

23    WILL WORK, HOW THAT WILL IDENTIFY CLASS MEMBERS.  IT DOESN'T

24    WORK.

25         AND YOUR HONOR MADE THAT REMARK HERSELF, SO I'M NOT GOING
```

```
 1    TO DWELL ON IT VERY MUCH, BUT THAT'S WHAT MR. THOMPSON ALSO

 2    ADMITTED AT THE CLASS CERTIFICATION HEARING.

 3              THE COURT:  YOU MEAN AT THE OSC HEARING?

 4              MS. TREBICKA:  I'M SORRY, AT THE OSC HEARING.

 5         YOU KNOW, MR. THOMPSON ADMITTED THAT THE I.P. ADDRESS IS

 6    GENERALLY -- DOES GENERALLY NOT IDENTIFY A DEVICE.  IT

 7    CERTAINLY CANNOT IDENTIFY A FLESH AND BLOOD PERSON.

 8              AND EVEN IF THE COMBINATION OF AN I.P. ADDRESS AND A USER

 9    AGENT MAY BE ABLE TO IDENTIFY A DEVICE AT A VERY PARTICULAR

10    POINT IN TIME, BUT IT CAN CERTAINLY NOT IDENTIFY A FLESH AND

11    BLOOD PERSON, ESPECIALLY NOT IN THE PARADIGMATIC USE CASE OF

12    INCOGNITO, OF CHROME -- OR OF ANY PRIVATE BROWSING MODE, WHICH

13    IS TWO PEOPLE SHARING A DEVICE AND WANTING THEIR BROWSING TO

14    REMAIN PRIVATE.

15         IT IS IMPOSSIBLE TO KNOW, JUST LOOKING AT THIS DATA,

16    WHETHER IT'S PERSON A OR PERSON B WHO HAS BROWSED PRIVATELY ON

17    THAT DEVICE ON THE BASIS OF THE USER AGENT AND I.P. ADDRESS

18    ALONE.

19              THE COURT:  IS THAT SAME ARGUMENT YOUR RESPONSE TO I

20    THINK IT WAS -- I CAN'T REMEMBER, PARDON ME, IF IT WAS MS. BONN

21    OR MR. MAO WHO REFERRED TO THEIR EXPERT REPORT, TO THE HOCHMAN

22    REPORT.

23              MS. TREBICKA:  CORRECT.  THE HOCHMAN REPORT, YOUR

24    HONOR, THE BASIC -- THE BASIC STRUCTURE OF THE REPORT IS

25    EXACTLY PRECISELY WHAT MR. THOMPSON DESCRIBED.
```

SEALED PROCEEDINGS

```
1        AND IT'S A VERY LONG REPORT.  IT'S 31 OPINIONS, 350

2   PARAGRAPHS, BUT IT BOILS DOWN TO USING USER AGENT AND I.P.

3   ADDRESS TO IDENTIFY PEOPLE, AND THAT IS JUST NOT POSSIBLE.  IT

4   IS THE SAME EXACT TYPE OF ARGUMENTS THAT YOU HEARD FROM

5   MR. THOMPSON, YOUR HONOR.

6        AND IT DOESN'T WORK, YOUR HONOR, AND I'D LIKE TO ALSO MAKE

7   A VERY, VERY SIMPLE ILLUSTRATION AS TO WHY IT DOESN'T WORK.

8        PLAINTIFFS, IN THEIR RESPONSE TO GOOGLE'S OBJECTIONS, ON

9   PAGE 2 IN RESPONSE TO GOOGLE'S OBJECTIONS, BRING AN EXAMPLE HOW

10  THEY PLAN TO USE THIS DATA.  THIS IS THE SECOND FULL PARAGRAPH.

11       THE CLASS MEMBER SIGNED IN FOUR YEARS AGO, THEN SIGNED

12  OUT, BROWSED IN INCOGNITO FOR 30 MINUTES THAT AFTERNOON, AND

13  THEN PLAINTIFFS PURPORT TO TRACK THE USER ACROSS SIGNED IN AND

14  SIGNED OUT LOGS BY THE I.P. ADDRESS AND THE USER AGENT FROM

15  FOUR YEARS AGO.

16       THAT WILL NOT WORK FOR THE SIMPLE REASON THAT I.P.

17  ADDRESSES ARE PARTIALLY REDACTED WITHIN ██████████ OF

18  COLLECTION.

19       FURTHER, DIFFERENT LOGS -- BECAUSE NOW WE'RE TALKING ABOUT

20  TRACKING A USER ACROSS LOGS -- USE DIFFERENT LOGICS REGARDING

21  WHICH TYPE OF I.P. ADDRESS EACH LOG STORES.  THIS VERY SIMPLE

22  ILLUSTRATION SHOWS THAT WHAT PLAINTIFFS WANT TO USE THE DATA

23  FOR SIMPLY WILL NOT WORK.

24       AND WHY IS THIS IMPORTANT?  IT'S IMPORTANT BECAUSE --

25            THE COURT:  MS. TREBICKA, TELL ME AGAIN WHICH
```

```
 1    DOCUMENT YOU'RE LOOKING AT.

 2              MS. TREBICKA:  YOUR HONOR, I WISH I HAD THE DOCKET

 3    NUMBER.

 4              THE COURT:  I WISH YOU DID, TOO.

 5              MS. TREBICKA:  I KNOW, I APOLOGIZE, BECAUSE I HAVE

 6    THE UNREDACTED VERSION.

 7              THE COURT:  AS DO I.

 8              MS. TREBICKA:  IT IS PLAINTIFFS' RESPONSE TO GOOGLE'S

 9    OBJECTION FILED ON THE 25TH OF APRIL.

10              THE COURT:  OKAY.  I'M THERE.  AND WHICH PAGE ARE YOU

11    ON?

12              MS. TREBICKA:  I'M ON PAGE 2.

13              THE COURT:  AND FOR YOUR RECORD, IT'S 560, DOCKET

14    560-2.

15              MS. TREBICKA:  THANK YOU, YOUR HONOR.

16              THE COURT:  AND THERE'S THE EXAMPLE, YES, THAT YOU

17    WERE WALKING US THROUGH.  YES, OKAY.

18              MS. TREBICKA:  CORRECT, YOUR HONOR.

19         AND THE LARGER POINT STILL STANDS.  THE BROADER CONTEXT IS

20    THAT PLAINTIFFS HAVE HAD ALMOST TEN MONTHS TO TEST THEORIES OF

21    IDENTIFIABILITY, CLASS MEMBERS, JOINABILITY OF DATA THROUGH THE

22    SPECIAL MASTER PROCESS.

23         AND GOOGLE HAS PROVIDED GIGABYTES OF DATA FROM PLAINTIFFS,

24    AS WELL AS THEIR EXPERTS' TEST ACCOUNTS, AND THEY STILL HAVEN'T

25    BEEN ABLE TO COME UP WITH ANYTHING OTHER THAN WHAT I JUST
```

1    DESCRIBED.

2         AT THIS STAGE OF THE LITIGATION, GIVEN ALL THE INFORMATION

3    THAT THEY HAVE RECEIVED, THERE NEEDS TO BE A DIFFERENT SHOWING.

4    IT CANNOT BE THE CASE THAT PLAINTIFFS CAN COME UP WITH ANY

5    RANDOM THEORY, INCLUDING ONE THAT HAS ALREADY BEEN REJECTED,

6    AND ON THAT BASIS BE ALLOWED TO IMPOSE THIS TREMENDOUS BURDEN

7    ON THE OTHER PARTY.

8         AND, YOUR HONOR, I'D ALSO LIKE TO POINT OUT THAT THESE

9    TWO -- THERE'S TWO BUILDING BLOCKS TO PLAINTIFFS' THEORY.  THIS

10   I.P. ADDRESS PLUS USER AGENT CAN UNIQUELY IDENTIFY SOMEONE; AND

11   THEN THE MAYBE_CHROME_INCOGNITO BIT; OR THE ABSENCE OF THE

12   X-CLIENT DATA HEADER, THAT SAME LOGIC, CAN BE USED TO RELIABLY

13   IDENTIFY CHROME INCOGNITO BROWSING SESSIONS, AND THAT IS WHAT

14   LEADS TO THE ███████ OF CHROME TRAFFIC THAT I WANTED TO

15   ADDRESS.

16        BUT BOTH BUILDING BLOCKS ARE SPECULATIVE.  THEY DO NOT

17   WORK.

18        FIRST, WE'VE BEEN TALKING ABOUT THE RELIABILITY OF THE

19   ABSENCE OF THE X-CLIENT DATA HEADER FOR A LONG TIME.  THERE'S

20   BEEN EXTENSIVE BRIEFING, ON THE BASIS OF WHICH THE SPECIAL

21   MASTER ALREADY DECLINED A WHOLESALE PRODUCTION OF THE DATA

22   WHERE THE X-CLIENT DATA HEADER WAS MISSING.

23        FOR THE SAME REASON, IT IS TOO UNRELIABLE TO NOW BASE A

24   WHOLESALE PRESERVATION OF THAT KIND OF DATA, OF THE DATA WHERE

25   THE MAYBE_CHROME_INCOGNITO BIT IS SET TO TRUE OR WHERE THE

1    X-CLIENT DATA HEADER IS MISSING.

2         AND, YOUR HONOR, I'D LIKE TO POINT YOU TO PARAGRAPH 6 OF

3    THE HARTING DECLARATION WHICH WE FILED WITH OUR RESPONSE, SO ON

4    APRIL 25TH, WHICH DOES SUBSTANTIATE THE BURDEN OF FOCUSSING

5    ONLY ON THESE, ON THESE BITS OR -- THAT PLAINTIFFS ARE NOW, ARE

6    NOW IDENTIFYING.

7         FOR THE PAST MONTH, THE LOGS LISTED BELOW --

8              THE COURT:  WHICH PARAGRAPH ARE YOU IN, MS. TREBICKA?

9              MS. TREBICKA:  PARAGRAPH 6, YOUR HONOR.

10             THE COURT:  UH-HUH.  GO AHEAD.

11             MS. TREBICKA:  THE LOGS LISTED BELOW, WHICH IS ONLY

12   THE LOGS THAT RECORD THE MAYBE_CHROME_INCOGNITO BIT, CAPTURED

13   AT LEAST ███████ ENTRIES WITH THE MAYBE_CHROME_INCOGNITO

14   FIELD SET TO TRUE, EACH DAY.  SO THIS IS JUST FOR ONE DAY.

15        AND, YOUR HONOR, AGAIN, THESE SAME ARGUMENTS THAT WE'RE

16   MAKING NOW, THAT THE PLAINTIFFS ARE MAKING AND THAT WE ARE

17   REBUTTING ABOUT THE IDENTIFIABILITY OF USERS AND WHY A LARGER

18   SET OF DATA PLAINTIFFS CLAIM SHOULD BE PRESERVED AND IN OUR

19   VIEW SHOULD NOT BE AND THE REASONS FOR WHY IT SHOULD NOT BE

20   HAVE ALREADY BEEN MADE OVER MANY MONTHS OF THE SPECIAL MASTER

21   PROCESS.

22        AND THE SPECIAL MASTER HAS ALREADY HEARD ALL OF THIS

23   EVIDENCE AND HAS COME TO THE CONCLUSION THAT THIS METHOD OF

24   IDENTIFYING USERS IS TOO SPECULATIVE TO ACTUALLY IDENTIFY ANY

25   PUTATIVE CLASS MEMBERS AND, THEREFORE, IT CANNOT SERVE AS THE

1    BASIS OF A PRESERVATION PLAN THAT WOULD PUT SUCH A TREMENDOUS

2    AMOUNT OF BURDEN ON GOOGLE.

3           AND I WOULD LIKE TO REST ON THE BURDEN A LITTLE BIT, YOUR

4    HONOR, BECAUSE I FEAR THAT IT MAY HAVE GOTTEN LOST A LITTLE

5    BIT.

6           BUT THERE WERE TWO TYPES OF VERY DISTINCT BURDENS ON

7    GOOGLE.  THE FIRST IS THAT LITERALLY EVERYTHING THAT PLAINTIFFS

8    SAY THEY PLAN TO DO WITH THIS DATA IF THEY HAVE IT AMOUNTS TO A

9    VIOLATION OF DOZENS OF GOOGLE POLICIES THAT ARE IN PLACE TO

10   PROTECT THE PRIVACY OF INTERNET USERS.

11          AND I'M TALKING ABOUT VERY REAL POLICIES THAT GOOGLE

12   EXPLAINS PUBLICLY AND IS COMMITTED TO, AND ALSO STRICTLY

13   ADHERES TO PRIVATELY.

14          AND TO MAKE IT SOUND LESS ABSTRACT, DELETION OF PERSONAL

15   DATA AFTER ██████████ AT THE LATEST, OR PARTIALLY REDACTING AN

16   I.P. ADDRESS WITHIN ██████████ OF COLLECTION, OR KEEPING

17   UNAUTHENTICATED DATA SEPARATE FROM AUTHENTICATED DATA.

18          PLAINTIFFS FIRST ACCUSED US OF FINGERPRINTING EN MASS, AND

19   NOW ARE THEMSELVES PLANING TO FINGERPRINT EN MASS AFTER THE

20   RECORD HAS SHOWN THAT GOOGLE DOESN'T DO IT.

21          FINGERPRINTING IS A TECHNIQUE THAT GOOGLE DOES NOT DO AND

22   HAS, IN FACT, PUBLICLY COME OUT AGAINST, THAT IT TENDS TO

23   IDENTIFY A DEVICE OR A USER WHEN THEY DON'T WANT TO BE

24   IDENTIFIED.  IT'S A PRIVACY VIOLATION.  SO THAT'S THE FIRST

25   HARM AND BURDEN.

1    THE SECOND BURDEN IS JUST A BURDEN OF FINANCIAL, MONETARY

2    BURDEN, AND ENGINEERING BURDEN.

3         YOUR HONOR, WE HAVE THE HARTING DECLARATION TO

4    SUBSTANTIATE THAT BURDEN, AND IT FOCUSES ON THE ███████ LOGS,

5    AS WELL AS THE, THE AMOUNT OF SPACE THAT IT WOULD TAKE TO

6    PRESERVE JUST THE MAYBE_CHROME_INCOGNITO FIELD.

7         SO FROM THAT PERSPECTIVE, WE ARE ADDRESSING THE MAIN

8    CONCERN THAT PLAINTIFFS ARE BRINGING NOW.

9         HOWEVER, WE ALSO HAVE BURDEN INFORMATION FOR YOUR HONOR ON

10   BOTH THE ██████ AND THE █ PLATFORMS, AND ARE DIRECTED -- WE'RE

11   HAPPY TO EITHER FILE ADDITIONAL DECLARATIONS OR PROVIDE YOU

12   WITH THAT INFORMATION ORALLY IF YOUR HONOR WOULD LIKE TO HEAR.

13        THE COURT:  YEAH, LET'S ADDRESS -- LET'S ADDRESS

14   THAT.

15        MS. TREBICKA:  OKAY.  THANK YOU, YOUR HONOR.

16        AND WITH THAT, I WOULD LIKE TO TURN IT OVER TO MY

17   COLLEAGUE, TRACY GAO, WHO IS PREPARED, AND I'M HOPING THAT

18   SHE'S PULLING ALL THE INFORMATION UP RIGHT NOW, SHE WILL BE

19   ADDRESSING THE BURDEN ASSOCIATED WITH THE █████ AND THE █

20   DATABASE.

21        THE COURT:  OKAY.  AND I JUST, AGAIN, TO KEEP AN EYE

22   ON TIME ALLOTMENT, I DO WANT TO HEAR GOOGLE'S RESPONSE WITH

23   REGARDS TO THE SUPER LOG DISCUSSION THAT MS. BONN AND MR. MAO

24   REPORT.

25        MS. TREBICKA:  SURE, YOUR HONOR.  SO, YES, IT IS

1    CORRECT THAT GOOGLE, IN THE EARLY STAGES OF THE PRESERVATION

2    DISCUSSION, OFFERING TO OBTAIN OR TO REMOVE CERTAIN FIELDS,

3    IDENTIFY FIELDS, AND PRESERVE THEM IN A SEPARATE LOG SOMEWHERE.

4         THE SUPER LOG IDEA IS VERY GENERIC, SO TO BE ABLE TO

5    REALLY ASSESS THE BURDEN ASSOCIATED WITH IT, WE'D NEED TO KNOW

6    WHAT IT WOULD ENTAIL.

7         IF IT IS SOMETHING LIKE A SAMPLED PRESERVATION OF SPECIFIC

8    FIELDS, FOR EXAMPLE, 10,000 A DAY -- WHICH, AGAIN, IS A MASSIVE

9    AMOUNT OF DATA, BUT WE'RE HAPPY TO DO, OR WE'RE WILLING TO DO

10   TO RESOLVE THIS DISPUTE -- THEN THAT IS CERTAINLY DOABLE.

11        BUT WE'D NEED TO KNOW THE DETAILS OF WHAT IT WOULD ENTAIL.

12   WE ARE NOT OPPOSED TO THE IDEA OF A SUPER LOG, AS LONG AS THE

13   BASIS OF THE SUPER LOG IS SAMPLING.

14        THE COURT:  OKAY.  SOUNDS LIKE BOTH SIDES ARE IN

15   AGREEMENT THAT THEY WOULD NEED -- MORE DIALOGUE WOULD BE

16   NEEDED.

17        MS. TREBICKA:  YOUR HONOR, I'D ALSO LIKE -- SO FOR

18   THE SUPER LOG, AGAIN, JUST SO THAT THE RECORD IS CLEAR, WE

19   WOULD NOT WANT TO LINK OR STORE TOGETHER DIFFERENT TYPES OF

20   DATA THAT SHOULD NOT BE STORED TOGETHER.

21        SO THERE ARE CERTAIN DETAILS FOR THE SUPER LOG THAT -- AS

22   I SAID, THE DEVIL IS IN THE DETAILS -- THAT WE'D LIKE TO

23   ADDRESS.

24        AND ON THAT PARTICULAR POINT, WHICH IS VERY SPECIFIC, VERY

25   TECHNICAL, I WOULD LIKE TO LEAN ON THE EXPERTISE OF MY

SEALED PROCEEDINGS

```
 1    COLLEAGUE, DR. ANSORGE, AND I ASK THAT BOTH MS. GAO AND

 2    DR. ANSORGE BE ALLOWED TO SPEAK TO ADDRESS THESE TWO SPECIFIC

 3    ISSUES.

 4         SO THE BURDEN --

 5              THE COURT:  YEAH, I THINK I GET IT ON SUPER LOG.  YOU

 6    KNOW, MAYBE, MAYBE OPPOSE, MAYBE NOT.  THE BASIS WOULD HAVE TO

 7    BE SAMPLING AND DEVIL IN THE DETAILS.  I GOT IT.

 8         LET ME HEAR FROM MS. GAO, PLEASE, ON THE █████ AND █

 9    POINT THAT YOU WANTED TO HIGHLIGHT.

10              MS. GAO:  SURE, YOUR HONOR.

11         THERE'S A SPECIAL BURDEN ASSOCIATED WITH PRESERVING DATA

12    IN ████ AND █.  FOR EXAMPLE, AS OF YESTERDAY, THE TOTAL DATA

13    SAVED IN ████ IS OVER ██████████, AND JUST THE, THE 30 DAY

14    AVERAGE OF THE PAST 30 DAYS DAILY DATA THAT IS WRITTEN TO

15    ██████ IS OVER ██████████, WHICH AMOUNTS TO ██████████

16    ██████████████████████████.

17         ALSO, WHICH EQUALS, LIKE, ██████████ EMAILS, ASSUMING THE

18    AVERAGE EMAIL SIZE IS ██████.  AND THAT IS A LARGE AMOUNT OF

19    DATA.

20         AND ALSO SIMILARLY IN █, THE DAILY AVERAGE, BASED ON THE

21    LAST 30 DAYS, ON EACH DAY THE DATA WRITTEN TO THE █ DATABASE

22    IS ████████████████████.

23         SO IT'S NOT LIKE -- IT'S NOT LIKE ONE -- IT'S NOT LIKE A

24    SIMPLE DATA THAT -- IF IT'S NOT SIMPLE DATA THAT WE'RE TALKING

25    ABOUT, THIS IS REALLY A SUBSTANTIAL BURDEN THAT WE'RE LOOKING
```

```
 1    AT.

 2              THE COURT:  THANK YOU.  THANK YOU, MS. GAO.

 3         ALL RIGHT.  MS. TREBICKA, WAS THERE OTHER SPECIFIC

 4    RESPONSES TO PLAINTIFFS' POINT, OR CAN WE MOVE ON?

 5              MS. TREBICKA:  YOUR HONOR, I BELIEVE THAT I'VE

 6    ADDRESSED EVERYTHING THAT WE WANTED TO ADDRESS, BUT I AM GIVING

 7    MY COLLEAGUES A CHANCE TO JUMP IN TO THE EXTENT I'VE MISSED

 8    SOMETHING IN THE HEAT OF THE DISCUSSION.

 9         YOUR HONOR, THERE ARE OTHER ISSUES THAT PLAINTIFFS HAVE

10    RAISED AS OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND

11    RECOMMENDATION THAT WE WOULD LIKE A CHANCE TO ADDRESS IF

12    NECESSARY, BUT SINCE THEY'RE NOT BEING ARGUED BY PLAINTIFFS, WE

13    ASSUME THAT THAT IS NOT NECESSARY AT THIS POINT.

14              THE COURT:  YES, WE'VE MOVED AWAY FROM A NUMBER OF

15    THE OBJECTIONS AND CONCERNS OR COUNTERPROPOSALS THAT WERE SET

16    FORTH IN THE PAPERS.  BUT I THINK THAT THIS HAS BEEN VERY

17    INSTRUCTIVE.  IT'S HELPFUL TO KNOW REALLY WHAT THE PARTIES'

18    OBJECTIVES ARE, CONCERNS AND OBJECTIVES, AND I THINK THAT THOSE

19    HAVE BEEN WELL ARTICULATED.

20         LET ME JUST CIRCLE BACK TO MS. BONN, AND LET ME ASK IF

21    THERE'S ANYTHING SPECIFIC, SPECIFIC IN WHAT MS. TREBICKA SAID

22    THAT YOU WOULD LIKE A MOMENT TO RESPOND TO, BECAUSE THEN I'M

23    GOING TO TAKE A -- WELL, I'LL TURN TO THE SPECIAL MASTER, AND

24    THEN I'M GOING TO TAKE A SHORT BREAK, AND THEN WE'LL MOVE ON TO

25    CALHOUN.
```

```
 1          SO MS. BONN?

 2          MS. BONN:  I THINK VERY BRIEFLY, THERE'S ONE KEY

 3  ISSUE WE WOULD LIKE TO ADDRESS, WHICH IS THAT, IF I UNDERSTOOD

 4  HER ARGUMENT CORRECTLY, MS. TREBICKA SAID, YOU KNOW, WHAT

 5  PLAINTIFFS HAVE BEEN TALKING ABOUT IN TERMS OF USING DATA TO

 6  IDENTIFY CLASS MEMBERS, OR RATHER GOOGLE BEING ABLE TO USE DATA

 7  IN THE CLAIMS PROCESS TO IDENTIFY OR REFUTE CLASS MEMBERS

 8  WOULDN'T WORK FOR TWO REASONS.

 9          ONE, YOU COULD NEVER KNOW BY DATA WHETHER SOMEONE HANDED

10  THEIR DEVICE TO ANOTHER HUMAN; AND NUMBER TWO, WE, GOOGLE,

11  PSEUDONOMIZE I.P. ADDRESSES AFTER ███████, SO YOU CAN'T GO

12  BACK IN TIME.

13          AND I THINK THAT REALLY CRYSTALIZES THE ENTIRETY OF THE

14  DISPUTE ON THE CLASS CERTIFICATION SIDE, BECAUSE THE NINTH

15  CIRCUIT HAS BEEN VERY CLEAR IN BRISENO THAT CLASS MEMBERS CAN

16  SELF-IDENTIFY.  THEY CAN COME FORWARD AND PUT IN A CLAIM FORM

17  UNDER OATH AND SAY, I WAS THE PERSON BROWSING INCOGNITO DATA

18  DURING THIS TIME PERIOD.

19          IF GOOGLE HAD PRESERVED THE DATA THAT THEY ONCE POSSESSED

20  AND IF THEY HAD PRESERVED THE ENCRYPTION KEYS, WHICH THEY

21  ROTATE ON A ███████ BASIS, AND IF THEY HAD CEASED ALTERING

22  I.P. ADDRESSES IN THE COURSE OF THIS LITIGATION, THEN WHEN A

23  HUMAN BEING CAME FORWARD AND SAID, I'M THE PERSON WHO WAS

24  BROWSING INCOGNITO ON SUCH AND SUCH DATE, GOOGLE AT THAT POINT

25  MAY HAVE BEEN ABLE, WITH THE DATA THEY HAD, TO SAY --
```

```
 1            THE COURT:  I APPRECIATE THAT.  I APPRECIATE THAT,
 2    MS. BONN.  BUT THAT WOULD BE AN ARGUMENT EITHER FOR CLASS CERT,
 3    OR IF YOU WERE TO GET TO THE CLAIMS PROCESS AND WHAT WILL AND
 4    WILL NOT WORK.
 5            MS. BONN:  AND I THINK I SAY THAT -- I AGREE WITH
 6    THAT, YOUR HONOR.
 7        BUT I THINK THE QUESTION ON PRESERVATION IS, TO WHAT END?
 8        AND OUR POINT IS A SAMPLED PRESERVATION APPROACH DOESN'T
 9    ADDRESS THAT ISSUE BECAUSE IT CAN'T BE USED FOR THAT PURPOSE.
10    IT MAYBE COULD BE USED FOR SOMETHING ELSE.
11            THE COURT:  OKAY.  BUT THAT'S GOING TO BE GOOGLE'S
12    PROBLEM.  I MEAN, YOU WILL MAKE THAT ARGUMENT AT THE
13    APPROPRIATE TIME AND GOOGLE WILL HAVE TO LIVE WITH IT.
14            MS. BONN:  AND I'D LIKE TO ALLOW MR. MAO TO MAKE A
15    BRIEF POINT IF THAT'S OKAY.
16            THE COURT:  VERY BRIEFLY, YES.
17        MR. MAO.
18            MR. MAO:  VERY BRIEFLY, YES, YOUR HONOR.
19        WE CATEGORICALLY DISAGREE WITH MS. TREBICKA'S,
20    RESPECTFULLY, HER ARGUMENTS ABOUT THE ABILITY TO IDENTIFY --
21            THE COURT:  OH, I UNDERSTAND.  I GET IT.  HOTLY
22    CONTESTED.  I GET IT.
23            MR. MAO:  RIGHT.
24        AND SHE ONLY COVERED ONE METHOD.  SHE COMPLETELY DID NOT
25    ADDRESS THE OTHER METHODS BY WHICH THERE APPEARS TO BE NO
```

```
 1        DISPUTE BY GOOGLE THAT USERS ARE ACTUALLY LOGGING IN WITH THEIR

 2        ID'S OR THEY'RE BEING TRACKED BY THEIR SPECIFIC CHROME

 3        INSTALLATIONS ON THEIR DEVICES.

 4             SO I THINK THIS ISSUE SAYING THAT PLAINTIFFS CAN IDENTIFY,

 5        THAT ILLUSTRATES THE PROBLEM, YOUR HONOR, WHICH IS THAT IF

 6        THEY'RE GOING TO MAKE THE ARGUMENT THAT IDENTIFIABILITY IS SOME

 7        REQUIREMENT, EVEN THOUGH IT'S NONEXISTENT IN THE NINTH CIRCUIT,

 8        AT LEAST THE WAY IN WHICH THEY'RE PHRASING IT, WE SHOULD BE

 9        ALLOWED TO TEST THAT AND GET DOCUMENTS AND DISCOVERY ON THAT AS

10        OPPOSED TO RELYING ON GOOGLE'S SAY SO.

11             THE COURT:  OKAY.  WELL, DISCOVERY IS LONG DONE.

12        WE'VE MADE THOSE DECISIONS AND WE'VE MOVED ON.

13             AND WE'RE TALKING ABOUT PRESERVATION.

14             MR. MAO:  RIGHT.  BUT THAT IS PART OF WHAT WE'RE

15        TALKING ABOUT, RIGHT, YOUR HONOR, BECAUSE THIS CASE AND THE

16        BEHAVIOR CONTINUES TO GO FORWARD.

17             WE, YOU KNOW, AS INTERIM CLASS COUNSEL, WE HAVE A DUTY TO

18        ZEALOUSLY ADVOCATE FOR OUR CLIENTS' INTEREST, AND AS YOU'VE

19        HEARD, AS PART OF THIS, GOOGLE DOES NOT DENY THAT THEY TAKE THE

20        INCOGNITO DATA, RIGHT, THEY MONETIZE OFF OF IT, AND THEN AFTER

21        THE USE IS DONE, ██████████      LATER, THEY ██████████████████

22        ████████████████████████████████████████████████████████████

23        ████████████████.

24             THIS IS A -- RESPECTFULLY, YOUR HONOR, THEIR -- GOOGLE

25        NEEDS TO MAKE A CHOICE.  THEY CAN'T HAVE IT BOTH WAYS.
```

```
 1              THE COURT:  OKAY.  I GOT IT.

 2              MR. MAO:  OKAY.  THANK YOU, YOUR HONOR.

 3              THE COURT:  THANK YOU, MR. MAO.

 4         ALL RIGHT.  WE'RE GOING TO TAKE TEN MINUTES.

 5         MR. BRUSH AND MR. SCHMIDT, I WILL MEET YOU ON OUR OTHER

 6    CHANNEL.

 7         EVERYONE MAY TURN OFF YOUR VIDEOS AND STEP AWAY, AND WE

 8    WILL COME BACK FOR THE CALHOUN MATTER.

 9         ALL RIGHT.  THANK YOU.

10         (RECESS FROM 2:24 P.M. UNTIL 2:39 P.M.)

11              THE COURT:  ALL RIGHT.  THANK YOU ALL.

12         STILL ON BROWN, I'VE HAD A MOMENT TO CONFER WITH

13    SPECIAL MASTER BRUSH AND MR. SCHMIDT AND THEY HAVE JUST A

14    COUPLE OF QUESTIONS AS IT RELATES TO BROWN AND SOME OF THE

15    ISSUES THAT WERE RAISED IN THE PAPERS.

16         MR. BRUSH.

17              MR. BRUSH:  YES, HI.  I AM HERE AGAIN FOR TODAY, AND

18     JUST A FEW THINGS THAT ARE FOLLOW-UPS FROM SOME OF THE SLIDES

19     WE JUST HEARD.

20         YOU IDENTIFIED A LOT OF DATA SOURCES, BUT WHAT ARE SOME OF

21    THE DATA SOURCES THAT MIGHT HAVE BEEN LEFT OUT?  THERE WERE A

22    NUMBER THAT WERE PROVIDED IN THE OBJECTIONS, BUT I JUST WANT TO

23    CLARIFY FOR THE RECORD, WHAT ARE THE SPECIFIC DATA SOURCES THAT

24    PLAINTIFFS ARE LOOKING FOR?  AND IF YOU WOULD PRIORITIZE IT,

25    TOO, THAT WOULD BE HELPFUL.  IF YOU HAD TO LOOK AT THE CORPUS
```

1    OF THIS, WHAT ARE SOME OF THE MORE PRIORITY DATA SOURCES?

2         QUESTION 2.  OF THE P LOGS LISTED IN THE PRESERVATION

3    ORDER, HOW CAN WE REALLY HELP YOU IN THE CASE GOING FORWARD AS

4    FAR AS, YOU KNOW, WHAT YOU NEED TO DO AS FAR AS FURTHER STEPS.

5         AND THEN OVERALL ON THE -- YOU KNOW, WE DISCUSSED A █

6    █████ KIND OF THRESHOLD FOR PRESERVATION ORDER AND LOOKING AT

7    SOME OF THE SAMPLING.  IF NOT ██████, IS THERE A REASONABLE

8    PERCENTAGE YOU WOULD FEEL COMFORTABLE WITH SHOULD WE ELECT TO

9    GO THAT ROUTE?

10        AND I'LL LEAVE THAT TO PLAINTIFFS TO START, AND IF WE CAN

11   THEN HEAR FROM THEM.

12        MS. BONN:  I'LL LET MR. MAO ADDRESS QUESTIONS 1 AND

13    2, AND THEN I THINK I CAN ADDRESS QUESTION 3.

14        SO MR. MAO ON THE DATA SOURCES.

15        MR. MAO:  SURE.

16        SPECIAL MASTER BRUSH AND MR. SCHMIDT, GOOD AFTERNOON.

17        SO I THINK ONE, ONE BIG SOURCE THAT WE IDENTIFIED WAS

18   ACTUALLY THE ████████, AND THERE'S THREE DIFFERENT

19   PERMUTATIONS OF ██████, AND THE REASON FOR THAT, THAT WE

20   FLAGGED THAT, WAS BECAUSE IT'S UNCLEAR, GIVEN, YOU KNOW, THE

21   INCONSISTENT KIND OF REPORTING OF WHAT THAT RETENTION PERIOD IS

22   IN BROWN VERSUS IN CALHOUN.  IN BROWN, IT SEEMED LIKE IT WAS

23   GOING TO BE A PERMANENT, BUT THEN I UNDERSTAND THERE MAY BE

24   SOME DIFFERENCES ON THAT.

25        BUT THE REASON WHY WE RAISE THAT IS BECAUSE IN TERMS OF

```
 1      TRYING TO CONSTRUCT A SUPER LOG, ██████████, ADDING IN

 2      SOME OF THE OTHER STUFF -- ADDING IN ONE OR TWO FIELDS FROM

 3      ████████ SEEMS TO BE THE LEAST DISRUPTIVE AND EASIEST WAY TO

 4      CONSTRUCT THE SUPER LOG GIVEN THE AMOUNT OF DATA AND THE WEALTH

 5      OF IDENTIFIERS IN THE ████████.

 6           I THINK THAT'S THE ANSWER TO YOUR QUESTION NUMBER 1,

 7      SPECIAL MASTER BRUSH.

 8                MS. BONN:  I'D ALSO ADDRESS, MR. MAO, THE ENCRYPTION

 9       KEY AND THE MAPPING TOOLS ALSO.

10                THE COURT:  I THINK WE GOT THOSE.

11                MR. MAO:  RIGHT.  SO THE ENCRYPTION KEYS, THE MAPPING

12       AND LINKING TABLES, THAT'S IN THERE.

13           BUT PARTIALLY TO YOUR SECOND QUESTION, WHICH I THINK ALSO

14       FEEDS INTO THE FIRST QUESTION, IS THE IDEA OF P LOGS, RIGHT?

15           MR. FRAWLEY, IF I COULD ASK YOU TO PUT UP SLIDE NUMBER 8

16       JUST AS AN ILLUSTRATION.

17           SO, SPECIAL MASTER BRUSH, I THINK WE'VE COVERED AND TALKED

18       ABOUT HOW WITHIN, WITHIN GOOGLE TAKEOUT, WHICH IS A TYPE -- I

19       WOULD SAY IT'S A PROCESS PRODUCT OUT OF THE P LOGS, I'M NOT

20       SURE WHAT BECAUSE WE HAVEN'T BEEN PROVIDED THE SCHEMAS OR

21       EXACTLY HOW THIS WORKS.

22           BUT YOU CAN SEE IT'S TIED TO GAIA ID'S, IT'S TIED TO LOG

23       INS, AND WHAT WE REALLY WANT OUT OF THE P LOGS IS A COMBINATION

24       OF BASICALLY ID'S, AND THEN THE I.P. ADDRESSES PLUS USER AGENT

25       STRINGS WITH THE TIME STAMPS.
```

```
1          THERE'S PROBABLY A COUPLE OF DIFFERENT WAYS YOU CAN ARRIVE

2     AT THAT, BECAUSE I DON'T BELIEVE THAT THIS, THESE GAIA ID BASED

3     LOGS IS, IS A -- HOW DO I SAY THIS?  I'M GUESSING THIS IS NOT A

4     PROTO LOG IN THE SENSE THAT IT'S A PROCESSING LOG THAT COMES

5     OUT OF SOME LOG, AND WE JUST DON'T KNOW WHAT THAT IS, BECAUSE

6     AS YOU CAN PROBABLY APPRECIATE, GAIA LOGS AND SCHEMA ON THAT

7     WAS NOT PRODUCED BY THE OTHER SIDE UNTIL VERY RECENTLY.

8          DOES THAT ANSWER YOUR QUESTION?

9          BUT THIS IS ANOTHER REASON WHY WE RAISED THIS AS A SOURCE

10    WHICH REQUIRED FURTHER REFINEMENT AND FURTHER THOUGHT.

11          MS. BONN:  AND THEN I THINK I'LL ADDRESS QUESTION 3.

12          AND, MARK, IF YOU WANT TO --

13          THE COURT:  BEFORE YOU MOVE ON TO THAT, MS. BONN,

14    MR. BRUSH, MR. SCHMIDT, DID THAT ANSWER THE QUESTION ON THE

15    P LOGS, THE USE OF THOSE GOING FORWARD?

16          MR. MAO:  YEAH, AND SPECIAL MASTER BRUSH, JUST A

17    LITTLE BIT OF CONTEXT, RECALL THERE WAS A CHALLENGE

18    REGARDING -- FROM GOOGLE SAYING, HOW DO I PROVE THAT THESE I.P.

19    ADDRESSES AND USER AGENT STRINGS BELONG TO ME?

20          AS YOU CAN SEE FROM THE P LOGS, THOSE P LOGS, AT LEAST FOR

21    THOSE PERMUTATIONS -- AND WE CAN SET ASIDE IPV4 ADDRESSES --

22    BUT IPV6 ADDRESSES, FOR THE TIMES THOSE ARE LOGGED, THOSE WILL

23    ABSOLUTELY BE UNIQUE TO ME.

24          AND WE CAN CORRELATE THAT ACROSS ANY OF THE B LOGS.  I

25    UNDERSTAND THAT WE CAN HAVE A DISAGREEMENT OVER THAT, BUT --
```

```
1    AND THIS KIND OF GOES BACK TO THE POINT, WHICH IS THAT IF

2    GOOGLE WANTS TO MAKE THE ARGUMENT, WE THINK THERE SHOULD BE

3    SOME OBLIGATION FOR THEM TO PRESERVE SO THAT THAT CAN BE

4    TESTED, WHICH IS THE REASON WHY WE WERE RAISING THAT FOR THE

5    P LOGS.

6            THE COURT:  SO YOU'RE ON MUTE, MR. BRUSH.  MR. BRUSH,

7     YOU'RE ON MUTE.

8            MR. BRUSH:  IT WOULD HELP IF I GET OFF MUTE.  I'LL

9     TRY AGAIN.

10       SO I JUST WANT TO CLARIFY ONE THING AS WE DISCUSSED, AND

11    I'M NOT GOING TO UNRAVEL THAT TODAY, THE ISSUE OF I.P. ADDRESS

12    IDENTIFICATION.

13       BUT TO CLARIFY THAT WHEN WE TALK ABOUT IPV6, IT'S TIED

14    BACK TO THE DEVICE.

15       AND THEN THERE'S FURTHER CORRELATION THAT NEEDS TO BE DONE

16    TO A SPECIFIC USER OF THAT DEVICE.  BUT LET'S BE ABSOLUTELY

17    CLEAR THAT WHEN WE DISCUSSED THIS, AND THIS IS ON THE RECORD,

18    THAT WHEN WE TALK ABOUT IPV6 ADDRESSES, IT IS CORRELATED TO A

19    SPECIFIC DEVICE, NOT NECESSARILY THE USER, BUT THERE CAN BE

20    OTHER CORRELATION.

21            MR. MAO:  RIGHT.  BUT, I MEAN, SPECIAL MASTER, IN

22     LAWSUITS ALL THE TIME --

23            MR. BRUSH:  I DON'T --

24            THE COURT:  I KNOW.  I'M GOING TO -- I'M GOING TO

25     FORESTALL THAT ARGUMENT, OR SAVE THAT ONE FOR ANOTHER DAY.
```

```
1            I UNDERSTAND THAT THERE'S BEEN A LOT OF DISCUSSION AROUND

2       THE VALUE OF THE IPV6.

3            AND I ALSO WANT TO BE SURE THAT, MR. BRUSH AND

4       MR. SCHMIDT, YOU GOT A COMPLETE RESPONSE TO YOUR INQUIRY AROUND

5       WHAT DATA SOURCES TO ADD.  I HEARD MR. MAO REFER TO THE ████

6       █████, THE LOG, AND THERE'S A COUPLE DIFFERENT PERMUTATIONS

7       OF THAT.

8            MR. MAO:  SO WE LISTED THOSE, YOUR HONOR, IN OUR

9       REPLY.  THERE WERE THREE DIFFERENT ██████████.  THAT'S, YOU

10      KNOW, WHAT WAS TOLD TO US.

11           AND THEN IT WAS MAPPING AND LINKING TABLES AND ENCRYPTION

12      KEYS, WHICH IS ALSO IN OUR PAPERS.

13           AND THEN BASICALLY, YOU KNOW, WHAT LOOKS LIKE THE, THE

14      GOOGLE TAKEOUT DATA, WHICH IS A PART OF SOME GAIA SET OF LOGS

15      IN WHICH WE, YOU KNOW, DON'T QUITE KNOW WHAT THE SOURCE IS, BUT

16      WE DO HAVE THE SPECIFICATION THERE, WHICH IS THE TAKEOUT DATA.

17           MR. BRUSH:  SO JUST FOR CLARIFY, THE THREE LOGS THAT

18      ARE LISTED AT THE TOP OF YOUR STATEMENT, WHAT ARE THEIR NAMES?

19           MR. MAO:  ███████████████.

20      I BELIEVE -- AND THIS IS ONE OF THE REASONS WHY I WAS

21      GOING TO HAVE MR. THOMPSON ON, BUT I WILL TRY.  I BELIEVE THERE

22      IS AN ████████████████████, AND THEN THERE IS THE ██████

23      ████████, AND THEN I THINK THERE'S ONE MORE PERMUTATION OF

24      THE ████████.

25           MR. BRUSH:  OKAY.  THANK YOU.
```

```
1              MR. MAO:  RIGHT.  THAT'S IN OUR RESPONSE TO GOOGLE'S
2       OBJECTIONS, YEAH.  I THINK IT'S         ██████ .
3              MR. BRUSH:  THANK YOU.
4              THE COURT:  AND THEN THE THIRD QUESTION WITH REGARDS
5       TO THE -- AN ALTERNATIVE SAMPLING OF SIZE.
6            MS. BONN, YOU'RE NOT CONCEDING ANYTHING, BUT THE SPECIAL
7       MASTER HAS AN OBJECTIVE QUESTION.  PLEASE.
8              MS. BONN:  UNDERSTOOD.
9            AND I THINK FROM, FROM OUR PERSPECTIVE, AND THEN I'LL
10      ALLOW MR. MAO TO ADD ANYTHING, BUT WHAT WE KNOW IS THAT THE
11      INCOGNITO TRAFFIC FLAGGED WITH THE MAYBE_CHROME_INCOGNITO BIT
12      IS APPROXIMATELY  ██████  OF THE CHROME TRAFFIC.
13           IF  ██████  IS VIEWED AS AN APPROPRIATE THRESHOLD IN
14      TERMS OF BURDEN, YOU KNOW, OBVIOUSLY WHAT WE WOULD LIKE IS THE
15      SPECIFIC  ██████  THAT'S FLAGGED WITH THE INCOGNITO DETECTION
16      BIT RATHER THAN RANDOMLY SAMPLED ENTRIES, WHICH MAY OR MAY NOT
17      EVEN BE INCOGNITO ENTRIES.
18           TO THE EXTENT THAT WE COULD WORK WITH GOOGLE TO BETTER
19      UNDERSTAND WHAT THE ACTUAL BURDEN IS ASSOCIATED WITH LIMITING
20      THE NUMBER OF FIELDS, DEDUPING THE DATA, AND TRYING TO BRING
21      THIS FUNNEL DOWN FROM WHAT SOUNDS LIKE EVERYTHING TO THE
22      SUBSET, I THINK THAT IS WHAT WE WOULD NEED IN ORDER TO
23      DETERMINE WHETHER, YOU KNOW, THERE'S SOME LESSER THRESHOLD.
24           BECAUSE RIGHT NOW -- AND I THINK MS. TREBICKA'S COMMENTS
25      REFLECTED THIS -- SHE, I THINK, SAID WE DON'T KNOW WHAT THE
```

```
 1    BURDEN WOULD BE OF THE SUPER LOG BECAUSE WE'D HAVE TO HAVE MORE

 2    DIALOGUE AND WE DON'T KNOW WHAT THAT WOULD LOOK LIKE AND WHAT

 3    THE FIELDS WOULD BE AND HOW MUCH STORAGE THAT WOULD TAKE.

 4          AND I THINK THAT'S OUR PERSPECTIVE, TOO, THAT THERE'S

 5    SIMPLY NOT RECORD EVIDENCE THAT WOULD SUGGEST THAT PRESERVING

 6    THAT ████████ IS BURDENSOME.

 7          AND IF WE NEED TO HAVE A DISCUSSION ABOUT TRYING TO REDUCE

 8    OR GO AROUND THAT, IT SOUNDS, EVEN FROM GOOGLE'S OWN COMMENTS,

 9    THAT THEY DON'T BELIEVE THEY HAVE PROVIDED THE INFORMATION THAT

10    WOULD BE NEEDED TO MAKE THAT BURDEN ASSESSMENT.

11          AND I'LL LET MR. MAO ADDRESS THAT AS WELL IF HE HAS

12    ANYTHING TO ADD.

13             MR. MAO:  SURE.

14          AND SPECIAL MASTER BRUSH, THIS IS WHY WE MENTIONED THE

15    ████████████████████.  IF YOU LOOK AT THE SCHEMA OF

16    THAT -- WE DON'T HAVE THE FULL SCHEMA.  WE ONLY HAVE THE TOP

17    100 FIELDS.  BUT IF YOU LOOK AT THAT DESCRIPTION, THAT SEEMS TO

18    HAVE THE LARGEST SET OF RAW FIELDS ALREADY, AND AT LEAST THE

19    REPRESENTATION TO US WAS THAT'S ALREADY STORED PERMANENTLY.

20          SO THE IDEA OF THIS SET OF SUPER LOGS THAT THEY WOULD BE

21    ADDING, RIGHT, MERELY ON TO WHAT GOOGLE IS ALREADY STORING WITH

22    A MERE NUMBER OF COUPLE OF FIELDS, AND ESPECIALLY FOR THE

23    INCOGNITO BITS, WHICH WE ALREADY TALKED ABOUT IN ANOTHER

24    HEARING, YOU CAN APPRECIATE THAT THE AMOUNT OF ADAGE FROM THAT

25    IS GOING TO BE RATHER SMALL BECAUSE THESE ARE BITS OF DATA AND
```

```
1    NOT AN ENTIRE X-CLIENT DATA HEADER STRING, WHICH IS WHY WE WERE

2    SUGGESTING THE ███████ AS A WAY TO THINK ABOUT THE SUPER

3    LOGS.

4         NOW, JUST APPRECIATE THAT, YOU KNOW, WE DO HAVE THE UMA,

5    RIGHT, THE UMA DATA SET, WHICH ARE GOING TO BE TIED TO BROWSER

6    INSTANCES.  I THINK THERE'S GOING TO BE WAYS IN WHICH YOU CAN

7    STRIP THAT DOWN AS WELL SO THAT YOU'RE NOT STORING IT IN ITS

8    FULL FORM WITH ALL OF ITS HISTOGRAMS AND USER ACTIONS.

9         AND FOR THE ████████ AS WELL, INSOFAR AS THEY'RE

10   DIFFERENT FROM THE ██████, I THINK YOU CAN ALSO STRIP

11   THAT DOWN SUBSTANTIALLY AS WELL.

12        I THINK THAT'S WHAT WE WERE TALKING ABOUT WITH REGARD TO

13   SUPER LOGS, WHICH WERE PROPOSED BY MR. ANSORGE AS A, I THINK IT

14   WAS A MARCH 15TH EMAIL.

15             THE COURT:  ANYTHING FURTHER, MR. BRUSH, MR. SCHMIDT,

16    FOR PLAINTIFFS?

17             MR. BRUSH:  I DON'T HAVE ANYTHING SPECIFICALLY.

18        I DID SEE HIS HAND GO UP.  I DON'T KNOW IF HE WANTED TO

19    ADDRESS THAT LAST COMMENT FROM MR. MAO.

20             MS. TREBICKA:  YOUR HONOR, WE WOULD LIKE AN

21    OPPORTUNITY --

22             THE COURT:  I UNDERSTAND, MS. TREBICKA.  I'M GETTING

23    TO YOU.

24             MS. TREBICKA:  OKAY.

25             THE COURT:  I WANT TO BE SURE THE SPECIAL MASTER TEAM
```

```
 1    HAS GOTTEN THE INFORMATION THAT THEY NEEDED.

 2              MR. BRUSH:  I THINK SO.  YEAH, I THINK FOR NOW.

 3              MR. SCHMIDT:  NOTHING FURTHER FROM ME.

 4              THE COURT:  ALL RIGHT.  THANK YOU, BOTH.

 5         I APPRECIATE IT.

 6         BRIEF RESPONSE, MS. TREBICKA.

 7              MS. TREBICKA:  YOUR HONOR, MY COLLEAGUE, DR. ANSORGE,

 8    WILL ADDRESS IT.

 9         I WOULD JUST LIKE TO ADDRESS THE LAST QUESTION FIRST,

10    WHICH IS THE ███████.

11         FROM OUR PERSPECTIVE, A PERCENTAGE IS NOT A GOOD STARTING

12    POINT BECAUSE OF THE VOLUME AND THE BURDEN.

13         WE DISAGREE THAT WE DON'T KNOW WHAT THE BURDEN IS.  WE

14    KNOW WHAT THE BURDEN IS.  WE JUST NEED TO KNOW WHAT THE AMOUNT

15    OF DATA IS OR WHAT THE PARTICULAR FIELDS ARE THAT PLAINTIFFS

16    HAVE IN MIND.

17         BUT WE THINK THAT THE SPECIAL MASTER'S PROPOSAL OF 10,000

18    A DAY, FOR EXAMPLE, OR SOME NUMBER, IS THE APPROPRIATE WAY TO

19    FRAME IT INSTEAD OF A PERCENTAGE OF THE LOGS.

20         AND WITH THAT, I'D LIKE TO HAND IT OVER TO DR. ANSORGE.

21              THE COURT:  THANK YOU.

22              MR. ANSORGE:  YES, YOUR HONOR.

23         THE SUPER LOG HAS BEEN ADDRESSED A NUMBER OF TIMES.

24              THE COURT:  YEAH, AND WE DON'T NEED TO ADDRESS THAT.

25    WHAT I'D LIKE TO KNOW IS IF YOU HAVE ANY RESPONSE TO --
```

1    PLAINTIFFS HAVE IDENTIFIED THE, THE ███████, THE SPECIFIC

2    LOGS THAT THEY SAID THEY WOULD LIKE TO HAVE ADDED, AND THEN

3    THEY HAD A DISCUSSION AROUND THE P LOG INFORMATION.

4         IF YOU CAN ADDRESS EITHER OF THOSE POINTS.

5              MR. ANSORGE:  YES, YOUR HONOR.

6    WE'VE AGREED TO ADD THE ██████.  THAT WAS IN OUR

7    PAPERS.  WE'RE HAPPY TO HAVE THAT IN ON A SAMPLED BASIS IF WE

8    WOULD PROCEED.

9         FROM WHAT MR. MAO WAS SAYING, THE DATA THAT HE IS LOOKING

10   FOR, I.P. ADDRESS, USER AGENT, RESPECTFULLY, IF THAT'S THE

11   INFORMATION THAT'S REQUIRED, THEN WE DON'T NEED 20 DIFFERENT

12   P LOGS.  THAT'S QUITE SIMPLE INFORMATION THAT CAN BE PULLED

13   FROM JUST ONE OR TWO DIFFERENT LOGS.

14        AS FOR THE OTHER TWO ██████ SOURCES THAT MR. MAO

15   REFERENCED, THE ███████ AND THE ███████, BOTH

16   OF THOSE WERE DISCLOSED ON SEPTEMBER 17TH PURSUANT TO THE

17   SEPTEMBER 16TH ORDER.  WE'VE PROVIDED INFORMATION ABOUT THEM.

18   WE PRODUCED NUMBERS OF DOCUMENTS RELATED TO THEM.  I COULD

19   RATTLE OFF THE BATES NUMBERS IF YOU WOULD LIKE.  THEY'RE

20   INCLUDED IN THE GOLUEKE DECLARATION.

21        THAT IS ALL TO SAY, YOUR HONOR, THAT WE HAVE GONE THROUGH

22   THE DISCLOSURE PROCESS AND AT THIS STAGE WE WOULD HOPE THAT AT

23   THIS POINT IN THE LITIGATION, PLAINTIFFS HAVE ENOUGH

24   INFORMATION, AND IF NOT, THEN THEY'VE HAD SUFFICIENT

25   OPPORTUNITIES TO --

```
 1              THE COURT:  WELL, AGAIN, THIS ISN'T A DISCOVERY TOOL.

 2    THIS IS A PRESERVATION TOOL, SO THE REQUEST IS THAT DATA IN

 3    THOSE LOGS BE PRESERVED.

 4              MR. ANSORGE:  YES, YOUR HONOR.

 5         AND I WOULD SAY THAT IF THE -- IF THE FIELDS THAT

 6    PLAINTIFFS ARE INTERESTED IN ARE THE ONES THAT MR. MAO IS

 7    LISTING, THEN I DON'T SEE HOW THOSE PARTICULAR SOURCES WOULD

 8    HAVE TO BE DISCLOSED.

 9         I THINK THE ███████████ ITSELF -- OR WOULD HAVE TO BE

10    PRESERVED.  THE ██████████ ITSELF WOULD HAVE TO BE SUFFICIENT

11    FOR THAT.

12              THE COURT:  OKAY.  ALL RIGHT.

13              MR. ANSORGE:  WITH REGARD TO THE SAMPLING, ON █

14    █████, I WOULD JUST ADD THAT REPRESENTATIVE SAMPLES, AS A

15    RULE OF THUMB, WE WOULD TREAT SOMETHING AS REPRESENTATIVE IF

16    IT'S UP TO 1,000, MAYBE 10,000.

17         YOU DON'T USUALLY SAY THAT SOMETHING IS REPRESENTATIVE IF

18    IT'S ████████████████ OF DIFFERENT ENTRIES, AND I THINK

19    JUST WITH THE AMOUNT OF DATA AT ISSUE, WE HAVE TO BEGIN TO ASK

20    OURSELVES WHETHER OUR EXPERTS WILL EVER ACTUALLY BE ABLE TO

21    WORK WITH IT OR IF IT CAN SOMEHOW BE MEANINGFUL IN ANY KIND OF

22    CLAIMS ADMINISTRATION PROCESS.

23              THE COURT:  GOT IT.

24              MR. ANSORGE:  WE'RE TALKING ABOUT BUILDING SERVER

25    CENTERS.
```

```
1              THE COURT:  THANK YOU.  WE'RE NOT GOING TO TAKE

2   ANYTHING FURTHER ON THAT UNLESS MR. BRUSH OR MR. SCHMIDT HAVE

3   ANY FOLLOW-UP QUESTIONS.

4              MR. BRUSH:  NO, YOUR HONOR.

5              THE COURT:  MR. SCHMIDT, ANYTHING FURTHER?

6              MR. SCHMIDT:  NO, YOUR HONOR.

7              THE COURT:  OKAY.  ALL RIGHT.

8          THIS HAS BEEN ENLIGHTENING, AND I GREATLY APPRECIATE THE

9   PARTIES FORMULATING THEIR CONCERNS AND THEIR ISSUES AROUND THE

10  PROPOSED PRESERVATION PLAN TO THE QUESTIONS THAT I HAVE POSED

11  AROUND THE FORMATION OF THE CLASS, LIABILITY AND DAMAGES.  SO

12  THANK YOU FOR BEING RESPONSIVE IN THAT REGARD.

13         AND THERE'S BEEN A LOT OF INFORMATION SET FORTH IN

14  ARGUMENT HERE TODAY, AND OF COURSE IN THE PAPERS, AND WE ARE

15  ALL SPENDING A LOT OF TIME WITH IT.

16         SO WE WILL CONTINUE THAT GOOD WORK, AND IF WE NEED

17  ADDITIONAL INFORMATION OR ADDITIONAL INPUTS, DON'T WORRY,

18  YOU'LL HEAR FROM US.  OKAY?

19         THANK YOU ALL VERY MUCH.  WE'RE GOING TO MOVE TO THE

20  CALHOUN MATTER NOW, CALHOUN.

21         (THE PROCEEDINGS WERE CONCLUDED AT 2:56 P.M.)

22

23

24

25
```

```
 1
 2
 3                    CERTIFICATE OF REPORTER
 4
 5
 6
 7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED
 8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
 9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
10   CERTIFY:
11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12   A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE
13   ABOVE-ENTITLED MATTER.
14
15
16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595
18        DATED:  JUNE 4, 2022
19
20
21
22
23
24
25
```