# Redacted Version of Plaintiffs' Motion for Class Certification

`

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | CASE NO.: 4:20-cv-03664-YGR-SVK <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Date: September 20, 2022 <br> Time: 2:00 p.m. <br> Location: Courtroom 1 – 4th Floor |

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 2

II.  ARGUMENT ................................................................................................... 4

    A.   All Rule 23(a) Requirements Are Satisfied. ....................................................... 4

    B.   Common Issues Predominate Under Rule 23(b)(3). ........................................... 5

        1. California Law Applies to All State Law Claims. ........................................... 5

        2. Common Issues Predominate as to the Breach of Contract Claim. ................ 6

            a)   Google's Form Contract is Common, Classwide Evidence that Google Promised Not to Collect Private Browsing Data. ............... 6

            b)   Google's Documents Are Common, Classwide Evidence Confirming Plaintiffs' Interpretation of the Form Contract ............ 8

            c)   Common Issues Predominate Regarding Google's Conduct ........... 9

        3. Common Issues Predominate for Plaintiffs' Other Claims. ......................... 10

            a)   Invasion Of Privacy and Intrusion Upon Seclusion ....................... 10

            b)   CDAFA ........................................................................................ 11

            c)   Federal Wiretap Act .................................................................... 12

            d)   CIPA ........................................................................................... 12

            e)   UCL ............................................................................................ 13

        4. Common Issues Predominate as to Article III Standing. ............................ 13

        5. Common Issues Predominate Regarding the Relief Plaintiffs Seek. ........... 14

            a)   Common Issues Predominate as to Disgorgement of Profits. ........ 14

            b)   Common Issues Predominate as to Actual Damages. ..................... 15

            c)   Common Issues Predominate as to Punitive Damages. .................. 16

            d)   Common Issues Predominate as to Statutory Damages. ................ 16

            e)   Plaintiffs Present a Method for Distributing Any Monetary Relief in a Post-Trial Claims Process. ......................................................... 17

        6. Common Issues Predominate as to Google's Affirmative Defenses ............. 18

a)   Common Issues Predominate as to Google's Consent Defense.  ... 18

b)   Common Issues Predominate as to Statutes of Limitations. .......... 20

C.   A Class Action Is a Superior Method of Adjudication....................................... 21

D.   Rule 23(b)(2) Certification Is Warranted for Injunctive Relief. ....................... 23

E.   If the Court Does Not Certify Under Rule 23(b)(2) or (b)(3), Certification of
Particular Issues is Appropriate Under Rule 23(c)(4).  ..................................... 24

III.   CONCLUSION  .......................................................................................................... 25

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4
*Ades v. Omni Hotels Mgmt. Corp.*,

5
   2014 WL 4627271 (C.D. Cal. 2014) ...................................................................................13

6
*Amchem Products v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................................................21, 23

7
*In re Apple iPhone Antitrust Litig.*,

8
   2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) (Gonzalez Rogers, J.)....................................24

9
*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) (Gonzalez-Rogers, J.) .................................................18, 21

10

11
*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017)................................................................................................21

12
*Buchanan v. Tata Consultancy Servs., Ltd.*,

13
   2017 WL 6611653 (N.D. Cal. Dec. 27, 2017) ......................................................................21

14
*Buffin v. City & Cty. of San Francisco*,
   2018 WL 1070892 (N.D. Cal. Feb. 26, 2018) (Gonzales Rogers, J.) ....................................21

15

16
*Cappello v. Walmart Inc.*,
   394 F. Supp. 3d 1015 (N.D. Cal. 2019)..................................................................................13

17
*Cell-Crete Corp. v. Lexington Ins. Comp.*,

18
   2014 WL 12601011, (C.D. Cal. July 30, 2014) .....................................................................19

19
*Chavez v. Blue Sky Nat. Beverage*,
   268 F.R.D. 365 (N.D. Cal. 2010) ...........................................................................................13

20

21
*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ...................................................................................................................4

22
*DZ Rsrv. v. Meta Platforms, Inc.*,

23
   2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ........................................................................24

24
*Ellis v. Costco Corp. III*,
   285 F.R.D. 492 (N.D. Cal. 2012) ...........................................................................................16

25

26
*Ellsworth v. U.S. Bank, N.A.*,
   2014 WL 2734953 (N.D. Cal. June 13, 2014)..........................................................................6

27
*In re Facebook Biometric Privacy Litig.*,

28
   326 F.R.D. 535 (N.D. Cal. 2018), *aff'd* 932 F.3d 1264 (9th Cir. 2019)................................12

iii

*In re Facebook, Inc. Internet Tracking*,
  956 F.3d 589 (9th Cir. 2020) ...................................................................10, 11, 14

*Forcellati v. Hyland's, Inc.*,
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ..............................................5, 21, 23

*In re Google Assistant Privacy Litigation*,
  F. Supp. 3d 945 (N.D. Cal. 2021)......................................................................14

*In re Google RTB*,
  No. 4-21-cv-02155-YGR, Dkt. 233 (N.D. Cal. June 13, 2022) ...........................13

*Hale v. State Farm Mutual Auto. Ins. Co.*,
  2016 WL 4992504 (S.D. Ill. Sep. 16, 2016) .......................................................18

*Harris v. comScore, Inc.*,
  292 F.R.D. 579 (N.D. Ill. 2013) ..............................................................11, 12, 18

*In re Carrier IQ*,
  78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015) ......................................................11

*Int'l Brotherhood of Teamsters v. NASA Services, Inc.*,
  957 F.3d 1038 (9th Cir. 2020) ..............................................................................8

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ............................................................................14

*Kamakahi v. Am. Soc'y for Reprod. Med.*
  305 F.R.D. 164 (N.D. Cal. 2015) .......................................................................24

*In re Lidoderm Antitrust Litig.*,
  2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ..................................................4, 22

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014) .......................................................................24

*In re Marriott Customer Data Sec. Breach Litig.*,
  2022 WL 1396522 (D. Md. May 3, 2022) ...........................................................24

*McCrary v. Elations Co., LLC*,
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014)......................................................21

*Meyer v. Bebe Stores, Inc.*,
  2017 WL 558017 (N.D. Cal. Feb. 10, 2017) (Gonzales Rogers, J.) .....................21

*Ms. L. v. U.S. Immigration & Customs Enforcement*,
  330 F.R.D. 284 (S.D. Cal. 2019) ........................................................................23

*Nitsch v. Dreamworks Animation SKG Inc.*,
  315 F.R.D. 270 (N.D. Cal. 2016) .......................................................................20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (*en banc*) ................................................................3, 14, 17, 18

*Opperman v. Path, Inc.*,
  2016 WL 3844326 (N.D. Cal. July 15, 2016) ...........................................................10

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ...................................................................................16

*In re PFA Ins. Mktg. Litig.*,
  2021 WL 5994908 (N.D. Cal. Nov. 3, 2021) (Gonzalez Rogers, J.) ..............................13, 22

*Pulaski & Middleman*,
  802 F.3d 979 (9th Cir. 2015) .....................................................................................14

*Raffin v. Medicredit, Inc.*,
  2017 WL 131745 (C.D. Cal. Jan. 3, 2017) ...........................................................17, 23

*Roley v. Google LLC*,
  2020 WL 8675968 (N.D. Cal. July 20, 2020) ...................................................6, 7, 9

*Romero v. Securus Techs.*,
  331 F.R.D. 391 (S.D. Cal. 2018) ...............................................................................13

*Ruiz Torres v. Mercer Canyons*,
  835 F.3d 1125 (9th Cir. 2016) ...................................................................................17

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005) ...............................................................................4

*Six (6) Mexican Workers v. Az. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ...................................................................................17

*Sussman v. Am. Broadcasting Cos.*,
  186 F.3d 1200 (9th Cir. 1999) ...................................................................................20

*Tebbets v. Fidelity & Cas. Co. of New York*,
  155 Cal. 137 (1909) ..................................................................................................19

*United States ex rel. Terry v. Wasatch Advantage Grp.*,
  327 F.R.D. 395 (E.D. Cal. 2018) ................................................................................6

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) .....................................................................................18

*Trump v. Twitter Inc.*,
  2022 WL 1443233 (N.D. Cal. May 6, 2022) ..............................................................5

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...................................................................................................5

*Ultimate Franchises, Inc. v. Parsons*,
   2018 WL 6016153 (C.D. Cal. June 13, 2018)...................................................19

*United States v. Staves*,
   383 F.3d 977 (9th Cir. 2004) ...........................................................................20

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) .......................................................................17

*Valentine v. NebuAd, Inc.*,
   804 F. Supp. 2d 1022 (N.D. Cal. 2011)...........................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .....................................................................................3, 19

*Ward v. United Airlines, Inc.*,
   2021 WL 534364 (N.D. Cal. Feb. 12, 2021) ...................................................23

*West v. California Servs. Bureau*,
   323 F.R.D. 295 (N.D. Cal. 2017) (Gonzalez Rogers, J.)..................4, 21, 22, 23

*Williams v. Apple, Inc.*,
   338 F.R.D. 629 (N.D. Cal. 2021) ..................................................................6, 19

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) ..............................................................5, 13, 24

*Zaklit v. Nationstar Mortg. LLC*,
   2017 WL 3174901 (C.D. Cal. July 24, 2017) ..................................................17

*Zamora v. Lehman*,
   153 Cal. Rptr. 3d 724 (Ct. App. 2013) ............................................................19

**Statutes**

18 U.S.C. § 1030 ....................................................................................11, 12

18 U.S.C. § 2511 ....................................................................................12, 20

18 U.S.C. § 2520 ....................................................................................14, 16

Cal. Civil Code § 1639 ...................................................................................7

Cal. Penal Code § 502(c)(2) .................................................3, 11, 12, 25

Cal. Penal Code § 631(a) .............................................................................13

Cal. Penal Code § 632(a) .............................................................................13

Cal. Penal Code § 637.2(a) ..........................................................................16

**Other Authorities**

Fed. R. Civ. P. 23(a) ...................................................................................................4, 5

Fed. R. Civ. P. 23(b)(2) .............................................................................................23, 24

Fed. R. Civ. P. 23(b)(3) .............................................................................................. *passim*

Fed. R. Civ. P. 23(c)(4) ...........................................................................................4, 24, 25

Restatement (Second) of Torts § 892A ..........................................................................18

PLEASE TAKE NOTICE that on September 20, 2022, at 2:00 p.m., the undersigned will appear before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California to move the Court, under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), for an order certifying two classes:

Class 1 – All Chrome browser users with a Google account who accessed a non-Google website containing Google tracking or advertising code using such browser and who were (a) in "Incognito mode" on that browser and (b) were not logged into their Google account on that browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present.

Class 2 – All Safari, Edge, and Internet Explorer users with a Google account who accessed a non-Google website containing Google tracking or advertising code using such browser and who were (a) in a "private browsing mode" on that browser and (b) were not logged into their Google account on that browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present.

Plaintiffs seek to certify nationwide classes for Counts I, III, IV, V, VI, and VII of their Complaint (Dkt. 395-2) and California-resident only classes for Count II (CIPA).

Plaintiffs further move for their appointment as class representatives and to appoint David Boies and Mark C. Mao of Boies Schiller Flexner LLP, Bill Carmody of Susman Godfrey LLP, and John A. Yanchunis of Morgan & Morgan as co-lead class counsel.

This motion is based upon this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, and the following materials:

1. Plaintiffs' Trial Plan
2. Declaration of Mark C. Mao and accompanying exhibits
3. Declarations of Amanda Bonn, John Yanchunis, and James Lee
4. Declarations for Each Proposed Class Representative
5. Declaration of Technical Expert Jonathan Hochman, including reports
6. Declaration of Privacy and Technical Expert Bruce Schneier, including reports
7. Declaration of Damages Expert Michael Lasinski, including report
8. Declaration of Survey Expert Mark Keegan, including reports
9. Declaration of Class Administration Expert Steven Weisbrot, including report
10. Declaration of Rebuttal Expert David Nelson, including report

Dated: June 20, 2022

By:  /s/ *Mark Mao*

## I.    INTRODUCTION

"Not truly private." "Effectively a lie." "Broken." And "radioactive."[1] These are the words Google's own executives and employees used internally to describe the "Incognito" private browsing mode offered by Google in its Chrome browser. Since Incognito's launch, and repeatedly throughout the Class Period, Google acknowledged internally that the Incognito "name" is "misleading" and that private browsing users have "common misconceptions" about "how Incognito works" and "private browsing more generally." Ex. 4 at -65; Ex. 5 at -43.

In 2014, Google's then-Executive Chairman Eric Schmidt publicly and falsely stated that in Incognito "no one sees anything about you." Ex. 6. Google employees lamented that if Google's own Chairman did not understand what data Google collects in Incognito, "[n]ormal people have no chance." *Id.* Rather than fix this, in 2016, Google's current CEO Sundar Pichai proposed *expanding* the Incognito brand to *other* products. Google employees tried "to get Sundar to reconsider" and "re-brand Incognito as something more honest and understandable," without success. Ex. 7 at -04. Google instead created a situation where people have a "false sense of security" and "overestimate private mode protections." Ex. 8 at -12; Ex. 9 at -82. Mr. Pichai took steps to avoid putting Incognito "under the spotlight" and directed Google employees to not put things in writing (e.g., "don't discuss more in this thread"). Ex. 10 at -93; Ex. 11 at -77.

Google's form contract with its account holders "promis[ed] that 'private browsing mode' would prevent Google from collecting users' data." Dkt. 363 at 19 (Order Denying Motion to Dismiss). Yet throughout the Class Period, Google earned ██████████ by intercepting and using private browsing communications. Defeated in their efforts to fix what they referred to internally as "The Incognito Problem", Google employees working on user privacy lamented "the 'incognito' war was waged and lost years ago." Ex. 12 at -97, Ex. 4 at -65.

Plaintiffs now seek to certify two classes of Google account holders for whom Google breached its express contractual promise not to collect their private browsing data. By way of the

---

[1] Ex. 1 at -67, Ex. 2 at -26, Ex. 3 at -86. Unless otherwise stated, all exhibits are attached to the Mao Declaration and all pincites are to the Bates number in the lower right of the document. The referenced expert reports (e.g., "Hochman Report") are exhibits to the expert declarations.

same conduct, Google also violated the Federal Wiretap Act and California Invasion of Privacy Act ("CIPA"), violated California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), invaded Class Members' privacy and intruded upon their seclusion in violation of California law, and violated the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL").[2] All seven claims involve common issues regarding Google's promises, conduct, and the resulting harm, all of which can be answered with common, class-wide evidence "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And these "aggregation-enabling, issues" predominate because they are "more prevalent or important" than any "individual issues." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (*en banc*). Plaintiffs seek to certify California-resident only classes for their CIPA claim (Count II) and nationwide classes for their other claims.

As detailed in Plaintiffs' Trial Plan and below, Plaintiffs seek to prove their claims and counter Google's defenses through common proof focused on three core issues:

Google Promised Not to Collect, Save, or Use Private Browsing Data: The Court already held that Google's contract with Class Members is uniform and must be construed "objectively" from "the perspective of a reasonable Google user." Dkt. 363 at 23. After reviewing the terms, the Court held that "[a] reasonable user could read the contract as promising that 'private browsing mode' would prevent Google from collecting users' data." Dkt. 363 at 19, 23. Through discovery, Plaintiffs have substantiated the Court's holding with classwide evidence. *See* Trial Plan Appendix B (including sample exhibit list with internal Google documents); Schneier Report §§ 11-12, ¶¶ 278-283 (discussing Google's form contract and summarizing the representations made within each document); Keegan Rebuttal Report § V (offering opinions as to what a reasonable user would understand based on consumer survey).

Google Collected, Saved, and Used Private Browsing Data: Uniform, classwide evidence also demonstrates that, in breach of its contractual promise and throughout the Class Period, Google collected, saved, and used private browsing data. *E.g.*, Trial Plan § X; Hochman Report

---

[2] See Appendix A to Plaintiffs' Trial Plan, outlining the elements of each cause of action.

1  §§ VIII.A, D, E. Google tracking and advertising code embedded in non-Google websites (e.g.,

2  New York Times) caused users' browsers to copy and send information about their private

3  browsing to Google. As Google readily admits, whether "a user is in private browsing mode does

4  not change the types of data collected" via these Google tracking beacons, which are embedded

5  in ███████ of the most popular websites. Ex. 13 at 5; Ex. 14 at -72.

6        Plaintiffs' Request for Monetary and Other Relief: Relying on internal Google studies,

7  projects, and data, Plaintiffs' damages expert has (1) calculated the aggregate disgorgement and

8  actual damages, (2) provided metrics upon which statutory damages can be calculated, and (3)

9  set forth methods by which aggregate damages can be apportioned among class members.

10  Lasinski Report §§ 7-10. That analysis exceeds all Rule 23(b)(3) requirements.

11        As detailed below, class treatment is warranted under Rule 23(b)(3) and (b)(2), and

12  multiple issues are also particularly well-suited for certification under Rule 23(c)(4).

13  **II.    ARGUMENT**

14        **A.    All Rule 23(a) Requirements Are Satisfied.**

15        Rule 23(a)(1), numerosity. Limited to Google account holders who visited a non-Google

16  website in specific private browsing modes, the classes are defined with "objective criteria" to

17  "allow potential class members to determine whether they are included." *In re Lidoderm Antitrust*

18  *Litig.*, 2017 WL 679367, at * 25 (N.D. Cal. Feb. 21, 2017). And there are ███████ of class

19  members. Lasinski Report ¶¶ 194-95; *see West v. California Servs. Bureau*, 323 F.R.D. 295, 305

20  (N.D. Cal. 2017) (Gonzalez Rogers, J.) ("more than sixty members" satisfies requirement).

21        Rule 23(a)(2), commonality. The same common issues discussed below that establish

22  predominance under Rule 23(b)(3) also establish commonality. *Comcast Corp. v. Behrend*, 569

23  U.S. 27, 34 (2013) (predominance "is even more demanding" than commonality; *West*, 323

24  F.R.D. at 301 (assessing commonality and predominance together and concluding both met).

25        Rule 23(a)(3), typicality. Typicality is a permissive standard and "the focus should be on

26  the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."

27  *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). As detailed in their

28

declarations, each named Plaintiff browsed in Chrome Incognito (Class 1) and one, Ms. Trujillo, also used a non-Chrome private browsing mode (Class 2). For both classes, the "injuries arise from a common wrong" based on Google's broken promises and systematic collection. *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *10 (C.D. Cal. Apr. 9, 2014); Hochman Report § VIII.A (detailing Google's practices); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 593 (N.D. Cal. 2015) (typicality satisfied where class is "subject to the same [e-mail] scanning practices").

Rule 23(a)(4), adequacy. As stated in Counsel's declarations, and as detailed in each of Plaintiffs' individual declarations, Plaintiffs and their counsel are adequate under Rule 23(a)(4).

## B.   Common Issues Predominate Under Rule 23(b)(3).

The Rule 23(b)(3) predominance requirements are also readily met in this case. *See Tyson Foods*, *Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (Rule 23(b)(3) certification is permissible when "one or more of the central issues in the action are common to the class and can be said to predominate . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members").

### 1.   California Law Applies to All State Law Claims.

Google's form contract uniformly provided, throughout the Class Period, that "The laws of California, U.S.A. . . . will apply to any disputes arising out of or relating to these terms." Dkt. 83-16 at 8; Ex. 15. A California choice-of-law clause "generally will be enforced unless the other side can establish that the chosen law is contrary to a fundamental policy of the state law alternative to the contractual choice, and that the other state has a materially greater interest in the determination of the matter." *Trump v. Twitter Inc.*, 2022 WL 1443233, at *8 (N.D. Cal. May 6, 2022). Application of California law is particularly appropriate here because both parties and the Court already relied on California law for the motions to dismiss. Dkts. 82; 113; 164; 363. And "[g]iven that [Google is] headquartered in California, . . . application of California law poses no constitutional concerns." *Forcellati*, 2014 WL 1410264, at *2.

**2.    Common Issues Predominate as to the Breach of Contract Claim.**

**a)    Google's Form Contract is Common, Classwide Evidence that Google Promised Not to Collect Private Browsing Data.**

Whether Google promised not to collect (let alone save or use) private browsing information is answerable with common evidence—Google's form contract. The "objective meaning of a contract is determined by reading the contract 'from the perspective of a reasonable [Google] user.'" Dkt. 363 (order denying MTD) at 23 (quoting *In re Facebook, Inc. Consumer Priv. User Profile*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)). Claims that arise from "form contracts" are "often particularly appropriate for class treatment." 1 Newberg on Class Actions § 3:24 (5th ed.).[3] "[W]hen there is a standardized agreement like the form contract at issue in this case, the agreement is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge of understanding of the standard terms of the writing." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 638 (N.D. Cal. 2021) (cleaned up). "[B]ecause common evidence will inform interpretation of the alleged contract's terms – and because Google's alleged breach turns upon that interpretation – breach is susceptible to common proof." *Roley v. Google LLC,* 2020 WL 8675968, at *8 (N.D. Cal. July 20, 2020), appeal docketed (No. 21-15830). Here, all Class Members have a Google account, which required them to agree to Google's Terms of Service. Dkt. 82 at 4-5 (Google arguing same). The Court also held that the contract includes four other documents: (1) Google's Privacy Policy; (2) Google's "Search & Browse Privately" webpage; (3) Google's Chrome Privacy Notice; and (4) the Splash Screen shown at the beginning of each Incognito session. Dkt. 363 at 13-14, 17.

The Court has twice applied the "reasonable user" standard to Plaintiffs' claims when crediting their interpretation of this form contract—underscoring how the claim turns on classwide evidence. On Google's first motion to dismiss, the Court assessed provisions within all four contract documents and held that "a reasonable internet user could read each of these

---

[3] *See also United States ex rel. Terry v. Wasatch Advantage Grp.*, 327 F.R.D. 395, 416 (E.D. Cal. 2018) (courts "commonly certify classes for breach of contract claims"); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *20 (N.D. Cal. June 13, 2014) (same).

statements as representing that 'private browsing mode' prevents Google from collecting users' data." Dkt. 363 at 21 (summarizing order denying first MTD). Google later moved to dismiss Plaintiffs' breach of contract and UCL claims, including by arguing that when there is a contract, the "intention of the parties is to be ascertained from the writing alone." Dkt. 164 at 6 (quoting Cal. Civil Code § 1639). The Court ruled that "[g]iven the Court's previous conclusion regarding each of these individual statements, a reasonable user, reading Google's contract with Plaintiffs as a whole, could easily conclude that Google promised Plaintiffs that using 'private browsing mode' would prevent Google from collecting Plaintiffs' data." Dkt. 363 at 21. For example, addressing the Privacy Policy and Search & Browse Privately webpage, the Court held "[a] reasonable user could conclude that Google's repeated affirmative assertions that 'private browsing mode' provides internet users with 'privacy' and 'control' were meant to emphasize to users that Google would provide users with the maximum amount of data privacy." *Id.* at 21-22.

The Court also applied an objective "reasonable user" standard when the Court found that a reasonable user could agree with Plaintiffs' interpretation of the Incognito Splash Screen, shown throughout the Class Period every time someone started browsing Incognito. *See* Ex. 16.



While this purported to identify the entities that "might" view private browsing activity, at no point did Google ever mention itself as one of those entities. Ex. 16. "Based on the omission of Google from the list of entities that can see a user's activity, a user might have reasonably

concluded that Google would not see his or her activity." Dkt. 113 at 17. Also, "a reasonable user could have read this sentence ['Now you can browse privately, *and* other people who use this device won't see your activity'] to state that Incognito mode provided privacy from Google and privacy from other people who use the same device." *Id.* at 18.[4]

### b) Google's Documents Are Common, Classwide Evidence Confirming Plaintiffs' Interpretation of the Form Contract.

Classwide evidence confirms Plaintiffs' interpretation of the contract. Google employees admitted internally that users had "common misconceptions" regarding "how Incognito works" and "[t]he same is true for private browsing more generally." Ex. 5 at -43. They acknowledged "common misconceptions about private mode, including that it . . . hides browsing activity from Google." Ex. 9 at -82. Google employees were particularly concerned about the Splash Screen:

"Now You Can Browse Privately":  Common evidence will be used to show Google knew that its statement "Now you can browse privately" would be interpreted (wrongly) to mean private from Google. Google defined "privacy" to include "what you store or don't store with Google," noting the importance of "user control." Ex. 18. Google knew this privacy promise on the Splash Screen was "important" and "comes across as an implicit promise from Google." Ex. 19 at -65. And while Google continues to make this promise in the Splash Screen (it is still being used today), Google employees concurrently advised Mr. Pichai against using the word "private" when describing Incognito lest he "run the risk of exacerbating known misconceptions about protections Incognito mode provides." Ex. 20 at -68.C.

Omission of "Google":  Common evidence confirms that Google recognized that one privacy "threat model" to users was their concern about "Google (the 'data kraken' that knows everything about you)," which was distinct from the separate "threat model" posed by "websites

---

[4] The Splash Screen is relevant for both classes, as the "most important[]" principle of contract interpretation is that the "whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Int'l Brotherhood of Teamsters v. NASA Services, Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020). The Splash Screen's promises about Incognito are relevant to the contract's promises about private browsing more generally. *See also* Ex. 12 at -98; Ex. 17 at 146:15-21 (Google employee who wrote "Incognito Confuses People" testified that this includes "people who use other browsers").

you visit." Ex. 21 at -52. Google considered modifying the Splash Screen, asking: "What responsibility [do] we have to mention Google"? Ex. 22 at -63. They debated disclosing that "Google [is] still collecting information per its services (e.g., 3P services)," Ex. 23 at -10. But less than a year ago, Google decided not to do that "[d]ue to legal constraints." Ex. 24 at -01.R.

<u>"Chrome Won't Save"</u>:  Common evidence confirms that the Splash Screen conveys that Chrome, which is Google's browser, would not "keep" user data about "the sites you interact with/the links you click" by "recording it to a storage location." Ex 25. Consistent with the Court's ruling that "a user might reasonably associate Chrome with Google because Chrome is Google's browser," Dkt. 113 at 18, even Google employees conflated the two, suggesting (incorrectly) that Incognito means that "*Google* doesn't store" browsing data. Ex. 26 at -54.

<u>Incognito Name & Spy Guy Icon</u>: Google's knowledge that its use of the Incognito name and "Spy Guy" icon were misleading and causing common user misconceptions is also proven through classwide evidence, such as Google communications:

- "It's well understood that incognito is misleading…" Ex. 27 at -71.
- "People pay attention to the name 'Incognito' and the Spy Guy icon, and people draw incorrect conclusions from there…." Ex. 28.
- Incognito is "effectively a lie." Ex. 2.

Google conducted study after study showing that users were misled, but proposals to change the Incognito branding were rejected, including by Google's CEO. Ex. 29.

<div align="center">

c)      **Common Issues Predominate Regarding Google's Conduct.**

</div>

That Google collected, stored, and used private browsing information is also proven with common evidence. Plaintiffs will present common proof of Google's conduct, including Google documents and data, as well as fact and expert testimony. *See* Trial Plan § X. For example, Plaintiffs' expert Mr. Hochman analyzed the functionality of each private browsing mode at issue (in Chrome, Safari, Edge, and Internet Explorer) and "confirmed that Google throughout the Class Period collected personal information . . . from intercepted private browsing communications using the Google tracking beacons." Hochman Report ¶¶ 95, 99. Mr. Hochman's analysis is consistent with Google's admission that whether "a user is in private browsing mode does not change the types of data collected" by Google's tracking beacons. Ex.

<div align="center">9</div>

13. Google employees have recognized (internally, not publicly) that Google might be "making privacy worse by collecting Incognito when the user has clearly told Chrome that it wants to be private" and thereby not "actually deliver[ing] on the promise of being private." Ex. 30 at -21.

### 3.    Common Issues Predominate for Plaintiffs' Other Claims.

Each of Plaintiffs' claims turns on Google's uniform promise that private browsing mode would prevent Google from collecting Class Members' data. *See, e.g.*, Dkt. 82 at 4-5 (Google moving to dismiss all claims on ground that the contract disclosed the challenged conduct).

### a)    Invasion Of Privacy and Intrusion Upon Seclusion

"Because of the similarity of the tests, courts consider the[se] claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." Dkt. 113 at 34 (quoting *In re Facebook, Inc. Internet Tracking*, 956 F.3d 589, 601 (9th Cir. 2020). For the first element, "the relevant question [] is whether a user would reasonably expect that [Google] would have access to" private browsing data. *Id.* at 34 (quoting *Facebook*, 956 F.3d at 602). That reasonable expectation is based on a reasonable user standard. Dkt. 113 at 34 ("plaintiff must have had an objectively reasonable expectation of seclusion"); *see also Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (rejecting defendant's argument that "an individual inquiry will be required into the subjective expectations of each class member" and certifying class for intrusion upon seclusion claim). Plaintiffs will substantiate their expectation of privacy with the same common proof that substantiates their contract claim—evidence showing that "[Google] set an expectation that [private browsing] data would not be collected, but then collected it anyway." *Facebook*, 956 F.3d at 602 (plaintiffs stated intrusion upon seclusion claim based on Facebook's privacy policies).

The highly offensive inquiry is also subject to common proof. The test is whether the conduct is "highly offensive to a reasonable person," with a "focus[] on the degree to which the intrusion is unacceptable as a matter of public policy." *Facebook Tracking*, 956 F.3d at 606. In *Facebook Tracking*, the Ninth Circuit held that plaintiffs alleged highly offensive conduct based on their "allegations of surreptitious data collection," relying on "internal Facebook

communications reveal[ing] that the company's own officials recognized these practices as a problematic privacy issue." *Id.* at 606. The same evidence exists here, with Google employees admitting that ==Google's conduct was "misleading" and that Incognito is "effectively a lie"—creating "common misconceptions" regarding Google's collection of private browsing data. Ex. 4 at -65; Ex. 2; Ex. 5 at -43. The "war" waged internally at Google (and lost) to rebrand Incognito as something "honest" is common evidence core to these claims.== Ex. 4 at -65, Ex. 7 at -04.

### b)   CDAFA

The CDAFA makes it a "public offense" to "[k]nowingly access[] and without permission take[], cop[y], or make[] use of any data from a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2). Similar to the software at issue in *In re Carrier IQ*, Google's tracking beacons "transmitted data without notice and without providing an opportunity to opt out of its functionality"—thus rendering ineffective Plaintiffs' efforts to browse privately. Dkt. 113 at 33 (citing 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015)). Mr. Hochman will testify that, as applied to all Class Members, "Google tracking beacons throughout the Class Period had a common functionality in terms of Google's interception and data collection, not limited to the Analytics and Ad Manager codes." Hochman Report ¶ 84. Google also "makes use of [the] data" after collecting it, Cal. Penal Code § 502(c)(2)—thus independently violating the CDAFA in ways subject to common proof, including internal Google documents and expert testimony that explain how Google uses private browsing data to ==develop profiles, serve ads, and track conversions.== Hochman Report § VIII.E.

That Plaintiffs' claims arise from a "form contract" counsels in favor of certifying the CDAFA claim too. For example, in *Harris v. comScore, Inc.*, the court certified a claim under the federal analog for the CDAFA—the Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030, reasoning that "a variety of common questions . . . can be resolved on a classwide basis," including "the scope of the consent the plaintiffs granted to" the defendant since "each Class

1  Member agreed to a form contract." 292 F.R.D. 579, 585 (N.D. Ill. 2013). The same is true here.[5]

2  <center>**c)      Federal Wiretap Act**</center>

3       The federal Wiretap Act proscribes attempted and actual interceptions. 18 U.S.C. §§

4  2511(1)(a)–(d). Any attempt or actual use of that illegally acquired data is equally unlawful. *Id.*

5  Here, Plaintiffs will prove with common evidence that Google uniformly attempted to and

6  actually intercepted private browsing communications between Class Members and non-Google

7  websites. *See* Hochman Report § VIII.A; *see, e.g.*, *In re Facebook Biometric Privacy Litig.*, 326

8  F.R.D. 535, 545 (N.D. Cal. 2018) (certifying class where claim "poses common legal and factual

9  questions, namely: did Facebook's facial recognition technology harvest biometric identifiers as

10  contemplated under [the] BIPA [statute], and if so, did Facebook give users prior notice of these

11  practices and obtain their consent."), *aff'd* 932 F.3d 1264 (9th Cir. 2019). As in *Facebook*

12  *Biometric*, common evidence will resolve whether Google's interception of private browsing

13  communications meets the Wiretap Act's elements, and whether Google "g[a]ve users prior

14  notice of these practices and obtain[ed] their consent" within the parties' form contract. *Id.*; *see*

15  *also Harris*, 292 F.R.D. at 585 (certifying federal Wiretap Act claim where "each Class member

16  agreed to a form contract," reasoning: "claims arising from interpretations of a form contract

17  appear to present the classic case for treatment as a class action").

18  <center>**d)      CIPA**</center>

19       As with the Federal Wiretap claim, common issues and proof predominate under CIPA.

20  Plaintiffs assert claims under sections 631 and 632 of CIPA. "Section 631 prohibits the

21  unauthorized interception of 'any message, report or communication.'" Dkt. 113 at 29 (quoting

22

---

23  [5] Plaintiffs properly seek to represent nationwide classes to assert this claim. The CDAFA

24  "expressly allow[s] an action to be brought by . . . an 'owner or lessee' without imposing any
   residency requirements." *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal.

25  2011). "To conclude otherwise would mean the California Legislature intended to allow
   California residents to violate the [CDAFA] with impunity with respect to out-of-state

26  individuals and entities, a result this Court declines to reach." *Id.* Though not required, Plaintiffs
   can also show that "Google designed its systems to provide its California-based employees with

27  access to private browsing information collected nationwide, and Google employees routinely
   access that information in California." Hochman Report § VIII.G.

28

<center>12</center>

<center>Plaintiffs' Motion for Class Certification 4:20-cv-03664-YGR-SVK</center>

Cal. Penal Code § 631(a)). "Section 632 prohibits the interception of any 'confidential communication.'" *Id.* (citing § 632(a)). Attempts to intercept and use of intercepted communications are equally forbidden under § 631(a). Throughout the Class Period, Google uniformly attempted to intercept and actually intercepted Class Members' private browsing information, in violation of the representations made in their form contract. This supports certification. *See Ades v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *15 (C.D. Cal. 2014) (certifying CIPA claim based on allegations that defendant recorded class members' phone calls without consent); *Romero v. Securus Techs.*, 331 F.R.D. 391, 415 (S.D. Cal. 2018) (same); *Yahoo Mail*, 308 F.R.D. at 591 (whether the technical process by which "Yahoo intercepts emails" satisfies CIPA is a "common contention that is capable of classwide resolution"). Consistent with this Court's guidance, *see In re Google RTB*, No. 4-21-cv-02155-YGR, Dkt. 233 at 17 (June 13, 2022), Plaintiffs seek to certify California-resident only classes for their CIPA claim, represented by Plaintiffs Brown, Castillo, and Trujillo. *See* Brown, Castillo, Trujillo Decls.

### e)   UCL

The UCL proscribes "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1018 (N.D. Cal. 2019) (citing Cal. Bus. & Prof. Code § 17200). Here, Plaintiffs only advance claims under the unlawful and unfair prongs. "By proscribing any unlawful business act or practice, the UCL borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Id.* at 1023. Plaintiffs' UCL claim therefore turns on the same common evidence underlying Plaintiffs' other claims. *See In re PFA Ins. Mktg. Litig.*, 2021 WL 5994908, at *17 (N.D. Cal. Nov. 3, 2021) (Gonzalez Rogers, J.) (certifying claims under the UCL's unlawful and unfair prongs where the predicate claim turned on common evidence); *Chavez v. Blue Sky Nat. Beverage*, 268 F.R.D. 365, 380 (N.D. Cal. 2010) (certifying nationwide UCL class).

### 4.   Common Issues Predominate as to Article III Standing.

The classwide proof of Google's liability also proves Article III standing, because each violation is "an invasion of" each class member's privacy, which is "a legally protected interest

that is concrete and particularized." *Facebook Tracking Litig.*, 956 F.3d at 598-600 (finding standing based on same claims). Classwide proof shows that Google's violations "allow it to amass a great degree of personalized information" about class members,[6] which harms their "interest in controlling their personal information"—an Article III injury. *Id.* Moreover, each class member has a "stake" in their unjust enrichment damages, which is another "legal interest" that confers standing. *Id.*; *see infra* Section II.B.5 (classwide proof of disgorgement damages).

### 5. Common Issues Predominate Regarding the Relief Plaintiffs Seek.

The forms of monetary relief that Plaintiffs request are all "'capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast*, 569 U.S. at 34-35). Plaintiffs' approach is consistent with the Ninth Circuit decision in *Olean Wholesale*, affirming certification under Rule 23(b)(3). *See* 31 F.4th at 667-85; *Pulaski & Middleman*, 802 F.3d 979, 986 (9th Cir. 2015) (reaffirming that "'damage calculations alone cannot defeat certification'" (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010))).

### a) Common Issues Predominate as to Disgorgement of Profits.

"California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Facebook Internet Tracking*, 956 F.3d at 600. In *In re Google Assistant Privacy Litigation*, the court applied that holding to conclude that the plaintiffs pled entitlement to nonrestitutionary disgorgement for breach of contract by alleging that their "unlawfully-obtained private conversations have financial value, in that they enabled Google to improve the functionality of the Google Assistant and to better target advertisements to Google users, thereby increasing Google's revenues." 546 F. Supp. 3d 945, 968 (N.D. Cal. 2021); *see also* 18 U.S.C § 2520(c)(2)(A) (federal Wiretap Act authorizing damages for "any profits made by the violator as a result of the violation").

---

[6] *E.g.*, Schneir Opening Report ¶¶ 28-43, 214-30, 309-65 (Google invades every class member's privacy); Schneir Rebuttal Report ¶¶ 13-53 (Google can link collected data to class members).

1  Disgorgement is a common issue subject to common proof. Plaintiffs' damages expert

2  Mr. Lasinski calculated classwide disgorgement based on Google's own internal financial

3  projections. In 2020, shortly before this lawsuit was filed, Google began considering blocking

4  "third-party cookies" (one of Google's tracking methods) by default in Chrome's Incognito

5  mode. Google's extensive financial modeling (project ██████) demonstrated that

6  modifying just this one form of tracking would reduce Google's advertising revenues by

7  approximately █████ in 2021—a "lower bound" projection. Ex. 31 at -07. Mr. Lasinski

8  used Google's internal model for his classwide disgorgement model, which quantifies the

9  revenue Google earned by collecting and using private browsing information. Lasinski Report §

10  7. Mr. Lasinski concluded that, over the Class Period through the end of 2021, Google was

11  unjustly enriched by ████ from its misappropriation of private browsing information,

12  including ████ for Incognito mode (Class 1). Lasinski Report ¶ 136, Schedule 1.1.

13  **b)   Common Issues Predominate as to Actual Damages.**

14  Actual damages, including restitution, can also be calculated on a classwide basis using

15  common evidence, including Google's own internal documents describing the Ipsos Screenwise

16  Panel program. Mr. Lasinski calculated classwide actual damages based on the value of Class

17  Members' data that Google unlawfully collected. As with unjust enrichment, Mr. Lasinski used

18  an internal Google project as the basis for his model. Google has used an "Ipsos Screenwise

19  Panel" for consumer research studies, where Google has paid people to allow Google to track *all*

20  activity on a device and relinquish any notion of online privacy. Lasinski Report ¶ 146. Google's

21  payments to study participants could exceed $16 per month. *Id.* ¶ 147. Mr. Lasinski selected the

22  minimum recurring payment to participants for a single device ($3 per month) as a conservative

23  indicator of the monthly payment necessary for a reasonable user to knowingly relinquish online

24  privacy even in private browsing mode. *Id.* ¶ 165. Mr. Lasinski then used internal Google data

25  to quantify the number of unique monthly private browsing instances during each month of the

26  Class Period through 2021 for Class Members. *Id.* ¶ 166. Multiplying those figures by $3 per

27  month, Mr. Lasinski calculated █████ as the aggregate lost value of Class Members'

28

private browsing data, including ██████████ for the Incognito class. *Id.* ¶ 184.

### c)      Common Issues Predominate as to Punitive Damages.

Because "the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, . . . the focus of a punitive damages claim is not on facts unique to each class member, but on the defendant's conduct toward the class as a whole." *Ellis v. Costco Corp. III*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012) (certifying Rule 23(b)(3) class including claim for punitive damages). Here, Plaintiffs seek to establish that Google acted with the requisite intent on a classwide basis, relying on Google's internal documents cited above and in the Trial Plan.

### d)      Common Issues Predominate as to Statutory Damages.

CIPA provides for a statutory minimum judgment of $5,000 per violation or treble damages, whichever is greater. Cal. Penal Code § 637.2(a). The Federal Wiretap Act also permits recovery of "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation;" or discretionary "statutory damages" of up to $10,000. 18 U.S.C. § 2520(c)(2). Based on common proof, Mr. Lasinski has identified the bases on which the applicable statutory damages rates can be applied, including Google's self-described "ground truth" records for tracking Incognito page-loads. Lasinski Report § 9; Ex. 32 at -22 (describing Google's internal UMA data as the "ground truth" for an Incognito usage analysis).

Such statutory damages calculations are common and certifiable. Because Google violated the privacy rights of ██████████ of Class Members, any statutory damages would admittedly be enormous. But that is not a basis to refuse certification. The Ninth Circuit recently affirmed certification of a Rule 23(b)(3) class challenging Facebook's collection of users' biometric information where the plaintiffs likewise seek statutory damages. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276–77 (9th Cir. 2019). The court rejected Facebook's argument that "the possibility of a large, class-wide statutory damages award" defeats certification, and instead held: "Where neither the statutory language nor legislative history indicates that the legislature intended to place a cap on statutory damages, denying class certification on that basis would subvert legislative intent." *Id.* at 1276. The same is true here. "Despite being aware of the class

action device, the California legislature 'evidently decided that [ ] damages of $5,000 per violation serve CIPA's purposes and are proportional to the harm caused by CIPA violations.'" *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) (alteration in original) In any event, "concerns about excessive damages are better suited to a later stage of litigation." *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017).

### e) Plaintiffs Present a Method for Distributing Any Monetary Relief in a Post-Trial Claims Process.

Where, as here, aggregate damages are "calculable," they "may be all that plaintiffs need to prove." Newberg on Class Actions § 12:2. That is because when "the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members." *Six (6) Mexican Workers*, 904 F.2d 1301, 1307 (9th Cir. 1990). While the "partitioning" of an aggregate damage award "among class members may lead to individual calculations", "those calculations would not impact a defendant's liability for the total amount of damages" and would not defeat class certification. *Ruiz Torres v. Mercer Canyons*, 835 F.3d 1125, 1140-41 (9th Cir. 2016). "Individual damages c[an] be worked out later or in subsequent proceedings." Newberg on Class Actions § 12:2. For instance, the Tenth Circuit approved a post-verdict claims process for distributing an aggregate, classwide judgment of over $1 billion following a jury trial. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014) (defendant has "no interest in the method of distributing the aggregate damages award among class members"), *cited with approval in Olean Wholesale Grocery Coop.*, 31 F.4th at 669; *see also Six (6) Mexican Workers*, 904 F.2d at 1307 ("We hold that the district court properly considered cy pres distribution for the limited purpose of distributing the unclaimed funds.").

Although Ninth Circuit law is clear that Google has no stake in how an aggregate award might be distributed, Plaintiffs have nonetheless proposed a plan to distribute damages in a post-trial claims process. *See* Trial Plan § XI. Plaintiffs' proposed method aligns with those approved by multiple Courts of Appeal. Here, Mr. Lasinski explains how any aggregate award can be allocated, dividing the aggregate award by the total number of <mark>unique monthly private browsing instances</mark> during the Class Period and then distributing awards to class members as a function of

the number of ==unique monthly private browsing instances== deemed attributable to each Class Member. Lasinski Report § 10. Alternatively, if Google's deletion of relevant data limits such allocation, damages can also be allocated *per capita* based on the number of members within each class. *Id.*; Hochman Report Opinions 20, 24 (addressing Google's deletion of data); *see also, e.g.*, *Hale v. State Farm Mutual Auto. Ins. Co.*, 2016 WL 4992504, at *8 (S.D. Ill. Sep. 16, 2016) (certifying Rule 23(b)(3) class where Plaintiffs proposed to "allocate the [aggregate] damages award on a *per capita* basis"). Plaintiffs' unrebutted class administration expert Steven Weisbrot also explains how "[e]mail notification in this case is straightforward given that the Classes are limited to individuals with Google Accounts." Weisbrot Report ¶ 26.

### 6.     Common Issues Predominate as to Google's Affirmative Defenses.

Google asserts several affirmative defenses, including consent and statute of limitations. Dkt. 531. Courts may certify a Rule 23(b)(3) class "even though other important matters will have to be tried separately, such as. . . some affirmative defenses peculiar to some individual Class members." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018); *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 542 (N.D. Cal. 2015) (Gonzalez-Rogers, J.) (recognizing courts' reluctance to deny class certification due to "affirmative defenses . . . against individual members."). Regardless, Google's affirmative defenses overwhelmingly turn on common evidence.

### a)     Common Issues Predominate as to Google's Consent Defense.

The Classwide Form Contract Resolves the Scope of Each Member's Consent. To the extent Google argues *implied* consent by Class Members, any such argument will be resolved based on Google's classwide form contract. The scope of each class member's consent is limited to the terms of that contract. For example, in *Harris*, the court rejected the defendant's argument that individualized issues relating to subjective knowledge and consent predominated for the federal Wiretap Act claim, reasoning that defendant's argument "has no place where a party manifested consent through the adoption of a form contract." 292 F.R.D. at 585; *see also* Restatement (Second) of Torts § 892A (consent is limited to "particular conduct" and is "not

1   effective" if defendant "exceeds" that scope).

2       <u>Google Agreed to an Explicit Consent Standard on a Classwide Basis.</u> Here, any implied-

3   consent defense is even more misplaced because Google's form contract throughout the entire

4   Class Period expressly waived any implied consent defense, providing: "We will not reduce your

5   rights under this Privacy Policy <u>without your explicit consent</u>." Dkt. 83-1 at 12. Whether Google,

6   a sophisticated party, thereby relinquished any implied consent defense can be resolved "in one

7   stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Under California law, it is well established that

8   when an affirmative defense constitutes a "personal right for the benefit of the individual" (such

9   as, for instance, a statute of limitations defense) it "may be waived" by contract. *Tebbets v.*

10  *Fidelity & Cas. Co. of New York*, 155 Cal. 137, 139 (1909); *see also Zamora v. Lehman*, 153

11  Cal. Rptr. 3d 724, 733-34 (Ct. App. 2013) (noting the "waiver analysis" in *Tebbets* "has

12  withstood the test of time").[7] Google's written agreement to be bound by an explicit consent

13  defense is a common and classwide issue.

14      <u>Classwide Evidence Defeats Implied Consent</u>. Even if Google were permitted to argue

15  implied consent contrary to its written contract, common evidence would defeat it. Google's

16  employees recognized that Google collects private browsing data "without consent." Ex. 33 at -

17  43. None of the news articles identified by Google—which are still "common to the class"

18  (*Williams*, 338 F.R.D. at 639)—disclosed the collection and use at issue here, Schneier Rebuttal

19  ¶¶ 106-07 & App. 2 (summarizing the articles). Nor do any of these articles disclose that Google

20  has since 2017 been tracking and logging Incognito traffic with Google's "is_chrome_incognito"

21  detection bit, a fact that Google even hid from Plaintiffs' counsel until after the close of fact

22  discovery—resulting in discovery sanctions. *See* Dkt. 588-1 ¶¶ 15-21. And even if those articles

23  *did* disclose Google's practices, that still would not mean that anyone reading the article

24  ─────────────

25  [7] That is because a "bedrock principle of contract law in California has always been that
    competent parties should have 'the utmost liberty of contract to arrange their affairs'", so long as
    they do not offend public policy. *Ultimate Franchises, Inc. v. Parsons*, 2018 WL 6016153, at *5

26  (C.D. Cal. June 13, 2018) (citation omitted). When, as here, "an original, written agreement
    contains a provision requiring modification in writing, a subsequent implied agreement"—here,

27  implied consent—"cannot modify or supersede its terms." *Cell-Crete Corp. v. Lexington Ins.*
    *Comp.*, 2014 WL 12601011, at *3 (C.D. Cal. July 30, 2014) (citing California state authority).

28

1  consented to Google's violations, since "foreseeability of monitoring is insufficient to infer

2  consent" to that monitoring. *United States v. Staves*, 383 F.3d 977, *2 (9th Cir. 2004).

3        The Wiretap Act's Exception to Consent Turns on Common Evidence. Finally, with

4  respect to Plaintiffs' federal Wiretap Act claim, Google's consent defense will also be resolved

5  with common, classwide evidence by way of the criminal-or-tortious-purpose exception. Dkt.

6  113 at 20 (applying this exception to Google's conduct and reasoning that it undermines any

7  consent). Under 18 U.S.C. § 2511(d), Google may not invoke a consent defense if "the *purpose*

8  of the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broadcasting*

9  *Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Here, consistent with this Court's motion to dismiss

10  order, there is overwhelming and common evidence that Google acted with a tortious purpose to

11  facilitate a further impropriety, including to (i) build user profiles and personalize ads during

12  private browsing sessions, (ii) measure which ads lead to "conversions" (e.g., user purchases)

13  and (iii) combine private data with other data to feed Google's "conversion" prediction models.

14  Hochman Report § VIII.E; Ex. 35 at 64-67 (30(b)(6) testimony)); Ex. 86 ¶¶ 6-7; Dkt. 113 at 20.

15        **b)**      **Common Issues Predominate as to Statutes of Limitations.**

16        Nor does Google's statute of limitations defense defeat predominance because Plaintiffs

17  assert fraudulent concealment to extend all limitations periods to the entirety of the Class Period.

18  Dkt. 113 at 25 (finding Plaintiffs adequately pleaded fraudulent concealment). Plaintiffs present

19  "substantial common evidence" capable of showing that (1) Google "took affirmative acts to

20  mislead the class and thereby concealed" the conduct; (2) the existing facts would not "excite the

21  inquiry of a reasonable person" so as to give rise to constructive knowledge; and (3) any facts

22  were not "sufficient to trigger [a] duty to diligently investigate." *Nitsch v. Dreamworks*

23  *Animation SKG Inc.*, 315 F.R.D. 270, 310-13 (N.D. Cal. 2016) (certifying Rule 23(b)(3) class

24  where "the record indicates that common issues will predominate as to fraudulent concealment").

25  As in *Dreamworks*, there is "common evidence" on these factors, including internal Google

26  documents showing that Google employees understood Incognito mode to be a "lie" and that

27  Google's branding was "misleading" and yet did nothing to eradicate the "common

28

misconception" that private browsing "hides browsing activity from Google." Ex. 2; Ex. 4 at

-65; Ex. 9 at -82.[8]   And here, Google continued to repeatedly market and remarket its supposed

respect for user privacy throughout the entire Class Period. *See, e.g.*, Schneier Report ¶¶ 366-68.

### C.   A Class Action Is a Superior Method of Adjudication under Rule 23(b)(3).

Under Rule 23(b)(3)'s superiority prong, a class action here will achieve "'economies of

time, effort, and expense'" and promote "'uniformity of decisions as to persons similarly

situated.'" *Amchem Products v. Windsor*, 521 U.S. 591, 615 (1997) (citation omitted). While

Google has harped (incorrectly) on its purported inability to ascertain Class Members, Rule 23

"neither provides nor implies that demonstrating an administratively feasible way to identify

Class members is a prerequisite to class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d

1121, 1133 (9th Cir. 2017); *see also Buffin v. City & Cty. of San Francisco*, 2018 WL 1070892,

at *5 (N.D. Cal. Feb. 26, 2018) (Gonzales Rogers, J.) (rejecting ascertainability argument based

on *Briseno*); *Buchanan v. Tata Consultancy Servs., Ltd.*, 2017 WL 6611653, at *21 (N.D. Cal.

Dec. 27, 2017) (same).

Class Members can self-identify. *See Meyer v. Bebe Stores, Inc.*, 2017 WL 558017, at *3

(N.D. Cal. Feb. 10, 2017) (Gonzales Rogers, J.) (affirming self-identification as a method for

proving class membership).[9]   Here, the classes are defined as people with Google accounts who

visited a non-Google website in Incognito mode (Class 1) or a different private browsing mode

(Class 2)—making it simple for class members to identify themselves. Google is also precluded

---

[8] If needed, the Court could later create subclasses. *Bias*, 312 F.R.D. at 542 (noting if "it becomes clear that an affirmative defense" such as waiver or statute of limitations "is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms, such as placing class members with potentially barred claims in a separate subclass") (certifying Rule 23(b)(3) class).

[9] *See also West*, 323 F.R.D. at 306 (certifying Rule 23(b)(3) class and rejecting defendant's argument that class members "cannot be identified using the [defendant's] records" as "insufficient to defeat superiority"); *Forcellati*, 2014 WL 1410264, at *5 (certifying class notwithstanding defendant's argument that "there are no records that could confirm class membership"); *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) ("In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description" of the class.").

1   from contesting whether any non-Google website contains Google tracking beacons.[10]

2       "Post-judgment claims forms and other tools can be used to allow defendants to test a

3   class member's purported entitlement to damages and to apportion damages appropriately

4   between class members." *Lidoderm*, 2017 WL 679367, at *25 (citing *Briseno*, 844 F.3d at 1131);

5   *West*, 323 F.R.D. at 306 (same). Any concerns about self-certification are especially misplaced

6   since many Google account holders are Class members. *See* Ex. 36 at -22 ("Incognito mode is

7   used by ███ of Chrome users"); Keegan Rebuttal Report Opinion 3 (statistical evidence

8   regarding private browsing users). Still, based on his analysis of the data Google produced

9   through the Special Master process, Mr. Hochman explains that Google's records (to the extent

10  preserved, and to the extent required for this process) can be used to identify class members

11  and/or verify class members' claims. Hochman § VIII.H; Hochman Rebuttal §§ V.A, D, E.

12      Although legally irrelevant, to the extent Google contends that it lacks data to verify self-

13  identified claims, that is a problem of Google's making which this Court already addressed.

14  "Google may not use the fact that only sampled data, not complete data, is available to challenge

15  class certification generally or attestations by individuals that they are members of the class."

16  Dkt. 587 at 7. In addition, through its "discovery misconduct," "Google thwarted Plaintiffs'

17  efforts to fully understand the basis of Google's class identification arguments, so it is now

18  appropriate, based on these failures, to preclude [Google] from introducing further facts or

19  evidence in response to these issues." Dkt. 588-1 at 40. "That identifying the proposed class

20  members could require some effort and time does not mean that a class action is not a superior

21  method of litigating the action, particularly where, as here, the difficulties in identifying class

22  members appear to be largely the result of defendants' failure to maintain adequate records." *In*

23

24  ---

[10] When Google refused to identify all such websites, the Court precluded Google from arguing

25  "that any specific website did not use" such tracking scripts unless it "respond[s] to this
    interrogatory as to that website at least 30 days in advance." Dkt. 288-1 at 1-2. Google failed to

26  do so before discovery closed. Regardless, since internal Google documents show that ███ of
    the most popular websites contain Google Analytics tracking beacons (to say nothing of the other

27  tracking beacons), any user who visited just four non-Google websites would have a ███
    chance of encountering a Google tracking beacon. Hochman Report ¶ 311; Ex. 14 at -72.

28

*re PFA*, 2021 WL 5994908, at *17.[11]

Finally, because Google is already precluded from (1) using the absence of data to challenge a user's membership, and (2) disputing whether any website contains Google tracking beacons, a litany of individual actions would not be superior for Google's defenses. Individuals with Google accounts would still come forward the same way, while Google's defenses would still suffer the same evidentiary bars. But a class action is superior because it is more efficient for the strained courts and most individuals lack the resources to prosecute. Moreover, where, as here, "[d]efendants' liability will be determined in the aggregate, and they will have no claim to any leftover damages, whether any given individual is or is not a rightful class member is entirely immaterial to Defendants' monetary liability in this case." *Forcellati*, 2014 WL 1410264, at *6. Absent this class action, individuals with small damages claims "would be without effective strength to bring their opponents into court at all," *Windsor*, 521 U.S. at 617, particularly in light of Google's "discovery misconduct." Dkt. 588-1 ¶¶ 154-56. Individual actions would only inevitably result in Google retaining a significant portion of its ill-gotten profits.

### D.      Rule 23(b)(2) Certification Is Warranted for Injunctive Relief.[12]

Plaintiffs also seek certification under Rule 23(b)(2) with respect to Plaintiffs' claims for injunctive and declaratory relief. "Rule 23(b)(2) does not require [courts] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Ward v. United Airlines, Inc.*, 2021 WL 534364, at *7 (N.D. Cal. Feb. 12, 2021) (alteration in original)

---

[11] *See* also *Ms. L. v. U.S. Immigration & Customs Enforcement*, 330 F.R.D. 284, 290 (S.D. Cal. 2019) (rejecting defendant's argument that it would be "nearly impossible to ascertain the class with any level of certainty," noting that this argument is invalid "where the difficulty in identifying proposed class members is the result of defendant's own record keeping practices, or lack thereof"); *Raffin*, 2017 WL 131745, at *6 n.5 ("[C]ourts generally do not bar class certification where the defendant's own destruction of records causes difficulty in identifying class members.").

[12] Certifying a damages class under Rule 23(b)(3) does not preclude an injunctive class under Rule 23(b)(2). *See, e.g.*, *West*, 323 F.R.D. at 307 ("District courts may certify both a 23(b)(2) class for the portion of the case concerning injunctive and declaratory relief and a 23(b)(3) class for the portion of the case requesting monetary damages.").

(quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). Plaintiffs seek injunctive relief that would (1) preclude Google from further collecting private browsing information, (2) require Google to delete the private browsing information that it previously collected and is currently storing, (3) require Google to remove any services that were developed or improved with the private browsing information, and (4) the appointment of an independent third-party to verify that the injunctive relief has been implemented. *See* Trial Plan § X.G.

"Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *Yahoo Mail Litig.*, 308 F.R.D. at 598-99 (certifying a Rule 23(b)(2) class seeking injunctive relief requiring Yahoo to stop scanning emails, and explaining that Yahoo's "focus on whether a potential class member has consented to Yahoo's [conduct] loses sight of the purpose of Rule 23(b)(2)"); *see also DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022) (certifying injunctive relief class requiring Meta (f/k/a Facebook) to correct or cease certain practices). Here, Google has continued to uniformly collect private browsing information, including by using data tagged with Google's Incognito detection bits across ■ different logs to perform "analysis and testing" such as "modeling to predict ad revenues." Ex. 86 ¶¶ 6-7; *see also* Trial Plan § X.G. These are common practices that can and should be addressed through injunctive relief.

    **E.**    **If the Court Does Not Certify Under Rule 23(b)(2) or (b)(3), Certification of Particular Issues is Appropriate Under Rule 23(c)(4).**

Even if predominance is not satisfied as to the "entire action," Rule 23(c)(4) permits the Court to "isolate the common issues" and "proceed with class treatment of those particular issues." *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *17 (N.D. Cal. Mar. 29, 2022) (Gonzalez Rogers, J.) ("given the complexities and nuances of the damages issue in the case, class certification as to liability only under Fed. R. Civ. P. 23(c)(4) may be warranted").[13]

---

[13] *See also, e.g., In re Marriott Customer Data Sec. Breach Litig.*, 2022 WL 1396522, at *29 (D. Md. May 3, 2022) (certifying liability issues under Rule 23(c)(4)); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (certifying liability issues class and acknowledging that "[s]ome of the difficulties in determining individual damages may fall away after liability is determined . . . ."); *Kamakahi v. Am. Soc'y for Reprod. Med.* 305 F.R.D. 164, 193 (N.D. Cal. 2015) (certifying liability issues to "achiev[e] judicial economy and efficiency").

If the Court were to find that any claims are ill-suited for (b)(3) and/or (b)(2) certification, or that any damages issues are not amenable to classwide treatment, Plaintiffs respectfully submit there are numerous particular issues appropriate for classwide determination under Rule 23(c)(4). The issues Plaintiffs propose (in the alternative) to certify under Rule 23(c)(4) are key elements of their claims, and include whether:

    a. Google represented that it would not collect, store, or use Class Members' private browsing communications with non-Google websites;

    b. Google did so anyway;

    c. Google's practice of collecting, storing, and/or using private browsing information constitutes a breach of contract, invasion of privacy, intrusion on seclusion, and/or violates CIPA, the CDAFA, the Federal Wiretap Act, and the UCL;

    d. Plaintiffs and Class Members are entitled to declaratory and/or injunctive relief; and

    e. Plaintiffs and Class Members have sustained damages as a result of Google's conduct and if so, what is the appropriate measure of damages.

These key issues can be resolved with common evidence in the form of expert testimony and the documents and data produced in this case. Those documents were produced because of the meticulous attention this Court expended over two years resolving various discovery disputes. No individual user has the resources necessary to acquire the millions of pages of documents that Google produced, analyze those documents, gather further evidence, depose Google's current and former employees, retain liability and damages experts, litigate pre-trial motions, and try the liability component of this case. *See* Bonn Decl. ¶ 4 (summarizing counsel's efforts in this case). Moreover, even if individual cases were brought (without any Rule 23(c)(4) issue certification), the result would be millions of individual actions: a poor and inefficient use of the judiciary's resources. Resolving these key common issues would allow individual users to engage in a fair fight over the "individual issues" that Google has attempted to manufacture.

## III.   CONCLUSION

Plaintiffs respectfully request that the Court certify both classes.

Dated: June 20, 2022

By */s/ Mark Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

1    Beko Reblitz-Richardson (CA Bar No. 238027)
     brichardson@bsfllp.com
2    Erika Nyborg-Burch (CA Bar No. 342125)
     enyborg-burch@bsfllp.com
3    BOIES SCHILLER FLEXNER LLP
     44 Montgomery Street, 41st Floor
4    San Francisco, CA 94104
     Telephone: (415) 293 6858
5    Facsimile (415) 999 9695

6    David Boies (*pro hac vice*)
     dboies@bsfllp.com
7    BOIES SCHILLER FLEXNER LLP
     333 Main Street
8    Armonk, NY 10504
     Tel: (914) 749-8200
9

10   James W. Lee (*pro hac vice*)
     jlee@bsfllp.com
11   Rossana Baeza (*pro hac vice*)
     rbaeza@bsfllp.com
12   BOIES SCHILLER FLEXNER LLP
     100 SE 2nd Street, Suite 2800
13   Miami, FL 33130
     Telephone: (305) 539-8400
14   Facsimile: (305) 539-1304

15   Alison Anderson (CA Bar No. 275334)
     aanderson@bsfllp.com
16   BOIES SCHILLER FLEXNER LLP
     725 S Figueroa Street
17   31st Floor
     Los Angeles, CA 90017
18   Telephone: (213) 995-5720

19   Amanda Bonn (CA Bar No. 270891)
     abonn@susmangodfrey.com
20   SUSMAN GODFREY L.L.P.
     1900 Avenue of the Stars, Suite 1400
21   Los Angeles, CA 90067
     Telephone: (310) 789-3100
22

23   Bill Christopher Carmody (*pro hac vice*)
     bcarmody@susmangodfrey.com
24   Shawn J. Rabin (*pro hac vice*)
     srabin@susmangodfrey.com
25   Steven Shepard (*pro hac vice*)
     sshepard@susmangodfrey.com
26   Alexander P. Frawley (*pro hac vice*)
     afrawley@susmangodfrey.com
27   SUSMAN GODFREY L.L.P.

28

1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*