# Redacted Version of Plaintiffs' Proposed Order

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>                Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br>              Defendant. | CASE NO.: 4:20-cv-03664-YGR<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: September 20, 2022<br>Time: 2:00 p.m.<br>Location: Courtroom 1 – 4th Floor |

Plaintiffs Chasom Brown, William Byatt, Jeremy Davis, Christopher Castillo, and Monique Trujillo ("Plaintiffs") bring this putative class action against Google LLC ("Google") for alleged violations of federal and state laws related to Google's collection, storage, and use of Plaintiffs' browsing activity while they were in certain private browsing modes.

Currently pending before the Court is Plaintiffs' motion for certification of two classes defined, subject to certain exclusions, as:

> Class 1 – All Chrome browser users with a Google account who accessed a non-Google website containing Google tracking or advertising code using a browser and who were (a) in "Incognito mode" on that browser and (b) were not logged into their Google account on that browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present.

> Class 2 – All Safari, Edge, and Internet Explorer users with a Google account who accessed a non-Google website containing Google tracking or advertising code using any such browser and who were (a) in "private browsing mode" on that browser, and (b) were not logged into their Google account on that browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present.

Plaintiffs seek to certify nationwide classes for Counts I, III, IV, V, VI, and VII of their Complaint (Dkt. 395-2) and California-resident only classes for Count II (CIPA).

Plaintiffs' motion also seeks appointment of Plaintiffs as class representatives and appointment of David Boies and Mark C. Mao of Boies Schiller Flexner LLP, Bill Carmody of Susman Godfrey LLP, and John A. Yanchunis of Morgan & Morgan as co-lead class counsel.

Having carefully considered the briefing and the arguments submitted, and for the reasons set forth more fully below, the Court **GRANTS** the motion and relief sought therein.

## I.      BACKGROUND

Plaintiffs allege that Google breached its express contractual promise "that 'private browsing mode' would prevent Google from collecting users' data." Dkt. 363 (Order Denying Mot. to Dismiss) at 19. The same conduct provides the basis for the claims of all members of the

proposed classes ("Class Members") and across the entire period back to June 1, 2016 (the "Class Period"), including Plaintiffs' claims that Google also violated the federal Wiretap Act and its state-law counterpart, the California Invasion of Privacy Act ("CIPA"), violated California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), invaded Class Members' privacy and intruded upon their seclusion in violation of California law, and violated the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL").

As Plaintiffs demonstrate, three core questions underlie each claim:

1. Whether Google promised that using a "private browsing mode" (including Chrome Incognito) would prevent Google from collecting, saving, and/or using their data when browsing non-Google websites;

2. Whether Google collected, saved, and used Class Members' private browsing data; and

3. Whether Google's conduct harmed Class Members, such that monetary relief can be measured on a class-wide basis.

Whether Google promised not to collect, save, or use private browsing data is governed by the contract which must be construed from "the perspective of a reasonable user." Dkt. 363 at 23. "A reasonable user could read the contract as promising that 'private browsing mode' would prevent Google from collecting users' data." Dkt. 363 at 19, 23.

Whether Google collected, saved, and used private browsing data can be determined based on Google's uniform, class-wide practices during the Class Period. Plaintiffs seek to present evidence that Google tracking and advertising code embedded in non-Google websites caused users' browsers to copy and send information about their private browsing to Google's servers, throughout the Class Period. *E.g.*, Expert Report of Jonathan Hochman ("Hochman Report") §§ VIII.A, D, E.[1] Google's interrogatory responses state <mark>whether "a user is in private browsing mode does not change the types of data collected" via these Google tracking beacons.</mark> Ex. 13 at 5.

In connection with these core questions, Plaintiffs seek to present internal documents

---

[1] Unless otherwise stated, all exhibits referenced in this order are attached to the Mao Declaration and all pincites are to the Bates number in the lower right of the document.  The referenced expert reports are attached to the expert declarations.

[Proposed] Order Granting Plaintiffs' Motion for Class Certification 4:20-cv-03664-YGR

1    produced by Google. For example, Plaintiffs seek to present evidence regarding what Google

2    employees wrote "is a gap between our promises about Chrome Incognito mode, their delivery,

3    and user expectations," including the "common misconception[]" that "private mode . . . hides

4    browsing activity from Google." Ex. 41 at -77, Ex. 9 at -82.

5      As to the third question, in addition to other evidence, Plaintiffs seek to present the

6    analysis and testimony of their expert Michael Lasinski, who has (1) calculated the aggregate

7    disgorgement and actual damages, (2) provided metrics upon which statutory damages can be

8    calculated, and (3) set forth methods by which aggregate damages can be apportioned among

9    class members. Expert Report of Michael Lasinski ("Lasinski Report") §§ 7-10. Mr. Lasinski

10    describes how those calculations are based on certain analyses and data produced by Google in

11    this litigation. *Id.*

12 **II.**    **LEGAL FRAMEWORK**

13      Rule 23 contains two sets of requirements plaintiffs must meet before the Court may

14    certify the proposed classes. First, "Rule 23(a) ensures that the named plaintiffs are appropriate

15    representatives of the class whose claims they wish to litigate. The Rule's four requirements—

16    numerosity, commonality, typicality, and adequate representation—effectively limit the class

17    claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v.*

18    *Dukes*, 564 U.S. 338, 349 (2011) (internal quotation marks and citations omitted).

19      "The party moving for certification must then show that the class can be certified based

20    on at least one of the grounds in Rule 23(b)." *In re PFA Ins. Mktg. Litig.*, No. 4:18-CV-03771

21    YGR, 2021 WL 5994908, at \*3 (N.D. Cal. Nov. 3, 2021). "As relevant here, certification under

22    Rule (b)(3) is appropriate only if 'the questions of law or fact common to class members

23    predominate over any questions affecting only individual members' and 'a class action is superior

24    to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting

25    Fed. R. Civ. P. 23(b)(3)). "Certification under Rule 23(b)(2) is appropriate only if 'the party

26    opposing the class has acted or refused to act on grounds that apply generally to the class, so that

27    final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

28

1   whole.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(2)).

2        The party seeking class certification bears the burden of demonstrating by a

3   preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the

4   three bases for certification under Rule 23(b) are established. *See Dukes*, 564 U.S. at 350.

5   **III.   ANALYSIS**

6        **A.   RULE 23(A)**

7        Plaintiffs submit that they have satisfied each of the Rule 23(a) requirements. Plaintiffs

8   assert that (1) each of the classes consist of ▮▮▮▮▮▮▮ of members; (2) virtually all of the

9   questions of law or fact at issue are common to all Class Members; (3) Plaintiffs' claims are

10   typical of the proposed classes; and (4) for purposes of adequacy, Plaintiffs have no conflicts of

11   interest, have a substantial financial stake in the case, have demonstrated their willingness and

12   ability to take an active role in this litigation to protect the interest of the classes, and have

13   retained attorneys with considerable experience in privacy class actions. The record supports a

14   finding that Plaintiffs have met the Rule 23(a) requirements.

15        **1.   Numerosity**

16        The requirement of numerosity is that the class be so numerous that joinder of all

17   members individually would be impracticable. Fed. R. Civ. P. 23(a)(1). This Court has held that

18   "more than sixty members" satisfies the numerosity requirement. *West v. California Servs.*

19   *Bureau*, 323 F.R.D. 295, 305 (N.D. Cal. 2017). Plaintiffs have limited the proposed classes to

20   Google account holders who visited a non-Google website in specific private browsing modes,

21   which is objective criteria that allows "potential class members to determine whether they are

22   included." *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017). ,

23   Based on the analysis of Michael Lasinski, Plaintiffs contend there are ▮▮▮▮▮▮ of class

24   members in both Class 1 and Class 2. Lasinski Report ¶¶ 194-95. In his report, Mr. Lasinski

25   relies on documents and discovery responses from Google to make this conclusion. *Id.* The Court

26   concludes that Plaintiffs have satisfied the numerosity requirement for the proposed classes.

27

28

2.      **Commonality**

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The same common issues discussed below that establish predominance under Rule 23(b)(3) also establish commonality. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (predominance "is even more demanding" than commonality); *West*, 323 F.R.D. at 301 (assessing commonality and predominance together and concluding both met).

Plaintiffs have satisfied the commonality requirement for the proposed nationwide classes. The same is true for Plaintiffs Brown, Castillo, and Trujillo (the "California Plaintiffs") for the California-resident only class they seek to certify for the CIPA claim.

3.      **Typicality**

Typicality is a permissive standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). As detailed in their supporting declarations, each named Plaintiff browsed in Chrome Incognito (Class 1) and one, Ms. Trujillo, also used a non-Chrome private browsing mode (Class 2). For both classes, the "injuries arise from a common wrong" based on Google's broken promises and systematic collection. *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *10 (C.D. Cal. Apr. 9, 2014); Hochman Report § VIII.A (detailing Google's practices). Further, the California Plaintiffs' claims are typical of the California-resident classes they seek to represent, since the California Plaintiffs are California residents who were subjected to the same conduct.

The Court finds that Plaintiffs have satisfied the typicality requirement. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 593 (N.D. Cal. 2015) (typicality satisfied where plaintiffs and class members were "subject to the same [e-mail] scanning practices").

4.      **Adequacy**

Plaintiffs' declarations submitted in support of their motion for class certification satisfy the requirements under Rule 23(a)(4). Plaintiffs have demonstrated they have no conflicts of interest with the classes, and have made significant contributions to this litigation by regularly communicating with their counsel concerning the status of litigation and participating in

6

extensive discovery. *See* Brown Decl. ¶ 13; Byatt Decl. ¶ 12; Castillo Decl. ¶ 14; Davis Decl. ¶ 13; Trujillo Decl. ¶ 14. As demonstrated by the declarations submitted by Plaintiffs' counsel, Plaintiffs' counsel also have no conflicts of interest with the classes. *See* Yanchunis Decl.; Lee Decl.; Bonn Decl. The dedication of Plaintiffs and their counsel to the vigorous prosecution of this matter on behalf of the classes is readily apparent from a review of the Court's docket: Plaintiffs briefed and successfully defeated two motions to dismiss; successfully pursued dozens of discovery disputes; engaged in a Special Master process involving highly technical issues and disputes over more than six months; and briefed and prevailed on sanctions related to highly technical discovery.

Plaintiffs and their counsel are adequate to represent the classes in this case.

## B.     RULE 23(B)(3)

Class certification is appropriate when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied.

### 1.     Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). The "predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)).

### i.      California Law Applies to the State Law Claims

A California choice-of-law clause "generally will be enforced unless the other side can establish that the chosen law is contrary to a fundamental policy of the state law alternative to the contractual choice, and that the other state has a materially greater interest in the determination of the matter." *Trump v. Twitter Inc.*, 2022 WL 1443233, at *8 (N.D. Cal. May 6, 2022). Here, throughout the Class Period, Google's form contract with all Class Members (all of whom were Google account holders) uniformly and unambiguously provided for the application of California law and an explicit user consent standard. From June 1, 2016 to March 30, 2020, Google mandated that "The laws of California, U.S.A., excluding California's conflict of law rules, will apply to any disputes arising out of or relating to [Google's] terms or the Services." *See* Ex. 15. When Google revised its Terms of Service on March 31, 2020, Google still required that "California law will govern all disputes arising out of or relating to [Google's] terms, service-specific additional terms, or any related services, regardless of conflict of law rules." *See id.* Google reinforced the application of California law be also representing in its Privacy Policy that Google "will not reduce your rights under this Privacy Policy without your explicit consent." Dkt. 83-1 at 12.

Additionally, in both of Google's motions to dismiss, Google relied on California law, and the Court applied California law in denying both motions to dismiss. *See* Dkts. 82; 113 at 29–31, 32–33, 33–41; 164; 363 at 14, 19–20, 24–27, 29–30.

Finally, Google is headquartered in California, and application of California law poses no constitutional concerns. *Forcellati*, 2014 WL 1410264, at *2 (applying California law to defendant headquartered in California).

Thus, California law applies to Plaintiffs' state law causes of action.

### ii.      Contract Claim

The objective meaning of a contract is determined by reading the written contract "from the perspective of a reasonable [Google] user." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019). Claims that arise from "form contracts" are "often particularly appropriate for class treatment." 1 Newberg on Class Actions § 3:24 (5th

8

1   ed.).It is an "axion of contract law that when there is a standardized agreement like the form

2   contract at issue in this case, the agreement is interpreted wherever reasonable as treating alike

3   all those similarly situated, without regard to their knowledge of understanding of the standard

4   terms of the writing." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 638 (N.D. Cal. May 28, 2021)

5   (collecting authority); *see also, e.g.*, *Roley v. Google LLC*, 2020 WL 8675968, at *10 (N.D. Cal.

6   July 20, 2020) (certifying contract claim based on receipt of an email from Google and

7   subsequent actions taken by users), appeal docketed (No. 21-15830); *United States ex rel. Terry*

8   *v. Wasatch Advantage Grp.*, 327 F.R.D. 395, 416 (E.D. Cal. 2018) (courts "commonly certify

9   classes for breach of contract claims"); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *20

10  (N.D. Cal. June 13, 2014) (same).

11       Here, to be a member of any of the classes, the person necessarily must have a Google

12  account. *See* Class 1 ("All Chrome browser users *with a Google account* who…"); Class 2 ("All

13  Safari, Edge, and Internet Explorer users *with a Google account* who…") (emphasis added). By

14  having a Google account, the Class Members were uniformly required to agree to Google's

15  Terms of Service. Google has advanced this argument itself throughout this litigation. *See, e.g.*,

16  Dkt. 82 at 4–5. As a matter of law, this Court has already held that Class Members' contract with

17  Google includes four additional documents: (1) Google's Privacy Policy; (2) Google's "Search

18  & Browse Privately" webpage; (3) Google's Chrome Privacy Notice; and (4) the Incognito

19  Splash Screen shown to each member of Class 1 when they began an Incognito browsing session.

20  *See generally*, Dkt. 113; Dkt. 363. During briefing on both motions to dismiss, Google agreed

21  "that the Terms of Service and Chrome Privacy Notice governed, and continues to govern,

22  Google's relationship with Plaintiffs." Dkt. 363 at p.13. Google also has not generally disputed

23  that Google's Privacy Policy and Google's "Search & Browse Privately" page governed

24  Google's relationship with Plaintiffs until March 31, 2020. *Id.*

25       Any interpretation of the written contractual terms is subject to the reasonable person

26  standard and is subject to common proof. *See* Dkt. 363 at 21 (Judge Koh assessing provisions

27  within all four contract documents and holding that "a reasonable internet user could read each

28
                                          9
     [Proposed] Order Granting Plaintiffs' Motion for Class Certification 4:20-cv-03664-YGR

1   of these statements as representing that 'private browsing mode' prevents Google from collecting

2   users' data"). Whether Google disclosed the practices that Plaintiffs complain of can be

3   demonstrated through common proof—both for Plaintiffs' burden in proving the elements of

4   their cause of action and for Google's burden in proving any applicable affirmative defense.

5   Plaintiffs, like all Class Members, were shown the same documents when they signed up for their

6   Google accounts and engaged in a private browsing mode. Particularly, every time someone

7   started browsing Incognito (*i.e.*, for Class 1) they were shown the Incognito Splash Screen:



17   At no time during the Class Period did Google ever appear as an entity that "might" still

18   view private browsing activity. In denying Google's first motion to dismiss, Judge Koh found

19   that as a matter of law "[b]ased on the omission of Google from the list of entities that can see a

20   user's activity, a user might have reasonably concluded that Google would not see his or her

21   activity" (Dkt. 113 at 17) and that "a reasonable user could have read this sentence ['Now you

22   can browse privately, *and* other people who use this device won't see your activity'] to state that

23   Incognito mode provided privacy from Google and privacy from other people who use the same

24   device." *Id.* at 18.

25       Plaintiffs also contend that Google's breach is a common issue. Plaintiffs seek to present

26   evidence regarding Google's conduct throughout the Class Period and as to all Class Members,

27   which Plaintiffs contend was a breach of contract. *See generally*, Hochman Report. The evidence

28

1  Plaintiffs seek to present includes documents produced by Google where Google employees for

2  example wrote Google was "making privacy worse by collecting Incognito when the user has

3  clearly told Chrome that it wants to be private" and thereby not "actually deliver[ing] on the

4  promise of being private," Ex. 30; that with Incognito, Google was "over-promising and under-

5  delivering," Ex. 12; that Incognito is a "promise we don[']t keep," Ex. 37; that Google "also

6  might change the [Incognito] name and functionality to overcome the 'overpromising' issue,"

7  Ex. 39; that Google acknowledged "[r]eneging on the promise that incognito mode doesn't leave

8  traces of your browsing sessions seems bad," Ex. 40; discussing the "gap between our promises

9  about Chrome Incognito mode, their delivery, and user expectations," Ex. 41; and noting the

10 need to "re-think incognito branding and promises." Ex. 38.

11      The Court finds no reason to depart from its prior rulings regarding the contract at issue,

12 and the Court now finds that common issues predominate for the contract claim, satisfying Rule

13 23(b)(3).

14              **iii.    Privacy Claims**

15      Plaintiffs' invasion of privacy and intrusion upon seclusion claims (Counts 4 and 5) are

16 subject to the reasonable person standard, thus making them well suited for class treatment.

17 Intrusion upon seclusion requires that "(1) a defendant intentionally intrude[d] into a place,

18 conversation, or matter as to which the plaintiff had a reasonable expectation of privacy, and (2)

19 the intrusion occurred in a manner highly offensive to a reasonable person." *In re Facebook, Inc.*

20 *Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) ("*Facebook Internet Tracking*")

21 (cleaned up) (citations omitted). An invasion of privacy similarly requires a showing that

22 Plaintiffs "(1) possess a legally protected privacy interest, (2) maintain a reasonable expectation

23 of privacy, and (3) the intrusion is so serious as to constitute an egregious breach of the social

24 norms such that the breach is highly offensive." *Id.* (marks omitted). Because of these similarities,

25 "courts consider the claims together and ask whether: (1) there exists a reasonable expectation of

26 privacy, and (2) the intrusion was highly offensive." *Id.*

27      Whether Class Members have an objectively reasonable expectation of privacy from

28
                                       11

Google's written terms is subject to common proof. "[T]he relevant question [] is whether a user would reasonably expect that [Google] would have access to" that private browsing data. *Facebook Internet Tracking*, 956 F.3d at 602.

Whether Google's conduct is highly offensive is also subject to common proof. The Court must determine whether the complained of conduct is "highly offensive to a reasonable person" focusing on "the degree to which the intrusion is unacceptable as a matter of public policy." *Facebook Internet Tracking*, 956 F.3d at 606. Here, Plaintiffs have obtained through discovery internal communications from employees admitting that Incognito (and Google's conduct) was "misleading," "effectively a lie," and created "common misconceptions" with how Google collected private browsing data. Mao Decl. Exs. 2, 4, and 5.

Therefore, the Court finds that common issues predominate for the privacy claims, satisfying Rule 23(b)(3).

### iv.   CDAFA Claim

The CDAFA makes it a "public offense" to "[k]nowingly access[] and without permission take[], cop[y], or make[] use of any data from a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2). Similar to the software at issue in *In re Carrier IQ*, Google's tracking beacons "transmitted data without notice and without providing an opportunity to opt out of its functionality"—thus rendering ineffective Plaintiffs' efforts to browse privately. Dkt. 113 at 33 (citing 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015)). According to Plaintiffs, Mr. Hochman will testify that, as applied to all Class Members, "Google tracking beacons throughout the Class Period had a common functionality in terms of Google's interception and data collection, not limited to the Analytics and Ad Manager codes." Hochman Report ¶ 84. Plaintiffs also seek to present common evidence regarding how Google also "makes use of [the private browsing] data" after collecting it, Cal. Penal Code § 502(c)(2)—thus independently violating the CDAFA in ways subject to common proof, including internal Google documents and expert testimony that explain how Google uses private browsing data to develop profiles, serve ads, and track conversions. Hochman Report § VIII.E.

1    That Plaintiffs' claims arise from a "form contract" counsels in favor of certifying the

2    CDAFA claim too. For example, in *Harris v. comScore, Inc.*, the court certified a claim under

3    the federal analog for the CDAFA—the Computer Fraud and Abuse Act of 1986, 18 U.S.C. §

4    1030—reasoning that "a variety of common questions . . . can be resolved on a classwide basis,"

5    including "the scope of the consent the plaintiffs granted to" the defendant since "each Class

6    Member agreed to a form contract." 292 F.R.D. 579, 585 (N.D. Ill. 2013). The same is true here.

7    The Court finds that common issues predominate for the CDAFA claim, satisfying Rule 23(b)(3).

8                                **v.    Federal Wiretap Claim**

9    Federal law proscribes both attempts and actual interceptions of illegally wiretapped data.

10   18 U.S.C. §§ 2511(1)(a)–(d). Any attempt or actual use of that data is equally unlawful. *Id*. Here,

11   Plaintiffs have presented common evidence that Google uniformly attempted to and actually

12   intercepted private browsing communications between Class Members and non-Google

13   websites. *See* Hochman Report § VIII.A. Thus, whether the communications have been

14   intercepted is a common question.

15   Plaintiffs have satisfied Rule 23(b)(3) for their federal wiretap claim.

16                                **vi.    CIPA Claim**

17   Plaintiffs seek to certify classes of California residents alleging claims under Cal. Penal

18   Code sections 631 and 632. Section 631 forbids unauthorized access by a third-party to, or use

19   of, a communication sent from or received in California. Cal. Penal Code § 631(a). Section 632

20   forbids recording confidential communications without consent. Cal. Penal Code § 632(a). Under

21   section 631(a) attempt is equally forbidden.

22   Like the federal Wiretap Act claim, proof of these CIPA claims is based on common

23   evidence. Google's conduct and intent can be proven, or disproven, on a classwide basis.

24   Likewise, consent is subject to common proof based on Google's uniform contract: the question

25   of whether the form contract sufficiently divulged and constituted consent to Google's collection,

26   storage, and use of private browsing data is the same for each Class Member and can be answered

27   with common proof.

28

Certification with respect to Plaintiffs' CIPA claims is consistent with *Romero v. Securus Techs.*, where the defendant was recording conversations between inmates and their attorneys and the court found that whether the recording was with notice or permission was a class-wide question answerable by common proof. 331 F.R.D. at 410. Another CIPA class was certified where customers called a company and the calls with representatives were recorded without notice or consent. *Ades v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271 (C.D. Cal. 2014). Thus, whether Google's collection, storage, and use of private browsing data was with notice or permission is a class-wide question that can be answered by common proof.

Plaintiffs have satisfied Rule 23(b)(3) for their CIPA claims.

### vii.   UCL Claim

The UCL proscribes "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1018 (N.D. Cal. 2019) (citing Cal. Bus. & Prof. Code § 17200). Here, Plaintiffs only advance claims under the unlawful and unfair prongs. Dkt. 395-2 ¶¶ 279-282. "By proscribing any unlawful business act or practice, the UCL borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Id.* at 1023. Plaintiffs' UCL claim therefore turns on the same common evidence underlying Plaintiffs' other claims. *See In re PFA Ins. Mktg. Litig.*, 2021 WL 5994908, at *17 (certifying claims under the UCL's unlawful and unfair prongs where the predicate claim turned on common evidence); *Chavez v. Blue Sky Nat. Beverage*, 268 F.R.D. 365, 380 (N.D. Cal. 2010) (certifying nationwide UCL class). Plaintiffs have satisfied Rule 23(b)(3) for their UCL claim.

### viii.   Article III Standing

Whether Google violated Class Members' privacy is subject to common evidence because that privacy as a matter of law is "a legally protected interest that is concrete and particularized" and not subject to individualized inquiries. *Facebook Internet Tracking*, 956 F.3d at 598-600 (affirming existence of Article III standing for claims involving invasion of privacy). Plaintiffs offer evidence from Google documents and Plaintiffs' experts that Google's collection,

storage, and use of private browsing data invades every Class Member's privacy (Expert Report of Bruce Schneier ¶¶ 28-43, 214-30, 309-65) and that Google can link that collected information to Class Members (*id.* ¶¶ 13-53; *see generally*, Hochman Report). Google's collection, storage, and use of Class Members' information (in the form of private browsing data) harms Class Members alike by interfering with their interest in controlling their personal information. *Facebook Internet Tracking*, 956 F.3d at 598-600. Each Class Member also has a "stake" in their unjust enrichment claims, which is another recognized legal interest that confers Article III standing. *Id.*

### ix.   Common Issues Predominate Regarding Relief Sought

The forms of monetary relief that Plaintiffs request are all "'capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast Corp.*, 569 U.S. at 34-35). Courts have generally "permitted plaintiffs to proceed on this basis, so long as the aggregate damage calculation is based on reasonable methodology and the individual damage calculations that follow can be made according to a common methodology." 4 Newberg on Class Actions § 12:2 (5th ed.). Plaintiffs' approach in this case is consistent with the Ninth Circuit decision in *Olean Wholesale*, affirming certification under Rule 23(b)(3), and there are no individual issues that would defeat certification. *See, e.g.*, *Pulaski & Middleman*, 802 F.3d 979, 986 (9th Cir. 2015) ("Damage calculations alone cannot defeat certification.").

Here, Plaintiffs seek disgorgement, actual damages, statutory damages, and punitive damages. Plaintiffs have demonstrated that each of those types of damages can be calculated on a classwide basis.

*First*, Plaintiffs present common proof concerning disgorgement of Google's profits obtained as a result of the alleged illegal conduct. "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Facebook Internet Tracking*, 956 F.3d at 600. Recently, a court

1    found that the plaintiffs sufficiently pled entitlement to non-restitutionary disgorgement of profits

2    where Google unlawfully obtained private conversations that "enabled Google to improve the

3    functionality of the Google Assistant and to better target advertisements to Google users, thereby

4    increasing Google's revenues." *In re Google Asst. Priv. Litig.*, 546 F. Supp. 3d 945, 968 (N.D.

5    Cal.).

6         Plaintiffs' damages expert Mr. Michael Lasinski calculated classwide disgorgement

7    based on Google's own internal financial projections based on Google's extensive financial

8    modeling—a project Google called ▇▇▇▇▇▇ Lasinski Report § 7; *see* Ex. 31.

9    ▇▇▇▇▇▇ measured the impact on Google of blocking third-party cookies (one of Google's

10   tracking methods) by default in Incognito mode. *Id.* Mr. Lasinski determined that Google was

11   unjustly enriched by ▇▇▇▇▇▇ from its misappropriation of private browsing data, which

12   included ▇▇▇▇▇▇ for Incognito mode (Class 1). Lasinski Report ¶ 136, Schedule 1.

13        *Second*, Plaintiffs present common proof concerning actual damages. Google produced

14   internal documents related to its Ipsos Screenwise Panel program, which were analyzed by

15   Plaintiffs' expert Mr. Lasinski and used to calculate classwide actual damages based on the value

16   of class members' data that Google unlawfully collected. To track users' activity, Google paid

17   consumers a minimum of $3 per month and those payments could exceed $16 per month. *Id.* ¶¶

18   146, 147. Mr. Lasinski used the minimum payment ($3 per month) and used common proof in

19   the form of internal Google data to quantify unique monthly private browsing instances during

20   each month of the Class Period through 2021. *Id.* ¶¶ 165-66. Using this common proof, Mr.

21   Lasinski calculated aggregate damages of ▇▇▇▇▇▇ for the lost value of class members'

22   private browsing data, including ▇▇▇▇▇▇ for the Incognito class. *Id.* at ¶ 184.

23        *Third*, Plaintiffs present common proof concerning statutory damages. The federal

24   Wiretap Act allows for the recovery of "the sum of the actual damages suffered by the plaintiff

25   and any profits made by the violator as a result of the violations" or discretionary "statutory

26   damages" up to $10,000. 18 U.S.C. § 2520(c)(2). CIPA allows for the recovery of $5,000 per

27   violation or treble damages. Cal. Penal Code § 637.2(a). Mr. Lasinski has identified, through

28

common proof, Incognito usage data and records for tracking Incognito page-loads. Lasinski Report § 9; Ex. 32 (describing Google's internal UMA data as the "ground truth" for an Incognito usage analysis). "[T]he possibility of a large, class-wide statutory damages award" cannot defeat class certification. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276-77 (9th Cir. 2019). Instead, the Ninth Circuit held that "[w]here neither the statutory language nor legislative history indicates that the legislature intended to place a cap on statutory damages, denying class certification on that basis would subvert legislative intent." *Id.* at 1276. The Court finds there is no reason to deny class certification for the aggregate amount of statutory damages Plaintiffs seek. *See, e.g.*, *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) ($5,000 per violation "is proportional to the harm caused by CIPA violations").

*Fourth*, Plaintiffs present common proof concerning punitive damages. "[T]he purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, . . . the focus of a punitive damages claim is not on facts unique to each class member, but on the defendant's conduct toward the class as a whole." *Ellis v. Costco Corp. III*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012) (certifying Rule 23(b)(3) class including claim for punitive damages).

### x.     Distribution of Damages

Where, as here aggregate damages are "calculable," they "may be all that plaintiffs need to prove." Newberg on Class Actions § 12:2. That is because when "the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members." *Six Mexican Workers*, 904 F.2d 1301, 1307 (9th Cir. 1990). Thus, while the "partitioning" of an aggregate damage award "among class members may lead to individual calculations," those "calculations would not impact a defendant's liability for the total amount of damages" or defeat class certification. *Ruiz Torres*, 835 F.3d at 1140-41. "Individual damages c[an] be worked out later or in subsequent proceedings." Newberg on Class Actions § 12:2.

Plaintiffs have proposed a method of distribution of damages that aligns with those approved by multiple Courts of Appeal. *See, e.g., In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014) (holding that a defendant has "no interest in the method of distributing the

17

[Proposed] Order Granting Plaintiffs' Motion for Class Certification 4:20-cv-03664-YGR

aggregate damages award among class members" and approving a claims process for distributing an aggregate, class-wide judgment of over $1 billion), *cited with approval in Olean Wholesale Grocery Coop.*, 31 F.4th at 669. Mr. Lasinski explains how any aggregate award can be allocated, dividing the aggregate award by the total number of unique monthly private browsing instances during the Class Period and then distributing awards to class members as a function of the number of unique monthly private browsing instances deemed attributable to each Class Member. Lasinski Report § 10. Alternatively, if Google's deletion of relevant data limits such allocation, damages can also be allocated *per capita* based on the number of members within each class. *Id.*; Hochman Report Opinions 20, 24 (addressing Google's deletion of data); *see also, e.g.*, *Hale v. State Farm Mutual Auto. Ins. Co.*, 2016 WL 4992504, at *8 (S.D. Ill. Sep. 16, 2016) (certifying Rule 23(b)(3) class where Plaintiffs proposed to "allocate the [aggregate] damages award on a *per capita* basis"). In addition, Plaintiffs' unrebutted class notice and administration expert explains how "[e]mail notification in this case is straightforward given that the Classes are limited to individuals with Google Accounts," which means that "Google would therefore have email addresses for all or at least some large number of Class Members." Expert Report of Steven Weisbrot ("Weisbrot Report") ¶ 26.

### xi.   Affirmative Defense – Consent

This Court has expressed its reluctance to deny class certification because of affirmative defenses against individual members of a class. *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 542 (N.D. Cal. 2015). Class certification is appropriate even where affirmative defenses may need to be tried separately because they are "peculiar to some individual Class members." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018).

The scope of any consent to Google's collection, storage, and use of private browsing data is subject to common proof: the terms of the form written contract between Class Members and Google. Class certification is not defeated "where a party manifest[s] consent through the adoption of a form contract." *Harris*, 292 F.R.D at 585; *see also* Restatement (Second) of Torts § 892A (consent is limited to "particular conduct" and is "not effective" if defendant "exceeds"

1    the scope of that particular conduct).

2         Google's form contract also counsels on a classwide basis whether Google waived any

3    implied consent defense, wherein Google promised Class Members alike that it "will not reduce

4    your rights under this Privacy Policy without your explicit consent." Dkt. 83-1 at 12; *Dukes*, 564

5    U.S. at 350. Consent defenses can be waived by contract. *Tebbets v. Fideltiy & Cas. Co. of New*

6    *York*, 155 Call. 137, 139 (1909); *Ultimate Franchises, Inc. v. Parsons*, 2018 WL 6016153, at *5

7    (C.D. Cal. June 13, 2018); *Cell-Crete Corp. v. Lexington Ins. Co.*, 2014 WL 12601011, at *3

8    (C.D. Cal. July 30, 2014); *Zamora v. Lehman*, 153 Cal. Rptr. 3d 724, 733-34 (Ct. App. 2013).

9         Consent is also not an available defense to the federal Wiretap Act claim if "the purpose

10   of the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broadcasting*

11   *Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999). There is overwhelming and common evidence that

12   Google acted with a tortious purpose to facilitate further impropriety: Plaintiffs proffer common

13   evidence that Google builds user profiles and personalizes ads during private browsing sessions;

14   Google measures conversions to make more money; and Google combines private data with other

15   data to feed Google's prediction models. Hochman Report § VIII.E; Ex. 35 at 64:23-67:16 (Rule

16   30(b)(6) testimony); Ex. 86 ¶¶ 6-7 (explaining how Google uses data collected with its Incognito

17   detection bits, including for revenue analysis); Dkt. 113 at 20.

18                    **xii.    Affirmative Defense – Statutes of Limitations**

19        Plaintiffs also present common evidence with respect to fraudulent concealment: (1)

20   Google took affirmative acts to mislead the class and thereby conceal its conduct; (2) the existing

21   facts would not excite the inquiry of a reasonable person so as to give rise to constructive

22   knowledge; and (3) any facts were not sufficient to trigger a duty to diligently investigate. *Nitsch*

23   *v. Dreamworks Animation SKG, Inc.*, 315 F.R.D. 270, 310-13 (N.D. Cal. 2016) (Rule 23(b)(3)

24   class certified). For example, Plaintiffs present internal Google documents showing that Google

25   employees understood the misleading nature of Google's representation but did nothing to

26   correct the misconception that private browsing "hides browsing activity from Google." Ex. 2,

27   Ex. 4, Ex. 9. Also, Plaintiffs present common evidence that Google continued to market and

28

1    remarket its respect for user privacy throughout the Class Period. Schneier Report ¶¶ 366-68.

2    Thus, Google's affirmative defense, if applicable, does not defeat class certification.

3           **2.    Superiority**

4           "Rule 23(b)(3) requires a court to consider whether a class action would be a superior

5    method of litigating the claims of the proposed class members by taking into account (A) the

6    class members' interests in individually controlling the prosecution or defense of separate

7    actions; (B) the extent and nature of any litigation concerning the controversy already begun by

8    or against class members; (C) the desirability or undesirability of concentrating the litigation of

9    the claims in the particular forum; and (D) the likely difficulties in managing a class action." *In*

10   *re PFA Ins.*, 2021 WL 5994908, at *22 (citing Fed. R. Civ. P. 23(b)(3)).

11          The Court finds that Plaintiffs have met their burden regarding superiority.

12          Here, a class action is a superior method of litigating the claims of the members of the

13   proposed classes "in light of the great efficiencies and judicial economy that would be achieved

14   by litigating their claims in a single litigation, and in light of the difficulties, financial and

15   otherwise, that could preclude proposed class members from litigating their claims individually."

16   *In re PFA Ins.*, 2021 WL 5994908, at *22.

17          Any argument from Google concerning the identifiability of Class Members is

18   unavailing. This Court has held that ascertainability is not required in the Ninth Circuit.

19   *Buchanan v. Tata Consultancy Servs., Ltd.*, 2017 WL 6611653, at *21 (N.D. Cal. Dec. 27, 2017)

20   (relying on *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), to reject

21   ascertainability argument). Even if the Court were to consider ascertainability, Google is

22   precluded from this challenge because it failed to maintain adequate records. This Court ordered

23   that "Google may not use the fact that only sampled data, not complete data, is available to

24   challenge class certification generally or attestations by individuals that they are members of the

25   class." Dkt. 587 at 7. Google cannot benefit from that conduct. *See, e.g.*, *Tyson Foods, Inc. v.*

26   *Bouaphakeo*, 136 S. Ct. 1036, 1040 (2016) (finding that the ascertainability requirement could

27   be satisfied as "a matter of just and reasonable inference" where gaps in record-keeping exist);

28

*Ms. L. v. U.S. Immigration & Customs Enforcement*, 330 F.R.D. 284, 290 (S.D. Cal. 2019) (rejecting defendant's argument that it would be "nearly impossible to ascertain the class with any level of certainty," as invalid, especially "where the difficulty in identifying proposed class members is the result of defendant's own record keeping practices, or lack thereof."); *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *6 n.5 (C.D. Cal. Jan. 3, 2017) ("courts generally do not bar class certification where the defendant's own destruction of records causes difficulty in identifying class members"). As stated in the Order On Plaintiffs' Motion For Sanctions For Discovery Misconduct, Dkt. 588-1:

> [A]s a result of its discovery misconduct, Google thwarted Plaintiffs' efforts to fully understand the basis of Google's class identification arguments, so it is now "appropriate, based on these failures, to preclude [Google] from introducing further facts or evidence in response to these issues" to the extent necessary to ensure that Google will not impermissibly benefit from evidentiary gaps that it has created by refusing to comply with this Court's discovery orders. *Lanier v. San Joaquin Valley Offs. Ass'n*, 2016 WL 4764669, at *8 (E.D. Cal. Sept. 12, 2016).

Further, Google is precluded from making any arguments whether any non-Google website contains Google tracking beacons since Google failed to respond to this discovery request before the close of discovery. Dkt. 288-1 at 1-2.

Finally, "courts in this circuit have found proposed classes ascertainable even when the only way to determine class membership is with self-identification through affidavits." *In re PFA Ins. Mkting. Litig.*, 2021 WL 5994908, at *22 (N.D. Cal. Nov. 3, 2021) (quoting *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 476 (S.D. Cal. 2015) (citations omitted in original)). This Court has certified self-identification as a method for proving class membership. *Meyer v. Bebe Stores, Inc.*, 2017 WL 558017, at *3 (N.D. Cal. Feb. 10, 2017).

The Court, therefore, finds that the superiority requirement is met. The classes are defined as people with Google accounts who visited a non-Google website in Incognito mode (Class 1) or a different private browsing mode (Class 2)—making it simple for class members to identify themselves. "Post-judgment claims forms and other tools can be used to allow defendants to test a class member's purported entitlement to damages and to apportion damages appropriately

1   between class members." *Lidoderm*, 2017 WL 679367.

2          **C.    RULE 23(B)(2)**

3          Class certification under Rule 23(b)(2) is appropriate when a plaintiff meets all of the

4   perquisites of Rule 23(a) and at least one of the requirements under Rule 23(b). *Briseno*, 844

5   F.3d at 1124. Rule 23(b)(2) permits certification of a class when "the party opposing the class

6   has acted or refused to act on grounds that apply generally to the class, so that final injunctive

7   relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R.

8   Civ. P. 23(b)(2). "Rule 23(b)(2) does not require [courts] to examine the viability or bases of

9   class members' claims for declaratory relief and injunctive relief, but only to look at whether

10  class members seek uniform relief from a practice applicable to all of them." *Ward v. United*

11  *Airlines, Inc.*, 2021 WL 534634, at *7 (N.D. Cal. Feb. 12, 2021) (quoting *Rodriguez v. Hayes*,

12  591 F.3d 1105, 1125 (9th Cir. 2010)).

13         Here, Plaintiffs seek injunctive relief that would (1) preclude Google from further

14  collecting private browsing data, (2) require Google to delete the private browsing data that it

15  previously collected and is currently storing, (3) require Google to remove any services that were

16  developed or improved with the private browsing data, and (4) appoint an independent third-

17  party to verify that the injunctive relief has been implemented.

18         Despite Plaintiffs' pursuit of this litigation, Google's own studies and internal

19  acknowledgments that private browsing is not "truly private" and instead that Incognito mode is

20  "broken" and "effectively a lie" (Ex. 1 at -67, Ex. 2 at -26, Ex. 3 at -86). Google nonetheless

21  continues to collect that private browsing data of ▮▮▮▮▮▮▮ of Americans. Certification for

22  purposes of seeking injunctive relief is appropriate. *See, e.g.*, *Yahoo Mail*, 308 F.R.D. at 599-600

23  (certifying an injunctive relief class prospectively requiring Yahoo to "cease scanning the emails

24  of non-Yahoo Mail subscribers without their consent" and also permanently delete the data

25  collected without consent and identify all individuals and entities that Yahoo sold to or shared

26  the data with); *DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *10 (N.D. Cal. Mar. 29,

27  2022) (certifying an injunctive relief class requiring Meta (f/k/a Facebook) to either correct or

28

1  cease its deceptive business practices).

2      Certification of the injunctive class is **GRANTED**.

3  **IV.    CONCLUSION**

4      Based upon the foregoing, the Court **ORDERS** as follows:

5      The motion for class certification under Rules 23(b)(2) and (b)(3) is **GRANTED** as to

6  Counts I, III, IV, V, VI, and VII for the nationwide Class 1 (*i.e.*, the Chrome Incognito private

7  browsing mode class):

8          All Chrome browser users with a Google account who accessed a
           non-Google website containing Google tracking or advertising code
9          using a browser and who were (a) in "Incognito mode" on that
           browser and (b) were not logged into their Google account on that
10         browser, but whose communications, including identifying
           information and online browsing history, Google nevertheless
11         intercepted, received, or collected from June 1, 2016 through the
           present.
12

13 and the nationwide Class 2 (*i.e.*, the non-Chrome private browsing mode class) defined as:

14         All Safari, Edge, and Internet Explorer users with a Google account
           who accessed a non-Google website containing Google tracking or
15         advertising code using any such browser and who were (a) in
           "private browsing mode" on that browser, and (b) were not logged
16         into their Google account on that browser, but whose
           communications, including identifying information and online
17         browsing history, Google nevertheless intercepted, received, or
           collected from June 1, 2016 through the present
18

19     The Court also certifies California resident classes for Count II (CIPA) consistent with

20 the class definitions for Class 1 and Class 2.

21     The Court finds that the substance of the Notice Plan submitted by Plaintiffs' notice

22 expert Steve Weisbrot is the best notice practicable to the members of the classes, and directs the

23 parties to meet and confer to finalize a notice plan no later than 15 days following the date of this

24 Order.

25     The Court appoints Chasom Brown, William Byatt, Christopher Castillo, Jeremy Davis,

26 and Monique Trujillo as Class Representatives.

27     Finally, the Court appoints David Boies and Mark C. Mao of Boies Schiller Flexner LLP,

28

[Proposed] Order Granting Plaintiffs' Motion for Class Certification 4:20-cv-03664-YGR

1  Bill Carmody of Susman Godfrey LLP, and John A. Yanchunis of Morgan & Morgan as Class

2  Counsel.

3  **IT IS SO ORDERED.**

4  DATED: _____      _____

5                                            Honorable Yvonne Gonzalez Rogers

6                                                United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[Proposed] Order Granting Plaintiffs' Motion for Class Certification 4:20-cv-03664-YGR