# EXHIBIT 3

# Redacted Version of Document Sought to be Sealed

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
- - - - - - - - - - - - - - - - - - - - x
CHASOM BROWN; MARIA NGUYEN; WILLIAM
BYATT; JEREMY DAVIS; and CHRISTOPHER
CASTILLO, individually and on behalf
of all other similarly situated,

        Plaintiffs,

               No. 5:20-cv-03664-LHK

   -against-

GOOGLE LLC,

        Defendant.

- - - - - - - - - - - - - - - - - - - - x


       Zoom video conference deposition of
RORY McCLELLAND, taken pursuant to
notice, was held remotely, commencing
February 18, 2022, 5:30 a.m. Eastern
Standard Time, before Leslie Fagin, a
Stenographic Court Reporter and Notary
Public in the State of New York.
            - - -




       MAGNA LEGAL SERVICES
320 West 37th Street, 12th Floor
New York, New York 10018
     (866) 624-6221



```
 1
 2    A P P E A R A N C E S:
      (All Parties Present Via Zoom.)
 3
 4

      BOIES SCHILLER & FLEXNER LLP
 5    Attorneys for Plaintiffs
                44 Montgomery Street, 41st Floor
 6              San Francisco, California 94104
      BY:       MARK MAO, ESQUIRE
 7              ROSANNA BAEZA, ESQUIRE
 8

      QUINN EMANUEL URQUHART & SULLIVAN
 9    Attorneys for Defendant
                51 Madison Avenue, 22nd Floor
10              New York, New York 10010
      BY:       JOMAIRE A. CRAWFORD, ESQUIRE
11              CARL SPILLY, ESQUIRE
12

      BAILEY GLASSER
13    Attorneys for Witness
                209 Capitol Street
14              Charleston, West Virginia 25301
      BY:       BENJAMIN L. BAILEY, ESQUIRE
15              ELLIOTT McGRAW, ESQUIRE
16

      ALSO PRESENT:
17
      LESLEY WEAVER, ESQUIRE
18    BLEICHMAR FONTI
          For the Calhoun Plaintiffs
19
      VANESSA WHEELER, Exhibit Tech
20        Magna Legal Services
21
22
23
24
25
```



Page 28

```
 1              R. McClelland

 2      A.   I do, yes.

 3      Q.   Can you elaborate more on this user

 4  expectation?

 5           MS. CRAWFORD:  Objection,

 6      foundation.

 7      A.   My understanding is that users

 8  expect Incognito mode or private browsing

 9  modes generally to present all in session ad

10  tracking when, in reality, the tracking is

11  limited to that single Incognito session, but

12  within the session, the tracking does occur.

13      Q.   As far as you know, has Google ever

14  considered stopping session-based tracking?

15           MS. CRAWFORD:  Objection.

16      A.   ████████████████████████████

17  ██████████████████████████████████████

18  ██████████████████████████████

19  ████████████████████████████████

20  ██████████████████████████

21      Q.   Were you involved in that proposal?

22      A.   I was, yes.

23      Q.   What happened with that proposal?

24      A.   It was a contentious proposal.

25  There were two clear groups, two different
```



CONFIDENTIAL

```
 1                  R. McClelland
 2   points of view, opinions.  There was the view
 3   ████████████████████████████████████
 4   ███████████████████████████████████████████
 5   ████████████████████████████████████████
 6   ████████████████████████████████████
 7   ████████████████████████████████
 8   ████████████████████████████████████
 9   ███████████████████████████████████████████
10   ████████████████████████████████████████
11   █████████████████████
12           Those two proposals were taken
13   forward through an escalation and,
14   ultimately, █████████████████████████████
15   ████████████████████████████████████
16   ████████████████████████████████████
17   ██████████████████
18        Q.   Which view did you have, was it the
19   first one or the second one, about the being
20   a good citizen?
21        A.   My preference was for the first one
22   as a product manager, your role is to
23   represent the user and the user problem and
24   to argue for them.
25           That said, I respected both points
```



Page 30

```
 1                 R. McClelland
 2   of view.  It wasn't a clear right or wrong,
 3   just two different ways of moving forward.
 4       Q.   Who made the ultimate decision to
 5   ███████████████████████?
 6            MS. CRAWFORD:  Objection,
 7       foundation.
 8            You can answer.
 9       A.   It went to an escalation meeting.
10   I think it was a woman called Parisa Tabriz,
11   I struggle to remember her name, but her
12   first name was Parisa.  She was a director of
13   engineering at the time and her counterpart
14   from the products side, Margret Schmidt.
15       Q.   Do you remember the name of this
16   proposal, if it had one?
17       A.   No, I'm afraid.  If you were to
18   give it to me, I might be able to recognize
19   it rather than recall it.
20       Q.   Please take a look at the page
21   ending in 409.
22            Do you see at the top, it says,
23   What are any risks or potential moments when
24   trust might be lost with participants while
25   in private mode?
```



Page 106

```
 1                    R. McClelland
 2    document.
 3              It might be easier if you use the
 4    link that allows you to control the document.
 5         A.   Okay.  I have reviewed it.  Thank
 6    you.
 7         Q.   Is this a document that you
 8    authored as part of your work for Google?
 9         A.   That is right, yes.
10         Q.   It says, ████████████████████
11    ████████████████████████████████████████████
12    ███████████████████████████████████████
13    ██████████████████.
14              Do you see that?
15         A.   I do, if we can zoom in.
16         Q.   Were you proposing a change by
17    Google to how Chrome Incognito mode
18    functioned?
19              MS. CRAWFORD:  I want to note, I
20         think the zoomed in portion of the
21         document doesn't reflect what you were
22         just reading from, Rosie.  It would be
23         helpful for Mr. McClelland to zoom in on
24         that specific portion.
25         A.   Thank you.
```



Page 107

```
 1              R. McClelland
 2      Q.   This is the second paragraph where
 3  it says, ███████████?
 4      A.   Yes.  To answer your question, we
 5  were proposing an ████████████████████
 6  ██████████████████████████████████████
 7  ████████████████████████████
 8  ███████████████████████████
 9  ██████
10      Q.   ████████████████████████████
11  █████████████
12      A.   ████████████████████████████
13  ██████████████████████████████
14  ████████████████████████████████████
15  █████████
16      Q.   The proposal we reviewed earlier
17  about signaling when a person is in Incognito
18  mode, would that also fall under ███████
19  ███████████?
20          MS. CRAWFORD:  Objection, misstates
21      the witness' testimony.
22      A.   It really depends upon the user.
23  Back to the very first documents around, you
24  can't solve for privacy until you know from
25  whom the user wants privacy, and who they are
```



CONFIDENTIAL

Page 108

```
 1                    R. McClelland
 2   willing to trust to deliver that.
 3              For users who trusted Google, both
 4   of these proposals, this one and the
 5   aforementioned one ████████████████████
 6   ██████████████████████████████████████.
 7              To be clear, users in a different
 8   group who didn't trust Google, this could
 9   materially make their privacy worse, so we
10   had to be aware of the different needs of
11   different groups of users when designing
12   feature.
13        Q.   I'm trying to understand, were
14   these different proposals?
15        A.   Different proposals, yeah.
16        Q.   So for this specific proposal, what
17   changes were you proposing to Incognito mode?
18        A.   Two main changes, minimizing, it
19   gets technical, but minimizing the exposed
20   entropy of the browser.  What that means, in
21   more simple terms is, when you visit a
22   website, the browser presents a series of
23   characteristics that can be used by the web
24   server to tailor the experience, for example,
25   it might say, you are using Windows or Micro
```



Page 109

```
 1                    R. McClelland
 2   S.  It would say which fonts you have
 3   installed and the resolution of your screen
 4   and the web server can use that information
 5   to tailor the experience to make it a more
 6   seamless experience for the user, but the
 7   server may also use that, and this is any
 8   server can use it to create a profile of you
 9   and try to uniquely identify you amongst all
10   the browsers in the world, based upon the
11   observable characteristics of your browser.
12             So the anti-fingerprinting defenses
13   would be to minimize the amount of data
14   exposed to the web server in order to make it
15   as difficult as possible for the web server
16   to uniquely identify your browser amongst all
17   the browsers that exist.
18        Q.   Can you explain how a server can
19   use information to create a profile of you?
20             MS. CRAWFORD:  Objection.
21        A.   I can.  When you visit a website,
22   you type www, dot, the name.com and press
23   enter, your browser sends information to that
24   -- routed to that server and included in that
25   package of data are things such as your IP
```



Page 110

```
 1                    R. McClelland
 2    address, your user agent string, as
 3    mentioned, the fonts, lots of information
 4    about the capabilities of your browser, it's
 5    a lot of data basically and, generally, the
 6    combination of all of that data together
 7    uniquely identifies a browser, not always,
 8    but often, and the server may use that
 9    information to actually identify your browser
10    and to start a profile about you.
11         Q.   Just to clarify, this information
12    we just discussed, would this be information
13    that could be included within an Incognito
14    mode session?
15         A.   Incognito mode sends exactly the
16    same data.  If it did not, then it would
17    reveal the Incognito intent to the web
18    server.  It has to present itself in an
19    identical matter to regular mode.
20         Q.   When you testified earlier that
21    this proposal would minimize the amount of
22    data exposed to the web server to make it as
23    difficult as possible for the web server
24    inventory to uniquely identify your browser
25    amongst all the browsers that exist, do you
```



Page 111

1                    R. McClelland

2   recall testifying to that?

3        A.    I do, yes.

4        Q.    Would this include minimizing the

5   amount of data exposed to Google's servers?

6        A.    It would.  Google is included in

7   the third party web group in this instance,

8   no special treatment for Google inferred in

9   this proposal.

10       Q.    In the first paragraph, the last

11  sentence, the reference to browser level

12  anti-fingerprinting defenses, what do you

13  understand anti-fingerprinting defenses

14  means?

15       A.    Fingerprinting, as I previously

16  described, attempting to uniquely identify a

17  browser based upon the characteristics it

18  presents to the web server.

19  Anti-fingerprinting defenses are techniques

20  that can be applied by the browser to try to

21  prevent -- to frustrate it and to make it as

22  difficult as possible to do and an example

23  would be rather than giving the actual screen

24  resolution, giving a standardized screen

25  resolution or a standard list of fonts or



Page 112

1            R. McClelland

2    spoken languages, to try to look as generic

3    as possible.

4        Q.   So this proposal would include a

5    proposal to minimize any attempts by Google

6    to uniquely identify a browser?

7            MS. CRAWFORD:  Objection,

8        mischaracterizes the witness' testimony,

9        misstates the document.

10       A.   It would make it difficult for

11   Google to do that as much as any other web

12   application.  As far as I am aware, Google

13   doesn't use this technology.

14       Q.   Would this proposal provide users

15   with protection from tracking?

16           MS. CRAWFORD:  Objection, vague and

17       overbroad as to tracking.

18       A.   It would make it harder to track

19   the user where the user didn't want to be

20   tracked.

21       Q.   Would this proposal provide users

22   with protection from tracking from Google?

23       A.   I don't know.  As far as I am

24   aware, Google doesn't use fingerprinting in

25   lieu of cookies, but I'm not the expert



Page 113

```
 1                 R. McClelland
 2   there.
 3         Q.   Did Google ever implement
 4   ████████████?
 5         A.   No, it did not.
 6         Q.   Can you tell me a little more about
 7   the process of this proposal, who was
 8   involved?
 9         A.   I struggle a bit remembering this
10   one.  It was one of the very early -- the
11   document you have here is a one-pager.  It's
12   a very early exploration around an idea
13   rather than a more formal proposal.  This is
14   a mechanism through which a product manager
15   can get early feedback around a sort of an
16   idea they have.
17              From memory, the feedback from
18   memory, I'm struggling, but, from memory, the
19   feedback I got from this document convinced
20   me this wasn't a feasible direction to really
21   take, at least not in the short term.
22         Q.   Why wasn't it feasible?
23         A.   I can't remember the details, I'm
24   afraid.
25         Q.   Was this your proposal?
```



Page 114

1              R. McClelland

2       A.   This was my proposal, yes.

3       Q.   Do you remember who you made this

4  proposal to?

5       A.   The document would have been shared

6  with a group, a group, I think, called Chrome

7  privacy leads or something of that nature,

8  from memory, comprising of 20 to 30

9  individuals working closely in the privacy,

10  Chrome privacy space, my co-peers basically.

11       Q.   Do you remember if this proposal

12  ever made it up to high-level Google

13  executives?

14       A.   It was certainly shared with my

15  line manager, but that is not executive

16  level.  As far as I am aware, it didn't make

17  it up any higher than that.

18            MS. BAEZA:  We can take this

19       exhibit down.

20            Next, I'm marking Exhibit 7.

21            (Exhibit 7, documents bearing Bates

22       stamp No. GOOG-CABR-04675770 through

23       GOOG-CABR-04675772, marked for

24       identification.)

25       Q.   Exhibit 7 is a document Google



Page 115

```
 1                R. McClelland
 2    produced from your files with production Nos.
 3    GOOG-CABR-04675770 through the page ending in
 4    772.
 5              Please let me know when you have
 6    that in front of you.
 7         A.   I see it, yeah.
 8         Q.   Please take a moment to review the
 9    document.
10              MS. CRAWFORD:  While I'm waiting
11         for this document to load, is this a
12         another multipage document?
13              MS. BAEZA:  Yes, it is.
14              MS. CRAWFORD:  Thank you.
15         A.   Okay.  I have reviewed it.  Thank
16    you.
17         Q.   Please take a look at the page
18    ending in 771.  It's an email from Ben
19    Galbraith.  It starts with, Hi, Gang.
20              Do you see that?
21         A.   Yes.
22         Q.   It says, Good meeting with Sundar
23    today.
24              Do you see that?
25         A.   I do, yes.
```



Page 116

```
 1                R. McClelland
 2       Q.   Do you understand that to be Sundar
 3   Pichai?
 4       A.   That's right, yes.
 5       Q.   If you look at the third bullet, it
 6   says, He liked the element of the plans we
 7   presented.
 8            Do you see that?
 9       A.   I do now, yeah.
10       Q.   If you jump to bullet B, it says,
11   The IP -- the 1P/3P cookie space split with
12   user opt-in controls to clear 3P state.
13            Do you see that?
14       A.   I do, yes.
15       Q.   What did you understand 1P/3P
16   cookie space split with user opt-in controls
17   to clear 3P state to mean?
18            MS. CRAWFORD:  Objection.
19       A.   1P means first party and 3P, third
20   party.  It's the simplest explanation to
21   start with.
22            Cookies are referred to as either
23   first party or third party.  If you go to
24   ABC.com and ABC.com puts a cookies on your
25   computer, that cookie is in that context a
```



```
 1                    R. McClelland
 2    first party cookie.  If you then go to
 3    FEG.com and from that website, read that same
 4    cookie, that same cookie is now a third party
 5    cookie because it is being read from a
 6    different context than the web server that
 7    wrote the cookie.
 8             So where the readings and writings
 9    are the same, that's a first party cookie.
10    Where there is a discrepancy between the two,
11    it is a third party cookie.
12             The important thing is a given
13    cookie can be sometimes first party and
14    sometimes third party, depending upon who is
15    trying to read it.
16        Q.   Sorry, go ahead.
17        A.   Beyond that, the actual proposal
18    being discussed here, I'm not familiar with
19    this.
20             I can infer and I can guess, if you
21    so wish, but I'm not actually familiar with
22    the exact details of what was being proposed
23    in this email.
24        Q.   In the later, point D, it reads,
25    Adding opt-in anti-tracking/privacy controls
```



CONFIDENTIAL

Page 118

```
 1                 R. McClelland
 2   with the theme of ███████████; Sundar
 3   was particularly excited about this and felt
 4   it could be a very powerful component of the
 5   narrative.
 6              What do you understand the
 7   reference to ██████████████ mean?
 8              MS. CRAWFORD:  Objection, insofar
 9         as you are asking the witness to
10         speculate.
11        A.   I am speculating.  I can't remember
12   whether this came before the ██████████
13   proposal or afterwards, but at this point in
14   time, generally, there were various
15   conversations around what an ███████
16   ████████ might look like, so it's basically
17   referring to something of the nature of the
18   previous document we looked at.
19        Q.   So aside from the previous
20   documents that we looked at that had two
21   different proposals, what other proposals
22   were being considered by Google that would
23   fall into the category of ██████████████?
24              MS. CRAWFORD:  Objection, assumes
25         facts, foundation.
```



1                    R. McClelland

2        A.   I don't really know.  There were no

3   firmed-up proposals at this stage, just

4   ideas.

5             The intent here, I think from

6   memory, would have been to encourage as to

7   further explore those ideas and to come back

8   with more firmed-up proposals.

9        Q.   What ideas are you referring to?

10       A.   We didn't have any that I was aware

11  of at this stage, but there was a general

12  desire to have some form of ████████████

13  ████████████ that the user could opt into that

14  ████████████████████████████████████████.

15       Q.   Do you have any reason to doubt the

16  accuracy of Mr. Galbraith's report on this

17  meeting with Mr. Pichai, discussing

18  Incognito?

19       A.   I have no reason to --

20             MS. CRAWFORD:  I want to note for

21        the record my objection, calls for

22        speculation.

23       Q.   Mr. McClelland, I'm not sure if the

24  court reporter caught that.

25             Can you please repeat your answer?



Page 324

```
 1

 2                  - - -

 3               I N D E X

 4                  - - -

 5

 6   RORY McCLELLAND                  PAGE

 7       By Ms. Baeza                 3, 308

 8       By Ms. Crawford              213

 9

10                  - - -

11             E X H I B I T

12                  - - -

13   EXHIBIT                          PAGE

14   Exhibit 2 Documents bearing Bates     9

15       Stamp No. GOOG-CABR-05766858 and

16       GOOG-CABR-05766859

17   Exhibit 3 Documents bearing Bates     14

18       Stamp No. GOOG-BRWN-000042388

19       through GOOG-BRWN-000042418

20   Exhibit 4 Document bearing Bates      35

21       Stamp No. GOOG-CABR-05144251

22   Exhibit 5 Documents bearing Bates     62

23       Stamp No. GOOG-CABR-00141578

24       and GOOG-CABR-00141579

25
```



Page 325

```
 1
 2                      - - -
 3                 E X H I B I T
 4                      - - -
 5   EXHIBIT                          PAGE
 6   Exhibit 6 Document bearing Bates    105
 7        Stamp No. GOOG-CABR-00125537
 8   Exhibit 7 Documents bearing Bates   114
 9        Stamp No. GOOG-CABR-04675770
10        through GOOG-CABR-04675772
11   Exhibit 8 Documents bearing Bates   120
12        Stamp No. GOOG-CABR-04734899
13        through GOOG-CABR-04734902
14   Exhibit 9 Documents bearing Bates   138
15        Stamp No. GOOG-CABR-05169125
16        through GOOG-CABR-05169128
17   Exhibit 10 Documents bearing Bates  147
18        Stamp No. GOOG-BRWN-000701734
19        through GOOG-BRWN-000701748
20   Exhibit 11 Documents bearing Bates  168
21        Stamp No. GOOG-CABR-05276150
22        through GOOG-CABR-05276153
23   Exhibit 12 Documents bearing Bates  184
24        Stamp No. GOOG-CABR-04625213
25        through GOOG-CABR-04625222
```



Page 326

```
 1

 2                     - - -

 3                 E X H I B I T

 4                     - - -

 5   EXHIBIT                              PAGE

 6   Exhibit 13 Documents bearing Bates    189

 7        Stamp No. GOOG-CABR-00173728

 8        through GOOG-CABR-00173735

 9   Exhibit 14 Documents bearing Bates    192

10        Stamp No. GOOG-CABR-01561563

11        through GOOG-CABR-01561579

12   Exhibit 16 Documents bearing Bates    199

13        Stamp No. GOOG-CABR-00358713

14        and GOOG-CABR-00358714

15   Exhibit 17 Document bearing Bates     208

16        Stamp No. GOOG-CABR-00799341

17   Exhibit 15 Documents bearing Bates    209

18        Stamp No. GOOG-CABR-05256755

19        through GOOG-CABR-05256760

20   Exhibit 18 Documents beginning with   231

21        Bates stamp No. GOOG-CABR-05145880

22   Exhibit 19 Documents beginning with   248

23        Bates stamp No. GOOG-CABR-0502836

24   Exhibit 20 Documents beginning with   260

25        Bates stamp No. GOOG-CABR-00503128
```



Page 327

1

2                              - - -

3                      E X H I B I T

4                              - - -

5   EXHIBIT                                   PAGE

6   Exhibit 21 Documents beginning with    265

7        Bates stamp No. GOOG-BRWN-0045551

8   Exhibit 22 Documents beginning with    268

9        Bates stamp No. GOOG-CABR-00483672

10  Exhibit 23 Documents beginning with    275

11       Bates stamp No. GOOG-CABR-00892455

12  Exhibit 24 Documents beginning with    281

13       Bates stamp No. GOOG-CABR-05236676

14  Exhibit 25 Excerpt from 75-page         288

15       complaint

16  Exhibit 26 Documents beginning with    300

17       Bates stamp No. GOOG-BRWN-00029326

18  Exhibit 27 Excerpt from complaint       302

19  Exhibit 28 Document bearing Bates       322

20       Stamp No. GOOG-CABR-05786200

21

22

23

24

25



CONFIDENTIAL

Page 328

```
 1
 2                    - - -
 3            DEPOSITION SUPPORT INDEX
 4                    - - -
 5   Direction to Witness Not to Answer
     Page  Line        Page  Line   Page   Line
 6   None
                       - - -
 7
     Request for Production of Documents
 8   Page  Line        Page  Line   Page   Line
     None
 9
                       - - -
10
     Stipulations
11   Page  Line        Page  Line   Page   Line
     None
12                    - - -
13   Questions Marked
     Page  Line        Page  Line   Page   Line
14   None
                       - - -
15
     To Be Filled In
16   Page  Line        Page  Line   Page   Line
     None
17                    - - -
18
19
20
21
22
23
24
25
```



CONFIDENTIAL

1              CERTIFICATE

2

3

4        I HEREBY CERTIFY that the foregoing proceedings

5    were duly sworn by me and that the proceedings are a

6    true record.

7

8    _____

9    Leslie Fagin,
     Registered Professional Reporter
10   Dated:

11

12

13        (The foregoing certification of this transcript

14   does not apply to any reproduction of the same by any

15   means, unless under the direct control and/or

16   supervision of the certifying reporter.)

17

18

19

20

21

22

23

24

25