# EXHIBIT 7

# Redacted Version of Document Sought to be Sealed

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

CHASOM BROWN,
Plaintiff, Case No.
vs.
4:20-cv-03664-YGR-SVK
GOOGLE LLC,
Defendant.

************************************
CONFIDENTIAL
VOLUME II
CONTINUED ZOOM VIDEOTAPED DEPOSITION OF
JONATHAN HOCHMAN
July 21, 2022
10:09 a.m.
***************************************

TAKEN BY:
JOSEF ANSORGE, ESQ.
ATTORNEY FOR DEFENDANT

REPORTED BY:
BELLE VIVIENNE, RPR, CRR, NJ-CRR,
WA/CO/NM-CCR
NATIONALLY CERTIFIED REALTIME
COURT REPORTER
VERITEXT LEGAL SOLUTIONS
JOB NO. 5312353
866.299.5127

APPEARANCES

FOR THE PLAINTIFF:

MARK MAO
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, California 94104
415 293 6800
mmao@bsfllp com

RYAN MCGEE
MORGAN & MORGAN
201 North Franklin Street
7th Floor
Tampa, Florida 33602
813 223 0931
rmcgee@forthepeople com

ALEXANDER FRAWLEY
IAN CROSBY
SUSMAN GODFREY
1301 Avenue of the Americas
32nd Floor
New York, New York 10019
Afrawley@susmangodfrey com

COUNSEL FOR PLAINTIFF IN CALHOUN MATTER:

ADAM PROM
DICELLO LEVITT & GUTZLER
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
312 214 7900
aprom@dicellolevitt com

COUNSEL FOR DEFENDANT:

JOSEF ANSORGE
JOHN WILSON, IV
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue
New York, New York 10010
josefansorge@quinnemanuel com

CARL SPILLY
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D C 20005
202 538 8277
carlspilly@quinnemanuel com

APPEARANCES: (Continued)

CRYSTAL NIX-HINES
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
crystalnixhines@quinnemanuel.com

VIDEOGRAPHER:
Sean Grant

ALSO PRESENT:
Konstantinos Psounis, Ph.D.
Julie Burns
John Wilson, IV - Quinn Emanuel

- - -

INDEX

- - -

Testimony of:
JONATHAN HOCHMAN
MR. ANSORGE............................. 372

- - -

EXHIBITS

- - -

| NO. | DESCRIPTION | PAGE |
| --- | --- | --- |
| Exhibit 17 | Appendix F | 374 |
| Exhibit 18 | Dr. Glen Bernston's deposition | 379 |
| Exhibit 19 | Excerpt from Glen Berston's deposition | 384 |
| Exhibit 20 | Two-page policy document | 414 |
| Exhibit 21 | Log Data Usage Rules | 439 |
| Exhibit 22 | Article entitled Privacy Threats in Intimate Relationships | 496 |
| Exhibit 24 | Understanding Dual Stacking of IPv4 and PIv6 Unicast Addresses | 503 |

- - -

EXHIBITS (Continued.)

- - -

| NO. | DESCRIPTION | PAGE |
| --- | --- | --- |
| Exhibit 25 | Ad Personalization Settings | 512 |
| Exhibit 26 | Expert Report of Konstantinos Psounis | 520 |
| Exhibit 29 | Document Bates numbered GOOG-BRWN-00630517 | 558 |
| Exhibit 30 | Document Bates numbered GOOG-CABR03923580 | 561 |
| Exhibit 31 | Document Bates numbered GOOG-CABR-00894408 | 567 |
| Exhibit 32 | PII document | 568 |

- - -
DEPOSITION SUPPORT INDEX
- - -

Directions to Witness Not to Answer
Page Line
none

Request for Production of Documents
Page Line
none

Stipulations
Page Line
none

Question Marked
Page Line
none

THE VIDEOGRAPHER: Good morning. We're going on the record at 10:09 a.m. The date is July 21, 2022. Please note that this deposition is being conducted virtually. Quality of recording depends on the quality of camera and Internet connection of participants. What is seen from the witness and heard on screen is what will be recorded. Audio and video recording will continue to take place unless all parties agree to go off the record. 10:09:00 10:09:02 10:09:07 10:09:09 10:09:12 10:09:14 10:09:17 10:09:18 10:09:20 10:09:22 10:09:23 10:09:25

This is media unit number 1 of the video recorded deposition of Jonathan Hochman, volume 2, taken by counsel for defendant in the matter of Chasom Brown, et al., v Google LLC, filed in the United States District Court, Northern District of California, Oakland Division. Case No. 4:20-cv-03664-YGR-SVK. It is being conducted remotely using virtual technology. 10:09:26 10:09:28 10:09:31 10:09:33 10:09:35 10:09:38 10:09:40 10:09:41 10:09:44 10:09:53 10:09:55

My name is Sean Grant from 10:09:56

Veritext. I'm the videographer. And the court reporter is Belle Vivienne, also from Veritext. 10:09:57 10:09:59 10:10:01

Please note that the witness has been previously sworn in. Counsel, you may proceed. 10:10:03 10:10:05 10:10:08

JONATHAN HOCHMAN, 10:10:08
having been previously duly sworn by the Certified Stenographic Realtime Reporter, testified as follows: 10:10:08 10:10:08 10:10:08

EXAMINATION 10:10:10
BY MR. ANSORGE: 10:10:10

Q. Good morning, Mr. Hochman, how are you doing today? 10:10:10 10:10:12
A. So far, so good. 10:10:13
Q. Do you recall yesterday we were discussing your opinion 14 that relates to private browsing information being used to measure and model conversions? 10:10:15 10:10:17 10:10:21 10:10:23
A. Yes, I did have a chance to look over the rough transcript, and I saw that's where we ended. And by the way, as I was looking over the rough transcript, it reminded me of something that I would like to tell you if -- if you're 10:10:25 10:10:30 10:10:32 10:10:34 10:10:37 10:10:40

interested. 10:10:43
Q. How long do you expect it to take? 10:10:44 10:10:46
A. One minute. 10:10:47
Q. Let's do it, Mr. Hochman, one minute. 10:10:48 10:10:50
A. Okay. I mentioned that I hadn't prepared a rebuttal report to Mr. Psounis -- Dr. Psounis -- Professor Psounis, I'm sorry -- whatever the case may be. 10:10:51 10:10:53 10:10:55 10:10:59 10:11:02

And that's because procedurally, he -- his report came in as a rebuttal and -- and, therefore, I did not have an opportunity to write a rebuttal to him. I did not want to imply that I agree with or concede any of the points in his report. 10:11:05 10:11:08 10:11:12 10:11:14 10:11:16 10:11:19

In fact, I disagree with all of his opinions that relate to my work, and I just wanted to be clear on that and also give you the chance, you know, today to ask me any questions about that should you wish to. 10:11:20 10:11:23 10:11:28 10:11:30 10:11:33 10:11:35
Q. Yeah, thank you, Mr. Hochman. We didn't understand you to be agreeing 10:11:37 10:11:38

around if you don't mind. 14:58:39
Q. Let's just finish the 14:58:40 questioning on this one document, 14:58:42 Mr. Hochman, and then we'll take a break. 14:58:43
A. Sure. Okay. I'm going to 14:58:46 download it so I can read it very clearly. 14:58:50
MR. MAO: He wants to know if 14:58:55 it's one or two employees. Just go 14:58:56 ahead, do that, and then we'll go on 14:58:59 break. Thank you. 14:59:01
A. Okay. I'm going to read this. 14:59:07 Give me a moment. I'm actually going to 14:59:09 read it from the bottom so it's in 15:00:21 chronological order. Give me another 15:00:24 moment. 15:00:26
Q. It's going to be a very short 15:01:33 and simple question, Mr. Hochman. 15:01:34
A. Just a second, though, because I 15:01:42 find this tremendously interesting. Just 15:01:43 a minute. 15:01:46
Okay. Go ahead. 15:03:01
Q. Is this a document that you were 15:03:02 citing? 15:03:03
A. Now I got to go back and look. 15:03:05 3929580? Okay. Go ahead. 15:03:08

Q. How many people stated that "The 15:03:49 blame for people's misconceptions about 15:03:52 Incognito Mode is due to that name and 15:03:54 branding"? 15:03:56
A. Chris Palmer stated that and the 15:03:58 others on the thread seemed to have 15:04:00 accepted it. Nobody seems to have refuted 15:04:02 that. 15:04:05
Q. We'll do one more document, and 15:04:06 then we'll have a break. 15:04:09
MR. MAO: No, I'm going to do 15:04:10 all of us a favor and take a break, 15:04:11 ten minutes, and then we'll go to the 15:04:15 end, please. 15:04:18
A. Can I -- actually, before we do 15:04:18 the break, I just wanted to maybe -- I saw 15:04:18 something in here that I want to comment 15:04:21 on. Just give me one second. 15:04:23
I see here something interesting 15:04:31 that I would like to -- 15:04:33
MR. ANSORGE: Yeah. So there's 15:04:35 no question pending currently, 15:04:37 Mr. Hochman, and we're short on time. 15:04:39
THE WITNESS: Okay. I'll let it 15:04:41 go then. That's fine. 15:04:42

BY MR. ANSORGE:: 15:04:45
Q. Will you please turn back to 15:04:45 Exhibit 1, which is your opening report in 15:04:46 this matter -- 15:04:48
MR. MAO: No, we're taking a 15:04:49 break. 15:04:51
BY MR. ANSORGE:: 15:04:51
Q. We marked it yesterday. 15:04:52
MR. MAO: We're taking a break. 15:04:53
MR. ANSORGE: We will do one 15:04:53 more, and then we will take a break. 15:04:56 We've been under your -- 15:04:56
MR. MAO: No, we're not. 15:04:56
MR. ANSORGE -- control quite a 15:04:57 bit today, Mr. Mao. So this is my 15:04:58 deposition -- 15:05:00
MR. MAO: We are going off the 15:05:00 record. 15:05:00
MR. ANSORGE: And we are going 15:05:00 to do one more. 15:05:00
THE WITNESS: May I request a 15:05:00 break also? I would like a break as 15:05:02 the deponent. It would help me stay 15:05:04 focused. 15:05:06
MR. MAO: You're entitled to 15:05:06

that. Ten minutes. Thank you. 15:05:07
MR. ANSORGE: No. I'm sorry. 15:05:12 The -- this is going to be short. 15:05:13 We've gone through a lot, and I want 15:05:15 to close out this module so that we 15:05:18 can take a break and come back with 15:05:20 something different. 15:05:22
Mr. Hochman, could you please 15:05:23 indulge me -- 15:05:25
MR. MAO: Wait. Stop. Stop, 15:05:26 stop, stop, please. Okay. You said 15:05:27 one question. Okay? Is this really 15:05:29 one question? 15:05:30
MR. ANSORGE: It's going to be 15:05:31 one. It will take, of course -- it 15:05:32 might take identifying the document, 15:05:34 but it should be -- it won't require 15:05:36 studying the entire document and it's 15:05:39 clear -- 15:05:40
MR. MAO: No, we're taking a 15:05:40 break. 15:05:40
(Reporter clarification.) 15:05:42
MR. ANSORGE: -- what we are 15:05:42 asking about? 15:05:47
MS. NIX-HINES: Let's go off the 15:05:47

record, please. 15:05:48
MR. MAO: Thank you. 15:05:48
MR. ANSORGE: Now, to resolve this, not to eat up our time -- 15:05:49 15:05:50
THE VIDEOGRAPHER: Counsel, I need -- I need both parties to agree. 15:05:52 15:05:52
MR. ANSORGE: Yeah, we can go off the record. 15:05:55 15:05:57
THE VIDEOGRAPHER: Going off the record. The time is 3:06 p m. 15:05:57 15:05:58
(Whereupon, a brief recess is taken.) 15:16:43 15:16:43
THE VIDEOGRAPHER: Back on the record. The time is 3:17 p m. 15:16:43 15:17:06
BY MR. ANSORGE:: 15:17:09
Q. Mr. Hochman, do you recall yesterday answering some questions about Exhibit 10, which was entered yesterday and was a copy of Google Analytics' terms of service that were pulled from the web; do you recall that? 15:17:10 15:17:11 15:17:14 15:17:16 15:17:19 15:17:21
A. I think I do. I'm going to take a look at that exhibit. Okay. Yes, I remember that. 15:17:24 15:17:26 15:17:36
Q. Could you look to Exhibit 31, 15:17:37

please? It should be loaded now. It's Bates designation GOOG-CABR-00894408. 15:17:46 15:17:48
(Exhibit 31, Document Bates numbered GOOG-CABR-00894408, marked for identification.) 15:17:57 15:17:57 15:17:57
BY MR. ANSORGE:: 15:17:57
Q. And I'm loading this document because yesterday your counsel had concerns about Exhibit 10 not having a Bates number. 15:17:58 15:18:00 15:18:02 15:18:04
A. Okay. 15:18:09
Q. If you turn to Exhibit 31, you see passage 7. Privacy, which is ending with the Bates designation 411. 15:18:14 15:18:19 15:18:24
A. Okay. I'm there. 15:18:33
Q. Do you see the first sentence, Mr. Hochman, says "You will not and will not assist or permit any third party to pass information to Google that Google could use or recognize as personally identifiable information"? 15:18:34 15:18:36 15:18:38 15:18:40 15:18:42 15:18:46
Did I read that correctly? 15:18:47
A. Yes. 15:18:49
Q. Do you see the third sentence? 15:18:54
It says "You must post a Privacy Policy 15:18:56

and that Privacy Policy must provide notice of your use of cookies, identifiers for mobile devices...(Android Advertising Identifier or Advertising Identifier for iOS) or similar technology used to collect data"? 15:18:59 15:19:02 15:19:05 15:19:08 15:19:10 15:19:12
Did I read that correctly? 15:19:13
A. Yes. 15:19:15
Q. Does this look like the same statements that we were discussing yesterday, Mr. Hochman? 15:19:29 15:19:31 15:19:32
A. At least it looks similar. I can't verify that it's the same, not without comparing the two more closely. 15:19:37 15:19:39 15:19:43
Q. I'm going to load another exhibit for you. And this should be Exhibit 32. Please let me know once you have it. 15:19:46 15:19:50 15:19:52 15:19:55
(Exhibit 32, PII document, marked for identification.) 15:19:55 15:19:56
BY MR. ANSORGE:: 15:19:56
Q. Do you recall yesterday -- 15:20:22
MR. MAO: Sorry, sorry. I think -- Witness, I think you're going to need to download this. It's highly 15:20:23 15:20:25 15:20:26

pixilated. 15:20:29
THE WITNESS: I've already downloaded and brought it up. 15:20:31 15:20:32
MR. MAO: Please go ahead, Mr. Ansorge. 15:20:33 15:20:34
BY MR. ANSORGE:: 15:20:35
Q. Mr. Hochman, do you recall yesterday we were discussing a document entitled Understanding PII in Google's Contracts and Policies? 15:20:36 15:20:37 15:20:38 15:20:42
A. I think so. 15:20:47
Q. Do you recall your counsel had some concerns about the document not being Bates stamped? 15:20:48 15:20:49 15:20:50
A. I'll take your word for it. 15:20:53
Q. Do you recall we were discussing the passage in the middle where it says "What Google considers PII," and there's a list which includes "e-mail addresses, mailing addresses, phone numbers, precise locations (such as GPS coordinates - but see the note below) and full names or usernames"? 15:20:57 15:20:59 15:21:01 15:21:04 15:21:07 15:21:11 15:21:15 15:21:17
Do you see that? 15:21:18
A. Yes. 15:21:21

Q. Further below, do you see where it says "Google interprets PII to exclude, for example," and then the third bullet lists IP addresses; do you see that? 15:21:24 15:21:26 15:21:28 15:21:30
A. Yes. 15:21:34
Q. Okay. You can put that document to the side. 15:21:37 15:21:40
Mr. Hochman, are you an economics expert? 15:21:46 15:21:48
A. I present myself as an expert in the Internet marketing, Internet security and Internet technology. And to the extent that economics would intersect with those areas, then those intersections could be covered by either -- either kind of expertise. 15:21:50 15:22:00 15:22:01 15:22:02 15:22:06 15:22:09 15:22:12
I don't hold myself out as a general expert in economics. 15:22:13 15:22:17
Q. Have you ever worked as an economist? 15:22:18 15:22:20
A. I've worked in various business roles in -- in financial positions, but I don't hold myself out as an expert in economics. 15:22:22 15:22:24 15:22:30 15:22:33
Q. Would you regard yourself as an 15:22:34

expert in damages? 15:22:36
A. I occasionally am asked to provide opinions that will form the basis of a damages model, so some of the inputs. I can make calculations about, for example, the cost of a marketing campaign or the value of some traffic. 15:22:39 15:22:42 15:22:45 15:22:48 15:22:52 15:22:54
So I can make that kind of analysis, but I don't hold myself out as a general purpose economic damages expert, no, and that's not my role in this case. 15:22:57 15:22:59 15:23:05 15:23:08
Q. Are you offering an opinion in this case on what type of information is valuable to Google? 15:23:11 15:23:17 15:23:20
A. I think that -- 15:23:22
MR. MAO: Objection. Sorry, objection, vague. 15:23:23 15:23:24
Go ahead. 15:23:25
A. Yeah, I mean, I've offered the opinions that are in my reports, and I think I may have explained the reasons why certain information would be valuable to Google and how Google would use it in their Internet marketing advertising provision. 15:23:26 15:23:27 15:23:29 15:23:33 15:23:36 15:23:39 15:23:42

So that's, I think, going to the -- the thing I addressed before about sometimes topics will be at the intersection of two different kinds of expertise. 15:23:44 15:23:47 15:23:50 15:23:53 15:23:55
BY MR. ANSORGE:: 15:23:55
Q. And are you offering an opinion on this case on Google's business model? 15:23:58 15:24:01
MR. MAO: Objection, vague. The document speaks for itself. 15:24:03 15:24:07
Sorry. Go ahead. 15:24:07
A. Sure. I mean, I'm not sure exactly what you mean by "business model," but I have offered the opinions in my report, and my expertise is sufficient to cover the opinions in my report. And I am familiar with how Google operates and how they make money selling Internet advertising. 15:24:09 15:24:10 15:24:12 15:24:14 15:24:17 15:24:21 15:24:25 15:24:30
BY MR. ANSORGE:: 15:24:30
Q. And are you offering an opinion in this case on Google's business infrastructure? 15:24:31 15:24:32 15:24:35
A. That sounds like it's further afield, but it depends how you're going 15:24:38 15:24:40

to -- maybe you've used some different words that you're trying to refer to something that's in my report. 15:24:42 15:24:44 15:24:46
So I am not here admitting -- I don't think I'm talking about that, but I'm not suggesting that something in my report should be knocked out. I'm not giving that to you. I'm not conceding that. 15:24:47 15:24:52 15:24:54 15:24:57 15:24:59 15:25:01
Q. Mr. Hochman, are you offering an opinion on the costs Google incurs to generate revenue? 15:25:02 15:25:05 15:25:08
MR. MAO: Objection, vague, document speaks for itself. 15:25:09 15:25:11
Go ahead. 15:25:13
A. I don't recall whether I have said something about that, but if you have any questions about that, you know, feel free to address them to me, and I'll see if I can answer or not. 15:25:16 15:25:19 15:25:24 15:25:26 15:25:29
BY MR. ANSORGE:: 15:25:29
Q. Are you aware of any passage in your report where you opine on the costs Google incurs to generate revenue? 15:25:32 15:25:33 15:25:36
MR. MAO: Objection, vague, the 15:25:38

document speaks for itself. 15:25:42
A. I -- you know, the report has its contents and the rebuttal has its contents. I don't specifically recall something about that, but if it's in there, it stands. 15:25:45 15:25:47 15:25:50 15:25:53 15:25:56
BY MR. ANSORGE:: 15:25:56
Q. Do you opine on Google's measures to save costs at all? 15:26:01 15:26:02
MR. MAO: Objection, vague, the document speaks for itself. 15:26:06 15:26:08
A. I think I may have mentioned something about that with regard to the [REDACTED] 15:26:10 15:26:11 15:26:13
[REDACTED] 15:26:17
[REDACTED] 15:26:19
[REDACTED] 15:26:22
[REDACTED] 15:26:24
[REDACTED] 15:26:27
So I'm not going to guarantee that I've never mentioned the word "cost," but I -- I don't think that's really been the focus of my reports. 15:26:28 15:26:31 15:26:33 15:26:35
BY MR. ANSORGE:: 15:26:35
Q. Mr. Hochman, are you familiar 15:26:38

with a term muling, M-U-L-I-N-G? Does that mean anything to you? 15:26:39 15:26:44
A. Are you talking about money muling, or are you talking about something else? 15:26:47 15:26:48 15:26:52
Q. What is your understanding of muling, M-U-L-I-N-G? 15:26:52 15:26:53
A. I'm not sure what you're referring to. You should just go ahead and define it. 15:26:56 15:26:57 15:26:59
Q. Did you explain or discuss muling with Mr. Lasinski? 15:27:01 15:27:02
A. I don't recall discussing muling with anyone. 15:27:05 15:27:11
Q. Mr. Hochman, did you represent to Mr. Lasinski that it is valuable for Google to know the length of time a user browses? 15:27:11 15:27:13 15:27:16 15:27:18
A. I don't remember. 15:27:23
Q. You can't recall one way or the other whether you discussed this with Mr. Lasinski? 15:27:30 15:27:31 15:27:33
A. I -- 15:27:35
MR. MAO: Objection, vague. 15:27:35
A. I don't remember discussing that 15:27:36

with Mr. Lasinski. 15:27:37
BY MR. ANSORGE:: 15:27:39
Q. Mr. Hochman, do you have any understanding of what unique monthly private browsing instances are or abbreviated as UMPBI? 15:27:41 15:27:42 15:27:44 15:27:46
A. I mean, those words together make sense to me. 15:27:52 15:27:54
Q. Is this the first time you've heard those words put together? 15:27:57 15:27:59
A. I think I've heard discussions about that, you know, browser instances, monthly browser instances. I think I've heard that discussed. 15:28:02 15:28:04 15:28:06 15:28:09
Q. What is your understanding of what unique monthly private browsing instances are? 15:28:13 15:28:14 15:28:16
A. I mean, I don't think I used it in my report so I don't really -- I don't really think it's for me to -- to define it. 15:28:20 15:28:22 15:28:25 15:28:27
Maybe if you give it to me in the context of a document or a usage, that would be appropriate, but I don't really like to define something just out of thin 15:28:28 15:28:29 15:28:32 15:28:34

air. Like even in a spelling bee, you can always ask for the word to be used in a sentence. 15:28:36 15:28:40 15:28:42
Q. Are you aware of any evidence that suggests that Google maintains data that links monthly private browsing instances to an individual? 15:28:44 15:28:46 15:28:48 15:28:50
MR. MAO: Objection, asked and answered, the document speaks for itself. 15:28:52 15:28:55 15:28:55
A. I mean, I think that there's a whole bunch of log files and, in theory, it might be possible to calculate that from the log files. I also know that there are a bunch of log files that I haven't been allowed to look at. So that's an unknown unknown. 15:28:58 15:29:00 15:29:02 15:29:04 15:29:06 15:29:08 15:29:10
BY MR. ANSORGE:: 15:29:10
Q. And putting that unknown unknown to the side, Mr. Hochman, is it your understanding that there is a direct relationship between the unique monthly private browsing instances and the amount of data Google collects? 15:29:13 15:29:15 15:29:17 15:29:19 15:29:23 15:29:24
A. Zoom just dropped out at the 15:29:27

beginning of your question. Could you 15:29:29
just ask it again? 15:29:30
Q. Yes. I was saying in putting 15:29:31
that unknown unknown to the side, 15:29:34
Mr. Hochman, is it your understanding that 15:29:36
there's a direct relationship between the 15:29:37
unique monthly private browsing instances 15:29:40
and the amount of data Google collects? 15:29:42
A. I'm not sure. I don't think 15:29:45
I've analyzed that question yet. 15:29:47
Q. Would it be fair to say you 15:29:50
don't have an opinion one way or the 15:29:52
other? 15:29:54
A. I'll just say that I haven't 15:29:54
expressed an opinion on that yet. 15:29:56
Q. Would you say that you're an 15:29:57
expert on the search and browsing patterns 15:30:00
of users? 15:30:06
A. I think that that's a little 15:30:07
broad, and it depends what within it -- I 15:30:08
might have some expertise. It again 15:30:11
depends on what specific question you have 15:30:14
in that area. 15:30:16
Q. Mr. Hochman, would you consider 15:30:21
the scenario in -- the following scenario, 15:30:22

I'll explain it to you, in which a user 15:30:26
who's in private browsing mode and they're 15:30:27
not signed in to their Google account, and 15:30:29
they then visit www.google.com and 15:30:32
complete a search, would you consider such 15:30:36
a scenario to be an edge case? 15:30:39
A. A Google's -- the user is in a 15:30:44
private browsing session, they're not 15:30:47
logged in, they go to Google.com and 15:30:49
conduct a search. 15:30:53
Q. That's correct. 15:30:57
A. I don't think I could call that 15:30:58
an edge case because Google.com is a 15:30:59
pretty heavily used website. 15:31:02
Q. Did you express any opinion 15:31:05
about this to Mr. Lasinski? 15:31:07
A. I don't recall expressing an 15:31:12
opinion to him. I'm not sure -- maybe 15:31:13
you're framing it differently than 15:31:18
something I said to him. 15:31:20
Q. Over the course of the last two 15:31:30
days, Mr. Hochman, you've referred to 15:31:32
"edge case" or "edge cases" a number of 15:31:34
times. 15:31:38
Do you recall that? 15:31:38

A. Yes. 15:31:39
Q. I believe you stated that 15:31:39
multiple users on a device is an edge 15:31:42
case. 15:31:46
Do you recall that? 15:31:47
A. It depends on, I think -- 15:31:49
multiple users on a device is something 15:31:52
that could happen. Maybe you can go back 15:31:54
and give me the exact testimony so I can 15:31:58
be clear. 15:32:01
I think that you were talking 15:32:02
about multiple users who had the same user 15:32:03
agent string. Yeah, there may have been 15:32:06
some further qualifications there. 15:32:07
Q. So you stated yesterday that 15:32:11
even if you had one of these edge cases 15:32:13
where, for example, the IP address user 15:32:16
agent string leads back to a computer with 15:32:20
multiple users, that sort of edge case 15:32:22
even then, the other information that's 15:32:26
part of that investigation will generally 15:32:28
disambiguate. 15:32:32
Does that help refresh your 15:32:33
recollection about that topic? 15:32:34
A. Yes. Yeah, I -- now I 15:32:37

understand what -- what that was. So, 15:32:38
yes, I -- I stand by that testimony. 15:32:39
Q. You also testified about bots 15:32:44
being an edge case. You recall that? You 15:32:48
were talking about an edge case where 15:32:50
somebody creates a bot that uses their 15:32:52
logged-in activity to do something that 15:32:55
runs their browser or uses their browser 15:32:58
cookies, that's an edge case. 15:33:00
Do you recall that? 15:33:02
A. Yes. That wouldn't be the -- 15:33:02
the -- a bot operating in the browser as 15:33:05
opposed to a separate bot not in the 15:33:10
browser, that -- that would probably be an 15:33:12
edge case. I mean, of course, there are a 15:33:15
lot of bots on the Internet. That's 15:33:16
different. I'm not referring to Google 15:33:19
bot or Bing bot or any of these other bots 15:33:20
that are running around. 15:33:24
I'm talking about somebody 15:33:26
running a browser plug-in that automates 15:33:27
some tasks. There's browser plug-ins you 15:33:29
can get that automate repetitive tasks in 15:33:33
the browser. 15:33:37
Q. And in your opinion, the other 15:33:37

CONFIDENTIAL

4:16 p.m. Thank you. 16:16:51
MR. MAO: Can I get an expedited 16:16:55 copy? 16:16:57
THE COURT REPORTER: And a 16:17:06 rough? 16:17:06
MR. MAO: Yes, please. 16:17:06
(Time noted: 4:16 p.m.)

__________________________
JONATHAN HOCHMAN

_______________________
Subscribed and sworn to before me this _________ day of _______________ 2022.
______________________
Notary Public

CERTIFICATION

I, BELLE VIVIENNE, a Nationally Certified Realtime Reporter, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 26th day of July 2022.

Belle Vivienne

BELLE VIVIENNE, CRR, CCR, RPR

* * *

JONATHAN HOCHMAN
jonathan@hochmanconsultants.com
July 26, 2022
RE: BROWN VS. GOOGLE LLC
JULY 21, 2022, JONATHAN HOCHMAN, VOLUME II, JOB NO. 5312353

The above-referenced transcript has been completed by Veritext Legal Solutions and review of the transcript is being handled as follows:

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext to schedule a time to review the original transcript at a Veritext office.

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, notating the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Code of Civil Procedure.

__ Waiving the CA Code of Civil Procedure per Stipulation of Counsel - Original transcript to be released for signature as determined at the deposition.

__ Signature Waived – Reading & Signature was waived at the time of the deposition.

_X_ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, notating the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Federal Rules.

__ Federal R&S Not Requested - Reading & Signature was not requested before the completion of the deposition.

RE: BROWN VS. GOOGLE LLC

JONATHAN HOCHMAN, VOLUME II, JOB NO. 5312353

ERRATA SHEET

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

________________________________ _______________

WITNESS Date

Page 618

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.