# Exhibit 3

CONFIDENTIAL

```
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3
 4
 5   CHASOM BROWN, WILLIAM BYATT,
     JEREMY DAVIS, CHRISTOPHER
 6   CASTILLO, and MONIQUE
     TRUJILLO, individually and on
 7   behalf of all other similarly
     situated,
 8
                 Plaintiffs,
 9                                    No.
           vs.                        5:20-cv-03664-LHK-SVK
10
     GOOGLE LLC,
11
                 Defendant.
12   _____/
13
14              -- CONFIDENTIAL --
15
16      VIDEOTAPED DEPOSITION OF RAMIN HALAVATI
17            Remote Zoom Proceedings
18             Zurich, Switzerland
19           Tuesday, January 18, 2022
20
21
22
23   REPORTED BY:
24   LESLIE ROCKWOOD ROSAS, RPR, CSR 3462
25   Pages 1 - 238                   Job No. 5035959
```

Page 1

**Page 2**

```
 1         UNITED STATES DISTRICT COURT
 2         NORTHERN DISTRICT OF CALIFORNIA
 3
 4
 5   CHASOM BROWN, WILLIAM BYATT,
     JEREMY DAVIS, CHRISTOPHER
 6   CASTILLO, and MONIQUE
     TRUJILLO, individually and on
 7   behalf of all other similarly
     situated,
 8
              Plaintiffs,
 9                     No.
         vs.         5:20-cv-03664-LHK-SVK
10
     GOOGLE LLC,
11
              Defendant.
12   _____/
13
14           -- CONFIDENTIAL --
15
16       Videotaped deposition of RAMIN HALAVATI,
17   taken on behalf of the Defendant, Remote Zoom Proceedings
18   from Zurich, Switzerland, beginning at 7:39 a.m. Central
19   European Standard Time and ending at 3:16 p.m. Central
20   European Standard Time, on Tuesday, January 18, 2022,
21   before Leslie Rockwood Rosas, RPR, Certified Shorthand
22   Reporter No. 3462.
23
24
25
```

**Page 3**

```
 1   APPEARANCES:
 2
 3   FOR THE BROWN PLAINTIFFS:
 4       BOIES SCHILLER & FLEXNER LLP
 5       BY: BEKO REBLITZ-RICHARDSON, ESQ.
 6           ERIKA NYBORG-BURCH, ESQ.
 7       44 Montgomery Street, 41st Floor
 8       San Francisco, California 94104
 9       (415) 293-6804 (Mr. Reblitz-Richardson)
10       (215) 873-7264 (Ms. Nyborg-Burch)
11       brichardson@bsfllp.com
12       enyborg-burch@bsfllp.com
13          -and-
14       BY: HSIAO (MARK) C. MAO, ESQ.
15       44 Montgomery Street, 41st Floor
16       San Francisco, California 91401
17       (415) 293-6800
18       mmao@bsfllp.com
```

**Page 4**

```
 1   APPEARANCES (Continued):
 2
 3   FOR THE CALHOUN PLAINTIFFS:
 4       BLEICHMAR FONTI & AULD LLP
 5       BY: ANGELICA M. ORNELAS, ESQ.
 6       555 12th Street, Suite 1600
 7       Oakland, California 94607
 8       (415) 445-4011
 9       aornelas@bfalaw.com
10
11   FOR THE DEFENDANT:
12       QUINN EMANUEL URQUHART & SULLIVAN
13       BY: DR. JOSEF ANSORGE, ESQ.
14       1300 I Street NW, Suite 900
15       Washington, D.C. 20005
16       (202) 538-8000
17       josefansorge@quinnemanuel.com
18          -and-
19       BY: ANGELA KATSIKANTAMIS, ESQ.
20       GmbH
21       Dufourstrasse 29
22       8008 Zurich, Switzerland
23       41-44-253-8000
24       angelakatsikantamis@quinnemanuel.com
```

**Page 5**

```
 1   APPEARANCES (Continued):
 2
 3   Also Present:
 4       Remo Decurtins, Swiss Commissioner
 5       Ralf Uhrich, Esq. (Google counsel)
 6       Scott Slater, Videographer
```

### Page 134

1  subject to the parties' ongoing discussions regarding
2  designations of deposition transcripts.
3      Q.  Mr. Halavati, do you have in front of you
4  Exhibit 15, which is GOOG-BRWN-00701189?
5      A.  Yes, I have it.                    11:31:32
6      Q.  My questions are only going to focus on the
7  comment that you added at the very end on the third page
8  ending 191.
9          Do you see where you wrote: "Currently we are
10 logging all user activities in Incognito mode     11:31:59
11 server-side, and that is more or less linkable to users
12 signed-in data"?
13     A.  Yes, I see that part.
14     Q.  When you wrote: "Currently we are logging all
15 user activities in Incognito server-side," were you   11:32:18
16 referring to Chrome Incognito there?
17     A.  Yes, I was referring to Chrome Incognito.
18         And I hear my echos very much.
19         MR. ANSORGE:  Okay.  Sorry.  In that case, I'll
20 hop on mute.                                      11:32:40
21     Q.  BY MR. REBLITZ-RICHARDSON:  Mr. Halavati, when
22 you wrote: "Currently we are logging all user activities
23 in Incognito server-side," is the "we" in that sentence a
24 reference to Google?
25     A.  Yes, that is reference to Google, not to Chrome.  11:32:58

### Page 135

1      Q.  And when you wrote: "Currently we are logging
2  all user activities in Incognito server-side," what did
3  you mean by "logging"?
4      A.  Unfortunately, this is an unaccurate sentence
5  and probably it was based on the previous discussion.  If  11:33:17
6  a user navigates to a website that is entirely unrelated
7  to Google, nothing is logged by Google about that website
8  navigation, even in regular mode.  But let's focus on
9  Incognito.
10         But if user goes to a Google website in     11:33:40
11 Incognito mode, everything that Google user does that is
12 logged like regular user, a regular new user.  So logging
13 is not stopped at all.
14         And in cases that a third par- -- another
15 website sends data to Google, Google also treats that as  11:34:01
16 a regular new user and logs the data.
17     Q.  When you wrote: "Currently we are logging all
18 user activities in Incognito server-side," did that
19 include user activities on non-Google websites that use
20 Google services such as Ads and Analytics?       11:34:23
21         MR. ANSORGE:  Objection.  Form and foundation.
22         THE WITNESS:  I don't know about how Google
23 Analytics and Ads work and to what level they are logging
24 the information that they receive from other websites.
25     Q.  BY MR. REBLITZ-RICHARDSON:  And so when you  11:34:45

### Page 136

1  wrote: "Logging all user activities in Incognito
2  server-side," were you only referring to user activities
3  on Google websites?
4          MR. ANSORGE:  Objection.  Form.
5          THE WITNESS:  Let me read quickly the entire   11:35:04
6  discussion.
7          Okay.  Could you please repeat the question.
8      Q.  BY MR. REBLITZ-RICHARDSON:  When you wrote: "We
9  are logging all user activities in Incognito mode
10 server-side," were you only referring to user activities  11:37:43
11 on Google websites?
12         MR. ANSORGE:  Same objections.
13         THE WITNESS:  This discussion was in the context
14 of signing in on Google properties like in Gmail or Maps,
15 YouTube, in Chrome Incognito mode.  So what I was  11:38:07
16 referring to was data that is logged in these websites or
17 applications while user is using them Incognito mode.
18     Q.  BY MR. REBLITZ-RICHARDSON:  And so with respect
19 to those Google applications, Google logs all user
20 activities in Incognito mode server-side at Google; is  11:38:27
21 that right?
22     A.  Yes, we do not -- we did not and we do not tell
23 those websites, like Gmail and Maps, that users is
24 Incognito mode so they can't treat user differently when
25 users is Incognito mode.                          11:38:49

### Page 137

1      Q.  And what did you mean: "And that is more or
2  less linkable to users' signed in data"?
3      A.  Well, that was a wrong assessment by me at the
4  time, that I thought those logs are in a state that are
5  connectable to users' regular mode data.           11:39:10
6          In certain cases, like when user really logs
7  into a Google website in Incognito mode, we -- the data
8  is linked.  Because from user's point of view, user has
9  signed into that website, like user has signed into
10 Gmail, and whatever that user does in Gmail is expected  11:39:33
11 to affect what user does in Gmail in regular mode on
12 other computer or on the same device.
13         So that is a shared data, and this is the part
14 that it is more linkable.  But if user does not sign into
15 a Google property in Incognito, I was under the    11:39:53
16 impression that we can somehow join the data on Google
17 servers.
18         But in later discussions, people who knew more
19 information about Google logs or -- yeah, how these
20 things work, told me that it is not that much possible.   11:40:12
21     Q.  So at this point in time, in January 2020, you
22 believed that it was possible for Google to link
23 signed-out Incognito mode data with signed-in Incognito
24 mode data; is that correct?
25     A.  Yes.  I wrongly believed so.              11:40:41

**Page 138**

1  Q. And at some later point in time, you changed
2  your opinion and decided that was not possible; is that
3  right?
4  A. As far as I remember, yes. But I don't remember
5  the exact reasoning or details of the decision in next    11:40:59
6  steps.
7  Q. And who told you that that was incorrect?
8  A. We had -- let me remember.
9  The main point of contact that I remember in
10 this discussion was Mr. Adhya, who actually -- well,      11:41:32
11 actually SinRastro was a team or a group of people who
12 were the contact point between all these different Google
13 Incognito products. So most of these questions went
14 through him to other teams, and he had discussions with
15 all involved parties. So I guess it came from him, but I  11:41:56
16 don't exactly recall.
17 Q. So in January 2020, you believed that signed-out
18 Chrome Incognito mode data collected by Google could be
19 linked to users' signed-in data, but some time after
20 that, Mr. Adhya told you that was incorrect?              11:42:22
21 MR. ANSORGE: Objection. Mischaracterizes prior
22 testimony.
23 THE WITNESS: I don't remember exactly when my
24 opinion was changed, and I guess it was through
25 discussions with him, but I don't recall the details.     11:42:39

**Page 139**

1  Q. BY MR. REBLITZ-RICHARDSON: Did those
2  discussions occur after this lawsuit was filed in
3  June 2020?
4  A. I don't remember hearing about this lawsuit at
5  the time, and as far as I remember, our discussions with  11:43:04
6  Mr. Adhya on this issue started from the requirement that
7  you previously went into that Mr. Pichai had made an
8  announcement that Google products can have better
9  cooperation in Incognito mode, and we were considering
10 how we can make it possible, like if we tell Google       11:43:26
11 products that user is in Chrome's Incognito mode, can it
12 be helpful or not.
13 So I'm almost confident that these activities
14 did not start based on this lawsuit, and as far as I
15 know, we had another objective in mind.                   11:43:46
16 Q. I'm trying to understand the timing of when this
17 other individual, whether -- whether it was Mr. Adhya or
18 someone else, told you that.
19 Was that in or after June 2020? Remember this
20 email -- this exchange is from January 2020.              11:44:05
21 MR. ANSORGE: Objection. Asked and answered.
22 Q. BY MR. REBLITZ-RICHARDSON: Do you recall?
23 A. Yeah. I don't recall.
24 Q. Okay. Let's look at Exhibit 16. Exhibit 16 is
25 GOOG-BRWN-00184883.                                       11:44:28

**Page 140**

1  Do you have that in front of you?
2  A. Yes.
3  Q. And this is a continuation of the last document,
4  where you once again wrote: "Currently we are logging
5  all user activities in Incognito mode server-side, and    11:44:45
6  that is more or less linkable to users' signed-in data."
7  Do you see that?
8  A. Let me take a look at that document.
9  Q. It's just the second comment on the first page
10 with your name.                                           11:45:01
11 A. Oh, yes. I see that part.
12 Q. And then Mr. McClelland responded: "Having
13 flip-flopped another eight times this morning, I tend to
14 agree with Ramin."
15 Ramin, that's you; right?                                 11:45:15
16 MR. ANSORGE: Mr. Halavati, you're well within
17 your rights to familiarize yourself with the document.
18 THE WITNESS: Yes. Let me read this part.
19 Okay. Yes, he was pointing to me.
20 Q. BY MR. REBLITZ-RICHARDSON: And he was agreeing  11:47:35
21 with you; correct?
22 A. Yes.
23 Q. And do you see where he wrote: "The
24 inability" -- this is in the first paragraph of
25 Mr. McClelland's comment near the end -- "the inability   11:47:44

**Page 141**

1  to control data logging to the level we desire is an
2  independent problem and one that we should solve
3  regardless."
4  A. I see that part.
5  Q. Did you agree with that statement?                     11:47:59
6  A. I don't remember the exact details of what he
7  was pointing to.
8  Q. Were there discussions regarding Google giving
9  users the ability to control data logging with respect to
10 Google servers in Incognito mode?                         11:48:22
11 A. While we were discussing the possibilities to
12 solve this problem, we also should have considered the --
13 the technical restrictions on solve the problem. And one
14 side of it is definitely in Google logs and what the
15 infrastructure at Google can do.                          11:48:49
16 I don't recall being in these discussions myself
17 while -- yeah, I really don't recall anything. And I
18 don't remember what specific functional limitations Rory
19 was pointing to. But at least at the time, I did not
20 object to his assessment.                                 11:49:14
21 Q. Do you have any understanding as to his
22 statement: "Our server-side ability to control data
23 logging is lagging"?
24 MR. ANSORGE: Objection. Foundation.
25 THE WITNESS: I cannot say what he meant          11:49:30

**Page 234**

```
 1    I declare under the penalty of perjury under the
 2  laws of the State of California that the foregoing is
 3  true and correct.
 4    Executed on _____, 2022, at
 5  _____, _____.
 6
 7
 8
 9
10
11        _____
12         SIGNATURE OF THE WITNESS
13
```

**Page 235**

```
 1  STATE OF CALIFORNIA    ) ss:
 2  COUNTY OF MARIN        )
 3      I, LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462, do
 4  hereby certify:
 5      That the foregoing deposition testimony was
 6  taken before me at the time and place therein set forth
 7  and at which time the witness was administered the oath;
 8      That testimony of the witness and all objections
 9  made by counsel at the time of the examination were
10  recorded stenographically by me, and were thereafter
11  transcribed under my direction and supervision, and that
12  the foregoing pages contain a full, true and accurate
13  record of all proceedings and testimony to the best of my
14  skill and ability.
15      I further certify that I am neither counsel for
16  any party to said action, nor am I related to any party
17  to said action, nor am I in any way interested in the
18  outcome thereof.
19      IN WITNESS WHEREOF, I have subscribed my name
20  this 20th day of January, 2022.
25         LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462
```

**Page 236**

```
 1  MR. RAMIN HALAVATI
 2  rhalavati@google.com
 3                January 20, 2022
 4  RE: CHASOM BROWN vs. GOOGLE LLC
 5  1/18/2022, RAMIN HALAVATI, JOB NO. 5035959
 6  The above-referenced transcript has been
 7  completed by Veritext Legal Solutions and
 8  review of the transcript is being handled as follows:
 9  __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext
10     to schedule a time to review the original transcript at
11     a Veritext office.
12  __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF
13     Transcript - The witness should review the transcript and
14     make any necessary corrections on the errata pages included
15     below, noting the page and line number of the corrections.
16     The witness should then sign and date the errata and penalty
17     of perjury pages and return the completed pages to all
18     appearing counsel within the period of time determined at
19     the deposition or provided by the Code of Civil Procedure.
20  __ Waiving the CA Code of Civil Procedure per Stipulation of
21     Counsel - Original transcript to be released for signature
22     as determined at the deposition.
23  __ Signature Waived - Reading & Signature was waived at the
24     time of the deposition.
```

**Page 237**

```
 1  _x_ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF
 2     Transcript - The witness should review the transcript and
 3     make any necessary corrections on the errata pages included
 4     below, noting the page and line number of the corrections.
 5     The witness should then sign and date the errata and penalty
 6     of perjury pages and return the completed pages to all
 7     appearing counsel within the period of time determined at
 8     the deposition or provided by the Federal Rules.
 9  __ Federal R&S Not Requested - Reading & Signature was not
10     requested before the completion of the deposition.
```