# Ansorge Declaration

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, *et al.*, on behalf of themselves and all others similarly situated,,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**DECLARATION OF JOSEF ANSORGE IN SUPPORT OF GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: September 20, 2022<br>Time: 2:00 p.m.<br>Location: Courtroom 1 – 4th Floor |

I, Josef Ansorge, declare as follows:

1. I am of counsel at Quinn Emanuel Urquhart & Sullivan LLP, Google's outside counsel in this litigation. I submit this declaration in support of Google's Opposition to Plaintiffs' Motion for Class Certification. I make this declaration of my own personal, firsthand knowledge, and if called as a witness, I could and would testify competently thereto.

2. On April 30, 2021, the Court ordered Google to produce "authenticated" and "unauthenticated" data, "provided Plaintiffs have provided the necessary device information, as well as unauthenticated data" (*i.e.*, cookie values) needed to locate data in Google's systems. Dkt. 147-1 at 3.

3. Locating data that may have been associated with Plaintiffs' Private Browsing Mode ("PBM") sessions ("unauthenticated data") involved a complex six-month search process managed by a technical Special Master and requiring multiple iterations of trial-and-error searches.

4. To search for data from Plaintiffs' and their experts' private browsing sessions, (i) Plaintiffs provided to Google unauthenticated cookie values they claimed they had copied from their browsers, (ii) Google engineers decrypted the cookie values to obtain the ID stored in the cookie, (iii) Google engineers searched for the IDs in different data storage systems, and (iv) Google produced the associated data to Plaintiffs. In multi-step iterative searches, Plaintiffs provided more than 1,500 cookie values set on their browsers. Plaintiffs did not affirmatively confirm whether all of the 1,500 provided cookie values were pulled from browsers in private browsing mode, although the purpose of the exercise was to obtain data from PBM sessions. Google engineers performed each of the three steps above for these values, ultimately searched for data associated with those cookie values across more than ▮ data sources, and Google produced the data associated with those cookie values.

/ / /

/ / /

/ / /

/ / /

/ / /

5.     On July 13, 2021, the Court appointed Douglas Brush as Special Master. Dkt. 220. On the same day, the Court referred discovery disputes P6,[1] P7,[2] and P16[3] to the Special Master. Dkt. 221.

6.     On August 12, 2021, the Court also referred discovery disputes P3[4] and P14[5] to the Special Master. Dkt. 242. Thereafter, the parties and the Special Master spent several months negotiating various processes for searching for and preserving data.

7.     On October 17, 2022 Google provided a diagram to Plaintiffs and the Special Master describing the data flow at issue in *Brown v. Google*. A true and correct copy of that diagram is attached hereto as **Exhibit 1**.

8.     On October 20, 2021, the Special Master set forth a five-step plan for Google to run iterative searches in an attempt to locate, *inter alia*, data associated with Plaintiffs' browsing activity from PBM sessions. Dkt. 299-1 at 10. In the same report, the Special Master recommended denying Plaintiffs' request for clean-room access to Google's systems and access to nonpublic Google source code. Dkt. 299-1 at 2.

9.     On November 12, 2021, Magistrate Judge van Keulen conducted a *de novo* review of the Special Master's recommendation. Magistrate Judge van Keulen ordered Plaintiffs to propose search terms to the Special Master for searches in "no more than" ■ data sources. Dkt. 331 at 9. The Court also ordered that Plaintiffs could update search criteria for three additional search

---

[1] The P6 discovery dispute related to "Class member identification: The parties have a dispute regarding Plaintiffs' RFP No. 10: "Documents sufficient to identify all alleged class members, including all electronic or physical address information associated with alleged class members." Dkt. 147-1 at 2.
[2] The P7 discovery dispute related to "Logged in and logged out: The parties have a dispute regarding what constitutes logged in and logged out behavior." Dkt. 147-1 at 2.
[3] The P16 discovery dispute related to Plaintiffs' RFP 120: "Documents sufficient to identify, during the Class Period, Chrome web browser communications that did not contain any X-Client Data Header." Dkt. 177.
[4] The P3 dispute related to "Google's production of Plaintiffs' data: The parties have a dispute regarding Plaintiffs' RFP No. 18: 'Documents concerning Plaintiffs, including Plaintiffs' use of Google services, all data collected by Google from and regarding Plaintiffs, and Google's use of all data collected by Google from dond regarding Plaintiffs.'" Dkt. 191-1 at 2.
[5] The P14 dispute related to "Plaintiffs' request for clean-room access to Google systems and nonpublic source code." Dkt. 331 at 2.

iterations. *Id*. In the same order, Magistrate Judge van Keulen denied Plaintiffs' requests for access to non-public source code and access to Google's systems via a clean-room (P14). "Pursuant to its de novo review, the Court finds that the Special Master's factual conclusions regarding the overbreadth of the Plaintiffs' requests for access to nonpublic source code and access to Google's systems via a clean-room are well taken and adopts those findings." Dkt. 331 at 2.

10. To search for data associated with Plaintiffs' PBM sessions under the Special Master's guidance, Google:

- Participated in 24 virtual conferences with Plaintiffs before the Special Master, including four meetings where seven Google engineers answered deposition-style questions and performed live iterative searches;

- Disclosed ▮ potentially relevant data sources, provided relevant information including field names and descriptions, and ran searches across seven sources using Plaintiffs' identifiers;

- Ran searches for more than 900 search terms/cookie values across ▮ different data sources; produced tens of thousands of pages of decrypted cookies, scripts, and data associated with GAIA IDs, IDE cookie values, NID cookie values, Analytics CID values, and UMA IDs, provided by consenting Plaintiffs and Plaintiffs' experts, including from logs that contain information confidential to third-party publishers, which required reasonable notice to such publishers, for Plaintiffs' first set of searches pursuant to the November 12 order;

- Ran additional searches for more than ▮ identifiers across ▮ data sources; provided tens of thousands of pages of decrypted cookies, scripts, and data associated with GAIA IDs, PPIDs, IDE cookie values, NID cookie values, Analytics CID values, UMA IDs, UID values, and combination of IP address and User Agent values, for Plaintiffs' second set of searches pursuant to the November 12 order;

- Ran additional multi-step searches for more than ▮ identifiers across ▮ data sources, provided ▮▮▮ of pages of decrypted cookies, scripts, and data associated with GAIA IDs, PPIDs, IDE cookie values, NID cookie values, Analytics CID values, UMA IDs, UID values, and combinations of IP addresses and User Agent values, for Plaintiffs' third set of searches pursuant to the November 12 order.

- Produced all preserved data from logs that do not contain confidential third-party information, totaling more than ▮▮▮ and

- Sent multiple letters to the Special Master and Plaintiffs providing further information, explaining concepts and processes, and responding to various factual questions.

11. Throughout the Special Master process, Plaintiffs asked that Google search for combinations of IP addresses (including IPv4 and IPv6) and User Agent strings to identify user data—a practice known as "fingerprinting." The Special Master denied searches using IPv4

1  addresses combined with User Agent strings because IPv4 addresses are "not that unique." SM Hrg.

2  Tr., 83:12-16, April 14, 2022. As to IPv6 and User Agent combinations, the Special Master limited

3  the searches to the values for which Plaintiffs provided attestations that they are the only individuals

4  who used the device associated with their provided User Agent strings at the provided IPv6

5  addresses on a specific date and time. At the April 14, 2022 hearing, the Special Master explained

6  his reasoning for limiting searches to IPv6 and User Agent strings, with attestations, as follows:

> "IP addresses are not the named plaintiffs. It's the individuals themselves that we have to map to these actions. […] [I]f there's a search result with that IPv6, with that user agent string, on that date and time, and we decrypt any of the IDs that are the result of that, it's improbably that it's anybody else other than the named plaintiff. […] So it's -- if we can narrow down on the IPv6s, because it's associated with the device, and show me confidence for each one of those sessions that are listed, you know, for the IP address UA … Mr. Brown was the one doing it from that IPv6 address on this device, then we have some confidence that it's the person, not the machine."

*Id.* at 83:22-84:24. A true and correct copy of excerpts of the April 14, 2022 Special Master hearing transcript is attached hereto as **Exhibit 2**.

12. Implementing Plaintiffs' fingerprinting search requests under the Special Master's guidance required multiple Google engineers to (i) run combinations of User-Agents and IPv6 addresses across an ads log, (ii) decrypt associated IDs, (iii) use those decrypted associate IDs to search 31 other log sources, (iv) decrypt associated IDs stored in those log sources, and (v) used those decrypted IDs as additional search parameters.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed in Washington, D.C. on August 5, 2022.

*/s/ Josef Ansorge*
Josef Ansorge