# Proposed Order

# Redacted Version of Document Sought to be Sealed

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-3664-YGR-SVK<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' RENEWED REQUEST TO DEPOSE GOOGLE CEO SUNDAR PICHAI**<br><br>The Honorable Susan van Keulen |

Plaintiffs Chasom Brown, William Byatt, Jeremy Davis, Christopher Castillo, and Monique Trujillo ("Plaintiffs") filed a Renewed Request to Depose Google CEO Sundar Pichai (Dkt. __, "Motion"). Having carefully considered the briefing, arguments, and documents submitted, and for the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion.

I.  **Background**

On December 27, 2021, this Court granted Plaintiffs' request to depose Mr. Pichai after carefully reviewing the parties' submissions, including documents submitted in support. Dkt. 365. Although "many of the cited documents" did "not appear to bear any connection to Mr. Pichai," some documents nonetheless "establish[ed] that specific relevant information was communicated to, and possibly from, Mr. Pichai." *Id.* Accordingly, the Court granted Plaintiffs a limited deposition of Mr. Pichai of 2 hours. *Id.*

On January 10, 2022, Google filed a motion seeking relief from this Court's Order. Dkt. 382. On April 4, 2022, Judge Gonzalez Rogers entered an order finding that "[t]he order at issue does not consider whether Mr. Pichai has 'unique or superior personal knowledge'" and does not "address whether plaintiffs exhausted all less intrusive means of discovery with respect to Mr. Pichai." Dkt. 523. Judge Gonzalez Rogers noted the record was not sufficient for the Court "to undertake the analysis itself" but reversed and remanded the decision "for further proceedings consistent with this order" and "without prejudice to renewing the request if the appropriate foundation is established." *Id.*

On April 29, 2022, Plaintiffs filed an administrative motion notifying the Court they could (with the Court's permission) submit additional evidence further establishing the requisite foundation. Dkt. 565. In their motion, Plaintiffs noted their concerns "with issues Google raised that have further delayed the scheduling of Ms. Borsay's deposition," and requested permission to submit a renewed request to depose Mr. Pichai within 21 days of Ms. Borsay's deposition. Dkt. 565. The Court asked for an update on Ms. Borsay's deposition, Dkt. 596, and after receiving that update, entered an order requiring the parties complete Ms. Borsay's deposition by June 30, 2022, and allowing Plaintiffs to submit a brief renewing their request to depose Mr. Pichai. Dkt. 602. Plaintiffs filed that brief, along with a supporting declaration and exhibits (including document metadata), on July 21, 2022. Dkt ____. Consistent with

Judge Gonzalez Rogers' order, the Court now makes factual findings and legal conclusions showing the appropriate foundation is established for the deposition of Mr. Pichai.

## II.     Legal Standard

"A party seeking to prevent a deposition" carries a *heavy* burden to show why discovery should be denied." *Khan v. Boohoo.com USA, Inc.*, CV2003332GWJEMX, 2021 WL 3882969, at *3 (C.D. Cal. July 28, 2021) (emphasis added) (internal quotation marks omitted). "[W]hen a witness has personal knowledge of facts relevant to the lawsuit," like Mr. Pichai does here, "even a corporate president or CEO is subject to deposition." *WebSideStory, Inc.v. NetRatings, Inc.*, No. 06CV408 WQH(AJB), 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *In re Google Litig.*, No. C 08-03172 RMW PSG, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011); *see also Liberty Mut. Ins. Co. v. Superior Ct.*, 10 Cal. App. 4th 1282, 1286 (1992) (party seeking to depose "a corporate president or other official at the highest level of corporate management ["apex"] … [must] show[] good cause that the official has unique or superior personal knowledge of discoverable information").

For the first consideration, courts have stressed that a party "need not prove <u>conclusively</u> that the deponent <u>certainly</u> has unique non-repetitive information," but rather that the "corporate officer <u>may</u> have any first-hand knowledge of relevant facts." *Finisar Corp. v. Nistica, Inc.*, No. 13-CV-03345-BLF(JSC), 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) (emphasis added); *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2013 WL 3884254, at *2 (N.D. Cal. July 26, 2013) (party "not required to prove that [executive] certainly has such information," only that he "may" have)). As for the second consideration, "exhaustion of other discovery routes" is an important "consideration, not a requirement." *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 939287, at *5 (N.D. Cal. Mar. 6, 2014) (internal quotation marks omitted).

### III. Analysis

Plaintiffs have submitted extensive evidence establishing that (1) Mr. Pichai has unique, superior, and personal knowledge about key issues in this case, including the perpetuation of known private browsing misconceptions, and that (2) Plaintiffs exhausted less intrusive means of discovery for this information. The documents Plaintiffs submitted reference Mr. Pichai either in the main text or in the metadata (showing Mr. Pichai received the document as part of one or more email distribution lists included in the emails).[1] Plaintiffs have also deposed over 20 former and current Google employees, including the recent deposition of Sabine Borsay, who wrote about critical decisions and statements by and to Mr. Pichai regarding Incognito. Motion at 1. Google witnesses repeatedly testified they had no recollection of what Mr. Pichai considered, said, or decided with respect to these key issues.

The chart below summarizes the evidence establishing Mr. Pichai's unique, superior, and personal knowledge about facts relevant to this case and Plaintiffs' exhaustion of less intrusive means to obtain this information.

| Mr. Pichai's Unique, First-Hand & Superior Personal Knowledge & Involvement in Key Events & Decisions | Plaintiffs' Exhaustion of Less Intrusive Means to Obtain This Information Without Mr. Pichai's Deposition |
|---|---|
| **2015 "Sundar" Presentation Regarding Incognito "Misconceptions"**: A 2015 Google study called "Perceptions of Google Chrome Incognito" reported users had "misconceptions" about Incognito that "could put their privacy at risk." Ex. A (emphasis added).[2] This study "contributed toward the Privacy/Policy presentation to Sundar." *Id.* (emphasis added).<br><br>This document indicates Mr. Pichai had knowledge in 2015 about Google's collection of users' private browsing without user consent. | Plaintiffs exhausted less intrusive means of discovery, including through requests for production (e.g., RFPs 27 (Ex. B), 169 (Ex. C)) and through the deposition of multiple lower-level Google employees, to obtain information about the "Privacy/Policy presentation to Sundar" without success. Motion at 1.<br><br>Plaintiffs were unable to identify any produced copy of the "Privacy/Policy presentation to Sundar." *Id.*<br><br>Plaintiffs also asked Google employees Sabine Borsay, Chris Palmer, and Adrienne Porter Felt about this presentation, but they were unable to provide information about what was presented to Mr. Pichai, his feedback, and his decisions. |

---

[1] With the exception of Ex. M, submitted documents reference Mr. Pichai either in the main text or in the metadata. In Plaintiffs' last submission, Plaintiffs did not include metadata. Motion at 1 n.1.

[2] All exhibit references in this submission are exhibits to the Declaration of Rossana Baeza.

| | |
|---|---|
| | Ex. D, Borsay Tr. 205:13-17; Ex. E, Palmer Tr. 86:6-14; Ex. F, Felt Tr. 60:19-61:22. |
| **2016 "Sundar Level Decision" to Expand Incognito Branding Despite "Concerns" and User "Confusion"**: In 2016 emails, Ms. Borsay referenced a "Sundar review" that appeared to involve Incognito "branding." Ex. G (emphasis added). Ms. Borsay wrote "[a]ll the years of research hopefully reflect how much we're actually struggling with the Incognito branding and misconceptions it causes." *Id.* | Plaintiffs exhausted less intrusive means of discovery, including through requests for production (e.g., RFPs 33 (Ex. B), 169 (Ex. C)) and through the deposition of lower-level Google employees, to obtain information about the "Sundar level decision" to expand Incognito branding despite expressed "concerns" and user "confusion." Motion at 2. |
| A later email from Ms. Borsay to Google employee Chris Palmer noted "concerns" raised "with Sundar" relating to expanding the Incognito brand to other Google products and instructed him to follow up with "Sabine and Tyler in person to hear about the interaction" with Mr. Pichai." Ex. H (emphasis added). Mr. Palmer separately wrote that Mr. Pichai expanding the Incognito brand was "going to exacerbate the confusion, which is already bad" and proposed they "re-brand Incognito as something more honest and understandable" and "try to get Sundar to reconsider." Ex. I (emphasis added). | Plaintiffs were unable to identify any document revealing what discussions Google employees had with Mr. Pichai about Incognito branding, including any studies he may have received for assessment, how Mr. Pichai responded, or the basis for this "Sundar level decision." *Id.*

None of the witnesses Plaintiffs deposed, including Mr. Palmer, Ms. Felt, and Ms. Borsay, were able to provide that information. Ex. E, Palmer Tr. 113:23-114:4 (testifying he "d[id]n't know what concerns were raised" with Mr. Pichai); Ex. F, Felt Tr. Felt Tr. 122:14-24 (testifying she "d[id]n't know" what concerns or research studies were shared with Mr. Pichai or who participated in the discussions with him). |
| Ms. Borsay also wrote that Mr. Pichai was the one who had "brought up the idea" to expand the Incognito brand, that they shared "concerns" "in-depth, and all user research we've done over the last 2 years," and that ultimately, "[i]t was a Sundar level decision" to go with it. Ex. J (emphasis added). | Ms. Borsay, for example, was evasive when questioned if Mr. Pichai proposed to expand the Incognito brand. Even though she reported this fact to other Google employees, she testified she "d[id]n't know who proposed that branding" and that she "wasn't a part of it" and therefore "cannot know what happened in that meeting." Ex. D, Borsay Tr. 258:17-260:23. She went as far as to say she did not know the "Sundar" she had previously referenced, *id.*, Borsay Tr. 252:18-254:5, despite testifying the day earlier that the only "Sundar" she knows is Sundar Pichai. Ex. K, *Calhoun* Borsay Tr. 43:12-14. Like the other witnesses, Ms. Borsay did not know what concerns were shared with Mr. Pichai or what information he considered in making his decision. Ex. D, Borsay Tr. 266:8-20, 262:3-11, 253:7-25 (testifying she "d[id]n't know" what the "concerns" in her |
| These emails establish that Mr. Pichai has superior, unique, and first-hand knowledge of the "concerns" Google employee raised regarding the Incognito brand, his response to those concerns (if any), and the basis for his decision to expand the Incognito brand despite known user misconceptions. | |

| | |
|---|---|
| | email "exactly refer to" and that she had "no idea" what Mr. Pichai considered). |
| **2019 Pichai & ▮▮▮▮▮"**: A February 2019 email noted a March 2019 meeting with Mr. Pichai to discuss ▮▮▮▮▮ in line with the thinking from Chris Palmer and others." Ex. L.[3] After that meeting, Google employees reported that Mr. Pichai had "[a] lot of enthusiasm for ▮▮▮▮▮," Ex. N, and "was particularly excited" about "[a]dding opt-in anti-tracking /privacy controls." Ex. O.<br><br>These documents establish Mr. Pichai has first-hand knowledge about Google's efforts to modify Incognito mode's functionality in an attempt to match users' expectations of Incognito mode protections, and that he likely has knowledge about why Google never implemented those enhancements. | Plaintiffs exhausted less intrusive means of discovery through the deposition of lower-level Google employees to obtain information about this presentation to Mr. Pichai and "▮▮▮▮▮" proposal." Motion at 2-3.<br><br>Google employees, such as Rory McClelland and AbdelKarim Mardini, were unable to testify about the specifics of "▮▮▮▮▮" referenced in the emails, or why Mr. Pichai was reportedly "enthusiastic" about those changes. Ex. P, McClelland Tr. 118:11-18 ("I am speculating"), *id.* 120:8-10 ("I don't know, I wasn't in the meeting"); *see also* Ex. Q, Mardini Tr. 317:12-319:18 ("I don't recall exactly what the term ▮▮▮▮▮' refers to in this email").<br><br>Mr. Palmer, whose "thinking" contributed to the presentation, was unable to provide insight into this presentation. Ex. E, Palmer Tr. 187:7-189:7 ("I don't recall knowing about this").<br><br>During the *Calhoun* deposition of Chetna Bindra (who reported Mr. Pichai had "[a] lot of enthusiasm for ▮▮▮▮▮"), Ms. Bindra testified she did "not know how to describe ▮▮▮▮▮" and did not know at all what it was. Ex. R, *Calhoun* Bindra Tr. 218:11-15. |
| **2019 Pichai & No Incognito "Spotlight"**: In April 2019, Google employee AbdelKarim Mardini reported that Google's Chief Marketing Officer Lorraine Twohill stated Incognito "might need rebranding." Ex. S. Mr. Mardini then reported there would be no announced changes at Google's I/O event to Incognito's "iconography/ rebranding" because "<u>Sundar didn't want to put incognito under the spotlight</u>." *Id.* (emphasis added).<br><br>These documents establish that Mr. Pichai has superior, unique, first-hand knowledge of why he chose to hide Google's efforts to rebrand Incognito during Google's I/O event. | Plaintiffs exhausted less intrusive means of discovery through the depositions to obtain information about why Google tried to keep Incognito out of the spotlight during this public event. Motion at 3.<br><br>Mr. Mardini testified he either did not know or could not remember why Mr. Pichai did not want to put Incognito under the spotlight, whether he had any discussions with any other Google employees discussing Mr. Pichai's reasons, or whether there were any written minutes of the meeting where Mr. Pichai made this assertion. Ex. Q, Mardini Tr. 334:21-335:11, 336:13-20. Plaintiffs also questioned |

---

[3] The "▮▮▮▮▮" proposed by Mr. Palmer were detailed in a presentation titled "The Incognito Problem." Ex. M.

| | |
|---|---|
| | Ms. Twohill about this, and she testified she "d[id]n't remember all the details" and testified generally that Google was "only putting a spotlight on new announcements and new features at I/O." Ex. T, Twohill Tr. 82:14-83:4. |
| **2019 Pichai & Incognito "Known Misconceptions"**: An April 2019 "Incognito Comms" document containing "Sundar Talking Points" warned Mr. Pichai to not use the word "private" to describe Incognito due to the "risk of exacerbating known misconceptions about protections Incognito mode provides." Ex. U (emphasis added).<br><br>This document shows Mr. Pichai likely has superior, first-hand knowledge about "known misconceptions" regarding Incognito. | Plaintiffs exhausted less intrusive means of discovery by deposing Mr. Mardini, the custodian of this document. Motion at 3. Mr. Mardini testified he did "not know" if Mr. Pichai reviewed those comms talking points, could "not remember" if he provided feedback in connection with preparation of this document, and could not identify anyone who provided input. Ex. Q, Mardini Tr. 327:24-328:17. No deponents were able to provide any information regarding Mr. Pichai's input into or response to this key document regarding Incognito "known misconceptions." |
| **2019 Pichai & Incognito Regulator "Promise"**: Internal Google emails from July 2019 email discuss Mr. Pichai's "promise" to regulators concerning Incognito functionality changes where "Google stops logging anything in Chrome incognito mode or private browsing in general." Ex. V.<br><br>This document shows Mr. Pichai has first-hand, superior knowledge about promises he made to regulators concerning changes to the functionality of Incognito mode, and whether Mr. Pichai ensured Google abided by those promises. | Plaintiffs exhausted less intrusive means of discovery, such as by deposing Google employee Ramin Halavati about this document. Motion at 3-4.<br><br>Mr. Halavati could not recall what this was referring to, or what Mr. Pichai promised. Ex. W, Halavati Tr. 99:11-100:2.<br><br>Plaintiffs also questioned another Google employee (Sammit Adhya) who was involved in responses to regulator inquiries, including how Incognito works across Google services, but he testified he was not involved in any responses to regulators concerning how Incognito works specifically for Chrome. Ex. X, Adhya Tr. 104:9-105:15. |
| **2019 Pichai & Incognito Privacy "Towards Google"**: An October 2019 presentation (from Google's custodial files) reported that "Sundar" wanted to change Incognito to "provide privacy towards Google (vs. only local privacy)." Ex. Y.<br><br>This document establishes Mr. Pichai has first-hand, superior knowledge about his desire to change Incognito to provide privacy towards Google, and why Google never made those changes. | Plaintiffs exhausted less intrusive means of discovery through deposition testimony. Motion at 4.<br><br>When asked about a similarly worded document from his custodial files, Mr. Mardini was unable to testify as to why Mr. Pichai wanted Incognito to provide privacy towards Google, but then suggested someone dropped Mr. Pichai's name there only "as a technique" to make others "maybe prioritize the request." Ex. Q, Mardini Tr. 371:5-373:5. |

| | |
|---|---|
| **2021 Pichai & Incognito "Not Truly Private"**: In 2021, Ms. Twohill emailed Mr. Pichai proposing that Google change Incognito's functionality to "[m]ake Incognito mode truly private" because Incognito was "not truly private, requiring really fuzzy, hedging language that is almost more damaging." Ex. Z.<br><br>This proposal, sent to Mr. Pichai, shows Mr. Pichai likely has information about whether Google implemented those changes, and also unique, first-hand information about his response to this proposal. | Plaintiffs exhausted less intrusive means of discovery through the deposition of Ms. Twohill, the person who sent the email to Mr. Pichai. Motion at 4. Ms. Twohill could not say whether the Incognito functionality changes she proposed to Mr. Pichai were implemented and could not provide any other information regarding Mr. Pichai's response to this email. Ex. T, Twohill Tr. 120:5-21 (testifying she was "not sure" if Google implemented the proposed functionality changes to make Incognito "truly private"), *id.* 131:17-19 (testifying she had "no idea" about Mr. Pichai's response to her proposal). |
| **Pichai's Involvement in Early Development of Incognito**: Before he became CEO, Mr. Pichai led the team that developed Chrome with Incognito. He was one of two people consulted in 2008 about the "scary precedent" of other browsers enabling third-party cookie "blocking enabled by default." Ex. AA. In 2009, when Google employees discussed how other browsers' privacy features "may be an attack on Google ads or analytics," Mr. Pichai instructed "dont discuss more in this thread." Ex. BB. Mr. Pichai sent an internal email assuring Google employees "we dont need to worry abt any impact on adsense, analytics etc." Ex. CC.<br><br>These documents establish Mr. Pichai likely has direct knowledge about Google's development Incognito mode and information inaccessible through other means | Plaintiffs exhausted less intrusive means of discovery through the deposition of Brian Rakowski, who was also involved in the development of Incognito mode. Motion at 4-5.<br><br>Mr. Rakowski could not recall when exactly Google came up with the name "Incognito," who came up with the idea to name it "Incognito," what alternative names Google considered, or who could have submitted suggestions in that process. Ex. DD, Rakowski Tr. 20:12-22:24.<br><br>Mr. Rakowski—the second person consulted with Mr. Pichai about concerns with other browsers blocking third-party cookie-blocking—was also unable to recall if he ever weighed in on the issue or to provide a substantive answer on what "scary precedent" Google was worried about at that time. Ex. DD, Rakowski Tr. 212:14-214:25. |

The evidence establishes Mr. Pichai has or more than likely has unique, superior, and personal knowledge of issues relevant to this case, and that Plaintiffs have sought this information through less intrusive means. Because the evidence far exceeds what has been deemed sufficient to depose CEOs in many other cases, it warrants at least 3.5 hours of deposition testimony. *See, e.g.*, *Wonderland Nurserygoods Co. v. Baby Trend, Inc.*, 514CV1153JWHSPX, 2022 WL 1601402, at *3–4 (C.D. Cal. Jan. 7, 2022) (allowing 4-hour CEO deposition where party "made a plausible

showing" that CEO "may have unique knowledge" even though "efforts to use less intrusive discovery methods could have been more thorough"); *In re Google Litig.*, No. C 08-03172 RMW PSG, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (allowing deposition of former Google CEO Larry Page for three hours where party had shown he had "unique knowledge of facts that cannot be secured by other less intrusive means of discovery"); *Khan v. Boohoo.com USA, Inc.*, CV2003332GWJEMX, 2021 WL 3882969, at *2–3 (C.D. Cal. July 28, 2021) (allowing 4-hour CEO deposition where emails showed CEO was "hands on" and had "direct involvement" in relevant decisions); *Finisar Corp. v. Nistica, Inc.*, No. 13-CV-03345-BLF(JSC), 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) (allowing CEO deposition where no other deponents were "able to testify to the contents of [relevant] conversations"); *In re Apple iPhone Antitrust Litig.*, No. 11CV06714YGRTSH, 2021 WL 485709, at *3 (N.D. Cal. Jan. 26, 2021) (allowing 7-hour CEO deposition because as CEO, he had "unique and non-repetitive" knowledge of Apple's business model); *WebSideStory, Inc.v. NetRatings, Inc.*, No. 06CV408 WQH(AJB), 2007 WL 1120567, at *3, *5 (S.D. Cal. Apr. 6, 2007) (permitting deposition of CEO with "unique, relevant knowledge" after party completed only one deposition, which "would aid in developing and refining a line of questioning" for CEO deposition); *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2015 WL 5852962, at *2 (N.D. Cal. Oct. 8, 2015) (allowing CEO deposition where CEO "personally participated in" and also "appears" he "may have been involved" in relevant decisions).

## IV.   Conclusion

Based upon the foregoing, the Court **ORDERS** as follows:

- Google shall make Sundar Pichai available for 3.5 hours of deposition.
- Mr. Pichai's deposition shall take place at least 10 days before Plaintiffs' opposition to any summary judgment motion or start of trial, whichever comes first.

**SO ORDERED.**

DATED: _____

HON. SUSAN VAN KEULEN
United States Magistrate Judge