1  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
   Diane M. Doolittle (CA Bar No. 142046)         Andrew H. Schapiro (admitted *pro hac vice*)
2  dianedoolittle@quinnemanuel.com                andrewschapiro@quinnemanuel.com
   Sara Jenkins (CA Bar No. 230097)               Teuta Fani (admitted *pro hac vice*)
3  sarajenkins@quinnemanuel.com                   teutafani@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor              191 N. Wacker Drive, Suite 2700
4  Redwood Shores, CA 94065                       Chicago, IL 60606
   Telephone: (650) 801-5000                      Telephone: (312) 705-7400
5  Facsimile: (650) 801-5100                      Facsimile: (312) 705-7401

6  Stephen A. Broome (CA Bar No. 314605)          Josef Ansorge (admitted *pro hac vice*)
   stephenbroome@quinnemanuel.com                 josefansorge@quinnemanuel.com
7  Viola Trebicka (CA Bar No. 269526)             Xi ("Tracy") Gao (CA Bar No. 326266)
   violatrebicka@quinnemanuel.com                 tracygao@quinnemanuel.com
8  Crystal Nix-Hines (Bar No. 326971)             Carl Spilly (admitted *pro hac vice*)
   crystalnixhines@quinnemanuel.com               carlspilly@quinnemanuel.com
9  Alyssa G. Olson (CA Bar No. 305705)            1300 I Street NW, Suite 900
   alyolson@quinnemanuel.com                      Washington D.C., 20005
10 865 S. Figueroa Street, 10th Floor             Telephone: (202) 538-8000
   Los Angeles, CA 90017                          Facsimile: (202) 538-8100
11 Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
12
   Jomaire Crawford (admitted pro hac vice)       Jonathan Tse (CA Bar No. 305468)
13 jomairecrawford@quinnemanuel.com               jonathantse@quinnemanuel.com
   51 Madison Avenue, 22nd Floor                  50 California Street, 22nd Floor
14 New York, NY 10010                             San Francisco, CA 94111
   Telephone: (212) 849-7000                      Telephone: (415) 875-6600
15 Facsimile: (212) 849-7100                      Facsimile: (415) 875-6700

16 *Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL SANCTIONS BRIEF PURSUANT TO DKT. 624.**<br><br>Magistrate Judge: Hon. Susan Van Keulen |

The Court's July 1, 2022 Order recognizes the extensive record on this dispute and seeks a tailored response on: (1) the timing and substance of Google's additional investigation identified in its Supplemental Šrámek Declaration; and (2) whether Plaintiffs are entitled to further sanctions as a result of *new* or *additional* prejudice arising from the logs disclosed in Google's Supplemental Declaration. Dkt. 624. As the below shows, Google's continued investigation was designed to comply to the fullest with the Court's order; in any event, Plaintiffs have suffered no prejudice and are therefore not entitled to any sanctions.

I.  **RESPONSES TO THE COURT'S QUESTIONS TO GOOGLE (DKT. 624)**

   A.  **Question 1: Google's Compliance With The Court's May 20, 2022 Order**

On Friday, May 20, 2022, the Court ordered that "Google must provide Plaintiffs with a representation in writing no later than May 31, 2022 that other than the logs identified thus far as containing Incognito-detection bits, no other such logs exist." Dkt. 588 at 6. Google provided a declaration to Plaintiffs by the Court's May 31, 2022 deadline regarding the ▮ data logs Google had previously disclosed, and then supplemented that response on June 14, 2022 after the conclusion of its investigation. Together, these declarations were fully responsive to the Court's May 20, 2022 Order. Google did not seek an extension from the Court to continue its investigation because the Court's directive had been to provide Plaintiffs with the data log information. Google thus communicated directly to Plaintiffs its need for additional time to complete the investigation. Dkt. 614-3 ¶ 5. Google was also concerned that if it prematurely curtailed its investigation on May 31, it would have been at risk of complaints that it was too cursory in its search or worse, had intentionally failed to disclose key evidence.

Google's investigation was detailed and extensive. Martin Šrámek, Google's Chrome Privacy Working Group lead, assembled a team to review the scope of Google's previous investigation of logs into which the Incognito-detection bits were written, including the data sources reviewed and the roster of employees interviewed. Šrámek Decl. ¶ 5. In addition to reviewing these sources, Mr. Sramek's team conducted a source code review, surveyed 125 teams associated with specific data sources, and conducted interviews with 18 separate teams located across the globe. *Id.* Despite working diligently to complete these tasks, Mr. Šrámek's team was not able to complete the

-1-                                                                Case No. 4:20-cv-03664-YGR-SVK
GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL SANCTIONS BRIEF

investigation before May 31 and he believed it prudent to continue investigating to ensure a full and accurate statement. *Id.* at ¶ 7. Google should not be sanctioned for completing a thorough investigation to comply with the Court's Order.

      **B.**      **Question 2: Google Disclosed the Additional Data Logs As Soon As Google Completed Its Extensive Review On June 14, 2022**

As soon as the maybe_chrome_incognito bit and the ▮ Dashboard that the bit supports were identified in late February, Google promptly identified all logs to which the engineers who created the maybe_chrome_incognito bit wrote the bit to support the Dashboard. Ansorge Decl. Ex. 1 (Google's 3/1/22 letter to Special Master and Plaintiffs). On April 21, 2022, the Court asked Google's counsel whether it was "correct that Google has not answered the question as to whether or not there are other fields that identify incognito traffic?" Ansorge Decl. Ex. 2 (4/21/22 Hrg. Tr.) 139:3-4. Based on Google's continued investigation of the Incognito-detection bits, counsel confirmed that it had not answered the question because "it's a difficult thing to do." *Id.* at 139:9-10. Google stated further that "in theory" there could be additional sources, but based on its investigation at that time, it was not aware of any. *Id.* at 139:17-19. Nonetheless, particularly in light of the attention brought to these issues in the past six months, Google continued to investigate their existence and potential relevance to this action.

Google's investigation up to May 31, 2022 confirmed ▮ logs into which the bits were intentionally included. *See* Dkt. 614-3 ¶¶ 3-4. However, because Google's source code audit and team surveys were not finished, Google's declaration informed Plaintiffs that the investigation was ongoing and would be completed by June 14, 2022. *Id.* at ¶ 5. During that period, Google's team was able to identify ▮ additional logs: ▮ ▮ log that contained the is_chrome_non_incognito_mode bit and ▮ other logs that housed the maybe_chrome_incognito bit. Dkt. 614-2 ¶¶ 5-12. These logs were not identified earlier largely because of the tremendous complexity of Google's systems that inhibited identification until further source code review.

As Mr. Šrámek's June 14 Declaration explained, the sole additional ▮ log does not store any user identifiers Google could use to sample or search the log source. Šrámek Decl. ¶12. Further, the maybe_chrome_incognito bit was *automatically copied* into these ▮ additional logs.

Dkt. 614-2 ¶ 5. This automatic replication is "████████████████████████████████████████████████████████████████████████████." *Id.*

With that context, it is unremarkable that the additional logs are not accretive: (1) ██ contain no information in addition to what is recorded in the previously disclosed ██ logs from which Google already produced data for Plaintiffs and their expert; (2) ██ are test logs which only record Google employees' test data; (3) ██ are "joined logs" that store data from a subset of the ██ previously disclosed logs along with some data from other logs not containing the maybe_chrome_incognito bit; (4) ██ contain data regarding users' interactions with ads related to non-Google ad exchanges; and (5) the ██████ log contains no searchable identifiers. Dkt. 614-2 ¶¶ 6-12. There is thus no "new" prejudice from the June 14 disclosure of these logs.

### C. Question 3: Google Was Unable To Attest That No Other Data Logs Existed, But Has Provided A Supplemental Declaration Now

Google was unable to attest that "it [had] identified all data sources with the disputed fields" (Dkt. 624 at 2) because Google, out of an abundance of caution, interpreted the May 20 Order as requiring Google to attest that there are no other data sources at Google in which any field was used to infer Incognito browser state. Šrámek Decl. ¶ 7. Mr. Šrámek's Second Supplemental Declaration explains that multiple months-long investigations would have been required to provide such an affirmation. *Id.* However, upon reconsidering the Court's May 20 Order and in light of the July 1 Order, Google now understands that the Order seeks affirmation only for the data sources "with the disputed fields" (Dkt. 624 at 2), and Google thus submits an attestation from Mr. Šrámek with this filing stating that based on the extensive investigation he oversaw, no other logs contain the three disputed fields: maybe_chrome_incognito, is_chrome_incognito, is_chrome_non_incognito_mode. Šrámek Decl. ¶¶ 6, 7.

## II. RESPONSES TO THE COURT'S QUESTIONS TO PLAINTIFFS

### A. Question 1: Plaintiffs Have Not Been Prejudiced *Beyond* The Purported Prejudice Addressed In The Court's Prior Order

Plaintiffs' March motion alleged that they were prejudiced in six ways by Google's failure to disclose logs containing Incognito-detection bits: "(1) inability to obtain relevant documents; (2) inability to obtain relevant testimony; (3) impairment of the Special Master process; (4) impairment

of expert discovery; (5) Google's spoliation of data and (6) impairment of Plaintiffs' ability to rebut Google's contentions." Dkt. 588 ¶ 156. The Court's May 20, 2022 Order found that "*the existence and use* of three Incognito-detection bits (maybe_chrome_incognito, is_chrome_incognito, is_chrome_non_incognito_mode) was relevant to both Plaintiffs' claims and Google's defenses" and that as a result of the late-produced logs, Plaintiffs were entitled to "limited" preclusion sanctions. *Id.* at ¶ 154 (emphasis added). On that basis, the Court barred Google from making arguments related to the timing of the development and implementation of the three Incognito-detection bits at issue or the fact that such bits were issued, and from relying on the testimony of four Google witnesses. *Id.* at ¶ 36.

There is no additional prejudice from the June 14 disclosure of the ▇ data logs. The Court's May 20 Order addressed the alleged prejudice from the "existence and use" of Incognito-detection bits. The additional logs do not add anything to the "existence" of these Incognito-detection bits. Nor do they add anything to the "use" because the maybe_chrome_incognito bits in these additional logs were populated automatically and not for a particular use case. Dkt. 614-2 ¶ 5. The ▇ additional log that contains the is_chrome_non_incognito_mode bit does not store any user identifiers that Google could use to sample or search data. *Id.* at ¶ 12. Unsurprisingly, Plaintiffs' purported prejudice is the same as what they alleged in their prior sanctions motions:

| **Plaintiffs' Prior Sanctions Motions (Dkts. 291-2; 429-1; 510-1)** | **Plaintiffs' Supplemental Sanctions Motion (Dkt. 655-1)** |
|---|---|
| "[T]he Court should 'take[] as established for purposes of the action' that all of Google's so-called 'unauthenticated' data is linked or linkable to users, including all private browsing information Google collected during the class period." Dkt. 291-2 at 17. | "Plaintiffs could have sought additional discovery regarding … how Google joins private browsing data with authenticated data." Dkt. 655-1 at 2.<br><br>"These logs are plainly relevant to Mr. Hochman's analysis of how private browsing data stored by Google can be linked to class members and their devices." *Id.* at 4. |
| "Data and documents concerning Incognito use and users are relevant … to damages." Ansorge Decl. Ex. 2 (4/21/22 Hrg. Tr.) at 8:7-8. | "These additional logs are also relevant to Plaintiffs' damages analysis." *Id.* at 4. |
| "[] Google was [developing a tool] designed | "Google also uses these logs to predict its ad |

| | |
|---|---|
| to … detect Incognito traffic … so that it can measure and attempt to recapture revenue[s]." Dkt. 429-1 at 4. | revenues and perform other analysis and testing." *Id.* at 1. |

Moreover, Plaintiffs still cannot establish any prejudice pertaining to the Special Master process, expert discovery, spoliation or rebuttal evidence. In finding no prejudice related to the Special Master process, for instance, the Court's May 20 Order stated that "the reliability of these bits in identification of putative class members remains the subject of strenuous debate" and thus "it is neither possible nor practical to quantify either the temporal or monetary impact of these particular issues on the great process before Special Master." Dkt. 588 ¶ 173. That reasoning applies with equal force here. Similarly, the Court's ruling that Plaintiffs could not demonstrate spoliation "based on an argument that Google secured a protective order … without informing the Court that it had by then been using the Incognito-detection bits," *id.* at ¶ 180, applies to the ▮ data logs as well. The lack of prejudice also holds true for expert discovery and rebuttal evidence. *id.* at ¶¶ 174-178. In short, Plaintiffs cannot establish any new harm or prejudice *beyond* what the Court's Order already addressed.

### B. Question 2: No Additional Relief Is Appropriate

"[O]n the menu of sanctions that a court may select from in applying Rule 37, preclusion of evidence is among the most severe." *True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 5341592, at *6 (N.D. Cal. Sept. 12, 2015) (quoting *Network Appliance, Inc. v. Bluearc Corp.*, 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005)). Issue preclusion sanctions are likewise reserved for discovery abuse "so extreme and prejudicial that no lesser remedy will cure the harm." *Synapsis, LLC v. Evergreen Data Sys., Inc.*, 2006 WL 2884413, at *1 (N.D. Cal. Oct. 10, 2006). The extraordinary preclusion sanctions Plaintiffs seek are unwarranted and duplicative of the sanctions this Court already awarded for the same alleged harms.

#### 1. Precluding Messrs. Šrámek And Harren's Testimony Is Unwarranted

Plaintiffs seek to piggy-back on the Court's prior ruling precluding Google from relying on the testimony of four Google engineers to assert that Google should similarly be prevented from relying on the testimony of Mr. Šrámek and his colleague Matthew Harren. That is misguided. The

Court's prior preclusion order was premised on the Court's finding that Google had an affirmative obligation to disclose these employees and their areas of expertise to the Plaintiffs. Here, however, Messrs. Šrámek and Harren were assigned to conduct the investigation the Court ordered and if anything, their proactive actions demonstrate exhaustive compliance with discovery—not concealment. Thus, precluding their testimony would be improper.

### 2. No Evidence That Signed-Out Incognito Data Is Joined With Authenticated Data

Plaintiffs sought the same relief in their October 2021 sanctions motion that they do now: a ruling that "Google is precluded from arguing that it does not join Incognito browsing data to authenticated data." Dkt. 655-9 at 7; *see also* Dkt. 291-2 at 17. The Court denied this sanction then, and should do so again as contrary to the record evidence in this case. The *only* thing that has changed since the Court's Order is a reference to "joined" and "personal logs" in Mr. Šrámek's June 14 Declaration and Table 4 of Exhibit A. Dkt. 614-2 at 3, 7. On the sole basis of those two terms, Plaintiffs now claim that "Google joins private browsing data with authenticated data" Dkt. 655-1 at 1-2. This far-fetched speculation has no basis in fact. Nonetheless, to eliminate this red herring, Google has submitted an additional supplemental declaration concurrently with this filing explaining that it is Google's policy to only write data to a personal log if a user is signed into their Google account, and not correlate authenticated and non-authenticated data. Šrámek Decl. ¶ 9. Thus, any data with a value of "TRUE" for the Incognito detection bits in a personal log would consist of authenticated data from either (i) Incognito sessions where a user signed into a Google account during the session;[1] or (ii) a signed-in user whose browser did not send the x-client data header despite not being in Incognito mode. Ansorge Decl. Ex. 5 (Berntson 6/16/21 30(b)(6) Tr.) 374:12-16 ("[T]here are cases that will lead to false positives; that is, where you see an empty X-Client-Data header and you assume it's incognito but [it is] not."). Further, the "joined logs" referenced in

---

[1] Plaintiffs' class definition expressly excludes private browsing mode users who sign into their Google Accounts. Dkt. 395-2 ¶ 192 (defining both classes as limited to users who "were not logged into their Google account"). This is because the Search & Browse Privately page that Plaintiffs claim is part of their contract states: "**Important:** If you sign in to your Google Account to use a web service like Gmail, your searches and browsing activity might be saved to your account." Dkt. 83-18 at 2 (emphasis in original).

Paragraph 9 and Table 4 do not support Plaintiffs' speculation regarding joining unauthenticated Incognito data with authenticated data. *See* Šrámek Decl. ¶ 10 (joins are "either from **authenticated** to **authenticated** log sources … or from **unauthenticated** to **unauthenticated** log sources … but none are from **unauthenticated** to **authenticated** log sources, or vice versa").

Plaintiffs' speculation is also soundly belied by the *thousands* of produced documents showing Google's policies expressly prohibit joining of signed-in (authenticated) and signed-out (unauthenticated) data. *See, e.g.*, Ansorge Decl. Ex. 3. And it is not just a policy restriction—Google has spent untold engineering hours designing its logging architecture to *prevent* joining of unauthenticated data (such as Incognito data at issue) with authenticated data. In addition to Google's voluminous document productions confirming that this has been a core design principle since at least 2016, s*ee, e.g.*, Ansorge Decl. Ex. 4, every deponent Plaintiffs questioned (and every witness in *Calhoun*) has confirmed that Google does not join signed-out private browsing information with authenticated information—including ex-Googler employee Rory McClelland, whose deposition travel costs and attorney fees were covered by Plaintiffs' counsel: "Q. Are you aware of Google rejoining [authenticated and unauthenticated] data? A. No, as far as I am aware, Google never did that." Ansorge Decl. Ex. 6 (McLelland 2/18/22 Tr.) 228:23-229:9; 278:5-23; *accord id.* Ex. 7 (Ganem 3/23/22 Tr.) 98:19-24 ("[W]e go to great lengths to make joins impossible. So that any speculation that Google would do some joining would be, on their face, false because it would be literally impossible."); *id.* Ex. 5 (Berntson 6/16/21 30(b)(6) Tr.) 199:1-5) ("Google has a set of… policies that are meant to prevent reidentifiability, prevent joining of sort of sensitive IDs in terms of, say, signed in and signed out."). Not even Plaintiffs' experts have disputed this fact. *See, e.g., id.* Ex. 8 (Schneier 7/18/22 Tr.) 136:18-24 ("Q. … you haven't seen any evidence that Google's actually done that [*i.e.*, join authenticated and unauthenticated data]? A. No."); *id.* Ex. 9 (Hochman 7/21/22 Tr. Vol. II) 450:18-25 ("Q. So does a B log contain GAIA IDs? A. B log is a Biscotti log. I don't recall instances of B logs containing GAIA IDs[.]"). In light of this record, Plaintiffs cannot establish the need for preclusion sanctions beyond what the Court already has granted.

### 3. Additional Requested Preclusions Are Not Warranted

Plaintiffs also ask the Court to preclude Google from arguing that (i) "it does not use Incognito browsing data to 'perform analysis and modeling to predict ad revenues'"; (ii) "it does not use Incognito browsing data for 'ads related to third-party exchanges'"; and (iii) "it has not made Incognito browsing data available for other business purposes." Dkt. 655-7. Such sanctions should be denied because Google has been transparent regarding its position on these topics since well before the close of discovery, and did not conceal evidence or obstruct discovery into any topic. *See, e.g.*, Ansorge Decl. Ex. 10 (Mardini 11/24/21 Tr.) 410:11-416:11 (discussing ▓▓▓▓ Incognito revenue impact modeling and analysis); *id.* Ex. 11 (Google's 11/6/20 Response to Plaintiffs' RFA No. 7) ("If Google receives such data, depending on the user's settings and plug-ins, Google may use the data associated with cookies to personalize advertisements displayed to the user."); *id.* Ex. 12 (Google's 1/20/22 Response to Plaintiffs' RFA No. 47) ("Google admits that, since June 1, 2016, Google has used some of the data it collects, including some of the data at issue in this case, to improve its services."). The existence of these logs does not reveal any new information to which Plaintiffs have not had access.

### 4.     Jury Instructions Would Be Improper

Plaintiffs have not shown, as required, that Google "acted with the intent to deprive another party of the information's use in the litigation." *Best Label Co. v. Custom Label & Decal, LLC*, 2022 WL 1525301, at *2 (N.D. Cal. May 13, 2022) (citing Fed. R. Civ. P. 37(e)(2)). "[E]ven gross negligence … in failing to retain relevant evidence is not sufficient to support an adverse inference under Rule 37(e)(2)." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225, at *6 (N.D. Cal. June 6, 2022). The proposed jury instructions are not warranted because the Šrámek declarations and the attendant investigation are inconsistent with an intent to conceal the additional logs.

### 5.     Additional Monetary Sanctions Are Not Warranted

Plaintiffs "respectfully renew" their previous request for reimbursement of all Special Master fees, but the Court previously rejected that request for good reason. *See* Dkt. 588 at 43; Dkt. 655-1 at 8. Attorneys' fees would be improper on this record.

### III.     CONCLUSION

For the reasons stated, Plaintiffs' request for additional sanctions should be denied.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: August 18, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | |
| 4 | | By  /s/ Andrew H. Schapiro |
| | | Andrew H. Schapiro (admitted *pro hac vice*) |
| 5 | | andrewschapiro@quinnemanuel.com |
| | | Teuta Fani (admitted *pro hac vice*) |
| 6 | | teutafani@quinnemanuel.com |
| | | 191 N. Wacker Drive, Suite 2700 |
| 7 | | Chicago, IL 60606 |
| | | Telephone: (312) 705-7400 |
| 8 | | Facsimile: (312) 705-7401 |
| 9 | | |
| | | Stephen A. Broome (CA Bar No. 314605) |
| 10 | | stephenbroome@quinnemanuel.com |
| | | Viola Trebicka (CA Bar No. 269526) |
| 11 | | violatrebicka@quinnemanuel.com |
| | | Crystal Nix-Hines (Bar No. 326971) |
| 12 | | crystalnixhines@quinnemanuel.com |
| | | Alyssa G. Olson (CA Bar No. 305705) |
| 13 | | alyolson@quinnemanuel.com |
| | | 865 S. Figueroa Street, 10th Floor |
| 14 | | Los Angeles, CA 90017 |
| 15 | | Telephone: (213) 443-3000 |
| | | Facsimile: (213) 443-3100 |
| 16 | | |
| 17 | | Diane M. Doolittle (CA Bar No. 142046) |
| | | dianedoolittle@quinnemanuel.com |
| 18 | | Sara Jenkins (CA Bar No. 230097) |
| | | sarajenkins@quinnemanuel.com |
| 19 | | 555 Twin Dolphin Drive, 5th Floor |
| | | Redwood Shores, CA 94065 |
| 20 | | Telephone: (650) 801-5000 |
| 21 | | Facsimile: (650) 801-5100 |
| 22 | | Josef Ansorge (admitted *pro hac vice*) |
| | | josefansorge@quinnemanuel.com |
| 23 | | Xi ("Tracy") Gao (CA Bar No. 326266) |
| | | tracygao@quinnemanuel.com |
| 24 | | Carl Spilly (admitted *pro hac vice*) |
| 25 | | carlspilly@quinnemanuel.com |
| | | 1300 I. Street, N.W., Suite 900 |
| 26 | | Washington, D.C. 20005 |
| | | Telephone: 202-538-8000 |
| 27 | | Facsimile: 202-538-8100 |
| 28 | | Jomaire A. Crawford (admitted *pro hac vice*) |

jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*