# Exhibit 9

CONFIDENTIAL

```
 1         UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF CALIFORNIA
 2               OAKLAND DIVISION
 3    CHASOM BROWN,
 4            Plaintiff,    Case No.
      vs.
 5                     4:20-cv-03664-YGR-SVK
 6    GOOGLE LLC,
 7            Defendant.
 8    ***********************************
                      CONFIDENTIAL
 9                      VOLUME II
         CONTINUED ZOOM VIDEOTAPED DEPOSITION OF
10                   JONATHAN HOCHMAN
                     July 21, 2022
11                    10:09 a.m.
      ***************************************
12
13
14    TAKEN BY:
15       JOSEF ANSORGE, ESQ.
         ATTORNEY FOR DEFENDANT
16
17    REPORTED BY:
18       BELLE VIVIENNE, RPR, CRR, NJ-CRR,
         WA/CO/NM-CCR
19       NATIONALLY CERTIFIED REALTIME
         COURT REPORTER
20       VERITEXT LEGAL SOLUTIONS
         JOB NO. 5312353
21       866.299.5127
22
23
24
25
```

Page 365

```
                    APPEARANCES
FOR THE PLAINTIFF:
    MARK MAO
    BOIES SCHILLER FLEXNER LLP
    44 Montgomery Street, 41st Floor
    San Francisco, California 94104
    415.293.6800
    mmao@bsfllp.com

    RYAN MCGEE
    MORGAN & MORGAN
    201 North Franklin Street
    7th Floor
    Tampa, Florida 33602
    813.223.0931
    rmcgee@forthepeople.com

    ALEXANDER FRAWLEY
    IAN CROSBY
    SUSMAN GODFREY
    1301 Avenue of the Americas
    32nd Floor
    New York, New York 10019
    Afrawley@susmangodfrey.com

COUNSEL FOR PLAINTIFF IN CALHOUN MATTER:
    ADAM PROM
    DICELLO LEVITT & GUTZLER
    10 North Dearborn Street, Sixth Floor
    Chicago, Illinois 60602
    312.214.7900
    aprom@dicellolevitt.com

COUNSEL FOR DEFENDANT:

    JOSEF ANSORGE
    JOHN WILSON, IV
    QUINN EMANUEL URQUHART & SULLIVAN LLP
    51 Madison Avenue
    New York, New York 10010
    josefansorge@quinnemanuel.com
    CARL SPILLY
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
    1300 I Street, NW, Suite 900
    Washington, D.C. 20005
    202.538.8277
    carlspilly@quinnemanuel.com
```

Page 366

```
APPEARANCES: (Continued)
    CRYSTAL NIX-HINES
    QUINN EMANUEL URQUHART & SULLIVAN LLP
    865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017
    crystalnixhines@quinnemanuel.com

    VIDEOGRAPHER:
    Sean Grant
ALSO PRESENT:
    Konstantinos Psounis, Ph.D.
    Julie Burns
    John Wilson, IV - Quinn Emanuel
```

Page 367

                    - - -
                  I N D E X
                    - - -
Testimony of:
    JONATHAN HOCHMAN
MR. ANSORGE.............................. 372

                    - - -
                 E X H I B I T S
                    - - -
NO.        DESCRIPTION              PAGE
Exhibit 17    Appendix F.................374
Exhibit 18    Dr. Glen Bernston's
              deposition.................379
Exhibit 19    Excerpt from Glen
              Berston's deposition.......384
Exhibit 20    Two-page policy document...414
Exhibit 21    Log Data Usage Rules.......439
Exhibit 22    Article entitled Privacy
              Threats in Intimate
              Relationships..............496
Exhibit 24    Understanding Dual
              Stacking of IPv4 and PIv6
              Unicast Addresses..........503

Page 368

                    - - -
            E X H I B I T S (Continued.)
                    - - -
NO.        DESCRIPTION              PAGE
Exhibit 25    Ad Personalization
              Settings...................512
Exhibit 26    Expert Report of
              Konstantinos Psounis.......520
Exhibit 29    Document Bates numbered
              GOOG-BRWN-00630517.........558
Exhibit 30    Document Bates numbered
              GOOG-CABR03923580..........561
Exhibit 31    Document Bates numbered
              GOOG-CABR-00894408.........567
Exhibit 32    PII document...............568

Page 369

Page 446

```
 1        Policy is nice. It's nice to       12:04:10
 2   have a policy to -- to say that you're  12:04:12
 3   doing the right thing. I don't know what 12:04:15
 4   exemptions exist. I don't know how      12:04:16
 5   closely this policy's been followed in  12:04:18
 6   practice, and the policy can't control for 12:04:22
 7   things like legal risk, data breaches. As 12:04:27
 8   I said before, there's -- there's a great 12:04:31
 9   danger in logging sensitive data.       12:04:34
10      Q.   Mr. Hochman, in reaching the    12:04:39
11   conclusions that you have proffered in  12:04:41
12   this case, did you investigate which    12:04:43
13   internal Google policies have been in   12:04:47
14   place over the course of the class period? 12:04:49
15      A.   I think I alluded to this in a  12:04:53
16   prior answer, so I'll point to that and 12:04:55
17   add, for security and privacy, as a     12:04:58
18   computer scientist -- I'm not a         12:05:04
19   sociologist. I'm not an expert on       12:05:08
20   business management. I'm talking about  12:05:10
21   data security and privacy.              12:05:12
22        And from that standpoint, it's a   12:05:14
23   question of what could be done with things 12:05:16
24   the way they are stored and the way     12:05:18
25   they're retained. Policy is all fine and 12:05:20
```

Page 447

```
 1   good, but there have been a huge number of 12:05:24
 2   examples where policy isn't followed by 12:05:30
 3   either an internal actor or an external 12:05:32
 4   actor. There are an enormous number of  12:05:35
 5   data breaches. Very embarrassing to large 12:05:37
 6   companies and it's sort of only a matter 12:05:39
 7   of time until all this data gets stolen 12:05:41
 8   and exploited by someone hostile.       12:05:43
 9      Q.   Well, Mr. Hochman, is it fair to 12:05:51
10   say that what Google's internal policy is 12:05:54
11   has no bearing on the conclusions that  12:05:56
12   you've reached in this case?            12:06:00
13      A.   I am not, off the top of my     12:06:03
14   head, thinking of an opinion I gave which 12:06:06
15   talks about policy. I'm talking about   12:06:09
16   what Google is doing versus what they've 12:06:15
17   told people they're doing. And I've also, 12:06:18
18   I think, highlighted some of the ways that 12:06:25
19   the data can be joined together.        12:06:27
20        And the fact that Google says      12:06:30
21   "don't join the data together," that's all 12:06:32
22   nice, but that's not -- that's not      12:06:35
23   security. That's just policy.           12:06:40
24      Q.   Turn back to the page ending    12:06:47
25   with the Bates designation 006. We were 12:06:49
```

Page 448

```
 1   talking about the "Re-Identifying logs   12:06:52
 2   data" section. And let me know if -- when 12:06:55
 3   you're there. And in particular, the    12:06:58
 4   first bullet that I read out earlier in 12:07:00
 5   red that begins with "you must not       12:07:03
 6   re-identify."                            12:07:06
 7        Do you see that?                    12:07:06
 8      A.   Yes, I do see that Google        12:07:09
 9   recognizes the danger of reidentification. 12:07:11
10      Q.   And my question to you,          12:07:14
11   Mr. Hochman, is what is reidentify?      12:07:17
12      A.   Reidentify. So I'll give you a   12:07:24
13   quick summary of it. If you have a record 12:07:26
14   that looks like it's anonymous data,     12:07:28
15   reidentifying means figuring out         12:07:31
16   specifically who that data is associated 12:07:34
17   with or what entity that data is         12:07:37
18   associated with.                         12:07:38
19      Q.   Would taking logged-out private  12:07:42
20   browsing data at issue in this case and  12:07:46
21   then using that to reidentify individuals 12:07:49
22   who may have been associated with the    12:07:53
23   browsing be reidentification in your     12:07:55
24   opinion?                                 12:08:01
25        MR. MAO:   Objection to the form    12:08:02
```

Page 449

```
 1   of the question.                         12:08:03
 2        Please, go ahead.                   12:08:04
 3      A.   Sure. If you take some           12:08:05
 4   logged-out browsing data and you figure  12:08:07
 5   out, for example, the GAIA ID of that    12:08:10
 6   person, or you -- you take the -- the IP 12:08:15
 7   address and user agent, which essentially 12:08:20
 8   is identifying, and you -- you track down 12:08:22
 9   the person, I think if you've identified 12:08:25
10   someone based on an otherwise anonymous  12:08:32
11   record, it's reidentification.           12:08:35
12        Now, that raises sort of a          12:08:37
13   philosophical question. If Google is     12:08:39
14   logging this private browsing activity   12:08:41
15   with the user agent and the IP address,  12:08:45
16   then it's arguable that that's not really 12:08:51
17   an anonymous record because it's already 12:08:53
18   identified by that data.                 12:08:56
19   BY MR. ANSORGE::                         12:08:56
20      Q.   Let's turn to the second         12:09:02
21   sentence, where it says "If a log does not 12:09:03
22   include GAIA IDs or similar authenticated 12:09:05
23   Personally Identifiable Information, you 12:09:10
24   must not re-identify the log records in  12:09:14
25   any way."                                12:09:17
```

```
 1       Did I read that out correctly?    12:09:17
 2    A.  Just a second.  So this is --    12:09:20
 3  this is a very carefully crafted sentence  12:09:28
 4  here with some gymnastics in it because it  12:09:31
 5  talks about -- in limitations, it talks    12:09:34
 6  about a log that does not include GAIA    12:09:35
 7  IDs -- I'm sorry.  I'm going too far.    12:09:39
 8       Yes, I think you read it        12:09:44
 9  correctly.                             12:09:45
10    Q.  I believe yesterday you          12:09:45
11  testified that the data at issue in this  12:09:46
12  case is stored in B logs, but that it    12:09:48
13  could be joined with P logs.            12:09:52
14       Do you recall that?              12:09:54
15    A.  I think I said something to that 12:09:55
16  effect.  Whatever I said is -- is on the  12:09:57
17  record, and that's my answer again.     12:10:00
18    Q.  So does a B log contain GAIA    12:10:07
19  IDs?                                  12:10:11
20    A.  B log is a Biscotti log.  I     12:10:14
21  don't recall instances of B logs        12:10:19
22  containing GAIA IDs, although I do know  12:10:22
23  that GAIA logs, which are P logs, may    12:10:25
24  contain sort of blinded Biscotti IDs or  12:10:30
25  encrypted Biscotti IDs.                 12:10:38
```
Page 450

```
 1       And I think we are going to have  12:10:41
 2  to be really careful when we review this  12:10:42
 3  transcript because "B" and "P" sound very  12:10:45
 4  similar.                              12:10:47
 5    Q.  Turn to the next bullet below    12:10:47
 6  where it states "You must not correlate  12:10:49
 7  authenticated and non-authenticated      12:10:51
 8  information."                          12:10:52
 9       What's your understanding of     12:10:52
10  nonauthenticated information, Mr. Hochman?  12:10:56
11    A.  My understanding of that is     12:10:58
12  logged out.                           12:11:00
13    Q.  So would the data at issue in   12:11:03
14  this case in the private browsing data   12:11:07
15  when users do not log in during the      12:11:11
16  private browsing session be authenticated  12:11:13
17  or unauthenticated information?          12:11:16
18       MR. MAO:  Objection, asked and   12:11:18
19    answered.                          12:11:19
20    A.  So if the user is not logged in, 12:11:24
21  I -- I understand unauthenticated to mean 12:11:28
22  not logged in at that moment.          12:11:35
23  BY MR. ANSORGE::                       12:11:41
24    Q.  If you turn to the third bullet, 12:11:42
25  please.  You see where it says "You must 12:11:43
```
Page 451

```
 1  not fingerprint users for the purpose of  12:11:45
 2  associating a user's activity over time or 12:11:47
 3  across contexts ("tracking") or          12:11:51
 4  reidentifying them when you do not have  12:11:55
 5  access to actual identifiers such as     12:11:59
 6  cookies or GAIA IDs."                  12:12:02
 7       Do you see that?                 12:12:07
 8    A.  I do see that.                  12:12:07
 9    Q.  And what's your understanding of 12:12:08
10  cookies and GAIA IDs that are being     12:12:11
11  referred to here?                      12:12:16
12    A.  Cookies are cookies, and the    12:12:18
13  GAIA ID is the logged-in user ID.  And my 12:12:20
14  understanding of the sentence is that    12:12:24
15  fingerprinting would then be allowed if  12:12:26
16  you have access to these actual          12:12:28
17  identifiers.                           12:12:30
18    Q.  So your understanding of this   12:12:32
19  policy is that if a person has access to 12:12:34
20  GAIA ID, then they're permitted to       12:12:41
21  fingerprint them for reidentification?   12:12:44
22    A.  That's one scenario where it's  12:12:47
23  permitted.  Another scenario is when     12:12:48
24  there -- they have access to actual      12:12:51
25  identifiers such as cookies.  And I don't 12:12:54
```
Page 452

```
 1  see any limitation placed on cookies in   12:12:57
 2  this sentence.                          12:13:00
 3       So I'm aware that there are      12:13:01
 4  logged-out cookies like Biscotti and     12:13:03
 5  Zwieback.                              12:13:06
 6    Q.  I think we can put this exhibit  12:13:08
 7  to the side for now.  Thank you,        12:13:16
 8  Mr. Hochman.                           12:13:18
 9    A.  Okay.                           12:13:24
10    Q.  You can turn to Exhibit 1, which 12:13:25
11  is your opening report at page 94,       12:13:28
12  paragraph 226.  And let me know once     12:13:33
13  you're there.                          12:13:35
14       MR. MAO:  Sorry, quick           12:13:40
15    procedural question.  Are we taking  12:13:41
16    suggestion from your team that we put 12:13:44
17    Exhibit 1 into this deposition?      12:13:46
18       MR. ANSORGE:  Can we go off the  12:13:51
19    record to work it out?  I believe the 12:13:52
20    court reporter had an opinion on it  12:13:53
21    too.                               12:13:55
22       MR. MAO:  Oh, okay.              12:13:56
23       THE VIDEOGRAPHER:  Do you want   12:13:59
24    to go off, Counsel?                 12:13:59
25       MR. MAO:  Sure.                  12:14:01
```
Page 453

23 (Pages 450 - 453)

```
 1       4:16 p.m.  Thank you.              16:16:51
 2          MR. MAO:  Can I get an expedited 16:16:55
 3   copy?                                   16:16:57
 4          THE COURT REPORTER:  And a       16:17:06
 5   rough?                                  16:17:06
 6          MR. MAO:  Yes, please.           16:17:06
 7          (Time noted:  4:16 p.m.)
 8
 9   _____
         JONATHAN HOCHMAN
10
11
     _____
12   Subscribed and sworn to
     before me this _____
13   day of _____ 2022.
14   _____
         Notary Public
15
16
17
18
19
20
21
22
23
24
25
                                                    Page 614
```

```
 1 JONATHAN HOCHMAN
 2 jonathan@hochmanconsultants.com
 3                  July 26, 2022
 4 RE: BROWN VS. GOOGLE LLC
 5 JULY 21, 2022, JONATHAN HOCHMAN, VOLUME II, JOB NO. 5312353
 6 The above-referenced transcript has been
 7 completed by Veritext Legal Solutions and
 8 review of the transcript is being handled as follows:
 9 __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext
10 to schedule a time to review the original transcript at
11 a Veritext office.
12 __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF
13 Transcript - The witness should review the transcript and
14 make any necessary corrections on the errata pages included
15 below, notating the page and line number of the corrections.
16 The witness should then sign and date the errata and penalty
17 of perjury pages and return the completed pages to all
18 appearing counsel within the period of time determined at
19 the deposition or provided by the Code of Civil Procedure.
20 __ Waiving the CA Code of Civil Procedure per Stipulation of
21 Counsel - Original transcript to be released for signature
22 as determined at the deposition.
23 __ Signature Waived – Reading & Signature was waived at the
24 time of the deposition.
25
                                                    Page 616
```

```
 1             CERTIFICATION
 2
 3      I, BELLE VIVIENNE, a Nationally
 4   Certified Realtime Reporter, do hereby
 5   certify:
 6      That the witness whose testimony as
 7   herein set forth, was duly sworn by me;
 8   and that the within transcript is a true
 9   record of the testimony given by said
10   witness.
11      I further certify that I am not
12   related to any of the parties to this
13   action by blood or marriage, and that I am
14   in no way interested in the outcome of
15   this matter.
16      IN WITNESS WHEREOF, I have hereunto
17   set my hand this 26th day of July 2022.
18
19   _____
20    BELLE VIVIENNE, CRR, CCR, RPR
21
22       *   *   *
23
24
25
                                                    Page 615
```

```
 1 _X_Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF
 2 Transcript - The witness should review the transcript and
 3 make any necessary corrections on the errata pages included
 4 below, notating the page and line number of the corrections.
 5 The witness should then sign and date the errata and penalty
 6 of perjury pages and return the completed pages to all
 7 appearing counsel within the period of time determined at
 8 the deposition or provided by the Federal Rules.
 9 __ Federal R&S Not Requested - Reading & Signature was not
10 requested before the completion of the deposition.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                    Page 617
```

**Deposition Errata**
**Case: *Brown, et al. v. Google LLC***
**Deponent: Jonathan Hochman**
**Date of Deposition: July 20-21, 2022**

I, Jonathan Hochman, hereby certify that I have read the transcript of my testimony taken under oath in my deposition on the 20th and 21st days of July 2022; that the transcript is a true, complete record of my testimony and that the answers on the record as given by me are true and correct, with the following exceptions:

| Pg. and Ln. | Should Read | Reason |
|---|---|---|
| 69:12-13 | Change "market" to "marketing" and delete the parenthesis before "search" | Transcription Error |
| 110:10 | Change "execute" to "executive" | Transcription Error |
| 166:16-17 | Change "wave" to "page" | Transcription Error |
| 203:11-12 | Change "of the" to "with a" | Transcription Error |
| 205:23-25 | Change "LogRhythm" to logarithm" | Typographical Error |
| 216:15-16 | Change "experiences" to "experience is" and Change "nav" to "nab" | Transcription Error |
| 220:10 | Change "joint" to "join" | Transcription Error |
| 224:6 | Change "tip" to "type" | Typographical Error |
| 226:20 | Change "there" to "they" | Transcription Error |
| 242:25 | Change "Bernston" to "Berntson" | Typographical Error |
| 271:6 | Change "in to" to "into your" | Transcription Error |
| 378:24 | Change "Bernston" to "Berntson" | Typographical Error |
| 379:7 | Change "Bernston" to "Berntson" | Typographical Error |
| 382:12 | Change "Bernston" to "Berntson" | Typographical Error |
| 383:9 | Change "Bernston" to "Berntson" | Typographical Error |
| 384:14 | Change "Glen Bernston" to "Glenn Berntson" | Typographical Error |
| 434:6 | Change "set" to "itself" | Transcription Error |
| 434:10-11 | Delete "an" | Transcription Error |
| 493:4 | Change "fill" to "file" | Transcription Error |
| 517:1-2 | Insert "what" before "might" | Transcription Error |
| 518:9-10 | Change "in a posit" to "inapposite" | Typographical Error |
| 546:20 | Change "FUD, here, fear, uncertainty doubt" to "FUD, Fear, uncertainty and doubt" | Transcription Error |
| 585:1 | Insert "showing" after "IP" | Transcription Error |
| 595:12 | Change "analysis" to "analyses" | Typographical Error |
| 607:17-18 | Insert comma between "is" and "is" | Transcription Error |

*[signature]*

JONATHAN HOCHMAN

Aug 17, 2022
DATE