**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO GOOGLE'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DAVID NELSON (DKT. 663)** |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

III. LEGAL STANDARD ............................................................................................................4

IV. ARGUMENT .........................................................................................................................5

    A. Mr. Nelson is Qualified to Provide Expert Testimony ...........................................5

    B. Mr. Nelson's Expert Testimony is Relevant to this Litigation ...............................6

    C. Mr. Nelson's Expert Testimony is Plainly Reliable and not Speculative ...............7

    D. Mr. Nelson Provided Sufficient Details Regarding the Investigations Referenced in his Report .........................................................................................9

V. CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases:**

*AngioScore, Inc. v. TriReme Medical, Inc.*,
  87 F. Supp. 3d 986 (N.D. Cal. 2015) ................................................................................................ 4

*Berman v. Freedom Financial Network, LLC*,
  400 F. Supp. 3d 964 (N.D. Cal. 2019) ............................................................................................... 6

*Burrows v. BMW of North America, LLC*,
  2018 WL 6314187, *2 (C.D. Cal. Sept. 24, 2018) ....................................................................... 10, 11

*City of Pomona v. SQM N.A. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) ............................................................................................................ 6

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311, 1315 (9th Cir. 1995) ............................................................................................ passim

*Domingo ex rel. Domingo v. T.K.*,
  289 F.3d 600, 607 (9th Cir. 2002) ............................................................................................. 11, 12

*DSU Med. Corp. v. JMS Co., Ltd.*,
  296 F. Supp. 2d 1140 (N.D. Cal. 2003) .......................................................................................... 10

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ........................................................................................................................... 4

*GPNE Corporation v. Apple, Inc.*,
  12-cv-02885-LHK, 2014 WL 1494247, at *2 (N.D. Cal. Apr. 16, 2014) .................................. 10, 11

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137, 147–48 (1999) ............................................................................................................. 7

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-MD-2420 YGR, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ........................................... 5

*In re Online DVD Rental Antitrust Litig.*,
  No. M 9-2029 PJH, 2010 WL 5396064 (N.D. Cal. M 9-2029 PJH),
  2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) .................................................................................. 5

*In re PFA Ins. Mktg. Litig.*,
  2021 WL 5994908 (N.D. Cal. Nov. 3, 2021) ..................................................................................... 5

*Kennedy v. Collagen Corp.*,
  161 F.3d 1226 (9th Cir. 1998) ............................................................................................................ 4

*Messick v. Novartis Pharm. Corp.*,
  747 F.3d 1193, 1196 (9th Cir. 2014) .................................................................................................. 6

*Otto v. LeMahieu*,
  No. 4:19-cv-00054-YGR, 2021 WL 1615311 (N.D. Cal. Apr. 26, 2021) ......................................... 4

*Perez v. Rash Curtis & Assocs.*,
  No. 16-cv-03396-YGR, 2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) ........................................ 4, 7

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) .............................................................................................................. 6

*Stathakos v. Columbia Sportswear Co.*,
    15-CV-04543-YGR, 2017 WL 1957063 (N.D. Cal. May 11, 2017) ................................. 5, 7, 8

*Thompson v. Whirlpool Corp.*,
    2008 WL 2063549 (W.D. Wash. 2008) ............................................................................... 4

*Trulove v. D'Amico*,
    2018 WL 1090248 (N.D. Cal. Feb. 27, 2018) ...................................................................... 6

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ............................................................................................. 4

**Rules & Standing Orders:**

Rule 702, Federal Rules of Civil Procedure ................................................................................. 4

Rule 703, Federal Rules of Civil Procedure ................................................................................. 7

§ 11, Standing Order in Civil Cases (Judge Yvonne Gonzalez Rogers) ................................... 4–5

iii
PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO EXCLUDE NELSON'S OPINIONS 4:20-cv-03664-YGR-SVK

## I. INTRODUCTION

Google seeks to exclude the entirety of the expert rebuttal report authored by Mr. David Nelson. Dkt. 663 ("Mot."). Mr. Nelson is a retired agent from the Federal Bureau of Investigations ("FBI") with approximately 18 years' experience performing cyber crime investigations. Dkt. 608-8, Expert Report of David Nelson ("Nelson Rep.") ¶ 5. As detailed in that report, Mr. Nelson opined that Mr. Georgios Zervas (retained as an expert by Google) provided an incomplete and misleading account of how Google saves, collects, and uses browsing information, including private browsing information. Nelson Rep. ¶¶ 2, 17–18. Contrasting Mr. Zervas' limited analysis of only cookie values (despite having access to the information obtained through the Special Master process and apparently choosing not to review or evaluate those productions in connection with his stated opinions), Mr. Nelson provided a more complete picture of how Google has provided troves of information to law enforcement in hundreds of his cases where the request was solely based on an IP address and date range. Nelson Rep. ¶¶ 25–30. In his experience as an FBI agent, which includes cases he personally investigated and also supervised, those productions by Google in response to law enforcement requests has included private browsing data. Nelson Rep. ¶ 37. This information could be linked to specific individuals and devices. Nelson Rep. ¶¶ 31–36.

Mr. Nelson's report provides relevant context for evaluating the veracity of Mr. Zervas' opinions and also to understand the issues in this case. And while Google seeks to dismiss Mr. Nelson's opinions as speculation, they are consistent with other discovery in this case. The Special Master process (which was ongoing for about six months, and which resulted in multiple productions by Google) independently confirms Mr. Nelson's real-world experience with FBI investigations—demonstrating that Google saves, collects, and uses browsing activity (including private browsing activity) by, *inter alia*, IP address. *See* Dkt. 643-8, Expert Report of Jonathan Hochman §§ VIII.A, VIII.D–F, VIII.H.

Tellingly, Google offers nothing to dispute the legitimacy of Mr. Nelson's opinions based on his experience at the FBI: Google routinely produced (and still produces) information to law enforcement based on IP address and date range. Google also offers nothing to refute that the

information produced by Google to law enforcement included (and still includes) private browsing information. Google has the keys to its own kingdom, and Google could have sought to impeach Mr. Nelson.

Unable to dispute the truth of these core facts, Google seeks to attack Mr. Nelson. Google's motion oversimplifies and cherry picks Mr. Nelson's testimony, attempting to cast his testimony as evasive and refusing to substantiate his rebuttal to Mr. Zervas' incomplete and misleading opinion. In fact, Mr. Nelson provided hours of testimony, in support of his stated opinions, and only invoked confidentiality concerns when the details might identify a suspect or victim of a particular crime. That is not a basis to now strike Mr. Nelson's report and bar him from testifying. Mr. Nelson's experience with Google's responsiveness to requests from the FBI is neither unique nor controversial—again, it is confirmed by the process overseen by the Special Master: identifiers (such as an IP address) are tied to browsing information (including private browsing information) that Google easily retrieves from its systems.

Plaintiffs respectfully request that the Court deny Google's motion and provide Mr. Nelson to provide his relevant, proper, and supported testimony.

## II. FACTUAL BACKGROUND

Mr. Nelson began his career with the FBI in 1998. Nelson Rep. ¶ 20. In 2001, Mr. Nelson began working as an investigator in the cyber crime division of the FBI, investigating cases involving computer intrusions, online predators, cyber stalking, internet fraud, identity theft, and intellectual property violations. Nelson Rep. ¶ 20. As a cyber crime investigator, Mr. Nelson often obtained and enforced administrative subpoenas, grand jury subpoenas, court orders, and search warrants to obtain additional information to investigate criminal conduct. Nelson Rep. ¶ 23. This included submitting IP addresses and date ranges to Google and other technology companies to obtain additional evidence related to the investigations. Nelson Rep. ¶¶ 23, 25–27, 28–30; Dkt. 663-2, Deposition Transcript of David Nelson ("Nelson Tr.") at 62:2–67:13. The responsive information from Google included browsing information that was either linked or not linked to specific Google accounts. Nelson Tr. at 53:4–56:5.

1  During his deposition, Mr. Nelson was asked about and discussed the training he received with the FBI and also with respect to cyber crime investigations. Nelson Tr. at 21:18–25:9. He also testified about investigations and other professional experience, including assisting other FBI agents with obtaining information from Google. Nelson Tr. at 27:4–34:4, 49:19–51:25, 53:4–55:5, 57:17–23, 59:7–61:5, 82:21–83:14. This included submitting IP addresses and date ranges to Google, where Google would then provide responsive information, including browsing history. Nelson Tr. at 62:2–69:3. Mr. Nelson confirmed that the statistics Google publishes for its responsiveness to subpoenas, court orders, search warrants, and wiretap orders in its Transparency Report[1] were consistent with his experience at the FBI. Nelson Tr. at 81:4–82:8.

Google never denied Mr. Nelson's requests (whether an administrative subpoena, grand jury subpoena, search warrant, or court order) because the responsive data concerned private browsing data or information not associated with a Google account; Google still produced that information. Nelson Tr. at 83:19–84:24, 87:6–90:12, 100:10–103:2, 108:16–110:10. For his hundreds of investigations involving requests submitted to Google (Nelson Tr. at 113:1–114:20), only once did the information Google provided not relate to the suspected target of the investigation—but that information Google provided allowed Mr. Nelson to identify the perpetrator (who used a public computer). Nelson Tr. at 80:12–81:3, 91:2–98:10, 103:9–105:12, 106:25–107:17. Mr. Nelson testified that when he presented the browsing activity to suspects, at least three admitted that their browsing activity was done in a private browsing mode, but due to the sensitive nature of the investigations, Mr. Nelson could not reveal details that would permit identification of the defendant or victim. Nelson Tr. at 53:4–55:5, 57:17–23, 59:7–61:5, 69:4–71:19 ("Sir, respectfully, I can't answer any questions about case-specific information. Only my actions and activity related to investigations. *So I can't provide subject or victim names*"), 98:5–10 ("Q. Okay, You can't tell me, then, if the cybercafe user that you just referenced was in the United States; is that correct? A. Again, I'm not trying to be argumentative. It's – I'm not permitted to disclose any details about any cases, no matter how minute *they may seem*").

---

[1] Nelson Rep. ¶ 26, n.10 (citing Global Request for User Information, Google, available at: https://transparencyreport.google.com/userdata/overview)

1  Mr. Nelson testified that although Google's responses to his FBI requests did not explicitly
2  reflect whether the responsive information was private browsing information, he had reviewed the
3  now publicly available sanctions order. Nelson Tr. 108:16–110:10. The sanctions order confirmed
4  Mr. Nelson's interviews with the three suspects—that Google saves, collects, and uses private
5  browsing information. Nelson Tr. 108:16–110:10; *see* Dkt. 593-3 at 16–42 (Court's factual finding
6  that Google saves, collects, and uses private browsing information, which Google did not appeal).
7  The sanctions order further confirmed the reliability of the Incognito-detection bits and how they
8  are stored with myriad identifiers, such as IP addresses. *See* Dkt. 593-3 at 33 ("Google had
9  achieved a level of confidence in its [Incognito] tracking." Dkt. 593-3 at 33 ("Good news: Chrome
10 incognito rate is ~3%!"). Mr. Nelson's testimony on these topics was not challenged.

## III. LEGAL STANDARD

"An expert should be permitted to testify if the proponent demonstrates that: (i) the expert is qualified; (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable. *Otto v. LeMahieu*, No. 4:19-cv-00054-YGR, 2021 WL 1615311, at *1 (N.D. Cal. Apr. 26, 2021) (citing *Thompson v. Whirlpool Corp.*, 2008 WL 2063549, at *3 (W.D. Wash. 2008)); *see also Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2019 WL 1491694, at *3 (N.D. Cal. Apr. 4, 2019). The "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to [non-scientific] testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *AngioScore, Inc. v. TriReme Medical, Inc.*, 87 F. Supp. 3d 986, 1015–16 (N.D. Cal. 2015) (Gonzalez Rogers, J.) (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (finding that some *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover)), *rev'd on other grounds*, 666 Fed.Appx. 884 (Fed. Cir. 2016). The trial court acts as a "gatekeeper," excluding "junk science" that does not meet the standards of reliability required under Rule 702. *General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *see also Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1229–30 (9th Cir. 1998). This Court's Standing Order in Civil Cases makes clear that "issues going to the weight and credibility to be given to a report are not proper bases to bring a

*Daubert* motion." Standing Order § 11.

At the class certification stage, the court "does not make an ultimate determination of the admissibility" of the expert testimony and "considers only whether the expert evidence is useful in evaluating whether class certification requirements have been met." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2017 WL 1391491, at *6 (N.D. Cal. Apr. 12, 2017); *see also Stathakos v. Columbia Sportswear Co*., 15-CV-04543-YGR, 2017 WL 1957063, at *3 (N.D. Cal. May 11, 2017) (noting that "[a]t this early stage, robust gatekeeping of expert evidence is not required") (internal quotation marks and citations omitted). Thus, the inquiry becomes "a tailored *Daubert* analysis which scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Id.* (internal quotation marks and citations omitted).[2]

## IV. ARGUMENT

### A. Mr. Nelson is Qualified to Provide Expert Testimony

"The threshold for qualifications is low; a minimal foundation of knowledge, skill, and experience suffices." *In re PFA Ins. Mktg. Litig.*, 2021 WL 5994908, at *4 (N.D. Cal. Nov. 3, 2021) (Gonzalez Rogers, J.). Decades of experience working in the relevant industry and "familiarity with norms and best practices therein" is sufficient. *Id.*; *see also Stathakos*, 2017 WL 1957063, at *4 (expert was qualified "[b]ased on her extensive experience in the [] industry").

Mr. Nelson performed cyber crime investigations with the FBI for approximately 18 years. Nelson Rep. ¶ 5; Nelson Tr. 21:18–25:9, 27:4–34:4. Mr. Nelson also testified that he had personally either directed or assisted with at least 100 (and possibly 240) administrative subpoenas, grand jury subpoenas, and search warrants directed to Google where Google provided browsing information based on IP address and date range. Nelson Tr. 113:1–114:20. He also remained

---

[2] *Cf. In re Online DVD Rental Antitrust Litig.*, No. M 9-2029 PJH, 2010 WL 5396064, at *10 (N.D. Cal. Dec. 23, 2010) ("In short, despite defendants' objections to plaintiffs' methodology and analysis, as courts have recognized, the issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of [impact] through generalized proof.") (internal quotation marks and citations omitted).

1  involved with these types of requests even after he transitioned to the FBI's SWAT team, assisting
2  other agents with the requests and review of data. Nelson Tr. 82:21–83:14.

3  Mr. Nelson's level of training and experience is akin to that in *Berman v. Freedom
4  Financial Network, LLC*, where this Court denied a *Daubert* challenge after finding that the
5  witness had the type of "formal training" relevant to the matters at issue in the case. 400 F. Supp.
6  3d 964 (N.D. Cal. 2019) (Gonzalez Rogers, J.). Mr. Nelson's training and experience exceeds the
7  level in *Trulove v. D'Amico*, where this Court excluded a witness because he "lack[ed] the relevant
8  qualifications to support the conclusions and opinions he offer[ed]" where his "opinions and
9  illustrations require[d] inferential leaps from th[e] evidence, and such leaps require[d] greater
10 expertise than he possesse[d]." 2018 WL 1090248, at *2 (N.D. Cal. Feb. 27, 2018).

11 Mr. Nelson is qualified to testify about how Mr. Zervas' assertions regarding private
12 browsing mode functionality are incomplete and misleading because Mr. Zervas failed to address
13 how Google actually saves, collects, and routinely produces browsing information to third parties,
14 including Google producing (for a fee) data in response to law enforcement requests tied to IP
15 addresses, where the data produced by Google would include private browsing data that, in his
16 experience, can be linked to specific individuals and devices. Nelson Rep. ¶ 2.

17 **B.  Mr. Nelson's Expert Testimony is Relevant to this Litigation**

18 The "relevancy bar is low, demanding only that the evidence 'logically advance[] a
19 material aspect of the proposing party's case.'" *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193,
20 1196 (9th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir.
21 1995)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection
22 to the pertinent inquiry." *City of Pomona v. SQM N.A. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014)
23 (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

24 Mr. Nelson's expert testimony far exceeds the "low bar" articulated in *Messick*. Although
25 Plaintiffs need not prove joinability, Mr. Nelson's testimony very clearly rebuts Google's claims
26 in this litigation regarding private browsing data. The fact that Google indeed saves, collects, and
27 uses private browsing data tied to an IP address for example further demonstrates the
28

outrageousness of Google's conduct. The truthfulness of Google's assertions in this litigation have been the subject of multiple filings with the Court, including with this issue regarding how Google uses IP addresses. *See* Dkt. 303-5 at 1 (Google asserting "IP addresses are not a reliable means to identify individual users"). Indeed, Google cites deposition testimony from Messrs. Hochman and Schneier referencing Mr. Nelson's testimony. Mot. at 3. Although Google might dispute Mr. Nelson's opinions (*see* Mot. at 1, claiming his opinion is "demonstrably false" without any evidence to the contrary), Google's dispute is better characterized as a weight or credibility argument.

Like in *Perez*, where the trial court held that an expert's opinion on the functional capacity of automatic telephone dialers was relevant to the factual issues to be tried, 2019 WL 1491694, at *4, so too does Mr. Nelson's testimony assist with a relevant matter: Google's practice of collecting, saving, and using private browsing data.

### C.     Mr. Nelson's Expert Testimony is Plainly Reliable and not Speculative

"[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999). Reliability is met when "sufficient assurances of trustworthiness are present that the expert witness' explanative theory produced a correct result to warrant jury acceptance, *i.e.*, a product of reliable principles and methods." *Stathakos*, 2017 WL 1957063, at *2. "Under Rule 703, expert opinion may be based on three possible sources: firsthand knowledge; admitted evidence; and facts or data not otherwise admitted, if they are the kind of information on which experts in the particular field reasonably would rely in forming opinions on the subject." *Id.* at *3.

In *Stathakos*, this Court conducted a reliability analysis that is instructive here. A fashion design expert was proffered to compare "major" and "modest" differences for the functional and aesthetic components between two brands. *Id.* at *4. In denying that *Daubert* challenge, the challenging party "ignore[d] the actual analysis conducted by [the expert], and the expertise that

she brings to bear on such analysis." *Id.* The expert in *Stathakos* had decades of experience (like Mr. Nelson), taught coursework relevant to her expert analysis (like Mr. Nelson), and had worked for the federal government in the field relevant to her purported expertise (like Mr. Nelson). *Id.* With that articulated experience, and despite not using any recognizable standard to conduct the analysis, the Court found the expert's testimony reliable "[b]ased on her extensive experience in the fashion industry" and that the expert had "sufficient expertise to opine" on the matters for which she was proffered. *Id.*

Like the expert in *Stathakos*, Mr. Nelson enjoys a sterling reputation as a retired FBI agent with nearly two decades of cyber crime investigative experience, which includes submitting requests to Google for information tied to IP addresses. Despite submitting hundreds of requests, receiving responsive information from Google, and Google boasting that the information assisted with solving crimes (including identifying suspects), Google claims Mr. Nelson's opinions are based on pure speculation because he stated that where responsive data had an empty field for the user account, that was an *indicator that it was private browsing*. *See* Nelson Tr. at 53:21–55:8. But Mr. Nelson *never testified that was the only reason* he knew Google collected, stored, and used private browsing information tied to an IP address: Mr. Nelson testified that three subjects expressed surprise when they were confronted with the data that Google produced and they admitted the information was done in a private browsing mode. Nelson Tr. at 59:7–61:5, 62:2–67:13. While Google asked Mr. Nelson about one example, Google never cross-examined Mr. Nelson about the two other examples. Instead, Google took the sound bite (that Mr. Nelson could not testify about details that *would identify a suspect or victim*) and moved on. Nelson Tr. at 69:4–71:19, 98:5–10.

Regardless, the substance of Mr. Nelson's expert testimony is independently verifiable and not controversial because of the data produced in the Special Master process: Google saves, collects, and uses private browsing information with the benefit of Incognito-detection bits. Dkt. 593-3 at 16–42. Those Incognito-detection bits are highly reliable. Dkt. 593-3 at 33. And while Google hid this from Plaintiffs for 1.5 years of litigation (and apparently the FBI, *see* Nelson Tr.

at 100:10–103:2, 108:16–110:10), Google also admitted the browsing activity associated with the Incognito-detection bits is used for Google's own important business purposes. Dkt. 615.

Further to that point, Mr. Zervas could have (but did not) reviewed or evaluated the actual data produced as part of the Special Master process or related to the Incognito-detection bits. Mr. Zervas could have (but did not) reviewed or evaluated information related to how Google uses IP addresses, including to provide information in response to law enforcement requests. Instead, Mr. Zervas performed basic, limited, and ultimately irrelevant experiments related to cookies, and used those experiments to present an incomplete and misleading account of how Google saves, collects, and uses private browsing information. Mr. Nelson's expert testimony is not controversial and provides a relevant rebuttal to Mr. Zervas based on real-world accounts of Google producing browsing information (including private browsing information) with as little as an IP address and date range.

### D. Mr. Nelson Provided Sufficient Details Regarding the Investigations Referenced in his Report

Asserting that Mr. Nelson never "personally observed" anything to rebut Mr. Zervas' opinion that "information from private browsing activity cannot be linked to a user or device" (Mot. at 1), Google completely ignores Mr. Nelson's report, testimony, and 18 years of experience investigating cyber crimes. Nelson Tr. at 27:4–34:4. As detailed in Mr. Nelson's report and testimony, these investigations routinely included submitting requests to Google based solely on IP addresses and date ranges, and Mr. Nelson received and reviewed from Google the browsing history associated with those IP addresses for the respective date ranges. Nelson Tr. at 49:19–51:25, 62:2–69:3, 82:21–83:14, 113:1–114:20. Google never even attempted to dispute its responsiveness to these requests (estimated to be at least 69% and as high as 88% from 2012 to 2020),[3] and instead applauded itself for assisting law enforcement to solve crimes—including the identification of suspects with the responsive data:

> Q. And if Google had not produced information in response to the FBI's requests, it would have been more difficult to solve those crimes; is that correct?

---

[3] Nelson Rep. ¶¶ 26, 29 (citing Google's Transparency Report, *supra* FN 2).

1  A.  Yes, sir, that's correct.

\* \* \* \* \*

Q.  So you said that Google providing information in response to requests from the FBI helped you solve crimes; is that right?

A.  That's correct, sir.

Q.  And potentially, without Google providing information to the FBI, some of those crimes might not have been solved; is that fair?

A.  It's a hypothetical, but I would agree that that statement.

Nelson Tr. 49:19–53:3.

Google's reliance on *GPNE Corporation v. Apple, Inc.* is at best misplaced. *GPNE* concerned a patent infringement case where the proffered expert was retained to value the infringement. 12-cv-02885-LHK, 2014 WL 1494247, at *2 (N.D. Cal. Apr. 16, 2014). Although the challenged expert acknowledged an $86 per unit average profit for the alleged infringing product, the expert "advance[d] no reasoned basis for deriving $1 per unit royalty from the $86 average net incremental profit." *Id.* at *4. "When pressed to provide the calculations from which he derived the $1 per unit figure, [the challenged expert] conceded that '[t]here's no specific math.'" *ID.* at *4. Ultimately, the court struck this expert because the challenged expert simply "picked the million dollar number" and the analytical gap was "simply too great." *Id.* at 5 (citing *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1158 (N.D. Cal. 2003) (cleaned up)).

*Burrows v. BMW of North America, LLC* is distinguishable. In *Burrows*, a proffered expert based his opinion on "confidential documents provided by BMWNA in other cases." 2018 WL 6314187, *2 (C.D. Cal. Sept. 24, 2018). But a closer reading of *Burrows* reveals the extent of the obstruction of expert discovery: neither the confidential documents *nor "any evidence of their contents"* were produced, and the proffered expert "refused to discuss them at his deposition." *Id.* (emphasis added). That is a far cry from this case, where Mr. Nelson answered myriad questions relating to the details of his training, experience, and real-world interactions that confirmed what was already proven through the Special Master process: that Google saves, collects, and uses private browsing information.

1           Unlike in *GPNE*, where the court concluded that the expert essentially conjured a damages
2   calculation with no math and seemingly on feeling alone, or *Burrows*, where no details of
3   documents supporting an opinion were provided, Mr. Nelson provided details concerning his
4   investigations and the confessions from people who admitted the browsing information that the
5   FBI confronted them with was done in private browsing mode. Nelson Tr. 59:7–61:5. Mr. Nelson
6   only invoked the issue of confidentiality when the questions probed details that would identify
7   subjects or victims. Nelson Tr. At 53:4–55:5, 57:17–23, 59:7–61:5, 69:4–71:19 ("Q. Okay. The
8   target of the investigation referenced in paragraph 35 was – what was the person's name? . . . A.
9   Sir, respectfully, I can't answer any questions about case-specific information. Only my actions
10  and activity related to investigations. *So I can't provide subject or victim names*"), 98:5–10 ("Q.
11  Okay, You can't tell me, then, if the cybercafe user that you just referenced was in the United
12  States; is that correct? A. Again, I'm not trying to be argumentative. It's – I'm not permitted to
13  disclose any details about any cases, no matter how minute *they may seem*"). Mr. Nelson answered
14  nonetheless other questions related to these investigations to the extent these did not seek
15  information that would identify subjects or victims. *See, e.g.*, Nelson Tr. 53:4–12, 59:7–60:10
16  (describing interviews with suspects who admitted their activity was done in a private browsing
17  mode), 97:6–24 (testifying about what information was used to identify a subject in a particular
18  example). There is no "black box" where Mr. Nelson simply referred Google to his "years of
19  experience," and Google is of course free to cross-examine Mr. Nelson on these issues at trial, but
20  Google has not advanced any argument for why Mr. Nelson's opinions should be wholesale
21  excluded from this case.
22          Google's reliance on *Domingo ex rel. Domingo v. T.K.* is also misplaced. 289 F.3d 600,
23  607 (9th Cir. 2002). In *Domingo*, the parties hired medical experts to opine on causation. 289 F.3d
24  at 604. After the plaintiff's expert authored a report and testified, the defendant's experts offered
25  opinions to the contrary, and the defendant moved to strike plaintiff's expert's opinion. *Id.* The
26  court then appointed a technical advisor to evaluate the challenged opinion. *Id.* The court-
27  appointed technical advisor reviewed the expert reports, the literature on the specific area of
28

medicine, and ultimately opined that the plaintiff's expert's opinion was "not scientifically derived nor is it based on objectively verifiable and scientifically valid principles and methodology." *Id.* The court ultimately agreed with the advisor and excluded that testimony. *Id.*

Unlike in *Domingo*, Mr. Nelson's opinions are non-controversial and supported by the uncontroverted facts that Google indeed "saves, collects, and routinely produces data to third parties . . . tied to IP addresses." Nelson Rep. ¶¶ 25–36. This includes private browsing data that Google tracks with the three Incognito-detection bits that Google hid from discovery for over 1.5 years. *See* Dkt. 593-3 (sanctioning Google for failing to produce discovery related to Incognito-detection bits). Google produced similar, if not identical, data in the process overseen by the Special Master. *See* Dkt. 643-8, Expert Report of Jonathan Hochman §§ VIII.F & VIII.H; *see also* Dkt. 643-9, Expert Rebuttal Report of Jonathan Hochman §§ V.A–D. Mr. Zervas could have analyzed that data to supplement his limited experiments, but did not.

In short, properly and in rebuttal to Mr. Zervas, Mr. Nelson confirms the real-world application of what the parties observed from the process overseen by the Special Master.

## V.  CONCLUSION

Plaintiffs respectfully request that the Court deny Google's motion to strike the expert report of Plaintiffs' rebuttal expert Mr. David Nelson.

Dated:  August 19, 2022                                Respectfully submitted,

By: */s/ John A. Yanchunis*

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel.: (415) 293 6858
Fax: (415) 999 9695

James Lee (admitted pro hac vice)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (305) 539-1307

Alison L. Anderson (CA Bar No. 275334)
alanderson@bsfllp.com
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017
Tel.: (213) 629-9040

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400

| | |
|---|---|
| 1 | Los Angeles, CA 90067 |
| 2 | Tel: (310) 789-3100 |
| | abonn@susmangodfrey.com |
| 3 | **Attorneys for Plaintiffs** |