**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br>Defendant. | Case No.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF THE REBUTTAL EXPERT REPORT OF KONSTANTINOS PSOUNIS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: September 27, 2022<br>Time: 2:00 p.m.<br>Location: Courtroom 1 – 4th Floor |

1

## <u>TABLE OF CONTENTS</u>

2

I.      INTRODUCTION.................................................................................................. 2

II.     BACKGROUND .................................................................................................. 5

        A.      The Special Master Process, and Mr. Hochman's Opinions About the Data .. 5

        B.      While Ignoring the Data that Google Actually Produced, Dr. Psounis Purports
                to Rebut Mr. Hochman's Opinions about Google's Data ................................ 7

III.    LEGAL STANDARD ......................................................................................... 10

IV.     ARGUMENT ...................................................................................................... 11

        A.      Dr. Psounis' Opinions Should Be Excluded Because He Did Not Employ Any
                Methodology to Evaluate the Data He Opines About.................................... 11

        B.      Dr. Psounis' Opinions Should Be Excluded Because ███████████
                ███████████████████████████ ................................................... 15

V.      CONCLUSION .................................................................................................. 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Baker v. FirstCom Music,*
    2018 WL 2572725 (C.D. Cal. Mar. 27, 2018) ...................................................4, 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) .................................................................1, 4, 10, 11

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ................................................................10

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136 (1997) ...........................................................................4, 15

*Grodzitsky v. Am. Honda Motor Co.,*
    957 F.3d 979 (9th Cir. 2020) ................................................................13

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ............................................................................11

*Lyman v. St. Jude Med. S.C., Inc.,*
    580 F. Supp. 2d 719 (E.D. Wis. 2008) .................................................16

*Otto v. LeMahieu,*
    2021 WL 1615311 (N.D. Cal. Apr. 26, 2021) (Gonzalez Rogers, J.) .............11, 13

*People v. Kinder Morgan Energy Partners, L.P.,*
    159 F. Supp. 3d 1182 (S.D. Cal. 2016) ................................................12

*Phillips Med. Sys. Intern. B.V. v. Bruetman,*
    8 F.3d 600 (7th Cir. 1993) ................................................................ 15-16

*In re Roundup Prod. Liab. Litig.,*
    390 F. Supp. 3d 1102 (N.D. Cal. 2018)................................................14

*Shelton v. Air & Liquid Sys. Corp.,*
    2022 WL 2712381 (N.D. Cal. July 11, 2022) (Gonzalez, Rogers, J.).....................10, 11, 13

*Siqueiros v. General Motors,*
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022)......................................... 14-15

*Sommerfield v. City of Chicago,*
    254 F.R.D. 317 (N.D. Ill. 2008) ..........................................................16

*Testone v. Barlean's Organic Oils*,
    2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ...................................................................10

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999) .............................................................................................15

*Wadler v. Bio-Rad Labs., Inc.*,
    2016 WL 6070530 (N.D. Cal. Oct. 17, 2016) ...................................................................12

*West v. California Servs. Bureau, Inc.*,
    323 F.R.D. 295 (N.D. Cal. 2017) .......................................................................................2

*Young v. Cree Inc.*,
    2021 WL 292549 (N.D. Cal. Jan. 28, 2021) (Gonzalez Rogers, J.).....................................15

**Rules**

Civil Local Rule 7 ...............................................................................................................1

Fed. R. Evid. 702 ...........................................................................................................1, 10

Fed. R. Evid. 703 ...............................................................................................................15

**Treatises**

8A Fed. Prac. & Proc. Civ. § 2031.2 n.16 (3d ed.) ....................................................................12

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

PLEASE TAKE NOTICE that on September 27, 2022,[1] at 2:00 p.m., the undersigned will appear before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California to move the Court to exclude certain opinions within the June 7, 2022 expert rebuttal report of Konstantinos Psounis, which Defendant Google LLC ("Google") submitted with its opposition to Plaintiffs' Motion for Class Certification. *See* Dkt. 666-21 (June 7, 2022 Expert Report of Konstantinos Psounis, or "Dr. Psounis Report").

This Motion to Exclude is made under Federal Rule of Evidence 702, Civil Local Rule 7, and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration of Mark Mao dated August 19, 2022 and accompanying exhibits, all matters of which the Court may take judicial notice, other pleadings and papers on file in this action, and other written or oral argument that Plaintiffs may present to the Court.

## ISSUE TO BE DECIDED

Whether Dr. Psounis' Opinions 1 and 3 and 7-10 should be excluded as unreliable under Federal Rule of Evidence 702 and the standards articulated in *Daubert*.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court exclude Opinions Nos. 1 and 3 and 7-10 of the Dr. Psounis Report.

Dated: August 23, 2022

By:   /s/ *Mark Mao*

---

[1] The Court is already scheduled to hear Plaintiffs' motion for class certification (Dkt. 609) and Google's *Daubert* motions (Dkt. 662-64) on September 20, 2022. Plaintiffs are amenable to all of these motions being heard together, whether on September 20, or September 27.

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

## I.    INTRODUCTION

Google's rebuttal expert Dr. Konstantinos Psounis proffers six opinions purportedly "rebutting" Jonathan Hochman's expert opinions, which Mr. Hochman presented based on his review of private browsing data, log schemas, documents produced in this case, and the sworn testimony of Google employees. Google relies on those Psounis rebuttal opinions in its Opposition to Plaintiffs' Motion for Class Certification, arguing that Plaintiffs have not met Rule 23(b)(3)'s superiority requirement because, according to Google, its data cannot be used to "readily identify class members." Dkt. 665 at 25.

Setting aside that Google's argument is legally irrelevant in the Ninth Circuit,[2] and setting aside that Google is already precluded from making arguments about data it deleted,[3] some of Dr. Psounis' opinions should be excluded because Dr. Psounis failed to employ any scientific methodology using the actual data produced in this data privacy case or otherwise available to Google. Instead, Dr. Psounis makes sweeping and unsupported opinions about what cannot be done with respect to class member identification, based on a comically limited analysis he admittedly did not do himself and was instead conducted by ███████████████████ ████████████████████████████████████████████. None of this complies with the requirements for admissible expert testimony.

As part of the Court-ordered Special Master process (*see* Dkt. 331), Google over a seven-month period identified ███ relevant data sources, and Plaintiffs tested over ██ of those data

---

[2] Plaintiffs' motion for class certification cited numerous cases establishing that (1) there is no ascertainability requirement in the Ninth Circuit, (2) self-certification is sufficient, and (3) it is irrelevant whether the defendant's records can be used to confirm class membership. *E.g.*, *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 306 (N.D. Cal. 2017) (Gonzalez Rogers, J.); *see also* Dkt. 609 at 21-22 (citing additional cases).

[3] To account for Google's refusal to preserve all private browsing data, the Court issued a preclusion order providing: "Google may not use the fact that only sampled data, not complete data, is available to challenge class certification generally or attestations by individuals that they are members of the class." Dkt. 587 at 7.

sources.[4] Many ████ of data were generated. Mr. Hochman examined that data, including by running independent tests detailed in his reports. Based on that testing, Mr. Hochman detailed how he ████████████████████████████████████████████████████ ████████████████████████████████████. *See* Dkt. 608-12 ("Hochman Report") §§ VIII.F, VIII.H.

Instead of rebutting Mr. Hochman's analysis using a valid scientific approach, Dr. Psounis *entirely ignored* Mr. Hochman's data analysis. In fact, Dr. Psounis appears to have analyzed almost no data at all, did not study any log schemas, and admitted that his opinions did not rely on any fields provided during the Special Master process. He conducted no experiments to test the reliability of Mr. Hochman's analyses nor did he conduct any investigation into the myriad of information stored in Google logs to assess class identification. Instead, Dr. Psounis provided a cherry-picked (and flawed) rebuttal premised on signed-out private browsing data from only *one out of the available 160 data sources*:

| Data Sources Google Identified As Relevant through Special Master Process | Sources Tested by Hochman | Sources Tested by Psounis | Sources Selected by Psounis and Tested ████ |
|---|---|---|---|
| ██ | ██ | 0 | 1 (out of ███ |

*See* Exh. A Data Sources Chart (chart showing data sources identified by Google, sources tested by Mr. Hochman and Dr. Psounis, and analysis rebutted by Dr. Psounis).

Even for the one data source chosen, Dr. Psounis did not conduct any of the analysis himself. Rather, at deposition Dr. Psounis admitted ███████████████████████████ Exh. B Dr. Psounis Deposition at 55:8-9 (emphasis added).[5] ███████████████████████████████

---

[4] As explained below, ██ of these sources could not be tested because Google did not identify them until June 14, 2022—after the March 4 close of fact discovery—when Google was sanctioned and ordered to identify additional logs that contain Incognito detection bits. Dkt. 588.

[5] ████████████████████████████████████████████████████████████████ Counsel for Google refused to clarify. *Id.*

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

1

2      —instead repeatedly invoking the expert stipulation (Dkt. 272) and instructing Dr.

3 Psounis not to answer questions about that analysis. Dr. Psounis also conceded that

4

5

6      That Dr. Psounis did not conduct his own data analysis and instead relied

7       to run (very limited) tests for him was not disclosed in his report. And after (1)

8 performing an extremely limited and flawed user interest profile analysis on the single source

9 selected for him       and (2) ignoring Mr. Hochman's thorough analysis of the actual

10 signed-out private browsing data produced in this case (which provides positive proof of

11 Incognito detection reliability and class member identification), Dr. Psounis now seeks to provide

12 sweeping rebuttal opinions about what can and cannot be done with Google's trove of private

13 browsing data. *E.g.*, Dr. Psounis Report Opinion 1 ("Mr. Hochman's opinion that users can be

14 readily identified from the data at issue is incorrect."). That opinion and other opinions like it

15 (Psounis Opinions 3, 7, 8, 9, and 10) should be excluded under *Daubert*.

16      "A court may conclude that there is simply too great an analytical gap between the data

17 and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The gap here is

18 a crater—Dr. Psounis completely ignored the data analysis he purports to rebut as a data scientist.

19 Moreover, Dr. Psounis did next to nothing to confirm the qualifications or work of

20

21

22

23      Google and Dr. Psounis disregarded these rules. For these reasons,

24 the Court should exclude Dr. Psounis' rebuttal opinions as unreliable and improper. [6]

25

26

27 [6] Plaintiffs note, however, the pending motion for class certification should be granted irrespective of the Court's ruling on this motion. *See* Dkt 609.

28

1   **II.    BACKGROUND**

2       **A.    The Special Master Process, and Mr. Hochman's Opinions About the Data**

3       Plaintiffs have moved to certify two nationwide classes and a California subclass of

4   Google accountholders, asserting seven claims arising out of Google's collection, storage and

5   use of account holders' data even when they are signed out of their accounts, browsing in a

6   private browsing mode, and visiting a non-Google website. *See* Dkt. 609. All of Plaintiffs' claims

7   turn on Plaintiffs' form contract with Google, in which "Google promised Plaintiffs that using

8   'private browsing mode' would prevent Google from collecting Plaintiffs' data." Dkt. 363 at 21

9   (order denying motion to dismiss).

10      Google has from the beginning of this case made clear that one of its principal arguments

11  against class certification would be that the "identity of alleged class members . . . is not

12  ascertainable." Dkt. 429-29 at 13 (Google's October 30, 2020, Responses & Objections to

13  Requests for Production). Google now raises that argument in opposition to Plaintiffs' motion

14  for class certification. *See* Dkt 665 at 22-24. Given Google's alleged defense, the Court on

15  November 12, 2021 (with Special Master Brush's assistance) devised a data-production process

16  to provide "Plaintiffs the tools to identify class members using Google's data." Dkt. 331 at 4.

17      To that end, the Court ordered Google to provide a list of all data sources that had

18  previously been searched and a declaration from a Google employee that, "[t]o the best of its

19  knowledge, Google has provided a complete list of data sources that contain information *relevant*

20  to Plaintiffs' claims." Dkt. 331 at 8 (emphasis added). Google was also required to provide full

21  schemas for every source and identify all tools that could be used to search these sources,

22  including instruction manuals for those tools. *Id.* at 9.

23      In response to that order, Google selected ▮ data sources (later increased to ▮ data

24  sources, as detailed below) to be part of the Special Master process. *See* Mao Decl. ¶ 3. With this

25  process, Plaintiffs were permitted to submit search criteria to test against a portion of these logs

26  on an iterative basis, amending their search criteria at each iteration based on the results of the

27  prior search. *See* Dkt. 331 at 8-9. Google was required to produce all responsive data, the search

28

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

1   scripts it used to generate that data, and all schema. *See id.*

2       The process began in November 2021 and concluded in May 2022, with Google

3   identifying ▓ data sources and Plaintiffs selecting ▓ of those sources for searches, spanning

4   three iterative searches. *See* Mao Decl. ¶ 2. Of the ▓ sources Google identified, ▓ were

5   revealed just a few days before the close of fact discovery and within two weeks after the close

6   of fact discovery, when Plaintiffs finally uncovered the Incognito-detection bits that Google had

7   been concealing for over a year (and for which Google was ultimately sanctioned). *See* Dkt. 588

8   at 7, 21-24.

9       After analyzing the responsive data produced from Plaintiffs' three iterative searches, Mr.

10  Hochman reached the following opinions and conclusions (among others), relating to how

11  Google's records of private browsing data can be used to identify class members:

12      - "It is my opinion there are several ways to use Google's records to identify class
          members. For example, for Class 1, the Chrome class, Google's records can be
13        used to (1) identify Incognito traffic, and (2) link that Incognito traffic to users'
          Google accounts or to users' accounts with non-Google websites." Hochman
14        Report Opinion 22.

15      - "In Appendix H.11 and Appendix I, I discuss using x-client-data in ads logs to
          identify Incognito traffic and show that for data from the Second Iterative Search,
16        Incognito   detection   accuracy   is   100%.   Furthermore,   Google's
          'maybe_chrome_incognito' field is also 100% accurate." Hochman Report
17        Appendix G ¶ 25.

18      - "The ▓ logs that contain the 'maybe_chrome_incognito' field as well as ▓
          ▓▓▓ logs containing 'incognito' detection fields contain identifiers that can be
19        used to find logs containing the same identifiers that track and store the user's IP
20        address and User Agent. Accordingly, for any Google log entry where
          maybe_chrome_incognito is equal to 'true,' the combination of identifiers and the
21        IP address and user agent for that log entry can be used to identify class members."
          Hochman Report ¶ 293.
22

23      Mr. Hochman served that report on April 15, 2022. Roughly one month later, this Court

24  issued an order sanctioning Google for concealing the three (currently known) Incognito

25  detection bits from Plaintiffs until just before (and after) the close of fact discovery. *See* Dkt.

26  588. As part of that order, Google was required to identify all other logs and data sources that

27  contain any Incognito detection bit, and on June 14, Google produced a declaration from Martin

28

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

Sramek identifying ████ additional logs containing Incognito bits. *See* Dkt. 614-2. Mr. Sramek explained that these newly revealed logs were used by Google ████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████ Dkt. 614-2 ¶¶ 6-10. These ████ additional logs bring the total number of relevant data sources that Google has now identified from ████ to ████. Because these logs were only recently identified, Mr. Hochman was prevented from requesting that Google produce data and schema from them.

### B. While Ignoring the Data that Google Actually Produced, Dr. Psounis Purports to Rebut Mr. Hochman's Opinions about Google's Data

Google's expert Dr. Psounis submitted a June 7, 2022 report (Dkt. 666-21) as a rebuttal to certain of Mr. Hochman's opinions. This motion to exclude focuses only on Psounis Opinions 1, 3, and 7-10, where Dr. Psounis purports to rebut the opinions that Mr. Hochman rendered based on his analysis of the data produced by Google.[7] Each of these Psounis opinions amount to a far-reaching conclusion about what can and cannot be done with Google's data with respect to class member identification.

- "Opinion 1: Mr. Hochman's Opinion That Users Can Be Readily Identified From The Data At Issue (#18) Is Incorrect"
- "Opinion 3: Mr. Hochman's Opinions On 'Private Browsing Profiles,' Server-Side Processes, And Data Joinability (#10, 18, 19, 20) Are Inaccurate"
- "Opinion 7: Mr. Hochman's Proposal To Identify Class I (Chrome Class) (#22) Is Unreasonable and Unreliable"
- "Opinion 8: Mr. Hochman's Opinion That The 'maybe_chrome_incognito' Bit Reliably Detects Incognito Traffic (#23) Is Incorrect"
- "Opinion 9: Mr. Hochman's Proposal To Identify Class II (#22) Is Unreasonable And Unreliable"
- "Opinion 10: Mr. Hochman's Proposed Methods For Identifying Class Members

---

[7] Dr. Psounis also provided rebuttal opinions to another of Plaintiffs' experts, Bruce Schneier. Plaintiffs are not at this time seeking to exclude Dr. Psounis' rebuttal opinions addressing Professor Schneier.

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

(#22) Do Not–And Cannot–Account For Shared Devices Or Accounts"

The problem with each of these opinions is that (unlike Mr. Hochman) Dr. Psounis did not base them on a scientific review or analysis of the log schema and data produced under the Special Master process. And for the limited testing that was done on signed-out private browsing data—using data from just █ of the ████ sources disclosed through the Special Master process— Dr. Psounis relied entirely on ████████████████████████ to conduct his test (which he did not disclose in his report). Exh. B Dr. Psounis Deposition at 172:1-18.[8] For his only other analysis, which did not even assess signed-out private browsing data,[9] Dr. Psounis likewise relied on the same ████████████.

Rather than conduct actual data analysis, Dr. Psounis focused on Google's litigation-driven interpretation of its own policies and hypothetical scenarios. For example, to rebut Mr. Hochman's Opinion 18 that "information tied to a user's Google account could be linked to the same individual's private browsing information," Dr. Psounis noted that Google "implements policies and technical controls to prevent" private browsing data from being joined with users' Google accounts.[10] Dr. Psounis Report ¶ 44. Similarly, to rebut Mr. Hochman's Opinion 23 that "Google's 'maybe_chrome_incognito' bit reliably identifies Incognito traffic," Dr. Psounis surmises there could be "false positives" in edge case scenarios without providing any testing or analyses to quantify Incognito detection reliability. *Id.* ¶ 143. Given that Mr. Hochman has

---

[8] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

[9] This analysis was limited to IP addresses and user agents in the named Plaintiffs' preserved authenticated data—that is, data captured while Plaintiffs were signed in (which is outside the scope of the class definition). Dr. Psounis Report ¶ 155 & Dr. Psounis Report App. F. Mr. Hochman, by contrast, analyzed both signed-in data and signed-out private browsing data, and rendered opinions about the extent to which that analysis could be accurately used to identify class members.

[10] Even those who are not data scientists would have to wonder why such policies are necessary if people cannot be reidentified through Google's data.

1  positively demonstrated class member identification using actual data produced by Google, Dr.

2  Psounis' citation of selected Google policy documents and testimony cannot scientifically prove

3  the negative.

4        Finally, ***Dr. Psounis completely ignored Mr. Hochman's assessment of the actual data***

5  ***produced in the case***, where Mr. Hochman was able to identify Incognito traffic with 100%

6  accuracy for ▮▮▮▮▮▮▮ using Google's own internal Incognito detection mechanisms,

7  including the maybe_chrome_incognito detection bit. Hochman Report Appendix G ¶ 25; *see*

8  *also* Hochman Report Appendix I (containing detailed spreadsheet summarizing analysis of those

9  ▮▮▮▮▮▮). Dr. Psounis likewise ignored Mr. Hochman's analysis where he showed

10  with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 234, 236  246-47 ▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮

14        The reasons for Dr. Psounis' shortcomings became even more clear at his deposition:

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23

24  [11] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  [12] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮

28

1 ████████████████████████████████████████████████████

2 ████████████████████████████████

3         Dr. Psounis now seeks to offer broad rebuttal opinions addressing what can and cannot

4 be done with the entirety of Google's data and data systems, despite (1) having reviewed an

5 extremely limited dataset—just 1 of the ██ sources that Google has deemed relevant, and (2)

6 ignoring the entirety of Mr. Hochman's data analysis, which showed through examples how class

7 members can be identified using Google's data. Incredibly, Dr. Psounis claims to know what can

8 and cannot be done with respect to identifying users through Google's data despite the fact that

9 Google recently filed a *second* declaration of Mr. Sramek, who this time averred in a sworn

10 statement that Google cannot fully account for "the data sources at Google in which any field is

11 used by any team to infer Incognito browsers state in any form." August 18, 2022 Sramek Decl.

12 ¶ 7 (Dkt. 695-4). Indeed, Mr. Sramek stated it would take Google, the largest data tracking

13 company in the world "multiple months-long investigations" to figure out where Incognito data

14 goes once it is collected (in addition to the two-plus years of discovery the parties have engaged

15 in). *Id.* Dr. Psounis has simply not done the work to support his opinions.

16 **III.     LEGAL STANDARD**

17         "The Ninth Circuit has held that expert evidence offered at the class certification stage

18 must meet the standard of relevance and reliability articulated in *Daubert v. Merrell Dow*

19 *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Testone v. Barlean's Organic Oils, LLC*, 2021 WL

20 4438391, at *2 (S.D. Cal. Sept. 28, 2021) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

21 982 (9th Cir. 2011)). Expert testimony is admissible only if (1) "the expert's scientific, technical,

22 or other specialized knowledge will help the trier of fact to understand the evidence or to

23 determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the

24 testimony is the product of reliable principles and methods;" and (4) "the expert has reliably

25 applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "The proponent

26 of expert testimony has the burden of proving admissibility in accordance with Rule 702."

27 *Shelton v. Air & Liquid Sys. Corp.*, 2022 WL 2712381, at *1 (N.D. Cal. July 11, 2022) (Gonzalez,

28

Rogers, J.).

**IV.   ARGUMENT**

**A.   Dr. Psounis' Opinions Should Be Excluded Because He Did Not Employ Any Methodology to Evaluate the Data He Opines About**

Dr. Psounis' Opinions 1, 3, and 7-10 are inadmissible under *Daubert* because, in reaching those rebuttal opinions, Dr. Psounis failed to "employ any method, much less one scientific or reliable." *Shelton*, 2022 WL 2712381, at *4 (granting motion to exclude). "To determine whether a scientific opinion is sufficiently reliable to be admissible, the Court must analyze not what the expert says, but what basis they have for saying it." *Otto v. LeMahieu*, 2021 WL 1615311, at *4 (N.D. Cal. Apr. 26, 2021) (Gonzalez Rogers, J.) (cleaned up). "Methodology can be reliable if: (i) the methodology can and has been tested; (ii) the methodology has been subjected to peer review; (iii) the known or potential rate of error for the technique has been addressed; or (iv) the methodology has a general degree of acceptance in the relevant scientific community." *Id.* (citing *Daubert,* 509 U.S. 579 at 593-94).

Here, Dr. Psounis does not apply any methodology, let alone a reliable one. To be clear: Dr. Psounis did not critique Mr. Hochman's methodology, the application of that methodology, or the data and examples provided. Nor did Dr. Psounis conduct a competing analysis of the private browsing data that Mr. Hochman analyzed. This is plainly inadequate under *Daubert*. "[A]n expert must 'employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at *4 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). Surely Dr. Psounis would not allow his students at USC to get away with critiquing a data analysis or opining about what is or is not possible with existing data without even looking at the data or addressing a contravening analysis. Yet Dr. Psounis now seeks to tell the jury just that. It is as if Dr. Psounis either forgot to do his homework or he gave up when he decided the results may not fit his opinions. Either way, his lack of any methodology and application renders his opinion inadmissible.

1        Dr. Psounis' treatment of Mr. Hochman's opinion about the reliability of Incognito

2   detection is case-in-point. Based on his review of the data produced through the Special Master

3   process Mr. Hochman was able to identify Incognito traffic with 100% accuracy based on over

4   ████████████ that he analyzed. Hochman Report Appendix G ¶ 25; App. I (detailed spreadsheet

5   summarizing his analysis).

6        Dr. Psounis (in Opinion 8) claims that "Mr. Hochman's opinion that the

7   'maybe_chrome_incognito' bit reliably detects Incognito traffic (#23) is incorrect." Given that

8   Dr. Psounis characterizes Mr. Hochman's conclusion as "incorrect," one would expect Dr.

9   Psounis to have reviewed Mr. Hochman's analysis and to critique Mr. Hochman's methodology,

10  inputs, findings, or some combination thereof—or perhaps even proffer competing tests or

11  results. But Dr. Psounis did none of that.[13] Instead, he devotes just four pages to Mr. Hochman's

12  extensive data analysis (████████████████████████████████ in the

13  Hochman Appendix I spreadsheet). And within those four pages, Dr. Psounis simply muses over

14  edge case scenarios that might disrupt the algorithm, such as when someone has not used Chrome

15  in thirty days, or in the case of a very brand-new Chrome browser accessing the internet for the

16  first time. Dr. Psounis Report ¶¶ 142-45. Dr. Psounis has no scientific answer to the fact that his

17  theoretical musings were not reflected in Mr. Hochman's findings based on over ████████

18  ████████. Nor did Dr. Psounis conduct any competing data analysis or tests to prove that his

19  musings might arise in a meaningful number of instances.

---

20  [13] Accordingly, Dr. Psounis' opinions do not constitute proper rebuttal, and the court should
21  exclude them for the additional reason that they are untimely. "The test of whether an expert's
    opinion constitutes rebuttal or a new opinion. . . [is] whether a rebuttal attempts to put forward
22  new theories outside the scope of the report it claims to rebut." *Wadler v. Bio-Rad Labs., Inc.*,
    2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016) (internal quotation marks omitted). Dr.
23  Psounis entirely ignored the data analysis he purports to rebut and failed to even review the
    underlying data Mr. Hochman studied. His opinions, therefore, were submitted well past the
24  deadline set by this Court for opening expert reports and should be excluded. *See also* 8A Fed.
    Prac. & Proc. Civ. § 2031.2 n.16 (3d ed.) ("When a party attempts to designate as a 'rebuttal'
25  expert someone whose testimony is beyond the scope of appropriate rebuttal, the witness may be
    viewed as an initial expert whose testimony was not properly disclosed at the right time.");
26  *People v. Kinder Morgan Energy Partners, L.P.,* 159 F. Supp. 3d 1182, 1191-93 (S.D. Cal. 2016)
27  (excluding as untimely expert testimony that failed to constitute proper rebuttal report).

28

1    Having ignored Mr. Hochman's data analysis and tests, and neglecting to conduct his

2    own, Dr. Psounis "fails to articulate *any* generally accepted methodology for reaching *any* of his

3    conclusions or opinions" regarding the reliability of the maybe_chrome_incognito detection bit.

4    *Otto*, 2021 WL 1615311, at *5 (excluding expert opinions at class certification stage). "Experts

5    assist the fact finder in their own evaluation of the evidence by providing the fact finder with

6    opinions based upon verifiable, scientific, or other objective analysis." *Shelton*, 2022 WL

7    2712381, at *1. Dr. Psounis' phantom critique is not verifiable, scientific, nor based on objective

8    analysis. *Id.* And Dr. Psounis has articulated "no scientific basis for his observations" about Mr.

9    Hochmman's conclusions, particularly in light of "the lack of supporting . . . testing." *Grodzitsky*

10   *v. Am. Honda Motor Co., Inc.*, 957 F.3d 979, 986-87 (9th Cir. 2020) (excluding opinion at class

11   certification stage).

12       Dr. Psounis' opinions about the extent to which Google's signed-out private browsing

13   data can be identified (and therefore used to identify class members) is equally lacking in

14   methodology. Relying only on preserved GAIA [i.e., signed-in] data (and not private browsing

15   data generated under the Special Master's supervision), Dr. Psounis purported to conduct an "IP

16   Address + User Agent Data Analysis." Dr. Psounis Report ¶ 155 & Dr. Psounis Report App. F.

17   His aspiration was to show there can be multiple iterations of the same IP Address and User

18   Agent combination, thus—in his view—undermining Mr. Hochman's opinion that the

19   combination of IP address and User Agent can be used to join private browsing data with Google

20   account data. Ironically, Dr. Psounis' analysis undermines his own rebuttal.[14]

21       More fundamentally for purposes of this motion, Dr. Psounis' opinions should be

22   excluded because he seeks to draw sweeping conclusions by extrapolating from an absurdly

23

24   _____

     [14] Dr. Psounis could only show that there were mathematical overlaps in IP Addresses and User
     Agents when assessed separately, ████████████████████████████████████████████████

25   ████████████████████████████████ Dr. Psounis Report App. F ¶ 7. And Mr. Hochman used
     these unique combinations to illustrate class member identification in his report. *E.g.*, Hochman

26   Report nn. 109-11, Hochman Report App. G. The silence left by Dr. Psounis running from the
     data analysis is deafening.

27

28

1   limited study of Google's data and systems that he ▮▮▮▮▮▮▮▮▮▮ "[U]njustified

2   extrapolations from existing data can require the Court to exclude an expert." *In re Roundup*

3   *Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018). Mr. Hochman was assessing

4   whether he could accurately join private browsing data with Google account data by comparing

5   data across logs, including (but not limited to) through the combination of IP address and User

6   Agent. Dr. Psounis, by contrast, sought only to assess whether there might be matching IP / User

7   Agent pairs in the same dataset; he did not even try to determine whether there might be other

8   ways to nevertheless attribute that data to particular users. Then Dr. Psounis inferred that this

9   extraordinarily narrow analysis holds true across *all* Google data sources without actually

10   looking at them or reviewing data from them. This includes—all ▮▮ data sources identified by

11   Google and all the "data sources at Google" that "infer Incognito browser state," which Google

12   admits remain unknown (even apparently to Google). August 18, 2022 Sramek Decl. ¶ 7 (Dkt.

13   695-4). This is akin to concluding the Earth is flat based on a walk down the block (or more

14   accurately, ▮▮▮▮▮▮▮▮▮

15      *Siqueiros v. Gen. Motors, LLC*, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022) is particularly

16   instructive. The court excluded an expert's opinion that a purported vehicle defect was present

17   in all class vehicles because the expert failed to "determine[] how the Class Vehicles are allegedly

18   defective through scientific testing and analysis." 2022 WL 74182, at *8. Instead, the expert's

19   "report seems to reason backwards, by starting with the conclusion that the piston rings are

20   defective, and then showing how the evidence in the record is consistent with this theory." *Id.* at

21   *7. The expert "calculated that approximately 3% of Class Vehicles received a piston assembly

22   replacement, but d[id] not explain how that rate supports his conclusions that *all* vehicles have

23   the same defect that manifests in the same way," nor "provide[] scientific explanation or

24   methodology for his extrapolation." *Id.* at *8. Accordingly, the expert could not show that his

25   opinion was "the product of reliable principles and methods that are appropriately applied to the

26   facts in the record." *Id.* The same is true here, where Dr. Psounis likewise "seems to reason

27   backwards, by starting with the conclusions that" Mr. Hochman's opinions are erroneous, and

28

1   then proffering sweeping conclusions based on a limited dataset and without "provid[ing]

2   scientific explanation or methodology for his extrapolation" to all of Google's data. *Id.* at \*\*7-8.

3       *Young v. Cree Inc.*, 2021 WL 292549 (N.D. Cal. Jan. 28, 2021) (Gonzalez Rogers, J.) is

4   similarly instructive. The expert in *Young* "grouped together similar Cree LED bulbs, tested a

5   fraction of them, and then extrapolated his conclusions across a wide array of Cree products."

6   *Young*, 2021 WL 292549, at \*5. This Court excluded that expert's opinions, reasoning that his

7   analysis "appears to be nothing more than a naked attempt to take the findings and conclusions

8   made from the ten (10) purchased LED lamps, which consisted of only four unique (4) LED lamp

9   types and extend these findings and conclusion to a broad set of LED lamps." *Id.* at \*10. Like the

10  expert in *Young*, Dr. Psounis attempts to extend his extremely limited review of data to Google's

11  data and data systems more generally. His opinions are even more problematic insofar as they

12  are limited to rebuttal opinions and yet he entirely ignored the data analysis he purports to rebut—

13  failing to even review the underlying data that Mr. Hochman studied. "A court may conclude

14  that there is simply too great an analytical gap between the data and the opinion proffered."

15  *Joiner*, 522 U.S. at 146. This is such a case.

16      **B.**    **Dr. Psounis' Opinions Should Be Excluded** ████████

17      Even if Dr. Psounis had relied on a sufficiently scientific methodology to support his

18  opinions (and he did not), the opinions should be excluded because ████████

19  ████████

20  ████████

21  ████████

22  ████████

23  ████████

24  ████████

25  ████████

26  ████████

27

28



**V.     CONCLUSION**

Plaintiffs respectfully request that the Court exclude Opinions Nos. 1 and 3, and 7-10 of the Dr. Psounis Report.

Dated: August 23, 2022

By */s/  Mark Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

16

1                    Beko Reblitz-Richardson (CA Bar No. 238027)

brichardson@bsfllp.com

Erika Nyborg-Burch (CA Bar No. 342125)

enyborg-burch@bsfllp.com

BOIES SCHILLER FLEXNER LLP

44 Montgomery Street, 41st Floor

San Francisco, CA 94104

Telephone: (415) 293 6858

Facsimile (415) 999 9695

David Boies (*pro hac vice*)

dboies@bsfllp.com

BOIES SCHILLER FLEXNER LLP

333 Main Street

Armonk, NY 10504

Tel: (914) 749-8200

James W. Lee (*pro hac vice*)

jlee@bsfllp.com

Rossana Baeza (*pro hac vice*)

rbaeza@bsfllp.com

BOIES SCHILLER FLEXNER LLP

100 SE 2nd Street, Suite 2800

Miami, FL 33130

Telephone: (305) 539-8400

Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)

aanderson@bsfllp.com

BOIES SCHILLER FLEXNER LLP

725 S Figueroa Street

31st Floor

Los Angeles, CA 90017

Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)

abonn@susmangodfrey.com

SUSMAN GODFREY L.L.P.

1900 Avenue of the Stars, Suite 1400

Los Angeles, CA 90067

Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)

bcarmody@susmangodfrey.com

Shawn J. Rabin (*pro hac vice*)

srabin@susmangodfrey.com

Steven Shepard (*pro hac vice*)

sshepard@susmangodfrey.com

Alexander P. Frawley (*pro hac vice*)

17

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK