**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| CHASOM BROWN, *et al*, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS EXPERT BRUCE SCHNEIER**<br><br>The Honorable Yvonne Gonzalez-Rogers<br>Courtroom 1 - 4th Floor<br>Date: September 20, 2022<br>Time:   2:00 p.m. |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 2

    A.  Plaintiffs' Attempt To Recast Schneier's Opening Opinions 1-6 Regarding "Data and Privacy" Generally As "Teaching Opinions" Should Be Denied ............. 3

    B.  Schneier Is Not Qualified to Opine on Consumer Expectations and His Methods For Doing So Are Not Reliable ................................................................. 7

    C.  Opening Opinions 7-14 Are Biased Summaries of Google Documents, Testimony, and Disclosures and Merely Regurgitate Attorney Argument ............... 8

    D.  Schneier's Opinions About Hypothetical Risks Are Not Relevant ......................... 10

    E.  Schneier's Irrelevant Opinions Are Unduly Prejudicial .......................................... 11

    F.  Schneier is Not Qualified to Opine on Google's Intent, Google Services, or Google's Receipt of Data Through Those Services .................................................. 13

III. CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

### Cases

*Berman v. Freedom Fin. Network, LLC*,
 400 F. Supp. 3d 964 (N.D. Cal. 2019) .................................................................................. 7, 13

*Borges v. City of Eureka*,
 2017 WL 363212 (N.D. Cal. Jan. 25, 2017) ............................................................................... 9

*Cooper v. Brown*,
 510 F.3d 870 (9th Cir. 2007) ...................................................................................................... 2

*Campbell v. Nat'l R.R. Passenger Corp.*,
 311 F. Supp. 3d 281 (D.D.C. 2018) ........................................................................................... 2

*Daubert v. Merrell Dow Pharmaceuticals., Inc.*,
 43 F.3d 1311 (9th Cir. 1995) ......................................................................................... 1, 2, 3, 5

*EEOC v. S&B Indus., Inc.*,
 2017 WL 345641 (N.D. Tex. Jan. 24, 2017) .............................................................................. 4

*Emblaze Ltd. v. Apple Inc.*,
 52 F. Supp. 3d 949 (N.D. Cal. 2014) .......................................................................................... 4

*Fox v. Pittsburg State Univ.*,
 2016 WL 4919463 (D. Kan. Sept. 15, 2016) ............................................................................. 4

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
 2006 WL 1329999 (N.D. Cal. May 15, 2006) ........................................................................... 4

*GPNE Corp. v. Apple, Inc.*,
 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ............................................................................ 8

*Hill v. Nat'l Collegiate Athletic Assn.*,
 7 Cal. 4th 1 (1994) .................................................................................................................... 10

*Humetrix, Inc., v. Gemplus S.C.A.*,
 268 F.3d 910 (9th Cir. 2001) .................................................................................................... 14

*I.C. v. Zynga, Inc.*,
 2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) .......................................................................... 10

*In re Bard IVC Filters Prod. Liab. Litig.*,
 2017 WL 6523833 (D. Ariz. Dec. 21, 2017) .............................................................................. 4

*In re Facebook, Inc. Internet Tracking Litig.*,
 956 F.3d 589 (9th Cir. 2020),
 cert. denied sub nom. *Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021) .................................. 10

*In re Platinum-Beechwood Litig.*,
 469 F. Supp. 3d 105 (S.D.N.Y. 2020) ................................................................................. 8, 13

*Miller v. Holzmann*,
    563 F. Supp. 2d 54 (D.D.C. 2008) .................................................................................. 4

*Mullins v. Premier Nutrition Corp.*,
    178 F. Supp. 3d 867 (N.D. Cal. 2016) ..................................................................... 3, 14

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ............................................................................................ 14

*Rolls-Royce Corp. v. Heros, Inc.*,
    2010 WL 184313 (N.D. Tex. Jan. 14, 2010) ............................................................ 5, 11, 12

*Savings Corcoran v. CVS Pharmacy, Inc.*,
    2021 WL 633809 (N.D. Cal. Feb. 18, 2021) ................................................................. 12

*Senne v. Kansas City Royals Baseball Corp.*,
    2022 WL 783941 (N.D. Cal. Mar. 15, 2022) .................................................................. 5

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200, 237 (1998) ............................................................................................. 10

*U.S.A v. Jackson*,
    016 WL 6998557 (C.D. Cal. Nov. 28, 2016) ................................................................... 4

*Waite v. AII Acquisition Corp.*,
    194 F. Supp. 3d 1298 (S.D. Fla. 2016) ............................................................................ 9

**Rules and Regulations**

Fed. R. Evid. 404 ................................................................................................................ 12

Fed. R. Evid. 702 ......................................................................................................... 1, 3, 6

## I. INTRODUCTION

In response to Google's Motion to Exclude Bruce Schneier's reports and opinions under *Daubert* and its progeny, Plaintiffs attempt to recast many of his opinions as "teaching opinions" that are merely intended to educate the jury about general privacy concepts. In this way, Plaintiffs seek to fill the record with more than 100 pages of irrelevant, incendiary rhetoric, including Schneier's musings on the effect of Edward Snowden's "revelations" and "despots" in other countries that "have used state power to coerce corporations." Opp. 15; Schneier Opening Rep. ¶¶ 34, 36-37, 41. Plaintiffs argue Google has an "impoverished understanding" of the case for not seeing the relevance of such information, arguing that—although there is no evidence that any of Schneier's parade of horribles has occurred or is likely to occur—the potential horribles are nonetheless relevant because "[w]hat has happened with other sources of data *could* happen to data that Google collects about private browsing." Opp. 4, 15 (emphasis added). Plaintiffs offer no proof; instead, they simply argue that "[a]nyone who thinks it can't happen here … doesn't read the news." *Id*.

These thin rebuttal arguments cannot salvage Schneier's opinions. Both *Daubert* and Federal Rule of Evidence 702 require that so-called "teaching opinions" still must "fit the facts of the case," and they are not license to stuff the record with unrelated, irrelevant examples of what Schneier believes could, but did not, occur. Tellingly, Plaintiffs do not cite the few examples in which courts in this District have allowed teaching opinions, likely because those opinions were nothing like the inflammatory opinions Schneier offers here. Those cases noted that general testimony from experts could be helpful for a factfinder who needed to understand complicated concepts like the "principles of thermodynamics, or bloodclotting," "background contextual information about cardiopulmonary bypass and its relation to hemodialysis," or a "tutorial on the use and functionality" of the complicated medical device at issue.[1] But Plaintiffs have a separate expert (Hochman) opining on the complicated portions of this case—Google's technological systems and the data collection

---

[1] *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1329999, at *5 (N.D. Cal. May 15, 2006); *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 959–61 (N.D. Cal. 2014) (quoting Fed. R. Evid. 702 Advisory Committee Notes to the 2000 Amendments).

process—and Google has not sought to exclude that expert. Contrary to Plaintiffs' claims, Schneier's opinions on such general topics as the "concept[] of privacy," *see* Opp. 3, are not needed for the jury to determine "whether Google's conduct is highly offensive to a reasonable person," *see id*. at 4. Those inquiries are squarely within the wheelhouse of jurors.

Plaintiffs' arguments regarding Schneier's opinions on "reasonable user" expectations fare no better. Such testimony usurps the role of the jury and is improper. Plaintiffs bizarrely contend that Schneier did not need to conduct a survey or provide any other factual basis to support his opinions on "the understanding of a reasonable user" because "he is not offering such opinions about particular class members." Opp. 7-8. But this makes no sense because Plaintiffs are using the "reasonable user" as a proxy for class members. *See* Mot. at 9-12.

Nor can Plaintiffs remedy the other substantive failings of Schneier's reports, like his inability to identify a standard against which his opinions on Google's disclosures can be measured. Across hundreds of pages of deposition testimony and two expert reports, Schneier's best articulation of the standard he applied is: "[s]ecurity and privacy experts have … standards of what disclosure looks like, and we know when it's met and when it's not met," Opp. 8. In other words, "I know it when I see it." That is no standard at all, and Schneier's opinions are classic *ipse dixit*, not expert opinion.

For these reasons, and those set forth in the Motion and below, Schneier's April 15, 2022 Expert Report, June 7, 2022 Rebuttal Expert Report, and testimony should be excluded.

## II.  **ARGUMENT**

"It is the proponent of the expert who has the burden of proving admissibility." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (internal quotations and citations omitted). Plaintiffs cannot simply rely on Schneier's qualifications to introduce opinions that fail *Daubert*'s requirements. *See* Opp. 2-3 (Plaintiffs arguing "[t]here is no other expert on the planet who is more qualified" than Schneier and comparing him to "[Albert] Einstein"); *see also Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 302 (D.D.C. 2018) ("Plaintiffs' argument that the Court should accept Dr. Finkelman's testimony simply because he is 'a very knowledgeable psychologist' and 'gets it,' … is not only conclusory, but also inadmissible *ipse dixit* in its most classic form.");

*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) ("Even the most qualified expert may not offer any opinion on any subject."). In other words, both Albert Einstein and Bruce Schneier are subject to Federal Rule of Evidence 702 and *Daubert*.

### A. Plaintiffs' Attempt To Recast Schneier's Opening Opinions 1-6 Regarding "Data and Privacy" Generally As "Teaching Opinions" Should Be Denied

Although Schneier's Opening Opinions 1-6 "fail to speak clearly and directly to an issue in dispute" as required by *Daubert*, *see* Mot. 5, Plaintiffs claim this fact has "no bearing on … admissibility" because the opinions are "background" or "teaching" testimony, Opp. 3-4. This assertion lacks credibility on its face. The purported "background"—including assertions that "[i]t would be incredibly dangerous to live in a world [where] everything a citizen said and did could be stored and brought forward as evidence against them in the future," and "if you have gathered enough data about a person, you can find sufficient evidence to make them appear guilty of something, even if they are really innocent of wrongdoing," Schneier Opening Rep. ¶ 34—is plainly intended to prejudice Google by stoking fear among jurors, not to educate them on issues in the case.

Opening Opinions 1-6 do not qualify as teaching opinions for two additional reasons: (1) none of the opinions relates to complicated background principles that require expert explanation,[2] and (2) Plaintiffs have made no showing that these opinions "fit the facts of the case," as all teaching opinions must do. *See* Fed. R. Evid. 702 Advisory Committee Notes to the 2000 Amendments.

Federal Rule of Evidence 702 allows "in some cases for an expert to educate the factfinder about general principles," but where such education is necessary to understand complicated background concepts like "the principles of thermodynamics, or bloodclotting, or … how financial

---

[2] Plaintiffs' suggestion that Google "does not" challenge "that a lay juror would not be assisted by [Schneier's] knowledge about [online privacy]," Opp. 4, is incorrect. *See* Mot. 5-8, 16-18. Also untrue is Plaintiffs' statement that Google "omitted" from its filing a seven-line "portion of [Schneier's] deposition transcript" consisting of "Schneier's discussion" of the book *Age of Surveillance Capitalism*. Opp. 4 n.3; Mot. 4 n.3. The passage Plaintiffs cite was included (along with the rest of the transcript) in Google's exhibits. *See* Dkt. 664-2 at 33. Moreover, "discussion" of the book does not support Plaintiffs' point: when asked if the book "contain[s] research indicating that people are seeking refuge from … growing data collection by going Incognito," an opinion Schneier espouses, Schneier simply gestured, "the book is this thick … and I am not remembering." *Id*. 125:8-20.

markets respond to corporate reports." *Id.*; *Fox v. Pittsburg State Univ.*, 2016 WL 4919463, at *2 (D. Kan. Sept. 15, 2016) ("Expert testimony about general information is admissible only if it would assist the trier of fact" in understanding information "not within common knowledge or experience of jurors."); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1329999, at *5 (N.D. Cal. May 15, 2006) (allowing teaching opinions "about cardiopulmonary bypass and its relation to hemodialysis as well as … a tutorial on the use and functionality of the Sarns 9000 heart/lung machine"); *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 959–61 (N.D. Cal. 2014) (noting that "high-level opinions" were "of limited use to the fact-finder in resolving any question of fact at issue in this case" and restricting the expert's general testimony to explaining "digital convergence and network effects").[3]

Here, another of Plaintiffs' experts, Jonathan Hochman, has already provided more than 200 pages of opinions that include numerous "teaching opinions" on issues such as how PBM's work generally and Google's collection and storage of data. Schneier's Opening Opinions 1-6 are not remotely necessary to understand the facts at issue in this case.[4]

---

[3] Plaintiffs' cited cases also involved principles clearly outside a lay juror's common knowledge and incomparable to what Schneier seeks to offer. *See, e.g.*, *U.S.A v. Jackson*, 2016 WL 6998557, at *4 (C.D. Cal. Nov. 28, 2016) (teaching witness offered testimony "regarding the causes and symptoms associated with TBI and PTSD"); *In re Bard IVC Filters Prod. Liab. Litig.*, 2017 WL 6523833, at *4 (D. Ariz. Dec. 21, 2017) (allowing teaching testimony "about FDA practices and the 510(k) process"); *Miller v. Holzmann*, 563 F. Supp. 2d 54, 94 (D.D.C. 2008) (teaching witness testified regarding "theoretical characteristics of collusive behavior in an auction setting"); *EEOC v. S&B Indus., Inc.*, 2017 WL 345641, at *6-8 (N.D. Tex. Jan. 24, 2017) (excluding "generalized views about the 'majority of society'" and "speculation about society in general," but allowing expert opinion on CART technology and "auxiliary aids that would be generally suitable for deaf and hard of hearing individuals in an employment setting").

[4] *See, e.g.*, Schneier Opening Rep. ¶ 37 ("During the 1960s, banks discriminated against members of minority groups trying to purchase homes by refusing to approve mortgages in predominantly minority neighborhoods"); *id.* ¶ 39 ("Commercial fairness extends to the workplace, and the widespread adoption of digital surveillance by employers can contribute to unjust workplace conditions"); *id.* ¶ 71 ("When our citizen purchases something in a store, more data is produced … There may be a video camera in the store, installed to record evidence in case of theft or fraud. Cameras are also installed near many automatic teller machines. There are more cameras outside, monitoring buildings, sidewalks, roadways, and other public spaces."); *id.* ¶ 128 ("Investigators suspect that the mainland Chinese government is working to gather information on US citizens in order to identify US government officials and intelligence operatives, and to pinpoint targets for bribery or blackmail."); *id.* ¶ 133 ("Humans are social animals, and there are few things more

   Nor do Schneier's opinions fit the facts of this case, which Plaintiffs acknowledge is a requirement of teaching opinions.[5] Opp. 3-4; *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") (expert testimony meets "the 'fit' requirement" if it "logically advances a material aspect of the proposing party's case"); s*ee also Senne v. Kansas City Royals Baseball Corp.*, 2022 WL 783941, at *9 (N.D. Cal. Mar. 15, 2022) (the fit requirement "is more stringent than the relevancy requirement of Rule 402 of the Federal Rules of Evidence"); *see also Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at *6 (N.D. Tex. Jan. 14, 2010) (teaching "[t]estimony is irrelevant … when an expert offers a conclusion based on assumptions unsupported by the facts of the case.").

   Plaintiffs' post hoc attempts to justify Schneier's far-flung and unrelated references as fitting the facts of this case fall flat. *See* Opp. 4-7. In relation to Opening Opinions 1-3, for example, Plaintiffs claim that Schneier's discussion of "[m]ajor data leaks" by companies other than Google, such as Yahoo!, Target, Facebook, and Marriott, is relevant because it bears on "the offensiveness and unacceptability of collecting private browsing data that *could* be leaked in the future." Opp. 4 (emphasis added). As discussed below, however, discussion of such hypothetical risks wholly untethered from the facts of this case is irrelevant, *see infra* II.D. *See, e.g.*, *Rolls-Royce Corp.*, 2010 WL 184313, at *12–13 (teaching opinions for which the "only probative value is to suggest facts about [parties] based on general observations about other companies in the parties' respective industries" "have no value for teaching the trier of fact; rather, they are used to establish guilt (or safety) by association").

   Likewise, Plaintiffs' assertion that Schneier's discussion of personally identifying information that is **not at issue in this case** is necessary "to introduce and contrast the understanding

---

powerful or rewarding to humans than communicating with other people."); *id.* ¶ 135 ("People don't think, 'The US and maybe other governments are recording everything I say and trying to find terrorists, or criminals, or drug dealers, or the Villain-of-the-Month.' That's not obvious.").

[5] Plaintiffs' argument that "Schneier's reliance on prior work makes his opinions more credible – not less," Opp. 2-3 n.1, completely misses Google's argument. Schneier's admission that he copied paragraphs in his report verbatim from a book he wrote seven years ago was not cited to bear on reliability, but rather as proof that he made no attempt to "fit" his opinions to the contours of this case, which is required by the Federal Rules. Mot. 5.

of technologists that other information Google does collect from private browsing users can also be identifying" is near-incomprehensible and conclusory, and fails to explain why data types beyond those identified in Plaintiffs' amended complaint are remotely relevant. *See* Opp. 5; Mot. 6. Nor can Plaintiffs justify Schneier's discussion of a hypothetical world in which "everything a citizen said and did could be stored and brought forward as evidence against them in the future, or made available to companies that wished to construct cradle-to-grave dossiers on individual citizens." Mot. 6; Opp. 5-6. Plaintiffs have posited no evidence that Google did so, and they cannot introduce such statements under the guise of generalized expert testimony in the hopes that the factfinder will impute those actions to Google. *See, e.g.*, *Fox*, 2016 WL 4919463, at *3 (rejecting party's argument that expert was merely offering "generalized testimony" where party's aim was to "implicitly apply the[] principles [offered by the expert] to the specifics of the case, which is not the purpose of Rule 702 generalized testimony").

Plaintiffs' other purported justifications for Opening Opinions 1-6 also fail because they do not counter Google's showing that the opinions are irrelevant to the issues and merely seek to inflame the jury. For example, Plaintiffs' only justification for Schneier's discussion of "four basic surveillance streams" that existed "[b]efore the Internet," *see* Mot. 7, is a suggestion that the information is "relevant as historical framing and shows the value of data however collected." Opp. 6 n.6. But "historical framing"—if a valid justification for generalized expert testimony at all—cannot open the door to any and all privacy-centric musings that have no fit to a case about data collected *on the Internet* beginning in 2016.

Similarly, Plaintiffs' conclusory argument that "examples in which Google and others have used confusing interface designs" are relevant to whether the disclosures in this case were designed by "accident" ignores that much of Schneier's discussion does not relate to Google or its disclosures at all. Opp. 6-7. Further, Plaintiffs' only claimed link between disclosures discussed by Schneier, and those at issue here, is the alleged use of "similarly misleading 'dark patterns.'" *Id*. Even if wholly separate, out-of-suit disclosures could bear on the disclosures in this case—and they cannot—this is not remotely enough evidence for Plaintiffs to prove that discussion of such disclosures would assist the factfinder and fit this case. Likewise, while Plaintiffs posit the irrelevant

disclosures are necessary to determine whether Google "acted with trickery or deceit" for purposes of punitive damages, *see* Opp. 7, Plaintiffs' argument for why the disclosures do so is based on Schneier's improper testimony about what Google "intended." *Id*. (quoting Schneier Opening Rep. ¶ 138). This is no basis to expand the case beyond the disclosures in issue.

### B. Schneier Is Not Qualified to Opine on Consumer Expectations and His Methods For Doing So Are Not Reliable

Plaintiffs acknowledge the Court's admonition in *Berman* that experts "may not testify as to whether a particular user or group of users was confused or misled absent a factual basis for so stating (*e.g.*, survey data)." *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019).[6] But that is exactly what Schneier is attempting to do here: He offers dozens of opinions about what "reasonable users"—which Plaintiffs contend is a proxy for class members—purportedly expect and how they purportedly would be misled. *See* Mot. 8-14.

Additionally, despite Schneier's purported "decades of academic and industry experience," Opp. 7, Plaintiffs do not point to any such experience in measuring consumer expectations. He admitted he has never conducted a survey of any kind in his entire career. Mot. 12. Further, Plaintiffs' reliance on *Berman* is misplaced. That decision confirms Schneier is *not* qualified to opine on consumer expectations. In *Berman*, the Court found the expert was qualified to offer such opinions about the relevant disclosures because his "*daily work* include[d] the design of websites that solicit a user's consent to receive marketing communications," and he had "*formal training* in business process-focused software engineering, the design of user interface and registration pages, and user-experience design to ensure that users understand how their personal information will be used and disclosed when interacting with a webpage." *Berman*, 400 F. Supp. 3d at 972 (emphasis added). None of this is true of Schneier.

---

[6] Plaintiffs are wrong that "testify[ing] about the understanding of a reasonable user" does not run afoul of *Berman*. Opp. 7-8. The expert in *Berman* did not opine on what "reasonable users" would think, but rather that "the relevant disclosures were manipulative [and] confusing." *Berman*, No. 18-cv-01060-YGR, Dkt. 144-7 ¶ 10. The Court struck the additional opinions that the disclosures were "unfair and not clear and conspicuous." *Berman*, 400 F. Supp. 3d at 972. Here, Schneier's testimony about "reasonable users" is a proxy for putative class members, and therefore it falls directly into the bucket of testimony prohibited by *Berman*.

Plaintiffs' reliance on *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105 (S.D.N.Y. 2020), is similarly misplaced. There the expert was permitted to opine on "what a fiduciary or investment manager in a given context would ordinarily do according to relevant industry standards" based on "over 29 years of experience as an investment management professional, including as chief executive officer, chief investment officer, portfolio manager, and chief compliance officer at various investment management and advisory companies" and his "expertise in analyzing and monitoring the performance of other fund managers." *Id.* at 115-116 & n.7. Here, Schneier claims to be an expert in "online security and privacy." But he is not opining about what other privacy and security experts would ordinarily do according to industry standards; he is opining about how reasonable users interpret and understand Google's disclosures based on purported standards that he is unable to identify or articulate.

And while Plaintiffs dispute that the standard Schneier applied was akin to "I know it when I see it," they concede the standard was "*we* [privacy professionals] know when it's met and when it's not met." Opp. 8 (emphasis added). That is a distinction without a difference. Schneier acknowledges this unidentified standard is neither objective nor formal, and he did not consult any other privacy experts in applying it. Mot. 12-13. Simply declaring that "this is what me and other privacy experts say," without identifying an actual standard, methodology, or another privacy expert that actually supports the opinion, is classic *ipse dixit*. *See, e.g.*, Mot. 8-13 (collecting cases); *see also GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) ("Experts must follow some discernible methodology, and may not be a black box into which data is fed at one end and from which an answer emerges at the other." (quotation omitted)).

### C. Opening Opinions 7-14 Are Biased Summaries of Google Documents, Testimony, and Disclosures and Merely Regurgitate Attorney Argument

Plaintiffs incorrectly assume that Google's critique of Schneier's Opening Opinions 7-14 is based solely on the fact that his summaries of Google's documents are misleading. Opp. 10. In fact, the thrust of Google's critique is that document summaries, whether accurate or misleading, are not proper expert testimony at all because they require no application of expertise. Plaintiffs' counsel is perfectly capable of characterizing Google's documents.

Plaintiffs' assertion (Opp. 11-13) that Schneier's inadmissible summaries of Google's internal documents "corroborate" his equally inadmissible *ipse dixit* opinions about "reasonable user" expectations amounts to claiming that two wrongs make a right.[7] Plaintiffs also complain that the jury "could not otherwise digest the many sources" Schneier summarizes in his report. Opp. 12. At trial, Plaintiffs will have to introduce evidence in the form of internal Google documents in the usual way—through the Google witnesses involved in the communications. Plaintiffs apparently prefer to use Schneier because he will be more cooperative and present the documents with Plaintiffs' preferred gloss. But the case law makes clear this is improper. *See* Mot. 13-15 (citing cases).

Contrary to Plaintiffs' assertions, the Court in *Borges v. City of Eureka*, 2017 WL 363212 (N.D. Cal. Jan. 25, 2017), did not hold differently. In *Borges*, the expert "simply included a recitation of the facts in his Rule 26 report that includes a description of what he observed on the video recordings" before opining on what "reasonable officers would have done" in the situation depicted in the recordings. *Id.* at *3. Summarizing a video of the incident at issue in order to opine on what a reasonable police officer would do under similar circumstances is worlds away from what Schneier does here—summarizing a hundred internal Google documents involving dozens of different witnesses discussing dozens of different topics to create a self-serving narrative that purportedly "supports" his *ipse dixit* opinions. Opp. 9, 11.[8]

---

[7] Plaintiffs' effort to manufacture a link between Schneier's document summaries and proper expert opinions is lacking. For example, while Plaintiffs claim that Paragraphs 179 to 184 "explain some of the technology that Google uses to collect user data," Opp. 11, Paragraph 181, for example, is just a summary of documents discussing Google's plan to phase out third-party cookies in the future. And Plaintiffs' Motion for Class Certification acknowledges that they are relying on Schneier to "summariz[e] the representations made within each document" purportedly making up the contract. Dkt. 608-3 at 3. Finally, Schneier apparently has 70 paragraphs to "analyze the disconnect between Google's promises and the reality of Incognito mode." Opp. 12. But these paragraphs contain no expert analysis. They are just chronological summaries of Google documents.

[8] Similarly, in *Waite v. AII Acquisition Corp.*, 194 F. Supp. 3d 1298 (S.D. Fla. 2016), another case cited by Plaintiffs, the expert was not purporting to provide summaries of dozens of the defendant's documents; rather he presented research aimed at "grounding scientific information integral to the determination of this case." *Id.* at 1311.

### D. Schneier's Opinions About Hypothetical Risks Are Not Relevant

Plaintiffs do not dispute that Schneier did not investigate Google's systems. Nevertheless, he opines about what Google's systems purportedly "could do," Mot. 15-16 (identifying improper opinions regarding hypothetical risks that Google could link PBM data with other data sets), based on nothing but his interpretation of internal Google emails. Mot. 16. As discussed above, this is improper. *See supra* II.C. Importantly, Plaintiffs still have never identified any record evidence showing Google performed the linking that their experts hope to testify may be possible. *See* Opp. 13-14.

Moreover, Schneier's opinions about hypothetical linking that never occurred are irrelevant. Plaintiffs claim these opinions are relevant to measuring "the sensitivity of the collected information" for purposes of determining whether Google's conduct was highly offensive. Opp. 13-14 (relying on "Plaintiffs' state-law privacy claims"). But Plaintiffs do not cite a single case supporting the proposition that far-flung, hypothetical risks that never occurred must be considered to determine whether an invasion of privacy was highly offensive. For good reason: plaintiffs can always identify hypothetical risks that may occur, and if the possibility of a risk materializing were sufficient, this element would be easily—if not automatically—satisfied. *See, e.g.*, *I.C. v. Zynga, Inc.*, 2022 WL 2252636, at *6-10 (N.D. Cal. Apr. 29, 2022) (Gonzalez Rogers, J.) ("[R]isk of harm, by itself, is not a sufficiently concrete [privacy] injury … a risk of harm must either *materialize* or *cause some other injury* in order to confer standing in a suit for damages" (emphasis in original)).

Rather, even under the cases Plaintiffs cite, *see* Opp. 13-14, the analysis turns on "whether the alleged intrusion is highly offensive **under the particular circumstances**." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (citation omitted) (emphasis added); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35 (1994) ("Whatever their common denominator, privacy interests are best assessed separately and in context … [and] privacy interests do not encompass **all conceivable assertions** of individual rights" (emphasis added); *see also Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 237 (1998) (noting California tort law requires that "each case must be taken on its facts."). And so-called teaching "[t]estimony is irrelevant … when an expert

offers a conclusion based on assumptions unsupported by the facts of the case." *Rolls-Royce Corp.*, 2010 WL 184313, at *6.

The circumstances here—indeed, the very manner in which PBMs work—shows that PBM data was orphaned and not linked to other data sets to create "cradle-to-grave profiles." *See, e.g.*, Google's Opp. to Class Certification at 10-11. While Plaintiffs contend this is only Google's say-so, *see* Opp. 13-14, Plaintiffs were afforded years of extensive discovery and their experts—including Schneier (*e.g.*, Tr. 137:18-138:3)—have admitted that they have seen **no direct evidence** that Google has ever linked PBM data to a user's account or identity. Schneier's unsupported opinion that Google *could* do it should be excluded.

### E. Schneier's Irrelevant Opinions Are Unduly Prejudicial

Plaintiffs' Opposition only reinforces the highly prejudicial manner in which they plan to use Schneier's Opening Opinions 1-6, 9, and 11-12. In its motion, Google provided nearly two pages of examples in which Schneier makes inflammatory (and fanciful) statements disguised as expert analysis supporting these opinions, including "[s]urveillance … makes people feel like prey, just as it makes the surveillors behave like predators," "Google, as a platform for advertising, routinely discriminates … [and] [s]uch discrimination can be problematic, and even risks crossing the line into illegality," and "Governments can and do seek access to data collected and stored by Google and other tech companies … for the purpose of monitoring and stifling political dissent." *See* Mot. 17-18.

Plaintiffs' Opposition makes clear that they wish to use such statements to argue that "[w]hat has happened with other sources of data [unrelated to Google or the data at issue in this case] *could* happen to data that Google collects about private browsing." Opp. 15; *see also supra* II.D. Plaintiffs' only attempt to ground this parade of horribles in reality is more akin to Schneier's inflammatory statements themselves than legal argument: "Despots can and have taken over government and can and have used state power to coerce corporations to assist in persecuting their citizens … Anyone who thinks it can't happen here … doesn't read the news." Opp. 15.

Using Schneier as a mouthpiece for such arguments (across numerous evocative paragraphs in his reports) is highly prejudicial, and the prejudice cannot be overcome by Plaintiffs' thin attempt

to quantify probative value. *See* Mot. 17-18. For one, most of the statements have nothing to do with data collection by Google at all. *Id*. Further, that wildly imaginative things "could" have happened to data collected by Google (or even *did* happen in other places to other data sets collected by unrelated companies and governments) has absolutely no bearing on this case, *see supra* II.D. As already explained, opinions that evoke guilt by association or imply a position on the facts of the case cannot masquerade as generalized expert opinions. *See, e.g.*, *Fox*, 2016 WL 4919463, at *3; *Rolls-Royce Corp.*, 2010 WL 184313, at *12–13. And although Plaintiffs bear the burden on this motion, they provide no justification for Schneier's inflammatory comparison likening Google's behavior to "secret cameras in your [hotel] room," or his incendiary speculation that "[a] user may choose a private browsing mode for searches and browsing tied to their Black friends' names because they hope to avoid being confronted by … ads for websites featuring arrest records." Mot. 18; Opp. 16.

Likewise, Plaintiffs offer no cases supporting their bizarre application of Federal Rule of Evidence 404. For example, Plaintiffs argue that Schneier's testimony on the "History of Data Breaches" and "Privacy and Consent Failures" is meant to show there "is no insurance against the misuse or leakage of data"—in other words, because "Google and other prominent institutions have" purportedly "compromised information they collected" in the past, Google will do so again. Opp. 15-16. But an argument based solely on "history repeating itself," *see* Opp. 1, is precisely the kind of propensity evidence Federal Rule of Evidence 404 is meant to exclude. Fed. R. Evid. 404; *see also Savings Corcoran v. CVS Pharmacy, Inc.*, 2021 WL 633809, at *4 (N.D. Cal. Feb. 18, 2021) (granting motion in limine to exclude evidence and argument related to other lawsuits and government investigations).[9]

---

[9] Plaintiffs' attempt to distinguish *Corcoran* (and suggest it was decided in their favor) fails. There the Defendant's motion in limine to exclude evidence and argument related to other lawsuits and government investigations was *granted*. *Id*. at *4. The portion of the motion on which the Court reserved ruling related to Plaintiffs' argument that a limited number of other cases involved the Defendant's pricing and program at issue. Thus, the Court found that it may be reasonable to introduce the facts of such lawsuits to "challenge defendant's theories and show knowledge." *Id*. Here, Schneier's expose on the "History of Data Breaches" largely has nothing to do with Google, is not amenable to the same arguments, and will create the "mini-trials" the Court was concerned with in *Corcoran*. *Id*.

### F. Schneier is Not Qualified to Opine on Google's Intent, Google Services, or Google's Receipt of Data Through Those Services

Plaintiffs do not dispute that Schneier may not testify about "Google's intent," but now claim that he does not address the issue. Opp. 17. That is simply untrue. *First*, Schneier explicitly opines on Google's "intent." *See, e.g.*, Schneier Opening Rep. ¶ 302 ("Incognito mode's simple, bold, and friendly 'Spy Guy' may communicate **Google's 'intent'** to lead users to believe that Incognito will provide them with a virtual cover of darkness, but is inaccurate and misleading regarding Incognito's actual functionality, in which their activity continues to be monitored" (emphasis added)). This is improper, even under the cases Plaintiffs rely on. *Berman*, 400 F. Supp. 3d at 972 (striking from the expert's report the opinions that the defendant designed its software "with every intention of coercing and manipulating its visitors" and that "this confusion is intentional," because opinions on "the *intentions* of defendants…are outside his expertise and not properly within the province of expert testimony" (emphasis in original)). *Second*, opinions about "competitive importance" to Google and what Google is "motivated" to do, Opp. 17, are opinions about Google's intent, even if Schneier did not use that word. In fact, in one case cited by Plaintiffs, the court held that "[i]nferences about the intent **or motive** of parties or others lie outside the bounds of expert testimony." *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 115 (S.D.N.Y. 2020) (emphasis added).

*Third*, Plaintiffs claim that because Schneier is a computer scientist, he necessarily has expertise in Google's Real-Time Bidding (a service not at issue here). Opp. 17. But one does not follow from the other, nor do Plaintiffs or Schneier explain why that would be so.

*Fourth*, Plaintiffs claim (for the first time in their Opposition) that Schneier's opinions about the value of data "support" Plaintiffs' damages report. Opp. 17-18. But the fact that non-specific data types have non-specific value cannot possibly support a damages calculation. Nor do Plaintiffs point to any portions of their damages report that explain how their damages model relies on Schneier's vague contentions. Plaintiffs also claim that Schneier's testimony about the value of data "demonstrates the offensiveness of Google's conduct by showing how Google put the value of that data over its promise[s]." Opp. at 18. But if that were the case, this just confirms that Schneier is

1  offering improper testimony about inferences of Google's intent and motivations. Additionally, Plaintiffs' repetition that Schneier's conclusions are "so readily apparent" and "hardly subject to reasonable dispute," Opp. 17, 18, undermines, rather than supports, the appropriateness of Schneier's testimony. Opinions that are so obvious, "hardly" need expert testimony. *See also* Opp. 6 (describing Schneier's statements on Google's revenue as "fact" and his statements "about the online advertising market" as "structural observation[s] … beyond reasonable dispute").

*Fifth*, Plaintiffs contend that any critiques about Schneier's opinions regarding Google's services is "one for cross-examination, not exclusion." Opp. 18.[10] But Schneier must be qualified to opine on such topics before he can taint the jury with opinions for which he has no expertise. Mot. 18-21; *Mullins*, 178 F. Supp. 3d at 900 ("Even the most qualified expert may not offer any opinion on any subject").

### III. CONCLUSION

Schneier's opinions should be excluded in their entirety.

---

[10] The cases Plaintiffs cite do not hold otherwise. *Primiano* involved claims related to an artificial elbow and expert testimony by a board certified orthopedic surgeon who had published peer-reviewed articles about the elbow, but had not published any articles about the exact issue due to the fact that "the phenomenon is so extraordinary that the specialists who publish articles do not see it in their practices." *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010), *as amended* (Apr. 27, 2010). In *Humetrix*, there was no dispute that the plaintiffs' experts were qualified to opine on lost profits; the only challenge was to whether the experts chose the "right" contracts to support the lost profits calculation. *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001).

| | | |
|---|---|---|
| DATED: August 26, 2022 | | Respectfully submitted, |

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   /s/ Andrew H. Schapiro
      Andrew H. Schapiro

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*