**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No.
238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL (DKT. 609)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: September 20, 2022<br>Time: 2:00 p.m.<br>Location: Courtroom 1 – 4th Floor |

1

2

**<u>TABLE OF CONTENTS</u>**

3

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT .............................................................................................................. 2

      A.      Google Does Not Dispute that Common Issues Predominate as to the
            Form Contract and Its Interpretation. .................................................................. 2

      B.      Common Issues Predominate as to Implied Consent. ......................................... 3

          1.      The Form Contract Bars Google's Implied-Consent Defense. ................... 3

          2.      Common Evidence Predominates as to Implied Consent. .......................... 3

              a)      There Was No Implied Consent to the Breach of Contract. ............. 3

              b)      The Express Contract Means Google Cannot Show Implied
                      Consent to Its Torts and Statutory Violations. ................................. 4

              c)      Common Issues Predominate as to Implied Consent...................... 5

              d)      The Deeply Flawed Amir Surveys Are Not Admissible
                      Evidence of Individualized Issues as to Implied Consent................ 7

      C.      Google's Other Arguments Fail to Defeat Predominance.................................... 8

          1.      Common Questions Predominate for Breach of Contract. .......................... 8

          2.      Common Questions Predominate for Privacy Torts and Standing .............. 9

          3.      Common Questions Predominate for Statutory Claims............................. 11

      D.      Common Evidence Predominates as to Monetary Relief.................................. 12

          1.      There Are No "Uninjured Class Members."............................................... 12

          2.      Google Has No Standing to Dispute Apportionment. ............................... 13

          3.      Punitive Damages Depend on Common Evidence. .................................... 13

      E.      A Class Action Is a Superior Method of Adjudication....................................... 14

      F.      Injunctive Relief and Issue Class Certification Are Warranted. ....................... 15

III.    CONCLUSION ........................................................................................................ 15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ace Am. Ins. Co. v. Accellion, Inc.*,
    2022 WL 2341155 (N.D. Cal. Apr. 11, 2022) (Gonzalez Rogers, J.) ....................................9

5

6

*Backhaut v. Apple Inc.*,
    2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) ........................................................................4

7

*Bowerman v. Field Asset Servs., Inc.*,
    39 F.4th 652 (9th Cir. 2022)..................................................................................................13

8

9

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017)...............................................................................................14

10

11

*Buffin v. City & Cty. of San Francisco*,
    2018 WL 1070892 (N.D. Cal. Feb. 26, 2018) (Gonzales Rogers, J.) ....................................14

12

*Campbell v. Facebook Inc.*,
    315 F.R.D. 250 (N.D. Cal. 2016) .............................................................................................4

13

14

*Capaci v. Sports Rsch. Corp.*,
    2022 WL 1133818 (C.D. Cal. Apr. 14, 2022).........................................................................15

15

*Cell-Crete Corp. v. Lexington Ins. Co.*,
    2014 WL 12601011 (C.D. Cal. July 30, 2014) ........................................................................3

16

17

*Daniel v. Lennar Corp.*,
    2019 WL 8194735 (C.D. Cal. Oct. 16, 2019) ........................................................................10

18

19

*Ellis v. Costco Corp. III*,
    285 F.R.D. 492 (N.D. Cal. 2012) ...........................................................................................13

20

21

*Grosz v. Boeing Co.*,
    2003 WL 25669166 (C.D. Cal. Oct. 22, 2003) ......................................................................13

22

*Harris v. comScore, Inc.*,
    292 F.R.D. 579 (N.D. Ill. 2013) ...............................................................................................4

23

24

*Henry Schein, Inc. v. Cook*,
    2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ...........................................................................11

25

26

*Herskowitz v. Apple, Inc.*,
    301 F.R.D. 460 (N.D. Cal. 2014) ...........................................................................................15

27

28

ii

*I.C. v. Zynga, Inc.*,
    2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) (Gonzalez, Rogers, J.) ...............................10

*In re Apple iPhone Antitrust Litig.*,
    2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) (Gonzalez, Rogers, J.)................................13

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ......................................................................................9, 10

*In re Flash Memory Antitrust Litigation*,
    2010 WL 2332081 (N.D. Cal. June 9, 2010).........................................................................15

*In re Google Assistant Priv. Litig.*,
    546 F. Supp. 3d 945 (N.D. Cal. 2021)..................................................................................12

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...........................................................4, 5, 7

*In re Google Inc. St. View Elec. Communications Litigation*,
    21 F.4th 1102 (9th Cir. 2021) ..............................................................................................14

*In re Google Referrer Header*,
    465 F. Supp. 3d 999 (N.D. Cal. 2020)............................................................................9, 10

*In re Google RTB*,
    2022 WL 2165489 (N.D. Cal. June 13, 2022) (Gonzalez Rogers, J.).................................11

*In re Hulu Priv. Litig.*,
    2014 WL 2758598 (N.D. Cal. June 17, 2014).....................................................................14

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Product Liab. Litig.*,
    2022 WL 2343268 (N.D. Cal. June 28, 2022).....................................................................11

*In re Roundup Prod. Liab. Litig.*,
    385 F. Supp. 3d 1042 (N.D. Cal. 2019)...............................................................................13

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ........................................................................................15

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014)..............................................................................................11

*Jarose v. Cty. of Humboldt*,
    2022 WL 1601407 (N.D. Cal. Mar. 17, 2022) ......................................................................7

*Matera v. Google Inc.*,
    2016 WL 5339806 (N.D. Cal. Sept. 23, 2016).............................................................2, 6, 7

*Moore v. Ulta Cosms. & Fragrance, Inc.*,
   311 F.R.D. 590 (C.D. Cal. 2015).................................................................................................9

*Ngethpharat v. State Farm Mut. Ins. Co.*,
   339 F.R.D. 154 (W.D. Wash. 2021)..........................................................................................5

*Old Repub. Ins. Co. v. FSR Brokerage, Inc.*,
   80 Cal. App. 4th 666 (2000)......................................................................................................3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) (en banc).................................................................................3, 12

*Opperman v. Path, Inc.*,
   2016 WL 3844326 (N.D. Cal. July 15, 2016) ........................................................................10

*Pennel v. Pond Union Sch. Dist.*,
   29 Cal. App. 3d 832 (1973).......................................................................................................3

*Peters v. Mundelein Consol. High Sch. Dist.*,
   2022 WL 393572 (N.D. Ill. Feb. 9, 2022) .............................................................................10

*Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003) .........................................................................................................4

*Roman v. Jan-Pro Franchising Int'l*,
   2022 WL 3046758 (N.D. Cal. Aug. 2, 2022) ........................................................................13

*Story Parchment Co. v. Paterson Parchment Paper*,
   282 U.S. 555 (1931) ................................................................................................................13

*Tebbets v. Fidelity & Cas. Co. of N.Y.*,
   155 Cal. 137 (1909)...................................................................................................................3

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2016) ..................................................................................................11

*United States v. Staves*,
   383 F.3d 977 (9th Cir. 2004) .....................................................................................................5

*Watkins v. L.M. Berry & Co.*,
   704 F.2d 577 (11th Cir. 1983) ...................................................................................................5

*West v. Cal. Servs. Bureau*,
   323 F.R.D. 295 (N.D. Cal. 2017) (Gonzalez, Rogers, J.)...............................................2, 8, 14

*Williams v. Apple, Inc.*,
   338 F.R.D. 629 (N.D. Cal. 2021) .........................................................................................2, 4

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Zamora v. Lehman,*
    153 Cal. Rptr. 3d 724 (Ct. App. 2013) ........................................................................3

**Statutes**

18 U.S.C § 2520(c)(2)(A) ................................................................................ *passim*

Cal. Penal Code § 502(c) ...........................................................................................11

**Other Authorities**

Restatement (Second) of Contracts § 371 .................................................................12

Restatement (Second) of Torts § 892A .......................................................................5

Restatement (Third) of Restitution ...........................................................................12

13 Williston on Contracts § 39:35 (4th ed. 2015) .....................................................4

1

## I.    INTRODUCTION

2

Publicly, Google's form contract promised "that 'private browsing mode' prevents

3

Google from collecting users' data," Dkt. 363 at 21, and Google's Chairman told the world that

4

in Incognito "no one sees anything about you," Ex. 6. Privately, Google's employees lamented

5

that private browsing was "not truly private," "effectively a lie," and that users have "common

6

misconceptions" about Google's collection of their private-browsing data.[1]

7

The proposed classes are limited to Google account holders who chose to use specific

8

private browsing modes during the period back to June 1, 2016. As detailed in Plaintiffs' motion,

9

classwide proof shows that Google breached its form contract, and committed torts and statutory

10

violations, by collecting and using private-browsing data from those Google account holders

11

while they were (a) "signed out" of their Google accounts and (b) visiting non-Google websites.

12

Plaintiffs' claims and Google's defenses focus on these common issues, yet Google

13

attempts to avoid certification (and therefore liability) by speculating that *some* people *might*

14

have suspected the truth after reading "academic" papers and other third-party sources that

15

Google itself never affirmed and, in some cases, actually discredited. But common, classwide

16

evidence *also* defeats Google's purported "implied consent" defense for three reasons:

17

18

- Google's form contract throughout the class period required users' "*explicit consent*"
  to "reduce your rights under this Privacy Policy," which means that any later *implied*
  consent cannot "modify" that contract as a matter of law;

19

20

- Google points to *no* evidence sufficient to show that *any* Class members waived (i.e.,
  "intentionally relinquished") their contractual rights; and

21

- None of Google's claimed sources "explicitly notif[ied]" users of the "specific
  practice[s]" at issue, which is required to establish "implied consent." Dkt. 113 at 14.

22

Faced with common issues regarding liability and damages, Google contends its own

23

refusal to preserve data somehow makes it impossible to "verify" Class members and to allocate

24

damages. These contentions fail as a matter of law (since Class members can self-verify and

25

since Google has no standing to contest allocation) and as a matter of fact. Google is already

26

27

28

---

[1] Ex. 1 at -67, Ex. 2 at -26, Ex. 5 at -43. Unless otherwise noted, "Ex." refers to the exhibits
attached to the Opening Mao Decl. (Dkt. 609-17), and the Second Mao Decl. filed herewith.

precluded from "challeng[ing] class certification" on the ground that complete data is unavailable. Dkt. 587 at 7. Further, the private-browsing data Google *has* produced *was* easily linked to Plaintiffs (Hochman Report (Dkt. 608-12) §§ VIII.F, H), which no Google expert disputes. As for relief, in addition to nominal and punitive damages, Plaintiffs, using Google's data, calculated and properly seek to recover unjust enrichment, actual damages, and statutory damages, and Plaintiffs provide methods for apportioning the aggregate awards they've quantified. *See* Dkt. 608-9, Lasinski Report (detailing calculations); Mot. at 14; Dkt. 700 at 24 & n.8 (*Daubert* opposition explaining how these damages are recoverable for Plaintiffs' claims). Finally, a class action is particularly superior here, where forcing these Google account holders to proceed individually will effectively deny them any "chance to recover" for Google's "broken" promises. Ex. 2 at -26; *West v. Cal. Servs. Bureau*, 323 F.R.D. 295, 307 (Gonzalez, Rogers, J.).

## II.   ARGUMENT

Google does not dispute that Rule 23(a) is satisfied here. Google instead attacks predominance, but every Google argument can be resolved on a classwide basis.

### A.   Google Does Not Dispute that Common Issues Predominate as to the Form Contract and Its Interpretation.

Plaintiffs' Motion established the contract is a *form* contract agreed to by every Class member. Mot. at 6. That contract must be interpreted "from the perspective of a reasonable [Google] user." Dkt. 363 at 23; Mot. at 6, 8-9.[2] Google does not—and cannot—dispute that Class members' subjective understandings of the contract are irrelevant to the threshold issue of *interpreting* that contract. *See* Mot. at 6 (citing five cases for the proposition that subjective "knowledge or understanding" cannot, as a matter of law, alter the obligations imposed by a contract's text). Google's silence concedes the point.[3]

---

[2] "This Court [also] applies a reasonable user standard to determine consent under the Wiretap Act." *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016).

[3] Google discusses only one of the five cases cited, and that discussion concedes the point: "widespread public disclosures by Apple and numerous media platforms" were "common to the class" *for purposes of resolving a contractual ambiguity* in a form contract. Opp. 15 n.7 (quoting *Williams v. Apple, Inc.*, 338 F.R.D. 629, 639 (N.D. Cal. 2021)).

**B.      Common Issues Predominate as to Implied Consent.**

**1.      The Form Contract Bars Google's Implied-Consent Defense.**

Google's Privacy Policy promised all Class members that Google would "not reduce your rights under this Privacy Policy *without your explicit consent*." Mot. at 19 (quoting Dkt. 83-1 at 12). This is a waiver of the implied-consent defense to all of Plaintiffs' claims. California law governs (Google doesn't dispute that), and in California, personal defenses like implied consent "may be waived" by contract. *Id.*[4] California law also provides that where, as here, a "written agreement" requires "modification in writing," then that written agreement "cannot" be "modif[ied]" by a "subsequent *implied* agreement." *Id.* at 19 n.7 (emphasis added).[5]

Google offers only the following, nonsensical sentence in response: "[A] user's implied consent—i.e., their choice to use a service while aware of the conduct—is neither an action by Google nor an instance of reducing the user's rights." Opp. at 15. But Google's collection of private browsing data, and attempt to justify that with an implied consent defense, is indeed an action by Google that reduces users' rights without explicit consent. Regardless, this contractual bar is an issue that is certainly "capable of classwide resolution" on each claim. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc).

**2.      Common Evidence Predominates as to Implied Consent.**

**a)      There Was No Implied Consent to the Breach of Contract.**

The "implied consent" defense requires Google to show—by "clear and convincing evidence"—that Class members *waived* their contractual rights, that is, "intentional[ly] relinquish[ed]" those rights "after full knowledge of the facts." *Old Repub. Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 678 (2000). To carry this heavy burden, Google must show "*acts*" by a Class member "that are *so inconsistent* with an intent to enforce the [contractual] right as to induce a reasonable belief that such right has been relinquished." *Id.* (emphasis added); *Pennel v. Pond Union Sch. Dist.*, 29 Cal. App. 3d 832, 838 (1973) (to show

---

[4] Mot. at 19 (quoting *Tebbets v. Fidelity & Cas. Co. of N.Y.*, 155 Cal. 137, 139 (1909); and *Zamora v. Lehman*, 153 Cal. Rptr. 3d 724, 733-34 (Ct. App. 2013)).

[5] Mot. at 19 n.7 (quoting *Cell-Crete Corp. v. Lexington Ins. Co.*, 2014 WL 12601011, at *3 (C.D. Cal. July 30, 2014) (citing California law)).

waiver, plaintiff's acts must be "positive, unequivocal, and inconsistent with the contract").

Google points to just one kind of *act* by Class members that it contends shows a waiver—namely, their "use" of Google's "service while aware of the conduct." Opp. at 15. But a plaintiff's acquiescence or sense of helplessness in the face of Google's omnipresence is *not* sufficient to show waiver. 13 Williston on Contracts § 39:35 (4th ed. 2015) ("Mere silence, acquiescence, or inactivity is insufficient to show a waiver of contract rights when there is no duty to speak or act."). In *Williams*, Apple made just this argument—that users' continued use of Apple services (after reading "widely circulated articles" about Apple's conduct) waived their contractual rights. 338 F.R.D. at 645, 648. *Williams* rejected Apple's argument, holding that this defense did not defeat predominance since "all class members signed a standard form contract." *Id.*

### b) The Express Contract Means Google Cannot Show Implied Consent to Its Torts and Statutory Violations.

Google's implied-consent defense also fails, as a matter of law, as applied to Plaintiffs' tort and statutory claims. A defendant cannot show implied consent where the defendant's conduct breaches an express contract and the plaintiffs have not waived their contractual rights. *In re Pharmatrak, Inc.*, 329 F.3d 9, 12 (1st Cir. 2003) (applying federal Wiretap Act); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013) (applying federal Wiretap Act and the CFAA (federal analog to the CDAFA) and explaining that implied consent has "no place where a party manifested consent through the adoption of a form contract"). In *Pharmatrak*, as here, the parties' contract contained "assurances that" the "data collection would not occur." *Id.* at 12. The defendant argued that plaintiffs knew about the data collection and thus impliedly consented, but the First Circuit rejected that argument based on the written contract. *Id.* at 20-21. Google has not cited a *single* case finding implied consent to data collection in circumstances like these where the parties' express contract forbade it.

Google places its weight on *Gmail*, *Campbell*, and *Backhaut* (Opp. at 12-13). But those cases are inapposite. None considered a claim that the defendant had breached a written contract. The word "contract" does not appear in either *Campbell v. Facebook Inc.*, 315 F.R.D. 250 (N.D. Cal. 2016) or *Backhaut v. Apple Inc.*, 2015 WL 4776427 (N.D. Cal. Aug. 13, 2015). And *Gmail*

4

confirms the importance of the contract claim in this case. The *Gmail* plaintiffs argued that Google may not "rely[] on extrinsic evidence outside of Google's agreements with Class Members [to establish implied consent]." *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *19 (N.D. Cal. Mar. 18, 2014). The court disagreed, but clarified their argument "could be valid [] if Plaintiffs stated a breach of contract claim." *Id.* at *14 n.11, 19.

### c)      Common Issues Predominate as to Implied Consent.

Even if there were no express contract that defeated "implied consent" as a matter of law, common issues would still predominate. Implied consent "applies only in a narrow set of cases," and requires evidence that Class members were "explicitly notif[ied]" of Google's "specific practice[s]" at issue. Dkt. 113 at 14, 21; *see* Restatement (Second) of Torts § 892A (consent "not effective" unless plaintiff had notice of the "particular conduct" at issue). Google has not pointed to *any* evidence that "explicitly notif[ied]" Class members of Google's "specific practice[s]." Dkt. 113 at 14. Instead, Google's principal argument is that some person may have *suspected* its conduct as a result of "academic" papers, media reports, or developer tools.[6]

This argument fails for five independent reasons. *First*, Google conflates suspicion with actual knowledge. "[K]nowledge of the capability of monitoring alone cannot be considered implied consent." *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983). Evidence that people might have "foresee[n]" Google's "monitoring" is "insufficient to infer consent." Mot. at 20 (quoting *United States v. Staves*, 383 F.3d 977, *2 (9th Cir. 2004)); Opp. at 15 (ignoring *Staves*). Google's "theoretical argument" regarding uninjured people is insufficient. *Ngethpharat v. State Farm Mut. Ins. Co.*, 339 F.R.D. 154, 167 (W.D. Wash. 2021).

*Second*, none of the cited sources actually disclosed the specific practice Plaintiffs challenge: Google's collection, storage, and use of private browsing data when its account holders are (a) signed out of their Google accounts and (b) visiting a non-Google website.

---

[6] Google misrepresents Plaintiffs' testimony. *Compare* Opp. 6 & n.11 (mischaracterization of Davis's testimony), *with* Opp. Ex. 26 at 82:2-15 (recalling article stating it was "hypothetically possible that Google could be aggregating information," and recalling "Google responding to that article and saying that they . . . did not"). Google also suggests that Plaintiff Byatt conceded that developer tools provide insight into Google's Incognito data collection, but Mr. Byatt testified he did not recall ever using developer tools in Incognito mode. Byatt Tr. 49:5-12.

Schneier Rebuttal (Dkt. 608-6) App. 2 (discussing the sources Google cites). By way of example:

- Tracking on "Websites You Visit": These sources disclosed only that *websites* may track users; they did *not* disclose that *Google* tracks users' private browsing.[7]

- Tracking of "Signed In" or Google.com Traffic: These sources describe Google's collection of users' data when they are "signed in" to Google or visiting Google.com, but that collection is *not at issue* here.[8]

- Website Disclosures that Do Not Mention Private Browsing: Not a single one of the non-Google websites' privacy policies or "pop ups" mentions "Incognito" or "private browsing," let alone that Google collects private browsing information.[9]

The "dozens" of articles buried at the bottom of the Broome declaration are likewise off-point.[10]

*Third*, none of these sources was ever confirmed by Google. Instead, Google concealed its conduct—as its own employees lamented at the time. Mot. 1. And Google *publicly discredited* at least one of the sources it now cites, claiming that the 2018 Vanderbilt study "contains wildly misleading information."[11] *Moreover, Google reassured users every time they opened a new Incognito session by way of the Splash Screen.* Mot. 7. Google also told this Court (in one of its 90 motions to seal) that Google's "practices with regard to Incognito" are "maintain[ed] as confidential" and are "*not generally known to the public.*" Dkt. 409 at 3 (emphasis added). Even

[7] *See* Opp. Ex. 34 at 16 and Opp. Ex. 33 at 153 (quoting Professor Schneier's statement that Incognito "does not prevent any websites you visit from tracking you" and that private browsing mode itself won't "block internet tracking"); Opp. Ex. 108 at 4 (2019 *Wired* UK article saying "your activity might still be visible to the websites that you visit"); Opp. Ex. 113 at 2 ("if you're logged in to a website, the website's owners can see exactly what you are doing").

[8] Opp. at 6 n.10; Opp. Ex. 107 at 2 ("websites can still discover your identity"); Opp. Ex. 110 at 3 ("while in Incognito mode, Google is still tracking your searches," i.e., Google.com searches).

[9] *See* Opp. Exs. 39, 51-104.

[10] Plaintiffs' expert Bruce Schneier examined all but 28 of these articles and explains that "none" "discuss the fact that Google tracking beacons cause users' browsers to send users' private browsing data to Google during users' visits to non-Google websites while signed out of Google." Schneier Rebuttal ¶ 106 & App. 2. The other 28 articles were not included in Google's interrogatory response where Google identified all documents in support of its consent defense—which is why Schneier did not address them. *Id.* These backup articles (predictably) fare worse.

[11] *Compare* Opp. Ex. 112 (New York Post article summarizing study focused on signed-in Incognito tracking); *with* Dkt. 700-3 (Washington Post article where Google discredits the study).

*Fourth*, none of these sources (not even the "developer tools") disclose (a) that Google tracks Incognito browsing data using "Incognito detection bits," (b) what Google does with this data, or (c) that this Incognito data can be linked with users' "signed in" identities. *See* Dkt. 588-1 ¶¶ 15-21 (sanctions order summarizing Google's concealment of Incognito detection bits); Ex. 86 ¶¶ 6-7 (declaration re: how Google uses Incognito detection bits); Hochman Report §§ VIII. F, H. (unrebutted opinion that Google can accurately detect Incognito browsing and link data to users).[12] Google recently admitted, in a sworn declaration, that even *Google* does not fully know how Incognito data is tracked, where it goes, and what is done with it—claiming that would require "multiple months-long investigations" to find out. Dkt. 696-1 ¶ 7.

*Fifth*, there is no way to actually stop the collection at issue. Google identifies no setting or extension (or combination thereof) that completely blocks the collection. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Where choice is absent and information is concealed, consent is not possible.

### d)   The Deeply Flawed Amir Surveys Are Not Admissible Evidence of Individualized Issues as to Implied Consent.

Google's attempt to manufacture individualized issues with the surveys conducted by its expert Professor Amir should be rejected. Amir's surveys are irrelevant to consent, which is "determined under an *objective standard* based on the reasonable meaning of the words and acts of the parties, and not their *unexpressed intentions* or understanding." *Jarose v. Cty. of Humboldt*, 2022 WL 1601407, at *19 (N.D. Cal. Mar. 17, 2022) (emphases added). ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[12] Google argues in a footnote that the Court should disregard such common evidence because a "fact finder need not determine" class members "had specific knowledge of the particular devices that intercepted" their data to find consent. Opp. at 15 n.18 (citing *Gmail*, 2014 WL 1102660, at *20). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

2

3

Google also misrepresents the Keegan rebuttal survey, which demonstrated (after correcting Amir's errors) that *at least 93.1%* of Class members did *not* believe they consented to Google's collection of the private-browsing data at issue here. Keegan Rebuttal (Dkt. 608-10) ¶ 8.[13] Google falsely claims that Keegan's surveys show that only 20% of participants believed that they did not consent. Opp. at 4. That Google claim is flat-out wrong. Ex. 96 at 140:23-142:6.

Google's pre-litigation research supports Keegan's findings and contradicts Amir's results. Google's researchers concluded that private browsing users have "common misconceptions" about "how Incognito works" and "private browsing more generally." Ex. 5 at -43.

Accepting Google's arguments in this case would leave technology companies free to break contractual promises, lie about their acts, and discredit their critics, and then evade class certification (and therefore liability, retaining unjustly earned profits) based on speculation that some users may have suspected the truth. That is not the law, nor should it be. *West*, 323 F.R.D. at 307 (class actions give consumers "a chance to recover under the law").

**C.    Google's Other Arguments Fail to Defeat Predominance.**

**1.    Common Questions Predominate for Breach of Contract.**

Google argues that individualized issues predominate as to Plaintiffs' breach-of-contract claim because of (a) three changes to the form contract over time; (b) Google's opinion that Class 1 has stronger claims than Class 2; and (c) the contention that users could have "controlled"

---

[13] Notably, these participants were as likely as anyone to have encountered the external news articles Google relies on for implied consent, and yet the no-consent figure is still so high.

Google's collection using a VPN or similar service. Opp. at 20-21. Not one of these defenses will cause individualized inquiries to predominate. District courts may create subclasses to "segregate[e] certain factual and legal questions which are common to some members of the larger class." *Moore v. Ulta Cosms. & Fragrance, Inc.*, 311 F.R.D. 590, 609-10 (C.D. Cal. 2015) (cleaned up). Regardless, such procedural mechanisms are not needed here:

- <u>Post-2020 Privacy Policy Argument:</u> The Court rejected the argument (Opp. at 20) that the contract stopped incorporating the Privacy Policy in 2020. Dkt. 363 at 17.

- <u>Pre-2018 Privacy Policy Argument:</u> Google's argument that the pre-2018 Privacy Policy did not use the words "Incognito" or "PBM" is misleading. The Court concluded that a "reasonable internet user" could read *other* statements in the form contract (e.g., the Chrome Privacy Notice and Splash Screen) as "representing that 'private browsing mode' prevents Google from collecting users' data." Dkt. 363 at 21.

- <u>Pre-2020 Limitation of Liability Argument:</u> "California law forbids limiting liability for gross negligence," let alone for *knowing* conduct. *Ace Am. Ins. Co. v. Accellion, Inc.*, 2022 WL 2341155, at *45 (N.D. Cal. Apr. 11, 2022) (Gonzalez Rogers, J.). The form contract also makes clear that any limitations provision does not apply to such conduct. Dkt. 666-12 § A.

- <u>Class 2 v. Class 1 Argument:</u> Google entirely ignores Plaintiffs' arguments in support of their Class 2 claims. *E.g.*, Mot. at 8 & n.4. Regardless, these arguments obviously turn on common evidence, including the form contract and admissions by Google employees that Class 2 members were misled. *E.g.*, Ex. 17 at 146:15-21.

- <u>Other "Controls":</u> The relevant question is not whether users could have blocked Google's tracking by some *other* means ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Instead, the question is whether Google promised that private browsing mode would prevent the tracking.

## 2.    Common Questions Predominate for Privacy Torts and Standing

Google's argument that Plaintiffs must show that the data is "tied to their personal identities" (Opp. at 17) has been soundly rejected. The "critical fact" for these claims is "that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (also finding standing based on plaintiffs' "stake" in unjust enrichment); *In re Google Referrer Header*, 465 F. Supp. 3d 999, 1009 (N.D. Cal. 2020) (rejecting Google's argument that plaintiffs lacked standing insofar as the wrongfully collected information could not be "linked to [their] identity," reasoning that *Facebook Tracking* "did not rest its decision []

on the particular type of data at issue"); *id.* at 1010-11 (rejecting same Google argument as to standing for breach of contract claim). The *Zynga* case Google cites is inapposite because it involved an accidental data breach of *non-private* data, rather than a breach of a contractual promise not to collect private data in the first place. *I.C. v. Zynga, Inc.*, 2022 WL 2252636, at *7 (N.D. Cal. Apr. 29, 2022) (Gonzalez, Rogers, J.). In any event, Mr. Hochman offers unrebutted opinions regarding how the private browsing data can be identified and linked to users. Hochman Report §§ VIII.F, H; Hochman Rebuttal §§ V.A, D, E.

Google also incorrectly suggests that "implied consent" is an Article III standing defense. Opp. at 12. Not so. "[T]he question of [] consent bears not on the plaintiff's standing, but on the separate inquiry into whether the defendant is able to establish an affirmative defense of consent." *Daniel v. Lennar Corp.*, 2019 WL 8194735, at *3 (C.D. Cal. Oct. 16, 2019) (TCPA case); *Peters v. Mundelein Consol. High Sch. Dist.*, 2022 WL 393572, at *10 (N.D. Ill. Feb. 9, 2022) (federal Wiretap Act case describing "implied consent" as "affirmative defense").

As for the merits, Class members' reasonable expectation of privacy and the "highly offensive" nature of Google's conduct—are *objective* inquiries, and thus turn on classwide proof. *See* Dkt. 113 at 34 ("plaintiff must have had an objectively reasonable expectation of seclusion"); *Facebook Tracking*, 956 F.3d at 606 (standard is whether conduct is "highly offensive to a reasonable person").[14] So do Google's (meritless) defenses to these elements. No individualized evidence is needed for Google to argue that its conduct is not "highly offensive" insofar as users can use other settings besides private browsing, or because users may use private browsing for other purposes, like clearing their computer's history. Opp. at 19.[15]

---

[14] Mot. 10 (quoting *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (rejecting argument that "individual inquiry will be required into the subjective expectations of each class member"). Plaintiffs' statements about the helpfulness or usefulness of ads (Opp. 19 n.23) are taken out of context, as Plaintiffs did not consent to Google's tracking during private browsing. Any purported helpfulness or usefulness was limited to regular browsing sessions.

[15] Plaintiffs uniformly testified they did not change their browsing habits after filing this lawsuit because they knew their private browsing would be a focal point of discovery. *E.g.*, Byatt Tr. 15:6-16:19, Davis Tr. 82:23-83:11, Brown Tr. 92:18-93:2. They did so at the direction of counsel to generate "testing" data for Google to produce in the Special Master Process. Plaintiffs were forced to employ this method because Google successfully opposed Plaintiffs' motion to compel

### 3.      Common Questions Predominate for Statutory Claims.

Common questions also predominate as to Google's defenses (Opp. at 16-17, 21-22) to

Plaintiffs' statutory claims under the Wiretap Act, CIPA, the CDAFA, and the UCL.

- <u>Contents of Communications</u>: 

- <u>Confidential Communications</u>: The Court has already rejected Google's argument that the communications are not "confidential" merely insofar as users were informed that the *websites* they visit could record them. Dkt. 113 at 13, 30.

- <u>CDAFA "Circumvention"</u>:  Google also ignores Plaintiffs' second, independent CDAFA liability theory, which is also common—that Google "makes use of [the] data" without permission after collecting it. Mot. 11 (citing Cal. Penal Code § 502(c)).

- <u>*Sonner*</u>: Google's legal argument (Opp. 21-22) about "how *Sonner* applies [to Plaintiffs' UCL claim]" presents a "common issue" that gives no "reason to deny certification." *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Product Liab. Litig.*, 2022 WL 2343268, at *37 (N.D. Cal. June 28, 2022).

- <u>Wiretap Act criminal-or-tortious purpose exception to consent</u>: Common evidence demonstrates that Google intercepted private-browsing communications for tortious purposes. Mot. 20. Google argues that there is "fair fact dispute" about whether the exception applies. Opp. 16. That fact dispute, however, turns on common evidence.

---

a production of sample class member data. Dkt. 331. If Google wants to tell the jury that this somehow renders Google's conduct less than "highly offensive," such a toothless argument can nevertheless be made without resort to individualized inquiries.

[16] *In re Google RTB*, 2022 WL 2165489, at *10 (N.D. Cal. June 13, 2022) (Gonzalez Rogers, J.) ("contents" includes information showing "current section of the site or app" and "URL of the page" (citing *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014)).

[17] Some courts have held there is no "circumvention" requirement following the Ninth Circuit's decision in *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016). *See, e.g., Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017).

[18]

**D.      Common Evidence Predominates as to Monetary Relief.**

Mr. Lasinski calculated aggregate unjust enrichment and actual damages using Google's internal data, Google's ▮▮▮▮▮▮▮ analysis, and Google's Screenwise payments. Mot. at 15-16; Dkt. 700 (Lasinski *Daubert* Opp.). Those calculations are appropriate remedies. Dkt. 700 at 24 n.8 (citing authorities entitling Plaintiffs to these damages under their claims); *see also, e.g.*, *In re Google Assistant Priv. Litig.,* 546 F. Supp. 3d 945, 968 (N.D. Cal. 2021) (non-restitutionary disgorgement available for breach of contract); 18 U.S.C § 2520(c)(2)(A) (federal Wiretap Act authorizing damages for "any profits made by the violator as a result of the violation").

**1.      There Are No "Uninjured Class Members."**

Misrepresenting the record,[19] Google contends that Mr. Lasinski's damages models include "uninjured" class members. Opp. at 22. Plaintiffs respectfully incorporate their opposition to Google's *Daubert* motion. *See* Dkt. 700 at 3-7. As detailed above, consent fails based on common evidence and argument. Google's critique is also speculation, lacking any actual quantification. And *even if* there were a small number of "consenting" Class members (there aren't) that would not defeat certification.[20] As for the supposed "benefits" of personalized ads (Opp. at 22—focusing only on actual damages), Google relies on inapposite "price premium" cases. Dkt. 700 at 10-11 (distinguishing Google's cases). Mr. Lasinski properly calculated actual damages as "what it would have cost" Google "to obtain" the at-issue data "from a person in the claimant's position." Restatement (Second) of Contracts § 371. Restitution "may be measured" by either "the market value of the benefit" to Google or "a price [Google] has expressed a willingness to pay." Restatement (Third) of Restitution & Unjust Enrichment § 49. Neither rule requires discounting based on speculation regarding the value to users of personalization. Mr. Lasinski's calculations satisfy these rules. Regardless, common evidence shows that personalized ads ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Google is like a burglar claiming to owe

---

[19] Mr. Lasinski did not "admit" that he neglected to exclude uninjured class members; rather, he explained why he properly assumed "every user was harmed." Opp. Ex. 38 at 45:10-13.

[20] Even a greater-than-*de-minimis* number of "uninjured" class members does not bar certification. *Olean*, 31 F.4th at 669. Here, Mr. Keegan's rebuttal survey is common evidence that over 93% of class members believe they have *not* consented. Keegan Rebuttal ¶ 8.

less in damages because he "decluttered" his victim's home. That's not how it works.

### 2.        Google Has No Standing to Dispute Apportionment.

Apportionment disputes cannot defeat certification, since Google has "no interest" in how any aggregate award is distributed. Mot. at 17. Google ignores Plaintiffs' cases, and instead cites *Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 663 (9th Cir. 2022). But *Bowerman* denied certification due to "an issue of individualized *liability*," not "individualized *damages.*" *Id.*; *Roman v. Jan-Pro Franchising Int'l*, 2022 WL 3046758, at *17 (N.D. Cal. Aug. 2, 2022) (same interpretation of *Bowerman*). Here, liability can be proven with common evidence. And this case is a textbook example of aggregate damages that are "calculable" with common evidence–where aggregate damages are "all that plaintiffs need to prove." Mot. at 17.[21]

In any event, Mr. Lasinski set forth two apportionment methods, each consistent with how Google values and pays for user data in the real world. Dkt. 700 at 20-21. Google's criticism that his methods do not allocate damages according to the precise amount of time each user spent browsing is unfounded, particularly because its employee-expert has sworn in a declaration that Google's suggested method is "impossible." Dkt. 666-19 ¶ 7. More fundamentally, "[t]he wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." *Story Parchment Co. v. Paterson Parchment Paper*, 282 U.S. 555, 563 (1931).

### 3.        Punitive Damages Depend on Common Evidence.

"[T]he focus of a punitive damages claim is not on facts unique to each class member, but on the defendant's conduct toward the class as a whole." Mot. at 16 (quoting *Ellis v. Costco Corp. III*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012)). Google ignores *Ellis*, and instead cites inapposite cases.[22] Plaintiffs' demand for punitive damages turns on common evidence,

---

[21] *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) is also distinguishable. The plaintiffs proposed to run their damages model after trial and conceded that roughly 15% of the model included non-injured accounts, making their damages "speculative."

[22] Google's citation to *In re Roundup Prod. Liab. Litig.*, 385 F. Supp. 3d 1042, 1046 (N.D. Cal. 2019) actually supports Plaintiffs: "punitive damages are aimed at deterrence and retribution." In *Grosz v. Boeing Co.*, 2003 WL 25669166, at *1 (C.D. Cal. Oct. 22, 2003), the plaintiffs failed to identify any company-wide practice responsible for the alleged misconduct.

including internal documents establishing Google's awareness of its "Incognito Problem." Ex. 12 at -97.

### E.    A Class Action Is a Superior Method of Adjudication.

Plaintiffs' Trial Plan details how this case can be efficiently tried and an aggregate judgment fairly distributed. Google ignores that Plan entirely, and instead makes an "administrative feasibility" argument. *See* Opp. at 25 & n.33 (suggesting users may make "false claims"). But Google has no answer to a long line of ascertainability decisions, following *Briseno*,[23] which hold that (a) class members can self-identify, and (b) Rule 23 does not require "administrative feasibility." Google's authorities either pre-date *Briseno* or are inapposite.[24]

In any event, Google has been *precluded* from making any such objection to class members' self-verification. Dkt. 587 at 7 (barring Google from using "the fact that only sampled data, not complete data, is available to challenge … attestations by individuals that they are members of the class"). Google is also precluded from contesting whether any non-Google website contains Google tracking beacons. Dkt. 288-1 at 1-2. This means that all a Class member need attest to, to self-verify, is that she (a) used one of the private-browsing modes (b) to visit a non-Google website during the Class period while (c) logged out of her Google account.

This Court should give no weight to Google's claim (Opp. 25) that it cannot "*readily*" identify private-browsing users. All Google means is that it *refuses to* identify those people. The declaration cited by Google does not dispute that this identification is easily done. Dkt. 666-18 ¶ 42 (evading Mr. Hochman's opinion about how to identify the users from Google's data by solely addressing what Google allegedly does). Mr. Hochman detailed how it is done with accuracy. *See* Hochman Report §§ VIII.F, H; Hochman Rebuttal §§ V.A, D, E. ████████████████

████████████████████████████████████

---

[23] *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). The Opp. ignores *Briseno* and the many cases following it. *See, e.g.*, *Buffin v. City & Cty. of San Francisco*, 2018 WL 1070892, at *5 (N.D. Cal. Feb. 26, 2018) (Gonzales Rogers, J.); *West*, 323 F.R.D. at 298.

[24] *In re Hulu Priv. Litig.*, 2014 WL 2758598, at *16 (N.D. Cal. June 17, 2014), pre-dated *Briseno*. And in *In re Google Inc. St. View Elec. Communications Litigation*, 21 F.4th 1102, 1113-16 (9th Cir. 2021), the problem was that class members *could not* self-identify because they had no way of knowing if Google had captured their wifi data.

14

Plaintiffs' Reply ISO Motion for Class Certification 4:20-cv-03664-YGR-SVK

1 ██████████████████████████████████████████

2 ██████████████████████████████████████████

3 ████████████████████████████████████ It therefore

makes sense why the Court precluded Google from contesting class members' claims based on

its refusal to preserve classwide data. Dkt. 587 at 7. Finally, Google's most hypocritical argument

(Opp. 25)—that its violations should go un-redressed because Google would violate users'

privacy if it were to verify claims—can be rejected out of hand. Any user self-certifying is

obviously not concerned with being recognized as part of the class.

###### F.      Injunctive Relief and Issue Class Certification Are Warranted.

Google ignores Plaintiffs' alternative argument that Rule 23(b)(4) classes should be

certified on certain critical common "issues." Mot. at 24. Google also ignores Plaintiffs' cited

cases holding that Rule 23(b)(2) injunctive relief classes are appropriately certified in cases like

this one. Mot. at 24.[25] Plaintiffs' requested monetary relief is entirely divorced from the requested

injunctions, which would stop Google's collection of private-browsing data, require Google to

delete its already-collected data, and require Google to destroy products built using that data.[26]

Google's cited authorities are inapposite because they were decided on very different facts.[27]

### III.    CONCLUSION

Plaintiffs respectfully request that the Court grant the motion.

Dated: August 26, 2022

---

[25] Google for example ignores *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 598 (N.D. Cal. 2015) (certifying (b)(2) class demanding Yahoo cease scanning emails because the case implicated "a pattern or practice that is generally applicable to the class as a whole").

█████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

[27] In *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014), the plaintiffs sought to force Apple to accept refund requests, which was "in essence, a claim for monetary damages." *In re Flash Memory Antitrust Litigation*, 2010 WL 2332081 (N.D. Cal. June 9, 2010), was a price fixing case where "any concerns of future harm [were] negligible" since prices were falling. *Id.* at *6. In its citation of *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *18 (C.D. Cal. Apr. 14, 2022), Google ignores the portion stating that (b)(2) certification is appropriate where "a single injunction or declaratory judgment would provide relief to each member of the class."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By */s/  Mark Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)

sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*