**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, et.al, individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' DAMAGES EXPERT MICHAEL J. LASINSKI**<br><br>The Honorable Yvonne Gonzalez Rogers<br>Date:          September 20, 2022<br>Time:          2:00 p.m.<br>Location: Courtroom 1 – 4th Floor |

1

## <u>TABLE OF CONTENTS</u>

**Page**

2

3   I.     PRELIMINARY STATEMENT ..................................................................................1

4   II.    ARGUMENT ............................................................................................................1

5         A.    Plaintiffs Fail To Credibly Rebut Mr. Lasinski's Failure To Account For
              Uninjured Users Who Consented To The At-Issue Data Collection.........................1

6

7         B.    Plaintiffs' Opposition Does Not Resuscitate Mr. Lasinski's Restitution
              Model ...................................................................................................................3

8             1.    Mr. Lasinski's Methodology Is Arbitrary And Improper .............................3

9             2.    Mr. Lasinki's Failure To Evaluate The Benefit Users Receive From
                    Collection Of Their Data Renders His Restitution Model Unreliable ..........6

10

11             3.    Mr. Lasinski's Restitution Opinion Fails To Account For Variability
                    In Plaintiffs' Valuation of Privacy .................................................................7

12         C.    Mr. Lasinski's Unjust Enrichment Model Is Flawed .........................................9

13              1.    Mr. Lasinski's Opinion On Costs Should be Excluded .................................9

14              2.    The Entirety Of Mr. Lasinski's Unjust Enrichment Opinion Is
                    Speculative ......................................................................................................10

15

16         D.    Mr. Lasinski's Apportionment Methods Should Be Stricken ...............................10

17         E.    Mr. Lasinski's Opinion Regarding Statutory Damages Should Be Excluded .........15

   III.   CONCLUSION ......................................................................................................15

18

19

20

21

22

23

24

25

26

27

28

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE MICHAEL J. LASINSKI

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**<u>Cases</u>**

4

*Apple iPod iTunes Antitrust Litig.*,
2014 U.S. Dist. LEXIS 136437 (N.D. Cal. Sep. 26, 2014)............................................................ 5

5

*Aramark Mgmt., LLC v. Borgquist*,
2021 WL 4860692, (C.D. Cal. Sept. 29, 2021) .......................................................................... 2

6

7

*Bowerman v. Field Asset Servs., Inc.*,
39 F.4th 652 (9th Cir. 2022)................................................................................................... 11

8

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016) ............................................................................................ 6

9

10

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)................................................................................................ 13

11

*Chowning v. Kohl's Dep't Stores, Inc.*,
733 F. App'x 404, 406 (9th Cir. 2018).................................................................................... 6

12

13

*Cisco Systems, Inc. v. Advanced Digital Solutions International, Inc.*,
No. 4:18-CV-07602-YGR, 2021 WL 3129590 (N.D. Cal. July 23, 2021) ................................. 9

14

*Comcast Corp. v. Behrend*,
569 U.S. 27, 133 S. Ct. 1426 (2013) .................................................................................. 1, 5

15

16

*Consumer Fin. Prot. Bureau v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ............................................................................................... 9

17

*F.T.C. v. BurnLounge, Inc.*,
753 F.3d 878 (9th Cir. 2014) ................................................................................................. 5

18

19

*Hemmings v. Tidyman's Inc.*,
285 F.3d 1174 (9th Cir. 2002)................................................................................................ 3

20

*In re Apple iPhone Antitrust Litig.*,
No. 11-CV-6714-YGR, 2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) ........................ 1, 11, 14

21

22

*In re Hulu Priv. Litig.*,
2014 WL 2758598 (N.D. Cal. June 17, 2014) ....................................................................... 13

23

*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
2022 WL 1814440 (N.D. Cal. June 2, 2022) .......................................................................... 3

24

25

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015)................................................................................................. 6

26

*In re Toy Asbestos*,
2021 WL 1167638 (N.D. Cal. Mar. 26, 2021) ................................................................... 6, 8

27

28

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) ............................................................................................ 11

*Maison D Artiste v. Am. Int'l Grp., Inc.*,
    2020 WL 5498061 (C.D. Cal. Aug. 3, 2020) ............................................................. 12

*Manpower, Inc. v. Ins. Co. of Pa.*,
    732 F.3d 796 (7th Cir. 2013) ...................................................................................... 3

*McCrary v. Elations Co. LLC*,
    2014 U.S. Dist. LEXIS 200660 (C.D. Cal. Dec. 2, 2014) ........................................... 8

*McCrary v. Elations Co., LLC*,
    2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) .......................................... 7, 8

*Meyer v. Bebe Stores, Inc.*,
    No. 14-CV-00267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017) .................... 13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ............................................................................. 1, 14, 15

*Opperman*, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ............................................. 2, 12

*Patel v. Facebook*,
    932 F.3d 1264 (9th Cir. 2019) .................................................................................. 15

*Perez v. Rash Curtis & Assocs.*,
    2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) .............................................................. 2

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) .................................................................................. 11

*Siqueiros v. Gen. Motors LLC*,
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022 .................................................................... 2

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .................................................................................. 11

*Story Parchment Co. v. Paterson Parchment Paper Company*,
    282 U.S. 555 (1931) ........................................................................................... 11, 13

*Tunica Web Advert., Inc. v. Barden Mississippi Gaming, LLC*,
    2008 WL 3833225 (N.D. Miss. Aug. 14, 2008) ....................................................... 13

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. 2021) ............................................................................ 1, 2

*Zaklit v. Nationstar Mortg.*,
    2017 WL 3174901 (C.D. Cal. July 24, 2017) ........................................................... 15

**Rules and Regulations**

Fed. R. Evid. 702 and 403 ...................................................................................................... 1

F.R.E. Rule 23(b) ....................................................................................................... 1, 11, 12

1

**<u>Additional Authorities</u>**

2  Black's Law Dictionary ................................................................................................ 9

3  Restatement (Third) of Restitution and Unjust Enrichment § 49 ...................................... 6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      PRELIMINARY STATEMENT

Although Plaintiffs throw up a smorgasbord of arguments to justify the damages opinions of their expert, Michael Lasinski, it is clear that the methodologies underlying Mr. Lasinski's restitution, unjust enrichment/disgorgement and statutory damages opinions contravene established precedent, are contrary to the record facts, and are too speculative and incomplete to meet the requirements under *Daubert* and Federal Rules of Evidence 702 and 403. For the reasons set forth below and in Google's Motion, this Court should reject Plaintiffs' tortured rationales and misleading recitations of case law, and exclude all of Mr. Lasinski's opinions as unreliable and unhelpful.

## II.     ARGUMENT

### A.      Plaintiffs Fail to Credibly Rebut Mr. Lasinski's Failure to Account for Uninjured Users Who Consented to the At-issue Data Collection

Plaintiffs *concede* that Mr. Lasinkski has not provided a methodology that is capable of excluding uninjured class members from his damages model. Opp. 3. This admission is fatal.

Plaintiffs seek to justify Mr. Lasinski's failure to address uninjured class members by claiming that Mr. Lasinski "need not assume Google's consent defense is valid," *id.*, but this rationale is meritless. At the class certification stage, a plaintiff must introduce evidence to show that damages may be awarded on a class-wide basis in order to meet the "demanding" predominance criterion of Rule 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Plaintiffs' damages methodology at the class certification stage must be able to yield a damages amount that applies only to *injured* class members while proposing how *uninjured* class members would be excluded. "When considering if predominance has been met, a key factual determination courts must make is whether the plaintiffs' [] evidence sweeps in uninjured class members. If a substantial number of class members in fact suffered no injury, the need to identify those individuals will predominate." *In re Apple iPhone Antitrust Litig.*, No. 11-CV-6714-YGR, 2022 WL 1284104, at *15 (N.D. Cal. Mar. 29, 2022) (internal quotation marks omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (holding that Rule 23(b)(3) requires "that the district court determine after rigorous analysis whether the common question predominates over any individual questions, including individualized questions about injury or entitlement to

1  damages."); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 641-42 (N.D. Cal. 2021) (declining to certify

2  portion of class where plaintiffs offered no feasible method of determining uninjured class

3  members). Plaintiffs do not (and cannot) distinguish this authority.

4          Google's *Daubert* challenge is not a mere "disagree[ment]" with Mr. Lasinski's

5  assumptions, Opp. 3, but rather highlights Mr. Lasinski's inability to demonstrate that his

6  methodology can be used to determine class-wide damages because some of the putative class

7  members consented to the At-Issue Data collection and are therefore uninjured and ineligible for

8  damages awards. *See* Mot. 12-14; Class Cert. Opp., Dkt. 659-3 at 12-16. An individualized inquiry

9  must necessarily be made to determine whether each user consented, for instance, by opting in to

10  third-party cookies when initiating their private browsing session (Mot. 8), via third-party pop-ups

11  (*id*.), or through other means.  Class Cert. Opp., Dkt. 659-3 at 5-6). None of Plaintiffs' cases hold

12  that experts need not account for uninjured class members. *See Siqueiros v. Gen. Motors LLC*, 2022

13  WL 74182,  (N.D. Cal. Jan. 7, 2022) (no mention of whether an expert's damages model is reliable

14  if it cannot separate uninjured plaintiffs); *Aramark Mgmt., LLC v. Borgquist*, 2021 WL 4860692

15  (C.D. Cal. Sept. 29, 2021) (same); *Perez v. Rash Curtis & Assocs.*, 2019 WL 1491694, at *3 (N.D.

16  Cal. Apr. 4, 2019) (same).

17          Plaintiffs' merits arguments that "no class member consented" to the At-Issue Data collection

18  and that Google's implied consent defense "is legally barred," Opp. 3-4, are not properly before this

19  Court on a *Daubert* motion.  The relevant inquiry is whether Mr. Lasinksi's damages model can

20  reliably establish that Plaintiffs can prove classwide damages based on common proof. Because Mr.

21  Lasinski's methodology failed to exclude uninjured class members, he cannot make that showing.

22  *See Opperman v. Path, Inc.*, 2016 WL 3844326, at *14–15 (N.D. Cal. July 15, 2016) (rejecting

23  damages model at class certification stage because it included class members that had not been

24  injured). In any case, Plaintiffs are factually incorrect that no putative class members expressly or

25  impliedly consented.  *See* Class Cert. Opp., Dkt. 659-3 at 5-6, 12-16 (discussing the many ways in

01980-00174/13579033

1   which putative class members were aware of Google's receipt of data while a user is in private

2   browsing mode).[1]

3   **B.**      **Plaintiffs' Opposition Does Not Resuscitate Mr. Lasinski's Restitution Model**

4          **1.**      **Mr. Lasinski's Methodology Is Arbitrary and Improper[2]**

5          Plaintiffs mischaracterize Google's critique of Mr. Lasinski's restitution model, relying on

6   cases that hold "selection of data inputs to employ in a model" goes to weight and not admissibility.

7   Opp. 8 (quoting *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2022 WL 1814440,

8   at *20 (N.D. Cal. June 2, 2022), *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 807-08 (7th Cir.

9   2013); *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)). But Google is not

10  challenging the selection (or lack of selection) of various data inputs, as in the cases they tout, but

11  Mr. Lasinski's methodology itself.

12         In *Manpower Inc.*, for instance, the court of appeal reversed the district court's exclusion of

13  the expert's business interruption opinion because it was based on the lower court's subjective view

14  as to the time-frame for calculating lost revenue, which the court held was insufficient to exclude

15  an opinion based on an otherwise reliable methodology. *See id*. Similarly, in *Juul*, the defendant

16  *conceded* that the expert "performed the type of regression analysis that are broadly accepted as

17  admissible in similar cases," 2022 WL 1814440 at 20, but faulted various inputs used and not used

18  in conducting that regression analysis.  *See id*.  And in *Hemmings*, the Court declined to exclude an

19

20

---

21  [1] Plaintiffs' reliance on isolated statements that Google misrepresented "how Incognito works" is misplaced. Many of the statements come from former Google employee Christopher Palmer who

22  admitted to using "provocative" and "spicy" language to convey his points to Google management. Trebicka Decl., Ex. 8, Palmer Dep. 42:1-6. Plaintiffs misconstrue the testimony of Sabine Borsay

23  who testified that (i) she does not know what data Google collects from services or products outside of Chrome, and (ii) for data that Chrome does collect, she relies on engineers within the Chrome

24  organization for that type of granular information due to her seniority. Lee Ex. 1, Dkt. 700-2, Borsay Dep. 192:10-24. Mr. Martin Sramek merely stated that an investigation of all data sources at Google

25  to determine whether any fields could be used in a specific way is not instructive of whether users have the ability to consent to data collection.

26  [2]  Plaintiffs' attempt to rewrite Mr. Lasinski's opinion from an admission that the $3 per device per month data collects "qualitatively and quantitatively" different from the PBM data, to the novel idea

27  that the Ipsos panelists intended for the $3 payment to compensate them for the "incremental data" when they "browse[d] privately from Google." (Opp. 8).  This unsupported switcheroo is

28  inappropriate and does not help in any event because neither Mr. Lasinski nor Plaintiffs have any basis other than speculation to divine what Ipsos participants believed. f

1  opinion for failing to "eliminate all of the possible legitimate nondiscriminatory factors." 285 F.3d

2  1174, 1188 (9th Cir. 2002) (emphasis in original).

3        Here, however, Plaintiffs *concede* that Mr. Lasinski's methodology and the input on which

4  it is based are one and the same because they explain that "to calculate damages, Mr. Lasinski used

5  the same $3 rate amount as an input, and he then multiplied that amount by the number of unique

6  monthly private browsing instances ("UMPBI") during the class period for both proposed

7  classes…" Opp. 8.  The $3 amount is not a mere "input"—Mr. Lasinski in fact relied ***exclusively***

8  on the Screenwise Panelists' compensation to reach his calculation of ███████ over the class

9  period." *Id.* Plaintiffs offer no evidence to even remotely suggest otherwise.[3] Therefore, Google's

10  *Daubert* challenge is necessarily directed at the "reliability of the methodology itself," which

11  exclusively uses a benchmark that has no relevance to the At-Issue Data in this dispute.[4] Mot. 4-5.

12  As Google documented in its Motion, Mr. Lasinski made numerous admissions regarding the

13  significant differences between the At-Issue Data and the data collected from Screenwise Panelists,

14  Mot. 4-5, including that they "are qualitatively different, as well as quantitatively different" from

15  the more continuous and extensive Screenwise collection. Lasinski Dep. 114:13-115:7.

16        Plaintiffs attempt to cover up the fatal deficiency in his methodology by mischaracterizing

17  the record to suggest that Lasinski's opinion properly accounted for "Screenwise differences,"

18  namely the $20 fee Panelists receive. Opp. 9. But Google already acknowledged that Screenwise

19  participants are paid extra for certain additional one-time or infrequent activities beyond the regular

20  collection of information, time spent monthly, and agreement to forgo the use of specific types of

21  services. *Cf.* Mot. 5 n.6, Opp. 9. These additional activities are separate from the amount of data,

22  time, and acceptance of restrictions for which Screenwise Panelists are paid, and Plaintiffs'

23  suggestions otherwise are disingenuous. Mr. Lasinski admitted that the $3 that Google pays

24

25

---

26  [3]  To the contrary, Mr. Lasinski opines that the $3 figure is the "payment[] necessary to incentivize
27  an individual to knowingly relinquish the choice to keep certain browsing private and allow an
organization to track all online activity." Mot. at 4 (quoting Lasinski Rep. ¶ 137).

28  [4]  Moreover, unlike in Plaintiffs' cases, Google never conceded Mr. Lasinski's methodology was
proper; nor is his methodology rooted in established scholarship.

01980-00174/13579033.1

1  Panelists is to compensate them for a host of information and activities distinct from browsing data

2  (Lasinski Dep. 114-121). Mot. 5.

3        Moreover, Mr. Lasinski offers no research or study to support his opinion that class members

4  should be paid the same rate for a small amount of information as Panelists are paid "to provide

5  Google *unfettered collection* and use of their online browsing data," Opp. 7 (emphasis added), as

6  well as their time to perform additional tasks, and the inconvenience of agreeing not to use other

7  services that putative class members are permitted to use. Even *if* "unwilling sellers are less likely

8  to accept the same payment as willing sellers," Mr. Lasinski leaps to the conclusion that the $3

9  payment to willing users for more comprehensive data, time and restrictions is at least as much as

10  the payment to unwilling users for a much smaller amount of data, and no time and restrictions.

11  Why not 20% less or more?  Or 10% less or more? Mr. Lasinski does not say. *See Comcast Corp.*

12  *v. Behrend*, 569 U.S. 27, 35, 133 S. Ct. 1426, 1433 (2013) (rejecting lower court's logic that "at the

13  class-certification stage *any* method of measurement is acceptable so long as it can be applied

14  classwide, no matter how arbitrary the measurements may be.").

15        Plaintiffs' reliance on *F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878 (9th Cir. 2014), Opp. 9, is

16  similarly misguided. There, the Court affirmed an expert's reliance on the defendant's data which

17  "convincingly illustrated the disproportionate rate" at issue in the case. *Id.* at 889. There is no such

18  evidence here, much less "convincing" evidence: Mr. Lasinski agrees the data received from the

19  Screenwise Panelists is superior to the data at issue in this case. Nor does *Apple iPod iTunes Antitrust*

20  *Litig*, 2014 U.S. Dist. LEXIS 136437, at *11 (N.D. Cal. Sep. 26, 2014), support Plaintiffs' position.

21  There, plaintiffs' expert based the analysis of the "complete sales records for the models of iPod

22  covered by the class definition and sold during the class period." Here, Mr. Lasinski relies on *one*

23  data point paid to Panelists for a comprehensive set of data and assumes, without any support, that

24  *the same* number should be paid to class members for a qualitatively and quantitatively different set

25  of data that even Mr. Lasinski agrees is less valuable. Lasinski Dep. 121:10-16 ("Q. Other things

26  being equal, would you agree that data that tells you more about a particular user is more valuable

27  than data that tells you less about a particular user? THE WITNESS: I would say other things being

28  equal, that is accurate, yes."); *id.* 122:4-8 ("Q. And all else equal, again, more data is more valuable

than less data; correct? THE WITNESS: I -- I believe that that is accurate, yes."). Mr. Lasinki's methodology is inherently unreliable.

### 2.   Mr. Lasinki's Failure to Evaluate The Benefit Users Receive From Collection of Their Data Renders His Restitution Model Unreliable

"Restitution requires that the value of what the plaintiff received was less than what the plaintiff paid. Without evidence of the value received, that calculation is impossible." *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018) (internal quotation marks and citations omitted); *see also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (holding that the measure of "restitution is equal to the difference between what the plaintiff paid and the value she received in return."). Therefore, an opinion on restitution must take into account any benefit to users, and the record here confirms users valued and benefited from personalized content.

Plaintiffs assert that Google has not proven that class members benefited from the data collection, Opp. 11, but the burden is on Plaintiffs to "prove the product had no value to them" if they demand the full restitution value. *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015).[5] Mr. Lasinski's opinion fails to address, much less offer evidence, supporting this position.[6] Plaintiffs' other authorities likewise do not change the outcome. The Restatement (Third) of Restitution and Unjust Enrichment § 49 states that restitution may be a price the defendant has expressed a willingness to pay, "if the defendant's assent may be treated as valid on the question of price." Here, there is no evidence that Google has ever agreed to pay $3 per month for—what Plaintiffs' expert admits—is the limited data at issue in this case. The record confirms that some class members derived a benefit from personalized advertising and other individualized content that

---

[5]   Although the Court noted that other measures of restitution may exist, it rejected plaintiffs' assertion that a "trial court may award as restitution a full refund of the price paid, regardless of value received." *In re Tobacco Cases II*, 240 Cal. App. 4th at 795. Plaintiffs were unable to collect restitution because they had not submitted any competent evidence of a proper offset for the received value. *Id.*

[6]   Plaintiffs' reliance on *In re Toy Asbestos* 2021 WL 1167638 (N.D. Cal. Mar. 26, 2021) (Opp. 11) is also misplaced. This is not a question of "competing evidence" but a failure to provide a proper restitution opinion which, by law, must offset for any benefit to the Plaintiffs.

1   would offset—and could outweigh entirely[7]—the purported value of the At-issue Data. Mot 17-18.

2   Mr. Lasinski, by contrast, testified: "I can't think of a reason why" the benefit class members receive

3   from personalized ads should be offset from restitution damages. Lasinski Dep. 76:18-24. He offers

4   no evidence that this variability can be accounted for class-wide.

5          In a last ditch effort to evade the legal requirement, Plaintiffs incorrectly analogize Google

6   to a home burglar who "claims that a restitution award should be offset with a cleaning fee for

7   'decluttering' his victims' home." Opp. 11. But this inapt hypothetical belittles the collateral benefits

8   users may derive from the At-Issue Data collection. For instance, a user shopping for an engagement

9   ring may not want his partner to know he is shopping for rings, but that user may still benefit from

10   personalized advertising related to engagement rings during his private browsing session. As a

11   result, the better hypothetical is a housekeeper who borrows her employer's car to run a personal

12   errand and then returns that car washed and with a full tank of gas. Under such circumstances, the

13   tangible benefits to the employer must be taken into account—an omission that renders Mr.

14   Lasinksi's opinion unreliable.

15          **3.      Mr. Lasinski's Restitution Opinion Fails To Account for Variability in
              Plaintiffs' Valuation of Privacy**

16

17          Plaintiffs make the sweeping assertion "that every class member values privacy," Opp. 12,

18   without supporting evidence.  But even if they were correct that people use Incognito to retain their

19   privacy, they ignore wide variations among these purportedly "privacy conscious" users. For

20   example, Mr. Lasinski admits that some users would not part with the At-issue Data even if given

21   "$20 or $30 or $40 per month," while others agree to provide Google with all of the At-issue Data

22   (as well as much more) for only $3 per month, by taking part in the Screenwise panel. Lasinski Dep.

23   107:21-24; Mot. 4. And it is not at all "clear," Opp. 12, that every class member values privacy more

24   than the benefits they receive from personalized ads or as much or more than the Screenwise

25

26

---

[7]   Class members for whom personalized content and advertising outweighs the value, if any, of the data, would be uninjured and should be excluded, yet Mr. Lasinski does not (and cannot) account for this in his model.

1   Panelists, particularly since any Screenwise Panelist who used PBM is also a putative class member.

2   *See* Mot. 17-18, n.17.

3         Contrary to Plaintiffs' assertion, *McCrary v. Elations Co. LLC*, does not reject the argument

4   that "restitution models are unreliable because they fail to account for individualized differences in

5   decision-making among class members." Opp. 12. Rather, that Court declined to exclude an expert's

6   restitution opinion because the expert's opinion that putative class members had relied on false

7   advertising to make a purchasing decision was supported by survey evidence. *See McCrary v.*

8   *Elations Co., LLC*, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014) (points to survey evidence

9   supporting that more than 75% of the putative class relied on the alleged false advertising in making

10  a purchasing decision); *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *10 (C.D. Cal. Dec.

11  2, 2014) (expert opinion not excluded for individual differences of class members where survey

12  evidence indicated 75% of the class relied on the advertising statements at issue). Here, however,

13  Mr. Lasinski has *no* survey evidence, or any other evidence, to support his opinion that

14  individualized user preferences and the benefits derived from data collection can be ignored.[8]

15        Google cites a plethora of surveys revealing high percentages of users who prefer

16  personalization over privacy of their data. These surveys do *not* exclude PBM. Plaintiffs fail to

17  explain why these surveys are insufficient to indicate the preferences of at least some PBM users,

18  especially those who "expect that companies that provide analytics and advertising services to

19  websites visited… receive data" from their PBM session. Amir Rep. ¶ 5. This is easily distinguished

20  from *In re Toy Asbestos*, 2021 WL 1167638, at *5 (N.D. Cal. Mar. 26, 2021), where the court

21  allowed Plaintiffs' expert to opine regarding causation where Plaintiffs' expert had evidence that a

22  product caused mesothelioma and defendants had evidence that the product did not. In this case,

---

23

24

25  [8]  Plaintiffs' claims that Google's extrapolation of Mr. Lasinski's damages calculation to value all data from proposed class members is "bad math" or "illogical" is invalid. Opp. 13. Mr. Lasinski opined that $3 dollars per user, per device is the amount "necessary to incentivize an individual to knowingly relinquish the choice to keep certain browsing private and allow an organization to track *all* online activity." Lasinski Rep. ¶ 183; Lasinski Dep., 101:13-25, 106:15-107:5, 215:4-11. Google

26

27  simply applied Mr. Lasinski's logic: Mr. Lasinski found that the value of data collected from ██████ of the traffic is ██████, so Google divided the ██████ by ██████ to get the

28  value of the data to all traffic. The fact that an annualized calculation leads to a different amount does not rebut the fundamental deficiencies in Mr. Lasinski's methodology.

1  Mr. Lasinski has not even considered whether personalization in PBM provides a benefit to some
2  class members, while ignoring Google's evidence that it does. These errors undermine the reliability
3  of Mr. Lasinski's restitution opinion.

4    **C.    Mr. Lasinski's Unjust Enrichment Model Is Flawed**

5        **1.    Mr. Lasinski's Opinion on Costs Should be Excluded**

6        Mr. Lasinski's opinion that his unjust enrichment damages calculation should not have to
7  account for any of Google's costs, Lasinski Dep. 162:2-12, is contrary to the law, warranting
8  exclusion. Irrespective of which party has the burden to establish costs, the case law is clear that
9  "[d]isgorgement is a remedy in which a court orders a wrongdoer to turn over all *profits* obtained
10 by violating the law." *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016)
11 (emphasis added); *see also Cisco Systems, Inc. v. Advanced Digital Solutions International, Inc.*,
12 No. 4:18-CV-07602-YGR, 2021 WL 3129590, at *3 (N.D. Cal. July 23, 2021) (Gonzalez Rogers,
13 J.) (disgorgement is "limited to whatever enrichment ADSI individually received in the form of
14 *profits* from the sale of counterfeit Cisco products") (emphasis added). Since "profits" are defined
15 as "total revenue minus cost," Black's Law Dictionary (2d Ed. ), Mr. Lasinki's opinion that costs
16 should *not* be deducted from his calculation of unjust profits negates the reliability of his opinion.
17 And Plaintiffs' Opposition offers no contrary authority to support his untenable opinion.

18       Plaintiffs' fallback argument that Google has *no* costs that can be deducted from Mr.
19 Lasinki's unjust enrichment revenue is meritless. Plaintiffs' claim, Opp. 14-15, that the
20 ████████████████████ "does not identify any costs" because it was designed to quantify a "net
21 loss" to Google makes no sense. Opp. 15. The ██████ does not refer to "net loss" or "profit," and
22 states multiple times that it is quantifying *revenue* losses (*See, e.g.,* GOOG-CABR-0432934–944 at
23 938). Mr. Lasinski agreed with this assessment in his report (Lasinski Rep., ¶ 34), and Plaintiffs
24 admitted to the ██████ emphasis in their questioning of Dr. Strombom during his deposition.
25 Trebicka Decl. Ex. 9, Strombom Dep. 113:2-5.

26       Plaintiffs' claim that Mr. Hochman's testimony supports Mr. Lasinski's opinion, Opp. 15, is
27 similarly invalid. Mr. Hochman's testimony merely purports to establish that *certain* costs did not
28 increase as a result of the alleged misconduct; that does not mean that *no* costs should be deducted

1  from Mr. Lasinski's calculation of unjust enrichment revenue. Nor does the testimony of Google's

2  Rule 30(b)(6) witness Sonal Singhal, which both Mr. Lasinski and Plaintiffs take out of context,

3  Opp. 15, provide support for this opinion. Ms. Signal refers *only to the Chrome P&L*, and costs

4  related to Chrome (for example, maintenance costs, R&D, marketing campaigns, *see* Dkt. 700-8,

5  Singhal Dep.), which are less than ███████ of Google's total costs. Moreover, Ms. Singhal

6  testified that questions about costs are "outside of [her] area of expertise." Dkt. 700-8, Singhal Dep.,

7  23:25-24:9.[9]  Mr. Lasinski's failure to deduct costs thus renders his opinion unreliable.

8              **2.      The Entirety of Mr. Lasinski's Unjust Enrichment Opinion Is**

9                       **Speculative**

10             Plaintiffs claim that "[a]ny meaningful measure of profits Google would not have expected

11 to lose by virtue of a subset of users 'opting in' to third-party cookie blocking would, by definition,

12 already be excluded from Google's analysis" is plainly false. (Plaintiffs' Response, p. 16.)  The ███

13 ███ *explicitly* states that it assumes no user is opting out of third-party cookies (GOOG-CABR-

14 0432934–944 at 934). Moreover, the document Plaintiffs tout which purportedly demonstrates that

15 '███ of … Incognito users have not opted in," Opp. 16, is dated July 15, 2020, the month after

16 ██████████ was implemented. Plaintiffs point to nothing that indicates the numbers of opt outs

17 since then. [10]

18            **D.      Mr. Lasinski's Apportionment Methods Should be Stricken**

19             Plaintiffs are so acutely aware of their failure to provide a sufficient damages allocation

20 methodology that they attempt to convince the Court that Google "lacks standing to complain about

21

22

---

23 [9]  Plaintiffs' claim that Ms. Singhal's deposition testimony contradicts the "notion that there are
   incremental costs" is erroneous. Opp. 15. Dr. Strombom demonstrates that incremental costs exist
24 and should be excluded to arrive at an unjust enrichment number. Strombom Rep. ¶¶ 72, 76–80. Dr.
   Strombom identified many components of Google's costs that may increase with the allegedly
25 unjust revenue. *Id.* He cited evidence of Google accounting for such costs in a document where
   Google intended to account for the effect of the loss of third-party cookies on *profits*. *Id.* ¶ 81. Then,
26 he used a widely accepted scientific method in economics to quantify the increase in Google's costs
   associated with the allegedly unjust revenue. *Id.* ¶ 85.

27 [10]  Plaintiffs' accusation that Mr. Levitte's declaration is discovery gamesmanship (Opp. 17), is
   sheer fiction. Plaintiffs deposed Mr. Levitte in March of 2022, more than a month before Mr.
28 Lasinski submitted his report, and had ample opportunity to ask questions about the very facts
   contained in his declaration. Any failure to do so rests with the Plaintiffs.

1    apportionment" and that the black-letter requirement of Rule 23(b)(3) and authority interpreting it

2    does not apply to Plaintiffs. That is meritless.

3        Plaintiffs bear the burden of proving by a preponderance of the evidence, at the class

4    certification stage, that there is "a method, common across the class, for arriving at individual

5    damages," *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *16. The Ninth Circuit affirmed

6    that recently in *Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 662 (9th Cir. 2022), which

7    addresses both uninjured class members *and* damages calculations: "even if the class members

8    needed to prove only that they were misclassified as independent contractors to establish [] liability

9    by common evidence, class certification would still be improper under Rule 23(b)(3) for yet another

10   reason—*the class members' failure to show that damages are capable of measurement on a*

11   *classwide basis.*" *Id.* at 662 (quotation marks omitted)(emphasis added). The court then recognized,

12   as "an independent basis for reversing the class certification," plaintiffs' failure to present "a method

13   of calculating damages that is not excessively difficult." *Id.* at 663.

14       Unsurprisingly, none of the cases Plaintiffs cite, Opp. 18, stand for the proposition that they

15   need not propose a method for apportioning damages to satisfy Rule 23's class certification

16   requirements. *Story Parchment Co. v. Paterson Parchment Paper Company*, 282 U.S. 555, 562-63

17   (1931) is a century old antitrust case that does not even involve a class action, yet Plaintiffs

18   improperly use it to re-define their burden at the class certification stage. *Ruiz Torres v. Mercer*

19   *Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) is explicitly limited to the context of "wage-and-

20   hour disputes," where damages per individual class member can easily and mechanically be

21   determined. Similarly, in *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306

22   (9th Cir. 1990), the court merely dealt with the disbursement of funds from statutory damages that

23   were unclaimed by the class. These cases have limited utility to a putative class of millions of PBM

24   users. Nor does *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014) help Plaintiffs.

25   Defendants' rejected Seventh Amendment challenge there was not based on the plaintiffs' allocation

26   model (which the district court scrutinized—and allowed) but rather on the pro-rata changes to the

27   final numbers from the jury. Plaintiffs also misconstrue Google's criticism as requiring Mr. Lasinski

28   to measure damages with "exactness and precision." Opp. 24. Mr. Lasinksi's opinion should be

excluded because it fails to satisfy the judicially-imposed requirement to fairly compensate class members, without substantially over- or under-compensating anyone. For example, in *Campbell v. Facebook*, the court declined to certify a Rule 23(b)(3) class where the unjust enrichment damages model did not "calculate the profit attributable to each individual interception." 315 F.R.D. 250, 268 (N.D. Cal. 2016). In *Opperman v. Path*, 2016 WL 3844326 at *14–15, the court rejected a damages model that was likely to "overcompensate some class members, while undercompensating others." And in *Maison D Artiste v. Am. Int'l Grp., Inc.*, 2020 WL 5498061, at *4 (C.D. Cal. Aug. 3, 2020), the court denied class certification where "Plaintiff's proposed damages model . . . would substantially overcompensate an (at this point unknown) number of members of the class out of proportion to the harm they have allegedly suffered"). Mr. Lasinksi's model falls far short of this standard.

*UMPBI Method.* Plaintiffs do not contest that this method fails to take into consideration variation in the amount and type of data Google receives from each class member, which directly impact the amount of harm users incur. *See* Mot. 23. As Google's Motion demonstrated, users' widely-varying frequency of use of PBM and their use of a plethora of settings and controls to limit the transmission of data mean that each user suffered varying degrees of harm that Mr. Lasinksi's UMPBI method has no way of parsing.[11]

*Class Member Method.* The proposal to provide each class member the same amount of damages suffers from the flaws identified with the UMPBI method because there would be even more variation of harm among users left unaddressed. As an illustration, under this method, a user who only used PBM mode once for five minutes during the Class Period would receive the same amount of damages as a user who used it consistently throughout the Class Period, despite the fact that the latter user would have suffered more harm according to Plaintiffs' allegations. Equalizing these variances to one single number would be inequitable.

---

[11] Plaintiffs claim that Mr. Lasinski proposes distributing damages using UMPBI data "in precisely the same way Google internally tracks this information." Opp. 21. Yet, they do not explain what "this information" refers to and only cite to the two paragraphs in Mr. Lasinski's report that describe his allocation methodology and contain no reference to Google's internal practices. *Id.* Indeed, even if Plaintiffs could point to such support, the fact that Google uses certain metrics for certain purposes does not make those same metrics any more likely to meet the rigorous standard of Rule 23.

1    *Self-Attestation for Damages Allocation.*[12]  Both of Mr. Lasinski's apportionment

2    methodologies rely on self-attestation by class members. Mr. Lasinski has not even attempted to

3    calculate the UMPBI per class member; rather, he merely assumes that each class member can attest

4    to the number of months during the Class Period that they used one or more devices in PBM and

5    through which browser (Lasinski Dep. 140:21-141:4), even though Mr. Lasinski cannot determine

6    how long he has been using Chrome and Safari or how often he has used Chrome's Incognito or

7    Safari's private browsing mode (Lasinski Dep. 11:14-16, 12:18-23, 15:5-22).[13] Plaintiffs also claim

8    that class member "verification" is a problem of Google's own making because it "hid the existence

9    of Incognito-detection bits." Opp. 23.[14] The Magistrate Judge already adjudicated this issue and

10   preserved Google's right to show the unreliability of the Incognito-detection bits.  Dkt. 588 at 7..[15]

11   Moreover, Plaintiffs offer no evidence that any of the data they claim they are missing would cure

12   their damages model. The cases they cite to support self-attestation each deal with identification of

13   absent class members and the implication to defendants' due process rights, not the apportioning

14   of damages.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017);  *Meyer v.*

15   *Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2017 WL 558017, at *3 (N.D. Cal. Feb. 10, 2017).

16

---

17   [12]  Plaintiffs surreptitiously add arguments regarding their notice and class identification process.
     Opp. 20. Yet, they fail to tie these to any of Google's arguments in the Motion.

18
19   [13]  Plaintiffs' claim that the Court's May 20, 2022 preservation order precludes Google from
     challenging the "self-attestation" step of Mr. Lasinski's methodology is wrong. Opp. 24 (citing Dkt.

20   587 at 7). That order only held that "Google may not use the fact that only *sampled* data, not
     *complete* data, is available to challenge class certification generally or attestations by individuals

21   that they are members of the class." Dkt. 587 at 7. Google has not made such a challenge but instead
     argues that self-attestation is unreliable.  *See In re Hulu Priv. Litig.*, 2014 WL 2758598, at *16-23

22   (N.D. Cal. June 17, 2014) (rejecting use of self-reporting because "prone to subjective memory
     problems" and damages amount would "create incentives for claimants.").

23   [14]  Plaintiffs claim Mr. Hochman has determined from testing that Plaintiffs could accurately
     identify Incognito traffic and class members if they had complete data. Opp. 23. This is wrong, as

24   Google's expert Mr. Psounis demonstrated. Mr. Hochman's proposed method cannot reliably
     identify Incognito web traffic because the "maybe chrome incognito" bit relies on the absence of

25   the X-Client-Data header, which may be absent for any number of reasons that have nothing to do
     with whether the browser was in Incognito mode. Dkt. 659-10, Report of Konstantinos Psounis,

26   Ph.D at § III.H.

27   [15]  The cases Plaintiffs cite to assert that Google cannot challenge their damages methodology due
     to Plaintiffs' empty claims of misconduct are of no avail. Neither the nine-decades old *Story*

28   *Parchment Co.*, 282 U.S. at 563 (1931) or the fourteen-year-old *Tunica Web Advert., Inc. v. Barden*
     *Mississippi Gaming, LLC*, 2008 WL 3833225, at *2 (N.D. Miss. Aug. 14, 2008) involve class
     actions or the discovery misconduct Plaintiffs claim here.

Plaintiffs seek to mask the deficiencies in Mr. Lasinksi's apportionment method by offering several untenable arguments:

*First,* Plaintiffs claim that Mr. Lasinski's "top down aggregate models are based on data Google utilized" and therefore that somehow excuses them of the burden to provide an apportionment method. Opp. 22. This does not address the additional failures of his apportionment methods. Mot. 21-24.

*Second,* with respect to the restitution model, Plaintiffs erroneously claim that because Google pays Screenwise Participants $3 per user, per month regardless of how much they browsed, Mr. Lasinski need not account for such variation in his damages model. Opp. 22. But, as Dr. Strombom demonstrated, the purpose of the Screenwise panel is different. While the At-issue Data is an input into Google's regular business operations, Screenwise is akin to a focus group designed to help Google develop its products by providing a data sample representative of all internet users. Dkt. 659-12, Strombom Rep., ¶ 139.

*Third,* with respect to the unjust enrichment model, Plaintiffs cite the Levitte Declaration which confirms that "Google does not calculate advertising profits on a per-individual-user basis" (Levitte Decl. ¶ 7), and protest that Google faults Mr. Lasinski for failing to do the "impossible." Opp. 22. Plaintiffs appear to concede that they cannot show, as they must under Rule 23(b)(3), that "*there is a method,* common across the class, for arriving at individual damages," *In re Apple iPhone Antitrust Litig.,* 2022 WL 1284104, at *16.

*Fourth,* Plaintiffs claim that their expert Mr. Hochman confirms there is no combination of settings that can stop Google from tracking a user in Incognito mode. Google disagrees  (*See Dr. Zervas Report,* Dkt. 659-13 at ¶ 99-105; 124-147). In any case, the point is that the various user settings and controls *limit* the amount and type of data Google receives such that class members who employed all such settings would have transmitted different types and fewer amounts of data than a class member who used only some settings or no settings at all.

Finally, Plaintiffs claim that Google has not provided any evidence that anything more than a "*de minimus* number of users employ such settings when in private browsing mode." Opp. 3 (citing *Olean Wholesale Grocery Coop*., 31 F.4th at 669). This is not the correct inquiry. *Olean* confirms

1   that a court must engage in "rigorous analysis" to determine "whether the common question

2   predominates over any individual questions, including individualized questions about injury or

3   entitlement to damages." 31 F.4th at 669. Because Mr. Lasinski has not proposed an apportionment

4   method that can determine each class member's entitlement to damages, he fails that standard.

5   ### E.     Mr. Lasinski's Opinion Regarding Statutory Damages Should Be Excluded

6   Each of Mr. Lasinski's statutory damages bases improperly inflates the amount of statutory

7   damages to which Plaintiffs would be entitled. Mot. 24-25. Plaintiffs claim this overcounting

8   amounts to "theoretical possibilities," Opp. 25, but that is not so. For example, there is no question

9   that putative class members use PBM for different lengths of time and at different intervals. Yet Mr.

10  Lasinski's "bases" incorporate no methodology to apportion these statutory damages for different

11  users, even if one class member used PBM for 100 hours in one month, and the other only used

12  PBM for one minute.  Mot. 22, 25.[16]

13  Plaintiffs claim that Mr. Lasinski addresses this issue in his report, but he merely states:

14  "further allocations for Class members in California could be performed based on publicly available

15  data such as the population of California as a percentage of the total U.S. population."  Lasinski

16  Rep. ¶ 197. However, Mr. Lasinski presents no support or evidence showing that the percentage of

17  the population of California is a reasonable proxy for the number of Incognito users.  And his

18  inability to limit statutory damages for the CIPA claim to California residents presents an additional

19  basis to exclude his unreliable opinion.

20  ## III.    CONCLUSION

21  The Court should grant Google's Motion and exclude Mr. Lasinski's opinions in their

22  entirety.

23  DATED:  August 26, 2022            QUINN EMANUEL URQUHART & SULLIVAN, LLP

24

25                          By_____*/s/ Andrew H. Schapiro*_____

26                            Andrew H. Schapiro (admitted *pro hac vice*)

---

27  [16]  Plaintiffs' cases are beside the point because they state that concerns regarding the amount of statutory damages can be assessed at a later stage. *See Patel v. Facebook*, 932 F.3d 1264, 1276 (9th

28  Cir. 2019) (class certification motion not defeated by large request for statutory damages); *Zaklit v. Nationstar Mortg.*, 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017) (same).

andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Marie Hayrapetian (CA Bar No. 315797)
mariehayrapetian@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

01980-00174/13579033 1