# EXHIBIT A

To the Mao Declaration ISO Plaintiffs' Administrative Motion re: Google's Production of Documents Improperly Withheld as Privileged

REDACTED DOCUMENT SOUGHT TO BE SEALED

## Mao Declaration Exhibit A Summary Chart

## Documents Google Produced Pursuant to this Court's June 10, 2022 Order (Dkt. 605)

| Ex. No. | Bates | Description | Author | Relevance |
|---|---|---|---|---|
| 1 | GOOG-BRWN-00857647 | June 2008 email thread that included Google employee Brian Rakowski (whom Plaintiffs deposed without this document) where Google employee (Anders Sandholm) explains that he has "attached a screen-shot of the incognito mode which shows a notably different frame and *explains in words what the mode is all about*" (*id.* at -47) (emphasis added) – but without attaching that screen. | Anders Sandholm | In its Answer, Google asserts that the contractual documents "disclose[] that Google receives the information at issue." Dkt. 531 at 31. Plaintiffs seek to understand what screens Google considered before launching Incognito. |
| 2 | GOOG-BRWN-00855317 | In September 2015, Google employee Eric Hollingsworth proposed to "*use IP addresses as another proxy for individual users*" for purposes of an internal Google project. *Id.* at -17 (emphasis added). | Eric Hollingsworth | This document supports Plaintiffs' claims and also undermines Google's assertion in a September 2021 submission to the Special Master that "Google does not use IP address as an identifier and IP addresses are not a reliable means to identify individual users." Dkt. 303-5 at 1. |
| 3 | GOOG-CABR-05949445 | January 2019 email where Google employee Emil Ochotta admits that "*users don't understand 3rd party cookies, data brokers, [real time bidding] and all the other complex data flows*" and refers to a "cross-Google initiative to understand and *improve incognito modes*." *Id.* at -44 (emphases added). | Emil Ochotta | This document supports Plaintiffs' claims and undermines Google's consent defense, where Google's experts seek to present Plaintiffs and class members as people who would understand Google's collection of private browsing information. Ex. 16 at 3-4 (Amir Report); Ex. 17 at 25 (Strombom Report). |

1

| Ex. No. | Bates | Description | Author | Relevance |
|---|---|---|---|---|
| 4 | GOOG-BRWN-00856066 | August 2019 Google Privacy Working Group slide deck stresses that "Data minimization is key," noting "*Can't leak data if you don't have data*." *Id.* at -89-90 (emphasis added). | Unclear | Google expert Paul Schwartz purports to disregard as irrelevant whether Google can "identify an individual using non-Google Account linked data through 'fingerprinting.'" Ex. 18 (Schwartz Report) at 33-34. |
| 5 | GOOG-BRWN-00856578 | December 2020 Google presentation includes a slide describing "the 99%" of Google users as "consumers" who have "*essentially no understanding of the ads universe.*" *Id.* at -605 (emphasis added). | Unclear | This document supports Plaintiffs' claims and undermines Google's consent defense, where Google's experts seek to present Plaintiffs and class members as people who would understand Google's ads universe, including Google's collection of private browsing information. Ex. 16 at 3-4 (Amir Report); Ex. 17 at 25 (Strombom Report). |
| 6 | GOOG-BRWN-00857642 | October 2021 internal Google email exchange with heavy redactions where Google employee Bert Leung (deposed without this document) asks for clarification on why Google employees may no longer use the X-Client Data Header for projects, noting the header is "*a good proxy signal for Incognito.*" *Id.* at -45 (emphasis added). | Bert Leung | Mr. Leung stated in an affidavit attached to Google's opposition to the sanctions motion that using the X-Client Data Header ███████ Dkt. 528-5 ¶ 7 (emphasis added). |

| Ex. No. | Bates | Description | Author | Relevance |
|---|---|---|---|---|
| 7 | GOOG-CABR-05949225 | A Google employee seemingly spearheading press-related communications following the filing of this lawsuit reveals that even ***she is unaware that Google stores private browsing information***, suggesting that "Google Analytics data [] is not shared with Google." *Id.* at -26. Google employee AbelKarim Mardini (whom Plaintiffs deposed last year without this information), offered to help Ms. Keough with her efforts, and she responds to him in an email that is redacted. | Victoria Keough | This document supports Plaintiffs' claims and undermines Google's defenses, demonstrating that even Google's own employees were unaware of Google's collection of private browsing information. Google's damages rebuttal expert Bruce Strombom asserts that a material number of users were aware of "Google's data collection practices." Ex. 17 at 21-22 (Strombom Report). |

3

**Documents Google Produced Pursuant to this Court's April 15, 2022 Order (Dkt. 542)**

| | | | | |
|---|---|---|---|---|
| 8 | GOOG-BRWN-00084778 | March 2010 email discussing fingerprinting, where one Google employee remarked "I can *profile you with your installed plugins, font list, . . . etc. Not to mention your IP*" and asking whether Google was trying to "offer an anonymous browsing mode (for real)." *Id.* at -79. | Ian Fette | This email supports Plaintiffs' claims and undermines Google's defenses, including by recognizing that profiling is possible based on IP addresses. In a September 2021 submission to the Special Master, Google represented that "IP addresses are not a reliable means to identify individual users." Dkt. 303-5 at 1. |
| 9 | GOOG-CABR-05886497 | September 2016 document (near the start of the class period) expresses concern that users will "think*[] that Incognito connections in Chrome are somehow private from Google*" and notes this "is *not the first time Incognito has led to confusion*." *Id.* at -98 (emphasis added). | Unknown | This supports Plaintiffs' claims and undermines Google's defenses, demonstrating Google's awareness that users thought Incognito browsing was "private from Google." Google's technical expert Georgios Zervas ignores this, arguing that private browsing modes "work as described in public documentation" because they "ensure that other people who use the same device won't see the user's activity." Ex. 19 (Zervas Report) at 1-2. |
| 10 | GOOG-BRWN-00084723 | January 2019 internal Google presentation summarized the results of a Google User Experience Research project that assessed whether "*users really understand what they're consenting to when they consent to share browsing history or other behaviour data*." *Id.* at -24 (emphasis added). Google's "conclusion" was "No." *Id.* at -26. | Alex Nicolao | This document supports Plaintiffs' claims and undermines Google's defenses, demonstrating Google's awareness that its disclosures are poor. |

4

| | | | | | |
|---|---|---|---|---|---|
| | 11 | GOOG-CABR-04780837.R | In February 2020, Google engineer Sammit Adhya (whom Plaintiffs deposed last year, without this withheld information) commented on a document titled "The Incognito Story" that *"we would never sa[y] that Google doesn't know who you are while you're Incognito."* Id. at -40.R (emphasis added). Google previously produced a version of this document where the language quoted here was cutoff, and only visible within the document's metadata. By contrast, the version produced on April 29, 2022, contained this quote in the document itself. In this version of the document, Google had previously redacted the above quote as privileged. | Sammit Adhya | This undermines Google's repeated assertions (including to the Court) that Google doesn't know who you are while you're in Incognito. For example, in an April 21, 2021 joint letter brief, Google told the Court that "logged-out private browsing activity of users is neither linked nor reasonably linkable to specific users." Dkt. 140 at 5. |
| | 12 | GOOG-CABR-05888096 | October 2020 internal Google presentation titled "IP Address: Updates" describes the need to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Id. at -104 (emphases added). | Unknown | In a September 2021 submission to the Special Master, Google represented that "IP addresses are not a reliable means to identify individual users." Dkt. 303-5 at 1. |
| | 13 | GOOG-BRWN-00853326 | In a July 2021 email, a Google employee admitted that "Someone with logs access *could theoretically join signed-in logs to the user's incognito logs based on the device-tier IDs* with the right query." Id. at -29 (emphasis added). | Diana Valverde-Paniagua | This undermines Google's repeated assertions (including to the Court) that Google cannot join signed-in and Incognito logs. For example, in an April 21, 2021 joint letter brief, Google told the Court that "logged-out private browsing activity of users is neither linked nor reasonably linkable to specific users." Dkt. 140 at 5. |

| | | | | |
|---|---|---|---|---|
| 14 | GOOG-CABR-05894563 | August 2021 internal Google document from the custodial files of Michael Kleber (whom Plaintiffs deposed in January without this information): Google employees admit that "***users expect that their browsing history across sites is kept private: known only to them, and their web browser***." *Id.* at -64 (emphasis added). | Unclear | This supports Plaintiffs' claims and undermines Google's defenses, demonstrating Google's awareness that users thought their browsing history was "kept private." Google's damages rebuttal expert Bruce Strombom asserts that a material number of users were aware of "Google's data collection practices." Ex. 17 at 21-22 (Strombom Report) |
| 15 | GOOG-BRWN-00850441 | Assessing a Google disclosure that promises "more control over the data Google collects," a Google employee in April 2016 commented that "this may be fine if it's a broad reference to Google's data collection policies but it's ***not fine if it suggests to the user the ability to control the types of data collected***." *Id*. at -41 (emphasis added). The Google employee thus anticipated how users would interpret Google's promise of "control," which is at issue in this case. | Unknown | This document supports Plaintiffs' claim and undermines Google's defenses, with respect to Google's promise of control. In its Answer, unable to dispute its promise of control, Google asserts that the contractual documents "disclose[] that Google receives the information at issue." Dkt. 531 at 31. |