# TRANSCRIPT OF 8/4/2022 SEALED PROCEEDINGS

# Redacted Version of Document Sought to be Sealed

Pages 1 - 108

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan van Keulen, Magistrate Judge

CHASOM BROWN, et al.,               )
                                    )
            Plaintiffs,             )
                                    )
  VS.                               )   NO. C 20-03664 YGR (SVK)
                                    )       SEALED PROCEEDINGS
GOOGLE, LLC,                        )
                                    )
            Defendant.              )
_____ )

PATRICK CALHOUN, et al.,            )
                                    )
            Plaintiffs,             )
                                    )
  VS.                               )   NO. C 20-05146 YGR (SVK)
                                    )       SEALED PROCEEDINGS
GOOGLE, LLC,                        )
                                    )
            Defendant.              )
_____ )

San Jose, California
Thursday, August 4, 2022

**TRANSCRIPT OF SEALED VIDEOCONFERENCE PROCEEDINGS OF THE
OFFICIAL ELECTRONIC SOUND RECORDING 9:02 - 12:34 p.m.**

**APPEARANCES**:  (via videoconference)

For Plaintiffs in 20-CV-03664:

                    BOIES, SCHILLER & FLEXNER LLP
                    44 Montgomery Street - 41st Floor
                    San Francisco, California  94104
              BY:  **MARK C. MAO, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Transcribed By:     Marla F. Knox, RPR, CRR, RMR
                    United States Official Court Reporter

```
 1   APPEARANCES:   (via videoconference, continued)

 2   For Plaintiffs in 20-CV-03664:

 3                         MORGAN & MORGAN
                           201 North Franklin Street - 7th Floor
 4                         Tampa, Florida  33602
                     BY:  JOHN A. YANCHUNIS, ATTORNEY AT LAW
 5                         RYAN J. McGEE, ATTORNEY AT LAW

 6                         SUSMAN GODFREY LLP
                           1301 Avenue of the Americas - 32nd Floor
 7                         New York, New York  10019
                     BY:  ALEXANDER P. FRAWLEY, ATTORNEY AT LAW
 8
     Also Present:        Christopher Thompson, Consultant
 9

10   For Plaintiffs in 20-CV-05146:

11                         DiCELLO LEVITT GUTZLER
                           60 East 42nd Street - Suite 2400
12                         New York, New York  10165
                     BY:  DAVID A. STRAITE, ATTORNEY AT LAW
13                         CORBAN S. RHODES, ATTORNEY AT LAW

14                         SIMMONS HANLY CONROY
                           231 South Bemiston AAvenue - Suite 525
15                         St. Louis, Missouri  63105
                     BY:  JAY BARNES, ATTORNEY AT LAW
16
                           SIMMONS HANLY CONROY
17                         One Court Street
                           Alton, Illinois  62002
18                   BY:  JENNIFER M. PAULSON, ATTORNEY AT LAW

19                         BLEICHMAR FONTI & AULD LLP
                           555 12th Street - Suite 1600
20                         Oakland, California  94607
                     BY:  LESLEY E. WEAVER, ATTORNEY AT LAW
21                         ANGELICA M. ORNELAS, ATTORNEY AT LAW

22   For Defendant:
                           QUINN EMANUEL URQUHART & SULLIVAN, LLP
23                         191 North Wacker Drive - Suite 2700
                           Chicago, Illinois  60606
24                   BY:  ANDREW H. SCHAPIRO, ATTORNEY AT LAW

25         (APPEARANCES CONTINUED ON THE FOLLOWING PAGE)
```

```
 1   APPEARANCES:   (via videoconference, continued)

 2   For Defendant:
                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
 3                        865 S. Figueroa Street - 10th Floor
                          Los Angeles, California  90017
 4                BY:  STEPHEN A. BROOME, ATTORNEY AT LAW
                       VIOLA TREBICKA, ATTORNEY AT LAW
 5
                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
 6                        1300 I. Street, N.W. - Suite 900
                          Washington, D.C.  20005
 7                BY:  JOSEF ANSORGE, ATTORNEY AT LAW

 8                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
                          51 Madison Avenue - 22nd Floor
 9                        New York, New York  10010
                  BY:  JOMAIRE A. CRAWFORD, ATTORNEY AT LAW
10
                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
11                        711 Louisiana Street - Suite 500
                          Houston, Texas  77002
12                BY:  BRETT WATKINS, ATTORNEY AT LAW

13   Also Present as Defendant Representatives:

14                        Nora Puckett
                          Patrick Quaid
15                        Ben Kornacki
                          Glenn Berntson
16                        Toni Baker

17   Also Present:        Douglas Brush, Special Master
                          Timothy Schmidt
18

19

20

21

22

23

24

25
```

1    **Thursday - August 4, 2022**                    **9:02 a.m.**

2                    S E A L E D   P R O C E E D I N G S

3                              ---oOo---

4         THE CLERK:  Please come to order.  The Honorable Susan

5    van Keulen presiding.

6                        (Pause in proceedings.)

7         THE COURT:  Good morning, everyone.  Good morning.

8    All right.  We have a house full today.

9         And, Ms. Fanthorpe, can you close the hearing?

10        THE CLERK:  It is a meeting.  No one can join unless I

11   admit them.

12        THE COURT:  All right.  Thank you.

13        All right.  Why don't you go ahead and call the matter.

14   As I am going to call them together, so I will first take the

15   Brown Plaintiffs' appearances.  Then Google's appearance.  Then

16   the Calhoun Plaintiffs.  And then if there are any changes to

17   the Google appearances for the Calhoun matter, we can address

18   that at that time.

19        Ms. Fanthorpe, please.

20        THE CLERK:  Calling sealed matter 20-CV-3664, Brown,

21   et al. versus Google, LLC, et al. and sealed matter 20-CV-5146,

22   Calhoun, et al. versus Google, LLC.

23        Counsel, please make your appearances as instructed by the

24   Court.

25        **MR. MAO:**  Good morning, this is Mark Mao, for the

1   Plaintiffs.  Also here at the hearing, Your Honor, is Ryan

2   McGee and Mr. John Yanchunis, who are attorneys as record as

3   well.

4         And then we also have Alex Frawley, who will be watching,

5   and then Mr. Christopher Thompson, who, as you recall, was our

6   technical consultant during one of the prior hearings in front

7   of you.  Thank you very much.  Good morning.

8         **THE COURT:**  Thank you.  Good morning.  And for Google

9   today.

10        **MR. SCHAPIRO:**  Andrew Schapiro, Your Honor.  As

11  Your Honor may recall, I said that I wasn't going to be able to

12  attend this hearing and the one in -- happening next week

13  because I had a trial in Tampa but it settled on Tuesday.

14        **THE COURT:**  That has a way of happening.  Welcome

15  back.

16        **MR. SCHAPIRO:**  Has a way of happening, sometimes.  But

17  I am not going to be running point on this today.

18        My colleague, Ms. Trebicka, who is here is going to be

19  handling most of the hearing today.

20        We are also joined by Josef Ansorge again and by Stephen

21  Broome.

22        My colleague Brett Watkins is here.  I believe Jomaire

23  Crawford is joining us, and then we have several witnesses from

24  Google as well as requested by Your Honor.

25        My colleagues will tell me if I have overlooked anyone.

1          THE COURT:  All right.  Why don't you go ahead and

2     introduce our representatives from Google today, please.

3          MR. SCHAPIRO:  Sure, Ms. Trebicka, would you like to

4     do that?

5          MS. TREBICKA:  Absolutely.  Your Honor, we have

6     Dr. Glenn Berntson, who is the engineering director for Google

7     Ad Manager.

8          THE COURT:  Good morning.

9          MS. TREBICKA:  Dr. Berntson -- perhaps each of you as

10    I say your name can say hello so the Judge can put a name to

11    the face.

12          MR. BERNTSON:  Hi, I'm Glenn.

13          THE COURT:  Good morning, Mr. Berntson, thank you for

14    being here.

15          MS. TREBICKA:  We have Mr. Patrick Quaid who is here

16    to represent ▮▮▮▮▮▮▮      He is a technical lead for ▮▮▮▮▮▮▮

17          THE COURT:  Excellent, Mr. Quaid, good morning.

18          MR. QUAID:  Good morning.

19          MS. TREBICKA:  We have Mr. Benjamin Kornacki, who is a

20    software engineer for Google Ad Manager as well.

21          THE COURT:  Thank you.

22          MR. KORNACKI:  Good morning.

23          THE COURT:  Mr. Kornacki, good morning.

24          MS. TREBICKA:  We also have Ms. Nora Puckett, who is a

25    Director of Legal for Google and a client representative.

 1            THE COURT:  Ms. Puckett, good morning.

 2            MS. PUCKETT:  Good morning.

 3            MS. TREBICKA:  And Ms. Toni Baker who is a discovery

 4    attorney -- a senior discovery attorney with Google, also as a

 5    client representative.

 6            MS. BAKER:  Good morning.

 7            THE COURT:  Good morning, Ms. Baker.  Good morning.

 8    I'm sorry.  What is Mr. Berntson's area at Google?

 9            MS. TREBICKA:  Mr. Berntson, Google Ad Manager --

10    Dr. Berntson, if you would like to more specifically say it

11    yourself, please do.

12            MR. BERNTSON:  Sure.  I oversee a significant part of

13    the engineering teams that support Google Ad Manager.

14            THE COURT:  Excellent.  Thank you, Dr. Berntson.

15        All right.  I appreciate everyone being here.  Coming to

16    the Calhoun Plaintiffs in just a moment, but I do appreciate

17    the client representatives.  I did request that in setting this

18    hearing, which was set on fairly short notice.

19        All right.  Let me get the appearances for Calhoun,

20    please.

21            MS. TREBICKA:  Good morning, Your Honor, this is David

22    Straite from DiCello Levitt Gutzler for the Calhoun Plaintiffs.

23    Also joining me is my law partner Corbin Rhodes, also from

24    DiCello Levitt Gutzler.

25        I will turn it over to Ms. Weaver.

SEALED PROCEEDINGS

1          **MS. WEAVER:**  Good morning, Your Honor, Lesley Weaver,

2     Bleichmar Fonti & Auld on behalf of Calhoun Plaintiffs.

3     Angelica Ornelas of my firm is with us as well.

4          **MR. BARNES:**  Good morning, Your Honor, Jay Barnes from

5     Simmons Hanly Conroy with Jenny Paulson from Simmons Hanly

6     Conroy as well.

7          **THE COURT:**  Good morning.  And I understand that

8     neither Ms. Truong nor Ms. Cruz will be here.  I just ask

9     because their names are on the calendar.

10          **MR. STRAITE:**  You are correctly informed, Your Honor.

11          **THE COURT:**  All right.  And are there any other Google

12     appearances unique to Calhoun or did we get everybody?

13          **MS. TREBICKA:**  There are not, Your Honor.

14          **THE COURT:**  And then we are joined today by the

15     Special Master, Mr. Brush, if you would identify yourself for

16     the record, please.

17                    (Pause in the proceedings.)

18          **MR. BRUSH:**  Sorry, I was on mute.  Thank you, Your

19     Honor, yes, Douglas Brush, Special Master on the majority

20     matters.

21          **THE COURT:**  Thank you.  And --

22          **MR. BRUSH:**  Also --

23          **THE COURT:**  Go ahead.

24          **MR. BRUSH:**  I was going to say also joined by Timothy

25     Schmidt on my team as well.  Didn't want to lose him in the

 1  boxes there.

 2          **MR. SCHMIDT:**  Good morning.

 3          **THE COURT:**  Good morning.  Mr. Brush, Mr. Schmidt,

 4  thank you for being here.

 5      All right.  Here is how we will proceed.  I have a few

 6  general comments to share.  Then we will move in the first

 7  instance to the Brown matter, but I wanted both matters called

 8  at the same time because there is area of overlap, and I want

 9  to move through this proceeding as efficiently as possible.

10      So we may move into or address certain issues that also

11  appear in Calhoun during the course of the Brown matter, but we

12  will work through the Brown issues and then more substantively

13  turn to Calhoun, which as I say, has some overlap and some

14  unique issues.

15      I would appreciate it if folks would -- if you are not

16  speaking, would turn off your video so I have got counsel who

17  have the microphone on both sides.

18      And if you are calling on a client representative or if a

19  client representative feels they have a contribution that we

20  moved into an area or I have asked a question for which that

21  would be helpful, you are welcome to turn on your video.

22  That's a good sign that you would like to speak.

23      I don't have everybody on one screen so I may not see you

24  until someone -- until someone speaks.  And obviously that goes

25  for counsel too.  Turn on your video if you would like to be

 1    heard.

 2        As I say, we are going to move through this as efficiently

 3    as possible.

 4        Again, I appreciate the Google representatives being here.

 5    It may be in the course of our discussion today that there are

 6    some technical issues that we would benefit from.

 7        I may have a direct question -- this is not discovery by

 8    either side -- to either side's representatives -- but it may

 9    be helpful and I will ask for specific input where I think it

10    would be beneficial.

11        The Special Master, Mr. Brush and Mr. Schmidt on his team

12    may have questions or an inquiry as well.  And, Mr. Brush,

13    Mr. Schmidt, as you are well aware, just turn on your camera,

14    and I -- I invite you to -- to inquire as that may be helpful

15    as we work through this.

16        I also think it's important not only for technical

17    assistance but I think it is very important for the

18    representatives from Google to hear from the Court and to have

19    some context for this proceeding, which is the Court has set

20    deadlines, deadlines for the preservation plan -- the

21    implementation of the preservation plan.

22        There have to be deadlines.  There will be deadlines.  We

23    are already past the first deadline.

24        And the Court is very well aware -- we have been steeped

25    in this case for 18 months -- we have been deemed specific --

1    well, preservation has always been an issue, but the first

2    phase of that, I think, through 2021 was identification of

3    relevant data sources and identification and developing a means

4    for extracting data from those sources.

5         And the Special Master worked tirelessly with parties

6    through that process and that -- that is -- that's necessarily

7    phase I.  And from there we turn to preserving data for the

8    rest of the litigation.

9         And we started with a base as the data sources that had

10   been identified, the relevant data sources.  And the efforts of

11   the Special Master and the parties turned in earnest to

12   preservation in early January, early January.

13        So this has been a long and involved process.  We are

14   now -- I mean, we have been at it for a full seven months, and

15   there is an order in place and implementation is going to be

16   completed in the extreme near term.

17        I set a deadline of July 30th.  There has been a request

18   for some modest extensions which we will address today.  There

19   has been a request for some removal, apparently, of deadlines

20   which is not going to happen.

21        And it's very important that everybody on this call, all

22   counsel and all client representatives, understand that

23   there -- the court order is in place and the -- what resources

24   are needed to meet these deadlines, the parties will have to --

25   have to adapt and meet the deadlines but we will -- we will

**SEALED PROCEEDINGS**

 1  work through some of the specific issues that have been

 2  presented.

 3       Again for context, the parties worked with the Special

 4  Master on developing preservation plans without a lot of

 5  cooperation, frankly.

 6       The coordinated efforts were not successful, and that's

 7  reflected in the Special Master's report and recommendations to

 8  me as well as my adoption of the Special Master's reports and

 9  recommendation on preservation as modified.

10       And there has been substantial modification to address the

11  concerns and issues raised on both sides.

12       Sampling is the sort of overarching protocol of the

13  preservation plans in both Brown and Calhoun.  Identification

14  of specific data sources, identification of relevant fields

15  within those data sources, and the use of a sampling technique

16  for data that is to be preserved, this is an alternative -- a

17  significant, significant alternative approach to wholesale

18  preservation of all relevant data sources.

19       And to be very clear, Plaintiffs have argued strenuously

20  for over 18 months to me for wholesale preservation of all

21  relevant data sources.

22       Taking those arguments under consideration and -- as well

23  as Google's arguments that addressed proportionality as well as

24  the phenomenal volumes of data and practical and essential ways

25  to manage that data for both Plaintiffs and Defendants, the

1    Court did adopt a sampling protocol.

2         Sampling was proposed by Google and it was proposed in

3    March of this year.  So it was proposed several months ago.  It

4    took a lot more time and effort to formulate what that would

5    mean.

6         The first recommendation from the Special Master on

7    sampling came out in April, and the Court adopted that -- we

8    had a hearing on that in early May.  And in Brown the Court

9    adopted that order with some very modest modifications it -- on

10   May 20th.

11        But Calhoun was also part of that process, and it was very

12   clear that modeling would be the protocol.  I made that

13   clear -- excuse me -- that sampling would be the protocol.

14        And then in Calhoun we stepped back from that first joint

15   hearing and addressed some specific Calhoun issues and modified

16   the approach such that it was not just sampling; that there

17   were certain very limited, for very limited data sources, that

18   there would be some full preservation efforts.

19        And we met and we had a hearing on those in June, and then

20   we even had a further exercise -- a further exercise -- now, I

21   have that -- we had that hearing in May.  We had a further

22   exercise, that's right, on full preservation; and then at the

23   last second hearing we had a further exercise on dealing

24   specifically with the GAIA ████████ and ZWBK ████████ databases to

25   limit the preservation issues with that to specific columns,

**SEALED PROCEEDINGS**

1   specific columns.

2        So we have been through many iterations, all of which

3   striving to balance the Plaintiffs' need for preservation of

4   relevant evidence and the practical, practical approach.

5        So the time for further argument or discussion around

6   storage space and cost, et cetera is done.  This is the

7   protocol.

8        We are sampling.  We are sampling from these data sources,

9   and we are going to do it as set out in my preservation orders,

10  in each Brown and Calhoun.

11       The only issue -- the only issue -- is bringing that

12  process -- getting -- getting to implementation.  And there may

13  be a legitimate need for some modest additional time, but we

14  are not going down the path of "Well, let us figure out how

15  hard it is going to be and then -- and then we will -- then we

16  can time to when it can be implemented."

17       That is not the path we are taking.  We are already past

18  the deadlines, and we are going to be setting deadlines for

19  implementation here today.

20       All right.  So, that is the context behind how we got to

21  sampling and why we are talking about the data sources we are

22  talking about and the timeline we are talking about.

23       All right.  With that in mind, let's turn to Brown in

24  particular, and let's -- what I have been working off of is

25  Google's first submission; that is, the first request for

**SEALED PROCEEDINGS**

 1    administrative relief, which the unredacted version is

 2    docket 641-3, because that identifies the data sources at

 3    issue, all of the data sources, excuse me, at issue.

 4         And then I also have Google's supplement submission.

 5    Again, the unredacted version before me is at docket 645-3.

 6    And that version provided a little bit more information in

 7    terms of potential deadlines as to some of the data sources

 8    from the first submission.

 9         So I'm working off the first so that we capture all the

10    data sources, but I will -- I'm obviously aware of the

11    information in the second.

12         I will not be addressing today -- I will not be addressing

13    any modification to the preservation order to include logs

14    which are the subject of the upcoming further motion for

15    discovery and misconduct by Brown.

16         I see that in the Plaintiffs' submission in response.  I

17    appreciate you want to bring that to the Court's attention, but

18    we are not there.

19         Today's proceeding is we are just making very clear and

20    setting the deadlines for implementation for the preservation

21    order currently in place in this case.  All right.

22         So, with that said, the first thing that seems to be --

23    the first thing on the list in Brown are the UMA logs and that

24    task was identified as completed.

25         The second area was the -- the second data source is the

1      ██████████████████ and Google's representation was that --

2      that would be -- design an implementation would be completed by

3      August 15th.

4            Let me just -- oh, yeah, design and implementation for

5      data sampling by August 15th, design and implementation for the

6      decryption by August 29th, and then the backfill -- another 30

7      days to backfill that with the -- from the beginning of the

8      preservation period which reaches back to July of 2016.

9            So, my first and most important question is with regards

10     to these extended deadlines of 8/15, 8/29 and the request for

11     backfill time to 9/28, is it -- is all data that is to be

12     preserved being preserved?

13           That is, if we push out those deadlines, is it correct

14     that no data will be deleted; nothing that is there now will be

15     lost while Google takes more time that it has requested for the

16     implementation?

17                MS. TREBICKA:  Yes, Your Honor, I will address it.

18           I would also like to make a -- just a couple of minutes of

19     general remarks, if that is okay with Your Honor.  And then I

20     will go on to address the specific question that was asked.

21                THE COURT:  Let me get an answer to my question first,

22     please.

23                MS. TREBICKA:  First, absolutely, Your Honor.

24           There are ████████████████ for -- if we see the

25     starting date as July 30th, as you had asked in your order --

 1   the question in your order was whether there is any data that

 2   is lost -- given the extended preservation deadlines versus the

 3   preservation having started on July 30th.

 4        And the answer is that out of those ▮ logs, there are two

 5   logs for which we lose a couple of days of data, and that is

 6   just by virtue of the data retention periods being very short.

 7        And I can be more specific than that with -- we have

 8   scoped the entirety of the logs, but that is the precise answer

 9   to your question.

10        THE COURT:  Which two logs?

11        MS. TREBICKA:  Let me find that out, Your Honor.  I

12   have it in my chart.  I just need to --

13        THE COURT:  Which two logs?  What is the retention

14   period and why can't that be suspended to allow for this

15   additional time?

16        Well, that's not really the question.  The question is:  I

17   will allow additional time but retention will have to be

18   suspended.

19        MS. TREBICKA:  The question of suspending the

20   retention is one that we have discussed about a year-and-a-half

21   ago with respect to motion --

22        THE COURT:  Oh, I know, I know.  But now we are down

23   to a very specific -- we have two logs.  You want more time to

24   implement my order.  I'm not going to implement an order that

25   allows any loss of data.

1    MS. TREBICKA:  Your Honor, the logs are in the R&R

2  Index Number 5, ████████████████████████████████████

3      The retention period is ████████  And assuming that we

4  finish on ████████████, as is our projected date, we would be

5  preserving from ████████████████

6    THE COURT:  Okay.  And I'm not going to grant it

7  unless you can preserve from July 30th.

8    MS. TREBICKA:  Understood, Your Honor, and I am -- we

9  are liaising with the technical leads that we have on the call

10 right now, and I believe that we should be able to do that for

11 this one log.  Let me go to the next log, the Ads log.  I

12 apologize while I'm --

13   THE COURT:  That's all right.  That's why we are here.

14   MS. TREBICKA:  -- navigating a very large spreadsheet.

15 The next one, Your Honor, is Number 25 on the R&R Index.

16   THE COURT:  The first one was number what on the R&R

17 Index?

18   MS. TREBICKA:  Number 5.

19   THE COURT:  Number 5, thank you.

20   MS. TREBICKA:  And I can also tell you, Your Honor,

21 the exact name of the data source just like I did for Number 5

22 if that's necessary.

23   THE COURT:  No, that's fine.

24   MS. TREBICKA:  Okay.  And the retention period for

25 that log is likewise ████████████

**SEALED PROCEEDINGS**

1    THE COURT:  Okay.

2    MS. TREBICKA:  And, therefore, if we finish on the

3    ████████████, as we are now anticipating, we would be

4    preserving from the ████████████

5    And I am being told that we can do -- we can preserve the

6    delta for both of these logs.

7    THE COURT:  Okay.  So, is Google on track -- can you

8    represent to the Court today that Google is on track to meet

9    its August 15th deadline for design and implementation of the

10   sampling pipeline?

11   MS. TREBICKA:  Google is on track to do that for

12   August 15th, the design and implementation, correct.

13   THE COURT:  And is Google on track for the August 29th

14   design and implementation for the decryption/re-encryption

15   pipeline?

16   MS. TREBICKA:  Your Honor, yes, with significant

17   challenges but we are on track to do that as well.

18   THE COURT:  I have no doubt about the significant

19   challenges.  I -- I appreciate how complex this effort is, but

20   we are going to get this done.

21   All right.  Then can you represent to the Court today that

22   the backfill that Google is on track and stands by its

23   representation to the Court that the backfill of the sampled

24   logs will be completed by September 28th, 2022?

25   MS. TREBICKA:  Your Honor, yes, that is our

1   anticipated deadline for the backfill as well, for the six

2   years' worth of backfill.

3          THE COURT:  Okay.  All right.  And all of the data --

4   if I grant these extensions, all of the data will be

5   retained -- if I grant these extensions, there will be no loss

6   of data from -- from July 30th to the extended deadline.  It

7   will be as if the July 30th deadline was met.  It will be the

8   same data set.  There will not be any less data.

9          MS. TREBICKA:  Correct.

10          THE COURT:  Okay.  And for the two logs that would

11   have been impacted for which data would have been lost, it is

12   Google's representation to the Court that those retention

13   periods will be suspended until this -- until the

14   implementation is complete; is that correct?

15          MS. TREBICKA:  Your Honor, it is our representation

16   that we will preserve the delta.  I am not sure exactly what

17   the technical implementation will be.

18          THE COURT:  Okay.  Okay, but all of the data will be

19   preserved.

20          MS. TREBICKA:  All of the data falling into the delta

21   for those two logs between July 30th and August 15th will be

22   preserved --

23          THE COURT:  Understood.

24          MS. TREBICKA:  -- somehow but I am not sure --

25          THE COURT:  All right.

1          **MS. TREBICKA:**  -- of the technical implementation.

2          **THE COURT:**  All right.  Thank you.  Mr. Mao, I'm not

3    going to take argument as we work through each of these; but

4    you can see how the Court is going to proceed, but I'm not

5    moving out of or away from data source without a deadline for

6    implementation.  And if you would like to be heard briefly, you

7    may.

8          **MR. MAO:**  I really actually have more of a question,

9    Judge.

10         **THE COURT:**  All right.

11         **MR. MAO:**  Which is with regard to the backfill going

12   back to July 27, 2016.  Does that mean that the data have been

13   preserved from the beginning of this litigation for that period

14   or does that mean that we are trying to preserve from what we

15   can starting from July 30th?  Because that -- if you look at

16   the way it is phrased, Judge, in that table, it is unclear as

17   to what it is saying.  I'm trying to get an understanding --

18         **THE COURT:**  Well, the order is very clear; that the

19   preservation period reaches back to July 16.  So this is

20   current preservation and whatever is -- whatever is available

21   is subject to sampling from back -- as far back as July 16.

22   That goes back to the original preservation order.  Does that

23   answer your question, Mr. Mao?

24         **MR. MAO:**  It does.  Thank you, Judge.

25         **THE COURT:**  All right.  All right.  Okay.  Then that

 1   is how we will proceed.  Those modest deadlines, as requested

 2   for the ███████████ -- excuse me -- ads logs, based upon

 3   Google's representations to the Court here today will be

 4   granted.  There will be no further extensions.

 5        The implementation will be complete on both of these -- on

 6   the dates represented, on August 15 and August 29th; and the

 7   backfill will be completed September 28th.

 8        Is that clear, Ms. Trebicka?

 9            MS. TREBICKA:  It is, Your Honor.

10            THE COURT:  All right.  Then let's move to the███████

11   █████████████  I understand there are two such logs, and the

12   Google representation in its first piece was simply that it was

13   in progress -- in its first submission, excuse me.

14        In its second submission I received only a date for data

15   sampling to scope and sample.  As I have indicated, that is not

16   sufficient.  We will need to get this implemented -- not only

17   scoped but implemented -- no later than August 29th.

18            MS. TREBICKA:  Your Honor, that will present

19   significant challenges.  I may say insurmountable.  I would

20   like here to take an opportunity to tell you how loud and clear

21   we have heard you throughout these hearings and how seriously

22   we are taking the preservation orders.

23        We have poured over them, analyzed them, every single

24   word, with one goal only; and that goal is to comply with them

25   to a T.

1        And to do that, we have had a team of lawyers but more

2   importantly a team of 20 Google engineers working around the

3   clock, because they are in different timezones, to scope what

4   the order requires, to plan for it, and to preserve -- to

5   implement these preservation pipelines that the Court's order

6   has necessitated.

7        And I tell you that every lawyer on the call here today

8   including the Google lawyers will tell you under all other

9   circumstances this would already have been done.  We would not

10  be here today.  And in a world with data sources that are less

11  complex, that we as lawyers understand better, this would have

12  already been done.  We would not have found a need to seek

13  clarification or relief.

14       It is really hard for a lawyer like me to do justice when

15  I'm explaining to you the intricacies of these sources and

16  precisely why the preservation orders are like trying to fit a

17  square peg into a round hole.

18       And that is by no means because of -- because we haven't

19  done enough work.  We -- I mean here, the parties, Special

20  Master and the Court -- that is just by virtue of two worlds

21  colliding, the legal world and the engineering world.

22       And I don't want us to lose sight of the Herculean efforts

23  that have already happened.  I don't want us to lose sight of

24  what we have already been able to accomplish with the

25  extensions that Your Honor has -- that Your Honor has

 1   granted -- and we are very thankful for them -- but there are

 2   certain things that are just -- that need the time, Your Honor.

 3        And we are doing -- this is not about shirking our

 4   responsibility or the burden or the cost.  We are doing these

 5   things at a very high burden and a high cost to Google.

 6        I can tell you that what we have already preserved and

 7   what we have scoped to have preserved amounts to ██████████ of

 8   data.  And previously, you know, we have given you similes with

 9   desktop computers, et cetera.  I will tell you that that is

10   more than a fourth of the Library of Congress.  And we are

11   slated to do much, much more.

12        So that is -- we are doing it, Your Honor, but there are

13   certain things where we need Your Honor's guidance and,

14   perhaps, some sort of relief.

15        THE COURT:  All right.  Well, Ms. Trebicka, I hear

16   that and I appreciate it and I do -- and I have -- I -- there

17   is no question that this is a Herculean task, as you described

18   it.  I certainly get that.  But it still has to be done and --

19   and it has to be done to a fixed deadline, to a fixed deadline.

20        MS. TREBICKA:  Understand.

21        THE COURT:  This case is moving on.  You have got --

22   your class cert hearings are coming up, and summary judgment

23   hearings coming up; and then you are going to have a trial date

24   in the next year some time and you-all are -- you know, the

25   data -- managing data piece we are wrapping up and this data

 1    will be locked down and preserved.

 2        And it may well take more than 20 engineers.  And I know

 3    that's a lot.  I know that is a significant dedication of

 4    resources, but it will take what it will take.

 5        And I will also remind everyone, client representatives

 6    and counsel, that we have been talking about sampling --

 7    sampling -- Google first put forth sampling back in March, and

 8    it took real form -- it took a concrete form in early April

 9    from the first R&R from the Special Master.

10        And I find it challenging to accept that Google would

11    propose:  Okay, well, don't make us go to the sun.  Let us just

12    go to the moon without having a firm grasp and understanding of

13    the time, effort, and resources it would take to get to the

14    moon.

15        And once I said:  Okay, we are scrapping a trip to the

16    sun, we are going to do the moon, that Google would not have

17    already been marshaling resources to figure out all of this

18    scope and design tasks on here, that should have all been done.

19        And I appreciate it has been somewhat iterative and we

20    have been fine tuning the data sources, especially in Calhoun,

21    but all of that -- that's all behind us.

22        So there may still be work on that to be done, and Google

23    has to catch up; but we are not -- we are setting closure

24    deadlines, closure deadlines, for each and every task.

25        And as I said last week, I may, with appropriate support,

1   consider a 30-day extension that would consist until

2   August 29th for implementation, for implementation.

3       I'm certainly not doing anything open-ended as it appears

4   to be the request for the ███████████████████.

5       So what I want to know is let's get that -- let's get that

6   completed.

7           MS. TREBICKA:  Your Honor, the estimate that we have

8   received is October -- middle of October.  And to provide you a

9   bit more of context -- and we ask for this courtesy to provide

10  you the context -- I will call on Dr. Berntson to do so because

11  he has been our client representative not yesterday but for

12  many, many months.  We have been thinking through these issues,

13  so this is not new for us.  We have been thinking through these

14  issues.

15          THE COURT:  I understand.  I understand.

16          MS. TREBICKA:  July 30th -- right, the July 30th

17  deadline did come on July 15th; and that was something that,

18  you know, we had not prepared for necessarily.  But I will turn

19  it to Dr. Berntson.

20          THE COURT:  But now you are asking for August 29th but

21  you are not even -- and no, that will be a "no" to October 15,

22  but I welcome Dr. Berntson's input.  Doctor, if you will turn

23  on your video.

24          MS. TREBICKA:  Correct.  So this is about the ████

25  ███████████████████ for which we have provided an ETA of

1  August -- of August 29th for the scoping and October -- middle

2  of October for implementation.

3         MR. BERNTSON:  Yeah, the -- to start off, we really

4  appreciate your flexibility on helping us figure out how to

5  make sure that we are preserving the data in this case.

6         For the Analytics logs preservation, there is a different

7  team that is working on trying to actually build the pipelines

8  that are necessary.  They don't have the same experience that

9  the teams that are working on the Ads logs have as it relates

10  to the implementation of this work, which is why their target

11  time for completion is longer.

12         One of the things that I believe we can do for the

13  Analytics logs is put -- extend the duration of how long we

14  keep the data that is written into those logs to make sure that

15  we have fidelity of all logs preserved data that would go back

16  to July 30th.

17         So -- and it is entirely possible that we could merge some

18  of the engineering work that is done independently for the Ads

19  logs with the Analytics logs to try to bring the date in

20  somewhat, but one thing we can commit to for the Analytics logs

21  is preserving the data with fidelity back to July 30th.

22         It is really just because it is a completely different

23  team that doesn't have the experience trying to deliver on this

24  pipeline with the same timeline as the Ads logs preservation

25  pipelines that -- that's been the challenge in terms of the

 1  estimates we have been working through.

 2       THE COURT:  Thank you, Dr. Berntson.  I think I

 3  understand, and I appreciate the representation to the Court,

 4  which is on the record that if the Court grants an extension

 5  for implementation, that there will be no loss of data.  It

 6  will be as if the deadline had been met on July 30th and

 7  that -- that is certainly helpful.

 8       October 15th is a -- is a long time away in this case, and

 9  there may well be -- need for data before then.  As I said, I'm

10  not inclined to grant that level of extension, but I do hear

11  you, and I would encourage Google to carefully evaluate its

12  team.  And if it can -- and move some more experience to the

13  Analytics logs side because you are going to need to shorten --

14  shorten that timeframe up.

15       MR. BERNTSON:  Okay.

16       THE COURT:  What I will do is extend -- excuse me, it

17  sounds like you are on track for the August 29 deadline for

18  data sampling, and I will extend to September 28th -- to

19  September 28th -- implementation.  And you can get that done.

20  And the extension is with the representation that there will be

21  no loss of data during this period from July 30th to

22  September 28th.

23                 (Pause in proceedings.)

24       THE COURT:  All right.  Let's move to the ██████████

25  ████████  Thank you, Dr. Berntson.

**SEALED PROCEEDINGS**

```
 1        The ████████████████ indicated that that would be done by
 2   August 8th.  That's Monday.  Is that on track, Ms. Trebicka?
 3            MS. TREBICKA:  It is, Your Honor.
 4            THE COURT:  And that will contain all of the same data
 5   as if it had been completed on July 30th?
 6            MS. TREBICKA:  Correct, Your Honor.  Yes, correct.
 7                     (Pause in proceedings.)
 8            THE COURT:  All right.  That extension will be
 9   granted.  That implementation will be completed for the
10   ██████████████████ by August 8th.
11        All right.  ████████ appears in the first Google submission.
12   It was not specifically addressed in the second, and this is an
13   area that Plaintiffs flagged as concern.
14        Google described in its submission that it was preserving
15   the ███████ dashboard data based on a specific field; that is
16   the is chrome non incognito mode field.  That is not what the
17   order was.
18        The order, of course, is sampling from the ███████ log.  I
19   went back to double-check.  And Google will need to comply with
20   the order.  Timeline for -- deadline for implementation,
21   Ms. Trebicka.
22            MS. TREBICKA:  Your Honor, and if Dr. Ansorge, who is
23   also supporting or speaking at this hearing would like to jump
24   in at any time, I would welcome the help.
25        But my understanding is that the order said ███████, not
```

1  ████████ logs.  There had been various discussions about

2  dashboards as well as the logs that fed into the dashboards.

3  We were consistently transparent that it was the dashboards

4  that we understood needed to be preserved, and that's what we

5  have done.

6      If the understanding is -- or if, you know, Your Honor is

7  clarifying to include the logs -- the ████████ logs, then that is

8  something else.  We are happy to talk about it.  Our

9  understanding was that it was the dashboards.

10      THE COURT:  Mr. Mao, Plaintiffs raised in their

11  response about you were also speaking in terms of dashboards;

12  the ██████ dashboard data but not limited to a specific field.

13  Am I understanding that correctly?

14      MR. MAO:  Your Honor, if you recall -- and I will try

15  not to rehash too much.

16      THE COURT:  Don't rehash at all.  Just answer my

17  question, please.

18      MR. MAO:  We understood that to be both logs and

19  dashboards, so...

20      THE COURT:  I understand.  But in your response you

21  said:  "Why isn't Google saving all████████ dashboard data?"

22  And you identify a different -- you know, the is chrome

23  incognito detection bit.

24      MR. MAO:  Right.  So maybe the misalignment here,

25  Judge, is that Ms. Trebicka is talking about preserving

1    dashboards; and we thought that they were assuring us that they

2    were actually preserving logs but not dashboards.

3         THE COURT:   Sounds like to me that now you want logs,

4    but you would have taken all the data on dashboards, Mr. Mao.

5         MR. MAO:   Well, I think both would be relevant if they

6    were going to challenge the accuracy of the dashboards.

7                    (Pause in proceedings.)

8         THE COURT:   Ms. Trebicka, if it's all data on -- if it

9    is limited to dashboards but it is not going to be -- it is not

10   limited to the field that is identified, what is Google -- what

11   are you trying to accomplish here?

12        MS. TREBICKA:   Your Honor, we are -- the data in the

13   dashboard that we are saving is based only off of one of the

14   bits, the is chrome non incognito.   I would like to defer to

15   Dr. Ansorge about the specifics of our implementation of the

16   preservation of the dashboard, but our understanding was also

17   that Plaintiffs had acquiesced or agreed to the preservation

18   focusing on the dashboard instead of the logs.   But,

19   Dr. Ansorge, please jump in.

20        THE COURT:   I understand that but why wouldn't it be

21   all of the -- all of the dashboard data and not just the field

22   that Google has identified?   Mr. Ansorge?

23        MR. ANSORGE:   So our understanding is that the

24   dashboard shows the traffic that has the is chrome non

25   incognito mode field, and Plaintiffs are asking about traffic

**SEALED PROCEEDINGS**

```
1    that relates to a different field and --
2              THE COURT:  Is that on the dashboard?  Is that traffic
3    on the dashboard?
4              MR. ANSORGE:  Yeah, our understanding is that that
5    traffic is not on the dashboard; and that's why we are
6    preserving the specific data as it relates to the dashboard.
7              THE COURT:  When you say "your understanding," that
8    always makes me a little nervous.  Not to disparage your
9    understanding, Dr. Ansorge, but is there someone here from
10   Google who can speak to that specifically?
11             MR. ANSORGE:  I don't believe we have an engineer on
12   for that specific topic.  But, Mr. Schapiro?
13             MR. SCHAPIRO:  Man, I'm not an engineer.  But I just
14   want to note something that might allow us to resolve this.  I
15   thought I heard Mr. Mao say in response to your question,
16   Your Honor, that the reason he is interested in the greater set
17   of data is because he is concerned we might challenge the
18   accuracy of the dashboard.  We are not going to challenge the
19   accuracy of the dashboard, so maybe that would put this to
20   rest.
21             MR. MAO:  So --
22             THE COURT:  Mr. Brush -- excuse me, Special Master
23   Brush or Mr. Schmidt, if you can turn on your video and let me
24   know --
25             MR. BRUSH:  Yes, Your Honor.
```

 1      **THE COURT:**  -- question or clarification.  Perhaps you

 2  can help me on this.

 3      **MR. BRUSH:**  Yeah, you know, I guess it goes back to a

 4  question you just asked.  What are we looking to achieve?  And

 5  what is going to have the highest fidelity and accuracy in the

 6  data that is being preserved, whether it is the dashboard or

 7  the logs or both?

 8      But, you know, to the extent that it can be reasonable to

 9  do, you know, if there is a way to do both in any capacity --

10  so the back-end data is there but if there is original

11  representation, any kind of backfilling, that can be beneficial

12  as well.

13      I think we want to construct something that is, again, not

14  going to -- where we don't want the -- perfect to be the enemy

15  of good, but what are we looking to accomplish with this and

16  what can we do in a reasonable manner by having something that

17  is defensible throughout the process.

18      **MR. MAO:**  So, Judge, I'm going to -- I think the

19  misunderstanding is definitely incorrect.  On the record I will

20  let Mr. McGee handle that portion.

21      But I just want to remind the Court real quickly, if you

22  recall, the dashboards actually have not been produced to us.

23  So I do not -- it's difficult to evaluate in isolation what

24  exactly they are asking for even setting aside how they even

25  came to this conclusion because, as Mr. McGee will indicate to

1    you, we made it very clear in communications what the

2    understanding was.  If you don't mind, I would like to pass the

3    baton to Mr. McGee.

4           **THE COURT:**  Yes, Mr. McGee.

5           **MR. McGEE:**  Thank you, Your Honor, about 30 seconds, I

6    think, is what I will need here.

7           On July 28th, I believe -- it was the day after Google

8    filed their administrative motion in this case for the

9    extensions -- we e-mailed Google a list of nine inquiries.

10          Number 8 on that list was -- and I quote (as read) --

11   "Please clarify why Google is only saving ████ data for one

12   and not both of the incognito detection bits that sit in ████

13   logs."

14          **THE COURT:**  Right.

15          **MR. McGEE:**  That's word-for-word the request that we

16   made to Google, and we did not receive a response until

17   Tuesday, this Tuesday, and that was from Dr. Ansorge.

18          He said (as read:) "The data in the ████ dashboard is

19   only based off the is chrome non incognito mode field," full

20   stop.

21          That was the extent.  We never had any discussions about

22   this.  It was not brought to our attention prior to the motion

23   being filed, so we followed up with that, Your Honor.

24          And I think that the written communication to Google --

25   again, directly after we received their motion -- we were

 1   seeking not only the one bit but also both bits that sit in the
 2   logs, and it was not limited to the dashboards.
 3        So if there was any indication in our later filing, I will
 4   own that; but I do know that we communicated to Google again
 5   immediately after receiving the administrative motion that
 6   pointed out additional issues --
 7        **THE COURT:**  Well, the issue you have identified,
 8   Mr. McGee, is the additional bit.  What I'm trying to figure
 9   out is:  Are we talking about dashboards or logs?
10        And I know what is in the order, and I know what Google
11   assumed from the order; and I -- I'm not yet satisfied that
12   that assumption is appropriate.  But the questions seem to
13   be -- the back-and-forth between the parties seem to be around
14   well the bit limitation; that is, we want the data for both
15   bits.
16        So my question, Mr. Ansorge, is the ███████ -- where is
17   the -- where is the second bit that Plaintiffs identify, the is
18   chrome incognito detection bit -- is chrome incognito detection
19   bit, is that in ██████ log, not dashboard, but log?
20        **MR. ANSORGE:**  Yes, Your Honor.  And Ms. Sadowski
21   testified to that in her 30(b)(6) earlier in the year.
22        I would like to circle back on the question that you
23   posed:  Well, what do you want to do with the data?  Why have
24   you been preserving it?  How does the dashboard relate?
25        And from our position, Your Honor, we are trying to meet

 1    the letter and the spirit of the preservation order.

 2              THE COURT:  I understand.

 3              MR. ANSORGE:  Having deposed Plaintiffs' experts and

 4    claims administration experts and computer science experts, we

 5    have learned that there is no intention to use any of this data

 6    to identify class members.  They are intending to rely on self

 7    identification and --

 8              THE COURT:  I understand.  Not our issue today.  I

 9    understand.  I did read the class cert motion.

10              MR. ANSORGE:  So I thought that that might be a

11    relevant consideration when we are speaking about the

12    proportionality associated with preserving additional logs on

13    top of all the other preservation pipelines that are running

14    and being built for Brown when it appears as if Plaintiffs'

15    primary arguments will be that Google could have identified

16    individuals if it had not just been maintaining its ordinary

17    preservation procedures, which Your Honor had less than the

18    preservation order earlier last year.

19              MR. MAO:  If I may just real quickly, Judge.

20              THE COURT:  No, not necessary, Mr. Mao.  Thank you.

21              MR. MAO:  Okay.

22              THE COURT:  I have got it.  I'm going to look back at

23    the order and my -- my notes.  I understand it is Google's

24    position that the dashboard as to that bit has been preserved;

25    that is, the bit identified in Google's filing, and that the

 1    additional bit that Plaintiffs identify in their response is

 2    not reflected in ███████ dashboard data but it is reflected in

 3    ██████ log data.  Do I have that correct, Mr. Ansorge?

 4              **MR. ANSORGE:**  Yes, Your Honor.

 5              **THE COURT:**  All right.  Thank you.  Okay.  Let me just

 6    make a note here.

 7                        (Pause in proceedings.)

 8              **THE COURT:**  All right.  So let's pass on that for the

 9    moment.  I will return to it.

10        Next is the GAIA, ████████████████ databases and in

11    Google's -- or data sources, I should say.  And in the second

12    submission, again Google provides a deadline only for sampling;

13    that is, the scoping -- scoping the pipeline and does not

14    provide any information with regards to implementation.

15        Let me just say here I appreciate, which appears in other

16    argument as well, that certain data sources, it's Google's

17    position that you cannot sample or pull out just the U.S.

18    users; that that's -- for whatever reason, you don't have a geo

19    location selector but that's -- that's a Google issue for

20    Google to figure out at some other time.

21        If it has to preserve all the users and can't sort it for

22    geography, then it has to preserve it all; and it can deal

23    with -- you know, once it has been preserved, then Google can

24    deal with narrowing it down to U.S. users if that's -- if

25    that's possible.

 1        If it is not possible, it still has to -- it still has to

 2   comply with the order; and it may have to preserve more because

 3   it can't get to the smaller unit.

 4        So, we need -- we need to close this out with an

 5   implementation deadline, Ms. Trebicka.

 6        MS. TREBICKA:  I understand, Your Honor.  And the

 7   ██████████████████  issue is where we -- again, this is the second

 8   point in the order where we need your -- your thoughts and

 9   guidance as to how to implement given the significant technical

10   challenges that make it impossible.  And not only that, but

11   also coupled with the sheer size of what we would have to

12   preserve if it was a global snapshot.  It is close to ████

13   ██████████.

14        THE COURT:  I understand but we have had the scope and

15   cost discussions.

16        MS. TREBICKA:  May I --

17        THE COURT:  These data sources need to be sampled out.

18   You are saying:  Well, it is going to take 30 days just to

19   figure out scoping.

20        MS. TREBICKA:  Yes, Your Honor.

21        THE COURT:  But we need to go from there.

22        MS. TREBICKA:  Your Honor, I want to mention one more

23   thing -- and again, I will need Dr. Berntson's help in

24   responding more precisely to Your Honor's question here.

25        But the other thing I want to mention is the tremendous

```
 1   privacy implications of preserving worldwide data where --
 2           THE COURT:  I understand and I hope Google can figure
 3   out a way to use geo location.
 4           MS. TREBICKA:  And --
 5           THE COURT:  And I --
 6           MS. TREBICKA:  You know --
 7           THE COURT:  I know it is not a wave of the wand.
 8           MS. TREBICKA:  Your Honor, that is what we are working
 9   on, but Dr. Berntson can say it so much better than me, so I
10   will turn it over to him.
11           MR. BERNTSON:  Yeah.  If it would be useful, I'm happy
12   to provide a really simple explanation for why this request is
13   so challenging for ███████████████ --
14           THE COURT:  Well --
15           MR. BERNTSON:  -- and why the technical delivery,
16   which we are committed to doing, is so much more challenging
17   for ███████████ .
18           THE COURT:  Well, let me -- let me ask a question of
19   Ms. Trebicka first, Dr. Berntson, because I appreciate there
20   are issues with regards to -- to the ██████ databases that were
21   raised in the Calhoun matter and followed up with the request
22   for clarification in that matter.
23       Is that issue tied to this?  I didn't recognize it because
24   this is just GAIA, ██ and --
25           MS. TREBICKA:  Yes.
```

```
 1              THE COURT:  I may have overlooked that connection.

 2              MS. TREBICKA:  No, Your Honor, that is a very good

 3    question.  Let me step back.  ████████████  completely

 4    different from ████████████████.

 5              THE COURT:  Oh, I know.

 6              MS. TREBICKA:  They are both very similar.

 7              THE COURT:  Yes.

 8              MS. TREBICKA:  Right.

 9              THE COURT:  I understand.

10              MS. TREBICKA:  They are like huge universes --

11              THE COURT:  I understand.

12              MS. TREBICKA:  -- that are logically sequential.  And

13    we have explained a little bit how that is, but the -- the

14    other issue that we are encountering is that sampling is it,

15    Your Honor, and that's what we wanted.  That's what we would

16    like to do.  We are not going back on the sampling.

17         The issue that we are encountering is that sampling and

18    the 10,000 per day sample, U.S. based only and the field-based

19    preservation, they simply don't have a tool to do that in

20    ████████████.  That sort of solution was really keyed off of

21    logs, so we just need more time to get it done properly.

22         And, Your Honor, I would also like to remind you that the

23    ██████preservation in particular, we had not -- it came new in

24    the June 30th --

25              THE COURT:  I saw that argument.  I saw that argument
```

1    but that's -- you know, that's -- we -- ██████ has been on the

2    table a long time.

3            **MS. TREBICKA:**  Correct, Your Honor, but -- we

4    understand, Your Honor.  We are just -- we are just pleading

5    with you to let us explain to you what the technical challenges

6    mean and how we are creatively thinking around the clock to

7    resolve them.

8            **THE COURT:**  Okay.  And I take that.  I take that.

9            **MS. TREBICKA:**  Okay.

10           **THE COURT:**  I accept that.  What I want to know now is

11   for -- and we are just talking about ███ because I'm just -- I'm

12   looking at the Brown issue if the -- I -- I don't -- it doesn't

13   sound like the clarification request in Calhoun, which related

14   to the GAIA identifiers and the ZWBK identifiers in ██████, it

15   doesn't look like that ties directly to this issue.  And if I'm

16   wrong about that, Dr. Berntson, you know, he can set me

17   straight.

18       But without that, then let's focus on GAIA, ████████████

19   ██; and you have said:  "Okay, well we need another 30 days to

20   scope;" all right.

21       Then what is our -- what is your offered deadline for

22   implementation understanding it is, you know, we are talking

23   about a solar system here, not just a -- or a universe, not

24   just our solar system.  I think that would be a fair

25   comparison.

1      **MR. BERNTSON:**  I met with the ████team earlier this

2   week, and we discussed plans for how we could meet the

3   requirements for data preservation.

4      High level in terms of what time they estimated is going

5   to be required, they came back to me with a preliminary

6   estimate of -- on the order of a ███████████ of work.  So

7   that's ██████████ of work to actually build the new

8   infrastructure that would be required for preserving the

9   requested data from ████

10     And if it would be useful, I can talk about sort of

11  exactly what that entails and why there is significant

12  challenges.

13           **THE COURT:**  I take it you are the expert --

14           **MR. BERNTSON:**  -- or --

15           **THE COURT:**  You run the engineers.  You are talking to

16  the engineers.  They are saying, you know, it will take a full

17  ███████████ to implement.

18     It is difficult for the Court, Mr. Berntson, when we have

19  been talking about a sampling structure already for several

20  months.  So that's -- now, that's -- that's the --

21           **MR. BERNTSON:**  Your Honor --

22           **THE COURT:**  -- the Court's frustration.  I appreciate

23  that doesn't help you and your engineering team.

24           **MR. BERNTSON:**  Your Honor, respectfully, I have been

25  working with my engineering team to support the sampling

1    strategy for logs-based sampling.

2         As of two weeks ago is the first time I've heard about a

3    sampling strategy for████████████ data.  That's why we are

4    scrambling and have such a long time to try to deliver the

5    solution because it is a brand new requirement for me.

6              THE COURT:  So --

7              MR. BERNTSON:  Now, the other thing I do want to point

8    out is I would really like to try to be creative.  I'm

9    committed to having my team endeavor to provide as much

10   preservation of critical data as possible, and there are a

11   couple of attributes around the data that is in██   that I think

12   is really important to consider in terms of how it overlaps,

13   sort of the timing for when we can begin this sampling based

14   preservation approach.

15        And that is, the data that is stored in██   that is keyed

16   off of individual users represents anywhere from a short period

17   of time in terms of the data that is turning over, but the vast

18   majority of it is stored for approximately ████████████

19             THE COURT:  Uh-huh.

20             MR. BERNTSON:  Which means if we were to implement a

21   sampling strategy that were to land within ████████████ and I

22   grabbed a piece of data that's stored associated with a

23   particular user on the date ████████████ from now, the data

24   that is stored inside ██████ for the vast majority of that

25   data -- and ██ -- is actually going to represent activity that

 1   spans July 30th.

 2        And one of the things -- the -- the focus that you helped

 3   establish earlier in this conversation where the requirement is

 4   preservation of user activity starting on July 30th with

 5   fidelity, one of the things is if we start sampling out of ███

 6   ████████████ from now, again, the vast majority of users that

 7   we select, if there is any activity of that user on that day,

 8   July 30th, we are going to capture that even sampling ███████

 9   ███████ from now.

10             THE COURT:  All right.  And you --

11             MR. BERNTSON:  So --

12             THE COURT:  -- use the phrase -- I take that,

13   Mr. Berntson, and I appreciate it; and you are obviously

14   focused on the Court's concern about preservation of data which

15   I appreciate you being responsive about that because that is a

16   paramount concern.

17        You said the vast majority of data.  Describe at least

18   generally for me what is not -- what doesn't fall in ████████

19   if you can.  Tell me what we are talking about.

20             MR. BERNTSON:  Yeah.

21             THE COURT:  -- not --

22             MR. BERNTSON:  Sure.

23             THE COURT:  -- what would fall --

24             MR. BERNTSON:  An explicit example of the kind of data

25   that would not be present after ████████ is if I have an

1  advertiser who has said when I run this campaign, I want to

2  make sure that the ads associated with this campaign are shown

3  to a given user only once within, say, a week.

4      And what happens is as soon as a user has seen an ad from

5  this campaign, we basically put a bit that we store in ▮▮that

6  says that user has seen the ad associated with this campaign

7  basically at this day.

8          THE COURT:  Uh-huh.

9          MR. BERNTSON:  And so any time --

10          THE COURT:  That refreshes every week; is that fair?

11          MR. BERNTSON:  Exactly.  And so that's up to sort of

12  say the advertiser saying what is the frequency for which a

13  given user can see an ad associated with a campaign.

14      That's an example that is driven specifically by, say, the

15  business requirements from the advertiser.

16      And one thing that is interesting about this particular

17  attribute is it's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮

21          THE COURT:  I understand.  I understand.  All right.

22  So when you speak of a ▮▮▮▮▮▮▮▮▮ worth of work,

23  Mr. Berntson, is it fair to say -- and the answer to this

24  question is "yes," by the way -- is it fair to say that -- that

25  that would be ▮▮▮▮▮▮▮ for design, scope, and

1   implementation?  Not 30 days for design and scope and then

2   another ██████████

3              **MR. BERNTSON:**  I will give precisely the answer you

4   instructed me to give which is yes.  There is still work to be

5   done in terms of scoping, but one of the things I can make sure

6   we do is express urgency and staff these efforts appropriately

7   to meet these deadlines.

8              **THE COURT:**  So we are back to a -- well, we are into

9   October.  We are at an October deadline, October -- late

10  October, right; that --

11             **MR. BERNTSON:**  Yes.

12             **THE COURT:**  -- gives you September and October.  Are

13  we counting that the same?

14             **MR. BERNTSON:**  That's right.

15             **THE COURT:**  All right.

16      With minimal loss of data based on the representation from

17  Google that -- that the vast majority of data in these data

18  sources is retained on a ██████████   and that would include

19  the data from July 30th forward --

20             **MR. BERNTSON:**  That's correct.

21             **THE COURT:**  -- back to implementation.

22             **MR. BERNTSON:**  That is correct.

23                        (Pause in proceedings.)

24             **THE COURT:**  All right.  That's helpful.  And I just

25  want to come back after we've addressed related issues in re

1    ███████  in case I need to tweak that, but I appreciate the input

2    and appreciate your preparation and willingness to discuss that

3    with the Court at this juncture.

4        All right.  Let's turn to the final issue, the mapping

5    tables.

6            **MS. TREBICKA:**  Your Honor, I need to clarify

7    something.  Your Honor, with permission, I would like to

8    clarify something.

9            **THE COURT:**  Yes, Ms. Trebicka.

10           **MS. TREBICKA:**  I would like to clarify for the record

11   that we, the legal team, has been working with the ███ team for

12   many weeks, if not months; and I know -- I don't know the

13   precise date.  I'm not close to the details but it is months

14   that we have been working on solutions, ever since the -- these

15   types of preservation was a possibility for ████

16       I would just like to clarify that for the record.  There

17   are many teams within Google that work in a complimentary way.

18           **THE COURT:**  I understand.

19           **MS. TREBICKA:**  And we are managing them --

20           **THE COURT:**  I understand.  I heard Mr. Berntson's

21   representation about working on this a couple weeks, but I --

22   your earlier comments on the efforts were -- have not been --

23   were not lost on the Court, Ms. Trebicka.

24           **MS. TREBICKA:**  Thank you, Your Honor.  I just want to

25   make sure that the record is also clear.  As you can imagine, I

**SEALED PROCEEDINGS**

```
 1    would like to make the record as full as possible --
 2              THE COURT:  Of course.
 3              MS. TREBICKA:  -- given the importance of the issues
 4    that are being discussed today.
 5              THE COURT:  Understood.  Let's turn to preservation of
 6    mapping tables.  That's the last issue open on Brown.
 7         Preservation of mapping and linking tables, there was a
 8    description from Google that it was preserving the -- a
 9    specific mapping table, ██████████████, and then gives the
10    specific name.
11         That appears to me to be a limitation or an assumption or
12    presumption on the court order which was quite clear as to all
13    mapping tables.  So help me out here, Ms. Trebicka.
14              MS. TREBICKA:  Yes, and, Your Honor, I will phone a
15    friend with Dr. Ansorge taking this one.
16              THE COURT:  All right.  Mr. Ansorge.
17              MR. ANSORGE:  Yes, Your Honor, when we were discussing
18    mapping tables within the context of this case and the
19    preservation orders with -- both in the lead-up and
20    subsequently, the table we always refer to was the ██████████
21    ████████████████.
22         Of course, Google has different mapping tables that exist
23    in different areas, but we are not aware of any specific
24    relevant mapping table that would be covered by the
25    preservation order.
```

1    This is one of the questions that Plaintiffs had posed to

2  us over the weekend, and we had put it back to them and asked

3  whether they could inform us of any specific mapping table or

4  describe what kind of mapping table they think should be

5  covered.  We did so on Tuesday.  We have yet to hear from them.

6    Of course, we would greatly benefit from both clarity and

7  reasonableness in the preservation order.  And our

8  understanding, to be frank, is that every mapping table we had

9  been discussing in the lead-up was the specific mapping table.

10  That's the one we are taking steps to preserve.

11    We are concerned that Plaintiffs are attempting to expand

12  the order in a fashion in which it would include mapping tables

13  that have never been discussed that -- that -- yes.

14    **THE COURT:**  Mr. Barnes -- thank you, Mr. Ansorge.  I

15  got it.  I understand the argument.  This was an objection that

16  was raised, a point that was raised by Plaintiffs in the

17  objection phase and I sustained that objection and ordered the

18  preservation of all mapping tables.

19    Mr. Mao, there has been some subsequent discussion between

20  the parties.  You know the Court is always looking for lines of

21  efficiency here.  What is Plaintiffs' position, please?

22    **MR. MAO:**  Your Honor, we believe that you have it

23  absolutely right.  If you recall, one of the -- one of the

24  disputes in which Google never agreed to supplement on was

25  our -- I believe was Interrogatory Number 10 or Number 11,

1    where we specifically asked for identification of all relevant

2    mapping tables; and because Google refused to identify all of

3    them, we had to go broadly, which Your Honor, as you pointed

4    out, you sustained.

5         And I can give you a very specific type of ID in which we

6    asked for, for the location mapping table, which is for UIDs or

7    Google Analytics ID and just not PPIDs, which is why we met and

8    conferred with counsel, the artificial limitation they were

9    putting on the preservation order which sustained our

10   objections asking for all capturing of all mapping tables.

11        Let me give you one really quick illustration.

12        **THE COURT:**  I think I have got it, Mr. Mao.  I have

13   got it.  I want to keep us moving.  We have been going quite a

14   while.

15        I get the mapping table issue.  As I say, that was a

16   previous objection which I sustained.  And all mapping tables

17   as of the date of the preservation order, they will be

18   preserved.

19        **MR. ANSORGE:**  Your Honor, I'm sorry to have to follow

20   up there.  A mapping table is a specific defined term, and it

21   strikes me that Plaintiffs, both in this case and in Calhoun --

22   I see Mr. Barnes has his camera on -- may have a very different

23   idea of what a mapping table is than engineers at Google when

24   they discuss mapping tables.

25        Our experience from speaking with engineers is that there

**SEALED PROCEEDINGS**

1    is one specific mapping table that's relevant, and that's the

2    ███████████████████ mapping table.

3         We have had -- a very large amount of discovery.

4         **THE COURT:**  Well, then that should have been an answer

5    to an interrogatory.  It sounds like that interrogatory could

6    have been answered pretty easily.  That's part of the

7    frustration is you're asking Plaintiffs to -- "Well, you tell

8    us what -- you tell us what in our trove of data is relevant"

9    and that's not an appropriate approach, Mr. Ansorge.  We have

10   had this conversation.

11        How are they to know?  They don't have insight into -- to

12   be able to identify the relevant mapping tables particularly

13   where they asked and there was not an answer given.

14        **MR. ANSORGE:**  So they did ask --

15        **THE COURT:**  We are going to move on.  Again --

16        **MR. ANSORGE:**  Dr. Berntson about --

17        **THE COURT:**  -- we have -- the time for.

18        **MR. ANSORGE:**  -- mapping tables.

19        **THE COURT:**  Dr. Ansorge, please.

20        **MR. ANSORGE:**  I'm sorry, ma'am.

21        **THE COURT:**  Please do not speak over the Court.  The

22   time to argue about the scope of mapping tables is at the

23   objection phase.  I read the parties' papers.  I heard

24   argument.  I sustained the objection.  The order stands.

25        All right.  We are going to move to -- all mapping tables

1    will be preserved.  I don't think anybody will have a problem

2    understanding "all."

3              THE COURT:  All right.  Let's turn to --  Calhoun.

4    That I believe addresses all of the open issues in Brown and

5    let's turn to the Calhoun matter.

6              MR. MAO:  Thank you, Your Honor.

7                        (Pause in proceedings.)

8              THE COURT:  Let me just make one more note here.

9                        (Pause in proceedings.)

10             THE COURT:  Okay.  I think we have the context.  I

11   laid that out at the beginning.  We have had many rounds of

12   argument and discussion and modifications with regards to the

13   sampling protocols and the broader full preservation protocols

14   at stake in this case.

15       One issue that -- excuse me, one issue that the Plaintiffs

16   identified in response was a concern about Google identifying

17   all of the field names for the data sources from which data is

18   to be preserved.

19       I read that.  My reaction to that is:  Well, we have to

20   finish this -- this exercise and clarification on exactly what

21   is being preserved and when and that -- the scoping exercise

22   that Plaintiffs are going through is in part to identify field

23   names but I may be misunderstanding that.

24       Ms. Trebicka, do you want to speak to that in the first

25   instance and then I will circle back to Plaintiffs.

1      (Pause in proceedings.)

2           **MS. TREBICKA:**  Your Honor, is the question whether it

3    is appropriate now to identify all the fields?  Because in our

4    view, it's not.  After the preservation is complete -- our view

5    is that it needs to happen once preservation is complete

6    although I have to say that we have already provided a

7    piecemeal identification of those fields at this point.

8           **THE COURT:**  So, the order was to identify, on very

9    short notice -- this one only is a very short deadline -- all

10   of the field names for all the data sources for which data is

11   to be preserved.

12        So that is all of the sources identified in the

13   preservation order to go in and -- I mean, it -- identify --

14   somebody on every team can go in and identify -- and I'm going

15   to put aside for a moment the ███████ issue -- that can

16   identify the fields.  The Plaintiffs in their submission

17   complain about the piecemeal submission.

18        And it may be that that process gets refined a little bit

19   for our discussion here today, but the field -- it is not an

20   end.  It is not at the end, now we will tell you what all the

21   relevant fields are.  It's:  This is what we are preserving and

22   working on.

23        So far our furthest outside scoping date is August 29th,

24   and it would certainly seem that all fields could be identified

25   by that date if not sooner, and they should be identified as

```
1    soon as they are available.
2              MS. TREBICKA:  Your Honor, my understanding is that
3    they are not available until they are pulled; sampled, that is.
4    And that is when we will know what the particular fields are.
5    ███████████████ stands in a completely different --
6              THE COURT:  Yeah, I understand that.
7              MS. TREBICKA:  -- pocket; right.
8              THE COURT:  Don't want to cloud this with ██████████
9    ████
10             MS. TREBICKA:  Yes, unfortunately.  That is why we
11   have identified for as much as we were able to do at this
12   point.  It is not -- it -- that is how it is -- that's the
13   way --
14             THE COURT:  So it would seem as soon as implementation
15   starts, not the end -- well, obviously it goes on; right? --
16   but again, as soon as implementation -- and there is just a few
17   where implementation is outside that timeframe but as soon as
18   that gets under way -- in other words, with the first sampling,
19   the very first sample, you should be able to identify the
20   fields.
21             MS. TREBICKA:  With the very first sample, Your Honor,
22   I think that's correct, but the sampling needs to have happened
23   first.  And for several of these we are in the process of
24   scoping and the implementation will not happen until the end of
25   August.
```

**SEALED PROCEEDINGS**

1    And, Your Honor, if I'm misstating something, I would

2    actually like Dr. Ansorge to clarify or tweak because I would

3    like the record to be very precise here.

4         **MR. ANSORGE:**  Well, first I want to apologize,

5    Your Honor, for interrupting you earlier.  I didn't mean to do

6    so.

7         **THE COURT:**  That's fine.

8         **MR. ANSORGE:**  Thank you.  We have had -- one of the

9    challenges in this case since last October has been identifying

10   all the fields in all different logs, and it is something that

11   we had gone over quite a bit with both the Special Master and

12   Plaintiffs.

13       What we have done in this case is we both produced a lot

14   of data and through that we have been able to identify the

15   fields.

16       **THE COURT:**  I'm very familiar with the background,

17   Dr. Ansorge.

18       **MR. ANSORGE:**  Okay.  Then let me just add this one

19   additional detail.  We, of course, sought an extension for

20   the -- of the July 30th deadline.

21       Nonetheless, we on Monday still provided additional field

22   for logs to Plaintiffs.  We also identified explicit sync state

23   fields that you had asked for.  Our understanding is that that

24   met the letter of the order since July 30th fell on a Saturday

25   and usually it would go to the next working day.

I would also, just for the record, Your Honor, point out that some of the logs that we had identified and provided fields for have tens of thousands of fields. So it ends up being, like, we are compiling phone books.

**THE COURT:** Well, Ms. Trebicka has indicated that when sampling begins, that at that point fields that haven't already been identified can be identified. For all the data sources from which there will be sampling, as soon as sampling begins, then the fields can be identified. Is that -- do you agree?

**MR. ANSORGE:** Yes, Your Honor, it will be much more straightforward, and we believe that it's entirely feasible and makes sense in that type of sequencing. We just require that additional time to build the pipeline so that we can actually have the fields and provide them.

**THE COURT:** I understand. All right. Okay. Plaintiffs also resurrected their request again from the objection phase for a broader identification of fields, and I had sustained in part and overruled in part that objection; and I know it's not exactly the same, but the reasoning is.

And I am not going to grant the request for a broader universe of fields to be identified. They are going to identify -- as in the order, identify the fields from which data is being preserved.

It is the timing of that identification is what Plaintiffs have raised here today, and I will -- I want to give that

1    consideration, but that seems to make sense to tie the due date

2    of the field names to the first date of sampling, but that

3    should proceed on a rolling basis, as should implementation.

4         If under the good guidance of Mr. Berntson, as he's

5    described it here today, sampling is ready to start sooner, I

6    fully expect to start sooner.

7              **MR. BARNES:**  Your Honor, may we be heard briefly?

8              **THE COURT:**  Briefly, Mr. Barnes.  We have a lot of

9    ground to cover.

10             **MR. BARNES:**  Thank you.  We don't -- based on Google's

11   submission that in order to determine the fields in █████████

12   they are looking at the protos, we think there is an interim

13   step.  We don't think sampling is necessary to determine the

14   fields that are eligible to be in a --

15             **THE COURT:**  Thank you, Mr. Barnes.  I appreciate it.

16   We are not going to have that further discussion today.  We are

17   going to tie sampling as I just directed.

18             **MR. BARNES:**  Thank you, Your Honor.

19             **THE COURT:**  I -- I appreciate that, but I think we

20   have some more substantive issues to address.

21        I also -- the third item, the Calhoun Plaintiffs did

22   submit overnight a request regarding clarification of the

23   preservation order as it relates to sync state.  I am not

24   taking up that request in this proceeding here today.

25        As I say, we are focused on the administrative requests

SEALED PROCEEDINGS

1    that are currently before the Court.  I would like Google's

2    response today whenever, and I will pick that up first thing in

3    the morning.  I do have help that is overseas and in other

4    timezones, as we all do in our hybrid world, so the sooner the

5    better for Google to get that; but I appreciate we are tied up

6    in this hearing this morning.

7        I'm not going to set a firm deadline of close of business

8    specific, but I would like it as soon as -- as soon as

9    feasible; but I will give you the day.

10       MS. TREBICKA:  Your Honor, may I very kindly ask for

11   more than just the close of business or more than just today,

12   the calendar day?

13       It is obviously a very important request and we have it.

14   We want to respond to it but we may need a little bit more time

15   even the weekend if that's okay with Your Honor.

16       THE COURT:  The problem is, Ms. Trebicka -- well, you

17   tell me -- I don't want this question, which I have not

18   thoroughly unpacked, but I do not want it to slow down the

19   scoping and implementation that we are discussing here today.

20       I appreciate it -- in my view it goes to other fields,

21   other potential fields; and I don't want Google to stop saying,

22   "Well, now we can't keep designing because we don't know what

23   the full scope is."  So that's my concern.

24       MS. TREBICKA:  I understand your concern, Your Honor,

25   and I believe that the particulars fields will not -- the

1   identity of the particular fields will not impede the scoping

2   work that is being done.  But to be fair, I haven't thought

3   about your question for a long time; and I would like for

4   others to weigh in.

5           THE COURT:  Okay.  I would like to -- I mean, maybe

6   someone on the technical team can respond to that or on the

7   lawyer team.  We can circle back to it, but your request for

8   more time depends; and I would need a representation on the

9   record from Google that it will not impede the deadlines we are

10  setting here today, to give you a little bit more time to

11  respond --

12          MS. TREBICKA:  Yes.

13          THE COURT:  -- to the Plaintiffs' request for

14  clarification.

15          MS. TREBICKA:  Yes, Your Honor.  I beg for your

16  patience.  May I explain the issue to -- for the record to the

17  engineers so that they can correct me if I'm wrong so that we

18  can lay this issue to rest?

19          THE COURT:  Well, or --

20          MS. TREBICKA:  It will only take 30 seconds.

21          THE COURT:  Okay.  Go ahead.

22          MS. TREBICKA:  So essentially the question -- so

23  Plaintiffs have asked for additional field-based preservation.

24  So we have field-based preservation.  They have asked for

25  additional fields to be added.  We oppose the request.

SEALED PROCEEDINGS

1   Your Honor, will decide.

2        The question is whether if Her Honor grants the new fields

3   and asks them to be added as field-based preservation to the

4   existing requests whether that will impact the deadlines that

5   we have provided to Her Honor on the call today and also, you

6   know, in -- in the submissions.

7        If the answer is yes, it will impact that, then we will

8   put in the submission, Your Honor, within the 24 hours that you

9   requested.  If the answer is no, then we kindly ask for more

10  time.

11        **THE COURT:**  And, Mr. Straite, it's not -- the

12  fields -- the additional fields the Plaintiffs are asking for

13  are in a very specific category.  Can you articulate that,

14  please.

15        **MR. STRAITE:**  Yes, Your Honor, thank you.  The Court

16  already ordered the --

17        **THE COURT:**  I know.  Just answer my question, please.

18        **MR. STRAITE:**  So sync state was defined to be express

19  sync state, so a singular field that identifies whether a user

20  is synced.

21        We have discovered throughout the case -- and Google has

22  recently confirmed -- that when a Chrome user is not signed in,

23  it is impossible for them to be synced.  So if there is a

24  signal or a field that confirms a user is not signed in, by

25  definition that person is not synced, so a not signed in signal

1   or field means that person is not synced.  So it should be

2   included in the definition of sync state signal or field.

3          THE COURT:  So you are asking for a -- and I

4   appreciate the argument that it's already covered but -- the

5   request for clarification is that a signal that identifies a

6   user not being signed in be included in the fields to be

7   sampled.

8          MR. STRAITE:  Specifically -- as included in the

9   definition of a sync state signal, yes, Your Honor.

10          THE COURT:  Okay.  Thank you, Mr. Straite.

11          MR. BARNES:  Your Honor --

12          THE COURT:  Yes, Mr. Barnes.

13          MR. BARNES:  It could also be if there are two signals

14   that combine together indicate that a user is not signed in,

15   that's what we mean by signal; a combination of signals that

16   establishes that a user is not signed in, whether that is one

17   signal or two signals in the same log that are combined.

18          THE COURT:  Okay.  Thank you.  And I know that's set

19   out in your papers.  Again, Google -- the only issue we are

20   dealing with is Google's request for additional time to respond

21   to Plaintiffs' just filed request for clarification.

22          And I am looking for assurance that it would not impede --

23   that whether or not we include a not signed in signal or,

24   perhaps, a combination, that that would not impede the scoping

25   and implementation work that is under way.

1        **MS. TREBICKA:**  Your Honor, there is too much

2    uncertainty from my perspective, so we will endeavor to put a

3    response in writing by the end of Pacific today.

4        **THE COURT:**  Okay.  Thank you, Ms. Trebicka.  I

5    appreciate that.

6        Okay.  Let's turn to the Calhoun issues.  As in Brown, I'm

7    looking at both of Google's submissions.  The first at 786-3

8    which, excuse me, raised a number of deadline issues and then

9    the supplement from Google, which is at 793-3, which addressed

10   most but not all of the categories that had been identified in

11   the first submission.

12       So again, I will be working off of the first; be sure we

13   touch on all of the categories that have been raised, but I am

14   taking into consideration the deadlines that were proffered in

15   the second.

16       So -- and again, some of these will be very familiar, and

17   I'm hopeful we can get to the differentiating issues fairly

18   quickly.

19       ██████████████████████████, we had this issue in Brown

20   as well; and there is a request -- the deadlines are slightly

21   different.  There is a request for -- to have until -- 30 days

22   for -- no, I misread that.  I'm sorry.  The request is for 30

23   days for design and implementation.  That would be to

24   August 29.  And then backfill -- additional time to complete

25   the backfill, and it is the same question which is:  Can all of

 1   the data be preserved and -- to ensure there would be no loss

 2   of data in the July 30th to the new deadline period, and,

 3   Ms. Trebicka --

 4          **MS. TREBICKA:**  Yes, Your Honor, the deadlines that we

 5   have proposed in Calhoun are the same as in Brown for similar

 6   tasks or for the same tasks, for ███████████████████

 7       And again, the solution that we propose is that for the

 8   two logs where complete -- or starting implementation at the

 9   end of August would lead to a ██████ loss of data, we will make

10   sure that that data is retained.

11          **THE COURT:**  All right.

12                      (Pause in proceedings.)

13          **THE COURT:**  All right.  Then, with the

14   representation -- now, it is a different -- it is a slightly

15   smaller set of logs in Calhoun.  Do you know, Ms. Trebicka, is

16   it the same two logs that have a short retention period or is

17   it different logs or --

18          **MS. TREBICKA:**  Yeah, I believe it is the same two

19   logs, Your Honor.

20          **THE COURT:**  Okay, all right.  Then it presents the

21   same issue, as did Brown; that there are just two logs of --

22   where data would be -- would not be retained in the ordinary

23   course.

24       And Google is representing to the Court that it will

25   provide for the preservation of all of the data on those 23

 1    logs.  If it would have been preserved from or available at

 2    July 30th, it will be available at the completion on

 3    August 29th.

 4        So with that representation, I will grant the extension as

 5    requested.

 6            MS. TREBICKA:  Thank you, Your Honor.

 7            THE COURT:  All right.  That brings us to the ████

 8    ████████████████, the timing here is different than in Brown.

 9    Google asks for an implementation deadline of August 29th, 30

10    days for design and implementation.

11            MS. TREBICKA:  Your Honor, we have revised that since.

12    Apologies it did not make into our submission.  It should also

13    be August 8th.

14            THE COURT:  Okay.

15                    (Pause in proceedings.)

16            THE COURT:  And are you on track to have that

17    completed by Monday, August 8th?

18            MS. TREBICKA:  We are, Your Honor.

19            THE COURT:  With no loss of data?

20            MS. TREBICKA:  No loss of data.

21            THE COURT:  All right.  Based on Google's

22    representations to the Court, the extension to August 8th for

23    the three ████████████████ is granted.

24        Then we come to the ████████████████ -- I may not be

25    saying that correctly -- sampling --

 1           MS. TREBICKA:  Yes.

 2           THE COURT:  -- where Google's representation was that

 3    it could have the design and implementation -- design completed

 4    and implementation under way by August 12th, August 12th.  Are

 5    you on track for that deadline, Ms. Trebicka?

 6           MS. TREBICKA:  We are, Your Honor.

 7           THE COURT:  Okay.  And will the data -- any data that

 8    is present for July 30th be available on August 12th at the

 9    start of sampling?

10           MS. TREBICKA:  Your Honor, this one is a little more

11    complicated because the answer varies depending on the log.

12           THE COURT:  Okay.

13           MS. TREBICKA:  And --

14           THE COURT:  Well, there are ███ I think.

15           MS. TREBICKA:  There are ██ logs, correct.  For -- and

16    I can go -- instead of spelling out the log names for you, I

17    can go by the R&R Index in Calhoun.

18           THE COURT:  Uh-huh.

19           MS. TREBICKA:  For R&R Index 9 there will be no data

20    loss.

21           THE COURT:  Why don't you just tell me the -- well, we

22    are talking about 13, so...

23           MS. TREBICKA:  Yes.

24           THE COURT:  So is the number -- are most preserved or

25    most involve loss or is it going to be an even split?

 1          **MS. TREBICKA:**  I think it -- so, Your Honor, I
 2   apologize.  I have not bucketed it in the way that you are
 3   asking.  And it does make sense, frankly.
 4          There will be some loss for some of these columns -- I'm
 5   sorry for some of these logs.  And, perhaps, what we can -- I'm
 6   just, you know, thinking on my feet here; but, perhaps, what we
 7   can do here is we can internally figure out whether we can
 8   offer something similar to what we offered for the ███████████
 9   ███████████████████████████  whereby even though there may be data
10   loss, we can somehow recover it.  I don't know whether it will
11   be possible, but perhaps we can skip this one; keep working on
12   it in the background and then -- and we circle back to it.
13          **THE COURT:**  All right.  Okay.  I think your team is --
14   probably understands the question very well since we have
15   covered it on a number of other but -- it is a two-week
16   extension essentially, ten days, two weeks, that Google has
17   asked for; but we need to be able to have the data from
18   July 30th.
19          All right.  Let's turn to the ███████ sampling.  This
20   appears in the first submission from Google and is -- yes, and
21   is not addressed in the second.  Again, Google represented that
22   preservation was complete but then proceeds to say that it
23   can't do it -- can't do sampling U.S. users, so it has done
24   something different which is an annual full snapshot, et
25   cetera, as described in Google's submission.

1        I am -- I am not inclined to proceed as Google suggests.

2   In no small part there is not enough information, and we are

3   not -- we are not retiring to the Special Master to further

4   unpack what is annual snapshots with daily granularity as to

5   whether or not that is the same thing or the same dataset as

6   under the sampling protocol which is -- which is what is

7   ordered for the ██████████ data source.

8                    (Pause in proceedings.)

9           MS. TREBICKA:  Your Honor, would you like us to

10  respond?

11          THE COURT:  I would.

12          MS. TREBICKA:  Yes.  And Dr. Ansorge is ready and

13  willing to do that.

14          THE COURT:  All right.

15          MR. ANSORGE:  Yes, Your Honor.  We are surprised to

16  see Plaintiffs' objection and -- because throughout the

17  preservation process Plaintiffs had been requesting categorical

18  preservation of ████████ tables.

19       And as we understood their theory, they had wanted to

20  figure out if there is a sample somewhere, could you look up

21  for that user what data exists in ████████ tables.

22       And the Special Master had recommended in his preservation

23  plan and the Court adopted a sampling strategy which would have

24  been a daily one, and we encountered the similar problem as in

25  the ██████████ where key value storage databases don't lend

 1  themselves to daily samples.

 2      So we actually believe that this is significantly more

 3  data because it's a snapshot of the entire table as it exists.

 4  It is not sampled for individual users on a daily basis, and

 5  the data is retained for a long time in ███████ as well.

 6      So we would ask you to reconsider in light of we believe

 7  that this is not only as effective as what you had ordered it,

 8  in fact, is better and should be preferable for Plaintiffs; and

 9  it is an easier, more cost-efficient solution for Google.  So

10  we would ask that you --

11          THE COURT:  Well, there are a number of questions

12  around what that means and what is shown.  Let me call on

13  Special Master Brush and/or Mr. Schmidt.

14      With regards to the ███████ proposal, I know we spoke

15  about this when it came in.  There were a number of questions

16  around what an annual snapshot, what exactly that would mean.

17  And, perhaps, if you drilled down, questions might help.

18      Mr. Brush?

19          MR. BRUSH:  Yes, Your Honor.  When we talk about

20  snapshots, what we are trying to have a better understanding is

21  there is a different, let's say, flavors, varieties or

22  methodology in doing that; particularly with virtualized

23  environments and different type of databases that sit within

24  those.

25      When we are talking about a snapshot, is it an actual

 1   database snapshot?  Is it an virtual disk snapshot backup?  Is

 2   it an export of the data from a tool within inside the database

 3   itself that may or may not pull all the records?

 4        So the details -- the devil is in the details of this when

 5   we talk about a snapshot.  What is it technically -- what

 6   technically is happening so we have a better understanding of

 7   what is in that data corpus.

 8             **MR. ANSORGE:**  Are you okay with me responding to that?

 9             **THE COURT:**  Yes, please, Mr. Ansorge.

10             **MR. ANSORGE:**  My understanding, which we have also

11   confirmed with Google, is that here the snapshot would be a

12   copying of the tables that had been identified and requested by

13   Plaintiffs in this case.

14        It wouldn't be something that is limited to the 10,000

15   users on a specific date, but it would be at the time of the

16   snapshot and is an annual snapshot, all the data that exists in

17   the specific table with no loss.

18        And that's cheaper from an engineering perspective because

19   we don't have to build massive pipelines.  We believe it should

20   also be preferable from Plaintiffs' perspective because instead

21   of a narrow sample, which they might have to hope that there is

22   some kind of a connection with the log sample, here, there is

23   now a categorical preservation.

24        So it strikes us as both much broader than what you had

25   originally recommended, Special Master, but unusual situation

```
 1   where it is also more cost effective to proceed in this manner.
 2               MR. STRAITE:  Your Honor --
 3               MR. BRUSH:  Understood.  Just a question just for
 4   further clarification, so this would be all the tables or
 5   specific table?
 6               MR. ANSORGE:  Yeah, so there's two tables that have
 7   been called out; and it would be a full snapshot of them
 8   annually of both of those tables.
 9               THE COURT:  Those are the tables that are reflected in
10   the order -- in the preservation order as I understand it?
11               MR. ANSORGE:  Yes, Your Honor.
12               THE COURT:  So it's a --
13               MR. BRUSH:  Thank you.
14               THE COURT:  And when you say "annual," is that a one
15   time, once a year?  Tell me how that works.
16               MR. ANSORGE:  So, yeah, the plan would be to once a
17   year take a full snapshot of the table as it exists.  You know,
18   it wouldn't just be the data that is written on any specific
19   date because these key value systems represent more than just
20   within a log infrastructure data that is written on a specific
21   date.  It would be --
22               THE COURT:  But is the data -- on the day of the
23   snapshot -- on the day of the annual snapshot, does it have all
24   of the data that you would have pulled through the sampling
25   process that year -- across that year or within that year?
```

1              MR. ANSORGE:   So the data is different, of course,

2    because there is -- some of it reflects state and times where

3    individual daily granular data and Plaintiffs' class members or

4    users can delete their accounts as well, so the data remains

5    dynamic.   A sample of 10,000 users on any given day would be

6    smaller and a different snapshot than the -- a broad one of

7    what is stored in the entire database on one day in a year.

8                          (Pause in proceedings.)

9              THE COURT:   Mr. Brush, did that answer your question?

10             MR. BRUSH:   Yes.

11             THE COURT:   Okay.

12             MR. ANSORGE:   It might also be helpful if I add that

13   the typical time to live or retention period for the tables we

14   are discussing is ███████████   So the one year should, you

15   know, not lead to a loss of data in that form.

16             MR. BRUSH:   And will that be -- so if you are doing

17   that table snapshot on a year's basis -- and, let's say,

18   arbitrarily we are doing January 1st, 2023 -- that is a year

19   back -- would that also represent prior years as well or you

20   only set it for one-year, I guess, export of the tables?

21             MR. ANSORGE:   So the first one would be all the data.

22   We would probably proceed in that form, but we hadn't thought

23   about what you do for the second one.   Do you then just cap it

24   for the one year going forward?   That would be a helpful

25   implementation detail, if we can get some guidance from you on

1    it.  I assume the preference, without having spoken to the

2    engineering team, might be to be one bit; but we could commit

3    to do all the data as well.

4         **MR. BRUSH:**  Yeah, I would say definitely want to

5    confirm with the engineers because I don't want to engineer

6    something too that is also duplicative or wasteful in that

7    sense.

8         If it is an incremental backup, that makes sense.  If it

9    is also something that it is actually easier just to do

10   wholesale, you know, backups without any kind of date range

11   too, would be helpful to know how that would be implemented.

12        **MR. ANSORGE:**  Yeah, I imagine it might be easier just

13   to do all the data on each one; but we could speak to the

14   engineering team to have more clarification.  Without a doubt

15   for the first one we would do all the data.

16        **MR. BRUSH:**  Understood.

17        **THE COURT:**  Mr. Straite.

18        **MR. STRAITE:**  Thank you, Your Honor.  Obviously we are

19   hearing a lot of this for the first time today.  We are largely

20   in the dark on the technology.  This has not been subject to

21   discovery.  And more importantly, none of this was put into the

22   record for this particular request.

23        With that, we do want to work with Google to find

24   compromise.  We don't want to preserve more than we need to.

25   Would we be able to get snapshots, say, weekly or monthly

1    rather than annually?  That might put our hearts -- maybe it

2    will stop fluttering as much when we hear this.  We don't know

3    enough -- we don't know what we don't know.  We don't know what

4    gets lost.  A year between snapshots is a long period of time.

5            MR. ANSORGE:  Yeah, the struggle for us, Mr. Straite,

6    is that these are tables that store data for ████████.  So

7    if we take a snapshot every week, we are in effect creating a

8    lot of duplicate data every week.  And it's for that reason

9    that the engineers found that a daily preservation sample was

10   not cost effective or an appropriate way to proceed.

11       I sincerely believe that this is in Plaintiffs' best

12   interest because they end up with a large categorical snapshot

13   instead of preservation sample, which, I believe, you always

14   had reservations about during the negotiations.

15           MR. STRAITE:  And I apologize, Mr. Ansorge, you said

16   that it was the judgment of the engineers that it wouldn't be

17   cost effective or appropriate.  I thought you were saying it

18   wouldn't be possible.

19           MR. ANSORGE:  Well, I think we said that there is no

20   specific tooling.  And I'm glad that you raised that point,

21   Mr. Straite, because a lot of the arguments that relate to

22   possibility/impossibility, we are talking about data -- with

23   sufficient energy you could build new products; you could

24   change the entire infrastructure.  There is realms of

25   possibility here.

```
 1          We believe it's an implementation detail.  It's a
 2   reasonable solution, and I think that less costly form going
 3   forward should be as effective if not much more effective than
 4   what Plaintiffs had been asking for.  So our expectation
 5   actually was that Plaintiffs would be happy about the
 6   categorical          preservation.
 7          MR. STRAITE:  We would be happy, Your Honor -- we can
 8   compromise at one month if that's something Google can do
 9   rather than weekly.  Maybe that's the compromise between the
10   snapshots.  Rather than weekly or annually, how about once
11   every month?
12          THE COURT:  Okay.  Let me give that some
13   consideration.  We will circle back.  I hear -- and I think we
14   all have a better understanding of what -- what the proposal
15   is.
16          MS. TREBICKA:  Your Honor, may I -- may I just clarify
17   something that you haven't had a chance to consider which is
18   the table we are talking about is a          table that --
19          THE COURT:  Appreciate it.
20          MS. TREBICKA:  -- we did not know before and haven't
21   had a chance to tell you.  So we ask that you consider that in
22   fashioning relief here.
23          THE COURT:  Understood.  It's understood.  Thank you.
24          All right.  Let me give that some thought as to the
25   frequency of the snapshot.  I understand Plaintiffs are
```

1  amenable to this snapshot approach but have some concern about

2  the annual time period.

3       All right.  Let's turn to the issue -- the sampling issue

4  with regards to GAIA ███████, ZWBK ███████, GAIA ██, DBL ██, and

5  ZWBK ██ sampling.  And obviously we saw this in part with

6  regards to the ██ data sources in the Brown case.

7       Because this also -- pardon me -- involves the ███████ data

8  sources, Ms. Trebicka, is this -- is it helpful in this

9  discussion to address the request for clarification, which

10 actually came up in the full preservation context, so it may

11 not link directly to this.

12      **MS. TREBICKA:**  No, it -- thank you, Your Honor.  There

13 are several issues with respect to the ███████ preservation.

14      This one is the 10,000 U.S.-based users issue, which is

15 very similar to the issue we discussed in ██ and which, if you

16 would like to hear further technical explanation, I would love

17 to hand it over to Dr. Berntson for additional input on the

18 time that it will take.

19      **THE COURT:**  Okay.

20      **MS. TREBICKA:**  The clarification issue that we

21 sought -- and I think you are referring to the field -- to the

22 fact that we can not do -- or --

23      **THE COURT:**  Right, that really comes up on the full

24 preservation point.

25      **MS. TREBICKA:**  On the field -- correct, on the --

1          THE COURT:  Okay.

2          MS. TREBICKA:  On the full ongoing preservation of

3     specific fields.

4          THE COURT:  Okay.  Then we will turn to that in due

5     course.

6          MS. TREBICKA:  Okay.

7          THE COURT:  Let's focus here on the sampling as to

8     these large data sources, which I appreciate are not mere logs.

9     The Special Master has reminded me throughout these

10    discussions.

11         So -- and I don't know if Dr. Berntson will speak on this

12    issue as well and maybe we can -- maybe we can tighten this up

13    a little bit.  I think we covered the ██ issue.

14         Now we are adding in the ██████ databases.  Are we talking

15    about the same kind of timeframe?  Are there some synergies

16    between this?  Is it the same background?  And are we headed

17    towards the same proposed solution?

18         Dr. Berntson, I don't want you to repeat yourself, but I

19    want any new relevant information.

20         MR. BERNTSON:  The new relevant information is they

21    are completely different systems that unfortunately the work

22    done for one isn't going to help the other, but they have

23    basically exactly the same class of problems.

24         Our proposal is to staff two different teams to work on

25    both ██████████  in parallel and try to execute on the same

SEALED PROCEEDINGS

1   timeframe for both.

2            THE COURT:  Okay.  So Google's request then, if I'm

3   understanding it based upon our discussion in Brown but

4   applying it here in the Calhoun issue, would be for a

5   three-month extension to the end of October for both scoping

6   and implementation, implementation of sampling from these data

7   sources.

8        And then I would like to hear from you with regards to

9   loss of data, if I were inclined to use that solution,

10  specifically as it relates to the ▇▇▇▇ databases since we

11  already talked about ▇▇.

12           MR. BERNTSON:  Yeah, in terms of the nature of the

13  data and the kind of scenarios, whether it be loss of data, it

14  is pretty much identical between ▇▇▇▇▇▇▇▇  from an

15  infrastructure perspective.

16       There are going to be some differences in terms of the

17  features and the data associated with those features that are

18  stored in ▇▇▇▇▇▇▇  But by and large, there is a lot

19  of symmetry between the two.

20           THE COURT:  All right.

21           MR. BERNTSON:  And I would be happy to provide more

22  details in terms of the classes of data that are stored in ▇▇

23  ▇▇▇▇▇

24           THE COURT:  What I really want to know, Dr. Berntson,

25  is in the Brown matter when we were just talking about the ▇▇

1   data sources, the representation was made to the Court that the

2   vast majority of data would be -- had a long enough retention

3   period that it would not be lost -- it had a ███████ retention

4   period, so we would not lose data from ████████ to the ████████

5   ████████ in that preservation timeframe.  Is that -- can you

6   make the same representation to the Court with regards to

7   ████████

8          **MR. BERNTSON:**  Yes.

9          **THE COURT:**  Okay.  And what is the typical retention

10  period in ████████   Is it also ████████ as it is in █ or is it

11  something different?

12         **MR. BERNTSON:**  The ████████ retention period is the

13  standard retention period for data that is keyed off of GAIA

14  and Biscotti, and that retention period then reflects, for

15  example, if there is a model that's looking at data associated

16  with the user that is then represented in terms of summary data

17  in ████, it is looking back ████████

18         **THE COURT:**  Okay.

19         **MR. BERNTSON:**  And so a representation of a sample of

20  data that is following those data retention guidelines in terms

21  of what's within ████████ they are either stored directly in

22  ████████ that has these retention guidelines, which is the

23  default for these IDs, or derived from data that is stored in

24  logs with these default retention periods would then be

25  reflected corresponding to the ████████ within a sampling date

1    that would begin at the ███████████████.

2         THE COURT:  Okay.  Give me an example of the kind of

3    data in ███████ that would be lost -- that would be subject to a

4    shorter retention period and could be lost -- would be lost

5    with a three-month extension.

6         MR. BERNTSON:  ███ -- so the same use case in terms of

7    an advertiser setting up an advertising campaign with frequency

8    capping that has different intervals of time, ███ supports sort

9    of all of our sort of display business.

10        ██████ supports more of sort of our owned and operated

11   property business, and so advertising campaigns -- it would be

12   managed for an advertiser working with YouTube, for example,

13   would be stored in ██████.

14       So there is a real similarity in terms of the kinds of

15   cases where you would see a turnover of data, very similar

16   between ███ and ██████.

17        THE COURT:  All right.  And based on those

18   representations, the ask from Google is the same for a

19   three-month extension.

20        MR. BERNTSON:  That is correct.

21        THE COURT:  To get to implementation of each of these

22   databases.

23        MR. BERNTSON:  That is correct.

24        THE COURT:  Okay.

25                    (Pause in proceedings.)

```
 1              THE COURT:  Okay.  All right.  As I said, I wanted to
 2     just give that some consideration.  We are going to take our
 3     recess here momentarily.  I hope it is momentarily when we
 4     are -- have finished working through the Calhoun issues, and
 5     I'm going to review carefully the additional information that's
 6     been provided today and return, I hope, with additional rulings
 7     on these issues that I have left open so the parties know how
 8     to proceed.
 9          I will, of course, also be issuing an order.
10          All right.  Let's turn to some of the full preservation
11     issues that are presented in Calhoun.  These did not arise,
12     obviously, in Brown.  And the first is the ███████████████,
13     the full preservation.
14          Google represents that it's on track for implementation --
15     implementation by August 29 with the same backfill
16     representation.
17          And, Ms. Trebicka, is it the situation that -- with
18     that -- with that extension, there will be no loss of data as
19     we discussed with the sampling issues?
20              MS. TREBICKA:  Yes, Your Honor.  So the detail is that
21     I believe that one log would have otherwise been affected, but
22     we will provide the same solutions that we are providing for
23     the other logs to make sure it doesn't happen.
24              THE COURT:  All right.
25                          (Pause in proceedings.)
```

1    THE COURT:  All right.  Then with Google's

2  representation that there will be no loss of data; that is, the

3  same data will be preserved whether it met the July 30th

4  deadline or it gets the extension to August 29th for

5  implementation, I will extend the deadline for implementation

6  to August 29.

7    And with regards to the ███████████  for full

8  preservation, is -- Google had proposed that it would just need

9  until August 8th.  Is Google on track for that completion,

10  Ms. Trebicka?

11    MS. TREBICKA:  We are, Your Honor.

12    THE COURT:  And there will be no loss of data from

13  July 30th to August 8?

14    MS. TREBICKA:  No loss of data.

15    THE COURT:  All right.  Then I will grant the

16  extension to August 8 --

17    MS. TREBICKA:  Okay.

18    THE COURT:  -- for that task to be completed.

19    Okay.  This brings us to the GAIA ██████ and ZWBK ██████,

20  the full presentation of certain fields.  Now, this is the

21  request -- to their request for clarification.

22    MS. TREBICKA:  Correct.

23    THE COURT:  If I'm saying that correctly.  And there

24  again, just for context, the order is for full preservation of

25  certain fields in designated columns in -- specifically in███

1   GAIA ▮▮▮▮▮ columns and in ▮▮ ZWBK ▮▮▮▮▮ columns.

2       Google has said -- and I think this has been consistent

3   throughout our preservation process -- that as to ▮▮▮▮▮ -- as

4   to these two data sources, it has to preserve an entire column.

5   It cannot just select certain fields; that is, if a column is

6   identified, the whole -- everything in that column has to be

7   preserved, if I'm understanding the arguments that have been

8   made throughout on that point.

9       And what Google is asking now is to -- from the set of

10  columns we are working with, the ▮▮▮▮▮▮▮, Google wants

11  to deselect columns that have only -- that the only reason the

12  column would be selected is because it has either the ZWBK

13  identifier in the ZWBK ▮▮▮▮ database or it has the GAIA

14  identifier in the GAIA ▮▮▮▮ database.  Am I understanding the

15  ask correctly, Ms. Trebicka?

16          MS. TREBICKA:  You are, Your Honor.

17          THE COURT:  Okay, all right then.

18      Okay.  And I -- obviously I saw Plaintiffs' proffer on

19  this -- well, the initial and the response which I have given

20  some consideration to.

21      So if I were to grant the request to allow that

22  deselection of some number of columns, what does that do in

23  terms of proposed deadlines, Ms. Trebicka?

24          MS. TREBICKA:  Your Honor, the difficulty of

25  accomplishing what needs to be accomplished still remains.

 1    It would make the universe from almost ████████

 2    smaller.  I don't know how much smaller.  We are still working

 3    with the teams to figure out which columns this would

 4    finally -- the universe -- what the universe would look like

 5    finally.

 6    But I don't believe that the implementation deadline that

 7    Dr. Berntson has outlined would materially change, but I would

 8    like Dr. Berntson to speak to this issue because I'm sure there

 9    is more technical detail that I'm missing here; and I'm not

10    portraying it very well.

11         **THE COURT:**  Okay.  So the current proposal -- just

12    before you start, Dr. Berntson, the current proposal is that

13    the investigation -- that is, basically the identification of

14    which columns have the fields --

15         **MS. TREBICKA:**  Right.

16         **THE COURT:**  And, you know, with the -- if the Court

17    follows through on the clarification, that that can be done in

18    fairly short order.  I think there is an August 15th date.  I

19    see that here in Google's proposal.

20    And then for -- where do we go from there, Mr. Berntson?

21    And is it also for a three-month extension?  And what happens

22    to data in the interim?  Those are two separate questions.

23         **MR. BERNTSON:**  Um, reducing the number of columns that

24    would be provided has the advantage of focusing the preserved

25    data on data that is directly relevant to the core --

 1           THE COURT:  I understand.

 2           MR. BERNTSON:  -- the intent.  The amount of space

 3   that would be preserved would be less, but we don't consider

 4   that to be as material as making sure that the scope of data

 5   that is preserved is the right set of data that is preserved.

 6           THE COURT:  Understood.  Understood.  And that

 7   supports their request for clarification.  And don't worry,

 8   Mr. Straite, I will come to you -- and Mr. Barnes -- but I

 9   understand that.

10       So now my question is:  What is the timeframe that you are

11   seeking with regards to the full preservation of certain

12   fields, assuming it will be fewer columns, although you don't

13   yet know how much fewer?  How does that impact or what is the

14   timeframe?  What is the request?

15           MR. BERNTSON:  The timeframe would remain as what we

16   first requested for the extension.  The reduction in the number

17   of columns does not impact the work that is involved.

18           THE COURT:  Okay.  So you are asking for a three-month

19   extension until the end of October; is that correct?

20           MR. BERNTSON:  That is correct, Your Honor.

21           THE COURT:  And what happens to data in the interim in

22   these foreboding ██████ data sources?

23           MR. BERNTSON:  Um, the same issue that we described

24   previously because the nature of the ██████ data is that it is

25   basically an aggregation of data over one period of time.

1    At any given moment in time it is basically a reflection

2 of, say, the state of the user as it relates to a particular

3 use case, whatever the column happens to be.

4    So all the things we described previously in terms of the

5 total -- you know, the expected duration of the data that is

6 then feeding into these ███████ columns, for example, for GAIA

7 and Biscotti is ███████████, so it is the same use case we talked

8 about is relevant here.

9         THE COURT:  Okay.  So is the representation that

10 implementation of the full preservation of certain fields would

11 begin in ███████████, and in the period from now until the end

12 of October for the vast majority of the data in the GAIA ███████

13 and ZWBK ███████ databases, there would be no loss -- no loss of

14 data?

15         MR. BERNTSON:  That is our representation, Your Honor,

16 yes.

17         THE COURT:  All right.  Thank you, Mr. Berntson.

18    Mr. Straite, did Plaintiffs want to be heard on this

19 approach as to these databases?

20         MR. STRAITE:  Thank you, Your Honor.

21    With respect to the extensions, you saw our briefing.  We

22 would defer to the judgment of the Court in part because we

23 don't have enough information to weigh in intelligently.

24    With respect to further narrowing of which columns are to

25 be preserved, obviously we object.  By our calculation, it is a

1   very small percentage of ██████ that is now slated for

2   preservation, ██████████ or so.  This was something we didn't

3   want that narrowing.  We lost that issue.  We instead had

4   proposed that certain identifiers be used to search across all

5   of ██████ to identify which columns.

6            THE COURT:  I remember the argument well, Mr. Straite.

7            MR. STRAITE:  And we lost; right.  So now we have

8   these columns that -- with the help of our expert and with

9   interaction with Google, we figured out these are the right

10  column.  And now Google is saying "we want to narrow them

11  further" using Plaintiffs' original proposal of doing the

12  search across all of them.

13       So we object, of course.  We think these are the right

14  columns.  We think there actually may be additional columns

15  that may be preserved.  We lost.

16            THE COURT:  I understand.

17            MR. STRAITE:  So we object to narrowing these columns

18  even further.  Ninety percent of ██████ is not being preserved

19  under the current proposal.  To narrow it further, we think,

20  would be prejudicial given the fact that we don't have field

21  descriptions.  We don't have the protos.  We don't have --

22            THE COURT:  But the only -- the proposal is to

23  deselect columns that have only -- only one of the identifiers

24  in it.  It doesn't have any of the other information, and you

25  already know that information.

1        **MR. STRAITE:**  Right.  So if there is a column that

2  only has GAIA, that doesn't mean it is not a relevant column;

3  it is not worthy of preservation because we don't know what

4  else is in there.  We don't have the field descriptions.  We

5  don't even have the field names for the columns that --

6        **THE COURT:**  But it doesn't have any of the other

7  fields that have been identified as the trigger fields.

8        **MR. BARNES:**  Your Honor --

9        **MR. STRAITE:**  I will let Mr. Barnes --

10        **THE COURT:**  Okay.  Thank you, Mr. Straite.

11  Mr. Barnes.

12        **MR. BARNES:**  The fields in the order were chosen based

13  on disclosures in             Google has made no disclosures

14  of fields in ▮▮▮

15      So to the extent Google is talking about "Oh, well, these

16  fields, we will look for these fields," as you know, they can

17  have basically the same thing but have very little nuances in

18  how they are named differently.  For example, there is a

19  sync-enabled field and an is sync-enabled field that may be the

20  same thing.

21      Our concern is that Google without telling us what the

22  fields are in each of these chosen columns will be able to say

23  that a field name in ZWBK▮▮▮  that essentially holds the

24  exact same data of a field that was in a ▮▮▮  is not

25  relevant per the order because it is not the exact same name.

 1   And I will give you a specific example.

 2        THE COURT:  No, I got it.  I got it.  I got it,

 3   Mr. Barnes, and I take it.  And I know that the -- lessening

 4   the columns isn't going to impact the timeframe per

 5   Dr. Berntson's representations.  I hear you.  Okay.  Let me

 6   give that some careful consideration.  Let me make a note here.

 7                  (Pause in proceedings.)

 8        MS. TREBICKA:  Your Honor, may I offer that we do have

 9   our █████ expert here with us today, Mr. Quaid; and he should

10   be able to offer some more information that will be relevant to

11   Your Honor as you are making a decision on this.  Would it be

12   okay for him to speak?

13        THE COURT:  Certainly.  Mr. Quaid, welcome.  Thank you

14   for joining us today.  I want to keep us moving, but I think

15   you understand the points that we are talking about.

16        MR. QUAID:  Yes, my pleasure.  You know, I think the

17   issue -- the issue at hand is that if the smaller number of

18   columns nonetheless represent a large percentage of the storage

19   space that █████ uses, then we are going to have to find ways

20   to make the retention feasible; and in order to do that, we are

21   going to have to build custom software to make that happen.

22        If we can just use straightforward snapshots and backups

23   and, you know, go that route, that's less efficient from a

24   storage perspective but it is easier to implement; right.

25        So I think the issue is really -- in terms of the schedule

 1    the issue is that if we want to do something efficient, as

 2    usual, it takes longer to actually get done.

 3         **THE COURT:**  Understood.

 4      Thank you, Mr. Quaid, I appreciate that.

 5      All right.  Let's move to the one full-time snapshot of

 6    ZWBK ████████, one full-time snapshot of ZWBK.  Google's

 7    representation is that this will be done by August 15th.  Is

 8    Google on track, for that, Ms. Trebicka?

 9         **MS. TREBICKA:**  Your Honor, yes, we are.

10         **THE COURT:**  Okay.  And will that snapshot reflect the

11    same information?  I take it from Dr. Berntson's

12    representations, at least it will certainly have the vast

13    majority of the same data that would have been there on

14    July 30th.  There may be some -- there may be something that

15    gets dropped in the -- in that two weeks.

16         **MS. TREBICKA:**  I rest on Dr. Berntson's explanation of

17    that issue, and I will note that it's already about ████████

18    of information.  So I suspect yes, that that is the case.

19         **THE COURT:**  All right.  Based on the representations

20    in the record so far with regards to the ZWBK ██████ database,

21    I will grant the extension to August 15 for the one full-time

22    snapshot.

23      The ██████ snapshot was indicated as completed.  That

24    probably takes us back to the issue of what is that a snapshot

25    of.

1        **MS. TREBICKA:**  This may be an easier one, Your Honor,

2   because the order itself asked for a snapshot of these two

3   tables, so that's what we have done.  There is no daylight

4   between what is in the order and what we have completed.

5        **THE COURT:**  Okay.  All right.  And then the mapping

6   tables discussion we did cover in Brown.  And that is what I

7   am -- maybe it will -- it is my same ruling in this case, and

8   the order in Calhoun also reflects the same language, which is

9   that all mapping tables are to be preserved in their entirety.

10       So, that brings us to the end of the open issues that I

11  have, and we are going to take a recess.  We are going to take

12  a -- a 20-minute recess.  Everyone may turn off your screens;

13  stretch your legs; get a cup of coffee.

14       And to the Special Master team, I'm going to circle back

15  but we will take 10, and then we will convene on our other

16  line.  All right.  And we will join everyone back shortly

17  thereafter.

18       **MS. TREBICKA:**  Your Honor, before we break, may I

19  raise one issue?

20       **THE COURT:**  Quickly.

21       **MS. TREBICKA:**  Which is that -- I will need to reserve

22  our rights on the mapping table issue, which we are not exactly

23  sure whether the -- whether the order -- whether the way that

24  we have implemented the order and -- is -- is in any way

25  deficient.  So there is some uncertainty there.

**SEALED PROCEEDINGS**

```
 1        We can take it up after the break.  I just wanted to put a

 2   pin on it just so that Your Honor doesn't think later it is an

 3   issue we are belatedly raising.

 4        The other issue is the field preservation of ████      We

 5   are still conducting our investigation.  The size we are

 6   dealing with is immense.

 7             THE COURT:  Ms. Trebicka -- Ms. Trebicka, we are done

 8   with field preservation on ████

 9             MS. TREBICKA:  I understand, Your Honor.  I need to

10   make a record, though, in case we need to come back to this

11   issue once we have our arms wrapped around what the court order

12   actually means and we may raise it with you again.

13             THE COURT:  Court is in recess.

14                  (Recess taken at 11:19 a.m.)

15                  (Proceedings resumed at 12:05 p.m.)

16             THE CLERK:  Please come to order.  Court is back in

17   session.

18             THE COURT:  All right.  Thank you-all for your

19   patience.  That was a little bit longer than 20 minutes, but I

20   did want to go back and be sure I had the orders firmly in

21   hand.

22        Okay.  Beginning with Brown, the first still remaining

23   issue I had was with regards to ████          data source

24   whether the order was directed at a -- at the log or dashboard.

25   And, Mr. Mao, I believe you had identified the specific log
```

```
 1   that had the two bits at issue; is that correct?
 2            THE CLERK:  Your Honor, may I interrupt for a moment?
 3   I'm sorry.  Mr. Brush went outside the meeting so he has yet to
 4   join back.  I'm waiting for him to rejoin.
 5            THE COURT:  Okay.  Is he in the waiting room?
 6            THE CLERK:  Not yet.
 7            THE COURT:  All right.  Hang on right there a moment,
 8   please.  Let's be sure he is --
 9            MR. SCHMIDT:  I am on the line, Your Honor.
10            THE COURT:  Yes, Mr. Schmidt, thank you.  If you can
11   also reach out to Mr. Brush just to be sure he's aware -- oh,
12   there he is in the waiting room.
13            THE CLERK:  Yes.  I'm admitting him now.  Thank you.
14            THE COURT:  All right.  The wonders of technology.
15                        (Pause in proceedings.)
16            THE COURT:  All right.  Mr. Brush, are you -- I don't
17   have you on the screen.  You are --
18            MR. BRUSH:  I am here, Judge.
19            THE COURT:  Thank you.  All right, good.  All right.
20   We were just starting with          And I had asked, Mr. Mao,
21   had you identified a log that had the (inaudible); is that
22   correct?
23            MR. MAO:  Judge, it was Dr. Sadowski of Google who had
24   identified a number of logs that had the is chrome incognito --
25            THE COURT:  No, I'm talking about the              I
```

1    thought there was one log that had the bits.

2           MR. MAO:  I believe that we identify a number of those

3    ████████████ which have the bits, and we were only told for the

4    first time now that the dashboard, in which Google is proposing

5    to be preserved, does not contain the aggregated data on that

6    bit.

7           Sorry, that's -- that's the best I can answer that

8    question because, if you recall, Judge, we don't have anything

9    for that.

10          THE COURT:  All right.

11          MR. MAO:  We were only revealed that after discovery

12   was closed.

13          THE COURT:  All right.  The ████████████████████ that

14   reflect the two bits at issue -- and by that, I mean the bit

15   that Google identified in its submission -- let me just get my

16   Brown stack here -- which was the -- is chrome non incognito

17   mode field as well as the bit that was identified in the Mao

18   declaration in response to Google's submission, which is the is

19   chrome incognito -- incognito detection bit, those logs are

20   subject to the sampling order.

21          That is the appropriate reading.  That was certainly the

22   intent behind the order and the appropriate reading.

23          It is not merely a dashboard preservation.  It is a log

24   and subject to sampling.  I will extend that time to the -- to

25   the October 28 deadline.  As I'm clarifying, which I don't

1  believe the order needs clarification but I will clarify.  I

2  want it to be clear.  It is logs, not -- not just dashboard.

3       The second open issue in Brown was with regards to the

4  GAIA ██ and DBL██ databases.  The request was for an

5  extension -- a three-month extension to October 28th with -- on

6  the representation that most of the data -- I believe, the

7  phrase was "vast majority of data" -- was retained for ██

8  ██████ so there would not be a loss of data from █████████

9  ████████████.

10      I do appreciate that the ████████ window shifts, but we

11  are again not going to let the search for perfect interfere

12  with good.  And that will be my order.  I will grant the

13  extension based on the representation as to the GAIA ██ and

14  double ██ sampling in the Brown case.

15      Mr. Mao?

16           **MR. MAO:**  Yes.

17           **THE COURT:**  It better be key.

18           **MR. MAO:**  Just really quickly and it is key because

19  there is some parallel discussion between █████████████  in the

20  way in which -- that the -- the current solution being

21  implemented is being proposed.  It sounds like there is some

22  truncating of fields.

23      As Mr. Berntson -- sorry -- as Dr. Berntson had just

24  explained, ██ contains third-party targeting, so I want to just

25  make sure --

1        **THE COURT:**  I understand, Mr. Mao.  I understand.  And

2   I got the difference but this is what we're doing.

3        **MR. MAO:**  Right.  So my question, Judge, is simply

4   that in the truncation of whatever they are preserving, we just

5   want to make sure that the third-party IDs are being preserved.

6        **THE COURT:**  Mr. Mao.

7        **MR. MAO:**  Sorry.

8        **THE COURT:**  We are talking about deadlines.

9        **MR. MAO:**  Yes.

10        **THE COURT:**  I ordered a deadline, and the preservation

11   will comply with the order as drafted.

12        **MR. MAO:**  Thank you.

13        **THE COURT:**  Okay.  There is no deviation from the

14   order.  I think that is clear to everybody.

15        All right.  Moving to Calhoun.

16        **MS. TREBICKA:**  Your Honor, before we move on, I

17   misspoke on the record earlier about the R&R Index of a -- of

18   two display ads, logs in Brown.  I can correct that now.

19        I believe it is likely no longer an issue because we are

20   committing to preserve the shortfall between July 30th and when

21   the preservation kicks off, but I just wanted to make sure that

22   looking back at the transcript, you weren't -- I wasn't causing

23   confusion.

24        **THE COURT:**  You had identified the R&R Index logs

25   Number 5 and Number 25.  Is that what you are referring to?

1           MS. TREBICKA:  Exactly, Your Honor.

2           THE COURT:  And your correction is?

3           MS. TREBICKA:  It is R&R Index 2 and 21.

4           THE COURT:  Two and 21.  Okay.

5           MS. TREBICKA:  Thank you.

6           THE COURT:  Heaven forbid anyone is ever going back to

7     parse that and we are not moving forward, but correction

8     stands.

9           All right.  Moving to Calhoun, the first issue was the

10    identification of all field names from data sources from which

11    data is to be preserved.  That is very clear in my order.

12          And Plaintiffs had raised it because they had some concern

13    that not all field names had been provided by the deadline.

14          Based on our discussion here today, the submissions of the

15    parties, and the discussion in court today, I think it is

16    reasonable to require that the fields be identified at the time

17    that the data source -- that sampling from the data source

18    begins, that sampling begins.

19          So for all data sources for which sampling is already

20    under way, those field names need to be provided immediately,

21    immediately.

22          And for those that will be -- we have some implementation

23    dates and sampling dates that roll out in August -- we have

24    several on August 29th but we have a few that are here in the

25    near term -- those field names will be identified on those same

 1    deadlines.

 2        All right.  That is the deadline for implementation is the

 3    deadline for identification of field names.  And in a couple of

 4    instances we have some dates for data sources that are set far,

 5    far out.  And I appreciate those aren't logs; but whatever data

 6    is being pulled from; that is, if they are columns, those will

 7    be identified; and if there are fields in those columns, those

 8    will be identified.  All right.  The order will be complied

 9    with as written.

10        All right.  That brings us to the next open issue -- oh,

11    yeah -- no -- with regards to addressing Plaintiffs' late --

12    recent submission regarding a sync state clarification, Google

13    will have a response to the Court today.

14        With regards to the ████████████████ sampling,

15    Ms. Trebicka, you wanted an opportunity to circle back to your

16    team that you could confirm that there is no data loss from

17    July 30th to the on-track date of August 12th.  Have you been

18    able to do that?

19        **MS. TREBICKA:**  Your Honor, I have additional

20    information.  The -- for certain of the ███████████, the --

21    the retention period is such that a maximum of ██████ events

22    are retained per user.  It is not a time -- a date limitation

23    but rather an event limitation.

24        If that event is reached -- event number is reached with a

25    ██████ first event, the very first one no matter what the

 1   date, will be deleted.

 2        That means that for those users who have more than ███████

 3   events on July 30th, whenever our implementation begins, there

 4   is a window where events may be deleted.

 5        However, we have done due diligence into this issue.  And

 6   what I can represent on the basis of that due diligence is that

 7   for the vast majority of users that will not be an issue.

 8        For those users for whom it will be an issue, if they have

 9   ███████  events, it means that they are either spam users or bot

10   users.

11        I am representing to you what our due diligence has found.

12   And our discovery attorney from Google, Toni Baker, is on; and

13   she may be able to provide more detail because I bet Your Honor

14   may have questions on this issue.

15        **THE COURT:**  Okay.  It is a relatively modest request

16   for extension.  I do have Google's representation on the record

17   here today that implementation will be under way on

18   August 12th.  So I'm going to grant the extension

19   notwithstanding the nature of the ████████ data retention.

20        All right.  Let's move to the ████████ sampling.  We had a

21   very helpful discussion around this with input from both sides

22   as well as input from Google with the discussion of using

23   snapshot.

24        So let me get Google's representation specifically which

25   is, excuse me, Google is taking annual full snapshots of the

1    ██████████ tables which are identified in the Court's

2    preservation order with daily granularity, and Google makes the

3    representation that that is overinclusive of the data.

4        Plaintiffs have -- are amenable to that.  They have

5    requested the snapshots be taken monthly.  I'm going to order

6    that those snapshots be taken quarterly, quarterly.

7        And the order is amended as to the ██████ sampling to

8    allow for the taking of snapshots as we've discussed here.

9    Those will be quarterly snapshots of the ██████████ tables

10   with daily granularity.

11       All right.  That brings us to, in Calhoun, the sampling

12   for the GAIA ██████ ZWBK ███████ GAIA █, DBL ███ and ZWBK█

13   data sources, excuse me; and I am going to adopt the same

14   approach as we did in Brown for the███ data sources.

15       The deadline for implementation based upon Google's

16   representations here today on the record will be October 28th,

17   October 28th.  And the -- the data from July 30th to

18   October 28th will be preserved as well.

19       All right.  And last but not least, that brings us to the

20   GAIA ████████ and ZWBK ███████ request, the full preservation of

21   certain fields; and this ties to Google's request for

22   clarification which was to not use the identifiers -- let me

23   get the language exactly because I don't think my

24   paraphrasing -- did not do it justice -- but the -- the Google

25   request for clarification was to remove the GAIA identifier

1    from the list of data parameters triggering preservation of the

2    GAIA ███████ columns and similarly to remove the ZWBK identifier

3    from the list of the data parameters triggering preservation of

4    the ZWBK ██████ columns.

5         Based on, again, the representations from Google here

6    today and the -- in particular the technical experts, who spoke

7    to this, both Dr. Berntson and Mr. Quaid, I am going to grant

8    the request for clarification.

9         And with that clarification, the implementation deadline

10   for the full preservation of the GAIA ██████ and ZWBK ███████

11   fields will be extended to October 28th with the same -- on the

12   same basis of no loss of data from July 30th to October 28th

13   for the vast majority of the entries.

14        And I believe that that addresses all of the open issues.

15   I will reiterate that the preservation order is quite clear on

16   the preservation of all mapping tables in their entirety.  And

17   that remains the order.  "All" means "all."  Okay.  I think

18   that wraps everything up.

19             MR. SCHAPIRO:  Your Honor --

20             THE COURT:  And we will turn to the most recent and

21   one can only hope, final request for clarification regarding

22   sync state, which the Court will look at when it has heard from

23   Google.

24             MR. SCHAPIRO:  Your Honor, one last --

25             THE COURT:  Closing comment.

1       **MR. SCHAPIRO:**  One last thing.  Your Honor, said "all"

2 means "all."  We understand that.  The part we don't understand

3 is what "mapping tables" means.  And we just want to make sure

4 that we are in compliance with your order, and I would hand off

5 to either one of the engineers or Mr. Ansorge because we were

6 at the break discussing some questions we have about that.

7       **THE COURT:**  Mr. Ansorge?

8       **MR. ANSORGE:**  Yes, Your Honor, thank you for your

9 patience today.

10     You had asked us to prior to identify to you where we see

11 a problem area before it arises, to not wait until the last

12 moment.  And here we see a very pronounced one.

13     Mr. Mao had earlier referred to an interrogatory that was

14 about matching tables, and the example that was given was one

15 about GAIA-keyed serving.  And we had objected saying that

16 GAIA-keyed serving was not at issue and was outside of the

17 limit of the interrogatories.

18     When Plaintiffs in the Brown matter asked for mapping

19 tables and discussed those -- and they asked Dr. Berntson at

20 his deposition about it as well -- there was a very clear focus

21 on the ███████████████ at the table.  That is a specific

22 one Plaintiffs had requested.

23     Our understanding of your order within that context was

24 that mapping tables refer to this specific table.  Our concern

25 at this stage is that "mapping tables" isn't clearly defined by

 1   the Court or the parties in this case.

 2       We believe that Plaintiffs would like to have it as

 3   broadly as possible just based on the submissions of both

 4   Calhoun and Brown.  And what we would ask is to figure out if

 5   we can work with you to come up with some kind of limitation on

 6   what the mapping table would mean.

 7       It's a -- it strikes us as a definitional problem, and we

 8   want to work with you; but our challenge, which I hope you

 9   understand, is that it -- we are concerned we will have to

10   somehow prove a negative to be able to comply with the order.

11   So when there is -- specific sources are called out, we know

12   how to preserve those.

13       With the statement such as "mapping tables" and indicating

14   that it is broader than the table that we have been preserving,

15   we are left in a situation where we are not sure what that is

16   being referred to, Your Honor; and --

17       **THE COURT:**  All right.  Let me just look this up very

18   quickly.

19                    (Pause in proceedings.)

20       **THE COURT:**  It's not there.  Mr. Mao, did you want to

21   be heard briefly or who?

22       **MR. MAO:**  Yes.  So, first of all, when we initially

23   used the matching table term, Your Honor, in Interrogatory 11,

24   you can see there was a dispute on that.  And we absolutely

25   required and requested the explanation by Google, which is

1   where are all the tables that would match one ID with another.

2   Okay.

3                    THE COURT:   Okay.

4                    MR. MAO:   We were actually corrected on record in the

5   deposition by Mr. Lao, who has since been stricken, saying that

6   that is a matching table.   That's the way Google used that

7   term.   I believe that that is the anthology of how that became

8   a mapping table.

9                    THE COURT:   Okay.

10                   MR. MAO:   Yeah.   So it's the same thing.   I would I

11  don't think the parties have ever misunderstood to be

12  differently.

13                   THE COURT:   All right.   Mr. Straite or Mr. Barnes.

14                   MR. BARNES:   Yes, Your Honor.   I think if you look at

15  our response -- just give you an idea, we have lots of

16  documents produced by Google that talk about other mappings.

17        Here is a direct quote (as read:) "We have a lot of

18  mappings between identifiers; Biscotti to GAIA, IDFA to

19  Biscotti, IDFA to GAIA."

20        There is another quote (as read:) "Examples of identifier

21  mapping and metadata that rarely change includes IEFA /AdID

22  Biscotti to GAIA and IDFA AdID PPID to Biscotti."

23        And then we have documents that talk about inside the

24  ████████████████████   mappings from Biscotti to GAIA ID and

25  from device ID to Biscotti ID.

 1        **THE COURT:**  Right.  Let me interrupt you there,

 2   Mr. Barnes, you are reminding me of the language that was in

 3   the parties' respective discussions on this point back in the

 4   objection exchange phase.

 5        And the language that the Court found determinative was

 6   that for the -- the mapping tables are preserved in the

 7   ordinary course, and I took that as not a -- not a big ask

 8   and -- a mapping table is -- is what it is.  I mean, it is

 9   mapping the IDs.  We have been through this in discussion.

10        I think -- it's not limited to the one that was discussed

11   in deposition.  It is the mapping tables that have been --

12   that -- you know, that relate to the logs and fields that --

13   that the parties have worked with so intimately over these last

14   18 months.

15        I don't think it can be any more clear.  I have heard the

16   objections.  I have sustained the objections.  I appreciate the

17   request for "Well, what is it; we don't want to get in

18   trouble."

19        It's a mapping table and I don't have a complete list.

20   And, you know, if you want to approach Plaintiffs with a

21   complete list, but the rule is -- the order is to preserve them

22   all.

23        **MR. ANSORGE:**  Yes, and when -- we understand the

24   order.  One minor follow-up, Your Honor, on the examples that

25   Mr. Barnes was listing, it is our understanding that IDs that

```
 1   are used in mobile advertising are not at issue and not passed

 2   through the dataflow at issue.

 3        So the browser communications that we are discussing, they

 4   work with cookies; and there is -- if there are separate

 5   mapping tables that are used by -- say, Google may support

 6   advertising that is shown on an app on a phone, that's a

 7   third-party app, that would strike us as outside this case.

 8        So it would be an example where I believe everything he

 9   was listing is not something that is relevant to the direct

10   dataflow at issue in this case, and I think he was also

11   providing examples of early ███ design documents where there

12   are a lot of ideas about things that would be implemented that

13   weren't ultimately implemented.

14        And that puts us in this bind where Plaintiffs have --

15   obviously have a mental list of mappings that exist but they

16   have not specified them by name or told where or what exactly

17   we should be targeting.  There's a general description.

18        THE COURT:  Well, you-all should have had that

19   discussion through the meet-and-confer process.  And, you know,

20   we are -- the ship has sailed.  You know, we have had a

21   discussion around this in great detail.

22        And, you know, I'm always hesitant to -- I'm not going to

23   say it is the relevant mapping tables because that's going to

24   put you right back where you are, which is Google's position

25   that it is only one table.  It's not clearly.  It is clearly
```

1   multiple tables because we have got it -- we have got a lot of

2   data sources.  We have got a lot of IDs and --

3          MR. SCHAPIRO:  So how about this --

4          THE COURT:  I'm going to go out here on a limb and say

5   it is going to be more than one.

6          MR. SCHAPIRO:  So can we just say -- I think we are

7   okay.  We are going to do our best in good faith.  We think we

8   understand it.  And just if a week from now or two weeks from

9   now the Plaintiffs come back and say "No, Judge, they are

10  flouting your order," I'm saying now on the record we have

11  asked a couple of times here.  We think we get it, and I just

12  want our good faith to be noted because I have lived this case.

13         THE COURT:  As have we all, Mr. Schapiro, as have we

14  all.

15     I think -- the order is clear.  It's not limited to just

16  one table.  The mapping tables -- if you would need a mapping

17  table to work with any of the data that is being exchanged in

18  this case, that table has to be preserved.  Okay.  All right.

19         MR. BARNES:  Your Honor --

20         THE COURT:  All right.  Yes?

21         MR. BARNES:  I'm concerned that once you reiterate

22  that you are not allowing Google to decide what is relevant

23  with that last comment because I know you didn't intend to, but

24  I know the way these things go.  They parse every comment you

25  make and say:  "Oh, she said "all;" but then at the end she

1   said the data in this case."  I'm sorry to jump in, Your Honor,

2   but --

3        THE COURT:  Mr. Barnes, I think my order again is

4   perfectly clear.

5        MR. BARNES:  Thank you.  I do too.

6        THE COURT:  If it doesn't relate to the data in this

7   case, it is never going to come up.  If it relates to the data

8   in this case, it does.

9        MR. BARNES:  Well, Your Honor, on that point,

10  Mr. Ansorge just gave you an example of things they are

11  claiming does not relate to the data in this case that

12  absolutely does relate to the data in this case.  The issue --

13       THE COURT:  All right, Mr. Barnes.  That's fine.

14  That's fine.  It's all mapping tables.  Okay.

15       MR. BARNES:  Thank you.

16       THE COURT:  I can't make it any more clear.  The order

17  is written.  Mr. Brush, did you want to be heard?

18                    (No response.)

19       THE COURT:  Oh, you are on mute, sir.

20       MR. BRUSH:  Yeah.  And I think the Defense Counsel is

21  aware that if there is potentially relevant data that is

22  subject to the case, they are under an obligation to preserve

23  it.  I mean, we don't really have to get overly complicated in

24  the weeds on that.  And there is recourse for Plaintiffs if

25  they don't.  So, I think we have to strike that balance.

1    **THE COURT:**  Thank you.  All mapping tables preserved.

2   All right.  That concludes this long but very productive

3   session.  I will issue an order reflecting the rulings.  I have

4   made them on the record.

5        And again, I want to thank everyone for their preparation

6   today -- their preparation, their efforts -- and I especially

7   appreciate the Google representatives who spoke on the record

8   and were of assistance to the Court today.  Thank you.

9    **MS. WEAVER:**  Your Honor, if I might, there is an issue

10   regarding the sanctions hearing and whether or not it should be

11   sealed.  The hearing took set for August 11th.  The parties are

12   in opposition on the matter.  I know it has been a long hearing

13   and perhaps you don't want to hear argument now.

14    **THE COURT:**  I sure don't and neither do you.  You

15   don't want to make it now.  I told the parties my direction was

16   to work together to see if you could find common ground that

17   would enable it to go forward without sealing.

18        So, you have either worked it out or you have not.  And if

19   you haven't, someone will make a request to seal it and you

20   will let me know why.  All right.

21    **MS. WEAVER:**  Thank you, Your Honor.

22    **MR. MAO:**  Thank you, Judge.

23    **MR. SCHAPIRO:**  Thank you, Your Honor.

24        (Proceedings adjourned at 12:34 p.m.)

25

1
2                    **CERTIFICATE OF REPORTER**

3          I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the official

5   electronic sound recording provided to me by the U.S. District

6   Court, Northern District of California, of the proceedings

7   taken on the date and time previously stated in the

8   above-entitled matter.

9          I further certify that I am neither counsel for, related

10  to, nor employed by any of the parties to the action in which

11  this proceeding was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15  DATE:    Friday, August 12, 2022

16

17

18
                        _Marla Knox_
19      _____

20              Marla F. Knox, RPR, CRR, RMR
                United States Court Reporter
21

22

23

24

25