# Plaintiffs' Motion to Exclude Portions of Rebuttal Expert Report of Konstantinos Psounis

# Redacted Version of Document Sought to be Sealed

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No.
238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other similarly
situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No.: 4:20-cv-03664-YGR-SVK

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION TO EXCLUDE PORTIONS
OF THE REBUTTAL EXPERT REPORT
OF KONSTANTINOS PSOUNIS**

Judge: Hon. Yvonne Gonzalez Rogers
Date: September 27, 2022
Time: 2:00 p.m.
Location: Courtroom 1 – 4th Floor

1

## **<u>TABLE OF CONTENTS</u>**

2

I.    INTRODUCTION.................................................................................................. 2

II.   BACKGROUND ................................................................................................. 5

      A.    The Special Master Process, and Mr. Hochman's Opinions About the Data .. 5

      B.    While Ignoring the Data that Google Actually Produced, Dr. Psounis Purports
            to Rebut Mr. Hochman's Opinions about Google's Data ................................ 7

III.  LEGAL STANDARD ....................................................................................... 10

IV.   ARGUMENT .................................................................................................... 11

      A.    Dr. Psounis' Opinions Should Be Excluded Because He Did Not Employ Any
            Methodology to Evaluate the Data He Opines About.................................... 11

      B.    Dr. Psounis' Opinions Should Be Excluded Because <mark>Google's Lawyers
            Performed His (Limited) Analyses</mark> ................................................................ 15

V.    CONCLUSION ................................................................................................. 16

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Baker v. FirstCom Music,*
  2018 WL 2572725 (C.D. Cal. Mar. 27, 2018) .................................................................4, 16

5

6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ...........................................................................................1, 4, 10, 11

7

*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011)...............................................................................................10

8

9

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) .......................................................................................................4, 15

10

*Grodzitsky v. Am. Honda Motor Co.,*
  957 F.3d 979 (9th Cir. 2020) ..............................................................................................13

11

12

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999) ...........................................................................................................11

13

*Lyman v. St. Jude Med. S.C., Inc.,*
  580 F. Supp. 2d 719 (E.D. Wis. 2008) ...............................................................................16

14

15

*Otto v. LeMahieu,*
  2021 WL 1615311 (N.D. Cal. Apr. 26, 2021) (Gonzalez Rogers, J.)............................11, 13

16

17

*People v. Kinder Morgan Energy Partners, L.P.,*
  159 F. Supp. 3d 1182 (S.D. Cal. 2016) ..............................................................................12

18

*Phillips Med. Sys. Intern. B.V. v. Bruetman,*
  8 F.3d 600 (7th Cir. 1993) .............................................................................................15-16

19

20

*In re Roundup Prod. Liab. Litig.,*
  390 F. Supp. 3d 1102 (N.D. Cal. 2018)...............................................................................14

21

22

*Shelton v. Air & Liquid Sys. Corp.,*
  2022 WL 2712381 (N.D. Cal. July 11, 2022) (Gonzalez, Rogers, J.)....................10, 11, 13

23

*Siqueiros v. General Motors,*
  2022 WL 74182 (N.D. Cal. Jan. 7, 2022).......................................................................14-15

24

25

*Sommerfield v. City of Chicago,*
  254 F.R.D. 317 (N.D. Ill. 2008) .........................................................................................16

26

27

28

*Testone v. Barlean's Organic Oils*,
    2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ....................................................................10

*In re TMI Litig.,*
    193 F.3d 613 (3d Cir. 1999) ....................................................................15

*Wadler v. Bio-Rad Labs., Inc.*,
    2016 WL 6070530 (N.D. Cal. Oct. 17, 2016) ....................................................................12

*West v. California Servs. Bureau, Inc.*,
    323 F.R.D. 295 (N.D. Cal. 2017) ....................................................................2

*Young v. Cree Inc.*,
    2021 WL 292549 (N.D. Cal. Jan. 28, 2021) (Gonzalez Rogers, J.) ....................................................................15

**Rules**

Civil Local Rule 7 ....................................................................1

Fed. R. Evid. 702 ....................................................................1, 10

Fed. R. Evid. 703 ....................................................................15

**Treatises**

8A Fed. Prac. & Proc. Civ. § 2031.2 n.16 (3d ed.) ....................................................................12

PLEASE TAKE NOTICE that on September 27, 2022,[1] at 2:00 p.m., the undersigned will appear before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California to move the Court to exclude certain opinions within the June 7, 2022 expert rebuttal report of Konstantinos Psounis, which Defendant Google LLC ("Google") submitted with its opposition to Plaintiffs' Motion for Class Certification. *See* Dkt. 666-21 (June 7, 2022 Expert Report of Konstantinos Psounis, or "Dr. Psounis Report").

This Motion to Exclude is made under Federal Rule of Evidence 702, Civil Local Rule 7, and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration of Mark Mao dated August 19, 2022 and accompanying exhibits, all matters of which the Court may take judicial notice, other pleadings and papers on file in this action, and other written or oral argument that Plaintiffs may present to the Court.

## ISSUE TO BE DECIDED

Whether Dr. Psounis' Opinions 1 and 3 and 7-10 should be excluded as unreliable under Federal Rule of Evidence 702 and the standards articulated in *Daubert*.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court exclude Opinions Nos. 1 and 3 and 7-10 of the Dr. Psounis Report.

Dated: August 23, 2022

By:     /s/ *Mark Mao*

---

[1] The Court is already scheduled to hear Plaintiffs' motion for class certification (Dkt. 609) and Google's *Daubert* motions (Dkt. 662-64) on September 20, 2022. Plaintiffs are amenable to all of these motions being heard together, whether on September 20, or September 27.

## I.      INTRODUCTION

Google's rebuttal expert Dr. Konstantinos Psounis proffers six opinions purportedly "rebutting" Jonathan Hochman's expert opinions, which Mr. Hochman presented based on his review of private browsing data, log schemas, documents produced in this case, and the sworn testimony of Google employees. Google relies on those Psounis rebuttal opinions in its Opposition to Plaintiffs' Motion for Class Certification, arguing that Plaintiffs have not met Rule 23(b)(3)'s superiority requirement because, according to Google, its data cannot be used to "readily identify class members." Dkt. 665 at 25.

Setting aside that Google's argument is legally irrelevant in the Ninth Circuit,[2] and setting aside that Google is already precluded from making arguments about data it deleted,[3] some of Dr. Psounis' opinions should be excluded because Dr. Psounis failed to employ any scientific methodology using the actual data produced in this data privacy case or otherwise available to Google. Instead, Dr. Psounis makes sweeping and unsupported opinions about what cannot be done with respect to class member identification, based on a comically limited analysis he admittedly did not do himself and was instead conducted by one of the Quinn Emanuel attorneys appearing before this Court (vouched for by another Quinn Emanuel attorney). None of this complies with the requirements for admissible expert testimony.

As part of the Court-ordered Special Master process (*see* Dkt. 331), Google over a seven-month period identified ▇ relevant data sources, and Plaintiffs tested over ▇ of those data

---

[2] Plaintiffs' motion for class certification cited numerous cases establishing that (1) there is no ascertainability requirement in the Ninth Circuit, (2) self-certification is sufficient, and (3) it is irrelevant whether the defendant's records can be used to confirm class membership. *E.g.*, *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 306 (N.D. Cal. 2017) (Gonzalez Rogers, J.); *see also* Dkt. 609 at 21-22 (citing additional cases).

[3] To account for Google's refusal to preserve all private browsing data, the Court issued a preclusion order providing: "Google may not use the fact that only sampled data, not complete data, is available to challenge class certification generally or attestations by individuals that they are members of the class." Dkt. 587 at 7.

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

sources.[4] ▓▓▓▓▓▓ of data were generated. Mr. Hochman examined that data, including by running independent tests detailed in his reports. Based on that testing, Mr. Hochman detailed how he (1) accurately detected Incognito traffic, and (2) linked such Incognito traffic to specific users' Google accounts for identification purposes. *See* Dkt. 608-12 ("Hochman Report") §§ VIII.F, VIII.H.

Instead of rebutting Mr. Hochman's analysis using a valid scientific approach, Dr. Psounis *entirely ignored* Mr. Hochman's data analysis. In fact, Dr. Psounis appears to have analyzed almost no data at all, did not study any log schemas, and admitted that his opinions did not rely on any fields provided during the Special Master process. He conducted no experiments to test the reliability of Mr. Hochman's analyses nor did he conduct any investigation into the myriad of information stored in Google logs to assess class identification. Instead, Dr. Psounis provided a cherry-picked (and flawed) rebuttal premised on signed-out private browsing data from only ***one out of the available*** ▓▓ ***data sources***:

| Data Sources Google Identified As Relevant through Special Master Process | Sources Tested by Hochman | Sources Tested by Psounis | Sources Selected by Psounis and Tested by Counsel |
|---|---|---|---|
| ███ | ███ | ███ | ██████ |

*See* Exh. A Data Sources Chart (chart showing data sources identified by Google, sources tested by Mr. Hochman and Dr. Psounis, and analysis rebutted by Dr. Psounis).

Even for the one data source chosen, Dr. Psounis did not conduct any of the analysis himself. Rather, at deposition Dr. Psounis admitted "***I had my counsel run the test for me.***" Exh. B Dr. Psounis Deposition at 55:8-9 (emphasis added).[5] Dr. Psounis claimed to not recall exactly

---

[4] As explained below, ▓▓ of these sources could not be tested because Google did not identify them until June 14, 2022—after the March 4 close of fact discovery—when Google was sanctioned and ordered to identify additional logs that contain Incognito detection bits. Dkt. 588.

[5] Dr. Psounis does not recall who this person is, and he is unsure whether she is qualified to conduct a data analysis. Exh. B Dr. Psounis Deposition at 172-75. Counsel for Google refused to clarify. *Id.*

1   who the person was, providing only a first name, and Google's counsel refused to provide any

2   information—instead repeatedly invoking the expert stipulation (Dkt. 272) and instructing Dr.

3   Psounis not to answer questions about that analysis. Dr. Psounis also conceded that "I wouldn't

4   know who and how you would decide if something is or is not relevant to this case," when he

5   was asked why he didn't request a full list of all relevant data sources. *Id*. at 108:20-22.

6        That Dr. Psounis did not conduct his own data analysis and instead relied on Google's

7   outside counsel to run (very limited) tests for him was not disclosed in his report. And after (1)

8   performing an extremely limited and flawed user interest profile analysis on the single source

9   selected for him (DBL  ), and (2) ignoring Mr. Hochman's thorough analysis of the actual

10  signed-out private browsing data produced in this case (which provides positive proof of

11  Incognito detection reliability and class member identification), Dr. Psounis now seeks to provide

12  sweeping rebuttal opinions about what can and cannot be done with Google's trove of private

13  browsing data. *E.g.*, Dr. Psounis Report Opinion 1 ("Mr. Hochman's opinion that users can be

14  readily identified from the data at issue is incorrect."). That opinion and other opinions like it

15  (Psounis Opinions 3, 7, 8, 9, and 10) should be excluded under *Daubert*.

16       "A court may conclude that there is simply too great an analytical gap between the data

17  and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The gap here is

18  a crater—Dr. Psounis completely ignored the data analysis he purports to rebut as a data scientist.

19  Moreover, Dr. Psounis did next to nothing to confirm the qualifications or work of Google's

20  outside lawyer who actually ran the test. Under *Daubert*, "experts are expected to verify the

21  reliability of the data underlying their conclusions independently instead of simply adopting the

22  representations of an interested party." *Baker v. FirstCom Music*, 2018 WL 2572725, at **5-6

23  (C.D. Cal. Mar. 27, 2018). Google and Dr. Psounis disregarded these rules. For these reasons,

24  the Court should exclude Dr. Psounis' rebuttal opinions as unreliable and improper.[6]

25

26

27  [6] Plaintiffs note, however, the pending motion for class certification should be granted
    irrespective of the Court's ruling on this motion. *See* Dkt 609.

28

II.     **BACKGROUND**

    A.      **The Special Master Process, and Mr. Hochman's Opinions About the Data**

    Plaintiffs have moved to certify two nationwide classes and a California subclass of Google accountholders, asserting seven claims arising out of Google's collection, storage and use of account holders' data even when they are signed out of their accounts, browsing in a private browsing mode, and visiting a non-Google website. *See* Dkt. 609. All of Plaintiffs' claims turn on Plaintiffs' form contract with Google, in which "Google promised Plaintiffs that using 'private browsing mode' would prevent Google from collecting Plaintiffs' data." Dkt. 363 at 21 (order denying motion to dismiss).

    Google has from the beginning of this case made clear that one of its principal arguments against class certification would be that the "identity of alleged class members . . . is not ascertainable." Dkt. 429-29 at 13 (Google's October 30, 2020, Responses & Objections to Requests for Production). Google now raises that argument in opposition to Plaintiffs' motion for class certification. *See* Dkt 665 at 22-24. Given Google's alleged defense, the Court on November 12, 2021 (with Special Master Brush's assistance) devised a data-production process to provide "Plaintiffs the tools to identify class members using Google's data." Dkt. 331 at 4.

    To that end, the Court ordered Google to provide a list of all data sources that had previously been searched and a declaration from a Google employee that, "[t]o the best of its knowledge, Google has provided a complete list of data sources that contain information *relevant* to Plaintiffs' claims." Dkt. 331 at 8 (emphasis added). Google was also required to provide full schemas for every source and identify all tools that could be used to search these sources, including instruction manuals for those tools. *Id*. at 9.

    In response to that order, Google selected ███ data sources (later increased to ███ data sources, as detailed below) to be part of the Special Master process. *See* Mao Decl. ¶ 3. With this process, Plaintiffs were permitted to submit search criteria to test against a portion of these logs on an iterative basis, amending their search criteria at each iteration based on the results of the prior search. *See* Dkt. 331 at 8-9. Google was required to produce all responsive data, the search

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

1   scripts it used to generate that data, and all schema. *See id.*

2       The process began in November 2021 and concluded in May 2022, with Google

3   identifying ▮ data sources and Plaintiffs selecting ▮ of those sources for searches, spanning

4   three iterative searches. *See* Mao Decl. ¶ 2. Of the ▮ sources Google identified, ▮ were

5   revealed just a few days before the close of fact discovery and within two weeks after the close

6   of fact discovery, when Plaintiffs finally uncovered the Incognito-detection bits that Google had

7   been concealing for over a year (and for which Google was ultimately sanctioned). *See* Dkt. 588

8   at 7, 21-24.

9       After analyzing the responsive data produced from Plaintiffs' three iterative searches, Mr.

10  Hochman reached the following opinions and conclusions (among others), relating to how

11  Google's records of private browsing data can be used to identify class members:

12         • "It is my opinion there are several ways to use Google's records to identify class
13           members. For example, for Class 1, the Chrome class, Google's records can be
            used to (1) identify Incognito traffic, and (2) link that Incognito traffic to users'
14           Google accounts or to users' accounts with non-Google websites." Hochman
            Report Opinion 22.

15         • "In Appendix H.11 and Appendix I, I discuss using x-client-data in ads logs to
            identify Incognito traffic and show that for data from the Second Iterative Search,
16           Incognito detection accuracy is 100%. Furthermore, Google's
17           'maybe_chrome_incognito' field is also 100% accurate." Hochman Report
            Appendix G ¶ 25.

18         • "The ▮ logs that contain the 'maybe_chrome_incognito' field as well as the ▮
19           ▮ logs containing 'incognito' detection fields contain identifiers that can be
            used to find logs containing the same identifiers that track and store the user's IP
20           address and User Agent. Accordingly, for any Google log entry where
21           maybe_chrome_incognito is equal to 'true,' the combination of identifiers and the
            IP address and user agent for that log entry can be used to identify class members."
22           Hochman Report ¶ 293.

23      Mr. Hochman served that report on April 15, 2022. Roughly one month later, this Court

24  issued an order sanctioning Google for concealing the three (currently known) Incognito

25  detection bits from Plaintiffs until just before (and after) the close of fact discovery. *See* Dkt.

26  588. As part of that order, Google was required to identify all other logs and data sources that

27  contain any Incognito detection bit, and on June 14, Google produced a declaration from Martin

28

1   Sramek identifying ███ additional logs containing Incognito bits. *See* Dkt. 614-2. Mr. Sramek

2   explained that these newly revealed logs were used by Google █████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   █████████████████████ Dkt. 614-2 ¶¶ 6-10. These ███ additional logs bring the total

7   number of relevant data sources that Google has now identified from ███ to ███. Because these

8   logs were only recently identified, Mr. Hochman was prevented from requesting that Google

9   produce data and schema from them.

### B. While Ignoring the Data that Google Actually Produced, Dr. Psounis Purports to Rebut Mr. Hochman's Opinions about Google's Data

Google's expert Dr. Psounis submitted a June 7, 2022 report (Dkt. 666-21) as a rebuttal to certain of Mr. Hochman's opinions. This motion to exclude focuses only on Psounis Opinions 1, 3, and 7-10, where Dr. Psounis purports to rebut the opinions that Mr. Hochman rendered based on his analysis of the data produced by Google.[7] Each of these Psounis opinions amount to a far-reaching conclusion about what can and cannot be done with Google's data with respect to class member identification.

- "Opinion 1: Mr. Hochman's Opinion That Users Can Be Readily Identified From The Data At Issue (#18) Is Incorrect"

- "Opinion 3: Mr. Hochman's Opinions On 'Private Browsing Profiles,' Server-Side Processes, And Data Joinability (#10, 18, 19, 20) Are Inaccurate"

- "Opinion 7: Mr. Hochman's Proposal To Identify Class I (Chrome Class) (#22) Is Unreasonable and Unreliable"

- "Opinion 8: Mr. Hochman's Opinion That The 'maybe_chrome_incognito' Bit Reliably Detects Incognito Traffic (#23) Is Incorrect"

- "Opinion 9: Mr. Hochman's Proposal To Identify Class II (#22) Is Unreasonable And Unreliable"

- "Opinion 10: Mr. Hochman's Proposed Methods For Identifying Class Members

---

[7] Dr. Psounis also provided rebuttal opinions to another of Plaintiffs' experts, Bruce Schneier. Plaintiffs are not at this time seeking to exclude Dr. Psounis' rebuttal opinions addressing Professor Schneier.

(#22) Do Not–And Cannot–Account For Shared Devices Or Accounts"

The problem with each of these opinions is that (unlike Mr. Hochman) Dr. Psounis did not base them on a scientific review or analysis of the log schema and data produced under the Special Master process. And for the limited testing that was done on signed-out private browsing data—using data from just ▉ of the ▉ sources disclosed through the Special Master process—Dr. Psounis relied entirely on an attorney representing Google from Quinn Emmanuel to conduct his test (which he did not disclose in his report). Exh. B Dr. Psounis Deposition at 172:1-18.[8] For his only other analysis, which did not even assess signed-out private browsing data,[9] Dr. Psounis likewise relied on the same Quinn Emmanuel attorney.

Rather than conduct actual data analysis, Dr. Psounis focused on Google's litigation-driven interpretation of its own policies and hypothetical scenarios. For example, to rebut Mr. Hochman's Opinion 18 that "information tied to a user's Google account could be linked to the same individual's private browsing information," Dr. Psounis noted that Google "implements policies and technical controls to prevent" private browsing data from being joined with users' Google accounts.[10] Dr. Psounis Report ¶ 44. Similarly, to rebut Mr. Hochman's Opinion 23 that "Google's 'maybe_chrome_incognito' bit reliably identifies Incognito traffic," Dr. Psounis surmises there could be "false positives" in edge case scenarios without providing any testing or analyses to quantify Incognito detection reliability. Id. ¶ 143. Given that Mr. Hochman has

---

[8] Dr. Psounis is unsure who this person is, simply referring to her by her first name (which Plaintiffs are out of respect not including in this filing). Exh. B Psounis Deposition at 172-75. He was also unsure of her technical qualifications to run the tests for him, relying instead on the assurances of another Quinn Emanual attorney, whose name Plaintiffs are also omitting from this filing. Id.

[9] This analysis was limited to IP addresses and user agents in the named Plaintiffs' preserved authenticated data—that is, data captured while Plaintiffs were signed in (which is outside the scope of the class definition). Dr. Psounis Report ¶ 155 & Dr. Psounis Report App. F. Mr. Hochman, by contrast, analyzed both signed-in data and signed-out private browsing data, and rendered opinions about the extent to which that analysis could be accurately used to identify class members.

[10] Even those who are not data scientists would have to wonder why such policies are necessary if people cannot be reidentified through Google's data.

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

positively demonstrated class member identification using actual data produced by Google, Dr.
Psounis' citation of selected Google policy documents and testimony cannot scientifically prove
the negative.

Finally, ***Dr. Psounis completely ignored Mr. Hochman's assessment of the actual data
produced in the case***, where Mr. Hochman was able to identify Incognito traffic with 100%
accuracy for over ▮▮▮▮ entries using Google's own internal Incognito detection mechanisms,
including the maybe_chrome_incognito detection bit. Hochman Report Appendix G ¶ 25; *see
also* Hochman Report Appendix I (containing detailed spreadsheet summarizing analysis of those
over ▮▮▮ records). Dr. Psounis likewise ignored Mr. Hochman's analysis where he showed
with multiple examples that he was able to easily link such private browsing data with users'
Google accounts or third-party accounts. *Id.* ¶¶ 234, 236 246-47 (providing at least ▮▮▮
examples where Mr. Hochman was able to join a named Plaintiffs' private browsing data with
that person's Google or third-party account data).

The reasons for Dr. Psounis' shortcomings became even more clear at his deposition:

- Despite being proffered as a data scientist, he does not know what are and what are not relevant data sources in the case (Exh. B Dr. Psounis Deposition at 108-09);

- He did not test Google's systems or ask for access;[11]

- He did not rely on any analysis of fields from the Special Master process;[12]

- He did not interview or have any interactions with Google employees (*id.* at 20: 12-18); and

- He did not do his own testing of what little Google-produced data he did look at, and instead relied on a Quinn Emmanuel lawyer representing Google in this case to

---

[11] Specifically, at deposition, Counsel for Plaintiff asked Dr. Psounis: "[Y]ou yourself agree, you didn't actually go in to test Google systems; right?" Dr. Psounis responded "[r]ight." Exh. B Dr. Psounis Deposition at 101:6-9.

[12] Further, Counsel for Google asked Dr. Psounis: "Did you rely on any fields provided to the special master in forming any of the opinions in your report?" Dr. Psounis answered, "No, I did not." *Id.* at 232: 21-24.

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

1    conduct that testing, whom he identified by her first name, and was unsure whether

2    she is even qualified to conduct data analyses. *Id.* at 172-75.

3          Dr. Psounis now seeks to offer broad rebuttal opinions addressing what can and cannot

4    be done with the entirety of Google's data and data systems, despite (1) having reviewed an

5    extremely limited dataset—just ▮ of the ▮ sources that Google has deemed relevant, and (2)

6    ignoring the entirety of Mr. Hochman's data analysis, which showed through examples how class

7    members can be identified using Google's data. Incredibly, Dr. Psounis claims to know what can

8    and cannot be done with respect to identifying users through Google's data despite the fact that

9    Google recently filed a *second* declaration of Mr. Sramek, who this time averred in a sworn

10   statement that Google cannot fully account for "the data sources at Google in which any field is

11   used by any team to infer Incognito browsers state in any form." August 18, 2022 Sramek Decl.

12   ¶ 7 (Dkt. 695-4). Indeed, Mr. Sramek stated it would take Google, the largest data tracking

13   company in the world "multiple months-long investigations" to figure out where Incognito data

14   goes once it is collected (in addition to the two-plus years of discovery the parties have engaged

15   in). *Id.* Dr. Psounis has simply not done the work to support his opinions.

16   **III.    LEGAL STANDARD**

17         "The Ninth Circuit has held that expert evidence offered at the class certification stage

18   must meet the standard of relevance and reliability articulated in *Daubert v. Merrell Dow*

19   *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Testone v. Barlean's Organic Oils, LLC*, 2021 WL

20   4438391, at *2 (S.D. Cal. Sept. 28, 2021) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

21   982 (9th Cir. 2011)). Expert testimony is admissible only if (1) "the expert's scientific, technical,

22   or other specialized knowledge will help the trier of fact to understand the evidence or to

23   determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the

24   testimony is the product of reliable principles and methods;" and (4) "the expert has reliably

25   applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "The proponent

26   of expert testimony has the burden of proving admissibility in accordance with Rule 702."

27   *Shelton v. Air & Liquid Sys. Corp.*, 2022 WL 2712381, at *1 (N.D. Cal. July 11, 2022) (Gonzalez,

28

Rogers, J.).

**IV. ARGUMENT**

> **A. Dr. Psounis' Opinions Should Be Excluded Because He Did Not Employ Any Methodology to Evaluate the Data He Opines About**

Dr. Psounis' Opinions 1, 3, and 7-10 are inadmissible under *Daubert* because, in reaching those rebuttal opinions, Dr. Psounis failed to "employ any method, much less one scientific or reliable." *Shelton*, 2022 WL 2712381, at *4 (granting motion to exclude). "To determine whether a scientific opinion is sufficiently reliable to be admissible, the Court must analyze not what the expert says, but what basis they have for saying it." *Otto v. LeMahieu*, 2021 WL 1615311, at *4 (N.D. Cal. Apr. 26, 2021) (Gonzalez Rogers, J.) (cleaned up). "Methodology can be reliable if: (i) the methodology can and has been tested; (ii) the methodology has been subjected to peer review; (iii) the known or potential rate of error for the technique has been addressed; or (iv) the methodology has a general degree of acceptance in the relevant scientific community." *Id.* (citing *Daubert,* 509 U.S. 579 at 593-94).

Here, Dr. Psounis does not apply any methodology, let alone a reliable one. To be clear: Dr. Psounis did not critique Mr. Hochman's methodology, the application of that methodology, or the data and examples provided. Nor did Dr. Psounis conduct a competing analysis of the private browsing data that Mr. Hochman analyzed. This is plainly inadequate under *Daubert*. "[A]n expert must 'employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at *4 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). Surely Dr. Psounis would not allow his students at USC to get away with critiquing a data analysis or opining about what is or is not possible with existing data without even looking at the data or addressing a contravening analysis. Yet Dr. Psounis now seeks to tell the jury just that. It is as if Dr. Psounis either forgot to do his homework or he gave up when he decided the results may not fit his opinions. Either way, his lack of any methodology and application renders his opinion inadmissible.

1    Dr. Psounis' treatment of Mr. Hochman's opinion about the reliability of Incognito

2  detection is case-in-point. Based on his review of the data produced through the Special Master

3  process Mr. Hochman was able to identify Incognito traffic with 100% accuracy based on over

4  ███ entries that he analyzed. Hochman Report Appendix G ¶ 25; App. I (detailed spreadsheet

5  summarizing his analysis).

6    Dr. Psounis (in Opinion 8) claims that "Mr. Hochman's opinion that the

7  'maybe_chrome_incognito' bit reliably detects Incognito traffic (#23) is incorrect." Given that

8  Dr. Psounis characterizes Mr. Hochman's conclusion as "incorrect," one would expect Dr.

9  Psounis to have reviewed Mr. Hochman's analysis and to critique Mr. Hochman's methodology,

10 inputs, findings, or some combination thereof—or perhaps even proffer competing tests or

11 results. But Dr. Psounis did none of that.[13] Instead, he devotes just four pages to Mr. Hochman's

12 extensive data analysis (spanning tens of thousands of rows of examples and multiple tabs in the

13 Hochman Appendix I spreadsheet). And within those four pages, Dr. Psounis simply muses over

14 edge case scenarios that might disrupt the algorithm, such as when someone has not used Chrome

15 in thirty days, or in the case of a very brand-new Chrome browser accessing the internet for the

16 first time. Dr. Psounis Report ¶¶ 142-45. Dr. Psounis has no scientific answer to the fact that his

17 theoretical musings were not reflected in Mr. Hochman's findings based on over ███ real-

18 world entries. Nor did Dr. Psounis conduct any competing data analysis or tests to prove that his

19 musings might arise in a meaningful number of instances.

20 _____

[13] Accordingly, Dr. Psounis' opinions do not constitute proper rebuttal, and the court should

21 exclude them for the additional reason that they are untimely. "The test of whether an expert's
   opinion constitutes rebuttal or a new opinion. . . [is] whether a rebuttal attempts to put forward

22 new theories outside the scope of the report it claims to rebut." *Wadler v. Bio-Rad Labs., Inc.*,
   2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016) (internal quotation marks omitted). Dr.

23 Psounis entirely ignored the data analysis he purports to rebut and failed to even review the
   underlying data Mr. Hochman studied. His opinions, therefore, were submitted well past the

24 deadline set by this Court for opening expert reports and should be excluded. *See also* 8A Fed.
   Prac. & Proc. Civ. § 2031.2 n.16 (3d ed.) ("When a party attempts to designate as a 'rebuttal'

25 expert someone whose testimony is beyond the scope of appropriate rebuttal, the witness may be
   viewed as an initial expert whose testimony was not properly disclosed at the right time.");

26 *People v. Kinder Morgan Energy Partners, L.P.,* 159 F. Supp. 3d 1182, 1191-93 (S.D. Cal. 2016)
   (excluding as untimely expert testimony that failed to constitute proper rebuttal report).

27

28

Having ignored Mr. Hochman's data analysis and tests, and neglecting to conduct his own, Dr. Psounis "fails to articulate *any* generally accepted methodology for reaching *any* of his conclusions or opinions" regarding the reliability of the maybe_chrome_incognito detection bit. *Otto*, 2021 WL 1615311, at *5 (excluding expert opinions at class certification stage). "Experts assist the fact finder in their own evaluation of the evidence by providing the fact finder with opinions based upon verifiable, scientific, or other objective analysis." *Shelton*, 2022 WL 2712381, at *1. Dr. Psounis' phantom critique is not verifiable, scientific, nor based on objective analysis. *Id.* And Dr. Psounis has articulated "no scientific basis for his observations" about Mr. Hochmman's conclusions, particularly in light of "the lack of supporting . . . testing." *Grodzitsky v. Am. Honda Motor Co., Inc.*, 957 F.3d 979, 986-87 (9th Cir. 2020) (excluding opinion at class certification stage).

Dr. Psounis' opinions about the extent to which Google's signed-out private browsing data can be identified (and therefore used to identify class members) is equally lacking in methodology. Relying only on preserved GAIA [i.e., signed-in] data (and not private browsing data generated under the Special Master's supervision), Dr. Psounis purported to conduct an "IP Address + User Agent Data Analysis." Dr. Psounis Report ¶ 155 & Dr. Psounis Report App. F. His aspiration was to show there can be multiple iterations of the same IP Address and User Agent combination, thus—in his view—undermining Mr. Hochman's opinion that the combination of IP address and User Agent can be used to join private browsing data with Google account data. Ironically, Dr. Psounis' analysis undermines his own rebuttal.[14]

More fundamentally for purposes of this motion, Dr. Psounis' opinions should be excluded because he seeks to draw sweeping conclusions by extrapolating from an absurdly

---

[14] Dr. Psounis could only show that there were mathematical overlaps in IP Addresses and User Agents when assessed separately, but tacitly conceded at the end that IP Addresses and User Agents were unique in combination. Dr. Psounis Report App. F ¶ 7. And Mr. Hochman used these unique combinations to illustrate class member identification in his report. *E.g.*, Hochman Report nn. 109-11, Hochman Report App. G. The silence left by Dr. Psounis running from the data analysis is deafening.

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

limited study of Google's data and systems that he himself did not even examine. "[U]njustified

extrapolations from existing data can require the Court to exclude an expert." *In re Roundup*

*Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018). Mr. Hochman was assessing

whether he could accurately join private browsing data with Google account data by comparing

data across logs, including (but not limited to) through the combination of IP address and User

Agent. Dr. Psounis, by contrast, sought only to assess whether there might be matching IP / User

Agent pairs in the same dataset; he did not even try to determine whether there might be other

ways to nevertheless attribute that data to particular users. Then Dr. Psounis inferred that this

extraordinarily narrow analysis holds true across *all* Google data sources without actually

looking at them or reviewing data from them. This includes—all ███ data sources identified by

Google and all the "data sources at Google" that "infer Incognito browser state," which Google

admits remain unknown (even apparently to Google). August 18, 2022 Sramek Decl. ¶ 7 (Dkt.

695-4). This is akin to concluding the Earth is flat based on a walk down the block (or more

accurately, watching Google's lawyer walk down the block).

    *Siqueiros v. Gen. Motors, LLC*, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022) is particularly

instructive. The court excluded an expert's opinion that a purported vehicle defect was present

in all class vehicles because the expert failed to "determine[] how the Class Vehicles are allegedly

defective through scientific testing and analysis." 2022 WL 74182, at *8. Instead, the expert's

"report seems to reason backwards, by starting with the conclusion that the piston rings are

defective, and then showing how the evidence in the record is consistent with this theory." *Id.* at

*7. The expert "calculated that approximately 3% of Class Vehicles received a piston assembly

replacement, but d[id] not explain how that rate supports his conclusions that *all* vehicles have

the same defect that manifests in the same way," nor "provide[] scientific explanation or

methodology for his extrapolation." *Id.* at *8. Accordingly, the expert could not show that his

opinion was "the product of reliable principles and methods that are appropriately applied to the

facts in the record." *Id.* The same is true here, where Dr. Psounis likewise "seems to reason

backwards, by starting with the conclusions that" Mr. Hochman's opinions are erroneous, and

then proffering sweeping conclusions based on a limited dataset and without "provid[ing] scientific explanation or methodology for his extrapolation" to all of Google's data. *Id.* at **7-8.

*Young v. Cree Inc.*, 2021 WL 292549 (N.D. Cal. Jan. 28, 2021) (Gonzalez Rogers, J.) is similarly instructive. The expert in *Young* "grouped together similar Cree LED bulbs, tested a fraction of them, and then extrapolated his conclusions across a wide array of Cree products." *Young*, 2021 WL 292549, at *5. This Court excluded that expert's opinions, reasoning that his analysis "appears to be nothing more than a naked attempt to take the findings and conclusions made from the ten (10) purchased LED lamps, which consisted of only four unique (4) LED lamp types and extend these findings and conclusion to a broad set of LED lamps." *Id.* at *10. Like the expert in *Young*, Dr. Psounis attempts to extend his extremely limited review of data to Google's data and data systems more generally. His opinions are even more problematic insofar as they are limited to rebuttal opinions and yet he entirely ignored the data analysis he purports to rebut—failing to even review the underlying data that Mr. Hochman studied. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. This is such a case.

**B.    Dr. Psounis' Opinions Should Be Excluded Because Google's Lawyers Performed His (Limited) Tests**

Even if Dr. Psounis had relied on a sufficiently scientific methodology to support his opinions (and he did not), the opinions should be excluded because *the limited testing in his report was conducted by Google's counsel, not Dr. Psounis*. *See* Exh. B Dr. Psounis Deposition at 55, 172-75. This alone subjects his opinions to exclusion.

While experts may base their opinions on information provided by others, such information must nevertheless be reasonably reliable. *See* Fed. R. Evid. 703. "If the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded." *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999). Because it is assumed lawyers are "supposed to give the evidence a partisan slant," data prepared by counsel is not sufficiently reliable. *Phillips Med. Sys. Intern. B.V. v.*

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

*Bruetman*, 8 F.3d 600, 606 (7ᵗʰ Cir. 1993) (Posner, J.); *see also Baker,* 2018 WL 2572725, at **5-6 ("Because [expert] has failed to verify the underlying data at the core of her expert opinion independently, and instead simply adopted the position of an interested party, the Court finds that [expert's] declaration is not reliable").

*Lyman v. St. Jude Med. S.C., Inc*., 580 F. Supp. 2d 719 (E.D. Wis. 2008) is particularly instructive. The court excluded an accounting expert whose projections were based on a summary of the company's sales data that had been provided to him by counsel. His opinions were unreliable because his "information was received solely from [the company's] counsel" and he "never talked to anyone at St. Jude to verify the accuracy of the information." *Id.* at 726. "The data which forms the basis for [his] projections are not reliable. [He] should have independently verified the reliability of the data before opining on plaintiffs' future sales, as opposed to accepting it at the word of [] counsel." *Id.* at 727. The same outcome is warranted here, where counsel for Google conducted the (very limited) data analysis on which Dr. Psounis grounds his opinions. Dr. Psounis "should have independently verified the reliability of the data before opining on" it. Yet Dr. Psounis never spoke with any Google employees nor confirmed that the Quinn Emmanuel attorney who conducted the analysis was qualified to do so. *See* Exh. B Dr. Psounis Deposition at 20; 172-75. These failures provide an independent basis to exclude Dr. Psounis' opinions. *See also Sommerfield v. City of Chicago*, 254 F.R.D. 317, 324 (N.D. Ill. 2008) ("Those courts that have considered the issue raised in this case have concluded that summaries of… data prepared by a party's lawyer are not sufficiently reliable that they may form the basis of an expert's opinion.") (collecting cases).

**V.      CONCLUSION**

Plaintiffs respectfully request that the Court exclude Opinions Nos. 1 and 3, and 7-10 of the Dr. Psounis Report.

Dated: August 23, 2022

By */s/  Mark Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

16

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)

17
Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK

afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis
4:20-cv-03664-YGR-SVK