# GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE NON-RETAINED EXPERT DECLARATIONS FOR WHOM GOOGLE PROVIDED NO EXPERT REPORT

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, *et al*, individually and on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  vs.<br><br>GOOGLE LLC,<br><br>   Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE NON-RETAINED EXPERT DECLARATIONS FOR WHOM GOOGLE PROVIDED NO EXPERT REPORT**<br>The Honorable Yvonne Gonzalez-Rogers<br>Courtroom 1 - 4th Floor<br>Date: October 11, 2022<br>Time: 2:00 p.m. |

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 3

III.  ARGUMENT ......................................................................................................... 7

    A.  The Law Is Clear: Testimony From Employee Witnesses Based on
        Personal Knowledge Gained From Their Day-to-Day Employment Is
        Not Expert Testimony ................................................................................. 7

    B.  The Declarations Each Contain Facts Long Known To Plaintiffs And
        None Contain Expert Testimony .............................................................. 11

        1.  *Declaration of Glenn Berntson (Dkt. 659-7)* ............................... 11

        2.  *Declaration of George Levitte (Dkt. 659-8)* ................................ 13

        3.  *Declaration of Jonathan McPhie (Dkt. 659-6)* ............................ 14

        4.  *Declaration of Steve Ganem (Dkt. 666-17)* ................................. 16

    C.  Exclusion is Inappropriate Because Plaintiffs Have Not Been Harmed
        And Google's Actions Were Substantially Justified ............................... 17

        1.  *Declaration of Glenn Berntson (Dkt. 659-7)* ............................... 19

        2.  *Declaration of George Levitte (Dkt. 659-8)* ................................ 19

        3.  *Declaration of Jonathan McPhie (Dkt. 659-6)* ............................ 20

        4.  *Declaration of Steve Ganem (Dkt. 666-17)* ................................. 21

IV.  CONCLUSION ..................................................................................................... 22

1
**TABLE OF AUTHORITIES**

2
**Page**

3
**<u>Cases</u>**

4
*Buffin v. City & Cnty. of San Francisco*,
   2019 WL 1017537 (N.D. Cal. Mar. 4, 2019) ............................................... 8

5

*Calhoun v. Google*,
6
   No. 4:20-cv-5146-YGR-SVK (N.D. Cal. Dec. 22, 2021) .................................. *passim*

7
*Cas. v. Dunmore*,
   2016 WL 6611184, at *5 (E.D. Cal. Nov. 9, 2016) ...................................... 20

8
*Cleveland v. Groceryworks.com, LLC*,
9
   200 F. Supp. 3d 924 (N.D. Cal. 2016) .......................................................... 13

10
*Curley v. Wells Fargo & Co.*,
   120 F. Supp. 3d 992, 1000 (N.D. Cal. 2015) ............................................... 21
11

12
*Donlin v. Philips Lighting N. Am. Corp.*,
   581 F.3d 73 (3d Cir. 2009) ............................................................................ 8

13
*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2019 WL 2579793 (S.D. Cal. June 24, 2019) .............................................. 9

14
*Hynix Semiconductor Inc. v. Rambus Inc.*,
15
   2009 WL 230039 (N.D. Cal. Jan. 27, 2009) .............................................. 7, 9, 12, 16

16
*In re Google AdWords Litig.*,
   2012 WL 28068, at *5 (N.D. Cal. Jan. 5, 2012) ....................................... 7, 9, 11, 18
17

18
*Matsuura v. E.I. du Pont De Nemours & Co.*,
   2007 WL 433115 (D. Haw. Feb. 2, 2007) ................................................... 15

19
*Merchant v. Corizon Health, Inc.*,
   993 F.3d 733, 740 (9th Cir. 2021) ............................................................... 18
20

21
*Open Text S.A. v. Box, Inc.*,
   2015 WL 393858 (N.D. Cal. Jan. 29, 2015) ............................................... 9

22
*Radware, Ltd. v. F5 Networks, Inc.*,
   2016 WL 590121 (N.D. Cal. Feb. 13, 2016) ............................................... 9

23
*St. John v. Toyota Motor Sales, U.S.A., Inc.*,
24
   2013 WL 12182029 (C.D. Cal. Aug. 20, 2013) .......................................... 17

25
*Torres v. Boston Scientific Corp.*,
   2021 WL 1990649, at *1 (C.D. Cal. May 13, 2021) ................................... 17

26
*Trulove v. D'Amico*,
27
   2018 WL 1090248 ........................................................................................ 2, 10

28

*Vasserman v. Henry Mayo Newhall Mem'l Hosp.*,
   65 F. Supp. 3d 932 (C.D. Cal. 2014) .................................................................................. 7, 10

*Wilson v. Kiewit Pac. Co.*,
   2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) ............................................................................ 18

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101, 1106 (9th Cir. 2001) ....................................................................................... 10

**<u>Rules and Regulations</u>**

Fed. R. Evid. 701 ........................................................................................................................... 7-9

Google, LLC ("Google") submits this memorandum of points and authorities in support of its Opposition to Plaintiffs' Motion to Strike Non-Retained Expert Declarations For Whom Google Provided No Expert Report.

**STATEMENT OF THE ISSUE TO BE DECIDED**

Whether testimony in four employee declarations submitted in support of Google's opposition to class certification consists of expert testimony required to be disclosed in an expert report.

## I.  INTRODUCTION

In support of its opposition to Plaintiffs' Motion for Class Certification, Google submitted four fact declarations from informed employees covering the following topics that are within their respective personal knowledge and have been subject to extensive discovery: Google Ad Manager, Google Analytics, Google's monetization of Ad Manager, and relevant Google disclosures. Plaintiffs' Motion to Strike is an improper attack premised on the false assumption that the employee fact declarations constitute "expert testimony under Federal Rule of Evidence 702, 703, or 705." Dkt. 392 ¶ 10. Not so. The declarations provide factual testimony explaining products and disclosures well within (and learned through) the scope of each declarant's employment, firmly placing each declaration in lay witness, not expert, territory.[1]

Plaintiffs' argument is based primarily on the irrelevant claim that certain of the declarations provide "technical opinions regarding Google's data and data systems." Mot. 2. But even if the handful of paragraphs Plaintiffs challenge contain information of a technical nature—not surprising in a case like this—the testimony is not expert. Plaintiffs fail to acknowledge the countless cases, from this District and others, holding that lay opinion testimony may rely on facts that are technical

---

[1] *See, e.g.*, Dkt. 666-17, Ganem Decl. ¶ 1 ("In this declaration, I provide a summary of Google's Analytics product and how it is used by Google's customers."); Dkt. 659-7, Berntson Decl. ¶ 1 ("In this declaration, I provide a summary of Google's Ad Manager platform and how it is used by publishers."); Dkt. 659-8, Levitte Decl. ¶ 7 ("In summary, Google does not calculate advertising profits on a per-individual-user basis."); Dkt. 659-6, McPhie Decl. ¶ 1 ("As a result of my role and responsibilities at Google … I am familiar with Google's processes for obtaining consent to the data Google receives when a user visits a Google website or a third-party website that uses certain Google services, such as Analytics and Ad Manager").

or specialized without being converted to expert testimony where the declarant's knowledge of the facts was learned in the course of his day-to-day employment. Google complied with the Court's Standing Order by identifying for Plaintiffs the two declarants who are "percipient witness[es] … with technical expertise" on the date it served opening expert reports. Dkt. 392 ¶ 10. The Standing Order does not require reports from such witnesses. Thus, no expert reports or disclosures were required for any of the witnesses at issue, because none of them provided expert testimony:

- <u>Glenn Berntson</u>: Plaintiffs' Motion confirms that, unlike an expert, "Dr. Berntson does not purport to have analyzed the actual data … which [Plaintiffs' expert] tested," and instead relies "on his own 'say-so'" [i.e., his personal knowledge] in his declaration about Google's Ad Manager. Mot. 12. Indeed, Plaintiffs complain that Dr. Berntson's declaration is "based solely on his own prior deposition testimony to [the same] effect." *Id*. That a declaration is limited to the declarant's personal knowledge confirms that it is lay testimony.

- <u>George Levitte</u>: Contrary to Plaintiffs' contention, Mr. Levitte does not "seek to rebut Plaintiffs' damages expert Mr. Lasinski's unjust enrichment model." Mot. 10. Mr. Levitte's declaration does not even reference Mr. Lasinski or his damages model (or any other expert). Mr. Levitte explains the facts about how Google makes money from its Ad Manager service. Google's three citations to his declaration in its 25-page Daubert motion relating to Mr. Lasinski is no different than citation of other facts in the record—it does not convert it into a rebuttal expert report.

- <u>Jonathan McPhie</u>: Mr. McPhie's declaration authenticates language contained in Google's disclosures that were accessible during the class period. Plaintiffs' observation that a handful of the 106 paragraphs employ the words "I am informed" when providing basic context about Incognito mode (Mot. 13) does not render it an expert report.

- <u>Steve Ganem</u>: Plaintiffs argue Mr. Ganem "provides technical opinions regarding Google's data and data systems" when explaining Google Analytics. Mot. 12. But as many courts in this District and beyond have explained, lay testimony does not become expert (or subject to expert reporting requirements) just because the subject matter is technical in nature.

These declarations are nothing like the testimony at issue in Plaintiffs' principal authority, *Trulove v. D'Amico*, 2018 WL 1090248 (N.D. Cal. Feb. 27, 2018). There was no dispute the *Trulove* witnesses were experts—defendants specifically identified them as experts in disclosures, and the witnesses were "given information … and asked to form opinions solely for the purposes of the litigation." *Id*. at *3 (quotation omitted). The Court found that "neither [witness] had any personal knowledge about the events giving rise to the litigation," and both were "'specially employed' to provide expert testimony in [the] matter." *Id*. In stark contrast, the Google declarants here are

providing factual testimony based on personal knowledge about products or disclosures that they work with as part of their day-to-day employment.

Even were the Court to find that the declarations include expert opinions that should have been disclosed, exclusion is entirely inappropriate because Plaintiffs have not been prejudiced. More than eight months ago, Plaintiffs received copies of materially similar declarations that Google submitted in support of its opposition to class certification in the related *Calhoun* case.[2] Plaintiffs questioned Mr. Ganem and Mr. Levitte on their *Calhoun* declarations during their *Brown* depositions, but chose not to do so in their second deposition of Dr. Berntson. Plaintiffs also had a declaration from Greg Fair in the related case describing relevant disclosures substantially similar to that submitted by Mr. McPhie in this case, but chose not to ask Mr. Fair about it during his *Brown* deposition. *Calhoun*, Dkt. 393-4. And while Plaintiffs claim they were unable to "timely depose these witnesses" or to "have [their] experts timely address" the declarations (Mot. 14), Plaintiffs never asked Google for an extension to take depositions or to submit additional expert reports (notwithstanding the parties' extensive history of adjusting the schedule by stipulation). Instead, they bided their time, and filed this Motion in a transparent effort to keep the Court from learning basic facts about Google's services that are relevant to class certification. That strategy should not be rewarded. The Motion should be denied.

## II.   BACKGROUND

Plaintiffs' contention that Google "conceal[ed]" information "in order to ambush Plaintiffs" (Mot. 4-9, 11) is bluster and has no basis in fact. Plaintiffs have known about both the substance of these declarations as well as the identity of the declarants (save Mr. McPhie, who substituted in for departed Google employee Greg Fair) since at least December 2021.

Since their initial complaint in 2020, Plaintiffs have alleged that Google's disclosures did not adequately explain (and Google profited from) information collected through Google Ad

---

[2] *Calhoun v. Google*, No. 4:20-cv-5146-YGR-SVK, Dkt. Nos. 430-3, 430-8, 430-9, 430-15 (N.D. Cal. Dec. 22, 2021) ("*Calhoun*"). Notably, the *Calhoun* Plaintiffs (appropriately) did not move to exclude the declarations.

Manager and Google Analytics. *E.g.*, Dkt. 1 ¶ 4.[3] Robust discovery efforts have been focused on these products and related disclosures. At Plaintiffs' request, Google provided documents relating to numerous aspects of Analytics and Ad Manager as part of the more than *six million pages* Google produced. Mot. 11. Plaintiffs deposed Googlers in both personal and Rule 30(b)(6) capacities— including Dr. Berntson, Mr. Ganem, and Mr. Levitte—regarding Google Analytics, Google Ad Manager, and Google's disclosures. Google answered dozens of interrogatories and requests for admissions regarding disclosures in effect during the class period and information collected by these two key products.[4] The magistrate judge granted Plaintiffs' requests to expand discovery, allowing Plaintiffs to serve more than 200 expansive requests for production across the files of 44 document custodians (and additional sources), 75 requests for admission, 40 interrogatories, and to take over 30 depositions. Dkt. 298.

In light of this vast discovery record, Google unremarkably provided four employee declarations in support of its opposition to class certification to summarize certain material aspects of the products and disclosures that have been a focus of discovery. The declarations are consistent with facts found elsewhere across the voluminous record. They constitute a culmination of discovery, not a surprise.

Plaintiffs' Motion confirms as much: Plaintiffs complain that Dr. Berntson's declaration is "based solely on his own prior deposition testimony to [the same] effect," which Plaintiffs took on June 16, 2021. Mot. 12. And statements Plaintiffs highlight in their motion, such as the fact that "Google 'does not combine IP addresses and User-Agent to identify, or re-identify users' [*i.e.*, "fingerprinting"] and has 'policies' against doing so," are foundational facts that Google has

---

[3] On March 18, 2022, the Court allowed Plaintiffs to file a third amended complaint with changes to the class definition, but ordered such changes could not be a basis for seeking additional or supplemental Rule 30(b)(6) testimony, document productions, or discovery responses. Dkt. 504 at 2.

[4] *See, e.g.*, Ex. 1, Pl. Dec. 23, 2020, Interrogatory No. 3 (requesting Google identify several subparts of information "for each occasion where Google received data via Google Analytics or Google Ad Manager in connection with any user browsing but where Google did not also receive any X-Client-Data Header information"); *see also* Ex. 2, Pl. Oct. 7, 2020, Request for Admission No. 4 (admit that "[s]ince at least June 1, 2016, nothing on Google's Incognito mode splash screen disclosed that Google would collect data generated by users' Incognito mode web activity.").

advanced throughout this case. *Compare id.* (quoting Berntson Decl. ¶ 42) *with* Ex. 3, June 16, 2021 Berntson Dep. Tr. 121:22-122:2 ("[W]e have a number of internal policies at Google that say you can't reidentify users"); *see also* Dkt. 387, Google's Answer to Second Amend. Compl. ¶ 100 ("Google avers that Google's practices, policies, and procedures specifically prohibit the use of 'fingerprinting' techniques to profile or track users.").

A casual reader of Plaintiffs' motion might conclude that Plaintiffs had hardly heard of these declarants until Google served their declarations. But both Dr. Berntson and Mr. Ganem verified *multiple* interrogatory responses related to Ad Manager and Analytics beginning one year ago. *E.g.*, Exs. 4, 5. Indeed, Dr. Berntson was one of Plaintiffs' earliest depositions on June 16, 2021. And as Plaintiffs admit, Google included Dr. Berntson, Mr. Ganem, and Mr. Levitte on its amended initial disclosures, and disclosed that these witnesses would be used to "support its claims or defenses" on topics such as "Google Ad Manager, [Google] Analytics," and "Google Ad Manager's monetization." Mot. 7-8; Pl. Ex. 10. These are the precise categories covered by the challenged declarations. Plaintiffs again complain that Google's amended initial disclosures came near the end of fact discovery, but that purported grievance has already been adjudicated—on Plaintiffs' motion, Magistrate Judge van Keulen allowed them a deposition of each employee added to Google's disclosures who was not previously a custodian and deposed, but held that Plaintiffs could not show "that these individuals are likely to possess custodial documents that warrant custodial searches." Dkt. 454-1 at 2-3.[5]

The only declarant not listed on Google's amended initial disclosures was Jonathan McPhie. Instead, Greg Fair—a former supervisor of Mr. McPhie—was identified as a person with knowledge of "Google's disclosures regarding data collection practices and Google systems that obtain and record user consent." Pl. Ex. 10. Mr. McPhie was ultimately substituted in as a declarant in lieu of Mr. Fair who has left the company.

---

[5] The Court's Order also settled Plaintiffs' arguments regarding Request for Production Nos. 11 and 12, and Interrogatory No. 4, which Plaintiffs attempt to rehash here. Mot. 6-7. The Court requested supplemental briefing regarding the chart of employees Plaintiffs now reference, *id.*, which identified all four declarants and was produced in February 2021. Dkt. 454-1. The Court ultimately allowed depositions of Mr. Ganem and Mr. Levitte, but denied custodial document production. *Id.*

Plaintiffs' concealment narrative is also glaringly undercut by the fact that these same Google employees (and as explained above, Mr. Fair in place of Mr. McPhie) submitted nearly identical declarations in opposition to class certification in the related *Calhoun* case more than eight months ago. Plaintiffs questioned Mr. Ganem and Mr. Levitte about their *Calhoun* declarations when deposing them in this case. Exs. 6, 7. The prior declarations focused on the same subject matter and contained statements identical to those Plaintiffs now claim were never disclosed:

- *Compare* Mot. 12 (citing Dr. Berntson's statement that "Google 'does not combine IP addresses and User-Agent to identify, or re-identify users' and has policies against doing so.") *with Calhoun*, Dkt. 430-8 ¶ 10 (Dr. Berntson declaring "Google does not combine IP Address and user-agent information to identify or track users and, indeed, has policies that expressly prohibit that practice.").

- *Compare* Mot. 11 ("Mr. Levitte, in turn, opines that it would be 'impossible to calculate Google's advertising profits' on a per-class member basis") *with Calhoun*, Dkt. 430-15 ¶ 5 (Mr. Levitte declaring "Google does not calculate advertising profits on a per-individual-user basis …. Further, it would be impossible to calculate Google's advertising profits from each Putative Class Member").

- *Compare* Mot. 12-13 ("Mr. Ganem opines that 'it would be impossible to calculate Google Analytics' revenue or profits on a per-individual-website visitor (user) basis") *with Calhoun*, Dkt. 430-9 ¶ 36 (Mr. Ganem declaring "[i]t would be impossible to calculate Google Analytics' revenue or profits on a per-individual-website visitor (user) basis.").

- *Compare* McPhie Decl. ¶ 6 ("In this declaration, I explain the various disclosures that Google makes available to Google Account holders about the Data collection that I understand to be at issue in this case.") *with Calhoun*, Dkt. 430-3 ¶ 3 (Mr. Fair declaring "In this declaration, I explain the various disclosures that Google makes available to Chrome users and Google Account holders about the data collection that I understand to be at issue in this case.").

Plaintiffs conspicuously omit any reference to the *Calhoun* declarations or the fact that Plaintiffs used two of them in depositions. To the contrary, they misleadingly claim they "had no reasonable opportunity to depose any of these four individuals concerning their declarations." Mot. 5. That is demonstrably false.

Finally, Plaintiffs' assertion that "Google said no" when asked "whether it intended to offer rebuttal expert reports from its own employees," Mot. 3-4, 15, is both irrelevant and false. It is irrelevant because the declarations are not "expert reports," so even if Google *had* said "no" in response to Plaintiffs' inquiry, that would have been accurate. Plaintiffs' assertion is false because,

as Plaintiffs' citation shows, Google did not say "no" but instead stated: "We are still working our way through the main Hochman report and sub reports, but we currently plan to serve[] three rebuttal reports from retained experts given the breadth of issues Mr. Hochman purports to cover. We reserve the right to serve additional rebuttal reports." Pl. Ex. 3 at 9.

## III.   ARGUMENT

### A.   The Law Is Clear: Testimony From Employee Witnesses Based on Personal Knowledge Gained From Their Day-to-Day Employment Is Not Expert Testimony

Plaintiffs' motion is premised on the assertion that Google's employees are "non-retained employee-experts" and their declarations consist of "improper expert opinion testimony." Mot. 2, 10. Tellingly, Plaintiffs cite no case law explaining (and do not otherwise grapple with) what constitutes expert testimony. They simply conclude, without any legal support, that the "four declarations very clearly fall within the scope of the Court's Standing Order [regarding non-retained employee experts]." Mot. 2. The case law holds otherwise.

Testimony is considered "expert" when "based upon a witness' analysis of facts using methods based on specialized knowledge." *Hynix Semiconductor Inc. v. Rambus Inc.*, 2009 WL 230039, at *10–11 (N.D. Cal. Jan. 27, 2009) ("[T]he court understands 'expert testimony' to be testimony that a witness prepares, as opposed to testimony of what a witness observes.").

By contrast, statements based on personal knowledge are permissible lay testimony, and "[c]ourts routinely permit witnesses to offer lay opinion testimony concerning matters they learn or experience they gain as a result of their employment" under Federal Rule of Evidence 701. *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 946–47 (C.D. Cal. 2014) (collecting cases).[6] The Federal Rules impose no reporting requirement for lay testimony, and the Court's standing order requires only that "percipient witness[es] who may also testify at trial with

---

[6] *See also In re Google AdWords Litig.*, 2012 WL 28068, at *4 (N.D. Cal. Jan. 5, 2012) ("Since the 2000 amendment to Rule 701, courts have continued to allow lay opinion testimony based upon particularized knowledge obtained by virtue of the witness's position in the business. For example, several courts have admitted fact and opinion testimony from lay witnesses on a broad range of 'technical' or 'specialized' subjects without considering those witnesses 'experts' under Federal Rule of Evidence 702"); *Hynix Semiconductor*, 2009 WL 230039, at *10–11 (listing "examples [of witness testimony that] clearly draw on 'technical' knowledge, yet they are not expert testimony.").

technical expertise akin to an independent expert shall be identified by name no later than the date of expert disclosures to allow for deposition, if necessary." Dkt. 392 ¶ 10.

Plaintiffs ignore this distinction altogether, instead plucking out a handful of paragraphs they claim constitute "expert opinion" testimony. Mot. 9-10. But *opinion* testimony does not equal *expert* testimony, and lay opinions do not trigger reporting obligations. Rather, lay opinion testimony is governed by Fed. R. Evid. 701, and is not subject to Federal Rule of Civil Procedure 26(a)'s expert reporting requirements. Dkt. 392 ¶ 10 (requiring reports for expert testimony under Rules 702, 703, or 705). Under Rule 701, lay opinion testimony is appropriate where it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

It cannot be disputed that the first two prongs are met. Plaintiffs' argument instead hangs on a claim that the declarations run afoul of the final prong of Rule 701 because Google is purportedly "using those four individuals to offer expert opinions concerning 'technical' or other 'specialized knowledge.'" *See* Mot. 9-10. But that is an incomplete statement of the Rule's text, which prohibits lay opinion testimony based on "scientific, technical, or other specialized knowledge ***within the scope of Rule 702***." Fed. R. Evid. 701 (emphasis added). Here, the declarations are not within the scope of Rule 702. The quixotic position that Plaintiffs assert has been repeatedly considered and rejected by courts where, as here, "a lay witness has particularized knowledge by virtue of her experience." *Buffin v. City & Cnty. of San Francisco*, 2019 WL 1017537, at *5 n.20 (N.D. Cal. Mar. 4, 2019) (Gonzalez Rogers, J.) (quoting *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009)). In those circumstances, "she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of [Federal Rule of Evidence] 702." *Id.*

In other words, where opinion testimony is based on a witnesses' personal knowledge gained from their day-to-day employment—even where that knowledge is technical in nature—courts consider the testimony lay, rather than expert. As another Court in this District explained in similar circumstances:

The Court will admit Dr. Varian's testimony regarding his knowledge of how the AdWords system works and his experience in applying economic modeling to study the AdWords System. As Google's Chief Economist, Dr. Varian is qualified to explain, as a lay witness, what Google's AdWords system does, how it behaves, and what it does when certain variables are changed. Here, just because the underlying facts and data are technical in nature does not transform the information into "expert testimony" when those facts are within the personal knowledge and experience of the company's employee. Dr. Varian may offer lay witness opinions regarding Google's business, so long as those opinions are based on his own personal, particularized knowledge and experience relating to his employment at Google.

*In re Google AdWords Litig.*, 2012 WL 28068, at *5 (N.D. Cal. Jan. 5, 2012) (collecting cases) *rev'd on other grounds by Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015).

Relevant to the engineer-declarants here, another court in this District has explained that it is not "'expert' testimony … for an engineer to describe the products he has built" despite such testimony "clearly draw[ing] on 'technical' knowledge." *Hynix Semiconductor*, 2009 WL 230039, at *10–11. This is because "particularized knowledge that the witness has by virtue of his or her position in the business is not 'scientific, technical, or other specialized knowledge [for purposes of Rule 701(c)],' even if it involves knowledge that the average person would have to consult an expert about." *Open Text S.A. v. Box, Inc.*, 2015 WL 393858, at *7 (N.D. Cal. Jan. 29, 2015) (quotation omitted).

In short: "there are limits to what constitutes 'expert' testimony subject to advance disclosure, written reports, Daubert gatekeeping, and so on," and those limits do not preclude "a fact witness" from "draw[ing] upon technical knowledge." *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 590121, at *15 (N.D. Cal. Feb. 13, 2016) (quotation omitted).

Courts in other districts have held the same. *See, e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 2579793, at *5 (S.D. Cal. June 24, 2019) ("While her testimony and opinion are technical and could assist the trier of fact, her knowledge and experience comes from her 'personal knowledge' while working at Ocean Spray … Therefore, it would be more appropriate for Lent to testify as a lay witness."); *Id.* at *6 ("Under Rule 701, a lay witness with first-hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that

the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion." (quotation omitted)); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 946–47 (C.D. Cal. 2014) ("Courts routinely permit witnesses to offer lay opinion testimony concerning matters they learn or experience they gain as a result of their employment.").

Plaintiffs offer *none* of this applicable law. Instead, they focus on two inapposite opinions, *Trulove*, 2018 WL 1090248, and *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). In *Trulove*, the defendants *specifically identified the witnesses as experts* because they were "specially employed to provide expert testimony in [the] matter," and the Court specifically noted that "neither [witness] had any personal knowledge about the events giving rise to the litigation, but were only given information later and asked to form opinions solely for the purposes of the litigation." 2018 WL 1090248, at *3 (quotation omitted). Likewise, in *Yeti*, the parties did not dispute that the witness was an expert, or that the disclosure requirements of Rule 26(a) were applicable. The Court noted that the defendants advanced only the argument "that they were under the mistaken belief that [an original expert] report would be supplemented again and were waiting for the final version before disclosing [their own rebuttal] report." 259 F.3d at 1106. Neither decision is applicable here, where each of the four witnesses's declarations is based on facts they have acquired by virtue of their work for Google.[7]

---

[7] *See, e.g.*, Ganem Decl. ¶ 1 ("In my role as Group Product Manager, I am familiar with the Google Analytics product and practices regarding handling of data received by Google Analytics when a user visits a website that uses this product."); Berntson Decl. ¶ 1 ("I am the Engineering Director and a Lead of the Google Ad Manager team at Google. I oversee a team that facilitates and supports publishers advertising on their websites."); Levitte Decl. ¶ 2 ("During my time at Google, I've worked on projects across various ads businesses, including Google Ad Manager (previously two separate products - DoubleClick for Publishers and DoubleClick Ad Exchange), AdMob, and AdSense. Since 2019, I have been part of the Ad Manager leadership team … Currently, my team's scope of responsibilities includes the core auction itself, auction optimizations, Google's real-time bidding services, and several other parts of Ad Manager."); McPhie Decl. ¶ 1 ("As a result of my role and responsibilities at Google … I am familiar with Google's processes for obtaining consent to the data Google receives when a user visits a Google website or a third-party website that uses certain Google services, such as Analytics and Ad Manager").

**B.  The Declarations Each Contain Facts Long Known To Plaintiffs And None Contain Expert Testimony**

Plaintiffs make the incendiary claim that Google participated in "gamesmanship" and "chose to conceal" certain testimony in order to "ambush" Plaintiffs. Mot. at 11. That is demonstrably false for each witness. Plaintiffs cannot dispute that, in December 2021, they received substantively similar declarations with Google's opposition to class certification in the related *Calhoun* case. Those declarations contained verbatim many of the statements Plaintiffs now claim amount to a blindside. *Supra* 6. Plaintiffs also cannot argue they were unaware of these statements: they questioned two of the declarants on the substance of their *Calhoun* declarations in this case. Exs. 6, 7. That Google opposed class certification in two related cases in similar ways is not indicative of an ambush, but expected. Indeed, to the extent there has been any "ambush," it is on the part of Plaintiffs, who plucked declarations from *Calhoun* for use in *Brown* depositions when it suited them, but claim to the Court they are surprised by nearly identical declarations when it does not. Putting aside Plaintiffs' meritless bluster about gamesmanship, none of the challenged declarations constitute expert testimony.

*1.   Declaration of Glenn Berntson (Dkt. 659-7)*

Dr. Berntson is the Engineering Director and a Lead of Google's Ad Manager team. Berntson Decl. ¶ 1. Based on this role, Dr. Berntson's declaration provides material factual information, such as "a summary of Google's Ad Manager platform and how it is used by publishers," and a "descri[ption of] the data that Google Ad Manager may receive when a user in private browsing mode … visits a website that uses Google Ad Manager." *Id*. Indeed, Dr. Berntson's declaration begins with the most basic facts, explaining that "Google AdSense and Ad Manager are Google services for publishers to manage advertising on their inventory." *Id*. ¶ 2.

Plaintiffs argue that Dr. Berntson's declaration constitutes "improper expert opinion" because it "provides technical opinions regarding Google's data and data systems." Mot. 12. As explained, courts have repeatedly rejected that argument. *Supra* III.A (collecting cases). Dr. Berntson provides factual information about how Google's systems work and, to the extent any portion of his declaration can be classified as "opinion," it is well within his personal knowledge as

Engineering Director of the Google Ad Manager team, and is therefore lay opinion at most. It is certainly not Rule 702 expert testimony. *Id.*; *In re Google AdWords Litig.*, 2012 WL 28068, at *5 ("[J]ust because the underlying facts and data are technical in nature does not transform the information into 'expert testimony' when those facts are within the personal knowledge and experience of the company's employee.").

Plaintiffs' other grievance concerns the final four paragraphs of Dr. Berntson's declaration in which he "address[es] some errors and false assumptions made in Mr. Jonathan Hochman's expert report, submitted in this case." Mot. 11-12; Berntson Decl. ¶¶ 1, 40-43.[8] But again, these paragraphs are based on Dr. Berntson's personal knowledge and thus are not expert testimony. *See* Berntson Decl. ¶ 1. For example, Dr. Berntson's supposed "opinion" in paragraph 42 is simply that: "Google does not combine IP addresses and User-Agent to identify, or re-identify, users." *Id.* ¶ 42. This is clearly a factual statement, as are his other statements in this section. *See, e.g., id.* ¶ 43 ████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████; *id.* ¶ 41 ("Because the X-Client-Data header … is not designed to detect Incognito traffic and is absent for reasons other than a Chrome instance being in Incognito mode, any heuristic that relies on the absence of the header will not reliably detect Incognito traffic."). Unlike hallmark expert testimony, Dr. Berntson is not *analyzing* "facts using methods based on specialized knowledge." *Hynix Semiconductor*, 2009 WL 230039, at *10–11 (defining expert testimony). He is *providing* facts about Google's systems based on his day-to-day experience as a Google employee.

Plaintiffs' challenge concedes as much. Plaintiffs argue that "Dr. Berntson does not purport to have analyzed the actual data that Google produced in the Special Master process, which Mr. Hochman tested to reach [his] opinion[s]," and that "Dr. Berntson relies only on his own 'say-so'" in these paragraphs. Mot. 12. This is precisely the point: even were the four paragraphs considered

---

[8] Although Plaintiffs implicitly acknowledge that only the last four paragraphs of Dr. Bernston's declaration addresses statements made by Mr. Hochman, Mot. 11-12 (citing Berntson Decl. ¶¶ 40-43), they misleadingly claim that Dr. Berntson "provides improper expert opinion in the *ensuing* paragraphs" in his 21-page declaration, *id.* But, tellingly, Plaintiffs do not cite any other paragraphs from Dr. Bernston's declaration as purportedly improper.

1  opinion testimony, Plaintiffs admit that Dr. Berntson is not relying on information outside his

2  personal knowledge as Engineering Director of the Google Ad Manager team.

3                  2.  *Declaration of George Levitte (Dkt. 659-8)*

4       Mr. Levitte is a Group Product Manager for Google Ad Manager and has been a Google

5  employee since 2014. Levitte Decl. ¶ 1-2. During this time, he has "worked on projects across

6  various ads businesses," and he has "been part of the Ad Manager leadership team" since 2019. *Id*.

7  ¶ 2. Mr. Levitte leads a team "responsible for many components of [Google's] ads monetization,

8  including the Ad Manager auction." *Id*. Mr. Levitte's declaration is based on this "personal

9  knowledge." *Id*. ¶ 1.

10       Plaintiffs note that Mr. Levitte "consider[s] [him]self a subject matter expert for all

11  monetization features of Ad Manager." Mot. 10; Levitte Decl. ¶ 2. That is meaningless word play.

12  Mr. Levitte's acknowledgment that he has subject matter expertise in an area of his day-to-day work

13  responsibilities says nothing about whether Google should have disclosed him as an expert witness

14  under the Federal Rules of Civil Procedure and Evidence. Mr. Levitte's declaration contains *facts*

15  known to him because of his deep experience with Google ads monetization,[9] such as statements

16  that "Google does not calculate advertising profits on a per-individual-user basis" or "on the basis

17  of the Data as defined by Plaintiffs." Levitte Decl. ¶ 7. In fact, the majority of Mr. Levitte's

18  declaration is "background on Google's Ad Manager and AdSense products and the way that they

19  monetize user data." *Id*.

20       Contrary to Plaintiffs' assertion, Mr. Levitte's statement that "it would be impossible to

21  calculate Google's advertising profits from each Putative Class Member," *id*. ¶ 7, is not "expert

22  opinion." Rather, it is information that Mr. Levitte knows based on his years of first-hand experience

23  working at Google on this very topic. *Supra* II.A; *see also Cleveland v. Groceryworks.com, LLC,*

24

25

---

26  [9] Plaintiffs' claim that "Mr. Levitte admitted in his deposition … that he lacked personal knowledge

27  of ▮▮▮▮▮▮" only proves this point. Mot. 11. Nowhere in his declaration does Mr. Levitte

   mention (much less provide an opinion) on "▮▮▮▮▮▮." Nor does Mr. Levitte opine

28  "concerning what Mr. Lasinski's unjust enrichment model included or excluded," as Plaintiffs

   suggest. *Id*. Instead, Mr. Levitte provides facts well within his personal knowledge.

1   200 F. Supp. 3d 924, 940 (N.D. Cal. 2016) ("Personal knowledge may include inferences and

2   opinions … grounded in observation or other first-hand personal experience").

3        Next, Plaintiffs contend Google "relied heavily on Mr. Levitte's declaration in its *Daubert*

4   motion concerning [Plaintiffs' expert] Mr. Lasinski's opinions." *See* Mot. 10. Notably, what

5   Plaintiffs describe as "heav[y]" reliance is a total of three citations across a 25-page motion, Dkt.

6   662, at 9, 20 (citing to four total paragraphs in Mr. Levitte's declaration). And, the citations are to

7   facts about Ad Manager, such as the percentage of revenue "Google Ad Manager keeps … of [the]

8   revenue generated by its most basic transaction type." *Id*. at 9.[10] In any event, Google's citation in

9   a *Daubert* motion to facts in Mr. Levitte's declaration does not transform the declaration into expert

10  testimony or an improper rebuttal report. These citations are no different than citations to other facts

11  in the record. Nowhere in Mr. Levitte's recitation of how Google monetizes advertisements does he

12  reference Mr. Lasinski or his opinions. Mr. Levitte's testimony plainly is not expert.

13        *3.   Declaration of Jonathan McPhie (Dkt. 659-6)*

14        Mr. McPhie is a Group Product Manager for Google's Privacy and Data Protection Office

15  ("PDPO") and has been employed by Google since September 2007. McPhie Decl. ¶ 1. As Mr.

16  McPhie explains in his declaration, "[i]n the regular course of my duties while at Google, I

17  participated in the management of Google's framework for obtaining user consent, and I reviewed

18  and approved related disclosures, including disclosure to users about Google's data collection

19  practices." *Id*. Mr. McPhie explains that "[a]s a result of my role and responsibilities at Google … I

20  am familiar with Google's processes for obtaining consent to the data Google receives when a user

21  visits a Google website or a third-party website that uses certain Google services, such as Analytics

22  and Ad Manager." *Id*. Except where he indicates otherwise, Mr. McPhie's declaration is premised

23  on his "personal knowledge." *Id*.

24        Mr. McPhie explains the purpose of his declaration succinctly: "In this declaration, I explain

25  the various disclosures that Google makes available to Google Account holders about the Data

---

26

27  [10] While the version of Mr. Levitte's declaration Plaintiffs introduced at his deposition contained a handful of redactions relating to specific fee figures, *Brown* Counsel attended Mr. Levitte's deposition in *Calhoun* the following day in which fees were explored in detail and had access to the

28  deposition transcript.

collection that I understand to be at issue in this case." *Id.* ¶ 6. To do so, he "describe[s]" relevant portions of such things as "the various versions of Google's Privacy Policy that were in effect during the Class Period," "the New Account Holder Agreements that were shown to some Plaintiffs and members of the proposed Class," and "various versions of the Chrome Privacy Notice that were in effect during the Class Period." *Id.* The declaration authenticates the language contained in the disclosures and points the Court to hyperlinks where they can be found; non-public information in Mr. McPhie's declaration was also produced to Plaintiffs during the fact discovery period. Mr. McPhie provides authenticating testimony, and nothing in his declaration is remotely close to expert analysis.

Plaintiffs' argument that Mr. McPhie is a non-retained expert required to produce a report under Rule 26 is that, in four of the 106 paragraphs of his declaration, he uses the words "I am informed." Mot. 13 (citing McPhie Decl. ¶¶ 3-5, 72). Plaintiffs then incorrectly claim his "entire declaration is predicated" on the limited facts contained in Paragraph 3 of his declaration regarding how he was "informed" Incognito mode works. *Id.* Not so. Paragraph 3 simply provides factual context for Mr. McPhie's declaration and the disclosures discussed therein. That other Googlers provided Mr. McPhie some information about Incognito mode's function and purpose—information that was provided to Plaintiffs in countless depositions, documents, and filings—does not render his testimony "expert opinion."

The sole authority Plaintiffs cite—*Matsuura v. E.I. du Pont De Nemours & Co.*, 2007 WL 433115 (D. Haw. Feb. 2, 2007)—does not hold otherwise. In *Matsuura*, the expert witnesses were former attorneys seeking to testify about the impact of fraudulently withheld evidence on settlement value in an underlying litigation. *Id.* The court explained "the issue at hand is … whether, as percipient expert witnesses, they are permitted to render expert opinions based on information obtained *outside of their personal knowledge* without Plaintiffs having timely filed an expert report." *Id.* at * 2-3 (emphasis added). The answer to this straightforward question regarding *expert* testimony was, of course, no. *Id.* But while the Court excluded expert testimony regarding information "acquired in preparation for trial in the instant case," it held that "the lack of an expert

1    report does not prevent" the attorneys from testifying "about their observations as attorneys in the

2    Underlying Litigation." *Id*. at *4.

3                    *4.   Declaration of Steve Ganem (Dkt. 666-17)*

4            Mr. Ganem is a Group Product Manager at Google and, in that role, is "familiar with the

5    Google Analytics product and practices regarding handling of data received by Google Analytics

6    when a user visits a website that uses this product." Ganem Decl. ¶ 1. Mr. Ganem's declaration,

7    based on his "personal knowledge," provided "a summary of Google's Analytics product and how

8    it is used by Google's customers," along with "descri[ptions]" of "the data that Google Analytics

9    may receive when a user visits a website that uses Google Analytics" and "factors that affect

10   Google's revenue from the Analytics product." *Id*. Like other declarants, Mr. Ganem's testimony

11   began with the most basic facts, including that "Google Analytics is a measurement product offered

12   by Google to help app and website owners better understand how visitors interact with their

13   properties." *Id*. ¶ 2.

14           In a single paragraph, Plaintiffs challenge Mr. Ganem's declaration as improper expert

15   opinion for two reasons. Mot. 12-13. First, they argue Mr. Ganem "provides technical opinions

16   regarding Google's data and data systems." Mot. 12. As explained above, lay testimony does not

17   become expert (or subject to expert reporting requirements) just because the subject matter is

18   technical in nature. *Supra* III.A; *see also Hynix*, 2009 WL 230039, at *10–11 ("[T]he court does not

19   believe it is 'expert' testimony … for an engineer to describe the products he has built … [although

20   it] clearly draw[s] on 'technical' knowledge."). As was done for Dr. Berntson, Google alerted

21   Plaintiffs on the date opening reports were served that Mr. Ganem is a "percipient witness … with

22   technical expertise" under the Court's Standing Order. Dkt. 392 ¶ 10; Pl. Ex. 2.

23           Second, Plaintiffs contend (incorrectly) that Mr. Ganem provides "opinions" related to the

24   "technical workings of browsers created by companies *other* than … Google." Mot. 12-13 (emphasis

25   in original). This critique makes no sense at all since Mr. Ganem's knowledge pertains to Google

26   Analytics—a Google service that is designed to function the same regardless of what browser a

27   website visitor is using. Tellingly, Plaintiffs cite only two paragraphs (out of 36 total) that make any

28   reference to other browsers, and Plaintiffs do not even attempt to argue the information therein

would be outside Mr. Ganem's personal knowledge. *See id.* Nor can they—one cited paragraph is explicitly limited to Mr. Ganem's understanding, *see* Ganem Decl. ¶ 31 ("It is my understanding that other browsers' PBMs handle cookies in a similar manner."), and the other is in the context of whether revenue tied to PBM traffic in browsers other than Chrome can be calculated *for Google Analytics*, which is not an "opinion" on "the technical workings of [non-Google] browsers," as Plaintiffs suggest. Mot. 12-13; Ganem Decl. ¶ 36. Put simply, Plaintiffs' one-paragraph critique of two paragraphs in Mr. Ganem's declaration fails to show he is an expert required to submit a report.

### C. Exclusion is Inappropriate Because Plaintiffs Have Not Been Harmed And Google's Actions Were Substantially Justified

Even if the Court were to conclude that the declarations contain expert opinion that should have been disclosed pursuant to Rule 26 and the Court's Standing Order, any purported failure to do so was harmless and substantially justified, which precludes sanctions under Federal Rule of Civil Procedure 37(c). Fed. R. Civ. P. 37(c)(1) (precluding exclusion of testimony where "the failure [to disclose under Rule 26(a)] was substantially justified or is harmless"). "'Substantial justi[fication]' implicates the reason for the delay, while 'harmless[ness] requires inquiry into the resulting prejudice.'" *Torres v. Boston Scientific Corp.*, 2021 WL 1990649, at *1 (C.D. Cal. May 13, 2021) (quoting *St. John v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 12182029, at *2 (C.D. Cal. Aug. 20, 2013)).

Although Plaintiffs imply that the declarations are wall-to-wall expert opinion, they substantiate their challenge with statements contained in only 14 of 208 total paragraphs across the declarations.[11] Mot. 10-13. Thus, even under Plaintiffs' telling, the overwhelming majority of the declarations is not expert testimony, but instead facts or permissible lay opinion. Moreover, Plaintiffs were long aware of the nearly identical declarations submitted in opposition to class certification in *Calhoun* without expert reports (which the *Calhoun* Plaintiffs appropriately did not seek to exclude). On these facts, Google had substantial justification for its actions even if the Court

---

[11] Plaintiffs cite four paragraphs in Mr. Levitte's declaration; four paragraphs in Dr. Berntson's declaration; two paragraphs in Mr. Ganem's declaration; and four paragraphs in Mr. McPhie's declaration. Mot. 10-13.

were to determine that the handful of paragraphs from each declaration identified by Plaintiffs required an expert report.

Regarding harm, Plaintiffs claim Google's failure to provide expert reports for each declarant "affected Plaintiffs' ability" to depose the employees about their declarations and allow Plaintiffs' experts to address the testimony presented. Mot. 14-15. But, tellingly, Plaintiffs never asked for additional deposition time or an extension for their Reply brief to allow for such depositions. They are not even asking for such relief now. Instead, they want the declarations excluded in their entirety (Mot. 15), which is untethered to the purported harm and wholly inappropriate.[12]

Nor can Plaintiffs credibly argue that their experts did not have an opportunity to respond "via supplemental reports." Mot. 6, 14-15. Google served these declarations three weeks before the end of expert discovery. That was sufficient time for any of Plaintiffs' (eight) experts to provide a response. And, if Plaintiffs needed more time, they could have asked for it. They did not. *See Wilson v. Kiewit Pac. Co.*, 2010 WL 5059522, at *10 (N.D. Cal. Dec. 6, 2010) ("[I]nstead of waiting to object to defendant's declarants in her Reply on Rule 26(a) grounds and asking that they be struck in their entirety, if Plaintiff felt she needed to depose those declarants to test their assertions, plaintiff should have attempted to work with defendant to move the briefing schedule for the Reply so that she would have time to depose them (and if defendant wouldn't agree, sought leave of Court to do so).").

---

[12] Plaintiffs overreach by asking the Court to exclude the declarations wholesale despite identifying only a handful of paragraphs in each declaration that purportedly contain expert testimony. Even if the Court agreed with Plaintiffs for some or all of those challenged paragraphs, the proper remedy would be to exclude only those portions at most. *See, e.g.*, *In re Google AdWords Litig.*, 2012 WL 28068, at *5 (N.D. Cal. Jan. 5, 2012) (noting that any opinions offered by the lay witness "on the merits of the case" would simply "be disregarded"); *Wilson*, 2010 WL 5059522, at *10 (rejecting argument that declarations submitted at class certification stage "be struck in their entirety" and explaining the Court would not rule on "specific evidentiary objections" related to portions upon which the Court "[did] not rely"); *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) ("The automatic nature of the rule's application does not mean that a district court *must* exclude evidence that runs afoul of Rule 26(a) or (e)--Rule 37(c)(1) authorizes appropriate sanctions '[i]n addition to or instead of [exclusion].'" (quoting Fed. R. Civ. P. 37(c)(1)) (emphasis in original)).

1    Finally, it is simply untrue that "Google said no" when asked "whether it intended to offer

2 rebuttal expert reports from its own employees." Mot. 3-4, 12, 15. Plaintiffs' support for this claim

3 shows that Google's counsel instead stated, "[w]e are still working our way through the main

4 Hochman report and sub reports, but we currently plan to serve[] three rebuttal reports from retained

5 experts given the breadth of issues Mr. Hochman purports to cover. We reserve the right to serve

6 additional rebuttal reports." Pl. Ex. 3 at 9. Plaintiffs' assertion that Google provided a "written

7 representation to Plaintiffs that [Google] would not offer any 'rebuttals [that] will address Mr.

8 Hochman's report' from 'Google employees,'" Mot. 12, is simply false.

9    Plaintiffs' claims of prejudice are further undermined by additional issues specific to each

10 declaration:

### 1.  Declaration of Glenn Berntson (Dkt. 659-7)

12    Plaintiffs' primary critique of Dr. Berntson's declaration is that the final four paragraphs are

13 contained in a section titled, "Mr. Hochman's Opinions On Conversions And Proposed Approach

14 For Identifying Class Members." Berntson Decl. ¶¶ 40-43. But Plaintiffs admit the facts provided

15 in this section are "based solely on [Dr. Berntson's] own prior deposition testimony to [the same]

16 effect," which Plaintiffs conducted on June 16, 2021. Mot. 12; *see also* Berntson Decl. ¶¶ 40-43

17 (prefacing factual statements with "[a]s I testified at my first deposition in this case"). Plaintiffs

18 cannot be surprised (much less harmed) by information they have had in their possession for more

19 than one year. Plaintiffs also received Dr. Berntson's substantively similar declaration from *Calhoun*

20 in December 2021, and included in support of class certification excerpts of Dr. Berntson's March

21 2022 deposition testimony in which he explained "conversion" and "conversion tracking." Dkt. 608-

22 47, Berntson March 18, 2022 Dep. Tr. 61:9-64:22 (Plaintiffs asking "what is meant by conversion

23 or conversion tracking" after noting it was a topic on which Dr. Berntson was designated to testify

24 as a Rule 30(b)(6) deponent).

### 2.  Declaration of George Levitte (Dkt. 659-8)

26    More than eight months ago, Plaintiffs also received a declaration from Mr. Levitte filed in

27 *Calhoun* with precisely the language they now claim was not disclosed sooner. *Compare* Mot. 11

28 ("Mr. Levitte … opines that it would be 'impossible to calculate Google's advertising profits' on a

1   per-class member basis and that apportioning an aggregate judgment on this basis would provide

2   individual awards that are 'larger than the real value derived from some users' and 'smaller than the

3   real value derived from other users.'") *with Calhoun,* Dkt. 430-15 ¶¶ 5, 20 (Mr. Levitte explaining

4   "it would be impossible to calculate Google's advertising profits from each Putative Class Member"

5   and "Dividing Google Ad Manager or AdSense profits by the total number of Google Accounts or

6   Chrome users would arrive at an average that would be wildly larger than the real value derived

7   from some users, and wildly smaller than the real value derived from other users"). Plaintiffs

8   deposed Mr. Levitte on *other* parts of the *Calhoun* declaration, but chose not to question Mr. Levitte

9   on these facts. There is thus no basis for Plaintiffs' claim that "Google … chose to conceal this

10  opinion in order to ambush Plaintiffs in its *Daubert* motion of Mr. Lasinski." Mot. 11.

11      Plaintiffs also cannot show harm by leaning on issues already litigated and settled by

12  Magistrate Judge van Keulen. For example, Plaintiffs assert that "they were forced [to take the

13  depositions of Levitte and Ganem] without the benefit of their custodial document productions."

14  Mot. 14. But Plaintiffs already made this argument to Magistrate Judge van Keulen, asserting that,

15  "[i]f Google plans to have [Ganem or Levitte] submit declarations or testify in this case, then Google

16  should produce their documents and make them available for depositions." Dkt. 454-1, at 1. Judge

17  van Keulen permitted Plaintiffs the depositions (which they took, with their *Calhoun* declarations

18  in hand), but held that Plaintiffs could not show "that [Levitte and Ganem were] likely to possess

19  custodial documents that warrant custodial searches" in light of the "voluminous productions

20  [Google had already made] to date." *Id.* at 2-3. The Court's reasoned (and correct) decision does not

21  constitute harm.

### 3.   Declaration of Jonathan McPhie (Dkt. 659-6)

23      That Mr. McPhie was not included on Google's amended initial disclosures has not

24  prejudiced Plaintiffs.  Mr. McPhie's declaration amounts to authentication testimony, similar to the

25  testimony provided in *Calhoun* by a former Google employee and Mr. McPhie's former supervisor,

26  Greg Fair. *Supra* 5. Mr. Fair was listed on Google's amended initial disclosures to testify about

27  "Google's disclosures regarding data collection practices and Google systems that obtain and record

28  user consent." Pls.' Ex. 10 at 7. Google's subsequent decision to submit with its opposition to class

1  certification a declaration from a current employee (who Plaintiffs were long-aware had been one

2  of Mr. Fair's direct reports, *see* Pls.' Ex. 6 at 8) on the same topic is no basis for a finding of harm

3  or exclusion. *Cas. v. Dunmore*, 2016 WL 6611184, at *5 (E.D. Cal. Nov. 9, 2016) ("It is

4  unreasonable for Defendants to believe that they can exclude the testimony of employees based on

5  the fact that their predecessor was the one originally named in the Initial Disclosure"); *Curley v.*

6  *Wells Fargo & Co.*, 120 F. Supp. 3d 992, 1000 (N.D. Cal. 2015), *aff'd,* 692 F. App'x 900 (9th Cir.

7  2017) (declining to exclude declaration where plaintiff had an opportunity to depose another witness

8  on the same topic). None of the cases cited by Plaintiffs involve simple replacement of a former

9  employee by a current employee on the same topic. *See* Mot. 14.

10      Further, Plaintiffs' claim that they have lost a crucial opportunity to depose Mr. McPhie on

11  this authenticating testimony is overblown; they do not identify a single fact in his declaration that

12  they actually dispute. Google produced numerous versions of the disclosures themselves (most of

13  which were public record) in discovery, and Plaintiffs deposed multiple Google witnesses about

14  them. *See, e.g.*, Dkt. 659-6 (identifying numerous versions of disclosures by produced Bates

15  numbers); Ex. 8 (produced privacy policy introduced by Plaintiffs in multiple depositions). And

16  despite having a similar authenticating declarations from Mr. Fair submitted with Google's motion

17  for summary judgment and opposition to class certification in *Calhoun*, Plaintiffs chose not to ask

18  Mr. Fair about them during his *Brown* deposition. There is no reason to believe Plaintiffs would

19  have done so with Mr. McPhie in this case.

20              *4.  Declaration of Steve Ganem (Dkt. 666-17)*

21      Of the two paragraphs Plaintiffs challenge in the declaration of Steve Ganem, one was

22  included verbatim in Mr. Ganem's *Calhoun* declaration. *Compare* Mot. 13 ("Mr. Ganem opines that

23  'it would be impossible to calculate Google Analytics' revenue or profits on a per-individual-

24  website visitor (user) basis'") *with Calhoun*, Dkt. 430-9 ¶ 36 (Mr. Ganem explaining "[i]t would be

25  impossible to calculate Google Analytics' revenue or profits on a per-individual-website visitor

26  (user) basis"). Plaintiffs introduced Mr. Ganem's *Calhoun* declaration as an exhibit in his *Brown*

27  deposition, but chose not to ask about this particular statement.

28

The only other statement challenged by Plaintiffs is a single sentence explaining, "[i]t is my understanding that other browsers' PBMs handle cookies in a similar manner," which functions as context for a section regarding "[d]evice-level settings on a user's Chrome browser." Mot. 13; Levitte Decl. ¶ 31. Not only is this non-controversial and easily verifiable statement explicitly limited to Mr. Ganem's personal knowledge and therefore not expert testimony, Plaintiffs have not identified any harm it has allegedly caused, much less harm justifying exclusion of Mr. Ganem's entire declaration.

**IV.   CONCLUSION**

For these reasons, Plaintiffs' motion should be denied.

1   DATED:  September 14, 2022              Respectfully submitted,

2                                          QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
3

4

5                                          By _____/s/ Andrew H. Schapiro_____
                                              Andrew H. Schapiro
6
                                              Andrew H. Schapiro (admitted *pro hac vice*)
7                                             andrewschapiro@quinnemanuel.com
                                              Teuta Fani (admitted *pro hac vice*)
8                                             teutafani@quinnemanuel.com
                                              191 N. Wacker Drive, Suite 2700
9                                             Chicago, IL 60606
                                              Telephone: (312) 705-7400
10                                            Facsimile: (312) 705-7401
11
                                              Stephen A. Broome (CA Bar No. 314605)
12                                            stephenbroome@quinnemanuel.com
                                              Viola Trebicka (CA Bar No. 269526)
13                                            violatrebicka@quinnemanuel.com
                                              Crystal Nix-Hines (Bar No. 326971)
14                                            crystalnixhines@quinnemanuel.com
                                              Alyssa G. Olson (CA Bar No. 305705)
15                                            alyolson@quinnemanuel.com
                                              865 S. Figueroa Street, 10th Floor
16                                            Los Angeles, CA 90017
                                              Telephone: (213) 443-3000
17                                            Facsimile: (213) 443-3100
18
                                              Diane M. Doolittle (CA Bar No. 142046)
19                                            dianedoolittle@quinnemanuel.com
                                              Sara Jenkins (CA Bar No. 230097)
20                                            sarajenkins@quinnemanuel.com
                                              555 Twin Dolphin Drive, 5th Floor
21                                            Redwood Shores, CA 94065
                                              Telephone: (650) 801-5000
22                                            Facsimile: (650) 801-5100
23
                                              Jomaire A. Crawford (admitted *pro hac vice*)
24                                            jomairecrawford@quinnemanuel.com
                                              51 Madison Avenue, 22nd Floor
25                                            New York, NY 10010
                                              Telephone: (212) 849-7000
26                                            Facsimile: (212) 849-7100
27

28

1
2
3
4

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

5
6
7
8
9
10

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

11
12
13
14

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

15
16

*Attorneys for Defendant Google LLC*

17
18
19
20
21
22
23
24
25
26
27
28

Case No. 4:20-cv-03664-YGR-SVK

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE EMPLOYEE DECLARATIONS