# EXHIBIT 4

CONFIDENTIAL

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  OAKLAND DIVISION

                      ---o0o---

4    CHASOM BROWN, et al.,        )

5    on behalf of themselves      )

6    and all others similarly     )

7    situated,                    )

8            Plaintiffs,          )

9    vs.                          )Case No.

10   GOOGLE LLC,                  )4:20-cv-03664-YGR-SVK

11           Defendant.           )

     _____)

12

13                    CONFIDENTIAL

14                      ---o0o---

15           Videotaped Zoom Deposition of

16           KONSTANTINOS PSOUNIS, Ph.D.

17             Friday, August 19, 2022

18                      ---o0o---

19

20

21   Katy E. Schmidt

22   RPR, RMR, CRR, CSR 13096

23   Veritext Job No.: 5344586

24

25   PAGES 1 - 250

                                              Page 1

1      IN THE UNITED STATES DISTRICT COURT
2      FOR THE NORTHERN DISTRICT OF CALIFORNIA
3            OAKLAND DIVISION
                 ---o0o---
4  CHASOM BROWN, et al.,     )
5  on behalf of themselves   )
6  and all others similarly  )
7  situated,            )
8        Plaintiffs,     )
9  vs.              )Case No.
10 GOOGLE LLC,          )4:20-cv-03664-YGR-SVK
11      Defendant.     )
   _____)
12       BE IT REMEMBERED that, pursuant to Notice,
13 and on Friday, the 19th day of August, 2022,
14 commencing at the hour of 9:04 a.m., thereof, in Los
15 Angeles, California, before me, KATY E. SCHMIDT, a
16 Certified Shorthand Reporter in and for the County of
17 Yolo, State of California, there virtually personally
18 appeared
19
20       KONSTANTINOS PSOUNIS, Ph.D.
21 called as a witness herein, who, being by me first
22 duly sworn, was thereupon examined and interrogated as
23 hereinafter set forth.
24
25
                                                    Page 2

APPEARANCES:

1  APPEARANCES:
2
3  For The Brown Plaintiffs:
4       (Appeared via Zoom)
5       MORGAN & MORGAN
6       BY: JOHN YANCHUNIS, Esq.
7       BY: RYAN MCGEE, Esq.
8       201 North Franklin Street, Suite 700
9       Tampa, Florida 33602
        813.223.0931
10      jyanchunis@forthepeople.com
11
        (Appeared via Zoom)
12      BOIES SCHILLER FLEXNER LLP
13      BY: MARK MAO, Esq.
14      BY: ALISON ANDERSON, Esq.
15      BY: ERIKA NYBORG-BURCH, Esq.
16      BY: LOGAN WRIGHT, Esq.
17      44 Montgomery Street, 41st Floor
18      San Francisco, California 94104
        415.293.6800
19      mmao@bsfllp.com
20
21      SUSMAN GODFREY, LLP
22      BY: JOHN PRIDDY, Esq.
23      1301 Avenue Of The Stars, 32nd Floor
24      New York, New York 10019
25      212.729.2044
                                                    Page 3

1  APPEARANCES CONT.:
2
3  For the Calhoun Plaintiffs:
4       (Appeared via Zoom)
5       SIMMONS HANLY CONROY
6       BY: AN TRUONG, Esq.
7       112 Madison Avenue, 7th Floor
8       New York, New York 10016-7416
9       212.257.8482
10      atruong@simmonsfirm.com
11
12 For The Defendants:
13      (Appeared via Zoom)
14      QUINN EMANUEL URQUHART & SULLIVAN LLP
15      BY: JOSEF ANSORGE, Esq.
16      BY: CARL SPILLY, Esq.
17      1300 I Street, Suite 900
18      Washington, D.C. 20005
19      202.538.8000
20      josefansorge@quinnemanuel.com
21
22 Also present:
23      Sean Grant, Videographer
24      Jonathan Hochman, Expert Witness
25
                                                    Page 4

1              INDEX OF EXAMINATION
2                  ---o0o---
3                              Page
4  Examination by Mr. Mao              10
5  Examination by Mr. Ansorge          229
6
7                  ---o0o---
8
9      QUESTIONS INSTRUCTED NOT TO ANSWER
10
11       Page     Line
12
13       (NOTHING OFFERED.)
14
15                 ---o0o---
16
17
18
19
20
21
22
23
24
25
                                                    Page 5

2 (Pages 2 - 5)

1 collaborators, I always refer to them their first      03:04
2 name.  This is just my way of collaborating with      03:04
3 people.  It could be Gao.  But I find this immaterial,   03:04
4 if I'm allowed to say.                03:04
5 BY MR. MAO:                03:05
6     Q.  Did you find her qualifications immaterial      03:05
7 as well and therefore you don't remember right now?     03:05
8     MR. ANSORGE:  Yeah.  Objection.        03:05
9 Argumentative.                03:05
10     THE WITNESS:  Not at all.  I do consider      03:05
11 extremely important that my collaborators have      03:05
12 appropriate qualifications and this has been -- the     03:05
13 assurance to this effect has been given to me by     03:05
14 Mr. Ansorge.                03:05
15 BY MR. MAO:                03:05
16     Q.  So what are her qualifications, sir, sitting   03:05
17 here today, defending your opinion?          03:05
18     MR. ANSORGE:  Objection.  Asked and      03:05
19 answered.                03:05
20     THE WITNESS:  I already answered.  But,     03:05
21 again, I got an assurance that she has the right      03:05
22 qualifications.  I don't have a list off the top of my   03:05
23 head now to tell you X 1, 2, 3, 4, 5, 6.        03:05
24     I did find her quite able to execute this     03:05
25 stuff.  I was asking her.  I can say that.      03:05

Page 174

1 BY MR. MAO:                03:06
2     Q.  Did you check whether or not she had      03:06
3 technical qualifications to run the tests that you     03:06
4 needed?                03:06
5     A.  I inquired about it and I've been assured     03:06
6 that she has.  I didn't ask her to show me her     03:06
7 diplomas to verify myself that they are genuine, sir,   03:06
8 so...                03:06
9     Q.  And what are her technical qualifications,   03:06
10 as you sit here today?            03:06
11     MR. ANSORGE:  Objection.  Asked and       03:06
12 answered.  Argumentative.          03:06
13 BY MR. MAO:                03:06
14     Q.  What are they specifically?        03:06
15     A.  I got assurance from Mr. Ansorge that she     03:06
16 has technical qualifications.          03:06
17     I don't want to say something that it's     03:06
18 inaccurate.  I just don't like inaccurate answers.  I   03:06
19 mean...                03:07
20     Q.  Does she have more than a humanities degree?  03:07
21     A.  For sure, yes.            03:07
22     Q.  Okay.  Does she have a technical degree?    03:07
23     A.  As far as I recall, yes.        03:07
24     Q.  What kind of technical degree?        03:07
25     A.  I'm going to speculate -- not speculate.     03:07

Page 175

1 I'm going to try to remember to the best of my      03:07
2 recollection.  I think it's a computer science      03:07
3 Master's degree.  But I'm not sure.  I mean --      03:07
4     MR. ANSORGE:  Objection.  Asked and      03:07
5 answered.                03:07
6     And at this point I'd also like to caution     03:07
7 the witness to not reveal privileged communications     03:07
8 and to not speculate about the qualifications of     03:07
9 anybody.                03:07
10     MR. MAO:  Mr. Ansorge, you are on extremely    03:07
11 thin ice.  You know I like you --        03:07
12     MR. ANSORGE:  You asked the same question    03:07
13 four times over, Mr. Mao.  You're badgering the      03:07
14 witness with the same question four times over.  And    03:07
15 he's nice, he's polite, and he's providing different    03:07
16 responses each time, and he's searching for answers to  03:08
17 your question.  But if you were to actually look at     03:08
18 the transcript, you've asked him repeatedly the exact   03:08
19 same question.                03:08
20 BY MR. MAO:                03:08
21     Q.  How did you supervise Tracy's tests in this   03:08
22 case?                03:08
23     A.  I have already answered this.  Not the last   03:08
24 five minutes, but about a couple of hours ago when we    03:08
25 discussed about the way -- by ways I have run the test  03:08

Page 176

1 I have -- I am reporting in my report.  I can repeat    03:08
2 this or I can -- I don't mind.  I can repeat this, or    03:08
3 you can look back at the transcript.        03:08
4     Q.  Did you produce all of the tests?        03:08
5     A.  I'm not sure what you mean by that.        03:08
6     Q.  What did you and Tracy test?        03:08
7     A.  I am referring to the tests that I include     03:08
8 in my report.  You can see in my report there are some   03:09
9 tests and some numbers.            03:09
10     Q.  Which parts of the -- which parts of your     03:09
11 report and tests were done by Tracy?        03:09
12     MR. ANSORGE:  Objection.  Mischaracterizes     03:09
13 testimony.                03:09
14     THE WITNESS:  There are no parts or tests of    03:09
15 my report that they were done by Tracy.  There are     03:09
16 some tests, data tests, data experiments, for which I    03:09
17 have oversaw and dictated and described in detail to     03:09
18 be executed.  And Tracy, Ms. Gao -- I don't know if I    03:09
19 have the right last name.  It's more polite, I would     03:09
20 say, to use Ms. Gao in this official context, if this   03:10
21 is the right last name -- was the person from counsel   03:10
22 that executed my instructions.          03:10
23     Now, that I corrected the characterization    03:10
24 of whether somebody else has executed anything or      03:10
25 produced anything in my report, which is not the case,  03:10

Page 177

45 (Pages 174 - 177)

1 I will tell you which parts of my report have numbers 03:10
2 based on data. 03:10
3     So there are two types -- 03:10
4 BY MR. MAO:
5   Q.  No.  No, no, sir.  You need to be able to 03:10
6 tell me, okay, which parts of your report, okay, were 03:10
7 done or assisted by Tracy.  Let's start there so that 03:10
8 we don't get into an argument. 03:10
9     MR. MAO:  And, Joey, if you so much as try 03:10
10 to tamper with this, we're going to the Court. 03:11
11     MR. ANSORGE:  Objection.  Same objection. 03:11
12 Argumentative. 03:11
13     MR. MAO:  Go ahead. 03:11
14 BY MR. MAO: 03:11
15   Q.  Go ahead, Professor. 03:11
16   A.  Yes.  So let's just do this and move on. 03:11
17     Okay.  So let's go down.  I'm scrolling. 03:11
18     In an effort to give you a list, can I use a 03:12
19 Post-it™ to put notes or should I remember in the 03:12
20 process which parts are -- 03:12
21   Q.  Well, technically you were supposed to 03:12
22 disclose that as part of the report, but since you 03:12
23 didn't do that, you know, like I don't know what you 03:12
24 need right now in order to demarcate this.  But I 03:12
25 would like some type of demarcation as to which parts 03:12
                                        Page 178

1 were assisted by Ms. Gao. 03:12
2     MR. ANSORGE:  Objection.  Argumentative. 03:12
3     And you appear to entirely have forgotten 03:12
4 that there's a stipulation between the parties that 03:12
5 extend to drafts and preparation.  And although that 03:12
6 was a very important issue -- 03:12
7     MR. MAO:  Not tests.  I mean, if your -- if 03:12
8 your colleague is running tests, technical tests for a 03:12
9 professor, I am absolutely entitled to that.  It 03:12
10 should have been disclosed in the reporting, and you 03:12
11 know that, Joey. 03:12
12     MR. ANSORGE:  This is the equivalent -- 03:12
13 BY MR. MAO: 03:12
14   Q.  What part of the test or analysis was done 03:12
15 by the lawyer? 03:12
16     MR. ANSORGE:  Mr. Mao, asked and answered 03:13
17 many times over. 03:13
18     THE WITNESS:  So, one, I don't understand 03:13
19 all the legal stuff you guys are discussing.  I'm 03:13
20 going to again say the following: 03:13
21     The experiments test, I'm going to talk 03:13
22 about over the next few minutes, as I will be scanning 03:13
23 my report, have been done -- have been run essentially 03:13
24 by me in the sense that I supervised them and I 03:13
25 fully -- I gave very, very precise instructions, 03:13
                                        Page 179

1 Mr. Mao.  It's like a lot more precise instructions 03:13
2 than the ones I give on my students, to tell you the 03:13
3 truth. 03:13
4     It's like instructions I give to undergrads 03:13
5 when they are working for me in the context of a 03:13
6 grant.  Like do this, one, two, three, four, five. 03:13
7 Extremely precise.  You cannot mess it up.  It's an 03:13
8 execution task at that point. 03:13
9     And then the reason why I did it is because 03:14
10 I did not want to use USC equipment to actually run 03:14
11 the CPU cycles required to do it.  So I gave very 03:14
12 precise instructions that an undergrad could do 03:14
13 easily. 03:14
14     And then Ms. Tracy Gao was the person 03:14
15 that -- hopefully I'm not misspelling her name, last 03:14
16 name -- that did them and then sent the data back to 03:14
17 me, and then there was back and forth, to make sure 03:14
18 everything is properly done. 03:14
19     So the first such case in my report, if you 03:14
20 go to appendix G, profile data, this is the first 03:14
21 case.  And let me -- what I'm doing is I'm doing a 03:14
22 search to also point out to where you will see me 03:14
23 mentioning this in the actual report. 03:14
24     Because Mr. Hochman himself cited this 03:14
25 DBLS data, I got the data and I ran the test we are 03:15
                                        Page 180

1 discussing right now.  And you can find more in 03:15
2 paragraph 80 of my report that refers to this data and 03:15
3 the tests. 03:15
4 BY MR. MAO: 03:15
5   Q.  Any other parts that were either done by 03:15
6 Ms. Gao or assisted by Ms. Gao? 03:15
7   A.  As I said, no parts of my reports was done 03:15
8 by Ms. Gao. 03:15
9   Q.  What part contains tests run by Ms. Gao? 03:15
10   A.  I'm sorry.  What -- 03:15
11     MR. ANSORGE:  Objection.  Argumentative. 03:15
12 Asked and answered. 03:15
13 BY MR. MAO: 03:15
14   Q.  What parts of your report contain tests run 03:15
15 by Ms. Gao? 03:15
16   A.  Run.  Okay. 03:15
17     What parts of my report contain test results 03:15
18 for which Ms. Gao executed the actual program in 03:16
19 servers other than mine is the way I would put it for 03:16
20 one more time. 03:16
21     And -- so, Mr. Mao, let's just agree on what 03:16
22 I'm saying that has happened.  I'm under oath.  I'm 03:16
23 telling you exactly what has happened.  So let's just 03:16
24 characterize it the way it is and I'm giving you -- I 03:16
25 promise I'm giving you, as always, very accurate 03:16
                                        Page 181

46 (Pages 178 - 181)

1 information.                              03:16
2      So paragraph 80, I am referring to this, and    03:16
3 there is a table, you can see this table with some     03:16
4 Biscotti cookies and UIDs and a creation timestamp.     03:16
5      Then paragraph 82 is referring to these two    03:16
6 documents that we had a discussion about this earlier    03:16
7 on in my deposition, and you can find them in the       03:16
8 appendix G, as I said, profile data. Paragraph 82 is    03:16
9 referring to the results of this test.              03:16
10      Then there is one more place that I would    03:17
11 like to bring to your attention to that matter and     03:17
12 this is --                              03:17
13      So would you like me to give you paragraphs    03:17
14 so that it's very precise, paragraph numbers?       03:17
15   Q.  Yes, sir.  Because precise is how you began    03:17
16 the deposition?                         03:17
17   A.  Perfect.                         03:17
18      If you go to paragraph l22, I am discussing    03:18
19 the fact that user agents are served by many, many,    03:18
20 many devices.  I have some citations to the fact of    03:18
21 the top 10 most popular user agents.  User agents, by    03:18
22 the way, are served by tens of millions of people in    03:18
23 the U.S.                              03:19
24      And then in paragraph 122, I am using the    03:19
25 data submitted by the plaintiffs, and I'm doing    03:19

Page 182

1 basically a matching exercise and I'm reporting some    03:19
2 numbers about user agents and they are common among    03:19
3 multiple plaintiffs in this paragraph.             03:19
4   Q.  Any other paragraphs or sections?       03:19
5   A.  I am very meticulously going through this.    03:19
6      Okay.  If you go to paragraph 120.       03:20
7   Q.  Okay.                           03:20
8   A.  I am analyzing data produced in -- Google    03:20
9 produced under the special master process, essentially    03:20
10 he same data I was referring to before, for       03:20
11 IP addresses now; that they have multiple GAIAs       03:20
12 associated with them.  And I actually found       03:21
13 IP addresses with this property as well, particularly    03:21
14 IP addresses that they correspond to more than one of    03:21
15 the plaintiffs.                         03:21
16      So 120 paragraph is showing IP addresses    03:21
17 that correspond to more than one of the plaintiffs,    03:21
18 and 122, as I already said, lists UAs that correspond    03:21
19 to more than one of the plaintiffs.             03:21
20      And to be, as always, extremely precise, let    03:21
21 me also go to the appendices to make sure there's no    03:21
22 appendix related to this data.  I don't remember.    03:21
23 Just --                              03:21
24   Q.  I'm curious, Professor, why didn't you ask    03:21
25 Google for equipment to run your tests and       03:21

Page 183

1 experiments?                           03:21
2   A.  I didn't see the need for it.  I don't       03:22
3 interact with Google at all.  I haven't interacted       03:22
4 with anybody from Google at all throughout this       03:22
5 period.  I haven't talked to a single person from       03:22
6 Google.                              03:22
7   Q.  How much would you estimate the equipment       03:22
8 would have cost you in order to be able to run these       03:22
9 experiments?  The ones that you list in your report,       03:22
10 how much would it cost you?                03:22
11   A.  I don't --                        03:22
12      MR. ANSORGE:  Mr. Mao, I've been quiet for    03:22
13 quite a while, so let me refer you back to the       03:22
14 stipulation which you said does not apply.  The first    03:22
15 part of it states explicitly that communications --    03:22
16      MR. MAO:  No speaking objections.  Don't       03:22
17 make a speaking objection.                03:22
18      MR. ANSORGE:  No.  I'm telling -- I'm       03:22
19 speaking to you directly on this.  We have a       03:22
20 stipulation saying the content of oral, written, or    03:22
21 other communications --                   03:22
22      MR. MAO:  Mr. Ansorge --              03:22
23      MR. ANSORGE:  -- among and between --       03:22
24 Mr. Mao --                           03:22
25      MR. MAO:  The name is not disclosed as part    03:22

Page 184

1 of --                                03:22
2      MR. ANSORGE:  -- counsel and the expert or    03:22
3 the expert staff and their supporting firms.       03:22
4      And you are explicitly asking about data    03:23
5 pulls that Dr. Psounis asked his counsel about.  And    03:23
6 you're having that listed out in a form in which all    03:23
7 you're doing is creating heat at this point.       03:23
8      We have a specific stipulation that goes to    03:23
9 this issue, Mr. Mao.                      03:23
10      MR. MAO:  I asked him -- the last question    03:23
11 in which you interrupted me and went on this tirade    03:23
12 was asking him about how much the equipment would have    03:23
13 cost in order for him to acquire and do it himself.    03:23
14      Are you withdrawing -- are you going to       03:23
15 stand down or are we going to pause on that question?    03:23
16      MR. ANSORGE:  What I'm objecting to is your    03:23
17 entire line of questioning about Ms. Gao --       03:23
18      MR. MAO:  Joey, my deposition -- stop, stop.    03:23
19      Okay?                           03:23
20 BY MR. MAO:                           03:23
21   Q.  Professor, how much would the equipment have    03:23
22 cost in order for you to be able to not use USC's       03:23
23 equipment and do -- run the test on your own       03:23
24 equipment?                           03:23
25      MR. ANSORGE:  Objection.  Calls for       03:23

Page 185

47 (Pages 182 - 185)

1 speculation.                                    03:23
2        THE WITNESS:  I do not know.                03:24
3 BY MR. MAO:                                     03:24
4    Q.  You do not know as a technical expert how    03:24
5 much it would have cost you, even an estimate?     03:24
6    A.  I --                                     03:24
7        MR. ANSORGE:  Same objection.               03:24
8        THE WITNESS:  I have not analyzed, looked    03:24
9 into it, counted cycles, so no.                    03:24
10 BY MR. MAO:                                    03:24
11    Q.  And it never occurred to you that you can    03:24
12 ask Google for equipment to run experiments -- run    03:24
13 these tests that you refer to in your report?       03:24
14        MR. ANSORGE:  Objection.  Mischaracterizes    03:24
15 Exhibit 1.  Mischaracterizes prior testimony.  And    03:24
16 argumentative.                                03:24
17        THE WITNESS:  As I said, I have not         03:24
18 interacted with anybody from Google throughout this    03:24
19 time.  I don't feel like I am working for Google or    03:24
20 anything like that.  I've been retained by the      03:24
21 counsel.  The natural thing to do for me was to reach    03:24
22 out to counsel about this.  And I'm going to stay out    03:24
23 of the legal arguments that you guys have.          03:25
24 BY MR. MAO:                                    03:25
25    Q.  Have you -- you've done prior expert        03:25

Page 186

1 reports, technical expert reports in other cases.     03:25
2        Isn't that correct, Professor?               03:25
3    A.  Correct.                                 03:25
4    Q.  And people that assist you in the           03:25
5 formulation of your report in those other cases, did    03:25
6 you list them in your report?                      03:25
7    A.  I don't remember, but I believe -- I'm        03:25
8 trying to remember my recent report.  I don't remember    03:25
9 if I listed them or not.  It's been some months now.    03:25
10    Q.  Do you know whether under the Rules of      03:25
11 Evidence and procedure for experts, do you know      03:25
12 whether or not you need to list people who assisted    03:26
13 you in the creation of your report?                03:26
14    A.  No.                                     03:26
15        MR. ANSORGE:  Mr. Mao, same objection       03:26
16 referring to the stipulation between the parties.  I    03:26
17 don't want us to get into a shouting match, but it's    03:26
18 beyond the pale, nothing we've ever done with any of    03:26
19 your witnesses and something where you at this point    03:26
20 would have stopped the deposition.  We won't do so    03:26
21 because the facts are on our side.  But we plead with    03:26
22 you to return to substantive questioning and stop    03:26
23 harassing the witness in this fashion.            03:26
24 BY MR. MAO:
25    Q.  Are you sure her last name was Gao, G-a-o?    03:26

Page 187

1    A.  No.  I can check.                         03:26
2    Q.  Was she the only person that assisted you on    03:26
3 these tests?                                    03:26
4        MR. ANSORGE:  Objection.  Mischaracterizes    03:26
5 prior testimony.  Assumes facts not in evidence.     03:26
6 Asked and answered many times over in direct violation    03:26
7 of the stipulation that the parties have reached with    03:27
8 regard to discovery of expert work.                03:27
9 BY MR. MAO:                                     03:27
10    Q.  Sir, you're not being instructed not to      03:27
11 answer because your counsel knows I'm right.        03:27
12    A.  Again, I want to stay out of the legal part.    03:27
13        MR. ANSORGE:  Yes.                        03:27
14        Object to that entirely, to that            03:27
15 characterization.                               03:27
16        THE WITNESS:  She was the only person that    03:27
17 executed my detailed instructions about what exactly    03:27
18 to do in order to produce the numbers in the results    03:27
19 that I have in the report.                        03:27
20 BY MR. MAO:                                    03:27
21    Q.  Was she the only person who was providing    03:27
22 you materials as well for review?                  03:27
23        MR. ANSORGE:  Objection.  Direct violation    03:27
24 of the stipulation the parties have reached, Mr. Mao.    03:27
25        THE WITNESS:  I'm not sure I understand what    03:28

Page 188

1 you mean by providing me direct materials.          03:28
2        Is it about the test?  It's about what?       03:28
3 BY MR. MAO:                                     03:28
4    Q.  Going back to Exhibit No. 9.                03:28
5        After you having read all those paragraphs    03:28
6 you did to find which Tracy we're talking about, do    03:28
7 you recall what joining beacons are for             03:28
8 Google Analytics?                               03:28
9        MR. ANSORGE:  Objection.  Asked and         03:28
10 answered.                                     03:28
11        THE WITNESS:  I'm giving you the same answer    03:28
12 I gave before.                                  03:28
13 BY MR. MAO:                                    03:28
14    Q.  Which is what?                           03:28
15    A.  I don't know what is the rules here.  What    03:28
16 are the rules here?                             03:28
17    Q.  The rules are if your attorney does not      03:28
18 instruct you to answer -- not to answer, you're      03:28
19 required to answer.  So please, Professor --        03:28
20        MR. ANSORGE:  Yeah.                       03:29
21 BY MR. MAO:                                    03:29
22    Q.  -- what are joining beacons for            03:29
23 Google Analytics?                               03:29
24        MR. ANSORGE:  There's valid objections.      03:29
25 Asked and answered.  Argumentative.  It's harassment    03:29

Page 189

48 (Pages 186 - 189)

1 undermine the opinions you offered in your report?   05:18
2   A.  Not at all.  Actually, my opinion related to   05:18
3 this sentence in my report explicitly says that Google   05:18
4 does not join unauthenticated with authenticated,   05:19
5 which is what this says.  "But not from an   05:19
6 authenticated to unauthenticated log sources in   05:19
7 particular or vice versa."   05:19
8   Q.  Dr. Psounis, do you recall Mr. Mao asked you   05:19
9 a series of questions about Exhibit 6?  If you could   05:19
10 please pull that up.   05:19
11   A.  I pulled it up.   05:19
12   Q.  And you see at the top this document is   05:19
13 labeled "Incognito Events Labeling"?  And then if you   05:19
14 look down three lines, do you see where it says   05:19
15 "Status:  Proposed"?   05:19
16   A.  Yes, I see that.   05:19
17   Q.  Now, if you go further down, you see there's   05:19
18 four different approvers that are listed, four   05:19
19 different user names.   05:19
20   Do you see those?   05:19
21   A.  Yes, I do.   05:19
22   Q.  And you see that for three of them it states   05:20
23 "Approved" and for one it states "Pending"?  You see   05:20
24 that?   05:20
25   A.  Yes.   05:20

Page 234

1   Q.  Just based on this document before you,   05:20
2 would you expect this to indicate that something has   05:20
3 been implemented or does it look to you like this is   05:20
4 indicating that something is being proposed and has   05:20
5 yet to be approved?   05:20
6   MR. MAO:  Objection.  Leading.  Calls for   05:20
7 speculation.   05:20
8   Go ahead.   05:20
9   THE WITNESS:  This is clearly something that   05:20
10 it's at the proposed status, pending approval from   05:20
11 approver with user name "alihanlivdumlu."   05:20
12 BY MR. ANSORGE:   05:20
13   Q.  Dr. Psounis, could you please turn to the   05:20
14 page ending with the Bates designation 797, and let me   05:20
15 know once you're there?   05:21
16   A.  I am there.   05:21
17   Q.  Second page of the document.   05:21
18   You see there's a comment on the side that   05:21
19 says "Commented (5)."  It states that:   05:21
20   "Agree that extension provides more   05:21
21   flexibility in the future, especially   05:21
22   'incognito mode' is a concept across   05:21
23   app-level (example, Search, YouTube, GMM?)   05:21
24   and platform-level (example, Chrome and   05:21
25   Android.)   05:21

Page 235

1   Do you see that?   05:21
2   A.  I do.   05:21
3   Q.  Dr. Psounis, what's your opinion about the   05:21
4 maybeChromeincognito bit, which is opinion 8 of your   05:21
5 expert report, related to the app level or the   05:21
6 platform level?   05:21
7   A.  It is related to what is being referred to   05:21
8 here as platform level.  It has to do with browsers,   05:21
9 Chrome, example.   05:21
10   Q.  Now, Dr. Psounis, how many opinions are in   05:21
11 your expert report?   05:21
12   A.  I remember that by heart; 13.   05:22
13   Q.  And today Mr. Mao asked you about   05:22
14 opinions 1, 2, and 8.   05:22
15   Do you recall that?   05:22
16   A.  Do you mind if I go through my executive   05:22
17 summary?   05:22
18   Actually, no.  I'm going to go through the   05:22
19 table of contents, just to make sure that I'm   05:22
20 answering precisely.   05:22
21   We touched pieces related to my opinion 1,   05:22
22 2, and 8.  I didn't end up giving justification for   05:22
23 either of these three opinions and do them full   05:23
24 justice.  But, yes, he did ask me about 1, 2, and 8.   05:23
25 There was a lot of back and forth.   05:23

Page 236

1   Q.  And did Dr. -- did Mr. Mao ask you about any   05:23
2 other opinions in your expert report today?   05:23
3   A.  Let me read the rest of that.   05:23
4   I don't remember Mr. Mao raising any other   05:23
5 opinion number to me.   05:23
6   I can for sure say that there was no   05:23
7 discussion about entropy, on fingerprinting,   05:23
8 identifying class members, either class 1 or class 2.   05:23
9 No discussion about certain devices or certain   05:23
10 accounts.  No discussion about the three opinions   05:24
11 related to Mr. Schneier.   05:24
12   I brought up -- at some point Mr. Mao talked   05:24
13 about joining stuff, but he never asked me about my   05:24
14 opinion 3.  I remember the discussion with the joint   05:24
15 beacon that was a controversy.   05:24
16   Q.  Dr. Psounis, do you recall Mr. Mao asking   05:24
17 you a series of questions about PPID?   05:24
18   A.  Yes.   05:24
19   Q.  Do you recall he asked you about a scenario   05:24
20 in particular where a user pulls a PPID from their   05:24
21 browser and provides that to Google?  Do you recall   05:24
22 that?   05:24
23   A.  Can you repeat again the question?  I'm   05:25
24 getting a little bit jet-lagged.   05:25
25   Q.  Sure.  It's been a long day and thank you   05:25

Page 237

60 (Pages 234 - 237)

1        MR. ANSORGE:  No further questions at this     05:36
2  time.  We reserve the right for further questions     05:37
3  depending on Mr. Mao's redirect.                  05:37
4        MR. MAO:  I have no questions, although I'm     05:37
5  slightly tempted at just having him read his whole     05:37
6  report into the record.  I'm kidding.              05:37
7        MR. ANSORGE:  That would have been a better     05:37
8  use of the past seven hours, Mr. Mao.             05:37
9        MR. MAO:  I don't know about that.          05:37
10       Dr. Psounis -- Professor, it was an honor.    05:37
11  I'm sorry that, you know, this is adversarial.        05:37
12       Thank you, Mr. Ansorge.                     05:37
13       MR. ANSORGE:  Thank you, Mr. Mao.           05:37
14       With that, we can go off the record.         05:37
15       THE VIDEOGRAPHER:  This concludes today's     05:37
16  deposition of Dr. Konstantinos Psounis.  We are off     05:37
17  the record at 5:37 p.m.  The number of units -- media     05:37
18  units is seven and will be retained by Veritext.      05:37
19       Thank you.                                  05:37
20       THE COURT REPORTER:  Thanks, Counsel.       05:39
21       Before we go, are we doing the rough today     05:39
22  and then the final by Monday or Wednesday?        05:39
23       MR. MAO:  Rough today, yes.  Rough today,    05:39
24  please.                                           05:39
25       THE COURT REPORTER:  And then final by       05:39

Page 246

1  Monday or Wednesday?                             05:39
2        MR. MCGEE:  Monday would be great.          05:39
3        MR. MAO:  Monday, if you can.              05:39
4        THE COURT REPORTER:  Final by Monday.  Okay.   05:39
5        MR. MCGEE:  Thanks always, Katy.           05:39
6  (Whereupon, the deposition adjourned at 5:39 p.m.)
7              ---o0o---
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 247

1              REPORTER'S CERTIFICATE
              ---o0o---
2  STATE OF CALIFORNIA  )
                    ) ss.
3  COUNTY OF YOLO      )
4
5      I, KATY E. SCHMIDT, a Certified Shorthand
6  Reporter in and for the State of California, duly
7  commissioned and a disinterested person, certify:
8      That the foregoing deposition was taken before
9  me at the time and place herein set forth;
10     That KONSTANTINOS PSOUNIS, Ph.D., the deponent
11  herein, was put on oath by me;
12     That the testimony of the witness and all
13  objections made at the time of the examination were
14  recorded stenographically by me to the best of my
15  ability and thereafter transcribed into typewriting;
16     That the foregoing deposition is a record of
17  the testimony of the examination.
18     IN WITNESS WHEREOF, I subscribe my name on this
19  22nd day of August, 2022.
20
21  _____
22  Katy E. Schmidt, RPR, RMR, CRR, CSR 13096
    Certified Shorthand Reporter
23  in and for the
    County of Sacramento,
24  State of California
25  Ref. No. 5344586 KES

Page 248

1  MARK MAO, Esq.
2  mmao@bsfllp.com
3                   August 22, 2022
4  RE: BROWN vs. GOOGLE LLC
5  AUGUST 19, 2022, KONSTANTINOS PSOUNIS, Ph.D., JOB NO. 5344586
6
7  The above-referenced transcript has been
8  completed by Veritext Legal Solutions and
9  review of the transcript is being handled as follows:
10  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext
11     to schedule a time to review the original transcript at
12     a Veritext office.
13  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF
14     Transcript - The witness should review the transcript and
15     make any necessary corrections on the errata pages included
16     below, notating the page and line number of the corrections.
17     The witness should then sign and date the errata and penalty
18     of perjury pages and return the completed pages to all
19     appearing counsel within the period of time determined at
20     the deposition or provided by the Code of Civil Procedure.
21  __ Waiving the CA Code of Civil Procedure per Stipulation of
22     Counsel - Original transcript to be released for signature
23     as determined at the deposition.
24  __ Signature Waived – Reading & Signature was waived at the
25     time of the deposition.

Page 249

63 (Pages 246 - 249)