**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiff*s

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendants.

Case No. 4:20-cv-03664-YGR-SVK

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE REBUTTAL EXPERT REPORT OF KONSTANTINOS PSOUNIS (DKT. 703)**

Date:       October 11, 2022
Time:       2:00 p.m.
Location:   Courtroom 1 – 4th Floor
Judge:      Hon. Yvonne Gonzalez Rogers

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ..................................................................................................... 2

        A.      Dr. Psounis's Qualifications Are Irrelevant to this Motion Because He Did Not
                Employ Them. ................................................................................... 2

        B.      Dr. Psounis's Opinions Are Not Based on a Reliable Methodology. ...................... 4

                1.      Dr. Psounis's "Entropy" Opinions Are Irrelevant ..................................... 4

                2.      Google's Arguments About Experts Not Being "Required [] to Conduct a
                        Study or Test" Concede the Point. ................................................... 5

                3.      Google Misrepresents the Limited Data that Dr. Psounis (Google's
                        Counsel) Did Review. ................................................................. 7

        C.      Dr. Psounis's Opinions Are Independently Subject to Exclusion Because Google's
                Lawyers Performed His (Limited) Data Analysis. ......................................... 9

III.    CONCLUSION ................................................................................................. 13

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE REBUTTAL EXPERT
REPORT OF KONSTANTINOS PSOUNIS (DKT. 703)

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Baker v. FirstCom Music*,
  No. LACV1608931VAPJPRX, 2018 WL 2572725 (C.D. Cal. Mar. 27, 2018) ........................ 10

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
  No. 13-CV-05038 NC, 2015 WL 9303980 (N.D. Cal. Dec. 22, 2015) .................................... 12

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ........................................................................................................... 6

*Grodzitsky v. Am. Honda Motor Co.*,
  957 F.3d 979 (9th Cir. 2020) ............................................................................................... 8

*Linares v. Crown Equip. Corp.*,
  No. EDCV161637JGBKKX, 2017 WL 10403454 (C.D. Cal. Sept. 13, 2017) ...................... 6

*Lyman v. St. Jude Med. S.C., Inc.*,
  580 F. Supp. 2d 719 (E.D. Wis. 2008) ............................................................................... 11

*Maldonado v. Apple, Inc*,
  No. 3:16-CV-04067-WHO, 2021 WL 1947512 (N.D. Cal. May 14, 2021) ............................ 7

*Matter of James Wilson Assocs.*,
  965 F.2d 160 (7th Cir. 1992) ....................................................................................... 12, 13

*Philips Med. Sys. Int'l B.V. v. Bruetman*,
  8 F.3d 600 (7th Cir. 1993) ................................................................................................. 10

*Ramirez v. ITW Food Equip. Grp., LLC*,
  686 F. App'x 435 (9th Cir. 2017) ........................................................................................ 7

*Sommerfield v. City of Chicago*,
  254 F.R.D. 317 (N.D. Ill. 2008) ........................................................................................ 11

*Wyman v. Sunbeam Prod., Inc.*,
  No. 17-CV-4926-BLF, 2021 WL 1531000 (N.D. Cal. Apr. 19, 2021) .................................. 6

# I.    INTRODUCTION

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis (Dkt. 703) ("the Motion" or "Mot.") explained how Plaintiffs' technical expert, Jonathan E. Hochman ("Mr. Hochman"), analyzed over ███ entries of data produced by Google to Plaintiffs, and how Mr. Hochman concluded that Google's Incognito detection methods, including the maybe_chrome_incognito bit, reliably distinguished Incognito traffic from regular browsing traffic with 100% accuracy. Mot. at 9. Mr. Hochman was also able to easily link such private browsing data with users' Google accounts or third-party accounts. Meanwhile, Google's rebuttal expert, Dr. Konstantinos Psounis, purported to rebut the conclusions that Mr. Hochman drew from his extensive data analysis without having looked at the data that Mr. Hochman analyzed, nor Mr. Hochman's analysis of that data. *Id.* at 3–4. Instead, Dr. Psounis relied on an associate from Google's outside law firm in this case to conduct Dr. Psounis's own (limited) analysis of ███ different sets. *Id.* at 15–16.

Google's response to Plaintiffs' Motion is telling; it attempts to distract from, rather than dispute, Plaintiffs' core argument—that some of Dr. Psounis's opinions should be excluded because he is purporting to rebut data-driven conclusions without having reviewed the underlying data or analysis he is purporting to rebut. First, Google provides a summary of what it considers to be Dr. Psounis's impressive qualifications. But whether Dr. Psounis is qualified to rebut Mr. Hochman's data analysis is besides the point because Dr. Psounis did not attempt to do so. *Second*, Google focuses on Psounis Opinion 5, relating to entropy theory, apparently seeking to draw the Court's attention to Psounis Appendix E, which Google deems to be a "technical appendix." Opp'n at 5. But this is all a red herring because Plaintiffs are not seeking to exclude Psounis Opinion 5. *Third*, Google offer other red herrings—Psounis Appendices F and G, where Dr. Psounis (i.e., counsel for Google) did conduct a limited data analysis. But Appendix G addresses just ██ data source with signed-out private browsing data (of the ███ that Google identified), and Mr. Hochman did not rely on data from ███████ to support the Hochman opinions at issue in this Motion. And Psounis Appendix F did not assess signed-out private browsing data at all, consisting entirely of

signed-in data. And even if these two appendices had in fact addressed Mr. Hochman's analysis (which they did not), Dr. Psounis's opinions would still be subject to exclusion because he did not even bother to test or verify that data himself. Instead, he was simply fed analysis prepared directly by a Quinn Emanuel associate.

Google is the largest data aggregator in the history of the world. Surely, if its Incognito detection bit was unreliable and if such data could not be linked to Google Account holders with accuracy, Google would be happy to throw its doors open and let an expert as preeminent as Dr. Psounis look at whatever data might be needed to make such assertions clear. Instead, Google effectively concealed the very data that would be necessary to test such an assertion from its expert, had its outside counsel prepare an analysis of a completely different and (for this purpose) irrelevant set of data, and then feed those opinions to the expert.[1] That is not a reliable methodology to support the rebuttal opinion that Dr. Psounis attempts to proffer. His Opinions 1, 3, and 7 through 10 should be excluded.

## II.     ARGUMENT

### A.     Dr. Psounis's Qualifications Are Irrelevant to this Motion Because He Did Not Employ Them.

Google touts Dr. Psounis's academic and industry experience to argue that Dr. Psounis is qualified to "testify with authoritative expertise on the topics at issue: information theory (entropy), browser fingerprinting, networked distribution systems, and Google's server-side architecture and practices." Opp'n at 8. Indeed, Dr. Psounis's academic and industry experience might qualify him to conduct extensive testing of Google's server-side architecture and Google's trove of private browsing data. And Dr. Psounis's academic and industry experience might qualify him to explain

---

[1] As explained in Plaintiffs' Motion to Strike the Four Google-Employee Declarants Who Did Not Submit Expert Reports, one of Google's employees, Dr. Berntson similarly purports to rebut Mr. Hochman's opinions without having even reviewed the data that Mr. Hochman reviewed. Dkt. 705 at 12. And Dr. Berntson does not actually challenge Mr. Hochman's opinion that Google can use its data to identify class members and/or verify claims. He merely suggests that Google "does not" use the combination of IP address and User Agent to identify users in the ordinary course of business and that Google has "policies" against doing so. Berntson Decl. (Dkt. 666-18) ¶ 42. Google can't drudge up a single employee to swear under oath that Google is incapable of using its data to identify Incognito users, and they refused to show their outside expert the data that would be needed to actually analyze the question. The reason is clear.

how Mr. Hochman (in Google's view) erred when drawing conclusions based on his extensive review of the private browsing data that Google produced in this case.

But Dr. Psounis did not review, analyze, or even look at a sliver of data that Mr. Hochman relied upon. Mot. at 7–9. Dr. Psounis's degrees and experience serve no purpose if not applied to his assignment to rebut the conclusions that Mr. Hochman reached from analyzing the data. A seasoned detective's decades of experience are useless if not applied to the actual evidence in the case. However qualified to do his job, that detective reaches unreliable conclusions if he instead cherry-picks limited evidence to fit a predetermined narrative. Here, Mr. Hochman reviewed and analyzed the data produced in this case to form his opinions regarding what can and cannot be done with private browsing data, including for purposes of identifying class members and verifying claims. *See e.g.*, Hochman Report Opinion 22 (Dkt. 608-12 at 5) ("[F]or Class 1, the Chrome class, Google's records can be used to (1) identify Incognito traffic, and (2) link that Incognito traffic to users' Google accounts or to users' accounts with non-Google websites."). Among other data analyses, that opinion was based on Mr. Hochman evaluating over ███ entries of browsing data produced by Google and concluding that (1) Google's Incognito detection methodologies (including the maybe_chrome_incognito bit) reliably detected whether the data was in fact "Incognito" (as opposed to regular browsing) with 100% accuracy, and (2) that Google can link signed-out Incognito traffic to specific users' Google accounts. Mot. at 9. In "rebuttal," Dr. Psounis opined that Mr. Hochman's conclusion about the reliability of maybe_chrome_incognito "is incorrect" (Opinion 8) ***without having reviewed the data and data sources on which Mr. Hochman relied***, ***nor Mr. Hochman's analysis of that data.*** That is the core problem with Dr. Psounis's opinions, not his qualifications or lack thereof.

Google now tries to distract the Court from this grave problem by bragging about Dr. Psounis's qualifications and belittling Mr. Hochman. Opp'n at 8. Google goes so far as to suggest that Dr. Psounis "could rely solely on his experience in offering" the opinions at issue in this Motion. *Id*. at 9. But Dr. Psounis is a rebuttal expert, and he is purporting to rebut opinions that were based on another expert's extensive review of actual private browsing data. Dr. Psounis

1    cannot reliably opine that Mr. Hochman erred before reviewing Mr. Hochman's actual work. Dr.

2    Psounis's qualifications (impressive or not) are simply irrelevant to this Motion, where Plaintiffs

3    are focused on Dr. Psounis's failure to review the work he purports to rebut—not some inability

4    to do so. Dr. Psounis may or may not be a fine rebuttal expert in another case that likewise includes

5    extensive data analysis. But he didn't do the necessary work here, and his opinions should now be

6    excluded.

      **B.**      **Dr. Psounis's Opinions Are Not Based on a Reliable Methodology.**

           **1.**      **Dr. Psounis's "Entropy" Opinions Are Irrelevant.**

9    Google first tries to show that Dr. Psounis grounded his opinions on a reliable methodology

10   by pointing to Dr. Psounis's "exposition of information theory and methodology to calculate

11   entropy." Opp'n at 9 (citing Psounis Opinion 5). But Plaintiffs are not seeking to exclude Psounis

12   Opinion 5, which asserts that "Mr. Hochman's description of entropy . . . is incorrect." Psounis

13   Report (Dkt. 666-21) at 44. Mr. Hochman's discussion of entropy comprised just three paragraphs

14   in his report (¶¶ 231–33) and those paragraphs did not discuss his review of the private browsing

15   data produced in this case.

16   Google's focus on Dr. Psounis's disagreement with those three paragraphs is a red herring

17   for this Motion, where Plaintiffs are focused on different Psounis opinions where Dr. Psounis

18   purports to rebut Mr. Hochman's conclusions regarding what can and cannot be done with

19   Google's data despite Dr. Psounis having not reviewed that data. Google's focus on Psounis

20   Appendix E (Opp'n at 5) is misplaced for the same reasons. Google frames Appendix E as a

21   "technical appendix . . . with formal mathematical proofs [and] methodologies for calculating

22   entropy (*id.*), but that Appendix (like Psounis Opinion 5) did not even purport to address Mr.

23   Hochman's analysis of the private browsing data produced in this case. Appendix E instead mused

24   about a scenario ████████████████████████████████████████

25   ██████████████████████████. Psounis Appendix E ¶ 44. That is not a reliable methodology.

26   But the Court need not decide that question for purposes of this Motion because Plaintiffs have not

27   moved to exclude Psounis Opinion 5, making Google's discussion of his work on that opinion

28

irrelevant.

The Court should also reject Google's last-ditch attempt to make Opinion 5 relevant to this Motion, where Google suggests that Psounis Opinion 5 on entropy "lay[s] a foundation" for the opinions at issue in this Motion. Opp'n at 9. That is incorrect. The word "entropy" appears nowhere else in the report except for Opinion 5 and Appendix E (which supports Opinion 5). At best, this argument further demonstrates that Dr. Psounis is solely relying on his experience and general academic background to rebut Mr. Hochman's analysis of what can be done with the actual data produced in this case (as opposed to a review of the data itself).

### 2.     Google's Arguments About Experts Not Being "Required [] to Conduct a Study or Test" Concede the Point.

Google's second argument effectively concedes that Dr. Psounis did not review the actual private browsing data on which Mr. Hochman grounded the opinions that Dr. Psounis purports to rebut. *Id.* at 10–12. Plaintiffs' Motion explained that "Dr. Psounis did not critique Mr. Hochman's methodology, the application of that methodology, or the data and examples provided. Nor did Dr. Psounis conduct a competing analysis of the private browsing data that Mr. Hochman analyzed." Mot. at 11. Google's Opposition (appropriately) does not argue otherwise. Instead, Google points out that "Mr. Hochman's opinions are not exclusively based on any specific data tests" and that Mr. Hochman also relied on other materials too. Opp'n at 10. Plaintiffs agree that Mr. Hochman did not exclusively rely on the Special Master data to reach all of his opinions, and that is why Plaintiffs are not seeking to exclude all of Dr. Psounis's opinions. Instead, Plaintiffs are narrowly seeking to exclude the Psounis opinions that purport to rebut Mr. Hochman's conclusions about what can and cannot be done with Google's private browsing data, which Mr. Hochman based on his review and analysis of the actual data produced in this case. *See* Mot. at 7 (listing the Psounis opinions at issue herein).

Google next suggests that experts are not required "to conduct a study or test, and certainly not a defense expert providing a rebuttal report." Opp'n at 10. Plaintiffs agree that failing to conduct a study is not always an automatic ticket to exclusion. The problem here is that, for the specific Psounis opinions at issue, Dr. Psounis is purporting to rebut Hochman opinions that were

1    based on Mr. Hochman's review and analysis of the actual data.[2] The fact that Psounis is a

2    "rebuttal" expert to those Hochman opinions only reinforces the need for him to have actually

3    engaged with Mr. Hochman's data analysis.

4        Plaintiffs also agree with Google that Dr. Psounis did not need to conduct an "independent"

5    analysis of the data (*Id*. at 10). The problem here is that Dr. Psounis (1) neither reviewed the data

6    that Mr. Hochman analyzed and Mr. Hochman's analysis of that data, nor (2) conducted an

7    independent analysis of the data. To rebut opinions expressly based on the data produced in this

8    case, Dr. Psounis was required to grapple with that data, and he failed to do so. Google concedes

9    as much, asserting that Dr. Psounis's opinions are based on "the application of generally accepted

10   information theory principles to real-world networked distribution systems." *Id*. at 11. Whatever

11   that awkward sentence actually means, at least one thing is clear: Google is admitting that Dr.

12   Psounis did not grapple with the actual data produced in the case, and that he instead focused on

13   high-level principles. In a case about Google's collection, storage, and use of private browsing

14   data, Google withheld that actual data from its own expert. This failing impugns the admissibility

15   and reliability, not weight, of Dr. Psounis's opinions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136,

16   146 (1997) ("A court may conclude that there is simply too great an analytical gap between the

17   data and the opinion proffered").

18       Dr. Psounis is attempting to rebut conclusions Mr. Hochman reached from his thorough

19   analysis and testing of large amounts of data. To rebut those conclusions in any reliable way, Dr.

20   Psounis should have conducted similar testing, or at the very least explained how Mr. Hochman's

21   testing may be flawed. In the two primary cases Google cite, neither expert was tasked with

22   rebutting conclusions of another expert drawn from that expert's data analysis. *See* Opp'n at 10–

23   11; *Linares v. Crown Equip. Corp.*, No. EDCV161637JGBKKX, 2017 WL 10403454, at *11–12

24   (C.D. Cal. Sept. 13, 2017) (report examining safety of fork-lift operators); *Wyman v. Sunbeam*

25   *Prod., Inc.*, No. 17-CV-4926-BLF, 2021 WL 1531000, at *3 (N.D. Cal. Apr. 19, 2021) (report

26

27   _____

     [2] Critically, Mr. Hochman used Google's actual data to literally show how class members can be
28   identified in numerous ways from the data itself. Hochman Report ¶¶ 234, 236 246-47. These real-
     life examples cannot be rebutted with a brush of the hand, as Google attempted with Dr. Psounis.

1   examining the cause of a fire). The remaining two cases on which Google relies do not discuss

2   rebuttal experts at all, and only discuss testing as it relates to experts in general. *See Maldonado v.*

3   *Apple, Inc*, No. 3:16-CV-04067-WHO, 2021 WL 1947512, at \*9–11 (N.D. Cal. May 14, 2021);

4   *Ramirez v. ITW Food Equip. Grp., LLC*, 686 F. App'x 435, 440–41 (9th Cir. 2017).

### 3.   Google Misrepresents the Limited Data that Dr. Psounis (Google's Counsel) Did Review.

7        Google's Opposition devotes significant attention to Psounis Appendices F and G, because

8   those appendices contain the only data testing that Dr. Psounis (i.e., counsel) performed. Opp'n at

9   5–16. But Psounis Appendix G is not pertinent to this Motion, and the data in Appendix F actively

10  contradicts the conclusions Dr. Psounis offers.

11       In Appendix G, Dr. Psounis reviewed ▮ private browsing data source out of the ▮ tested

12  by Mr. Hochman and the ▮ data sources that Google identified as relevant. *See* Mot. Ex. A (Dkt.

13  702-3) (chart summarizing the Google data sources reviewed). Specifically, Dr. Psounis reviewed

14  a small subset of DBL▮ data, which contained data from ▮. *See* Psounis Report (Dkt.

15  666-21) Appendix G. Dr. Psounis relied on Appendix G to rebut Mr. Hochman's opinion that

16  "Google tracked private browsing communications to create detailed profiles," where Mr.

17  Hochman relied on data from the DBL-▮ source. Hochman Report ¶¶ 167–78. Dr. Psounis

18  attempts to downplay the significance of these profiles, suggesting that they are simply "inferred

19  interest segments keyed to pseudonymous identifiers unique to each discrete private browsing

20  session or unique to the website publisher." *Id.* ¶ 79. Relying on data from ▮ plaintiff within

21  DBL▮. Psounis then attacks what he concedes to be a straw man, noting that "Mr. Hochman

22  does not even attempt to show that Google or anyone could link these ▮ datasets to the same

23  user. The data proves the opposite." *Id.* ¶ 82. Dr. Psounis thus admits that Mr. Hochman did not

24  base his conclusions about identifying and/or verifying class members based on DBL▮ data.

25       Psounis Appendix F, where Dr. Psounis discussed IP address and user agent, is also not

26  pertinent to this Motion. Google's arguments to the contrary seek to mislead the Court. Plaintiffs'

27  Motion explained that Psounis Appendix F focused entirely on what the parties refer to as

28  "preserved GAIA data"—that is, "authenticated" data generated from users' signed-in browsing

1    sessions, which Google ███████████████████████████████ Mot. at 8 n.9, 13.

2    Google's Opposition confusingly refers to this data as part of "the Special Master process" (Opp'n

3    at 6), perhaps seeking to mislead the Court into believing that the Appendix F data consists of

4    private browsing data searched for under the Special Master's supervision. The only connection

5    between the Appendix F data and the Special Master process is that the ███████████████

6    █████████████████████████████████████████████████████████████████████████

7    ████. And again, the data was not █████████████████████. The upshot is that the only

8    source with signed-out private browsing data that Dr. Psounis reviewed is the DBL██ source

9    (Psounis Appendix G), but that source is irrelevant for the reasons described above. Google's

10   repeated assertion that Dr. Psounis analyzed data from "██ logs" is therefore misleading. Opp'n at

11   6, 13. None of those ██ logs contained signed-out private browsing data.

12       And while beside the point, Google's Opposition tellingly has no answer to Plaintiffs'

13   arguments for why Psounis Appendix F undermines rather than supports Dr. Psounis. For example,

14   Plaintiffs pointed out that "Dr. Psounis could only show that there were mathematical overlaps in

15   IP Addresses and User Agents when assessed separately, but tacitly conceded at the end that IP

16   Addresses and User Agents were unique in combination." Mot. at 13 n.14. Google does not address

17   this argument. Google also has no answer to Plaintiffs' argument that "Mr. Hochman was assessing

18   whether he could accurately join private browsing data with Google account data by comparing

19   data across logs, including (but not limited to) through the combination of IP address and User

20   Agent. Dr. Psounis, by contrast, sought only to assess whether there might be matching IP / User

21   Agent pairs in the same dataset; he did not even try to determine whether there might be other

22   ways to nevertheless attribute that data to particular users." Mot. at 14.

23       Because Dr. Psounis purports to rebut Mr. Hochman's conclusions about the data despite

24   not having looked at the actual private browsing data on which Hochman opined, Dr. Psounis's

25   opinions are based on conjecture and not any scientifically sound methodology. This is insufficient

26   under Rule 702. *See Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986–87 (9th Cir. 2020)

27   (Affirming exclusion of expert opinion at class certification stage due in part due to "lack of

28

supporting studies . . . testing to demonstrate" analysis). These Dr. Psounis opinions are unreliable and should be excluded.

### C.    Dr. Psounis's Opinions Are Independently Subject to Exclusion Because Google's Lawyers Performed His (Limited) Data Analysis.

Even if Dr. Psounis reviewed and grappled with the correct dataset (he did not), his opinions would still be subject to exclusion because Google's counsel at Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel")—not Dr. Psounis—conducted the tests to get the data undergirding the conclusions in Dr. Psounis's report. In fact, Dr. Psounis never spoke with or otherwise interacted with any Google employee. Psounis Depo. (Dkt. 703-3) at 183:24–184:6. It appears from Dr. Psounis's testimony and Google's response that Quinn Emanuel ran tests on Google's DBL███ and IP + User Agent raw data and provided the results of those tests to Dr. Psounis, which Dr. Psounis then analyzed and included in Appendices F and G of his report. *See* Opp'n at 12–13. Crucially, however, Quinn Emanuel ran no further experiments nor pulled any additional data for Dr. Psounis, and Dr. Psounis tacitly accepted Quinn Emanuel's assertions that what they gave him was all he needed to complete his work. *Id.* While the full extent of Quinn Emanuel's conduct is unknown because Dr. Psounis failed to disclose their involvement in his report—and Quinn Emanuel obstructed Plaintiffs from fully inquiring during his deposition (*see, e.g.*, Psounis Depo (Dkt. 703-3) at 184:7–185:17, 200:1–202:14)—the following problems are readily apparent:

- Dr. Psounis "had counsel run the test for [him]." *Id.* at 55:8-9.

- Dr. Psounis claims he proceeded this way because he did not have a computer and viewed it as improper to use USC's computers to run these tests. *See id.* at 10:10–15.

- Dr. Psounis gave counsel "very precise instructions" on how to run the tests. *Id.* at 180:18.

- Counsel then would run the tests and send the data to Dr. Psounis, and "there was a back and forth, to make sure everything is properly done." *Id.* at 180:18.

- Dr. Psounis testified that it was "extremely important" that his "collaborators have

appropriate qualifications" and Google's counsel ███████ provided assurance that the Quinn Emanuel attorney conducting the tests for Dr. Psounis met these qualifications. *Id*. at 174:6–23.

- Dr. Psounis could not recall what degrees the Quinn Emanuel attorney held or how she was qualified to run these experiments. *Id*. at 175:2–176:19.

- When asked why Dr. Psounis did not request equipment from Google to run the experiments himself, he responded that he "didn't see a need for it," hadn't "interacted with anybody from Google at all throughout this period," and hadn't "talked to a single person from Google" to verify his experiments. Psounis Depo at 183:24–184:6.

Google argues that in doing all of this counsel merely "assisted Dr. Psounis in gathering information from the record." Opp'n at 13–14. Even under this charitable characterization of events, their involvement nevertheless warrants exclusion. When it comes to evidence relied upon in litigation, witnesses are "supposed to be disinterested" while lawyers are expected "to give the evidence a partisan slant." *Philips Med. Sys. Int'l B.V. v. Bruetman*, 8 F.3d 600, 606 (7th Cir. 1993). These roles are meant to be separate, so when a lawyer "confound[s] the role of witness" and prepares data for use in a case, that data is not necessarily sufficiently reliable. *Id.*; *see also Baker v. FirstCom Music*, No. LACV1608931VAPJPRX, 2018 WL 2572725, at *5 (C.D. Cal. Mar. 27, 2018) ("Because [expert] has failed to verify the underlying data at the core of her expert opinion independently, and instead simply adopted the position of an interested party, the Court finds that [expert's] declaration is not reliable").

Dr. Psounis did not run the experiments himself; instead he **solely relied on Google's counsel to carry out the experiments** and report back the results. *See* Psounis Depo at 20; 172–75. Dr. Psounis **did not verify the results**—nor could he, because the experiments were conducted outside of his supervision, on foreign computers, only overseen by Quinn Emanuel. *See Id*. at 183:24–184:6. Although Dr. Psounis (and Quinn Emanuel) were dismissive of this issue during his deposition, Dr. Psounis nevertheless could not explain whether and how he verified the results.

*Id*. at 184:7–185:17, 200:1–202:14. This failure to explain was guised under Quinn Emanuel's erroneous assertion of privilege in a desperate attempt to shield the foundation of Dr. Psounis's work through misapplication of the Protective Order. *Id*. at 184:7–185:17, 200:1–202:14. Quite simply, Dr. Psounis made a request to Google's lawyers to run tests in Google's black box and trusted the results that were returned. *Id*. at 55:8–9, 180:18. Quinn Emanuel did not simply retrieve information; Dr. Psounis provided instructions and had a "back and forth" with Quinn Emanuel (not Google) to "make sure everything was properly done."  *Id*. at 180:18. But when pressed on that "back and forth" to "make sure everything was properly done" for the foundation of his report—in other words, to test the methodology and application thereof to the evidence in this case—Dr. Psounis could not provide ***any details*** and was ***expressly forbidden from discussing the substance*** because of Quinn Emanuel's interpretation of the Protective Order. *Id*. at 184:7–185:17, 200:1–202:14.

Thus, Dr. Psounis's opinions based on this data are unreliable, especially considering Google's history of concealing evidence in this case. *See generally* Dkt. 588 (order sanctioning Google's discovery misconduct); *see also* Dkt. 655 (motion for supplemental sanctions for additional discovery misconduct); *see also Sommerfield v. City of Chicago*, 254 F.R.D. 317, 324 (N.D. Ill. 2008) ("Those courts that have considered the issue raised in this case have concluded that summaries of . . . data prepared by a party's lawyer are not sufficiently reliable that they may form the basis of an expert's opinion." (collecting cases)).

Although Google seeks to distinguish *Sommerfield* because "the expert erred by relying on summaries of deposition transcripts prepared by counsel, rather than reviewing the deposition transcripts themselves." Opp'n at 15, Google's reading of *Sommerfield* drives home Plaintiffs' point: Dr. Psounis "erred by relying on summaries of [the data] prepared by [Quinn Emanuel], rather than reviewing the [data itself]." Opp'n at 15; *see also Sommerfield*, 254 F.R.D. at 324. As above, this failing also goes to the admissibility, not weight, of Dr. Psounis's opinions. *See Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 724–27 (E.D. Wis. 2008) (excluding projections of accounting expert based on company's sales provided by counsel and unverified by expert).

1    Google only passively cites two cases to defend Quinn Emanuel's substantial role in Dr.

2    Psounis's work, and neither case supports the conduct at issue. Opp'n at 16. In *Enplas Display*

3    *Device Corp. v. Seoul Semiconductor Co., Ltd.*, No. 13-CV-05038 NC, 2015 WL 9303980 (N.D.

4    Cal. Dec. 22, 2015), a party to patent litigation sought exclusion of an expert because the expert

5    worked with a third-party company to perform certain work in support of the expert report. But the

6    *Enplas* court's analysis is clearly distinguishable: that third-party company was "listed on the [at

7    issue] patents as a preferred organization to perform" certain work, which was, consequently, a

8    "routinely used methodology." *Id.* at 2. Here, however, Dr. Psounis trusted a Quinn Emanuel

9    lawyer—not an independent consultant or even a Google engineer—to carry out his technical tests

10   with precision and free from bias. While the *Enplas* litigant complained the expert had not

11   personally reviewed the results of the third-party tests, there was no indication that the results were

12   lacking. *Id.* But here, none of that information was even provided in Dr. Psounis's report, subject

13   to ***any scrutiny*** by Plaintiffs' experts, or any testimony during Dr. Psounis's deposition. That is

14   not how expert discovery works.

15        Google's other case fares no better, and indeed cuts against Google's conduct. In *Matter of*

16   *James Wilson Assocs.*, one expert relied in part on information gathered by a retained consultant

17   concerning the state of repair of a building, 965 F.2d 160, 172 (7th Cir. 1992). Although the court

18   explained that "[a]n expert is of course permitted to testify to an opinion formed on the basis of

19   information that is handed to rather than deployed by him," *id.* (which Google directly cited) ,

20   Google inexplicably disregarded the remainder of the court's analysis:

21        And in explaining his opinion an expert witness normally is allowed to explain the
          facts underlying it, even if they would not be independently admissible. ***But the***
22        ***judge must make sure that the expert isn't being used as a vehicle for***
          ***circumventing the rules of evidence***. . . . If for example the expert witness (call
23        him A) bases his opinions in part on a fact (call it X) ***that the party's lawyer told***
          ***him, the lawyer cannot in closing argument tell the jury, "See, we proved X***
24        ***through our expert witness, A."*** That was the kind of hand-off attempted in this
          case. The issue was the state of the building, and the expert who had evaluated that
25        state—the consulting engineer—was the one who should have testified.

26   *Id.* at 173 (emphasis added). Here, Quinn Emanuel—not a consultant, other expert, or even a

27   Google engineer—attempted the improper "hand-off" observed in *Matter of James Wilson*

28

                                            -12-                    Case No. 4:20-cv-03664-YGR-SVK

1   *Associates*. Dr. Psounis cannot become the "spokesman" for the work Quinn Emanuel did, and

2   cannot "vouch[] for the truth of what [Quinn Emanuel] had [provided to] him." *Id.* Put simply,

3   Google cannot now invoke the Wizard of Oz and demand that Plaintiffs (and the Court) "pay no

4   attention to that [Quinn Emanuel associate] behind the curtain." This is exactly the kind of

5   circumvention of the rules of evidence prohibited by the Court. Because Quinn Emanuel prevented

6   any discovery into its work, and Dr. Psounis did not independently verify its veracity, any opinions

7   drawn from that work should be excluded.

8   **III.    CONCLUSION**

9          Plaintiffs respectfully request that the Court grant the Motion and exclude Opinions Nos. 1

10   and 3, and 7 through 10 of the Dr. Psounis Report.

11   Dated:  September 21, 2022                **BOIES SCHILLER FLEXNER LLP**

12

13

14                                  By:   */s/ Mark C. Mao*
                                          Mark C. Mao (CA Bar No. 236165)
15                                        mmao@bsfllp.com

16                                        Beko Reblitz-Richardson (CA Bar No. 238027)
                                          brichardson@bsfllp.com
17                                        Erika Nyborg-Burch (CA Bar No. 342125)
                                          enyborg-burch@bsfllp.com
18                                        BOIES SCHILLER FLEXNER LLP
                                          44 Montgomery Street, 41st Floor
19                                        San Francisco, CA 94104
                                          Telephone: (415) 293 6858
20                                        Facsimile (415) 999 9695

21                                        David Boies (*pro hac vice*)
                                          dboies@bsfllp.com
22                                        BOIES SCHILLER FLEXNER LLP
                                          333 Main Street
23                                        Armonk, NY 10504
                                          Tel: (914) 749-8200

24                                        James W. Lee (*pro hac vice*)
                                          jlee@bsfllp.com
25                                        Rossana Baeza (*pro hac vice*)
                                          rbaeza@bsfllp.com
26                                        BOIES SCHILLER FLEXNER LLP
                                          100 SE 2nd Street, Suite 2800
27                                        Miami, FL 33130
                                          Telephone: (305) 539-8400

28
                                          -13-                    Case No. 4:20-cv-03664-YGR-SVK

Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*