**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' SUBMISSIONS OF PRIVILEGED MATERIALS AND REFERENCES THERETO (DKT. 733)**<br><br>Referral: Hon. Susan van Keulen, USMJ |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Plaintiffs Improperly Used the Privileged Document in Their Opposition in Clear Violation of Their Ethical Duties ....................................................................2

    B. Plaintiffs Violated Federal Rule of Civil Procedure 26(b)(5)(B) ..............................4

    C. Google Properly Clawed Back the Privileged Document Pursuant to the ESI Order .........................................................................................................................4

    D. Plaintiffs Fail to Show Any Basis for Applying the Crime-Fraud Exception ...........8

    E. Plaintiffs Have Not Shown That *In Camera* Review Is Warranted .........................11

    F. Plaintiffs Have Not Shown That an Exception to the Work Product Protection Applies ....................................................................................................................12

    G. Google Does Not Seek to Delay Any Other Hearings or Decisions, and Is Willing to Stipulate to an Alternate Hearing Date for Its Motion ...........................13

III. CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                **Page**

*AdTrader, Inc. v. Google LLC*,
  405 F. Supp. 3d 862 (N.D. Cal. 2019) ............. 6
*AT&T Corp. v. Microsoft Corp.*,
  2003 WL 21212614 (N.D. Cal. Apr. 18, 2003) ............. 12
*Bahdjedjian v. W. Diocese of N. Am., et al*,
  2020 WL 5353982 (C.D. Cal. Apr. 29, 2020) ............. 1, 2, 3
*Chronometrics, Inc. v. Sysgen, Inc.*,
  110 Cal. App. 3d 597, 168 Cal. Rptr. 196 (Ct. App. 1980) ............. 2
*Cleveland Demolition Co. v. Azcon Scrap Corp.*,
  827 F.2d 984 (4th Cir. 1987) ............. 9, 10
*Dutta v. State Farm Mut. Auto. Ins. Co.*,
  895 F.3d 1166 (9th Cir. 2018) ............. 5
*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  2015 WL 3630000 (N.D. Cal. June 2, 2015) ............. 11
*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001) ............. 2
*Holley v. Gilead Scis., Inc.*,
  2021 WL 2371890, at *5 (N.D. Cal. June 10, 2021) ............. 6
*Hologram USA, Inc. v. Pulse Evolution Corp.*,
  2016 WL 3654285 (D. Nev. July 5, 2016) ............. 6
*In re Grand Jury Proceedings.*,
  87 F.3d 377 (9th Cir. 1996) ............. 8, 9
*In re Napster, Inc. Copyright Litig.*,
  479 F.3d 1078 (9th Cir. 2007) ............. 8
*In re Personalweb Techs., LLC et al., Patent Litig.*,
  2022 WL 2290592 (N.D. Cal. June 24, 2022) ............. 11
*Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*,
  2010 WL 275083 (S.D. Cal. Jan. 13, 2010) ............. 6
*Minebea Co. v. Papst*,
  370 F. Supp. 2d 297 (D.D.C. 2005) ............. 5
*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ............. 8
*Nesselrotte v. Allegheny Energy, Inc.*,
  2008 WL 11511505 (W.D. Pa. May 6, 2008) ............. 11
*Perez v. DirecTV Grp. Holdings, LLC*,
  2020 WL 2078257 (C.D. Cal. Mar. 5, 2020) ............. 13
*Perez v. Rash Curtis & Assocs.*,
  2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ............. 10
*Phillips v. C.R. Bard, Inc.*,
  290 F.R.D. 615 (D. Nev. 2013) ............. 13
*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  2019 WL 1950377 (N.D. Cal. May 1, 2019) ............. 8, 9
*Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*,
  335 F.R.D. 371 (E.D. Mich. 2020) ............. 4
*Segerstrom v. United States*,
  2001 WL 283805 (N.D. Cal. Feb. 6, 2001) ............. 12
*Shenwick v. Twitter, Inc.*,
  2018 WL 5750119 (N.D. Cal. 2018) ............. 11, 12
*United States v. Doe (In re Grand Jury Investigation)*,
  810 F.3d 1110 (9th Cir. 2016) ............. 8

-ii-      Case No. 4:20-cv-03664-YGR-SVK
GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE PRIVILEGED MATERIALS

-iii-

*United States of America v. United Health Group, Inc. et al*,
    2020 WL 10731257 (C.D. Cal. Nov. 9, 2020) ............................................................................. 6
*Walker v. GEICO Indem. Co.*,
    2017 WL 1174234 (M.D. Fla. Mar. 30, 2017) ........................................................................... 2

**Rules and Regulations**

Fed. R. Civ. P. 26(b)(5)(B) ............................................................................................................ 2, 4
Fed. R. Evid. 502(b)(d) ................................................................................................................. 5, 6
Local Rule 7-3 (d)(1) ......................................................................................................................... 5

### REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S SUBMISSIONS OF PRIVILEGED MATERIALS AND REFERENCES THERETO

## I.  INTRODUCTION

Google's opening brief demonstrated that the privileged document in question (GOOG-BRWN-00857642; the "Privileged Document") should be stricken from the record because Google clawed it back pursuant to the parties' stipulated and Court-ordered clawback procedure. Mot. 6–7. At that point, Plaintiffs' ethical duties with respect to the Privileged Document were clear—they should have "locked [it] down" and refrained from using it or discussing its contents in Court filings. Dkt. 333-3 (9/30/21 Hrg. Tr.) 27:24. Plaintiffs' supposed belief that Google waived privilege over the document is irrelevant. *See Bahdjedjian v. W. Diocese of the Armenian Church of N. Am. et al*, 2020 WL 5353982 (C.D. Cal. Apr. 29, 2020) ("Once Defendants asserted privilege over portions of these documents . . . Plaintiff's counsel had no right to 'decide on [their] own whether the privilege' actually applies" and "further … use [of] the privileged material" was "unquestionably an ethical violation.").

Yet, Plaintiffs *continue* to use the contents of the clawed-back document in their Opposition, brazenly describing conversations that Google has told Plaintiffs are privileged, and even going so far as to make the baseless claim—in an unsealed portion of their brief—that the document "may evidence" Google's "planning to evade or violate its commitments to" a foreign regulator. Opp. 15. Plaintiffs' transparent attempt to use the Privileged Document to create leverage, in blatant violation of their ethical duties, should not be tolerated.

Plaintiffs' waiver arguments are meritless, and foreclosed by the Stipulated Order re: Discovery of Electronically Stored Information (the "ESI Order"). And Plaintiffs' inflammatory request that the Court "keep in mind the crime-fraud exception to privilege" is entirely without merit. Plaintiffs barely acknowledge the declarations of Messrs. Kellogg and Schneider (Dkts. 733-2, -3), which explain the legitimate legal purposes for which the legal advice was sought. Plaintiffs do not come close to satisfying their burden of showing the document indicates Google employees sought legal advice in furtherance of a crime or fraud. Nor have Plaintiffs shown that any exception to the work product doctrine applies. *See* Opp. 12–13.

The Motion should be granted and the Privileged Document stricken from the record.

## II. ARGUMENT

### A. Plaintiffs Improperly Used the Privileged Document in Their Opposition in Clear Violation of Their Ethical Duties

It is axiomatic that once a party has been notified of the inadvertent production of a privileged document, the party is ethically bound not to make further use of the document's contents. As the court explained in *Bahdjedjian v. W. Diocese of the Armenian Church of N. Am. et al*, 2020 WL 5353982 (C.D. Cal. Apr. 29, 2020):

> Once Defendants asserted privilege over portions of these documents . . . Plaintiff's counsel had no right to 'decide on [their] own whether the privilege' actually applies . . . 'further review or use [of] the privileged material [wa]s prohibited.' Plaintiff's counsel's continued review, use, and disclosure of Defendants' potentially privileged/confidential material was unquestionably an ethical violation.

*Id.* at *5. The Ninth Circuit put it succinctly: for "counsel facing an ethical dilemma concerning privileged documents . . . [t]he path to ethical resolution is simple: when in doubt, ask the court." *Gomez v. Vernon*, 255 F.3d 1118, 1135 (9th Cir. 2001). Contrary to Plaintiffs' naked assertions, the receiving party may not continue to review *or use* the contents of a clawed back document—from memory or otherwise—on pain of potential disqualification. *See, e.g.*, *Walker v. GEICO Indem. Co.*, 2017 WL 1174234, at *12 (M.D. Fla. Mar. 30, 2017) (motion for disqualification granted where counsel agreed to sequester documents upon receipt of clawback notice, but "[d]espite this representation . . . used and disclosed information contained in the supposedly sequestered Sutton File in her Motion to Compel"); *Chronometrics, Inc. v. Sysgen, Inc.*, 110 Cal. App. 3d 597, 607–08, 168 Cal. Rptr. 196, 203 (Ct. App. 1980) (disqualification appropriate where attorney "would have the improperly obtained facts instantly available in his mind"). Plaintiffs need look no further than the parties' own 502(d) agreement on this issue, which expressly forbids the parties from any use of clawed back documents—in challenging assertions of privilege or otherwise. *See* Dkt. 80 (requiring the receiving party to "return, sequester or destroy[]" privileged documents "immediately . . . if requested"); *see also* Fed. R. Civ. P. 26(b)(5)(B) ("After being notified, a party . . . must not use or disclose the information until the claim is resolved.").

Plaintiffs ignore these authorities and the ESI Order and devote much of their Opposition to *expressly discussing the contents of the clawed back document*. *See* Opp. 9–10, 12–16 (portions of brief filed under seal and discussing contents of document). Plaintiffs cannot genuinely dispute this—they filed the portions of their brief discussing the Privileged Document under seal, which would not have been necessary had they refrained from discussing its contents.

Like in *Bahdjedjian*, "Counsel's focus on the content of the redacted documents suggests they still do not comprehend that reviewing those materials [after receiving notice of the producing party's assertion of privilege] was a black-and-white ethical breach—whether the documents were correctly redacted or not." 2020 WL 5353982, at *3, n.2. Worse, Plaintiffs' references to the Privileged Document are not limited to contesting the privilege. Instead, they assert that its contents support their pending supplemental sanctions motion (Dkt. 656), and "may evidence" other purported misdeeds by Google in unrelated proceedings.[1] Opp. 3, 14–16 & n.8. In using the Privileged Document to support these baseless arguments, Plaintiffs have crossed a bright ethical line.

This is not the first time Plaintiffs have ignored their ethical duties regarding inadvertently disclosed privileged information. They previously distributed screenshots of obviously privileged communications involving Google's in-house counsel in correspondence that was transmitted to all attorneys on Plaintiffs' multi-case, multi-firm email distribution list. *See* Dkt. 275 at 17–20. Plaintiffs also failed to destroy or sequester other documents that Google clawed back, which led to a Court admonishment in the September 30, 2021 discovery hearing. *See* Dkt. 290 at 4 ("Plaintiffs' first draft of this letter brief provided to Google on October 5, 2021 contained citations to a different privileged Google document (GOOG-BRWN-00433327), that Google had also clawed back on September 10, 2021."); Dkt. 333-3 (9/30/21 Hear'g Tr.) 27:17–19 ("I do not want to hear any more

---

[1] Plaintiffs' unfounded crime-fraud allegations do not release them from their duty to abstain from using the contents of the clawed back document to oppose Google's motion to strike. *See, e.g.*, Cal. State Bar Standing Comm. on Prof. Resp. and Conduct, Formal Opinion No. 2013-188 at 5 (ethical duties require that an attorney attempting to "establish applicability of the crime-fraud exception . . . use non-privileged information to make a prima facie showing that opposing counsel's services were sought in order to assist the opposing party in committing that crime or fraud").

instances of a document not being properly locked down or being distributed."). Plaintiffs' repeated disregard of their ethical duties and established rules should not be condoned.

### B.     Plaintiffs Violated Federal Rule of Civil Procedure 26(b)(5)(B)

Plaintiffs' conduct also violates Rule 26(b)(5)(B), which provides that, "[a]fter being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; [and] must take reasonable steps to retrieve the information if the party disclosed it before being notified." Fed. R. Civ. P. 26(b)(5)(B) (emphasis added). As demonstrated above, Plaintiffs used the Privileged Document in their Opposition to oppose the Motion *and* to advance baseless arguments in furtherance of a separate motion and about unrelated proceedings. Opp. 3, 14–16 & n.8; *see also Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*, 335 F.R.D. 371, 377 (E.D. Mich. 2020) (motion to strike granted to remedy receiving party's violation of "clear-cut guidance" provided by Rule 26(b)(5)(B) where, "[w]hile the status of the documents were in dispute, [the challenging party] not only declined to return, sequester, or destroy the documents, but proceeded to use the disputed material . . . in support of its response to [the withholding party's] motion to compel."). And Plaintiffs have made no effort at all to "retrieve the information [Plaintiffs] disclosed [] before being notified"—by contacting the Court to seek guidance, or otherwise. These rule violations should not be condoned either.

### C.     Google Properly Clawed Back the Privileged Document Pursuant to the ESI Order

As explained in Google's opening brief, the Rule 502(d) agreement in the Parties' ESI Order unequivocally states that "[a] producing party may assert privilege or protection over produced documents *at any time* by notifying the receiving party in writing of the assertion of privilege or protection." Dkt. 80 ¶ 8.A (emphasis added). The ESI Order further extends claw-back protection to any documents produced by either party, "whether inadvertent or otherwise." *Id.* Google specifically negotiated for this language to be included—it is not included in the Court's standard ESI template—in anticipation of issues like this one. Plaintiffs agreed to the language, and the Court so-ordered it. Dkt. 77. These provisions are particularly appropriate in a case of this magnitude,

involving the review and production of six million pages on a compressed timeline, and an extraordinary number of filings and hearings consuming vast quantities of attorney and judicial resources. *See* Dkt. 333-3 (9/30/21 Hear'g Tr.) at 25:24–26:4 (Court recognizing production schedule may result in "inadvertent productions" and "inconsistent productions"). Taken together, the provisions show that Plaintiffs expressly agreed to forgo their ability to challenge clawbacks based on timing or Google's ability to satisfy Rule 502(b)'s inadvertence requirement. In other words, Plaintiffs agreed to forgo the ability to make the very challenges that they now assert. And the Court memorialized that agreement in the ESI Order.

The ESI Order supersedes any alternative requirements imposed by Federal Rule of Evidence 502(b), Local Rule 7-3,[2] and related case law. *See* Fed. R. Evid. 502(d) ("**Controlling effect of a Court Order.** A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court."); s*ee also Minebea Co. v. Papst*, 370 F. Supp. 2d 297, 300 (D.D.C. 2005) ("Simply put, the language of the Protective Order trumps the case law.").

Notably, Plaintiffs do not dispute that the ESI Order's timing provision does, in fact, extend the period within which either party can claw back documents subject to a claim of protection. *See* Opp, Dkt. 744-1 at 6 ("Whether the ESI agreement permits 'a longer period for clawing back' the Document is beside the point[.]"). Nor do they grapple with their agreement to allow claw-backs where the production is "inadvertent *or otherwise*"—a clear departure from the requirements of Federal Rule of Evidence 502(b). Dkt. 80 ¶ 8.A (emphasis added). Instead, Plaintiffs argue that the ESI Order does not govern because the parties did not "adequately articulate their desire to supplant the Rule 502 analysis in an agreement under 502(d) or (e)," (Opp. 5). Plaintiffs are wrong. The ESI

---

[2] Plaintiffs' assertion that Local Rule 7-3(d)(1) somehow bars Google's clawback is also incorrect because that rule merely "provide[s] a mechanism to . . . object to the district court's consideration of . . . newly submitted evidence or to request leave to file a sur-reply opposition to it." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1171 (9th Cir. 2018). Google objects to the use of the Privileged Document because it is privileged—not because it is "new." Plaintiffs do not cite any authority that supports the proposition that Local Rule 7-3(d)(1) effects a waiver of the attorney-client privilege in these circumstances, and Google has not been able to find any case law that supports (or even recognizes) this argument.

1  Order invokes Rule 502(d) and explicitly modifies Rule 502(b)'s requirements that the disclosure
2  be "inadvertent," *see* Dkt. 80 ¶ 8.A (parties may claw back documents produced "inadvertently or
3  otherwise"), and that the producing party rectify the error "promptly," *see id.* (parties may claw back
4  documents "at any time"). Nor is there any merit to Plaintiffs' argument that the ESI Order does not
5  address the situation here, "where waiver is based on Google's failure to object to the Document's
6  use (as opposed to a mere delay in discovering the inadvertent disclosure)." Opp. 5. The ESI Order's
7  provision allowing the parties to claw back documents "at any time" is clear and unambiguous.
8  Thus, Plaintiffs' contention that the Court's analysis should be governed by Rule 502(b), and not
9  the ESI Order, is meritless.
10       The cases Plaintiffs cite in their Opposition (Opp. 4–7) do not support their argument. In
11 *AdTrader, Inc. v. Google LLC*, the parties "*agree[d]* that Rule 502(b) of the Federal Rules of
12 Evidence provides the rule of decision." 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019) (emphasis
13 added). In *Holley v. Gilead Scis., Inc.*, the court found that a party's 3-month delay in clawing back
14 a document failed to comply with Rule 502(b)'s requirement that documents be clawed back
15 "promptly." 2021 WL 2371890, at *5 (N.D. Cal. June 10, 2021). Similarly, none of the other cases
16 Plaintiffs cite involved a claw-back provision that allowed for a producing party to claw a document
17 back "at any time" whether produced "inadvertently or otherwise." *See United States of America v.*
18 *United Health Group, Inc.*, No. 2:16-cv-08697, Dkt. 198 ¶ 15 (C.D. Cal. Nov. 9, 2020) (stipulated
19 protective order imposing ten business day time limit for clawbacks); *Hologram USA, Inc. v. Pulse*
20 *Evolution Corp.*, No. 2:14-cv-00772, Dkt. 138 ¶ 39 (D. Nev. Nov. 5, 2014) (stipulated protective
21 order requiring the party to claw back the document "promptly"); *Luna Gaming-San Diego, LLC v.*
22 *Dorsey & Whitney, LLP*, No. 3:06-cv-02804, Dkt. 20 § III.E (S.D. Cal. Aug. 27, 2007) (stipulated
23 protective order reflecting no agreement between parties to modify the timing requirements for
24 clawback requests in Fed. R. Evid. 502(b)).[3]

---

26 [3] Moreover, in *Hologram* and *Luna*, the producing party failed to object to the disputed documents when they were introduced as exhibits in depositions. *See Hologram USA, Inc. v. Pulse Evolution*
27 *Corp.*, 2016 WL 3654285, at *1-2 (D. Nev. July 5, 2016); *Luna Gaming-San Diego, LLC v. Dorsey & Whitney*, LLP, 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010). Here, the Privileged Document
28 was never introduced as a deposition exhibit. And Plaintiffs' attaching a privileged document along

Moreover, in *United Health Group*—a case on which Plaintiffs rely (Opp. 5)—the court *rejected* the defendants' argument that their prior broad references to the disputed documents in a discovery motion (and their inclusion in a collection of documents attached as exhibits) waived privilege where the plaintiffs did not immediately claw them back after the defendants' filing. 2020 WL 10731257, at *5 (C.D. Cal. Nov. 9, 2020). The court rejected the challenging party's argument that "because [they] referred to some of the disputed documents in a prior motion, the Protective Order precludes the [withholding party] from clawing them back now," finding that "the documents were referenced broadly, as part of a discovery motion, but were not identified with any specificity in support of a particular argument" and thus "the Protective Order does not bar the . . . claw back efforts simply because the twenty-seven documents were included in a larger group of documents attached to a prior motion." *Id.*; *see also* Dkt. 307 at 1 ("The Court finds no waiver on the facts of this case because the language at issue is not quoted in the case management filings cited by Plaintiffs."). The same reasoning applies here. Plaintiffs should neither be rewarded for, nor incentivized to, cite and attach scores of internal, Google-produced documents to future filings in the hopes of effectuating a waiver.[4]

Nor is there any merit to Plaintiffs' conjecture as to how many times Google attorneys might have reviewed the document. Opp. 2–3. That is simply irrelevant to whether Google is entitled to claw it back under the ESI Order. *See* Opp. 1–3. Moreover, as explained in the Jenkins declaration, it was not obvious to Google's reviewers from the face of the document that the portions of the document that they determined, upon re-review, could be produced were in fact just as privileged as the portions of the document that remained redacted, in light of the purpose and context of the communication. Dkt. 733-1, at ¶¶ 3–4. Further investigation was required for that determination. That further investigation included interviews with the originator of the email, and the attorney who

---

with many others as an exhibit to a chart that was improperly appended to a procedurally defective administrative motion (for sanctions) plainly does not cause the same spotlight as does the use of a specific document as an exhibit at a deposition, particularly where, as here, additional context was necessary to understand the basis for the privilege.

[4] Despite Plaintiffs' assertions to the contrary, Google did not disclose the content of the Privileged Document in *any* of its filings. *See* Dkt. 692 at 3, n.2; *id.* at 5, n.6; Dkt. 693 at 2, n. 1.

initiated the internal audit in question. As soon as this investigation confirmed that the entire document was privileged, Google clawed it back. Under these circumstances, and in a case where Google produced over six million pages on a compressed timeline, along with a privilege log of over 24,000 entries, finding waiver would not only be inconsistent with the ESI Order, it would also be inequitable and unfairly prejudicial.

### D.  Plaintiffs Fail to Show Any Basis for Applying the Crime-Fraud Exception

Plaintiffs' belated invocation of the crime-fraud exception—raised for the first time in their Opposition—is utterly meritless. The crime-fraud exception requires the party seeking the production of a privileged document to satisfy a two-part test—a burden that Plaintiffs cannot satisfy here:

> First, the party must show that 'the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme.' Second, it must demonstrate that the attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of [the] intended, or present, continuing illegality.'

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1950377, at *2 (N.D. Cal. May 1, 2019) (citing *United States v. Doe (In re Grand Jury Investigation)*, 810 F.3d 1110 (9th Cir. 2016)). Courts are clear that "in a civil case the burden of proof that must be carried by a party seeking outright disclosure of attorney-client communications under the crime-fraud exception should be preponderance of the evidence." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1094–95 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 (2009). Plaintiffs' rampant speculation about what the Privileged Document "suggests" (Opp 14–15) does not come close to satisfying their burden.

The Kellogg (Dkt. 733-2) and Schneider (Dkt. 733-3) declarations submitted with Google's opening brief make clear that the communications in the Privileged Document were initiated (i) to obtain information necessary for Google in-house counsel to provide legal advice regarding an ongoing regulatory investigation by UK regulators; and (ii) to ensure that Google's representations

to that regulator were fulsome and accurate.[5] In short, rather than "furthering" a "criminal or fraudulent scheme," these communications were made to ensure Google's compliance with the law.

Plaintiffs cite no authority for their assertion that "[t]he crime-fraud exception may [] apply to the extent the Document contradicts representations Google made to the Court." Opp. 14. The law is clear that, for the crime-fraud exception to apply, Plaintiffs must show at a minimum that the legal advice was sought "in furtherance of [an] intended [] illegality." *Planned Parenthood*, 2019 WL 1950377, at *2. To invoke the exception, Plaintiffs cannot "merely . . . allege that [they have] a sneaking suspicion the client was engaging in or intending to engage in a crime or fraud when it consulted the attorney"—a "threshold that low could discourage many would-be clients from consulting an attorney about entirely legitimate legal dilemmas." *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). Nor can Plaintiffs show fraud on the Court simply by manufacturing a purported inconsistency between witnesses' testimony and the content of a document. *See, e.g.*, *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987) ("The only evidence that [a witness] committed perjury . . . is the conflict between his trial testimony and Dun & Bradstreet's version of the July 5th report [but this] *meager evidence falls woefully short of proving a fraud on the court.*" (emphasis added)).

Even setting this defect aside, Plaintiffs' assertion that the Privileged Document contains a "factual admission [by Bert Leung] which directly contradicts a position that Google has repeatedly taken with this Court," Opp. 13, is bereft of any detail as to what other statement(s) this email purportedly contradicts. In any event, even if there were an inconsistency, that would not be sufficient to demonstrate that the document shows Google sought legal advice in an effort to defraud

---

[5] See Dkts. 733-2 ¶ 6–7 (explaining that the Privileged Document "is an email thread that begins with a September 27, 2021 email from non-attorney Google Program Manager Nathaniel Schneider regarding an investigation that he conducted at my direction to evaluate certain product features in relation to a regulatory inquiry by the CMA . . . I requested that someone from the product and engineering teams perform this investigation while Google's negotiations with the CMA were ongoing so that I could evaluate the information and provide legal advice to Google regarding its representations to the CMA."); 733-3 ¶ 4 ("In response to a request from Mr. Kellogg directed to the Chrome team, I was assigned to conduct this investigation while Google's negotiations with the CMA were ongoing in order to ensure that Google accurately described certain product features in its representations to the CMA.").

the Court. *See Cleveland Demolition*, 827 F.2d at 986 (conflict between content of written document and witness testimony insufficient to show perjury or fraud on the court); *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *11 (N.D. Cal. Apr. 17, 2020) ("inconsistent testimony" does not constitute fraud on the court).

Finally, Plaintiffs' incendiary and baseless speculation that "[t]he Document may also contain evidence of Google planning to evade or violate its commitments to the United Kingdom's Competition and Markets Authority ('CMA')" (Opp. 15), violates Rule 11's commandment that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief . . . the factual contentions have evidentiary support." There plainly is no evidentiary support for Plaintiffs' statement in either (i) the public documents that Plaintiffs cited in their Opposition; or (ii) the unredacted contents of the Privileged Document, which Plaintiffs' counsel claims they "isolated" and "did not re-review" in preparing their Opposition.[6] *See* Dkt. 745-1 ¶¶ 5–6. Courts have rejected arguments similar to those that Plaintiffs advance in their Opposition. *See, e.g.*, *Cleveland Demolition*, 827 F.2d at 988 ("Instead of conducting a reasonable factual investigation, Cleveland apparently chose to build its case [alleging fraud on the court] on the unsupported assumption that Spine must have been lying and that [counsel] must have been participating. This speculative basis for . . . action alleging attorney misconduct of the most serious nature does not satisfy Rule 11 standards."). Plaintiffs' accusations are particularly egregious given they know very well that they are prohibited from

---

[6] Notably, the declaration that Plaintiffs submitted in support of their Opposition does not attest that Plaintiffs actually complied with the parties' clawback order by sequestering the document and abstaining from further re-review *after they received Google's clawback notification*. Instead, it merely asserts that the document was "isolated" as of the date of the declaration (*i.e.*, September 14, 2022, which is over two weeks *after* Google sent its clawback notice) and that Plaintiffs "wrote their opposition brief without re-reviewing the Document." *See* Dkt. 745-1 ¶¶ 5-6. That declaration does *not* say *when* this purported "isolation" took place or disclaim any other re-review of the document by Plaintiffs after they received Google's clawback notice almost four weeks ago on August 26, 2022. Plaintiffs' silence is telling. Given the detail in which they (improperly) describe the contents of the Privileged Document, they clearly referred to it in drafting their brief.

"using" the Privileged Document for any purpose.

### E. Plaintiffs Have Not Shown That *In Camera* Review Is Warranted

Over more than two years of litigation, Plaintiffs have requested *in camera* review of 36 documents; only two have been ordered to be produced. *See* Dkts. 280-3 at 12; 290 at 2 (Plaintiffs' submissions seeking *in camera* review of one document); 295-4 at 2 (twelve documents); 423-2 at 15 (fifteen documents); 455-4 at 1 (seven documents); 516-3 at 3 (one document). In other words, despite their protestations (Opp. 13), Plaintiffs cannot genuinely dispute that they have failed to carry their burden for approximately *95 percent* of their requests for *in camera* review.

Plaintiffs' belated demand (in their Opposition) for *in camera* review of the Privileged Document is similarly baseless. First, Plaintiffs cannot seek affirmative relief for the first time in an opposition brief. *See In re Personalweb Techs., LLC et al., Patent Litig.*, 2022 WL 2290592, at *4 (N.D. Cal. June 24, 2022) (striking "attempts to seek affirmative relief" in an opposition brief as "improper") (citing *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 3630000, at *13 n.8 (N.D. Cal. June 2, 2015)). Second, Rule 26(b)(5)(B) required *Plaintiffs* to promptly seek resolution of the clawback dispute upon receipt of Google's clawback demand, but they still have not done so. *See, e.g.*, *Nesselrotte v. Allegheny Energy, Inc.*, 2008 WL 11511505, at *6 (W.D. Pa. May 6, 2008) ("After a party claiming privilege has notified the receiving party, the next sentence of Rule 26(b)(5)(B) shifts the focus to the party who received the documents . . . [by] impos[ing] three mandatory requirements as well as one permissive avenue for relief upon the party who received the information."). There is thus no procedural basis for Plaintiffs' request.

Plaintiffs' other arguments for *in camera* review (Opp. 9–13) are also meritless. The Kellogg and Schneider declarations—which Plaintiffs barely address—overwhelmingly establish that the purpose of the initial communication and the resulting discussion was to obtain legal advice. Dkts. 733-2, -3; Dkt. 307 at 1 (privilege applies to communications that "involv[e] legal advice or are closely integrated with such protected communications"); *Calhoun* Dkt. 592 at 3 (rejecting demand for production of redacted versions of withheld documents because they were "infused with attorney-client communications and not amenable to more narrow redactions"); *Shenwick v. Twitter, Inc.*, 2018 WL 5750119, at *2 (N.D. Cal. 2018) (privilege applies to communications that are both

1  "related to a business purpose and serve a legal purpose" where "the primary or predominant
2  purpose of the attorney-client consultation is to seek legal advice or assistance"); *Segerstrom v.*
3  *United States*, 2001 WL 283805, at *5 (N.D. Cal. Feb. 6, 2001) (documents properly withheld where
4  "privileged communications are so interwoven with non-privileged information that disclosure of
5  the latter necessarily discloses the former"). Thus, because there is no genuine dispute that the
6  communication was initiated for the purposes of, and predominantly pertains to, the provision of
7  legal advice, the entire document is plainly privileged and there is no basis for *in camera* review of
8  all or any portion of the document.

9       **F.**     **Plaintiffs Have Not Shown That an Exception to the Work Product Protection Applies**
10

11  Plaintiffs' assertion that the Privileged Document or portions thereof should be produced
12  pursuant to the substantial need exception to the attorney work product doctrine (Opp. 12–13)
13  ignores the governing legal standard, which dooms their argument: "There are two requirements for
14  the substantial needs test: 1) the party has substantial need of the materials to prepare the party's
15  case, and 2) the party is unable without undue hardship to obtain the substantial equivalent of the
16  materials by other means." *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *6 (N.D. Cal.
17  Apr. 18, 2003). "The test is not only relevancy, but that there are no other available means by which
18  to secure the same information." *Id.* at *7. Here, even assuming information regarding the CMA's
19  regulatory inquiry (and Google's steps to comply therewith) were relevant—it plainly is not—
20  Plaintiffs fail to show that information cannot be obtained by other means. Nor could they, given
21  the results of that inquiry (and Google's representations to the CMA) are publicly available. *See*
22  Dkt. 733-2 ¶ 6 (identifying public online repository of information regarding the CMA's inquiry).
23  Plaintiffs also fail to show that information about the X-Client-Data header and Mr. Leung's
24  dashboard can only be obtained from the Privileged Document. Plaintiffs received a trove of
25  information on these topics during discovery—including hundreds of thousands of pages that
26  discuss the X-Client-Data header, Rule 30(b)(6) testimony on "Google's identification and
27  correlation of users, devices, electronic addresses, and any other identifiers in connection with web
28  browsing activities, including by the use of . . . Google's X-Client-Data header," testimony from the

creator of the X-Client-Data header, and testimony from Google witnesses about the dashboard. Plaintiffs cannot plausibly now claim that they also require access to Google's protected work product. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 671 (D. Nev. 2013) (no substantial need where movant "has various avenues of gaining access to the information he seeks to support his claim" because myriad documents discussing the same subject matter were also produced in discovery or publicly available); *Perez v. DirecTV Grp. Holdings, LLC*, 2020 WL 2078257, at *3 (C.D. Cal. Mar. 5, 2020) ("Courts are less likely to find 'substantial need' when information is available through other means.").

### G.  Google Does Not Seek to Delay Any Other Hearings or Decisions, and Is Willing to Stipulate to an Alternate Hearing Date for Its Motion

Plaintiffs devote three paragraphs of their Opposition to their purported "concern[s]" regarding a potential "delay[ed] . . . decision [on] Plaintiffs' pending motion for supplemental discovery sanctions." Opp. 16. Such concerns are unfounded. Had Plaintiffs raised this purported concern with Google, the parties could have agreed to an alternate hearing date for the instant motion, thereby avoiding any impact on other hearing dates.

### III.  CONCLUSION

For the foregoing reasons and those stated in Google's opening motion, the Court should grant Google's request to strike Plaintiffs' references to Google's protected information.

| | | |
|---|---|---|
| 1 | DATED:  September 23, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By   */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted pro hac vice)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice)*
carlspilly@quinnemanuel.com

|   |   |
|---|---|
| 1 | 1300 I Street NW, Suite 900 |
| 2 | Washington D.C., 20005 |
|   | Telephone: (202) 538-8000 |
| 3 | Facsimile: (202) 538-8100 |
| 4 | Jonathan Tse (CA Bar No. 305468) |
|   | jonathantse@quinnemanuel.com |
| 5 | 50 California Street, 22nd Floor |
|   | San Francisco, CA 94111 |
| 6 | Telephone: (415) 875-6600 |
| 7 | Facsimile: (415) 875-6700 |
| 8 | *Attorneys for Defendant Google LLC* |