# PLAINTIFFS' REPLY ISO MOTION TO STRIKE NON-RETAINED EXPERT DECLARATIONS FOR WHOM GOOGLE PROVIDED NO EXPERT REPORT (DKT. 705)

# Redacted Version of Document Sought to be Sealed

`

1

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>                     Plaintiffs,<br><br>     v.<br><br>GOOGLE LLC,<br>                     Defendant. | Case No.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE NON-RETAINED EXPERT DECLARATIONS FOR WHOM GOOGLE PROVIDED NO EXPERT REPORT (DKT. 705)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: October 11, 2022<br>Time:  2:00 p.m.<br>Location: Courtroom 1 – 4th Floor |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 2

    A.    Google Misconstrues the Standard for Distinguishing Lay Testimony from
        Expert Testimony. ................................................................................................ 2

    B.    The Google-Employee Declarants Improperly Provide Expert Testimony.......... 4

        1.    Berntson.......................................................................................................... 4

        2.    Levitte............................................................................................................. 6

        3.    Ganem ............................................................................................................. 9

        4.    McPhie.......................................................................................................... 10

    C.    Google's Failure to Comply with the Rules Should Not Be Excused. .............. 11

        1.    Google's Conduct Was Not Substantially Justified. .................................... 11

        2.    Google's Conduct Was Not Harmless........................................................... 11

            a)    Berntson.................................................................................................. 13

            b)    Levitte..................................................................................................... 14

            c)    Ganem..................................................................................................... 14

            d)    McPhie.................................................................................................... 14

    D.    Levitte, Ganem, and McPhie Are Independently Subject to Exclusion. ........... 15

III.  CONCLUSION....................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bastidas v. Good Samaritan Hosp. LP*,
  2017 WL 1345604 (N.D. Cal. Apr. 12, 2017) ................................................................. 2, 8

5

6

*Britz Fertilizers v. Bayer Corp.*,
  2009 WL 1748775 (E.D. Cal. June 17, 2009) ................................................................. 4, 5

7

*Buffin v. City & County of San Francisco*,
  2019 WL 1017537 (N.D. Cal. Mar. 4, 2019) (Gonzalez Rogers, J.) ...................................... 3

8

9

*Carr v. Cnty. of San Diego*,
  2021 WL 4244596 (S.D. Cal. Sept. 17, 2021) ............................................................. 2, 11, 12

10

*Cleveland v. Groceryworks.com, LLC*,
  200 F. Supp. 3d 924 (N.D. Cal. 2016) ............................................................................. 7, 8

11

12

*Florida Atlantic University Research Corporation v. Acer, Inc.*,
  2014 WL 12385711 (S. D. Fla. 2014) ........................................................................... 13, 14

13

14

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  2006 WL 1330002 (N.D. Cal. May 15, 2006) ............................................................. 1, 2, 5

15

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2019 WL 2579793 (S.D. Cal. June 24, 2019) ...................................................................... 3

16

17

*Humboldt Baykeeper v. Union Pac. R. Co.*,
  2010 WL 2179900 (N.D. Cal. May 27, 2010) ...................................................................... 2

18

19

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  2009 WL 230039 (N.D. Cal. Jan. 27, 2009) ................................................................... 9, 10

20

*In re Google AdWords Litigation*,
  2012 WL 28068 (N.D. Cal. Jan. 5, 2012) ........................................................................... 5

21

22

*Laser Design Int'l, LLC v. BJ Crystal, Inc.*,
  2007 WL 735763 (N.D. Cal. Mar. 7, 2007) ...................................................................... 13

23

24

*Matsuura v. E.I. du Pont De Nemours & Co.*,
  2007 WL 433115 (D. Haw. Feb. 2, 2007) ........................................................................ 10

25

*Open Text S.A. v. Box, Inc.*,
  2015 WL 393858 (N.D. Cal. Jan. 29, 2015) ...................................................................... 3

26

27

*Radware, Ltd. v. F5 Networks, Inc.*,
  2016 WL 590121 (N.D. Cal. Feb. 13, 2016) ..................................................................... 3

28

i

*SEC v. Sabhlok*,
2010 WL 2944255 (N.D. Cal. July 23, 2010) ......................................................... 2

*Trulove v. D'Amico*,
2018 WL 1090248 (N.D. Cal. Feb. 27, 2018) (Gonzalez Rogers, J.) ..................................... 1

*United States v. Figueroa-Lopez*,
125 F.3d 1241 (9th Cir. 1997) ............................................................ *passim*

*Vasserman v. Henry Mayo Newhall Mem'l Hosp.*,
65 F. Supp. 3d 932 (C.D. Cal. 2014) ......................................................... 3

*Wilson v. Kiewit Pac. Co.*,
2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) .................................................. 13

*Wong v. Regents of Univ. of California*,
410 F.3d 1052 (9th Cir. 2005) ..................................................... 12, 15

*Zeiger v. WellPet LLC*,
526 F. Supp. 3d 652 (N.D. Cal. 2021) .................................................. 6, 7, 9, 14

**Rules**

Fed. R. Civ. P. 26 .................................................................. 2, 3, 11, 14

Fed. R. Civ. P. 37(c) ............................................................... 1, 11, 15

Fed. R. Evid. 701 ...................................................................... 2, 7, 11

Fed. R. Evid. 702 ..................................................................... *passim*

Fed. R. Evid. 1006 ....................................................................... 3

# I.      INTRODUCTION

This Court repeatedly made clear that the parties were required to serve reports for "all experts, retained and non-retained," by the appropriate deadlines. Dkt. 465 at 1; Dkt. 392 ¶ 10. Google did not comply with that requirement and instead filed four employee-expert declarations two months after the deadline for final expert reports. Google waited to serve these declarations until the same day Google filed its opposition to Plaintiffs' motion for class certification and Google's *Daubert* motions, including testimony that "it would be impossible" to apportion Google's unjust enrichment to class members (Dkt. 666-19 ¶ 7 (Levitte Decl.) & Dkt. 666-17 ¶ 36 (Ganem Decl.)), and a critique of Plaintiffs' expert's proposal for identifying class members (Dkt. 666-18 ¶ 40 (Berntson Decl.) (purporting to rebut "Mr. Hochman's . . . proposed approach for identifying Class Members")).

Having failed to provide the required reports, Google now seeks to evade exclusion on the ground that these employees have "personal knowledge" about the subjects of their testimony and were therefore proffering only lay testimony. That is factually untrue for much of these declarations, as detailed below. Regardless, Google's argument is based on a misunderstanding of the law. "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997). The key distinction is that "[l]ay opinion testimony is not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1330002, at *3 (N.D. Cal. May 15, 2006). Applying the proper standard for distinguishing lay from expert testimony, the four Google-employee declarations easily fall in the latter camp.

The declarations should be excluded under Rule 37(c). Google's half-hearted attempt to downplay Plaintiffs' prejudice falls flat. "The opportunity to depose these witnesses without a clear explanation in advance for the opinions they would offer, and the basis for those opinions, completely undercut the purposes of expert discovery." *Trulove v. D'Amico*, 2018 WL 1090248, at *3 (N.D. Cal. Feb. 27, 2018) (Gonzalez Rogers, J.). Exclusion is warranted.

1

## II.     ARGUMENT

### A.     Google Misconstrues the Standard for Distinguishing Lay Testimony from Expert Testimony.

Google incorrectly suggests that any testimony qualifies as "lay" opinion so long as it is "based on personal knowledge." Opp'n at 7; *see also* Opp'n at 8 ("[W]here opinion testimony is based on a witnesses' personal knowledge gained from their day-to-day employment—even where that knowledge is technical in nature—courts consider the testimony lay, rather than expert."). That is not the law. "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *Figueroa-Lopez*, 125 F.3d at 1246; *see also Humboldt Baykeeper v. Union Pac. R. Co.*, 2010 WL 2179900, at *1 (N.D. Cal. May 27, 2010) (same). "If the witness with specialized knowledge was a percipient witness, that does not mean that his testimony automatically qualifies as lay testimony." *SEC v. Sabhlok*, 2010 WL 2944255, at *4 (N.D. Cal. July 23, 2010). A witness who testifies "premised on his or her personal knowledge based on his or her own involvement in the dispute" can still be "a non-retained expert subject to the disclosure requirements of Rule 26(a)(2)(C)." *Carr v. Cnty. of San Diego*, 2021 WL 4244596, at *4 (S.D. Cal. Sept. 17, 2021).

Because Google's Opposition mistakes the necessary (personal knowledge) as sufficient, Google fails to grapple with how courts distinguish lay from expert testimony. The key difference is that "lay opinion testimony results from a process of reasoning familiar in everyday life." *Bastidas v. Good Samaritan Hosp. LP*, 2017 WL 1345604, at *4 (N.D. Cal. Apr. 12, 2017) (citing Fed. R. Evid. 701, Committee Notes on Rules, 2000 Amendment). On the other hand, "expert opinion testimony results from a process of reasoning which can be mastered only by specialists in the field." *Id.* (citing same). "[T]he mandate of Rule 701 is clear. Lay opinion testimony is not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Fresenius*, 2006 WL 1330002, at *3. A "witness with specialized knowledge [who] provides percipient testimony" qualifies as a lay witness only when providing "testimony about common enough matters that require a limited amount of expertise." *Sabhlok*, 2010 WL 2944255, at *4 (citing *Figueroa–Lopez*, 125 F.3d at 1246).

None of Google's cases suggest that testimony is categorically "lay" if based on personal knowledge. To the contrary, consistent with the case law summarized above, each of Google's cases focused on the specific testimony at issue, assessing whether the "information concerns subject matter beyond the common knowledge of the average layman." *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 947 (C.D. Cal. 2014). And Google's cases are factually distinct. In *Vasserman*, a wage theft case, the defendant's Chief of Human Resources was permitted to offer lay testimony where he used "simple mathematical calculations" to provide information about the scope of the putative class. In *Buffin v. City & County of San Francisco*, 2019 WL 1017537, at *5 (N.D. Cal. Mar. 4, 2019) (Gonzalez Rogers, J.), the challenged declarant did not provide expert opinions. "Instead, plaintiffs are only offering [his] testimony as a summary witness for factual information under Federal Rule of Evidence 1006," a procedure and rule not at issue here. *Id.* at *5 n.20. And in *Open Text S.A. v. Box, Inc.*, 2015 WL 393858, at *7 (N.D. Cal. Jan. 29, 2015), the defendant's co-owner, who worked on the at-issue "products himself," was permitted to testify about whether changes could be made to those products and how long it would take to do so. By contrast to those two cases, the four employees in this case provide far more than "simple mathematical calculations" and none provide testimony to satisfy Rule 1006 or about potential changes to Google's products.[1]

The current dispute perfectly illustrates the reasons for excluding opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). This Rule "ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson." *Id.* Committee Notes on Rules, 2000 Amendment. Disclosure requirements are "intended to minimize surprise that often results from unexpected testimony, reduce the need

---

[1] Google's remaining cases are further afield. The court in *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 590121, at *15 (N.D. Cal. Feb. 13, 2016) merely agreed with the plaintiff's concession that the defendant's undisclosed witness could provide lay testimony "about facts regarding which he has personal knowledge, such as, for example, the date on which he wrote [a] White Paper." And the challenged witness in *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 2579793, at *1 (S.D. Cal. June 24, 2019) was actually disclosed as an expert.

1    for continuances, and to provide the opponent with a fair opportunity to test the merit of the

2    expert's testimony through focused cross-examination." *Figueroa–Lopez*, 125 F.3d at 1246.

3          **B.      The Google-Employee Declarants Improperly Provide Expert Testimony.**

4                    1.     <u>Berntson</u>

5          Google employee Dr. Berntson expressly seeks to rebut opinions offered by Plaintiffs'

6    technical expert, Jonathan Hochman, including Mr. Hochman's opinions about class identification.

7    Dkt. 666-18 ¶ 1 ("I address some errors and false assumptions made in Mr. Jonathan Hochman's

8    expert report, submitted in this case."); *id.* ¶¶ 40-43 (section purporting to rebut "Mr. Hochman's

9    . . . proposed approach for identifying Class Members"). Such explicit rebuttal testimony is

10   inescapably "expert in nature." *Britz Fertilizers v. Bayer Corp.*, 2009 WL 1748775, at *4 (E.D.

11   Cal. June 17, 2009) (excluding testimony from improperly disclosed witness who purported to

12   "offer an independent critique" of another expert).

13         Google's sole excuse for not submitting a report from Dr. Berntson is that "these

14   paragraphs are based on Dr. Berntson's personal knowledge and thus are not expert testimony."

15   Opp'n at 12. Google's argument mischaracterizes the facts and ignores the law. As for the facts,

16   Mr. Hochman's opinion about the reliability of Google's maybe_chrome_incognito detection bit

17   was based on "the actual data that Google produced in the Special Master process." Mot. at 12

18   (citing Dkt. 608-12 (Hochman Report) App. G ¶ 25). Yet Google now concedes that Dr. Berntson

19   never reviewed any of this data. Opp'n at 12-13. Moreover, Dr. Berntson does not limit his

20   testimony to what he (purportedly) knows about maybe_chrome_incognito, and he instead opines

21   that "***any heuristic*** that relies on the absence of the [X-Client Data] header will not reliably detect

22   Incognito traffic." ¶ 41 (emphasis added). Dr. Berntson thus extrapolates to any and all other

23   Google Incognito detection bits, for which he does not purport to have any personal knowledge

24   (and where Google has refused to take steps to even identify all Incognito detection bits, *see* Dkt.

25   708 at 1). Furthermore, Google's argument is again premised on a misunderstanding of the law.

26   As noted above, "[t]he mere percipience of a witness to the facts on which he wishes to tender an

27   opinion does not trump Rule 702." *Figueroa-Lopez*, 125 F.3d at 1246.

28

4

1    *In re Google AdWords Litigation*, 2012 WL 28068, at *5 (N.D. Cal. Jan. 5, 2012) supports

2    Plaintiffs, not Google. There, the court disregarded portions of a Google-employee declaration

3    submitted with Google's opposition to class certification where he "opines on the merits of the

4    case, such as the viability of classwide restitution." *Id.* Here, Dr. Berntson similarly opines on an

5    issue that Google deems central to its class certification defense, namely, the extent to which class

6    members can be identified. *See* Berntson Decl. § C (addressing "Mr. Hochman's . . . proposed

7    approach for identifying class members"); Dkt. 665 at 24-25 (Google opposing class certification

8    on the ground that "Google cannot readily identify class members").[2]

9        Yet, as explained in the Motion, Dr. Berntson does not actually challenge Mr. Hochman's

10    opinion that Google ***can*** use its data to identify class members and/or verify claims, including by

11    way of the IP address-user agent (IP + UA) combination. Mot. at 12. Dr. Berntson instead suggests

12    that Google "***does not***" use the combination of IP address and user agent to identify users in the

13    ordinary course of business and that Google has "policies" against doing so. Berntson Decl. ¶ 42.

14    Google's opposition now concedes that Dr. Berntson is not directly challenging Mr. Hochman's

15    opinions about what Google ***can*** do, framing Berntson's rebuttal to Hochman as consisting entirely

16    of "clear[] factual statement[s]." Opp'n at 12. Google should therefore have no objection to striking

17    the first sentence of Paragraph 42 (at a minimum), which explicitly attempts to tie Dr. Berntson's

18    assertion about what Google "***does***" in the ordinary course into a rebuttal of Mr. Hochman's

19    opinions about what Google ***could do*** if so required.

20        The rest of Dr. Berntson's declaration improperly consists entirely of "specialized

21    explanations or interpretations that an untrained layman could not make if perceiving the same

22    acts or events." *Fresenius,* 2006 WL 1330002, at *3. "Federal Rule of Evidence 702 encompasses

23    any helpful scientific, technical, or other specialized knowledge, ***whether in the form of fact or***

24    ***opinion***, within the realm of expert testimony." *Britz*, 2009 WL 1748775, at *3 (emphasis added).

25    ───────────────

26    [2] Google's ascertainability argument is legally irrelevant, particularly because class members can
      self-identify. *See* Dkt. 609 at 21-22 (Plaintiffs' class certification motion); Dkt. 713 at 14

27    (Plaintiffs' Reply in support of motion for class certification). But Google has focused its class
      certification defense on this argument, and it is unfair for Google to support that argument with

28    expert testimony that was not properly disclosed.

Dr. Berntson "describe[s] the data that Google Ad Manager may receive when a user in private browsing mode [] visits a website that uses Google Ad Manager," and he "describe[s] multiple factors that affect whether Google Ad Manager actually receives, stores, and/or uses that data for any given visit to a website that uses Google Ad Manager." Berntson Decl. ¶ 1 (summarizing his testimony in ¶¶ 7-12, and ¶¶ 13-39, respectively)

"All of that is plainly specialized knowledge that requires expertise. Indeed, these types of issues are the subject of other expert evidence in this case." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 678 (N.D. Cal. 2021). Plaintiffs' technical expert Mr. Hochman, for example, offered opinions about the private browsing data that Google collects, including based on his review of the private browsing data produced by Google through the Special Master process (*e.g.*, Dkt. 608-12 ¶¶ 95-109, 166-211). Google retained three experts to rebut Mr. Hochman. *See* Dkt. 666-24 (Zervas), Dkt. 666-21 (Psounis), Dkt. 666-22 (Schwartz). Apparently unsatisfied with the voluminous (and properly disclosed) expert discovery record on these highly technical issues, Google seeks to supplement the record at the eleventh hour with Dr. Berntson's declaration. *See, e.g.*, Dkt. 665 (Google's opposition to class certification, relying on Dr. Berntson's declaration **thirteen times**). Dr. Berntson's opinions overlap with the opinions covered by others. *Compare* Berntson Decl. ¶ 32, *with* Dkt. 666-24 ¶ 9 (Zervas and Bernston both discussing certain "settings and features" that purportedly affect Google's collection of private browsing data).[3]

### 2. Levitte

Mr. Levitte declares himself "a subject matter expert for all ad monetization features of Ad Manager" (Dkt. 666-19 ¶ 2) and, relying on that expertise, offers (for example) his "conclusion" that "it would be impossible to calculate Google's advertising profits from each Putative Class Member" (¶ 7) and that "there is no way to calculate revenue or profits derived from a particular individual" (¶ 20). Google now characterizes these opinions as "information that Mr. Levitte knows based on his years of first-hand experience working at Google on this very topic." Opp'n

[3] Mr. Hochman rebutted those Zervas opinions, showing how those settings and features "fail to prevent Google's collection of private browsing information." Dkt. 608-11, Opinion 4.

Plaintiffs' Reply ISO Motion to Strike Non-Retained Experts 4:20-cv-03664-YGR-SVK

1   at 13. But "[t]he mere percipience of a witness to the facts on which he wishes to tender an opinion

2   does not trump Rule 702." *Figueroa-Lopez*, 125 F.3d at 1246. Other portions of Mr. Levitte's

3   declaration also undermine Google's argument. For example, Mr. Levitte states that "Google does

4   not calculate advertising profits on a per-individual-user basis." ¶ 7. That statement shows that Mr.

5   Levitte has not tried to calculate profits on a per-individual basis, and he therefore has no personal

6   knowledge about whether "it would be impossible" to do so.

7         *Zeiger*, 526 F. Supp. 3d at 678, is squarely on point. The defendant submitted an employee

8   declaration with its opposition to class certification. That employee had not previously been

9   disclosed as an expert, although the employee had been deposed as a fact witness (just like Mr.

10  Levitte). *Id.* at 678. The defendant (just like Google) sought to excuse its failure to comply with

11  the Rules by framing the employee's testimony as "lay." *Id.* The court disagreed. The employee

12  sought to opine that it was "not technically possible to eliminate" particular chemicals from certain

13  food products, *id.*, similar to how Mr. Levitte now opines that it "would be impossible to calculate

14  Google's advertising profits from each Putative Class Member" (¶ 7). The court held that an

15  employee's opinions about whether something is "technically possible" "is a technical and

16  specialized opinion," notwithstanding whether "this evidence were acquired during the course of

17  [the employee's] job duties." *Zeiger*, 526 F. Supp. 3d at 678-79. The opinion therefore amounted

18  to "expert opinions thinly veiled as a lay witness's knowledge acquired from business," and it was

19  excluded. *Id.* The same outcome is warranted here.

20        Google's reliance on *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 940

21  (N.D. Cal. 2016) (Opp'n at 14) is misplaced. In *Cleveland*, a case about labor law violations, the

22  plaintiff-declarant, a truck driver, averred in a declaration that his truck would only remain

23  refrigerated when running, and that he could not turn off the truck and leave it unattended for thirty

24  minutes, lest his haul of food products go bad. Consistent with the cases Plaintiffs cite above, the

25  Court explained that "Rule 701 bars lay witnesses from giving opinions based on technical or

26  specialized knowledge," and that "lay opinion is proper only when it involves a witness stat[ing]

27  his ***conclusions based upon common knowledge or experience***." *Id.* at 949 (emphasis added).

28

1    Ultimately, the truck driver's testimony was lay because it "could be construed as his
2    understanding of his job responsibilities rather than as a technical requirement of the truck." *Id.*
3    Here, on the other hand, Mr. Levitte expressly goes beyond his "job responsibilities" (*i.e.*,
4    explaining how Google supposedly treats revenue) and instead offers his opinion on whether it is
5    technically possible to do other things with Google's data.

6          Google also improperly seeks to use Mr. Levitte's testimony to support its *Daubert* motion
7    against Plaintiffs' damages expert (Mr. Lasinski). Google relies on Mr. Levitte to argue that Mr.
8    Lasinski's damages model is overstated insofar as the model does not account for certain costs.
9    Dkt. 662 at 9, 20 (citing Levitte Decl. ¶¶ 13, 16, 17, 21). But Google concedes (Opp'n at 13 n.9)
10   that Mr. Levitte has no personal knowledge about ▮▮▮▮▮▮, the internal Google financial
11   analysis that Mr. Lasinski used as a model to quantify Google's unjust enrichment from its
12   collection and use of private browsing information (*see* Dkt. 608-9 ("Lasinski Report")
13   §§ 6.3, 7). So Mr. Levitte has no way of knowing whether Google's ▮▮▮▮▮▮ analysis (and
14   therefore Mr. Lasinski) already accounted for the purported costs that Mr. Levitte addresses. And
15   Google's failure to properly disclose Mr. Levitte and submit a report from him deprived Plaintiffs
16   of the opportunity to explore that alleged disconnect. In any event, even if Mr. Levitte had personal
17   knowledge of ▮▮▮▮▮▮ (which he does not, as conceded by Google), any opinions relating
18   to that analysis go far beyond "a process of reasoning familiar in everyday life," *Bastidas*, 2017
19   WL 1345604, at *4 (N.D. Cal. Apr. 12, 2017), as evidenced by the parties' submission of almost
20   500 pages of expert reports addressing Plaintiffs' damages. Dkts. 608-9, 666-23.

21         Google now tries to downplay its reliance on Mr. Levitte in its *Daubert* motion, suggesting
22   that "[t]hese citations are no different than citations to other facts in the record." Opp'n at 14.
23   Wrong. The difference is that Google inappropriately inserted Mr. Levitte's testimony into the
24   record on the same day it filed its *Daubert* motion against Mr. Lasinski. Google drafted that
25   *Daubert* motion based on assertions that had not yet been provided to Plaintiffs (and Plaintiffs'
26   damages expert). If the testimony within Mr. Levitte's declaration were truly "no different than
27   citations to other facts in the record," Google would have relied on those "other facts." Instead,

28

Google belatedly supplemented the record with this additional testimony, apparently unsatisfied with its properly disclosed damages expert.

           3.    <u>Ganem</u>

Mr. Ganem's declaration amounts to expert testimony for the same reasons as Mr. Levitte's and Dr. Berntson's declarations. Like Mr. Levitte, Mr. Ganem opines that "it would be impossible to calculate" Google's private browsing revenues "on a per-individual website visitor (user) basis." Dkt. 666-17 ¶ 36. Mr. Ganem then goes a step further than Mr. Levitte, opining more broadly that "it would be impossible to calculate . . . Google Analytics' revenue or profits tied only to traffic from Incognito users." *Id.* But like Mr. Levitte, Mr. Ganem admits that he has never tried to do the task he now deems impossible, specifying that his opinions apply insofar as "one were to attempt to do so." *Id.* Mr. Ganem thus attacks Plaintiffs' damages expert. Mr. Ganem's declaration improperly includes "expert opinions thinly veiled as a lay witness's knowledge acquired from business." *Zeiger*, 526 F. Supp. 3d at 678-79.

Like Dr. Berntson, Mr. Ganem also improperly offers highly technical testimony about the data (¶¶ 5-15) and provides opinions about how other "features and settings" impact Google's collection of private browsing data (¶¶ 16-33). Mr. Ganem even goes a step further than Dr. Berntson, offering opinions about how "other browsers' [private browsing modes] handle cookies," notwithstanding that he does not purport to have any personal knowledge about how competitor browsers function. ¶ 31. Google responds by pointing out that Google Analytics "is designed to function the same regardless of what browser a website visitor is using." Opp'n at 16. The problem with Google's argument is that Mr. Ganem's testimony related to what "Chrome creates," and then Mr. Ganem improperly extrapolated that (purported) personal knowledge to how other private browsers function, where he lacks personal knowledge. ¶ 31.

Google's reliance on *Hynix Semiconductor Inc. v. Rambus Inc.*, 2009 WL 230039, at *10 (N.D. Cal. Jan. 27, 2009) is misplaced (Opp'n at 16). That case supports Plaintiffs. The *Hynix* court explained that "[t]he historical practice has been to treat a witness' factual testimony, i.e., testimony about what a witness did or did not do or observed or did not observe, as not being

'expert' testimony." *Id.* Here, as noted above, Mr. Ganem has offered testimony about topics on which he disclaims any personal knowledge, including the technical feasibility of quantifying and apportioning Google's enrichment from the data at issue. And while the *Hynix* court ruled that the testimony at issue was not expert opinion, that case concerned trial testimony, where the party seeking to exclude the testimony had "opened the door" to it. *Id.* at *12. Here, there can be no argument that Plaintiffs "opened the door" to Mr. Ganem's untimely expert testimony.

### 4. McPhie

Mr. McPhie's declaration amounts to expert testimony because he admittedly lacks personal knowledge on the subject on which he purports to opine—namely, whether Google disclosed the challenged conduct. Mr. McPhie admits in his declaration that he is ***not*** personally familiar with how Incognito mode works, noting "I am ***informed*** that Incognito Mode provides privacy in three ways." Dkt. 666-12 ¶ 3 (emphasis added). Google concedes the same, explaining that "***other Googlers*** provided Mr. McPhie some information about Incognito mode's function and purpose." Opp'n at 15 (emphasis added). Google also acknowledges (as it must) that percipient witnesses may not "render expert opinions based on information obtained outside of their personal knowledge without [] having timely filed an expert report." Opp'n at 15 (quoting *Matsuura v. E.I. du Pont De Nemours & Co.*, 2007 WL 433115, at *2 (D. Haw. Feb. 2, 2007)).

Google tries to circumvent that rule by belittling McPhie's testimony, suggesting that he merely "authenticates the language contained in the [] disclosures and points the Court to hyperlinks where they can be found." Opp'n at 15. Not so. The crux of McPhie's declaration is his opinion that "Google's disclosures about Incognito mode, and private browsing generally, are consistent with the features I am informed Incognito mode provides." *Id.* ¶ 4. He spends the rest of his declaration discussing Google disclosures and opining (incorrectly) that each disclosed Google's collection of private browsing information. *Id.* ¶ 15 ("The Privacy Policy discloses that Google collects the Data described [] above."); *id.* ¶ 21 ("This is exactly how Incognito mode works."); *id.* ¶ 28 ("Incognito mode provides privacy in the manner described above in paragraph 3"); *id.* ¶ 52 ("As described above, Google discloses that it receives the data at issue when users

visit non-Google websites that use Google services."). Because Google concedes that McPhie bases these opinions on knowledge from "other Googlers," he cannot offer them under Rule 701.

### C.     Google's Failure to Comply with the Rules Should Not Be Excused.

Google's Opposition falls far short of its burden to prove that its failure to comply with the Rules was substantially justified or harmless. *See Carr*, 2021 WL 4244596, at \*4 (under Rule 37(c)(1), "burden shifts to [non-complaint parties] to establish that their failure to comply with Rule 26(a)(2)(B) was substantially justified or harmless"); Opp'n at 17-22.

#### 1.     Google's Conduct Was Not Substantially Justified.

Google claims that it "had substantial justification for its actions" since it filed, in Google's view, "nearly identical declarations" last December in opposition to the *Calhoun* plaintiffs' motion for class certification, and the *Calhoun* plaintiffs did not move to exclude those declarations. Opp'n at 17. That argument fails for at least four reasons. *First*, the *Calhoun* case is not about Incognito or private browsing, and so the declarations are not the same. *Second*, when Google filed those declarations last December, the *Calhoun* case had not yet been assigned to Your Honor, and so this Court's Standing Order did not yet apply. *See Calhoun* Dkt. 471. *Third*, unlike in this case, where all expert reports were served by June 7, 2022 (two months before Google filed these declarations), the parties in *Calhoun* have not yet served any Rule 26 expert reports. *Calhoun* Dkt. 866. Google might comply with the Rules in *Calhoun*. *Fourth*, and most importantly, whether Google violated Rule 26 in *Calhoun* is of no moment here. That is a different case, where the plaintiffs are represented by entirely different lawyers. Plaintiffs here should not be prejudiced on the basis of what different lawyers did or did not do in *Calhoun*. In effect, Google argues that its misconduct in one case grants Google a license to repeat that misconduct in another. Google cites no case for that proposition because there is none.

#### 2.     Google's Conduct Was Not Harmless.

Google's efforts to downplay Plaintiffs' harm fare no better. Google incredulously suggests that receipt of these declarations "three weeks before the end of expert discovery" allowed for "sufficient time for any of Plaintiffs' experts to provide a response." Opp'n at 18. In addition to

the fact that the deadlines for all expert reports had already passed, Google neglects to inform the Court that, within those three weeks, Plaintiffs already had to (1) depose all five of Google's disclosed experts, (2) oppose Google's three *Daubert* motions, (3) prepare and file their reply in support of class certification, and (4) file their own *Daubert* motion. Mot. at 5. Anticipating this crunch and seeking to make any necessary adjustments to the schedule, Plaintiffs months earlier asked Google whether it would serve any expert reports from employees. Mot. Ex. 3 (Dkt. 704-5). Google said no, and Google now seeks to evade that commitment because its response "reserve[d] the right to serve additional rebuttal reports." Opp'n at 19. But the deadline for rebuttal reports was June 7, and Google did not serve any by these declarants. Google could not reserve for itself the right to disregard the Court's Standing Order and the deadlines for expert reports.

Google next contends that Plaintiffs should have asked Google to extend the case schedule so that Plaintiffs could then serve additional rebuttal expert reports and/or depose the four declarants. Opp'n at 18. As a threshold matter, Plaintiffs doubt Google would have agreed to such a request.[4] Regardless, that approach simply substitutes one form of prejudice for another. "Disruption to the schedule of the court and other parties in that manner is not harmless. Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) (affirming exclusion of expert testimony). The Ninth Circuit has similarly explained that one purpose of the expert disclosure rules is to "reduce the need for continuances." *Figueroa-Lopez*, 125 F.3d at 1246.

Reopening discovery is not a suitable alternative where, as here, "the case has been pending for nearly two years . . . ; reopening expert discovery to permit Defendants to remedy the shortcomings in their disclosures undeniably would delay resolution of the present Motion for Summary Judgment as well as the litigation more generally." *Carr*, 2021 WL 4244596, at *5 (granting motion to strike declaration from witness that did not submit expert report); *see also*

---

[4] When Plaintiffs first identified the significance of Bert Leung and his Incognito detection work based on a November 2021 production, Plaintiffs asked Google to extend the deadline for fact discovery. Google said no, forcing Plaintiffs to move for relief. Dkts. 370-1 at 12-15; Dkt. 377.

12

*Laser Design Int'l, LLC v. BJ Crystal, Inc.*, 2007 WL 735763, at *4 (N.D. Cal. Mar. 7, 2007) (admission of "untimely expert testimony at this stage in the litigation would not be harmless to Plaintiff," where the testimony would result in "need to have fact and expert discovery reopened"). The Court should not reward such gamesmanship.

Google cites just one example of a court proposing to extend case deadlines rather than exclude testimony for failing to comply with disclosure rules, but the facts of that case are far afield. *See* Opp'n at 18 (citing *Wilson v. Kiewit Pac. Co.*, 2010 WL 5059522, at *9 (N.D. Cal. Dec. 6, 2010)). *Wilson* had nothing to do with expert testimony. In addition, the defendant's reliance on previously undisclosed *fact* witnesses was "substantially justified" because the plaintiff amended her complaint just two weeks prior to filing her motion for class certification, and then "significantly altered" the class definition in the motion, which meant "that defendant did not know which facts it would need to adduce to oppose certification." *Id.* at * 10. Google was not blindsided here.  Google's final arguments, specific to each witness, fare even worse.

a)   Berntson

Google argues that Plaintiffs have suffered no prejudice because Dr. Berntson relied in part on his June 2021 deposition for his critique of Plaintiffs' technical expert. Opp'n at 19. But that deposition took place eight months before Plaintiffs uncovered the Incognito-detection bits, the subject on which Dr. Berntson now seeks to opine. *See* Dkt. 593-3 (sanctions order) at 22-24 ("Google's discovery deficiencies c[a]me to light" in February and March 2022). This case is just like *Florida Atlantic University Research Corporation v. Acer, Inc.*, 2014 WL 12385711, at *1 (S. D. Fla. 2014), where although the moving party "learned of Mr. Marcinka as a potential fact witness in May 2013 and deposed him in December 2013, Mr. Marcinka's conclusions about the components of Auto Line Number 30 . . . were set forth for the first time in his declaration, filed after the close of discovery." Here, while Plaintiffs learned of Dr. Berntson early on in discovery, and deposed him as a fact witness, his opinions about maybe_chrome_incognito "were set forth for the first time in his declaration, filed after the close of discovery." *Id.* "[T]o allow [Google] to add an undisclosed expert at this stage when [Plaintiffs] have not had the opportunity to depose

1  him on those opinions or challenge the reliability of the opinions under *Daubert* would be
2  inconsistent with both the Court's Order and the Rules of Civil Procedure." *Id.* at *3.

3         b)     Levitte

4         Google argues that Plaintiffs have suffered no prejudice because Mr. Levitte provided a
5  declaration last year in *Calhoun* relating to the plaintiffs' damages in *Calhoun*, and Google even
6  faults Plaintiffs for not questioning him about those opinions during his deposition in this case.
7  Opp'n at 19-20. Google's *Calhoun*-focused argument fails for the reasons discussed above. In
8  addition, Google's argument is nonsensical. Plaintiffs deposed Mr. Levitte in this case more than
9  a month before any expert reports were served in this case. Before expert discovery commenced,
10 Plaintiffs could not possibly have been expected to understand how Mr. Levitte's testimony about
11 damages in a different case about a different browsing mode would apply to this case.

12        "The prejudice to [Plaintiffs] is clear. If [Levitte] had been properly disclosed as an expert,
13 [Plaintiffs] would have been given a full Rule 26 disclosure; could have questioned [Levitte] as an
14 expert [and] could have determined whether its own experts needed to rebut any of [Levitte's]
15 expert opinions." *Zeiger*, 526 F. Supp. 3d at 679. That is how the process played out for Google's
16 retained damages rebuttal expert, Bruce Strombom, who submitted an expert report at the
17 appropriate time and whom Plaintiffs deposed. But Google apparently believed that Mr.
18 Strombom's report did not meet Google's needs, so Google supplemented the record on the same
19 day it filed its *Daubert* motions and class certification opposition. "Allowing [Levitte's] improper
20 opinions and denying this motion to strike . . . would mean that [Levitte] could testify to expert
21 opinions without having gone through any of the hurdles that other experts do." *Id.* Mr. Levitte's
22 declaration should be excluded.

23        c)     Ganem

24        Google's *Calhoun*-based arguments should be rejected for the same reasons noted above.

25        d)     McPhie

26        Google concedes that it did not disclose McPhie in its amended disclosures, Opp'n at 20,
27 which independently warrants exclusion. Google (again) resorts to belittling Mr. McPhie's

28
                                          14

declaration as mere "authentication testimony." Opp'n at 20. Not true. *See supra* § II.B.4. Plaintiffs' prior awareness and deposition of Mr. McPhie's former supervisor (Greg Fair) does not alleviate Plaintiffs' prejudice. That deposition occurred on December 14, 2021—before Google served Mr. Fair's declaration in *Calhoun*. Dkt. 430-3 (*Calhoun* Fair Declaration, filed December 22, 2021). Even if Google's *Calhoun*-focused argument were valid (it isn't), the argument would not apply to Mr. McPhie. Google's reliance on Mr. Fair also makes no sense because Google never served an expert disclosure for Mr. Fair either. Google's cases about replacing one witness for another are therefore inapposite. Opp'n at 21.

At bottom, Google falls far short of meeting its burden to justify its failure to comply with this Court's clear rules. As the Ninth Circuit has explained:

> In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. ***Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence***.

*Wong*, 410 F.3d at 1060 (emphasis added). Google is represented by sophisticated counsel and can be expected to know the Rules. Regardless, this Court twice reminded Google to serve expert reports for "all experts, retained and non-retained." Dkt. 465 at 1; *see also* Dkt. 392 ¶ 10. Google should now bear the consequences of its failure to comply with those clear Rules.

**D.    Levitte, Ganem, and McPhie Are Independently Subject to Exclusion.**

Plaintiffs also seek to exclude Levitte, Ganem, and McPhie under Rule 37(c)(1) because Google did not adequately disclose them as fact witnesses. Mot. at 13-15. Google ignores this argument, thus waiving any right to challenge exclusion on this ground.

**III.    CONCLUSION**

Plaintiffs respectfully request that the Court grant their motion to strike. Dkt. 705.

Dated: September 21, 2022

By /s/ Mark Mao
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com

16

Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

17