| | |
|---|---|
| **BOIES SCHILLER FLEXNER LLP**<br>David Boies (admitted pro hac vice)<br>333 Main Street<br>Armonk, NY 10504<br>Tel: (914) 749-8200<br>dboies@bsfllp.com<br><br>Mark C. Mao, CA Bar No. 236165<br>Beko Reblitz-Richardson, CA Bar No. 238027<br>Erika Nyborg-Burch, CA Bar No. 342125<br>44 Montgomery St., 41st Floor<br>San Francisco, CA 94104<br>Tel.: (415) 293-6800<br>mmao@bsfllp.com<br>brichardson@bsfllp.com<br>enyborg-burch@bsfllp.com<br><br>James Lee (admitted pro hac vice)<br>Rossana Baeza (admitted pro hac vice)<br>100 SE 2nd St., 28th Floor<br>Miami, FL 33131<br>Tel.: (305) 539-8400<br>jlee@bsfllp.com<br>rbaeza@bsfllp.com<br><br>Alison L. Anderson, CA Bar No. 275334<br>725 S Figueroa St., 31st Floor<br>Los Angeles, CA 90017<br>Tel.: (213) 995-5720<br>alanderson@bsfllp.com<br><br>*Attorneys for Plaintiffs* | **SUSMAN GODFREY L.L.P.**<br>Bill Carmody (admitted pro hac vice)<br>Shawn J. Rabin (admitted pro hac vice)<br>Steven M. Shepard (admitted pro hac vice)<br>Alexander Frawley (admitted pro hac vice)<br>1301 Avenue of the Americas, 32nd Floor<br>New York, NY  10019<br>Tel.: (212) 336-8330<br>bcarmody@susmangodfrey.com<br>srabin@susmangodfrey.com<br>sshepard@susmangodfrey.com<br>afrawley@susmangodfrey.com<br><br>Amanda K. Bonn, CA Bar No. 270891<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067<br>Tel.: (310) 789-3100<br>abonn@susmangodfrey.com<br><br>**MORGAN & MORGAN**<br>John A. Yanchunis (admitted pro hac vice)<br>Ryan J. McGee (admitted pro hac vice)<br>201 N. Franklin Street, 7th Floor<br>Tampa, FL 33602<br>Tel.: (813) 223-5505<br>jyanchunis@forthepeople.com<br>rmcgee@forthepeople.com<br><br>Michael F. Ram, CA Bar No. 104805<br>711 Van Ness Ave, Suite 500<br>San Francisco, CA 94102<br>Tel: (415) 358-6913<br>mram@forthepeople.com |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendants. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE REBUTTAL EXPERT REPORT OF KONSTANTINOS PSOUNIS (DKT. 703)**<br><br>Date:     October 11, 2022<br>Time:    2:00 p.m.<br>Location: Courtroom 1 – 4th Floor<br>Judge:   Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................... 1
II. ARGUMENT ............................................................................................................................ 2
    A. Dr. Psounis's Qualifications Are Irrelevant to this Motion Because He Did Not Employ Them. ................................................................................................................ 2
    B. Dr. Psounis's Opinions Are Not Based on a Reliable Methodology. ....................... 4
        1. Dr. Psounis's "Entropy" Opinions Are Irrelevant........................................4
        2. Google's Arguments About Experts Not Being "Required [] to Conduct a Study or Test" Concede the Point. ..........................................................5
        3. Google Misrepresents the Limited Data that Dr. Psounis (Google's Counsel) Did Review. ...................................................................................7
    C. Dr. Psounis's Opinions Are Independently Subject to Exclusion Because Google's Lawyers Performed His (Limited) Data Analysis.................................................... 9
III. CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. FirstCom Music*,
   No. LACV1608931VAPJPRX, 2018 WL 2572725 (C.D. Cal. Mar. 27, 2018) ........................ 10

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   No. 13-CV-05038 NC, 2015 WL 9303980 (N.D. Cal. Dec. 22, 2015) .................................... 12

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................................................. 6

*Grodzitsky v. Am. Honda Motor Co.*,
   957 F.3d 979 (9th Cir. 2020) ................................................................................................... 8

*Linares v. Crown Equip. Corp.*,
   No. EDCV161637JGBKKX, 2017 WL 10403454 (C.D. Cal. Sept. 13, 2017) ........................ 6

*Lyman v. St. Jude Med. S.C., Inc.*,
   580 F. Supp. 2d 719 (E.D. Wis. 2008) .................................................................................. 11

*Maldonado v. Apple, Inc*,
   No. 3:16-CV-04067-WHO, 2021 WL 1947512 (N.D. Cal. May 14, 2021) ............................ 7

*Matter of James Wilson Assocs.*,
   965 F.2d 160 (7th Cir. 1992) ........................................................................................... 12, 13

*Philips Med. Sys. Int'l B.V. v. Bruetman*,
   8 F.3d 600 (7th Cir. 1993) ..................................................................................................... 10

*Ramirez v. ITW Food Equip. Grp., LLC*,
   686 F. App'x 435 (9th Cir. 2017) ............................................................................................ 7

*Sommerfield v. City of Chicago*,
   254 F.R.D. 317 (N.D. Ill. 2008) ............................................................................................ 11

*Wyman v. Sunbeam Prod., Inc.*,
   No. 17-CV-4926-BLF, 2021 WL 1531000 (N.D. Cal. Apr. 19, 2021) .................................... 6

## I. INTRODUCTION

Plaintiffs' Motion to Exclude Portions of the Rebuttal Expert Report of Konstantinos Psounis (Dkt. 703) ("the Motion" or "Mot.") explained how Plaintiffs' technical expert, Jonathan E. Hochman ("Mr. Hochman"), analyzed over ▮ entries of data produced by Google to Plaintiffs, and how Mr. Hochman concluded that Google's Incognito detection methods, including the maybe_chrome_incognito bit, reliably distinguished Incognito traffic from regular browsing traffic with 100% accuracy. Mot. at 9. Mr. Hochman was also able to easily link such private browsing data with users' Google accounts or third-party accounts. Meanwhile, Google's rebuttal expert, Dr. Konstantinos Psounis, purported to rebut the conclusions that Mr. Hochman drew from his extensive data analysis without having looked at the data that Mr. Hochman analyzed, nor Mr. Hochman's analysis of that data. *Id*. at 3–4. Instead, Dr. Psounis relied on an associate from Google's outside law firm in this case to conduct Dr. Psounis's own (limited) analysis of two different sets. *Id*. at 15–16.

Google's response to Plaintiffs' Motion is telling; it attempts to distract from, rather than dispute, Plaintiffs' core argument—that some of Dr. Psounis's opinions should be excluded because he is purporting to rebut data-driven conclusions without having reviewed the underlying data or analysis he is purporting to rebut. First, Google provides a summary of what it considers to be Dr. Psounis's impressive qualifications. But whether Dr. Psounis is qualified to rebut Mr. Hochman's data analysis is besides the point because Dr. Psounis did not attempt to do so. *Second*, Google focuses on Psounis Opinion 5, relating to entropy theory, apparently seeking to draw the Court's attention to Psounis Appendix E, which Google deems to be a "technical appendix." Opp'n at 5. But this is all a red herring because Plaintiffs are not seeking to exclude Psounis Opinion 5. *Third*, Google offer other red herrings—Psounis Appendices F and G, where Dr. Psounis (i.e., counsel for Google) did conduct a limited data analysis. But Appendix G addresses just ▮ data source with signed-out private browsing data (of the ▮ that Google identified), and Mr. Hochman did not rely on data from that source to support the Hochman opinions at issue in this Motion. And Psounis Appendix F did not assess signed-out private browsing data at all, consisting entirely of

-1-   Case No. 4:20-cv-03664-YGR-SVK
REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE REBUTTAL EXPERT
REPORT OF KONSTANTINOS PSOUNIS (DKT. 703)

signed-in data. And even if these two appendices had in fact addressed Mr. Hochman's analysis (which they did not), Dr. Psounis's opinions would still be subject to exclusion because he did not even bother to test or verify that data himself. Instead, he was simply fed analysis prepared directly by a Quinn Emanuel associate.

Google is the largest data aggregator in the history of the world. Surely, if its Incognito detection bit was unreliable and if such data could not be linked to Google Account holders with accuracy, Google would be happy to throw its doors open and let an expert as preeminent as Dr. Psounis look at whatever data might be needed to make such assertions clear. Instead, Google effectively concealed the very data that would be necessary to test such an assertion from its expert, had its outside counsel prepare an analysis of a completely different and (for this purpose) irrelevant set of data, and then feed those opinions to the expert.[1] That is not a reliable methodology to support the rebuttal opinion that Dr. Psounis attempts to proffer. His Opinions 1, 3, and 7 through 10 should be excluded.

## II.   ARGUMENT

### A.   Dr. Psounis's Qualifications Are Irrelevant to this Motion Because He Did Not Employ Them.

Google touts Dr. Psounis's academic and industry experience to argue that Dr. Psounis is qualified to "testify with authoritative expertise on the topics at issue: information theory (entropy), browser fingerprinting, networked distribution systems, and Google's server-side architecture and practices." Opp'n at 8. Indeed, Dr. Psounis's academic and industry experience might qualify him to conduct extensive testing of Google's server-side architecture and Google's trove of private browsing data. And Dr. Psounis's academic and industry experience might qualify him to explain

---

[1] As explained in Plaintiffs' Motion to Strike the Four Google-Employee Declarants Who Did Not Submit Expert Reports, one of Google's employees, Dr. Berntson similarly purports to rebut Mr. Hochman's opinions without having even reviewed the data that Mr. Hochman reviewed. Dkt. 705 at 12. And Dr. Berntson does not actually challenge Mr. Hochman's opinion that Google can use its data to identify class members and/or verify claims. He merely suggests that Google "does not" use the combination of IP address and User Agent to identify users in the ordinary course of business and that Google has "policies" against doing so. Berntson Decl. (Dkt. 666-18) ¶ 42. Google can't drudge up a single employee to swear under oath that Google is incapable of using its data to identify Incognito users, and they refused to show their outside expert the data that would be needed to actually analyze the question. The reason is clear.

how Mr. Hochman (in Google's view) erred when drawing conclusions based on his extensive review of the private browsing data that Google produced in this case.

But Dr. Psounis did not review, analyze, or even look at a sliver of data that Mr. Hochman relied upon. Mot. at 7–9. Dr. Psounis's degrees and experience serve no purpose if not applied to his assignment to rebut the conclusions that Mr. Hochman reached from analyzing the data. A seasoned detective's decades of experience are useless if not applied to the actual evidence in the case. However qualified to do his job, that detective reaches unreliable conclusions if he instead cherry-picks limited evidence to fit a predetermined narrative. Here, Mr. Hochman reviewed and analyzed the data produced in this case to form his opinions regarding what can and cannot be done with private browsing data, including for purposes of identifying class members and verifying claims. *See e.g.*, Hochman Report Opinion 22 (Dkt. 608-12 at 5) ("[F]or Class 1, the Chrome class, Google's records can be used to (1) identify Incognito traffic, and (2) link that Incognito traffic to users' Google accounts or to users' accounts with non-Google websites."). Among other data analyses, that opinion was based on Mr. Hochman evaluating over ▮▮▮▮ entries of browsing data produced by Google and concluding that (1) Google's Incognito detection methodologies (including the maybe_chrome_incognito bit) reliably detected whether the data was in fact "Incognito" (as opposed to regular browsing) with 100% accuracy, and (2) that Google can link signed-out Incognito traffic to specific users' Google accounts. Mot. at 9. In "rebuttal," Dr. Psounis opined that Mr. Hochman's conclusion about the reliability of maybe_chrome_incognito "is incorrect" (Opinion 8) **without having reviewed the data and data sources on which Mr. Hochman relied**, **nor Mr. Hochman's analysis of that data.** That is the core problem with Dr. Psounis's opinions, not his qualifications or lack thereof.

Google now tries to distract the Court from this grave problem by bragging about Dr. Psounis's qualifications and belittling Mr. Hochman. Opp'n at 8. Google goes so far as to suggest that Dr. Psounis "could rely solely on his experience in offering" the opinions at issue in this Motion. *Id*. at 9. But Dr. Psounis is a rebuttal expert, and he is purporting to rebut opinions that were based on another expert's extensive review of actual private browsing data. Dr. Psounis

cannot reliably opine that Mr. Hochman erred before reviewing Mr. Hochman's actual work. Dr. Psounis's qualifications (impressive or not) are simply irrelevant to this Motion, where Plaintiffs are focused on Dr. Psounis's failure to review the work he purports to rebut—not some inability to do so. Dr. Psounis may or may not be a fine rebuttal expert in another case that likewise includes extensive data analysis. But he didn't do the necessary work here, and his opinions should now be excluded.

### B. Dr. Psounis's Opinions Are Not Based on a Reliable Methodology.

#### 1. Dr. Psounis's "Entropy" Opinions Are Irrelevant.

Google first tries to show that Dr. Psounis grounded his opinions on a reliable methodology by pointing to Dr. Psounis's "exposition of information theory and methodology to calculate entropy." Opp'n at 9 (citing Psounis Opinion 5). But Plaintiffs are not seeking to exclude Psounis Opinion 5, which asserts that "Mr. Hochman's description of entropy . . . is incorrect." Psounis Report (Dkt. 666-21) at 44. Mr. Hochman's discussion of entropy comprised just three paragraphs in his report (¶¶ 231–33) and those paragraphs did not discuss his review of the private browsing data produced in this case.

Google's focus on Dr. Psounis's disagreement with those three paragraphs is a red herring for this Motion, where Plaintiffs are focused on different Psounis opinions where Dr. Psounis purports to rebut Mr. Hochman's conclusions regarding what can and cannot be done with Google's data despite Dr. Psounis having not reviewed that data. Google's focus on Psounis Appendix E (Opp'n at 5) is misplaced for the same reasons. Google frames Appendix E as a "technical appendix . . . with formal mathematical proofs [and] methodologies for calculating entropy" (*id.*), but that Appendix (like Psounis Opinion 5) did not even purport to address Mr. Hochman's analysis of the private browsing data produced in this case. Appendix E instead mused about a scenario involving hypothetical people—John, Mary, and Peter, some of whom share devices and work in coffee shops. Psounis Appendix E ¶ 44. That is not a reliable methodology. But the Court need not decide that question for purposes of this Motion because Plaintiffs have not moved to exclude Psounis Opinion 5, making Google's discussion of his work on that opinion

irrelevant.

The Court should also reject Google's last-ditch attempt to make Opinion 5 relevant to this Motion, where Google suggests that Psounis Opinion 5 on entropy "lay[s] a foundation" for the opinions at issue in this Motion. Opp'n at 9. That is incorrect. The word "entropy" appears nowhere else in the report except for Opinion 5 and Appendix E (which supports Opinion 5). At best, this argument further demonstrates that Dr. Psounis is solely relying on his experience and general academic background to rebut Mr. Hochman's analysis of what can be done with the actual data produced in this case (as opposed to a review of the data itself).

### 2. Google's Arguments About Experts Not Being "Required [] to Conduct a Study or Test" Concede the Point.

Google's second argument effectively concedes that Dr. Psounis did not review the actual private browsing data on which Mr. Hochman grounded the opinions that Dr. Psounis purports to rebut. *Id*. at 10–12. Plaintiffs' Motion explained that "Dr. Psounis did not critique Mr. Hochman's methodology, the application of that methodology, or the data and examples provided. Nor did Dr. Psounis conduct a competing analysis of the private browsing data that Mr. Hochman analyzed." Mot. at 11. Google's Opposition (appropriately) does not argue otherwise. Instead, Google points out that "Mr. Hochman's opinions are not exclusively based on any specific data tests" and that Mr. Hochman also relied on other materials too. Opp'n at 10. Plaintiffs agree that Mr. Hochman did not exclusively rely on the Special Master data to reach all of his opinions, and that is why Plaintiffs are not seeking to exclude all of Dr. Psounis's opinions. Instead, Plaintiffs are narrowly seeking to exclude the Psounis opinions that purport to rebut Mr. Hochman's conclusions about what can and cannot be done with Google's private browsing data, which Mr. Hochman based on his review and analysis of the actual data produced in this case. *See* Mot. at 7 (listing the Psounis opinions at issue herein).

Google next suggests that experts are not required "to conduct a study or test, and certainly not a defense expert providing a rebuttal report." Opp'n at 10. Plaintiffs agree that failing to conduct a study is not always an automatic ticket to exclusion. The problem here is that, for the specific Psounis opinions at issue, Dr. Psounis is purporting to rebut Hochman opinions that were

based on Mr. Hochman's review and analysis of the actual data.[2] The fact that Psounis is a "rebuttal" expert to those Hochman opinions only reinforces the need for him to have actually engaged with Mr. Hochman's data analysis.

Plaintiffs also agree with Google that Dr. Psounis did not need to conduct an "independent" analysis of the data (*Id*. at 10). The problem here is that Dr. Psounis (1) neither reviewed the data that Mr. Hochman analyzed and Mr. Hochman's analysis of that data, nor (2) conducted an independent analysis of the data. To rebut opinions expressly based on the data produced in this case, Dr. Psounis was required to grapple with that data, and he failed to do so. Google concedes as much, asserting that Dr. Psounis's opinions are based on "the application of generally accepted information theory principles to real-world networked distribution systems." *Id*. at 11. Whatever that awkward sentence actually means, at least one thing is clear: Google is admitting that Dr. Psounis did not grapple with the actual data produced in the case, and that he instead focused on high-level principles. In a case about Google's collection, storage, and use of private browsing data, Google withheld that actual data from its own expert. This failing impugns the admissibility and reliability, not weight, of Dr. Psounis's opinions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

Dr. Psounis is attempting to rebut conclusions Mr. Hochman reached from his thorough analysis and testing of large amounts of data. To rebut those conclusions in any reliable way, Dr. Psounis should have conducted similar testing, or at the very least explained how Mr. Hochman's testing may be flawed. In the two primary cases Google cite, neither expert was tasked with rebutting conclusions of another expert drawn from that expert's data analysis. *See* Opp'n at 10–11; *Linares v. Crown Equip. Corp.*, No. EDCV161637JGBKKX, 2017 WL 10403454, at *11–12 (C.D. Cal. Sept. 13, 2017) (report examining safety of fork-lift operators); *Wyman v. Sunbeam Prod., Inc.*, No. 17-CV-4926-BLF, 2021 WL 1531000, at *3 (N.D. Cal. Apr. 19, 2021) (report

---

[2] Critically, Mr. Hochman used Google's actual data to literally show how class members can be identified in numerous ways from the data itself. Hochman Report ¶¶ 234, 236 246-47. These real-life examples cannot be rebutted with a brush of the hand, as Google attempted with Dr. Psounis.

1  examining the cause of a fire). The remaining two cases on which Google relies do not discuss
2  rebuttal experts at all, and only discuss testing as it relates to experts in general. *See Maldonado v.*
3  *Apple, Inc*, No. 3:16-CV-04067-WHO, 2021 WL 1947512, at *9–11 (N.D. Cal. May 14, 2021);
4  *Ramirez v. ITW Food Equip. Grp., LLC*, 686 F. App'x 435, 440–41 (9th Cir. 2017).

       **3.      Google Misrepresents the Limited Data that Dr. Psounis (Google's Counsel) Did Review.**

       Google's Opposition devotes significant attention to Psounis Appendices F and G, because those appendices contain the only data testing that Dr. Psounis (i.e., counsel) performed. Opp'n at 5–16. But Psounis Appendix G is not pertinent to this Motion, and the data in Appendix F actively contradicts the conclusions Dr. Psounis offers.

       In Appendix G, Dr. Psounis reviewed ▓ private browsing data source out of the ▓ tested by Mr. Hochman and the ▓ data sources that Google identified as relevant. *See* Mot. Ex. A (Dkt. 702-3) (chart summarizing the Google data sources reviewed). Specifically, Dr. Psounis reviewed a small subset of ▓ data, which contained data from a single user. *See* Psounis Report (Dkt. 666-21) Appendix G. Dr. Psounis relied on Appendix G to rebut Mr. Hochman's opinion that "Google tracked private browsing communications to create detailed profiles," where Mr. Hochman relied on data from the ▓ source. Hochman Report ¶¶ 167–78. Dr. Psounis attempts to downplay the significance of these profiles, suggesting that they are simply "inferred interest segments keyed to pseudonymous identifiers unique to each discrete private browsing session or unique to the website publisher." *Id*. ¶ 79. Relying on data from one plaintiff within ▓, . Psounis then attacks what he concedes to be a straw man, noting that "Mr. Hochman does not even attempt to show that Google or anyone could link these two datasets to the same user. The data proves the opposite." *Id*. ¶ 82. Dr. Psounis thus admits that Mr. Hochman did not base his conclusions about identifying and/or verifying class members based on ▓ data.

       Psounis Appendix F, where Dr. Psounis discussed IP address and user agent, is also not pertinent to this Motion. Google's arguments to the contrary seek to mislead the Court. Plaintiffs' Motion explained that Psounis Appendix F focused entirely on what the parties refer to as "preserved GAIA data"—that is, "authenticated" data generated from users' signed-in browsing

1  sessions, which Google preserved before the Special Master process began. Mot. at 8 n.9, 13.
2  Google's Opposition confusingly refers to this data as part of "the Special Master process" (Opp'n
3  at 6), perhaps seeking to mislead the Court into believing that the Appendix F data consists of
4  private browsing data searched for under the Special Master's supervision. The only connection
5  between the Appendix F data and the Special Master process is that the Special Master ordered
6  Google to produce the preserved data over Google's objection, but the data had generated long
7  before. And again, the data was not signed-out private browsing data. The upshot is that the only
8  source with signed-out private browsing data that Dr. Psounis reviewed is the ▮▮▮▮ source
9  (Psounis Appendix G), but that source is irrelevant for the reasons described above. Google's
10 repeated assertion that Dr. Psounis analyzed data from "▮ logs" is therefore misleading. Opp'n at
11 6, 13. None of those ▮ logs contained signed-out private browsing data.

12      And while beside the point, Google's Opposition tellingly has no answer to Plaintiffs'
13 arguments for why Psounis Appendix F undermines rather than supports Dr. Psounis. For example,
14 Plaintiffs pointed out that "Dr. Psounis could only show that there were mathematical overlaps in
15 IP Addresses and User Agents when assessed separately, but tacitly conceded at the end that IP
16 Addresses and User Agents were unique in combination." Mot. at 13 n.14. Google does not address
17 this argument. Google also has no answer to Plaintiffs' argument that "Mr. Hochman was assessing
18 whether he could accurately join private browsing data with Google account data by comparing
19 data across logs, including (but not limited to) through the combination of IP address and User
20 Agent. Dr. Psounis, by contrast, sought only to assess whether there might be matching IP / User
21 Agent pairs in the same dataset; he did not even try to determine whether there might be other
22 ways to nevertheless attribute that data to particular users." Mot. at 14.

23      Because Dr. Psounis purports to rebut Mr. Hochman's conclusions about the data despite
24 not having looked at the actual private browsing data on which Hochman opined, Dr. Psounis's
25 opinions are based on conjecture and not any scientifically sound methodology. This is insufficient
26 under Rule 702. *See Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986–87 (9th Cir. 2020)
27 (Affirming exclusion of expert opinion at class certification stage due in part due to "lack of
28

supporting studies . . . testing to demonstrate" analysis). These Dr. Psounis opinions are unreliable and should be excluded.

  **C.** **Dr. Psounis's Opinions Are Independently Subject to Exclusion Because Google's Lawyers Performed His (Limited) Data Analysis.**

  Even if Dr. Psounis reviewed and grappled with the correct dataset (he did not), his opinions would still be subject to exclusion because Google's counsel at Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel")—not Dr. Psounis—conducted the tests to get the data undergirding the conclusions in Dr. Psounis's report. In fact, Dr. Psounis never spoke with or otherwise interacted with any Google employee. Psounis Depo. (Dkt. 703-3) at 183:24–184:6. It appears from Dr. Psounis's testimony and Google's response that Quinn Emanuel ran tests on Google's ▮▮▮▮ and IP + User Agent raw data and provided the results of those tests to Dr. Psounis, which Dr. Psounis then analyzed and included in Appendices F and G of his report. *See* Opp'n at 12–13. Crucially, however, Quinn Emanuel ran no further experiments nor pulled any additional data for Dr. Psounis, and Dr. Psounis tacitly accepted Quinn Emanuel's assertions that what they gave him was all he needed to complete his work. *Id.* While the full extent of Quinn Emanuel's conduct is unknown because Dr. Psounis failed to disclose their involvement in his report—and Quinn Emanuel obstructed Plaintiffs from fully inquiring during his deposition (*see, e.g.*, Psounis Depo (Dkt. 703-3) at 184:7–185:17, 200:1–202:14)—the following problems are readily apparent:

- Dr. Psounis "had counsel run the test for [him]." *Id*. at 55:8-9.
- Dr. Psounis claims he proceeded this way because he did not have a computer and viewed it as improper to use USC's computers to run these tests. *See id.* at 10:10–15.
- Dr. Psounis gave counsel "very precise instructions" on how to run the tests. *Id.* at 180:18.
- Counsel then would run the tests and send the data to Dr. Psounis, and "there was a back and forth, to make sure everything is properly done." *Id.* at 180:18.
- Dr. Psounis testified that it was "extremely important" that his "collaborators have

appropriate qualifications" and Google's counsel Dr. Ansorge provided assurance that the Quinn Emanuel attorney conducting the tests for Dr. Psounis met these qualifications. *Id*. at 174:6–23.

- Dr. Psounis could not recall what degrees the Quinn Emanuel attorney held or how she was qualified to run these experiments. *Id*. at 175:2–176:19.
- When asked why Dr. Psounis did not request equipment from Google to run the experiments himself, he responded that he "didn't see a need for it," hadn't "interacted with anybody from Google at all throughout this period," and hadn't "talked to a single person from Google" to verify his experiments. Psounis Depo at 183:24–184:6.

Google argues that in doing all of this counsel merely "assisted Dr. Psounis in gathering information from the record." Opp'n at 13–14. Even under this charitable characterization of events, their involvement nevertheless warrants exclusion. When it comes to evidence relied upon in litigation, witnesses are "supposed to be disinterested" while lawyers are expected "to give the evidence a partisan slant." *Philips Med. Sys. Int'l B.V. v. Bruetman*, 8 F.3d 600, 606 (7th Cir. 1993). These roles are meant to be separate, so when a lawyer "confound[s] the role of witness" and prepares data for use in a case, that data is not necessarily sufficiently reliable. *Id*.; *see also Baker v. FirstCom Music*, No. LACV1608931VAPJPRX, 2018 WL 2572725, at *5 (C.D. Cal. Mar. 27, 2018) ("Because [expert] has failed to verify the underlying data at the core of her expert opinion independently, and instead simply adopted the position of an interested party, the Court finds that [expert's] declaration is not reliable").

Dr. Psounis did not run the experiments himself; instead he **solely relied on Google's counsel to carry out the experiments** and report back the results. *See* Psounis Depo at 20; 172–75. Dr. Psounis **did not verify the results**—nor could he, because the experiments were conducted outside of his supervision, on foreign computers, only overseen by Quinn Emanuel. *See Id*. at 183:24–184:6. Although Dr. Psounis (and Quinn Emanuel) were dismissive of this issue during his deposition, Dr. Psounis nevertheless could not explain whether and how he verified the results.

1  *Id*. at 184:7–185:17, 200:1–202:14. This failure to explain was guised under Quinn Emanuel's
2  erroneous assertion of privilege in a desperate attempt to shield the foundation of Dr. Psounis's
3  work through misapplication of the Protective Order. *Id*. at 184:7–185:17, 200:1–202:14. Quite
4  simply, Dr. Psounis made a request to Google's lawyers to run tests in Google's black box and
5  trusted the results that were returned. *Id*. at 55:8–9, 180:18. Quinn Emanuel did not simply retrieve
6  information; Dr. Psounis provided instructions and had a "back and forth" with Quinn Emanuel
7  (not Google) to "make sure everything was properly done." *Id*. at 180:18. But when pressed on
8  that "back and forth" to "make sure everything was properly done" for the foundation of his
9  report—in other words, to test the methodology and application thereof to the evidence in this
10 case—Dr. Psounis could not provide ***any details*** and was ***expressly forbidden from discussing the***
11 ***substance*** because of Quinn Emanuel's interpretation of the Protective Order. *Id*. at 184:7–185:17,
12 200:1–202:14.

13          Thus, Dr. Psounis's opinions based on this data are unreliable, especially considering
14 Google's history of concealing evidence in this case. *See generally* Dkt. 588 (order sanctioning
15 Google's discovery misconduct); *see also* Dkt. 655 (motion for supplemental sanctions for
16 additional discovery misconduct); *see also Sommerfield v. City of Chicago*, 254 F.R.D. 317, 324
17 (N.D. Ill. 2008) ("Those courts that have considered the issue raised in this case have concluded
18 that summaries of . . . data prepared by a party's lawyer are not sufficiently reliable that they may
19 form the basis of an expert's opinion." (collecting cases)).

20          Although Google seeks to distinguish *Sommerfield* because "the expert erred by relying on
21 summaries of deposition transcripts prepared by counsel, rather than reviewing the deposition
22 transcripts themselves." Opp'n at 15, Google's reading of *Sommerfield* drives home Plaintiffs'
23 point: Dr. Psounis "erred by relying on summaries of [the data] prepared by [Quinn Emanuel],
24 rather than reviewing the [data itself]." Opp'n at 15; *see also Sommerfield*, 254 F.R.D. at 324. As
25 above, this failing also goes to the admissibility, not weight, of Dr. Psounis's opinions. *See Lyman*
26 *v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 724–27 (E.D. Wis. 2008) (excluding projections
27 of accounting expert based on company's sales provided by counsel and unverified by expert).
28

Google only passively cites two cases to defend Quinn Emanuel's substantial role in Dr. Psounis's work, and neither case supports the conduct at issue. Opp'n at 16. In *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, No. 13-CV-05038 NC, 2015 WL 9303980 (N.D. Cal. Dec. 22, 2015), a party to patent litigation sought exclusion of an expert because the expert worked with a third-party company to perform certain work in support of the expert report. But the *Enplas* court's analysis is clearly distinguishable: that third-party company was "listed on the [at issue] patents as a preferred organization to perform" certain work, which was, consequently, a "routinely used methodology." *Id.* at 2. Here, however, Dr. Psounis trusted a Quinn Emanuel lawyer—not an independent consultant or even a Google engineer—to carry out his technical tests with precision and free from bias. While the *Enplas* litigant complained the expert had not personally reviewed the results of the third-party tests, there was no indication that the results were lacking. *Id.* But here, none of that information was even provided in Dr. Psounis's report, subject to **any scrutiny** by Plaintiffs' experts, or any testimony during Dr. Psounis's deposition. That is not how expert discovery works.

Google's other case fares no better, and indeed cuts against Google's conduct. In *Matter of James Wilson Assocs.*, one expert relied in part on information gathered by a retained consultant concerning the state of repair of a building, 965 F.2d 160, 172 (7th Cir. 1992). Although the court explained that "[a]n expert is of course permitted to testify to an opinion formed on the basis of information that is handed to rather than deployed by him," *id.* (which Google directly cited), Google inexplicably disregarded the remainder of the court's analysis:

> And in explaining his opinion an expert witness normally is allowed to explain the facts underlying it, even if they would not be independently admissible. ***But the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence***. . . . If for example the expert witness (call him A) bases his opinions in part on a fact (call it X) ***that the party's lawyer told him, the lawyer cannot in closing argument tell the jury, "See, we proved X through our expert witness, A."*** That was the kind of hand-off attempted in this case. The issue was the state of the building, and the expert who had evaluated that state—the consulting engineer—was the one who should have testified.

*Id.* at 173 (emphasis added). Here, Quinn Emanuel—not a consultant, other expert, or even a Google engineer—attempted the improper "hand-off" observed in *Matter of James Wilson*

*Associates*. Dr. Psounis cannot become the "spokesman" for the work Quinn Emanuel did, and cannot "vouch[] for the truth of what [Quinn Emanuel] had [provided to] him." *Id.* Put simply, Google cannot now invoke the Wizard of Oz and demand that Plaintiffs (and the Court) "pay no attention to that [Quinn Emanuel associate] behind the curtain." This is exactly the kind of circumvention of the rules of evidence prohibited by the Court. Because Quinn Emanuel prevented any discovery into its work, and Dr. Psounis did not independently verify its veracity, any opinions drawn from that work should be excluded.

### III.   CONCLUSION

Plaintiffs respectfully request that the Court grant the Motion and exclude Opinions Nos. 1 and 3, and 7 through 10 of the Dr. Psounis Report.

Dated:  September 21, 2022                **BOIES SCHILLER FLEXNER LLP**

By:   */s/ Mark C. Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400

Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*