UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 20-cv-03664-YGR   (SVK)<br><br>**ORDER ON GOOGLE'S MOTION TO STRIKE**<br><br>Re: Dkt. No. 733 |

The Court has reviewed Google's Motion to Strike ("Motion"; Dkt. 733), the attendant briefs and evidence, GOOG-BRWN-00857642-646 with redactions ("Disputed Document"; Dkt. 707-3), and the relevant case and statutory law. The Court determines that this matter is suitable for resolution without oral argument. Civ. L.R. 7-1(b). For the reasons set forth herein, the Court finds that Google has **WAIVED** any attorney-client privilege and attorney work-product protection as to the unredacted portions of the Disputed Document only, and on that basis **DENIES** the Motion.

## I.   RELEVANT BACKGROUND

### A.   Chronology of Relevant Motion Practice Before this Court

Tedious but essential, the Court provides the following context for the present motion:

- April 2022; June 2022:  Court orders Google to re-review certain documents which have been identified as privileged.  Dkts. 542, 605.

- July 21, 2022:  Google produces re-reviewed documents for which privilege had been improperly claimed, including the Disputed Document.  Jenkins. Decl. (Dkt. 733-1) ¶ 5.

- August 8, 2022:  Plaintiffs file Administrative Motion for Relief re Google's Production of Documents Improperly Withheld as Privileged.  Dkt. 672 ("Administrative Motion").

- August 16, 2022:  Google files Opposition to Administrative Motion.  Dkt. 692.

- August 16, 2022:  Google files Motion to Strike certain documents filed with the

1 Administrative Motion.  Dkt. 693 ("Motion to Strike I").

- August 25, 2022:  Plaintiffs file Reply in Support of their Motion for Supplemental Sanctions.  Dkt. 708 ("Sanctions Reply").  The Motion and Opposition, not relevant to this Order, had been filed on August 4, 2022 and August 18, 2022 respectively. Dkt. 656, 696.
- September 2, 2022:  Google files present Motion to Strike, directed to Plaintiffs' Administrative Motion and their Sanctions Reply ("Motion to Strike II").  Dkt. 733.
- September 26, 2022 Court denies Plaintiffs' Administrative Motion as procedurally improper and terminates Google's Motion to Strike I.  Dkt. 763.

### B.     Disclosure of the Disputed Document

The Disputed Document is an email chain from September-December 2021 between various Google employees.  Dkt. 707-3.  The single subject line reads "Re:  ACTION:  Audit of Chrome X-Client-Data Header - Deadline 06 October."  *Id.*  While some emails in the chain bear the header "Privileged & Confidential; Prepared at the direction of counsel in connection with UK and US litigation and regulatory inquiries," several emails in the chain, including but not only the unredacted portions, do not have this header.  *Id*.  Google originally withheld the entire email chain from production as a privileged attorney-client communication and as attorney work product,[1] and it appears on Google's February 2022 privilege log.  Jenkins Decl. (Dkt. 733-1), ¶ 2; Mao Decl. (744-1) Ex. 1.

In April and again in June, this Court ordered a re-review of certain documents for which Googled had claimed privilege.  Dkts. 542; 605.  Pursuant to that Order, Google attorneys re-reviewed the email chain, determined that a portion was not privileged, unredacted that portion and produced the now partially redacted document on July 21, 2022.  Jenkins Decl. ¶¶ 3, 5.  (For clarity, the Disputed Document is GOOG-BRWN-00857642-646, with partial redactions.  It is the unredacted portion which is the basis for this Motion.)  During the course of the Court-ordered re-

---

[1] Although these concepts are distinct, in the briefs they are argued together and are similarly treated together in this Order.  Accordingly, where the Court uses the term "privilege" or "privileged" in relation to the Disputed Document, it is referring to both the attorney-client privilege and the attorney work product doctrine as addressed in the briefs.

review, Google affirmed to this Court that it had "undertaken reasonable, good-faith efforts to ensure that its application of the privilege is well within the reasonableness standard required" and that "no further re-review is required." Dkt. 566 at 5.[2]

Notably, the foregoing sequence of events leading to Google's disclosure of the Disputed Document, to which Google now attests in the Jenkins Declaration, is contradicted by an earlier representation by Google. In Motion to Strike I, filed before this Motion to Strike II, Google states unequivocally that the Disputed Document was *not* subjected to re-review pursuant to this Court's Orders: "Not all . . . of the exhibits were withheld for privilege, or (*sic*) produced pursuant to the re-review orders. In fact, . . . GOOG-BRWN-00857642 originated from Bert Leung's custodial files—which were collected and reviewed in February 2022." Dkt. 693 at 2, n.1.

Since its production, the Disputed Document has made several appearances in this litigation, including:

1. August 3, 2022: An email from Plaintiffs to Google discussing examples of recently produced documents for which, pursuant to Google's re-review, Google was no longer claiming privilege in whole or in part, including the Disputed Document. Mao Decl. ¶ 4.

2. August 8, 2022: Plaintiffs' Administrative Motion for Relief re Google's Production of Documents Improperly Withheld as Privileged (Dkt. 672).[3] The Disputed Document's unredacted portion is quoted on the first page of the motion (Dkt. 671-2 at 1); the Disputed Document is attached in its entirety to the motion as an exhibit (Dkt. 671-11); and the Disputed Document's unredacted portion is quoted again in Exhibit A to the motion (Dkt. 671-3).

3. August 16, 2022: Google's Opposition to Administrative Motion. Dkt. 692. In its brief, Google twice addresses the Disputed Document, making the argument that it contains

---

[2] Google also advocated for leniency in judging its privilege reviews, particularly where in-house counsel was involved. Dkt. 566 at 4. That plea does not change the outcome in this case, in light of the facts set forth in section II.A.
[3] As noted in section I.A., on September 26, 2022, this Court denied Plaintiffs' motion as procedurally improper. Dkt. 763. The impropriety of Plaintiffs' motion does not, however, excuse Google's response to that motion as it relates to the Disputed Document.

3

information about which Plaintiffs have taken substantial discovery. Dkt. 692 at 3 n.2 and 5 n.6.

4.   August 16, 2022:  Google's Motion to Strike I, seeking to strike Exhibit A to Plaintiffs' Administrative Motion. Dkt. 693.[4] Google articulates the grounds for its motion as a "violation of Local Rule 7-5(b)'s requirement that a supporting 'affidavit or declaration may contain only facts … and must avoid conclusions and argument . . . .'" *Id.* at 1.  **In its motion, Google raises no issue of privilege as to the Disputed Document and does not request that the Disputed Document be stricken by the Court or clawed back by Google.** *See id.*

5.   August 25, 2022:  Plaintiffs' Reply in Support of their Motion for Supplemental Sanctions.  Dkt. 708; Dkt. 707-3.  In the Reply, Plaintiffs challenge a Google declarant, Martin Sramek, who appears in both the unredacted and redacted portions of the email chain reflected in the Disputed Document.  Plaintiffs quote liberally from the Disputed Document and attach it as an exhibit to the supporting declaration of Mr. Mao.  *Id*.  As noted above, the present Motion to Strike II, which is directed at Plaintiffs' reliance on the Disputed Document in their Administrative Motion and their Sanctions Reply, followed on September 2, 2022.

It is against this backdrop that Google now argues that (1) the Disputed Document is a privileged attorney-client communication and attorney work product; and (2) Google has not waived its claims of privilege because Google properly clawed back the Disputed Document pursuant to the Parties' stipulated ESI Order.  Motion at 6.  Though tightly entwined, the Court addresses each argument in turn.

## II.   DISCUSSION

### A.   The Privileged/Protected Status of the Disputed Document

Google offers three declarations in support of its claims that the Disputed Document in its entirety is protected by the attorney-client privilege and attorney work-product protection:

- Declaration of Sara Jenkins, outside counsel (Dkt. 733-1);
- Declaration of Matthew Kellogg, in-house counsel (Dkt. 733-2); and

---

[4] As noted in section I.A., on September 26, 2022, this Court terminated Google's Motion to Strike I in light of its ruling on Plaintiffs' Administrative Motion. Dkt. 763

- Declaration of Nathaniel Schneider, a Google Program Manager (Dkt. 733-3).

In sum, Ms. Jenkins attests: to the production history of the Disputed Document as noted in section I.B. above; that the removal of redactions in a portion of the subject email chain by unidentified reviewers was inadvertent; and to Google's claw-back efforts following the filing of Plaintiffs' Reply Brief in support of the motion for supplemental sanctions. Dkt. 733-1. The declaration provides no details regarding the re-review or what investigation, if any, was undertaken before removing redactions in a portion of the email chain. *Id.*

Mr. Kellogg's declaration attests to his role as in-house counsel, which includes negotiations with regulatory authorities and how, in that role, he directs non-attorney Google employees to conduct investigations to gather information that he needs. Dkt. 733-2 ¶¶ 1-3. Mr. Kellogg goes on to state that the Disputed Document, in its entirety, reflects an investigation that Google Program Manager Nathaniel Schneider conducted at Mr. Kellogg's behest to evaluate product features in relation to a specific regulatory inquiry. *Id.* ¶¶ 6-9. Mr. Kellogg also attests to the use of the results Mr. Schneider's investigation in this litigation. *Id.* ¶ 10.

Mr. Schneider, the author of the first and several subsequent emails in the chain, reaffirms Mr. Kellogg's statements. Dkt. 733-3 ¶¶ 3-4, 6-7. Mr. Schneider also explains that he added the "Privileged and Confidential" header at the top of some of the email and offers that he had the "same understanding" as to all of the emails in the chain. *Id.* ¶ 5.

In sum, if evaluated in a vacuum, the Kellogg and Schneider declarations make a competent case that the Disputed Document, in its entirety, reflects attorney-client communications and attorney work product. But the Court must consider all of the evidence, and here, the evidence to the contrary is also compelling. First, Google's re-review of purportedly privileged documents took place over several months, approximately April-July of this year. And Google assured this Court that its re-review was carefully, thoughtfully conducted. Dkt. 566 at 5. As a result of re-review, Google determined that the now unredacted portions of the Disputed Document had been mistakenly identified as privileged but in fact were not. Google now claims that was an error, but the fact remains that Google intentionally and purposefully removed redactions in the Disputed Document.

1    Second, on August 8, 2022 the Disputed Document made multiple appearances on the
2 record in this case in multiple forms: it was directly quoted on the front page of Plaintiffs'
3 Administrative Motion; attached in its entirety to that motion; and quoted again in Ex. A to that
4 motion. Dkt. 671-2 at 1; Dkt. 671-3; Dkt. 671-11. In its Opposition to the Administrative Motion,
5 Google refers to the Disputed Document not as privileged but merely as providing information
6 already the subject of discovery. Dkt. 692 at 3 & n.2, 5 & n.6.

7    Third, Google's purposeful, intentional un-redaction of certain portions of the Disputed
8 Document is consistent with the fact that in filing its Motion to Strike I, directed in part at the
9 Disputed Document, it did so solely on the grounds of improper attorney argument. When given
10 an obvious opportunity, Google did not argue that the Disputed Document was privileged.
11 Dkt. 693.

12    Fourth, Google's contradictory statements as to whether the Disputed Document was
13 subject to re-review, and thus purposefully unredacted in part, is indicative of a lack of candor
14 regarding the Disputed Document. As recently as August 16, 2022, Google took the position that
15 the Disputed Document was not part of this Court's ordered re-review but simply produced as part
16 of a custodian production. Dkt. 693 at 2 n.1. Now Google attests that the Disputed Document
17 was part of the re-review and its production pursuant to that process was "inadvertent." Jenkins
18 Decl. ¶¶ 3, 5. Google's contradictory statements reveal an unfortunate willingness by Google to
19 characterize the Disputed Document in whatever manner serves Google's purpose in the moment.

20    Taken all together and in light of the record before it, the Court is not inclined to find that
21 the unredacted portions of the Disputed Document are protected by the attorney-client privilege or
22 reflects attorney work product. If privileged status were the singular, determinative issue, the
23 Court would hold an evidentiary hearing on the subject. However, the Court does not need to
24 reach a definitive resolution on the privilege question because even if the Disputed Document was
25 privileged in its entirety, Google has waived privilege.

26    **B.    Google's Waiver**

27    Even if the Kellogg and Schneider declarations are to be believed that the entire email
28 chain was at the behest of counsel and is therefore protected by the attorney-client privilege or

work product protection, Google waived that protection. Google claims it "took swift action upon learning of its mistake, clawing back the document within a day of the Reply brief's filing." Motion at 2. As support for its effort claw back the Disputed Document at this juncture, Google points to the Parties' stipulated ESI agreement. ESI Order; Dkt. 80. First, as the history detailed in section I.B. above demonstrates, Google did not take swift action to claw back the Disputed Document. Rather Google did not react at all and used the document itself in Court filings, demonstrating at worst that the Disputed Document was not privileged and at best that it waived any privilege it may have had.

Furthermore, the ESI order does not save Google's privilege claim. The ESI Order provides[5] in relevant part:

### 8. DOCUMENTS PROTECTED FROM DISCOVERY

a) Pursuant to Fed. R. Evid. **502(d),** the production of a privileged or work-product-protected document, **whether inadvertent or otherwise**, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding . . . For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. **A producing party may assert privilege or protection over produced documents at any time** by notifying the receiving party in writing of the assertion of privilege or protection. Information that contains privileged matter or attorney work product shall be returned or destroyed immediately **if such information appears on its face to have been inadvertently produced or if requested.**

Dkt. 80. Federal Rule of Evidence Rule 502(b) provides that disclosure does not constitute a waiver where:

1. The disclosure is inadvertent;
2. The holder of the privilege or protection took reasonable steps to prevent disclosure; and
3. The holder promptly took reasonable steps to rectify the error . . . .

Section 502(d) provides that a "federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the

---

[5] The phrases upon which Google relies are in bold.

1  disclosure is also not a waiver . . . .".

2  Here, the Parties' ESI stipulation, approved by this Court, invokes Section 502(d) in
3  modifying section 502(b)'s requirements for inadvertent disclosure. Google now relies upon the
4  phrases "inadvertent *or otherwise*" and "[a] producing party may assert privilege or protection
5  over produced documents *at any time*." Dkt. 757 at 8 (emphasis by Google). According to
6  Google, its production of the Disputed Document was inadvertent, and even if not inadvertent, the
7  phrase "or otherwise" gives it carte blanche to assert privilege under any circumstances, including,
8  apparently, intentional waiver. *Id*. Google argues that the phrase "at any time" is further support
9  for this carte blanche as privilege may be claimed at any time, apparently regardless of what
10 actions the claiming party has taken. *Id*.

11 There is no legal support for Google's position in the case law and certainly no factual
12 support in light of the record in this case. A handful of federal cases address waiver of attorney-
13 client privilege and the interplay between a stipulated claw back agreement and Federal Rule of
14 Evidence 502. Most of these decisions arise in the context of a purportedly privileged document
15 being used in deposition followed, or not, by an attempt by the party asserting privilege to claw
16 back the document. *See Doe 1 v. McAleenan*, No. 18-cv-02349-BLF(VKD), 2019 WL 4953196
17 (N.D. Cal. Oct. 8, 2019); *United States v. United Health Group*, No. CV 16-8697 FMO (SSx),
18 2020 WL 10731257 (C.D. Cal. Nov. 9, 2020); *Hologram USA, Inc. v. Pulse Evolution Corp.*, No.
19 2:14-v-00772-GMN-NJK, 2016 WL 3654285 (D. Nev. July 5, 2016); *Luna Gaming-San Diego,*
20 *LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM (WMc), 2010 WL 275083 (S.D. Cal. Jan. 13,
21 2020).

22 The Court is unaware of any case arising under facts similar to those at hand, where a party
23 initially claims a document as privileged, then determines part of the document is not privileged
24 and produces the document in redacted form, the unredacted portions are then referenced in court
25 filings by both the opposing and claiming party, followed, finally, by the claiming party asserting
26 its rights under a stipulated claw back agreement.

27 Nevertheless, decisions that have considered the issue, although in simpler factual
28 scenarios, are instructive. In particular, in *United Health Group, Inc.*, defendant United Health

8

1   Group sought to compel production of documents clawed back by the plaintiff government. The
2   basis for privilege was the deliberative process privilege, and the parties did not dispute that the
3   documents were privileged. 2020 WL 10731257, at *1, 2. The court initially addressed
4   fundamental principles which apply to this case as well. *Id.* at *2. First, whether the attorney-
5   client privilege has been waived is a mixed question of law and fact. *Id.* (citing *United States v.*
6   *Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). Voluntarily disclosing privileged
7   documents to third parties (or adverse parties) will generally waive the attorney-client privilege.
8   *Id.* (citing *Sanmina* at 1116-1117). Disclosures that constitute an express waiver of the attorney-
9   client privilege are typically within the full control of the party holding the privilege. *Id*. (citing
10  *Sanmina* at 1117 (citation omitted)). Inadvertent disclosure, however, does not necessarily waive
11  the privilege. *Id.* (citing *SEC v. Cassano*, 189 F.R.D. 83, 85 (S.D.N.Y. 1999)).

12  The court then noted that the governing protective order in the case further modified Rule
13  502's protections with a classic claw back provision. *Id.* at *2-3. In relevant part, the parties in
14  that case deleted the requirement that a party demonstrate "inadvertence" and instead only
15  required that the claw back be made in good faith. *Id*. at *3. Helpfully to our analysis here, the
16  court noted that:

> Courts have found that while Rule 502 allows parties to modify individualized
> protective orders, <u>unless those modifications contain "concrete directives"
> regarding each prong of Rule 502(b), the prongs of Rule 502(b) remain the
> standard for evaluating a claw back request</u> Particularly (*sic*) when the modifying
> language is not sufficiently clear and adequate, the prongs of Rule 502(b) control.

21  *Id*. at *3 (emphasis added) (citing collected cases). The court found that the parties "failed to
22  express that desire in clear and adequate terms. There is no express statement in the Protective
23  Order demonstrating that the parties intended Rule 502 should not apply." *Id*. Accordingly, the
24  court applied the established prongs of Rule 502(b). *Id*. Under the facts of that case, which as
25  noted above are not instructive in this case, the court found no waiver. *Id*. at 4.

26  Google's effort to frame *United Health Group* as supporting Google's position are
27  unavailing. *See* Dkt. 757 at 7. In this case, the ESI Order does not contain "concrete directives"
28  addressing each prong of 502(b). Nevertheless, a fair read of the ESI Order addresses the first

prong of Rule 502(b), that the disclosure be "inadvertent," by adding "or otherwise," though "or otherwise" is hardly concrete. It is reasonable to infer by the phrase "inadvertent or otherwise" that the parties did not intend to be held to a strict definition of "inadvertent." The Court finds that it is equally fair to say that the parties did not intend to expand "inadvertent" to cover intentional disclosure such as we have in this case. The ESI Order also addresses the third prong of Rule 502(d), modifying the requirement that the holder "promptly" take "reasonable steps to rectify the error" to allow for claw back at any time. Again, however, no reasonable reading of this modification rises to the level of a concrete directive that a holder of a privilege may claw back a document at any time, despite any actions that party may or may not have taken. Finally, and notably, the ESI Order does not address the second prong of Rule 502(b) at all, which requires that the holder of the privilege or protection take "reasonable steps to prevent disclosure." Here, Google took specific, express steps to remove the privilege from certain portions of the Disputed Document, failed to assert privilege after the document appeared on record in this case and even used the Disputed Document in its own filings. Google went so far as to object to the Disputed Document on the grounds of furthering improper attorney argument, without any effort to also assert that the Disputed Document was privileged. Accordingly, the ESI Order does not dispel Google's waiver of privilege as to the Disputed Document, and Google's Motion to Strike is **DENIED**.

### C. Remaining Challenges Asserted by the Parties

The Parties raise additional complaints against each other arising out of the Disputed Document. None of these issues change the Court's rulings above, therefore they are dealt with in the following summary fashion.

#### 1. Plaintiffs' Issues

**Complaint re Rule 7-3**. Plaintiffs complain that Google's Motion is an untimely objection to evidence under Civil Local Rule 7-3. Dkt. 745 at 8. Here, in consideration of the significant issue of waiver of the attorney-client privilege and attorney work product protection, even if Rule 7-3 were applicable, the Court would not hold Google to Rule 7-3's seven day time limit. Accordingly, the Court rejects Plaintiffs' argument that the Motion is untimely.

**In-camera review of entire document.** Plaintiffs ask the Court to examine the entirety of GOOG-BRWN-00857642-646 *in camera* to determine if there are other sections to which privilege should not be applied. Dkt. 745 at 8-9. For the reasons discussed above in section II.A., in light of the Kellogg and Schneider declarations, the Court **DENIES** Plaintiffs' request.

**Crime-fraud exception.** Plaintiffs suggest that an in-camera review of GOOG-BRWN-00857642-646 may support a finding that the privilege and protection have been waived under the crime fraud exception. Dkt. 745 at 14-15. The Court finds no basis for this suggestion on the record before it, and on that basis **DENIES** Plaintiffs' request.

**Delay of Sanctions Motion.** Finally, Plaintiffs complain that Google brought the Motion for the purpose of delaying Plaintiffs' motion for supplemental sanctions. Dkt. 745 at 16. Again, the supposition is ungrounded. Any delay in resolving Plaintiffs' motion arises out of the practical limitation of judicial resources in managing the persistent flow of motions in a case with the factual, procedural and technical complexities presented here.

### 2. Google's Issues

Google complains that Plaintiffs' references to the Disputed Document in its arguments for further in-camera review and the crime fraud exception violate the Rule 26 and the ESI Order. Motion at 7. Plaintiffs state that they did "lock down" the document as required and only refer to certain unredacted portions from memory in sealed portions of their brief. Dkt. 745 at 11 n.4; Dkt. 745-1 ¶ 6. The Court has denied Plaintiffs' requests for in-camera review and for consideration of the crime-fraud exception. Consequently, Google has not been harmed by Plaintiffs' references to the Disputed Document, and the Court finds that, under the unique circumstances of this disclosure in this case, Plaintiffs did not violate Rule 26 or the ESI Order.

**SO ORDERED.**

Dated: October 20, 2022



SUSAN VAN KEULEN
United States Magistrate Judge