# GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR RELIEF REGARDING PRESERVATION

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant, Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR RELIEF REGARDING PRESERVATION**<br><br>Referral: Hon. Susan van Keulen, USMJ<br>Hearing Date: November 22, 2022<br>Time: 10:00 a.m.<br>Crtrm.: 6 – 4th Floor____ |

**NOTICE OF MOTION AND MOTION FOR RELIEF REGARDING PRESERVATION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, on November 22nd at 10:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court, before the Honorable Susan Van Keulen of the United States District Court, Northern District of California at Courtroom 6 – 4th Floor, 280 South 1st Street, San Jose, California, Defendant Google LLC ("Google") will and hereby does move the Court for relief from the Court's May 20, 2022 (Dkt. 587) and August 5, 2022 Preservation Orders (Dkt. 657) (collectively, the "Preservation Orders").

Google's Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Declarations of Larry Greenfield ("Greenfield Decl."), Benjamin Kornacki ("Kornacki Decl."), Julian Kranz ("Kranz Decl."), Joshua Halstead ("Halstead Decl."), Patrick Quaid ("Quaid Dec."), Daryl Seah ("Seah Decl."), Srilakshmi Pothana ("Pothana Decl."), and Tracy Gao ("Gao Decl."); all matters of which the Court may take judicial notice; other pleadings and papers on file in this action; and other written or oral argument that Google may present to the Court.

**RELIEF REQUESTED**

Google respectfully seeks relief from preservation of ███████████ linking tables and ██ Analytics mapping tables.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. PROCEDURAL AND FACTUAL BACKGROUND .................................................... 2

III. ARGUMENT .................................................................................................................. 6

    A. Limited Relief From The Court's Order Regarding Preservation Of "All Mapping And Linking Tables" Is Warranted ................................................... 6

        1. The Burden And Expense Of Preserving The ▮▮▮ Tables And The ▮▮ Analytics Tables Outweighs Any Illusory Benefit They May Have ............................................................................. 7

        2. The Parties' Respective Resources Do Not Justify The Onerous Burdens Preserving The ▮▮ Tables Requires ......................................... 9

        3. At A Minimum The Court Should Require Plaintiffs To Pay All Costs Associated With Preservation Of The ▮▮ Tables ........................................ 10

    B. Google's Preservation Of Mapping And Linking Tables Is Consistent With The Court's Guidance And Orders ............................................................... 11

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

### Cases

*Apple Inc. v. Samsung Elecs. Co.*,
  2011 WL 1938154 (N.D. Cal. May 18, 2011) .......................................................................... 12

*Apple Inc. v. Samsung Elecs. Co.*,
  2013 WL 4426512 (N.D. Cal. Aug. 14, 2013) .......................................................................... 6

*Boeynaems v. LA Fitness Int'l, LLC*,
  285 F.R.D. 331 (E.D. Pa. 2012) ........................................................................................ 10, 11

*Finjan, Inc. v. ESET, LLC*,
  2018 WL 5263243 (S.D. Cal. Oct. 23, 2018) ............................................................................ 8

*Glob. Tech., Inc. v. Ningbo Swell Indus., Co.*,
  2021 WL 5443272 (E.D. Mich. Apr. 27, 2021),
  *reconsideration denied*, 2021 WL 2283745 (E.D. Mich. June 4, 2021) ..................................... 7

*Hegarty v. Transamerica Life Ins. Co.*,
  2021 WL 4899482 (N.D. Cal. Oct. 21, 2021) ......................................................................... 12

*In re Bard IVC Filters Prods. Liability Litig.*,
  317 F.R.D. 562 (D. Ariz. 2016) ................................................................................................. 8

*Lawson v. Spirit AeroSystems, Inc.*,
  2020 WL 3288058 (D. Kan. June 18, 2020),
  *aff'd*, 2020 WL 6939752 (D. Kan. Nov. 24, 2020) .................................................................... 9

*Lickerish, Inc. v. PicClick, Inc.*,
  2022 WL 2812174 (N.D. Cal. July 18, 2022) ........................................................................... 9

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
  2014 WL 5477639 (N.D. Cal. Oct. 29, 2014) ....................................................................... 6, 8

*Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*,
  314 F.R.D. 304 (S.D. Ind. 2016) ............................................................................................. 10

*Nyberg v. Zurich Am. Ins. Co.*,
  2016 WL 11671468 (D. Kan. June 21, 2016) ........................................................................... 9

*Rowe Ent., Inc. v. William Morris Agency, Inc.*,
  205 F.R.D. 421 (S.D.N.Y. 2002) ............................................................................................. 11

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
  305 F.R.D. 225 (S.D. Cal. 2015) ............................................................................................. 10

**Rules and Regulations**

Fed. R. Civ. P. 26(b)(1) .................................................................................................... 6, 9

Fed. R. Civ. P. 26(b)(2)(C) ................................................................................................. 10

Fed. R. Civ. P. 37(e) ...................................................................................................... 6, 10

**Additional Authorities**

*The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 5.e., 108 (2018) .............. 10

Shira A. Scheindlin & Daniel J. Capa, *Electronic Discovery and Digital Evidence* (2009) ........... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

Google has worked tirelessly to comply with this Court's May 20, 2022 and August 5, 2022 Preservation Orders ("Preservation Orders") and has successfully identified and preserved an enormous quantity of data. Indeed, to date, it has spent considerable resources designing and implementing pipelines for daily sampled preservation of more than 40 data sources including logs from ▓▓▓ Ads, ▓▓▓ Analytics, ▓▓▓, UMA, and Chrome Sync; GAIA ▓, DBL ▓; and mapping and linking tables. Taken together, Google anticipates that the implementation of all parts of the Court's Preservation Orders that it is not seeking relief from below will require it to store approximately ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ of data in the first year alone. Greenfield Decl. ¶ 8; Pothana Decl. ¶ 4; *see infra* at n.7.

Against this immense burden, Google seeks relief regarding preservation of only ▓ mapping or linking tables (▓▓▓▓▓▓ and ▓ Analytics tables) whose preservation would impose a disproportionate burden on Google with minimum benefit. In particular, ▓ ▓▓▓▓▓ tables store approximately ▓▓▓▓▓ of data ***per day***. Seah Decl. ¶ 5. Preserving these tables would require storage of over ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ over the course of a single year. *Id*. These tables contain links that are derived from other tables that are being separately preserved. *Id*. In light of these new facts, there is no valid reason for Google to have to undergo the burdens and expense of preserving these ▓ tables.

The ▓ Analytics tables from the preservation of which Google seeks relief presently contain over ▓▓▓▓▓▓ of data; preserving them requires approximately ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ over the course of a single year. Pothana Decl. ¶¶ 5, 7. These tables are not needed to work with the preserved data because the ▓▓▓▓ Analytics logs subject to preservation already contain the mappings between UID/CID to Biscotti. *Id.* ¶¶ 5-6. The cost of storing data from these six tables separately would total approximately ▓▓▓▓▓ in one year, ▓▓▓▓▓ in two years, and ▓▓▓▓▓ if preservation continues for three years. Greenfield Decl. ¶¶ 12, 14. Not only is this data irrelevant to Plaintiffs' claims and alleged damages, but the burdens of preserving it are disproportionate to any purported benefit.

In addition, heeding this Court's admonition to bring issues to the Court and not to engage in "self-help," Google transparently identifies in this motion the criteria it is applying to comply with the Court's Orders to preserve "all mapping and linking tables." These criteria are fully consistent with the Court's statements at the August 4, 2022 hearing as well as its Preservation Orders. As detailed below, any other interpretation would be unreasonable and subject Google to a variety of unwarranted and disproportionate preservation burdens.[1]

## II.   PROCEDURAL AND FACTUAL BACKGROUND

On April 4, 2022, the Special Master submitted a recommended preservation plan, which did not include a requirement for Google to preserve mapping or linking tables. *See* Dkt. 524. The Court adopted this requirement on May 20, 2022 in response to Plaintiffs' objections to the Special Master's preservation plan. *See* Dkt. 587 at 8.

On July 27, 2022, Google confirmed that it was preserving the ▇▇▇▇▇ mapping table, the only mapping table Plaintiffs had ever identified as potentially relevant. Dkt. 641-3 at 1. However, at a joint hearing on August 4, 2022 on this matter and the related *Calhoun* case, the Court stated that the Order was not limited to the ▇▇▇▇▇ mapping table, but instead requires preservation of "all mapping tables." Google explained that the lack of a clear definition of "mapping table" potentially impeded Google's compliance with the Court's Orders. *See* Gao Decl. Ex. 1 (8/4/22 Hr'g Tr.) at 101:1-102:16. The Court responded that "the language that the Court found determinative was that for the – the mapping tables are preserved in the ordinary course, and I took that as not a – not a big ask and – a mapping table is – is what it is. I mean it is mapping the IDs … It is the mapping tables that … relate to the logs and fields that – that the parties have worked with so intimately over these last 18 months. I don't think it can be any more clear." *Id.* at 104:5-15. The Court also explained that "if you would need a mapping table to work with any of the data that is being exchanged in this case, that table has to be preserved." *Id.* at 106:16-18. The *Calhoun* Plaintiffs expressed a concern regarding the Court's description of the requirement as relating to

---

[1] Google has contemporaneously filed a Motion for Relief Regarding Preservation in *Calhoun*, which includes a similar request for relief from preservation of the ▇ mapping/linking tables discussed herein.

"the data in this case," and the Court responded: "I think my order again is perfectly clear … If it doesn't relate to the data in this case, it is never going to come up. If it relates to the data in this case, it does." *Id.* at 107:3-8. The *Calhoun* Plaintiffs again expressed concern, and the Court responded "That's fine. That's fine. It's all mapping tables." *Id.* at 107:13-14. The Court's August 5, 2022 Order stated that "Preservation Orders require Google to preserve **all** mapping and linking tables." Dkt. 657 at 7 (emphasis in original).

Consistent with the Court's Preservation Orders and statements at the August 4 hearing, Google conducted an extensive investigation to identify and preserve "all mapping and linking tables." Google investigated tables maintained by the teams that work with the Ads and Analytics data stored in the ▇ Ads, Analytics, ▇, UMA, and ▇ logs, and GAIA and DBL ▇ subject to the Preservation Orders. Seah Decl. ¶¶ 2-4; Pothana Decl. ¶¶ 2-3. Based on these investigations, Google has identified and will preserve ▇ tables that contain a mapping or linking of user or device identifiers that are subject to preservation in one of the sources identified in the Preservation Orders. Seah Decl. ¶ 4; Pothana Decl. ¶ 3. In the ordinary course, these tables are stored anywhere from ▇. Seah Decl. ¶ 4. This is in addition to the more than ▇ data sources Google is already preserving.

In addition, Google examined the documents and testimony on which the Plaintiffs here and in the related *Calhoun* matter relied to justify their request for preservation of this information. For instance, at the August 4 hearing, when Google raised concerns about the meaning of the language "all mapping and linking tables," the *Calhoun* Plaintiffs referred to mappings between identifiers that they contend exist at Google, based on documents Google produced. *See* Gao Decl. Ex. 1 (8/4/22 Hr'g Tr.) at 103:14-25. Google is preserving all of those tables to the extent they exist.[2] Additionally, Google analyzed the evidentiary record in this case to identify instances in which mapping or linking tables were addressed in depositions or produced documents. As an example,

---

[2] During the August 4 hearing, the *Calhoun* Plaintiffs referred to a "Biscotti to GAIA" mapping (*id.* at 103:18), but no such mapping exists. The documents from which the *Calhoun* Plaintiffs quoted describe only a proposed system that Google never implemented. Seah Decl. ¶ 7. Google cannot preserve a table that does not exist.

1  Google has identified and is preserving tables that link Customer Relationship Management
2  ("CRM") IDs to Biscotti IDs, as discussed in the deposition of Google's Rule 30(b)(6) representative
3  Glenn Berntson. Gao Decl. Ex. 2 (3/18/22 Dep. Tr.) 133:18–135:10.
4      Among the tables Google has identified for preservation, two categories are particularly
5  burdensome to preserve. The first category consists of ▊ "linking tables" that relate to the project
6  known internally at Google as ▊▊▊▊[3] and contain links that are derived from other tables
7  that are being separately preserved. Seah Decl. ¶ 5. The second category includes ▊ tables that
8  contain mappings of identifiers relating to the Google Analytics product. Pothana Decl. ¶ 5. These
9  tables are not needed to work with the preserved data because the Analytics logs subject to
10 preservation already contain the mappings between UID/CID to Biscotti, *id.* ¶ 6, and Plaintiffs
11 would not need the additional mappings between UID/CID to device ID to read the Analytics data.
12     As illustrated below, preserving these ▊ tables will require enormous amounts of data
13 storage at a staggering cost, which is in addition to the other preservation costs Google is already
14 incurring:

---

[3] ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Gao Decl. Ex. 3 (GOOG-CABR-03652751) at -752.

**Table 1**

| Categories of preserved data | Estimated data after one year ▮ | Estimated data after two years ▮ | Estimated data after three years ▮ |
|---|---|---|---|
| ▮▮▮ and Analytics Tables | ▮ | ▮ | ▮ |
| All other preserved Data | ▮ | ▮ | ▮ |

Seah Decl. ¶ 5; Pothana Decl. ¶¶ 4, 5, 7; Greenfield Decl. ¶ 8.

---

[4] ▮▮▮. *See* Seah Decl. ¶ 5 (estimating preservation of the ▮▮▮ tables would require storage of over ▮▮▮ per year); Pothana Decl. ¶ 7 (estimating snapshots of the ▮ Analytics tables would require storage of more than ▮▮▮ per year).

[5] ▮▮▮.

[6] ▮▮▮.

[7] The ▮▮▮ equals the sum of: (1) ▮▮▮ of data stored currently in ▮▮▮ Ads sampling pipelines; (2) ▮▮▮ of estimated additional data written daily into ▮▮▮ Ads sampling pipelines * 365 days; (3) ▮▮▮ of data stored currently in ▮▮▮ Analytics sampling pipelines; (4) ▮▮▮ of estimated additional data written daily into ▮▮▮ Analytics sampling pipelines * 365 days; (5) ▮▮▮ of data stored currently in ▮▮▮ sampling pipelines; (6) ▮▮▮ of estimated additional data written daily into ▮▮▮ sampling pipelines * 365 days; (7) ▮▮▮ of data stored currently in UMA sampling pipelines; (8) ▮▮▮ of estimated additional data written daily into UMA sampling pipelines * 365 days; (9) ▮▮▮ of data stored currently in ▮▮▮ ChromeSync sampling pipelines; (10) ▮▮▮ of estimated additional data written daily into ▮▮▮ ChromeSync sampling pipelines * 365 days; (11) ▮▮▮ of estimated additional data written daily into DBL and GAIA ▮ sampling preservation pipelines * 365 days; (12) ▮▮▮ of data stored currently in the mapping/linking tables in ▮▮▮ that are subject to preservation; (13) ▮▮▮ of estimated additional data written daily into the mapping/linking tables in ▮▮▮ * 365 days; (14) ▮▮▮ of data stored currently in the mapping/linking tables in ▮ that are subject to preservation; (15) ▮▮▮ of data written daily into the mapping/linking tables in ▮ * 365 days; (16) ▮▮▮ of estimated data required to store the mapping/linking tables maintained by the Analytics team that are subject to preservation.

[8] The ▮▮▮ is derived on the basis of the numbers in footnote 7 with the following equation: ▮ + ▮*365*2 + ▮ + ▮*365*2 + ▮ + ▮*365*2 + ▮ + ▮*365*2 + ▮ + ▮*365*2 + ▮*365*2 + ▮ + ▮*365*2 + ▮ + ▮*365*2 + ▮*2.

[9] The ▮▮▮ is derived on the basis of the numbers in footnote 7 with the following equation: ▮ + ▮*365*3 + ▮ + ▮*365*3 + ▮ + ▮*365*3 + ▮ + ▮*365*3 + ▮ + ▮*365*3 + ▮*365*3 + ▮ + ▮*365*3 + ▮ + ▮*365*3 + ▮*3.

**Table 2**

| Categories of preserved data | Approximate total cost after one year | Approximate total cost after two years | Approximate total cost after three years |
|---|---|---|---|
| ▓▓▓▓▓▓▓ and Analytics Tables | ▓▓▓▓▓ | ▓▓▓▓▓ | ▓▓▓▓▓ |
| All other preserved data | ▓▓▓▓▓ | ▓▓▓▓▓ | ▓▓▓▓▓ |

Greenfield Decl. ¶¶ 9, 12, 14.

## III. ARGUMENT

### A. Limited Relief From The Court's Order Regarding Preservation Of "All Mapping And Linking Tables" Is Warranted

In evaluating preservation disputes, this Court has rightly applied the proportionality principle embodied in Federal Rule of Civil Procedure 26 to determine whether the preservation sought is relevant and proportional to the litigation.[10] *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) ("This district recognizes that the proportionality principle applies to the duty to preserve potential sources of evidence."); Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015) ("perfection in preserving all relevant electronically stored information is often impossible"). In so doing, the Court has sought to "strike an appropriate and necessary balance between the need to preserve relevant data in an immense universe of data, without imposing undue burden and with careful consideration for the practical challenges to both Parties to manage vast data sets." Dkt. 587 at 6. The Court's requirement to "limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit" is "the essence of proportionality." *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013). As demonstrated below,

---

[10] Federal Rule of Civil Procedure 26 cites to six non-dispositive factors: "[i] the importance of the issues at stake in the action, [ii] the amount in controversy, [iii] the parties' relative access to relevant information, [iv] the parties' resources, [v] the importance of the discovery in resolving the issues, and [vi] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Google does not address the first and second factors at length; the parties clearly vigorously dispute the importance of the issues at stake and the amount in controversy. With respect to the third factor, although Plaintiffs only have access to some of the mappings/linkings for their own activity and devices, preservation of these tables is unwarranted in light of the disproportionate burdens and limited utility.

this proportionality principle compels granting Google's requests for relief.

        **1.    The Burden And Expense Of Preserving The ▇▇▇ Tables And The ▇ Analytics Tables Outweighs Any Illusory Benefit They May Have**

**▇▇▇ Tables:** There is no valid reason for Google to have to undergo the burdens and expense of preserving the ▇▇▇ tables because the links contained in those tables are derived from *other* tables that Google is separately preserving. Seah Decl. ¶ 5. For example, if one of the underlying (and separately preserved) tables includes a link from identifier A to B, and another of the underlying (and separately preserved) tables includes a link from identifier A to C, then the ▇▇▇ tables could include a link from identifier B to C. *Id*. Preserving the ▇▇▇ tables would consume ▇▇▇ of storage on a daily basis at a cost of ▇▇▇ if preservation continues for three years. Seah Decl. ¶ 5; Greenfield Decl. ¶¶ 11-12. In making proportionality determinations, courts have routinely ruled that duplicative discovery obligations are unduly burdensome and relieved litigants from these requirements. *See, e.g., Glob. Tech., Inc. v. Ningbo Swell Indus., Co*., 2021 WL 5443272, at *4 (E.D. Mich. Apr. 27, 2021), *reconsideration denied*, 2021 WL 2283745 (E.D. Mich. June 4, 2021) ("Plaintiff's discovery requests, while relevant, are disproportional to the needs of the case because the majority of these requests seek duplicative information that Plaintiff already has in its possession."). The same result is compelled here.

**▇ Analytics Tables:** The burdens of preserving ▇ tables containing mappings of identifiers relating to the Google Analytics product are also unwarranted and disproportionate. As shown above, these Analytics tables presently contain over ▇▇▇ of data, requiring storage of more than ▇▇▇ over the course of a single year. Pothana Decl. ¶¶ 5, 7. In addition to Google's other preservation costs in this case, the expense of storing this additional data would total approximately ▇▇▇ over three years. Greenfield Decl. ¶ 14. The preservation of these ▇ tables alone would also impose a large human capital burden: given the complexity, it would require ▇▇▇ of engineering hours. Pothana Decl. ¶ 7.

Preservation of the ▇ Analytics tables brings immense burdens, but none of the benefits. That is because these tables are not needed to work with the preserved data. *See* Gao Decl. Ex. 1

(8/4/22 Hr'g Tr.) at 106:16-18 ("[I]f you would need a mapping table to work with any of the data that is being exchanged in this case, that table has to be preserved."). For any given sampled entry in Analytics logs that are being preserved, any mapping of UID/CID and Biscotti will be self-contained within the sampled data already. Pothana Decl. ¶ 6. The ▬ Analytics tables contain mappings between Google Analytics User ID (UID) or client ID (CID) and device ID or Biscotti. Pothana Decl. ¶ 5. The mappings between UID/CID and Biscotti contained in those tables come from the data stored in Google Analytics logs sources, including the ▬ Analytics logs subject to sampled preservation. *Id.* ¶ 6. Because the mappings between UID/CID and Biscotti contained in the ▬ tables are sourced from these logs, the logs themselves contain the same mapping information. *Id.* Although these tables also contain the mappings between UID/CID and device ID, device IDs are only present for App events and are not received through the data flow at issue here when users visit Google Analytics customer website. *Id.* ¶ 5. Plaintiffs thus would not need additional mappings between UID/CID to device ID to read the preserved Analytics data or rely on the data to support class certification. *See, e.g.*, Gao Decl. Ex. 4 (May 3, 2022 Hr'g Tr.) at 13:6-8 (Plaintiffs: "I don't think Plaintiffs affirmatively, for our class certification motion, intend to rely on sampled data, or frankly, other data."). As a result, there would be no benefit to preserving this information.

Further, the tables apply to identifiers for users worldwide, including users whose data is not sampled for preservation and users who are not in the class. As a result, the vast majority of the mappings/linkings will not be of any use. Even if there were some limited benefit, it would undoubtedly be outweighed by the massive burden of doing so. *See, e.g., Lord Abbett*, 2014 WL 5477639, at *3 (holding that paying $500 per month to store computers outweighed the likely benefit of maintaining the computers); *Finjan, Inc. v. ESET, LLC*, 2018 WL 5263243, at *1 (S.D. Cal. Oct. 23, 2018) ("[T]he 2015 Amendments to Rule 26 made clear that '[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case.'" (quoting *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016)).

### 2. The Parties' Respective Resources Do Not Justify The Onerous Burdens Preserving The ▮ Tables Requires

Plaintiffs have repeatedly assumed that because Google is a large company, no task or burden is too much for it. That assumption squarely contravenes Rule 26. *See Lickerish, Inc. v. PicClick, Inc.*, 2022 WL 2812174, at *4 (N.D. Cal. July 18, 2022) (rejecting conclusory argument that discovery sought would not be a "heavy burden" because defendant is a "multibillion dollar Internet-based business [that] can determine when there are communications with its own servers."); *Nyberg v. Zurich Am. Ins. Co.*, 2016 WL 11671468, at *4 (D. Kan. June 21, 2016) ("[C]onsideration of the parties' resources 'does not . . . justify unlimited discovery requests addressed to a wealthy party.'" (citing Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment)); *Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 3288058, at *14 (D. Kan. June 18, 2020), *aff'd*, 2020 WL 6939752 (D. Kan. Nov. 24, 2020) ("The court will not require Spirit to shoulder needless litigation expenses simply because it is a big company."). In light of the burdensome preservation obligations Google is already undertaking, Google should not be required to absorb the additional disproportionate and burdensome storage, processing, and bandwidth resources to accommodate the vast amounts of data preserving these ▮ tables requires.

At the August 4 hearing, when discussing mapping tables, the Court found "determinative" that mapping tables are stored "in the ordinary course." Gao Decl. Ex. 1 (8/4/22 Hr'g. Tr.) at 104:5-8. However, most mapping tables at Google are very short lived. Seah Decl. ¶¶ 4, 5; Pothana Decl. ¶¶ 4, 7. Accordingly, Google does not believe it is accurate to say that preserving all mapping tables is "not a big ask." Gao Decl. Ex. 1 (8/4/22 Hr'g. Tr.) at 104:5-9. To the contrary, since these tables are not automatically retained for an extended period of time as part of Google's routine business operations, preserving them now is extremely burdensome, requiring that Google store an enormous amount of data per year that Google would not otherwise store. Preserving ▮ mapping and linking tables (excluding the ▮▮▮▮▮ and Analytics tables) increases the number of sources from which Google must preserve data by more than ▮▮▮▮.

Taken together, the burdens of preserving these tables clearly outweigh the yet-to-be-identified benefit of the preserved data, particularly after taking into account the vast quantities of

other data Google is preserving, and will continue to preserve, through this litigation.  As the proportionality principle of Rule 26 recognizes, the court "must limit the frequency or extent of discovery … if it determines that the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(C)(iii);  *Noble Roman's, Inc. v. Hattenhauer Distrib. Co*., 314 F.R.D. 304, 306 (S.D. Ind. 2016) ("[L]itigants' legitimate interests in the control of expansive discovery and corralling the spiraling costs of litigation … led to a series of changes to the federal discovery rules over the last thirty plus years that emphasize the power—and duty—of the district courts actively to manage discovery and to limit discovery that exceeds its proportional and proper bounds."). "Preservation efforts need not be heroic or unduly burdensome." *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 5.e., 108 (2018); cf. Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015) ("perfection in preserving all relevant electronically stored information is often impossible").  "Evaluating the need to produce ESI requires that a balance be struck between the burdens and need for ESI, taking into account the technological feasibility and realistic costs involved." *The Sedona Principles* at Cmt. 2.d.

In short, in light of the disproportionate burdens and limited utility of preserving the ▮ ▮▮▮▮▮▮▮▮ and Analytics tables, Rule 26 does not justify their preservation.

### 3. At A Minimum The Court Should Require Plaintiffs To Pay All Costs Associated With Preservation Of The ▮ Tables

To the extent that the Court requires the preservation, Plaintiffs should be required to assume the preservation costs given the unjustified nature of the burden and the lack of plausible basis for the data's ongoing preservation.  Case law supports this conclusion.  *See U.S. ex rel. Carter v. Bridgepoint Educ., Inc*., 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("[T]he cost of even accessible ESI's production may be shifted to a party that has not shown its peculiar relevance to the claims and defenses at hand" if the proportionality factors make it appropriate) (citations omitted) (citing, *inter alia*, Shira A. Scheindlin & Daniel J. Capa, Electronic Discovery and Digital Evidence 314 (2009) ("Cost-shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C)."); see also *Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331, 341 (E.D. Pa. 2012) ("Where the burden of discovery expense is almost entirely on the defendant, principally

because the plaintiffs seek class certification, then the plaintiffs should share the costs."); *id.* ("If Plaintiffs' counsel has confidence in the merits of its case, they should not object to making an investment in the cost of securing documents from Defendant and sharing costs with Defendant."); *Rowe Ent., Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 431 (S.D.N.Y. 2002) (requiring cost-shifting where the costs of the proposed discovery for defendants, even by plaintiffs' estimates, ranged from $10,000 to $87,000).

### B. Google's Preservation Of Mapping And Linking Tables Is Consistent With The Court's Guidance And Orders

As set forth above, Google has conducted an extensive investigation to identify mapping and linking tables in response to the Court's May 20 and August 5, 2022 Preservation Orders to preserve "all mapping and linking tables." Dkt. 587 at 8; Dkt. 657 at 7; *see supra* at 3 (citing Seah Decl. ¶¶ 2-4; Pothana Decl. ¶¶ 2-3). In addition, Google has analyzed the evidentiary record and Plaintiffs' arguments in support of their request that Google preserve this information. Based on these investigations, Google has identified and will preserve ■ tables that contain a mapping or linking of user or device identifiers that are subject to preservation in one of the sources identified in the Preservation Orders. Seah Decl. ¶ 4; Pothana Decl. ¶ 3; Quaid Decl. ¶ 3; Halstead Decl. ¶6.

In preserving "mapping and linking tables," Google has relied on the Court's statements at the August 4 hearing providing a framework to comply with its preservation obligations the Court imposed. In defining a mapping table in response to a query from Google's counsel, the Court stated: "[A] mapping table is – is what it is. I mean it is mapping the IDs." Gao Decl. Ex. 1 (8/4/22 Hr'g Tr.) at 104:8-9. In addition, the Court stated that the mapping and linking tables that should be preserved are those that pertain to the data at issue in this case. *See id.* at 104:11-15 ("the mapping tables that … relate to the logs and fields that – that the parties have worked so intimately over these last 18 months. I don't think it can be any more clear."); *id.* at 107:3-8 ("I think my order again is perfectly clear … If it doesn't relate to the data in this case, it is never going to come up. If it relates to the data in this case, it does."); *id.* at 106:16-18 ("if you would need a mapping table to work with any of the data that is being exchanged in this case, that table has to be preserved."). Accordingly, in light of these statements requiring a nexus between the mapping and linking tables and the data

at issue, Google does not understand the phrase "all mapping and linking tables" to refer to *any* table that provides a map or link between any type of value, including *non-identifier* values, and any other value stored in Google's systems.

Requiring preservation of all tables that provide a mapping or linking of identifiers (or other non-identifier values) that fall outside the scope of the Court's preservation orders would be neither proportional nor reasonable. Indeed, such a broad and amorphous interpretation would require Google to conduct potentially limitless investigation of mapping and linking tables that would inevitably sweep in numerous tables (to the extent they exist) that have no nexus whatsoever to the data at issue in this case. Google is a large company, with over 160,000 employees working on thousands of teams to support hundreds of different products and services, such as Google Meet, Drive, Calendar, Nest, and Gmail, to name just a few. The vast majority of those products and services have no conceivable relevance to Plaintiffs' claims in this case. Thus, even if, hypothetically, the teams supporting one of these products used a "mapping table" or a "linking table," preserving such a table would serve no purpose. And investigating whether every one of those teams maintains a "mapping table" or a "linking table" would require an astronomical amount of time and human capital, particularly since Google does not have a company-wide definition of the term "mapping table" or "linking table" that it could use to perform such an investigation. Seah Decl. ¶ 3. It is impossible to overestimate the burden and disruption such a wide-ranging investigation would cause, and it would clearly contravene the proportionality principles the Court must apply.

As the case law recognizes, proportionality requires a balancing of the benefit against the burden. *See, e.g., Hegarty v. Transamerica Life Ins. Co.*, 2021 WL 4899482, at *2 (N.D. Cal. Oct. 21, 2021) ("[C]ourts are required to limit discovery if its burden or expense outweighs its likely benefit."). The benefit of preserving mapping tables or linking tables relating to any of the hundreds of products that are clearly outside of the scope of this case is negligible, while the burden of such an investigation to Google would be extreme. *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154, at *3 (N.D. Cal. May 18, 2011) (finding requests for production unduly burdensome in part because "it would require [defendant] to undertake a wide-ranging investigation to determine whether any

such documents exist").

## IV. CONCLUSION

For the reasons stated, Google's motion should be granted.

DATED: October 26, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

|    |    |
|----|----|
| 1  |    |
| 2  | Josef Ansorge (admitted *pro hac vice*) |
| 3  | josefansorge@quinnemanuel.com<br>Xi ("Tracy") Gao (CA Bar No. 326266) |
| 4  | tracygao@quinnemanuel.com<br>Carl Spilly (admitted *pro hac vice*) |
| 5  | carlspilly@quinnemanuel.com<br>1300 I. Street, N.W., Suite 900 |
| 6  | Washington, D.C. 20005 |
| 7  | Telephone: 202-538-8000<br>Facsimile: 202-538-8100 |
| 8  |    |
| 9  | Jomaire A. Crawford (admitted *pro hac vice*)<br>jomairecrawford@quinnemanuel.com |
| 10 | 51 Madison Avenue, 22nd Floor<br>New York, NY 10010 |
| 11 | Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100 |
| 12 |    |
| 13 | Jonathan Tse (CA Bar No. 305468)<br>jonathantse@quinnemanuel.com |
| 14 | 50 California Street, 22nd Floor<br>San Francisco, CA 94111 |
| 15 | Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700 |
| 16 |    |
| 17 | *Attorneys for Defendant, GOOGLE LLC* |