**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br>Defendant. | CASE NO.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO GOOGLE'S MOTION FOR RELIEF REGARDING PRESERVATION** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................................1

II.  BACKGROUND .............................................................................................................2

III. ARGUMENT ...................................................................................................................3

    A.    **Preservation of All Mapping and Linking Tables is Appropriate** ............5

        1.    **Google Should Submit the Tables to Special Master Brush and Plaintiffs for Review**...................................................................5

        2.    **Google Has Not Satisfied Its Burden Under Rule 26** ......................6

    B.    **Plaintiffs Should Not Bear the Costs of Preservation** .............................11

    C.    **Google Should Not Benefit From Any Decision Limiting Its Preservation Obligations**.................................................................................12

IV. CONCLUSION ..............................................................................................................13

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132 (N.D. Cal. 2012) ........................ 3

*Boeynaems v. LA Fitness Int'l., LLC*, 285 F.R.D. 331 (E.D. Pa. 2012). .................................... 11

*Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007)................ 10

*Lickerish, Inc. v. PicClick, Inc.*, 2022 WL 2812174 (N.D. Cal. July 18, 2022). ......................... 9

*Lord Abbett Municipal Income Fund, Inc. v. Asami*,
    2014 WL 5477639 (N.D. Cal. Oct. 29, 2014) ................................................................. 3

*Nyberg v. Zurich Am. Ins. Co.*, 2016 WL 11671468 (D. Kan. June 21, 2016). .......................... 9

*Pippins v. KPMG LLP*, 279 F.R.D. 245 (S.D.N.Y. 2012) ......................................................... 12

*Rowe Ent., Inc. v. William Morris Agency, Inc.* 205 F.R.D. 421 (S.D.N.Y. 2022). ................... 12

*Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 3124014 (N.D. Cal. July 24, 2017) .......... 9

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)............... 12

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225 (S.D. Cal. 2015). ..................... 12

**Other Authorities**

*The Sedona Principles, Third Edition*, 19 SEDONA CONF.J.1, Cmt. 5.e., 108 (2018) ............ 9

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................. 7, 9, 12

Fed. R. Civ. P. 26(b)(2)(C)(iii) ..................................................................................................... 3

## I.  INTRODUCTION

Google's Motion for Relief Regarding Preservation (Dkt. 782, "Motion" or "Mot.") raises more questions than it answers. Google does not dispute that the ▓ data sources it seeks to stop preserving via the present Motion are relevant, but claims preserving those ▓ data sources is unduly burdensome. Google provides some (yet still scarce) details of what might be preserved from other data sources, but no details for the ▓ data sources.

For the first time, Google has submitted numerous declarations detailing the size of particular data sources that contain relevant identifiers (Biscotti, UID, CID, and others), but Google continues to avoid details about what exactly is stored in those data sources that contain those relevant identifiers. Of particular notability (and great concern) is the size of the ▓ data sources Google is seeking relief from preserving: ▓▓▓ upon ▓▓▓ of data that Google has identified as relevant, but never produced in discovery (including the Special Master process). But without any details of what is in these ▓ data sources (and keyed to relevant identifiers), Google asks the Court to relieve its preservation obligations and puts Plaintiffs in an impossible position where only Google knows what is available. At a minimum, Google should be required to submit these data sources to the Special Master and Plaintiffs for review, bear all costs for the Special Master to evaluate the information contained in the ▓ data sources, and Special Master Brush should provide guidance on the proportionality of their preservation.

Plaintiffs devoted immense effort to preservation discussions, but Google provided no insight or discovery into its process, and instead relied on its lawyers' say-so. Now, more than half a year after the Court adopted in part Special Master Brush's proposal and ordered Google to preserve all mapping and linking tables, Google seeks to relitigate preservation and urge the Court to reconsider what the Court had already settled: Google's obligation to preserve all mapping and tables relevant to this litigation. Google has not carried its burden of demonstrating that preservation of all mapping and linking tables is not proportional to the needs of this litigation, and the Court should respectfully deny Google's requested relief.

1

PLAINTIFFS' RESPONSE IN OPP. TO GOOGLE'S MOTION FOR RELIEF REGARDING PRESERVATION
4:20-CV-03664-YGR-SVK

## II. BACKGROUND

On April 4, 2022, Special Master Brush submitted a recommended preservation plan for this Court's consideration. Dkt. 524 (the "Proposed Preservation Plan"). On April 15, 2022 the Parties submitted their responses to the Proposed Preservation Plan. Dkts. 543, 545.

Plaintiffs objected to the sample-based approach in the Proposed Preservation Plan, but argued that if a sample-based approach was adopted, Google should preserve mapping and linking tables. Dkt. 545 at 6. These mapping and linking tables are important because Google uses mapping and linking tables "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Dkt. 545 at 6 (citing deposition of Google engineer Glenn Berntson at 120:7–123:4).

The Court held a hearing on May 3, 2022, and on May 20, 2022, the Court adopted in part and modified in part the Proposed Preservation Plan. Dkt. 587 (the "Preservation Order"). Particular to Google's Motion presently before this Court, the Court overruled Plaintiffs' objection to "limiting the preservation obligations to only a random sample of users" (Dkt. 587 at 6) but sustained Plaintiffs' objection that "Google should be required to preserve all mapping and linking tables." Dkt. 587 at 8. The Court specifically held that "all mapping and linking tables are to be preserved in their entirety." Dkt. 587 at 8.

On May 27, 2022 (seven days after the Preservation Order was filed) Google then filed an administrative motion seeking clarification of "two discrete portions" of the Court's Preservation Order. *See* Dkt. 591. Those "two discrete portions" were the Court's prohibition of Google shortening any retention policies without express permission, as well as preservation of "de/encryption keys." Dkt. 591 at 1. Crucially, Google's administrative motion did not address or even mention mapping or linking tables. Plaintiffs did not respond to that administrative motion, and on June 9, 2022 the Court ordered Google to "identif[y] and describe[] the keys that Google is seeking to carve out of the Preservation Order on the ground that the keys are not

required," noting that the Preservation Order required "relevant, *necessary* rotating encryption keys be preserved." Dkt. 604 at 3 (emphasis in original). On June 21, 2022 (32 days after the Preservation Order was filed) Google responded to the Court's June 9, 2022 order, and again did not address or even mention mapping or linking tables. *See* Dkt. 613.

At the August 4, 2022 hearing—after Google's representations raised concerns that Google was not preserving all mapping and linking tables, and instead only those that Plaintiffs identified (and 76 days after the Preservation Order was entered)—the Court clarified that the Preservation Order included all mapping and linking tables, not just those identified by Plaintiffs (Dkt. 652) and the next day entered an order requiring Google to "preserve all mapping and linking tables." Dkt. 657 at 7.

Since then, Google has not provided any further information or discovery into its compliance with the Preservation Order. On October 4, 2022, Google contacted Plaintiffs concerning Google's requirement to preserve pre-class data from certain logs that were being stored in perpetuity. Dkt. 780. Plaintiffs and Google met at least twice thereafter. Dkt. 780. The parties were unable to reach agreement because Google would not provide Plaintiffs with access to the data or any details necessary to evaluate the request. Dkt. 780. On October 27, 2022 (160 days after the Preservation Order was filed, and 83 days after the Court's August 5, 2022 order requiring preservation of all linking and mapping tables), Google filed the instant Motion. Google never met and conferred with Plaintiffs about any of the relief sought in the instant Motion.

**III.  ARGUMENT**

"It is well settled that as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Lord Abbett Municipal Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *2 (N.D. Cal. Oct. 29, 2014) (citing *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012)) (cleaned up). This duty extends to electronically stored information. *Id.*; Fed. R. Civ. P. 26(b)(2)(C)(iii).

1    Google does not dispute that relevant information is contained in the mapping and linking
2  tables. *See* Mot. at 4 (admitting that the ▓▓▓▓ tables "contain links derived from
3  other tables that are being separately preserved" and the ▓ Analytics tables "contain mappings
4  of identifiers relating to the Google Analytics product"). Instead, Google raises a question
5  whether the *cost* of preserving the plainly relevant information contained in the mapping and
6  linking tables is justified under the proportionality test. *See id.* ("preserving these ▓ tables will
7  require enormous amounts of data storage at a staggering cost").

8    Although Google suggests the mapping and linking values contained in these ▓ tables
9  are derived from other tables (and therefore duplicative), Google is silent as to what other
10 information is contained in these ▓ tables. Google's own engineer Chris Liao—who has been
11 forbidden from providing any testimony for Google in this case following the Court's sanctions
12 order (*see* Dkt. 588)—testified that although Google's ▓▓▓▓ project was in "▓▓▓▓
13 ▓▓" (*i.e.*, allegedly ▓▓▓▓▓▓▓▓▓▓▓▓) it still "▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓" "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" and
15 accesses mapping/linking tables to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓. McGee Decl., Ex. 1 (Liao Tr. 25:17–36:21). What other
17 identifiers are stored in the ▓▓▓▓ tables? What other data are stored in the ▓
18 ▓▓▓▓ tables and keyed to those identifiers? What information is stored in the ▓
19 ▓▓▓▓ tables that accounts for the ▓▓▓ of data Google seeks relief from preserving?
20 From what other sources do the ▓▓▓▓ tables draw data? What are the names of the
21 ▓▓▓▓ tables? The same mysteries (save names) surround the ▓ Analytics tables.

22    Indeed, these ▓ tables contain data that is magnitudes larger than the other tables and
23 data sources that are being preserved. But during discovery and particularly during the Special
24 Master process, Google did not provide any details about these (or other) mapping and linking
25 tables, instead opting to search them (upon request) and provide the corresponding identifier(s)
26 that Plaintiffs requested. These tables (and others) are still shrouded in secret, and without any

1  details or insight into what is contained in these tables, Google has failed to carry its burden of
2  demonstrating that the preservation is not proportional to the needs of this litigation.

### A. Preservation of All Mapping and Linking Tables is Appropriate

#### 1. Google Should Submit the Tables to Special Master Brush and Plaintiffs for Review

Google provides scant details about the ▮▮▮ and ▮ Analytics mapping and linking tables. Two things are certain: 1) those tables contain substantially more data than the other tables being preserved; and 2) those tables (and the other ▮▮ of tables referenced in Google's motion as being preserved) have never been produced at any point during this case. McGee Decl. ¶ 4. Plaintiffs also are not aware of those tables ever being provided to Special Master Brush. McGee Decl. ¶ 5. It is also unclear whether Google has been preserving these ▮ data sources, as the supporting declarations suggest preservation is possible, but has not begun. *See, e.g.*, Declaration of Daryl Seah, Dkt. 782-6 ¶ 5 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (emphasis added); *see also* Declaration of Srilakshmi Pothana, Dkt. 782-7 ¶ 7 ("*In order to preserve* the identifier mappings in these tables, *we would need to perform* a snapshot every 25 days, *which would require* storage of more than ▮▮▮▮▮▮ per year." (emphasis added)).

In any event, for the ▮ Analytics tables that Google is seeking to exclude from the Preservation Order, Google identified ▮ data sources that feed those ▮ Analytics tables: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. 782-7. Google represents that it is currently preserving these data sources. The field names for these two data sources were produced in discovery, and they include: "▮▮▮▮▮▮" (▮▮▮ ; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ," ▮▮▮▮ "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (▮▮▮▮ ; "▮▮▮▮▮▮▮▮▮▮▮" (▮▮▮▮ ; "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (▮▮▮ , "▮▮▮▮▮▮

5
PLAINTIFFS' RESPONSE IN OPP. TO GOOGLE'S MOTION FOR RELIEF REGARDING PRESERVATION
4:20-CV-03664-YGR-SVK

1  ███████████████████████████████████" (███████, "███████████████████████
2  ████████████████████████████████████████" (████████, and other
3  relevant fields. McGee Decl., Exs. 2, 3. Because Google is preserving these data sources, Google
4  claims the mappings between UID/CID and Biscotti contained in the ██ Analytics mapping
5  tables are duplicative. Dkt. 782-7 ¶ 6. Examination of the fields in the two data sources already
6  being preserved, however, does not have any obvious UID, CID, or Biscotti values.[1] Google also
7  provides no details concerning what other data sources are used to propagate the ██ Analytics
8  tables, or what other data sources draw from the ██ Analytics tables. The silence is deafening.

Google was ordered to preserve all mapping and linking tables. Dkt. 657 at 7. Instead of relying on Google's say-so, any order modifying the preservation of mapping and linking tables should be subject to the guidance of Special Master Brush (at Google's expense), with the data sources submitted to the Special Master and Plaintiffs for their respective review and analyses. Google could have brought these ██ sources to the attention of Special Master Brush and Plaintiffs during the Special Master process. Google chose not to. Google then waited almost half a year after the Court entered the Preservation Order to suggest preservation of these ██ tables is unduly burdensome (and nevertheless may not have undertaken preservation). Google should not be rewarded for obfuscating these ██ data sources for such a prolonged period of time and failing to provide any details of these ██ data sources in the instant Motion and supporting declarations.

### 2. Google Has Not Satisfied its Burden under Rule 26

Rule 26 provides six non-exhaustive factors to determine the scope and limits of discovery and proportionality: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties'

---

[1] During the Special Master process, Google produced data from these two data sources ████████████████████████████ However, it is unclear whether Google populated that information from a mapping/linking table (*e.g.*, those at issue in the Motion) and, if so, how that was achieved.

resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26. Even if Google is not required to submit these sources to Special Master Brush and Plaintiffs for review, Google has nevertheless failed to meet its burden under Rule 26.

Google skims the first three factors, devoting a couple of sentences in a footnote. Mot. at 6, n.10. The reason is clear: these first three factors strongly support denial of Google's Motion. Plaintiffs have relentlessly pursued relevant discovery in this case, seeking to understand how Google collects, saves, and uses tens of millions of Americans' private browsing data. Google obstructed Plaintiffs' efforts, which resulted in monthly discovery hearings, dozens of depositions, the appointment of a Special Master who oversaw approximately six months of data production and analysis, which all culminated with severe sanctions for Google's discovery misconduct. *See* Dkt. 588. This demonstrates that the importance of the issues at stake are massive, where even Google admitted at the recent class certification hearing that tens of millions of Americans do not understand Google's disclosures about private browsing mode. This is precisely the type of case contemplated in the 2015 amendment advisory committee notes to Rule 26: "many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved." At least tens of millions of Americans' privacy is at stake with this litigation, and the information Google seeks to remove from preservation requirements contain undisputed relevant discovery about those privacy violations.

The amount in controversy is equally substantial: ▮▮▮▮▮ of dollars. Dkt. 609-1 at 16–20. The amount of damages is not one that Plaintiffs derived from thin air. As detailed in Plaintiffs' class certification motion, in 2020 (shortly before Plaintiffs filed this lawsuit) Google began considering blocking third-party cookies (a way that Google tracks people) by default in Incognito mode. *See* Dkt. 609 at 23. Google devoted extensive financial modeling to this project, which demonstrated that modifying that single form of tracking would reduce Google's

7

1 advertising revenues by approximately $███████████████████████████████ *Id.*
2 Using that internal model to determine the amount Google earned over the Class Period through
3 the end of 2021, Google was unjustly enriched by $█████████ from its misappropriation of
4 private browsing information, including $█████████ for Incognito mode. *Id.* Plaintiffs also
5 calculated actual damages through another internal Google study related to ████████████
6 which produced a ████████████████████████████ including $█████████ for Incognito
7 users. *Id.* These calculations are of course independent of any statutory or punitive damages. *Id.*
8 at 24. While Google suggests (in cursory fashion) that the amount is in dispute, every litigation
9 concerns a disputed amount in controversy, and Google points to no case law suggesting a dispute
10 over the amount in controversy inures against preservation obligations.

11 The third factor—the parties' relative access to relevant information—weighs heavily in
12 Plaintiffs' favor. Google admits that "Plaintiffs only have access to some of the
13 mappings/linkings for their own activity and devices." Mot. at 6, n.10. Put more directly, Google
14 has never provided Plaintiffs access to the mapping or linking tables. McGee Decl. ¶ 4. Instead,
15 Google only provided some values from some unidentified tables after Plaintiffs requested them
16 during the Special Master process. McGee Decl. ¶ 4. Specific to the ████████████ and ███
17 Analytics mapping and linking tables, Plaintiffs have never been provided access to even a single
18 byte—let alone the █████████ of storage Google now admits that it keeps for these tables. McGee
19 Decl. ¶ 4. Plaintiffs were never provided exemplars or other details of which mapping and linking
20 tables were the source of the results, and certainly have never been provided any details about
21 the mapping and linking tables at issue in Google's Motion. McGee Decl. ¶ 4. But Google's
22 representations about the size and volume of these mapping and linking tables begs further
23 inquiry: what other information is stored in these tables? What other identifiers? What other data
24 points? What other bits (including Incognito-detection bits)?

25 The fourth factor—the parties' resources—also weighs in Plaintiffs' favor. Plaintiffs have
26 never "assumed that because Google is a large company, no task or burden is too much for it."

27
28

Mot. at 9. To the contrary, Plaintiffs have rightly demanded that Google provide declarations and other evidence to support any supposed burdens. Google routinely provided conclusory statements from lawyers—not engineers or other Google employees sworn under oath—to suggest that the work Google had to do to comply with its discovery obligations was too hard.

Google's reliance on *Lickerish, Inc. v. PicClick, Inc.*, is misguided. In *Lickerish*, the plaintiffs in a patent infringement suit sought to obtain discovery from eBay—a non party. 2022 WL 2812174, *1 (N.D. Cal. July 18, 2022). That discovery focused on content delivery and "what happened or whether there was a communication to [eBay's] site" after a user clicked a non-eBay URL. *Id.* To comply with the plaintiffs' request would require billions of clicks and manually checking myriad logs, without any certainty that the results would be responsive and accurate. *Id.* at *2. The court analyzed the burden to eBay, and found that "non-parties should generally shoulder lesser discovery burdens than parties can be made to." *Id.* at *3 (citing *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 3124014, at *2 (N.D. Cal. July 24, 2017) (collecting cases)). Unlike in *Lickerish*, where the court decline to require a non-party to manually sort through billions of results, here, Google has already identified the ███ mapping and linking tables and the only burden identified is that it would take more time and money to preserve this data.

*Nyberg v. Zurich Am. Ins. Co.* helps—not hinders—Plaintiffs' position. There the plaintiff moved to compel information that the defendant initially withheld. 2016 WL 11671468, at *3 (D. Kan. June 21, 2016). The court analyzed the Rule 26 factors and found that because "defendant has greater access to relevant information and defendant presumably has much more resources" those Rule 26 factors weighed in *plaintiff's favor*. *Id.* at *4.

The fifth and sixth factors—the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit—do not support granting Google's Motion. Plaintiffs agree that "[p]reservation efforts need not be heroic or unduly burdensome." *The Sedona Principles, Third Edition*, 19 SEDONA CONF.J.1, Cmt.

5.e., 108 (2018). The Court took this principle into consideration when it curtailed Google's preservation requirements, and Google has not shown that preservation of the ▮ mapping and linking tables would impose an *undue burden*. *Id.* Indeed, "[e]valuating the need to produce ESI requires that a balance be struck between the burdens and need for ESI, taking into account the technological feasibility and realistic costs involved." *The Sedona Principles*, Cmt. 2.d.

Google has demonstrated there are no technological feasibility concerns—Google identified the ▮ mapping and linking tables and that those ▮ mapping and linking tables can be preserved. What Google has not shown is that it is an undue burden. Google has not provided details about what is contained in these ▮ mapping and linking tables (*e.g.*, do these ▮ mapping and linking tables store additional linkages that are not stored in the tables being preserved; do these ▮ mapping and linking tables store additional data beyond mappings and linkings, such as IP address, user agent string, timestamps, country, and other data relevant to this litigation; what other sources do these ▮ mapping and linking tables draw from and/or write to); Google has not provided details about what is contained in the mapping and linking tables that are being preserved (and how that differs from the ▮ tables Google seeks relief from preserving); Google has not explained why these ▮ mapping and linking tables are magnitudes larger than the other mapping and linking tables being preserved; and Google has not provided details about whether the amount of data is for domestic or worldwide data. *See, e.g.*, *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *7 (C.D. Cal. May 29, 2007) (finding no undue burden to defendants where they were able to "employ a technical mechanism" requiring "a setting change on the web server program" in order to retain the "Sever Log Data" they sought to withhold, amounting to 30 to 40 gigabytes per day in 2007).

These are just some questions and issues that were readily apparent from Google's Motion and the supporting declarations. But without any discovery into the details of what is being stored in all of the mapping and linking tables, as well as a comparison of what Google proposes to preserve and not preserve, Google has not demonstrated an *undue* burden because it

is impossible to evaluate the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.

### B. Plaintiffs Should Not Bear the Costs of Preservation

Only Google knows what is contained in the mapping and linking tables that Google offers to preserve and also seeks relief from preserving—Google fought tooth and nail to prevent the Court, the Special Master, and Plaintiffs from discovering any of those details. Google admits that "Plaintiffs only have access to some of the mappings/linkings for their own activity and devices." Mot. at 6, n.10. No other access was permitted to Plaintiffs, and Plaintiffs are not aware of Special Master Brush having *ex parte* access to this information. McGee Decl. ¶¶ 4–5.

Google's authorities are unavailing because Google has not demonstrated any undue burden. Also, Plaintiffs have already shared substantial costs for accessing electronically stored information during discovery: chiefly the costs for Special Master Brush to supervise and review Google's purported production of responsive data, as well as costs for experts and consultants and substantial attorney time devoted to seeking this information. *See* Dkt. 631 (awarding $904,936.50 in attorneys fees and $66,778.59 in costs for sanctions, which is a fraction of the time and costs that Plaintiffs have devoted to technical discovery in this matter).

For example, in *Boeynaems v. LA Fitness Int'l., LLC*, the plaintiffs sought additional discovery after the defendant had borne all costs of searching for and producing extensive documents. 285 F.R.D. 331, 341 (E.D. Pa. 2012). There, the court found cost-splitting was warranted, and ordered plaintiffs to provide detailed protocol for searching ESI for documents that plaintiffs claimed had not yet been produced. *Id.* The defendant would then respond within 14 business days summarizing internal costs to search for and produce those documents, and the cost would be due before defendant would be required to make a production. *Id.* Plaintiffs have shared costs via the Special Master process—which ultimately resulted in identifying these data sources (among myriad data sources). However, Google has yet to provide any details about *what is contained* in the ▮ mapping and linking tables at issue in this Motion, and Plaintiffs cannot

11
PLAINTIFFS' RESPONSE IN OPP. TO GOOGLE'S MOTION FOR RELIEF REGARDING PRESERVATION
4:20-CV-03664-YGR-SVK

1    be compelled to pay for what Google refuses to detail.

2    In *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, the plaintiff demanded access to archived databases, active emails, and assorted metadata. 305 F.R.D. 225, 228 (S.D. Cal. 2015). There, the court considered the six non-exhaustive Rule 26 factors and found there was an undue burden, required the plaintiff to bear the costs for searching and recovering the data, but the defendant was still responsible for all costs associated with producing the data. *Id.* at 247. Here, Plaintiffs did incur substantial costs associated with searching for and recovering this data—the ▅▅▅▅▅ ▅▅▅▅▅▅▅▅ dollars paid to the Special Master, the additional costs paid to Plaintiffs' experts, and the extensive discovery disputes and hearings to compel Google to reveal this information.

*Rowe Ent., Inc. v. William Morris Agency, Inc.* is distinguishable. In *Rowe*—an anti-competitive litigation between corporations—the court ordered cost shifting between two corporate parties with the explicit recognition that they were in direct competition and the parties' respective resources were therefore similar. 205 F.R.D. 421, 431 (S.D.N.Y. 2022). That balance is not present here, where Plaintiffs are five consumers seeking to hold Google—a multi-trillion-dollar company—responsible for its illegal conduct of invading at least tens of millions of Americans' privacy rights by illegally collecting, saving, and using private information.

### C. Google Should Not Benefit From Any Decision Limiting its Preservation Obligations

A defendant "may not attempt to avoid a class suit merely because [its] own actions have made the class more difficult to identify." *See* Dkt. 545 (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990)); *see also Pippins v. KPMG LLP*, 279 F.R.D. 245, 255–56 (S.D.N.Y. 2012) ("[Defendant] cannot simultaneously demand that the Court analyze how long every Audit Associate worked and what every Audit Associate did and also ask the Court to sanction the destruction of what is probably the single best source of that information"). This Court has twice held that Google "may not use the fact that only sampled data, not complete data, is available to challenge class certification generally or attestations by

individuals that they are members of the class." Dkt. 587; *see also* Dkt. 788 ("Google may not use the fact that data from prior to the class period from these seven logs is not available to challenge class certification generally or attestations by individuals that they are members of the class."). Plaintiffs respectfully submit that any curbing of Google's preservation obligations necessitates the same ruling from this Court.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Google's Motion.

Dated: December 1, 2022

By */s/ John A. Yanchunis*
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street

13
PLAINTIFFS' RESPONSE IN OPP. TO GOOGLE'S MOTION FOR RELIEF REGARDING PRESERVATION
4:20-CV-03664-YGR-SVK

Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

*Attorneys for Plaintiffs*