# Mao Declaration Ex. 1

## Redacted Version of Document Sought to be Sealed

CONFIDENTIAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK |

**DEFENDANT GOOGLE LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' 8TH SET OF INTERROGATORIES (NOS. 30-33)**

Pursuant to Federal Rule of Civil Procedure 33, Defendant Google LLC ("Google") hereby responds and objects to Plaintiffs' Interrogatories, Set 8 (Nos. 30-33). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Google's knowledge, investigations, and analysis to date. As discovery proceeds, Google may become aware of additional facts or evidence and its analysis of the case may change. Google reserves all rights to supplement and amend its objections and responses accordingly.

**GENERAL OBJECTIONS**

1. Google objects to Plaintiffs' definition of "GOOGLE," "YOU," and "YOUR" as encompassing "any of its directors, officers, consultants, agents, representatives, predecessors in interest, subsidiaries, assignees, licensees, employees, attorneys and any other persons acting on GOOGLE LLC'S behalf, including contractors," as well as "purporting to act on" Google's behalf. Google further objects to these definitions to the extent that it seeks to require Google to produce or otherwise analyze any document or other information that is not within the possession, custody, or

CONFIDENTIAL

control of Google. Google further objects to these definitions to the extent that it purports to impute knowledge of unspecified or unknown parties or persons to Google. Google further objects to these definitions as overly broad, vague, and ambiguous to the extent they purport to include entities other than Google, which is the only named defendant in the present action. Google further objects to these definitions and instruction to the extent that they include Google's attorneys and, therefore, cause interrogatories using "Google" to improperly seek information protected by the attorney-client privilege, the work product doctrine, the common interest privilege and/or any other applicable privileges or immunities.

2. Google objects to Plaintiffs' definitions of "ALL," "INCLUDE," "INCLUDING," "CONCERNING," and "RELATING TO" to the extent that they propose to alter the plain meaning or scope of any specific interrogatory and to the extent that such alteration renders the interrogatory vague, ambiguous, and overbroad.

3. Google objects to Plaintiffs' definition of INSTANCES as vague, ambiguous and overly broad.

4. Google objects to Plaintiffs' Definitions, Instructions, and interrogatories to the extent they seek information and/or records that are not reasonably accessible and whose inclusion is not proportional to the needs of the case.

5. Google objects to the interrogatories to the extent that they seek information shielded from disclosure by the attorney-client privilege, the work-product doctrine, the settlement privilege and/or any other applicable privilege or protection from discovery.

6. Google objects to Plaintiffs' Definitions, Instructions, and interrogatories to the extent they conflict with or encompass information and/or records falling outside the scope of discovery under the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any discovery orders governing this case.

7. Google's responses to these interrogatories are hereby made without waiving or intending to waive, but rather, to the contrary, by preserving and intending to preserve:

    a. All questions as to the competence, relevance, proportionality, materiality, and admissibility as evidence for any purpose of the information or documents, or the subject matter thereof, in any aspect of this action or any other court action or judicial or administrative proceeding or investigation;

    b. The right to object on any ground to the use of any such information or documents, or the subject matter thereof, in any aspect of this action or any other court action or judicial or administrative proceeding or investigation;

    c. The right to object at any time in connection with any further response to these or any other interrogatories; and

    d. The right at any time to supplement its responses.

8. Google anticipates that future discovery, independent investigation, or analysis will supply additional facts and add meaning to known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to additions to, changes in, and variations from the responses set forth herein. Google reserves the right to modify, supplement, withdraw, or otherwise alter its responses to these interrogatories in accordance with the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any discovery orders governing this case.

**OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

Subject to the foregoing objections, Google objects and responds to Plaintiffs' interrogatories as follows:

CONFIDENTIAL

**INTERROGATORY NO. 30:**

Please explain all differences regarding how browsing data is sent from users' devices to Google when (1) a user visits a website that uses Google Ad Manager but not Google AdSense compared with (2) a user visits a website that uses Google AdSense but not Google Ad Manager.

**RESPONSE TO INTERROGATORY NO. 30:**

Google incorporates its General Objections as if set forth fully herein. Google further objects to this interrogatory as overbroad and unduly burdensome on the grounds that Google AdSense is not tied to Plaintiff's class definition. *See* Dkt. 136-1 (Second Amended Complaint ("SAC")) ¶ 192. Google further objects to this interrogatory as vague and ambiguous as to the meaning of the terms "browsing data" and "sent from users' devices to Google." Google will assume for purposes of its response that "browsing data…sent from users' devices to Google" means data generated when users visit third-party websites that use Google Ad Manager or Google AdSense while not logged into their Google Account. Google further objects to this interrogatory to the extent it seeks information related to non-Chrome browsers, which may have unique browser features that impact data collection by Google Ad Manager and Google AdSense. Google further objects to this interrogatory as overbroad and unduly burdensome because it seeks a description of "all" differences between data received by websites using Ad Manager or AdSense.

Subject to and without waiving the foregoing objections, Google responds as follows:

Google Ad Manager will not receive data related to a user's visit to a specific website unless Ad Manager scripts have been installed in the website's HTML code. Similarly, Google AdSense will not receive data related to a user's visit to a specific website unless AdSense scripts have been installed in the website's HTML code. The Ad Manager scripts are different from the AdSense scripts, but each may be viewed by any Chrome user by visiting the webpage using Google Ad Manager (or AdSense) and clicking on "View," "Developer," "Developer Tools," "Sources." The

data sent to Google Ad Manager and Google AdSense depends on the functionality defined in the respective scripts. The data sent to Google Ad Manager will differ from the data sent to Google AdSense in a number of respects, due to differences between the two products and the respective APIs they provide to publishers, which are described in publicly-available documentation. *See, e.g.,* https://developers.google.com/publisher-tag/guides/get-started; https://support.google.com/adsense/answer/9274634.

      The data sent to Google Ad Manager or Google AdSense also depends on a number of other factors. When a user (in any browser) visits a website that uses Google Ad Manager or AdSense, Google Ad Manager or AdSense may receive: (1) cookies that specific Google domains previously set on the user's browser; (2) the HTTP request sent by the user's browser, including the hostname, browser type, and language, and depending on the browser used, Java support, Flash support, and screen resolution; (3) the URL of the website making the ad request to Google Ad Manager or AdSense, and/or the referrer URL; (4) the IP address assigned to the device on which the browser is running; (5) the request for an ad to be served on a non-Google website and the ad slot to be filled; (6) event data such as impressions or clicks; and (7) if the user is in Chrome and a mode other than Incognito, the browser's X-Client-Data Header.  The X-Client-Data Header may also be empty even when the browser is not in Incognito mode, including: (i) a new browser instance (ii) the browser has not been used for 30 days or more; (iii) the Chrome server sends too many variation IDs to the Chrome browser thereby causing the Chrome browser to delete the header to keep it from becoming too large; and (iv) a firewall prevents Chrome from receiving the variation IDs that are used to populate the X-Client-Data Header.

      Whether Google in fact receives these categories of data depends on numerous factors, including (1) features and settings enabled by the user in Chrome or in the user's Google Account settings and (2) use of third-party software by the user.  For example, Chrome's cookie settings,

CONFIDENTIAL

which are accessible via a drop-down menu or by navigating to chrome://settings/cookies, include an option to "block all cookies." When the user enables this feature, Chrome prevents websites, Google Ad Manager and AdSense from setting or receiving any cookies. If all cookies are blocked in this manner, the Chrome browser will not send any cookies to Google Ad Manager or AdSense. Chrome's settings also include an option to "block third-party cookies." When the user enables this feature, Chrome does not set or transmit to Google Ad Manager or AdSense any third-party cookies, including advertising cookies.  Similarly, enabling "clear cookies and site data when you close all windows" in Chrome settings means that cookies do not persist across browsing sessions and Google Ad Manager and AdSense will not receive any cookies set in a prior session.

As another example, Chrome's JavaScript settings, which are accessible via a drop-down menu or by navigating to chrome://settings/content/javascript, include the following option: "Don't allow sites to use Javascript." When a user selects "Don't allow sites to use JavaScript," Chrome prevents websites from using JavaScript, including Google Ad Manager and AdSense tags based on JavaScript. As a result, if JavaScript is disabled in this manner, the Google Ad Manager or AdSense JavaScript tag will not be able to send information to Google Ad Manager or AdSense when a Chrome user visits a website that uses Google Ad Manager or AdSense.

There are also multiple ad-blocking extensions available on the Chrome Web Store that, when installed, can be configured to block Chrome from sending ad requests. Popular examples of those extensions are AdBlock and Adblock Plus.  When installed by a user, these ad-blocking extensions may, depending on their configuration, prevent Chrome from sending ad requests to Google Ad Manager or AdSense. There are also multiple standalone (not browser extension/plug-in) ad blocker programs that are designed to provide the same ad-blocking functionality. Popular examples of those programs are AdGuard and AdLock. When installed by a user, these ad-blocking programs may, depending on their configuration, prevent Chrome from sending any ad requests to

Google Ad Manager or AdSense, thus preventing Google Ad Manager or AdSense from receiving any of the information described above.

If Chrome is used in Incognito mode, Chrome will not send the X-Client-Data Header to doubleclick.com or any other domain used by Google Ad Manager or AdSense. Furthermore, when a user activates Incognito mode, Chrome will create a new cookie jar that only stores first-party cookies and third-party cookies if not blocked (the default setting is for third-party cookies to be blocked in Incognito mode) for the duration of that Incognito session, and those cookies are deleted when the Incognito session ends. Because Chrome creates a new cookie jar for the Incognito session, Google Ad Manager and AdSense will not receive any cookie values set in a prior session. Similar to Incognito mode, when a user activates Guest mode, Chrome will create a new cookie jar that only stores cookies for the duration of that Guest mode session, and those cookies are deleted when the Guest mode session ends. Because Chrome creates a new cookie jar for the Guest mode session, Google Ad Manager and AdSense will not receive any cookies set in a prior session.

There are also a number of third-party privacy programs and features that users can employ that affect whether Google Ad Manager or AdSense receives the data at issue, including proxy servers and VPNs, firewalls, ad blockers, and opt-out features. For example, if a Chrome user or their network administrator employs a proxy server or VPN (Virtual Private Network) that masks the sending device's IP address, then Google Ad Manager or AdSense would not receive the user's real IP address. Instead, Google Ad Manager or AdSense would receive only the IP address assigned by the VPN or proxy server.  And if a Chrome user or their network administrator employs a firewall that is configured to allow traffic only to specific domains (not including domains associated with Google Ad Manager or AdSense), or to prevent traffic to specific domains (including domains associated with Google Ad Manager or AdSense), then any transmissions that the Chrome browser attempts to send to Google Ad Manager or AdSense will be blocked by the firewall. Firewalls can

1   also prevent Chrome from receiving the variation IDs that are used to populate the X-Client-Data
2   Header.
3       When a user (in any browser) visits a website that uses Google AdSense, Google AdSense
4   may receive many of the same types of data described above for Google Ad Manager (subject to the
5   same factors described above).  However, Google AdSense will not receive certain items of data
6   that are only relevant to Google Ad Manager.  For example, as described in publicly available
7   documentation, Google Ad Manager allows publishers to set a publisher-provided identifier (PPID).
8   See https://support.google.com/admanager/answer/2880055.  Google AdSense does not provide this
9   feature, so when a user visits a website that uses Google AdSense, the browser would not send a
10  PPID value to Google AdSense.

**INTERROGATORY NO. 31:**

Please explain the basis for Google's determination that "false positives" for Chrome Incognito browsing detection in log-based analyses "range from ▮▮▮▮" (GOOG-BRWN-00204687), including by identifying documents and individuals tied to this determination.

**RESPONSE TO INTERROGATORY NO. 31:**

Google incorporates its General Objections as if set forth fully herein.  Google further objects to this interrogatory to the extent it mischaracterizes a draft document prepared by individual Google employees as "Google's determinations" regarding "'false positives' for Chrome Incognito browsing detection."  Google further objects to this interrogatory as vague and ambiguous as to the meaning of the terms "Chrome Incognito browsing detection," "log-based analyses," and "tied to this determination."

Subject to and without waiving the foregoing objections, Google responds as follows:

The estimated "false positives to identify Chrome traffic" ranging from "▮▮▮▮" referenced at GOOG-BRWN-00204684 at -87 was based on differences observed between certain statistics collected from multiple independent sources, including data available to Chrome engineers and data

CONFIDENTIAL

available to Ads engineers.  Google Ads engineers determined that there were "false positives" because statistics derived from sources available to Ads engineers showed higher rates of Incognito mode traffic than statistics derived from sources available to Chrome engineers, and it was expected that statistics derived from sources available to Ads engineers would be less reliable.

Pursuant to Federal Rule of Procedure 33(d), Google identifies the following documents from which information sought by this interrogatory may be derived or ascertained, and for which the burden of deriving a response to these subparts is the same for Plaintiffs as it is for Google:

- GOOG-CABR-04795991
- GOOG-CABR-00390798
- GOOG-CABR-03647356
- GOOG-CABR-03662990
- GOOG-CABR-03667366
- GOOG-CABR-04455208
- GOOG-CABR-04665944
- GOOG-CABR-04625213
- GOOG-CABR-04625224
- GOOG-CABR-04485508
- GOOG-CABR-04478211
- GOOG-CABR-00409394
- GOOG-CABR-00409681
- GOOG-CABR-05284805
- GOOG-CABR-05125914
- GOOG-BRWN-00204684
- GOOG-CABR-00902238

CONFIDENTIAL

- GOOG-CABR-04324934
- GOOG-CABR-04338965

**INTERROGATORY NO. 32:**

Please explain how Google "improved materially" "Incognito detection accuracy" within log-based analyses from ▮," including by describing how Google reached the ▮ figure. GOOG-CABR-04795996.

**RESPONSE TO INTERROGATORY NO. 32:**

Google incorporates its General Objections as if set forth fully herein. Google further objects to this interrogatory as vague and ambiguous as to the meaning of the terms "log-based analyses." Google further objects to this interrogatory to the extent it mischaracterizes GOOG-CABR-04795991-011 as showing that "Google 'improved materially' 'Incognito detection accuracy'" or that "Google reached the ▮ figure." Google further objects that this interrogatory mischaracterizes the cited document.

Subject to and without waiving the foregoing objections, Google responds as follows: The improvement in "Incognito detection accuracy" referenced in GOOG-CABR-04795991 at -96 was the result of excluding Chrome WebView and some non-Chrome traffic, potential sources of false positives, from the methodology used to estimate Incognito traffic.

**INTERROGATORY NO. 33:**

For the Class Period, please provide information (including best estimates) regarding the total number and percentage of non-Google websites using Google Analytics and/or Google Ad Manager, where Google would have received private browsing information. See, e.g., GOOG-BRWN-00490767 ("Analytics or Analytics 360 is installed on ▮ of top ▮ websites").

**RESPONSE TO INTERROGATORY NO. 33:**

Google incorporates its General Objections as if set forth fully herein. Google further objects to this interrogatory as vague and ambiguous as to the meaning of the terms "information," "best

estimates," and "private browsing information." Google will assume for purposes of its responses that "private browsing information" means data generated when users visited a third-party website that used Google Analytics or Ad Manager while using Chrome Incognito mode and while not logged in to their Google Account. Google further objects to this interrogatory as overly broad and unduly burdensome because it is not limited in scope and seeks "total number and percentage" for the entire Class Period. Google further objects to this interrogatory as unintelligible because the interrogatory seeks information about what Google "would have received" from private browsing activity on non-Google websites. Google further objects to this interrogatory to the extent it seeks information related to non-Chrome browsers, which may have unique browser features that impact data collection by Google Ad Manager and Google Analytics.

Subject to and without waiving the foregoing objections, Google responds as follows:

Google is unable to determine total number or percentages of visits to non-Google websites using Google Analytics and/or Google Ad Manager while in a private browsing mode for many reasons, including: (1) Chrome is designed to prevent websites, and the third-party services installed on those websites such as Google Analytics and Google Ad Manager, from detecting whether a user is in a private browsing mode; and (2) Google has no way of determining how often users use private browsing modes on other browsers.

DATED: January 20, 2022         QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/ Andrew H. Schapiro
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

CONFIDENTIAL

Telephone: (213) 443-3000
Fax: (213) 443-3100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Fax: 202-538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

CONFIDENTIAL

# PROOF OF SERVICE

**LOS ANGELES, CA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in Los Angeles, CA. My business address is 865 S. Figueroa St., 10th Floor, Los Angeles, CA, 90017.

On January 20, 2022, I served true copies of the following document(s) described as **DEFENDANT GOOGLE LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' 8TH SET OF INTERROGATORIES (NOS. 30-33)** on the interested parties in this action as follows:

**SEE ATTACHED LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION**: I transmitted PDF format copies of the document(s) described above to the e-mail addresses on the attached Service List pursuant to the agreement between the parties to serve discovery, in lieu of other service methods, by email under Fed. R. Civ. P. 5(b)(2)(E) (see Joint Case Management Statement § 8.b, Dkt. 44) and on non-parties pursuant to the Court's August 12, 2021 Cross-use and Discovery Coordination Orders issued in *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (Dkt. 243) and *Calhoun v. Google*, Case No.: 5:20-cv-05146-LHK-SVK (Dkt. 263). The documents were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 20, 2022 at Los Angeles, CA.

                                                /s/ *Marie Hayrapetian*
                                                Marie Hayrapetian

CONFIDENTIAL

# SERVICE LIST

*Brown v. Google LLC*
*Case No. 5:20-cv-03664-LHK-SVK*

*Attorneys for Plaintiffs Chasom Brown et al.* <u>BOIES SCHILLER FLEXNER LLP</u>

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
Antonio Lavalle Ingram, II, CA Bar No. 300528
Alexander Justin Konik, CA Bar No. 299291
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com
aingram@bsfllp.com
akonik@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA. 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William S. Carmody (admitted pro hac vice)
Shawn Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.: (212) 336-8330

CONFIDENTIAL

|   |   |
|---|---|
| 1 | Fax: (212) 336-8340 |
| 2 | bcarmody@susmangodfrey.com |
|   | srabin@susmangodfrey.com |
| 3 | sshepard@susmangodfrey.com |
| 4 | John A. Yanchunis (admitted pro hac vice) |
| 5 | Ryan J. McGee (admitted pro hac vice) |
|   | Ra Olusegun Amen (admitted pro hac vice) |
| 6 | Jean Sutton Martin (admitted pro hac vice) |
|   | **MORGAN & MORGAN** |
| 7 | 201 N. Franklin Street, 7th Floor |
|   | Tampa, FL 33602 |
| 8 | Tel.: (813) 223-5505 |
|   | jyanchunis@forthepeople.com |
| 9 | rmcgee@forthepeople.com |
| 10 | ramen@forthepeople.com |
|   | jean@jsmlawoffice.com |
| 11 |   |
|   | *Attorneys for Plaintiffs* |
| 12 |   |

*Calhoun v. Google LLC*

*Case No. 5:20-cv-5146-LHK-SVK*

| | | |
|---|---|---|
| 17 | *Attorneys for Plaintiffs Patrick Calhoun et al.* | BLEICHMAR FONTI & AULD LLP |
| 18 | | |
| 19 | | **BLEICHMAR FONTI & AULD LLP** |
|    | | Lesley Weaver (Cal. Bar No. 191305) |
| 20 | | Angelica M. Ornelas (Cal. Bar No. 285929) |
|    | | Joshua D. Samra (Cal. Bar No. 313050) |
| 21 | | 555 12th Street, Suite 1600 |
|    | | Oakland, CA 994607 |
| 22 | | Tel.: (415) 445-4003 |
|    | | Fax: (415) 445-4020 |
| 23 | | *lweaver@bfalaw.com* |
|    | | *aornelas@bfalaw.com* |
| 24 | | *jsamra@bfalaw.com* |
| 25 | | |
|    | | **DICELLO LEVITT GUTZLER** |
| 26 | | David A. Straite (admitted *pro hac vice*) |
|    | | One Grand Central Place |
| 27 | | 60 East 42nd Street, Suite 2400 |
|    | | New York, NY 10165 |
| 28 | | Tel.: (646) 933-1000 |

CONFIDENTIAL

dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
akeller@dicellolevitt.com

**SIMMONS HANLY CONROY LLC**
Mitchell M. Breit (admitted *pro hac vice*)
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*mbreit@simmonsfirm.com*
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Attorneys for Plaintiffs*