# GOOGLE LLC'S REPLY ISO OF ITS RESPONSE TO THE COURT'S OCTOBER 27, 2022 ORDER TO SHOW CAUSE (DKT. 784)

# Redacted Version of Document Sought to be Sealed

1    **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

2    Diane M. Doolittle (CA Bar No. 142046)          Andrew H. Schapiro (admitted *pro hac vice*)
     dianedoolittle@quinnemanuel.com                  andrewschapiro@quinnemanuel.com
3    Sara Jenkins (CA Bar No. 230097)                 Teuta Fani (admitted pro hac vice)
     sarajenkins@quinnemanuel.com                     teutafani@quinnemanuel.com
4    555 Twin Dolphin Drive, 5th Floor                Joseph H. Margolies (admitted pro hac vice)
5    Redwood Shores, CA 94065                         josephmargolies@quinnemanuel.com
     Telephone: (650) 801-5000                        191 N. Wacker Drive, Suite 2700
6    Facsimile: (650) 801-5100                        Chicago, IL 60606
                                                      Telephone: (312) 705-7400
7                                                     Facsimile: (312) 705-7401

8
     Stephen A. Broome (CA Bar No. 314605)            Josef Ansorge (admitted *pro hac vice*)
9    stephenbroome@quinnemanuel.com                   josefansorge@quinnemanuel.com
     Viola Trebicka (CA Bar No. 269526)               Xi ("Tracy") Gao (CA Bar No. 326266)
10   violatrebicka@quinnemanuel.com                   tracygao@quinnemanuel.com
11   Crystal Nix-Hines (CA Bar No. 326971)            Carl Spilly (admitted pro hac vice)
     crystalnixhines@quinnemanuel.com                 carlspilly@quinnemanuel.com
12   Alyssa G. Olson (CA Bar No. 305705)              1300 I Street NW, Suite 900
     alyolson@quinnemanuel.com                        Washington D.C., 20005
13   865 S. Figueroa Street, 10th Floor               Telephone: (202) 538-8000
14   Los Angeles, CA 90017                            Facsimile: (202) 538-8100
     Telephone: (213) 443-3000
15   Facsimile: (213) 443-3100

16   *Counsel for Defendant Google LLC*
     *Additional counsel on signature pages*
17

18                             **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

20   CHASOM BROWN, WILLIAM BYATT,                     Case No. 4:20-cv-03664-YGR-SVK
21   JEREMY DAVIS, CHRISTOPHER
     CASTILLO, and MONIQUE TRUJILLO,                  **GOOGLE LLC'S REPLY IN SUPPORT**
22   individually and on behalf of all similarly     **OF ITS RESPONSE TO THE COURT'S**
     situated,                                        **OCTOBER 27, 2022 ORDER TO SHOW**
23                                                    **CAUSE (DKT. 784)**
24              Plaintiffs,
                                                      Referral: Hon. Susan van Keulen, USMJ
25         vs.
                                                      San Jose Courthouse, Courtroom 6 – 4th Floor
26   GOOGLE LLC,                                      Date:    March 2, 2023
                                                      Time:    10:00 a.m.
27              Defendant.

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ............................................................................................1

II.    ARGUMENT ....................................................................................................2

     A.    Plaintiffs Have Failed To Establish New Discovery Violations ...............2

          1.    Plaintiffs Cannot Demonstrate that the June Logs Are Accretive .................2

          2.    Google's Voluntary Disclosure of the Long-Defunct ███████ Field Is Not Evidence of Misconduct ............................5

          3.    Google Conducted a Thorough Investigation ................................7

     B.    Google Has Acted in Good Faith at All Times ........................................9

     C.    Plaintiffs Have Not Been Prejudiced ....................................................10

          1.    Fact and Expert Discovery ..........................................................10

          2.    Injunctive Relief .........................................................................13

          3.    Preservation ................................................................................14

     D.    Plaintiffs' Proposed Sanctions Are Unwarranted and Inappropriate ......14

          1.    Terminating Sanctions Are Extreme and Inappropriate Here .....................14

          2.    Further Preclusion Sanctions Are Unwarranted ..........................16

               a.    Orders Finding Facts or Precluding Arguments Are Inappropriate ................................................................16

               b.    Excluding Google's Witnesses Is Inappropriate .............18

               c.    No Further Monetary Sanctions Are Warranted .............19

III.    CONCLUSION ...............................................................................................20

1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
   69 F.3d 337 (9th Cir. 1995) ........................................................................... 16

*Calhoun v. Google*,
   No. 20-cv-05146, Dkt. 329 (N.D. Cal.) .......................................................... 3

*Conn. Gen. Life Ins. Co v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007) ................................................................. 15, 16

*CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*,
   34 F.4th 801 (9th Cir. 2022) ......................................................................... 15

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
   2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ................................................. 16

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589, (9th Cir. 2020) ....................................................................... 18

*Henry v. Gill Indus., Inc.*,
   983 F.2d 943 (9th Cir. 1993) ........................................................................ 16

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ........................................................................ 16

*Liew v. Breen*,
   640 F.2d 1046 (9th Cir. 1981) ...................................................................... 20

*Network Appliance Inc. v. Bluearc Corp.*,
   2005 WL 1513099 (N.D. Cal. June 27, 2005) .............................................. 17

*OmniGen Research v. Yongqiang Wang*,
   321 F.R.D. 367 (D. Or. 2017) ....................................................................... 16

*In re Phenylpropanolamine Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) ................................................................. 15, 16

*Toth v. Trans World Airlines*,
   862 F.2d 1381 (9th Cir. 1988) ................................................................. 20, 21

*Valley Eng'rs Inc. v. Elec. Eng'g. Co.*,
   158 F.3d 1051 (9th Cir. 1998) ................................................................. 15, 16

*Wyle v. R.J. Reynolds Indus., Inc.*,
   709 F.2d 585 (9th Cir. 1983) ........................................................................ 16

**<u>Rules and Regulations</u>**

18 U.S.C. §§ 2511, 2510(4) ................................................................................................ 17

Cal. Penal Code § 502(c)(2) .............................................................................................. 17

Civ. Local Rule 7-5(b) ......................................................................................................... 2

Fed. R. Civ. P. 26 ................................................................................................................. 3

Fed. R. Civ. P. 37(b)(2) ...................................................................................................... 20

## I.      **INTRODUCTION**

Plaintiffs' Response strays far afield of the core question in the Court's Order to Show Cause, which asked Google to explain why the June Logs do not "contain relevant data that should have been identified and produced during discovery." Dkt. 784. Google's Response proves they do not, Dkt. 797-3 ("OSC Resp."), and Plaintiffs largely ignore the reasons why: the June Logs contain the Incognito-detection bits by pure happenstance, do not use those bits for any purpose, often contain purely duplicative user data or none at all, and do not show any new use of private browsing data. From the start of the case, Google repeatedly and clearly acknowledged that it receives and uses data from signed-out private browsing the same way that it uses any other unauthenticated browsing data. Plaintiffs elide these facts in their haste to paint every log containing an Incognito-detection bit as a stunning revelation, but they are fatal to Plaintiffs' claims of prejudice.

Because the June Logs reveal nothing new about "the existence and use of [the] Incognito-detection bits" (the basis of the Court's May 20, 2022 sanctions order), Plaintiffs fixate on a single June Log that contains separate authenticated and unauthenticated records and claim that storing such records in the same log amounts to "joining" them. Plaintiffs fail to acknowledge, however, that their technical experts previously testified that "joining" refers to merging individual records into combined records, and that the log at issue is *hard-coded to prohibit such joining*. Since the log does not (and cannot) associate unauthenticated private browsing data with a user's identity, it shows nothing new or material to Plaintiffs' claims.

Nor does the recently identified (but long-defunct) "███████████" field reveal anything new about Google's use of, or ability to distinguish, private browsing data. ████████████████████████████████████████████████████████████████████████ since well *before* Plaintiffs filed suit. And although the field is neither used nor usable to identify private browsing for *any browser* at issue, Google promptly investigated and disclosed it to Plaintiffs and the Court. Plaintiffs characterize this as showing concealment and bad faith, but Google's voluntary disclosure of the field is undeniably evidence of its good faith and commitment to transparency.

Unable to prove any material omissions, concealment, or prejudice, Plaintiffs resort to attacking Google's painstaking investigation as inadequate. Applying 20/20 hindsight, they argue

1   that Google *would* have identified the June Logs and ████████ field had it simply turned

2   itself inside out in ways that were far from obvious when it conducted its thorough, reasonable

3   search. Even if that impossible standard were to apply, the Court has already considered Google's

4   inability to identify Incognito-detection bits and all data sources containing them (and sanctioned

5   Google for it). There is no new violation here.

6         Despite their thin allegations, Plaintiffs seek the most severe sanctions, including

7   terminating sanctions. None of Plaintiffs' proposed sanctions is warranted.[1] Google has at all times

8   acted in good faith, and Plaintiffs have not been harmed in any way not already addressed by the

9   Court's prior sanctions order. Plaintiffs' claims should be decided on the merits, not won or lost in

10  disputes over information that has no effect on Plaintiffs' ability to make their case about Google's

11  privacy practices. Plaintiffs' requests for sanctions should be denied.

12  **II.    ARGUMENT**

13        **A.    Plaintiffs Have Failed To Establish New Discovery Violations**

14              **1.    Plaintiffs Cannot Demonstrate that the June Logs Are Accretive**

15        The central question of the Court's Order to Show Cause is whether the June Logs "contain

16  relevant data that should have been identified and produced during discovery." Dkt. 784. As

17  Google's Response demonstrates, they do not. Incognito-detection bits were copied into the June

18  Logs by automated processes, and Google never intended or used them to identify Incognito

19  browsing. Dkt. 797-3 ("OSC Resp.") 7–12. The logs contain no data material to Plaintiffs' claims—

20  many contain no user data at all. *Id.* The logs are no more than cumulative evidence of the Incognito-

21  detection bits' *existence*, which Google disclosed *before* the June Logs were ever at issue, and which

22  has already been addressed by the Court's prior sanctions order. Dkt. 588, Ex. A (Findings of Fact

23  and Conclusions of Law) ("FFCL") at 28–29.

---

[1] Exhibit 7 to the Mao Declaration, which lists Plaintiffs' proposed sanctions, includes pages of attorney argument in violation of Civil Local Rule 7-5(b). The Court should strike the second column of that exhibit and entertain only the arguments Plaintiffs set forth in their brief. *See* Civ. L. R. 7-5(b) ("An affidavit or declaration not in compliance with this rule may be stricken in whole or in part."); Dkt. 588 at 2–4 (striking conclusions and arguments in Plaintiffs' declarations).

Plaintiffs do not dispute that the June Logs contain the Incognito-detection bits due to automated happenstance, or that the bits in the June Logs were not used to infer Incognito browsing. Indeed, they do not dispute most of Google's Response. Instead, Plaintiffs misrepresent Google's position as suggesting that "the only thing that matters is whether [the June Logs] contain the same data as other logs previously identified." Dkt. 833-1 ("Pls. Br.") 12. Attacking this strawman, Plaintiffs argue that "how Google *uses* private browsing data (even if it is the same data) has always been relevant, and accretive," and that the June Logs "show additional relevant uses, which is relevant both for purposes of liability and injunctive relief." Pls. Br. 12–13. But Plaintiffs' claim that the June Logs should have been identified because they show additional uses of private browsing data is both incorrect and an untenable discovery standard.

*First*, Plaintiffs' claim that the June Logs reveal new ways that Google *uses* private browsing data is wrong. From the start of the case, Google has consistently acknowledged that it receives and uses signed-out private browsing data the same way it uses any other unauthenticated browsing data. *See* OSC Resp. 16; *infra* Section II(C)(1). And Plaintiffs have long known that Google uses such data to "predict ad revenues," understand "users' interactions with ads related to third-party exchanges," and conduct "analysis and testing" to improve its services—each of which is undisputed and evident on the face of Google's public disclosures. *See infra* Section II(C)(1).

*Second*, Plaintiffs' underlying assumption—that the June Logs should have been identified by name simply because they contain private browsing data—presumes an untenable discovery standard. By that logic, every log at Google that contains any unauthenticated browsing data should have been identified and searched. That is plainly not what any party, or the Court, envisioned during the two years of discovery.[2] After all, the Special Master and the Court both *denied* Plaintiffs' requests for all browsing data in which the X-Client-Data header is absent, Dkt. 299-1 at 2, Dkt. 331, and the Court expressly reaffirmed those rulings in its May 20, 2022 Order. Dkt. 588

---

[2] *Cf. Calhoun v. Google*, No. 20-cv-05146, Dkt. 329 at 2 (N.D. Cal.) ("Simply put, each and every transmission, whether or not authorized, neither can nor should be the subject of discovery in this case. Litigation of the size and magnitude of this action requires selection of discovery targets which allow the Parties the opportunity to prove their claims or defenses to a trier of fact within the bounds of Federal Rule of Civil Procedure 26.").

-3-

1   (reiterating that "the absence of the X-Client-Data header is not, by itself, sufficiently reliable to

2   warrant Plaintiffs' broad request for discovery"). The Court has already sanctioned Google for

3   belated disclosure of the Incognito-detection bits; the additional June Logs that contain these bits

4   only by automated happenstance are nothing new.

5          Despite Plaintiffs' broad and inaccurate claim that the June Logs revealed new material

6   information about Google's use of private browsing data, the only June Log they address with any

7   specificity is ███████████████████████, which contains separate, unconnected

8   records from ████  unauthenticated logs and ████  authenticated logs—each of which Google

9   previously disclosed. OSC Resp. 10. Plaintiffs insist that the existence of this log is "shocking"

10  because "the combined information results in exactly the type of user identification that Google and

11  its experts repeatedly attested was not possible." Pls. Br. 2, 6–7. But as Google has already

12  demonstrated with unambiguous source code and expert evidence, Plaintiffs' claims are false. *See,*

13  *e.g.*, OSC Resp. 9; Dkt. 797-21 ("11/30 Psounis Decl.") ¶¶ 17–21. Google's logs do not join

14  unauthenticated data with authenticated user IDs, OSC Resp. 21–22, and █████████████

15  ███████████████ is no exception.

16         Plaintiffs and their experts contend that this log joins unauthenticated data to authenticated

17  data, but make no attempt to analyze the ██████████  source code file Google provided—the

18  very file that contains the instructions for sorting input logs data in ████████████████

19  ███████████████ and establishes that authenticated and unauthenticated records in that

20  file are *never* joined. 11/30 Psounis Decl. at ¶¶ 10–21. Instead, both of Plaintiffs' experts parrot

21  Plaintiffs' counsel's re-definition of "joining" data as storing that data as separate records in the

22  same log. Pls. Br. 8; Dkt. 833-3 ("Thompson Decl.") ¶ 39; Dkt. 833-4 ("Bhatia Decl.") ¶¶ 10, 27.

23  This newfound definition contradicts not only the decades-old definition of "joining" in the field of

24  data science, but also prior positions taken by Plaintiffs' counsel, their other technical experts, and

25  Mr. Thompson himself. Psounis Decl. ¶¶ 16–19.

26         Terminology aside, the log simply does not do what Plaintiffs say it does—*i.e.*, identify

27  individual users who browsed in Incognito mode without signing in to a Google Account—and even

28  Mr. Thompson tacitly admits as much. Thompson Decl. ¶ 37 (incorrectly opining that "[a]nyone

GOOGLE LLC'S REPLY ISO ITS RESPONSE TO
THE COURT'S OCTOBER 27, 2022 ORDER TO SHOW CAUSE (DKT. 784)

1   seeking to join the data *could* easily do so . . . ." (emphasis added)). Indeed, the log is hard-coded to

2   *prohibit* such joining, 11/30 Psounis Decl. ¶¶ 17–21, and Plaintiffs' experts offer no analysis that

3   suggests otherwise, Psounis Decl. ¶¶ 21–23, 53–65. This failure is critical. Plaintiffs' theory of

4   liability is that Google joins private browsing data to build "complete, cradle-to-grave profile[s] of

5   users," Dkt. 395-2 at ¶ 93, not that Google stores authenticated and unauthenticated data in the same

6   log.

7       Plaintiffs' alternative argument—that ███████████████████████████████ may

8   not "join" but makes it "*easier* to join private browsing data with users' Google accounts,"

9   Thompson Decl. ¶ 37 (emphasis added)—is also incorrect. Plaintiffs fail to address the myriad

10  technical and policy restrictions that Google employs to prevent such joins. Psounis Decl. ¶¶ 48–52.

11  Even independent of those restrictions, overwhelming evidence confirms that authenticated and

12  unauthenticated records cannot be reliably joined using IP address and user agent information as

13  Mr. Thompson suggests; storing data in the same log cannot cure that unreliability.[3] *Id.* ¶¶ 27–47.

14  Moreover, the relevant question has never been whether Google *could* join authenticated and

15  unauthenticated data, but whether it *does*. ██████████████████████████ provides

16  no new information relevant to that question. None of the June Logs is accretive.

## 2.   Google's Voluntary Disclosure of the Long-Defunct ████████████

##      Field Is Not Evidence of Misconduct

19      Plaintiffs do not (and cannot) dispute the key facts surrounding the ████████████

20  field—namely, that ████████████ (i) does not detect private browsing traffic for any browser

21  at issue; (ii) only ever provided an unconfirmable indication that data came from a browser in private

22  browsing mode for the sole purpose of Google's anti-fraud efforts; (iii) stopped functioning for

23  Incognito mode well before Plaintiffs filed suit; and (iv) relied on a well-known "loophole" used by

24  many third-party websites primarily to prevent the use of private browsing modes to bypass

25  paywalls. *See* Dkts. 809-4, 809-5. Although Plaintiffs protest that Google has not provided extensive

26

27

28

---

[3] Plaintiffs' failure to articulate any reason why storing data in a single log makes it more readily joinable than data stored in separate logs further proves that ████████████████████ is non-accretive, since it contains *exactly the same records* as previously disclosed logs. *See* OSC Resp. 10.

information about every log associated with this long-defunct field, they do not even attempt to show that such a burdensome effort would illuminate any issue in this lawsuit. *See* Pls. Br. 9.

Instead, Plaintiffs argue that the field is proof that "throughout this litigation" Google has made "unilateral decisions about what evidence was relevant" and "continues to play umpire." Pls. Br. 13–14. *But the record shows the opposite.* Google's robust investigation determined that ████████ is a defunct field, which would normally "be deprecated in the ordinary course" because it "is no longer useful." Dkt. 809-5 ¶ 7. Instead of following its usual policy, Google maintained the field, affirmatively identified it for Plaintiffs and the Court, sought the Court's permission to deprecate it, placed relevant employees on litigation hold, and offered "to provide any additional information if requested by the Court," including "the source code that operationalized the heuristic." Dkt. 809-4 at 2 & n.2. Plaintiffs agreed that Google could request the Court's permission to deprecate ████████, and Google agreed to give Plaintiffs a significant extension to respond. Dkt. 810-3. Plaintiffs' accusation that Google has "play[ed] umpire" and made "unilateral" decisions about the ████████ field, Pls. Br. 9, 14, is false.

Plaintiffs' claim that Google concealed a way to detect private browsing beyond Chrome is also misleading. *See* Pls. Br. 2, 8–9. ████████ is "broken and ineffective for [all browsers at issue]." Dkt. 809-5 ¶ 6. Even when it did function, the field "could result in both false positives and false negatives, and individual values could not be independently verified." *Id.* ¶ 5. Nor does the field rely on any proprietary or previously unknown method that would suggest the existence of "even more bits based on more heuristics that Plaintiffs will never learn about." Pls. Br. 17. To the contrary, ████████ relied on a well-known and extensively documented heuristic. Dkts. 809-4, 809-5. Even if public sources "did not disclose *Google*'s internal efforts to detect private browsing traffic," Pls. Br. 15 n.3, they did describe the heuristic underlying ████████—and its use as an indicator of private browsing—as well as Google's decision to render it nonfunctional for Chrome well before Plaintiffs filed suit. That Google's witnesses were unaware that anyone at Google had ever used the heuristic, Pls. Br. 15, is only more proof that the field could not reasonably have been uncovered during discovery. *See infra* Section II(A)(3). The field was only ever used for anti-fraud purposes, an area that has never been the focus of discovery.

Case No. 4:20-cv-03664-YGR-SVK
GOOGLE LLC'S REPLY ISO ITS RESPONSE TO
THE COURT'S OCTOBER 27, 2022 ORDER TO SHOW CAUSE (DKT. 784)

### 3.     Google Conducted a Thorough Investigation

Unable to prove that Google withheld anything of significance to their case, Plaintiffs attack the adequacy of Google's investigation into the Incognito-detection bits. Pls. Br. 11–12. But their hindsight-filtered complaints do not demonstrate any discovery violation. To the contrary, Google dedicated immense resources to conduct a multi-method, layered, and robust investigation in response to the Court's May 20 order—including an extensive source code audit and surveys of 125 engineering teams across the globe. *See* OSC Resp. 3–6.

Plaintiffs argue that in focusing its source code search on references to the X-Client-Data header, Google applied an "intentional, self-imposed" limitation "without first seeking any guidance from the court." Pls. Br. 11–12. That is wrong. The Court's May 20 order directed Google to confirm that "other than the logs identified thus far as containing Incognito-detection bits, no other such logs exist," FFCL at 31, and expressly defined "Incognito-detection bits" as the three specific bits that rely on the absence of the X-Client-Data header: "is_chrome_incognito," "is_chrome_non_incognito_mode," and "maybe_chrome_incognito," FFCL at 3. But Google went beyond a technical reading of the Court's order, and searched for *any* use of the X-Client-Data header that might be used to infer private browsing. OSC Resp. 3.

The Court's order did not instruct Google to conduct a broader search, and there was no apparent reason to do so. Using the X-Client-Data header was the method the parties identified to infer Incognito traffic, albeit unreliably. *See* FFCL 8–9. That remains true today. It has long been public knowledge that the heuristic ███████████ used to estimate Incognito no longer functions. *See supra* Section II(B). And although Plaintiffs misleadingly suggest that Google is concealing "client-side signals" for Incognito, Pls. Br. 11, Plaintiffs' extensive discovery of Chrome's client-side signals during the Special Master process identified no signals for the private browsing data at issue. *See also* Spilly Decl. Ex. 12 (3/18/2022 Berntson Tr.) 144:13–145:14 (Google web services do not receive client-side signals regarding private browsing mode); Dkt. 734-4 (McClelland Tr.) at 165:6–18 (same); Dkt. 608-12 (Hochman Rep.) (identifying no client-side signals for private browsing). Indeed, if Google web services *did* receive such signals, there would have been no reason to develop the (unreliable) maybe_chrome_incognito heuristic in the first place.

-7-                                     Case No. 4:20-cv-03664-YGR-SVK

1    Plaintiffs' cavalier suggestion that Google should have simply searched its source code base

2    for all instances of the term "Incognito," Thompson Decl. ¶ 15, makes little sense. Counsel for

3    Google addressed this issue at the April 21, 2022 hearing—explaining that the term "Incognito" is

4    not limited to Chrome browsing and results would be challenging to parse, Dkt. 568 ("4/21/2022

5    Hr'g Tr.") at 139:2–140:4—and the Court did not order Google to conduct such a search. To lay to

6    rest any claim that Google should have undertaken the investigation Mr. Thompson describes,

7    Google submits a declaration explaining that such an audit would be unprecedented, unreasonably

8    burdensome, and impossible to narrow without analyzing more than ████ files—many of which

9    would require identifying and collaborating with the software engineer(s) responsible to understand

10   their significance. Ellis Decl. ¶ 5.

11   Plaintiffs' other claims about ways Google "botched the limited investigation it sought to

12   undertake," Pls. Br. 11, are similarly baseless. Their complaint that Google "limited [its] review to

13   ████ logs," Pls. Br. 12, ignores that Google also ran a comprehensive code search for uses of X-

14   Client-Data header *across all server-side code at Google,* which necessarily would capture code for

15   server-side signals using the X-Client-Data header. And their claim that searching a one-percent

16   data sample over fourteen days is insufficient misses that the validity of a sample does not turn on

17   the sampled percentage, but on whether the sample is representative.[4] Psounis Decl. ¶¶ 68–69.

18   Finally, Plaintiffs are wrong that Google has "refused" to provide the representation ordered

19   by the Court. Pls. Br. 9. To make this claim, Plaintiffs elide the Order's unambiguous text and the

20   Court's observations at oral argument. Dkt. 588 at 6 (limiting the order to "logs . . . containing

21   Incognito-detection bits"); FFCL at 3 (defining "Incognito-detection bits" as the "three fields" at

22   issue in Plaintiffs' prior sanctions motion); 4/21/2022 Hr'g Tr. 140:5–8 ("[O]bviously it's disputed

23   as to whether or not all logs *with the fields we've been talking about* have been produced, and I

24   know Plaintiffs have a view that they have not." (emphasis added)). Google made the ordered

25   representation to the best of its ability on August 18, 2022 and explained why it could not make the

26

27   ─────────────────

     [4] For instance, Pew Research conducts polls to estimate the opinions of all adults in the United States based

28   on random surveys of 1,000 people. *See* https://www.pewresearch.org/fact-tank/2017/05/12/
     methods-101-random-sampling/.

same representation at an earlier date. Dkt. 695-4 at ¶ 6. Plaintiffs' characterization of its conduct as a "refusal to investigate" and a "refusal to comply," Pls. Br. 1, 6 10–11, is baseless.

### B.    Google Has Acted in Good Faith at All Times

Google's conduct proves its good faith: Google readily disclosed the June Logs after Mr. Šrámek concluded his investigation, Dkt. 614-2; candidly acknowledged the limitations on its ability to guarantee the non-existence of other data sources that may be used to infer Incognito mode, Dkt. 695-4 ¶ 7; 4/21/22 Hr'g Tr. 139:2–140:8; and brought the defunct ███████████ field to the Court's attention rather than deprecating it in the ordinary course, Dkt. 809-4. None of these actions is consistent with an intent to violate court orders and conceal evidence.

To argue otherwise, Plaintiffs resort to tenuous inferences from the date Google disclosed ███████████ and a previously litigated email thread from 2021. Neither supports a finding of willful misconduct, and there has been none. Plaintiffs' unsupported claim that "Google intentionally delayed [disclosing ███████████] until after the Court ruled on Plaintiffs' motion for class certification," Pls. Br. 9, is ridiculous.[5] Google could neither have known when the Court would issue its class certification ruling, nor predicted that it would rest on grounds unrelated to class identification. Rather, after identifying a field named ███████████" on the final day of October, Google conducted a detailed investigation into the purpose and functionality of the field, and disclosed it to Plaintiffs once the investigation concluded—a full month before Plaintiffs' response to the Order to Show Cause was due. Dkt. 833-2 (Mao Decl. Ex. 3). Plaintiffs thus had ample time to incorporate their concerns into this briefing process. Dkt. 825.

Nor does a 2021 email thread "demonstrate that Google's discovery misconduct here is by design." Pls Br. 15. At most, the thread reveals that Bert Leung was using the X-Client-Data header to approximate Incognito traffic prior to the submission of Andre Golueke's declaration in November, 2021—*precisely the conduct for which Google has already been sanctioned. See* FFCL at 21. Mr. Golueke's selection as a declarant had nothing to do with Incognito-detection bits.

---

[5] Tellingly, Plaintiffs' characterization of the timeline changes to suit their arguments. Plaintiffs tell the Court Google moved "quickly" to deprecate the field (and "destroy evidence"), but argue on the same page of their brief that Google "intentionally delayed" its actions relating to the field.  Pls. Br. 9.

*See* Pls. Br. 5. As Google has explained, Mr. Golueke was chosen as a declarant because of (i) his expertise in locating documents responsive to discovery requests, and (ii) his existing familiarity with the claims and state of discovery in this litigation. *See, e.g.*, Dkt. 527-14 ¶¶ 1–6. Plaintiffs previously made a materially identical and equally baseless argument that this email chain "may contain evidence of a fraud perpetrated on this Court" because an in-house Google lawyer was copied into the email chain on November 17, 2021 (without participating in the conversation), Dkt. 744-1 at 15, which the Court considered and rejected because there was "no basis for this suggestion," Dkt. 777. The Court should reject it again.

### C.   Plaintiffs Have Not Been Prejudiced

#### 1.   Fact and Expert Discovery

Google's Response demonstrates that the earlier disclosure of the June Logs would have neither aided Plaintiffs in arguing Google's liability nor further focused the discovery process. OSC Resp. 15–19. Since then, the Court denied Plaintiffs' motion to certify a damages class—on grounds unrelated to the feasibility of identifying class members or private browsing data—further cementing the lack of prejudice concerning the Incognito-detection bits. *See, e.g.*, FFCL at 41–42 (concluding that insufficient disclosure of Incognito-detection bits "is primarily related to issues to be decided by the Court [*i.e.*, class certification]," rather than "elements of Plaintiffs' claims").

Plaintiffs are now left to argue that post-discovery disclosure of the June Logs prejudiced them because the logs reveal new ways that Google "stores and uses private browsing data," Pls. Br.  17, but that is belied by the record. From the start of this litigation, Google acknowledged that it receives, stores, and uses private browsing data just like any other unauthenticated browsing data. *See* OSC Resp. 16 n.6. Plaintiffs have embraced this undisputed fact when it suits them. *See* Dkt. 609 ("Pls. Class Cert. Mot.") at 4 ("As Google readily admits, whether 'a user is in private browsing mode does not change the types of data collected' via these Google tracking beacons, which are embedded in over 70% of the most popular websites."); Dkt. 608-11 (Hochmann Supp. Rep.) ¶ 54 ("[A]ll of the private browsing and non-private browsing data [tested by Plaintiffs] w[as] generally collected and used by the same Google services.").

The purportedly "new" uses Plaintiffs now identify ("predict ad revenues," "store data regarding users' interactions with ads related to third-party exchanges," and "analysis and testing," Pls. Br. 13) have been amply explored in discovery and are likewise undisputed:

**Predicting Ad Revenues:** Throughout discovery, Plaintiffs have known and explored in detail how Google uses browsing (and private browsing) data to predict ad revenues. *See, e.g.*, Spilly Decl. Ex. 8 (GOOG-BRWN-00428101, produced July 31, 2021) (███████ revenue impact study); *id.* Ex. 10 (Plaintiffs' 8/27/2021 RFP No. 221 seeking "[a]ll documents and or analyses pertaining to the revenue or profit impact of ███████" and acknowledging documents already produced); *id.* Ex. 7 (GOOG-CABR-04118195, produced Oct. 5, 2021) at -8197 (design document explaining that that ██████████████████████████████████████████████████████████████ ██████████████████████████); Dkt. 370-1 (Pls. 12/31/2021 Mot. for Relief) at 12 (describing "an analysis based on Google's data logs to . . . . quantify how blocking third-party cookies within Incognito would decrease Google's revenues.").

**Third-Party Ad Serving:** Google's production contains thousands of documents describing third-party ad serving and Google's related logging practices. *See* Spilly Decl. ¶ 27; *see also id.* Ex. 4 (GOOG-CABR-0005827, produced Sept. 1, 2021) (design document extensively detailing logging flows for third-party ad exchange bids); *id.* Ex. 5 (GOOG-CABR-04131930, produced October 5, 2021) (presentation entitled "Logging in Display Ads" discussing logging for "██████" and "████," which "allows advertise[r]s to bid on 3rd party exchanges").

**Analysis and Testing:** Plaintiffs' suggestion that they were unaware Google uses private browsing data for "analysis and testing" is contradicted by Plaintiffs' own prior statements and Google's discovery responses. *See, e.g.*, Dkt. 224 (7/21/2021 Case Mgmt. Stmt.) at 10 (Plaintiffs: "[I]nternal Google documents state, 'Cookies in Incognito mode can be valuable to publishers because it helps monetize their site and to advertisers because they can help with the analysis and measurement of their ad campaigns.'"); Spilly Decl. Ex. 9 (10/6/2022 Resp. to Pls. Interrog. No. 1(d)) ("Google also uses data it collects [including data from browsers in Incognito mode] to provide, maintain, and improve its services, as well as develop new services."). Google produced many documents making explicit its use of logs for analysis and testing, including in the very log

types now at issue. *See, e.g., id.* Ex. 7 (design document detailing ████████ log analysis, including that "████████████████████████████████████████████ ████████████████████████████████████████████████████████████████."); *id.* Ex. 6 (GOOG-BRWN-00029182, produced Apr. 16, 2021) ("Quick overview of common logs" identifying and describing test logs).

Google has also been transparent about its use of browsing data in public disclosures. *See, e.g.,* Dkt. 666-13 ("Google uses [browsing information] to deliver our services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on our partners' sites and apps."). And Plaintiffs' own class certification motion touted "overwhelming . . . evidence" that "Google . . . measure[d] which ads lead to 'conversions' (e.g., user purchases) and . . . combine[d] private data with other data to feed Google's 'conversion' prediction models." Pls. Class Cert. Mot. at 20.

Plaintiffs claim that "prejudice is especially pronounced for the new ████ log that combines both private and non-private browsing data" because "Plaintiffs will never know the truth" about whether Google "join[s] private browsing data with 'authenticated' data." Pls Br. 16. But the truth has been firmly established in the declarations, documents, and source code proving that the log at issue does not and cannot join authenticated and unauthenticated data.[6] *See* 11/30 Psounis Decl. ¶¶ 17–21 (Panferov Decl.) ¶¶ 3–5. When Plaintiffs questioned the sufficiency of Google's source code to substantiate its position—baselessly, *see* Psounis Decl. ¶¶ 53–62—Google offered more code to allay their concerns. Spilly Decl. ¶¶ 13–14. Plaintiffs cannot bury their heads in the sand and cry prejudice because they prefer sanctions to the truth.

Google's recent identification of ████████ also caused no prejudice. ████████ cannot identify private browsing for any browser at issue—and the only

---

[6] Plaintiffs' claim that "[r]ounds of unnecessary expert discovery were wasted on a defense refuted by Google's own use of data" is dangerously false. The focus of expert discovery, Plaintiffs' claims, and Google's defenses was whether Google joins authenticated data with private browsing data to identify it with particular users, *not* whether any logs exist that contain (but do not join) authenticated and unauthenticated records.

detection method it "reveals" was publicly known well before Plaintiffs filed suit. Dkt. 809-4. There was thus nothing material for Plaintiffs to discover. *See supra* Section II(A)(2).

### 2. Injunctive Relief

Nor have Plaintiffs been "deprived . . . of information relevant to the injunctive relief" they seek. Pls Br. 17. Plaintiffs' own submissions reveal that they have all the evidence they need to seek classwide injunctive relief at "or . . . in advance of trial." Dkt. 835 (1/23/2023 Case Mgmt. Stmt.) at 1–2. And since the June Logs were disclosed well before summary judgment and trial, the timing of their disclosure has had no effect on Plaintiffs' ability to "fashion and obtain full injunctive relief." Pls. Br. 17. Indeed, Plaintiffs' June 21, 2022 trial plan purported to provide a "roadmap" for trying the case, expressly sought injunctive relief "regarding any additional uses of data" reflected in the June Logs, and raised no deficiencies or claims that other information was missing. Dkt. 608-4 at 18–19; *see also* Class Cert. Mot. 24 ("[U]sing data tagged with Google's Incognito detection bits across [the June Logs] to perform' analysis and testing' such as 'modeling to predict ad revenues' . . . should be addressed through injunctive relief."). Their complaint that "Plaintiffs need to be aware of something before they can ask the Court to order Google to remove it" thus falls flat. Pls. Br. 17. Plaintiffs *are* aware of the June Logs, and *have* asked the Court to apply their requested injunctive relief to "any additional uses of data" reflected therein.

Because ▬▬▬▬▬▬ cannot even approximate private browsing for any class member, it has no bearing on Plaintiffs' proposed injunctive relief—*i.e.*, the deletion of private browsing data and deprecation of services developed or improved with that data. Dkt. 803 at 33–34. Even if ▬▬▬▬▬ *were* material to Plaintiffs' proposed injunction, they are plainly aware of it now, and can incorporate it into any request they make at summary judgment or trial.

Tellingly, Plaintiffs articulate no concrete way additional unidentified discovery would have helped them hone their request. Plaintiffs have used none of the detailed, technical dissection of Google's logs and data sources to fashion injunctive relief—or any relief. Such discovery certainly did not inform Plaintiffs' proposed injunction in their class certification motion: they simply proposed precluding Google from receiving private browsing data, deleting all such data already stored, and deprecating all services developed or improved with such data. Class Cert. Mot. at 24.

### 3. Preservation

Plaintiffs emphasize that the June Logs and ████████████ are not subject to the current preservation order, but they cannot explain why that exclusion is *prejudicial*. The June Logs do not contain accretive data material to Google's liability—and for the most part contain the *exact same* event-level data as logs already being preserved or no class-member data at all. OSC Resp. 7–12. And the long-defunct ██████████ field contains only junk data that would be worthless to preserve. The lack of prejudice is even more apparent now that only injunctive classes have been certified. As Google has explained, preservation of event-level data is neither required for Plaintiffs to litigate their entitlement to the relief they seek nor for Google to implement that relief if Plaintiffs are ultimately successful. Dkt. 817-3. To the contrary, preserving the logs and field at issue would only compel Google to maintain the very data Plaintiffs seek to delete.

### D. Plaintiffs' Proposed Sanctions Are Unwarranted and Inappropriate

#### 1. Terminating Sanctions Are Extreme and Inappropriate Here

Plaintiffs' request for terminating sanctions cannot be squared with the law or the facts of this case.[7] Even if Google had committed *any* new sanctionable misconduct (and it has not), terminating sanctions are appropriate only in the most egregious circumstances—"[w]here a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts." *Conn. Gen. Life Ins. Co v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (quoting *Valley Eng'rs Inc. v. Elec. Eng'g. Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998)). That is far from the case here. *See supra* Section II(C)(1). Google has exhibited none of the "willfulness, bad faith, and fault," necessary to justify terminating sanctions. *Conn. Gen. Life*, 482 F.3d at 1096; *see, e.g.*, *supra* Section II(A)(3) (Google conducted a diligent investigation); Section II(B) (Google has acted in good faith). And each of the five factors courts consider when weighing terminating sanctions weighs against such extreme relief. The first two factors—expeditious

---

[7] As a preliminary matter, terminating sanctions are beyond the scope of the authority delegated to this Court. *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807 (9th Cir. 2022) ("[A] magistrate judge may not issue binding rulings on case-dispositive matters without the parties' consent."); *see also* Dkt. 835 ("The parties have not consented to have a magistrate judge conduct all further proceedings."). Accordingly, the Court cannot enter judgment for Plaintiffs under any of their cited authority. *See* Pls. Br. at 19.

resolution of litigation and the court's need to manage its docket—focus on avoiding undue delay and "get[ting] cases decided on the merits of issues that are truly meritorious and in dispute." *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). If anything is causing delay or detours from the merits, it is Plaintiffs' unwarranted effort to manufacture a discovery violation where none exists and to turn this into a case about sanctions and logs rather than Google's privacy practices. In any event, the case is on track, and the parties have jointly proposed a schedule for the balance of this action. Dkt. 835 at 7. The third factor—the risk of prejudice to the party seeking sanctions—also weighs in Google's favor. There has been no such prejudice, and certainly not enough to warrant a default judgment. *See supra* Section II(C). And the final two factors—"the public policy favoring disposition of cases on their merits" and the "availability of less drastic sanctions," *see Phenylpropanolamine*, 460 F.3d at 1228–29—counsel against termination. Since requesting terminating sanctions, Plaintiffs have asserted that "[a]ll seven of Plaintiffs' legal claims are well supported by the evidence," Dkt. 835 at 1, and reaffirmed their intent to move for summary judgment, *id.* at 3. That Plaintiffs believe the record is sufficient for a merits determination is unsurprising in a case in which the disputed issue is whether Google *disclosed undisputed* conduct (*i.e.*, receipt of private browsing data). As Judge Gonzalez Rogers has acknowledged, the question is whether Google "*surreptitiously*" received the private browsing data, Dkt. 803 at 2 (emphasis added), and the June Logs are immaterial to resolving that question.

Plaintiffs' own authority confirms that Google's conduct does not approach the degree of blatant malfeasance necessary to support terminating sanctions. That type of conduct is exemplified in *Valley Engineers*, where the court imposed terminating sanctions after a party deliberately concealed "smoking gun" evidence, and multiple lawyers and witnesses lied to cover it up. 158 F.3d at 1054–55. Similarly in *Connecticut General*, the sanctioned party *altered court documents* to fabricate an excuse for ignoring an order to compel. 482 F.3d at 1094–96. All other cases Plaintiffs cite concern similarly nefarious conduct, which Plaintiffs cannot allege here.[8]

---

[8] *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (party intentionally destroyed 2,200 files relevant to litigation filed both by and against him); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948–49 (9th Cir. 1993) (party failed to appear for multiple scheduled depositions or provide interrogatory responses, causing sufficient delay that testimony that would have been "the key to the jury's decision" was no longer

### 2.     Further Preclusion Sanctions Are Unwarranted

### a.     Orders Finding Facts or Precluding Arguments Are Inappropriate

Plaintiffs submit a long wish list of arguments they ask the Court either to resolve in their favor or preclude Google from raising.[9] *See* Mao Decl. Ex. 7. They claim to seek only "limited relief, which is crafted to preclude Google from contesting facts that are made clear from Google's submissions," but their proposals sweep far broader. Pls Br. 23. Plaintiffs' proposed sanctions fall into two categories: (1) requests to establish demonstrably false "facts"; or (2) requests to preclude Google from contesting facts it has already admitted. Each should be denied.

Most of Plaintiffs' proposed sanctions fall into the first category: they are soundly belied by the record, as shown below, and would lead the Court into error. Earlier disclosure of the June Logs or ██████████ would not have helped Plaintiffs establish these "findings," many of which have no plausible connection to the alleged misconduct. Plaintiffs' preclusive sanctions are not tailored to remediating supposed prejudice from Google's purportedly late disclosures, but rather are a laundry list of findings often phrased in the precise language of Plaintiffs' causes of action.[10]

| **Proposed Sanction** | **Sanction Is False and Inappropriate** |
|---|---|
| **Plaintiffs' Requests for Findings** | |
| 1. Throughout the class period, Google used multiple processes to identify Plaintiffs' and class members' private browsing activities. | There is overwhelming evidence that Google does not correlate signed-out private browsing data with users' identities. *E.g.*, OSC Resp. 21. |

available); *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 350–52 (9th Cir. 1995) (party "repeatedly lied to Anheuser and to the court" about whether critical documents had been destroyed in a fire); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 590 (9th Cir. 1983) (party sent secret message to its agents undermining an earlier court-ordered message directing compliance with discovery obligations); *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 371–73 (D. Or. 2017) (party deleted thousands of documents and emails shortly after receiving a cease-and-desist letter); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) (party deleted 33,000 presumptively relevant documents after multiple declarants swore to comply with preservation order).

[9] The Court should strike the excess argument in favor of these sanctions in Exhibit 7 to the Mao Declaration. *See supra* footnote 1.

[10] Since certain of Plaintiffs' proposed findings are phrased in the precise language of their causes of action, adopting such findings could be tantamount to entry of a default judgment, which requires a finding of bad faith. *See Network Appliance Inc. v. Bluearc Corp.*, 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005) (where a discovery sanction would "be tantamount to . . . entry of default judgment against a defendant . . . a showing of bad faith is required.").

| | |
|---|---|
| 2. Throughout the class period, Google used multiple processes to detect private browsing activity in at least Chrome, Safari, Edge. | Only one process could infer private browsing in Safari or Edge, and no longer functions for that purpose. Dkt. 809-5. |
| 3. Throughout the class period, Google systematically intercepted, collected, stored, and used Plaintiffs' and class members' private browsing information.<br><br>4. Throughout the class period, Google read and learned the contents or meaning of Plaintiffs' and class members' private browsing communications. | Plaintiffs' attempt to summarily establish their contested Wiretap Act claim should fail. *See* 18 U.S.C. §§ 2511, 2510(4). Google receives private browsing information when users visit websites that choose to install Google services, and the data is both orphaned and unidentified. *E.g.*, 659-3 (Class Cert. Opp.) at 10–11. The proposed sanction is also too broad because the alleged misconduct (*i.e.*, late disclosure of certain logs) is unrelated to "intercept[ion]." |
| 5. Throughout the class period, Google took, copied, and made use of Plaintiffs' and class members['] private browsing data. | For the same reasons, Plaintiffs' attempt to summarily establish the verbatim language of their contested CDAFA claim should also fail. *See* Cal. Penal Code § 502(c)(2). Google has always been transparent that it collects and uses private browsing data just like non-private browsing data, but Plaintiffs are not entitled to a finding that Google's conduct is encompassed by CDAFA's statutory language. The proposed sanction is also too broad because the alleged misconduct is unrelated to "t[aking]" data. |
| 8. Throughout the class period, Google's conduct in terms of collecting, storing, and using Plaintiffs' and class members' private browsing data was highly offensive. | The Court should reject Plaintiffs' attempt to establish elements of their invasion of privacy and intrusion-upon-seclusion claims, especially because "offensiveness" has no relationship to the alleged misconduct. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 601–07 (9th Cir. 2020) (offensiveness pleaded where Facebook associated logged-out browsing with user identities, the opposite of the facts here). |
| 9. In response to multiple court orders, Google withheld relevant information regarding its collection, storage, and use of private browsing data. | As Google's Response and this reply explain, Google has not withheld relevant information. |
| **Plaintiffs' Requests for Preclusion** | |
| 1. Google is precluded from arguing that it has no way of determining how often users use private browsing modes. | Neither the June Logs nor ▓▓▓▓▓▓ suggests that Google can "determin[e] how often users use private browsing modes." Private browsing data is orphaned and unidentified. |

| 2. Google is precluded from arguing that it does not join private browsing data to authenticated data. | The record establishes that Google does not do so. OSC Resp. 21; *supra* II(A)(1). Plaintiffs raise no evidence or inference to the contrary. |
|---|---|

Nor should the Court establish, as a sanction, findings that fall into the second category: facts that Google has transparently admitted since the start of the case. *See* Mao Decl. Ex. 7 at Finding Nos. 6, 7; *id.* at Preclusion Nos. 3, 4, 5, 6; *see also supra* Section II(C)(1). To the extent Plaintiffs need to "preclude Google from contesting facts that are made clear from Google's submissions," they may simply point to Google's public filings; it would be inappropriate to sanction Google by establishing facts it has already admitted, and substituting Plaintiffs' vague and self-serving interpretations of Google's admissions for the admissions themselves.

### b.     Excluding Google's Witnesses Is Inappropriate

Plaintiffs seek to prohibit Google from relying on the testimony of certain employees (should it ever become necessary) just because Google did not identify them during discovery. Mao Decl. Ex. 7 at 5–6. But Google could not have known to identify these employees. Each became relevant only after discovery closed (to oppose Plaintiffs' sanctions motion or to seek leave to deprecate unusable data), and there is no question they need not have been identified otherwise.

***Messrs. Kahlon, Lee, Liu, and Maki***: None of these witnesses had knowledge of the Incognito-detection bits or any other means of inferring private browsing, and there is no other basis to have identified them during discovery. *See* Dkt. 797-7 (Kahlon Decl.) ¶ 7; Dkt. 797-12 (Lee Decl.) ¶ 13; Dkt. 797-15 (Liu Decl. ¶ 7); Dkt. 797-17 (Maki Decl.) ¶ 4.

***Mr. Harren:*** Mr. Harren also had no knowledge of the Incognito-detection bits or any other means of inferring private browsing, Dkt. 797-6 ¶ 4, and Google *did* disclose him on June 16, 2021 as an "employee[] with responsibilities tied to," *inter alia*, "logs . . . containing private browsing information and data derived from private browsing." Spilly Decl. Ex. 11 at 2–3, 12.

***Mr. Šrámek***: Mr. Šrámek is involved here primarily because he conducted the investigation into the Incognito-detection bits—pursuant to Court order—in May and June 2022. Mr. Šrámek is differently situated from the engineers the Court previously excluded because he had no role in developing the Incognito-detection bits before they were disclosed and litigated. FFCL at 4–6, 45.

**Mr. Panferov**: Plaintiffs argue that Mr. Panferov should be excluded because he "has 'personal knowledge' of the ▆▆▆ log that joins unauthenticated data with authenticated data," Pls. Br. 24, but, as explained above, the log does no such thing. *See supra* Section II(A)(1). Google had no reason to disclose Mr. Panferov until it became necessary to rebut Plaintiffs' unfounded claims.

**Ms. Benko**: Google also had no reason to disclose Ms. Benko—an engineer on Google's ▆▆▆▆▆▆▆, which is ▆▆▆▆▆▆▆▆▆ and has never before been relevant to any issue in the case. Once Google learned that this team historically incorporated ▆▆▆▆▆▆ (among many other data elements) ▆▆▆▆▆▆▆, Google disclosed Ms. Benko, provided a factual declaration, and offered additional information at the Court's request.

Rejecting Plaintiffs' overbroad sanction will cause them no prejudice; by contrast, granting it would harshly prejudice Google. Doing so would allow Plaintiffs unfettered latitude to make misrepresentations about the June Logs, Incognito-detection bits, and ▆▆▆▆▆, and take away Google's ability to unmask those untruths with testimony from its most knowledgeable employees. Plaintiffs appear comfortable making representations far beyond—and indeed directly contrary to—what the evidence permits. *See supra* Sections II(A)(1)–(2), (D)(2)(a). Excluding Google's declarants would do the Court a disservice by undermining the accuracy of the factual record. At the very least, Google should be permitted to rely on its witnesses for rebuttal testimony to the extent Plaintiffs put the June Logs, Incognito-detection bits, or ▆▆▆▆▆ at issue.

### c.      No Further Monetary Sanctions Are Warranted

For all the reasons above, no monetary sanctions are warranted. Even if the Court were to disagree, monetary sanctions for violating a court order are limited to the "*reasonable* expenses" actually "*caused by the failure*." Fed. R. Civ. P. 37(b)(2) (emphasis added); *see also Toth v. Trans World Airlines*, 862 F.2d 1381, 1385–86 (9th Cir. 1988). Plaintiffs' multiple rounds of briefing— seeking, *inter alia*, plainly unavailable terminating sanctions and preclusive orders establishing "facts" that are either not in dispute or contrary to voluminous evidence—are out of all proportion with the conduct they challenge. Such expenses are not "caused by [Google's] failure" to provide discovery, but rather by Plaintiffs' overreaching attempts to litigate this entire case on a sanctions motion concerning "a small part of . . . [the] proceedings before the Special Master." FFCL at 32.

1    Moreover, Plaintiffs have demonstrated that they would rather seek sanctions than work with

2    Google in good faith to obtain the truth—which extensive discovery has shown to be far less

3    favorable than the preclusive relief they seek. *See* Spilly Decl. ¶ 25 (Plaintiffs solicited and then

4    ignored Google's offer of additional information about the June Logs); Dkt. 825 (Plaintiffs instead

5    sought more sanctions). Plaintiffs should bear the costs of these choices.

6            The Court should deny Plaintiffs' request for "all fees paid to the Special Master" for similar

7    reasons. Plaintiffs argue that earlier disclosure of the June Logs or ███████████ would have

8    "streamlined" the Special Master process. Pls. Br. 24 n.7 (citing Thompson Decl. ¶¶ 9–22). That

9    contention is entirely unsupported by the declaration Plaintiffs cite and is facially implausible.

10   Issuing discovery rulings concerning a greater number of (immaterial) data sources would have

11   *increased* expenses associated with the Special Master process, not "streamlined" it. But even if

12   Plaintiffs' self-serving speculation were true, it could not justify their request for "all" Special

13   Master fees. *See Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981) (expenses incurred prior to

14   sanctionable conduct not compensable); *Toth*, 862 F.2d at 1386 (expenses that would have been

15   incurred regardless of sanctionable conduct not compensable). As the Court has already held, "data

16   relating to Incognito-detection bits [is] but a small part of a complex process spanning nearly a year

17   of proceedings before the Special Master," and "it is neither possible nor practicable to quantify

18   either the temporal or monetary impact of these particular issues on the greater process before the

19   Special master."). FFCL at 32. No monetary sanctions are warranted here.

20   **III.   <u>CONCLUSION</u>**

21           For the foregoing reasons, Google respectfully submits that no further sanction is warranted.

22

23

24

25

26

27

28

1    DATED:  February 10, 2022          QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
2

3                                       By:  */s/ Andrew H. Schapiro*
                                             Andrew H. Schapiro (admitted *pro hac vice*)
4                                            andrewschapiro@quinnemanuel.com
                                             Teuta Fani (admitted *pro hac vice*)
5                                            teutafani@quinnemanuel.com
                                             Joseph H. Margolies (admitted *pro hac vice*)
6                                            josephmargolies@quinnemanuel.com
                                             191 N. Wacker Drive, Suite 2700
7                                            Chicago, IL 60606
                                             Telephone: (312) 705-7400
8                                            Facsimile: (312) 705-7401

9
                                             Stephen A. Broome (CA Bar No. 314605)
10                                           stephenbroome@quinnemanuel.com
                                             Viola Trebicka (CA Bar No. 269526)
11                                           violatrebicka@quinnemanuel.com
                                             Crystal Nix-Hines (CA Bar No. 326971)
12                                           crystalnixhines@quinnemanuel.com
                                             Alyssa G. Olson (CA Bar No. 305705)
13                                           alyolson@quinnemanuel.com
                                             865 S. Figueroa Street, 10th Floor
14                                           Los Angeles, CA 90017
                                             Telephone: (213) 443-3000
15                                           Facsimile: (213) 443-3100
16

17                                           Diane M. Doolittle (CA Bar No. 142046)
                                             dianedoolittle@quinnemanuel.com
18                                           Sara Jenkins (CA Bar No. 230097)
                                             sarajenkins@quinnemanuel.com
19                                           555 Twin Dolphin Drive, 5th Floor
                                             Redwood Shores, CA 94065
20                                           Telephone: (650) 801-5000
                                             Facsimile: (650) 801-5100
21

22                                           Josef Ansorge (admitted *pro hac vice*)
                                             josefansorge@quinnemanuel.com
23                                           Xi ("Tracy") Gao (CA Bar No. 326266)
                                             tracygao@quinnemanuel.com
24                                           Carl Spilly (admitted *pro hac vice*)
                                             carlspilly@quinnemanuel.com
25                                           1300 I. Street, N.W., Suite 900
                                             Washington, D.C. 20005
26                                           Telephone: 202-538-8000
                                             Facsimile: 202-538-8100
27

28

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
D. Seth Fortenbery (admitted *pro hac vice*)
sethfortenbery@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*