# DECLARATION OF STEVEN ELLIS

# Redacted Version of Document Sought to be Sealed

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, et al., individually and on behalf of all similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 4:20-cv-03664-YGR-SVK |

**DECLARATION OF STEVEN ELLIS**

1.  I am a Technical Advisor and have been at Google LLC since 2012. Prior to joining Google, I spent more than 20 years in software engineering. I have extensive experience working on embedded networking devices and hold a Bachelors in Computer Science from MIT and a Masters in Computer Science from Stanford University. I make this declaration based on my personal knowledge of source code matters at Google and, if called as a witness, could and would competently testify to the facts contained herein.

2.  As a Technical Advisor, my role is to assist Google Legal teams with technical issues that arise in litigation and related matters. As part of my responsibilities I manage the identification, collection, review, and production of source code for litigation-related matters. I understand that Google is involved in the above-captioned litigation brought by private Plaintiffs.

**Mr. Thompson's Proposal For Searching Source Code Is Not Feasible.**

3.  I have reviewed the declaration of Plaintiffs' expert witness, Mr. Thompson, in which he opines that "source code analysis related to this case necessarily should have begun with the term 'incognito' as a search term. Even if that initial search generated a large number of 'hits', a conscientious reviewer would review the results, look for patterns, and identify ways to reduce the irrelevant information to improve the quality of the search results."[1]

---

[1] (Dkt. 833-2) ("Thompson Decl.") ¶ 15.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

4.      Typically, requests for source code in litigation identify a particular functionality at a specific point in time for which the source code is needed. Here, by contrast, Mr. Thompson's proposal is exceedingly broad and vague. Google's core code base contains more than ▇▇▇▇ lines of code and differs by product. What appears to be one functionality externally may have been developed by a large number of internal teams, each of which develops their piece of the functionality independently of each other. The string "incognito" in Google's code base may refer to different functions and products, or simply instruct engineers to use a browser in "incognito" mode to test specific functions unrelated to Chrome or web browsing.

5.      Finding source code at Google requires identifying and working with individual engineers who work on the functionality of interest to conduct iterative searches. In my experience, Google does not identify source code relevant to litigation by conducting simple keyword searches of common words because the returned results are too large for an effective investigation. A search for the string "incognito" across Google source code base yields more than ▇▇▇▇▇▇ files.[2] Separating relevant from irrelevant results is no trivial exercise. Given that "incognito" can refer to different functions and products and could just be a word that happened to be used in a comment, Mr. Thompson's suggestion requires parsing and manually investigating search results hitting on "incognito" to determine whether any of them lead to a data source that contains responsive information.

6.      Source code is often dense, complex, and difficult to understand, even for a trained Google engineer, unless the engineer has expertise in the product at issue. To properly investigate different hits from a keyword search of Google's code base requires, in many cases, conferring with the engineer(s) responsible for the code. This task cannot be delegated to contract reviewers, due to the sensitivity and confidential nature of our code base, and the scarcity of reviewers who would be technically qualified to conduct such a review. I am unable to accurately estimate the time burden, because even identifying which engineer is responsible for each portion of code containing a hit entails an additional manual process, which could take days to weeks of time by itself. I am not aware of any tool available to Google designed to answer a question of this magnitude.

---

[2] The results of the "Incognito" search are attached to this declaration as Exhibit A.

DocuSign Envelope ID: 5F95E471-81A5-4F00-B763-BCAB33B84C6A

**Mr. Thompson's Proposal For Investigating ▇▇ And ▇▇ Protos Is Not Realistic.**

7. In his declaration, Mr. Thompson also opines that Google should have analyzed the ▇▇▇▇▇▇ ("▇▇") and ▇▇▇▇▇▇ proto (▇▇), as well as all of the logs that draw on those protos, in its investigation of the maybe_chrome_incognito field.³ Mr. Thompson's suggested investigation methodology is unworkable due to the size and complexity of these protos. ▇▇ stands for ▇▇▇▇▇▇ and practically all of Google's web services—such as Google ChromeCast, Google Calendar, Google Payments, Android OS—use the ▇▇ proto. ▇▇ stands for ▇▇▇▇▇▇ and is ▇▇▇▇▇▇.

8. Log protos, such as ▇▇ and ▇▇, consist of multiple levels of imported files. To illustrate, on the first level, log alpha may import files A, B, and C. In turn, files A, B, and C may import a second level of files D, E, and F. Files D, E, and F may import a third level of files, and so on. Just the first level of the ▇▇ proto imports ▇ files. There are ▇ additional imported files at the second level of the ▇▇ proto, and ▇ additional files at the third level. For just the first 3 levels (there are many more levels of imports) that is more than ▇ files and ▇ lines. Repeating this same exercise for the ▇▇ proto (again limiting to 3 levels of imports) yields more than ▇ lines.⁴ This would be an enormous and unmanageable review task.

9. The ▇▇ and ▇▇ protos are used for ▇▇▇▇ of logs at Google, and they each may contain ▇▇▇ or ▇▇▇ of fields. Reviewing the fields in all of these logs would similarly be a daunting and unmanageable task.

10. Further, to search for how and whether any piece of code has changed over the last several years—as Mr. Thompson's proposed method requires—is exponentially more difficult. In the last five years, there have been more than ▇▇▇▇ changes to Google's core codebase.⁵ Considering only the top layer of the ▇▇ and ▇▇ protos—and none of the files these protos

---

³ Thompson Decl. ¶ 15.
⁴ The script and results approximating imported files in the ▇▇ and ▇▇ protos are attached to this declaration as Exhibit B.
⁵ The results showing code changes in Google's core codebase are attached to this declaration as Exhibit C.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

import—there have been more than ▇▇▇▇ changes to these files from June 1, 2020 to Nov 29, 2022.[6]

11. In my eleven years of experience, reviewing the magnitude of code suggested by Mr. Thompson is unprecedented at Google in response to any litigation request.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 9th day of February, 2023 at Mountain View, California.

By: /s/ Steven Ellis
Steven Ellis

---

[6] The results showing code changes to ▇▇▇ and ▇▇▇ protos are attached to this declaration as Exhibit D.

4

Case No. 4:20-cv-5146-YGR-SVK
DECLARATION OF STEVEN ELLIS