UNITED STATES DISTRICT COURT      *ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

CHASOM BROWN, WILLIAM BYATT,)        **Further Case Management**
JEREMY DAVIS, CHRISTOPHER   )        **Conference**
CASTILLO, and MONIQUE       )
TRUJILLO, individually and  )
on behalf of all similarly  )
situated,                   )
                            )
          Plaintiffs,       )
                            )
  vs.                       )        NO. C 20-03664 YGR (SVK)
                            )
GOOGLE LLC,                 )        Pages 1 - 56
                            )
          Defendant.        )        Oakland, California
_____)        Tuesday, February 14, 2023

<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>

**APPEARANCES:**

For Plaintiffs:          Boies Schiller Flexner LLP
                         333 Main Street
                         Armonk, New York  10504
                    BY:  DAVID BOIES, ATTORNEY AT LAW

                         Boies Schiller Flexner LLP
                         44 Montgomery Street, 41st Floor
                         San Francisco, California  94104
                    BY:  HSIAO C. (MARK) MAO,
                         BEKO REBLITZ-RICHARDSON,
                         MADISON BOWER, ATTORNEYS AT LAW


              (Appearances continued next page)

Reported By:        Raynee H. Mercado, CSR No. 8258


    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

# A P P E A R A N C E S (CONT'D.)


For Plaintiffs:          Morgan & Morgan
                         Complex Litigation Group
                         201 N. Franklin Stret, 7th Floor
                         Tampa, Florida  33602
                  BY:    RYAN J. MCGEE,
                         JOHN YANCHUNIS, ATTORNEYS AT LAW

                         SAMUEL ISSACHAROFF, ATTORNEY AT LAW
                         40 Washington Square South
                         Suite 411J
                         New York, New York  10012

                         Susman Godfrey L.L.P.
                         1900 Avenue of the Stars, Suite 1400
                         Los Angeles, California  90067
                  BY:    AMANDA K. BONN, ATTORNEY AT LAW


For Defendant:           Quinn, Emanuel, Urquhart & Sullivan
                         500 West Madison Street, Suite 2450
                         Chicago, Illinois 60661
                  BY:    ANDREW H. SCHAPIRO, ATTORNEY AT LAW

                         Quinn, Emanuel, Urquhart & Sullivan
                         865 S. Figueroa Street, Floor 10
                         Los Angeles, California  90017
                  BY:    STEPHEN A. BROOME,
                         VIOLA TREBICKA, ATTORNEYS AT LAW




                         --o0o--

```
 1   Tuesday, February 14, 2023                    9:02 a.m.
 2                    P R O C E E D I N G S
 3                         --o0o--
 4
 5        THE CLERK:  Now calling civil case 20-3664-YGR,
 6   Brown, et al. versus Google, LLC, et al.
 7      Counsel, if you'd please approach the podiums and,
 8   starting with the plaintiff, state your appearances for the
 9   record.
10        MR. BOIES:  Good morning, Your Honor.  David Boies of
11   Boies Schiller & Flexner representing the plaintiff.
12        THE COURT:  Good morning.
13        MR. ISSACHAROFF:  Good morning, Your Honor.  Samuel
14   Issacharoff for the plaintiffs also.
15        THE COURT:  Good morning.
16        MS. BONN:  Good morning, Your Honor.  Amanda Bonn
17   with Susman Godfrey for the plaintiffs.
18        THE COURT:  Okay.  Hold on, Ms. Bonn.  I'm looking
19   for your name.
20      You're with which firm again?
21        MS. BONN:  Susman Godfrey.
22        THE COURT:  Amanda Bonn.
23        MS. BONN:  Correct.
24        THE COURT:  B-O-N-N, from Los Angeles.
25        MS. BONN:  Yes, Your Honor.  Thank you.
```

```
 1            THE COURT:  Great.  Thank you.

 2            MR. YANCHUNIS:  Good morning, Your Honor.  John

 3    Yanchunis for the plaintiffs.  I'm with the law firm of Morgan

 4    Morgan.

 5            THE COURT:  Great.  Thank you.  Good morning.

 6            MR. McGEE:  Good morning, Your Honor.  Ryan McGee,

 7    also with the law firm of Morgan and Morgan, for the

 8    plaintiffs.

 9            THE COURT:  Okay.  I see.  Great.  Good morning.

10            MR. MAO:  Lastly, Your Honor.  Mark Mao, Boies

11    Schiller Flexner, for the plaintiffs.

12            THE COURT:  Mark.

13            MR. MAO:  Good morning.

14            THE COURT:  Good morning.

15       Still looking for you.  I see you here.  Okay.  Good

16    morning.

17       And we've got two other people back there.

18            MR. REBLITZ-RICHARDSON:  Good morning, your Honor,

19    Beko Reblitz-Richardson, Boies Schiller Flexner.

20       And I'll let Madison introduce herself as well.

21            THE COURT:  Okay.

22            MS. BOWER:  And Madison Bower, Boies Schiller Flexner

23    as well.

24            THE COURT:  Good morning.

25       All right.  For the defense?  Looks like a smaller group.
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

 1          Mr. Shapiro, good morning.

 2          **MR. SHAPIRO:**  Good morning, Your Honor.  Andrew

 3   Shapiro from Quinn Emanuel for Google.

 4          **THE COURT:**  Good morning.

 5          **MR. BROOME:**  Good morning, Your Honor.  Steven Broome

 6   from Quinn Emanuel for Google.

 7          **THE COURT:**  I was going to guess, but thank you for

 8   reminding me.

 9          **MR. BROOME:**  Thank you.

10          **MS. TREBICKA:**  Good morning, Your Honor.  Viola

11   Trebicka, Quinn Emanuel, for Google.

12          **THE COURT:**  Okay.  Good morning.

13       Okay.  Who's going to be leading on each side?

14       Come to the mics, sir.

15       And on the defense?

16          **MR. SHAPIRO:**  I think, Your Honor, it's --

17          **THE COURT:**  Mr. Shapiro, you know better than to talk

18   without being at the mic.

19          **MR. SHAPIRO:**  Your Honor, I think it depends what

20   we're here for, but I suppose I will take the lead and we'll

21   see what --

22          **THE COURT:**  Okay.

23          **MR. SHAPIRO:**  -- questions you'll ask.

24          **THE COURT:**  We're going to do a number of things

25   today.  First thing we're going to deal with is scheduling.

```
1          So do I have the right people?
2              MR. SHAPIRO:  I think so.
3              MR. BOIES:  I think so.
4              THE COURT:  All right.  So we're going to do a couple
5      of things.
6          One, I want to talk about scheduling.
7          Second, I want to talk about a stipulation that you filed
8      almost a year ago that I haven't ruled on, but I was cleaning
9      up the docket so I want to talk about that with respect to
10     documents.
11         And then third, I'll take argument on the pending motion.
12         So I won't have an order for you right now, but we'll take
13     argument since you're all here.
14         You're looking confused, Mr. Shapiro.  There's a motion
15     for --
16             MR. SHAPIRO:  Yes, is this the American Pipe tolling
17     motion?
18             THE COURT:  Yes.
19             MR. SHAPIRO:  Because that -- I'm not positive we are
20     prepared to argue that since it's on the calendar for
21     February 28th to be argued, but we'll -- obviously we're at
22     the Court's disposal and we'll do what we can.
23             THE COURT:  Well, on the 28th I will be in trial, so
24     it's not clear to me that I will take argument.  If I need it,
25     I'll ask for it.  Today is your opportunity.
```

1          **MR. SHAPIRO:**  Thank you, Judge.

2          **THE COURT:**  Okay.  So on scheduling, one of the

3     reasons I wanted to talk to you is because this case, like

4     others, you all can't agree on much.  And, you know, you're

5     constantly in front of the magistrate judge, there's constant

6     disputes.

7          My trial calendar, especially in the fall, is tight.  And

8     as a consequence, we are not going to have the dates that

9     you've put here because it's not -- I am not going to scramble

10    24/7 leading up to a trial.  We are going to do this in a way

11    that makes sense and that gives me and others the appropriate

12    amount of time to address any concerns you have.

13         So that's one of the reasons why I wanted to talk to you.

14         I know that you've got this motion for summary judgment as

15    well.  So let me -- let's start there.  That's the first thing

16    on your scheduling.

17         Mr. Shapiro, what are you bringing summary judgment on?

18         **MR. SHAPIRO:**  Your Honor, Mr. Broome is probably best

19    situated to address that because he's been living with it.

20         But we have, we think, very solid defenses on each of the

21    statutory claims.  The disclosure at issue was not even in

22    place during a substantial time period that the -- during a

23    substantial portion of the class period here.  And we believe

24    that the disclosure is adequate and that there is no basis for

25    injunctive relief.

1              **THE COURT:**  Mr. Broome, do you want to come and

2   address it more specifically?

3              **MR. BROOME:**  Yes, Your Honor.  Are you looking for a

4   summary of the arguments we intend to make at summary

5   judgment?

6              **THE COURT:**  I am.

7              **MR. BROOME:**  Yes.  We'll be making an argument that

8   there was express consent because the privacy policy, as Your

9   Honor held in *Calhoun*, discloses the data collection.  It's

10  the same data collection.  And that there is no --

11             **THE COURT:**  And it's the same provisions, isn't it?

12  Because the difference between this case and that case, the

13  absolute critical difference, is that here they were incognito

14  mode, there they were not.

15             **MR. BROOME:**  Correct.  But there is no -- no

16  representation and plaintiffs cannot cite to any

17  representation in any Google document that says that data

18  collection is not going to occur in incognito mode.

19             **THE COURT:**  Who is going to take the lead on summary

20  judgment for the plaintiffs?

21             **MR. BOIES:**  Your Honor, I think it will depend on the

22  particular issue --

23             **THE COURT:**  Okay.

24             **MR. BOIES:**  -- involved.

25             **THE COURT:**  How about consent?

```
 1            MR. BOIES:  I'm prepared to do that.

 2            THE COURT:  Okay.  So what's your response?

 3            MR. BOIES:  First of all, we think that the Google

 4    disclosures and the statements by Google make clear that when

 5    you are in incognito mode, that the privacy is going to be

 6    protected.  And we've cited a number of documents from Google

 7    itself that demonstrate that Google interpreted it the same

 8    way.

 9       This is not just our interpretation of what Google said.

10    This is what Google internally has said.  They've described

11    their statements to consumers as a, quote, lie, close quote.

12    That's not our statements.  That's Google's statement.

13    They've described it as mis- -- quote, misleading, close

14    quote.  Again, that's not our statement, that's Google's

15    statement.

16       So we think -- we think the evidence is quite clear that

17    the statements in the documents that they cite do not protect

18    them from the conduct that they engaged in.

19            THE COURT:  Okay.

20            MR. BROOME:  May I respond, Your Honor?

21            THE COURT:  You may, Mr. Broome.

22            MR. BROOME:  Yeah, with respect to internal

23    documents, I mean we can brief this, but we do think that

24    those documents are being taken out of context.

25       Ultimately it doesn't really matter what Google says
```

1  internally because Your Honor can look at the disclosures that

2  consumers saw for yourself, and you can -- you've already held

3  in *Calhoun* that this very data collection is indeed disclosed

4  in the Google privacy policy and in the account holder

5  agreements.

6       And then the question --

7            **THE COURT:**  You know, Mr. Broome, I knew about this

8  case when I wrote that order.  And I think your battle is

9  tougher than you may think it is.

10           **MR. BROOME:**  I understand that, Your Honor.  But

11 there is no statement in the privacy policy or in the

12 incognito screen that says this data collection is not going

13 to occur in incognito mode.  That's not what it says.

14      And the disclosures that the plaintiffs cite as part of

15 their contract actually walk through the process and the

16 function of incognito mode, explain exactly what it does, and

17 how it provides privacy.

18      And there is no dispute in this case that it provides the

19 functionality, the privacy functionality that is explained in

20 the disclosures.  And we believe Your Honor will side with us

21 on that issue when you see us -- once we've briefed it.

22           **THE COURT:**  All right.  Any response on that topic?

23           **MR. BOIES:**  Not any additional response, Your Honor.

24           **THE COURT:**  All right.

25      What next?  Mr. Broome?

1      **MR. BROOME:**  Yes.  On the federal wiretap claim, Your

2      Honor is familiar with this issue, but the -- that claim

3      should be dismissed because the -- there's no -- the data

4      that's being collected is not the contents of a communication.

5      We argued that before Your Honor at the class cert phase as

6      well.

7          I think we have very strong Ninth Circuit case law.  The

8      *Zynga* case holds that these types of transmissions, these

9      resource requests to third party website -- from third party

10     websites to Google servers that provide the services are not

11     contents, they're URLs.

12         And the Ninth Circuit has made clear in *Zynga* that URLs

13     are not contents, they're akin to a -- just it's a -- a

14     location of the page on the web.

15             **THE COURT:**  All right.  A response from plaintiffs.

16             **MR. BOIES:**  Your Honor, with the Court's permission,

17     Mr. Mao will give that response.

18             **MR. MAO:**  Your Honor, if you recall, we did argue

19     this in front of you during the class cert, and we pointed to

20     a number reasons why content is at issue in the case.

21         First of all, there are search parameters and search terms

22     that make it into the communications.

23         Second of all, we have alleged that the full URL with the

24     subfolders would show you exactly what page is being requested

25     and being sent.  Contents of the communication in which Google

1    describes the pages as is exactly also at issue in the case.

2        And in addition, Your Honor, recall we also pointed out

3    that what's communicated is that the user does not want to be

4    identified and does not want to be known.

5        That is a specific parameter which is at issue in the case

6    in each and every one of these communications.  That was

7    something which we raised during the class cert hearing.  And

8    we believe that Your Honor agreed with us on that issue, and

9    we believe that that issue has already been addressed.

10        **MR. BROOME:**  I actually have what Your Honor's

11    responded to Mr. Mao's argument.

12        You said that is -- relates to the nature -- the privacy

13    aspect of it relates to the nature of the communication as

14    opposed to the content of the communication.

15        So I don't think -- well, I mean, Your Honor can decide

16    for yourself whether you agreed with it, but I don't think

17    that what Mr. Mao said is accurate.

18        But again we have very clear Ninth Circuit case law, the

19    *Zynga* case, that says URLs are not content.  And with respect

20    to search terms, there's no evidence in the record that search

21    terms are routinely collected in these -- with these resource

22    requests.

23        So I'm not sure what plaintiffs intend to point to, but,

24    you know, that will have to be something that's briefed.

25        **THE COURT:**  Okay.  What next?

1        **MR. BROOME:**  Okay.  We have also for the wiretap

2   claim, we have the fact that the websites obviously consented.

3   The federal wiretap claim is a two-party -- sorry -- it's a

4   one-party consent rule.  So the consent of the websites that

5   are using Google services is sufficient to defeat the wiretap

6   claim.

7        You know, obviously tech savvy engineers and IT managers

8   who developed the websites know what's happening with this

9   technology.  They understand that in order for the service to

10  display on their site that there has to be a resource request

11  going to Google servers.

12       **THE COURT:**  Mr. Mao.

13       **MR. MAO:**  Just quickly, Your Honor.

14       As we had argued and Your Honor had pointed out, the

15  representations of a third party do not waive or change the

16  promises made by Google directly to the users in terms of what

17  happens during private browsing.

18       In addition, Your Honor, we also will point out if -- that

19  not only was that already defeated in the motion to dismiss

20  hearing, but subsequent to those actions, Google has since

21  tried to modify their privacy policy to address this issue to

22  say that, you know, what happens if there is a representation

23  on a website.  This is not something which they did before.

24       **THE COURT:**  So, Mr. Mao, I'm not sure that you can

25  rely on post allegation proceedings from an evidentiary basis

 1    because the law actually encourages people to change their

 2    conduct.

 3              **MR. MAO:**   While I can appreciate that, Your Honor, I

 4    do think that you can just see from the contrast of that

 5    language how the prior disclosures certainly did not disclose

 6    that Google is saying that somehow there is a third party

 7    contract incorporation into what they made directly in writing

 8    in terms of their promises to their users.

 9              **THE COURT:**   All right.  Any response?

10              **MR. BROOME:**   Honestly I'm not sure I follow the

11    argument.  I -- to be -- Your Honor, it's -- it's not a

12    contract question.  It's a question of whether the websites

13    understood that -- that when they installed the Google service

14    on their website that the transmission was going to Google.

15    If they did, then they clearly consented to the conduct.

16         And there's not a scrap of evidence indicating that --

17    that websites were, you know, uniformly deceived.

18              **MR. MAO:**   Just real quickly, Your Honor.

19         On that, with regard to the one-party consent defense,

20    that is subject to an exception to the exception.  In the

21    motion to dismiss order, that was something -- in the motion

22    to dismiss briefing, that was something which we addressed,

23    and the Court agreed, which is that the conduct here at issue

24    that websites did not either consent or lawfully consent is

25    such that they would fall under that exception.

1          **THE COURT:**  Okay.  Everybody remember the procedural

2     posture, right?  We're no longer at a motion to dismiss.  So

3     aside from the legal issues, the question is do you have facts

4     to support the allegations that you made in the first

5     instance?  But we'll figure that out.

6          **MR. MAO:**  Yes, I was going to say we do, Your Honor.

7     And that exception to the exception relies upon what Google is

8     actually doing with that data.

9        And we would also point out that for the purposes of what

10    has arisen during the sanctions in the discovery process is

11    that Google refuses to disclose what they're doing with the

12    incognito collected data.

13       And therefore for them to argue that they somehow can

14    bypass the exception to the exception which analyzes the way

15    in which Google uses the data seems to have -- be an argument

16    in which Google wants to have their cake and eat it too, Your

17    Honor.

18          **THE COURT:**  Other topics?

19          **MR. BROOME:**  Pardon me?

20          **THE COURT:**  Other topics.

21          **MR. BROOME:**  Other topics.  Okay.

22       Finally on the federal wiretap claim, there's an ordinary

23    course of business exception.  That's section 2510(5) which

24    exempts from the definition of a device any device that is

25    being used by a provider of wire or electronic communication

1    service in the ordinary course of business.

2        And here the device that is causing the interception is

3    the Google scripts that are embedded in the website's code.

4    The whole purpose of those scripts is to facilitate a business

5    purpose.  Right?  I mean the purpose of those scripts is to --

6    so that the website can benefit from whatever Google services

7    they've chosen to implement.

8        So we believe there's a very strong ordinary course of

9    business exception argument there.

10           MR. MAO:  We believe that's well established under

11   the case law where Google has lost on this issue multiple

12   times in multiple cases that this is not under the ordinary

13   business exception, Your Honor.

14           MR. BROOME:  This issue --

15           THE COURT:  And when you say that, have they lost

16   only at the district court or have they lost at circuit

17   courts?

18           MR. MAO:  Your Honor, I would have to research that a

19   little bit more in order for me to make an accurate

20   representation to Your Honor.  I don't want to stress [sic]

21   you on the fly.

22           THE COURT:  The difference, right, is when a

23   persuasion versus binding nature.

24           MR. MAO:  I understand, Your Honor.  But this is not

25   an ordinary course of business because generally that applies

1      for the purposes of the website itself.

2          And from what I can recall in the case law on the spot,

3      Your Honor, and even from the facts here, that they're using

4      the incognito and the private browsing data for their own

5      purposes and not for the purposes of the website.  Right?

6          That's something that's very well briefed not only in the

7      examples and documents that we have used, for example, the

8      unjust enrichment damages which we've shown where Google was

9      discussing how much they will lose in terms of their own money

10     and their own revenue if they actually had to try to adjust

11     for these practices to make it accurate, right?  The billions

12     that we've talked about.

13         Your Honor, I believe even without further research to

14     case law, just looking at the statute you can see that that

15     takes it out of the ordinary course of business.

16          **MR. BROOME:**  Your Honor, the only case that I'm aware

17     of that's addressed this issue is the motion to dismiss

18     decision by Judge Koh.

19         And we believe we can persuade Your Honor that in fact the

20     ordinary course of business exception applies here.  We think

21     it's actually pretty clear if you just follow the language of

22     the statute.

23          **THE COURT:**  She is on the Ninth Circuit now.

24          **MR. BROOME:**  Understood.

25          **THE COURT:**  All right.

1    Next?

2         **MR. BROOME:**  With respect to the CIPA claim, Your

3    Honor, that's the section 631 claim, count two, again, we

4    would make the argument that the at issue data is not

5    contents.  So I won't belabor that point.

6         We'd also argue that plaintiffs and the websites consented

7    to Google's receipt of the at issue data.  I won't belabor

8    that point either because it really comes back to did

9    plaintiffs consent and did the websites consent.

10        With respect to the CIPA 632 claim, this is the

11   eavesdropping on or recording confidential communications.

12   The argument there, Your Honor, is that these online

13   communications, there's just -- it's decision after decision

14   has held that online communications are not confidential

15   because for a communication to be confidential, the user has

16   to believe that nobody is recording it or -- or no other third

17   party is recording it or listening in.

18        And here we have every time you go incognito, the NTP OR

19   what we call -- what we've all been calling the splash screen

20   pops up and it says your activity may be visible to your ISP,

21   your -- the websites you visit, the -- your employer or your

22   school.  That's clearly not a confidential communication.

23        **THE COURT:**  Okay.

24        Sir.

25        **MR. MAO:**  Sorry, Your Honor.  I was waiting to see if

```
 1    you want to have a drink first.

 2              THE COURT:  Go ahead.

 3              MR. MAO:  So, Your Honor, probably the argument in

 4    the example in which counsel tries to bring up here, is the

 5    best illustration and counter as to why this argument makes no

 6    sense.

 7        This is a case about private browsing mode including

 8    Google's own private browsing mode where the communication is

 9    clearly I don't want anybody looking at and understanding what

10    I am communicating and requesting from the website in terms of

11    specific pages, I'm looking in the secret, not known, private,

12    incognito.

13        If Google's argument is that somehow by me doing anything

14    in this private space in which I'm being told that I am

15    supposed to be in is somehow knocked out of the private space

16    and that therefore I'm not requesting specific pages from a

17    website, that is an -- that is a silly argument that turns the

18    representation made by Google on its own head.

19        So I think this is squarely an argument that makes

20    absolutely no sense, Your Honor.

21              MR. BROOME:  May I respond, Your Honor?

22              THE COURT:  You may.

23              MR. BROOME:  If you just look at the -- Mr. Mao is

24    trying to change the law.  If you look at the statute itself,

25    it requires a confidential communication.  And then
```

1    section 632(c) defines confidential communication and excludes

2    therefrom a communication made under, quote, any circumstance

3    in which the parties to the communication may reasonably

4    expect that the communication may be overheard or recorded.

5    Quote.  End quote.

6        That -- that means if any -- if the -- if either party to

7    the communication has a reasonable expectation that that

8    communication may be overheard or recorded by anyone, it

9    doesn't meet the definition of the statute.

10       And again, we have the splash screen saying this provides

11   privacy from other people who may use your device.  It doesn't

12   provide complete privacy because there are a host of other

13   entities that may see your activity.

14           **THE COURT:**  Okay.

15           **MR. BROOME:**  That doesn't meet the definition of the

16   statute.

17           **THE COURT:**  Let me ask you, count 1, the Federal

18   Wiretap Act, is that -- if it survives, you're entitled to a

19   jury trial?

20           **MR. BOIES:**  Your Honor, I don't know the answer to

21   that question.  I apologize.

22           **THE COURT:**  Do you know the answer?

23           **MR. BROOME:**  I don't believe so, Your Honor, if

24   they're just seeking injunctive relief.

25           **THE COURT:**  With respect to any claim at this point,

1   because I've only certified an injunctive relief class, are

2   you entitled to a jury trial with respect to factual issues?

3          **MR. BOIES:**  Your Honor, I think that is a complicated

4   question.  And I apologize.

5          **THE COURT:**  That's why I asked it to you.

6          **MR. BOIES:**  Because of the Seventh Amendment, and

7   because we have class representatives who will have damage

8   claims even though the (b)(3) class was not certified, there

9   is an issue as to the order in which overlapping factual

10  issues can be decided.

11      In addition to that, there may be issues in terms of what

12  the scope of certain injunctive relief is with respect to

13  things like disgorgement.

14      But I think there are ways that we can -- we can deal with

15  these issues.  I think that it would be -- it would be

16  possible to have a jury trial on the individual claims that

17  preceded the injunctive relief trial on the certified (b)(2)

18  class.

19      I think it would also be possible to perhaps have a

20  situation -- and I don't know whether the class representative

21  or any of the class representatives would be prepared to do

22  this, but if a class -- if one or more class representatives

23  were prepared to waive their damages claim, then they could be

24  class representative just for the injunctive relief case and

25  that could go forward.

 1          Another possibility would be to -- I mean you don't

 2     actually need -- for an injunctive relief, you don't actually

 3     need a (b)(2) class.  You could have an individual plaintiff

 4     go forward.  But, again, it would have to be an individual

 5     plaintiff that did not maintain a damages claim.

 6          My colleague, Mr. Issacharoff, is a far greater expert on

 7     this area than I am.  And if the Court has detailed

 8     questions --

 9          **THE COURT:**  If you want to give him the podium,

10     that's fine.

11          Let me hear from Mr. Broome.

12          **MR. BROOME:**  Well, I agree that it's a complicated

13     question, Your Honor.  It probably does require some briefing.

14          I will say that some of the claims do not actually give

15     rise to injunctive relief, for example, the breach of contract

16     claim.  So I'm not sure that claim would be able to proceed in

17     a trial over --

18          **THE COURT:**  Well, let's -- and that matter is for

19     scheduling purposes.

20          So right now what I have is the claim for count one,

21     violation of the wiretap.  Are plaintiffs proceeding -- and we

22     have one, two, three, four, five individual plaintiffs.  Are

23     they proceeding individually on those counts?

24          **MR. BOIES:**  They -- they would be at the present

25     time, Your Honor.

 1                **THE COURT:**  And under that count, are they entitled

 2      to a jury trial as individuals?

 3                **MR. BOIES:**  I believe they are, Your Honor, but --

 4                **THE COURT:**  Do you agree?

 5                **MR. BROOME:**  That is something I could not answer or

 6      commit to today, Your Honor.

 7                **MR. BOIES:**  And that is a question that I need to

 8      research as well, Your Honor.  As I said before, I apologize,

 9      but I'm not in a position to actually be definitive about

10      that.

11                **THE COURT:**  How about count -- do you have any sense

12      on any of these claims whether, one, the individual plaintiffs

13      are going forward?  I can't give you a schedule if I don't

14      know what I'm trying.

15                **MR. BOIES:**  Right.

16                **THE COURT:**  So what can you tell me today?

17                **MR. BOIES:**  Well, one of the things I can tell you

18      today is that from -- from the plaintiffs' standpoint, we

19      would like to have obviously a trial date and -- and we will

20      be prepared to try either --

21                **THE COURT:**  Mr. Boies, it is very different.  A bench

22      trial versus a jury trial is very different.

23         Mr. Issacharoff looks like he wants to get up.

24                **MR. BOIES:**  Yes.

25                **THE COURT:**  And everybody should know, just because

 1    it's important for transparency purposes, I'm a very active

 2    member of the American Law Institute.  Mr. Issacharoff and I

 3    sit on the council together.  But that, in my view, doesn't

 4    matter, but I do make sure that folks know that.  There are

 5    plenty of defense partners in that group as well.

 6        Okay.  Sir.

 7            MR. ISSACHAROFF:  Your Honor, this is an

 8    extraordinarily difficult issue so I don't want to belabor the

 9    obvious about that.

10        The remnants of *Beacon Theatres* seems to indicate that we

11    have to try the questions that could be tried to a jury in

12    first order and that those have to proceed first.

13        Courts have used the 23(c)(4) instrument, the issue class,

14    as a way of organizing preliminary trials on defined issues

15    whether before a jury or not.  There are 23(c)(4) jury trials.

16    For example, the Sixth Circuit remand from the Supreme Court

17    in the *Whirlpool* case is an example of a bifurcated proceeding

18    on certain critical issues of liability that went to a jury

19    and the jury returned a defense verdict in that -- in that

20    case.

21        We had previously moved for (c)(4) certification before

22    this Court, and the Court did not address it.  It denied

23    certain -- certainly the Court is aware of its own order

24    granting (b)(2), denying (b)(3), but did not address the

25    (c)(4) question.

1          The Court, under 23(c)(1), has the authority to revisit

2     that at any point, and we would encourage the Court to

3     consider that as a form of trial management in this case.

4          There are issues that could be certified as an issue

5     class, I believe, that would be outside the bounds of *Beacon*

6     *Theatres* and could proceed as a bench trial.  I don't -- I

7     have not cataloged those.  We have not made that effort yet,

8     but we would gladly do so quickly.

9          But I think that that is a way of avoiding the bottleneck

10    created by some damages claims needing to go to a jury

11    ultimately, but some injunctive claims not raising the jury

12    question at all.

13         So one of the things that we were going to suggest today

14    is that the Court revisit the (c)(4) component of this so that

15    it can address these particular questions.

16         **MR. BROOME:**  Your Honor, the thrust of this case at

17    this point is it is an injunctive relief case.  Right?  And we

18    think that the case should proceed to a bench trial on the

19    injunctive relief.  We don't think that that -- injunctive

20    relief can be left to a jury.  And that the --

21         **THE COURT:**  But it's not uncommon -- it's not

22    uncommon for juries to make findings with respect to factual

23    issues and the court to try at the same time and/or, you know,

24    the issues that are court issues, equitable issues.  For

25    efficiency purposes, it makes imminent sense to do that.  And

1   also for the court to consider the jury's findings with

2   respect to factual issues.

3       Part of me is more inclined to do that, in part because I

4   believe that my colleagues on the Ninth Circuit tend to be

5   less willing to overturn factual findings of juries than they

6   are of judges.  And that, for the Court, provides much more

7   certainty.  It provides more certainty for the public.

8       And so that would be my -- that's my inclination.  I don't

9   know that I would do that, but it certainly is a possibility.

10          MR. BROOME:  Well, let me say this, Your Honor.  The

11   damages claims, we have damages asserted by six plaintiffs.

12   There are no out-of-pocket losses.  It's unclear whether they

13   could even establish any individual damages.

14       The efficient way to proceed in this case is to go to a

15   bench trial which we could -- we could do much quicker.  And

16   the plaintiffs could either waive their individual damages

17   claims.  We could attempt to resolve --

18          THE COURT:  Yes or no?  I have to write it up,

19   Mr. Broome.  Whenever I have a bench trial, I can't just, like

20   a jury, come in and say "Here's the verdict.  You win, you

21   lose."

22          MR. BROOME:  No.  Understood, Your Honor.  I --

23          THE COURT:  So when you -- I'm just telling you that

24   when you say it's much quicker, I'm not exactly sure that

25   you're -- that you're accurate.

1          **MR. BROOME:**  That a bench trial would be more

2    efficient -- I see.  I understand, Your Honor.  I think --

3          **THE COURT:**  Because the jury comes out and it says

4    you win, you lose, on factual issues.  Right?  So as opposed

5    to waiting for me to write it up.

6          **MR. BROOME:**  Understood, Your Honor.

7       Ultimately I think the Court is going to have to write

8    something up because the question of what the injunctive

9    relief looks like is going to require a lot of analysis.

10   Right?

11      I mean one of the -- you know, one of the aspects of

12   relief that plaintiffs are seeking is that all Google services

13   that benefited in any way from this data be deleted, be

14   terminated, right?

15      We're talking about services that do not actually

16   distinguish what -- between whether the data is incognito data

17   or non-incognito data.  Talking about, you know,

18   multibillion-dollar products.

19      So there's going to be a fair amount of analysis, I

20   believe, that's required to determine whether the relief

21   plaintiffs are seeking is reasonable.

22          **THE COURT:**  Any response?

23          **MR. ISSACHAROFF:**  The difficulty, Your Honor, is that

24   it may be more efficient and quicker to have a bench trial

25   first.  We can argue whether in fact it is.  But *Beacon*

1   *Theatres* would create a Constitution difficulty there on

2   Seventh Amendment grounds.

3       It is possible that the parties could stipulate to the

4   waiver of the jury on certain factual issues.  We have not

5   discussed that.  I'm not prepared to make any representation.

6   But certainly if there is a live jury trial claim out even for

7   one plaintiff, *Beacon Theatres* would require that there be

8   sequencing.

9       Again we go back to the 23(c)(4) question because in the

10  *Whirlpool* case in the Sixth Circuit, we saw a blueprint where

11  certain issues of liability that would be common to injunctive

12  and damages claims but not dispositive of the damages claims

13  could be presented in isolated fashion, and there could be

14  combined bench and jury determinations as to contested issues

15  of fact, and then obviously the bench makes the conclusions of

16  law.

17          THE COURT:  Mr. Broome.

18          MR. BROOME:  It gets further complicated, Your Honor,

19  because some of the case -- some of the claims that are going

20  to be before the jury are not -- are unlikely to even give

21  rise to injunctive relief.  So I think, you know --

22          THE COURT:  Right.  Right.  But I have individual

23  claims.

24          MR. BROOME:  Right.

25          THE COURT:  So with respect to -- and that's why I

1    started to try to go through them.

2         Let me ask you this:  It is difficult, I expect -- I know

3    we moved this hearing to this morning to accommodate

4    Mr. Boies.  I'm seeing New York, Florida, New York, Chicago,

5    Los Angeles.  I guess those are all the states represented.

6         I have time this morning.  I have a 2:00 o'clock calendar.

7    Should we -- or I would recommend that we take a brief recess

8    and that you all confer so that we can go through this in a

9    logical way and at least come out of here with some kind of

10   schedule.

11        When I talk case management, the primary thing I'm talking

12   about is schedule, and it's not clear to me that you all are

13   really ready to talk about that yet.

14        But these are important issues and they're complicated.

15   And I have to have more information -- I don't want to give

16   you a schedule that's meaningless.

17             **MR. BOIES:**  Right.

18             **THE COURT:**  So -- and I don't like to do it over

19   Zoom.

20        So my sense would be to take a break.  You can -- there's

21   an attorney conference room down the hall.  You can all go sit

22   in a table.  You can do it collectively.  You can do it

23   individually.  But I'd like you to be able to walk through and

24   give me your best sense about where we're going on these

25   individual versus class claims so that I can give you some

```
 1   kind of schedule.

 2        You know, and one of the things that I will probably do,

 3   Mr. Broome, is not require you to go through the letter

 4   writing process to bring your motion.  It's not clear to me at

 5   all that -- that all of your motion would survive.  I've

 6   looked at the evidence.  Again, I'll take a clean look at it

 7   when I get your motion.  But I think something's going to be

 8   tried here.  And perhaps the motion will narrow it.  I don't

 9   know.

10        But I do want to have -- I want us to come out of here

11   today knowing what a trial schedule is going to look like.

12   That is my goal.  And if I can ultimately avoid it, that's

13   fine.  I have plenty of trials.  I don't -- I don't need more.

14             MR. BROOME:  Understood, Your Honor.

15        We are somewhat hamstrung in that we obviously need to

16   discuss with our client.  But if we take a break, we'll do our

17   best to get the client on the phone and walk through these

18   issues.

19             THE COURT:  Well, and I just think that it is more

20   efficient for us to come up with something that is based on

21   our best working information.  Otherwise, you know, you're

22   going to come back in here in two months and ask me to revise

23   the schedule, and I don't want to do that.

24        Plus you should all know, I'm in trial in a Nuestra

25   Familia RICO case for three months in the beginning of 2024,
```

1   which totally -- when we have to do those criminal trials,

2   they totally change our calendar.  So I'm either going to get

3   you in before, or otherwise we're looking at sometime after

4   that.

5        So you should know that that's out there.  And I --

6   trying -- you know, this case is old enough that you would

7   have some priority.  But the other thing that my -- the other

8   approach take I take with my cases is oldest goes out first,

9   not biggest, not the one I think is more important, whatever

10  is oldest.  That's the way I'm fair to everybody.  Those

11  little cases are important to those little people.  Okay?

12            **MR. BROOME:**  Understood.

13            **THE COURT:**  All right.  So it's 9:42.  When do you

14  want to come back?

15            **MR. BOIES:**  I think we could come back in half an

16  hour, Your Honor.

17            **THE COURT:**  Mr. Shapiro?

18       **MR. SHAPIRO:**  And just to make sure that we come back

19  with what you're seeking, the main question is about the

20  interplay between the individual claims and the class claims

21  and/or jury and bench trial, correct?

22            **THE COURT:**  Correct.

23            **MR. SHAPIRO:**  Okay.

24            **THE COURT:**  And whether I need -- you know, whether

25  we need to do these kind of in phases or whatever else your

1    suggestion is.

2         Now if you all want to talk and come up with a plan, that

3    would be great.  It seems to me that you're all reasonable

4    people from what I can tell on both sides.  So maybe you would

5    come up with a plan and then you can present it.

6         But that's what I'm looking for.  Obviously you'll -- I'll

7    hear your summary judgment in advance, so make sure to work

8    that into the process.  But -- because I can't -- I can't stop

9    you from filing it under Ninth Circuit law.  So you do get to

10   file it.  But one only, and you don't get extra pages.

11        So, anyway, I'm here.  So we'll stand in recess for

12   approximately half an hour.  You all come back together.  My

13   courtroom deputy will let me know when you're back.

14        (Recess taken at 9:44 A.M.; proceedings resumed at

15   10:24 A.M.)

16             THE COURT:  Let's go back on the record.  The record

17   will reflect that all counsel is present.

18        All right.  Just give me a minute here.

19        Okay.  Who's going to begin?

20             MR. BOIES:  Your Honor, as the plaintiff, perhaps we

21   can.

22        Subject to one caveat, I think our proposal would be what

23   the Court adverted to as a possibility earlier, which is that

24   we have a trial at which a jury is impaneled.  The jury

25   decides the issues that are appropriate for the jury to decide

1   that relate to damages.  The Court decides the issues

2   appropriate for injunctive relief either with or without it

3   using the jury as advisory jury.

4           **THE COURT:**  And by "damages," you mean personal

5   damages?

6           **MR. BOIES:**  Excuse me?

7           **THE COURT:**  You mean personal damages.

8           **MR. BOIES:**  That is personal damages for the -- for

9   the class representatives, yes.

10           **THE COURT:**  Okay.

11           **MR. BOIES:**  The individual damages for the

12   individual, not -- not class-wide damages.

13           **THE COURT:**  All right.

14           **MR. BOIES:**  This would just be the damages for the

15   individual -- individual plaintiffs.

16       I think that we --

17           **THE COURT:**  Hold on just a moment.

18                   (Off-the-record discussion.)

19           **MR. BOIES:**  We have discussed among ourselves exactly

20   which issues we think would be tried to the jury and which

21   issues would be for the -- for the Court.

22       I think we don't have consensus on that, and I think we

23   both think it would be useful to have some additional time to

24   separate out what issues would be tried to the jury and what

25   issues would be for the Court.

1        However, from the plaintiff's standpoint, the general

2    structure of having a jury that would decide the individual

3    damages claims of the class representatives and then the Court

4    decide the (b)(2) injunctive relief is what we would propose.

5        Now, I said there was a caveat.  And the caveat would be

6    if the Court were to consider the (c)(4) class that was

7    mentioned earlier, that could be an alternative to this

8    approach.

9        We believe that if you had a (c)(4) class, you could have

10    a determination of the liability issues and leave the damages

11    issues to further proceedings.

12        So we think that that is a possibility that it's worth

13    considering.

14        But in the absence of a certification of a (c)(4) class,

15    we would propose to proceed as I've indicated.

16            **THE COURT:**  Okay.

17        And do you agree, Mr. Shapiro, or do you have a different

18    proposal?

19            **MR. SHAPIRO:**  We agree or do not object, at least at

20    this high level of generality.  I would elaborate in the

21    following way.

22        So I think the question -- the most pressing question,

23    Your Honor, is asking is there still going to be a jury here?

24    And the plaintiffs want to persist in the claims of the

25    individual plaintiffs, and we understand that those are

1    individual damages claims and don't see why they wouldn't be

2    entitled to have a jury.

3        We are certainly open to -- Mr. Boies had mentioned in

4    passing earlier that those individuals might waive those

5    claims, or we would -- we believe they're relatively small

6    claims and feel they could probably be wrapped up pretty

7    easily in mediation.  That would be a way of taking those

8    individual damages claims out of this and simplifying things

9    somewhat.

10       As to the question about advisory jury, if -- once there's

11   a jury in the room, the plaintiffs -- I think I agree with

12   Mr. Boies that it's whatever the Court's preference is as to

13   that.

14              **THE COURT:**  Okay.

15              **MR. SHAPIRO:**  And we're not amenable to the (c)(4)

16   proposal.

17              **THE COURT:**  I assumed not.

18       All right.  So let's do this then.

19       First, let me get you on a briefing schedule for summary

20   judgment, simultaneous with a schedule for -- or, well, you

21   let me know your thoughts.  I was going to do it simultaneous

22   with a motion to consider (c)(4) given that that's what the --

23       Joyce.

24       Hold on.

25              **MR. BROOME:**  So, Your Honor --

1      **THE COURT:**  Do you want to go get her.  Just let her

2    know what courtroom they moved to.

3      Or with respect, if they want to bring a -- since it's

4    contested, if they want to bring a (c)(4) motion, then I can

5    consider all of those things at once.

6      So when will you -- and, again, I'm inclined at this point

7    to just let you file your motion without a hearing.

8      So when will you be prepared to file your motion?

9      **MR. BROOME:**  So, Your Honor, we have a briefing

10   schedule that's been so ordered, I believe, on the -- for the

11   summary judgment motion, and that's March 28th.

12     **THE COURT:**  The reason that I'm asking, that's --

13   that schedule also contemplates -- well, I didn't order this,

14   did I?  Because it says your -- I can pull up your docket, but

15   your CMC statement says that you're jointly proposing.

16     **MR. BROOME:**  Ah, it may not be so ordered.  I

17   apologize, Your Honor.

18     **THE COURT:**  Okay.  This contemplates about a month's

19   delay or more to do the prefiling conference.  That's why I'm

20   asking when would you be prepared to file your motion?  If I

21   eliminate that requirement.

22     **MR. BROOME:**  I think we'd like to stick with the end

23   of March, Your Honor.

24     **THE COURT:**  Okay.  So March 28th for the motion.

25   Opposition May 26th.  The reply June 23rd.

```
 1          I can tell you with this, with a hearing in July, I'm not
 2     sure that I can get you a trial in November.
 3          Does everybody understand that?
 4               MR. BROOME:  That's fine with us, Your Honor.
 5               THE COURT:  Well, I know it's fine with you.
 6               MR. BOIES:  Your Honor --
 7               THE COURT:  But discovery is closed.  I don't
 8     understand why you can't file a motion sooner than March 28th.
 9               MR. BOIES:  It seems to me, Your Honor, that the
10     motions could be filed earlier.  This contemplated that we
11     were going to go through essentially --
12               THE COURT:  Right.
13               MR. BOIES:  -- a long process of letters and
14     responses.  And it seems to me --
15               THE COURT:  Let me do it this way, Mr. Broome.
16          If you don't get your motion on file sooner, you may have
17     to double-track trial without an answer on your summary
18     judgment.  Is that more of an incentive to try to get it on
19     file sooner?
20               MR. SHAPIRO:  Your Honor, it would have been
21     incentive even for you just to say you'd like to see it
22     sooner.
23                              (Laughter.)
24               MR. SHAPIRO:  We can get it in a bit sooner.  Today
25     is the 14th, I believe.
```

 1            **THE COURT:**  Is it -- do you not know, Mr. Shapiro?

 2            **MR. SHAPIRO:**  No, I --

 3            **THE COURT:**  That's a real problem if you're married.

 4            **MR. SHAPIRO:**  I did leave a little something at home.

 5      And, yes, so --

 6            **MR. BROOME:**  The issue is, Your Honor, I'm in

 7      depositions over the next several weeks.  So I think we could

 8      do it sooner.  I would ask for, you know, not much sooner.

 9      Maybe middle of March.  Because I'll be -- have a fairly

10      substantial role in drafting that motion.

11         And I understand, Your Honor, that the plaintiffs also

12      intend to file a motion for summary judgment.

13            **THE COURT:**  You do?

14            **MR. BROOME:**  So I think they would be dueling

15      motions.

16            **MR. BOIES:**  I think ours will be quite limited, Your

17      Honor.

18            **THE COURT:**  To what?

19            **MR. BOIES:**  But I think that with respect to the

20      interpretation of the disclosures and the existence of the

21      violation.

22            **THE COURT:**  And you're going to argue that there is

23      no ambiguity and that it can be decided as a matter of law?

24      Is that what you're going to argue?  Because if that's the

25      argument --

1      **MR. BOIES:**  No, I don't think so.

2                        (Simultaneous colloquy.)

3      **THE COURT:**  -- that you make --

4      **MR. BOIES:**  I don't think we will be arguing that,

5   Your Honor.  I think we will be -- we will be arguing that

6   given the other facts that exist, that there's no material

7   disputed issue of fact.

8       We believe that given the factual record as to what Google

9   has done, that regardless of how the disclosure statements are

10  interpreted, they do not cover what was done by Google.

11      We would not be arguing that this is so unambiguous that

12  it's simply a matter of law.  We would not be arguing that.

13      **THE COURT:**  Okay.  I put everybody -- I always do

14  this in cases and I will warn you now.  If you take a position

15  at summary judgment that a term is unambiguous such that the

16  Court can decide it as a matter of law, you will be excluded

17  at trial from offering extrinsic evidence to interpret that

18  claim.

19      I do not let parties waffle on their positions, that is,

20  you cannot take one position at summary judgment and then at

21  trial, because you lost, then say, "Oh, no, I was wrong.  It

22  is ambiguous and therefore I get to offer extrinsic evidence."

23      Does everybody understand?

24      **MR. BOIES:**  Yes, Your Honor.

25      **MR. BROOME:**  Yes, Your Honor.

1          **THE COURT:**  Okay.

2       When is plaintiff going to be prepared to file their

3    motion for summary judgment?  And I have seven counts.  Which

4    counts are you seeking summary judgment on?

5          **MR. BOIES:**  Your Honor, I will have to consult on

6    that.

7          **THE COURT:**  Okay.

8                    (Pause in the proceedings.)

9          **MR. BOIES:**  Your Honor, I believe that the only thing

10   that we would be likely to move on is the proposition that the

11   defense of implied consent does not apply to our named

12   plaintiffs, that there is no material disputed issue of fact

13   that would justify a defense of implied consent with respect

14   to our named plaintiffs.

15         **THE COURT:**  And that impacts which counts?  All

16   seven?

17         **MR. BOIES:**  I think it does, Your Honor.  I think

18   it -- it affects all of them.

19         **THE COURT:**  Okay.  Yes?

20         **MR. BOIES:**  It depends on -- it depends on the

21   defendant's position as to where they think that implied

22   consent defense is applicable.  But as I read it, they apply

23   that implied consent argument to each of the counts.

24         **THE COURT:**  Okay.

25       Mr. Broome.

1          **MR. BROOME:**  I'm going to need to consult with the

2     client on this one, Your Honor, as to whether we would make

3     the argument that implied consent defeats individual

4     plaintiff's claims.  But if we think we can resolve it in

5     advance, then we will let the plaintiffs know so that we can

6     avoid briefing on this issue.

7          **THE COURT:**  Okay.  When can the plaintiffs bring

8     their motion?

9          **MR. BOIES:**  If we -- if we were to bring the motion,

10    we can bring it March 1st, Your Honor.

11         **THE COURT:**  All right.

12      So plaintiffs' motion then -- this is going to resolve

13    your issue, Mr. Broome.  Plaintiff's motion to be filed by

14    March 1st.  Defense then files a -- their cross-motion

15    combined with the opposition to plaintiff's motion March 21st.

16         **MR. BROOME:**  And, Your Honor, may I ask, can we have

17    additional pages if we're -- for the cross-motion if it's also

18    constituting an opposition to their motion?

19         **THE COURT:**  Plus ten.

20         **MR. BROOME:**  Thank you.  That should be sufficient.

21         **THE COURT:**  Then plaintiffs will file their reply in

22    support of their own motion combined with the opposition to

23    the defense motion.  That would be due -- oh, wait.

24    March 1st, three weeks is March 22nd.  Sorry.  Three weeks

25    after that, April 12th.  Again, plus ten pages.

```
 1        Then what I get is a defense reply in support of its
 2   motion for summary judgment, April 26.
 3        And I'll put you on calendar for a hearing.
 4                  (Pause in the proceedings.)
 5        THE COURT:  I'll specially set it for May 15th at
 6   1:00 p.m.  Okay?
 7        All right.  I am going to need briefing on the following,
 8   but we can do this after the order for summary judgment.  Does
 9   anybody know whether punitive damages are recoverable where
10   you don't have monetary damages but you have liability and/or
11   injunctive relief?
12        MR. MAO:  Yes.  Real quickly, Your Honor, I realize
13   there's two separate CIPA claims.  One is a 631 Penal Code,
14   California, the other is 632, that -- I believe it's 637.2
15   which is a damages provision on that.
16        If you look at that, the statute, the legislature
17   specifically said that no actual damages is required and there
18   would be $5,000 per violation on that.
19        THE COURT:  So in count one, you seek punitives.  In
20   count three, you seek punitives.  You do not seek punitives in
21   count two.
22        So that's --
23                  (Simultaneous colloquy.)
24        THE COURT:  So your wiretap claim at paragraph 217,
25   you seek punitives.  And the -- in paragraph 236, your third
```

1     count for -- I don't know -- the Comprehensive Computer Data

2     Access and Fraud Act claim under California law, you seek

3     punitives.  You do not seek them under CIPA.

4             **MR. BOIES:**  Yes.

5             **MR. MAO:**  Sorry.  They're -- they're statutory

6     damages, Your Honor.

7             **THE COURT:**  That's a separate question.

8             **MR. BOIES:**  She's talking about punitives.

9             **MR. MAO:**  Oh, I'm sorry.

10            **THE COURT:**  I'm not talking about statutory damages.

11            **MR. MAO:**  I apologize, your Honor.

12            **MR. BOIES:**  With respect to punitive damages, Your

13    Honor, I believe that we can get punitive damages if there are

14    nominal damages.  Whether there -- if there's zero damages,

15    that is, if there's not even nominal damages, whether we can

16    get punitive damages is not something I can tell the Court

17    today.

18            **THE COURT:**  All right.

19        That matters in terms of a jury trial, so I need to know

20    the answer to that question.  Put it on a list of things that

21    are going to need to be briefed.

22        All right.  With a May 15th hearing, I should be able to

23    get you an answer midsummer, if not before.  But I said again

24    I'm going straight into trial at the end of May.  That's why

25    I'm trying to get your arguments in before I head into trial.

```
 1        All right.  Given that, we're looking at, what, two weeks
 2   for a trial?
 3                   (Pause in the proceedings.)
 4        MR. BROOME:  I think that would be fine, Your Honor.
 5        MR. BOIES:  Yes.  Based -- I think that's basically
 6   right, Your Honor.  I think we said 15 days, but I think two
 7   weeks is basically right.
 8        THE COURT:  Okay.  Let me just bring up my trial
 9   calendar, and I'll give you a date.
10                   (Pause in the proceedings.)
11        THE COURT:  If I give you November 6, your final
12   pretrial conference would be October 13.  Motions -- well,
13   your trial readiness binder then would be due -- and that is,
14   when I say "binder," it is all your trial filings -- will be
15   due September 29th.
16        You'll be placed on a compliance calendar for
17   September 22nd.  I do not expect to see you.  What I expect is
18   that five business days prior, by September 15th, you'll file
19   a joint statement advising me you've read my standing order on
20   trials, you have no issues, no objections, no concerns, no
21   questions.
22        If you have any such things, that's when I should know so
23   I can get on the phone, I can get on the platform, I can
24   answer your questions.
25        Let me give you an example of what I mean.  I've been
```

1    doing this now for over ten years.  And just recently, I had

2    lawyers give me binders that had every single docket entry in

3    the binder.  And they said, "Well, we were confused with this

4    line in the order."

5        And I said, "Well, why do you think I put you on a

6    compliance calendar?  In over ten years, I've never had anyone

7    interpret that sentence the way you interpreted it."

8        And not only that, what I did want in terms of the ECF

9    numbers on the top of the page, they didn't give me.

10       So if you have any questions, just let me know.  I'm

11   available.

12       Okay.  So what I want and the way it works for me is when

13   you have your filings -- oh, okay.  So you have it here, to

14   file but not -- to serve but not file.  So you all can agree

15   on or I can just move everything up a week if you want.

16       So you -- you have last day to serve your motions in

17   limine September 22nd and then the opposition the 11th.

18   That -- that doesn't work.

19       Do you have calendars in front of you?

20           **MR. BROOME:**  Yes, Your Honor.

21           **MR. BOIES:**  Yes, Your Honor.

22           **THE COURT:**  You need to file everything with me by

23   September 29th.  That means in advance of that, you will have

24   had to serve your motions in limine, try to meet and confer or

25   serve your oppositions, but I don't want anything filed unless

 1  │  you've already met and conferred.  And then they get --
 2  │  everything gets filed at the same time.  That is, whatever has
 3  │  not been resolved gets filed.
 4  │          **MR. BOIES:**  Right.
 5  │          **THE COURT:**  So if you have to file everything with me
 6  │  on the 29th, when do you want to exchange motions in limine
 7  │  and when do you want to exchange oppositions?
 8  │          **MR. BOIES:**  I agree, Your Honor.
 9  │          **THE COURT:**  I'm looking for dates.
10  │          **MR. BOIES:**  May I just consult with --
11  │                  (Off-the-record discussion.)
12  │          **MR. BROOME:**  Your Honor, I think we've agreed to file
13  │  the MILs on September 4th and -- or sorry, serve the MILs on
14  │  September 4th, serve the oppositions on September 14th.  We'll
15  │  meet and confer promptly thereafter.  And any outstanding
16  │  issues will go to Your Honor on the 29th.
17  │          **THE COURT:**  Okay.  So actually now I'm going to move
18  │  this one day up to September 28th.
19  │          **MR. BROOME:**  Okay.
20  │          **THE COURT:**  So that's when you file everything.  By
21  │  the 29th, I want you to deliver the binders with the ECF
22  │  headers on them.
23  │          **MR. BOIES:**  Right.
24  │          **THE COURT:**  Okay?  And that is because when we have
25  │  our case -- when we have our trial conference, there's a lot

of back and forth, and I frequently will refer to docket numbers, ECF numbers, page and line numbers, and that way your appellate record, to the extent that you need one, is clear. Okay? All right.

We are busy. And I say -- by "we," I mean the federal courts are busy. I do not want to spend a lot of time addressing what I consider to be minor arguments on deposition designations, on trial evidence that you all should be able to agree on.

And if this ends up being a bench trial, there should be no motions in limine, none. Because I have to review it to consider it and decide so I'll just do it in trial.

**MR. BOIES:** Right.

**THE COURT:** So I'm expecting no motions in limine if this is a bench trial.

**MR. BROOME:** Understood.

**THE COURT:** I will not read deposition transcripts in advance to resolve designation problems if it's a bench trial. And frankly, I don't really want to do them anyway.

What I want you to do is to find a fabulous trial -- former retired trial judge to do this for you. I think you should be able to do it on your own. But despite my hopes in these cases, you all are not able to do it.

So I want you to meet and confer and to find someone who you both agree is a fabulous trial judge or former trial judge

 1   and hire that person to do these things for you, and you are

 2   going to agree with the decision of that judge.

 3       We need your help.  To get these things out to trial, we

 4   need your help.

 5           **MR. BOIES:**  We appreciate that, Your Honor.

 6           **MR. BROOME:**  Understood.

 7           **THE COURT:**  Okay.

 8           **MR. BROOME:**  Yes.

 9           **THE COURT:**  So I'm going to put you on a compliance

10   calendar for June 30th.  Five business days prior, by

11   June 23rd, you let me know what retired judge you have decided

12   to use for that purpose and a proposed form of order with

13   respect to the authority of that judge with -- regarding these

14   trial evidentiary issues.

15       Okay?

16           **MR. BROOME:**  Yes, Your Honor.

17           **MR. BOIES:**  Yes, Your Honor.

18           **THE COURT:**  To the extent that you are using or plan

19   on using demonstrative evidence to show how technology works

20   that has not otherwise kind of been disclosed, you need to

21   disclose that.  And this is primarily -- well, it could be

22   really for either of you.  So I don't know -- we have this

23   problem in patent cases all the time --

24           **MR. BOIES:**  Right.

25           **THE COURT:**  -- where the patent lawyers, they get to

1    trial and they have these great demonstratives, which is

2    really the only way the jurors can understand the technology,

3    but they never disclosed it.

4        So I don't know if it's accurate or not accurate.  And

5    unfortunately I have to say this is fabulous and wonderful and

6    it's excluded because we don't have time anymore to litigate

7    your demonstratives.

8        So think about how you intend to try the case.  And again,

9    I'm more concerned about a jury because, you know, judges are

10   trained to disregard things and we do.

11       But if you're going to use technology in your

12   case-in-chief or in rebuttal, you need to make sure that the

13   other side knows about it.  This is not trial by ambush.

14       All right?

15           MR. BROOME:  So if I understand Your Honor correctly,

16   we're talking about using the -- the actual technology at

17   issue as a demonstrative, not using a demonstrative that sort

18   of depicts how the technology functions.

19           THE COURT:  Right.  Yeah, if you're -- if you have

20   a -- if you have someone from Google who's going to say, you

21   know, this is the kind of screen or whatever, and that's --

22   that's one thing.

23       It's quite another to have an expert who is, in a sense,

24   kind of reconstructing how this technology works and

25   presenting it in a way that's nicely packaged, that's

1    different, and that has to be disclosed.

2              **MR. BROOME:**  Understood.

3              **THE COURT:**  Okay.  At Docket 472, which is this

4    outstanding stipulation, you've stipulated with respect to the

5    authenticity of documents that, one, documents produced by

6    plaintiffs in this action shall be presumed authentic for

7    purposes of 901, Rule of Evidence 901, that's okay.  So

8    ordered.

9         The same with respect to two, documents produced by Google

10   to be presumed authentic for purposes of 901.  That's fine,

11   too.  So ordered.

12        Three and four are also fine.

13        Three is all documents with the exception of emails and

14   Google chats produced by Google shall be presumed to be

15   business records under 803 subsection (6).  And parties

16   reserve the right to contest the authenticity pursuant to

17   section 901 and business record 803(6) of any documents in

18   advance to pretrial conference.  All of those are fine.

19        The one that concerned me again was this notion that you

20   could file a motion resolving disputes, which is number 7.

21   Number 7 is not okay.

22        So here in 5 and 6, I need to know if you want me to

23   impose these deadlines now that you know what your trial

24   schedule is looking like.

25        So effectively if everything to me is due on the 28th of

1   September, that means that at a minimum, you will have had to

2   exchange your exhibits by August 28th, about a month in

3   advance.

4      And then what you say is that no party -- the party shall

5   notify the other party no later than 21 days after the

6   exchange that there's an objection.

7      Well, 21 days after the exchange, given my standing order,

8   means one week before everything is due to me.

9          **MR. BOIES:**  Right.

10          **THE COURT:**  So I'm not sure that that works for me.

11  And what I would suggest is that -- I will approve 1, 2, 3,

12  and 4.  I will get this trial order out.  And I would suggest

13  that you meet and confer, look at my standing order, and

14  figure out what other dates you want to have included so that

15  you -- so that you all can agree on a kind of a more logical

16  way to address exhibits in this case.

17          **MR. BOIES:**  Agree, Your Honor.

18          **MR. BROOME:**  Yes.

19          **MR. BOIES:**  That's actually right.

20          **THE COURT:**  Okay.  You cannot file a motion on these

21  things, so number 7 is just not acceptable.

22          **MS. TREBICKA:**  Agreed.

23          **THE COURT:**  All right.  So again on that June 30th

24  compliance date, I will include in there to advise the Court

25  of any other trial-related deadlines regarding exchanges.

1    Okay?

2              **MR. BOIES:**  Yes, Your Honor.

3              **MR. BROOME:**  Yes, Your Honor.

4              **THE COURT:**  Okay.

5        Mr. Garcia, you can terminate 472.

6              **THE CLERK:**  Will do, Judge.

7              **THE COURT:**  Okay.  I think that does it for now.

8        I would like to probably see you again sometime this

9    summer because I -- well, and maybe it's just after the

10   summary judgment.  I do need to understand, you know, what is

11   actually going to get tried here, and I don't have a clear

12   understanding.

13       So I know you all need time to look at these issues.  But

14   I need to know which counts are going forward.  I need to know

15   who is bringing them, the class or the individual plaintiffs

16   or both.  And I need to know what kinds of damages you're

17   seeking including with respect to injunctive relief versus

18   punitives versus compensatory for the individual or statutory.

19       The other thing that I will just note is that your UCL

20   claim doesn't have -- doesn't plead injunctive relief, which

21   surprised me.  You plead injunctive relief for other claims,

22   but not for the UCL.  Are you not seeking it under the UCL?

23             **MR. BOIES:**  I thought we were, Your Honor.  But I

24   stand corrected.

25             **THE COURT:**  Paragraph 284 does not identify

1   injunctive relief.

2       Now, I don't think there's any prejudice to the defendants

3   because you've sought it in -- with respect to other claims,

4   and it's all -- but I need clarity on that topic and I need it

5   soon.  I'll give you two weeks to give me clarity on that

6   issue.

7           **MR. BOIES:**  We will do that, Your Honor.

8           **THE COURT:**  So let's go ahead and have another

9   conference in July.  By then you'll have hopefully my order.

10  You'll have to have responded on these other topics.

11      July 17th, 1:00 p.m.?  Does that work?

12          **MR. BOIES:**  Yes, Your Honor.

13          **MR. BROOME:**  I don't think so for me, Your Honor.

14          **MR. SHAPIRO:**  Yeah, neither for me, Your Honor.  I

15  apologize.  I'm away --

16          **MR. BROOME:**  Hold on.

17          **THE COURT:**  How about the 10th?

18          **MR. BOIES:**  The 10th works, Your Honor.

19          **MR. BROOME:**  I believe I am -- actually I don't have

20  it in my calendar.  So I believe I'm away for two weeks in

21  July, Your Honor.

22          **THE COURT:**  Which two weeks?

23          **MR. BROOME:**  I think it's the 4th through the 18th,

24  but I don't have it in front of me.  I have to chat with my

25  boss.

 1              **THE COURT:**  Does that mean your wife?

 2              **MR. BROOME:**  Yes, Your Honor.

 3              **THE COURT:**  The 19th?  What about the 19th?

 4              **MR. BROOME:**  I'm just not sure, Your Honor.  I

 5    couldn't commit right now.  Could we -- I mean I could let you

 6    know immediately after this conference.

 7              **THE COURT:**  All right.  Well, what I'm looking for is

 8    something that week of the 17th.

 9              **MR. BROOME:**  I think the week of 24th, I think we're

10    all good.  Mr. Shapiro is also away the week of 17th.

11              **MR. SHAPIRO:**  I could be here on the 24th -- on the

12    24th if -- of -- I can cut my trip short if that helps.

13              **MR. BROOME:**  Or the week of June 26th, I think.

14              **MR. SHAPIRO:**  I'm sorry.  I meant the Friday,

15    whatever that Friday -- I could come in on the Friday if --

16              **THE COURT:**  I'm available the 24th.

17              **MR. BOIES:**  I can do it the 24th.  I can do it the

18    following week, Your Honor.  I can do it anytime in July.

19              **MR. SHAPIRO:**  The 24th is great.

20              **MR. BROOME:**  The 24th would be great.

21                    (Off-the-record discussion.)

22              **THE COURT:**  All right.  June 24th.  Okay.

23       June 24th, 1:00 p.m. -- or I'm sorry -- July 24th.

24              **MR. BOIES:**  July 24th.

25              **MS. TREBICKA:**  July.

```
 1              THE COURT:  July 24th at 1:00 p.m.
 2         Okay.  Anything else we can do today?
 3         Oh.  Is there going to be a motion on the Rule 23(c)(4)
 4    issues?
 5              MR. BOIES:  Yes, Your Honor.
 6              MR. YANCHUNIS:  So, Your Honor, we've -- John
 7    Yanchunis.
 8         We moved for certification under 23(c)(4).  There was --
 9              THE COURT:  Well, I meant --
10              MR. YANCHUNIS:  -- no response.
11              THE COURT:  Yeah, at this point, I'm not going to go
12    back and try to figure it out.
13              MR. YANCHUNIS:  Okay.
14              THE COURT:  So if you want to bring a new motion, you
15    can bring a new motion.  But I'm not going to try to assume
16    what it is that you want specifically in light of what I
17    already gave you.
18              MR. BOIES:  Understand, Your Honor.
19              THE COURT:  And the question, you know, it may or may
20    not -- I mean I don't even know if I have individual
21    plaintiffs at this point because there's -- you're still
22    thinking about it, you said.
23         So we have set this up for a trial on all of this, but
24    there's a lot of things in flux.  So I do want to have a date
25    on the calendar, though, for those motions.  And in light of
```

1  everything we have, maybe you want to do it in the summer, I

2  don't know, but tell me when it is you want to file that

3  motion.

4          **MR. BOIES:**  Your Honor, if -- if we file the motion.

5          **THE COURT:**  Right.

6          **MR. BOIES:**  And -- and we will consult with the

7  defendants before we file.  But if we file the motion, we

8  would be prepared to file it a month from now in March.

9          **THE COURT:**  Okay.  Well, I'll leave it to you, then.

10    Anything else that's outstanding that you want to discuss?

11         **MR. BOIES:**  Not from us, Your Honor.

12         **MR. BROOME:**  Not from us, Your Honor.

13         **THE COURT:**  Okay.  Then safe travels.

14         **MR. BROOME:**  Thank you.

15         **MR. BOIES:**  Thank you, Your Honor.

16         **THE COURT:**  We're adjourned.

17         **MR. BOIES:**  Thank you.

18         (Proceedings were concluded at 11:09 A.M.)

19                       --o0o--

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Thursday, February 16, 2023