# JOINT SUBMISSION PURSUANT TO DKTS. 861 & 877 (*BROWN*);
# JOINT SUBMISSION PURSUANT TO DKTS. 983 & 990 (*CALHOUN*)

# Redacted Version of Document Sought to be Sealed

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

*Attorneys for Brown Plaintiffs; additional counsel listed in signature blocks below*

**DiCELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)
485 Lexington Ave., Tenth Floor
New York, NY 10017
Tel.: (646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*

*Attorneys for Calhoun Plaintiffs; additional counsel listed in signature blocks below*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant; additional counsel listed in signature blocks below*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHASOM BROWN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**JOINT SUBMISSION PURSUANT TO DKTS. 861 & 877**<br><br>Referral: Hon. Susan van Keulen, USMJ |
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**JOINT SUBMISSION PURSUANT TO DKTS. 983 & 990**<br><br>Referral: Hon. Susan van Keulen, USMJ |

1    March 3, 2023

2    Submitted via ECF

3    Magistrate Judge Susan van Keulen
     San Jose Courthouse
4    Courtroom 6 - 4th Floor
     280 South 1st Street
5    San Jose, CA 95113

6          Re:    Joint Submission Pursuant to Dkts. 861 & 877 in *Brown v. Google LLC*, Case No.
                  4:20-cv-03664-YGR-SVK (N.D. Cal.) and Dkts. 983 & 990 in *Calhoun v. Google*
7                 *LLC*, Case No. 4:20-cv-05146-YGR-SVK (N.D. Cal.)

8    Dear Magistrate Judge van Keulen:

9          Pursuant to Your Honor's February 14, 2023 Order regarding mapping and linking tables,

10   Google responded to the *Calhoun* Plaintiffs' February 6, 2023 letter on February 17, 2023, the

11   *Brown* and *Calhoun* Plaintiffs identified issues they consider unresolved on February 27, 2023, and

12   the parties met and conferred via Zoom video conference on February 28, 2023. As instructed by

13   the Court, the parties jointly submit this letter containing their respective positions on issues raised

14   in the February 6 letter and attaching the *Calhoun* Plaintiffs' February 6 letter (Exhibit A); and

15   Google's February 17 response (Exhibit B).

16

17

18

19

20

21

22

23

24

25

26

27

28

## GOOGLE'S STATEMENT

At dispute is whether Google must shoulder the burden of preserving ██ ████████ tables and ██ ██████ tables (the "Tables") in addition to the already-mounting burden of the rest of the preservation plan, as explained in Google's October 27, 2022 motion for relief. *Brown* Dkt. 781-3; *Calhoun* Dkt. 897-3. This newest round of briefing confirms that Google should not be required to preserve Tables that are not necessary to read the preserved data at issue in *Brown* or *Calhoun*. Pursuant to the Court's January 17, 2023 Order, Google provided Plaintiffs with (i) sampled data from the Tables, (ii) relevant source code and code comments, (iii) a live demonstration, and (iv) several letters detailing how mappings/linkages in the Tables can be found or derived from other preserved data and explaining why the Tables are not necessary to read the at-issue data. Google has also responded to the 19 questions in *Calhoun* Plaintiffs' February 6, 2023 letter, despite that they reached far beyond what is relevant to the preservation question before the Court. *See* Ex. B. Google addresses Plaintiffs' unresolved issues below.

The complete record shows that Google has met its burden of demonstrating that the disputed Tables are duplicative of other data being preserved. Google respectfully requests that the Court relieve it of the significant burden of preserving those █ Tables. This is especially justified now, where the motion to certify a damages class (and Plaintiffs' attempt at an interlocutory appeal) has been denied in *Brown* (*Brown* Dkts. 803 & 882), and judgment has been entered against Plaintiffs in *Calhoun* (*Calhoun* Dkt. 937).

***Brown* Issues 1, 2, 4**.[1] The rhetorical bluster in Plaintiffs' sections is thin on truth. First, Plaintiffs claim that Google does not dispute that "The ██ ██████████ Tables Are Relevant." That is doubly false: the ████████ tables are not relevant to the data flow in *Brown*, and Google has repeatedly explained it in briefing, at hearings, and in meet and confers. No identifier received as part of the data flow in *Brown* (signed-out private web browsing data) is contained in the

---

[1]   None of the issues *Brown* raises now was raised in the *Calhoun* Plaintiffs' February 6 letter and thus falls outside of the Court's February 14 Order limiting the scope of this submission to "issues raised in the February 6 Letter." *Brown* Dkt. 861, *Calhoun* Dkt. 983 at 2. Google objects that these are just another bite at the apple and not properly before the Court, but responds below in case the Court decides to consider these.

1  ███████ tables. *See Brown* Dkt. 848-3, *Calhoun* Dkt. 973-3 at 2. The Biscotti linkages in

2  ███████ are derived from ID mappings/linkages that involve either signed-in data or App

3  activity data—but neither of these data flows is at issue in *Brown*. *Id*.; *see also* 6/16/21 Berntson

4  Depo Tr. 372:14-273:10 ("Q. And I believe you testified that mapping in ███████ requires a

5  Gaia ID; is that -- is that right? A. That is correct. Q. For the dataflow that's at issue in this case

6  where users are on their browsers, they're signed out of their Google accounts, they're in private

7  browsing mode, would there be any mapping from Gaia to Biscotti? A. No, because when you go

8  into private browsing mode, you start off with a completely empty cookie jar.").[2] Google should not

9  be required to categorically preserve mapping/linking tables that are irrelevant to the data at issue.

10 *Brown* Dkt. 848-4, *Calhoun* Dkt. 973-4 (1/10/23 Hr'g Tr.) at 8:4-6 ("I think I was clear on the record

11 that if the table is needed to work with any of the data at issue, it has to be preserved.").

12    Second, Plaintiffs allege that "Google also does not dispute that the ███████

13 themselves are unique to these tables." That is also wrong. As explained in the Joint Status Report

14 and at the February 14 hearing, there are no unique ███████ If Plaintiffs refer to ███████

15 ███ in ███████, it is simply one of the Biscotti IDs derived from other mapping/linking tables

16 Google is separately preserving and grouped together in ███████. *Brown* Dkt. 848-3, *Calhoun*

17 Dkt. 973-3 at 4.

18    Third, Plaintiffs argue that ███████ is purportedly accretive  because "the logs that

19 Google allegedly preserved are mere samples," and that Google is merely proposing reconstructing

20 identifier linkages in ███████ from "the tiny samples it supposedly preserved." Plaintiffs' issue

21 seems to be with the Court's sampled preservation plan, but that is an issue considered and resolved

22 already by the Court. As the Court has made clear, the question for ███████ is whether it is

23 necessary to read the preserved data. These tables were never intended to supplement the

24 preservation, only to aid it. In addition, Google has already repeatedly explained that: (1) the

25 ███████ tables comprise daily snapshots with Biscotti linkages that are derived from ███

26

27 ─────────────────

[2]   Plaintiffs did not agree to Google's request to  attach the relevant deposition transcript excerpts,

28 but Google will submit the transcript pages upon the Court's request.

source tables; (2) Google is separately preserving all ▮ source tables in full (not limited to "tiny samples"). Because the underlying mappings/linkages between Biscotti and other identifiers from which ▮ draws the Biscotti linkages are all being separately preserved, custom pipelines could be created recreate the Biscotti linkages in ▮; and (3) Google is also preserving the source code for ▮, which could potentially be applied to the preserved copies of the source tables to re-create identifier linkages. *See Brown* Dkt. 848-6, *Calhoun* Dkt. 973-6 at 1-2.

Finally, Plaintiffs claim that "Google has not revealed the full extent of what is recorded in these tables." However, as Plaintiffs know, Google has produced sampled data from all fields in one of the ▮ tables. *Brown* Dkt. 848-3, *Calhoun* Dkt. 973-3 at 1. As the Court has made clear, the inquiry is whether the mappings/linkages in the Tables can be found or derived elsewhere; "[t]his is not an open it all up and have the Plaintiffs look around and see if there's anything that relates." *Brown* Dkt. 848-8, *Calhoun* Dkt. 973-8, at 22:6-8. *See also Brown* Dkt. 848-4, *Calhoun* Dkt. 973-4, at 31:22-24 (requiring Google to demonstrate "this is the **linking** in the ▮ tables at issue, and here's where you find it in what is already being preserved.") (emphasis added); *id.* 23:9-10 ("I'm not going to, again, reorder or reopen discovery and have a full review of everything in these tables.").

***Brown* Issue 3**. Plaintiffs' revisionist demand for additional data production from the ▮ tables runs afoul of the Court's crystal-clear directive at the February 14 hearing: that Google would not need to produce additional data **unless** doing so would put the issue to rest. *Brown* Dkt. 874-3 at 60:1-10 ("The Court: … **if that won't put it to rest, then you don't have to make the effort** and I will figure out next steps as I continue to work through this.") (emphasis added). Plaintiffs have refused to confirm that additional data production would resolve any dispute.

Plaintiffs also argue that "Google has only preserved a sample of the upstream logs" and thus cannot reconstruct the entirety of the ▮ tables. But that is precisely the point: for a given sampled entry in the ▮ upstream logs, any UID/CID to Biscotti mapping will be self-contained within the sampled data and duplicative in the ▮ tables because mappings in the ▮ tables are sourced from the upstream logs. *Brown* Dkt. 848-3, *Calhoun* Dkt. 973-3 at 3. Therefore, Plaintiffs would not need the ▮ tables to read any of the preserved data.

1    ***Calhoun* Issue A**. Plaintiffs request "an under-oath declaration confirming" Google's

2    statement that it is separately preserving all the █████ source tables from which the Biscotti linkages

3    in █████████ are derived. That has already been done. Google has submitted a sworn declaration

4    on October 27, 2022 explaining that "[the] ██████████ tables comprise daily snapshots with

5    identifier linkages that are derived from other tables that we are separately preserving." *Brown* Dkt.

6    781-9, *Calhoun* Dkt. 897-11 (Seah Decl.) ¶ 5. No additional declaration or discovery is warranted.

7    ***Calhoun* Issue B**. Plaintiffs demand that a Google employee confirm Google's statement

8    that Device IDs (IDFA or AdID) are not received as part of the data flow at issue. Plaintiffs forget

9    that they already questioned Google's Rule 30(b)(6) witness Mr. Monsees regarding this very

10   question in June 2021. *See* 6/11/21 Monsees Depo Tr. at 608:2-12 (Q. Would that device ID for the

11   Chrome app on Android be transmitted in connection with Chrome app communications on

12   Android? THE WITNESS: I believe that Chrome, like other apps, will use its own cookie jar. Since

13   Chrome doesn't directly serve ads itself, which would use a device ad ID from Apple or Android,

14   that they would use the Biscotti ID in the cookie jar for the Chrome profile.").

15   ***Calhoun* Issue C**. Plaintiffs asked Google to disclose whether the Tables are being preserved

16   for other litigation. That is irrelevant. The question is whether the Tables should be preserved here

17   (they should not). Google should not be compelled to disclose privileged or otherwise protected

18   information to satisfy Plaintiffs' curiosity.

19   ***Calhoun* Issue D**. Plaintiffs claim the Court's Preservation Orders required Google to

20   disclose fields in the █████████ tables. That is plain wrong. The August 5, 2022 Order states

21   clearly that "the Preservation Order is **MODIFIED** to require Google to identify all field names for

22   any data source from which data is to be preserved on the date that sampling from each data source

23   begins. For data sources for which sampling is underway, Google is to provide field names

24   **immediately**." Dkt. 815 at 15 (emphasis in original). Google was ordered to perform daily sampled

25   preservation of ██ data sources, including ██ ████████ logs, ████ █████████ logs, ██

26   █████ corpora, GAIA ██████, ZWBK ████, GAIA ██, DBL ██, and ZWBK ██, and Google

27   has provided the fields for these data sources. *See* Dkt. 766-2. The █████████ tables are simply

28   not encompassed by the requirement of the Preservation Orders to produce field names. *See id.*

Case No. 4:20-cv-03664-YGR-SVK
Case No. 4:20-cv-05146-YGR-SVK
JOINT STATUS REPORT

Further, in this dispute, the Court has clearly said Plaintiffs are not entitled to a full list of field names for the ███████ tables. *See Brown* Dkt. 848-4, *Calhoun* Dkt. 973-4, at 26:6-7 ("So it's a nonstarter to say that we need to know what all of that data is.").

Plaintiffs also accuse Google of failing to identify the ███████ tables as "a relevant data source" during the Special Master process. That is ridiculous. Google produced more than 6,000 documents regarding ███████ during discovery. Plaintiffs have been on notice of ███████ and what it does since before the June 2021 Rule 30(b)(6) deposition where they asked detailed questions about ███████. *See* 6/11/21 Monsees Depo Tr. ("Q. … What is ███████? A. … ███████, I believe, would try to do the linking between these Biscotti IDs on the device, on the same device, like this device identifier with the – the Biscotti that we were reading about here."). Moreover, the Court ordered preservation of mapping/linking tables to ensure that other data at issue can be read—not to supplement the list of "relevant data sources." *Brown* Dkt. 848-4, *Calhoun* Dkt. 973-4 at 25:20-23 ("To ensure that … they're not creating a situation where data is being preserved but ultimately can't be read because these tables were not preserved."). As Google explained in the January 31 Joint Status Report and at the February 14 hearing, the ███████ tables are entirely unnecessary for the only task for which they were ordered to be preserved: to ensure that at-issue data could be read. *See Brown* Dkt. 848-3, *Calhoun* Dkt. 973-3 at 2.

*__Calhoun__ Issue E*. Plaintiffs' claim that Google maps Biscotti to GAIA through an intermediate step is baseless. It also strays far from the question the Court asked the parties to focus on: whether the identifier linkages in ███████ could be derived from other data Google is already preserving. As Google has already explained in a sworn declaration, Google does not maintain a mapping or linking of Biscotti to GAIA or vice versa. *See Calhoun* Dkt 897-11 (Seah Decl.) ¶ 7 ("Google did not implement a mapping from ADID or Biscotti to GAIA."). Neither does Google map Biscotti to GAIA through ███████ or ███████ because ███████, and ███████. *Calhoun* Dkt. 942-5 at -332.

*__Calhoun__ Issue F*. Plaintiffs' request that Google identify "data sources being preserved that contain ███████ data" similarly goes beyond the dispute at issue. Neither the ███████ tables nor the ███████ tables contain Zwieback IDs or hashed value of Zwieback IDs.

**BROWN PLAINTIFFS' STATEMENT**

Google is not asking the Court to relieve it from compliance with a standing Court Order; Google is asking the Court to bless its failure to preserve. Google's criticisms here of Plaintiffs' understandings of Google's data systems are entirely based on its say so, and demonstrates why Google should have long ago disclosed these █ mapping and linking tables well before the close of discovery: so that Plaintiffs could review the data, depose witnesses, and gather facts. But Google waited until well after the close of discovery to disclose these data sources and has refused to allow discovery into their full substance. That is not how discovery is supposed to work, but it is exactly how Google has approached this litigation time and time again, revealing more information only after discovery has closed and critical briefing has passed. That should not be rewarded.

However, after elaborate maneuverings and forcing everyone to run-about, the actual issue before the Court is clear: Google has not been preserving the █ mapping and linking tables it now concedes were relevant and contain more information than the underlying preserved data. In other words, the information in these █ tables is neither duplicative nor redundant. Because Google has only been preserving a tiny subset of samples from upstream logs from which these tables originally drew from, the tables and the data that would have been contained therein can no longer be recreated. Instead of asking for Court guidance before all of this happened (or confessing candidly at this juncture), Google is now disguising the issue as one about ongoing compliance, as opposed to a failure to have complied with the Court's May 20, 2022 Preservation Order.

The Court should not so reward Google. Instead, the Court should simply find that Google again failed to preserve relevant data sources in violation of the standing May 20, 2022 Preservation Order. In addition, the Court should reinforce its prior Preservation Order, which prevents Google from challenging class certification and class membership because of the absence of data— especially data that Google failed to preserve.

1. **The Court Already Found That Google May Not Use Its Failure to Preserve Data to Its Advantage:**

The Court's May 20, 2022 Preservation Order was clear: Google may not use the absence of data—especially data not preserved—to challenge class certification or class membership.

Specifically, the Court found and held:

- "Google may not use the fact that only sampled data, not complete data, is available to challenge class certification or attestations by individuals that they are members of the class," (Dk 587, at 7:14-16) and;

- "Google's proposed mutual stipulation that neither party uses the absence of data in argument: -OVERRULED. Plaintiffs do not agree, and the Court finds no basis to limit Plaintiffs' arguments regarding the data" (Dk. 587, at 8:21-24.)

**2. The ▮▮ ▮▮▮▮▮ Tables Are Relevant, and Were Never Preserved:**

To fully appreciate what Google is really asking from the Court in light of the Preservation Order, it is important to review Google's careful parsing. First, Google does not dispute that the ▮▮ mapping and linking tables Google identified in response to the Court's May 20, 2022 Preservation Order are relevant to this case. In fact, Google was also ordered to preserve at least ▮ upstream logs from which these ▮▮ mapping and linking tables drew from.[3]       Second, Google concedes it did not produce any of the data from these tables during discovery in this case. Instead, Google provided a tiny snippet from some (but not most) of the tables only after this dispute arose, but not before. Therefore, the full contents of the ▮▮ mapping and linking tables is only known to Google, and not the Court, the Special Master, or Plaintiffs.

Third, the data in these ▮▮▮▮ tables are not "non-accretive" as Google alleges, because the logs that Google allegedly preserved are mere samples, *whereas the tables themselves contained a full record of the "*▮▮▮▮▮ *(of users)" identified by Google, including private browsing users.*[4] When Google claims that it might be able to reconstruct information in these tables—and Google admits *it has not even attempted to recreate the tables with the preserved data*

---

[3] For context, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Many of these websites use the same IDs for their users when they are in web, as when they are on an app. And Google has admitted in this briefing that the ▮▮▮▮▮▮ combine those "app+web" IDs to identify users.  The ▮▮▮▮▮▮ also combine from various other sources, including the sources subject to the Preservation Order and others, to form enriched user profiles, which Google then uses for its own purposes.

[4] Google also does not dispute that the ▮▮▮▮▮▮▮ themselves are unique to these tables.

*as it suggests Plaintiffs might*—it is merely referring to reconstructing from the tiny samples it supposedly preserved, not the original table or the vast amounts of data contained in those tables.[5] Those additional linkages that would have been reflected in the original ██ ███████ tables are forever gone and incapable of being recreated, and Google has proffered no alternative source from which they may be reconstructed.[6]

Lastly, Google admits that it has not preserved a single byte of the data as it exists in these ██ mapping and linking tables at any time, even though they were subject to the Court's Preservation Order. Thus, Google is not asking for relief from imminent compliance; it is asking the Court to retroactively bless Google's failure to preserve data that is highly relevant to this litigation, and subject to a standing preservation order. Google has not revealed the full extent of what is recorded in these tables (only some, but not all, of the data that goes into these tables) and has been less than candid in what it is actually asking for from the Court. Such defiance should not be rewarded, especially where there is no review of what Google failed to preserve.

**3. The ██ ███████ Tables Are Also Relevant, And Google Likewise Refuses to Preserve or Provide Further Details:**

At the February 14, 2023 preservation hearing, the Court identified a compromise that should have moved this dispute forward: with the benefit of Plaintiffs' consultants' identifiers, instead of only producing data from the logs that Google has represented it is preserving, Google would also produce the data from the ██ ████ tables that Google is not preserving. 2/14/23 Hrg. Tr. 46:15–60:14. To accomplish this, Plaintiffs' consultants would capture recent browsing activity, provide identifiers from those captures to Google, and Google would produce the data.

When Plaintiffs' counsel contacted Google on February 18, 2023 to confirm how they should provide the identifiers, Google's counsel revised what it had already proposed to the Court. Google's new terms were that it would only produce information if Plaintiffs agreed to *entirely drop* the

---

[5] Notably, in a recent meet and confer on February 28, 2023, Google admitted it is unsure whether the ████████ table can be recreated because Google has made no such attempt with the preserved data. This is contrary to Google's prior representations to the Court.

[6] Hence, Google is only willing to tactfully state, "Google is preserving the source code for ████████ that *could potentially be run* over the preserved copies of the underlying tables from which the Biscotti linkages in ████████ are derived to re-generate the ████████ tables." *See* Google's February 17, 2023 Letter, attached as **Exhibit A** (emphasis added).

1   ████ table dispute *before Plaintiffs had the opportunity to review any data*. Worse, Google

2   *would not produce the data in full*, and instead would *only produce the limited portion of the*

3   ████ *tables that contained the linkage*.

4   On February 20, 2023 counsel for the parties met and conferred, and Google's counsel

5   confirmed those were the terms of Google's new deal, and it was a take-it-or-leave-it proposition.

6   Plaintiffs' counsel stated they could not agree to resolve this dispute without seeing any production,

7   and that production had to demonstrate Google's representations that the ████ tables were

8   entirely duplicative of the preserved logs that fed the ████ Tables. *See* 2/14/23 Hrg. Tr. 58:16–

9   59:25.[7] Google now will not show what is there, only that a linkage that is contained in the ████

10  table. Google's offer to prove that a mapping or linking table contains a mapping or linking—in

11  isolation without any other context—does not advance this dispute, and Plaintiffs were clear that

12  seeing the entire entry is what would help this dispute. Because of Google's unilateral changes to

13  the Court's proposal, the parties are in the same place they were at the February 14, 2023

14  preservation hearing.

15  Regardless, Google is also asking for the Court's blessing to excuse its compliance for these

16  ████ tables after failing to preserve them. Google has only preserved a sample of the upstream logs,

17  which means that the reconstruction that Google represents might be possible is nothing but

18  potential reconstruction of a small part of what should have been preserved. Like the ████

19  Tables, the ████ tables cannot be reconstructed, and what Google is really asking for is the Court's

20  blessing after what was ordered to be preserved was already destroyed. As with the ████

21  Tables, Google's defiance should not be rewarded.

22  **4. The Court Only Needs to Find a Violation, And Extend Its Prior Order:**

23  Google cannot have its cake and eat it too; Google has always disputed what is or is not in

24

---

25  [7] "Mr. McGee: If Google were going to produce the entry from the actual table itself, to show
    what the addition looks like, I can certainly speak with our consultants, but my review of the e-

26  mails was that would have been helpful . . . . The Court: And Ms. Trebicka, I understood your
    response to that to be that ***you are showing what's there***, and to find the actual ID in the table

27  would be burdensome, did I get that correct? . . . Ms. Tribecka: Your Honor, you heard it very

28  correctly." (emphasis added).

1    its data sources, and what that information may or may not prove in this litigation. But Google has

2    not preserved any of the data in these ███ mapping and linking tables, and would not provide

3    additional details so that the data can be further evaluated.[8]

4           Where Google did not seek permission from the Court (before violating the Court's

5    Preservation Order) such defiance should not be rewarded. In addition, the Court already gave a

6    simple ultimatum to Google: if Google does not preserve data, it may not use the failure to preserve

7    to challenge class certification or class membership. *See* Dkt. 587, at 7:14-16 and 8:21-24. Here,

8    that logic should equally apply, and Google should be barred from using the destruction of data to

9    challenge class certification or membership.

10          Plaintiffs do not believe that the Court needs to give Google any additional relief. Instead,

11   Google's defiance of the Preservation Order is clear, and the prior Order only needs to be extended

12   to what Google has further failed to preserve.

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26   [8] Any cost-sharing proposal is presently unworkable: that would require Plaintiffs to pay for data
     they have not been able to review.  Regardless, it is clear now that the cost-sharing proposal was
27   merely a strawman.  Google already admitted to failing to preserve the six tables for the entire
28   Class Period.  Cost-sharing would have only gone to future claims, not the original claims at issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CALHOUN PLAINTIFFS' STATEMENT**

**I.      UPDATE ON MEET-AND-CONFER EFFORTS**

On February 6, 2023, the *Calhoun* Plaintiffs asked Google 19 questions related to Google's motion for relief.  *See* **Ex. A**. On February 17, 2023, Google responded. *See* **Ex. B**. On February 27, 2023, after consulting with their experts, the *Calhoun* Plaintiffs wrote a final follow-up letter to Google identify six areas of impasse and asked to address each of them at the Zoom meet-and-confer scheduled for February 28, 2023. These final areas of impasse were numbered A through F to avoid confusion with the earlier correspondence.[9]  On February 28, 2023, the parties held a joint Zoom meet-and-confer teleconference. For the *Calhoun* portion, the February 27 letter served as the guide.

**II.     UNRESOLVED ISSUES**

*Calhoun* Plaintiffs are grateful the Court gave the parties time to investigate whether Google's proposed relief would prejudice Plaintiffs or the proposed class. While some questions have been resolved, the biggest issues remain at impasse.   The *Calhoun* Plaintiffs therefore respectfully request that Google's Motion be denied, or alternatively be deferred until Google follows the Court's previous orders, as discussed below.[10]

**A.      Re-Creation of the Linkages**

On February 28, 2023, Google counsel represented that the "at issue" ███████ Tables are derived **only** from the ███ data sources identified in its response to Question 4 in Google's letter of February 17, 2023 (Exhibit B).  Google counsel further represented that these ███ data sources are currently being preserved in full.  Google counsel stated that preservation began soon after the Court's August 5, 2022 preservation order.[11]  If a Google employee (not counsel) were to provide an under-oath declaration confirming these representations, the *Calhoun* Plaintiffs would consider

---

[9]   Google declined consent to include the February 17, 2023 letter as an exhibit to this joint submission.  The *Calhoun* Plaintiffs can submit the letter to the Court upon request.

[10]   The *Calhoun* Plaintiffs identify no remaining issues with respect to the ██████ Tables, but understand that those tables are still very much in dispute in the *Brown* matter.

[11]   Plaintiffs requested the exact date that preservation of the ███ underlying data sources started but so far the response has not been provided.

Case No. 4:20-cv-03664-YGR-SVK
Case No. 4:20-cv-05146-YGR-SVK
JOINT STATUS REPORT

1   this topic closed at least from the *Calhoun* perspective. It is important to note, however, that Google

2   only represents that the *linkages* could be recreated; Google acknowledged on the February 28, 2023

3   that other data is stored in ███████ and such data is *not* solely derived from the ██ disclosed

4   underlying tables, but Google refuses to disclose the additional sources and refuses to disclose the

5   fields. These additional disputes are addressed in Section D below.

6       **B.      Mobile Environment**

7       Google represented in its February 17, 2023 response to Question 8 that Device IDs are not

8   passed from class members' Chrome browsers to Google even in the mobile environment when

9   Chrome takes the form of a traditional app.  *See* Ex. B. Google counsel repeated this representation

10  during the February 28, 2023 Zoom meet-and-confer.  If a Google employee (not counsel) were to

11  provide an under-oath declaration confirming these representations, the *Calhoun* Plaintiffs would

12  consider this topic closed, at least from the *Calhoun* perspective.

13      **C.      Preservation of ██████████ Tables for Other Matters**

14      Google refuses to tell the Court or Plaintiffs whether ████████ Tables are being

15  preserved for other litigation. This is remarkable because Google's motion is based solely on

16  burdens grounds – and clearly there are no extra burdens associated with preserving a data source

17  that is already being preserved for other purposes (litigation, regulatory review, or other).  *See* Ex.

18  A (Question 12); Ex. B (Google response to Question 12).  Plaintiffs respectfully request that

19  Google's Motion be denied in full unless and until Google discloses whether and which parts of the

20  ██████████ tables are being preserved for other matters.

21      **D.      Identification of Fields in the ██████████ Tables**

22      The biggest unresolved issue is Google's refusal to disclose what is in the at-issue mapping

23  tables. Google's position is improper for two fundamental reasons:

       ***1.     The Court Has Already Ordered that the Fields be Disclosed.***

25      In this Court's sealed preservation order dated July 15, 2022 (the "Order," Dkt. No. 766),

26  the Court resolved various objections to the Special Master's revised recommended preservation

27  plan. One objection (Objection 15) related to transparency, which the Court sustained in part and

28

1    denied in part.  *See* Order at 8 ("Google is to identify by July 30, 2022 all field names for any data

2    source from which data is to be preserved.").

3        There is no doubt that the ███████ Tables are a "data source from which data is to be

4    preserved." Although the recommended preservation plan did not include them, Plaintiffs requested

5    that they be added (Objection 3) ***and the Court agreed***, ruling specifically that "Mapping tables are

6    to be preserved in their entirety." *Id*. On Google's motion, the Court then extended the and reiterated,

7    "The Preservation Order requires Google to identify all field names from which data is to be

8    preserved[.]" Dkt. 815 at 14. To this date, Google has never complied.. Thus Google is asking this

9    Court to remove the tables from the preservation plan; keep the Plaintiffs and the Court in the dark

10   about the fields contained therein; and ignore Google's prior non-compliance with the Order.

11   Plaintiffs respectfully request that the Court deny Google's Motion, or alternatively order Google

12   to first comply with the Order and produce the fields to allow the parties to proceed on an informed

13   basis.[12]

14        **2.   Google Improperly Failed to Identify the Mapping Tables as "Relevant**

15        **Sources" at the Start of the Special Master Process.**

16        Google also improperly withheld the contents of these mapping tables from the Plaintiffs

17   and the Special Master for the entirety of the Special Master process.  As the Court knows, in RFP

18   No. 5, the *Calhoun* Plaintiffs long ago requested Named Plaintiff Data, including "data or

19   information connected to identifiers associated with Plaintiffs and all data collected from their

20   Chrome browsers of any kind, as well as" Google Account information and cookie values.  After a

21   motion to compel, on September 16, 2021, the Court ordered that, as "Step 1" of the Special Master

22   process that, "[b]y the morning of September 17, 2021, Google will identify to the Special Master

23   and Plaintiffs all databases and data logs . . . that may contain responsive information" for Plaintiffs'

24   RFP No. 5. Dkt. No. 273 at 1. For each data source identified in response to Dkt. 273, Google was

25

26   _____
     [12]  This is not the first time that Google refused to produce fields pursuant to a Court order. Plaintiffs
27   requested fields on February 24, 2021 at Dkt. 118-5, ¶ 7 to "evaluate the scope of the data Google
     is failing to preserve[.]" On March 5, 2021, the Court ordered conferral "regarding a narrow
28   production of documents referenced in Dkt. 118-5 ¶ 7" by April 5, 2021. Dkt. 129.

to provide, "at a minimum: (1) the name of the database … ; (2) a description of the data source's purpose and function" and more. Dkt. 273 at 1. As "Step 2," the Special Master would oversee a process to identify sources "subject to searches and production." *Id.* at 2.

Google improperly failed to identify the mapping tables as a relevant data source. On September 17, 2021, Google submitted a list to the Special Master, claiming it was "over-inclusive in its identification of potentially relevant sources of ESI." Google's submission did not include ████████, even though Plaintiffs specifically identified it in briefing on a prior Motion to Compel Named Plaintiff Data. *See* Dkt. 226 at 7. As a result of Google's failure to include ████████ in response to the Court's order, it was excluded from the Special Master process.[13] The *Calhoun* Plaintiffs believe it is unfair and prejudicial to ask Plaintiffs to consent to Google's request for relief from preservation of a relevant table that Google improperly excluded from the Special Master process 18 months ago. For this reason as well, Plaintiffs respectfully request that the Court deny Google's Motion, or alternatively order Google to produce the fields to allow the parties to proceed on an informed basis.

---

[13] Google's argument that it "produced more than 6,000 documents regarding ████████" and that "Plaintiffs have been on notice" since "as early as June 2021 when they deposed Google's Rule 30(b)(6) witness Mr. Monsees" sidesteps the issue. The Court appointed a Special Master to work through the Named Plaintiff Data issue and expressly ordered, as Step 1 of that process, for Google to identify "all data bases and data logs that may contain responsive data." Step 2 would identify sources for search and production from that list. If a data source was not included in Step 1, there was no mechanism for discovery of it through the Special Master. Google also ignores two additional crucial facts. The Monsees 30(b)(6) deposition was taken by Court order relating to NPD and preservation. When asked about ████████, Mr. Monsees started by stating, "I don't know if ████████ is still a thing, but ████████ *used to be one of the systems to try to understand conversions*." Monsees Dep. at 611:10-13. Then, in response to Plaintiffs' reference to ████████ in the Motion to Compel NPD that led to the appointment of the Special Master, Google said Plaintiffs were "incorrect" about ████████, that it was "only used for tracking conversions … which are 'recorded in the aggregate and … not associated to an individual users' such that 'individual users are not being tracked, only aggregate level insights" and "it's this very isolated, very limited set of functionality that is just counting conversions[.]" Dkt. 232-4 at 7.

**E.** **Biscotti-to-GAIA Mapping**

Google has told the Court that it "does not maintain GAIA-to-Biscotti mapping or linking tables." *See, e.g.*, Ex. B, Response to Question 3.  But the letter does admit (and Google confirmed during the February 28, 2023 Zoom meet and confer) that Google maps Biscotti to ███████, and a ██████████████████████████. *Id.*, Response to Question 5. Similarly, Google admits that Biscotti IDs are mapped to ████████████████████████. *Id.* Thus Google does in fact map Biscottis to GAIA but through an intermediate step. The parties addressed this issue during the February 28, 2023 meet-and-confer and Google confirmed that even with the two-step mapping process, Google would be able to fully recreate the linkages in ████████ from the ███ underlying data sources.  The *Calhoun* Plaintiffs note, however, that in the *Brown* portion of Google's submission, Google cites deposition testimony confirming that ████████ maps Gaia to Biscotti when a user is signed in (Q: For users "signed out of their Google accounts … in private browsing mode, would there by any mapping from Gaia to Biscotti? A: No, because when you go into private browsing mode, you start off with a completely empty cookie jar. A Biscotti is created, and if you don't sign in to Google, *there's no Gaia to map that new Biscotti to*.") Because of the lack of clarity from Google on this point, Plaintiffs request that a Google employee (not counsel) provide an under-oath declaration confirming all representations related to GAIA-to-Biscotti mapping (including mapping to intermediate identifiers such as ██████ and ██████).

**F.** **Mapping to Zwieback**

Google represented that ██████████ does not contain Zwieback identifiers.  *See* Ex. B, Resp. to Question 11(a). But Google refuses to disclose whether they contain any hashed Zwieback values, analogous to ██████████ discussed above. Google also refuses to identify the data sources being preserved that contain ██████████ data, including mapping tables that map Zwieback identifiers to Biscottis or GAIAs – or that map Zwiebacks to any intermediate identifiers. These are basic questions that should have already been answered by Google as a result of the Court's order that Google "identify … all field names for any data source from which data is to be preserve" and that "mapping tables are to be preserved in their entirety." Google should first comply with the Court's prior orders before the Court grants Google's requested relief.

DATED: March 3, 2023

Respectfully submitted,

By: /s/ Mark Mao

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Erika Nyborg-Burch
enyborg-burch@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293 6858
Fax: (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Tel: (305) 539-8400
Fax: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602

**BLEICHMAR FONTI & AULD LLP**

By:      /s/ Lesley Weaver

Lesley Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**DiCELLO LEVITT LLC**

By:      /s/ David A. Straite

David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
485 Lexington Ave., Tenth Floor
New York, NY 10017 Tel.:
(646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

**SIMMONS HANLY CONROY LLC**

By:      /s/ Jason 'Jay' Barnes

Jason 'Jay' Barnes (admitted *pro hac vice*)
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400

Tel: (813) 223-5505
Fax: (813) 222-4736

Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Brown Plaintiffs*

Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Counsel for Calhoun Plaintiffs*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:  */s/ Andrew H. Schapiro*

Andrew H. Schapiro (admitted pro hac vice)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

Josef Ansorge (admitted pro hac vice)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

## **ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Submission. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: March 3, 2023                                    By _____/s/ Andrew H. Schapiro_____
                                                                              Andrew H. Schapiro
                                                                              *Counsel on behalf of Google LLC*