# TRANSCRIPT OF 3/2/23 SEALED PROCEEDINGS

# Redacted Version of Document Sought to be Sealed

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4

 5    CHASOM BROWN, ET AL., ON BEHALF  )  C-20-03664 YGR
      OF THEMSELVES AND ALL OTHERS     )
 6    SIMILARLY SITUATED,              )  SAN JOSE, CALIFORNIA
                                       )
 7                     PLAINTIFFS,     )  MARCH 2, 2023
                                       )
 8              VS.                    )  PAGES 1-120
                                       )
 9    GOOGLE LLC,                      )  SEALED PROCEEDINGS
                                       )
10                     DEFENDANT.      )
      _____  )
11

12

13                TRANSCRIPT OF SEALED PROCEEDINGS
            BEFORE THE HONORABLE SUSAN VAN KEULEN
14               UNITED STATES MAGISTRATE JUDGE

15    A P P E A R A N C E S:

16    FOR THE PLAINTIFFS:    BOIES SCHILLER FLEXNER LLP
                             BY:  DAVID BOIES
17                                ALEXANDER BOIES
                             333 MAIN STREET
18                           ARMONK, NEW YORK  10504

19                           BY:  MARK C. MAO
                                  BEKO O. REBLITZ-RICHARDSON
20                                MARIAH NOAH
                             44 MONTGOMERY STREET, 41ST FLOOR
21                           SAN FRANCISCO, CALIFORNIA  94104

22              APPEARANCES CONTINUED ON NEXT PAGE

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

SEALED PROCEEDINGS

```
1     APPEARANCES (CONTINUED)

2

3     FOR THE PLAINTIFFS:    BOIES SCHILLER FLEXNER LLP
                             BY:  LOGAN M. WRIGHT
4                            725 S. FIGUEROA STREET, 31ST FLOOR
                             LOS ANGELES, CALIFORNIA  90017
5

6                            MORGAN & MORGAN
                             BY:  JOHN A. YANCHUNIS
7                                 RYAN J. MCGEE
                             201 N. FRANKLIN STREET, 7TH FLOOR
8                            TAMPA, FLORIDA  33602

9                            SUSMAN GODFREY
                             BY:  ALEXANDER P. FRAWLEY
10                           1301 AVENUE OF THE AMERICAS, 32ND FLOOR
                             NEW YORK, NEW YORK  10019
11

12                           BY:  AMANDA K. BONN
                             1900 AVENUE OF THE STARS, SUITE 1400
13                           LOS ANGELES, CALIFORNIA  90067

14    FOR THE DEFENDANTS:    QUINN EMANUEL URQUHART & SULLIVAN
                             BY:  ANDREW H. SCHAPIRO
15                                JOSEPH H. MARGOLIES
                             191 N. WACKER DRIVE, SUITE 2700
16                           CHICAGO, ILLINOIS  60606

17                           BY:  VIOLA TREBICKA
                                  STEPHEN A. BROOME
18                           865 S. FIGUEROA STREET, 10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
19

                             BY:  JOSEF ANSORGE
20                                CARL W. SPILLY
                             1300 I. STREET, N.W., SUITE 900
21                           WASHINGTON, D.C.  20005

22    ALSO PRESENT:          CHRISTOPHER THOMPSON
                             JAY BHATIA
23                           LILLIAN DAI
                             MATTHEW BOLES
24                           TONI BAKER

25
```

```
 1    SAN JOSE, CALIFORNIA                    MARCH 2, 203

 2                        P R O C E E D I N G S

 3         (PROCEEDINGS CONVENED AT 10:04 A.M.)

 4              THE COURT:  GOOD MORNING, EVERYONE.  WELCOME TO THE

 5    10:00 O'CLOCK CALENDAR.  IT IS 10:00 O'CLOCK.

 6         PLEASE BE SEATED.

 7         MS. SHORTRIDGE, GOOD MORNING.

 8              THE REPORTER:  GOOD MORNING.

 9              THE COURT:  ALL RIGHT.

10         MS. FANTHORPE, IF YOU'LL CALL THE MATTER, WE'LL GET

11    UNDERWAY.

12              THE CLERK:  WE'RE CALLING SEALED HEARING IN CASE

13    20-CV-3664, BROWN, ET AL, VERSUS GOOGLE, LLC, ET AL.

14         COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD,

15    BEGINNING WITH PLAINTIFF.  AND IF I COULD ALSO HAVE YOU SAY THE

16    CONSULTANTS, JUST WHO'S WITH ALL OF YOU HERE TODAY.

17         THANK YOU.

18              MR. BOIES:  GOOD MORNING, YOUR HONOR.

19         DAVID BOIES OF BOIES SCHILLER FLEXNER REPRESENTING THE

20    PLAINTIFF.

21              THE COURT:  MR. BOIES, GOOD MORNING.

22         MR. BOIES:  THANK YOU.

23         MR. MAO:  MARK MAO, BOIES SCHILLER, REPRESENTING

24    PLAINTIFFS.

25         GOOD MORNING, YOUR HONOR.
```

SEALED PROCEEDINGS

```
 1                THE COURT:  GOOD MORNING, MR. MAO.

 2                MR. WRIGHT:  GOOD MORNING, YOUR HONOR.

 3           LOGAN WRIGHT OF BOIES SCHILLER REPRESENTING PLAINTIFFS.

 4                THE COURT:  GOOD MORNING.

 5                MR. BOLES:  MATTHEW BOLES, TECH FOR THE PLAINTIFF.

 6                THE COURT:  THANK YOU, MR. BOLES.

 7                MR. FRAWLEY:  ALEXANDER FRAWLEY FROM SUSMAN GODFREY

 8      FOR THE PLAINTIFFS.

 9                THE COURT:  GOOD MORNING.

10                MR. YANCHUNIS:  GOOD MORNING, YOUR HONOR.

11           JOHN YANCHUNIS OF MORGAN & MORGAN FOR THE PLAINTIFFS.

12                THE COURT:  MR. YANCHUNIS, GOOD MORNING.

13                MR. MCGEE:  GOOD MORNING, YOUR HONOR.

14           RYAN MCGEE OF MORGAN & MORGAN FOR THE PLAINTIFFS.

15           AND WE ALSO HAVE OUR CONSULTANTS WHO ARE PRESENT, YOUR

16      HONOR.

17                THE COURT:  OKAY.

18                MR. MCGEE:  MR. CHRIS THOMPSON AND MR. JAY BHATIA.

19                THE COURT:  GOOD MORNING.  THANK YOU FOR BEING HERE.

20                MR. MCGEE:  OH, AND EXCUSE ME, JUDGE.

21           DR. LILLIAN DAI, WHO HAS STEPPED OUT.

22                THE COURT:  SHE WILL BE BACK.  OKAY.  THANK YOU.

23           AND FOR THE DEFENDANTS?

24                MS. BONN:  GOOD MORNING, YOUR HONOR.

25           AMANDA BONN WITH SUSMAN GODFREY FOR PLAINTIFFS.
```

1              THE COURT:  MS. BONN, GOOD MORNING.

2              MR. REBLITZ-RICHARDSON:  AND BEKO REBLITZ-RICHARDSON,

3     BOIES SCHILLER FLEXNER, ON BEHALF OF THE PLAINTIFFS.

4              MR. ALEX BOIES:  ALEX BOIES FROM BOIES SCHILLER

5     FLEXNER.

6              THE COURT:  GOOD MORNING.

7              MS. NOAH:  MARIAH NOAH WITH BOIES SCHILLER FLEXNER

8     FOR THE PLAINTIFFS.

9              THE COURT:  GOOD MORNING.  THANK YOU ALL FOR BEING

10    HERE, AND BEING HERE IN PERSON.  IT'S ALWAYS NICE TO SEE PEOPLE

11    IN PERSON WHEN WE'VE DONE SO MUCH OF THIS WORK BY VIDEO.

12         ALL RIGHT.  FOR DEFENDANTS TODAY?

13             MR. SCHAPIRO:  GOOD MORNING, YOUR HONOR.

14         I'M ANDREW SCHAPIRO FROM QUINN EMANUEL FOR GOOGLE.  MY

15    COLLEAGUES WILL INTRODUCE THEMSELVES, BUT ALSO WITH US IN THE

16    GALLERY IS TONI BAKER, WHO IS SENIOR DISCOVERY COUNSEL AT

17    GOOGLE.

18             THE COURT:  EXCELLENT.  GOOD MORNING.

19             MS. TREBICKA:  GOOD MORNING, YOUR HONOR.

20         VIOLA TREBICKA, QUINN EMANUEL, FOR GOOGLE.

21             MR. BROOME:  GOOD AFTERNOON, YOUR HONOR.

22         STEPHEN BROOME FOR GOOGLE FROM QUINN EMANUEL.

23             MR. ANSORGE:  GOOD MORNING, YOUR HONOR.

24         JOSEF ANSORGE WITH QUINN EMANUEL FOR GOOGLE.

25             THE COURT:  OKAY.  BE SURE EVERYONE KEEPS YOUR VOICES

1    UP.  I KNOW WHO YOU ARE, BUT MS. SHORTRIDGE WANTS TO BE SURE TO

2    GET THEM ON THE RECORD.

3              MR. MARGOLIES:  GOOD MORNING, YOUR HONOR.

4         JOSEPH MARGOLIES FROM QUINN EMANUEL, ALSO FOR GOOGLE.

5              THE COURT:  GOOD MORNING.

6              MR. SPILLY:  GOOD MORNING, YOUR HONOR.

7         CARL SPILLY FROM QUINN EMANUEL FOR GOOGLE.

8              THE COURT:  MR. SPILLY, THANK YOU FOR BEING HERE.

9         ALL RIGHT.  OKAY.  WE ARE ON TODAY FOR AN ORDER TO SHOW

10   CAUSE AS TO WHY GOOGLE SHOULD NOT BE SANCTIONED FURTHER FOR

11   DISCOVERY VIOLATIONS.

12        THIS ARISES OUT OF A FAIRLY LONG SERIES OF BRIEFING.  I

13   THINK THE ISSUE WAS INITIALLY RAISED LAST JUNE FOLLOWING MY MAY

14   ORDER ON SANCTIONS FOR DISCOVERY MISCONDUCT, AND THE SUBSEQUENT

15   IDENTIFICATION OF ADDITIONAL LOGS THAT HAD THE INCOGNITO BITS.

16        WE WORKED THROUGH SOME PRELIMINARY BRIEFING ISSUES AND

17   TIMING OVER THE SUMMER, AND THEN WE HAD THE BRIEFING IN EARNEST

18   IN THE FALL AND FIRST PART OF THIS YEAR, AND HERE WE ARE.

19        I HAVE BEEN THROUGH ALL OF THE PAPERS -- THANK YOU --

20   WHICH FIRST BRINGS ME TO JUST TWO HOUSEKEEPING POINTS.  BETTER

21   LATE THAN NEVER, PERHAPS, BECAUSE WE'VE ALL BEEN AT THIS A LONG

22   TIME.

23        BUT WHEN YOU -- WHEN I ASK FOR CHAMBERS COPIES -- WHICH

24   EVERYONE HAS BEEN VERY HELPFUL WITH IN PUTTING THOSE IN BINDERS

25   FOR ME, I APPRECIATE THAT -- PLEASE USE ECF COPIES THAT HAVE

1    THE ECF NUMBERS, BECAUSE THAT'S THE LANGUAGE MY CLERKS AND I

2    SPEAK, AND THAT HELPS US KEEP TRACK.

3         ALSO, WHEN YOU ARE HIGHLIGHTING WHAT IS REDACTED IN THE

4    PUBLIC VERSIONS, PLEASE DON'T USE THE BLUE HIGHLIGHTING.  IT'S

5    OKAY ON THE SCREEN, BUT IT'S -- THERE'S NO CONTRAST.  IT'S

6    IMPOSSIBLE TO READ IN HARD COPY.

7         SO -- BUT I MANAGED, AND I DID READ EVERYTHING, SO THANK

8    YOU FOR THAT.

9         SO -- OKAY.  WE PICKED UP -- AS I SAID, THIS PICKS UP FROM

10   WHERE MY MAY 20TH, '22 ORDER LEAVES OFF.  I HAVE BEEN THROUGH

11   ALL OF THE PAPERS, AND I THINK THERE ARE TWO ISSUES OF

12   PARTICULAR INTEREST TO ME:

13        OBVIOUSLY THE JUNE IDENTIFICATION OF THE ADDITIONAL █

14   LOGS, AND I THINK THAT THERE WAS █ MORE IN THE SUBSEQUENT

15   BRIEFING, I THINK THE NUMBER IS █, BUT YOU ALL CAN CLARIFY

16   THAT FOR ME.

17        AND THE ISSUE THERE FOR ME IS IT CERTAINLY APPEARS THAT

18   THOSE LOGS SHOULD HAVE BEEN IDENTIFIED THROUGH THE PRIOR ORDERS

19   OF THIS COURT, AND OF PARTICULAR INTEREST IN THAT COLLECTION OF

20   LOGS IS THE █████ LOG UNDER THE ██████ LOG CATEGORY THAT HAS

21   BOTH THE AUTHENTICATED AND UNAUTHENTICATED USER DATA.

22        I DID WORK THROUGH THE EXPERTS.  I UNDERSTAND THERE'S A

23   DISPUTE ABOUT WHETHER OR NOT DATA IS JOINED OR CAN BE JOINED.

24        BUT I'M VERY FOCUSSED ON, OKAY, BUT REALLY, SHOULDN'T

25   THESE LOGS HAVE BEEN IDENTIFIED REGARDLESS OF WHAT'S IN AND

```
 1        WHETHER IT'S ACCRETIVE.

 2              BUT I WILL HEAR FROM BOTH SIDES ON THAT ISSUE.

 3              AND THEN THE SECOND THING OF INTEREST TO THE COURT IS THIS

 4        LATE IDENTIFICATION OF THE ████████████████ HEURISTIC.

 5              AGAIN, IT APPEARS TO ME THAT THAT SHOULD HAVE BEEN

 6        IDENTIFIED IN OUR PRIOR PROCEEDINGS, SO I'D LIKE THOSE TO BE

 7        ADDRESSED, AND AS TO EITHER WHY THOSE ARE NOT -- WELL, WHY --

 8        IF THERE'S ANY REASON AS TO WHY THOSE SHOULD NOT HAVE BEEN

 9        IDENTIFIED PURSUANT TO MY PRIOR ORDERS, AND IF SO, THEN WHAT IS

10        THE PREJUDICE AND REMEDY ISSUES.

11              SO THAT'S, IN BROAD BRUSH STROKES, WHAT I'M LOOKING AT.

12        AS I SAY, I HAVE BEEN THROUGH ALL THE MATERIALS.  I HAVE COPIES

13        HERE, AND I WILL FOLLOW ALONG AS BEST AS I CAN, AND I'LL HEAR

14        FROM BOTH SIDES.

15              SO LET'S START THERE, AND I'LL HEAR FROM GOOGLE FIRST.

16              MR. SCHAPIRO:  THANK YOU, YOUR HONOR.

17              I'M GOING TO JUST GIVE A FOUR-MINUTE OVERVIEW, AND THEN,

18        IN CONJUNCTION WITH MY COLLEAGUES, WE'LL WALK THROUGH THE MORE

19        DETAILED PRESENTATION.

20              THE COURT:  OKAY.  I DID NOT SET SPECIFIC TIME

21        LIMITS, BUT I THOUGHT BY -- I WANTED TO BE SURE I'D GOTTEN

22        THROUGH THE PAPERS, AND I KNEW WHAT WAS OF PARTICULAR CONCERN

23        TO ME.  I WANT THE PARTIES TO ADDRESS THOSE PARTICULARLY.

24              WE WILL KEEP THIS PROCEEDING MOVING.  WE ALL HAVE A LOT OF

25        OTHER WORK TO DO.
```

```
 1              MR. SCHAPIRO:  JUDGE, I THINK YOUR EXPECTATIONS WILL

 2    BE MET BECAUSE THE QUESTIONS THAT YOU'VE POSED ARE PRECISELY

 3    THE ONES THAT WE'RE HERE TODAY TO ANSWER.

 4              THE COURT:  OKAY.

 5              MR. SCHAPIRO:  YOU'VE SET IT UP, I THINK, QUITE

 6    CLEARLY, WHAT BRINGS US HERE TODAY?

 7         THE COURT HAS ASKED GOOGLE TO ADDRESS WHETHER CERTAIN LOGS

 8    THAT GOOGLE DISCLOSED IN JUNE OF 2022 CONTAIN RELEVANT DATA

 9    THAT SHOULD HAVE BEEN IDENTIFIED DURING DISCOVERY AND WHETHER

10    GOOGLE SHOULD BE SANCTIONED FURTHER, AS YOUR HONOR NOTED IN

11    YOUR REMARKS EARLIER, FURTHER IN CONNECTION WITH THE EXISTENCE

12    OF THOSE LOGS.

13         THAT'S IN ADDITION TO THE SANCTIONS THAT WERE IMPOSED IN

14    CONNECTION WITH YOUR MAY OF 2022 ORDER.

15         YOUR HONOR, AS THE BRIEFING HAS ESTABLISHED AND AS WE'RE

16    GOING TO DISCUSS TODAY, THERE'S NO BASIS FOR ANY SANCTIONS

17    HERE, NOT EVEN SMALL ONES.

18         THESE LOGS, WHICH WE'LL REFER TO AS THE JUNE LOGS --

19              THE COURT:  AND IS IT ██, ██?

20              MR. SCHAPIRO:  THERE ARE ██ NOW IN PLAY, AND THE

21    PLAINTIFFS DON'T MAKE ANY CLAIMS AS TO ██ OF THOSE , SO WE

22    REALLY ARE DOWN TO, I THINK, THE RELEVANCE AND PREJUDICE THAT

23    FLOWS FROM THE LATE DISCLOSURE OF ██ LOG.

24              THE COURT:  OKAY.

25              MR. SCHAPIRO:  AND I THINK YOU'RE GOING TO BE HEARING
```

1        ABOUT THAT, I IMAGINE, FROM BOTH SIDES TODAY.

2            BUT THESE JUNE LOGS, I THINK YOU WILL CONCLUDE BY THE END

3    OF THE PRESENTATION, IF YOU HAVEN'T ALREADY FROM READING THE

4    BRIEFING, DON'T SHOW ANYTHING NEW ABOUT THE EXISTENCE OR THE

5    USE OF THESE INCOGNITO-DETECTION BITS WHICH WERE COPIED BY AN

6    AUTOMATED PROCESS INTO THOSE LOGS AND WHICH AREN'T USED TO

7    DETECT PRIVATE BROWSING FOR ANY OTHER PURPOSE.

8            IN FACT, WE'VE DEMONSTRATED IN OUR FILINGS THAT MANY OF

9    THE JUNE LOGS CONTAIN NOTHING MORE THAN THE EXACT SAME DATA IN

10   PREVIOUSLY DISCLOSED LOGS THAT ARE ALREADY BEING PRESERVED, AND

11   NO USER DATA AT ALL.

12           THEY'RE NOT CREATIVE, THEY REVEAL NOTHING, AND THEY ARE

13   NOT CAUSE FOR ANY NEW SANCTIONS.

14           NOW, SEPARATELY, WE'RE HERE TO ADDRESS THE PLAINTIFFS'

15   MOTION REGARDING THE DISCLOSURE OF THE ███████████ FIELD,

16   AS YOU NOTED A MOMENT AGO.

17           THE ███████████ FIELD, I DON'T THINK THERE CAN BE ANY

18   REASONABLE DISPUTE, IS A NOW DEFUNCT FIELD THAT HAS NOT BEEN

19   USED -- THAT HAS NOT DETECTED INCOGNITO BROWSING SINCE BEFORE

20   THE PLAINTIFFS FILED SUIT, AND IT DOESN'T EVEN DETECT PRIVATE

21   BROWSING FOR ANY BROWSER AT ISSUE IN THIS CASE.

22           IT USED TO BE USED PRIMARILY TO HELP DETECT BOTS AND

23   DETECT SPAM BY A SEPARATE PART OF GOOGLE THAT DEALT WITH THOSE

24   SECURITY TYPE OF ISSUES.  IT HASN'T BEEN USED FOR YEARS.  IT

25   DOESN'T DO ANYTHING MEANINGFUL.

1          ORDINARILY, A FIELD LIKE THAT WOULD BE DEPRECATED BECAUSE

2    IT'S REALLY JUST, YOU KNOW, A LEFTOVER APPENDAGE THAT HAS NO

3    RELEVANCE TO ANYTHING THAT GOOGLE DOES TODAY AT ALL.

4          BUT WHEN GOOGLE DISCOVERED IT, WE DID THE RIGHT THING.  WE

5    INVESTIGATED IT TO FIGURE OUT WHAT THIS THING WAS, WE DISCLOSED

6    IT TO PLAINTIFFS, WE PUT THE RELEVANT PERSONNEL ON LITIGATION

7    HOLD, AND WE HAVE MAINTAINED THAT FIELD PENDING GUIDANCE FROM

8    YOUR HONOR.

9          WE ARE HOPEFUL THAT AT THE END OF THIS PROCESS, YOU WILL

10   AUTHORIZE US TO DEPRECATE IT, TO DEPRECATE THIS LONG ABANDONED

11   FIELD.

12          NOW, THE --

13          THE COURT:  BUT JUST SO I'M CLEAR, I DID SEE IN THE

14   PAPERS IT HASN'T BEEN USED SINCE 2019.  BUT IT WAS IN USE,

15   WHATEVER THAT USE WAS, DURING THE CLASS PERIOD?

16          MR. SCHAPIRO:  IT OVERLAPS SLIGHTLY INTO THE CLASS

17   PERIOD.  YOU'LL HEAR WHY NOTHING THAT THAT FIELD DID IS OF ANY

18   MEANINGFUL RELEVANCE TO THIS CASE, AND CERTAINLY WHY GOOGLE DID

19   NOTHING WRONG WITH REGARD TO IT.

20          PART OF IT DID EXTEND INTO THE CLASS PERIOD, ALTHOUGH IT

21   WAS ABANDONED WELL BEFORE THE LAWSUIT WAS EVEN FILED IN THIS

22   CASE.

23          YOUR HONOR'S ORDER TO SHOW CAUSE ALSO DIRECTED THE

24   PLAINTIFFS TO CONSIDER WHETHER THEY COULD, QUOTE, PROPOSE A

25   MORE NARROWLY TAILORED SET OF ADDITIONAL SANCTIONS, AND WE WERE

1    SOMEWHAT DIS -- NO SANCTIONS ARE WARRANTED HERE, BUT I WILL SAY

2    WE WERE SOMEWHAT DISAPPOINTED WHEN WE SAW THE BRIEFING IN THAT

3    REGARD, YOUR HONOR, BECAUSE EVEN THOUGH PLAINTIFFS DO NOT

4    CHALLENGE MOST OF THE KEY FACTS HERE, INCLUDING THAT THE

5    INCOGNITO-DETECTION BITS IN THE JUNE LOGS ARE NOT USED FOR ANY

6    PURPOSE, AND THAT GOOGLE INTENTIONALLY DISABLED THE

7    FUNCTIONALITY BEHIND THE ████████████ LONG BEFORE THIS

8    LAWSUIT, THEY HAVE NOT NARROWED THEIR SANCTIONS REQUEST IN ANY

9    REGARD.

10        INSTEAD, AND IN FACT, THEY'VE EXPANDED IT.  THEY'RE TRYING

11   TO USE THIS PROCESS TO WIN THEIR CASE OUTRIGHT OR TO GET A HUGE

12   HEAD START BY SUMMARILY ESTABLISHING FALSE FACTS WITH LITTLE OR

13   NO CONNECTION TO THE DISCOVERY DISPUTE, FACTS OR FINDINGS THEY

14   WOULD ASK YOU TO IMPOSE THAT HAVE NOTHING TO DO WITH THIS

15   DISCOVERY DISPUTE.

16        THE SANCTIONS ARE INCONSISTENT WITH THE LAW, AND THEY'RE

17   NOT SUPPORTED ON THESE FACTS.

18        SO OUR PRESENTATION TODAY IS GOING TO REVIEW THE KEY

19   REASONS WHY GOOGLE SHOULD NOT BE SANCTIONED, ALL OF WHICH ARE

20   LAID OUT IN OUR BRIEFING AS WELL.

21        YOU'RE GOING TO HEAR FIRST FROM MS. TREBICKA, WHO WILL

22   COVER THE FACT THAT NONE OF THE JUNE LOGS DEMONSTRATE ANYTHING

23   NEW ABOUT THE USE OF THE INCOGNITO-DETECTION BITS OR PRIVATE

24   BROWSING DATA.

25        YOUR HONOR, YOU'RE GOING TO HEAR -- I THINK YOU'VE

1    PROBABLY ALREADY SEEN, PLAINTIFFS' BRIEFING ALL BUT ADMITS THAT

2    THE JUNE LOGS ARE IRRELEVANT.

3         OF THESE ███ JUNE LOGS, PLAINTIFFS FOCUS ON A ███ LOG

4    THAT THEY CLAIM JOINS AUTHENTICATED AND UNAUTHENTICATED DATA.

5              THE COURT:  UM-HUM.

6              MR. SCHAPIRO:  BUT THEIR CLAIMS HAVE BEEN PROVEN

7    WRONG TIME AND TIME AGAIN.  THERE'S OVERWHELMING EVIDENCE,

8    INCLUDING DECLARATIONS, DOCUMENTS, SOURCE CODE DEMONSTRATING

9    THAT THE LOG DOES NO SUCH THING.

10        SECOND -- I'VE GOT THE OUTLINE UP HERE ON THE SCREEN --

11   MS. TREBICKA WILL EXPLAIN WHY GOOGLE'S CONDUCT PROVES ITS GOOD

12   FAITH, PROVES THAT GOOGLE ACTED IN GOOD FAITH THROUGHOUT.

13        GOOGLE READILY DISCLOSED THE JUNE LOGS AFTER MR. SRAMEK

14   CONCLUDED HIS INVESTIGATION.  GOOGLE CANDIDLY ACKNOWLEDGED

15   LIMITATIONS ON OUR ABILITY TO GUARANTEE THE NON-EXISTENCE, TO

16   PROVE THIS NEGATIVE, THE NON-EXISTENCE OF OTHER DATA SOURCES

17   THAT MIGHT BE USED TO INFER INCOGNITO MODE.

18        NOW, WE'LL READILY ADMIT, WE SHOULD HAVE FLAGGED THAT IN A

19   DIFFERENT, CLEARER, AND QUICKER WAY, THE SHORTCOMINGS IN OUR

20   DECLARATION.  WE APOLOGIZE FOR THAT, AND WE HAVE BEFORE.

21        THE PLAINTIFFS SURELY COULD HAVE, WHEN THEY RECEIVED A

22   DECLARATION THAT SEEMED LIKE IT, IT DIDN'T MATCH WHAT THEY WERE

23   EXPECTING, COULD HAVE COME TO US, COULD HAVE EMAILED US, COULD

24   HAVE MOVED TO COMPEL, BUT THEY RAN IN SEEKING SANCTIONS

25   INSTEAD.

SEALED PROCEEDINGS

1          OTHER DATA SOURCES -- EXCUSE ME.

2          GOOGLE ALSO BROUGHT THE DEFUNCT ███████████ TO THIS

3    COURT'S ATTENTION RATHER THAN DEPRECATING IT IN THE ORDINARY

4    COURSE.

5          NONE OF THESE ACTIONS ARE CONSISTENT WITH ANY INTENT TO

6    VIOLATE COURT ORDERS.  NONE OF THESE ACTIONS ARE CONSISTENT

7    WITH ANY INTENT TO CONCEAL EVIDENCE.

8          AND THAT'S THE STANDARD OF GOOD FAITH, OUR INTENT, TO

9    SUPPORT SANCTIONS.

10          THIRD, OUR ASSOCIATE, MR. MARGOLIES, WILL DESCRIBE WHY THE

11    ████████████ IS NOT MATERIAL TO THIS CASE.  THE ███████████

12    ██████ CAN'T BE USED TO IDENTIFY PRIVATE BROWSING AT ISSUE.

13    GOOGLE'S DISCOVERY, DILIGENT DISCOVERY EFFORTS COULDN'T

14    REASONABLY HAVE IDENTIFIED THE ████████████ EARLIER.  THIS

15    IS SOMETHING YOU MENTIONED AT THE OUTSET.

16          GOOGLE'S ████████████ DOES NOT SUGGEST THE EXISTENCE

17    OF OTHER INCOGNITO-DETECTION BITS, A THEME IN THE PLAINTIFFS'

18    BRIEFING HERE.

19          AND WITH REGARD TO THAT ██████, THERE'S BEEN NO MISCONDUCT

20    AND NO PREJUDICE TO PLAINTIFFS.

21          AND THEN FINALLY, AGAINST THIS BACKGROUND, OUR ASSOCIATE,

22    MR. SPILLY, WILL EXPLAIN WHY NO SANCTIONS ARE WARRANTED.

23          YOUR HONOR, THE SANCTIONS THAT THE PLAINTIFFS ARE SEEKING

24    HERE ARE TERMINATING SANCTIONS, THE MOST EXTREME SANCTIONS

25    POSSIBLE.

1        BUT THE ALLEGED CONDUCT DOESN'T COME CLOSE TO APPROACHING

2   THE CONDUCT IN THE FEW CASES IN WHICH THAT SANCTION HAS BEEN

3   GRANTED.

4        THE PLAINTIFFS, IN THE ALTERNATIVE, ASK THIS COURT TO MAKE

5   SWEEPING FINDINGS OF FACT OR TO PRECLUDE GOOGLE FROM

6   CHALLENGING FACTS THAT SEEM TO PRECISELY TRACK THE LANGUAGE OF

7   THEIR CAUSES OF ACTION.

8        BUT THOSE FACTS SEEK TO ESTABLISH -- THOSE FACTS THAT THEY

9   SEEK TO ESTABLISH ARE OFTEN DEEPLY DISCONNECTED FROM THE

10  ALLEGED MISCONDUCT HERE, AND WORSE, EACH ONE OF THEM, EACH ONE

11  OF THOSE FACTS IS DEMONSTRABLY FALSE, OR AT THE OTHER EXTREME,

12  UNCONTESTED, UNCONTESTED POINTS THAT GOOGLE HAS FREELY

13  ACKNOWLEDGED THROUGHOUT THIS CASE, AND NEITHER OF THOSE WOULD

14  BE AN APPROPRIATE SANCTION, ORDERING THE JURY TO FIND FALSE

15  FACTS OR ISSUING SOME ORDER ABOUT FACTS THAT AREN'T IN DISPUTE

16  AT ALL.

17       THE COURT SHOULD ALSO DENY GOOGLE'S OTHER REQUESTED

18  SANCTIONS --

19            THE COURT:  NOT GOOGLE'S.

20            MR. SCHAPIRO:  EXCUSE ME.

21       -- SHOULD DENY PLAINTIFFS' OTHER REQUESTED SANCTIONS.

22       WE'LL BE FILING OUR MOTION FOR SANCTIONS AFTER WE'RE

23   VINDICATED HERE TODAY, YOUR HONOR.

24       (LAUGHTER.)

25            MR. SCHAPIRO:  THERE'S BEEN NO BAD FAITH AND NO

1      PREJUDICE THAT NEEDS TO BE CURED.

2           YOUR HONOR, JUST LAST MONTH, PLAINTIFFS TOLD

3      JUDGE GONZALEZ ROGERS THAT THEY HAVE EVERYTHING THEY NEED TO

4      PROVE ALL SEVEN OF THEIR CAUSES OF ACTION, AND THIS CASE IS

5      PROCEEDING QUICKLY TO SUMMARY JUDGMENT AND TO TRIAL AT THEIR

6      URGING.

7           THAT'S NOT CONSISTENT WITH THE GREAT PREJUDICE THEY ALLEGE

8      BEFORE THIS COURT, AND INDEED THERE HAS BEEN NONE.

9           WE SHOULD MOVE THIS CASE FORWARD TO SUMMARY JUDGMENT, TO

10     TRIAL WHERE I THINK WE WILL BE ABLE TO DEMONSTRATE THE

11     DEFECTIVENESS OF THE PLAINTIFFS' CAUSES OF ACTION.

12          AND FOR ALL OF THESE REASONS THAT WE'LL DISCUSS TODAY, AND

13     IN OUR BRIEFS, WE RESPECTFULLY SUBMIT THAT NO NEW SANCTIONS ARE

14     WARRANTED.

15               THE COURT:  ALL RIGHT.

16          I THINK WHAT MAY MAKE SENSE, AS WE DID BEFORE, IS I WILL

17     HEAR FROM GOOGLE ON THE SUBSTANTIVE ISSUES AND NOT ON THE

18     SANCTIONS PIECE INITIALLY, AND THEN I'LL HEAR BACK -- I WANT TO

19     HEAR FROM PLAINTIFFS ON THE SUBSTANTIVE ISSUES, AND THEN I'LL

20     HEAR FROM EACH SIDE ON SANCTIONS.

21               MR. SCHAPIRO:  OKAY.  SO I THINK THAT MEANS --

22               THE COURT:  THAT'S JUST YOUR LAST BULLET POINT.

23               MR. SCHAPIRO:  YES, SO MR. SPILLY WILL WAIT ON THAT.

24               THE COURT:  I THINK THAT WILL HELP TO KEEP THE ISSUES

25     FOCUSSED.  I'D LIKE TO FOCUS INITIALLY ON THE SUBSTANTIVE

```
 1        ISSUES BEFORE WE GET TO SANCTIONS.

 2             MR. SCHAPIRO:  OF COURSE.  AND HOPEFULLY THAT WILL

 3        RESOLVE IT.  BUT HIS PRESENTATION IS GREAT, SO LEAVE A LITTLE

 4        TIME FOR IT.

 5             THE COURT:  I ABSOLUTELY INTEND TO HEAR FROM BOTH

 6        SIDES ON SANCTIONS.

 7             MR. SCHAPIRO:  THANK YOU, YOUR HONOR.

 8             MS. TREBICKA:  THANK YOU, YOUR HONOR.  MAY IT PLEASE

 9        THE COURT.

10        AND WE WOULD LIKE TO ALSO RESERVE, TOGETHER WITH THE

11        PRESENTATION ON THE SANCTIONS AND THE LAW, A LITTLE BIT OF TIME

12        FOR REBUTTAL IF NECESSARY.

13             THE COURT:  YOU HAVE THE BURDEN OF PROOF, SO --

14             MS. TREBICKA:  THANK YOU.

15        AND WHAT I WILL SPEAK TO IS THE TWO -- THE FIRST TWO

16        BULLET POINTS IN THE ROADMAP, WHICH IS THE JUNE LOGS ARE NOT

17        ACCRETIVE, INCLUDING WHY THEY DON'T HAVE -- THEY DID NOT CAUSE

18        ANY PREJUDICE; AS WELL AS THE INVESTIGATION THAT GOOGLE

19        CONDUCTED TO ARRIVE AT THE JUNE LOGS, AND ALSO THE PROCEEDING,

20        THE OSC PROCEEDING AND OUR CONDUCT THROUGHOUT THE OSC

21        PROCEEDING, WHICH I THINK WILL ANSWER THE COURT'S QUESTION THAT

22        YOU STARTED WITH, WHICH IS, WHY WERE THEY NOT DISCLOSED

23        EARLIER?  WHY WERE THEY NOT IDENTIFIED EARLIER?

24             THE COURT:  I'D REALLY LIKE TO START THERE, OR AT

25        LEAST ADDRESS THAT -- I THINK WE CAN PUT NON-ACCRETIVE AT THE
```

1    END.

2              MS. TREBICKA:  SURE.

3              THE COURT:  BECAUSE I UNDERSTAND.  I UNDERSTAND THE

4    ARGUMENT.

5              MS. TREBICKA:  RIGHT.

6              THE COURT:  AND I -- AND I READ IN THE PAPERS ABOUT

7    THE INVESTIGATION FROM MY MAY ORDER, AND THERE'S FURTHER

8    INVESTIGATION THAT LEADS TO THE JUNE LOGS, AND I WILL HEAR FROM

9    YOU ABOUT THAT.

10         BUT WHY WEREN'T THESE LOGS -- THEY HAVE INCOGNITO BITS, OR

11   INCOGNITO FIELDS, SO WHY WERE THEY NOT IDENTIFIED EARLIER?

12        AND I APPRECIATE THAT THE ANSWER TO THAT MAY BE IN THE

13   OTHER TWO PIECES, SO THAT'S FINE.  I JUST WANT YOU TO KNOW WHAT

14   I'M REALLY FOCUSSED ON.

15             MS. TREBICKA:  ABSOLUTELY, AND I WILL ANSWER IT

16   RIGHT, JUST HEAD ON, YOUR HONOR, AND THEN I WILL HAVE TO RELY

17   ON THE PRESENTATION WHICH WILL GIVE THE BASIS FOR THE ANSWER.

18             THE COURT:  THAT'S FINE.

19             MS. TREBICKA:  BUT THE ANSWER IS THAT THESE

20   INCOGNITO-DETECTION BITS, THE THREE THAT WERE AT ISSUE IN THE

21   APRIL PROCEEDING, THEY WERE NOT INTENTIONALLY IMPLEMENTED IN

22   THESE LOGS.

23        THERE WAS NOT SOME INTENTIONAL ACTION ON THE PART OF A

24   GOOGLE ENGINEER, OR ANYONE ELSE WITHIN GOOGLE, TO INCLUDE THOSE

25   IN THE LOGS, AND FOR THAT REASON, WHEN WE REASONABLY IDENTIFIED

1    THE █ LOGS THAT WERE PART OF THE APRIL PROCEEDING, WE

2    IDENTIFIED THOSE BY GOING TO THE ENGINEERS WHO HAD PREPARED THE

3    INCOGNITO BITS, WHO HAD IMPLEMENTED THEM IN CERTAIN LOGS, AND

4    ASKED THEM, WHAT LOGS DID YOU IMPLEMENT THEM IN?  AND WE

5    PROVIDED THAT INFORMATION.

6         NOW, THE BACK END INFRASTRUCTURE OF GOOGLE MADE IT SUCH

7    THAT THESE BITS WERE ALSO INCLUDED IN A HOST OF OTHER LOGS.

8         THERE'S █████ OF LOGS WITHIN GOOGLE, AS YOUR HONOR

9    KNOWS, AND PART OF -- THE WAY THAT THE LOG INFRASTRUCTURE WORKS

10   IS THAT NOT ONLY ARE CERTAIN LOGS COPIED FROM OTHER LOGS, WHICH

11   AGAIN IS AN UNINTENTIONAL COPYING, INCLUDES THEN OR LEADS TO AN

12   UNINTENTIONAL COPYING OF THESE BITS, BUT ALSO MANY LOGS RELY ON

13   THE SAME PROTO, THE █ PROTO.

14        AND THESE BITS HAVING BEEN INCLUDED IN THE PROTO ALSO

15   MEANT THAT WITHOUT OUR KNOWLEDGE AND WITHOUT ANYONE REALLY

16   DOING ANYTHING, THAT BIT OR THOSE BITS WERE ALSO INCLUDED IN

17   SOME ADDITIONAL LOGS.

18        BUT THE OTHER ANSWER TO YOUR HONOR'S QUESTION IS THAT

19   THERE IS NO DISPUTE THAT THESE BITS IN THESE OTHER █ LOGS WERE

20   NOT USED FOR ANY PURPOSE, INCLUDING TO DETECT INCOGNITO.  THEY

21   WERE THERE, PARACYTIC BITS, SO TO SPEAK, FIELDS, BUT THEY DID

22   NOT -- THEY WERE NOT USED FOR ANY PURPOSE.

23        SO OUR --

24             THE COURT:  AND YOU'RE RELYING, FOR THAT STATEMENT,

25    YOU'RE RELYING ON -- I DID SEE THE STATEMENTS IN THE

 1      DECLARATIONS WHERE YOU HAVE THE VARIOUS HEADS OF THE GROUPS

 2      WHERE THOSE LOGS COME FROM TO SAY, MY TEAM -- I, MY TEAM,

 3      DIDN'T KNOW THE BITS WERE THERE AND WE DIDN'T USE THEM.

 4          IS THAT -- THAT'S WHAT YOU'RE RELYING ON?

 5              MS. TREBICKA:  THAT IS CORRECT.  WE'RE -- WELL, LET

 6      ME SAY IT THIS WAY:  WE'RE RELYING ON TWO THINGS.  WE'RE

 7      RELYING ON THE DECLARATIONS, UNREBUTTED.

 8          WE'RE ALSO RELYING ON THE MILLIONS OF PAGES OF DOCUMENTS

 9      THAT WE'VE PRODUCED THAT INCLUDE A LOT OF INFORMATION ABOUT

10      MANY OF THESE LOGS THAT NEVER INDICATE THAT -- THAT DO INDICATE

11      THAT CERTAIN ENGINEERS WITHIN GOOGLE WERE USING THESE BITS FOR

12      PURPOSES OF --

13              THE COURT:  AS WE KNOW.

14              MS. TREBICKA:  -- AS WE KNOW, FOR IDENTIFYING

15      INCOGNITO, OR FOLLOWING IT, BUT NEVER INDICATE ANYTHING TO THE

16      CONTRARY FOR THESE OTHER LOGS.

17          THERE'S JUST NO EVIDENCE, YOUR HONOR, THAT THESE WERE USED

18      TO DETECT INCOGNITO IN THE █ LOGS.

19          SO WITH THAT, YOUR HONOR -- I WANTED TO ANSWER YOUR

20      QUESTION HEAD ON, BUT I DO THINK THAT IT DOES NEED A LITTLE BIT

21      OF MEAT ON THE BONES WITH THE STRUCTURE.

22              THE COURT:  SURE.  GO AHEAD.

23              MS. TREBICKA:  SO I'D LIKE TO START WITH WHAT THE

24      JUNE LOGS ARE, AND AS A COROLLARY, WHY THEY'RE NOT ACCRETIVE,

25      AND THEN GO TO PREJUDICE, AND THEY REALLY GO HAND IN HAND.

```
 1              AND AS FAR AS THE JUNE LOGS, WE HAD THIS -- NEXT -- THANK

 2     YOU.

 3              I WILL BE SAYING "NEXT" PERIODICALLY, BECAUSE I DON'T HAVE

 4     A CLICKER.

 5                   THE COURT:  THAT'S FINE.  AND THEN WILL I GET A COPY

 6     OF THE SLIDES?

 7                   MS. TREBICKA:  ABSOLUTELY.

 8                   THE COURT:  I WANT A COPY OF THE SLIDES.  THOSE

 9     SHOULD BE -- ON BOTH SIDES, THEY SHOULD BE FILED AFTER THE

10     PROCEEDINGS.  THEY CAN BE FILED UNDER SEAL.

11                   MS. TREBICKA:  I MAY HAND IT UP RIGHT NOW IF YOUR

12     HONOR WOULD PREFER.

13                   THE COURT:  THAT WOULD BE FINE.  THANK YOU.

14              I ALSO WANT YOU TO FILE THEM SO THEY'RE IN THE MATERIALS.

15                   MS. TREBICKA:  ABSOLUTELY (HANDING).

16                   THE COURT:  THANK YOU.  DO YOU HAVE A SECOND SET BY

17     ANY CHANCE?

18                   MS. TREBICKA:  WE DO.  FOR YOUR HONOR'S CLERK?

19                   THE COURT:  YES.

20                   MS. TREBICKA:  ABSOLUTELY.

21              (PAUSE IN PROCEEDINGS.)

22                   MS. TREBICKA:  YOUR HONOR, WE HAVE SUMMARIZED THE

23     NON-ACCRETIVE NATURE OF THESE LOGS IN THIS TABLE, WHICH HAS THE

24     ███ CATEGORIES OF LOGS.  CATEGORIES █ THROUGH █ ARE █ LOGS,

25     AND CATEGORY █, AS YOUR HONOR MAY REMEMBER FROM THE LAST
```

1    PROCEEDING, IS AN ███████ LOG WHICH IS ASSOCIATED WITH GOOGLE

2    SEARCH.

3        SO FOR THE ████ -- FOR ALL ██████ CATEGORIES, NOT

4    INTENTIONALLY IMPLEMENTED, NOT USED FOR INCOGNITO DETECTION.

5        FOR THE ████ LOGS, THE REASON THAT THESE BITS -- THIS BIT,

6    THE MAYBE_CHROME_INCOGNITO BIT, ENDED UP IN THE LOGS IS AN

7    AUTOMATIC BACK END FUNCTION OF GOOGLE INFRASTRUCTURE, AND

8    THERE'S TWO SEPARATE REASONS FOR THESE LOGS.

9        THE ONE IS THAT THEY COPIED WHOLESALE CERTAIN OTHER LOGS.

10   THE FIRST TWO -- I BELIEVE ████ AND ███████ ARE ENTIRELY

11   DUPLICATIVE OF DISCLOSED LOGS WHICH HAD THIS INCOGNITO BIT IN

12   THEM; AND THE SECOND REASON IS THAT THEY RELIED ON THE ████

13   PROTO, THE REST OF THE CATEGORIES RELIED ON THE ████ PROTO,

14   WHICH ALSO INCLUDED WHERE THIS INCOGNITO BIT WAS IMPLEMENTED IN

15   THE FIRST PLACE.  IT WAS AN AUTOMATIC BACK END FUNCTION.

16       AND I WILL NOT BELABOR -- JUST GENERALLY, I GUESS I SHOULD

17   SAY THAT GENERALLY THESE LOGS ARE COPYING INFORMATION.  ABOUT

18   HALF OF THEM DO NOT CONTAIN ANY USER DATA, ABOUT HALF OF THESE

19   LOGS.

20       AND THE ████ █████ LOG, IT IS NOT OPERATIONAL AND,

21   THEREFORE, WE WERE NOT EVEN MADE AWARE OF IT, AND IT IS

22   ENTIRELY DUPLICATIVE OF A LOG THAT WE'VE ALREADY DISCLOSED IN

23   THE PRIOR PROCEEDING, ANOTHER █████ LOG.  AND, IN FACT, IT

24   ONLY CONTAINS ██████ OF THE ENTRIES IN THAT LOG.  IT'S A █

25   █████ SAMPLE.  ENGINEERS ARE WORKING ON IT TO -- IT WILL

1    EVENTUALLY REPLACE THAT LOG THAT WE DISCLOSED, BUT CURRENTLY IT

2    IS NOT REALLY OPERATIONAL.

3           I WILL NOT BELABOR THIS ANY LONGER BECAUSE I KNOW THAT

4    YOUR HONOR IS FOCUSSED, AS YOU SAID IN THE INTRODUCTION, ON

5    THAT ██  LOG THAT FALLS UNDER THE THIRD CATEGORY, THE ████

6    LOGS.

7           AND IF WE CAN MOVE ON TO THE NEXT SLIDE.

8           I PUT THE FULL NAME OF THE LOG IN THE TITLE,

9    ███████████████████████████████████.  AND FOR SHORT,

10   IT'S REFERRED TO AS ████, ██████, SO THAT'S HOW I WILL REFER

11   TO IT IN THIS PRESENTATION, INSTEAD OF HAVING TO DO THE

12   MOUTHFUL OF COLONS AND OTHER CHARACTERS.

13           THE COURT:  OKAY.

14           MS. TREBICKA:  AND IN ADDITION TO WHAT I JUST STATED

15   ABOUT THE OTHER LOGS, WHICH IS NOT INTENTIONALLY IMPLEMENTED,

16   NOT USED FOR ANY REASON, THE BITS AND THE

17   MAYBE_CHROME_INCOGNITO BIT IN THIS LOG, IT ONLY CONTAINS

18   RECORDS FROM ███ LOGS, ALL OF WHICH HAVE BEEN PREVIOUSLY

19   DISCLOSED, ████ AUTHENTICATED LOGS AND ████ UNAUTHENTICATED

20   LOGS.

21           THE QUESTION THAT IS NOW RAISED BY PLAINTIFFS IS THAT

22   THERE'S PREJUDICE POTENTIALLY BECAUSE OF THE JUNE DISCLOSURE OF

23   THIS LOG BECAUSE PLAINTIFFS CONTEND IT SHOWS THAT

24   UNAUTHENTICATED DATA IS JOINED TO AUTHENTICATED DATA.

25           THE COURT:  OR AT LEAST IT EXISTS IN THE SAME MARKET.

```
 1              MS. TREBICKA:  CORRECT.

 2              THE COURT:  THERE IT SITS, AUTHENTICATED AND

 3     UNAUTHENTICATED.

 4              MS. TREBICKA:  RIGHT.

 5              THE COURT:  UM-HUM.

 6              MS. TREBICKA:  SO THERE'S TWO -- WELL, THERE HAS

 7     BEEN -- BOTH CLAIMS HAVE BEEN MADE BY PLAINTIFFS, THE FACT THAT

 8     IT JOINS RECORDS, AND THE FACT THAT THEY EXIST IN THE SAME LOG.

 9          THE FACT THAT THEY EXIST IN THE SAME LOG IS UNCONTESTED.

10     THEY DO EXIST IN THE SAME LOG.

11          WHAT'S REALLY RELEVANT, THOUGH, AND MATERIAL AND

12     IMPORTANT, AND POTENTIALLY PREJUDICIAL, WOULD HAVE BEEN IF THIS

13     LOG ACTUALLY JOINED AN AUTHENTICATED RECORD TO AN

14     UNAUTHENTICATED RECORD, AND THAT DOES NOT HAPPEN.

15          AND I WOULD LIKE TO REST ON THIS, YOUR HONOR, BECAUSE IT

16     IS AN IMPORTANT POINT, AND ALSO BECAUSE IT UNDERMINES ALL

17     CLAIMS OF PREJUDICE AND MATERIALITY.

18          THE ONLY REASON THAT THIS MAY BE IMPORTANT IS BECAUSE

19     PLAINTIFFS CLAIM IT SHOWS IT JOINS UNAUTHENTICATED TO

20     UNAUTHENTICATED, AND THAT DOES NOT HAPPEN.

21          AND THE PROOF THAT IT DOES NOT HAPPEN IS MANY-FOLD.  I

22     WILL START WITH THE LEE DECLARATION THAT WE SUBMITTED WITH OUR

23     OPENING BRIEF.

24          EUGENE LEE IS A GOOGLE ENGINEER WHO MANAGES THIS LOG.  HE

25     TESTIFIED UNDER OATH IN A DECLARATION THAT THIS LOG DOES NOT
```

1    JOIN AUTHENTICATED DATA TO UNAUTHENTICATED DATA, NOR REBUTTAL.

2        VASILY PANFEROV, ANOTHER GOOGLE ENGINEER WHO CONTRIBUTED

3    TO THE SOURCE CODE FOR POPULATING THE LOG, WHICH IS THE CRUCIAL

4    ISSUE HERE, ALSO UNREBUTTED, EXPLAINS THAT THIS LOG AND THE

5    SOURCE CODE CONFIRMS THAT THERE'S NO JOINING OF AUTHENTICATED

6    DATA TO UNAUTHENTICATED DATA.

7        YES, IT IS CALLED A ▮▮▮▮ LOG, BUT IT'S ACTUALLY A

8    ▮▮▮▮ LOG.

9        THE REASON THAT IT'S CALLED A ▮▮▮▮ LOG IS BECAUSE IT

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮.

15        AND HOW DO WE KNOW THIS, YOUR HONOR?  NOT ONLY THE GOOGLE

16   DECLARATIONS, BUT DOCUMENTS PRODUCED IN DISCOVERY AS EARLY AS I

17   BELIEVE THE MIDDLE OF 2021, INCLUDING SOME DOCUMENTS, AGAIN

18   PRODUCED IN DISCOVERY, THAT WE HAVE NOW ATTACHED TO THE LEE

19   DECLARATION.  THE PROOF IS THERE.

20        WE DIDN'T STOP THERE.  WE PROVIDED ALL OF THIS INFORMATION

21   TO OUR EXPERT, DR. KOSTAS PSOUNIS, AND WE ASKED HIM TO TAKE A

22   LOOK AT THE SOURCE CODE, THE RELEVANT SOURCE CODE, THE ONE THAT

23   SAYS WHAT HAPPENS TO THE LOGS WHEN THEY COME IN.

24        AND WE HAVE AGAIN A CONVENIENT SLIDE THAT SUMMARIZES WHAT

25   DR. PSOUNIS DID, AS WELL AS WHAT PLAINTIFFS' EXPERTS DID.

1    DR. PSOUNIS REVIEWED THE CODE, AND THEN IN HIS LENGTHY

2    DECLARATION PROVIDED A STEP-BY-STEP EXPLANATION OF WHY -- OF

3    HOW THIS CODE FUNCTIONS; THEN PROVIDED A DEFINITION OF JOINING,

4    WHAT DOES IT MEAN TO JOIN DATA; AND THEN AFTER THAT, ARRIVED AT

5    THE CONCLUSION THAT THERE IS NO JOINING.

6         NOW, WHAT DID PLAINTIFFS' EXPERT DO?  MR. THOMPSON DID NOT

7    REVIEW THE SOURCE CODE THAT WE PROVIDED.

8         LET ME TAKE A STEP BACK.  THERE WAS SOURCE CODE IN THE

9    PSOUNIS DECLARATION.

10        WE ALSO PROVIDED -- YOUR HONOR MAY NOT KNOW, BUT WE

11   PROVIDED ▆ LINES OF CODE TO PLAINTIFFS ON A SOURCE CODE

12   COMPUTER.

13        MR. THOMPSON DID NOT LOOK AT THE SOURCE CODE.

14        MR. BHATIA DID LOOK AT THE SOURCE CODE.

15        MR. THOMPSON, DESPITE NOT LOOKING AT THE SOURCE CODE,

16   TESTIFIED IN A DECLARATION, THERE'S JOINING.

17        MR. BHATIA DID NOT TESTIFY TO THAT, AND I HAVE A SLIDE

18   THAT JUST PULLS OUT THE LANGUAGE FROM HIS DECLARATION.

19        MR. BHATIA INSTEAD -- YES, THANK YOU.

20        MR. BHATIA INSTEAD DOES NOT OPINE THAT GOOGLE JOINS THIS

21   DATA, BUT RATHER SAYS, WELL, THERE'S -- I NEED MORE CODE,

22   ESSENTIALLY, TO DECIDE WHETHER IT JOINS THE DATA OR NOT.

23        THIS REQUEST TO US CAME ON JANUARY 5 FROM PLAINTIFFS

24   ASKING FOR MORE CODE.

25        ON JANUARY 10TH, WE TOLD THEM WE WOULD MAKE MORE CODE

1    AVAILABLE.  WE MADE AVAILABLE ███████ LINES OF CODE.

2         AND I NEED NOT TELL YOUR HONOR HOW SENSITIVE SOURCE CODE

3    IS.  IN FACT, YOUR HONOR RULED FOR US AND SAID THAT IT DOES NOT

4    NEED TO BE PROVIDED IN DISCOVERY.

5         BECAUSE WE TOOK THIS VERY SERIOUSLY, WE WANTED TO PROVIDE

6    THAT CODE.  WE DID.  MR. BHATIA REVIEWED IT.  NO SUPPLEMENTAL

7    OPINION.  NOTHING.  SILENCE.

8         AND, YOUR HONOR -- NEXT SLIDE.

9         SO JUST FOR THE BIG PICTURE, EVEN PLAINTIFFS' EXPERTS DO

10   NOT ARRIVE AT THE SAME CONCLUSION.  MR. THOMPSON, NOT HAVING

11   REVIEWED THE CODE, SAYS THERE'S JOINING.  MR. BHATIA, HAVING

12   REVIEWED THE CODE, SAYS, I NEED MORE INFORMATION, AND THEN IS

13   SILENT.

14        BUT MR. THOMPSON'S OPINION THAT GOOGLE JOINS RECORDS IS

15   SUPPORTED BY A REDEFINING OF WHAT JOINING IS.  AND THAT

16   REDEFINITION -- AND YOUR HONOR MADE THAT SAME QUESTION -- IS,

17   WELL, IF RECORDS ARE NEXT TO EACH OTHER, THAT MEANS THAT

18   THERE'S JOINING.

19        WELL, NO, THAT'S NOT AN ACCEPTED DEFINITION OF WHAT

20   JOINING IS.

21        AND THIS EXHIBIT 9 THAT I PULLED UP HERE, I WANTED TO

22   FOCUS ON THAT BECAUSE IT IS VERY MISLEADING TO HAVE THESE TYPES

23   OF RECORDS FROM TWO -- FROM THE SAME PERSON PURPORTEDLY NEXT TO

24   EACH OTHER IN THE SAME LOG WITH A TIME STAMP OF 8:32 AND THE

25   NEXT TIME STAMP OF 8:34, GIVING THE IMPRESSION THAT THIS IS

1    EVEN VISIBLE TO THE NAKED EYE, HOW YOU CAN JOIN THEM.

2           AND IN REALITY, THERE WOULD BE ███████, IF NOT ███████,

3    OF RECORDS IN BETWEEN AN 8:32 AND AN 8:34, MUCH LESS AN 8:32

4    AND AN 8:42.

5           AND, FRANKLY, FROM THIS PICTURE, WE DON'T EVEN KNOW IF

6    IT'S THE SAME PERSON OR IF IT'S TWIN SISTERS, ONE OF WHICH

7    PREFERS MATCH.COM, THE OTHER EHARMONY, USING THE SAME TYPE OF

8    DEVICE WITH THE SAME I.P. ADDRESS.

9           AND THAT'S -- MAYBE MOVE TO THE NEXT SLIDE.

10          THAT'S ANOTHER CRITICAL ISSUE WITH PLAINTIFFS'

11   REDEFINITION OF JOINING AS HAVING RECORDS NEXT TO EACH OTHER,

12   BECAUSE IT -- NOR IS IT THE DEFINITION, THE ACCEPTED

13   DEFINITION, AND MORE ON THAT.

14          BUT IT'S NOT EVEN THE DEFINITION THAT WOULD HELP THEM

15   BECAUSE, AGAIN, WHAT PLAINTIFFS NEED TO SHOW TO STATE A PRIVACY

16   CLAIM IS NOT THAT THESE AUTHENTICATED AND UNAUTHENTICATED DATA

17   ARE NEXT TO EACH OTHER, IT'S THAT RECORDS OF THE SAME USER IN

18   AN AUTHENTICATED AND UNAUTHENTICATED STATE ARE JOINED, AND

19   THAT'S NOT WHAT HAPPENS HERE AND THAT'S NOT WHAT IS SHOWN.

20          AND, IN FACT, THE FIGURE 3 IS WHERE WE TRIED TO EXPLAIN IN

21   PAPER, IN WRITING, HOW COMPLICATED AND NOT POSSIBLE IT IS TO

22   USE THIS KIND OF RECORDKEEPING, RECORDS NEXT TO EACH OTHER, TO

23   ACTUALLY INFER AN IDENTITY OF A USER OR THAT THESE RECORDS ARE

24   JOINED.

25          BUT THIS IDEA THAT JOINING MEANS PUTTING RECORDS NEXT TO

 1    EACH OTHER, THAT'S BOGUS SCIENCE.

 2              THE COURT:  OKAY.

 3              MS. TREBICKA:  BECAUSE DATA ANALYSIS -- AND

 4    DR. PSOUNIS PROVIDES A LENGTHY EXPLANATION OF THIS, I'VE ONLY

 5    PULLED OUT CERTAIN RECORDS FROM HIS DECLARATION -- DATA

 6    ANALYSIS SCIENTISTS HAVE A WELL-ESTABLISHED DEFINITION OF WHAT

 7    JOINING MEANS IN TECHNICAL LITERATURE, AND THAT MEANS LINKING

 8    INDIVIDUAL RECORDS VIA THE USE OF A COMMON KEY.

 9              THE COURT:  I LOOKED THROUGH THAT IN THE PAPERS.

10              MS. TREBICKA:  THANK YOU, YOUR HONOR.

11        I DON'T WANT TO BELABOR THE POINT, BUT IT IS A DEFINITION

12    THAT PLAINTIFFS' OTHER EXPERTS, THE TESTIFYING EXPERTS ON THE

13    CLASS CERTIFICATION POINT, HAVE EITHER ADOPTED OR ASSUMED IS

14    THE CASE.

15        THE NEXT SLIDE.

16        AND CONSPICUOUSLY ABSENT FROM THESE PROCEEDINGS ARE BOTH

17    MR. HOCHMAN AND MR. SCHNEIER, PLAINTIFFS' EXPERTS WHO HAVE

18    ADOPTED THE SAME DEFINITION OF JOINING.

19        THE ONLY SUPPORTED CONCLUSION HERE, YOUR HONOR, AGAIN,

20    ANOTHER LANGUAGE, PROGRAMMING LANGUAGE WHERE THE JOIN FUNCTION

21    JOINS THE RECORDS BASED ON SHARED KEYS, BUT THE ONLY SUPPORTED

22    CONCLUSION HERE IS THAT THE ███ LOG DOES NOT JOIN

23    AUTHENTICATED TO UNAUTHENTICATED RECORDS, AND THAT MEANS THAT

24    IT'S NOT MATERIAL OR ACCRETIVE TO ANY ISSUE HERE.

25              I WOULD LIKE TO MOVE ON TO NO PREJUDICE, UNLESS YOUR HONOR

1       HAS ANY QUESTIONS ABOUT THE JOINING ISSUE?

2                   THE COURT:  THAT'S FINE.

3                   MS. TREBICKA:  THANK YOU, YOUR HONOR.

4            PLAINTIFFS CLAIMED THREE TYPES OF PREJUDICE:  PREJUDICE IN

5       FACT OR EXPERT DISCOVERY; PREJUDICE IN SEEKING INJUNCTIVE

6       RELIEF; AND PREJUDICE IN THE CONTEXT OF THE PRESERVATION PLAN.

7            THERE IS NONE.  ALL OF THE PREJUDICE THAT MAY HAVE EXISTED

8       HAS ALREADY BEEN ADDRESSED BY YOUR HONOR'S MAY 2022 ORDER.

9            AND THE EXISTENCE OF THE INCOGNITO-DETECTION BITS IS WHAT

10      THAT PREJUDICE INVOLVES OR CENTERS ON.

11           THE FACT THAT -- WHAT THESE ADDITIONAL JUNE LOGS SHOW IS

12      SIMPLY THAT THIS INCOGNITO-DETECTION BIT EXISTS IN CERTAIN

13      OTHER AUTHENTICATED -- UNAUTHENTICATED LOGS WITHIN GOOGLE, AND

14      WHAT IT -- OR ASSOCIATED WITH UNAUTHENTICATED RECORDS WITHIN

15      GOOGLE BY HAPPENSTANCE.  IT WAS NOT INTENTIONALLY PUT THERE.

16           BUT THE REASON THAT THESE ARE NOT MATERIAL IS BECAUSE THEY

17      DO NOT REVEAL ANY ADDITIONAL USE OF PRIVATE BROWSING DATA.

18      THAT'S BECAUSE IT IS UNDISPUTED, AND WE HAVE ALREADY AGREED AND

19      PROVIDED THIS INFORMATION AT THE VERY START OF THE CASE, THAT

20      PRIVATE BROWSING DATA IS USED FOR THE EXACT SAME PURPOSE THAT

21      OTHER UNAUTHENTICATED DATA IS USED.

22           SO TO MAKE THE GRAND CLAIM THAT THIS, THE DISCOVERY OF THE

23      JUNE LOGS WOULD HAVE CHANGED THE COURSE OF DISCOVERY,

24      PLAINTIFFS RELY ON THREE SPECIFIC USES IN THE JUNE LOGS THAT

25      THEY CLAIM WOULD HAVE BEEN IMPORTANT TO KNOW:  IT'S THE

1    PREDICTING AD REVENUES; STORING DATA RELATED TO USERS'

2    INTERACTIONS WITH ADS ON THIRD-PARTY EXCHANGES; AND ANALYSIS

3    AND TESTING.

4        AND THAT IS JUST SOMETHING THAT HAS AMPLY BEEN EXPLORED IN

5    DISCOVERY.

6        AND THE SLIDES THAT FOLLOW, YOUR HONOR, I DON'T WANT TO

7    BELABOR IT, BUT IT SHOWS THAT NOT ONLY IS IT IN OUR DISCLOSURES

8    WITH -- BUILDING ON THE FACT THAT PRIVATE BROWSING INFORMATION

9    IS TREATED THE SAME AS UNAUTHENTICATED INFORMATION, ANYTHING

10   THAT APPEARS TO BE HAPPENING OR THAT APPEARS THAT THE

11   UNDERLYING UNAUTHENTICATED DATA IS USED FOR WILL EQUALLY APPLY

12   TO PRIVATE BROWSING DATA.  THAT'S UNCONTESTED.  THAT'S IN OUR

13   DISCLOSURES.

14       IF WE CAN MOVE ON TO THE NEXT SLIDE.

15       SPECIFICALLY RELATING TO PREDICTED AD REVENUES, THAT IS IN

16   PUBLICLY AVAILABLE DOCUMENTS THAT WE ALSO PRODUCED AND WE

17   POINTED PLAINTIFFS TO.

18       ALSO IN DISCOVERY, PLAINTIFFS WERE AWARE OF IT.  THEY

19   ASKED QUESTIONS ABOUT IT.

20       THE SECOND GROUND, THE THIRD-PARTY AD SERVING AND LOGGING,

21   IT'S PUBLICLY DOCUMENTED.

22       AND IT'S ALSO REFLECTED IN MANY, MANY DOCUMENTS THAT WE'VE

23   PRODUCED IN DISCOVERY.  JUST A FEW ARE HIGHLIGHTED HERE.

24       AND THE FINAL GROUND, ANALYSIS AND TESTING, AGAIN, IT'S

25   AVAILABLE IN, IN DOCUMENTS WE'VE PRODUCED, IT'S AVAILABLE

```
 1    PUBLICLY, AND PLAINTIFFS HAVE SHOWN THAT THEY UNDERSTAND THAT

 2    VERY WELL.

 3            NOW, ANOTHER POINT I WANTED TO BRIEFLY ADDRESS IS AGAIN

 4    GOING BACK TO THE ███ LOG WHERE THEY CLAIM ADDITIONAL,

 5    ADDITIONAL PREJUDICE, THE FACT THAT THERE'S THIS LOG THAT

 6    HOUSES AUTHENTICATED AND UNAUTHENTICATED DATA.

 7            AND THIS IS AN INSTANCE WHERE PLAINTIFFS HAVE HAD EVERY

 8    OPPORTUNITY TO TEST THIS LOG AND THIS CONCLUSION HERE DURING

 9    THIS PROCEEDING, AND I'LL WALK THROUGH THE FOUR GROUNDS WHY

10    THAT IS CORRECT.

11            THE FIRST IS THAT WE'VE PRODUCED ██████ OF LINES OF

12    CODE, ████ LINES OF SOURCE CODE, AND THERE HAS BEEN NO

13    OPINION ON THE BASIS OF THAT CODE, NOT BECAUSE THERE WAS NO

14    OPPORTUNITY.

15            SECOND, WE PROVIDED MYRIAD FACT AND EXPERT DECLARATIONS,

16    AND NOT -- AND THE FACT DECLARATIONS EVEN POINTED TO DOCUMENTS

17    THAT WE HAD PREVIOUSLY PRODUCED IN DISCOVERY THAT SURROUNDED

18    THIS LOG, AND I SPECIFICALLY POINT YOUR HONOR'S ATTENTION TO

19    EXHIBIT A OF THE LEE DECLARATION.

20            THE COURT:  ALL RIGHT.

21            MS. TREBICKA:  AND FINALLY, YOUR HONOR -- OR NOT

22    FINALLY, THE THIRD POINT IS JUDGE GONZALEZ ROGERS ALLOWED

23    PLAINTIFFS FOUR ADDITIONAL DEPOSITIONS IN CONNECTION WITH THE

24    CLASS CERTIFICATION HEARING, OR CLASS CERTIFICATION BRIEFING.

25            WE HAD INCLUDED CERTAIN DECLARATIONS FROM GOOGLE EMPLOYEES
```

1    IN OPPOSITION TO THEIR CLASS CERTIFICATION MOTION.  I DON'T

2    KNOW IF YOUR HONOR ALREADY KNOWS, BUT AS A RESULT OF THAT,

3    JUDGE GONZALEZ ROGERS ALLOWED PLAINTIFFS A FEW ADDITIONAL

4    DEPOSITIONS.  ONE OF THOSE DEPOSITIONS WAS OF GLENN BERNTSON,

5    WHO YOUR HONOR IS AWARE OF, A SENIOR GOOGLE ENGINEER.  IT TOOK

6    PLACE JUST A COUPLE OF WEEKS AGO, THIS MONTH, I BELIEVE, AND IT

7    WAS FOUR HOURS ON THE RECORD.

8         PLAINTIFFS ASKED QUESTIONS IN HYPOTHETICAL FORM RELATED

9    TO, WELL, WHAT HAPPENS IF THERE'S A LOG AT GOOGLE THAT CONTAINS

10   AUTHENTICATED DATA AND UNAUTHENTICATED DATA?

11        IT WAS ASKED MANY DIFFERENT WAYS, AND THE ANSWER THAT

12   DR. BERNTSON EXPLAINED, AND WE INCLUDED ONLY A LITTLE BIT OF IT

13   IN THE SLIDE BUT ARE HAPPY TO GIVE YOU MORE, IS THAT THERE'S NO

14   CONCERN WITH HOUSING AUTHENTICATED DATA AND UNAUTHENTICATED

15   DATA IN THE SAME LOG, AND FURTHER EXPLAINED THAT GOOGLE'S

16   POLICIES AND TECHNICAL INFRASTRUCTURE MEAN THAT SUCH A LOG

17   CANNOT BE USED TO JOIN AN AUTHENTICATED RECORD TO AN

18   UNAUTHENTICATED RECORD.

19        AND FINALLY, YOUR HONOR, THESE -- ALL ██ LOGS THAT FEED

20   INTO THE ██ LOG HAVE ALREADY BEEN DISCLOSED.  THERE'S NOTHING

21   NEW THERE.

22        INJUNCTIVE RELIEF.

23        THERE IS NO PREJUDICE RELATED TO INJUNCTIVE RELIEF.  IN

24   FACT, WHEN PLAINTIFFS BRIEFED CLASS CERTIFICATION, THEY

25   INCORPORATED THE JUNE LOGS THAT HAD ALREADY BEEN DISCLOSED IN

1    THEIR TRIAL PLAN, DID NOT MENTION THAT THERE WAS ANYTHING

2    ADDITIONAL THAT NEEDED TO BE DONE WITH RESPECT TO THAT.  IT

3    WAS, JUST AS MR. SCHAPIRO SAID IN THE BEGINNING, WE ARE READY

4    FOR TRIAL.

5         AND, OF COURSE, THEY ARE -- THE JUNE LOGS HAVE NOW BEEN

6    DISCLOSED, INCLUDING ADDITIONAL FACTUAL INFORMATION, WELL

7    BEFORE SUMMARY JUDGMENT AND WELL BEFORE TRIAL.

8         AND FINALLY, PLAINTIFFS HAVE NOT BEEN PREJUDICED IN THE

9    PRESERVATION PLAN, EITHER, AND THAT'S BECAUSE THE JUNE LOGS

10   GENERALLY CONTAIN EITHER NO CLASS MEMBER DATA AT ALL, NO USER

11   DATA AT ALL, OR ARE IDENTICAL OR NEARLY IDENTICAL TO LOGS THAT

12   HAVE ALREADY BEEN DISCLOSED.

13        AND FINALLY, YOUR HONOR, I'D LIKE TO MENTION ONE POINT

14   THAT YOUR HONOR ASKED THE PARTIES TO DISCUSS, WHETHER OR NOT WE

15   WOULD LIKE TO ENGAGE THE SPECIAL MASTER FOR PURPOSES OF THIS

16   PROCEEDING.

17             THE COURT:  UM-HUM.

18             MS. TREBICKA:  PLAINTIFFS ASKED US TO ENGAGE THE

19    SPECIAL MASTER FOR PURPOSES OF THIS PROCEEDING.

20        WE IMMEDIATELY AGREED.

21        PLAINTIFFS ASKED US TO PREPARE A STIPULATION THAT WOULD

22   ALLOW FOR THE SPECIAL MASTER TO GET INVOLVED, AND WE PROVIDED

23   THE STIPULATION, INCLUDING A PROVISION THAT THE SPECIAL MASTER

24   COULD FACILITATE ADDITIONAL PRODUCTIONS IN CASE PLAINTIFFS

25   WANTED THEM.

1              THE COURT:  I SAW THAT ON MR. SPILLY'S DECLARATION.

2              MS. TREBICKA:  OKAY.  WE DID NOT HEAR BACK AND,

3      THEREFORE, ANY PREJUDICE IT APPEARS IS OF THEIR OWN MAKING, IF

4      THERE IS A PREJUDICE AT ALL.

5          YOUR HONOR, IN CONCLUSION, NON-ACCRETIVE, AND THERE HAS

6      BEEN NO PREJUDICE.

7          AND I'D LIKE TO BRIEFLY -- I KNOW I'VE BEEN SPEAKING FOR A

8      LONG TIME, BUT I WOULD LIKE TO ADDRESS OUR GOOD FAITH AND THE

9      FACT THAT OUR CONDUCT HAS BEEN PROPER.

10             THE COURT:  OKAY.

11             MS. TREBICKA:  MAY I JUST GRAB MY WATER FOR ONE

12     SECOND?

13             THE COURT:  YES, PLEASE.

14             MS. TREBICKA:  THANK YOU.

15         (PAUSE IN PROCEEDINGS.)

16             MS. TREBICKA:  YOUR HONOR, UNDER THIS HEADING, I'D

17     LIKE TO ADDRESS TWO ISSUES, OUR THOROUGH INVESTIGATION IN

18     RESPONSE TO YOUR HONOR'S MAY 20TH ORDER, AND OUR TRANSPARENCY

19     AND COOPERATION THROUGHOUT THE OSC PROCESS.

20             THE COURT:  OKAY.

21             MS. TREBICKA:  THE INVESTIGATION WE CONDUCTED WAS

22     MULTI-LAYERED, MULTI-METHOD, AND IT WAS ALL IN RESPONSE TO YOUR

23     HONOR'S MAY 20TH ORDER.

24         AND I'D LIKE TO REMIND AND PUT IT IN THE RECORD, IT ASKED

25     GOOGLE TO PROVIDE PLAINTIFFS WITH A REPRESENTATION IN WRITING

 1      NO LATER THAN MAY 31, 2022, THAT OTHER THAN THE LOGS IDENTIFIED

 2      THUS FAR AS CONTAINING INCOGNITO-DETECTION BITS, NO OTHER SUCH

 3      LOGS EXIST.

 4           WHAT DID WE DO?  WE -- THE NEXT BUSINESS DAY, WE STARTED

 5      THE INVESTIGATION.  WE ASKED MR. SRAMEK TO LEAD IT.  HE HAD

 6      THREE ADDITIONAL PEOPLE ON HIS TEAM.  WHAT THEY DID IS THEY RAN

 7      THE X-CLIENT-DATA HEADER THROUGH THE ENTIRETY OF GOOGLE'S

 8      SERVER SITE CODE.

 9           AS A RESULT OF THAT, THERE WERE MANY, MANY HITS.  THEY

10      IDENTIFIED ▇ TEAMS THAT WERE RESPONSIBLE FOR THOSE HITS SO

11      THAT WE CAN EVEN UNDERSTAND WHAT THAT HIT MEANT.

12           WE SURVEYED THOSE TEAMS -- WELL, MR. SRAMEK SURVEYED THOSE

13      TEAMS, IDENTIFIED ▇ TEAMS TO FOLLOW UP WITH TO GET A BETTER

14      UNDERSTANDING IF FOR SOME REASON THE ANSWERS WERE UNCLEAR, ET

15      CETERA, AND THEN AS A RESULT OF THAT, PROVIDED CERTAIN, CERTAIN

16      FINAL LOGS THAT WOULD HAVE BEEN ENCOMPASSED.

17           HE DID NOT STOP THERE.  HE ALSO ACTIVATED MR. MATT HARREN,

18      WHO IS A ▇ EXPERT, I'LL SAY A ▇ LOGS TECHNICAL

19      LEAD, TO DO ANOTHER SWEEP TO MAKE SURE THAT WE HADN'T LEFT ANY

20      LOGS OUT, AND THAT PROCESS WAS ALSO FOCUSSED ON THE

21      INCOGNITO-DETECTION BITS, AND THE RESULTS OF THAT IS WHAT WE

22      PROVIDED IN JUNE OF 2022.

23           NOW, WHY WERE THE LOGS NOT IDENTIFIED EARLIER?

24           YOUR HONOR, THE RESPONSE IS WHAT I'VE STATED IN THE

25      BEGINNING AND WHAT I'VE TRIED TO EXPLAIN THROUGHOUT THIS

1    PRESENTATION.  IT WAS NOT AN INTENTIONAL PUTTING INTO THESE

2    LOGS OF THIS BIT.  IT WAS A BACK END INFRASTRUCTURE, AN

3    AUTOMATIC PROCESS, AND BECAUSE OUR INVESTIGATION FOCUSSED ON

4    WHAT GOOGLE ENGINEERS HAD DONE AND WHY, WE JUST COULD NOT FIND

5    AT THE TIME THESE LOGS AT THE TIME THAT WE DISCLOSED THE █

6    LOGS.

7         AND, YOUR HONOR, THE FACT THAT THIS INVESTIGATION TOOK

8    THREE WEEKS AND THE RESULTS OF IT WERE NOT PROVIDED FINALLY BY

9    MAY 31ST, AS YOUR HONOR HAD ORDERED, BUT RATHER JUNE 14TH, IS,

10   I WOULD SUBMIT, REALLY A TESTAMENT TO THE EXHAUSTIVE NATURE OF

11   THAT INVESTIGATION.

12        BY MAY 31, WE UNDERSTOOD YOUR HONOR TO BE ASKING US TO

13   TELL PLAINTIFFS WHAT OUR -- WHAT THE RESULTS OF OUR

14   INVESTIGATION WERE.

15        BY MAY 31, WE TOLD PLAINTIFFS, THIS IS WHAT WE KNOW TO

16   DATE.  WE WILL NEED AN ADDITIONAL TWO WEEKS TO COMPLETE IT.

17        WHAT WE SHOULD HAVE DONE IS AT THE SAME TIME, WE SHOULD

18   HAVE PUT SOMETHING ON ECF AND TOLD YOUR HONOR AS WELL.  WE DID

19   NOT, AND FOR THAT WE APOLOGIZE.

20        BUT WE CANNOT BE FAULTED FOR CONDUCTING THIS THOROUGH,

21   THREE-WEEK LONG INVESTIGATION.  WE WOULD HAVE BEEN FAULTED HAD

22   WE STOPPED ON MAY 31.

23        AND, YOUR HONOR, THERE IS NO DISPUTE THAT THIS

24   INVESTIGATION THAT WE ENGAGED IN COULD NOT HAVE BEEN DONE IN

25   FEWER THAN THREE WEEKS.

1          NOW, PLAINTIFFS' OPPOSITION FAULTS US FOR TWO THINGS THAT

2     I'D LIKE TO ADDRESS.  FIRST IS THAT WE'RE TAKING AN OVERLY

3     NARROW VIEW OF YOUR HONOR'S MAY 2022 ORDER, AND I SUBMIT TO

4     YOU, WE ARE NOT.

5          HOWEVER, YOU ARE THE FINAL ARBITER OF WHAT YOUR ORDER SAID

6     AND WHAT YOU MEANT.

7          INCOGNITO-DETECTION BITS IS A DEFINED TERM.  WE UNDERSTOOD

8     THAT TO MEAN THE THREE INCOGNITO-DETECTION BITS.

9          AGAIN, WE DID NOT STOP THERE.  WE WENT TO THE

10    X-CLIENT-DATA HEADER.  WE DID NOT JUST SEARCH THOSE.  WE MADE A

11    MORE COMPREHENSIVE SEARCH.

12         THEREFORE, I DON'T BELIEVE THAT WE CAN BE FAULTED FOR

13    THAT.  WE CANNOT BE FAULTED FOR THAT.

14         THE SECOND POINT THAT PLAINTIFFS RAISE IS THAT GOOGLE

15    SHOULD HAVE SEARCHED ITS SOURCE CODE NOT FOR THE THREE

16    INCOGNITO BITS, OR EVEN X-CLIENT-DATA HEADER, BUT THE WORD

17    "INCOGNITO."

18         WELL, THAT MAKES NO SENSE.  THAT'S NOT REASONABLE.  THAT'S

19    NOT FEASIBLE.  WE DISCUSSED THIS IN THIS COURTROOM IN APRIL OF

20    2022 WITH YOUR HONOR, THE FACT THAT JUST RUNNING "INCOGNITO"

21    MAKES NO SENSE.  IT'S ABOVE AND BEYOND ANY PROPORTIONALITY

22    ANALYSIS.

23         BUT FOR THIS BRIEFING, WE WANTED TO GIVE THAT SOME MORE

24    STRUCTURE, SO WHAT WE DID IS WE ASKED STEVE ELLIS, A TECHNICAL

25    ADVISOR WITHIN GOOGLE, TO RUN THE WORD "INCOGNITO" WITHIN

1    GOOGLE'S CODE, AND WE RECEIVED ███ HITS IN CODE AND

2    ANNOTATIONS, COMMENTS, ET CETERA, WHICH IS HOW THIS IS RUN.

3         THESE WILL NEED TO BE REVIEWED ONE BY ONE TO UNDERSTAND

4    WHAT THEY EVEN ARE, BECAUSE THEY COULD RELATE TO INCOGNITO

5    YOUTUBE, MAPS INCOGNITO, WHICH IS TOTALLY OUTSIDE OF WHAT WE'RE

6    DOING HERE.

7         IT COULD EVEN RELATE TO, YOUR HONOR, I UNDERSTAND,

8    COMMENTS OR ANNOTATIONS BY ENGINEERS WHO ARE TALKING ABOUT SOME

9    FUNCTION THAT HAS NOTHING TO DO WITH THIS CASE, BUT SAY, "YOU

10   SHOULD RUN THIS IN INCOGNITO," BECAUSE I UNDERSTAND ENGINEERS

11   OFTEN GO INTO INCOGNITO TO TEST CERTAIN FUNCTIONS SO THAT THEY

12   ARE NOT ENCUMBERED BY WHATEVER COOKIES, ET CETERA, THERE MAY BE

13   ON THEIR BROWSER.

14        THAT EXPLAINS WHY THERE ARE ███ HITS, AND IT EXPLAINS

15   WHY ASKING US TO DO THAT AND ENGAGE IN A MONTHS-LONG PROCESS TO

16   FERRET OUT WHAT IS, WHAT IS -- WHAT PERTAINS AND WHAT DOESN'T

17   WOULD BE TRULY UNREASONABLE.

18        THE SECOND ISSUE, YOUR HONOR, IS OUR CONDUCT DURING THE

19   OSC PROCEEDING, AND I THINK IT EXEMPLIFIES TRANSPARENCY AND

20   COOPERATION.

21        IT SHOWS THAT WE HAVE NOTHING TO HIDE.  WE'VE PUT A

22   TIMELINE HERE OF THE EVENTS.

23        WE'VE ALWAYS PROVIDED MORE INFORMATION THAN WHAT WE

24   UNDERSTOOD YOUR HONOR TO REQUIRE.  WE PROVIDED -- WE MADE -- WE

25   ENGAGED IN A DEEPER INVESTIGATION THAN WHAT WE THOUGHT YOUR

```
1    HONOR WAS REQUIRING OF US.

2         I ALREADY MENTIONED THE SPECIAL MASTER ISSUE WHERE WE WERE

3    ASKED TO ENGAGE, RE-ENGAGE, DRAFT A STIP, AND THEN IT FALLS

4    SILENT.

5         AND I ALSO MENTIONED THE ADDITIONAL CODE SEARCH THAT WE

6    ENGAGED IN, OR THE ADDITIONAL SOURCE CODE PRODUCTION ON A

7    SOURCE CODE COMPUTER.

8         AND I'D LIKE TO MAKE CLEAR HERE THAT THE ▮ LINES OF CODE

9    THAT WE INITIALLY PROVIDED WERE NOT NECESSARY TO UNDERSTAND

10   WHAT THE ▮ LOG DOES.  WE PROVIDED IT REGARDLESS.

11        AND THEN ON MR. BHATIA'S DEFICIENCIES, THE PURPORTED

12   DEFICIENCIES THAT HE IDENTIFIED IN HIS DECLARATION, WE PROVIDED

13   AN ADDITIONAL ▮ LINES OF CODE.

14        AND, YET, THERE WAS NO SUPPLEMENTAL OPINION.

15        IN EACH CASE, WE HAVE RUSHED TO OFFER PLAINTIFFS

16   ADDITIONAL DATA, AND I -- IT APPEARS THAT THEY'RE ONLY

17   INTERESTED IN ADDITIONAL SANCTIONS, NOT ADDITIONAL DATA, NOT

18   FACTS.

19        AND THE SAME THEME THAT HAS PLAYED ITSELF OUT THROUGHOUT

20   THIS OSC PROCESS UNDERLIES THEIR SANCTIONS MOTIONS HERE TODAY.

21   IT'S A FEIGNED INTEREST IN FACTS AND THE TRUTH, BUT THE REAL

22   AIM IS TO WIN BY SANCTIONS THAT WHICH THEY CANNOT WIN BY THE

23   EVIDENCE.

24        YOUR HONOR, I CONCLUDE MY PRESENTATION OF THE FIRST TWO

25   BULLET POINTS, AND I WOULD LIKE TO RESERVE SOME TIME FOR
```

1        REBUTTAL IF NECESSARY.

2                THE COURT:  UM-HUM.

3                MS. TREBICKA:  UNLESS YOUR HONOR HAS OTHER QUESTIONS

4        FOR ME, I WILL PASS THE BATON ON TO MY COLLEAGUE,

5        MR. MARGOLIES.

6                THE COURT:  LET'S HEAR ABOUT THE HEURISTIC.  THANK

7        YOU.

8                MR. MARGOLIES:  GOOD MORNING, YOUR HONOR.

9            JOE MARGOLIES FOR GOOGLE.

10               THE COURT:  GOOD MORNING.

11               MR. MARGOLIES:  SO I'M HERE TODAY TO DISCUSS THE

12       ███████████████  HEURISTIC.

13           LIKE THE JUNE LOGS, ████████████  DOES NOT SHOW

14       ANYTHING NEW ABOUT GOOGLE'S ABILITY TO DETECT INCOGNITO

15       BROWSING OR ITS USE OF PRIVATE BROWSING DATA.

16           MY PRESENTATION TODAY IS GOING TO FOCUS ON A FEW POINTS.

17           FIRST, I'LL GIVE A BRIEF OVERVIEW OF THE ████████████

18       AND HOW THE HEURISTIC FUNCTIONS; THEN I'LL DISCUSS THE KEY

19       POINT, WHICH IS THAT ████████████  DOES NOT IDENTIFY ANY

20       PRIVATE BROWSING DATA AT ISSUE; I'LL EXPLAIN THAT THE ███████

21       ██████  COULD NOT REASONABLY HAVE BEEN IDENTIFIED EARLIER IN THE

22       DISCOVERY PROCESS; THERE HAS BEEN NO MISCONDUCT; AND WHY THERE

23       HAS BEEN NO PREJUDICE TO PLAINTIFFS.

24               THE COURT:  I'D LIKE YOU TO EXPLAIN WHAT IT IS A

25        LITTLE BIT, AND THEN GO TO YOUR SECOND POINT FIRST, WHICH IS

```
 1         WHY NOW, WHY NOT LAST YEAR?

 2                   MR. MARGOLIES:  I WOULD BE HAPPY TO ADDRESS THAT,

 3         YOUR HONOR.

 4                   THE COURT:  OKAY.

 5                   MR. MARGOLIES:  SO ON THE FIRST POINT, THE OVERVIEW

 6         OF HOW THIS FIELD WORKS, █████████████ IS A BOOLEAN FIELD,

 7         SO A TRUE/FALSE FIELD, DEVELOPED IN 2016 BY GOOGLE'S █████

 8         ████████████, WHICH IS A TEAM FOCUSSED ON ████████████

 9         ████████.  YOU CAN THINK OF THAT AS ████████████████████

10         █████████████████████████████████████████

11         █████████████████████████████████████.

12              AND ████████████ WAS CREATED, AGAIN, IN 2016 AS ONE OF

13         HUNDREDS OF DATA INDICATORS TO FUEL AN OVERALL ASSESSMENT OF

14         ██████████████████████████████.  SO, FOR EXAMPLE, ████████████

15         █████████████████████████████████████████████████

16         ████████████.

17              AND THIS OVERALL ASSESSMENT WAS USED, FOR EXAMPLE, BY

18         GOOGLE TO CHALLENGE, WITH AN SMS TEXT FOLLOW-UP VERIFICATION,

19         SOMEONE TRYING TO CREATE AN ACCOUNT, SOMEONE TRYING TO MAKE A

20         PAYMENT, SOMEONE TRYING TO LOG IN.  THAT'S THE PURPOSE.

21              AND THE REASON -- OR RATHER, THE PURPOSE WAS EXTREMELY

22         IMPORTANT, BECAUSE THIS FIELD WAS, AGAIN, ONLY ONE OF HUNDREDS

23         OF DATA INDICATORS.  IT WAS NEVER INTENDED TO BE A

24         DETERMINISTIC INDICATOR OF WHETHER SOMEONE WAS IN PRIVATE

25         BROWSING MODE, AND INDEED, WHETHER SOMEONE WAS IN PRIVATE
```

1    BROWSING MODE WAS NEVER THE END GOAL OF THE ASSESSMENT.

2         IT'S ONE OF HUNDREDES OF INDICATORS TO DETERMINE WHETHER

3    THERE'S ███ .  THAT'S THE ONLY PURPOSE FOR WHICH IT WAS

4    CREATED AND THE ONLY PURPOSE FOR WHICH IT WAS USED.

5         IT HAS NOT BEEN UPDATED OR MAINTAINED SINCE 2016.

6         AND ACTUALLY, I'M GOING TO TAKE A SECOND --

7              THE COURT:  2019?

8              MR. MARGOLIES:  NO, IT HASN'T BEEN UPDATED SINCE

9    2016.

10             THE COURT:  OKAY.

11             MR. MARGOLIES:  SO I'LL TAKE A MOMENT TO EXPLAIN ITS

12   FUNCTIONALITY A BIT, WHICH IS DURING THE TIME THAT IT WAS

13   CREATED, 2016 AND, LIKE YOUR HONOR SAID, BEFORE 2019, BROWSERS

14   WOULD MAKE DIFFERENT STORAGE CAPACITIES AVAILABLE TO SITES THAT

15   REQUESTED SPACE ON A USER'S MACHINE DEPENDING ON WHETHER A

16   BROWSER USER WAS IN INCOGNITO OR PRIVATE BROWSING MODE.

17        SO THE EXAMPLE IS A SITE WOULD REQUEST ACCESS TO THE

18   USER'S MACHINE IN TERMS OF FILE STORAGE, AND IF AN ERROR WAS

19   REPORTED, IT MIGHT BE BECAUSE THE BROWSER IS IN INCOGNITO MODE.

20        IT MIGHT BE FOR OTHER REASONS AS WELL, FOR EXAMPLE, IF

21   THERE'S NO STORAGE AVAILABLE OR IF THE USER HAD MODIFIED THEIR

22   BROWSER OR CREATED A SETTING SO THAT NO STORAGE WOULD BE

23   AVAILABLE.

24        BUT ONE OF THE REASONS THAT NO STORAGE COULD BE AVAILABLE

25   IS THAT IT'S IN PRIVATE BROWSING MODE, SO ESSENTIALLY THIS

1          QUERY WOULD BE PUT THROUGH.  IF THERE WAS A FILE SYSTEM

2      AVAILABLE, IT WOULD RETURN AS FALSE.  IF THERE WASN'T A FILE

3      SYSTEM AVAILABLE, IT WOULD RETURN AS TRUE.

4          THE PRIMARY WAY THAT THIS WAS USED ACROSS THE WEB WAS BY

5      WEBSITES THAT HAD PAYWALLED CONTENT THAT WANTED TO PREVENT

6      PEOPLE FROM GETTING AROUND THEIR TEN FREE ARTICLES, OR

7      SOMETHING LIKE THAT, BY USING INCOGNITO MODE TO PRETEND THEY'RE

8      A DIFFERENT USER WHO HADN'T ALREADY LOOKED AT NINE OR TEN

9      ARTICLES.

10         BUT THIS CODE FOR THIS HEURISTIC, AND THE HEURISTIC

11     ITSELF, WAS WIDELY KNOWN AND PUBLISHED ON TECHNICAL FORUMS,

12     LIKE GITHUB AND STACK OVERFLOW AND DISCUSSED IN THE POPULAR

13     PRESS.  IN FACT, ALL OF THESE MECHANISMS WERE DISCUSSED IN

14     DISCOVERY IN THIS CASE, BUT THEY WERE ALSO WIDELY KNOWN.

15         AND THE FIELD, ███████████, RELIED ON THAT EXACT SAME

16     PUBLICLY KNOWN HEURISTIC, THE EXACT SAME KIND OF HEURISTIC THAT

17     THESE SITES HAD BEEN USING TO STOP PEOPLE FROM CIRCUMVENTING

18     PAYWALLS.

19         BUT YOUR HONOR MENTIONED THE 2016 DATE, THE 2019 DATE.

20         THE REASON THIS IS IMPORTANT IS THAT GOOGLE CREATED IT IN

21     2016, BUT ESSENTIALLY ABANDONED AND FORGOT ABOUT IT IN THE

22     SENSE THAT IT WASN'T MAINTAINED.  THE LOGIC WAS NOT CHANGED.

23         BUT IF WE GO TO THE -- YOU CAN SEE ON THE NEXT --

24     ACTUALLY, IF YOU GO TO THE SLIDE BEFORE THIS, I BELIEVE.  THANK

25     YOU.

1           WHAT DID CHANGE BETWEEN 2016 AND THE TIME THAT THIS CASE

2      WAS FILED WAS THE BROWSERS THEMSELVES.

3           SO GOOGLE RECOGNIZED THAT THIS LOOPHOLE COULD BE USED TO

4      INFER SOME FORM OF PRIVATE BROWSING MODE AND DEPRECATED THE API

5      FUNCTIONALITY THAT I WAS JUST DESCRIBING THAT ALLOWED THIS

6      HEURISTIC TO WORK, WHICH MEANT THAT BY AUGUST OF 2019 -- SO

7      ALMOST A YEAR BEFORE PLAINTIFFS FILED SUIT -- THIS HEURISTIC

8      AND ANY OTHER HEURISTIC -- AND ANY OTHER TEST BASED ON THE SAME

9      HEURISTIC SIMPLY WOULDN'T FUNCTION TO DETECT INCOGNITO MODE.

10          AND THE OTHER BROWSERS AT ISSUE DID THE EXACT SAME THING.

11     SO IT DIDN'T -- IT DOESN'T DETECT ANY OF THOSE BROWSERS.  IT'S

12     SIMPLY NOT FUNCTIONAL FOR THAT PURPOSE.

13          AND I WANT TO DRAW A QUICK DISTINCTION HERE BETWEEN THE

14     MAYBE_CHROME_INCOGNITO FIELD AND THIS FIELD, BECAUSE

15     MAYBE_CHROME_INCOGNITO, AS YOUR HONOR HAS HEARD AD NAUSEAM, OF

16     COURSE IS NOT A RELIABLE INDICATOR.  IT HAS FALSE POSITIVES.

17     IT HAS FALSE NEGATIVES.  YOU CAN'T TRUST THAT IF IT INDICATES

18     INCOGNITO MODE, THE USER IS ACTUALLY IN INCOGNITO MODE.

19          THIS IS DIFFERENT IN KIND AND DEGREE.  IT'S NOT THAT IT'S

20     POTENTIALLY USEFUL FOR AGGREGATE TRAFFIC, BUT NOT USEFUL FOR

21     INDIVIDUAL DETERMINATION.

22          IT'S THAT THIS IS NOT PREDICTIVE OR USEFUL EVEN FOR

23     AGGREGATE TRAFFIC.  IT'S NOT USEFUL AT ALL BECAUSE THE

24     HEURISTIC DOESN'T WORK EVEN IF SOMEONE IS BROWSING -- EVEN IF

25     MILLIONS OF PEOPLE ARE BROWSING IN PRIVATE BROWSING MODE,

1    YOU'RE JUST GOING TO GET MILLIONS OF FALSE HITS.

2         SO IT'S JUST NOT PREDICTIVE.  IT'S NOT USEFUL.

3         AND, OF COURSE --

4             THE COURT:  BECAUSE IT'S DEACTIVATED?

5             MR. MARGOLIES:  BECAUSE THE HEURISTIC RELIES ON A

6    FUNCTION THAT HAS BEEN DEACTIVATED --

7             THE COURT:  THAT'S WHAT I THOUGHT.

8             MR. MARGOLIES:  -- YES, BOTH BY GOOGLE AND BY ALL THE

9    OTHER BROWSERS AT ISSUE.

10            THE COURT:  UM-HUM.

11            MR. MARGOLIES:  SO I THINK I'LL ADDRESS YOUR HONOR'S

12   NEXT POINT NOW, WHICH IS --

13            THE COURT:  WHY NOW?

14            MR. MARGOLIES:  -- WHY NOW?

15        SO PLAINTIFFS, OF COURSE, HAVE MADE A BIG POINT ABOUT THIS

16   BEING DISCLOSED NOW.

17        BUT IT COULD NOT REASONABLY HAVE BEEN DISCLOSED EARLIER IN

18   DISCOVERY.  WE DID A DILIGENT SEARCH WHEN WE RECEIVED

19   PLAINTIFFS' COMPLAINT AND, OF COURSE, THROUGHOUT THE DISCOVERY

20   PROCESS.  WE CONFERRED WITH ENGINEERS ON THE ANALYTICS TEAM,

21   THE ADS TEAM, CHROME, MANY OTHER TEAMS RELEVANT TO PLAINTIFFS'

22   CLAIMS.

23        BUT THIS FIELD WAS CREATED BY THE ████████████ TEAM,

24   WHICH WAS FAR REMOVED FROM ANY OTHER ASPECT OF DISCOVERY.  IT

25   JUST WOULDN'T HAVE BEEN LOGICAL TO CONFER WITH THEM.

1    AND THERE'S ANOTHER REASON WHY IT WOULDN'T HAVE BEEN

2    LOGICAL, OR WOULDN'T HAVE BEEN POSSIBLE REALLY TO FIND THAT

3    FIELD USING THE REASONABLE PROPORTIONAL DISCOVERY PROCESS THAT

4    WE UNDERTOOK, WHICH IS IT WAS WIDELY KNOWN, BOTH PUBLICLY AND

5    INTERNALLY WITHIN GOOGLE, NOT TO FUNCTION, NOT TO BE A METHOD

6    TO DETECT INCOGNITO.

7    SO WHEN WE WERE THINKING ABOUT, OKAY, WHAT'S RELEVANT TO

8    THIS CASE, WHAT CAN WE LOOK FOR, WE NEVER WOULD HAVE THOUGHT TO

9    LOOK FOR A FIELD BASED ON A HEURISTIC THAT HADN'T BEEN USED TO

10    DETECT PRIVATE BROWSING, OR COULDN'T BE USED TO DETECT PRIVATE

11    BROWSING SINCE BEFORE THE CASE WAS FILED.

12    AND I'LL NOTE THAT EVEN THE TEAM THAT CREATED THIS FIELD

13    DIDN'T CONCEIVE OF IT AS A MEANS TO IDENTIFY PRIVATE BROWSING,

14    BUT ONE OF HUNDREDS OF DATA INDICATORS TO A TOTALLY DIFFERENT

15    END, WHICH IS TO DETERMINE -- TO MAKE A PROBABILISTIC

16    DETERMINATION OF █████████████████████████.

17    PLAINTIFFS ALSO SUGGEST, YOUR HONOR -- ALTHOUGH I'LL

18    PAUSE, BECAUSE I WANT TO MAKE SURE IF YOU HAVE ANY OTHER

19    QUESTIONS ON THIS, I CAN ANSWER THEM.

20    THE COURT:  I UNDERSTAND YOUR EXPLANATION.

21    MR. MARGOLIES:  THANK YOU, YOUR HONOR.

22    PLAINTIFFS ALSO SUGGEST THAT THE EXISTENCE OF ████████

23    ██████ INDICATES THAT THERE MIGHT BE OTHER FIELDS THAT GOOGLE

24    IS USING OR CONCEALING.

25    BUT THAT IS NOT A REASONABLE INFERENCE FROM THE EXISTENCE

1    OF THIS FIELD.  IT'S NOT A NEW OR PROPRIETARY MEANS OF

2    DETECTING INCOGNITO OR ANOTHER PRIVATE BROWSING MODE.  AGAIN,

3    IT'S BASED ON PUBLIC API'S.  IT'S DEFUNCT.  IT'S

4    NON-FUNCTIONAL.  IT'S KNOWN BOTH WITHIN GOOGLE AND OUTSIDE OF

5    GOOGLE IN THE PUBLIC NOT TO WORK.

6         SO THERE'S NO REASON TO INFER FROM SUCH A FIELD THAT THERE

7    ARE OTHER FIELDS THAT GOOGLE KNOWS ABOUT, IS USING, IS NOT

8    DISCLOSING.

9         BUT, IF YOU MOVE ON TO THE NEXT SLIDE, THERE'S AN EVEN

10   MORE IMPORTANT REASON TO THINK THAT GOOGLE IS NOT CONCEALING

11   OTHER INCOGNITO DETECTION METHODS OR THAT GOOGLE IS ACTING IN

12   BAD FAITH, AND THAT'S THAT GOOGLE AFFIRMATIVELY DISCLOSED

13   ██████████████.

14        WHEN WE IDENTIFIED THE FIELD, WE INVESTIGATED IT, WE

15   DISCLOSED IT TO PLAINTIFFS, WE ASKED YOUR APPROVAL BEFORE

16   DEPRECATING IT, WHICH IS WHAT WE WOULD DO IN THE ORDINARY

17   COURSE BECAUSE IT'S ONLY JUNK DATA, IT'S NOT USEFUL FOR

18   ANYTHING, IT'S NOT USEFUL FOR ITS INTENDED PURPOSE, WHICH IS TO

19   CONTRIBUTE TO ██████████████.  IT'S SOMETHING THAT WE WOULD

20   DEPRECATE.  BUT WE DIDN'T DO THAT.

21        INSTEAD WE BROUGHT IT, AGAIN, TO YOUR ATTENTION AND TO

22   PLAINTIFFS' ATTENTION, AND CURRENTLY WE ARE MAINTAINING THE

23   FIELD AND ITS SOURCE CODE TO THE EXTENT YOU BELIEVE IT'S

24   NECESSARY TO INVESTIGATE IT ANY FURTHER, AND WE'RE KEEPING

25   RELEVANT PERSONNEL ON LITIGATION HOLD.

1          SO PLAINTIFFS HAVE ACCUSED US OF MAKING RELEVANCE CALLS ON

2     OUR OWN, PLAYING UMPIRE.

3          THAT COULDN'T BE FARTHER FROM THE TRUTH.  THIS IS EXACTLY

4     THE OPPOSITE OF THAT.  THIS IS NOT CONSISTENT WITH BAD FAITH.

5     IT'S NOT CONSISTENT WITH CONCEALMENT.

6          IF WE WANTED TO CONCEAL THE BIT, OF COURSE WE WOULD NOT

7     HAVE DISCLOSED IT TO YOUR HONOR AND TO PLAINTIFFS.

8          AND I THINK THIS LEADS TO THE LAST POINT, WHICH IS THAT

9     BASED ON ALL THIS, PLAINTIFFS HAVE NOT BEEN PREJUDICED.

10         THE INCOGNITO-DETECTION HEURISTICS GENERALLY ARE FAR LESS

11    RELEVANT, IF RELEVANT AT ALL, AFTER THE DECEMBER 12TH CLASS

12    CERTIFICATION ORDER.

13         AS YOUR HONOR WILL RECALL, THE LAST SANCTIONS ORDER WE HAD

14    WITH PLAINTIFFS ON THIS, IN THIS CASE WAS THAT -- IT WAS BASED

15    ON THE ACCUSATION, RATHER, THAT GOOGLE ON ONE HAND WAS SAYING

16    THAT PLAINTIFFS COULDN'T CERTIFY THEIR CLASS BECAUSE THEY

17    COULDN'T IDENTIFY CLASS MEMBERS, WHILE ON THE OTHER HAND HAD A

18    METHOD THAT PLAINTIFFS THOUGHT WAS USEFUL TO APPROXIMATE CLASS

19    MEMBERS.

20         THAT'S JUST NOT THE CASE HERE FOR TWO REASONS.  FIRST,

21    THIS IS NOT A FIELD THAT CAN EVEN BE USED TO APPROXIMATE CLASS

22    MEMBERSHIP.  IT IS NOT USEFUL.  IT HASN'T BEEN USEFUL SINCE

23    BEFORE THE CASE WAS FILED.  I WON'T BELABOR THAT POINT.  I'VE

24    SAID IT ENOUGH TIMES.

25         BUT IT'S ALSO NOT USEFUL, YOUR HONOR, BECAUSE THE CLASS

1      CERTIFICATION ORDER DENIED PLAINTIFFS' REQUEST TO CERTIFY A

2      DAMAGES CLASS, WHICH WAS THE REASON THAT IT WAS NECESSARY TO

3      IDENTIFY CLASS MEMBERS IN THE FIRST PLACE, AND IT DID SO ON

4      GROUNDS THAT HAVE NOTHING TO DO WITH WHETHER IT'S FEASIBLE OR

5      PRACTICAL TO IDENTIFY A CLASS.

6          AND JUST YESTERDAY, YOUR HONOR MAY KNOW, THE NINTH CIRCUIT

7      DENIED PLAINTIFFS' 23(F) APPEAL FOR INTERLOCUTORY REVIEW OF

8      THAT DECISION.

9          BUT IT'S -- EVEN PUTTING THAT BROAD POINT ASIDE, THIS

10     FIELD IS NOT RELEVANT TO LIABILITY OR TO INJUNCTIVE RELIEF.

11     AGAIN, IT HAS NO PREDICTIVE POWER TO IDENTIFY PRIVATE BROWSING.

12     IT DOESN'T SHOW ANYTHING NEW ABOUT THE USE OF PRIVATE BROWSING.

13         AND THAT'S PARTICULARLY IMPORTANT FOR INJUNCTIVE RELIEF.

14     BECAUSE THIS FIELD JUST RETURNS FALSE VALUES, IT CAN'T BE USED

15     TO SHOW ANY USES OR ANY INSTANCES OF PRIVATE BROWSING.

16         AND, OF COURSE, IF PLAINTIFFS TAKE ISSUE WITH THE

17     EXISTENCE OF THE FIELD ITSELF, THEY KNOW ABOUT IT NOW.

18         BUT ALSO, GOOGLE HAS AFFIRMATIVELY REQUESTED PERMISSION TO

19     DEPRECATE IT, WHICH IS PRECISELY THE RELIEF THAT PLAINTIFFS

20     WOULD SEEK AS AN INJUNCTION.  WE'RE DOING THEIR WORK FOR THEM.

21         THIS IS NOT A SITUATION IN WHICH WE'VE PREJUDICED THEM

22     WITH INJUNCTIVE RELIEF.  WE'RE ASKING FOR THAT RELIEF

23     OURSELVES.

24         AND FINALLY, YOUR HONOR, THERE HAS BEEN NO SELF-HELP OR

25     AMORPHOUS DISCOVERY PREJUDICE HERE.  AGAIN, WE HAVE MAINTAINED

```
 1        IT RATHER THAN DEPRECATING IT, WE'VE BROUGHT IT TO THEIR

 2        ATTENTION, AND WE'VE OFFERED TO PROVIDE MORE INFORMATION IF

 3        YOUR HONOR THINKS IT'S NECESSARY, AND OF COURSE ALL PERSONNEL

 4        WHO WERE INVOLVED ARE ON LITIGATION HOLD.

 5             SO FOR ALL THOSE REASONS, THIS FIELD IS NOT MATERIAL,

 6        THERE'S BEEN NO PREJUDICE.

 7             I ENCOURAGE YOUR HONOR ALSO TO GRANT OUR MOTION TO

 8        DEPRECATE THE FIELD.

 9             AND IF YOU HAVE NO FURTHER QUESTIONS, I CAN CONCLUDE MY

10        PRESENTATION.

11                  THE COURT:  THANK YOU.  THANK YOU VERY MUCH.

12                  MR. MARGOLIES:  THANK YOU, YOUR HONOR.

13                  THE COURT:  THAT WAS HELPFUL.

14             ALL RIGHT.  I THINK WHERE GOOGLE'S OUTLINE TAKES US NEXT

15        IS TO SANCTIONS, AND WE'LL PAUSE THERE.

16             AND I'D LIKE TO HEAR FROM PLAINTIFFS WITH REGARDS TO THE

17        ISSUES AROUND THE ████████ LOG WITH THE AUTHENTICATED AND

18        UNAUTHENTICATED DATA, AND THE HEURISTIC ALONG THE LINES THAT I

19        OUTLINED IN ONE OF MY VERY EARLY ORDERS ON THIS ISSUE, WHICH

20        IS, HOW HAVE PLAINTIFFS BEEN PREJUDICED BY THESE LATE

21        DISCLOSURES?  AND WHAT -- AND THEN WE'LL TURN TO SANCTIONS IN

22        THE NEXT ROUND.

23             HOPEFULLY YOU CAN ADAPT TO THAT FOR YOUR PRESENTATIONS.

24                  MR. BOIES:  GOOD MORNING, YOUR HONOR.

25                  THE COURT:  GOOD MORNING, MR. BOIES.
```

1          MS. SHORTRIDGE, ARE YOU DOING ALL RIGHT?

2              THE REPORTER:  YES.  THANK YOU.

3              MR. BOIES:  MAY IT PLEASE THE COURT.

4          LET ME TRY TO PUT INTO CONTEXT WHAT ONE OF OUR FUNDAMENTAL

5      ARGUMENTS HERE IS IN TERMS OF PREJUDICE.

6          WHAT GOOGLE SAYS TO THE COURT IS NONE OF THIS WAS USEFUL,

7      NOBODY COULD HAVE KNOWN ABOUT IT, THERE WAS NO WAY TO COMBINE

8      THESE -- THIS DATA, WE DIDN'T REALLY USE THE DATA BECAUSE

9      EVERYBODY KNEW IT WAS UNRELIABLE, TRUST US.

10          THE WHOLE POINT OF DISCOVERY IS THAT THE PLAINTIFF DOESN'T

11     HAVE TO TRUST WHAT THE DEFENDANT SAYS.  WE HAVE A RIGHT TO

12     KNOW, ON A TIMELY BASIS, WHAT EXISTS SO THAT WE CAN ASK

13     DEPOSITION QUESTIONS, WE CAN PROBE DOCUMENTS, WE CAN PREPARE

14     OUR EXPERT REPORTS BASED ON THAT INFORMATION.

15          WHAT GOOGLE HAS DONE IS BY HOLDING BACK THIS INFORMATION

16     UNTIL AFTER THE CLOSE OF DISCOVERY, IT HAS DEPRIVED US OF THE

17     OPPORTUNITY TO TEST WHAT WAS THE DATA, WHAT WAS ITS PURPOSE,

18     WHAT WAS ITS USES, WHAT WAS ITS RELIABILITY?

19          WE CAN'T DO ANY OF THAT.

20          AND BY NOT, TODAY, BRINGING IN ANY WITNESSES TO BE

21     CROSS-EXAMINED, PRESENTING ANY BUSINESS RECORDS,

22     CONTEMPORANEOUS DOCUMENTS TO PROVE WHAT THEY SAY, GOOGLE IS

23     AGAIN DOING, IN THE SANCTION HEARING, WHAT THEY DID DURING

24     DISCOVERY.  THEY'RE COMING IN AND SAYING TO THE COURT, "TRUST

25     US."

1        THE COURT WILL REMEMBER THE LAST SANCTIONS HEARING.  THEY

2   PUT IN SOME DECLARATIONS, PUT IN A DECLARATION FROM

3   MR. GOLUEKE.

4        THE COURT WILL REMEMBER I CROSS-EXAMINED MR. GOLUEKE, AND

5   THE COURT WILL REMEMBER THE EXTENT TO WHICH MR. GOLUEKE'S

6   TESTIMONY CHANGED DURING HIS DIRECT EXAMINATION AND THE

7   CROSS-EXAMINATION, AND THE COURT WILL REMEMBER PERHAPS THE

8   ADMISSIONS THAT MR. GOLUEKE MADE, SOME OF WHICH WE'LL REFERENCE

9   TODAY.

10        AND THE PURPOSE OF NOT ALLOWING SOMEBODY TO JUST PUT IN AN

11   UNSWORN DECLARATION OR ARGUMENTS FROM COUNSEL ON THESE KINDS OF

12   CRITICAL FACTUAL ISSUES IS BECAUSE WE DON'T HAVE TO JUST ACCEPT

13   WHAT THEY SAY.  WE HAVE A RIGHT TO CROSS-EXAMINE.  WE HAVE A

14   RIGHT TO DISCOVERY.  WE HAVE A RIGHT TO ADMISSIBLE EVIDENCE FOR

15   THE COURT TO MAKE A DECISION, NOT SIMPLY TO HAVE GOOGLE COME IN

16   AND SAY, "TRUST US."

17        THAT IS PARTICULARLY TRUE, I SUGGEST, IN THIS CASE.  THE

18   COURT KNOWS AND GOOGLE KNOWS THAT WE HAVE BEEN TRYING FROM THE

19   BEGINNING TO UNDERSTAND WHETHER OR NOT, AND THE EXTENT TO WHICH

20   THEY TRACK --

21        THE COURT:  MR. BOIES, LET ME JUST INTERRUPT YOU ONE

22   MOMENT.

23        YES, THANK YOU, MS. FANTHORPE.

24        I JUST WANTED TO TAKE DOWN THE DEFENDANTS' SLIDES, AND IF

25   YOU'VE GOT A SET --

```
 1              MR. BOIES:  I AM GOING TO PUT UP SOME SLIDES.

 2              THE COURT:  EXCELLENT.  AND DO YOU HAVE A COUPLE OF

 3       HARD COPIES?  I HAVE CLIPS.

 4           IF YOU ONLY HAVE ONE, THAT'S ALL RIGHT.  THAT'S FINE IF

 5       YOU HAVE ONE.  OR IF NOT, THAT'S FINE.

 6              MR. MCGEE:  YOUR HONOR, THE REASON IS WE HAVE TWO

 7       VERSIONS, WE HAVE A SHORTER DECK AND A LARGER DECK, SO I'M

 8       TRYING TO CLARIFY.

 9              THE COURT:  DO I GET INPUT?

10           (LAUGHTER.)

11              MR. BOIES:  I'M AFRAID, YOUR HONOR, THAT I'M GOING TO

12       USE BOTH THE SHORT ONE AND THE LONG ONE.

13           ARE WE GOING TO BE ABLE TO PULL THESE UP?

14              MR. BOIES:  YES.

15              THE COURT:  IF YOU WANT ME TO FOLLOW ALONG ON THE

16       SCREEN AND THEN FIGURE OUT LATER WHICH ONES, THAT'S FINE.  WE

17       ARE ADAPTABLE.

18           GO AHEAD.

19              MR. BOIES:  THANK YOU.

20           FIRST, AS MR. GOLUEKE ADMITTED, AND AS I THINK IS OBVIOUS

21       IN ANY EVENT, THE EXTENT TO WHICH THEY TRACK AND TRY TO

22       ESTIMATE OR TRY TO DETERMINE WHETHER OR NOT THERE IS PRIVATE

23       BROWSING DATA HAS BEEN A CENTRAL ISSUE, SOMETHING THAT WE'VE

24       BEEN SEEKING FROM THE VERY BEGINNING.  WE ASKED ABOUT THIS BACK

25       IN 2020.
```

1          AND WE HAVE BEEN TOLD FROM THE BEGINNING THAT THAT DIDN'T

2     HAPPEN, THAT THEY DIDN'T HAVE ANY OF THE DATA.

3          FOR EXAMPLE, IF WE GO TO CHART 88, THESE ARE EXCERPTS FROM

4     A HEARING THAT WE HELD ON APRIL 29TH, 2021.

5          "MR. BROOME:  "WE DO NOT HAVE THE INFORMATION TO IDENTIFY

6     THE PLAINTIFFS' PRIVATE BROWSING SESSIONS.

7          "I KNOW MR. MAO DOESN'T LIKE THAT, BUT THAT IS THE

8     REALITY."

9          "MR. SCHAPIRO:  I'M GOING TO SAY, WE DON'T TRACK PEOPLE IN

10     PRIVATE BROWSING MODE."

11          THEN IN NOVEMBER OF 2021, IF WE GO TO CHART 97,

12     MR. GOLUEKE TESTIFIES IN HIS DECLARATION, "TO THE BEST OF MY

13     KNOWLEDGE AND INFORMED UNDERSTANDING, GOOGLE HAS PROVIDED A

14     COMPLETE LIST OF SOURCES THAT CONTAIN INFORMATION ABOUT

15     PLAINTIFFS RELEVANT TO PLAINTIFFS' CLAIMS."

16          AND I ASKED HIM, "DID YOU UNDERSTAND AT THE TIME OF YOUR

17     DECLARATION THAT GOOGLE ATTEMPTED TO TRACK OR ESTIMATE CHROME

18     INCOGNITO USAGE?"

19          AND HE ANSWERS, "NO."

20          THE COURT WILL REMEMBER ALSO MR. LIAO'S DEPOSITION

21     TESTIMONY WHERE, IF YOU GO TO CHART 83, HE TESTIFIED THAT THEY

22     THOUGHT ABOUT TRYING TO APPROXIMATE INCOGNITO TRAFFIC, BUT

23     DECIDED THAT THEY COULDN'T DO IT AND NO FURTHER ACTION WAS

24     TAKEN TO BUILD SUCH A HYPOTHETICAL SIGNAL.

25          AND I WANT THE COURT TO NOTE THE DATE OF THAT TESTIMONY,

```
 1      WHICH WAS DECEMBER 3, 2021.

 2                 THE COURT:  AND WE LOOKED CAREFULLY AT THAT, AND

 3      WE -- THIS WAS ALL ARGUED IN OUR SESSION IN MAY OR APRIL -- I

 4      FORGET EXACTLY WHEN THE HEARING WAS -- IN THE HEARING THAT LED

 5      TO MY MAY 20TH, 2022 ORDER.

 6                 MR. BOIES:  WE --

 7                 THE COURT:  I APPRECIATE THERE WAS A SHOWING THERE,

 8      AND I MADE MY ORDER, AND I -- IT'S IMPORTANT TODAY FOR NOT JUST

 9      EFFICIENCY, BUT ALSO CONTINUITY, TO PICK UP FROM THERE AS TO

10      THIS RECENTLY, MORE RECENTLY IDENTIFIED INFORMATION.

11                 MR. BOIES:  AND I WILL, YOUR HONOR.

12          AND ONE OF THE THINGS I WANT TO DO IS THIS IS VERY

13      RELEVANT TO THE KINDS OF THINGS THAT THE COURT HAS BEEN TOLD

14      THIS MORNING --

15                 THE COURT:  UM-HUM.

16                 MR. BOIES:  -- BY GOOGLE.

17          FOR EXAMPLE, THEY SAY THAT THIS HEURISTIC WITH RESPECT TO

18      ███████████████    BIT WAS WELL KNOWN AND IT WAS DISCUSSED IN

19      DISCOVERY.

20          WELL, IT WAS DISCUSSED IN DISCOVERY.  IF WE GO TO CHART

21      98, THE WAY IT WAS DISCUSSED IN DISCOVERY IS GOOGLE SAID,

22      THAT'S USED BY WEBSITES, BUT WE DON'T USE IT.

23          OKAY.  JUSTIN SCHUH TESTIFIED JANUARY 6TH, 2022:

24          "QUESTION:  AND WHEN YOU'RE TALKING ABOUT INCOGNITO BEING

25      DETECTABLE, DETECTABLE BY WHOM?"
```

1          "THE WITNESS:  INCOGNITO DETECTION ALWAYS REFERS TO -- OR

2     AT LEAST WHENEVER I'VE HEARD THE TERM USED AND WHENEVER I'VE

3     USED THE TERM, I BELIEVE IT HAS ALWAYS REFERRED TO THE SITE

4     THAT YOU ARE VISITING IN INCOGNITO MODE, DETECTING THAT YOU

5     ARE, IN FACT, IN INCOGNITO MODE."

6          BUT THEY SAID ABOUT THIS HEURISTIC, YES, THE HEURISTIC WAS

7     KNOWN.

8          BUT WHAT THEY SAID IS IT WAS USED BY THE SITE, BUT IT

9     WASN'T USED BY GOOGLE.

10          AND, INDEED, THEY SAID THE SAME THING, IF WE GO TO CHART

11     99, WHEN THEY ANNOUNCED THAT THEY WERE FIXING WHAT COUNSEL FOR

12     GOOGLE SAYS TODAY WAS THIS LOOPHOLE.

13          NOW, FIRST OF ALL, THEY SAY THEY STOPPED IT IN 2018.

14               THE COURT:  UM-HUM.

15               MR. BOIES:  WHAT THEY SAID WAS, IN 2018, THEY WERE

16     GOING TO STOP IT IN 2020.

17          AND AS YOU SEE HERE, THE UPDATE WAS AS OF JULY 21ST, 2020.

18          SECOND, IT JUST STARTED IN 2016.  IT JUST STARTED IN THE

19     MIDDLE OF 2016.

20               THE COURT:  UM-HUM.

21               MR. BOIES:  SO WE KNOW IT WAS GOING ON DURING THE

22     CLASS PERIOD.

23               THE COURT:  UM-HUM.

24               MR. BOIES:  AND, AGAIN, THEY SAY, WELL, IT WASN'T

25     VERY USEFUL, IT WAS UNRELIABLE.

1            AGAIN, WE DON'T HAVE ANY WAY OF TESTING THAT.

2            THEY SAID, WE -- THEY SAID, WE DIDN'T KNOW ABOUT IT.

3            WHO DIDN'T KNOW ABOUT IT?  SOMEBODY AT GOOGLE KNEW ABOUT

4    IT.

5            WHEN GOOGLE TELLS THIS COURT, "WE DIDN'T KNOW ABOUT IT,"

6    WHO DO THEY MEAN BY "WE"?  SOMEBODY AT GOOGLE KNEW ABOUT IT.

7    WHO KNEW ABOUT IT?

8            THEY HAVEN'T TOLD THE COURT.  THEY HAVEN'T TOLD US.

9            AND IF THEY HAD IDENTIFIED THIS DURING THE DISCOVERY, WE

10   COULD HAVE FOUND OUT WHO KNEW ABOUT IT AND HOW WIDELY IT WAS

11   KNOWN.

12           WE HAVE NO IDEA, OTHER THAN THE GENERAL STATEMENTS BY

13   GOOGLE'S COUNSEL, THAT ONLY SOME PEOPLE KNEW ABOUT IT.  HOW

14   MANY WE DON'T KNOW.  THERE'S NO PROOF OF THAT.  THERE'S NO

15   EVIDENCE OF THAT.  WE DON'T HAVE ANY ACCESS OF THAT.  WE HAVE

16   NO WAY OF TESTING THAT.

17           NOW, I ASKED THE COURT TO KEEP IN MIND THE DATES OF SOME

18   OF THAT TESTIMONY --

19               THE COURT:  UM-HUM.

20               MR. BOIES:  -- BECAUSE AS THE COURT IS AWARE FROM THE

21   EFFORT OF GOOGLE TO CLAW BACK THIS DOCUMENT, THERE IS A

22   DOCUMENT THAT WAS PRODUCED RECENTLY, AFTER THE CLOSE OF

23   DISCOVERY, AFTER THE LAST SANCTIONS MOTION, A DOCUMENT THAT WE

24   DID NOT HAVE, FACTS THAT WE DID NOT HAVE THAT ARE NOT -- THAT

25   NOT ONLY CONTRADICT WHAT WE WERE TOLD, WHAT THE COURT WAS TOLD,

1    WHAT THEY SWORE UNDER OATH, BUT SHOWS THAT THIS WAS KNOWN BY

2    MANY PEOPLE IN GOOGLE, INCLUDING SENIOR LITIGATION COUNSEL AT

3    GOOGLE.

4         AND THIS IS A DOCUMENT THAT IS AN EMAIL CHAIN, AND I'M

5    GOING TO CHART NUMBER 90.

6         AND THIS IS AN EMAIL CHAIN, THE LAST EMAIL OF WHICH IS

7    DECEMBER 13TH, 2021.

8              THE COURT:  I REMEMBER THIS FROM THE PRIVILEGE

9    REVIEW.

10             MR. BOIES:  RIGHT.

11             THE COURT:  UM-HUM.

12             MR. BOIES:  AND I WANT TO EMPHASIZE SOME PORTIONS OF

13   THIS BECAUSE THE -- IT'S OBVIOUSLY BEEN HEAVILY REDACTED.  BUT

14   THERE ARE SOME EMAILS HERE THAT ARE NOT REDACTED, AND IF YOU GO

15   TO 91, THE EMAIL HERE IS A SEPTEMBER 27TH, 2021 EMAIL, AND IT

16   IS AN EMAIL THAT SAYS, "WE NEED A RESPONSE TO THE FORM (LINK

17   BELOW) BEFORE 06 OCTOBER TO INDICATE WHETHER YOUR PROJECT IS

18   READING THE X-CLIENT-DATA HEADER FROM CHROME."

19        AND IF YOU THEN GO TO CHART 92, YOU HAVE AN OCTOBER 9,

20   2021 RESPONSE, AND IT SAYS, "I WOULD LIKE FIRST TO UNDERSTAND

21   THE PROBLEM OF USING X-CLIENT-DATA.  IS IT BECAUSE OF PRIVACY

22   OR SECURITY CONCERNS?  OR IS IT BECAUSE THERE ARE UPCOMING

23   PLANS FOR X-CLIENT-DATA MAKING IT NO LONGER A GOOD PROXY SIGNAL

24   FOR INCOGNITO?"

25        WHAT YOU HAVE HERE IS OCTOBER 9, 2021, BEFORE THEY'RE

1    TELLING THE COURT, BEFORE PEOPLE ARE TESTIFYING THAT THIS

2    X-CLIENT-DATA HEADER IS UNRELIABLE, ISN'T BEING USED, HAS BEEN

3    ABANDONED, WE NOW HAVE EVIDENCE THAT THAT WASN'T TRUE, THAT IT

4    WAS A GOOD PROXY SIGNAL.  AND THE PEOPLE THAT ARE USING IT ARE

5    SAYING, WHY ARE YOU MAKING US STOP?

6        AND THERE WAS -- AND THIS PERSON WHO'S COMPLAINING ABOUT

7    HAVING TO ABANDON THIS GOOD PROXY SIGNAL FOR INCOGNITO HAS BEEN

8    TOLD THAT THE USAGE IS NO LONGER WITHIN POLICY.  NO EXPLANATION

9    WHY.

10       OF COURSE, THIS IS EXACTLY AT THE TIME THAT WE'RE PRESSING

11   THE COURT.  THIS IS EXACTLY THE TIME THAT WE ARE COMING TO THE

12   SPECIAL MASTER AND THEN TO THE COURT SAYING, THEY'RE HIDING

13   THEIR USE OF THE X-CLIENT-DATA.

14       AND THEN THESE ARE DOCUMENTS THAT ARE GOING TO THE PEOPLE,

15   SOME OF THE PEOPLE, LIKE MR. LIAO WHO WAS TESTIFYING THAT THESE

16   ARE DOCUMENTS GOING TO THE COUNSEL.

17       THESE ARE NOT DOCUMENTS THAT ARE OBSCURE.  THESE ARE NOT

18   DOCUMENTS THEY DON'T KNOW ABOUT.

19       THIS IS STUFF THAT THEY KNOW ABOUT WHEN THEY'RE COMING IN

20   AND TELLING US AND TELLING THE COURT THAT THEY'RE NOT DOING IT

21   AND IT'S UNRELIABLE.

22       LET ME TURN TO THE SPECIFIC PREJUDICE WITH RESPECT TO EACH

23   OF THE ITEMS THAT WE'VE TALKED ABOUT.

24       FIRST THERE ARE THE █ LOGS.

25           THE COURT:  UM-HUM.

1          MR. BOIES:  AND COUNSEL TELLS YOU, AND I HONESTLY DO

2     NOT KNOW HOW HE CAN TELL YOU THIS, BUT HE TELLS YOU THAT WE

3     HAVE NO PROBLEM WITH THE ▇ LOGS, WE ONLY HAVE A PROBLEM WITH

4     ▇ LOG.

5          I DON'T KNOW HOW YOU CAN READ OUR PAPERS AND COME TO THAT

6     CONCLUSION.  IT OBVIOUSLY IS NOT THE CASE.  WE THINK THE

7     FAILURE TO DISCLOSE THE FIRST ▇ LOGS WAS EXTREMELY SERIOUS AND

8     EXTREMELY PREJUDICIAL TO THE PLAINTIFFS.

9          IF WE GO TO CHART A2, THESE ▇ LOGS ARE, LIKE THE ▇ LOGS,

10    LOGS THAT, AS THIS COURT FOUND, QUOTE, "ALL TRACK INCOGNITO

11    TRAFFIC AND THEREFORE PLAINLY CONTAIN INFORMATION RELEVANT TO

12    PLAINTIFFS' CLAIMS, SUCH THAT THEY SHOULD HAVE BEEN DISCLOSED

13    IN SEPTEMBER" OF 2021.

14         THESE ▇ LOGS -- I'LL COME TO THE ▇▇ LOG IN A MINUTE,

15    BUT I JUST WANT TO DEAL WITH JUST THESE ▇ LOGS FIRST.

16         THESE ▇ LOGS ALL TRACK INCOGNITO TRAFFIC, AND AS THIS

17    COURT SAID, AS A RESULT, "PLAINLY CONTAIN INFORMATION RELEVANT

18    TO PLAINTIFFS' CLAIMS, SUCH THAT THEY SHOULD HAVE BEEN

19    DISCLOSED IN SEPTEMBER ."

20         THERE IS NO DOUBT THAT THESE SHOULD HAVE BEEN DISCLOSED,

21    AND THERE'S NO DOUBT THAT THEY COULD EASILY HAVE BEEN

22    DISCLOSED.

23         THE THREE-WEEK EFFORT THAT THEY DID WITH THREE PEOPLE

24    COULD OBVIOUSLY HAVE BEEN DONE BEFORE.  THIS WAS NOT A

25    MASSIVE -- WHAT THEY DID TO FIND THESE ▇ LOGS WAS EASY TO DO,

1     THEY DID IT IN THREE WEEKS, AND THEY DID IT BY SAMPLING I THINK

2     THEY SAID ██████ OF A CERTAIN KIND -- THEY DIDN'T EVEN

3     SAMPLE ALL THE LOGS.  THEY JUST SAMPLED AN INDEX FOR THE LOGS

4     IN EFFECT AND DID A ██████, DID IT OVER 14 DAYS.

5          THAT CLEARLY COULD HAVE BEEN DONE EARLIER.

6          NOW, HOW HAVE WE BEEN PREJUDICED FROM THAT?

7          WELL, FIRST, BECAUSE THESE LOGS WERE NOT IDENTIFIED DURING

8     THE DISCOVERY PERIOD, WE HAD NO OPPORTUNITY TO DISCOVER THE

9     DATA, THE ACTUAL DATA FROM THE LOGS.

10         WHAT WE HAVE NOW IS IDENTIFICATION OF THE LOGS.  WE DON'T

11    HAVE ANY OF THE DATA IN THOSE LOGS.  WE DON'T HAVE ANY OF THE

12    DATA THAT POPULATED THOSE LOGS.

13         THIS IS EVEN WORSE THAN THE █ LOGS, BECAUSE THE █ LOGS

14    THAT WERE THIS PRODUCT OF THE PRIOR SANCTIONS MOTION, WE GOT

15    THAT IN TIME WHEN WE STILL HAD THE SPECIAL MASTER PROCESS, WE

16    WENT BACK AND WE WERE ABLE TO GET SOME OF THE DATA.

17         THIS DATA, BECAUSE OF THEIR RETENTION POLICIES, NOW THAT

18    DATA THAT WAS POPULATED DURING THAT PERIOD IS GONE.  WE DON'T

19    HAVE ANY OF THAT DATA.  WE WERE UNABLE TO TAKE DISCOVERY

20    CONCERNING THE LOG'S PURPOSE, USE, RELIABILITY.

21         THEY SAY THAT WOULDN'T HAVE HELPED US.

22         WITH RESPECT, YOUR HONOR, THAT'S NOT THEIR CHOICE.  THEY

23    DON'T GET TO CHOOSE WHAT WILL OR WILL NOT HELP US.  THEY DON'T

24    GET TO CHOOSE WHETHER SOMETHING WILL OR WILL NOT BE SOMETHING

25    THAT'S USEFUL TO OUR CASE.  THAT'S SOMETHING THAT WE GET TO

1        CHOOSE.

2              AND BECAUSE THEY CONCEALED THESE LOGS UNTIL DISCOVERY WAS

3        OVER WITH, WE NEVER HAD THE OPPORTUNITY, AND NEVER WILL HAVE

4        THE OPPORTUNITY, TO FIGURE OUT WHAT THE ACTUAL PURPOSE, THE

5        ACTUAL USE, THE ACTUAL RELIABILITY OF THESE ARE.

6              AND IF WE GO TO CHART A3, THERE IS A SENSE IN WHICH

7        GOOGLE'S UN-CROSS-EXAMINATION ASSERTIONS CONCERNING THESE LOGS

8        ARE NOT MERELY, IN OUR VIEW, INADMISSIBLE TO TRY TO DEFEND

9        GOOGLE'S ACTIONS.

10             THEY ACTUALLY UNDERSCORE THE PREJUDICE THAT GOOGLE'S

11       FAILURE TO TIMELY DISCLOSE THESE LOGS CAUSED THE PLAINTIFFS.

12             GOOGLE'S FAILURE TO DISCLOSE THESE LOGS HAS DEPRIVED

13       PLAINTIFFS OF THE FACTS, INCLUDING THE LOGS' DATA, SCHEMA, AND

14       FACTS CONCERNING THEIR PURPOSES, USES, RELIABILITY, NECESSARY

15       FOR US TO BE ABLE TO TEST AND COUNTERDICT GOOGLE'S ASSERTIONS

16       TO THIS COURT NOW AND TO THE JURY.

17             WE'VE LOST THAT ABILITY BECAUSE THEY DIDN'T DISCLOSE THESE

18       LOGS WHEN THEY WERE OBLIGATED TO DISCLOSE THESE LOGS.

19             AND WE'VE GOT THE LOGS, BUT WE DON'T HAVE THE SCHEMA FOR

20       THE LOGS.  WE'VE GOT THE LOGS, BUT WE DON'T HAVE THE DATA FOR

21       THE LOGS.

22             THE COURT:  WHAT ABOUT THE SPECIAL MASTER PROCESS,

23        MR. BOIES?

24             MR. BOIES:  WHAT?

25             THE COURT:  WHAT ABOUT THE SPECIAL MASTER PROCESS

```
 1        THAT WAS OFFERED AND NOT -- THAT PLAINTIFFS DID NOT ENGAGE?

 2              MR. BOIES:  AT THAT POINT, THE ONLY WAY TO DO IT IS

 3        TO REOPEN DISCOVERY, YOUR HONOR, AND LOSE OUR TRIAL DATE.

 4           IT -- IF WE WERE NOW TO GO BACK AND START THIS PROCESS

 5        OVER AGAIN -- FIRST, WE CAN'T BECAUSE A LOT OF THE DATA AND

 6        PERHAPS THE SCHEMA IS LOST, SO WE DON'T HAVE IT TO GO BACK TO.

 7              BUT EVEN TO THE EXTENT THAT WE DO HAVE IT TO GO BACK TO --

 8        I MEAN, FOR EXAMPLE, WE COULD GET NOW THE NAMES OF THE PEOPLE

 9        WHO MOVED ON THIS.  WE COULD GO AND EXAMINE THE PEOPLE ABOUT

10        IT.

11              I MEAN, I'M GOING TO GET THIS -- I'M GOING TO GET THIS

12        WRONG, SO I'M GOING TO ASK SOMEBODY.

13           WHAT IS THE ███████████ -- WHAT IS THE --

14              MR. MAO:  IT WAS THE DOCUMENT, YOUR HONOR, THAT --

15              MR. BOIES:  JUST SAY WHAT IT IS, THE TITLE.

16              MR. MAO:  ████████████████.

17              MR. BOIES:  ███████████████████████████

18        ██████████████████████.

19           WE DON'T KNOW ABOUT THIS.  WE HAD NO DISCOVERY ABOUT IT.

20        YOU KNOW, WE GOT NO DISCOVERY ABOUT THIS.

21           NOW THAT WE KNOW ABOUT IT, WE CAN GO AND START RE-DOING

22        EVERYTHING ALL OVER AGAIN.

23           AND THERE'S PART OF ME THAT THINKS THAT THAT'S -- THAT

24        MIGHT BE THE RIGHT THING TO DO.

25           THERE'S ALSO PART OF ME THAT SAYS WE'VE BEEN AT THIS FOR
```

```
1        THREE YEARS --

2                THE COURT:  UM-HUM.

3                MR. BOIES:  -- AND GOOGLE SHOULD NOT BE ABLE, YOUR

4        HONOR, GOOGLE SHOULD NOT BE ABLE TO PUT US TO THIS HOBSON'S

5        CHOICE OF HOLDING BACK THIS STUFF DURING DISCOVERY AND THEN BUY

6        THEMSELVES ANOTHER THREE YEARS BY SAYING, NOW THAT WE'VE TOLD

7        YOU ABOUT IT, YOUR REMEDY IS TO GO BACK AND DO ALL YOUR

8        DISCOVERY AGAIN.

9                THE COURT:  UM-HUM.

10                MR. BOIES:  I JUST THINK THAT THEY HAD AN OBLIGATION

11        TO PRODUCE THIS.  WE GAVE THEM EVERY OPPORTUNITY.  I MEAN, THIS

12        IS NOT THE FIRST TIME WE'VE BEEN IN FRONT OF THE COURT.  I

13        MEAN, THERE WAS THE APRIL 2021 DISCOVERY ORDER.  THERE WAS THE

14        SEPTEMBER 2021 DISCOVERY ORDER.  THERE WAS A NOVEMBER --

15                THE COURT:  AND MANY IN BETWEEN.

16                MR. BOIES:  EXACTLY.  AND THEY'VE BEEN TOLD TO

17        PRODUCE THIS STUFF OVER AND OVER AND OVER AGAIN.

18            AND AT SOME -- AT SOME POINT, THEY'VE SIMPLY GOT TO BEAR

19        THE RESPONSIBILITY FOR FAILING TO COMPLY WITH THOSE DISCOVERY

20        ORDERS.

21                THE COURT:  WE WERE TALKING ABOUT PREJUDICE.  WE WERE

22        TALKING ABOUT THE █.

23                MR. BOIES:  THE █.

24                THE COURT:  LET'S TALK ABOUT THE █████ LOG.

25                MR. BOIES:  SURE.
```

1          NOW, WITH RESPECT TO THE ███ ██, YOUR HONOR, WE DO NOT

2     HAVE EVIDENCE THAT THEY JOINED THEM IN THE SENSE THAT THEY WANT

3     TO USE THE WORD "JOINED."  OKAY?

4          THE COURT:  UM-HUM.

5          MR. BOIES:  I MEAN, THIS IS, AFTER ALL, A LOG THAT IS

6     CALLED THE ████ LOG.  ALL RIGHT?

7          BUT I UNDERSTAND THAT THERE IS A DIFFERENCE BETWEEN

8     INCLUDING BOTH KINDS OF DATA AND ACTUALLY INTEGRATING THEM IN

9     SUCH A WAY THAT YOU HAVE AN OUTPUT THAT COMBINES THE TWO.

10         WE DON'T KNOW WHAT THEY HAVE DONE.  IF WE HAD KNOWN ABOUT

11    THIS, WE WOULD HAVE ASKED A LOT OF QUESTIONS.  WE WOULD HAVE

12    GONE AFTER PEOPLE.  WE WOULD HAVE ASKED FOR MORE DOCUMENTS.

13         WE WOULD HAVE PURSUED IT, AND WE WOULD HAVE BEEN IN A

14    POSITION THEN TO TEST FOR OURSELVES THEIR ASSERTION THAT, NO,

15    WE NEVER JOINED THEM IN THE WAY THAT WE'RE TALKING ABOUT

16    JOINING.

17         THE FACT THAT THEY ARE TOGETHER SHOWS THEY COULD.

18         AND REMEMBER, YOUR HONOR, THEY TOLD YOU, THEY TOLD US,

19    THEY TOLD EVERYBODY, WE DON'T INCLUDE THEM IN THE SAME LOGS.

20         THEY'RE NOT -- IT'S BEEN THIS SERIES OF STEPS.  FIRST, WE

21    DON'T TRACK IT.

22         WELL, WE DO TRACK IT, BUT WE TRACK THEM IN DIFFERENT LOGS.

23         NO, WE DO TRACK THEM IN THE SAME LOG, BUT WE DON'T COMBINE

24    THE INFORMATION.

25         WITH RESPECT, I DON'T THINK THEY -- I DON'T THINK WE HAVE

```
 1       TO PLAY THAT GAME.  I DON'T THINK THEY HAVE THE RIGHT TO COME

 2       IN AND TELL US AND TELL THE COURT REPEATEDLY SOMETHING THAT'S

 3       NOT TRUE, WE FIND OUT IT'S NOT TRUE, THEY TELL US SOMETHING

 4       ELSE THAT'S NOT TRUE, THEY THEN SAY, WELL, BUT WE HAVEN'T DONE

 5       THIS.

 6            THAT IS -- AT SOME POINT THEY'VE GOT TO TAKE THE

 7       RESPONSIBILITY FOR THAT, BECAUSE THE PREJUDICE TO US IS WE

 8       DON'T GET THE CHANCE NOW TO USE THIS INFORMATION IN DISCOVERY.

 9       WE DON'T GET THE CHANCE TO GET THE SCHEMA, TO GET THE DATA, TO

10       FIND OUT THE USES.

11                 THE COURT:  I UNDERSTAND.

12                 MR. BOIES:  WE DON'T HAVE THAT.

13                 THE COURT:  OKAY.

14                 MR. BOIES:  THE -- NOW, LET ME GO TO THE

15       ██████████████  BIT.

16                 THE COURT:  UM-HUM.

17                 MR. BOIES:  AND MR. MAO IS GOING TO -- HAS A

18       TECHNICAL EXPLANATION THAT DEALS WITH SOME OF THE TECHNICAL

19       POINTS THAT WERE MADE.

20                 THE COURT:  OKAY.

21                 MR. BOIES:  BUT FOR ME WHAT'S REALLY IMPORTANT HERE

22       IS THAT AS THIS COURT RULED IN THE PRIOR SANCTIONS MOTION,

23       TRAFFIC ORIGINATING FROM INCOGNITO MODE TRAFFIC IS

24       DISTINGUISHED FROM -- TRAFFIC COMING FROM NON-INCOGNITO MODE

25       TRAFFIC IS CLEARLY RELEVANT TO THE ISSUES IN THIS LITIGATION.
```

1        THAT WAS AT PARAGRAPH 134.

2             AND THAT IS WHAT ███████████ DOES.

3             NOW, AGAIN, THEY SAY, OH, IT'S UNRELIABLE, WE STARTED IN

4    THE MIDDLE OF 2016, WE NEVER CHANGED IT, WE STOPPED USING IT.

5             NOW, I WANT TO BE VERY CLEAR.  WHEN THEY SAY THEY STOPPED

6    USING IT IN 2019 -- I MEAN, FIRST OF ALL, I THINK, AS I JUST

7    SHOWED YOU, I THINK THE RECORD IS 2020 -- BUT WHEN THEY STOPPED

8    USING IT IN 2019, THAT WAS FOR CHROME.  THAT WAS NOT FOR THE

9    OTHER TWO BROWSERS, AT LEAST, THAT'S WHAT THEY'VE TOLD US.

10            AND BECAUSE THIS WAS NOT IDENTIFIED TO US, WE DIDN'T HAVE

11   THE OPPORTUNITY TO GO TO THE PEOPLE WHO DID IT AND ASK THEM,

12   WHAT WAS THEIR USE?  WHAT WAS THE PURPOSE OF IT?

13            THIS IS -- THIS IS CERTAINLY A BIT THAT DISTINGUISHES

14   TRAFFIC ORIGINATING FROM INCOGNITO MODE FROM TRAFFIC COMING

15   FROM NON-INCOGNITO MODE AND, HENCE, IT'S CLEARLY RELEVANT, AS

16   THIS COURT HAS HELD IN THE ISSUES IN THIS LITIGATION.

17            HOW RELEVANT IT WOULD BE IS SOMETHING THAT WE'LL NEVER BE

18   ABLE TO PROVE BECAUSE WE WERE DEPRIVED OF THE ABILITY TO KNOW

19   ABOUT THIS AT A TIME WHEN DISCOVERY WAS ONGOING.

20            NOW, IF WE GO TO CHART A5 AT THE BOTTOM, I WANT TO

21   EMPHASIZE THAT GOOGLE HAS REFUSED EVEN TO TELL US WHAT THE LOGS

22   WERE THAT USED THIS BIT, OR PROVIDE ANY SCHEMA OR DATA FOR SUCH

23   LOGS.  EVEN TODAY, THEY HAVE TOLD US THAT THERE'S THIS BIT, BUT

24   THEY HAVEN'T IDENTIFIED ANY OF THE LOGS THAT THIS BIT WAS

25   EMPLOYED WITH.

1          THAT'S JUST AN ILLUSTRATION OF THE KIND OF PREJUDICE WE

2    HAVE AND THE KIND OF -- HOW WE -- HOW WE GET A BIT OF

3    INFORMATION -- I'M NOT MEANING TO --

4          THE COURT:  NO PUN INTENDED, ALL RIGHT.

5          MR. BOIES:  NO PUN INTENDED.

6          AND THEN WE TRY TO FOLLOW IT UP, BUT WE NEVER -- WE NEVER

7    ARE ABLE TO FIND OUT WHAT ALL THE FACTS ARE.  WE DON'T HAVE THE

8    OPPORTUNITY TO HAVE THE RIGHT TO KNOW THOSE FACTS AND BE ABLE

9    TO PRESENT THEM.

10         AND THEY SAID AT ONE POINT, WELL, THE FACT THAT WE TOLD

11   YOU ABOUT IT AT ALL SHOWS OUR GOOD FAITH.

12         WELL, THE REASON THEY FOUND OUT ABOUT IT IS IT CAME UP IN

13   THE CALHOUN LITIGATION.

14         AND THEY DIDN'T JUST DECIDE OUT OF THE GOODNESS OF THEIR

15   HEART TO TELL US ABOUT IT.  IT CAME UP AND THEY DIDN'T HAVE ANY

16   CHOICE.

17         NOW, I WANT TO TALK ABOUT TWO OTHER THINGS.  I AGREE THAT

18   THE LOGS AND THE BIT ARE THE TWO MOST IMPORTANT THINGS -- WELL,

19   LET ME TAKE THAT BACK.

20         THEY ARE TWO OF THREE MOST IMPORTANT THINGS.  THERE'S ONE

21   ISSUE THAT I THINK IS NOT SO IMPORTANT, BUT I WANT TO MENTION

22   IT ANYWAY, AND THAT IS THE PEOPLE WHO KNEW ABOUT THIS, THE

23   PEOPLE WHO PUT IN THE DECLARATIONS, WERE NEVER IDENTIFIED AT

24   THE TIME THEY SHOULD HAVE BEEN IDENTIFIED.  IF THEY'D BEEN

25   IDENTIFIED, WE COULD HAVE FOUND OUT THIS FROM THEM PERHAPS.

1          BUT WHAT'S REALLY IMPORTANT IS THAT THEY HAD AN OBLIGATION

2     TO PRODUCE THESE LOGS AND PRODUCE THESE BITS AND PRODUCE THIS

3     INFORMATION.

4          BUT I DO THINK THAT THEY OUGHT TO BE PRECLUDED FROM USING

5     THE PEOPLE THEY DIDN'T IDENTIFY.

6          THE OTHER POINT, THOUGH, THAT I DO THINK IS REALLY

7     IMPORTANT IS THAT GOOGLE STILL HAS NOT PROVIDED THE

8     REPRESENTATION THAT THEY'VE BEEN ORDERED THREE TIMES TO

9     PROVIDE.  AT LEAST THREE TIMES THEY HAVE BEEN ORDERED BY THE

10    COURT TO PRODUCE ALL OF THE LOGS AND DATA SOURCES AND PROVIDE

11    AN ATTESTATION THAT THERE ARE NO SUCH OTHER LOGS.

12         NOW, AS THEY SAID IN THE DECLARATION, THEY ORIGINALLY --

13    WELL, FIRST OF ALL, LET ME BACK UP.

14         LET ME GO TO CHART A15.

15         IN BOTH THE SEPTEMBER 16, 2021 ORDER AND THE

16    NOVEMBER 12TH, 2021 ORDER --

17              THE COURT:  UM-HUM.

18              MR. BOIES:  -- THIS COURT CLEARLY REQUIRED THEM TO

19     PROVIDE A DECLARATION, UNDER PENALTY OF PERJURY FROM GOOGLE,

20     NOT COUNSEL, THAT GOOGLE HAD PROVIDED A COMPLETE LIST OF DATA

21     SOURCES.

22         IN ITS MAY 20 ORDER -- WE INTERPRETED THAT ORDER THE SAME

23    WAY.

24         GOOGLE ADMITS IT INITIALLY INTERPRETED THAT ORDER THAT

25    WAY.

1          AND IF SOMEBODY CAN PULL UP THE DECLARATION?

2          I WAS LOOKING FOR THE DECLARATION THAT THEY PUT IN HERE

3     WHERE THEY SAID THEY ORIGINALLY INTERPRETED THE COURT'S ORDER

4     AS SAYING THAT THEY HAD TO PROVIDE ALL OF THE LOGS.

5              THE COURT:  THAT'S MR. SRAMEK'S DECLARATION.  I'M

6      FAMILIAR WITH THAT.

7              MR. BOIES:  EXACTLY.  AND THEN THEY DECIDED TO CUT IT

8      BACK.

9          NOW, AGAIN, YOUR HONOR KNOWS WHAT YOUR HONOR INTENDED.

10         BUT I CAN'T BELIEVE THAT YOUR HONOR INTENDED TO CUT BACK

11    ON THE OBLIGATIONS THAT THEY HAD UNDER THE PRIOR ORDERS, AND

12    THEY STILL HAVE NOT PROVIDED THAT.

13         AND WHAT THEY SAY IS THAT TO DO THAT, THEY'D HAVE TO

14    FOLLOW UP ON ██████ HITS ON A SEARCH FOR INCOGNITO.

15         THAT SHOULD HAVE BEEN DONE AT THE BEGINNING OF THIS CASE,

16    YOUR HONOR.  THEY'VE KNOWN FROM THE BEGINNING OF THIS CASE,

17    THIS CASE WAS ABOUT OUR ASSERTION THAT THEY TRACKED AND USED

18    INCOGNITO DATA, AND THEY WERE OBLIGATED TO DO THIS RIGHT AT THE

19    BEGINNING.

20         MOREOVER, IF WE HAD KNOWN ABOUT THIS STUFF EARLIER, WE

21    COULD HAVE WORKED MAYBE TO NARROW THAT.

22         BUT, AGAIN, WE HAVE NO IDEA WHAT THOSE, WHAT THOSE HITS

23    WERE.  WE HAVE NO IDEA HOW TO FOLLOW IT UP.  WE HAVE NO

24    INFORMATION ABOUT IT AT ALL, OTHER THAN WHAT GOOGLE TELLS US IN

25    A NON-EVIDENTIARY WAY.

1          AND I WANT TO BE CLEAR.  THEY WANT TO MAKE THIS NOW ABOUT

2     WHETHER WE CAN PROVE THAT THEY COMBINED THIS IN A WAY, IN A

3     PARTICULAR WAY.

4          THAT ISN'T THE ISSUE IN DISCOVERY.  WE'RE SEEKING EVIDENCE

5     THAT CAN LEAD US TO THAT CONCLUSION.  WE ARE SEEKING EVIDENCE

6     AS TO HOW THEY USED THIS INFORMATION.

7          AND WHEN THEY TELL THE COURT THAT THERE ARE NO NEW USES TO

8     THIS INFORMATION, THAT THERE ARE NO NEW DATA THAT'S HERE,

9     THAT'S JUST NOT -- THAT'S JUST NOT RIGHT.

10         WE DON'T KNOW THE COMPLETE PICTURE.  BUT WE KNOW, JUST

11    FROM THE FRAGMENTS THAT WE HAVE, THAT THOSE ASSERTIONS THAT

12    THEY TELL THE COURT TODAY, THAT -- AND I WROTE IT DOWN -- THEY

13    TOLD THE COURT THAT THERE'S NO NEW DATA HERE, THERE'S NO NEW

14    USES FOR THE DATA, AND THAT'S JUST NOT RIGHT.

15         I MEAN, FOR EXAMPLE, THE ███████ LOGS, THOSE ███████████

16    LOGS WERE NOT -- THAT HAD NOT BEEN PREVIOUSLY USED AT ALL.

17         IF I COULD -- CAN I JUST HAVE A MOMENT, YOUR HONOR?

18    THERE'S A CHART I HAVE.

19             THE COURT:  YES.  LET ME ASK -- AND I APPRECIATE

20     THIS, MR. BOIES, AND IT'S BEEN VERY HELPFUL -- I KNOW YOU

21     REFERENCED THAT MR. MAO WOULD ADDRESS SOME OF THE TECHNICAL

22     ASPECTS ON THE HEURISTIC.

23         I DO WANT TO WRAP UP THIS PIECE RELATIVELY SOON.  WE'LL

24    TAKE A SHORT BREAK AND THEN WE'LL MOVE TO THE SANCTIONS

25    SPECIFICALLY.

```
 1            WHAT ELSE BESIDES MR. MAO ADDRESSING THE TECHNICAL PIECE?
 2      IS THERE ANYTHING ELSE SPECIFIC?
 3            MR. BOIES:  NO, EXCEPT --
 4            THE COURT:  "NO, EXCEPT."  OKAY.  THAT WOULD BE YES.
 5            MR. BOIES:  WHAT I'D LIKE TO DO IS LET ME HAVE
 6      MR. MAO ADDRESS THAT, AND THEN I WANT TO ADDRESS SOME OF THE
 7      USES JUST VERY BRIEFLY TO TRY TO REBUT WHAT COUNSEL TOLD YOU
 8      THAT I DIDN'T EXPECT THEM TO SAY.
 9            THE COURT:  OKAY.
10            MR. BOIES:  BUT I'VE GOT SOME STUFF I'M GOING TO PULL
11      OUT THAT I WANT TO USE.
12            THE COURT:  ALL RIGHT.  THANK YOU, MR. BOIES.
13         NOW WE HAVE SLIDES, MR. MCGEE?
14            MR. MCGEE:  YES, YOUR HONOR.  MAY I APPROACH?
15            THE COURT:  YEAH.  WHAT -- TELL ME WHAT --
16            MR. MCGEE:  THERE ARE THREE DIFFERENT DECKS AND THEY
17      HAVE DIFFERENT NUMBERING.
18            THE COURT:  OKAY.  I SEE.
19         OKAY.  VERY GOOD.  GOT IT.  THANK YOU.
20            MR. MAO:  I APOLOGIZE, YOUR HONOR.  I RECENTLY
21      CHANGED MY PASSWORD AND I DON'T REMEMBER IT.  GIVE ME A SECOND.
22         (LAUGHTER.)
23            MR. MAO:  I APOLOGIZE.
24         MINE IS THE SHORTEST DECK.
25            THE COURT:  I SEE THAT.
```

```
 1              MR. MAO:  IT'S 11 PAGES.

 2              THE COURT:  YOU HELPFULLY LABELED THAT.

 3              MR. MAO:  IT'LL BE CRISP, IT'LL BE TECHNICALLY

 4    ACCURATE, I BELIEVE.

 5              THE COURT:  AND FASCINATING, I'M SURE.

 6         LET ME HELP YOU OUT.  I UNDERSTAND -- I READ MR. HARREN'S

 7    DECLARATION.  I UNDERSTAND ABOUT THE SCRIPT AND THE LIMITED USE

 8    IN THE LITTLE POCKET OF INFORMATION.  I GET THAT.

 9         I REALLY WOULD LIKE TO HEAR ABOUT THE ███████████████

10    PIECE.  WHY DON'T YOU START THERE?

11              MR. MAO:  BUT I WOULD LIKE TO GO BACK TO THAT,

12    BECAUSE I ACTUALLY BELIEVE THAT WHAT MR. HARREN'S DECLARATION

13    DEMONSTRATES IS THAT IT ACTUALLY SHOWS THAT GOOGLE ONLY

14    IDENTIFIED LOGS CURRENTLY BEING USED AS NEW DATA REQUESTS AND

15    NOT HISTORICAL FOR THE CLASS PERIOD.

16              THE COURT:  I GET THAT.  FOURTEEN DAYS, I GOT IT.

17              MR. MAO:  ALL RIGHT.

18         BUT LET ME ACTUALLY, I WANT TO USE THE NEW

19    ████████████████  AS AN ILLUSTRATION OF HOW AND WHY WE KNOW

20    THAT.

21         OKAY, IF YOU DON'T MIND GOING TO SLIDE NUMBER 6.

22         THIS IS THE ONE REGARDING PARAGRAPH 6.  IT SOUNDS LIKE

23    YOUR HONOR CLEARLY SAW THAT IT -- I ACTUALLY BELIEVE THAT THIS

24    SAYS THAT THEY MAY HAVE BEEN USING THE NEW ██████████████

25    LONGER THAN 2016, BUT THE LAST TIME IT WAS ALTERED WAS IN 2016.
```

     1          AND, OF COURSE, YOUR HONOR KNOWS OUR CLASS PERIOD BEGINS

     2     IN JUNE 2016.

     3          THE COURT:  I ACTUALLY COULDN'T REMEMBER WHEN IT

     4     BEGAN, SO I WAS -- THAT WAS ONE OF MY QUESTIONS.  THANK YOU.

     5          MR. MAO:  OKAY.  SO THAT IS OBVIOUSLY RELEVANT, OKAY?

     6          AND AS I ALWAYS SHOW, WITH MR. SRAMEK AND ALSO

     7     MR. HARREN'S DECLARATIONS, THAT IT -- THEIR DECLARATIONS

     8     DEMONSTRATE THAT ALL THEY PROVIDED TO YOUR HONOR AND THE

     9     PLAINTIFFS ARE ACTUALLY CURRENT LOGS AND NOT HISTORICAL LOGS,

    10     INCLUDING FOR THE CLASS PERIOD, WHICH MIGHT EXPLAIN WHY SOME OF

    11     THESE THINGS WEREN'T, QUOTE-UNQUOTE, PICKED UP.

    12          BUT I WANT TO ADDRESS WHAT WAS TOLD TO YOU, WHICH WAS THAT

    13     THIS WAS JUST MEANT TO ███████████   AND, THEREFORE, NOT

    14     RELEVANT TO THE CASE.

    15          THE COURT:  UM-HUM.

    16          MR. MAO:  CAN YOU MOVE ON TO THE NEXT SLIDE, PLEASE.

    17          VERY IMPORTANT, IN MR. BENKO'S DECLARATION, I CALL YOUR

    18     ATTENTION -- I CALL YOUR HONOR'S ATTENTION TO PARAGRAPH

    19     NUMBER 2.  THE VERY LAST LABEL THERE WAS TO ███████████.

    20          ON A TECHNICAL LEVEL, WHAT THAT MEANS IS IT'S DONE TO DO

    21     AT LEAST TWO THINGS.  IT'S USED TO AT LEAST DO TWO THINGS:

    22     ████████████████████████████████████████

    23     ████████████████████████████████████████████

    24     ████████████████████████████████.  OKAY?

    25          AND THEN THE OTHER THING WAS TO ██████████████

1 ██████████████████████████████████████

2 ████████████████████████████.

3          THE COURT:  UM-HUM.

4          MR. MAO:  IN OTHER WORDS, THE VERY FACT THAT THIS IS

5 USED TO ██████████████ ACTUALLY TELLS YOU, YOUR HONOR, THAT

6 THERE ARE █ LOGS IN WHICH THIS BIT IS GOING TO EXIST IN.

7          THE COURT:  UM-HUM.

8          MR. MAO:  AND THAT IS WHAT MR. BENKO VERY, VERY

9 CAREFULLY PARSED SO THAT HE DID NOT PERJURE HIMSELF.

10     IF I MAY GO ON TO PARAGRAPH NUMBER 5.

11     THE OTHER REASON WHY THE NEW INCOGNITO BIT IS CLEARLY

12 RELEVANT, YOUR HONOR, IS BECAUSE THE INCOGNITO BIT ACTUALLY

13 RELIES ON A HACK IN WHICH GOOGLE RECOGNIZES ITSELF IS A HACK.

14     AS MR. BOIES POINTED OUT, THE FACT THAT THERE WAS A

15 VULNERABILITY IN BROWSERS, INCLUDING IN CHROME AND OTHER

16 BROWSERS, DOES NOT MEAN THAT WE ACTUALLY KNEW THAT GOOGLE WAS

17 USING THIS ITSELF, ESPECIALLY WHEN -- IF YOU MAY GO ON TO SLIDE

18 NUMBER 9 -- AND I WILL JUST SHOW YOU WHERE THIS, THIS BLOG

19 ACTUALLY CAME FROM.  IT'S DOCKET 810, YOUR HONOR.  IT'S WHAT

20 GOOGLE REFERRED TO IN TERMS OF WHAT THEY WERE TALKING ABOUT AS

21 THIS VULNERABILITY, OKAY --

22          THE COURT:  UM-HUM.

23          MR. MAO:  -- THIS THING IN WHICH THIS SCRIPT THAT

24 CAUSES THE ██████████████ VALUE TO EITHER BE RETURNED AS TRUE

25 OR FALSE.

```
 1            THE COURT:  UM-HUM.

 2            MR. BOIES:  OKAY.  IF WE GO ON TO PAGE 10, OR

 3   SLIDE 10, IF WE TAKE A LOOK AT THAT, YOUR HONOR, YOU SEE, AS

 4   MR. BOIES POINTED OUT, OKAY, IT'S NOT TRUE THAT THIS WAS

 5   STOPPED BEING USED IN 2019.  I WOULD SUGGEST IT'S ACTUALLY IN

 6   2020.

 7            OKAY.  BUT IF YOU LOOK AT THAT, RIGHT, GOOGLE HAD

 8   REPRESENTED THIS AS BEING SOMETHING WHICH THEY WERE DOING TO

 9   PROTECT USERS' ABILITY TO BROWSE PRIVATELY.

10            YOU GO ON TO THE NEXT PAGE, OKAY, THEY CALL THIS A

11   LOOPHOLE, AND THEN THEY ALSO SAY THAT WEBSITES THAT WERE -- IF

12   WEBSITES WERE DEPLOYING THIS, THEY WERE INTERCEPTING INCOGNITO

13   MODE SESSIONS TO CAPTURE CONTENT, OKAY, WHICH THEY ALREADY

14   SIGNALLED IS GOING TO BE ONE OF THE THINGS WHICH THEY TRIED TO

15   CHALLENGE IN THEIR MOTION FOR SUMMARY JUDGMENT, YOUR HONOR.

16   OKAY?  THIS LITERALLY HAPPENED AT THE LAST CMC AND YOU CAN SEE

17   THE TRANSCRIPT ON THAT.

18            THE COURT:  I'VE SEEN IT.

19            MR. MAO:  THE POINT ON THAT, YOUR HONOR, IS THAT THE

20   ███████████████, ESPECIALLY AS THEY ARE USED FOR ADS, THIS

21   CLEARLY DEMONSTRATES EVIDENCE THAT IS, THAT IS IMPORTANT TO

22   CLAIMANTS -- SORRY, I JUST GOT OUT OF ARBITRATION, YOUR HONOR,

23   I APOLOGIZE -- PLAINTIFFS' CLAIMS ALONG THE WIRETAP CLAIMS,

24   ALSO THE CDAFA, THE CALIFORNIA FRAUD AND COMPUTER ABUSE ACT.

25            BUT THE SECOND THING THAT I WANTED TO DO JUST QUICKLY IN
```

1    THE TECHNICAL PRESENTATION, NOW THAT I'VE EXPLAINED WHAT THE

2    NEW ▮▮▮▮▮▮ DOES --

3         THE COURT:  UM-HUM.

4         MR. MAO:  -- IT EXPLOITS A LOOPHOLE, AND THEY WERE

5    USING IT TO MAKE SURE THAT THEY FULLY MONETIZE BOTH THEIR

6    ADVERTISERS AND THEIR PUBLISHERS AND, THEREFORE, THERE ARE

7    GOING TO BE ▮ LOGS.

8         WHY DIDN'T WE SEE THIS, YOUR HONOR, IN THE PRIOR

9    PRODUCTIONS?  I'LL GIVE YOU THE TECHNICAL EXPLANATION FOLLOWING

10   THEIR DECLARATIONS.  OKAY?

11        AND IF WE CAN START AT PAGE 2.

12        LOOK AT THE DECLARATION OF MARTIN SRAMEK ON DOCKET 784,

13   OKAY?

14        THE COURT:  WHICH DEC IS IT?  WHICH DECLARATION?

15        MR. MAO:  I JUST HAVE THE DATE.  I'M SO SORRY, YOUR

16   HONOR.

17        THE COURT:  THAT'S ALL RIGHT.  GO AHEAD.

18        I'LL CATCH UP.  GO AHEAD.

19        MR. MAO:  OPPOSING COUNSEL HAD PUT UP THE SLIDES

20   WHERE THEY'RE TALKING ABOUT FOUR DIFFERENT STEPS WHICH THEY

21   WENT THROUGH, AND THE LAST ONE WAS THIS ▮▮▮▮▮.

22        THE COURT:  RIGHT.

23        MR. MAO:  OKAY?  WHAT THEY EXPLAINED WAS THIS IS HOW

24   WE --

25        THE COURT:  MR. HARREN'S DECLARATION.

1             MR. MAO:  RIGHT.  THIS WAS HOW WE IDENTIFY THE █

2     LOGS.

3             SO WE GO TO THEN MR. HARREN'S DECLARATION.

4             THE COURT:  UH-HUH.

5             MR. MAO:  FIRST OF ALL, HE ADMITS IT'S NOT A FULLY

6     COMPREHENSIVE LIST OF ALL THE FIELDS IN THE ███ LOGS, BUT

7     THEN -- NEXT, PARAGRAPH 11 -- OKAY.  HE SAYS THIS IS PULLED

8     FROM JUST THE LAST 14 DAYS POPULATED TO THAT DATABASE.

9             THE COURT:  UM-HUM.

10            MR. MAO:  OKAY?  CLEARLY, YOUR HONOR -- AND IF YOU

11    LOOK AT THE VERY CAREFULLY PARSED STATEMENTS NOW IN THE RECORD,

12    ESPECIALLY WITH THE FACT THAT ████████ NOW POPS UP ALL

13    OF A SUDDEN, WELL AFTER THE CLOSE OF DISCOVERY, THE CLEAR

14    EVIDENCE IS THAT THE ONLY THING THAT GOOGLE HAS PROVIDED FOR IS

15    THE CURRENT STATE OF THE LOGS, OF THE SCHEMA, OF THE DATA AT

16    THE TIME IN WHICH WE REQUESTED IT AND NO MORE THAN THAT, YOUR

17    HONOR.

18            AND I MAY POSIT, YOUR HONOR, JUST TO REPEAT THE POINT,

19    WHICH IS THAT THAT IS COMPLETELY CONTRARY TO YOUR PRIOR ORDERS,

20    OKAY, REPEATED PRIOR ORDERS, FOR ANY AND ALL RELEVANT

21    RESPONSIVE INFORMATION.

22            JUST A REAL QUICK POINT, YOUR HONOR, OKAY, ON THE SOURCE

23    CODE.  IF WE JUST GO ON TO THE NEXT SLIDE, AND THIS -- I'LL

24    BASICALLY BE CONCLUDING AROUND HERE, YOUR HONOR -- THE SOURCE

25    CODE WAS MADE AVAILABLE FOR US FEBRUARY 20TH OF 2023, YOUR

1    HONOR.

2           WE HAVE NO LEAVE TO FILE ADDITIONAL PAPERS.  THEY'RE

3    CALLING IT UNANSWERED, WHICH IS COMPLETELY UNFAIR, YOUR HONOR.

4           AND THEY ONLY PROVIDED US SNIPPETS AND WILL NOT PROVIDE US

5    ADDITIONAL CODE AND WHICH WE ARE ASKING BEYOND WHAT THEY

6    SELECTIVELY PROVIDED FOR US.

7           THE REASON WHY ADDITIONAL CODE IS IMPORTANT, YOUR HONOR,

8    IS BECAUSE IT SHOWS US THE UPSTREAM AND THE DOWNSTREAM USES.

9    IN OTHER WORDS, HOW DID THAT DATA COME IN?  WHERE DID THAT DATA

10   GO?  HOW WAS IT USED?

11          FOR THEM TO SAY THAT IT IS NOT THIS KIND OF JOINING, BUT

12   ONLY THAT KIND OF JOINING AND WE'RE NOT REALLY TALKING ABOUT

13   THIS KIND OF JOINING BUT THE OTHER KIND OF JOINING, WELL, YOUR

14   HONOR, IT'S NICE IN A MAGIC TRICK FOR YOU TO FOCUS ON THE LEFT

15   HAND, BUT THERE ARE QUESTIONS ABOUT WHAT HAPPENS IN THE RIGHT

16   HAND, AND THERE'S NO EVIDENCE OF THAT BECAUSE GOOGLE REFUSES TO

17   ALLOW DISCOVERY FOR THAT.  THEY SHOULD HAVE DONE THAT FROM THE

18   GET-GO, BUT THEY REFUSED AND TOLD YOU SOURCE CODE WAS

19   UNNECESSARY, AND NOW THEY'RE USING SOURCE CODE AS A DEFENSE.

20          SURELY, SURE LY, YOUR HONOR, THAT IS NOT THE FAIRNESS --

21   THAT IS NOT FAIR TO DUE PROCESS.

22          AND THIS GOES TO A VERY IMPORTANT POINT, YOUR HONOR, WHICH

23   IS THAT WHEN THEY'RE SAYING THAT DATA IS NOT ACCRETIVE, THEY'RE

24   NOT TELLING YOU THAT EVEN IT'S THE SAME DATA AND, THEREFORE, IT

25   IS NON-ACCRETIVE, IT DOESN'T MEAN THAT THE SCHEMA FURTHER DOWN

1    THE STREAM IS GOING TO SHOW YOU HOW ELSE THIS IS BEING USED,

2    AND OF COURSE THAT IS RELEVANT IN A CASE IN WHICH THE CLASS HAS

3    ALREADY BEEN CERTIFIED, REGARDLESS IF IT'S (B)(2) OR (B)(3) OR

4    THE (C)(4), WHICH THE TRIAL JUDGE HAS ORDERED TO BE BRIEFED.

5    ANY OF THAT OBVIOUSLY WOULD BE RELEVANT BECAUSE IT SHOWS YOU

6    HOW GOOGLE USES THAT DATA.

7         AND I JUST WANT TO BRING UP THE MCCOY VERSUS GOOGLE CASE,

8    YOUR HONOR, IN WHICH YOU HAVE PRESIDED OVER.  THE PROPOSITION

9    IS THAT CONSENT IS NOT AN ALL-OR-NOTHING PROPOSITION.  THE

10   NINTH CIRCUIT ADOPTS THE SECOND RESTATEMENT OF TORTS FOR HOW

11   GOOGLE MAY ARGUE CONSENT.

12        GOOGLE HAS LOST ON THIS ARGUMENT IN MULTIPLE CASES AND

13   ACROSS SEVEN CASES BY COUNT, AND HERE'S THE POINT:  IF THEY

14   CAN'T AND THEY WON'T ALLOW THE COURT AND OPPOSING COUNSEL TO

15   ACCOUNT FOR HOW THEY'VE USED PRIVATE BROWSING DATA, YOUR HONOR,

16   HOW IN THE WORLD IS IT POSSIBLE FOR THEM TO ARGUE THAT THEY'VE

17   OBTAINED CONSENT?

18        THEY CANNOT PROVIDE A REFERENCE OF DISCLOSURES, THEY

19   CANNOT ACCOUNT FOR, TO THE PUBLIC, AS TO HOW THEY GAVE THEIR

20   KNOWING CONSENT REGARDING THINGS IN WHICH IT IS UNKNOWN TO BOTH

21   THEIR COUNSEL, AND ALSO THEIR TEAM, AND ALSO THE COURT, YOUR

22   HONOR.  SO OF COURSE THE WAY IN WHICH THE DATA THEY USE IS

23   ABSOLUTELY RELEVANT TO THE CASE.

24        AND THEN I'LL END, YOU KNOW, FINALLY ON THIS POINT, YOUR

25   HONOR, OKAY?  WITH REGARD TO THE SPECIAL MASTER, THE RECORD IS

1    PRETTY CLEAR.  WE HAD -- IF YOU RECALL, YOUR HONOR, I BELIEVE I

2    WAS THE ONE THAT TOOK THAT ARGUMENT WHERE I SAID, YOUR HONOR,

3    WE'RE IN A VERY AWKWARD POSITION.  WE CAN'T AND DON'T WANT TO

4    REOPEN DISCOVERY BECAUSE WE NEED TO GET RELIEF FOR OUR CLASS.

5    OKAY?

6        AND I -- AND I BELIEVE THE RECORD WAS VERY CLEAR THAT WE

7    RESPONDED, OKAY -- BASICALLY WE DIDN'T RESPOND, BUT WE DID

8    RESPOND.  WE SAID IF THE SPECIAL MASTER IS SOMETHING THAT THE

9    COURT BELIEVES THAT IT NEEDS --

10        THE COURT:  SLOW DOWN JUST A LITTLE BIT, MR. MAO.

11        MR. MAO:  SORRY.  IF THE SPECIAL MASTER IS SOMETHING

12   THAT THE COURT BELIEVES THAT WE NEED, WE WERE HAPPY TO

13   PARTICIPATE WITH THE SPECIAL MASTER, WITH THE KNOWLEDGE, OF

14   COURSE, THAT WE WERE NOT AGREEING TO REOPEN DISCOVERY.

15        WITH THAT, I WILL PASS.

16        THE COURT:  THANK YOU, MR. MAO.

17        MR. MAO:  SORRY.  I PRESUME YOU HAVE NO QUESTIONS.

18        THE COURT:  IF I HAD QUESTIONS, I WOULD NOT HESITATE

19   TO KEEP YOU AT THE PODIUM.

20        MR. MAO:  THANK YOU, YOUR HONOR.

21        MR. MCGEE:  YOUR HONOR, YOU ASKED ABOUT THE SRAMEK

22   DECLARATION.  THAT WAS THE ONE FILED IN THEIR OPENING PAPERS

23   HERE.  IT WAS EXECUTED NOVEMBER 29TH.

24        THE COURT:  SO THE NOVEMBER 29TH.  THANK YOU.

25        MR. BOIES, YOU WANTED TO MAKE ONE FINAL POINT?

```
 1          MR. BOIES:  YES, YOUR HONOR, AND IT HAS TO DO WITH

 2    THE USE -- THE NEW DATA AND THE NEW USES OF THE DATA.

 3          IF WE -- THE LOGS UNQUESTIONABLY CONTAIN NEW USER DATA.

 4    CHART 37.

 5          ███ OF THE ███████████ LOGS -- ALL ███ OF THE

 6    █████████████ LOGS CONTAIN ENTIRELY NEW DATA FROM USERS

 7    IN PRIVATE BROWSING MODE.

 8          ███ OF THE ███ SO-CALLED █████ LOGS CONTAIN DATA FROM

 9    SOURCES NOT PREVIOUSLY DISCLOSED.

10          ███ OF THE ███ -- GOING ON TO CHART 39 -- ███ OF THE ███

11    ██████ LOGS CONTAIN NEW USER DATA FROM A NEW DATA SOURCE.

12          IN ADDITION, THE LOGS REVEAL NEW USES OF THE DATA THAT'S

13    THERE.  CHART 41.

14          THE ████ ██████████ LOGS REVEAL THAT GOOGLE

15    USES PRIVATE BROWSING DATA TO EVALUATE GOOGLE'S ██████

16    ████████, WHICH WAS NOT A USE FROM THE ██ LOGS THAT WE HAD

17    BEFORE.

18          GOING TO CHART 42.

19          THE ████ █████ LOGS REVEAL THAT GOOGLE USES PRIVATE

20    BROWSING DATA TO ████████████████, AND WE CITE THERE THE

21    DECLARATION OF VINEET KAHLON.

22          GOING TO CHART 43.

23          THE NEW LOGS ALSO REVEAL THAT THE ███ ████████ LOGS

24    REVEAL GOOGLE USING PRIVATE BROWSING DATA TO ███████████

25    ████.  ONE OF THE THINGS THAT GOOGLE SAYS, THAT "███ OF THE
```

SEALED PROCEEDINGS

1    JUNE LOGS ARE ████████████████████ LOGS. ██████

2    ████████████████████████████████████████████████

3    ████████████████████████████████████

4         SO THE IDEA THAT THESE LOGS WERE SIMPLY THE SAME, DIDN'T

5    REVEAL ANY NEW DATA, DIDN'T USE ANY NEW DATA, DIDN'T REVEAL ANY

6    NEW USES OF THE DATA IS NOT ACCURATE.

7         EVEN IF IT HAD BEEN ACCURATE, WE STILL WOULD BE ENTITLED

8    TO HAVE GOTTEN THOSE, BECAUSE THE MORE THEY USE THESE, THE MORE

9    LOGS THAT USE IT, TWO THINGS ARE TRUE:  ONE, IT IS INDICATIVE

10   OF THE FACT THAT SOMEBODY THINKS THIS STUFF IS RELIABLE; AND,

11   SECOND, IT SHOWS THE EXTENT OF THE USE.

12        AND AS MR. MAO WAS SAYING, THE EXTENT OF THE USE HERE IS

13   RELEVANT TO OUR CASE.

14        THANK YOU.

15            THE COURT:  ALL RIGHT.  THANK YOU, MR. BOIES.

16        THANK YOU ON PLAINTIFFS' SIDE.  I APPRECIATE THAT.

17            WHAT I'D LIKE YOU TO DO -- I APPRECIATE THE SLIDES AND THE

18   DIFFERING SETS.

19        BUT I'D LIKE YOU TO CREATE A SET OF THE SLIDES THAT WERE

20   USED -- I'LL KEEP ALL OF THESE, BUT WHAT I WANT YOU TO FILE ARE

21   THE SLIDES THAT WERE USED, TO THE BEST YOU CAN, IN THE ORDER

22   THEY WERE USED, IF YOU CAN DO THAT EITHER OFF OF A ROUGH

23   TRANSCRIPT OR FROM YOUR NOTES.  BUT THAT WILL BE HELPFUL TO ME.

24            MR. BOIES:  WE'LL DO THAT, YOUR HONOR.

25            THE COURT:  OKAY.  LET'S TAKE A SHORT BREAK AND THEN

```
1        WE WILL RECONVENE.  I WANT TO HEAR SANCTIONS ON BOTH SIDES.

2            AND THEN IT IS GOOGLE'S MOTION, SO WE'LL HAVE A SHORT

3    OPPORTUNITY FOR REBUTTAL.  OKAY?

4            MS. SHORTRIDGE, 15 MINUTES?  IS THAT GOOD?

5                THE REPORTER:  YES.  THANK YOU.

6                THE COURT:  OKAY.  WE'LL TAKE A 15 MINUTE RECESS.

7                MR. BOIES:  THANK YOU, YOUR HONOR.

8                THE COURT:  THANK YOU.

9        (RECESS FROM 12:09 P.M. UNTIL 12:32 P.M.)

10               THE COURT:  ALL RIGHT.  LET'S MOVE TO SANCTIONS.

11               MR. SCHAPIRO:  YOUR HONOR, IF YOU WOULD PERMIT US, WE

12   WOULD PREFER, OBVIOUSLY SUBJECT TO YOUR PREFERENCES --

13               THE COURT:  TO FOLLOW PLAINTIFFS?

14               MR. SCHAPIRO:  PARDON ME?

15               THE COURT:  OKAY.

16               MR. SCHAPIRO:  NO, TO PROVIDE OUR RESPONSE, OUR

17   REBUTTAL ON THE SUBSTANCE NOW.

18       I DOUBT WE'RE GOING TO HAVE MUCH RESPONSE ON SANCTIONS,

19   BECAUSE WE BOTH HAVE OUR POSITIONS AND THEY'RE VERY FAR APART.

20               THE COURT:  UM-HUM.

21               MR. SCHAPIRO:  BUT WHILE THIS IS STILL FRESH IN OUR

22   MIND AND IN THE COURT'S MIND, WOULD IT BE OKAY IF WE GIVE OUR

23   BRIEF REBUTTAL NOW AND THEN GO TO SANCTIONS?

24               THE COURT:  I THINK THAT WOULD BE FINE.

25               MR. SCHAPIRO:  THANK YOU, YOUR HONOR.
```

```
 1              THE COURT:  "BRIEF" BEING THE OPERATIVE WORD.

 2              MS. TREBICKA:  YES.

 3         THANK YOU, YOUR HONOR.

 4         WE HEARD PLAINTIFFS SAY THAT GOOGLE IS TELLING US AND THE

 5    COURT TO TRUST US, AND IN THE MEANTIME, IT'S HOLDING BACK

 6    INFORMATIVE INFORMATION AND DATA UNTIL THE CLOSE OF DISCOVERY.

 7    WE DON'T KNOW WHAT WE DON'T KNOW.

 8         THIS IS A LOT OF PLATITUDES, BUT THERE'S VERY LITTLE

 9    SUBSTANCE ACTUALLY SUPPORTING THOSE PLATITUDES, AND I'D LIKE

10    JUST TO TAKE A FEW EXAMPLES.  I URGE YOUR HONOR -- I WANT TO BE

11    BRIEF, SO I URGE YOUR HONOR TO LOOK AT THE EVIDENCE WITH A

12    CRITICAL EYE, BUT JUST TO TAKE A FEW EXAMPLES OF WHY THAT JUST

13    DOESN'T HOLD UP AND DOESN'T SUPPORT WHAT PLAINTIFFS ARE NOW

14    SAYING.

15         THE FIRST, YOU HEARD MR. BOIES SAY THAT THERE'S THIS

16    CRITICAL DOCUMENT THAT WAS ONLY DISCLOSED TO THEM AFTER THE

17    CLOSE OF DISCOVERY, THE ███████████████████ DOCUMENT.

18              THE COURT:  UM-HUM.

19              MS. TREBICKA:  THAT WAS ACTUALLY A DOCUMENT THAT WAS

20     PRODUCED IN JUNE OF 2021.  IT WAS IN THE PRODUCTION 23.  I HAVE

21     THE BATES LABEL HERE IF YOUR HONOR WOULD LIKE IT.

22         AND YOU MAY EXCUSE THE OVERSIGHT IF THIS WAS JUST ONE OF

23    THE MILLIONS OF PAGES THAT WE PRODUCED, BUT IT WAS ACTUALLY ONE

24    OF THE MOST HOTLY CONTESTED AND DEBATED DOCUMENTS ATTACHED TO

25    MULTIPLE MOTIONS AND EXPRESSLY DISCUSSED HERE IN COURT.  IT IS
```

1      THE DOCUMENT THAT RELATED TO ██████████.

2          SO PERHAPS IT WAS FORGOTTEN BECAUSE OF ALL OF THE

3      DISCOVERY, OTHER DISCOVERY THAT WAS PRODUCED IN THIS ACTION.

4          BUT IT'S ABSOLUTELY INCORRECT THAT THIS WAS NOT MADE

5      AVAILABLE TO THEM AND, IN FACT, THEY HAD THE OPPORTUNITY TO ASK

6      QUESTIONS ABOUT IT.

7          MR. BOIES ALSO ADMITTED THAT THE ████ LOG DOES NOT JOIN

8      AUTHENTICATED TO UNAUTHENTICATED DATA, BUT SAID -- AND I WROTE

9      THIS DOWN -- THE FACT THAT THEY ARE TOGETHER SHOWS THAT THEY

10     COULD.

11         WELL, NO, IT DOESN'T, AND THAT'S WHAT WE WERE DISCUSSING

12     HERE TODAY.  THERE IS NOTHING THAT MAKES THE FACT THAT THE

13     RECORDS -- OR THE FACT THAT THE RECORDS ARE NEXT TO EACH OTHER

14     DOES NOT MEAN THAT IT MAKES JOINING ANY EASIER FOR ALL OF THE

15     REASONS THAT WE HAVE PREVIOUSLY DISCUSSED WITH EXPERT

16     TESTIMONY.

17         NEXT, ██████ HITS IN THE SOURCE CODE IS NOTHING.  IT

18     SHOULD HAVE BEEN REVIEWED AND DISCLOSED.

19         THIS WAS ALSO LITIGATED.  WE ALREADY WERE BEFORE YOUR

20     HONOR.  WE DECIDED THAT SOURCE CODE WAS NOT THE WAY TO GO IN

21     THIS LITIGATION.

22         INSTEAD, WE ENGAGED IN EXTENSIVE RFP DISCOVERY, 280 THAT

23     WE HAD TO RESPOND TO, MILLIONS OF PAGES PRODUCED.

24             THE COURT:  SO LET ME ASK A QUESTION ABOUT THAT,

25      MS. TREBICKA.

SEALED PROCEEDINGS

1        YOU SAID THAT GOOGLE RAN THE WORD "INCOGNITO" THROUGH ITS

2    SOURCE CODE.  IS THAT -- TO WHAT OBJECTIVE?  TO WHAT -- WHAT

3    WAS THE -- WHAT WAS THE OBJECTIVE?

4        MS. TREBICKA:  YES.  IT WAS FOR PURPOSES OF THIS

5    PROCEEDING --

6        THE COURT:  UM-HUM.

7        MS. TREBICKA:  -- TO SHOW THE COURT HOW -- THAT WHEN

8    WE TOLD YOUR HONOR THAT IT IS NOT AN EASY SEARCH TO ACTUALLY

9    REVIEW, IT IS CORRECT.  IT'S ███████  HITS THAT IT PRODUCED.

10        THE COURT:  SO IF INCOGNITO IS IN A LOG, IF THERE'S A

11    FIELD, AN INCOGNITO FIELD, IT WOULD SHOW UP IN THAT SOURCE

12    CODE?

13        MS. TREBICKA:  SOMEWHERE IN THE ███████.

14        THE COURT:  SOME PORTION OF THAT REFLECTS FIELDS?

15        MS. TREBICKA:  CORRECT.

16        THE COURT:  BUT YOU HAVE TO LOOK AT EACH HIT TO KNOW

17    WHAT IT IS?

18        MS. TREBICKA:  CORRECT, BECAUSE IT COULD BE IN THE

19    ANNOTATIONS, THE COMMENTS, ET CETERA.

20        THE COURT:  OKAY.  AND IS THAT THE ONLY WAY TO

21    DEFINITIVELY IDENTIFY ALL THE LOGS WITH INCOGNITO FIELDS?

22        MS. TREBICKA:  YOUR HONOR, ONE COULD IMAGINE THAT IT

23    MAY BE SOMETHING LIKE PB BROWSING IN CHROME, OR -- YOU KNOW,

24    THE IMAGINATION CAN ONLY PUT LIMITS ON WHAT THAT FIELD MAY

25    ACTUALLY SAY.

1          THIS IS ONE WAY TO DETERMINE.  BUT THAT'S WHAT WE'VE

2     ALWAYS KIND OF COME UP AGAINST, THIS LIMIT THAT WE HAVE OF JUST

3     TRYING TO -- BECAUSE WE'VE ASKED AND ARRIVED NOWHERE THAT WAY,

4     THIS IS ONE OF THE WAYS TO DO IT, TO START RUNNING SEARCHES

5     THROUGH THE CODE.

6          THE COURT:  OKAY.

7          MS. TREBICKA:  SO I HOPE THAT ANSWERS YOUR HONOR'S

8     QUESTION, OR THE -- AND ALSO INTIMATES TO THE BOUNDLESS NATURE

9     OF THE SCOPE THAT DISCOVERY COULD POTENTIALLY TAKE IF THAT IS

10    THE PATH THAT WE GO DOWN.

11         THE COURT:  UM-HUM.  OKAY.

12    GO AHEAD.

13         MS. TREBICKA:  AND, YOUR HONOR, THERE WAS ALSO

14    SEVERAL SLIDES ABOUT WHAT NEW USES OF THE PRIVATE BROWSING DATA

15    THESE LOGS WOULD SHOW THAT WERE IN MR. BOIES'S PRESENTATION.

16         NEW PRODUCT DATA, WE ALREADY -- PLAINTIFFS HAVE ALREADY

17    KNOWN THAT PRIVATE BROWSING DATA, JUST LIKE ANY OTHER

18    UNAUTHENTICATED DATA, GOES TO THAT.

19         COUNTERFACTUAL LOGS, IT'S ACTUALLY EXPRESSLY DISCLOSED

20    THAT THESE LOGS EXIST AND THEY RELY ON UNAUTHENTICATED DATA IN

21    OUR DOCUMENTS.  IT'S IN THE MILLIONS OF PAGES OF DISCOVERY THAT

22    SEEMS TO HAVE SINCE BEEN FORGOTTEN.

23         AND THE FINAL POINT ON PREJUDICE THAT MR. BOIES MADE IS

24    THAT THE FACT THAT THERE'S ALL THESE ADDITIONAL LOGS INDICATES

25    THAT THE MORE LOGS THAT USE THIS, THE MORE IT'S INDICATIVE THAT

1    SOMEONE THOUGHT IT WAS RELEVANT OR RELIABLE.

2         WELL, NOT IN THIS INSTANCE.  NOT WITH RESPECT TO THESE ▮

3    LOGS BECAUSE, REMEMBER, THE MAYBE_INCOGNITO BIT WAS PUT THERE

4    BY HAPPENSTANCE.  SO IT ACTUALLY DEFEATS THE SUPPORT FOR

5    PREJUDICE.  IT IS NOT CORRECT.

6         LISTENING TO PLAINTIFFS' PRESENTATION TODAY MAKES ME FEEL

7    LIKE THE STANDARD FOR SANCTIONS IS ANY SMALL VIOLATION OR ANY

8    LAPSE IN DISCOVERY IS SANCTIONABLE.  ANYTHING THAT IS RELEVANT

9    MUST BE DISCLOSED OR ELSE IT IS SANCTIONABLE.

10        YES, IT MUST BE DISCLOSED, AND AS SOON AS WE IDENTIFIED

11   THEM, WE DISCLOSED THEM.

12        BUT THE STANDARD FOR SANCTIONS IS DIFFERENT, AND THE

13   STANDARD, FRANKLY, FOR WHAT DISCOVERY HAS BEEN IN THIS CASE IS

14   DIFFERENT AS WELL.

15        THE SPECIAL MASTER PROCESS WAS A PERFECT ILLUSTRATION OF

16   THAT.  WE IDENTIFIED ▮, ▮ LOGS IN THE SPECIAL MASTER PROCESS

17   THAT CONTAINED POTENTIALLY RELEVANT DATA.  THEN YOUR HONOR

18   ASKED US TO ROLL UP OUR SLEEVES AND FOCUS, FOCUS ON THINGS THAT

19   MATTERED, FOCUS ON THINGS THAT WERE ACTUALLY IMPORTANT.

20        SO PLAINTIFFS HAD TO IDENTIFY A FEW OF THOSE LOGS,

21   IDENTIFY A FEW TIME PERIODS, IDENTIFY A FEW IDENTIFIERS TO RUN

22   THROUGH THE DATA.  IT WAS NOT EVERYTHING THAT WAS RELEVANT OR

23   NEEDED TO BE EXPLORED.

24        SIMILARLY HERE.  WHAT WE HAVE SHOWN IS THAT THESE ▮ LOGS,

25   ALTHOUGH WE REGRET THAT WE DIDN'T IDENTIFY THEM EARLIER, WERE

1      AT THE TAIL END OF WHAT IS RELEVANT AND WHAT IS MATERIAL TO

2      THEIR CLAIMS.

3             BUT I WOULD ALSO LIKE TO NOTE THAT THE REAL CURE TO THIS

4      IS NOT SANCTIONS ON THINGS THAT ARE TRULY IMMATERIAL, ALTHOUGH

5      YOUR HONOR WILL DECIDE.

6             THE REAL CURE TO THIS IS NEEDING -- OR TAKING US UP ON THE

7      OFFER TO ENGAGE THE SPECIAL MASTER, TO PROVIDE THEM WITH THE

8      TYPES OF INFORMATION FROM THE LOGS THAT THE PARTIES HAD ALREADY

9      DONE IN THE SPECIAL MASTER PROCESS WITH RESPECT TO THE OTHER

10     SOURCES, AND WE'RE HAPPY TO ENGAGE IN -- OR AT THE TIME WE

11     THOUGHT IT MADE SENSE TO ENGAGE IN SOMETHING OF THAT NATURE.

12            BUT SANCTIONS IS A LEAP TOO FAR IN THIS CIRCUMSTANCE.

13              THE COURT:  WE'LL GET TO SANCTIONS.  THIS IS JUST

14     REBUTTAL.

15              MS. TREBICKA:  YES, YOU'RE RIGHT, YOUR HONOR.

16        I WOULD LIKE TO SAY THAT MY COLLEAGUE, MR. MARGOLIES,

17     WOULD LIKE TO ADDRESS JUST A FEW POINTS.  I HOPE I WAS BRIEF.

18     HE WILL BE BRIEF AS WELL WITH JUST A FEW POINTS ON THE

19     ███████████, YOUR HONOR.

20              THE COURT:  OKAY.  THANK YOU.

21              MR. MARGOLIES:  THANK YOU, YOUR HONOR.  I WILL

22     DEFINITELY TRY TO BE BRIEF.  I'M JUST HERE TO OFFER A FEW

23     POINTS OF CLARIFICATION.

24              THE COURT:  THANK YOU.

25              MR. MARGOLIES:  SO, FIRST, IN MR. BOIES'S ARGUMENT,

1    HE MENTIONED THAT THERE WAS SOME DISCUSSION ABOUT WHETHER THE

2    DATE THAT WE PROVIDED FOR THE DEPRECATION OF THIS HEURISTIC IN

3    CHROME WAS IN 2019 OR 2020.

4        I JUST WANT TO CLEAR THAT UP.  THE 2019 DATE THAT WE

5    PROVIDED IS CORRECT, AND YOU CAN SEE THAT THROUGHOUT OUR

6    PAPERS.  YOU CAN SEE IT IN DOCUMENT 810-2 AT THE BATES RANGE

7    ENDING IN 728.  YOU CAN SEE IT IN PUBLIC DISCUSSIONS.  FOR

8    EXAMPLE, THERE WAS A 2019 ARTICLE IN "ARS TECHNICA" IN WHICH

9    THE JOURNALIST ACTUALLY WENT TO A SITE THAT WAS USING THIS

10   HEURISTIC USING THE NEW VERSION OF CHROME, CHROME 76, THAT HAD

11   COME OUT AT THAT TIME AND IT WAS NOT ABLE TO DETECT INCOGNITO.

12       WHAT I THINK HAPPENED HERE IS THAT MR. MAO AND MR. BOIES

13   ARE REFERRING TO A CAT AND MOUSE GAME THAT OCCURRED BETWEEN

14   CODERS WHO WERE USING THIS HEURISTIC AND CHROME AND OTHER

15   BROWSERS AROUND THIS TIME.  AFTER CHROME DEPRECATED THE

16   HEURISTIC, CODERS ADAPTED.

17       BUT GOOGLE DID NOT ADAPT.  AS I EXPLAINED TO YOU, THE

18   LOGIC FOR ████████████ DIDN'T CHANGE AFTER 2016.

19       SO TO THE EXTENT THERE WERE STILL CHANGES BEING MADE TO

20   FURTHER CLOSE THE LOOPHOLE AFTER 2019, THAT DOES NOT AFFECT

21   WHETHER ████████████ FUNCTIONED.  ████████████ IS

22   FROZEN IN 2016.

23       HE ALSO -- MR. BOIES ALSO MENTIONED THE OTHER BROWSERS --

24   THERE'S CHROME, AND OF COURSE THERE'S ALSO EDGE AND SAFARI AT

25   ISSUE -- AND SUGGESTED THAT PERHAPS GOOGLE WAS NOT USING IT FOR

1      CHROME AFTER 2019, BUT WAS USING IT FOR OTHER BROWSERS.

2           I WANT TO CLARIFY THAT IT ALSO DIDN'T WORK FOR OTHER

3      BROWSERS.  FOR EXAMPLE, ON OUR SLIDE 36, YOU CAN SEE A PUBLIC

4      WEBSITE FROM BEFORE THE COMPLAINT WAS FILED IN WHICH PEOPLE ARE

5      COMMENTING ON A PUBLIC WEB FORUM THAT IT DOESN'T WORK FOR

6      SAFARI EITHER.  EDGE IS BUILT ON A CHROMIUM BASE.  IT USES THE

7      SAME CORE CODE AS --

8                THE COURT:  SLOW DOWN, MR. MARGOLIES.

9                MR. MARGOLIES:  OF COURSE.  THANK YOU, YOUR HONOR.

10          MY POINT IS ONLY THIS WASN'T USED FOR AND DIDN'T WORK FOR

11      OTHER BROWSERS AT ISSUE.  IT'S NOT MERELY A CHROME ISSUE.

12          MR. BOIES ALSO PUT EMPHASIZE ON THE FACT THAT GOOGLE HAS

13      NOT TOLD PLAINTIFFS WHAT LOGS CONTAIN THE FIELD.

14          BUT THIS DOESN'T MATTER, BECAUSE THE FIELD DOESN'T WORK.

15          SO AN OTHERWISE IRRELEVANT LOG WOULD NOT BECOME RELEVANT

16      SIMPLY BECAUSE A FIELD THAT CONTAINS NO INFORMATION, THAT CAN'T

17      PREDICT PRIVATE BROWSING, THAT CAN'T EVEN INDICATE PRIVATE

18      BROWSING, IS LOCATED WITHIN THAT FIELD.

19          BUT, OF COURSE, AS I'VE EXPLAINED, WE HAVEN'T DEPRECATED

20      THE FIELD.  IT STILL EXISTS IN WHATEVER LOGS IT EXISTS IN.

21          IF IT BECAME NECESSARY TO DISCLOSE, WE HAVEN'T GOTTEN RID

22      OF ANY OF THE INFORMATION NECESSARY TO MAKE THAT DISCLOSURE.

23      OF COURSE THAT'S UP TO YOUR HONOR.

24          MR. MAO CAME UP AND MADE A FEW ADDITIONAL POINTS.  HE

25      RAISED THAT THE ███████████     TEAM ████████████      AND

1    THAT IT'S POSSIBLE THAT THE FIELD MAY HAVE AT SOME POINT BEEN

2    INCORPORATED INTO ███ LOGS.

3          AGAIN, IF IT WERE INCORPORATED INTO ███ LOGS, IT STILL

4    WOULDN'T WORK AND IT WOULD STILL ONLY BE PART OF A BROADER

5    ████████████████████████████, NOT THE PURPOSE OF INCOGNITO

6    DETECTION.

7          AND, FINALLY, HE MADE THE POINT THAT IT'S BASED ON A HACK,

8    THAT WE'VE EXPLAINED IT'S BASED ON A LOOPHOLE THAT WAS PUBLICLY

9    DOCUMENTED.

10         BUT GOOGLE WASN'T USING IT TO HACK USERS.  GOOGLE WAS

11   USING IT TO ████████████.

12         AND THEN MR. MAO MADE AN ARGUMENT AT THE END THAT THE

13   FIELD IS USED TO CAPTURE CONTENT.

14         I DIDN'T FOLLOW THAT ARGUMENT ENTIRELY, BUT I CAN ASSURE

15   YOUR HONOR, IT'S A BOOLEAN FIELD.  IT'S ONLY TRUE OR FALSE.  IT

16   CAN'T BE USED TO CAPTURE CONTENT.  IT WAS NOT USED TO CAPTURE

17   CONTENT.

18         I THINK PERHAPS WHAT HE WAS REFERRING TO IS THAT THE FIELD

19   WAS ALSO USED BY NEWSPAPERS AND CONTENT PROVIDERS TO PREVENT

20   PEOPLE FROM CIRCUMVENTING PAYWALLS.

21         THAT IS, OF COURSE, NOT WHAT GOOGLE WAS USING IT FOR, AND

22   THE FIELD CANNOT BE USED AND WAS NOT USED TO GATHER CONTENT.

23   AGAIN, PURELY FOR ██████.

24         BEFORE I CONCLUDE, I JUST WANT TO BRING IT BACK TO ONE

25   POINT, YOUR HONOR, WHICH IS THAT THROUGH ALL OF THE

1    PRESENTATIONS TODAY AND ALL OF THE THINGS THAT PLAINTIFFS HAVE

2    SAID, THEY HAVE NOT QUESTIONED THE CORE FACT, WHICH IS THAT

3    THIS FIELD IS NOT PREDICTIVE OF INCOGNITO OR PRIVATE BROWSING.

4        AND AGAIN, YOUR HONOR, THAT'S NOT SURPRISING.  AS

5    PLAINTIFFS KNOW FROM DISCOVERY, FROM PUBLIC DOCUMENTATION, WHEN

6    GOOGLE SAYS THAT THIS FIELD CANNOT BE USED TO DETECT PRIVATE

7    BROWSING, THEY HAVE EVERY REASON TO KNOW WE'RE CORRECT.

8        THANK YOU, YOUR HONOR.

9        THE COURT:  THANK YOU, MR. MARGOLIES.

10       ALL RIGHT.  LET'S TURN NOW TO SANCTIONS, AND WE'LL START

11   WITH GOOGLE AND GO FROM THERE.

12       MR. SPILLY.

13       MR. SPILLY:  THANK YOU, YOUR HONOR.

14   (PAUSE IN PROCEEDINGS.)

15       MR. SPILLY:  SORRY, YOUR HONOR.  I'M WAITING FOR A

16   SLIDE.

17   (PAUSE IN PROCEEDINGS.)

18       THE COURT:  THERE YOU GO.

19   (PAUSE IN PROCEEDINGS.)

20       MR. SPILLY:  ALL RIGHT, YOUR HONOR.  WHILE WE WORK

21   OUT THE TECH, I WILL GET STARTED.

22       THE QUESTION HERE IS ABOUT SANCTIONS TO REMEDY ADDITIONAL

23   PREJUDICE NOT ADDRESSED BY THE COURT'S MAY 20TH ORDER.

24       AND SANCTIONS IN ANY EVENT ARE DESIGNED TO REMEDY UNFAIR

25   PREJUDICE CAUSED BY DISCOVERY MISCONDUCT AND NOTHING MORE.  IF

1      A LITIGANT'S CONDUCT UNFAIRLY TILTS THE PLAYING FIELD IN ITS

2      FAVOR, SANCTIONS ARE SUPPOSED TO REBALANCE IT.

3             PLAINTIFFS AREN'T SEEKING TO LEVEL THE PLAYING FIELD HERE.

4      THEY'RE ASKING THE COURT TO CALL THE GAME IN THEIR FAVOR.

5             TERMINATING SANCTIONS ARE NOT APPROPRIATE HERE BECAUSE

6      THOSE SANCTIONS ARE RESERVED FOR INSTANCES OF EGREGIOUS

7      MISCONDUCT THAT ARE FAR AFIELD FROM DELAYED DISCLOSURE OF █

8      LOGS AND A DEFUNCT BIT PROMPTLY AFTER IT WAS DISCOVERED.

9             PLAINTIFFS' REQUESTED FACTUAL PRECLUSIONS AND ISSUE

10     DETERMINATIONS ARE ACTUALLY A GUIDE TO THE WEAKNESSES IN THEIR

11     CASE.  AFTER YEARS OF WRITTEN DISCOVERY, PRODUCTION OF OVER A

12     MILLION DOCUMENTS, OVER 50 DEPOSITIONS, PLAINTIFFS CAN'T SHOW

13     THAT, FOR EXAMPLE, GOOGLE JOINS PRIVATE BROWSING MODE DATA WITH

14     USERS' ACCOUNTS.

15            AND THAT'S NOT BECAUSE THEY NEED FURTHER DISCOVERY.

16     THAT'S BECAUSE GOOGLE DOES NOT DO WHAT THEY SAY, WHAT

17     PLAINTIFFS SAY.

18            NOW, SINCE PLAINTIFFS KNOW THEY CAN'T PROVE THAT CLAIM THE

19     OLD-FASHIONED WAY, THEY WANT THE COURT TO FILL IN THE GAPS FOR

20     THEM.

21            THAT'S NOT WHAT SANCTIONS ARE FOR.

22            AS TO PLAINTIFFS' REQUESTED WITNESS PRECLUSIONS, THOSE ARE

23     NOT APPROPRIATE BECAUSE GOOGLE EITHER DID DISCLOSE THE

24     WITNESSES AT ISSUE LONG AGO, OR IT NEVER HAD ANY REASON TO

25     DISCLOSE THEM UNTIL THE SANCTIONS PROCESS BEGAN.

1          FINALLY, MONETARY SANCTIONS ARE NOT APPROPRIATE BECAUSE

2     NONE OF THE UNDERLYING SANCTIONS PLAINTIFFS SEEK ARE

3     APPROPRIATE, AND BECAUSE ANY MONETARY SANCTIONS MUST BE

4     NECESSARILY CAUSED BY THE CONDUCT AT ISSUE.

5          TURNING TO THE TERMINATING SANCTIONS --

6          THE COURT:  SO LET ME HELP YOU OUT HERE, MR. SPILLY.

7          AS I INDICATED I THINK TO BOTH SIDES, AGAIN, EARLY AND

8     THROUGH MY ORDER SETTING US UP HERE TODAY, I'M PICKING THIS UP

9     WHERE THE MAY ORDER LEAVES OFF, AND I DID NOT SEE THAT THE

10    PRIOR ISSUES THAT WERE ADDRESSED IN MAY MERITED TERMINATING

11    SANCTIONS, AND I STILL DON'T SEE THAT, AND I DON'T THINK THAT'S

12    THE PURVIEW OF THIS COURT.

13         THERE MAY BE OTHERS, BUT I THINK THAT THE SANCTIONS THAT I

14    SET IN MAY ARE A GOOD INDICATOR OF HOW I MANAGE THESE ISSUES.

15         AND SO THAT'S VERY GENERALLY, AND NOT AT ALL SPECIFICALLY,

16    SORT OF SETTING THE PARAMETERS.

17         BUT I'M NOT LOOKING AT TERMINATING SANCTIONS, SO I THINK

18    WE CAN MOVE PAST THAT --

19         MR. SPILLY:  THANK YOU, YOUR HONOR.

20         THE COURT:  -- TO SOME OF THE OTHERS ISSUES THAT ARE,

21     THAT ARE PERHAPS IN MY TOOLBOX AND THE TOOLS THAT I HAVE USED

22     PREVIOUSLY AND, IF WARRANTED, COULD USE OR WOULD USE HERE.

23         MR. SPILLY:  CERTAINLY.  THANK YOU, YOUR HONOR.

24         THEN I WILL TURN TO PLAINTIFFS' REQUESTED FACTUAL

25    PRECLUSIONS.

1        THOSE PRECLUSIONS ARE EITHER FALSE OR THEY RELATE TO

2   ISSUES THAT HAVE NOT BEEN IN DISPUTE IN THIS CASE FOR YEARS.

3        FOR EXAMPLE, THEIR PRECLUSION NUMBER 1 ASKS GOOGLE TO BE

4   PRECLUDED FROM ARGUING IT HAS NO WAY OF DETERMINING HOW OFTEN

5   USERS USE PRIVATE BROWSING MODES.

6        THAT ISN'T TRUE.  GOOGLE CANNOT DETERMINE HOW OFTEN USERS

7   USE PRIVATE BROWSING MODES BECAUSE SIGNED OUT PRIVATE BROWSING

8   MODE DATA IS ORPHANED AND UNIDENTIFIED AND, AS A RESULT, USERS

9   MAY HAVE MANY SEPARATE RECORDS OF UNAUTHENTICATED DATA THAT

10  CANNOT BE LINKED TOGETHER.

11       THUS, THERE'S NO WAY TO DETERMINE USERS' PRIVATE BROWSING

12  MODE DATA IN LOGS, HOW OFTEN A SINGLE USER USES PRIVATE

13  BROWSING MODE, AND THERE'S ALSO NO WAY TO AGGREGATE THOSE

14  RECORDS TO DETERMINE OVERALL HOW OFTEN USERS IN GENERAL USE

15  PRIVATE BROWSING MODE.

16       FOR THE SECOND, GOOGLE IS PRECLUDED -- PLAINTIFFS ASK

17  GOOGLE IS PRECLUDED FROM ARGUING THAT IT DOES NOT JOIN PRIVATE

18  BROWSING DATA TO AUTHENTICATED DATA.

19       YEARS OF DISCOVERY, A MOUNTAIN OF EVIDENCE, SHOWS THAT

20  GOOGLE DOESN'T DO THAT.  THAT WOULD BE IMPOSING FICTION OVER

21  FACT.

22       NEXT, PLEASE.

23       THE OTHER FACTUAL PRECLUSIONS THEY'RE SEEKING, THESE ARE

24  ABOUT ISSUES THAT HAVE BEEN WELL ESTABLISHED FOR YEARS.  IT

25  IS -- TO PUT IT BLUNTLY, THERE WOULD BE NO POINT TO PRECLUDE

1     GOOGLE FROM, FOR EXAMPLE, ARGUING THAT ITS DATA SOURCES,

2     INCLUDING THOSE SOURCES FOR AUTHENTICATED DATA, DO NOT INCLUDE

3     PRIVATE BROWSING DATA.

4          IF YOU LOOK AT GOOGLE'S MOTION TO DISMISS, WE ATTACHED THE

5     SEARCH AND BROWSE PRIVATELY PAGE ON OCTOBER 21ST OF 2020 WHERE

6     IT SAYS, "IF YOU SIGN IN TO YOUR GOOGLE ACCOUNT (WHILE IN

7     PRIVATE BROWSING MODE) TO USE A WEB SERVICE LIKE GMAIL, YOUR

8     SEARCHES AND BROWSING ACTIVITY MIGHT BE SAVED TO YOUR ACCOUNT."

9          SO WE ALREADY -- WE ARE NOT GOING TO TAKE THE POSITION

10    THAT AUTHENTICATED DATA, SOURCES FOR AUTHENTICATED DATA DO NOT

11    INCLUDE PRIVATE BROWSING DATA.  IT MAKES NO SENSE TO PRECLUDE

12    GOOGLE FROM ARGUING SOMETHING THAT IT WOULD NEVER ARGUE.

13         AS TO THE NEXT ONE, JOE, OR MR. MARGOLIES.

14         NEW -- I HEARD MR. BOIES AND MR. MAO TALK ABOUT THE NEW

15    USES THAT THESE LOGS DISCOVER, BUT THE -- AND ONE OF THEM THAT

16    THEY ARGUED WAS THAT THESE NEW LOGS SHOW SOME SORT OF

17    REVELATION ABOUT HOW GOOGLE USES PRIVATE BROWSING DATA TO

18    PERFORM AN ANALYSIS AND MODELING TO PREDICT AD REVENUES.

19         GOOGLE TOLD THEM THAT LONG AGO.  WE TOLD THEM THAT IN 2020

20    IN RESPONSE TO REQUEST FOR ADMISSION NUMBER 1.

21         GOOGLE HAS ALWAYS EXPLAINED AND HAS ALWAYS BEEN

22    TRANSPARENT THAT PRIVATE BROWSING MODE DATA IS USED JUST LIKE

23    ANY OTHER UNAUTHENTICATED DATA.  THESE ARE NOT REVELATIONS.

24         AGAIN, THEY ALSO, PLAINTIFFS ALSO DIALLED IN ON ADS

25    RELATED TO THIRD PARTY EXCHANGES, BUT THE SAME -- THIS HAS THE

1    SAME ISSUES AS THE LAST PRECLUSION IN THAT GOOGLE HAS

2    EXPLAINED, SINCE 2020, LONG AGO, MANY YEARS AGO, THAT PRIVATE

3    BROWSING MODE DATA IS USED FOR ADS.  THESE ARE NOT REVELATIONS.

4         AND FINALLY, NUMBER 6, PRECLUSIONS NUMBER 6 AND NUMBER 7,

5    GOOGLE WOULD BE PRECLUDED FROM ARGUING IT HAS NOT MADE PRIVATE

6    BROWSING DATA AVAILABLE FOR OTHER BUSINESS PURPOSES OR TO

7    IMPROVE ANY PRODUCTS OR SERVICES.

8         PLAINTIFFS HAVE KNOWN THAT FOR YEARS, THAT GOOGLE USES

9    PRIVATE BROWSING MODE DATA FOR ANY BUSINESS -- ANY OTHER

10   BUSINESS PURPOSES THAT OTHER UNAUTHENTICATED DATA COULD BE USED

11   FOR.

12        THAT UNDERCUTS THE IDEA THAT THERE'S ADDITIONAL HARM HERE

13   FROM THIS DISCLOSURE OF THE ▌  LOGS AND THE ▐▌▌▌▌▌▌▌

14   BIT BECAUSE THEY DON'T KNOW ANYTHING NOW -- THOSE LOGS DON'T

15   SHOW ANYTHING FURTHER, THERE'S NO ADDITIONAL INFORMATION ABOUT

16   THESE USES THAN THEY ALREADY KNEW FROM LOOKING AT OUR WRITTEN

17   DISCOVERY RESPONSES FROM OVER TWO YEARS AGO, ALMOST TWO YEARS

18   AGO.

19        AND THEN AS TO THE COURT DETERMINATIONS THAT THEY SEEK,

20   IT'S OBVIOUS.  IF YOU LOOK AT THE SIDE-BY-SIDE OF THESE -- YOU

21   KNOW, GOOGLE SYSTEMATICALLY INTERCEPTED, COLLECTED, STORED, AND

22   USED PLAINTIFF CLASS MEMBERS' PRIVATE BROWSING DATA, THAT'S AN

23   ELEMENT FROM THE WIRETAP ACT.  THAT'S COPIED AND PASTED OVER.

24        THE SAME THING, CONTENT, THERE IS NOTHING IN THESE LOGS

25   THAT DOES -- THAT GETS THEM ANY CLOSER TO SHOWING THAT THE DATA

```
1    THAT WAS COLLECTED FROM USERS IN PRIVATE BROWSING MODE

2    CONSTITUTES CONTENT WITHIN THE FEDERAL WIRETAP -- WITHIN THE

3    MEANING OF THE FEDERAL WIRETAP ACT.

4         CDAFA IS THE SAME.

5         AND FOR INVASION OF PRIVACY AND INTRUSION UPON SECLUSION,

6    THERE'S NOTHING IN THESE LOGS THAT WOULD GET THEM -- THAT WOULD

7    HAVE ANY PROBATIVE VALUE, .0001 PERCENT CLOSER TO ARGUING THAT,

8    OR TO BEING ABLE TO SHOW THAT THE DATA COLLECTION AT ISSUE IN

9    THIS CASE WAS HIGHLY OFFENSIVE WITHIN THE MEANING OF THE

10   WIRETAP -- OR WITHIN THE MEANING OF THE INVASION OF PRIVACY AND

11   INTRUSION UPON SECLUSION CASE LAW.

12        AS TO FINDING OF -- FACTUAL FINDINGS 1, 2, 6, AND 9, THESE

13   ARE SO VAGUE AND IMPOSSIBLE TO UNDERSTAND THAT THEY WOULD BE --

14   THEY ARE ESSENTIALLY MEANINGLESS.

15        FOR EXAMPLE, LOOK AT 6, "THROUGHOUT THE CLASS PERIOD,

16   GOOGLE READILY AND SYSTEMATICALLY MIXED PRIVATE BROWSING DATA

17   WITH OTHER DATA IT STORES."

18        WE'VE BEEN TALKING ABOUT JOINED, WHETHER OR NOT GOOGLE

19   JOINS DATA, FOR YEARS.  "MIXED" IS NEW TO ME.  I DON'T KNOW

20   WHAT "READILY AND SYSTEMATICALLY MIXED" MEANS, AND I -- BUT I

21   DO KNOW THAT IT IS NOT SHOWN BY ANY OF THESE ██ ADDITIONAL LOGS

22   OR THIS CHROME -- OR THE ███████████ FIELD.

23        AS TO 9 -- SORRY.  MR. MARGOLIES.  THANK YOU.

24        AS TO 9, "IN RESPONSE TO MULTIPLE COURT ORDERS, GOOGLE

25   WITHHELD RELEVANT INFORMATION REGARDING ITS COLLECTION,
```

1     STORAGE, AND USE OF PRIVATE BROWSING DATA."  THAT CAN'T BE THE

2     CASE BECAUSE GOOGLE DISCLOSED THE INFORMATION AT ISSUE IN THIS

3     OSC.

4          FOR WITNESSES, GOOGLE DID AN EXTENSIVE SEARCH FOR

5     WITNESSES, FOR WITNESSES WHO FILED DECLARATIONS IN THIS CASE,

6     AND THEY WERE -- THESE WITNESSES WERE EITHER DISCLOSED LONG

7     AGO, OR GOOGLE HAD NO REASON TO COME ACROSS THEM UNTIL THIS OSC

8     PROCEEDING.

9          MR. HARREN WAS DISCLOSED LONG AGO.  HE WAS IN GOOGLE'S

10    26(A) DISCLOSURES.  FOR MSSRS. KAHLON, LEE, LIU, AND MAKI,

11    THESE ARE PEOPLE WHO ARE FAR AFIELD FROM THE CORE ALLEGATIONS

12    IN THIS CASE WHO ONLY BECAME RELEVANT BECAUSE THIS OSC

13    PROCEEDING DRILLED DOWN INTO AREAS OF LOGGING INFRASTRUCTURE

14    THAT ARE FAR AFIELD FROM PLAINTIFFS' CORE ALLEGATIONS.

15          THE COURT:  MR. SPILLY, WAS MR. HARREN DISCLOSED FOR

16    HIS ███████ LOGS KNOWLEDGE?  WHAT WAS THE FIELD OF HIS

17    DISCLOSURE?

18          MR. SPILLY:  I WOULD HAVE TO CHECK ON THAT FOR YOU,

19    YOUR HONOR.

20          THE COURT:  ALL RIGHT.

21      GO AHEAD.  I TOOK YOU OFF.  YOU WERE AT KAHLON -- WE DID

22    KAHLON, LEE, AND LIU.

23          MR. SPILLY:  SO MARTIN SRAMEK, HE BECAME RELEVANT

24    AFTER THE COURT'S FIRST SANCTIONS ORDER BECAUSE WE ASKED HIM TO

25    RUN THE SEARCH THAT YOUR HONOR ORDERED.

1          BUT PLAINTIFFS ACTUALLY KNEW ABOUT HIM EARLIER THAN THAT

2     BECAUSE HE WAS DEPOSED IN THE CALHOUN CASE.  PLAINTIFFS COULD

3     HAVE ATTENDED THAT, THAT DEPOSITION.  THEY CHOSE NOT TO.

4          THE COURT:  WAS THAT AFTER THE CLOSE OF FACT

5     DISCOVERY IN THIS CASE?  I THINK SO.

6          MR. SPILLY:  I MIGHT HAVE TO CHECK ON THAT FOR YOU,

7     TOO.

8          THE COURT:  THAT'S FINE.  I APPRECIATE IT.

9          MR. SPILLY:  AS TO MR. PANFEROV, HE'S AN ENGINEER WHO

10    WORKED ON THE SOURCE CODE LOG -- THE SOURCE CODE FOR THE ███

11    LOG.  THE SOURCE CODE ONLY BECAME RELEVANT HERE BECAUSE WE

12    WANTED TO BE FULLY TRANSPARENT TO SHOW THAT THE CLAIMS THAT

13    PLAINTIFFS MADE IN THEIR BRIEFING ABOUT THE ███ LOG WERE JUST

14    UNFOUNDED AND UNTRUE.

15         WE NEEDED MR. PANFEROV TO BE ABLE TO HELP EXPLAIN THAT

16    CODE, RESPOND TO IT.  THERE'S NO REASON FOR HIM TO

17    BE PRECLUDED, EITHER.

18         AND THEN FINALLY, MS. BENKO ONLY BECAME RELEVANT ONCE

19    GOOGLE DISCOVERED THE ████████ FIELD, AND ONCE GOOGLE

20    DISCOVERED THAT FIELD, WE PROMPTLY DISCLOSED MS. BENKO.

21         AND I HAVE AN ANSWER FOR YOU, YOUR HONOR --

22         THE COURT:  ALL RIGHT.

23         MR. SPILLY:  -- ABOUT MR. HARREN.

24         THE COURT:  YES.

25         MR. SPILLY:  MR. HARREN WAS DISCLOSED ON JUNE 16TH,

1    2021, AS AN EMPLOYEE WITH RESPONSIBILITIES TIED TO, AMONG OTHER

2    THINGS, LOGS CONTAINING PRIVATE BROWSING INFORMATION AND DATA

3    DERIVED FROM PRIVATE BROWSING.

4              THE COURT:  OKAY.

5              MR. SPILLY:  AND THEN COMING TO THE MONETARY

6    SANCTIONS.

7         MONETARY SANCTIONS ARE LIMITED TO REIMBURSING SOMEONE FOR

8    FEES INCURRED AS A RESULT OF THE CONDUCT AT ISSUE, AND HERE

9    THOSE NEED TO BE FEES INCURRED THAT WERE NECESSITATED BY -- TO

10   CORRECT THE PREJUDICE AFTER THE MAY 20TH ORDER, ANY ADDITIONAL

11   PREJUDICE FROM THE DELAYED DISCLOSURE HERE.

12        THE CONDUCT AT ISSUE HERE -- AS I BELIEVE YOUR HONOR HAS

13   ALREADY GRACIOUSLY ACKNOWLEDGED, THE CONDUCT AT ISSUE HERE DOES

14   NOT NECESSITATE BRINGING A MOTION FOR TERMINATING SANCTIONS

15   THAT ARE CONTRARY TO LAW.

16        BUT IT ALSO DOESN'T -- IT DOESN'T JUSTIFY BRINGING --

17   ASKING FOR EXTREME FACTUAL PRECLUSIONS THAT ARE CONTRARY TO

18   REALITY.

19        AS THE COURT HAS -- AND THEN FINALLY, WHEN IT COMES TO THE

20   SPECIAL MASTER FEES, THE INCOGNITO-DETECTION BITS ARE A SMALL

21   PART OF THE SPECIAL MASTER PROCESS.  THERE WERE A LOT OF

22   IDENTIFIERS AND A LOT OF LOGS AND A LOT OF INFORMATION GOING

23   BACK AND FORTH IN THE CONTEXT OF THAT PROCESS AND THESE

24   INCOGNITO-DETECTION BITS ARE A SMALL PART OF THAT, AND IT IS

25   NOT -- IT WOULD NOT BE JUSTIFIED TO THEN SHIFT ALL OF THE FEES

SEALED PROCEEDINGS

1    FROM THE SPECIAL MASTER PROCESS TO GOOGLE AS A RESULT OF THIS

2    SMALL PIECE OF THAT PUZZLE.

3              THE COURT:  THANK YOU, MR. SPILLY.

4              MR. SPILLY:  THANK YOU, YOUR HONOR.

5              THE COURT:  I APPRECIATE IT.

6         ALL RIGHT.  PLAINTIFFS?

7              MR. BOIES:  THANK YOU, YOUR HONOR.

8         AND I HEAR THE COURT, THAT YOU WANT TO START WITH WHERE WE

9    LEFT OFF, AND LET ME TELL YOU WHY I THINK -- WHAT I THINK HAS

10   CHANGED.

11             THE COURT:  OKAY.

12             MR. BOIES:  FIRST, WE KNOW THAT THERE WERE MORE LOGS,

13    MORE DATA SOURCES, MORE INFORMATION THAT THEY DID NOT DISCLOSE

14    THAT THEY SHOULD HAVE DISCLOSED.

15        THEY CAN SAY THAT THE DATA WAS THE SAME OR THE USES WERE

16   THE SAME.  I THINK THAT'S NOT SO.  I THINK THAT WE'VE SHOWN THE

17   COURT IN WHAT I SHOWED YOU BEFORE THAT THAT'S NOT SO.

18        BUT EVEN IF THAT WERE SO, THAT'S STILL ADDITIONAL LOGS AND

19   ADDITIONAL DATA SOURCES THAT WE SHOULD HAVE HAD PRODUCED.

20        AND THEY STILL HAVE NOT PRODUCED A SCHEMA FOR THESE

21   ADDITIONAL LOGS.  THEY STILL HAVE NOT PRODUCED ANY OF THE DATA

22   FOR THESE PARTICULAR LOGS.

23        SO THERE IS, IN SOME SENSE, MORE OF THE SAME, BUT IT IS

24   SOMETHING THAT REVEALS ADDITIONAL SANCTIONS FOR CONDUCT.

25             SECOND, THERE IS STUFF THAT IS NEW.  THERE IS THE ONE LOG

1    WHERE THEY DO PUT THEM TOGETHER.

2         AND THEY REPEATEDLY SAID THAT THEY DID NOT DO THAT.  IF

3    YOU LOOK AT CHART 84 WHERE THEY SAY GOOGLE MAINTAINS AND

4    ENFORCES SEPARATION BETWEEN THE AUTHENTICATED LOGS AND THE

5    UNAUTHENTICATED LOGS, THAT'S WHAT THEY SAID TO THIS COURT.

6         CHART 85, DEPOSITION, OR ARGUMENT, GOOGLE IS SAYING "THAT

7    THE LOGS ARE INTERNALLY SEGREGATED BY WHETHER YOU ARE LOGGED

8    INTO A GOOGLE ACCOUNT OR AREN'T."

9         THAT SO-CALLED ███████ LOG SHOWS THAT THAT'S NOT SO, SO

10   THAT'S A NEW -- THAT'S A NEW DISCLOSURE.

11        THE ██████ BIT, THEY SAY THAT WE HAVE NOT DISPUTED THE

12   ██████ BIT CANNOT BE USED TO DETECT PRIVATE BROWSING.  I DON'T

13   KNOW WHERE THEY GET THAT.  THAT'S NOT SO.

14        AND, INDEED, THE BENKO DECLARATION THAT THEY SUBMITTED, IF

15   WE GO TO CHART 51, SAYS "STARTING ON OCTOBER 13, 2016" -- WELL

16   INTO THE CLASS PERIOD, IT STARTED DURING THE CLASS PERIOD --

17   "THE ████████████ TEAM SUPPORTED GOOGLE'S ████████████

18   ██████ WITH A HEURISTIC DESIGNED TO APPROXIMATE WHETHER

19   BROWSING ACTIVITY TOOK PLACE IN A PRIVATE BROWSING WINDOW IN

20   SAFARI, EDGE LEGACY, AND FIREFOX OR IN AN ████████████ IN

21   CHROME.  FOR THAT PURPOSE, THE ████████████ TEAM COMPUTED A

22   BOOLEAN FIELD NAMED '████████████.'"

23        THERE'S NOTHING THERE THAT SAYS THAT DOESN'T WORK.

24   THERE'S NOTHING THAT SAYS THAT IT CERTAINLY WASN'T DEFUNCT AT

25   THAT POINT IN TIME.

```
1        AND THE ARGUMENT THAT THIS WAS, QUOTE, DEFUNCT AT THE TIME

2   THEY PRODUCED THIS MATERIAL IS SIMPLY ILLUSTRATIVE OF THE

3   INADEQUACY OF WHAT THEY DID.  AS MR. MAO POINTED OUT, THE VERY

4   NATURE OF THEIR SEARCH MEANT THAT THEY ONLY GOT THE LOGS THAT

5   EXISTED AT A POINT IN TIME AT THE END OF 2021.  THEY DON'T HAVE

6   ANYTHING FROM 2016, 2017, 2018, 2019 DURING THE CLASS PERIOD.

7   SO THAT IS NEW.

8        A THIRD THING THAT IS NEW IS THAT WE HAVE EVIDENCE NOW

9   THAT THIS WAS NOT SIMPLY, AS THE COURT HELD WITH RESPECT TO THE

10  EARLIER SANCTIONS, GROSSLY NEGLIGENT.

11       BUT IT IS INTENTIONAL.  THEY KNEW AT THE TIME THAT THEY

12  WERE MAKING THESE REPRESENTATIONS THAT THAT WAS NOT SO.

13       AND I GO BACK TO THE EMAIL THAT WAS PRODUCED TO US

14  JULY 21ST, 2022, SEVERAL MONTHS AFTER THE END OF DISCOVERY.

15  THAT WAS THE ONE THAT WAS CLAIMED PRIVILEGED.

16       AND THIS WAS -- THIS WAS AN EMAIL THAT WENT TO SENIOR

17  LITIGATION COUNSEL.  IT WENT TO CHRIS LIAO, WHO THEY PUT UP TO

18  TESTIFY ABOUT THIS, AND IT SHOWS THAT THE GOOGLE PEOPLE ARE

19  SAYING THAT THE X-CLIENT-DATA HEADER IS A GOOD PROXY SIGNAL FOR

20  INCOGNITO, EXACTLY CONTRARY TO WHAT MR. LIAO TESTIFIED -- WE

21  DIDN'T HAVE THIS DOCUMENT AT THE TIME OF THE SANCTIONS

22  HEARING -- SAYING THAT IT IS, THAT IT IS BEING USED AS PART OF

23  THE -- AND I NEVER GET THE NAME EXACTLY RIGHT, BUT ███████

24  ███ .

25       AND THE POINT IS NOT WHETHER WE KNOW THAT THERE WAS █
```

1       ████████████.  THE POINT IS THAT THEY WERE USING THE

2       X-CLIENT-DATA HEADER AS A GOOD PROXY SIGNAL FOR DETECTING

3       INCOGNITO.  THAT'S WHAT THEY DENIED, AND THAT'S WHAT WE KNOW

4       THAT THEY KNEW ON OCTOBER 9, 2021.

5              WELL, WE KNOW THAT GOOGLE KNEW IT BEFORE.

6              BUT WE KNOW IT WAS COMMUNICATED TO MR. LIAO AND MR. -- AND

7       THE SENIOR LITIGATION COUNSEL IN THE FOURTH QUARTER OF 2021.

8              SO I THINK THAT WHAT WE HAVE HERE IS EVIDENCE NOT ONLY

9       THAT THEY DIDN'T PROVIDE US WITH THE LOGS, BUT THEY ALSO

10      CONCEALED THE FACT THAT THEY KNEW THAT THIS WAS A GOOD PROXY,

11      AND IT HADN'T -- AND THEY DIDN'T ABANDON IT BECAUSE IT DIDN'T

12      WORK, WHICH IS WHAT THEY TOLD THE COURT BEFORE IN TERMS OF THE

13      SANCTIONS HEARING.

14             THE FOURTH THING THAT IS NEW IS THAT AT THE TIME OF THE

15      PAST SANCTIONS HEARING, THEY WERE MAINTAINING THAT WE HAD --

16      THEY HAD NOW GIVEN US ALL OF THE RELEVANT SOURCE LOGS, AND THE

17      COURT TOLD THEM TO GIVE US A REPRESENTATION OF THAT.

18             SO -- AND THEY ARE NOW TELLING THE COURT THAT NOT ONLY

19      HAVE THEY NOT DONE THAT, BUT IT WOULD BE A BIG JOB TO DO THAT.

20             NOW, THAT TELLS US TWO THINGS THAT I THINK ARE IMPORTANT.

21      ONE, IT TELLS US THAT THEY DID NOT DO IT BEFORE; AND THE SECOND

22      THING IS THAT IT TELLS US THAT THEY KNEW THAT THEY HAD NOT DONE

23      IT BEFORE, BECAUSE IF IT'S A BIG JOB NOW, THEY KNEW IT WAS A

24      BIG JOB THEN, AND IF IT WAS A BIG JOB THEN, THEY KNOW THEY

25      HADN'T DONE IT.

1          SO THAT IS FURTHER EVIDENCE THAT THIS, THIS WAS

2     INTENTIONAL.

3          NOW, WHAT COUNSEL ESSENTIALLY SAYS IS THAT THEY SHOULD --

4     THEY SHOULDN'T BE SUBJECT TO ANY PENALTY FOR THIS AND THAT THEY

5     SHOULD BE ABLE TO JUST WALK AWAY FROM IT.  YES, THEY WERE

6     CAUGHT, BUT THEY OUGHT NOT TO HAVE ANY -- THERE OUGHT NOT TO BE

7     ANY CONSEQUENCES.

8          AND I SUGGEST TO THE COURT THAT THAT IS WRONG ON A LOT OF

9     LEVELS.  I THINK IT IS UNFAIR TO US, BUT I THINK IT'S WRONG

10    JUST AS A MATTER OF JUDICIAL PROCESS.

11         I THINK IT IS WRONG FOR COURTS TO TOLERATE A SITUATION IN

12    WHICH PEOPLE CONSTANTLY TELL US, TELL AN OPPONENT, CONSTANTLY

13    TELL THE COURT THINGS THAT ARE NOT TRUE AND THEN THEY CHANGE IT

14    AS MORE COMES OUT.  FIRST THEY DON'T TRACK IT AT ALL; AND THEN

15    THERE ARE SOME LOGS; AND THEN THE LOGS ARE UNRELIABLE; AND THEN

16    IT TURNS OUT THE LOGS INTERNALLY SAY THE LOGS ARE NOT

17    UNRELIABLE; THEN THEY SAY THAT THESE ARE ALL THE LOGS; AND THEN

18    THEY'RE NOT ALL THE LOGS; AND THEN THEY SAY WE NEVER COMBINED

19    THESE TWO IN THE SAME LOG; THEN WE FIND THEY ARE INCLUDED IN

20    THE SAME LOG, WHETHER YOU CALL IT ████ OR NOT.  AND IT'S JUST

21    A WHOLE SERIES OF THINGS WHERE THEY ARE SAYING THOSE THINGS.

22         AND I CAN'T TELL YOU EXACTLY WHAT ALL THE EVIDENCE WOULD

23    SHOW, BUT WHAT I CAN SAY TO YOU IS THAT WE DIDN'T GET THE

24    OPPORTUNITY THAT WE'RE ENTITLED TO TO FIND OUT THAT EVIDENCE,

25    AND THE POINT OF PRECLUSION SANCTIONS IS TO SAY TO A PARTY WHO

1    HAS PREVENTED THE TRUTH FROM BEING KNOWN, YOU'RE GOING TO GET

2    AN ADVERSE INFERENCE.  YOU HAVE PREVENTED THE FACTS FROM BEING

3    KNOWN, YOU HAVE PREVENTED THE TRUTH FROM BEING KNOWN, AND SO

4    YOU'RE GOING TO SUFFER THE ADVERSE INFERENCE.

5          AND THAT'S GOT A LOT OF SENSE TO IT, BECAUSE IF ALL THESE

6    LOGS HELPED THEM, THEY WOULD HAVE PRODUCED THEM.

7          IF IT HAD HELPED THEM TO PRODUCE THE DOCUMENTATION ABOUT

8    HOW THEY KNEW THAT THIS WAS A GOOD PROXY, THEY WOULD HAVE DONE

9    SO.

10         WHEN SOMEBODY HAS IN THEIR POSSESSION EVIDENCE AND THEY

11   CONCEAL IT, PARTICULARLY IN THE FACE OF REPEATED COURT ORDERS,

12   I THINK IT'S A FAIR INFERENCE THAT THAT EVIDENCE WOULD NOT HAVE

13   BEEN HELPFUL TO THEM.

14         SO I THINK IT IS -- IT'S A REASONABLE INFERENCE.

15         BUT IN ADDITION TO BEING A REASONABLE INFLUENCE --

16   INFERENCE, IT IS THE ONLY WAY THAT JUSTICE CAN BE DONE, BECAUSE

17   THEY HAVE PRECLUDED US FROM HAVING THE OPPORTUNITY TO FIND OUT

18   THE FACTS WITH THESE LOGS, THE FACTS ABOUT THE SCHEMA, THE

19   FACTS ABOUT THE DATA THAT RELATES TO THEM.

20         AND AS A RESULT -- YOU KNOW, I HEAR THE COURT ABOUT

21   TERMINATING SANCTIONS, BUT AT A MINIMUM THE JURY INSTRUCTIONS

22   AND THE PRECLUSION SANCTIONS THAT WE HAVE PUT FORTH TO THE

23   COURT I THINK ARE ESSENTIAL TO HAVE SOME BOTH VINDICATION OF

24   THE COURT'S PROCESSES, BUT ALSO IN FAIRNESS TO THE PLAINTIFFS.

25         THE -- WE THINK MONETARY SANCTIONS ARE IMPORTANT.  BUT

1   MONETARY SANCTIONS ARE POCKET CHANGE.  I MEAN, THEY'RE NOT EVEN

2   POCKET CHANGE, YOU KNOW, FOR A COMPANY LIKE GOOGLE.

3          AND UNLESS THERE IS SOME SERIOUS CALLING TO ACCOUNT, THERE

4   IS ABSOLUTELY NO REASON FOR THEM NOT TO CONTINUE THIS IN EVERY

5   CASE THAT THEY'RE IN.  THERE'S NO REASON FOR THEM NOT TO GIVE

6   US ONE EXPLANATION, WE CATCH THEM, GIVE US ANOTHER EXPLANATION,

7   WE CATCH THEM AGAIN, GIVE US ANOTHER EXPLANATION, WE CATCH THEM

8   AGAIN.

9          MAYBE WE DON'T CATCH THEM.

10         AT A MINIMUM, IT DELAYS THINGS.

11         SO I REALLY DO THINK THAT TERMINATING SANCTIONS HERE, YOUR

12   HONOR, WOULD BE APPROPRIATE.

13         BUT IF NOT, THERE'S GOT TO BE SOMETHING SERIOUS HERE, I

14   WOULD RESPECTFULLY SUGGEST.

15             THE COURT:  OKAY.  THANK YOU.

16             MR. BOIES:  THANK YOU.

17             THE COURT:  THANK YOU, MR. BOIES.

18   SHORT RESPONSE FROM GOOGLE --

19             MR. SCHAPIRO:  YES.

20             THE COURT:  -- ON THE ISSUE OF SANCTIONS?

21             MR. SCHAPIRO:  YES.

22   SO, YOUR HONOR, I REALLY THINK THAT WHAT WE'VE BEEN

23   HEARING HERE IS THAT IT IS, IN ESSENCE, A RE-LITIGATION OF THE

24   FIRST SANCTIONS MOTION, AND WE WANT TO FOCUS ON THE QUESTION

25   THAT YOUR HONOR ASKED, WHICH IS WHAT RELEVANT SANCTIONS, IF

1    ANY, ARE WARRANTED BY WHAT HAPPENED SUBSEQUENT TO THE MAY 2022

2    SANCTIONS?

3         AND THERE'S A LEGAL STANDARD HERE AND THERE'S CLEAR NINTH

4    CIRCUIT LAW, AND THE PRESENTATION THAT WE'VE HEARD TODAY

5    DOESN'T SATISFY THAT FOR ANY TYPE OF SANCTIONS.

6         THE IDEA THAT WE'VE COME INTO THIS COURT AND THAT WE'VE

7    ASKED AND THE SANCTION SHOULDN'T BE IMPOSED BECAUSE WE'RE

8    ASKING THE COURT TO TRUST US OR ASKING THE PLAINTIFFS TO TRUST

9    US COULDN'T BE FURTHER FROM THE TRUTH.

10        WE HAVE GONE ABOVE AND BEYOND WHAT'S REQUIRED TO GIVE ALL

11   THAT THE PLAINTIFFS NEED.  WE'VE PROVIDED OVER A MILLION

12   DOCUMENTS, OVER 50 DEPOSITIONS, ███████ LINES OF CODE WHICH THEY

13   SPENT TWO DAYS REVIEWING.  THEY HAD NOTHING TO SAY ABOUT IT.

14        WE EMBRACED THE SUGGESTION FROM YOUR HONOR, BRING BACK THE

15   SPECIAL MASTER IF THERE'S SOME FOLLOW-UP QUESTIONS YOU WANT TO

16   ASK OR IF THERE'S SOME ADDITIONAL PROBLEM THAT YOU PERCEIVE.

17        THE PLAINTIFFS CHOSE NOT TO TAKE US UP ON THAT.

18        YOUR HONOR, TRULY, THE PLAINTIFFS IN THIS CASE -- AND I'M

19   COMPARING IT TO OTHER CASES THAT I'VE WORKED ON -- HAVE GOTTEN

20   SO MUCH DISCOVERY THAT IT SEEMS THEY'VE FORGOTTEN WHAT THEY'VE

21   ACTUALLY LEARNED.  YOU SAW THAT TODAY.

22        I MEAN, IT'S SAID THAT WHAT LAWYERS SAY IS NOT EVIDENCE,

23   AND I THINK THERE'S A GOOD REASON FOR THAT.

24             THE COURT:  I DO, TOO.

25             MR. SCHAPIRO:  WHAT LAWYERS SAY IS THAT YOU NEED TO

1        ACTUALLY LOOK AT THE SOURCES AND THE EVIDENCE.  FOR EXAMPLE,

2        THE DOCUMENT THAT MR. BOIES MADE A BIG DEAL ABOUT, THE █

3        WHATEVER IT WAS, ███████████, THAT WAS PROVIDED IN 2021.

4            SLIDE NUMBER 98 FROM THE PLAINTIFFS WHERE THEY

5        BREATHLESSLY PRESENTED AN EXCHANGE WITH MR. SCHUH, WHAT

6        MR. SCHUH SAID, ON THE SLIDE ITSELF, IS "WHENEVER I'VE HEARD

7        THIS TERM AND WHENEVER I'VE USED IT," THIS IS WHAT IT MEANS.

8            AND I DON'T FAULT PEOPLE WHO HAVE COME INTO THE CASE NOW

9        FOR THE SANCTIONS PORTION THAT WEREN'T INVOLVED IN THE NITTY

10       GRITTY OF THE DISCOVERY FOR SOMETIMES GETTING IT WRONG, AND I

11       WILL AGREE THAT ULTIMATELY THE EVIDENCE SPEAKS FOR ITSELF.

12           BUT THE EVIDENCE LEADS TO ONLY ONE CONCLUSION, WHICH IS

13       THAT NO SANCTIONS ARE WARRANTED HERE.

14           MR. BOIES SPOKE A MOMENT AGO AGAIN ABOUT JOINING AND

15       SAYING THAT, WELL, IT DOESN'T REALLY MATTER IF IT'S NEXT TO OR

16       NOT BECAUSE WE'VE BEEN MOVING GOAL POSTS AND NEED TO BE

17       SANCTIONED FOR THAT.

18           YOUR HONOR, WE'VE BEEN CONSISTENT THROUGHOUT.  I CAN OFFER

19       AN EXAMPLE.  YOU KNOW, THE FACT THAT MY NAME AND YOUR NAME

20       MIGHT BE TOGETHER IN A PHONE BOOK MAKES IT NO EASIER TO JOIN

21       THEM THAN IF, YOU KNOW, IF THEY'RE AT THE BEGINNING OF THE

22       PHONE BOOK AND THE END OF THE PHONE BOOK OR NEAR EACH OTHER ON

23       A PAGE IN THE PHONE BOOK.

24           THE FACT IS THAT ALL OF THE EVIDENCE HERE THAT THEY'VE

25       RECEIVED, ALL OF THE EVIDENCE I HIGHLIGHTED A FEW MINUTES AGO

1    DOES NOT ALLOW THEM TO ARGUE -- BECAUSE THE TRUTH IS THAT THEY

2    CAN'T -- IT'S FALSE THAT THERE'S ANY JOINING IN ANY MEANINGFUL

3    SENSE THAT GOES ON.

4         I SAW MY OWN NAME ON A SLIDE EARLIER TODAY, A STATEMENT I

5    MADE ABOUT TRACKING.

6         AGAIN, NO CHANGING OF TERMS OR OF OUR POSITION.  WHAT I

7    SAY ON THAT SLIDE IS, WELL, WE DON'T TRACK PEOPLE IN INCOGNITO

8    MODE.

9         YOUR HONOR, THAT'S TRUE.  THAT'S ALWAYS BEEN TRUE, AND

10   THAT'S ALWAYS BEEN OUR POSITION HERE.

11        THE FACT THAT THERE'S SOME LOGS THAT SHOW A DEVICE FROM

12   SOMEWHERE SIGNED INTO SOMETHING OR OTHER, THAT'S NOT NEWS.

13   IT'S NOT BEEN DISPUTED.  IT'S NOTHING NEW THAT POST-DATES MAY

14   OF 2022.

15        ULTIMATELY, YOUR HONOR, THE QUESTION HERE IS MAYBE WE ARE

16   SHIPS -- ASSUMING GOOD FAITH ON EVERYONE'S PART, THAT WE'RE

17   SHIPS PASSING IN THE NIGHT ABOUT HOW DISCOVERY SHOULD WORK IN A

18   COMPLICATED FEDERAL CASE.

19        IT IS UNREALISTIC, YOUR HONOR, TO THINK THAT SOMEONE IN

20   THE ███████████ UNIT WOULD REACH OUT TO THE LAWYERS

21   WORKING ON THIS CASE OR BECOME KNOWN TO THE LAWYERS WORKING ON

22   THIS CASE AND SAY, OH, RIGHT, YOU KNOW, IN 2016 -- I UNDERSTAND

23   YOU HAVE A PRIVACY CASE.  IN 2016, WE HAD A PACKAGE OF

24   INFERENCES THAT TRIED TO DETERMINE WHETHER SOMETHING WAS A BOT

25   OR SPAM OR TRYING TO GET AROUND A PAYWALL.

1           IT'S ALSO UNREALISTIC, AND I WOULD SAY EVEN A LITTLE BIT

2      OFFENSIVE, TO SUGGEST THAT BECAUSE WE DIDN'T FIND THIS, THE

3      COURT SHOULD INFER THAT THERE'S SOME INTENTIONALITY, WHICH,

4      AFTER ALL, IS THE LEGAL TEST.

5           AND I WOULD ENCOURAGE THE COURT, WHEN YOU'RE DECIDING WHAT

6      TO DO ABOUT THIS, TO GO BACK AND LOOK AT ROMAN NUMERAL II, OR

7      POINT 2 OF MS. TREBICKA'S PRESENTATION AT THE BEGINNING TODAY

8      WHICH DESCRIBED THE INVESTIGATION THAT WE MADE, BECAUSE I THINK

9      THAT SECTION SHOULD BE DECISIVE ABOUT WHY THERE ARE NO

10     SANCTIONS WARRANTED HERE.

11          WHAT HAPPENED HERE AFTER MAY 20, 2022?  WE WERE TWO WEEKS

12     LATE ON DISCLOSING SOME LOGS, AND WE CAME -- WE FOUND ONE

13     DEFUNCT FIELD, THE ████ FIELD, THAT WE PROMPTLY DISCLOSED.

14     TWO WEEKS LATE, AND ONE DEFUNCT FIELD PROMPTLY DISCLOSED.

15          THAT'S NOT HIDING ANYTHING.  THAT'S NOT BAD FAITH.  THAT'S

16     DISCOVERY AND HOW IT WORKS, AND THAT'S LAWYERS DOING WHAT THEY

17     SHOULD DO IN A COMPLICATED CASE.

18          WE TOLD THESE PLAINTIFFS ON MAY 31ST, WE NEED TWO MORE

19     WEEKS.

20          I HAVE SAID TO YOU, AND MY COLLEAGUE HAS SAID TO YOU, WE

21     APOLOGIZE FOR NOT PUTTING THAT ON ECF AND TELLING THE COURT,

22     TOO.  WE SHOULD HAVE.  THAT'S ONE OF THE REASONS WHY, ONCE WE

23     DETERMINED WHAT THE ██████████ WAS, WE SAID, WELL, WE

24     THINK WE SHOULD BE ABLE TO DEPRECATE THIS, BUT, NO, LET'S

25     NOTIFY THE COURT IMMEDIATELY.  LET'S GO IN.

SEALED PROCEEDINGS

1          SO WHAT TYPES OF SANCTIONS WOULD BE APPROPRIATE HERE?  IF

2     YOU DON'T AGREE WITH ME THAT IT SHOULD BE NONE -- BUT IT SHOULD

3     BE NONE -- YOUR HONOR, CERTAINLY THE PRECLUSIONS AND FINDINGS

4     THAT THEY'RE ASKING FOR TODAY, IF YOU LOOK AT THEM WITH, YOU

5     KNOW, EVEN A FEW MOMENTS OF FOCUS, THOSE ARE TERMINATING

6     SANCTIONS BY ANOTHER NAME.  THEY REALLY ARE.

7          MR. SPILLY HAS A CHART WHERE HE WALKS THROUGH HOW THE

8     SANCTIONS, THE PRECLUSIONS THAT THEY'RE ASKING FOR AND THE

9     FINDINGS THAT THEY'RE ASKING FOR TRACKS LANGUAGE OF THE

10    STATUTE, WHICH IS NOT BY ACCIDENT.  I WOULD DO IT IF I WERE A

11    LAWYER ON THE OTHER SIDE, TOO.  BUT IT'S A TERMINATING SANCTION

12    DRESSED UP AS SOMETHING ELSE.

13         AND I DON'T WANT TO REACH THIS CONCLUSION, BUT I THINK

14    MS. TREBICKA IS PROBABLY RIGHT THAT THE PLAINTIFFS ARE A LITTLE

15    BIT MORE INTERESTED IN SANCTIONS HERE THAN IN GATHERING

16    EVIDENCE, AND I SAY THAT BECAUSE, FOR EXAMPLE, THEY DIDN'T TAKE

17    US UP ON THE OFFER TO SPEND A LITTLE TIME WITH THE SPECIAL

18    MASTER.  THEY DIDN'T FOLLOW UP ON THE SOURCE CODE.

19         AND SO AGAINST THAT BACKDROP, I WOULD ASK THE COURT TO

20    CONSIDER THE INCENTIVES THAT WOULD BE ESTABLISHED BY IMPOSING

21    SANCTIONS HERE.

22         IT CAN'T BE, AS MY COLLEAGUES HAVE SAID, THAT WHEN THERE'S

23    A DISCOVERY FAILURE, OR EVEN TWO DISCOVERY FAILURES, THE OTHER

24    SIDE CAN COME IN AND SAY, YOU WERE LATE ABOUT THIS, WE'RE NOT

25    GOING TO WRITE TO YOU A LETTER ON MAY 31ST AND SAY, WELL, WHAT

1    DO YOU MEAN YOU CAN'T GIVE IT TO US?  OR WHEN WE RECEIVE YOUR

2    DECLARATION, WELL, THIS DOESN'T SEEM AS DECISIVE AS WHAT THE

3    COURT WAS ASKING FOR, WHY CAN'T YOU SAY WITH CERTAINTY THAT

4    THERE'S NOTHING ELSE OUT THERE?  NOW WE'RE GOING TO RUN IN AND

5    SEEK SANCTIONS.

6         AND IF YOU LOOK ON THE DOCKET OF SOME OF THESE OTHER

7    PRIVACY CASES NOW, ESPECIALLY IN THE NORTHERN DISTRICT OF

8    CALIFORNIA, IT SEEMS TO BE THE STRATEGY DE JURE, GO IN AND SEEK

9    SANCTIONS, SOMETIMES GET THEM, SOMETIMES DON'T, MIGHT AS WELL

10   RAISE IT, MAYBE PUT A WITNESS ON AND TRIP SOMEONE UP ON SOME

11   STATEMENT UNDER OATH.

12        BUT THAT'S NOT HOW DISCOVERY WORKS AND NOT HOW LITIGATION

13   SHOULD WORK, ESPECIALLY HERE WHEN ALL PERCEIVED PREJUDICE THAT

14   THE PLAINTIFFS HAVE DESCRIBED TODAY COULD BE CURED, OR COULD

15   HAVE BEEN CURED, STILL COULD, WITH SOME LIMITED SPECIAL MASTER

16   PROCESS.  YOUR HONOR PROPOSED IT, THE PLAINTIFFS FIRST SAID

17   YES, WE SAID OKAY, AND THEY DIDN'T FOLLOW UP.

18        THEY SHOULD NOT BE HEARD TO CLAIM PREJUDICE FROM THAT --

19   EXCUSE ME -- FROM NOT BEING ABLE TO ASK QUESTIONS THAT THEY

20   CHOSE NOT TO ASK.

21        SO IN SUM, YOUR HONOR, THE TYPES OF SANCTIONS THEY ASK FOR

22   ARE FOR CONDUCT FAR MORE EGREGIOUS THAN THIS.

23        I WAS INTERESTED TO SEE THAT THE PLAINTIFFS SUBMITTED A

24   SUPPLEMENTAL AUTHORITY, A RECENT DECISION INVOLVING FACEBOOK

25   WHERE SOME SANCTIONS WERE IMPOSED.  I'VE FORGOTTEN THE NAME OF

1      THE DECISION.  TAKE A LOOK AT THAT DECISION, YOUR HONOR,

2      BECAUSE ALTHOUGH THE SANCTION AWARDED, MONETARY SANCTION, WAS

3      LESS THAN WHAT YOU HIT US WITH ON MAY 20, 2022 --

4              THE COURT:  UM-HUM.

5              MR. SCHAPIRO:  -- THE CONDUCT IS FAR MORE EGREGIOUS.

6      FAR MORE EGREGIOUS.

7          SO HONESTLY, WE WERE GOING TO SUBMIT THAT CASE.  WE WERE

8      GOING TO SAY, LOOK, HERE'S A CASE WHERE THERE'S ACTUAL

9      MISCONDUCT, FOR SURE, REAL MISCONDUCT, AND THESE FOLKS -- THOSE

10     FOLKS DIDN'T GET TAGGED EVEN WITH THE MONETARY SANCTION THAT

11     YOU HAD IMPOSED ON US.

12             IT'S IN YOUR DISCRETION, OF COURSE, YOUR HONOR.

13         SO THIS IS A CIRCUMSTANCE IN WHICH FURTHER SANCTIONS ARE

14     NOT APPROPRIATE.  A TWO WEEK DELAY IN IDENTIFYING SOME LOGS AND

15     A PROMPT DISCLOSURE OF A NOW DEFUNCT FIELD DON'T WARRANT ANY

16     SANCTIONS WHATSOEVER, AND CERTAINLY NOT THE DRACONIAN SANCTIONS

17     THAT THE PLAINTIFFS ARE SEEKING.

18             THE COURT:  THANK YOU, MR. SCHAPIRO.

19         ALL RIGHT.  AS ALWAYS, COUNSEL'S PREPARATION AND

20     PRESENTATIONS ARE HELPFUL, HAVE BEEN HELPFUL.  THAT'S WHY I

21     LIKE TO HAVE HEARINGS ON THESE MORE COMPLEX MATTERS AND WHY I

22     LIKE TO HAVE YOU HERE IN PERSON.

23         SO I WANT TO THANK EVERYONE FOR THAT EFFORT.  AND I KNOW

24     IT'S NOT JUST THE FOLKS AT THE TABLE.  SO IT IS NOT

25     UNAPPRECIATED.  THANK YOU.

SEALED PROCEEDINGS

1          MR. SCHAPIRO, MATTER SUBMITTED?

2              MR. SCHAPIRO:  YES, YOUR HONOR.

3          MR. SPILLY MADE A MISSTATEMENT AND WANTS TO CORRECT ONE

4     THING.  I DON'T THINK IT'S REBUTTAL.  IT'S JUST ABOUT

5     IDENTIFYING A DOCUMENT.

6              THE COURT:  ALL RIGHT.

7          MR. SPILLY.

8              MR. SPILLY:  YES, YOUR HONOR.

9          SORRY.  I BELIEVE I SAID A 26(A) DISCLOSURE FROM

10    MATT HARREN.  IT'S ACTUALLY A 30(B)(6) DISCLOSURE --

11             THE COURT:  THAT'S WHAT I THOUGHT BY THE DATE.

12             MR. SPILLY:  -- FROM GLENN BERNTSON'S DEPOSITION.

13         I JUST WANTED TO MAKE THAT CLEAR.  THANK YOU.

14             THE COURT:  ALL RIGHT.  THANK YOU.

15         ALL RIGHT.  AND ON THAT, SUBMITTED, MR. SCHAPIRO?

16             MR. SCHAPIRO:  YES, YOUR HONOR.

17             THE COURT:  OKAY.

18         AND, MR. BOIES, SUBMITTED?

19             MR. BOIES:  YES, YOUR HONOR.

20             THE COURT:  ALL RIGHT.  THANK YOU ALL VERY MUCH.  I

21    APPRECIATE IT.

22             MR. BROOME:  YOU ASKED AT THE BEGINNING THAT WE

23    SUBMIT THE BINDERS, THE CHAMBERS COPIES WITH THE ECF STAMPS.

24             THE COURT:  YES.

25             MR. BROOME:  I UNDERSTAND FROM ONE OF MY COLLEAGUES

```
1    THAT WE DON'T HAVE ACCESS TO THE SEALED VERSIONS, AND THAT'S

2    WHY THE CHAMBERS COPIES ARE BEING SENT TO YOU WITHOUT THE ECF

3    STAMPS.

4         SO I'M JUST WONDERING IF YOU HAD SOME DIRECTION FOR US

5    THERE.

6              MR. MCGEE:  I ACTUALLY HAD THE SAME OBSERVATION, YOUR

7    HONOR.  SO --

8              THE COURT:  OKAY.  THEN I'LL HAVE TO DO IT WITHOUT

9    ECF STAMPS.

10             MR. BROOME:  OKAY.  THANK YOU, YOUR HONOR.

11             THE COURT:  THANK YOU FOR LOOKING INTO IT.  I WILL

12   NOT TAKE ON THE CLERK'S OFFICE ABOUT MANAGING THAT.  THAT IS

13   WAY ABOVE MY PAY GRADE.

14        ALL RIGHT.  THANK YOU ALL VERY MUCH.  I APPRECIATE IT.

15             MR. BOIES:  THANK YOU, YOUR HONOR.

16             MR. SCHAPIRO:  THANK YOU, YOUR HONOR.

17             THE COURT:  ALL RIGHT.  WE ARE ADJOURNED.

18        (THE PROCEEDINGS WERE CONCLUDED AT 1:28 P.M.)

19

20

21

22

23

24

25
```

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18       DATED:  MARCH 9, 2023

19

20

21

22

23

24

25