# EXHIBIT 1

# PLAINTIFF CHASOM BROWN'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

               Plaintiffs,

    v.

GOOGLE LLC,

               Defendant.

Case No.  5:20-cv-03664-LHK-SVK

**PLAINTIFF CHASOM BROWN'S AMENDED OBJECTIONS AND RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION**

      Pursuant to Federal Rules of Civil Procedure Rules 26 and 36, Plaintiff Chasom Brown ("Brown") hereby objects and responds to Defendant's, Google LLC ("Google"), First Set of Requests for Admission (No. 1). These objections and response are made solely for the purpose of and in relation to this action. In addition, the objections and response set forth in this document are based on Plaintiff Brown's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Brown may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Brown reserves all rights to supplement and amend his objections and response accordingly.

**REQUEST FOR ADMISSION NO. 1:**

      Admit that, when YOU signed up for YOUR Google Account, YOU reviewed and consented to the GOOGLE PRIVACY POLICY.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

      Plaintiff Brown objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting,

collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff Brown objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, when he opened his Google Account, although he does not recall exact details of the then-current Privacy

Policy, he reviewed and generally consented to the then-current Privacy Policy, and he recalls the

disclosures in the Privacy Policy promising that Google would not intercept and collect his private

browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

Dated: May 24, 2021                    **MORGAN & MORGAN**

                                       */s/ John A. Yanchunis*

                                       John A. Yanchunis (*pro hac vice*)
                                       Ryan J. McGee (*pro hac vice*)
                                       **MORGAN & MORGAN**
                                       201 N. Franklin Street, 7th Floor
                                       Tampa, FL 33602
                                       Tel.: (813) 223-5505
                                       Fax: (813) 222-4736
                                       jyanchunis@forthepeople.com
                                       rmcgee@forthepeople.com

                                       Mark C. Mao, CA Bar No. 236165
                                       Sean P. Rodriguez, CA Bar No. 262437
                                       Beko Richardson, CA Bar No. 238027
                                       **BOIES SCHILLER FLEXNER LLP**
                                       44 Montgomery St., 41st Floor
                                       San Francisco, CA 94104
                                       Tel.: (415) 293-6800
                                       Fax: (415) 293-6899
                                       mmao@bsfllp.com
                                       srodriguez@bsfllp.com
                                       brichardson@bsfllp.com

                                       James Lee (admitted *pro hac vice*)
                                       Rossana Baeza (admitted *pro hac vice*)
                                       **BOIES SCHILLER FLEXNER LLP**
                                       100 SE 2nd St., 28th Floor
                                       Miami, FL 33131
                                       Tel.: (305) 539-8400
                                       Fax: (303) 539-1307
                                       jlee@bsfllp.com
                                       rbaeza@bsfllp.com

                                       William S. Carmody
                                       Shawn Rabin
                                       Steven M. Shepard
                                       **SUSMAN GODFREY L.L.P.**
                                       1301 Avenue of the Americas, 32nd Floor
                                       New York, New York 10019-6023
                                       Telephone: (212) 336-8330
                                       Facsimile: (212) 336-8340

                                       Amanda K. Bonn (270891)
                                       **SUSMAN GODFREY L.L.P.**

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 24, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's First Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on May 24, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on May 24, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 2

# PLAINTIFF WILLIAM BYATT'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

                  Plaintiffs,

  v.

GOOGLE LLC,

                  Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF WILLIAM BYATT'S AMENDED OBJECTIONS AND RESPONSE**
**TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION**

14
15
16
17
18
19
20
21

       Pursuant to Federal Rules of Civil Procedure Rules 26 and 36, Plaintiff William Byatt
("Byatt") hereby objects and responds to Defendant's, Google LLC ("Google"), First Set of
Requests for Admission (No. 1). These objections and response are made solely for the purpose of
and in relation to this action. In addition, the objections and response set forth in this document
are based on Plaintiff Byatt's knowledge, investigations, and analysis to date. As discovery
proceeds, Plaintiff Byatt may become aware of additional facts or evidence and his analysis of the
case may change. Plaintiff Byatt reserves all rights to supplement and amend his objections and
response accordingly.

22

**REQUEST FOR ADMISSION NO. 1:**

23
24

       Admit that, when YOU signed up for YOUR Google Account, YOU reviewed and
consented to the GOOGLE PRIVACY POLICY.

25

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

26
27
28

       Plaintiff Byatt objects to this Request to the extent it purports to suggest that review of and
consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff
Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting

data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff Byatt objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, when he opened his Google Account, although he does not recall exact details of the then-current Privacy

Policy, he reviewed and generally consented to the then-current Privacy Policy, and he recalls the disclosures in the Privacy Policy promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied

Dated: May 24, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 24, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's First Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on May 24, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on May 24, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 3

# PLAINTIFF CHRISTOPHER CASTILLO'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>GOOGLE LLC,<br><br>     Defendant. | Case No.  5:20-cv-03664-LHK-SVK |

## PLAINTIFF CHRISTOPHER CASTILLO'S AMENDED OBJECTIONS AND RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Federal Rules of Civil Procedure Rules 26 and 36, Plaintiff Christopher Castillo ("Castillo") hereby objects and responds to Defendant's, Google LLC ("Google"), First Set of Requests for Admission (No. 1). These objections and response are made solely for the purpose of and in relation to this action. In addition, the objections and response set forth in this document are based on Plaintiff Castillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Castillo may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Castillo reserves all rights to supplement and amend his objections and response accordingly.

**REQUEST FOR ADMISSION NO. 1:**

Admit that, when YOU signed up for YOUR Google Account, YOU reviewed and consented to the GOOGLE PRIVACY POLICY.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff Castillo objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting,

collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff Castillo objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, when he opened his Google Account, although he does not recall exact details of the then-current Privacy

Policy, he reviewed and generally consented to the then-current Privacy Policy, and he recalls the disclosures in the Privacy Policy promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

Dated: May 24, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

1

## PROOF OF SERVICE

2

I, Jennifer Cabezas, declare:

3

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I

4

am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin

5

St., 7th Floor, Tampa, FL 33602.

6

On May 24, 2021, I served the following document described as:

7

**Plaintiff's Amended Objections and Responses to Defendant's First Set of Requests**

8

**for Admission**

9

By electronic mail transmission from jcabezas@forthepeople.com on May 24, 2021, by

10

transmitting a PDF format copy of such document to each person at the e-mail addresses listed

11

below. The document was transmitted by electronic transmission and such transmission was

12

reported as complete and without error:

13

14

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP

15

191 N. Wacker Drive, Suite 2700
Chicago, IL 60606

16

Tel: 312-705-7400
Fax: 312-705-7401

17

andrewschapiro@quinnemanuel.com

18

*Attorney for Defendant*

19

20

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP

21

865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

22

Tel: 213-443-3000
Fax: 213-443-3100

23

stephenbroome@quinnemanuel.com

24

violatrebicka@quinnemanuel.com

25

*Attorneys for Defendant*

26

Diane M. Doolittle

27

Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP

28

555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on May 24, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 4

# PLAINTIFF JEREMY DAVIS' AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>                Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>                Defendant. | Case No.  5:20-cv-03664-LHK-SVK |

**PLAINTIFF JEREMY DAVIS' AMENDED OBJECTIONS AND RESPONSE
TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rules of Civil Procedure Rules 26 and 36, Plaintiff Jeremy Davis ("Davis") hereby objects and responds to Defendant's, Google LLC ("Google"), First Set of Requests for Admission (No. 1). These objections and response are made solely for the purpose of and in relation to this action. In addition, the objections and response set forth in this document are based on Plaintiff Davis' knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Davis may become aware of additional facts or evidence and its analysis of the case may change. Plaintiff Davis reserves all rights to supplement and amend his objections and response accordingly.

**REQUEST FOR ADMISSION NO. 1:**

Admit that, when YOU signed up for YOUR Google Account, YOU reviewed and consented to the GOOGLE PRIVACY POLICY.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff Davis objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting

data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff Davis objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, when he opened his Google Account, although he does not recall exact details of the then-current Privacy

Policy, he reviewed and generally consented to the then-current Privacy Policy, and he recalls the disclosures in the Privacy Policy promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

Dated: May 24, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>PROOF OF SERVICE</u>**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 24, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's First Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on May 24, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

      Executed on May 24, 2021, at Tampa, Florida.


               */s/ Jennifer Cabezas*
               Jennifer Cabezas

# EXHIBIT 5

# PLAINTIFF CHASOM BROWN'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION

1
2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

                    Plaintiffs,

   v.

GOOGLE LLC,

                    Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF CHASOM BROWN'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION**

14
15
16
17
18
19
20
21

Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff Chasom Brown ("Brown") hereby objects and responds to Defendant's, Google LLC ("Google"), Second Set of Requests for Admission (Nos. 2–21). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Brown's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Brown may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Brown reserves all rights to supplement and amend his objections and responses accordingly.

**REQUEST FOR ADMISSION NO. 2:**

22
23
24

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU indicated to Google that YOU agreed to Google's then-current TERMS OF SERVICE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

25
26
27
28

Plaintiff Brown objects to this Request as vague and overly broad to the extent Google relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Brown cannot be expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to

in this Request. Plaintiff Brown further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google's representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Plaintiff Brown objects to this Request as vague and overly broad to the extent Google relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Brown cannot be expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to in this Request. Plaintiff Brown further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this

litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Terms of Service, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and did he not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU reviewed the GOOGLE PRIVACY POLICY before you first used INCOGNITO MODE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Brown objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Brown further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing,

and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Brown objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Brown further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not

need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that he is not sure whether he reviewed the then-current Google Privacy Policy before he first used Incognito Mode, but he did review the Incognito Splash Screen before he first used Incognito Mode and each time thereafter, which did not state that Google would intercept and collect his private browsing activity. Plaintiff Brown did not consent to that interception and collection of his private browsing activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU have never indicated to Google that YOU did not agree to the GOOGLE PRIVACY POLICY.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Brown objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Brown further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Brown objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Brown further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, prior to filing this lawsuit, he did not indicate to Google that he did not agree to the then-current Google Privacy Policy. However, Google's Privacy Policy does not disclose Google's alleged data collection while users are in private browsing mode, and he never consented to Google's interception and collection

of his private browsing activity. Plaintiff Brown further states that the filing of this lawsuit put Google on notice that its continued interception and collection of his and Class Members' private browsing activity is without consent and contrary to the law. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the GOOGLE PRIVACY POLICY discloses that Google collects through its SERVICES the categories of Data that YOUR FAC alleges Google illegally "intercepted." *See, e.g.*, FAC ¶¶ 202-17.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that each GOOGLE PRIVACY POLICY YOU reviewed disclosed that Google collects information about users' visits to websites that use Google's services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the GOOGLE PRIVACY POLICY does not represent that using private browsing mode will prevent Google from receiving information through its SERVICES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that, during the CLASS PERIOD, YOU were aware that "Google collects information about the web-browsing activity of users who are <u>not</u> in 'private browsing mode.'" *See* FAC ¶ 163.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Plaintiff Brown admits that he was aware that Google was online collecting data sometimes, when he was not browsing in private mode, but did not understand exactly how. Otherwise denied.

**REQUEST FOR ADMISSION NO. 9:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that the websites may record data associated with your visit (for example, on the websites' servers), including the webpages YOU viewed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied.

**REQUEST FOR ADMISSION NO. 10:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be recorded by the websites (for example, on the websites' servers).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be visible to YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Denied.

**REQUEST FOR ADMISSION NO. 12:**

Admit that, during the CLASS PERIOD, you understood the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege YOU reviewed did not mean that your internet browsing activity would be completely private from everyone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Plaintiff Brown admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites, his employer or school, and/or his internet service provider. Plaintiff Brown did not, however, consent to Google's interception of that activity. Otherwise denied.

**REQUEST FOR ADMISSION NO. 13:**

Admit that when YOU browsed the web in Incognito mode, YOU understood that cookies could still be placed on YOUR browser and would be deleted when YOU closed YOUR Incognito window or tab.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied.

**REQUEST FOR ADMISSION NO. 14:**

Admit that, when YOU browsed the web in Incognito mode, YOU understood that YOUR activity might still be visible to the websites YOU visited and YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Plaintiff Brown admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites. Plaintiff Brown further admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to his internet service provider. Plaintiff Brown did not, however, consent to Google's interception of that activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the INCOGNITO NOTICE does not represent that Incognito mode prevents Google from collecting the information that you allege Google illegally "intercepted."

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU became "aware that [YOU are] able to sell [YOUR] own personal data, via other websites such as Killi," *see* FAC ¶¶ 170,175, 180, 185, 190, only after YOU retained YOUR counsel in this action.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Google's alleged conduct has not affected YOUR alleged ability "to sell [YOUR] own personal data, via other websites such as Killi." *See* FAC ¶¶ 170, 175, 180, 185, 190.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU did not download and install Google's Analytics Opt-Out Browser Add-on available at https://tools.google.com/dlpage/gaoptout.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Plaintiff Brown objects to this Request to the extent it purports to suggest that either downloading and/or installing Google's Analytics Opt-Out Browser Add-on is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need to download and/or install Google's Analytics Opt-Out Browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Brown admits that he did not download or install Google's Analytics Opt-Out Browser Add-on, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU did not change the default cookie settings on your browser.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Plaintiff Brown objects to this Request to the extent it purports to suggest that review of changing the "default cookie settings" on the browser is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need to change the "default cookie settings" on their browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Brown admits that he did not change the "default cookie settings" on his browser, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU did not opt out of ad personalization at https://adssettings.google.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Plaintiff Brown objects to this Request to the extent it purports to suggest that opting out of ad personalization at https://adssettings.google.com is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Brown's (and class members') private browsing information would not be collected by Google. Users did not need to opt out of ad personalization at https://adssettings.google.com to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Brown admits that he did not opt out of ad personalization at https://adssettings.google.com, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU did not retain any information identifying the cookies Google allegedly set on your browser while YOU were private browsing.

1
2

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

3

      While browsing privately, Plaintiff Brown admits that he was not aware that Google was

4

placing cookies on his browser, therefore Plaintiff Brown could not have retained any information

5

identifying the cookies Google placed. Plaintiff Brown's claims are about Google Analytics. Any

6

cookie data that is collected by Google would be in Google's possession, and not on Plaintiff

7

Brown's devices. Regardless, Google has yet to disclose to Plaintiff Brown how exactly it is

8

collecting and using Plaintiff Brown's data in private browsing. Otherwise denied.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: May 24, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**<u>PROOF OF SERVICE</u>**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 24, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's Second Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on May 24, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on May 24, 2021, at Tampa, Florida.

*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 6

# PLAINTIFF WILLIAM BYATT'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION

1

2

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

3

4

5

6

7

8

9

10

11

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No.  5:20-cv-03664-LHK-SVK |

12

13

**PLAINTIFF WILLIAM BYATT'S AMENDED OBJECTIONS AND RESPONSES
TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION**

14

15

16

17

18

19

20

Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff William Byatt ("Byatt") hereby objects and responds to Defendant's, Google LLC ("Google"), Second Set of Requests for Admission (Nos. 2–21). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Byatt's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Byatt may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Byatt reserves all rights to supplement and amend his objections and responses accordingly.

21

**REQUEST FOR ADMISSION NO. 2:**

22

23

24

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU indicated to Google that YOU agreed to Google's then-current TERMS OF SERVICE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

25

26

27

28

Plaintiff Byatt objects to this Request as vague and overly broad to the extent Google relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Byatt cannot be expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to in this

Request. Plaintiff Byatt further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google's representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Plaintiff Byatt objects to this Request as vague and overly broad to the extent Google relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Byatt cannot be expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to in this Request. Plaintiff Byatt further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this

litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Terms of Service, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and did he not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU reviewed the GOOGLE PRIVACY POLICY before you first used INCOGNITO MODE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Byatt objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Byatt further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing,

and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Byatt objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Byatt further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not

need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that he believes that he reviewed the then-current Google Privacy Policy before he first used Incognito Mode, and he recalls reviewing the Incognito Splash Screen before he first used Incognito Mode and each time thereafter, and neither the Google Privacy Policy nor the Incognito Splash Screen stated that Google would intercept and collect his private browsing activity. Plaintiff Byatt did not consent to that interception and collection of his private browsing activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU have never indicated to Google that YOU did not agree to the GOOGLE PRIVACY POLICY.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Byatt objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Byatt further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Byatt objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Byatt further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, prior to discovering this lawsuit, Plaintiff Byatt did not indicate to Google that he did not agree to the then-current Google Privacy Policy. However, Google's Privacy Policy does not disclose Google's alleged data collection while users are in private browsing mode, and he never consented to

Google's interception and collection of his private browsing activity. Plaintiff Byatt further states that this lawsuit put Google on notice that its continued interception and collection of his and Class Members' private browsing activity is without consent and contrary to the law. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the GOOGLE PRIVACY POLICY discloses that Google collects through its SERVICES the categories of Data that YOUR FAC alleges Google illegally "intercepted." *See, e.g.*, FAC ¶¶ 202-17.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that each GOOGLE PRIVACY POLICY YOU reviewed disclosed that Google collects information about users' visits to websites that use Google's services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the GOOGLE PRIVACY POLICY does not represent that using private browsing mode will prevent Google from receiving information through its SERVICES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that, during the CLASS PERIOD, YOU were aware that "Google collects information about the web-browsing activity of users who are <u>not</u> in 'private browsing mode.'" *See* FAC ¶ 163.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Plaintiff Byatt admits that he was aware that Google was online collecting data sometimes, when he was not browsing in private mode, but did not understand exactly how. Otherwise denied.

**REQUEST FOR ADMISSION NO. 9:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that the websites may record data associated with your visit (for example, on the websites' servers), including the webpages YOU viewed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied.

**REQUEST FOR ADMISSION NO. 10:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be recorded by the websites (for example, on the websites' servers).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be visible to YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Denied.

**REQUEST FOR ADMISSION NO. 12:**

Admit that, during the CLASS PERIOD, you understood the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege YOU reviewed did not mean that your internet browsing activity would be completely private from everyone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Plaintiff Byatt admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites, his employer or school, and/or his internet service provider. Plaintiff Byatt did not, however, consent to Google's interception of that activity. Otherwise denied.

**REQUEST FOR ADMISSION NO. 13:**

Admit that when YOU browsed the web in Incognito mode, YOU understood that cookies could still be placed on YOUR browser and would be deleted when YOU closed YOUR Incognito window or tab.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied.

**REQUEST FOR ADMISSION NO. 14:**

Admit that, when YOU browsed the web in Incognito mode, YOU understood that YOUR activity might still be visible to the websites YOU visited and YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Plaintiff Byatt admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites. Plaintiff Byatt further admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to his internet service provider. Plaintiff Byatt did not, however, consent to Google's interception of that activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the INCOGNITO NOTICE does not represent that Incognito mode prevents Google from collecting the information that you allege Google illegally "intercepted."

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU became "aware that [YOU are] able to sell [YOUR] own personal data, via other websites such as Killi," *see* FAC ¶¶ 170,175, 180, 185, 190, only after YOU retained YOUR counsel in this action.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Google's alleged conduct has not affected YOUR alleged ability "to sell [YOUR] own personal data, via other websites such as Killi." *See* FAC ¶¶ 170, 175, 180, 185, 190.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU did not download and install Google's Analytics Opt-Out Browser Add-on available at https://tools.google.com/dlpage/gaoptout.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Plaintiff Byatt objects to this Request to the extent it purports to suggest that either downloading and/or installing Google's Analytics Opt-Out Browser Add-on is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need to download and/or install Google's Analytics Opt-Out Browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that he did not download or install Google's Analytics Opt-Out Browser Add-on, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU did not change the default cookie settings on your browser.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Plaintiff Byatt objects to this Request to the extent it purports to suggest that review of changing the "default cookie settings" on the browser is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need to change the "default cookie settings" on their browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that he did not change the "default cookie settings" on his browser, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU did not opt out of ad personalization at https://adssettings.google.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Plaintiff Byatt objects to this Request to the extent it purports to suggest that opting out of ad personalization at https://adssettings.google.com is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Byatt's (and class members') private browsing information would not be collected by Google. Users did not need to opt out of ad personalization at https://adssettings.google.com to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that he did not opt out of ad personalization at https://adssettings.google.com, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU did not retain any information identifying the cookies Google allegedly set on your browser while YOU were private browsing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

While browsing privately, Plaintiff Byatt admits that he was not aware that Google was placing cookies on his browser, therefore Plaintiff Byatt could not have retained any information identifying the cookies Google placed. Plaintiff Byatt's claims are about Google Analytics. Any cookie data that is collected by Google would be in Google's possession, and not on Plaintiff Byatt's devices. Regardless, Google has yet to disclose to Plaintiff Byatt how exactly it is collecting and using Plaintiff Byatt's data in private browsing. Otherwise denied.

Dated: May 24, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 24, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's Second Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on May 24, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

      Executed on May 24, 2021, at Tampa, Florida.


          */s/ Jennifer Cabezas*
          Jennifer Cabezas

# EXHIBIT 7

# PLAINTIFF CHRISTOPHER CASTILLO'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

Case No.  5:20-cv-03664-LHK-SVK

6

Plaintiffs,

7

v.

8

GOOGLE LLC,

9

Defendant.

10
11
12

**PLAINTIFF CHRISTOPHER CASTILLO'S AMENDED OBJECTIONS AND**
**RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION**

13
14

Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff Christopher Castillo

15

("Castillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Second Set of

16

Requests for Admission (Nos. 2–21). These objections and responses are made solely for the

17

purpose of and in relation to this action. In addition, the objections and responses set forth in this

18

document are based on Plaintiff Castillo's knowledge, investigations, and analysis to date. As

19

discovery proceeds, Plaintiff Castillo may become aware of additional facts or evidence and his

20

analysis of the case may change. Plaintiff Castillo reserves all rights to supplement and amend his

21

objections and responses accordingly.

22

**REQUEST FOR ADMISSION NO. 2:**

23

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU indicated to

24

Google that YOU agreed to Google's then-current TERMS OF SERVICE.

25

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

26

Plaintiff Castillo objects to this Request as vague and overly broad to the extent Google

27

relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Castillo cannot be

28

expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to

in this Request. Plaintiff Castillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google's representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Plaintiff Castillo objects to this Request as vague and overly broad to the extent Google relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Castillo cannot be expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to in this Request. Plaintiff Castillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this

litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Terms of Service, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and did he not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU reviewed the GOOGLE PRIVACY POLICY before you first used INCOGNITO MODE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Castillo objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Castillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from,

analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Castillo objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Castillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google.

Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that he believes that he reviewed the then-current Google Privacy Policy before he first used Incognito Mode, and he recalls reviewing the Incognito Splash Screen before he first used Incognito Mode and each time thereafter, and neither the Google Privacy Policy nor the Incognito Splash Screen stated that Google would intercept and collect his private browsing activity. Plaintiff Castillo did not consent to that interception and collection of his private browsing activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU have never indicated to Google that YOU did not agree to the GOOGLE PRIVACY POLICY.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Castillo objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Castillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Castillo objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Castillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, prior to discovering this lawsuit, Plaintiff Castillo did not indicate to Google that he did not agree to the then-current Google Privacy Policy. However, Google's Privacy Policy does not disclose Google's alleged data collection while users are in private browsing mode, and he never consented to

Google's interception and collection of his private browsing activity. Plaintiff Castillo further states that this lawsuit put Google on notice that its continued interception and collection of his and Class Members' private browsing activity is without consent and contrary to the law. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the GOOGLE PRIVACY POLICY discloses that Google collects through its SERVICES the categories of Data that YOUR FAC alleges Google illegally "intercepted." *See, e.g.*, FAC ¶¶ 202-17.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that each GOOGLE PRIVACY POLICY YOU reviewed disclosed that Google collects information about users' visits to websites that use Google's services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the GOOGLE PRIVACY POLICY does not represent that using private browsing mode will prevent Google from receiving information through its SERVICES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that, during the CLASS PERIOD, YOU were aware that "Google collects information about the web-browsing activity of users who are not in 'private browsing mode.'" *See* FAC ¶ 163.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Plaintiff Castillo admits that he was aware that Google was online collecting data sometimes, when he was not browsing in private mode, but did not understand exactly how. Otherwise denied.

**REQUEST FOR ADMISSION NO. 9:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that the websites may record data associated with your visit (for example, on the websites' servers), including the webpages YOU viewed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied.

**REQUEST FOR ADMISSION NO. 10:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be recorded by the websites (for example, on the websites' servers).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be visible to YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Denied.

**REQUEST FOR ADMISSION NO. 12:**

Admit that, during the CLASS PERIOD, you understood the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege YOU reviewed did not mean that your internet browsing activity would be completely private from everyone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Plaintiff Castillo admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites, his employer or school, and/or his internet service provider. Plaintiff Castillo did not, however, consent to Google's interception of that activity. Otherwise denied.

**REQUEST FOR ADMISSION NO. 13:**

Admit that when YOU browsed the web in Incognito mode, YOU understood that cookies could still be placed on YOUR browser and would be deleted when YOU closed YOUR Incognito window or tab.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied.

**REQUEST FOR ADMISSION NO. 14:**

Admit that, when YOU browsed the web in Incognito mode, YOU understood that YOUR activity might still be visible to the websites YOU visited and YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Plaintiff Castillo admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites. Plaintiff Castillo further admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to his internet service provider. Plaintiff Castillo did not, however, consent to Google's interception of that activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the INCOGNITO NOTICE does not represent that Incognito mode prevents Google from collecting the information that you allege Google illegally "intercepted."

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU became "aware that [YOU are] able to sell [YOUR] own personal data, via other websites such as Killi," *see* FAC ¶¶ 170,175, 180, 185, 190, only after YOU retained YOUR counsel in this action.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Google's alleged conduct has not affected YOUR alleged ability "to sell [YOUR] own personal data, via other websites such as Killi." *See* FAC ¶¶ 170, 175, 180, 185, 190.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU did not download and install Google's Analytics Opt-Out Browser Add-on available at https://tools.google.com/dlpage/gaoptout.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Plaintiff Castillo objects to this Request to the extent it purports to suggest that either downloading and/or installing Google's Analytics Opt-Out Browser Add-on is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need to download and/or install Google's Analytics Opt-Out Browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that he did not download or install Google's Analytics Opt-Out Browser Add-on, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU did not change the default cookie settings on your browser.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Plaintiff Castillo objects to this Request to the extent it purports to suggest that review of changing the "default cookie settings" on the browser is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need to change the "default cookie settings" on their browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that he did not change the "default cookie settings" on his browser, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU did not opt out of ad personalization at https://adssettings.google.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Plaintiff Castillo objects to this Request to the extent it purports to suggest that opting out of ad personalization at https://adssettings.google.com is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Castillo's (and class members') private browsing information would not be collected by Google. Users did not need to opt out of ad personalization at https://adssettings.google.com to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that he did not opt out of ad personalization at https://adssettings.google.com, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU did not retain any information identifying the cookies Google allegedly set on your browser while YOU were private browsing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

While browsing privately, Plaintiff Castillo admits that he was not aware that Google was placing cookies on his browser, therefore Plaintiff Castillo could not have retained any information identifying the cookies Google placed. Plaintiff Castillo's claims are about Google Analytics. Any cookie data that is collected by Google would be in Google's possession, and not on Plaintiff Castillo's devices. Regardless, Google has yet to disclose to Plaintiff Castillo how exactly it is collecting and using Plaintiff Castillo's data in private browsing. Otherwise denied.

Dated: May 24, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 24, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's Second Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on May 24, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

      Executed on May 24, 2021, at Tampa, Florida.


              */s/ Jennifer Cabezas*
              Jennifer Cabezas

# EXHIBIT 8

# PLAINTIFF JEREMY DAVIS' AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

               Plaintiffs,

   v.

GOOGLE LLC,

               Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF JEREMY DAVIS' AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION**

14
15
16
17
18
19
20
21

Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff Jeremy Davis ("Davis") hereby objects and responds to Defendant's, Google LLC ("Google"), Second Set of Requests for Admission (Nos. 2–21). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Davis' knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Davis may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Davis reserves all rights to supplement and amend his objections and responses accordingly.

22

**REQUEST FOR ADMISSION NO. 2:**

23
24

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU indicated to Google that YOU agreed to Google's then-current TERMS OF SERVICE.

25

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

26
27
28

Plaintiff Davis objects to this Request as vague and overly broad to the extent Google relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Davis cannot be expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to in this

Request. Plaintiff Davis further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google's representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint, which made clear that he was in "control" of what information Google collects. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Plaintiff Davis objects to this Request as vague and overly broad to the extent Google relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Davis cannot be expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to in this Request. Plaintiff Davis further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Terms of Service, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and did he not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU reviewed the GOOGLE PRIVACY POLICY before you first used INCOGNITO MODE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Davis objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Davis further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito

private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Davis objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Davis further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best

of Plaintiff Davis' knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that he believes that he reviewed the then-current Google Privacy Policy before he first used Incognito Mode, and he recalls reviewing the Incognito Splash Screen before he first used Incognito Mode and each time thereafter, and neither the Google Privacy Policy nor the Incognito Splash Screen stated that Google would intercept and collect his private browsing activity. Plaintiff Davis did not consent to that interception and collection of his private browsing activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU have never indicated to Google that YOU did not agree to the GOOGLE PRIVACY POLICY.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Davis objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Davis further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations

that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. To the extent Google's defined "Google Privacy Policy" is applicable, it did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise Denied.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Davis objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Davis further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, prior to discovering this lawsuit, Plaintiff Davis did not indicate to Google that he did not agree to the then-current Google Privacy Policy. However, Google's Privacy Policy does not disclose Google's alleged data collection while users are in private browsing mode, and he never consented to Google's interception and collection of his private browsing activity. Plaintiff Davis further states

that this lawsuit put Google on notice that its continued interception and collection of his and Class Members' private browsing activity is without consent and contrary to the law. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the GOOGLE PRIVACY POLICY discloses that Google collects through its SERVICES the categories of Data that YOUR FAC alleges Google illegally "intercepted." *See, e.g.*, FAC ¶¶ 202-17.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that each GOOGLE PRIVACY POLICY YOU reviewed disclosed that Google collects information about users' visits to websites that use Google's services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the GOOGLE PRIVACY POLICY does not represent that using private browsing mode will prevent Google from receiving information through its SERVICES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that, during the CLASS PERIOD, YOU were aware that "Google collects information about the web-browsing activity of users who are <u>not</u> in 'private browsing mode.'" *See* FAC ¶ 163.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Plaintiff Davis admits that he was aware that Google was online collecting data sometimes, when he was not browsing in private mode, but did not understand exactly how. Otherwise denied.

**REQUEST FOR ADMISSION NO. 9:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that the websites may record data associated with your visit (for example, on the websites' servers), including the webpages YOU viewed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied.

**REQUEST FOR ADMISSION NO. 10:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be recorded by the websites (for example, on the websites' servers).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be visible to YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Denied.

**REQUEST FOR ADMISSION NO. 12:**

Admit that, during the CLASS PERIOD, you understood the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege YOU reviewed did not mean that your internet browsing activity would be completely private from everyone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Plaintiff Davis admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites, his employer or school, and/or his internet service provider. Plaintiff Davis did not, however, consent to Google's interception of that activity. Otherwise denied.

**REQUEST FOR ADMISSION NO. 13:**

Admit that when YOU browsed the web in Incognito mode, YOU understood that cookies could still be placed on YOUR browser and would be deleted when YOU closed YOUR Incognito window or tab.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied.

**REQUEST FOR ADMISSION NO. 14:**

Admit that, when YOU browsed the web in Incognito mode, YOU understood that YOUR activity might still be visible to the websites YOU visited and YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Plaintiff Davis admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to those websites. Plaintiff Davis further admits that, when he visited websites using Chrome in Incognito mode, his activity might still be visible to his internet service provider. Plaintiff Davis did not, however, consent to Google's interception of that activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the INCOGNITO NOTICE does not represent that Incognito mode prevents Google from collecting the information that you allege Google illegally "intercepted."

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU became "aware that [YOU are] able to sell [YOUR] own personal data, via other websites such as Killi," *see* FAC ¶¶ 170,175, 180, 185, 190, only after YOU retained YOUR counsel in this action.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Google's alleged conduct has not affected YOUR alleged ability "to sell [YOUR] own personal data, via other websites such as Killi." *See* FAC ¶¶ 170, 175, 180, 185, 190.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU did not download and install Google's Analytics Opt-Out Browser Add-on available at https://tools.google.com/dlpage/gaoptout.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Plaintiff Davis objects to this Request to the extent it purports to suggest that either downloading and/or installing Google's Analytics Opt-Out Browser Add-on is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need to download and/or install Google's Analytics Opt-Out Browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Davis admits that he did not download or install Google's Analytics Opt-Out Browser Add-on, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU did not change the default cookie settings on your browser.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Plaintiff Davis objects to this Request to the extent it purports to suggest that review of changing the "default cookie settings" on the browser is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need to change the "default cookie settings" on their browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Davis admits that he did not change the "default cookie settings" on his browser, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU did not opt out of ad personalization at https://adssettings.google.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Plaintiff Davis objects to this Request to the extent it purports to suggest that opting out of ad personalization at https://adssettings.google.com is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Davis' (and class members') private browsing information would not be collected by Google. Users did not need to opt out of ad personalization at https://adssettings.google.com to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Davis admits that he did not opt out of ad personalization at https://adssettings.google.com, but this did not provide consent to Google's conduct alleged in the First Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU did not retain any information identifying the cookies Google allegedly set on your browser while YOU were private browsing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

While browsing privately, Plaintiff Davis admits that he was not aware that Google was placing cookies on his browser, therefore Plaintiff Davis could not have retained any information identifying the cookies Google placed. Plaintiff Davis' claims are about Google Analytics. Any cookie data that is collected by Google would be in Google's possession, and not on Plaintiff Davis' devices. Regardless, Google has yet to disclose to Plaintiff Davis how exactly it is collecting and using Plaintiff Davis' data in private browsing. Otherwise denied.

1   Dated: May 24, 2021            **MORGAN & MORGAN**

2                                  */s/ John A. Yanchunis*

3                                  John A. Yanchunis (*pro hac vice*)
                                    Ryan J. McGee (*pro hac vice*)
4                                  **MORGAN & MORGAN**
                                    201 N. Franklin Street, 7th Floor
5                                  Tampa, FL 33602
                                    Tel.: (813) 223-5505
6                                  Fax: (813) 222-4736
                                    jyanchunis@forthepeople.com
7                                  rmcgee@forthepeople.com

8                                  Mark C. Mao, CA Bar No. 236165
                                    Sean P. Rodriguez, CA Bar No. 262437
9                                  Beko Richardson, CA Bar No. 238027
                                    **BOIES SCHILLER FLEXNER LLP**
10                                 44 Montgomery St., 41st Floor
                                    San Francisco, CA 94104
11                                 Tel.: (415) 293-6800
                                    Fax: (415) 293-6899
12                                 mmao@bsfllp.com
                                    srodriguez@bsfllp.com
13                                 brichardson@bsfllp.com

14                                 James Lee (admitted *pro hac vice*)
                                    Rossana Baeza (admitted *pro hac vice*)
15                                 **BOIES SCHILLER FLEXNER LLP**
                                    100 SE 2nd St., 28th Floor
16                                 Miami, FL 33131
                                    Tel.: (305) 539-8400
17                                 Fax: (303) 539-1307
                                    jlee@bsfllp.com
18                                 rbaeza@bsfllp.com

19                                 William S. Carmody
                                    Shawn Rabin
20                                 Steven M. Shepard
                                    **SUSMAN GODFREY L.L.P.**
21                                 1301 Avenue of the Americas, 32nd Floor
                                    New York, New York 10019-6023
22                                 Telephone: (212) 336-8330
                                    Facsimile: (212) 336-8340
23

24                                 Amanda K. Bonn (270891)
                                    **SUSMAN GODFREY L.L.P.**
25                                 1900 Avenue of the Stars, Suite 1400
                                    Los Angeles, California 90067
26                                 Telephone: (310) 789-3100
                                    Facsimile: (310) 789-3150
27

28                                 *Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 24, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's Second Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on May 24, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on May 24, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 9

# PLAINTIFF MONIQUE TRUJILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST AND SECOND SET OF REQUESTS FOR ADMISSION

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

               Plaintiffs,

   v.

GOOGLE LLC,

               Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF MONIQUE TRUJILLO'S OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S FIRST AND SECOND SETS OF REQUESTS FOR ADMISSION**

14
15
16
17
18
19
20

Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff Monique Trujillo ("Trujillo") hereby objects and responds to Defendant's, Google LLC ("Google"), First and Second Sets of Requests for Admission (Nos. 1–21). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Trujillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Trujillo may become aware of additional facts or evidence and her analysis of the case may change. Plaintiff Trujillo reserves all rights to supplement and amend her objections and responses accordingly.

21

**REQUEST FOR ADMISSION NO. 1:**

22
23
24

Admit that, when YOU signed up for YOUR Google Account, YOU reviewed and consented to the GOOGLE PRIVACY POLICY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

25
26
27
28

Plaintiff Trujillo objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting,

collecting data from, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Trujillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Trujillo's knowledge, she has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that, when she opened her Google Account, although she does not recall exact details of the then-current Privacy Policy, she reviewed and generally consented to the then-current Privacy Policy, and she recalls the disclosures in the Privacy Policy promising that Google would not intercept and collect her private browsing activity, and she did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 2:**

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU indicated to Google that YOU agreed to Google's then-current TERMS OF SERVICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Plaintiff Trujillo objects to this Request as vague and overly broad to the extent Google relies on the undefined, capitalized term "TERMS OF SERVICE," as Plaintiff Trujillo cannot be expected to guess or speculate as to which "TERMS OF SERVICE" Google might be referring to in this Request. Plaintiff Trujillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Terms of Service is a necessary predicate for any claim in this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Trujillo's (and class members') private browsing

information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Trujillo's knowledge, she has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that, when she signed up for her Google Account, although she does not recall the exact details of the then-current Terms of Service, she indicated to Google that she generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and she recalls the disclosures promising that Google would not intercept and collect her private browsing activity, and did she not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU reviewed the GOOGLE PRIVACY POLICY before you first used INCOGNITO MODE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff Trujillo objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Trujillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Trujillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise.

Further, to the best of Plaintiff Trujillo's knowledge, she has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that she is not sure whether she reviewed the then-current Google Privacy Policy before she first used Incognito Mode, but she did review the Incognito Splash Screen before she first used Incognito Mode and each time thereafter, which did not state that Google would intercept and collect her private browsing activity. Plaintiff Trujillo did not consent to that interception and collection of her private browsing activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU have never indicated to Google that YOU did not agree to the GOOGLE PRIVACY POLICY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff Trujillo objects to this Request as vague and overly broad to the extent Google has defined the GOOGLE PRIVACY POLICY to include the policy available at https://policies.google.com/privacy "and any prior version of this policy." Plaintiff Trujillo further objects to this Request to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Trujillo's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff Trujillo's knowledge, she has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that, prior to filing this lawsuit, she did not indicate to Google that she did not agree to the then-current Google

Privacy Policy. However, Google's Privacy Policy does not disclose Google's alleged data collection while users are in private browsing mode, and she never consented to Google's interception and collection of her private browsing activity. Plaintiff Trujillo further states that this lawsuit put Google on notice that its continued interception and collection of her and Class Members' private browsing activity is without consent and contrary to the law. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the GOOGLE PRIVACY POLICY discloses that Google collects through its SERVICES the categories of Data that YOUR SAC alleges Google illegally "intercepted." *See, e.g.*, SAC ¶¶ 202-17.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that each GOOGLE PRIVACY POLICY YOU reviewed disclosed that Google collects information about users' visits to websites that use Google's services.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the GOOGLE PRIVACY POLICY does not represent that using private browsing mode will prevent Google from receiving information through its SERVICES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that, during the CLASS PERIOD, YOU were aware that "Google collects information about the web-browsing activity of users who are not in 'private browsing mode.'" *See* SAC ¶ 163.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Plaintiff Trujillo admits that she was aware that Google was online collecting data sometimes, when she was not browsing in private mode, but did not understand exactly how. Otherwise denied.

**REQUEST FOR ADMISSION NO. 9:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that the websites may record data associated with your visit (for example, on the websites' servers), including the webpages YOU viewed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied.

**REQUEST FOR ADMISSION NO. 10:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be recorded by the websites (for example, on the websites' servers).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that, when YOU visited websites using Chrome in Incognito mode, YOU were aware that your alleged COMMUNICATIONS with the websites might be visible to YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Denied.

**REQUEST FOR ADMISSION NO. 12:**

Admit that, during the CLASS PERIOD, you understood the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege YOU reviewed did not mean that your internet browsing activity would be completely private from everyone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Plaintiff Trujillo admits that, when she visited websites using Chrome in Incognito mode, her activity might still be visible to those websites, her employer or school, and/or her internet service provider. Plaintiff Trujillo did not, however, consent to Google's interception of that activity. Otherwise denied.

**REQUEST FOR ADMISSION NO. 13:**

Admit that when YOU browsed the web in Incognito mode, YOU understood that cookies could still be placed on YOUR browser and would be deleted when YOU closed YOUR Incognito window or tab.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied.

**REQUEST FOR ADMISSION NO. 14:**

Admit that, when YOU browsed the web in Incognito mode, YOU understood that YOUR activity might still be visible to the websites YOU visited and YOUR internet service provider.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Plaintiff Trujillo admits that, when she visited websites using Chrome in Incognito mode, her activity might still be visible to those websites. Plaintiff Trujillo further admits that, when she visited websites using Chrome in Incognito mode, her activity might still be visible to her internet service provider. Plaintiff Trujillo did not, however, consent to Google's interception of that activity. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the INCOGNITO NOTICE does not represent that Incognito mode prevents Google from collecting the information that you allege Google illegally "intercepted."

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU became "aware that [YOU are] able to sell [YOUR] own personal data, via other websites such as Killi," *see* SAC ¶¶ 170,175, 180, 185, 190, only after YOU retained YOUR counsel in this action.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Google's alleged conduct has not affected YOUR alleged ability "to sell [YOUR] own personal data, via other websites such as Killi." *See* SAC ¶¶ 170, 175, 180, 185, 190.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU did not download and install Google's Analytics Opt-Out Browser Add-on available at https://tools.google.com/dlpage/gaoptout.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Plaintiff Trujillo objects to this Request to the extent it purports to suggest that either downloading and/or installing Google's Analytics Opt-Out Browser Add-on is a necessary predicate for any claim in this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Trujillo's (and class members') private browsing information would not be collected by Google. Users did not need to download and/or install Google's Analytics Opt-Out Browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that she did not download or install Google's Analytics Opt-Out Browser Add-on, but this did not provide consent to Google's conduct alleged in the Second Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU did not change the default cookie settings on your browser.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Plaintiff Trujillo objects to this Request to the extent it purports to suggest that review of changing the "default cookie settings" on the browser is a necessary predicate for any claim in this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Trujillo's (and class members') private browsing information would not be collected by Google. Users did not need to change the "default cookie settings" on their browser to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that she did not change the "default cookie settings" on her browser, but this did not provide consent to Google's conduct alleged in the Second Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU did not opt out of ad personalization at https://adssettings.google.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Plaintiff Trujillo objects to this Request to the extent it purports to suggest that opting out of ad personalization at https://adssettings.google.com is a necessary predicate for any claim in this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff Trujillo's (and class members') private browsing information would not be collected by Google. Users did not need to opt out of ad personalization at https://adssettings.google.com to browse privately, using Incognito mode or otherwise.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that she did not opt out of ad personalization at https://adssettings.google.com, but this did not provide consent to Google's conduct alleged in the Second Amended Complaint. Otherwise denied.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU did not retain any information identifying the cookies Google allegedly set on your browser while YOU were private browsing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

While browsing privately, Plaintiff Trujillo admits that she was not aware that Google was placing cookies on her browser, therefore Plaintiff Trujillo could not have retained any information identifying the cookies Google placed. Plaintiff Trujillo's claims are about Google Analytics. Any cookie data that is collected by Google would be in Google's possession, and not on Plaintiff Trujillo's devices. Regardless, Google has yet to disclose to Plaintiff Trujillo how exactly it is collecting and using Plaintiff Trujillo's data in private browsing. Otherwise denied.

Dated: June 7, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

1

## **PROOF OF SERVICE**

2    I, Ryan J. McGee, declare:

3    I am a citizen of the United States and employed in the County of Hillsborough, Florida. I

4    am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin

5    St., 7th Floor, Tampa, FL 33602.

6    On June 7, 2021, I served the following document described as:

7    **Plaintiff's Objections and Responses to Defendant's First and Second Sets of Requests**

8    **for Admission**

9    By electronic mail transmission from rmcgee@forthepeople.com on June 7, 2021, by

10    transmitting a PDF format copy of such document to each person at the e-mail addresses listed

11    below. The document was transmitted by electronic transmission and such transmission was

12    reported as complete and without error:

13

14    Andrew H. Schapiro (pro hac vice)
      Quinn Emanuel Urquhart & Sullivan, LLP

15    191 N. Wacker Drive, Suite 2700
      Chicago, IL 60606

16    Tel: 312-705-7400
      Fax: 312-705-7401

17    andrewschapiro@quinnemanuel.com

18    *Attorney for Defendant*

19
      Stephen A. Broome
20    Viola Trebicka
      Quinn Emanuel Urquhart & Sullivan, LLP
21    865 S. Figueroa Street, 10th Floor
      Los Angeles, CA 90017
22    Tel: 213-443-3000
      Fax: 213-443-3100
23    stephenbroome@quinnemanuel.com
24    violatrebicka@quinnemanuel.com

25    *Attorneys for Defendant*

26    Diane M. Doolittle
27    Thao Thai
      Quinn Emanuel Urquhart & Sullivan, LLP
28    555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on June 7, 2021, at Tampa, Florida.


                    */s/ Ryan J. McGee*
                    Ryan J. McGee

# EXHIBIT 10

# PLAINTIFF CHASOM BROWN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S THIRD SET OF REQUESTS FOR PRODUCTION

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

               Plaintiffs,

   v.

GOOGLE LLC,

               Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF CHASOM BROWN'S OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION**

14
15
16
17
18
19
20
21

     Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff Chasom Brown ("Brown")
hereby objects and responds to Defendant's, Google LLC ("Google"), Third Set of Requests for
Admission (Nos. 22–29). These objections and responses are made solely for the purpose of and
in relation to this action. In addition, the objections and responses set forth in this document are
based on Plaintiff Brown's knowledge, investigations, and analysis to date. As discovery proceeds,
Plaintiff Brown may become aware of additional facts or evidence and his analysis of the case may
change. Plaintiff Brown reserves all rights to supplement and amend his objections and responses
accordingly.

22
23

**REQUEST FOR ADMISSION NO. 22:**

     Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the
terms of Google's then-current TERMS OF SERVICE.

24
25

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

26
27
28

     Plaintiff Brown objects to this Request to the extent it purports to suggest that agreement
to Google's Terms of Service is a necessary predicate for any claim in this litigation (aside from
breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Terms of Service, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 23:**

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current PRIVACY POLICY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Plaintiff Brown objects to this Request to the extent it purports to suggest that agreement to Google's Privacy Policy is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito

mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Privacy Policy, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 24:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME TERMS OF SERVICE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Plaintiff Brown admits that, when he used the Chrome browser, although he does not recall the exact details of the then-current Chrome Terms of Service, he indicated to Google that he generally agreed to Google's then-current Chrome Terms of Service, and he recalls Google's disclosures, including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 25:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME PRIVACY NOTICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Plaintiff Brown admits that, when he used the Chrome browser, although he does not recall the exact details of the then-current Chrome Privacy Notice, he indicated to Google that he generally agreed to Google's then-current Chrome Privacy Notice, and he recalls the disclosures,

including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU have never paid any money to Google to use CHROME.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Plaintiff Brown objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Brown responds that, to the best of his recollection, he has not directly paid any money to Google to use Chrome. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU have never paid any money to Google to use GMAIL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Plaintiff Brown objects to this Request as irrelevant, as Gmail is not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary

payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Brown responds that, to the best of his recollection, he has not directly paid any money to Google to use Gmail. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU have never paid any money to Google to use any SERVICES offered by Google.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Plaintiff Brown objects to the term "Services" insofar as it is irrelevant, vague, and ambiguous, as Google has defined it to include a non-exhaustive list of "Google apps, sites, and devices, like Search, YouTube, and Google Home, Google platforms like the Chrome browser and Android operating system, and Google products that are integrated into third-party apps and sites, like ads and embedded Google Maps." Plaintiff's use of YouTube, Maps, and other irrelevant "services" are not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their

respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Brown responds that, to the best of his recollection, he has not directly paid any money to Google to use services offered by Google. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 29:**

Admit that in YOUR GOOGLE ACCOUNT WEB & APP ACTIVITY SETTINGS, YOU consented to Google saving information about your activity on sites that use Google services in Your Google Account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Plaintiff Brown objects to this Request as irrelevant, as Web & App Activity is not at issue in this litigation. Otherwise denied.

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On July 30, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Third Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on July 30, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 11

# PLAINTIFF WILLIAM BYATT'S OBJECTIONS AND RESPONSES TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION

# Redacted Version of Document Sought to be Sealed

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

                Plaintiffs,

  v.

GOOGLE LLC,

                Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF WILLIAM BYATT'S OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION**

14
15
16
17
18
19
20
21

      Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff William Byatt ("Byatt") hereby objects and responds to Defendant's, Google LLC ("Google"), Third Set of Requests for Admission (Nos. 22–29). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Byatt's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Byatt may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Byatt reserves all rights to supplement and amend his objections and responses accordingly.

22
23
24

**REQUEST FOR ADMISSION NO. 22:**

      Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current TERMS OF SERVICE.

25
26
27
28

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

      Plaintiff Byatt objects to this Request to the extent it purports to suggest that agreement to Google's Terms of Service is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Terms of Service, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 23:**

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current PRIVACY POLICY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Plaintiff Byatt objects to this Request to the extent it purports to suggest that agreement to Google's Privacy Policy is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito

mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Privacy Policy, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 24:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME TERMS OF SERVICE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Plaintiff Byatt admits that, when he used the Chrome browser, although he does not recall the exact details of the then-current Chrome Terms of Service, he indicated to Google that he generally agreed to Google's then-current Chrome Terms of Service, and he recalls Google's disclosures, including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 25:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME PRIVACY NOTICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Plaintiff Byatt admits that, when he used the Chrome browser, although he does not recall the exact details of the then-current Chrome Privacy Notice, he indicated to Google that he generally agreed to Google's then-current Chrome Privacy Notice, and he recalls the disclosures,

including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU have never paid any money to Google to use CHROME.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Plaintiff Byatt objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that, to the best of his recollection, he has not directly paid any money to Google to use Chrome. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU have never paid any money to Google to use GMAIL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Plaintiff Byatt objects to this Request as irrelevant, as Gmail is not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary payment

to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that, to the best of his recollection, he has not directly paid any money to Google to use Gmail. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU have never paid any money to Google to use any SERVICES offered by Google.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Plaintiff Byatt objects to the term "Services" insofar as it is irrelevant, vague, and ambiguous, as Google has defined it to include a non-exhaustive list of "Google apps, sites, and devices, like Search, YouTube, and Google Home, Google platforms like the Chrome browser and Android operating system, and Google products that are integrated into third-party apps and sites, like ads and embedded Google Maps." Plaintiff's use of YouTube, Maps, and other irrelevant "services" are not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their

respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that, to the best of his recollection, he has paid to Google approximately ▮ per month for Google One (since approximately ▮▮▮▮▮ per month for YouTube Premium (since approximately ▮▮▮▮ as a Google Play Music subscriber, which was converted into a YouTube premium subscription in approximately ▮▮▮▮▮ and approximately ▮▮▮▮ per month for Google Fi (since approximately ▮▮▮▮ Additionally, Plaintiff has provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 29:**

Admit that in YOUR GOOGLE ACCOUNT WEB & APP ACTIVITY SETTINGS, YOU consented to Google saving information about your activity on sites that use Google services in Your Google Account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Plaintiff Byatt objects to this Request as irrelevant, as Web & App Activity is not at issue in this litigation. Otherwise denied.

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On July 30, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Third Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on July 30, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 12

# PLAINTIFF CHRISTOPHER CASTILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No.  5:20-cv-03664-LHK-SVK |

**PLAINTIFF CHRISTOPHER CASTILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff Christopher Castillo ("Castillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Third Set of Requests for Admission (Nos. 22–29). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Castillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Castillo may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Castillo reserves all rights to supplement and amend his objections and responses accordingly.

**REQUEST FOR ADMISSION NO. 22:**

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current TERMS OF SERVICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Plaintiff Castillo objects to this Request to the extent it purports to suggest that agreement to Google's Terms of Service is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Terms of Service, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 23:**

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current PRIVACY POLICY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Plaintiff Castillo objects to this Request to the extent it purports to suggest that agreement to Google's Privacy Policy is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito

mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Privacy Policy, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 24:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME TERMS OF SERVICE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Plaintiff Castillo admits that, when he used the Chrome browser, although he does not recall the exact details of the then-current Chrome Terms of Service, he indicated to Google that he generally agreed to Google's then-current Chrome Terms of Service, and he recalls Google's disclosures, including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 25:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME PRIVACY NOTICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Plaintiff Castillo admits that, when he used the Chrome browser, although he does not recall the exact details of the then-current Chrome Privacy Notice, he indicated to Google that he generally agreed to Google's then-current Chrome Privacy Notice, and he recalls the disclosures,

including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU have never paid any money to Google to use CHROME.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Plaintiff Castillo objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that, to the best of his recollection, he has not directly paid any money to Google to use Chrome. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU have never paid any money to Google to use GMAIL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Plaintiff Castillo objects to this Request as irrelevant, as Gmail is not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary

payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that, to the best of his recollection, he has not directly paid any money to Google to use Gmail. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU have never paid any money to Google to use any SERVICES offered by Google.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Plaintiff Castillo objects to the term "Services" insofar as it is irrelevant, vague, and ambiguous, as Google has defined it to include a non-exhaustive list of "Google apps, sites, and devices, like Search, YouTube, and Google Home, Google platforms like the Chrome browser and Android operating system, and Google products that are integrated into third-party apps and sites, like ads and embedded Google Maps." Plaintiff's use of YouTube, Maps, and other irrelevant "services" are not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their

respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that, to the best of his recollection, he has not directly paid any money to Google to use services offered by Google. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 29:**

Admit that in YOUR GOOGLE ACCOUNT WEB & APP ACTIVITY SETTINGS, YOU consented to Google saving information about your activity on sites that use Google services in Your Google Account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Plaintiff Castillo objects to this Request as irrelevant, as Web & App Activity is not at issue in this litigation. Otherwise denied.

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On July 30, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Third Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on July 30, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 13

# PLAINTIFF JEREMY DAVIS' OBJECTIONS AND RESPONSES TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION

1
2

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

              Plaintiffs,

   v.

GOOGLE LLC,

              Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF JEREMY DAVIS' OBJECTIONS AND RESPONSES
TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION**

14
15
16
17
18
19
20

Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff Jeremy Davis ("Davis") hereby objects and responds to Defendant's, Google LLC ("Google"), Third Set of Requests for Admission (Nos. 22–29). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Davis' knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Davis may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Davis reserves all rights to supplement and amend his objections and responses accordingly.

21

**REQUEST FOR ADMISSION NO. 22:**

22
23
24

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current TERMS OF SERVICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

25
26
27
28

Plaintiff Davis objects to this Request to the extent it purports to suggest that agreement to Google's Terms of Service is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Terms of Service, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 23:**

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current PRIVACY POLICY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Plaintiff Davis objects to this Request to the extent it purports to suggest that agreement to Google's Privacy Policy is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito

mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis admits that, when he signed up for his Google Account, although he does not recall the exact details of the then-current Privacy Policy, he indicated to Google that he generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 24:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME TERMS OF SERVICE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Plaintiff Davis admits that, when he used the Chrome browser, although he does not recall the exact details of the then-current Chrome Terms of Service, he indicated to Google that he generally agreed to Google's then-current Chrome Terms of Service, and he recalls Google's disclosures, including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 25:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME PRIVACY NOTICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Plaintiff Davis admits that, when he used the Chrome browser, although he does not recall the exact details of the then-current Chrome Privacy Notice, he indicated to Google that he generally agreed to Google's then-current Chrome Privacy Notice, and he recalls the disclosures,

including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU have never paid any money to Google to use CHROME.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Plaintiff Davis objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Davis responds that, to the best of his recollection, he has not directly paid any money to Google to use Chrome. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU have never paid any money to Google to use GMAIL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Plaintiff Davis objects to this Request as irrelevant, as Gmail is not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary payment

to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Davis responds that, to the best of his recollection, he has not directly paid any money to Google to use Gmail. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU have never paid any money to Google to use any SERVICES offered by Google.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Plaintiff Davis objects to the term "Services" insofar as it is irrelevant, vague, and ambiguous, as Google has defined it to include a non-exhaustive list of "Google apps, sites, and devices, like Search, YouTube, and Google Home, Google platforms like the Chrome browser and Android operating system, and Google products that are integrated into third-party apps and sites, like ads and embedded Google Maps." Plaintiff's use of YouTube, Maps, and other irrelevant "services" are not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their

respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Davis responds that, to the best of his recollection, he has not directly paid any money to Google to use services offered by Google. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 29:**

Admit that in YOUR GOOGLE ACCOUNT WEB & APP ACTIVITY SETTINGS, YOU consented to Google saving information about your activity on sites that use Google services in Your Google Account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Plaintiff Davis objects to this Request as irrelevant, as Web & App Activity is not at issue in this litigation. Otherwise denied.

1

Dated: July 30, 2021

**MORGAN & MORGAN**

2

*/s/ John A. Yanchunis*

3

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)

4

**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor

5

Tampa, FL 33602
Tel.: (813) 223-5505

6

Fax: (813) 222-4736
jyanchunis@forthepeople.com

7

rmcgee@forthepeople.com

8

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437

9

Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**

10

44 Montgomery St., 41st Floor
San Francisco, CA 94104

11

Tel.: (415) 293-6800
Fax: (415) 293-6899

12

mmao@bsfllp.com
srodriguez@bsfllp.com

13

brichardson@bsfllp.com

14

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)

15

**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor

16

Miami, FL 33131
Tel.: (305) 539-8400

17

Fax: (303) 539-1307
jlee@bsfllp.com

18

rbaeza@bsfllp.com

19

William S. Carmody
Shawn Rabin

20

Steven M. Shepard
**SUSMAN GODFREY L.L.P.**

21

1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023

22

Telephone: (212) 336-8330
Facsimile: (212) 336-8340

23

24

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**

25

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

26

Telephone: (310) 789-3100
Facsimile: (310) 789-3150

27

28

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On July 30, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Third Set of Requests for Admission**

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

     Executed on July 30, 2021, at Tampa, Florida.


               */s/ Jennifer Cabezas*
               Jennifer Cabezas

# EXHIBIT 14

# PLAINTIFF MONIQUE TRUJILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No.  5:20-cv-03664-LHK-SVK

**PLAINTIFF MONIQUE TRUJILLO'S OBJECTIONS AND RESPONSES
TO DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure Rule 36, Plaintiff Monique Trujillo ("Trujillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Third Set of Requests for Admission (Nos. 22–29). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Trujillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Trujillo may become aware of additional facts or evidence and her analysis of the case may change. Plaintiff Trujillo reserves all rights to supplement and amend her objections and responses accordingly.

**REQUEST FOR ADMISSION NO. 22:**

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current TERMS OF SERVICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Plaintiff Trujillo objects to this Request to the extent it purports to suggest that agreement to Google's Terms of Service is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that, when she signed up for her Google Account, although she does not recall the exact details of the then-current Terms of Service, she indicated to Google that she generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and she recalls the disclosures promising that Google would not intercept and collect her private browsing activity, and she did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 23:**

Admit that, when YOU signed up for YOUR GOOGLE ACCOUNT, YOU agreed to the terms of Google's then-current PRIVACY POLICY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Plaintiff Trujillo objects to this Request to the extent it purports to suggest that agreement to Google's Privacy Policy is a necessary predicate for any claim in this litigation (aside from breach of contract). Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito

mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Trujillo admits that, when she signed up for her Google Account, although she does not recall the exact details of the then-current Privacy Policy, she indicated to Google that she generally agreed to Google's then-current Terms of Service—which incorporates the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—and she recalls the disclosures promising that Google would not intercept and collect her private browsing activity, and she did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 24:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME TERMS OF SERVICE.

**ORIGINAL RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Plaintiff Trujillo admits that, when she used the Chrome browser, although she does not recall the exact details of the then-current Chrome Terms of Service, she indicated to Google that she generally agreed to Google's then-current Chrome Terms of Service, and she recalls Google's disclosures, including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect her private browsing activity, and she did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 25:**

Admit that, when YOU used the Chrome browser, YOU agreed to the terms of Google's then-current CHROME PRIVACY NOTICE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Plaintiff Trujillo admits that, when she used the Chrome browser, although she does not recall the exact details of the then-current Chrome Privacy Notice, she indicated to Google that she generally agreed to Google's then-current Chrome Privacy Notice, and she recalls the

disclosures, including Google's Terms of Service, Privacy Policy, Incognito Screen, and other disclosures promising that Google would not intercept and collect her private browsing activity, and she did not consent to that interception and collection. Otherwise Denied.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU have never paid any money to Google to use CHROME.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Plaintiff Trujillo objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that, to the best of her recollection, she has not directly paid any money to Google to use Chrome. Plaintiff has, however, provided valuable consideration in the form of her personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU have never paid any money to Google to use GMAIL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Plaintiff Trujillo objects to this Request as irrelevant, as Gmail is not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary

payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that, to the best of her recollection, she has not directly paid any money to Google to use Gmail. Plaintiff has, however, provided valuable consideration in the form of her personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU have never paid any money to Google to use any SERVICES offered by Google.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Plaintiff Trujillo objects to the term "Services" insofar as it is irrelevant, vague, and ambiguous, as Google has defined it to include a non-exhaustive list of "Google apps, sites, and devices, like Search, YouTube, and Google Home, Google platforms like the Chrome browser and Android operating system, and Google products that are integrated into third-party apps and sites, like ads and embedded Google Maps." Plaintiff's use of YouTube, Maps, and other irrelevant "services" are not at issue in this litigation. Plaintiff further objects to this Request to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their

respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal information and communications.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that, to the best of her recollection, she has not directly paid any money to Google to use services offered by Google. Plaintiff has, however, provided valuable consideration in the form of her personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products. Otherwise denied.

**REQUEST FOR ADMISSION NO. 29:**

Admit that in YOUR GOOGLE ACCOUNT WEB & APP ACTIVITY SETTINGS, YOU consented to Google saving information about your activity on sites that use Google services in Your Google Account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Plaintiff Trujillo objects to this Request as irrelevant, as Web & App Activity is not at issue in this litigation. Otherwise denied.

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

1

**PROOF OF SERVICE**

2

I, Jennifer Cabezas, declare:

3

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I

4

am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin

5

St., 7th Floor, Tampa, FL 33602.

6

On July 30, 2021, I served the following document described as:

7

**Plaintiff's Objections and Responses to Defendant's Third Set of Requests for**

8

**Admission**

9

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by

10

transmitting a PDF format copy of such document to each person at the e-mail addresses listed

11

below. The document was transmitted by electronic transmission and such transmission was

12

reported as complete and without error:

13

14

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP

15

191 N. Wacker Drive, Suite 2700
Chicago, IL 60606

16

Tel: 312-705-7400
Fax: 312-705-7401

17

andrewschapiro@quinnemanuel.com

18

*Attorney for Defendant*

19

20

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP

21

865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

22

Tel: 213-443-3000
Fax: 213-443-3100

23

stephenbroome@quinnemanuel.com

24

violatrebicka@quinnemanuel.com

25

*Attorneys for Defendant*

26

Diane M. Doolittle

27

Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP

28

555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

      Executed on July 30, 2021, at Tampa, Florida.


                */s/ Jennifer Cabezas*
                Jennifer Cabezas

# EXHIBIT 15

# DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTFFS' FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

CHASOM BROWN, MARIA NGUYEN, and WILLIAM BYATT, individually and on behalf of all other similarly situated,

Plaintiffs,

v.

GOOGLE LLC and ALPHABET INC,

Defendant.

Case No. 5:20-cv-03664-LHK

### DEFENDANT'S RESPONSES AND OBJECTIONS TO
### PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1–11)

Pursuant to Federal Rules of Civil Procedure Rule 36, Defendant Google LLC ("Google") hereby responds and objects to Plaintiffs' First Set of Requests for Admission (Nos. 1–11). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Google's knowledge, investigations, and analysis to date. As discovery proceeds, Google may become aware of additional facts or evidence and its analysis of the case may change. Google reserves all rights to supplement and amend its objections and responses accordingly.

### GENERAL OBJECTIONS

The following objections apply to each and every Request for Admission propounded by Plaintiffs and are incorporated into each of the specific objections by reference as if set forth fully therein:

1.     Google has not completed its investigation or discovery in this litigation. Google's Responses and Objections to Plaintiffs' Requests are based upon the information presently known to Google and are given without prejudice to Google's right to adduce or analyze evidence subsequent to the date of these responses. Google expressly reserves the right to revise, supplement or otherwise amend these Responses and Objections to the extent permitted by the Federal Rules of Civil Procedure, the Local Rules of Practice and Procedure for the United States District Court

1  for the Northern District of California ("Civil Local Rules"), or any discovery orders governing

2  this case.

3      2.      Google objects to the Requests to the extent that they seek information shielded

4  from disclosure by the attorney-client privilege, the work-product doctrine, the settlement privilege

5  and/or any other applicable privilege or protection from discovery.

6      3.      Google objects to the Requests to the extent they assume facts or legal conclusions

7  in defining the information requested. Google hereby denies any such disputed facts or legal

8  conclusions to the extent assumed by each request for admission. Any information provided by

9  Google with respect to any such request is without prejudice to this objection.

10     4.      Google objects to the undefined use of the term "User data" to the extent that it is:

11  vague and ambiguous and subject to multiple interpretations; renders the Requests overly broad

12  and unduly burdensome; calls for information not within Google's possession, custody or control;

13  and seeks, or may be construed to seek, to impose obligations inconsistent with the Federal Rules

14  of Civil Procedure, the Civil Local Rules and/or other applicable law.

15     5.      Google objects to the undefined use of the term "Profiles" to the extent that it is:

16  vague and ambiguous and subject to multiple interpretations; renders the Requests overly broad

17  and unduly burdensome; calls for information not within Google's possession, custody or control;

18  and seeks, or may be construed to seek, to impose obligations inconsistent with the Federal Rules

19  of Civil Procedure, the Civil Local Rules and/or other applicable law.

20     6.      In making these objections, Google does not waive or intend to waive (a) any

21  objections as to the competency, relevance and admissibility of any information that may be

22  provided in response to these Requests, or the subject matter thereof; (b) any rights to object on

23  any ground to the use of any information that may be provided in response to the Requests, or the

24  subject matter thereof, in any subsequent proceedings, including trial of this or any other action;

25  and (c) any rights to object on any ground to any request for further responses to this or any

26  discovery request.

27

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## REQUESTS FOR ADMISSION

Subject to the foregoing objections, Google objects and responds to Plaintiffs' Requests for Admission as follows:

**REQUEST FOR ADMISSION NO. 1:**

Since at least June 1, 2016, Google has been collecting user data from users' private browsing mode communications, including Incognito mode communications.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Google admits that, since at least June 1, 2016, and as disclosed in Google's Privacy Policy and other disclosures, it has received certain types of data generated when users interact with Google's services. Google further admits that it received such data when users interacted with Google's services while using Google's Chrome browser in Incognito mode.

Google has insufficient facts to admit or deny this request to the extent it concerns the operation of private browsing modes in non-Google browsers that Google did not design, does not operate, and for which Google does not possess non-public information. Except as expressly admitted, Google denies this Request.

**REQUEST FOR ADMISSION NO. 2:**

Since at least June 1, 2016, when users in a private browsing mode (such as Incognito mode) visit a website that uses Google advertising services, a Google script attempts to cause (and in fact has caused) users' browsers to send data to Google's servers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Google admits that, since at least June 1, 2016, consistent with Google's Privacy Policy and other disclosures about private browsing, third party websites choosing to use Google Analytics or Ads Manager services install Google code in their website for the purpose of transmitting data to Google so that Google can provide the desired services. Google further admits

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

that Google code provided to third party websites for the purpose of providing these services is not designed to differentiate between private browsing/Incognito modes and other browsing modes.

Google has insufficient facts to admit or deny this request to the extent it asks whether Google's code has in fact caused users' browsers to send data to Google's servers while they were using a private browsing mode in non-Google browsers that Google did not design, does not operate, and for which Google does not possess non-public information. Except as expressly admitted, Google denies this Request.

**REQUEST FOR ADMISSION NO. 3:**

Since at least June 1, 2016, Google has not disclosed to users that when users in a private browsing mode (including Incognito mode) visit a website that uses Google advertising services, a Google script attempts to cause (and in fact has caused) users' browsers to send user data to Google's servers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Google admits that its Privacy Policy and private browsing/Incognito mode disclosures do not generally use the term "script" but otherwise denies this Request. Google's Privacy Policy and other disclosures make clear that Google receives data when a user visits a website that uses Google advertising services, including data sent to Google from the user's browser, and Google's private browsing/Incognito mode disclosures do not state that using private browsing/Incognito mode will prevent Google from receiving such data.

**REQUEST FOR ADMISSION NO. 4:**

Since at least June 1, 2016, nothing on Google's Incognito mode splash screen disclosed that Google would collect data generated by users' Incognito mode web activity.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Google admits that, since June 1, 2016, the Incognito Notice (which Plaintiffs refer to as a "splash screen") has not included the phrase "Google will collect data generated by users' Incognito mode web activity." Google otherwise denies this Request. Whether Google may receive data generated by users' interactions with its services depends on (1) the particular website visited, (2) the particular Google service(s) the website uses, and (3) the website's specific settings and selections for each of its Google services, and (4) the user's settings, browser settings, and other software settings and plug-ins. This information is conveyed to users in Google's disclosures, including the Privacy Policy, Google's private browsing/Incognito disclosures, and the Incognito Notice. The Incognito Notice, for example, states that a user's activity "might still be visible to … Websites [they] visit," which may include Google.com, other Google websites, and websites that use Google's services. In addition, the "Search & Browse Privately" page that Plaintiffs quote in the First Amended Complaint links to a page titled "How private browsing works in Chrome," which similarly states that although "Incognito mode stops Chrome from saving your browsing activity *to your local history*[, y]our activity … might still be visible to: … Websites you visit, including the ads and resources used on those sites [*e.g.*, Analytics and Ad Manager]."

**REQUEST FOR ADMISSION NO. 5:**

Since at least June 1, 2016, nothing on Google's Incognito mode splash screen disclosed that Google could track a user while he or she is in Incognito mode.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

In addition to its General objections, Google specifically objects to the phrase "track a user while he or she is in Incognito mode" as vague and ambiguous. Subject to the foregoing objections, Google admits that, since June 1, 2016, the full-page Incognito Notice (which Plaintiffs refer to as a "splash screen") has not included the phrase "track a user while he or she in Incognito mode." Google otherwise denies this Request.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REQUEST FOR ADMISSION NO. 6:**

Since at least June 1, 2016, the data collected by Google in connection with users' private browsing mode communications (including Incognito mode communications) has included without limitation the user's IP address, URLs identifying what the user is viewing, referral URLs that identify what a user last viewed, and user search queries.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Google admits that, since at least June 1, 2016, depending on (1) the particular website visited, (2) the particular Google service(s) the website uses, (3) the website's specific settings and selections for each of its Google services, and (4) the user settings, browser settings, and other software settings and plug-ins, Google may receive through a service certain data generated by a user's interactions with the service, which data may include: IP address; the web page the user viewed; referral URL; and search queries. Google admits that, to the extent it receives such data, Google receives the data regardless of whether the user is in Incognito mode.

Google has insufficient facts to admit or deny this request to the extent it concerns the operation of private browsing modes in non-Google browsers that Google did not design, does not operate, and for which Google does not possess non-public information. Google otherwise denies this Request.

**REQUEST FOR ADMISSION NO. 7:**

Since at least June 1, 2016, Google has been creating profiles for targeted advertising using data collected in connection with private browsing mode communications, including Incognito mode communications.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

In addition to its General Objections, Google specifically objects to the term "profiles for targeted advertising" as vague and ambiguous. Subject to the foregoing objections, Google responds as follows: Google admits that, when a user is signed in to his or her Google account and

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   depending on (1) the particular website visited, (2) the particular Google service(s) the website

2   uses, and (3) the website's specific settings and selections for each of its Google services, and

3   (4) the user's settings, browser settings, and other software settings and plug-ins, data that Google

4   receives from its services may be associated with the user's account and used to personalize

5   advertisements. This occurs regardless of whether the user is in Incognito mode.

6          Google further admits that, when a user is not signed into his or her Google account and

7   depending on (1) the particular website visited, (2) the particular Google service(s) the website

8   uses, and (3) the website's specific settings and selections for each of its Google services, and

9   (4) the user's settings, browser settings, and other software settings and plug-ins, Google may still

10  receive data from its services—including from users in Incognito mode—but cookies are used to

11  associate the data with the user's browser or device. If Google receives such data, depending on

12  the user's settings and plug-ins, Google may use the data associated with cookies to personalize

13  advertisements displayed to the user. When a user is in Incognito mode, cookies used to associate

14  data with the user's browser or device are deleted after the Incognito session is closed.

15         Google has insufficient facts to admit or deny this request to the extent it concerns the

16  operation of private browsing modes in non-Google browsers that Google did not design, does not

17  operate, and for which Google does not possess non-public information. Except as expressly

18  admitted, Google denies this Request.

19

20  **REQUEST FOR ADMISSION NO. 8:**

21         Since at least June 1, 2016, Google has not disclosed to users that it has been creating

22  profiles for targeted advertising using data collected while users are in a private browsing mode.

23

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

25         In addition to its General Objections, Google specifically objects to this Request on the

26  ground that the phrase "profiles for targeted advertising" is vague and ambiguous. Subject to the

27  foregoing objections, Google denies this Request. Since at least June 1, 2016, Google's Privacy

28  Policy and other disclosures have made clear that Google may receive data from its services,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

including its services on third-party websites, when users interact with those services. Google's Privacy Policy and other disclosures also make clear that Google may use such data to, among other things, deliver personalized advertising. Google's private browsing/Incognito mode disclosures do not state that using private browsing/Incognito mode affects whether Google receives such data or uses it for advertising.

**REQUEST FOR ADMISSION NO. 9:**

Since at least June 1, 2016, Google has attempted to associate (and in fact has associated) data generated by users' private browsing mode activities with users' individual Google accounts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Google denies that, since June 1, 2016, it has attempted to associate or has in fact associated data received through its services with users' individual Google accounts if the users were not signed in to their Google accounts when they interacted with Google's services, as Plaintiffs allege here.

Google admits that, as disclosed in its Privacy Policy and private browsing/Incognito disclosures since at least June 1, 2016, depending on the user's settings and plug-ins, Google may associate certain data it receives that is generated by the user's interactions with Google's services when the user is logged in to his or her Google account, and that this occurs regardless of whether the user is in Incognito mode.

Google has insufficient facts to admit or deny this request to the extent it concerns the operation of private browsing modes in non-Google browsers that Google did not design, does not operate, and for which Google does not possess non-public information.

**REQUEST FOR ADMISSION NO. 10:**

Since at least June 1, 2016, Google has not disclosed that it has attempted to associate (and in fact has associated) data generated by users' private browsing mode activities with users' individual Google accounts.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Google denies that, since at least June 1, 2016, it has not disclosed that when a user is logged in to his or her Google account, depending on the user's settings and plug-ins, Google may associate certain data it receives that is generated by the user's interactions with Google's services with the user's Google account, including when the user is in private browsing/Incognito mode. This information has been disclosed in Google's Privacy Policy and other disclosures since at least June 1, 2016.

Google further responds that, as explained in Google's response to Request No. 9, since June 1, 2016, Google has not attempted to associate—nor has it associated—data received through its services with users' individual Google accounts if the users were not logged in to their Google accounts when they interacted with the services, as Plaintiffs allege here. Accordingly, including the disclosure contemplated in this Request would not make sense.

**REQUEST FOR ADMISSION NO. 11:**

Since at least June 1, 2016, Google has been earning advertising revenues using data that Google collected in connection with private browsing mode communications, including Incognito mode communications.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

In addition to its General Objections, Google specifically objects to the phrase "data that Google collected in connection with private browsing mode communications, including Incognito mode communications," as vague and ambiguous. Subject to the foregoing objections, Google admits that, since June 1, 2016, it has earned revenue from advertising shown to users visiting websites that use Google's advertising services, and that, depending on the user's settings and plug-ins, Google may have been able to display ads using data Google received while a user was in Incognito mode.

Google has insufficient facts to admit or deny this request to the extent it concerns the operation of private browsing modes in non-Google browsers that Google did not design, does not

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    operate, and for which Google does not possess non-public information. Except as expressly

2    admitted, Google denies this Request.

3

4    DATED: November 6, 2020              QUINN EMANUEL URQUHART & SULLIVAN, LLP

5                                         By   _/s/ Andrew H. Schapiro_____
                                              Andrew H. Schapiro (admitted *pro hac vice*)
6                                             andrewschapiro@quinnemanuel.com
                                              191 N. Wacker Drive, Suite 2700
7                                             Chicago, IL 60606
                                              Telephone: (312) 705-7400
8                                             Fax: (312) 705-7401

9                                             Stephen A. Broome (CA Bar No. 314605)
10                                            sb@quinnemanuel.com
                                              Viola Trebicka (CA Bar No. 269526)
11                                            violatrebicka@quinnemanuel.com
                                              865 S. Figueroa Street, 10th Floor
12                                            Los Angeles, CA 90017
                                              Telephone: (213) 443-3000
13                                            Fax: (213) 443-3100

14                                            Josef Ansorge (admitted *pro hac vice*)
15                                            josefansorge@quinnemanuel.com
                                              1300 I. Street, N.W., Suite 900
16                                            Washington, D.C. 20005
                                              Telephone: 202-538-8000
17                                            Fax: 202-538-8100

18                                            Jonathan Tse (CA Bar No. 305468)
19                                            jonathantse@quinnemanuel.com
                                              50 California Street, 22nd Floor
20                                            San Francisco, CA 94111
                                              Telephone: (415) 875-6600
21                                            Fax: (415) 875-6700

22                                            Thao Thai (CA Bar No. 324672)
                                              thaothai@quinnemanuel.com
23                                            555 Twin Dolphin Drive, 5th Floor
                                              Redwood Shores, CA 94065
24                                            Telephone: (650) 801-5000
                                              Fax: (650) 801-5100
25
                                              *Attorneys for Defendant Google LLC*
26

27

28

                                             10              Case No. 5:20-cv-03664-LHK

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SAN MATEO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Mateo, State of California. My business address is 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065.

On November 6, 2020, I served true copies of the following document(s) described as **DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1–11)** on the interested parties in this action as follows:

**SEE ATTACHED LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I transmitted PDF format copies of the document(s) described above to the e-mail addresses on the attached Service List pursuant to the agreement between the parties to serve discovery, in lieu of other service methods, by email under Fed. R. Civ. P. 5(b)(2)(E) (*see* Joint Case Management Statement VIII(E), Docket No. 59). The documents were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 6, 2020 at San Mateo, California.

/s/ *Thao Thai*
Thao Thai

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

## SERVICE LIST

2

*Brown v. Google LLC*

*Case No. 5:20-cv-03664-LHK*

3

4

*Attorneys for Plaintiffs Chasom Brown et al.* BOIES SCHILLER FLEXNER LLP

5

Mark C. Mao, CA Bar No. 236165

6

Sean P. Rodriguez, CA Bar No. 262437

Beko Richardson, CA Bar No. 238027

7

Antonio Lavalle Ingram, II, CA Bar No. 300528

Alexander Justin Konik, CA Bar No. 299291

8

**BOIES SCHILLER FLEXNER LLP**

44 Montgomery St., 41st Floor

9

San Francisco, CA 94104

10

Tel.: (415) 293-6800

Fax: (415) 293-6899

11

mmao@bsfllp.com

srodriguez@bsfllp.com

12

brichardson@bsfllp.com

aingram@bsfllp.com

13

akonik@bsfllp.com

14

David Boies (admitted pro hac vice)

15

**BOIES SCHILLER FLEXNER LLP**

333 Main Street

16

Armonk, NY 10504

Tel.: 914-749-8201

17

Fax: 914-749-8300

18

dboies@bsfllp.com

19

James Lee (admitted pro hac vice)

Rossana Baeza (admitted pro hac vice)

20

**BOIES SCHILLER FLEXNER LLP**

100 SE 2nd St., 28th Floor

21

Miami, FL 33131

22

Tel.: (305) 539-8400

Fax: (303) 539-1307

23

jlee@bsfllp.com

rbaeza@bsfllp.com

24

25

Amanda K. Bonn, CA Bar No. 270891

**SUSMAN GODFREY L.L.P**

26

1900 Avenue of the Stars, Suite 1400

Los Angeles, CA. 90067

27

Tel: (310) 789-3100

Fax: (310) 789-3150

28

abonn@susmangodfrey.com

Case No. 5:20-cv-03664-LHK

DEFENDANT'S RESPONSES & OBJECTIONS TO PLAINTIFFS' FIRST SET OF RFAS (NOS. 1–11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

William S. Carmody (admitted pro hac vice)
Shawn Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.: (212) 336-8330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com

John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Ra Olusegun Amen (admitted pro hac vice)
Jean Sutton Martin (admitted pro hac vice)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
ramen@forthepeople.com
jeanmartin@forthepeople.com

*Attorneys for Plaintiffs*

# EXHIBIT 16

# PLAINTIFF CHASOM BROWN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

# Redacted Version of Document Sought to be Sealed

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, MARIA NGUYEN,                    Case No.  5:20-cv-03664-LHK-SVK
WILLIAM BYATT, JEREMY DAVIS, and
CHRISTOPHER CASTILLO, individually
and on behalf of all other similarly situated,

                    Plaintiffs,

        v.

GOOGLE LLC,

                    Defendant.

**PLAINTIFF CHASOM BROWN'S OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Chasom Brown ("Brown") hereby objects and responds to Defendant's, Google LLC ("Google"), First Set of Interrogatories (Nos. 1–6). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Brown's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Brown may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Brown reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 1:**

Describe with particularity each time YOU reviewed the GOOGLE TERMS OF SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s) of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Brown objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Brown's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that she was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**INTERROGATORY NO. 2:**

Describe with particularity YOUR use of CHROME, including: the date YOU first began using CHROME on each device (*e.g.*, mobile devices, tablets, laptops, and/or desktops); the frequency with which YOU used CHROME on each device; which browser modes YOU used in CHROME on each device; whether you logged into a Google account when you used CHROME on each device; which Google account(s) YOU logged into when YOU used CHROME on each device; which website(s) YOU visited while using CHROME on each device; whether you ever

reviewed or deleted data on MY GOOGLE ACTIVITY; and how often YOU enabled CHROME INCOGNITO MODE while logged out of your Google account.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff Brown objects to Interrogatory No. 2 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Brown used Chrome, the Google accounts logged into for each instance of using Chrome, each website visited with Chrome, and other disproportional details, rendering this Interrogatory No. 2 not possible to fully and accurately answer. Plaintiff Brown also objects that this interrogatory is compound, asking in part about his use of Chrome but then separately including a request regarding the separate topic of whether he "reviewed or deleted data on MY GOOGLE ACTIVITY." This interrogatory therefore counts as two separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he has used Chrome on his laptop computer since at least ▮▮▮▮ as the primary web browser. Since ▮▮▮▮▮▮, Plaintiff Brown used Chrome on his laptop, and in the last approximate two years began using Chrome's private browsing mode more often on his laptop, at least a few times per month, and at least a few times per week on his Android phone. Plaintiff Brown uses private browsing mode on both his laptop and phone to browse ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. To the best of Plaintiff Brown's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode, but may have logged into his Google accounts, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and ▮▮▮▮▮▮▮▮▮▮ when using Chrome in its non-private browsing mode. To the best of Plaintiff Brown's knowledge, Plaintiff Brown has not reviewed or deleted his My Google Activity.

**INTERROGATORY NO. 3:**

Describe with particularity how YOU have been harmed or damaged by DEFENDANT's conduct alleged in YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff Brown objects to Interrogatory No. 3 as discovery has not closed and Plaintiff Brown does not know the full extent of Defendant's misconduct in collecting, gathering, analyzing, and monetizing Plaintiff Brown's private browsing activity, and Plaintiff Brown reserves his right to amend this interrogatory as the case proceeds.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he values his privacy and takes careful precautions to protect his privacy. When Plaintiff Brown engaged in the private browsing mode in Google's Chrome browser, Plaintiff Brown read Google's representations that Plaintiff Brown's browsing activity would not be collected and that he could browse the web privately. Based on Google's representations, Plaintiff Brown reasonably believed that he could control the information that would be shared with Google. Plaintiff Brown considered this browsing activity private and confidential, and did not intend to share it with Google. Plaintiff Brown never consented to Google's interception of his private browsing communication, Google's collection of any data from his private browsing, or Google's use of any data from his private browsing. Plaintiff Brown chose the private browsing mode to avoid Google's collection of that browsing activity and to browse the web without Google spying on and gathering that browsing activity for its own monetary gain. Without Plaintiff Brown's knowledge, Google continued to monitor and collect his browsing activity and used that browsing activity for its own monetary gain. Plaintiff Brown is familiar with other web browsers, such as Brave, among others, which pay users a fee for their browsing.

**INTERROGATORY NO. 4:**

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Brown objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Brown may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Brown does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*e.g.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Brown is willing to meet and confer with Defendant regarding his objection.

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Brown objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Brown's location while engaged in these activities. Further, Plaintiff Brown chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Brown to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Brown, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Brown cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Brown used Chrome's private browsing mode for approximately the last ████ years to browse ███████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████ The vast majority of this private browsing activity was done in Chrome, but Plaintiff Brown may have tried the private browsing mode with Microsoft's web browser once or twice. The overwhelming majority of Plaintiff Brown's private browsing activity was done in ████████.

**INTERROGATORY NO. 6:**

Describe with particularity YOUR use of all non-CHROME private browsing modes, including: what non-CHROME private browsing modes YOU used, the time periods in which YOU used each of the non-CHROME private browsing modes YOU identified, and, if any, what disclosures from publishers of the non-CHROME browsers you reviewed or relied on during the time periods YOU identified.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff Brown objects to Interrogatory No. 6 as overly broad, vague, and not proportional to the needs of the litigation, to the extent, like with Interrogatory No. 5, Google requests particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Brown's location while engaged in these activities. Further, Plaintiff Brown chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Brown to recall the details sufficient to respond to Interrogatory No. 6 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Brown, collects most if not all of the information requested.  Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information. Finally, Plaintiff Brown objects to the term

"publishers of non-Chrome browsers" because this term is meaningless. Plaintiff Brown does not understand the distinction Google appears to make between websites on a Chrome browser and websites on a non-Chrome browser.

Notwithstanding and subject to these objections, Plaintiff Brown recalls using Microsoft's web browser's private browsing mode once or twice. Aside from rejecting cookie permissions when possible, Plaintiff Brown recalls seeing a private browsing mode screen in Microsoft's web browser that represents the browsing history will not be saved.

Dated: January 11, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**

1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On January 11, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's First Interrogatories**

By electronic mail transmission from rmcgee@forthepeople.com on January 11, 2021, by transmitting a PDF format copy of such document to each such person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com

thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorney for Defendant*

Executed on January 11, 2021, at Tampa, Florida.

/s/ Ryan J. McGee
Ryan J. McGee, Esq.

# EXHIBIT 17

# PLAINTIFF WILLIAM BYATT'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

# Redacted Version of Document Sought to be Sealed

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, MARIA NGUYEN,
WILLIAM BYATT, JEREMY DAVIS, and
CHRISTOPHER CASTILLO, individually
and on behalf of all other similarly situated,

        Plaintiffs,

  v.

GOOGLE LLC,

        Defendant.

Case No.  5:20-cv-03664-LHK-SVK

**PLAINTIFF WILLIAM BYATT'S OBJECTIONS AND RESPONSES
TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff William Byatt ("Byatt") hereby objects and responds to Defendant's, Google LLC ("Google"), First Set of Interrogatories (Nos. 1–6). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Byatt's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Byatt may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Byatt reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 1:**

Describe with particularity each time YOU reviewed the GOOGLE TERMS OF SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s) of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Byatt objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Byatt's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**INTERROGATORY NO. 2:**

Describe with particularity YOUR use of CHROME, including: the date YOU first began using CHROME on each device (*e.g.*, mobile devices, tablets, laptops, and/or desktops); the frequency with which YOU used CHROME on each device; which browser modes YOU used in CHROME on each device; whether you logged into a Google account when you used CHROME on each device; which Google account(s) YOU logged into when YOU used CHROME on each device; which website(s) YOU visited while using CHROME on each device; whether you ever

reviewed or deleted data on MY GOOGLE ACTIVITY; and how often YOU enabled CHROME INCOGNITO MODE while logged out of your Google account.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff Byatt objects to Interrogatory No. 2 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Byatt used Chrome, the Google accounts logged into for each instance of using Chrome, each website visited with Chrome, and other disproportional details, rendering this Interrogatory No. 2 not possible to fully and accurately answer. Plaintiff Byatt also objects that this interrogatory is compound, asking in part about his use of Chrome but then separately including a request regarding the separate topic of whether he "reviewed or deleted data on MY GOOGLE ACTIVITY." This interrogatory therefore counts as two separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he has used Chrome since it was released. Since ▓▓▓▓, Plaintiff Byatt has almost exclusively used Chrome on his laptop computers, as well as on his Android phone. Since ▓▓▓▓, Plaintiff Byatt estimates that he uses the Chrome private browsing mode approximately ▓▓▓▓▓▓▓. Plaintiff Byatt uses private browsing mode on both his laptop and phone. Plaintiff Byatt uses private browsing mode on both his laptop and phone to browse ▓▓▓▓▓▓▓▓. To the best of Plaintiff Byatt's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode, but may have been logged into his Google accounts, ▓▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓ when using Chrome in its non-private browsing mode. Plaintiff Byatt has reviewed his My Google Activity and, prior to this litigation, may have removed an entry from the My Google Activity, but cannot recall what it was or when he did.

**INTERROGATORY NO. 3:**

Describe with particularity how YOU have been harmed or damaged by DEFENDANT's conduct alleged in YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff Byatt objects to Interrogatory No. 3 as discovery has not closed and Plaintiff Byatt does not know the full extent of Defendant's misconduct in collecting, gathering, analyzing, and monetizing Plaintiff Byatt's private browsing activity, and Plaintiff Byatt reserves his right to amend this interrogatory as the case proceeds.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that his privacy is very important to him and Plaintiff Byatt takes careful precautions to protect his privacy. When Plaintiff Byatt engaged in the private browsing mode in Google's Chrome browser, Plaintiff Byatt read Google's representations that Plaintiff Byatt's browsing activity would not be collected and that he could browse the web privately. Based on Google's representations, Plaintiff Byatt reasonably believed that he could control the information that would be shared with Google. Plaintiff Byatt considered this browsing activity private and confidential, and did intend to share it with Google. Plaintiff Byatt never consented to Google's interception of his private browsing communications, Google's collection of any data from his private browsing, or Google's use of any data from his private browsing. Plaintiff Byatt chose the private browsing mode to avoid Google's collection of that private browsing activity and to browse the web without Google spying on and gathering that browsing activity for its own monetary gain. Without Plaintiff Byatt's knowledge, Google continued to monitor and collect his browsing activity and used that browsing activity for its own monetary gain. Plaintiff Byatt is familiar with other web browsers, such as Brave, among others, which pay users a fee for their browsing.

**INTERROGATORY NO. 4:**

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Byatt objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Byatt may have shared "data" with a website, application, or other online service, regardless of

any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Byatt does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*e.g.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Byatt is willing to meet and confer with Defendant regarding his objection.

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Byatt objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Byatt's location while engaged in these activities. Further, Plaintiff Byatt chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Byatt to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Byatt, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Byatt cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Byatt used Chrome's private

browsing mode, and recalls using the Chrome private browsing mode to browse ███████

████████████   The overwhelming majority of this private browsing activity was done in Chrome, but Plaintiff Byatt may have browsed privately in Firefox, but cannot recall any specific details of that activity. The majority of Plaintiff Byatt's private browsing activity was done in ██████

**INTERROGATORY NO. 6:**

Describe with particularity YOUR use of all non-CHROME private browsing modes, including: what non-CHROME private browsing modes YOU used, the time periods in which YOU used each of the non-CHROME private browsing modes YOU identified, and, if any, what disclosures from publishers of the non-CHROME browsers you reviewed or relied on during the time periods YOU identified.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff Byatt objects to Interrogatory No. 6 as overly broad, vague, and not proportional to the needs of the litigation, to the extent, like with Interrogatory No. 5, Google requests particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Byatt's location while engaged in these activities. Further, Plaintiff Byatt chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Byatt to recall the details sufficient to respond to Interrogatory No. 6 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Byatt, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information. Finally, Plaintiff Byatt objects to the term "publishers of non-Chrome browsers" because this term is meaningless. Plaintiff Byatt does not understand the distinction Google appears to be making between websites on a Chrome browser and websites on a non-Chrome browser.

Notwithstanding and subject to these objections, Plaintiff Byatt recalls that some of his private browsing activity was done in Firefox. Plaintiff Byatt recalls seeing a private browsing mode screen in Firefox that represents the browsing history will not be saved.

Dated: January 11, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

## PROOF OF SERVICE

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On January 11, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's First Interrogatories**

By electronic mail transmission from rmcgee@forthepeople.com on January 11, 2021, by transmitting a PDF format copy of such document to each such person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com

thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorney for Defendant*

Executed on January 11, 2021, at Tampa, Florida.

*/s/ Ryan J. McGee*
Ryan J. McGee, Esq.

# EXHIBIT 18

# PLAINTIFF CHRISTOPHER CASTILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

# Redacted Version of Document Sought to be Sealed

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5

CHASOM BROWN, MARIA NGUYEN,
WILLIAM BYATT, JEREMY DAVIS, and
CHRISTOPHER CASTILLO, individually
and on behalf of all other similarly situated,

Case No.  5:20-cv-03664-LHK-SVK

6

Plaintiffs,

7

v.

8

GOOGLE LLC,

9

Defendant.

10
11
12

**PLAINTIFF CHRISTOPHER CASTILLO'S OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

13     Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Christopher Castillo

14  ("Castillo") hereby objects and responds to Defendant's, Google LLC ("Google"), First Set of

15  Interrogatories (Nos. 1–6). These objections and responses are made solely for the purpose of and

16  in relation to this action. In addition, the objections and responses set forth in this document are

17  based on Plaintiff Castillo's knowledge, investigations, and analysis to date. As discovery

18  proceeds, Plaintiff Castillo may become aware of additional facts or evidence and his analysis of

19  the case may change. Plaintiff Castillo reserves all rights to supplement and amend his objections

20  and responses accordingly.

21  **INTERROGATORY NO. 1:**

22     Describe with particularity each time YOU reviewed the GOOGLE TERMS OF

23  SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO

24  NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the

25  filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which

26  version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s)

27  of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

28

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Castillo objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Castillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**INTERROGATORY NO. 2:**

Describe with particularity YOUR use of CHROME, including: the date YOU first began using CHROME on each device (*e.g.*, mobile devices, tablets, laptops, and/or desktops); the frequency with which YOU used CHROME on each device; which browser modes YOU used in CHROME on each device; whether you logged into a Google account when you used CHROME on each device; which Google account(s) YOU logged into when YOU used CHROME on each device; which website(s) YOU visited while using CHROME on each device; whether you ever

reviewed or deleted data on MY GOOGLE ACTIVITY; and how often YOU enabled CHROME INCOGNITO MODE while logged out of your Google account.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff Castillo objects to Interrogatory No. 2 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Castillo used Chrome, the Google accounts logged into for each instance of using Chrome, each website visited with Chrome, and other disproportional details, rendering this Interrogatory No. 2 not possible to fully and accurately answer. Plaintiff Castillo also objects that this interrogatory is compound, asking in part about his use of Chrome but then separately including a request regarding the separate topic of whether he "reviewed or deleted data on MY GOOGLE ACTIVITY." This interrogatory therefore counts as two separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he has used Chrome on his desktop computers since at least ▌▌▌ as the primary web browser. Since ▌▌▌ Plaintiff Castillo has used Chrome for most of his browsing activity on his devices, including his desktop and Android phone. Since ▌▌▌▌▌, Plaintiff Castillo has used Chrome in both the non-private browsing mode and private browsing modes for his browsing activity on his devices, including his desktop and Android phone. Since ▌▌▌▌, Plaintiff Castillo estimates that he uses the Chrome private browsing mode approximately ▌▌▌▌ times per week. Plaintiff Castillo uses private browsing mode on both his desktop and phone to browse ▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌ To the best of Plaintiff Castillo's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode, but may have been logged into his Google account, ▌▌▌▌▌▌, when using Chrome in its non-private browsing mode. To the best of Plaintiff Castillo's knowledge, Plaintiff Castillo has not reviewed or deleted his My Google Activity.

**INTERROGATORY NO. 3:**

Describe with particularity how YOU have been harmed or damaged by DEFENDANT's conduct alleged in YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff Castillo objects to Interrogatory No. 3 as discovery has not closed and Plaintiff Castillo does not know the full extent of Defendant's misconduct in collecting, gathering, analyzing, and monetizing Plaintiff Castillo's private browsing activity, and Plaintiff Castillo reserves his right to amend this interrogatory as the case proceeds.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that his privacy is a right and, as a ████████████████████████████, Plaintiff Castillo values and takes meticulous precautions to protect his privacy. When Plaintiff Castillo engaged in the private browsing mode in Google's Chrome browser, Plaintiff Castillo read Google's representations that Plaintiff Castillo's browsing activity would not be collected and that he could browse the web privately. Based on Google's representations, Plaintiff Castillo reasonably believed that he could control the information that would be shared with Google. Plaintiff Castillo considered this browsing activity private and confidential, and did intend to share it with Google. Plaintiff Castillo never consented to Google's interception of his private browsing communications, Google's collection of any data from his private browsing, or Google's use of any data from his private browsing. Plaintiff Castillo chose the private browsing mode to avoid Google's collection of that private browsing activity and to browse the web without Google spying on and gathering that browsing activity for its own monetary gain. Without Plaintiff Castillo's knowledge, Google continued to monitor and collect his browsing activity and used that browsing activity for its own monetary gain. Plaintiff Castillo is familiar with other web browsers, such as Brave, among others, which pay users a fee for their browsing.

**INTERROGATORY NO. 4:**

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Castillo objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff

Castillo may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Castillo does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*i.e.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Castillo is willing to meet and confer with Defendant regarding his objection.

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Castillo objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Castillo's location while engaged in these activities. Further, Plaintiff Castillo chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Castillo to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Castillo, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Castillo cannot recall the particular details of each

and every time he engaged in private browsing mode. Plaintiff Castillo used Chrome's private browsing mode, and recalls using the Chrome private browsing mode in approximately ██ and ██ to browse ████████████████████████ on his desktop computer and phone. Also, more recently Plaintiff Castillo used Chrome's private browsing mode to ████ ██████████████████████████████████████████████ ████████████████. Otherwise, Plaintiff Castillo occasionally uses Chrome's private browsing mode to ████████████████████████. The majority of Plaintiff Castillo's private browsing activity was done in ████████.

**INTERROGATORY NO. 6:**

Describe with particularity YOUR use of all non-CHROME private browsing modes, including: what non-CHROME private browsing modes YOU used, the time periods in which YOU used each of the non-CHROME private browsing modes YOU identified, and, if any, what disclosures from publishers of the non-CHROME browsers you reviewed or relied on during the time periods YOU identified.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff Castillo objects to Interrogatory No. 6 as overly broad, vague, and not proportional to the needs of the litigation, to the extent, like with Interrogatory No. 5, Google requests particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Castillo's location while engaged in these activities. Further, Plaintiff Castillo chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Castillo to recall the details sufficient to respond to Interrogatory No. 6 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Castillo, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information. Finally, Plaintiff Castillo objects to the term "publishers of non-Chrome browsers" because this term is meaningless. Plaintiff Castillo does not

understand the distinction Google appears to be making between websites on a Chrome browser and websites on a non-Chrome browser.

Notwithstanding and subject to these objections, Plaintiff Castillo cannot recall any particular details of his use of a non-Chrome private browsing mode.

Dated: January 11, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On January 11, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's First Interrogatories**

By electronic mail transmission from rmcgee@forthepeople.com on January 11, 2021, by transmitting a PDF format copy of such document to each such person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com

thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorney for Defendant*

        Executed on January 11, 2021, at Tampa, Florida.

                        */s/ Ryan J. McGee*
                        Ryan J. McGee, Esq.

# EXHIBIT 19

# PLAINTIFF JEREMY DAVIS' OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

# Redacted Version of Document Sought to be Sealed

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, MARIA NGUYEN,
WILLIAM BYATT, JEREMY DAVIS, and
CHRISTOPHER CASTILLO, individually
and on behalf of all other similarly situated,

              Plaintiffs,

  v.

GOOGLE LLC,

              Defendant.

Case No.  5:20-cv-03664-LHK-SVK

**PLAINTIFF JEREMY DAVIS' OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Jeremy Davis ("Davis") hereby objects and responds to Defendant's, Google LLC ("Google"), First Set of Interrogatories (Nos. 1–6). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Davis' knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Davis may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Davis reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 1:**

Describe with particularity each time YOU reviewed the GOOGLE TERMS OF SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s) of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Davis objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Davis' (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**INTERROGATORY NO. 2:**

Describe with particularity YOUR use of CHROME, including: the date YOU first began using CHROME on each device (e.g., mobile devices, tablets, laptops, and/or desktops); the frequency with which YOU used CHROME on each device; which browser modes YOU used in CHROME on each device; whether you logged into a Google account when you used CHROME on each device; which Google account(s) YOU logged into when YOU used CHROME on each device; which website(s) YOU visited while using CHROME on each device; whether you ever

reviewed or deleted data on MY GOOGLE ACTIVITY; and how often YOU enabled CHROME INCOGNITO MODE while logged out of your Google account.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff Davis objects to Interrogatory No. 2 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Davis used Chrome, the Google accounts logged into for each instance of using Chrome, each website visited with Chrome, and other disproportional details, rendering this Interrogatory No. 2 not possible to fully and accurately answer. Plaintiff Davis also objects that this interrogatory is compound, asking in part about his use of Chrome but then separately including a request regarding the separate topic of whether he "reviewed or deleted data on MY GOOGLE ACTIVITY." This interrogatory therefore counts as two separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Davis responds that he has used Chrome on desktop and laptop computers since at least ▉▉▉. Since ▉▉▉▉▉, Plaintiff Davis has exclusively used Chrome on desktop and laptop computers, as well as tablets and his phone, and the overwhelming majority of his browsing activity is done in private browsing mode in Chrome, which is at least ▉▉▉▉▉▉▉▉▉ of visits to websites during this time. In fact, Plaintiff Davis utilizes private browsing mode by default on all of his devices and web browsers (Chrome on his laptops and tablets, Chrome and Safari on his iPhone), and to the best of Plaintiff Davis' knowledge, the only time browsing activity may be done outside of private browsing mode is when Plaintiff Davis clicks a hyperlink from an email and that hyperlink launches his browser in non-private browsing mode on his iPhone. Otherwise, all of Plaintiff Davis' browsing activity is performed in private browsing mode. To the best of Plaintiff Davis' knowledge, he has never logged into any Google accounts when using Chrome's private browsing mode. To the best of Plaintiff Davis' knowledge, Plaintiff Davis has not reviewed or deleted his My Google Activity.

**INTERROGATORY NO. 3:**

Describe with particularity how YOU have been harmed or damaged by DEFENDANT's conduct alleged in YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff Davis objects to Interrogatory No. 3 as discovery has not closed and Plaintiff Davis does not know the full extent of Defendant's misconduct in collecting, gathering, analyzing, and monetizing Plaintiff Davis' private browsing activity, and Plaintiff Davis reserves his right to amend this interrogatory as the case proceeds.

Notwithstanding and subject to these objections, Plaintiff Davis responds that his privacy is a human right and Plaintiff Davis takes careful precautions to protect his privacy. When Plaintiff Davis engaged in the private browsing mode in Google's Chrome browser (essentially every time he browsed the internet), Plaintiff Davis read Google's representations that Plaintiff Davis' browsing activity would not be collected and that he could browse the web privately. Based on Google's representations, Plaintiff Davis reasonably believed that he could control the information that would be shared with Google. Plaintiff Davis considered this browsing activity private and confidential, and did not intend to share it with Google. Plaintiff Davis never consented to Google's interception of his private browsing communications, Google's collection of any data from his private browsing, or Google's use of any data from his private browsing. Plaintiff Davis chose the private browsing mode to avoid Google's collection of that browsing activity and to browse the web without Google spying on and gathering that browsing activity for its own monetary gain. Without Plaintiff Davis' knowledge, Google continued to monitor and collect his browsing activity and used that browsing activity for its own monetary gain. Plaintiff Davis is familiar with other web browsers, such as Brave, among others, which pay users a fee for their browsing.

**INTERROGATORY NO. 4:**

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Davis objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff

Davis may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Davis does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*e.g.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Davis is willing to meet and confer with Defendant regarding his objection.

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Davis objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Davis' location while engaged in these activities. Further, Plaintiff Davis chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Davis to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Davis, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Davis responds that the overwhelming majority of his browsing activity is done by default in private browsing mode in Chrome. In fact, Plaintiff Davis utilizes private browsing mode by default on all of his devices and

web browsers (Chrome on his laptops and tablets, Chrome and Safari on his iPhone), and to the best of Plaintiff Davis' knowledge, the only time browsing activity may be done outside of private browsing mode is when Plaintiff Davis clicks a hyperlink from an email and that hyperlink launches his browser in non-private browsing mode. Otherwise, all of Plaintiff Davis' browsing activity is performed in private browsing mode. The majority of Plaintiff Davis' private browsing activity was done in ███████ .

**INTERROGATORY NO. 6:**

Describe with particularity YOUR use of all non-CHROME private browsing modes, including: what non-CHROME private browsing modes YOU used, the time periods in which YOU used each of the non-CHROME private browsing modes YOU identified, and, if any, what disclosures from publishers of the non-CHROME browsers you reviewed or relied on during the time periods YOU identified.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff Davis objects to Interrogatory No. 6 as overly broad, vague, and not proportional to the needs of the litigation, to the extent, like with Interrogatory No. 5, Google requests particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Davis' location while engaged in these activities. Further, Plaintiff Davis chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Davis to recall the details sufficient to respond to Interrogatory No. 6 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Davis, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information. Finally, Plaintiff Davis objects to the term "publishers of non-Chrome browsers" because this term is meaningless. Plaintiff Davis does not understand the distinction Google appears to be making between websites on a Chrome browser and websites on a non-Chrome browser.

Notwithstanding and subject to these objections, Plaintiff Davis responds that the overwhelming majority of his browsing activity is done in private browsing mode in Chrome, but he has used Safari on his iPhone in "Private Browsing Mode." Plaintiff Davis recalls seeing a private browsing mode screen in Safari's web browser that represents the browsing history will not be saved.

Dated: January 11, 2021           **MORGAN & MORGAN**

                                  */s/ John A. Yanchunis*

                                  John A. Yanchunis (*pro hac vice*)
                                  Ryan J. McGee (*pro hac vice*)
                                  **MORGAN & MORGAN**
                                  201 N. Franklin Street, 7th Floor
                                  Tampa, FL 33602
                                  Tel.: (813) 223-5505
                                  Fax: (813) 222-4736
                                  jyanchunis@forthepeople.com
                                  rmcgee@forthepeople.com

                                  Mark C. Mao, CA Bar No. 236165
                                  Sean P. Rodriguez, CA Bar No. 262437
                                  Beko Richardson, CA Bar No. 238027
                                  **BOIES SCHILLER FLEXNER LLP**
                                  44 Montgomery St., 41st Floor
                                  San Francisco, CA 94104
                                  Tel.: (415) 293-6800
                                  Fax: (415) 293-6899
                                  mmao@bsfllp.com
                                  srodriguez@bsfllp.com
                                  brichardson@bsfllp.com

                                  James Lee (admitted *pro hac vice*)
                                  Rossana Baeza (admitted *pro hac vice*)
                                  **BOIES SCHILLER FLEXNER LLP**
                                  100 SE 2nd St., 28th Floor
                                  Miami, FL 33131
                                  Tel.: (305) 539-8400
                                  Fax: (303) 539-1307
                                  jlee@bsfllp.com
                                  rbaeza@bsfllp.com

                                  William S. Carmody
                                  Shawn Rabin
                                  Steven M. Shepard
                                  **SUSMAN GODFREY L.L.P.**
                                  1301 Avenue of the Americas, 32nd Floor
                                  New York, New York 10019-6023
                                  Telephone: (212) 336-8330

1

Facsimile: (212) 336-8340

2

Amanda K. Bonn (270891)

3

**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400

4

Los Angeles, California 90067
Telephone: (310) 789-3100

5

Facsimile: (310) 789-3150

6

*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On January 11, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's First Request for Interrogatories**

By electronic mail transmission from rmcgee@forthepeople.com on January 11, 2021, by transmitting a PDF format copy of such document to each such person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com

thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorney for Defendant*

  Executed on January 11, 2021, at Tampa, Florida.

     */s/ Ryan J. McGee*
     Ryan J. McGee, Esq.

# EXHIBIT 20

# PLAINTIFF CHASOM BROWN'S VERIFIED AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES 1, 4, AND 5

# Redacted Version of Document Sought to be Sealed

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

Case No.  5:20-cv-03664-LHK-SVK

7

Plaintiffs,

8

v.

9

GOOGLE LLC,

10

Defendant.

11

12
13

**PLAINTIFF CHASOM BROWN'S VERIFIED AMENDED OBJECTIONS AND**
**RESPONSES TO DEFENDANT'S INTERROGATORIES 1, 4, AND 5**

14
15
16
17
18
19
20
21

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Chasom Brown ("Brown") hereby objects and responds to Defendant's, Google LLC ("Google"), Interrogatories 1, 4, and 5. These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Brown's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Brown may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Brown reserves all rights to supplement and amend his objections and responses accordingly.

22

**INTERROGATORY NO. 1:**

23
24
25
26
27
28

Describe with particularity each time YOU reviewed the GOOGLE TERMS OF SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s) of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

**ORIGINAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Brown objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Brown's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that she was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**AMENDED RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Brown objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite

Google's representations that Plaintiff Brown's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Incognito splash screen and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account, which was in approximately ▇▇▇▇, and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects, and to the best of his ability recalls receiving an update from Google Chrome that introduced him to the Incognito function that stated he could exercise such control by enabling private browsing mode. He does not recall the exact dates he reviewed these disclosures, or the exact portions of the disclosures reviewed, but believes it was in approximately ▇▇▇ and he reviewed the Incognito splash screen each time he began a private browsing mode session in Chrome.

**INTERROGATORY NO. 4:**

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Brown objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Brown may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Brown does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*e.g.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Brown is willing to meet and confer with Defendant regarding his objection.

CONFIDENTIAL

**AMENDED RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Brown objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Brown may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant.

Notwithstanding and subject to these objections, Plaintiff Brown states that, to the extent he can recall, during the Class Period the websites visited most, regardless of whether he was browsing in private browsing mode or not, include: ████████████████
████████████████    ████████████████    ████████████████
████████████████    ████████████████    ████████████████
████████████████    ████████████████    ████████████████
Plaintiff Brown further states that, to the extent he can recall, during the Class Period the applications he most used include: ████████████████████████████████████;
████████████████████████.

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Brown objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Brown's location while engaged in these activities. Further, Plaintiff Brown chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring

CONFIDENTIAL

Plaintiff Brown to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Brown, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Brown cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Brown used Chrome's private browsing mode for approximately the last two years to browse ███████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████ The vast majority of this private browsing activity was done in Chrome, but Plaintiff Brown may have tried the private browsing mode with Microsoft's web browser once or twice. The overwhelming majority of Plaintiff Brown's private browsing activity was done in ██████████

**AMENDED RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Brown objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Brown's location while engaged in these activities. Further, Plaintiff Brown chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Brown to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Brown, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

CONFIDENTIAL

Notwithstanding and subject to these objections, Plaintiff Brown responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Brown cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Brown used Chrome's private browsing mode for approximately the last two years to browse ███████████ ████████████ ██ ██ ████ ███ ████ █████████ ████ ███ ████████ ███ ██████ █████████████████████████████████████████████████████ ██████████████ The vast majority of this private browsing activity was done in Chrome, but Plaintiff Brown may have tried the private browsing mode with Microsoft's web browser once or twice. The overwhelming majority of Plaintiff Brown's private browsing activity was done in ████████

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _Chasom Brown_____

Title: _M c._____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.

_____

NOTARY PUBLIC SIGNATURE

Dated: May 12, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 12, 2021, I served the following document described as:

**Plaintiff's Verified Amended Objections and Responses to Defendant's Interrogatories 1, 4, and 5.**

By electronic mail transmission from rmcgee@forthepeople.com on May 12, 2021, by transmitting a PDF format copy of such document to each such person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorney for Defendant*

Executed on May 12, 2021, at Tampa, Florida.

/s/ Ryan J. McGee
Ryan J. McGee, Esq.

# EXHIBIT 21

# PLAINTIFF WILLIAM BYATT'S VERIFIED AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES 1, 4, AND 5

# Redacted Version of Document Sought to be Sealed

1

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3

4

5

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

Case No. 5:20-cv-03664-LHK-SVK

6

Plaintiffs,

7

v.

8

GOOGLE LLC,

9

Defendant.

10

11

12

13

**PLAINTIFF WILLIAM BYATT'S VERIFIED AMENDED OBJECTIONS AND**
**RESPONSES TO DEFENDANT'S INTERROGATORIES 1, 4, AND 5**

14

15

16

17

18

19

20

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff William Byatt ("Byatt")

hereby objects and responds to Defendant's, Google LLC ("Google"), Interrogatories 1, 4, and 5.

These objections and responses are made solely for the purpose of and in relation to this action. In

addition, the objections and responses set forth in this document are based on Plaintiff Byatt's

knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Byatt may

become aware of additional facts or evidence and his analysis of the case may change. Plaintiff

Byatt reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 1:**

21

22

23

24

25

26

27

28

Describe with particularity each time YOU reviewed the GOOGLE TERMS OF

SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO

NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the

filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which

version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s)

of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORIGINAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Byatt objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Byatt's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Chrome Incognito Notice (*i.e.*, the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (*i.e.*, the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**AMENDED RESONSE TO INTERROGATORY NO. 1:**

Plaintiff Byatt objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite

1

Google's representations that Plaintiff Byatt's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Incognito splash screen and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account in ████ and at times thereafter, he reviewed Google representations in Google's Terms of Service and Chrome Policy that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode. He does not recall the exact dates he reviewed these disclosures, or the exact portions of the disclosures reviewed, but he occasionally reviewed the disclosures when they were updated, and he does not recall any disclosures that stated Google would continue to collect his information when he entered private browsing mode or that he was not in control of his data, and he reviewed the Incognito splash screen each time he began a private browsing mode session in Chrome.

**INTERROGATORY NO. 4:**

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Byatt objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Byatt may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Byatt does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*e.g.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Byatt is willing to meet and confer with Defendant regarding his objection.

CONFIDENTIAL

**AMENDED RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Byatt objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Byatt may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant.

Notwithstanding and subject to these objections, Plaintiff Byatt states that, to the extent he can recall, during the Class Period the websites visited most, regardless of whether he was browsing in private browsing mode or not, include: ████████████████████

████████████████████████████████████████████████████████████████ Plaintiff Byatt further states that, to the extent he can recall, during the Class Period the applications he most used include: ████████████████████████████████████████

████████████████████████████████████████████.

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Byatt objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Byatt's location while engaged in these activities. Further, Plaintiff Byatt chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff

CONFIDENTIAL

Byatt to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Byatt, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Byatt cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Byatt used Chrome's private browsing mode, and recalls using the Chrome private browsing mode to browse ███████████ ███████████. The overwhelming majority of this private browsing activity was done in Chrome, but Plaintiff Byatt may have browsed privately in Firefox, but cannot recall any specific details of that activity. The majority of Plaintiff Byatt's private browsing activity was done in ████.

**AMENDED RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Byatt objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Byatt's location while engaged in these activities. Further, Plaintiff Byatt chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Byatt to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Byatt, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or

CONFIDENTIAL

otherwise memorialized and, therefore, Plaintiff Byatt cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Byatt used Chrome's private browsing mode, and recalls using the Chrome private browsing mode to browse ███████████

████████████████████████████████████████████████████████████████

███████████████. The overwhelming majority of this private browsing activity was done in Chrome, but Plaintiff Byatt may have browsed privately in Firefox, but cannot recall any specific details of that activity. The majority of Plaintiff Byatt's private browsing activity was done in ██████

1                              **VERIFICATION**

2        Under penalties of perjury, I declare that I have read the foregoing Answers to

3 Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

4                          By: _____

5

6                         Printed Name: William J Byatt_____

7                          Title: _____

8 STATE OF _____

9 COUNTY OF _____

10       The foregoing instrument was acknowledged before me this ____ day of _____,

11 2021, by _____, who has produced as identification

12

13 _____, bearing number _____, expiring

14 _____ and who did (did not) take an oath.

15

16                              _____

17                          NOTARY PUBLIC SIGNATURE

18

19

20

21

22

23

24

25

26

27

28

1

Dated: May 12, 2021          **MORGAN & MORGAN**

2

*/s/ John A. Yanchunis*

3

John A. Yanchunis (*pro hac vice*)

4          Ryan J. McGee (*pro hac vice*)
          **MORGAN & MORGAN**

5          201 N. Franklin Street, 7th Floor
          Tampa, FL 33602

6          Tel.: (813) 223-5505
          Fax: (813) 222-4736

7          jyanchunis@forthepeople.com
          rmcgee@forthepeople.com

8

Mark C. Mao, CA Bar No. 236165

9          Sean P. Rodriguez, CA Bar No. 262437
          Beko Richardson, CA Bar No. 238027

10          **BOIES SCHILLER FLEXNER LLP**
          44 Montgomery St., 41st Floor

11          San Francisco, CA 94104
          Tel.: (415) 293-6800

12          Fax: (415) 293-6899
          mmao@bsfllp.com

13          srodriguez@bsfllp.com
          brichardson@bsfllp.com

14

James Lee (admitted *pro hac vice*)

15          Rossana Baeza (admitted *pro hac vice*)
          **BOIES SCHILLER FLEXNER LLP**

16          100 SE 2nd St., 28th Floor
          Miami, FL 33131

17          Tel.: (305) 539-8400
          Fax: (303) 539-1307

18          jlee@bsfllp.com
          rbaeza@bsfllp.com

19

William S. Carmody

20          Shawn Rabin
          Steven M. Shepard

21          **SUSMAN GODFREY L.L.P.**
          1301 Avenue of the Americas, 32nd Floor

22          New York, New York 10019-6023

23          Telephone: (212) 336-8330
          Facsimile: (212) 336-8340

24

Amanda K. Bonn (270891)

25          **SUSMAN GODFREY L.L.P.**
          1900 Avenue of the Stars, Suite 1400

26          Los Angeles, California 90067

27          Telephone: (310) 789-3100
          Facsimile: (310) 789-3150

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 12, 2021, I served the following document described as:

**Plaintiff's Verified Amended Objections and Responses to Defendant's Interrogatories 1, 4, and 5.**

By electronic mail transmission from rmcgee@forthepeople.com on May 12, 2021, by transmitting a PDF format copy of such document to each such person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorney for Defendant*

Executed on May 12, 2021, at Tampa, Florida.

*/s/ Ryan J. McGee*
Ryan J. McGee, Esq.

# EXHIBIT 22

# PLAINTIFF CHRISTOPHER CASTILLO'S VERIFIED AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES 1, 4, AND 5

# Redacted Version of Document Sought to be Sealed

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

               Plaintiffs,

v.

GOOGLE LLC,

               Defendant.

Case No. 5:20-cv-03664-LHK-SVK

## PLAINTIFF CHRISTOPHER CASTILLO'S VERIFIED AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES 1, 4, AND 5

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Christopher Castillo ("Castillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Interrogatories 1, 4, and 5. These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Castillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Castillo may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Castillo reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 1:**

Describe with particularity each time YOU reviewed the GOOGLE TERMS OF SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s) of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

**ORIGINAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Castillo objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Castillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**AMENDED RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Castillo objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode,

despite Google's representations that Plaintiff Castillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Incognito splash screen and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account in approximately ███ and at times thereafter, he reviewed Google representations in Google's Privacy Policy and Chrome Policy that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode. He does not recall the exact dates he reviewed these disclosures, but the disclosures he recalls reviewing were substantially similar to the disclosures stating that he was in control of his data, and he reviewed the Incognito splash screen each time he began a private browsing mode session in Chrome.

**INTERROGATORY NO. 4:**

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Castillo objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Castillo may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Castillo does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*i.e.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Castillo is willing to meet and confer with Defendant regarding his objection.

CONFIDENTIAL

**AMENDED RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Castillo objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Castillo may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant.

Notwithstanding and subject to these objections, Plaintiff Castillo states that, to the extent he can recall, during the Class Period the websites he visited most, regardless of whether he was browsing in private browsing mode or not, include: ██████████████████ Plaintiff Castillo further states that, to the extent he can recall, during the Class Period the applications he used most include: ████████

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Castillo objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Castillo's location while

CONFIDENTIAL

engaged in these activities. Further, Plaintiff Castillo chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Castillo to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Castillo, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Castillo cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Castillo used Chrome's private browsing mode, and recalls using the Chrome private browsing mode in approximately ███ and ███ to browse ████████████████████ on his desktop computer and phone. Also, more recently Plaintiff Castillo used Chrome's private browsing mode to ████ ████████████████████████████ ████████████ Otherwise, Plaintiff Castillo occasionally uses Chrome's private browsing mode to ████████████████████ The majority of Plaintiff Castillo's private browsing activity was done in ██████

**AMENDED RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Castillo objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Castillo's location while engaged in these activities. Further, Plaintiff Castillo chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Castillo to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Castillo, collects most if not all of the information

# CONFIDENTIAL

requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Castillo cannot recall the particular details of each and every time he engaged in private browsing mode. Plaintiff Castillo used Chrome's private browsing mode, and recalls using the Chrome private browsing mode in approximately ███ and ███ to browse ████████████████████████████ on his desktop computer and phone. Also, more recently Plaintiff Castillo used Chrome's private browsing mode to ████ ███████████████████████████████████████████████████████ ████████████████ Otherwise, Plaintiff Castillo occasionally uses Chrome's private browsing mode to ████████████████████████████████████████████ ██████████████. The majority of Plaintiff Castillo's private browsing activity was done in ███████

## <u>VERIFICATION</u>

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _Christopher Ceastillo_

Title: _MR._

STATE OF _California_

COUNTY OF _Sacramento_

The foregoing instrument was acknowledged before me this ____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.


_____

NOTARY PUBLIC SIGNATURE

Dated: May 12, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

1

*Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 12, 2021, I served the following document described as:

**Plaintiff's Verified Amended Objections and Responses to Defendant's Interrogatories 1, 4, and 5.**

By electronic mail transmission from rmcgee@forthepeople.com on May 12, 2021, by transmitting a PDF format copy of such document to each such person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorney for Defendant*

Executed on May 12, 2021, at Tampa, Florida.

/s/ Ryan J. McGee
Ryan J. McGee, Esq.

# EXHIBIT 23

# PLAINTIFF JEREMY DAVIS' VERIFIED AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES 1, 4, AND 5

# Redacted Version of Document Sought to be Sealed

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated, | Case No.  5:20-cv-03664-LHK-SVK |
| Plaintiffs, | |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

**PLAINTIFF JEREMY DAVIS' VERIFIED AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES 1, 4, AND 5**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Jeremy Davis ("Davis") hereby objects and responds to Defendant's, Google LLC ("Google"), Interrogatories 1, 4, and 5. These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Davis' knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Davis may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Davis reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 1:**

Describe with particularity each time YOU reviewed the GOOGLE TERMS OF SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s) of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

**ORIGINAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Davis objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Davis' (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to be the Google Privacy Policy. He does not recall the exact dates he reviewed these disclosures. He likewise does not recall whether he reviewed the other disclosures included in this request, in part because, as described, he is not certain which specific disclosures they refer to.

**AMENDED RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Davis objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite

Google's representations that Plaintiff Davis' (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed the Incognito splash screen and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis further responds that, at or around the time he opened his Google Account, which was created when Gmail was in beta in approximately ▮▮▮▮ and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects, and to the best of his ability recalls an update from Google Chrome that introduced him to the Incognito function that stated he could exercise such control by enabling private browsing mode. He does not recall the exact dates he reviewed updated disclosures and cannot recall any statement by Google that Google would collect his information when he was using private browsing mode, and he reviewed the Incognito splash screen each time he began a private browsing mode session in Chrome.

**INTERROGATORY NO. 4:**

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Davis objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Davis may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant. On the basis of these objections, Plaintiff Davis does not intend to respond to Interrogatory No. 4, other than to say that he did not knowingly or voluntarily share any page views (*e.g.*, URL information) while private browsing mode was enabled. Given his uncertainty regarding the meaning of this Interrogatory, Plaintiff Davis is willing to meet and confer with Defendant regarding his objection.

# CONFIDENTIAL

**AMENDED RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Davis objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Davis may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant.

Notwithstanding and subject to these objections, Plaintiff Davis states that, to the extent he can recall, during the Class Period the websites he visited most, regardless of whether he was browsing in private browsing mode or not, include:

Plaintiff Davis further states that, to the extent he can recall, during the Class Period the applications he used most include:

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Davis objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Davis' location while engaged in these activities. Further, Plaintiff Davis chooses the private browsing mode because he does not

# CONFIDENTIAL

want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Davis to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Davis, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Davis responds that the overwhelming majority of his browsing activity is done by default in private browsing mode in Chrome. In fact, Plaintiff Davis utilizes private browsing mode by default on all of his devices and web browsers (Chrome on his laptops and tablets, Chrome and Safari on his iPhone), and to the best of Plaintiff Davis' knowledge, the only time browsing activity may be done outside of private browsing mode is when Plaintiff Davis clicks a hyperlink from an email and that hyperlink launches his browser in non-private browsing mode. Otherwise, all of Plaintiff Davis' browsing activity is performed in private browsing mode. The majority of Plaintiff Davis' private browsing activity was done in █████████

**AMENDED RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Davis objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Davis' location while engaged in these activities. Further, Plaintiff Davis chooses the private browsing mode because he does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Davis to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Davis, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

# CONFIDENTIAL

Notwithstanding and subject to these objections, Plaintiff Davis responds that the overwhelming majority of his browsing activity is done by default in private browsing mode in Chrome. In fact, Plaintiff Davis utilizes private browsing mode by default on all of his devices and web browsers (Chrome on his laptops and tablets, Chrome and Safari on his iPhone), and to the best of Plaintiff Davis' knowledge, the only time browsing activity may be done outside of private browsing mode is when Plaintiff Davis clicks a hyperlink from an email and that hyperlink launches his browser in non-private browsing mode. Otherwise, all of Plaintiff Davis' browsing activity is performed in private browsing mode, and his response to Interrogatory No. 4 above provides examples of that private browsing activity. The majority of Plaintiff Davis' private browsing activity was done in █████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: __Jeremy Davis__

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.

_____

NOTARY PUBLIC SIGNATURE

Dated: May 12, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

1                                    *Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On May 12, 2021, I served the following document described as:

**Plaintiff's Verified Amended Objections and Responses to Defendant's Interrogatories 1, 4, and 5.**

By electronic mail transmission from rmcgee@forthepeople.com on May 12, 2021, by transmitting a PDF format copy of such document to each such person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorney for Defendant*

     Executed on May 12, 2021, at Tampa, Florida.

                          /s/ Ryan J. McGee
                          Ryan J. McGee, Esq.

# EXHIBIT 24

# PLAINTIFF CHASOM BROWN'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

Case No.  5:20-cv-03664-LHK-SVK

6
7

Plaintiffs,

v.

8

GOOGLE LLC,

9

Defendant.

10
11
12

**PLAINTIFF CHASOM BROWN'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES**

13
14
15
16
17
18
19
20

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Chasom Brown ("Brown") hereby objects and responds to Defendant's, Google LLC ("Google"), Second Set of Interrogatories (Nos. 7–10). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Brown's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Brown may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Brown reserves all rights to supplement and amend his objections and responses accordingly.

21

**INTERROGATORY NO. 7:**

22
23
24
25
26
27
28

Describe with particularity each specific "Google representation" that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" see FAC ¶¶ 3, 149, including by stating whether YOU in fact reviewed each representation and, if so, when YOU first reviewed each representation, and whether YOU in fact relied upon each representation in using private browsing mode.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff Brown objects to Interrogatory No. 7 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Brown's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall the exact dates he reviewed these disclosures for the first time or thereafter. He likewise does not recall whether he reviewed any other disclosures.

**AMENDED RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff Brown objects to Interrogatory No. 7 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Brown's (and class members')

browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Brown's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Brown responds that, although he is not sure whether he reviewed the Google Terms of Service, which incorporate the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the  Incognito Screen—he did review the Incognito splash screen and Google's representations contained therein each time he began a private browsing mode session in Chrome, which did not state that Google would intercept and collect his private browsing activity.

**INTERROGATORY NO. 8:**

Describe with particularity each category of "personal and sensitive user data" that YOU contend Google unlawfully "intercepted." *See* FAC ¶ 1.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff Brown objects to Interrogatory No. 8. as overly broad, vague, and not proportional to the needs of the litigation, considering this interrogatory requires the identification of each and every instance when Google unlawfully intercepted Plaintiff Brown's data in order to categorize such data, rendering this Interrogatory No. 8 not possible to fully and accurately answer.

Notwithstanding and subject to these objections, Plaintiff Brown responds that each and every time that Plaintiff Brown (and class members) used private browsing mode, Google intercepted at least the following categories of personal and sensitive user data: 1) the "GET request," which provides the content the user's browsing software asked the website to display while in private browsing mode; 2) the unique internet protocol ("IP") address of the user's connection to the internet while in private browsing mode; 3) information identifying the browser software that the user is using, including any "fingerprint" data (such as user interactions with Google's special, unique fonts and pixels) that allow Google to further track and identify a particular user, while in private browsing mode; 4) any "User-ID" the website issued to the user while in private browsing mode, allowing Google to track and match the user across other websites

the user visits, whether in private browsing mode or not; 5) the geolocation of the user while in private browsing mode; and 6) information contained in "Google cookies" from prior browsing sessions which, at a minimum, contain the prior websites the user has viewed, and may also contain usernames, login information, browsing activity (such as clicking buttons on websites), which in turn helps Google enrich Google's profile on the user, which Google then uses for its own benefit and profit.

**INTERROGATORY NO. 9:**

Describe with particularity YOUR understanding of the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" *see* FAC ¶ 3, including by stating the basis for YOUR understanding and stating whether YOU believed using private browsing would completely conceal YOUR internet browsing activity from everyone, or if not, identifying the persons or entities which YOU understood would still be able to view YOUR internet browsing activity when YOU were in private browsing mode.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Brown objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Brown's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Brown further responds that, at or around the time he opened his Google Account and at times thereafter,

he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall whether he reviewed any other disclosures. He further responds that he understood that certain information "might" still be visible to the websites he visited, his employer or school if the browsing occurred on those networks or computers, and his internet service provider, but he never consented to Google's concurrent interception and secret transmission of any information while he was in private browsing mode.

**AMENDED RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Byatt objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Byatt's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Brown responds that "private browsing" and "browse privately" are described in the Incognito splash screen he read each time he began a private browsing session in Chrome—that his activity in private browsing mode might still be visible to the websites he visits, his employer or school, or his internet service provider. Google was not listed, and he did not consent to Google's interception and collection of his private browsing activity. Plaintiff Brown further states that, in addition to this description in the Incognito splash screen, when he begins a private browsing session in Chrome the background turns dark,

depicts a stealthy figure, and states that Chrome will not save his browsing history, cookies and site data, and information entered into forms, reinforcing that any private browsing activity would be concealed from and not subject to Google's interception and collection.

**INTERROGATORY NO. 10:**

Describe with particularity YOUR alleged awareness that YOU are able to sell YOUR personal data, via other websites such as Killi (https://killi.io/earn/), *see* FAC ¶¶ 170, 175, 180, 185, 190, including by describing when YOU first became aware of this alleged fact, how YOU became aware of this alleged fact, whether you contend that YOU could sell to Killi or other entities the categories of "personal data" that YOU allege Google misappropriated, whether you have ever attempted to sell such data (and if not, why not), and whether YOU contend that Google's alleged conduct has affected YOUR alleged ability to sell YOUR personal data via other websites such as Killi.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff Brown objects to Interrogatory No. 10 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that Plaintiff Brown's sale of any personal data is a necessary predicate for any claim in this litigation. Plaintiff Brown's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Brown's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Brown's (and class members') browsing information would not be saved. Google has, instead, taken this personal data without Plaintiff Brown's (and class members') permission, which in turn helps Google enrich Google's profile of Plaintiff Brown (and class members), which Google then uses for its own benefit and profit. Plaintiff Brown seeks, among other things, non-restitutionary disgorgement of all of Google's profits that were derived, in whole or in part, from Google's unlawful interception and subsequent use of Plaintiff Brown's communications and personal data. Plaintiff Brown also objects that this interrogatory is compound, asking in part about his awareness that he is able to sell personal data but then separately including requests about the separate topics of 1) when he first became aware, 2) how

he became aware, 3) whether he has ever attempted to sell his personal data, 4) if he has not attempted to sell his personal data, why not, and 5) whether Google's unlawful interception of the personal data has affected his ability to sell that personal data. This interrogatory therefore counts as five separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Brown responds that he has been aware of the value of his personal data for years, and he chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Brown cannot recall specifically when he first learned of websites like Killi, but he knew about companies like Brave and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Brown's recollection, he cannot recall attempting to sell his personal data, but because Plaintiff Brown could sell his personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Brown was in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing compensation to Plaintiff Brown.

## **<u>VERIFICATION</u>**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.

_____
NOTARY PUBLIC SIGNATURE

1    Dated: June 1, 2021              **MORGAN & MORGAN**

2                                     */s/ John A. Yanchunis*

3                                     John A. Yanchunis (*pro hac vice*)
                                      Ryan J. McGee (*pro hac vice*)
4                                     **MORGAN & MORGAN**
                                      201 N. Franklin Street, 7th Floor
5                                     Tampa, FL 33602
                                      Tel.: (813) 223-5505
6                                     Fax: (813) 222-4736
                                      jyanchunis@forthepeople.com
7                                     rmcgee@forthepeople.com

8                                     Mark C. Mao, CA Bar No. 236165
                                      Sean P. Rodriguez, CA Bar No. 262437
9                                     Beko Richardson, CA Bar No. 238027
                                      **BOIES SCHILLER FLEXNER LLP**
10                                    44 Montgomery St., 41st Floor
                                      San Francisco, CA 94104
11                                    Tel.: (415) 293-6800
                                      Fax: (415) 293-6899
12                                    mmao@bsfllp.com
                                      srodriguez@bsfllp.com
13                                    brichardson@bsfllp.com

14                                    James Lee (admitted *pro hac vice*)
                                      Rossana Baeza (admitted *pro hac vice*)
15                                    **BOIES SCHILLER FLEXNER LLP**
                                      100 SE 2nd St., 28th Floor
16                                    Miami, FL 33131
                                      Tel.: (305) 539-8400
17                                    Fax: (303) 539-1307
                                      jlee@bsfllp.com
18                                    rbaeza@bsfllp.com

19                                    William S. Carmody
                                      Shawn Rabin
20                                    Steven M. Shepard
                                      **SUSMAN GODFREY L.L.P.**
21                                    1301 Avenue of the Americas, 32nd Floor
                                      New York, New York 10019-6023
22                                    Telephone: (212) 336-8330
                                      Facsimile: (212) 336-8340
23

24                                    Amanda K. Bonn (270891)
                                      **SUSMAN GODFREY L.L.P.**
25                                    1900 Avenue of the Stars, Suite 1400
                                      Los Angeles, California 90067
26                                    Telephone: (310) 789-3100
                                      Facsimile: (310) 789-3150
27

28                                    *Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On June 1, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's Second Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on June 1, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on June 1, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 25

# PLAINTIFF WILLIAM BYATT'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

1

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3

4

5

6

7

8

9

10

11

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

              Plaintiffs,

    v.

GOOGLE LLC,

              Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12

13

**PLAINTIFF WILLIAM BYATT'S AMENDED OBJECTIONS AND RESPONSES
TO DEFENDANT'S SECOND SET OF INTERROGATORIES**

14

15

16

17

18

19

20

21

       Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff William Byatt ("Byatt")
hereby objects and responds to Defendant's, Google LLC ("Google"), Second Set of
Interrogatories (Nos. 7–10). These objections and responses are made solely for the purpose of
and in relation to this action. In addition, the objections and responses set forth in this document
are based on Plaintiff Byatt's knowledge, investigations, and analysis to date. As discovery
proceeds, Plaintiff Byatt may become aware of additional facts or evidence and his analysis of the
case may change. Plaintiff Byatt reserves all rights to supplement and amend his objections and
responses accordingly.

**INTERROGATORY NO. 7:**

22

23

24

25

26

27

       Describe with particularity each specific "Google representation" that YOU allege led
YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would
not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" see FAC
¶¶ 3, 149, including by stating whether YOU in fact reviewed each representation and, if so, when
YOU first reviewed each representation, and whether YOU in fact relied upon each representation
in using private browsing mode.

28

**ORIGINAL RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff Byatt objects to Interrogatory No. 7 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Byatt's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall the exact dates he reviewed these disclosures for the first time or thereafter. He likewise does not recall whether he reviewed any other disclosures.

**AMENDED RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff Byatt objects to Interrogatory No. 7 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully

intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Byatt's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that, although he cannot recall the exact details or dates of his review of the Terms of Service, which incorporate the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. He also reviewed the Incognito splash screen and Google's representations contained therein each time he began a private browsing mode session in Chrome, which did not state that Google would intercept and collect his private browsing activity.

**INTERROGATORY NO. 8:**

Describe with particularity each category of "personal and sensitive user data" that YOU contend Google unlawfully "intercepted." *See* FAC ¶ 1.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff Byatt objects to Interrogatory No. 8. as overly broad, vague, and not proportional to the needs of the litigation, considering this interrogatory requires the identification of each and every instance when Google unlawfully intercepted Plaintiff Byatt's data in order to categorize such data, rendering this Interrogatory No. 8 not possible to fully and accurately answer.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that each and every time that Plaintiff Byatt (and class members) used private browsing mode, Google intercepted at least the following categories of personal and sensitive user data: 1) the "GET request," which provides the content the user's browsing software asked the website to display while in private browsing mode; 2) the unique internet protocol ("IP") address of the user's connection to the internet while in private browsing mode; 3) information identifying the browser software that the user is using, including any "fingerprint" data (such as user interactions with

Google's special, unique fonts and pixels) that allow Google to further track and identify a particular user, while in private browsing mode; 4) any "User-ID" the website issued to the user while in private browsing mode, allowing Google to track and match the user across other websites the user visits, whether in private browsing mode or not; 5) the geolocation of the user while in private browsing mode; and 6) information contained in "Google cookies" from prior browsing sessions which, at a minimum, contain the prior websites the user has viewed, and may also contain usernames, login information, browsing activity (such as clicking buttons on websites), which in turn helps Google enrich Google's profile on the user, which Google then uses for its own benefit and profit.

**INTERROGATORY NO. 9:**

Describe with particularity YOUR understanding of the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" *see* FAC ¶ 3, including by stating the basis for YOUR understanding and stating whether YOU believed using private browsing would completely conceal YOUR internet browsing activity from everyone, or if not, identifying the persons or entities which YOU understood would still be able to view YOUR internet browsing activity when YOU were in private browsing mode.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Byatt objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Byatt's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Byatt further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall whether he reviewed any other disclosures. He further responds that he understood that certain information "might" still be visible to the websites he visited, his employer or school if the browsing occurred on those networks or computers, and his internet service provider, but he never consented to Google's concurrent interception and secret transmission of any information while he was in private browsing mode.

**AMENDED RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Byatt objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Byatt's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that "private browsing" and "browse privately" are described in the Incognito splash screen he read each time he began a private browsing session in Chrome—that his activity in private browsing mode might

still be visible to the websites he visits, his employer or school, or his internet service provider. Google was not listed, and he did not consent to Google's interception and collection of his private browsing activity. Plaintiff Byatt further states that, in addition to this description in the Incognito splash screen, when he begins a private browsing session in Chrome the background turns dark, depicts a stealthy figure, and states that Chrome will not save his browsing history, cookies and site data, and information entered into forms, reinforcing that any private browsing activity would be concealed from and not subject to Google's interception and collection. Plaintiff Byatt further states that, in the Google Terms of Service, which incorporate the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—he recalls the disclosures promising that Google would not intercept and collect his private browsing activity.

**INTERROGATORY NO. 10:**

Describe with particularity YOUR alleged awareness that YOU are able to sell YOUR personal data, via other websites such as Killi (https://killi.io/earn/), *see* FAC ¶¶ 170, 175, 180, 185, 190, including by describing when YOU first became aware of this alleged fact, how YOU became aware of this alleged fact, whether you contend that YOU could sell to Killi or other entities the categories of "personal data" that YOU allege Google misappropriated, whether you have ever attempted to sell such data (and if not, why not), and whether YOU contend that Google's alleged conduct has affected YOUR alleged ability to sell YOUR personal data via other websites such as Killi.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff Byatt objects to Interrogatory No. 10 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that Plaintiff Byatt's sale of any personal data is a necessary predicate for any claim in this litigation. Plaintiff Byatt's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Byatt's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Byatt's (and class members') browsing information would

not be saved. Google has, instead, taken this personal data without Plaintiff Byatt's (and class members') permission, which in turn helps Google enrich Google's profile of Plaintiff Byatt (and class members), which Google then uses for its own benefit and profit. Plaintiff Byatt seeks, among other things, non-restitutionary disgorgement of all of Google's profits that were derived, in whole or in part, from Google's unlawful interception and subsequent use of Plaintiff Byatt's communications and personal data. Plaintiff Byatt also objects that this interrogatory is compound, asking in part about his awareness that he is able to sell personal data but then separately including requests about the separate topics of 1) when he first became aware, 2) how he became aware, 3) whether he has ever attempted to sell his personal data, 4) if he has not attempted to sell his personal data, why not, and 5) whether Google's unlawful interception of the personal data has affected his ability to sell that personal data. This interrogatory therefore counts as five separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that he has been aware of the value of his personal data for years, and he chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Byatt cannot recall specifically when he first learned of websites like Killi, but he knew about companies like Brave and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Byatt's recollection, he cannot recall attempting to sell his personal data, but because Plaintiff Byatt could sell his personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Byatt was in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing compensation to Plaintiff Byatt.

## **<u>VERIFICATION</u>**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this ____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.


_____
NOTARY PUBLIC SIGNATURE

1    Dated: June 1, 2021               **MORGAN & MORGAN**

2                                        */s/ John A. Yanchunis*

3                                        John A. Yanchunis (*pro hac vice*)
     Ryan J. McGee (*pro hac vice*)
4    **MORGAN & MORGAN**
     201 N. Franklin Street, 7th Floor
5    Tampa, FL 33602
     Tel.: (813) 223-5505
6    Fax: (813) 222-4736
     jyanchunis@forthepeople.com
7    rmcgee@forthepeople.com

8    Mark C. Mao, CA Bar No. 236165
     Sean P. Rodriguez, CA Bar No. 262437
9    Beko Richardson, CA Bar No. 238027
     **BOIES SCHILLER FLEXNER LLP**
10   44 Montgomery St., 41st Floor
     San Francisco, CA 94104
11   Tel.: (415) 293-6800
     Fax: (415) 293-6899
12   mmao@bsfllp.com
     srodriguez@bsfllp.com
13   brichardson@bsfllp.com

14   James Lee (admitted *pro hac vice*)
     Rossana Baeza (admitted *pro hac vice*)
15   **BOIES SCHILLER FLEXNER LLP**
     100 SE 2nd St., 28th Floor
16   Miami, FL 33131
     Tel.: (305) 539-8400
17   Fax: (303) 539-1307
     jlee@bsfllp.com
18   rbaeza@bsfllp.com

19   William S. Carmody
     Shawn Rabin
20   Steven M. Shepard
     **SUSMAN GODFREY L.L.P.**
21   1301 Avenue of the Americas, 32nd Floor
     New York, New York 10019-6023
22   Telephone: (212) 336-8330
     Facsimile: (212) 336-8340
23

24   Amanda K. Bonn (270891)
     **SUSMAN GODFREY L.L.P.**
25   1900 Avenue of the Stars, Suite 1400
     Los Angeles, California 90067
26   Telephone: (310) 789-3100
     Facsimile: (310) 789-3150
27

28   *Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On June 1, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's Second Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on June 1, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on June 1, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 26

# PLAINTIFF CHRISTOPHER CASTILLO'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF CHRISTOPHER CASTILLO'S AMENDED OBJECTIONS AND**
**RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES**

14           Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Christopher Castillo

15   ("Castillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Second Set of

16   Interrogatories (Nos. 7–10). These objections and responses are made solely for the purpose of

17   and in relation to this action. In addition, the objections and responses set forth in this document

18   are based on Plaintiff Castillo's knowledge, investigations, and analysis to date. As discovery

19   proceeds, Plaintiff Castillo may become aware of additional facts or evidence and his analysis of

20   the case may change. Plaintiff Castillo reserves all rights to supplement and amend his objections

21   and responses accordingly.

22   **INTERROGATORY NO. 7:**

23           Describe with particularity each specific "Google representation" that YOU allege led

24   YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would

25   not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" see FAC

26   ¶¶ 3, 149, including by stating whether YOU in fact reviewed each representation and, if so, when

27   YOU first reviewed each representation, and whether YOU in fact relied upon each representation

28   in using private browsing mode.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff Castillo objects to Interrogatory No. 7 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Castillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall the exact dates he reviewed these disclosures for the first time or thereafter. He likewise does not recall whether he reviewed any other disclosures.

**AMENDED RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff Castillo objects to Interrogatory No. 7 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Castillo's (and class members')

browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Castillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that, although he cannot recall the exact details or dates of his review of the Terms of Service, which incorporate the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. He also reviewed the Incognito splash screen and Google's representations contained therein each time he began a private browsing mode session in Chrome, which did not state that Google would intercept and collect his private browsing activity.

**INTERROGATORY NO. 8:**

Describe with particularity each category of "personal and sensitive user data" that YOU contend Google unlawfully "intercepted." *See* FAC ¶ 1.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff Castillo objects to Interrogatory No. 8. as overly broad, vague, and not proportional to the needs of the litigation, considering this interrogatory requires the identification of each and every instance when Google unlawfully intercepted Plaintiff Castillo's data in order to categorize such data, rendering this Interrogatory No. 8 not possible to fully and accurately answer.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that each and every time that Plaintiff Castillo (and class members) used private browsing mode, Google intercepted at least the following categories of personal and sensitive user data: 1) the "GET request," which provides the content the user's browsing software asked the website to display while in private browsing mode; 2) the unique internet protocol ("IP") address of the user's connection to the internet while in private browsing mode; 3) information identifying the browser software that the user is using, including any "fingerprint" data (such as user interactions with

Google's special, unique fonts and pixels) that allow Google to further track and identify a particular user, while in private browsing mode; 4) any "User-ID" the website issued to the user while in private browsing mode, allowing Google to track and match the user across other websites the user visits, whether in private browsing mode or not; 5) the geolocation of the user while in private browsing mode; and 6) information contained in "Google cookies" from prior browsing sessions which, at a minimum, contain the prior websites the user has viewed, and may also contain usernames, login information, browsing activity (such as clicking buttons on websites), which in turn helps Google enrich Google's profile on the user, which Google then uses for its own benefit and profit.

**INTERROGATORY NO. 9:**

Describe with particularity YOUR understanding of the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" *see* FAC ¶ 3, including by stating the basis for YOUR understanding and stating whether YOU believed using private browsing would completely conceal YOUR internet browsing activity from everyone, or if not, identifying the persons or entities which YOU understood would still be able to view YOUR internet browsing activity when YOU were in private browsing mode.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Castillo objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Castillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Castillo further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall whether he reviewed any other disclosures. He further responds that he understood that certain information "might" still be visible to the websites he visited, his employer or school if the browsing occurred on those networks or computers, and his internet service provider, but he never consented to Google's concurrent interception and secret transmission of any information while he was in private browsing mode.

**AMENDED RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Castillo objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Castillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that "private browsing" and "browse privately" are described in the Incognito splash screen he read each time he began a private browsing session in Chrome—that his activity in private browsing mode might

still be visible to the websites he visits, his employer or school, or his internet service provider. Google was not listed, and he did not consent to Google's interception and collection of his private browsing activity. Plaintiff Castillo further states that, in addition to this description in the Incognito splash screen, when he begins a private browsing session in Chrome the background turns dark, depicts a stealthy figure, and states that Chrome will not save his browsing history, cookies and site data, and information entered into forms, reinforcing that any private browsing activity would be concealed from and not subject to Google's interception and collection. Plaintiff Castillo further states that, in the Google Terms of Service, which incorporate the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—he recalls the disclosures promising that Google would not intercept and collect his private browsing activity.

**INTERROGATORY NO. 10:**

Describe with particularity YOUR alleged awareness that YOU are able to sell YOUR personal data, via other websites such as Killi (https://killi.io/earn/), *see* FAC ¶¶ 170, 175, 180, 185, 190, including by describing when YOU first became aware of this alleged fact, how YOU became aware of this alleged fact, whether you contend that YOU could sell to Killi or other entities the categories of "personal data" that YOU allege Google misappropriated, whether you have ever attempted to sell such data (and if not, why not), and whether YOU contend that Google's alleged conduct has affected YOUR alleged ability to sell YOUR personal data via other websites such as Killi.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff Castillo objects to Interrogatory No. 10 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that Plaintiff Castillo's sale of any personal data is a necessary predicate for any claim in this litigation. Plaintiff Castillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Castillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Castillo's (and class members') browsing

information would not be saved. Google has, instead, taken this personal data without Plaintiff Castillo's (and class members') permission, which in turn helps Google enrich Google's profile of Plaintiff Castillo (and class members), which Google then uses for its own benefit and profit. Plaintiff Castillo seeks, among other things, non-restitutionary disgorgement of all of Google's profits that were derived, in whole or in part, from Google's unlawful interception and subsequent use of Plaintiff Castillo's communications and personal data. Plaintiff Castillo also objects that this interrogatory is compound, asking in part about his awareness that he is able to sell personal data but then separately including requests about the separate topics of 1) when he first became aware, 2) how he became aware, 3) whether he has ever attempted to sell his personal data, 4) if he has not attempted to sell his personal data, why not, and 5) whether Google's unlawful interception of the personal data has affected his ability to sell that personal data. This interrogatory therefore counts as five separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that he has been aware of the value of his personal data for years, and he chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Castillo cannot recall specifically when he first learned of websites like Killi, but he knew about companies like Brave and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Castillo's recollection, he cannot recall attempting to sell his personal data, but because Plaintiff Castillo could sell his personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Castillo was in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing compensation to Plaintiff Castillo.

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this ____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.

_____
NOTARY PUBLIC SIGNATURE

1   Dated: June 1, 2021

**MORGAN & MORGAN**

2

*/s/ John A. Yanchunis*

3   John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)

4   **MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor

5   Tampa, FL 33602
Tel.: (813) 223-5505

6   Fax: (813) 222-4736
jyanchunis@forthepeople.com

7   rmcgee@forthepeople.com

8   Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437

9   Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**

10   44 Montgomery St., 41st Floor
San Francisco, CA 94104

11   Tel.: (415) 293-6800
Fax: (415) 293-6899

12   mmao@bsfllp.com
srodriguez@bsfllp.com

13   brichardson@bsfllp.com

14   James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)

15   **BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor

16   Miami, FL 33131
Tel.: (305) 539-8400

17   Fax: (303) 539-1307
jlee@bsfllp.com

18   rbaeza@bsfllp.com

19   William S. Carmody
Shawn Rabin

20   Steven M. Shepard
**SUSMAN GODFREY L.L.P.**

21   1301 Avenue of the Americas, 32nd Floor

22   New York, New York 10019-6023
Telephone: (212) 336-8330

23   Facsimile: (212) 336-8340

24   Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**

25   1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

26   Telephone: (310) 789-3100
Facsimile: (310) 789-3150

27

28   *Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On June 1, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's Second Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on June 1, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

　　　　Executed on June 1, 2021, at Tampa, Florida.


　　　　　　　　　　*/s/ Jennifer Cabezas*
　　　　　　　　　　Jennifer Cabezas

# EXHIBIT 27

# PLAINTIFF JEREMY DAVIS' AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT,       Case No.  5:20-cv-03664-LHK-SVK
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

                    Plaintiffs,

        v.

GOOGLE LLC,

                    Defendant.

12
13

**PLAINTIFF JEREMY DAVIS' AMENDED OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S SECOND SET OF INTERROGATORIES**

14        Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Jeremy Davis ("Davis")
15
hereby objects and responds to Defendant's, Google LLC ("Google"), Second Set of
16
Interrogatories (Nos. 7–10). These objections and responses are made solely for the purpose of
17
and in relation to this action. In addition, the objections and responses set forth in this document
18
are based on Plaintiff Davis' knowledge, investigations, and analysis to date. As discovery
19
proceeds, Plaintiff Davis may become aware of additional facts or evidence and his analysis of the
20
case may change. Plaintiff Davis reserves all rights to supplement and amend his objections and
21
responses accordingly.

22
**INTERROGATORY NO. 7:**

23        Describe with particularity each specific "Google representation" that YOU allege led
24
YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would
25
not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" see FAC
26
¶¶ 3, 149, including by stating whether YOU in fact reviewed each representation and, if so, when
27
YOU first reviewed each representation, and whether YOU in fact relied upon each representation
28
in using private browsing mode.

1

2

**ORIGINAL RESPONSE TO INTERROGATORY NO. 7:**

3

4          Plaintiff Davis objects to Interrogatory No. 7 as not relevant to the claims and/or defenses

of this case to the extent it purports to suggest that review of and consent to Google's Privacy

5

Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of

6

this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully

7

intercepting, collecting, analyzing, and monetizing Plaintiff Davis' (and class members') browsing

8

activity conducted in private browsing mode, despite Google's representations that Plaintiff Davis'

9

(and class members') browsing information would not be saved.

10          Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed

11

the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations

12

contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis

13

further responds that, at or around the time he opened his Google Account and at times thereafter,

14

he reviewed Google representations that he was in "control" of what information Google collects

15

and could exercise such control by enabling private browsing mode, such as the representations

16

outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with

17

the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began

18

a private browsing mode session in Chrome), to represent that Google would not intercept his

19

communications when he was in private browsing mode. He does not recall the exact dates he

20

reviewed these disclosures for the first time or thereafter. He likewise does not recall whether he

21

reviewed any other disclosures.

22

**AMENDED RESPONSE TO INTERROGATORY NO. 7:**

23

24          Plaintiff Davis objects to Interrogatory No. 7 as not relevant to the claims and/or defenses

of this case to the extent it purports to suggest that review of and consent to Google's Terms of

25

Service, or any terms of service, privacy policies, or other notices incorporated therein, is a

26

necessary predicate for any claim in this litigation and not proportional to the needs of this

27

litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully

28

intercepting, collecting, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Davis' (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Davis responds that, although he cannot recall the exact details or dates of his review of the Terms of Service, which incorporate the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—he recalls the disclosures promising that Google would not intercept and collect his private browsing activity, and he did not consent to that interception and collection. He also reviewed the Incognito splash screen and Google's representations contained therein each time he began a private browsing mode session in Chrome, which did not state that Google would intercept and collect his private browsing activity.

**INTERROGATORY NO. 8:**

Describe with particularity each category of "personal and sensitive user data" that YOU contend Google unlawfully "intercepted." *See* FAC ¶ 1.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff Davis objects to Interrogatory No. 8. as overly broad, vague, and not proportional to the needs of the litigation, considering this interrogatory requires the identification of each and every instance when Google unlawfully intercepted Plaintiff Davis' data in order to categorize such data, rendering this Interrogatory No. 8 not possible to fully and accurately answer.

Notwithstanding and subject to these objections, Plaintiff Davis responds that each and every time that Plaintiff Davis (and class members) used private browsing mode, Google intercepted at least the following categories of personal and sensitive user data: 1) the "GET request," which provides the content the user's browsing software asked the website to display while in private browsing mode; 2) the unique internet protocol ("IP") address of the user's connection to the internet while in private browsing mode; 3) information identifying the browser software that the user is using, including any "fingerprint" data (such as user interactions with

Google's special, unique fonts and pixels) that allow Google to further track and identify a particular user, while in private browsing mode; 4) any "User-ID" the website issued to the user while in private browsing mode, allowing Google to track and match the user across other websites the user visits, whether in private browsing mode or not; 5) the geolocation of the user while in private browsing mode; and 6) information contained in "Google cookies" from prior browsing sessions which, at a minimum, contain the prior websites the user has viewed, and may also contain usernames, login information, browsing activity (such as clicking buttons on websites), which in turn helps Google enrich Google's profile on the user, which Google then uses for its own benefit and profit.

**INTERROGATORY NO. 9:**

Describe with particularity YOUR understanding of the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" *see* FAC ¶ 3, including by stating the basis for YOUR understanding and stating whether YOU believed using private browsing would completely conceal YOUR internet browsing activity from everyone, or if not, identifying the persons or entities which YOU understood would still be able to view YOUR internet browsing activity when YOU were in private browsing mode.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Davis objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Davis' (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Davis responds that he reviewed the Chrome Incognito Notice (i.e., the Incognito splash screen) and Google's representations contained therein each time he began a private browsing mode session in Chrome. Plaintiff Davis further responds that, at or around the time he opened his Google Account and at times thereafter, he reviewed Google representations that he was in "control" of what information Google collects and could exercise such control by enabling private browsing mode, such as the representations outlined in paragraphs 2 and 42 of the First Amended Complaint. He understands this, along with the Chrome Incognito Notice (i.e., the Incognito splash screen that he reviewed each time he began a private browsing mode session in Chrome), to represent that Google would not intercept his communications when he was in private browsing mode. He does not recall whether he reviewed any other disclosures. He further responds that he understood that certain information "might" still be visible to the websites he visited, his employer or school if the browsing occurred on those networks or computers, and his internet service provider, but he never consented to Google's concurrent interception and secret transmission of any information while he was in private browsing mode.

**AMENDED RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Davis objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Davis' (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Davis responds that "private browsing" and "browse privately" are described in the Incognito splash screen he read each time he began a private browsing session in Chrome—that his activity in private browsing mode might

still be visible to the websites he visits, his employer or school, or his internet service provider. Google was not listed, and he did not consent to Google's interception and collection of his private browsing activity. Plaintiff Davis further states that, in addition to this description in the Incognito splash screen, when he begins a private browsing session in Chrome, which he changed to be the default when Chrome is launched, the background turns dark, depicts a stealthy figure, and states that Chrome will not save his browsing history, cookies and site data, and information entered into forms, reinforcing that any private browsing activity would be concealed from and not subject to Google's interception and collection. Plaintiff Davis further states that, in the Google Terms of Service, which incorporate the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—he recalls the disclosures promising that Google would not intercept and collect his private browsing activity.

**INTERROGATORY NO. 10:**

Describe with particularity YOUR alleged awareness that YOU are able to sell YOUR personal data, via other websites such as Killi (https://killi.io/earn/), *see* FAC ¶¶ 170, 175, 180, 185, 190, including by describing when YOU first became aware of this alleged fact, how YOU became aware of this alleged fact, whether you contend that YOU could sell to Killi or other entities the categories of "personal data" that YOU allege Google misappropriated, whether you have ever attempted to sell such data (and if not, why not), and whether YOU contend that Google's alleged conduct has affected YOUR alleged ability to sell YOUR personal data via other websites such as Killi.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff Davis objects to Interrogatory No. 10 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that Plaintiff Davis' sale of any personal data is a necessary predicate for any claim in this litigation. Plaintiff Davis' allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Davis' (and class members') browsing activity conducted in private browsing mode, despite

Google's representations that Plaintiff Davis' (and class members') browsing information would not be saved. Google has, instead, taken this personal data without Plaintiff Davis' (and class members') permission, which in turn helps Google enrich Google's profile of Plaintiff Davis (and class members), which Google then uses for its own benefit and profit. Plaintiff Davis seeks, among other things, non-restitutionary disgorgement of all of Google's profits that were derived, in whole or in part, from Google's unlawful interception and subsequent use of Plaintiff Davis' communications and personal data. Plaintiff Davis also objects that this interrogatory is compound, asking in part about his awareness that he is able to sell personal data but then separately including requests about the separate topics of 1) when he first became aware, 2) how he became aware, 3) whether he has ever attempted to sell his personal data, 4) if he has not attempted to sell his personal data, why not, and 5) whether Google's unlawful interception of the personal data has affected his ability to sell that personal data. This interrogatory therefore counts as five separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Davis responds that he has been aware of the value of his personal data for years, and he chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Davis cannot recall specifically when he first learned of websites like Killi, but he knew about companies like Brave and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Davis' recollection, he cannot recall attempting to sell his personal data, but because Plaintiff Davis could sell his personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Davis was in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing compensation to Plaintiff Davis.

## __VERIFICATION__

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.

_____
NOTARY PUBLIC SIGNATURE

1    Dated: June 1, 2021                 **MORGAN & MORGAN**

2                                        */s/ John A. Yanchunis*

3                                        John A. Yanchunis (*pro hac vice*)
                                         Ryan J. McGee (*pro hac vice*)
4                                        **MORGAN & MORGAN**
                                         201 N. Franklin Street, 7th Floor
5                                        Tampa, FL 33602
                                         Tel.: (813) 223-5505
6                                        Fax: (813) 222-4736
                                         jyanchunis@forthepeople.com
7                                        rmcgee@forthepeople.com

8                                        Mark C. Mao, CA Bar No. 236165
                                         Sean P. Rodriguez, CA Bar No. 262437
9                                        Beko Richardson, CA Bar No. 238027
                                         **BOIES SCHILLER FLEXNER LLP**
10                                       44 Montgomery St., 41st Floor
                                         San Francisco, CA 94104
11                                       Tel.: (415) 293-6800
                                         Fax: (415) 293-6899
12                                       mmao@bsfllp.com
                                         srodriguez@bsfllp.com
13                                       brichardson@bsfllp.com

14                                       James Lee (admitted *pro hac vice*)
                                         Rossana Baeza (admitted *pro hac vice*)
15                                       **BOIES SCHILLER FLEXNER LLP**
                                         100 SE 2nd St., 28th Floor
16                                       Miami, FL 33131
                                         Tel.: (305) 539-8400
17                                       Fax: (303) 539-1307
                                         jlee@bsfllp.com
18                                       rbaeza@bsfllp.com

19                                       William S. Carmody
                                         Shawn Rabin
20                                       Steven M. Shepard
                                         **SUSMAN GODFREY L.L.P.**
21                                       1301 Avenue of the Americas, 32nd Floor
22                                       New York, New York 10019-6023
                                         Telephone: (212) 336-8330
23                                       Facsimile: (212) 336-8340

24                                       Amanda K. Bonn (270891)
25                                       **SUSMAN GODFREY L.L.P.**
                                         1900 Avenue of the Stars, Suite 1400
26                                       Los Angeles, California 90067
                                         Telephone: (310) 789-3100
27                                       Facsimile: (310) 789-3150

28                                       *Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On June 1, 2021, I served the following document described as:

**Plaintiff's Amended Objections and Responses to Defendant's Second Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on June 1, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

    Executed on June 1, 2021, at Tampa, Florida.


          */s/ Jennifer Cabezas*
          Jennifer Cabezas

# EXHIBIT 28

# PLAINTIFF MONIQUE TRUJILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST AND SECOND SETS OF INTERROGATORIES

# Redacted Version of Document Sought to be Sealed

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

                Plaintiffs,

   v.

GOOGLE LLC,

                Defendant.

Case No.  5:20-cv-03664-LHK-SVK

**PLAINTIFF MONIQUE TRUJILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST AND SECOND SETS OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Monique Trujillo ("Trujillo") hereby objects and responds to Defendant's, Google LLC ("Google"), First and Second Sets of Interrogatories (Nos. 1–10). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Trujillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Trujillo may become aware of additional facts or evidence and her analysis of the case may change. Plaintiff Trujillo reserves all rights to supplement and amend her objections and responses accordingly.

**INTERROGATORY NO. 1:**

Describe with particularity each time YOU reviewed the GOOGLE TERMS OF SERVICE, GOOGLE PRIVACY POLICY, MY GOOGLE ACTIVITY, CHROME INCOGNITO NOTICE, CHROME TERMS OF SERVICE, and/or CHROME PRIVACY NOTICE prior to the filing of the COMPLAINT and, if YOU reviewed such documents, on what date(s) and which version(s) YOU reviewed, and whether YOU reviewed the entire document(s) or only portion(s) of the document(s) (if only portion(s), describe with particularity which portion(s) you reviewed).

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff Trujillo objects to Interrogatory No. 1 to the extent it purports to suggest that review of and consent to Google's Privacy Policy is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Trujillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that she reviewed the Incognito splash screen and Google's representations contained therein each time she began a private browsing mode session in Chrome. Plaintiff Trujillo further responds that, at or around the time she opened her Google Account, which was in approximately ████, and at times thereafter, she reviewed Google representations that she was in "control" of what information Google collects, and to the best of her ability recalls reviewing a Google page six or seven years ago describing private browsing that represented she was in "control" of what information Google collects and that she could exercise such control by enabling private browsing mode. She does not recall the exact dates she reviewed these disclosures, but believes it was six or seven years ago, and she reviewed the Incognito splash screen each time she began a private browsing mode session in Chrome.

**INTERROGATORY NO. 2:**

Describe with particularity YOUR use of CHROME, including: the date YOU first began using CHROME on each device (*e.g.*, mobile devices, tablets, laptops, and/or desktops); the frequency with which YOU used CHROME on each device; which browser modes YOU used in CHROME on each device; whether you logged into a Google account when you used CHROME on each device; which Google account(s) YOU logged into when YOU used CHROME on each device; which website(s) YOU visited while using CHROME on each device; whether you ever

reviewed or deleted data on MY GOOGLE ACTIVITY; and how often YOU enabled CHROME INCOGNITO MODE while logged out of your Google account.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff Trujillo objects to Interrogatory No. 2 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Trujillo used Chrome, the Google accounts logged into for each instance of using Chrome, each website visited with Chrome, and other disproportional details, rendering this Interrogatory No. 2 not possible to fully and accurately answer. Plaintiff Trujillo also objects that this interrogatory is compound, asking in part about her use of Chrome but then separately including a request regarding the separate topic of whether she "reviewed or deleted data on MY GOOGLE ACTIVITY." This interrogatory therefore counts as two separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that she has used Chrome on her computers for at least the past decade. Since ████████, Plaintiff Trujillo used Chrome on her computers and phones, including Incognito private browsing mode, which she uses at least a few times per month. During the Class Period, Plaintiff Trujillo uses private browsing mode on both her computers and phones to ████████████████████████████, ████████████████████████████████████████████ To the best of Plaintiff Trujillo's knowledge, she has never logged into any Google accounts in Chrome when using Chrome's private browsing mode, but may have logged into her Google account, ████████████████ when using Chrome in its non-private browsing mode. To the best of Plaintiff Trujillo's knowledge, Plaintiff Trujillo has not reviewed or deleted her My Google Activity.

However, Plaintiff Trujillo does not know and has not been told all the ways that Google is tracking her during her private browsing sessions. Further, she does not know by "logging into Google," whether Google is including other processes and apps that may be running, Google-branded or Google-supported. She may further supplement this response if she is provided more information about how Google is tracking people in private browsing in undisclosed ways. For

now, she is only talking about what is going on during private browsing, on the browser application itself, based on what she can actually observe in the ordinary course of her browsing.

**INTERROGATORY NO. 3:**

Describe with particularity how YOU have been harmed or damaged by DEFENDANT's conduct alleged in YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff Trujillo objects to Interrogatory No. 3 as discovery has not closed and Plaintiff Trujillo does not know the full extent of Defendant's misrepresentations and deceptive conduct in collecting, gathering, analyzing, and monetizing Plaintiff Trujillo's private browsing activity, and Plaintiff Trujillo reserves her right to amend this interrogatory as the case proceeds.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that her privacy is very important to her and Plaintiff Trujillo takes careful precautions to protect her privacy. When Plaintiff Trujillo engaged in the private browsing mode in Google's Chrome browser, Plaintiff Trujillo read Google's representations that Plaintiff Trujillo's browsing activity would not be collected and that she could browse the web privately. Based on Google's representations, Plaintiff Trujillo reasonably believed that she could control the information that would be shared with Google. Plaintiff Trujillo considered this browsing activity private and confidential, and did not intend to share it with Google. Plaintiff Trujillo never consented to Google's interception of her private browsing communications, Google's collection of any data from her private browsing, or Google's use of any data from her private browsing. Plaintiff Trujillo chose the private browsing mode to avoid Google's collection of that browsing activity and to browse the web without Google spying on and gathering that browsing activity for its own monetary gain. Without Plaintiff Trujillo's knowledge, Google continued to monitor and collect her browsing activity and used that browsing activity for its own monetary gain. Plaintiff Trujillo is familiar with other web browsers that pay users a fee for their browsing.

**INTERROGATORY NO. 4:**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Without limitation as to time period, describe with particularity all websites, applications, or other online services with which YOU voluntarily shared any DATA AT ISSUE.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Trujillo objects to Interrogatory No. 4 as overly broad, vague, and not proportional to the needs of the litigation, considering Google requests each and every instance when Plaintiff Trujillo may have shared "data" with a website, application, or other online service, regardless of any time limitation, rendering this Interrogatory No. 4 not possible to fully and accurately answer. In addition, to the extent this request seeks information regarding "data" shared when private browsing mode was not enabled, it is irrelevant.

Notwithstanding and subject to these objections, Plaintiff Trujillo states that, to the extent she can recall, during the Class Period the websites visited most, regardless of whether she was browsing in private browsing mode or not, include: █████████████ ████████████████   ███████████   ███████████ ████████████████████████████████████ ████████████ Plaintiff Trujillo further states that, to the extent she can recall, during the Class Period the applications she most used include: ████████████; ████████████████████████

**INTERROGATORY NO. 5:**

Describe with particularity each time YOU used private browsing mode, including separately identifying for each time the following: the browser, the private browsing mode, the date and time, the device, the websites visited, how long each private browsing session lasted and YOUR location.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Trujillo objects to Interrogatory No. 5 as overly broad, vague, and not proportional to the needs of the litigation, insofar as Google may be requesting particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Trujillo's location while engaged in these activities. Further, Plaintiff Trujillo chooses the private browsing mode because

she does not want this activity tracked, recorded, or otherwise memorialized and, therefore, requiring Plaintiff Trujillo to recall the details sufficient to respond to Interrogatory No. 5 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Trujillo, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that she used private browsing mode with the specific purpose of that activity not being tracked, recorded, or otherwise memorialized and, therefore, Plaintiff Trujillo cannot recall the particular details of each and every time she engaged in private browsing mode. Plaintiff Trujillo used Chrome's and Safari's private browsing modes ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████ This private browsing activity was done in both Chrome and Safari, but the majority of the private browsing activity was done in Chrome Incognito mode. The overwhelming majority of Plaintiff Trujillo's private browsing activity was done in ███████

**INTERROGATORY NO. 6:**

Describe with particularity YOUR use of all non-CHROME private browsing modes, including: what non-CHROME private browsing modes YOU used, the time periods in which YOU used each of the non-CHROME private browsing modes YOU identified, and, if any, what disclosures from publishers of the non-CHROME browsers you reviewed or relied on during the time periods YOU identified.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff Trujillo objects to Interrogatory No. 6 as overly broad, vague, and not proportional to the needs of the litigation, to the extent, like with Interrogatory No. 5, Google requests particular details of dates, times, devices, websites visited, the duration of those visits, and Plaintiff Trujillo's location while engaged in these activities. Further, Plaintiff Trujillo chooses the private browsing mode because she does not want this activity tracked, recorded, or otherwise memorialized and,

therefore, requiring Plaintiff Trujillo to recall the details sufficient to respond to Interrogatory No. 6 would be unreasonable and not proportional to the needs of the litigation. Further, according to Google's Motion to Dismiss, Google, unlike Plaintiff Trujillo, collects most if not all of the information requested. Accordingly, Google is in the best position to answer this Interrogatory since it is already in possession of this information. Finally, Plaintiff Trujillo objects to the term "publishers of non-Chrome browsers" because this term is meaningless. Plaintiff Trujillo does not understand the distinction Google appears to be making between websites on a Chrome browser and websites on a non-Chrome browser.

Notwithstanding and subject to these objections, Plaintiff Trujillo recalls that some of her private browsing activity for the last six or seven years was done in Safari, but the majority of her private browsing activity was in Chrome Incognito mode. Aside from rejecting cookie permissions when possible, Plaintiff Trujillo recalls seeing a private browsing mode screen in Safari that represents the browsing history will not be saved.

**INTERROGATORY NO. 7:**

Describe with particularity each specific "Google representation" that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" see SAC ¶¶ 3, 149, including by stating whether YOU in fact reviewed each representation and, if so, when YOU first reviewed each representation, and whether YOU in fact relied upon each representation in using private browsing mode.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff Trujillo objects to Interrogatory No. 7 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Trujillo's (and class members')

browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Trujillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that, although she is not sure whether she reviewed the Google Terms of Service, which incorporate the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice, the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen—she did review the Incognito splash screen and Google's representations contained therein each time she began a private browsing mode session in Chrome, which did not state that Google would intercept and collect her private browsing activity.

**INTERROGATORY NO. 8:**

Describe with particularity each category of "personal and sensitive user data" that YOU contend Google unlawfully "intercepted." *See* SAC ¶ 1.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff Trujillo objects to Interrogatory No. 8. as overly broad, vague, and not proportional to the needs of the litigation, considering this interrogatory requires the identification of each and every instance when Google unlawfully intercepted Plaintiff Trujillo's data in order to categorize such data, rendering this Interrogatory No. 8 not possible to fully and accurately answer.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that each and every time that Plaintiff Trujillo (and class members) used private browsing mode, Google intercepted at least the following categories of personal and sensitive user data: 1) the "GET request," which provides the content the user's browsing software asked the website to display while in private browsing mode; 2) the unique internet protocol ("IP") address of the user's connection to the internet while in private browsing mode; 3) information identifying the browser software that the user is using, including any "fingerprint" data (such as user interactions with Google's special, unique fonts and pixels) that allow Google to further track and identify a particular user, while in private browsing mode; 4) any "User-ID" the website issued to the user

while in private browsing mode, allowing Google to track and match the user across other websites the user visits, whether in private browsing mode or not; 5) the geolocation of the user while in private browsing mode; and 6) information contained in "Google cookies" from prior browsing sessions which, at a minimum, contain the prior websites the user has viewed, and may also contain usernames, login information, browsing activity (such as clicking buttons on websites), which in turn helps Google enrich Google's profile on the user, which Google then uses for its own benefit and profit.

**INTERROGATORY NO. 9:**

Describe with particularity YOUR understanding of the terms "private browsing" and "browse privately" in the Google disclosures that YOU allege led YOU to "believe[] that [YOUR] data would not be collected by Google and that Google would not intercept [YOUR] communications when [YOU] were in 'private browsing mode,'" *see* SAC ¶ 3, including by stating the basis for YOUR understanding and stating whether YOU believed using private browsing would completely conceal YOUR internet browsing activity from everyone, or if not, identifying the persons or entities which YOU understood would still be able to view YOUR internet browsing activity when YOU were in private browsing mode.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff Trujillo objects to Interrogatory No. 9 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that review of and consent to Google's Terms of Service, or any terms of service, privacy policies, or other notices incorporated therein, is a necessary predicate for any claim in this litigation and not proportional to the needs of this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Trujillo's (and class members') browsing information would not be saved.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that "private browsing" and "browse privately" are described in the Incognito splash screen she read each time

she began a private browsing session in Chrome—that her activity in private browsing mode might still be visible to the websites she visits, her employer or school, or her internet service provider. Google was not listed, and she did not consent to Google's interception and collection of her private browsing activity. Plaintiff Trujillo further states that, in addition to this description in the Incognito splash screen, when she begins a private browsing session in Chrome the background turns dark, depicts a stealthy figure, and states that Chrome will not save her browsing history, cookies and site data, and information entered into forms, reinforcing that any private browsing activity would be concealed from and not subject to Google's interception and collection.

**INTERROGATORY NO. 10:**

Describe with particularity YOUR alleged awareness that YOU are able to sell YOUR personal data, via other websites such as Killi (https://killi.io/earn/), *see* SAC ¶¶ 170, 175, 180, 185, 190, including by describing when YOU first became aware of this alleged fact, how YOU became aware of this alleged fact, whether you contend that YOU could sell to Killi or other entities the categories of "personal data" that YOU allege Google misappropriated, whether you have ever attempted to sell such data (and if not, why not), and whether YOU contend that Google's alleged conduct has affected YOUR alleged ability to sell YOUR personal data via other websites such as Killi.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff Trujillo objects to Interrogatory No. 10 as not relevant to the claims and/or defenses of this case to the extent it purports to suggest that Plaintiff Trujillo's sale of any personal data is a necessary predicate for any claim in this litigation. Plaintiff Trujillo's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting, analyzing, and monetizing Plaintiff Trujillo's (and class members') browsing activity conducted in private browsing mode, despite Google's representations that Plaintiff Trujillo's (and class members') browsing information would not be saved. Google has, instead, taken this personal data without Plaintiff Trujillo's (and class members') permission, which in turn helps Google enrich Google's profile of Plaintiff Trujillo (and class members), which Google then uses for its own benefit and profit.

Plaintiff Trujillo seeks, among other things, non-restitutionary disgorgement of all of Google's profits that were derived, in whole or in part, from Google's unlawful interception and subsequent use of Plaintiff Trujillo's communications and personal data. Plaintiff Trujillo also objects that this interrogatory is compound, asking in part about her awareness that she is able to sell personal data but then separately including requests about the separate topics of 1) when she first became aware, 2) how she became aware, 3) whether she has ever attempted to sell her personal data, 4) if she has not attempted to sell her personal data, why not, and 5) whether Google's unlawful interception of the personal data has affected her ability to sell that personal data. This interrogatory therefore counts as five separate interrogatories.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that she has been aware of the value of her personal data for years, and she chose to browse privately to protect that personal data from Google's and other tech companies' collection for their own benefit and profit. Plaintiff Trujillo cannot recall specifically when she first learned of websites like Killi, but she knew about companies like Brave and others that provide monetary compensation for personal data before filing this lawsuit. To the best of Plaintiff Trujillo's recollection, she cannot recall attempting to sell her personal data, but because Plaintiff Trujillo could sell her personal data to websites like Killi and similar websites, the personal data that Google has unlawfully intercepted while Plaintiff Trujillo was in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing compensation to Plaintiff Trujillo.

## **<u>VERIFICATION</u>**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.

_____
NOTARY PUBLIC SIGNATURE

1

Dated: June 7, 2021

**MORGAN & MORGAN**

2

*/s/ John A. Yanchunis*

3

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)

4

**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor

5

Tampa, FL 33602
Tel.: (813) 223-5505

6

Fax: (813) 222-4736
jyanchunis@forthepeople.com

7

rmcgee@forthepeople.com

8

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437

9

Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**

10

44 Montgomery St., 41st Floor
San Francisco, CA 94104

11

Tel.: (415) 293-6800
Fax: (415) 293-6899

12

mmao@bsfllp.com
srodriguez@bsfllp.com

13

brichardson@bsfllp.com

14

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)

15

**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor

16

Miami, FL 33131
Tel.: (305) 539-8400

17

Fax: (303) 539-1307
jlee@bsfllp.com

18

rbaeza@bsfllp.com

19

William S. Carmody
Shawn Rabin

20

Steven M. Shepard
**SUSMAN GODFREY L.L.P.**

21

1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023

22

Telephone: (212) 336-8330

23

Facsimile: (212) 336-8340

24

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**

25

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

26

Telephone: (310) 789-3100

27

Facsimile: (310) 789-3150

28

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Ryan J. McGee, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On June 7, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's First and Second Sets of Interrogatories**

By electronic mail transmission from rmcgee@forthepeople.com on June 7, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor

Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on June 7, 2021, at Tampa, Florida.


*/s/ Ryan J. McGee*
Ryan J. McGee

1
2                          **<u>VERIFICATION</u>**

3        Under penalties of perjury, I declare that I have read the foregoing Answers to

4   Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

5                              By: *Monique Carolyne Trujillo*

6                              Printed Name:   Monique Carolyne Trujillo

7                              Title:   N/A

8
9   STATE OF _____ Texas _____

10  COUNTY OF _____ Comal _____

11       The foregoing instrument was acknowledged before me this  17th  day of ____ November ____,

12  2021, by _____ Monique Carolyne Trujillo _____, who has produced as identification

13  _____ California DRIVER LICENSE _____, bearing number ____ B8914755 ____, expiring

14  _____ 03/20/2022 _____ and who did (did not) take an oath.

15
16
17  (Jurat:)                              *Lauren Peterson*
                                          NOTARY PUBLIC SIGNATURE
18
                    NOTARY PUBLIC          Lauren Peterson
19                  Lauren Peterson        Notary Public, State of Texas
                    ID NUMBER              Expiration:      06/03/2025
20   STATE OF TEXAS 12499352-4
                    COMMISSION EXPIRES
                    June 3, 2025
21
    Notarized online using audio-video communication
22
23
24
25
26
27
28

# EXHIBIT 29

# PLAINTIFF CHASOM BROWN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12-15)

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

                Plaintiffs,

   v.

GOOGLE LLC,

                Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF CHASOM BROWN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12–15)**

14
15
16
17
18
19
20

      Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Chasom Brown ("Brown") hereby objects and responds to Defendant's, Google LLC ("Google"), Fourth Set of Interrogatories (Nos. 12–15). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Brown's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Brown may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Brown reserves all rights to supplement and amend his objections and responses accordingly.

21

**INTERROGATORY NO. 12:**

22
23
24
25
26
27

      Describe with particularity whether YOU agreed to all terms in the documents you allege are part of the contract between YOU and Google, *see* SAC ¶ 268, including Google's TERMS OF SERVICE, CHROME TERMS OF SERVICE, Google's PRIVACY POLICY, CHROME PRIVACY NOTICE, and the CHROME INCOGNITO NOTICE, and if YOU did not agree to all terms in these documents, identify all terms YOU did agree to.

28

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff Brown objects to this Interrogatory to the extent it purports to suggest that his agreement with Google's Terms of Service, Chrome Terms of Service, Privacy Policy, Chrome Privacy Notice, and/or Chrome Incognito Notice is a necessary predicate for any claim (other than the contract claim) in this litigation. Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Brown responds that the Chrome Privacy Notice promises Plaintiff and Class members that Google does not collect or use private browsing communications, including by explaining that "[y]ou can limit the information Chrome stores on your system by using incognito mode" and that, within Incognito mode, "Chrome won't store certain information, such as: Basic browsing history information like URLs, cached paged text, or IP addresses of pages linked from the websites [users] visit [and] Snapshots of pages that [users] visit." Additionally, Google's Privacy Policy, the Incognito Screen, and the "Search & Browse Privately" page similarly promise that users can control Google's collection and use of their browsing data including by enabling private browsing mode such as Incognito mode, and that Google would not collect and use private browsing data. Google breached those promises, and as a result was able to obtain the personal property of Plaintiff and class members and earn unjust profits.

**INTERROGATORY NO. 13:**

Identify and describe with particularity any money that you have paid to Google.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff Brown objects to this Interrogatory to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal (and private) information and communications. Plaintiff Brown further objects to this Interrogatory as irrelevant to the extent it seeks information concerning money paid not related to private browsing.

Notwithstanding and subject to these objections, Plaintiff Brown responds that, to the best of his recollection, he has not directly paid any money to Google. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products.

**INTERROGATORY NO. 14:**

Identify all California or other applicable laws that you contend render the information that you allege Google misappropriated from you your personal property. *See, e.g.*, SAC ¶ 137 ("The CCPA recognizes that consumers' personal data is a property right."); *id*. ¶ 274 ("As a result of Google's breach(es), Google was able to obtain the personal property of Plaintiffs and Class members and earn unjust profits"); *id*. ¶ 282 ("Plaintiffs and Class members have suffered injury-

in-fact, including the loss of money and/or property as a result of Google's … practices, to wit, the unauthorized disclosure and taking of the personal information which has value as demonstrated by its use and sale by Google.").

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff Brown objects to this Interrogatory on the basis that discovery has not closed, and Google is still producing documents evidencing its unlawful interception, collection of data from, analysis, and monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode. Therefore, Plaintiff reserves his right to amend this response as discovery proceeds.

Notwithstanding and subject to these objections, Plaintiff Brown responds that his Second Amended Complaint and pleadings filed in this case identify California and other applicable laws that render the information that Google misappropriated from Plaintiff his personal property. These include: the California Constitution; the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631 and 632; the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; invasion of privacy under California law; intrusion upon seclusion under California law; and breach of contract under California law. Google's secret embedded code causes a secret, separate message containing Plaintiff's communications and data at issue to Google's servers in California, and Google's employees in California reuse those communications and data collected, bringing Google's conduct under the laws of California. Additionally, Google's own Terms of Service explicitly states "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and [users] and Google consent to personal jurisdiction in those courts." By choosing California law for the resolution of disputes, Google has conceded that it is appropriate to apply California law to its unlawful interception, collection of data from, analysis, and

monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode.

**INTERROGATORY NO. 15:**

Identify and describe in detail any and all crimes of which YOU have been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible. *See, e.g.*, *Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010) ("[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry" (citation omitted)); *Del Campo v. American Corrective Counseling Servs., Inc.*, 2008 WL 2038047, at *4 (N.D. Cal. May 12, 2008) ("[I]t is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs" (citation omitted)); *Pena v. Taylor Farms Pacific, Inc.*, 305 F.R.D. 197, 215-16 (E.D. Cal. 2015) (finding Plaintiff's conviction for identity theft near the time period relevant to her claims and failure to initially disclose the conviction was "likely to cast doubt on her honesty and credibility," which rendered her "not an adequate representative.").

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff Brown objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning any crimes for which Plaintiff was charged but were dismissed or for which Plaintiff was otherwise exonerated. Plaintiff further objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning criminal convictions for which more than ten years have passed since conviction or release from confinement, whichever is later. Fed. R. Civ. P. 609(b).

Notwithstanding and subject to these objections, none; Plaintiff has never been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible for any crimes.

**<u>VERIFICATION</u>**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.

_____
NOTARY PUBLIC SIGNATURE

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On July 30, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Fourth Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

      Executed on July 30, 2021, at Tampa, Florida.


              */s/ Jennifer Cabezas*
              Jennifer Cabezas

# EXHIBIT 30

# PLAINTIFF WILLIAM BYATT'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12-15)

# Redacted Version of Document Sought to be Sealed

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

               Plaintiffs,

   v.

GOOGLE LLC,

               Defendant.

Case No.  5:20-cv-03664-LHK-SVK

## PLAINTIFF WILLIAM BYATT'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12–15)

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff William Byatt ("Byatt") hereby objects and responds to Defendant's, Google LLC ("Google"), Fourth Set of Interrogatories (Nos. 12–15). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Byatt's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Byatt may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Byatt reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 12:**

Describe with particularity whether YOU agreed to all terms in the documents you allege are part of the contract between YOU and Google, *see* SAC ¶ 268, including Google's TERMS OF SERVICE, CHROME TERMS OF SERVICE, Google's PRIVACY POLICY, CHROME PRIVACY NOTICE, and the CHROME INCOGNITO NOTICE, and if YOU did not agree to all terms in these documents, identify all terms YOU did agree to.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff Byatt objects to this Interrogatory to the extent it purports to suggest that his agreement with Google's Terms of Service, Chrome Terms of Service, Privacy Policy, Chrome Privacy Notice, and/or Chrome Incognito Notice is a necessary predicate for any claim (other than the contract claim) in this litigation. Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that the Chrome Privacy Notice promises Plaintiff and Class members that Google does not collect or use private browsing communications, including by explaining that "[y]ou can limit the information Chrome stores on your system by using incognito mode" and that, within Incognito mode, "Chrome won't store certain information, such as: Basic browsing history information like URLs, cached paged text, or IP addresses of pages linked from the websites [users] visit [and] Snapshots of pages that [users] visit." Additionally, Google's Privacy Policy, the Incognito Screen, and the "Search & Browse Privately" page similarly promise that users can control Google's collection and use of their browsing data including by enabling private browsing mode such as Incognito mode, and that Google would not collect and use private browsing data. Google breached those promises, and as a result was able to obtain the personal property of Plaintiff and class members and earn unjust profits.

**INTERROGATORY NO. 13:**

Identify and describe with particularity any money that you have paid to Google.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff Byatt objects to this Interrogatory to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal (and private) information and communications. Plaintiff Byatt further objects to this Interrogatory as irrelevant to the extent it seeks information concerning money paid not related to private browsing.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that, to the best of his recollection, he has paid to Google approximately ▇ per month for Google One (since approximately ▇▇▇▇▇ per month for YouTube Premium (since approximately ▇▇▇▇▇ as a Google Play Music subscriber, which was converted into a YouTube premium subscription in approximately ▇▇▇▇▇), and approximately ▇▇▇▇ per month for Google Fi (since approximately ▇▇▇▇ Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products.

**INTERROGATORY NO. 14:**

Identify all California or other applicable laws that you contend render the information that you allege Google misappropriated from you your personal property. *See, e.g.*, SAC ¶ 137 ("The CCPA recognizes that consumers' personal data is a property right."); *id*. ¶ 274 ("As a result of Google's breach(es), Google was able to obtain the personal property of Plaintiffs and Class members and earn unjust profits"); *id*. ¶ 282 ("Plaintiffs and Class members have suffered injury-in-fact, including the loss of money and/or property as a result of Google's … practices, to wit, the unauthorized disclosure and taking of the personal information which has value as demonstrated by its use and sale by Google.").

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff Byatt objects to this Interrogatory on the basis that discovery has not closed, and Google is still producing documents evidencing its unlawful interception, collection of data from, analysis, and monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode. Therefore, Plaintiff reserves his right to amend this response as discovery proceeds.

Notwithstanding and subject to these objections, Plaintiff Byatt responds that his Second Amended Complaint and pleadings filed in this case identify California and other applicable laws that render the information that Google misappropriated from Plaintiff his personal property. These include: the California Constitution; the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631 and 632; the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; invasion of privacy under California law; intrusion upon seclusion under California law; and breach of contract under California law. Google's secret embedded code causes a secret, separate message containing Plaintiff's communications and data at issue to Google's servers in California, and Google's employees in California reuse those communications and data collected, bringing Google's conduct under the laws of California. Additionally, Google's own Terms of Service explicitly states "California law will govern all disputes arising out of or relating to these terms,

service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and [users] and Google consent to personal jurisdiction in those courts." By choosing California law for the resolution of disputes, Google has conceded that it is appropriate to apply California law to its unlawful interception, collection of data from, analysis, and monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode.

**INTERROGATORY NO. 15:**

Identify and describe in detail any and all crimes of which YOU have been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible. *See, e.g.*, *Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010) ("[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry" (citation omitted)); *Del Campo v. American Corrective Counseling Servs., Inc.*, 2008 WL 2038047, at *4 (N.D. Cal. May 12, 2008) ("[I]t is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs" (citation omitted)); *Pena v. Taylor Farms Pacific, Inc.*, 305 F.R.D. 197, 215-16 (E.D. Cal. 2015) (finding Plaintiff's conviction for identity theft near the time period relevant to her claims and failure to initially disclose the conviction was "likely to cast doubt on her honesty and credibility," which rendered her "not an adequate representative.").

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff Byatt objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning any crimes for which Plaintiff was charged but were dismissed or for which Plaintiff was otherwise exonerated. Plaintiff further objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning criminal convictions for which more than ten years have passed since conviction or release from confinement, whichever is later. Fed. R. Civ. P. 609(b).

1

2       Notwithstanding and subject to these objections, none; Plaintiff has never been charged,

3  convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible for any

4  crimes.

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.


_____
NOTARY PUBLIC SIGNATURE

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

## PROOF OF SERVICE

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On July 30, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Fourth Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on July 30, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 31

# PLAINTIFF CHRISTOPHER CASTILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12-15)

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

6
7

               Plaintiffs,

v.

8
9

GOOGLE LLC,

               Defendant.

Case No.  5:20-cv-03664-LHK-SVK

10
11
12
13

**PLAINTIFF CHRISTOPHER CASTILLO'S OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12–15)**

14
15
16
17
18
19
20

     Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Christopher Castillo ("Castillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Fourth Set of Interrogatories (Nos. 12–15). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Castillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Castillo may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Castillo reserves all rights to supplement and amend his objections and responses accordingly.

21
22

**INTERROGATORY NO. 12:**

23
24
25
26
27

     Describe with particularity whether YOU agreed to all terms in the documents you allege are part of the contract between YOU and Google, *see* SAC ¶ 268, including Google's TERMS OF SERVICE, CHROME TERMS OF SERVICE, Google's PRIVACY POLICY, CHROME PRIVACY NOTICE, and the CHROME INCOGNITO NOTICE, and if YOU did not agree to all terms in these documents, identify all terms YOU did agree to.

28

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff Castillo objects to this Interrogatory to the extent it purports to suggest that his agreement with Google's Terms of Service, Chrome Terms of Service, Privacy Policy, Chrome Privacy Notice, and/or Chrome Incognito Notice is a necessary predicate for any claim (other than the contract claim) in this litigation. Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that the Chrome Privacy Notice promises Plaintiff and Class members that Google does not collect or use private browsing communications, including by explaining that "[y]ou can limit the information Chrome stores on your system by using incognito mode" and that, within Incognito mode, "Chrome won't store certain information, such as: Basic browsing history information like URLs, cached paged text, or IP addresses of pages linked from the websites [users] visit [and] Snapshots of pages that [users] visit." Additionally, Google's Privacy Policy, the Incognito Screen, and the "Search & Browse Privately" page similarly promise that users can control Google's collection and use of their browsing data including by enabling private browsing mode such as Incognito mode, and that Google would not collect and use private browsing data. Google breached those promises, and as a result was able to obtain the personal property of Plaintiff and class members and earn unjust profits.

**INTERROGATORY NO. 13:**

Identify and describe with particularity any money that you have paid to Google.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff Castillo objects to this Interrogatory to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal (and private) information and communications. Plaintiff Castillo further objects to this Interrogatory as irrelevant to the extent it seeks information concerning money paid not related to private browsing.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that, to the best of his recollection, he has not directly paid any money to Google. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products.

**INTERROGATORY NO. 14:**

Identify all California or other applicable laws that you contend render the information that you allege Google misappropriated from you your personal property. *See, e.g.*, SAC ¶ 137 ("The CCPA recognizes that consumers' personal data is a property right."); *id*. ¶ 274 ("As a result of Google's breach(es), Google was able to obtain the personal property of Plaintiffs and Class members and earn unjust profits"); *id*. ¶ 282 ("Plaintiffs and Class members have suffered injury-

in-fact, including the loss of money and/or property as a result of Google's … practices, to wit, the unauthorized disclosure and taking of the personal information which has value as demonstrated by its use and sale by Google.").

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff Castillo objects to this Interrogatory on the basis that discovery has not closed, and Google is still producing documents evidencing its unlawful interception, collection of data from, analysis, and monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode. Therefore, Plaintiff reserves his right to amend this response as discovery proceeds.

Notwithstanding and subject to these objections, Plaintiff Castillo responds that his Second Amended Complaint and pleadings filed in this case identify California and other applicable laws that render the information that Google misappropriated from Plaintiff his personal property. These include: the California Constitution; the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631 and 632; the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; invasion of privacy under California law; intrusion upon seclusion under California law; and breach of contract under California law. Google's secret embedded code causes a secret, separate message containing Plaintiff's communications and data at issue to Google's servers in California, and Google's employees in California reuse those communications and data collected, bringing Google's conduct under the laws of California. Additionally, Google's own Terms of Service explicitly states "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and [users] and Google consent to personal jurisdiction in those courts." By choosing California law for the resolution of disputes, Google has conceded that it is appropriate to apply California law to its unlawful interception, collection of data from, analysis, and

monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode.

**INTERROGATORY NO. 15:**

Identify and describe in detail any and all crimes of which YOU have been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible. *See, e.g.*, *Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010) ("[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry" (citation omitted)); *Del Campo v. American Corrective Counseling Servs., Inc.*, 2008 WL 2038047, at *4 (N.D. Cal. May 12, 2008) ("[I]t is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs" (citation omitted)); *Pena v. Taylor Farms Pacific, Inc.*, 305 F.R.D. 197, 215-16 (E.D. Cal. 2015) (finding Plaintiff's conviction for identity theft near the time period relevant to her claims and failure to initially disclose the conviction was "likely to cast doubt on her honesty and credibility," which rendered her "not an adequate representative.").

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff Castillo objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning any crimes for which Plaintiff was charged but were dismissed or for which Plaintiff was otherwise exonerated. Plaintiff further objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning criminal convictions for which more than ten years have passed since conviction or release from confinement, whichever is later. Fed. R. Civ. P. 609(b).

Notwithstanding and subject to these objections, none; Plaintiff has never been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible for any crimes.

1
2
## **<u>VERIFICATION</u>**

3      Under penalties of perjury, I declare that I have read the foregoing Answers to

4 Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

5                                        By: _____

6                                        Printed Name: _____

7                                        Title: _____

8
9 STATE OF _____

10 COUNTY OF _____

11      The foregoing instrument was acknowledged before me this _____ day of _____,

12 2021, by _____, who has produced as identification

13 _____, bearing number _____, expiring

14 _____ and who did (did not) take an oath.

15
16
17                              _____
                                  NOTARY PUBLIC SIGNATURE
18
19
20
21
22
23
24
25
26
27
28

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On July 30, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Fourth Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

      Executed on July 30, 2021, at Tampa, Florida.


              */s/ Jennifer Cabezas*
              Jennifer Cabezas

# EXHIBIT 32

# PLAINTIFF JEREMY DAVIS' OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12-15)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

                Plaintiffs,

    v.

GOOGLE LLC,

                Defendant.

Case No.  5:20-cv-03664-LHK-SVK

## PLAINTIFF JEREMY DAVIS' OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12–15)

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Jeremy Davis ("Davis") hereby objects and responds to Defendant's, Google LLC ("Google"), Fourth Set of Interrogatories (Nos. 12–15). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Davis' knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Davis may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Davis reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 12:**

Describe with particularity whether YOU agreed to all terms in the documents you allege are part of the contract between YOU and Google, *see* SAC ¶ 268, including Google's TERMS OF SERVICE, CHROME TERMS OF SERVICE, Google's PRIVACY POLICY, CHROME PRIVACY NOTICE, and the CHROME INCOGNITO NOTICE, and if YOU did not agree to all terms in these documents, identify all terms YOU did agree to.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff Davis objects to this Interrogatory to the extent it purports to suggest that his agreement with Google's Terms of Service, Chrome Terms of Service, Privacy Policy, Chrome Privacy Notice, and/or Chrome Incognito Notice is a necessary predicate for any claim (other than the contract claim) in this litigation. Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, he has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Davis responds that the Chrome Privacy Notice promises Plaintiff and Class members that Google does not collect or use private browsing communications, including by explaining that "[y]ou can limit the information Chrome stores on your system by using incognito mode" and that, within Incognito mode, "Chrome won't store certain information, such as: Basic browsing history information like URLs, cached paged text, or IP addresses of pages linked from the websites [users] visit [and] Snapshots of pages that [users] visit." Additionally, Google's Privacy Policy, the Incognito Screen, and the "Search & Browse Privately" page similarly promise that users can control Google's collection and use of their browsing data including by enabling private browsing mode such as Incognito mode, and that Google would not collect and use private browsing data. Google breached those promises, and as a result was able to obtain the personal property of Plaintiff and class members and earn unjust profits.

**INTERROGATORY NO. 13:**

Identify and describe with particularity any money that you have paid to Google.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff Davis objects to this Interrogatory to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal (and private) information and communications. Plaintiff Davis further objects to this Interrogatory as irrelevant to the extent it seeks information concerning money paid not related to private browsing.

Notwithstanding and subject to these objections, Plaintiff Davis responds that, to the best of his recollection, he has not directly paid any money to Google. Plaintiff has, however, provided valuable consideration in the form of his personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products.

**INTERROGATORY NO. 14:**

Identify all California or other applicable laws that you contend render the information that you allege Google misappropriated from you your personal property. *See, e.g.*, SAC ¶ 137 ("The CCPA recognizes that consumers' personal data is a property right."); *id*. ¶ 274 ("As a result of Google's breach(es), Google was able to obtain the personal property of Plaintiffs and Class members and earn unjust profits"); *id*. ¶ 282 ("Plaintiffs and Class members have suffered injury-

in-fact, including the loss of money and/or property as a result of Google's … practices, to wit, the unauthorized disclosure and taking of the personal information which has value as demonstrated by its use and sale by Google.").

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff Davis objects to this Interrogatory on the basis that discovery has not closed, and Google is still producing documents evidencing its unlawful interception, collection of data from, analysis, and monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode. Therefore, Plaintiff reserves his right to amend this response as discovery proceeds.

Notwithstanding and subject to these objections, Plaintiff Davis responds that his Second Amended Complaint and pleadings filed in this case identify California and other applicable laws that render the information that Google misappropriated from Plaintiff his personal property. These include: the California Constitution; the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631 and 632; the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; invasion of privacy under California law; intrusion upon seclusion under California law; and breach of contract under California law. Google's secret embedded code causes a secret, separate message containing Plaintiff's communications and data at issue to Google's servers in California, and Google's employees in California reuse those communications and data collected, bringing Google's conduct under the laws of California. Additionally, Google's own Terms of Service explicitly states "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and [users] and Google consent to personal jurisdiction in those courts." By choosing California law for the resolution of disputes, Google has conceded that it is appropriate to apply California law to its unlawful interception, collection of data from, analysis, and

monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode.

**INTERROGATORY NO. 15:**

Identify and describe in detail any and all crimes of which YOU have been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible. *See, e.g.*, *Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010) ("[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry" (citation omitted)); *Del Campo v. American Corrective Counseling Servs., Inc.*, 2008 WL 2038047, at *4 (N.D. Cal. May 12, 2008) ("[I]t is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs" (citation omitted)); *Pena v. Taylor Farms Pacific, Inc.*, 305 F.R.D. 197, 215-16 (E.D. Cal. 2015) (finding Plaintiff's conviction for identity theft near the time period relevant to her claims and failure to initially disclose the conviction was "likely to cast doubt on her honesty and credibility," which rendered her "not an adequate representative.").

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff Davis objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning any crimes for which Plaintiff was charged but were dismissed or for which Plaintiff was otherwise exonerated. Plaintiff further objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning criminal convictions for which more than ten years have passed since conviction or release from confinement, whichever is later. Fed. R. Civ. P. 609(b).

Notwithstanding and subject to these objections, none; Plaintiff has never been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible for any crimes.

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2021, by _____, who has produced as identification _____, bearing number _____, expiring _____ and who did (did not) take an oath.


_____
NOTARY PUBLIC SIGNATURE

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On July 30, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Fourth Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

   Executed on July 30, 2021, at Tampa, Florida.


       */s/ Jennifer Cabezas*
       Jennifer Cabezas

# EXHIBIT 33

# PLAINTIFF MONIQUE TRUJILLO'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12-15)

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

                    Plaintiffs,

  v.

GOOGLE LLC,

                    Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF MONIQUE TRUJILLO'S OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S FOURTH SET OF INTERROGATORIES (NOS. 12–15)**

14
15
16
17
18
19
20

      Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Monique Trujillo ("Trujillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Fourth Set of Interrogatories (Nos. 12–15). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Trujillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Trujillo may become aware of additional facts or evidence and her analysis of the case may change. Plaintiff Trujillo reserves all rights to supplement and amend her objections and responses accordingly.

21

**INTERROGATORY NO. 12:**

22
23
24
25
26
27

      Describe with particularity whether YOU agreed to all terms in the documents you allege are part of the contract between YOU and Google, *see* SAC ¶ 268, including Google's TERMS OF SERVICE, CHROME TERMS OF SERVICE, Google's PRIVACY POLICY, CHROME PRIVACY NOTICE, and the CHROME INCOGNITO NOTICE, and if YOU did not agree to all terms in these documents, identify all terms YOU did agree to.

28

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff Trujillo objects to this Interrogatory to the extent it purports to suggest that her agreement with Google's Terms of Service, Chrome Terms of Service, Privacy Policy, Chrome Privacy Notice, and/or Chrome Incognito Notice is a necessary predicate for any claim (other than the contract claim) in this litigation. Plaintiff's allegations relate to Google's conduct of secretly and unlawfully intercepting, collecting data from, analyzing, and monetizing Plaintiff's (and class members') browsing activity conducted in private browsing mode, despite Google's representations (including without limitation in the Incognito private browsing mode) that private browsing mode was private and that Plaintiff's (and class members') private browsing information would not be collected by Google. Users did not need any Google account to browse privately, using Incognito mode or otherwise. Further, to the best of Plaintiff's knowledge, she has never logged into any Google accounts in Chrome when using Chrome's private browsing mode.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that the Chrome Privacy Notice promises Plaintiff and Class members that Google does not collect or use private browsing communications, including by explaining that "[y]ou can limit the information Chrome stores on your system by using incognito mode" and that, within Incognito mode, "Chrome won't store certain information, such as: Basic browsing history information like URLs, cached paged text, or IP addresses of pages linked from the websites [users] visit [and] Snapshots of pages that [users] visit." Additionally, Google's Privacy Policy, the Incognito Screen, and the "Search & Browse Privately" page similarly promise that users can control Google's collection and use of their browsing data including by enabling private browsing mode such as Incognito mode, and that Google would not collect and use private browsing data. Google breached those promises, and as a result was able to obtain the personal property of Plaintiff and class members and earn unjust profits.

**INTERROGATORY NO. 13:**

Identify and describe with particularity any money that you have paid to Google.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff Trujillo objects to this Interrogatory to the extent it purports to suggest that monetary payment to Google is a necessary predicate for any claim in this litigation. Plaintiff and class members provided valuable consideration in the form of their respective personal information they agreed to share with Google in non-private browsing mode, which has ascertainable and demonstrated value by its use and sale by Google. Because Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's (and class members') browsing activity conducted in private browsing mode, this private and personally identifiable data and content has been diminished in value, and Plaintiff and class members have been deprived of their right to control the dissemination and use of their respective personal (and private) information and communications. Plaintiff Trujillo further objects to this Interrogatory as irrelevant to the extent it seeks information concerning money paid not related to private browsing.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that, to the best of her recollection, she has not directly paid any money to Google. Plaintiff has, however, provided valuable consideration in the form of her personal information for the use of Google products, but Google unlawfully intercepted, collected data from, analyzed, and monetized Plaintiff's browsing activity conducted in private browsing mode, the value of which has been diminished and Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products.

**INTERROGATORY NO. 14:**

Identify all California or other applicable laws that you contend render the information that you allege Google misappropriated from you your personal property. *See, e.g.*, SAC ¶ 137 ("The CCPA recognizes that consumers' personal data is a property right."); *id*. ¶ 274 ("As a result of Google's breach(es), Google was able to obtain the personal property of Plaintiffs and Class members and earn unjust profits"); *id*. ¶ 282 ("Plaintiffs and Class members have suffered injury-

in-fact, including the loss of money and/or property as a result of Google's … practices, to wit, the unauthorized disclosure and taking of the personal information which has value as demonstrated by its use and sale by Google.").

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff Trujillo objects to this Interrogatory on the basis that discovery has not closed, and Google is still producing documents evidencing its unlawful interception, collection of data from, analysis, and monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode. Therefore, Plaintiff reserves her right to amend this response as discovery proceeds.

Notwithstanding and subject to these objections, Plaintiff Trujillo responds that her Second Amended Complaint and pleadings filed in this case identify California and other applicable laws that render the information that Google misappropriated from Plaintiff her personal property. These include: the California Constitution; the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631 and 632; the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; invasion of privacy under California law; intrusion upon seclusion under California law; and breach of contract under California law. Google's secret embedded code causes a secret, separate message containing Plaintiff's communications and data at issue to Google's servers in California, and Google's employees in California reuse those communications and data collected, bringing Google's conduct under the laws of California. Additionally, Google's own Terms of Service explicitly states "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and [users] and Google consent to personal jurisdiction in those courts." By choosing California law for the resolution of disputes, Google has conceded that it is appropriate to apply California law to its unlawful interception, collection of data from, analysis, and

monetization of Plaintiff's (and class members') browsing activity conducted in private browsing mode.

**INTERROGATORY NO. 15:**

Identify and describe in detail any and all crimes of which YOU have been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible. *See, e.g.*, *Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010) ("[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry" (citation omitted)); *Del Campo v. American Corrective Counseling Servs., Inc.*, 2008 WL 2038047, at *4 (N.D. Cal. May 12, 2008) ("[I]t is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs" (citation omitted)); *Pena v. Taylor Farms Pacific, Inc.*, 305 F.R.D. 197, 215-16 (E.D. Cal. 2015) (finding Plaintiff's conviction for identity theft near the time period relevant to her claims and failure to initially disclose the conviction was "likely to cast doubt on her honesty and credibility," which rendered her "not an adequate representative.").

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff Trujillo objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning any crimes for which Plaintiff was charged but were dismissed or for which Plaintiff was otherwise exonerated. Plaintiff further objects to Interrogatory No. 15 as overly broad and irrelevant, insofar as it requests information concerning criminal convictions for which more than ten years have passed since conviction or release from confinement, whichever is later. Fed. R. Civ. P. 609(b).

Notwithstanding and subject to these objections, none; Plaintiff has never been charged, convicted, pleaded guilty, pleaded no contest, and/or have otherwise been held responsible for any crimes.

1
2

## **<u>VERIFICATION</u>**

3

    Under penalties of perjury, I declare that I have read the foregoing Answers to

4

Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

5

                                By: _____

6

                                Printed Name: _____

7

                                Title: _____

8

STATE OF _____

9

COUNTY OF _____

10

11

    The foregoing instrument was acknowledged before me this _____ day of _____,

12

2021,  by   _____,   who   has   produced   as   identification

13

_____,  bearing  number  _____,  expiring

14

_____ and who did (did not) take an oath.

15
16
17

                    _____

                    NOTARY PUBLIC SIGNATURE

18
19
20
21
22
23
24
25
26
27
28

Dated: July 30, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

1

**PROOF OF SERVICE**

2

I, Jennifer Cabezas, declare:

3

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I

4

am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin

5

St., 7th Floor, Tampa, FL 33602.

6

On July 30, 2021, I served the following document described as:

7

**Plaintiff's Objections and Responses to Defendant's Fourth Set of Interrogatories**

8

By electronic mail transmission from jcabezas@forthepeople.com on July 30, 2021, by

9

transmitting a PDF format copy of such document to each person at the e-mail addresses listed

10

below. The document was transmitted by electronic transmission and such transmission was

11

reported as complete and without error:

12

13

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP

14

191 N. Wacker Drive, Suite 2700
Chicago, IL 60606

15

Tel: 312-705-7400
Fax: 312-705-7401

16

andrewschapiro@quinnemanuel.com

17

*Attorney for Defendant*

18

Stephen A. Broome

19

Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP

20

865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

21

Tel: 213-443-3000
Fax: 213-443-3100

22

stephenbroome@quinnemanuel.com

23

violatrebicka@quinnemanuel.com

24

*Attorneys for Defendant*

25

Diane M. Doolittle

26

Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP

27

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065

28

Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on July 30, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 34

# PLAINTIFF CHASOM BROWN'S VERIFIED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)

1
2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

                 Plaintiffs,

   v.

GOOGLE LLC,

                 Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF CHASOM BROWN'S VERIFIED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)**

14
15
16
17
18
19
20
21

      Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Chasom Brown ("Brown") hereby objects and responds to Defendant's, Google LLC ("Google"), Fifth Set of Interrogatories (No. 16). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Brown's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Brown may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Brown reserves all rights to supplement and amend his objections and responses accordingly.

22

**INTERROGATORY NO. 16:**

23
24
25
26

      Describe with particularity how Google's actions alleged in your COMPLAINT "diminished" the value of YOUR DATA, as the term "diminished" is used in YOUR objections and responses to Google's Requests for Admission Nos. 26–28 and YOUR objections and responses to Google's Interrogatory No. 13.

27
28

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff objects to this as a premature contention Interrogatory and a premature request for expert-related discovery. Discovery is ongoing, Google has delayed its production of documents and information in this matter, and the deadlines for Plaintiffs to disclose any expert reports and to file their motion for class certification is months away. Thus, Plaintiff reserves the right to amend the response to this request as discovery proceeds and additional facts are revealed through the discovery process. Plaintiff further objects to this Request to the extent it seeks information protected by the attorney-client, work-product privileges, and seeks the mental impressions of counsel.

Notwithstanding and subject to these objections, Plaintiff responds that by collecting Plaintiff's data while he was in private browsing mode, Google has diminished the value of this data to Plaintiff by the amount that, but for Google's actions, at least Google would have been willing to pay Plaintiff for access to that data while he was in private browsing mode. As both fact and expert discovery are ongoing, Plaintiff cannot place a specific value on the extent to which Google's actions have diminished the value of Plaintiff's data that Google impermissibly collected while Plaintiff was in private browsing mode; however, it should be uncontroversial this data is valuable to Google, otherwise Google would not have collected it.

Google has demonstrated a willingness to pay users for their data. For example, Ipsos Screenwise Panel (a consumer research study conducted by Ipsos for Google) provides users rewards and, in exchange, Ipsos collects information on how users use the internet. Participants can earn $20 for participating in the study, an additional $100 value if they join and install a special WiFi router, and up to $16 for each household member (aged 13 or older) who joins with their device. In another example, Google provides up to $1.00 in value weekly for users who complete Google's Opinion Rewards surveys.

Companies other than Google have demonstrated a similar willingness to pay consumers for their data. Additional examples include: Nielson Computer & Mobile Panel pays up to $50 per year for passive data collection of a user's internet behavior; MobileXpression Panel similarly

provides compensation to users for the passive collection of their data, including browsing and purchasing behavior; UpVoice pays a $5 signing bonus and up to $75 in a user's first year to collect data related to advertisements displayed during web browsing; SavvyConnect pays $5 per device per month to passively track data from users' devices as they browse the web; PermissionResearch provides monetary opportunities for monitoring internet browsing and purchasing activity passively; Killi passively monitors, among other things, users' internet browsing activity and purchases for approximately $1 to $4 per month, as well as referral bonuses; Rewards by Foursquare pays users for access to their device data used for market research purposes; Mobile Performance Meter pays users to passively track their website use for market research purposes; Cocoon MDR pays users 70% of the profits Cocoon derives from collecting and selling their browsing data; Imagine BC gives users the option to passive track and aggregate their browsing activity and license that data to others, including advertisers.

## <u>VERIFICATION</u>

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

Dated: September 20, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On September 20, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Fifth Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on September 20, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

     Executed on September 20, 2021, at Tampa, Florida.


         */s/ Jennifer Cabezas*
         Jennifer Cabezas

# EXHIBIT 35

# PLAINTIFF WILLIAM BYATT'S VERIFIED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3
4
5
6
7
8
9
10
11

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

               Plaintiffs,

  v.

GOOGLE LLC,

               Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12
13

**PLAINTIFF WILLIAM BYATT'S VERIFIED OBJECTIONS AND RESPONSES**
**TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)**

14

     Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff William Byatt ("Byatt")

15

hereby objects and responds to Defendant's, Google LLC ("Google"), Fifth Set of Interrogatories

16

(No. 16). These objections and responses are made solely for the purpose of and in relation to this

17

action. In addition, the objections and responses set forth in this document are based on Plaintiff

18

Byatt's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Byatt may

19

become aware of additional facts or evidence and his analysis of the case may change. Plaintiff

20

Byatt reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 16:**

21
22

     Describe with particularity how Google's actions alleged in your COMPLAINT

23

"diminished" the value of YOUR DATA, as the term "diminished" is used in YOUR objections

24

and responses to Google's Requests for Admission Nos. 26–28 and YOUR objections and

25

responses to Google's Interrogatory No. 13.

**RESPONSE TO INTERROGATORY NO. 16:**

26
27

     Plaintiff objects to this as a premature contention Interrogatory and a premature request for

28

expert-related discovery. Discovery is ongoing, Google has delayed its production of documents

and information in this matter, and the deadlines for Plaintiffs to disclose any expert reports and to file their motion for class certification is months away. Thus, Plaintiff reserves the right to amend the response to this request as discovery proceeds and additional facts are revealed through the discovery process. Plaintiff further objects to this Request to the extent it seeks information protected by the attorney-client, work-product privileges, and seeks the mental impressions of counsel.

Notwithstanding and subject to these objections, Plaintiff responds that by collecting Plaintiff's data while he was in private browsing mode, Google has diminished the value of this data to Plaintiff by the amount that, but for Google's actions, at least Google would have been willing to pay Plaintiff for access to that data while he was in private browsing mode. As both fact and expert discovery are ongoing, Plaintiff cannot place a specific value on the extent to which Google's actions have diminished the value of Plaintiff's data that Google impermissibly collected while Plaintiff was in private browsing mode; however, it should be uncontroversial this data is valuable to Google, otherwise Google would not have collected it.

Google has demonstrated a willingness to pay users for their data. For example, Ipsos Screenwise Panel (a consumer research study conducted by Ipsos for Google) provides users rewards and, in exchange, Ipsos collects information on how users use the internet. Participants can earn $20 for participating in the study, an additional $100 value if they join and install a special WiFi router, and up to $16 for each household member (aged 13 or older) who joins with their device. In another example, Google provides up to $1.00 in value weekly for users who complete Google's Opinion Rewards surveys.

Companies other than Google have demonstrated a similar willingness to pay consumers for their data. Additional examples include: Nielson Computer & Mobile Panel pays up to $50 per year for passive data collection of a user's internet behavior; MobileXpression Panel similarly provides compensation to users for the passive collection of their data, including browsing and purchasing behavior; UpVoice pays a $5 signing bonus and up to $75 in a user's first year to collect data related to advertisements displayed during web browsing; SavvyConnect pays $5 per device

per month to passively track data from users' devices as they browse the web; PermissionResearch provides monetary opportunities for monitoring internet browsing and purchasing activity passively; Killi passively monitors, among other things, users' internet browsing activity and purchases for approximately $1 to $4 per month, as well as referral bonuses; Rewards by Foursquare pays users for access to their device data used for market research purposes; Mobile Performance Meter pays users to passively track their website use for market research purposes; Cocoon MDR pays users 70% of the profits Cocoon derives from collecting and selling their browsing data; Imagine BC gives users the option to passive track and aggregate their browsing activity and license that data to others, including advertisers.

## <u>VERIFICATION</u>

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

Dated: September 20, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

1

**PROOF OF SERVICE**

2

I, Jennifer Cabezas, declare:

3

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I

4

am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin

5

St., 7th Floor, Tampa, FL 33602.

6

On September 20, 2021, I served the following document described as:

7

**Plaintiff's Objections and Responses to Defendant's Fifth Set of Interrogatories**

8

By electronic mail transmission from jcabezas@forthepeople.com on September 20, 2021,

9

by transmitting a PDF format copy of such document to each person at the e-mail addresses listed

10

below. The document was transmitted by electronic transmission and such transmission was

11

reported as complete and without error:

12

13

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP

14

191 N. Wacker Drive, Suite 2700
Chicago, IL 60606

15

Tel: 312-705-7400
Fax: 312-705-7401

16

andrewschapiro@quinnemanuel.com

17

*Attorney for Defendant*

18

19

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP

20

865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

21

Tel: 213-443-3000
Fax: 213-443-3100

22

stephenbroome@quinnemanuel.com

23

violatrebicka@quinnemanuel.com

24

*Attorneys for Defendant*

25

26

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP

27

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065

28

Tel: 650-801-5000

1
Fax: 650-8015100
dianedoolittle@quinnemanuel.com
2
thaothai@quinnemanuel.com

3
*Attorneys for Defendant*

4
William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
5
Quinn Emanuel Urquhart & Sullivan, LLP
6
1300 I Street NW, Suite 900
Washington, D.C., 20005
7
Tel: 202-538-8000
Fax: 202-538-8100
8
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com
9

10
*Attorneys for Defendant*

11
Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
12
50 California Street, 22nd Floor
San Francisco, CA 94111
13
Tel: 415-875-6600
Fax: 415-875-6700
14
jonathantse@quinnemanuel.com

15
*Attorneys for Defendant*
16

17
        Executed on September 20, 2021, at Tampa, Florida.

18

19
                        */s/ Jennifer Cabezas*
                        Jennifer Cabezas

20

21

22

23

24

25

26

27

28

# EXHIBIT 36

# PLAINTIFF CHRISTOPHER CASTILLO'S VERIFIED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No.  5:20-cv-03664-LHK-SVK

---

**PLAINTIFF CHRISTOPHER CASTILLO'S VERIFIED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Christopher Castillo ("Castillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Fifth Set of Interrogatories (No. 16). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Castillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Castillo may become aware of additional facts or evidence and his analysis of the case may change. Plaintiff Castillo reserves all rights to supplement and amend his objections and responses accordingly.

**INTERROGATORY NO. 16:**

Describe with particularity how Google's actions alleged in your COMPLAINT "diminished" the value of YOUR DATA, as the term "diminished" is used in YOUR objections and responses to Google's Requests for Admission Nos. 26–28 and YOUR objections and responses to Google's Interrogatory No. 13.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff objects to this as a premature contention Interrogatory and a premature request for expert-related discovery. Discovery is ongoing, Google has delayed its production of documents and information in this matter, and the deadlines for Plaintiffs to disclose any expert reports and to file their motion for class certification is months away. Thus, Plaintiff reserves the right to amend the response to this request as discovery proceeds and additional facts are revealed through the discovery process. Plaintiff further objects to this Request to the extent it seeks information protected by the attorney-client, work-product privileges, and seeks the mental impressions of counsel.

Notwithstanding and subject to these objections, Plaintiff responds that by collecting Plaintiff's data while he was in private browsing mode, Google has diminished the value of this data to Plaintiff by the amount that, but for Google's actions, at least Google would have been willing to pay Plaintiff for access to that data while he was in private browsing mode. As both fact and expert discovery are ongoing, Plaintiff cannot place a specific value on the extent to which Google's actions have diminished the value of Plaintiff's data that Google impermissibly collected while Plaintiff was in private browsing mode; however, it should be uncontroversial this data is valuable to Google, otherwise Google would not have collected it.

Google has demonstrated a willingness to pay users for their data. For example, Ipsos Screenwise Panel (a consumer research study conducted by Ipsos for Google) provides users rewards and, in exchange, Ipsos collects information on how users use the internet. Participants can earn $20 for participating in the study, an additional $100 value if they join and install a special WiFi router, and up to $16 for each household member (aged 13 or older) who joins with their device. In another example, Google provides up to $1.00 in value weekly for users who complete Google's Opinion Rewards surveys.

Companies other than Google have demonstrated a similar willingness to pay consumers for their data. Additional examples include: Nielson Computer & Mobile Panel pays up to $50 per year for passive data collection of a user's internet behavior; MobileXpression Panel similarly

provides compensation to users for the passive collection of their data, including browsing and purchasing behavior; UpVoice pays a $5 signing bonus and up to $75 in a user's first year to collect data related to advertisements displayed during web browsing; SavvyConnect pays $5 per device per month to passively track data from users' devices as they browse the web; PermissionResearch provides monetary opportunities for monitoring internet browsing and purchasing activity passively; Killi passively monitors, among other things, users' internet browsing activity and purchases for approximately $1 to $4 per month, as well as referral bonuses; Rewards by Foursquare pays users for access to their device data used for market research purposes; Mobile Performance Meter pays users to passively track their website use for market research purposes; Cocoon MDR pays users 70% of the profits Cocoon derives from collecting and selling their browsing data; Imagine BC gives users the option to passive track and aggregate their browsing activity and license that data to others, including advertisers.

## **<u>VERIFICATION</u>**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

1

Dated: September 20, 2021    **MORGAN & MORGAN**

2

          */s/ John A. Yanchunis*

3

          John A. Yanchunis (*pro hac vice*)
          Ryan J. McGee (*pro hac vice*)

4

          **MORGAN & MORGAN**
          201 N. Franklin Street, 7th Floor

5

          Tampa, FL 33602
          Tel.: (813) 223-5505

6

          Fax: (813) 222-4736
          jyanchunis@forthepeople.com

7

          rmcgee@forthepeople.com

8

          Mark C. Mao, CA Bar No. 236165
          Sean P. Rodriguez, CA Bar No. 262437

9

          Beko Richardson, CA Bar No. 238027
          **BOIES SCHILLER FLEXNER LLP**

10

          44 Montgomery St., 41st Floor
          San Francisco, CA 94104

11

          Tel.: (415) 293-6800
          Fax: (415) 293-6899

12

          mmao@bsfllp.com
          srodriguez@bsfllp.com

13

          brichardson@bsfllp.com

14

          James Lee (admitted *pro hac vice*)
          Rossana Baeza (admitted *pro hac vice*)

15

          **BOIES SCHILLER FLEXNER LLP**
          100 SE 2nd St., 28th Floor

16

          Miami, FL 33131
          Tel.: (305) 539-8400

17

          Fax: (303) 539-1307
          jlee@bsfllp.com

18

          rbaeza@bsfllp.com

19

          William S. Carmody
          Shawn Rabin

20

          Steven M. Shepard
          **SUSMAN GODFREY L.L.P.**

21

          1301 Avenue of the Americas, 32nd Floor

22

          New York, New York 10019-6023
          Telephone: (212) 336-8330

23

          Facsimile: (212) 336-8340

24

          Amanda K. Bonn (270891)
          **SUSMAN GODFREY L.L.P.**

25

          1900 Avenue of the Stars, Suite 1400
          Los Angeles, California 90067

26

          Telephone: (310) 789-3100
          Facsimile: (310) 789-3150

27

28

          *Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On September 20, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Fifth Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on September 20, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on September 20, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 37

# PLAINTIFF JEREMY DAVIS' VERIFIED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)

1

2

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

3

4

5

6

7

8

9

10

11

CHASOM BROWN, WILLIAM BYATT,
JEREMY DAVIS, CHRISTOPHER
CASTILLO, and MONIQUE TRUJILLO
individually and on behalf of all other
similarly situated,

                Plaintiffs,

  v.

GOOGLE LLC,

                Defendant.

Case No.  5:20-cv-03664-LHK-SVK

12

13

**PLAINTIFF JEREMY DAVIS' VERIFIED OBJECTIONS AND RESPONSES
TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)**

14

15

16

17

18

19

20

     Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Jeremy Davis ("Davis")

hereby objects and responds to Defendant's, Google LLC ("Google"), Fifth Set of Interrogatories

(No. 16). These objections and responses are made solely for the purpose of and in relation to this

action. In addition, the objections and responses set forth in this document are based on Plaintiff

Davis' knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Davis may

become aware of additional facts or evidence and his analysis of the case may change. Plaintiff

Davis reserves all rights to supplement and amend his objections and responses accordingly.

21

**INTERROGATORY NO. 16:**

22

23

24

25

     Describe with particularity how Google's actions alleged in your COMPLAINT

"diminished" the value of YOUR DATA, as the term "diminished" is used in YOUR objections

and responses to Google's Requests for Admission Nos. 26–28 and YOUR objections and

responses to Google's Interrogatory No. 13.

26

**RESPONSE TO INTERROGATORY NO. 16:**

27

28

     Plaintiff objects to this as a premature contention Interrogatory and a premature request for

expert-related discovery. Discovery is ongoing, Google has delayed its production of documents

and information in this matter, and the deadlines for Plaintiffs to disclose any expert reports and to file their motion for class certification is months away. Thus, Plaintiff reserves the right to amend the response to this request as discovery proceeds and additional facts are revealed through the discovery process. Plaintiff further objects to this Request to the extent it seeks information protected by the attorney-client, work-product privileges, and seeks the mental impressions of counsel.

Notwithstanding and subject to these objections, Plaintiff responds that by collecting Plaintiff's data while he was in private browsing mode, Google has diminished the value of this data to Plaintiff by the amount that, but for Google's actions, at least Google would have been willing to pay Plaintiff for access to that data while he was in private browsing mode. As both fact and expert discovery are ongoing, Plaintiff cannot place a specific value on the extent to which Google's actions have diminished the value of Plaintiff's data that Google impermissibly collected while Plaintiff was in private browsing mode; however, it should be uncontroversial this data is valuable to Google, otherwise Google would not have collected it.

Google has demonstrated a willingness to pay users for their data. For example, Ipsos Screenwise Panel (a consumer research study conducted by Ipsos for Google) provides users rewards and, in exchange, Ipsos collects information on how users use the internet. Participants can earn $20 for participating in the study, an additional $100 value if they join and install a special WiFi router, and up to $16 for each household member (aged 13 or older) who joins with their device. In another example, Google provides up to $1.00 in value weekly for users who complete Google's Opinion Rewards surveys.

Companies other than Google have demonstrated a similar willingness to pay consumers for their data. Additional examples include: Nielson Computer & Mobile Panel pays up to $50 per year for passive data collection of a user's internet behavior; MobileXpression Panel similarly provides compensation to users for the passive collection of their data, including browsing and purchasing behavior; UpVoice pays a $5 signing bonus and up to $75 in a user's first year to collect data related to advertisements displayed during web browsing; SavvyConnect pays $5 per device

per month to passively track data from users' devices as they browse the web; PermissionResearch provides monetary opportunities for monitoring internet browsing and purchasing activity passively; Killi passively monitors, among other things, users' internet browsing activity and purchases for approximately $1 to $4 per month, as well as referral bonuses; Rewards by Foursquare pays users for access to their device data used for market research purposes; Mobile Performance Meter pays users to passively track their website use for market research purposes; Cocoon MDR pays users 70% of the profits Cocoon derives from collecting and selling their browsing data; Imagine BC gives users the option to passive track and aggregate their browsing activity and license that data to others, including advertisers.

## <u>VERIFICATION</u>

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

Dated: September 20, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On September 20, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Fifth Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on September 20, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on September 20, 2021, at Tampa, Florida.


*/s/ Jennifer Cabezas*
Jennifer Cabezas

# EXHIBIT 38

# PLAINTIFF MONIQUE TRUJILLO'S VERIFIED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

                Plaintiffs,

   v.

GOOGLE LLC,

                Defendant.

Case No.  5:20-cv-03664-LHK-SVK

**PLAINTIFF MONIQUE TRUJILLO'S VERIFIED OBJECTIONS AND RESPONSES TO DEFENDANT'S FIFTH SET OF INTERROGATORIES (NO. 16)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Monique Trujillo ("Trujillo") hereby objects and responds to Defendant's, Google LLC ("Google"), Fifth Set of Interrogatories (No. 16). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiff Trujillo's knowledge, investigations, and analysis to date. As discovery proceeds, Plaintiff Trujillo may become aware of additional facts or evidence and her analysis of the case may change. Plaintiff Trujillo reserves all rights to supplement and amend her objections and responses accordingly.

**INTERROGATORY NO. 16:**

Describe with particularity how Google's actions alleged in your COMPLAINT "diminished" the value of YOUR DATA, as the term "diminished" is used in YOUR objections and responses to Google's Requests for Admission Nos. 26–28 and YOUR objections and responses to Google's Interrogatory No. 13.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff objects to this as a premature contention Interrogatory and a premature request for expert-related discovery. Discovery is ongoing, Google has delayed its production of documents and information in this matter, and the deadlines for Plaintiffs to disclose any expert reports and to file their motion for class certification is months away. Thus, Plaintiff reserves the right to amend the response to this request as discovery proceeds and additional facts are revealed through the discovery process. Plaintiff further objects to this Request to the extent it seeks information protected by the attorney-client, work-product privileges, and seeks the mental impressions of counsel.

Notwithstanding and subject to these objections, Plaintiff responds that by collecting Plaintiff's data while she was in private browsing mode, Google has diminished the value of this data to Plaintiff by the amount that, but for Google's actions, at least Google would have been willing to pay Plaintiff for access to that data while she was in private browsing mode. As both fact and expert discovery are ongoing, Plaintiff cannot place a specific value on the extent to which Google's actions have diminished the value of Plaintiff's data that Google impermissibly collected while Plaintiff was in private browsing mode; however, it should be uncontroversial this data is valuable to Google, otherwise Google would not have collected it.

Google has demonstrated a willingness to pay users for their data. For example, Ipsos Screenwise Panel (a consumer research study conducted by Ipsos for Google) provides users rewards and, in exchange, Ipsos collects information on how users use the internet. Participants can earn $20 for participating in the study, an additional $100 value if they join and install a special WiFi router, and up to $16 for each household member (aged 13 or older) who joins with their device. In another example, Google provides up to $1.00 in value weekly for users who complete Google's Opinion Rewards surveys.

Companies other than Google have demonstrated a similar willingness to pay consumers for their data. Additional examples include: Nielson Computer & Mobile Panel pays up to $50 per year for passive data collection of a user's internet behavior; MobileXpression Panel similarly

provides compensation to users for the passive collection of their data, including browsing and purchasing behavior; UpVoice pays a $5 signing bonus and up to $75 in a user's first year to collect data related to advertisements displayed during web browsing; SavvyConnect pays $5 per device per month to passively track data from users' devices as they browse the web; PermissionResearch provides monetary opportunities for monitoring internet browsing and purchasing activity passively; Killi passively monitors, among other things, users' internet browsing activity and purchases for approximately $1 to $4 per month, as well as referral bonuses; Rewards by Foursquare pays users for access to their device data used for market research purposes; Mobile Performance Meter pays users to passively track their website use for market research purposes; Cocoon MDR pays users 70% of the profits Cocoon derives from collecting and selling their browsing data; Imagine BC gives users the option to passive track and aggregate their browsing activity and license that data to others, including advertisers.

## <u>VERIFICATION</u>

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

Dated: September 20, 2021

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Cabezas, declare:

I am a citizen of the United States and employed in the County of Hillsborough, Florida. I am over the age of 18 and not a party to the within action; my business address is 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

On September 20, 2021, I served the following document described as:

**Plaintiff's Objections and Responses to Defendant's Fifth Set of Interrogatories**

By electronic mail transmission from jcabezas@forthepeople.com on September 20, 2021, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

     Executed on September 20, 2021, at Tampa, Florida.


                  */s/ Jennifer Cabezas*
                  Jennifer Cabezas

# EXHIBIT 39

# PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANT'S SIXTH SET OF INTERROGATORIES (NO. 17)

# Redacted Version of Document Sought to be Sealed

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

Case No.  4:20-cv-03664-YGR-SVK

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**
**DEFENDANT'S SIXTH SET OF INTERROGATORIES (NO. 17)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs Chasom Brown, William Byatt, Jeremy Davis, Christopher Castillo, and Monique Trujillo ("Plaintiffs") hereby object and respond to Defendant's, Google LLC ("Google"), Sixth Set of Interrogatories (No. 17). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Plaintiffs' knowledge, investigations, and analysis to date. Plaintiffs may become aware of additional facts or evidence and their analysis of the case may change. Plaintiffs reserve all rights to supplement and amend their objections and responses accordingly.

**INTERROGATORY NO. 17:**

Identify all facts supporting each cause of action in your Complaint, including by identifying the documents, testimony or other evidence supporting each fact you identify in response to the interrogatory.

**ORIGINAL RESPONSE TO INTERROGATORY NO. 17:**

Plaintiffs object to this interrogatory because it was served on February 8, 2022, and any response would be due March 10, 2022, which is after the current fact discovery cut-off of March

4, 2022. Therefore, this interrogatory "call[s] for responses or depositions after the applicable discovery cut-off" and is not enforceable based on Civil Local Rule 37-3 of the Northern District of California.

Plaintiffs further object to this interrogatory as Google has delayed and continues to delay document production. Google was ordered to finish custodial production by October 6, 2021, (Dkt. 275, at 6). Since October 6, 2021, Google has produced more than 80 volumes of documents exceeding millions of pages of documents. And Google withheld (and is still withholding) productions of highly relevant documents, including how: (a) Google identified, quantified, and monitored Incognito traffic; (b) Google used that same analysis to assess the Google revenue associated with Incognito traffic; (c) Google's employee Bert Leung led this Incognito detection analysis. (Dkt. 399). Despite leading this Incognito detection analysis, Mr. Leung was not included on Google's initial disclosures, nor was he was included in the more than 200 proposed custodians. GOOG-BRWN-00023909. The same is true for Google's employee Mandy Liu, who throughout 2020 and 2021 developed and actually implemented an incognito detection field in specific logs to identify Incognito browsing data. (Dkt. 424, at P22). Also, in October 2021, pursuant to this Court's Order, (Dkt. 298), Plaintiffs identified 20 "Priority" RFPs. Google has since then dragged out the production of responsive documents, and Google still has not specified the extent to which it will produce responsive documents or finish producing documents responsive to these Priority RFPs.

Plaintiffs further object to this interrogatory as Google has delayed and continues to delay producing witnesses for testimony. On December 3, 2021, Plaintiffs served three deposition notices pursuant to Rule 30(b)(6). Google did not respond for weeks, and only after Plaintiffs twice requested a response did Google agree to meet and confer in December (and then again in January) to discuss these deposition notices. The dispute was finally submitted to the Court on February 18, 2022, (Dkt. 411), and ruled on February 22, 2022. (Dkt. 416). Google still has not provided designees nor dates for these depositions, despite Plaintiffs' repeated requests.  Google also has

not produced all witnesses that Plaintiffs sought deposition testimony for months, such as Sabine Borsay.

Plaintiffs further object to this as a premature request for expert-related discovery. Discovery is ongoing, Google has delayed its production of documents and information in this matter, and the deadlines for Plaintiffs to disclose any expert reports and to file their motion for class certification is months away. Thus, should the Court require Plaintiffs to respond to this interrogatory, Plaintiffs reserve the right to amend the response to this request as discovery proceeds and additional facts are revealed through the discovery process. Plaintiffs further objects to this Request to the extent it seeks information protected by the attorney-client, work-product privileges, and seeks the mental impressions of counsel.

Based on Local Civil Rule 37-3 and the foregoing objections, Plaintiffs are not required and will not answer this interrogatory.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:**

Plaintiffs incorporate their objections from their March 4, 2022 response, and further object to this Interrogatory as Google has not yet completed document production, has not yet fulfilled its outstanding Court-ordered obligations with the Special Master, has not yet produced all witnesses that Plaintiffs sought for deposition testimony (including Lorraine Twohill and Sabine Borsay), and has otherwise withheld and destroyed relevant discovery (as detailed in Plaintiffs' other filings with the Court).  Based on the Court's March 15, 2022 discovery order (Dkt. 487), Plaintiffs supplement their response with the below summary of the principal facts and exemplary documents supporting each cause of action in their Third Amended Complaint.  Plaintiffs incorporate by reference the allegations stated in their Third Amended Complaint and also the forthcoming expert reports, including all of the documents cited with those reports.

**Google's History of Privacy Violations**

As detailed in Plaintiffs' Third Amended Complaint, Google has a demonstrated history of knowing privacy violations.  For example, in 2010, Google "used deceptive tactics and violated its own privacy promises to consumers when it launched its social network, Google Buzz."  The

Federal Trade Commission ("FTC") charged Google with using deceptive tactics and violations of Google's privacy promises, and to settle those violations, the FTC barred Google from future privacy misrepresentations and required Google "to implement a comprehensive privacy program."[1]  Google entered into a consent decree with the FTC (the "FTC Consent Decree") which, for 20 years, required Google not to misrepresent, in any manner, expressly or by implication, the extent to which Google collects and uses consumers' (including Plaintiffs' and Class Members') information.[2]  The FTC Consent Decree also required Google not to misrepresent the extent to which consumers (including Plaintiffs and Class Members) may exercise control over the collection, use, or disclosure of consumers' (including Plaintiffs' and Class Members') information.[3]  Among the information covered by the FTC Consent Decree includes persistent identifiers, such as an IP address, and combinations of additional data with an IP address.[4]  Just one year later, however, Google violated the FTC Consent Decree by misrepresenting what Google would and would not collect through Apple's Safari web browser, where Google had misrepresented its practice and use of placing cookies and serving targeted advertisements.  This ultimately resulted in (at the time) a record-setting $22.5 million civil penalty to settle the violations.[5]  In 2019, Google (and YouTube) agreed to pay $170 million to settle more allegations from the FTC and the New York Attorney General stemming from illegal collection of personal information from children without their parents' consent.[6]  In 2020, a €50 million fine was upheld for Google's failure to provide clear notices and obtain users' valid consent to process consumers'

---

[1] *See*, *e.g.*, https://www.ftc.gov/news-events/press-releases/2011/03/ftc-charges-deceptive-privacypractices-googles-rollout-its-buzz

[2] *See*, *e.g.*, https://www.ftc.gov/sites/default/files/documents/cases/2011/03/110330googlebuzzagreeorder.pdf.

[3] *Id.*

[4] *Id.*

[5] *See*, *e.g.*, https://www.ftc.gov/news-events/press-releases/2012/08/google-will-pay-225-million-settleftc-charges-it-misrepresented.

[6] *See*, *e.g.*, https://www.ftc.gov/news-events/news-press-releases/2019/09/google-youtube-will-pay-record-170-million-alleged-violations-childrens-privacy-law.

personal information and data for advertisement personalization purposes.[7]  **Google Promises Control Through Private Browsing Modes**

As confirmed by their sworn deposition testimony, Plaintiffs reviewed uniform Google disclosures (in the Google Terms of Service, Google Privacy Policy, Chrome Terms of Service, Chrome Privacy Notice, and Chrome Incognito splash screen) representing that they were in "control" of what information Google collects, and that they could exercise that control by enabling private browsing mode, to prevent Google from collecting their private browsing activity. Google's Privacy Policy tells users that Google "will not reduce [users'] rights under th[e] Privacy Policy without [users'] explicit consent."  In September 2016, when Google updated its browser application for Apple iOS, Google promised that users would have "[m]ore control with incognito mode" and that their "searches are [the consumers'] business.  That's why [Google has] added the ability to search privately with incognito mode in the Google app for iOS.  When you have incognito mode on in your settings, your search and browsing history will not be saved."[8]  Then in May 2018, Google modified its privacy policy to state: "You can use our services in a variety of ways to manage your privacy . . . . You can also choose to browse the web privately using Chrome in Incognito mode."[9]  Plaintiffs used private browsing modes so that their private browsing activity would not be tracked, recorded, or otherwise memorialized.  Plaintiffs saw the Incognito splash screen each time they chose to browse privately with Chrome's Incognito mode, which turned the screen dark, depicts a stealthy figure, and makes two separate promises: first, that they "can browse privately," and second, that "other people who use the device won't see [their] activity."  Because Google's own Incognito splash screen, including without limitation the statement that users "can browse privately," there was an objective and reasonable expectation that Google would not intercept and collect Plaintiffs' private browsing activity.

---

[7] *See*, *e.g.*, https://www.reuters.com/article/us-france-google-privacy/top-french-court-upholds-56-million-google-privacy-breach-fine-idUSKBN23Q2KS.

[8] *See*, *e.g.*, https://www.googblogs.com/the-latest-updates-and-improvements-for-the-google-app-for-ios/, https://search.googleblog.com/index.html.

[9] *See*, *e.g.*, https://policies.google.com/privacy/archive/20171218-20180525?hl=en-US.

Google's Incognito splash screen also represents that Chrome will not save browsing history, cookies and site data, and information entered into forms, reinforcing that objective and reasonable expectation that any private browsing activity would be concealed from and not subject to Google's interception and collection. Each time Plaintiffs enabled Incognito, the Incognito splash screen also stated that their activity in private browsing mode might still be visible to the websites they visit, their employer or school, or their internet service provider. Google was not listed, and Plaintiffs did not consent to Google's interception and collection of their private browsing activity. Plaintiffs considered this private browsing activity private and confidential, and did not intend to share it with Google. Plaintiffs also never consented to Google's attempt and/or interception of their private browsing communications, Google's attempt and/or collection of any data from their private browsing, or Google's attempt and/or use of any data from their private browsing activity. Plaintiffs chose to browse privately to avoid Google's attempt and/or collection of that browsing activity and to browse the web without Google attempting and/or spying on and gathering that browsing activity for its own monetary gain. But without Plaintiffs' knowledge, Google attempted and continued to monitor and collect their private browsing activity and attempted and/or used that private browsing activity for its own monetary gain.

Google's attempts to surreptitiously intercept, collect, and use Plaintiffs' and Class Members' private browsing activity is equally actionable as Google's actual interceptions, collections, and usage of Plaintiffs' and Class Members' private browsing activity. For example, the Federal Wiretap Act prohibits any "endeavor[] to intercept" or procuring any other person to "endeavor to intercept" any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). Also, the Federal Wiretap Act prohibits any "endeavor[] to use the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication . . . ." 18 U.S.C. § 2511(1)(d). California law also prohibits Google from "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing], or *attempt[ing]* to read, or to learn the contents or meaning of any message, report, or communication . . . ." Cal. Pen. Code § 631(a)

(emphasis added).  And California law equally prohibits Google from attempting to use illegally wiretapped data.  Cal. Pen. Code § 631(a).  California law applies to all Plaintiffs and Class Members, since Google's own Terms of Service explicitly states "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules.  These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and [users] and Google consent to personal jurisdiction in those courts."[10]

**Google's Illegal Private Browsing Mode Conduct**

During the Class Period (from June 1, 2016 to the present), Plaintiff Brown recalls using Chrome's Incognito mode to browse the following non-exhaustive websites and categories of websites: ████ ██████ █████ ████████████ ███ █████ ████

███████████████████████████████████████████████████████

███████████ █[11]

During the Class Period (from June 1, 2016 to the present), Plaintiff Byatt recalls using Chrome's Incognito mode to browse the following non-exhaustive websites and categories of websites: █████████████████████████████████████████████████████████

█████████████████████████████.[12]

During the Class Period (from June 1, 2016 to the present), Plaintiff Castillo recalls using Chrome's Incognito mode to browse the following non-exhaustive websites and categories of websites: ███████████████████████████████████████████████████[13]

During the Class Period (from June 1, 2016 to the present), Plaintiff Davis recalls using Chrome's Incognito mode to conduct the overwhelming majority of his browsing activity because his devices use Chrome's Incognito mode by default, and the only time Plaintiff Davis recalls any browsing activity performed outside of private browsing mode is when he clicked a hyperlink from an email that hyperlink launched his browser in non-private browsing mode.  Plaintiff Davis recalls

---

[10] *See*, *e.g.*, Response to Interrogatory No. 15.
[11] *See*, *e.g.*, Responses to Interrogatories Nos. 1–10.
[12] *See*, *e.g.*, Responses to Interrogatories Nos. 1–10.
[13] *See*, *e.g.*, Responses to Interrogatories Nos. 1–10.

using Chrome's Incognito mode to browse the following non-exhaustive websites and categories of websites: ████████████████████████████████████████ ████████████████████████████████████████████ .

During the Class Period (from June 1, 2016 to the present), Plaintiff Trujillo recalls using Chrome's Incognito mode to browse the following non-exhaustive websites and categories of websites: ████████████████████████████████████████ ████████████████████████████████.

Plaintiffs and Class Members—numbering in the millions—enabled private browsing mode in Google's Chrome browser and other browsers to prevent others (including Google) from finding out what they were viewing on the Internet during those private browsing mode sessions. Through Google tracking or advertising code,[15] Google surreptitiously attempted and/or directed Plaintiffs' and Class Members' browsers to send a separate message to Google, which contained Plaintiffs' and Class Members' highly sensitive and confidential information, including: the content the user's browser was asking the website to display, the URL information of what the user has been reviewing and requesting from websites, IP address, fingerprinting data, user IDs, geolocation information, and information contained in cookies saved on the user's browser. Google has not contested these illegal attempts, interceptions, and collections practices.[16]

Additionally, through Chrome, Google surreptitiously attempted and/or intercepted and collected (and continues to attempt and/or intercept and collect) from Plaintiffs and Class Members a unique string of characters called Google's X-Client-Data Header, which is not present when a user enables Chrome's Incognito mode.  The absence of the X-Client-Data Header indicates to Google that a Chrome user has enabled Chrome's Incognito mode, but Google continued (and still continues) to attempt and/or collect Plaintiffs' and Class Members' highly sensitive and confidential information and attempt and/or used (and still uses) that information for Google's

---

[14] *See*, *e.g.*, Responses to Interrogatories Nos. 1–10.
[15] *See*, *e.g.*, Third Amended Complaint, ¶¶ 63–66, 78–83, 102.
[16] *See*, *e.g.*, Response to Interrogatory No. 11.

business purposes wholly unrelated to Plaintiffs' and Class Members' use of the websites they browsed in private browsing mode.[17]

**Google Acted Without Consent**

Google's surreptitious attempt and/or interception and collection practices were without consent.  Google did not notify users or publishers of these attempts and practices.  To the contrary, Google represented to Plaintiffs and Class Members that they were "in control of what information [users] share with Google," and that they could use Google services "in a variety of ways to manage [their] privacy" and "control what [Google] collects and how your information is used." Google represented that "If you want to search the web without saving your search activity to your account, you can use private browsing mode in a browser (like Chrome or Safari)."[18]

The uniform, class-wide disclosures failed to notify Plaintiffs and Class Members that Google attempted and/or collected private browsing activity when users were in private browsing mode.  Neither Plaintiffs nor Class Members provided or could have provided consent to Google's attempted and/or actual data tracking practices while Plaintiffs and Class Members were in private browsing mode.[19]

Google also failed to obtain consent from websites to attempt and/or track, intercept, or collect Plaintiffs' and Class Members' data during private browsing mode sessions.  Google never informed websites that Google attempted and/or intercepted user communications from private browsing mode sessions.  Indeed, Google informs site and app owners using Google services that the "Google privacy policy and principles describes how we treat personal information when you use Google's products and services, including Google Analytics" and that Google will adhere to Google's Privacy Policy for consumers (including Plaintiffs and Class Members) and websites that use Google Ad Manager.  As described above, Google's Privacy Policy states that users "can use our services in a variety of ways to manage [their] privacy," including that (1) users could "choose to browse the web privately using Chrome in Incognito mode" and that (2) "across our services,

---

[17] *See*, *e.g.*, Response to Interrogatory No. 11.
[18] *See*, *e.g.*, Response to Interrogatory No. 11.
[19] *See*, *e.g.*, Response to Interrogatory No. 11.

[users] can adjust [their] privacy settings to control what [Google] collect[s] and how [their] information is used." In denying Google's motions to dismiss, Judge Koh found as a matter of law that "Google's Privacy Policy does not disclose Google's alleged data collection while Plaintiffs were in private browsing mode."[20]

Only after this litigation, on September 3, 2020, Google released a beta version of what it calls "Consent Mode" for Google Analytics.[21] This "Consent Mode" assists third-party websites to identify whether a particular consumer (which includes Plaintiffs and Class Members) knows and has consented to use of Google Analytics and other Google services.[22] But, even before Google's provision of "Consent Mode," Google did not inform consumers (including Plaintiffs and Class Members) which websites implement Google Analytics or other Google services that collect and use personal information, such as private browsing activity. And because Google Analytics and other Google services begin collecting consumers' (including Plaintiffs' and Class Members') data as soon as a page begins to load—before a consumer even has a chance to review the page—there is no effective way that Plaintiffs and Class Members could consent to Google's illegal conduct. Indeed, Google's disclosures did not inform of its illegal conduct or obtain consent, as Google promised that it would adhere to its own Privacy Policy as represented whenever Google Analytics or other Google services are used. For example, on Google's own Analytics Help page for Websites, Google states that Google is "keenly aware of the trust you place in us and our responsibility to keep your privacy and data secure. As part of this responsibility, we let you know what information we collect when you use our products and services, why we collect it, and how we use it to improve your experience. The Google privacy policy & principles describes how we treat personal information when you use Google's products and services, including Google Analytics." When consumers (including Plaintiffs and Class Members) and websites alike follow the link for "Google privacy policy & principles," those consumers (including Plaintiffs and Class Members) and websites alike are taken to Google's

---

[20] *See*, *e.g.*, Response to Interrogatory No. 11.
[21] *See*, *e.g.*, https://blog.google/products/marketingplatform/360/measure-conversions-while-respectinguser-consent-choices/.
[22] *See*, *e.g.*, https://support.google.com/analytics/answer/9976101?hl=en.

Privacy Policy homepage where Google states and reassures that consumers (including Plaintiffs and Class Members) "can adjust [their] privacy settings to control what [Google] collect[s] and how your information is used," as well as that consumers (including Plaintiffs and Class Members) "can choose to browse the web privately using Chrome in Incognito mode."  In other words, Google services that collect and use consumers' (including Plaintiffs' and Class Members') information—including private browsing activity—are only implemented in a way that Plaintiffs and Class Members maintain control over what Google collects.

**Google Acted with Knowledge and Intent**

Google knew that Plaintiffs and Class Members had misconceptions regarding private browsing, and that Google's collection practices in Incognito mode were a "mess."  Google also promised users, through its Privacy Policy, that Google "will not reduce your rights under this Privacy Policy without your explicit consent."  Yet Google persisted with its collection practices, and did not otherwise modify its disclosures (*e.g.*, Terms of Service, Privacy Policy, Search and Browse Privately page, Incognito Splash Screen) to inform Plaintiffs and Class Members of its collection practices while Plaintiffs and Class Members were privately browsing and/or using Incognito mode.  Nowhere in these disclosures did Google explicitly obtain Plaintiffs' and Class Members' consent for its collection practices while Plaintiffs and Class Members were in private browsing mode.  This failure prevents Google from relying on any argument that Plaintiffs and Class Members consented to the collection practices, or that websites consented.

Google's knowing and intentional collection of private browsing activity was also for the purpose of committing additional tortious and unlawful acts.  Google's use of Plaintiffs' and Class Members' private browsing activity violated the California Consumer Privacy Act of 2018 ("CCPA"), the FTC Consent Decree, and invaded Plaintiffs' and Class Members' privacy and intruded upon their seclusion.  Google's collection and subsequent use of Plaintiffs' and Class Members' private browsing activity violated the express prohibitions of the CCPA because Google wrongfully used that private browsing activity for additional purposes (such as personalized and targeted advertising and to improve Google's services) without providing Plaintiffs and Class

Members with express notice of the collection and use of that private browsing activity. Additionally, the FTC Consent Decree requires that Google not misrepresent what it collects or how it uses consumer information, as well as how consumers (including Plaintiffs and Class Members) can control that collection and use.  However, Google violated the FTC Consent Decree by not obtaining express affirmative consent from Plaintiffs and Class Members to collect and use their private browsing activity.[23]  Through Google's illegal collection and use of private browsing activity to cause targeted advertising to be sent to Plaintiffs and Class Members and their devices, Google has impermissibly caused that private browsing activity to be revealed to others, thereby invading Plaintiffs' and Class Members' privacy and intruding upon their seclusion.

Google's document production confirms Google's surreptitious attempts and/or interception, collection, and use of Plaintiffs' and Class Members' private browsing activity. Although Google has prevented Plaintiffs from reviewing documents marked "Highly Confidential – Attorneys' Eyes Only," Plaintiffs' experts have reviewed those documents and confirmed Google's unlawful activity.  Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs direct Google to the following non-exhaustive exemplar list of documents in Google's possession, custody, and control, attached hereto as **Exhibit A**; *see also* Plaintiffs' Motion for Order Requiring Google to Show Cause Why It Should Not Be Sanctioned For Discovery Misconduct (Dkt. 430); Plaintiffs' Supplement in Support of Their Motion for Order Requiring Google to Show Cause Why It Should Not Be Sanctioned For Discovery Misconduct (Dkt. 495); Plaintiffs' Reply in Support of Their Motion for Order Requiring Google to Show Cause Why It Should Not Be Sanctioned For Discovery Misconduct (Dkt. 536).

**Google's Illegal Conduct has a Sufficient Nexus with California**

Plaintiffs Chasom Brown, Christopher Castillo, and Monique Trujillo are adults domiciled in ███████.  Chasom Brown is domiciled in ███████████████; Christopher Castillo is domiciled in ████████████████; and Monique Trujillo is domiciled in ███████████,

---

[23] *See, e.g.*, *In the Matter of Google, Inc.*, No. C-4336, Decision and Order Part II, p.3 (F.T.C. Oct. 13, 2011), *available at* https://www.ftc.gov/enforcement/cases-proceedings/102-3136/google-incmatter.

███████. During the class period, Plaintiffs Brown, Castillo, and Trujillo used private browsing modes (including Incognito mode), which Google unlawfully attempted and/or intercepted, collected data from, analyzed, and monetized.

Additionally, Google employees in California have had ready access to the private browsing data at issue in this litigation. Google has admitted that "Google employees, including those based in California, may access user data provided they have proper access permissions," to include data collected by Google from users' visits to websites with Google Analytics and Google Ad Manager, including the private browsing activity at issue in this litigation. RFA No. 44. I am advised by my counsel that Google's engineers have testified and confirmed that Google has at least one data center in California, and that Google engineers located in California have access to systems (and the data stored therein) that would have unlawfully attempted and/or intercepted, collected, analyzed, and monetized private browsing activity.

**Google Benefited From, and Plaintiffs Were Damaged by, Google's Illegal Conduct**

Plaintiffs provided valuable consideration in the form of their personal information for the use of Google products in non-private modes, but Google unlawfully attempted and/or intercepted, collected data from, analyzed, and monetized Plaintiffs' browsing activity conducted in private browsing mode, which Google has used to its benefit to increase its profits and revenues from targeted advertising and improvements of Google's other products wholly unrelated to Chrome.[24] Plaintiffs have been aware of the value of their personal data for years, and chose to browse privately to protect that personal data from Google's (and other tech companies') collection for their own benefit and profit. Plaintiffs were aware of companies that provide monetary compensation for personal data before filing or joining this lawsuit. Even though Plaintiffs had not attempted to sell their personal data to those companies, the personal data that Google has unlawfully attempted and/or intercepted while Plaintiffs were in private browsing mode has inherent value, and Google unlawfully collected that personal data without providing any compensation.[25]

---

[24] *See*, *e.g.*, Response to Interrogatory No. 13.
[25] *See*, *e.g.*, Response to Interrogatories Nos. 1–10.

Based on Google's continued surreptitious attempts and/or interception and collection of private browsing activity from Plaintiffs and Class Members alike, injunctive (or corresponding declaratory) relief is appropriate: Google continues its unlawful conduct without obtaining consent.[26]  Through Google's surreptitious attempt and/or collection of any private browsing activity, Google has diminished the value of this data to Plaintiffs and Class Members by the amount that, but for Google's unlawful actions, at least Google would have been willing to pay Plaintiffs for access to that private browsing activity.  Google is still producing documents relevant to this analysis, and expert discovery has not yet closed, so Plaintiffs are not able to yet provide a specific value on the extent to which Google's actions have diminished the value of Plaintiffs' private browsing activity that Google surreptitiously attempted and/or collected while Plaintiffs were in private browsing mode.[27]

Google's illegal conduct benefited Google.  Based on Google's revenue model, Google is paid more money based on the accuracy of its advertisements, and Google collects more money for Google services that are more accurate.  For example, while Google Analytics can be implemented for "free," specific information, reports, and analytics are provided for a fee.  The more granular the requested information, reports, and analytics, the more Google charges, like with Google's DV360, Ad Hub, and Google audience products.  By collecting private browsing activity, Google's products, services, and algorithms (related to browsing activity and other products at Google that Google has refused to identify[28]) are enriched and Google is able to charge more money for its services.

Google's document production confirms Plaintiffs' damages and entitlement to other relief.  Although Google has prevented Plaintiffs from reviewing documents marked "Highly Confidential – Attorneys' Eyes Only," Plaintiffs' experts have reviewed those documents and

---

[26] *See*, *e.g.*, Response to Interrogatory No. 11.

[27] *See*, *e.g.*, Response to Interrogatory No. 16.

[28] *See*, *e.g.*, Google's Objection to Rule 30(b)(6) Notice 1, Topic 16, requesting corporate representative testimony concerning Google's use of information collected from users within a private browsing mode for purposes of improving and developing Google services, products, and algorithms (Google objected, averring that "This topic is overly broad and amorphous and would implicate dozens of Google business units and products.") (Dkt. 410-4, at 12).

confirmed Google's unlawful activity.   Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs direct Google to the following non-exhaustive exemplar list of documents in Google's possession, custody, and control, attached hereto as **Exhibit B**; *see also* Plaintiffs' Motion for Order Requiring Google to Show Cause Why It Should Not Be Sanctioned For Discovery Misconduct (Dkt. 430); Plaintiffs' Supplement in Support of Their Motion for Order Requiring Google to Show Cause Why It Should Not Be Sanctioned For Discovery Misconduct (Dkt. 495); Plaintiffs' Reply in Support of Their Motion for Order Requiring Google to Show Cause Why It Should Not Be Sanctioned For Discovery Misconduct (Dkt. 536).

Dated: April 15, 2022

**MORGAN & MORGAN**

*/s/ John A. Yanchunis*

John A. Yanchunis (*pro hac vice*)
Ryan J. McGee (*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Mark C. Mao, CA Bar No. 236165
Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

William S. Carmody
Shawn Rabin
Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda K. Bonn (270891)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Jennifer Miller, declare:

I am a citizen of the United States and employed in the County of San Francisco, California. I am over the age of 18 and not a party to the within action; my business address is 711 Van Ness Avenue, Suite 500, San Francisco, California 94102.

On April 15, 2022, I served the following document described as:

**Plaintiffs' Objections and Responses to Defendant's Sixth Set of Interrogatories**

By electronic mail transmission from jbmiller@forthepeople.com on April 15, 2022, by transmitting a PDF format copy of such document to each person at the e-mail addresses listed below. The document was transmitted by electronic transmission and such transmission was reported as complete and without error:

Andrew H. Schapiro (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312-705-7400
Fax: 312-705-7401
andrewschapiro@quinnemanuel.com

*Attorney for Defendant*

Stephen A. Broome
Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

*Attorneys for Defendant*

Diane M. Doolittle
Thao Thai
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000

Fax: 650-8015100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

*Attorneys for Defendant*

William Burck (pro hac vice)
Josef Ansorge (pro hac vice)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

*Attorneys for Defendant*

Jonathan Tse
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700
jonathantse@quinnemanuel.com

*Attorneys for Defendant*

Executed on April 15, 2022, at Memphis, Tennessee.

*/s/ Jennifer Miller*
Jennifer Miller

# EXHIBIT 40

# DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES (NOS. 1 & 3)

CONFIDENTIAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 5:20-cv-03664-LHK |

## DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES (NOS. 1 & 3)

Pursuant to Federal Rules of Civil Procedure Rule 33, Defendant Google LLC ("Google") hereby submits the following amended responses and objections to Plaintiffs' Interrogatories (Nos. 1 & 3). These amended objections and responses are made solely for the purpose of and in relation to this action. In addition, the amended objections and responses set forth in this document are based on Google's knowledge, investigations, and analysis to date. As discovery proceeds, Google may become aware of additional facts or evidence and its analysis of the case may change. Google reserves all rights to supplement and amend its objections and responses accordingly.

## GENERAL OBJECTIONS

The following objections apply to each and every interrogatory propounded by Plaintiffs and are incorporated into each of the specific objections by reference as if set forth fully therein:

1.      Google objects to Plaintiffs' interrogatories as compound and including twenty-one (21) sub-parts, which counts against the 25 per party limit under Fed. R. Civ. P. 33(a)(1).

2.      Google objects to Plaintiffs' definition of "GOOGLE," "YOU," and "YOUR" as encompassing "any of its directors, officers, consultants, agents, representatives, predecessors in interest, subsidiaries, assignees, licensees, employees, attorneys and any other persons acting on GOOGLE LLC'S behalf, including contractors," as well as "purporting to act on" Google's behalf.

Google further objects to these definitions to the extent that it seeks to require Google to produce or otherwise analyze any document or other information that is not within the possession, custody, or control of Google. Google further objects to these definitions to the extent that it purports to impute knowledge of unspecified or unknown parties or persons to Google. Google further objects to these definitions as overly broad, vague, and ambiguous to the extent they purport to include entities other than Google, which is the only named defendant in the present action. Google further objects to these definitions and instruction to the extent that they include Google's attorneys and, therefore, cause interrogatories using "Google" to seek improperly information protected by the attorney-client privilege, the work product doctrine, the common interest privilege and/or any other applicable privileges or immunities.

3.      Google objects to Plaintiffs' definition of "PERSON" or "PERSONS" as overly broad and unduly burdensome in that it purports to include "firm, association, organization, partnership, business, trust, corporation, or public entity."

4.      Google objects to the definition of "X-CLIENT DATA HEADER" as a "unique digital string of characters as described in paragraphs 94 to 95 of the First Amended Complaint." Paragraph 95 alleges that "Google's Chrome browser *identifies every device* upon installation of Chrome with a *unique digital string of characters* called Google's 'X-Client-Data Header,' such that *Google uniquely identifies the device and user thereafter*" (emphasis added). Plaintiffs' definition and allegations about the X-Client Data Header are factually incorrect. The X-Client Data Header is neither "a unique digital string of characters," nor does it "uniquely identif[y]" a device or user. In its responses below, Google uses the term "X-Client-Data Header" to refer to a string of characters that is randomized based on a number from 0 to 7999 to ensure the header is non-identifying, as described in the publicly available Chrome White Paper (*see* www.google.com/chrome/privacy/whitepaper.html).

5.      Google objects to Plaintiffs' definitions of "ALL," "USER," "INCLUDE," "CONCERNING," "RELATE," or "RELATING TO" to the extent that they propose to alter the plain meaning or scope of any specific interrogatory and to the extent that such alteration renders the interrogatory vague, ambiguous, and overbroad.

6.      Google objects to Plaintiffs' Definitions, Instructions, and interrogatories to the extent they seek information and/or records that are not reasonably accessible and whose inclusion is not proportional to the needs of the case.

7.      Google objects to the Requests to the extent that they seek information shielded from disclosure by the attorney-client privilege, the work-product doctrine, the settlement privilege and/or any other applicable privilege or protection from discovery.

8.      Google objects to Plaintiffs' Definitions, Instructions, and interrogatories to the extent they conflict with or encompass information and/or records falling outside the scope of discovery under the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any discovery orders governing this case.

9.      Google's responses to these interrogatories are hereby made without waiving or intending to waive, but rather, to the contrary, by preserving and intending to preserve:

a.  All questions as to the competence, relevance, proportionality, materiality, and admissibility as evidence for any purpose of the information or documents, or the subject matter thereof, in any aspect of this action or any other court action or judicial or administrative proceeding or investigation;

b.  The right to object on any ground to the use of any such information or documents, or the subject matter thereof, in any aspect of this action or any other court action or judicial or administrative proceeding or investigation;

c.  The right to object at any time in connection with any further response to this or any other request for information or production of documents; and

d.  The right at any time to supplement its responses.

10.     In offering to produce various types of documents, information, or things, Google makes no representation that any such documents, information, or things exist or are actually known (or not known) to exist.

11.     Google anticipates that future discovery, independent investigation, or analysis will supply additional facts and add meaning to known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to additions to, changes in, and variations

from the responses set forth herein. Google reserves the right to modify, supplement, withdraw, or otherwise alter its responses to these interrogatories in accordance with the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any discovery orders governing this case.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

Subject to the foregoing objections, Google objects and responds to Plaintiffs' interrogatories as follows:

**INTERROGATORY NO. 1:**

For the class period, describe Google's collection, storage, and use of data from users' private browsing, including (a) identifying what data Google collects (e.g., URL), (b) how Google collects such data (e.g., Google scripts), (c) where and how such data is stored by Google (e.g., specific Google databases), (d) how such data is used (e.g., profiles, association with other data, advertising, product improvement), and (e) describing any changes during the class period.

**FEBRUARY 5, 2021 RESPONSE TO INTERROGATORY NO. 1:**

Google incorporates its objections to Plaintiffs' definitions and instructions as if set forth fully herein. Google objects to this interrogatory as vague, ambiguous, and overbroad as to the meaning of "data from users' private browsing." Google will assume for purposes of its responses that "data from users' private browsing" means data generated when users visited a third-party website that used Google Analytics or Ad Manager while private browsing using Chrome and while not logged in to their Google Account, as that is the data at issue in this class action. (*See* Dkt. 68 at ¶ 192). Google further objects to this interrogatory as vague, ambiguous, and overbroad with its undefined use of the term "profiles." In responding to this interrogatory, Google interprets "profiles" as referring to data from separate web browsing sessions and tied to the same authenticated or pseudonymous ID. Google further objects to this interrogatory to the extent it seeks information related to non-Chrome browsers, which may have unique browser features that impact data collection by Google Ad Manager and Google Analytics. Google also objects to this

1  interrogatory as it contains five (5) discrete sub-parts, which counts against the 25 per party limit

2  under Federal Rule of Civil Procedure ("Rule") 33(a)(1).

3      Subject to the foregoing general and specific objections, and based on its investigation to

4  date, Google responds to each of the five discrete sub-parts  as follows:

5  **Sub-part (a)**:

6      As Google has explained in its Privacy Policy, "[w]e collect information about the services

7  that you use and how you use them, like when you … visit a website that uses our advertising

8  services, or view or interact with our ads or content. This information includes: … details of how

9  you used our service, such as search queries … internet protocol [IP] address… and referral URL."

10     The fact alone that a user is in private browsing mode does not change the types of data

11 collected when Chrome users visit a third-party website that uses Google Analytics or Ad Manager

12 while not logged in to their Google Accounts. Google designed the Chrome browser to prevent

13 visited websites, including Google, from recognizing whether a user is in private browsing mode.

14 As Google's disclosures explain, "although [p]rivate browsing works differently depending on

15 which browser you use," it "usually means" that "[t]he searches you do or sites you visit won't be

16 saved to your device or browsing history," and cookies placed on the browser during a private

17 browsing session "are deleted after you close your private browsing window or tab." This is how

18 private browsing works in Chrome's Incognito mode.

19     Therefore, depending on (1) the particular website visited, (2) the particular Google

20 service(s) the website uses, (3) the website's specific settings and selections for each of its Google

21 services, and (4) the user settings, browser settings, and other software settings and plug-ins,

22 Google may receive through a service certain data generated by a user's interactions with the

23 service, which data may include: IP address; the web page the user viewed; referral URL; and

24 search queries. To the extent it receives such data, Google receives the data regardless of whether

25 the user is in Incognito mode.

26 **Sub-part (b)**:

27     Google collects such data, including cookie values, by way of scripts the websites choose

28 to install for the purpose of sending such data to Google to provide Analytics and Ad Manager

1   services.                                          *See,*                                        *e.g.,*
2   https://developers.google.com/analytics/resources/concepts/gaConceptsTrackingOverview;
3   https://developers.google.com/ad-manager/api/start.

4   **Sub-part (c)**:

5       Google stores the data at issue in this case in Analytics and Ad Manager protocol buffer
6   logs that do not associate the data with users' Google Accounts.

7   **Sub-part (d)**:

8       Google uses data it receives to provide analytics and advertising services to the websites
9   that use Google Analytics and Google Ad Manager. Google Analytics uses cookies to identify
10  browsers for the purpose of allowing websites to understand how visitors engage with their sites.
11  For instance, Google will assess and report website traffic based on the cookie ID in a Google
12  Analytics' first-party cookie set on a user's browser. Google Ad Manager uses cookies to identify
13  browsers for the purpose of serving tailored advertisements. Therefore, in the advertising context,
14  Google will use the cookie ID in a third-party cookie set on a user's browser to serve personalized
15  advertising.

16      When a user enables Incognito mode in Chrome, however, the browser opens a new tab
17  with a separate (and empty) cookie repository (also referred to as a cookie jar or cookie store). As
18  a result, when a user visits a website in Incognito mode, neither the website, nor Google (assuming
19  the website uses Google's analytics or advertising services), can read cookies that were set on the
20  browser before the user enabled Incognito mode. Because Google Analytics and Ad Manager use
21  cookies to identify browsers, when a user enables Incognito mode, the user appears to Google as
22  a new user. Incognito mode also deletes cookies set during an Incognito session when the session
23  is closed. As a result, the data Google receives during a given Incognito session is not linked to
24  data Google received from previous browsing sessions (in Incognito mode or otherwise) on the
25  same browser. Google therefore does not associate or compile the data from separate Incognito
26  sessions of users logged out of their Google Accounts, nor does Google link such data to a
27  particular browser or user after the Incognito session is closed. Google does not create "profiles"
28  from data received from users who are signed out of their Google Accounts and in Incognito mode.

To the best of Google's knowledge and belief, the foregoing response applies when users visit websites that use Google Analytics and Ad Manager services in non-Chrome browsers' private browsing modes.

Google also uses data it collects to provide, maintain, and improve its services, as well as develop new services.

**Sub-part (e)**:

In May 2020, Google initiated the introduction of a function in Chrome that blocks third party cookies by default when a user is in Incognito mode.

**OCTOBER 6, 2021 AMENDED RESPONSE TO INTERROGATORY NO. 1:**

Google incorporates its objections to Plaintiffs' definitions and instructions as if set forth fully herein. Google objects to this interrogatory as vague, ambiguous, and overbroad as to the meaning of "data from users' private browsing." Google will assume for purposes of its responses that "data from users' private browsing" means data generated when users visited a third-party website that used Google Analytics or Ad Manager while private browsing using Chrome and while not logged in to their Google Account, as that is the data at issue in this class action. (*See* Dkt. 68 at ¶ 192). Google further objects to this interrogatory as vague, ambiguous, and overbroad with its undefined use of the term "profiles." In responding to this interrogatory, Google interprets "profiles" as referring to data from separate web browsing sessions (all user activity associated with a browser window) and tied to the same authenticated or pseudonymous ID. Google further objects to this interrogatory to the extent it seeks information related to non-Chrome browsers, which may have unique browser features that impact data collection by Google Ad Manager and Google Analytics. Google also objects to this interrogatory as it contains five (5) discrete sub-parts, which counts against the 25 per party limit under Federal Rule of Civil Procedure ("Rule") 33(a)(1).

Subject to the foregoing general and specific objections, and based on its investigation to date, Google responds to each of the five discrete sub-parts  as follows:

**Sub-part (a)**:

As Google has explained in its Privacy Policy, "[w]e collect information about the services that you use and how you use them, like when you … visit a website that uses our advertising services, or view or interact with our ads or content. This information includes: … details of how you used our service, such as search queries … internet protocol [IP] address… and referral URL."

The fact alone that a user is in private browsing mode does not change the types of data collected when Chrome users visit a third-party website that uses Google Analytics or Ad Manager while not logged in to their Google Accounts. Google designed the Chrome browser to prevent visited websites, including Google, from recognizing whether a user is in private browsing mode. As Google's disclosures explain, "although [p]rivate browsing works differently depending on which browser you use," it "usually means" that "[t]he searches you do or sites you visit won't be saved to your device or browsing history," and cookies placed on the browser during a private browsing session "are deleted after you close your private browsing window or tab." This is how private browsing works in Chrome's Incognito mode.

Therefore, depending on (1) the particular website visited, (2) the particular Google service(s) the website uses, (3) the website's specific settings and selections for each of its Google services, and (4) the user settings, browser settings, and other software settings and plug-ins, Google may receive through a service certain data generated by a user's interactions with the service, which data may include: IP address; the web page the user viewed; referral URL; and search queries. To the extent it receives such data, Google receives the data regardless of whether the user is in Incognito mode.

**Sub-part (b)**:

Google collects such data, including cookie values, by way of scripts the websites choose to install for the purpose of sending such data to Google to provide Analytics and Ad Manager services. *See, e.g.*, https://developers.google.com/analytics/resources/concepts/gaConceptsTrackingOverview; https://developers.google.com/ad-manager/api/start.

**Sub-part (c)**:

Google stores the data at issue in this case in Analytics and Ad Manager protocol buffer logs that do not associate the data with users' Google Accounts.

**Sub-part (d)**:

Google uses data it receives to provide analytics and advertising services to the websites that use Google Analytics and Google Ad Manager. Google Analytics uses cookies to identify browsers for the purpose of allowing websites to understand how visitors engage with their sites. For instance, Google will assess and report website traffic based on the cookie ID in a Google Analytics' first-party cookie set on a user's browser. Google Ad Manager uses cookies to identify browsers for the purpose of serving tailored advertisements. Therefore, in the advertising context, Google will use the cookie ID in a third-party cookie set on a user's browser to serve personalized advertising.

When a user enables Incognito mode in Chrome, however, the browser opens a new tab with a separate (and empty) cookie repository (also referred to as a cookie jar or cookie store). As a result, when a user visits a website in Incognito mode, neither the website, nor Google (assuming the website uses Google's analytics or advertising services), can read cookies that were set on the browser before the user enabled Incognito mode. Because Google Analytics and Ad Manager use cookies to identify browsers, when a user enables Incognito mode, the user appears to Google as a new user. Incognito mode also deletes cookies set during an Incognito session when the session is closed. As a result, the data Google receives during a given Incognito session is not linked to data Google received from previous browsing sessions (in Incognito mode or otherwise) on the same browser. Google therefore does not associate or compile the data from separate Incognito sessions of users logged out of their Google Accounts, nor does Google link such data to a particular browser or user after the Incognito session is closed. Google does not create "profiles" from data received from users who are signed out of their Google Accounts and in Incognito mode. To the best of Google's knowledge and belief, the foregoing response applies when users visit websites that use Google Analytics and Ad Manager services in non-Chrome browsers' private browsing modes.

1    Google also uses data it collects to provide, maintain, and improve its services, as well as

2  develop new services.

3  **Sub-part (e)**:

4    In May 2020, Google initiated the introduction of a function in Chrome that blocks third

5  party cookies by default when a user is in Incognito mode.

6

7

8  **INTERROGATORY NO. 3:**

9    During the class period, for each occasion where Google received data via Google

10  Analytics or Google Ad Manager in connection with any user browsing but where Google did not

11  also receive any X-Client-Data Header information, identify (a) the time period during which

12  Google received that data, (b) the total number of occasions Google received that data, with

13  monthly breakdowns, (c) the total number of users for which Google received that data, with

14  monthly breakdowns, (d) the types and amount of data that Google received, (e) whether and when

15  such data was paired with Google Analytics USER-ID or any additional user identifier (such as

16  users' Gmail or another Google login), with monthly breakdowns, and (f) how that data was used

17  by Google, including in terms of any profiles.

18

19  **FEBRUARY 5, 2021 RESPONSE TO INTERROGATORY NO. 3:**

20    Google incorporates its objections to Plaintiffs' definitions and instructions as if set forth

21  fully herein. Google objects to this interrogatory as vague, ambiguous, and potentially overbroad

22  as to the meaning of "where Google received data via Google Analytics or Google Ad Manager in

23  connection with any user browsing." Google will assume for purposes of its response that "data

24  via Google Analytics or Google Ad Manager in connection with any user browsing" means data

25  related to browsing by users who visited a website that used Google Analytics or Ad Manager

26  while not logged in to their Google Account. Google objects to this interrogatory as vague,

27  ambiguous, and potentially overbroad with respect to its undefined use of the term "profiles." In

28  responding to this interrogatory, Google construes "profiles" as referring to tying data from

separate web browsing sessions to the same authenticated or pseudonymous ID. Google also objects to the phrase "Google Analytics USER-ID" as vague and ambiguous. For purposes of responding to this Request, Google will assume Plaintiffs intended to reference the "User-ID" mentioned at https://support.google.com/analytics/answer/3123662. Google also objects to this Interrogatory because it does not define "class period." Google therefore construes the period in question to refer to the putative class period in Plaintiffs' First Amended Complaint, from June 2016 to the present (the "Putative Class Period"). Google also objects to subparts (b) and (d) (to the extent subpart (d) inquires about the "amount" of data) of this Interrogatory as they apply to Analytics, and to subparts (b) and (d) (to the extent subpart (d) inquires about the "amount" of data) of this Interrogatory as they apply to Ad Manager, on the grounds that, as currently phrased, the subparts are overbroad, unduly burdensome, and seek information that is not relevant to the case. Google is willing to meet and confer with Plaintiffs regarding the information sought in these subparts. Google also objects to this interrogatory as it contains twelve (12) discrete subparts, which counts against the 25 per party limit under Rule 33(a)(1).

Subject to the foregoing general and specific objections, and based on its investigation to date, Google responds as follows:

**Analytics**

**Sub-part (a):**

Throughout the Putative Class Period, Google received data without any X-Client-Data Header information from websites that use Google Analytics.

**Sub-part (c):**

Google does not maintain information in the ordinary course of business showing the total number of users for which Google received data via Google Analytics.

**Sub-part (d):**

Google incorporates its response to Interrogatory 1(a) by reference.

**Sub-part (e):**

1   Google has not associated any data it received via Google Analytics with a user's Google

2   Account unless that user was signed in to their Google Account and consented to that data being

3   paired with their Google Account.

4   **Sub-part (f):**

5   Google processes the data it receives via Google Analytics on behalf of the websites that

6   use Google Analytics to report website utilization statistics. Google does not create "profiles"

7   using data from logged-out users' separate private browsing sessions. Google incorporates its

8   response to Interrogatory 1(d) by reference.

9   **Ad Manager**

10   **Sub-part (a):**

11   Throughout the class period, Google received data without any X-Client-Data Header

12   information from websites that use Google Ad Manager.

13   **Sub-part (c):**

14   Google does not maintain information in the ordinary course of business showing the total

15   number of users for which Google received data via Google Ad Manager.

16   **Sub-part (d):**

17   Google incorporates its response to Interrogatory 1(a) by reference.

18   **Sub-part (e):**

19   Google has not paired data it received via Google Ad Manager with a user's Google

20   Account unless that user was signed in to their Google Account and consented to that data being

21   paired with their Google Account.

22   **Sub-part (f):**

23   Google uses the data it receives via Google Ad Manager to serve relevant advertising.

24   Google does not create "profiles" using data from logged-out users' separate private browsing

25   sessions. Google incorporates its response to Interrogatory 1(d) by reference.

26

27

28

1  **OCTOBER 6, 2021 AMENDED RESPONSE TO INTERROGATORY NO. 3:**

2      Google incorporates its objections to Plaintiffs' definitions and instructions as if set forth

3  fully herein. Google objects to this interrogatory as vague, ambiguous, and potentially overbroad

4  as to the meaning of "where Google received data via Google Analytics or Google Ad Manager in

5  connection with any user browsing." Google will assume for purposes of its response that "data

6  via Google Analytics or Google Ad Manager in connection with any user browsing" means data

7  related to browsing by users who visited a website that used Google Analytics or Ad Manager

8  while not logged in to their Google Account. Google objects to this interrogatory as vague,

9  ambiguous, and potentially overbroad with respect to its undefined use of the term "profiles." In

10 responding to this interrogatory, Google construes "profiles" as referring to tying data from

11 separate web browsing sessions (all user activity associated with a browser window) to the same

12 authenticated or pseudonymous ID. Google also objects to the phrase "Google Analytics USER-

13 ID" as vague and ambiguous. For purposes of responding to this Request, Google will assume

14 Plaintiffs     intended     to     reference     the     "User-ID"     mentioned     at

15 https://support.google.com/analytics/answer/3123662. Google also objects to this Interrogatory

16 because it does not define "class period."  Google therefore construes the period in question to

17 refer to the putative class period in Plaintiffs' First Amended Complaint, from June 2016 to the

18 present (the "Putative Class Period"). Google also objects to subparts (b) and (d) (to the extent

19 subpart (d) inquires about the "amount" of data) of this Interrogatory as they apply to Analytics,

20 and to subparts (b) and (d) (to the extent subpart (d) inquires about the "amount" of data) of this

21 Interrogatory as they apply to Ad Manager, on the grounds that, as currently phrased, the subparts

22 are overbroad, unduly burdensome, and seek information that is not relevant to the case. Google

23 is willing to meet and confer with Plaintiffs regarding the information sought in these subparts.

24 Google also objects to this interrogatory as it contains twelve (12) discrete subparts, which counts

25 against the 25 per party limit under Rule 33(a)(1).

26     Subject to the foregoing general and specific objections, and based on its investigation to

27 date, Google responds as follows:

28

Case No. 5:20-cv-03664-LHK

1       **Analytics**

2    **Sub-part (a):**

3         Throughout the Putative Class Period, Google received data without any X-Client-Data

4    Header information from websites that use Google Analytics.

5    **Sub-part (c):**

6         Google does not maintain information in the ordinary course of business showing the total

7    number of users for which Google received data via Google Analytics.

8    **Sub-part (d):**

9         Google incorporates its response to Interrogatory 1(a) by reference.

10   **Sub-part (e):**

11        Google has not associated any data it received via Google Analytics with a user's Google

12   Account unless that user was signed in to their Google Account and consented to that data being

13   paired with their Google Account.

14   **Sub-part (f):**

15        Google processes the data it receives via Google Analytics on behalf of the websites that

16   use Google Analytics to report website utilization statistics. Google does not create "profiles"

17   using data from logged-out users' separate private browsing sessions. Google incorporates its

18   response to Interrogatory 1(d) by reference.

19       **Ad Manager**

20   **Sub-part (a):**

21        Throughout the class period, Google received data without any X-Client-Data Header

22   information from websites that use Google Ad Manager.

23   **Sub-part (c):**

24        Google does not maintain information in the ordinary course of business showing the total

25   number of users for which Google received data via Google Ad Manager.

26   **Sub-part (d):**

27        Google incorporates its response to Interrogatory 1(a) by reference.

28   **Sub-part (e):**

1    Google has not paired data it received via Google Ad Manager with a user's Google

2  Account unless that user was signed in to their Google Account and consented to that data being

3  paired with their Google Account.

4  **Sub-part (f):**

5    Google uses the data it receives via Google Ad Manager to serve relevant advertising.

6  Google does not create "profiles" using data from logged-out users' separate private browsing

7  sessions. Google incorporates its response to Interrogatory 1(d) by reference.

8

9

10  DATED: October 6, 2021                QUINN EMANUEL URQUHART & SULLIVAN, LLP

11                                By   _/s/ Andrew H. Schapiro_____

12                                     Andrew H. Schapiro (admitted *pro hac vice*)
                                       andrewschapiro@quinnemanuel.com
13                                     191 N. Wacker Drive, Suite 2700
                                       Chicago, IL 60606
14                                     Telephone: (312) 705-7400
                                       Fax: (312) 705-7401
15
                                       Stephen A. Broome (CA Bar No. 314605)
16                                     sb@quinnemanuel.com
                                       Viola Trebicka (CA Bar No. 269526)
17                                     violatrebicka@quinnemanuel.com
                                       865 S. Figueroa Street, 10th Floor
18                                     Los Angeles, CA 90017
                                       Telephone: (213) 443-3000
19                                     Fax: (213) 443-3100

20
                                       Jomaire A. Crawford (admitted *pro hac vice*)
21                                     jomairecrawford@quinnemanuel.com
                                       51 Madison Avenue, 22nd Floor
22                                     New York, NY 10010
                                       Telephone: (212) 849-7000
23                                     Facsimile: (212) 849-7100

24                                     Josef Ansorge (admitted *pro hac vice*)
25                                     josefansorge@quinnemanuel.com
                                       1300 I. Street, N.W., Suite 900
26                                     Washington, D.C. 20005
                                       Telephone: 202-538-8000
27                                     Fax: 202-538-8100

28
                                       Jonathan Tse (CA Bar No. 305468)

                                            15                    Case No. 5:20-cv-03664-LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

jonathantse@quinnemanuel.com
50 California Street, 22nd Floor San
Francisco, CA 94111 Telephone:
(415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

Case No. 5:20-cv-03664-LHK

DEFENDANT'S AMENDED RESP. & OBJ. TO PLAINTIFFS' INTERROGATORIES (NOS. 1 & 3)

**PROOF OF SERVICE**

**NEW YORK, NEW YORK**

 At the time of service, I was over 18 years of age and not a party to this action. I am employed in New York, New York. My business address is 51 Madison Avenue, 22nd Floor, New York New York 10010.

 On October 6, 2021, I served true copies of the following document(s) described as **DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES NOS. 1 & 3** on the interested parties in this action as follows:

**SEE ATTACHED LIST**

 **BY E-MAIL OR ELECTRONIC TRANSMISSION**: I transmitted PDF format copies of the document(s) described above to the e-mail addresses on the attached Service List pursuant to the agreement between the parties to serve discovery, in lieu of other service methods, by email under Fed. R. Civ. P. 5(b)(2)(E) (see Joint Case Management Statement § 8.b, Dkt. 44) and on non-parties pursuant to the Court's August 12, 2021 Cross-use and Discovery Coordination Orders issued in *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK (Dkt. 243) and *Calhoun v. Google*, Case No.: 5:20-cv-05146-LHK-SVK (Dkt. 263). The documents were transmitted by electronic transmission and such transmission was reported as complete and without error.

 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

 Executed on October 6, 2021 at Hoboken, New Jersey.


/s/ *Seth Fortenbery*
Seth Fortenbery

1

<u>**SERVICE LIST**</u>

2

*Brown v. Google LLC*

3

*Case No. 5:20-cv-03664-LHK*

4

*Attorneys for Plaintiffs Chasom Brown et al.* BOIES SCHILLER FLEXNER LLP

5

Mark C. Mao, CA Bar No. 236165

6

Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027

7

Antonio Lavalle Ingram, II, CA Bar No. 300528
Alexander Justin Konik, CA Bar No. 299291

8

**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor

9

San Francisco, CA 94104

10

Tel.: (415) 293-6800
Fax: (415) 293-6899

11

mmao@bsfllp.com
srodriguez@bsfllp.com

12

brichardson@bsfllp.com
aingram@bsfllp.com

13

akonik@bsfllp.com

14

James Lee (admitted pro hac vice)

15

Rossana Baeza (admitted pro hac vice)
**BOIES SCHILLER FLEXNER LLP**

16

100 SE 2nd St., 28th Floor
Miami, FL 33131

17

Tel.: (305) 539-8400

18

Fax: (303) 539-1307
jlee@bsfllp.com

19

rbaeza@bsfllp.com

20

Amanda K. Bonn, CA Bar No. 270891

21

**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400

22

Los Angeles, CA. 90067
Tel: (310) 789-3100

23

Fax: (310) 789-3150
abonn@susmangodfrey.com

24

25

William S. Carmody (admitted pro hac vice)
Shawn Rabin (admitted pro hac vice)

26

Steven M. Shepard (admitted pro hac vice)
**SUSMAN GODFREY L.L.P.**

27

1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023

28

Tel.: (212) 336-8330

Case No. 5:20-cv-03664-LHK-SVK

DEFENDANT'S FIFTH SET OF REQUESTS FOR ADMISSION

Fax: (212) 336-8340
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com

John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Ra Olusegun Amen (admitted pro hac vice)
Jean Sutton Martin (admitted pro hac vice)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
ramen@forthepeople.com
jean@jsmlawoffice.com

*Attorneys for Plaintiffs*

*Calhoun v. Google LLC*

*Case No. 5:20-cv-5146-LHK-SVK*

*Attorneys for Plaintiffs Patrick Calhoun et al.*

BLEICHMAR FONTI & AULD LLP

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 994607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**DICELLO LEVITT GUTZLER**
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000

*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*

**SIMMONS HANLY CONROY LLC**
Mitchell M. Breit (admitted *pro hac vice*)
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*mbreit@simmonsfirm.com*
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Attorneys for Plaintiffs*

# EXHIBIT 41

# DEFENDANT GOOGLE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' 7TH SET OF INTERROGATORIES

# Redacted Version of Document Sought to be Sealed

CONFIDENTIAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO, individually and on behalf of all similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03664-LHK |

**DEFENDANT GOOGLE LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS'**
**7TH SET OF INTERROGATORIES (NOS. 21-29)**

Pursuant to Federal Rule of Civil Procedure 33, Defendant Google LLC ("Google") hereby responds and objects to Plaintiffs' Interrogatories, Set 7 (Nos. 21-29). These objections and responses are made solely for the purpose of and in relation to this action. In addition, the objections and responses set forth in this document are based on Google's knowledge, investigations, and analysis to date. As discovery proceeds, Google may become aware of additional facts or evidence and its analysis of the case may change. Google reserves all rights to supplement and amend its objections and responses accordingly.

**<u>GENERAL OBJECTIONS</u>**

1.      Google objects to Plaintiffs' definition of "GOOGLE," "YOU," and "YOUR" as encompassing "any of its directors, officers, consultants, agents, representatives, predecessors in interest, subsidiaries, assignees, licensees, employees, attorneys and any other persons acting on GOOGLE LLC'S behalf, including contractors," as well as "purporting to act on" Google's behalf. Google further objects to these definitions to the extent that it seeks to require Google to produce or otherwise analyze any document or other information that is not within the possession, custody, or

CONFIDENTIAL

control of Google. Google further objects to these definitions to the extent that it purports to impute knowledge of unspecified or unknown parties or persons to Google. Google further objects to these definitions as overly broad, vague, and ambiguous to the extent they purport to include entities other than Google, which is the only named defendant in the present action. Google further objects to these definitions and instruction to the extent that they include Google's attorneys and, therefore, cause interrogatories using "Google" to improperly seek information protected by the attorney-client privilege, the work product doctrine, the common interest privilege and/or any other applicable privileges or immunities.

2.      Google objects to Plaintiffs' definitions of "ALL," "INCLUDE," "INCLUDING," "CONCERNING," and "RELATING TO" to the extent that they propose to alter the plain meaning or scope of any specific interrogatory and to the extent that such alteration renders the interrogatory vague, ambiguous, and overbroad.

3.      Google objects to Plaintiffs' definition of INSTANCES as vague, ambiguous and overly broad.

4.      Google objects to Plaintiffs' Definitions, Instructions, and interrogatories to the extent they seek information and/or records that are not reasonably accessible and whose inclusion is not proportional to the needs of the case.

5.      Google objects to the interrogatories to the extent that they seek information shielded from disclosure by the attorney-client privilege, the work-product doctrine, the settlement privilege and/or any other applicable privilege or protection from discovery.

6.      Google objects to Plaintiffs' Definitions, Instructions, and interrogatories to the extent they conflict with or encompass information and/or records falling outside the scope of discovery under the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any discovery orders governing this case.

CONFIDENTIAL

7.      Google's responses to these interrogatories are hereby made without waiving or intending to waive, but rather, to the contrary, by preserving and intending to preserve:

      a.      All questions as to the competence, relevance, proportionality, materiality, and admissibility as evidence for any purpose of the information or documents, or the subject matter thereof, in any aspect of this action or any other court action or judicial or administrative proceeding or investigation;

      b.      The right to object on any ground to the use of any such information or documents, or the subject matter thereof, in any aspect of this action or any other court action or judicial or administrative proceeding or investigation;

      c.      The right to object at any time in connection with any further response to these or any other interrogatories; and

      d.      The right at any time to supplement its responses.

8.      Google anticipates that future discovery, independent investigation, or analysis will supply additional facts and add meaning to known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to additions to, changes in, and variations from the responses set forth herein. Google reserves the right to modify, supplement, withdraw, or otherwise alter its responses to these interrogatories in accordance with the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any discovery orders governing this case.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

Subject to the foregoing objections, Google objects and responds to Plaintiffs' interrogatories as follows:

## INTERROGATORY NO. 21:

Please explain in detail why Google chose "Option 2" in the following document instead of "Option 1": GOOG-CABR-04724084 at -106.

CONFIDENTIAL

**RESPONSE TO INTERROGATORY NO. 21:**

Google incorporates its General Objections as if set forth fully herein.  Google further objects to this Interrogatory to the extent it is tailored to seek information protected by the attorney-client privilege, the work product doctrine, or the common interest doctrine, or that is otherwise privileged or protected from discovery.

Subject to and without waiving the foregoing objections, Google responds as follows:

Pursuant to Federal Rule of Procedure 33(d), Google identifies the following documents from which the information sought by this interrogatory may be derived or ascertained, and for which the burden of deriving a response to this interrogatory is the same for Plaintiffs as it is for Google:

GOOG-CABR-04724084

Google is willing to meet and confer to discuss what additional information Plaintiffs are seeking through this Interrogatory.

**INTERROGATORY NO. 22:**

For private browsing data stored within the data sources that Google identifies in response to the Court's Orders at Dkts. 273 and 331 (including the ▮ data sources that Google identified on September 17, 2021), please explain the extent to which Google's use of that private browsing data differs in any way from Google's use of non-private browsing data stored within the same data sources.

**RESPONSE TO INTERROGATORY NO. 22:**

Google incorporates its General Objections as if set forth fully herein.  Google objects to this interrogatory as overly broad and unduly burdensome, as it requests information related to at least ▮ data sources, which is not proportional to the needs of the case.  Google further objects to this interrogatory to the extent it seeks discovery which has been provided to Plaintiffs pursuant to

CONFIDENTIAL

the Special Master process. Google hereby incorporates by reference its submissions to the Special Master.

Subject to and without waiving the foregoing objections, Google responds as follows:

Google incorporates by reference its amended response to Interrogatory No. 1. Sub-part (d) of Google's amended response to Interrogatory 1 describes Google's use of data received from a Chrome browser. Those uses do not differ based on whether or not a user has enabled Chrome's Incognito mode. However, as described in Google's amended response to Interrogatory 1, sub-part (d), Incognito mode will impact the cookies that Google Analytics and Ad Manager use to identify browsers.

## INTERROGATORY NO. 23:

For the period since June 1, 2016, please identify every circumstance in which private browsing data has been or can be tracked by, keyed to, or associated with a Zwieback cookie or Zwieback-based identifier.

## RESPONSE TO INTERROGATORY NO. 23:

Google incorporates its General Objections as if set forth fully herein. Google further objects to this interrogatory as overly broad and unduly burdensome, as it seeks information that is neither relevant nor likely to lead to the discovery of relevant information because Zwieback cookies and Zwieback identifiers are used for information related to Google owned and operated websites (*e.g.*, for personalizing searches on Google.com), and Plaintiffs have expressly defined their purported class as users "who accessed a *non-Google website* containing Google Analytics or Ad Manager." *See* SAC, ¶ 192 (emphasis added); *see also* June 2, 2021 Hearing Tr. 35:13-16 (discovery "is not carte blanche to all of Google's systems . . . and it will continue to tie back to the proper definitions of the class"). Google further objects to this interrogatory as overly broad and unduly burdensome because, on its face, it purports to seek a list of every instance where private browsing data "has been or can be tracked by, keyed to, or associated with a Zwieback cookie or Zwieback-based

CONFIDENTIAL

identifier" for a five-year period, which includes data for users outside of the United States as well as Google's theoretical technological capabilities that are not relevant to the issues in this case. Google further objects that the phrase "private browsing data has been or can be tracked by, keyed to, or associated with a Zwieback cookie or Zwieback-based identifier" is vague and ambiguous. Google further objects to this interrogatory because it seeks discovery which has been addressed by Special Master Douglas Brush ("Special Master"), who has issued a report and recommendation relating thereto.  Dkt. 299.  Google hereby incorporates by reference its submissions to the Special Master relating thereto.

Subject to and without waiving the foregoing objections, Google responds as follows:

Google is willing to meet and confer with Plaintiffs to understand the relevance and proper scope, if any, of this request.

**INTERROGATORY NO. 24:**

For the period since June 1, 2016, please explain in detail how Google has used private browsing data for purposes of tracking cross-device conversions, including all relevant Google mechanisms and processes (i.e., modeling, ███████████████████████

**RESPONSE TO INTERROGATORY NO. 24:**

Google incorporates its General Objections as if set forth fully herein.  Google further objects to this interrogatory as vague and ambiguous as to the undefined term "modeling," as it is unclear what data is being modeled for what purposes.  Google further objects to the phrase "all relevant Google mechanisms and processes" as vague and ambiguous, as it is a catch-all phrase that meaningfully broadens the scope of the interrogatory.  For the purposes of this response, Google interprets this interrogatory to only refer to ████████████, and ████████████.  Google further objects to interrogatory as seeking irrelevant information, as ████████████, and ████████████ are only used when a user is logged into her Google Account while in private browsing mode, which is

CONFIDENTIAL

outside of the Plaintiffs' own class definitions and would therefore seek information related to non-putative class members.  *See* SAC, ¶ 192.

Subject to and without waiving the foregoing objections, Google responds as follows:

Chrome is designed to prevent websites, and the third-party services installed on those websites such as Google Ad Manager, from detecting whether a user is in Incognito mode. As a result, when Google Ad Manager receives traffic from a Chrome browser, Google Ad Manager does not know whether or not the browser is in Incognito mode.  Furthermore, Incognito mode data cannot be used for cross-device conversion tracking by Google unless the user signs into her Google Account. When a user opens an Incognito window, a new "cookie jar" is created, and any cookies that are set are specific to that browser session instance (the "Incognito Session Cookies"). When a user ends the Incognito browsing session, the Incognito Session Cookies are deleted. █████████ and ██████████ cannot use Incognito Session Cookies to track cross-device conversions because there is no identifier to link activity across devices, due to the fact that Incognito Session Cookies are specific to a browser session and are deleted when the session ends.

Cross-device conversion tracking can only be performed by Google if an Incognito mode user also signs into her Google Account in an Incognito window. In that case, the GAIA cookie and Incognito session cookies will be in the same cookie jar at the same time.  Only in this scenario, when both cookies are in the jar at the same time, would █████████, or █████████ be able to perform cross-device conversion tracking, based on the GAIA ID.  However, such a scenario does not exist in the data-flow based on Plaintiffs' own class definitions, which excludes signed-in users. *See* SAC, ¶ 192.

**INTERROGATORY NO. 25:**

Please explain any and all steps that Google has considered, has taken, or plans to take to mitigate any expected or actual revenue losses attributable to the █████████ rollout.

CONFIDENTIAL

**RESPONSE TO INTERROGATORY NO. 25:**

Google incorporates its General Objections as if set forth fully herein.  Google further objects to this interrogatory as vague and ambiguous as to the undefined phrase "█████████ rollout." For the purposes of this response, Google interprets this phrase to refer to the launch of the ████ ████ feature on the Chrome browser.  Google further objects to this interrogatory as overly broad and unduly burdensome based on the request to "explain any and all steps that Google has considered, has taken, or plans to take," which essentially seeks every discussion ever conducted related to this topic.  Google further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objections, Google responds that Google engineers had preliminary discussions about the possibility of using modeling to mitigate the impact of █████████ .  However, Google has not formulated or acted upon any plan to mitigate any revenue losses attributable to the █████████ rollout, to the extent there are or have been any such revenue losses.

**INTERROGATORY NO. 26:**

If Google contends that it could not have turned on third-party cookie blocking by default in Chrome Incognito mode (e.g., █████████ prior to June 2016, please explain and identify all evidence that You contend supports Your position.

**RESPONSE TO INTERROGATORY NO. 26:**

Google incorporates its General Objections as if set forth fully herein.  Google further objects to this request as a premature contention interrogatory.  Google further objects to this interrogatory as seeking information that is neither relevant nor likely to lead to the discovery of relevant information, including Google's theoretical technological capabilities, which are not relevant to the issues in this case.  Google further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege or work product doctrine, including *inter*

CONFIDENTIAL

*alia* discussions between Google and legal counsel regarding antitrust or competition regulations applicable to blocking third-party cookies.  Google further objects to this interrogatory to the extent it posits a hypothetical and seeks speculation.  *See, e.g.*, *Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, at *2 (N.D. Cal. Sept. 18, 2012) ("When an interrogatory calls for an opinion, it 'must be phrased with particularity' to avoid being an improper hypothetical.") (citation omitted); *see also Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D.D.C. 1989) (denying motion to compel responses to hypothetical interrogatories because contention interrogatories must "relate to, or be applied to, a *fact*.")

Subject to and without waiving the foregoing objections, Google believes that no response to this interrogatory is necessary because Google has not contended in this case that it could not have turned on third-party cookie blocking by default in Chrome Incognito mode prior to June 2016. Google reserves the right to supplement its response to this interrogatory if it does make such a contention.

**INTERROGATORY NO. 27:**

Please explain why Google's newly revised Terms of Service, effective January 5, 2022, has removed the portion of the March 31, 2020 Terms of Service which states that the Google Privacy Policy is "not part of these terms."

**RESPONSE TO INTERROGATORY NO. 27:**

Google incorporates its General Objections as if set forth fully herein.  Google further objects to this request as seeking information that is neither relevant nor likely to lead to the discovery of relevant information in light of the parties' ongoing discussions regarding a stipulation addressing Google's January 5, 2022 Terms of Service.  Google further objects to this Interrogatory to the extent it is tailored to seek information protected by the attorney-client privilege, the work product doctrine, or the common interest doctrine, or that is otherwise privileged or protected from discovery.

CONFIDENTIAL

Subject to and without waiving the foregoing objections, Google responds as follows:

Google's revision to remove the phrase that the Google Privacy Policy is "not part of these terms" is not a change that affects all of its Terms of Services globally.  The inclusion of this phrase was a requirement in the European Union ("EU") and the phrase is still included in the EU version of Google's Terms of Service.  Since there is no similar requirement for Google to include this phrase in the United States, Google removed this phrase in its United States version of the Terms of Service, effective January 5, 2022.

**INTERROGATORY NO. 28:**

Please explain in detail how Google uses the information collected when users within a private browsing mode visit websites that use Google Analytics for purposes of ad targeting, including remarketing.

**RESPONSE TO INTERROGATORY NO. 28:**

Google incorporates its General Objections as if set forth fully herein.  Google further objects to this interrogatory as overly broad and unduly burdensome, as it seeks information related to non-putative class members, such as users who may be signed into their Google Account while using Chrome Incognito mode.  Google further objects to this interrogatory as seeking information that is not in Google's custody, possession, or control to the extent it purports to seek information related to private browsing modes on browsers other than Chrome.

Subject to and without waiving the foregoing objections, Google responds as follows:

Google is willing to meet and confer with Plaintiffs to understand the relevance and proper scope, if any, of this request.

**INTERROGATORY NO. 29:**

If Google contends that it is impossible to redesign Chrome Incognito to prevent the

CONFIDENTIAL

Chrome browser from sending information to Google when a user visits a website that uses Google services, such as Google Analytics or Google Ad Manager, please explain and identify all evidence that You contend supports Your position.

**RESPONSE TO INTERROGATORY NO. 29:**

Google incorporates its General Objections as if set forth fully herein.  Google further objects to this interrogatory as vague and ambiguous as to the undefined term "information."  For the purposes of this response, Google interprets this phrase to refer to (i) "[t]he 'GET request' sent from the user's computer to the website," Dkt. 136-1 ¶ 63.a; (ii) "The IP address of the user's connection to the internet," Dkt. 136-1 ¶ 63.b; (iii) "'fingerprint' data," Dkt. 136-1 ¶ 63.c; (iv) "[a]ny 'User-ID' issued by the website to the user, if available," Dkt. 136-1 ¶ 63.d; (v) "Geolocation of the user, if available," Dkt. 136-1 ¶ 63.e; and (vi) "[i]nformation contained in 'Google cookies,'" Dkt. 136-1 ¶ 63.f.  Google further objects to this interrogatory as a premature contention interrogatory.  Google further objects to this interrogatory as overly broad and unduly burdensome, as it seeks information related to signed-in users, who are not part of the putative class.  Google further objects to this interrogatory to the extent it seeks information on a hypothetical possibility, not Google's actual conduct.  *See, e.g.*, *Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, at *2 (N.D. Cal. Sept. 18, 2012) ("When an interrogatory calls for an opinion, it 'must be phrased with particularity' to avoid being an improper hypothetical.") (citation omitted); *see also Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D.D.C. 1989) (denying motion to compel responses to hypothetical interrogatories because contention interrogatories must "relate to, or be applied to, a *fact*.").  Google further objects to this Interrogatory as seeking irrelevant information because whether or not Chrome can be redesigned to prevent sending information to Google is not relevant to a claim or defense in this action.

Subject to and without waiving the foregoing objections, Google believes that no response to this interrogatory is necessary because Google has not contended in this case that it is impossible

CONFIDENTIAL

to redesign Chrome Incognito to prevent the Chrome browser from sending information to Google when a user visits a website that uses Google services, such as Google Analytics or Google Ad Manager.  Google reserves the right to supplement its response to this interrogatory if it does make such a contention.

DATED: January 20, 2022                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                           By   */s/ Andrew H. Schapiro*
                                           Andrew H. Schapiro (admitted *pro hac vice*)
                                           andrewschapiro@quinnemanuel.com
                                           191 N. Wacker Drive, Suite 2700
                                           Chicago, IL 60606
                                           Telephone: (312) 705-7400
                                           Fax: (312) 705-7401

                                           Stephen A. Broome (CA Bar No. 314605)
                                           sb@quinnemanuel.com
                                           Viola Trebicka (CA Bar No. 269526)
                                           violatrebicka@quinnemanuel.com
                                           865 S. Figueroa Street, 10th Floor
                                           Los Angeles, CA 90017
                                           Telephone: (213) 443-3000
                                           Fax: (213) 443-3100

                                           Jomaire A. Crawford (admitted *pro hac vice*)
                                           jomairecrawford@quinnemanuel.com
                                           51 Madison Avenue, 22nd Floor
                                           New York, NY 10010
                                           Telephone: (212) 849-7000
                                           Facsimile: (212) 849-7100

                                           Josef Ansorge (admitted *pro hac vice*)
                                           josefansorge@quinnemanuel.com
                                           Carl Spilly (admitted *pro hac vice*)
                                           carlspilly@quinnemanuel.com
                                           1300 I. Street, N.W., Suite 900
                                           Washington, D.C. 20005
                                           Telephone: 202-538-8000
                                           Fax: 202-538-8100

                                           Jonathan Tse (CA Bar No. 305468)
                                           jonathantse@quinnemanuel.com
                                           50 California Street, 22nd Floor
                                           San Francisco, CA 94111
                                           Telephone: (415) 875-6600
                                           Fax: (415) 875-6700

                                           *Attorneys for Defendant Google LLC*

CONFIDENTIAL

**PROOF OF SERVICE**

**LOS ANGELES, CA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in Los Angeles, CA. My business address is 865 S. Figueroa St., 10th Floor, Los Angeles, CA, 90017.

On January 20, 2022, I served true copies of the following document(s) described as **DEFENDANT GOOGLE LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' 7TH SET OF INTERROGATORIES (NOS. 21-29)** on the interested parties in this action as follows:

**SEE ATTACHED LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION**: I transmitted PDF format copies of the document(s) described above to the e-mail addresses on the attached Service List pursuant to the agreement between the parties to serve discovery, in lieu of other service methods, by email under Fed. R. Civ. P. 5(b)(2)(E) (see Joint Case Management Statement § 8.b, Dkt. 44) and on non-parties pursuant to the Court's August 12, 2021 Cross-use and Discovery Coordination Orders issued in *Brown v. Google LLC*, Case No. 5:20-cv-03664-LHK-SVK (Dkt. 243) and *Calhoun v. Google*, Case No.: 5:20-cv-05146-LHK-SVK (Dkt. 263). The documents were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 20, 2022 at Los Angeles, CA.

/s/ *Marie Hayrapetian*
Marie Hayrapetian

CONFIDENTIAL

1

**SERVICE LIST**

2

*Brown v. Google LLC*

3

*Case No. 5:20-cv-03664-LHK-SVK*

4

*Attorneys for Plaintiffs Chasom Brown et al.* BOIES SCHILLER FLEXNER LLP

5

Mark C. Mao, CA Bar No. 236165

6

Sean P. Rodriguez, CA Bar No. 262437
Beko Richardson, CA Bar No. 238027

7

Antonio Lavalle Ingram, II, CA Bar No. 300528
Alexander Justin Konik, CA Bar No. 299291

8

**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor

9

San Francisco, CA 94104

10

Tel.: (415) 293-6800
Fax: (415) 293-6899

11

mmao@bsfllp.com
srodriguez@bsfllp.com

12

brichardson@bsfllp.com
aingram@bsfllp.com

13

akonik@bsfllp.com

14

James Lee (admitted pro hac vice)

15

Rossana Baeza (admitted pro hac vice)
**BOIES SCHILLER FLEXNER LLP**

16

100 SE 2nd St., 28th Floor
Miami, FL 33131

17

Tel.: (305) 539-8400

18

Fax: (303) 539-1307
jlee@bsfllp.com

19

rbaeza@bsfllp.com

20

Amanda K. Bonn, CA Bar No. 270891

21

**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400

22

Los Angeles, CA. 90067
Tel: (310) 789-3100

23

Fax: (310) 789-3150
abonn@susmangodfrey.com

24

25

William S. Carmody (admitted pro hac vice)
Shawn Rabin (admitted pro hac vice)

26

Steven M. Shepard (admitted pro hac vice)
**SUSMAN GODFREY L.L.P.**

27

1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023

28

Tel.: (212) 336-8330

CONFIDENTIAL

1    Fax: (212) 336-8340
     bcarmody@susmangodfrey.com
2    srabin@susmangodfrey.com
     sshepard@susmangodfrey.com
3
4    John A. Yanchunis (admitted pro hac vice)
     Ryan J. McGee (admitted pro hac vice)
5    Ra Olusegun Amen (admitted pro hac vice)
     Jean Sutton Martin (admitted pro hac vice)
6    **MORGAN & MORGAN**
     201 N. Franklin Street, 7th Floor
7    Tampa, FL 33602
     Tel.: (813) 223-5505
8    jyanchunis@forthepeople.com
     rmcgee@forthepeople.com
9    ramen@forthepeople.com
     jean@jsmlawoffice.com
10
11   *Attorneys for Plaintiffs*
12
13
14   *Calhoun v. Google LLC*
15   *Case No. 5:20-cv-5146-LHK-SVK*
16
     *Attorneys for Plaintiffs Patrick Calhoun*
17   *et al.*                    BLEICHMAR FONTI & AULD LLP
18
     **BLEICHMAR FONTI & AULD LLP**
19   Lesley Weaver (Cal. Bar No. 191305)
     Angelica M. Ornelas (Cal. Bar No. 285929)
20   Joshua D. Samra (Cal. Bar No. 313050)
     555 12th Street, Suite 1600
21   Oakland, CA 994607
     Tel.: (415) 445-4003
22   Fax: (415) 445-4020
     *lweaver@bfalaw.com*
23   *aornelas@bfalaw.com*
     *jsamra@bfalaw.com*
24
25   **DICELLO LEVITT GUTZLER**
     David A. Straite (admitted *pro hac vice*)
26   One Grand Central Place
     60 East 42nd Street, Suite 2400
27   New York, NY 10165
     Tel.: (646) 933-1000
28

-15-                          Case No. 5:20-cv-03664-LHK
DEFENDANT'S RESPONSES AND OBJECTIONS TO 7TH SET OF ROGS (NOS. 21-29)

CONFIDENTIAL

dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
akeller@dicellolevitt.com

**SIMMONS HANLY CONROY LLC**
Mitchell M. Breit (admitted *pro hac vice*)
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (*pro hac vice* to be sought)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

*Attorneys for Plaintiffs*

# EXHIBIT 42

# NON-PARTY MOZILLA CORPORATION'S OBJECTIONS AND RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS

1 DURIE TANGRI LLP
JOSEPH C. GRATZ (SBN 240676)
2 jgratz@durietangri.com
JOYCE C. LI (SBN 323820)
3 jli@durietangri.com
217 Leidesdorff Street
4 San Francisco, CA  94111
Telephone:    415-362-6666
5 Facsimile:    415-236-6300

6 Attorneys for Non-Party
MOZILLA CORPORATION

7

8

9

10

11                    IN THE UNITED STATES DISTRICT COURT

12                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                              SAN JOSE DIVISION

14 CHASOM BROWN, MARIA NGUYEN,                Case No. 5:20-CV-03664-LHK-SVK
   WILLIAM BYATT, JEREMY DAVIS, and
15 CHRISTOPHER CASTILLO, individually and on  **NON-PARTY MOZILLA CORPORATION'S**
   behalf of all others similarly situated,  **OBJECTIONS AND RESPONSE TO**
16                                            **SUBPOENA TO PRODUCE DOCUMENTS,**
                       Plaintiffs,            **INFORMATION OR OBJECTS**
17
18           v.
19 GOOGLE LLC,
20                     Defendant.
21
22
23
24
25
26
27
28

Pursuant to Rule 45 of the Federal Rules of Civil Procedure and any other applicable rules of law, Non-party Mozilla Corporation ("Mozilla") responds and objects to Plaintiffs Chasom Brown, Maria Nguyen, William Byatt, Jeremy Davis, and Christopher Castillo's (collectively, "Plaintiffs") Document Request attached to its Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena") in the litigation styled *Chasom Brown, et al. v. Google, LLC*, Case No. 5:20-cv-03664 (N.D. Cal.) (the "Action").

## PRELIMINARY STATEMENT

Mozilla responds and objects based on its present knowledge.  It reserves objections relating to any additional discovery and reserves the right to supplement, amend, or modify these objections and response.

## GENERAL OBJECTIONS

Mozilla asserts the following objections as to the Subpoena and each and every Request:

1.      Mozilla objects to the Subpoena and each and every Request to the extent that it seeks the production of documents or information protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other doctrine foreclosing compelled discovery.  Nothing contained in these objections is intended as, or shall in any way be deemed, a waiver of any attorney-client privilege, attorney work-product protection, common interest privilege, or any other applicable privilege or doctrine.  Mozilla will not provide information protected by any applicable privilege.  Any disclosure of such information, inadvertent or otherwise, shall not be deemed a waiver of such protections.

2.      Mozilla objects to the Subpoena and each and every Request to the extent it demands production of confidential or proprietary information including, without limitation, trade secrets.  Mozilla will produce documents concerning such information only in accordance with any protective order in the Action.

3.      Mozilla objects to the Subpoena and each and every Request to the extent any part of it seeks to impose on Mozilla obligations greater than those provided by law.

4.      Mozilla objects to the Subpoena and each and every Request to the extent that it purports to impose a burden of providing information not in Mozilla's possession, custody, or control or which

cannot be found in the course of a reasonable search.

5.    Mozilla objects to the Subpoena and each and every Request to the extent it seeks restoration or de-archiving of data not readily accessible in the ordinary course of business.

6.    A representation that Mozilla will produce copies of non-privileged, responsive documents that are within its possession, custody, or control is not a representation that any such documents exist.

8.    The fact that Mozilla has responded to part or all of a Request is not intended to and shall not be construed as a waiver by Mozilla of any objection to such Request.

9.    Mozilla's response and objections do not constitute any agreement by Mozilla with any of the Definitions set forth in the Requests.  To the extent Mozilla uses those Definitions, it does so only for purposes of clarity and consistency.

10.    Mozilla objects to the Definitions and Instructions to the extent they (i) are vague or ambiguous; (ii) are overly broad or unduly burdensome; (iii) are inconsistent with the ordinary meaning of the words or phrases they purport to define; (iv) seek to impose obligations different from or beyond those required under the Federal Rules of Civil Procedure, under the Local Rules for the Northern District of California, or by this Court; (v) include assertions of purported fact that are inaccurate or disputed by Mozilla or the parties to the Action; or (vi) incorporate other Definitions or Instructions that have these defects.  In responding, Mozilla will adhere to the applicable rules, not to the Definitions and Instructions.

11.    All of these general objections are incorporated into each individual response set forth below.  The responses below are made subject to and without waiving these general objections.

**SPECIFIC OBJECTIONS TO REQUEST FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

ALL DOCUMENTS sufficient to IDENTIFY all individuals who have used a Private Window or Private Browsing mode in Firefox from June 1, 2016 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In addition to its General Objections, Mozilla objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks discovery neither relevant to the claims or defenses of any

3

party nor proportional to the needs of the Action.

Mozilla also objects to this Request as overbroad to the extent it seeks "ALL DOCUMENTS sufficient to IDENTIFY all individuals" and relies on Plaintiffs' definition of "IDENTIFY."

Mozilla also objects to this Request as unduly burdensome to the extent it seeks information that is in the possession, custody, or control of the parties in the Action or is available from public sources.

Mozilla also objects to this Request to the extent it seeks information protected by the attorney-client privilege, work-product doctrine, or common interest privilege or any other applicable privilege or immunity.

Mozilla also objects to this request as calling for the production of private and confidential information of third-party users without adequate justification.

In light of its objections, Mozilla responds as follows: Mozilla does not possess documents or information sufficient to ascertain the identity of individuals who have used a Private Window or Private Browsing mode in Firefox.  In view of the foregoing, Mozilla will not be producing any documents.


Dated:  August 27, 2021                    DURIE TANGRI LLP


                                           By:_____/s/ Joseph C. Gratz_____
                                                        JOSEPH C. GRATZ

                                           Attorneys for Non-Party MOZILLA CORPORATION

## PROOF OF SERVICE

I am employed in San Francisco County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made.  I am over the age of eighteen years, and not a party to the within action.  My business address is 217 Leidesdorff Street, San Francisco, CA 94111.

On August 27, 2021, I served the following documents in the manner described below:

**NON-PARTY MOZILLA CORPORATION'S OBJECTIONS AND RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS**

[X]     BY ELECTRONIC SERVICE:  By electronically mailing a true and correct copy through Durie Tangri's electronic mail system from mrubalcaba@durietangri.com to the email addresses set forth below.

On the following part(ies) in this action:

Mark C. Mao
Sean P. Rodriguez
Beko Richardson
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com
srodriguez@bsfllp.com
brichardson@bsfllp.com

James Lee (*Pro Hac Vice*)
Rossana Baeza (*Pro Hac Vice*)
BOIES SCHILLER FLEXNER LLP
100 SE 2d St., 28th Floor
Miami, FL 33131
Tel: (305) 5.39-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

Amanda K. Bonn
SUSMAN GODFREY L.L.P
1900 A venue of the Stars, Suite 1400
Los Angeles, CA. 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William S. Carmody (*Pro Hac Vice*)
Shawn Rabin (*Pro Hac Vice*)
Steven M. Shepard (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: (212) 336-8330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com

Michael F. Ram
MORGAN & MORGAN
711 Van Ness Ave., Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
Fax: (415) 358-6923
mram@forthepeopie.com

John A. Yanchunis (*Pro Hac Vice*)
Ryan J. McGee (*Pro Hac Vice*)
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

**Attorneys for Plaintiffs**
**CHASOM BROWN, MARIA NGUYEN, WILLIAM BYATT,**
**JEREMY DAVIS, and CHRISTOPHER CASTILLO**

Andrew H. Schapiro (*Pro Hac Vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401
andrewschapiro@quinnemanuel.com

Jonathan Tse
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415)875-6700
jonathantse@quinnemanuel.com

Stephen A. Broome
Viola Trebicka
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street; 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100
stephenbroome@quinnemanuel.com
violatrebicka@quinnemanuel.com

Diane M. Doolittle
Thao Thai
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5000
Fax: (650) 801-5100
dianedoolittle@quinnemanuel.com
thaothai@quinnemanuel.com

William Burck (*Pro Hac Vice*)
Josef Ansorge (*Pro Hac Vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
williamburck@quinnemanuel.com
josefansorge@quinnemanuel.com

**Attorneys for Defendant**
**GOOGLE LLC**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 27, 2021, at San Francisco, California.

_Mary Ann Rubalcaba_
Mary Ann Rubalcaba

# EXHIBIT 43

# 9/20/21 Letter from Apple to Brown Counsel



*Via Email Delivery*
September 20, 2021

Ryan J. McGee
MORGAN & MORGAN
201 N. Franklin Street
Tampa, FL - Florida 33602

Re: CHASOM BROWN, et al. v. GOOGLE, LLC

Dear Counsel,

I am writing on behalf of Apple Inc. ("Apple") with regard to the subpoena in the above-referenced matter. This subpoena was received at Apple on August 13, 2021. After completing a review, Apple responds on the following grounds:

## (1) Apple is not in possession of the requested records

Apple does maintain documents sufficient to "IDENTIFY all individuals who have used a Private Window or Private Browsing mode in Safari…" and therefore has no documents to provide.

Through correspondence by this letter, Apple does not intend to waive any other applicable objections, including personal jurisdiction.

Sincerely,

Sean Pinner
Corporate Counsel
Privacy & Law Enforcement Compliance
Apple Inc.
One Apple Park Way
105-2CLP
Cupertino, CA 95014
http://www.apple.com/privacy/
https://www.apple.com/privacy/docs/legal-process-guidelines-us.pdf

# EXHIBIT 44

# THIRD-PARTY RESPONDENT MICROSOFT CORPORATION'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SUBPOENA

EMILY JOHNSON HENN (Bar No. 269482)
KATHRYN E. CAHOY (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

JENNA L. ZHANG (Bar No. 336105)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: jzhang@cov.com

*Attorneys for Third-Party Respondent*
*Microsoft Corporation*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, MARIA NGUYEN, WILLIAM BYATT, JEREMY DAVIS, and CHRISTOPHER CASTILLO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Case No. 5:20-cv-03664-LHK<br><br>**THIRD-PARTY RESPONDENT MICROSOFT CORPORATION'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SUBPOENA** |

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Third-Party Respondent Microsoft Corporation, by and through undersigned counsel, submits the following objections and response to Plaintiffs Chasom Brown et al.'s Subpoena to Produce Documents.

## RESERVATION OF RIGHTS

Microsoft responds to the Subpoena to the best of its knowledge at the present time and reserves the right at any time to supplement, amend, correct, or clarify its responses and objections, but undertakes no obligation to do so beyond the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, and other applicable orders or rules. Any supplemental or amended response shall not function as a waiver of any privilege or objection Microsoft has or may assert. Any response to the Subpoena or a production of documents or things made by Microsoft will be solely for the purpose of this action, without waiving or intending to waive, but, on the contrary, preserving and intending to preserve: (a) the right to object on any grounds, at any time, to other discovery requests relating to the subject of the Subpoena to which Microsoft has responded; (b) the right to object, on the grounds of competency, privilege, relevancy, materiality, confidentiality, authenticity, admissibility, or any other proper grounds, to the use of the responses, documents, or information provided by Microsoft as evidence for any purpose, in whole or in part, in any subsequent proceeding, or in any trial in this action or any other action; and (c) the right at any time to revise, correct, supplement, or clarify Microsoft's responses or objections. That Microsoft has objected or responded to the Subpoena is not and should not be taken as an admission that Microsoft accepts or admits the existence of any fact set forth in or assumed by the Subpoena, or as an indication that Microsoft agrees with or adopts any characterization or statement within the Subpoena.

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS & INSTRUCTIONS

1. Microsoft objects to the "Definitions" and "Instructions" to the extent they seek to impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, and/or the terms of the Stipulated Protective Order between Plaintiffs and Defendant Google LLC, or between any parties to the above-captioned action.

2.      Microsoft objects to Definition A (Definition of "All") and Instruction 1(c) as overly broad and unduly burdensome because they seek to require Microsoft to produce "any and all" of the requested material, which courts consistently agree is "overbroad and impermissible." *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) ("Blanket requests of this kind are plainly overbroad and impermissible."); *Belling v. DDP Holdings, Inc.*, 2013 WL 12140986, at *3 (C.D. Cal. May 30, 2013) ("blanket requests" for "any and all documents" are "overbroad on their face").

3.      Microsoft objects to Definition B (Definition of "Document") to the extent the definition goes beyond or is inconsistent with the definition in Fed. R. Civ. P. 34. Microsoft will interpret "Document" as defined in the Rule 34.

4.      Microsoft objects to Definition C (Definition of "Identify") as unduly burdensome and disproportionate to the extent that the listed categories of information cannot be associated with or linked to a specific individual or Google user.

5.      Microsoft objects to Definition D (Definition of "You" and "Your") on the grounds of overbreadth, undue burden, and proportionality, and as seeking privileged information, to the extent it seeks information outside the possession, custody, or control of Microsoft through references to "attorneys, agents, representatives, predecessors, successors, assigns, and anyone acting or purporting to act on [Microsoft's] behalf." Microsoft will interpret "You" and "Your" to mean the third-party respondent, Microsoft Corporation.

6.      Microsoft objects to Instructions 10–12 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent they purport to seek information not in Microsoft's possession, custody, or control.

## DOCUMENT REQUEST

**REQUEST FOR PRODUCTION NO. 1**

ALL DOCUMENTS sufficient to IDENTIFY all individuals who have used InPrivate Browsing mode in Microsoft IE/Edge from June 1, 2016 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**

Microsoft objects to this Request because it calls for the disclosure of information that, if available at all, is sensitive, confidential, or proprietary information, or information protected by the right to privacy for which no such substantial need has been demonstrated. Microsoft further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks information (the identity of members of a putative class) that, if available at all, should be sought from parties to the litigation. Microsoft further objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and not likely to lead to the discovery of relevant evidence because it seeks information that, if available at all, has no apparent relation to the claims in the case or the class plaintiff seeks to certify. Microsoft further objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, not likely to lead to the discovery of relevant evidence, and as seeking information that is not reasonably accessible, to the extent it purports to require Microsoft to create documents that do not otherwise exist. Microsoft further objects to this Request to the extent it calls for the production of data or information in a form that is not maintained and readily accessible in the usual course of business.

Based on these objections, and based on its investigation to date, Microsoft responds it does not have documents responsive to the Request. Microsoft will supplement this response if necessary as its investigation proceeds.

Dated: August 27, 2021

COVINGTON & BURLING LLP

By: */s/ Emily Johnson Henn*
EMILY JOHNSON HENN (Bar No. 269482)
KATHRYN E. CAHOY (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

JENNA L. ZHANG (SBN 336105)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: jzhang@cov.com

*Attorneys for Third-Party Respondent*
*Microsoft Corporation*

5

THIRD-PARTY RESPONDENT MICROSOFT CORPORATION'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SUBPOENA
Case No. 5:20-cv-03664-LHK

## PROOF OF SERVICE

I declare that I am an attorney with the law firm of Covington & Burling LLP, whose address is Salesforce Tower 415 Mission Street, Suite 5400 San Francisco, CA 94105-2533. I am over the age of eighteen years and not a party to this action. On August 27 2021, I caused a true and correct copy of the foregoing document to be served on counsel for plaintiff in this action via electronic mail addressed as follows:

| BOIES SCHILLER FLEXNER LLP | SUSMAN GODFREY L.L.P. |
|---|---|
| Mark C. Mao<br>mmao@bsfllp.com<br>Sean P. Rodriguez<br>srodriguez@bsfllp.com<br>Beko Richardson<br>brichardson@bsfllp.com<br>James Lee<br>jlee@bsfllp.com<br>Rossana Baeza<br>rbaeza@bsfllp.com | Amanda K. Bonn<br>abonn@susmangodfrey.com<br>William S. Carmody<br>bcarmody@susmangodfrey.com<br>Shawn Rabin<br>srabin@susmangodfrey.com<br>Steven M. Shepard<br>sshepard@susmangodfrey.com |
| **MORGAN & MORGAN**<br><br>Michael F. Ram<br>mram@forthepeople.com<br>John A. Yanchunis<br>jyanchunis@forthepeople.com<br>Ryan J. McGee<br>rmcgee@forthepeople.com<br>Marie Appel<br>mappel@forthepeople.com | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: August 27, 2021                                        By: */s/ Jenna L. Zhang*
                                                                               Jenna L. Zhang

# EXHIBIT 45

# 6/16/21 Glenn Berntson 30(b)(6) Deposition Transcript Excerpts

# Redacted Version of Document Sought to be Sealed

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

- - -

```
CHASOM BROWN, WILLIAM      :  Case No.
BYATT, JEREMY DAVIS,       :
CHRISTOPHER CASTILLO       :  5:20-cv-03664-
and MONIQUE TRUJILLO,      :  LHK
individually and           :
on behalf of all other     :
similarly situated,        :  CONFIDENTIAL
                           :
           Plaintiffs,     :
                           :
              v.           :
GOOGLE, LLC,               :
                           :
           Defendant.      :
```

- - -

Wednesday, June 16, 2021

- - -

Videotaped 30(b)(6) deposition of

GLENN BERNTSON held pursuant to notice,

beginning at 10:27 AM, on the above date,

and recorded stenographically by

Constance S. Kent, a Certified Court

Reporter, Registered Professional

Reporter and Notary Public.


*   *   *

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com



Page 2

```
 1   A P P E A R A N C E S:

 2        BOIES SCHILLER FLEXNER LLP
          BY:  MARK C. MAO, ESQ.
 3             BEKO REBLITZ-RICHARDSON, ESQ.
          44 Montgomery Street, 41st Floor
 4        San Francisco, California 94104
          (415) 293-6800
 5        mmao@bsfllp.com
          brichardson@bsfllp.com
 6        Attorneys for Plaintiffs

 7
          BOIES SCHILLER FLEXNER LLP
 8        BY:  ROSSANA BAEZA, ESQ.
               (pro hac vice)
 9        100 SE 2nd Street, 28th Floor
          Miami, Florida 33131
10        (305) 539-8400
          rbaeza@bsfllp.com
11        Attorney for Plaintiffs

12
          MORGAN & MORGAN
13        BY:  RYAN McGEE, ESQ.
          201 N. Franklin Street, 7th Floor
14        Tampa, Florida 33602
          (813) 223-5505
15        rmcgee@forthepeople.com
          Attorney for the Plaintiff
16
          SUSMAN GODFREY L.L.P
17        BY:  ALEXANDER FRAWLEY, ESQ.
          1900 Avenue of the Stars, Suite 1400
18        Los Angeles, California 90067
          (310) 789-3100
19        afrawley@susmangodfrey.com
          Attorneys for Plaintiffs
20

21

22

23

24
```



Page 3

```
 1        APPEARANCES, continued

 2        QUINN EMANUEL URQUHART & SULLIVAN,
          LLP
 3        BY:  STEPHEN BROOME, ESQUIRE
               JOSEF ANSORGE, ESQUIRE
 4        1300 I Street, NW, Suite 900
          Washington, D.C. 20005
 5        (202) 538.8000
          stephenbroome@quinnemanuel.com
 6        josefansorge@quinnemanuel.com
          Counsel for Defendants
 7
          ALSO PRESENT:
 8
          Matthew Gubiotti, Esquire
 9        In-house counsel for Google

10        Jay Bhatia

11        Chris Thompson, 233 Analytics, LLC

12        Adam Depew, Video Specialist

13        Noah Fox, Trial Technician

14

15

16

17

18

19

20

21

22

23

24
```



Page 278

1    order to be able to represent that ID

2    within Double, we have to create a device

3    representation that looks like a

4    Biscotti, which we call a mapped

5    Biscotti, which is maintained in the

6    mapping table.

7              So in the second case, the

8    Biscotti is named Biscotti purely because

9    it's an N64, but it's never shared with a

10   client.  That mapping is simply allowing

11   us to -- to use a representation, to

12   represent the device ID as an N64.

13             Q.   I see.  So -- so in -- in

14   the instance in which I, for example, on

15   Chrome open up an incognito mode session,

16   okay, I presume that Biscotti ID that's

17   generated on -- on the browser side --

18   I'm sorry, that's generated on the server

19   side, I presume that would be a different

20   Biscotti than whatever they would have

21   had in their normal Chrome browsing mode;

22   is that correct?

23             MR. BROOME:   Object to the

24        form.



Page 279

1          THE WITNESS:  When you

2        create an incognito session, the

3        incognito session starts off with

4        an empty cookie jar that is not

5        shared with anything else on your

6        device.  So yes, when an ad

7        request is made from an incognito

8        session for the first time, there

9        is no Biscotti, so it will

10        generate a brand new Biscotti that

11        has no mapping to anything else.

12   BY MR. MAO:

13          Q.    And what happens on these

14   mapping tables where you have a device ID

15   mapped to a browser ID, is there no

16   mapping there in this instance for

17   incognito?

18          A.     All device IDs are

19   represented internally as mapped

20   Biscottis but when we have a Biscotti

21   past direct -- you know, that we generate

22   a Biscotti for a browser and then we

23   receive the actual Biscotti from the

24   browser, there's no mapping necessary



Page 280

1    because we have the Biscotti.

2            Q.      Okay.  So in what state in

3    incognito does the incognito Biscotti get

4    mapped to the device ID?

5            A.      It doesn't.

6            Q.      What about deep link, for

7    example?

8            A.      Deep link doesn't require

9    that you have a device ID.

10           Q.      But if I click on a deep

11   link incognito and it opens up a native

12   app that I have on my phone, does it then

13   create a matching table between the

14   incognito Biscotti and the device ID?

15           A.      I don't understand your

16   question.  I'm trying to parse -- I'm

17   trying to figure out how to respond to

18   it, but I don't think I really understand

19   your question.  Can you try that again?

20           Q.      Okay.  So I'm trying to

21   understand when you open a deep link from

22   your browser, let's say Chrome on

23   Android, okay, if I open a deep link and

24   that deep link links to essentially what



Page 281

```
 1   would have been initially, I guess,
 2   initiated as a view on my native app,
 3   does that create a linking between the
 4   device ID and the Biscotti ID?  A
 5   mapping.  Sorry, a mapping between
 6   Biscotti ID and the device ID.
 7          A.    No.
 8          Q.    So in terms of an incognito
 9   Biscotti, how is that Biscotti treated in
10   terms of the Double, I guess you call it,
11   storage tables on        .  What generally
12   happens to Biscottis generated in
13   incognito mode?
14          A.    They're treated like any
15   other Biscotti.  Ads doesn't know whether
16   an ad request is coming from a brow --
17   from a Chrome browser in incognito mode
18   or not.
19          Q.    Does Google Analytics know
20   whether or not a -- I guess a URL or a
21   packet is in incognito or not?
22                MR. BROOME:  Object to the
23          form.
24                THE WITNESS:  No.
```



Page 282

1    BY MR. MAO:

2            Q.      Sorry, what was your answer?

3            A.      No.

4            Q.      So other than -- other than

5    a lack of X-Client-Data header and a non-

6    shared cookie jar, does Google treat

7    incognito browsing sessions any

8    differently than other browsing sessions?

9                   MR. BROOME:   Object to the

10              form.

11              THE WITNESS:   Incognito mode

12              was designed so that no system

13              like ads or Google Analytics can

14              know whether or not you're in

15              incognito mode, and that means

16              no -- a Google Analytics installed

17              on a publisher site that is

18              rendering for the first time in an

19              incognito browser will set the

20              first-party ID, the CID, and then

21              pass that back, and so this will

22              look like a different user to

23              Google Analytics.

24                   And a similar phenomenon



Page 283

1          will happen for Biscotti in that

2          when an ad request is made and

3          there's no Biscotti present, then

4          we will create a new Biscotti,

5          send it back and it will be set in

6          the incognito browser with the

7          exception that if the user has

8          disabled third-party cookies in

9          the context of entering incognito

10         mode, then we are unable to set

11         the Biscotti cookies so there will

12         not be a Biscotti cookie in

13         incognito mode.

14              Because Google Analytics

15         sets just first-party cookies,

16         they are able to create and set

17         the CID.

18    BY MR. MAO:

19         Q.    Okay.  So prior to the

20    Chrome browser turning on block

21    third-party cookies as a default state

22    for incognito, prior to that, Google Ad

23    Manager was generally able to detect

24    whether or not there was a third-party



Page 371

```
 1          rights for what?
 2                MR. MAO:  I'm reserving my
 3          rights to ask additional questions
 4          of a witness that's properly
 5          prepared to testify to the topics,
 6          including the topics which the
 7          court had actually ordered.
 8                MR. BROOME:  Okay.  But you
 9          don't have any more questions for
10          Mr. Berntson?
11                MR. MAO:  Disagree.  I don't
12          know.
13                MR. BROOME:  You don't know
14          if you have any more questions for
15          him?
16                MR. MAO:  Steve, stop
17          burning my time.
18                MR. BROOME:  Do you have any
19          more questions for Mr. Berntson?
20                MR. MAO:  I'm pausing my
21          portion.
22                MR. BROOME:  Okay.  I'm
23          going to take that as a no.
24          Did -- can I -- can I ask my
```



Page 372

```
 1          questions now?  I'm going to take
 2          your silence, your non-response as
 3          a yes.
 4                    -   -   -
 5            E X A M I N A T I O N
 6                    -   -   -
 7   BY MR. BROOME:
 8          Q.    Mr. Berntson, do you recall
 9   that Mr. Mao asked you some questions
10   today about Google mapping Biscotti IDs
11   and ████████████   and conversion
12   tracking?
13          A.    Yes.
14          Q.    And I believe you testified
15   that mapping in ██████████   requires a
16   Gaia ID; is that -- is that right?
17          A.    That is correct.
18          Q.    For the dataflow that's at
19   issue in this case where users are on
20   their browsers, they're signed out of
21   their Google accounts, they're in private
22   browsing mode, would there be any mapping
23   from Gaia to Biscotti?
24          A.    No, because when you go into
```



Page 373

1  private browsing mode, you start off with

2  a completely empty cookie jar.  A

3  Biscotti is created, and if you don't

4  sign in to Google, there's no Gaia to map

5  that new Biscotti to.  The Biscotti that

6  is present on the non-incognito browser

7  instance is not shared with the incognito

8  browser instance so there's no way of

9  creating that mapping from an incognito

10  session.

11        Q.    Okay.  And -- and conversely

12  would there be any mapping from Biscotti

13  to Gaia under those same conditions?

14        A.    No.  Again for similar

15  reasons, there is no Gaia to map that

16  Biscotti to.

17        Q.    Mr. Mao asked -- also asked

18  you a number of questions about the

19  X-Client-Data header.

20              Do you recall that?

21        A.    Yes.

22        Q.    Do you understand that the

23  plaintiffs in this case have proposed

24  that Google could use the absence of the



Page 374

1  X-Client-Data header to identify users

2  who are in incognito mode?

3       A.    Yes.

4       Q.    And does Google use the

5  absence of the X-Client-Data header to

6  identify users who are in incognito mode?

7       A.    No.

8       Q.    And would that be a good way

9  to identify incognito users?

10       A.    No.

11       Q.    And why is that?

12       A.    Because there are cases that

13  will lead to false positives; that is,

14  where you see an empty X-Client-Data

15  header and you assume it's incognito but

16  not and false negatives where the reverse

17  is also true.  There are processes that

18  can result in empty client -- empty

19  X-Client-Data headers and to take an

20  empty client -- X-Client-Data header and

21  populate values.

22       Q.    Can you give us a couple of

23  examples?

24       A.    Sure.  For the first case



# EXHIBIT 46

# 12/14/2021 GREGORY FAIR VOL. 1 DEPOSITION TRANSCRIPT EXCERPTS

CONFIDENTIAL, ATTORNEYS' EYES ONLY

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN JOSE DIVISION
 4                       ---o0o---
 5   PATRICK CALHOUN, et al.,        )
     on behalf of themselves and     )
 6   all others similarly            )
     situated,                       )
 7                                   )
                Plaintiffs,          )Case No.
 8                                   )5:20-cv-5146-LHK-SVK
     vs.                             )
 9                                   )
     GOOGLE LLC,                     )
10                                   )
                Defendant.           )
11   _____ )
     CHASOM BROWN, et al.,           )
12   on behalf of themselves and     )
     all others similarly            )
13   situated,                       )
                                     )
14              Plaintiffs,          )Case No.
                                     )5:20-cv-03664-LHK
15   vs.                             )
                                     )
16   GOOGLE LLC,                     )
                                     )
17              Defendant.           )
     _____ )
18
                        ---o0o---
19            Videotaped Zoom Deposition of
20                  GREGORY LON FAIR
21         CONFIDENTIAL, ATTORNEYS' EYES ONLY
22             Tuesday, December 14, 2021
23                      ---o0o---
     Job no. 4974024
24   Katy E. Schmidt
     RPR, RMR, CRR, CSR 13096
25   Pages 1 - 216
```

                                            Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN JOSE DIVISION
 4                      ---o0o---
 5   PATRICK CALHOUN, et al.,     )
     on behalf of themselves and  )
 6   all others similarly         )
     situated,                    )
 7                                )
              Plaintiffs,         )Case No.
 8                                )5:20-cv-5146-LHK-SVK
     vs.                          )
 9                                )
     GOOGLE LLC,                  )
10                                )
              Defendant.          )
11   _____ )
     CHASOM BROWN, et al.,        )
12   on behalf of themselves and  )
     all others similarly         )
13   situated,                    )
                                  )
14            Plaintiffs,         )Case No.
                                  )5:20-cv-03664-LHK
15   vs.                          )
                                  )
16   GOOGLE LLC,                  )
                                  )
17            Defendant.          )
     _____ )
18
              BE IT REMEMBERED that, pursuant to Notice, and
19   on Tuesday, the 14th day of December, 2021, commencing
     at the hour of 11:43 a.m., thereof, in Los Altos,
20   California, before me, KATY E. SCHMIDT, a Certified
     Shorthand Reporter in and for the County of Yolo, State
21   of California, there virtually personally appeared
22                     GREGORY LON FAIR
23   called as a witness herein, who, being by me first duly
     sworn, was thereupon examined and interrogated as
24   hereinafter set forth.
25
```

Page 2

CONFIDENTIAL, ATTORNEYS' EYES ONLY

```
 1   APPEARANCES:
 2   For The Plaintiffs:
 3                    (Appeared via Zoom)
 4           MORGAN & MORGAN
             BY: RYAN MCGEE, Esq.
 5           BY: RA AMEN, Esq.
             201 North Franklin Street, Suite 700
 6           Tampa, Florida 33602
             813.223.0931
 7           rmcgee@forthepeople.com
 8                    (Appeared via Zoom)
 9           BLEICHMAR FONTI & AULD LLP
             BY: LESLEY WEAVER, Esq.
10           555 12th Street, Suite 1600
             Oakland, California 994607
11           415.445.4003
             lweaver@bfalaw.com
12
                     (Appeared via Zoom)
13
             BOIES SCHILLER FLEXNER LLP
14           BY: MARK MAO, Esq.
             BY: BEKO RICHARDSON, Esq.
15           44 Montgomery Street, 41st Floor
             San Francisco, California 94104
16           415.293.6800
             mmao@bsfllp.com
17
             DICELLO LEVITT GUTZLER
18           BY: DAVID A. STRAITE, Esq.
             BY: ADAM PROM, Esq.
19           One Grand Central Place
             60 East 42nd Street, Suite 2400
20           New York, New York 10165
             646.933.1000
21           dstraite@dicellolevitt.com
22   ///
23   ///
24   ///
25   ///
```

Page 3

CONFIDENTIAL, ATTORNEYS' EYES ONLY

```
 1    APPEARANCES CONT.:
 2    For The Defendants:
 3                    (Appeared via Zoom)
 4            Quinn Emanuel Urquhart & Sullivan LLP
              BY: VIOLA TREBICKA, Esq.
 5            BY: ALY OLSON, Esq.
              865 S Figueroa Street, 10th Floor
 6            Los Angeles, California 90017
              violatrebicka@quinnemanuel.com
 7
 8    Also present:
 9            David West, Videographer
10            Fatemah Shirzad, Concierge
11
                      ---o0o---
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

1    me out of bed and going to work and trying to make a          01:44

2    change.                                                       01:44

3            At the same time, this particular space is           01:44

4    extremely complicated, and I've often found there isn't       01:44

5    one right answer or wrong answer for how to move              01:44

6    forward.  But as written, this isn't the way I would          01:44

7    phrase it, no.                                                01:44

8    BY MR. MCGEE:                                                 01:44

9        Q.   Okay.  Well, the incognito splash screen says       01:44

10   "Who can see your data"; correct?  It's internet service      01:44

11   providers, educational institutions -- I'm sorry --           01:44

12   there's a list of individuals.                                01:45

13           Google is not listed on that; correct?               01:45

14           MS. TREBICKA:  Objection.  The document speaks        01:45

15   for itself.  Objection to form.                               01:45

16           Go ahead.                                             01:45

17           THE WITNESS:  I believe the words you just            01:45

18   used weren't perfectly representative of the language on      01:45

19   the current incognito splash screen.                          01:45

20   BY MR. MCGEE:                                                 01:45

21       Q.   Sure.  I've got that now.                            01:45

22           So it's "Your activity might still be visible        01:45

23   to websites you visit, your employer or school, your          01:45

24   internet service provider."                                   01:45

25           Those are the three.                                 01:45

                                                     Page 71

| | | |
|---|---|---|
| 1 | So going back to your testimony in saying -- | 01:45 |
| 2 | let me find it exactly -- "I'm generally supportive of | 01:45 |
| 3 | the ideas of doing more wherever to help consumers of | 01:45 |
| 4 | all our products, including their privacy states, to be | 01:46 |
| 5 | more protective where appropriate." | 01:46 |
| 6 | So my question to you is:  Did Google ever | 01:46 |
| 7 | consider -- with your work with Google, did Google ever | 01:46 |
| 8 | consider listing itself as one of the entities that your | 01:46 |
| 9 | activity might still be visible to on that incognito | 01:46 |
| 10 | splash screen? | 01:46 |
| 11 | MS. TREBICKA:  Objection.  Assumes facts. | 01:46 |
| 12 | THE WITNESS:  I've worked on a lot of | 01:46 |
| 13 | different type of user disclosures around how | 01:46 |
| 14 | information is used in a lot of different form factors, | 01:46 |
| 15 | everything from kind of consent screens as part of | 01:46 |
| 16 | larger flows, notifications to users about a very | 01:46 |
| 17 | specific event or larger events, creating e-mails to | 01:46 |
| 18 | users that encourage them to review certain settings. | 01:46 |
| 19 | And the thing that I've very consistently | 01:46 |
| 20 | observed is that striking the right balance between | 01:46 |
| 21 | saying everything, as you would in a privacy policy, and | 01:47 |
| 22 | saying just enough for people to understand in whatever | 01:47 |
| 23 | context where they're landing, is a tricky balance to | 01:47 |
| 24 | find. | 01:47 |
| 25 | I think that the Chrome incognito landing page | 01:47 |

Page 72

| | | |
|---|---|---|
| 1 | doesn't say that your activity might still be visible to | 01:47 |
| 2 | somebody standing next to you. | 01:47 |
| 3 | There is an almost infinite list of potential | 01:47 |
| 4 | things that could be included there.  And I think it | 01:47 |
| 5 | would be interesting to consider if you were calling out | 01:47 |
| 6 | one particular group, if you didn't need to also then | 01:47 |
| 7 | start to include a number of other ones.  Kind of like, | 01:47 |
| 8 | you know, a wedding, you invite one cousin, you've gotta | 01:47 |
| 9 | invite the rest. | 01:47 |
| 10 | The balance of the right amount of words and | 01:47 |
| 11 | the right set of points to put in front of people is | 01:47 |
| 12 | really tricky to get right, and we've been doing our | 01:47 |
| 13 | best on that to make that clear. | 01:47 |
| 14 | I think the addition of more information can | 01:47 |
| 15 | create a more difficult-to-comprehend message.  And so I | 01:47 |
| 16 | think the balance is the way we've always thought about | 01:48 |
| 17 | this.  And then reinforce it with additional messaging, | 01:48 |
| 18 | with layered messaging, with proactive messaging in a | 01:48 |
| 19 | number of cases, wherever we can. | 01:48 |
| 20 | BY MR. MCGEE: | |
| 21 | Q.   Right. | 01:48 |
| 22 | But the activity, it's not even that it might | 01:48 |
| 23 | still be visible.  It's that it's always going to be | 01:48 |
| 24 | visible to Google; correct? | 01:48 |
| 25 | You gave the example of someone standing next | 01:48 |

Page 73

| | | |
|---|---|---|
| 1 | to you might see some of your activity when you go | 01:48 |
| 2 | incognito, but Google continues to collect all of that | 01:48 |
| 3 | information; correct? | 01:48 |
| 4 | MS. TREBICKA:  Objection to form. | 01:48 |
| 5 | Go ahead. | 01:48 |
| 6 | THE WITNESS:  That doesn't match my technical | 01:48 |
| 7 | understanding of the way browsers work. | 01:48 |
| 8 | BY MR. MCGEE: | 01:48 |
| 9 | Q.   What is your technical understanding of how | 01:48 |
| 10 | Chrome works while in incognito mode as it relates to | 01:48 |
| 11 | Google's collection? | 01:48 |
| 12 | MS. TREBICKA:  Objection.  Overbroad.  Lacks | 01:48 |
| 13 | foundation. | 01:48 |
| 14 | THE WITNESS:  I'm not an engineer, but if you | 01:49 |
| 15 | took a more generic definition of browsing through | 01:49 |
| 16 | websites and weren't even talking specifically about | 01:49 |
| 17 | Chrome, there are a number of websites that Google has | 01:49 |
| 18 | no presence on where Google would have no opportunity to | 01:49 |
| 19 | interact. | 01:49 |
| 20 | There are also a number of cases where simply | 01:49 |
| 21 | for -- in order to display information based on the | 01:49 |
| 22 | requested user of a site, if you go to whatever site you | 01:49 |
| 23 | wanted to go to, whether it was Bing or Apple dot com, | 01:49 |
| 24 | right, you would need to -- the browser would actually | 01:49 |
| 25 | need to actually function and to serve up the page, | 01:49 |

Page 74

CONFIDENTIAL, ATTORNEYS' EYES ONLY

```
 1              REPORTER'S CERTIFICATE

 2                    ---o0o---

 3   STATE OF CALIFORNIA    )

                           ) ss.

 4   COUNTY OF YOLO         )

 5         I, KATY E. SCHMIDT, a Certified Shorthand

 6   Reporter in and for the State of California, duly

 7   commissioned and a disinterested person, certify:

 8         That the foregoing deposition was taken before me

 9   at the time and place herein set forth;

10         That GREG FAIR, the deponent herein, was put on

11   oath by me;

12         That the testimony of the witness and all

13   objections made at the time of the examination were

14   recorded stenographically by me to the best of my

15   ability and thereafter transcribed into typewriting;

16         That the foregoing deposition is a record of the

17   testimony of the examination.

18         IN WITNESS WHEREOF, I subscribe my name on this

19   17th day of December, 2021.

20

21

22              Katy E. Schmidt, RPR, RMR, CRR, CSR 13096
                Certified Shorthand Reporter
23              in and for the
                County of Sacramento,
24              State of California

25   Ref. No. 4974024 KES
```

Page 214

CONFIDENTIAL, ATTORNEYS' EYES ONLY

1    LESLEY WEAVER, Esq.

2    lweaver@bfalaw.com

3                                      December 17, 2021

4    RE: PATRICK CALHOUN vs. GOOGLE LLC

5    12/14/2021, GREGORY LON FAIR, JOB NO. 4974024

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, notating the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25

                                                    Page 215

# EXHIBIT 47

# 12/20/2021
# WILLIAM BYATT
# DEPOSITION
# TRANSCRIPT
# EXCERPTS

```
 1      UNITED STATES DISTRICT COURT
       NORTHERN DISTRICT OF CALIFORNIA
 2            SAN JOSE DIVISION
 3
      CHASOM BROWN, WILLIAM BYATT,
 4    JEREMY DAVIS, CHRISTOPHER
      CASTILLO, and MONIQUE TRUJILLO,
 5    individually and on behalf of
      all other similarly situated
 6
          Plaintiffs,         CASE NO.
 7                        5:20-CV-03664-LHK-SVK
      VS.
 8
      GOOGLE LLC
 9
          Defendant.
10
11
           * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
12      ZOOM VIDEOTAPED DEPOSITION OF WILLIAM BYATT
                December 20, 2021
13               11:04 a.m. EST
           * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
14
15
16    TAKEN BY:
17        VIOLA TREBICKA, ESQ.
          ATTORNEY FOR DEFENDANT
18
19    REPORTED BY:
20        BELLE VIVIENNE, CRR
          CERTIFIED STENOGRAPHIC
21        REALTIME COURT REPORTER
          VERITEXT LEGAL SOLUTIONS
22        JOB NO. 5001125
          866 299-5127
23
24
25
                                    Page 1
```

```
1                A P P E A R A N C E S
2
    FOR THE PLAINTIFFS:
3
        JAMES W. LEE, ESQ.
4       ROSSANA BAEZA, ESQ.
        MARK MAO, ESQ. (San Francisco)
5       BOIES SCHILLER FLEXNER LLP
        100 SE 2nd Street, Suite 2800
6       Miami, Florida 33131
        305.539.8400
7       jlee@bsfllp.com
8
        RYAN J. MCGEE, ESQ.
9       MORGAN & MORGAN, P.A.
        201 North Franklin Street, 7th Floor
10      Tampa, Florida 33602
        813.223.5505
11      rmcgee@forthepeople.com
12  FOR THE DEFENDANT:
13      VIOLA TREBICKA, ESQ.
        TRACY GAO, ESQ.
14      QUINN EMANUEL URQUHART & SULLIVAN LLP
        865 S. Figueroa St, 10th Floor
15      Los Angeles, California 90017
        213.443.3000
16      Violatrebicka@quinnemanuel.com
17
    VIDEOGRAPHER:
18      JoAnn Yager
19
20
21
22
23
24
25
```

Page 2

```
 1                      -   -   -

 2                    I N D E X

 3                      -   -   -

 4

 5     Testimony of:

 6            WILLIAM BYATT

 7     MS. TREBICKA.............................. 9

 8     MR. LEE.................................. 253

 9

10                      -   -   -

11                 E X H I B I T S

12                      -   -   -

13

14     NO.              DESCRIPTION            PAGE

15     Exhibit 1        Screenshot................ 32

16     Exhibit 2        The New York Times

17                      Privacy Policy, Updated

18                      July 1, 2021.............. 50

19     Exhibit 3        Google Analytics Opt-out

20                      Browser Add-on document.... 70

21     Exhibit 4        Twitter Privacy Policy..... 76

22     Exhibit 5        Google Ad Personalization

23                      Settings................... 88

24

25
```

Page 3

| | | |
|---|---|---|
| 1 | Chrome, so when I think about private | 11:09:59 |
| 2 | browsing, I think about the Incognito | 11:10:01 |
| 3 | modem, that little splash screen that | 11:10:06 |
| 4 | comes up and tells me what I'm sharing and | 11:10:08 |
| 5 | opening Incognito is agreeing to that | 11:10:10 |
| 6 | splash screen. | 11:10:15 |
| 7 | Q.   So if you're aware that your | 11:10:17 |
| 8 | information is being shared with a | 11:10:18 |
| 9 | particular party and you continue to | 11:10:20 |
| 10 | browse so that your information is shared, | 11:10:24 |
| 11 | that means that you understand your | 11:10:26 |
| 12 | information will be shared, correct? | 11:10:29 |
| 13 | MR. LEE:  Objection to form. | 11:10:32 |
| 14 | A.   I -- I'm -- I'm not sure I | 11:10:34 |
| 15 | understood that question.  Could you -- | 11:10:36 |
| 16 | BY MS. TREBICKA: | 11:10:36 |
| 17 | Q.   That was -- you're right.  That | 11:10:37 |
| 18 | was not a very good question.  Let me | 11:10:39 |
| 19 | withdraw it and ask you -- so you | 11:10:41 |
| 20 | mentioned Incognito browsing, right? | 11:10:43 |
| 21 | A.   Uh-huh. | 11:10:47 |
| 22 | Q.   What do you understand -- and, | 11:10:47 |
| 23 | sorry.  Just one more thing, because the | 11:10:47 |
| 24 | court reporter will be taking down | 11:10:50 |
| 25 | everything that we say, while in common | 11:10:52 |

Page 13

| | | |
|---|---|---|
| 1 | speech, it -- it's all right and I | 11:10:56 |
| 2 | understand what you mean when you say | 11:10:59 |
| 3 | uh-huh or something that's not verbal. | 11:11:01 |
| 4 | Please do verbalize your answers for the | 11:11:04 |
| 5 | court reporter. | 11:11:07 |
| 6 | A.   I may require reminders, but | 11:11:07 |
| 7 | I'll certainly try. | 11:11:10 |
| 8 | Q.   I will remind you. | 11:11:11 |
| 9 | So you -- earlier you talked | 11:11:12 |
| 10 | about private -- about Incognito, correct? | 11:11:14 |
| 11 | A.   I did, yes. | 11:11:19 |
| 12 | Q.   So you do browsing in Incognito, | 11:11:20 |
| 13 | correct? | 11:11:22 |
| 14 | A.   Yes. | 11:11:22 |
| 15 | Q.   Do you continue to browse in | 11:11:23 |
| 16 | Incognito today? | 11:11:25 |
| 17 | A.   Occasionally, yes. | 11:11:25 |
| 18 | Q.   How often, presently, how often | 11:11:28 |
| 19 | do you browse? | 11:11:32 |
| 20 | A.   That I wouldn't be able to tell | 11:11:33 |
| 21 | you.  I don't particularly keep track. | 11:11:36 |
| 22 | Certainly -- yeah, I don't think I could | 11:11:40 |
| 23 | say with specificity.  It comes in fits | 11:11:46 |
| 24 | and bursts.  You know, sometimes I might | 11:11:49 |
| 25 | spend several hours browsing multiple days | 11:11:52 |

Veritext Legal Solutions
866 299-5127

```
 1    in a week and sometimes I might go weeks        11:11:58
 2    without opening it.                             11:12:01
 3         Q.    And when you say "it," you mean      11:12:02
 4    Incognito?                                      11:12:04
 5         A.    I mean Incognito, yes.               11:12:05
 6         Q.    Understood.  Have you changed        11:12:06
 7    your browsing behavior on Incognito since       11:12:07
 8    the filing of this lawsuit?                     11:12:10
 9         A.    I have wanted to.  I may have        11:12:12
10    some, but I felt that it would be best to       11:12:16
11    try to continue my behavior as sort of          11:12:20
12    normally as possible.  I'm not sure how         11:12:24
13    effective that is with sort of the -- the       11:12:29
14    awareness and thinking about this more.         11:12:34
15    But it's been -- it's been roughly pretty       11:12:35
16    similar.                                        11:12:40
17         Q.    You say you -- that you have         11:12:40
18    tried to -- or you said that you -- it          11:12:43
19    would be best to try to continue your           11:12:47
20    behavior as normal.                             11:12:48
21              What do you mean by that?             11:12:51
22         A.    Yeah.  So when -- when this          11:12:52
23    lawsuit is over, I will probably quit           11:12:53
24    using Chrome altogether, but I have felt        11:12:58
25    that for -- you know, I've been advised by      11:13:03
```

Page 15

| | | |
|---|---|---|
| 1 | my attorneys -- | 11:13:08 |
| 2 | MR. LEE:  Hold on.  Hold on. | 11:13:09 |
| 3 | So let me just give you a quick | 11:13:11 |
| 4 | instruction.  It is -- in these | 11:13:14 |
| 5 | depositions, you should not reveal any | 11:13:16 |
| 6 | communications you've had with your | 11:13:18 |
| 7 | attorneys. | 11:13:20 |
| 8 | THE WITNESS:  Okay. | 11:13:20 |
| 9 | MR. LEE:  So if you can answer | 11:13:21 |
| 10 | this question without revealing any | 11:13:22 |
| 11 | communications that you've had with | 11:13:23 |
| 12 | any of your attorneys, happy for you | 11:13:24 |
| 13 | to do that; if you can't, then don't | 11:13:29 |
| 14 | answer the question. | 11:13:30 |
| 15 | THE WITNESS:  Okay. | 11:13:31 |
| 16 | A.    But, yeah.  So it -- it has | 11:13:32 |
| 17 | seemed as though continuing to behave as | 11:13:33 |
| 18 | normally as possible until the end of the | 11:13:37 |
| 19 | lawsuit is what would make the most sense. | 11:13:40 |
| 20 | BY MS. TREBICKA: | 11:13:40 |
| 21 | Q.    And what do you understand by | 11:13:46 |
| 22 | the term "Incognito browsing"? | 11:13:47 |
| 23 | A.    I understand it to mean -- well, | 11:13:51 |
| 24 | first of all, what Google tells me it | 11:13:53 |
| 25 | means when I open it and there's this | 11:13:56 |

Page 16

```
 1        A.    I -- I -- I am, first of all,        11:19:10
 2    not 100 percent certain.  I am, by no          11:19:15
 3    means, you know, an expert in -- I don't       11:19:18
 4    know personally identifiable information       11:19:22
 5    or how those systems work, but I would         11:19:24
 6    think that, information that is about me,       11:19:28
 7    that is what I'm doing, is not anonymous       11:19:37
 8    if -- if they know that I'm doing              11:19:44
 9    something or that my property or my            11:19:46
10    computers or my Internet connections are       11:19:49
11    doing something, that I -- that doesn't        11:19:50
12    seem anonymous.                                11:19:53
13    BY MS. TREBICKA:                               11:19:53
14        Q.    And it's fair to say, Mr. Byatt,     11:20:14
15    that maintaining the privacy of your           11:20:16
16    information is important to you while          11:20:18
17    you're browsing the Internet?                  11:20:19
18        A.    Yes.  You know, I do voluntarily     11:20:21
19    share information at times.  So it's not,      11:20:28
20    you know an absolute at all times.  But I      11:20:34
21    think, you know, sort of perhaps more than     11:20:37
22    privacy, which is important, is consent to     11:20:40
23    what information is being shared.  I want      11:20:44
24    to know with what of my information is         11:20:46
25    being shared and I want to agree to that       11:20:48
```

Page 22

```
 1    information being shared.                11:20:50
 2         Q.    How -- what steps do you take to   11:20:55
 3    know that certain information is -- about     11:20:58
 4    you is being shared when you browse?          11:21:00
 5         A.    I -- as a -- as a rule, I tend     11:21:03
 6    to read, you know, privacy policies, terms    11:21:06
 7    of service, things like that.  I -- I         11:21:10
 8    actually think about when -- when a           11:21:14
 9    website asks me what they can track or        11:21:17
10    what they're going to put on my computer,     11:21:20
11    I do think about what was, you know,          11:21:24
12    default to hitting okay all the time.         11:21:27
13         So -- so yeah, I think it's --          11:21:30
14    it's -- you know, that sort of thing,         11:21:33
15    paying attention to what is being             11:21:34
16    represented to me as being shared and         11:21:36
17    thinking about whether or not I want that     11:21:38
18    shared.                                       11:21:40
19         Q.    And do you -- would you agree      11:21:49
20    that you take careful precautions to          11:21:50
21    protect your privacy online?                  11:21:53
22         A.    I wouldn't use the word            11:21:55
23    "careful" or -- I'm not even sure I would     11:21:56
24    use the word necessarily "precautions."  I    11:22:01
25    would say that I am aware of and -- and       11:22:03
```

Page 23

```
 1   cognizant of what I am consenting to          11:22:06

 2   share, yeah.                                   11:22:09

 3       Q.    When you browse the web, are you     11:22:11

 4   generally aware that websites display ads?     11:22:32

 5       A.    Yes, certainly.                      11:22:37

 6       Q.    You've seen those ads, right?        11:22:38

 7       A.    Yeah.  I've definitely seen ads,     11:22:40

 8   yeah.                                          11:22:42

 9       Q.    Do you ever click on the ads?        11:22:43

10       A.    I do.                                11:22:45

11       Q.    Do you get some value out of         11:22:46

12   clicking out of some ads?                      11:22:48

13       A.    I do, yeah.                          11:22:50

14       Q.    What's the value that you get?       11:22:51

15   Tell me about it.                              11:22:53

16       A.    I -- I enjoy getting new             11:22:55

17   products and services that I maybe hadn't      11:23:02

18   been aware of.  I think finding, you know,     11:23:04

19   new brands or new information or new           11:23:08

20   content that -- that appeals to me is          11:23:12

21   nice.                                          11:23:14

22       Q.    What else do you like about          11:23:14

23   seeing those ads?                              11:23:16

24       A.    I don't know.  That -- sometimes     11:23:22

25   the ads are for sales.  I like sales.          11:23:25
```

Page 24

```
 1        Q.    Who doesn't?                    11:23:28

 2        A.    Yeah.                           11:23:29

 3        Q.    And you're also aware that      11:23:44

 4   websites also use certain services to      11:23:46

 5   display those ads, right?                  11:23:47

 6        A.    I am, yes.                       11:23:50

 7        Q.    In other words, The New York    11:23:51

 8   Times -- do you frequent The New York      11:23:53

 9   Times?                                     11:23:56

10        A.    I do.  I visit The New York     11:23:56

11   Times.  I don't know if there's            11:23:58

12   distinctions around the word "frequent,"   11:23:59

13   but I definitely visit and go to The New   11:24:01

14   York Times website, yeah.                  11:24:05

15        Q.    That was an unnecessarily fancy 11:24:05

16   word on my part.  We can agree then that   11:24:09

17   you visit The New York Times website       11:24:11

18   online?                                    11:24:12

19        A.    Yes, absolutely.                 11:24:13

20        Q.    And you see that The New York   11:24:14

21   Times sometimes displays ads to you when   11:24:16

22   you visit, correct?                        11:24:18

23        A.    I do, yeah.                      11:24:19

24        Q.    And you understand that those   11:24:20

25   ads may be powered by entities other than  11:24:21
```

Page 25

```
 1              (Whereupon, a brief recess is      12:01:16
 2       taken.)                                    12:01:38
 3              THE VIDEOGRAPHER:  Back on the      12:01:38
 4       record.  The time is 12:01 p.m.           12:01:52
 5   BY MS. TREBICKA:                               12:01:52
 6       Q.    Good morning, Mr. Byatt, again.     12:01:57
 7       A.    Good morning.                        12:02:00
 8       Q.    Just a quick reminder that you       12:02:01
 9   are still under oath; you understand that?     12:02:03
10       A.    I do understand that, yes.           12:02:05
11       Q.    Earlier, you testified about         12:02:07
12   visiting The New York Times on occasion;       12:02:14
13   do you remember that?                          12:02:16
14       A.    I do, yes.                           12:02:17
15       Q.    And you also testified that you      12:02:18
16   reviewed The New York Times's privacy          12:02:20
17   policy; do you remember that?                  12:02:23
18       A.    Yes.                                 12:02:24
19              MS. TREBICKA:  I will mark as       12:02:25
20       Exhibit 2, The New York Times privacy     12:02:26
21       policy currently available on The New     12:02:35
22       York Times website.                        12:02:37
23              (Exhibit 2, The New York Times      12:02:38
24       Privacy Policy, Updated July 1, 2021,     12:02:38
25       marked for identification.)               12:02:39
```

Page 50

```
 1   BY MS. TREBICKA:                              12:02:39

 2        Q.    And if you refresh your Exhibit    12:02:39

 3   Share, you will see it at some point.         12:02:43

 4   Just let me know when you see it.             12:02:44

 5        A.    I certainly shall.  It's not       12:02:46

 6   there yet.                                    12:02:48

 7        Q.    Okay.                              12:02:50

 8        A.    I -- there is an Exhibit 2 in      12:03:04

 9   here.  I'm opening it.                        12:03:11

10        Q.    Okay.                              12:03:11

11        A.    Okay.  I am looking at The New     12:03:12

12   York -- I'm looking at what says that is      12:03:13

13   The New York Times privacy policy, last       12:03:14

14   updated on July 1, 2021.                      12:03:16

15        Q.    Okay.  Do you remember reviewing   12:03:18

16   this policy?                                  12:03:19

17        A.    Not necessarily with              12:03:22

18   specificity.  I remember reviewing a          12:03:24

19   document that looks like this.  I -- I        12:03:30

20   could not tell you if it was the exact        12:03:33

21   same thing.                                   12:03:35

22        Q.    Understood.  If you could scroll   12:03:35

23   down to page 3 of the PDF.                    12:03:37

24        A.    I think I'm there.  Hold on.       12:03:45

25   The page numbers aren't marked.  I am on      12:03:47
```

Page 51

| | | |
|---|---|---|
| 1 | page 3. | 12:03:57 |
| 2 | Q.   At the end of page 3, do you see | 12:04:07 |
| 3 | the bolded heading Information Collected | 12:04:08 |
| 4 | Automatically? | 12:04:11 |
| 5 | A.   I do. | 12:04:13 |
| 6 | Q.   And if you scroll down to | 12:04:15 |
| 7 | page 4, you see the first bullet point | 12:04:16 |
| 8 | there with Tracking Technologies in Your | 12:04:21 |
| 9 | Browsing and Mobile Apps? | 12:04:26 |
| 10 | A.   I do see that. | 12:04:27 |
| 11 | Q.   Okay.  And I will read the words | 12:04:28 |
| 12 | underneath that bolded bullet point into | 12:04:30 |
| 13 | the record.  It says "These technologies | 12:04:33 |
| 14 | include cookies, web beacons, tags and | 12:04:35 |
| 15 | scripts, software development kits (or | 12:04:39 |
| 16 | SDKs) and beyond.  We track and store data | 12:04:41 |
| 17 | about how you visit and use Times | 12:04:45 |
| 18 | Services, particularly through our | 12:04:47 |
| 19 | websites and apps.  The items we log | 12:04:50 |
| 20 | include," and then it has a bulleted list. | 12:04:53 |
| 21 | Do you see that? | 12:04:56 |
| 22 | A.   I do. | 12:04:57 |
| 23 | MR. LEE:  Viola, before we go | 12:04:57 |
| 24 | on, can I get a standing objection to | 12:04:59 |
| 25 | this line of questioning based on lack | 12:05:01 |

Page 52

| | | |
|---|---|---|
| 1 | of foundation, please? | 12:05:03 |
| 2 | MS. TREBICKA:  Noted, James. | 12:05:06 |
| 3 | MR. LEE:  Is that a yes? | 12:05:08 |
| 4 | MS. TREBICKA:  Yes, I noted. | 12:05:09 |
| 5 | MR. LEE:  Thank you. | 12:05:11 |
| 6 | MS. TREBICKA:  It is -- I | 12:05:12 |
| 7 | understand that you have a standing | 12:05:12 |
| 8 | objection. | 12:05:14 |
| 9 | MR. LEE:  Great. | 12:05:14 |
| 10 | BY MS. TREBICKA: | 12:05:14 |
| 11 | Q.   Do you see the bulleted list of | 12:05:17 |
| 12 | information? | 12:05:19 |
| 13 | A.   Yes, I do. | 12:05:20 |
| 14 | Q.   And actually, it's a bulleted | 12:05:21 |
| 15 | list of the items that The New York Times | 12:05:23 |
| 16 | says it logs; do you see that? | 12:05:25 |
| 17 | A.   I do see that, yes. | 12:05:27 |
| 18 | Q.   So of these pieces of data, of | 12:05:30 |
| 19 | items that they log, do you consider any | 12:05:34 |
| 20 | of it to be your personal information? | 12:05:36 |
| 21 | A.   Yes, I would say so. | 12:05:39 |
| 22 | Q.   Okay.  Which ones? | 12:05:48 |
| 23 | A.   Well, I -- I would say all of | 12:05:53 |
| 24 | them really.  Other usage information, the | 12:05:58 |
| 25 | last one is pretty broad so I don't know | 12:06:00 |

Page 53

```
 1    what that means, and -- and it seems kind        12:06:03
 2    of like a catchall, but, yeah, I -- I            12:06:11
 3    would say most of them I -- I could              12:06:14
 4    understand as private information -- or          12:06:17
 5    personal information, I suppose.                 12:06:21
 6        Q.   Okay.  What about sensitive user        12:06:22
 7    information?  Which ones of these would          12:06:26
 8    you consider to be sensitive?                    12:06:30
 9        A.   Well, I don't know what you mean        12:06:36
10    by sensitive, but I would consider all of        12:06:37
11    them to be information that I would be           12:06:41
12    conscientious of sharing and would want to       12:06:43
13    think about and consent positively or           12:06:46
14    withdraw consent from sharing.                   12:06:49
15        Q.   Do you -- what do you understand        12:06:57
16    the term "sensitive user data" to mean?         12:06:59
17        A.   I -- I don't feel like I have a        12:07:06
18    specific understanding of that term.             12:07:07
19        Q.   So that's not a term that you          12:07:10
20    would use, right?                                12:07:12
21        A.   Yeah, I don't think so, yeah.          12:07:14
22        Q.   Do you understand it to be             12:07:17
23    different from personal information,             12:07:19
24    though?                                          12:07:20
25            MR. LEE:  Objection to form.            12:07:22
```

Page 54

| | | |
|---|---|---|
| 1 | A.    Yeah, at first blush, not -- not | 12:07:23 |
| 2 | particularly.  Maybe.  Those are different | 12:07:27 |
| 3 | words so maybe, but I can't say that it's | 12:07:31 |
| 4 | something I've specifically thought about. | 12:07:34 |
| 5 | BY MS. TREBICKA: | 12:07:34 |
| 6 | Q.    Under the bullet point "other | 12:07:53 |
| 7 | usage information," it says "We combine | 12:07:54 |
| 8 | this data with other information we | 12:07:56 |
| 9 | collect about you.  For more information | 12:07:58 |
| 10 | about tracking methods on Times Services, | 12:08:01 |
| 11 | and how to manage them, read our Cookie | 12:08:03 |
| 12 | Policy."  Do you see that? | 12:08:06 |
| 13 | A.    I do see it. | 12:08:07 |
| 14 | Q.    Have you read The New York | 12:08:08 |
| 15 | Times's cookie policy? | 12:08:10 |
| 16 | A.    I could not tell you. | 12:08:11 |
| 17 | Q.    Is it okay with you that The New | 12:08:17 |
| 18 | York Times's websites collect this | 12:08:20 |
| 19 | information about you? | 12:08:21 |
| 20 | A.    Oh, it's okay with me that they | 12:08:24 |
| 21 | collect it when I consent to it.  If -- if | 12:08:25 |
| 22 | I go there and accept it.  It would not be | 12:08:30 |
| 23 | okay with me if they told me they weren't | 12:08:32 |
| 24 | going to or if they told me that there was | 12:08:35 |
| 25 | something I could, like, for example, open | 12:08:36 |

Page 55

| | | |
|---|---|---|
| 1 | a specific browser mode and it -- and I | 12:08:38 |
| 2 | thought it was going to stop collecting | 12:08:41 |
| 3 | them.  But -- but yeah, I mean, if I go to | 12:08:43 |
| 4 | The New York Times not in Incognito mode, | 12:08:46 |
| 5 | then -- then, yeah, I'm fine with this | 12:08:50 |
| 6 | being collected. | 12:08:53 |
| 7 | Q.    Because The New York Times is | 12:08:54 |
| 8 | specifically telling you that it's | 12:08:58 |
| 9 | collecting this information, right? | 12:08:59 |
| 10 | A.    And I'm specifically agreeing to | 12:09:00 |
| 11 | it, yes. | 12:09:02 |
| 12 | Q.    You're agreeing to it by | 12:09:02 |
| 13 | browsing on The New York Times, correct? | 12:09:04 |
| 14 | A.    Well, and also accepting their | 12:09:08 |
| 15 | terms of service and privacy policy. | 12:09:09 |
| 16 | Q.    How do you accept The New York | 12:09:11 |
| 17 | Times's privacy policy in terms of | 12:09:14 |
| 18 | service? | 12:09:16 |
| 19 | A.    I couldn't say specifically.  I | 12:09:16 |
| 20 | believe that I was asked to accept terms | 12:09:21 |
| 21 | of service when I created a New York Times | 12:09:26 |
| 22 | account, but I couldn't say if there are | 12:09:29 |
| 23 | other mechanisms as well that I have | 12:09:37 |
| 24 | reviewed and accepted. | 12:09:41 |
| 25 | Q.    You -- if you visit The New York | 12:09:43 |

Page 56

| | | |
|---|---|---|
| 1 | Times in Incognito browsing mode, do you | 12:09:47 |
| 2 | expect The New York Times not to receive | 12:09:50 |
| 3 | this information listed here? | 12:09:52 |
| 4 | A.    I expect The New York Times to | 12:09:53 |
| 5 | receive the information, but I expect | 12:09:56 |
| 6 | Google not to because Google told me they | 12:09:57 |
| 7 | were going to not. | 12:10:00 |
| 8 | Q.    Let's take that one step at a | 12:10:01 |
| 9 | time.  So you accept -- you expected The | 12:10:06 |
| 10 | New York Times to receive this | 12:10:08 |
| 11 | information, even though you were browsing | 12:10:10 |
| 12 | in Incognito, correct? | 12:10:12 |
| 13 | A.    That's right.  I expect | 12:10:14 |
| 14 | Incognito to control the -- the -- the | 12:10:16 |
| 15 | browser and Google's behavior or Google's, | 12:10:18 |
| 16 | I guess, collection of my data -- of my | 12:10:26 |
| 17 | behavior. | 12:10:27 |
| 18 | Q.    If you use Incognito to browse | 12:10:27 |
| 19 | on Google.com, do you still expect Google | 12:10:29 |
| 20 | not to receive your information? | 12:10:33 |
| 21 | A.    I don't think that I could say | 12:10:37 |
| 22 | what I -- how I expect Google to -- to use | 12:10:38 |
| 23 | the information.  You know, they have told | 12:10:44 |
| 24 | me that they are not going to track my | 12:10:46 |
| 25 | information and -- and I believe them. | 12:10:50 |

Page 57

| | | |
|---|---|---|
| 1 | I'm not sure, you know, how they would | 12:10:54 |
| 2 | necessarily go about doing that, but I | 12:10:57 |
| 3 | imagine that's on them, their | 12:11:00 |
| 4 | representations. | 12:11:01 |
| 5 | Q.   I asked about collection and you | 12:11:02 |
| 6 | responded about use.  So I'm going to ask | 12:11:04 |
| 7 | the question again just to get a clear | 12:11:06 |
| 8 | record. | 12:11:09 |
| 9 | So if you use Incognito mode on | 12:11:09 |
| 10 | the Chrome browser to go to Google.com, do | 12:11:12 |
| 11 | you expect Google to receive your personal | 12:11:16 |
| 12 | information? | 12:11:18 |
| 13 | A.   I would expect Google to know -- | 12:11:26 |
| 14 | if I go to Google.com and search for, I | 12:11:35 |
| 15 | don't know, Joe Biden, I would expect | 12:11:42 |
| 16 | Google to know that someone has searched | 12:11:45 |
| 17 | for Joe Biden, but in -- in Incognito mode | 12:11:47 |
| 18 | if I do this.  I would expect them to know | 12:11:51 |
| 19 | that someone has searched for Joe Biden. | 12:11:53 |
| 20 | I would not expect them to collect that it | 12:11:58 |
| 21 | was me, that it was my browser, that it | 12:12:01 |
| 22 | was my computer, that I did this in -- | 12:12:02 |
| 23 | that I did it in various ways. | 12:12:04 |
| 24 | I -- I would not expect them to | 12:12:04 |
| 25 | collect that information.  I think I would | 12:12:06 |

Page 58

```
 1    be in control of what information was        14:39:36
 2    collected, told me that the way that I       14:39:39
 3    could exercise control was by browsing in    14:39:41
 4    Incognito mode.  And then while browsing     14:39:44
 5    in Incognito mode, they collected the        14:39:47
 6    information that they told me I could stop   14:39:49
 7    them from collecting, and I think that is    14:39:52
 8    a -- yeah, a clear -- like, I asked them     14:39:56
 9    not to.  Like it's not even -- it's not      14:40:01
10    even a case of not consenting.  By opening   14:40:05
11    Incognito, I have explicitly said don't      14:40:11
12    collect the information that you said I      14:40:13
13    could control the collection of by opening   14:40:16
14    Incognito mode.  So, yeah, that -- that --   14:40:18
15    if that information includes IPs, then,      14:40:22
16    yes, collecting that is a violation of       14:40:24
17    that privacy.                                14:40:26
18    BY MS. TREBICKA:                             14:40:26
19        Q.   Do you mean that the word           14:40:37
20    "privately" and "private browsing" means    14:40:41
21    that your Internet browsing activity will    14:40:44
22    be concealed from everyone?                  14:40:46
23        A.   Well, in the case of Incognito,     14:40:48
24    I'd expect it to be concealed from Google    14:40:49
25    because they told me it was going to be      14:40:52
```

Page 135

```
 1    concealed from Google.                      14:40:54

 2         Q.    Just from Google, right?  That's  14:40:56

 3    your understanding?                          14:40:58

 4         A.    So if we look on the Incognito    14:40:58

 5    splash screen or what you called the new     14:41:00

 6    tab page, it lists a few entities that the   14:41:04

 7    activity may still be visible to.  I         14:41:06

 8    believe that disclosure, I believe that it   14:41:10

 9    could be visible to the websites, to my      14:41:13

10    employer or school if I'm on the employer    14:41:16

11    or school network to the Internet service    14:41:18

12    provider, but it doesn't say Google here.    14:41:21

13    It doesn't say my activity might still be     14:41:24

14    visible to Google.  So I understood this      14:41:26

15    as -- and that would have been a great        14:41:29

16    place for Google to put Google.  So I         14:41:32

17    understood this is my information not         14:41:36

18    being visible to Google.                     14:41:39

19         Q.    Do you browse privately on other  14:41:43

20    browsers as well, other than Chrome?         14:41:49

21         A.    I -- I couldn't say.  Yeah, I     14:41:55

22    don't recall with specificity, but maybe.    14:42:04

23         Q.    But your testimony here today is  14:42:15

24    that Google should have been included in     14:42:18

25    this new tab page because why?  Why would    14:42:20
```

Page 136

```
 1    you have expected it to be included as an      14:42:25

 2    entity that the activity might be visible      14:42:27

 3    to?                                            14:42:30

 4        A.    Well, I didn't expect it to be       14:42:31

 5    included.  I expected it -- I expected         14:42:32

 6    Google to not keep my information.             14:42:34

 7        Q.    Okay.  Let me ask it -- that's       14:42:37

 8    fair.                                          14:42:39

 9            MR. LEE:  Excuse me, hold on, I         14:42:40

10       don't think you're doing it on              14:42:42

11       purpose, you guys.  But you're talking      14:42:43

12       over each other, so let's slow it down      14:42:45

13       a little bit for the reporter, not          14:42:46

14       talk over each other.                       14:42:48

15            I don't know if she -- that the         14:42:49

16       reporter caught the last portion of         14:42:51

17       Mr. Byatt's answer.                         14:42:53

18            THE COURT REPORTER:  Do you want        14:42:55

19       me to read it?                              14:42:56

20            MR. LEE:  Sure.                         14:42:58

21            (Answer read back.)                     14:43:12

22            MR. LEE:  Was that -- was that          14:43:17

23       the end of your answer?                     14:43:17

24            THE WITNESS:  I did say                 14:43:18

25       something after that, but I don't           14:43:19
```

Page 137

```
 1              (Exhibit 9, Document entitled        14:49:44
 2         How Private Browsing Works in Chrome,     14:49:44
 3         marked for identification.)              14:49:46
 4              MR. LEE:  I'm perfectly happy        14:49:46
 5         for you to call me James.  Okay.          14:49:48
 6    BY MS. TREBICKA:                               14:49:48
 7         Q.   Can you both see Exhibit 9?          14:49:52
 8              MR. LEE:  Yes.                        14:49:56
 9         A.   Yes.                                  14:49:56
10    BY MS. TREBICKA:                               14:49:56
11         Q.   Mr. Byatt, have you seen this        14:49:58
12    document or something that looks like this     14:49:59
13    document before?                               14:50:02
14         A.   I don't know.                         14:50:03
15         Q.   May have, may not have, you just    14:50:05
16    don't know?                                    14:50:07
17         A.   That's correct.                      14:50:08
18         Q.   Does it look familiar?               14:50:09
19         A.   I don't know.                         14:50:11
20         Q.   Take a minute to read it.            14:50:14
21         A.   This one is short.  I have read      14:50:18
22    this document.                                 14:50:19
23              MR. LEE:  And let me interpose       14:50:21
24         an objection based on lack of            14:50:23
25         foundation, which I request, I have a    14:50:25
```

Page 142

```
 1        standing objection for, for this        14:50:27

 2        document.                               14:50:28

 3             MS. TREBICKA:  And, Mr. Lee,       14:50:31

 4        just so that I understand, your -- the  14:50:33

 5        basis for your lack of foundation       14:50:34

 6        objection is?                           14:50:35

 7             MR. LEE:  Is you -- you have not   14:50:37

 8        laid the proper predicate that he's     14:50:38

 9        reviewed or is familiar with this       14:50:40

10        document, so I'm not sure why you're    14:50:42

11        going to ask him about it.              14:50:44

12             MS. TREBICKA:  Your standing       14:50:47

13        objection is noted.                     14:50:48

14             MR. LEE:  Thank you.               14:50:49

15   BY MS. TREBICKA:                             14:50:49

16        Q.   So you've reviewed it now,         14:50:56

17   Mr. Byatt?                                   14:51:00

18        A.   I have, yes.                       14:51:01

19        Q.   Okay.  Can you take a look at      14:51:02

20   the first page where it says "Your          14:51:06

21   activity might still be visible"?           14:51:10

22        A.   I see that page.                   14:51:13

23        Q.   And it says -- and I'll just       14:51:15

24   read it into the record and you'll make     14:51:17

25   sure to go slow.  "Incognito mode stops     14:51:19
```

Page 143

```
 1    Chrome from saving your browsing activity      14:51:21
 2    to your local history.  Your activity,         14:51:24
 3    like your location, might still be visible     14:51:27
 4    to" and then it has a bunch of bullet          14:51:30
 5    points.  And the first one is "websites        14:51:32
 6    you visit, including the ads and resources     14:51:35
 7    used on those sites"; do you see that?         14:51:39
 8        A.    I do see that.                       14:51:41
 9        Q.    And earlier today during this        14:51:43
10    deposition, we established that ads and        14:51:46
11    resources used on those sites could mean       14:51:50
12    Google ads and resources, including Google     14:51:53
13    Analytics, right?                              14:51:57
14        A.    I'm not sure if we have             14:52:01
15    established that.  I -- that feels like        14:52:05
16    courtroom words.  I don't -- I'm               14:52:09
17    uncomfortable saying yes to that, but I        14:52:12
18    understand what you are saying right now.      14:52:15
19        Q.    So your testimony is that you        14:52:17
20    didn't agree earlier today that websites       14:52:18
21    could use Google Analytics, for example,       14:52:21
22    as a service?                                  14:52:24
23        A.    I -- I think that and what you       14:52:26
24    just said might be two different things.       14:52:28
25    If I'm misunderstanding, that's fine, but      14:52:29
```

Page 144

| | | |
|---|---|---|
| 1 | I do agree that websites use Google | 14:52:32 |
| 2 | Analytics as a service. | 14:52:36 |
| 3 | Q.    Do you understand that websites | 14:52:36 |
| 4 | also sometimes use Google ads as a | 14:52:38 |
| 5 | service? | 14:52:40 |
| 6 | A.    Yes. | 14:52:42 |
| 7 | Q.    And here, it says that your | 14:52:42 |
| 8 | activity in Incognito may be visible to | 14:52:44 |
| 9 | the websites you visit, including the ads | 14:52:47 |
| 10 | and resources used on those sites; is that | 14:52:50 |
| 11 | correct? | 14:52:53 |
| 12 | A.    I see that it says this here, | 14:52:54 |
| 13 | but I'm not sure that I have seen this | 14:52:55 |
| 14 | document before, and what I am sure that I | 14:52:57 |
| 15 | have seen is the Incognito splash screen | 14:52:58 |
| 16 | that tells me that I can browse privately | 14:53:00 |
| 17 | and I am sure that I have seen the privacy | 14:53:02 |
| 18 | policy that says that Incognito mode is | 14:53:05 |
| 19 | how I can control what information is | 14:53:07 |
| 20 | given to Google. | 14:53:10 |
| 21 | MS. TREBICKA:  Move to strike as | 14:53:12 |
| 22 | nonresponsive. | 14:53:14 |
| 23 | BY MS. TREBICKA: | 14:53:14 |
| 24 | Q.    My question is:  This document | 14:53:15 |
| 25 | here that I am showing you says that your | 14:53:18 |

Page 145

```
1    activity in Incognito may be visible to        14:53:25
2    the websites you visit, including the ads      14:53:29
3    and resources used on those sites, right?      14:53:31
4         A.    Yes, I agree that this document     14:53:34
5    says that.                                     14:53:36
6         Q.    So had you read this document,      14:53:37
7    you would have known that your activity in     14:53:38
8    Incognito may be visible to the websites       14:53:42
9    you visit, including the ads and resources     14:53:44
10   used on those sites, correct?                  14:53:47
11             MR. LEE:  Objection to form.         14:53:49
12        Calls for speculation.                    14:53:51
13        A.    Yeah.  So I guess if I had read     14:53:55
14   it, I would have understood that it might      14:53:56
15   still be visible to websites I visit,          14:53:59
16   including the ads and resources.  It does      14:54:03
17   not say here, that I see, that that            14:54:06
18   definitely includes Google ads, Google         14:54:11
19   Analytics.                                     14:54:19
20             It does not see -- say that this     14:54:19
21   overrides the -- the privacy policy or the     14:54:23
22   splash screen.  But, yeah, I see that it       14:54:27
23   says might.  I see that some of these          14:54:31
24   might be visible to our ads and resources,     14:54:33
25   I do see that.                                 14:54:38
```

Page 146

```
 1            MR. LEE:  Viola, we've been          14:54:42
 2      going for over an hour.  I'd like to        14:54:43
 3      take a break in the next few.              14:54:47
 4            MS. TREBICKA:  Okay.  I              14:54:49
 5      understand.  Just give me a second to      14:54:50
 6      see if I can finish this up and then       14:54:52
 7      we can --                                  14:54:54
 8            MR. LEE:  Sure.                       14:54:54
 9            MS. TREBICKA:  Yeah.                  14:54:55
10      A.    I can give a little bit of           14:55:23
11   clarity into that last answer too if          14:55:25
12   that's helpful.                               14:55:26
13   BY MS. TREBICKA:                              14:55:27
14      Q.    We'll move on with my                14:55:27
15   questioning.  Thank you.                      14:55:28
16            So I'd like --                        14:55:30
17            MS. TREBICKA:  Actually, James,      14:55:32
18      I would like to move on to a new          14:55:34
19      document.  Would you rather take a         14:55:36
20      break now or have me move on?             14:55:37
21            MR. LEE:  Yeah, let's take a         14:55:39
22      break now.                                 14:55:40
23            MS. TREBICKA:  Okay.                 14:55:40
24            MR. LEE:  I generally want to        14:55:41
25      keep it, for everyone's sake, about an     14:55:42
```

Page 147

| | | |
|---|---|---|
| 1 | Q.    Uh-huh. | 15:07:34 |
| 2 | A.    I'm not a hundred percent sure. | 15:07:49 |
| 3 | This one -- some of the stuff in here | 15:07:53 |
| 4 | looks familiar, but I don't remember this | 15:07:55 |
| 5 | one specifically. | 15:07:58 |
| 6 | Q.    You can set it aside. | 15:08:01 |
| 7 | MR. LEE:  Are we done with that | 15:08:08 |
| 8 | one because I have it open. | 15:08:10 |
| 9 | MS. TREBICKA:  Yeah, you can set | 15:08:14 |
| 10 | it aside. | 15:08:16 |
| 11 | MR. LEE:  Okay. | 15:08:16 |
| 12 | BY MS. TREBICKA: | 15:08:16 |
| 13 | Q.    Mr. Byatt, earlier you testified | 15:08:29 |
| 14 | that you understand you have a contract | 15:08:31 |
| 15 | with Google.  Do you remember that? | 15:08:33 |
| 16 | A.    I do, yes. | 15:08:34 |
| 17 | Q.    And under that contract, did you | 15:08:35 |
| 18 | make any promises to Google? | 15:08:39 |
| 19 | A.    To use their software would be | 15:08:42 |
| 20 | sort of the biggest one, for them to be | 15:08:44 |
| 21 | able to use my, you know, sort of browsing | 15:08:49 |
| 22 | behavioral data, but I -- I would say the | 15:08:52 |
| 23 | big one that I understand is to use their | 15:08:54 |
| 24 | software, Chrome in particular. | 15:08:57 |
| 25 | Q.    When you say for them to be able | 15:08:59 |

Page 149

```
1    to use my sort of behavioral data, what do    15:09:03

2    you mean by that?                              15:09:06

3        A.    I mean for Google to have access     15:09:09

4    to my data, basically all of the things        15:09:15

5    that I asked them to not collect               15:09:19

6    temporarily when I am in Incognito mode.        15:09:21

7            MR. LEE:  You know what, Belle,         15:09:31

8        can you just read the answer back for       15:09:33

9        me?                                         15:09:35

10            (Answer read back.)                    15:09:36

11   BY MS. TREBICKA:                                15:09:36

12       Q.    And what are those things?            15:09:54

13       A.    I -- I don't have an exhaustive       15:09:58

14   list, but one list would be that -- that       15:09:59

15   we were looking at from the privacy            15:10:02

16   policy.                                         15:10:06

17       Q.    Are you referring to the bullet       15:10:06

18   pointed list that I asked you about in the     15:10:12

19   privacy policy?                                 15:10:15

20       A.    I believe there was a bullet          15:10:17

21   pointed list and then I think there was        15:10:19

22   also a list of data that might have been       15:10:21

23   in paragraph form.  I don't remember           15:10:23

24   exactly, but I am referring to lists that      15:10:25

25   we've gotten on the record here, yes.          15:10:29
```

Page 150

```
 1        Q.    For the record to be clear, why      15:10:37

 2   don't we go back to Exhibit 7?                   15:10:39

 3        A.    I am in Exhibit 7.                     15:10:56

 4        Q.    Okay.  If you could scroll to          15:10:58

 5   page 2.                                           15:11:00

 6        A.    I'm there.                             15:11:05

 7        Q.    And it's the second paragraph          15:11:05

 8   from the bottom that's the one that starts       15:11:08

 9   with the "information we collect"?               15:11:11

10        A.    Yes.  So I would mean, at             15:11:13

11   minimum, that information listed there           15:11:18

12   starting with "the information we                15:11:19

13   collect," ending with "refer URL of your         15:11:21

14   request," I also think, yeah, the next           15:11:24

15   page under "Your activity," it also has          15:11:28

16   some activity that I think I might have          15:11:31

17   included with that as information that I'm       15:11:36

18   agreeing to give Google when I sign those        15:11:41

19   contracts or agree to those contracts, I         15:11:45

20   guess.                                           15:11:47

21        Q.    Have you ever tried to sell the       15:11:50

22   personal information that's the subject of       15:11:53

23   this lawsuit?                                     15:11:55

24        A.    Have I tried to sell it?  No, I        15:11:57

25   have not.                                         15:12:00
```

Page 151

```
 1        Q.    Do you have a sense of how much      15:12:01

 2   your personal information is worth if you       15:12:04

 3   were to try to sell it?                         15:12:06

 4             MR. LEE:  Do you mean this            15:12:09

 5        Incognito personal -- Incognito data       15:12:10

 6        or generally?                              15:12:12

 7             MS. TREBICKA:  Well, why don't        15:12:14

 8        we take it in steps then.                  15:12:15

 9   BY MS. TREBICKA:                                15:12:15

10        Q.    Mr. Byatt, do you have a             15:12:17

11   sense -- well, first off, have you ever         15:12:19

12   tried to sell any of your personal             15:12:21

13   information related to your browsing?           15:12:23

14        A.    Not that I recall.                   15:12:31

15        Q.    So as far as your -- the             15:12:33

16   browsing information when you are not in        15:12:38

17   Incognito mode, do you have a sense for         15:12:42

18   how much that is worth?                         15:12:43

19        A.    I would imagine the market cap       15:12:46

20   of Google divided by its user base.            15:12:47

21        Q.    Because you understand that all      15:12:51

22   of Google's market cap is as a result of        15:12:53

23   the use of this information?                    15:12:59

24        A.    Probably not all of it, but I do     15:13:04

25   understand that Google pours lots of money      15:13:07
```

Page 152

```
 1    and resources into collecting that        15:13:13
 2    information and monetizing that           15:13:15
 3    information.  I'm not sure what the       15:13:17
 4    specific dollar value of my information   15:13:19
 5    is, but I certainly understand that it's  15:13:22
 6    worth quite a bit to Google.              15:13:24
 7        Q.    And how do you understand that  15:13:27
 8    Google's poor -- that Google collects     15:13:30
 9    information and monetizes information?     15:13:34
10        A.    I'm sorry, could you -- could   15:13:44
11    you clarify?                              15:13:46
12        Q.    How -- you want me to clarify.  15:13:47
13    I'll re-ask.                              15:13:51
14        A.    Yes, go ahead.                  15:13:52
15        Q.    How do you know that Google     15:13:54
16    collects information and monetizes that   15:13:55
17    information?                              15:13:58
18        A.    It's common knowledge, I think. 15:14:03
19    I don't know how to say that more         15:14:08
20    specifically, but I think everyone knows  15:14:09
21    that that's Google's business model.      15:14:11
22        Q.    Has Google's conduct, as you    15:14:16
23    understand it, affected your ability to   15:14:18
24    monetize yourself, your personal          15:14:23
25    information?                              15:14:27
```

Page 153

| | | |
|---|---|---|
| 1 | MR. LEE:  Again, are we still | 15:14:28 |
| 2 | talking about non-Incognito | 15:14:29 |
| 3 | information? | 15:14:31 |
| 4 | MS. TREBICKA:  Yes. | 15:14:31 |
| 5 | A.    I don't know because I haven't | 15:14:40 |
| 6 | sort of explored that market to see how my | 15:14:43 |
| 7 | data is priced or how Google having that | 15:14:47 |
| 8 | information would have affected the price. | 15:14:51 |
| 9 | So I -- I don't know. | 15:14:56 |
| 10 | BY MS. TREBICKA: | 15:14:56 |
| 11 | Q.    And has Google's conduct that's | 15:14:59 |
| 12 | the subject of this lawsuit affected your | 15:15:01 |
| 13 | ability to use this information in any | 15:15:03 |
| 14 | way? | 15:15:09 |
| 15 | A.    Well, one way that I would like | 15:15:12 |
| 16 | to sort of use the information is to | 15:15:14 |
| 17 | control how it's shared.  By | 15:15:16 |
| 18 | misrepresenting how my information is | 15:15:22 |
| 19 | shared, that is impacting my ability to | 15:15:23 |
| 20 | make, you know, accurate and informed | 15:15:26 |
| 21 | decisions about the use of my data.  So, | 15:15:27 |
| 22 | yes. | 15:15:29 |
| 23 | Q.    Any other way? | 15:15:31 |
| 24 | A.    Maybe.  I -- I'm wary to rule | 15:15:33 |
| 25 | anything out specifically, but that is | 15:15:36 |

Page 154

```
 1      A.    Give me just a moment, please.      16:15:11

 2            Yeah, I do.                          16:15:13

 3      Q.    And what is this document?           16:15:14

 4      A.    Same thing as the others.  It is     16:15:17

 5   my responses to some questions from           16:15:19

 6   Google.                                       16:15:24

 7      Q.    Okay.                                 16:15:25

 8            MS. TREBICKA:  And same note as       16:15:30

 9      to this amended response and               16:15:33

10      objection, we have not yet received        16:15:37

11      Mr. Byatt's verification.  We trust it     16:15:39

12      will come shortly.                         16:15:43

13   BY MS. TREBICKA:                              16:15:45

14      Q.    But, Mr. Byatt, did you review       16:15:45

15   to make sure that it is -- the responses,     16:15:46

16   that they are, to the best of your            16:15:49

17   understanding and belief?                     16:15:52

18      A.    When I got this document, I did      16:15:54

19   do that.  Let me -- give me just a moment     16:15:58

20   to check and make sure that this is what I    16:16:02

21   remember reviewing.                           16:16:04

22            Yeah, this looks right, as best      16:16:29

23   as I can remember.                            16:16:33

24      Q.    You're aware of companies like       16:16:36

25   Killi or Brave; is that right?               16:16:40
```

Page 207

```
 1        A.    Yes.                          16:16:44

 2              I don't know if you got my    16:16:58

 3    answer, but I said, yes, I'm aware of   16:16:59

 4    these.                                  16:17:02

 5        Q.    What is Killi?                16:17:02

 6              MS. TREBICKA:  It's -- for the 16:17:03

 7        record, it's K-I-L-L-I.             16:17:04

 8        A.    I know that Killi is in the   16:17:06

 9    space of allowing people to monetize some 16:17:15

10    of their private information.  I can't  16:17:20

11    remember exactly what their business model 16:17:23

12    is right now.  I know that that whole   16:17:28

13    space is shifting pretty rapidly.       16:17:30

14    BY MS. TREBICKA:                        16:17:30

15        Q.    And you've never attempted to 16:17:33

16    monetize your personal information on   16:17:35

17    Killi?                                  16:17:37

18        A.    I have not attempted to, no.  16:17:38

19        Q.    What is Brave?                16:17:39

20        A.    Brave is a web browser that has 16:17:42

21    built-in sort of privacy features and also 16:17:47

22    allows you to sell -- I think they allow 16:17:51

23    you to sell your attention.  Basically  16:17:54

24    they'll -- they'll serve you ads and pay 16:17:58

25    you to look at those ads, I believe, but 16:18:00
```

Page 208

```
 1    it's a web browser.                        16:18:05
 2         Q.    Have you ever used Brave?       16:18:09
 3         A.    I have used Brave, yes.         16:18:10
 4         Q.    Have you gotten paid for using  16:18:12
 5    Brave?                                     16:18:14
 6         A.    I have not.                     16:18:15
 7         Q.    Earlier we talked about browsing 16:18:16
 8    on Incognito in Chrome.  Do you recall     16:18:23
 9    that?  We talked about it a lot --         16:18:27
10         A.    Yes.                            16:18:30
11         Q.    -- frankly, I just always feel  16:18:30
12    the need to preface this with what we've   16:18:32
13    talked about.                              16:18:34
14         A.    Yes, I do remember that.        16:18:36
15         Q.    Okay.  And also from some of    16:18:38
16    your interrogatory responses, we know that 16:18:39
17    you used Incognito to browse               16:18:42
18    adult-oriented websites including          16:18:46
19    websites -- or adult-oriented websites and 16:18:50
20    websites like The New York Times, for      16:18:54
21    example; is that correct?                  16:18:55
22         A.    That's correct, yes.            16:18:57
23         Q.    What are adult-oriented         16:18:58
24    websites?                                  16:19:00
25         A.    Pornography websites.           16:19:04
```

Page 209

```
1        Q.    Do you only browse pornography      16:19:07

2    websites while on Incognito?                  16:19:10

3        A.    I hope so.                           16:19:12

4        Q.    Do you believe that your data is    16:19:15

5    more valuable when it's related to            16:19:18

6    browsing on the pornography websites          16:19:23

7    rather than The New York Times?               16:19:27

8              MR. LEE:  Objection to form.        16:19:30

9        A.    I have no knowledge of               16:19:32

10   specifically how that's priced or what        16:19:35

11   information is particularly valuable.          16:19:37

12   BY MS. TREBICKA:                               16:19:37

13       Q.    What about Incognito versus          16:19:40

14   non-Incognito, do you believe that data       16:19:42

15   related to your browsing when you are in      16:19:44

16   Incognito is more valuable than data          16:19:46

17   related to your browsing when you are not     16:19:49

18   in Incognito?                                  16:19:51

19             MR. LEE:  Objection, valuable to    16:19:53

20        who?                                      16:19:54

21       A.    Yeah, so again, I don't know        16:19:59

22   from Google's perspective how that            16:20:01

23   information is priced.  I don't know what     16:20:05

24   that looks like.  I can tell you that from    16:20:09

25   my perspective, basically by definition,      16:20:14
```

Page 210

1                  CERTIFICATION

2

3        I, BELLE VIVIENNE, a Nationally

4    Certified Realtime Reporter, do hereby

5    certify:

6        That the witness whose testimony as

7    herein set forth, was duly sworn by me;

8    and that the within transcript is a true

9    record of the testimony given by said

10   witness.

11       I further certify that I am not

12   related to any of the parties to this

13   action by blood or marriage, and that I am

14   in no way interested in the outcome of

15   this matter.

16       IN WITNESS WHEREOF, I have hereunto

17   set my hand this 23rd day of December

18   2021.

19

20       *Belle Vivienne*

21      BELLE VIVIENNE, CRR, CCR, RPR

22

23              *       *       *

24

25

Page 259

# EXHIBIT 48

# NY Times
# Privacy
# Policy
# (Byatt Ex. 2)

# Privacy Policy



### The New York Times Company Privacy Policy

Last Updated on July 01, 2021

At The Times, our mission is to seek the truth and help people understand the world. We want you to understand how we handle your data. We also want you to know your rights and choices.

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

This policy describes how we handle your data when you use "Times Services," listed below:

- The New York Times newspaper, plus our International Edition

- Our websites, *like nytimes.com*

- Our apps, *like the New York Times app and the New York Times Crossword app*

Exhibit
GO- 0002
William Byatt - V1

The New York Times | THE TIMES AND YOUR DATA

Privacy F.A.Q. **Privacy Policy** Cookie Policy | English

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

- Our email newsletters, *like Cooking and Morning Briefing*

- Our pages or ads on social media networks, *like our Facebook and Instagram pages*

- Anywhere we gather information from you and refer you to this Privacy Policy

How we handle information about you depends on which Times Services you use — and how you use them. We use different information about print subscribers than website visitors.

Be aware that certain Times Services work differently. Some have additional terms that supplement this policy (*e.g.*, *Reader Submissions*). Others refer to a different privacy policy altogether, so this one does not apply.

## 1. What Information Do We Gather About You?

The information we gather about you depends on the context. By and large, it's information about you that can personally identify you — either on its own or when combined with other information.

The following describes the information we collect and how we obtain it.

*A) Information Collected Through Times Services.*

i. **Information You Voluntarily Give Us**

- **For Registration:**

  When you sign up for a Times Service *(e.g., a subscription)*, we collect your contact information and account credentials. Once you're registered, we assign you a unique ID number. This ID number helps us recognize you when you're signed in.

  For some Times Services, you can instead sign up by linking your Apple, Facebook or Google account. See "From Other Sources" below.

  If you register for an event or conference, we might ask for additional information *(e.g., your company name, your job title or your dietary restrictions)*.

- **For Billing:**

  To process payments or donations, we collect and use your payment information.

  This can include your name, your address, your telephone number, your email address, your credit or debit card information and any other relevant information.

1. What Information Do We Gather About You?
2. What Do We Do With The Information We Collect About You?
3. With Whom Do We Share the Information We Gather?
4. What Are Your Rights?
5. What About Sensitive Personal Information?
6. How Long Do You Retain Data?
7. How Do You Protect My Information?
8. Are There Guidelines for Children?
9. How Is Information Transferred Internationally?
10. What Is Our Legal Basis?
11. What About Links to Third-Party Services?
12. How Are Changes to This Privacy Policy Communicated?
13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

- **For User-Generated Content:**

  We offer you the ability to post content that other users can read *(e.g., comments or recipe reviews)*. Anyone can read, collect and use any personal information that accompanies your posts. See the Comments F.A.Q., or read "User-Generated Content" in our Terms of Service for more information.

  We do not have to publish any of your content. If the law requires us to take down, remove or edit your personal information, we will comply to the required extent.

- **For Contests, Sweepstakes and Special Offers:**

  When you sign up for these, you give us your name, email and any other required information.

- **For Reader Surveys, Research, Panels and Experience Programs:**

  We gather information through questionnaires, surveys and feedback programs. We also conduct similar research for advertisers. We ask you for your consent to use this information when you participate in these programs and events.

- **During Contact With Our Call Centers:**

  We collect information from you when you place an order over the phone or contact customer service through one of our toll-free numbers.

- **Personal Contacts Data:**

  We never scan your device for your contacts or upload that data.

  With your consent, we do comply with your requests to collect data about your friends, family or acquaintances *(e.g., Refer a Friend campaigns)*. This functionality is only meant for U.S. residents. By using it, you acknowledge and agree that both you and your contacts are based in the United States — and that you have everyone's consent for us to use their contact information.

  ii. **Information Collected Automatically**

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

ii. **Information Collected Automatically**

- **With Tracking Technologies in Your Browser and Mobile Apps:**

  These technologies include cookies, web beacons, tags and scripts, software development kits (or SDKs) and beyond.

  We track and store data about how you visit and use Times Services, particularly through our websites and apps. The items we log include:

  - Your IP address

  - Your location

  - Your operating system

  - Your browser

  - Your browser language

  - The URLs of any pages you visit on our sites and apps

  - Device identifiers

  - Advertising identifiers

  - Other usage information.

  We combine this data with other information we collect about you. For more information about tracking methods on Times Services, and how to manage them, read our Cookie Policy.

  If your browser doesn't accept our cookies, you can't access certain parts of our websites (e.g., your account on nytimes.com). Because the "Do Not Track" browser-based standard signal has yet to gain widespread acceptance, we don't currently respond to those signals. We however respond to the Global Privacy Control in certain territories, such as Europe and California.

- **With GPS Technologies:**

  Some of our apps can provide content based on your GPS location, if you enable this feature (e.g., the New York Times Real Estate app). Your GPS location is your exact location.

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

You choose whether to enable GPS features when you first install the app. You can edit that setting on your device at any time. If you enable these features, your GPS location can be found by satellite, cell phone tower or Wi-Fi and used by the app. If you save a location-based search in your history, that data moves to our service provider's servers — see below for the definition of service provider.

If you do not enable GPS location-based services, or if a specific app does not have location-based features (e.g., the New York Times app), we don't collect your precise GPS location. We do collect your IP address, which can establish your approximate location. Ads on our sites and apps may be targeted based on this approximate location, but are never targeted based on your GPS location.

***B) Information Collected From Other Sources.***

**i.   Privately Owned Databases:**

Marketing, data analytic and social media-owned databases give us access to a range of information — like public data, survey data and beyond. This data sometimes includes your mailing address, your gender, your age, your household income and other demographic data.

**ii.   Social Media Platforms and Other Third-Party Services:**

*(Social media platforms include Facebook. Third-party services include Google and Nook.)*

You can link your social media or other third-party account to a Times Service. By linking the services, you authorize us to collect, store and use any information they may give us *(e.g., your email address)*. You can disconnect your nytimes.com registration from third-party accounts at any time.

We also receive information from you when you interact with our pages, groups, accounts or posts on social media platforms. This includes aggregate data on our followers *(e.g., age, gender and location)*, engagement data *(e.g., "likes," comments, shares, reposts and clicks)*, awareness data *(e.g., number of impressions and reach)* and individual users' public profiles.

For more information, refer to our social login and Nook F.A.Q.

**iii. Workplace and Schools:**

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

**iii. Workplace and Schools:**

When your employer or school buys an organizationwide subscription to nytimes.com, they sometimes provide us with your name and organization email address to grant you access as a user.

*A note about future updates:*

We are always improving our products and services, and we create new features regularly. These updates sometimes require us to collect new information, or use what we already have differently. If there is a significant or material change in the way we handle your personal information, we will notify you as detailed below.

**Back to top**

---

## 2. What Do We Do With The Information We Collect About You?

*A) We provide the Times Services.*

We use your information to help you use and navigate Times Services, such as:

- Making a Times Service available to you

- Arranging access to your account

- Providing customer service

- Responding to your inquiries, requests, suggestions or complaints

- Completing your payments and transactions

- Sending service-related messages *(e.g., a change in our terms and conditions)*

- Saving your reading list, recipes or property searches

- Displaying your Crossword stats

- Letting you take part in paid services, polls, promotions, surveys, panels, research and comments.

The New York Times | **THE TIMES AND YOUR DATA**          Privacy F.A.Q.  Privacy Policy  Cookie Policy | English

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

### B) We Personalize Your Experience.

We track your interests and reading habits *(e.g., the articles you read)* to personalize your reading experience using technology like algorithmic recommendations and machine learning. This is how we highlight articles you might be interested in and de-emphasize articles you've already read. For more information about content personalization on Times Services, you can read the Personalization F.A.Q. We also show you prices, promotions, products or services we believe you'll find interesting, based on demographic and usage data.

### C) We Allow You to Share User-Generated Content.

Any information you disclose in your content becomes public — along with your chosen screen name and uploaded photo.

### D) We Develop Products and Services, and Do Analysis.

We analyze data on our users' subscription, purchase and usage behaviors. This helps us make business and marketing decisions.

For example, our analysis lets us predict preferences and price points for our products and services. It helps us determine whether our marketing is successful. It also shows us characteristics about our readers, which we sometimes share in aggregate with advertisers.

Google Analytics is one of the analytics providers we use. You can find out how Google Analytics uses data and how to opt out of Google Analytics.

### E) We Carry Out Administrative Tasks.

- For auditing: We verify that our internal processes work as intended and comply with legal, regulatory and contractual requirements.

- For fraud and security monitoring: We detect and prevent cyberattacks or unauthorized robot activities.

- For customer satisfaction: We assess users' satisfaction with Times Services and our customer care team.

The above activities can involve outside companies, agents or contractors ("service providers") with whom we share your personal information for these purposes (discussed further below).

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

The above activities can involve outside companies, agents or contractors ("service providers") with whom we share your personal information for these purposes (discussed further below).

*F) We Offer Sweepstakes, Contests and Other Promotions.*

You can take part in our sweepstakes, contests and other promotions. Some might have additional rules about how we use and disclose your personal information.

*G) We Allow for Personalized Advertising on Times Services and Create Audiences for Third-Party Advertisers.*

We gather data and work with third parties to show you personalized ads on behalf of advertisers. This data comes from ad tracking technologies set by us or the third party *(e.g., cookies)*, the information you provide *(e.g., your email address)*, your use of Times Services *(e.g., your reading history)*, information from advertisers or advertising vendors *(e.g., demographic data)* and anything inferred from any of this information. We only use or share this information in a manner that does not reveal your identity. For example, we use Google to serve ads on Times Services. Google uses cookies or unique device identifiers, in combination with their own data, to show you ads based on you visiting nytimes.com and other sites. You can opt out of the use of the Google cookie by visiting the related Google privacy policy.

We also identify groups of users to whom to serve personalized ads on behalf of our advertisers. To do this, we combine information we collect through surveys or registration with information we collect automatically using tracking technologies while you browse our sites and apps. This combined information is used to build models. These data models are then used to measure users' attributes, like their demographic information or their interests. Working with service providers, we use these measurements to group users by common attributes. Each group is associated with a random ID which is then passed to our ad server for use in targeting ad campaigns on our sites and apps.

Another example is our affiliate link vendors, which we use in our guides and product recommendations. Times Services include links that will send you to vendor URLs and other services not operated or controlled by us. These vendors use cookies and other technologies to collect information about your navigation from the Times Services to the merchant you are visiting. If you buy a product after following a link to a link vendor's URL, we may earn a commission.

*Additional notes:*

**The New York Times** | THE TIMES AND YOUR DATA

Privacy F.A.Q.   Privacy Policy   Cookie Policy | English

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

vendor's URL, we may earn a commission.

***Additional notes:***

- For more about targeted advertising, and how to opt out with your specific browser and device, go to the DAA Webchoices Browser Check and NAI Opt Out of Interest-Based Advertising. You can download the AppChoices app to opt out in mobile apps. You can also follow the instructions in the What Are Your Rights? section below.

- We try to limit how our third-party advertising technology vendors use the information they gather from you. Many of these providers require us to enter into contracts that allow them to optimize their own services and products, or that help them create their own.

   Essentially, these providers combine any information they gather about you through Times Services with information they receive from their other clients. This helps them target ads to you on behalf of their other clients, not just us.

- These third parties sometimes use other services in order to serve ads; check their privacy policies for more details. For further information on tracking technologies and your rights and choices regarding them, see the applicable Cookie Policy.

***H) We Advertise Times Services to You.***

We market our properties to you. Sometimes we use marketing vendors to do this.

We serve ads through websites, locations, platforms and services operated and owned by third parties. Often these ads are targeted at people who have visited or registered for a Times Service but have not subscribed or purchased anything. The ads are also targeted at people with similar traits or behaviors to our subscribers or customers.

We target our advertising to these users by uploading an encrypted customer list to a third party, or by incorporating a tracking technology from a third party onto our Times Service. The third party then matches individuals who appear in both our data and their data. Because of how this matching process works, the third party can't read our encrypted customer list if they don't already have it.

To opt out of receiving these matched ads, contact the applicable third parties. For example, when we use "Custom Audience" to serve you our ad through Facebook, you should be able to hover over the box in the right corner of that Facebook ad and opt out. We are not responsible for any third party's failure to comply with opt-out requests.

The New York Times  |  THE TIMES AND YOUR DATA          Privacy F.A.Q.  Privacy Policy  Cookie Policy  |  English

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

We periodically send you targeted email newsletters or promotional emails. For information on opting out of these emails, see What Are Your Rights?

*I) We Aggregate (or De-identify) Personal Information Into Larger Findings.*

Sometimes we aggregate or de-identify information so that it can no longer identify you, under applicable laws. This helps us better understand and represent our users, such as when we measure ad performance, create advertising interest-based segments or compile survey results. We can use and disclose this aggregated or de-identified information for any purpose, unless an applicable law says otherwise.

Back to top

---

## 3.  With Whom Do We Share the Information We Gather?

*A) Within The New York Times Company:*

We share your information with our affiliates for the purposes listed here. See a list of our affiliates.

*B) With Service Providers:*

We work with service providers, as defined above, to carry out certain tasks:

- Processing your payments

- Fulfilling your orders

- Maintaining technology and related infrastructure

- Offering you customer service

- Serving and targeting ads

- Measuring ad performance

- Presenting surveys

- Shipping you products and mailings

The New York Times | THE TIMES AND YOUR DATA

Privacy F.A.Q.    Privacy Policy    Cookie Policy    |    English

1. **What Information Do We Gather About You?**

2. **What Do We Do With The Information We Collect About You?**

3. **With Whom Do We Share the Information We Gather?**

4. **What Are Your Rights?**

5. **What About Sensitive Personal Information?**

6. **How Long Do You Retain Data?**

7. **How Do You Protect My Information?**

8. **Are There Guidelines for Children?**

9. **How Is Information Transferred Internationally?**

10. **What Is Our Legal Basis?**

11. **What About Links to Third-Party Services?**

12. **How Are Changes to This Privacy Policy Communicated?**

13. **How Can You Contact Us? Who Is the Controller of Your Personal Information?**

- Distributing emails

- List processing and analytics

- Managing and analyzing research

- Managing promotions

When performing these tasks, service providers often have access to your personal information.

We sometimes allow them to use aggregated or de-identified information for other purposes, in accordance with applicable laws

*C) With Other Third Parties:*

There are situations when we share your information with third parties beyond our service providers. We never share your email address with these third parties without your consent, except in encrypted form to engage in the matched ads process described above.

i. If you're a U.S. print subscriber, we may share your name and mailing address (among other information) with other reputable companies that want to market to you by mail.

ii. We share information about our live event and conference attendees *(e.g., your name, your company or your job title)* with the event sponsors. In those cases we notify you when you provide us the information.

iii. We share information about participants in our sweepstakes, contests and similar promotions with the promotions' sponsors. In those cases we notify you when you provide us the information.

iv. We process payments you make through Times Services with external services.

There are two ways this can happen:

- We collect your information and share it with the third-party service for processing.

- The third-party service collects your information for processing.

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

v. In the event of a reorganization, merger, sale, joint venture, assignment, transfer or other disposition of all or any portion of our business, assets or stock (including in connection with any bankruptcy or similar proceedings), we would have a legitimate interest in disclosing or transferring your information to a third party — such as an acquiring entity and its advisers.

vi. We can preserve or share personal information if the law requires us to do so. We can also preserve or share personal information if we believe it would be necessary to:

- Comply with the law or with legal process

- Protect and defend our rights and property

- Protect against misuse or unauthorized use of the Times Services

- Protect the safety or property of our users or the general public *(e.g., if you provide false information or attempt to pose as someone else, we could share your information to help investigations into your actions)*

- Cooperate with government authorities, which could be outside your country of residence.

vii. We disclose public activities in our RSS feeds, APIs and other distribution formats. Your public activities could thus appear on other websites, blogs or feeds.

**Back to top**

---

## 4.   What Are Your Rights?

*A) How Do I Opt Out of Email, Phone, Mail and Push Notifications?*

The opt-out methods described below are limited to the email address, phone or device used. They won't affect subsequent subscriptions.

i. **Email:**

We offer a variety of commercial emails and email newsletters. You can unsubscribe from them by following the "unsubscribe" instructions near the bottom of the email. You can also email us at privacy@nytimes.com.

The New York Times | THE TIMES AND YOUR DATA                Privacy F.A.Q.  Privacy Policy  Cookie Policy | English

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

You can manage your nytimes.com newsletter preferences.

**ii. Mail or Telephone Promotions:**

You can ask us to unsubscribe from our mail or telephone solicitations. You can also ask us to not share your information with third parties for marketing purposes. To do so, call us at 1-800-698-4637 or chat with us. You may also email us at privacy@nytimes.com with "Opt Out" in the subject line, and your account number and phone number in the body of the email.

For International Edition customers, you can write us at: *The New York Times International Edition, Subscription Dept. 18 Museum Street, London, WC1A 1JN, United Kingdom*. Please include your account number and phone number in the body of the letter.

**iii. Push Notifications:**

You can opt out any time by adjusting your device settings, or uninstalling our app.

**iv. Text Messages:**

You can opt out of text alerts any time by replying "STOP," or any alternative keyword we've shared with you.

We complete any opt-out request as quickly as we can. This opt-out request won't prohibit us from sending you important nonmarketing notices.

*B) How Do You Access, Change, Delete, Update or Exercise Your Other Rights in Relation to Your Personal Information?*

In some parts of the world, you have the right to:

- Access, modify, or delete the personal information we have about you

- Receive an electronic copy of the personal information we have about you, for data portability

- Restrict, or object to, how we process personal information about you

- Not receive discriminatory treatment by us for the exercise of your privacy rights.

The New York Times | THE TIMES AND YOUR DATA          Privacy F.A.Q.  Privacy Policy  Cookie Policy | English

1. **What Information Do We Gather About You?**

2. **What Do We Do With The Information We Collect About You?**

3. **With Whom Do We Share the Information We Gather?**

4. **What Are Your Rights?**

5. **What About Sensitive Personal Information?**

6. **How Long Do You Retain Data?**

7. **How Do You Protect My Information?**

8. **Are There Guidelines for Children?**

9. **How Is Information Transferred Internationally?**

10. **What Is Our Legal Basis?**

11. **What About Links to Third-Party Services?**

12. **How Are Changes to This Privacy Policy Communicated?**

13. **How Can You Contact Us? Who Is the Controller of Your Personal Information?**

You have the right to object to the processing of your personal information based on our legitimate interest or that of a third party — unless we demonstrate compelling legitimate grounds for the processing of, or the keeping of, your personal information for the establishment, exercise or defense of legal claims.

If you'd like to exercise any of the above rights, contact us via this form or by calling us at our toll-free number, 1-800-NYTIMES. In your request, please be specific. State the information you want changed, whether you'd like your information suppressed from our database or whether there are limitations you'd like us to put on how we use your personal information. Please use the email address linked to that personal information — we only complete requests on the information linked to your email address. To verify your identity, we will email the email address you provide us, and which matches our records, and wait for your response. In some instances we may also ask for additional information. This is how we verify your identity before complying.

You can designate an authorized agent to make a request on your behalf. In order to do that, please provide the agent with written permission, signed by you, authorizing the agent to submit the request on your behalf. The agent must submit that written permission along with the request. We will contact you to verify your identity — and the authorized agent's permission — before a response to the request is sent.

We'll respond to your request in a manner consistent with applicable law.

We might need to keep certain information for recordkeeping purposes, or to complete a transaction you began prior to requesting a change or deletion *(e.g., if you make a purchase or enter a promotion, you might not be able to change or delete the personal information provided until after the completion of the purchase or promotion)*.

In some cases, your request doesn't ensure complete removal of the content or information *(e.g., if another user has reposted your content)*.

If you'd like, you can lodge a complaint with a data protection authority. A list of E.U. data protection authorities is available.

### C) How Do You Manage Your Digital and Home Delivery Accounts?

You can update your account information and see your transaction history (for International Edition print subscribers). If you need assistance, call our toll-free number, 1-800-NYTIMES. Other local numbers are available.

It works differently if you subscribed via Apple's App Store or Google Play. Register with us to access the Account area, and contact Apple or Google for your transaction history.

Back to top

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

## 5.   What About Sensitive Personal Information?

We generally don't want to gather any sensitive information about you. This includes:

- Your social security number

- Your racial or ethnic origin

- Your political opinions

- Your religion or other beliefs

- Your health, biometric or genetic characteristics

- Any trade union membership

- Any criminal background

There are rare situations when we request this information *(e.g., a reader survey asks about your political leanings)*, but you can decline to answer. Outside those situations we would prefer you never share that information with us.

**Back to top**

## 6.   How Long Do You Retain Data?

It depends. We store your personal information for as long as needed, or permitted, based on the reason why we obtained it (consistent with applicable law). This means we might retain your personal information even after you close your account with us.

When deciding how long to keep your information, we consider:

- How long we have had a relationship with you or provided a Times Service to you

- Whether we are subject to any legal obligations *(e.g., any laws that require us to keep transaction records for a certain period of time before we can delete them)*

The New York Times | THE TIMES AND YOUR DATA                    Privacy F.A.Q.  Privacy Policy  Cookie Policy | English

1.  **What Information Do We Gather About You?**

2.  **What Do We Do With The Information We Collect About You?**

3.  **With Whom Do We Share the Information We Gather?**

4.  **What Are Your Rights?**

5.  **What About Sensitive Personal Information?**

6.  **How Long Do You Retain Data?**

7.  **How Do You Protect My Information?**

8.  **Are There Guidelines for Children?**

9.  **How Is Information Transferred Internationally?**

10. **What Is Our Legal Basis?**

11. **What About Links to Third-Party Services?**

12. **How Are Changes to This Privacy Policy Communicated?**

13. **How Can You Contact Us? Who Is the Controller of Your Personal Information?**

- Whether we have taken any legal positions (*e.g., in connection with any statutes of limitation*).

Rather than delete your data, we might de-identify it by removing identifying details.

**Back to top**

---

## 7.   How Do You Protect My Information?

We protect your personal information with a series of organizational, technological and physical safeguards — but we cannot guarantee its absolute security. We recommend that you use complex and unique passwords for your Times accounts and for third-party accounts linked to them. Do not share your password with anyone.

If you have reason to believe your interaction with us is no longer secure, notify us immediately.

**Back to top**

---

## 8.   Are There Guidelines for Children?

Times Services are intended for a general audience, and are not directed at children under (13) years of age.

We do not knowingly gather personal information (as defined by the U.S. Children's Privacy Protection Act, or COPPA) in a manner not permitted by COPPA. If you are a parent or guardian and you believe we have collected information from your child in a manner not permitted by law, contact us at privacy@nytimes.com. We will remove the data to the extent required by applicable laws.

**Back to top**

---

## 9.   How Is Information Transferred Internationally?

The New York Times | THE TIMES AND YOUR DATA          Privacy F.A.Q.   Privacy Policy   Cookie Policy | English

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

The New York Times Company is headquartered in the United States. If you are located outside the United States, your information is collected in your country and then transferred to the United States — or to another country in which we (or our affiliates or service providers) operate.

If we transfer your data out of the European Economic Area (E.E.A.), we implement at least one of the three following safeguards:

- We transfer your information to countries that have been recognized by the European Commission as providing an adequate level of data protection according to E.E.A. standards (see the full list of these countries).

- We use a service provider in the United States that is Privacy Shield certified.

- We take steps to ensure that the recipient is bound by E.U. Standard Contractual Clauses to protect your personal data. You can see a copy of these clauses.

In certain situations, the courts, law enforcement agencies, regulatory agencies or security authorities in those countries might be entitled to access your personal information.

Back to top

## 10. What Is Our Legal Basis?

In some jurisdictions, like the European Union and the European Economic Area, we only collect, use or share information about you when we have a valid reason. This is called "lawful basis." Specifically, this is one of the following:

- The consent you provide to us at the point of collection of your information

- The performance of the contract we have with you

- The compliance of a legal obligation to which we are subject or

1.  What Information Do We Gather About You?

2.  What Do We Do With The Information We Collect About You?

3.  With Whom Do We Share the Information We Gather?

4.  What Are Your Rights?

5.  What About Sensitive Personal Information?

6.  How Long Do You Retain Data?

7.  How Do You Protect My Information?

8.  Are There Guidelines for Children?

9.  How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

- The legitimate interests of The Times or a third party. "Legitimate interest" is a technical term under international laws, including the European Union General Data Protection Regulation. It means that there are good reasons for the processing of your personal information, and that we take measures to minimize the impact on your privacy rights and interests. "Legitimate interest" also refers to our use of your data in ways you would reasonably expect and that have a minimal privacy impact.

We have a legitimate interest in gathering and processing personal information, for example: (1) to ensure that our networks and information are secure; (2) to administer and generally conduct business within The New York Times Company; (3) to prevent fraud; and (4) to conduct our marketing activities.

Back to top

## 11. What About Links to Third-Party Services?

Some Times Services contain links to third-party websites, resources, vendors and advertisers. These third parties are not Times Services. We do not control (and are not responsible for) third party content or privacy practices. Any personal data you provide to them is not covered by this Privacy Policy.

Back to top

## 12. How Are Changes to This Privacy Policy Communicated?

We periodically update this Privacy Policy. We will post any changes on this page by updating this policy.

If we make a significant or material change in the way we collect, use or share your personal information, we will notify you at least 30 days prior to the changes taking effect. We will do this via email or prominent notice within Times Services. If you object to any change, you can stop using the Times Services.

After we post any changes on this page, your continued use of Times Services is subject to the updated Privacy Policy.

Back to top

1. What Information Do We Gather About You?

2. What Do We Do With The Information We Collect About You?

3. With Whom Do We Share the Information We Gather?

4. What Are Your Rights?

5. What About Sensitive Personal Information?

6. How Long Do You Retain Data?

7. How Do You Protect My Information?

8. Are There Guidelines for Children?

9. How Is Information Transferred Internationally?

10. What Is Our Legal Basis?

11. What About Links to Third-Party Services?

12. How Are Changes to This Privacy Policy Communicated?

13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

### 13. How Can You Contact Us? Who Is the Controller of Your Personal Information?

If you have any questions, email us at privacy@nytimes.com or write us at:

The New York Times Company
620 Eighth Avenue
New York, N.Y. 10018
Attn.: Privacy Counsel

We can also be reached by phone at 1-800-NYTIMES (see a list of our local telephone numbers outside the United States).

The New York Times Company is referred to in this Privacy Policy as "The Times," "we" or "our."

Certain Times Services operate as independent controllers of your personal information. Wirecutter operates as an independent controller of personal information collected through the Wirecutter site available at nytimes.com/wirecutter, pages or ads on social media networks, email messages sent by Wirecutter, your offline contacts and any other service offered by Wirecutter (collectively, the "Wirecutter Services"). If you have any questions regarding Wirecutter, email us at privacy@thewirecutter.com or write us at:

Wirecutter, Inc.
c/o The New York Times Company
620 Eighth Avenue
New York, N.Y. 10018
Attn.: Privacy Counsel

Wirecutter operates the Wirecutter Services in accordance with the practices disclosed in this Privacy Policy. With respect to the Wirecutter Services, Wirecutter, Inc. is referred to in this Privacy Policy as included in "The Times," "we" or "our." In this Privacy Policy, Wirecutter Services are included under "Times Services."

**Back to top**

# EXHIBIT 49

# 1/7/2022 JEREMY DAVIS DEPOSITION TRANSCRIPT EXCERPTS

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3

 4    CHASOM BROWN, WILLIAM BYALL,
      JEREMY DAVIS, CHRISTOPHER
 5    CASTILLO, and MONIQUE
      TRUJILLO individually and on
 6    behalf of all other similarly  No.
      situated,                      5:20-cv-03664-LHK-SVK
 7
                    Plaintiff,
 8
              vs.
 9
      GOOGLE LLC,
10
                    Defendant.
11    _____/

12

13

14

15       VIDEO-RECORDED DEPOSITION OF JEREMY DAVIS

16               REMOTE ZOOM PROCEEDING

17                Little Rock, Arkansas

18               Friday, January 7, 2022

19

20

21

22

23    REPORTED BY:

24    LESLIE ROCKWOOD ROSAS, RPR, CSR 3462

25    Pages 1 - 183                   Job No. 5019103

                                             Page 1
```

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3
 4    CHASOM BROWN, WILLIAM BYALL,
      JEREMY DAVIS, CHRISTOPHER
 5    CASTILLO, and MONIQUE
      TRUJILLO individually and on
 6    behalf of all other similarly  No.
      situated,                      5:20-cv-03664-LHK-SVK
 7
 8                 Plaintiff,
 9          vs.
10    GOOGLE LLC,
11                 Defendant.
      _____/
12
13
14          Video-recorded deposition of JEREMY DAVIS, taken
15    on behalf of the Defendant, Remote Zoom Proceeding from
16    Little Rock, Arkansas, beginning at 10:06 A.M. Central
17    Standard Time and ending at 4:29 P.M. Central Standard
18    Time, on Friday, January 7, 2022, before Leslie Rockwood
19    Rosas, RPR, CSR No. 3462.
20
21
22
23
24
25
                                              Page  2
```

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFFS:

 4         BOIES SCHILLER FLEXNER LLP

 5         BY: JAMES LEE, ESQ.

 6              ROSSANA (ROSY) BAEZA, ESQ.

 7         100 SE Second Street, Suite 2800

 8         Miami, Florida 33131

 9         (305) 539-8400

10         jlee@bsfllp.com

11         rbaeza@bsfllp.com

12

13         BY: HSIAO (MARK) C. MAO, ESQ.

14         44 Montgomery Street, 41st Floor

15         San Francisco, California 91401

16         (415) 293-6800

17         mmao@bsfllp.com

18

19         MORGAN & MORGAN

20         BY: RYAN MCGEE, ESQ.

21         201 North Franklin Street, 7th Floor

22         Tampa, Florida 33602

23         (813) 223-5505

24         rmcgee@forthepeople.com

25
```

Page 3

```
 1   APPEARANCES (Continued):

 2

 3   FOR THE DEFENDANT:

 4        QUINN EMANUEL URQUHART & SULLIVAN, LLP

 5        BY: ANDREW H. SCHAPIRO, ESQ.

 6        191 North Wacker Drive, Suite 2700

 7        Chicago, Illinois 60606

 8        (312) 705-7400

 9        andrewschapiro@quinnemanuel.com

10

11        BY: MARIE M. HAYRAPETIAN, ESQ.

12        865 South Figueroa Street, 10th Floor

13        Los Angeles, California 90017

14        (213) 443-3000

15        mariehayrapetian@quinnemanuel.com

16

17   Also Present:

18        JoAnn Yager, Videographer

19

20

21

22

23

24

25
```

Page 4

```
1                        I N D E X

2

3

4    FRIDAY, JANUARY 7, 2022

5

6    WITNESS                                 EXAMINATION

7    JEREMY DAVIS

8

9        BY MR. SCHAPIRO                              9

10       BY MR. LEE                                 169

11

12   QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:

13

                              Page       Line

14
                              162          6

15

16

17

18

19

20

21

22

23

24

25

                                              Page  5
```

1    information to Google, that is the same thing as Chrome

2    saving -- that is the same thing as the browser -- the

3    Chrome browser saving information?

4        A.   I mean, I -- I'm not an engineer working on the

5    Google -- sorry, the Chrome browser.  So the distinction          10:40:00

6    of save in that operation or if it is relayed from a

7    memory, what I'm saying is it is possible -- it is

8    possible, and the claim is that despite whether or not

9    Chrome saves it, that that information was collected by

10   Google without consent.  That's what I'm saying.                  10:40:23

11       Q.   I'm going to ask the same question about this

12   next bullet point, "Cookies and site data."

13            Do you believe that Chrome, the browser, has

14   saved cookies and site data from when you were using

15   incognito mode?                                                   10:40:48

16       A.   I believe that when they -- excuse me just one

17   second.

18            I believe that when Google states something on

19   their page that they're stating what the behavior will

20   be.  But I -- I want to make sure that we don't conflate          10:41:06

21   the claim that just because -- let's just assume that

22   Chrome does what it says on the screen and cookies and

23   site data are not saved.

24            To me, I don't read that as an exclusion of the

25   claim that those cookie and site data might not also be           10:41:28

Page 30

1    relayed to Google servers, right, to back-end processes

2    at Google.  That's the distinction I'm making in my

3    response.

4        Q.  I understand.  I'm just asking you about this

5    specific piece of it here.                              10:41:46

6            What about the third bullet point?  Is it --

7    you're not contending, are you, that Chrome, the browser,

8    saved information that you entered into forms while you

9    were using incognito mode?  Or are you?

10       A.  No, I'm not contending that.                     10:42:08

11       Q.  How about over on the other side --

12       A.  Sorry, what is the question?

13       Q.  I was pausing.  Sorry.

14           On the next -- just the next set of bullet

15   points, "Your activity might still be visible to."  Do    10:42:30

16   you have any reason to dispute the accuracy of -- of that

17   first bullet point, that when you're incognito, your

18   activity might still be visible to websites you visit?

19       A.  No, I don't dispute that.  I understand that if

20   I request a website, they're going to respond to that     10:42:51

21   request.

22       Q.  And same for the second bullet point, do you

23   understand that if you're incognito, your activity might

24   still be visible to your employer or your school?

25       A.  Yes, I interpret that to be any network that I'm  10:43:05

Page 31

1    on.  And that might be my employer's network or school

2    network, yes.

3        Q.  And then, finally, the third bullet point.  Do

4    you have -- do you understand that when you're incognito,

5    your activity might still be visible to your internet        10:43:25

6    service provider?

7        A.  Yes.  Yes, I understand that is technically

8    possible.

9        Q.  Let me ask about this part below.  It says,

10   "Block third-party cookies."                                 10:43:51

11       Do you have a general understanding of what

12   cookies are?

13       A.  Yeah.  I have a general understanding of cookies

14   to be small text files that are stored by the browser for

15   certain functionality for websites to work.                 10:44:09

16       Q.  And do you understand that when you open a new

17   incognito session you essentially have a new empty cookie

18   jar?

19       MR. LEE:  Objection to form, calls for

20   speculation.                                                 10:44:40

21       THE WITNESS:  I'm -- I'm under the general

22   understanding that may be the case, but I've never

23   inspected to verify that that's truly what's happening.

24       Q.  BY MR. SCHAPIRO:  Do you have any understanding

25   of what happens to cookies from a browsing session after    10:44:49

Page 32

```
 1   you close out of an incognito browsing session?

 2        A.  In general, what I understand is that they would

 3   be crushed or deleted.  But I haven't inspected or

 4   verified to see if that happens in 100 percent of the

 5   cases -- or 100 percent of the time.  But that's my        10:45:14

 6   general understanding.

 7        Q.  Now, Mr. Davis, I understand from some of the

 8   submissions in this case that you do most of your web

 9   browsing in incognito mode; is that correct?

10        A.  Yeah, that is true.  I found it convenient,        10:45:41

11   generally, for that to be my default.  And so, yes, that

12   is true.

13        Q.  And can you give me just a rough sense of the --

14   of the percentage?  Do you do, you know, 51 percent of

15   your browsing in incognito mode?  99 percent?  Something    10:46:11

16   in between?

17        A.  Yeah, I would say it's probably in the low- to

18   mid-90 range.  And then there are certain times in which

19   I have to authenticate or want to have a non-incognito

20   mode, or I may accidentally on a new device haven't         10:46:30

21   configured that option out.  I'm sure I've launched

22   incognito tabs.

23           But, I mean, it's fair to say the majority of my

24   browsing -- strong majority of my browsing is in

25   incognito when I use Chrome, yeah.                          10:46:51
```

Page 33

```
 1          Q.  I'm happy to show it to you if you want.  That's
 2    fine.  I just thought it would be quicker if you recall.
 3               So let's look at Exhibit 3.
 4               (Exhibit 3, Plaintiff Jeremy Davis' Objections
 5               and Responses to Defendant's First Set of          10:51:52
 6               Interrogatories, marked for identification
 7               electronically by counsel.)
 8          Q.  BY MR. SCHAPIRO:  Mine is taking a moment to
 9    load.  I don't know about yours.
10          A.  Just refreshing now.  I see it now.               10:52:12
11          Q.  All right.  So feel free to scroll through the
12    document, and let me know at your convenience if these
13    are interrogatories to which you provided -- in -- in
14    conjunction with your lawyers to which you provided some
15    answers.                                                    10:52:37
16          A.  And the question was regarding Interrogatory 3;
17    is that correct?
18          Q.  Yes.
19          A.  Okay.  Do you have a line number?
20          Q.  Yeah.  This would be -- let's see here.           10:52:46
21               MR. LEE:  It's line 7 and 8, Mr. Schapiro.
22               MR. SCHAPIRO:  Thanks, James.
23          Q.  Yeah, lines 7 and 8.  There we are.  It's right
24    after "Notwithstanding and subject to these objections."
25          A.  I see this now.  Yes.  Yeah, that is familiar to   10:53:22
```

Page 37

1    me.

2         Q.  And is it accurate that you take careful

3    precautions to protect your privacy?

4         A.  Yes, I think I take careful and reasonable

5    precautions to protect my privacy.                        10:53:35

6         Q.  All right.  We can close out of this, if you

7    want.

8              So what are some of the careful precautions you

9    take to protect your privacy?

10        A.  Yeah, I -- I thought Google incognito was going  10:53:49

11   to be one of those steps.  And so my perspective has

12   changed once I've understood what has happened.  But

13   that's one.

14             And I make sure that I use a wireless mesh

15   system at the house.  It's a retail mesh, eero.  But it    10:54:15

16   basically has a very strong firewall on it, and it

17   prevents leakage and serves as a strong internet router.

18             And then obviously for work and/or other times,

19   I may periodically use a VPN technology.

20        Q.  Do you use a VPN at home?                         10:54:42

21        A.  Primarily for work.

22        Q.  Do you consider yourself more privacy conscious

23   than the average person?

24             MR. LEE:  Objection to form.

25             THE WITNESS:  It's tough for me to know what the 10:55:11

Page 38

1    average person's perspective of privacy is, and privacy

2    is a complicated topic.  I would say I have a reasonable

3    understanding of privacy concerns.

4         I think any informed individual would probably

5    be interested in the same level -- have the same level of    10:55:29

6    interest in privacy that I have.

7         Q.  BY MR. SCHAPIRO:  So you mentioned the wireless

8    setup you have at your house with the firewall and

9    sometimes using a VPN at work.  Are there any other

10   precautions that you take to protect your privacy while    10:55:49

11   you browse the internet that you can think of while you

12   sit here?

13        A.  I mean, incognito was my primary response

14   because of the claims that I understood from -- from

15   Google.  That's the primary one.    10:56:08

16        I will occasionally use a personal VPN, but it's

17   not on all the time.  Like every once in a while I may

18   use a product called NordVPN, I believe is the product.

19   But it's not something I use all the time.

20        Q.  And how about when using apps?  Is there    10:56:25

21   anything additional or different?  Because I guess I was

22   just asking, you know, while you browse the internet.

23   But while you use apps, do you take in anything

24   additional you do to protect privacy?

25        A.  If I can use an app anonymously and get utility    10:56:41

```
 1    that you visit to tell you if they might be sharing your

 2    data with their business partners?

 3        A.  Yeah, I believe that that may even be a legal

 4    requirement now.  It probably hasn't been that way and

 5    may not be that way in every jurisdiction, but I would       11:22:02

 6    know that it is becoming more frequent that when I visit

 7    a cite, like, you'll see a footer where it says, "Hey, in

 8    order to use this site, we're going to use cookies," or,

 9    "We're collecting this type of information about you."  I

10    would say that that's becoming more -- more common.          11:22:20

11        Q.  And would you expect a website to list all of

12    its business partners, or would it be sufficient in your

13    view to refer to sharing with business partners?

14            MR. LEE:  Objection to form.

15            THE WITNESS:  I won't speculate on what's proper      11:22:35

16    for one business to do or not.  Their disclosures are

17    their discloses.

18        Q.  BY MR. SCHAPIRO:  Well, I understand that, but I

19    guess I'm asking about what your -- what your

20    expectations are, your -- including your expectations of     11:22:48

21    privacy.

22            Do you expect that when you -- if you were

23    looking at the disclosures on a website, it would list

24    every business partner that it shares data with, or would

25    tell you in more general terms that it shares with           11:23:07
```

Page 50

```
 1   business partners?

 2        A.  I guess my expectation is not as relevant as

 3   what the companies are doing; right?  I've seen both

 4   examples to your example.  I've seen where some companies

 5   exhaustively list -- or list off the partners that they      11:23:25

 6   sell to or they may just make a blanket claim.  And then

 7   I think it's up to the individual to interpret whether or

 8   not they perceive that as an acceptable term to them.

 9        Q.  Are you familiar with the website CoinMarketCap?

10        A.  I am, yes.                                          11:23:47

11        Q.  And that's one of the websites that -- in some

12   of the submissions in this case, you indicated that's --

13   that's one that you visit regularly; is that correct?

14        A.  That's correct.

15        Q.  Have you read the Privacy Policy of               11:24:07

16   CoinMarketCap.com?

17        A.  I believe I may have reviewed it at some point,

18   but I don't have specific recollection of when.

19            MR. SCHAPIRO:  Let's load it up as an exhibit.

20   This will now be Exhibit 4.                                 11:24:35

21            (Exhibit 4, CoinMarketCap Privacy and Cookie

22            Policy, marked for identification electronically

23            by counsel.)

24            MR. LEE:  Andy, while we wait for the Exhibit

25   Share to load, do you have an effective date for the       11:24:46
```

Page 51

```
 1    Exhibit 4?

 2              MR. SCHAPIRO:  Not off the top of my head.

 3    Let's see if one is indicated here.

 4              Effective date is January 1st, 2020.

 5              MR. LEE:  Thank you.                          11:25:15

 6              THE WITNESS:  Okay.  I have that document.

 7        Q.  BY MR. SCHAPIRO:  Okay.  And if you take a look

 8    at this first page here, do you see the large heading

 9    "What Information Do We Collect?"

10        A.  I see that section.                             11:25:30

11        Q.  And by the way, do you remember one way or

12    another whether you've ever looked at the CoinMarketCap

13    Privacy Policy?

14              MR. LEE:  Are you asking if he's seen this one?

15        Q.  BY MR. SCHAPIRO:  Well, let me ask first more    11:25:47

16    generally.

17              Any version of it?

18        A.  Yes, this is familiar to me in terms of I recall

19    there being a Privacy Policy for CoinMarketCap.  And this

20    is generally familiar.  I, of course, can't tell you if I  11:26:02

21    looked at this exact version.

22        Q.  All right.  And do you see here under "What

23    Information Do We Collect?" CoinMarket states that they

24    correct -- and I'm looking down at letter E, quote,

25    "Information related to your use of the website and/or    11:26:19
```

Page 52

```
 1   the mobile application, including IP address, geographic

 2   location, and date and time of your request"?

 3          Do you see that?

 4      A.   Yes, I see that.

 5      Q.   And do you have any objection to CoinMarketCap    11:26:35

 6   collecting that data?

 7      A.   As they're disclosing it, obviously no.  It

 8   seems that they're disclosing this because it's necessary

 9   for the functionality of their site and service.

10      Q.   And would it be objectionable to you if they    11:27:01

11   were, rather than collecting it themselves, sharing the

12   data with some other companies?

13      A.   If they do not disclose that they are selling or

14   sharing that information, yes.

15      Q.   Let's take a look at page 3 under the section    11:27:15

16   entitled "Cookies and Web Beacons."

17          Let me know when you see that.

18      A.   Okay.  I see that section.

19      Q.   And you'll see that it indicates here -- this is

20   towards the end of the very first paragraph,              11:27:48

21   "CoinMarketCap and its ad management partners ('Ad

22   Partners') use cookies to record current session

23   information.  Our ad partners may also from time to time

24   use web beacons (also known as internet tags, pixel tags,

25   and clear GIFs).  These web beacons are provided by our    11:28:20
```

Page 53

```
 1    ad partners and allow ad partners to obtain information

 2    such as the IP address of the computer that downloaded

 3    the page on which the beacon appears, the URL of the page

 4    on which the beacon appears, the time that the page

 5    containing the beacon was viewed, the type of browser          11:28:45

 6    used to view the page, and the information in cookies set

 7    by the ad partners."

 8            And then at the very end, it says -- of that

 9    paragraph, it says, "You can opt-out of Google Analytics'

10    data collection with the Google Analytics opt-out browser      11:29:10

11    add-on."

12            Did I read that correctly?

13        A.  I followed along as you read it.  (Nods head.)

14        Q.  And so when -- if and when you read this

15    website's Privacy Policy, you would have been aware that        11:29:34

16    Google is receiving your data when you visit the

17    CoinMarketCap website; correct?

18            MR. LEE:  Objection to form.

19            THE WITNESS:  No.  I actually have no specific

20    recollection of the verbiage that we just read.  I don't        11:29:49

21    have any recollection of reading that.

22        Q.  BY MR. SCHAPIRO:  Well, I'm not asking

23    necessarily if you have a recollection of it.  I'm asking

24    if -- if you had read that, it would have told you there,

25    right in black and white, correct, that Google is              11:30:07
```

Page 54

1    receiving your data when you visit the website; right?

2           MR. LEE:  Are you saying in incognito mode or

3    not in incognito mode?

4       Q.  BY MR. SCHAPIRO:  You may answer.

5       A.  I would have the same, you know, question as to        11:30:25

6    whether or not the behavior would be expected in

7    incognito mode, which is the question in this case.

8           But I can tell you that I didn't -- prior to

9    becoming involved in this case and the claims of the

10   materials on Google Analytics, I was not aware of this        11:30:50

11   opt-out browser add-on.

12      Q.  Do you know if you ever clicked on a link --

13   here you see it says, "Google Analytics opt-out browser

14   add-on."  It's in blue.  I'll represent that there's a

15   link to that.                                                  11:31:19

16          Do you recall ever clicking on a link about the

17   Google Analytics opt-out browser add-on?

18      A.  I do not.  My first -- again, my first exposure

19   to this was in documentation in review of this case.

20   Prior to that, I was not aware of this opt-out plug-in.        11:31:34

21      Q.  Let's introduce -- let's take a look at what --

22   of what you would find if you click that link.  This will

23   be Exhibit Number 5.

24          (Exhibit 5, Google Analytics Opt-out Browser

25          Add-on, marked for identification electronically        11:31:53

Page 55

1    behavior, if that's the question, I think that would be a

2    step in the right direction.  But I don't think that that

3    would preclude any of the damages or violation of privacy

4    that may have occurred if that stuff was being stored and

5    not deleted.  I think that's the fairest way I could          11:53:43

6    answer that question.

7         Q.  BY MR. SCHAPIRO:  You mentioned in your answer a

8    moment ago logging in.  What were you referring to there?

9         A.  Oh, sure.  Logging in.  That is to provide a

10   username and password in, for example, Gmail account.  I     11:54:05

11   have a Gmail account.  If I want to check Gmail, I would

12   have to authenticate to access that service.

13        Q.  And do you understand that if you log in to your

14   Gmail account, is it still your expectation that Google

15   will receive no information about you?  Or does that --       11:54:25

16        A.  No, I -- no.  In the case in which I'm

17   identifying myself to Google, I -- I understand that they

18   are aware of what my activities are.  When I have

19   identified myself to them.

20        Q.  Do you still have the Complaint handy?             11:55:00

21        A.  I have it here, yes.

22        Q.  So can I ask you to look at paragraph 163 of the

23   Second Amended Complaint?  And, you know, just for the

24   record, even though it's a document on the docket, why

25   don't we go ahead and introduce it.                          11:55:20

                                                      Page 67

 1          Feel free to refer to the version that you have

 2     there, the hard copy, if that's easier.  But let's

 3     introduce as the next exhibit the Second Amended

 4     Complaint, just to have a complete record.

 5          So this will be Exhibit 6, I think.                    11:55:35

 6     A.  Sir, what was that paragraph number again?

 7     Q.  Paragraph 163.

 8     A.  163.  Okay.

 9          (Exhibit 6, Second Amended Complaint, marked for

10          identification electronically by counsel.)          11:56:03

11          THE WITNESS:  I see it at the bottom of a page,

12     and it starts with:  "It is common knowledge that Google

13     collects."  Is that the paragraph in question?

14     Q.  BY MR. SCHAPIRO:  It is.

15     A.  All right.                                            11:56:15

16     Q.  So, actually, why don't you go ahead, if you

17     don't mind, just read that first sentence out loud.

18     A.  Sure.  What I see here is, paragraph 163, "It is

19     common knowledge that Google collects information about

20     web-browsing activity of users who are not in private    11:56:31

21     browsing mode.  It is also common knowledge" --

22     Q.  You can stop.  I just want to ask you first

23     about that first sentence.

24     A.  Okay.

25     Q.  Feel free to read the whole thing, so you -- if      11:56:45

Page 68

```
 1    you want to, to yourself, but...

 2           So -- so this is referring to users who are not

 3    in private browsing mode; correct?

 4       A.   Correct.  I see the emphasis on not in private

 5    browsing mode.                                      11:57:06

 6       Q.   Yes.  And is that -- so your Complaint here says

 7    that this is common knowledge.  Is that knowledge that --

 8    that you, Jeremy Davis, had also prior to this lawsuit?

 9       A.   Yes, that's my understanding.

10       Q.   And do you agree, as someone who works in the    11:57:24

11    space that you work in, that it is -- it's common

12    knowledge that Google collects information about web

13    browsing activity when people are not in private mode?

14       A.   Yeah, I would say that's a fair statement.

15       Q.   And is that impacted one way or the other by     11:57:57

16    whether the user has Google's -- had Chrome's sync

17    feature enabled?  S-Y-N-C.

18       A.   I'm not 100 percent sure if that is solely

19    required.

20       Q.   No, I guess I'm just asking you -- well, let me   11:58:17

21    back up.

22           Are you aware that -- that Chrome has various

23    modes?  For example, incognito is one mode; right?

24       A.   (Nods head.)

25       Q.   You have to answer verbally so the court          11:58:30
```

Page 69

1    reporter can get it.

2         A.  Yes, I understand incognito to be a mode of

3    operation for Chrome.

4         Q.  And you understand that there's something that

5    is sometimes called basic mode, which is just regular old      11:58:42

6    Chrome right out of the box?

7         A.  Yeah, it's the standard wide screen.  I would

8    call that normal Chrome.  That's how I refer to it.  So a

9    normal Chrome session and an incognito session, yes.

10        Q.  And do you understand that users can sometimes        11:58:58

11   choose to enable a feature called sync, S-Y-N-C, as well,

12   if they have multiple devices?

13        A.  I believe I'm familiar with this in the profile

14   settings of Google.  Like once you're logged in, I think

15   that's an option that is presented to you.                     11:59:15

16        Q.  And do you have any belief that just using plain

17   old Chrome right out of the box, without Sync enabled,

18   gives you privacy protection so that Google won't see

19   what you're doing?

20             MR. LEE:  Objection to form, calls for              11:59:38

21   speculation, lack of foundation.

22             THE WITNESS:  I would assume that -- I can give

23   you my personal perspective.  I don't assume privacy in,

24   quote/unquote, "normal Chrome sessions."  Why else would

25   the incognito mode exist and why else would the Privacy        12:00:01

Page 70

```
 1    Policy refer to it as the prescribed way to browse

 2    privately?

 3           So my assert- -- my impact of understanding

 4    privacy assumptions are fundamentally different between

 5    the two.                                              12:00:19

 6       Q.  BY MR. SCHAPIRO:  All right.  So here in this

 7    same sentence, a paragraph of your Complaint, it also

 8    says, "It is also common knowledge that Google causes

 9    targeted advertisements to be sent based on that

10    information."                                         12:01:01

11           Do you see that?

12       A.  Yes, I've read that sentence.

13       Q.  And do you generally understand that on what for

14    you, I guess, are the rare occasions when you are not

15    incognito, if you see ads tailored to your interests it's 12:01:17

16    because Google or some other entity has received

17    information about your past browsing?

18       A.  Yes, I understand that.

19       Q.  When you've used Chrome, have you ever seen ads

20    that appear to be tailored to you?                    12:01:37

21       A.  In normal mode, yes.

22       Q.  And I assume the flip side, but not in incognito

23    mode?

24       A.  I have actually experienced rarely a term that I

25    have searched for or a topic, I've seen those things show 12:01:59
```

                                                          Page 71

1      up even in incognito mode.  It is rare.  It is rate, not

2      the rule, but I have seen that occur in incognito mode.

3          Q.  Has that been when you're within a single

4      incognito session, that is you might have multiple tabs

5      open but you've been using incognito during the -- you          12:02:24

6      know, without closing out of it?

7          A.  It's possible.  I'm not sure of the conditions

8      specifically, but I suppose that's possible.

9          Q.  Do you have any belief as to whether a targeted

10     advertising can be beneficial to users such as yourself?        12:02:52

11             MR. LEE:  Objection to form, vague as to scope.

12             THE WITNESS:  I would say that I understand that

13     there's a whole industry and business around targeted

14     advertising.  And I suppose there could be some utility.

15     I think it varies by person.  But, yeah, I would say           12:03:15

16     there's probably utility in those ads.

17         Q.  BY MR. SCHAPIRO:  Is Chrome the browser -- the

18     primary browser that you use to surf the internet?

19         A.  Yes, it is the primary.

20         Q.  What other browsers, if any, do you use?  And           12:03:56

21     maybe just to narrow it a little bit, I guess I would

22     say -- why don't we start with currently.

23         A.  Yeah, the big three that I generally find

24     installed on any of my devices would be the native OS

25     browser, so like if I'm on a Windows device there would        12:04:23

Page 72

1    be what historically was Internet Explorer or Mount Edge.

2    I will generally load Mozilla Firefox on most of the

3    computing devices.

4            And then on the Apple devices, I have, of

5    course, Safari.  So I would say the primaries that I          12:04:41

6    would use, it's always Google -- sorry, Chrome has been

7    my go-to for a long time.  For a long time it was the

8    fastest, and so it ingrained a preference in faster

9    browsing in me.  That's why I use it as primary.  Along

10   with the existence of incognito mode for private             12:05:01

11   browsing.  They were there first, I think, before many of

12   the other browsers introduced those features.

13           But those would be the mix of browsers that I

14   might use.

15       Q.  And when you use other browsers, let's say           12:05:16

16   Safari, for example, or Firefox Mozilla, do you typically

17   use their private browsing mode?

18       A.  Yes, I do.

19       Q.  And is that with the same -- roughly the same

20   breakdown that you've described earlier?  I can't            12:05:43

21   actually remember what the percentage was, but it was the

22   overwhelming percentage of time.

23       A.  Yes.  I generally use -- if you'll recall in my

24   earlier testimony, we talked about those parameters to

25   set them into default --                                     12:05:59

Page 73

 1        Q.   Uh-huh.

 2        A.   -- private mode.  Those other browsers support

 3   the same mechanism.  And I configure them in a similar

 4   way.

 5             MR. LEE:  Hey, everybody.  I'm getting a frozen      12:06:09

 6   screen.  Are you guys getting a frozen screen?

 7             MR. SCHAPIRO:  Let's see.  Yeah, although I can

 8   hear perfectly well.

 9             MR. LEE:  Yeah, the audio is through the phone.

10             MR. SCHAPIRO:  I'm no longer frozen.  Do you       12:06:23

11   want to wave your hands, James?  Let me see if I -- yeah,

12   I see you moving.

13             MR. LEE:  I don't see Mr. Davis moving.  That's

14   the one I'm concerned of.

15             THE WITNESS:  Oh, my Zoom session just dropped.     12:06:36

16             THE REPORTER:  Shall we go off the record,

17   Counsel?

18             MR. LEE:  Yeah, let's take a break and figure

19   this out.

20             THE VIDEOGRAPHER:  Going off the record.  The       12:06:41

21   time is 12:07 p.m.

22             (Recess.)

23             THE VIDEOGRAPHER:  Back on the record.  The time

24   is 2:19 p.m. -- 12:19.  Sorry.

25             MR. LEE:  Oh, you know what?  I should mention      12:19:50

                                                         Page 74

```
 1    it's 1:20 here our time.

 2            THE WITNESS:  It's 12:20.

 3            MR. LEE:  I'm sorry, 12:20 here.  I think we can

 4    go one more session before lunch.

 5            THE WITNESS:  I'm good, yeah.                   12:20:02

 6            MR. LEE:  Okay.  But I think after the next hour

 7    block, Andy, we'll probably need to take lunch.

 8            MR. SCHAPIRO:  Whatever is best for the witness

 9    is fine for us.  I happen to be in the Central Time Zone

10    as well, so this one will work out nicely.              12:20:14

11            MR. LEE:  Okay.  Great.  I forgot about that.

12    That's good.

13        Q.  BY MR. SCHAPIRO:  All right.  Mr. Davis, you'll

14    recall a little bit earlier we were talking about steps

15    that you take to protect your privacy.  Do you remember  12:20:26

16    that?

17        A.  Yes, I do.

18        Q.  And are you aware that in Chrome settings you

19    can enable a feature called "block all cookies"?

20        A.  I'll have to take your word for it.  I don't     12:20:49

21    have specific recollection of that capability.

22        Q.  Do you know --

23            THE REPORTER:  Was there an objection, Mr. Lee?

24            MR. SCHAPIRO:  No.  James made a comment.

25            MR. LEE:  I was being silly.  Go ahead.          12:21:06
```

Page 75

1    good question.  I should maybe look into that further.

2         Q.  BY MR. SCHAPIRO:  On what devices do you use

3    Chrome?

4         A.  Sure.  I use them on my laptop computers,

5    desktop computers, mobile phone, iPhone.  And I believe I      12:27:14

6    even have it installed on an iPad.

7         Q.  And it sounded like you used plural when you

8    said laptop computers, desktop computers.  Do you have

9    more than one laptop, more than one desktop?

10        A.  I do.  I have multiple in my home.  Being in the      12:27:35

11   industry, right, computers are pretty common for me.

12        Q.  And do -- do any other family members or friends

13   ever use any of your devices?

14        A.  On very rare occasions.  Like, if someone needs

15   to get online to do something, I might let them -- I           12:28:00

16   might log them in as a guest on one of the machines.

17             But as a practice and a rule, no.  Everyone in

18   the home has their own devices and generally stick to

19   those devices.

20        Q.  And the practice you have of using incognito for     12:28:24

21   your browsing that you just described, is that the same

22   across your devices, or is there some difference

23   depending on what device you're using?

24        A.  No, it's my general practice, common practice,

25   across all of the devices.                                     12:28:42

Page 79

1      Q.  When you have an incognito session open, about

2  how long do you usually keep it open?

3      Let me make that more clear.  Do you ever keep

4  tabs or windows open for -- for more than a day?

5      A.  Yeah, there's occasions where I do.  As a     12:29:03

6  general practice, I generally will close out of the

7  browser session.  But there have been occasions where I'm

8  in the middle of researching something or in the middle

9  of working on something and I'll leave it open, suspend

10  the computer, and come back to it the next day.     12:29:22

11      Q.  How about leaving tabs or windows open for more

12  than a week?  Is that something that you commonly do?

13      A.  There are occasions in which I have, yes.

14      Q.  Is that common or -- or rare?

15      A.  It's -- I would say it's -- it's on the rarer    12:29:47

16  side, yeah.  Because most of the times I'm getting in,

17  getting out, doing what I need to do.  But it does --

18  there are occasions in which I'll -- yeah, I'll leave

19  them long running.

20      Q.  So I think earlier in the deposition today you  12:30:09

21  were telling us about your understanding of the -- the

22  incognito splash screen.  Do you recall that?

23      A.  Yes.

24      Q.  And prior to your involvement in this case, was

25  that splash screen the only document that contributed to  12:30:47

Page 80

1    your understanding or your belief about what incognito

2    does, or were there other documents that you had

3    reviewed?

4         MR. LEE:  Objection to form, mischaracterizes

5    his prior testimony.                                    12:31:11

6         You can answer.

7         THE WITNESS:  Yeah.  No, so I had reviewed both

8    the Google Terms of Service, the Google Privacy Policy,

9    as well as material, maybe blog posts, on incognito.  So

10   I was not solely informed by the splash screen.          12:31:27

11        Q.  BY MR. SCHAPIRO:  And this is -- so this prior

12   to involvement in the lawsuit, you had looked at, you

13   say, the Privacy Policy and maybe some blog posts?

14        A.  That's correct.

15        Q.  By the way, you said that when you saw the story 12:31:55

16   or advertisement about this lawsuit, it peaked your

17   interest.  Had you, prior to that point, ever seen any

18   articles or blog posts suggesting that incognito -- not

19   by Google, suggesting that incognito mode might not be

20   private in the way that you expected?                   12:32:23

21        MR. LEE:  Hold on.

22        I just want to object to the extent that you are

23   mischaracterizing Mr. Davis' testimony.  He did not -- he

24   did not testify that he responded to an advertisement.

25        MR. SCHAPIRO:  I withdraw the point about the      12:32:37

Page 81

1    advertisement.

2        Q.  So my question, nevertheless, is:  You said when

3    you saw this, I'll just say a story about this lawsuit,

4    it piqued your interest.  And I was asking prior to that

5    point, had you ever seen any articles or blog posts,          12:32:53

6    presumably not from Google, suggesting -- causing you to

7    suspect or suggesting that incognito might not be private

8    in the way you had thought?

9        A.  Fairly recently, prior to the case, I believe

10   there was a journal entry or a hypothetical post that        12:33:19

11   said it was hypothetically possible that Google could be

12   aggregating information.  I think there was an article

13   written about that.  And I even think I recall reading

14   Google responding to that article and saying that they --

15   perhaps that they did not.                                   12:33:42

16           And so that's my recollection of any materials

17   that might have indicated that maybe things were not as

18   they appear with regard to incognito.

19       Q.  And do you remember about how long before the

20   lawsuit that was?                                            12:34:04

21       A.  I'm pretty sure it was within a year.  Like, it

22   was less than a year.

23       Q.  And then since filing the lawsuit, I believe you

24   told us earlier that you continued to use Chrome because

25   you didn't want to change your -- your activity.  Am I       12:34:35

                                                                 Page 82

1   characterizing that right?

2       A.   Yeah.   I thought it would be best to be

3   consistent with my activity during the course of the

4   lawsuit.

5       Q.   While you're continuing to use Chrome, have you    12:34:52

6   taken any -- have you taken any steps to -- to prevent

7   what you contend is the improper collection of your

8   information?

9       A.   Again, I'll restate.  I haven't changed my

10  behavior.   I've kept my behavior consistent since the    12:35:17

11  lawsuit started.

12      Q.   And by that, I assume that means including the

13  things like extensions, add-ons, settings, et cetera?

14      A.   Yeah, I have not taken additional action or

15  leveraged any of those capabilities.  If you're -- if    12:35:34

16  you're specifically asking me, like, have I installed the

17  ad blocker or the ad -- extension add-on, the answer is

18  no.   I have not made use of those things you mentioned

19  earlier in the call.

20      Q.   Mr. Davis, do you believe that you entered into    12:36:01

21  a contract with Google?

22      A.   The answer is yes.  And not only do I believe

23  that, I believe the Court has affirmed that a contract

24  exists.   Not excluding -- not exclusive to, but I believe

25  including the splash screen, the Google Terms of Service    12:36:23

Page 83

1    and the Google Privacy Policy.

2         I'm not a lawyer.  I'm sure there may be other

3    documents that the Court considers constitution to that

4    contract, but that's my understanding in this case.

5        Q.  Recognizing that you're not a lawyer, but do you     12:36:40

6    have any thoughts, as the person who entered into the

7    contract, of what other documents might be part of it?  I

8    think you just listed the splash screen, the Google Terms

9    of Service and the Google Privacy Policy.

10        You said maybe there are some others.  Any          12:37:00

11   thoughts on what those might be?

12       A.  Oh, yeah, the other one I think that's of

13   interest may be in the health file related to Google

14   Analytics.  I believe it made specific mention of the

15   Google Privacy Policy.  That would be one additional I     12:37:17

16   would add to that list.

17        And it said that Google Analytics would adhere

18   to the Privacy Policy, which clearly states that I am put

19   in control of what information Google collects about me

20   and that we can use Google services to manage our         12:37:38

21   privacy.  And if I choose to browse privately, I can

22   browse the web privately using Chrome in incognito mode.

23        And so the way that I would assert that privacy

24   would be to use incognito mode.

25       Q.  And in connection with this contract, did you     12:38:04

Page 84

1    out this copyright point.  But I -- my understanding is

2    that this is the Terms of Service that were in effect

3    through November -- from March 29th, 2003, to

4    November 4th, 2005.

5         MR. LEE:  And are you making that representation      12:49:40

6    to this witness today?

7         MR. SCHAPIRO:  I'm making that representation to

8    this witness today.  And if I'm wrong, we can, of course,

9    clear it up later, but...

10        MR. LEE:  Okay.                                       12:49:50

11        THE WITNESS:  So if you don't mind, I'd like to

12   read through this just to see if it's familiar to me.

13   There's a lot of information here, and it's quite old.

14        Q.  BY MR. SCHAPIRO:  Of course.  You're entitled.

15        A.  Okay.  Thanks for give me the opportunity to     12:50:54

16   review.

17        Q.  All right.  Do you recall if you agreed to the

18   Google Terms of Service when you opened your account?

19        A.  I would have absolutely had to.  I think it was

20   a prerequisite to get the account, is my recollection.    12:51:08

21        Q.  And in these Terms of Service, did Google

22   represent to you that you could control what information

23   Google collects by enabling private browsing mode?

24        A.  I don't think that was temporarily possible,

25   because I don't think incognito existed at this time,     12:51:30

Page 92

1    when -- when Gmail was first launched.

2        Q.  So I'll ask you to take a look at the Second

3    Amended Complaint again, paragraph 31, please.

4        A.  Paragraph 31?

5        Q.  Yes, sir.                                    12:51:56

6        A.  Okay.  I'm there.

7        Q.  And do you see there's a citation to the Google

8    Privacy Policy?  And this is in the -- to the May -- the

9    May 28th -- I guess in the Complaint it just says,

10   "May 2018 modification to the Privacy Policy."          12:52:32

11          Do you see that?

12       A.  Yes, I see that line.

13       Q.  And do you know whether you reviewed that

14   version of the -- ever reviewed that version of the

15   Privacy Policy?                                        12:52:45

16       A.  I did.

17       Q.  And do you recall whether that was before or

18   after your involvement in this litigation?

19       A.  Yes, I believe I rereviewed it when the

20   incognito feature was launched.  And this seems to be   12:52:58

21   aligned with that timeline.

22       Q.  And did you agree to the Google Privacy Policy?

23          MR. LEE:  Objection to form.

24          THE WITNESS:  I don't know -- I don't know that

25   there's -- like, you agree to Terms of Service; right?   12:53:17

                                                    Page 93

```
 1    But I don't believe there's a -- I just don't understand

 2    the question.  Did I agree to it?

 3        Q.  BY MR. SCHAPIRO:  Did you ever indicate --

 4        A.  Did I agree with the terms?  Or did I -- did I

 5    agree with what they were communicating?  Or are you         12:53:33

 6    asking if I told Google that I agreed to the Privacy

 7    Policy?  I'm just unclear on your question.

 8        Q.  Did you ever indicate to Google in any way that

 9    you did not agree to its Privacy Policy?

10            MR. LEE:  Objection to form.                         12:53:51

11            THE WITNESS:  No.  No.  To my recollection, I

12    never told Google that I disagreed with its statements in

13    its updated Privacy Policy.

14        Q.  BY MR. SCHAPIRO:  Let's take a look at the --

15    what I will represent to you is the updated Privacy          12:54:08

16    Policy referred to in your Complaint, effective from

17    May 28th, 2018, to January 21st, 2019.

18            (Exhibit 9, Google Privacy Policy, marked for

19             identification electronically by counsel.)

20        Q.  BY MR. SCHAPIRO:  And can you tell me what           12:54:36

21    sections in here, if any, you believe promised you that

22    browsing in private mode would prevent Google from

23    receiving your information?

24        A.  One second.  This is the evidence 12 -- or

25    the --                                                       12:55:08
```

Page 94

1   session.

2          THE WITNESS:  And a followup question, when you

3   say "collected," you mean collected by Google back-end

4   services or the browser itself?

5      Q.  BY MR. SCHAPIRO:  By Google in any way.          13:05:50

6      A.  Google in any way.

7          MR. LEE:  Let me object to the incomplete

8   hypothetical.

9          But go ahead.

10          THE WITNESS:  Okay.  So I just want to restate      13:05:56

11   the hypothetical to make sure I have a complete

12   understanding, sir.  If -- the hypothetical proposed is,

13   if, when using Google Chrome in incognito mode, any

14   information that's collected by the browser in that

15   session, if that was discarded at the end of that session   13:06:16

16   by Google, would that alleviate my concerns?  Do I have

17   that roughly right?

18      Q.  BY MR. SCHAPIRO:  Yeah.  The only difference is

19   I said discarded or disassociated, so what I meant there

20   is -- just so there's no lack of clarity about what        13:06:34

21   discarding means, you know.  As you know, as someone in

22   the tech field, something is always -- you know, even

23   when you put something in your trash, it's there

24   somewhere, but you just can't find it.  It's not indexed.

25      A.  I understand.                                       13:06:50

                                                    Page 101

```
 1              I think that would be a step in the right

 2     direction for Google to take.  If hypothetically they

 3     would want to take that action, I -- if you're asking me

 4     should -- because that's my perception of how incognito

 5     should work, so I will respond by saying it would be          13:07:09

 6     great if Google made the button work the way it is

 7     purported to work; right?  And if that is the

 8     hypothetical outcome here, that would be a positive

 9     development for privacy in my opinion.

10          Q.  Do you still have the Privacy Policy in front of      13:07:27

11     you, Exhibit 9?

12          A.  I do.

13          Q.  So you see there's a section down towards the

14     bottom of the first page entitled "Information Google

15     Collects"?                                                     13:07:45

16          A.  Yes, I see that section.

17              I can't see all of it.  The exhibit is over it,

18     but I have a printed copy here as well.

19          Q.  Right.  I agree.  I see the exhibit tab is sort

20     of over the paragraph, but if you just scroll through it,      13:07:58

21     you'll see some relatively large headings.  Do you see --

22          A.  Are you asking about the "Things to create" --

23     "Things you create or provide to us"?

24          Q.  Yes.  And then if you go further down,

25     "Information we collect as you use our services," do you       13:08:22
```

Page 102

1    see that?

2         A.  Yes, I do.

3         Q.  And -- and this lists -- this provides a

4    description of information that Google collects when you

5    browse on a website that uses Google services; correct?        13:08:42

6         A.  To use Google services, which I assume to be

7    their applications, Gmail -- that's what they mean by

8    Google services, correct?

9         Q.  I'll take whatever your understanding of it is.

10        A.  Yes.  Yeah, I understand that when I am              13:09:06

11   authenticated to Google and use their services, I

12   understand this information could be collected, but I

13   don't understand that to be the case when I am told to

14   browse privately in incognito mode, so there's a

15   distinction there; right?                                      13:09:29

16        Q.  So just to be --

17        A.  But if I'm authenticated in a normal browser

18   session using Google services, I understand this

19   information to be collected.

20        Q.  When you say "authenticated," are you              13:09:42

21   distinguishing -- are you saying that you don't believe

22   Google receives this information if you're not signing in

23   and you're just in what you call normal mode?

24        A.  Oh, no.  Sorry.  I misspoke there.  Anytime I'm

25   in normal mode, I would expect Google to collect this         13:09:58

Page 103

1    information.

2        Q.  And other than what you pointed to on the first

3    page, where it says you can also choose to browse the web

4    privately, is there anywhere here in this list of

5    information that is collected by Google anywhere in here        13:10:13

6    that it tells you that incognito mode would prevent

7    Google from receiving the data?

8            MR. LEE:  Objection to form, mischaracterizes

9    prior testimony.  Mr. Davis didn't point to just one

10   sentence in the Privacy Policy in his prior answer.  He        13:10:30

11   pointed out multiple.

12           MR. SCHAPIRO:  Let me rephrase.

13       Q.  Other than the language that you pointed to on

14   the first page in our -- when we were discussing this

15   document earlier, do you see anything in this description      13:10:46

16   of data that is collected by Google that says that

17   private browsing prevents Google from receiving the data?

18       A.  I don't see anything about incognito mode here.

19   However, I would say I don't have to, because the

20   assertion is that I am in control and that this              13:11:10

21   information, which I've already testified earlier, is

22   private information.  If the mechanism that Google

23   provides to me is private browsing in incognito mode, as

24   we just read on the first page, then why would I make an

25   assumption that it's okay to collect this information in     13:11:32

                                                    Page 104

```
 1    incognito mode?  I can't make that connection, if that's

 2    what you're asking me.

 3             MR. SCHAPIRO:  So we've been going about an

 4    hour.  Would this be a decent time to take a lunch break?

 5             MR. LEE:  Yeah.  You read my mind.  Thank you,      13:11:50

 6    Mr. Schapiro.

 7             MR. SCHAPIRO:  While we're still on the record,

 8    James, could you, during the lunch break, send us a scan

 9    of the marked up documents that Mr. --

10             MR. LEE:  Sure.  I can try.  It's not my office,    13:12:03

11    but -- I've got to see who's around.  But, just for the

12    record, there are no notations on the documents.

13    Mr. Davis just highlighted some language on the privacy

14    page, which he's already called out.  If you want me to

15    email that to you or scan that to you, I can, but there's   13:12:20

16    no --

17             MR. SCHAPIRO:  Yes.

18             MR. LEE:  -- notes or anything.

19             I don't want you to have the wrong idea.

20             MR. SCHAPIRO:  I see.  That's fine.  Just -- I      13:12:28

21    don't need the whole documents then.  Just -- if you just

22    send me whatever the highlighted parts are, that would be

23    great.

24             MR. LEE:  Sure.  Okay.  We'll do that.

25             MR. SCHAPIRO:  All right.  I'm happy to go off      13:12:38
```

Page 105

```
 1    incognito would -- I think I heard you say the word

 2    "disable" or "break" the ad tech technology on Any Town's

 3    site.

 4         Q.  BY MR. SCHAPIRO:  Correct.

 5         A.  No, I don't have an expectation that Google      14:24:39

 6    breaks ad tech and ad serving.

 7         Q.  Do you have an expectation that incognito

 8    disables or breaks ad serving by Google -- by Google Ad

 9    Manager?

10         A.  Yes, I have a reasonable expectation of that,    14:25:04

11    because as we stated earlier, in the Google Analytics

12    help file, it states, on Google's own product, that it

13    will adhere to the Google Privacy Policy, and in the

14    Google Privacy Policy, it states that I can browse the

15    web privately using Chrome in incognito mode.             14:25:26

16         So, yes, in the case of Google's own product and

17    the reference to their own Privacy Policy, which it

18    states it adheres to, Google asserts that I am in

19    control, that I can browse privately, and it will not

20    collect the information that I consider private.          14:25:47

21         Q.  Have you ever seen ads on the internet when you

22    are browsing in incognito mode?

23         MR. LEE:  Objection.  Asked and answered.

24         MR. SCHAPIRO:  I don't think he answered about

25    in incognito mode, but anyway.                            14:26:05
```

Page 119

```
 1                THE WITNESS:  I'm happy to answer.

 2                Previously in testimony we talked about ads

 3      served in normal mode as well as ads served -- you'd

 4      asked about ads served in incognito mode, and I've seen

 5      ads served in both, correct.  Again, incognito mode, to    14:26:24

 6      my knowledge, does not break ad tech, so I would have

 7      seen ads served in incognito mode.

 8           Q.  BY MR. SCHAPIRO:  Including ads served up by

 9      Google's ad technology?

10                MR. LEE:  Objection to form, calls for          14:26:45

11      speculation.

12                THE WITNESS:  I agree.  I would have to

13      speculate as to what ad technology a given site was

14      using.  I didn't evaluate that, but I would say that

15      there's probably a strong possibility that ads served to   14:26:56

16      me in incognito mode would have been at some point served

17      by Google Analytics.

18           Q.  BY MR. SCHAPIRO:  And did that fact alert you to

19      the fact that these Google services were in receipt of,

20      for example, the IP address you were using at the time,    14:27:25

21      such that the ad could be served to you?

22                MR. LEE:  Object to the extent you called his

23      speculative answer a fact.  He just told you that he

24      doesn't know.

25                THE WITNESS:  I'll stand by my previous answer.  14:27:41
```

Page 120

1      Q.  BY MR. SCHAPIRO:  Well, I want to be clear I

2  understood your previous answer to be -- and you say

3  there's probably a strong possibility that ads served to

4  you in incognito mode would have been at some point

5  served by Google.                                    14:28:04

6          And my question to you is a followup, which is:

7  If you saw ads served in incognito mode and if you had an

8  understanding that there's a strong probability, given

9  what Google's business is, that some of those ads were

10 served by Google, did that alert you to the possibility   14:28:28

11 that Google was receiving, for example, your IP address

12 in order to serve ads?

13     A.  I understood that they were serving me ads.

14     Q.  How did you think they were serving you ads if

15 they didn't know what your IP address is or -- or what     14:28:49

16 type of client the -- the web page was on?

17          MR. LEE:  Objection -- objection.  Calls for

18 speculation.

19          THE WITNESS:  I don't believe I claimed -- I

20 don't believe I claimed that they didn't have my IP.      14:29:11

21 Like, you said that.  I didn't say that.  Right?  But all

22 I know is that they would have -- they do serve ads

23 still, because you get ads in incognito mode.  I'm not

24 sure how -- what -- how more accurately I can answer the

25 question.                                            14:29:36

Page 121

1    you mind if we take two minutes?

2         MR. SCHAPIRO:  I've been there.  Well, let's

3    make it five.  Let me just finish.  I have two more

4    questions about this document, if you can wait.

5         MR. LEE:  Sure.  Yeah, I can wait.          14:53:35

6    Q.  BY MR. SCHAPIRO:  So the final bullet point

7    there says, "You might see search results and suggestions

8    based on your location or other searches you've done

9    during your current browsing session."

10        Has that ever happened to you while you're in    14:53:47

11   incognito?

12   A.  I understand that to be a consistent statement,

13   yeah.  Like, while I'm still in the same session, if I've

14   shared my location exclusively, which I think it prompts

15   if you want to share your location, to the extent of      14:54:01

16   what's controllable by the user.  Yeah, I don't contest

17   that statement.

18   Q.  And that's not something that you're objecting

19   to in this lawsuit; correct?

20   A.  No, that's correct.                              14:54:15

21   Q.  All right.  Let's go off the record.

22        THE VIDEOGRAPHER:  Going off the record.  The

23   time is 2:54 p.m.

24        (Recess.)

25        THE VIDEOGRAPHER:  Back on the record.  The time   15:04:43

Page 135

```
 1    is 3:05 p.m.

 2        Q.  BY MR. SCHAPIRO:  Mr. Davis, are you aware of

 3    ways in which you can sell your personal information?

 4        A.  Are you talking specifically of my browsing

 5    activity?                                          15:05:06

 6        Q.  I am.

 7        A.  Yes.  I believe there's several different

 8    browsers on the market, like Kylo and Brave, and I think

 9    there's a few others, that will compensate you if you

10    choose to share and sell that information.  I'm generally  15:05:20

11    aware of it.

12        Q.  And approximately when did you first become

13    aware of these websites' practice of paying users a fee

14    for their browsing data?

15        A.  I think it was very close to the time that the   15:05:39

16    suit was filed or started.  Very close to that time.

17        Q.  Have you ever tried to sell any of the

18    information at issue in this lawsuit, like your browsing

19    history, for example?

20        A.  I have not, as of yet.                      15:05:57

21        Q.  And do you have a belief as to how much your

22    personal information is worth?

23        A.  Well, I think -- are you asking in --

24    specifically in this case or in general?

25        Q.  Well, I'm asking in general, but I'm asking   15:06:14
```

Page 136

1    about the type of information that you put at issue in

2    this case.

3        A.  I think it's clear that there is some value to

4    all personal data.  There's whole marketplaces and the

5    fact that a marketplace is compensating people for it.  I        15:06:32

6    haven't really done the analysis to say whether or not

7    those rates that they are providing are fair market or

8    not.  I would have to -- to give you a complete answer, I

9    would have to do a lot more analysis and get pretty

10   specific on, like, which data, et cetera.                        15:06:50

11       Q.  And has the conduct that you're alleging in this

12   lawsuit affected your ability to sell your information in

13   any way?

14       A.  Affected my ability to sell my information?

15   Considering I haven't sold my information, I'm not sure           15:07:07

16   I've fully explored that or not.  So my answer is I don't

17   know.  Because I have not attempted to sell my

18   information, I'm not sure if this has impacted my ability

19   to sell my information or not.

20       Q.  Sure.                                                     15:07:27

21           And has the misconduct that you've alleged

22   against Google in any way affected the value of your

23   information?

24       A.  Can you restate the question?  I'm not sure I

25   follow.                                                          15:07:38

Veritext Legal Solutions
866 299-5127

```
1    STATE OF CALIFORNIA    ) ss:
2    COUNTY OF MARIN        )

3

4           I, LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462, do
5    hereby certify:
6           That the foregoing deposition testimony was
7    taken before me at the time and place therein set forth
8    and at which time the witness was administered the oath;
9           That testimony of the witness and all objections
10   made by counsel at the time of the examination were
11   recorded stenographically by me, and were thereafter
12   transcribed under my direction and supervision, and that
13   the foregoing pages contain a full, true and accurate
14   record of all proceedings and testimony to the best of my
15   skill and ability.
16          I further certify that I am neither counsel for
17   any party to said action, nor am I related to any party
18   to said action, nor am I in any way interested in the
19   outcome thereof.
20          IN WITNESS WHEREOF, I have subscribed my name
21   this 11th day of January, 2022.
22

23

24

25          LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462
```

Page 180

# EXHIBIT 50

# COINMARKETCAP.COM PRIVACY POLICY (Davis Ex. 4)

Cryptos: 16,411    Exchanges: 451    Market Cap: $2,219,000,923,108    24h Vol: $92,841,983,734    Dominance: BTC: 39.3%

# Privacy and Cookie Policy

**Exhibit
GO- 0004**
1/7/2022
Jeremy Davis - V1

At CoinMarketCap, we're committed to protecting and respecting your privacy. This Privacy and Cookie Policy ("Privacy Policy") govern your access to and use of this Website, coinmarketcap.com (the "Website"), and associated content, software, and mobile applications (collectively, the "Service"). This Privacy Policy also includes our Terms of Use which is located at https://coinmarketcap.com/terms.

This Privacy Policy explains when and why we collect personal information about people who visit our Website or use our Services and how we use the personal information, the conditions under which we may disclose your personal information to others, and how we keep personal information secure. This Privacy Policy also explains how we use cookies and similar technology on our Website and in connection with our Services.

We may change this Privacy Policy from time to time so please check this page occasionally to ensure that you are happy with any changes. By using our Website or our Services, you are agreeing to be bound by this Privacy Policy.

## What Information Do We Collect?

CoinMarketCap ("CoinMarketCap", "we" or "us") collects (a) the e-mail addresses of those who communicate with us via e-mail; (b) aggregate information concerning what pages users access or visit; (c) information volunteered by the user (such as survey information and/or site registrations); (d) financial information provided by the user for user syncing and information purposes only; and (e) information related to your use of the Website and/or the mobile application, including IP address, geographic location, and date and time of your request.

## How Do We Use the Information?

We use cookies to offer you a better browsing experience, analyze site traffic, personalize content, and serve targeted advertisements. Read about how we use cookies and how you can control them on our **Privacy Policy**. If you continue to use this site, you consent to our use of cookies.

✕

i. To fulfill a contract or take steps linked to a contract such as processing your registration on our Website or sending you information about changes to our terms or policies;

ii. Where it is necessary for purposes which are in CoinMarketCap's or third parties' legitimate interests such as (a) to provide the information or content you have requested; (b) to contact you about our programs, products, features or services; (c) for internal business purposes such as identification and authentication or customer service, portfolio tracking and user preference syncing between devices; (d) to ensure the security of our Website, by trying to prevent unauthorized or malicious activities; (e) to enforce compliance with our Terms of Use and other policies; (f) to help other organizations (such as copyright owners) to enforce their rights; and (g) to tailor content, advertisements, and offers for you or for other purposes disclosed at the time of collection.
If you do not wish to receive marketing information about our programs, products, features or services, you may send an email to us at legal@coinmarketcap.com.

iii. Where you give us consent, such as (a) where you ask us to send marketing information to you via a medium where we need your consent, including alerts via mobile push notifications; (b) where you give us consent to place cookies and to use similar technologies; and (c) on other occasions where we ask you for consent, for a purpose which we explain at that time.

iv. Where we are legally required to do so. We may also provide access to your personally identifiable information when legally required to do so, to cooperate with police investigations or other legal proceedings, to protect against misuse or unauthorized use of our Website, to limit our legal liability and protect our rights, or to protect the rights, property or safety of visitors of the Website or the public. In those instances, the information is provided only for that purpose.

## How Do We Share Your Information?

We do not share or sell your personal data to other organizations for commercial purposes, except to provide products or services you've requested, when we have your permission, or under the following circumstances:

i. It is necessary to share information in order to investigate, prevent, or take action regarding illegal activities, suspected fraud, situations involving potential threats to the physical safety of any person, violations of Terms of Service, or as otherwise required by law.

We use cookies to offer you a better browsing experience, analyze site traffic, personalize content, and serve targeted advertisements. Read about how we use cookies and how you can control them on our **Privacy Policy**. If you continue to use this site, you consent to our use of cookies.

✕

iii. We provide such information to trusted businesses or persons for the sole purpose of processing personally identifying information on our behalf. When this is done, it is subject to agreements that oblige those parties to process such information only on our instructions and in compliance with this Privacy Policy and appropriate confidentiality and security measures.

iv. We provide such information to third parties who have entered into non-disclosure agreements with us.

v. We provide such information to a company controlled by, or under common control with, CoinMarketCap for any purpose permitted by this Privacy Policy.

vi. We may aggregate, anonymize, and publish data for statistical and research purposes only. For example, we may compile and share information related to the popularity of certain products tracked by users. In any such instance, the information will not be able to be traced back to any individual.

## Cookies and Web Beacons

A cookie is a small amount of data, which often includes an anonymous unique identifier, which is sent to your browser from a Website's computers and stored on your computer's hard drive. Cookies are required to use some CoinMarketCap services. CoinMarketCap and its ad management partners ("Ad Partners") use cookies to record current session information.

Our Ad Partners may also from time to time use web beacons (also known as Internet tags, pixel tags, and clear GIFs). These web beacons are provided by our Ad Partners and allow Ad Partners to obtain information such as the IP address of the computer that downloaded the page on which the beacon appears, the URL of the page on which the beacon appears, the time the page containing the beacon was viewed, the type of browser used to view the page, and the information in cookies set by the Ad Partners. Web beacons enable our Ad Partners to recognize a unique cookie on your web browser, which in turn enables us to learn which advertisements bring users to our Website.

With both cookies and web beacon technology, the information that we collect and share is anonymous and not personally identifiable. It does not contain your name, address, geographic location, telephone number, or e-mail address.

You can opt-out of Google Analytics data collection with the Google Analytics Opt-out Browser Add-on.

You may also wish to refer to this website for additional information about disabling cookies from

We use cookies to offer you a better browsing experience, analyze site traffic, personalize content, and serve targeted advertisements. Read about how we use cookies and how you can control them on our **Privacy Policy**. If you continue to use this site, you consent to our use of cookies.

✕

CoinMarketCap uses third-party vendors and hosting partners to provide the necessary hardware, software, networking, storage, and related technology required to run CoinMarketCap and the related Website and mobile application. CoinMarketCap owns the code, databases, and all rights to the CoinMarketCap Website and mobile application and Services.

## Security

We take precautions to ensure the security of your personal information. However, we cannot guarantee that hackers or unauthorized personnel may gain access to your personal information despite our efforts. You should note that in using the CoinMarketCap service, your information will travel over the Internet and through third-party infrastructures and mobile networks, which are not under our control.

We cannot protect, nor does this Privacy Policy apply to, any information that you transmit to other users. You should never transmit personal or identifying information to other users.

## Retention of Your Personal Information

We retain information as long as it is necessary to provide the Services requested by you and others, subject to any legal obligations to further retain such information. Information associated with your account will generally be kept until it is no longer necessary to provide the Services or until you ask us to delete it or your account is deleted, whichever comes first. Additionally, we may retain information from deleted accounts to comply with the law, prevent fraud, resolve disputes, troubleshoot problems, assist with investigations, enforce the Terms of Use, and take other actions permitted by law. The information we retain will be handled in accordance with this Privacy Policy.

Information about you that is no longer necessary and relevant to provide our Services may be de-identified and aggregated with other non-personal data to provide insights which are commercially valuable to CoinMarketCap, such as statistics related to the use of CoinMarketCap's Website and application.

## Children

The CoinMarketCap service is not intended for children under the age of 16, and we do not knowingly collect information from children under the age of 16.

Children aged 16 or younger should not submit any personal information without the permission of

We use cookies to offer you a better browsing experience, analyze site traffic, personalize content, and serve targeted advertisements. Read about how we use cookies and how you can control them on our **Privacy Policy**. If you continue to use this site, you consent to our use of cookies.

## Consent to Worldwide Transfer and Processing of Personal Information

CoinMarketCap is located in the United States. and the terms of this Privacy Policy and the related Terms of Use shall be governed by and construed in accordance with U.S. federal law and the laws of Delaware, without regard to any principles of conflicts of law. If you are not located in the United States, by accessing the Website and Services and providing personal information through it, you agree and acknowledge and consent to the collection, maintenance, processing, and transfer of such information in and to the United States and other countries and territories. These other jurisdictions may have different privacy laws from your home jurisdiction and provide different levels of protection of personal information. CoinMarketCap does have processes and procedures in place to provide adequate levels of protection to protect the transfer of data from the European Union. You agree that the terms of this Privacy Policy and the Terms of Use will apply and you consent to the transmission and processing of your personal information in any jurisdiction.

## EU and EEA Users' Rights

If you are habitually located in the European Union or European Economic Area, you generally have the right to access, rectify, download or erase your information, as well as the right to restrict and object to certain processing of your information. While some of these rights apply generally, certain rights apply only in certain limited circumstances. We briefly describe these rights below:

You have the right to access your personal data and, if necessary, have it amended, deleted or restricted. In certain instances, you may have the right to the portability of your data. You can also ask us to not send marketing communications and not to use your personal data when we carry out profiling for direct marketing purposes. You can opt out of receiving e-mail newsletters and other marketing communications by following the opt-out instructions provided to you in those e-mails. Transactional account messages will be unaffected even if you opt out from marketing communications.

## Complaints

Should you wish to raise a concern about our use of your information (and without prejudice to any other rights you may have), you have the right to do so with your local supervisory authority, although we hope that we can assist with any queries or concerns you may have about our use of your personal data.

✕

We use cookies to offer you a better browsing experience, analyze site traffic, personalize content, and serve targeted advertisements. Read about how we use cookies and how you can control them on our **Privacy Policy**. If you continue to use this site, you consent to our use of cookies.

In the last twelve months, CoinMarketCap may have collected, used, and shared, for business purposes, personal information about you as described in this Privacy Policy. Each category of data may be used by CoinMarketCap or shared with third parties also as described in this Privacy Policy. Residents of California have the right to request access to and deletion of the information CoinMarketCap holds about them. Such requests may be submitted by email to legal@coinmarketcap.com or by mail to CoinMarketCap OpCo LLC. CoinMarketCap will not sell your personal information without your consent. CoinMarketCap will not discriminate against you for exercising your rights under CCPA. Specifically, we will not:

- Deny access to our Services;

- Charge a different rate for the use of our Services; or

- Provide a different quality of service.

## Changes

CoinMarketCap may periodically update this policy. We may notify you about significant changes in the way we treat personal information by placing a prominent notice on our Website so please check back occasionally to ensure that you agree with the changes. If you do not, do not use the Website, the application or our Services.

## Questions

Any questions about this Privacy Policy should be addressed to this e-mail address: legal@coinmarketcap.com.

Effective Date: January 1st, 2020.

We use cookies to offer you a better browsing experience, analyze site traffic, personalize content, and serve targeted advertisements. Read about how we use cookies and how you can control them on our **Privacy Policy**. If you continue to use this site, you consent to our use of cookies.

Crypto API

Crypto Indices

Interest

Jobs Board

Sitemap

Terms of use

Privacy Policy

Community Rules

Disclaimer

Methodology

Careers      We're hiring!

## Support

Request Form

Contact Support

FAQ

Glossary

## Socials

Facebook

Twitter

Telegram

Instagram

Interactive Chat

© 2022 CoinMarketCap. All rights reserved

We use cookies to offer you a better browsing experience, analyze site traffic, personalize content, and serve targeted advertisements. Read about how we use cookies and how you can control them on our **Privacy Policy**. If you continue to use this site, you consent to our use of cookies.