# PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT

# Redacted Version of Document Sought to be Sealed

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 629-9040
alanderson@bsfllp.com

*Attorneys for Plaintiffs*

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated, | Case No.:  4:20-cv-03664-YGR-SVK |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT** |
| v. | Judge: Hon. Yvonne Gonzalez Rogers |
| GOOGLE LLC, | Date: May 12, 2023 |
| Defendant. | Time: 1:00 p.m. |
| | Location: Courtroom 1 – 4th Floor |

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** ................................................................................................ 1

II.  **ARGUMENT** ..................................................................................................... 2

   A.   Triable Issues as to Article III Standing. ..................................................... 2

   B.   Triable Issues as to the Contract Claim and Google's Express Consent Defense. ................. 4

      1.   Law of the case undermines Google's express consent defense. ....................... 5

      2.   The evidence otherwise creates triable issues as to express consent ............... 7

      3.   The sanctions orders undermine Google's express consent defense. ............... 14

   C.   Triable Issues as to the Federal Wiretap Claim. ........................................ 15

      1.   The consent exception is inapplicable. .................................................... 15

      2.   The ordinary course of business exception is inapplicable. ........................ 17

      3.   Google intercepted the "contents" of communications. .............................. 18

   D.   Triable Issues as to the CIPA Claim. ....................................................... 20

   E.   Triable Issues as to the CDAFA Claim. ................................................... 21

   F.   Triable Issues as to Invasion of Privacy and Intrusion Upon Seclusion. ............... 22

   G.   Triable Issues as to the UCL Claim. ........................................................ 24

      1.   Plaintiffs have UCL standing. .............................................................. 24

      2.   Retrospective money damages are not an adequate remedy against future harm. ......... 25

III. **CONCLUSION** ............................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amtower v. Photon Dynamics, Inc.*,
  158 Cal. App. 4th 1582 (2008) ................................................................8

*Baldwin v. Cont'l Cas. Co.*,
  2004 WL 2254938 (N.D. Cal. Oct. 5, 2004).................................................7

*Block v. eBay, Inc.*,
  747 F.3d 1135 (9th Cir. 2014) ..............................................................10

*Brinkley v. Monterey Fin. Servs., LLC*,
  2020 WL 12991079 (S.D. Cal. Jan. 17, 2020)...........................................20

*Cahen v. Toyota Motor*,
  717 F. App'x 720 (9th Cir. 2017) .............................................................3

*Cal. v. Ross*,
  362 F. Supp. 3d 749 (N.D. Cal. 2018) ......................................................3

*Calhoun v. Google, LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ......................................................4

*Calhoun v. Google, LLC*,
  2022 WL 18107184 (N.D. Cal. Dec. 12, 2022) (Gonzalez Rogers, J.) .......1, 4, 6, 7

*Callahan v. PeopleConnect, Inc.*,
  2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) .............................................24

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014).............................................5, 11, 14, 21

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) .................................................................3

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015).................................................21, 24

*Clark v. Am. Honda Motor Co., Inc.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021) ....................................................25

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................................................22

*In re Facebook, Inc. Internet Tracking*,
  956 F.3d 589 (9th Cir. 2020) ......................................................... *passim*

ii

*Flanagan v. Flanagan,*
    27 Cal.4th 766 (2002) ..................................................................................................20

*Ghazarian v. Magellan Health, Inc.,*
    53 Cal. App. 5th 171 (2020) ........................................................................................25

*In re Google Inc.,*
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................................................6, 18

*In re Google Inc.,*
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................................17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
    806 F.3d 125 (3d Cir. 2015) ........................................................................................19

*In re Google Location History Litig.,*
    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................................11, 23

*In re Google Referrer Header,*
    465 F. Supp. 3d 999 (N.D. Cal. 2020) ..........................................................................3, 22

*In re Google RTB Consumer Priv. Litig.,*
    606 F. Supp. 3d 935 (N.D. Cal. 2022) (Gonzalez Rogers, J.) ......................... *passim*

*Griffey v. Magellan Health Inc.,*
    2022 WL 1811165 (D. Az. June 2, 2022) ....................................................................24

*Hammerling v. Google LLC,*
    2022 WL 2812188 (N.D. Cal. July 18, 2022) .................................................11, 19, 23

*Hammerling v. Google LLC,*
    2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ............................................................10

*Hart v. TWC Prod. & Tech., LLC,*
    526 F. Supp. 3d 592 (N.D. Cal. 2021) ........................................................................22

*I.C. v. Zynga, Inc.,*
    2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) ..............................................................3

*Kenyon v. W. Union Tel. Co.,*
    100 Cal. 454 (1893) ......................................................................................................3

*Klein v. Facebook, Inc.,*
    580 F. Supp. 3d 743 (N.D. Cal. 2022) ........................................................................24

*Lewis v. YouTube, LLC,*
    244 Cal. App. 4th 118 (2015) ......................................................................................15

*Low v. LinkedIn Corp.*,
  2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...................................................................3

*Marchand v. Northrop Grumman*,
  2017 WL 2633132 (N.D. Cal. Jun 19, 2017) ...................................................................7

*McDonald v. Kiloo ApS*,
  395 F. Supp. 3d 1022 (N.D. Cal. 2019) .........................................................................23

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) .......................................................................................................25

*In re Meta Pixel Healthcare Litig.*,
  2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ........................................................17, 18

*Meta Platforms, Inc. v. BrandTotal*,
  605 F. Supp. 3d 1218 (N.D. Cal. 2022) .........................................................................21

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ...............................................................23

*New Show Studios LLC v. Needle*,
  2014 WL 2988271 (N.D. Cal. June 30, 2014) ................................................................21

*Nowak v. Zapo, Inc.*,
  2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ...............................................................22

*Old Person v. Brown*,
  312 F.3d 1036 (9th Cir. 2002) .....................................................................................6, 10

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...............................................................2, 11, 22

*Pardi v. Kaiser Permanente Hosps.*,
  389 F.3d 840 (9th Cir. 2004) ............................................................................................7

*In re Pharmatrak, Inc.*,
  329 F.3d 9 (1st Cir. 2003) .................................................................................................6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  214 F. Supp. 3d 808 (N.D. Cal. 2016) ...........................................................................16

*Planned Parenthood v. Ctr. for Med. Progress*,
  402 F. Supp. 3d 615 (N.D. Cal. 2019) ...........................................................................17

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) .....................................................16, 17, 20

iv

*Rodriguez v. Google LLC*,
   2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) ...............................................8, 11

*Rodriguez v. Google LLC*,
   2021 WL 214552 (N.D. Cal. Jan. 25, 2022) ............................................................13

*Safari Club Int'l v. Rudolph*,
   862 F.3d 1113 (9th Cir. 2017) ...............................................................................20

*Sanchez v. Los Angeles Dep't of Transportation*,
   2021 WL 1220690 (C.D. Cal. Feb. 23, 2021)........................................................23

*Shaw v. Regents of Univ. of Cal.*,
   58 Cal. App. 4th 44 (1997). ....................................................................................7

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) ...............................................................................6

*Sussman v. Am. Broadcasting Co., Inc.*,
   186 F.3d 1200 (9th Cir. 1999) ...............................................................................17

*Tamarind Lithography Workshop v. Sanders*,
   143 Cal. App. 3d 571 (1983) .................................................................................15

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)..............................................................................................3

*Travelers Indem. Co. of Conn. v. Premier Organics*,
   2017 WL 4355043 (N.D. Cal. Sept. 29, 2017) (Gonzalez Rogers, J.)......................8

*Treviller v. Goldstein*,
   2019 WL 1454171 (N.D. Cal. April 2, 2019) (Gonzales Rogers, J.) .....................23

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) ...................................................................................6

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) .................................................................................21

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) ...........................................................................19, 23

*United States v. Reed*,
   575 F.3d 900 (9th Cir. 2009) .................................................................................18

*Wesch v. Yodlee, Inc.*,
   2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) .......................................................22

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) .................................................................2

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...............................................................19

*Zaratzian v. Abadir*,
   2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014)..........................................................7

*Zeiger v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021) .........................................................15, 25

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .............................................................................19

**Statutes**

18 U.S.C. § 2510(8) ...................................................................................................18

18 U.S.C. § 2511(2)(d) ..............................................................................................16

Cal. Penal Code § 502(b)(1) ......................................................................................20

Cal. Penal Code § 632(c) ...........................................................................................20

## I.    INTRODUCTION

Google's own employees described Incognito—its supposedly "private" browsing mode—as "***a problem of professional ethics and basic honesty***." PAF12. Google's Motion ignores this damning evidence, arguing that it is entitled to summary judgment on all claims because its disclosures "mak[e] clear" that Google collects and uses private browsing data. Mot. at 11. To win, Google must prove that "no reasonable jury could find" otherwise. *Calhoun v. Google, LLC*, 2022 WL 18107184, at *7 (N.D. Cal. Dec. 12, 2022) (Gonzalez Rogers, J.). Google cannot begin to bear the weight of that heavy burden—especially when Google's own employees admit that Incognito is "***effectively a lie***." PAF12.

Google's legal arguments fare no better. The Court has twice rejected Google's principal argument—raised here for the third time—that "Google's Privacy Policy . . . expressly disclosed the challenged data collection and use." Mot. at 1. To the contrary, based on the form contract (which includes the Privacy Policy) users "***could easily conclude that Google promised Plaintiffs that using 'private browsing mode' would prevent Google from collecting Plaintiffs' data.***" Dkt. 363 (Order Denying MTD SAC) at 21 (citing Dkt. 113 (Order denying MTD FAC)). Rather than acknowledge or distinguish the Court's prior orders, Google's Motion simply ignores them.

The prior orders were right, as Plaintiffs have uncovered scores of evidence where Google's own employees denounced Google's collection and use of private browsing data, thus agreeing with Plaintiffs' (and the prior orders') interpretation of Google's disclosures. For example:

- Google employees acknowledged that Google "***must enter a contract with the user regarding what happens when they enter Incognito mode,***" where one of Google's "***[k]ey promises***" was "***don't collect data from the Incognito session.***" PAF20.

- Google did not "actually deliver[] on the ***promise of being private***" because Incognito is "***not private in the ways that many users want, that is, as to Google***"; Google needed to be more "honest" and "clear that Incognito is intended for local device privacy." PAF20.

- Changes were needed to stop "***deceiv[ing] users***," including to address the "***common misconception***" that "***private mode***" "***hides browsing activity from Google,***" where users' misconceptions "flow directly" from Google's representations. PAF7, 9, 12.

- There was an internal push to "rename" and "rebrand" Incognito and to change Google's disclosures, particularly to add "Google" to the Splash Screen to clarify that "***You are NOT protected from Google***" and to remove "***the word 'private,***'" which poses "***the risk of overestimating the protection Incognito offers***." PAF13, 21.

1

- Recognition of what Google internally called the "***Incognito Problem***" made its way to Google's top executives, with one complaining to Google CEO Sundar Pichai that Incognito is "***not truly private.***" PAF19, 20.

- But Google never made any of these changes. CEO Pichai decided that he "***didn't want to put incognito under the spotlight,***" and Google prohibited employees from "launch[ing] anything that negatively impacts revenue" because "***[u]ser benefit alone is not sufficient justification for a revenue loss.***" PAF22.

- Google instead continued collecting private browsing data "***without consent,***" deceiving (according to its own counsel) at least ████████████ PAF10, 11.

Backed into a corner, Google resorts to rewriting the law, arguing that its misappropriation of private browsing data is excused because the data is supposedly "unidentified." Mot. at 9, 23. There are many problems with this argument. First, it is not the law. The right to privacy is not limited to only "identified" data. But second, even if it were, a jury could find that this data *is* identifying, particularly where Google's own Motion concedes that it is "keyed by (i.e., ***associated with) unique identifiers***," and, as a result of the sanctions orders, Plaintiffs have learned that Google stores private browsing data alongside regular browsing data in the same exact log. PAF4. Against that backdrop, it is no wonder Google employees admit that "***we would never sa[y] that Google doesn't know who you are while you're Incognito.***" PAF24.

The Court's earlier rulings, and the evidence revealed since then through years of tireless fact and expert discovery, raise at least a triable issue of fact on Google's claim that the contract "expressly disclosed" the at-issue conduct. Summary judgment is unwarranted because "a reasonable jury could find that [Google's] Privacy Policy provisions . . . do not obtain knowing consent for" these practices. *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1074 (N.D. Cal. 2016). For these reasons and the reasons below, all claims should proceed to trial in November.

## II.    ARGUMENT

### A.    Triable Issues as to Article III Standing.

Google's standing challenge fails because there is at least a triable issue as to whether Google had express permission to collect users' private browsing data. Google's Motion concedes as much, arguing that Plaintiffs lack standing because they cannot "overcome Google's ***accurate*** disclosures." Mot. at 1. The implication of Google's argument is that, if a jury agrees with Plaintiffs' interpretation of the disclosures, then Plaintiffs have met their burden. At best, Google's argument, which turns on

2

its interpretation of the contract, raises "disputed facts" that "preclude[]" summary judgment. *Cal.*
*v. Ross*, 362 F. Supp. 3d 749, 755-56 (N.D. Cal. 2018).

In a slight twist on the same argument, Google suggests that Plaintiffs must prove that
Google "links the at-issue data to their identities." Mot. at 10. But Google already made this
argument in *In re Google Referrer Header*, and the court correctly rejected it. 465 F. Supp. 3d 999,
1009-10 (N.D. Cal. 2020). "[I]nformation need not be personally identifying to be private." *Id.* By
way of analogy, a shopper who was filmed changing in a dressing room would have standing to sue
for invasion of privacy even if the store blurred out her face.

The unauthorized intrusion is the violation that creates standing to sue regardless of
identification or further harm. "[A] concrete injury for Article III standing purposes occurs when
Google . . . tracks a person's internet browser activity without authorization." *Campbell v. Facebook,*
*Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020). The Wiretap Act and CIPA "codify a substantive right to
privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re*
*Facebook, Inc. Internet Tracking*, 956 F.3d 589, 598 (9th Cir. 2020). These statutes "bear a close
relationship to traditional privacy torts such as unreasonable intrusion upon seclusion," *Referrer*
*Header*, 465 F. Supp. 3d at 1010, which is a "harm[] traditionally recognized as providing a basis
for lawsuits in American courts," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2197, 2204 (2021).
Similarly, "[t]he failure to perform a duty required by contract is a legal wrong, independently of
actual damage sustained." *Kenyon v. W. Union Tel. Co.*, 100 Cal. 454, 458 (1893). Mot. at 10.[1]

Even if standing turned on whether the data is identifying (which is not the law), the Motion
should still be denied because a jury could find that private browsing data is identifying. The Google

---

[1] Google's cases are inapposite. Mot. at 10. *I.C. v. Zynga, Inc.* involved an accidental data breach of
non-private data, rather than a breach of a contractual promise not to collect private data. 2022 WL
2252636, at *7 (N.D. Cal. Apr. 29, 2022) (Gonzalez, Rogers, J.). *Cahen v. Toyota Motor* concerned
the "aggregate collection and storage of non-individually identifiable driving history," and unlike
here (where Google's own employees have admitted that the data is identifying), there were "no
specific allegations as to why this data is sensitive or individually identifiable." 717 F. App'x 720,
724 (9th Cir. 2017). The other cases are further afield. In *Low v. LinkedIn Corp.*, the plaintiff alleged
that LinkedIn disclosed his browsing history to third parties, and yet he failed to even "articulate . . .
what information had actually been transmitted to third parties [and] how it had been transferred."
2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011).

Privacy Policy throughout the class period defined "personal information" to include "data that ***can*** be reasonably linked to" an individual. PAF23. Google employees admit that private browsing data is identifying, triggering (at a minimum) a disputed issue of fact. For example (PAF24):

- The "guarantees" that "Google doesn't collect personal information while in private mode . . . ***aren't true***."

- "Incognito mode . . . ***does not provide anonymity/invisibility towards . . . Google***."

- "[T]he idea that users [are] not identifiable if one were to use all of the data we have available ***is laughable***."

- Any notion of "unlinkability" is "clearly ***impossible and provably does not work***."

Plaintiffs' expert Jonathan Hochman also analyzed data produced in this case and explained how it is keyed to unique identifiers that are identifying. PAF25. And through sanctions, Plaintiffs found evidence that Google stores private browsing data ***alongside*** regular browsing data that Google deems "authenticated." PAF4. This practice alone undermines Google's assertion that it uses "technical safeguards preventing [] linking," and in itself defeats Google's Motion. Mot. at 9.

Finally, yet another basis for standing, which Google barely addresses, is Plaintiffs' "stake" in Google's "unjustly earned profits." *Facebook Tracking*, 956 F.3d at 600.[2] This Court has already rejected Google's damages *Daubert* motion in full, paving the way for a jury to find that Google was unjustly enriched by billions from the practices at issue in this case. Dkt. 803.

**B.    Triable Issues as to the Contract Claim and Google's Express Consent Defense.**

Google incorrectly states that Plaintiffs must prove their "lack of consent" for their CIPA, CDAFA, and intrusion upon seclusion claims. Mot. at 10. For those claims, express "consent is a ***defense***," as Google previously admitted (Dkt. 82 at 4),[3] and "it is ***Google's burden*** to prove consent." *Calhoun v. Google*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021); Dkt. 113 at 14.

Google cannot meet its summary judgment burden to prove that "no reasonable jury could find" for Plaintiffs. *Calhoun*, 2022 WL 18107184, at *7. To establish express consent, Google must

---

[2] The lack of a certified Rule 23(b)(3) damages class makes no difference. Mot. at 9 n.7. The named Plaintiffs are seeking damages, and so too may other class members in their individual capacities. Regardless, everyone also seeks injunctive relief to foreclose Google's future unjust enrichment.

[3] *See also Calhoun*, 2022 WL 18107184, at *8 ("consent is a *defense* to . . . CIPA [and] intrusion upon seclusion").

4

prove that it "explicitly notif[ied]" users of the "specific practice[s]" that Plaintiffs challenge— Google's collection, tracking, and use of private browsing information. *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (Gonzalez Rogers, J.); *Campbell v. Facebook*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014). A reasonable jury could readily find that Google did not disclose these specific practices, particularly where (1) the Court has rejected Google's express consent arguments, based on the same contract documents, (2) Plaintiffs uncovered key Google admissions supporting their interpretation, and (3) Google has been sanctioned for concealing how it tracks, stores, and uses the data.

        1.   <u>Law of the case undermines Google's express consent defense.</u>

In its first motion to dismiss, Google primarily argued that the Privacy Policy discloses that Google collects and uses private browsing data, an argument Google repeats in the current Motion:

| Google's Initial Motion to Dismiss | Google's Motion for Summary Judgment |
|---|---|
| Google's Privacy Policy—to which Plaintiffs consented when they signed up for their Google accounts—explains that Google receives exactly this Data. Dkt. 82 at 2. | Plaintiffs consented to Google's Privacy Policy—which expressly disclosed the challenged data collection and use. Mot. at 1. |

The Court assessed the specific Privacy Policy provision Google identified (and that Google relies on again now), and the Court ruled that "[t]his general [data collection] disclosure never mentions private browsing. Nor does it explain that Google collects this data from users in private browsing mode." Dkt. 113 at 16. "***Google did not notify users that Google engages in the alleged data collection while the user is in private browsing mode***," and therefore "Google cannot show that Plaintiffs expressly consented." *Id*. at 20.  Plaintiffs then added their contract claim, and Google filed another motion to dismiss, contending (as it does now) that even if Google failed to disclose its collection and use of private browsing data, it nowhere made a contractual promise not to collect and use the data. Google's current argument repeats that prior one nearly verbatim.

| Google's Second Motion to Dismiss | Google's Motion for Summary Judgment |
|---|---|
| Nowhere in the documents that Plaintiffs claim comprise their contract did Google make the promise it allegedly breached—namely, that "Google would not collect and use private browsing data." Dkt. 164 at 1. | None of the documents Plaintiffs claim comprise their contract contains the purported "promis[e] that 'private browsing mode' would prevent Google from collecting users' data." Mot. at 12. |

The Court rejected Google's argument again, holding that "a reasonable user, reading Google's contract with Plaintiffs as a whole, ***could easily conclude that Google promised Plaintiffs that using 'private browsing mode' would prevent Google from collecting Plaintiffs' data***." Dkt. 363 at 21.

These prior rulings are law of the case. "Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Here, the same court has already held that a reasonable user could interpret the form contract to mean that Google would not collect and use private browsing data. Google has not identified any new factual issues relevant to interpreting the contract, nor could Google. As this Court cautioned: "If you take a position at summary judgment that a term is unambiguous such that the Court can decide it as a matter of law, ***you will be excluded at trial from offering extrinsic evidence to interpret that claim***." Feb. 14, 2023 Tr. 39:14–18. Google is limited to the contract documents, just as it was on the motions to dismiss when it lost on the same issue.

Google relies heavily on *Calhoun*, which is not "controlling" and therefore irrelevant for law of the case.[4] 2022 WL 18107184. More importantly, this Court has explained why *Calhoun* is distinguishable: "***the absolute critical difference, is that here they were incognito mode, there they were not***." Feb. 14, 2023 Tr. 8:12–14. Google cannot prove express consent for collecting ***signed out, private*** browsing data through a case that addressed ***signed-in, regular*** browsing data. SUF9.

Google's reliance on *Calhoun* overlooks the well-settled principle that consent is "not an all-or-nothing proposition.'" *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). Rather, "a party may consent to the interception of . . . only a subset of its communications." *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003). While Google might disclose that it collects data from regular browsing users, Google is ==making privacy worse by collecting Incognito when the user has clearly told Chrome that it wants to be private."== PAF20. Google used private browsing as

---

[4] New cases must be "controlling" to trigger the exception to law of the case. *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002). The only other case Google cites is the unpublished decision in *Smith v. Facebook, Inc.*, which Google already relied on at the pleadings stage. Mot. at 12; Dkt. 82 at 10; 745 F. App'x 8 (9th Cir. 2018). In *Smith*, the collected data was not flagged as sensitive by Facebook, and the "practice complained of" was disclosed in the contract. *Id.* at 9.

6

1  a Trojan horse, enticing users to give up their data with false promises like "no one sees anything

2  about you," while tagging the data as "private" and using that private data to feed its advertising

3  algorithms—practices not at issue in *Calhoun*. PAF4, 7, 27.

4                    2.  <u>The evidence otherwise creates triable issues as to express consent.</u>

5          Even if the Court is inclined to revisit the prior rulings, it should still deny summary judgment

6  because Google cannot prove "the absence of a genuine issue of material fact regarding [Plaintiffs']

7  consent to the interception[s]." *Zaratzian v. Abadir*, 2014 WL 4467919, at *9 (S.D.N.Y. Sept. 2,

8  2014) (denying summary judgment on wiretap claim). Similarly, where a contract is "susceptible to

9  more than one reasonable interpretation, summary judgment is ordinarily improper." *Pardi v. Kaiser*

10  *Permanente Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (vacating summary judgment on contract

11  claim). The Google form contract is susceptible to Plaintiffs' interpretation (at a minimum),

12  including because "any ambiguity . . . will be interpreted against the drafter." 11 Williston on

13  Contracts § 32:12; *see Baldwin v. Cont'l Cas. Co.*, 2004 WL 2254938, at *6 (N.D. Cal. Oct. 5, 2004)

14  (invoking *contra proferentum* to deny summary judgment on contract claim).

15                    a.  *Incognito Splash Screen*

16          The Court should (again) reject Google's argument that the Splash Screen is not part of the

17  contract. Mot. at 16. As before, "[a] reasonable user could read Google's contract with Plaintiffs as

18  incorporating the Incognito Splash Screen." Dkt. 363 at 14. The "contract need not recite that it

19  'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'"

20  *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997). Here, the Chrome Privacy Notice

21  (which Google concedes is part of the contract (Mot. at 13)) has throughout the class period invited

22  users to "us[e] incognito mode," thus "guid[ing] the reader" to the Splash Screen. SUF23; *Facebook*

23  *Tracking*, 956 F.3d at 610. Similarly, the Privacy Policy (also indisputably part of the contract) has

24  since May 2018 invited users to "choose to browse the web privately using Chrome in Incognito

25  mode." PAF3. Google makes it impossible to use Incognito without viewing the Splash Screen;

26  consequently, inviting Plaintiffs to use Incognito necessarily "direct[s]" them to the Splash Screen,

27  which "is enough" for incorporation. *Marchand v. Northrop Grumman*, 2017 WL 2633132, at *5

28  (N.D. Cal. Jun 19, 2017) (document incorporated although contract referred to it by the wrong

7

name).[5] But even if the Splash Screen is not incorporated, it is relevant to interpreting the contract. To decide whether a provision is ambiguous, courts "consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation." *Travelers Indem. Co. of Conn. v. Premier Organics*, 2017 WL 4355043, at *2 (N.D. Cal. Sept. 29, 2017) (Gonzalez Rogers, J.).

Numerous parts of the Splash Screen undermine Google's argument that the contract clearly disclosed its collection and use of private browsing data. For example, "[b]ased on the omission of Google from the list of entities that can see a user's activity, a user might have reasonably concluded that Google would not see his or her activity." Dkt. 113 at 17. In an effort to not be misleading, *Google employees even advocated to add "Google" to the Splash Screen to show that "You are NOT protected from Google*." PAF21. Google decided against doing so. Yet now, rather than defend the actual Splash Screen, Google's Motion rewrites it. The red words in this statement (taken from Google's Motion (at 6)) are not on the actual Splash Screen: "The [Splash] Screen also makes clear . . . 'your activity may still be visible to' **entities online, including** websites, employers, and ISPs." Putting aside Google's temerity, Google's sleight-of-hand only underscores the problem by conceding the actual text is defective.

Google's reliance on the Amir survey (Mot. at 14) is improper under the Court's directive that a party who argues a disclosure is unambiguous may not offer extrinsic evidence. Regardless, the surveys at best create a triable issue of fact. Plaintiffs will demonstrate that Amir admittedly did not ask users about "consent" (SUF85), and that he failed to survey the "specific practice" challenged here (namely, Google's collection of private browsing data from users visiting *non-Google* websites while *signed out* of Google). Correcting Amir's errors, Plaintiffs' expert Mark Keegan found that

---

[5] Google's cases are distinguishable. The problem in *Facebook Tracking* was that the plaintiffs sought to incorporate a *subsequent* version of the document that was incorporated into the contract. *See* 956 F.3d at 610. In *Amtower v. Photon Dynamics, Inc.*, the court rejected the defendant's argument that the parties' contract incorporated an entirely "separate contract that plaintiff did not solicit and to which he was not a party." 158 Cal. App. 4th 1582, 1609 (2008). And *Rodriguez v. Google LLC*, suggested that the "mere fact of a hyperlink" is insufficient. 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021). Plaintiffs' arguments here are based on more than a hyperlink, and instead calculated Google statements guiding users to use "private" browsing.

1    ███████ of users believed that Google did not collect private browsing data or that Google had no

2    consent to collect that data. SUF85. Google falsely summarizes Keegan (again).[6]

3         Google's express consent defense is also undermined by the Splash Screen's representation

4    that "Now you can browse privately, and other people who use this device won't see your activity."

5    According to Google, this sentence "clarifies that Incognito mode is about privacy from other users

6    of the same device, not privacy from Google." Dkt. 113 at 18. But "a reasonable user could have

7    read this sentence to state that Incognito mode provided privacy from Google [now you can browse

8    privately] *and* privacy from other people who use the same device." Dkt. 113 at 18. They are not

9    mutually exclusive. Google employees proposed removing this phrase from the Screen because *"the*

10   *word 'private'" poses "the risk of overestimating the protection Incognito offers*," where Google

11   internally defines "privacy" to include "what you store or don't store *with Google*." PAF13, 16.

12   Employees likewise lamented "the *deep-seated and challenging misconception around not*

13   *understanding that Incognito is about local privacy*." PAF13. These admissions not only

14   undermine Google's argument that it "makes clear" that Incognito is limited to "local" privacy, Mot.

15   at 6, but indisputably create a genuine issue of material fact.

16        The Splash Screen also states that "Chrome won't save . . . your browsing history [or] cookies

17   and site data." Translated using Google's dictionary, this means that Chrome will not "keep" user

18   data about "the sites you interact with/the links you click" by "recording it to a storage location."

19   PAF17. In fact, Chrome saves users' private browsing data "to a storage location": Google's server-

20   side logs, which include ███████████ SUF47, 50, 59. Google tries to cabin its "Chrome

21   won't save" promise to a storage location on the device, but nothing on the Splash Screen so limits

22   it. Furthermore, "a user might reasonably associate Chrome with Google because Chrome is

23   Google's browser." Dkt. 113 at 18. Discovery has proven that even Google's employees conflate

24

25   ─────────────────
     [6] In opposing class certification, Google misrepresented the Keegan survey, suggesting that "only . .

26   . ████████ [] indicated a belief that they have not given consent," and ignoring the other categories
     of respondents, including those who did not even know about Google's collection of private browsing

27   data (██████) and those who only consented to that collection for their visits to Google websites
     (█████). Dkt. 659-3 at 4. Google's Motion (at 14 n.13) likewise misrepresents the survey, again

28   ignoring other categories of respondents whose answers support Plaintiffs.

the two, thinking (incorrectly) that Incognito means that "Google doesn't store" browsing data. PAF18.

Google's case law also supports Plaintiffs. The court in *Hammerling v. Google LLC* **agreed with the prior findings in this case**: "In [*Brown*,] Google had made express promises that it would not save particular data while users were in Incognito mode. *See, e.g.*, . . . ('Chrome won't save ... [y]our browsing history [or] [c]ookies and site data.')." 2022 WL 17365255, at *11 n.16 (N.D. Cal. Dec. 1, 2022). Similarly, in *Block v. eBay, Inc.*, the court explained that provisions with language like "you will not" or "we will" are enforceable. 747 F.3d 1135, 1139 (9th Cir. 2014). Plaintiffs here rely on similar provisions (*e.g.*, "Chrome won't save").

Finally, a reasonable jury could interpret the Incognito name and icon to mean that Google would not collect, save, or use private browsing information. Google employees admit that users' "**misconceptions flow directly from the framing of the feature as 'Incognito' (or, for other browsers, 'Private')**," and that "people pay attention to the name 'Incognito' and the Spy Guy icon, and people draw incorrect conclusions from there." PAF9.

### b. *Privacy Policy*

The Google Privacy Policy (which Google concedes is part of the contract (Mot. at 13)) has since May 2018 "presented Incognito mode as a way that users can control the information that Google collects." Dkt. 113 at 19:

- [A]cross our services, you can adjust your privacy settings to **control what we collect** and how your information is used.
- You can use our services in a variety of ways to manage your privacy. For example, . . . **[y]ou can [] choose to browse the web privately using Chrome in Incognito mode**.
- Our services include . . . [p]roducts that are integrated into third-party apps and sites.

SUF20, PAF2, Broome Exs. 100-12. The Court already rejected Google's argument that no reasonable person could interpret these provisions as Plaintiffs do. *See* Dkt. 113 at 18, 29; Dkt. 363 at 21.

Discovery further undermines Google's efforts to prove that no jury could agree with Plaintiffs. Google employees admitted that the word "private" reinforces the "misperception that your

browsing is private everywhere instead of just on your device." PAF19. **Employees even warned Mr. Pichai not to "use the word[] private . . . when describing benefits of Incognito mode"** because it "run[s] the risk of exacerbating **known misconceptions** about protections Incognito mode provides." PAF19. Google's user research confirmed there are "several common misconceptions about private mode, including that it . . . *hides browsing activity from Google*." PAF7.

That the "Privacy Policy said nothing about Incognito or PBM until May 2018" (Mot. at 8) dooms Google's express consent defense because it is Google's burden to prove consent. A document that "said nothing" about private browsing could not have "explicitly notif[ied]" users that Google engages in the "specific practice" of collecting private browsing data. *RTB*, 606 F. Supp. 3d at 949; *Campbell*, 77 F. Supp. 3d at 848. Summary judgment is unwarranted where, as here, "a reasonable jury could find that [the] provisions do not explicitly address—and thus do not obtain knowing consent for [the practice]." *Opperman*, 205 F. Supp. 3d at 1074.[7]

Unable to find support in the contract, Google attempts to rewrite it. Google falsely states that the provisions Plaintiffs cite are "in an introductory paragraph" of the Privacy Policy. They are not. Mot. at 15, SUF20. But even if they were, they would still be enforceable because the Privacy Policy is contractual, as Google concedes.[8] Google next argues that private browsing provides "*some* control." Mot. at 16. But a jury could find that merely providing "some" unspecified control breached Google's obligation to permit users to "control what we [i.e., Google] collect."[9]

---

[7] Google's Motion in passing (at 3) refers to "Account Holder Agreements" without identifying any provision from such an agreement, or even identifying which agreement(s) it has in mind. The Statement of Facts references just one such agreement, the New Account Creation Agreement, but that agreement does not mention private browsing. SUF8; Broome Ex. 85 ¶¶ 33–47. Instead, it links to the Privacy Policy, which is misleading for the reasons discussed in this section.

[8] By contrast in *Hammerling v. Google*, the plaintiffs did rely on the Privacy Policy's introductory paragraph. 2022 WL 2812188, at *16 (N.D. Cal. July 18, 2022). *Hammerling* is further distinguishable because, unlike here, the claim was based on a failure-to-disclose theory, which meant that Google "lacked consent" but was insufficient to establish a breach of contract. *Id.* at *13.

[9] Google's cases are inapposite because the cited provisions did not mention the product at issue. *See Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021) (plaintiffs claimed "they were misled about the effect of the Location History setting specifically," but did not identify any provision addressing that setting); *Rodriguez,* 2021 WL 6621070, at *3 (plaintiffs claimed they were misled about the WAA button, but the provision identified did not specifically mention WAA).

Even Google's employees acknowledge that Google "must enter a ***contract*** with the user regarding what happens when they enter Incognito mode," where "***[k]ey promises*** " include "***don't collect data from the Incognito session.***" PAF20. Those Google employees further recognized that Google did not "actually deliver[] on the promise of being private," where ***Incognito is*** "***not private in the ways that many users want, that is, as to Google***." PAF20.

### c. Search & browse privately page

The Search & browse privately page also undercuts Google's attempt to prove that no jury could find for Plaintiffs. This page is incorporated into the contract because the Privacy Policy (which Google concedes is part of the contract (Mot. at 13)) invites users to "search and browse privately," and that language contains a hyperlink to the Search & browse privately page. PAF1. This Court should reject Google's efforts to run away from this document because Google has already "concede[d]" that it is part of the contract, and the Court relied on that concession. Dkt. 363 at 13. At a minimum, this page is relevant to interpreting the contract.

This page promised that users can "control" what Google collects by using private browsing mode: "You're in control of what information you share with Google when you search. ***To browse the web privately, you can use private browsing*** . . . ." SUF42. That representation is not limited to just Incognito mode, and as this Court already ruled, "[a] reasonable user could read" that statement "as promising that 'private browsing mode' prevents Google from collecting users' browsing data." Dkt. 363 at 20. Discovery again supports Plaintiffs' interpretation. PAF7-21.

Google's claim that this page is the only document relevant to Class 2 (non-Chrome private browsing) is incorrect. Mot. at 17. The Privacy Policy currently references other private browsing modes. PAF2. Moreover, Google's representations about Incognito are relevant to how users would interpret Google's representations about private browsing more generally, as confirmed by Google employees. For example, the author of the "Incognito Problem" presentation confirmed at deposition that, when he wrote "Incognito confuses people," he was "referring to people more generally who use any private browsing mode." PAF8. While Google did not design non-Chrome private modes, Google can be held accountable for making commitments to its own accountholders about *Google's* collection of data when they use those private browsing modes. *Id.*

### d. Chrome Privacy Notice

The Chrome Privacy Notice, which Google concedes is part of the contract (Mot. at 13), also supports Plaintiffs, representing throughout the class period:

> You can limit the information Chrome stores on your system by using incognito mode or guest mode. In these modes, Chrome won't store certain information, such as: Basic browsing history information like URLs, cached page text, or IP addresses of pages linked from the websites you visit.

> Chrome won't share existing cookies with sites you visit in incognito or guest mode. Sites may deposit new cookies on your system while you are in these modes, but they'll only be stored and transmitted until you close the last incognito or guest window.

SUF23. "A reasonable user could read this statement to mean that their browsing history and cookies and site data would not be saved by Chrome and [] a user might reasonably associate Chrome with Google because Chrome is Google's browser." Dkt. 363 at 22–23. Discovery supports Plaintiffs' (and the Court's) interpretation. *See supra* Section II.B.2(a).

Google argues (Mot. at 7) that a reasonable user would not associate Chrome with Google because the "Chrome Privacy Notice uses the term differently." But as the Court explained last time, "[t]his argument ignores that, although 'Google' and 'Chrome' are not synonymous, Google has complete control over Chrome's functionality and Google obtains internet users' data by causing Chrome to send Google the data." Dkt. 363 at 23. The Chrome Privacy Whitepaper that Google cites cuts in Plaintiffs' favor because it repeats the Splash Screen's incomplete list of entities that collect the data. *See* Mot. at 7-8; SUF26. Google also argues that its representations (in this and other contractual documents) are not "enforceable" because they "simply provide information about how Incognito works." Mot. at 15. Google errs by mistakenly relying on cases addressing whether a document amounts to a contract in the first place. *See* Mot. at 15 (citing cases).[10] Here, Plaintiffs' claim is based on disclosures which Google concedes to be "contractual." Mot. at 13.

---

[10] Google cites *Rodriguez v. Google LLC*, where the plaintiffs (unsuccessfully) argued that a particular Google webpage constituted a *standalone* contract—separate and apart from the Google Privacy Policy. 2022 WL 214552, at *3 (N.D. Cal. Jan. 25, 2022). The same issue was presented in *Facebook Tracking*, where the court disagreed with the plaintiffs' argument that a Facebook document constituted a standalone contract. *See* 956 F.3d at 610.

13

*e.   "Learn More" pages*

Finally, Google cites the Splash Screen's "Learn More" pages, but Google does not contend these pages are part of the contract, making them extrinsic evidence that Google may not rely on. Regardless, those pages support Plaintiffs' interpretation. Like the Splash Screen, they "omit[] Google from the entities to which a user's private browsing activity may be visible." Dkt. 113 at 18; SUF35. The reference to "ads and resources on" websites does not inform users that Google will collect information about users' activities on non-Google websites—and in fact implies the opposite because Google is not listed. SUF35. The more recent version of the "Learn More" page—"How Chrome Incognito keeps your browsing private"—fares even worse because it falsely promises that Chrome will not "tell . . . Google when you're browsing privately," which is violated through Google's use of private browsing detection bits. SUF39; *infra* Section II.B.3. These documents at most raise a factual dispute regarding whether Google disclosed the conduct.[11]

3.   <u>The sanctions orders undermine Google's express consent defense.</u>

Having been sanctioned for concealing how it tracks, stores, and uses private browsing data, Google cannot prove as a matter of law that it "explicitly notif[ied]" users of these "specific practice[s]." *RTB*, 606 F. Supp. 3d at 949; *Campbell*, 77 F. Supp. 3d at 846, 848. In May 2022, Google was sanctioned for concealing three bits that were "specifically designed by Google to attempt to distinguish Chrome traffic from Incognito mode from traffic coming from non-Incognito mode," making them "very clearly relevant to the issues in this litigation." Dkt. 588-1 at 3, 26. In March 2023, Google was sanctioned again, including for concealing a fourth detection bit used for all of the private browsing modes at issue in both Class 1 and 2. Dkt. 898 at 18; *see also* PAF4.

Google previously denied engaging in these practices, including in open court:

- "[W]e don't track people in private browsing mode." 4/29/21 Tr. at 25:20-21:13.

- "Chrome doesn't tell websites, including Google, when you're browsing privately in Incognito mode." SUF39.

- Users can browse "the web privately, with the ***assurance that your choice to do so is private as well***." PAF5.

---

[11] Contrary to Google's assertion (at 12) this Court's class certification order did not make findings about what "Learn More" page "makes clear." Dkt. 803 at 31.

- "Chrome will remedy a loophole that has allowed sites to detect people who are browsing in Incognito Mode." PAF5.

Meanwhile, Google designed private browsing detection bits that rely on information Google receives from the Chrome browser, and Google exploited the same detection loophole that it publicly criticized other websites for using. Dkt. 588-1 at 3–4; Dkt. 898 at 17; *see also* PAF4.

Google was also sanctioned for concealing (and is still concealing) how it stores and uses private browsing data. Following the October 2022 order to show cause, Google admitted that ***it stores signed-out, private browsing data in the same logs as "authenticated" data*** (signed-in data). Dkt. 797-3 at 10; PAF4. That revelation contradicts Google's prior representations to the Court that "logs are ***internally segregated*** by whether you're logged into a Google account or aren't." Apr. 29, 2021 Tr. 16:16–20:2. Google's efforts to detect private browsing, and the way it stores that data, only came to light through sanctions, and Google is still refusing to comply with its obligations. A jury could easily agree with Plaintiffs that Google lacked consent for these undisclosed practices.

Finally, the Court's denial of 23(b)(3) certification does not warrant summary judgment. Mot. at 17. The damages sought by Plaintiffs (and any class members) are for past harm, and specific performance is available to remedy future harm. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("damages [are] retrospective. An injunction is prospective."); *Tamarind Lithography Workshop v. Sanders*, 143 Cal. App. 3d 571, 578 (1983) (damages properly awarded for past harm, and "an injunction" [i.e., specific performance] available to prevent future harm).[12]

### C.   Triable Issues as to the Federal Wiretap Claim.

1. The consent exception is inapplicable.

    a. *Website consent is at most a triable issue.*

Google cannot meet its burden to prove as a matter of law that websites consented. Google made this exact argument in its motion to dismiss, relying on the same logic, and the Court disagreed.

---

[12] Contrary to Google's misleading claim (at 17 n.14), the Complaint does seek specific performance. *See* FAC ¶ 276; Prayer for Relief (seeking "equitable relief" on breach of contract claim, which includes specific performance). Google's reliance on *Lewis v. YouTube, LLC*, is misplaced. 244 Cal. App. 4th 118, 127 (2015); Mot. at 17 n.14. Unlike here, that plaintiff "failed to identify any provision of the Terms of Service that she seeks to have a court enforce." *Id.* at 127.

| Google's Initial Motion to Dismiss | Google's Motion for Summary Judgment |
|---|---|
| [W]ebsites chose to install Google's code to transmit the Data to Google. Accordingly, the websites necessarily consented to Google's receipt of the Data. Dkt. 82 at 13. | [T]he intended recipients of the alleged communications—websites that installed Google's code—consented to Google's receipt of the at-issue data. Indeed, the purpose of installing the code is to send the data to Google to obtain its services. Mot. at 17. |

"[E]ven assuming that Google has established that websites generally consented to the interception of their communications with users, ***Google does not demonstrate that websites consented to, or even knew about, the interception of their communications with users who were in private browsing mode***." Dkt. 113 at 22.

Since that ruling, Google has identified **no evidence** suggesting that even a single website knew about Google's collection of private browsing data, let alone consented, which means Google cannot meet its summary judgment burden. To the contrary, a jury could readily conclude that websites did not consent, ***particularly because Google uniformly assured websites that Google would always comply with its own Privacy Policy*** (SUF92, PAF6), which, as discussed above, contains commitments to users about Google's collection and use of private browsing data.[13]

> *b.  There is a triable issue as to the crime-tort exception to consent.*

Even if Google could prove that users or websites expressly consented (and it cannot), summary judgment would still be unwarranted because a jury could find that the crime-tort exception applies. Consent is not a defense where a "communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). "[S]ubsequent disclosure of the contents of the intercepted conversations for the alleged purpose of further invading the [Plaintiffs'] privacy" is a tortious act that satisfies this exception to consent. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016).

Here, where the Court has sanctioned Google for continuing to hide how it uses private browsing data, a jury could find that Google collected the data so that it could later tag that data with

---

[13] Google's reliance on *Rodriguez v. Google LLC*, is misplaced. 2021 WL 2026726, at *1 (N.D. Cal. May 21, 2021); Mot. at 17. That case suggested that app developer consent did not turn on "each user's individual privacy expectations." Here, Plaintiffs' claims are based on a form contract, including the Privacy Policy, which Google also relies on to ground its consent defense.

detection bits, key it to unique identifiers, and create user profiles, all in (further) violation of state law, including CDAFA, CIPA, intrusion upon seclusion, and invasion of privacy SUF93, PAF4, 26-27; *see* Dkt. 113 at 20 (holding these allegations satisfied the crime-tort exception at the pleadings stage). Google argues that its purpose was not to "perpetuate torts" (Mot. at 17), but any "disputes as to [Google's] intent under wiretapping statute" are "to be decided by the jury." *Planned Parenthood v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 687 (N.D. Cal. 2019) (denying motion for summary judgment on Federal Wiretap claim, including based on the crime-tort exception).[14] *In re Meta Pixel Healthcare Litigation*, which Google cites, supports Plaintiffs. *See* 2022 WL 17869218 at *13 (N.D. Cal. Dec. 22, 2022) (finding there was a "not-insignificant chance" the crime-tort exception applied based on allegations that mirror the evidence found here—that defendant "use[d] . . . data for advertising in the absence of express written consent").[15]

### 2. The ordinary course of business exception is inapplicable.

The Court should (again) reject Google's efforts to evade liability on the basis of the ordinary-course-of-business exception. Mot. at 18; *see* Dkt. 113 at 28 (rejecting this argument at the pleadings stage). This exception "is ***narrow***" and applies "only where an electronic communication service provider's interception facilitates the transmission of the ***communication at issue*** or is incidental to the transmission of such communication." Dkt. 113 at 28. The "communication at issue" here is "the communication between the user's computer ***and the website***." *Id*. A jury could find that this exception does not apply, including because Plaintiffs' technical expert opines that user-website "communications flow back and forth between the user's browser and the non-Google website's server ***irrespective of the Google tracking beacons***." SUF61. Google cannot credibly claim (and indeed does not claim) that users would be unable to visit non-Google websites but for

---

[14] "An illegal purpose does not have the be the "sole purpose" for the crime-tort exception to apply. *Planned Parenthood*, 402 F. Supp. 3d at 686.

[15] The other cases cited by Google are distinguishable because there were no allegations or evidence of culpable intent. *See e.g.*, *Sussman v. Am. Broadcasting Co., Inc.*, 186 F.3d 1200, 1203 (9th Cir. 1999) ("no probative evidence"); *In re Google*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. 2014) ("[n]othing" regarding tortious "motivation"); *see also Rodriguez*, 2021 WL 2026726, at *6 n.8 (similar).

those Google tracking beacons. That includes the Google Analytics tracking beacons by which Google collects private browsing data from users' visits to over ███ of websites. SUF79.

Even if the evidence established that Google's interceptions were somehow "essential" for users to visit non-Google websites (Mot. at 19), a jury could still find that the ordinary-course exception does not apply for two reasons. *First*, there is evidence that Google uses the data for its own enrichment (and other still undisclosed purposes) separate and apart from any services it provides to websites, including to create profiles and develop Google products. PAF26-27. "The phrase 'in the ordinary course of business' cannot be expanded to mean anything that interests a company." *In re Google Inc.,* 2013 WL 5423918, at *9. Such an expansion is especially uncalled for here, where Google continues concealing how it uses the data. *Second*, the exception does not apply at this stage because a jury could find that Google violated its "own agreements and internal policies with regard to privacy," i.e, the Privacy Policy. *Id.* at *8. That trailable issue of fact undermines Google's hope to win summary judgment on this exception.

### 3. Google intercepted the "contents" of communications.

The Federal Wiretap Act "broadly defines 'content' as that which 'includes any information relating to the substance, purport, or meaning' of the communication at issue." *RTB*, 606 F. Supp. 3d at 949; *United States v. Reed*, 575 F.3d 900, 916 n.11, 917 (9th Cir. 2009); 18 U.S.C. § 2510(8). A jury could find that the intercepted data qualifies as "content" because the data reveals the specific webpage being viewed, the portions of the page being viewed, and other minute user interactions, and also because of Google's private browsing detection bits, including ████████████. PAF32-34. Google even publicly describes such information as "content." PAF32-34.

This information is conveyed through GET Request URLs (containing the full URL of the page the user is viewing) and Referer URLs (containing the URL of the referring page). PAF32-34. All the GET Request URLs Google intercepted from class members "include the folder, subfolder, and precise file requested from the webserver." PAF32-35. Below is an excerpt of one such example where a user accessed a page within the Washington Post website containing news on Ukraine:

18



PAF32-34. "A URL, unlike an IP address, identifies the particular document within a website that a person views and thus reveals much more information about the person's [i]nternet activity." *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008); *RTB*, 606 F. Supp. 3d at 949 (URL and referer URL constitute content); *Meta Pixel*, 2022 WL 17869218, at *11 (URLs including the "path" are "content because they concern the substance of a communication").

In addition, a jury could find that Google intercepted "contents" of communications because the intercepted URLs contain user-generated search terms.[16] Below is an example of a Google-captured URL where a user searched for "tesla electric car":



"If the user enters a search phrase . . . that search phrase would appear in the URL," and disclosure of that URL "would reveal content." *Forrester*, 512 F.3d at 510 n.6; *see also Hammerling*, 2022 WL 2812188, at *14 ("when they reproduce a person's… queries, they are contents"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137–38 (3d Cir. 2015) ("If … [a] URL is … part of the substantive information conveyed to the recipient, then by definition it is 'content.'"). There is at least a triable issue where Google's own expert acknowledges that URLs containing search terms constitute content. PAF32-34; *see In re Zynga Privacy Litigation*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) ("a user's request to a search engine for specific information could constitute . . . contents of a communication"); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("URLs containing search terms constitute content"). Plaintiffs' technical expert

---

[16] These URLs also contain Google-appended Click IDs ("GCLIDs"), which tie user-generated search terms that led the user to that site. PAF32-34.

report also provides examples of these URLs—<mark>which include the path, folders, subfolders, search terms, GCLIDs, and other information showing the portion of the webpage being viewed</mark>—and demonstrates that Google intercepted this information from all named Plaintiffs. PAF32-34.

### D.      Triable Issues as to the CIPA Claim.

Aside from Google's challenge to the "content" element, which should be rejected for the same reasons just discussed,[17] Google raises just one argument on the CIPA claim (confidentiality), and the argument is limited to CIPA § 632 (Google otherwise ignores the § 631 claim). Mot. at 21. This confidentiality question also turns on a triable issue of fact.

CIPA defines a "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c); *Flanagan v. Flanagan*, 27 Cal.4th 766, 774 (2002). To establish the existence of a confidential communication with non-Google websites, Plaintiffs need only demonstrate a reasonable expectation that their communications were not being disseminated to an "***unannounced*** second observer." Dkt. 113 at 30 (quoting *Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013)). Whether Plaintiffs knew those communications might be visible to ISPs, employers, or schools is legally irrelevant and does not give Google (or any ***unannounced*** observer) the right to intercept those communications.

The reasonableness of Plaintiffs' expectation of confidentiality as to Google is a triable issue, which can be decided based on the form contract, Plaintiffs' testimony,[18] and Google's employee admissions, <mark>including that "many people" within Google favored revising the Splash Screen to add "Google" to the list of entities that can view private browsing activity.</mark> PAF21. *See Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1126 (9th Cir. 2017) ("whether a communication is confidential is a question of fact normally left to the fact finder"); *Brinkley v. Monterey Fin. Servs., LLC*, 2020 WL

---

[17] *See RTB*, 606 F. Supp. 3d at 949 (applying same standard for CIPA and federal Wiretap Act).

[18] For example, discussing the Splash Screen, Plaintiff Byatt testified: "it doesn't say Google here. It doesn't say my activity might still be visible to Google . . . and that would have been a great place for Google to put Google. So I understood . . . my information not being visible to Google." PAF14.

12991079, at *7 (S.D. Cal. Jan. 17, 2020) (whether communications were "confidential" raised factual dispute precluding summary judgment).[19]

### E.        Triable Issues as to the CDAFA Claim.

Contrary to Google's assertion (at 22), there is evidence that Google "access[ed]" Plaintiffs' computers, including written discovery admissions. The CDAFA defines "access" as, *inter alia*, to "instruct [or] cause output from [or] communicate with . . . a computer." Cal. Penal Code § 502(b)(1). And Google admits that its code "***instructs*** the user's browser" to send data to Google. SUF61. *Meta Platforms, Inc. v. BrandTotal*, which Google cites, illustrates the difference between passively receiving data and what Google is doing here. 605 F. Supp. 3d 1218 (N.D. Cal. 2022). In *BrandTotal*, the defendant received the data from non-parties (Facebook users) after the plaintiff (Facebook) already "sent [the data] to th[ose] users." *Id.* at 1260. Here, Google concedes that its code "directs the browsers of users" to send the data to Google. Mot. at 22; SUF71 (Google is "caus[ing] users' browser" to send the data).[20] Plaintiffs' position does not "criminalize routine internet functionality." Mot. at 22. "What makes [Google's] access unlawful is that [Google is] *without permission*" collecting the data. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). Google's own employees discussed how Google was collecting this data "without consent," and so a jury could agree that Google lacked permission to collect private browsing data.

A jury could also find that Google's conduct caused Plaintiffs to suffer "damages or loss" under the CDAFA. To meet that requirement, Plaintiffs can rely on the value of the misappropriated data and the defendant's unjust enrichment from its use of that data. *See Facebook Tracking*, 956 F.3d at 600 (reversing dismissal of CDAFA claim, finding requisite damages based on a "study that

---

[19] Google's Motion includes only one case not previously cited in its Motion to Dismiss: *Rodriguez*, 2021 WL 2026726, at *7. Mot. at 21. *Rodriguez* was decided on a motion to dismiss on distinct factual allegations, and this case involves evidence supporting Plaintiffs' contentions. As for the other cases, the Court already distinguished those cases in its Order Denying Google's Motion to Dismiss. *See* Dkt. 82 at 14–15; Dkt. 113 at 32 & n.5. For example, unlike in *Campbell*, 77 F. Supp. 3d at 849, "the instant case does not involve messages going to another person, who could share the communication with others." Dkt. 113 at 21.

[20] Google's other case is distinguishable for the same reason. *See New Show Studios LLC v. Needle*, 2014 WL 2988271, at *6 (N.D. Cal. June 30, 2014) (complaint "devoid of any allegation that the defendants accessed *any computer*").

values users' browser histories at $52 per year" and users' "legal interest in unjustly earned profits" from defendant's use of the data). Plaintiffs have uncovered evidence that there is a market for their data, and that Google itself paid users for data (including in private mode); PAF28 (paying users $3.00 per month for their browsing data). Google intercepted the data without paying for it, and it was thus unjustly enriched. PAF27-28.[21] Google cites four decisions, but those were only motions on the pleadings, where the plaintiffs had not sufficiently pled any eligible CDAFA damages.[22]

### F.    Triable Issues as to Invasion of Privacy and Intrusion Upon Seclusion.

Google's argument that users have no reasonable expectation of privacy in their "private" data at best turns on a disputed factual question that cannot be resolved at summary judgment. These claims are governed by an objective standard, and there is a "material factual dispute as to whether [Google's disclosures] obtained effective consent" to its collection and use of private browsing data, particularly where employees stressed the need to "expand Incognito more to also offer some privacy towards Google." PAF21; *Opperman*, 205 F. Supp. 3d at 1073 (denying summary judgment on intrusion claim).

Google's argument that Plaintiffs must prove that the data is "identified" (Mot. at 23) has been soundly rejected. The "critical fact" for these claims is "that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." *Facebook Tracking*, 956 F.3d at 603; *Referrer Header*, 465 F. Supp. 3d at 1009 (*Facebook Tracking* "did not rest its decision [] on the particular type of data at issue"). Even cases that Google cites are in accord. *See Wesch v. Yodlee, Inc.*, 2021 WL 1399291, *3 (N.D. Cal. Feb. 16, 2021) (users "have a reasonable expectation of privacy" where, as here, the defendant "improperly accessed and retained"

---

[21] Google's tracking beacons also "take up processing, storage, and power/battery resources on user devices" and "cause webpages to load slower" (PAF30), which also constitute "damages or loss." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1066–67 (N.D. Cal. 2015).

[22] *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (dismissing for failure to support damages theory); *Nowak v. Zapo, Inc.*, 2020 WL 6822888, at **4–5 (N.D. Cal. Nov. 20, 2020) (loss of bitcoin outside scope of CDAFA); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (dismissing for failure to allege harm). In contrast, Google's own documents prove that Google was unjustly enriched from its collection and use of the data. PAF27-28; *see also Facebook Tracking*, 956 F.3d at 600. The Court has relatedly denied Google's *Daubert* motion as to Plaintiffs' damages models, which covered both actual damages and unjust enrichment damages. Dkt. 803.

users' information); *Hart v. TWC Prod. & Tech., LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (reasonable expectation of privacy where an "innocuous-seeming" application (here, browsers) surreptitiously gained access to conduct "surveillance" without consent). Google's other cases, focusing on Fourth Amendment unlawful-search issues, are inapposite.[23] In any event, even if Plaintiffs were required to prove the data is identified (and they are not) that would still be a triable issue of fact, particularly where Google's employees admit that ***"we would never sa[y] that Google doesn't know who you are while you're Incognito***." PAF27; *supra* Section II.A..

Whether Google's conduct is highly offensive (Mot. at 23) is also triable issue, to be decided based on "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Treviller v. Goldstein*, 2019 WL 1454171, *6 (N.D. Cal. April 2, 2019) (Gonzales Rogers, J.). Deceit is a "plus" factor in assessing offensiveness, *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021), and Plaintiffs have evidence that ***Google knew it was "deceiv[ing] users"*** by collecting their private browsing data in their most vulnerable moments, where employees described Incognito as "***bad for users, bad for human rights, bad for democracy***." PAF12.[24] Google points out that Plaintiffs continued to use private browsing after filing the lawsuit, but that assertion is misleading. Mot. at 23. Plaintiffs did so to obtain discovery regarding how Google stores the data through the Special Master process, which was limited to the Named Plaintiffs' data. SUF105. Moreover, as Google's employees concede, there

---

[23] *Forrester*, 512 F.3d at 510-11 (rejecting criminal defendant's Fourth Amendment challenge to government's monitoring of emails); *Sanchez v. Los Angeles Dep't of Transportation*, 2021 WL 1220690, at *1, *5 (C.D. Cal. Feb. 23, 2021) (dismissing Fourth Amendment claim for unlawful search in a case about city's collection of data on motorized scooter usage because it is "self-evident that understanding where scooters tend to transit and park would help the City determine how and where to adjust the rules of the road"). The other cases are further afield. *See Hammerling*, 2022 WL 2812188 at *13 (dismissing claims where "Plaintiffs do not plausibly allege the specific apps from which" the defendant collected sensitive information); *Moreno v. San Francisco Bay Area Rapid Transit District*, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (dismissing claim where plaintiff was "on notice that [the defendant] would be accessing the information").

[24] *See McDonald v. Kiloo ApS*, 395 F. Supp. 3d 1022, 1032 (N.D. Cal. 2019) (surreptitious collection of data, and use of that data beyond what is disclosed and consented to, has more than an "insubstantial impact on privacy interests").

<mark>is no way to prevent Google from collecting the at-issue browsing information, so any efforts to avoid it are futile. SUF79, 106.</mark>

### G. Triable Issues as to the UCL Claim.

#### 1. Plaintiffs have UCL standing.

The evidence found in discovery supports the allegations the Court already deemed sufficient for UCL standing. Dkt. 363 at 24-29; PAF27-28. Google's Motion relies entirely on the same arguments that were wholly rejected. Dkts. 164, 363. Those decisions are law of the case, and that law is correct because there are "innumerable ways in which economic injury from unfair competition may be shown." Dkt. 363 at 25, 27 (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 324 (2011)). This includes where there is a "cash value" for data and "an active market for data"—established by Google's Screenwise project. Dkt. 363 at 25; PAF28.

The evidence at a minimum creates a triable issue regarding both theories of harm: (1) that Plaintiffs "would have demanded payment for their data" but Google instead "caused Plaintiffs to acquire in a transaction less than they otherwise would have" and (2) that there are payors (including Google, such as during Screenwise) "willing to pay individuals for data" where Plaintiffs could "decide to sell their data at some point." *Id.* at 26; PAF28; *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1112-15 (UCL standing where company failed to disclose that its software was gathering information through surreptitious means). Plaintiffs' standing is neither new nor novel. *See* Dkt. 363 at 26-27 (citing *Calhoun*, *In re Marriott*, *In re Yahoo!*, and *In re Anthem* decisions).[25] Plaintiffs also have a property interest in their data with the passage of the California Consumer Privacy Act, which affords them the right to exclude Google from selling their data (including browsing data) to third parties. Cal. Civ. Code §§ 1798.120(a), 1798.125(a), 1789.140(v)(1)(F).

---

[25] Other courts have followed this growing trend. *See, e.g.*, *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022) (personal information is property for UCL standing); *Griffey v. Magellan Health Inc.*, 2022 WL 1811165, *10 (D. Az. June 2, 2022) (same); *Callahan v. PeopleConnect, Inc.*, 2021 WL 5050079, *19 (N.D. Cal. Nov. 1, 2021) (same).

1

### 2.   Retrospective money damages are not an adequate remedy.

2      Google's "adequate remedy at law" argument is surprising, yet meritless. Mot. at 25. Google

3   previously argued that Plaintiffs' UCL claim "should be limited to injunctive relief only." Dkt. 164

4   at 23-24. Google now seeks summary judgment on the basis that Plaintiffs individually seek the legal

5   remedies Google claimed were unavailable. *Id.* Regardless, injunctive relief is available. Google

6   continues to collect, store, and use private browsing data, and Google will continue its unauthorized

7   conduct absent an injunction. Monetary damages would only address Google's *past* conduct while

8   injunctive relief addresses Google's ongoing conduct, such as Google's use and offer of services that

9   were developed or improved with private browsing data, and Google's continued use of private

10   browsing data to further develop and make changes to Google services. PAF27. Such injunctive relief

11   is proper and warranted under the UCL. *WellPet*, 526 F. Supp. 3d at 687 (past money damages not

12   an adequate remedy for prospective harm).[26] The cases Google cites turned on the plaintiffs' failure

13   to explain why remedies at law were inadequate. *See, e.g.*, *Clark v. Am. Honda Motor Co., Inc.*, 528

14   F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) (dismissing with leave to amend). Here, Google cannot

15   demonstrate that Plaintiffs have an adequate remedy at law.

16   **III.   CONCLUSION**

17      Plaintiffs ask the Court to deny Google's motion for summary judgment in its entirety.

18   Dated:  April 12, 2023                     Respectfully submitted,

19

20                                             By:  */s/ Mark Mao*
                                               Mark C. Mao (CA Bar No. 236165)
21                                             mmao@bsfllp.com
                                               Beko Reblitz-Richardson (CA Bar No. 238027)
22                                             brichardson@bsfllp.com
                                               Erika Nyborg-Burch (CA Bar No. 342125)
23                                             enyborg-burch@bsfllp.com
                                               BOIES SCHILLER FLEXNER LLP
24                                             44 Montgomery Street, 41st Floor
                                               San Francisco, CA 94104
25                                             Telephone: (415) 293-6800

26

27   [26] *See also Ghazarian v. Magellan Health, Inc.*, 53 Cal. App. 5th 171, 194 (2020) (money damages
     resolve past harms and injunctive relief protects against future harm); *McGill v. Citibank, N.A.*, 2 Cal.
28   5th 945, 955 (2017) (UCL injunctive relief is designed to prevent "future harm").

Facsimile (415) 293-6899

David Boies (admitted pro hac vice)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

James Lee (admitted pro hac vice)
jlee@bsfllp.com
Rossana Baeza (admitted pro hac vice)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson (CA Bar No. 275334)
alanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Bill Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
Steven Shepard (pro hac vice)
sshepard@susmangodfrey.com
Alexander P. Frawley (pro hac vice)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

26

Facsimile: (310) 789-3150

John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

*Attorneys for Plaintiffs*