# PLAINTIFFS' RESPONSIVE SEPARATE STATEMENT REGARDING MATERIAL FACTS

## Redacted Version of Document Sought to be Sealed

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 629-9040
alanderson@bsfllp.com

*Attorneys for Plaintiffs*

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

CHASOM BROWN, *et al.*, individually and on behalf of all similarly situated,

Plaintiffs,

vs.

GOOGLE LLC,

Defendant.

Case No. 4:20-cv-03664-YGR-SVK

**PLAINTIFFS' RESPONSIVE SEPARATE STATEMENT REGARDING MATERIAL FACTS**

Hon. Yvonne Gonzalez Rogers
Courtroom: 1 – 4th Floor
Date:     May 12, 2023
Time:     1:00 p.m.

Pursuant to Section 9(c)(1) of the Court's Standing Order In Civil Cases, Plaintiffs respectfully submit this response to Google's Separate Statement of Undisputed Material Facts (Dkt. 907-4) and responsive separate statement of additional material facts.  This submission uses the same issue numbering from Google's submission.

**Plaintiffs' Response to Google's Statement of Undisputed Material Facts[1]**

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 1. Google never represented that Chrome's Incognito mode prevents the data collection and use at issue. Ex. 85[2] (McPhie Decl.) ¶¶ 5, 18, 52; Ex. 63 (McPhie Tr.) 109:23–110:11, 126:2-7; Exs. 93–112 (Privacy Policies); Ex. 113–134 (Chrome Privacy Notices); Ex. 72–74 (Incognito Screens); Exs. 89–92 (PBM Help pages). | Disputed. Google represented and by contract promised not to collect and use private browsing information while users were visiting non-Google websites and signed out of their Google accounts. Broome Exs. 72-74, 92-112, 113-34; *see also* Broome Ex. 79 (Keegan Survey Report) ¶ 185 & tbl. 6; Additional Facts 1-3, 7-21. |
| Issues 1, 2 | Fact 2. Google never represented that non-Chrome browsers' private browsing modes ("PBMs") (Class 2) prevent the data collection and use at issue. Ex. 85 (McPhie Decl.) ¶¶ 28, 76; Exs. 93–112 (Privacy Policies); Exs. 113–134 (Chrome Privacy Notices); Ex. 72–74 (Incognito Screens); Exs. 89–92 (PBM Help pages). | Disputed. *See* Response to Fact 1; *see also* Additional Facts 18, 20. |
| Issues 1, 2 | Fact 3. Plaintiffs and Class Members are Google Account holders. Dkt. 886 (Fourth Amended Complaint ("FAC")) ¶ 192. | Undisputed. |
| Issues 1, 2 | Fact 4. A user who signs up for a Google Account agrees to the Privacy Policy. Ex. 85 (McPhie Decl.) § C. | Disputed. The Google form contract has included but has never been limited to the Privacy Policy. Additional Facts 1-3. |

[1] Making the margins for both parties equal, Google submitted a Statement of Undisputed Facts totaling 22 pages.  Plaintiffs' responses do not extend the Statement of Undisputed facts beyond this length.

[2] Unless otherwise noted, within Google's column, "Ex." refers to the Broome Declaration exhibits, and within Plaintiffs' column, "Ex." refers to the Mao Declaration exhibits.

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 5. All named Plaintiffs signed up for their first Google accounts between 2004 and 2012. Exs. 65–69 (Subscriber Information). | Undisputed. |
| Issues 1, 2 | Fact 6. All class members consented to Google's Privacy Policy when they opened their Google Accounts. Exs. 1–4 (Brown, Byatt, Castillo, and Davis May 24, 2021 Amended RFA Resp.), at No. 1; Ex. 9 (Trujillo June 7, 2021 RFA Resp.), at No. 1; Ex. 85 (McPhie Decl.) ¶ 34; Ex. 86 (McPhie Decl. Ex. 4). | Disputed. *See* Response to Fact 4. |
| Issues 1, 2 | Fact 7. Google's Privacy Policy governs the at-issue data collection and use. Exs. 93–112 (Privacy Policies). | Disputed. The form contract, including the Privacy Policy, represented that Google would not collect and use the private browsing information at issue. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 8. Two Plaintiffs (Davis and Brown) and millions of class members consented to the New Account Creation Agreement. Ex. 85 (McPhie Decl.) ¶¶ 48–50; Ex. 87 (McPhie Decl. Ex. 15). | Disputed. Google account holders agreed to be bound by the Google form contract, which throughout the class period has included the Privacy Policy and other documents. Additional Facts 1-3. |
| Issues 1, 2 | Fact 9. Google receives the at-issue data through the same process at issue in *Calhoun v. Google*, Case No. 20-cv-5146, *i.e.*, through HTTP resource requests initiated when a user, in any browser or mode, visits a website that has installed the code for Google's advertising, analytics, or other web-services. FAC ¶ 63. | Disputed. This Fact does not cite any evidence about what is at issue in *Calhoun*. Even if it did, that would be improper because such evidence would be hearsay and inadmissible. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c). In any event, the processes are different. *Calhoun* involved regular browsing mode in Chrome, including while users are signed in to their Google accounts. *See* Case 20-cv-05146, Dkt. 57 (Google's MTD) at 1 n.1. This case is limited to users in a private browsing mode. Dkt. 803 at 24. Google's process for storing that data is also different, with Google storing private browsing data in a way |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | that deprived Plaintiffs and class members of any method to review and delete that data. Broome Ex. 77 (Hochman Opening Rep.) § D.2. Also, unlike *Calhoun*, this case involves Google's use of detection bits to track a users' choice to use a private browsing mode. Additional Fact 4. |
| Issues 1, 2, 3, 4, 5, 6, 9 | Fact 10. The at-issue data is specified at paragraph 63 of Plaintiffs' FAC and consists of: (a) GET requests; (b) IP address of the user's connection to the internet; (c) information identifying the browser software the user is using; (d) User-ID issued by the website to the user, if available; (e) geolocation of the user, if available; (f) information contained in Google cookies. FAC ¶ 63; Exs. 24–27 (Brown, Byatt, Castillo, and Davis June 1, 2021 Rog Resp.), at No. 8; Ex. 28 (Trujillo June 7, 2021 Rog Resp.), at No. 8. | <u>Disputed</u>. The at-issue private browsing data is specified not only in Plaintiffs' amended complaint but also in more detail in Mr. Hochman's report. Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.A, F, App. B); *see also* Additional Fact 4. Google's logs also contain derived information. Broome Ex. 77 (Hochman Opening Rep) § VIII.D; Mao Ex. 8 (Hochman Rebuttal Rep.) §§ V.A., V.D. |
| Issues 1, 2 | Fact 11. Google's Privacy Policy discloses the collection and use of the at-issue data. Ex. 85 (McPhie Decl.) § B; Ex. 49 (Davis Tr.) 102:10–104:1; Ex. 53 (Castillo Tr.) 67:19–74:21, 99:18–101:8; Ex. 47 (Byatt Tr.) 151:1–20; Ex. 51 (Brown Tr.); Ex. 54 (Trujillo Tr.) 190:2–24; Exs. 93–112 (Privacy Policies). | <u>Disputed</u>. Google never disclosed its collection and use of the at-issue private browsing information. *See* Response to Fact 1. Even Google employees are unable to identify the data that Google collects. Mao Ex. 1 (Adkins Tr.) 283:22–286:10; Ex. 2 at 191:12-14. |
| Issues 1, 2, 4, 5, 6, 9 | Fact 12. Google's collection of the at-issue data through its advertising and analytics services is common knowledge. FAC ¶ 163; Ex. 47 (Byatt Tr.) 152:15–153:21; Ex. 49 (Davis Tr.) 68:7–71:5; Ex. 53 (Castillo Tr.) 70:2–74:21, 99:18–100:25; Ex. 54 (Trujillo Tr.) 56:1–19, 60:13–61:2. | <u>Disputed</u>. Google never disclosed its collection and use of the at-issue private browsing information. *See* Response to Fact 1; *see also* Additional Fact 4. Plaintiffs understood that, based on their contract, Google would not collect and use their private browsing information. *See* Response to Fact 13. |
| Issues 1, 2 | Fact 13. Plaintiffs were aware of the data collection and uses described in the | <u>Undisputed</u> that Plaintiffs read and were familiar with the Privacy Policy before |

PLAINTIFFS' RESPONSE TO GOOGLE LLC'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Privacy Policy before they filed suit. Ex. 49 (Davis Tr.) 93:2–21; Ex. 51 (Brown Tr.) 30:19–31:1; Ex. 1 (Brown May 24, 2021 Amended RFA Resp.), at No. 1; Ex. 9 (Trujillo June 7, 2021 RFA Resp.), at No. 1; Exs. 2–4, 6–8 (Davis, Castillo, Byatt May 24, 2021 Amended RFA Resp.), at Nos. 1, 3. | they filed suit. <u>Disputed</u> that they were aware of Google's collection and use of the at-issue private browsing data. Mao Ex. 3 (Brown Tr.) 55:2-22, 156:16-24, 158:13-22, 162:4-17, 177:14-178:15, 197:6-17; Ex. 4 (Byatt Tr.) 133:10-136:18, 156:5-159:5; Ex. 5 (Castillo Tr.) 91:7-95:1, 127:20-130:6; Ex. 6 (Davis Tr.) 24:18-25:12, 64:2-65:22, 85:7-11, 95:9-97:4, 112:22-113:25, 141:25-142:15, 175:15-177:20; Ex. 7 (Trujillo Tr.) 65:24-66:11, 119:3-10, 146:11-19, 149:14-150:4, 223:2-226:14; *see also* Additional Fact 4. |
| Issues 1, 2 | Fact 14. Plaintiffs admit they consented to the data collection and uses described in the Privacy Policy for modes other than PBM. Ex. 54 (Trujillo Tr.) 56:1–14, 60:23–14; Ex. 51 (Brown Tr.) 60:15-61:8, 158:2–12; Ex. 53 (Castillo Tr.) 67:19–70:14, 99:18–100:25; Exd. 5–8 (Davis, Castillo, Byatt, and Brown May 24, 2021 Amended RFA Resp.), at No. 8; Ex. 9 (Trujillo June 7, 2021 RFA Resp.), at No. 8. | <u>Undisputed</u> that Plaintiffs consented to the Privacy Policy. <u>Disputed</u> that such consent included Google's collection and use of the at-issue private browsing data. *See* Response to Fact 13. |
| Issues 1, 2 | Fact 15. Plaintiffs' alleged contract with Google consists of "the Google Terms of Service, the Google Chrome and Chrome OS Additional Terms of Service, and the Chrome Privacy Notice," which documents Plaintiffs allege "incorporate and/or should be construed consistent with the Privacy Policy, the Search & Browse Privately [Help page], and the Incognito Screen." FAC ¶ 268. | <u>Undisputed</u>. |
| Issues 1, 2 | Fact 16. Google's General Terms of Service ("TOS") have never mentioned private browsing. Exs. 135–138 (TOS). | <u>Disputed</u>. Documents part of the same form contract have mentioned private browsing. Broome Exs. 72-74, 92, 100-112, 113-134. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 17. The Chrome and Chrome OS TOS have never mentioned private browsing. Exs. 139–140 (Chrome TOS). | <u>Disputed</u>. *See* Response to Fact 16. |
| Issues 1, 2 | Fact 18. The Google Privacy Policy has never represented that PBM prevents Google from receiving the at-issue data. Exs. 93–112 (Privacy Policies); Ex. 63 (McPhie Tr.) 123:14–125:10, 148:7–149:17. | <u>Disputed</u>. The Google Privacy Policy, individually and together with other documents in the form contract, represented that Google would not collect and use private browsing information. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 19.   Until May 2018, Google's Privacy Policy did not mention Incognito mode or private browsing mode. Ex. 85 (McPhie Decl.) ¶¶ 18, 28 & n.5; Exs. 93–99 (March 25, 2016 through December 18, 2017 Privacy Policies); Ex. 53 (Castillo Tr.) 66:6–67:11. | <u>Disputed</u>. While the pre-May 2018 Privacy Policy did not mention private browsing, other documents in the same form contract did during that time period. Broome Exs. 72, 92, 113-21. |
| Issues 1, 2 | Fact 20. Beginning May 2018, Google's Privacy Policy made only one reference to private browsing, in the introductory paragraph: "You can use our services in a variety of ways to manage your privacy. …<u>You can also choose to browse the web privately using Chrome in Incognito mode</u>. And across our services, you can adjust your privacy settings to control what we collect and how your information is used." Ex. 85 (McPhie Decl.) ¶¶ 27–28 & n.5; Exs. 100–112 (May 25, 2018 through July 1, 2021 Privacy Policies). | <u>Disputed</u>. The provision Google quotes is not in the introductory paragraph. In addition, the Google Privacy Policy has since May 2018 represented that "you can search and browse privately," and that text includes a hyperlink to the "Search & browse privately" page. With the February 10, 2022 Privacy Policy, the provision Google quotes changed; it now states: "You can also choose to browse the web in a private mode, like Chrome Incognito mode." *See* Broome Exs. 100-112; Broome Ex. 110 (Feb. 10, 2022). |
| Issues 1, 2 | Fact 21. Plaintiffs identify only two relevant "promises" from the Privacy Policy: (1) "You can use our services in a variety of ways to manage your privacy . . . across our services, you can adjust our privacy settings to control what we collect and how your information is used" and (2) "You can also choose to browse the web privately using Chrome in Incognito mode." FAC ¶¶ 42, 45; Ex. 39 (Plaintiffs' | <u>Disputed</u>. Plaintiffs have identified other provisions in the Privacy Policy, including one that defines "Google services," the provision where Google commits to an "explicit consent" standard, the provision incorporating the "Search & browse privately" webpage and, in versions of the Privacy Policy in effect prior to May 2018, provisions emphasizing "transparency and choice," where users have "control" of "who |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | April 15, 2022 Rog Resp.), at No. 17, 5:13–17. | [they] share information with," and "whether certain activity is stored in a cookie or similar technology." Broome Exs. 93-112; Dkt. 192 (Opposition to MTD SAC) at 12-13; Dkt. 609 (Class Cert. Mot.) at 19; Broome Ex. 39 at 5; Broome Ex. 75 (Schneier Rep.) ¶ 279. |
| Issues 1, 2, 4 | Fact 22. The <u>Chrome Privacy Notice</u> ("CPN") has never represented that Incognito or other browsers' PBMs prevent Google from receiving the at-issue data. Exs. 113–134 (CPNs). | <u>Disputed</u>. The CPN, individually and together with other documents in the form contract, represented that Google would not collect and use private browsing information. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 23. Throughout the Class Period, the CPN described Incognito mode in relevant part as follows: "You can limit the information Chrome stores on your system by using incognito mode or guest mode. In these modes, Chrome won't store certain information, such as: [] Basic browsing history information….**Cookies.** Chrome won't share existing cookies with sites you visit in incognito or guest mode. Sites may deposit new cookies on your system while you are in these modes, but they'll only be stored and transmitted until you close the incognito or guest window." Exs. 113–134 (CPNs). | <u>Disputed</u>. Google omits text from this page. Moreover, throughout the class period, other documents part of the same form contract contained representations about private browsing mode. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 24. In the documents that Plaintiffs claim comprise their contract with Google, Google defines "Chrome" and "Google" differently, and the CPN uses the terms differently. Ex. 85 (McPhie Decl.) ¶ 54; Exs. 135–138 (TOS), at 2; Exs. 113–134 (CPNs), at 1. | <u>Disputed</u>. Plaintiffs understood Chrome to be a service that Google offers. Mao Ex. 3 (Brown Tr.) 86:21-87:15; Ex. 4 (Byatt Tr.) 96:6-13; Ex. 5 (Castillo Tr.) 47:24-48:5; Ex. 6 (Davis Tr.) 28:7-10; Ex. 7 (Trujillo Tr.) 189:23-190:1. |
| Issues 1, 2 | Fact 25. Plaintiffs identify only two relevant "promises" from the CPN: (1) "[y]ou can limit the information Chrome stores on your system by using incognito mode" and (2) "Chrome won't store | <u>Disputed</u>. Google omits a bullet under "Chrome won't store certain information." In addition, Plaintiffs have identified other Chrome Privacy Notice provisions, including "Regardless of |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | certain information, such as: Basic browsing history information like URLs, cached paged text, or IP addresses of pages linked from the websites [users] visit [and] Snapshots of pages that [users] visit." Ex. 29–33 (Plaintiffs' July 30, 2021 Responses to Interrogatories), at No. 12; FAC ¶¶ 269–272. | where your information is processed, we apply the same protections described in the Google Privacy Policy." Dkt. 192 at 13. |
| Issues 1, 2, 9 | Fact 26. During the class period, the CPN linked to the Chrome Privacy Whitepaper, explaining that in Incognito: "The browsing history and cookies are deleted only once you have closed the last incognito window. Incognito mode cannot make you invisible on the internet." Ex. 85 (McPhie Decl.) § D.2; Ex. 141 (Whitepaper). | <u>Disputed</u>. The Chrome Privacy Whitepaper contains other representations about Incognito, including "Going incognito doesn't hide your browsing from your employer, your internet service provider, or the websites you visit." Broome Ex. 141. |
| Issues 1, 2, 4 | Fact 27. The Incognito Screen has never represented that Incognito or other browsers' PBMs prevent Google from receiving the at-issue data. Exs. 72–74 (Incognito Screens). | <u>Disputed</u>. Through the form contract, including the Incognito Screen, Google promised not to collect and use the at-issue private browsing information. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 28. The Incognito Screen states, "[n]ow you can browse privately, and other people who use this device won't see your activity," that "Chrome won't save…[y]our browsing history[,] [c]ookies and site data[,] [i]nformation entered in forms," and that "Your activity might still be visible to…[w]ebsites you visit[,] [y]our employer or school[,] [y]our internet service provider." Exs. 73–74 (Incognito Screens). | <u>Undisputed</u> that the Splash Screen contains those words. |
| Issues 1, 2 | Fact 29. Adding Google to the Incognito Screen's list of entities that may see users' activity could mislead users. Ex. 46 (Fair Tr.) 72:6–73:19. | <u>Disputed</u>. Google's omission of "Google" from the Splash Screen is misleading. Mao Ex. 3 (Brown Tr.) 137:16-138:3; Ex. 4 (Byatt Tr.) 135:19-136:18; Ex. 5 (Castillo Tr.) 158:20-159:6; Ex. 6 (Davis Tr.) 169:14-24; Ex. 7 (Trujillo Tr.) 280:23-281:23; *see* |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Additional Fact 21. |
| Issues 1, 2 | Fact 30. Plaintiffs identify only four relevant "promises" from the Incognito Screen: (1) "You've gone incognito," (2) "Now you can browse privately, and other people who use this device won't see your activity," (3) "Chrome won't save . . . [y]our browsing history . . . [c]ookies and site data," and (4) "Your activity might still be visible to: Websites you visit[,] [y]our employer or school[, ] [y]our internet service provider[.]" FAC ¶¶ 52–56; Exs. 24–27 (Brown, Byatt, Castillo, and Davis June 1, 2021 Rog Resp.), at No. 9; Ex. 28 (Trujillo June 7, 2021 Rog Resp.), at No. 9; Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 5:17–6:6. | Disputed. Google omits words. Plaintiffs have also identified the iconography of the Splash Screen. Broome Ex. 39 at 5. Plaintiffs also identified a Google promise that "now you can browse privately" to mean private browsing excludes Google. Mao Ex. 3 (Brown Tr.) 119:19-122:20; Ex. 4 (Byatt Tr.) 126:25-127:23; Ex. 5 (Castillo Tr.) 240:21-241:12; Ex. 6 (Davis Tr.) 22:7-24:17; Ex. 7 (Trujillo Tr.) 146:20-147:21. |
| Issue 2 | Fact 31. The Incognito Screen is not referenced in any version of Google's Privacy Policy. Exs. 93–112 (Privacy Policies). | Disputed. The Privacy Policy has since May 2018 directed users to the Splash Screen by stating: "choose to browse the web privately using Chrome in Incognito mode." Broome Exs. 100-12. Throughout the class period, the Splash Screen was displayed to users at the beginning of every Incognito session, making it impossible for Incognito users to avoid it. Class Cert Ex. 16 at 5; Additional Fact 15. |
| Issue 2 | Fact 32. The Incognito Screen is not referenced in any version of Google's Terms of Service or the CPN. Exs. 135–138 (TOS); Exs. 139–140 (CPNs). | Disputed. The CPN has throughout the class period directed users to the Splash Screen by inviting them to "us[e] incognito mode." Broome Exs. 113-34. See also Response to Fact 31. |
| Issues 1, 2 | Fact 33. The Incognito Screen includes a "Learn more" button that U.S. users clicked more than ▇▇▇▇ times between August 2016 and January 2022. Ex. 85 (McPhie Decl.) ¶ 73 & Ex. 88 (McPhie Decl. Ex. 17). | Disputed. Plaintiffs do not have access to Google's system that generated this information, and Google has not laid the legal foundation for the admissibility of this hearsay. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 34. Between July 2017 and May 2020, the "Learn more" button displayed the <u>How private browsing works in Chrome</u> Help page. Ex. 85 (McPhie Decl.) ¶ 73. | <u>Undisputed</u>. |
| Issues 1, 2 | Fact 35. The <u>How private browsing works in Chrome</u> Help page explains in relevant part: "Incognito mode stops Chrome from saving your browsing history to your local history," but "[y]our activity . . . might still be visible to…websites you visit, including the ads and resources used on those sites"; "Search engines" and "web-service[s]." Ex. 85 (McPhie Decl.) ¶ 58 & Ex. 90 (McPhie Decl. Ex. 18). | <u>Disputed</u>: This page contains other representations about Incognito mode, including that "Chrome doesn't save your browsing history." *See* Response to Fact 37. |
| Issues 1, 2 | Fact 36. The <u>How private browsing works in Chrome</u> Help page is also linked to the Browse in Private Help page and directly available from Google.com and was visited about ▮▮▮▮▮ times between its launch in July 2017 and January 2022. Ex. 85 (McPhie Decl.) ¶¶ 58–59; Ex. 88 (McPhie Decl. Ex. 17). | <u>Disputed</u>. Plaintiffs do not have access to Google's system that generated this information, and Google has not laid the legal foundation for the admissibility of this hearsay. |
| Issues 1, 2 | Fact 37. Plaintiffs were aware before they filed suit that Google is among the web services that provide ads and analytics to websites. Ex. 53 (Castillo Tr.) 181:18–185:16; Ex. 47 (Byatt Tr.) 143:19–146:25; Ex. 49 (Davis Tr.) 120:15–17; Ex. 51 (Brown Tr.) 128:25; Ex. 54 (Trujillo Tr.) 59:17–61:2, 218:22–219:11. | <u>Disputed</u>. Plaintiffs were not aware and expected that Google (even if as a web service) would not collect, store, or use private browsing data. Mao Ex. 7 (Castillo Tr.) 179:2-190:9, 243:13-246:23; Ex. 4 (Byatt Tr.) 142:7-147:15, 253:18-257:14; Ex. 6 (Davis Tr.) 27:13-17, 128:10-132:7, 170:12-171:16; Ex. 3 (Brown Tr.) 127:3-131:19, 197:1-200:11; Ex. 7 (Trujillo Tr.) 59:17-64:22, 218:22-222:7. |
| Issues 1, 2 | Fact 38. Since May 2020, the Incognito Screen's "Learn more" button displayed the <u>How Chrome Incognito keeps your browsing private</u> Help page. Ex. 85 (McPhie Decl.) ¶ 73. | <u>Undisputed</u>. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 39. The How Chrome Incognito keeps your browsing private Help page explains in relevant part: "In Incognito, none of your browsing history, cookies and site data, or information entered in forms are saved *on your device*. This means your activity doesn't show up in your Chrome browser history, so people who also use your device won't see your activity." It further explains "[w]hat Incognito mode doesn't do," including that Incognito does not "[p]revent the websites you visit from serving ads based on your activity during an Incognito session." Ex. 85 (McPhie Decl.) ¶ 74; Ex. 91 (McPhie Decl. Ex. 29). | Disputed. Google added emphasis to "on your device." Google's description of what the page represents is also incomplete. For example, the page also states: "Chrome doesn't tell websites, including Google, when you're browsing privately in Incognito mode," and as another example, the page states that your activity may be "visible to the websites you visit, your school, employer, or your Internet Service provider." Broome Ex. 91. |
| Issues 1, 2 | Fact 40. The How Chrome Incognito keeps your browsing private Help page was visited about ▮▮▮▮▮▮ times between May 1, 2020 and January 2022. Ex. 85 (McPhie Decl.) ¶ 75; Ex. 88 (McPhie Decl. Ex. 17). | Disputed. Plaintiffs do not have access to Google's system that generated this information, and Google has not laid the legal foundation for the admissibility of this hearsay. |
| Issues 1, 2, 4 | Fact 41. The Search & browse privately Help page has never represented that Incognito or other browsers' PBMs prevent Google from receiving the data at issue in this case. Ex. 92 (Search & browse privately page). | Disputed. Through this document, individually and together with the rest of the form contract, Google represented it would not collect and use the at-issue private browsing data. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 42. The Search & browse privately Help page explains: "If you want to search the web without saving your search activity to your account, you can use private browsing mode in a browser (like Chrome or Safari)." It also explains "[p]rivate browsing works differently depending on which browser you use. Browsing in private usually means: [] The searches you do or sites you visit won't be saved to your device or browsing history[,] … Cookies are deleted after you close your private browsing window or | Disputed. This page contains other provisions, including: "You're in control of what information you share with Google when you search. To browse the web privately, you can use private browsing, sign out of your account, change your custom results settings, or delete past activity." Broome Ex. 92. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | tab[,] You might see search results and suggestions based on your location or other searches you've done during your current browsing session." Ex. 92 (Search & browse privately page). | |
| Issues 1, 2 | Fact 43. Plaintiffs identify only three "promises" from the <u>Search & browse privately</u> page: (1) "You're in control of what information you share with Google when you search," (2) "To browse the web privately, you can use private browsing, sign out of your account, change your custom results settings, or delete past activity," and (3) "[i]f you want to search the web without saving your search activity to your account, you can use private browsing mode in a browser (like Chrome or Safari)." FAC ¶¶ 42, 47–48; Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 9:5–10. | <u>Disputed</u>. On this page, Google represented that Google will not collect and use the at-issue private browsing data. Broome Ex. 92. |
| Issues 1, 2 | Fact 44. The <u>Search & browse privately</u> Help page was visited fewer than ■■ ■■ times between its launch in 2016 and January 2022. Ex. 85 (McPhie Decl.) ¶ 76. | <u>Disputed</u>. Plaintiffs do not have access to Google's system that generated this information, and Google has not laid the legal foundation for the admissibility of this hearsay. |
| Issue 2 | Fact 45. The <u>Search & browse privately</u> Help page was not linked to the Privacy Policy until May 2018. Ex. 85 (McPhie Decl.) ¶ 77. | <u>Undisputed</u> that there was not a direct hyperlink. |
| Issue 2 | Fact 46. The <u>Search & browse privately</u> Help Page is not referenced in any version of Google's Terms of Service or CPN. Exs. 135–138 (TOS); Exs. 139–140 (CPNs). | <u>Disputed</u>. As Google admits with Fact 45, the "Search & browse privately" page (as of May 2018) was directly linked to the Privacy Policy, which is part of the same contract as the TOS and CPN. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2, 11 | Fact 47. Google servers store the at-issue data keyed by (*i.e.*, associated with) unique identifiers contained in cookies. Ex. 84 __ (Ganem Decl.) ¶¶ 9, 14; Ex. 83 (Berntson Decl.) ¶¶ 9–11; Ex. 82 (Psounis Rep.) §§ III.A, C & D; Ex. 15 (Google's November 6, 2020 RFA Resp.), at No. 7. | <u>Undisputed</u> that "keyed" means "associated with" and that data is "associated with unique identifiers." <u>Disputed</u> because those unique identifiers do not only consist only of identifiers contained in cookies. *See* Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.A, D, F, H, ¶¶ 85, 104-09, 139; *id.* ¶¶ 224, 226 (detailing other identifiers such as PPID, Analytics User ID, IP address and user-agent string, device platform, and browser version). The private browsing data Google stores is identifying. *Id.*; *see also* Mao Ex. 9 at -2; Ex. 10 at -09; Ex. 11 at -485; Ex. 12 (Berntson 2022 Tr.) 120:1-22, 126:4-6; *see also* Additional Facts 24-25. The at-issue data is saved on Google's servers and elsewhere, including in users' browsers. Broome Ex. 77 (Hochman Opening Rep.) ¶ 320. |
| Issues 1, 2, 11 | Fact 48. When a user is signed into a Google Account, browsing data Google receives is keyed by an authenticated GAIA identifier. Ex. 83 (Berntson Decl.) ¶¶ 10–11; Ex. 82 (Psounis Rep.) ¶¶ 44–45. | <u>Disputed</u>. Google receives and stores signed-in browsing data with a variety of other identifiers as well, including encrypted Biscotti ID, PPID-mapped-Biscotti ID, IP and user-agent, Analytics User ID, and Google Ads User ID. Broome Ex. 77 (Hochman Opening Rep.) § VIII.F, ¶¶ 107, 284; Mao Ex. 8 (Hochman Rebuttal Rep.) § V.A, ¶ 24, App'x A. |
| Issues 1, 2, 11 | Fact 49. When a user is not signed into a Google account, browsing data Google receives is keyed by an unauthenticated identifier that is not associated with a user's Google Account. Ex. 83 (Berntson Decl.) ¶¶ 10–11; Ex. 82 (Psounis Rep.) ¶¶ 44–45 & nn.29–36. | <u>Disputed</u>. Google receives and stores signed-out data with personally identifying information, including but not limited to PPID, IP address, and user-agent strings. *See* Response to Fact 47. |
| Issues 1, 2, 11 | Fact 50. When a Chrome user starts a new Incognito session, Chrome creates a new "cookie jar" for the storage of cookies | <u>Disputed</u>. The concept of a "cookie jar" relates only to Google's storage of information on the user's device and |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | placed on the browser during the Incognito session. Ex. 83 (Berntson Decl.) ¶¶ 18–19; Ex. 76 (Zervas Rep.) ¶¶ 63–65; Ex. 45 (Berntson 6/16/2021 Tr.) 279:1–11; Ex. 82 (Psounis Rep.) § III.A; Ex. 56 (McClelland Tr.) 80:12–81:11; Ex. 40 (Google's October 6, 2021 Amended Rog Resp.), at No. 1(d). | browser. Mao Ex. 18 (Berntson 2023 Tr.) 21:10-23:4. Google also stores data on its servers, and for that data storage, Google does not create a new container for each session. *Id.*; Broome Ex. 77 (Hochman Opening Rep.) § VIII.D; Mao Ex. 8 (Hochman Rebuttal) ¶¶ 62-69. |
| Issues 1, 2, 11 | Fact 51. The new cookie jar prevents the sharing of cookies that existed on the user's browser before the Incognito session. Ex. 83 (Berntson Decl.) ¶ 19; Ex. 59 (Schneier Tr.) 107:17–108:20; Ex. 82 (Psounis Rep.) § III.A; Ex. 40 (Google's October 6, 2021 Amended Rog Resp.), at No. 1(d). | <u>Disputed</u>. Starting a new Incognito session does not delete cookies from the user's existing cookie jar. Even after opening an Incognito session, subsequent use of non-Incognito mode will share cookies with Google that existed before the user initiated the Incognito session. *See* Broome Ex. 83 ¶¶ 20-31. Also, cookies that existed before the Incognito session were already shared with Google. Broome Ex. 77 (Hochman Opening Rep.) § VIII.F. Using this information, as well as non-cookie identifiers (e.g., PPID, Analytics User ID, IP address and user-agent string), Incognito activity can be linked to the user's pre-Incognito cookies. *Id.* § VIII.F. *See* Additional Fact 4. |
| Issues 1, 2, 11 | Fact 52. When a user is in PBM, cookies set by websites and their service providers (like Google) are stored only in the new cookie jar. Ex. 83 (Berntson Decl.) § B.2; Ex. 56 (McClelland Tr.) 294:19–296:15; Ex. 82 (Psounis Rep.) § III.A. | <u>Disputed</u>: *See* Response to Fact 50. |
| Issues 1, 2, 11 | Fact 53. If a PBM user does not sign into a Google Account during their PBM session, Google services that engage in tracking or provide personalization will use only data from that PBM session. Ex. 83 (Berntson Decl.) § B.2; Ex. 56 (McClelland Tr.) 72:25–74:5, 80:12–81:11, 294:19–296:15; Ex. 82 (Psounis Rep.) § III.A. | <u>Undisputed</u> that Google engages in "tracking" and personalizes ads even when a PBM user does not sign into Google. <u>Disputed</u> because Google uses any <u>identifiers</u> associated with a particular browsing session *and* "all associated IDs." Broome Ex. 77 (Hochman Opening Rep.) ¶ 184; *see also id.* ¶¶ 107, 177, § VIII.E.2 (Google links |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | private browsing sessions when a user signs in to non-Google websites that assign PPIDs or other User IDs). Google uses this infrastructure to track conversions across different browser sessions and devices. *Id.* ¶¶ 208-11, App'x. F. *See* Additional Fact 4. |
| Issues 1, 2, 11 | Fact 54. Initiating a new PBM session automatically logs the user out of her Google Account and any other online accounts. Ex. 83 (Berntson Decl.) § B.2; Ex. 76 (Zervas Rep.) ¶¶ 72–73; Ex. 82 (Psounis Rep.) ¶ 36; Ex. 59 (Schneier Tr.) 107:17–108:20. | Disputed. When a user initiates a new private browsing session, the user is logged out of her Google Account and any other online accounts within that private browsing session only. Initiating a new private browsing session does not affect the user's logged-in status in regular browsing mode. Broome Ex. 83, ¶¶ 24-25; Broome Ex. 77 (Hochman Opening Rep.) ¶ 161 & n.56. |
| Issues 1, 2, 11 | Fact 55. If a PBM user does not sign into a Google Account, the browsing data Google receives is keyed only to unauthenticated identifiers stored in new cookies. Ex. 83 (Berntson Decl.) § B.2; Ex. 82 (Psounis Rep.) §§ III.A, IV.C; Ex. 76 (Zervas Rep.) § IV.D; Ex. 56 (McClelland Tr.) 72:25-76:9, 80:12–81:11, 295:15–296:15; *see also* Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 8:8-10. | Disputed. *See* Response to Fact 47. |
| Issues 1, 2, 9, 11 | Fact 56. In Google's systems, a signed-out user's PBM browsing activity is not associated with her Google Account. Ex. 83 (Berntson Decl.) § B.2; Ex. 82 (Psounis Rep.) §§ III.A, III.C, III.D, III.F, IV.C; Ex. 76 (Zervas Rep.) § IV.D; Ex. 56 (McClelland Tr.) 72:25-76:9, 80:12–81:11, 295:15–296:15; *see also* Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 8:8-10. | Disputed. Google saves signed-out private browsing data with unique identifiers such that linking private browsing data to a Google Account is trivial. *See* Response to Fact 47. |
| Issues 1, 2, 9, | Fact 57. When a user ends a PBM session, the browser automatically deletes any | Disputed. As explained in Plaintiffs' response to Fact 50, Google stores |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 11 | cookies set during the PBM session. Those cookie values cannot be used to identify the user after she closes the PBM session, making the at-issue data both unidentified and "orphaned." Ex. 76 (Zervas Rep.) § IV; Ex. 81 (Zervas Reb. Rep.) § V; Ex. 82 (Psounis Rep.) § III.A, III.C, III.F, IV.C; Ex. 83 (Berntson Decl.) ¶¶ 10–11, 19–31; Ex. 56 (McClelland Tr.) 72:25–76:9, 80:12–81:11, 278:5–281:14, 295:15–296:15, 318:21–319:15. | cookies in both the cookie jar on the user's device/browser and in logs on Google's servers. When a user ends a PBM session, the browser does not delete any data (including cookies) stored on Google servers. Mao Ex. 18 (Berntson 2023 Tr.) 21:10-23:4; Broome Ex. 77 (Hochman Opening Rep.) § VIII.D, App'x. H (data analysis). The data on Google's servers is not orphaned. *See* Response to Fact 47. |
| Issue 9 | Fact 58. The amount of data Google receives from a given user's PBM session depends on the length of the session before closing the browser and may reflect activity on only a single website. Ex. 59 (Schneier Tr.) 140:13–15; Ex. 82 (Psounis Rep.) ¶¶ 48–64; Ex. 49 (Davis Tr.) 80:1–19; Ex. 76 (Zervas Rep.) § IV. | <u>Disputed.</u> Insofar as Google is implying that data from such a session would not be identifying. *See* Response to Fact 47. *See also* Additional Fact 4. |
| Issues 1, 2, 11 | Fact 59. In Incognito mode, Chrome will not save the user's browsing history, cookies or site data, or information entered in forms, after the user closes the Incognito browsing session. Ex. 76 (Zervas Rep.) ¶¶ 59-61, 66-71, 74-79; Ex. 59 (Schneier Tr.) 71:22-78:14, 107:17-108:20. | <u>Disputed.</u> *See* Responses to Facts 47, 50. The data is even stored in ▮▮▮▮▮ ▮▮▮ Mao Ex. 13 at -06; Broome Ex. 77 (Hochman Opening Rep.) ¶ 255; *see also* Additional Fact 17 (Google internal dictionary cites for "save") |
| Issues 1, 2, 9, 11 | Fact 60. Like Chrome Incognito, other browsers' PBMs create a new cookie jar when a user starts a PBM session, and delete browsing history, cookies, and website data locally from the browser when the user closes the session. If a user does not sign into a Google Account while in PBM, any browsing data Google receives will be keyed only to unauthenticated identifiers. Ex. 76 (Zervas Rep.) §§ IV.B, IV.C; Ex. 82 (Psounis Rep.) ¶¶ 48–64. | <u>Disputed.</u> Google saves signed-out private browsing data (including from non-Chrome browsers) with unique identifiers such that linking private browsing data to a Google Account is trivial. *See* Response to Fact 47. |
| Issues | Fact 61.  When a user visits a website that | <u>Disputed.</u> Google does not receive users' |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 1, 2 | uses third party services or resources, standard HTTP network transfer protocols cause a user's browser to send an IP address and user agent value to the website and any third party domains that host web services or resources on that site. Ex. 82 (Psounis Rep.) ¶¶ 95–99; Ex. 142 (Monsees 4/9/2021 Tr.) 84:17–85:12; Ex. 143 (Monsees 6/11/2021 Tr.) 470:3–471:1; Ex. 144 (Porter Felt 30(b)(6) Tr.) 40:6–19; Ex. 145 (Rakowski Tr.) 32:8–22, 49:20–50:3, 81:13–82:2. | private browsing data, including IP address and user-agent string, because of standard HTTP network transfer protocols. Google receives this private browsing data because Google's code instructs the user's browser (on the user's device) to send a copy of the private browsing data to Google's servers. Mao Ex. 14 (Google's Response to RFA No. 31) ("[Google] code instructs the user's browser"); Ex. 15 (Google's Response to RFA No. 52) (Google tracking beacons "will cause the user's browser to attempt to" send browsing data to Google, including when the user is in a private browsing mode). Google's tracking beacons do not facilitate and are not incidental to communications between users and non-Google websites. Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.A.3-4. "The communications flow back and forth between the user's browser and the non-Google website's server irrespective of the Google tracking beacons." *Id.* ¶ 113. Google could have designed its code not to send a copy of private browsing communications to Google. *Id.* § VIII.A.6. |
| Issues 1, 2, 11 | Fact 62. Browsing data in Google's systems is not keyed to a user's IP address, user agent value, or combination of the two. Ex. 83 (Berntson Decl.) ¶ 12; Ex. 62 (Berntson 2/14/2023 Tr.) 113:3–115:22; Ex. 82 (Psounis Rep.) §§ III.A, III.C, III.D–G, III.I–J, IV.A–C, App'xs. E–F; Ex. 80 (Zervas Reb. Rep.) § V; Ex. 56 (McClelland Tr.) 278:5–279:24. | <u>Disputed</u>. Browsing data (including private browsing data) stored in Google's servers is "keyed by (i.e., associated with)" (Google's Fact 47) the user's IP address and user-agent value. This was reflected in log data Google produced to Plaintiffs, as well as in Google's internal documentation. Broome Ex. 77 (Hochman Opening Rep.) § VIII.A, D, F, H, ¶¶ 99, 101, 105, 224-36 (citing Google documents); Mao Ex. 8 (Hochman Rebuttal Rep.) § V.A; Ex. 11 at -485; Dkt. 531 (Google's Answer) ¶ 63. |
| Issues | Fact 63. Google's internal policies | <u>Disputed</u>. Google's policies expressly |

| | Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|---|
| | 1, 2, 9, 11 | prohibit the use of fingerprinting to track user behavior for ad targeting or to identify users. Ex. 83 (Berntson Decl.) ¶¶ 4–5, 11–12, 42–43; Ex. 82 (Psounis Rep.) §§ III.F, IV.C; Ex. 81 (Schwartz Rep.) §§ VI.A.iii–iv; Ex. 62 (Berntson 2/14/2023 Tr.) 113:3–115:22; Ex. 56 (McClelland Tr.) 278:5–279:24, 290:5-24; Ex. 71 (Fingerprinting Policy); Ex. 70 (Log Data Usage Rules). | permit the use of fingerprinting and "[i]mmutable identifiers" to identify a unique "device, app, browser, or user." Broome Ex. 71 (listing "permitted users"). Also incomplete in that Google targets ads and further identifies users, including private browsing users, through myriad other identifiers that Google excludes from its internal definition of fingerprinting. Broome Ex 77 (Hochman Opening Rep.) ¶¶ 106-07, §§ VIII.E, F; Mao Ex. 8 (Hochman Rebuttal Rep.) ¶¶ 66-68. |
| | Issues 1, 2, 9, 11 | Fact 64. Google employs technical safeguards to prevent the use of fingerprinting or other techniques to join information keyed to unauthenticated identifiers with information keyed to authenticated identifiers. Ex. 62 (Berntson 2/14/2023 Tr.) 110:19–111:11, 113:3–115:22; Ex. 82 (Psounis Rep.) §§ III.A, III.C-D, III.F, IV.C. | Disputed. Google stores private browsing data in the same log as signed-in regular browsing data. Dkt. 797-3 at 10; Dkt. 797-19 ¶ 3; see also Additional Fact 4. Google employees admit that it is impossible to prevent private browsing data from being joined to users. Additional Fact 24. Plaintiffs' experts also explain how private browsing data is associated with unique identifiers, which are personally identifying. Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.F, H; Broome Ex. 75 (Schneier Opening Rep.) § V.9; Mao Ex. 8 (Hochman Rebuttal Rep.) § V.A; Ex. 17 (Schneier Rebuttal Rep.) § III.2. |
| | Issues 1, 2, 9, 11 | Fact 65. Google does not join data from signed-out out PBM sessions with a data from other browsing sessions, whether in Incognito or other modes. Ex. 83 (Berntson Decl.) § B.2; Ex. 82 (Psounis Rep.) §§ III.A, III.C-D, III.F, IV.C; Ex. 56 (McClelland Tr.) 73:14–74:5, 278:5–279:24, 280:20–281:10, 285:5–13, 290:5–24. | Disputed. See Response to Facts 63-64, 67. |
| | Issues 8, 9, 11 | Fact 66. Plaintiffs' experts have hypothesized as to what Google "could do" in terms of fingerprinting and joining | Disputed. See Response to Facts 63-64, 67. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | authenticated and unauthenticated data, but they have not found any evidence that Google in fact engages in such fingerprinting or joining. Ex. 59 (Schneier Tr.) 112:6–20; Ex. 61 (Hochman Tr.) 88:9-89:12, 233:11–234:18; Ex. 77 (Hochman Rep.) ¶¶ 226–27, 236–37; Ex. 82 (Psounis Rep.) § III.F. | |
| Issues 1, 2, 9, 11 | Fact 67. Google does not use ▮▮▮▮▮ graphs to join signed-out PBM data to a user's Google account. Ex. 45 (Berntson 6/16/2021 Tr.) 372:14–373:16; Ex. 82 (Psounis Rep.) § III.D. | Disputed. Google can and does use ▮▮▮▮▮ to join signed-out PBM data to a user's Google Account. Broome Ex. 77 (Hochman Opening Rep.) ¶ 184, App. F. ¶¶ 11, 14; Mao Ex. 18 (Berntson 2023 Tr.) 96:6-98:22. *See* Additional Fact 4. |
| Issue 1, 2, 4 | Fact 68. PBMs are designed not to indicate to websites or web-service providers that the user is in PBM. Ex. 80 (Zervas Reb. Rep.) ¶¶ 85–89; Ex. 77 (Hochman Rep.) ¶¶ 136–37; *id.* ¶ 117; Ex. 82 (Psounis Rep.) §§ III.B, IV.C. | Disputed. Google designed detection bits to detect whether traffic is from a private browsing mode, and those bits rely on information provided by the browser. Additional Fact 4. |
| Issue 1, 2, 4 | Fact 69. It is industry standard for PBM's not to send a signal that users are in PBM. Ex. 82 (Psounis Rep.) ¶¶ 72–76. | Disputed. Psounis cites "guidelines," not a formal standard. Google violates these guidelines through its sending of the x-client-data header in regular mode, the lack of which signals to Google that a user is in Incognito mode. Broome Ex. 77 (Hochman Opening Rep.) ¶ 97. Google relatedly violates these guidelines through its use of private browsing detection bits. Additional Fact 4. |
| Issue 9 | Fact 70. Plaintiffs' privacy expert testified that detecting that a user is in PBM is itself a violation of that user's privacy. Ex. 59 (Schneier Tr.) 129:23–130:5, 131:21–23, 170:15–25; Ex. 75 (Schneier Rep.) ¶ 86. | Disputed as to any implication that this is the only way in which Google violates PBM users' privacy. *See* Response to Fact 69. |
| Issue 9 | Fact 71. The Google code that causes users' browsers to send HTTP requests to | Disputed. Google's expert disagreed that the code is browser- and mode-agnostic. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Google servers to retrieve Google services is browser-agnostic and mode-agnostic. Ex. 82 (Psounis Rep.) ¶¶ 72–76; Ex. 80 (Zervas Reb. Rep.) ¶¶ 85–89, 93–96; Ex. 77 (Hochman Rep.) ¶¶ 117, 136–37; Ex. 57 (Chung 30(b)(6) Tr.) 26:10-18; Ex. 65 (*Calhoun* Oct. 24, 2022 Hrg. Tr.) 51:7-14, 53:5–12, 55:14–57:19, 71:17–72:8. | Broome Ex. 80 (Zervas Reb. Rep.) ¶ 110. Only Chrome sends the x-client-data header. *See* Response to Fact 69. Firefox works differently. *See* Response to Facts 72-74. Plaintiffs also object to the use of any materials from the *Calhoun* litigation because it is not admissible. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c). *See* Additional Fact 4. |
| Issue 9 | Fact 72. To prevent Google services from receiving the at-issue data while users are in PBM, browser manufacturers would have to modify their browsers to send a reliable, client-side signal identifying the user as being in PBM. Ex. 82 (Psounis Rep.) § III.B. | <u>Disputed</u>. Google sends a client-side signal in the x-client-data header. *See* Response to Fact 69. But sending a client-side signal is not necessary, as Firefox blocks Google beacons. Broome Ex. 77 (Hochman Opening Rep.) § VIII.A.6. Google recognized that a signal at the end of an Incognito session would provide a way to delete Incognito session data but chose not to implement it. Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 50, 132, 159 *See* Additional Fact 4. |
| Issues 1, 2 | Fact 73. Other browsers' PBMs provide privacy in a similar manner to Incognito mode—*i.e.*, deleting browsing history, cookies, and website data locally from the browser when the user closes the session. Ex. 76 (Zervas Rep.) §§ IV.B, IV.C. | <u>Disputed</u>. Firefox's private browsing mode blocks Google's tracking beacons. Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 114-23. Safari's private browsing mode provides greater privacy by isolating tracking to each tab (Incognito tracks across tabs and windows) and using "IP blinding" (Incognito does not). *Id.* ¶¶ 129-30, 331. |
| Issues 1, 2 | Fact 74. Plaintiffs issued subpoenas to Apple, Mozilla, and Microsoft seeking "ALL DOCUMENTS sufficient to IDENTIFY all individuals who have used" their respective PBMs. Each company responded that no such documents exist. Exs. 42–44. | <u>Disputed</u>. Plaintiffs object to the use of emails and other out-of-court statements (*i.e.*, Broome Exs. 42-44) because they are hearsay and not admissible. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c). Google could have obtained declarations or other forms of admissible evidence from these companies, but did not. If the evidence is admissible, it shows that |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | those companies (unlike Google) do not have private browsing detection bits. |
| Issues 1, 2 | Fact 75. The fact that Chrome does not save the user's browsing history, cookies or site data, or information entered in forms after the user closes the Incognito browsing session provides privacy from other people who may use the same device. Ex. 85 (McPhie Decl.) ¶¶ 3, 5; Ex. 59 (Schneier Tr.) 104:15–19; Ex. 53 Castillo Tr.) 254:3–11. | Disputed. Google (through Chrome) still collects, stores, and uses the at-issue data, without providing a way for users to control that data, which is identifying. *See* Response to Facts 9, 47. Private browsing data has mixed with subsequent non-private browsing sessions. Mao Ex. 5 (Castillo Tr.) 215:11-220:18; *See* Additional Fact 4. |
| Issues 1, 2 | Fact 76. The fact that PBM provides local privacy is important to the many users whose devices are accessible to other users. Ex. 59 (Schneier Tr.) 134:5–135:16; Ex. 65 (Schneier Dep. Ex. 7) at 10; Ex. 82 (Psounis Rep.) ¶¶ 163 n.218, ¶¶ 170-72. | Disputed. The average user has more than one device. Mao Ex. 16 (Hochman Tr.) 463:7-18; Mao Ex. 25 (Lasinski Rep.) ¶ 168. |
| Issues 1, 2 | Fact 77. When Plaintiffs' privacy expert was asked why he did not use PBM, he testified: "I never used a shared computer." Ex. 59 (Schneier Tr.) 82:9–12. | Undisputed. |
| Issues 1, 2, 9 | Fact 78. The fact that Chrome automatically deletes cookies when the user closes an Incognito session provides users a measure of privacy. Ex. 59 (Schneier Tr.) 139:1–7. | Disputed. While cookies may be deleted on the browser, Google retains information about the user's Incognito browsing session, including cookies. Mao Ex. 18 (Berntson 2023 Tr.) 21:7-15; 37:22-38:16; *see also* Response to Fact 75. |
| Issues 1, 2 | Fact 79. Google offers a variety of privacy settings across its services that that give users control over their data. Chrome's cookie blocking feature is an example. Ex. 59 (Schneier Tr.) 153:6–24. | Disputed. Google does not provide users with control over its collection, storage, and use of the at-issue private browsing data; there is no way to prevent that. *See* Additional Fact 21; Mao Ex. 8 (Hochman Rebuttal) § V.E; Ex. 18 (Berntson 2023 Tr.) 42:9-43:22; Ex. 19 (Zervas Tr.) 87:1-88:8; Ex. 20 (McClelland Tr.) 318:3-12; Ex. 21 (Rakowski Tr.) 316:5-317:1; |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Ex 22 at -72 (Google Analytics tracking beacon on over ▇ of websites); Broome Ex. 77 (Hochman Opening Rep.) ¶ 311; *see also* Response to Fact 80. |
| Issues 1, 2, 9 | Fact 80. The fact that Incognito mode prevents the sharing of existing cookies with websites provides users a measure of control over their data. Ex. 59 (Schneier Tr.) 154:21–155:4. | <u>Disputed</u>. *See* Responses to Facts 51, 79; *see also* Mao Ex. 23 at -56.C ("you don't have the ability to see or delete it"). |
| Issues 1, 2, 9 | Fact 81. The fact that Incognito mode automatically deletes cookies when the user closes the browsing session provides users a measure of control over their data. Ex. 59 (Schneier Tr.) 155:5–8. | <u>Disputed</u>. *See* Responses to Facts 57, 75, 79, and 80. |
| Issues 1, 2, 9, 11 | Fact 82. The ways in which Incognito mode provides privacy—deleting browsing history, cookies, and website data locally from the browser when the user closes the session, starting with a fresh cookie jar, and logging users out of their accounts—provides users control over the at-issue data. Ex. 63 (McPhie Tr.) 100:25-102:22;  Ex. 59 (Schneier Tr.) 154:21–155:8. | <u>Disputed</u>. *See* Responses to Facts 60, 75, 79, and 80. |
| Issues 1, 2 | Fact 83. Google's survey expert's study shows that modifying the Incognito Screen to include Google in the list of entities to which users' activity "might still be visible" has no statistically significant impact on users' likelihood of using Chrome in Incognito mode to do online research on a sensitive topic. Ex. 78 (Amir Rep.) § VIII. | <u>Disputed</u>. Dr. Amir did not ask survey respondents whether adding "Google" to the Splash Screen would affect their understanding of whether Google collects the data. Broome Ex. 78 (Amir Rep.) § VIII. *See also* Response to Facts 1, 85. |
| Issues 1, 2 | Fact 84. Plaintiffs have no evidence supporting the claim that their alleged interpretation of the alleged contract was shared by anyone other than themselves. Ex. 79 (Keegan Rep.) ¶ 168-69 & Ex. 3; Keegan Tr. 191:16–192:9. | <u>Disputed</u>. *See* Response to Fact 1; Additional Facts 7-13, 19-21. |

Case No. 4:20-cv-03664-YGR-SVK

PLAINTIFFS' RESPONSE TO GOOGLE LLC'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 85. Shown the documents Plaintiffs claim comprise their contract, more than half of survey respondents expect Google receives their IP address, URLs of sites visited, and cookies in Incognito mode. Ex. 78 (Amir Rep.) ¶¶ 69, 73 & Tables 5 & 6. | <u>Disputed</u>. Dr. Amir omitted the Search & browse privately page, and he included documents (e.g., the "Learn More" page) that neither Plaintiffs nor Google contend are part of the form contract. Dr. Amir's survey also suffers from design flaws because (1) respondents were not limited to Google account holders who used the relevant private browsing modes, (2) Dr. Amir failed to exclude respondents who had learned about this lawsuit, (3) Dr. Amir did not specifically ask respondents about the scenario at issue in this case (using private browsing while signed out of Google to visit a non-Google website), and (4) Dr. Amir did not ask about consent. Broome Ex. 79 (Keegan May 2022 Rep.) § IV, ¶ 133. *See also* Response to Fact 1; Mao Ex. 24 (Amir Tr.) 258:4-19. Plaintiffs' expert Mark Keegan found that ███ of users believed that Google did not collect private browsing data or that Google had no consent to collect that data. Broome Ex. 79 (Keegan Rep.) ¶ 185. |
| Issue 2 | Fact 86. Plaintiffs do not allege that other browser's PBM screens are part of their contract with Google. FAC ¶ 268. | <u>Undisputed</u>. |
| Issues 1, 2, 9 | Fact 87. Firefox's PBM states that its PBM "helps you obscure your online activity from other people who use Firefox on your computer, but does not make you invisible online." Ex. 85 (McPhie Decl.) ¶¶ 101-102. | <u>Disputed</u>. Firefox's PBM screen does not contain the quoted language. Broome Ex. 85 ¶ 101. |
| Issues 1, 2, 9 | Fact 88. Microsoft's PBM screen states that "Websites can still personalize content for you during your InPrivate browsing session because cookies and other site permissions aren't deleted until you close all InPrivate windows." Ex. 85 (McPhie Decl.) ¶¶ 103-105. | <u>Disputed</u>. Microsoft's private browsing screen does not contain the quoted language. Broome Ex. 85 ¶ 103. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2, 9 | Fact 89. Safari's PBM screen states "[a]fter you close this window, Safari won't remember the pages you visited, your search history, or your Autofill information." Ex. 85 (McPhie Decl.) ¶ 106. | <u>Undisputed</u>. |
| Issue 5 | Fact 90. Google's receipt of the at-issue data is essential to its ability to provide PBM users the Google services website developers have chosen to install on their sites. Ex. 84 (Ganem Decl.) § A; Ex. 83 (Berntson Decl.) § A; Ex. 76 (Zervas Rep.) § V.A–B; *id.* ¶¶ 39–40; Ex. 80 (Zervas Reb. Rep.) § III.D; Ex. 77 (Hochman Rep.) ¶ 108. | <u>Disputed</u>. Google does not provide the services for "users." Broome Ex. 83 ¶ 2 ("Google AdSense and Ad Manager are Google services *for publishers*"); Broome Ex. 76 (Zervas Rep.) § V (discussing "Google services *used by third party websites*"). Google tracking beacons are not essential for users to access non-Google websites. *See* Response to Fact 61. Also, Google employees have stated that Incognito accounts for roughly ▮ of browsing traffic, Broome Ex. 77 (Hochman Opening Rep.) ¶ 290, and there is no evidence Google must collect this portion of browsing data to continue providing services to websites that use services like Google Analytics. |
| Issue 5 | Fact 91. The device that causes Google to receive the at-issue data is the code for the Google service that the website developer installed on its site to obtain that service. FAC ¶¶ 68, 79; Ex. 76 (Zervas Rep.) ¶¶ 44, 88–90, 107–08; Ex. 84 (Ganem Decl.) ¶¶ 2, 5, 7; Ex. 83 (Berntson Decl.) ¶¶ 2, 7; Ex. 40 (Google's October 6, 2021 Amended Rog Resp.), at No. 1(b). | <u>Disputed</u>. At-issue code (i.e., tracking beacons) is "retrieved and executed by the browser as part of rendering the publisher's website." Mao Ex. 14 (Request for Admission No. 31); Broom Ex. 77 (Hochman Opening Rep.) ¶ 112. Tracking beacons are held and controlled by Google, not installed by web developers on third-party websites. Broome Ex. 77 (Hochman Opening Rep.) ¶ 91. |
| Issue 4 | Fact 92. Website developers who engage Google's advertising and analytics services are generally aware that advertising and analytics services send the at-issue data to Google when users are in PBM. Ex. 80 (Zervas Reb. Rep.) ¶¶ 49, | <u>Disputed</u>. Website developers are not aware that Google collects private browsing data through these services, as shown even by the sources Google cites. Broome Ex. 58 (Keegan Tr.) 224:23-226:10 (only became aware of this |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | 85–89; *id.* ¶¶ 93–96; Dkt. 608-12 (Hochman Rep.) ¶¶ 136–37; Ex. 58 (Keegan Tr.) 224:23–226:10. | practice "from what I've learned in this case"); Broome Ex. 77 (Hochman Opening Rep.) § VIII.C, ¶ 56, App'x. A ¶¶ 20-22. Additional Fact 6. Google has not proffered any disclosure which informs websites, let alone identified a single website developer who claimed to be aware of the at-issue data collection, much less use. |
| Issues 4, 5, 9 | Fact 93. Analytics and Ad Manager code, and the infrastructure that supports those services, is used by Google in the ordinary course of its business of providing online advertising and analytics services to its customers. Ex. 84 (Ganem Decl.) ¶¶ 2, 17; Ex. 83 (Berntson Decl.) ¶¶ 2, 7; Ex. 40 (Google's October 6, 2021 Amended Rog Resp.), at No. 1(d); Ex. 76 (Zervas Rep.) §§ V.A, V.B; Ex. 80 (Zervas Reb. Rep.) §§ III.D.1, III.D.2, III.D.3; Ex. 77 (Hochman Rep.) ¶ 84. | <u>Disputed</u>. Google admits it uses the at-issue data for purposes beyond providing services to websites, including to detect traffic as private and enrich itself. *See* Additional Facts 4, 26-28; *see also* Response to Fact 61. |
| Issues 4, 5, 9 | Fact 94. Google uses the at-issue data to provide ads and analytics services to websites. Ex. 84 (Ganem Decl.) § A; Ex. 76 (Zervas Rep.) §§ V.A, V.B; Ex. 83 (Berntson Decl.) § A. | <u>Disputed</u>. *See* Response to Fact 93. |
| Issues 4, 5, 9 | Fact 95. Websites engage Google's analytics service to understand how users interact with their sites. Ex. 76 (Zervas Rep.) § V.A; Ex. 80 (Zervas Reb. Rep.) §§ III.D.1–2; Ex. 84 (Ganem Decl.) ¶ 2. | <u>Disputed</u>. Some websites may engage Google to provide analytics services to understand how users interact with their websites, but Fact 95 is not supported by any evidence obtained from any website. |
| Issues 4, 5, 9 | Fact 96. Website developers engage Google's ads business to monetize their sites, including in many cases to offer free content to users. Ex. 76 (Zervas Rep.) § V.B; Ex. 80 (Zervas Reb. Rep.) §§ III.D.1, III.D.3; Dkt. 224 (July 21, 2021 Joint Case Management Statement) at 10; Ex. 83 (Berntson Decl.) ¶¶ 2, 10. | <u>Disputed</u>. Some websites may engage Google's ad business to monetize their sites, and some websites may offer free content to users, but Fact 96 is not supported by any evidence obtained from any website. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 5, 9 | Fact 97. Many websites rely on third-party web-service providers receiving and processing the at-issue data. Ex. 76 (Zervas Rep.) ¶ 39; Ex. 80 (Zervas Reb. Rep.) § III.E & App'x E. | <u>Disputed</u>. Google employees have stated that Incognito accounts for roughly ███ of browsing traffic. Broome Ex. 77 (Hochman Opening Rep.) ¶ 290. Google identifies no evidence suggesting that any website, let alone many websites, could not function but for Google's collection of private browsing data. *See also* Response to Fact 93. |
| Issue 6 | Fact 98. Plaintiffs understood that in Incognito their browsing activity would be visible to the websites they visit, their Internet Service Provider, and their employer or school. Exs. 5–8 (Brown, Byatt, Castillo, and Davis May 24, 2021 Amended RFA Resp.), at Nos. 12 & 14; Ex. 9 (Trujillo June 7, 2021 RFA Resp.), at Nos. 12 & 14; Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 6:4-6; Ex. 47 (Byatt Tr.) 135:19–136:18; Ex. 49 (Davis Tr.) 31:14–32:8; Ex. 51 (Brown Tr.) 120:15–121:20; Ex. 54 (Trujillo Tr.) 140:24–143:6; Ex. 53 (Castillo Tr.) 166:9–168:2. | <u>Undisputed</u>. |
| Issue 6 | Fact 99. Many websites inform users that their website logs the at-issue data upon receipt. *See, e.g.,* Ex. 48 (Byatt Dep. Ex. 2 - New York Times Privacy Policy); Ex. 47 (Byatt Tr.) 51:8–57:17; Ex. 52 (Brown Dep. Ex. 1 - Redfin Privacy Policy); Ex. 51 (Brown Tr.) 35:23-40:25; Ex. 50 (Davis Dep. Ex. 4 - CoinMarketCap.com Privacy Policy); Ex. 49 (Davis Tr.) 51:9-54:13; Ex. 55 (Trujillo Dep. Ex. 1 - William Sonoma Privacy Policy); Ex. 54 (Trujillo Tr.) 55:22–57:18; Ex. 85 (McPhie Decl.) ¶¶ 86-92. | <u>Disputed</u>. None of the privacy policies Google lists disclose that websites log users' data while the user is in a private browsing mode. *See also* Mao Ex. 4 (Byatt Tr.) 118:14-119:15; Ex. 3 (Brown Tr.) 49:18-50:7; Ex. 6 (Davis Tr.) 51:9-55:7; Ex. 7 (Trujillo Tr.) 56:8-58:1; *see also* Response to Fact 13. Nor do these privacy policies disclose the conduct that Google was sanctioned for concealing, including Google's use of private browsing detection bits. *See* Additional Fact 4. |
| Issues 4, 5, 7 | Fact 100. To use Google's advertising and analytics services, website developers download and install code on their websites that directs users' browsers to | <u>Disputed</u>. The use of "download" is inaccurate, and Google services can be implemented in many ways, including without developers directly installing |

Case No. 4:20-cv-03664-YGR-SVK

PLAINTIFFS' RESPONSE TO GOOGLE LLC'S SEPARATE STATEMENT OF UNDISPUTED FACTS

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | send the at-issue data to Google by way of HTTP requests in order to obtain the requested service. FAC ¶¶ 68, 79; Ex. 84 (Ganem Decl.) ¶¶ 2, 5; Ex. 83 (Berntson Decl.) ¶ 2. | code on websites. Broome Ex. 77 (Hochman Opening Rep.) App'x. A ¶13; *see also* Response to Fact 92 (websites unaware that Google collects private browsing information). Undisputed that Google code "directs" the "browser" to send data to Google. |
| Issue 4, 7 | Fact 101. Google is not responsible for installing code on third-party websites. FAC ¶ 68, 79; Ex. 80 (Zervas Reb. Rep.) ¶¶ 4, 44; Ex. 84 (Ganem Decl.) ¶¶ 2, 5; Ex. 83 (Berntson Decl.) ¶ 2. | Disputed. Google instructs websites to install code that causes the browser to "retrieve[] and execute[]" at-issue code (i.e., tracking beacons) as part of rendering the publisher's website." Mao Ex. 14 (Request for Admission No. 31); Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 91, 112. The at-issue code (i.e., the tracking beacons) is held and controlled by Google. *Id.* |
| Issues 8, 10 | Fact 102. No class member paid Google any money to use Chrome or any other Google services at issue. Exs. 29–33 (Plaintiffs' July 30, 2021 Responses to Interrogatories), at No. 13; Exs. 10–14 (Plaintiffs' July 30, 2021 RFA Resp.), at Nos. 26–28. | Disputed. *See* Response to Facts 103-04. |
| Issues 8, 9, 10 | Fact 103. There is no evidence class members have suffered any harm as a result of Google's conduct. Exs. 16–19 (Brown, Byatt, Castillo, and Davis January 11, 2021 Rog Resp.), at No. 3; Ex. 28 (Trujillo's June 7, 2021 Rog Resp.), at No. 3. | Disputed. Class members have suffered harm as a result of Google's conduct. Mao Ex. 25 (Lasinski Rep.) §§ 7-8; Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.D, E, F, H; ¶ 94; Broome Ex. 75 (Schneier Opening Rep.) § 9; Mao Ex. 3 (Brown Tr.) 153:6-156:24, 200:25-201:11; Ex. 4 (Byatt Tr.) 157:15-160:23; Ex. 5 (Castillo Tr.) 258:18-261:9; Ex. 6 (Davis Tr.) 138:18-140:8; Ex. 7 (Trujillo Tr.) 230:10-231:22; *see also* Additional Fact 30; Additional Fact 4. |
| Issues 8, 10 | Fact 104. There is no evidence that the value of class member data was diminished by Google's conduct. Exs. 34–38 (Plaintiffs' September 20, 2021 | Disputed. Google captured, stored, and used users' private browsing data without consent. Google's own studies confirm this data has value, which was |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Rog Resp.), at No. 16; Exs. 24–27 (Brown, Byatt, Castillo, and Davis June 1, 2021 Amended Rog Resp.), at No. 10; Ex. 28 (Trujillo's June 7, 2021 Rog Resp.), at No. 10; Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 13:22–23; Ex. 47 (Byatt Tr.) 208:15-209:6; Ex. 49 (Davis Tr.) 136:17–20. | diminished when Google intercepted the data without providing compensation, (e.g., Screenwise). Mao Ex. 25 (Lasinski Rep.) § 8.1.1; Broome Ex. 77 (Hochman Opening Rep.) § VIII.E; Broome Ex. 75 (Schneier Opening Report) § 4. The sources Google cites support Plaintiffs too. Broome Exs. 34-38 at No. 16; Broome Exs. 24-27 at No. 10; Broome Ex. 28 at No. 10; Broome Ex. 39 at No. 17. |
| Issues 9, 10 | Fact 105. Plaintiffs continued to use Incognito mode despite being aware of Google's receipt of the at-issue data. Ex. 54 (Trujillo Tr.) 117:11–23; Ex. 49 (Davis Tr.) 72:17–74:4, 82:23-83:4, 97:14–98:13; Ex. 47 (Byatt Tr.) 14:9–15:16; Ex. 51 (Brown Tr.) 92:5-11; Ex. 53 (Castillo Tr.) 143:2–144:8. | Disputed. Plaintiffs continued to use private browsing modes for discovery into Google's data collection and storage practices for the Special Master process. Mao Ex. 3 (Brown Tr.) 92:5-93:2, 191:4-192:25; Ex. 4 (Byatt Tr.) 14:9-16:19; Ex. 6 (Davis Tr.) 82:23-83:11, 160:15-161:2; Ex. 7 (Trujillo Tr.) 232:6-232:23, 278:12-280:6. See Response to Fact No. 106. |
| Issues 9, 10 | Fact 106. Plaintiffs have not taken any steps to prevent Google from receiving the at-issue data since filing suit. Ex. 53 (Castillo Tr.) 144:9–144:18, 147:5–13; Ex. 54 (Trujillo Tr.) 32:16–35:20, 111:14–25; Ex. 49 (Davis Tr.) 38:8–21, 75:13–77:25, 82:23–19; Ex. 47 (Byatt Tr.) 23:19–24:2; Ex. 51 (Brown Tr.) 92:5–11; Exs. 5–8 (Brown, Byatt, Castillo, and Davis May 24, 2021 Amended RFA Resp.), at Nos. 18–20; Ex. 9 (Trujillo's June 7, 2021 RFA Resp.), at Nos. 18–20. | Disputed. There are no steps, or combination of steps, Plaintiffs could take to prevent Google from intercepting the at-issue data. See Response to Fact No. 79. |

**Plaintiffs' Statement of Additional Material Facts**

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response |
|---|---|---|
| Issue 2 | Pls' Add'l Fact ("PAF") 1. The Privacy Policy invites users to "search and browse privately," and that contains a hyperlink to the Search & browse privately page. Broome Exs. 100-12. | |
| Issue 2 | PAF 2. The Privacy Policy invites users to "browse the web in a private mode, like Chrome Incognito mode," and it previously invited users to "choose to browse the web privately using Chrome in Incognito mode." Broome Exs. 100-12. | |
| Issue 2 | PAF 3. The Chrome Privacy Notice invites users to "us[e] incognito mode." Broome Exs. 113-34. | |
| Issues 1, 2, 4, 9 | PAF 4. Google was sanctioned, including for concealing four private browsing detection bits used for Chrome, Safari, and Edge/IE, which rely on information Google intercepts from the browser. Dkt. 588-1 at 3, 26; Dkt. 898 at 17; Ex. 26. Google was also sanctioned for concealing how it stores and uses private browsing data, including that it stores signed-out private browsing data in the same log as signed-in data. Dkt. 797-3 at 10; Dkt. 898 at 14. Google previously represented that "logs are internally segregated by whether you're logged into a Google account." Ex. 27 16:16-20:2. | |
| Issues 1, 2, 4, 9 | PAF 5. Google promised that you can browse the web privately "with the assurance that your choice to do so is private as well." Ex. 28; *id.* ("Chrome will remedy a loophole that has allowed sites to detect people who are browsing in Incognito Mode"); Broome Ex. 91; Ex. 22 at 307:10-308:5; Ex. 27 at 25:20-13 ("[W]e don't track people in private browsing mode."). | |
| Issue 4 | PAF 6. Google represented to websites that use Google services that Google complies with its own Privacy Policy. Ex. 29; Ex. 30 [Google Analytics Terms of Service] (linking to prior page). | |
| Issues 1, 2, 4, 9 | PAF 7. Google was aware of common misconceptions regarding Google's collection and use of private browsing information. Ex. 31 (Schmidt incorrectly states "no one sees anything about you"); Ex. 32 at -03 ("common misconceptions about private mode, including that it . . . hides browsing activity from Google"); Ex. 33 at -50; Ex. 34 at -56.C ("not private in the ways that many users want, that is, as to Google"); Ex. 35 at -84 (Pikachu meme); Ex. 36 at -52; Ex. 37 at -44; Ex. 38 at -13; Ex. 39 at -51; Ex. 40 at -52; Ex. 32 at -75; Ex. 41 at -14. | |
| Issues 1, 2, 4, 9 | PAF 8. Google's awareness of user misconceptions were not limited to Incognito. Ex. 42 at -43; Ex. 43 at 146:15-147:3 (when employee wrote | |

| | | |
|---|---|---|
| | "Incognito confuses people," he was "referring to people more generally who use any private browsing mode"). | |
| Issues 1, 2, 4, 9 | PAF 9. Google caused user misconceptions. Ex. 44 at -80 (users' "misconceptions [of Incognito] flow directly from the framing of the feature as 'Incognito' (or, for other browsers, 'Private')"; Ex. 45 at -18; Ex. 46 at -71 ("Incognito is misleading"); Ex. 47 at -81; Ex. 48 at -84; Ex. 49 at -65; Ex. 50 at -10 ("people pay attention to the name 'Incognito' and the Spy Guy icon"). | |
| Issues 1, 2, 4 | PAF 10. Google knows it collects private browsing data "without consent." Ex. 51 at -43 (noting "concerns with Chrome collecting data without consent in Incognito mode"); Ex. 52 at -57; *see also* Ex. 53; Ex. 54; Ex. 55. | |
| Issues 1, 2, 4, 9 | PAF 11. Google admitted that ██████████ of people did not understand the disclosures. Ex. 56 at 14:11-20. | |
| Issues 1, 2, 4, 9 | PAF 12. Google employees advocated to make changes to Incognito, including because Incognito is a "problem of professional ethics and basic honesty." Ex. 57 at -04; Ex. 58 at -26 ("effectively a lie"); Ex. 59 at -86 ("broken"); Ex. 60 at -63 ("confusing mess"); Ex. 61 at -04; Ex. 62 at -55 ("deceive[s] users"); Ex. 63 at -65 ("incognito war"); Ex. 64 at -19; Ex. 65 at -67 (Incognito is "bad for users, bad for human rights, bad for democracy"). | |
| Issues 1, 2, 4, 9 | PAF 13. Google employees advocated for changes to the Splash Screen, including (1) to remove the phrase "Now you can browse privately" because "the word 'private'" poses "the risk of overestimating the protection Incognito offers" (Ex. 66 at -72); and (2) to make the Splash Screen more "honest" and "clear that Incognito is intended for local device privacy" (Ex. 66 at -69); *see* also Mao Ex. 67 at -17 (lamenting "the deep-seated and challenging misconception around not understanding that Incognito is about local privacy"). | |
| Issues 1, 2, 4, 9 | PAF 14. Plaintiff Byatt testified about how the Splash Screen misled him. Ex. 4 (Byatt) 136:4-18. | |
| Issues 1, 2 | PAF 15. Google displayed the Splash Screen to users every time they opened Incognito mode, and the Splash Screen has never mentioned Google. Ex. 68 at 5-6. | |
| Issues 1, 2, 4, 9 | PAF 16. Google defines privacy to include "what you store or don't store with Google," noting the importance of "user control." Ex. 69. | |

| | | |
|---|---|---|
| Issues 1, 2, 4, 9 | PAF 17. Translated using Google's dictionary, the representation that "Chrome won't save . . . your browsing history" means Chrome will not "keep" user data about "the sites you interact with/the links you click" by "recording it to a storage location." Ex. 70. | |
| Issues 1, 2, 4, 9 | PAF 18. Google employees conflated Chrome and Google, suggesting (incorrectly) that Incognito means "Google doesn't store" browsing data. Ex. 71 at -54; *see also* Ex. 72 at -57. | |
| Issues 1, 2, 4, 9 | PAF 19. Google employees (1) informed Google CEO Sundar Pichai that Incognito is "not truly private" (Ex. 73 at -67), (2) warned him not to "use the word[] private . . . when describing benefits of  Incognito mode" because it "run[s] the risk of exacerbating known misconceptions about protections Incognito mode provides" (Ex. 74 at -68.C), and (3) wrote that the word "private" reinforces the "misperception that your browsing is private everywhere instead of just on your device" (Ex. 75 at -50). | |
| Issues 1, 2, 4, 9 | PAF 20. Google employees referred to the company's private browsing representations as a "contract" and noted that Google broke its "promises." Ex. 76 at -34 ("We must enter a contract with the user regarding what happens when they enter Incognito Mode"); Ex. 77 at -65 ("Key promise" - "don't collect data from the Incognito session"); Ex. 78 at -65; Ex. 79 at -99; Ex. 80 at -98, -302 ("Incognito Problem"); Ex. 81 at -21 (Google not "deliver[ing] on the promise of being private" and "making privacy worse by collecting Incognito when the user has clearly told Chrome that it wants to be private"); Ex. 82 at -80; Ex. 83 at -77; Ex. 84 at -64. | |
| Issues 1, 2, 4, 9 | PAF 21. Google employees proposed changes to address users' misconceptions, but these changes were never made. Ex. 85 at -92; Ex. 86 at -97 ("rebrand"); Ex. 33 at -50 (disclose "You are NOT protected from Google"); Ex. 20 (McClelland Tr.) 58:12-18, 59:7-12, 61:5-24 ("many people" within Google supported this proposal); Ex. 20 at 126:14-132:13; Ex. 87 at 380:1-381:3; Ex. 88 at -41; Ex. 89 at -04 (delete data); Ex. 90 at -05 ("We all want to expand Incognito mode to also offer some privacy towards Google."). | |
| Issues 1, 2, 4, 9 | PAF 22. Google was concerned that any privacy-enhancing change would decrease Google revenues. Ex. 91 at -28 ("Chrome and Search are currently not allowed to launch anything that negatively impacts revenue. . . . User benefit alone is not sufficient justification for a revenue loss"); Ex. 92 at -95 (changes to Incognito would have "severe costs for Google"); Ex. 93 at -93 ("Sundar [Pichai] didn't want to put incognito under the spotlight"); Ex. 94 at -78 (disclosing Google "wants to track you" would "have too much negative impact on user trust"); Ex. 95 at -76 ("user trust" "drives adoption of Google products"). | |

| | | |
|---|---|---|
| Issues 1, 2, 4, 9, 11 | PAF 23. The Google Privacy Policy defines "personal information" to include "data that can be reasonably linked to" an individual. Broome Exs. 93-112. | |
| Issues 1, 2, 4, 9, 11 | PAF 24. Private browsing data is identifying. Ex. 96 at -503 (describing as "laughable" "[t]he idea that users [are] not identifiable if one were to use all of the data we have"); Ex. 53 at -50 ("guarantees" that "Google doesn't collect personal information while in private mode ... aren't true in Chrome"); Ex. 97 at -31 ("Chrome Incognito mode ... does not provide anonymity/invisibility towards ... Google"); Ex. 98 at -82 (any notion of "unlinkability" is "clearly impossible and provably does not work"); Ex. 99 at -91; Ex. 20 (McLelland) 212:13-24; Ex. 81 at -20 ("NOT anonymous"); Ex. 100 at -90; Ex. 101 at -840.R ("from a legal perspective, we would never said that Google doesn't know who you are while you're Incognito"). | |
| Issue 11 | PAF 25. Plaintiffs' expert Jonathan Hochman analyzed the private browsing data produced in this case and showed how the data is identifying. Broome Ex. 77 §§ VIII.F, H; Ex. 8 §§ V.A, D, E; see also Ex. 17 § III.2; Broome Ex. 75 § 9. | |
| Issues 1, 2, 4, 9 | PAF 26. Google's collection and use of the at-issue data involves the creation of profiles. Broome Ex. 77 § VIII.E1; Ex. 102 at -84; Ex. 103 (Halavati Tr.) 113:18-25; Ex. 20 at 319:8-15. | |
| Issues 1, 2, 4, 8, 9, 11 | PAF 27. Without paying users, Google collected, stored, and used the at-issue private browsing information to enrich itself, and continues to do so. Broome Ex. 77 § VIII.E (explaining how Google uses data to develop and improve Google products, serve advertisements, create profiles, and track conversions); Ex. 25 § 7 (quantifying Google's unjust enrichment); Broome Ex. 75 §§ V.7-V.8; Dkt. 797-3 at 7-11 (detailing uses of private browsing data, including to evaluate bidding strategies and run hypothetical ad auctions); Ex. 18 115:23-123:8 (testifying about how Google Ad Manager uses private browsing data to train machine-learning algorithms). | |
| Issues 7, 8, 10 | PAF 28. The at-issue private browsing data has value. Ex. 25 § 7 (quantifying Google's unjust enrichment); id. § 8 (value of private browsing data; e.g., Google's Ipsos Screenwise Panel, where Google paid $3 per month); Broome Ex. 75 § 4; Ex. 3 (Brown) 142:5-146:2, 182:21-187:10; Ex. 4 (Byatt) 207:24-209:6, 212:7-216:1, 221:13-227:12; Ex. 5 (Castillo) 226:11-231:23; Ex. 6 (Davis) 136:2-138:6; Ex. 7 (Trujillo) 255:8-258:24. | |
| Issue 7 | PAF 29. The at-issue Google tracking beacons run on the user's browser, i.e., on the user's device. Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 82, 85; Broome Ex. 83 ¶ 2 (Google "ad tags will be included in the HTML code delivered to the user's browser"). | |

| | |
|---|---|
| Issues 8, 10 | PAF 30. Google's tracking beacons "take up processing, storage, and power/battery resources on user devices" and "cause webpages to load slower," increasing user's energy and device costs. Broome Ex. 77 ¶ 94; Ex. 3 (Brown) 155:14-25; Ex. 4 (Byatt) 157:15-159:25; Ex. 5 (Castillo) 20:12-21:1; Ex. 6 (Davis) 140:9-141:11; Ex. 7 (Trujillo) 100:5-10. |
| Issue 5 | PAF 31. Firefox Private Browsing mode has since 2015 by default blocked Google tracking beacons; yet the browser can still communicate with and access webpages. Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 114-16. |
| Issue 3 | PAF 32. The at-issue GET Request URLs reveal the specific webpage requested for viewing, the portions of the page requested for viewing, and other user communications. Broome Ex. 77 (Hochman Opening Rep.) App. A ¶¶ 17-18. GET Request URLs include the full string URL of the specific web page the user is requesting for viewing, and Referer URLs include the URL of the specific referring web page viewed. *Id.* ¶ 101. All GET Request URLs Google intercepted from class members include any applicable "folder, subfolder, and precise file requested from the webserver" during the user communications. *Id.* ¶ 96; Ex. 8 Ex. B. |
| Issue 3 | PAF 33. Google intercepted URLs containing each of the following pieces of information from every named Plaintiff: path, folders, subfolders, search terms, GCLIDs, and information showing the portion of the web page requested for viewing, which are provided in Plaintiffs' technical expert report. Broome Ex. 77 (Hochman Rep.) ¶ 96, App. A ¶¶ 17-18, Broome Ex. 77 Ex. 105 (Hochman Opening Rep. Ex. B; Ex 104. Even Google's expert concedes that URLs containing search terms are content. Broome Ex. 80 (Zervas Rebuttal Rep.) ¶¶ 55-57. Google has publicly referred to information contained on third-party websites as "content," and Google has referred to the impermissible tracking of Incognito sessions, which Google secretly tracked using the ███████████ bit, as "interception." Ex. 28. Google was sanctioned for concealing this bit. Dkt. 898. |
| Issue 3 | PAF 34: The URL stated in Plaintiffs' Opposition ("Opp.") at page 18 contains folders and subfolders. Ex. 8 App. B, Row 702 Column H. The URL provided in Opp. at 19 contains user-generated search terms. Broome Ex. 77 (Hochman Opening Rep.) App. B at 17. |

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

DATED: April 12, 2023

By: /s/ *Mark Mao*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)

brichardson@bsfllp.com
Erika Nyborg-Burch (CA Bar No. 342125)
enyborg-burch@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile (415) 293-6899

David Boies (admitted pro hac vice)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

James Lee (admitted pro hac vice)
jlee@bsfllp.com
Rossana Baeza (admitted pro hac vice)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson (CA Bar No. 275334)
alanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Bill Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
Steven Shepard (pro hac vice)
sshepard@susmangodfrey.com
Alexander P. Frawley (pro hac vice)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

Case No. 4:20-cv-03664-YGR-SVK
PLAINTIFFS' RESPONSE TO GOOGLE LLC'S SEPARATE STATEMENT OF UNDISPUTED FACTS

Facsimile: (212) 336-8340

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Attorneys for Plaintiffs

PLAINTIFFS' RESPONSE TO GOOGLE LLC'S SEPARATE STATEMENT OF UNDISPUTED FACTS