# EXHIBIT 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated, | ) Case No. 5:20-cv-03664-LHK-SVK |
| Plaintiffs, | ) |
| vs. | ) |
| GOOGLE LLC, | ) |
| Defendant. | ) |

VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
DEPOSITION OF MONIQUE TRUJILLO

Friday, February 11, 2022
Remotely Testifying from Los Angeles, California

Reported By:
Hanna Kim, CLR, CSR No. 13083
Job No. 5077549

Q. And these -- and -- and these different types of information appears under a disclaimer that reads "Collecting Information About You," "Categories and Types of Personal Information We Collect." 10:44:41

Do you see that?

A. Yes.

Q. Are you comfortable with Williams-Sonoma collecting these different types of data on when you visit its website? 10:44:50

A. Well, if I'm in regular mode, then I am aware that information is being collected. If I'm in incognito mode, I am not okay that information is being collected without my consent.

Q. Now, looking at the section entitled 10:45:17 "Collecting Information About You," does it say anything in here about whether you're visiting the website and in incognito mode or not?

A. It does not.

Q. And so this section does not distinguish 10:45:46 between data collected when you're browsing in incognito versus a non-incognito mode; is that right?

A. It doesn't say that here, but it would have been my choice to search in incognito mode or 10:46:07

in regular mode.

Q. That's right. But I'm asking about the Williams-Sonoma privacy policy and the information that it tells you in here that it collects when you visit its website. 10:46:22

So I just want to be clear that nothing in Williams-Sonoma's disclosure here says that the type of data they collect depends on whether you're searching in private mode or not; is that right? 10:46:43

A. That's right. But what I'm concerned with is -- I understand that Williams-Sonoma is disclaiming here -- or giving a disclosure here that they will collect all this information. That's fine. 10:47:04

But if I'm in incognito mode, I do not want third parties or Google collecting information without my consent.

Q. How would Williams-Sonoma know if you're in incognito mode or private -- sorry, in a 10:47:20 private mode or not when you're visiting its website?

A. It doesn't matter if Williams-Sonoma knows. It would be Google's responsibility to know that I'm in incognito mode and not collect my 10:47:42

information.

Q. Right. We're going to get to Google in one second, but if we could just stick with Williams-Sonoma. I want to just make sure I get a clear answer to the question. 10:47:57

How would Williams-Sonoma, in your view, know that you are visiting its website in incognito mode versus a regular browsing mode?

MS. BAEZA: Objection. Form. Asked and answered. 10:48:12

BY MS. CRAWFORD:

Q. You can answer.

A. I don't know how Williams-Sonoma would know if I'm in incognito mode or in regular mode.

Q. Okay. Now, we talked about this section 10:48:26 here which talks about the information that Williams-Sonoma collects about you.

I'm going to ask that you turn to the fifth page of this document, which talks about information -- actually, the fourth page of this 10:48:42 document, which talks about information that Williams-Sonoma shares with third parties.

If you go to the bottom of page 3, actually, which is where the heading "Third Parties" appears, can you let me know once you've 10:49:06

scrolled to the third page of this document?

A. Hold on. It's a little blurry.

MS. BAEZA: I'm sorry. Jomaire, you said the third page that says "Third Parties"?

MS. CRAWFORD: Yep, at the very bottom it says "When We Share Information with Third Parties." 10:49:25

MS. BAEZA: Okay. Thank you.

MS. CRAWFORD: You're welcome.

BY MS. CRAWFORD: 10:49:39

Q. And, Ms. Trujillo, just let us all know when you're here.

A. Okay. Is it in -- is it emboldened? Because I do not see -- 1, 2 --

Q. Yes, ma'am. 10:49:48

A. -- 3. I see. Okay. I see.

Q. Okay. So you're at the section that's titled "When We Share Information with Third Parties." And underneath it it lists "Service Providers." 10:50:05

It says, "We may contract with companies or persons to provide certain services including credit card processing, shipping, data analysis and management, promotional services, et cetera. We call them our Service Providers. We provide 10:50:18

our Service Pro-" -- "Providers with the information needed for them to perform these services. We ask that our Service Providers confirm that their privacy practices are consistent with ours." [As read] 10:50:53

Do you see that?

A. I do.

Q. Now, if you turn to page 5, you'll see, three paragraphs in, a section that begins with "We use." 10:51:02

Let me know once you're there.

A. I see it.

Q. And this paragraph, do you mind reading this one aloud into the record?

A. "We use Google Analytics on our web sites 10:51:06 to collect usage data, to analyze how users use the web sites and to provide advertisements to you on other websites. For more information about how to opt out of having your information used by Google Analytics, visit..." [As read] 10:51:24

Q. And then there's a URL, mm-hmm.

A. Right.

Q. What do you understand this paragraph to mean, Ms. Trujillo?

A. That when I'm on the Williams-Sonoma 10:51:37

website in regular mode, Google Analytics has access to my information.

Q. But this paragraph here doesn't contain the words "regular mode," does it?

A. It does not contain the words -- the word [verbatim] "regular mode," but in the Google policy -- it does say "Google Analytics" on there. And in the Google policy, it says that if I choose to set -- to search in incognito mode, I can control what is collected. 10:52:02 10:52:31

Q. Are you reviewing from a document that you have in front of you?

A. I am.

Q. Okay. I would ask that while we're -- while we're looking at a particular document, namely Exhibit Number 1, that you set aside the other documents that you have in front of you. 10:52:43

I'll let you know if there's a point where it would be helpful for you to look at one of the documents that you have. But I ask that our -- the questions I'm asking are limited to the document and exhibit that we're focused on right now. 10:52:57

And I'll let you know, again, if I need you to reference any of the other materials in 10:53:07

front of you.

Do you mind doing that for me?

A. I do not mind.

Q. Okay. So then in -- in this paragraph here that begins with "We use Google Analytics on our web sites," I just want to confirm that nowhere in that paragraph does it reference "regular mode." 10:53:17

Would you agree with that?

A. Well, I can't agree with it because even if I don't reference any documents or other policies, I know that in regular mode I am consenting to Google Analytics collecting my information. 10:53:36

Q. But, Ms. Trujillo -- oh, sorry. Go ahead if you're still answering the question. 10:53:52

Okay.

A. If I'm --

MS. BAEZA: Go -- go ahead, Ms. Trujillo. You can finish. 10:54:10

THE WITNESS: Without referencing any documents or policies, I know that if I'm in cogni- -- incognito mode, Google has promised not to collect my information.

BY MS. CRAWFORD: 10:54:29

Q. Right. But, again, I -- I mentioned a moment ago we're going to talk about Google and Google's privacy policy and Google's disclosures and the information that you consider to be relevant in those documents. 10:54:40

But before we get there, I'm just asking about the Williams-Sonoma policy that's in front of you.

Can I get a straight answer, yes or no, to the -- two questions, whether or not this portion 10:54:51 of Williams-Sonoma's policy mentions "incognito mode" or -- or pri- -- or "non-private browsing mode" specifically? Yes or no?

MS. BAEZA: Objection. Form. Asked and answered. 10:55:06

The -- Ms. -- Ms. Crawford, Ms. Trujillo is trying to give answers to the best of her ability. I think it's improper to ask her to answer just a yes-or-no question.

MS. CRAWFORD: Well, the witness can say 10:55:23 if -- if she's incapable of -- of answering yes or no as to whether or not certain words appear in the context of language she's just read. And if the witness is unable to do so, she can let us know that. 10:55:35

BY MS. CRAWFORD:

Q. But, Ms. Trujillo, I do ask that you answer this narrow question, it's very simple, whether or not "private browsing mode" is mentioned anywhere in the paragraph that you just read aloud; yes or no? 10:55:44

A. Well, in this specific paragraph, it is telling me, "We use Google Analytics on our web site to collect usage data" [as read].

I know if I'm in regular mode or if I'm [verbatim] incognito mode, so it doesn't matter if Williams-Sonoma is mentioning to me "regular mode" or "incognito mode." 10:56:05

Q. But Williams-Sonoma didn't say here, "We only share your information with Google when you're in regular mode." It doesn't say that here, does it? 10:56:20

A. I mean, it's not Williams-Sonoma's responsibility. It's Google's responsibility to stand by their privacy policy where it says if I'm in incognito mode, they will not collect my information without my consent. 10:56:40

Q. Are you aware of the data flow at issue in this case and how Google gets the data that you're suing Google for? 10:56:59

MS. BAEZA: Objection. Form. Vague as to "data form" [sic].

BY MS. CRAWFORD:

Q. You can answer.

MS. BAEZA: "Data flow." My apologies. 10:57:09

THE WITNESS: No, I'm not.

BY MS. CRAWFORD:

Q. Okay. So then in the lawsuit that's been filed in this case, the basic allegation is that when you visit a website like Williams-Sonoma 10:57:23 using incognito mode, you were led to believe that Williams-Sonoma would not share or Google would not receive information from your private browsing session.

When you visit websites like 10:57:46 Williams-Sonoma, this specific disclosure -- let me know if this is your understanding -- this specific disclosure says Williams-Sonoma is sharing your information with Google. That is the same information that you've alleged Google 10:58:03 improperly collected in the context of your lawsuit; isn't that right?

A. No, that's not right.

Q. What kind of information are you alleging Google has collected on you without your consent, 10:58:18

if not from your visits on third-party websites?

A. Google -- I wasn't led to believe. It is clearly in Google's privacy policy that if I'm in incognito mode, my information will not be collected by Google. 10:58:43

Q. And that's what you believe the privacy policy says specifically?

MS. BAEZA: Objection. Form. Asked and answered.

THE WITNESS: Yes, that's what the privacy 10:59:05 policy says specifically.

BY MS. CRAWFORD:

Q. Okay. So we're going to pull up the privacy policy. And I'm going to ask, when I do that, that you point me to exactly where it says 10:59:14 that within the text of the disclosure.

But before we get there, I want to ask a couple questions about the type of personal information that you are suing Google for having received. 10:59:32

Are you aware of the Complaint that was filed in this case?

A. Yes.

Q. Okay. And I'm reading from the Complaint, quote, "This lawsuit concerns Google's 10:59:43

Q. Okay. And when you're in regular mode, why would you reject cookie permissions?

A. Because I don't want to receive a bunch of junk mail.

Q. Is it your understanding that cookies facilitate junk mail? 11:58:39

A. Yes, and from my understanding, they also can compromise the computer or phone's power or, I guess, memory or how it will -- cookies can compromise how well the device operates. 11:59:20

Q. What is your understanding of what the cookie does in the context of web -- web browsing specifically?

A. From my understanding, it is -- from my -- from what I understand is that it can possibly compromise the device I'm on. 12:00:16

Q. Okay. And it seems like you suggested that you reject cookie permissions.

Do you have an estimate that you can give me as to how often you do that? Do -- would you say that you, as, you know, a matter of course, try to do that every time you're browsing a website, sometimes when you're browsing a website, or barely ever when browsing a website? 12:00:38

A. All the time, I try to reject cookies. 12:00:55

not used incognito mode because I did not know about incognito mode.

Q. Okay. And when you first started using incognito mode in 2016, did you trust the browser with your personal data? 12:33:20

A. Yes.

Q. Why is that?

A. Because the privacy policy said that I was in control and that when I was in incognito mode that my information would not be collected. 12:33:41

Q. Okay. And -- and, again, we're going to get to the privacy policy and incognito -- the incognito screen in a minute. And I'm going to ask that when we talk through that disclosure, you show me where in there it contains that specific 12:33:59 representation.

But until then, let me ask just a couple more questions about your browsing history.

You mentioned using Safari and Chrome. Are you aware of any other browsers you've used 12:34:19 within the past decade? Would Internet Explorer, for example, be a browser you might have used?

A. Internet Explorer, yes.

Q. Was that the one you were using back in 2008? 12:34:42

Q. And you would like to remain private to the websites you visit; yes?

A. Yes. If I'm in incognito mode, yes, I want to remain private.

Q. Okay. Now before you were contacted by counsel -- or before you contacted counsel to participate in this case, did you have an understanding of what incognito mode does? 02:11:40

MS. BAEZA: Objection. Form. Vague. Compound. 02:11:57

THE WITNESS: My understanding of incognito mode was that I would -- my information wouldn't be shared. I would be private.

BY MS. CRAWFORD:

Q. And where did you learn that? 02:12:25

A. In the privacy policy.

Q. Any other documents or disclosures?

A. The privacy policy, it clearly states that I will stay private on the splash screen.

Q. Can you take a look at what's been marked Exhibit 4. That should be a copy of the splash screen. 02:13:15

Can you let me know when you have that in front of you?

A. Yes, one moment. 02:13:30

Okay. I have it in front of me.

Q. Can you read through this and let me know once you've done so. I just want to make sure this is fresh in your mind before I start asking questions about it. 02:14:00

A. (Witness reviews.)

Okay. I've read it.

Q. All right.

Do you see the words "browse privately" on the first full line -- 02:14:21

A. Yes.

Q. -- of this incognito screen?

A. Yes.

Q. What do you understand "browse privately" to mean in the context of this disclosure? 02:14:33

A. That wherever I go, whatever site that I go onto, my information will not be shared or collected.

Q. And what type of information, just so we're clear, won't be collected? 02:15:09

A. Any personal information.

Q. Like what?

MS. BAEZA: Objection. Form. Asked and answered, tenth time.

BY MS. CRAWFORD: 02:15:19

Q. Ms. Trujillo, you testified that your understanding of incognito mode was that your information would not be shared.

Do you remember that testimony?

A. I do remember that, but I did not refer to the splash screen. 02:16:49

Q. And can you tell me why you didn't refer to the splash screen?

A. Why I did not refer to the splash screen?

Q. Yes. 02:17:07

Does the splash screen state anywhere on here that your information wouldn't be shared?

A. It states it in the privacy policy.

Q. So then just to make sure I get a clear answer to my question, yes or no, does the splash screen state that your information won't be shared? 02:17:36

MS. BAEZA: Objection. Form. Vague. Shared with who?

BY MS. CRAWFORD: 02:17:51

Q. You can answer.

A. The splash screen says that my activity, not my information, my activity will be shared or may be visible to websites, my employer, school, internet service provider, but the Google privacy 02:18:14

policy doesn't say that my activity will be visible to Google or information in -- collected and shared. And the privacy policy says across all services.

Q. Ms. Trujillo, we'll get to the privacy policy in a second. I'm asking a very specific question about this disclosure here, the incognito screen, the one that's in front of you. 02:18:37

Does the incognito screen say anywhere in here that your information won't be shared; yes or no? 02:18:52

MS. BAEZA: Objection. Form. Asked and answered.

BY MS. CRAWFORD:

Q. Your answer, Ms. Trujillo? 02:19:15

A. No, it does not say that it will be -- my information will be shared and collected.

Q. So your information won't be shared?

MS. BAEZA: Objection. Form. Asked -- asked and answered. Mischaracterizes prior testimony. And vague. 02:19:34

MS. CRAWFORD: I think the record's clear on this point.

BY MS. CRAWFORD:

Q. Ms. Trujillo, do you believe that you 02:19:44

BY MS. CRAWFORD:

Q. Yes.

A. I do -- I'm on the correct exhibit.

Q. Okay. Perfect.

You see where it says: "When you use our services, you're trusting us with your information"? 03:37:56

A. Yes, I see that.

Q. And then do you see underneath the -- there's an underline maybe about a third of the way into the page. And then it says: "We build a range of services that help millions of people daily." 03:38:09

Do you see that there?

A. Yes. 03:38:21

Q. Okay. And you see under the section that starts "Our services include"?

Do you see the second bullet there?

A. The second bullet?

Q. Yes. Can you read that bullet for me? 03:38:36

A. "Platforms like the Chrome browser and Android operating system."

Q. Okay. So based on that, do -- do you understand Chrome to be one of the services that Google offers to consumers? 03:38:51

A. Yes.
Q. Okay. Now if we could, let's look at page 3. And specifically, at the bottom, there's a section called "Information we collect as you use our services." 03:39:18
Do you see that?
A. One moment.
Yes.
Q. And at the top of the next page, it says: "The information we collect includes." 03:39:28
Do you see that?
A. Yes.
Q. Do you remember reviewing this version of the privacy policy at any -- at any point post-2018? 03:39:44
A. I don't remember.
Q. Okay. Can you read through this paragraph here, and let me know when you're done.
A. (Witness reviews.)
I am done. 03:40:28
Q. Okay. What do you understand this paragraph to mean, Ms. Trujillo?
A. I understand it to mean that when I am in regular mode, my information is collected.
Q. The types of information that appear here, 03:41:10

be a misrepresentation or just a con- -- something that conflicts with the privacy policy?

A. Both.

Q. Okay. Now, do you see under the section that reads "Your activity might still be visible"? 04:41:33

A. Yes.

Q. Do you see that section?

A. Yes.

Q. And there's a sent- -- a sentence that begins with "Incognito mode," says: "Incognito mode stops Chrome from saving your browsing activity to your local history." 04:41:41

Do you see that?

A. Yes.

Q. Again, another reference to local history. 04:41:53

The next sentence says: "Your activity might still be visible to," and then the first bullet reads: "Websites you visit, including the ads and resources used on those sites."

Do you see that bullet? 04:42:14

A. Yes.

Q. Do you remember the Williams-Sonoma privacy policy that we discussed in the very beginning of the deposition?

A. Yes. 04:42:24

Q. And do you remember when it mentioned that Google Analytics was one of Williams-Sonoma's partners?

A. Yes.

Q. Do you remember the portion of Williams-Sonoma's privacy policy that says it shares data with Google Analytics because Goggle Analytics renders services to the website? 04:42:35

Do you remember that?

A. I remember that. And that is if it's in regular mode, not in incognito. 04:42:53

Q. But the Williams-Sonoma privacy policy didn't make that disclaimer, did it?

A. No. The Google privacy policy does.

Q. Okay. So if this docu- -- this document that you have in front of you here says that "your activity may be visible to websites you visit," [as read] let's say, Williams-Sonoma, "and the ads and resources used on those site," let's say Google Analytics. 04:43:17 04:43:35

Is it safe to assume that this section of this document here is telling you that if you visit Williams-Sonoma, your activity might still be visible to ads and resources like Google Analytics? 04:43:56

A. If I'm in regular mode, yes. If I'm in incognito mode, no.

Q. Where here does it say that incognito mode will prevent that from happening? Because as you can see -- 04:44:13

A. I --

Q. -- at the top, the -- I'm sorry. Go ahead.

The -- the top of the page says "How private browsing works." So the total page is 04:44:19 about incognito.

MS. BAEZA: Just a moment, Jomaire. I -- I don't think Ms. Trujillo was done with her answer before you began speak --

MS. CRAWFORD: Oh, she -- she continue. 04:44:32 Sorry. Didn't mean to cut you off, either. There might be a lag. I am happy to -- to cede the floor and let witness continue answering the question.

MS. BAEZA: Did you have something --

BY MS. CRAWFORD: 04:44:34

Q. Go ahead, Ms. Trujillo.

MS. BAEZA: Did you have something else to add, Ms. Trujillo?

THE WITNESS: It's stated in the privacy policy. And this is -- this document is not the 04:44:51

privacy policy.

BY MS. CRAWFORD:

Q. But you would agree with me that this document, the title of it is "How private browsing work- -- mode works in Chrome"; correct? 04:45:05

A. Do I agree with you that that's what it says?

Q. Yes.

A. Those are the words.

Q. Okay. And do you have any reason to believe that this statement that your activity might still be visible to websites, including the ads and resources used on those websites is untrue or false? 04:45:19

A. It's untrue or false if I'm in incognito mode. 04:45:45

Q. But this document is describing how private browsing mode works in Chrome. It's describing incognito mode. This is a Google disclosure that you can find on Google's website, so -- 04:46:06

MS. BAEZA: Is that a question or is that testimony?

BY MS. CRAWFORD:

Q. Is your -- let -- 04:46:11

MS. CRAWFORD: I actually wasn't finished, Rosy.

BY MS. CRAWFORD:

Q. So are you contending, Ms. Trujillo, that this publicly available document is a misrepresentation of how incognito mode works? 04:46:21

A. Yes, that is what I'm contending.

Q. Okay. You testified earlier today that you believe you entered a contract with Google; is that right? 04:46:44

A. Yes.

Q. Did you give anything of value to Google in exchange for what you received under the contract?

A. Absolutely. Google is always collecting my information. 04:46:52

Q. And if -- what -- what -- so you've -- in exchange for the services that you use, you've agreed to give Google your personal information?

Is that what you're saying? 04:47:14

A. If I'm in regular mode, then I know that my data, my information is being collected. My personal information is valuable to me.

So if you're asking what of value have I given to Google in exchange for their services, 04:47:39

I'm saying my information.

Q. Okay. So that's when you're in regular mode.

What information of value have you given to Google when you're in incognito mode? 04:47:52

A. Google -- when I'm in incognito mode, Google has taken my information without my consent.

Q. So is there no information that you've given Google in the context of your private 04:48:08 browsing activity through incognito mode?

A. Did you say "is there no information"?

Q. Correct. Because it sounds like you were saying Google takes your information.

So I'm wondering, is there any information 04:48:28 that you voluntarily share with Google in the context of your incognito sessions?

MS. BAEZA: Objection. Form. Vague.

BY MS. CRAWFORD:

Q. You can answer, Ms. Trujillo. 04:48:42

A. Well, I know when I'm in regular mode, I'm consenting to Google taking my information.

Q. Okay. And -- and the con- -- because you -- you -- you claim that you have a contract with Google that governs your usage of incognito 04:48:55

mode.

And so, I'm asking, what information have you given to Google in consideration of your contract for using incognito mode?

MS. BAEZA: Objection. Form. Asked and answered. 04:49:11

MS. CRAWFORD: No, I don't think there's an ans- -- clear answer that's been given.

BY MS. CRAWFORD:

Q. Ms. Trujillo, can you provide a response -- 04:49:18

MS. BAEZA: I -- I think you don't like her answer.

(Simultaneous speaking.)

(Interruption in audio/video.)

THE WITNESS: The clear answer --

(Simultaneous speaking.)

(Interruption in audio/video.)

MS. BAEZA: -- Ms. Crawford.

THE COURT REPORTER: One person at a time, please. Wait, wait. I didn't hear. There were two people --

MS. BAEZA: I said I --

THE COURT REPORTER: -- talking at the same time.

MS. BAEZA: I said, I just don't think you like her answer, Ms. Crawford.

BY MS. CRAWFORD:

Q. Ms. Trujillo, please respond.

A. The clear answer is that Google has stolen my information when I'm in incognito mode. 04:49:41

Q. Okay. I'll -- I'll accept that. It -- I -- I didn't -- don't understand you to have identified any information that you voluntarily gave Google in the context of your use of incognito mode. If that's incorrect, let -- let me know. 04:49:58

But I think I've heard you to say that Google has taken information when you're using incognito without your consent. 04:50:09

In that case, my next question I have is, when you say Google has taken your information without its [verbatim] consent, do you believe that Google, when you're in private browsing mode, is authorized to use your information in any capacity or none whatsoever? 04:50:26

A. They're not -- when I'm in private browsing or incognito, I -- they do not have my consent to use my information. I've chosen --

Q. So what -- sorry. Go ahead. 04:50:51

MS. BAEZA: Go ahead and finish your statement, Ms. Trujillo.

THE WITNESS: If I'm on incognito mode, I have chosen to be private.

BY MS. CRAWFORD: 04:51:13

Q. So it sounds as though there's no information that you voluntarily agreed to give Google when you are in an incognito session; is that right?

MS. BAEZA: Objection. Form. Asked and answered. 04:51:23

THE WITNESS: Google -- when I'm in incognito mode, Google does not have my consent to use my information.

BY MS. CRAWFORD: 04:51:39

Q. Okay. Do you believe that your -- the information that you've provided to Google has monetary value?

A. Yes.

Q. How so? 04:51:55

A. How so does it have monetary value, the information that Google has either taken with or without my consent?

Data and information is the most valuable.

Q. Does it have monetary value? 04:52:24

MS. BAEZA: Objection. Form. Mischaracterizes testimony.

MR. MAO: Calls for expert...

BY MS. CRAWFORD:

Q. You can answer. 04:57:54

A. When I turn on incognito, I'd expect Google to stand by their promise in the contract so when I say I want to be kept private, then no means no.

Q. Okay. Can you tell me all the ways, 04:58:34 sitting here today, that you've been harmed by Google's conduct in the context of the lawsuit that you filed against it?

A. My personal information has been shared without my consent, and there are probably -- 04:58:58 because of this, there's -- I'm sure there's a lot more damage than I can even imagine.

Q. And when you say your information was shared, I just want to be clear. Shared by whom and to whom? 04:59:17

MS. BAEZA: Objection. Form. Calls for speculation.

MS. CRAWFORD: This is the witness's testimony.

BY MS. CRAWFORD: 04:59:31

Q. You stated, Ms. Trujillo, "My personal information has been shared without my consent."

So I'm asking: Who shared your information and to whom was it shared?

MS. BAEZA: Objection. Form. 04:59:48 Mischaracterizes testimony.

She said -- she said her information was shared, she didn't indicate ay to whom.

BY MS. CRAWFORD:

Q. Ms. Trujillo, can you please answer. 04:59:57

A. While in incognito mode, Google -- who shared my information? Google has shared my information.

Q. With whom?

MS. BAEZA: Objection. Form. Calls for 05:00:18 speculation.

THE WITNESS: My answer is a simple one: Every company, you would know more than I do. I don't -- I can't answer -- I can't give you a -- specifically who Google shares my information with. 05:00:50 I'm sure it's anybody they're able to share my information with.

BY MS. CRAWFORD:

Q. And that -- okay.

So you believe that Google shares your 05:01:05

information with anybody they're able to share your information with.

And yet, sitting here today, you continue to use Chrome incognito mode; is that right?

A. That's right. 05:01:21

Q. Why is that if you believe your information is being shared with anybody that Google is able to share your information with, quoting directly from your testimony?

A. That's because I'm in the middle of a lawsuit, and I am not going to change my activity, my online activity at this time. 05:01:36

Q. So, in other words, you're going to continue to allow what you consider to be Google's improper collection of your data to continue while you browse the web in incognito mode? 05:02:01

MS. BAEZA: Objection. Form. Misstates prior testimony.

BY MS. CRAWFORD:

Q. You can answer, Ms. Trujillo. 05:02:13

A. I'll continue to use the internet in incognito mode and regular mode, as I have been before the lawsuit.

Q. I think you testified earlier that you've seen targeted advertising when you use Chrome. 05:02:38

says otherwise?
A. Skyscanner's policy can say whatever it wants. I -- I -- it was Google who shared my information while I was in incognito mode.
Q. Okay. 05:52:51
MS. CRAWFORD: Let's mark as our -- our next exhibit Tab 3, Tracy.
(Trujillo Deposition Exhibit 14 was marked.)
BY MS. CRAWFORD: 05:53:08
Q. I'm going to show you, Ms. Trujillo, a copy of your discovery responses in this case.
If you refresh the Exhibit Share window you have open, let me know when this document is in front of you. 05:53:22
A. Exhibit what? I'm sorry, please repeat.
Q. It will either be Exhibit 14 or 15, but perhaps you can refresh and let me know which one is -- has just been loaded.
A. 14 is the most recent. 05:53:55
Q. That might be Skyscanner's privacy policy, in which case you can set that aside and look for Exhibit 15.
MS. GAO: Actually, Exhibit 14 is the correct one. 05:54:12

MS. CRAWFORD: Oh, perfect. Okay.

BY MS. CRAWFORD:

Q. So if you have Exhibit 14 in front of you, Ms. Trujillo, can you turn to -- unfortunately, this document was served without page numbers, but 05:54:20 it's the -- the tenth page of this document.

A. Okay. I'm on the tenth page.

Q. Do you see where it says "Interrogatory Number 10"?

A. Yes. 05:54:41

Q. And "Response to Interrogatory Number 10"?

A. Yes.

Q. Okay. So do you remember a moment ago when I was asking you about selling your personal data and whether you knew anything about that? 05:54:59

A. Yes.

Q. And I believe you testified that you don't know much about that practice.

Is that -- is that consistent with what you remember having testified to? 05:55:20

MS. BAEZA: Objection. Form. Vague.

BY MS. CRAWFORD:

Q. Do you remember your testimony on that topic, Ms. Trujillo?

A. Yes, I do. 05:55:27

Q. Okay. And you testified that you didn't know much about selling your personal information, but that it would be a pretty desperate way of making money.

Do you remember that? 05:55:41

A. Yes.

Q. In your response to this interrogatory, you state -- and if you look on the next page it's the paragraph that begins with "Notwithstanding."

Do you see that paragraph there? 05:56:04

A. Yes.

Q. This says, with specificity, that you've been aware of the value of your personal data for years and that you're aware of websites like Killi, companies like Brave and others, that 05:56:28 provides monetary compensation for personal data.

Do you see where it says that?

A. Yes.

Q. Are you, in fact, aware of websites like Killi? I don't believe you testified to Killi 05:56:46 when I asked you the question previously.

A. I'm aware that there are websites that do buy personal data. I'm aware that personal data is very valuable. But I have not ever sold my personal data. 05:57:15

Q. Right.

But are you aware of the web- -- the specific website Killi. Do you know anything about Killi?

MS. BAEZA: Objection. Form. Compound. 05:57:27

BY MS. CRAWFORD:

Q. Ms. Trujillo.

A. I can't give you details, but I know that it's a browser where you can sell your personal data. 05:57:47

Q. Is Killi a browser or a website?

MS. BAEZA: Objection. Form. Asked and answered.

THE WITNESS: I do believe it to be a browser. 05:58:05

BY MS. CRAWFORD:

Q. Okay. And do you know anything about how much Killi pays users for their private -- sorry, for their personal information?

A. I do not. 05:58:18

Q. Okay. Are you aware of how much other third parties may charge for access to users' personal information?

A. I do not.

Q. Does the company Nielson ring a bell to 05:58:57

A. Google should not be collecting any of my information when I'm in incognito mode.

Q. The term "irrespective" was used earlier today.

Do you remember that? 07:15:08

A. Yes.

Q. Do you know what the word "irrespective" means?

A. No. I don't.

Q. Earlier -- oh, sorry. Go ahead. 07:15:19

A. No, I don't.

Q. Earlier you were asked whether you provided cookie values from your browser during the course of this litigation.

Do you remember that? 07:15:33

A. Yes.

Q. And you testified that you weren't really sure what a cookie is.

Do you remember?

A. Correct, yes. 07:15:42

Q. Without going into the substance of privileged communications with your attorneys, do you recall back in November and December working with people to pull certain values from your computer? 07:15:55

A. Yes, I do recall.

Q. And those values were large strings of characters.

Do you remember?

A. Yes. 07:16:05

MS. CRAWFORD: Objection. Leading the witness. I mean, Rosy, you're -- you're leading the witness to give answers to the tar- -- very narrowly focused questions that you're asking right now. 07:16:17

I don't think that this is proper, and I'm creating a record that you're leading the witness in a way that I don't think is appropriate at this stage.

MS. BAEZA: Your speaking objection is 07:16:28 noted.

MS. CRAWFORD: It is.

BY MS. BAEZA:

Q. Let me go back to -- to the last question, 'cuz I lost my train of thought here, that long 07:16:39 speaking objection.

MS. CRAWFORD: Rosy, let's be respectful, please.

MS. BAEZA: All right.

BY MS. BAEZA: 07:16:55

Q. If I represented to you that that large string of characters were cookie values, would your earlier answer change to yes, that you now recall providing cookie values from your browser during the course of this litigation? 07:17:07

A. Yes. My answer's yes.

Q. Do you remember being asked questions about the relationship between Apple and Safari?

A. Yes.

Q. Did you know that the Safari browser is a 07:17:23 product of Apple before today?

A. No, I did not.

Q. Knowing this now, would you understand Safari to mean Apple?

MS. CRAWFORD: Objection. Leading again. 07:17:42 The witness's testimony speaks for itself.

BY MS. BAEZA:

Q. You can answer.

A. Yes.

Q. Does Apple's collection of your personal 07:17:52 data have anything to do with this lawsuit?

A. No.

Q. Do you remember earlier when you were asked questions about the incognito splash screen?

A. Yes. 07:18:10

Q. Okay. If you can please go to that document. It's Exhibit 4.

Let me know when you have that open.

A. Okay.

I have it open. 07:18:36

Q. And do you remember being asked questions about whether the incognito splash screen discloses that your information is not shared?

A. Yes, I remember being asked.

Q. Do you see where it says "Your activity might still be visible to"? 07:18:50

A. Yes.

Q. And below that, it lists three entities your activity might still be visible to.

Do you see that? 07:19:09

A. Yes.

Q. What does that communicate to you?

MS. CRAWFORD: Objection.

THE WITNESS: It communicates to me that my activity may be visible to websites I visited, my employer, school, internet service de- -- provider. But it does not say it might still be visible to Google. 07:19:35

BY MS. BAEZA:

Q. Okay. You can close that exhibit out. 07:20:02