# EXHIBIT 148

# Redacted Version of Document Sought to be Sealed

```
 1              IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     OAKLAND DIVISION
 4                        ---o0o---
 5   CHASOM BROWN, et al.,           )
     on behalf of themselves and    )
 6   all others similarly           )
     situated,                      )
 7                                   )
              Plaintiffs,           )Case No.
 8                                   )4:20-cv-03664-YGR-SVK
     vs.                            )
 9                                   )
     GOOGLE LLC,                     )
10                                   )
              Defendant.            )
11   _____)
12
13                        ---o0o---
14            Videotaped Zoom Deposition of
15                    GLENN BERNTSON
16              Tuesday, February 14, 2023
17                     CONFIDENTIAL
18                        ---o0o---
19
20
21
22
23   Katy E. Schmidt
24   RPR, RMR, CRR, CSR 13096
25   Veritext Job No.: 5757744
```

                                          Page 1

CONFIDENTIAL

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                      OAKLAND DIVISION
 4                        ---o0o---
 5   CHASOM BROWN, et al.,        )
     on behalf of themselves and  )
 6   all others similarly         )
     situated,                    )
 7                                )
             Plaintiffs,          )Case No.
 8                                )4:20-cv-03664-YGR-SVK
     vs.                          )
 9                                )
     GOOGLE LLC,                  )
10                                )
             Defendant.           )
11   _____)
12           BE IT REMEMBERED that, pursuant to Notice,
13   and on Tuesday, the 14th day of February, 2023,
14   commencing at the hour of 6:03 a.m., thereof, in New
15   York, New York, before me, KATY E. SCHMIDT, a
16   Certified Shorthand Reporter in and for the County of
17   Yolo, State of California, there virtually personally
18   appeared
19
20                     GLENN BERNTSON
21   called as a witness herein, who, being by me first
22   duly sworn, was thereupon examined and interrogated as
23   hereinafter set forth.
24
25
                                              Page 2
```

CONFIDENTIAL

```
 1    APPEARANCES:
 2    For The Brown Plaintiffs:
 3                    (Appeared via Zoom)
 4           BOIES SCHILLER FLEXNER LLP
             BY: MARK MAO, Esq.
 5           44 Montgomery Street, 41st Floor
             San Francisco, California 94104
 6           415.293.6800
             mmao@bsfllp.com
 7
                        (Appeared via Zoom)
 8
             SUSMAN GODFREY, LLP
 9           BY: ALEXANDER FRAWLEY, Esq.
             1301 Avenue Of The Stars, 32nd Floor
10           New York, New York 10019
             afrawley@susmangodfrey.com
11
12    For The Defendants:
13                    (Appeared via Zoom)
14           QUINN EMANUEL URQUHART & SULLIVAN LLP
             BY: JOSEF ANSORGE, Esq.
15           BY: JOSEPH MARGOLIES, Esq.
             51 Madison Avenue, 22nd Floor
16           New York, New York 10010
             212.849.7000
17           josefansorge@quinnemanuel.com
18    Also present:
19           Steven Togami, Videographer
20           Matthew Gubiotti, In-house counsel
21
                        ---o0o---
22
23
24
25
                                              Page 3
```

| | | |
|---|---|---|
| 1 | declaration? | 09:09 |
| 2 | A.   Yes. | 09:09 |
| 3 | Q.   And do you see where you wrote: | 09:09 |
| 4 | "I understand that Mr. Hochman opines | 09:09 |
| 5 | that Google can identify class members by | 09:09 |
| 6 | fingerprinting IP address" -- "IP | 09:09 |
| 7 | addresses and user agent"? | 09:09 |
| 8 | Do you see that? | 09:09 |
| 9 | A.   I do. | 09:09 |
| 10 | Q.   Are you aware that to support that opinion, | 09:09 |
| 11 | Mr. Hochman relied on data produced through the | 09:09 |
| 12 | special master process? | 09:10 |
| 13 | A.   No. | 09:10 |
| 14 | Q.   And aside from the use of IP combined with | 09:10 |
| 15 | user agent, are you aware that Mr. Hochman relied on | 09:10 |
| 16 | other identifiers to support his opinion that Google | 09:10 |
| 17 | can identify class members? | 09:10 |
| 18 | MR. ANSORGE:  Objection.  Vague and | 09:10 |
| 19 | foundation. | 09:10 |
| 20 | THE WITNESS:  Honestly, I read -- I don't | 09:10 |
| 21 | know because the first document or the second document | 09:10 |
| 22 | from Dr. Hochman, and I'm responding to what he wrote | 09:11 |
| 23 | I am unaware of how he generated these conclusions. | 09:11 |
| 24 | And the fact that we share data with plaintiffs, I | 09:11 |
| 25 | assume he would be involved, but it is not knowledge I | 09:11 |

Page 112

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | actually have. | 09:11 |
| 2 | BY MR. FRAWLEY: | 09:11 |
| 3 | Q.    Now, do you see where you write in your | 09:11 |
| 4 | words at the end of this paragraph: | 09:11 |
| 5 | "Google does not combine IP address | 09:11 |
| 6 | and user agents to identify or reidentify | 09:11 |
| 7 | users and has longstanding policies | 09:11 |
| 8 | against engaging in such fingerprinting"? | 09:11 |
| 9 | Do you see that? | 09:11 |
| 10 | A.    I do see that. | 09:11 |
| 11 | Q.    And you wrote "does not"; correct? | 09:11 |
| 12 | A.    Yes. | 09:11 |
| 13 | Q.    And the Mr. Hochman opinion you quote, it | 09:11 |
| 14 | says Google can readily use the data; right? | 09:12 |
| 15 | A.    Yes. | 09:12 |
| 16 | Q.    So fair to say that you're not in this | 09:12 |
| 17 | declaration asserting an opinion about what Google can | 09:12 |
| 18 | do, but you're asserting an opinion about what Google | 09:12 |
| 19 | does or does not do. | 09:12 |
| 20 | Is that fair? | 09:12 |
| 21 | A.    No. | 09:12 |
| 22 | Q.    So why did you use the word "does" instead | 09:12 |
| 23 | of, for example, "could"? | 09:12 |
| 24 | A.    There are a couple of pieces that I want to | 09:12 |
| 25 | add to the response here. | 09:12 |

Page 113

| | | |
|---|---|---|
| 1 | No. 1, IP address is available only in very | 09:12 |
| 2 | restricted portions of our logs.  To be able to | 09:12 |
| 3 | actually get access to logs that -- and to be able to | 09:12 |
| 4 | read the field that contains IP address requires | 09:12 |
| 5 | privileged access that requires a detailed review of | 09:13 |
| 6 | the use case very explicitly. | 09:13 |
| 7 | So behind these policies that I referred to, | 09:13 |
| 8 | which are both externally-facing policies, Google's | 09:13 |
| 9 | commitment to the world that we do not fingerprint | 09:13 |
| 10 | users, it's public. | 09:13 |
| 11 | There are internal policies that are | 09:13 |
| 12 | detailed basically defining exactly what engineers can | 09:13 |
| 13 | do and what they can't do, how we design products and | 09:13 |
| 14 | how we don't design products. | 09:13 |
| 15 | You know, to say, "Oh, you can do this," if | 09:13 |
| 16 | we're actually abiding by our policies, we can't do | 09:13 |
| 17 | this. | 09:13 |
| 18 | In addition, we have technical protections | 09:13 |
| 19 | in place to make sure that these policies we have in | 09:13 |
| 20 | place that we expect every one of our employees to | 09:13 |
| 21 | follow have to follow it. | 09:13 |
| 22 | There is no way you can build a product at | 09:13 |
| 23 | Google that is going to fingerprint a user using IP | 09:14 |
| 24 | address and user agent, and then use that to track | 09:14 |
| 25 | users across the web for the purposes of advertising. | 09:14 |

Page 114

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | It's impossible.  Because there are technical | 09:14 |
| 2 | restrictions, there are policies that are very clear, | 09:14 |
| 3 | there are reviews that every piece of code goes | 09:14 |
| 4 | through where multiple people have to look at that | 09:14 |
| 5 | code. | 09:14 |
| 6 | So I say it does because we don't.  But if | 09:14 |
| 7 | you actually look at the processes and policies we | 09:14 |
| 8 | have in place, operationally this is impossible | 09:14 |
| 9 | because we've committed to not do it and we put | 09:14 |
| 10 | processes in place that mean it would be impossible to | 09:14 |
| 11 | actually have a product doing this. | 09:14 |
| 12 | The only thing that I can concede is that if | 09:14 |
| 13 | a person who was an engineer, who was in a trusted | 09:14 |
| 14 | role, who was given access to this data for a very | 09:14 |
| 15 | specific business purpose, decided they wanted to find | 09:14 |
| 16 | an IP address and do something nefarious with it, it | 09:15 |
| 17 | is hypothetically possible.  But if they did so, they | 09:15 |
| 18 | would be fired. | 09:15 |
| 19 | So, no, I'm not going to concede Google | 09:15 |
| 20 | could do this.  We have made it impossible for | 09:15 |
| 21 | ourselves to be able to do this because user privacy | 09:15 |
| 22 | matters. | 09:15 |
| 23 | Q.   Does Google Ad Manager use any data that it | 09:15 |
| 24 | receives to train any AI or machine-learning | 09:16 |
| 25 | algorithms? | 09:16 |

Page 115

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A.    Yes. | 09:16 |
| 2 | Q.    Can you elaborate on that? | 09:16 |
| 3 | MR. ANSORGE:  Objection.  Form. | 09:16 |
| 4 | THE WITNESS:  It's a pretty long list.  How | 09:16 |
| 5 | about some examples? | 09:16 |
| 6 | MR. FRAWLEY:  That would be helpful. | 09:16 |
| 7 | THE WITNESS:  Okay.  Machine learning and AI | 09:16 |
| 8 | are tools that allow you to look at sort of a complex | 09:16 |
| 9 | set of data and try to identify patterns so that you | 09:16 |
| 10 | can make predictions about what something may happen. | 09:16 |
| 11 | You can think of them in some ways as being | 09:16 |
| 12 | extensions of statistics. | 09:16 |
| 13 | And in a lot of cases we're using what are | 09:16 |
| 14 | really tools derived from the field of statistics, | 09:16 |
| 15 | like basing an inference, that are really applied in | 09:16 |
| 16 | an at-scale computational manner, which is really what | 09:16 |
| 17 | AI and machine learning is all about. | 09:17 |
| 18 | ████████████████████████████████ ██ | 09:17 |
| 19 | █████████████████████████████ | 09:17 |
| 20 | ████████████████ ██████████ | 09:17 |
| 21 | ██████████████████████████████ | 09:17 |
| 22 | █████████████████ ██████████ | 09:17 |
| 23 | ██████████████████████████████ | 09:17 |
| 24 | ████████████ ██████████████████ | 09:17 |
| 25 | ██████████████████████. | 09:17 |

Page 116

CONFIDENTIAL

```
 1   net domain is associated with Ad Manager; correct?        09:52

 2        A.    That is correct.                                09:52

 3        Q.    Is that domain associated with any other        09:52

 4   Google products aside from Ad Manager?                     09:52

 5        A.    To say associate with, that's pretty vague.     09:52

 6              Can you tell me what you mean by associate       09:53

 7   with?                                                      09:53

 8        Q.    So I think you said earlier that if an          09:53

 9   ad blocker were configured to block traffic from a         09:53

10   domain associated with Ad Manager, you said that would     09:53

11   be like the double click domain.                           09:53

12              So that's what I'm trying figure out.  Are      09:53

13   there -- if you tried to block traffic from the            09:53

14   double click domain, are you going to be, by               09:53

15   definition, blocking traffic to any other Google           09:53

16   domains aside from Ad Manager?                             09:53

17              MR. ANSORGE:  Objection.  Vague.  And           09:53

18   outside of the scope.                                      09:53

19              THE WITNESS:  There is one case I know of       09:53

20   that Google Analytics uses where they can ping the         09:53

21   double click dot net domain which will send the            09:53

22   Biscotti cookie over.  And this is used very               09:53

23   specifically when a publisher using Google Analytics       09:53

24   has a first-party user list that they then want to use     09:53

25   in Ad Manager.                                             09:54
```

Page 141

CONFIDENTIAL

```
 1              And what they will do is they will actually    09:54
 2   convert the set of IDs that they have in               09:54
 3   Google Analytics to Biscotti so that they can be used  09:54
 4   in Ad Manager via literally pinging the double click   09:54
 5   dot net domain where they have their own sort of first 09:54
 6   party ID, and can then build up a list that they can   09:54
 7   then export to Ad Manager.                             09:54
 8              So that's a use of the double click dot net  09:54
 9   domain by another product and so --                    09:54
10   BY MR. FRAWLEY:                                         09:54
11       Q.   I'm sorry to cut you off, just in the         09:54
12   interest of time, if that's okay.                      09:54
13       A.   Yeah.                                          09:54
14       Q.   Does Google Analytics in the normal course    09:54
15   have its own domain?                                   09:54
16              MR. ANSORGE:  Objection.  Foundation.  And  09:54
17   scope.                                                 09:54
18              THE WITNESS:  I presume so.                  09:54
19   BY MR. FRAWLEY:                                         09:54
20       Q.   One more question about these logs that       09:54
21   we've been talking about where you said you were kind  09:54
22   of confused by what I was asking.                      09:54
23              Let's imagine a P log and a B log.  Does     09:54
24   that make sense?                                       09:55
25              Would it concern you if you learned that     09:55
```

Page 142

| | | |
|---|---|---|
| 1 | Google was sort of taking a third log and funneling | 09:55 |
| 2 | everything from the P log and everything from the | 09:55 |
| 3 | B log into that third log to make a combined log? | 09:55 |
| 4 | Would that concern you? | 09:55 |
| 5 | MR. ANSORGE:  Objection.  Vague. | 09:55 |
| 6 | Foundation.  And incomplete hypothetical. | 09:55 |
| 7 | THE WITNESS:  If the user IDs were | 09:55 |
| 8 | appropriately encrypted, no. | 09:55 |
| 9 | BY MR. FRAWLEY: | 09:55 |
| 10 | Q.   Are you aware of any log like the one I just | 09:55 |
| 11 | described? | 09:55 |
| 12 | A.   I am aware of logs that would process those | 09:55 |
| 13 | logs and come up with an aggregate data and remove | 09:55 |
| 14 | user IDs. | 09:55 |
| 15 | So I think the answer is yes.  But because | 09:55 |
| 16 | there aren't even any user IDs, there is no concern. | 09:56 |
| 17 | Q.   You said you're aware of logs that would | 09:56 |
| 18 | process the logs and come up with an aggregated data. | 09:56 |
| 19 | So let me ask it differently. | 09:56 |
| 20 | Are you aware of any logs where, as I | 09:56 |
| 21 | described it, that third log would just be complete | 09:56 |
| 22 | copies of what was in the P log and the B log so no | 09:56 |
| 23 | processing, no changing, no aggregation, just we are | 09:56 |
| 24 | going to dump everything from the P log and everything | 09:56 |
| 25 | from the B log into this third log, without making any | 09:56 |

Page 143

| | | |
|---|---|---|
| 1 | changes? | 09:56 |
| 2 | Are you aware of any log like that? | 09:56 |
| 3 | MR. ANSORGE:  Objection.  Vague.  Compound. | 09:56 |
| 4 | Foundation.  And object to the testimony of counsel. | 09:56 |
| 5 | How does any of this relate to | 09:56 |
| 6 | Dr. Berntson's declaration? | 09:56 |
| 7 | THE WITNESS:  The response is I'm not but if | 09:56 |
| 8 | you go through and look at the data that's recorded, | 09:56 |
| 9 | the cases where you would be able to join a GAIA | 09:56 |
| 10 | versus a Biscotti is still not possible because any | 09:56 |
| 11 | case where you see a Biscotti that might have an | 09:56 |
| 12 | associated GAIA, the GAIA is encrypted.  Any case | 09:57 |
| 13 | where you've got an Biscotti with an assumed -- and | 09:57 |
| 14 | vice versa, which means so long as you keep the | 09:57 |
| 15 | appropriate encryption in place, you can't join even | 09:57 |
| 16 | if you take verbatim what's in the two logs. | 09:57 |
| 17 | If you decrypted all the logs and so you | 09:57 |
| 18 | don't protect the appropriate joinability by having | 09:57 |
| 19 | the encrypted fields in place, then there would be an | 09:57 |
| 20 | issue. | 09:57 |
| 21 | But I'm confident in our review systems to | 09:57 |
| 22 | say that is highly unlikely.  I am not aware of such a | 09:57 |
| 23 | log.  And I continue to stand by my assertion that the | 09:57 |
| 24 | protections we put in place and our best practices are | 09:57 |
| 25 | designed to prevent joinability. | 09:57 |

Page 144

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | MR. FRAWLEY:  Okay.  That's all the | 09:57 |
| 2 | questions I have right now. | 09:57 |
| 3 | Thank you, Dr. Berntson. | 09:57 |
| 4 | MR. ANSORGE:  We're going to take a quick | 09:57 |
| 5 | break.  It's going to be one or two minutes, | 09:57 |
| 6 | Mr. Frawley.  And we'll be back on the record. | 09:58 |
| 7 | MR. FRAWLEY:  Sure. | 09:58 |
| 8 | THE VIDEOGRAPHER:  This marks the end of | 09:58 |
| 9 | Media No. 3.  Going off the record at 12:58 p.m. | 09:58 |
| 10 | (Break taken in proceedings.) | 10:00 |
| 11 | THE VIDEOGRAPHER:  This marks the beginning | 10:01 |
| 12 | of Media No. 4.  Going back on the record at 1:01 p.m. | 10:01 |
| 13 | MR. ANSORGE:  There's no questions from us. | 10:01 |
| 14 | We are happy to close this. | 10:01 |
| 15 | Thank you for your patience, Dr. Berntson. | 10:01 |
| 16 | And for your polite conduct, Mr. Frawley. | 10:01 |
| 17 | MR. FRAWLEY:  Thank you, Dr. Berntson. | 10:01 |
| 18 | Thank you, Joey. | 10:01 |
| 19 | MR. ANSORGE:  And with that, we can go off | 10:01 |
| 20 | the record. | 10:01 |
| 21 | THE VIDEOGRAPHER:  We are off the record at | 10:01 |
| 22 | 1:01 p.m. and this concludes today's testimony given | 10:01 |
| 23 | by Dr. Glenn Berntson.  The total number of media used | 10:01 |
| 24 | was four and will be retained by Veritext Legal | 10:01 |
| 25 | Solutions. | 10:01 |

Page 145

```
 1              REPORTER'S CERTIFICATE
 2                    ---oOo---
 3   STATE OF CALIFORNIA    )
                            ) ss.
 4   COUNTY OF YOLO         )
 5         I, KATY E. SCHMIDT, a Certified Shorthand
 6   Reporter in and for the State of California, duly
 7   commissioned and a disinterested person, certify:
 8         That the foregoing deposition was taken before
 9   me at the time and place herein set forth;
10         That GLENN BERNTSON, the deponent herein, was
11   put on oath by me;
12         That the testimony of the witness and all
13   objections made at the time of the examination were
14   recorded stenographically by me to the best of my
15   ability and thereafter transcribed into typewriting;
16         That the foregoing deposition is a record of
17   the testimony of the examination.
18         IN WITNESS WHEREOF, I subscribe my name on this
19   16th day of February, 2023.
20
21
22   Katy E. Schmidt, RPR, RMR, CRR, CSR 13096
     Certified Shorthand Reporter
23   in and for the
     County of Sacramento,
24   State of California
25   Ref. No. 5757744 KES
```

Page 148