# GOOGLE'S RESPONSIVE SEPARATE STATEMENT TO PLAINTIFFS' ADDITIONAL MATERIAL FACTS

# Redacted Version of Document Sought to be Sealed

# CORRECTED BY PLAINTIFFS

1    **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

2    Diane M. Doolittle (CA Bar No. 142046)        Andrew H. Schapiro (admitted *pro hac vice*)
     dianedoolittle@quinnemanuel.com               andrewschapiro@quinnemanuel.com
3    Sara Jenkins (CA Bar No. 230097)              Teuta Fani (admitted *pro hac vice*)
     sarajenkins@quinnemanuel.com                  teutafani@quinnemanuel.com
4    555 Twin Dolphin Drive, 5th Floor             Joseph H. Margolies (admitted *pro hac vice*)
     Redwood Shores, CA 94065                      josephmargolies@quinnemanuel.com
5    Telephone: (650) 801-5000                     191 N. Wacker Drive, Suite 2700
     Facsimile: (650) 801-5100                     Chicago, IL 60606
6                                                  Telephone: (312) 705-7400
                                                   Facsimile: (312) 705-7401
7
     Stephen A. Broome (CA Bar No. 314605)         Josef Ansorge (admitted *pro hac vice*)
8    stephenbroome@quinnemanuel.com                josefansorge@quinnemanuel.com
     Viola Trebicka (CA Bar No. 269526)            Xi ("Tracy") Gao (CA Bar No. 326266)
9    violatrebicka@quinnemanuel.com                tracygao@quinnemanuel.com
     Crystal Nix-Hines (CA Bar No. 326971)         Carl Spilly (admitted pro hac vice)
10   crystalnixhines@quinnemanuel.com              carlspilly@quinnemanuel.com
     Alyssa G. Olson (CA Bar No. 305705)           1300 I Street NW, Suite 900
11   alyolson@quinnemanuel.com                     Washington D.C., 20005
     865 S. Figueroa Street, 10th Floor            Telephone: (202) 538-8000
12   Los Angeles, CA 90017                         Facsimile: (202) 538-8100
     Telephone: (213) 443-3000
13   Facsimile: (213) 443-3100

14

15                        **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

17   CHASOM BROWN, *et al.*, individually and      Case No. 4:20-cv-03664-YGR-SVK
     on behalf of all similarly situated,
18                                                 **GOOGLE'S RESPONSIVE SEPARATE**
              Plaintiffs,                           **STATEMENT TO PLAINTIFFS'**
19                                                 **ADDITIONAL MATERIAL FACTS**
          vs.                                      Hon. Yvonne Gonzalez Rogers
20                                                 Courtroom: 1 – 4th Floor
     GOOGLE LLC,                                   Date:      May 12, 2023
21                                                 Time:      1:00 p.m.
              Defendant.
22

23

24

25

26

27

28

Pursuant to Section 9(c)(1) of the Court's Standing Order In Civil Cases, Google respectfully submits this response to Plaintiffs' Separate Statement of Additional Material Facts.[1]

**Google's Statement of Undisputed Material Facts and Plaintiffs' Responses**

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 1. Google never represented that Chrome's Incognito mode prevents the data collection and use at issue. Ex. 85(McPhie Decl.) ¶¶ 5, 18, 52; Ex. 63 (McPhie Tr.) 109:23–110:11, 126:2-7; Exs. 93–112 (Privacy Policies); Ex. 113–134 (Chrome Privacy Notices); Ex. 72–74 (Incognito Screens); Exs. 89–92 (PBM Help pages). | Disputed. Google represented and by contract promised not to collect and use private browsing information while users were visiting non-Google websites and signed out of their Google accounts. Broome Exs. 72-74, 92-112, 113-34; *see also* Broome Ex. 79 (Keegan Survey Report) ¶ 185 & tbl. 6; Additional Facts 1-3, 7-21. |
| Issues 1, 2 | Fact 2. Google never represented that non-Chrome browsers' private browsing modes ("PBMs") (Class 2) prevent the data collection and use at issue. Ex. 85 (McPhie Decl.) ¶¶ 28, 76; Exs. 93–112 (Privacy Policies); Exs. 113–134 (Chrome Privacy Notices); Ex. 72–74 (Incognito Screens); Exs. 89–92 (PBM Help pages). | Disputed. *See* Response to Fact 1; *see also* Additional Facts 18, 20. |
| Issues 1, 2 | Fact 3. Plaintiffs and Class Members are Google Account holders. Dkt. 886 (Fourth Amended Complaint ("FAC")) ¶ 192. | Undisputed. |
| Issues 1, 2 | Fact 4. A user who signs up for a Google Account agrees to the Privacy Policy. Ex. 85 (McPhie Decl.) § C. | Disputed. The Google form contract has included but has never been limited to the Privacy Policy. Additional Facts 1-3. |
| Issues 1, 2 | Fact 5. All named Plaintiffs signed up for their first Google accounts between 2004 and 2012. Exs. 65–69 (Subscriber Information). | Undisputed. |

---

[1] Unless otherwise noted, within Google's columns, "Ex." refers to the Broome Declaration or Supplemental Broome Declaration exhibits, and within Plaintiffs' columns, "Ex." refers to the Mao Declaration exhibits.

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 6. All class members consented to Google's Privacy Policy when they opened their Google Accounts. Exs. 1–4 (Brown, Byatt, Castillo, and Davis May 24, 2021 Amended RFA Resp.), at No. 1; Ex. 9 (Trujillo June 7, 2021 RFA Resp.), at No. 1; Ex. 85 (McPhie Decl.) ¶ 34; Ex. 86 (McPhie Decl. Ex. 4). | <u>Disputed</u>. *See* Response to Fact 4. |
| Issues 1, 2 | Fact 7. Google's Privacy Policy governs the at-issue data collection and use. Exs. 93–112 (Privacy Policies). | <u>Disputed</u>. The form contract, including the Privacy Policy, represented that Google would not collect and use the private browsing information at issue. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 8. Two Plaintiffs (Davis and Brown) and millions of class members consented to the New Account Creation Agreement. Ex. 85 (McPhie Decl.) ¶¶ 48–50; Ex. 87 (McPhie Decl. Ex. 15). | <u>Disputed</u>. Google account holders agreed to be bound by the Google form contract, which throughout the class period has included the Privacy Policy and other documents. Additional Facts 1-3. |
| Issues 1, 2 | Fact 9. Google receives the at-issue data through the same process at issue in *Calhoun v. Google*, Case No. 20-cv-5146, *i.e.*, through HTTP resource requests initiated when a user, in any browser or mode, visits a website that has installed the code for Google's advertising, analytics, or other web-services. FAC ¶ 63. | <u>Disputed</u>. This Fact does not cite any evidence about what is at issue in *Calhoun*. Even if it did, that would be improper because such evidence would be hearsay and inadmissible. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c). In any event, the processes are different. *Calhoun* involved regular browsing mode in Chrome, including while users are signed in to their Google accounts. *See* Case 20-cv-05146, Dkt. 57 (Google's MTD) at 1 n.1. This case is limited to users in a private browsing mode. Dkt. 803 at 24. Google's process for storing that data is also different, with Google storing private browsing data in a way that deprived Plaintiffs and class members of any method to review and delete that data. Broome Ex. 77 (Hochman Opening Rep.) § D.2. Also, unlike *Calhoun*, this case involves |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Google's use of detection bits to track a users' choice to use a private browsing mode. Additional Fact 4. |
| Issues 1, 2, 3, 4, 5, 6, 9 | Fact 10. The at-issue data is specified at paragraph 63 of Plaintiffs' FAC and consists of: (a) GET requests; (b) IP address of the user's connection to the internet; (c) information identifying the browser software the user is using; (d) User-ID issued by the website to the user, if available; (e) geolocation of the user, if available; (f) information contained in Google cookies. FAC ¶ 63; Exs. 24–27 (Brown, Byatt, Castillo, and Davis June 1, 2021 Rog Resp.), at No. 8; Ex. 28 (Trujillo June 7, 2021 Rog Resp.), at No. 8. | <u>Disputed</u>. The at-issue private browsing data is specified not only in Plaintiffs' amended complaint but also in more detail in Mr. Hochman's report. Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.A, F, App. B); *see also* Additional Fact 4. Google's logs also contain derived information. Broome Ex. 77 (Hochman Opening Rep) § VIII.D; Mao Ex. 8 (Hochman Rebuttal Rep.) §§ V.A., V.D. |
| Issues 1, 2 | Fact 11. Google's Privacy Policy discloses the collection and use of the at-issue data. Ex. 85 (McPhie Decl.) § B; Ex. 49 (Davis Tr.) 102:10–104:1; Ex. 53 (Castillo Tr.) 67:19–74:21, 99:18–101:8; Ex. 47 (Byatt Tr.) 151:1–20; Ex. 51 (Brown Tr.); Ex. 54 (Trujillo Tr.) 190:2–24; Exs. 93–112 (Privacy Policies). | <u>Disputed</u>. Google never disclosed its collection and use of the at-issue private browsing information. *See* Response to Fact 1. Even Google employees are unable to identify the data that Google collects. Mao Ex. 1 (Adkins Tr.) 283:22-286:10; Ex. 2 at 191:12-14. |
| Issues 1, 2, 4, 5, 6, 9 | Fact 12. Google's collection of the at-issue data through its advertising and analytics services is common knowledge. FAC ¶ 163; Ex. 47 (Byatt Tr.) 152:15–153:21; Ex. 49 (Davis Tr.) 68:7–71:5; Ex. 53 (Castillo Tr.) 70:2–74:21, 99:18–100:25; Ex. 54 (Trujillo Tr.) 56:1–19, 60:13–61:2. | <u>Disputed</u>. Google never disclosed its collection and use of the at-issue private browsing information. *See* Response to Fact 1; *see also* Additional Fact 4. Plaintiffs understood that, based on their contract, Google would not collect and use their private browsing information. *See* Response to Fact 13. |
| Issues 1, 2 | Fact 13. Plaintiffs were aware of the data collection and uses described in the Privacy Policy before they filed suit. Ex. 49 (Davis Tr.) 93:2–21; Ex. 51 (Brown Tr.) 30:19–31:1; Ex. 1 (Brown May 24, 2021 Amended RFA Resp.), at No. 1; Ex. 9 (Trujillo June 7, 2021 RFA Resp.), at | <u>Undisputed</u> that Plaintiffs read and were familiar with the Privacy Policy before they filed suit. <u>Disputed</u> that they were aware of Google's collection and use of the at-issue private browsing data. Mao Ex. 3 (Brown Tr.) 55:2-22, 156:16-24, 158:13-22, 162:4-17, 177:14-178:15, |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | No. 1; Exs. 2–4, 6–8 (Davis, Castillo, Byatt May 24, 2021 Amended RFA Resp.), at Nos. 1, 3. | 197:6-17; Ex. 4 (Byatt Tr.) 133:10-136:18, 156:5-159:5; Ex. 5 (Castillo Tr.) 91:7-95:1, 127:20-130:6; Ex. 6 (Davis Tr.) 24:18-25:12, 64:2-65:22, 85:7-11, 95:9-97:4, 112:22-113:25, 141:25-142:15, 175:15-177:20; Ex. 7 (Trujillo Tr.) 65:24-66:11, 119:3-10, 146:11-19, 149:14-150:4, 223:2-226:14; *see also* Additional Fact 4. |
| Issues 1, 2 | Fact 14. Plaintiffs admit they consented to the data collection and uses described in the Privacy Policy for modes other than PBM. Ex. 54 (Trujillo Tr.) 56:1–14, 60:23–14; Ex. 51 (Brown Tr.) 60:15-61:8, 158:2–12; Ex. 53 (Castillo Tr.) 67:19–70:14, 99:18–100:25; Exd. 5–8 (Davis, Castillo, Byatt, and Brown May 24, 2021 Amended RFA Resp.), at No. 8; Ex. 9 (Trujillo June 7, 2021 RFA Resp.), at No. 8. | <u>Undisputed</u> that Plaintiffs consented to the Privacy Policy. <u>Disputed</u> that such consent included Google's collection and use of the at-issue private browsing data. *See* Response to Fact 13. |
| Issues 1, 2 | Fact 15. Plaintiffs' alleged contract with Google consists of "the Google Terms of Service, the Google Chrome and Chrome OS Additional Terms of Service, and the Chrome Privacy Notice," which documents Plaintiffs allege "incorporate and/or should be construed consistent with the Privacy Policy, the Search & Browse Privately [Help page], and the Incognito Screen." FAC ¶ 268. | <u>Undisputed</u>. |
| Issues 1, 2 | Fact 16. Google's General Terms of Service ("TOS") have never mentioned private browsing. Exs. 135–138 (TOS). | <u>Disputed</u>. Documents part of the same form contract have mentioned private browsing. Broome Exs. 72-74, 92, 100-112, 113-134. |
| Issues 1, 2 | Fact 17. The Chrome and Chrome OS TOS have never mentioned private browsing. Exs. 139–140 (Chrome TOS). | <u>Disputed</u>. *See* Response to Fact 16. |
| Issues 1, 2 | Fact 18. The Google Privacy Policy has never represented that PBM prevents | <u>Disputed</u>. The Google Privacy Policy, individually and together with other |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Google from receiving the at-issue data. Exs. 93–112 (Privacy Policies); Ex. 63 (McPhie Tr.) 123:14–125:10, 148:7–149:17. | documents in the form contract, represented that Google would not collect and use private browsing information. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 19.   Until May 2018, Google's Privacy Policy did not mention Incognito mode or private browsing mode. Ex. 85 (McPhie Decl.) ¶¶ 18, 28 & n.5; Exs. 93–99 (March 25, 2016 through December 18, 2017 Privacy Policies); Ex. 53 (Castillo Tr.) 66:6–67:11. | <u>Disputed</u>. While the pre-May 2018 Privacy Policy did not mention private browsing, other documents in the same form contract did during that time period. Broome Exs. 72, 92, 113-21. |
| Issues 1, 2 | Fact 20. Beginning May 2018, Google's Privacy Policy made only one reference to private browsing, in the introductory paragraph: "You can use our services in a variety of ways to manage your privacy. …<u>You can also choose to browse the web privately using Chrome in Incognito mode</u>. And across our services, you can adjust your privacy settings to control what we collect and how your information is used." Ex. 85 (McPhie Decl.) ¶¶ 27–28 & n.5; Exs. 100–112 (May 25, 2018 through July 1, 2021 Privacy Policies). | <u>Disputed</u>. The provision Google quotes is not in the introductory paragraph. In addition, the Google Privacy Policy has since May 2018 represented that "you can search and browse privately," and that text includes a hyperlink to the "Search & browse privately" page. With the February 10, 2022 Privacy Policy, the provision Google quotes changed; it now states: "You can also choose to browse the web in a private mode, like Chrome Incognito mode." *See* Broome Exs. 100-112; Broome Ex. 110 (Feb. 10, 2022). |
| Issues 1, 2 | Fact 21. Plaintiffs identify only two relevant "promises" from the Privacy Policy: (1) "You can use our services in a variety of ways to manage your privacy . . . across our services, you can adjust our privacy settings to control what we collect and how your information is used" and (2) "You can also choose to browse the web privately using Chrome in Incognito mode." FAC ¶¶ 42, 45; Ex. 39 (Plaintiffs' April 15, 2022 Rog Resp.), at No. 17, 5:13–17. | <u>Disputed</u>. Plaintiffs have identified other provisions in the Privacy Policy, including one that defines "Google services," the provision where Google commits to an "explicit consent" standard, the provision incorporating the "Search & browse privately" webpage and, in versions of the Privacy Policy in effect prior to May 2018, provisions emphasizing "transparency and choice," where users have "control" of "who [they] share information with," and "whether certain activity is stored in a cookie or similar technology." Broome Exs. 93-112; Dkt. 192 (Opposition to MTD SAC) at 12-13; Dkt. 609 (Class Cert. Mot.) at 19; Broome Ex. 39 at 5; |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Broome Ex. 75 (Schneier Rep.) ¶ 279. |
| Issues 1, 2, 4 | Fact 22. The <u>Chrome Privacy Notice</u> ("CPN") has never represented that Incognito or other browsers' PBMs prevent Google from receiving the at-issue data. Exs. 113–134 (CPNs). | <u>Disputed</u>. The CPN, individually and together with other documents in the form contract, represented that Google would not collect and use private browsing information. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 23. Throughout the Class Period, the CPN described Incognito mode in relevant part as follows: "You can limit the information Chrome stores on your system by using incognito mode or guest mode. In these modes, Chrome won't store certain information, such as: [] Basic browsing history information….**Cookies. Chrome won't share existing cookies with sites you visit in incognito or guest mode. Sites may deposit new cookies on your system while you are in these modes, but they'll only be stored and transmitted until you close the incognito or guest window." Exs. 113–134 (CPNs). | <u>Disputed</u>. Google omits text from this page. Moreover, throughout the class period, other documents part of the same form contract contained representations about private browsing mode. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 24. In the documents that Plaintiffs claim comprise their contract with Google, Google defines "Chrome" and "Google" differently, and the CPN uses the terms differently. Ex. 85 (McPhie Decl.) ¶ 54; Exs. 135–138 (TOS), at 2; Exs. 113–134 (CPNs), at 1. | <u>Disputed</u>. Plaintiffs understood Chrome to be a service that Google offers. Mao Ex. 3 (Brown Tr.) 86:21-87:15; Ex. 4 (Byatt Tr.) 96:6-13; Ex. 5 (Castillo Tr.) 47:24-48:5; Ex. 6 (Davis Tr.) 28:7-10; Ex. 7 (Trujillo Tr.) 189:23-190:1. |
| Issues 1, 2 | Fact 25. Plaintiffs identify only two relevant "promises" from the CPN: (1) "[y]ou can limit the information Chrome stores on your system by using incognito mode" and (2) "Chrome won't store certain information, such as: Basic browsing history information like URLs, cached paged text, or IP addresses of pages linked from the websites [users] visit [and] Snapshots of pages that [users] visit." Ex. 29–33 (Plaintiffs' July 30, | <u>Disputed</u>. Google omits a bullet under "Chrome won't store certain information." In addition, Plaintiffs have identified other Chrome Privacy Notice provisions, including "Regardless of where your information is processed, we apply the same protections described in the Google Privacy Policy." Dkt. 192 at 13. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | 2021 Responses to Interrogatories), at No. 12; FAC ¶¶ 269–272. | |
| Issues 1, 2, 9 | Fact 26. During the class period, the CPN linked to the Chrome Privacy Whitepaper, explaining that in Incognito: "The browsing history and cookies are deleted only once you have closed the last incognito window. Incognito mode cannot make you invisible on the internet." Ex. 85 (McPhie Decl.) § D.2; Ex. 141 (Whitepaper). | <u>Disputed</u>. The Chrome Privacy Whitepaper contains other representations about Incognito, including "Going incognito doesn't hide your browsing from your employer, your internet service provider, or the websites you visit." Broome Ex. 141. |
| Issues 1, 2, 4 | Fact 27. The Incognito Screen has never represented that Incognito or other browsers' PBMs prevent Google from receiving the at-issue data. Exs. 72–74 (Incognito Screens). | <u>Disputed</u>. Through the form contract, including the Incognito Screen, Google promised not to collect and use the at-issue private browsing information. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 28. The Incognito Screen states, "[n]ow you can browse privately, and other people who use this device won't see your activity," that "Chrome won't save…[y]our browsing history[,] [c]ookies and site data[,] [i]nformation entered in forms," and that "Your activity might still be visible to…[w]ebsites you visit[,] [y]our employer or school[,] [y]our internet service provider." Exs. 73–74 (Incognito Screens). | <u>Undisputed</u> that the Splash Screen contains those words. |
| Issues 1, 2 | Fact 29. Adding Google to the Incognito Screen's list of entities that may see users' activity could mislead users. Ex. 46 (Fair Tr.) 72:6–73:19. | <u>Disputed</u>. Google's omission of "Google" from the Splash Screen is misleading. Mao Ex. 3 (Brown Tr.) 137:16-138:3; Ex. 4 (Byatt Tr.) 135:19-136:18; Ex. 5 (Castillo Tr.) 158:20-159:6; Ex. 6 (Davis Tr.) 169:14-24; Ex. 7 (Trujillo Tr.) 280:23-281:23; *see* Additional Fact 21. |
| Issues 1, 2 | Fact 30. Plaintiffs identify only four relevant "promises" from the Incognito Screen: (1) "You've gone incognito," (2) "Now you can browse privately, and other | <u>Disputed</u>. Google omits words. Plaintiffs have also identified the iconography of the Splash Screen. Broome Ex. 39 at 5. Plaintiffs also identified a Google |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
|  | people who use this device won't see your activity," (3) "Chrome won't save . . . [y]our browsing history . . . [c]ookies and site data," and (4) "Your activity might still be visible to: Websites you visit[,] [y]our employer or school[, ] [y]our internet service provider[.]" FAC ¶¶ 52–56; Exs. 24–27 (Brown, Byatt, Castillo, and Davis June 1, 2021 Rog Resp.), at No. 9; Ex. 28 (Trujillo June 7, 2021 Rog Resp.), at No. 9; Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 5:17–6:6. | promise that "now you can browse privately" to mean private browsing excludes Google. Mao Ex. 3 (Brown Tr.) 119:19-122:20; Ex. 4 (Byatt Tr.) 126:25-127:23; Ex. 5 (Castillo Tr.) 240:21-241:12; Ex. 6 (Davis Tr.) 22:7-24:17; Ex. 7 (Trujillo Tr.) 146:20-147:21. |
| Issue 2 | Fact 31. The Incognito Screen is not referenced in any version of Google's Privacy Policy. Exs. 93–112 (Privacy Policies). | <u>Disputed</u>. The Privacy Policy has since May 2018 directed users to the Splash Screen by stating: "choose to browse the web privately using Chrome in Incognito mode." Broome Exs. 100-12. Throughout the class period, the Splash Screen was displayed to users at the beginning of every Incognito session, making it impossible for Incognito users to avoid it. Mao Ex. 68 at 5; Additional Fact 15. |
| Issue 2 | Fact 32. The Incognito Screen is not referenced in any version of Google's Terms of Service or the CPN. Exs. 135–138 (TOS); Exs. 139–140 (CPNs). | <u>Disputed</u>. The CPN has throughout the class period directed users to the Splash Screen by inviting them to "us[e] incognito mode." Broome Exs. 113-34. *See also* Response to Fact 31. |
| Issues 1, 2 | Fact 33. The Incognito Screen includes a "Learn more" button that U.S. users clicked more than ▮▮▮▮▮▮▮ times between August 2016 and January 2022. Ex. 85 (McPhie Decl.) ¶ 73 & Ex. 88 (McPhie Decl. Ex. 17). | <u>Disputed</u>. Plaintiffs do not have access to Google's system that generated this information, and Google has not laid the legal foundation for the admissibility of this hearsay. |
| Issues 1, 2 | Fact 34. Between July 2017 and May 2020, the "Learn more" button displayed the <u>How private browsing works in Chrome</u> Help page. Ex. 85 (McPhie Decl.) ¶ 73. | <u>Undisputed</u>. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 35. The <u>How private browsing works in Chrome</u> Help page explains in relevant part: "Incognito mode stops Chrome from saving your browsing history to your local history," but "[y]our activity . . . might still be visible to…websites you visit, including the ads and resources used on those sites"; "Search engines" and "web-service[s]." Ex. 85 (McPhie Decl.) ¶ 58 & Ex. 90 (McPhie Decl. Ex. 18). | <u>Disputed</u>: This page contains other representations about Incognito mode, including that "Chrome doesn't save your browsing history." *See* Response to Fact 37. |
| Issues 1, 2 | Fact 36. The <u>How private browsing works in Chrome</u> Help page is also linked to the Browse in Private Help page and directly available from Google.com and was visited about ███████ times between its launch in July 2017 and January 2022. Ex. 85 (McPhie Decl.) ¶¶ 58–59; Ex. 88 (McPhie Decl. Ex. 17). | <u>Disputed</u>. Plaintiffs do not have access to Google's system that generated this information, and Google has not laid the legal foundation for the admissibility of this hearsay. |
| Issues 1, 2 | Fact 37. Plaintiffs were aware before they filed suit that Google is among the web services that provide ads and analytics to websites. Ex. 53 (Castillo Tr.) 181:18–185:16; Ex. 47 (Byatt Tr.) 143:19–146:25; Ex. 49 (Davis Tr.) 120:15–17; Ex. 51 (Brown Tr.) 128:25; Ex. 54 (Trujillo Tr.) 59:17–61:2, 218:22–219:11. | <u>Disputed</u>. Plaintiffs were not aware and expected that Google (even if as a web service) would not collect, store, or use private browsing data. Mao Ex. 5 (Castillo Tr.) 179:2-190:9, 243:13-246:23; Ex. 4 (Byatt Tr.) 142:7-147:15, 253:18-257:14; Ex. 6 (Davis Tr.) 27:13-17, 128:10-132:7, 170:12-171:16; Ex. 3 (Brown Tr.) 127:3-131:19, 197:1-200:11; Ex. 7 (Trujillo Tr.) 59:17-64:22, 218:22-222:7. |
| Issues 1, 2 | Fact 38. Since May 2020, the Incognito Screen's "Learn more" button displayed the <u>How Chrome Incognito keeps your browsing private</u> Help page. Ex. 85 (McPhie Decl.) ¶ 73. | <u>Undisputed</u>. |
| Issues 1, 2 | Fact 39. The <u>How Chrome Incognito keeps your browsing private</u> Help page explains in relevant part: "In Incognito, none of your browsing history, cookies and site data, or information entered in forms are saved *on your device*. This | <u>Disputed</u>. Google added emphasis to "on your device." Google's description of what the page represents is also incomplete. For example, the page also states: "Chrome doesn't tell websites, including Google, when you're browsing |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | means your activity doesn't show up in your Chrome browser history, so people who also use your device won't see your activity." It further explains "[w]hat Incognito mode doesn't do," including that Incognito does not "[p]revent the websites you visit from serving ads based on your activity during an Incognito session." Ex. 85 (McPhie Decl.) ¶ 74; Ex. 91 (McPhie Decl. Ex. 29). | privately in Incognito mode," and as another example, the page states that your activity may be "visible to the websites you visit, your school, employer, or your Internet Service provider." Broome Ex. 91. |
| Issues 1, 2 | Fact 40. The <u>How Chrome Incognito keeps your browsing private</u> Help page was visited about ▉▉▉▉▉ times between May 1, 2020 and January 2022. Ex. 85 (McPhie Decl.) ¶ 75; Ex. 88 (McPhie Decl. Ex. 17). | <u>Disputed</u>. Plaintiffs do not have access to Google's system that generated this information, and Google has not laid the legal foundation for the admissibility of this hearsay. |
| Issues 1, 2, 4 | Fact 41. The <u>Search & browse privately</u> Help page has never represented that Incognito or other browsers' PBMs prevent Google from receiving the data at issue in this case. Ex. 92 (Search & browse privately page). | <u>Disputed</u>. Through this document, individually and together with the rest of the form contract, Google represented it would not collect and use the at-issue private browsing data. *See* Response to Fact 1. |
| Issues 1, 2 | Fact 42. The <u>Search & browse privately</u> Help page explains: "If you want to search the web without saving your search activity to your account, you can use private browsing mode in a browser (like Chrome or Safari)." It also explains "[p]rivate browsing works differently depending on which browser you use. Browsing in private usually means: [] The searches you do or sites you visit won't be saved to your device or browsing history[,] … Cookies are deleted after you close your private browsing window or tab[,] You might see search results and suggestions based on your location or other searches you've done during your current browsing session." Ex. 92 (Search & browse privately page). | <u>Disputed</u>. This page contains other provisions, including: "You're in control of what information you share with Google when you search. To browse the web privately, you can use private browsing, sign out of your account, change your custom results settings, or delete past activity." Broome Ex. 92. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2 | Fact 43. Plaintiffs identify only three "promises" from the <u>Search & browse privately</u> page: (1) "You're in control of what information you share with Google when you search," (2) "To browse the web privately, you can use private browsing, sign out of your account, change your custom results settings, or delete past activity," and (3) "[i]f you want to search the web without saving your search activity to your account, you can use private browsing mode in a browser (like Chrome or Safari)." FAC ¶¶ 42, 47–48; Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 9:5–10. | <u>Disputed</u>. On this page, Google represented that Google will not collect and use the at-issue private browsing data. Broome Ex. 92. |
| Issues 1, 2 | Fact 44. The <u>Search & browse privately</u> Help page was visited fewer than ▮▮ ▮▮ times between its launch in 2016 and January 2022. Ex. 85 (McPhie Decl.) ¶ 76. | <u>Disputed</u>. Plaintiffs do not have access to Google's system that generated this information, and Google has not laid the legal foundation for the admissibility of this hearsay. |
| Issue 2 | Fact 45. The <u>Search & browse privately</u> Help page was not linked to the Privacy Policy until May 2018. Ex. 85 (McPhie Decl.) ¶ 77. | <u>Undisputed</u> that there was not a direct hyperlink. |
| Issue 2 | Fact 46. The <u>Search & browse privately</u> Help Page is not referenced in any version of Google's Terms of Service or CPN. Exs. 135–138 (TOS); Exs. 139–140 (CPNs). | <u>Disputed</u>. As Google admits with Fact 45, the "Search & browse privately" page (as of May 2018) was directly linked to the Privacy Policy, which is part of the same contract as the TOS and CPN. |
| Issues 1, 2, 11 | Fact 47. Google servers store the at-issue data keyed by (*i.e.*, associated with) unique identifiers contained in cookies. Ex. 84 __ (Ganem Decl.) ¶¶ 9, 14; Ex. 83 (Berntson Decl.) ¶¶ 9–11; Ex. 82 (Psounis Rep.) §§ III.A, C & D; Ex. 15 (Google's November 6, 2020 RFA Resp.), at No. 7. | <u>Undisputed</u> that "keyed" means "associated with" and that data is "associated with unique identifiers." <u>Disputed</u> because those unique identifiers do not only consist only of identifiers contained in cookies. *See* Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.A, D, F, H, ¶¶ 85, 104-09, 139; *id.* ¶¶ 224, 226 (detailing other identifiers such as PPID, Analytics User ID, IP |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | address and user-agent string, device platform, and browser version). The private browsing data Google stores is identifying. *Id.*; *see also* Mao Ex. 9 at -2; Ex. 10 at -09; Ex. 11 at -485; Ex. 12 (Berntson 2022 Tr.) 120:1-22, 126:4-6; *see also* Additional Facts 24-25. The at-issue data is saved on Google's servers and elsewhere, including in users' browsers. Broome Ex. 77 (Hochman Opening Rep.) ¶ 320. |
| Issues 1, 2, 11 | Fact 48. When a user is signed into a Google Account, browsing data Google receives is keyed by an authenticated GAIA identifier. Ex. 83 (Berntson Decl.) ¶¶ 10–11; Ex. 82 (Psounis Rep.) ¶¶ 44–45. | Disputed. Google receives and stores signed-in browsing data with a variety of other identifiers as well, including encrypted Biscotti ID, PPID-mapped-Biscotti ID, IP and user-agent, Analytics User ID, and Google Ads User ID. Broome Ex. 77 (Hochman Opening Rep.) § VIII.F, ¶¶ 107, 284; Mao Ex. 8 (Hochman Rebuttal Rep.) § V.A, ¶ 24, App'x A. |
| Issues 1, 2, 11 | Fact 49. When a user is not signed into a Google account, browsing data Google receives is keyed by an unauthenticated identifier that is not associated with a user's Google Account. Ex. 83 (Berntson Decl.) ¶¶ 10–11; Ex. 82 (Psounis Rep.) ¶¶ 44–45 & nn.29–36. | Disputed. Google receives and stores signed-out data with personally identifying information, including but not limited to PPID, IP address, and user-agent strings. *See* Response to Fact 47. |
| Issues 1, 2, 11 | Fact 50. When a Chrome user starts a new Incognito session, Chrome creates a new "cookie jar" for the storage of cookies placed on the browser during the Incognito session. Ex. 83 (Berntson Decl.) ¶¶ 18–19; Ex. 76 (Zervas Rep.) ¶¶ 63–65; Ex. 45 (Berntson 6/16/2021 Tr.) 279:1–11; Ex. 82 (Psounis Rep.) § III.A; Ex. 56 (McClelland Tr.) 80:12–81:11; Ex. 40 (Google's October 6, 2021 Amended Rog Resp.), at No. 1(d). | Disputed. The concept of a "cookie jar" relates only to Google's storage of information on the user's device and browser. Mao Ex. 18 (Berntson 2023 Tr.) 21:10-23:4. Google also stores data on its servers, and for that data storage, Google does not create a new container for each session. *Id.*; Broome Ex. 77 (Hochman Opening Rep.) § VIII.D; Mao Ex. 8 (Hochman Rebuttal Rep.) ¶¶ 62-69. |
| Issues | Fact 51. The new cookie jar prevents the | Disputed. Starting a new Incognito |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 1, 2, 11 | sharing of cookies that existed on the user's browser before the Incognito session. Ex. 83 (Berntson Decl.) ¶ 19; Ex. 59 (Schneier Tr.) 107:17–108:20; Ex. 82 (Psounis Rep.) § III.A; Ex. 40 (Google's October 6, 2021 Amended Rog Resp.), at No. 1(d). | session does not delete cookies from the user's existing cookie jar. Even after opening an Incognito session, subsequent use of non-Incognito mode will share cookies with Google that existed before the user initiated the Incognito session. *See* Broome Ex. 83 ¶¶ 20-31. Also, cookies that existed before the Incognito session were already shared with Google. Broome Ex. 77 (Hochman Opening Rep.) § VIII.F. Using this information, as well as non-cookie identifiers (e.g., PPID, Analytics User ID, IP address and user-agent string), Incognito activity can be linked to the user's pre-Incognito cookies. *Id.* § VIII.F. *See* Additional Fact 4. |
| Issues 1, 2, 11 | Fact 52. When a user is in PBM, cookies set by websites and their service providers (like Google) are stored only in the new cookie jar. Ex. 83 (Berntson Decl.) § B.2; Ex. 56 (McClelland Tr.) 294:19–296:15; Ex. 82 (Psounis Rep.) § III.A. | <u>Disputed</u>: *See* Response to Fact 50. |
| Issues 1, 2, 11 | Fact 53. If a PBM user does not sign into a Google Account during their PBM session, Google services that engage in tracking or provide personalization will use only data from that PBM session. Ex. 83 (Berntson Decl.) § B.2; Ex. 56 (McClelland Tr.) 72:25–74:5, 80:12–81:11, 294:19–296:15; Ex. 82 (Psounis Rep.) § III.A. | <u>Undisputed</u> that Google engages in "tracking" and personalizes ads even when a PBM user does not sign into Google. <u>Disputed</u> because Google uses any identifiers associated with a particular browsing session *and* "all associated IDs." Broome Ex. 77 (Hochman Opening Rep.) ¶ 184; *see also id.* ¶¶ 107, 177, § VIII.E.2 (Google links private browsing sessions when a user signs in to non-Google websites that assign PPIDs or other User IDs). Google uses this infrastructure to track conversions across different browser sessions and devices. *Id.* ¶¶ 208-11, App'x. F. *See* Additional Fact 4. |
| Issues 1, 2, 11 | Fact 54. Initiating a new PBM session automatically logs the user out of her | <u>Disputed</u>. When a user initiates a new private browsing session, the user is |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Google Account and any other online accounts. Ex. 83 (Berntson Decl.) § B.2; Ex. 76 (Zervas Rep.) ¶¶ 72–73; Ex. 82 (Psounis Rep.) ¶ 36; Ex. 59 (Schneier Tr.) 107:17–108:20. | logged out of her Google Account and any other online accounts within that private browsing session only. Initiating a new private browsing session does not affect the user's logged-in status in regular browsing mode. Broome Ex. 83, ¶¶ 24-25; Broome Ex. 77 (Hochman Opening Rep.) ¶ 161 & n.56. |
| Issues 1, 2, 11 | Fact 55. If a PBM user does not sign into a Google Account, the browsing data Google receives is keyed only to unauthenticated identifiers stored in new cookies. Ex. 83 (Berntson Decl.) § B.2; Ex. 82 (Psounis Rep.) §§ III.A, IV.C; Ex. 76 (Zervas Rep.) § IV.D; Ex. 56 (McClelland Tr.) 72:25-76:9, 80:12–81:11, 295:15–296:15; *see also* Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 8:8-10. | <u>Disputed</u>. *See* Response to Fact 47. |
| Issues 1, 2, 9, 11 | Fact 56. In Google's systems, a signed-out user's PBM browsing activity is not associated with her Google Account. Ex. 83 (Berntson Decl.) § B.2; Ex. 82 (Psounis Rep.) §§ III.A, III.C, III.D, III.F, IV.C; Ex. 76 (Zervas Rep.) § IV.D; Ex. 56 (McClelland Tr.) 72:25-76:9, 80:12–81:11, 295:15–296:15; *see also* Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 8:8-10. | <u>Disputed</u>. Google saves signed-out private browsing data with unique identifiers such that linking private browsing data to a Google Account is trivial. *See* Response to Fact 47. |
| Issues 1, 2, 9, 11 | Fact 57. When a user ends a PBM session, the browser automatically deletes any cookies set during the PBM session. Those cookie values cannot be used to identify the user after she closes the PBM session, making the at-issue data both unidentified and "orphaned." Ex. 76 (Zervas Rep.) § IV; Ex. 81 (Zervas Reb. Rep.) § V; Ex. 82 (Psounis Rep.) § III.A, III.C, III.F, IV.C; Ex. 83 (Berntson Decl.) ¶¶ 10–11, 19–31; Ex. 56 (McClelland Tr.) 72:25–76:9, 80:12–81:11, 278:5–281:14, | <u>Disputed</u>. As explained in Plaintiffs' response to Fact 50, Google stores cookies in both the cookie jar on the user's device/browser and in logs on Google's servers. When a user ends a PBM session, the browser does not delete any data (including cookies) stored on Google servers. Mao Ex. 18 (Berntson 2023 Tr.) 21:10-23:4; Broome Ex. 77 (Hochman Opening Rep.) § VIII.D, App'x. H (data analysis). The data on Google's servers is not orphaned. *See* |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | 295:15–296:15, 318:21–319:15. | Response to Fact 47. |
| Issue 9 | Fact 58. The amount of data Google receives from a given user's PBM session depends on the length of the session before closing the browser and may reflect activity on only a single website. Ex. 59 (Schneier Tr.) 140:13–15; Ex. 82 (Psounis Rep.) ¶¶ 48–64; Ex. 49 (Davis Tr.) 80:1–19; Ex. 76 (Zervas Rep.) § IV. | <u>Disputed</u>. Insofar as Google is implying that data from such a session would not be identifying. *See* Response to Fact 47. *See also* Additional Fact 4. |
| Issues 1, 2, 11 | Fact 59. In Incognito mode, Chrome will not save the user's browsing history, cookies or site data, or information entered in forms, after the user closes the Incognito browsing session. Ex. 76 (Zervas Rep.) ¶¶ 59-61, 66-71, 74-79; Ex. 59 (Schneier Tr.) 71:22-78:14, 107:17-108:20. | <u>Disputed</u>. *See* Responses to Facts 47, 50. The data is even stored in ▓▓▓▓▓▓ ▓▓▓ Mao Ex. 13 at -06; Broome Ex. 77 (Hochman Opening Rep.) ¶ 255; *see also* Additional Fact 17 (Google internal dictionary cites for "save") |
| Issues 1, 2, 9, 11 | Fact 60. Like Chrome Incognito, other browsers' PBMs create a new cookie jar when a user starts a PBM session, and delete browsing history, cookies, and website data locally from the browser when the user closes the session. If a user does not sign into a Google Account while in PBM, any browsing data Google receives will be keyed only to unauthenticated identifiers. Ex. 76 (Zervas Rep.) §§ IV.B, IV.C; Ex. 82 (Psounis Rep.) ¶¶ 48–64. | <u>Disputed</u>. Google saves signed-out private browsing data (including from non-Chrome browsers) with unique identifiers such that linking private browsing data to a Google Account is trivial. *See* Response to Fact 47. |
| Issues 1, 2 | Fact 61. When a user visits a website that uses third party services or resources, standard HTTP network transfer protocols cause a user's browser to send an IP address and user agent value to the website and any third party domains that host web services or resources on that site. Ex. 82 (Psounis Rep.) ¶¶ 95–99; Ex. 142 (Monsees 4/9/2021 Tr.) 84:17–85:12; Ex. 143 (Monsees 6/11/2021 Tr.) 470:3–471:1; Ex. 144 (Porter Felt 30(b)(6) Tr.) | <u>Disputed</u>. Google does not receive users' private browsing data, including IP address and user-agent string, because of standard HTTP network transfer protocols. Google receives this private browsing data because Google's code instructs the user's browser (on the user's device) to send a copy of the private browsing data to Google's servers. Mao Ex. 14 (Google's Response to RFA No. 31) ("[Google] code instructs the user's |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | 40:6–19; Ex. 145 (Rakowski Tr.) 32:8–22, 49:20–50:3, 81:13–82:2. | browser"); Ex. 15 (Google's Response to RFA No. 52) (Google tracking beacons "will cause the user's browser to attempt to" send browsing data to Google, including when the user is in a private browsing mode). Google's tracking beacons do not facilitate and are not incidental to communications between users and non-Google websites. Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.A.3-4. "The communications flow back and forth between the user's browser and the non-Google website's server irrespective of the Google tracking beacons." *Id.* ¶ 113. Google could have designed its code not to send a copy of private browsing communications to Google. *Id.* § VIII.A.6. |
| Issues 1, 2, 11 | Fact 62. Browsing data in Google's systems is not keyed to a user's IP address, user agent value, or combination of the two. Ex. 83 (Berntson Decl.) ¶ 12; Ex. 62 (Berntson 2/14/2023 Tr.) 113:3–115:22; Ex. 82 (Psounis Rep.) §§ III.A, III.C, III.D–G, III.I–J, IV.A–C, App'xs. E–F; Ex. 80 (Zervas Reb. Rep.) § V; Ex. 56 (McClelland Tr.) 278:5–279:24. | Disputed. Browsing data (including private browsing data) stored in Google's servers is "keyed by (i.e., associated with)" (Google's Fact 47) the user's IP address and user-agent value. This was reflected in log data Google produced to Plaintiffs, as well as in Google's internal documentation. Broome Ex. 77 (Hochman Opening Rep.) § VIII.A, D, F, H, ¶¶ 99, 101, 105, 224-36 (citing Google documents); Mao Ex. 8 (Hochman Rebuttal Rep.) § V.A; Ex. 11 at -485; Dkt. 531 (Google's Answer) ¶ 63. |
| Issues 1, 2, 9, 11 | Fact 63. Google's internal policies prohibit the use of fingerprinting to track user behavior for ad targeting or to identify users. Ex. 83 (Berntson Decl.) ¶¶ 4–5, 11–12, 42–43; Ex. 82 (Psounis Rep.) §§ III.F, IV.C; Ex. 81 (Schwartz Rep.) §§ VI.A.iii–iv; Ex. 62 (Berntson 2/14/2023 Tr.) 113:3–115:22; Ex. 56 (McClelland Tr.) 278:5–279:24, 290:5-24; Ex. 71 (Fingerprinting Policy); Ex. 70 (Log Data Usage Rules). | Disputed. Google's policies expressly permit the use of fingerprinting and "[i]mmutable identifiers" to identify a unique "device, app, browser, or user." Broome Ex. 71 (listing "permitted users"). Also incomplete in that Google targets ads and further identifies users, including private browsing users, through myriad other identifiers that Google excludes from its internal definition of fingerprinting. Broome |

GOOGLE'S RESPONSIVE STATEMENT TO PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Ex 77 (Hochman Opening Rep.) ¶¶ 106-07, §§ VIII.E, F; Mao Ex. 8 (Hochman Rebuttal Rep.) ¶¶ 66-68. |
| Issues 1, 2, 9, 11 | Fact 64. Google employs technical safeguards to prevent the use of fingerprinting or other techniques to join information keyed to unauthenticated identifiers with information keyed to authenticated identifiers. Ex. 62 (Berntson 2/14/2023 Tr.) 110:19–111:11, 113:3–115:22; Ex. 82 (Psounis Rep.) §§ III.A, III.C-D, III.F, IV.C. | <u>Disputed</u>. Google stores private browsing data in the same log as signed-in regular browsing data. Dkt. 797-3 at 10; Dkt. 797-19 ¶ 3; *see also* Additional Fact 4. Google employees admit that it is impossible to prevent private browsing data from being joined to users. Additional Fact 24. Plaintiffs' experts also explain how private browsing data is associated with unique identifiers, which are personally identifying. Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.F, H; Broome Ex. 75 (Schneier Opening Rep.) § V.9; Mao Ex. 8 (Hochman Rebuttal Rep.) § V.A; Ex. 17 (Schneier Rebuttal Rep.) § III.2. |
| Issues 1, 2, 9, 11 | Fact 65. Google does not join data from signed-out out PBM sessions with a data from other browsing sessions, whether in Incognito or other modes. Ex. 83 (Berntson Decl.) § B.2; Ex. 82 (Psounis Rep.) §§ III.A, III.C-D, III.F, IV.C; Ex. 56 (McClelland Tr.) 73:14–74:5, 278:5–279:24, 280:20–281:10, 285:5–13, 290:5–24. | <u>Disputed</u>. *See* Response to Facts 63-64, 67. |
| Issues 8, 9, 11 | Fact 66. Plaintiffs' experts have hypothesized as to what Google "could do" in terms of fingerprinting and joining authenticated and unauthenticated data, but they have not found any evidence that Google in fact engages in such fingerprinting or joining. Ex. 59 (Schneier Tr.) 112:6–20; Ex. 61 (Hochman Tr.) 88:9-89:12, 233:11–234:18; Ex. 77 (Hochman Rep.) ¶¶ 226–27, 236–37; Ex. 82 (Psounis Rep.) § III.F. | <u>Disputed</u>. *See* Response to Facts 63-64, 67. |
| Issues | Fact 67. Google does not use | <u>Disputed</u>. Google can and does use |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 1, 2, 9, 11 | ▮▮▮▮▮▮▮ graphs to join signed-out PBM data to a user's Google account. Ex. 45 (Berntson 6/16/2021 Tr.) 372:14–373:16; Ex. 82 (Psounis Rep.) § III.D. | ▮▮▮▮▮▮ to join signed-out PBM data to a user's Google Account. Broome Ex. 77 (Hochman Opening Rep.) ¶ 184, App. F. ¶¶ 11, 14; Mao Ex. 18 (Berntson 2023 Tr.) 96:6-98:22. *See* Additional Fact 4. |
| Issue 1, 2, 4 | Fact 68.   PBMs are designed not to indicate to websites or web-service providers that the user is in PBM. Ex. 80 (Zervas Reb. Rep.) ¶¶ 85–89; Ex. 77 (Hochman Rep.) ¶¶ 136–37; *id.* ¶ 117; Ex. 82 (Psounis Rep.) §§ III.B, IV.C. | <u>Disputed</u>. Google designed detection bits to detect whether traffic is from a private browsing mode, and those bits rely on information provided by the browser. Additional Fact 4. |
| Issue 1, 2, 4 | Fact 69. It is industry standard for PBM's not to send a signal that users are in PBM. Ex. 82 (Psounis Rep.) ¶¶ 72–76. | <u>Disputed</u>. Psounis cites "guidelines," not a formal standard. Google violates these guidelines through its sending of the x-client-data header in regular mode, the lack of which signals to Google that a user is in Incognito mode. Broome Ex. 77 (Hochman Opening Rep.) ¶ 97. Google relatedly violates these guidelines through its use of private browsing detection bits. Additional Fact 4. |
| Issue 9 | Fact 70. Plaintiffs' privacy expert testified that detecting that a user is in PBM is itself a violation of that user's privacy. Ex. 59 (Schneier Tr.) 129:23–130:5, 131:21–23, 170:15–25; Ex. 75 (Schneier Rep.) ¶ 86. | <u>Disputed</u> as to any implication that this is the only way in which Google violates PBM users' privacy. *See* Response to Fact 69. |
| Issue 9 | Fact 71. The Google code that causes users' browsers to send HTTP requests to Google servers to retrieve Google services is browser-agnostic and mode-agnostic. Ex. 82 (Psounis Rep.) ¶¶ 72–76; Ex. 80 (Zervas Reb. Rep.) ¶¶ 85–89, 93–96; Ex. 77 (Hochman Rep.) ¶¶ 117, 136–37; Ex. 57 (Chung 30(b)(6) Tr.) 26:10-18; Ex. 65 (*Calhoun* Oct. 24, 2022 Hrg. Tr.) 51:7-14, 53:5–12, 55:14–57:19, 71:17–72:8. | <u>Disputed</u>. Google's expert disagreed that the code is browser- and mode-agnostic. Broome Ex. 80 (Zervas Reb. Rep.) ¶ 110. Only Chrome sends the x-client-data header. *See* Response to Fact 69. Firefox works differently. *See* Response to Facts 72-74. Plaintiffs also object to the use of any materials from the *Calhoun* litigation because it is not admissible. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c). *See* Additional Fact 4. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issue 9 | Fact 72. To prevent Google services from receiving the at-issue data while users are in PBM, browser manufacturers would have to modify their browsers to send a reliable, client-side signal identifying the user as being in PBM. Ex. 82 (Psounis Rep.) § III.B. | Disputed. Google sends a client-side signal in the x-client-data header. *See* Response to Fact 69. But sending a client-side signal is not necessary, as Firefox blocks Google beacons. Broome Ex. 77 (Hochman Opening Rep.) § VIII.A.6. Google recognized that a signal at the end of an Incognito session would provide a way to delete Incognito session data but chose not to implement it. Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 50, 132, 159 *See* Additional Fact 4. |
| Issues 1, 2 | Fact 73. Other browsers' PBMs provide privacy in a similar manner to Incognito mode—*i.e.*, deleting browsing history, cookies, and website data locally from the browser when the user closes the session. Ex. 76 (Zervas Rep.) §§ IV.B, IV.C. | Disputed. Firefox's private browsing mode blocks Google's tracking beacons. Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 114-23. Safari's private browsing mode provides greater privacy by isolating tracking to each tab (Incognito tracks across tabs and windows) and using "IP blinding" (Incognito does not). *Id.* ¶¶ 129-30, 331. |
| Issues 1, 2 | Fact 74. Plaintiffs issued subpoenas to Apple, Mozilla, and Microsoft seeking "ALL DOCUMENTS sufficient to IDENTIFY all individuals who have used" their respective PBMs. Each company responded that no such documents exist. Exs. 42–44. | Disputed. Plaintiffs object to the use of emails and other out-of-court statements (*i.e.*, Broome Exs. 42-44) because they are hearsay and not admissible. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c). Google could have obtained declarations or other forms of admissible evidence from these companies, but did not. If the evidence is admissible, it shows that those companies (unlike Google) do not have private browsing detection bits. |
| Issues 1, 2 | Fact 75.  The fact that Chrome does not save the user's browsing history, cookies or site data, or information entered in forms after the user closes the Incognito browsing session provides privacy from other people who may use the same device. Ex. 85 (McPhie Decl.) ¶¶ 3, 5; Ex. 59 (Schneier Tr.) 104:15–19; Ex. 53 | Disputed. Google (through Chrome) still collects, stores, and uses the at-issue data, without providing a way for users to control that data, which is identifying. *See* Response to Facts 9, 47. Private browsing data has mixed with subsequent non-private browsing sessions. Mao Ex. 5  (Castillo  Tr.)  215:11-220:18;  *See* |

GOOGLE'S RESPONSIVE STATEMENT TO PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Castillo Tr.) 254:3–11. | Additional Fact 4. |
| Issues 1, 2 | Fact 76. The fact that PBM provides local privacy is important to the many users whose devices are accessible to other users. Ex. 59 (Schneier Tr.) 134:5–135:16; Ex. 65 (Schneier Dep. Ex. 7) at 10; Ex. 82 (Psounis Rep.) ¶¶ 163 n.218, ¶¶ 170-72. | <u>Disputed</u>. The average user has more than one device. Mao Ex. 16 (Hochman Tr.) 463:7-18; Mao Ex. 25 (Lasinski Rep.) ¶ 168. |
| Issues 1, 2 | Fact 77. When Plaintiffs' privacy expert was asked why he did not use PBM, he testified: "I never used a shared computer." Ex. 59 (Schneier Tr.) 82:9–12. | <u>Undisputed</u>. |
| Issues 1, 2, 9 | Fact 78. The fact that Chrome automatically deletes cookies when the user closes an Incognito session provides users a measure of privacy. Ex. 59 (Schneier Tr.) 139:1–7. | <u>Disputed</u>. While cookies may be deleted on the browser, Google retains information about the user's Incognito browsing session, including cookies. Mao Ex. 18 (Berntson 2023 Tr.) 21:7-15; 37:22-38:16; *see also* Response to Fact 75. |
| Issues 1, 2 | Fact 79. Google offers a variety of privacy settings across its services that that give users control over their data. Chrome's cookie blocking feature is an example. Ex. 59 (Schneier Tr.) 153:6–24. | <u>Disputed</u>. Google does not provide users with control over its collection, storage, and use of the at-issue private browsing data; there is no way to prevent that. *See* Additional Fact 21; Mao Ex. 8 (Hochman Rebuttal Rep.) § V.E; Ex. 18 (Berntson 2023 Tr.) 42:9-43:22; Ex. 19 (Zervas Tr.) 87:1-88:8; Ex. 20 (McCllelland Tr.) 318:3-12; Ex. 21 (Rakowski Tr.) 316:5-317:1; Ex 22 at -72 (Google Analytics tracking beacon on over ▮ of websites); Broome Ex. 77 (Hochman Opening Rep.) ¶ 311; *see also* Response to Fact 80. |
| Issues 1, 2, 9 | Fact 80. The fact that Incognito mode prevents the sharing of existing cookies with websites provides users a measure of control over their data. Ex. 59 (Schneier Tr.) 154:21–155:4. | <u>Disputed</u>. *See* Responses to Facts 51, 79; *see also* Mao Ex. 23 at -56.C ("you don't have the ability to see or delete it"). |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2, 9 | Fact 81. The fact that Incognito mode automatically deletes cookies when the user closes the browsing session provides users a measure of control over their data. Ex. 59 (Schneier Tr.) 155:5–8. | <u>Disputed</u>. *See* Responses to Facts 57, 75, 79, and 80. |
| Issues 1, 2, 9, 11 | Fact 82. The ways in which Incognito mode provides privacy—deleting browsing history, cookies, and website data locally from the browser when the user closes the session, starting with a fresh cookie jar, and logging users out of their accounts—provides users control over the at-issue data. Ex. 63 (McPhie Tr.) 100:25-102:22; Ex. 59 (Schneier Tr.) 154:21–155:8. | <u>Disputed</u>. *See* Responses to Facts 60, 75, 79, and 80. |
| Issues 1, 2 | Fact 83. Google's survey expert's study shows that modifying the Incognito Screen to include Google in the list of entities to which users' activity "might still be visible" has no statistically significant impact on users' likelihood of using Chrome in Incognito mode to do online research on a sensitive topic. Ex. 78 (Amir Rep.) § VIII. | <u>Disputed</u>. Dr. Amir did not ask survey respondents whether adding "Google" to the Splash Screen would affect their understanding of whether Google collects the data. Broome Ex. 78 (Amir Rep.) § VIII. *See also* Response to Facts 1, 85. |
| Issues 1, 2 | Fact 84. Plaintiffs have no evidence supporting the claim that their alleged interpretation of the alleged contract was shared by anyone other than themselves. Ex. 79 (Keegan Rep.) ¶ 168-69 & Ex. 3; Keegan Tr. 191:16–192:9. | <u>Disputed</u>. *See* Response to Fact 1; Additional Facts 7-13, 19-21. |
| Issues 1, 2 | Fact 85. Shown the documents Plaintiffs claim comprise their contract, more than half of survey respondents expect Google receives their IP address, URLs of sites visited, and cookies in Incognito mode. Ex. 78 (Amir Rep.) ¶¶ 69, 73 & Tables 5 & 6. | <u>Disputed</u>. Dr. Amir omitted the Search & browse privately page, and he included documents (e.g., the "Learn More" page) that neither Plaintiffs nor Google contend are part of the form contract. Dr. Amir's survey also suffers from design flaws because (1) respondents were not limited to Google account holders who used the relevant private browsing modes, (2) Dr. Amir failed to exclude respondents who |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | had learned about this lawsuit, (3) Dr. Amir did not specifically ask respondents about the scenario at issue in this case (using private browsing while signed out of Google to visit a non-Google website), and (4) Dr. Amir did not ask about consent. Broome Ex. 79 (Keegan May 2022 Rep.) § IV, ¶ 133. *See also* Response to Fact 1; Mao Ex. 24 (Amir Tr.) 258:4-19. Plaintiffs' expert Mark Keegan found that ▮▮▮ of users believed that Google did not collect private browsing data or that Google had no consent to collect that data. Broome Ex. 79 (Keegan Rep.) ¶ 185. |
| Issue 2 | Fact 86. Plaintiffs do not allege that other browser's PBM screens are part of their contract with Google. FAC ¶ 268. | <u>Undisputed</u>. |
| Issues 1, 2, 9 | Fact 87. Firefox's PBM screen states that its PBM "helps you obscure your online activity from other people who use Firefox on your computer, but does not make you invisible online." Ex. 85 (McPhie Decl.) ¶¶ 101-102. | <u>Disputed</u>. Firefox's PBM screen does not contain the quoted language. Broome Ex. 85 ¶ 101. |
| Issues 1, 2, 9 | Fact 88. Microsoft's PBM screen states that "Websites can still personalize content for you during your InPrivate browsing session because cookies and other site permissions aren't deleted until you close all InPrivate windows." Ex. 85 (McPhie Decl.) ¶¶ 103-105. | <u>Disputed</u>. Microsoft's private browsing screen does not contain the quoted language. Broome Ex. 85 ¶ 103. |
| Issues 1, 2, 9 | Fact 89. Safari's PBM screen states "[a]fter you close this window, Safari won't remember the pages you visited, your search history, or your Autofill information." Ex. 85 (McPhie Decl.) ¶ 106. | <u>Undisputed</u>. |
| Issue 5 | Fact 90. Google's receipt of the at-issue data is essential to its ability to provide | <u>Disputed</u>. Google does not provide the services for "users." Broome Ex. 83 ¶ 2 |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | PBM users the Google services website developers have chosen to install on their sites. Ex. 84 (Ganem Decl.) § A; Ex. 83 (Berntson Decl.) § A; Ex. 76 (Zervas Rep.) § V.A–B; *id.* ¶¶ 39–40; Ex. 80 (Zervas Reb. Rep.) § III.D; Ex. 77 (Hochman Rep.) ¶ 108. | ("Google AdSense and Ad Manager are Google services *for publishers*"); Broome Ex. 76 (Zervas Rep.) § V (discussing "Google services *used by third party websites*"). Google tracking beacons are not essential for users to access non-Google websites. *See* Response to Fact 61. Also, Google employees have stated that Incognito accounts for roughly ███ of browsing traffic, Broome Ex. 77 (Hochman Opening Rep.) ¶ 290, and there is no evidence Google must collect this portion of browsing data to continue providing services to websites that use services like Google Analytics. |
| Issue 5 | Fact 91. The device that causes Google to receive the at-issue data is the code for the Google service that the website developer installed on its site to obtain that service. FAC ¶¶ 68, 79; Ex. 76 (Zervas Rep.) ¶¶ 44, 88–90, 107–08; Ex. 84 (Ganem Decl.) ¶¶ 2, 5, 7; Ex. 83 (Berntson Decl.) ¶¶ 2, 7; Ex. 40 (Google's October 6, 2021 Amended Rog Resp.), at No. 1(b). | Disputed. At-issue code (i.e., tracking beacons) is "retrieved and executed by the browser as part of rendering the publisher's website." Mao Ex. 14 (Request for Admission No. 31); Broom Ex. 77 (Hochman Opening Rep.) ¶ 112. Tracking beacons are held and controlled by Google, not installed by web developers on third-party websites. Broome Ex. 77 (Hochman Opening Rep.) ¶ 91. |
| Issue 4 | Fact 92. Website developers who engage Google's advertising and analytics services are generally aware that advertising and analytics services send the at-issue data to Google when users are in PBM. Ex. 80 (Zervas Reb. Rep.) ¶¶ 49, 85–89; *id.* ¶¶ 93–96; Dkt. 608-12 (Hochman Rep.) ¶¶ 136–37; Ex. 58 (Keegan Tr.) 224:23–226:10. | Disputed. Website developers are not aware that Google collects private browsing data through these services, as shown even by the sources Google cites. Broome Ex. 58 (Keegan Tr.) 224:23-226:10 (only became aware of this practice "from what I've learned in this case"); Broome Ex. 77 (Hochman Opening Rep.) § VIII.C, ¶ 56, App'x. A ¶¶ 20-22. Additional Fact 6. Google has not proffered any disclosure which informs websites, let alone identified a single website developer who claimed to be aware of the at-issue data collection, much less use. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issues 4, 5, 9 | Fact 93. Analytics and Ad Manager code, and the infrastructure that supports those services, is used by Google in the ordinary course of its business of providing online advertising and analytics services to its customers. Ex. 84 (Ganem Decl.) ¶¶ 2, 17; Ex. 83 (Berntson Decl.) ¶¶ 2, 7; Ex. 40 (Google's October 6, 2021 Amended Rog Resp.), at No. 1(d); Ex. 76 (Zervas Rep.) §§ V.A, V.B; Ex. 80 (Zervas Reb. Rep.) §§ III.D.1, III.D.2, III.D.3; Ex. 77 (Hochman Rep.) ¶ 84. | <u>Disputed</u>. Google admits it uses the at-issue data for purposes beyond providing services to websites, including to detect traffic as private and enrich itself. *See* Additional Facts 4, 26-28; *see also* Response to Fact 61. |
| Issues 4, 5, 9 | Fact 94. Google uses the at-issue data to provide ads and analytics services to websites. Ex. 84 (Ganem Decl.) § A; Ex. 76 (Zervas Rep.) §§ V.A, V.B; Ex. 83 (Berntson Decl.) § A. | <u>Disputed</u>. *See* Response to Fact 93. |
| Issues 4, 5, 9 | Fact 95. Websites engage Google's analytics service to understand how users interact with their sites. Ex. 76 (Zervas Rep.) § V.A; Ex. 80 (Zervas Reb. Rep.) §§ III.D.1–2; Ex. 84 (Ganem Decl.) ¶ 2. | <u>Disputed</u>. Some websites may engage Google to provide analytics services to understand how users interact with their websites, but Fact 95 is not supported by any evidence obtained from any website. |
| Issues 4, 5, 9 | Fact 96. Website developers engage Google's ads business to monetize their sites, including in many cases to offer free content to users. Ex. 76 (Zervas Rep.) § V.B; Ex. 80 (Zervas Reb. Rep.) §§ III.D.1, III.D.3; Dkt. 224 (July 21, 2021 Joint Case Management Statement) at 10; Ex. 83 (Berntson Decl.) ¶¶ 2, 10. | <u>Disputed</u>. Some websites may engage Google's ad business to monetize their sites, and some websites may offer free content to users, but Fact 96 is not supported by any evidence obtained from any website. |
| Issues 5, 9 | Fact 97. Many websites rely on third-party web-service providers receiving and processing the at-issue data. Ex. 76 (Zervas Rep.) ¶ 39; Ex. 80 (Zervas Reb. Rep.) § III.E & App'x E. | <u>Disputed</u>. Google employees have stated that Incognito accounts for roughly ▮▮ of browsing traffic. Broome Ex. 77 (Hochman Opening Rep.) ¶ 290. Google identifies no evidence suggesting that any website, let alone many websites, could not function but for Google's collection of private browsing data. *See also* Response to Fact 93. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issue 6 | Fact 98. Plaintiffs understood that in Incognito their browsing activity would be visible to the websites they visit, their Internet Service Provider, and their employer or school. Exs. 5–8 (Brown, Byatt, Castillo, and Davis May 24, 2021 Amended RFA Resp.), at Nos. 12 & 14; Ex. 9 (Trujillo June 7, 2021 RFA Resp.), at Nos. 12 & 14; Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 6:4-6; Ex. 47 (Byatt Tr.) 135:19–136:18; Ex. 49 (Davis Tr.) 31:14–32:8; Ex. 51 (Brown Tr.) 120:15–121:20; Ex. 54 (Trujillo Tr.) 140:24–143:6; Ex. 53 (Castillo Tr.) 166:9–168:2. | Undisputed. |
| Issue 6 | Fact 99. Many websites inform users that their website logs the at-issue data upon receipt. *See, e.g.*, Ex. 48 (Byatt Dep. Ex. 2 - New York Times Privacy Policy); Ex. 47 (Byatt Tr.) 51:8-57:17; Ex. 52 (Brown Dep. Ex. 1 - Redfin Privacy Policy); Ex. 51 (Brown Tr.) 35:23-40:25; Ex. 50 (Davis Dep. Ex. 4 - CoinMarketCap.com Privacy Policy); Ex. 49 (Davis Tr.) 51:9-54:13; Ex. 55 (Trujillo Dep. Ex. 1 - William Sonoma Privacy Policy); Ex. 54 (Trujillo Tr.) 55:22–57:18; Ex. 85 (McPhie Decl.) ¶¶ 86-92. | Disputed. None of the privacy policies Google lists disclose that websites log users' data while the user is in a private browsing mode. *See also* Mao Ex. 4 (Byatt Tr.) 118:14-119:15; Ex. 3 (Brown Tr.) 49:18-50:7; Ex. 6 (Davis Tr.) 51:9-55:7; Ex. 7 (Trujillo Tr.) 56:8-58:1; *see also* Response to Fact 13. Nor do these privacy policies disclose the conduct that Google was sanctioned for concealing, including Google's use of private browsing detection bits. *See* Additional Fact 4. |
| Issues 4, 5, 7 | Fact 100. To use Google's advertising and analytics services, website developers download and install code on their websites that directs users' browsers to send the at-issue data to Google by way of HTTP requests in order to obtain the requested service. FAC ¶¶ 68, 79; Ex. 84 (Ganem Decl.) ¶¶ 2, 5; Ex. 83 (Berntson Decl.) ¶ 2. | Disputed. The use of "download" is inaccurate, and Google services can be implemented in many ways, including without developers directly installing code on websites. Broome Ex. 77 (Hochman Opening Rep.) App'x. A ¶13; *see also* Response to Fact 92 (websites unaware that Google collects private browsing information). Undisputed that Google code "directs" the "browser" to send data to Google. |
| Issue 4, 7 | Fact 101. Google is not responsible for installing code on third-party websites. | Disputed. Google instructs websites to install code that causes the browser to |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | FAC ¶ 68, 79; Ex. 80 (Zervas Reb. Rep.) ¶¶ 4, 44; Ex. 84 (Ganem Decl.) ¶¶ 2, 5; Ex. 83 (Berntson Decl.) ¶ 2. | "retrieve[] and execute[]" at-issue code (i.e., tracking beacons) as part of rendering the publisher's website." Mao Ex. 14 (Request for Admission No. 31); Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 91, 112. The at-issue code (i.e., the tracking beacons) is held and controlled by Google. *Id.* |
| Issues 8, 10 | Fact 102. No class member paid Google any money to use Chrome or any other Google services at issue. Exs. 29–33 (Plaintiffs' July 30, 2021 Responses to Interrogatories), at No. 13; Exs. 10–14 (Plaintiffs' July 30, 2021 RFA Resp.), at Nos. 26–28. | <u>Disputed</u>. *See* Response to Facts 103-04. |
| Issues 8, 9, 10 | Fact 103. There is no evidence class members have suffered any harm as a result of Google's conduct. Exs. 16–19 (Brown, Byatt, Castillo, and Davis January 11, 2021 Rog Resp.), at No. 3; Ex. 28 (Trujillo's June 7, 2021 Rog Resp.), at No. 3. | <u>Disputed</u>. Class members have suffered harm as a result of Google's conduct. Mao Ex. 25 (Lasinski Rep.) §§ 7-8; Broome Ex. 77 (Hochman Opening Rep.) §§ VIII.D, E, F, H; ¶ 94; Broome Ex. 75 (Schneier Opening Rep.) § 9; Mao Ex. 3 (Brown Tr.) 153:6-156:24, 200:25-201:11; Ex. 4 (Byatt Tr.) 157:15-160:23; Ex. 5 (Castillo Tr.) 258:18-261:9; Ex. 6 (Davis Tr.) 138:18-140:8; Ex. 7 (Trujillo Tr.) 230:10-231:22; *see also* Additional Fact 30; Additional Fact 4. |
| Issues 8, 10 | Fact 104. There is no evidence that the value of class member data was diminished by Google's conduct. Exs. 34–38 (Plaintiffs' September 20, 2021 Rog Resp.), at No. 16; Exs. 24–27 (Brown, Byatt, Castillo, and Davis June 1, 2021 Amended Rog Resp.), at No. 10; Ex. 28 (Trujillo's June 7, 2021 Rog Resp.), at No. 10; Ex. 39 (Plaintiffs' April 15, 2022 Amended Rog Resp.), at No. 17 at 13:22-23; Ex. 47 (Byatt Tr.) 208:15-209:6; Ex. 49 (Davis Tr.) 136:17–20. | <u>Disputed</u>. Google captured, stored, and used users' private browsing data without consent. Google's own studies confirm this data has value, which was diminished when Google intercepted the data without providing compensation, (*e.g.*, Screenwise). Mao Ex. 25 (Lasinski Rep.) § 8.1.1; Broome Ex. 77 (Hochman Opening Rep.) § VIII.E; Broome Ex. 75 (Schneier Opening Report) § 4. The sources Google cites support Plaintiffs too. Broome Exs. 34-38 at No. 16; Broome Exs. 24-27 at No. 10; Broome Ex. 28 at No. 10; Broome Ex. 39 at No. |

| Issue No. | Google's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | 17. |
| Issues 9, 10 | Fact 105. Plaintiffs continued to use Incognito mode despite being aware of Google's receipt of the at-issue data. Ex. 54 (Trujillo Tr.) 117:11–23; Ex. 49 (Davis Tr.) 72:17–74:4, 82:23-83:4, 97:14–98:13; Ex. 47 (Byatt Tr.) 14:9–15:16; Ex. 51 (Brown Tr.) 92:5-11; Ex. 53 (Castillo Tr.) 143:2–144:8. | <u>Disputed</u>. Plaintiffs continued to use private browsing modes for discovery into Google's data collection and storage practices for the Special Master process. Mao Ex. 3 (Brown Tr.) 92:5-93:2, 191:4-192:25; Ex. 4 (Byatt Tr.) 14:9-16:19; Ex. 6 (Davis Tr.) 82:23-83:11, 160:15-161:2; Ex. 7 (Trujillo Tr.) 232:6-232:23, 278:12-280:6. *See* Response to Fact No. 106. |
| Issues 9, 10 | Fact 106. Plaintiffs have not taken any steps to prevent Google from receiving the at-issue data since filing suit. Ex. 53 (Castillo Tr.) 144:9–144:18, 147:5–13; Ex. 54 (Trujillo Tr.) 32:16–35:20, 111:14–25; Ex. 49 (Davis Tr.) 38:8–21, 75:13–77:25, 82:23–19; Ex. 47 (Byatt Tr.) 23:19–24:2; Ex. 51 (Brown Tr.) 92:5–11; Exs. 5–8 (Brown, Byatt, Castillo, and Davis May 24, 2021 Amended RFA Resp.), at Nos. 18–20; Ex. 9 (Trujillo's June 7, 2021 RFA Resp.), at Nos. 18–20. | <u>Disputed</u>. There are no steps, or combination of steps, Plaintiffs could take to prevent Google from intercepting the at-issue data. *See* Response to Fact No. 79. |

**Plaintiffs' Statement of Additional Material Facts and Google's Responses**

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| Issue 2 | Pls' Add'l Fact ("PAF") 1. The Privacy Policy invites users to "search and browse privately," and that contains a hyperlink to the Search & browse privately page. Broome Exs. 100-12. | <u>Disputed</u> that the Privacy Policy "invites" users to do anything, but <u>undisputed</u> that since May 2018, the end of the Privacy Policy contains explanations of certain phrases used in the Policy, including the phrase "customized search results," which states: "You may also get customized search results even when you're signed out. If you don't want this level of search customization, you can search and browse privately or turn off signed-out search personalization." The phrase "search and browse privately" in this sentence hyperlinked to the <u>Search & browse privately</u> Help page. Fact 45; Ex. 100 at -571; *see also* Exs. 101–112. Neither Google's Search service, nor any PBM data Google receives via Search, is at issue in this case. |
| Issue 2 | PAF 2. The Privacy Policy invites users to "browse the web in a private mode, like Chrome Incognito mode," and it previously invited users to "choose to browse the web privately using Chrome in Incognito mode." Broome Exs. 100-12. | <u>Disputed</u> that the Privacy Policy "invites" users to do anything, but <u>undisputed</u> that, between May 2018 and February 2022, the Privacy Policy contained the language: "You can use our services in a variety of ways to manage your privacy. For example, you can sign up for a Google Account if you want to create and manage content like emails and photos, or see more relevant search results. . . . You can also choose to browse the web privately using Chrome in Incognito mode. And across our services, you can adjust your privacy settings to control what we collect and how your information is used." <u>Undisputed</u> that, since February 2022, the sentence "You can also choose to browse the web privately using Chrome in Incognito mode," has instead stated: "You can also choose to browse the web in a private mode, like Chrome Incognito mode." Fact 20; *see also* Exs. 100–112. |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| Issue 2 | PAF 3. The Chrome Privacy Notice invites users to "us[e] incognito mode." Broome Exs. 113-34. | <u>Disputed</u> that the Chrome Privacy Notice "invites" users to do anything, but <u>undisputed</u> that, during the Class Period, the Chrome Privacy Notice has contained the following language: "You can limit the information Chrome stores on your system by using incognito mode or guest mode." Exs. 113–34. |
| Issues 1, 2, 4, 9 | PAF 4. Google was sanctioned, including for concealing four private browsing detection bits used for Chrome, Safari, and Edge/IE, which rely on information Google intercepts from the browser. Dkt. 588-1 at 3, 26; Dkt. 898 at 17; Ex. 26. Google was also sanctioned for concealing how it stores and uses private browsing data, including that it stores signed-out private browsing data in the same log as signed-in data. Dkt. 797-3 at 10; Dkt. 898 at 14. Google previously represented that "logs are internally segregated by whether you're logged into a Google account." Ex. 27 16:16-20:2. | <u>Undisputed</u> that Google was sanctioned. <u>Disputed</u> that Google was sanctioned for "concealing" anything. The sanctions orders speak for themselves. Among other things, the only reference to "concealing" in either order is the Court's finding "that Plaintiffs' *request* for a jury instruction that 'Google concealed and altered evidence regarding its ability to identify Incognito traffic' *is not warranted or appropriate* on the facts of this case." Dkt. 588 (May 20, 2022 Ord.) at 42 (emphases added). <br> <u>Undisputed</u> that Google  represented that "logs are internally segregated by whether you're logged into a Google account." The record confirms this statement is true. *See* Ex. 146; Ex. 147; Ex. 148 at 142:20–144:25. |
| Issues 1, 2, 4, 9 | PAF 5. Google promised that you can browse the web privately "with the assurance that your choice to do so is private as well." Ex. 28; *id.* ("Chrome will remedy a loophole that has allowed sites to detect people who are browsing in Incognito Mode"); Broome Ex. 91; Ex. 21 at 307:10-308:5; Ex. 27 at 25:20-13 ("[W]e don't track people in  private browsing mode."). | <u>Disputed</u> that the quoted statement constitutes a "promise" by Google to Account holders, or that this phrase appears in any of the documents Plaintiffs claim (1) constitute part of their contract, or (2) they read or reviewed. <u>Undisputed</u> that (1) a July 2019 blog post (Mao Ex. 28) included the language quoted in PAF 5 and (2) the <u>How Chrome Incognito keeps your browsing private</u> Help page (Ex. 91) says "Chrome doesn't tell websites, including Google, when you're browsing privately in Incognito mode." Google's objects to Mao Ex. 22 which does not have pages identified as 307 or 308. Google objects to Mao Ex. 27, which contains statements by counsel at a discovery hearing on April 29, 2021, because (1) they are not part of the alleged contract; (2) no |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | Plaintiff or Class Member ever reviewed or relied on them; (3) they are hearsay and not admissible, *Glob. Fin. & Leasing Inc. v. Lojy Air Co.*, 2011 WL 1626051, at *1 n.1 (D. Or. Apr. 28, 2011); and (4) the pages Plaintiffs cite are not actually included in Mao Ex. 27. In any event, the statement is entirely accurate. Google does not track "people" in PBM because Google does not know PBM users' identities. Since Plaintiffs did not include the relevant hearing transcript pages in their submission, Google attaches them to the Supplemental Broome Declaration. Ex. 149 at 25:20–26:4. |
| Issue 4 | PAF 6. Google represented to websites that use Google services that Google complies with its own Privacy Policy. Ex. 29; Ex. 30 [Google Analytics Terms of Service] (linking to prior page). | <u>Disputed</u> that Google made "representations" to websites, but <u>undisputed</u> that the <u>How Google Uses Information From Sites or Apps That Use Our Services</u> page that Plaintiffs cite (Mao Ex. 29) says "See our Privacy Policy to learn more about how we process data for each of these purposes" and "Our Privacy Policy explains the legal grounds Google relies upon to process your information." |
| Issues 1, 2, 4, 9 | PAF 7. Google was aware of common misconceptions regarding Google's collection and use of private browsing information. Ex. 31 (Schmidt incorrectly states "no one sees anything about you"); Ex. 32 at -03 ("common misconceptions about private mode, including that it . . . hides browsing activity from Google"); Ex. 33 at -50; Ex. 34 at -56.C ("not private in the ways that many users want, that is, as to Google"); Ex. 35 at -84 (Pikachu meme); Ex. 36 at -52; Ex. 37 at -44; Ex. 38 at -13; Ex. 39 at -51; Ex. 40 at -52; Ex. 32 at -75; Ex. 41 at -14. | <u>Undisputed</u>, but immaterial, that Google was aware that not all users fully understood how Incognito and other browsers' PBMs function and the ways in which they do and do not provide privacy. <u>Disputed</u>, but immaterial, that such user misconceptions were (1) "common" in the sense that they were shared by a substantial portion of users, and (2) based on review of any of the disclosures at issue in this case. Plaintiffs' cited evidence concludes "participants often click through or ignore disclosures." Mao Ex. 32 at -09. Google is constantly working to make its products and related disclosures as clear and understandable as possible to its large and diverse user base. Ex. 150 at 104:25–105:20; Ex. 151 at 262:11–263:14, 287:15–289:18, 435:5–436:6, 458:24–459:12. Further, |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | statements like the one quoted in Mao Ex. 31 (the statement that, in Incognito mode, "no one sees anything about *you*"), are not incorrect. So long as users do not sign-in to their Google Accounts while in Incognito, Google does not know the identity of the user. Certain exhibits (Mao Ex. 32 at -04, -08; Ex. 36 at -52; Ex. 41 at -14) relate to misconceptions about Incognito's functionality when users sign-in to their Google Accounts, which is not relevant here because Plaintiffs' class specifically excludes data Google receives from PBM users when they sign-in to a Google Account.  Dkt. 803 at 24. Google objects to Mao Ex. 35, which appears to be the wrong document and to the reference to "Ex. 32 at -75" because Mao Ex. 32 does not have a page ending in -75. |
| Issues 1, 2, 4, 9 | PAF 8. Google's awareness of user misconceptions were not limited to Incognito. Ex. 42 at -43; Ex. 43 at 146:15-147:3 (when employee wrote "Incognito confuses people," he was "referring to people more generally who use any private browsing mode"). | <u>Undisputed</u>, but immaterial, that Google was aware that not all users fully understood how other browsers' PBMs function and the ways in which they do and do not provide privacy. *See* Response to PAF 7. <u>Disputed</u> as to the misleading selective quotations from Mao Ex. 43. The referenced employee, Chris Palmer, explained that "even people who use other browsers or are thinking about it or writing about it may also find the term fuzzy and may also misunderstand it." Mao Ex. 43. He did not suggest that Google's Incognito-specific disclosures confuse people who use other browsers' PBMs, which have their own splash screens and disclosures. |
| Issues 1, 2, 4, 9 | PAF 9. Google caused user misconceptions. Ex. 44 at -80 (users' "misconceptions [of Incognito] flow directly from the framing of the feature as 'Incognito' (or, for other browsers, 'Private')"); Ex. 45 at -18; Ex. 46 at -71 ("Incognito is misleading"); Ex. 47 at -81; Ex. 48 at -84; Ex. 49 at -65; Ex. 50 at | <u>Disputed</u>. This is a legal conclusion, not a fact, and the cited evidence does not support the conclusion. To the contrary, the cited statements from Mao Exs. 44 and 47–50 are all authored by one Google employee, Chris Palmer, who was concerned about the Incognito name and icon, but believed that "our Incognito messaging is clear." Mao Ex. 48. In Mao Ex. 48, another employee notes |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | -10 ("people pay attention to the name 'Incognito' and the Spy Guy icon"). | that "while some users do have some misconceptions, it seems less widespread than you assume." *Id.* Google objects to Mao Ex. 45 which appears to attach the wrong document because it does not have a page ending in -18. |
| Issues 1, 2, 4 | PAF 10. Google knows it collects private browsing data "without consent." Ex. 51 at -43 (noting "concerns with Chrome collecting data without consent in Incognito mode"); Ex. 52 at -57; *see also* Ex. 53; Ex. 54; Ex. 55. | Disputed because the cited documents do not support the asserted fact. Mao Exs. 51 and 52 discuss how European regulators might view Google's data collection under the GDPR. Mao Exs. 53 and 54 discuss how "consent" is not necessary when users use Google's products "without any data being collected to their identity," but that position is irrelevant here because Plaintiffs and Class Members are all Google Account holders who admittedly consented to the challenged data collection and uses described in Google's Privacy Policy. Facts 3–4, 6–7, 11, 14. Google objects to Mao Ex. 54, which appears to have attached the wrong document, and Mao Ex. 55 which does not relate to or support this fact. |
| Issues 1, 2, 4, 9 | PAF 11. Google admitted that ███ ████ of people did not understand the disclosures. Ex. 56 at 14:11-20. | Disputed as to Plaintiffs' characterization of statements by Google's counsel made at a hearing, but immaterial because (1) they are hearsay and not admissible, *Glob. Fin. & Leasing Inc.*, 2011 WL 1626051, at *1 n.1; and (2) they are speculative because, as counsel explained, "[i]t is impossible to truly know how many people…did not have awareness" of how PBMs work because of issues identifying class members. |
| Issues 1, 2, 4, 9 | PAF 12. Google employees advocated to make changes to Incognito, including because Incognito is a "problem of professional ethics and basic honesty." Ex. 57 at -04; Ex. 58 at -26 ("effectively a lie"); Ex. 59 at -86 ("broken"); Ex. 60 at -63 ("confusing mess"); Ex. 61 at -04; Ex. 62 at -55 ("deceive[s] users"); Ex. 63 at -65 ("incognito war"); Ex. 64 at -19; | Disputed, but immaterial. *See* Response to PAF 7. The quoted statements, made primarily by a single employee (Chris Palmer), relate solely to the Incognito name and icon, not the relevant disclosures. Indeed, in Mao Ex. 62, Mr. Palmer says that Google's disclosures are "admirably clear, concise, and accurate" and that "[t]he documentation is correct," but that he is |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | Ex. 65 at -67 (Incognito is "bad for users, bad for human rights, bad for democracy"). | worried about "self-deception" by users. *See also* Ex. 152 (Palmer Tr.) 65:14–67:11.<br>Google objects to Mao Ex. 63, which appears to be the wrong document because it does not contain the phrase "incognito war." |
| Issues 1, 2, 4, 9 | PAF 13. Google employees advocated for changes to the Splash Screen, including (1) to remove the phrase "Now you can browse privately" because "the word 'private'" poses "the risk of overestimating the protection Incognito offers" (Ex. 66 at -72); and (2) to make the Splash Screen more "honest" and "clear that Incognito is intended for local device privacy" (Ex. 66 at -69); *see* also Mao Ex. 67 at -17 (lamenting "the deep-seated and challenging misconception around not understanding that Incognito is about local privacy"). | <u>Disputed</u> that "Google employees advocated" for certain changes, but <u>undisputed</u> that one proposed modification for testing included removing the statement "Now you can browse privately, and other people who use this device won't see your activity." <u>Disputed</u> that the proposal addressed in Mao Ex. 66 stated that the splash screen needed to be made "more" honest, but <u>undisputed</u> that the presentation stated "Be clear that Incognito is intended for local device privacy and it does not make the user invisible online," a message that is expressly stated in the Chrome Privacy Whitepaper and other Help pages linked to the alleged contract. *See* Facts 26, 34–36, 38–40. <u>Disputed</u> that, in Mao Ex. 67, a Google employee is "lamenting" anything, but <u>undisputed</u> that Mao Ex. 67 lists as a "next step" to "[r]each out to other teams…about how further approaches beyond the NTP (such as Videos) could be used to educate users" and includes the quoted language. |
| Issues 1, 2, 4, 9 | PAF 14. Plaintiff Byatt testified about how the Splash Screen misled him. Ex. 4 (Byatt) 136:4-18. | <u>Disputed</u> as to the word "misled," but <u>undisputed</u> that Plaintiff Byatt testified that, upon reading the Incognito Screen, "I understood this is my information not being visible to Google," even though the Incognito Screen "has never mentioned Google," as Plaintiffs admit in PAF 15. |
| Issues 1, 2 | PAF 15. Google displayed the Splash Screen to users every time they opened Incognito mode, and the Splash Screen has never mentioned Google. Ex. 68 at 5-6. | <u>Undisputed</u> that the word "Google" has never appeared on the Incognito Screen, but <u>disputed</u> to the extent that Google may be a "[w]ebsite[] you visit[,]" "[y]our employer" or "[y]our internet service provider[.]" Help pages linked to the Incognito Screen also |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | made clear that, in Incognito users' activity may still be visible to ads and resources, web-services, and search engines, Fact 35, and that Google is a provider of such services, *see* Fact 37. |
| Issues 1, 2, 4, 9 | PAF 16. Google defines privacy to include "what you store or don't store with Google," noting the importance of "user control." Ex. 69. | Disputed that "Google" has a single definition of "privacy," and that Mao Ex. 69 supports the fact alleged. Mao Ex. 69 is an *internal* user word list that describes privacy as "what you share or don't share with other users; what you store or don't store with Google. What's important here is user control." There is no evidence this document was ever shown to Plaintiffs or Class Members, or that it defines the concept of "privacy" at Google. |
| Issues 1, 2, 4, 9 | PAF 17. Translated using Google's dictionary, the representation that "Chrome won't save . . . your browsing history" means Chrome will not "keep" user data about "the sites you interact with/the links you click" by "recording it to a storage location." Ex. 70. | Disputed that Mao Ex. 70 is "Google's dictionary," or that Google's statements can be "translated" using Exhibit 70, which is an internal, draft "User word list." Undisputed that Exhibit 70 lists the phrase "save in" with a "proposed definition" of "to keep data by recording it to a storage location," and lists the word "browsing" with a "proposed usage note" as "Refers to both the sites you interact with/the links you click *and* the things you search for." Plaintiffs identify no evidence this document was ever shown to Plaintiffs or Class Members, or that Google ever used it to define the phrase that Plaintiffs quote. |
| Issues 1, 2, 4, 9 | PAF 18. Google employees conflated Chrome and Google, suggesting (incorrectly) that Incognito means "Google doesn't store" browsing data. Ex. 71 at -54; *see also* Ex. 72 at -57. | Disputed, but immaterial. Mao Exs. 71 and 72 do not support this fact. Mao Ex. 71 is a drawing of a potential modified Incognito screen that says "Google doesn't store" and then has scribbles after it. Mao Ex. 72 merely states that "[r]egulators do not differentiate between Chrome and Google in the same way we do." |
| Issues 1, 2, 4, 9 | PAF 19. Google employees (1) informed Google CEO Sundar Pichai that Incognito is "not truly private" (Ex. 73 at | Undisputed that the cited exhibits include the quoted words, but disputed as to the implications Plaintiffs draw from their |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | -67), (2) warned him not to "use the word[] private . . . when describing benefits of Incognito mode" because it "run[s] the risk of exacerbating known misconceptions about protections Incognito mode provides" (Ex. 74 at -68.C), and (3) wrote that the word "private" reinforces the "misperception that your browsing is private everywhere instead of just on your device" (Ex. 75 at -50). | selective quotations. That Google acknowledges "[w]e are limited in how strongly we can market Incognito," Mao Ex. 73, and that its marketing communications emphasize not over-stating the "benefits of Incognito mode," Mao Ex. 74, shows the effort Google makes to avoid or dispel user confusion, to the extent possible. Mao Ex. 75 discusses a research experiment to determine ways to make even clearer that Incognito mode primarily provides local privacy. |
| Issues 1, 2, 4, 9 | PAF 20. Google employees referred to the company's private browsing representations as a "contract" and noted that Google broke its "promises." Ex. 76 at -34 ("We must enter a contract with the user regarding what happens when they enter Incognito Mode"); Ex. 77 at -65 ("Key promise" - "don't collect data from the Incognito session"); Ex. 78 at -65; Ex. 79 at -99; Ex. 80 at -98, -302 ("Incognito Problem"); Ex. 81 at -21 (Google not "deliver[ing]" on the promise of being private" and "making privacy worse by collecting Incognito when the user has clearly told Chrome that it wants to be private"); Ex. 82 at -80; Ex. 83 at -77; Ex. 84 at -64. | Disputed as to Plaintiffs' incorrect characterizations of the cited exhibits, but immaterial. Mao Exhibit 76 states at the top that it is "extremely old and holds no relevance to anything"; further, it does not "refer[] to the company's private browsing representations as a 'contract'" nor does it state that "Google broke its 'promises,'" as Plaintiffs assert. Mao Ex. 77 similarly does not talk about broken promises: it talks about "Key promises we want to deliver upon" for "Chrome Options and how to handle 1p web apps." In Mao Ex. 78, a non-lawyer Google employee wrote that "the subtitle [Now you can browse in private, and other people who use this device won't see your activity] comes across as an implicit verbal promise from Google"; it does not say any promises were broken. Mao Ex. 81 talks about the pros and cons of whether Google and websites should be permitted to "detect[] Incognito." This issue is irrelevant because none of Plaintiffs' claims are based on Google detecting whether users are in Incognito or PBM and "a party cannot assert a new theory of [liability] [in opposing] summary judgment if not pled in the complaint." *Muto v. Cnty. of Mendocino*, 2022 WL 1320628, at *12 (N.D. Cal. May 3, 2022). Mao Ex. 82 discusses an engineer's (potentially "wrong") concern about detecting Incognito in Google Search, which is not at issue in this case. *See also* Ex. 153 at 198:8–200:10. |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| Issues 1, 2, 4, 9 | PAF 21. Google employees proposed changes to address users' misconceptions, but these changes were never made. Ex. 85 at -92; Ex. 86 at -97 ("rebrand"); Ex. 33 at -50 (disclose "You are NOT protected from Google"); Ex. 20 (McClelland Tr.) 58:12-18, 59:7-12, 61:5-24 ("many people" within Google supported this proposal); Ex. 20 at 126:14-132:13; Ex. 87 at 380:1-381:3; Ex. 88 at -41; Ex. 89 at -04 (delete data); Ex. 90 at -05 ("We all want to expand Incognito mode to also offer some privacy towards Google."). | <u>Disputed</u> as to Plaintiffs' characterizations as "changes to address users' misconceptions" that "were never made," but immaterial. That Google is constantly iterating on its products, and that due to a multitude of factors, some changes are made and some are not, is not relevant to any material fact. Fact 29; *see also* Ex. 151 Mardini Tr. 262:11–263:14. 287:15–289:18, 435:5–436:6, 458:24–459:12. For example, in Mao Ex. 87, the witness testified that the proposal described in Mao Exs. 85 and 89 to send a signal at the end of an incognito decision to delete Incognito browsing from Google logs "had major issues with it regarding how…Chrome incognito works." |
| Issues 1, 2, 4, 9 | PAF 22. Google was concerned that any privacy-enhancing change would decrease Google revenues. Ex. 91 at -28 ("Chrome and Search are currently not allowed to launch anything that negatively impacts revenue. . . . User benefit alone is not sufficient justification for a revenue loss"); Ex. 92 at -95 (changes to Incognito would have "severe costs for Google"); Ex. 93 at -93 ("Sundar [Pichai] didn't want to put incognito under the spotlight"); Ex. 94 at -78 (disclosing Google "wants to track you" would "have too much negative impact on user trust"); Ex. 95 at -76 ("user trust" "drives adoption of Google products"). | <u>Disputed</u> that the exhibits support this fact, but immaterial. Mao Ex. 91 does not discuss a "privacy-enhancing change," or concerns related to any particular change at all; it discusses the best way for the Chrome team to measure revenue impact for new features they may want to launch. Mao Ex. 92 discusses both the "costs" and the "advantage" to including a proxy by default to "totally hide activity from network," without concluding whether the costs outweigh the benefits. Mao Ex. 93 and 94 talk about measuring impact to revenue of potential changes to various products. Mao Ex. 95 does not discuss any specific proposed feature changes, let alone "privacy-enhancing" ones or concerns that they will decrease Google revenues. |
| Issues 1, 2, 4, 9, 11 | PAF 23. The Google Privacy Policy defines "personal information" to include "data that can be reasonably linked to" an individual. Broome Exs. 93-112. | <u>Undisputed</u> that the Privacy Policy defines personal information as "information that you provide to us which personally identifies you…or other data that can be reasonably linked to such information by Google, such as information we associate with your Google Account," but immaterial because whether the information at issue here is "personal information" is not relevant to a |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | material fact. Even if the Privacy Policy's definition of "personal information" were relevant, the data at issue here is *not* "reasonably linked" to a Google Account or identifying information because Google has protocols, procedures, and technical safeguards specifically designed to prevent that from happening. *See* Facts 63–65. |
| Issues 1, 2, 4, 9, 11 | PAF 24. Private browsing data is identifying. Ex. 96 at -503 (describing as "laughable" "[t]he idea that users [are] not identifiable if one were to use all of the data we have"); Ex. 53 at -50 ("guarantees" that "Google doesn't collect personal information while in private mode ... aren't true in Chrome)"; Ex. 97 at -31 ("Chrome Incognito mode ... does not provide anonymity/invisibility towards ... Google"); Ex. 98 at -82 (any notion of "unlinkability" is "clearly impossible and provably does not work"); Ex. 99 at -91; Ex. 20 (McLelland) 212:13-24; Ex. 81 at -20 ("NOT anonymous"); Ex. 100 at -90; Ex. 101 at -840.R ("from a legal perspective, we would never said that Google doesn't know who you are while you're Incognito"). | <u>Disputed</u> that the exhibits Plaintiffs cite support this asserted fact. Google's expert has explained how IP address + User Agent cannot be used to reliably identify the specific device from which data was received or the individual that was browsing. Ex. 82 § G. Mao Ex. 96 shows only that it theoretically might be *possible* to identify PBM users using "all of the data [Google] ha[s] available." Similarly, that one employee (again, Chris Palmer) believed "unlinkability" is impossible (Mao Ex. 98) or another believed joining was "possible" (Mao Ex. 20), does not negate Google's protocols, procedures, and technical safeguards prohibiting and preventing such linking or the fact that Plaintiffs have proffered no evidence that Google has *ever* linked data from Plaintiffs' or Class Members' PBM sessions with their Accounts, identities, or data from their non-PBM browsing sessions. Facts 63–66. In fact, Mao Ex. 81 explains that, internally, Google refers to the data it receives from PBM users as "pseudonymous," because "[w]hile we don't connect [the pseudonymous ID] to a user's identity and there are many internal policies to ensure it does not happen, it's not impossible." As one Google witness explained, "if you actually look at the processes and policies we have in place, operationally this is impossible because we've committed to not do it and we put processes in place that mean it would be impossible to actually have a product doing this.…We have made it impossible for |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | ourselves to be able to do this because user privacy matters." Ex. 148. Mao Ex. 100 discusses ways that *websites* may try to fingerprint users, Google's efforts to prevent that, and one employee's conclusion that, at best, websites "can guess [who you are] if they keep enough data." Mao Ex. 53 discusses disabling sign-in while in Incognito mode; because users can currently sign in, Google cannot (and does not) promise that no personal information will be collected. As the author of Mao Ex. 97 testified at deposition, she was referring to the disclosed fact that a user's incognito activity may still be visible to the entities listed on the Incognito Screen, not that private browsing data is linked to a user's identity. Ex. 154 at 242:13–248:21. As the author of Mao Ex. 99 explained, he was talking about users who sign-in to their Google Accounts while in PBM and he later learned he was wrong that signed-out and signed-in data were linkable. Ex. 155 at 134:9-137:25. Similarly, Mao Ex. 101 clarifies that "we would never sa[y] that Google doesn't know who you are while you're in Incognito…until you add all the caveats (e.g. you don't sign in…"). Plaintiffs' class definition specifically excludes data Google receives from PBM users when they sign-in to a Google Account. Dkt. 803 at 24. And throughout the Class Period, the <u>Search & browse privately</u> page that Plaintiffs contend is part of their contract has stated: "**Important:** If you sign in to your Google Account to use a web service like Gmail, your searches and browsing activity might be saved to your account." Ex. 92. |
| Issue 11 | PAF 25. Plaintiffs' expert Jonathan Hochman analyzed the private browsing data produced in this case and showed how the data is identifying. Broome Ex. | <u>Disputed</u> because Plaintiffs' experts hypothesized that that data "*can* be joined," *see, e.g.* Ex. 157 at 462:11–463, but admitted that they have not found any evidence that Google in fact engages in such fingerprinting |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | 77 §§ VIII.F, H; Ex. 8 §§ V.A, D, E; *see also* Ex. 17 § III.2; Broome Ex. 75 § 9. | or joining, except in rare and specific circumstances—to detect fraud or criminal activity—that Plaintiffs have not shown apply to them or to Class Members. *See* Fact 66; *see also* Ex. 77 ¶ 156. Plaintiffs' additional criticism in Ex. 77 ¶ 156 that Google does not store the data it receives from PBM users "in a way that people have [the] ability to review or delete that information" ignored that for users to have the ability to review and delete the at-issue data, Google would need to associate it with their Google Accounts, eliminating an important privacy-enhancing function. |
| Issues 1, 2, 4, 9 | PAF 26. Google's collection and use of the at-issue data involves the creation of profiles. Broome Ex. 77 § VIII.E1; Ex. 102 at -84; Ex. 103 (Halavati Tr.) 113:18-25; Ex. 20 at 319:8-15. | Disputed as to Plaintiffs' use of the term "profiles." Plaintiffs use the term "profile" to apply to data received from PBM users that, in Google's systems, is keyed only to cookie values that are deleted from users' browsers immediately when they close the PBM session. Facts 57, 78. The purported "profile" might consist of just a single visit to a single website, and is not identified with an individual user or linked to a user's signed-in browsing data or even their other signed-out or other PBM browsing data. Fact 55–56, 58. Mao Exs. 102 and 103 explain that the "off-the-record profile" created during an Incognito session "is shared by all open incognito windows and is destroyed … when the last incognito window is closed." Similarly, Mao Ex. 20 explains "[t]here is one profile for authenticated data and potentially many separate profiles for unauthenticated data," confirming "[w]ith each new Incognito session, there is a new profile." Such "profiles" are anonymous for users in PBM as long as they do not sign-in to their Google Account. Undisputed that, as disclosed in the How Chrome Incognito keeps your browsing private Help page, Incognito does not "[p]revent the websites you visit from serving ads based on your activity during an Incognito session." Ex. 85 |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | (McPhie Decl.) ¶ 74; Ex. 91 (McPhie Decl. Ex. 29). This activity is not associated with any other activity outside of that single Incognito session. Facts 47–57. |
| Issues 1, 2, 4, 8, 9, 11 | PAF 27. Without paying users, Google collected, stored, and used the at-issue private browsing information to enrich itself, and continues to do so. Broome Ex. 77 § VIII.E (explaining how Google uses data to develop and improve Google products, serve advertisements, create profiles, and track conversions); Ex. 25 § 7 (quantifying Google's unjust enrichment); Broome Ex. 75 §§ V.7-V.8; Dkt. 797-3 at 7-11 (detailing uses of private browsing data, including to evaluate bidding strategies and run hypothetical ad auctions); Ex. 18 115:23-123:8 (testifying about how Google Ad Manager uses private browsing data to train machine-learning algorithms). | <u>Disputed</u> as to Plaintiffs' use of argumentative terms like "enrich itself," but <u>undisputed</u> that Google receives the at-issue data through HTTP resource requests initiated when a user, in any browser or mode, visits a website that has installed the code for Google's advertising, analytics, or other web-services and that Google may use the data it collects, including data from users in PBM, to provide, maintain, and improve its services, as well as develop new services, from which Google profits. Ex. 40 at No. 1, sub-part d. It is further <u>undisputed</u> that although Google provides Account holders with numerous free services, it does not directly compensate them for the at-issue data. |
| Issues 7, 8, 10 | PAF 28. The at-issue private browsing data has value. Ex. 25 § 7 (quantifying Google's unjust enrichment); *id.* § 8 (value of private browsing data; e.g., Google's Ipsos Screenwise Panel, where Google paid $3 per month); Broome Ex. 75 § 4; Ex. 3 (Brown) 142:5-146:2, 182:21-187:10; Ex. 4 (Byatt) 207:24-209:6, 212:7-216:1, 221:13-227:12; Ex. 5 (Castillo) 226:11-231:23; Ex. 6 (Davis) 136:2-138:6; Ex. 7 (Trujillo) 255:8-258:24. | <u>Undisputed</u> that, to the extent the at-issue data enables Google to provide its advertising, analytics, and other services, it has value to Google and the websites choosing to use those services. <u>Disputed</u> that the data has any pecuniary value to Plaintiffs or Class Members. Plaintiffs proffer no evidence that the data has pecuniary value to them. Further <u>disputed</u> that there is a non-speculative way to value the at-issue private browsing data, Ex. 156 §§ VI.C, VI.D, but immaterial because the cited evidence shows that Plaintiffs have not participated in a market for the at-issue data or shown that their ability to participate in that market has been impaired. |
| Issue 7 | PAF 29. The at-issue Google tracking beacons run on the user's browser, i.e., on the user's device. Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 82, 85; Broome Ex. 83 ¶ 2 (Google "ad tags will | <u>Undisputed</u> that (i) to use Google's ads and analytics services, a website developer incorporates code available from Google as part of the website's HTML code, such that the Google code is retrieved by the user's |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | be included in the HTML code delivered to the user's browser"). | browser along with the website's first-party code and the code for other third-party services installed on the site; and (ii) the Google code installed by the publisher causes the browser to send the HTTP requests necessary to retrieve the relevant web services. Ex. 83 ¶ 2; *see also* Ex. 77 ¶ 83.  Disputed insofar as Plaintiffs suggest Google "run[s] [code] on the user's browser," "accesses" a user's device, or does so without permission, within the meaning of CDAFA. Users' browsers request Google services only when a site's developer has chosen to utilize Google services and has intentionally incorporated Google's code into the site's own HTML code. *See* Facts 90–91, 97, 100. |
| Issues 8, 10 | PAF 30. Google's tracking beacons "take up processing, storage, and power/battery resources on user devices" and "cause webpages to load slower," increasing user's energy and device costs. Broome Ex. 77 ¶ 94; Ex. 3 (Brown) 155:14-25; Ex. 4 (Byatt) 157:15-159:25; Ex. 5 (Castillo) 20:12-21:1; Ex. 6 (Davis) 140:9-141:11; Ex. 7 (Trujillo) 100:5-10. | Disputed, but immaterial, because Mr. Hochman's support for this conclusion is a single article, which does not even mention Google's analytics and advertising services or attempt to prove that the technology at issue caused more than a *de minimis* effect on processing, storage, or power resources. Ex. 80 ¶¶ 125–127. Google further objects to the citation of Plaintiffs' own, non-expert testimony that "sending out more data just in general takes more energy from a phone" (Mao Ex. 3), that "collecting data, using my computer power and bandwidth…quite literally cost electricity" (Mao Ex. 4), that cookies "slow [the computer] down" (Mao Ex. 5), that "if these background processes are occurring, there's electricity cost that is required" (Mao Ex. 6), and that "cookies can compromise how well the device operates" (Mao Ex. 7) because it lacks foundation. |
| Issue 5 | PAF 31. Firefox Private Browsing mode has since 2015 by default blocked Google tracking beacons; yet the browser can still communicate with and access webpages. Broome Ex. 77 (Hochman Opening Rep.) ¶¶ 114-16. | Undisputed, but immaterial because (1) Plaintiffs have chosen to exclude the Firefox browser from this case, Dkt. 803 at 24; and (2) to the extent the Firefox browser blocks Google code from executing in PBM, it prevents the website from displaying and |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | functioning as the website's developer intended. Ex. 80 (Zervas Reb. Rep.) § III.D. |
| Issue 3 | PAF 32. The at-issue GET Request URLs reveal the specific webpage requested for viewing, the portions of the page requested for viewing, and other user communications. Broome Ex. 77 (Hochman Opening Rep.) App. A ¶¶ 17-18. GET Request URLs include the full string URL of the specific web page the user is requesting for viewing, and Referer URLs include the URL of the specific referring web page viewed. *Id.* ¶ 101. All GET Request URLs Google intercepted from class members include any applicable "folder, subfolder, and precise file requested from the webserver" during the user communications. *Id.* ¶ 96; Ex. 8 Ex. B. | Disputed as to the vague terms "GET Request URLs" and "other user communications," but undisputed that a GET request may contain the URL of the webpage the user is visiting (which may in turn include the location of the file containing the webpage (*e.g.*, within a folder structure)) on the web-server. Ex. 76 ¶ 34. Further undisputed that a GET request may contain the URL of the website that the user clicked on before arriving at that webpage, *i.e.* the referrer URL. Disputed as to the legal conclusion that Google "intercepted" URLs. |
| Issue 3 | PAF 33. Google intercepted URLs containing each of the following pieces of information from every named Plaintiff: path, folders, subfolders, search terms, GCLIDs, and information showing the portion of the web page requested for viewing, which are provided in Plaintiffs' technical expert report. Broome Ex. 77 (Hochman Rep.) ¶ 96, App. A ¶¶ 17-18; Ex. 105 (Hochman Opening Rep. Ex. F; Ex 104. Even Google's expert concedes that URLs containing search terms are content. Broome Ex. 80 (Zervas Rebuttal Rep.) ¶¶ 55-57. Google has publicly referred to information contained on third-party websites as "content," and Google has referred to the impermissible tracking of Incognito sessions, which Google secretly tracked using the ███████████████ bit, as "interception." Ex. 28. Google was sanctioned for concealing this bit. Dkt. 898. | Disputed as to the legal conclusion that Google "intercepted" URLs. Disputed that Plaintiffs proffer evidence that Google received URLs containing the information listed in PAF 33 from the Named Plaintiffs. The data referenced by Mr. Hochman (and, by extension, in Mao Ex. 104) is not the result of PBM browsing activity in the ordinary course, but rather "tests conducted on named Plaintiff and [consulting expert] devices," including "by consultants accessing [Plaintiffs'] devices under [Mr. Hochman's] direction." Ex. 77 (Hochman Rep.) ¶ 75. The only URL containing search terms referenced in Plaintiffs' opposition was generated for litigation by a retained expert, through an experimental process and with Plaintiffs' full knowledge, consent and active participation. PAF 34. Moreover, all of the URLs cited in Mao Ex. 104 are "HTTP extractions taken from browsers on the client side," *i.e.*, from Plaintiffs' browsers, not from Google's servers. Ex. 77 at App'x H at 29 n.17; Mao Ex. 8 ¶ 35; *see also* Dkt. 929 |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | (Mao Ex. 104 was compiled with data from Hochman Ex. F). <u>Undisputed</u> that Mao Ex. 28 refers to information published on third-party websites as "content," and describes website publishers preventing users in Incognito mode from accessing paywalled content without logging in first as "intercept[ing]," but <u>disputed</u> as to the implication that Mao Ex. 28 shows Google "intercepts" the "contents" of communications within the meaning of the federal and state wiretapping statutes and the Ninth Circuit's controlling decision in *In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014). <u>Disputed</u>, but immaterial, that Google was sanctioned for "concealing" the ███████████ field. Judge van Keulen's order speaks for itself and, among other things, makes clear that Google disclosed the (long-defunct) field to Plaintiffs and the Court promptly after identifying it. Dkt. 898 at 16 (citing Dkt. 810). Moreover, none of Plaintiffs' claims seek relief on the alleged basis that Google learned the mere fact that users visiting a site using its services were in PBM and "a party cannot assert a new theory of [liability] [in opposing] summary judgment if not pled in the complaint." *Muto*, 2022 WL 1320628, at *12. |
| Issue 3 | PAF 34: The URL stated in Plaintiffs' Opposition ("Opp.") at page 18 contains folders and subfolders. Ex. 8 App. B, Row 702 Column H. The URL provided in Opp. at 19 contains user-generated search terms. Broome Ex. 77 (Hochman Opening Rep.) App. B at 17. | <u>Undisputed</u>, but immaterial. That the URL identified at Opp. 18-19 contains sub-folders indicating the location of where the page is stored on the website's server is not relevant to any issue in the case. The URL containing search terms at Opp. 19 was generated under artificial conditions (which could not be replicated in the ordinary course without the users' knowledge, consent, and active participation) for the purpose of this litigation. *See* PAF 33. It was also generated by Plaintiffs' retained expert Dr. Lillian Dai, not by Plaintiffs as part of their ordinary private browsing activity. *Compare* Ex. 8 |

| Issue No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Google's Response and Supporting Evidence |
|---|---|---|
| | | App. B (Tab 2, Row 702, Column D), *with id.* (Tab 4, Row 24, Column C). |

I attest that the evidence cited herein fairly and accurately disputes the facts as asserted.

DATED:  April 26, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted *pro hac vice*)
*Attorneys for Defendant Google LLC*