# EXHIBIT 13

# Unredacted




March 1, 2021

**VIA EMAIL**

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Diane M. Doolittle
(dianedoolittle@quinnemanuel.com)
Thao Thai (thaothai@quinnemanuel.com)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065

Stephen A. Broome
(stephenbroome@quinnemanuel.com)
Viola Trebicka
(violatrebicka@quinnemanuel.com)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Jonathan Tse
(jonathantse@quinnemanuel.com)
50 California Street, 22nd Floor
San Francisco, CA 94111

Andrew H. Schapiro
(andrewschapiro@quinnemanuel.com)
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606

William A. Burck
(williamburck@quinnemanuel.com)
Josef Ansorge
(josefansorge@quinnemanuel.com)
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005

**Re: *Chasom Brown, et al., v. Google LLC*, Case No. 5:20-cv-03664-LHK**
**Google's Responses and Objections to Plaintiffs' Second Set of Requests for Production**

Counselors:

I write concerning Google's Responses and Objections to Plaintiffs' Second Set of Requests for Production (Nos. 20–149). We sent you a letter on December 9, which you responded to on February 15, and we met and conferred on February 24.

Our discussion with Mr. Ansorge on February 24 was productive, and we hope that the parties can work together to resolve all or at least many of their disputes. As discussed, to move this forward, we include additional information and responses to your letter below.

This letter includes a number of proposals in terms of what Google would agree to produce to resolve the parties' disputes. All such proposals accept that Google would limit its agreement to production only to the extent such documents exist and are within Google's possession, custody, or control and subject to Google's right to otherwise assert any privilege





with a privilege log. Plaintiffs reserve the right to seek additional clarity in terms of whether responsive documents exist and to otherwise dispute any privilege claims or claims that Google lacks possession, custody, or control, but we do not think that should be an obstacle in terms of otherwise reaching some agreements on these disputes.

**Custodial Documents**

One issue we discussed on February 24 was the extent to which Google will agree to produce custodial documents responsive to Plaintiffs' document requests. Google's responses to Plaintiffs' requests currently fail to specify the extent to which Google will do so. This is something we have discussed previously, with Plaintiffs seeking some additional clarity with respect to Google's willingness to produce custodial documents.

To move this discussion forward, on February 24, we agreed to provide a proposal regarding a "rule set" that may help focus our efforts and reach an agreement regarding Google's production of custodial documents responsive to Plaintiffs' requests. We discussed this in the context of what instructions Google will give to its reviewers in terms of what documents should be tagged as responsive for production. We agreed to provide this proposal even though we believe that Plaintiffs' requests reasonably seek custodial documents as written, without limitation or modification.

To resolve our disputes, Plaintiffs propose that Google will satisfy its obligation to produce custodial documents responsive to the requests identified below (the "Rule Set Requests") by agreeing to produce the following, which would apply to all custodial ESI collected by Google for each agreed-upon or Court-ordered custodians for the full time period agreed-upon or ordered for each custodian and subject to all agreed-upon or Court-ordered search terms (and Google's disclosure of any TAR processes Google intends to use):

1. **All custodial documents concerning Incognito mode, except for documents solely concerning Incognito mode for non-Chrome Google apps (e.g., Google Maps).**

    - This would include, for example and without limitation, custodial documents concerning the purpose and function of Incognito mode, Google's disclosures and statements regarding Incognito mode, the Incognito notice screen, Google's development and 2008 launch of Incognito mode, any subsequent Google modifications in connection with Incognito mode, any changes considered by Google with respect to its privacy and data-collection disclosures and practices in connection with Incognito mode, and consumers' use and understanding of Incognito mode. Requests 3, 4, 14, 16, 23, 32, 145.





2. **All custodial documents concerning <u>private browsing</u>, subject to the one limitation noted above for Incognito mode.**

    - This would include, for example and without limitation, custodial documents concerning all private browsing modes,[1] Google's statements and understanding of any statements regarding any private browsing mode, any changes considered by Google with respect to its privacy and data-collection disclosures and practices in connection with any private browsing mode, users' and websites' understanding in connection with private browsing, and why users employ private browsing. Requests 5, 15, 16, 21, 27, 29, 30, 38, 44, 86, 87, 96, 98, 145.

3. **All custodial documents concerning <u>Google's privacy disclosures and controls</u>.**

    - This would include, for example and without limitation, custodial documents concerning the specific disclosures identified in the First Amended Complaint ("FAC") concerning users' understanding of those disclosures and Google's controls, *see* FAC ¶¶ 39–59. Google's representations regarding users' ability to "control" Google's data collection, changes to those representations, and users' understanding of those Google controls. Requests 21, 25, 26, 27, 30, 35, 37.

4. **All custodial documents concerning <u>user privacy</u>.**

    - This would include, for example and without limitation, custodial documents concerning users' privacy expectations. Requests 26, 35, 36, 141.

5. **All custodial documents concerning the <u>existence or lack of any Google defense, including without limitation consent</u>.**

    - This would include, for example and without limitation, custodial documents concerning the existence or lack of consent to Google's interception of and collection and use of data from private browsing communications, by users or websites. Requests 6, 39, 42, 43.

---

[1] Private browsing modes include Incognito mode for Google's Chrome browser, Private Browsing mode for Apple's Safari browser, InPrivate Browsing mode for Microsoft's IE and Edge browsers, Private Browsing mode for Mozilla Firefox, Private Tab / Private Window for Opera, Private Browsing for Amazon Silk, and Private Browsing mode for Brave.





6. **All custodial documents concerning <u>Google's receipt, collection, and/or use of data while users are in a private browsing mode</u>.**

   - This would include, for example and without limitation, custodial documents concerning Google's disclosures and statements regarding such receipt, collection, and/or use, Google's decision to receive, collect and/or use that data, how Google receives, collects, and/or uses that data, what data Google receives, collects, and/or uses, changes with respect to such receipt, collection, and/or use, and the value of such data. Requests 5, 7, 16, 46, 48, 52, 53, 60, 68, 71, 72, 96, 102, 104, 126, 127, 134, 142, 143, 144.

7. **All custodial documents concerning <u>any Google profiles containing any data collected from any private browsing</u>.**

   - This would include, for example and without limitation, custodial documents identifying profiles created by Google that contain any data collection in connection with users' activity while in a private browsing mode and Google's use of such profiles. Requests 76, 77.

An agreement to produce custodial documents subject to this "rule set" would fully resolve all disputes we have regarding the production of custodial documents responsive to the following requests, setting aside the parties' ongoing discussions regarding production of any non-custodial documents responsive to these requests as discussed below: Requests 3–7, 14–16, 21, 23, 25–27, 29, 30, 32, 35–39, 42–44, 46, 48, 52–53, 60, 68, 71–72, 76–77, 86–87, 96, 98, 102, 104, 126–27, 134, 141–45.

There are other requests where Plaintiffs expect that Google would produce custodial documents responsive to the requests as written, as the requests do not clearly fall within the scope of the "rule set" above. Those include, without limitation, Requests 17–18, 31, 33–34, 36, 74–75, 78, 80, 91–95, 97, 103, 105 (where Google has agreed in its February 15 letter to produce responsive custodial documents), 124, 14–41, and 146. Plaintiffs are open to any other proposal you have that would cover custodial documents for these or any other requests.

**<u>Individual Requests</u>**

The following discusses the individual requests in Plaintiffs' second set of requests, focusing on the issues you raised in your February 15 letter and discussed on February 24.

*Request Nos. 20, 22, 24, 28, 56, 79, 81–83, 88–89, 139*: These requests seek documents sufficient to identify persons for purposes of negotiating a relevant set of Google custodians.





We served these in part because of Google's objections to Request Nos. 11 and 12. We appreciate Google's agreement to produce certain documents responsive to these requests (in Google's December 2 responses), and Google's proposed compromise positions regarding these requests (in your February 15 letter). As discussed on February 24, Plaintiffs expected that Google would be able to satisfy its production obligations for these requests by producing non-custodial documents. After our meet and confer, on February 24, Google's counsel identified the bates range for an eight-page document produced in response to Plaintiffs' Request Nos. 11 and 12 (GOOG-BRWN-00023909–16). That document unfortunately does not provide sufficient detail to fully assess who the Google custodians should be in this case. It only identifies individuals from five Google divisions (Google Ads, Platforms + Ecosystems, Research, GCloud GCP, and Core), with limited information regarding their roles and responsibilities, and it is unclear whether this document includes any former employees. It therefore does not appear to provide the information requested either by Request Nos. 11 and 12 or these additional requests. During the February 24 meet and confer, you suggested that it may be more useful for Plaintiffs to seek this information by way of an interrogatory. Plaintiffs have now served an interrogatory seeking information that may satisfy Google's obligations with respect to some but not all of these requests. We propose that the parties put our negotiations regarding these requests on hold so that we can discuss them further in connection with Google's interrogatory response and our discussions regarding document custodians.

*Request No. 21*: To resolve the parties' disputes on this request, in addition to the documents Google agreed to produce in its December 2 response, Plaintiffs ask that Google agree to produce (1) any non-custodial, non-public policies responsive to this request and (2) custodial documents based on the "rule set" described above.

*Request No. 23*: We appreciate Google's willingness to also produce documents "sufficient to show the reasons for Google's creation and modification to Chrome's Incognito screen." To resolve our dispute on this request, Plaintiffs propose that Google also produce (1) non-custodial documents consisting of (a) all versions of the Incognito screen since it was first presented in 2008 and (b) any reasonably available documents concerning Google's creation and modification to the Incognito screen since it was first presented in 2008 (e.g., presentations regarding those changes or surveys/studies regarding those changes) and (2) custodial documents based on the "rule set" described above, which would capture custodial documents responsive to this request. Producing documents back to 2008 is necessary to understand the extent to which Google disclosed its collection and use of private browsing data prior to the class period but then modified the Incognito screen to no longer do so during the class period. If Google is willing to stipulate that its Incognito screen never disclosed its collection and use of private browsing data, we may be able to limit this request.

*Request No. 25*: On February 24, you asked for additional information regarding which Google statements from Google's Privacy Policy are relevant for purposes of this request. As





reflected in the FAC, there are multiple references to "control" in Google's Privacy Policy: (1) "You're in control of what information you share with Google"; (2) "across our services, you can adjust your privacy settings to control what we collect and how your information is used"; (3) "Your privacy controls'; and (4) "My Activity allows you to review and control data that's created when you use Google services, like searches you've done." FAC ¶¶ 42, 45, 46. As a compromise, Plaintiffs propose that Google produce (1) non-custodial documents consisting of any presentations, evaluations, studies, or other such documents concerning these Google representations, and (2) custodial documents based on the "rule set" described above, which would capture custodial documents responsive to this request.

*Request Nos. 27, 29, 30, 32, 43*: To resolve our dispute on these requests, in addition to any documents Google has already agreed to produce in response to these requests, Plaintiffs propose that Google agree to produce (1) responsive non-custodial documents subject to an inquiry by you of your client to determine whether any such non-custodial documents can be readily located and produced for the period back to June 1, 2008, which would not include emails but would instead focus on and include any presentations, evaluations, studies, or other such documents that would be responsive, and (2) custodial documents based on the "rule set" described above, which would capture custodial documents responsive to these requests.

*Request No. 29*: We appreciate the proposal included in your February 15 letter, which proposes a process for identifying and producing certain custodial documents. To resolve our dispute on this request, Plaintiffs propose that Google agree to produce, in addition to what Google agreed to produce in its December 2 response to this request, (1) responsive non-custodial documents subject to an inquiry of your client to determine whether any such non-custodial documents can be readily located and produced, for the period back to June 1, 2006, and (2) custodial documents based on the "rule set" described above, which would capture custodial documents responsive to this request.

*Request No. 31*: Plaintiffs propose that Google produce the documents referenced in your February 15 letter, with non-relevant provisions redacted, in addition to the documents Google agreed to produce in its December 2 response to this request. The parties can then discuss whether further production of non-custodial documents is required in response to this request. Plaintiffs also propose that Google agree to produce custodial documents responsive to this request as written, in addition to the "rule set" proposed above.

*Request No. 33*: Plaintiffs are willing to limit this request to custodial documents. Plaintiffs propose that Google agree to produce custodial documents responsive to this request as written, in addition to the "rule set" proposed above. Google's interpretation of these terms is relevant in terms of demonstrating what a reasonable consumer would have understood these terms to mean and for purposes of seeking class certification. *Campbell v. Facebook*, 315 F.R.D. 250, 266 (N.D. Cal. 2016) (citing internal emails showing the defendant was "actively





trying to hide the [challenged] practice," where employees "described the practice as 'sketchy' and 'downright misleading' and contrary to 'the understanding of 99.9% of people'").

*Request No. 34*: Plaintiffs are willing to limit this request to custodial documents. Plaintiffs propose that Google agree to produce custodial documents responsive to this request as written, in addition to the "rule set" proposed above. This would include any custodial documents discussing, for example, the accuracy of those representations. We think that any final set of search terms should be sufficient to capture such documents, and there is no basis for Google to withhold those custodial documents.

*Request No. 35*: As you know, we have an ongoing dispute regarding Google's definition of "logged-out" which Google uses in response to this and other requests. Our "rule set" proposal above includes custodial documents responsive to this request. With respect to non-custodial documents, Plaintiffs will review what Google produces. We can then see if we need to discuss any further issues.

*Request No. 36*: In terms of non-custodial documents, there seems to be little difference between Google's December 2 agreement to produce documents and your February 15 proposal. For non-custodial documents, we think that Google should investigate the extent to which documents exist that are responsive to the request as stated, without your proposed limitations. Google's objections to this request do not track the request itself, and we believe that this request seeks relevant documents as written. Plaintiffs also propose that Google agree to produce custodial documents responsive to this request as written, in addition to the "rule set" proposed above.

*Request Nos. 37–38*: In terms of non-custodial documents, there seems to be little difference between Google's December 2 agreement to produce documents and your February 15 proposal. For non-custodial documents, we think that Google should investigate the extent to which documents exist that are responsive to the requests as stated, without your proposed limitations. Documents relating to "logged-in" activity are relevant here. A user's decision to log out may be informed, for example, by Google's disclosures about what data Google collects when they are logged in. We think that limiting production to studies related to "logged-out users' understanding" is not workable, but please let us know if such documents exist. Our "rule set" proposal above includes custodial documents responsive to this request.

*Request No. 39*: Plaintiffs are willing to defer any further meeting and conferring on this request while the parties focus on trying to resolve their other disputes, such that Google would (as stated in your February 15 letter) "produce documents related to the specific allegations at issue here."





*Request Nos. 44, 74*: Plaintiffs propose that the parties defer our meet and confer on these requests until after the Court rules on Google's motion to dismiss.

*Request No. 45*: This request is limited to non-custodial documents. Google complains that this request is overbroad, but that appears to be because Google itself has failed to separately preserve data collected from users' private browsing communications. As such, this appears to be a problem of Google's making. Google has referenced the possibility of sampling or substitute information, but Google has still not made any sampling proposal or identified substitute information. Please do so. In the meantime, Plaintiffs do not agree to Google destroying or withholding documents responsive to this request.

*Request Nos. 46–47, 51, 54, 58, 62, 66, 90*: Your February 15 letter fails to address the issues we raised in our December 9 letter. As noted in our December 9 letter, if public documents are sufficient to show how those Google scripts work and provide the source code for the class period, then Google should just state that it will produce the requested documents. Further, if there were no changes back to June 1, 2014, then that would help in terms of streamlining production. If Google provides that information, Plaintiffs may be willing to defer any further meet and confer on these requests while they review what Google produces based on its December 2 responses and with respect to your February 15 letter.

*Request No. 49*: The proposal in your February 15 letter is not substantially different from the limited agreement to produce documents in Google's December 2 response to this request. This request seeks technical documents relating to how Google tracks consumers, their devices, and their locations. As detailed in the FAC, Google does this in a number of ways, including using User-ID, cookies, fingerprinting technologies that uniquely identify devices (such as X-Client-Data header, GStatic, and Approved Pixels), geolocation data, and IP address information. To resolve our dispute regarding this request, Plaintiffs are willing to limit this request to non-custodial documents with an agreement that Google produce responsive non-custodial documents subject to an inquiry by you of your client to determine whether any such non-custodial documents can be readily located and produced for the period back to June 1, 2016, which would not include emails but would instead focus on and include any presentations, evaluations, studies, or other such documents that would be responsive.

*Request Nos. 50, 57, 65*: Plaintiffs anticipate that Google can produce non-custodial documents responsive to these requests, and that there is no need to produce any custodial documents responsive to these requests. Plaintiffs propose limiting Google's productions to the period since June 1, 2016, with the expectation that the data would include any changes during that period (e.g., if a publisher used Google Analytics for only portions of that time period, the data would identify those time periods). Please state whether Google is willing to produce that data.





*Request Nos. 52, 59, 63, 67, 71 (partial)*: In terms of the "amount of data" referenced in these requests, Plaintiffs seek to understand the frequency and volume of Google's data collection. Based on our meet and confers and Google's other discovery responses, Plaintiffs' current understanding is that Google collects the same data with Google Analytics regardless of whether a user is "logged-in" or "logged-out" and regardless of whether the user is in a private browsing mode or not. If that is incorrect, please let us know. Based on that understanding, Plaintiffs propose deferring any further meet and confer on these requests while Google produces the documents it has agreed to produce in response to these requests.

*Request No. 53*: Plaintiffs do not agree with Google's proposed limitations, but Plaintiffs propose deferring any further meet and confer on this request while Google produces the documents it has agreed to produce in response to this request.

*Request No. 55*: With this request, Plaintiffs seek documents that will help understand Google's collection and use of data in connection with users' activity while in a private browsing mode. This would include, for example, data dictionaries or similar documents describing the fields and contents of any datasets. The set of documents responsive to this request may be informed by the data Google produced in response to the other requests, and we are willing to meet and confer further on this request.

*Request No. 61*: Your February 15 letter indicates that Google believes that its agreement to produce "publicly available documents regarding the classification of Google's cookies" (from its December 2 response) will be "sufficient to show how Google classifies its cookies, either as first-party or third-party cookies," as requested. If that is correct, then no further production will be required.

*Request Nos. 64, 68*: These requests focus on how Google uses data collected in connection with users' activity while in a private browsing mode, with Google cookies (Request 64), Google Ad Manager (Request 68). We think that Google can satisfy its production obligations through the production of non-custodial documents. Please state whether Google is willing to produce non-custodial documents responsive to these requests.

*Request Nos. 69–71*: Google's refusal to produce documents concerning GStatic and Approved Pixels is improper. Plaintiffs detail how Google uses data collected with GStatic and Approved Pixels to create and profit from various profiles from private browsing. FAC ¶¶ 93, 100–04. Those additional products are not just "mentioned" in the complaint; they are part of Plaintiffs' allegations in terms of how Google unlawfully collects data and profits from the interception of class members' private browsing communications. Please let us know if the parties are at an impasse on this issue, with Google unwilling to produce documents concerning GStatic and Approved Pixels.





*Request No. 72*: Google has no yet agreed to produce any documents responsive to this request. As explained above, documents concerning Google's use of data gathered with GStatic and Approved Pixels are relevant. The X-Client-Data Header was subject to extensive discussion during the February 25 hearing, and documents concerning Google's use of the X-Client-Data Header are also relevant. Please produce these documents.

*Request No. 73*: Plaintiffs reasonably seek these documents (limited to documents "sufficient to show") to understand the extent to which Google is creating and profiting from profiles that combine data collected from private browsing communications with other data, including system or geolocation data. Plaintiffs have alleged that Google does this (FAC ¶¶ 105–112), and they are entitled to documents on that topic. We think Google can satisfy its production obligations in response to this request by producing non-custodial documents. Please do so.

*Request No. 75*: Your February 15 proposal to "produce documents showing the number of Google Analytics customers that have enabled the Google Analytics User-ID function" is insufficient. This request properly focuses on Google's association of data collected with users are in private browsing mode with unique user profiles through Google Analytics User-ID. We appear to be an impasse on this request, which seeks both non-custodial and custodial documents.

*Request Nos. 76–77*: These are straightforward requests seeking documents sufficient to identify all profiles created by Google and all ways in which Google uses profiles, including profiles containing any data collected in connection with users' activity while in a private browsing mode. Google objects that certain portions of these requests are vague and ambiguous, and we are willing to meet and confer further to clarify any ambiguity so that Google may then produce the requested documents.

*Request Nos. 78–83*: Google's categorical refusal to produce documents in response to these requests is improper, and your February 15 letter includes no proposed compromise. Plaintiffs understand that the parties are at an impasse on these requests.

*Request Nos. 84–85*: Our December 9 letter explains the relevance of these documents, and your February 5 letter concerning the ESI Order only further demonstrates their relevance, where you assert that Google's "retention periods and data privacy policies are carefully crafted to abide by Google's legal obligations under laws in various jurisdictions in which it operates, including EU General Data Protection Regulation 2016/679, the California Consumer Privacy Act (CCPA), and Lei Geral de Proteção de Dados (LGPD)." Google is asserting that its privacy policies are designed to comply with the GDPR and CCPA, but at the same time refusing to produce documents concerning Google's compliance with those laws.





This is improper. Plaintiffs understand that the parties are at an impasse on these requests, with Google refusing to produce any documents responsive to these requests.

*Request Nos. 86-87, 91–92, 128–30*: We understand that the parties are at an impasse on these requests, with Google refusing to produce and responsive documents.

*Request No. 94*: Plaintiffs propose that Google also agree to produce custodial documents responsive to this request.

*Request No. 96*: We do not understand what additional information you are seeking in terms of justifying production in response to this straightforward request. We nonetheless think that the "rule set" above should cover any custodial documents responsive to this request, and the only question therefore would be (assuming we can agree to that rule set) is whether there are non-custodial documents reflecting such changes. We would like to meet and confer further regarding production of responsive non-custodial documents.

*Request No. 97*: This request seeks documents concerning this lawsuit. If Google's employees have created non-privileged documents discussing, analyzing, and evaluating the rights and claims asserted in this lawsuit, then those documents are relevant and should be produced. We do not know what further explanation you seek. If it will resolve our dispute, Plaintiffs are willing to limit this request to custodial documents.

*Request Nos. 98, 104, 126–27, 142*: Plaintiffs wish to meet and confer regarding these requests.

*Request Nos. 99–103*: Plaintiffs dispute your assertion that Google "does not know whether a user is in private browser mode." Plaintiffs wish to meet and confer on these requests further, to better understand what documents exist and could be produced.

*Request No. 105*: Thank you for agreeing to our proposal, which resolves our dispute regarding this request.

*Request Nos. 106–10*: Plaintiffs are willing to review Google's production of documents showing "what percentage of Chrome users used Incognito mode" and evaluate those documents in connection with our ongoing meet and confers regarding these requests. Please produce those documents, so that we can discuss them. Plaintiffs otherwise reserve all rights in connection with these requests.

*Request Nos. 111–20, 125, 136–37, 144, 148*: Plaintiffs wish to meet and confer regarding these requests, but we can defer that until after the Court rules on Google's motion to dismiss.





*Request No. 131*: Please let us know if Google would agree to produce responsive documents if limited to custodial documents.

*Request No. 133*: Plaintiffs wish to meet and confer regarding this request, as Google should be able to produce non-custodial documents responsive to this request.

*Request Nos. 134–35*: Your February 15 letter suggests that Google need not produce documents responsive to these requests because they are "already covered" by other requests. If so, then we do not understand why there is any dispute on these requests, both of which seek documents "sufficient to show." Let's discuss.

*Request No. 138*: Plaintiffs seek these documents to negotiate a meaningful set of search terms. Please let us know if Google will produce those documents or otherwise provide such information during our search term negotiations.

*Request No. 141*: Please let us know if Google would agree to produce responsive documents if limited to custodial documents. This should limit your concerns regarding responsive privileged documents, and Google may, of course, assert any privilege objections with respect to custodial documents.

*Request No. 145*: Plaintiffs propose limiting this request to custodial documents produced subject to the "rule set" above.

*Request No. 146*: Plaintiffs wish to meet and confer regarding this request, in part to ensure that we capture custodial documents responsive to this request.

*Request No. 147*: We should meet and confer regarding this request in the context of our ongoing discussions about the meaning of "logged-out."

**Other Points of Dispute**

***Scope of Private Browsing Modes***: A number of Plaintiffs' requests reference private browsing generally, which Google initially limited to Incognito mode, but in your February 15 letter, you suggested this could be expanded to include additional modes. For Request No. 20, Google proposes to also "produce documents related to private browsing modes in Safari, Microsoft Edge, and Firefox." That addresses Plaintiff's first point, in part. Please confirm that Google is willing to produce documents related to all private browsing modes, which would also include as additional examples Internet Explorer, Opera, Amazon Silk, and Brave.

***Time Period***: For many of the requests, Google insists on producing only documents for the period of June 1, 2016 through the present. This is something we address below but hope to resolve more generally. For many requests, we proposed that Google produce





documents back to June 1, 2014. We would like to discuss the possibility of using June 1, 2015 as a start date instead, to capture documents from the year before the class period starts.

Sincerely,

Beko Reblitz-Richardson