# GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S SURVEY EXPERT ON AMIR

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Rachael L. McCracken (CA Bar No. 252660)
rachaelmccracken@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
Joseph H. Margolies (admitted *pro hac vice)*
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
D. Seth Fortenbery (admitted *pro hac vice*)
sethfortenbery@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice)*
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Counsel for Defendant Google LLC (additional counsel listed in signature block below)*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

CHASOM BROWN, *et al*., on behalf of
themselves and all others similarly situated,

    Plaintiffs,

    v.

GOOGLE LLC,

    Defendant.

Case No. 4:20-cv-03664-YGR-SVK

**GOOGLE LLC'S OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE
IN PART THE OPINIONS OF
GOOGLE'S SURVEY EXPERT ON
AMIR**

The Honorable Yvonne Gonzalez Rogers
Date: November 15, 2023
Time: 9:00 a.m.
Location: Courtroom 1 – 4th Floor

Trial Date: January 29, 2024

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................1

I.      INTRODUCTION.................................................................................................................1

II.     BACKGROUND...................................................................................................................2

III.    LEGAL STANDARD ...........................................................................................................3

IV.     ARGUMENT .........................................................................................................................4

      A.      Professor Amir's Surveys Are Relevant to Each Cause of Action ...........................4

            1.      Professor Amir's Surveys Are Relevant to Plaintiffs' Claims and Google's Defenses................................................................................4

            2.      Implied Consent Will Be an Issue at Trial ...................................................6

            3.      Professor Amir's Surveys Are Relevant to Interpreting Google's Disclosures ................................................................................7

      B.      Professor Amir Is Qualified To Offer His Relevant and Reliable Opinions Based on His Surveys................................................................................9

V.      CONCLUSION ....................................................................................................................12

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S SURVEY EXPERT ON AMIR

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   2012 WL 2571332 (N.D. Cal. June 30, 2012) ............................................................... 6

*Bailey Venture Partners XVI, LLC v. Myall*,
   2023 WL 3772026 (N.D. Cal. May 1, 2023) ................................................................. 7

*Brewer v. Gen. Nutrition Corp.*,
   2015 WL 9460198 (N.D. Cal. Dec. 28, 2015) ............................................................... 6

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ..................................................................................... 10

*Congdon v. Uber Techs., Inc.*,
   291 F. Supp. 3d 1012 (N.D. Cal. 2018) ........................................................................ 7

*Cooper v. Brown*,
   510 F.3d 870 (9th Cir. 2007) ........................................................................................ 3

*Corcoran v. CVS Pharm., Inc.*,
   2021 WL 633809 (N.D. Cal. Feb. 18, 2021) ................................................................. 8

*United States v. Curtin*,
   489 F.3d 935 (9th Cir. 2007) ...................................................................................... 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..................................................................................................... 1

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) .................................................................................... 10

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ................................................................................. 1, 10

*Galvez v. Jaddou*,
   52 F.4th 821 (9th Cir. 2022) ......................................................................................... 6

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..................................................................................................... 7

*Medlock v. Taco Bell Corp.*,
   2015 WL 8479320 (E.D. Cal. Dec. 9, 2015) ............................................................... 11

*Montera v. Premier Nutrition Corp.*
   2022 WL 1225031 (N.D. Cal. Apr. 26, 2022) ............................................................. 10

*Orgain, Inc. v. N. Innovations Holding Corp.*,
    2022 WL 2189648 (C.D. Cal. Jan. 28, 2022)...............................................................3

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010)........................................................................................3

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
    2019 WL 5328730 (S.D. Cal. Oct. 21, 2019)...............................................................10

*Ridgeway v. Wal-Mart Stores, Inc.*,
    2016 WL 4728668 (N.D. Cal. Sept. 12, 2016), *aff'd sub nom. Ridgeway v.
    Walmart Inc*, 946 F.3d 1066 (9th Cir. 2020)...............................................................9

*Roberts v. Hollandsworth*,
    582 F.2d 496 (9th Cir. 1978)........................................................................................8

*United States ex rel. Rural Utils. Serv. v. Sandwich Isles Comms., Inc.*,
    833 F. App'x 718 (9th Cir. Jan. 20, 2021)....................................................................8

*Senne v. Kansas City Royals Baseball Corp.*,
    2017 WL 897338 (N.D. Cal. Mar. 7, 2017), *aff'd in part, rev'd in part and
    remanded*, 934 F.3d 918 (9th Cir. 2019).....................................................................9

*Shalaby v. Irwin Indus. Toll Co.*,
    2009 WL 7452756 (S.D. Cal. July 28, 2009)...............................................................11

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)..............................................................................10, 11

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
    648 F. App'x 609 (9th Cir. 2016)................................................................................10

*United Comm. Ins. v. Paymaster Corp.*,
    962 F.2d 853 (9th Cir. 1992)........................................................................................8

*United States v. AMC Ent., Inc.*,
    549 F.3d 760 (9th Cir. 2008)........................................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................................................6

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011)......................................................................................8

**Statutes and Rules**

CIPA § 632.................................................................................................................................5

Fed. R. Civ. P. 23(b)(2).......................................................................................................4, 6

Fed. R. Civ. P. 23(f) ............................................................................................................................ 6

Fed. R. Evid. 702 ..................................................................................................... 1, 3, 9, 10

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S
SURVEY EXPERT ON AMIR

Google, LLC ("Google") submits this memorandum of points and authorities in support of its Opposition to Plaintiffs' Motion to Exclude in Part the Opinions of Google's Survey Expert On Amir.

## ISSUE TO BE DECIDED

Whether Professor Amir's surveys and opinions are relevant and reliable.

## I.    INTRODUCTION

Plaintiffs offer no credible grounds to exclude Professor Amir's Opinions 2–4 (and paragraphs 3–16 and 49–86) under Federal Rule of Evidence 702 or the standards explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). As the Court observed in its class certification order, "Amir's report . . . indicates that [a majority of] participants, when shown the documents plaintiffs claim comprise their contract (the Incognito Screen, the Privacy Policy, and the Chrome Privacy Notice), . . . expect Google receives [the at-issue data] in Incognito mode." Dkt. 803 (Class Cert. Ord.) 30. His surveys further demonstrate that users would continue to conduct sensitive browsing in Incognito mode even with full knowledge that Google receives data related to that browsing. Because these survey opinions are rooted in a reliable methodology and speak directly to core trial issues, they are readily admissible under Rule 702.

*First*, Plaintiffs' argument that Professor Amir's surveys are irrelevant is specious. The surveys are relevant not only to the narrow issues Plaintiffs raise—implied consent and the meaning of Google's disclosures—but also to numerous other elements of and defenses to the claims to be tried (*e.g.*, whether Google's conduct is "highly offensive" to a reasonable user). Indeed, Plaintiffs intend to call their own expert to present survey evidence on the same topics on which Professor Amir opines, belying any argument that his opinions are not germane to the upcoming trial.

*Second*, Plaintiffs claim that Professor Amir "did not ask the right questions" because his surveys did ask specifically about signed-out browsing on non-Google websites. Mot. 3. But they fail to establish how this putative flaw would result in unreliable or irrelevant results. And even if Plaintiffs' critique *were* valid, their disagreements with Professor Amir's methodology are fodder for cross examination, not a basis for exclusion. *See, e.g.*, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037–38 (9th Cir. 2010). Plaintiffs' motion should be

-1-

1   denied.

2   **II.     BACKGROUND**

3        Professor Amir has been a professor of marketing for nineteen years and is the Wolfe Family

4   Presidential Endowed Chair in Life Sciences, Innovation, and Entrepreneurship, and Professor of

5   Marketing at the Rady School of Management, University of California, San Diego. Dkt. 975-2

6   ("Amir Rep.") ¶ 17. He has designed and conducted hundreds of consumer surveys for academic

7   research and consulting work. *Id.* ¶ 20.

8        For his opening report, Professor Amir conducted three surveys. *First*, his "Consumer

9   Perceptions and Expectations Study" assessed whether users who viewed the private browsing

10  splash screens for Chrome, Safari, or Firefox—as well as the "Learn More" pages linked to those

11  screens—expect that third party web-service providers (such as Google) receive data when they visit

12  websites in private browsing mode. *Id.* ¶¶ 3, 4.  The survey results show that 44% of Chrome users

13  expect that companies that provide analytics and advertising services probably do or do receive data

14  from private browsing sessions, while only 35% expect that such companies do not or probably do

15  not receive that data. *Id.* ¶ 59.a.

16       *Second,* Professor Amir's "Interpretation Study" assessed whether users who reviewed

17  various combinations of Google's disclosures expect Google receives URLs, IP addresses, and

18  cookies when they browse the web in Incognito mode.[1] *Id.* ¶ 8. The survey results show that a

19  majority or plurality of users shown these disclosures expected that Google does or probably does

20  receive URLs, IP addresses, and cookies from users' Incognito sessions, with many fewer expecting

21  that Google does not or probably does not receive that data.[2]

22  

23  _____

    [1] These disclosures included the Incognito Splash Screen, the "Learn More" page, the Google

24  Privacy Policy, the Chrome Privacy Notice, the New Account Creation Agreement, and the Consent
    Bump Agreement for some respondents.

25  [2] Specifically, the results showed that 54% of users shown only the Incognito Splash Screen and
    "Learn More" page expect that Google does receive or probably receives URLs of the sites visited

26  while in Incognito mode, while 26% expect that Google does not receive or probably does not
    receive URLs of the sites visited while in Incognito mode. *Id.* ¶ 72.a. Similarly, 65% of users who

27  were shown only the Incognito Splash Screen and "Learn More" page expect that Google does
    receive or probably receives IP addresses while in Incognito mode, while 14% expect that Google

28  does not or probably does not receive IP addresses while in Incognito mode. *Id.* ¶ 72.b. Finally, 46%

*Third*, Professor Amir's "Likelihood of Use Study" assessed whether and to what extent modifying certain language on the Incognito Screen and the "Learn More" page linked thereto—to specifically identify Google as an entity that may receive data when an Incognito user visits a website using Google services—impacts users' likelihood of using Chrome in Incognito mode for private browsing. *Id.* ¶ 13. The survey results show that modifying the Incognito Screen and the "Learn More" page to address Plaintiffs' criticisms has no statistically significant impact on respondents' likelihood of using Chrome in Incognito mode to research a sensitive topic. *Id.* ¶ 16.

In its class certification order, the Court cited to Professor Amir's surveys as evidence that more Chrome users "expect companies like Google [to] receive IP addresses, URLs of sites visited, and cookies" than those who "expect such companies 'probably do or do not' receive such information." Class Cert. Ord. 30.

## III.     LEGAL STANDARD

Federal Rule of Evidence 702 permits opinion testimony by an expert as long as the witness is qualified and, based upon that qualification, the witness's opinion is relevant and reliable. An expert witness may be qualified by "knowledge, skill, experience, training, or education" as to the subject matter of the opinion. Fed. R. Evid. 702. "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance." (internal quotation marks omitted)). Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. "[T]he exclusion of expert testimony is 'the exception rather than the rule.'" *Orgain, Inc. v. N. Innovations Holding Corp.*, 2022 WL 2189648, at *2 (C.D. Cal. Jan. 28, 2022) (quoting Advisory Committee Notes to 2000 Amendments to Fed. R. Evid. 702).

---

of users who were shown only the Incognito Splash Screen and "Learn More" page expect that Google does or probably does receive cookies while in Incognito mode, while 38% expect that Google does not or probably does not receive IP addresses while in Incognito mode. *Id.* ¶ 72.c. The results were similar for users who were also shown the Privacy Policy and the Chrome Privacy Notice. *See id.* ¶ 71, Table 5.

## IV.  ARGUMENT

### A.  Professor Amir's Surveys Are Relevant to Each Cause of Action

Plaintiffs argue (i) that Professor Amir's surveys are relevant only to implied consent and interpreting Google's disclosures, and (ii) that Google may not address either issue at trial. They are wrong on both fronts. First, Professor Amir's surveys are relevant to each cause of action, not merely implied consent and contract interpretation. The surveys show that private browsing users "expect that companies that provide analytics and advertising services," like Google, "receive data from their private browsing session." Amir Rep. ¶¶ 5, 10, 16.  That evidence undermines the central premise of Plaintiffs' case and applies to every one of their claims. *See, e.g.*, Dkt. 886 (Fourth Am. Compl.) ¶ 1 ("This lawsuit concerns Google's surreptitious interception and collection of personal and sensitive user data while users are in a "private browsing mode" . . . without disclosure or consent . . . ."). Plaintiffs apparently agree, since they "Expect to Call" their own expert to present survey evidence that "users did not understand or believe that they consented to Google's data collection and storage of their private browsing data." Dkt. 991-6 at 15. Professor Amir's evidence on the same topic is no less relevant.

Second, even if the surveys *did* apply only to implied consent and contract interpretation, they would still be relevant and admissible. That millions of class members impliedly consented will be an important issue at the injunctive relief phase of trial, where the Court must determine whether injunctive relief is "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Further, Plaintiffs' assertion that the Court foreclosed Google from supporting its disclosure interpretations with survey evidence—while leaving Plaintiffs free to use survey evidence to support their contrary interpretation—misapprehends the Court's statements and the law.

### 1.  Professor Amir's Surveys Are Relevant to Plaintiffs' Claims and Google's Defenses

Plaintiffs are simply wrong that Professor Amir's surveys are relevant only to the narrow issues of implied consent and contract interpretation. Professor Amir's surveys, which show that millions of people understood Google would receive the data at issue *and* that those users would continue to use Incognito for sensitive browsing even after being specifically informed that their

activity is visible to Google,[3] undermines the heart of Plaintiffs' case. This evidence is thus relevant to numerous elements of Plaintiffs' claims and Google's defenses, including, *inter alia*: (i) whether websites consented to the alleged conduct (a complete defense to Plaintiffs' Federal Wiretap Act claims); (ii) whether users reasonably expected their communication to be recorded (an element of Plaintiffs' CIPA § 632 claims); (iii) whether Google used data "without permission" (an element of Plaintiffs' CDAFA claims); and (iv) whether Plaintiffs had "a reasonable expectation of privacy" and whether Google's actions were "highly offensive" to a reasonable person (elements of Plaintiffs' invasion of privacy and intrusion upon seclusion claims). *See, e.g.*, Dkt. 969 (MSJ Ord.) at 22, 26–35.

Likewise, Professor Amir's survey evidence is relevant to rebutting Plaintiffs' expert testimony. At trial, Plaintiffs "Expect to Call" their experts Bruce Schneier and Mark Keegan to testify that users have "reasonable expectations of privacy in connection with private browsing, and [that] Google's collection . . . of that information is highly offensive,"[4] and that "users did not understand or believe that they consented to Google's collection and storage of their private browsing data," respectively. Dkt. 991-6 at 13–15. Plaintiffs clearly believe these opinions are relevant, and Professor Amir's surveys directly contradict both of them. *See* Amir Rep. ¶¶ 56–58, 69–71. Indeed, Professor Amir disclosed rebuttal opinions specific to each of Messrs. Schneier and Keegan, and both of Professor Amir's rebuttal opinions make use of the surveys at issue. *See* Dkt. 666-20, Ex. 2 at ¶¶ 39–58 (rebutting Mr. Schneier's opinions based on challenged survey results); Dkt 666-20, Ex. 3 at ¶ 35 (rebutting Mr. Keegan's opinions based on challenged survey results). Plaintiffs cannot argue that *their* expert evidence "speaks clearly and directly to an issue in dispute in th[is] case," Mot. 7, but that *Google's* equivalent, directly responsive evidence does not.[5]

---

[3] *See* Amir Rep. ¶¶ 56–60, 69–73, 83–86; Class Cert. Ord. 30.

[4] The Court previously concluded that Mr. Schneier "does not have specialized expertise in opining about the purported understandings and expectations of consumers specifically," and therefore his "opinions about the purported expectations and understandings of 'reasonable users'. . . . fall outside the scope of Schneier's expertise and are not reliable." Class Cert. Ord. 17–19. Thus, Plaintiffs apparently "Expect to Call" Schneier to testify about a topic on which the Court has ruled he is not qualified to opine.

[5] For all the reasons above, Plaintiffs' putative authority is simply inapposite. In *Brewer*, the Court

1

### 2.   Implied Consent Will Be an Issue at Trial

Plaintiffs also fail to demonstrate that Professor Amir's surveys are irrelevant to the extent they support Google's implied consent defense. Plaintiffs argue that because the Court (correctly) held that "the inquiry into implied consent . . . creates individualized issues that defeat predominance," Class Cert. Ord. at 32, "there is no place for implied consent in the Rule 23(b)(2) trial," Mot. 4. That is wrong. While the need for individualized inquiries precludes a classwide determination of Google's liability, implied consent (and Professor Amir's surveys) remains critically relevant to at least Plaintiffs' entitlement to classwide injunctive relief.

First, to merit classwide injunctive relief, Plaintiffs must establish that such relief would be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Professor Amir's surveys—which indicate that most class members understood and consented to the conduct Plaintiffs challenge—are evidence that it is not. "[C]onsent is a defense to all of plaintiffs' claims," Class Cert. Ord. at 32 (citing Dkt. No. 113, at 14),[6] and Professor Amir's evidence that Google is not liable to millions of class members demonstrates that "a single injunction" would *not* "provide relief to *each member of the class*" as Rule 23(b)(2) requires. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (emphasis added).

Moreover, before issuing any injunction, the Court must determine whether "considering the balance of hardships between the plaintiff[s] and defendant, a remedy in equity is warranted." *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022). To the extent it is, the Court must then

---

excluded surveys concerning why wage-and-hour class members missed breaks because "[w]hether the individuals surveyed reported that they missed breaks voluntarily or not *does not figure into the calculus*" under the California Labor Code. *Brewer v. Gen. Nutrition Corp.*, 2015 WL 9460198, at (N.D. Cal. Dec. 28, 2015) (emphasis added). The court in *Apple* excluded evidence for substantially the same reason. *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 2571332, at *4 (N.D. Cal. June 30, 2012). Here, by contrast, the subject of Professor Amir's surveys (*i.e.*, whether users understood Google's data collection) is a key issue for every claim.

[6] Plaintiffs contest the Court's (and Judge Koh's) ruling on this point "to preserve their right to appeal," Mot. 5 n.2, but their arguments are unavailing. As Google explained in its successful opposition to Plaintiffs' Rule 23(f) petition, implied consent *is* a defense to all seven claims, whether styled as such or under the substantively equivalent doctrine of waiver (equally supported by Professor Amir's survey evidence). *See* Case No. 22-80147 (9th Cir.), Dkt. 3 at 13–18 & nn. 5–9. In any event, even Plaintiffs concede that implied consent is a defense to at least some of their claims, Mot. 5, and thus relevant to this action.

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S SURVEY EXPERT ON AMIR

1  determine "the appropriate scope of [that] injunctive relief," which "should be no more burdensome

2  to the defendant than necessary to provide complete relief to the plaintiffs." *United States v. AMC*

3  *Ent., Inc.*, 549 F.3d 760, 775 (9th Cir. 2008) (internal quotation marks omitted). Evidence that tens

4  of millions of class members consented to the challenged conduct is plainly material to whether

5  injunctive relief should issue and, if so, in what form.[7] *See Lewis v. Casey*, 518 U.S. 343, 359 (1996)

6  ("The scope of injunctive relief is dictated by the extent of the violation established . . . ." (internal

7  quotation marks omitted)).

8  ### 3.   Professor Amir's Surveys Are Relevant to Interpreting Google's Disclosures

9

10  Finally, the jury is entitled to consider Professor Amir's surveys when interpreting Google's

11  disclosures. At the summary judgment hearing, the Court asked Google whether its Privacy Policy

12  is ambiguous and Google responded that it is not. 5/12/2023 MSJ Hr'g Tr. at 13:25–14:2. Google's

13  position has not changed,[8] but the Court took a different view, ruling at summary judgment that

14  Google's "contract" with Plaintiffs is ambiguous as a matter of law. MSJ Ord. 15, 17 n.20. The

15  meaning of the contract has thus become "a question of fact for the jury." *Bailey Venture Partners*

16  *XVI, LLC v. Myall*, 2023 WL 3772026, at *4 (N.D. Cal. May 1, 2023). The Court separately held

17  that which documents are incorporated by reference into the alleged contract are also questions for

18

19  _____

7 For example, Plaintiffs have asked the Court to "(1) preclude Google from further collecting
20  private browsing information, (2) require Google to delete the private browsing information that it
previously collected[, and] (3) require Google to remove any services that were developed or
21  improved with [] private browsing information." Dkt. 803 at 33. These measures would affect
hundreds of millions of Google users (including non-class members). Professor Amir's survey
22  evidence—which indicates the majority of those users likely understood and impliedly consented to
Google's receipt of private browsing information—is material to the Court's determination of
23  whether any of these measures is appropriate.

8 Google agreed that it would not "change [its] position at trial," 5/12/2023 MSJ Hr'g Tr. at 14:3–8,
24  and it has not. In other words, Google has no intention of taking "a position at summary judgment
that a term is unambiguous" only to later "say, 'oh, no, I was wrong'" in order to present a different
25  interpretation to the jury. 2/14/2023 Hr'g Tr. 39:13–25. Rather, *the Court* determined that the
contract is ambiguous *as a matter of law*, and Google now has no choice but to accept that
26  determination for purposes of trial. *See, e.g.*, *Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012,
1021 (N.D. Cal. 2018) (Gonzalez Rogers, J.) ("whether a contract is ambiguous" is a pure "matter
27  of law").

28

Case No. 4:20-cv-03664-YGR-SVK

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S
SURVEY EXPERT ON AMIR

1    the jury. MSJ Ord. 17–18.

2         Citing the Court's statements at the summary judgment hearing, Plaintiffs assert that,

3    because Google argued that the Privacy Policy is unambiguous, Google is precluded at trial from

4    supporting its interpretation of its disclosures (any of them) with extrinsic evidence like Professor

5    Amir's surveys. That is incorrect. It is well settled that once a contract is deemed ambiguous,

6    "extrinsic evidence is always admissible to help ascertain [its] intended meaning." *Roberts v.*

7    *Hollandsworth*, 582 F.2d 496, 499 (9th Cir. 1978); *accord United Comm. Ins. v. Paymaster Corp.*,

8    962 F.2d 853, 857 n.5 (9th Cir. 1992) ("Under California law, extrinsic evidence is always relevant

9    to help explain what a contract means, but not to vary the written terms."); *United States ex rel.*

10   *Rural Utils. Serv. v. Sandwich Isles Comms., Inc.*, 833 F. App'x 718, 719 (9th Cir. Jan. 20, 2021)

11   ("[W]hen a contract is ambiguous, courts can consult extrinsic evidence to determine the parties'

12   intentions." (internal quotation marks omitted)).

13        Google does not understand the Court's statements to suggest otherwise. Rather, Google

14   understood the Court to refer to the principle that "[e]xtrinsic evidence may not be used to contradict

15   *unambiguous* express contractual terms." *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655

16   F.3d 1039, 1051 (9th Cir. 2011) (emphasis added). In other words, if the Court had *agreed* with

17   Google that the contract was unambiguous, but applied an unfavorable interpretation as a matter of

18   law, Google could not challenge that interpretation by arguing the contract is ambiguous after all.

19   That rule does not apply where, as here, the Court *did not* "decide [the contract's meaning] as a

20   matter of law," 2/14/2023 Hr'g Tr. 39:13–18, and instead determined that it *is* ambiguous and that

21   its meaning must be resolved by the jury. As this Court has previously explained, "reject[ing] [the]

22   argument that the contracts are clear and unambiguous merely *expands* the sources of evidence

23   allowed at trial." *Corcoran v. CVS Pharm., Inc.*, 2021 WL 633809, at *5 (N.D. Cal. Feb. 18, 2021)

24   (Gonzalez Rogers, J.) (emphasis added).

25        Indeed, it would be highly prejudicial, and potentially a Due Process violation, to allow

26   Plaintiffs *carte blanche* to present survey evidence to support their contract interpretation, while

27   precluding Google from presenting contrary evidence. That result would be all the more

28   inappropriate because the document Google argued was unambiguous (the Privacy Policy) is

-8-                                          Case No. 4:20-cv-03664-YGR-SVK

*different from* the contract that the Court determined is ambiguous.  *See* MSJ Ord. at 16–19 (rejecting Google's argument that the contract is limited to the Terms of Service, Chrome Privacy Notice, and pre-March 2020 Privacy Policy, and determining it may also incorporate the post-March-2020 Privacy Policy, Search & Browse Privately Help Page, and Incognito Screen).

Plaintiffs' interpretation of the Court's statements would also prohibit Google from using Professor Amir's surveys even to *rebut* their survey evidence. Mot. 2 n.1, 6. That makes no sense. As Plaintiffs themselves argue, "expert testimony carries special dangers to the fact-finding process because it can be both powerful and quite misleading." Mot. 7. If Google could not respond to Plaintiffs' survey evidence with its own contrary evidence, the jury might be swayed to Plaintiffs' interpretation no matter how clearly the language would have favored Google's position on its own.

## B. Professor Amir Is Qualified To Offer His Relevant and Reliable Opinions Based on His Surveys

Plaintiffs do not argue (because they cannot) that Professor Amir is unqualified to offer the opinions in his report, or that his survey was not conducted according to accepted principles in his field. Rather, they seek to exclude his opinions because, according to them, he "did not ask the right questions." Mot. 7. Specifically, Plaintiffs fault Professor Amir for asking whether Google receives relevant types of data during an Incognito browsing session "without clarifying that users should focus on signed-out browsing on non-Google websites." *Id*. Plaintiffs do not provide any support for the position that such specificity is necessary or that it warrants exclusion of Professor Amir's surveys.

First, Plaintiffs take the (incorrect) position that a survey is admissible only if it proves that "Plaintiffs consented to the specific practice alleged in this case." Mot. 3 (internal quotations, emphasis, and alterations omitted). But that is the ultimate issue, and Professor Amir appropriately stopped short of answering it for the jury, so that they can come to their own conclusions on that important question. Indeed, it is well established that a survey need not "be sufficient to establish the ultimate issue . . . to meet the relatively low relevance requirement under Rule 702." *Senne v. Kansas City Royals Baseball Corp.*, 2017 WL 897338, at *24 (N.D. Cal. Mar. 7, 2017), *aff'd in part, rev'd in part and remanded*, 934 F.3d 918 (9th Cir. 2019); *see also Ridgeway v. Wal-Mart*

*Stores, Inc.*, 2016 WL 4728668, at *4 (N.D. Cal. Sept. 12, 2016), *aff'd sub nom. Ridgeway v. Walmart Inc*, 946 F.3d 1066 (9th Cir. 2020). Professor Amir's surveys address issues such as (i) whether users expect Google and other web-service providers to receive the at-issue data when users visit websites while in private browsing mode, and (ii) to what extent modification of certain language on the Incognito Screen and the "Learn More" page impacts users' likelihood of using Chrome in Incognito mode. There can be no dispute that such information has a "tendency to establish . . . fact[s] at issue," *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007), such as consent, reasonable expectations of privacy, the offensiveness of the conduct at issue, and the meaning of the relevant contract. That is enough under Rule 702.

In any event, the Ninth Circuit has repeatedly held that criticism about the questions asked in a consumer survey goes to the weight and not the admissibility of an expert's opinions. *See, e.g.*, *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613 (9th Cir. 2016) (critique that survey has "biased questions and unrepresentative sample" is not "so serious as to preclude the survey's admissibility"); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037–38 (9th Cir. 2010) (that survey "may have been suggestive, and quite possibly produced counterintuitive results . . . go to 'issues of methodology, survey design, reliability, . . . [and] critique of conclusions,' and therefore 'go to the weight of the survey rather than its admissibility.'" (quoting *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001))); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997) ("that the survey . . . asked leading questions [] go only to the weight, and not the admissibility, of the survey"); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) ("it is routine to admit a relevant survey; any technical unreliability goes to weight, not admissability."). In fact, "'as long as they are conducted according to accepted principles,' [] survey evidence should ordinarily be found sufficiently reliable under *Daubert*." *Southland Sod Farms*, 108 F.3d at 1143 n.8 (quoting *Gallo Winery*, 967 F.2d at 1292).

Courts in this district have reached similar conclusions. For example, in *Montera v. Premier Nutrition Corp.*, the court acknowledged the alleged "shortcomings of the survey in terms of questions not asked and assumptions made," but concluded that "these issues may be addressed on

cross-examination" and are not grounds for exclusion. 2022 WL 1225031, at *11 (N.D. Cal. Apr. 26, 2022); *see also Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 5328730, at *4 (S.D. Cal. Oct. 21, 2019) ("The bulk of cases hold that an objection regarding the phrasing of survey questions and the use of potentially ambiguous terms is one that falls into the category of 'survey design.' The Ninth Circuit has specifically found that this issue goes to the weight of the survey, not the admissibility. . . . The Ninth Circuit has held that an objection that a survey asked leading or biased questions goes to the weight, not the admissibility of the survey." (citing *Southland Sod Farms*, 108 F.3d at 1143)); *Medlock v. Taco Bell Corp.*, 2015 WL 8479320, at *5 (E.D. Cal. Dec. 9, 2015) ("The Court finds that Defendants' criticisms of Dr. Moore's wording of the questions goes to the weight of the evidence, and not the admissibility of the survey.").[9]

Second, even if Plaintiffs' critique had any bearing on the admissibility of Professor Amir's opinions, it would be misplaced. First, upon entering an Incognito session, users are automatically signed out of their accounts.[10] Therefore, there was no need for Professor Amir to clarify to survey participants that they should assume they are logged out—the default state in Incognito mode unless the user affirmatively chooses to sign in. Second, Plaintiffs identify no reason for assuming that survey respondents limited their answers to Google websites. The surveys use broad language, asking users questions about what they expect "while in [Incognito] mode," "during an Incognito mode internet browsing session," and while "brows[ing] the web in private browsing mode." *See, e.g.*, Amir Rep. App'x F.1-11, F.2-17, F.3-7. Like Plaintiffs, who disclosed in discovery that they used Incognito mode to visit, *inter alia*, non-Google websites related to ███████████████ ██████████████████████, Olson Decl., Ex. 1 (Pls. Resps. to Interrog. No. 17) at 7–8, survey

---

[9] The only case Plaintiffs cite has nothing to do with the admissibility of consumer surveys. Mot. 9 (citing *Shalaby v. Irwin Indus. Toll Co.*, 2009 WL 7452756, at *11 (S.D. Cal. July 28, 2009)). In *Shalaby*, the plaintiff alleged a manufacturing defect with a handheld torch attached to a gas cylinder. 2009 WL 7452756, at *1. Because the actual torch had been discarded, Plaintiffs' expert conducted testing on "exemplar cylinders." *Id.* *11. The court excluded the expert's testimony in part because the expert "acknowledged during his deposition he did not know if the cylinder [the plaintiff] was using at the time of the accident was the same as the exemplar cylinders that he examined and tested." *Id.*

[10] *See, e.g.*, https://support.google.com/chrome/answer/9845881?hl=en#zippy=%2Chow-incognito-mode-works ("If you're browsing in Chrome Incognito mode, you are, by default, not signed into any accounts or sites.").

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S SURVEY EXPERT ON AMIR

1   respondents are likely to have used private browsing mode to visit any number of non-Google

2   websites while in a private browsing mode, and were thinking of those websites that they visit in

3   answering survey questions. Plaintiffs are free to argue to the jury that, despite the broad language

4   Professor Amir's survey used, the participants would somehow have assumed they were visiting

5   only Google websites while logged into their Google accounts. But that is not a basis for exclusion.

6   **V.      CONCLUSION**

7           For the foregoing reasons, Google respectfully requests that the Court deny Plaintiffs'

8   Motion.

9

10

11   DATED:  September 28, 2023              Respectfully submitted,

12                                          QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP

13
                                           By _____/s/ Andrew H. Schapiro_____
14                                                 Andrew H. Schapiro

15
                                           Andrew H. Schapiro (admitted *pro hac vice*)
16                                         andrewschapiro@quinnemanuel.com
                                           Teuta Fani (admitted *pro hac vice*)
17                                         teutafani@quinnemanuel.com
                                           Joseph H. Margolies (admitted *pro hac vice*)
18                                         josephmargolies@quinnemanuel.com
                                           191 N. Wacker Drive, Suite 2700
19                                         Chicago, IL 60606
                                           Telephone: (312) 705-7400
20                                         Facsimile: (312) 705-7401

21
                                           Diane M. Doolittle (CA Bar No. 142046)
22                                         dianedoolittle@quinnemanuel.com
                                           Sara Jenkins (CA Bar No. 230097)
23                                         sarajenkins@quinnemanuel.com
                                           555 Twin Dolphin Drive, 5th Floor
24                                         Redwood Shores, CA 94065
                                           Telephone: (650) 801-5000
25                                         Facsimile: (650) 801-5100

26
                                           Stephen A. Broome (CA Bar No. 314605)
27                                         stephenbroome@quinnemanuel.com
                                           Viola Trebicka (CA Bar No. 269526)
28

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S
                                                      SURVEY EXPERT ON AMIR

1

violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Rachael L. McCracken (CA Bar No. 252660)
rachaelmccracken@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
D. Seth Fortenbery (admitted *pro hac vice*)
sethfortenbery@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

Case No. 4:20-cv-03664-YGR-SVK
GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S SURVEY EXPERT ON AMIR