**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br>Defendant. | Case No.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' REPLY ISO MOTION TO EXCLUDE IN PART THE OPINIONS OF GOOGLE'S SURVEY EXPERT ON AMIR (DKT. 976) (REDACTED)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: November 15, 2023<br>Time: 9:00 a.m.<br>Location: Courtroom 1 – 4th Floor |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 2

   A.   Amir's Surveys Are Not Relevant to Any Issue Being Tried. ............................ 2

      1.   Amir's Surveys Cannot Be Used to Prove Implied Consent, Let Alone an Unpled, Untimely, and Meritless Waiver Defense. ............................................. 2

      2.   Amir's Surveys Cannot Be Used as Extrinsic Evidence to Support Google's Interpretation of the Disclosures. .................................................................... 6

      3.   Amir's Surveys Cannot Be Used for the New Issues Google Raises ............. 9

   B.   Amir's Surveys Did Not Ask About the "Specific Practice" at Issue ................. 10

III. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armacost v. Depuy Synthes Sales, Inc.*,
   2018 WL 11471582 (N.D. Cal. June 7, 2018) (Gonzalez Rogers, J.) ...................................3

*Bailey Venture Partners XVI, LLC v. Myall*,
   2023 WL 3772026 (N.D. Cal. May 1, 2023) ...........................................................................7

*Borges v. Cnty. of Humboldt*,
   2017 WL 4552006 (N.D. Cal. Oct. 12, 2017) (Gonzalez Rogers, J.) ....................................3

*Campbell v. Facebook Inc.*,
   315 F.R.D. 250 (N.D. Cal. 2016) .......................................................................................1, 5

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................................................2, 10

*Congdon v. Uber Technologies, Inc.*,
   291 F. Supp. 3d 1012 (N.D. Cal. 2018) (Gonzalez Rogers, J.) ..............................................7

*Corcoran v. CVS Pharmacy, Inc.*
   2021 WL 633809 (N.D. Cal. Feb. 18, 2021) .......................................................................7, 8

*In re Google Inc.*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .....................................................................10

*In re Google Inc., Gmail Litigation*,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........................................................................1

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................................................5

*Medlock v. Taco Bell Corp.*,
   2015 WL 8479320 (E.D. Cal. Dec. 9, 2015) ........................................................................11

*Old Republic Insurance Co. v. FSR Brokerage, Inc.*,
   80 Cal. App. 4th 666 (2000) ...................................................................................................3

*Roberts v. Hollandsworth*,
   582 F.2d 496 (9th Cir. 1978) ..................................................................................................7

*Senne v. Kansas City Royals Baseball Corp.*,
   934 F.3d 918 (9th Cir. 2019) ..................................................................................................4

*United Commercial Insurance Service, Inc. v. Paymaster Corp.*,
  962 F.2d 853 (9th Cir. 1992) ............................................................................................... 7

*USA. v. Sandwich Isles Communications, Inc.*,
  833 F. App'x 718 (9th Cir. 2021) ........................................................................................ 7

*Wallace v. Countrywide Home Loans Inc.*,
  2012 WL 11896333 (C.D. Cal. Aug. 31, 2012) ............................................................ 2, 11

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011) ............................................................................................. 7

*In re Yahoo Mail Litigation*,
  308 F.R.D. 577 (N.D. Cal. 2015) ............................................................................... 1, 4, 5

iii
Plaintiffs' Reply ISO Motion to Exclude In Part the Opinions of
Google's Survey Expert 4:20-cv-03664-YGR-SVK

I.     INTRODUCTION

As detailed in Plaintiffs' Motion, Amir's Surveys should be excluded for three reasons: (1) implied consent is irrelevant to the upcoming trial; (2) Google is prohibited from using extrinsic evidence to interpret the disclosures; and (3) Amir asked irrelevant questions untethered to the specific practice at issue. Google's Opposition tries to evade these core problems by overlooking well-settled law, rewriting this Court's rules, and seeking to re-litigate aspects of the Court's Rule 23(b)(2) certification. Google's efforts fall short.

First, for implied consent, there appears to be no dispute that Amir's Surveys are irrelevant to whether any Named Plaintiff impliedly consented. Google instead argues that implied consent remains at issue because, in its view, absent class members' implied consent would preclude injunctive relief. Courts disagree. "***To the extent [Google] raises implied consent as an issue requiring individual inquiries, that issue is irrelevant to the Rule 23(b)(2) analysis* . . . .**" *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 269 (N.D. Cal. 2016). Google's "focus on whether a potential class member has consented to [its] interceptions . . . loses sight of the purpose of Rule 23(b)(2) . . . ." *In re Yahoo Mail Litigation*, 308 F.R.D. 577, 599 (N.D. Cal. 2015).

Second, seeking to present Amir's Surveys as extrinsic evidence for interpreting the disclosures, Google tries to rewrite this Court's rule. As the Court cautioned at summary judgment: "***I do not let people change their positions at trial. By arguing that, Google is saying that they will not even attempt to offer extrinsic evidence as to the meaning of those terms***." May 12, 2023 Hearing Tr. at 13:25-14:7. After rolling the dice and arguing the contract is unambiguous, Google now claims this rule does not apply because "the Court determined that the contract is ambiguous as a matter of law, and Google now has no choice but to accept that determination for purposes of trial." Opp. at 7 n.8. Google's argument makes no sense because it makes the Court's rule meaningless. Parties could always evade the rule by that logic.

Third, Amir's failure to ask about the specific practice at issue is not simply a "technical" reliability problem to be addressed on cross examination. Opp. at 10-11. Courts exclude surveys that "suffer[] from an analytical gap between the design of the question asked and the metric

1

relevant to this case." *Wallace v. Countrywide Home Loans Inc.*, 2012 WL 11896333, at *3 (C.D. Cal. Aug. 31, 2012). That is precisely what happened here. Amir did not ask about the "specific practice alleged in this case," *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014), which concerns *signed-out* private browsing on *non-Google* websites. Google ignores Plaintiffs' authorities which explain that "consent is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct.'" Dkt. 969 (MSJ Order) at 13 (citing Restatement (Second) of Torts § 892A); *see also* Mot. at 7-8. Amir's failure to ask about the "particular conduct" (signed-out private browsing on non-Google websites) warrants exclusion.

## II.     ARGUMENT

### A.    Amir's Surveys Are Not Relevant to Any Issue Being Tried.

#### 1.    Amir's Surveys Cannot Be Used to Prove Implied Consent, Let Alone An Upled, Untimely, and Meritless Waiver Defense.

Plaintiffs explained why Amir's Surveys are irrelevant to whether any Named Plaintiff impliedly consented (Mot. at 5), and Google does not respond to this argument, conceding the point. That is of course correct, particularly because the Named Plaintiffs did not participate in any of Amir's Surveys.

Plaintiffs also explained how implied consent is legally irrelevant to certain claims, including breach of contract (Mot. at 5). Google's Opposition cites no authority holding that implied consent is an available defense to a contract claim. This failure confirms that Google led the Court astray in its prior class certification briefing, where Google suggested to the Court (incorrectly) that implied consent is a valid defense to all claims, including breach of contract. It is not.

So Google pivots to waiver. Unable to defend its earlier position on implied consent, Google invokes a new defense – implied waiver – which Google never pled. Seeking to bury the lede in a footnote, Google suggests that implied consent can be "*styled . . .* under the *substantively equivalent* doctrine of waiver," which (unlike implied consent) can be asserted as a defense to contract claims. Opp. at 6 n.6 (emphasis added).

Google's pivot to implied waiver suffers from at least three problems.

First, waiver is a different and much more demanding standard. Google tellingly cites no authority describing implied consent and waiver as "substantially equivalent." *See id.* (exclusively citing Google's prior brief to the Ninth Circuit). The differences are easy to spot. Google has argued that implied consent is available where "there is a panoply of sources from which [] users could have learned of Google's interceptions," such as "news articles." Dkt. 665 at 12 (quoting *In re Google Inc., Gmail Litig.*, 2014 WL 1102660, *17 (N.D. Cal. Mar. 18, 2014)). For waiver, Google would need to prove by "clear and convincing evidence" that Class members "*intentional[ly] relinquish[ed]*" their contractual rights, identifying "acts" that are "so inconsistent with an intent to enforce the [contractual] right as to induce a reasonable belief that such right has been relinquished." *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 678 (2000) (emphases added).

Second, Google never pled this defense. Google did plead an "Waiver/Estoppel" defense in its Answer, but that defense solely focused on specific provisions in Google's Terms of Service, which means express waiver. Dkt. 531 at 33. It is too late for Google to assert a new implied waiver defense. *See Borges v. Cnty. of Humboldt*, 2017 WL 4552006, at *2 (N.D. Cal. Oct. 12, 2017) (Gonzalez Rogers, J.) (affirmative defense "deemed waived" where, as here, the defendants "failed to assert [the defense] in their answer" and "waited until the eve of trial to raise the [] defense"); *Armacost v. Depuy Synthes Sales, Inc.*, 2018 WL 11471582, at *4 (N.D. Cal. June 7, 2018) (Gonzalez Rogers, J.) (defendants "waiv[]ed that affirmative defense" by "not rais[ing] [it] as a defense" in their Answer). There is no excuse for Google's failure to plead this defense sooner, particularly because Google appears to have recognized its error by (at latest) January 2023. In response to Plaintiffs' Rule 23(f) petition, Google tacitly acknowledged that it should have argued implied waiver instead of implied consent. *See* Case No. 22-80147 (9th Cir.), Dkt. 3 at 3. Google could have promptly sought leave to amend its Answer, but did not. That failure is even more inexcusable because Plaintiffs amended their Complaint one month later in

February 2023, and Google could have used that opportunity to fix its Answer. Dkt. 880. Google has waived any implied waiver defense.

Third, Google's implied waiver argument is even more doomed because Google must prove two waivers: one of the contractual promise not to collect private browsing information, and another of the "explicit consent" requirement in the form contract. Dkt. 83-8 at 16. "In order to establish that an antiwaiver clause is not enforceable, the party asserting a waiver must show a clear intent to waive both the clause and the underlying contract provision." 13 Williston on Contracts § 39:36 (4th ed.). Google has never argued (nor pled) that users separately waived the "explicit consent" requirement.

For these reasons, Google may not rely on Amir Survey's in support of its belated and unpled implied waiver defense.

Equally meritless is Google's argument that Amir's Surveys must be admitted since implied consent by absent class members precludes any injunctive relief. Opp. at 6. The Ninth Circuit has "rejected" that argument "in no uncertain terms." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 937-38 (9th Cir. 2019). "***[W]ith respect to 23(b)(2) in particular, [Google's] dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule.*** Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id.* (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)) (emphasis added).

*In re Yahoo Mail Litigation*, 308 F.R.D. 577, 599 (N.D. Cal. 2015) is squarely on point. Yahoo opposed class certification under Rule 23(b)(2) by making the same argument Google raises, claiming "the need for individualized inquiries would make it too difficult to determine whether any class member has a claim and has suffered a common injury." *Id.* The court rejected that argument, applying the binding Ninth Circuit law summarized above:

> ***Yahoo's focus on whether a potential class member has consented to Yahoo's interception and use of his or her emails loses sight of the purpose of Rule 23(b)(2).*** It may be the case that some class members, i.e., individuals who sent or received emails from Yahoo Mail subscribers during the class period, did so knowing that Yahoo would

intercept, scan, and disclose the contents of their emails to third parties. However, "[t]he rule does not require us to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them."

*Id.* at 599. The same outcome is warranted here. Google's "focus on whether a potential class member has consented to [its] interceptions" similarly "loses sight of the purpose of Rule 23(b)(2)." *Id.* (emphasis added).

Judge Hamilton rejected the same argument in *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 269 (N.D. Cal. 2016). There, Facebook opposed injunctive relief by arguing that "many putative class members impliedly consented to the challenged practices," and that if "some class members may have 'welcomed' the challenged scanning practices," then injunctive relief would be improper. *Id.* at 269. The court disagreed: "***to the extent that Facebook raises implied consent as an issue requiring individual inquiries, that issue is irrelevant to the Rule 23(b)(2) analysis***, which does not ask whether common issues predominate over individual ones." *Id.* (emphasis added). Google's counsel in this case previously acknowledged the same, agreeing in open court that "there is not an implied consent defense that I can think of that is specific to injunction." Oct. 11 Tr. at 20:4-5. He was correct then. Google's brief is wrong.

Google's final argument is that Amir's Surveys are at least relevant to the "scope" of any injunction. Opp. at 7. Set aside Google's reliance on an inapposite case about prisoners' rights,[1] as well as Google's reliance on a dissenting opinion (which Google did not signify by parenthetical or otherwise).[2] The main problem with Google's argument is that it has nothing to do with whether the jury should hear from Amir. If the Court wants to consider Amir's Surveys for purposes of crafting the injunction, the Court can do that without the jury present or even after the jury returns its verdict.[3] Presenting Amir Survey's to the jury risks leading them astray

---

[1] *See Lewis v. Casey*, 518 U.S. 343, 347 (1996).

[2] Opp. at 6 (citing dissent in *United States v. AMC Ent., Inc.*, 549 F.3d 760 (9th Cir. 2008)).

[3] That assumes Amir is not excluded for asking irrelevant questions. *See infra* Section II.B

into relying on his surveys for an improper purpose (such as determining whether the Named Plaintiffs or absent class members impliedly consented).

### 2. Amir's Surveys Cannot Be Used as Extrinsic Evidence to Support Google's Interpretation of the Disclosures.

This Court made itself crystal clear. "If you take a position *at summary judgment* that a term is unambiguous such that the Court can decide it as a matter of law, you will be excluded *at trial* from offering extrinsic evidence to interpret that claim." Feb. 14, 2023 Hearing Tr. at 39:13-18. The Court reminded Google at the summary judgment hearing: "*I do not let people change their positions at trial. By arguing that, Google is saying that they will not even attempt to offer extrinsic evidence as to the meaning of those terms*." May 12, 2023 Hearing Tr. at 13:25-14:8. Google agreed to this rule, responding: "Correct." Yet Google now wants a do-over. Having rolled the dice at summary judgment, Google now claims that extrinsic evidence (including Amir's Surveys) are fair game because "the Court determined that the contract is ambiguous as a matter of law, and Google now has no choice but to accept that determination for purposes of trial." Opp. at 7 n.8.

Google is slicing the bologna too thin, where Google's interpretation renders the Court's rule meaningless. There were only two possible outcomes on Google's summary judgment motion: either (A) the Court would agree that Google unambiguously discloses the at-issue practices, and the case would be over, or (B) the Court would disagree and the case would proceed to trial. Caught between a rock and a hard place, Google posits a third but nonsensical scenario. It suggests the rule would apply if "the Court had agreed with Google that the contract was unambiguous, but applied an unfavorable interpretation as a matter of law." Opp. at 8. That scenario makes no sense. Plaintiffs did not move for summary judgment on the meaning of the contract, so the Court was not asked to make "an unfavorable interpretation [against Google] as a matter of law." And even if the Court had done so, there would be no trial on express consent because Plaintiffs would have won that issue.

Google's interpretation leaves no room for the Court to enforce its clear rule:

> I do not let parties waffle on their positions, that is, you cannot take one position at summary judgment and then at trial, because you lost, then say, "Oh, no, I was wrong. It is ambiguous and therefore I get to offer extrinsic evidence." Does everybody understand?
>
> MR. BOIES: Yes, Your Honor.
>
> MR. BROOME: Yes, Your Honor.

Feb. 14, 2023 Hearing Tr. at 39:19-25. Google took "one position at summary judgment." Google "lost." Now "at trial," Google wants to be able to say "It is ambiguous and therefore I get to offer extrinsic evidence." This Court's rule prohibits Google's unabashed about-face.

Google's parade of cases about extrinsic evidence cannot help Google; *none* permitted a party to offer extrinsic evidence at trial after taking the position at summary judgment that the contract was unambiguous. Opp. at 7-8.[4] Google's reliance on this Court's decision in *Corcoran v. CVS Pharmacy, Inc.* is particularly misplaced. 2021 WL 633809, at *5 (N.D. Cal. Feb. 18, 2021) (Gonzalez Rogers, J.). After this Court "rejected plaintiff's argument that the contracts are clear and unambiguous," the defendant moved *in limine* to preclude the plaintiff from arguing the contracts "are clear or unambiguous." *Id.* This Court denied the motion, explaining it was "not inclined to . . . artificially [] limit[] counsel's vocabulary." *Id.* That reasoning would apply here if Plaintiffs were seeking to preclude Google from arguing that the contract is unambiguous. But that is not Plaintiffs' argument. Google remains free to argue the contract unambiguously

---

[4] All of the cases involved different postures in terms of the parties' arguments about ambiguity and reliance on extrinsic evidence. One case turned on the court's ruling that the contract was *un*ambiguous. *USA. v. Sandwich Isles Commc'ns, Inc.*, 833 F. App'x 718, 719 (9th Cir. 2021). Another case involved two parties cross-moving for summary judgment, each taking the position the contract was unambiguous. *Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1020 (N.D. Cal. 2018) (Gonzalez Rogers, J.). Another involved a defendant who argued the contract was ambiguous, and at the pleadings stage. *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1052 (9th Cir. 2011). Two of the cases cited extrinsic evidence to reject a defendant's argument that the contract was unambiguous. *Roberts v. Hollandsworth*, 582 F.2d 496, 499 (9th Cir. 1978); *Bailey Venture Partners XVI, LLC v. Myall*, 2023 WL 3772026, at *5 (N.D. Cal. May 1, 2023). In the final case, the factual issues were "undisputed," and the court relied on "undisputed extrinsic evidence" (a letter), which is very different from the disputed surveys at issue in this motion. *United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 857 (9th Cir. 1992).

discloses the challenged practices, which is consistent with the position Google took at summary judgment.

Google next asserts that it would be "a Due Process violation" to allow Plaintiffs to rely on their survey expert "while precluding Google from presenting contrary evidence." Opp. at 8. Google cites no authority for that bold proposition. Aside from that fundamental flaw, there are two more problems with Google's argument. First, Plaintiffs (unlike Google) did not move for summary judgment by arguing the disclosures are unambiguous, so the Court's rule does not apply to Plaintiffs. Second, Google can still present "contrary evidence," including from Amir. He submitted a separate report criticizing Plaintiffs' survey expert, and Plaintiffs are not seeking to exclude those Amir opinions (except of course insofar as Amir would rely on his own affirmative surveys).

Finally, Google's suggestion that it only argued the Privacy Policy was unambiguous—as opposed to the rest of the form contract—Opp. at 8-9, is wrong. As this Court acknowledged, Google relied on other documents, too. Dkt. 969 at 4, 16. For example, Google argued that the Splash Screen "*makes clear* that privacy in Incognito has limits" (Dkt. 907-3 at 6), and Google argued that the Search & Browse Privately page "*makes clear* that [private browsing modes] do not provide absolute privacy," *id.* at 8 (emphases added). Google also relied on the Chrome Privacy Notice, which it contended is part of the same form contract as the Privacy Policy. Dkt. 969 at 4. When this Court asked Google "to tell me what the definition of [privacy] is from Google's perspective to which you are basically stipulating if I have to try this case," counsel responded that the Privacy Policy "does not explain what 'privacy' is" and pointed the Court to the "Chrome Privacy Notice" for "that explanation." May 12 Hearing Tr at 14:23-15:6. Google did not argue that only some portion of the contract is unambiguous; this Court should reject Google's efforts to unwind its summary judgment position.

### 3. Amir's Surveys Cannot Be Used for the New Issues Google Raises.

Unsatisfied with that attempt to skirt the Court's rule, Google tries again. Google argues for the first time that Amir's Surveys are relevant to other issues like whether "websites consented to the alleged conduct." Opp. 5. That makes no sense. Amir did not survey website publishers.

The other new issues Google identifies are just a Trojan Horse to accomplish Google's true aim—using the surveys as extrinsic evidence to interpret the disclosures, in violation of the Court's rule. Google claims the Surveys are relevant to (i) whether Google had "permission" to collect and use the data, (ii) whether "users reasonably expected their communications" would not be overheard or recorded by Google, (iii) whether Google's actions were "highly offensive", and (iv) whether Plaintiffs had a "reasonable expectation of privacy" in their private browsing data. Opp. 5. These issues all implicate the meaning of the form contract, as Google previously acknowledged. *See, e.g.*, Dkt. 907-3 (Google's MSJ) at 23 ("The only reasonable privacy expectation Plaintiffs and Class Members could have is that Incognito and other PBMs perform the specific, privacy-enhancing functions *described in Google's disclosures . . . .*" (emphasis added)); *id.* at 10 n.8 (applying Google's express consent arguments to the CDAFA's "without permission" language).

This Court has also explained how these issues implicate the disclosures. *See, e.g.*, Dkt. 969 (MSJ Order) at 35 ("Because evidence exists to show that Google did not *adequately disclose* to users that it was tracking them as they privately browsed, there is at least a triable issue as to whether the intrusion was unacceptable from a public policy perspective." (emphasis added)); *id.* at 28 (for CIPA § 632 dispute, reasoning that the parties' "arguments merely highlight that a material *dispute exists over Google's disclosures* here" (emphasis added)). If Google is permitted to present Amir's Surveys on these new issues, there will be no way to prevent the jury from using them as extrinsic evidence to interpret Google's disclosures, which violates the Court's rule.

Desperate for any hook on which to place Amir, Google takes one last shot, latching onto his rebuttal opinions criticizing Plaintiffs' experts Keegan (survey) and Schneier (privacy) Opp. at 5. But Plaintiffs are not seeking to exclude Amir's rebuttal opinions. *See* Mot. at 2 n.1 ("Plaintiffs are not seeking to exclude Amir's rebuttal opinions, except of course insofar as he intends to rely on his three surveys discussed in this motion"). That Plaintiffs may rely on Keegan's survey to interpret the disclosures is just a straightforward application this Court's rule, which Google understood and accepted.[5] That outcome is neither surprising nor unfair.

### B. Amir's Surveys Did Not Ask About the "Specific Practice" at Issue.

Even if Amir's Surveys were relevant to an issue being tried (they are not), they should be excluded because Amir asked irrelevant questions. To meet its burden for consent, Google must prove that Plaintiffs "consent[ed] to the ***specific practice*** alleged in this case." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (emphasis added). The "specific practice" challenged is Google's collection of private browsing data during (1) users' visits to ***non-Google*** websites while (2) ***signed out*** of their Google accounts. As Plaintiffs' Motion explained, ***and Google now concedes***, Amir did not ask about this scenario. Amir instead asked about Google's receipt of Incognito data generally, including from *signed-in* users and visits to *Google websites*, like Google.com (Search) and YouTube.com. Amir's Surveys thus transform consent into an "all-or-nothing proposition," undermining well-settled law. *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (quoting *In re Pharmatrack, Inc.*, 329 F.3d at 9, 19 (1st Cir. 2003)).

Google's Opposition ignores Plaintiffs' authorities on consent, including this Court's discussion of how "consent is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct.'" Dkt. 969 (MSJ Order) at 13 (citing Restatement (Second) of Torts § 892A); *see also* Mot. at 7-8. Google instead defends Amir by

---

[5] While irrelevant to this Motion, Google is wrong to suggest that Schneier will opine on the reasonable user interpretation of Google's disclosures. The Court excluded that opinion, and Plaintiffs' draft witness list is consistent with that limitation by the Court. *See* Dkt. 991-6 (Draft Witness List) at 13.

claiming that he "appropriately stopped short of answering [the ultimate issue of consent] for the jury, so that [the jury] can come to their own conclusions on that important question." Opp. 9. The problem, however, is that Amir's surveys will not help the jury decide consent in this case. If the jury were to rely on Amir's Surveys, they would be deciding consent for a very different case—one that includes signed-in browsing and Google.com browsing.

Google's Opposition also contradicts the positions it took in discovery. Google repeatedly (sometimes successfully) opposed discovery by arguing the material Plaintiffs sought related only to signed-in browsing or browsing on Google websites. For example, in a 30(b)(6) letter brief, Google argued that one proposed topic related to "signed-in users" and therefore "has nothing to do with the central allegation in this case or Plaintiffs' class definition, which is limited to signed-out users." Dkt. 411-1 at 11. Google similarly argued that any topics related to Google "Search" were "improper and outside the scope of the[] class definition." Dkt. 411 at 7. Google was always quick to carve out these issues from discovery; yet Google did not exclude them from its expert survey. Google cannot have it both ways.

Google's slew of cases addressing the "technical" reliability of surveys sidesteps Plaintiffs' argument. Opp. at 10-11. Plaintiffs' complaint is not one of "technical" survey design. Plaintiffs are pointing out that for a survey to be admitted, "the questions" asked must be "relevant to the claims alleged in th[e] case." *Medlock v. Taco Bell Corp.*, 2015 WL 8479320, at *4 (E.D. Cal. Dec. 9, 2015) (case cited by Google). Courts exclude surveys that "suffer[] from an analytical gap between the design of the question asked and the metric relevant to this case." *Wallace v. Countrywide Home Loans Inc.*, 2012 WL 11896333, at *3 (C.D. Cal. Aug. 31, 2012). That is precisely what happened here, where Amir's Surveys failed to account for blackletter law on consent—law that Google does not even dispute.

Google's final argument is easily dispatched. Google claims that "Plaintiffs identify no reason for assuming that survey respondents limited their answers to Google websites [because] [t]he surveys use broad language . . . ." Opp. 11. That is incorrect. Plaintiffs' Motion explained how Amir primed respondents to focus on Google websites. He asked them to consider what

happens when they are "watching a video or shopping for a product"—two activities commonly performed on Google websites (i.e., YouTube and Google Shopping). Mot. at 9. And Google's focus on how Incognito "defaults" to signed-out browsing is misplaced because Amir did not gauge users' awareness of that fact either, meaning there is no basis for Google to claim respondents knew that. At bottom, Plaintiffs are focused on signed-out browsing, and Amir fatally erred by ignoring that critical distinction.

In any event, even if his surveys did use "broad language", as Google claims, that would only bolster Plaintiffs' argument. Surveys focused on consent should not use "broad" language; they should ask about the "specific practices" at issue. Amir's failure to do that explains the discrepancy between his results and Plaintiffs' survey expert, who after asking about signed-out private browsing on non-Google websites, concluded that ▮ of respondents were misinformed about the specific practice at issue. Dkt. 608-10 (Keegan Report).

### III. CONCLUSION

Plaintiffs respectfully ask the Court to exclude Amir's three surveys, summarized in Opinions 2-4 of his April 15, 2022 expert report and in paragraphs 3-16 and 49-86. Google and Amir should be precluded from relying on these surveys for any purpose.

Dated: October 11, 2023

By /s/ Mark Mao
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street

Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330


John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.

|   |   |
|---|---|
| 1 |  |
| 2 | 201 N Franklin Street, 7th Floor |
|   | Tampa, FL 33602 |
| 3 | Telephone: (813) 223-5505 |
|   | Facsimile: (813) 222-4736 |

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

14
Plaintiffs' Reply ISO Motion to Exclude In Part the Opinions of
Google's Survey Expert 4:20-cv-03664-YGR-SVK