# EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3
 4   CHASOM BROWN, WILLIAM BYALL,
     JEREMY DAVIS, CHRISTOPHER
 5   CASTILLO, and MONIQUE
     TRUJILLO individually and on
 6   behalf of all other similarly  No.
     situated,                      5:20-cv-03664-LHK-SVK
 7
                   Plaintiff,
 8
           vs.
 9
     GOOGLE LLC,
10
                   Defendant.
11   _____/
12
13
14
15       VIDEO-RECORDED DEPOSITION OF JEREMY DAVIS
16                REMOTE ZOOM PROCEEDING
17                 Little Rock, Arkansas
18               Friday, January 7, 2022
19
20
21
22
23   REPORTED BY:
24   LESLIE ROCKWOOD ROSAS, RPR, CSR 3462
25   Pages 1 - 183                    Job No. 5019103
```

Page 1

```
 1        Q.   When you have an incognito session open, about
 2   how long do you usually keep it open?
 3             Let me make that more clear.  Do you ever keep
 4   tabs or windows open for -- for more than a day?
 5        A.   Yeah, there's occasions where I do.  As a            12:29:03
 6   general practice, I generally will close out of the
 7   browser session.  But there have been occasions where I'm
 8   in the middle of researching something or in the middle
 9   of working on something and I'll leave it open, suspend
10   the computer, and come back to it the next day.              12:29:22
11        Q.   How about leaving tabs or windows open for more
12   than a week?  Is that something that you commonly do?
13        A.   There are occasions in which I have, yes.
14        Q.   Is that common or -- or rare?
15        A.   It's -- I would say it's -- it's on the rarer      12:29:47
16   side, yeah.  Because most of the times I'm getting in,
17   getting out, doing what I need to do.  But it does --
18   there are occasions in which I'll -- yeah, I'll leave
19   them long running.
20        Q.   So I think earlier in the deposition today you     12:30:09
21   were telling us about your understanding of the -- the
22   incognito splash screen.  Do you recall that?
23        A.   Yes.
24        Q.   And prior to your involvement in this case, was
25   that splash screen the only document that contributed to    12:30:47
```

Page 80

1  your understanding or your belief about what incognito

2  does, or were there other documents that you had

3  reviewed?

4          MR. LEE:  Objection to form, mischaracterizes

5  his prior testimony.                                         12:31:11

6          You can answer.

7          THE WITNESS:  Yeah.  No, so I had reviewed both

8  the Google Terms of Service, the Google Privacy Policy,

9  as well as material, maybe blog posts, on incognito.  So

10 I was not solely informed by the splash screen.              12:31:27

11     Q.   BY MR. SCHAPIRO:  And this is -- so this prior

12 to involvement in the lawsuit, you had looked at, you

13 say, the Privacy Policy and maybe some blog posts?

14     A.   That's correct.

15     Q.   By the way, you said that when you saw the story   12:31:55

16 or advertisement about this lawsuit, it peaked your

17 interest.  Had you, prior to that point, ever seen any

18 articles or blog posts suggesting that incognito -- not

19 by Google, suggesting that incognito mode might not be

20 private in the way that you expected?                        12:32:23

21         MR. LEE:  Hold on.

22         I just want to object to the extent that you are

23 mischaracterizing Mr. Davis' testimony.  He did not -- he

24 did not testify that he responded to an advertisement.

25         MR. SCHAPIRO:  I withdraw the point about the        12:32:37

Page 81

Veritext Legal Solutions
866 299-5127

Page 81

Veritext Legal Solutions
866 299-5127

```
 1    advertisement.
 2         Q.  So my question, nevertheless, is:  You said when
 3    you saw this, I'll just say a story about this lawsuit,
 4    it piqued your interest.  And I was asking prior to that
 5    point, had you ever seen any articles or blog posts,                 12:32:53
 6    presumably not from Google, suggesting -- causing you to
 7    suspect or suggesting that incognito might not be private
 8    in the way you had thought?
 9         A.  Fairly recently, prior to the case, I believe
10    there was a journal entry or a hypothetical post that                12:33:19
11    said it was hypothetically possible that Google could be
12    aggregating information.  I think there was an article
13    written about that.  And I even think I recall reading
14    Google responding to that article and saying that they --
15    perhaps that they did not.                                           12:33:42
16             And so that's my recollection of any materials
17    that might have indicated that maybe things were not as
18    they appear with regard to incognito.
19         Q.  And do you remember about how long before the
20    lawsuit that was?                                                    12:34:04
21         A.  I'm pretty sure it was within a year.  Like, it
22    was less than a year.
23         Q.  And then since filing the lawsuit, I believe you
24    told us earlier that you continued to use Chrome because
25    you didn't want to change your -- your activity.  Am I               12:34:35
```

Page 82

```
 1   characterizing that right?
 2        A.   Yeah.  I thought it would be best to be
 3   consistent with my activity during the course of the
 4   lawsuit.
 5        Q.   While you're continuing to use Chrome, have you      12:34:52
 6   taken any -- have you taken any steps to -- to prevent
 7   what you contend is the improper collection of your
 8   information?
 9        A.   Again, I'll restate.  I haven't changed my
10   behavior.  I've kept my behavior consistent since the         12:35:17
11   lawsuit started.
12        Q.   And by that, I assume that means including the
13   things like extensions, add-ons, settings, et cetera?
14        A.   Yeah, I have not taken additional action or
15   leveraged any of those capabilities.  If you're -- if         12:35:34
16   you're specifically asking me, like, have I installed the
17   ad blocker or the ad -- extension add-on, the answer is
18   no.  I have not made use of those things you mentioned
19   earlier in the call.
20        Q.   Mr. Davis, do you believe that you entered into     12:36:01
21   a contract with Google?
22        A.   The answer is yes.  And not only do I believe
23   that, I believe the Court has affirmed that a contract
24   exists.  Not excluding -- not exclusive to, but I believe
25   including the splash screen, the Google Terms of Service     12:36:23
```

Page 83

```
 1   and the Google Privacy Policy.
 2          I'm not a lawyer.  I'm sure there may be other
 3   documents that the Court considers constitution to that
 4   contract, but that's my understanding in this case.
 5       Q.  Recognizing that you're not a lawyer, but do you      12:36:40
 6   have any thoughts, as the person who entered into the
 7   contract, of what other documents might be part of it?  I
 8   think you just listed the splash screen, the Google Terms
 9   of Service and the Google Privacy Policy.
10          You said maybe there are some others.  Any            12:37:00
11   thoughts on what those might be?
12       A.  Oh, yeah, the other one I think that's of
13   interest may be in the health file related to Google
14   Analytics.  I believe it made specific mention of the
15   Google Privacy Policy.  That would be one additional I      12:37:17
16   would add to that list.
17          And it said that Google Analytics would adhere
18   to the Privacy Policy, which clearly states that I am put
19   in control of what information Google collects about me
20   and that we can use Google services to manage our           12:37:38
21   privacy.  And if I choose to browse privately, I can
22   browse the web privately using Chrome in incognito mode.
23          And so the way that I would assert that privacy
24   would be to use incognito mode.
25       Q.  And in connection with this contract, did you       12:38:04
```