# EXHIBIT 2

```
 1                UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3
 4   CHASOM BROWN, WILLIAM BYATT,       ) Case No.
     JEREMY DAVIS, CHRISTOPHER          ) 5:20-cv-03664-LHK-
 5   CASTILLO, and MONIQUE TRUJILLO    ) SVK
     individually and on behalf of      )
 6   all other similarly situated,      )
                                        )
 7           Plaintiffs,                )
                                        )
 8           vs.                        )
                                        )
 9   GOOGLE LLC,                        )
                                        )
10           Defendant.                 )
     _____    )
11
12
13       VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
14            DEPOSITION OF MONIQUE TRUJILLO
15
16             Friday, February 11, 2022
17    Remotely Testifying from Los Angeles, California
18
19
20
21
22
23   Reported By:
24   Hanna Kim, CLR, CSR No. 13083
25   Job No. 5077549
```

Page 1

```
1    San Dimas, California.
2        Q.   Okay.  And how long have you worked there?
3        A.   Two years.
4        Q.   Okay.  And what's your title?
5        A.   I'm a regional manager.                      09:39:18
6        Q.   And what does that entail, being a
7    regional manager at Curative?
8        A.   That entails overseeing 45 staff, managing
9    seven to eight sites at a time.
10       Q.   You said man- -- managing seven or eight     09:39:52
11   sites at a time?
12       A.   Seven to eight sites at a time, yes.
13       Q.   Okay.  And those sites, are they -- are
14   they labs, lab sites, or something else?
15       A.   They are -- there are mobile labs and        09:40:04
16   walk-up sites.
17       Q.   Okay.  And what do the mobile sites --
18   mobile labs and walk-up sites, what do they
19   facilitate, or what are -- what are folks walking
20   up to do at these labs?                               09:40:27
21       A.   Rapid PCR testing.
22       Q.   Okay.  So COVID related?
23       A.   Yes.
24       Q.   Okay.  And do you work with computers in
25   your current role as regional manager at Curative?    09:40:42
```

Page 25

```
 1         A.   Yes.
 2         Q.   Okay.  Do you use the internet in
 3    connection with your position?
 4         A.   Yes.
 5         Q.   Okay.  What's the highest level of --      09:40:53
 6    actually, let me take a step back.
 7              Have you had any other jobs before
 8    becoming a regional manager at Curative two years
 9    ago?
10         A.   Yes.                                       09:41:08
11         Q.   Okay.  What positions have you held and
12    when?
13         A.   Before Curative, I was a senior associate
14    at Nordstrom.
15         Q.   And how long were you a senior associate   09:41:30
16    at Nordstrom?
17         A.   About a year and a half.
18         Q.   And before that?
19         A.   Before that, I was in a showroom in
20    Santa Monica.                                        09:41:54
21         Q.   What kind of showroom?
22         A.   The company was Farrow & Ball.  And it --
23    it's paint and wallpaper.
24         Q.   Okay.  And how long were you at the
25    showroom in Santa Monica?                            09:42:14
```

Page 26

```
 1        A.   A little over a year.
 2        Q.   Any other jobs that we haven't covered
 3   yet?
 4        A.   I -- before Farrow & Ball, I was working
 5   on sets doing costuming.                              09:42:41
 6        Q.   Costume design?
 7        A.   Yes.
 8        Q.   Okay.  And how long did you do that?
 9        A.   I've been doing that on and off since
10   2000.                                                 09:42:56
11        Q.   Okay.  What's the highest level of
12   education you've completed?
13        A.   An associate's in college.
14        Q.   Okay.  And when did you get your
15   associate's degree?                                   09:43:14
16        A.   2006.
17        Q.   And what did you study and where?
18        A.   That was from Los Angeles City College.
19        Q.   And you studied?
20        A.   English.                                    09:43:38
21        Q.   Okay.  How did you get involved in this
22   case?
23        A.   I saw -- I saw the article, and I read it
24   and reached out to the firm.
25        Q.   Which article are you referring to?         09:44:01
```

Veritext Legal Solutions
866 299-5127

```
 1        A.    The article that talked about how
 2   incognito was not sticking to its privacy policy.
 3        Q.    And do you remember where you saw this
 4   article?  Was it online, was it in print -- print
 5   form, or some other medium?                                09:44:46
 6        A.    It was online.
 7        Q.    And was the article published by a -- a
 8   law firm, or was it something like you would read,
 9   let's say, you know, in the daily news or, you
10   know, the -- The Washington Post?                          09:45:02
11        A.    It was -- I don't recall.  It was not
12   posted by the law firm itself.
13        Q.    But it instructed you to contact the law
14   firm --
15              MS. BAEZA:  Objection.  Mischar- --             09:45:24
16   BY MS. CRAWFORD:
17        Q.    -- without the --
18              MS. BAEZA:  Sorry, Jomaire.
19              MS. CRAWFORD:  Well, give me a second,
20   Rosy.  Sorry.  I'm -- I'm -- I wasn't finished with        09:45:30
21   the question.
22   BY MS. CRAWFORD:
23        Q.    Did the article instruct you to contact
24   counsel?
25        A.    No.                                             09:45:37
```

Page 28

| | | |
|---|---|---|
| 1 | Q. Okay. What did the article say? | |
| 2 | A. It just spoke about its findings and... | |
| 3 | Q. And when did you -- do you remember when | |
| 4 | you viewed that article? | |
| 5 | A. I do not. | 09:46:04 |
| 6 | Q. Roughly speaking, was it in, you know, | |
| 7 | 2000- -- 2022?  Was it in 2016, '17, '18?  Again, | |
| 8 | roughly speaking. | |
| 9 | A. I would say 2020. | |
| 10 | Q. After this lawsuit was filed? | 09:46:35 |
| 11 | A. I don't have the exact dates of when it | |
| 12 | was filed and when the article was put out. | |
| 13 | Q. Okay. And do you happen to know who | |
| 14 | published the article that you're referring to? | |
| 15 | A. I do not. | 09:47:00 |
| 16 | Q. Okay. And how did you ultimately get | |
| 17 | involved in this lawsuit? | |
| 18 | A. I -- | |
| 19 | MS. BAEZA: Objection. Form. Vague. | |
| 20 | BY MS. CRAWFORD: | 09:47:29 |
| 21 | Q. You can answer. | |
| 22 | A. I contacted the law firm and asked to | |
| 23 | speak with somebody because what I had read was | |
| 24 | what I had experienced myself, and it was just | |
| 25 | maddening. | 09:47:52 |

Page 29

```
 1        Q.   So we'll -- we'll get to the specific
 2   experiences that you've had in connection with
 3   this litigation.  Before we do, just a couple more
 4   follow-up questions.
 5            Do you have a personal relationship with        09:48:07
 6   any of the lawyers or law firms who are
 7   representing Plaintiffs in this case?
 8        A.   No, I do not.
 9        Q.   Have you ever been involved in any other
10   class actions as a named plaintiff or a class           09:48:21
11   representative?
12        A.   No, I have not.
13        Q.   Is this your first time reaching out to
14   lawyers in response to the kind of article that
15   you mentioned reading?                                   09:48:36
16        A.   Yes.
17        Q.   Have you ever been involved in any other
18   litigation?
19        A.   No, I have not.
20        Q.   Have you ever testified at trial?             09:48:48
21        A.   No, I have not.
22        Q.   How about an arbitration proceeding?
23        A.   No.
24        Q.   Have you ever given formal testimony in
25   front of a governmental agency?                          09:49:05
```

Page 30

1      A.   In this case.

2      Q.   Okay.  So the lawyers in this case

3  represented that Google was collecting user data

4  without obtaining consent; is that right?

5           MS. BAEZA:  Objection to form.                11:46:57

6  Mischaracterizes testimony.

7           And, again, to the extent this is asking

8  for communications between counsel and

9  Ms. Trujillo, I'm going to instruct Ms. Trujillo

10 not to answer.                                         11:47:08

11 BY MS. CRAWFORD:

12     Q.   To be clear, Ms. Trujillo, I'm asking

13 about what your -- what you understood after

14 reviewing the news article that you mentioned.

15          Did the news article represent -- did         11:47:16

16 lawyers who published the news article represent

17 that Google was collecting data without obtaining

18 user data, yes or no?  Obviously --

19          MS. BAEZA:  Objection to form.

20 Mischaracterizes the testimony.  She never said        11:47:33

21 that the lawyers published the article.

22 BY MS. CRAWFORD:

23     Q.   Ms. Trujillo, you can answer.

24     A.   I don't know who published the article.

25     Q.   Okay.  Ms. Trujillo, you testified when I    11:47:45

Page 89

```
 1    asked what was the supporting evidence for the
 2    assertion that Google tracking -- sorry --
 3    collecting data without consent was a known fact,
 4    you testified, quote, "Attorneys and experts
 5    looking into this."                                    11:48:05
 6         Do you remember that?
 7      A.   Yes.
 8      Q.   And when I asked which attorneys, you
 9    responded, quote, "The attorneys that work for the
10    law firm that I hired in this case."                   11:48:18
11         Do you remember that?
12      A.   Yes.
13      Q.   So can you tell me in what context did the
14    attorneys from the law firm that you hired in the
15    context of this case made that representation?        11:48:31
16    Was it in the form of the news article that you
17    reviewed or in some other capacity?
18         MS. BAEZA:  I'm going to instruct
19    Ms. Trujillo not to answer to the extent you're
20    asking questions about communications outside of      11:48:44
21    the article that she saw about the lawsuit.
22    BY MS. CRAWFORD:
23      Q.   You can answer, Ms. Trujillo.
24      A.   I can't answer that question.
25      Q.   Is it because it call- -- you believe that     11:48:59
```

Page 90

```
 1    it calls for privileged information?
 2         A.   Yes.
 3         Q.   So then, is it the case that your basis
 4    for believing that it was a known fact that Google
 5    is collecting this data, does it derive from              11:49:15
 6    information that you've obtained from lawyers that
 7    you've hired in this case, yes or no?
 8              MS. BAEZA:   Objection to form.
 9    Mischaracterizes testimony.
10              She -- she said it came from an article.        11:49:28
11    BY MS. CRAWFORD:
12         Q.   Can you please clarify, Ms. Trujillo?
13         A.   I was initially informed of this from the
14    article I read.
15         Q.   And what did the article say specifically       11:49:50
16    about Google's data collection without user
17    consent?
18         A.   It specifically said that Google is
19    tracking information while on incognito mode.
20         Q.   And did they cite -- did the article cite       11:50:11
21    any evidence or support or offer facts to
22    support -- to justify that assertion, yes or no?
23         A.   Yes.
24         Q.   What were those facts or supporting
25    justifications?                                           11:50:40
```

Page 91

```
 1            MS. BAEZA:  Objection.  Form.  Asked and
 2     answered.
 3     BY MS. CRAWFORD:
 4          Q.   You can answer.
 5          A.   I can't give you an answer about              11:50:54
 6     statistics, but the article did state that
 7     attorneys and experts have found to be true that
 8     Google is tracking and collecting information
 9     while users are in incognito mode.
10          Q.   And the article represented that that was    11:51:27
11     done without user consent?
12          A.   Yes.
13          Q.   And the lawyers that you just mentioned,
14     the article did state -- I'm quoting from your
15     testimony now.  "The article did state that          11:51:47
16     attorneys and experts have found to be true that
17     Google is tracking and collecting information."
18            Which lawyers are you referring to when
19     you say that?
20          A.   The lawyers at the firm I contacted.         11:52:00
21          Q.   Okay.  So that would be counsel
22     representing you in this case?  Yes?
23          A.   Yes.  Correct.
24          Q.   You're aware that there was a com- --
25            MR. MAO:  Hey, Jomaire.  This is --
```

Page 92

| | | |
|---|---|---|
| 1 | Jomaire.  Jomaire, this is Mark.  This is Mark | |
| 2 | Mao. | |
| 3 |        MS. CRAWFORD:  Yes? | |
| 4 |        MR. MAO:  Just real quick.  Just for the | |
| 5 | record -- and I'll put it on the record.  Okay? | 11:52:30 |
| 6 |        MS. CRAWFORD:  Sure. | |
| 7 |        MR. MAO:  Because Rosy was not involved in | |
| 8 | the case at the beginning of the case.  There is no | |
| 9 | solicitation, like, article, that the firm's put | |
| 10 | out there.  If that's what, like, this is all | 11:52:40 |
| 11 | about, although she's answered this, like -- | |
| 12 |        (Interruption in audio/video.) | |
| 13 |        -- times. | |
| 14 |        And I will make the representation to you | |
| 15 | that the lawyers did not send out a solicitation, | 11:52:45 |
| 16 | like publishing anywhere that has not been produced | |
| 17 | in the case.  I -- and -- and there is none. | |
| 18 | That's why.  Okay?  So I've been -- | |
| 19 |        MS. CRAWFORD:  Yeah, but you were -- | |
| 20 |        MR. MAO:  -- listening to this for a | 11:52:57 |
| 21 | while -- | |
| 22 |        MS. CRAWFORD:  Mm-hmm.  I appreciate | |
| 23 | your -- | |
| 24 |        MR. MAO:  -- right? | |
| 25 |        MS. CRAWFORD:  -- attentiveness, so | |

```
 1      then --
 2             MR. MAO:  -- right?  And -- and I just
 3      want to clarify --
 4             MS. CRAWFORD:  -- you -- you're also
 5      hearing the witness testify --
 6             MR. MAO:  Well -- well, right because --
 7             MS. CRAWFORD:  -- about lawyer --
 8             (Simultaneous speaking.)
 9             (Interruption in audio/video.)
10             THE COURT REPORTER:  Whoa.  Excuse me.      11:53:04
11      Excuse me.
12             MR. MAO:  No, no, no, no, no --
13             (Simultaneous speaking.)
14             (Interruption in audio/video.)
15             THE COURT REPORTER:  Excuse me.  There
16      are --
17             MR. MAO:  -- no, no, no.  Here's why --
18      here's why --
19             THE COURT REPORTER:  Wait.  Excuse me.
20      Counsel --
21             MR. MAO:  -- it --
22             THE COURT REPORTER:  -- excuse me.  Stop,
23      please.
24             MR. MAO:  Yes.
25             THE COURT REPORTER:  I'm getting two
```

Page 94