1    **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

2    Stephen A. Broome (CA Bar No. 314605)        Andrew H. Schapiro (admitted *pro hac vice*)
     stephenbroome@quinnemanuel.com               andrewschapiro@quinnemanuel.com
3    Viola Trebicka (CA Bar No. 269526)           Teuta Fani (admitted *pro hac vice*)
     violatrebicka@quinnemanuel.com               teutafani@quinnemanuel.com
4    Crystal Nix-Hines (Bar No. 326971)           Joseph H. Margolies (admitted *pro hac vice*)
     crystalnixhines@quinnemanuel.com             josephmargolies@quinnemanuel.com
5    Rachael L. McCracken (Bar No. 252660)        191 N. Wacker Drive, Suite 2700
     rachaelmccracken@quinneamanuel.com           Chicago, IL 60606
6    Alyssa G. Olson (CA Bar No. 305705)          Telephone: (312) 705-7400
7    alyolson@quinnemanuel.com                    Facsimile: (312) 705-7401
8    865 S. Figueroa Street, 10th Floor
     Los Angeles, CA 90017
9    Telephone: (213) 443-3000
     Facsimile: (213) 443-3100
10

11   Jomaire Crawford (admitted *pro hac vice*)    Xi ("Tracy") Gao (CA Bar No. 326266)
     jomairecrawford@quinnemanuel.com             tracygao@quinnemanuel.com
12   D. Seth Fortenbery (admitted *pro hac vice*)  Carl Spilly (admitted *pro hac vice*)
     sethfortenbery@quinnemanuel.com              carlspilly@quinnemanuel.com
13   51 Madison Avenue, 22nd Floor                1300 I Street NW, Suite 900
     New York, NY 10010                           Washington D.C., 20005
14   Telephone: (212) 849-7000                    Telephone: (202) 538-8000
15   Facsimile: (212) 849-7100                    Facsimile: (202) 538-8100

16   *Attorneys for Defendant Google LLC*

17
                        **UNITED STATES DISTRICT COURT**
18              **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

19   CHASOM BROWN, *et al*., on behalf of          Case No. 4:20-cv-03664-YGR-SVK
     themselves and all others similarly situated,
20                                                 **DECLARATION OF DONALD SETH**
                    Plaintiffs,                    **FORTENBERY IN SUPPORT OF**
21                                                 **DEFENDANT GOOGLE LLC'S**
            v.                                     **RESPONSE TO PLAINTIFFS' MOTION**
22                                                 ***IN LIMINE* 3 RE: USE OF GOOGLE**
     GOOGLE LLC,                                   **SERVICES BY THE COURT, LAW**
23                                                 **FIRMS, AND EXPERTS**
                    Defendant.
24                                                 The Honorable Yvonne Gonzalez Rogers
                                                   Date: November 29, 2023
25                                                 Time: 9:00 a.m.
                                                   Location: Courtroom 1 – 4th Floor
26
                                                   Trial Date: January 29, 2024
27

28

1    I, Donald Seth Fortenbery, declare as follows:

2    1.    I am a member of the bar of the State of New York and an associate attorney for

3    Quinn Emanuel Urquhart & Sullivan, LLP. I make this declaration of my own personal, firsthand

4    knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

5    2.    I submit this declaration in support of Google's Response to Plaintiffs' Motion *In*

6    *Limine* 3 Re: Use of Google Services by the Court, Law Firms, and Experts.

7    3.    Attached hereto as Exhibit A is a true and correct copy of an excerpted transcript of

8    the July 15, 2022 deposition of Mark Keegan.

9    4.    Attached hereto as Exhibit B is a true and correct copy of an excerpted transcript of

10   the July 20, 2022 deposition of Jonathan Hochman.

11   5.    Attached hereto as Exhibit C is a true and correct copy of the Privacy Policy of

12   Morgan & Morgan, P.A., accessed on October 13, 2023 at https://www.forthepeople.com/privacy-

13   policy/.

14   I declare under penalty of perjury of the laws of the United States that the foregoing is true

15   and correct.

16   Executed in Hoboken, New Jersey on October 17, 2023.

17                                                      By   _/s/ Donald Seth Fortenbery_

18                                                           Donald Seth Fortenbery

19

20

21

22

23

24

25

26

27

28

FORTENBERY DECLARATION ISO GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* 3

# EXHIBIT A

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3

4   CHASOM BROWN, WILLIAM BYATT,    ) Case No.
    JEREMY DAVIS, CHRISTOPHER       ) 5:20-cv-03664-LHK-
5   CASTILLO, and MONIQUE TRUJILLO  ) SVK
    individually and on behalf of   )
6   all other similarly situated,   )
                                     )
7            Plaintiffs,             )
                                     )
8            vs.                     )
                                     )
9   GOOGLE LLC,                      )
                                     )
10           Defendant.              )
    _____ )

11

12

13      VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

14           DEPOSITION OF MARK KEEGAN

15

16             Friday, July 15, 2022

17      Remotely Testifying from Rye, New York

18

19

20

21

22

23  Stenographically Reported By:

24  Hanna Kim, CLR, CSR No. 13083

25  Job No. 5302317

                                        Page 1

**Page 2**

```
1        UNITED STATES DISTRICT COURT
2        NORTHERN DISTRICT OF CALIFORNIA
3
4  CHASOM BROWN, WILLIAM BYATT,    )  Case No.
   JEREMY DAVIS, CHRISTOPHER       )  5:20-cv-03664-LHK-
5  CASTILLO, and MONIQUE TRUJILLO  )  SVK
   individually and on behalf of   )
6  all other similarly situated,   )
                                   )
7        Plaintiffs,               )
                                   )
8        vs.                       )
                                   )
9  GOOGLE LLC,                     )
                                   )
10       Defendant.                )
   _____ )
11
12
13
14       Virtual videoconference video-recorded
15       deposition of MARK KEEGAN, remotely
16       testifying from Rye, New York, taken on
17       behalf of the Defendant, on Friday,
18       July 15, 2022, before Hanna Kim, CLR,
19       Certified Shorthand Reporter, No. 13083.
20
21
22
23
24
25
```

**Page 3**

```
1  REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:
2
3  For Plaintiffs:
4        BOIES SCHILLER FLEXNER LLP
5        BY:  JAMES LEE, ESQ.
6        BY:  MARK C. MAO, ESQ.
7        BY:  BEKO O. REBLITZ-RICHARDSON, ESQ.
8        100 SE 2nd St., 28th Floor
9        Miami, Florida 33131
10       305.539.8400
11       jlee@bsfllp.com
12
13
14  For Defendant:
15       QUINN EMANUEL URQUHART & SULLIVAN, LLP
16       BY:  ALYSSA "ALY" OLSON, ESQ.
17       BY:  STEPHEN BROOME, ESQ.
18       865 S. Figueroa Street, 10th Floor
19       Los Angeles, California 90017
20       213.443.3000
21       alyolson@quinnemanuel.com
22
23
24
25
```

**Page 4**

```
1  REMOTE APPEARANCES OF COUNSEL:  (CONTINUED)
2
3  Also Present:
4        AN TRUONG, ESQ, Simmons Hanly Conroy
5        (For Plaintiffs in Calhoun v. Google)
6        LAURA O'LAUGHLIN, Analysis Group
7        ANUSHKA SIKDAR, Boies Schiller Flexner
8        ROBERT FENTON, Video Operator
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 5**

```
1              INDEX OF EXAMINATION
2
3  WITNESS:  MARK KEEGAN
4  EXAMINATION                       PAGE
5      BY MS. OLSON:                 10, 243
6      BY MR. LEE:                   241
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

2 (Pages 2 - 5)

1  of -- of any information that would guide me
2  otherwise.
3     Q.  You knew that your browsing wasn't
4  nonexistent completely because the Incognito screen
5  explains that it's visible to your ISP and websites   19:57:07
6  you visit; right?
7     A.  I can't say that I did.  I had confidence,
8  as I can recall now, as best I can recall now, I had
9  confidence that when I was in Incognito, that --
10  that this, you know, never happened.  Yeah, I -- I   19:57:37
11  didn't sit around and -- and debate the issue like
12  we are now.  And -- and if you asked me these --
13  these questions prior to my involvement in this
14  case, and I -- and I thought harder about these
15  issues, you know, maybe -- maybe I'd have some more   19:57:55
16  clarity there.  It's hard to say.  But my
17  recollection of using Incognito was that this --
18  this never happened.
19     Q.  But were you trying to get privacy from
20  Google specifically or from all companies that   19:58:18
21  engage in tracking?
22     A.  I would say all companies that -- when
23  using Incognito, I was under the impression and the
24  hope that -- that, as I said, that this -- this was
25  not something that was being retained in the data   19:58:52

Page 222

1  sphere.
2     Q.  And later in the paragraph, you say
3  that -- that you "did not know that Google receives
4  and saves from my private browsing mode activities,
5  including in particular when I am visiting   19:59:23
6  non-Google websites without being signed in to any
7  Google account.  This was something I first learned
8  when I became engaged as an expert for this
9  litigation." [As read]
10     What exactly was it that you learned that   19:59:36
11  you did not know before after you were engaged in
12  this litigation?
13     MR. LEE:  Document speaks for itself.
14     THE WITNESS:  Well, I learned that there
15  is a immense amount of data collection that's going   19:59:51
16  on at the user level when you're in Incognito.  So
17  that's -- that's what I learned.  That was a --
18  quite a surprise to me personally.
19  BY MS. OLSON:
20     Q.  Were you offended by it?   20:00:17
21     A.  Offended?  I --
22     MR. LEE:  Beyond the scope.
23     THE WITNESS:  Yeah, I -- I wouldn't use
24  the word "offended."  I was surprised.  I -- I felt
25  a little naive.   20:00:38

Page 223

1  BY MS. OLSON:
2     Q.  And so, you wouldn't want to facilitate
3  Google's receipt of this data from private browsing
4  mode users; is that correct -- or is that accurate?
5     MR. LEE:  Wait, what?  Say that again.   20:00:57
6  BY MS. OLSON:
7     Q.  Is it accurate that you wouldn't want to
8  facilitate Google's receipt of this data from
9  private browsing mode users?
10     A.  Yes.  That's -- that I -- of -- of -- of   20:01:09
11  me or of other users?
12     MR. LEE:  Yeah, let me object to the --
13  beyond the scope of his expert opinion.  If
14  Ms. Olson wants to ask you about your personal
15  beliefs for the next 20 minutes, it's fine, but I'd   20:01:29
16  ask for a running objection on beyond the scope.
17  BY MS. OLSON:
18     Q.  The question was, is it accurate that you
19  wouldn't want to facilitate Google's receipt of data
20  from other private browsing mode users?   20:01:44
21     A.  Correct.  Yes.  I -- I would not want to
22  be a party to that.
23     Q.  Does your website currently use Google
24  Analytics?
25     A.  I -- I think it does, but I'm not the   20:01:57

Page 224

1  person that deals with that.
2     Q.  Does your website currently use Google Tab
3  Manager?
4     MR. LEE:  Beyond the scope.
5     THE WITNESS:  I don't know what that is.   20:02:19
6  BY MS. OLSON:
7     Q.  Are you aware if those services -- well,
8  I'll just stick with Google Analytics since you said
9  you didn't know what Google Tab Manager was.
10     Are you aware if the Google Analytics   20:02:39
11  services on your websites continues [verbatim] to
12  function whether or not users are in Incognito mode?
13     MR. LEE:  Beyond the scope.
14     THE WITNESS:  As I sit here, to the extent
15  that we have Google Analytics, and I think we do.   20:02:52
16  So yes, I hadn't thought about this until you just
17  asked this question.  But, yes, it -- it does appear
18  that I am now a party to this, that people who come
19  to our website because if we're using analytics,
20  that -- that from what I've learned in this case,   20:03:20
21  that Google is, you know, tracking them, if -- if
22  they're in private browsing mode and -- and
23  collecting data and doing -- doing -- doing what
24  they do.
25     So this is one of those, you know, gun to   20:03:34

Page 225

57 (Pages 222 - 225)

1 your head situations that we were discussing
2 earlier. Not thrilled about that. But analytics is
3 an important tool for a small company like mine and
4 for a big company like somebody else's, which is why
5 it's as successful as it is.                    20:03:55
6         So will my disappointment in -- in
7 participating in this behavior, which I now know
8 very clearly users do not expect to happen, I don't
9 love it, but you don't see myself removing analytics
10 from my website.                          20:04:19
11 BY MS. OLSON:
12   Q.  Okay. Let's turn to the next paragraph,
13 26.
14   A.  Okay.
15   Q.  In paragraph 26, you say, "This study of    20:04:37
16 1,075 U.S. respondents was designed and executed in
17 accordance with accepted standards of survey
18 research. This survey followed the guide" -- "the
19 guiding principles for survey research for the
20 purpose of litigation as outlined by Shari Diamond."   20:04:59
21 [As read]
22         Do you see that?
23   A.  I do.
24   Q.  Would you agree that Shari Diamond is an
25 authority on best practices for survey research used    20:05:10

1 in litigation?
2   A.  I would.
3   Q.  And you cite this paragraph in both of
4 your reports? Or a similar paragraph in both of
5 your reports?                            20:05:24
6   A.  I do.
7   Q.  And you believe that a reliable and valid
8 survey should follow these principles, the ones
9 listed in the bullets of paragraph 26?
10   A.  I do.                              20:05:35
11   Q.  The second bullet is a "Rigorous and valid
12 survey design that is probative of the relevant
13 issues in the matter."
14         Do you see that?
15   A.  I do.                              20:05:48
16   Q.  And we briefly mentioned it earlier, but
17 did you conduct any pretesting?
18   A.  I did not.
19   Q.  Why not?
20   A.  Well, for both of these surveys, I did not   20:05:56
21 see the need to -- to pretest the survey. There was
22 nothing that concerned me about the design. There
23 was nothing that stood out to me as potentially
24 problematic. So in that scenario, I -- I would not.
25 And in this case, did not do any pretesting.    20:06:19

1   Q.  And in the approximately 1,000 consumer
2 surveys I believe you said you've conducted, in
3 approximately how many would you say you've
4 pretested versus not pretested?
5   A.  Those surveys expand over my, you know,    20:06:36
6 20-plus year career. So there's going to be recency
7 bias in this answer, just to warn you. But so I --
8 I don't know. I would speculate that pretesting is
9 certainly a tool in the -- in the tool kit,
10 available when I have concerns about whatever they   20:07:06
11 are. And they -- they vary wildly -- widely for a
12 particular survey. So there's certainly
13 circumstances pretesting is appropriate. And I've
14 used it. In what percentage, I don't know. But
15 it -- it is something that I've done when I have    20:07:32
16 certain concerns about a survey. And it can be
17 helpful. This was not one of the cases.
18   Q.  What is your methodology for determining
19 whether a case, it would be helpful to do a pretest,
20 and when it would not be helpful?              20:07:53
21   A.  Sure.
22         Well, I -- I have and I do conduct a great
23 many surveys. So when I have -- when I have a --
24 a -- or when I don't have a comfort level to say the
25 inverse, that this survey -- again, it's -- it's    20:08:15

1 really hard to -- to put this in a group because
2 there are lots of reasons that I might pretest.
3         But if -- if I don't have a sufficient
4 comfort level that some component or the survey or
5 the flow or the questions or wording or, you know,   20:08:36
6 any -- any number of things may be problematic for
7 any number of reasons, then that would trigger a
8 concern about pretests and something that I would
9 bring up with the client and suggest that we engage
10 in so that we can get the survey right. And maybe   20:08:57
11 we have it right.
12         But there's a sufficient concern of
13 whatever it is that we want to bring this to --
14 however you do the pretest. And there's -- you
15 know, there's a number of ways to do that. But we   20:09:15
16 want to bring this to some small group of -- of
17 respondents and -- and evaluate something. And then
18 regroup and see if it's -- see if we've learned
19 anything and if any changes can be made.
20   Q.  Without conducting pretest for either of   20:09:38
21 your surveys, how do you have scientific evidence
22 that respondents found your survey questions clear?
23   A.  Well, pretests are typically not
24 quantitative, right. They're qualitative. So
25 that's not scientific evidence, as you describe it.   20:10:05

JURAT

I, MARK KEEGAN, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken remotely on Friday, July 15, 2022; that I have made such corrections as appear noted herein in ink, initialed by me; that my testimony as contained herein, as corrected, is true and correct.

Dated this _____ day of _____, 2022,

at _____.

_____

MARK KEEGAN

Page 246

---

Mr. Mark Keegan

mark@keegandonato.com

July 20, 2022

RE: CHASOM BROWN vs. GOOGLE LLC

July 15, 2022, Mark Keegan (JOB NO. 5302317)

The above-referenced transcript has been completed by Veritext Legal Solutions and review of the transcript is being handled as follows:

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext to schedule a time to review the original transcript at a Veritext office.

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, noting the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Code of Civil Procedure.

__ Waiving the CA Code of Civil Procedure per Stipulation of Counsel - Original transcript to be released for signature as determined at the deposition.

__ Signature Waived – Reading & Signature was waived at the time of the deposition.

Page 248

---

CERTIFICATE OF REPORTER

I, Hanna Kim, a Certified Shorthand Reporter, do hereby certify:

That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken before me at the time and place therein set forth and were taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

I further certify that I am neither counsel for, nor related to, any party to said proceedings, not in anywise interested in the outcome thereof.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, b_____ oceedings, review of the t_____ ot requested.

I _____ hereunto subscri_____

Dated:

Hanna Kim

CLR, CSR No. 13083

Page 247

---

_X_ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, noting the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Federal Rules.

__ Federal R&S Not Requested - Reading & Signature was not requested before the completion of the deposition.

Page 249

---

63 (Pages 246 - 249)

# EXHIBIT B

1          UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3              OAKLAND DIVISION

4

5    CHASOM BROWN,

6            Plaintiff,    Case No.

7    vs.              4:20-cv-03664-YGR-SVK

8    GOOGLE LLC,

             Defendant.

9      *********************************

               CONFIDENTIAL

10      ZOOM VIDEOTAPED DEPOSITION OF

              JONATHAN E. HOCHMAN

11            July 20, 2022

12             10:15 a.m.

13      ***************************************

14

15   TAKEN BY:

16      JOSEF ANSORGE, ESQ.

17      ATTORNEY FOR DEFENDANT

18

19   REPORTED BY:

20      BELLE VIVIENNE, RPR, CRR, NJ-CRR,

21      WA/CO/NM-CCR

22      NATIONALLY CERTIFIED REALTIME

23      COURT REPORTER

24      JOB NO. 5308381

25

                                    Page 1

**Page 2**

```
 1        A P P E A R A N C E S
 2  FOR THE PLAINTIFF:
 3    MARK MAO
      BOIES SCHILLER FLEXNER LLP
 4    44 Montgomery Street, 41st Floor
      San Francisco, California 94104
 5    415.293.6800
      mmao@bsfllp.com
 6
      RYAN MCGEE
 7    MORGAN & MORGAN
      201 North Franklin Street
 8    7th Floor
      Tampa, Florida 33602
 9    813.223.0931
      rmcgee@forthepeople.com
10
      ALEXANDER FRAWLEY
11    IAN CROSBY
      SUSMAN GODFREY
12    1301 Avenue of the Americas
      32nd Floor
13    New York, New York 10019
      Afrawley@susmangodfrey.com
14
      COUNSEL FOR PLAINTIFF IN CALHOUN MATTER:
15    ADAM PROM
      DICELLO LEVITT & GUTZLER
16    10 North Dearborn Street, Sixth Floor
      Chicago, Illinois 60602
17    312.214.7900
      aprom@dicellolevitt.com
18
      COUNSEL FOR DEFENDANT:
19
      JOSEF ANSORGE
20    JOHN WILSON, IV
      QUINN EMANUEL URQUHART & SULLIVAN LLP
21    51 Madison Avenue
      New York, New York 10010
22    josefansorge@quinnemanuel.com
23    CARL SPILLY
      QUINN EMANUEL URQUHART & SULLIVAN, LLP
24    1300 I Street, NW., Suite 900
      Washington, D.C. 20005
25    202.538.8277
      carlspilly@quinnemanuel.com
```

**Page 4**

```
 1                  - - -
 2              I N D E X
 3                  - - -
 4  Testimony of:
 5     JONATHAN E. HOCHMAN
 6  MR. ANSORGE............................ 10
 7
 8                  - - -
 9          E X H I B I T S
10                  - - -
11
12  NO.        DESCRIPTION          PAGE
13  Exhibit 1    Expert Report of Jonathan
14              Hochman.................... 30
15  Exhibit 2    Jonathan Hochman's
16              Curriculum Vitae........... 55
17  Exhibit 3    Article entitled
18              Personally Identifiable
19              Information (PII)..........146
20  Exhibit 4    Snapshot of a Google
21              policy....................163
22  Exhibit 5    Document entitled
23              Mitigating Browser
24              Fingerprinting in Web
25              Specifications.............184
```

**Page 3**

```
 1  APPEARANCES:  (Continued)
 2     CRYSTAL NIX-HINES
       865 South Figueroa Street, 10th Floor
 3     Los Angeles, California 90017
       crystalnixhines@quinnemanuel.com
 4
 5  VIDEOGRAPHER:
       Sean Grant
 6
    ALSO PRESENT:
 7     Konstantinos Psounis, Ph.D.
       Julie Burns
 8     John Wilson, IV - Quinn Emanuel
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 5**

```
 1                  - - -
 2        E X H I B I T S (Continued.)
 3                  - - -
 4
 5  NO.        DESCRIPTION          PAGE
 6  Exhibit 6    E-mail from
 7              jkarlin@google.com dated
 8              July 31, 2019..............201
 9  Exhibit 7    Jonathan Hochman's
10              Supplemental Report........235
11  Exhibit 8    Document titled Table of
12              Contents...................236
13  Exhibit 9    Article entitled W3C TAG
14              Observations on Private
15              Browsing Modes.............246
16  Exhibit 10   Google Analytics Terms of
17              Service....................264
18  Exhibit 11   URL document...............268
19  Exhibit 12   Declaration of Jonathan
20              E. Hochman.................289
21  Exhibit 13   Expert Report provided in
22              Rockwood Select Asset
23              Fund XI v Devine,
24              Millimet & Branch..........293
25
```

Veritext Legal Solutions
866 299-5127

| | |
|---|---|
| 1 Q. Well, would you agree that the 18:17:34 | 1 A. Yes. 18:19:44 |
| 2 website provider either provides or 18:17:35 | 2 Q. So websites like Hochman 18:19:48 |
| 3 assists in the provision of a website? 18:17:38 | 3 Consultants disclose to users that the 18:19:51 |
| 4 A. It sounds like a tautology, so 18:17:45 | 4 website uses Google Analytics to collect 18:19:54 |
| 5 it sounds like a statement that is true on 18:17:48 | 5 data, correct? 18:19:57 |
| 6 its face. 18:17:50 | 6 A. Yes, I think that this text 18:20:02 |
| 7 Q. Should be easy to agree with. 18:17:51 | 7 might even be some standard text because I 18:20:04 |
| 8 A. I think I just did. 18:17:55 | 8 don't think I wrote it all myself. I 18:20:07 |
| 9 Q. And would you agree that a 18:17:58 | 9 probably got it from somewhere, maybe 18:20:10 |
| 10 website provider helps to facilitate a 18:18:00 | 10 even -- maybe even from Google Analytics 18:20:12 |
| 11 website? 18:18:02 | 11 itself. 18:20:17 |
| 12 A. Yes, and for -- for example, we 18:18:06 | 12 I don't recall, though, because 18:20:17 |
| 13 used -- we used WordPress and some 18:18:09 | 13 it was a while ago that I added this or 18:20:18 |
| 14 different plug-ins to construct this 18:18:13 | 14 someone -- maybe Julie added it. I don't 18:20:23 |
| 15 website. 18:18:15 | 15 know. Someone added it to the website 18:20:25 |
| 16 Q. Can you turn to the third 18:18:17 | 16 because, I think, vaguely I remember at 18:20:27 |
| 17 paragraph on page 4 of Exhibit 15? And 18:18:23 | 17 some point in time, Google Analytics said 18:20:29 |
| 18 this is the paragraph in the middle that 18:18:27 | 18 that you have to add some disclosures. 18:20:31 |
| 19 begins "When you access the Website" and 18:18:29 | 19 And with that said, I still 18:20:36 |
| 20 let me know when you're there. 18:18:30 | 20 don't think that this in any way gets 18:20:37 |
| 21 A. Yes. 18:18:32 | 21 close to disclosing what I've now learned 18:20:39 |
| 22 Q. Do you see where it says "When 18:18:34 | 22 and documented in my reports. 18:20:43 |
| 23 you access the Website by or through a 18:18:36 | 23 Q. And as we discussed a little 18:20:47 |
| 24 mobile device, we may collect certain 18:18:39 | 24 while ago and you just referenced, 18:20:49 |
| 25 information automatically including but 18:18:41 | 25 Google's terms of service for Google 18:20:52 |
| Page 310 | Page 312 |

| | |
|---|---|
| 1 not limited to the type of mobile device 18:18:44 | 1 Analytics require Google Analytics 18:20:56 |
| 2 you use, your mobile device unique ID, the 18:18:46 | 2 customers to disclose the use of Google 18:20:56 |
| 3 IP address of your mobile device, your 18:18:52 | 3 Analytics, correct? 18:20:59 |
| 4 mobile operating system, the type of 18:18:54 | 4 A. I think we looked at that. 18:21:00 |
| 5 mobile Internet browser you use, unique 18:18:55 | 5 Q. Mr. Hochman, your website's 18:21:07 |
| 6 device identifiers and other diagnostic 18:18:59 | 6 privacy policy does not tell users that 18:21:10 |
| 7 data"? 18:19:01 | 7 Google Analytics will still receive data 18:21:14 |
| 8 Did I read that correctly? 18:19:01 | 8 even when they are in private browsing 18:21:16 |
| 9 A. Yes. 18:19:03 | 9 mode, correct? 18:21:18 |
| 10 Q. And you see the fourth paragraph 18:19:06 | 10 A. It doesn't mention private 18:21:19 |
| 11 on page 4 of Exhibit 15? It reads "We may 18:19:08 | 11 browsing mode here; does it? 18:21:23 |
| 12 also collect information that your browser 18:19:17 | 12 Q. And why not? 18:21:25 |
| 13 sends whenever you visit our Website or 18:19:20 | 13 A. I'm under a Protective Order in 18:21:31 |
| 14 when you access the Website by or through 18:19:21 | 14 this case. I'm not talking about this 18:21:32 |
| 15 a mobile device." 18:19:24 | 15 case. I'm not taking any information I 18:21:34 |
| 16 Do you see that? 18:19:26 | 16 get from this case and giving it to other 18:21:36 |
| 17 A. Yes. 18:19:28 | 17 clients or giving it to the public. 18:21:38 |
| 18 Q. Then further below, do you see 18:19:30 | 18 Q. So you believe that the fact 18:21:41 |
| 19 the section on "Tracking Technologies"? 18:19:32 | 19 that Google Analytics still functions for 18:21:42 |
| 20 A. Yes. 18:19:34 | 20 website visits that are in private 18:21:48 |
| 21 Q. It states "We use, or have used, 18:19:36 | 21 browsing mode is a secret that no one else 18:21:51 |
| 22 web analytics products such as Google 18:19:38 | 22 is aware of? 18:21:55 |
| 23 Analytics to track the activity on our 18:19:40 | 23 A. The content of the material in 18:21:57 |
| 24 Website and store certain information." 18:19:42 | 24 my report is marked AEO. I'm not tipping 18:21:59 |
| 25 Do you see that? 18:19:44 | 25 off anyone about what's in my report. I'm 18:22:03 |
| Page 311 | Page 313 |

79 (Pages 310 - 313)

**Page 314**

1 not leaking it. All right. You guys at 18:22:06
2 Google, maybe you don't like me that much. 18:22:09
3 I think you respect me that I'm not a 18:22:11
4 leaker. I don't leak your stuff, okay? 18:22:13
5 I'm trusted with confidential information. 18:22:15
6 I don't leak it. I don't talk about it. 18:22:18
7 After this case is resolved, if 18:22:21
8 Google changes its disclosures, I'll 18:22:23
9 update my privacy policy accordingly. 18:22:25
10 Q. Now, why do you use Google 18:22:38
11 Analytics on your website? 18:22:57
12 A. I don't really have any other 18:22:57
13 good choice. 18:22:59
14 Q. And has Google Analytics ever 18:23:09
15 told you or any other website developers 18:23:13
16 that Analytics does not work in incognito 18:23:15
17 mode? 18:23:18
18 A. I've never really looked at 18:23:19
19 whether Google Analytics did or didn't 18:23:23
20 work in incognito mode. It's just not 18:23:24
21 come up, and it's not something that I 18:23:26
22 thought about prior to this case. 18:23:28
23 Q. And Hochman Consultants states 18:23:31
24 in its privacy policy that Google 18:23:33
25 Analytics -- 18:23:46

**Page 315**

1 (Reporter clarification.) 18:23:46
2 BY MR. ANSORGE: 18:23:46
3 Q. -- that it uses Google Analytics 18:23:46
4 to monitor activity on the website, 18:23:48
5 correct? 18:23:51
6 MR. MAO: Sorry, could I have -- 18:23:53
7 the sigh in the middle of that 18:23:55
8 question threw me off. Ms. Vivienne 18:23:57
9 can I just trouble you to read that 18:23:59
10 back? I want to make sure I have a 18:24:01
11 question there. 18:24:03
12 THE COURT REPORTER: Sure. 18:24:05
13 MR. MAO: Thank you. 18:24:12
14 (Whereupon, the question is read 18:24:25
15 back by the reporter.) 18:24:25
16 A. You sort of paraphrased what 18:24:32
17 we've said. So what it says, I think, is 18:24:34
18 already in the record, and that's my 18:24:37
19 answer for, you know, what it says. 18:24:39
20 BY MR. ANSORGE: 18:24:39
21 Q. And the decision to use Google 18:24:44
22 Analytics is up to the website in this 18:24:47
23 case -- in this case, it would be up to 18:24:53
24 Hochman Consultants; isn't that correct? 18:24:55
25 A. Yes. 18:24:59

**Page 316**

1 Q. And so if a website does not 18:24:59
2 install Google Analytics code, then no 18:25:07
3 data is sent to Google Analytics when a 18:25:10
4 user visits the website, correct? 18:25:12
5 A. If the Google Analytics code is 18:25:18
6 not installed and none of Google's other 18:25:19
7 tracking beacons are installed, then I 18:25:23
8 would not expect data to be sent to 18:25:26
9 Google. 18:25:28
10 Q. Are any Google Analytics 18:25:34
11 tracking beacons existing on websites when 18:25:36
12 the website did not install them? 18:25:40
13 A. That sounds kind of like an edge 18:25:46
14 case. 18:25:48
15 Q. So for the tracking beacons to 18:25:50
16 exist on any websites, the website itself 18:25:53
17 has to install those quote/unquote 18:25:57
18 tracking beacons; isn't that correct? 18:26:00
19 A. All right. So now I'm thinking 18:26:02
20 about this. Some websites are like 18:26:03
21 services where you go to a service 18:26:07
22 provider and they give you a turnkey 18:26:09
23 website, and they may include Google 18:26:11
24 Analytics just rolled up in that. 18:26:16
25 So the -- the website operator 18:26:18

**Page 317**

1 may not install it, the vendor might 18:26:19
2 install Google Analytics. The vendor 18:26:22
3 might even have their own Google Analytics 18:26:24
4 installed on that site and then provide 18:26:27
5 data or reports to the -- to the website 18:26:29
6 operator. 18:26:31
7 So it -- there can be some 18:26:32
8 alternate organizations in delegation or 18:26:34
9 division of -- of how that comes to be. 18:26:40
10 MR. ANSORGE: I think this would 18:26:52
11 be a good time for us to take a five- 18:26:53
12 or ten-minute break. Is that all 18:26:55
13 right if we go off the record? 18:26:56
14 MR. MAO: Sure. 18:26:58
15 THE VIDEOGRAPHER: Off the 18:26:59
16 record. The time is 6:27 p.m. 18:27:00
17 (Whereupon, a brief recess is 18:27:34
18 taken.) 18:40:38
19 THE VIDEOGRAPHER: Back on the 18:40:38
20 record. The time is 6:41 p.m. 18:40:51
21 BY MR. ANSORGE: 18:40:54
22 Q. Mr. Hochman, if a user does not 18:40:55
23 sign in to a Google account while using 18:40:58
24 private browsing mode, then Google does 18:41:02
25 not join the data from those signed-out 18:41:04

80 (Pages 314 - 317)

CONFIDENTIAL

```
 1    consider it.                  19:34:07
 2        MR. ANSORGE:  Well, can you let     19:34:10
 3    us know later today whether you'll      19:34:12
 4    oblige us or not, or should we expect   19:34:14
 5    to be provided with a list of all the   19:34:17
 6    sources that Mr. Hochman considered     19:34:20
 7    and relied upon in forming his          19:34:22
 8    conclusions in this case?               19:34:25
 9        MR. MAO:  We've heard your          19:34:26
10    request.  We believe we complied with   19:34:27
11    the statute, but we will consider it.   19:34:29
12    I'd like -- I prefer less arguments     19:34:31
13    rather than more.                       19:34:33
14    BY MR. ANSORGE:                          19:34:37
15        Q.  Well, Mr. Hochman, two minutes  19:34:38
16    remaining.                               19:34:43
17        (Reporter clarification.)            19:34:43
18    BY MR. ANSORGE:                          19:34:43
19        Q.  Okay.  How is it now?            19:34:56
20        A.  The Internet gods have given you 19:34:59
21    a reprieve.  Go ahead.                   19:35:01
22        Q.  Yes.  Well, I wanted to thank    19:35:03
23    you for your time today.  I look forward 19:35:06
24    to spending more time with you tomorrow. 19:35:08
25    I appreciate your patience.              19:35:10
```

Page 358

```
 1    _____
      JONATHAN E. HOCHMAN
 2
 3
      _____
 4    Subscribed and sworn to
      before me this _____
 5    day of _____ 2022.
 6    _____
      Notary Public
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 360

```
 1        MR. ANSORGE:  For the documents      19:35:12
 2    that we have provided to -- which        19:35:13
 3    we've also produced, we can tomorrow     19:35:17
 4    or tonight provide you with the          19:35:20
 5    produced documents.  I don't know if     19:35:23
 6    you'll want them tomorrow or not.        19:35:25
 7        But with that, I look forward to     19:35:27
 8    seeing you tomorrow at 10:00 a.m.        19:35:29
 9        THE WITNESS:  10:00 a.m.             19:35:33
10        MR. MAO:  Thank you.  Thank you      19:35:35
11    everyone.                                19:35:36
12        THE VIDEOGRAPHER:  This              19:35:37
13    concludes -- this concludes volume 1     19:35:37
14    of the videotaped deposition of          19:35:46
15    Jonathan Hochman.  We are off the        19:35:48
16    record at 7:36 p.m.                      19:35:49
17        MR. MAO:  I would like a rough.      19:36:05
18        THE COURT REPORTER:  Do you want     19:36:17
19    an expedite transcript?                  19:36:19
20        MR. MAO:  Yes, please.               19:36:22
21        (Time noted:  7:36 p.m.)
22
23
24
25
```

Page 359

```
 1              CERTIFICATION
 2
 3        I, BELLE VIVIENNE, a Nationally
 4    Certified Realtime Reporter, do hereby
 5    certify:
 6        That the witness whose testimony as
 7    herein set forth, was duly sworn by me;
 8    and that the within transcript is a true
 9    record of the testimony given by said
10    witness.
11        I further certify that I am not
12    related to any of the parties to this
13    action by blood or marriage, and that I am
14    in no way interested in the outcome of
15    this matter.
16        IN WITNESS WHEREOF, I have hereunto
17    set my hand this 25th day of July  2022.
18
19
20        Belle Vivienne
21        BELLE VIVIENNE, CRR, CCR, RPR
22
23          *    *    *
24
25
```

Page 361

91 (Pages 358 - 361)

# EXHIBIT C



**CALL NOW**
<u>CLICK HERE</u>

# MORGAN & MORGAN, P.A. PRIVACY POLICY

Morgan & Morgan, P.A. and its affiliates (referred to herein as "MM", "we", "us", or "our") respects your privacy and is committed to complying with this privacy policy ("Privacy Policy"), which describes what information we collect about you, how we use it, with whom we may share it, and what choices you have regarding our use of your information. This Privacy Policy applies to personal information collected in connection with our website located at https://forthepeople.com and any other webpage that MM maintains that links to this Privacy Policy (collectively, the "Site"), any current or future mobile applications associated with MM or the website (collectively, the "App"), our email communications, our social media pages, other online or wireless offerings that post a link to the Privacy Policy, and other circumstances in connection with the services we provide (collectively, the "Platform").

**MESSAGE US**
**24/7/365**

## TYPES OF PERSONAL INFORMATION WE COLLECT

The types of personal information we collect will depend on the services you request and, if you are a client, the nature of our representation or your case. The table below describes some of the categories (with non-exhaustive examples) of personal information we may collect about you:

| **Categories** | **Examples** |
|---|---|

**A. Individual Identifiers and Demographic Information**

**Contact information**, such as name, email address, phone number, mailing address, job title, and organization.

**Identifiers**, such as client ID, username, IP address, device ID, and other online identifiers that may be collected automatically when you use the Platform.

**Demographic information**, such as date of birth and general location information like city, state, and geographic area.

---

**B. Sensitive Personal Information**

**Government ID numbers**, such as Social Security number, driver's license number, passport number, and other identification information.

**Financial information**, such as financial account numbers, wiring instructions, insurance policy numbers, invoices, and other payment or bank account details.

**Medical information**, such as doctor's notes, treatment plans, medical conditions, prescription medicines, insurance documentation, doctor visit information, daily symptom reporting, and other records and information.

---

**C. Geolocation Data**

**Precise physical location**, which we may collect via the

MESSAGE US
24/7/365

App if you consent to that collection through the App.

---

**E. Sensory Data**

**Call recordings**, such as our recordings of calls you make to our customer service team.

**Other sensory data**, such as any audio recordings, photographs, videos, or similar data that may be provided as part of a case file.

---

**F. Biometric Information**

**Biometric information**, such as facial scans or fingerprint scans if you opt-in to using this information for logging in or authenticating your account on the App.



---

**G. Commercial Information**

**Representation information**, such as details about your claim, case, or other legal matter, the distribution of settlement of other payments to you (if applicable).

**Account information**, such as the username and password you provide when you register for an account and any information stored or transmitted in your account or profile.

**Communications**, such as when you call or email us, confidential and privileged communications that you may make with our attorneys, and your

conversations with our digital chat services.

| | |
|---|---|
| **H. Internet or Network Activity** | **Online activity information**, such as linking pages, pages or screens viewed, time spent on a page or screen, navigation paths between pages or screens, information about activity on a page or screen, access times, duration of access, and other online activity information.<br><br>**Device information**, such as computer and mobile operating system, operating system type and version number, wireless carrier, manufacturer and model, browser type, screen resolution, general location information such as city, state, or geographic area, and other device information collected automatically. |
| **I. Professional or Employment-Related Information** | **Job application information**, such as your resume or CV, background check information, references, and other information.<br><br>**Employment information**, such as title, role, employer, employment history, current or past job history, and other professional information. |
| **J. Education** | **Education records**, such as |



| | |
|---|---|
| **Information** | transcripts or education history. |

| | |
|---|---|
| **K. Inferences Drawn from Personal Information** | **Profiles** reflecting preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, or aptitudes. |

We may collect the categories of personal information described above from the following sources:

- **Personal Information You Provide Us.** We collect the personal information that you provide to us while using our Platform, including contacting us, creating an account, applying for a position, or otherwise. Further, where expressly designated by MM, some portions of the Services may be used by active MM clients to communicate pursuant to an attorney/client relationship. You may choose whether or not to provide such information; however, the information may be required to respond to your request.



- **Personal Information Collected Automatically.** We and our third party providers may use cookies and other technologies such as log files, cookies, tracking pixels, and analytic tools and services to collect personal information automatically about you. Such information includes your geolocation and the online identifiers, device information, and online activity information described above.

- To facilitate the automatic collection described above, we may use the following technologies:

  - **Cookies.** A cookie is a small piece of data stored by your web browser on your computer or mobile device. We use cookies to collect information from you regarding your usage of the Platform in order to remember user preferences and settings, personalize your experience with the Platform, facilitate online advertising, and for security purposes. You may opt-out of the automatic collection of some information by referring to your web

browser or mobile device options or settings menu. However, doing so may disable many of the portions, features, or functionality of the Platform. Each browser is different, so check the "Help" menu of your browser to learn how to change your cookie preferences or visit http://www.allaboutcookies.org for more information.

- **Pixels.** Pixels, which are also known as "web beacons," or "clear GIFs," are typically used to determine whether a webpage or email was accessed or opened, or that certain content was viewed or clicked. Data collected from pixels is often used to compile statistics about usage of websites and the success of email marketing campaigns.

- **SDKs**. Software development kits, or "SDKs," are third-party computer codes used in connection with the App for a variety purposes, including to provide analytics regarding the use of the App, integrate with social media, add features or functionality to the App, or facilitate online advertising. SDKs may enable third parties to collect information directly via the App.



- **Personal Information Collected from Third Parties**. We may also collect or receive personal information from third parties, which may include:

  - **Our business partners**, such as third-party data providers and advertising partners.

  - **Public sources**, such as social media platforms and publicly-available records.

  - **Individuals or entities involved in our clients' legal matters**, such as doctors, other parties, and other individuals that you may direct to provide us with information.

  - **Referral sources**, such as members of our referral network, website submissions, and other referral sources.

## ONLINE ANALYTICS

We may use third party analytics tools, such as Google Analytics and Mouseflow, in order to better

understand your use of our Platform and how we can improve them. These tools collect information sent by your browser or mobile device, including the pages you visit and other usage information. For more information regarding how Google collects, uses, and shares your information please visit http://www.google.com/policies/privacy/partners/. For more information on Mouseflow's privacy practices, please visit https://mouseflow.com/privacy/. To prevent data from being used by Google Analytics, you can download the opt-out browser add-on at: http://tools.google.com/dlpage/gaoptout?hl=en. You can opt out of Mouseflow analytics at: https://mouseflow.com/opt-out/.

## USE OF PERSONAL INFORMATION

We may use the personal information we collect for the following purposes and as otherwise described in this Privacy Policy or at the time of collection:



- **To Provide Our Platform**. We use personal information to provide our services, including the Platform. For example, we use personal information:

  - to facilitate your requests for a free case evaluation and determine your legal needs;
  - to provide you with legal and other services, content, and features you request;
  - to create, manage, and monitor your account;
  - to respond to your inquiries and communicate with you, including placing calls or sending texts using any automated technology, including prerecorded messages;
  - to operate, troubleshoot, and improve the Platform;
  - to process your transactions, invoices, and settlement payments;
  - to understand your interests, personalize your experience on the Platform, and deliver information about products and services relevant to your interests;
  - respond to your inquiries and requests for customer support, including to investigate and address your concerns and monitor and improve our responses; and
  - enable security features of the Platform, such as by sending you security codes via email or SMS, and remembering devices from which you have previously logged in.

- **For Direct Marketing**. We may use your personal information to send you newsletters, legal updates, event information, marketing communications, and other information that may interest you.

- **For Research and Development**. We use personal information for research and development purposes and to understand how people are using the Platform, including by generating and analyzing statistics, preferences, and usage trends, to make our Platform and other offerings better, diagnose technical issues, and develop new features and functionality. As part of these activities, we may create aggregated, de-identified or other anonymous data from personal information we collect. We make personal information into anonymous data by removing information that makes the data personally identifiable to you. We may use this anonymous data and share it with third parties for our lawful business purposes, including to analyze and improve the Platform and promote our business.

- **For Hiring Purposes**. If you apply to one of our open positions, submit application information or inquire about a position, we will use your personal information as part of the evaluation, recruitment, and hiring of personnel, including conducting background checks and contacting references.



- **For Compliance, Fraud Prevention and Safety**.

  - to enforce our Terms of Use and other agreements we may have;
  - to comply with applicable laws, regulations, and legal processes;
  - to protect our, your, or others' rights, privacy, safety, or property (including by making and defending legal claims);
  - to maintain the security and integrity of our business, the Platform, users, our third party business partners and service providers our databases and other technology assets;
  - audit our internal processes for compliance with legal and contractual requirements and internal policies; and
  - prevent, identify, investigate and deter fraudulent, harmful, unauthorized, unethical or illegal activity, including cyberattacks and identity theft.

- **For Interest-Based Advertising**. We, our business partners, and our third party advertising partners may collect and use your personal information for

advertising purposes. We may contract with third-party advertising companies and social media companies to help us advertise our services, identify potential customers, and display ads on our Platform and other sites and services, including through the use of interest-based advertising. These companies may use cookies and similar technologies to collect information about you (including the device information and online activity information described above) over time across our Platform and other sites and services or your interaction with our emails, and use that information to serve ads that they think will interest you and/or use hashed customer lists that we share with them to deliver ads to you and to similar users on their sites and services. You can learn more about your choices for limiting interest-based advertising, in the "Advertising Choices" section below.

## SHARING OF PERSONAL INFORMATION

In addition to the specific situations discussed elsewhere in this Privacy Policy or as otherwise described at the time of collection, we may share personal information with the following categories of recipients:



- **Service Providers**. MM may share your personal information with third-party service providers that perform services for us or on our behalf, such as web-hosting companies, mailing vendors, analytics providers, event hosting services, and information technology providers. These third-party service providers have access to personal information needed to perform their functions, but may not use it for other purposes.

- **Other Law Firms or Lawyers**. MM may share, at your direction or with your permission, your personal information with other law firms and/or other lawyers where we jointly represent a client and when we refer cases or potential cases to other counsel, or as otherwise required in connection with our legal representation of you. Personal information provided pursuant to an attorney/client relationship may not be shared with third parties except as is done with such precautions to preserve the confidentiality of such information and any attorney/client privilege as may attach to such information.

- **Authorities, Law Enforcement, and Others**. MM may disclose personal information to comply with laws, regulations or other legal obligations, to assist in an investigation, to protect and defend our rights and property, or the rights or safety of third parties, to enforce our agreements, Terms of Use or this Privacy Policy or agreements with third parties, or for crime-prevention purposes.

- **Business Transactions**. MM may disclose your personal information to service providers, advisors, potential transactional partners, or other third parties in connection with the consideration, negotiation, or completion of a transaction (or potential transaction) such as a corporate divestiture, financing, merger, consolidation, acquisition, reorganization, sale, spin-off, or other disposition of all or any portion of the business or assets of, or equity interests in, MM or our related companies (including in connection with a bankruptcy or similar proceedings).

- **Advertising Partners**. We may share your personal information with third party advertising or joint marketing partners for the purposes described in this Privacy Policy or at the time of collection.



- **Professional Advisors**. We may disclose your personal information to our professional advisors, such as lawyers, bankers, auditors and insurers, where necessary in the course of the professional services that they render to us.

- **Affiliates and Related Companies**. We may share your personal information with companies that are affiliated with us (that is, that control, are controlled by, or are under common control with us) or may be affiliated with us in the future for the purposes described in this Privacy Policy.

- **Consent**. MM may otherwise disclose your Personal Information in accordance with your consent.

# YOUR CHOICES

- **Opt-Out of Marketing Communications**. If you no longer wish to receive marketing communications from us, you can let us know by sending an email to contact@forthepeople.com or by mail at the address provided below in "Contact Us". The

electronic marketing communications we send may also contain an opt-out mechanism. Please note that it may take up to 10 calendar days to remove your contact information from our marketing communications lists, so you may receive correspondence from us for a short time after you make your request. Please also contact us to update or correct your information if it changes or if you believe that any information that we have collected about you is inaccurate.

- **Text Messages**. We may offer communications via SMS texts or similar technology sent by MM or our service providers, such as when we send you text messages for customer service, account-related, or marketing purposes. To stop receiving text messages from a short code operated by MM, reply STOP. Note that we may send you a message to confirm receipt of your STOP request. Message and data rates may apply for this service. You can also opt-out of MM marketing texts by emailing us your request and mobile telephone number to contact@forthepeople.com.

- **Cookies**. Most browsers let you remove or stop accepting cookies from the websites you visit. To do this, follow the instructions in your browser's settings. Many browsers accept cookies by default until you change your settings. If you do not accept cookies, however, you may not be able to use all functionality of the Platform and our Site may not work properly. For more information about cookies, including how to see what cookies have been set on your browser and how to manage and delete them, visit www.allaboutcookies.org.



- **Advertising Choices**. Some of our advertising partners are members of the Network Advertising Initiative (NAI) and are subject to the Self-Regulatory Principles for Online Behavioral Advertising published by the Digital Advertising Alliance (DAA). You can obtain more information about these companies' information collection practices and opt-out of receiving interest-based advertising from participating NAI and DAA members at http://www.networkadvertising.org/managing/opt_out.asp and/or the DAA's website at optout.aboutads.info. You can also limit collection of your information for interest-based ads by blocking third party cookies in your browser settings or using privacy plug-ins or ad blocking software that help you block third party cookies. In addition, your mobile device settings may provide functionality to limit

use of the advertising ID associated with your mobile device for targeted online advertising purposes. If you opt-out of interest-based advertisements, you will still see advertisements online but they may be less relevant to you. Some of the third party advertising companies we may work with offer their own opt-out options that you can use to limit their use of your information for interest-based advertising. Please note that we also may work with companies that offer their own opt-out mechanisms, such as Google (https://adssettings.google.com/authenticated) and Facebook (https://www.facebook.com/about/ads), or do not participate in the opt-out mechanisms described above. Even after using these opt-out mechanisms, you may receive interest-based advertising from other companies.

- **Declining to Provide Information**. We need to collect personal information to provide certain services. If you do not provide the information requested, we may not be able to provide those services.

## INFORMATION SECURITY



MM takes commercially reasonable measures to secure and protect the personal information we collect. Nevertheless, no security system is impenetrable. We cannot guarantee the absolute security of your personal information. Moreover, we are not responsible for the security of information you transmit to us over networks that we do not control, including the Internet and wireless networks.

## LINKED WEBSITES

This Privacy Policy does not apply to third-party websites or social media features that may be accessed through links that we provide for your convenience and information. Accessing those links will cause you to leave MM's website and may result in the collection of information about you by a third party. We do not control, endorse or make any representations about those third party websites or their privacy practices, which may differ from ours. We encourage you to review the privacy policy of any site

you interact with before allowing the collection and use of your information.

## DO NOT TRACK REQUESTS

We adhere to the standards set out in this Privacy Policy and do not monitor or follow any Do Not Track browser requests. To find out more about "Do Not Track," please visit http://www.allaboutdnt.com.

## USING THE PLATFORM FROM OUTSIDE THE UNITED STATES

MM is headquartered in the United States of America, and we may have affiliates and service providers in the United States and other countries. Please be aware that your personal information may be transferred to, stored or processed in the United States, where our servers are located and our central database is operated, and other locations outside of your home country. The data protection and other laws of these countries might not be as comprehensive as those in your country. By using any portion of the Platform, you understand and consent to the transfer of your personal information to our facilities in the United States and those third parties with whom we share it as described in this Privacy Policy.



## CHILDREN'S PRIVACY

We do not knowingly solicit or collect personal information online from children under the age of 16. Please contact us as provided below in the Contact Us section if you believe we may have collected such information.

## YOUR CALIFORNIA PRIVACY RIGHTS

This section applies only to California residents. It describes how we collect, use, and share personal information of California residents when we act as a "business" as defined under California privacy law, and their rights with respect to their personal

information. For purposes of this section, "personal information" has the meaning given under California privacy law but does not include information exempted from the scope of those laws. In some situations we may provide a different privacy notice to certain categories of California residents, whereby that notice will apply instead of this section.

California Civil Code Section § 1798.83 permits users of our Platform who are California residents to request certain information regarding our disclosure of personal information to third parties for their direct marketing purposes. To make such a request, please send an email to contact@forthepeople.com.

In addition, the state of California provides California residents with certain other rights concerning their personal information. This section describes (1) the categories of personal information, collected and disclosed by MM, subject to California privacy law, (2) your privacy rights under California privacy law, and (3) how to exercise your rights.

### Personal Information That We Collect, Use, and Disclose

In accordance with California law, we describe:



- the categories of personal information we may have collected about you in the preceding 12 months and the categories of sources from which we collected your personal information in the section above called "Types of Personal Information We Collect";
- the business and commercial purposes for which we collect this information in the section above called "Use of Personal Information"; and
- the categories of third parties to whom we disclose this information in the section above called "Sharing of Personal Information".

MM must also disclose whether the following categories of personal information are disclosed for a "business purpose" or "valuable consideration" as those terms are defined under California privacy law, which also calls this latter category a "sale." Note that while a category below may be marked, that does not necessarily mean that we have personal information in that category about you.

In the preceding twelve months, we have disclosed the following categories of personal information in the manner described:

| Category | Personal Information is Disclosed for a Business Purpose | PurposePersonal Information is Disclosed for Valuable Consideration |
|---|---|---|
| **A. Individual Identifiers and Demographic Information** | Yes | Yes |
| **B. Sensitive Personal Information** | Yes | No |
| **C. Geolocation Data** | Yes | No |
| **E. Sensory Data** | Yes | No |
| **F. Biometric Information** | Yes | No |

MESSAGE US
24/7/365

| | | |
|---|---|---|
| **G. Commercial Information** | Yes; | No |
| **H. Internet or Network Activity** | Yes | Yes |
| **I. Professional or Employment-Related Information** | Yes | No |
| **J. Education Information** | Yes | No |
| **K. Inferences Drawn from Personal Information** | Yes | No |

**MESSAGE US**
24/7/365

**Your Privacy Rights Under California Law**

Under California law, subject to certain exceptions, California residents have the following rights with respect to their personal information:

- **Access**. You have the right to request information on the categories of personal information that we

collected about you in the previous 12 months, the categories of sources from which the personal information was collected, the specific pieces of personal information we have collected about you, the business and commercial purposes for which such personal information is collected and shared, and the categories of third parties to whom we disclose such personal information.

- **Erasure**. You have the right to request we delete your personal information, subject to certain exceptions.
- **Opt-Out of Sales**. If we "sell" your personal information, you can opt-out.
- **Non-discrimination**. California residents are entitled to exercise the rights described above free from discrimination or legally prohibited increases in the price or decreases in the quality of our products and services.

Please note, these rights are not absolute and in some situations we may not be able to respond to your request, such as when a legal exemption applies or if we are not able to verify your identity.

**How to Request to Exercise Your California Privacy Rights**

If you would like to exercise your rights listed above, please follow the directions below:



- **Access and Erasure Rights**. Send (or have your authorized agent send) an email to contact@forthepeople.com or call us toll-free at: 1-(844) 256-4550.
- **Right to Opt-Out of the Sale of Personal Information**. Under California law, some of the personal information that we share with our advertising partners may qualify as a "sale" as defined under California privacy law. To exercise your right to opt-out of such "sale", please:
    - Email us at contact@forthepeople.com, or
    - Click here:
      Do Not Sell My Personal Information.

While we take measures to ensure that those responsible for receiving and responding to your request are informed of your rights and how to help you exercise those rights, when contacting us to exercise your rights, we ask you to please adhere to the following guidelines:

- **Tell Us Which Right You Are Exercising:** Specify which right you want to exercise and the personal information to which your request relates (if not to

you). If you are an authorized agent acting on behalf of another consumer, please clearly indicate this fact and your authority to act on such consumer's behalf. We may require the requester's proof of identification, the authorized agent's proof of identification, and any other information that we may request in order to verify your request, including evidence of valid permission to act on requester's behalf.

- **Help Us Verify Your Identity:** Provide us with information to verify your identity. Please note that if we cannot initially verify your identity, we may request additional information to complete the verification process. Any personal information you disclose to us for purposes of verifying your identity will solely be used for the purpose of verification.
- **Direct Our Response Delivery:** Please provide us with an e-mail or mailing address through which we can provide our response. If you make the request by email, unless otherwise requested, we will assume that we can respond to the email address from which you made the request.

You will not have to pay a fee to access your personal information (or to exercise any of the other rights). However, we may charge a reasonable fee or decline to comply with your request if your request is clearly unfounded, repetitive, or excessive.



We try to respond to all legitimate requests within 45 days of your request. Occasionally it may take us longer than 45 days to respond, for instance if your request is particularly complex or you have made a number of requests. In this situation, we will notify you of the delay, and may continue to update you regarding the progress of our response.

## CHANGES TO THIS PRIVACY POLICY

MM may change this Privacy Policy from time to time to reflect changes in our practices or in applicable law. Such changes will be effective upon posting the revised Privacy Policy on our Platform. You will be able to tell when this Privacy Policy was last updated by the Last Updated date included at the bottom of this Privacy Policy. By continuing to use our Platform, or communicating electronically with us thereafter, you agree to accept such changes to this Privacy Policy.

## CONTACT US

If you have any questions about this Privacy Policy or MM's information privacy practices, please contact us at:

E-mail: contact@forthepeople.com

Telephone: (407) 420-1414

Mail: Morgan & Morgan, PA, Attn: Privacy Policy, 20 North Orange Ave, Suite 1600, Orlando, FL 32801

**LAST UPDATED:** December 23, 2021

# Get a FREE case evaluation today

MESSAGE US
24/7/365

As the largest personal injury law firm in America, Morgan & Morgan has recovered over $15 billion. Contact us today for a free case evaluation.

First Name                                    Last Name

Phone Number                              Zip Code

E-mail

- Case Type -

Please describe what happened

☑ By submitting you agree to our Terms & Privacy Policy and you are providing express consent to receive automated communications including calls, texts, emails, and/or prerecorded messages.

## SUBMIT FORM
**FREE CASE EVALUATION** ↗

Results may vary depending on your particular facts and legal circumstances.

**MORGAN & MORGAN**

 **MESSAGE US**
24/7/365

### About

Our results

Who we are

In the community

Pound law

Referrals

TV commercials

### Quick Links

Careers | Join our team

Accessibility

Complaints

Giving back

Shop

Scholarships

Opt Out

### Resources

Blog

Testimonials

Privacy Policy

Disclaimers and Terms of Use

FAQ

In the media

**Social**



MORGAN & MORGAN



Sign up to our newsletter below to stay up to date!

Email address                          **Subscribe**

20 North Orange Ave, Suite 1600, Orlando, FL 32801
For a full list of locations in your area please visit our Office
Locations page.

This site is designed to be accessible to and usable by people with
and without disabilities. Please contact us if you encounter an
accessibility or usability issue on this site. Attorney advertising.
Prior results do not guarantee a similar outcome.

©2023 Morgan and Morgan, P.A. All rights reserved

