# PLAINTIFFS' MOTIONS IN LIMINE 1 TO PRECLUDE GOOGLE FROM RELYING ON NON-PUBLIC SOURCE CODE AT TRIAL

# Exhibit 3

# Redacted Version of Document Sought to be Sealed

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY**

SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| Suite 5100 | Suite 1400 | Suite 3800 |
| 1000 Louisiana Street | 1900 Avenue of the Stars | 1201 Third Avenue |
| Houston, Texas 77002-5096 | Los Angeles, California 90067-6029 | Seattle, Washington 98101-3000 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

Alexander Frawley
Direct Dial (212) 729-2044

E-Mail AFrawley@susmangodfrey.com

April 30, 2021

VIA ELECTRONIC MAIL

Diane M. Doolittle
dianedoolittle@quinnemanuel.com
Thao Thai
thaothai@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

Andrew H. Schapiro
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606

Stephen A. Broome
stephenbroome@quinnemanuel.com
Viola Trebicka
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

William A. Burck
williamburck@quinnemanuel.com
Josef Ansorge
josefansorage@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005

Jonathan Tse
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111

Jomaire Crawford
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010

**Re:** *Chasom Brown, et al., v. Google LLC*
**Case No. 5:20-cv-03664-LHK**
**Google Source Code**

Counsel:

We write concerning Plaintiffs' Requests for Production 47, 51, 54, 58, 62, 66, 69, and 90, each seeking specific Google source code:

April 30, 2021
Page 2

- **47**: Google source code for the Google scripts that cause a user's device to send information to Google's servers when users are in private browsing mode.
- **51**: Google source code embedded into the code of websites that use Google Analytics.
- **54**: Google source code for Google Analytics and Google's various ad properties that run on Google's servers, to assess how Google collects and uses data from users' activity while in a private browsing mode.
- **58**: Google source code embedded into the code of websites that use Google Analytics User-ID.
- **62**: Google source code embedded into the code of websites that use Google cookies.
- **66**: Google source code embedded into the code of websites that use Google Ad Manager.
- **69**: Google source code associated with X-Client Data Header, GStatic, and Approved Pixels.
- **90**: Source code for Incognito mode, including documents sufficient to identify changes to that source code since Google's launch of Incognito mode in September 2008.

Google asserts in response to each of these requests that "Plaintiffs can obtain *certain* responsive information from publicly available sources." But this does not justify Google's position that "production of non-public, proprietary source code is not necessary to ascertain any particular issue relevant to Plaintiffs' allegations."

Publicly available code is not a reasonably usable substitute for the complete, versioned, unobfuscated, and commented code that Google uses to create the functionality at issue. Such Google source code is relevant to at least three aspects of this case, tied to Plaintiffs' claims, Google's defenses, and Plaintiffs' prayer for relief.

1. Google's collection of private browsing data;
2. Google's association of private browsing data with other user data; and
3. Google's use of private browsing data.

### Google's collection of private browsing data

Plaintiffs allege that Google scripts embedded within websites direct users' browsers to duplicate and send private browsing information to Google's servers. Google's surreptitious copying includes private information from the GET requests along with, for example:

- The user's IP address;
- Information identifying the user's browser software, including fingerprinting data;
- Any "USER-ID" issued by the website;
- The user's geolocation; and
- Information contained in Google cookies already existing on the browser's cache.

April 30, 2021
Page 3

SAC ¶¶ 63-65.  Mr. Adkins described some of those Google data collection processes during his deposition, confirming that Google has designed those website scripts to copy and collect the same categories of personal information even when people are in a private browsing mode.  Plaintiffs seek access to non-public Google source code to better understand Google's collection process and the precise data collected.  The following RFPs encompass Plaintiffs' request for Google to produce non-public source code on this topic: 47, 51, 54, 58, 62, 66, 69, 90.

### Google's association of private browsing data with user profiles

Plaintiffs also seek access to non-public Google source code to determine how Google associates private browsing data with users and/or users' devices.  Plaintiffs specifically seek access to source code related to Google's storing, updating, refining, modifying, and profiling of users and their data.

Plaintiffs allege that Google uses various tools to associate private browsing data with user profiles, including Google cookies, GStatic, Approved Pixels, Geolocation data, and a user's IP address.  SAC ¶¶ 92-93.  The limited discovery to date has confirmed Google's ability to associate private browsing data with other data and Google's tracking of logged-out browsing.  Plaintiffs seek non-public source code to continue exploring this issue.

As one example, Plaintiffs recently learned about   See GOOG-BRWN-00026434. Plaintiffs seek discovery into these and other "pseudonymous user identifiers that can tie log records together," such as ▇▇▇▇▇▇▇, and GAIA IDs.  GOOG-BRWN-00028926; *see also* GOOG-BRWN-00027290 (referencing the ▇▇▇ cookies).  Plaintiffs have also learned about the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Plaintiffs' experts should be permitted access to the Dremel search tool and other materials to explore the data Google has collected about the named Plaintiffs and their devices and better understand Google's process for all class members.  *See* GOOG-BRWN-00029458.

These issues are relevant to Plaintiffs' claims and Google's defenses.  In the Order denying Google's motion to dismiss, this Court rejected Google's consent defense in part based on the unlawful-purpose exception.  *See* 18 U.S.C. § 2511(2)(d) (consent is not a defense where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State").  Judge Koh applied this exception in light of Plaintiffs' allegations that "Google intercepted their communications for the purpose of associating their data with preexisting user profiles," reasoning that "[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies this exception."  Dkt No. 113 at 20.

April 30, 2021
Page 4


This Court also cited these allegations in support of its holding that Plaintiffs alleged a reasonable expectation of privacy in their private browsing communications. Judge Koh rejected Google's attempt to distinguish *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) in part because, "like the Plaintiffs in *Facebook Tracking*, Plaintiffs have alleged that Google 'obtained a comprehensive browsing history of an individual, no matter how sensitive the websites visited. Indeed, Plaintiffs' complaint includes a section titled 'Google Creates a User Profile on Each Individual.' That section alleges that . . . Google is able to associate the data collected from users in 'private browsing mode' with specific and unique user profiles." Dkt No. 113 at 38 (citations omitted).

The following RFPs encompass Plaintiffs' request for Google to produce non-public source code on this topic: RFPs 51, 54, 58, 62, 66, 69, and 90. At a minimum, Google should produce source code for Google internal and external facing applications, tools, and processes that use the information described above to generate profiles on users and/or devices, including for Google's Ad Personalization service. Google should also permit Plaintiffs' experts to use the search tool shown at GOOG-BRWN-00029458 to review the data Google has regarding the named Plaintiffs and their devices.

### Google's use of private browsing data

Plaintiffs also seek access to non-public Google source code to understand how Google uses and profits from the private browsing data that Google collects. This includes Google source code showing how Google uses the data described above to direct targeted advertisements to users and their devices.

Plaintiffs allege that Google's collection of private browsing data allows Google to charge advertisers and websites more for its services, including through targeted advertising, and that Google uses private browsing data to improve Google's own algorithms and technology, including Google search. SAC ¶¶ 91, 93, 115. This topic is also relevant to Google's consent defense and Plaintiffs' common law and constitutional claims, as well as Plaintiffs' CDAFA claim. The CDAFA makes it a "public offense" to "[k]nowingly access[] and without permission take[], cop[y], or make[] use of any data from a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2) (emphasis added); see id. § (d)(1) (violation of (c)(2) is a felony). Google "ma[d]e use of [the] data" in a manner for which it lacked permission, namely: associating the data with users' preexisting profiles; selling it to advertisers; and using it to direct targeted advertisements to Plaintiffs and their devices. SAC ¶¶ 91, 93, 115. This topic is also relevant to Plaintiffs' damages. Plaintiffs seek "non-restitutionary disgorgement of all of [Google's] profits that were derived, in whole or in part, from Google's interception and subsequent use of Plaintiffs' communications." SAC Prayer for Relief ¶ F. The following RFPs encompass Plaintiffs' request for Google to produce non-public source code on this topic: RFPs 51, 54, 58, 62, 66, 69, and 90. At a minimum, Google should produce source code showing how Google's Ad Personalization

April 30, 2021
Page 5

service targets advertisements to users and/or devices.  Google should also produce source code that personalizes search results or Google news content for users and/or devices.

## Next Steps

The protective order includes specific provisions regarding source code, and Plaintiffs have retained experts who are ready and able to review Google source code.  We would like to start providing them with access over the next two weeks.  Please let us know when you are available to meet and confer about these issues and the timeline for Google's production.

Sincerely,

*Alexander Frawley*
Alexander Frawley

cc:   all counsel of record