# PLAINTIFFS' MOTIONS IN LIMINE 1 TO PRECLUDE GOOGLE FROM RELYING ON NON-PUBLIC SOURCE CODE AT TRIAL

# Exhibit 5

# Redacted Version of Document Sought to be Sealed

**Highly Confidential – Attorneys' Eyes Only**

SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

| | | |
|---|---|---|
| SUITE 5100<br>1000 LOUISIANA STREET<br>HOUSTON, TEXAS 77002-5096<br>(713) 651-9366 | SUITE 1400<br>1900 AVENUE OF THE STARS<br>LOS ANGELES, CALIFORNIA 90067-6029<br>(310) 789-3100 | SUITE 3800<br>1201 THIRD AVENUE<br>SEATTLE, WASHINGTON 98101-3000<br>(206) 516-3880 |

ALEXANDER FRAWLEY
DIRECT DIAL (212) 729-2044

E-MAIL AFRAWLEY@SUSMANGODFREY.COM

June 30, 2021

VIA ELECTRONIC MAIL

Diane M. Doolittle
dianedoolittle@quinnemanuel.com
Thao Thai
thaothai@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

Andrew H. Schapiro
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606

Stephen A. Broome
stephenbroome@quinnemanuel.com
Viola Trebicka
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

William A. Burck
williamburck@quinnemanuel.com
Josef Ansorge
josefansorage@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005

Jonathan Tse
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111

Jomaire Crawford
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010

Re:   *Chasom Brown, et al., v. Google LLC*
      Case No. 5:20-cv-03664-LHK

Counsel:

We write in response to your May 25, 2021 letter, and as a follow-up to our June 10, 2021 meet and confer regarding the production of non-public source code.

Your letter correctly notes that this case is about "Google's disclosures to the putative class members." Tse Letter at 3. But your letter fails to grasp that this case is about much more.

June 30, 2021
Page 2

Plaintiffs allege that after Google unlawfully collects private browsing data, Google associates the data with users and devices. SAC ¶¶ 92-93. Google is therefore able to charge advertisers and websites more for its services, including through targeted advertising, and Google uses private browsing data to improve Google's own algorithms and technology, including Google search. SAC ¶¶ 91, 93, 115.

These are not "far flung theories," as you suggest. Tse Letter at 3. Discovery supports Plaintiffs' allegations, including very recent discovery. "Each device, browser, and mobile app has a separate Biscotti ID." GOOG-BRWN-00078290. Google is therefore able to create a " . . . graph of a user's Biscotti IDs" and "identif[y] users across devices." *Id.*; see also GOOG-BRWN-00026161 ("A                                                                                                                                                                                                     "). Similarly, Dr. Berntson testified that "Biscottis . . . behind the scenes are associated with something like a device identifier." Tr. at 153:12-14. The              graphs "                                                                                                                                                      ." Tr. at 210:15-23. Google developed these tracking mechanisms because "[a]dvertisers are increasingly seeing more and more conversions that are happening in a cross device manner given that each user owns more diversified screens." GOOG-BRWN-00026161. The              "                                                                                                  ." Tr. at 198:7-11.

Discovery also undermines the claim in your letter that "Incognito mode is intentionally designed to prevent websites that use Google services (and Google) from determining whether a user is in private browsing or not." Tse letter at 3. Google's documents reveal that this goal "is to some extent violated due to the missing features in incognito." GOOG-BRWN-00047393. In any event, your letter is improperly focuses on whether there is a "*specific* source code for collecting private browsing data, associating private browsing data with other user data, or using private browsing data." Tse Letter at 3 (emphasis added). Plaintiffs are entitled to inspect the source code that shows how Google associates private browsing data with users and their devices, whether or not that source code is "specific" to private browsing data. Google's repeated assurances that "it does not link logged-out private browsing data to *identified users*" misapprehends the point. *Id.* at 3 (emphasis added). This was Google's initial position on Plaintiffs' RFP 10. When pressed to show that Google cannot link logged-out private browsing activity to *devices or* users, Google refused. Now Plaintiffs know why.

The cases cited in your May 25 letter do not support Google's refusal to produce source code. In each of them, the request was flawed for reasons not present here. The defendant in *In re Apple & AT & TM Antitrust Litigation* had previously made available the requested source code, and the "plaintiffs' expert . . . made no effort whatsoever to review" it. 2010 WL 1240295, at *3 (N.D. Cal. Mar. 26, 2010). Here, Google has not yet made any source code available for inspection. In *Drone Technologies, Inc. v. Parrot S.A.*, the district court had contravened Local Patent Rules by 1) requiring the defendant to produce source code in its initial disclosures, and 2) requiring the defendant to produce the source code, rather than just make it available for inspection.

June 30, 2021
Page 3

838 F.3d 1283, 1294 (Fed. Cir. 2016). This case is much further along in discovery, and Plaintiffs are asking to inspect the source code. *Congoo, LLC v. Revcontent LLC*, turned on the "irreparable harm" that production of source code "to a competitor" would bring. 2017 WL 3584205, at *2, *4 (D.N.J. Aug. 10, 2017). And the plaintiffs in *Viacom International Inc. v. Youtube Inc.* sought access to source code for purposes of demonstrating what else the defendants "could be doing" to control copyright infringement on their websites, and so the court denied the motion to compel because the "notion that examination of the source code might suggest how to make a better method of infringement detection is speculative." 253 F.R.D. 256, 260 (S.D.N.Y. 2008). Here, by contrast, Plaintiffs seek access to the source code to understand how Google's tracking technology "operate[s] as it does." *Id.*

Your remaining cases are even further afield. The requests at issue in these cases were not at all tailored to the claims. *See 3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 112 (2019) (denying motion to compel and instructing plaintiffs to "hone their allegations to specific security systems or locations, rather than requesting 'all source code operating [within] the government's security systems'"); *Campbell v. Facebook Inc.*, 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2016) (because the case was "limited to three specific uses of URLs in messages . . . [,] Plaintiffs [were] not automatically entitled to review the entirety of Facebook's source code during the entire class period"); *Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483, 486 (D.P.R. 2011) (denying motion to compel "the production of the entire source code of the allegedly infringing software").

Contrary to your letter's representations, the case law supports Plaintiffs' requests. "There is . . . no source code exception to the production requirements of Fed. R. Civ. P. 34." *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *1 (N.D. Cal. May 4, 2012); *see also Forterra Sys., Inc. v. Avatar Factory*, 2006 WL 2458804, at *1 (N.D. Cal. Aug. 22, 2006) (explaining that source code should be produced to the extent it is discoverable under the Federal Rules). Here, Google's source code is discoverable because it demonstrates "whether [Google] fully performed" its obligation not to track users within private browsing modes. *Metavante Corp. v. Emigrant Sav. Bank*, 2008 WL 4722336, at *2 (E.D. Wis. Oct. 24, 2008) (granting motion to compel); *see also In re Facebook PPC Advert. Litig.*, 2011 WL 1324516, at *3 (N.D. Cal. Apr. 6, 2011) ("The source code in this case implemented Facebook's desired filtering, and whether that filtering lived up to Facebook's claims and contractual obligations is the issue here.") Moreover, "the value of the source code . . . outweighs [any] burden," particularly because Plaintiffs have "offered to mitigate the cost by using [their] outside consultants to review the code." *Metavante Corp.*, 2008 WL 4722336.

During our June 10 meet and confer, you proposed that Plaintiffs narrow their request to a more limited set of source code. To move the ball forward, Plaintiffs propose that, as a first step, Google make available for inspection the source code relevant to Google's mapping of logged-out browsing activity with device identifiers, including source code showing how Google maps device identifiers with GAIA for conversion tracking. Document productions and deposition testimony

June 30, 2021
Page 4

have been helpful, but they are no substitute for the source code that Google uses to create these functionalities. Source code inspection is critical to obtaining a detailed and exhaustive understanding of how these functionalities are implemented and operate, including particular design choices made by software engineers that may not show up in documents. Relatedly, documents may not capture how the functionalities evolve over time. Source code does.

Sincerely,

Alexander Frawley

cc:     all counsel of record