# EXHIBIT 2

# Redacted Version of Document Sought to be Sealed

                                                                    1

1                       ROUGH DRAFT DISCLAIMER

2              THIS DISCLAIMER MUST BE READ AND ACCEPTED
   BEFORE PROCEEDING WITH REALTIME AND/OR DRAFT
3  TRANSMISSION.

4              You are about to receive a draft
   transcript via realtime litigation support systems.
5  There will be discrepancies between this and the
   certified transcript, including but not limited to
6  page and line number discrepancies, the appearance
   in this version of mistranslated and/or untranslated
7  words and/or numbers, and such other variants with
   the final transcript as from time to time may occur
8  in the normal course of verbatim stenographic
   processes.
9
               THIS VERSION IS TO BE USED AND CONSIDERED
10 ONLY AS ATTORNEY WORK PRODUCT AND IS NOT TO BE
   CITED.  NO COMMENTS PERTAINING TO THIS TRANSLATION
11 ARE TO BE MADE ON THE RECORD.  THIS VERSION UNDER NO
   CIRCUMSTANCES WHATSOEVER CONSTITUTES THE OFFICIAL
12 TRANSCRIPT.

13             Proceeding beyond the disclaimer
   constitutes acceptance of the preceding terms and
14 conditions and is an acknowledgement of your order
   for the official certified transcript.
15

16

17

18

19

20

21

22

```
23

24

25
```

CONFIDENTIAL UNCERTIFIED ROUGH DRAFT - JONATHAN HOCHMAN - 10-10-23

⇞

2

```
 1      11:34 a.m.
 2              THE VIDEOGRAPHER:  Good morning.
 3      We are going on the record at 11:34 a.m. Eastern
 4      Standard Time.  Please note that the deposition is
 5      being conducted virtually.  Quality of recording
 6      depends on the quality of camera and internet
 7      connection of the participants.  What is seen from
 8      the witness and heard on screen is what will be
 9      recorded.  Audio and video recording will continue
10      to take place unless all parties agree to go off the
11      record.
12              This is the video-recorded deposition
13      of Jonathan Hochman in the matter of Chasom Brown
14      versus Google LLC, Case Number 420-CV-03664-YGR-SVC.
15              This deposition is being conducted
16      using virtual technology.  My name is Koryn Coalson,
```

17   representing Veritext.  I'm the videographer today.
18   And the court reporter is Sandie Semevolos from the
19   firm Veritext as well.
20                I'm not authorized to administer an
21   oath.  I'm not related to any party in this action.
22   If there are any objections to the proceeding,
23   please state them at any time or state them at the
24   time of your appearance.
25                Counsel and all present, including

CONFIDENTIAL UNCERTIFIED ROUGH DRAFT - JONATHAN HOCHMAN -
10-10-23

                                                                3

1   remotely will now state their appearance and
2   affiliations for the record, beginning with our
3   noticing attorney.
4                MR. BROOME:  Stephen Broome from
5   Quinn Emanuel representing Google.  And joined by my
6   colleague Joseph Margolies.
7                MR. FRAWLEY:  And Alexander Frawley
8   Frawley from Susman Godfrey for the plaintiffs and
9   the witness, joined by my colleagues Mark Mao, Boies
10  Schiller Flexner, and Ryan McGee of Morgan & Morgan.

11                THE VIDEOGRAPHER:  Will the court

12   reporter please swear in our witness.

13                THE REPORTER:  Good morning.  In

14   proceeding today, the parties agree and stipulate

15   that the court reporter shall administer the oath

16   and report the deposition stenographically from a

17   remote location and that the witness is testifying

18   in Connecticut under the penalty of perjury as if

19   sworn in person.

20                Before we proceed, I will ask counsel

21   to state their name and agreement to the above

22   stipulation or state if there is any objection.

23

24

25                MR. BROOME:  Steve Broome, no


CONFIDENTIAL UNCERTIFIED ROUGH DRAFT - JONATHAN HOCHMAN - 10-10-23
↑

                                                    4

 1   objection.

 2                MR. FRAWLEY:  Alexander Frawley, no

 3   objections.

 4                THE REPORTER:  Thank you.  With that,

 5   Mr. Hochman, if I can please ask you to raise your

 6   right hand.

 7

 8   WITNESS

 9       being first duly sworn and/or affirmed remotely

10       via Zoom, was examined and testified on his

11       oath as follows:

12

13              THE REPORTER:  Thank you, sir.

14   Please state your full name for the record.

15              THE WITNESS:  Jonathan E. Hochman,

16   H-o-c-h-m-a-n.

17   BY MR. BROOME:

18       Q.   Good morning, Mr. Hochman.

19       A.   Good morning.

20       Q.   All right.  So, as we discussed earlier,

21   we are going to mark as Hochman Exhibit 33 the index

22   that your counsel sent over.  Just let me know when

23   you see that in the exhibit share.

24       A.   Okay.  I got it.

25       Q.   And we are going to mark as Exhibit 34

10    A.    Could be used.  Could be used, not can be
11 used, could be used.
12    Q.    I'm not asking you for any legal opinions.
13 I want to know if you have a way to determine how
14 accurate the bit would be in isolating private
15 browsing data?
16    A.    I mean, I think you have to make an
17 inference that the bit -- about the accuracy of the
18 bit based upon the idea that Google deployed it and
19 had it in deployment for year.  I think that some
20 inference can be made about that.
21    Q.    So, to what extent is it accurate then?
22    A.    Well, I tested other incognito detection
23 bits, and they seem to be very accurate.
24    Q.    All right.  And --
25    A.    I mean, I pointed that out in the prior

CONFIDENTIAL UNCERTIFIED ROUGH DRAFT - JONATHAN HOCHMAN - 10-10-23

75

1 paragraph we were discussing.
2    Q.    Yeah, so I just want you to answer my
3 question.  To what extent is the ███████████

4    bit accurate?

5          MR. FRAWLEY:  Object to the form.

6    A.   I mean, it's accurate enough for Google to

7    deploy it and keep using it.

8    Q.   Can you put a percentage on it?

9    A.   I can't put a -- I can't put a percentage

10   on it because Google hasn't revealed that and they

11   haven't given me a selection of -- the opportunity

12   to test it.

13   Q.   You just said that it would be -- it's

14   accurate enough for Google to use it.  Google wasn't

15   using it to isolate private browsing data, was it?

16   A.   I mean, Google -- I'm not sure we have a

17   full understanding of all the ways that Google was

18   using it.  Because I think that it came out very

19   late after two years worth of fact discovery was,

20   you know, water down river.

21   Q.   Well, the Benko declaration at least does

22   not suggest that Google was using the bit to isolate

23   private browsing data; right?

24         MR. FRAWLEY:  Object to form.

25   A.   I'm not sure all the ways that that bit

76

```
 1   was being used.  I mean I think I made a point of
 2   saying that had I known about this sooner, I would
 3   have liked to have investigate it and learned more
 4   about the ways that it was being used.
 5        Q.   Do you have an opinion on whether the bit
 6   was being used to isolate private browsing data?
 7        A.   That's an unknown.
 8        Q.   That works.
 9             At paragraph 47 of your report, you say
10   that the ▮ logs reveal new uses of private browsing
11   data.
12             Do you see that?
13        A.   Yes.
14        Q.   And those uses pertain to unauthenticated
15   data generally; right?
16             MR. FRAWLEY:  Object to form.
17        A.   Let me just take a quick read through this
18   because you are sort of framing it differently than
19   I did.
20                     (Pause.)
21        A.   Okay, go ahead.  Do you want to reask the
22   question?
```