# Google's Reply In Support of Motion to Exclude Plaintiffs' Late Disclosed and Irrelevant Witness Blake Lemoine (Dkt. 1015)

# Redacted Version of Document Sought to be Sealed

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Rachael L. McCracken (CA Bar No. 252660)
rachaelmccracken@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
Joseph H. Margolies (admitted *pro hac vice*)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
D. Seth Fortenbery (admitted *pro hac vice*)
sethfortenbery@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Counsel for Defendant Google LLC (additional counsel listed in signature block below)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| CHASOM BROWN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' LATE DISCLOSED AND IRRELEVANT WITNESS BLAKE LEMOINE (DKT. 1015)**<br><br>The Honorable Yvonne Gonzalez Rogers<br>Date: November 29, 2023<br>Time: 9:00 a.m.<br>Location: Courtroom 1 – 4th Floor<br>Trial Date: January 29, 2024 |

## I. INTRODUCTION

Two things are evident: Plaintiffs' late-disclosed witness Blake Lemoine possesses no knowledge relevant to the issues in this case and allowing him to take the stand would invite a circus. As to the first point, Mr. Lemoine's work at Google centered on search and artificial intelligence—neither of which is implicated in this case. Dkt. 1042-1 ("Lemoine Decl.") at ¶ 7. That—not any subterfuge by Google—is why he never came up in over two years of discovery. As to the second point, Mr. Lemoine has championed a series of what charitably could be called unusual positions (discussed *infra*) as to which Google would have every right to cross examine him, particularly in light of his stated intent to testify that Google fired him for being a "whistleblower." Plaintiffs' assertion that Lemoine would be a "bombshell" witness is correct, but only in that his presence would destroy any hope of a circumscribed and meaningful proceeding. He should be excluded.

## II. ARGUMENT

### A. Mr. Lemoine Does Not Have Relevant Personal Knowledge and Plaintiffs' Have No Basis to Allege that Google "Tried to Hide" Him.

Plaintiffs' allegations are expressly limited to Google's receipt of web browsing activity from "non-Google websites." Dkt. 886 ¶ 192. As Mr. Lemoine concedes, before his work on Google's chatbot began, he worked on Google *Search*—a first party product that Google offers on *google.com* (*i.e.*, a *Google* website). *See* Lemoine Decl. ¶ 7 ("I contributed to the creation and maintenance of predictive analytic systems *for Google Search*." (emphasis added)); Blake Lemoine, *Explaining Google*, Medium (May 23, 2019), https://cajundiscordian.medium.com/explaining-google-c73caa0cd091 ("I'm a quality engineer in Search.").

Searches on google.com are not at issue in this litigation, as Plaintiffs have expressly limited their claims to data that is collected by Google scripts installed on "non-Google website[s]." Dkt. 886 ¶ 192. And despite Plaintiffs' claim that Mr. Lemoine will somehow elucidate Google's purported "uses" of private browsing data, Google's use of private browsing data has not been in dispute *for years*. Google explained long ago that data from private browsing is used just like any

other unauthenticated data.[1] Those uses have also been apparent throughout the case in Google's Privacy Policy, which describes in plain language the reasons why Google collects data. *See* Dkt. 908-2, Ex. 112 at 6–7 ("We use your information to deliver our services . . . ensure our services are working as intended . . . help us develop new [services] . . . [and] customize our services for you."); *id.* at 8 ("We also use algorithms to recognize patterns in data."). Mr. Lemoine's proposed testimony is therefore neither relevant nor revelatory. Any limited probative value does not justify the risk of distraction and undue prejudice posed by allowing him to testify at trial.

Unable to justify their prejudicial delay in identifying Mr. Lemoine, Plaintiffs now allege—without any basis—that Google "**concealed** a critical witness from Plaintiffs for years," Opp. at 1, "**prevented** Plaintiffs from discovering" Mr. Lemoine, *id.* at 3, and "**tried to** hide" him "for years," *id.* at 4 (emphasis added). These serious allegations, with absolutely no support, are irresponsible, unprofessional, and should not be countenanced. Google did not identify Mr. Lemoine in the course of discovery for a simple reason: he does not work—and has never worked—on the Chrome browser, Google web services installed on non-Google websites, or other products and services that are actually at issue in this case. His irrelevance to the actual dispute is not hypothetical but made plain by the fact that his name did not come up in two years of expansive discovery (including over 50 depositions and over 20 hearings), and he is only included in *two* of the *more than 1,600 exhibits* on both parties' exhibit lists. Plaintiffs' unfounded accusations of misconduct have no "evidentiary support." Fed. R. Civ. P. 11(b)(3).

---

[1] *See* Dkt 798-1, Ex. 1 at 3–4 (Google's Nov. 6, 2020 Responses and Objections to Plaintiffs' RFA No. 2) ("Google code provided to third party websites for the purpose of [transmitting data to Google] is not designed to differentiate between private browsing/Incognito modes and other browsing modes."); *id.* at 6–7 (Resp. to Plf.'s RFA No. 7) ("[W]hen a user is not signed into his or her Google account . . . Google may still receive data from its services—including from users in Incognito mode . . . [and] may use the data associated with cookies to personalize advertisements displayed to the user."); *id.* at 9–10 (Response to Plf.'s RFA No. 11) ("Google . . . has earned revenue from advertising shown to users visiting websites that use Google's advertising services, and . . . depending on the user's settings and plug-ins, Google may have been able to display ads using data Google received while a user was in Incognito mode."). Google has consistently explained this in response to Plaintiffs' assorted histrionics about alleged revelations of Google's uses of private browsing data. *See, e.g.*, Dkt. 798 (Google's Response to Order to Show Cause) at 16 ("Indeed, because Google cannot reliably distinguish between private and non-private browsing activity—a prerequisite to excluding private browsing data from any given use—Google treats and uses such data the same.").

Plaintiffs cite *Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.*, for the proposition that Google "should have known" that Mr. Lemoine had relevant knowledge because he is a former "employee[] of defendant." 839 F.2d 1333, 1340 (9th Cir. 1988). Google has many employees—over 182,000 as of the third quarter of 2023. *See* Alphabet Inc., SEC Form 10-K (Oct. 24, 2023), at 38, https://www.sec.gov/Archives/edgar/data/1652044/000165204423000094/goog-20230930.htm. In *Brick Masons*, the Court held that there was no undue prejudice from certain late-disclosed witnesses because they were the defendant's "employees *who [the defendant] should have known would have knowledge*" of facts relevant to the litigation. *Id.* (emphasis added). Google never had a duty to identify Mr. Lemoine as someone with potentially relevant knowledge because, as explained above, he never worked on any of the Google products or services at issue. *Brick Masons* unsurprisingly does not support the proposition that all employees of a corporate defendant presumptively possess relevant knowledge. Google has not violated any of its discovery obligations.

### B. Plaintiffs' Conditional Offer to Make Mr. Lemoine Available Has Not Mitigated Any Harm To Google

Plaintiffs misleadingly assert that they have mitigated any unfair prejudice to Google for their untimely disclosure by "offer[ing] to schedule [Mr. Lemoine's] deposition" and "request[ing] that Google produce responsive documents in advance of that deposition." Opp. at 5. Not so. In truth, Plaintiffs demanded that Google run onerous search terms (including search terms related to the AI chatbot that Plaintiffs claim is of no interest to them, and other irrelevant topics) as a precondition for making Mr. Lemoine available for a deposition. *See* Dkt. 1015-1, Ex. D at 3 (Sept. 10, 2023 Email from Plaintiffs' Counsel to Google) ("We can schedule Mr. Lemoine's deposition *once the parties reach an agreement on these document production issues, and Google has completed its production*." (emphasis added)); *see also id.* at 2 (proposing "LaMDA" as one of 20 search terms Google must run across Mr. Lemoine's documents before Plaintiffs will schedule his deposition). This demand does not mitigate the undue prejudice associated with their late disclosure—it only serves to impose additional discovery burdens on Google over a year after the close of fact discovery in this case.

### C. Plaintiffs' Arguments And Mr. Lemoine's Declaration Show That Extensive Mini-Trials Will Be Needed To Rebut Mr. Lemoine's Claims

1  Plaintiffs assure the Court that Mr. Lemoine's fantastical beliefs regarding Google's
2  LaMDA chatbot will not require cross-examination because "Plaintiffs obviously have no intention
3  of raising any of these collateral matters." Opp. at 3. They might not, but Google certainly will, as
4  they relate directly to the credibility of this purported "bombshell" witness, arguments in Plaintiffs'
5  brief, and statements in Mr. Lemoine's declaration.

6  Plaintiffs intend to have Mr. Lemoine testify that he was fired from Google in retaliation for
7  being a "whistleblower." Opp. at 3. And they assert that "Mr. Lemoine possesses relevant
8  knowledge regarding . . . Google CEO Sundar Pichai's direct knowledge of Mr. Lemoine's concerns
9  that signed-out data (including private browsing data) could bleed into signed-in user sessions."
10 Opp. at 2. The entire basis for that claim appears to be an unsolicited email that Mr. Lemoine sent
11 to Mr. Pichai's work account. Mr. Lemoine sent other unsolicited emails to Mr. Pichai. For example,

[text redacted lines 12–19]

20 It should be plain that Google will have ample bases to contest Mr. Lemoine's testimony
21 that he was fired for being a whistleblower and that Google has a "culture and practice" of
22 "punish[ing] people who raise[] ethical concerns about Google's practices." Lemoine Decl. ¶ 13.
23 His credibility will be at issue too.[2] But there is no reason to waste the jury's time with such a
24 sideshow. As explained above, there is no countervailing upside to his testimony; he has nothing
25 relevant to add.

---

[2] Plaintiffs misquote Google's motion as referring to "personal" matters. Opp. at 3. Google's motion references sensitive *personnel* matters, which include the unsolicited emails to Mr. Pichai and other matters related to Mr. Lemoine's employment. To the extent the Court wishes to review these emails, Google is ready to provide them for *in camera* review.

### D. Mr. Lemoine's Declaration And Past Behavior Indicates That His Testimony May Violate Google's Attorney-Client Privilege

Mr. Lemoine should also be excluded as a witness because allowing him to testify will risk improper disclosure of information protected by the attorney client privilege. For example, Mr. Lemoine claims that his purported knowledge of issues relevant to this case stems from, *inter alia*, his work on "Google Discover's compliance with the GDPR" and his "extensive contact with Google's upper management, people operations, and *legal divisions* with regards to ethics and privacy related matters." Lemoine Decl. ¶ 8 (emphasis added). And he states unattributed "positions" that Google allegedly adopted, which may constitute improper disclosure of legal advice from Google in-house counsel. *See, e.g.*, *id.* ¶ 9 (describing purported Google "positions" regarding ownership of certain data); *id.* ¶ 14 (relating what his VP was purportedly "advised" to do).

Only Google—not Mr. Lemoine—has the power to waive any privilege that may apply to these internal discussions. *See United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." (citation omitted)); *id.* ("[S]ince a corporate employee cannot waive the corporation's privilege, that same individual as an ex-employee cannot do so."). Google has no way of knowing whether Mr. Lemoine has already violated his duties to Google by revealing privileged information to Plaintiffs' counsel. And given that Mr. Lemoine has readily violated his duty of confidentiality in the past—based on his own beliefs about the nature and needs of Google's chatbot—there is a serious risk that he will do so again if he is permitted to testify at trial.

### III. CONCLUSION

For the reasons discussed above and in Google's motion, the Court should preclude Plaintiffs from introducing Mr. Lemoine's testimony at trial pursuant to its discretionary powers and Rule 37.

| | |
|---|---|
| DATED: November 1, 2023 | Respectfully submitted,<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By   */s/ Andrew H. Schapiro*<br>      Andrew H. Schapiro (admitted *pro hac vice*)<br>      andrewschapiro@quinnemanuel.com<br>      Teuta Fani (admitted *pro hac vice*)<br>      teutafani@quinnemanuel.com<br>      Joseph H. Margolies (admitted *pro hac vice*)<br>      josephmargolies@quinnemanuel.com<br>      191 N. Wacker Drive, Suite 2700<br>      Chicago, IL 60606<br>      Telephone: (312) 705-7400<br>      Facsimile: (312) 705-7401<br><br>      Stephen A. Broome (CA Bar No. 314605)<br>      stephenbroome@quinnemanuel.com<br>      Viola Trebicka (CA Bar No. 269526)<br>      violatrebicka@quinnemanuel.com<br>      Crystal Nix-Hines (Bar No. 326971)<br>      crystalnixhines@quinnemanuel.com<br>      Rachael L. McCracken (CA Bar No. 252660)<br>      rachaelmccracken@quinnemanuel.com<br>      Alyssa G. Olson (CA Bar No. 305705)<br>      alyolson@quinnemanuel.com<br>      865 S. Figueroa Street, 10th Floor<br>      Los Angeles, CA 90017<br>      Telephone: (213) 443-3000<br>      Facsimile: (213) 443-3100<br><br>      Jomaire Crawford (admitted pro hac vice)<br>      jomairecrawford@quinnemanuel.com<br>      D. Seth Fortenbery (admitted *pro hac vice*)<br>      sethfortenbery@quinnemanuel.com<br>      51 Madison Avenue, 22nd Floor<br>      New York, NY 10010<br>      Telephone: (212) 849-7000<br>      Facsimile: (212) 849-7100<br><br>      Xi ("Tracy") Gao (CA Bar No. 326266)<br>      tracygao@quinnemanuel.com<br>      Carl Spilly (admitted *pro hac vice*)<br>      carlspilly@quinnemanuel.com<br>      1300 I Street NW, Suite 900<br>      Washington D.C., 20005<br>      Telephone: (202) 538-8000<br>      Facsimile: (202) 538-8100<br><br>      *Attorneys for Defendant Google LLC* |