BOIES SCHILLER FLEXNER LLP
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

SUSMAN GODFREY L.L.P.
Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel
listed in signature blocks below*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted pro hac vice)
teutafani@quinnemanuel.com
Joseph H. Margolies (admitted pro hac vice)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemauel.com
Rachael L. McCracken (CA Bar No. 252660)
rachaelmccracken@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 4:20-cv-03664-YGR-SVK

**JOINT AND DISPUTED PROPOSED JURY INSTRUCTIONS**

Judge: Hon. Yvonne Gonzalez Rogers
Courtroom 1 – 4th Floor
Date: November 29, 2023
Time: 9:00 a.m.

Pursuant to the Court's September 18, 2023 Order (Dkt. 1001), the Court's September 29, 2022 Standing Order Re: Pretrial Instructions in Civil Cases, and in advance of the Pretrial Conference set for November 29, 2023 at 9:00 a.m., Plaintiffs and Defendant Google LLC submit the following proposed jury instructions for the trial set to begin on January 29, 2024.

For disputed instructions, the Parties used the following color-coding: black signifies agreed upon text, blue signifies Plaintiffs' proposal, and red signifies Google's proposal. The Parties have included brief explanations and authorities to support their respective positions.

The Parties also attach to this submission redlines comparing their respective proposals against the relevant model instructions. Exhibit A contains redlines comparing Plaintiffs' proposals to the relevant model instructions, and Exhibit B contains redlines comparing Google's proposals to the relevant model instructions.

# TABLE OF CONTENTS

**GENERAL INSTRUCTIONS** ................................................................................... **7**

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-1 ........................................ 7

    (DISPUTED) JURY INSTRUCTION NO. 0-2 ................................................... 8

    (DISPUTED) JURY INSTRUCTION NO. 0-3 ................................................. 14

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-4 ...................................... 17

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-5 ...................................... 18

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-6 ...................................... 19

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-7 ...................................... 20

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-8 ...................................... 21

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-9 ...................................... 22

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-10 .................................... 24

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-11 .................................... 25

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-12 .................................... 27

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-13 .................................... 28

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-14 .................................... 29

    (JOINT) PROPOSED JURY INSTRUCTION NO. 0-15 .................................... 31

    (DISPUTED) JURY INSTRUCTION NO. 0-16 ............................................... 32

    (DISPUTED) JURY INSTRUCTION NO. 0-17 ............................................... 40

    (DISPUTED) JURY INSTRUCTION NO. 0-18 ............................................... 41

    (DISPUTED) JURY INSTRUCTION NO. 0-19 ............................................... 42

    (DISPUTED) JURY INSTRUCTION NO. 0-20 ............................................... 43

    (DISPUTED) JURY INSTRUCTION NO. 0-21 ............................................... 44

    (DISPUTED) JURY INSTRUCTION NO. 0-22 ............................................... 45

    (DISPUTED) JURY INSTRUCTION NO. 0-23 ............................................... 46

    (DISPUTED) JURY INSTRUCTION NO. 0-24 ............................................... 47

(DISPUTED) JURY INSTRUCTION NO. 0-25 ..................................................... 49

(DISPUTED) JURY INSTRUCTION NO. 0-26 ..................................................... 50

(DISPUTED) JURY INSTRUCTION NO. 0-27 ..................................................... 51

(DISPUTED) JURY INSTRUCTION NO. 0-28 ..................................................... 52

(DISPUTED) JURY INSTRUCTION NO. 0-29 ..................................................... 53

(DISPUTED) JURY INSTRUCTION NO. 0-30 ..................................................... 54

(DISPUTED) JURY INSTRUCTION NO. 0-31 ..................................................... 55

(DISPUTED) JURY INSTRUCTION NO. 0-32 ..................................................... 56

(DISPUTED) JURY INSTRUCTION NO. 0-33 ..................................................... 57

(DISPUTED) JURY INSTRUCTION NO. 0-34 ..................................................... 58

**FIRST CLAIM: VIOLATION OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA"), CAL. PENAL CODE § 502 ...................................... 60**

(DISPUTED) JURY INSTRUCTION NO. 1-1 ..................................................... 60

(DISPUTED) JURY INSTRUCTION NO. 1-2 ..................................................... 64

(DISPUTED) JURY INSTRUCTION NO. 1-3 ..................................................... 66

(JOINT) JURY INSTRUCTION NO. 1-4 ..................................................... 74

**SECOND CLAIM: VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA"), CAL. PENAL CODE § 631 ...................................................... 75**

(DISPUTED) JURY INSTRUCTION NO. 2-1 ..................................................... 75

(DISPUTED) JURY INSTRUCTION NO. 2-2 ..................................................... 82

(DISPUTED) JURY INSTRUCTION NO. 2-3 ..................................................... 87

(DISPUTED) JURY INSTRUCTION NO. 2-4 ..................................................... 91

(DISPUTED) JURY INSTRUCTION NO. 2-5 ..................................................... 95

(DISPUTED) JURY INSTRUCTION NO. 2-6 ..................................................... 97

**THIRD CLAIM: VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA"), CAL. PENAL CODE § 632 ...................................................... 100**

(DISPUTED) JURY INSTRUCTION NO. 3-1 ..................................................... 100

(DISPUTED) JURY INSTRUCTION NO. 3-2 ..................................................... 103

(DISPUTED) JURY INSTRUCTION NO. 3-3 ................................................................. 105

(DISPUTED) JURY INSTRUCTION NO. 3-4 ................................................................. 110

(DISPUTED) JURY INSTRUCTION NO. 3-5 ................................................................. 114

**FOURTH CLAIM: VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA"), 18 U.S.C. §§ 2510, ET. SEQ. ....................................... 117**

(DISPUTED) JURY INSTRUCTION NO. 4-1 ................................................................. 117

(DISPUTED) JURY INSTRUCTION NO. 4-2 ................................................................. 122

(DISPUTED) JURY INSTRUCTION NO. 4-3 ................................................................. 125

(DISPUTED) JURY INSTRUCTION NO. 4-4 ................................................................. 130

(DISPUTED) JURY INSTRUCTION NO. 4-5 ................................................................. 133

(DISPUTED) JURY INSTRUCTION NO. 4-6 ................................................................. 135

**FIFTH CLAIM: BREACH OF CONTRACT ........................................................... 138**

(DISPUTED) JURY INSTRUCTION NO. 5-1 ................................................................. 138

(DISPUTED) JURY INSTRUCTION NO. 5-2 ................................................................. 144

(DISPUTED) JURY INSTRUCTION NO. 5-3 ................................................................. 147

(DISPUTED) JURY INSTRUCTION NO. 5-4 ................................................................. 153

(DISPUTED) JURY INSTRUCTION NO. 5-5 ................................................................. 156

(DISPUTED) JURY INSTRUCTION NO. 5-6 ................................................................. 160

(DISPUTED) JURY INSTRUCTION NO. 5-7 ................................................................. 163

**SIXTH CLAIM: INVASION OF PRIVACY ........................................................... 165**

(DISPUTED) JURY INSTRUCTION NO. 6-1 ................................................................. 165

(DISPUTED) JURY INSTRUCTION NO. 6-2 ................................................................. 171

(DISPUTED) JURY INSTRUCTION NO. 6-3 ................................................................. 172

(DISPUTED) JURY INSTRUCTION NO. 6-4 ................................................................. 178

(DISPUTED) JURY INSTRUCTION NO. 6-5 ................................................................. 183

(JOINT) PROPOSED JURY INSTRUCTION NO. 6-6 ................................................... 187

**SEVENTH CLAIM: INTRUSION UPON SECLUSION**.......................................................... **188**

(DISPUTED) JURY INSTRUCTION NO. 7-1 ................................................................ 188

(DISPUTED) JURY INSTRUCTION NO. 7-2 ................................................................ 192

(DISPUTED) JURY INSTRUCTION NO. 7-3 ................................................................ 194

(DISPUTED) JURY INSTRUCTION NO. 7-4 ................................................................ 196

(DISPUTED) JURY INSTRUCTION NO. 7-5 ................................................................ 197

**GOOGLE'S AFFIRMATIVE DEFENSES** ............................................................................. **198**

(JOINT) PROPOSED JURY INSTRUCTION NO. 8-1 ................................................. 198

(DISPUTED) JURY INSTRUCTION NO. 8-2 ................................................................ 199

(DISPUTED) JURY INSTRUCTION NO. 8-3 ................................................................ 211

(DISPUTED) JURY INSTRUCTION NO. 8-4 ................................................................ 216

(DISPUTED) JURY INSTRUCTION NO. 8-5 ................................................................ 221

(JOINT) PROPOSED JURY INSTRUCTION NO. 8-6 ................................................. 223

(DISPUTED) JURY INSTRUCTION NO. 8-7 ................................................................ 224

(DISPUTED) JURY INSTRUCTION NO. 8-8 ................................................................ 226

(DISPUTED) JURY INSTRUCTION NO. 8-9 ................................................................ 235

**DAMAGES** ...................................................................................................................... **240**

(DISPUTED) JURY INSTRUCTION NO. 9-1 ................................................................ 240

(DISPUTED) JURY INSTRUCTION NO. 9-2 ................................................................ 242

(DISPUTED) JURY INSTRUCTION NO. 9-3 ................................................................ 249

(DISPUTED) JURY INSTRUCTION NO. 9-4 ................................................................ 254

(DISPUTED) JURY INSTRUCTION NO. 9-5 ................................................................ 256

(DISPUTED) JURY INSTRUCTION NO. 9-6 ................................................................ 259

(DISPUTED) JURY INSTRUCTION NO. 9-7 ................................................................ 262

(DISPUTED) JURY INSTRUCTION NO. 9-8 ................................................................ 265

(DISPUTED) JURY INSTRUCTION NO. 9-9 ................................................................ 270

(DISPUTED) JURY INSTRUCTION NO. 9-10 .............................................................. 276

(DISPUTED) JURY INSTRUCTION NO. 9-11 ................................................................ 280

**GENERAL CLOSING INSTRUCTIONS .................................................................... 285**

(JOINT) PROPOSED JURY INSTRUCTION NO. 10-1 ................................................ 285

(JOINT) PROPOSED JURY INSTRUCTION NO. 10-2 ................................................ 286

(JOINT) PROPOSED JURY INSTRUCTION NO. 10-3 ................................................ 288

(JOINT) PROPOSED JURY INSTRUCTION NO. 10-4 ................................................ 289

**SIGNATURE BLOCKS ........................................................................................... 290**

**GENERAL INSTRUCTIONS**

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-1**

<u>Duty of Jury</u>

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.4 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 0-2**

Claims and Defenses

**Plaintiffs' Proposal:**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiffs are five people, each of whom has a Google account, and each of whom used a private browsing mode during the time period going back to June 1, 2016. Plaintiffs assert that the Defendant, Google, improperly collected, saved, and used their private browsing data. In this case, "Private Browsing Data" means data generated when Plaintiffs:

(1) used Incognito mode in Google's Chrome browser, Private Browsing in Apple's Safari browser, or InPrivate in Microsoft's Edge and Internet Explorer browsers;

(2) to visit a non-Google website (e.g., SFGATE, New York Times);

(3) without being signed into their Google accounts.

There is no dispute in this case that Google collected, stored, and used Plaintiffs' Private Browsing Data, for the entire period at issue, and that Google did so intentionally. The disputes in this case focus instead of certain elements of Plaintiffs' claims and Google's defenses.

Plaintiffs assert seven claims against Google based on Google's collection, storage, and use of their Private Browsing Data: (1) violation of the California Computer Data Access and Fraud Act, sometimes referred to as the "CDAFA"; (2) violation of Section 631 of the California Invasion of Privacy Act, sometimes referred to as "CIPA"; (3) violation of Section 632 of the California Invasion of Privacy Act; (4) violation of the Electronic Communications Privacy Act, sometimes referred to as the "ECPA"; (5) breach of contract; (6) invasion of privacy under the California Constitution; and (7) intrusion upon seclusion under California law.

Plaintiffs are pursuing these claims on their own behalf, and also on a "class action" basis. In a moment, I will explain more about class actions.

Plaintiffs have the burden of proving their claims by a preponderance of the evidence.

Google denies Plaintiffs' claims and asserts certain affirmative defenses.

Google has the burden of proof on these affirmative defenses.

-8-

1        Plaintiffs deny these affirmative defenses.

2   **<u>Google's Proposal</u>:**

3        To help you follow the evidence, I will give you a brief summary of the positions of the

4   parties:

5        The Plaintiffs assert that Google has breached contracts with them, violated the Federal

6   Wiretap Act, violated the California Invasion of Privacy Act, invaded their privacy, invaded their

7   seclusion, and violated the Computer Data Access and Fraud Act. Each Plaintiff has the burden of

8   proving these claims. These claims are all based on collection of certain data while Plaintiffs were

9   utilizing Incognito Mode in the Chrome Browser and private browsing mode in the Safari browser.

10  The data Plaintiffs allege was collected is:

11       (a) the user's IP address;

12       (b) information identifying the user's device model and browser software;

13       (c) the URL (web-page address) of the web-page visited:

14       (d) geolocation information, if available; and

15       (e) information contained in Google cookies.

16       Google denies all of those claims. Google also contends that the Plaintiffs consented to the

17  conduct that forms the basis for their claims, precluding any liability. Google also contends, that

18  Plaintiffs' claims are barred by the applicable statute of limitations, that Plaintiffs failed to mitigate

19  their damages and instead chose to continue using Google's services, that Plaintiffs were unjustly

20  enriched, that Plaintiffs waived their claims through their conduct and are prevented from

21  recovering, that the contract between Google and Plaintiffs exculpated Google from any liability,

22  that Plaintiffs cannot recover damages under the terms of their contract with Google, that Plaintiffs

23  did not provide any benefit to Google in exchange for use of Google's services, and that any invasion

24  of privacy alleged was justified because it furthered legitimate interests.  Google has the burden of

25  proof on these affirmative defenses.

26       The Plaintiffs deny Google's affirmative defenses.

27

28

1  [Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit,

2  Number 1.5 (2017)]

3  **<u>Plaintiffs' Statement</u>**:

4      (1)    Because of the complexity of the case, Plaintiffs believe it would be helpful to define

5  the "Private Browsing Data" at issue, which is private browsing data collected during users' visits

6  to non-Google websites while signed out of their Google accounts. Otherwise, the jury may

7  misunderstand the case to encompass signed-in browsing, or browsing on Google websites. Google

8  errs (above and below) by claiming that Plaintiffs have *further* limited the scope of the data at issue

9  to a specific set of datapoints. That argument ignores prior concessions by Google. For example,

10 when Google unsuccessfully opposed Plaintiffs' motion to expand their class definitions, Google

11 acknowledged that the proposed (and now current) class definitions cover private browsing data

12 "received through all Google web services"—subject only to the signed-out and non-Google website

13 limitations. Dkt. 428 at 1.

14     More fundamentally, these jury instructions are no place for the parties to debate the

15 technicalities of private browsing data, The parties' technical experts can do that during trial.

16 Plaintiffs' expert Jonathan Hochman will precisely describe the Private Browsing Data that Google

17 collects, and his testimony will track his disclosed opinions. *E.g.*, Opening Hochman Report §

18 VIII.A, Dkt. 608-12. Plaintiffs are not expanding anything. Rather, Google is seeking to artificially

19 narrow Plaintiffs' case by citing allegations introduced in the First Amended Complaint—filed long

20 before discovery took place and Plaintiffs served their expert reports. *See* Dkt. 68 ¶ 63.

21     (2)    Plaintiffs properly instruct the jury that Microsoft Edge / IE private browsing is

22 within scope. Class 2 (as certified by this Court) includes people who used private browsing mode

23 in "Safari, *Edge, and Internet Explorer*." Dkt. 803 at 24 (emphasis added). Plaintiffs in their class

24 certification motion argued (and Google did not dispute) that Ms. Trujillo's claims are typical for

25 Class 2 because she used a "non-Chrome private browsing mode." Dkt. 609 at 5. More recently,

26 Google agreed in the Pretrial Statement that "the at-issue private browsing modes are Incognito

27 mode in Google's Chrome browser, Private Browsing in Apple's Safari browser, *and InPrivate in*

28 *Microsoft's Edge and Internet Explorer browsers*." Dkt. 1029 at 28 (emphasis added).

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

(3)      Consistent with CACI 115, Plaintiffs propose informing the jury that this case is a class action. Plaintiffs in the next instruction provide a more detailed explanation of class actions. Plaintiffs' briefing for that instruction addresses Google's objections.

(4)      Finally, the jury should be informed that there is no dispute that Google collects, stores, and uses this data, and that Google did so intentionally. *E.g.*, Dkt. 969 (MSJ Order) at 31 ("the parties do not dispute the way Google receives the at-issue data."). As Plaintiffs explain in more detail below within their claim-specific instructions, "intentionally" just means that Google acted "purposefully and deliberately and not as a result of accident or mistake." *United States v. Christensen*, 828 F.3d 763, 790-91 (9th Cir. 2015). Here, Google is not asserting that it collected users' private browsing data by accident. Plaintiffs' proposed instruction will focus the jury on the actual disputes in the case.

(5)      Plaintiffs' proposal (unlike Google's proposal) lists the claims in the appropriate order, tracking the order in which they appear below.

(6)      Finally, Plaintiffs do not understand Google's assertion below that Google's "storage and use" of the data is "divorced from Plaintiffs' claims." That must be a typo.

**Google's Statement**:

Plaintiffs' proposed instruction is incorrect and prejudicial, and Google respectfully requests that the Court give Google's competing proposed instruction instead, which more closely follows the model instruction.

(1)      Plaintiffs incorrectly and confusingly define "Private Browsing Data" as all "data generated" when Plaintiffs browse in private browsing mode. By contrast, throughout the litigation, Plaintiffs more specifically defined the data as: (1) the "GET Request," (2) IP Address, (3) browser information, (4) User-ID, (5) geolocation, and (6) cookies. Dkt. 886 (Fourth Amended Complaint) ¶ 63(a)-(f). The jury deserves to have at least the same level of clarity with which the parties have been litigating, and Plaintiffs should not be permitted to expand the At Issue Data at this juncture or

use a short form description of the at-issue data that does not specifically identify the categories of data at issue and instead improperly leads the jury to speculate as to the data that was collected .

(2)     Plaintiffs improperly reference InPrivate in Microsoft's Edge and Internet Explorer browsers. Apple's Safari browser is the only non-Chrome browser the Pretrial Statement identifies (on which Plaintiff Monique Trujillo purportedly browsed). It is prejudicial and confusing to provide the jury with an instruction that puts at issue private browsing on non-Chrome browsers Plaintiffs did not use.

(3)     Plaintiffs seek a gratuitous instruction on the existence of the Rule 23(b)(2) class. The fact that the Court has certified a class of users with injunctive relief claims against Google irrelevant, confusing, and prejudicial to the jury. The  jury's task is to determine the validity of the claims of the five individual Plaintiffs. The jury is not determining what, if any, injunctive relief is appropriate. Plaintiffs' own proposed instruction concedes that the jury will not decide *any* claims for the class, so there is no relevance to identifying the class to the jury, let alone sufficient relevance to outweigh the prejudice of doing so. The jury would be at a loss to figure out why the Court is sharing this information with it. And in trying to parse why the Court is providing this information, the jury could well be misled into assuming that because many people are pursuing claims against Google, Google must have done something wrong. The jury could also believe that the Court found wrongdoing by Google when a class action was certified. Providing the jury with irrelevant information about the multitude of other individuals whose injunctive relief claims will be heard by the Court at a later stage is likely to prejudice any eventual verdict against Google and lead to inflated damages that purport to compensate for harm to other individuals. The Court has already found a damages class is inappropriate and by introducing the Court here, Plaintiffs are attempting to circumvent that ruling and suggest that recovery is on behalf of others. Because the existence of the injunctive class is irrelevant to anything the jury must decide, the prejudicial impact it will have

**PROPOSED JURY INSTRUCTIONS**

on the adjudication of the individual Plaintiffs' claims far outweighs any tangential benefit, if any, it may have.

(4)     Plaintiffs improperly assert that Google does not dispute intentionality and that it "collected, stored, and used" private browsing data. Both assertions are wrong. Google has not and does not agree to relieve Plaintiffs of their burden of establishing intent. Contrary to Plaintiffs' repeated assertions, Google has not conceded intent (or willfulness). *See* Dkt. 531 (Answer) ¶¶ 206, 226; Dkt. 886 (Fourth Amended Complaint) ¶¶ 206, 226. And although Google does not dispute that it receives the at issue data depending on various user and website choices and settings, the separate question of storage and use of that data has never been the focus in this lawsuit. *See, e.g.*, Dkt. 886 (FAC) ¶ 192 (class defined as users "whose communications…[were] intercepted, received, or collected"); *id.* ¶ 196(c) (alleging a common question is "[w]hether Google in fact intercepted, received, or collected communications…"). To now require Google to prove consent not only as to its receipt of the At Issue Data, but also consent for Google to "sav[e]" and "us[e]" it, interjects additional requirements on Google that are divorced from Plaintiffs' claims, and therefore are prejudicial. This is particularly true for Plaintiffs' CIPA claims, which do not reference storage or use at all, *id.* at ¶¶ 218-229, and the CDAFA claim which requires "tak[ing], cop[ying], *or* mak[ing] use of any data" (emphasis added).


DATE SUBMITTED: November 1, 2023


DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 0-3**

Class Action

**Plaintiffs' Proposal**:

A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who have similar legal claims. All of these people together are called a "class." Plaintiffs Chasom Brown, William Byatt, Jeremy Davis, Christopher Castillo, and Monique Trujillo bring this action as the class representatives.

In a class action, the claims of many individuals can be resolved at the same time instead of requiring each member to sue separately. Because of the large number of class members that are at issue in this case, not everyone in the class has testified.

In this case, there are two classes, defined as follows:

**Class 1** – All Chrome browser users with a Google account who accessed a non-Google website containing Google tracking or advertising code using such browser and who were (a) in "Incognito mode" on that browser and (b) were not logged into their Google account on that browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present.

**Class 2** – All Safari, Edge, and Internet Explorer users with a Google account who accessed a non-Google website containing Google tracking or advertising code using such browser and who were (a) in a "private browsing mode" on that browser and (b) were not logged into their Google account on that browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present.

These classes seek changes to Google's practices, which is referred to as injunctive relief. I will decide whether the classes are entitled to any injunctive relief and if so what relief. That is not an issue that you need to decide.

You will be deciding the five Plaintiffs' individual claims, including their request for monetary relief. That is money these five people are seeking individually, not for either of the classes.

For the classes' claims for injunctive relief, you will be serving as an advisory jury, meaning that your decisions on the five Plaintiffs' individual claims may influence my decision about whether the classes are entitled to injunctive relief against Google.

**Google's Proposal:**  None.

**Plaintiffs' Statement:**

(1)    Most of Plaintiffs' proposal is taken from CACI 115. Plaintiffs deviate from CACI beginning with the paragraph about how "these classes are not seeking money from Google." The two paragraphs that follow provide important context for the jury about their specific role in this case.

(2)    Google's strenuous objections to this CACI-recommended instruction are bizarre. Without any support, Google argues it will be prejudiced by informing the jury that this case is a class action. That logic would always preclude juries from being instructed on class actions, which cannot be reconciled with the CACI recommendation.

(3)    Absent an instruction like this one, the jury will be left with many unanswered questions. For example, some may wonder whether any damages they award to Plaintiffs will also be given to other people who likewise used private browsing modes. In other words, some may erroneously assume this case has been certified as a class action for money damages. Others may assume the virtual opposite—that the entire case is about these five Plaintiffs, and such jurors may be frustrated they are spending two weeks to sit through a dispute where the Plaintiffs are seeking relatively low damages, without anything else at stake.

(4)    Google's objection to this instruction is particularly misplaced because classwide evidence is inevitably going to come in. The scope of Google's conduct, and the numerous people it has affected, are relevant to numerous issues that will be tried, including the offensiveness element of Plaintiffs' invasion of privacy and intrusion upon seclusion claims, as well as punitive damages.

[Authority: Judicial Council of California Civil Jury Instructions Number 115 (2012)]

**Google's Statement:**

Plaintiffs' proposed instruction serves no purpose; it would confuse the jury, and unfairly prejudice it against Google.  It should not be given.

(1)     The fact that the Court has certified a class of users with claims against Google is utterly irrelevant to the jury's task of determining the validity of the claims of the five individual Plaintiffs. Plaintiffs' own proposed instruction concedes that the jury will not decide *any* claims for the class. The jury would be at a loss to figure out why the Court is sharing this information with it. And in trying to parse why the Court is providing this information, the jury could well be misled into assuming that because many people are pressing claims against Google, Google must have done something wrong. Providing the jury with irrelevant information about the multitude of other individuals whose injunctive relief claims will be heard by the Court at a later stage is likely to prejudice any eventual verdict against Google. Because the existence of the injunctive class is irrelevant to anything the jury must decide, the prejudicial impact it will have on the adjudication of the individual Plaintiffs' claims far outweighs any benefit it may have.


DATE SUBMITTED: November 1, 2023


DATE REVISED: _____

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-4**

<u>Burden of Proof– Preponderance of the Evidence</u>

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

The elements of each claim and defense, with the exception of two on which I will separately instruct you, must be proven by a preponderance of the evidence.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.6 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-5**

<u>What is Evidence</u>

The evidence you are to consider in deciding what the facts are consists of:

       (1)      the sworn testimony of any witness;

       (2)      the exhibits that were admitted into evidence;

       (3)      any facts to which the lawyers have agreed; and

       (4)      any facts that I have instructed you to accept as proved.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.9 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-6**

<u>What Is Not Evidence</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that was excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.10 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

-19-

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

1    **(JOINT) PROPOSED JURY INSTRUCTION NO. 0-7**

2    <u>Evidence for Limited Purpose</u>

3        Some evidence was admitted only for a limited purpose.

4        When I instructed you that an item of evidence was admitted only for a limited purpose, you

5    must consider it only for that limited purpose and not for any other purpose.

6

7

8    [Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit,

9    Number 1.11 (2017)]

10

11   DATE SUBMITTED: November 1, 2023

12

13   DATE REVISED: _____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-8**

<u>Direct and Circumstantial Evidence</u>

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.12 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-9**

<u>Credibility of Witnesses</u>

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.14 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-10**

<u>Stipulations of Fact</u>

The parties have agreed to certain facts, which are included below.

You must therefore treat these facts as having been proved.

[To be added]

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.2 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

## (JOINT) PROPOSED JURY INSTRUCTION NO. 0-11

<u>Conduct of the Jury</u>

I will now say a few words about your conduct as jurors.

First, keep an open mind, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court took an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the

trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.15 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-12**

<u>Charts and Summaries Not Received in Evidence</u>

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.14 (2017)]

DATE SUBMITTED: <u>November 1, 2023</u>

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-13**

<u>Charts and Summaries Received in Evidence</u>

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.


[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.15 (2017)]


DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

1

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-14**

2

Evidence In Electronic Format

3      Those exhibits received in evidence that are capable of being displayed electronically will

4   be provided to you in that form, and you will be able to view them in the jury room. A computer,

5   projector, printer, and accessory equipment will be available to you in the jury room.

6      A court technician will show you how to operate the computer and other equipment; how to

7   locate and view the exhibits on the computer; and how to print the exhibits. You will also be

8   provided with a paper list of all exhibits received in evidence. You may request a paper copy of any

9   exhibit received in evidence by sending a note through the Courtroom Deputy. If you need additional

10  equipment or supplies or if you have questions about how to operate the computer or other

11  equipment, you may send a note to the Courtroom Deputy, signed by your foreperson or by one or

12  more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

13     If a technical problem or question requires hands-on maintenance or instruction, a court

14  technician may enter the jury room with the Courtroom Deputy present for the sole purpose of

15  assuring that the only matter that is discussed is the technical problem. When the court technician

16  or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the

17  court technician or any nonjuror other than to describe the technical problem or to seek information

18  about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

19     The sole purpose of providing the computer in the jury room is to enable jurors to view the

20  exhibits received in evidence in this case. You may not use the computer for any other purpose. At

21  my direction, technicians have taken steps to ensure that the computer does not permit access to the

22  Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to

23  alter the computer to obtain access to such materials. If you discover that the computer provides or

24  allows access to such materials, you must inform the court immediately and refrain from viewing

25  such materials. Do not remove the computer or any electronic data from the jury room, and do not

26  copy any such data.

27

28

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.16 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 0-15**

<u>Corporations and Partnerships – Fair Treatment</u>

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 4.1.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-16**

Google's Discovery Misconduct

**Plaintiffs' Proposal**:

During discovery in this case, Google failed to disclose to Plaintiffs the names of key Google employees responsible for developing and implementing Google's Incognito-detection bits.

Despite multiple Court orders requiring Google to disclose the information, Google failed to timely disclose (a) at least [][1] relevant data sources reflecting the use of three Incognito-detection bits; and (b) at least one additional Incognito-detection bit and any data sources in which it was used.

You may infer from Google's failure to disclose these data sources that they are not helpful to Google.

**Google's Proposal**:  None.

**Plaintiffs' Statement**:

(1)     This proposal tracks verbatim the recommended jury instruction provided by Magistrate Judge van Keulen in the second sanctions order. Dkt. 898. Plaintiffs are not seeking to alter that recommendation in any way.

(2)     It is premature for the Court to decide whether this instruction is warranted. Magistrate Judge van Keulen recommended it be given "if in the course of proceedings before the trial judge it is determined that Google's discovery misconduct is relevant to an issue before the jury." Dkt. 898 at 11. As Plaintiffs explained in their opposition to Google's motion *in limine* on this exact subject (Dkt. 1025-1), the better approach is to make that decision during trial—not months in advance. Dkt. 1025-1 at 1; *see also, e.g.*, *Entrata, Inc. v. Yardi Sys., Inc.*, 2019 WL 4165121, at **4–5 (D. Utah. Sept. 3, 2019) (deferring any ruling on whether to "preclude any evidence or references to pretrial discovery conduct, disputes, or sanctions," and instead deciding that "[t]he court will rule on the admissibility of specific items of evidence at the time they are

---

[1] See Dkt. 898 (sealed March 2023 sanctions order) at 12 for the exact number specified in the order.

offered at trial"). Magistrate Judge van Keulen worked tirelessly to adjudicate the sanctions disputes. In Google's words, "Judge van Keulen presided over two hearings concerning this conduct, reviewed hundreds of pages of briefing, exhibits, and expert materials, and heard live testimony from five witnesses." Dkt. 1025 at 1. Google has no basis to assert that one of her recommendations should be completely abandoned, particularly at this stage—months in advance of trial.

(3)   This recommended instruction may become relevant, including based on Google's approach to trial. Case in point is Google's initial deposition of Plaintiffs' technical expert Jonathan Hochman. That deposition occurred before Google disclosed the Incognito_window bit, which is relevant to Class 2. Google's lawyer criticized as "speculation" Mr. Hochman's opinion that Google can identify Class 2 members, grilling him for failing to identify any detection bit relevant to Class 2. Hochman Tr. 408:21–24. Yet as it turns out, there was such a bit; it just hadn't been disclosed yet. As another example, counsel during Mr. Hochman's most recent deposition asked Mr. Hochman to identify evidence that Google uses that bit "to isolate private browsing data." Mr. Hochman responded: "That's an unknown." Hochman October 2023 Rough Tr. 76:5–7 (Ex. 2). If Google were to elicit that testimony at trial, and criticize Plaintiffs or Mr. Hochman on that basis, the instruction would become warranted. Google's belated disclosure of the bit prevented Plaintiffs from obtaining fulsome discovery into Google's use of the bit. If Google will pursue the same strategy at trial, repeatedly criticizing Plaintiffs for supposedly failing to identify evidence of "X," then this jury instruction may become warranted. It would be appropriate to allow the jury to "infer from Google's failure to disclose these data sources that they are not helpful to Google." Dkt. 898 at 18.

(4)   Google's arguments below mischaracterize the sanctions briefing and orders. For example, Plaintiffs did not "mov[e] for sanctions on the *sole* basis" that the Incognito bits are "relevant to Plaintiffs' ability to identify" class members. Instead, the first sanctions order acknowledged Plaintiffs' argument that the bits "bear[] on elements of Plaintiffs' claims, such as the offensiveness of Google's alleged misconduct for purposes of Plaintiffs' invasion of privacy and intrusion upon seclusion claims." Dkt. 588-1 at 41.

(5)   Google's concerns about prejudice are as ironic as they are unfounded. The purpose of the sanctions was to cure Plaintiffs' prejudice, yet Google seeks to evade those sanctions by

claiming it has been prejudiced. Moreover, the key issue is not prejudice, but "unfair" prejudice. *See GN Netcom, Inc. v. Plantronics*, 930 F.3d 76, 86 (3d Cir. 2019) (reversing judgment and ordering a new trial where the district court excluded expert testimony about spoliation, reasoning that testimony was "undoubtedly relevant"; "*though the [spoliation] testimony could have had some prejudicial effect, that prejudice would not have been unfair*" (emphasis added)). If Google believes the instruction is too "confusing," then it should have appealed the order, or Google should at least propose a counter-instruction. Googles failure to do that proves all it wants is to avoid any consequence for its twice sanctioned discovery misconduct.

(6)     Most importantly, it is too early to tell whether this jury instruction will become relevant. Plaintiffs respectfully ask the Court to reserve decision on this disputed instruction, so that the parties can revisit its applicability based on what actually happens at trial.

[Authority: Dkt. 911-3 (March 2023 Sanctions Order); *see also Oracle USA, Inc., et al. v. Rimini Street, et al.*, 2:10-CV-0106-LRH-PAL, Dkt. 880 (D. Nev. Oct. 6, 2015) (instruction 19 given to jury describing discovery misconduct)]

**Google's Statement:**

(1) Google ultimately disclosed to Plaintiffs all of the data sources described in the instruction. Magistrate Judge van Keulen determined that a detailed instruction regarding the timing of Google's disclosure of Incognito Detection bits and their data sources would be appropriate only "[i]f in the course of proceedings before the trial judge it is determined that Google's **discovery misconduct** is relevant to an issue before the jury." The Court should not give that instruction because (i) Google's late disclosure of discovery material is irrelevant to any issue to be decided by the jury, and (ii) disclosing this irrelevant discovery conduct to the jury would be highly and unduly prejudicial.

(2) The Incognito-Detection Bits are binary ("true" or "false") fields in certain Google logs that identify whether data includes the X-Client-Data header, a signal that is generally not sent with

Incognito traffic. Engineers at Google used these fields in a limited context and a limited set of logs to approximate aggregate characteristics of Incognito traffic, with the understanding that true/false values for individual data entries are inherently unreliable. *See* Dkt. 527-4 (Google's Sanctions Opp.) at 1–2, 9. The timing of Google's disclosure of these fields is not relevant to any jury issue, or to proving any of Plaintiffs' causes of action.

(3)     Plaintiffs initially moved for sanctions on the sole basis that the Incognito-detection bits were relevant to Plaintiffs' ability to identify members of a hypothetical Rule 23(b)(3) damages class—because Plaintiffs believed Google would oppose class certification on the ground that they could not identify damages class members. *See* Dkt. 429-1 (Sanctions Mot.) at 8 ("Plaintiffs persisted in seeking [the allegedly withheld] discovery for purposes of class identification."); *id.* at 20 (arguing Google "has thwarted Plaintiffs' efforts to understand the basis of Google's class identification arguments"). The Court ultimately denied Plaintiffs' motion to certify a damages class on grounds *wholly unrelated* to class-member identification, Dkt. 803 (Class Cert. Ord.) at 28–32 (holding implied consent precluded Plaintiffs from establishing predominance). Thus, as Judge van Keulen recognized when she drafted this permissive instruction, "Google's discovery misconduct is primarily related to issues to be decided by the Court"—*i.e.*, class certification—rather than the jury. Dkt. 588 at PDF p. 52. And, even then, it ultimately proved irrelevant to class certification issues as well.

(4)     Plaintiffs' attempt to show this instruction's relevance only confirms the opposite. Plaintiffs point to a few questions related to class member identification relevant to the rejected Rule 23(b)(3) class.  Hochman Tr. 408:21–24. Those issues are no longer relevant and will not be part of the trial.  Recognizing that they have little basis to push for this instruction now, Plaintiffs argue for a "wait and see" approach.  But that is not appropriate here, where there is no triable issue of fact over Rule 23(b)(3) issues. Both the parties and the Court deserve clarity regarding what is in and

1    what is out. It would be unfair to leave Google with uncertainty over whether discovery conduct

2    related to these irrelevant issues will be presented to the jury, because that affects trial strategy and

3    evidence. The Court should make that clear now that discovery spats over irrelevant issues have no

4    place in this trial.

5

6        (5)    A closer look at each of the three parts of this instruction confirms none of them

7    serves no purpose in this trial and therefore should not be given.

8

9            (a) *"During discovery in this case, Google failed to disclose to Plaintiffs the names of key Google employees responsible for developing and implementing Google's Incognito-detection bits."*

10

11        This instruction serves no purpose. Plaintiffs received custodial productions from, and took

12    depositions of, "key Google employees responsible for developing and implementing Google's

13    Incognito-detection bits." Plaintiffs also had the opportunity to cross-examine these witnesses at the

14    sanctions proceeding, and will have a further opportunity to do so at trial. If Plaintiffs contend those

15    bits are relevant to any purpose at trial, they may introduce the relevant evidence, which is extensive.

16    But the circumstances and timing of Google's disclosure of these witnesses' *names* is not relevant.

17    Instructing the jury about those circumstances would be prejudicial. *See Pavemetrics Sys., Inc. v.*

18    *Tetra Tech, Inc.*, 2023 WL 1836331, at *4 (C.D. Cal. Jan. 23, 2023) (recognizing juries'

19    susceptibility to suggestions that "a party [is] responsible for cloaking something"). It would also

20    confuse the issues by making it appear that Google's late disclosure of certain names has any

21    relevance to the merits of the case.

22

23            (b) *"Despite multiple Court orders requiring Google to disclose the information, Google failed to timely disclose (a) at least []² relevant data sources reflecting the use of three Incognito-detection bits; and (b) at least one additional Incognito-detection bit and any data sources in which it was used."*

24

25

26

27

28 _____

² See Dkt. 898 (sealed March 2023 sanctions order) at 12 for the exact number specified in the order.

This portion of the instruction also serves no purpose. Google disclosed the [] data sources[3] and further clarifying evidence and information in conjunction with the two sanctions proceedings. The first sanctions order made clear that the Incognito-detection bits and the circumstances of their disclosure were "primarily related to issues to be decided by the Court" rather than a jury, Dkt. 588 at PDF p. 52.  The second sanctions order amended the permissive instruction to include the above language "[f]or the same reasons as discussed in the [first] Sanctions Order regarding . . . late-disclosed logs." Dkt. 898 at PDF p. 10. Even to the extent any late-disclosed logs or Incognito-detection bit are relevant to any issue before the jury, the timing and circumstances of their disclosure are not. *See M.H. v. County of Alameda*, 2015 WL 894758 (N.D. Cal. Jan. 2, 2015) ("Pretrial discovery conduct—as opposed to the materials actually produced in discovery—is usually irrelevant to a jury's consideration of the facts.").

This portion of the instruction would also be highly prejudicial and confusing to the jury, including because it could leave the jury with the misimpression that Google *intentionally* failed to disclose information in violation of Court orders, or purposely concealed that information. In reality, Judge van Keulen expressly rejected Plaintiffs' repeated requests to find that Google concealed information or intentionally violated orders. *See* Dkt. 588 at PDF p. 52, ¶ 45 ("Plaintiffs' requested jury instruction that 'Google concealed and altered evidence . . .' *is not warranted or appropriate on the facts of this case*."); *id.* at PDF p. 58 (emphasis added), ¶ 72 ("Plaintiffs have failed to carry their burden of showing that Google's failures . . . resulted from either bad faith or recklessness with an improper purpose.").

> (c) *"You may infer from Google's failure to disclose these data sources that they are not helpful to Google."*

---

[3] See Dkt. 898 (sealed March 2023 sanctions order) at 12 for the exact number specified in the order.

This portion of the instruction should not be given because it is unnecessary, confusing, and highly prejudicial.

Judge van Keulen's sanctions order was crystal clear that the permissive instruction was not meant to aid Plaintiffs in satisfying their burden of proof. *See* Dkt. 898 at PDF p. 14 ("[T]he known information does not support an inference that the late-disclosed information was unfavorable to Google."). Rather, its purpose was merely to prevent Google from arguing that the late-disclosed logs, had they been explored in discovery, would have been affirmatively *helpful* to Google's case. *See id.*

(6)     The proposed instruction is unnecessary because Google does not intend to ask the jury to rule for Google on the basis of any of the late-disclosed logs, much less any function or contents of those logs that were not explored in discovery. Indeed, Google would be willing to stipulate that neither party may introduce or refer to the late disclosed logs at trial. Therefore, no instruction is necessary to accomplish the instruction's purpose—to prevent Google from getting the benefit of the doubt based on its late disclosure of these particular logs.

(7)     The proposed instruction is also confusing because jurors hearing it without context likely would not appreciate the difference between an instruction that late-disclosed information was "not helpful to Google," and the *explicitly rejected adverse instruction* that the same information was "unfavorable to Google" or "helpful to Plaintiffs." Those jurors might mistakenly believe that Plaintiffs can meet their burden of proof by inference that the late-disclosed logs contained evidence favorable to Plaintiffs.

(8)     Because the proposed instruction is unnecessary and confusing, it would also be unduly prejudicial to Google because juries are highly susceptible to any adverse (or *seemingly* adverse) instruction. *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 993–94 (N.D. Cal. 2012) (collecting authority establishing that adverse inferences are "drastic," "extreme,"

"among the most severe sanctions a court can administer," and "in practice, . . . often end[]
litigation").

Google respectfully requests that the Court deny Plaintiffs' proposed jury instruction for all the
reasons above.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**Plaintiffs' Statement Concerning the Following General Instructions:**

For the following proposed instructions, numbered here as 0-16 TO 0-34, Plaintiffs do not
have any substantive objection. Rather, Plaintiffs believe it may not be necessary to give these
instructions at the end of trial, particularly if these instructions have already been given at the
beginning. Based on their review of jury materials for other trials before this Court, Plaintiffs
understand that this Court may provide instructions on some of these issues at the beginning of the
trial. *See, e.g.*, Pretrial Order No. 3 in *Dolby v. Adobe* (Case 18-cv-01553), Dkt. 346 at ¶ 14
(explaining the Court will give Ninth Circuit Model Instructions 1.3, 1.5-1.21, 2.2, 2.4, 2.11-2.16,
and 3.1–3.5 as "Introductory Jury Instructions"). That is the only reason why the below instructions
are marked "Disputed." Plaintiffs' goal is to streamline these instructions where possible. Plaintiffs
defer to the Court on which of the below instructions are necessary for the end of trial.

**Google's Statement Concerning General Instructions (Specific Positions Provided Below):**

Google believes it is most efficient for the jury instructions to address all foreseeable issues
that could arise at trial. The general instructions below, taken directly from the Ninth Circuit model
instructions, cover issues that will almost certainly arise at trial, such as media coverage of the trial,
testimony through deposition designations, and objections during trial. Plaintiffs have not made a
single substantive objection to the instructions.  There is no meaningful difference between these
instructions and the numerous instructions above that Plaintiffs have agreed should be read.  It would

be inefficient and delay the progress of trial to have to specifically request each of these instructions as supplemental instructions during the trial.

### (DISPUTED) JURY INSTRUCTION NO. 0-17

<u>Two or More Parties – Different Legal Rights</u>

You should decide the case as to each Plaintiff separately. Unless otherwise stated, the instructions apply to all parties.

**<u>Google's Statement:</u>**

Google believes it is important and necessary to tell the jury that the case needs to be decided separately for each Plaintiff. It is an accurate statement of the law and the jury may otherwise be confused and believe the case is decided as to Plaintiffs collectively.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 1.8.]

DATE: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-18**

Ruling on Objections [If Needed]

There are rules of evidence that control what can be received into evidence.  There were times when a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it is not permitted by the rules of evidence, so that lawyer objected.  When I overruled the objection, the question could be answered, or the exhibit received.  If I sustained the objection, the question could not be answered, and the exhibit could not be received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Google's Statement:**

Given that there will be objections and rulings during trial, Google believes this instruction should be read, as the Ninth Circuit Model Instructions provide, to help the jury understand the purpose and meaning of objections and rulings on objections.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 1.13.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-19**

<u>Publicity During Trial</u>

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror was or later is exposed to any outside information, please notify me immediately.

**<u>Google's Statement:</u>**

Given that there has been media coverage of this case throughout the pretrial process, it is likely there will be coverage during trial as well. Jurors should be specifically advised to disregard any media accounts of the trial or case history and report it to the Court, consistent with the Ninth Circuit Model Instructions.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 1.16.]

DATE SUBMITTED: November 1, 2023

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

**(DISPUTED) JURY INSTRUCTION NO. 0-20**

<u>No Transcript Available to Jury</u>

During deliberations you will not have a transcript of the trial testimony.  You can, however, request to have specific testimony read back to you.

**<u>Google's Statement</u>**:

Google believes this instruction is helpful context because the jury may otherwise believe that the full transcript will be available to them. Including this Ninth Circuit Model Instruction will ensure the jury understands what information is available to them during deliberations.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 1.17.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-21**

<u>Taking Notes</u>

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**<u>Google's Statement</u>**:

Google believes this instruction is appropriate to provide. Because there is no transcript, jurors may be inclined to give undue weight to written notes of any jurors that take notes. This Ninth Circuit Model Instruction ensures that all jurors understand the role of notes.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 1.18.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-22**

<u>Bench Conferences and Recesses</u>

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we did what we could to keep the number and length of these conferences to a minimum.  I did not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.


**<u>Google's Statement:</u>**

Given that there will likely be sidebars during trial, Google believes this instruction should be read, as the Ninth Circuit Model Instructions provide, to help the jury understand the purpose and meaning of sidebars.


[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 1.20.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-23**

<u>Outline of Trial</u>

After I instruct you on the law that applies to the case, the attorneys will make closing arguments. After that, you will go to the jury room to deliberate on your verdict.

**<u>Google's Statement:</u>**

This Ninth Circuit Model Instruction provides a helpful roadmap of the end of the trial process.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 1.21.]

DATE SUBMITTED: November 1, 2023

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

## (DISPUTED) JURY INSTRUCTION NO. 0-24

<u>Cautionary Instructions</u>

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom.  This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case.  This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers.  You also must not communicate with anyone, in any way, about this case.  And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here.  So you must not learn any additional information about the case from sources outside the courtroom.  To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.


**<u>Google's Statement:</u>**

Given that there has been media coverage of this case throughout the pretrial process, it is likely that there will be coverage during trial as well and that jurors may be asked to discuss the case. Jurors should be specifically advised to disregard any media accounts of the trial or case history or having any conversations about the case, consistent with the Ninth Circuit Model Instructions.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 2.0.]

DATE SUBMITTED: November 1, 2023

## (DISPUTED) JURY INSTRUCTION NO. 0-25

### Deposition in Lieu of Live Testimony

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of [*name of witness*] was taken on [*date*].  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.


**Google's Statement:**

Given that both parties have submitted deposition designations for trial, it is very likely deposition designations will be played for the jury and this Ninth Circuit Model Instruction will explain how the jury should treat that testimony.


[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 2.4.]


DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-26**

<u>Use of Interrogatories [If Needed]</u>

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**<u>Google's Statement</u>**:

Given that both parties have submitted discovery designations that include interrogatory responses for trial, it is likely that interrogatories may be read to the jury and this Ninth Circuit Model Instruction will explain how the jury should treat any interrogatory responses admitted at trial.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 2.11.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-27**

<u>Use of Requests for Admission [If Needed]</u>

Evidence was presented to you in the form of admissions to the truth of certain facts.  These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

**<u>Google's Statement</u>**:

Given that both parties have submitted discovery designations that include requests for admission responses for trial, it is likely that interrogatories may be read to the jury and this Ninth Circuit Model Instruction will explain how the jury should treat any requests for admission admitted at trial.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 2.12.]

**(DISPUTED) JURY INSTRUCTION NO. 0-28**

Expert Opinion

You have heard testimony from expert witnesses who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering each witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**Google's Statement:**

Given that both parties will present testimony from trial, this Ninth Circuit Model Instruction will explain the role of expert testimony for the jury.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 2.13.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-29**

<u>Readback or Playback</u>

Because a request has been made for a [readback] [playback] of the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation but must be considered in the context of all the evidence presented.

**<u>Google's Statement:</u>**

In the event testimony is read or played back to the jury, this Ninth Circuit Model Instruction will provide important context on how that testimony can be used.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 3.4.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-30**

<u>Additional Instructions of Law [If Needed]</u>

At this point I will give you an additional instruction.  By giving an additional instruction at this time, I do not mean to emphasize this instruction over any other instruction.

You are not to attach undue importance to the fact that this instruction was read separately to you.  You must consider this instruction together with all of the other instructions that were given to you.

[*Insert text of new instruction.*]

You will now retire to the jury room and continue your deliberations.

[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 3.6.]

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 0-31**

<u>Deadlocked Jury [If Needed]</u>

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case.  I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience.  Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors.  During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong.  However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence.  All of you share an equal desire to arrive at a verdict.  Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole.  You should not single out any part of any instruction, including this one, and ignore others.  They are all equally important.

You may now return to the jury room and continue your deliberations.


**Google's Statement**:

In the event the jury is deadlocked, this Ninth Circuit Model Instruction will provide important guidance.


[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 3.7.]


DATE SUBMITTED: November 1, 2023

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

**(DISPUTED) JURY INSTRUCTION NO. 0-32**

<u>Continuing Deliberations After Juror is Discharged [If Needed]</u>

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors.  Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating.  All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.


**<u>Google's Statement:</u>**

In the event a juror or jurors are released, this Ninth Circuit Model Instruction will provide important guidance for the jury on how to proceed.


[Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 3.8.]


DATE SUBMITTED: November 1, 2023

1

**(DISPUTED) JURY INSTRUCTION NO. 0-33**

2

<u>Post-Discharge Instruction</u>

3      Now that the case has been concluded, some of you may have questions about the

4   confidentiality of the proceedings.  Now that the case is over, you are free to discuss it with any

5   person you choose.  By the same token, however, I would advise you that you are under no

6   obligation whatsoever to discuss this case with any person.

7      If you do decide to discuss the case with anyone, I would suggest you treat it with a degree

8   of solemnity in that whatever you do decide to say, you would be willing to say in the presence of

9   the other jurors or under oath here in open court in the presence of all the parties.

10     Finally, always bear in mind that if you do decide to discuss this case, the other jurors fully

11  and freely stated their opinions with the understanding they were being expressed in confidence.

12  Please respect the privacy of the views of the other jurors.

13     Finally, if you would prefer not to discuss the case with anyone, but are feeling undue

14  pressure to do so, please feel free to contact the Courtroom Deputy, who will notify me, and I will

15  assist.

16

17  **Google's Statement**:

18     This statement provides important guidance for jurors on their rights post verdict and how

19  they can choose to handle any contact.  Given that juror contact is handled differently during trial,

20  this instruction will ensure jurors know how to handle contact post verdict.

21

22  [Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit

23  (2017), Section 3.9.]

24

25  DATE SUBMITTED: November 1, 2023

26

27

28

The Court will now explain the substantive law applicable to the claims brought in this action.

**(DISPUTED) JURY INSTRUCTION NO. 0-34**

<u>Claims</u>

Plaintiffs brought the following claims against Google under the applicable laws:

(1) The Comprehensive Computer Data Access and Fraud Act ("CDAFA"), California Penal Code § 502 *et seq*.

(2) The California Invasion of Privacy Act ("CIPA"), California Penal Code § 631

(3) CIPA, California Penal Code § 632

(4) The Electronic Communications Privacy Act ("ECPA") The Federal Wiretap Act, 18 U.S.C. § 2510, *et seq*.

(5) Breach of Contract

(6) Invasion of Privacy

(7) Intrusion Upon Seclusion

<u>At Issue Data</u>

Each Plaintiff in this case claims that Google wrongfully received certain data while he or she browsed the web while signed out of his or her Google Account and using a private browsing mode to visit websites not owned or operated by Google. The data Plaintiffs claim Google wrongfully received are: (a) GET requests, which are instructions for a website's server to display content in the user's browser; (b) IP addresses; (c) information identifying the browser software the user is using; (d) User-ID issued by the website to the user, if available; (e) geolocation of the user, if available; (f) information contained in Google cookies. For purposes of the instructions below, I will refer to this data as the "At Issue Data."

All Plaintiffs claim they used the Chrome Incognito private browsing mode to visit websites.

Plaintiff Trujillo claims she used, in addition to Chrome Incognito, the private browsing modes of Apple's Safari browser.

1

2      DATE SUBMITTED: November 1, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CLAIM: VIOLATION OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA"), CAL. PENAL CODE § 502**

**(DISPUTED) JURY INSTRUCTION NO. 1-1**

<u>Essential Factual Elements</u>

Each Plaintiff claims that Google has violated the Comprehensive Computer Data and Access Fraud Act, sometimes referred to as "CDAFA." To establish this claim, each Plaintiff must prove all of the following:

1.   Each Plaintiff is the owner of the computer [or] mobile device [, or data].

2.   Google knowingly accessed each Plaintiff's computer [or] mobile device [, or data];

3.   Google's taking, copying, or use of [his or her Private Browsing Data / At Issue Data] was without that Plaintiff's permission;

4.   Each Plaintiff [was harmed / suffered damage or loss]; and

5.   Google's conduct was a substantial factor in causing each Plaintiff's [harm / damage or loss].

There is no dispute that Plaintiffs satisfy Element 1. You must decide Elements 2, 3, 4, and 5.

I will now provide more details on Elements 2, 4, and 4, which warrant additional explanation. However, you must determine if all five elements are satisfied whether or not I provide additional details on any particular element.

**Plaintiffs' Statement:**

(1)       Plaintiffs include the phrase "or data" within elements 1 and 2 because there is no requirement that Plaintiffs prove access to a device. Plaintiffs elaborate below in the dispute over the "access" instruction. Plaintiffs' proposal is also consistent with this Court's summary judgment order, where the Court held that "plaintiffs have identified an unopposed property interest [in their browsing data] for at least a portion of the class period under the California Consumer Privacy Act." Dkt. 969 at 36.

(2)       Plaintiffs properly use the term "harm" rather than "damage or loss" because that tracks CACI 1812. Below, Plaintiffs propose an additional instruction to define "harm" for purposes of this claim, and that proposal tracks this Court's summary judgment order.

(5)      For element 3, Google confusingly repeats "each Plaintiff," which is already used in the introductory sentence to the claim. That repetition might mislead the jury into assuming that "each plaintiff" must prove the claim for "each plaintiff." Plaintiffs also propose reminding the jury that this case is about "Private Browsing Data," as defined above. Whereas referring to this data as "private browsing data" will be helpful to the jury, describing it with legalese like "at-issue data" will tend to confuse the jury. For the reasons described above, *supra* Brief for 0-2, Google is wrong to suggest that Plaintiffs have placed additional limitations on the data (aside from the non-Google website and signed-out limitations)

(3)      Plaintiffs include an instruction informing the jury there is no dispute on Element 1. For all claims, Plaintiffs' position is that the jury should be instructed only for the elements that are in dispute. For example, there is no dispute that Google throughout the class period intentionally collected private browsing data. Google did not get the data by accident. Here, there should be no dispute that Plaintiffs own the computers and mobile devices they used to conduct their private browsing.

As Wright and Miller explain: "Of course, there need not be an instruction on an issue neither presented by the pleadings nor effectively raised at the trial by the parties. ***Nor should a charge be given on a matter, whether or not raised in the pleadings, if it is not supported by the evidence***." Wright & Miller, § 2556 Form and Content of Instructions, 9C Fed. Prac. & Proc. Civ. § 2556 (3d ed.). Here and in many places below, Google improperly tries to lead the jury astray into assuming there is a dispute about a particular issue that is not actually disputed. For each claim, Plaintiffs propose clarifying which elements are not in dispute. *See also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 153 (2d Cir. 1997) ("A party is not entitled to have the court give the jury an instruction for which there is no evidentiary predicate at trial."); *Peterson v. Mountain States Tel. & Tel. Co.*, 349 F.2d 934, 937 (9th Cir. 1965) ("It is not the role of the Court's charge to confuse the jury with abstract propositions of law. Instructions to the jury should always be adjusted to opposing contentions as to the facts shown by the evidence in the case.".)

[Authority: Judicial Council of California Civil Jury Instructions Number 1809; Cal. Penal Code § 632; Dkt. 969 (MSJ Order)]

**<u>Google's Statement</u>:**

Google's instruction is modeled after CACI 1812 and the statutory language in Section 502(e)(1) of the California Penal Code. It clearly lays out the elements of the Comprehensive Computer Data and Access Fraud Act ("CDAFA") as articulated in CACI 1812. There are four critical differences between the language that Google and Plaintiffs propose in the instruction.

(1) Plaintiffs would erroneously instruct the jury that it is sufficient for Plaintiffs to prove that Google accessed Plaintiffs' "data." It is not. *See* Cal. Penal Code § 502(c)(2) (requiring Plaintiff to prove that his or her data being accessed was "*from a computer*, computer system, or computer network") (emphasis added). Courts have explicitly clarified that "[a]ccessing Plaintiffs' information . . . is not the same thing as accessing Plaintiffs' computer systems, even if that information was at some point stored on those computers." *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *6–8 (C.D. Cal. June 30, 2014).

(2) Plaintiffs' proposal to use the term "Private Browsing Data," rather than "At Issue Data" should be rejected. Plaintiffs incorrectly and confusingly define "Private Browsing Data" as all "data generated" when Plaintiffs browse in private browsing mode. By contrast, throughout the litigation, Plaintiffs more specifically defined the data as: (1) the "GET Request," (2) IP Address, (3) browser information, (4) User-ID, (5) geolocation, and (6) cookies. Dkt. 886 (Fourth Amended Complaint) ¶ 63(a)-(f). The jury deserves to have at least the same level of clarity with which the parties have been litigating, and Plaintiffs should not be permitted to confuse the jury by expanding the At Issue Data at this juncture. Plaintiffs' definition of "Private Browsing Data" is too vague and amorphous to be used here or in any other instruction.

1       (3) Plaintiffs' instruction that *any* "harm" is sufficient is legally incorrect here because the

2 statute requires that the specific harm Plaintiffs must show to meet their burden is "damage or loss."

3 *See* Cal. Penal Code § 502(e)(1). As explained in more detail in Google's response to Instruction

4 No. 1.3, courts have consistently characterized the "damage or loss" requirement as "narrow[er]"

5 than general "harm" that may be adequate to confer standing. *See Andrews v. Sirius XM Radio Inc.*,

6 932 F.3d 1253, 1262 (9th Cir. 2019); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195

7 n. 12 (9th Cir. 2022); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021); *Nowak v.*

8 *Xapo, Inc.*, 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020); *NovelPoster v. Javitch Canfield*

9 *Grp.*, 140 F. Supp. 3d 938, 950–51 (N.D. Cal. 2014).

10       (4) Plaintiffs erroneously assert that the first element, ownership, is undisputed. To prove

11 that element, Plaintiffs must show *which* devices they claim ownership over and establish that at

12 trial. Google cannot agree in the abstract. As to ownership of "data," Google disputes that Plaintiffs

13 own the At Issue Data or that it can even constitute "property." Dkt. 907-3 at 24. Contrary to

14 Plaintiffs' assertion, the California Consumer Privacy Act does not provide otherwise. This Court's

15 statement that "plaintiffs have identified an unopposed property interest for at least a portion of the

16 class period under the California Consumer Privacy Act" was in the context of denying Google's

17 summary judgment motion on the UCL claim, not any claim that will go to the jury.  In any event,

18 Google opposes Plaintiffs' purported "property interest" in this data, and Plaintiffs cannot seek to

19 win that fight with jury instructions.

Authorities:
- CACI 1812.
- Cal. Penal Code § 502(e)(1).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

## (DISPUTED) JURY INSTRUCTION NO. 1-2

<u>Access</u>

For the second element, the term "access" means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with the logical, arithmetical, or memory function resources of a computer or mobile device.

A person can access a computer [or,] mobile device [, or data ] in different ways. For example, access can be accomplished by sitting down at a computer and using the mouse and keyboard, or by using a wireless network, or some other method or tool to gain remote entry. Merely accessing a Plaintiff's information is not sufficient to prove that his or her computer was accessed.

**Plaintiffs' Statement:**

(1)      Plaintiffs' proposal tracks CACI 1813 verbatim, with just one exception (adding "or data"). Plaintiffs add language from the statute acknowledging that an entity can violate the CDAFA by "knowingly access[ing] and without permission tak[ing], cop[ying], or mak[ing] use of ***any data***." Cal. Penal Code § 502(c)(2) (emphasis added). The CDAFA does not require access to a computer or a mobile device; it can be violated by a defendant accessing data without permission. *See* Cal. Penal Code § 502(c)(2) (proscribing unpermitted taking, copying, or use "of any data . . . , whether existing or residing internal or external to a computer . . ."); *id.* § 502(b)(8) (defining "data" to include data "in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device").

(2)      For this reason, Plaintiffs object to Google's additional language at the bottom of the instruction (in red), which departs from CACI. That language is not in CACI 1813.

**Google's Statement:**

(1) Plaintiffs concede that their proposed instruction creating an independent basis for CDAFA liability based on mere "access to data" veers from CACI 1813. It is also at odds with the plain language of the statute, which Plaintiffs conveniently omit. *See* Cal. Penal Code § 502(c)(2) (requiring Plaintiff to prove that his or her data was accessed "from a computer, computer system,

or computer network"). Contrary to Plaintiffs' assertions, courts have explicitly clarified that "[a]ccessing Plaintiffs' information . . . is not the same thing as accessing Plaintiffs' computer systems, even if that information was at some point stored on those computers." *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *6–8 (C.D. Cal. June 30, 2014). Google's instruction appropriately clarifies this important point of law that might otherwise confuse the jury. Plaintiffs' instruction should not be given.

Authorities:
- CACI 1813.
- Cal. Penal Code § 502(b)(1).
- *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260–62 (N.D. Cal. 2022) ("Reactive' data collection, logging and sending to [defendant] data that users receive from [plaintiff] through their normal use of the website" does not fall within CDAFA's scope) (internal quotation marks omitted).
- *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *6–8 (C.D. Cal. June 30, 2014) (dismissing CDAFA claim because "[a]ccessing Plaintiffs' information . . . is not the same thing as accessing Plaintiffs' computer systems, even if that information was at some point stored on those computers.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 1-3**

Harm / Damage or Loss

**Plaintiffs' Proposal:**

As part of this claim, you must consider whether Plaintiffs were harmed.

The California Constitution expressly recognizes a right to privacy as an "inalienable right." This right to privacy concerns one's own peace of mind. Any injury to Plaintiffs' interest in privacy, feelings, or peace of mind resulting from Google's taking, copying, or use of Plaintiffs' Private Browsing Data constitutes harm.

California law also recognizes a right to disgorgement of profits resulting from unjust enrichment. If you find that Google profited from its collection, storage, and use of Plaintiffs' Private Browsing Data, you should consider whether the circumstances are such that, as between Google and Plaintiffs, it is unjust for Google to retain those profits. If you find that Google was unjustly enriched, that also constitutes harm to Plaintiffs, even if Plaintiffs have not suffered a corresponding loss.

Plaintiffs can also demonstrate harm by proving that there is a market for their browsing data, and that Google's conduct inhibited Plaintiffs' ability to participate in that market.

In addition, unauthorized use of a device constitutes harm if that use causes a non-de minimis drain on the device's resources, including storage, battery life, and bandwidth.

**Google's Proposal:**

For the fourth element, "damage" includes impairment to the integrity or availability of data, a program, a system, or information. "Loss" means the reasonable cost of responding to the unlawful access, conducting a damage assessment, and restoring the data to its condition prior to the access, and any revenue lost or cost incurred because of interruption of service.

However, loss of the right to control one's own data, loss of the value of one's data, and the loss of the right to protection of one's data are not "damage or loss" within the meaning of the statute.

1

2 **Plaintiffs' Statement**:

3      (1)      Plaintiffs' proposal tracks well-settled law, including this Court's summary judgment

4 order, providing helpful context for understanding the scope of harm that may be considered.

5      (2)      This Court's summary judgment order recognized that harm for this claim can be

6 proven with evidence of Google's unjust enrichment: "the Ninth Circuit's decision [*In re Facebook,*

7 *Inc. Internet Tracking* Litigation, 956 F.3d 589, 601 (9th Cir. 2020)] stands for the proposition that

8 plaintiffs can state an economic injury for their misappropriated data." Dkt. 969 at 33; *see also id.*

9 at 600 (sustaining CDAFA claim where plaintiffs alleged that Facebook was unjustly enriched by

10 collecting their browsing data, holding that "California law recognizes a right to disgorgement of

11 profits resulting from unjust enrichment, even where an individual has not suffered a corresponding

12 loss."). Plaintiffs' proposal tracks how this Court applied that Ninth Circuit law.

13      (3)      Plaintiffs can also prove harm through evidence that the defendant's taking and use

14 of the data "take[s] up processing, storage, and power/battery resources on user devices" and

15 "cause[s] webpages to load slower." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1066–67 (N.D.

16 Cal. 2015); *see also Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019)

17 (plaintiffs alleged economic injury for CDAFA claim through allegations that defendant "caused

18 Plaintiffs to deplete their phones' resources, including battery, electricity, cellular data, CPU

19 processing power, RAM storage, and hard drive space"). Google is wrong to suggest (below) that

20 Plaintiffs "failed to adduce any admissible evidence" on this issue. Plaintiffs' technical expert

21 Jonathan Hochman disclosed opinions on it. *E.g.*, Hochman Rep. (Dkt. 608-12) ¶¶ 94, 113.

22      (4)      Finally, under California law, Plaintiffs may prove harm and recover damages based

23 on harm to peace of mind. *See, e.g., Operating Engineers Loc. 3 v. Johnson*, 110 Cal. App. 4th 180,

24 187 (2003) ("The right of privacy concerns one's own peace of mind . . . ."); *Miller v. Nat'l Broad.*

25 *Co.*, 187 Cal. App. 3d 1463, 1485 (Ct. App. 1986); *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d

26 1463, 1485 (Ct. App. 1986) ("emotional distress damages, i.e., anxiety, embarrassment, humiliation,

27 shame, depression, feelings of powerlessness, anguish, etc. [are] subjects of legitimate inquiry by a

28 jury"). Contrary to what Google claims below, Plaintiffs previously identified this harm. *See, e.g.,*

1    Brown Dep. Tr. 156:1-24 (explaining that "when you have [] your privacy breached, I consider that

2    harm," emphasizing his "unknown harm" in that "all of my data that has been collected [] is being

3    used to – without my knowledge, without my consent, with not even knowing what it is and what's

4    being done with it"); Davis Dep. Tr. 139:24-25 (explaining the "huge erosion of trust and a huge

5    sense of disappointment" he experienced upon learning that Google was collecting his private

6    browsing information); *see also* Dkt. 1020 at 19 (citing similar evidence).

7         (5)    Google's proposal and brief ignores the above authorities, including the summary

8    judgment order in *this case*. Google claims that "no court has ever recognized [Plaintiffs'] theory of

9    harm under CDAFA," and that Plaintiffs' theory is "nonsensical." That bold statement ignores the

10   very Court Google finds itself before. *See* Dkt. 969 at 33 ("Because plaintiffs proffer evidence that

11   there is a market for their data—one Google itself has created—the Court cannot rule, as a matter

12   of law, that plaintiffs suffered no damages under CDAFA."). Google also overlooks the statute,

13   which clarifies that Plaintiffs are entitled to "compensatory damages and injunctive relief *or other*

14   *equitable relief*," which would include unjust enrichment. Cal. Penal Code § 502(e)(1) (emphasis

15   added).

16        (6)    Finally, the only portion of this instruction that has any relation to the *Book of*

17   *Approved Jury* Instructions ("BAJI") is the portion addressing harm to peace of mind. But Google

18   cannot credibly contest Plaintiffs' reliance on BAJI 7.27 for that issue. In another pending (putative)

19   class action before this District in which the plaintiffs are pursuing a CDAFA claim, Google opposed

20   class certification by citing the same BAJI instruction and arguing the plaintiffs erred by not building

21   their damages model entirely around such harm. *See Rodriguez v. Google*, Case No. 20-cv-04688,

22   Dkt. 329 at 19 & n.7.

23

24   [Authorities: Book of Approved Jury Instructions No. 7.26; *Selleck v. Globe Int'l, Inc.*, 166 Cal.

25   App. 3d 1123, 1135 (1985); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th

26   Cir. 2020); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1066 (N.D. Cal. 2015); Dkt. 969 (MSJ

27   Order); *Mathews v. Becerra*, 8 Cal. 5th 756 (2019) (right to privacy is an "inalienable right" under

28   the California Constitution),

**Google's Statement:**

(1) It is undisputed that a plaintiff must show "loss" or "damage" within the meaning of the CDAFA. *See* Cal. Pen. Code § 502(e)(1) ("The owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief."). Google's instruction elucidates those two terms by using precedent in this district. In interpreting what constitutes "damage or loss," courts have concluded that "damage" is "any impairment to the integrity or availability of data, a program, a system, or information." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 961–64 (N.D. Cal. 2014); *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *4–5 (N.D. Cal. Nov. 20, 2020) (same). Courts have interpreted "loss" to mean (1) reasonable costs incurred by the Plaintiff, and (2) lost revenue caused by an "interruption of service." *Id.* Courts have further held that a plaintiff's ability to control, place value on, or protect his or her data are not the kind of "damage" or "loss" covered by CDAFA. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195 n. 12 (9th Cir. 2022) (requiring Plaintiff to show "damage" or "loss" by proving "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data"); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019) (holding that plaintiffs' theory of loss that defendant stole his personal information and deprived him of the opportunity to sell it was not "loss" under the similar federal statute); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (explaining that a plaintiff's ability to control, place value on, or protect his or her data is not the type of "loss" or "damage" covered by CDAFA). Google's instruction appropriately and accurately summarizes this law.

(2) Plaintiffs' instruction is incorrect as a matter of law. Importantly, it completely ignores the statutory language "damage or loss," and instead explains their various theories of harm—which

do not apply to CDAFA. As explained above, "damage or loss" has a specific meaning that is narrower than what Plaintiffs make it out to be. Neither of the four theories Plaintiffs try to shoehorn into the definition of "loss" or "damage" under CDAFA pass muster.

(a) Plaintiffs seek to sweep in liability for purported injury to their "peace of mind" or "feelings." No court has ever held that "peace of mind" or "feelings" constitute "damage" or "loss" under CDAFA and none of the cases Plaintiffs cite address "damage" or "loss" under CDAFA. *See Operating Engineers Loc. 3 v. Johnson*, 110 Cal. App. 4th 180, 187 (2003) (discussing whether invasion of privacy claims seeking emotional distress damages for "anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, anguish" are within the exclusive jurisdiction of the Workers' Compensation Appeals Board); *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1485 (1986) (concluding that a widow had stated a cause of action for intrusion upon seclusion where a TV crew entered her husband's bedroom while he was suffering from a seizure because the intrusion was in her home); *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1135 (1985) (addressing the requirements necessary to prove libel and slander). Further, Plaintiffs' instruction is based on the decommissioned *Book of Approved Jury Instructions,* California Rule of Court 2.1050, which was replaced by the Judicial Council of California Civil Jury Instructions ("CACI") as "the official instructions for use in the state of California." California Rule of Court 2.1050.

Worse, Plaintiffs neither pleaded this theory of harm nor provided any discovery or deposition testimony related to it. *See*, *e.g.*, Dkt. 886 (Fourth Amended Complaint); Responses to Interrogatory No. 3 (when asked to "[d]escribe with particularity how YOU have been harmed or damaged by [Google's] conduct," none of the Plaintiffs identified harm to peace of mind or injury to feelings); Davis Tr. at 138:18-104:6; Trujillo Tr. at 230:10-17. Because Plaintiffs failed to timely disclose this theory of harm, they are precluded from offering any evidence related to it. *See Hoffman*

*v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), as amended (Sept. 16, 2008) (upholding exclusion of damages theory where it was first disclosed through pretrial conference). Nor is it clear what evidence, if any, Plaintiffs will introduce on this theory of harm. *See* Dkt. 1028-1 (Pretrial Statement) at 26-27.

(b) Plaintiffs improperly reference a remedy to which they claim they are entitled. A "right to disgorgement of profits resulting from unjust enrichment" has no place in the determination of damage or loss under CDAFA. Indeed, unjust enrichment is not even an available remedy under the statute. Cal. Penal Code § 502(e)(1) (limiting CDAFA damages to "compensatory damages and injunctive relief or other equitable relief"). Plaintiffs now claim that the statute itself allows for "unjust enrichment" because it qualifies as "other equitable relief." But that reading is unsupported by a long line of precedent in the Ninth Circuit, cited above, and Plaintiffs can find *no* case in which a court, much less a jury, awarded unjust enrichment under CDAFA. To argue otherwise, Plaintiffs mistakenly rely on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020), where the Ninth Circuit merely recognized that an alleged right to disgorgement of profits was sufficient to clear the Article III injury-in-fact hurdle at the pleading stage. 956 F.3d at 600–01. The Ninth Circuit did not consider whether unjust enrichment was sufficient to meet CDAFA's statutory requirement of "loss" or "damage" at trial. The statute and copious precedent addressing specifically that question confirm it is not. Tellingly, Plaintiffs' generic instruction that fails to instruct on CDAFA's very specific "damage" and "loss" language, also doubles as Plaintiffs' "harm" instruction for the privacy torts, despite the fact that the requirements differ.

(c) Plaintiffs seek to introduce another improper theory of harm to the definition of "damage" or "loss" under CDAFA—that Google's alleged conduct "inhibited" their ability to participate in a purported market for their data. Legally, none of the authorities Plaintiffs cite have awarded damages under this theory under CDAFA. Factually, Plaintiffs have not (and cannot) explain how

Google inhibited their "ability to participate" in an unnamed "market for browsing data." Plaintiffs attempt to justify this late-disclosed theory of harm by relying on the Court's summary judgment order, but that order did not address this theory. There, the Court found that Plaintiffs "offere[ed] evidence showing that they have a stake in the value of their misappropriated data," not that Google *inhibited* their ability to participate in a market. Dkt. 969 at 33. Indeed, each Plaintiff admitted in response to Google's Interrogatory No. 10 that he or she "c[ould not] recall attempting to sell [his or her] personal data." This late-disclosed theory should not be put to the jury.

(d) Plaintiffs have failed to adduce any admissible evidence establishing their fourth theory of harm–that Google's code drained Plaintiffs' system resources and cannot proceed on this theory. *See* Dkt. 939-1 at 42 (Google's response to PAF 30). As Plaintiffs' argue elsewhere, "Nor should a charge be given on a matter, whether or not raised in the pleadings, if it is not supported by the evidence."  Wright & Miller, § 2556 Form and Content of Instructions, 9C Fed. Prac. & Proc. Civ. § 2556 (3d ed.).

Plaintiffs' listing and description of these unsupported theories of harm would only confuse the jury and should not be given.


Authorities:
- CACI 1812.
- Cal. Pen. Code § 502(e)(1).
- 8 U.S.C. § 1030(e)(8) & (11).
- A*ndrews v. Sirius XM Radio Inc*., 932 F.3d 1253, 1262 (9th Cir. 2019) (loss under CFAA cannot be met based on the  theoretical value of data that plaintiffs "might have received from commodifying" it).
- *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data … is [not] 'damage or loss' within the meaning of the CDAFA.")
- *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020) (dismissing CDAFA claim based on loss of value of stolen cryptocurrency in part because the nature of the loss was not cognizable under CDAFA).
- *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (dismissing CDAFA claim in the absence of "deprivation of income or actual loss").

- *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 950–51 (N.D. Cal. 2014) (dismissing CFAA claim – the federal CDAFA analogue – for failure to plead "any impairment to the integrity or availability of data, a program, a system, or information.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

-73-

**(JOINT) JURY INSTRUCTION NO. 1-4**

<u>Substantial Factor</u>

For the fifth element, a substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**SECOND CLAIM: VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**("CIPA"), CAL. PENAL CODE § 631**

**(DISPUTED) JURY INSTRUCTION NO. 2-1**

<u>Introduction</u>

Each Plaintiff claims that Google has violated his or her right to privacy. A person's right to privacy can be violated in more than one way. Each Plaintiff claims that Google violated Section 631 and Section 632 of the California Invasion of Privacy Act, sometimes referred to as "CIPA." To establish [their / this] claim under Section 631, each Plaintiff must prove all of the following:

1. Google read, attempted to read, or learned the contents or meaning of his or her private browsing communications with non-Google websites while in private browsing mode and signed out of his or her Google account;

2. Google [did so / received] [while these / this] communications [were / while] in transit, or being sent from or received within California;

3. This communication was in transit in the State of California;

4. Google acted willfully; and

5. Google did not have the consent of all parties to intercept these / receive this communications, or Google intercepted these communications in any unauthorized manner.

There is no dispute that Plaintiffs satisfy Elements 2 and [3/4, "willfully" element]. You must decide Elements 1 and 5 ["consent"]. For this claim, you need not consider whether Plaintiffs were harmed [since they are only seeking statutory damages] I will now provide more details on elements 1, 2, and 5, which warrant additional explanation. However, you must determine if all five elements are satisfied whether or not I provide additional details on any particular element.

**Plaintiffs' Statement:**

(1)    Plaintiffs' proposal for the introduction tracks CACI 1809. That model instruction (which focuses on CIPA § 632) recommends clarifying (where applicable) that the plaintiff is bringing claims under multiple sections of CIPA. That recommendation applies because Plaintiffs here are asserting claims under both Sections 631 and 632. Consistent with that recommendation, Plaintiffs also briefly "list[] the legal theories under which the plaintiff is suing." Similarly, the

1    "Directions" for CACI 1809 explain that if a plaintiff is only seeking statutory damages for this

2    claim, then there is no need to prove actual harm. Plaintiffs propose informing the jury that there is

3    no harm requirement for this claim because other claims have a harm requirement, and the jury may

4    otherwise be confused as to whether this one does. That said, the jury should not be told about

5    "statutory damages", as Google proposes, particularly because the jury will not decide those.

6          (2)     The jury should be informed there is no dispute that Google collected the

7    communications while in transit, and that Google acted willfully. Google has admitted to facts which

8    indisputably prove these elements. In its Answer, Google admitted the at-issue Google services (e.g.,

9    Google Analytics) "are configured to receive data" from users, and that "Google scripts" installed

10   on websites will "cause the user's browser to send certain data to Google." Answer ¶ 8. Google

11   cannot take the position that its conduct was anything other than willful, and that Google somehow

12   accidentally or by mistake obtained Plaintiffs' private browsing data. Providing an instruction on

13   this undisputed element risks leading the jury astray.

14         (3)     The same is true for the "in transit" element. For example, Google has admitted that

15   the "browser retrieves the embedded code and executes it *as part of rendering the website*." Rog 40

16   (emphasis added). And as this Court recognized, the "operation" of Google's code "is not in

17   dispute," and "the parties do not dispute the way Google receives the at-issue data." MSJ Order at

18   2. The jury should not be led astray to assume there is a dispute where there is not one.

19         (4)     Plaintiffs also object to how Google describes the "in-transit" language and the

20   "consent" language. Plaintiffs' proposals track the language in the statute. *See* CIPA § 631(a)

21   ("while the same is in transit or passing over any wire, line, or cable, or is being sent from, or

22   received at any place within this state"). There is also no reason to list "within California" as a

23   separate element. That approach unnecessarily breaks apart the same portion of the statute. As for

24   "consent", Plaintiffs propose adding the language from the statute which prohibits entities from

25   acting "without the consent of all parties . . . *or in any unauthorized manner*." CIPA § 631(a)

26   (emphasis added).

27         (5)     Plaintiffs object to Google's use of "receive" which Google uses in elements 2 and

28   5. Google is improperly adding a gloss to the statute to support one of its arguments—that Google

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

is somehow passively receiving the data. Plaintiffs' proposal, by contrast, actually tracks the statute's wording. Google is not a passive recipient of private browsing data: Google wrote and distributed the code that creates and sends Google's servers a copy of private browsing activity. In the Order denying summary judgment, the Court expressly distinguished Google's conduct from the type of "reactive data collection" that Google invokes. Dkt. 969 at 31-32. At a minimum, Google's proposed instruction improperly imbues Google's articulation of the facts with the Court's endorsement. Plaintiffs' proposed instruction is free of that type of slanted language.

(6)      Plaintiffs object to Google's use of "communication" in the singular because Plaintiffs allege and will prove that Google intercepted numerous private browsing communications.

(7)      Finally, Plaintiffs are very surprised that Google objects to Plaintiffs' use of "private browsing communications." Google claims this characterization "improperly decides for Plaintiffs a disputed issue of fact" whether or not the communications are indeed 'private.'" But Plaintiffs are just using the term Google itself uses. *E.g.*, Google May 2018 Privacy Policy (Users can "choose to browse the web in a private mode, like Chrome Incognito mode").

[Authority: Judicial Council of California Civil Jury Instructions Number 1809; Cal. Penal Code § 631; Dkt. 969 (MSJ Order)]

**Google's Statement:**

The disputes between Plaintiffs' and Google's language in the instruction are significant and pervade every element. Plaintiffs' assertions that Google "conceded" certain elements are baseless. At the crux of Plaintiffs' arguments is an attempt to maneuver out of their burden to prove each element by proposing one-sided stipulations to supposedly undisputed facts. But Plaintiffs cannot unilaterally stipulate their way out of proving key facts essential to proving the elements of their claim at this late juncture. That is improper, and the Court should forbid it. Plaintiffs' argumentative instructions would lead to significant error. By contrast, Google's instruction is modeled after the

statutory language in Section 631 of the California Invasion of Privacy Act and lays out clearly all of the elements the statute sets forth  in Section 631 of the California Penal Code.

*First element*: Plaintiffs' characterization of the communications at issue in this case is misleading and argumentative because it wrongly instructs the jury that these are "private browsing communications, which improperly decides for Plaintiffs a disputed issue of fact: whether or not the communications are indeed "private". The court should instead adopt Google's neutral language which properly instructs the jury that at issue are "communications with non-Google websites while in private browsing mode".

*Second element*: Section 631(a) of the CIPA explicitly requires Plaintiffs to prove that any alleged interception occurred "in transit" from the Plaintiff to the non-Google website or from the non-Google website to the Plaintiff. Cal. Penal Code § 631(a). Plaintiffs' proposed language is wrong for two reasons.  First, it appears to confound the "in transit" element with the California nexus.  The "in transit" requirement is a separate element under CIPA, and courts have consistently so held. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (explaining that CIPA § 631 prohibits a defendant from "attempting to read" a communication "while the same is in transit"); *Beverly Balletto v. Am. Honda Motor Co., Inc.*, 2023 WL 7026931, at *1 (N.D. Cal. Oct. 24, 2023) ("CIPA penalizes . . . willfully attempting to learn the contents or meaning of a communication *in transit* over a wire") (citations omitted) (emphasis added); *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023) (dismissing for failure to state a claim because Plaintiff failed to prove that the Defendant "*or other third parties*, 'intercepted these communications *in transit*'") (citation omitted) (emphasis added); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *2 (N.D. Cal. June 9, 2023) ("Courts often look to the federal Wiretap Act, which prohibits the unauthorized interception of an electronic communication, to interpret the in transit prong of Section 631(a)") (citations and internal quotation marks omitted); *Rodriguez v.*

*Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit.") (citation omitted); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) ("[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, *i.e.*, before it reached its intended recipient.") (quoting *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021)). It would be an error to merge this distinct element with the California nexus requirement in the way Plaintiffs have, and it would mislead and confuse the jury. Second, Plaintiffs seek to add the additional language of "in the process of being sent or received" to the "in transit" element. Their sole basis for doing so is one Eastern District of California case, *Mastel v. Miniclip SA*, 2021 WL 2983198, at *4 (E.D. Cal. July 15, 2021).  But that language is absent from the statute, and there is no reason to add that instruction here because it would only confuse and mislead the jury.  Even the Eastern District in *Mastel* recognizes that "[t]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient." *Id.* at 1137. Thus, Plaintiffs have two separate burdens: (1) to prove that interception occurred "in transit", and (2) interception occurred in California. Cal. Penal Code § 631(a).

Contrary to Plaintiffs' assertion that Google conceded the "in transit" element, Google has not. The only basis Plaintiffs have to argue otherwise—that Google explained that the code executes as part of rendering the website—is by no means an admission that the communication was received "in transit."  To so find would be for the Court to impermissibly substitute its own fact-finding for the jury's.

*Third element*: Plaintiffs fail to instruct the jury that they must prove that any alleged interception occurred in California. *See* Cal. Penal Code § 631(a); *Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (dismissing claim because Plaintiffs did not prove that interception occurred in the State of California). Plaintiffs' attempt to combine this distinct element with the "in transit" element is misleading and argumentative. Also misleading is their attempt to argue Google has "conceded" this without citing anything in the record in support.

*Fourth element:* Plaintiffs fail to inform the jury of their burden to prove that Google acted willfully. *Id.* Plaintiffs erroneously claim that Google conceded that it acted willfully. But in its Answer, Google denied Plaintiffs' allegation that Google "purposeful[ly] . . . facilitated [] interceptions." Google's Answer to Plf's Third Amend. Compl. at ¶ 226 (Dkt. 531); Fourth Amend. Compl. at ¶ 226 (Dkt. 886). None of the sources Plaintiffs point to as support for their erroneous claim that Google has conceded it acted willfully support their claim. If anything, Google's Answer and Plaintiffs' Fourth Amended Complaint read together show that Google does not dispute a much narrower position: depending on user and website settings, Google receives the At Issue Data. That is starkly different from a concession that Google "willfully" read, attempted to read, or learned the contents or meaning of Plaintiffs' communications with non-Google websites while they were browsing in private browsing mode. *See* Cal. Penal Code § 631(a). Plaintiffs cannot escape their burden of proving willfulness under CIPA Section 631.

*Fifth element*: Plaintiffs propose adding to the consent element language that it can be satisfied if defendants acts "in any unauthorized manner." This additional language without any clarification will likely confuse the jury.

Authorities:
- Cal. Penal Code § 631.
- *Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (section 631 "creates liability for any individual who reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing

over any wire, line, or cable, or is being sent from, or received at any place within this state.'").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 2-2**

<u>Contents</u>

For the first element, "contents" includes any information concerning the substance, purport, or meaning of that communication. A URL can qualify as "contents" provided it reveals the particular document within a website that a person views. Search terms also qualify as "contents."

Record information [like basic identification and address information / regarding the characteristics of the message that is generated in the course of the communication] does not qualify as "contents." For example, emails and text messages are contents, but IP addresses user names, user IDs, passwords, HTTP referrer information, webpage addresses, and geographic location information are not.

**<u>Plaintiffs' Statement:</u>**

(1)    Plaintiffs' proposal tracks this Court's summary judgment decision. URLs can qualify as contents "by virtue of including the particular document within a website that a person views." MSJ Order (Dkt. 969) at 26. Full-stringed URLS "reveal[] much more information" than IP addresses, including "a user's personal interests, queries, and habits." MSJ Order at 26 (citing *Facebook Tracking*, 956 F.3d at 605); *see also United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008) ("A URL, unlike an IP address, identifies the particular document within a website that a person views and thus reveals much more information about the person's [i]nternet activity.").

This Court's summary judgment holding tracked the Ninth Circuit's decision in *Facebook Tracking*, where it held that "'full-string detailed URL[s]' are distinct from the IP addresses discussed in *Zynga Privacy*, 956 F.3d at 605." *Id.* This Court also reached a similar conclusion in the *RTB* case: "Contents" include information that "describes the current section of the site or app" the user is visiting, as well as the "URL of the page where the impression will be shown." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (Gonzalez Rogers, J.).

(2)    Other courts have similarly concluded that URLs can qualify as content. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137-38 (3d Cir. 2015) ("If

… [a] URL is part of the substantive information conveyed to the recipient, then by definition it is 'content.'"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("Meta says that the names of buttons clicked on websites and their associated URLs are not 'content' within the meaning of the statute. I disagree. As set forth below, because the 'Log in' button and full-string URLs concern the 'substantive, purport, or meaning of a communication,' these transmissions likely constitute 'contents.'"); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) ("Meta Pixel transmits 'contents' of communications to Meta," including because "the Pixel transmits to Meta the URL of each page visited on a website"). Google's proposal (above) and its brief (below) ignores this Court's order and these authorities, seeking instead to relitigate the summary judgment motion, where Google unsuccessfully sought dismissal of this claim based on the same arguments. *E.g.*, Dkt. 908 at 20 (arguing that information about "a webpage a user is viewing" does not qualify as "contents"). Plaintiffs also do not understand why Google objects to "search terms" being included in the instruction.

(3)      Both parties propose listing examples of data that do not qualify as "contents." But Google's proposal is overbroad and confusing. For example, Google's proposal to exclude "HTTP referrer information" and "webpage addresses" contradicts the above authorities. Flagging the concept of "HTTP referrer information" will also confuse the jury.

(4)      Plaintiffs' proposal tracks this Court's summary judgement order. Dkt. 969 at 25 ("Not included in the scope of 'content' is 'record' data like 'basic identification and address information'").

[Authorities: Cal. Penal Code § 631; Dkt. 969 (MSJ Order); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137–38 (3d Cir. 2015); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022)]

**Google's Statement**:

Google's version of the instruction is a correct and thorough recitation of what constitutes "contents" under CIPA § 631(a) and in accordance with controlling Ninth Circuit authority, *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). By contrast, Plaintiffs' instruction on "contents" is incomplete and misleading.

(1)     The Ninth Circuit explicitly rejected Plaintiffs' proposed statement that a "URL can qualify as contents provided it reveals the particular document within a website that a person views." In *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1105, 1107, 1109 (9th Cir. 2014), the Ninth Circuit held that "HTTP referer information", including the "address [that] identifies the location of a webpage a user is viewing" is not "content." 750 F.3d 1098, 1105, 1107, 1109 (9th Cir. 2014). The Court should reject Plaintiffs' proposed language.

(2)     In arguing for their misleading instruction, Plaintiffs resort to mischaracterizing authority. The Ninth Circuit expressly held that *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008) does not support classifying URLs as "content." *Zynga*, 750 F.3d at 1108. In *In re Google RTB Consumer Privacy Litig.*, this Court held (at the pleading stage) that plaintiffs sufficiently alleged content not based on URLs alone, but rather in combination with at least six other data categories. 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (Gonzalez Rogers, J.). The court in *In re Meta Pixel Healthcare Litigation* held only that URLs may be content when they contain "the query string" (i.e., search terms). 2022 WL 17869218, at *11 & n.10 (N.D. Cal. Dec. 22, 2022). And far from reversing Ninth Circuit law, the court in *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) found that "[a]t least some of this information—such as information someone is disabled—constitutes 'contents' under CIPA," and thus Plaintiffs claim survived a motion to dismiss. *Id.* at *13. None of these authorities bless Plaintiffs' erroneous "content" instruction.

(3)      Plaintiffs propose defining record information by giving the example of "basic identification and address information," but that presents an incomplete definition of record information and ignores *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1105, 1107, 1109 (9th Cir. 2014). Google's proposal is based on controlling Ninth Circuit authority and properly defines record information as information "regarding the characteristics of the message that is generated in the course of the communication." *See id*. at 1106 (describing "content" as excluding "record information regarding the characteristics of the message that is generated in the course of communication").

(4)      Google proposes providing helpful and case-based examples of record information and contents—which, given the non-intuitive terms used in the statute, is a necessity to ensure clarity for the jury. Each of these terms Google proposes comes from case law. For example, the Ninth Circuit held in *In re Carrier IQ, Inc.* that "text messages" are content under the statute. 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015). Similarly, *In re Yahoo Mail Litig.* found that "emails" are content. 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) (Gonzalez Rogers, J.). At the same time, it is important to instruct the jury as to what is not "content[]" under the statute and applicable case law: passwords, HTTP referrer information, webpage addresses, and geographic location information. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1083 (usernames and passwords are not content under the statute); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1034 (Gonzalez Rogers, J.) ("name, address, email address or phone number" are not content); *In re Zynga Privacy Litig.*, 750 F.3d at 1105–07 (neither "ID[s that] identif[y] a [] user," nor "HTTP referrer information" that includes the "webpage address [that] identifies the location of a webpage a user is viewing," qualify as "contents."). Plaintiffs have no plausible basis to object to the added clarity for the jury.

Authorities:

- Cal. Penal Code § 631(a) ("Any person who…reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication" violates CIPA § 631.).
- *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) (Gonzalez Rogers, J.) ("email content" is content for wiretapping statutes, but "name, address, email address or phone number" are not).
- *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) ("data on when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent on the apps" is not content).
- *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").
- *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084 (N.D. Cal. 2018) ("[D]ata about a telephone call, including the number from which it was made, the time it was made, the number called, and the length of the call does not fall within the Wiretap Act because it is not the content of the communication, it is data about the communication.").
- *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (intercepted text messages and URLs containing search terms constitute content, but usernames and passwords do not, even when transmitted together to allow another to gain access).
- *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ( "The Ninth Circuit has held that the 'contents'" of an online communication under federal wiretap law 'refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication'" and noting that "[n]umerous federal courts have applied this definition" in the context of CIPA) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).
- *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) ("IP addresses" and "URLs" are not content).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

1

**(DISPUTED) JURY INSTRUCTION NO. 2-3**

2

<u>In Transit</u>

3

**Google's Proposal:**

4

5

6

<span style="color:red">For the second element, "in transit" means that Google acquired the contents of each Plaintiffs' communication with non-Google websites while in private browsing mode and signed out of his or her Google account in transit before they reached the intended recipient.</span>

7

**Plaintiffs' Proposal:** None. This element should not be in dispute, so no instruction is necessary.

8

But if the jury is led to believe that this element is in dispute, then Plaintiffs propose the following

9

instruction:

10

11

<span style="color:blue">"In transit" means that Google intercepted the communication while it was in the process of being sent or received.</span>

12

13

**Plaintiffs' Statement:**

14

(1)      Plaintiffs object to this instruction because this element should not be in dispute. For

15

example, in its Answer, "Google admits that . . . [the] Google Analytics scripts . . . provide services

16

*as soon as a page is loading*." Google's Answer ¶ 74. Similarly, Google admits that its tracking

17

beacons are "retrieved and executed by the browser *as part of rendering the publisher's website*"

18

(RFA No. 31); *see also* Rog 40 (admitting that the "browser retrieves the embedded [Google] code

19

and executes it *as part of rendering the website*"; "When executed, this code instructs the user's

20

browser to request content directly from the third-party servers. In making these requests, a copy of

21

the GET request along with certain basic information necessary to provide the service . . . may be

22

included to facilitate processing the request and providing the requested content. When received,

23

the browser incorporates the requested content into place as necessary to present a seamless

24

webpage."). With these admissions, there can be no dispute that the communications are intercepted

25

while in-transit. As this Court recognized, the "operation" of Google's code "is not in dispute," and

26

"the parties do not dispute the way Google receives the at-issue data." MSJ Order at 2. The jury

27

should not be led astray into believing otherwise.

28

(2)     But if an instruction is given, Plaintiffs propose an alternative instruction. Plaintiffs satisfy this requirement with evidence that the defendant intercepted the communication while it was "in the process of being sent or received." *Mastel v. Miniclip SA*, WL 2983198, at *4 (E.D. Cal. July 15, 2021). Google's proposal is inaccurate because of its focus on whether the communications already "reached the intended recipient." That is too rigid. As Judge Easterbrook explained, the "understanding of 'interception' as 'catching a thing in flight' is sensible enough for football, but for email there is no single 'thing' that flies straight from sender to recipient." *United States v. Szymuszkiewicz*, 622 F.3d 701, 705 (7th Cir. 2010); *see id.* at 706 ("if both Szymuszkiewicz and Infusino were sitting at their computers at the same time, they would have received each message with no more than an eyeblink in between. That's contemporaneous by any standard."). "[I]nformation acquired 'within a second of each message's arrival and assembly' satisfies the contemporaneous interception requirement." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226 (C.D. Cal. 2017) (summarizing the holding in *Szymuszkiewicz*).

(3)     Courts in this District have similarly acknowledged that electronic communications are intercepted where there is a "continual process by which communications to and from the phone are being contemporaneously analyzed during the transmission process"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1076 (N.D. Cal. 2015); *see also id.* (recognizing the "tremendous, almost instantaneous, speed in which [modern electronic communications] can be transmitted"). Even communications in "transient electronic storage" can be intercepted. *United States v. Councilman*, 418 F.3d 67, 85 (1st Cir.2005) (en banc); *see also Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) ("Thus, interception includes accessing messages in transient storage on a server during the course of transmission, but does not include accessing the messages stored on a destination server."); *Garcia v. Haskett*, 2006 WL 1821232, at *3 (N.D. Cal. June 30, 2006) ("In order to constitute unlawful interception of electronic communication, the interception of email messages must have occurred while the messages were in a transient storage facility, not a place of permanent storage.").

**<u>Google's Statement</u>:**

Plaintiffs' and Google's instruction differ in two material respects. First, Plaintiffs wrongly argue that this court should not adopt Google's  instruction because Google purportedly "conceded" that this element was met.  Plaintiffs' request is a belated summary judgment motion: they ask this Court to parse Google's discovery responses to find that there is no disputed issue of fact. That is impermissible. And even if the Court were to engage in that exercise, it would only find that Google's discovery responses merely explained that the code executes as part of rendering the website, which is by no means an admission that the communication was received "in transit."  The Court should give this instruction and reject Plaintiffs' attempt to drag the Court into making decisions on facts.

Second, the Court should reject Plaintiffs' alternative language on this element, which seeks to add a new requirement to "in transit," which is that a putative interception occur when the communication is "in the process of being sent or received." Their sole basis for adding that language is one Eastern District of California case, *Mastel v. Miniclip SA*, 2021 WL 2983198, at *4 (E.D. Cal. July 15, 2021). But that language is not in the statute, nor in any of the other cases Plaintiffs cite, and there is no reason to add it to the instruction here because it would only confuse and mislead—*i.e.*, it is unclear what, if anything, this additional language adds to the common sense term "in transit". Even the Eastern District in *Mastel* recognizes that "[t]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient." *Id.* at 1137. Plaintiffs' other authorities—none of which are controlling here—do not support adding "in the process of being sent or received" to the element, and certainly do not undermine Google's proposed instruction.

<u>Authorities:</u>

- Cal. Penal Code § 631(a).
- *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding for an electronic communication to be "intercepted" under the Wiretap Act, it must have been "acquired during transmission . . ."); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–954 (N.D. Cal. 2014) (applying *Konop* to dismiss Wiretap Act and CIPA claims).
- *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *6 (N.D. Cal. May 24, 2023) ("'The statute applies to messages intercepted "*while* the same ... is being sent from, or received at any place within this state.' 'While' implies the interception must occur contemporaneous with the sending or receipt of the message.") (citation omitted).
- *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *2 (N.D. Cal. June 9, 2023) ("Courts often look to the federal Wiretap Act, which prohibits the unauthorized interception of an electronic communication, to interpret the in transit prong of Section 631(a).") (citations and internal quotation marks omitted).
- *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (To meet the "in transit" requirement of CIPA, plaintiff must plead specific facts that the interception occurred "simultaneously" with the transmission of data).
- *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ("The crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient") (citations and internal quotation marks omitted).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

1

**(DISPUTED) JURY INSTRUCTION NO. 2-4**

2

<u>Consent</u>

3

**Plaintiffs' Proposal:**

4

Plaintiffs must offer some evidence that they or non-Google websites did not consent to the

5

specific practices at issue, or that Google acted in "any unauthorized manner" with respect to those

6

specific practices—here, Google's collection, storage, and use of Plaintiffs' private browsing

7

communications during their visits to non-Google websites while signed out of their Google

8

accounts. If you find that Plaintiffs have offered some evidence that they did not consent, or that

9

Google acted in any unauthorized manner, then Plaintiffs satisfy this element.

10

Google is also asserting the affirmative defense of consent. That affirmative defense has

11

specific meaning, which I will instruct you on later. For now, you need only consider whether

12

Plaintiffs have offered some evidence that they did not consent, or that Google acted in an

13

unauthorized manner.

14

15

**Google's Proposal:**

16

For the fifth element, each Plaintiff must prove that either the Plaintiff or the websites visited

17

did not consent to Google's receipt of each Plaintiffs' communication with non-Google websites

18

while in private browsing mode and signed out of his or her Google account.

19

**Plaintiffs' Statement:**

20

(1)        Plaintiffs' insertion of "any unauthorized manner" tracks CIPA § 631, which applies

21

to defendants who act "willfully and without the consent of all parties to the communication, *or in*

22

*any unauthorized manner . . .*" (emphasis added).

23

(2)        Plaintiffs also clarify that for the consent inquiry, the focus must be on the "specific

24

practice" being challenged. *See* Dkt. 969 (MSJ Order) at 13 ("For consent to be actual, the

25

disclosures must 'explicitly notify' users of the practice at issue. … In other words, consent is only

26

effective if the person alleging harm consented 'to the particular conduct, or substantially the same

27

conduct' and if the alleged tortfeasor did not exceed the scope of that consent.").

28

1    (3)    Plaintiffs' proposed framework is also consistent with this Court's summary
2    judgment order. This Court found "that '[c]onsent is a defense to plaintiffs' claims' and it is
3    therefore on Google, not plaintiffs, to prove. . . . ***Google's argument to the contrary is rejected now***
4    ***and for purposes of trial***." MSJ Order at 13 n.13. Consistent with that ruling, Plaintiffs propose the
5    jury be informed that so long as Plaintiffs proffer evidence that they did not consent, Google has the
6    burden to prove its consent affirmative defense, which would include express and implied consent
7    (subject to Plaintiffs' arguments about why implied consent is not available in this particular case).
8    Both parties below propose an instruction about Google's consent affirmative defense, which
9    Google contends applies to all claims. Plaintiffs' proposal accounts for the fact that consent is
10   relevant both as an element and as an affirmative defense. Google's proposal by contrast seeks two
11   bites at the consent apple, effectively asking the jury to decide the same issue twice.

12   (4)    Plaintiffs' proposed instruction below for Google's consent affirmative defense is far
13   more detailed, explaining what specifically is required for Google to prove consent. *See infra*
14   Instruction 8-2.

15   (5)    Plaintiffs object to any instruction that describes the conduct as issue as the mere
16   "receipt" of data. Google is not a passive recipient of private browsing data: Google wrote and
17   distributed the code that creates and sends Google's servers a copy of private browsing activity. In
18   the Order denying summary judgment, the Court expressly distinguished Google's conduct from
19   the type of "reactive data collection" that Google invokes. Dkt. 969 at 31-32. At a minimum,
20   Google's proposed instruction improperly imbues Google's articulation of the facts with the Court's
21   endorsement. Furthermore, Google's focus on "receipt" ignores that Plaintiffs also base their claims
22   on Google's storage and use of the data. These objections to Google's use of "receipt" apply
23   throughout these disputed instructions.

24

25   **Google's Statement:**

26   The parties agree the jury must be instructed on Plaintiffs' burden of "consent." That is not
27   in dispute. Misleadingly, though, Plaintiffs claim that their instruction is "consistent" with this
28   Court's ruling at summary judgment "that '[c]onsent is a defense to plaintiffs' claims and it is

therefore on Google, not plaintiffs, to prove. . . . ." MSJ Order at 13 n.13. The Court's ruling was based on the understanding that the parties did not cite any controlling law on this point. *Id.* ("The parties do not identify any Ninth Circuit precedent on whether consent is an affirmative element of or defense to Plaintiffs' claims."). However, the Ninth Circuit and California Court of Appeal have held that consent is an element of a CIPA claim that plaintiffs must prove. *See, e.g.*, *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019) ("[I]t appears that, under California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record."); *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 889 (2023) (affirming judgment in favor of defendant because "lack of consent is a required element under both section 632 and section 632.7" and plaintiff "did not prove lack of consent").

The Court should give Google's instruction. Google's instruction follows the applicable CACI and is a correct statement of the law. Cal. Penal Code § 631(a) (liability for someone "who willfully and without the consent of all parties to the communication"); CACI 1809 ("To establish [a CIPA claim], [name of plaintiff] must prove ... [t]hat [name of defendant] did not have the consent of all parties to the conversation to [eavesdrop on/record] it.").

Plaintiffs' proposed language, by contrast, is an argumentative concoction that would confuse the jury. Plaintiffs claim that all they need to do to satisfy this element is "offer[] some evidence that they did not consent, or that Google acted in any unauthorized manner." That is wrong. Plaintiffs cannot simply offer "some" evidence. "Lack of consent is an express element of a [CIPA] claim," *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015), and therefore, "the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent." *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020). Plaintiffs cannot meet it by offering "some" evidence—they need to prove it.

Plaintiffs' instruction is particularly confusing because in addition to the legally incorrect instruction on their own consent burden, they also propose referencing here Google's affirmative defense. That is unnecessary and misleading, and they point to no authority for that departure from the CACI. Plaintiffs' change is grounded in their misunderstanding that their burden to show the required element of consent is someone less than Google's burden to prove its affirmative consent defense. That is not so, and the Court should reject Plaintiffs' unsupported addition.

Authorities:

- Cal. Penal Code § 631(a) (explaining that any person who acquires the contents of an individual's information "without the consent of all parties to the communication" is liable under Section 631).
- *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) (finding that Plaintiffs' allegations that interception of communications occurred without their consent "meant they claimed a violation" under CIPA).
- *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *13 (N.D. Cal. Dec. 22, 2022) ([CIPA Section 631 "requir[es] that all parties consent to a recording of their conversation"). *Licea v. Vitacost.com, Inc.*, 2023 WL 5086893, at *3 (S.D. Cal. July 24, 2023)(dismissing Cal. Penal Code § 631(a) claim where plaintiff failed to sufficiently allege that defendant lacked consent to record communications).

DATE SUBMITTED: November 1, 2023

## (DISPUTED) JURY INSTRUCTION NO. 2-5

### [Willfully]

**Plaintiffs' Proposal:**  As noted above, Plaintiffs' position is that this element should not be in dispute, and that no instruction is necessary. But if the jury is led to believe that this element is in dispute, then Plaintiffs propose the following instruction:

Willfully means intentionally, i.e., the defendant intended to do the act; it does not require any intent to violate law, or to injure another, or to acquire any advantage.

**Google's Proposal:** The fifth element that Plaintiffs must prove by a preponderance of the evidence is that Google acted willfully. To act willfully means to act with a purpose or willingness to commit the act.

**Plaintiffs' Statement:**

(1)     As noted above, the jury should be informed that Google is not disputing this element. Google has admitted to facts that prove this element, and there is nothing left for the parties to litigate. For example, Google's Answer admits that the at-issue Google services (e.g., Google Analytics) "are configured to receive data" from users, and that "Google scripts" installed on websites will "cause the user's browser to send certain data to Google." Answer ¶ 8. There is no dispute that Google's conduct was willful, and the jury should know that. Google's collection and use of private browsing data did not happen by accident.

(2)     If Google is permitted to suggest that this element is in dispute, Plaintiffs ask that this instruction be given: Willfully means intentionally, i.e., the defendant intended to do the act; it does not require any intent to violate law, or to injure another, or to acquire any advantage." *See People v. Hagedorn*, 127 Cal. App. 4th 734, 744 (Cal. Ct. App. 2005) ("The word 'willfully' as generally used in the law is a synonym for 'intentionally,' i.e., the defendant intended to do the act proscribed by the penal statute. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (citing Cal. Penal Code § 7(1), which contains the definition of "willfully")). If the jury will be asked to grapple with this element, they should be informed that Plaintiffs need not prove that Google intentionally violated the law.

**Google's Statement:** Plaintiffs incorrectly argue that Google has conceded willfulness. That argument makes little sense: if Google disputes that any of the elements are met, how could it concede that its conduct (that it disputes) is wilful? In fact, in its Answer, Google denied Plaintiffs' allegation that Google "purposeful[ly] . . . facilitated [] interceptions." Google's Answer to Plf's Third Amend. Compl. at ¶ 226 (Dkt. 531); Fourth Amended Compl. at ¶ 226 (Dkt. 886). Plaintiffs urge the court to find that Google has conceded willfulness because Google has explained in its answer that its services "are configured to receive data" from users, and that "Google scripts" installed on websites will "cause the user's browser to send certain data to Google." Answer at ¶ 8. But explaining the technology is not the same as conceding Google intercepted communications. To find otherwise is error because it invites the Court to substitute its own judgment for the jury's fact-finding.  Plaintiffs cannot escape their burden of proving to the jury willfulness under Section 631(a) of the California Penal Code.

Plaintiffs' proposed instruction is also erroneous because it relies on criminal cases and the penal code.  By contrast, Google's instruction should be given because it appropriately explains the standard. Google's instruction is carefully crafted based on statutory language and case law.

Authorities:

- Cal. Penal Code § 631(a).
- Cal. Penal Code § 7 (West) ("The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.").
- *People v. Hagedorn*, 25 Cal.Rptr.3d 879, 127 Cal.App.4th 734 (App. 5 Dist. 2005) ("The word 'willfully' as generally used in the law is a synonym for 'intentionally,' i.e., the defendant intended to do the act proscribed by the penal statute; it does not require any intent to violate law, or to injure another, or to acquire any advantage.").

DATE SUBMITTED: November 1, 2023

**(DISPUTED) JURY INSTRUCTION NO. 2-6**

<u>Number of Violations</u>

**Plaintiffs' Proposal:**

If you find that Plaintiffs have proven their claim under Section 631 of the California Invasion of Privacy Act, you will need to decide how many times Google violated the law, as to each Plaintiff.

Each interception qualifies as a separate violation of the law.

**Google's Proposal:**

CIPA provides that "[a]ny person injured by a violation of the statute may bring an action against the person who committed the violation for…five thousand dollars ($5,000) per violation." If you find that each Plaintiff has proven his/her claim, you will need to determine how many times Google violated the law with respect to each Plaintiff. In making that determination, you must consider whether each Plaintiff has put forth specific evidence of a violation. You may not speculate, guess, or conjecture in determining the number of violations for each Plaintiff.

**Plaintiffs' Statement:**

(1)     Google's proposal provides zero guidance for how to decide how many times Google violated the law. Plaintiffs' proposal provides that guidance, relying on Judge's Koh ruling on the motion to dismiss. Dkt. 113 at 24. In rejecting Google's argument that Plaintiffs' claims were time-barred, citing Ninth Circuit law, Judge Koh held that "each interception is a separate violation" for purposes of the Federal and California wiretap statutes:

> The Ninth Circuit has held that, for Wiretap Act claims, "each interception is a discrete violation" with its own statute of limitations. *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020). In coming to this conclusion, the Ninth Circuit relied on the Wiretap Act's "multiple references to 'communication' in the singular," which showed that there was "no textual basis for morphing what otherwise would be considered separate violations into a single violation because they flow from a common practice or scheme." Id. *The Ninth Circuit's reasoning applies to Plaintiffs' other claims, which also refer to "communication" or "act" in the singular*. *See* Cal. Penal Code §§ 631(a) (prohibiting the unauthorized interception of "any message, report or communication"); id. § 632(a) (prohibiting the interception of a "confidential communication") . . . . Furthermore, the California Supreme Court "ha[s] long settled that separate, recurring invasions of the same

right can each trigger their own statute of limitations." *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 880 (Cal. 2013).

(2)      Google's proposal is also improper because it lists the applicable rate for statutory damages. Those damages are set by statute, and the jury has no say in what they are or what they should be. Google's proposal risks leading the jury astray into making a finding based on the amount of money that Google might have to pay, which is not the jury's role for this claim.

[Authorities: Dkt. 113 (Order Denying MTD FAC); *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020)]

**Google's Statement:**

There is no CACI instructing the jury to determine the number of violations of CIPA for purposes of statutory damages. Accordingly, Google's instruction quotes CIPA's language directly and otherwise adopts other model instructions for calculation of damages.

This approach is the most appropriate in this circumstance. Hewing to the language of the statute itself ensures no error is introduced by either party's instruction. It also provides the jury with a clear understanding of why they must calculate the number of violations, which is otherwise hidden in Plaintiffs' proposed instruction. Further, because this instruction concerns damages, it must include the standard safeguards that accompany instructions on those inquiries—which is entirely missing from Plaintiffs' inadequate version. For example, Plaintiffs omitted the burden that they carry to prove CIPA violations entirely from their instruction and, as with all damages calculations, it is important that the jury understand an "award must be based upon evidence and not upon speculation, guesswork or conjecture." Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 5.1 Damages – Proof. This is particularly important here, given that the number of violations found by the jury will provide key input for this Court's

1  calculation of any statutory damages, and Google anticipates the number of violations will be

2  heavily contested at trial.

3         Finally, Plaintiffs seek to instruct the jury that "each interception qualifies as a separate

4  violation of the law," but such simplistic instruction is inappropriate—as confirmed by the fact that

5  no CACI on this issue exists. It is especially inappropriate in this case, where, unlike the typical

6  CIPA case where a phone call may be intercepted, it is unclear what will equate to an "interception"

7  among the complex types of network communications and the myriad At-Issue Data Google

8  receives. Plaintiffs continue to rely on Judge Koh's motion to dismiss ruling which is inapplicable

9  because this question arose in  a different procedural context and Judge Koh's order addressed a

10  different legal question—whether each interception restarts the clock for purposes of statute of

11  limitations. *Bliss v. CoreCivic, Inc.* does not help Plaintiffs either because it addressed whether

12  separate interceptions could be deemed separate violations for purposes of statutes of limitations,

13  and the court in *Bliss* did not purport to explain how a jury should calculate the number of violations.

14  978 F.3d 1144, 1148 (9th Cir. 2020). The Ninth Circuit did not even consider Section 637.2 of the

15  CIPA, but rather the court ruled on the Federal Wiretap Act and claims arising under Nevada state

16  law. This Court should adopt Google's instruction, which stays true to the language of the statute

17  and the routine safeguards provided in other damages instructions.

18

19  [Cal. Penal Code § 637.2; Manual of Model Civil Jury Instructions for the District Courts of the

20  Ninth Circuit (2017), Section 5.1 Damages – Proof (no "speculation, guesswork or conjecture" in

21  awarding damages)]

22

23  DATE SUBMITTED: November 1, 2023

24

25  DATE REVISED: _____

26

27

28

**THIRD CLAIM: VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**("CIPA"), CAL. PENAL CODE § 632**

**(DISPUTED) JURY INSTRUCTION NO. 3-1**

<u>Introduction</u>

As I have explained, Each Plaintiff also claims that Google has violated his or her right to privacy under Section 632 of the California Invasion of Privacy Act. To establish this claim, each Plaintiff must prove all of the following:

1.  Google intentionally eavesdropped on or recorded each Plaintiff's private browsing communications with non-Google websites while in private browsing mode and signed out of his or her Google account;

2.  He or she had an objectively reasonable expectation that [these / this] communications [were / was] not being overheard or recorded;

3.  Google did not have the consent of all parties to eavesdrop or record [these / this] communications.

There is no dispute as to Element 1. Your focus should be on deciding Elements 2 and 3. In addition, for this claim, you need not consider whether Plaintiffs were harmed.

I will now provide more details on elements 2 and 3, which warrant additional explanation. However, you must determine if all three elements are satisfied whether or not I provide additional details on any particular element.

**Plaintiffs' Statement:**

(1)     Consistent with CACI 1809, and consistent with their proposal above for the CIPA § 631 claim, Plaintiffs propose beginning with a reminder that CIPA can be violated in more than one way and that Plaintiffs have two CIPA claims.

(2)     The jury should be informed that there is no dispute that Google eavesdropped upon or recorded their private browsing communications. Google has admitted to facts which prevent Google from contesting this element. *E.g.*, Resp. to Rog 1 ("The fact alone that a user is in private browsing mode does not change the types of data collected when Chrome users visit a third-party website that uses Google Analytics or Ad Manager while not logged in to their Google Accounts."); Response to RFA 43 ("Google stores the data at issue in this case in Analytics and Ad Manager

-100-

protocol buffer logs . . .”). If Google is storing “the data at issue in this case” within Google logs, there can be no dispute that Google is recording the data. Nor can there be any dispute that Google did so “intentionally”; this did not happen by accident.

(3)      Plaintiffs object to Google's use of “communication” in the singular because Plaintiffs allege and will prove that Google recorded numerous private browsing communications.

(4)      The “Directions” for CACI 1809 explain that if a plaintiff is only seeking statutory damages for this claim, there is no need to prove harm. Plaintiffs propose informing the jury that there is no harm requirement for this claim because other claims have a harm requirement, and the jury may otherwise be confused as to whether this one does.


[Authority: Judicial Council of California Civil Jury Instructions Number 1809; Cal. Penal Code § 632; Dkt. 969 (MSJ Order)]


**<u>Google's Statement</u>:**

The parties dispute two issues in this instruction. First, Plaintiffs' instruction makes erroneous representations that Google does not dispute that it “intentionally eavesdropped on or recorded each Plaintiffs' private browsing communications with non-Google websites while in private browsing mode and signed out of his or her Google account.” In its Answer, Google denied Plaintiffs' allegation that Google “purposeful[ly] . . . facilitated [] interceptions.” Google's Answer to Plf's Third Amend. Compl. at ¶ 226 (Dkt. 531); Fourth Amend. Compl. at ¶ 226 (Dkt. 886). Plaintiffs also improperly ask the Court to weigh the sufficiency of the evidence as it would at summary judgment, and take this issue away from the jury. That is erroneous and prejudicial. None of the sources Plaintiffs point to support their erroneous conclusions that Google conceded the intent element of CIPA. If anything, those documents show that Google does not dispute the fact that,

depending on user and website settings, it received the At Issue Data only. That is simply not the same as conceding that Google "intentionally" eavesdropped on or recorded Plaintiffs' communications. *See* Cal. Penal Code § 632. Plaintiffs cannot escape their burden of proving intentionality under CIPA Section 632.

Second, Plaintiffs propose to instruct the jury that it need not "consider whether Plaintiffs were harmed." If the Court does so, the jury must also know that Plaintiffs seek statutory damages; otherwise the jury would be left in the dark, lacking context, and confused as to why this claim is different from others, and what it means for the element of "harm" for the other claims.

Authorities:
- CACI 1809 (Pen. Code §§ 632, 637.2) (Aug. 2022) ("To establish this claim, [*name of plaintiff*] must prove ... [t]hat [*name of defendant*] did not have the consent of all parties to the conversation to [eavesdrop on/record] it.").
- Cal. Penal Code § 632 ("A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication… shall be punished.").
- *Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019) ("[I]t appears that, under California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record.").
- *People v. Davies*, 2022 WL 366859, at *7 (Cal. Ct. App. Feb. 8, 2022) ("[T]he purpose of the statute is to punish a person who intends to record (or eavesdrop upon) a confidential communication without the consent of all parties thereto."), *as modified on denial of reh'g* (Feb. 16, 2022).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

## (DISPUTED) JURY INSTRUCTION NO. 3-2

### [Intentionally]

**Plaintiffs' Proposal:** None. There should be no dispute that Google acted intentionally. But if the jury is led to believe there is a dispute on this issue, then the following instruction should be given: "Intentionally" means that the defendant intended to do the act; it does not require any intent to violate law, or to injure another, or to acquire any advantage.

**Google's Proposal:** To act intentionally means to act deliberately and purposefully. In order to have acted intentionally, Google must have consciously sought to eavesdrop on or record communications rather than done so by mistake or accident.

**Plaintiffs' Statement:**

(1)      As noted above, there should be no dispute that Google acted intentionally. For example, Google's Answer admits that the at-issue Google services (e.g., Google Analytics) "are configured to receive data" from users, and that "Google scripts" installed on websites will "cause the user's browser to send certain data to Google." Answer ¶ 8.

(2)      If Google is permitted to suggest this element is in dispute, Plaintiffs ask that their proposed instruction be given. Plaintiffs' proposed definition of "intentionally" tracks California law. *See People v. Hagedorn*, 127 Cal. App. 4th 734, 744 (Cal. Ct. App. 2005) ("The word 'willfully' as generally used in the law is a synonym for 'intentionally,' i.e., the defendant intended to do the act proscribed by the penal statute. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (citing Cal. Penal Code § 7(1), which contains the definition of "willfully")). If the jury will be asked to grapple with this element, the jury should be informed that Plaintiffs need not prove that Google intentionally violated the law.

**Google's Statement:**

(1)      Plaintiffs incorrectly argue that Google has conceded the intentional element. That argument makes little sense: if Google disputes that any of the elements are met, how could it

concede that its conduct (that it disputes) is intentional? In fact, in its Answer, Google denied Plaintiffs' allegation that Google "purposeful[ly] . . . facilitated [] interceptions." Google's Answer to Plf's Third Amend. Compl. at ¶ 226 (Dkt. 531); Fourth Amend. Compl. at ¶ 226 (Dkt. 886). Plaintiffs urge the court to find that Google has conceded the intentional element because Google has explained in its answer that its services "are configured to receive data" from users, and that "Google scripts" installed on websites will "cause the user's browser to send certain data to Google." Answer at ¶ 8. But explaining the technology is not the same as conceding Google intercepted communications. To find otherwise is an error because it invites the Court to substitute its own judgment for the jury's fact-finding. Plaintiffs cannot escape their burden of proving the intentional element to the jury under Section 632 of the California Penal Code.

(2)      Plaintiffs' proposed instruction is also erroneous because it relies on criminal cases and the penal code. By contrast, Google's instruction should be given because it appropriately explains the standard.


Authorities:

- Cal. Penal Code § 631(a).
- Sands, J. Instructions re: (Instr. 92-7) (defining intentionally).

DATE SUBMITTED: November 1, 2023

## (DISPUTED) JURY INSTRUCTION NO. 3-3

"Overheard or Recorded" / Objectively Reasonable Expectation of Confidentiality

**Plaintiffs' Proposal:**

Each Plaintiff must prove the existence of a reasonable expectation that their private browsing communications with non-Google websites while signed out of their Google accounts were not being overheard or recorded. In other words, each Plaintiff must demonstrate a reasonable expectation that their communications with non-Google websites while signed out of their Google account were not being disseminated to an unannounced observer.

**Google's Proposal:**

For the second element, each Plaintiff must prove that he or she had an objectively reasonable expectation that his or her communications with non-Google websites would be confidential, or in other words, that the communications would not be (1) overheard by anyone, other than the websites each Plaintiff visited, or (2) recorded by anyone, including the websites each Plaintiff visited. Each Plaintiff's personal, subjective views are not relevant.

Internet-based communications are presumptively not confidential within the meaning of Section 632. You must decide whether each Plaintiff has shown that there is something unique about these particular internet communications that justifies departing from this presumption.

**Plaintiffs' Statement:**

(1)     Plaintiffs' proposal properly tracks the prior orders in this case. As Judge Koh held, for this element, "[t]he plaintiff need not show an 'additional belief that the information would not be divulged at a later time to third parties.' Rather, the plaintiff only needs to show a reasonable 'expectation that the conversation ***was not being simultaneously disseminated to an unannounced second observer***.'" Dkt. 113 at 30 (emphasis added) (citing *Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013)). Here, the relevant "second observer" is Google. Similarly, as this Court held at summary judgment, there is a triable issue of fact on this element because "there is a reasonable argument that plaintiffs had an expectation of privacy against Google even if they knew others could be listening in." Dkt. 969 at 28.

1      (2)      Plaintiffs object to Google's proposal, which disregards and contradicts the prior

2 orders, in two ways. *First*, Google misstates the law by suggesting that Plaintiffs must prove their

3 communications "would not be overheard **by anyone**, other than the websites each Plaintiff visited."

4 (emphasis added). Google made the same argument at summary judgment, claiming that Plaintiffs'

5 (purported) "awareness of third parties having access to their alleged communications is

6 dispositive." Dkt. 908 at 21. The Court correctly rejected that framing, focusing instead on whether

7 plaintiffs understand that Google would collect their communications: "[t]he Court agrees with

8 plaintiffs that a user could reasonably understand the Incognito Splash Screen to disclose that, while

9 users' communications might be accessible (at least in part) to the delineated third parties, they

10 would not be accessible **to Google**." Dkt. 969 at 27 (emphasis added). Google's framing overlooks

11 that "one who listens with the speaker's knowledge and intent is involved or interested in a

12 conversation, not an eavesdropper." *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156,

13 168 (2003); *see also* Dkt. 969 (MSJ Order) at 28 (acknowledging that Cal. Penal Code § 632(b)

14 defines "parties thereto" to mean entities "known by all parties" to be listening in). The Splash

15 Screen's reference to ISPs and employers at most makes those entities known participants—not

16 eavesdroppers.

17      (3)      *Second*, Google mistakes the law by suggesting that communications cannot be

18 confidential if they are "recorded by anyone." At summary judgment, Google similarly argued that

19 because "websites record users' private browsing activity, users have no expectation of privacy,"

20 and that "electronic communications are presumptively unprotected by CIPA." Dkt. 969 (MSJ

21 Order) at 28 (summarizing Google's arguments). This Court rejected those arguments. "California

22 courts have never recognized a legal 'presumption' that internet communications are not

23 confidential under Section 632." *Id.* at 30. This Court elaborated: "That these communications

24 occurred over the internet does not automatically mean that plaintiffs gave up that expectation of

25 privacy they had when they went Incognito. Times change, as do modes of communication." *Id.* at

26 31. The Court's ruling refutes Google's argument that a plaintiff must reasonably expect her

27 communication will not be "recorded **by anyone**, including the websites each Plaintiff visited."

28

(emphasis added). Google's brief (below) ignores the Court's order. Google's efforts to relitigate these arguments (below) should be rejected (again).

[Authorities: Judicial Council of California Civil Jury Instructions Number 1809; Cal. Penal Code § 632; Dkt. 969 (MSJ Order); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774 (2002); *Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013)]

**<u>Google's Statement</u>:**

(1)     The parties agree that Plaintiffs must prove a "reasonable expectation that his or her communications . . . were not being overheard or recorded," but Plaintiffs erroneously leave out that this expectation must be "objective." And they do so even though their own authorities, including a controlling California Supreme Court decision, clearly recognize that "a conversation is confidential only if the party has an *objectively* reasonable expectation that the content will not later be divulged to third parties." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 41 P.3d 575 (2002) (emphasis added). Plaintiffs can hardly dispute the "objective" element now, given that in their Complaint they pleaded "Plaintiffs and Class members had objectively reasonable expectations of privacy . . ." Fourth Amend. Compl. at ¶ 227. The jury will hear much about Plaintiffs' own subjective expectations; failure to instruct the jury on this "objective" inquiry under these circumstances would invite error and deprive the jury of critical information to determine whether the Plaintiffs met their burden.

(2)     Google's instruction reflects the correct standard that a plaintiffs must prove their communication would not be (1) overheard by anyone, other than the non-Google websites each Plaintiff visited, or (2) recorded by anyone, including the non-Google websites, as Google correctly proposes in its competing instruction. This instruction is firmly grounded in the law, including the statute that clearly states a party must show it had a reasonable expectation that the communication would be "confined to the parties thereto." Cal. Penal Code § 632(c), and a controlling California

Court of Appeals opinion that a plaintiff must prove "*no one*" was "listening" or "overhearing the conversation." *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923 (1994) (emphasis added). In fact, Plaintiffs' own instruction that Plaintiffs must prove they did not expect their communications to be "disseminated to an unannounced second observer" is an admission that merely proving they did not expect Google to overhear or record is not sufficient. Plaintiffs claim that this Court held otherwise in the MSJ order, but that stretches the Court's findings. Addressing Google's arguments on this point, the Court found "these arguments merely highlight that a material dispute exists over Google's disclosures here" and that they "do not persuade as a matter of law." Dkt. 969 at 28. The Court certainly did not reject decades of settled California law on this point.

(3)     Finally, Plaintiffs want to escape clear case law that "the California courts have developed a presumption that [i]nternet communications do not reasonably give rise to [the expectation of privacy])." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (May 21, 2021); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *14 (N.D. Cal. Dec. 22, 2022) ("[I]n California, courts have developed a presumption that Internet communications do not reasonably give rise to" an expectation of privacy."); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (internet-based communications "do not reasonably give rise to th[e] expectation [that the conversation is not being overheard or recorded]."). To depart from this presumption, Plaintiffs must prove that their internet-based communication is "unique." *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *14 ("The question is whether Plaintiffs have shown that there is something unique about these particular internet communications which justify departing from the presumption."). The jury must be instructed on this clear presumption because it is significant, especially since failing to overcome it is dispositive. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (dismissing Plaintiff's CIPA § 632 claim because plaintiffs failed to overcome the presumption that internet-based communications are not confidential).

Authorities:

- Cal. Penal Code § 632(c).
- *Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 961 (9th Cir. 2001) (applying a common law rebuttable presumption to the facts).
- *People v. Nakai*, 183 Cal. App. 4th 499, 518–19 (2010) (finding that criminal defendant's intent to keep his internet chats confidential did not satisfy § 632(a) because it was reasonable to assume that the communications could be recorded or shared by the service provider).
- *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002) (A communication is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.").
- *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *14 (N.D. Cal. Dec. 22, 2022) ("[I]n California, courts have developed a presumption that Internet communications do not reasonably give rise to" an expectation of privacy; "[t]he question is whether Plaintiffs have shown that there is something unique about these particular internet communications which justify departing from the presumption.").
- *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) ("[I]n California, courts have developed a presumption that Internet communications do not reasonably give rise to th[e] expectation [that the conversation is not being overheard or recorded].") (collecting cases).
- *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are 'not' confidential within the meaning of section 632 …").
- *Rodriguez*, 2021 WL 2026726, at *7 (dismissing § 632 claim notwithstanding plaintiffs' alleged expectation that defendant would not record their communications with third-party apps because that expectation "does not reasonably give rise to the expectation that nobody (including the apps' developers) would record the communications").
- *In re Google Inc. Gmail Litigation*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013) ("California appellate courts ... suggest that internet-based communication cannot be confidential . . . [because] individuals cannot have a reasonable expectation that their online communications will not be recorded.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

## (DISPUTED) JURY INSTRUCTION NO. 3-4

<u>Consent</u>

**Plaintiffs' Proposal:**

Plaintiffs must offer some evidence that they or non-Google websites did not consent to the specific practices at issue—here, Google's collection, storage, and use of Plaintiffs' private browsing communications during their visits to non-Google websites while signed out of their Google accounts. If you find that Plaintiffs have offered some evidence that they did not consent, then Plaintiffs satisfy this element.

Google is also asserting the affirmative defense of consent. That affirmative defense has specific meaning, which I will instruct you on later. For now, you need only consider whether Plaintiffs have offered some evidence that they did not consent.

**Google's Proposal:**

For the third element, each Plaintiff must prove  that either the Plaintiff or the websites he or she visited did not consent to Google's receipt of each Plaintiff's communication with non-Google websites while in private browsing mode and signed out of his or her Google account.

**Plaintiffs' Statement:**

(1)     Plaintiffs' proposal clarifies that for the consent inquiry, the focus must be on the "specific practice" being challenged. *See* Dkt. 969 (MSJ Order) at 13 ("For consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue. … In other words, consent is only effective if the person alleging harm consented 'to the particular conduct, or substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent.").

(2)     Plaintiffs' proposed framework is also consistent with the Court's summary judgment order. This Court found "that '[c]onsent is a defense to plaintiffs' claims' and it is therefore on Google, not plaintiffs, to prove. . . . ***Google's argument to the contrary is rejected now and for purposes of trial***." MSJ Order at 13 n.13. Consistent with that ruling, Plaintiffs propose that the jury be informed that so long as Plaintiffs proffer evidence that they did not consent, Google has the burden to prove its affirmative consent defense, which would include express and implied

consent (subject to Plaintiffs' arguments about why implied consent is not available in this case). Both parties below propose an instruction about Google's consent affirmative defense, which Google contends applies to all claims. Plaintiffs' proposal accounts for the fact that consent is relevant both as an element and as an affirmative defense. Google's proposal by contrast seeks two bites at the consent apple, effectively asking the jury to decide the same issue twice.

(3)     Plaintiffs' proposed instruction below for Google's consent affirmative defense is far more detailed, explaining what specifically is required for Google to prove consent. *See infra* Instruction 8-2.

(4)     Plaintiffs object to any instruction that describes the conduct as issue as the mere "receipt" of data. Google is not a passive recipient of private browsing data: Google wrote and distributed the code that creates and sends Google's servers a copy of private browsing activity. In the Order denying summary judgment, the Court expressly distinguished Google's conduct from the type of "reactive data collection" that Google invokes. Dkt. 969 at 31-32. At a minimum, Google's proposed instruction improperly imbues Google's articulation of the facts with the Court's endorsement. Furthermore, Google's focus on "receipt" ignores that Plaintiffs also base their claims on Google's storage and use of the data.


**Google's Statement**:

(1) Google's instruction is modeled after CACI 1809, the statute, and relevant case law.  The instruction correctly identifies a necessary element that Plaintiffs have the burden to prove before a jury can find a violation under CIPA, which is that Google lacked consent to receive the At Issue Data.

Plaintiffs' claim that their instruction is "consistent" with this Court's ruling at summary judgment is misleading. The Court's ruling "that '[c]onsent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove. . . . ,'" MSJ Order at 13 n.13, was based on the understanding that the parties did not cite any controlling law on this point. *Id.* ("The parties do not identify any Ninth Circuit precedent on whether consent is an affirmative element of or defense to

Plaintiffs' claims."). However, the Ninth Circuit and California Court of Appeal have held that consent is an element of a CIPA claim that plaintiffs must prove. *See, e.g.*, *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019) ("[I]t appears that, under California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record."); *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 889 (2023) (affirming judgment in favor of defendant because "lack of consent is a required element under both section 632 and section 632.7" and plaintiff "did not prove lack of consent").

The Court should give Google's instruction. Google's instruction follows the applicable CACI and is a correct statement of the law. Cal. Penal Code § 631(a) (liability for someone "who willfully and without the consent of all parties to the communication"); CACI 1809 ("To establish [a CIPA claim], [name of plaintiff] must prove ... [t]hat [name of defendant] did not have the consent of all parties to the conversation to [eavesdrop on/record] it.").

Plaintiffs' proposed language, by contrast, is an argumentative concoction that would confuse the jury. Plaintiffs claim that all they need to do to satisfy this element is "offer[] some evidence that they did not consent, or that Google acted in any unauthorized manner." That is wrong. Plaintiffs cannot simply offer "some" evidence. "Lack of consent is an express element of a [CIPA] claim," *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015), and therefore, "the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent." *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020). Plaintiffs cannot meet it by offering "some" evidence—they need to prove it.

Plaintiffs' instruction is particularly confusing because in addition to the legally incorrect instruction on their own consent burden, they also propose referencing here Google's affirmative defense. That is unnecessary and misleading, and they point to no authority for that departure from the CACI. Plaintiffs' change is grounded in their misunderstanding that their burden to show the

required element of consent is someone less than Google's burden to prove its affirmative consent defense. That is not so, and the Court should reject Plaintiffs' unsupported addition. .

Authorities:
- CACI 1809 (Pen. Code §§ 632, 637.2) (Aug. 2022) ("To establish this claim, [*name of plaintiff*] must prove ... [t]hat [*name of defendant*] did not have the consent of all parties to the conversation to [eavesdrop on/record] it.").
- Cal. Penal Code § 632 (West) ("A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication… shall be punished.").
- *Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019) ("[I]t appears that, under California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record.").
- *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) ("[W]hereas consent is a defense under the SCA, [i]t appears that, under California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record.") (quoting *Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019).
- *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015) ("Lack of consent is an express element of a [CIPA] claim").
- *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *17 (S.D. Cal. July 27, 2023). ("[T]o prevail on a Section 632 claim, a plaintiff must prove (1) an electronic recording of or eavesdropping on (2) a confidential communication (3) to which all parties did not consent.") (citing *In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26 2013)).


DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 3-5**

Number of Violations

**Plaintiffs' Proposal:**

If you find that Plaintiffs have proven their claim under Section 632 of the California Invasion of Privacy Act, you will need to decide how many times Google violated the law, as to each Plaintiff.

Each recording qualifies as a separate violation of the law.

**Google's Proposal:**

CIPA provides that "[a]ny person injured by a violation of the statute may bring an action against the person who committed the violation for…five thousand dollars ($5,000) per violation." If you find that each Plaintiff has proven his/her claim, you will need to determine how many times Google violated the law with respect to each Plaintiff. In making that determination, you must consider whether each Plaintiff has put forth specific evidence of a violation. You may not speculate, guess, or conjecture in determining the number of violations for each Plaintiff.

**Plaintiffs' Statement**

(1)    Google's proposal provides zero guidance for how to decide how many times that Google violated the law. Plaintiffs' proposal provides that guidance, relying on Judge's Koh ruling on the motion to dismiss. Dkt. 113 at 24. In rejecting Google's argument that Plaintiffs' claims were time-barred, citing Ninth Circuit law, Judge Koh held that "each interception is a separate violation" for purposes of the Federal and California wiretap statutes:

> T**he Ninth Circuit has held that, for Wiretap Act claims, "each interception is a discrete violation" with its own statute of limitations.** *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020). In coming to this conclusion, the Ninth Circuit relied on the Wiretap Act's "multiple references to 'communication' in the singular," which showed that there was "no textual basis for morphing what otherwise would be considered separate violations into a single violation because they flow from a common practice or scheme." Id. ***The Ninth Circuit's reasoning applies to Plaintiffs' other claims, which also refer to "communication" or "act" in the singular****. See* Cal. Penal Code §§ 631(a) (prohibiting the unauthorized interception of "any message, report or communication"); id. § 632(a) (prohibiting the interception of a "confidential communication") . . . . Furthermore, the California Supreme Court "ha[s] long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations." *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 880 (Cal. 2013).

(2)     Google's proposal is also improper because it lists the applicable rate for statutory damages. Those damages are set by statute, and the jury has no say in what they are or what they should be. Google's proposal risks leading the jury astray into making a finding based on the amount of money that Google might have to pay, which is not the jury's role for this claim.

[Authorities: Dkt. 113 (Order Denying MTD FAC); *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020)]

**<u>Google's Statement:</u>**

There is no CACI instructing the jury to determine the number of violations of CIPA for purposes of statutory damages. Accordingly, Google's instruction quotes CIPA's language directly and otherwise adopts other model instructions for calculation of damages.

This is appropriate. Hewing to the language of the statute itself ensures no error is introduced by either party's instruction. It also provides the jury with a clear understanding as to why they must calculate the number of violations, which is otherwise hidden in Plaintiffs' proposed instruction. Further, because this instruction concerns damages, it must include the standard safeguards that accompany instructions on those inquiries—which is entirely missing from Plaintiffs' inadequate version. For example, Plaintiffs omitted their burden to prove violations of CIPA from their instruction and, as with all damages calculations, it is important the jury understand an "award must be based upon evidence and not upon speculation, guesswork or conjecture."  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 5.1 Damages – Proof. This is particularly important here, given that the number of violations found by the jury will be a key input for the Court's calculation of any statutory damages, and Google anticipates the number of violations will be contested at trial.

Finally, Plaintiffs seek to instruct the jury that "each recording qualifies as a separate violation of the law," but such simplistic instruction is inappropriate. It is especially inappropriate in this case, where, unlike the typical CIPA case where a phone call may be intercepted, it is unclear what will amount as a "recording" among the complex types of network communications and the myriad At-Issue Data Google receives. Plaintiffs cite the Court's March 12, 2021 Motion to Dismiss Order (Dkt. 113 at 23-25) and *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020), but these opinions addressed whether separate interceptions could be deemed separate violations for purposes of statutes of limitations, and did not purport to explain how a jury should calculate the number of violations. For *Bliss*, the Ninth Circuit was not even considering CIPA, but rather ruling on the Federal Wiretap Act and claims arising under Nevada state law. Google's instruction, which stays true to the language of the statute and the routine safeguards provided in other damages instructions, should be given.

[Cal. Penal Code § 637.2; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 5.1 Damages – Proof (no "speculation, guesswork or conjecture" in awarding damages)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**FOURTH CLAIM: VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA"), 18 U.S.C. §§ 2510, ET. SEQ.**

**(DISPUTED) JURY INSTRUCTION NO. 4-1**

<u>Introduction</u>

Each Plaintiff claims that Google violated the Electronic Communications Privacy Act, also referred to as the ECPA and the Federal Wiretap Act. To establish this claim, each Plaintiff must prove all of the following:

1. Google intercepted or endeavored to intercept each Plaintiff's private browsing communications with non-Google websites while in private browsing mode and signed out of his or her Google account;

2. Google used a "device" to intercept this communication;

3. The intercepted communications [were / was] an "electronic communications";

4. Google acquired the "contents" of the communication; and

5. Google acted intentionally.

There is no dispute that Plaintiffs satisfy Elements 3 and 5 ("electronic communications" and "intentionally"). You must decide Element 1. In addition, for this claim, you need not consider whether Plaintiffs were harmed.

I will now provide more details on elements 1, 2, and 4, which warrant additional explanation. You must also determine whether Plaintiffs have satisfied element 5 even though I do not provide additional details on that element. Google does not contest element 3.

**Plaintiffs' Statement:**

(1)     Plaintiffs object to Google referring to this claim as the "Federal Wiretap Act" claim. The Federal Wiretap Act was "amended by the Electronic Communications Privacy Act," and that is the statute under which Plaintiffs bring this claim. Dkt. 113 at 27. Google should not get to decide how Plaintiffs refer to their claims, particularly when the term Google uses is outdated.

(2)     Plaintiffs object to Google's use of "communication" in the singular because Plaintiffs allege and will prove that Google intercepted numerous private browsing communications.

(3)        Google's proposal departs from Judge Sand's model instructions for this claim by separately listing out "contents" and "device" as separate elements. Those issues are subsumed within the "intercept" element, for the reasons Plaintiffs explain below (in the "intercept" instruction). Judge Sand recommends only three elements": (1) interception, (2) electronic communication, and (3) intentionally. Plaintiffs' proposal is consistent with that recommendation.

(4)        Additionally, as noted above, the jury should be informed there is no dispute about whether Google acted "intentionally." Google did not intercept private browsing communications by accident.

(5)        The same is true for whether the communications are "electronic communications." In fact, if Google were to dispute that element, Google would be contradicting its reliance on the ordinary course of business exception. Google tries to invoke that exception (below) by arguing that Google is a provider of electronic communication services, and that Google's actions are part of its routine business practices as an electronic communications provider.

(6)        Plaintiffs also disagree with Google's characterization of the meet and confer in its brief below.

[Authority: 18 U.S.C. § 2511; Sand, J. Instructions Instr. 92-1, Instr. 92-2]

**<u>Google's Statement</u>:**

(1)        Google's introductory instruction is modeled after Judge Sand's Model Instruction 92-1 and the statutory language of Section 2511(1)(a) of the Federal Wiretap Act. Google's instruction clearly and correctly summarizes the elements of the Federal Wiretap Act as articulated in the statute and case law. *See, e.g.*, *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003), which was cited with approval in *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *10 (N.D. Cal. Dec. 22, 2022).   Plaintiffs' instruction and response, in contrast, lack merit.

(2)        Plaintiffs have no plausible basis to object to calling the statute "the Electronic Communications Privacy Act, also referred to as the ECPA and the Federal Wiretap Act" since the

parties reached this compromise during a meet and confer on Wednesday, October 25, 2023. As the Department of Justice confirms, "Title 1 of the ECPA"—the Title  in issue here—"is often referred to as the Wiretap Act,"https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/statutes/1285. Case law similarly uses the term "Wiretap Act." *See, e.g.*, *Backhaut v. Apple Inc.*, 723 Fed. App'x 405, 407 (9th Cir. 2018) (referencing "The Wiretap Act"); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 814 (N.D. Cal. 2020) (same); Sand, J (referring to Instruction 92-1 and stating "The claim before you is based on a federal law called the Wiretap Act." ). The Court should reject Plaintiffs' meritless objection.

(3)     Google objects to Plaintiffs' proposal to have one instruction, ostensibly entitled "Intercept." Plaintiffs improperly address multiple elements under the Wiretap Act that are distinct elements that should be explained in separate instructions.  Although it is true that Judge Sands elected to set forth a three-element instruction, he expressly stated that structure was "chosen here only because it facilitates instruction on the different types of communications."  Sands, Comment 3, Instruction 92-2. Notably, Judge Sands also recognized that other circuits such as the First Circuit have adopted a five-part element test.  *See id.*  The cases Google cites adopt the very elements Google proposes in its instruction.  *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *10 (N.D. Cal. Dec. 22, 2022) (citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003)) (To prove that a defendant violated Section 2511(1)(a) of the Act, plaintiff must show: the "defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device."). Moreover, by lumping discussion of "device" and "contents' into the definition of  "intercept," Plaintiffs' instruction creates the risk that the jury will be confused as to the distinct requirements and will not properly consider whether each Plaintiff has satisfied his or her burden for *each* element.

In contrast, Google's instructions, which set forth the legal standards for each element that warrants additional explanation, will provide clearer guidance for the jury. This clarity is particularly important because these important prerequisites to proving a wiretap violation will be highly contested factual issues at trial.

(4)     Plaintiffs improperly criticize Google for using the term "communication" in the singular rather than "communications," in the plural "because Plaintiffs allege and will prove that Google intercepted numerous private browsing communications." This objection is baseless. In their damages instruction on the Wiretap Act, Plaintiffs tout Judge Koh's order in which she expressly states that "the Ninth Circuit relied on the Wiretap Act's "multiple references to 'communication' in the singular," (emphasis added). Similarly, Judge Sands's model instruction, which they purport to embrace, uses the singular term. And nothing in Google's instruction precludes Plaintiffs from seeking to establish that Google intercepted more than one communication. In fact, the language in the first element of Google's instruction makes clear that what is at issue is "each Plaintiff's communication with non-Google websites." (emphasis added). By using the plural of websites, it is clear that Plaintiffs can seek to prove that Google intercepted their communication with more than one website.

(5)     Finally, Plaintiffs erroneously state that Google does not dispute that its acts were intentional. In its Answer, Google denied Plaintiffs' allegation that "Google's actions in intercepting and tracking user communications while they were browsing the internet using a browser while in "private browsing mode" was intentional . . .". Dkt. 531 (Google Answer to Plf's Third Amend. Compl.) ¶ 206; Dkt. 886 (Fourth Amended Complaint) ¶ 206. None of the sources Plaintiffs point to as support for their erroneous claim that Google has conceded it acted intentionally

support their claim. If anything, those documents show that Google does not dispute the fact that, depending on user and website settings, it received the At Issue Data. That is simply not the same thing as conceding the hotly contested element that Google "intentionally" intercepted Plaintiffs' communications. *See* 18 U.S.C. § 2511(1)(a). Plaintiffs cannot escape their burden of proving intentionality under the Wiretap Act.

In short, Plaintiffs' instruction is insufficient and confusing and should not be given.

Authorities:

- Adapted from Sand, J. Instructions re: (Instr. 92-1), (Instr. 92-2).
- 18 U.S.C. § 2511(1)(a), 2520(a).
- *Backhaut v. Apple Inc.*, 723 Fed. App'x 405, 407 (9th Cir. 2018) ("The Wiretap Act imposes liability on any person who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'") (quoting 18 U.S.C. § 2511(a)). *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 814 (N.D. Cal. 2020) ("[Section] 2511(1)(a), [ ] makes it unlawful for a person to 'intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . [t]he Wiretap Act also imposes liability on any person who intentionally discloses to any other person the contents of any wire, oral, or electronic communication . . .'") (citations and internal quotation marks omitted).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

1

## (DISPUTED) JURY INSTRUCTION NO. 4-2

2

<u>Intercept</u>

3

**Plaintiffs' Proposal:**

4

To intercept a communication means to acquire access to the contents of that communication

5

through the use of any electronic, mechanical, or other device. This includes use of a Plaintiff's

6

device, the Plaintiff's web browser, or Google code embedded within non-Google websites.

7

There is no dispute that Google intercepts private browsing communications. You should

8

decide whether Google intercepts "the contents" of those communications.

9

"Contents" has the same meaning as noted above for Plaintiffs' California Invasion of

10

Privacy ("CIPA") claim. *See* Instruction 2-2.

11

**Google's Proposal:**

12

For the first element, to "intercept" means to acquire the contents of the communication in

13

transit before it reaches the intended recipient.

14

15

**Plaintiffs' Statement:**

16

(1)      The first sentence of Plaintiffs' proposal tracks Judge Sand's model instruction

17

verbatim. *See* No. 92-3. The second sentence provides what should be an undisputed clarification

18

relevant to this case. By contrast, Google's proposal adds language that is not in the Judge Sands

19

model—"in transit before it reaches the intended recipient." That language is absent from the model

20

for good reason. It is too rigid. As Judge Easterbrook explained, the "understanding of 'interception'

21

as 'catching a thing in flight' is sensible enough for football, but for email there is no single 'thing'

22

that flies straight from sender to recipient." *United States v. Szymuszkiewicz*, 622 F.3d 701, 705 (7th

23

Cir. 2010); *see id.* at 706 ("if both Szymuszkiewicz and Infusino were sitting at their computers at

24

the same time, they would have received each message with no more than an eyeblink in between.

25

That's contemporaneous by any standard."). "[I]nformation acquired 'within a second of each

26

message's arrival and assembly' satisfies the contemporaneous interception requirement." *In re*

27

*Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226 (C.D. Cal. 2017) (summarizing the

28

holding in *Szymuszkiewicz*).

(2)       Plaintiffs' proposal focuses on the only part of this element that is disputed—whether Google intercepts the "contents" of private browsing communications. The jury should not be led astray into assuming there is also a dispute about whether Google is intercepting the data.

(3)       Plaintiffs also propose addressing the meaning of "contents" here because the definition of "intercept" refers to "contents." But regardless of whether "contents" is listed with "intercept" (as Plaintiffs propose) or as its own element (which Google proposes), the jury should be referred to the prior definition of "contents" provided in the CIPA 631 instruction above. "Content" has the same meaning for both the CIPA 631 and ECPA claims. *See* Dkt. 969 at 27 (for "contents", "the analysis for a violation of CIPA and the federal Wiretap Act are the same").

[Authority: 18 U.S.C. § 2510(4); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *14 (N.D. Cal. Dec. 22, 2022)]

**Google's Statement:**

(1)       Google's instruction is consistent with Ninth Circuit law that "to be 'intercepted' in violation of the Wiretap Act, [a communication] must be acquired during transmission." *Backhaut v. Apple Inc.*, 723 Fed. App'x 405, 407 (9th Cir. 2018) ("*Konop v. Hawaiian Airlines, Inc.*, is instructive here . . . [we concluded there that] "Congress had intended only for electronic communications that were in transmission to be covered by the Wiretap Act") (citations and internal quotation marks omitted); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878–79 (9th Cir. 2002) (no interception when an employer did not "acquire [the electronic communication] during transmission . . . [t]his conclusion is consistent with the ordinary meaning of intercept, which is to stop, seize, or interrupt in progress or course before arrival") (internal quotation marks omitted). Plaintiffs cannot plausibly object to Google's recitation of the well-established definition set forth in the statute and the case law that any "interception" must occur during transmission before the contents of the transmission reaches the intended recipient. Failure to instruct the jury on this key element would introduce error into the instruction and undermine the jury verdict.

(2)      As indicated above, Plaintiffs improperly seek to merge the separate concepts of "device" and "contents" into the definition of "intercept." This gives inadequate focus to each distinct element and creates the tangible risk that the jury will be confused and not determine whether each Plaintiff has satisfied each prerequisite for establishing a Wiretap Act violation.

Authorities:

- Adapted from Sand, J. Instructions re: (Instr. 92-3).
- 18 U.S.C. § 2510(4).
- *Backhaut v. Apple Inc.*, 723 F. App'x 405, 40 (9th Cir. 2018) ("[T]o be 'intercepted' in violation of the Wiretap Act, [a communication] must be acquired during transmission.") (citation omitted).
- *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) ("The Wiretap Act defines intercept as the aural or other acquisition of the contents of any wire ... [or electronic] communication through the use of any electronic, mechanical, or other device. Such acquisition occurs when the contents of a wire communication are captured or redirected in any way.") (internal citations and quotation marks omitted)).
- *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878–79 (9th Cir. 2002) (no interception when an employer did not "acquire [the electronic communication] during transmission . . . [t]his conclusion is consistent with the ordinary meaning of intercept, which is to stop, seize, or interrupt in progress or course before arrival") (internal quotation marks omitted).
- *Hammerling v. Google*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (holding, in the context of CIPA § 631, that "allegations that Google collects 'real-time data' do not plausibly allege that Google collects data while 'in transit'").
- *Pena v. GameStop, Inc.*, 2023 WL 3170047, at *5 (S.D. Cal. Apr. 27, 2023) (The "Ninth Circuit has held that for a communication to be considered 'intercepted' under the [Wiretap Act], it 'must be acquired during transmission'") (citations omitted).

  *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021) (dismissing Wiretap Act and CIPA § 631 claims because defendant's purportedly wrongful access to plaintiffs' text messages occurred after text messages were received, and thus "in transit" requirement was not met).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 4-3**

Device

**Plaintiffs' Proposal**: This instruction should be included within the "intercept" instruction above because the definition of "intercept" includes the concept of a "device." Plaintiffs include this instruction here only so the Court can easily review the parties' competing instructions on the ordinary course of business exception. Here is Plaintiffs' proposal for that instruction:

The statute contains an exception for certain devices being used by a provider of wire or electronic communications. Google contends this exception applies. Plaintiffs deny that assertion.

This exception is narrow. It applies only if Google proves that Plaintiffs would not be able to communicate with non-Google websites but for Google's interceptions. In other words, Google's interceptions must facilitate or be incidental to users' communications with non-Google websites. It is insufficient for Google to show that its interceptions are necessary for Google to provide services to websites.

In addition, this exception does not apply if you find that Google violated its agreement with users by collecting users' Private Browsing Data.

If you find that this exception applies, then you must find for Google on this claim.

**Google's Proposal:**

For the second element, the Wiretap Act defines the word "device" and exempts from that definition any apparatus that is being used by a provider of wire or electronic communication service in the "ordinary course of its business." This "ordinary course of business" exception applies when a provider engages in the alleged interception using a device as part of its customary and routine business practices.

Each Plaintiff claims that the device at issue is code that developers obtain from Google and embed in their websites to receive Google's services, such as Google Analytics, Google Maps, Google Ad Manager, and Google Fonts. This code causes the user's browser to send some or all of the At Issue Data to Google's servers to retrieve the requested Google services.

<p style="color:red">If you find that Google's code is used by Google in the ordinary course of business, then that code is not an intercepting "device" as defined by the federal Wiretap Act.</p>

**Plaintiffs' Statement:**

(1)     Plaintiffs' proposal relies on the prior orders in this case, where this Court and Judge Koh rejected Google's legal arguments about the scope of this exception. Google proposes to instruct the jury that the exception applies if they find that Google intercepted the data to provide "the requested Google services" to websites. But as this Court explained, "[t]hat the second GET request is essential for Google's services, like Analytics, to work and is therefore core to Google's advertising business is tangential, at best, to whether it is necessary to 'facilitate a transmission of a communication' between a user and a third-party website." Dkt. 969 at 25.

(2)     This Court's ruling is consistent with how other courts have "narrow[ly]" construed the exception. *In re Google Inc.*, 2013 WL 5423918, at *9. "The phrase 'in the ordinary course of business' cannot be expanded to mean anything that interests a company." *Id.* "Congress did not intend to allow electronic communication service providers unlimited leeway to engage in any interception that would benefit their business models, as Google contends." *Id.*; *see also S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *9 (N.D. Cal. May 15, 2019) (holding that the exception must be construed "narrowly," and rejecting the defendant's reliance on the exception where the defendant "failed to explain why it would be difficult or impossible to provide its service without the objected-to-interception").

(3)     Google's proposal also omits a key point: this exception does not apply if Google is found to have violated its agreement with users. *See* Dkt. 113 (Order Denying MTD FAC) at 29 ("[T]he ordinary course of business exception does not apply because Plaintiffs have alleged that Google violated its own internal policies. As this Court explained in *In re Google*, 'Plaintiffs' allegations that Google violated Google's own agreements and internal policies with regard to privacy also preclude application of the ordinary course of business exception.'" (citing *In re Google*, 2013 WL 5423918, at *8))). If Plaintiffs prove that "Google violated its own internal policies with regard to privacy" (i.e., the form contract) then Google cannot rely on this exception. *Id.*

**Google's Statement**:

(1)    Google correctly instructs the jury on the definition of a "device," including the disputed "ordinary-course-of-business" exception. Google plans to proffer evidence at trial demonstrating that it uses this code in the ordinary course of its business, which exempts it from the definition of "device." To evaluate liability, the jury must understand the law correctly and Google's instruction ensures that it does. The instruction also sets forth Plaintiffs' position that the "device" at issue is Google's code that website developers install on their own websites to obtain Google's services, which causes the user's browser to send the data to Google's servers. Fourth Amend. Compl. at ¶ 210(a), p. 59. Plaintiffs do not dispute this characterization and claim only that "Plaintiffs do not believe the jury needs to be instructed on the Google code." That is hardly a substantive argument. Nor is their proposed language "a simpler instruction." Plaintiffs propose instructing the jury that "The device at issue is the Google code embedded in websites that use Google services (like Google Analytics and Google Ad Manager), which instructs the user's browser to send Private Browsing Data to Google." In contrast to Google's proposed "At Issue Data" instruction, which provides a detailed explanation of the data at stake in the case, *see supra* Instruction No. 0-34, Plaintiffs offer insufficient detail as to what constitutes "Private Browsing Data"—defining it as all "data generated when Plaintiffs browse in private browsing mode"—leaving jurors at risk of confusion.

(2)    Plaintiffs' proposed instruction seeks to impose a "but for" legal standard that has no support in the case law. Specifically, Plaintiffs claim that "the exception only applies if Google proves that Plaintiffs would not be able to communicate with websites *but for* Google's interception of their communications." (emphasis added).  Plaintiffs have no authority for that limitation of the ordinary course of business exception. To the contrary, the case law is clear that for this exception to apply, there need be only  "some nexus between the need to engage in the alleged interception

and the [defendant's] ultimate business," *Matera v. Google Inc.*, 2016 WL 8200619, at *14 (N.D. Cal. Aug. 12, 2016). Further highlighting Plaintiffs' error, their instruction is internally inconsistent, promulgating both an "incidental" and "but for" standard.

(3)     Finally, Plaintiffs have added yet another pre-condition on application of the "ordinary-course-of-business" exception: that "this exception does not apply if you find that Google violated its own policies by collecting users' Private Browsing Data." Once again, Plaintiffs have constructed instructions that they would *like to be given* but that have no basis in the language of the statute. Unlike Judge Koh's decision in *In re Google*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013), which is not binding on this Court in any event, Plaintiffs fail to identify which policies they claim Google violated. Plaintiffs' throw-away line that "Google violated its own policies" provides no guidance on what policies are even being referenced or how the jury should consider. This will necessarily create confusion in the jury room. The Court should reject Plaintiffs' instruction.

Authorities:

- 18 U.S.C. § 2510(5) ("[E]lectronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than– (a) any telephone or telegraph instrument, equipment or facility, or any component thereof…being used by a provider of wire or electronic communication service in the ordinary course of its business….").
- *Backhaut v. Apple Inc.*, 148 F. Supp. 3d 844, 852 (N.D. Cal. 2015) ("The device identified by Plaintiffs was used within the ordinary course of business by a provider of wire or electronic communication services and thus cannot form the basis of a Wiretap Act claim."), *aff'd*, 723 F. App'x 405 (9th Cir. 2018).
- *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[I]n the Wiretap Act's definition of 'device,' there is an explicit exclusion for 'any telephone or telegraph instrument, equipment or facility, or any component thereof ... being used by a provider of wire or electronic communication service in the ordinary course of its business.' Without use of a 'device' as defined by the Act, there is no illegal interception.") (quoting 18 U.S.C. § 2510(5)(a)(ii)).
- *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *10–11 (N.D. Cal. Dec. 3, 2013) (holding that ordinary-course-of-business exception provides "broad immunity" protecting all of a service provider's "customary and routine business practices" and dismissing Wiretap claim where plaintiffs failed to allege any interception that falls outside the scope of that immunity).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

# (DISPUTED) JURY INSTRUCTION NO. 4-4

## Contents

**Plaintiffs' Proposal:** Addressed above, with intercept. "Contents" should not be broken out here as a separate instruction.

**Google's Proposal:**

"Contents" has the same meaning as set forth in Sections 631 and 632 of Google's California Invasion of Privacy Claim.

**Plaintiffs' Statement:**

(1)     As noted above, the proper place to instruct the jury on "contents" is alongside "intercept" because the definition of "intercept" refers to the "contents" requirement. There is no reason to separately list "contents" as its own element.

(2)     But if the Court is inclined to address "contents" here, Plaintiffs agree with Google that the instruction should referred back up to the instruction in CIPA section 631 (which is itself disputed).

**Google's Statement:**

The parties agree that the definition of "contents" is the same under both CIPA and the Wiretap Act. *See Cline v. Reetz-Laiolo*, 329 F. Supp.3d 1000, 1051 (N.D. Cal. 2018).  However, for the reasons stated in Instruction No. 2-2 regarding CIPA, the Court should reject Plaintiffs' flawed instruction and give Google's instruction as to what constitutes "contents."

Authorities:
- 18 U.S.C. § 2510(4), 2510(8)
- *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("under ECPA, the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" and that neither "ID[s that] identif[y] a [] user," nor "HTTP referrer information" that includes the "webpage address [that] identifies the location of a webpage a user is viewing," qualify as "contents").

- *United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (data that "contains no 'information concerning the substance, purport, or meaning of [the] communication'" not "contents").
- *Russo v. Microsoft Corp.*, 2021 WL 2688850, at *4 (N.D. Cal. June 30, 2021) (Gonzalez Rogers, J.) ("Documents, contacts, and calendar information" are not "contents" under the Federal Wiretap Act).
- *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) (Gonzalez Rogers, J.) (email messages constitute contents whereas "name, address, email address or phone number" are not "contents").
- *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) ("data on when and how often an Android Smartphone user opens and runs [] apps and the amount of time spent on the apps" not contents under *Zynga*).
- *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("[T]ext messages qualify as contents under the Wiretap Act. However, user names, passwords, and geographic location information are not contents.").
- *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084 (N.D. Cal. 2018) ("[D]ata about a telephone call, including the number from which it was made, the time it was made, the number called, and the length of the call does not fall within the Wiretap Act because it is not the content of the communication, it is data about the communication.") (citations omitted).
- *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d, 1051, 1082 (N.D. Cal. 2015) (The Wiretap Act "only applies to the interception of the 'contents' of a communication").
- *Yoon v. Lululemon*, 549 F. Supp. 3d 1073, 182–83 (C.D. Cal. 2021) ("[C]ontents" does not include "keystrokes, mouse clicks, pages viewed, . . . the date and time of the visit, her browser type, and the operating system on her device").

Authorities:
- 18 U.S.C. § 2510(4), 2510(8)
- *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("under ECPA, the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" and that neither "ID[s that] identif[y] a [] user," nor "HTTP referrer information" that includes the "webpage address [that] identifies the location of a webpage a user is viewing," qualify as "contents").
- *United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (data that "contains no 'information concerning the substance, purport, or meaning of [the] communication'" not "contents").
- *Russo v. Microsoft Corp.*, 2021 WL 2688850, at *4 (N.D. Cal. June 30, 2021) (Gonzalez Rogers, J.) ("Documents, contacts, and calendar information" are not "contents" under the Federal Wiretap Act).
- *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) (Gonzalez Rogers, J.) (email messages constitute contents whereas "name, address, email address or phone number" are not "contents").
- *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) ("data on when and how often an Android Smartphone user opens and runs [] apps and the amount of time spent on the apps" not contents under *Zynga*).

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

- *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("[T]ext messages qualify as contents under the Wiretap Act. However, user names, passwords, and geographic location information are not contents.").
- *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084 (N.D. Cal. 2018) ("[D]ata about a telephone call, including the number from which it was made, the time it was made, the number called, and the length of the call does not fall within the Wiretap Act because it is not the content of the communication, it is data about the communication.") (citations omitted).
- *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d, 1051, 1082 (N.D. Cal. 2015) (The Wiretap Act "only applies to the interception of the 'contents' of a communication").
- *Yoon v. Lululemon*, 549 F. Supp. 3d 1073, 182–83 (C.D. Cal. 2021) ("[C]ontents" does not include "keystrokes, mouse clicks, pages viewed, . . . the date and time of the visit, her browser type, and the operating system on her device").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

## (DISPUTED) JURY INSTRUCTION NO. 4-5

### [Whether Google Acted Intentionally]

For the fifth element, to act intentionally means to act deliberately and purposefully[.] That is, Google's acts must have been the product of its conscious objective to intercept the communication in question and not as a result of accident or mistake.

**Plaintiffs' Statement:**

(1)     As noted above, the jury should be informed there is no dispute on this element.

(2)     If the jury is led to believe there is a dispute, then an additional instruction is warranted. The jury should be told that Plaintiffs need not prove that Google intentionally violated the law. Otherwise, the jury may be led astray into assuming that more is required for this element.

(3)     Plaintiffs' proposal is adapted from Judge Sand's model. *See* J. Sand Instr. 92-7 ("To act intentionally means to act deliberately and purposefully. That is, the defendant's acts must have been the product of defendant's conscious objective to intercept the communication in question rather than the product of a mistake or accident."). Similarly, the Ninth Circuit has defined "intentionally" under the ECPA to mean "purposefully and deliberately and not as a result of accident or mistake." *United States v. Christensen*, 828 F.3d 763, 790-91 (9th Cir. 2015).

(4)     Plaintiffs slightly modify the Judge Sand model to cut right to the chase and explain the key distinction the definition makes: between (1) purposeful conduct, and (2) accidental conduct. If the jury is instructed to decide this element, they will be deciding whether Google obtained the data on purpose or by accident. Plaintiffs' proposal focuses them on that ask.


**Google's Statement:**

(1)     The parties agree on the definition of "intentionally" and Google does not believe this element needs to be expanded upon in a separate instruction.  However, for the reasons set forth in Disputed Instruction No 3.1, Google has not conceded intentionality and cannot agree that the jury should be told there is no dispute as to this element.  The Court should require the Plaintiffs to satisfy their burden to establish this element.

1

2

3   DATE SUBMITTED: November 1, 2023

4   DATE REVISED: _____

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(DISPUTED) JURY INSTRUCTION NO. 4-6**

<u>Number of Violations</u>

**Plaintiffs' Proposal**:

If you find that Plaintiffs have proven their claim under the ECPA, you will need to decide how many times Google violated the law, as to each Plaintiff.

Each interception qualifies as a separate violation of the law. I will separately provide an instruction on the statute of limitations to the extent it applies.

**Google's Proposal**:

The Wiretap Act provides that "the court may assess as damages…statutory damages of whichever is greater of $100 a day for each day of violation or $10,000." If you find that each Plaintiff has proven his/her claim, you will need to determine the total days of violation. In making that determination, you must consider whether each Plaintiff has put forth specific evidence of a violation. You may not speculate, guess, or conjecture in determining the total days of violation for each Plaintiff.

**Plaintiffs' Statement**:

Google's proposal provides zero guidance for how to decide how many times that Google violated the law. By contrast, Plaintiffs' proposal provides that guidance, relying on Judge's Koh ruling on the motion to dismiss. Dkt. 113 at 24. In rejecting Google's argument that Plaintiffs' claims were time-barred, citing Ninth Circuit law, Judge Koh held that "each interception is a separate violation" for purposes of the Federal and California wiretap statutes:

> **The Ninth Circuit has held that, for Wiretap Act claims, "each interception is a discrete violation" with its own statute of limitations.** *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020). In coming to this conclusion, the Ninth Circuit relied on the Wiretap Act's "multiple references to 'communication' in the singular," which showed that there was "no textual basis for morphing what otherwise would be considered separate violations into a single violation because they flow from a common practice or scheme." Id. ***The Ninth Circuit's reasoning applies to Plaintiffs' other claims, which also refer to "communication" or "act" in the singular***. *See* Cal. Penal Code §§ 631(a) (prohibiting the unauthorized interception of "any message, report or communication"); id. § 632(a) (prohibiting the interception of a "confidential communication") . . . . Furthermore, the

<div align="center">-135-</div>

California Supreme Court "ha[s] long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations." *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 880 (Cal. 2013).

Google's proposal is also improper because it lists the applicable rate for statutory damages. Those damages are set by statute, and the jury has no say in what they are or what they should be. Google's proposal risks leading the jury astray into making a finding based on the amount of money that Google might have to pay, which is not the jury's role for this claim.

[Authorities: Dkt. 113 (Order Denying MTD FAC); *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020)]

**Google's Statement:**

(1)     Google's instruction hews to the language of the statute itself and properly instructs the jury  that any Wiretap violations must be calculated on a per-day basis. In contrast, Plaintiffs' instruction incorrectly instructs the jury to base a damages award on the total "number" of violations. The Ninth Circuit has rejected Plaintiffs' approach.  In *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020), the Ninth Circuit held that it is not the number of times the Wiretap Act was violated that is relevant to a damages inquiry but the number of days the statute was violated.  *Bliss*, 978 F.3d at 1144, 1148 ("The statutory-damages provision clarifies that violations are remedied on a per-day basis, not a per-occurrence basis.  That is, if multiple violations occur in a single day, only one damage assessment is made.").  Plaintiffs' improper instruction would invite the jury to commit reversible error by calculating a damages award based on a patently incorrect standard.

(2)     Moreover, as with all damages calculations, it is important the jury understand that an "award must be based upon evidence and not upon speculation, guesswork or conjecture." Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 5.1 Damages – Proof.  Google's instruction properly advises the jury on this Model Instruction, which is particularly important here, given that both the nature and credibility of the evidence and

the number of alleged (per-day) violations will be contested at trial. In addition, it is fully proper to advise the jury as to the amount of the statutory rate, and Plaintiffs have offered no legal support to the contrary.

[Authorities: 18 U.S. Code § 2520(c)(2)(B); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 5.1 Damages – Proof (no " speculation, guesswork or conjecture" in determining damages)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**FIFTH CLAIM: BREACH OF CONTRACT**

**(DISPUTED) JURY INSTRUCTION NO. 5-1**

<u>Essential Factual Elements</u>

Plaintiffs claim they each entered into a form contract with Google, and that Google breached this contract in two ways: (1) by collecting, saving, and using their Private Browsing Data, and (2) by providing no control over Google's collection of their data. Plaintiffs claim that Google's breach of this contract caused harm to them, for which Google should pay. Google denies that it breached the contract.

Each Plaintiff claims that Google breached a contract in which Google allegedly promised not to receive the At Issue Data while each Plaintiff browsed the internet using Chrome Incognito ("Contract 1"). Plaintiff Trujillo additionally claims that Google also breached a contract in which Google allegedly promised not to receive the At Issue Data while she used the private browsing mode on Safari (Contract 2). Google disputes that either contract contained enforceable promises that Google would not receive the At Issue Data when each Plaintiff was in private browsing mode.

To recover damages from Google for breach of contract, each Plaintiff must prove all of the following elements:

    (1)    Plaintiffs and Google entered into a contract;

    (2)    Google made legally enforceable promises in the contract with respect to receipt of the At Issue Data;

    (3)    Google did something that the contract prohibited Google from doing / Google breached one or more of those legally enforceable promises;

    (4)    Plaintiffs were harmed; and

    (5)    Google's breach of contract was a substantial factor in causing Plaintiffs' harm.

I will now provide more details on each of these elements.

**<u>Plaintiffs' Statement</u>:**

    (1)    Plaintiffs' proposal (in blue) tracks the pattern instruction in CACI 303, with one exception, which Google does not contest. Both parties omit the requirement that Plaintiffs prove their performance under the contract because Google has agreed not to contest that element. *See*

-138-

1   Dkt. 1029 at 28 ("Google does not contend that any Plaintiff failed to comply with any of their

2   obligations under any Google contract."). Plaintiffs' proposal otherwise tracks CACI 303 verbatim.

3         (2)    Plaintiffs object to Google's proposal for the second element, which has no basis in

4   any pattern instructions of which Plaintiffs are aware. This element is entirely unnecessary:

5   Plaintiffs' proposed instruction already allows Google to argue that the contract did not prohibit

6   Google from collecting, saving, and using private browsing data. Moreover, whether a promise is

7   "legally enforceable" is a legal determination not fit for the jury. *See O'Connell v. CAE-Link Corp.*,

8   57 F.3d 1077 (9th Cir. 1995) ("Whether a contract term is sufficiently definite to be enforceable is

9   a question of law for the court." (citing *Ladas v. California State Auto. Ass'n*, 23 Cal. Rptr. 2d 810,

10  814 n. 2 (Cal. App. 1993))); *Brezoczky v. Domtar Corp.*, 2017 WL 6017854, at *1 (N.D. Cal. Dec.

11  5, 2017) ("Under California law, a contract will be enforced if it is sufficiently definite (and this is

12  a question of law . . . .").

13        (3)    Plaintiffs object to Google's proposed third element for the same reasons. Plaintiffs

14  instead use the recommended model instruction from CACI, asking the jury to decide whether

15  Google "did something that the contract prohibited it from doing." Once again, Plaintiffs' proposal

16  leaves Google free to argue that the contract does not contain any commitment not to collect and

17  use private browsing data.

18        (4)    Plaintiffs object to Google's representation throughout these instructions that there

19  are two contracts, one with members of Class 1 and another with members of Class 2. This is

20  nonsense. Google's Terms of Service govern its relationship with all class members, regardless of

21  what browsers they use. That much has been clear since early on in the case. Google initially moved

22  to dismiss all claims against both classes (even before there was a contract claim) by relying on its

23  Terms of Service, explaining that "Google required users to consent to its Terms of Service to create

24  accounts during this period." Dkt. 82 at 4. Google never contended that there is one contract for

25  Class 1 users and another for Class 2 users.

26        (5)    As with any contract, the documents that are incorporated by reference apply to the

27  parties to the contract. Plaintiffs struggle to make sense of Google's suggestion that there are two

28  different contracts, and it stands to reason that the jury will struggle, too. As best Plaintiffs can tell,

Google's proposal is premised on its view that certain documents incorporated by reference into the contract (e.g., the Chrome Privacy Notice) contain promises that apply only to Chrome Incognito (Class 1), as opposed to other private browsers (Class 2). But even if a portion of the form contract applies to one class and not the other, that does not mean there are two separate contracts. In virtually every contract, there are provisions that apply only in certain circumstances, and surely Google would not argue that each provision constitutes a separate contract.

(6)     Google's position also contradicts its prior position on the contract. *See* Dkt. 957 at 14:20-15:6 (Google's counsel relying on Google's definition of "privacy" in the Chrome Privacy Notice during the hearing on summary judgment, where Google sought summary judgment against both classes based on the Chrome Privacy Notice). Yet after failing to secure summary judgment against both classes through the Chrome Privacy Notice, Google now contends that the Chrome Privacy Policy is irrelevant to Class 2.

(7)     For these reasons, this Court has already acknowledged there is a single contract. *See* Dkt. 969 at 4 ("[T]he parties do not dispute that Google's General Terms of Service and its Chrome Privacy Notice are the basis of the *contract between Google and its accountholders*," and both classes are limited to Google accountholders." (emphasis added)). If there were any remaining doubt about the better formulation, it would be resolved by the fact that Google's conception of multiple contracts complicates the instructions tremendously, as will become apparent in the ensuing instructions.

(8)     Plaintiffs also object to Google's repeated use of "At Issue Data." While referring to this data as "private browsing data" will be helpful to the jury, describing it with legalese like "at-issue data" will tend to confuse the jury.

**Google's Statement**:

(1)     Google's proposed language is modeled after CACI 303 and case law on breach of contract. It tailors the elements of a breach of contract claim to the facts of the case.

(2)     At the outset, to avoid jury confusion, the instruction explains that there are two contractual agreements, one governing Chrome users and one governing the sole Plaintiff, Monique Trujillo, who also used private browsing mode on Safari. The instruction then focuses the jury on the crux of Plaintiffs' claim: that Google allegedly breached promises not to receive the At Issue Data. Google's proposal also guides the jury in interpreting the evidence it will hear regarding statements in the alleged contract(s), whether they are enforceable, and what they mean.

(3)     Plaintiffs' proposed introductory language should not be given because it fails to address the underlying complexity of Plaintiffs' breach of contract claims, including the fact that there are two distinct breach of contract claims. Plaintiffs claim that any document that is incorporated by reference into the Terms of Service is incorporated into the contract for all Google Accountholders. But this ignores the mechanism by which the Chrome Privacy Notice is incorporated into the Terms of Service. The Terms of Service do not explicitly mention the Chrome Privacy Notice. Instead, the Terms of Service incorporate "service-specific additional terms" that apply only to the relevant service. Therefore, it is Google's position (and has always been Google's position) that the Chrome Privacy Notice is only incorporated by reference to the extent Google Accountholders are using Chrome, the "service" those specific terms cover.    Plaintiffs' mischaracterize Google's past arguments on this point, and ignore briefs where Google made its position clear. *See, e.g.*, Dkt. 907-3 at 8 ("The only document Plaintiffs cite describing the functionality of non-Chrome PBMs—and thus potentially applicable to Class 2—is Google's Search & browse privately Help Center page."); *id.* at 17 (same). Plaintiffs' argument to the contrary appears to be a self-serving practical (not legal) one: they believe it will be simpler for them to prove a breach of contract if there is only one contract. But by pursuing two different classes, whose private browsing is governed by different documents, *they* introduced the complications they are now trying

to avoid. Plaintiffs should not be permitted to use the jury instructions as a way to make their case easier to prove.

(4)     Google's proposed element two—that Google made "legally enforceable promises" regarding the receipt of the At Issue Data—correctly states Ninth Circuit law that even in a binding user agreement, a statement must use promissory language before it becomes contractually binding. *Block v. eBay, Inc.*, 747 F.3d 1135, 1138–40 (9th Cir. 2014). The Court has found that the hotly disputed issue of whether Google made enforceable promises to Plaintiffs is a triable issue (Dkt. 969 at 21), and Google plans to present evidence on it. Plaintiffs cannot escape their burden to prove that the statements they identify as "promises" in the contract are in fact enforceable promises that bind Google.

(5)     The Court should also accept Google's proposed language for element three. Plaintiffs' competing proposed language—that Google "did something that the contract prohibited Google from doing"—is amorphous and does not address promises related to the At Issue data, which is central to Plaintiffs' claim. The jury will therefore have no guidance regarding the interpretation of evidence on whether or not Google made enforceable promises and what any such promises mean.

(6)     Plaintiffs' proposal to use the term "Private Browsing Data," rather than "At Issue Data" should be rejected. Plaintiffs incorrectly and confusingly define "Private Browsing Data" as all "data generated" when Plaintiffs browse in private browsing mode. By contrast, throughout the litigation, Plaintiffs more specifically defined the data as: (1) the "GET Request," (2) IP Address, (3) browser information, (4) User-ID, (5) geolocation, and (6) cookies. Dkt. 886 (Fourth Amended Complaint) ¶ 63(a)-(f). The jury deserves to have at least the same level of clarity with which the parties have been litigating, and Plaintiffs should not be permitted to confuse the jury by expanding

the At Issue Data at this juncture. Plaintiffs' definition of "Private Browsing Data" is too vague and amorphous to be used here or in any other instruction.

Authorities:
- CACI 303.
- *Block v. eBay, Inc.*, 747 F.3d 1135, 1138–40 (9th Cir. 2014) (Even in a binding user agreement, a statement must use promissory language rather than merely providing a "description of how [the defendant's system] works" before it becomes contractually binding).
- *California Cap. Ins. Co. v. Enstar Holdings US LLC*, 2022 WL 1127879, at *2 (C.D. Cal. Apr. 15, 2022) ("A breach of contract claim requires proof of: (1) existence of the contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 5-2**

<u>The Contract</u>

**Plaintiffs' Proposal:**

Plaintiffs and Google agree there is a contract between the parties. Plaintiffs and Google agree that this contract includes (1) Google's Terms of Service, for the full class period, (2) the Chrome Privacy Notice, and (3) Google's Privacy Policy, until March 2020. The parties dispute whether the Privacy Policy continued to be part of the contract after March 2020, and whether certain other documents are also part of the contract.

**Google's Proposal:**

<u>Chrome Incognito Browsing (Contract 1)</u>

Google and each Plaintiff agree that they entered into a contractual agreement, the Google Terms of Service, applicable to all Google Account holders. The parties agree that for those Google Account holders who browse the internet using the Chrome browser, this contract incorporates by reference the Google Chrome and Chrome OS Additional Terms of Service, the Chrome Privacy Notice (but only up through October 3, 2023), and Google's Privacy Policy (but only through March 30 2020) ("Contract 1"). The parties dispute what other documents, if any, are included in Contract 1.

In Instruction No. 5-3, I will explain how to decide what documents are part of Contract 1.

<u>Non-Google Browser Private Browsing (Contract 2)</u>

Plaintiff Trujillo is the only Plaintiff who claims she used a private browsing mode in a browser other than Chrome. Google and Plaintiff Trujillo agree that they entered into a contractual agreement, the Google Terms of Service, applicable to all Google Account holders, and that this contract governs Google's collection of the At Issue Data through its services, regardless of which brand of browser is used. The parties agree that this contract incorporates by reference  Google's Privacy Policy (but only through March 30, 2020) ("Contract 2").  Google and Plaintiff Trujillo dispute what other documents, if any, are included in Contract 2.

In Instruction No. 5-3, I will explain how to decide what documents are part of Contract 2.

**Plaintiffs' Statement:**

(1)     Plaintiffs' proposal accurately describes the parties' agreements and disagreements with respect to the documents that are included in the contract. *See* Dkt. 969 (MSJ Order) at 4 ("The parties do not dispute that Google's General Terms of Service and its Chrome Privacy Notice are the basis of the contract between Google and its accountholders. Further, they agree that Google's Privacy Policy was incorporated up until March 2020. That said, plaintiffs assert that three other writings are incorporated into this contract"—namely the post-March 2020 Privacy Policy, the Splash Screen, and the Search & Browse Privately page).

(2)     As previously explained, Google's proposal improperly instructs the jury that one contract is somehow two. *See* Disputed Instruction No. 5-1. As is already apparent, Google's instruction also needlessly complicates the instructions and the jury's task.

**Google's Statement:**

(1)     Plaintiffs instruction should not be given because it incorrectly identifies the relevant contracts. As described above in Google response to Disputed Instruction No. 5-1, Plaintiffs ignore that there are two distinct breach of contract claims, and the set of documents that the parties agree constitute each contract differs. Contrary to Plaintiffs' proposed instruction, Google does not agree that the contract includes the Chrome Privacy Notice for Class 2 or for the full class period. As to the former, until October 3, 2023, users who downloaded the Chrome browser, were required to agree to Google's Terms of Service, the Google Chrome and Chrome OS Additional Terms of Service, and the Chrome Privacy Notice. Similarly, the Google Terms of Service pointed users to "service-specific additional terms," which under Chrome and Chrome OS, listed the Chrome Privacy Notice. The Chrome Privacy Notice only governed Chrome usage; it is not part of a contract with users of other browsers. Additionally, since October 4, 2023, the Chrome Privacy Notice is no longer available, and is no longer part of any contract with any users. Therefore, at most, Google

agrees that the Chrome Privacy Notice was part of the contract with Chrome users until October 3, 2023. Google's proposed instruction accurately states the parties' positions as to the two different contracts.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 5-3**

Incorporation by Reference

**Plaintiffs' Proposal:**

Plaintiffs contend that Google's Privacy Policy continued to be part of the contract after March 2020. Google disputes that the Privacy Policy continued to be part of the contract after March 2020.

In addition, Plaintiffs contend that the contract also includes (1) the Incognito New Tab Page (the Incognito Splash Screen) and (2) the Search & Browse Privately Page. Google disputes that the contract includes the Incognito New Tab Page and the Search & Browse Privately Page. You should first decide whether these documents are incorporated into the parties' contract.

For a document to be incorporated, the reference must be clear and unequivocal, the reference must be called to the attention of the other party and they must consent to it, and the terms of the incorporated document must be known or easily available to the contracting parties. However, the contract need not recite that it incorporates another document, so long as it guides the reader to the incorporated document. It is sufficient for incorporation if a contract guides the parties to a document and the parties received that document.

After you have decided which documents are part of the contract, you must next decide whether Google breached the contract, consistent with the instructions below.

**Google's Proposal:**

Incorporation by Reference for Contract 1

If you find that Contract 1 incorporates one or more additional documents by reference, that means you should consider it part of Contract 1.  A document is incorporated by reference into Contract 1 only if the party seeking incorporation proves all of the following elements:

(1) There is a clear and unequivocal reference in Contract 1 to the allegedly incorporated document; a mere mention is not sufficient;

(2) Each Plaintiff must have been guided to the allegedly incorporated document in a manner that could reasonably be construed as eliciting his or her consent to the allegedly incorporated document; and

(3) The terms of the allegedly incorporated document were known or easily available to each Plaintiff.

Each Plaintiff claims that the following three documents are incorporated by reference into Contract 1.

(1) Google's Post-March 2020 Privacy Policy;

(2) The Search & Browse Privately Help page; and

(3) The Incognito Screen.

You must decide whether each Plaintiff has proven that one or more of these documents is incorporated by reference in Contract 1.

You must determine incorporation by reference for each document individually. You may find that a document was incorporated by reference only for a specific time period.

If you find that each Plaintiff has proven that the third document – the Incognito Screen – is incorporated by reference, and thus, part of Contract 1, then you must determine whether three additional documents that the Incognito Screen linked to through its "Learn more" button are incorporated by reference into the Incognito Screen and are thus also part of Contract 1.  These documents are the following:

(1) The How Chrome Incognito Keeps Your Browsing Private Help page;

(2) The Browse in Private Help page;

(3) The How Private Browsing Works in Chrome Help page

You should determine exactly what documents, if any, the parties are contractually bound by beyond those documents Google and each Plaintiff agree are part of Contract 1.

### Incorporation by Reference for Contract 2

If you find that Contract 2 incorporates one or more additional documents by reference, that means you should consider it part of Contract 2.  A document is incorporated by reference only if the party seeking incorporation proves all of the following elements:

(1) There is a clear and unequivocal reference in Contract 2 to the allegedly incorporated document; a mere mention is not sufficient;

(2) Plaintiff Trujillo must have been guided to the allegedly incorporated document in a manner that could reasonably be construed as eliciting her consent to the allegedly incorporated document; and

(3) The terms of the allegedly incorporated document were known or easily available to the parties.

Plaintiff Trujillo claims that the following two documents are incorporated by reference into Contract 2.

(1) Google's Post-March 2020 Privacy Policy; and

(2) The Search & Browse Privately Help page.

**PROPOSED JURY INSTRUCTIONS**

You must decide whether Plaintiff Trujillo has proven that one or more of these documents is incorporated by reference in Contract 2.

You must determine incorporation by reference for each document individually. You may find that a document was incorporated by reference only for a specific time period.

You should determine exactly what documents, if any, the parties are contractually bound by beyond those documents Google and Plaintiff Trujillo agree are part of Contract 2.

**Plaintiffs' Statement:**

(1)     Plaintiffs' proposal tracks the Court's description of the standard for incorporation (as reflected in the summary judgment order) nearly verbatim. *See* Dkt. 969 (MSJ Order) at 16-17; *see also id.* at 19 ("Because the Chrome Privacy Notice and Privacy Policy necessarily guide users to the Splash Screen, a reasonable user could conclude it is part of the parties' contract."). Plaintiffs' proposal also incorporates the similar standard from the motion to dismiss order, in which Judge Koh explained that "if a contract 'directed' the parties to a document and the parties 'received the document,' the document is part of the contract." Dkt. 363 at 14 (quoting *Marchand v. Northrop Grumman*, WL 2633132, at *5 (N.D. Cal. Jun 19, 2017)). That order summed up incorporation with that helpful instruction, and Plaintiffs appropriately repeat it here. Plaintiffs' proposal is also consistent with the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) ("To properly incorporate another document, the document "need not recite that it incorporates another document, so long as it guide[s] the reader to the incorporated document"). Google's proposal overcomplicates and expands upon the clear language this Court has already used.

(2)     Google's proposed instruction is flawed in at least two more significant respects. *First*, Google again represents that there are two contracts, which is wrong for reasons previously explained. It also requires needlessly duplicating and complicating the Court's instructions. *See* Disputed Instruction No. 5-1.

(3)     *Second*, Google flouts the Court's rule on extrinsic evidence by seeking to rely on documents like the "Learn More" pages. *See* Dkt. 969 (MSJ Order) at 13 n.15; *see also id.* at 20 n.25 (holding that Google may not rely on statements in the Splash Screen's "Learn More" page because "the statement is extrinsic evidence, on which Google cannot rely given its position that the

contract is unambiguous"). Moreover, Google is improperly taking inconsistent positions, which is inappropriate for trial. On the one hand, Google disputes that the Splash Screen is part of the contract. On the other hand, Google contends the "Learn More" page might be part of the contract because it is linked to the Splash Screen. Google cannot have it both ways.

**Google's Statement:**

(1)     Google's instruction correctly provides the elements of incorporation by reference and is modeled after case law regarding incorporation by reference under applicable California law. *See Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53–54 (1997). These elements are also reflected in the Court's incorporation by reference analysis in the Order on Google's Motion for Summary Judgement. Dkt. 969 at 16 (quoting *Shaw*, 58 Cal. App. 4th at 54). This instruction lists the documents the parties agree are included in each contract and the documents that are subject to dispute, a necessary step to clarifying Plaintiffs' complex breach of contract claims. The instruction guides the jury in making a decision regarding whether the disputed documents are part of each contract.

(3)     Plaintiffs' instruction should not be given because it is misleading and incomplete. First, it ignores that there are two distinct breach of contract claims, and therefore references to "the parties' contract" are misleading and confusing.

(4)     Second, it does not allow the jury to determine whether different documents are incorporated into one of the relevant contracts, but not the other (like the Incognito Splash Screen).

(5)     Third, it wrongly omits documents that Google claims are incorporated by reference. It is Google's position that if the Incognito New Tab Page (the Incognito Splash Screen) is found to be part of either contract, then the jury must consider whether the "Learn More" help pages that were linked to that screen are also part of the contract. Plaintiffs omit this from their proposal. Plaintiffs claim that Google is trying to "have it both ways," when the opposite is true. Google's

position is that either the Incognito Screen and the documents linked to that screen are all part of the contract, or none are. Plaintiffs' position, on the other hand, is that only the documents they like are part of the contract, while other documents that they apparently do not like, are not. Google is not "flouting" anything; if these documents are part of the contract via incorporation by reference, they are not extrinsic evidence.

(6)     Plaintiffs' instruction is also legally incorrect because it (i) fails to instruct the jury that the burden of proving incorporation is on the party seeking incorporation and (ii) provides misleading and prejudicial additions in describing the three elements that Plaintiffs must prove to establish a particular document was incorporated by reference. For example, Plaintiffs' instruction states that the document need not recite that it incorporates another document, so long as it guides the reader to the incorporated document, but does not explain that a mere mention is not sufficient. Further, Plaintiffs go beyond stating the elements of incorporation and include an interpretation of those elements that incorrectly implies that Plaintiffs do not need to prove all three elements of incorporation by reference ("It is sufficient for incorporation if a contract guides the parties to a document and the parties received that document.").

Authorities:
- *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (rejecting incorporation of document where contract did "not reference" or "guide the reader to" the allegedly incorporated document).
- *Rodriguez v. Google LLC*, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021) (holding that document was not incorporated by reference in contract where the contract merely contained a hyperlink to the document but no reference to the document).
- *Dahan v. Sussman Shank, LLP*, 2017 WL 2713737, at *7 n.3 (C.D. Cal. Feb. 7, 2017) ("The three elements of incorporation by reference are: (1) a 'clear and unequivocal' reference, in a signed document, to the incorporated document: (2) the reference was called to the attention of the party and he consented to it: and (3) the incorporated terms were known or easily available to the party.").
- *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608–09 (2008) (noting that "the mention of [a document] is not the same as specifically directing the parties' attention to the terms of the external document in a manner that could be construed as eliciting the parties' consent to its separate terms" for purposes of determining incorporation) (citation and internal quotation marks omitted).

*Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53–54 (1997) ("For the terms of another document to be incorporated into the [original contract] . . . the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.") (citation and internal quotation marks omitted).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

1

### (DISPUTED) JURY INSTRUCTION NO. 5-4

2

Whether There Was An Enforceable Promise With Respect to Receipt of the At Issue Data

3

**Google's Proposal**:

4

5

6

For the second element, to be enforceable as a promise, a statement must use promissory language and make a commitment. A statement that merely provides information about a product or service, but does not make commitments, is not an enforceable promise.

7

8

9

10

In considering whether there was an enforceable promise with respect to receipt of the At Issue Data, you need only evaluate the statements each Plaintiff claims are promises that appear in the documents that you decided in Instruction No. 5-3 were part of the contract(s) each Plaintiff asserts.

11

12

13

14

Each Plaintiff claims Google promised in Contract 1 (to all Plaintiffs) and in Contract 2 (to Plaintiff Trujillo) that private browsing modes would prevent Google from collecting, using and storing the At Issue Data. Google claims that neither contract makes such a promise. Each Plaintiff must prove that his or her interpretation is correct.

15

16

**Plaintiffs' Proposal**: None

17

**Plaintiffs' Statement**:

18

19

20

21

22

23

24

25

(1)      As previously explained, the jury should not be instructed on this purported element. *See* Disputed Instruction No. 5-1. This element has no basis in any pattern instruction of which Plaintiffs are aware. Whether a promise is "legally enforceable" is, as those words suggest, a *legal* determination not fit for the jury. *See O'Connell v. CAE-Link Corp.*, 57 F.3d 1077 (9th Cir. 1995) ("Whether a contract term is sufficiently definite to be enforceable is a question of law for the court." (citing *Ladas v. California State Auto. Ass'n*, 23 Cal.Rptr.2d 810, 814 n. 2 (Cal. App. 1993))); *Brezoczky v. Domtar Corp.*, 2017 WL 6017854, at *1 (N.D. Cal. Dec. 5, 2017) ("Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law . . . .").

26

27

28

(2)      In any event, Plaintiffs' proposed instructions for the contract claim already allow Google to argue that the contract did not prohibit Google from collecting, saving, and using private browsing data. The jury will be deciding how to interpret the form contract—not whether the

-153-

contract is enforceable. Indeed, "Google does not dispute that the Terms of Service, for example, create an enforceable contract." Dkt. 969 (MSJ Order) at 21.

(3)     For reasons explained above, Plaintiffs further object to Google's mischaracterization of a single contract as two contracts. *See* Disputed Instruction No. 5-1.

**Google's Statement:**

(1)     Google's instruction is based on case law governing breach of contract under applicable California law and clearly explains what constitutes a legally enforceable promise. *See Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020). Google's position is that Plaintiffs rely on statements—such as those in the Privacy Policy that "[y]ou can use our services in a variety of ways to manage your privacy" and "[a]nd across our services, you can adjust your privacy settings to control what we collect and how your information is used"—that are not enforceable promises, but only a "description of how [Google's services] works." *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014). Therefore, the Court must instruct the jury on what constitutes an enforceable promise so that it can decide Plaintiffs' claim. The Court has found that the hotly disputed issue of whether Google made enforceable promises to Plaintiffs is a triable issue (Dkt. 969 at 21), and Google plans to present evidence on it. This instruction is necessary to help the jury apply that evidence and any competing evidence Plaintiffs will offer.

Authorities:
- *Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (a statement that merely "provides information[,] not commitments" is not binding).
- *Block v. eBay, Inc.*, 747 F.3d 1135, 1138–40 (9th Cir. 2014) (even in a binding user agreement, a statement must use promissory language rather than merely providing a "description of how [the defendant's system] works" before it becomes contractually binding).
- *Hammerling v. Google,* 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) (holding statements that were "aspirational and prefatory do not plausibly amount to a promise").
- *Rodriguez v. Google LLC*, 2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) (holding that merely "explanatory language" does not constitute a promise).

*Westlands Water Dist.*, 38 Cal.Rptr.3d 78, 89 (2006) ("If a contract is to be a basis of liability for the [defendant]'s violation of [a rule] ... it must be a contract in which the [defendant] promises to abide by [that rule].")

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

**(DISPUTED) JURY INSTRUCTION NO. 5-5**

<u>Disputed Words and Principles of Contract Interpretation</u>

Plaintiffs and Google dispute the meaning of [the contract as it relates to private browsing and consent / what Contracts 1 and 2 mean]. Plaintiffs must prove their interpretation is correct.

The following instructions may help you interpret the words of [the contract / each contract]. In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

The following instructions may also help you interpret the words of the contract:

(1) You should assume that the words in their contract have their usual and ordinary meaning unless you decide that the words have a special meaning.

(2) In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

(3) You must interpret the contract in the sense in which Google believed users understood it at the time they entered the contract.

(4) The contract language should be assessed objectively, from the perspective of a reasonable Google user.

In determining the meaning of the words of the contract, you must first consider all of the other instructions that I have given you.

If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the contract against Google, the drafter of the contract.

**Plaintiffs' Statement:**

(1)      Plaintiffs' proposed instruction is derived from the relevant pattern instructions, CACI 314, CACI 315, CACI 317, and CACI 320. The principal difference between Plaintiffs' and Google's proposals is that Plaintiffs' proposal accounts for well-settled law on how to interpret form contracts, like the Google contract at issue. "The contract language must be assessed objectively,

from the perspective of a reasonable [Google] user." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019); *see also Williams v. Apple*, Inc., 2021 WL 2186223, at *5 (N.D. Cal. May 28, 2021) ("'[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it." (quoting Restatement (Second) of Contracts § 211(2))). These authorities contradict Google's position above, which asks the jury to focus on what "Google believed."

(2)     Google's proposed instruction is likewise misleading because it implies that the contract can mean different things for each Plaintiff. That also contradicts blackletter law. Form contracts are "interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." Restatement (Second) of Contracts § 211(2) (emphasis added); *see also Williams v. Apple, Inc.*, 338 F.R.D. 629, 638 (N.D. Cal. May 28, 2021) (It is an "axiom of contract law that when there is a standardized agreement like the form contract at issue in this case, the agreement is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge of understanding of the standard terms of the writing." (collecting authority)). "[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it. The result may be to give the advantage of a restrictive reading to some sophisticated customers who contracted with knowledge of an ambiguity or dispute." Restatement (Second) of Contracts § 211 cmt. e (emphasis added).

(3)     These principles are not limited to a pleadings-stage analysis, as Google wrongly contends below. As this Court explained in its summary judgment order, "there is at least a triable issue as to whether the Privacy Policy ***could be reasonably interpreted*** to promise that Google would not collect users' data while they were in private browsing mode." Dkt. 969 at 23 (emphasis added); *see also id.* at 19 (applying "reasonable user' standard to the parties' dispute over which documents are incorporated).

(4)     Plaintiffs properly instruct the jury that there is a dispute about the meaning of the contract as it relates to private browsing and consent. Google's focus on whether "private browsing"

is mentioned in every contractual document is misplaced because, as these instructions make clear, "you should consider the whole contract, not just isolated parts."

(5)      Finally, Plaintiffs' proposal offers at least one additional advantage: It makes clear which party drafted the contract. Google's objection to identify the drafter of the contract—even though there is no dispute that Google drafted every word—is baseless. Omitting that piece of information could only confuse the jury. The jury will be told they should construe the contract against the drafter, and there is no reason to hide the ball about who drafted the contract.

[Authority: Judicial Council of California Civil Jury Instructions Number 314,315, 317, 320; Dkt. 363 (Order Denying MTD SAC); *Williams v. Apple, Inc.*, 2021 WL 2186223, at *5 (N.D. Cal. May 28, 2021); Restatement (Second) of Contracts § 211(2)]

**<u>Google's Statement:</u>**

The Court should resolve the differences between the parties in Google's favor because Plaintiffs' competing language is inaccurate and confusing.

(1)      Plaintiffs suggest there is a disputed meaning "as it relates to private browsing and consent." That is inaccurate. Some of the contractual documents do not even mention "private browsing" and it is not clear what disputes as to the meaning of the contract exist "as it relates to . . . consent."

(2)      Plaintiffs seek to include an instruction that "[t]he contract language should be assessed objectively, from the perspective of a reasonable Google user." It appears that Plaintiffs rely on Judge Koh's motion to dismiss order for this language—but that opinion makes clear that this standard only applies "[a]t the motion to dismiss stage." Dkt. 363 at 12-13. At trial, the *jury* determines what the words mean—not an illusive "objective, reasonable Google user," particularly where the evidence shows Google users have different beliefs.

(3)      Plaintiffs take issue with Google's proposed language, that "You must interpret the contract in the sense in which Google believed users understood it at the time they entered the contract." This language comes directly from California's canons of contract interpretation. Cal. Civ. Code § 1649 ("If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.").

Authorities:
- CACI 314, 315, 317, 320
- Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.").
- Cal. Civ. Code § 1649 ("If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.").
- *Morey v. Vannucci*, 64 Cal. App. 4th 904, 911, 75 Cal. Rptr. 2d 573, 577 (1998) (Plaintiff has the burden to "prove by a preponderance of the evidence" the meaning of a disputed contract term).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

## (DISPUTED) JURY INSTRUCTION NO. 5-6

<u>Extrinsic Evidence</u>

**Plaintiffs' Proposal:**

Google has taken the position that the contract unambiguously supports its position in this case. For that reason, Google may not rely on extrinsic evidence. In other words, to support its interpretation of the contract, Google may only rely on the documents that it contends are part of the contract, and nothing else. Plaintiffs by contrast, may rely on extrinsic evidence.

**Google's Proposal:**

None. But, if the Court were to include any instruction on extrinsic evidence beyond the "Disputed Words and Principles of Contract Interpretation" above, it should be:

In determining what the contract means, you may consider evidence beyond the documents that make up the contract, such as Google help pages, news articles, and survey evidence. However, such evidence cannot be used to vary, contradict, or add to the terms of the contract.

**Plaintiffs' Statement:**

(1)      Plaintiffs' proposal tracks and gives effect to the Court's rule concerning the use of extrinsic evidence by parties who previously sought summary judgment on the ground that the contract unambiguously supports its position. As this Court explained, "[i]f you take a position at summary judgment that a term is unambiguous such that the Court can decide it as a matter of law, you will be excluded at trial from offering extrinsic evidence to interpret that claim." Feb. 14, 2023 Tr. at 39:13-25. Google at summary judgment argued that it unambiguously disclosed its collection and use of private browsing data. May 12, 2023 Tr. at 14:3-11. At the summary judgment hearing, this Court asked Google, "Is there ambiguity in the policy or not?" *Id.* at 13:25-14:1. Counsel for Google responded "No." *Id.* at 2. This Court reiterated that "I do not let people change their positions at trial. By arguing that, Google is saying that they will not even attempt to offer extrinsic evidence as to the meaning of those terms." *Id.* at 3-7. Counsel responded, "Correct." *Id.* at 8-11. The summary judgment order acknowledged Google's choice:

Google repeated at the May 12, 2023, hearing that the Privacy Policy was unambiguous and it was therefore not relying on extrinsic

1

evidence for the proposition that it explicitly disclosed the at-issue
data collection.

2

Dkt. 969 at 13 n.15; *see also id.* at 20 n.25 (holding that Google may not rely on statements in the

3

Splash Screen's "Learn More" page because "the statement is extrinsic evidence, on which Google

4

cannot rely given its position that the contract is unambiguous"). Google's argument to evade this

5

rule (below) makes no sense because it renders the Court's rule meaningless. Parties could always

6

evade the rule by Google's logic. *See* Dkt. 1014 at 6 (refuting the same Google argument, made in

7

Plaintiffs' Amir *Daubert* motion).

8

(2)     Plaintiffs also object to Google's alternative proposal. For example, Google cites no

9

authority to suggest the jury should be told that "news articles" are relevant to interpreting a form

10

contract. That proposal makes no sense even based on Google's approach to this case, where Google

11

has presented express and implied consent as different inquiries, relying on news articles only for

12

the latter, while seeking summary judgment on the former based entirely on common evidence—

13

the form contract.

14

15

16

17

**Google's Statement**:

18

Plaintiffs' instruction should not be given because it is baseless, incorrect, and prejudicial.

19

(1)     The Court will decide what evidence is or is not admitted. Therefore, the jury need

20

not be instructed as to what evidence the parties will be permitted to rely upon or why; they will

21

only hear admitted evidence.

22

(2)     As explained in Google's opposition to Plaintiffs' Motion to Exclude In Part The

23

Opinions Of Google's Survey Expert On Amir (Dkt. 1004-1 at 7-9), although Google took the

24

position at summary judgment that the Privacy Policy was not ambiguous, the Court took a different

25

view, ruling at summary judgment that Google's "contract" with Plaintiffs is ambiguous as a matter

26

of law. Dkt. 969 at 15, 17 n.20. If the Court had agreed with Google that the contract was

27

28

unambiguous, but applied an unfavorable interpretation as a matter of law, Google could not

**PROPOSED JURY INSTRUCTIONS**

challenge that interpretation by arguing the contract is ambiguous after all. However, that rule does not apply where, as here, the Court did not "decide [the contract's meaning] as a matter of law," 2/14/2023 Hr'g Tr. 39:13–18, and instead determined that it is ambiguous and that its meaning must be resolved by the jury. Further, it would be highly prejudicial, and potentially a Due Process violation, to allow Plaintiffs *carte blanche* to present extrinsic evidence to support their contract interpretation, while precluding Google from presenting contrary evidence. Therefore, Plaintiffs' proposed instruction is unnecessary, legally wrong, and prejudicial.

(3)     If the Court were to include any instruction on extrinsic evidence, it should use Google's proposed language which does not include legal argument or inaccurate and prejudicial statements of law. The jury should not be instructed that admitted evidence can only be relied upon by Plaintiffs, and not Google, in determining the meaning of the contract.


DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 5-7**

Harm

**Plaintiffs' Proposal:**

Each Plaintiff must prove that he or she was harmed. Under California law, the failure to perform a duty required by contract is a legal harm. This harm is independent of actual damage sustained by the Plaintiff.

**Google's Proposal:**

None. But, if the Court were to include any instruction on harm, it should be:

Each Plaintiff must prove that he or she was harmed. Under California law, the failure to perform a duty required by contract is a legal harm. This harm is independent of actual damage sustained by the Plaintiff. However, if each Plaintiff cannot prove actual damages, he or she may recover only nominal damages for his or her breach of contract claim.

**Plaintiffs' Statement:**

(1)    Plaintiffs' proposed instruction incorporates the standard from this Court's summary judgment order. "[T]he failure to perform a duty required by contract is a legal wrong, independently of actual damage sustained by the party to whom performance is due." Dkt. 969 (MSJ Order) at 7 (quoting *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1010 (N.D. Cal. 2020)). The mere fact of an invasion of personal, legal rights constitutes sufficient injury. *Id.* at 7-8. Unless the jury is instructed on this standard, they might believe that some greater "harm" is required.

(2)    Plaintiffs' object to Google's instruction, which will only confuse the jury. Damages instructions come later, including an instruction on nominal damages.

**Google's Statement:**

(1)    Google does not believe any additional instruction on this element is necessary. However, if the Court were inclined to give an instruction on harm, Google's proposed addition to Plaintiffs' otherwise confusing instruction clarifies that, without a showing of actual damages, the jury may not award Plaintiffs any monetary damages beyond nominal damages. Any other result

-163-

would be erroneous. *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1259 (N.D. Cal. 2022) (interpreting California state law and holding that nominal damages are awarded in the absence of actual damages as a result of a breach of contract).

Authorities:

- *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1259 (N.D. Cal. 2022) (interpreting California state law and holding that nominal damages are awarded in the absence of actual damages as a result of a breach of contract).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**SIXTH CLAIM: INVASION OF PRIVACY**

**(DISPUTED) JURY INSTRUCTION NO. 6-1**

<u>Introduction</u>

Each Plaintiff brings an invasion of privacy claim under the California Constitution. To establish this claim, each Plaintiff must prove all of the following elements:

(1)     He or she had a legally protected privacy interest in the At Issue Data;

(2)     He or she had an objectively reasonable expectation of privacy in the [Private Browsing Data / At Issue Data];

(3)     [The invasion was substantial, and of a kind that would be highly offensive to a reasonable person / Google's receipt of the At Issue Data was so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms];

(4)     He or she [sustained injury, damage, loss, or harm / was harmed]; and

(5)     Google's conduct was a substantial factor in causing his or her injury, damage, loss, or harm.

I will now provide more details on elements 1, 2, 3, 4, and 5, which warrant additional explanation. However, you must determine if all the elements are satisfied whether or not I provide additional details on any particular element.

**Plaintiffs' Statement:**

(1)     Plaintiffs' proposal (in blue) largely tracks the pattern instruction, CACI 1800. Plaintiffs' proposal deviates in two minor respects, both of which are well-justified. *First*, both Plaintiffs' and Google's proposal omits CACI 1800's second element, which requires plaintiffs to prove that the defendant "intentionally intruded" on their privacy. There is no dispute in this case that Google's conduct was intentional, rather than the result of accident or mistake. *Second*, Plaintiffs propose the articulation of injury used in the Book of Approved Jury Instructions (BAJI) 7.20 ("injury, damage, loss, or harm"), rather than the articulation in CACI 1800 ("harm"). By using a more inclusive list of harm-related words, the BAJI instruction better conveys the broad scope of

1   cognizable harms (explained further below), which might not align perfectly with a juror's everyday

2   use of the word "harm." Google's proposal is unduly narrow for purposes of this case.[4]

3        (2)     Google's proposal (in red) is flawed in three additional respects. *First*, Google

4   incorrectly proposes instructing the jury to determine whether Plaintiffs' asserted privacy interest is

5   "legally protected." Neither CACI nor BAJI include this element. For good reason: Juries are fact-

6   finders, not law-makers. Jurors will have no idea whether a privacy interest is "legally protected."

7   This determination, as the plain language suggests, is ultimately legal in nature, not factual. Google

8   relies on *Hill v. NCAA* to propose this element, but that case makes clear that this is a fundamentally

9   legal determination, not a factual one. 7 Cal. 4th 1, 35-36 (1994). There, the Supreme Court of

10  California explained that this question "is to be determined from the usual sources of positive law

11  governing the right to privacy—common law development, constitutional development, statutory

12  enactment, and the ballot arguments accompanying the Privacy Initiative." *Id.* at 36. It goes without

13  saying that this is not the jury's role. In any event, this determination is by now established: Time

14  and again, this Court has rejected Google's arguments that there is no legally protected interest in

15  privacy in this case. *See, e.g.*, Dkt. 969 (MSJ Order) at 9-11, 33-36.

16       (3)     *Second*, Google improperly instructs the jury to determine whether its conduct

17  constitutes an "egregious breach of social norms." Both CACI 1800 and BAJI 7.20 suggest

18  instructing the jury to determine whether the defendant's conduct is highly offensive, not an

19  "egregious breach of social norms." This makes sense: A jury is more likely to comprehend what it

20  means to be "highly offensive" than what it means to be an "egregious breach" of unelaborated

21  "social norms." In any event, the d Ninth Circuit, the California Supreme Court, and this Court have

22

23  ─────────────────────

    [4] Google has suggested that it is improper to propose the BAJI instructions, rather than the CACI

24  instructions. Setting aside the fact that Google's proposals deviate from both CACI and BAJI,
    Google is wrong. "[T]here is no authority that … forbids the use of BAJI or other valid

25  instructions in a particular case." *Biggs Cardosa Assocs. Inc. v. Bradbury*, 2009 WL 1508703, at
    *9 (Cal. Ct. App. May 29, 2009). Even after CACI's publication, many courts have relied on

26  BAJI's instructions on privacy torts and other claims. *See, e.g.*, *Thomas v. Restaurant*, 2015 WL
    9583029, at *4 (E.D. Cal. Dec. 31, 2015); *Peatrowsky v. Persolve*, 2014 WL 1215061, at *8 n.62

27  (D. Nev. Mar. 24, 2014) (privacy torts); *Rowland v. JPMorgan Chase Bank, N.A.*, 2014 WL
    992005, at *11 (N.D. Cal. Mar. 12, 2014).

28

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

made clear that Plaintiffs' proposal states the correct standard. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009); *Hill v. NCAA*, 7 Cal. 4th 1, 25 (1994). To be sure, Google's proposed language does appear in judicial opinions. But binding authority provides that the ultimate touchstone is whether the defendant's conduct is "highly offensive." *In re Facebook*, 956 F.3d at 601 (stating that "the intrusion is 'so serious … as to constitute an egregious breach of social norms' *such that the breach is 'highly offensive'*" (emphasis added)).

(4)  *Third*, Google's proposal does not adequately explain to the jury what conduct and data they are to consider. The relevant data relates to Plaintiffs' activity specifically in what Google itself refers to as private browsing modes, on non-Google websites and while signed out of their Google account. Whereas referring to this data as "private browsing data" will be helpful to the jury, describing it with legalese like "at-issue data" will tend to confuse the jury.

(5)  *Fourth*, Plaintiffs object to any instruction that describes the conduct as issue as the mere "receipt" of "At Issue Data." Google is not a passive recipient of private browsing data: Google wrote and distributed the code that creates and sends Google's servers a copy of private browsing activity. In the Order denying summary judgment, the Court expressly distinguished Google's conduct from the type of "reactive data collection" that Google invokes. Dkt. 969 at 31-32. At a minimum, Google's proposed instruction improperly imbues Google's articulation of the facts with the Court's endorsement. Plaintiffs' proposed instruction is free of that type of slanted language.

**Google's Statement:**

(1)  As to the first element, the California Court of Appeal has repeatedly held that a plaintiff "[1] must possess a legally protected privacy interest." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009); *see also Hill v. Nat. Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 37, 40 (1994) (similar).  Plaintiffs' argument that this element is not for the jury is incorrect. The central inquiry of this element is whether Plaintiffs have proved that the At Issue Data Google received is "sensitive and confidential," which would give rise to a legally protected privacy interest. *Hill*, 7 Cal. 4th 1 at 35. That is indisputably an inquiry for a factfinder. *See, e.g., In re Facebook, Inc. Internet Tracking*

1  *Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) ("[T]here remain material questions of fact as to whether a

2  reasonable individual would find the information collected…'sensitive and confidential.'") (quoting

3  *Hill*, 7 Cal. 4th 1 at 35).

4  (2)    As to the second element, Plaintiffs' proposal to use the term "Private Browsing

5  Data," rather than "At Issue Data" should be rejected. Plaintiffs incorrectly and confusingly define

6  "Private Browsing Data" as all "data generated" when Plaintiffs browse in private browsing mode.

7  By contrast, throughout the litigation, Plaintiffs more specifically defined the data as: (1) the "GET

8  Request," (2) IP Address, (3) browser information, (4) User-ID, (5) geolocation, and (6) cookies.

9  Dkt. 886 (Fourth Amended Complaint) ¶ 63(a)-(f). The jury deserves to have at least the same level

10  of clarity with which the parties have been litigating, and Plaintiffs should not be permitted to confuse

11  the jury by expanding the At Issue Data at this juncture. Plaintiffs' definition of "Private Browsing

12  Data" is too vague and amorphous to be used here or in any other instruction.

13  (3)    Google's third element—egregious breach of social norms—is drawn directly from

14  the Court of Appeal's holding in *Hernandez* that to state a claim, plaintiff must show the intrusion is

15  so serious in nature, scope, and actual or potential impact as to constitute an "egregious breach of the

16  social norms." *See Hernandez*, 47 Cal. 4th at 287; *Hill*, 7 Cal. 4th at 37 (same). By contrast, Plaintiffs'

17  proposed "highly offensive" standard for the third element comes from CACI 1800, which provides

18  the elements of "Intrusion Into Private Affairs," a common law tort that is different from an Invasion

19  of Privacy claim under the California Constitution and has distinct elements. *See Hernandez*, 47 Cal.

20  4th at 286, 287 (intrusion tort requires "highly offensive" conduct whereas invasion of privacy claim

21  under California Constitution requires "egregious breach of social norms"); *Hill*, 7 Cal. 4th at 25, 37

22  (same).[5] Plaintiffs' confusion of the two claims is evident because they cite the portions of *Hernandez*

23  and *Hill* that deal with the common law tort of Intrusion Upon Seclusion. *In re Facebook, Inc.*

24  

25  [5] Notably, the common law tort of Intrusion Into Private Affairs is a tort and requires "intentional
26  intru[sion]," whereas Invasion of Privacy, rooted in the California Constitution, does not have that
   requirement. *See Hernandez*, 47 Cal. 4th at 287 (noting that, in the "common law tort" of intrusion
   upon seclusion, "the defendant must intentionally intrude," and omitting this requirement from the
27  elements of invasion of privacy under the California Constitution).  For that reason, Google did not
   include the element of intentionality in its proposed instruction for Invasion of Privacy. Contrary to
28  Plaintiffs' claim, Google's omission of the element of intentionality for this claim is not a concession
   that Google does not dispute that its conduct was intentional.

*Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020), too, states that for an "invasion of privacy under the California Constitution…[p]laintiffs must show that…the intrusion is 'so serious ... as to constitute an egregious breach of the social norms.'" (citing *Hernandez*, 47 Cal. 4th at 287). That courts sometimes consider the claims of Invasion of Privacy and Intrusion Upon Seclusion together when deciding pleading motions (*id.* at 601), does not mean that the jury should not be instructed on the proper elements of an Invasion of Privacy Claim under the California Constitution. Nor is it correct that a jury can more easily comprehend "highly offensive" over an "egregious breach of a social norm." Google has clearly defined what constitutes an egregious breach of social norms in Disputed Instruction No. 6.4.

(4)    With respect to Google's proposed third element, Plaintiffs also improperly object to Google's use of the term "receipt" of At Issue Data. Plaintiffs cannot object to language they have themselves pleaded. *See, e.g.*, Dkt. 886 (FAC) ¶ 192 (class defined as users "whose communications…[were] intercepted, received, or collected"); *id.* ¶ 196(c) (alleging a common question is "[w]hether Google in fact intercepted, received, or collected communications…").

Finally, Plaintiffs' proposed additions to elements four and five should be rejected because they are unnecessary and prejudicial. Despite arguing that CACI 1800 is the relevant model instruction for this claim, Plaintiffs improperly cherry-pick from the superseded BAJI 7.20 to add "injury, damage, loss, or harm" to elements four and five. Plaintiffs' only excuse for doing so is that the harm element in BAJI 7.20 is broader than that in CACI 1800 and apparently more favorable to them. That is not a proper justification, particularly when Google disputes (as explained below) that the broad "harm" element Plaintiffs propose in Disputed Instruction No. 6-5 is cognizable in an Invasion of Privacy claim. Even if the Court were to accept the use of the BAJI, which has been superseded by the CACIs  as "the official instructions for use in the state of California." California Rule of Court 2.1050.

Authorities:
- CACI 1800.
- *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992, 125 Cal. Rptr. 3d 260, 265 (2011), *as modified* (June 7, 2011) ("Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.") (quoting *Hill v. Nat. Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 37 (1994)).

- *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (To prove an invasion of privacy claim under the California constitution, plaintiff "[1]must possess a legally protected privacy interest. These interests include 'conducting personal activities without observation, intrusion, or interference,' as determined by 'established social norms' derived from such sources as the 'common law' and 'statutory enactment[,]' [2] the plaintiff's expectations of privacy must be reasonable. This element rests on an examination of 'customs, practices, and physical settings surrounding particular activities,' as well as the opportunity to be notified in advance and consent to the intrusion[,] [3] the plaintiff must show that the intrusion is so serious in 'nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.'").
- *Hill v. Nat. Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 40 (1994) (To prevail on an invasion of privacy claim, a plaintiff must show: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.").
- *People v. Brown*, 88 Cal. App. 3d 283, 290, 151 Cal. Rptr. 749, 753 (Ct. App. 1979) ("The test for determining whether a given area is cloaked with the occupant's expectation of privacy is not the occupant's mere subjective, unmanifested expectation, but an objective test drawn from the circumstances.") (citation omitted).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 6-2**

<u>Legally Protected Privacy Interest</u>

**Google's Proposal:**

<span style="color:red">For the first element, each Plaintiff must show that the At Issue Data was sensitive and confidential.</span>

**Plaintiffs' Proposal:** None.

**Google's Statement:**

(1)      Google's proposed instruction on whether each Plaintiff had a legally protected privacy interest is necessary to explain the first "essential" element of an Invasion of Privacy claim. *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35 (1994). *Hill* held it is the "dissemination or misuse of sensitive and confidential information" that gives rise to a legally protected privacy interest. Plaintiffs attempt to avoid the burden of having to prove this element by leaving it out of their proposed instructions entirely. The jury should be able to decide whether Plaintiffs have satisfied this element, particularly because it is a key issue contested by the parties throughout this litigation. *See* Dkt. 907-3 at 9-10, Dkt. 924-3 at 2-3. Google's response to Plaintiffs' objection to this instruction is above in Disputed Jury Instruction No. 6-1.

Authorities:
- *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35 (1994) ("The first essential element of a state constitutional cause of action for invasion of privacy is the identification of a specific, legally protected privacy interest. . . . [P]rivacy interests do not encompass all conceivable assertions of individual rights. Legally recognized privacy interests are [in relevant part] [i]nterests in precluding the dissemination or misuse of sensitive and confidential information . . . .").

**Plaintiffs' Statement:**

(1)      Plaintiffs object to any instruction on this false element for reasons explained above, in Disputed Jury Instruction No. 6-1.

DATE SUBMITTED: November 1, 2023
DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 6-3**

<u>Objectively Reasonable Expectation of Privacy</u>

**Google's Proposal:**

For the second element, in deciding whether each Plaintiff had an objectively reasonable expectation of privacy in the [Private Browsing / At Issue Data], you should consider, among other factors, the following:

    (a) The identity of Google;

    (b) The extent to which other persons had access to Private Browsing Data or could see or hear the Plaintiff; and

    (c) The means by which the invasion occurred.

    (a) The customs, practices, and physical settings surrounding Google's receipt of the At Issue Data;

    (b) Whether each Plaintiff was provided an opportunity to be notified in advance and consent to the collection of the At Issue Data; and

    (c) Whether the At Issue Data is associated with an anonymous identifier. An anonymous identifier is an identifier that is not associated with an individual user's identity. Plaintiffs do not have an objectively reasonable expectation of privacy in information that is not linked to their identities.

**Plaintiffs' Statement:**

    (1)    Plaintiffs' proposal (in blue) tracks the pattern instruction, included within CACI 1800, word-for-word.

    (2)    Google's proposal (in red) is entirely bespoke, with no basis in CACI or any other pattern instruction of which Plaintiffs are aware. It appears that Google simply cherry-picked its favorite statements from various cases and imported them into a jury instruction. This is improper, particularly where there are several pattern instructions available.

    (3)    Not only is Google's approach to this instruction improper—its proposed instruction is also legally erroneous. *First*, the Court has squarely rejected the proposition that "Plaintiffs do not have an objectively reasonable expectation of privacy in information that is not linked to their

1   identities." *See* Dkt. 969 (MSJ Order) at 10-11 (holding it "enough" that "Plaintiffs have set forth

2   specific facts demonstrating that the reason Google has access to their anonymous, aggregated data

3   is through collection and storage of information from users' private browsing history without

4   consent"), *id.* at 33 n.39 ("Google also repeats the argument that, because the data collected here

5   was anonymized, plaintiffs had no reasonable expectation of privacy. … [T]he Court rejects this

6   argument."); *see also In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1009-10

7   (N.D. Cal. 2020) ("[I]nformation need not be personally identifying to be private."). *Second*, it is

8   not true that the mere "opportunity to be notified in advance and consent" undermines a plaintiff's

9   reasonable expectation of privacy. Google reaches that conclusion only by removing judicial

10  reasoning from its context. Google relies for this proposition on *Hernandez v. Hillsides, Inc.*, 47

11  Cal. 4th 272, 287 (2009), which cites *Hill v. NCAA*, 7 Cal. 1, 36-37 (1994). In *Hill*, the Supreme

12  Court made clear that the important thing is "the presence or absence of opportunities to *consent*

13  voluntarily to activities impacting privacy interests," not the mere opportunity to be *notified*. *Id.* at

14  37 (emphasis added). Google's proposed instructions are also internally inconsistent, as it does not

15  match Google's proposal with respect to the very same element in Claim 7, for intrusion upon

16  seclusion. *See* Disputed Instruction No. 7-2.

17      (4)      If the Court chooses not to give the CACI instruction and instead to craft narrower

18  instructions fitted to the facts of this case, then Google's proposed factors should be rejected, and

19  others should be offered in their place. The jury should be instructed to consider the most important

20  factor: Google's own promises and disclosures to Plaintiffs and class members. *See* Dkt. 969 (MSJ

21  Order) at 34 (finding a triable issue because "there was a dispute about whether Google has collected

22  this data surreptitiously"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir.

23  2020) (focusing significant attention on the defendant's disclosures). The jury should also be

24  instructed to consider other factors upon which the Ninth Circuit has placed importance in cases like

25  these, such as "whether [Google] gained 'unwanted access' to data by electronic or other covert

26  means," whether Google's data collection was "surreptitious and unseen," and "[t]he nature of the

27  allegedly collected data." *Id.* at 603; Dkt. 969 (MSJ Order) at 34. Google's proposal conspicuously

28

1  omits these factors, which the Ninth Circuit and this Court have already determined to be important

2  in this case and those like it.

3       (5)      As previously explained, Plaintiffs also object to any instruction that describes the

4  conduct as issue as the mere "receipt" of "At Issue Data." Google is not a passive recipient of private

5  browsing data: Google wrote and distributed the code that creates and sends Google's servers a copy

6  of private browsing activity. In the Order denying summary judgment, the Court expressly

7  distinguished Google's conduct from the type of "reactive data collection" that Google invokes.

8  Dkt. 969 at 31-32. At a minimum, Google's proposed instruction improperly imbues Google's

9  articulation of the facts with the Court's endorsement. Plaintiffs' proposed instruction is free of that

10  type of slanted language. And as explained in connection with Disputed Instruction No. 6-1, "Private

11  Browsing Data" is a more accurate and useful phrase than "At Issue Data."

12  **Google's Statement**:

13       (1)      Google's instruction correctly instructs the jury on the factors it may consider when

14  determining whether Plaintiffs have proven they had an "objectively reasonable expectation of

15  privacy." Each of these factors has been used by courts to determine Invasion of Privacy claims

16  similar to Plaintiffs.' For example, in *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th

17  Cir. 2017), the court held that Plaintiffs could not establish an invasion of privacy claim where they

18  failed to allege that the data collected was "individually identifiable to particular [plaintiffs]." *Id.*;

19  *see also Low v. LinkedIn Corp.*, 2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011); *Sanchez v.*

20  *L.A. Dep't of Transp.*, 2021 WL 1220690, at *3 (C.D. Cal. Feb. 23, 2021). Plaintiffs' attempt to

21  discredit this factor as "legally erroneous" is baseless. This Court's order on Google's motion for

22  summary judgment did not find that a plaintiff has an objectively reasonable expectation of privacy

23  in data that is anonymous or not linked to the identity. Rather, the Court found only that Plaintiffs

24  had established standing for their Invasion of Privacy claim.  Dkt. 969 (MSJ Order) at 10-11.

25  Plaintiffs' reliance on *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1009-10

(N.D. Cal. 2020) is also misguided. That case did not address an Invasion of Privacy claim and merely found that standing was established in the context of a Wiretap Act claim.

(2)        Similarly, in *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009), the court found that a reasonable expectation of privacy "rests on an examination of 'customs, practices, and physical settings surrounding particular activities,' as well as the opportunity to be notified in advance and consent to the intrusion." *Id.* Contrary to Plaintiffs' claim, *Hernandez* and *Hill* refer to both "advance notice and the opportunity to consent," just as Google does in its proposed instruction. *See id.*; *Hill*, 7 Cal. at 37 (emphasis added).

(3)        Further, it is critical for the jury to be instructed that Plaintiffs' expectation of privacy be "objective," as clearly stated in the case law. *People v. Brown*, 88 Cal. App. 3d 283, 290, 151 Cal. Rptr. 749, 753 (Ct. App. 1979) ("The test for determining whether a given area is cloaked with the occupant's expectation of privacy is . . . an objective test drawn from the circumstances.") (citation omitted). Given the likelihood that Plaintiffs will be questioned about their own subjective views of privacy and what they expected in using private browsing mode, the jury could easily become confused and believe that this subjective expectation is the standard by which they should evaluate an invasion of privacy claim. To avoid this tangible risk, jurors should be instructed on the objective standard, as Google's instruction sets forth.

(4)        Plaintiffs' proposed instruction is based on CACI 1800, which is crafted to apply to the common law tort Intrusion Upon Seclusion, a claim that is distinct from an Invasion of Privacy claim under the California Constitution. See *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 32-39 (1994) (separately analyzing Invasion of Privacy claim and Intrusion Upon Seclusion common law tort claim). Plaintiffs claim that there are "several pattern instructions" available, yet point to none that specifically deal with an Invasion of Privacy claim. Plaintiffs' proposed instruction should therefore be rejected.

(5)     Plaintiffs' objection to the use of the term "receipt" of "At Issue Data" does not make sense. Plaintiffs cannot object to language they have themselves pleaded. *See, e.g.*, Dkt. 886 ¶ 192 (class defined as users "whose communications…[were] intercepted, received, or collected"); *id.* ¶ 196(c) (alleging a common question is "[w]hether Google in fact intercepted, received, or collected communications…"). In fact, Google's proposed definition of "At Issue Data" matches precisely Plaintiffs' own specific definition of the data at issue. Dkt. 886 ¶ 63(a)-(f). Plaintiffs' proposal to add "Private Browsing Data," which Plaintiffs define as all "data generated" when Plaintiffs browse in private browsing mode, goes beyond what is specifically alleged in this case. The jury deserves to have at least the same level of clarity with which the parties have been litigating.

Authorities:
- *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017) (Plaintiffs could not establish invasion of privacy claim where they failed to allege that the data collected was "individually identifiable to particular [plaintiffs]").
- *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011) (dismissing invasion of privacy claim where plaintiff had not alleged how his personal identity could be inferred from the collection of the data alleged to be wrongfully collected).
- *Sanchez v. L.A. Dep't of Transp.*, 2021 WL 1220690, at *3 (C.D. Cal. Feb. 23, 2021) ("Obviously, a person does not have a reasonable expectation of privacy over information that cannot even be connected to her," even where the data could theoretically be "de-anonymized.").
- *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ("[T]he plaintiff's expectations of privacy must be reasonable. This element rests on an examination of 'customs, practices, and physical settings surrounding particular activities,' as well as the opportunity to be notified in advance and consent to the intrusion.") (citation omitted).
- *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal. 4th 992, 1000, 201 P.3d 472, 478 (2009) ("A plaintiff's expectation of privacy in a specific context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved.").
- *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 36 (1994) ("The extent of [a privacy] interest is not independent of the circumstances….[certain] factors may affect a person's reasonable expectation of privacy. For example, advance notice of an impending action may serve to limit [an] intrusion upon personal dignity and security that would otherwise be regarded as serious. In addition, customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy.") (internal citations and quotation marks omitted).
- *People v. Brown*, 88 Cal. App. 3d 283, 290, 151 Cal. Rptr. 749, 753 (Ct. App. 1979) ("The test for determining whether a given area is cloaked with the occupant's expectation of

privacy is not the occupant's mere subjective, unmanifested expectation, but an objective test drawn from the circumstances.") (citation omitted).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 6-4**

Highly Offensive / Egregious Breach of Social Norms

**Plaintiffs' Proposal:**

In determining whether an intrusion is highly offensive, you should consider all of the evidence, including the degree of the invasion, the context, conduct, and circumstances surrounding the invasion as well as Google's motives and objectives, the setting in which the invasion occurred, and the Plaintiff's expectations of privacy in that setting.

**Google's Proposal:**

For the third element, to qualify as an egregious breach of social norms, the conduct must be serious, and likely to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

In deciding whether Google's receipt of the At Issue Data is an egregious breach of social norms, you should consider, among other factors, the following:

(a) The extent and gravity of the invasion, if any, for each Plaintiff;

(b) Whether Google connected the At Issue Data to each Plaintiff's identity. If Google did not, and each Plaintiff's identity remained anonymized, then receipt of the At Issue Data is not an egregious breach of social norms;

(c) Whether Google's receipt of the At Issue Data is routine commercial behavior.  Routine commercial behavior is not an egregious breach of social norms.

**Plaintiffs' Statement:**

(1)     Plaintiffs' proposal tracks the Book of Approved Jury Instructions 7.20 word-for-word. The BAJI instructions are similar to the instructions included in CACI 1800, but they include a broader and more complete list of relevant factors. That is especially important in a case like this one, where the invasion is not physical, is preceded by the defendant's own promises of privacy, and may not superficially resemble the factual circumstances of privacy invasions at the time the elements of this tort were defined. If the Court elects not to give the BAJI instruction, then Plaintiffs respectfully request that the CACI 1800 instruction be given instead.

1     (2)    Google's proposed instruction, by contrast, has no basis in any pattern instruction.

2 As with the expectation-of-privacy element, Google cobbles together a bespoke instruction out of

3 its favorite statements from various cases. As previously explained, this is an inappropriate basis for

4 a jury instruction.

5     (3)    Google's proposed instruction is also legally erroneous. *First*, Google would present

6 the second and third of its purported factors as outcome-determinative. California law clearly

7 requires a textured analysis of all of the elements; no one element can bar relief. Dkt. 969 (MSJ

8 Order) at 34 (requiring a "holistic consideration of factors"); *see, e.g.*, *In re Facebook, Inc. Internet*

9 *Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (this element "requires a holistic consideration

10 of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion,

11 [and] the intruder's motives and objectives"); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287

12 (2009) ("California tort law provides no bright line on 'offensiveness'; each case must be taken on

13 its own facts." (quoting *Shulman v. Grp. W. Prods., Inc.*, 18 Cal.4th 200, 236 (1998))); BAJI § 7.20

14 (instructing jury to "consider all of the evidence"). *Second*, and relatedly, the Court has already

15 rejected Google's assertion that conduct cannot be highly offensive if the data is treated

16 anonymously or if Google's behavior is routine. In its opinion denying Google's motion for

17 summary judgment, the Court determined that a reasonable jury could find that Google's conduct

18 was highly offensive based on evidence that: "the data collected here is vast and sensitive,"

19 "Google's own employees found the data collection problematic," and "Google did not adequately

20 disclose to users that it was tracking them as they privately browsed." Dkt. 969 (MSJ Order) at 35.

21 Evidence that Google "connected" private browsing data to Plaintiffs' identities is not required. Nor

22 is a company's "routine" behavior somehow immunized from liability. Indeed, it would make no

23 sense to incentivize a company to make sure that it consistently, not sporadically, invades others'

24 privacy. Google relies on *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), but

25 that case does not hold that routine behavior can *never* be highly offensive.

26     (4)    If the Court chooses not to adopt Plaintiffs' proposal and instead to craft narrower

27 instructions fitted to the facts of this case, then Google's proposed factors should be rejected, and

28 others should be offered in their place. The Court should instruct the jury to consider the amount

and sensitivity of the private browsing data Google collected, saved, and used. *See* Dkt. 969 (MSJ Order) at 35 (finding a triable issue on this element in part because "the data collected here is vast and sensitive"). The Court should also instruct the jury to consider whether Google's employees recognized that its collection, saving, and use of private browsing data was a "problematic privacy issue." *In re Facebook Tracking*, 956 F.3d at 606 (finding it significant that "the company's own officials recognized these practices as a problematic privacy issue"); Dkt. 969 (MSJ Order) at 35 (noting that "Google's own employees found the data collection problematic"). The Court should also instruct the jury to consider whether "Google … adequately disclose[d] to users that it was tracking them as they privately browsed." *Id.* Google's proposal conspicuously omits these factors, which the Ninth Circuit and this Court have already determined to be important in this case and those like it.

(5)     For reasons previously explained, *see, e.g.*, Disputed Instruction No. 2-4, Plaintiffs also object to any instruction that describes the conduct as issue as the mere "receipt" of "At Issue Data."

(6)     For reasons previously explained, *see* Disputed Instruction No. 6-1, Plaintiffs also object to characterizing this element as an "egregious breach of social norms," rather than the "highly offensive" conduct standard contained in all pattern instructions and Plaintiffs' proposal.

**<u>Google's Statement</u>:**

(1)     Google's instruction correctly instructs the jury on the factors it may consider when determining whether Plaintiffs have proven that Google's alleged conduct was an "egregious breach of social norms." Each of these factors has been used by courts to determine Invasion of Privacy claims similar to Plaintiffs. For example, in *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37, 865 P.2d 633, 655 (1994), the court held that "the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy." *Id.* In *I.C. v. Zynga, Inc.*, 2022 WL 2252636, at *1049 (N.D. Cal. Apr. 29, 2022) (Gonzalez Rogers, J.), the Court dismissed the invasion of privacy claim where plaintiffs' "anonymity is preserved." And in *Folgelstrom v.*

*Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011), the court held that routine commercial behavior "is not an egregious breach of social norms." Accordingly, Google's proposed instruction accurately informs the jury on the appropriate legal standards they should apply.

(2)     Plaintiffs' criticism that Google did not rely on BAJI 7.20 or CACI 1800 for its proposed instruction is baseless. As explained in Google's position statement in Disputed Instruction No. 6-1, neither of those model instructions applies to an Invasion of Privacy claim under the California Constitution. Rather, each applies to the common law tort of Intrusion Upon Seclusion. The California Court of Appeal has recognized that the elements of Invasion of Privacy are different, and Google's instruction appropriately follows controlling authority that clearly sets forth the elements of this claim.

(3)     Nor is Google's proposed instruction legally erroneous, as Plaintiffs claim. Google's proposed second and third factors are not "outcome determinative" but rather clearly couched as examples to the jury of the type of conduct that would constitute an egregious breach of social norms. *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (allegation that defendants periodically transmitted plaintiff's "*anonymous client id [] and location*" not sufficient to demonstrate "egregious breach of social norms." (emphasis in original); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992, 125 Cal.Rptr.3d 260 (2011) (reversing judgment on privacy claim where challenged conduct [was] not an egregious breach of social norms, but routine commercial behavior.").

(4)     Google responds to Plaintiffs' objection of the terms "receipt" and "At Issue Data" in its position statement in Instruction No. 0-34.

(5)     Google responds to Plaintiffs' objection of characterizing element three as "egregious breach of social norms" rather than "highly offensive" in its position statement in Instruction No. 6-1.

Authorities:

- *I.C. v. Zynga, Inc.*, 2022 WL 2252636, at *1049 (N.D. Cal. Apr. 29, 2022) (Gonzalez Rogers, J.) (dismissing invasion of privacy claim where plaintiffs' "anonymity is preserved" and the "pieces of information" revealed to third parties, on their own, were not "so private that their revelation would be highly offensive").
- *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 & n.11 (N.D. Cal. 2022) (alleged intrusion not "highly offensive" where information was anonymized and Google did not "develop comprehensive profiles on its users").
- *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (allegation that defendants periodically transmitted plaintiff's "*anonymous* client id []  and location" not sufficient to demonstrate "egregious breach of social norms." (emphasis in original)).
- *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (dismissing invasion of privacy claim where "information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information").
- *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992, 125 Cal.Rptr.3d 260 (2011) (reversing judgment on privacy claim where challenged conduct [was] not an egregious breach of social norms, but routine commercial behavior.").
- *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37, 865 P.2d 633, 655 (1994) ("Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 6-5**

<u>Harm</u>

**Plaintiffs' Proposal:**

This right to privacy concerns one's own peace of mind. Any injury to Plaintiffs' interest in privacy, feelings, or peace of mind resulting from Google's collection, storage, and use of Private Browsing Data constitutes harm.

California law also recognizes a right to disgorgement of profits resulting from unjust enrichment. If you find that Google profited from its collection, storage, and use of Plaintiffs' Private Browsing Data, you should consider whether the circumstances are such that, as between Google and Plaintiffs, it is unjust for Google to retain those profits. If you find that Google was unjustly enriched, that also constitutes harm to Plaintiffs, even if Plaintiffs have not suffered a corresponding loss.

Plaintiffs can also demonstrate harm by proving that there is a market for their browsing data, and that Google's conduct inhibited Plaintiffs' ability to participate in that market.

**Google's Proposal:** None.

(1)     Plaintiffs' instruction is based on the BAJI, which the Judicial Conference decommissioned when enacting the CACIs. California Rule of Court 2.1050. This instruction is not necessary and should not be given.  Plaintiffs claim it is important to instruct the jury on this element because the "definition of harm may differ from one claim to the next, and the jury may inadvertently conflate the varying standards." That is a figleaf. They actually use a materially identical definition of harm for three of their claims, Invasion of Privacy, Intrusion Upon Seclusion, and CDAFA. Plaintiffs' instruction is argumentative, incorrect as a matter of law for each of the three theories of harm they propose, and should not be given.

(2)     Plaintiffs seek to improperly instruct on harm to one's "peace of mind" and "injury to feelings." Plaintiffs have neither pleaded this theory of harm nor provided any discovery or deposition testimony related to it. *See*, *e.g.*, Fourth Amended Complaint; Responses to Interrogatory

No. 3 (when asked to "[d]escribe with particularity how YOU have been harmed or damaged by [Google's] conduct," none of the Plaintiffs identified harm to peace of mind or injury to feelings); Davis Tr. at 138:18-104:6; Trujillo Tr. at 230:10-17. Because Plaintiffs failed to timely disclose this theory of harm, they are precluded from offering any evidence related to it. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), as amended (Sept. 16, 2008) (upholding exclusion of damages theory where it was first disclosed through pretrial conference). Nor is it clear what evidence, if any, Plaintiffs will introduce on this theory of harm. *See* Dkt. 1028-1 (Pretrial Statement) at 26-27.

(3)     In the second and third paragraphs of their proposed instruction, Plaintiffs do not articulate a privacy harm at all, but rather improperly reference the types of remedies to which they claim they are entitled. A "right to disgorgement of profits resulting from unjust enrichment" and "[an] inhibited [] ability to participate in [a] market" have no place in the determination of harm for Invasion of Privacy. Plaintiffs cannot be allowed to disguise their damages arguments in a jury instruction on the element of harm, particularly when an Invasion of Privacy claim does not even allow monetary damages. *See Clausing v. San Francisco Unified School Dist.*, 221 Cal.App.3d 1224, 1235271 Cal.Rptr. 72 (1990) (although Article I, Section I enumerates "inalienable rights, this provision of the Constitution does not establish the means whereby they may be enjoyed."); *Bates v. Arata*, 2008 WL 820578 (N.D.Cal. Mar. 26, 2008) (following *Clausing*, declined to recognize a private right of action for money damages based on article I, section 1's right to privacy); *Blanco v. County of Kings*, 142 F.Supp.3d 986, 1001 (E.D. Cal. 2015) ("No monetary damages are available for invasion of privacy under the California Constitution."). Nor do the Court's order on Google's motion for summary judgment and the two cases Plaintiffs cite support these theories of harm. *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1135 (1985) does not deal with an Invasion of Privacy claim under the California Constitution, but rather a "false light invasion of privacy"

claim, which is akin to a libel claim and not at issue here. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) merely held that an alleged "legal interest in unjustly earned profits" was "sufficient to confer Article III standing." *Id.* (emphasis added). It did not go so far as to say what type of evidence the jury may consider to determine harm for an Invasion of Privacy claim. Similarly, in its order on Google's motion for summary judgment, the Court only held that Plaintiffs had sufficiently demonstrated standing to pursue their privacy claims. *See* Dkt. 969 at 11.

**Plaintiffs' Statement:**

(1)    The jury would benefit from an instruction describing legally cognizable "harm" for these purposes, which may not match some jurors' everyday use of that word. There are at least three relevant types of legally cognizable harm, as recognized by this Court's order denying summary judgment and other authorities. Plaintiffs rely in part on Book of Approved Jury Instructions 7.26, rather than CACI, for these principles because CACI does not include specific instructions on this element.

(2)    *First*, harm under California law includes "injury to the feelings" or "peace of mind," regardless of any effect "on the property, business, pecuniary interest, or the standing of the individual in the community." *Selleck v. Globe International, Inc.*, 166 Cal. App. 3d 1123, 1135 (1985). This is a "mental and subjective" form of harm; *see also* Book of Approved Jury Instructions 7.26(1), (2) & note A (providing for damages for "injury to one's feelings or peace of mind").

(3)    *Second*, harm under California law includes "[e]conomic injury for [Plaintiffs'] misappropriated data," which exists where "there is a market for their data," which was taken without compensation. Dkt. 969 at 33; *see also id.* at 36; *see also* Book of Approved Jury Instructions 7.26(3) (providing for "economic losses").

(4)    *Third*, harm under California law includes injury based on Plaintiffs' legally recognized "stake in unjustly earned profits" earned through "unauthorized use of their information." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600-01 (9th Cir. 2020); *see also* Book of Approved Jury Instruction 7.26(3) (providing for "economic losses").

(5)     Unless specifically instructed, jurors might not understand that this element is satisfied by any or all of these forms of harm. This instruction is particularly important because the definition of harm may differ from one claim to the next, and the jury may inadvertently conflate the varying standards. Google's proposal is therefore untenable: It would leave jurors without any guidance for how to evaluate this element.

**<u>Google's Statement</u>:**

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 6-6**

<u>Substantial Factor</u>

For the [fourth / fifth] element, a substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Authority: CACI 430

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

## SEVENTH CLAIM: INTRUSION UPON SECLUSION

## (DISPUTED) JURY INSTRUCTION NO. 7-1

### Introduction

Each Plaintiff brings an intrusion upon seclusion claim under California law. To establish this claim, each Plaintiff must prove all of the following elements:

(1)    [Google intentionally intruded upon the solitude, seclusion, private affairs, or concerns of Plaintiffs / He or she had an objectively reasonable expectation of privacy in the At Issue Data];

(2)    By receiving the At Issue Data, Google intentionally intruded on his or her objectively reasonable expectation of privacy];

(3)    The intrusion [was substantial, and of a kind / occurred in a manner] that would be highly offensive to a reasonable person;

(4)    He or she [sustained injury, damage, loss, or harm / was harmed]; and

(5)    Google's conduct was a substantial factor in causing each his or her injury, damage, loss, or harm.

I will now provide more details on elements 1, 3, and 5, which warrant additional explanation. However, you must determine if all the elements are satisfied whether or not I provide additional details on any particular elements.


**Plaintiffs' Statement:**

(1)    Plaintiffs' proposal tracks the Book of Approved Jury Instructions 7.20, which differs from CACI 1800 in just a few respects.:

(2)    *First*, BAJI 7.26 requires plaintiffs to prove an intrusion on "the solitude or seclusion, private affairs or concerns of the plaintiff," whereas CACI 1800 requires plaintiffs to prove an intrusion on a reasonable expectation of privacy. As is apparent, CACI 1800 is better tailored for invasion-of-privacy claims, whereas BAJI 7.20 is better-tailored for intrusion-upon-seclusion claims. Although these causes of action are similar and often treated together, the latter has a greater focus on the sensitivity of the space intruded. *See Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200,

236 (1998) (focusing analysis for intrusion-upon-seclusion claim on the "alleged intrusion into private matters (i.e., physical space, conversion or data")).

(3)      *Second*, Plaintiffs' propose instructing the jury to consider whether Google's intrusion is "of a kind that would be highly offensive," whereas CACI would instruct the jury to consider only the "manner" in which the intrusion occurred. California law clearly demonstrates that the amount and sensitivity of the information revealed is relevant to this element, in addition to the mode by which the intrusion occurred. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (instructing courts to consider, among other factors, "the likelihood of serious harm to the victim" and "the degree … of the intrusion").

(4)      *Third*, BAJI 7.26 provides a more complete list of the harms cognizable under California law, as explained in Disputed Instruction No. 6-1.

**Google's Statement**:

(1)      The parties dispute the first, second, and third elements, and although they largely agree on the fourth and fifth elements, Google disputes Plaintiffs' gratuitous addition of "injury, damage, loss" to those elements. Google proposes adopting the applicable CACI 1800 (Intrusion Into Private Affairs) in full, with simple additions of the term "At Issue Data" to tailor the instruction to the facts of the case. By contrast, Plaintiffs propose to graft into this instruction language from the BAJIs, which has been superseded by the CACIs  as "the official instructions for use in the state of California." California Rule of Court 2.1050.

(2)      Plaintiffs entirely omit the requirement of "an objectively reasonable expectation of privacy" in establishing an Intrusion Upon Seclusion claim. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) ("A privacy violation based on the common law tort of intrusion [requires that] the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy); *Id.* ("[T]he expectation of privacy must be 'objectively reasonable.'"). The only explanation Plaintiffs provide for straying from the directly applicable

CACI 1800 is the incorrect statement that CACI 1800 is "better tailored" to an Invasion of Privacy claim. It is not. The sources and authorities cited in support of CACI 1800 nearly all reference the "tort of intrusion" or "common law" tort. *Id.* (Sources and Authority).   Indeed CACI 1800, references the nearly three decade old case Plaintiffs cite and still did not adopt the language Plaintiffs propose as the clearest articulation of the elements of Intrusion Upon Seclusion. *See* CACI 1800 (citing *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200 (1998)).   Plaintiffs' proposed language is also not tailored to the facts of this case, but rather includes broad, generic concepts that will be confusing to the jury such as "the solitude or seclusion, private affairs or concerns of Plaintiffs." Google respectfully requests that the Court give Google's proposed instructions.

    (3)    As to the second element, Plaintiffs seek to insert the phrase "of a kind that would be highly offensive" in place of Google's proposed "in a manner that would be highly offensive," which is verbatim from CACI 1800. Their purported justification that CACI 1800 is inconsistent with California law for stating that it is the "manner" in which an intrusion occurred that must be found to be highly offensive is incorrect. Indeed, the very case they cite for this proposition—*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601(9th Cir. 2020)—states that "[t]o state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that…the intrusion occurred in a *manner* highly offensive to a reasonable person." (internal quotation marks omitted) (emphasis added).

    (4)    Finally, Plaintiffs' proposed additions to elements four and five should be rejected because they are unnecessary and prejudicial, as Google explained in its position statement in Disputed Instruction No. 6-1.

Authorities:
- CACI 1800.
- *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) ("[T]he expectation of privacy must be 'objectively reasonable.'").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 7-2**

Objectively Reasonable Expectation of Privacy

**Google's Proposal:**

For the first element, in deciding whether each Plaintiff had an objectively reasonable expectation of privacy in the At Issue Data, you should consider, among other factors, the following:

(a) The identity of Google;

(b) The extent to which other entities had access to the At Issue Data and received such data; and

(c) The means by which the intrusion occurred.

**Plaintiffs' Proposal:** None.

**Plaintiffs' Statement:**

(1)     For reasons previously explained, *see* Disputed Jury Instruction No. 7-1, the jury should not be instructed on this element for this claim. Plaintiffs further object to Google's proposal insofar as it characterizes the relevant data as "At Issue Data." For reasons previously explained, that term is incorrect and unhelpful to the jury. *See* Disputed Jury Instruction No. 7-1. Moreover, if the jury is to be instructed on this element, it should mirror the same instruction for Plaintiffs' claim for invasion of privacy. *See* Disputed Jury Instruction No. 6-3.

**Google's Statement:**

(1)     The first element Google's instruction sets forth—whether Plaintiffs had an "objectively reasonable expectation of privacy"—is modeled exactly after CACI 1800 (Intrusion Into Private Affairs), with the exception of adding "At Issue Data" to make the instruction more applicable to the facts of the case and removing "and could see or hear [name of plaintiffs]" because the phrase is irrelevant to this case. *See also* Google's Position Statement in Disputed Instruction No. 7-1 (explaining that "objectively reasonable expectation of privacy" is a necessary element and addressing Plaintiffs' objection). The instruction clarifies for the jury that each Plaintiff must show an "objectively" reasonable expectation of privacy as opposed to a subjective expectation. This key

distinction is supported by *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) ("[T]he expectation of privacy must be 'objectively reasonable.'"). This instruction also clearly and succinctly lists the factors, as outlined in CACI 1800, that the jury may consider in determining whether Plaintiffs have satisfied this element.

(2)      In addition to entirely omitting this necessary element, Plaintiffs also take issue with Google's use of the term At Issue Data. As Google previously explained in Disputed Instruction No. 6-1, that term exactly matches Plaintiffs' own specific definition of the data at issue. Dkt. 886 (Fourth Amended Complaint) ¶ 63(a)-(f).


- CACI 1800.
- *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) ("[T]he expectation of privacy must be 'objectively reasonable.'").


DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 7-3**

<u>Highly Offensive</u>

**Plaintiffs' Proposal:**

In determining whether an intrusion is highly offensive, you should consider all of the evidence, including the degree of the invasion, the context, conduct, and circumstances surrounding the invasion as well as Google's motives and objectives, the setting in which the invasion occurred, and the Plaintiff's expectations of privacy in that setting.

**Google's Proposal:**

For the third element, in deciding whether an intrusion is highly offensive to a reasonable person, you should consider, among other factors, the following:

(a) The extent of the intrusion;

(b) Google's motives and goals in receiving the At Issue Data; and

(c) The setting in which the intrusion occurred.

**Plaintiffs' Statement:**

(1)     For reasons explained in connection with this instruction for Plaintiffs' claim for invasion of privacy, Plaintiffs propose using the instruction from the Book of Approved Jury Instructions 7.20. *See* Disputed Jury Instruction No. 7-1.

(2)     For reasons previously explained, Plaintiffs also object to Google's characterization of its conduct as the merely "receiving" the "At Issue Data." *See* Disputed Instruction No. 6-1. Google is not merely a passive recipient of Plaintiffs' private browsing communications. The phrase "At Issue Data" is also inaccurate and unhelpful to the jury.

**Google's Statement:**

(1)     The third element Google sets forth—whether an intrusion is "highly offensive"— matches CACI 1800 (Intrusion Into Private Affairs) exactly, only adding references to "in receiving the At Issue Data" to tether the second factor to the facts of the case. Google's proposed instruction clearly describes the factors courts consider when determining this element of an Intrusion Upon

Seclusion claim. Plaintiffs' objection to the terms "receiving" and "At Issue Data" is nonsensical and should be rejected, as Google explained in Disputed Instruction No. 6-1.

(2)      Plaintiffs' instruction is based on the superseded BAJI, and is the same instruction they offer for their Invasion of Privacy claim (*see* Disputed Instruction No. 6-4). For the same reasons Google articulates there, Google respectfully requests that the Court use Google's proposed instruction.

Authorities:
- CACI 1800.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 7-4**

Harm

**Plaintiffs' Proposal:**

This right to privacy concerns one's own peace of mind. Any injury to Plaintiffs' interest in privacy, feelings, or peace of mind resulting from Google's collection, storage, and use of Private Browsing Data constitutes harm.

California law also recognizes a right to disgorgement of profits resulting from unjust enrichment. If you find that Google profited from its collection, storage, and use of Plaintiffs' Private Browsing Data, you should consider whether the circumstances are such that, as between Google and Plaintiffs, it is unjust for Google to retain those profits. If you find that Google was unjustly enriched, that also constitutes harm to Plaintiffs, even if Plaintiffs have not suffered a corresponding loss.

Plaintiffs can also demonstrate harm by proving that there is a market for their browsing data, and that Google's conduct inhibited Plaintiffs' ability to participate in that market.

**Google's Proposal**: None

**Plaintiffs' Statement:**

(1)     Plaintiffs refer the Court to their position statement on Disputed Jury Instruction No. 6-5, in connection with Plaintiffs' claims for invasion of privacy. This instruction is identical.

**Google's Statement:**

(1)     For the reasons explained in Google position statement in Disputed Instruction 6-5, the Court should reject Plaintiffs' proposed instruction because it is legally incorrect.

Authorities:
- CACI 1800.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 7-5**

<u>Substantial Factor</u>

For the [fourth / fifth] element, a substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Authority: CACI 430

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**GOOGLE'S AFFIRMATIVE DEFENSES**

**(JOINT) PROPOSED JURY INSTRUCTION NO. 8-1**

<u>Introduction</u>

Google asserts certain affirmative defenses. Google has the burden to prove these defenses by a preponderance of the evidence. Plaintiffs deny these defenses.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 8-2**

Consent / Affirmative Defense of Consent – Applies to All Claims

**Plaintiffs' Proposal:**

Google has alleged that each Plaintiff consented to its conduct. If Google proves that a Plaintiff consented to its conduct, it is not liable to that Plaintiff for violations of the California Invasion of Privacy Act (Claims 2 and 3) or for violations of the Electronic Communications Privacy Act (Claim 4). Consent is not a defense to Plaintiffs' other claims.

Consent can be express or implied. Whether express or implied, any consent must be knowing, voluntary, and actual. Google must prove that Plaintiff was explicitly notified of and consented to the specific practices at issue—here, Google's collection, storage, and use of Plaintiffs' Private Browsing Data during their visits to non-Google websites while signed out of their Google accounts. You must therefore inquire into the dimension of any consent and ascertain whether Google exceeded any boundaries of consent. If you find that Google's conduct went beyond the scope of any consent, then you must find that Plaintiffs did not consent to Google's conduct.

To establish this defense, Google must prove that the particular Plaintiff consented to Google's conduct with respect to his or her Private Browsing Data. As defined previously, Private Browsing Data means data regarding Plaintiffs' activity in a private browsing mode, on non-Google websites and while not signed in to any Google account.

Google contends that each Plaintiff expressly consented to its conduct. To prove express consent, Google must prove that the Plaintiff consented through words or in writing. In deciding whether each Plaintiff gave express consent, you should consider the circumstances surrounding the words or writing.

Google also contends that each Plaintiff impliedly consented by conduct. You may not consider this implied consent defense if you find that the parties' contract precludes Google from reducing Plaintiffs' rights without his or her "explicit consent." If you find that the parties' contract does not preclude Google from relying on an implied consent defense, then you may consider whether Plaintiffs impliedly consented. A plaintiff may impliedly consent by conduct that is

1  reasonably understood by another person as actual consent. In deciding whether Plaintiff gave

2  Google consent, you should consider the circumstances surrounding the conduct.

3      With respect to Plaintiffs' claims for violation of the Electronic Communications Privacy

4  Act (Claim 4) only, you may not find consent if Google's interception of Plaintiffs' private browsing

5  communications was for the purpose of committing any criminal or tortious act in violation of the

6  Constitution or laws or the United States or any state. Google's interception was for the purpose of

7  committing a criminal or tortious act if Google intended to use private browsing communications to

8  violate a law or statute such as the CDAFA (Plaintiffs' Claim 1), or to further invade Plaintiffs'

9  privacy (Plaintiffs' Claims 6 and 7).

10

11  **<u>Google's Proposal:</u>**

12      Consent is a defense to all of Plaintiffs' claims. Consent can be express or implied.  To prove

13  its affirmative defense of consent, Google has the burden to prove that each Plaintiff consented to

14  Google's receipt of the At Issue Data.

15      Google can prove that a Plaintiff expressly consented if Google disclosed the At Issue Data

16  collection in Google's Privacy Policy, Chrome Privacy Notice, or any other Google document that

17  you find is incorporated in the contract between the parties.

18      Google can prove that a Plaintiff impliedly consented if the surrounding circumstances

19  demonstrate that he or she was on notice that Google received the At Issue Data and continued using

20  private browsing mode. To determine whether each Plaintiff was on notice of Google's receipt of

21  the At Issue Data, you should consider whether the Plaintiff was exposed to sources of information

22  that explained that Google received the At Issue Data, such as the Google help pages linked to the

23  Incognito screen, news or academic articles or books, disclosures from websites each Plaintiff

24  visited, or other tools that show Google's receipt of the At Issue Data.

25      If you find that Google has proved that any Plaintiff expressly or impliedly consented to

26  Google's receipt of the At Issue Data, you must find against that Plaintiff for each of his or her

27  claims.

28

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

**Plaintiffs' Statement:**

(1)    Plaintiffs' proposal, unlike Google's, properly limits any consent defense to Plaintiffs' claims under the California Invasion of Privacy Act (Claims 2 and 3) and the Electronic Communications Privacy Act (Claim 4):

(a) Under black-letter law, consent is not a defense to Plaintiffs' claim for breach of contract (Claim 5). *See* CACI 330-338 (listing affirmative defenses and omitting consent). Google has all but admitted as much. In the course of Plaintiffs' rule 23(f) petition, Google effectively abandoned its purported "consent" defense and instead focused on waiver. *See* Dkt. 3 at 3, No. 22-80147 (9th Cir.), *Brown v. Google LLC*. Google also proposes instructing the jury on a waiver defense. *See* Disputed Instruction No. 8-9. Even in Google's formulation, waiver is a much more demanding standard than consent (requiring "clear and convincing evidence" that Plaintiffs relinquished contractual rights).

(b) The notion of "consent' is also inconsistent with the CDAFA (Claim 1), which requires parties to obtain *permission* before taking, copying, or using data from another person's device. Cal. Penal Code § 502(c)(2). These are distinct concepts. Permission requires words and/or actions conveyed from the purported permission-giver to the purported permission-seeker. *See In re Carrier IQ*, 78 F. Supp. 3d 1051, 1100 (N.D. Cal. 2015) (defining "permission" to mean the "act of permitting" or "a license or liberty to do something; authorization"); *Permit*, Merriam Webster (defining "permit" to mean "to consent to expressly or formally" or "to give leave"). As interpreted by the Court, consent might be established based on facts not known to the defendant, such as the fact that the claimant read an article purportedly disclosing that Google collects private browsing data. *See* Dkt. 803 at 30-32 (referring to class members' "knowledge and expectations regarding their privacy," "aware[ness] of media and academic reports discussing the privacy limitation of private browsing mode," and other similar evidence). If a defendant were able to escape liability merely by proving consent, the CDAFA's requirement that one *obtains permission* before taking, copying, or using data would be rendered ineffective.

(c) For similar reasons, consent is not a defense to Plaintiffs' claims for invasion of privacy (Claim 6) and intrusion upon seclusion (Claim 7). Under California law, these claims require proof of an *objective* expectation of privacy; there is no inquiry into each Plaintiff's state of mind. *Opperman v. Path*, 2016 WL 3844326, at *11 (N.D. Cal. Jul. 15, 2016). Incorporating a consent defense would undermine California's choice not to consider the claimant's state of mind when determining an objectively reasonable expectation of privacy. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) (reserving the possibility of tort liability even when "voluntary consent is present").

(2)    Plaintiffs' proposal, unlike Google's, also properly instructs the jury that consent is valid only if it is knowing, actual, and voluntary. CACI 1303 (consent obtained by fraud, mistake, or duress is invalid, as is limited consent that defendant exceeded). As the Court has previously

explained, Google can succeed on this defense only if it proves that the Plaintiff was explicitly notified of the precise practice to which Google contends the Plaintiff consented. Dkt. 969 (MSJ Order) at 13 ("For consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue. … In other words, consent is only effective if the person alleging harm consented 'to the particular conduct, or substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent."); Dkt. 113 (MTD Order) at 14. "The disclosures must have only one plausible interpretation for a finding of consent." *Id.* Google's instruction, by contrast, would mislead the jury to believe that mere exposure to news articles that generally speak about collection of private browsing data is enough to find consent—regardless of whether Google disputed claims in those articles, whether the Plaintiff believed in the accuracy of those articles, or whether the articles even discussed the precise practice at issue here. In the same vein, Plaintiffs' proposal, unlike Google's, requires the jury to conclude that the Plaintiff had a meaningful choice. *See* CACI 1303, 3025. Google's proposal creates a risk that the jury could find consent even if the Plaintiff had no choice and even if the Plaintiff was unaware of the full scope of Google's practice.

(3)     Plaintiffs' proposal properly instructs the jury to consider the scope of Plaintiffs' consent. CACI 1303; *see* Restatement (Second) of Torts § 892A(4). Plaintiffs' proposal tracks the Court's order denying Google's motion to dismiss. Dkt. 113 (MTD Order) at 21 (quoting *In re Google, Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). Google's proposal lacks this instruction.

(4)     Plaintiffs' proposal also properly instructs the jury to consider the explicit consent provision in Google's form contract with users. In the Privacy Policy, Google promises not to reduce its users' rights "without your explicit consent." Dkt. 83-8 at 16. The parties dispute whether this provision applies. Plaintiffs' proposal allows the jury to determine that question, and if the jury finds in Plaintiffs' favor, it instructs the jury to consider only explicit consent. Google's proposal, by contrast, usurps this decision from the jury and instead assumes that both explicit and implied consent are available notwithstanding Google's contractual waiver of any implied consent defense.

(5)     The jury should also be instructed to consider whether Google intercepted Plaintiffs' private browsing communications for the purpose of committing a criminal or tortious act. As the

Court has previously explained, if the jury makes this determination in Plaintiffs' favor, then "consent is not a defense" to Plaintiffs' claims. Dkt. 113 (MTD Order) at 20; 18 U.S.C. § 2511(2)(d). Plaintiffs allege that Google collected private browsing communications for criminal and tortious purposes, including to use private browsing data in violation of the CDAFA. In addition, Google further invades Plaintiffs' privacy by using private browsing data to create user profiles, to track conversions, and other activity. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 21 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (holding that "defendants' subsequent disclosures of the contents of the intercepted conversations for the alleged purpose of further invading the privacy of plaintiffs' staff satisfies" the exception). Google's proposal fails to offer any instruction on this exception to the availability of a consent defense.

(6)     Google's argument below, that Plaintiffs' claims relate to only to Google's "receipt or collection" of Private Browsing Data, and are unconcerned with Google's decision to store that data for long periods of time and use it to invade users' privacy—all in an effort to make billions of dollars—is complete and utter nonsense. Plaintiffs have no idea where Google got the idea that this case concerned only the moment of collection.

(7)     For reasons previously explained, Plaintiffs object to Google's proposed instructions' characterization of Google's conduct as the mere "receipt" of the "At-Issue Data." *See* Disputed Instruction No. 6-1.


**Google's Statement**:

(1)     Google's instruction correctly identifies consent as a defense to all of Plaintiffs' claims. *See, e.g.*, Dkt. 113 at 14; Dkt. 803 at 32.

(2)     Google's instruction also correctly and clearly explains how a jury should determine whether Plaintiffs expressly or impliedly consented in terms that have been adopted by California state and federal courts. For example, an implied consent defense requires a showing that "the party whose communication was intercepted was on notice that the communication would be intercepted" and is established when a user "continue[s] to use the [product at issue] despite exposure to materials

that disclose the challenged practices." *Brinkley v. Monterey Fin. Servs.*, LLC, 2022 WL 4111871, at *5 (S.D. Cal. Sept. 8, 2022); *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *10 (N.D. Cal. Mar. 30, 2023). Whereas express consent "is consent that is clearly and unmistakably stated." *Baird v. Sabre Inc*., 995 F. Supp. 2d 1100, 1103 (C.D. Cal. 2014) (citation and internal quotation marks omitted).

(3) Plaintiffs' long-winded and confusing instruction, by contrast, is incorrect as a matter of law, misleading, and prejudicial. First, Plaintiffs incorrectly seek to instruct the jury that consent is not a defense to the California Comprehensive Data Access and Fraud Act (Claim 1), breach of contract (Claim 5), invasion of privacy claim (Claim 6), and intrusion upon seclusion (Claim 7). The Court has repeatedly held that consent is a defense to all claims, Dkt. 113 at 14; Dkt. 803 at 32, a holding that is well supported by law, *see* Dkt. 82 at 9 n.8; Dkt. 659-3 at 12 & nn. 14-15; Dkt. 907-3 at 10 & n.8.

(4) Second, Plaintiffs also seek to instruct the jury that Google must show Plaintiffs "consented to Google collecting, saving, and using his or her Private Browsing Data." But for three-and-a-half years, Plaintiffs have pursued claims based on Google's *receipt or collection* of the At Issue Data. *See, e.g.*, Dkt. 886 (FAC) ¶ 192 (class defined as users "whose communications…[were] intercepted, received, or collected"); *id.* ¶ 196(c) (alleging a common question is "[w]hether Google in fact intercepted, received, or collected communications…"). To now require Google to prove consent not only as to its receipt of the At Issue Data, but also consent for Google to "sav[e]" and "us[e]" it, interjects additional requirements on Google that are divorced from Plaintiffs' claims, and therefore are prejudicial. This is particularly true for Plaintiffs' CIPA claims, which do not reference storage or use at all, *id.* at ¶¶ 218-229, and the CDAFA claim which requires "tak[ing], cop[ying], *or* mak[ing] use of any data" (emphasis added).

(5) Third, Plaintiffs purport to define "Private Browsing Data" as "private data." This is not only confusing because it conflicts with how they define Private Browsing Data in Proposed Instruction [ ] (*i.e.* "data generated when Plaintiffs used" a private browsing mode), but it is extremely prejudicial to Google. The data at issue here includes GET requests, IP address, user agent, and cookies. Calling this type of information "private data" is both prejudicial and misleading, as "private data" could include information far beyond the types of data that are actually at issue in this case (such as a person's private emails).

(6) Fourth, the way Plaintiffs describe implied consent—"conduct that is reasonably understood by another person as actual consent"—is legally incorrect. CACI 1302, the authority on which Plaintiffs presumably rely, is the form instruction for consent to assault and battery. CACI 1302 ("A plaintiff may express consent by words or acts that are reasonably understood by another person as consent."). Further, Plaintiffs' insertion of the word "actual" implies that there is some vague and undefined additional requirement to prove consent beyond what would be reasonably understood as consent. By contrast, Google's Proposed Instruction uses language to explain implied consent that is clear and fully supported by relevant case law. Additionally, Plaintiffs' next claim that "[i]n deciding whether [Plaintiffs/a non-Google website] gave consent, you should consider the circumstances surrounding the words or conduct," but never explain what that would mean (whereas Google's instruction clearly explains implied consent would mean "that he or she was on notice that Google received the At Issue Data and continued using private browsing mode."). This is confusing because Plaintiffs have defined implied consent to mean only that consent was given "by conduct." This confusion is likely explained by the fact that Plaintiffs appear to pull this language from CACI 1721, the form instruction for consent to defamation, which is not limited to implied consent and is not a claim in this case.

(7)     Fifth, Plaintiffs' description of "the specific practices at issue" is further misleading because Plaintiffs now insert the undefined term "private browsing communications." Nowhere is a private browsing communication explained, and including it is confusing where the data flow at issue has consistently been explained as Google's receipt of the At Issue Data, not private browsing communications.

(8)     Sixth, Plaintiffs seek to instruct the jury that they must consider whether the "'[p]arties' contract precludes Google from reducing Plaintiffs' rights without his or her 'explicit consent.'" That is a legal argument they made at class certification, certainly not an element of Google's consent defense. In any event, the Court has already rejected that legal argument. *See* Dkt. 803 at 31-32; *see also* Dkt. 659-3 at 15 (Google argued that "user's implied consent—*i.e.*, their choice to use a service while aware of the conduct—is neither an action by Google nor an instance of reducing the user's rights"). Additionally, the statement Plaintiffs point to appears only in Google's Privacy Policy, and states Google "will not reduce your rights *under this Privacy Policy*" without explicit consent. It does not apply to any other agreements or disclosures on which Plaintiffs base their claims, and cannot act as a general waiver of *any* implied consent or waiver defense. Moreover, the purported "promises" concerning private browsing did not appear in the Privacy Policy for the majority of the class period, and Google expressly excluded the Privacy Policy from its Terms of Service (*i.e.*, its contract with users) in March 2020, before Plaintiffs filed suit. It is proper, and necessary, to instruct the jury on Google's meritorious defense. Further, even if Plaintiffs' interpretation of the contract were deemed correct, Plaintiffs do not explain why that instruction would apply to Google's consent defense as to *all* of its claims, rather than only their claim for breach of contract.

(9)     Seventh, Plaintiffs ask the Court to instruct the jury that "any consent must be knowing, voluntary, and actual." Plaintiffs cite to CACI 1303 as purported support, but that

instruction does not contain the words "knowing," "voluntary," or "actual." While the case law does support that consent must be "actual," *see, e.g.*, *In re Google, Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013); Dkt. 969 at 13, Plaintiffs do not identify anything at all to support their addition of the terms "knowing" and "voluntary." The only other support they point to is CACI 3025, but this instruction addresses the consent to a reasonable search under the Fourth Amendment, which is not applicable here. By contrast, Google's Proposed Instruction uses language that is tied directly to the case law.

(10)     Eighth, Plaintiffs seek to add the additional requirement that Google must prove "Plaintiff was explicitly notified of and consented to the specific practices at issue." It appears Plaintiffs modified language from the Court's order on Google's motion for summary judgment, *see* Dkt. 969 at 13 ("For consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."), but each of their additions makes the sentence misleading. First, the addition of "and consented to" is circular: it asks the jury to determine whether Plaintiffs actually consented, by asking them to determine if Plaintiffs consented. Second, Plaintiffs' addition of the word "specific" implies a level of detail that is not supported by the law. As the Court noted, the question is whether Plaintiffs' "consent of Google's data collection generally is 'substantially the same' as their consent to the collection of their private browsing data in particular." Dkt. 969 at 16; *see also id.* at 13 ("consent is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct'"); Restatement (Second) of Torts § 892A (1979) § 2(b) ("consent must be…to the particular conduct, or to substantially the same conduct."). The case law does not support Plaintiffs' request to instruct the jury that they must find consent to "Google's collection, storage, and use of Plaintiffs' private browsing communications during their visits to non-Google websites while signed out of their Google accounts." Including this level of detail is likely to confuse the jury because it implies Google's disclosures must include each of these words to be adequate.

But that is not, and cannot be, the law. To the contrary, consent is adequate so long as Plaintiffs' consent is to conduct that is "substantially the same" as the conduct a jury finds was disclosed. Plaintiffs also argue that "[t]he disclosures must have only one plausible interpretation for a finding of consent." It is unclear how this supports Plaintiffs' proposed instruction because this quote is from the motion to dismiss order, and describes the standard to win on a motion to dismiss. It is completely irrelevant to a jury's determination of consent at trial.

(11)     Ninth, Plaintiffs seek to instruct the jury to "inquire into the dimension of any consent and ascertain whether Google exceeded any boundaries of consent." This appears to have come from a First Circuit case which stated, without explanation, that "'a reviewing court must inquire into the dimensions of the consent and then ascertain whether the interception exceeded those boundaries.'" *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003) (quoting *Gilday v. Dubois*, 124 F.3d 277, 297 (1st Cir. 1997)). This formulation is not only from another Circuit, but it is confusing because a juror has no way of knowing what "dimension of any consent" means, or how they determine what the dimension of any consent is. This confusion is compounded by the fact that the following sentence refers to "the scope of any consent" (presumably based on CACI 1303, the form instruction for invalid consent to assault and battery). Jurors will be left wondering if dimension and scope are intended to refer to the same thing. Further, Plaintiffs proposed instruction does not make clear that it is their burden to prove the scope of their consent (or website consent) was exceeded. *See* CACI 1303 ("If Plaintiffs prove that their consent was exceeded, then you must find that they did not consent.").

(12)     Finally, Plaintiffs' instruction as to the "criminal or tortious act" exception to the ECPA/Wiretap is prejudicial and unclear because it asks the jury to consider "Google's interception of Plaintiffs' private browsing communications." Neither the terms "interception" nor "private browsing communications" are explained, and are therefore confusing where Plaintiffs elsewhere

state that the conduct at issue is "Google collecting, saving, and using Plaintiffs' Private Browsing Data." Plaintiffs' instruction is further misleading and prejudicial because it implies that the "criminal or tortious act" exception is satisfied so long as the jury finds for Plaintiffs on their other claims. That is not the law. *See, e.g., In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12 (N.D. Cal. Dec. 22, 2022); *Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) ("[T]he focus [of the crime-tort exception] is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." (internal quotation marks omitted); *Rodriguez*, 2021 WL 2026726, at *6 n.8 (crime-tort exception "cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'") (*quoting In re Google Inc. Gmail Litigation*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014)).

Plaintiffs' instruction on consent is confusing, it is incorrect as a matter of law, and it is prejudicial. Google respectfully asks the Court to adopt Google's instruction instead because it correctly informs the jury on how to determine whether Google showed that Plaintiffs' consented to Google's receipt of the At Issue Data.

Authorities:
- Cal. Civ. Code § 3515 ("[H]e who consents to an act is not wronged by it.").
- 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where...one of the parties to the communication has given prior consent to such interception....")
- Cal. Pen. Code § 502(c) ("without permission" is an element of CDAFA claim).
- *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (defendant bears the burden of proof to establish the affirmative defense of consent).
- *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *10 (N.D. Cal. Mar. 30, 2023) (Implied consent is established when a user "continue[s] to use the applications despite exposure to materials that disclose the challenged practices.").
- *Calhoun v. Google, LLC*, 2022 WL 18107184, at *8 (N.D. Cal. Dec. 12, 2022) (holding that consent is a defense to CIPA, intrusion upon seclusion, and breach of contract claims); *id.* ("Consent may be an element of a claim but it is also an affirmative defense for which defendant bears the burden of proof") (internal quotation marks omitted).

- *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) ("The consent of one party is a complete defense" under the Federal Wiretap Act); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) ("Consent to an interception under the Wiretap Act may be either explicit or implied . . .") (citing *United States v. Poyck,* 77 F.3d 285, 292 (9th Cir.1996)).

- *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (consent bars CIPA, federal Wiretap, and Invasion of Privacy claims); *id.* ("Plaintiffs' consent . . . bars their common-law tort claims [for intrusion upon seclusion] ...."), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) .

- *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 266 (N.D. Cal. 2016) (evidence that users "heard about [the alleged wrongful practice] from somewhere and continued to use the relevant features" is enough to establish implied consent).

- *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015) ("Lack of consent is an express element of a [CIPA] claim").

- *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *14 (N.D. Cal. Aug. 13, 2015) (explaining that individualized issues of implied consent predominated where "numerous sources of information, including disclosures by Defendant . . . could have put some proposed class members and senders of 'intercepted' communications on notice of the alleged interceptions . . . ").

- *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) ("Implied consent…requires consideration of the circumstances surrounding the interception to divine whether the party whose communication was intercepted was on notice that the communication would be intercepted.").

- *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1103 (C.D. Cal. 2014) ("Express consent is consent that is clearly and unmistakably stated") (citation and internal quotation marks omitted).

- *Brinkley v. Monterey Fin. Servs., LLC*, 2022 WL 4111871, at *5 (S.D. Cal. Sept. 8, 2022) (Implied consent defense requires a showing that "the party whose communication was intercepted was on notice that the communication would be intercepted."). (quoting *In re Google Inc.Gmail Litig.*, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014)).

- *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994) ("The plaintiff in an invasion of privacy case ... must not have manifested by his or her conduct a voluntary consent.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 8-3**

Consent of Non-Google Websites / Affirmative Defense to Wiretap Act Claim – Whether Each Plaintiff or the Websites Consented to the Interception

**Plaintiffs' Proposal:**

Google also alleges that the non-Google websites with whom Plaintiffs communicated while in private browsing modes consented to Google's conduct with respect to Private Browsing Data. . As defined previously, Private Browsing Data means data regarding Plaintiffs' activity in a private browsing mode, on non-Google websites and while not signed in to any Google account. If Google proves that these non-Google websites consented, then it is not liable for Plaintiffs' claim for violations of the Electronic Communications Privacy Act (Claim 4). Website consent is not a defense to any other claim.

You may not find that non-Google websites consent if Google's interception of Plaintiffs' private browsing communications was for the purpose of committing any criminal or tortious act in violation of the Constitution or laws or the United States or any state. Google's interception was for the purpose of committing a criminal or tortious act if Google intended to use private browsing communications to violate a law or statute such as the CDAFA (Plaintiffs' Claim 1), or to further invade Plaintiffs' privacy (Plaintiffs' Claims 6 and 7).

If you do not find that Google's interception was for the purpose of committing a criminal or tortious act, then you must determine whether each non-Google website gave express or implied consent. Whether express or implied, any consent must be knowing, voluntary, and actual. Google must prove that the particular non-Google website was explicitly notified of and consented to the specific practices at issue—here, Google's collection, storage, and use of Plaintiffs' private browsing communications during their visits to non-Google websites while signed out of their Google accounts. You must therefore inquire into the dimension of any consent and ascertain whether Google exceeded any boundaries of consent. If you find that Google's conduct went beyond the scope of any consent, then you must find that the non-Google website did not consent to Google's conduct.

A non-Google website may expressly consent by words or writing or impliedly consent by conduct that is reasonably understood by another person as consent. In deciding whether a non-Google website gave consent, you should consider the circumstances surrounding the words or conduct.

**Google's Proposal**:

This instruction applies only to Plaintiffs' Claim 4, Wiretap Act.

It is not unlawful for a person to intercept a communication when one of the parties to the communication has given prior consent to such interception, unless the communication was intercepted for the purpose of committing any criminal or wrongful act in violation of the law.

The burden is on Google to prove that one of the parties to the communication did in fact give prior consent to Google to intercept it. The parties to the communication in this case are Plaintiffs and each of the websites they visited in private browsing mode while signed out of their Google Accounts. Google has offered evidence that both of the parties to the communication in this case consented to its interception. However for purposes of Plaintiffs' Claim 4, Wiretap Act, you must find for Google if you find that Google had the consent of either each Plaintiff or the websites they visited to intercept the communication, unless each Plaintiff proves that the purpose of the interception was to commit a criminal or wrongful act in violation of the law. In determining whether Plaintiffs or the websites they visited consented, you should consider the explanations of express and implied consent in Jury Instruction No. 8-2.

**Plaintiffs' Statement**:

(1)      Plaintiffs' proposed instruction largely mirrors their proposal for Disputed Jury Instruction No. 8-2, regarding Plaintiffs' consent. The concept of consent is the same whether it applies to Plaintiffs or non-Google websites. Plaintiffs therefore refer the Court to their statement with respect to Disputed Jury Instruction No. 8-2.

(2)      Plaintiffs further object to Google's proposal because it instructs the jury to consider the same consent twice. In Disputed Jury Instruction No. 8-2, both parties propose instructing the

jury on Google's assertion that each Plaintiff consented. In the present jury instruction, Google proposes instructing the jury to consider not only whether non-Google websites consent to its conduct, but also—for a second time—whether each Plaintiff consented. This is likely to confuse the jury, create inefficiencies, and give Google two bites of the apple. Instead, the jury should be instructed once on Plaintiffs' consent and once on non-Google websites' consent.[6]

(3)      Google's proposed instruction also improperly puts a thumb on the scale in Google's favor. Instructing the jury that "Google has offered evidence that both parties to the communication in this case consented to its interception" creates a substantial risk that the jury will believe this defense is established as a matter of law, or that Your Honor favors Google's position. This instruction serves absolutely no purpose: The jury is perfectly capable of determining for itself whether Google has presented evidence to support its defenses. This language does not appear in a single other instruction that the parties offer. No instruction should include this language.

(4)      Plaintiffs further object to Google's characterization of Plaintiffs' fourth claim as arising under the "Wiretap Act." As explained above, *see* Disputed Instruction No. 4-1, the proper name of the act under which Plaintiffs' claim—which relates to electronic communications—is the Electronic Communications Privacy Act. Using multiple names for a single Act would be confusing to the jury.

**Google's Statement:**

(1) Google's proposed instruction is closely modeled after Judge Sand's Model Instruction 92-8, including the sentence that "Defendant has offered evidence that one of the parties consented to the interception of the communication." This instruction correctly, succinctly, and impartially explains the law: consent is an affirmative defense exempting Google from liability under the

---

[6] Google's suggestion below that any instruction should make clear that if the jury finds website consent, it need not determine whether the Plaintiff consented is deeply misguided. The nature of affirmative defenses is often that success on one would obviate the need to consider another. Followed to its logical conclusion, Google's position may require each instruction on an affirmative defense to include an instruction on *each and every* affirmative defense, whether related to consent or otherwise.

Wiretap Act and Google can establish consent by showing either that Plaintiffs or the websites they visited consented to Google's receipt of the At Issue Data. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12 (N.D. Cal. Dec. 22, 2022) (no Wiretap Act liability because "healthcare providers who configured [Meta's code] on their websites presumably consented to Meta's receipt of the information"); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (no liability under Wiretap Act where one party consents). The instruction further appropriately explains that Google may still be liable if Plaintiffs establish that the purpose of the interception was to commit a criminal or wrongful act. *See* 18 U.S.C. § 2511(2)(d).

(2) Plaintiffs' instructions are problematic for the reasons explained in Google's statement regarding Instruction No. [X]. Further, unlike Google's proposed instruction, Plaintiffs' version does not make clear that if the jury finds that the websites consented, they do not need to decide if Plaintiffs also consented. Plaintiffs' instructions imply that Google must prove that both Plaintiffs and non-Google websites consented, when the opposite is true.

(3) Google's reference to the fourth claim as one under the Wiretap Act is proper for the reasons explained in Google's statement regarding Instruction No. [X].

Authorities:

- Adapted from Sands, J. Instructions re: (Instr. 92-8)
- 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.").
- *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12 (N.D. Cal. Dec. 22, 2022) (no Wiretap Act liability because "healthcare providers who configured [Meta's code] on their websites presumably consented to Meta's receipt of the information").
- *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (no liability under Wiretap Act where one party consents).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 8-4**

<u>Affirmative Defense: Whether Google's Invasion of Privacy Was Justified</u>

**Plaintiffs' Proposal:**

This instruction applies only to Plaintiffs' claims for invasion of privacy (Claim 6) and intrusion upon seclusion (Claim 7).

An invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion was justified because it substantively furthered one or more legitimate and important countervailing interests. Countervailing means of equal value, importance or significance. In making this determination, you must compare the interests the Plaintiffs have asserted in privacy with the competing non-privacy interests supporting Google's conduct. This comparison process requires you to balance these competing interests, and determine whether the non-privacy interests are as important or significant as Plaintiffs' privacy interests.

You should also consider whether it has been established that there were feasible and effective alternatives to Google's conduct which would have had a lesser impact on Plaintiffs' privacy interests. If there were such alternatives, Google's conduct was not justified.

Google has the burden of establishing all the facts necessary to prove the invasion of privacy was justified because it substantially furthered one or more countervailing interests. Plaintiffs, in turn, may rebut an assertion of countervailing interests by showing that there were feasible and effective alternatives to Google's conduct which would have had a lesser impact on the Plaintiffs' privacy interests.

**Google's Proposal:**

This instruction applies only to Plaintiffs' Claims 6 and 7, Invasion of Privacy and Intrusion Upon Seclusion. Even if any Plaintiff has proven all of the elements of those claims, Google will not be liable to any Plaintiff if Google's conduct was justified. To succeed on this defense, Google must show that the circumstances justified the intrusion.

Google can prove that its conduct was justified by demonstrating that its conduct substantially furthered one or more legitimate competing interests or countervailing purposes, such as the following:

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

a) Providing non-Google websites with the ability to earn revenue from advertisements, which allows those websites to offer content to users without charging them;

b) Providing non-Google websites with tools to monitor and analyze internet use on their sites, which allows those websites to provide an improved experience for users who navigate to their sites;

c) Creating an economically viable system that enables Google to invest in free services and products like Gmail, Google Maps, YouTube, and more;

d) Respecting the freedom of Google's competitors, which Google neither owns nor controls, to design and operate their own private browsing modes of browsers like Safari, Firefox, and Edge.

e) Complying with industry standards that call for developers of browsers to design their private browsing modes to function in a way that does not reveal the use of private browsing modes to websites.

If Google proves that its conduct was justified, then you must find for Google, unless each Plaintiff proves with substantial evidence that there was a practical, effective, and less invasive method of achieving one or more legitimate competing interests or countervailing purposes.

**Plaintiffs' Statement:**

(1) Plaintiffs' proposal is materially identical to Book of Approved Jury Instructions 7.25.2, concerning the defense of justification. This instruction has several advantages over Google's proposal, which appears to be loosely based on CACI 1807:

(2) *First*, Plaintiffs' proposal makes clear that an invasion of privacy or intrusion upon seclusion is justified only if it is *outweighed* by competing interests that could not be achieved in a less-intrusive manner. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 288 (2009) (describing this defense as a "balancing function"); *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 236-38, 242 (1998) (whether the legitimate interest in newsgathering is sufficient justification depends on severity of the intrusion). A jury could erroneously interpret Google's proposed instruction (especially the second paragraph) to mean that *any* invasion of privacy, no matter how severe, is justified as long as it substantially furthers *any* legitimate competing interest. CACI 1807 itself creates this risk, which Google's proposal exacerbates by modifying the pattern language. *Compare* CACI 1807 (defense must be established by evidence that "*circumstances justified* the invasion of

privacy because the invasion of privacy substantially furthered" a competing interest) *with* Google's Proposal (arguably suggesting that invasion "*[i]s justified*" if Google "demonstrate[es] that [Google's] conduct substantially furthered one or more legitimate competing interests or countervailing purposes").

(3)     *Second*, Plaintiffs' proposal leaves to the jury all determinations concerning identification of relevant competing interests and the importance of those interests. Google's proposal requires the Court to decide which interests the jury should be instructed to weigh, imbuing those with the Court's stamp of approval. The accompanying risk of legal error can be avoided by a more general instruction, which Plaintiffs propose. The parties should be permitted to make arguments concerning the relevant countervailing interests (if any), without the appearance that Your Honor favors one party's argument.

(4)     *Third*, Google's proposed instruction identifies various interests that are not the sort that would justify an invasion of privacy or intrusion upon seclusion. To justify an injury to a person's civic rights (e.g., to privacy), the defendant should identify a countervailing civic interest. In *Shulman v. Group W Productions*, for example, the Supreme Court of California discussed the circumstances in which an invasion of privacy might be justified by First Amendment interests in newsgathering and reporting. 18 Cal. 4th 200, 236-37 (1998). Google improperly proposes instructing the jury to weigh Plaintiffs' injuries against Google's commercial interests, not interests "of weighty public concern." *Id.* at 237.

**Google's Statement:**

(1)     Google's version of the instruction closely follows CACI 1807 (Affirmative Defense - Invasion of Privacy Justified), with minor modifications to identify the claims to which it applies.   It is a correct statement of the law and a necessary instruction for the jury. And, as contemplated by CACI 1807, Google advises the jury that liability is precluded if they find that Google's conduct was justified, and then succinctly lists the relevant competing interests on which it plans to provide evidence and argument. *See* CACI 1807 ("*insert relevant legitimate competing interest*") (italics in original).

(2) Plaintiffs' proposed instruction ignores the model language of CACI 1807 and instead inexplicably follows the decommissioned BAJIs. A closer inspection of Plaintiffs' language shows it is deficient for several reasons. Their argumentative clarification of "countervailing" is not supported by any authority (other than the decommissioned BAJI). Unsurprisingly, it is erroneous. Plaintiffs claim that Google must prove the intrusion was "outweighed by competing interests that could not be achieved in a less-intrusive manner." That is incorrect and is neither supported by the case law Plaintiffs cite nor the decommissioned BAJI. Instead, Google must show only that there are countervailing justifications for the purported intrusion. *Hill v. Nat. Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 40 (1994) ("A defendant defeats a plaintiff's privacy claim…by showing 'that the invasion of privacy is justified because it substantially furthers one or more countervailing interests.'"). It is *Plaintiffs'* burden to demonstrate practical, effective, and less invasive alternatives.

(3)     Plaintiffs' failure to list Google's competing interests will leave the jury with no context for interpreting Google's evidence on this defense. The CACI clearly contemplates identifying those interests for the jury, and Google has appropriately done so.  Plaintiffs' related argument that the listed competing interests "are not the sort that would justify an invasion of privacy or intrusion upon seclusion" is wrong. In *Hill*, the California Supreme Court listed interests such as "impair[ing] the NCAA's reputation in the eyes of the sports-viewing public" and "safeguarding the integrity of intercollegiate athletic competition." 7 Cal. 4th at 46. The *Hill* court also discussed approvingly another case where the interest at issue was a "financial interest in horse racing revenues." *Id. Shulman*, the case relied upon (and misleadingly quoted) by Plaintiffs, does not provide otherwise. Although the legitimate interest in that case was "gathering the news," the court said nothing that would limit relevant competing interests to constitutional or "civic" ones. The court merely noted that when considering countervailing interests, a constitutional interest may justify a more serious intrusion of privacy, but even an interest in gathering news about an issue of

"weighty public concern" may not justify "trespass into a home." 18 Cal. 4th 200, 237 (1998), *as modified on denial of reh'g* (July 29, 1998).

- CACI 1807.
- *Hill v. Nat. Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 40 (1994) (To prevail on an invasion of privacy claim, a plaintiff must show: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." A defendant defeats a plaintiff's privacy claim either by 'negating any of the three elements' or by showing 'that the invasion of privacy is justified because it substantially furthers one or more countervailing interests.'"); *see also id.* at 51 ("Because plaintiffs failed to demonstrate with substantial evidence the presence of fully viable alternatives to monitoring, they stopped short of proving their case.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

## (DISPUTED) JURY INSTRUCTION NO. 8-5

<u>Statute of Limitations</u>

For each claim, Google asserts a statute of limitations defense. [Google alleges that Plaintiffs' damages should be limited to the time periods after certain dates, which I will describe in a moment. / Google contends that portions of Plaintiffs' claims were not filed within the time set by law.] To succeed on this defense, Google must prove that at least some of each Plaintiff's claimed harm occurred before the following dates for each claim:

- Claim 1: CDAFA: **June 2, 2017**

- Claims 2 and 3: CIPA §§ 631 and 632: **June 2, 2019**

- Claim 4: ECPA: **June 2, 2018**

- Claim 5: Breach of Contract: **June 2, 2016**

- Claims 6 and 7: Invasion of Privacy and Intrusion Upon Seclusion: **June 2, 2018**

**Plaintiffs' Statement:**

(1)      On this instruction, the parties have one fundamental dispute: Whether the statute of limitations can provide a complete defense to liability in this case. It plainly cannot. The California Supreme Court, the Ninth Circuit, and the Court in this very case have each explained that "separate, recurring invasions of the same right each trigger their own separate statute of limitations." Dkt. 113 (MTD Order) at 24; *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013) ("[W]e have long settled that separate, recurring violations of the same right can each trigger their own statute of limitations."); *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020) (holding that "each interception is a discrete violation" with its own statute of limitations). The undisputed evidence shows that each Plaintiff used private browsing modes after each date identified above. With respect to Google's collection of private browsing data after these dates, Plaintiffs' claims are obviously timely. Google's argument that it can escape *all* liability simply because it intercepted *some* communications prior to the limitations period is legally meritless and has already been rejected.

Dkt. 113 at 24 (rejecting Google's argument that "Plaintiffs' claims are barred … because Plaintiffs allege that Google has been intercepting their communications since" before the limitations period).

**<u>Google's Statement</u>:**

(1)    The parties have one significant disagreement regarding this instruction: Plaintiffs have altered CACI 454 to suggest a statute of limitations defense merely limits damages to a particular time period, rather than bars those claims (or portions of claims) that are untimely outright. Google's instructions correctly states that Google has no liability for the claims that occurred outside the limitations period—while recognizing that the portion of the claims accruing within the limitations period remains. Plaintiffs' alteration is an incorrect statement of the law—unsurprisingly, they cite nothing to support it. The Court should adopt Google's instruction, which is the substantively unmodified CACI 454, and an undoubtedly correct statement of the law.   *See, e.g.*, *Deutsch v. Turner Corp.*, 324 F.3d 692, 717 (9th Cir. 2003) ("the forum will dismiss a claim that is barred by its statute of limitations").

Authorities:

- CACI 454.
- 18 U.S.C. § 2520(e) (stating that the statute of limitations for Plaintiffs' Wiretap Act claim is "two years after the date upon which the claimant first has a reasonable opportunity to discover the [cause of action].")
- *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ("Under the CIPA, the applicable statute of limitations is one year.").
- Cal. Pen. Code § 502(e)(5) (explaining the statute of limitations for plaintiffs' CDAFA claim is "three years of the date of the act complained of, or the date of the discovery of the damage, whatever is later.").
- Cal. Civ. Proc. Code § 335.1 (setting a two-year limitations period for intrusion upon seclusion and invasion of privacy claims).
- *Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 670 (9th Cir. 2005) (explaining that, as of 2003, invasion of privacy is subject to a two year limitation period).
- Cal. Civ. Proc. § 337(a) (establishing a four year statute of limitations for breach of contract claims).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

# (JOINT) PROPOSED JURY INSTRUCTION NO. 8-6

## Tolling – Delayed Discovery

If Google proves that a portion of a Plaintiff's claimed harm for each claim occurred before the corresponding dates listed in the Instruction above, that Plaintiff's claim with respect to that portion was still filed on time if the Plaintiff proves that before that date, he or she did not discover, and did not know of facts that would have caused a reasonable person to suspect, that he or she had suffered harm that was caused by someone's wrongful conduct.

**Google's Statement:**

Authority: CACI 455.


DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 8-7**

<u>Tolling – Fraudulent Concealment</u>

In addition, for any Plaintiff, and for all claims, you must also reject Google's statute of limitations defense if you find that Google fraudulently concealed the existence of Plaintiffs' claims. Plaintiffs bear the burden of proving fraudulent concealment. [There are three requirements / Plaintiffs must show that, before the corresponding dates listed in the instruction above]:

> (1) Google took affirmative acts [to mislead Plaintiffs / with the intent to prevent Plaintiffs from discovering that he or she had suffered harm that was caused by someone's conduct];
>
> (2) [Plaintiffs did not have actual or constructive knowledge of the facts giving rise to their claims / As a result of Google's affirmative acts, he or she did not discover, and did not know of facts that would have caused a reasonable person to suspect, that he or she had suffered harm that was caused by someone's wrongful conduct]; and
>
> (3) Plaintiffs acted diligently in trying to uncover the facts giving rise to their claims.

**Plaintiffs' Statement:**

(1)     The Court has previously determined to be an independent basis for tolling the statute of limitations. *See* Dkt. 113 (MTD Order) at 25-27. Plaintiffs' proposed elements of fraudulent concealment have also been previously embraced by this Court and others; the proposal tracks them closely. *See id.* at 25; *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015); *Cover v. Windsor Surry Co.*, 2015 WL 4396215, at *4 (N.D. Cal. July 17, 2015). Google's proposal, by contrast, deviates from the simpler language prior orders in this case, in favor of a far more complicated and wordy instruction that the jury may well struggle to follow.

**Google's Statement:**

(1)     Plaintiffs' proposed instruction improperly suggests that the delayed discovery rule and fraudulent concealment doctrine are completely distinct. They are not. These doctrines are "close cousin[s]," *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994), and courts often "deem them equivalent," *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1029 (2000).

In the context of jury instructions, Courts have noted that "the only material difference between them is that with fraudulent concealment, the delayed discovery must be the result of the defendant's intentionally preventing the plaintiff from instituting suit." *Williams v. Sun Microsystems, Inc.*, 2007 WL 2254301, at *16 (Cal. Ct. App. Aug. 7, 2007) (citing *Pashley v. Pac. Elec. Co.*, 25 Cal. 2d 226, 231–32 (1944)). Unlike *Williams*, none of the authorities Plaintiffs cite involve jury instructions.

(2)    *Bernson* and its progeny make clear that fraudulent concealment requires a plaintiff to prove the same elements as delayed discovery *and* show that the delayed discovery is the result of the defendant's intentional acts. *Williams*, 2007 WL 2254301 at *16. Google's proposed instruction closely tracks these requirements by adding the requirements of intent and causation to Plaintiffs' proposed instruction and revising the language of the second element to mirror CACI 455.

Authority: CACI 455.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 8-8**

Affirmative Defense – Limitation of Liability

**Plaintiffs' Proposal:** None

**Google's Proposal:**

This instruction applies only to Plaintiffs' Claim 5, Breach of Contract. Even if any Plaintiff has proven all the elements of Breach of Contract, Google will not be liable for that claim if either contract exculpates Google for its conduct. Google claims that Contract 1 and Contract 2 expressly relieve Google from any liability for receipt of the At Issue Data.

You must decide whether the following statements from the contract (Google's Terms of Service) preclude liability for Google's receipt of the At Issue Data during the corresponding time period.

| Statement | No Liability Time Period |
|---|---|
| **Statement 1**: "When permitted by law, Google, and Google's suppliers and distributors, will not be responsible for lost profits, revenues, or data, financial losses or indirect, special, consequential, exemplary, or punitive damages." (April 14, 2014 Google Terms of Service). | If you find that **Statement 1** limits Google's liability, you must find that Google was not liable for receipt of the At Issue Data between **June 1, 2016 to October 24, 2017**. |
| **Statement 2**: "When permitted by law, Google, and Google's suppliers and distributors, will not be responsible for lost profits, revenues, or data, financial losses or indirect, special, consequential, exemplary, or punitive damages . . . In all cases, Google, and its suppliers and distributors, will not be liable for any loss or damage that is not reasonably foreseeable." (October 25, 2017 Google Terms of Service). | If you find that **Statement 2** limits Google's liability, you must find that Google was not liable for receipt of the At Issue Data between **October 25, 2017 and March 30, 2020**. |
| **Statement 3**: "The only commitments we make about our services (including the content in the services, the specific functions of our services, or their reliability, availability, or ability to meet your needs) are (1) described in the Warranty section, (2) stated in the service-specific additional terms, or (3) provided under applicable laws. We don't make any other commitments about our services. And unless required by law, we don't provide implied warranties, such as the implied warranties of merchantability, fitness for a particular purpose, and non- | If you find that **Statement 3** limits Google's liability, you must find that Google was not liable for receipt of the At Issue Data between **March 31, 2020 and January 4, 2022**, to the extent the limitation applies. |

-226-

| | |
|---|---|
| infringement….Other than the rights and responsibilities described in this section (In case of problems or disagreements), Google won't be responsible for any other losses, unless they're caused by our breach of these terms or service-specific additional terms." (March 31, 2020 Terms of Service). | |
| **Statement 4**: "We built our reputation on providing useful, reliable services like Google Search and Maps, and we're continuously improving our services to meet your needs. However, for legal purposes, we offer our services without warranties unless explicitly stated in our service-specific additional terms. … TO THE EXTENT ALLOWED BY APPLICABLE LAW, WE PROVIDE OUR SERVICES 'AS IS' WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. FOR EXAMPLE, WE DON'T MAKE ANY WARRANTIES ABOUT THE CONTENT OR FEATURES OF THE SERVICES, INCLUDING THEIR ACCURACY, RELIABILITY, AVAILABILITY, OR ABILITY TO MEET YOUR NEEDS. …To the extent allowed by applicable law: Google is liable only for its breaches of these terms or applicable service-specific additional terms[.] Google isn't liable for: []loss of profits, revenues, business opportunities, goodwill, or anticipated savings[,] indirect or consequential losses[,] punitive damages…." (January 5, 2022 Terms of Service). | If you find that **Statement 4** limits Google's liability, you must find that Google was not liable for receipt of the At Issue Data between **January 5, 2022 and the present**, to the extent the limitation applies. |

**Plaintiffs' Statement**:

(1)      Plaintiffs object to this instruction, which has no basis in any pattern instruction of which Plaintiffs are aware. There is no such thing as a *complete* "limitation of liability" defense to a contract claim, of the type that Google asserts here. As the words suggest, limitations of liability *limit* liability; they do not negate it entirely: Contractual obligations either exist or they do not: It would not make sense to conclude that a contract simultaneously imposes an obligation on one party and waives the counterparty's right to performance of that obligation. Google effectively seeks a second bite at the apple on breach. That is, Google's proposal instructs the jury on its preferred provisions in the contract, which it claims to relate to its obligations. If the Court instructs the jury on Google's preferred portions of the contract, then it should also instruct the jury on Plaintiffs'

1  preferred portions of the contract. But specifically identifying each provision that one party prefers

2  would be unwieldy and impractical.

3      (2)    Plaintiffs further object to this instruction because these provisions would be

4  unconscionable (and therefore unenforceable) if interpreted to bar Plaintiffs from recovering any

5  form of damages for breach of contract. "The Ninth Circuit has held that a contract is procedurally

6  unconscionable under California law if it is a standardized contract, drafted by the party of superior

7  bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the

8  contract or reject it." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113,

9  1136-37 (N.D. Cal. 2018). Here, exactly as in *In re Yahoo!*, the "liability limitations appear near the

10  end of the 12-page legal Terms of Service document where the Terms of Service are contained in

11  an adhesion contract and customers may not negotiate or modify those terms." *Id.* Google's

12  interpretation would also render the clauses substantively unconscionable because they would

13  preclude "nearly every type of damages" for breach of contract. *Silicon Valley Self Direct, LLC v.*

14  *Paychex, Inc.*, 2015 WL 4452372, at *6 (N.D. Cal. Jul. 20, 2015). "California courts have …

15  concluded that limitations are substantively unconscionable when they guarantee[] that plaintiffs

16  could not possibly obtain anything approaching full recompense for their harm." *In re Yahoo*, 313

17  F. Supp. 3d at 1137. Google contends that Plaintiffs failed to allege in their complaint that this

18  limitation of liability is unconscionable, but black-letter law provides that a complaint need not

19  anticipate and rebut the defendant's affirmative defenses.

20      (3)    Google's proposed instruction also fails to explain to the jury that by operation of

21  law and the plain text of the parties' contract, these provisions cannot absolve Google of liability

22  for gross negligence or willful misconduct. *See, e.g.*, Cal. Civ. Code § 1668; Google's Terms of

23  Service (Jan. 5, 2022), https://policies.google.com/terms?hl=en-US. Google's conduct in this case

24  is certainly willful: Even Google cannot contend that it collected Private Browsing Data by mistake.

25      (4)    Plaintiffs further object to Statements 1 and 2 in Google's proposal, which on their

26  face could apply only to damages, not liability. That language cannot reasonably be construed to

27  limit Google's contractual obligations, and the jury should not be led astray into believing those

28

statements can be construed that way. Even with respect to damages, the instructions on these statements are deeply flawed for reasons discussed below. *See* Disputed Instruction No. 9-8.

(5)     Plaintiffs also object to Statements 3 and 4 because those provisions acknowledge that Google should be held liable for breaching "these terms or service-specific additional terms." The reference to "these terms" means the Terms of Service, and this Court has already ruled that there is at least a triable issue on whether the post-March 2020 Privacy Policies and other documents are incorporated in the Terms of Service. Dkt. 969 at 18. In addition, the "service-specific additional terms" include the Chrome Privacy Notice. The upshot is that even these provisions acknowledge that Google can be liable for breaching its contractual commitments, but Google's proposed instruction would suggest to the jury that if the provisions apply, then Google is entirely off the hook.

(6)     Plaintiffs also object to Statements 3 and 4 (taken from the March 2020 and January 2022 versions of the Terms of Service) because Google omitted those provisions from the relevant portion of its Answer. Google cited the 2014 and 2017 versions of the Terms of Service (Statements 1 and 2) without citing the March 2020 and January 2022 versions (Statements 3 and 4). *See* Dkt. 531 at 33-35. Google thus waived any reliance on Statements 3 and 4. *See Borges v. Cnty. of Humboldt*, 2017 WL 4552006, at *2 (N.D. Cal. Oct. 12, 2017) (Gonzalez Rogers, J.) (affirmative defense "deemed waived" where, as here, the defendants "failed to assert [the defense] in their answer" and "waited until the eve of trial to raise the [] defense"); *Armacost v. Depuy Synthes Sales, Inc.*, 2018 WL 11471582, at *4 (N.D. Cal. June 7, 2018) (Gonzalez Rogers, J.) (defendants "waiv[]ed that affirmative defense" by "not rais[ing] [it] as a defense" in their Answer).

(7)     Plaintiffs further object to Google's proposed instructions on all four statements because they would misinform the jury with respect to the effect of the clauses. For example, Statement 1 purports to *limit* Google's liability only for *certain types* of damages, but Google proposes instructing the jury that any such limitation of Google's liability means that Google *is not liable whatsoever.* Google's instruction is legally erroneous.

(8)      For reasons explained elsewhere, *see, e.g.*, Disputed Instruction No. 6-1, Plaintiffs also object to any instruction that characterizes Google's conduct as the mere "receipt" of "At Issue Data."

**Google's Statement:**

(1)      Google's instruction should be given because it is based on case law and accurately instructs on Google's asserted affirmative defense of contractual exculpation. *See Carbajal v. HSBC Bank U.S.A., N.A.*, 2017 WL 7806585, at *13 (C.D. Cal. Apr. 20, 2017) (holding that exculpatory clause applies to bar breach of contract claim); Dkt. 531 (Answer) at 33. This instruction clearly lists each of the statements from the parties' contract that Google contends exculpates it from liability for the alleged misconduct and the corresponding time period that each statement covers. The jury must interpret each statement to determine if Google has proven its defense. *See Garcia v. D/AQ Corp.*, 57 Cal. App. 5th 902, 907–08 (2020) ("The question whether an exculpatory clause covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control."). Plaintiffs' arguments to the contrary are meritless.

(2)      Plaintiffs claim there is no such thing as exculpatory clauses for limiting liability for breach of contract. They are wrong. "Limitation of liability clauses have long been recognized as valid in California." *Lewis v. YouTube*, 244 Cal. App. 4th 118 (2015) (internal citations omitted). California courts have held that "[l]imitation of liability provisions are particularly important where," as here, "the beneficiary of the clause is involved in a high-risk, low-compensation service." *Markborough Cal., Inc. v. Sup. Ct.*, 227 Cal. App. 3d 705, 714 (1991); *see also Darnaa, LLC v. Google*, 756 F. App'x 674, 676 (9th Cir. 2018) (affirming dismissal of breach of contract claim based on limitation of liability provision and explaining that "[b]ecause YouTube offers its video streaming services at no cost to the user, it has a valid commercial need to limit liability for actions taken to regulate its platform"); *Murphy v. Twitter*, 60 Cal. App. 5th 12, 36 (2021) (recognizing that

"service providers that offer free services to Internet users[,] may have a legitimate commercial need to limit their liability"); *Lewis*, 244 Cal. App. 4th at 125-26 (limitation of liability provision "appropriate when one party is offering a service for free to the public"); *Food Safety Net Servs. v. Eco Safe Sys.*, 209 Cal. App. 4th 1118, 1126 (2012) (limitation of liability clauses "have long been recognized as valid in California").

(3)     Plaintiffs belatedly raise an unconscionability argument.  The unconscionability doctrine requires a plaintiff to allege facts showing that the term is both procedurally and substantively unconscionable. *Integrated Storage Consulting Servs. v. NetApp*, 2013 WL 3974537, at *4 (N.D. Cal. July 31, 2013) ("An allegation of unconscionability requires the pleader to state facts relevant to the contract provision's 'procedural' and 'substantive' unconscionability."). Their Fourth Amended Complaint fails to do so; indeed, it does not even reference the disclaimer and limitation of liability provisions. This alone requires Plaintiffs' unconscionability argument be rejected outright. Even if the Court considers the unconscionability arguments, they do not fare better. Plaintiffs argue that standardized form contracts are procedurally unconscionable per se. That is incorrect. There is no "rule that an adhesion contract is per se unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261–62 (9th Cir. 2017). To the contrary, "[o]rdinary contracts of adhesion . . . are indispensable facts of modern life that are generally enforced." *Baltazar v. Forever 21*, 62 Cal. 4th 1237, 1244 (2016); *see also AT&T Mobility v. Concepcion*, 563 U.S. 333, 346-47 (2011) ("the times in which consumer contracts were anything other than adhesive are long past"); *Murphy v. Twitter*, 60 Cal. App. 5th 12, 37 (2021) ("The fact that Murphy had no opportunity to negotiate the terms of service, standing alone, is insufficient to plead a viable unconscionability claim."). And contrary to *Silicon Valley Self Direct v. Paychex*, 2015 WL 4452373, at *1 (N.D. Cal. July 20, 2015), where limitation of liability provision precluded "nearly every type of damages claim" and "ha[d] no other purpose than to maximize [a payroll company's] advantage" over its

client staffing company, Google appropriately limits this affirmative defense to the breach of contract claim.

(4)  Plaintiffs also claim this instruction must state that "these provisions cannot absolve Google of liability for gross negligence or willful misconduct," but of course there is no gross negligence claim here. And Section 1668 does not allow a contractual limitation of liability for "willful injury to the person or property of another," but here there is no claim for willful injury to the person or property. Google's proposal appropriately clarifies this defense only applies to the breach of contract claim.

(5)  Plaintiffs are incorrect that Statements 1 and 2 cannot reasonably be interpreted to limit liability, as opposed to damages. That "Google . . . will not be responsible for" certain harms like loss of profits or loss of data goes as much to liability as damages, where the putative liability is based on such a loss. If Google is "not . . . responsible for" a putative harm, that harm cannot be a basis for liability. In any event, Google's proposed instruction makes it clear that the jury need not find that these provisions limit liability, and Plaintiffs are free to argue to the jury that they are limitations of damages only.

(6)  Plaintiffs argue that Google's proposed instructions in connection with Statements 3 and 4, gives the jury the impression that if any limitation on liability applies, Google cannot be liable at all. Google has amended its proposed instructions in connection with Statements 3 and 4 to make clear that the jury should limit Google's liability to the extent of the limitation. For instance, if the jury finds that Plaintiffs have met their burden to show breach of contract based on a warranty that Google has disclaimed, the express limitation in Statement 4 would bar a finding of liability for the putative breach. Importantly, to the extent the jury finds that Plaintiffs have met their burden to establish a breach based on a document other than the Terms of Service or other service-specific terms, then Plaintiffs' argument that "even these provisions acknowledge that Google can be liable

for breaching its contractual commitments"—which refer only to the commitments in the Terms of Service and service-specific terms—is irrelevant.

(7)     Plaintiffs incorrectly argue that Google waived reliance on Statements 3 and 4 because it did not specifically cite the March 2020 or January 2022 Terms of Service in its Answer. Google's Answer stated that "Plaintiffs explicitly exculpated Google for the conduct alleged through their contractual agreements with Google," and cited (under a "*see, e.g.*," signal) Google's April 14, 2014 Terms of Service and October 25, 2017 Terms of Service. *See* Dkt. 531 at 33. In context, it is evident that Google's defense encompassed the express exculpatory language in *all versions* of its Terms of Service applicable during the class period. Moreover, Google's March 9, 2022 Supplemental Response to Plaintiffs' Interrogatory No. 40 (requesting "the factual bases for . . . affirmative defenses that Google has asserted") cites and quotes the March 2020 Terms of Service. Google in no way "failed to plead" a defense, much less "until the eve of trial." At most, Plaintiffs argue that Google's fully-pled defense did not expressly reference every individual exculpatory statement in the relevant contracts—despite making it clear that it encompassed all such exculpatory language in Google's Terms of Service. That is a far cry from the authority Plaintiffs cite, which refers to affirmative defenses that were not pled at all. In any event, Plaintiffs cannot claim to be prejudiced by a purported failure to identify in Google's Answer *each version* of the contracts on which *Plaintiffs* base their claims, all of which Plaintiffs purport to have read in full.

(8)     Plaintiffs also quarrel with the proper interpretation of these exculpatory clauses. But that is a question for the jury. The Parties have not previously addressed the application of these provisions through legal briefing. However, Plaintiffs argued for the first time during the meet and confer process that the application of these provisions to the facts of this case should be determined by the Court as a matter of law. Unless and until the Court determines whether or not the meaning of these provisions, and whether they limit Google's liability here, are to be decided as a matter of

law, the jury must be instructed on Google's affirmative defense and how to make that determination themselves. In any event, Plaintiffs are incorrect that Statement 1 limits Google's liability only in circumscribed circumstances, that do not cover all of their claims. A limitation of liability for, *inter alia*, loss of data, encompasses Plaintiffs' claims (which allege Google obtained Plaintiffs' data in breach of contract) in their entirety.

Authorities:

- *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) (limitation of liability clause bars a breach of contract claim).
- *Carbajal v. HSBC Bank U.S.A., N.A.*, 2017 WL 7806585, at *13 (C.D. Cal. Apr. 20, 2017) (holding that exculpatory clause applies to bar breach of contract claim).
- *In re Edgewater Place, Inc.*, 1999 WL 35136576, at *3 (C.D. Cal. May 18, 1999) ("exculpatory clause defeated [Plaintiff]'s breach of contract claim for money damages").
- *Garcia v. D/AQ Corp.*, 57 Cal. App. 5th 902, 907–08 (2020) ("The question whether an exculpatory clause covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 8-9**

Affirmative Defense – Waiver

**Plaintiffs' Proposal:** None

**Google's Proposal:**

This instruction applies only to Plaintiffs' Claim 5, Breach of Contract. Even if you find that Google had an obligation not to receive the At Issue Data, Google contends that each Plaintiff gave up their right to enforce that obligation. This is called a "waiver."

To succeed, Google must prove both of the following elements by clear and convincing evidence:

(1) Each Plaintiff knew Google was prohibited from receiving the At Issue Data; and

(2) Each Plaintiff freely and knowingly gave up his or her right to enforce this obligation.

A waiver may be express, based on the words of the waiving party, or implied, arising from conduct indicating each Plaintiff's intent to give up the right to have Google perform the contractual obligation.

If Google proves that each Plaintiff waived his or her right to have Google perform an obligation not to receive the At Issue Data, then Google was not required to perform this obligation and cannot be liable for breach of contract.

To prove waiver by "clear and convincing evidence," Google must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of Google's defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Plaintiffs' Statement:**

(1) Plaintiffs object to this instruction. Google's asserted express waiver defense, which relies on the terms of service, *see* Dkt. 531 (Answer to TAC) at 33, is nonsensical as a matter of law. As previously explained, *see* Disputed Instruction No. 8-8, contractual obligations either exist or they do not. A contract cannot simultaneously impose an obligation on one party and waive the counterparty's right to performance of that obligation. There is no merit to Google's dubious

assertion that a motion to strike or motion for summary judgment is necessary to preserve arguments that an affirmative defense does not apply as a matter of law.

    (2)    Google has waived any implied waiver defense, for two reasons:

        (a)  *First*, Google pleaded only an express waiver defense; its pleadings contain no reference to implied waiver. *See* Dkt. 531 (Answer to TAC) at 33. It is too late for Google to assert a new implied waiver defense. *See Borges v. Cnty. of Humboldt*, 2017 WL 4552006, at *2 (N.D. Cal. Oct. 12, 2017) (Gonzalez Rogers, J.) (affirmative defense "deemed waived" where, as here, the defendants "failed to assert [the defense] in their answer" and "waited until the eve of trial to raise the [] defense"); *Armacost v. Depuy Synthes Sales, Inc.*, 2018 WL 11471582, at *4 (N.D. Cal. June 7, 2018) (Gonzalez Rogers, J.) (defendants "waiv[]ed that affirmative defense" by "not rais[ing] [it] as a defense" in their Answer). There is no excuse for Google's failure to plead this defense sooner, particularly because it was on notice that the substantially different concept of implied consent is not a defense to Plaintiffs' claim for breach of contract. *Compare* Dkt. 665 at 12 (Google arguing that implied consent is available where "there is a panoply of sources from which [] users could have learned of Google's interceptions") *with Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 678 (2000) (requiring proof by "clear and convincing evidence" that the plaintiff "intentional[ly] relinquish[ed]" their contractual rights, identifying "acts" that are "so inconsistent with an intent to enforce the [contractual] right as to induce a reasonable belief that such right has been relinquished").

        The notion that Google "has included implied waiver" as part of its "implied consent" defense, *see infra*, is obviously untrue, because waiver is not "included" in implied consent at all. It is a *more* demanding standard — much more. Waiver requires *clear and convincing* evidence that Plaintiffs *intentionally relinquished their contractual rights*, as reflected by "acts" that are "*so inconsistent with an intent to enforce the [contractual] right as to induce a reasonable belief that such right has been relinquished.*" *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 678 (2000) (emphases added). *See* Dkt. 1014 at 3.

        (b)  *Second*, Google's Privacy Policy, which is incorporated in the contract, also waives any defense based on implied waiver. *See* Dkt. 83-8 at 16 (promising not to reduce rights "without your explicit consent"). Google would have to prove that each Plaintiff waived both their right to explicit consent *and* their right to be free from Google's collection, saving, and use of data while in a private browsing mode.

    (3)    If the Court chooses to give an instruction on waiver, Google's proposal suffers from several additional flaws:

        (a)  *First*, Google's instruction regarding implied waiver also materially deviates from CACI 336. Google would have the jury determine whether the Plaintiff's conduct merely "indicat[es] [their] intent to give up the right to enforce the contractual obligation." CACI imposes a more demanding standard, requiring "conduct that *shows* that [the Plaintiff] *gave up* that right."

(b) *Second*, for reasons explained above, Plaintiffs object to any instruction that characterizes Google's conduct as merely "receiving" the "At Issue Data." *See* Disputed Instruction No. 6-1.

**Google's Statement:**

(1)    Google's instruction adopts CACI 336, with minimal changes to incorporate California Court of Appeal case law, to clearly instruct on Google's asserted affirmative defense of waiver. The instruction accurately provides the two elements Google must prove to show that Plaintiffs waived their right to enforce the parties' contract. *See* CACI 336; *Storix, Inc. v. Johnson*, 2020 WL 7777493, at *12 (Cal. Ct. App. Dec. 31, 2020), *as modified on denial of reh'g* (Jan. 27, 2021) (affirming jury instructions that provided "[t]o succeed [on a waiver defense], Defendants must prove both of the following 1. That [plaintiff] knew Defendants were required to rehire him; and 2. That [plaintiff] freely and knowingly gave up his right to have Defendants do so") (internal quotation marks omitted).

(2)    Google's instruction accurately and succinctly explains that waiver may be express or implied and defines each of those terms, as they are defined in case law. *See Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 678 (2000). Plaintiffs argue that Google's instruction "materially deviates from CACI 336," but ignore that it precisely tracks the language of controlling California caselaw. *Id.* ("The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right." (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 31 (1995))).

(3)    Plaintiffs' assertion that "Google's asserted express waiver defense, which relies on the terms of service, is nonsensical as a matter of law" is incorrect, unsupported—and tardy because Plaintiffs did not move to strike this defense or filed a motion for summary judgment to preclude Google from asserting this defense. Nothing stands in the way of the jury's evaluating Google's defense. "[W]aiver is normally a question of fact for the jury." *Shenzhenshi Haitiecheng Sci. &*

1    *Tech. Co. v. Rearden, LLC*, 2015 WL 6082028, at *3 (N.D. Cal. Oct. 15, 2015) (quoting *Black v.*

2    *Arnold Best Co.*, 124 Cal. App. 2d 378, 384-85 (1954)). And Plaintiffs' conclusory assertions do

3    not show that "there are no disputed facts and only one reasonable inference may be drawn." *Gill v.*

4    *Rich*, 128 Cal. App. 4th 1254, 1264 (2005).

5          (4)     Plaintiffs' other argument that Google has waived its implied waiver defense is

6    meritless. First, Google's Answer stated a waiver and estoppel defense without limiting the defense

7    to "express waiver." *Borges v. Cnty. of Humboldt*, 2017 WL 4552006, at *2 (N.D. Cal. Oct. 12,

8    2017) (Gonzalez Rogers, J.) and *Armacost v. Depuy Synthes Sales, Inc.*, 2018 WL 11471582, at *4

9    (N.D. Cal. June 7, 2018) (Gonzalez Rogers, J.) are distinguishable because the defendants in those

10   cases never raised the waived defenses at all. Unlike the express omission in *Borges*, Google's

11   Answer provides sufficient notice to Plaintiffs of its intent to assert both waiver defenses.

12          (5)      Second, Google has always pleaded implied consent as a defense to

13   Plaintiffs' breach of contract claims, and has included implied waiver as part of that defense. *See,*

14   *e.g.*, Oct. 11 Hr'g Tr. at 21:23–22:2 ("This is a question about whether, with regard to the contract

15   claim, Google breached the contract or did not, and one question that is relevant to that is whether

16   Plaintiffs impliedly consented or waived their claims by using the service with full knowledge of

17   what it does . . . ."); *id.* at 93:24–94:2 ("You would have implied consent, or if you don't want to

18   call it implied consent, waiver, for some significant portion of the class."). Plaintiffs understood that

19   to be the case long before they adopted (for the first time in their unsuccessful Rule 23(f) petition)

20   the opportunistic position that Google failed to plead a cognizable implied consent or waiver defense

21   to breach of contract. *See* Dkt. 712-1 (Plaintiffs' Class Cert. Reply) at 3 ("The 'implied consent'

22   defense requires Google to show . . . that Class members waived their contractual rights . . . ." (citing

23   Old Repub., 80 Cal. App. 4th at 678)); *id.* at 4 ("Google points to just one kind of act by Class

members that *it contends shows a waiver . . . .*" (emphasis added)). Plaintiffs cannot now argue Google waived a defense Plaintiffs expressly recognized it was making.

(6)     Third, Plaintiffs' argument that "Google's Privacy Policy also waives any defense based on implied waiver" is meritless. That is a legal argument they made at class certification, which the Court did not credit. Dkt. 803 at 31-32; *see also* Dkt. 659-3 at 15 (Google argued that "user's implied consent—*i.e.*, their choice to use a service while aware of the conduct—is neither an action by Google nor an instance of reducing the user's rights"). Further, the statement Plaintiffs point to appears only in Google's Privacy Policy, and states Google "will not reduce your rights *under this Privacy Policy*" without explicit consent. It does not apply to any other agreements or disclosures on which Plaintiffs base their claims, and cannot act as a general waiver of *any* implied consent or waiver defense. Moreover, the purported "promises" concerning private browsing did not appear in the Privacy Policy for the majority of the class period, and Google expressly excluded the Privacy Policy from its Terms of Service (*i.e.*, its contract with users) in March 2020, before Plaintiffs filed suit. It is proper, and necessary, to instruct the jury on Google's meritorious defense.

Authorities:
- CACI 336.
- Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 1.7.
- *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 678 (2000) ("The burden ... is on the party claiming a waiver of a right to prove it by clear and convincing evidence….The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right.") (internal quotation marks and citations omitted).

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**DAMAGES**

**(DISPUTED) JURY INSTRUCTION NO. 9-1**

<u>Introduction</u>

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for a Plaintiff on one or more of his or her claims, you must determine that Plaintiff's damages. Damages means the amount of money that will reasonably and fairly compensate the Plaintiff for any injury you find Google caused. The amount of damages must include an award for all harm that was caused by Google, even if the particular harm could not have been anticipated. In addition, the amount of damages must also include the amount of Google's unjustly earned benefit, if any, from collecting, storing, and using Plaintiffs' private browsing data.

Each Plaintiff has the burden of proving damages by a preponderance of the evidence. However, Plaintiffs do not have to prove the exact amount of damages that will provide reasonable compensation for the harm. It is for you to determine what damages, if any, have been proven. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Plaintiffs' Statement:**

(1)       Plaintiffs' proposal generally tracks the pattern instruction, CACI 3900, with one exception that is important for this case. Plaintiffs' proposal would instruct the jury that Google's unjustly earned profits are recoverable as damages in this case, which is true for reasons explained below. *See* Disputed Instruction No. 9-2. If the jury is not instructed at the outset that unjustly earned profits are a type of damages, jurors may be confused about the relevance or importance of instructions on unjust enrichment, or whether these remedies are available.

**Google's Statement:**

(1)       The parties agree on the majority of this introductory instruction. However, Plaintiffs' proposed insertion that the damages amount "must also include the amount of Google's unjustly earned benefit, if any, from collecting, storing, and using Plaintiffs' private browsing data"

is improper. Plaintiffs' offer no plausible basis or authority for departing from the model instructions to insert this unwarranted argument, improperly giving it outsized importance. *See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017), Section 5.1 Damages - Proof; CACI 3900. Moreover, as Google explains in its position statement in Instruction 9-2, unjust enrichment is not an available remedy for any of Plaintiffs' claims, and thus cannot properly be included here.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 9-2**

<u>Damages on Multiple Legal Theories</u>

Plaintiffs seek damages from Google under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You are asked to decide whether Google is liable to Plaintiffs under the following legal theories:

1. Comprehensive Computer Data Access and Fraud Act ("CDAFA")

2. California Invasion of Privacy Act ("CIPA") Section 631

3. California Invasion of Privacy Act ("CIPA") Section 632

4. Electronic Communications Privacy Act

5. Breach of Contract

6. Invasion of Privacy under the California Constitution

7. Intrusion Upon Seclusion under California Law.

The following items of damages are recoverable only once under Claims 1, 5, 6, and 7:

    1. Actual damages for the value of Plaintiffs' Private Browsing Data

    2. Google's unjust enrichment

    3. Nominal damages.

The following additional items of damages are recoverable only once for Claims 1, 6, and 7.

    1.  Punitive damages.

The following items of damages are recoverable only once under Claims 1 and 7:

    1. Compensatory Damages

The following items of damages are recoverable only once under Claim 5:

    1. Breach of Contract Damages

    2. Nominal Damages

The following additional items of damages are recoverable only once for Claims 1 and 7.

    1.  Punitive damages.

**Plaintiffs' Statement:**

(1)    Plaintiffs' proposal tracks the pattern instruction for cases in which plaintiffs seek multiple types of damages based on multiple legal theories, CACI 3934. Plaintiffs' proposal accurately describes the available remedies for each claim.

(2)    Plaintiffs properly seek actual damages, which includes restitution, in connection with their claims for violations of the CDAFA (Claim 1), breach of contract (Claim 5), invasion of privacy (Claim 6), and intrusion upon seclusion (Claim 7). *See* Dkt. 969 (MSJ Order) at 33 (damages under CDAFA include market-based restitutionary measure); *Oracle USA, Inc. v. Rimini Street, Inc.*, 191 F. Supp. 3d 1134, 1145 (D. Nev. 2016), *rev'd in part on other grounds*, 879 F.3d 948 (2018) ("The plain, unambiguous language of the CDAFA provides a victim a full range of traditional remedies including 'compensatory damages and injunctive relief or other equitable relief.'"); Restatement (Second) of Torts § 652H (privacy torts give rise to actual damages); Ca. Civ. Code § 3300 (providing damages for contract claims). Google incorrectly argues that actual damages are unavailable for invasion of privacy (Claim 6), relying an inapplicable line of cases regarding the availability of monetary relief for certain claims when asserted against a government actor. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (distinguishing such cases).

(3)    Plaintiffs also properly seek unjust enrichment in connection with their claims for violations of the CDAFA (Claim 1), breach of contract (Claim 5), invasion of privacy (Claim 6), and intrusion upon seclusion (Claim 7). *See* Dkt. 969 (MSJ Order) at 12 (concluding that "a remedy based upon unjust enrichment may lie" for Plaintiffs' claims for "breach of contract and violation of … the CDAFA"); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 600-01 (9th Cir. 2020) (plaintiffs were "entitle[d] … to profits unjustly earned" through "unauthorized use of their information" under CDAFA); Cal. Penal Code § 502(e)(1) (providing for "equitable relief"); *Dreyfuss v. Union Bank of Cal.*, 24 Cal. 4th 400, 413 (2000) (describing "unjust enrichment" as

"equitable relief")[7]; *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 55 (2005) (affirming award of disgorgement of profits for breach of contract); Restatement (Third) of Restitution § 44 cmt. b ("Profitable interference with … protected interests, such as the claimant's right of privacy, gives rise to a claim [for restitution or unjust enrichment]" (emphasis added)); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398-99 (2014) ("The public policy of this state does not permit one to take advantage of his own wrong regardless of whether the other party suffers actual damage" (cleaned up)); *cf.* Cal. Civ. Code § 1708.8(d) (statutory privacy claims allow for "disgorgement to the plaintiff of any proceeds").

(4)      Nominal damages are an available remedy for violation of the CDAFA (Claim 1), breach of contract (Claim 5), invasion of privacy (Claim 6), and intrusion upon seclusion (Claim 7). Cal. Civ. Code § 3360 (generally providing for nominal damages for breach of a duty, as a form of "[c]ompensatory [r]elief"); *Sterling Drug v. Benatar*, 99 Cal. App. 2d 393, 400 (1950) (generally providing that "[n]ominal damages are not only recovered where no actual damage resulted from an ascertained violation of right but also where actual damages have been sustained, the extent of which cannot be determined"); *see also* Cal. Penal Code § 502(e)(1), (4); CACI 360 (instruction on nominal damages for breach of contract); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) ("every violation [of a right] imports damage," which might be "redress[ed]" by "nominal damages … even if [the plaintiff] cannot or chooses not to quantify that harm in economic terms"). This is explained in further detail in Plaintiffs' statement concerning Disputed Instruction No. 9-7.

(5)      Punitive damages are also an available remedy for Plaintiffs' claims for violations of the CDAFA (Claim 1), invasion of privacy (Claim 6), and intrusion upon seclusion (Claim 7). Cal. Penal Code § 502(e)(4); *Spinks v. Equity Res. Briarwood Apartments*, 171 Cal. App. 4th 1004, 1055 (2009) ("[P]unitive damages may be available for the tort[] of … invasion of privacy."); *see also Jackson v. First Nat'l Bank of Omaha*, 2022 WL 423440, at \*9 (C.D. Cal. Jan. 18, 2022).

---

[7] In support of its argument that disgorgement of profits is not an available remedy under the CDAFA, Google oddly cites (and mischaracterizes) cases concerning the substantive element of "damage or loss" under that statute. Its authorities for this claim—as for the others—are unpersuasive.

**Google's Statement**:

Plaintiffs' proposed competing language incorrectly states the remedies that are available for each of Plaintiffs' claims.

(1)    Plaintiffs' instruction incorrectly states that restitution, unjust enrichment, nominal damages, and punitive damages are available for Plaintiffs' Invasion of Privacy claim. The only published California Court of Appeal case that addresses directly whether a violation of the California Constitution right to privacy in Article I, Section I can give rise to money damages is *Clausing v. San Francisco Unified School Dist.*, 221 Cal.App.3d 1224, 1235 (1990), where the court held that although Article I, Section I enumerates "inalienable rights, this provision of the Constitution does not establish the means whereby they may be enjoyed." *Id.*; *see also Bates v. Arata*, 2008 WL 820578 (N.D.Cal. Mar. 26, 2008) (following *Clausing*, declined to recognize a private right of action for money damages based on Article I, Section 1's right to privacy); *Blanco v. County of Kings*, 142 F.Supp.3d 986, 1001 (E.D. Cal. 2015) ("No monetary damages are available for invasion of privacy under the California Constitution."). *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) did not find otherwise. *Id.* (finding plaintiffs had sufficiently stated a claim for injunctive relief but requiring additional briefing on issue of availability of damages for Invasion of Privacy claim). Any recovery is limited to injunctive relief. Issuing this instruction would thus be clear error.

(2)    Plaintiffs' instruction also incorrectly states that restitution is available for breach of contract, CDAFA, or intrusion upon seclusion claims. It is not. With respect to a breach of contract claim, restitution "does not lie when an enforceable, binding agreement exists." *See Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011). The CDAFA statute limits damages to "compensatory damages and injunctive relief or other equitable relief." Cal. Penal Code § 502(e)(1). And Google is aware of no decision awarding restitution for an intrusion upon seclusion claim;

1    Plaintiffs certainly cite none. Instead, Plaintiffs improperly seek to reframe their theory of damages

2    as one of "actual damages" and cite inapplicable authorities holding that actual damages are

3    available. But they have no evidence of actual damages, and the unrelated theory of restitution is a

4    not a substitute. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 871 (9th Cir. 2017) (actual

5    (or compensatory) damages is "compensat[ion] for a proven injury or loss" and restitution is the

6    "difference between what the plaintiff paid and the value she received in return."); *Brazil v. Dole*

7    *Packaged* Foods, LLC, 660 F. App'x 531, 534 (9th Cir. 2016) (defining restitution damages); *see*

8    *also Mullins v. Premier Nutrition Corp.*, 2016 WL 3440600, at *8 (N.D. Cal. June 20, 2016)

9    (distinguishing between restitution and actual damages).

10

11         (3)     Plaintiffs' instruction incorrectly states that unjust enrichment is available for breach

12   of contract, CDAFA, or intrusion upon seclusion claims. Contract damages are limited to no greater

13   amount than what Plaintiffs "could have gained by the full performance" of the contract. *Yahoo!*

14   *Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 859 F. App'x 168, 168 (9th Cir. 2021). Neither

15   of the two cases Plaintiffs cite hold otherwise. *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398-

16   99 (2014) stands for the unremarkable proposition that if the fact of damages is certain, the amount

17   of damages need not be calculated with absolute certainty.  *Ajaxo Inc. v. E*Trade Grp. Inc.*, 135

18   Cal. App. 4th 21, 55 (2005) is nearly two decades old and involves an NDA concerning trade secrets

19   and proprietary information. It has no applicability to this case.

20

21        The CDAFA statute limits damages to "compensatory damages and injunctive relief or other

22   equitable relief." Cal. Penal Code § 502(e)(1); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th

23   1180, 1195 n. 12 (9th Cir. 2022) (requiring plaintiff to show "damage" or "loss" by proving

24   "technological harms—such as the corruption of files—of the type unauthorized users cause to

25   computer systems and data"); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019)

26   (holding that Plaintiffs' theory of loss that Defendant stole his personal information and deprived

27

28

him of the opportunity to sell it was not "loss" under the statute); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (explaining that a plaintiff's ability to control, place value on, or protect his or her data is not the type of "loss" or "damage" covered by CDAFA).Plaintiffs now claim that the statute itself allows for "unjust enrichment" because in the context of allowing for "injunctive relief" it states "or other equitable relief." But that reading is unsupported by a long line of precedent in the Ninth Circuit, cited above, and Plaintiffs can find *no* case in which a Court awarded unjust enrichment, much less a jury. Plaintiffs' reliance on *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 600-01 (9th Cir. 2020) and this Court's Order on Google's motion for summary judgment is misguided. Both authorities are related to establishing standing and neither specifically endorses the availability of a particular type of remedy for any of Plaintiffs' claims.

(4)     Plaintiffs incorrectly state that nominal damages are available for CDAFA and Intrusion Upon Seclusion. Only one claim, breach of contract, allows for recovery of nominal damages. *See* Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages.").  Plaintiffs' reliance on *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802, 209 L. Ed. 2d 94 (2021) for the proposition that nominal damages are available for their Invasion of Privacy and Intrusion Upon Seclusion claims is misguided. *Uzuegbunam* held that "nominal damages can redress" the plaintiff's injury in a freedom of speech case under the United States Constitution—no privacy-related claims were at issue. Plaintiffs' citation to *O'Phelan v. Loy*, 497 F. App'x 720, 721 (9th Cir. 2012) is even more misleading, since that case involved the Hawaii law tort of invasion of privacy and an attorney's allegedly improper viewing of the plaintiff's medical information related to the aftermath of an assault.

(5)     Finally, as discussed in Disputed Instruction No. 9-9 below, punitive damages instruction should be deferred to the second phase and in any case, as indicated above, such damages are not available for Plaintiffs' invasion of privacy claim under the California Constitution.

1    Plaintiffs' authorities on the proposition that punitive damages are available for privacy torts are

2    inapposite to their constitutional law claim. *See Clausing*, 221 Cal.App.3d at 1235 (no monetary

3    damages for invasion of privacy claim under California Constitution).

7    DATE SUBMITTED: November 1, 2023

8    DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 9-3**

<u>Actual Damages</u>

**Plaintiffs' Proposal**:

Plaintiffs claim damages the value of the Private Browsing Data they allege Google took, copied, and/or used without permission. The following are the specific items of damages claimed by Plaintiffs:

1. The fair market value of Plaintiff's Private Browsing Data at the time that Google wrongfully collected, saved, and/or used it; or

2. The unique value of Plaintiff's Private Browsing Data.

"Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming:

1. That there is no pressure on either one to buy or sell; and

2. That the buyer and seller know all the uses and purposes for which the data is reasonably capable of being used.

No fixed standard exists in deciding the amount of this value. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

**Google's Proposal:** None

**Plaintiffs' Statement:**

(1)    Plaintiffs' proposed instruction on actual damages, including restitution, has a firm basis in the pattern instructions, this Court's orders, and caselaw. Without an instruction like this, the jury will lack the guidance necessary to calculate an actual damages award.

(2)    The Court has already determined that a market-based measure of restitution is an available remedy. Dkt. 969 (MSJ Order) at 33. Plaintiffs' proposal properly instructs the jury on its determination with respect to this form of relief, consistent with the pattern instructions. As explained in CACI 3903K, fair market value should be determined at the time of the wrongful conduct, which in this case is Google's "wrongful[] collect[ion], sav[ing], and/or use[]" of the

1    Plaintiff's private browsing data. Consistent with CACI, Plaintiffs propose instructing the jury that

2    fair market value should be determined by the highest price that a willing buyer would have paid to

3    a willing seller, assuming no pressure to buy or sell and knowledge of the relevant facts. *See* CACI

4    3903K. Plaintiffs propose tailoring the pattern instruction to the facts of this case, instructing the

5    jury to assume that "the buyer and seller know all the uses and purposes for which the data is

6    reasonably capable of being used," rather than CACI's more generic instruction to assume

7    knowledge "of all relevant facts about the condition and quality" of the item at issue.

8         (3)     Plaintiffs' proposal also instructs the jury to consider the unique value that each

9    Plaintiff places on the privacy of their private browsing data. This is consistent with the pattern

10   instruction relating to matters having special value to the plaintiff, CACI 3903L. Like CACI 3903L,

11   Plaintiffs' proposal instructs the jury that there is "[n]o fixed standard" to determine this value, and

12   that the jury should instead "use [their] judgment to decide a reasonable amount based on the

13   evidence and your common sense."

14        (4)     Google's argument that there is no evidence supporting a restitution remedy is of

15   course untrue. Restitution may be measured as "the market value of the benefit" conferred on the

16   defendant, or "a price the defendant has expressed a willingness to pay, if the defendant's assent

17   may be treated as valid on the question of price." Restitution (Third) of Restitution § 49. Plaintiffs'

18   expert, Michael Lasinski, offered expert testimony on the amount of actual damages, which includes

19   restitution. The Court also rejected Google's motion to exclude Mr. Lasinski's testimony,

20   concluding that his opinions were relevant and reliable evidence of the measure of restitution. *See*

21   Dkt. 803 at 6-7, 8-10. And at summary judgment, the Court determined that Plaintiffs can prove

22   damage or loss based on the "market for their data." Dkt. 969 (MSJ Order) at 33. There is no basis

23   for Google's assertion that there is no evidence to support this measure of damages.

24        (5)     Google's argument that Plaintiffs' proposed instruction suggests that there is a fair

25   market value is wrong. Plaintiffs' proposal asks the jury to consider the highest price that a willing

26   buyer would have paid to a willing seller; zero is an acceptable answer. Taken to its logical

27   conclusion, Google's argument would foreclose *any* instruction on damages (or even any mention

28

of the damages inquiry) for fear that uttering the word would amount to an instruction that there are damages to be found. This instruction is important, and it does not prejudice Google.

(1)     Plaintiffs' proposed instruction on actual damages, including restitution, has a firm basis in the pattern instructions, this Court's orders, and caselaw. Without an instruction like this, the jury will lack the guidance necessary to calculate an actual damages award.

(2)     The Court has already determined that a market-based measure of restitution is an available remedy. Dkt. 969 (MSJ Order) at 33. Plaintiffs' proposal properly instructs the jury on its determination with respect to this form of relief, consistent with the pattern instructions. As explained in CACI 3903K, fair market value should be determined at the time of the wrongful conduct, which in this case is Google's "wrongful[] collect[ion], sav[ing], and/or use[]" of the Plaintiff's private browsing data. Consistent with CACI, Plaintiffs propose instructing the jury that fair market value should be determined by the highest price that a willing buyer would have paid to a willing seller, assuming no pressure to buy or sell and knowledge of the relevant facts. *See* CACI 3903K. Plaintiffs propose tailoring the pattern instruction to the facts of this case, instructing the jury to assume that "the buyer and seller know all the uses and purposes for which the data is reasonably capable of being used," rather than CACI's more generic instruction to assume knowledge "of all relevant facts about the condition and quality" of the item at issue.

(3)     Plaintiffs' proposal also instructs the jury to consider the unique value that each Plaintiff places on the privacy of their private browsing data. This is consistent with the pattern instruction relating to matters having special value to the plaintiff, CACI 3903L. Like CACI 3903L, Plaintiffs' proposal instructs the jury that there is "[n]o fixed standard" to determine this value, and that the jury should instead "use [their] judgment to decide a reasonable amount based on the evidence and your common sense."

**Googles' Statement**:

Plaintiffs' instruction is incorrect as a matter of law, irrelevant to the claims at issue, and misleading. Google respectfully asks that the Court reject Plaintiff's proposed instruction.

(1)        Plaintiffs mask their request for damages as an "actual damages" instruction.  But actual (or compensatory) damages is "compensat[ion] for a proven injury or loss," *Bayer*, 861 F.3d at 871, and here Plaintiffs have none. They have no out of pocket expenses, no other monetary harm they can claim. Plaintiffs claim there is a "market" for this data—and the Court at the summary judgment stage agreed on that narrow point—but they have brought *no* evidence that they participated or attempted to participate in that market. They cannot claim they lost money as a result of Google's conduct. *See* Brown, Byatt, Castillo, and Davis January 11, 2021 Rog Resp., at No. 3; Trujillo's June 7, 2021 Rog Resp., at Nos. 3, 10; Plaintiffs' September 20, 2021 Rog Resp., at No. 16; Brown, Byatt, Castillo, and Davis June 1, 2021 Amended Rog Resp., at No. 10; Plaintiffs' April 15, 2022 Amended Rog Resp., at No. 17 at 13:22-23; Byatt Dep. Tr. 208:15-209:6; Davis Dep. Tr. 136:17–20. That explains why the instruction and CACIs it relies on are entirely off base here. For example, CACI 3903K relates to the calculation of economic damages for loss or destruction of personal property, and CACI 4409 concerns remedies for misappropriation of trade secrets. The rest of the model instructions Plaintiffs cite are likewise irrelevant and inapplicable to the fact pattern here.

(2)        Calling their theory "restitution" does not help Plaintiffs either for two reasons. First, as Google explained in its position statement on Plaintiffs' introductory instruction on damages, restitution is not an available remedy for any of Plaintiffs' claims.  Second, Plaintiffs have failed to adduce any evidence during the litigation that the concept of "restitution" applies here. Restitution is the "difference between what the plaintiff paid and the value she received in return." *Bayer,* 861 F.3d at 871. Plaintiffs paid nothing. Plaintiffs did not participate in any market to sell their data, nor

did they attempt to, nor have they ever argued that got short changed because of the Google's conduct.  No restitution can lie here, and this instruction is therefore incorrect as a matter of law.

(3)     Plaintiffs' instruction is legally erroneous for another reason. It instructs the jury that there *is* a fair market value of Plaintiff's Private Browsing Data and/or a "unique value" of such data, when in fact it is Plaintiffs' burden to prove the contested fact that their At Issue Data had any value.  The Court cannot put a thumb on the scale for Plaintiffs on this disputed issue of fact.


DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

# (DISPUTED) JURY INSTRUCTION NO. 9-4

**Plaintiffs' Proposal**:

<div align="center">Unjust Enrichment</div>

In calculating any damages, Plaintiffs are also entitled to recover damages if Google's conduct caused Google to be unjustly enriched.

Google was unjustly enriched if by collecting, storing, and using Plaintiffs' Private Browsing Data, Google received a benefit it otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of Google's benefit that would not have otherwise been achieved. Plaintiffs bear the burden of proving the value of Google's benefit.

Then subtract from that amount Google's reasonable expenses. Google bears the burden of proving the value of such expenses.

In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining restitution.


**Google's Proposal:** None


**Plaintiffs' Statement:**

(1)       As explained above, unjust enrichment is an available remedy for Plaintiffs' claims. *See* Disputed Instruction No. 9-2. If the jury is to calculate unjust enrichment, it should be instructed on how to do so. Google's proposal, which does not include an instruction on this form of relief, would leave the jury to guess about how this amount is to be calculated. Either party could be prejudiced as a result.

(2)       Plaintiffs' proposal tracks the pattern instruction on unjust enrichment, CACI 4410, nearly verbatim. Plaintiffs' proposal also clarifies that, as the Court previously held, Plaintiffs bear the burden of proving Google's benefit, and Google bears the burden of proving its own costs and other deductions. Dkt. 803 (Class Cert. Order) at 10; *see also Meister v. Mensinger*, 230 Cal. App. 4th 381, 399 (2014). Google complains that CACI 4410 is refers to claims for misappropriation of

trade secrets, but regardless of the claim, the jury's task in determining an unjust enrichment remedy is the same. The principles of CACI 4410 apply here.

**<u>Google's Statement</u>:**

Plaintiffs have cut this instruction out of whole cloth. Unsurprisingly, it is incorrect as a matter of law, irrelevant to the claims at issue, and should not be given.

(1)      Plaintiffs' assertion  that "the parties agree that unjust enrichment is an available remedy for at least some of Plaintiffs' claims" is simply false. As explained in Google's objection to Plaintiffs' introductory instruction on damages, unjust enrichment is not an available remedy for *any* of Plaintiffs' claims. This instruction is therefore incorrect as a matter of law.

(2)      Moreover, the fact that Plaintiffs use the pattern instruction for CACI 4410 does not establish a right to unjust enrichment for these claims, particularly since that CACI relates to remedies for misappropriation of trade secrets—not any of the claims they have pleaded. Similarly, *Meister v. Mensinger*, 230 Cal. App. 4th 381, 399 (2014) cannot support giving this instruction here because that opinion does not address any of Plaintiffs' claims.


DATE SUBMITTED: November 1, 2023
DATE REVISED: _____

1

**(DISPUTED) JURY INSTRUCTION NO. 9-5**

2

Compensatory Damages for CDAFA and Intrusion Upon Seclusion Claims

3

**Google's Proposal:**

4

This instruction, Compensatory Damages for CDAFA and Intrusion Upon Seclusion, applies

5

only to Plaintiff's Claims 1 and 7.

6

If you decide that any Plaintiff has proved his or her CDAFA and/or Intrusion Upon

7

Seclusion claims, you also must determine how much money will reasonably compensate that

8

Plaintiff for the harm. This compensation is called "damages."

9

The amount of damages must include an award for each item of harm that was caused by

10

Google's wrongful conduct, even if the particular harm could not have been anticipated.

11

Each Plaintiff does not have to prove the exact amount of damages that will provide

12

reasonable compensation for the harm. However, you must not speculate or guess in awarding

13

damages.

14

15

**Plaintiffs' Proposal:** None

16

17

**Plaintiffs' Statement:**

18

(1)      Plaintiffs object to this instruction. *First*, it incorrectly implies that compensatory

19

damages are unavailable for invasion of privacy (Claim 6). Google relies for this proposition on an

20

inapplicable line of cases regarding the availability of monetary relief for certain claims when

21

asserted against a government actor. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602

22

(N.D. Cal. 2021) (distinguishing such cases). As previously explained, compensatory damages are

23

available for invasion of privacy. *See* Disputed Instruction Nos. 9-2.

24

(2)      *Second*, Google's proposed instruction does not provide sufficient guidance on how

25

to calculate any measure of damages. This is because Google's proposal is premised in part on the

26

pattern instruction that introduces the jury to damages, CACI 3900 (which is also the basis for

27

Disputed Instruction No. 9-1), rather than the more specific CACI instructions that describe types

28

of damages available. As a result, Google's proposal leaves it up to the jury to determine what "will

1  reasonably and fairly compensate each Plaintiff." This is particularly problematic because Google

2  simultaneously instructs the jury that they "must not speculate, guess, or conjecture." Google's

3  proposal therefore creates the risk that the jury will refuse to award damages simply because the

4  instructions give them no choice but to guess as to what the appropriate amount should be.

5    (3)    *Third*, and relatedly, Google's proposed instruction fails to adequately instruct the

6  jury on measures of monetary relief that the Court has already determined to be available, including

7  restitution and unjust enrichment. *See* Disputed Instruction Nos. 9-2, 9-3, 9-4.

8    (4)    *Fourth*, Google's proposed instruction does not align with the framework suggested

9  by the CACI instructions. As reflected in CACI 3934 (and adopted in both parties' proposals for

10 Instruction No. 9-2), the jury should be instructed on how to calculate each type of monetary relief,

11 rather than separately calculate the monetary relief available for each claim. As explained in CACI

12 VF-3920, this approach is "designed to avoid the jury's awarding the same damages twice under

13 different causes of action, counts or legal theories, or failing to distinguish sufficiently what

14 damages are being awarded under what cause of action."

15

16 **<u>Google's Statement</u>:**

17    (1)    Google's instruction adopts without substantive modification the relevant Model

18 Jury Instruction, CACI 3900 (Introduction to Tort Damages). *See* CACI 1814 (Directions for Use)

19 (indicating that for CDAFA claims, CACI 3900 should be used).  This instruction clearly describes

20 the compensatory damages available for Plaintiffs' CDAFA and Intrusion Upon Seclusion claims.

21 The CDAFA statute expressly limits damages to "compensatory damages and injunctive relief or

22 other equitable relief." Cal. Penal Code § 502(e)(1). Similarly, because intrusion upon seclusion is

23 a tort, CACI 3900, which introduces tort damages, is directly relevant. *See* CACI 3900.

25    (2)    Plaintiffs' objections to Google's instruction lack merit.  First, Plaintiffs claim that

26 this instruction should apply to invasion of privacy, but they are incorrect.  Controlling precedents

27 Google cites firmly establishing that money damages are not available for invasion of privacy claims

28 under the California Constitution. *See, e.g.*, *Clausing v. San Francisco Unified School Dist.*, 221

Cal.App.3d 1224, 1235271 Cal.Rptr. 72 (1990) (although Article I, Section I enumerates "inalienable rights, this provision of the Constitution does not establish the means whereby they may be enjoyed."); *Bates v. Arata*, 2008 WL 820578 (N.D.Cal. Mar. 26, 2008) (following *Clausing*, declined to recognize a private right of action for money damages based on article I, section 1's right to privacy); *Blanco v. County of Kings*, 142 F.Supp.3d 986, 1001 (E.D. Cal. 2015) ("No monetary damages are available for invasion of privacy under the California Constitution.")..(3) Plaintiffs' assertion that Google's instruction does not provide sufficient guidance for the jury to calculate damages is also invalid.  Google's instruction adheres closely to the CACI and gives the jury the necessary guidance to calculate damages, if any, for these claims. That Google does not list specific items of damages is a problem of Plaintiffs' own making: they have not alleged any specific actual damages.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 9-6**

Damages for Breach of Contract

**Google's Proposal:**

This instruction applies only to Plaintiffs' Claim 5, Breach of Contract.

If you find that any Plaintiff has proved his or her claim(s) against Google for breach of contract, you must determine the damages that will reasonably compensate each Plaintiff for any harm caused by the breach. The purpose of such damages is to put each Plaintiff in as good a position as he or she would have been if Google had performed as promised.

Each Plaintiff has the burden of proving damages by a preponderance of the evidence. To recover damages for any harm, each Plaintiff must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

Each Plaintiff also must prove the amount of his or her damages according to the following instructions. He or she does not have to prove the exact amount of damages. You must not speculate, guess or conjecture in awarding damages.

**Plaintiffs' Proposal:** None.

**Plaintiffs' Statement:**

(1)     Plaintiffs object to this instruction. *First*, it is unnecessary. If the Court adopts Plaintiffs' proposed instructions on actual damages and unjust enrichment, there is no need to provide this additional instruction. *See* Disputed Instruction Nos. 9-2, 9-3, 9-4.

(2)     *Second*, this instruction does not sufficiently inform the jury that they may award restitution and unjust enrichment for breach of contract, as this Court and others have previously determined. *See* Dkt. 969 (MSJ Order) at 12 (finding contractual injury in part because there is "evidence that there is a market for this data," and that "a remedy based upon unjust enrichment may lie" for breach of contract); *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 55 (2005) (affirming award of disgorgement of profits for breach of contract).

(3)     *Third*, as previously explained, Google's proposal to adopt claim-specific instructions on damages is inconsistent with CACI and risks creating confusion amongst the jury. *See* Disputed Instruction No. 9-5.

**Google's Statement:**

(1)     Google's instruction adopts CACI 350 (Introduction to Contract Damages). It clearly restates blackletter law that the damages available for a breach of contract claim are limited to those that will reasonably compensate each Plaintiff for any harm caused by a breach of contract by Google. *See Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 29 Cal.App.5th 1, 9 (2018) ("measure of damages for breach of contract is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby") (internal quotation marks omitted). Contract damages are further limited to no greater amount than what Plaintiffs "could have gained by the full performance" of the contract. *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 859 F. App'x 168, 168 (9th Cir. 2021). This instruction also accurately identifies Plaintiffs' burden for proving damages. Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Section 5.1 Damages - Proof.

(2)     For the reasons stated above in response to Disputed Instruction No. 9-2, Plaintiffs are not entitled to restitution or unjust enrichment damages for their breach of contract claim (or any other claim).

(3)     That Google's instruction does not provide the specific items of damages Plaintiffs may recover for breach of contract is a problem of Plaintiffs' own making: they have not alleged any contractual damages. Instead they only advance damages theories that do not comport with a breach of contract claims.

- CACI 350.

- Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Section 5.1 Damages - Proof ("Your award must be based upon evidence and not upon speculation, guesswork or conjecture.")

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 9-7**

<u>Nominal Damages</u>

This instruction applies only to each Plaintiff's [Claims 1, 5, 6, and 7 / Claim 5]. If you find that any Plaintiff has proved any of these claims but also that the Plaintiff was not harmed, you may still award him or her nominal damages such as one dollar.

**<u>Plaintiffs' Statement:</u>**

(1)      The parties dispute only the claims for which nominal damages are available. As explained above, nominal damages are not limited to claims for breach of contract. Under California law, nominal damages are available "where no actual damage resulted from an ascertained violation of right [and] also where actual damages have been sustained, the extent of which cannot be determined." *Sterling Drug v. Benatar*, 99 Cal. App. 2d 393, 400 (1950); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 799 (2021) ("every violation [of a right] imports damage," which might be "redress[ed]" by "nominal damages … even if [the plaintiff] cannot or chooses not to quantify that harm in economic terms"). California law makes nominal damages generally available under these circumstances. Cal. Civ. Code § 3360 ("[g]eneral provision" for nominal damages in connection with compensatory relief). There is no support for the proposition that nominal damages are available only for claims for breach of contract.

(2)      The CDAFA expressly provides for compensatory relief. Cal. Penal Code § 502(e)(1). That includes nominal damages. Cal. Civ. Code § 3360 (nominal damages section of statutory title on compensatory relief).[8] Google has identified no authority suggesting that nominal damages are somehow excluded from the CDAFA's ambit.

(3)      Nominal damages are also available for invasion of privacy and intrusion upon seclusion. Google agrees that compensatory damages are available for intrusion upon seclusion. *See*

---

[8] For well over 100 years, California courts have rejected Google's assertion below that Cal. Civ. Code § 3360 is specific to contract claims. *See, e.g.*, *Empire Gravel min. Co. v. Bonanza Gravel Min. Co.*, 67 Cal. 406 (1885) ("For every trespass upon real property the law presumes nominal damages."); *Crane v. Heine*, 35 Cal. App. 466, 467 (1917) (nominal damages available for impersonation). There is no support for Google's position.

Disputed Instruction No. 9-2, 9-5. Nominal damages are also available for invasion of privacy. *Uzuegbunam*, 141 S. Ct. at 799. Again, nominal damages are a type of compensatory damages. Cal. Civ. Code § 3360.

**Google's Statement:**

(1)  The parties disagree as to which of Plaintiffs claims nominal damages are available. The model both parties use—CACI 360—applies to breach of contract claims, and Google's version correctly states that nominal damages are available for that claim. Plaintiffs' attempt to stretch this CACI to cover CDAFA, Intrusion Upon Seclusion, and Invasion of Privacy claims is incorrect as a matter of law and should be rejected.

(2)  CDAFA: CDAFA's statutory text clearly outlines the damages that apply, and Google has properly identified those in its Disputed Instruction No. 9-5. Nominal damages is not among them; unsurprisingly, Plaintiffs provide *no* support for the availability of nominal damages for CDAFA. Neither *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802, 209 L. Ed. 2d 94 (2021) nor *Sterling Drug v. Benatar*, 99 Cal. App. 2d 393, 400 (1950) address CDAFA.

(3)  Intrusion Upon Seclusion:  Plaintiffs can cite no case where a court or a jury has awarded nominal damages for this tort. Plaintiffs' reliance on the California code section that address compensatory damages for breach of contract (Cal. Civ. Code § 3360) do not support their proposed remedy for the tort of intrusion upon seclusion.

(4)  Invasion of Privacy: Controlling authority confirms no damages are available for this claim, *see* Proposed Instruction 9-2, and Plaintiffs do not have any contrary authority.  *O'Phelan v. Loy*, 497 F. App'x 720, 722 (9th Cir. 2012) is entirely inapplicable because it involved the Hawaii law tort of invasion of privacy and an attorney's allegedly improper viewing of the plaintiff's medical information related to the aftermath of an assault.

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 9-8**

Affirmative Defense – Limitation of Damages

**Plaintiffs' Proposal:** None.

**Google's Proposal:**

This instruction applies to Plaintiffs' Breach of Contract claims. Google claims that the language of Contract 1 and Contract 2 limits any damages each Plaintiff may seek to recover as a result of any breach by Google.

If you find that any of the Plaintiffs are entitled to damages, you must decide whether the following statements from the contracts (Google's Terms of Service) limit those damages during the corresponding time period.

| Statement | No Liability Time Period |
|---|---|
| **Statement 1**: "When permitted by law, Google, and Google's suppliers and distributors, will not be responsible for lost profits, revenues, or data, financial losses or indirect, special, consequential, exemplary, or punitive damages." (April 14, 2014 Google Terms of Service). | If you find that **Statement 1** limits Plaintiffs' damages, you must exclude any damages incurred between **June 1, 2016 to October 24, 2017**. |
| **Statement 2**: "When permitted by law, Google, and Google's suppliers and distributors, will not be responsible for lost profits, revenues, or data, financial losses or indirect, special, consequential, exemplary, or punitive damages . . . To the extent permitted by law, the total liability of Google, and its suppliers and distributors, for any claims under these terms, including for any implied warranties, is limited to the amount you paid us to use the services…In all cases, Google, and its suppliers and distributors, will not be liable for any loss or damage that is not reasonably foreseeable." (October 25, 2017 Google Terms of Service). | If you find that **Statement 2** limits Plaintiffs' damages, you must exclude any damages incurred between **October 25, 2017 and March 30, 2020**. |
| **Statement 3**: "Other than the rights and responsibilities described in this section (In case of problems or disagreements), Google won't be responsible for any other losses, unless they're caused by our breach of these terms or service-specific additional terms." (March 31, 2020 Terms of Service). | If you find that **Statement 3** limits Plaintiffs' damages, you must exclude any damages incurred between **March 31, 2020 and January 4, 2022**, to the extent the limitation applies. |

| | |
|---|---|
| **Statement 4**: "To the extent allowed by applicable law: Google is liable only for its breaches of these terms or applicable service-specific additional terms[.] Google isn't liable for: []loss of profits, revenues, business opportunities, goodwill, or anticipated savings[,] indirect or consequential losses[,] punitive damages[,] Google's total liability arising out of or relating to these terms is limited to the greater of (1) $200 or (2) the fees paid to use the relevant services in the 12 months before the dispute." (January 5, 2022 Terms of Service). | If you find that **Statement 4** limits Plaintiffs' damages, you must exclude any damages incurred between **January 5, 2022 and the present**. |

**Plaintiffs' Statement**

(1)     Plaintiffs object to this instruction as improper. *First*, as explained above, these provisions would be unconscionable (and therefore unenforceable) if applied to bar Plaintiffs from recovering any form of damages for breach of contract. *See* Disputed Instruction No. 8-8.

(2)     *Second*, also as explained above, Google's proposed instruction fails to explain to the jury that by operation of law and the plain text of the parties' contract, these provisions do not absolve Google of liability for gross negligence or willful misconduct. *See* Disputed Instruction No. 8-8.

(3)     *Third*, Google's proposed instruction improperly suggests to the jury that any *limitation* of Google's liability relieves Google of *all* liability. To illustrate: Statement 1 purports to limit Google's liability for certain types of monetary relief, but Google proposes instructing the jury that if they find that statement merely "limits Plaintiffs' damages," then they "must exclude *any* damages." Google's instruction is legally erroneous.

(4)     *Fourth*, as previously explained, Google waived any defense premised on Statements 3 and 4 by omitting them from relevant portions of its Answer. *See* Disputed Instruction No. 8-8.

(5)     *Fifth*, Statements 3 and 4 do not even purport to limit Google's liability for Plaintiffs' claims for breach of contract, the only claim to which Google asserts this defense applies. Both specifically state that "Google is liable … for its breaches of these terms or applicable service-specific additional terms." Any verdict that excludes damages for breach of contract on the basis of this provision would be legally erroneous. *See also* Disputed Instruction No. 8-8.

(6)      *Sixth*, the jury should not be instructed twice on these statements. Google argues that the two instructions merely "state the words in the contract," but they do so for the second time (eight times, counting the similar language in each statement). Repeating essentially the same instruction puts a thumb on the scale in favor of Google's defense. If the Court elects to give any instruction that specifically calls these provisions to the jury's attention (and it should not, *see also* Disputed Instruction No. 8-8), it should do so only once.

**Google's Statement**

(1)      Google's instruction should be given because it accurately and concisely describes the law that applies to Google's asserted affirmative defense of contractual limitation of damages. Although Google asserted this defense in its Answer, the Parties have not previously addressed the application of these provisions through legal briefing. Therefore, it is an issue the jury must resolve. To that end, this instruction clearly lists each of the statements from the parties' contract that Google contends limit its damages for the alleged misconduct and the corresponding time period that each statement covers. The jury must interpret each statement to determine if Google has proven its defense.

(2)      Plaintiffs argued for the first time during the meet and confer process that the application of these provisions to the facts of this case should be determined by the Court as a matter of law. However, Plaintiffs have not moved the Court to limit the availability of this defense as a matter of law before.  Therefore, the jury must be instructed on Google's affirmative defense and how to make that determination themselves. Plaintiffs arguments to the contrary lack merit:

(3)      Plaintiffs are incorrect that Google's proposed instruction is unconscionable for the reasons explained above. *See* Disputed Instruction No. 8-8.

(4)      Plaintiffs' argument that the proposed instruction inadequately explains that the exculpatory clauses "do not absolve Google of liability for gross negligence or willful misconduct" is irrelevant for the reasons explained above. *See* Disputed Instruction No. 8-8.

(5)     Plaintiffs argue that the proposed instruction "improperly suggests to the jury that any limitation of Google's liability relieves Google of all liability," but this instruction is about damages, not liability. In any event, it is clear that language stating that Google "will not be responsible for lost profits, revenues, or data, financial losses or indirect, special, consequential, exemplary, or punitive damages" excludes *all* damages.

(6)     Plaintiffs' argument that "Google waived any defense premised on Statements 3 and 4 by omitting them from relevant portions of its Answer" is erroneous for the reasons explained above. *See* Disputed Instruction No. 8-8.

(7)     Plaintiffs are wrong that Statements 3 and 4 do not purport to limit Google's liability as relevant to this instruction. Once again, this proposed instruction is about damages, not liability. As for Statement 3, Google has added qualifying language to make clear that the jury should apply the damages waiver only to the extent of the limitation. And as for Statement 4, even if this exculpatory language permitted some liability for breach of contract, it still would not permit damages. Statement 4 clearly states that "Google isn't liable for: []loss of profits, revenues, business opportunities, goodwill, or anticipated savings[,] indirect or consequential losses[,] [or] punitive damages" and that "Google's total liability arising out of or relating to these terms is limited to the greater of (1) $200 or (2) the fees paid to use the relevant services in the 12 months before the dispute."

(8)     Liability and damages are two separate questions, and these exculpatory statements apply to both. The jury should be instructed as to liability when receiving other liability instructions, and as to damages when receiving other damages instructions. Plaintiffs argue that repeating the exculpatory language places a thumb on the scale for Google, but it does not; it merely states the words in the contract Plaintiffs allege Google breached. But failing to instruct the jury that these exculpatory clauses apply to both liability and damages would place a thumb on the scale for

Plaintiffs, by suggesting to the jury that if it rejects their applicability to one, it must reject their applicability to both.

Authorities:
- *Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, 2014 WL 3791567, at *5 (C.D. Cal. July 31, 2014) ("Generally, a limitation of liability clause is intended to protect the wrongdoer defendant from unlimited liability. Clauses of this type have long been recognized as valid in California.").
- *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125, 197 Cal. Rptr. 3d 219, 224 (2015) (holding that limitation of liability clause precluded user from establishing the damages element of her breach of contract claim and noting "Limitation of liability clauses have long been recognized as valid in California. As in the present case, these clauses are appropriate when one party is offering a service for free to the public.") (internal quotation marks and citations omitted).
- *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1127, 147 Cal. Rptr. 3d 634, 642 (2012) (holding that limitation of liability clause effectively limited defendant's liability for breaches of contractual obligations, dismissing breach of contract claims, and noting that "clauses of this type have long been recognized as valid in California") (internal quotations omitted).
- *Markborough California, Inc. v. Superior Court*, 227 Cal.App.3d 705, 714, 277 Cal.Rptr. 919 (1991); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 319 F.Supp.2d 1040, 1048 (C.D.Cal.2003) ("Under California law, parties may agree by their contract to the limitation of their liability in the event of a breach.").


DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

**(DISPUTED) JURY INSTRUCTION NO. 9-9**

Punitive Damages

Each of the following claims:  Claim 1, Comprehensive Computer Data Access and Fraud Act and Claim 7, Intrusion Upon Seclusion allow for punitive damages.

If you decide that Google's conduct caused any Plaintiff harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future. These damages are available only under the following claims: the CDAFA, invasion of privacy, and intrusion upon seclusion. You are not required to award any punitive damages. The amount, if any, of punitive damages will be an issue decided later.

You must decide whether each Plaintiff has proved that Google engaged in that conduct with malice, oppression, or fraud. To do this, Plaintiffs must prove one of the following by clear and convincing evidence:

1.  That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Google, who acted on behalf of Google; or

2.  That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Google; or

3.  That one or more officers, directors, or managing agents Google knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Google acted with intent to cause injury or that Google's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of the defendant's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Google's conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of his or her rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

1    "Fraud" means that Google intentionally misrepresented or concealed a material fact and did

2    so intending to harm Plaintiff.

3        An employee is a "managing agent" if the employee exercises substantial independent

4    authority and judgment in corporate decision making such that the employee's decisions ultimately

5    determine corporate policy.

6        "Clear and convincing evidence" means that Plaintiffs must present evidence that leaves you

7    with a firm belief or conviction that it is highly probable that the factual contentions of their claim

8    are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it

9    does not require proof beyond a reasonable doubt.

10       There is no fixed formula for determining the amount of punitive damages, and you are not

11   required to award any punitive damages. If you decide to award punitive damages, you should

12   consider all of the following factors in determining the amount:

13       (a) How reprehensible was Google's conduct?

14   In deciding how reprehensible Google's conduct was, you may consider, among other factors:

15       1.   Whether the conduct caused physical harm;

16       2.   Whether Google disregarded the health or safety of others;

17       3.   Whether Plaintiff was financially weak or vulnerable and Google knew Plaintiff was
           financially weak or vulnerable and took advantage of him or her;

18

19       4.   Whether Google's conduct involved a pattern or practice; and

20       5.   Whether Google acted with trickery or deceit.

21       (b) Is there a reasonable relationship between the amount of punitive damages and Plaintiff's
       harm or between the amount of punitive damages and potential harm to Plaintiff that Google

22       knew was likely to occur because of its conduct?

23       (c) In view of Google's financial condition, what amount is necessary to punish it and

24       discourage future wrongful conduct? You may not increase the punitive award above an
       amount that is otherwise appropriate merely because Google has substantial financial

25       resources. Any award you impose may not exceed Google's ability to pay.

26   Punitive damages may not be used to punish Google for the impact of its alleged misconduct on

27   persons other than Plaintiff.

28

-271-                                            CASE NO. 4:20-cv-03664-YGR-SVK

                                                 **PROPOSED JURY INSTRUCTIONS**

**Plaintiffs' Statement:**

(1)     Plaintiffs' proposed instruction tracks the pattern instruction on punitive damages in a non-bifurcated trial, which is CACI 3945. Although Google neglected to request bifurcation of trial on this issue in the parties' pretrial statement, *see* Dkt. 1029 at 53-54, it now seeks to bifurcate trial on the measure of punitive damages. Google's request should be denied. In this case, bifurcation offers no advantage, and certainly no advantage sufficient to offset the dramatic inefficiencies associated with bifurcation of trial on this issue. To the extent Google seeks to exclude evidence concerning its state of mind and conscious disregard of Plaintiffs' rights, it will be unable to do so. That evidence is relevant to the offensiveness element of Plaintiffs' claims for invasion of privacy (Claim 6) and intrusion upon seclusion (Claim 7). *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (relying on the fact that the defendant's "own officials recognized [its] practices as a problematic privacy issue" in connection with offensiveness element). It is also relevant to the jury's determination of whether to award punitive damages, which Google agrees should be decided in the jury's first deliberation. Google will also be unable to exclude evidence concerning its financial condition. For reasons explained in Plaintiffs' opposition to Google's motion *in limine* 2, this type of evidence is important to the calculation of individual Plaintiffs' unjust enrichment damages. *See* Dkt. 1027-4 at 3-4. In any event, Google's financial condition is hardly a secret. Especially in this District, jurors are likely to be aware that Google is one of the most profitable companies in the world. In sum: There is little or no evidence that could be reserved only for trial on the measure of punitive damages. There is no reason to further burden the jury and the Court with a separate, additional presentation of evidence and a separate, additional deliberation.

(2)     Plaintiffs' proposed instruction also properly instructs the jury regarding the claims for which punitive damages are available. Google agrees that punitive damages are available under the CDAFA (Claim 1) and for intrusion upon seclusion (Claim 7). California courts also recognized that punitive damages are available for invasion of privacy. *Spinks v. Equity Res. Briarwood Apartments*, 171 Cal. App. 4th 1004, 1055 (2009) ("[P]unitive damages may be available for the tort[] of … invasion of privacy."); *see also Jackson v. First Nat'l Bank of Omaha*, 2022 WL 423440, at *9 (C.D. Cal. Jan. 18, 2022). Google's contention that punitive damages are unavailable for

invasion of privacy (Claim 6) is, as previously explained, premised on an inapplicable line of cases concerning relief against government actors. *See* Disputed Instruction No. 9-2.

**Google's Statement**:

The parties dispute (1) whether calculation of punitive damages should be bifurcated from the determination of liability and Plaintiffs' other damages, which Google anticipates will be the subject of a motion if the parties cannot agree; and (2) for which claims punitive damages are available.

(1)    On the first issue, this is the prototypical case in which the court should bifurcate punitive damages.  Plaintiffs' pretrial disclosures already confirm that they will seek to admit evidence such as Google-wide revenue figures they claim is relevant to punitive damages that would be clearly *irrelevant* to any other portion of an individual Plaintiff's claim.  Presenting this evidence before the jury has rendered a verdict on individual liability and actual damages claims would prejudice their determination.  Google-wide revenues in the billions of dollars, which were sought through discovery for the purpose of a now-denied Rule 23(b)(3) class, would only serve to distort the jury's view on the actual task at hand: whether Google is liable to these Plaintiffs and if so, what their individual damages should be.  *See Multimedia Pat. Tr. v. Apple Inc.*, 2012 WL 12868264, at *6 (S.D. Cal. Nov. 20, 2012) (precluding evidence showing revenues or profits because "[t]he disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury" (quotation omitted)).  Plaintiffs' cavalier assertions that "jurors are likely to be aware that Google is one of the most profitable companies in the world" ignores the very real concerns Google has raised here and in its  Motion in limine No. 2 (Dkt. 1033-17)  as to the prejudice that would result from having Google's financial statements which have no bearing on Plaintiffs' individual claims bandied about.

(2)    To the extent the Court finds this type of evidence would be relevant to punitive damages—Google submits it is not—its presentation should be bifurcated.  *See Henderson v.*

*Peterson*, 2011 WL 2838169 (N.D. Cal. July 15, 2011) (granting motion to bifurcate punitive damages where specific evidence of defendant's net worth would only be admissible for punitive damages calculation); *Spears v. Adamson*, 2009 WL 948544 (D. Nev. Apr. 6, 2009) (holding that evidence financial status relevant for punitive damages determination could be bifurcated without prejudice or confusion).

(3)     Plaintiffs incorrectly assert that punitive damages are available for their invasion of privacy claim.  The only published California Court of Appeal case that addresses directly whether a violation of the California Constitution right to privacy in article I, section I can give rise to money damages is *Clausing v. San Francisco Unified School Dist.*, 221 Cal.App.3d 1224, 271 Cal.Rptr. 72 (1990), where the court held that although article I, section I enumerates "inalienable rights, this provision of the Constitution does not establish the means whereby they may be enjoyed." *Id*. Plaintiffs try to distinguish this case on the basis that it was against a government actor, but that fact was not a basis for the Court's legal determination that monetary damages are not available for invasion of privacy claims.  Importantly, federal courts in California have followed *Clausing*, and Plaintiffs identify no reason why the Court should depart from controlling authority.  *see also Bates v. Arata*, 2008 WL 820578 (N.D. Cal. Mar. 26, 2008) (following Clausing, declined to recognize a private right of action for money damages based on article I, section 1's right to privacy); *Blanco v. County of Kings*, 142 F.Supp.3d 986, 1001 (E.D. Cal. 2015) ("No monetary damages are available for invasion of privacy under the California Constitution."). Any recovery is limited to injunctive relief. Instructing the jury otherwise would be clear error.

[Authority: CACI 3945; Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.7 (2017)]]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

### (DISPUTED) JURY INSTRUCTION NO. 9-10

Affirmative Defense – Mitigation of Damages

**Plaintiffs' Proposal**: None.

**Google's Proposal:**

Each Plaintiff is not entitled to recover damages for harm that Google proves the Plaintiff could have avoided with reasonable efforts or expenditures.

You should consider the reasonableness of each Plaintiff's efforts in light of the circumstances facing him or her at the time, including his or her ability to make the efforts or expenditures without undue risk or hardship.

If each Plaintiff made reasonable efforts to avoid harm, then your award should include reasonable amounts that he or she spent for this purpose.

**Plaintiffs' Statement:**

(1)    Plaintiffs object to this instruction. The Federal Rules of Civil Procedure require instructions only on issues "raised by the evidence," and the evidence does not raise this defense. Fed. R. Civ. P. 51(a), adv. comm. note to 2003 amendment.

(2)    *First*, Google plans to argue that Plaintiffs failed to "mitigate" damages because they continued to use private browsing modes. *See* Dkt. 1023-1 (Opp. to Pls.' MIL 4) at 3. That fact is entirely irrelevant to the mitigation of damages. As the Restatement and Google's own authorities demonstrate, the duty of mitigation means that plaintiffs must minimize damages that result from the defendant's breach. Restatement (Second) of Torts § 918 (providing that one may not recover damages that could have been "avoided by the use of reasonable effort or expenditure *after the commission of the tort*" (emphasis added)); *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41 (1993), as modified (Jul. 13, 1993) (explaining that plaintiffs must "take reasonable steps to mitigate those damages" that were suffered "as a result of either a breach of contract or a tort"). Google does not contend that Plaintiffs could have reduced their injuries suffered as a result of Google's *earlier* collection of private browsing data by ceasing to engage in further private browsing activity. What Google really means is that Google would have broken its promises fewer times if Plaintiffs had

1   simply given up their right to browse privately. That is not a cognizable defense, and it certainly is

2   not the same thing as mitigation of damages.

3          (3)      *Second*, there is no evidence in the record that Plaintiffs could have diminished their

4   injuries from any violation or breach. To the contrary, it is undisputed that users have no control

5   over the damages resulting from a breach: They cannot stop Google from saving private browsing

6   data, they cannot cause Google to delete private browsing data, and they cannot affect Google's use

7   of private browsing data. *See* McClelland Tr. 318:3-12 ("no way that users can prevent" "Google

8   from logging their Incognito activity … on Google's servers"); McClelland Tr. 320:8-14 (testifying

9   that "a user does not have a way to delete unauthenticated data [including private browsing data]

10  from Google logs"); Exhibit 75 (GOOG-BRWN-00433503) at -504 (Google "provide[s] nothing

11  like" a "tool[] to see what data Google has collected on me, selectively delete data items" relating

12  to private browsing).

13  **Google's Statement**:

14         (1)      Google's instruction is modeled after CACI 358 and accurately describes Plaintiffs'

15  duty to mitigate damages. This duty attaches if Plaintiffs are awarded damages for any of their

16  claims. *See, e.g.*, *Convergent Mobile, Inc. v. JTH Tax, Inc.*, No. 4:19-CV-06484-YGR, 2021 WL

17  1580830, at *13 (N.D. Cal. Apr. 22, 2021) (Gonzalez Rogers, J.) (Under California law, a plaintiff

18  "has a duty to take reasonable steps to mitigate [] damages and will not be able to…recover for

19  damages avoidable through ordinary care and reasonable exertion."); *Kohler v. Staples the Off.*

20  *Superstore, LLC*, 291 F.R.D. 464, 469 (S.D. Cal. 2013); *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41,

21  21 Cal. Rptr. 2d 110 (1993), as modified (July 13, 1993).

23         (2)      Plaintiffs' claim that the evidence in this case does not "raise this defense" is simply

24  incorrect. Plaintiffs claim they suffered (and continue to suffer) damages by continuing to use

25  private browsing mode for years after they filed their complaint and were aware of the challenged

26  conduct. *See* Dkt. 1028-1 at Plaintiffs' Statement on Damages. Without this instruction, Plaintiffs

27  would be permitted to present such evidence to inflate their damages while Google would be

28

prevented from using that same evidence to rebut those damages. Accordingly, preventing Google from asserting this defense by precluding a jury instruction on mitigation of damages would be prejudicial and clear error.

(3)      Plaintiffs' claim that there is no evidence in the record that they could have diminished their injuries from any violation or breach is also wrong. Throughout this litigation, Google has adduced evidence of a plethora of privacy safeguards and user settings and controls available to limit the amount and types of At Issue Data Google receives. Plaintiffs admit they took no further steps to obfuscate or protect their information by, for example, using a VPN, enabling cookie or ad blockers, or using the Firefox or Tor browsers (which are not part of their case). *See, e.g.*, Dkt. 908-3 (Davis Tr.) 38:8–21, 75:13–77:25, 82:23–19; Dkt. 908-3 (Byatt Tr.) 23:19–24:2; Dkt. 908-4 (Castillo Tr.) 144:9–144:18, 147:5–13; Dkt. 908-4 (Trujillo Tr.) 32:16–35:20, 111:14–25; 908-4 (Brown Tr.) 92:5–11. Plaintiffs cannot be allowed to cherry pick favorable quotes from discovery and conclude that those quotes somehow establish that users have no control over the damages resulting from a breach. That is the jury's job to decide after weighing evidence from both parties.  The Court should reject Plaintiffs' baseless arguments and instruct the jury on Google's defense of mitigation of damages.

Authorities:
- CACI 358.
- *Convergent Mobile, Inc. v. JTH Tax, Inc.*, No. 4:19-CV-06484-YGR, 2021 WL 1580830, at *13 (N.D. Cal. Apr. 22, 2021) (Gonzalez Rogers, J.) (Under California law, a plaintiff "has a duty to take reasonable steps to mitigate [] damages and will not be able to…recover for damages avoidable through ordinary care and reasonable exertion.")
- *Kohler v. Staples the Off. Superstore, LLC*, 291 F.R.D. 464, 469 (S.D. Cal. 2013) (failure to mitigate defense was proper where both statutory and actual damages were available for violation of statute).
- *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41, 21 Cal. Rptr. 2d 110 (1993), as modified (July 13, 1993) ("A plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided.").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

### (DISPUTED) JURY INSTRUCTION NO. 9-11

Affirmative Defense – Unjust Enrichment

**Plaintiffs' Proposal:** None.

**Google's Proposal:**

This instruction applies only to Plaintiffs' Claims 5 and 7, Breach of Contract and Intrusion Upon Seclusion. Google claims that, even if any Plaintiff has proven all the elements of any of those claims, that Plaintiff would be unjustly enriched if allowed to recover. To succeed, Google must prove all of the following elements:

1) Each Plaintiff received a benefit from the conduct they challenge; and

2) Retention of the benefit at the expense of Google is unjust.

If Google proves that any Plaintiff is unjustly enriched, then you must decide the amount of any unjust enrichment and reduce Plaintiff's damages for Intrusion Upon Seclusion and Breach of Contract by that amount.

**Plaintiffs' Statement:**

(1)     Plaintiffs object to this instruction. *First*, this is not a defense to Plaintiffs' claims. CACI includes instructions on various affirmative defenses, but "unjust enrichment" is not one of them. The Book of Approved Jury Instructions also does not recognize "unjust enrichment" as a defense to these claims.

(2)     *Second*, even if this were a valid affirmative defense, it would not be available in this case. Google's own authority demonstrates that unjust enrichment cannot be asserted as a defense where the plaintiff "performed its obligations under the contract." *Wilshire Assocs., Inc. v. Ashland Partners & Co.*, 2010 WL 11505571, at *31 (C.D. Cal. Sept. 7, 2010). As reflected in the Pretrial Statement, "Google does not contend that any Plaintiff failed to comply with any of their obligations under the contract." Dkt. 1029 at 28 (describing this as an "[u]ndisputed [f]act").

(3)     *Third*, the Federal Rules of Civil Procedure require instructions only on issues "raised by the evidence," and the evidence does not raise this defense. Fed. R. Civ. P. 51(a), adv. comm. note to 2003 amendment. Plaintiffs are aware of no evidence in the record that could quantify

1   the value of any purported countervailing benefit that Plaintiffs receive from Google's collection of

2   their private browsing data, particularly without speculation or guesswork. *See* Dkt. 700 (Opp. to

3   Lasinski *Daubert*) at 11 (pointing out this same deficiency). During meet-and-confers, Plaintiffs

4   asked what evidence could support such a determination, and Google's counsel declined to respond.

5       (4)     If the Court chooses to instruct the jury on this purported defense, Google's proposal

6   is legally erroneous. Under California law, one is "unjustly enriched" only when they receive a

7   benefit by fraud, mistake, coercion, request, or tortious or otherwise wrongful conduct. *Wilshire*

8   2010 WL 11505571, at *31 (the remedy of unjust enrichment may apply "in lieu of breach of

9   contract damages" or when a benefit is obtained "by fraud, duress, conversion, or similar conduct");

10  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (unjust enrichment based on

11  fraud, mistake, coercion, or request); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014)

12  (unjust enrichment based on wrongdoing). At a minimum, the instruction should reflect Google's

13  burden to prove that Plaintiffs' purported "benefit" from the collection of their private browsing

14  data was procured by fraud, mistake, coercion, request, or other tortious or wrongful conduct.

15  **Google's Statement:**

16

17      (1)     Google's instruction, based on case law regarding the affirmative defense of unjust

18  enrichment, is a correct statement of the law and clearly lists the elements of Unjust Enrichment.

19  Unjust Enrichment is "a general principle, underlying various legal doctrines" and may be raised as

20  a defense to breach of contract and Intrusion Upon Seclusion claims. *Wilshire Assocs., Inc. v.*

21  *Ashland Partners & Co., LLP*, 2010 WL 11505571, at *31 (C.D. Cal. Sept. 7, 2010); *Los Angeles*

22  *Cnty. Emps. Ret. Ass'n v. Towers, Perrin, Forster & Crosby, Inc*., 2002 WL 32919576, at *25 (C.D.

23  Cal. June 20, 2002).

24      (2)     Google's affirmative defense clearly pleads that Plaintiffs cannot fully recover on

25  their Intrusion Upon Seclusion and Breach of Contract claims because such recovery would unjustly

26  enrich Plaintiffs. Google plans to present evidence that Plaintiffs have used and continually

27

28  benefited from Google's services that are enabled by the practices Plaintiffs challenge, without ever

paying a dime to Google. This instruction is therefore necessary to guide the jury in assessing this evidence and reducing the damages for which Google is liable under the Intrusion Upon Seclusion and Breach of Contract claims.

(3)     Plaintiffs' assertion that there is no model for an unjust enrichment affirmative defense does not mean that such a defense does not exist or apply to Plaintiffs' claims. Nor is it correct that this defense does not apply where a plaintiff has preformed under the contract. In *Wilshire Assocs., Inc. v. Ashland Partners & Co., LLP*, 2010 WL 11505571, at *31 (C.D. Cal. Sept. 7, 2010), the court only held that where plaintiffs "performed its obligations under the contract, [defendant] cannot demonstrate that Plaintiff was unjustly enriched by its receipt of information that defendant *was obligated to provide under the contract*. *Id* (emphasis added). That is not the basis of Google's defense, which focuses instead on Plaintiffs' enrichment from services enabled by the conduct they challenge, such as , for example, any benefits incurred from personalization.

(4)     Finally, Plaintiffs' assertion that the *defense* of unjust enrichment may be proven only by showing that there was "fraud, mistake, coercion, request, or tortious or otherwise wrongful conduct" relies on one unpublished Central District of California case. Although that requirement makes sense for an unjust enrichment claim, it cannot apply to the separate doctrine of unjust enrichment as an affirmative defense.  Google's instruction follows controlling California Court of Appeal decisions, which have described the elements of this doctrine as "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881, 883 (2000); *see also Los Angeles Cnty. Emps. Ret. Ass'n v. Towers, Perrin, Forster & Crosby, Inc*., 2002 WL 32919576, at *25 (C.D. Cal. June 20, 2002) (upholding unjust enrichment affirmative defense in tort action and noting that "if [defendant]'s allegedly tortious conduct conferred a benefit to the interest of the plaintiff [that was harmed], the value of this benefit is to be considered in mitigation of damages").

Authorities:
- *Snap! Mobile, Inc. v. Croghan*, 2019 WL 884177, at *8 (N.D. Cal. Feb. 22, 2019) (denying motion to strike unjust enrichment affirmative defense where breach of contract was asserted).
- *Los Angeles Cnty. Emps. Ret. Ass'n v. Towers, Perrin, Forster & Crosby, Inc.*, 2002 WL 32919576, at *25 (C.D. Cal. June 20, 2002) (upholding unjust enrichment affirmative defense in tort action and noting that "if [defendant]'s allegedly tortious conduct conferred a benefit to the interest of the plaintiff [that was harmed], the value of this benefit is to be considered in mitigation of damages").
- *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881, 883 (2000) (summarizing the "elements for a claim of unjust enrichment [as] receipt of a benefit and unjust retention of the benefit at the expense of another").

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**STOP**

**GENERAL CLOSING INSTRUCTIONS**

**(JOINT) PROPOSED JURY INSTRUCTION NO. 10-1**

<u>Duty to Deliberate</u>

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.1 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 10-2**

<u>Consideration of Evidence – Conduct of the Jury</u>

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way, and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website, or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the

trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.2 (2017)]

DATE SUBMITTED: November 1, 2023
DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 10-3**

<u>Communication with Court</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.3 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

**(JOINT) PROPOSED JURY INSTRUCTION NO. 10-4**

Return of Verdict

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.5 (2017)]

DATE SUBMITTED: November 1, 2023

DATE REVISED: _____

CASE NO. 4:20-cv-03664-YGR-SVK
**PROPOSED JURY INSTRUCTIONS**

**SIGNATURE BLOCKS**

DATED: November 1, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: *Andrew H. Schapiro*

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
Joseph H. Margolies (admitted *pro hac vice*)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
D. Seth Fortenbery (admitted *pro hac vice*)
sethfortenbery@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

DATED: November 1, 2023

BOIES SCHILLER FLEXNER LLP

By: */s/ Mark Mao*

David Boies (*pro hac vice*)
dboies@bsfllp.com
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

1  Jonathan Tse (CA Bar No. 305468)
   jonathantse@quinnemanuel.com
2  50 California Street, 22nd Floor
   San Francisco, CA 94111
3  Telephone: (415) 875-6600
   Facsimile: (415) 875-6700
4  *Attorneys for Defendant Google LLC*
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Telephone: (813) 482-4814

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

CASE NO. 4:20-cv-03664-YGR-SVK

**PROPOSED JURY INSTRUCTIONS**

**ATTESTATION**

I, [Name], hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


DATED:   November 1, 2023                    By:  */s/ Mark Mao*