# Exhibit 1 to
# Declaration of Mark C. Mao ISO Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement
# (Redacted)

## SETTLEMENT AGREEMENT

**Exhibit A**
**Exhibit B**
**Exhibit C**
**Exhibit D**
**Exhibit E**

This Settlement Agreement ("**Agreement**") is made between Plaintiffs Chasom Brown, William Byatt, Jeremy Davis, Christopher Castillo, and Monique Trujillo ("**Plaintiffs**"), and Google LLC ("**Google**"), a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California. Each Plaintiff and Google may be referred to herein singularly as a "**Party**" or collectively as the "**Parties**." This Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein) as against the Released Parties (as defined herein), subject to the approval of the Court and the terms and conditions set forth in this Agreement.

### Recitals

WHEREAS, the Complaint was filed on June 2, 2020 (ECF 1) against Google and Alphabet Inc. in the Northern District of California, in the action entitled *Brown, et al. v. Google LLC*, Case No. 4:20-cv-03664-YGR-SVK (the "**Action**") to bring claims for damages and injunctive relief on behalf of the named plaintiffs and purported classes of similarly situated users;

WHEREAS, the Parties filed a stipulation of voluntary dismissal of Defendant Alphabet, Inc. on August 20, 2020 (ECF 51, which the Court granted on August 24, 2020 (ECF 57);

WHEREAS, a First Amended Complaint was filed against Google on September 21, 2020 (ECF 68);

WHEREAS, Google moved to dismiss the First Amended Complaint on October 21, 2020 (ECF 82), which the Court denied on March 12, 2021 (ECF 113);

WHEREAS, the Parties filed a Stipulation and Proposed Order granting Plaintiffs' request for leave to file a Second Amended Complaint on April 14, 2021 (ECF 136), granted on April 15, 2021 (ECF 138);

WHEREAS, a Second Amended Complaint was filed against Google on April 14, 2021 (ECF 136-1);

WHEREAS, Google filed a motion to dismiss counts six and seven of the Second Amended Complaint on May 17, 2021 (ECF 164), which the Court denied on December 22, 20221 (ECF 363);

WHEREAS, Google filed an Answer to the Second Amended Complaint on January 14, 2022 (ECF 387);

WHEREAS, Plaintiffs filed a Motion for Leave to Amend their Complaint on February 3, 2022 (ECF 395), and the Court granted the Motion for Leave to Amend on March 18, 2022 (ECF 504);

WHEREAS, Plaintiffs' Third Amended Complaint attached as Exhibit A to the Motion for Leave to Amend (ECF 395-2) was deemed filed as of March 18, 2022 (ECF 504);

WHEREAS, Google filed an answer to Plaintiffs' Third Amended Complaint on April 8, 2022 (ECF 531);

WHEREAS, the Court denied Plaintiffs' motion to certify a Rule 23(b)(3) class and granted Plaintiffs' motion to certify two Rule 23(b)(2) classes on December 12, 2022 (ECF 803);

WHEREAS, the Parties filed a Stipulation on February 28, 2023 that Plaintiffs may file a Fourth Amended Complaint solely amending the Prayer for Relief to clarify which remedies apply to each claim (ECF 880), which the Court adopted on March 2, 2023 (ECF 885)

WHEREAS, Plaintiffs filed their Fourth Amended Complaint on March 18, 2023 (ECF 886);

WHEREAS, Google's Answer to the Third Amended Complaint (ECF 531) was deemed applicable to the Fourth Amended Complaint by Stipulation and Order on March 16, 2023 (ECF 897);

WHEREAS, Google moved for summary judgment as to all of Plaintiffs' claims on March 21, 2023 (ECF 908), which the Court denied on August 7, 2023 (ECF 969);

WHEREAS, the Court held a pre-trial conference on November 29, 2023 (ECF 1077), and trial was scheduled to begin January 29, 2024 (later moved to February 5, 2024 (ECF 1088));

WHEREAS, prior to commencing any mediation, this Action was the subject of extensive litigation and discovery;

WHEREAS, the Parties held a first mediation session with the Hon. Layn R. Phillips (Ret.) on September 29, 2023 and held continued arm's-length settlement negotiations and exchanges of information over the next two months, under the supervision of Judge Phillips and his staff;

WHEREAS, the Parties had previously discussed the possibility of settlement discussions but decided that such discussions were premature and would have been futile prior to any class certification and summary judgment rulings;

WHEREAS, the Parties are entering into the Settlement to avoid the risk, burdens, and expense of continued litigation and trial;

WHEREAS, without Google admitting liability or that its practices and policies were wrongful, the Parties agree that this Settlement requires certain changes by Google that will provide benefits to members of the two classes certified by the Court;

WHEREAS, the Parties are entering into this Settlement without having discussed or agreed upon any amount of attorneys' fees, costs, or expenses that might be awarded or any service awards;

WHEREAS, the Parties agree that by entering into this Settlement, Google is not admitting any liability, fault, or violation of law, and that Google denies all allegations and claims asserted against it;

WHEREAS, each Party has independently determined that it is desirable and beneficial for the Action to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement;

WHEREAS, on December 26, 2023, the Parties reached an agreement in principle on terms and conditions of Settlement and executed a term sheet regarding the claims on behalf of the Classes and a term sheet regarding Plaintiffs' individual damages claims; and

WHEREAS, the Parties, by and through their respective undersigned counsel, have agreed to this Settlement on the terms and conditions set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for

themselves and the Class Members) and Google, by and through their counsel, that, subject to the approval of the Court, the Action and the Released Claims will be finally and fully compromised, settled, and released, and the Action will be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of the following Agreement.

IT IS HEREBY AGREED as follows:

## I.   DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings given:

1. "**Class Counsel**" shall mean each of the law firms of Boies Schiller Flexner LLP, Susman Godfrey LLP, and Morgan & Morgan, P.A.

2. "**Class Member**" shall mean any individual who is a member of either or both of the classes certified by the Court's December 12, 2022 order:

   Class 1: All Chrome browser users with a Google account who accessed a non-Google website containing Google tracking or advertising code using such browser and who were (a) in "Incognito mode" on that browser and (b) were not logged into their Google account on that browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present.

   Class 2: All Safari, Edge, and Internet Explorer users with a Google account who accessed a non-Google website containing Google tracking or advertising code using such browser and who were (a) in a "private browsing mode" on that browser and (b) were not logged into their Google account on that browser, but whose communications, including identifying information and online browsing history, Google nevertheless intercepted, received, or collected from June 1, 2016 through the present.

3. "**Costs**" Costs shall encompass any out-of-pocket costs that would reasonably be paid by a fee-paying client, including expert fees.  All challenges as to reasonableness are reserved by Google.

4. "**Court**" shall mean the Honorable Yvonne Gonzalez-Rogers of the United States District Court for the Northern District of California.

5. "**Effective Date for Class Claims**" shall mean the date on which the time for filing an appeal from the Court's issuance of an order granting final approval of this Agreement has either expired without an appeal being filed, or if later, after any appeal has been fully resolved upholding the Agreement (including requests for rehearing, rehearing *en banc*, and petitions for certiorari), at which time the obligations set forth in this Agreement and the terms of this Agreement become binding on Google, the Plaintiffs, the Class Members, Class Counsel, and anyone else who has undertaken an obligation under this Agreement.

6. "**Effective Date for Individual Claims**" shall mean the date on which the office of the Hon. Layn Phillips (Ret.) issues a final arbitral award on the Plaintiffs' damages claims.

7. "**Final Approval Order**" shall mean the order entered by the Court providing final approval to this Settlement Agreement.

8. "**Google Affiliates**" shall mean (i) all entities now or in the future controlling, controlled by or

under common control with Google (ii) all entities in the past controlling, controlled by or under common control with Google, for the period of time that such control exists or existed; and (iii) predecessors, successors or successors in interest thereof, including all entities formed or acquired by Google in the future that come to be controlled by Google. For purposes of this definition, "control" means possession directly or indirectly of the power to direct or cause the direction of management or policies of a company or entity through the ownership of voting securities, contract, or otherwise, and "entities" includes all persons, companies, partnerships, corporations, associations, organizations, and other entities. For purposes of this Agreement, Google Affiliates shall not include CapitalG, or any entities that otherwise would be deemed an Affiliate of Google as a result of an investment by CapitalG or GV even where such investment may afford CapitalG or GV some level of control over the entity.

9. "**Google Agents**" shall mean all agents, advisors, attorneys, and representatives of Google and/or Google Affiliates.

10. "**Individual Claims**" shall mean any and all claims, matters, or rights that Plaintiffs have asserted or could have asserted in the Action related to Google's collection, storage, or use of data generated while the Plaintiffs were using a private browsing mode, including all Plaintiffs' damages claims and the right to appeal the denial of a Rule 23(b)(3) class.

11. "**Released Claims**" shall mean the Released Class Claims and the Individual Claims.

12. "**Released Class Claims**" shall mean any and all certified claims asserted on behalf of the certified Classes for injunctive, declaratory, or any other equitable non-monetary relief. Released Class Claims expressly excludes Plaintiffs' and other Releasing Class Members' claims for damages that they may pursue on an individual basis. The Released Class Claims do not include any claim for monetary relief of any kind, including but not limited to any claims for statutory penalties, damages, unjust enrichment, disgorgement, restitution, punitive damages, or any other monetary claim within the scope of the Rule 23(b)(3) classes for which Plaintiffs sought and were denied certification.

13. "**Released Parties**" shall mean Google, Google Affiliates, and Google Agents.

14. "**Releasing Class Members**" shall mean Class Members and anyone claiming through or on behalf of any of them, including but not limited to each of their respective heirs, estates, predecessors, successors, agents, and assigns.

15. "**Releasing Plaintiffs**" shall mean Plaintiffs and anyone claiming through or on behalf of any of them, including but not limited to each of their respective heirs, estates, predecessors, successors, agents, and assigns.

16. "**Settlement**" shall mean the terms and conditions of settlement embodied in this Agreement.

## II.   SCOPE AND EFFECT OF SETTLEMENT

1. **Scope of Settlement.** This Settlement Agreement comprises and resolves only the Released Claims.

2. **Binding Effect of Settlement Upon Class Members.** If this Settlement is approved by the Court, at the Effective Date for Class Claims, all persons within the Classes will be bound by the terms of the Agreement.

3. **Objections.** Any Class Member who wishes to object to the fairness, reasonableness, or adequacy

of the Settlement, or the application of Class Counsel for an award of attorneys' fees, costs, expenses, and/or for service awards for Plaintiffs, must do so timely within 35 days after Plaintiffs file their motion seeking final approval or 35 days after Plaintiffs file their application for attorneys' fees, costs, and expenses.

4. **No Additional Notice to Class Members.** Based on their review of Rule 23, the Court's prior rulings concerning class settlements involving only Rule 23(b)(2) injunctive relief, and the fact that the disclosure changes (*see* Section III.1 below) will provide certain notice to the Classes, the Parties agree that no additional notice plan is required. The Parties will ultimately defer to the Court on that determination. To the extent any additional notice is required, Google will provide and/or bear the costs of such notice.

5. **Final Approval Proceedings.** Plaintiffs will promptly request that the Court hold the Final Approval Hearing. Based on their review of Rule 23 and the Court's prior rulings, the Parties agree that Plaintiffs should and will file an unopposed motion seeking final approval of the Settlement. The Parties agree that no motion for preliminary approval is required. Google will not oppose Plaintiffs' motion seeking final approval of this Settlement, and Plaintiffs will provide Google reasonable opportunity to comment on the approval documents before they are filed. Any comment from Google will be considered by Plaintiffs but such comments are neither binding on Plaintiffs nor a condition precedent to Google's agreement not to oppose Plaintiffs' motion seeking final approval of this Settlement. At the Final Approval Hearing, Plaintiffs will request entry of an order granting final approval of this Agreement, including:

    (a)     finally approving the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to this Agreement;

    (b)     directing that the Action be dismissed with prejudice, and releasing the Released Claims as set forth below;

    (c)     reserving jurisdiction with respect to implementation and enforcement of the terms of the Agreement; and

    (d)     containing such other and further provisions consistent with the terms of the Settlement to which the Parties expressly consent in writing.

6. **Effect of Non-Approval or Material Modification.** In the event the Court does not grant final approval or requires any material modification to the Settlement to which any Party does not assent, the litigation will return to the status quo before submission of the Settlement for approval.

7. **Extinguishment of Released Class Claims.** Upon the Effective Date for Class Claims, all Releasing Class Members will be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Class Claims against Released Parties. Upon the Effective Date for Class Claims, all Releasing Class Members will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Class Claim against any of the Released Parties. As to the Released Class Claims only, all Releasing Class Members hereby expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR

RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasing Class Members expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Class Claims. In connection with such waiver and relinquishment, Releasing Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Class Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Class Claims known or unknown, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties. In furtherance of such intention, the Release herein given by Releasing Class Members to the Released Parties shall be and remain in effect as a full and complete general release as to the Released Class Claims, notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledges that he/she/it has been advised by his/her/its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section. Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this Release is a part.

8. **Binding Arbitration of Plaintiffs' Damages Claims and Waiver of Right to Appeal Order Denying Plaintiffs' Motion to Certify a Rule 23(b)(3) Class (ECF 803).** Upon the Settlement of the Released Class Claims becoming effective on the Effective Date for Class Claims, Plaintiffs shall (1) submit to confidential and binding arbitration, per the terms below, the determination of monetary relief for all of their individual claims for monetary relief of all kinds, including but not limited to their claims for statutory penalties, damages, unjust enrichment, disgorgement, restitution, punitive damages, or any other monetary claim arising out of their claims in this case (collectively, "Individual Claims"); and (2) waive any right to appeal the Court's order denying the Plaintiffs' motion to certify a Rule 23(b)(3) class (ECF 803). For the avoidance of doubt, upon the Effective Date for Class Claims, Plaintiffs' right to appeal the Court's order denying certification of a Rule 23(b)(3) class (ECF 803) is extinguished. Should the Settlement of the Class Claims not become effective (either because it is rejected by the Court or on appeal), the litigation will return to the status quo before submission of the Settlement for approval.

9. **Arbitration Procedures.** Plaintiffs and Google agree to resolve Plaintiffs' individual claims for monetary relief in amounts to be determined by the office of Judge Phillips in separate confidential, binding arbitration proceedings to be conducted on the papers after the Effective Date for Class Claims. For the avoidance of doubt, the arbitration proceedings will determine only the amount of monetary relief to be awarded to the Plaintiffs. Within three business days of the Effective Date for Class Claims, the parties shall jointly request the office of Judge Phillips to issue a schedule of proceedings. Such arbitrations shall be concluded within 90 days after the Effective Date for Class Claims. The arbitrations shall be conducted on the papers, except for (1) examination of the Plaintiffs, if either the Plaintiff or Google so elects; and (2) closing argument or other equivalent presentation by counsel.

10. **Extinguishment of Individual Claims.** Upon the Effective Date for Individual Claims, all Releasing Plaintiffs, will be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Individual Claims against Released Parties. Upon the Effective Date for Individual Claims, all Releasing Plaintiffs, will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claim against any of the Released Parties. As to the Released Claims only, all Releasing Plaintiffs hereby expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasing Plaintiffs expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, Releasing Plaintiffs hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties. In furtherance of such intention, the Release herein given by Releasing Plaintiffs to the Released Parties shall be and remain in effect as a full and complete general release as to the Released Claims, notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledges that he/she/it has been advised by his/her/its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section. Plaintiffs acknowledge that the foregoing waiver was separately bargained for and a material element of the Settlement of which this Release is a part.

## III.  SETTLEMENT CONSIDERATIONS

1. **Disclosure Changes.** Google will streamline and clarify disclosures that describe the purpose and functionality of Incognito and other private browsing modes to address Plaintiffs' claim that Google's disclosures are misleading. Any changes are subject to subsequent modification to adapt to legal or regulatory requirements and changes in Google's policies, practices or technology. The Parties jointly represent to the Court that the specified disclosure changes that Google makes as part of this Settlement are sufficient to notify Class Members of Google's data collection at issue. Google will immediately start the process of implementing the disclosure changes to complete the disclosure changes by March 31, 2024. The changes are depicted in Exhibit A and are summarized below:

   a.  Modify the Incognito Screen to make clear that Incognito mode won't change how data is collected by websites you visit and the services they use, including Google.

b. Modify the Chrome Incognito Privacy Tour linked to the Incognito Screen's "Learn more" button (the "Chrome Incognito Privacy Tour" page) to clarify that the websites users visit and the third party resources on those websites are among the entities to whom users' activity may be visible in Incognito mode.

c. Modify the Privacy Policy to (1) remove or modify the language that Plaintiffs claim is misleading to clarify that the data collection that occurs when users visit third party websites using Google services, described in the Privacy Policy, is not contingent on which browser or mode is being used; and (2) specifically state that using Incognito or another browser's private browsing mode does not block the data collection (including by Google).

d. Deprecate the Chrome Privacy Notice.

e. Deprecate the Chrome White Paper.

2. **Data Remediation.** By the later of either Final Court Approval of the Settlement or 275 days after Google completes the disclosure changes described above, Google will substantially remediate the at issue data by taking the following steps:

a. Field-based remediation for at issue private browsing data older than nine months in certain logs, as explained in more detail in Exhibit B. Field-based remediation includes: (1) generalizing UA strings; (2) deleting detailed URLs (while retaining domain and URL parameters); and (3) deleting the X-client data header value. Google will remediate these fields in the Display Ads logs identified in Exhibit B, with IP addresses already truncated at nine months. Google's current estimate is that this field-based remediation will impact billions of event records, which would include records of data received by Google in connection with all of the at-issue private browsing modes.

b. As further reflected in Exhibit B, Google will shorten the retention period of certain logs such that data older than the new retention period will be deleted wholesale. Data that is retained but older than nine months will be subject to the field-based remediation described in Subsection 2(a). Google's current estimate is that this deletion will impact billions of event records, which would include records of data received by Google in connection with all of the at issue private browsing modes.

c. Google agrees not to repopulate the deleted or remediated data in these logs from other sources.

d. Google agrees that the additional representations contained in Exhibit C for its Analytics logs are accurate and incorporated herein.

e. Google will timely deprecate the four detection bits identified in Exhibit D (*i.e.*, Google will remove them from the code such that the bits will not be logged in the future). Google further represents a good faith effort has been made to confirm that no other detection bits exist for inferring Chrome's Incognito mode and that no other such detection bits have been identified pursuant to such good faith effort.

3. **Quantification of Remediation and Deprecation Efforts.** Google will track the efforts required to implement the Data Remediation and deprecation of the four detection bits identified in Exhibit D, and quantify the amount of data deleted or remediated, at the order of magnitude level and provide that information to the extent the Court or objectors request it.

4. **Catalyst Recognition.** Google agrees that Plaintiffs' lawsuit and/or this Settlement were a

substantial catalyst for (1) all of the above disclosure changes and data remediation and (2) the deployment of certain Chrome enhancements through Chromeguard, which was fully rolled out following the filing of this lawsuit in 2020, including Google's deployment of a third-party cookie blocker toggle on the Chrome Incognito New Tab Page "on" by default for all Chrome users.

5. **Maintaining Chromeguard.** Google agrees to maintain the functionality to block third-party cookies in Incognito mode for five years following the Final Approval Order, subject to reasonably necessary subsequent modifications to adapt to legal or regulatory requirements and changes in Google's policies, practices, or technology.

6. **Preservation of Data if Legally Required.** Notwithstanding any of the above, Google may preserve a copy of the data for the purposes required by law or Court order. Nothing in this Settlement or Agreement shall be read to excuse Google from any other obligation to preserve data imposed by law or Court order. If all such legal obligations to preserve the data above expires or terminates, Google shall promptly delete or remediate the data pursuant to the above provisions.

## IV. ATTORNEYS' FEES AND COSTS; SERVICE AWARDS

1. **Attorneys' Fees and Costs.** Google agrees to bear its own fees and costs. Google does not dispute that class counsel are entitled to some award of attorneys' fees and costs, but reserves the right to contest the reasonableness of the amounts requested. Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses either in conjunction with or after the Final Approval Hearing. Any fee and cost award must be approved by the Court. Google will pay any fees and costs to Class Counsel in the amount awarded by the Court. Google, Plaintiffs, and Class Counsel agree further that neither will appeal the fact or amount of any fees and costs awarded by the Court. A fee and cost award by the Court that is less than the amount Class Counsel seek is no basis to withdraw from this Agreement.

2. **Service Awards.** In conjunction with their application for attorney's fees and reimbursement of expenses, Class Counsel may request that the Court approve service awards to the Plaintiffs. Google will pay the service awards in the amount ordered by the Court. Google, Plaintiffs, and Class Counsel agree that neither will appeal the fact or amount of any service awards awarded by the Court. A service award by the Court that is less than the amount sought will not provide a basis to withdraw from this Agreement.

3. **Payment of Fees, Costs and Service Awards.** Google shall pay attorneys' fees and costs and service awards by ACH within thirty (30) business days of the Effective Date for Class Claims where Class Counsel has provided the account name, account number, and other necessary payment information in Exhibit E. Plaintiffs and Class Counsel will be responsible for any duties, taxes, or levies to which they are subject as a result of such payments and Google shall not be liable at any time for any of the Plaintiffs or Class Counsel taxes incurred in connection with or related to such payments.

## V. DESTRUCTION OF NON-PUBLIC MATERIAL

1. **Stipulated Protective Order.** The Parties and their respective counsel will comply with the terms concerning the destruction of Protected Material in the Stipulated Protective Order As Modified by the Court ("Stipulated Protective Order") entered in this Action (Dkt. 81) and their continuing obligation to not disclose in any manner any information or item that is subject to the Stipulated Protective Order to any person or entity except in strict compliance with its provisions. The Stipulated Protective Order provides that "final disposition" of the Action triggers the duty to

destroy or return all Protected Material. For purposes of the Stipulated Protective Order, "final disposition" is the Effective Date for Individual Claims.

2. **Other Non-Public Information.** In addition to the Parties' respective obligations with respect to the destruction of Protected Materials under the Stipulated Protective Order entered in this Action, the Parties further agree that within thirty (30) days of the Effective Date for Individual Claims, the Parties will destroy or return, except as indicated below, all non-public information acquired from the other Party during the course of the Action. Unless otherwise requested by Google in writing, all material marked as relating to Google's Source Code produced during the Action will be destroyed within thirty (30) days of the Effective Date for Class Claims.

3. **Verifications.** The Parties' respective counsel will each issue verifications certifying that the provisions of this paragraph have been complied with within forty-five (45) days of the relevant Effective Date for Class Claims.

## VI.  NO ADMISSION OF LIABILITY

1. **No Admission of Liability.** This Settlement is the resolution of a dispute between the Parties. Nothing in or required by this Agreement, or anything that any of the Parties stated or did during the negotiation of this Settlement or this Agreement, will be construed or used in any manner as an admission of liability or evidence of either Party's fault, liability or wrongdoing. The Parties expressly deny any liability or wrongdoing whatsoever.

2. **Limitation on Use of Settlement Terms.** Except as otherwise provided or in connection with the settlement approval process (including Class Counsel's anticipated motion for an award of attorneys' fees and reimbursement of costs and expenses) or to enforce the Settlement, neither the Parties nor their counsel will attempt to use any aspect of this Settlement or Agreement as evidence in this or any other matter. For instance, (1) neither Plaintiffs nor their counsel will argue that the disclosure changes provided in this Settlement are evidence of the prior disclosures' inadequacy and (2) neither Google nor its counsel will argue that Plaintiffs' or their counsel's agreement to remedial measures evidence that they are sufficient to fully remedy Google's past conduct.

## VII.  GENERAL PROVISIONS

1. **Entire Understanding.** This Agreement and its Exhibits constitute the complete, final and exclusive embodiment of the entire agreement between the Parties with regard to the subject matter herein. It is entered into without reliance on any promises, warranties or representations, written or oral, other than those expressly contained herein, and it supersedes any other promises, warranties or representations. This Agreement and its Exhibits cannot be modified or amended except by a written agreement, signed by the Parties to be bound by such modification or amendment, and which specifically mentions this Agreement.

2. **Severability.** Except as otherwise provided in this Agreement, the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

3. **No Construction Against Any Party.** This Agreement shall be construed as if the Parties jointly prepared it. Any uncertainty or ambiguity shall not be interpreted against any one Party, even if that Party prepared the Agreement.

4. **Parties' Knowledge and Advice of Counsel.** The Parties execute this Agreement freely and voluntarily and without acting under any duress or in reliance upon any threat made by or on behalf

of the other Party. Each Party has consulted with or has had an opportunity to consult with counsel of its own choice about the legal effect of entering into this Agreement, and executes this Agreement being fully informed as to its terms, content and legal effect.

5. **No Waiver.** Neither Party will be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under this Agreement. Moreover, a waiver of any breach of this Agreement by any Party shall not be deemed to be a waiver by any Party of any other breach of this Agreement.

6. **Authority to Execute.** Each counsel or other person executing the Agreement on behalf of a party hereto warrants that such Person has the full authority to do so. Class Counsel, on behalf of the Class, are expressly authorized to take all appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms. All Parties covenant and represent that they have consulted with competent counsel prior to entering into this Agreement.

7. **No Prior Assignments.** The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or that are rights released or discharged in this settlement except as set forth in this Agreement.

8. **Choice of Law and Continuing Jurisdiction.** This Agreement should be interpreted, enforced, construed and controlled by the laws of the State of California, without reference to principles of conflicts or choice of law provisions. The Court will retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement and matters related to this settlement.

9. **Counterparts.** This Agreement may be executed by the Parties in counterparts and exchanged by electronic means, with the same effect as if all Parties had signed the same instrument.

\*     \*     \*     \*     \*

[Remainder of Page Intentionally Left Blank. Signature Page to Follow.]

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the Effective Date.

Dated: ~~February~~ March 1, 2024

Signature _Andrew H. Schapiro_

Printed:  Andrew H. Schapiro,

Title:  Partner, Quinn Emanuel LLP

Counsel for Google LLC


Dated: February ___, 2024
3/9/2024

Signature _David Boies_

Printed: David Boies

Title:  Partner, Boies Schiller Flexner LLP

Counsel for Plaintiffs & Certified Class


Dated: February , 2024
3/11/2024

Signature _John Yanchunis_

Printed: John A. Yanchunis

Title:  Partner, Morgan & Morgan

Counsel for Plaintiffs & Certified Class


Dated: February , 2024
3/11/2024

Signature

Printed: Bill Carmody

Title:  Partner, Susman Godfrey LLP

Counsel for Plaintiffs & Certified Class

DocuSign Envelope ID: 6AD024E5-BA94-40GA-A7A2-9B51BD85305EE

**Executed By:**

Dated: February , 2024

Signature _Cassandra Knight_
DocuSigned by:
DUADFBBA5B5249E...

Printed: Cassandra Knight

Title: Vice President, Legal, Google LLC

Dated: ~~February~~ March 1 , 2024

Signature _Chason Brown_

Printed: Chasom Brown

Title: Plaintiff

Dated: ~~February~~ March 1 , 2024

Signature _William Byatt_

Printed: William Byatt

Title: Plaintiff

Dated: ~~February~~ March 1 , 2024

Signature _Christopher Castillo_

Printed: Christopher Castillo

Title: Plaintiff

Dated: ~~February~~ March 1 , 2024

Signature _Jeremy Davis_

Printed: Jeremy Davis

Title: Plaintiff

Dated: ~~February~~ March 1 , 2024

Signature _Monique Trujillo_

Printed: Monique Trujillo

Title: Plaintiff

# EXHIBIT A

Jump to:

- Google Privacy Policy
- 'How Google uses information from sites or apps that use our services' article
- Chrome Incognito Splash Screen
- 'How Chrome Incognito keeps your browsing private' Help Center Article
- 'Browse in private' Help Center Article

**Google Privacy Policy**

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 18 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

# GOOGLE PRIVACY POLICY



GOOGLE PRIVACY POLICY

When you use our services, you're trusting us with your information. We understand this is a big responsibility and work hard to protect your information and put you in control.

This Privacy Policy is meant to help you understand what information we collect, why we collect it, and how you can update, manage, export, and delete your information.



Privacy Checkup

Looking to change your privacy settings?

Take the Privacy Checkup ☒

Effective October 4, 2023 | Archived versions | Download PDF

We build a range of services that help millions of people daily to explore and interact with the world in new ways. Our services include:

- Google apps, sites, and devices, like Search, YouTube, and Google Home
- Platforms like the Chrome browser and Android operating system
- Products that are integrated into third-party apps and sites, like ads, analytics, and embedded Google Maps

You can use our services in a variety of ways to manage your privacy. For example, you can sign up for a Google Account if you want to create and manage content like emails and photos, or see more relevant search results. And you can use many Google services when you're signed out or without creating an account at all, like searching on Google or watching YouTube videos. You can also choose to browse the web in a private mode, like Chrome Incognito mode, which helps keep your browsing private from other people who use your device. And across our services, you can adjust your privacy settings to control whether we collect some types of data and

how we use it.

To help explain things as clearly as possible, we've added examples, explanatory videos, and definitions for key terms. And if you have any questions about this Privacy Policy, you can contact us.

# INFORMATION GOOGLE COLLECTS

We want you to understand the types of information we collect as you use our services

We collect information to provide better services to all our users — from figuring out basic stuff like which language you speak, to more complex things like which ads you'll find most useful, the people who matter most to you online, or which YouTube videos you might like. The information Google collects, and how that information is used, depends on how you use our services and how you manage your privacy controls.

When you're not signed in to a Google Account, we store the information we collect with unique identifiers tied to the browser, application, or device you're using. This allows us to do things like maintain your preferences across browsing sessions, such as your preferred language or whether to show you more relevant search results or ads based on your activity.

When you're signed in, we also collect information that we store with your Google Account, which we treat as personal information.

## Things you create or provide to us

When you create a Google Account, you provide us with personal information that includes your name and a password. You can also choose to add a phone number or payment information to your account. Even if you aren't signed in to a Google Account, you might choose to provide us with information — like an email address to communicate with Google or receive updates about our services.

We also collect the content you create, upload, or receive from others when using our services. This includes things like email you write and receive, photos and videos you save, docs and spreadsheets you create, and comments you make on YouTube videos.

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 20 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

# Information we collect as you use our services

## Your apps, browsers & devices

We collect information about the apps, browsers, and devices you use to access Google services, which helps us provide features like automatic product updates and dimming your screen if your battery runs low.

The information we collect includes unique identifiers, browser type and settings, device type and settings, operating system, mobile network information including carrier name and phone number, and application version number. We also collect information about the interaction of your apps, browsers, and devices with our services, including IP address, crash reports, system activity, and the date, time, and referrer URL of your request.

We collect this information when a Google service on your device contacts our servers — for example, when you install an app from the Play Store or when a service checks for automatic updates. If you're using an Android device with Google apps, your device periodically contacts Google servers to provide information about your device and connection to our services. This information includes things like your device type and carrier name, crash reports, which apps you've installed, and, depending on your device settings, other information about how you're using your Android device.

## Your activity

We collect information about your activity in our services, which we use to do things like recommend a YouTube video you might like. The activity information we collect may include:

- Terms you search for
- Videos you watch
- Views and interactions with content and ads
- Voice and audio information
- Purchase activity
- People with whom you communicate or share content
- Activity on third-party sites and apps that use our services
- Chrome browsing history you've synced with your Google Account



Websites and apps that integrate Google services like ads and analytics share information with us.

This information is collected regardless of which browser or browser mode you use. For example, although Incognito mode in Chrome can help keep your browsing private from other people who use your device, third party sites and apps that integrate our services may still share information with Google when you visit them.

You can learn more about some of the ways you can control the information that is shared when you visit or interact with sites and apps that use Google services.

If you use our services to make and receive calls or send and receive messages, we may collect call and message log information like your phone number, calling-party number, receiving-party number, forwarding numbers, sender and recipient email address, time and date of calls and messages, duration of calls, routing information, and types and volumes of calls and messages.

You can visit your Google Account to find and manage activity information that's saved in your account.

Go to Google Account

Your location information

We collect information about your location when you use our services, which helps us offer features like driving directions, search results for things near you, and ads based on your general location.

Your location can be determined with varying degrees of accuracy by:

- GPS and other sensor data from your device
- IP address
- Activity on Google services, such as your searches and places you label like home or work
- Information about things near your device, such as Wi-Fi access points, cell towers, and Bluetooth-enabled devices

The types of location data we collect and how long we store it depend in part on your device and account settings. For example, you can turn your Android device's location on or off using the device's settings app. You can also turn on Location History if you want to create a private map of where you go with your signed-in devices. And if your Web & App Activity setting is enabled, your searches and other activity from Google services, which may also include location information, is saved to your Google Account. Learn more about how we use location information.

In some circumstances, Google also collects information about you from publicly accessible sources. For example, if your name appears in your local newspaper, Google's Search engine may index that article and display it to other people if they search for your name. We may also collect information about you from trusted partners, such as directory services who provide us with business information to be displayed on Google's services, marketing partners who provide us with information about potential customers of our business services, and security partners who provide us with information to protect against abuse. We also receive information from advertising partners to provide advertising and research services on their behalf.

We use various technologies to collect and store information, including cookies, pixel tags, local storage, such as browser web storage or application data caches, databases, and server logs.

# WHY GOOGLE COLLECTS DATA

We use data to build better services

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 23 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

We use the information we collect from all our services for the following purposes:

## Provide our services

We use your information to deliver our services, like processing the terms you search for in order to return results or helping you share content by suggesting recipients from your contacts.

## Maintain & improve our services

We also use your information to ensure our services are working as intended, such as tracking outages or troubleshooting issues that you report to us. And we use your information to make improvements to our services — for example, understanding which search terms are most frequently misspelled helps us improve spell-check features used across our services.

## Develop new services

We use the information we collect in existing services to help us develop new ones. For example, understanding how people organized their photos in Picasa, Google's first photos app, helped us design and launch Google Photos.

## Provide personalized services, including content and ads

We use the information we collect to customize our services for you, including providing recommendations, personalized content, and customized search results. For example, Security Checkup provides security tips adapted to how you use Google products. And Google Play uses information like apps you've already installed and videos you've watched on YouTube to suggest new apps you might like.

Depending on your settings, we may also show you personalized ads based on your interests. For example, if you search for "mountain bikes," you may see ads for sports equipment on YouTube. You can control what

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR  Document 1097-4  Filed 04/01/24  Page 24 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

information we use to show you ads by visiting your ad settings in My Ad Center.

- We don't show you personalized ads based on sensitive categories, such as race, religion, sexual orientation, or health.
- We don't show you personalized ads based on your content from Drive, Gmail, or Photos.
- We don't share information that personally identifies you with advertisers, such as your name or email, unless you ask us to. For example, if you see an ad for a nearby flower shop and select the "tap to call" button, we'll connect your call and may share your phone number with the flower shop.

Go to My Ad Center

## Measure performance

We use data for analytics and measurement to understand how our services are used. For example, we analyze data about your visits to our sites to do things like optimize product design. And we also use data about the ads you interact with to help advertisers understand the performance of their ad campaigns. We use a variety of tools to do this, including Google Analytics. When you visit sites or use apps that use Google Analytics, a Google Analytics customer may choose to enable Google to link information about your activity from that site or app with activity from other sites or apps that use our ad services.

## Communicate with you

We use information we collect, like your email address, to interact with you directly. For example, we may send you a notification if we detect suspicious activity, like an attempt to sign in to your Google Account from an unusual location. Or we may let you know about upcoming changes or improvements to our services. And if you contact Google, we'll keep a record of your request in order to help solve any issues you might be facing.

## Protect Google, our users, and the public

We use information to help improve the safety and reliability of our services. This includes detecting, preventing,

and responding to fraud, abuse, security risks, and technical issues that could harm Google, our users, or the public.

---

We use different technologies to process your information for these purposes. We use automated systems that analyze your content to provide you with things like customized search results, personalized ads, or other features tailored to how you use our services. And we analyze your content to help us detect abuse such as spam, malware, and illegal content. We also use algorithms to recognize patterns in data. For example, Google Translate helps people communicate across languages by detecting common language patterns in phrases you ask it to translate.

We may combine the information we collect among our services and across your devices for the purposes described above. For example, if you watch videos of guitar players on YouTube, you might see an ad for guitar lessons on a site that uses our ad products. Depending on your account settings, your activity on other sites and apps may be associated with your personal information in order to improve Google's services and the ads delivered by Google.

If other users already have your email address or other information that identifies you, we may show them your publicly visible Google Account information, such as your name and photo. This helps people identify an email coming from you, for example.

We'll ask for your consent before using your information for a purpose that isn't covered in this Privacy Policy.

# YOUR PRIVACY CONTROLS

You have choices regarding the information we collect and how it's used

This section describes key controls for managing your privacy across our services. You can also visit the Privacy Checkup, which provides an opportunity to review and adjust important privacy settings. In addition to these tools, we also offer specific privacy settings in our products — you can learn more in our Product Privacy Guide.

Go to Privacy Checkup

## Managing, reviewing, and updating your information

DocuSign Envelope ID: 6AD024E5-8A94-40GA-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR  Document 1097-4  Filed 04/01/24  Page 26 of 60
**Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet**

When you're signed in, you can always review and update information by visiting the services you use. For example, Photos and Drive are both designed to help you manage specific types of content you've saved with Google.

We also built a place for you to review and control information saved in your Google Account. Your Google Account includes:

Privacy controls

## Activity Controls

Decide what types of activity you'd like saved in your account. For example, if you have YouTube History turned on, the videos you watch and the things you search for are saved in your account so you can get better recommendations and remember where you left off. And if you have Web & App Activity turned on, your searches and activity from other Google services are saved in your account so you can get more personalized experiences like faster searches and more helpful app and content recommendations. Web & App Activity also has a subsetting that lets you control whether information about your activity on other sites, apps, and devices that use Google services, such as apps you install and use on Android, is saved in your Google Account and used to improve Google services.

Go to Activity Controls

## Ad settings

Manage your preferences about the ads shown to you on Google and on sites and apps that partner with Google to show ads. You can modify your interests, choose whether your personal information is used to make ads more relevant to you, and turn on or off certain advertising services.

Go to My Ad Center

## About you

Manage personal info in your Google Account and control who can see it across Google services.

Go to About You

## Shared endorsements

Choose whether your name and photo appear next to your activity, like reviews and recommendations, that appear in ads.

Go to Shared Endorsements

## Sites and apps that use Google services

Manage information that websites and apps using Google services, like Google Analytics, may share with Google when you visit or interact with their services.

Go to How Google uses information from sites or apps that use our services

Ways to review & update your information

## My Activity

My Activity allows you to review and control data that's saved to your Google Account when you're signed in and using Google services, like searches you've done or your visits to Google Play. You can browse by date and by topic, and delete part or all of your activity.

Go to My Activity

## Google Dashboard

Google Dashboard allows you to manage information associated with specific products.

Go to Dashboard

## Your personal information

Manage your contact information, such as your name, email, and phone number.

Go to Personal Info

When you're signed out, you can manage information associated with your browser or device, including:

- Signed-out search personalization: Choose whether your search activity is used to offer you more

DocuSign Envelope ID: 6AD024E5-8A94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 28 of 60
**Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet**

relevant results and recommendations.

- YouTube settings: Pause and delete your YouTube Search History and your YouTube Watch History.
- Ad Settings: Manage your preferences about the ads shown to you on Google and on sites and apps that partner with Google to show ads.

## Exporting, removing & deleting your information

You can export a copy of content in your Google Account if you want to back it up or use it with a service outside of Google.

Export your data

To delete your information, you can:

- Delete your content from specific Google services
- Search for and then delete specific items from your account using My Activity
- Delete specific Google products, including your information associated with those products
- Delete your entire Google Account

Delete your information

Inactive Account Manager allows you to give someone else access to parts of your Google Account in case you're unexpectedly unable to use your account.

And finally, you can also request to remove content from specific Google services based on applicable law and our policies.

---

There are other ways to control the information Google collects whether or not you're signed in to a Google Account, including:

- Browser settings: For example, you can configure your browser to indicate when Google has set a

DocuSign Envelope ID: 6AD024E5-8A94-40GA-A7A2-9B54BD8530EE
Case 4:20-cv-03664-YGR  Document 1097-4  Filed 04/01/24  Page 29 of 60
**Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet**

cookie in your browser. You can also configure your browser to block all cookies from a specific
domain or all domains. But remember that our services rely on cookies to function properly, for things
like remembering your language preferences.

- Device-level settings: Your device may have controls that determine what information we collect. For
example, you can modify location settings on your Android device.

# SHARING YOUR INFORMATION

## When you share your information

Many of our services let you share information with other people, and you have control over how you share. For
example, you can share videos on YouTube publicly or you can decide to keep your videos private. Remember,
when you share information publicly, your content may become accessible through search engines, including
Google Search.

When you're signed in and interact with some Google services, like leaving comments on a YouTube video or
reviewing an app in Play, your name and photo appear next to your activity. We may also display this information
in ads depending on your Shared endorsements setting.

## When Google shares your information

We do not share your personal information with companies, organizations, or individuals outside of Google
except in the following cases:

### With your consent

We'll share personal information outside of Google when we have your consent. For example, if you use Google
Home to make a reservation through a booking service, we'll get your permission before sharing your name or
phone number with the restaurant. We also provide you with controls to review and manage third party apps and
sites you have given access to data in your Google Account. We'll ask for your explicit consent to share any
sensitive personal information.

## With domain administrators

If you're a student or work for an organization that uses Google services, your domain administrator and resellers who manage your account will have access to your Google Account. They may be able to:

- Access and retain information stored in your account, like your email
- View statistics regarding your account, like how many apps you install
- Change your account password
- Suspend or terminate your account access
- Receive your account information in order to satisfy applicable law, regulation, legal process, or enforceable governmental request
- Restrict your ability to delete or edit your information or your privacy settings

## For external processing

We provide personal information to our affiliates and other trusted businesses or persons to process it for us, based on our instructions and in compliance with our Privacy Policy and any other appropriate confidentiality and security measures. For example, we use service providers to help operate our data centers, deliver our products and services, improve our internal business processes, and offer additional support to customers and users. We also use service providers to help review YouTube video content for public safety and analyze and listen to samples of saved user audio to help improve Google's audio recognition technologies.

## For legal reasons

We will share personal information outside of Google if we have a good-faith belief that access, use, preservation, or disclosure of the information is reasonably necessary to:

- Meet any applicable law, regulation, legal process, or enforceable governmental request. We share information about the number and type of requests we receive from governments in our Transparency Report.
- Enforce applicable Terms of Service, including investigation of potential violations.

DocuSign Envelope ID: 6AD024E5-8A94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 31 of 60
**Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet**

- Detect, prevent, or otherwise address fraud, security, or technical issues.
- Protect against harm to the rights, property or safety of Google, our users, or the public as required or permitted by law.

We may share non-personally identifiable information publicly and with our partners — like publishers, advertisers, developers, or rights holders. For example, we share information publicly to show trends about the general use of our services. We also allow specific partners to collect information from your browser or device for advertising and measurement purposes using their own cookies or similar technologies.

If Google is involved in a merger, acquisition, or sale of assets, we'll continue to ensure the confidentiality of your personal information and give affected users notice before personal information is transferred or becomes subject to a different privacy policy.

# KEEPING YOUR INFORMATION SECURE

We build security into our services to protect your information

All Google products are built with strong security features that continuously protect your information. The insights we gain from maintaining our services help us detect and automatically block security threats from ever reaching you. And if we do detect something risky that we think you should know about, we'll notify you and help guide you through steps to stay better protected.

We work hard to protect you and Google from unauthorized access, alteration, disclosure, or destruction of information we hold, including:

- We use encryption to keep your data private while in transit
- We offer a range of security features, like Safe Browsing, Security Checkup, and 2 Step Verification to help you protect your account
- We review our information collection, storage, and processing practices, including physical security measures, to prevent unauthorized access to our systems
- We restrict access to personal information to Google employees, contractors, and agents who need that information in order to process it. Anyone with this access is subject to strict contractual confidentiality obligations and may be disciplined or terminated if they fail to meet these obligations.

# EXPORTING & DELETING YOUR INFORMATION

DocuSign Envelope ID: 6AD024F5-BA94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 32 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

You can export a copy of your information or delete it from your Google Account at any time

You can export a copy of content in your Google Account if you want to back it up or use it with a service outside of Google.

Export your data

To delete your information, you can:

- Delete your content from specific Google services
- Search for and then delete specific items from your account using My Activity
- Delete specific Google products, including your information associated with those products
- Delete your entire Google Account

Delete your information

# RETAINING YOUR INFORMATION

We retain the data we collect for different periods of time depending on what it is, how we use it, and how you configure your settings:

- Some data you can delete whenever you like, such as your personal info or the content you create or upload, like photos and documents. You can also delete activity information saved in your account, or choose to have it deleted automatically after a set period of time. We'll keep this data in your Google Account until you remove it or choose to have it removed.
- Other data is deleted or anonymized automatically after a set period of time, such as advertising data in server logs.
- We keep some data until you delete your Google Account, such as information about how often you use our services.
- And some data we retain for longer periods of time when necessary for legitimate business or legal purposes, such as security, fraud and abuse prevention, or financial record-keeping.

When you delete data, we follow a deletion process to make sure that your data is safely and completely removed from our servers or retained only in anonymized form. We try to ensure that our services protect information from accidental or malicious deletion. Because of this, there may be delays between when you delete something and when copies are deleted from our active and backup systems.

You can read more about Google's data retention periods, including how long it takes us to delete your information.

# COMPLIANCE & COOPERATION WITH REGULATORS

We regularly review this Privacy Policy and make sure that we process your information in ways that comply with it.

## Data transfers

We maintain servers around the world and your information may be processed on servers located outside of the country where you live. Data protection laws vary among countries, with some providing more protection than others. Regardless of where your information is processed, we apply the same protections described in this policy. We also comply with certain legal frameworks relating to the transfer of data.

When we receive formal written complaints, we respond by contacting the person who made the complaint. We work with the appropriate regulatory authorities, including local data protection authorities, to resolve any complaints regarding the transfer of your data that we cannot resolve with you directly.

## U.S. state law requirements

Some U.S. state privacy laws require specific disclosures.

This Privacy Policy is designed to help you understand how Google handles your information:

- We explain the categories of information Google collects and the sources of that information in Information Google collects.

**Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet**

- We explain the purposes for which Google collects and uses information in Why Google collects data.
- We explain when Google may disclose information in Sharing your information. Google does not sell your personal information. Google also does not "share" your personal information as that term is defined in the California Consumer Privacy Act (CCPA).
- We explain how Google retains information in Retaining your information. You can also learn more about how Google anonymizes data. As described there, when Google anonymizes data to protect your privacy, we maintain policies and technical measures to avoid re-identifying that information.

U.S. state privacy laws also provide the right to request information about how Google collects, uses, and discloses your information. And they give you the right to access your information, sometimes in a portable format; correct your information; and to request that Google delete that information. Many of these laws also provide the right to opt out of certain forms of profiling and targeted advertising. They also provide the right to not be discriminated against for exercising these privacy rights. Finally, the CCPA treats certain kinds of information, like health data, as sensitive; when users provide this information, Google only uses it for purposes permitted by the CCPA, like to provide services that are requested and expected by our users.

We describe the choices you have to manage your privacy and data across Google's services in Your privacy controls. These tools allow you to access, review, update and delete your information, as well as export and download a copy of it. You can also control what information we use to show you ads, or turn off personalized ads, by visiting My Ad Center.

When you use these tools, we'll validate your request by verifying that you're signed in to your Google Account. If you have questions or requests related to your rights under U.S. state privacy laws, you (or your authorized agent) can also contact Google. And if you disagree with the decision on your request, you can ask Google to reconsider it by responding to our email.

We also provide more information on Google's handling of CCPA requests.

Some U.S. state privacy laws also require a description of data practices using specific categories. This table uses these categories to organize the information in this Privacy Policy.

Categories of information we collect

**Identifiers and similar information** such as your name and password, phone number, and address, as well as unique identifiers tied to the browser, application, or device you're using. Some Google services like YouTube

Studio provide the option to submit a valid ID (such as a passport or driver's license) to verify your identity to use additional features.

**Demographic information**, such as your age, gender and language. If you choose to use optional features like YouTube Creator Demographics, you can also provide additional information, like your gender identity or race and ethnicity.

**Commercial information** such as your payment information and a history of purchases you make on Google's services.

**Biometric information** if you choose to provide it, such as fingerprints in Google's product development studies.

**Internet, network, and other activity information** such as your search terms; views and interactions with content and ads; Chrome browsing history you've synced with your Google Account; information about the interaction of your apps, browsers, and devices with our services (like IP address, crash reports, and system activity); and activity on third-party sites and apps that use our services. You can review and control activity data stored in your Google Account in My Activity.

**Geolocation data**, such as may be determined by GPS, IP address, and other data from sensors on or around your device, depending in part on your device and account settings. Depending on these settings, this may include **precise location data**, for example GPS data for Android features like navigation or finding your phone. Learn more about Google's use of location information.

**Audio, electronic, visual, and similar information**, such as voice and audio information.

**Communications data**, such as emails, if you use our services to send and receive messages.

**Health information** if you choose to provide it, such as your medical history, vital signs and health metrics (like blood glucose levels), and other similar information related to your physical or mental health, in the course of using Google services that offer health-related features, such as the Google Health Studies app.

**Professional, employment, and education information**, such as information you provide or that is maintained through an organization using Google services at which you study or work.

**Other information you create or provide**, such as the content you create, upload, or receive (like photos and videos or emails, docs and spreadsheets). Google Dashboard allows you to manage information associated with specific products.

**Inferences** drawn from the above, like your ads interest categories.

Business purposes for which information may be used or disclosed

**Protecting against security threats, abuse, and illegal activity**: Google uses and may disclose information to detect, prevent and respond to security incidents, and for protecting against other malicious, deceptive, fraudulent, or illegal activity. For example, to protect our services, Google may receive or disclose information about IP addresses that malicious actors have compromised.

**Auditing and measurement**: Google uses information for analytics and measurement to understand how our services are used, as well as to fulfill obligations to our partners like publishers, advertisers, developers, or rights holders. We may disclose non-personally identifiable information publicly and with these partners, including for auditing purposes.

**Maintaining our services**: Google uses information to ensure our services are working as intended, such as tracking outages or troubleshooting bugs and other issues that you report to us.

**Research and development**: Google uses information to improve our services and to develop new products, features and technologies that benefit our users and the public. For example, we use publicly available information to help train Google's AI models and build products and features like Google Translate, Bard, and Cloud AI capabilities.

**Use of service providers**: Google shares information with service providers to perform services on our behalf, in compliance with our Privacy Policy and other appropriate confidentiality and security measures. For example, we may rely on service providers to help provide customer support.

**Advertising**: Google processes information to provide advertising, including online identifiers, browsing and search activity, and information about your location and interactions with advertisements. This keeps Google's services and many of the websites and services you use free of charge. You can control what information we use to show you ads by visiting your ad settings in My Ad Center.

**Legal reasons**: Google also uses information to satisfy applicable laws or regulations, and discloses information in response to legal process or enforceable government requests, including to law enforcement. We provide information about the number and type of requests we receive from governments in our Transparency Report.

Parties with whom information may be disclosed

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 37 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

**Other people with whom you choose to share your information,** like docs or photos, and videos or comments on YouTube.

**Third parties with your consent,** such as services that integrate with Google's services. You can review and manage third party apps and sites with access to data in your Google Account.

**Service providers,** trusted businesses, or persons that process information on Google's behalf, based on our instructions and in compliance with our Privacy Policy and any other appropriate confidentiality and security measures.

**Domain administrators,** if you work or study at an organization that uses Google services.

**Law enforcement or other third parties,** for the legal reasons described in Sharing your information.

# ABOUT THIS POLICY

## When this policy applies

This Privacy Policy applies to all of the services offered by Google LLC and its affiliates, including YouTube, Android, and services offered on third-party sites, such as advertising services. This Privacy Policy doesn't apply to services that have separate privacy policies that do not incorporate this Privacy Policy.

This Privacy Policy doesn't apply to:

- The information practices of other companies and organizations that advertise our services
- Services offered by other companies or individuals, including products or sites they offer that may include Google services to which the policy applies, or products or sites displayed to you in search results, or linked from our services

## Changes to this policy

We change this Privacy Policy from time to time. We will not reduce your rights under this Privacy Policy without your explicit consent. We always indicate the date the last changes were published and we offer access to archived versions for your review. If changes are significant, we'll provide a more prominent notice (including, for certain services, email notification of Privacy Policy changes).

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B54BD8530EE
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 38 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

# RELATED PRIVACY PRACTICES

## Specific Google services

The following privacy notices provide additional information about some Google services:

- Payments
- Fiber
- Google Fi
- Google Workspace for Education
- Read Along
- YouTube Kids
- Google Accounts Managed with Family Link, for Children under 13 (or applicable age in your country)
- Family Link privacy guide for children & teens
- Voice and Audio Collection from Children's Features on the Google Assistant

If you're a member of an organization that uses Google Workspace or Google Cloud Platform, learn how these services collect and use your personal information in the Google Cloud Privacy Notice.

## Other useful resources

The following links highlight useful resources for you to learn more about our practices and privacy settings.

- Your Google Account is home to many of the settings you can use to manage your account
- Privacy Checkup guides you through key privacy settings for your Google Account
- Google's safety center helps you learn more about our built-in security, privacy controls, and tools to help set digital ground rules for your family online
- Google's Teen Privacy Guide provides answers to some of the top questions we get asked about privacy
- Privacy & Terms provides more context regarding this Privacy Policy and our Terms of Service
- Technologies includes more information about:

DocuSign Envelope ID: 6AD024E5-8A94-40GA-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 39 of 60
**Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet**

- How Google uses cookies

- Technologies used for Advertising

- How Google uses information from sites or apps that use our services

DocuSign Envelope ID: 6AD024E5-BA94-40GA-A7A2-9B51BD8530EE

Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

**‘How Google uses information from sites or apps that use our services’ article**

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD8530EE
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 41 of 60
**Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet**

Google is experimenting with new ways of supporting the delivery and measurement of digital advertising in ways that better protect people's privacy online via Chrome's Privacy Sandbox initiative. Users that participate in Chrome's Privacy Sandbox Origin Trials may see relevant ads from Google based on Topics or FLEDGE data stored on, or shared with, their browser. Google may also measure ad performance using Attribution Reporting data stored on, or shared with, their browsers. More information on the Privacy Sandbox.

# HOW GOOGLE USES INFORMATION FROM SITES OR APPS THAT USE OUR SERVICES

Many websites and apps use Google services to improve their content and keep it free. When they integrate our services, these sites and apps share information with Google.

For example, when you visit a website that uses advertising services like AdSense, including analytics tools like Google Analytics, or embeds video content from YouTube, your web browser automatically sends certain information to Google. This includes the URL of the page you're visiting and your IP address. We may also set cookies on your browser or read cookies that are already there. Apps that use Google advertising services also share information with Google, such as the name of the app and a unique identifier for advertising.

Google uses the information shared by sites and apps to deliver our services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on our partners' sites and apps. See our Privacy Policy to learn more about how we process data for each of these purposes and our Advertising page for more about Google ads, how your information is used in the context of advertising, and how long Google stores this information.

Our Privacy Policy explains the legal grounds Google relies upon to process your information — for example, we may process your information with your consent or to pursue legitimate interests such as providing, maintaining and improving our services to meet the needs of our users.

Sometimes, when processing information shared with us by sites and apps, those sites and apps will ask for your consent before allowing Google to process your information. For example, a banner may appear on a site asking for consent for Google to process the information that site collects. When that happens, we will respect the purposes described in the consent you give to the site or app, rather than the legal grounds described in the Google Privacy Policy. If you want to change or withdraw your consent, you should visit the site or app in question to do so.

## Ad personalization

If ad personalization is turned on, Google will use your information to make your ads more useful for you. For example, a website that sells mountain bikes might use Google's ad services. After you visit that site, you could see an ad for mountain bikes on a different site that shows ads served by Google.

If ad personalization is off, Google will not collect or use your information to create an ad profile or personalize the ads Google shows to you. You will still see ads, but they may not be as useful. Ads may still be based on the topic of the website or app you're looking at, your current search terms, or on your general location, but not on your interests, search history, or browsing history. Your information can still be used for the other purposes mentioned above, such as to measure the effectiveness of advertising and protect against fraud and abuse.

When you interact with a website or app that uses Google services, you may be asked to choose whether you want to see personalized ads from ad providers, including Google. Regardless of your choice, Google will not personalize the ads you see if your ad personalization setting is off or your account is ineligible for personalized ads.

You can see and control what information we use to show you ads by visiting your ad settings.

## How you can control the information collected by Google on these sites and apps

Here are some of the ways you can control the information that is shared by your device when you visit or interact with sites and apps that use Google services:

- Ad Settings helps you control ads you see on Google services (such as Google Search or YouTube), or on non-Google websites and apps that use Google ad services. You can also learn how ads are personalized, opt out of ad personalization, and block specific advertisers.
- If you are signed in to your Google Account, and depending on your Account settings, My Activity allows you to review and control data that's created when you use Google services, including the information we collect from the sites and apps you have visited. You can browse by date and by topic, and delete part or all of your activity.

DocuSign Envelope ID: 6AD024E5-BA94-40GA-A7A2-9B51BD85305E

Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 43 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

- Many websites and apps use Google Analytics to understand how visitors engage with their sites or apps. If you don't want Analytics to be used in your browser, you can install the Google Analytics browser add-on. Learn more about Google Analytics and privacy.

- Incognito mode in Chrome allows you to browse the web without recording webpages and files in your browser or Account history (unless you choose to sign in). Cookies are deleted after you've closed all of your Incognito windows and tabs, and your bookmarks and settings are stored until you delete them. Learn more about cookies. Using Incognito mode in Chrome or other private browsing modes does not prevent the collection of data when you visit websites that use Google services, and Google may still collect data when you visit websites using these browsers.

- Many browsers, including Chrome, allow you to block third-party cookies. You can also clear any existing cookies from within your browser. Learn more about managing cookies in Chrome.

DocuSign Envelope ID: 6AD024E5-BA94-40GA-A7A2-9B51BD85305E

## Chrome Incognito Splash Screen



# You've gone Incognito

You can browse more privately because others who use this device won't see your activity. This won't change how data is collected by websites you visit and the services they use, including Google. Downloads, bookmarks and reading list items will be saved. Learn more

| Chrome won't save: | Your activity might still be visible to: |
|---|---|
| ● Your browsing history | ● Websites you visit |
| ● Cookies and site data | ● Your employer or school |
| ● **I**nformation entered in forms | ● Your internet service provider |

Block third-party cookies
When on, sites can't use cookies that track you across the web. Features on some sites may break. 

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD85305E

**Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet**

**'How Chrome Incognito keeps your browsing private' Help Center Article**

# How Chrome Incognito keeps your browsing private

Incognito mode can help keep your browsing private from other people who use your device.

## How Incognito mode works

When you first open a new Incognito window, you're creating a new Incognito browsing session. Any Incognito windows you open after that are part of the same session. You can end that Incognito session by closing all open Incognito windows.

In Incognito, none of your browsing history, cookies and site data, or information entered in forms are saved on your device. This means your activity doesn't show up in your Chrome browser history, so people who also use your device won't see your activity. Websites see you as a new user and won't know who you are, as long as you don't sign in.

If you're browsing in Chrome Incognito mode, you are, by default, not signed into any accounts or sites.

Your school, Internet Service Provider, or any parental tracking software may be able to see your activity. You can check if your Chrome browser is managed.

You can choose to block third-party cookies when you open a new Incognito window. Learn more about cookies.

## How Incognito mode protects your privacy

### What Incognito mode does

Browsing in Incognito mode means your activity data isn't saved on your device, or to a Google Account you're not signed into.

> For example, you may use Incognito mode to shop online for a birthday gift for a family member who shares your device. If you don't sign in to your Google account, your shopping activity will not appear in your Chrome browsing activity and won't be saved to your Google Account.

Each time you close all Incognito windows, Chrome discards any site data and cookies associated with that browsing session.

Chrome doesn't tell websites, including Google, when you're browsing privately in Incognito mode.

### What Incognito mode doesn't do

Prevent you from telling a website who you are. If you sign in to any website in Incognito mode, that site will know that you're the one browsing and can keep track of your activities from that moment on.

Prevent your activity or location from being visible to websites you visit and the services they use, your school, employer, or your Internet Service provider.

Prevent the websites you visit from serving ads based on your activity during an Incognito session. After you close all Incognito windows, websites won't be able to serve ads to you based on your signed-out activity during that closed session.

While Incognito mode provides local privacy on your device, it does not affect how Google collects data when you use our other products and services as described in the Privacy Policy.

## You're in control

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 48 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

Close all Incognito windows and tabs when you're done browsing. You end a session when you close all Incognito windows, so closing a single tab won't discard your data. If you see a number next to the Incognito icon on your desktop or at the bottom of your browser on a mobile device, you have more than one Incognito window or tab open.

You can choose to sign in to any account when in Incognito mode. If you sign into a Google service, like Gmail, or a site, that site may remember your activity.

Delete any downloads and bookmarks you don't want your device to remember. Files you download and bookmarks you create are saved in any mode.

Learn more about using Incognito mode.

**'Browse in private' Help Center Article**

DocuSign Envelope ID: 6AD024E5-BA94-406A-A7A2-9B51BD85305E
Case 4:20-cv-03664-YGR   Document 1097-4   Filed 04/01/24   Page 50 of 60
Exhibit A to Rule 23(b)(2) Class Action Settlement Term Sheet

# Browse in ~~Private~~Incognito mode

You can browse the web more privately in Incognito mode.

Computer Android iPhone & iPad

1. On your computer, open Chrome.
2. At the top right, click More ⋮ > New Incognito Window.
3. A new window appears. In the top corner, check for the Incognito icon 🕶 .

You can also use a keyboard shortcut to open an Incognito window:

> Windows, Linux, or Chrome OS: Press Ctrl + Shift + n.
> Mac: Press ⌘ + Shift + n.

You can switch between Incognito windows and regular Chrome windows. You'll only browse in private when you're using an Incognito window.

You can also choose to block third-party cookies when you open a new Incognito window. Learn more about cookies.

## Close Incognito mode ~~to stop private browsing~~

~~Incognito mode runs in a separate window from your normal Chrome windows.~~

If you have an Incognito window open and you open another one, your private browsing session will continue in the new window. To exit Incognito mode, close all Incognito windows.

If you see a number next to the Incognito icon at the top right, you have more than one Incognito window open. To close an Incognito window:

1. On your computer, go to your Incognito window.
2. Close the window:

> Windows or Chrome OS: At the top right, click Close ✕ .

> Mac: At the top left, click Close ✕ .

~~What happens when you browse privately~~

- ~~Chrome doesn't save your browsing history, cookies and site data, or information entered in forms.~~
- ~~Files you download and bookmarks you create are kept.~~
- ~~Your activity isn't hidden from websites you go to, your employer or school, or your internet service provider.~~

~~Learn more about how private browsing works.~~

DocuSign Envelope ID: 6AD024E5-BA94-40CA-A7A2-9B51BD8530EE

DocuSign Envelope ID: 265CD9F1-BDAA-46E8-B1A4-608B3F39EBFC

# EXHIBIT B

DocuSign Envelope ID: 6AD024E5-BA94-40GA-A7A2-9B51BD85305FE

DocuSign Envelope ID: 265CD9F1-BDAA-46E8-B1A4-608B3F39EBFC

Exhibit B to Rule 23(b)(2) Class Action Settlement Term Sheet

| # | Log Name | Retention as of 12/7/2023 | Plan to Remediate | Rationale for New Retention Period |
|---|---|---|---|---|
| 1 | | | Delete data older than 3 years (change retention period to 400 days)<br>Field-based remediation for data older than 9 months | Retention period of 400 days selected based on specific use case for log. |
| 2 | | | Field-based remediation for data older than 9 months | N/A |
| 3 | | | Field-based remediation for data older than 9 months | N/A |
| 4 | | | Field-based remediation for data older than 9 months | N/A |
| 6 | | | Field-based remediation for data older than 9 months | N/A |
| 88 | | | Field-based remediation for data older than 9 months | N/A |
| 90 | | | Delete Display Ads data older than 3 years (change retention period to 3 years)<br>Field-based remediation for Display Ads data older than 9 months | Retention period of 3 years selected based on specific use case for log. This log stores billing and payment information that Google is required to retain to resolve third party payment disputes. |
| 91 | | | Field-based remediation for data older than 9 months | N/A |
| 111 | | | Field-based remediation for data older than 9 months | N/A |
| 92 | | | Field-based remediation for data older than 9 months | N/A |
| 89 | | | Delete data older than 3 years (change retention period to 185 days) | Retention period of 185 days selected based on specific use case for log. |
| 93 | | | Field-based remediation for data older than 9 months | N/A |
| 155 | | | Field-based remediation for data older than 9 months | N/A |
| 104 | | | Field-based remediation for data older than 9 months | N/A |
| 156 | | | Field-based remediation for data older than 9 months | N/A |

DocuSign Envelope ID: 6AD024E5-BA94-40CA-A7A2-9B51BD85305E

# EXHIBIT C

DocuSign Envelope ID: 6AD024E5-8A94-406A-A7A2-9B51BD85305E

## Exhibit C

Google agrees that the following representations are accurate:

███████████████ log: has a current retention period between 2 months and 50 months and is set by the Google Analytics customer (not by Google) depending on the customer's business needs.

- Google does not use data in this log to identify individual class members.

- Google cannot isolate private browsing data in this log from data from users in other browsing modes.

- Google cannot remediate this log without affecting its customers' access to their data.

- Further, we have now confirmed that this log is used exclusively by Universal Analytics.  Universal Analytics is a product that will not be accessible to Google's customers beginning in July 1, 2024, Google anticipates that all data in this log will be deleted by the end of 2024.

Google Analytics User IDs are first-party identifiers that allow customers to generate an ID and associate it with one of their users (e.g., they are generated by the customer based on a visitor having signed into their website).

- Analytics User ID values are not assigned by Google, and Google will only receive them if the customer has enabled this feature.

- Google represents that, to the extent any of the remediated logs contain Google Analytics User IDs, it uses those values for purposes of providing the Google Analytics service to the Google Analytics customer that enabled the feature, including serving ads for that customer if it also utilizes Google advertising services. Because the Analytics User ID is assigned by the publisher/website, it is not shared across any other sites that are not owned by that same publisher and therefore it cannot be used for cross-site tracking.

- Google's policies also prohibit Analytics customers using this feature from sending Google data that personally identifies a user or which permanently identifies a particular device.

- Google cannot distinguish Google Analytics user IDs associated with users in private browsing mode from Google Analytics user IDs associated with users in other modes.

- Google does not use Google Analytics user IDs to identify class members.

PPIDs are "Publisher Provided IDs" created by the website publisher.  Their purpose is to allow the publisher to send Google an identifier for use in frequency capping, audience segmentation and audience targeting on that publisher's website(s).

01980-00174/14616519.1

- Google cannot distinguish PPIDs associated with users in private browsing mode from PPIDs associated with users in other modes.

- Pursuant to Google's policies, if a customer chooses to send Google PPIDs, they must be hashed or encrypted such that they are meaningless to Google, and they must not contain personally identifiable information.

- Google does not use PPIDs to identify class members.

- The Biscotti cookie values corresponding to PPIDs are scrubbed after 18 months.

# EXHIBIT D

DocuSign Envelope ID: 6AD024E5-8A94-406A-A7A2-9B51BD85305E

**Exhibit D to Settlement Agreement**

**Incognito Detection Bits to Be Deprecated**

1. maybe_chrome_incognito_do_not_use_without_consulting_legal_and_ads_identity_team

2. is_chrome_incognito

3. is_chrome_non_incognito_mode

4. incognito_window

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

DocuSign Envelope ID: 6AD024E5-BA94-40CA-A7A2-9B51BD85305E

# EXHIBIT E

**Exhibit E**

| Account Name | |
|---|---|
| Account Number | |
| ABA Routing Number (ACH) | |
| Bank Name & Address | |
| W-9 information | Attached |

| Form **W-9** | **Request for Taxpayer** | Give Form to the |
|---|---|---|
| (Rev. October 2018) | **Identification Number and Certification** | requester. Do not |
| Department of the Treasury Internal Revenue Service | ▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | send to the IRS. |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

~~2 Business name/disregarded entity name, if different from above~~

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☑ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶ _____

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type.*
*Specific Instructions on page 3.*

---

**Part I**  **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

☐☐☐ – ☐☐ – ☐☐☐☐

**or**

**Employer identification number**

---

**Part II**  **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| **Sign Here** | Signature of U.S. person ▶ *Marc Walker* | Date ▶ *January 4, 2024* |
|---|---|---|

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*