**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 629-9040
alanderson@bsfllp.com
mwright@bsfllp.com

*Attorneys for Plaintiffs*

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY  10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br>              Defendant. | Case No.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br>Date:     July 30, 2024<br>Time:     2:00 p.m.<br>Location: Courtroom 1 – 4th Floor |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 2

II.   BACKGROUND .................................................................................................. 3

    A. Case History ................................................................................................ 3

    B. The Settlement ........................................................................................... 9

III.  LEGAL STANDARD ........................................................................................ 17

IV.   ARGUMENT .................................................................................................... 17

    A. Final approval is appropriate without preliminary approval or notice. ......................... 17

    B. Final approval is warranted based on the *Hanlon* factors. ............................... 18

        1. The strength of Plaintiffs' case. ................................................................ 18

        2. Risk, expense, complexity, and duration of further litigation. .................................. 19

        3. The risk of maintaining class action status. ................................................. 19

        4. The relief obtained through settlement. ....................................................... 19

        5. The extent of discovery and stage of the proceedings. ......................................... 20

        6. The experience and views of counsel. ........................................................ 21

        7. The presence of a governmental case participant. ............................................ 21

        8. The reaction of the class members to the proposed settlement. ............................... 21

    C. Final approval is also warranted under Rule 23(e)(2). ........................................ 22

        1. Class representatives and Class Counsel adequately  represented the class. ............... 22

        2. The parties negotiated the settlement at arm's-length. ....................................... 23

        3. The substantial relief obtained for the class. ................................................ 24

        4. The settlement treats all class members equally ............................................. 24

V.    CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................................. 18

*Ang v. Bimbo Bakeries USA, Inc.*,
   2020 WL 5798152, (N.D. Cal. Sept. 29, 2020) ................................................... 19

*Askar v. Health Providers Choice, Inc.*,
   2021 WL 4846955 (N.D. Cal. Oct. 18, 2021) ...................................................... 21

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ............................................................................. 22

*Burnell v. Swift Transp. Co. of Arizona, LLC*,
   2022 WL 1479506 n.5 (C.D. Cal. Apr. 28, 2022) ............................................... 16

*Campbell v. Facebook, Inc.*,
   2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ..................................................... 22

*Edwards v. Nat'l Milk Producers Fed'n*,
   2017 WL 3623734 (N.D. Cal. June 26, 2017) ...................................................... 18

*Emetoh v. FedEx Freight, Inc.*,
   2020 WL 6216763 (N.D. Cal. Oct. 22, 2020) ...................................................... 17

*Goldkorn v. Cty. of San Bernardino*,
   2012 WL 476279 (C.D. Cal. Feb. 13, 2012) ........................................................ 19

*Grannan v. Alliant L. Grp., P.C.*,
   2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ........................................................ 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................. 16, 17, 20

*Hashemi v. Bosley, Inc.*,
   2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ...................................................... 18

*In re Am. Apparel, Inc. v. S'holder. Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) .................................................... 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ......................................................................... 19, 22

*In re Capital One Consumer Data Breach Litig.*,
   2022 WL 17176495 (E.D. Va. Nov. 17, 2022) .................................................... 15

ii

*In re Charles Schwab Corp. Sec. Litig.*,
   2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)........................................................................ 18

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ....................................................................................... 8, 12

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   611 F. Supp. 3d 872 (N.D. Cal. 2020)........................................................................ 24

*In re Lifelock, Inc. Mktg. & Sales Practices Litig.*,
   2010 WL 3715138 (D. Ariz. Aug. 31, 2010) ........................................................... 19

*In re Omnivision Techns., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)...................................................................... 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Li*ab. Litig.,
   895 F.3d 597 (9th Cir. 2018) ..................................................................................... 23

*Kim v. Space Pencil, Inc.*,
   2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ......................................................... 19

*Kumar v. Salov N. Am. Corp.*,
   2017 WL 2902898 (N.D. Cal. July 7, 2017) ............................................................ 20

*Lilly v. Jamba Juice Co.*,
   2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ......................................................... 17

*Lilly v. Jamba Juice Co.*,
   2015 WL 2062858 (N.D. Cal. May 4, 2015) ....................................................... 19, 21

*Lim v. Transforce, Inc.*,
   2022 WL 17253907 (C.D. Cal. Nov. 15, 2022) ....................................................... 23

*Lowery v. Rhapsody Int'l, Inc.*,
   75 F.4th 985 (9th Cir. 2023) .................................................................................. 19, 20

*Lusk v. Five Guys Enters. LLC*,
   2022 WL 4791923 (E.D. Cal. Sep. 30, 2022) .......................................................... 23

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
   2019 WL 343472 n.2 (N.D. Cal. Jan. 28, 2019)....................................................... 23

*Morrison v. Ross Stores, Inc.*,
   2022 WL 17592437 (N.D. Cal. Feb. 16, 2022) ................................................... 21, 24

*Nat'l Fed'n of Blind of Cal. v. Uber Techs., Inc.*,
   2016 WL 9000699 (N.D. Cal. July 13, 2016) .......................................................... 20

*Pederson v. Airport Terminal Servs.*,
   2018 WL 2138457 (C.D. Cal. Apr. 5, 2018)............................................................. 23

Plaintiffs' Unopposed Motion
for Final Approval of Class Action Settlement

4:20-cv-03664-YGR-SVK

*Romero v. Securus Techs., Inc.*,
  2020 WL 6799401 (S.D. Cal. Nov. 19, 2020) ....................................................... 19

*Ruiz v. XPO Last Mile, Inc.*,
  2017 WL 6513962 (S.D. Cal. Dec. 20, 2017) ....................................................... 19

*Stathakos v. Columbia Sportswear Co.*,
  2018 WL 582564 (N.D. Cal. Jan. 25, 2018) .................................................... 17, 19

*Wannemacher v. Carrington Mortg. Servs., LLC*,
  2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ..................................................... 23

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. 16

Fed. R. Civ. P. 23(a) .............................................................................................. 21

Fed. R. Civ. P. 23(b)(2) ........................................................................ 8, 16, 17, 23

Fed. R. Civ. P. 23(c)(2) .......................................................................................... 17

Fed. R. Civ. P. 23(e)(2) .................................................................................... 16, 17

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................... 21

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................... 22, 23

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................... 24

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................... 24

iv

PLEASE TAKE NOTICE that on July 30, 2024, at 2:00 p.m., the undersigned will appear before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California to move the Court for an order granting final approval of the parties' class action settlement (Ex. 1, the "Settlement").[1]

This Motion is brought under Paragraph 17 of the Court's Standing Order in Civil Cases and the Northern District of California's Procedural Guidance for Class Action Settlements, and it is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations and accompanying exhibits of Mark Mao and Chris Thompson, the consolidated declaration of David Boies, Bill Carmody, and John Yanchunis, the declarations on behalf of all of the class representatives, all matters of which the Court may take judicial notice, other pleadings and papers on file in this action, and other written or oral argument that Plaintiffs may present to the Court.

Google supports final approval of the settlement, but disagrees with the legal and factual characterizations contained in the Motion.

### ISSUE TO BE DECIDED

Whether the Court should grant final approval of the parties' settlement.

### RELIEF REQUESTED

Plaintiffs respectfully ask the Court to grant final approval of the parties' settlement.

Dated: April 1, 2024

By: /s/ Mark C. Mao

---

[1] Unless otherwise noted, exhibit references are to the supporting declaration by Mark C. Mao, submitted on behalf of the three firms (Boies Schiller Flexner, Susman Godfrey, and Morgan & Morgan) who together litigated this action and obtained this settlement.

Plaintiffs' Unopposed Motion
for Final Approval of Class Action Settlement

4:20-cv-03664-YGR-SVK

## I.     INTRODUCTION

This settlement is an historic step in requiring dominant technology companies to be honest in their representations to users about how the companies collect and employ user data, and to delete and remediate data collected. Plaintiffs secured a groundbreaking settlement that yields substantial benefits for every single class member, including:

Changes to Google's disclosures: Google with this Settlement agrees to rewrite its disclosures to inform users that "Google" collects private browsing data, including by explicitly disclosing that fact in its Privacy Policy and on the Incognito Splash Screen that automatically appears at the beginning of every Incognito session. Plaintiffs obtained a Settlement where Google has already begun implementing these changes, without waiting for final court approval.

Deletion and remediation of private browsing data: While disclosure changes ensure transparency going forward, Plaintiffs also demanded and secured accountability and relief for Google's past conduct. Upon approval of this Settlement, Google must delete and/or remediate *billions* of data records that reflect class members' private browsing activities. This includes data Google collected during the class period from private browsing sessions.

Limits on future data collection: For the next five years, Google must also maintain a change to Incognito mode that enables Incognito users to block third-party cookies by default. This change is important given Google has used third-party cookies to track users in Incognito mode on non-Google websites. This requirement ensures additional privacy for Incognito users going forward, while limiting the amount of data Google collects from them.

Removal of private-browsing detection bits: Google must delete the private browsing detection bits that Plaintiffs uncovered, which Google was (twice) sanctioned for concealing. As a result, Google will no longer track people's choice to browse privately.

No release of monetary claims: Consistent with the Court's certification order, Plaintiffs insisted on retaining class members' rights to sue Google individually for damages. That option is important given the significant statutory damages available under the federal and state wiretap statutes. These claims remain available for every single class member, and a very large number

1  of class members recently filed and are continuing to file complaints in California state court

2  individually asserting those damages claims in their individual capacities.

3       Securing this relief through Settlement is especially valuable because Google argued

4  these changes exceed the Court's inherent authority to order prescriptive injunctions. This

5  Settlement also delivers relief to class members far sooner, without the delay and uncertainty

6  inherent in trial and any appeal. Based on Plaintiffs' damages expert's valuation methods, the

7  value of the relief obtained through this litigation and Settlement is over $5 billion.

8       This case required years of "herculean" efforts (the word used by Google's counsel),

9  including 34 motions to compel, over 5.8 million pages of documents produced by Google, a

10  year-long technical special master process, two sanctions proceedings with both finding

11  discovery misconduct by Google, and many months of hard-fought mediation. Plaintiffs engaged

12  in hard-fought litigation for nearly 4 years, only settling on the eve of trial. This Settlement

13  ensures real accountability and transparency from the world's largest data collector and marks

14  an important step toward improving and upholding our right to privacy on the Internet.[2]

15  **II.      BACKGROUND**

16       **A.      Case History**

17       ***Pre-filing investigation***: This case did not copy any government proceeding, nor was it

18  born through any disclosure by Google. This case exists because Boies Schiller Flexner ("BSF")

19  conducted an extensive many-months investigation (with expert assistance) prior to filing and

20  decided to challenge these Google practices. Declaration of Mark C. Mao ("Mao Decl.") ¶ 3.

21  That thorough investigation yielded a 37-page complaint filed in June 2020, with detailed

22  allegations concerning Google's collection of private browsing data. Dkt. 1. When the case was

23  filed, Google told reporters that it "disputes the claims and plans to defend itself vigorously

24  against them." Ex. 2.

25       ***Google's motions to dismiss***: On August 20, 2020, Google moved to dismiss all claims.

26  Dkt. 53. On September 21, 2020, after Plaintiffs filed an amended complaint (Dkt. 68), Google

27

28  [2] Google supports final approval of the settlement, but disagrees with the legal and factual characterizations contained in the Motion.

Plaintiffs' Unopposed Motion for            4:20-cv-03664-YGR-SVK
Final Approval of Class Action Settlement

again moved to dismiss all claims (Dkt. 82). Google's filings included 514 pages of briefing and exhibits. Dkts. 82–84, 92, 93. On February 25, 2021, after Plaintiffs filed their opposition (Dkt. 87) and Google filed its reply (Dkt. 92), the Court heard oral argument. Dkt. 103. On March 12, 2021, the Court denied Google's motion in its entirety. Dkt. 113. On April 14, 2021, Plaintiffs sought and obtained leave to file a Second Amended Complaint, adding breach of contract and UCL claims. Dkts. 136, 138. On May 17, 2021, Google filed a second and even more voluminous motion to dismiss, this time submitting over 1,000 pages of briefing and exhibits. Dkts. 164, 208. On December 22, 2021, after Plaintiffs filed their opposition (Dkt. 192) and on June 29, 2021, Google filed its reply (Dkt. 208), Judge Koh once again denied Google's motion to dismiss in its entirety. Dkt. 363. Plaintiffs prevailed with respect to all seven claims.

**Fact discovery**: On September 30, 2020, after Judge Koh denied Google's motion to stay discovery (Dkt. 60), Plaintiffs served Google with their first set of document requests. Mao Decl. ¶ 4. During fact discovery from September 2020 through March 2022, Plaintiffs served Google with 235 document requests, 40 interrogatories, and 75 requests for admission. *Id.* Google opposed Plaintiffs' efforts to obtain discovery, and Plaintiffs filed **34 motions to compel**. *Id.*[3] The parties exchanged more than 150 letters, conducted dozens of meet and confers, and had 16 separate hearings before Judge van Keulen (totaling over 27 hours), where they submitted over 1,000 pages to her to address **over 40 disputes**. *Id.*[4] Those disputes resulted in **64 orders from Judge van Keulen**. *Id.* Obtaining discovery regarding Google's practices involved (in Google's

[3] For purposes of this count, each dispute chart that Judge van Keulen ordered the parties to file counts as just one motion to compel, notwithstanding that these charts each covered multiple disputes. Each letter-brief filed under Judge van Keulen's default rules also counts as one motion, even though such briefs sometimes covered more than one dispute. *See* Dkts. 90, 119, 127, 129, 140, 155, 177, 199, 202, 218, 230, 258, 281, 296, 355, 357, 383, 390, 399, 411, 424, 485, 456, 462, 517, 546, 561, 574, 635, 671.

[4] **39 disputes** were raised through the ongoing dispute charts that Judge van Keulen ordered the parties to submit. *See* Dkts. 129, 140, 155, 177, 230, 281, 424, 485. In addition to those dispute charts, but excluding sanctions-related filings, the parties filed over **40 additional submissions** with Judge van Keulen to raise disputes over issues including data productions, custodians, search terms, privilege, 30(b)(6) depositions topics, apex depositions, and preservation. Dkts. 90, 119, 127, 199, 202, 204, 212, 218, 231, 258, 296, 311, 312, 314, 355, 357, 383, 390, 399, 411, 456, 462, 517, 544, 546, 558, 561, 565, 574, 591, 635, 642, 654, 671, 678, 692, 730, 733, 780, 800, 810, 816, 818.

Plaintiffs' Unopposed Motion for                                    4:20-cv-03664-YGR-SVK
Final Approval of Class Action Settlement

1   counsel's own words, and continuing with expert discovery) "two and a half years of **scorched-**

2   **earth** discovery." Ex. 3 (Hearing Tr. at 85:19–20).

3       Plaintiffs compelled Google to produce over 900,000 documents from 43 custodians,

4   totaling **over 5.8 million pages**. Mao Decl. ¶ 4. This included documents Google initially

5   included on its privilege logs, which Plaintiffs forced Google to re-review and produce. Dkt. 605.

6   Google relied on over 300 contract attorneys, with what its counsel described as "herculean"

7   discovery efforts. *See* Sept. 30, 2021 Hearing Tr. at 51:3-9. Google withheld most of those

8   documents until October 2021, just three months before the scheduled close of fact discovery.

9   Mao Decl. ¶ 4. In addition to relying on attorneys at their firms, Plaintiffs hired 11 document

10  reviewers with engineering backgrounds to work through these technical documents and prepare

11  for depositions. *Id.* Plaintiffs also retained 23 consulting and testifying experts to assist with fact

12  discovery and prepare expert reports. *Id.*

13      Google's productions were incomplete, but Plaintiffs' efforts nonetheless yielded key

14  admissions by Google employees, including documents describing Incognito as "effectively a

15  lie" (Ex. 4), a "problem of professional ethics and basic honesty" (Ex. 5), and a "confusing mess"

16  (Ex. 6). Some key admissions came from Google employees that Google initially refused to

17  include as document custodians. Mao Decl. ¶ 5. These and other admissions were a focus

18  throughout the litigation, and correcting disclosures that even Google admitted were misleading

19  became a cornerstone of this Settlement. *Id.*

20      In 2021 and 2022, Plaintiffs obtained more than 117 hours of deposition testimony from

21  27 current and former Google employees, including 8 individuals designated as 30(b)(6)

22  deponents. *Id.* ¶ 6. Those depositions included individuals involved with the core Google

23  products and services at issue, including Chrome, Analytics, and Ads. *Id.* Google sought to

24  prevent some of these depositions, and insisted that some depositions take place in Europe. *Id.*

25  When those depositions did take place, the testimony of Google employees was found by Judge

26  van Keulen to be "misleading." Dkt. 588 ¶ 82.

27      During this time, Plaintiffs also responded to discovery from Google, each responding to

28  17 interrogatories, 34 requests for production, and 55 requests for admission. Mao Decl. ¶ 4. The

class representatives each sat for deposition, with Google spending over 28 hours questioning them about their personal browsing private activities and other topics. *Id.* ¶ 6.

*Special Master process*: In July 2021, the parties began a year-long process with technical Special Master Douglas Brush. Mao Decl. ¶ 7. In April 2021, Judge van Keulen ordered Google to "produce all of the named Plaintiffs' data." Dkt. 147-1. That order was meant to allow Plaintiffs to "test" Google's say-so about how it stores the data. Apr. 29, 2021 Hearing Tr. at 20:7–8. On July 12, 2021, Judge van Keulen appointed Special Master Brush to adjudicate Google's compliance with the order and other disputes. Dkt. 219. That process lasted a year, and it involved 21 hearings and conferences with the Special Master, dozens of written submissions and correspondence, and ongoing coordination among counsel for both sides, Plaintiffs' consulting experts, and Google engineers. Mao Decl. ¶ 7.

Through the Special Master process, Plaintiffs obtained 76GB of data across 13,483 data files, which Plaintiffs' technical expert used for his analysis. *Id.* This Court relied on that analysis in the summary judgment order. Dkt. 969 at 11 (citing technical expert's analysis and ruling "plaintiffs set forth evidence that Google does store their data with unique identifiers"). The data sources uncovered through the process and identified in the Special Master's preservation order (Dkts. 524, 587-1) also established the framework for the data deletion and remediation obligations that Google must now undertake—another cornerstone of this Settlement. *See* Settlement Ex. B (listing logs); Declaration of Chris Thompson ("Thompson Decl.") ¶¶ 6–7, 14.

*Sanctions*: On October 14, 2021, Plaintiffs filed their first of two motions for sanctions involving Google's concealment of its private browsing "detection bits," fields that Google used within its logs to label browsing data as "Incognito" or "private" data. Dkts. 292, 656. Google not only resisted disclosure of key evidence but also engaged in discovery misconduct. The efforts to obtain this evidence and hold Google accountable was a trial unto itself.

On April 22, 2022, Judge van Keulen conducted an all-day evidentiary hearing that involved live testimony from five witnesses. Mao Decl. ¶ 7. In the lead-up to that hearing, the parties filed over 680 pages with the Court. Dkts. 292, 429, 494, 528, 535. On May 20, 2022, Judge van Keulen issued her first sanctions order, which included 48 pages of findings of fact

6

and conclusions of law along with a 7-page order, sanctioning Google for concealing three of the detection bits and their corresponding logs, in violation of "all three" of the court's April, September, and November 2021 orders, and other misconduct. Dkt. 588 ¶ 7, p. 35. The Court sanctioned Google by awarding Plaintiffs nearly $1 million in fees, precluding Google from presenting certain arguments and witnesses at trial, and proposing adverse jury instructions. *Id.* at 6–7.

On August 4, 2022, Plaintiffs filed their second motion for sanctions. Dkt. 656. That request for additional sanctions involved over 640 pages of briefing. Dkts. 655, 696, 708, 735, 798, 834, 858. On March 2, 2023, Judge van Keulen conducted another evidentiary hearing. Dkt. 883. On March 20, 2023, Judge van Keulen again sanctioned Google, finding that "Google's untimely disclosure" of certain "new logs shows that the discovery violations addressed in the May 2022 Sanctions Order were far more extensive and thus more prejudicial, than was then known." Dkt. 898 at 9. Judge van Keulen imposed "additional sanctions," including additional preclusion orders, a revised recommendation for an adverse-inference jury instruction, and additional monetary sanctions. *Id.* Importantly, the Settlement negotiated by Plaintiffs requires Google to delete each of the detection bits uncovered through the sanctions proceedings.

***Expert discovery***: On April 15, 2022, Plaintiffs served five opening expert reports totaling 1,243 pages. Mao Decl. ¶ 8. Expert discovery in the end involved 11 testifying experts (6 for Plaintiffs and 5 for Google), all of whom provided at least one expert report and sat for deposition. *Id.* The parties exchanged 18 expert reports, totaling over 3,000 pages (excluding voluminous spreadsheets of data analysis), with 14 days of expert depositions. *Id.* This expert work involved analyzing Google's enormous document and data productions, including with the assistance of consulting experts. *Id.* Unlike Plaintiffs, Google's counsel could rely on Google engineers for assistance. Class Counsel invested significant time and resources into expert discovery, in total paying close to $5 million to testifying and consulting experts. *Id.*

***Certification***: On June 20, 2022, Plaintiffs filed their motion for class certification. Dkt. 609. On August 5, 2022, Google opposed class certification in its entirety, contending that no class should be certified to seek any form of relief, and also filed *Daubert* motions. Dkts. 662–

7

68. In total, the parties filed over 4,100 pages in connection with these motions. Dkts. 609, 662–68, 713. On October 11, 2022, the Court conducted an extensive hearing. Dkt. 772. On December 12, 2022, the Court ordered nationwide Rule 23(b)(2) certification on all seven claims. Dkt. 803. Although no damages class was certified, the Court's ruling allowed Plaintiffs to seek (and now secure by Settlement) injunctive relief for the classes.

The Court's order noted that injunctive relief would bring "important changes to reflect transparency in the system." Dkt. 803 at 34. That same order denied Google's *Daubert* motion regarding Mr. Lasinski, whose report included relevant calculations regarding the number of class members, the amount of Google's enrichment from the challenged conduct, and ways in which actual damages could be calculated based on payments made by Google for user data (including for the named plaintiffs' damages). Dkt. 803 at 4–13. Mr. Lasinski's testimony supported key elements of Plaintiffs' claims. Dkt. 1029 at 15 (supporting model for statutory damages), 17, 61 (supporting actual damages through market analysis), 55 (supporting "damage or loss" under CDAFA), at 61 (supporting unjust enrichment theory).

***Summary judgment***: On March 21, 2023, Google moved for summary judgment on all of Plaintiffs' claims. Dkt. 908. In total, Google filed over 4,500 pages of briefing and exhibits. Mao Decl. ¶ 9. On April 12, 2023, Plaintiffs filed their opposition along with a detailed separate statement of facts and 105 exhibits. Dkts. 923–26. On May 12, 2023, the Court held a lengthy hearing. Dkt. 955. On August 7, 2023, the Court denied Google's summary judgment motion in its entirety. Dkt. 969. In its ruling, this Court expressed concern over Google's arguments and conduct, explaining that "the assertion that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data is untenable." *Id.* at 8 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020)).

***Mediation***: In September 2023, shortly after the Court's summary judgment ruling, the parties began a mediation process that lasted several months. Mao Decl. ¶ 10. The parties' prior discussions resulted in an agreement that any mediation should wait until after summary judgment. Ex. 1 at 2 ("discussions were premature"). The parties selected retired United States District Judge Layn R. Phillips as the mediator. Mao Decl. ¶ 10. After extensively briefing their

8

positions, the parties participated in an all-day, in-person mediation in New York on September 29, 2023. *Id.* The parties then continued to mediate for many months under Judge Phillips' supervision. *Id.*

**_Trial preparation_**: In the leadup to the all-day pretrial conference on November 29, 2023, the parties prepared and filed, among other things, the Pretrial Conference Statement (Dkt. 1029), briefing on nine motions in limine (Dkts. 1020–25, 1027, 1030–31), a trial witness list (Dkt. 1049), discovery excerpts for trial (Dkt. 1050), a trial exhibit list (Dkt. 1062), and almost 300 pages of disputed jury instructions (Dkt. 1057). The Court then issued several important rulings. For example, the Court precluded Google from referencing the use of Google services by Class Counsel (Dkt. 1078 at 3), denied Google's motion to exclude evidence and argument regarding Google's joining of data (*id.* at 6), "largely denied" Google's motion to exclude evidence and argument related to classwide damages (Dkt. 1088 at 4), denied Google's motion to exclude over 100 exhibits as purportedly irrelevant (*id.* at 5), and adopted Judge van Keulen's proposed adverse jury instruction against Google (*id.* at 3). Class Counsel began preparing witness examination outlines and other necessary trial prep work, and the parties began working with retired Magistrate Judge Elizabeth Laporte to resolve objections to trial exhibits. Mao Decl. ¶ 11. This Court also ordered Google to produce documents from the files of former Google employee Blake Lemoine, noting that he was "a potential whistleblower who . . . in many ways, guts much of what [Google] say[s] if he's credible." Nov. 29, 2023 Tr. at 83. Mr. Lemoine's deposition took place on December 21, 2023. Mao Decl. ¶ 11.

Ultimately, the Court's rulings and Plaintiffs' efforts to obtain them paved the way for Google to agree to settlement terms that are both sweeping and unprecedented rather than face trial.

**B.    The Settlement**

On December 22, 2023, on the eve of trial, Plaintiffs and Google finalized a Term Sheet, which has now been implemented with the Settlement. Plaintiffs below summarize the key parts of the Settlement, with estimates for the value of the relief obtained.

9

*Settlement scope*: The Settlement includes and provides benefits for the same individuals included within the scope of the Court's certification order. *See* Dkt. 803 & Ex. 1 § I.2.

*Relief obtained for the benefit of class members*:

**(1) Changes to Google's disclosures**: Google must rewrite its disclosures to tell users that it collects private browsing data. Google has agreed to begin making these changes immediately and complete them by March 31, 2024. Ex. 1 § III.1. Trial would have delayed these changes, and an appeal could have caused further delay. Now, class members benefit right away.

Securing disclosure changes by Google is no easy feat. Google employees for years wanted to fix these disclosures, but they were repeatedly shut down by Google management. In 2013, employees stressed the need to "simplify" the Incognito Splash Screen, lamenting the "incorrect conclusions" that users drew from it. Ex. 7. In 2019. Employees also proposed to redesign the Splash Screen to clarify that Incognito does not provide privacy from "Google." Ex. 8. Google's executives at the highest levels were aware of these concerns, but nothing changed. Rather than expressly disclose Incognito's limitations, Google continued using "really fuzzy, hedging language that is almost more damaging." Ex. 9 at -67 (email from CMO Lorraine Twohill to CEO Sundar Pichai).

Plaintiffs insisted that Google expressly disclose its collection of private browsing data, including on the Incognito Splash Screen and in its Privacy Policy. At summary judgment, this Court acknowledged Google's "failure to explicitly notify users it would be among the third parties recording their communications with other websites." Dkt. 969 at 31. This Settlement squarely addresses that failure. On the Incognito Splash Screen, Google now prominently discloses that Incognito Mode "won't change how data is collected by websites you visit and the services they use, *including Google*." Ex. 1 at 7 (emphasis added). Users receive this disclosure every time they launch Incognito Mode. In addition, the Google Privacy Policy must disclose that "activity on third-party sites and apps that use our [Google] services" "*is collected regardless of which browsing or browser mode you use*," and that when you use "Incognito," "third party sites and apps that integrate our services may *still share information with Google*." *Id.* (Exhibit A) at 20 (emphasis added). Google must also delete the Chrome Privacy Notice and Chrome

Plaintiffs' Unopposed Motion for
Final Approval of Class Action Settlement

4:20-cv-03664-YGR-SVK

White Paper (Ex. 1 § III.1.d–e), two other misleading Google documents at issue in this lawsuit. The Settlement also ensures that Google cannot roll back any of these important changes.

**(2) Google data deletion and remediation**: The Settlement also provides relief for Google's *past* collection of private browsing data through data deletion and remediation. This portion of the Settlement relies on the framework developed by Special Master Douglas Brush. Thompson Decl. ¶¶ 6–7. For every data source identified in the Special Master's preservation order (Dkts. 524, 587-1) that could include private browsing data pre-dating the disclosure changes, Google must delete or remediate ***all*** entries that might contain users' at-issue private browsing data. *See* Settlement Ex. B (listing logs); Thompson Decl. ¶¶ 7–13.

The timing for this data deletion and remediation process dovetails with the disclosure changes. The data deletion and remediation obligations apply to "data older than nine months," and these obligations take effect upon approval of the settlement or within 275 days of Google making the required disclosure changes, whichever is later. Ex. 1 § III.2.a. Google will be required to remediate and delete data collected in December 2023 and earlier (prior to when the parties signed the Term Sheet). Any post-December data is subject to the new and revised disclosures, which Google began rolling out immediately after the Term Sheet was signed. The Settlement therefore appropriately accounts for both past and future data collection.

The deletion and remediation obligations apply not just to data tagged as "private" browsing using the Google detection bits but more broadly for all users (including all class members) across several databases, securing comprehensive relief.[5] The Settlement provides broad relief regardless of any challenges presented by Google's limited record keeping. Much of the private browsing data in these logs will be deleted in their entirety, including billions of event-level data records that reflect class members' private browsing activities. Ex. 1 § III.2.a–b.

---

[5] Google claimed in the litigation that it was impossible to identify (and therefore delete) private browsing data because of how it stored data, and emphasized how Incognito browsing traffic fluctuated around just three percent of the data collected and stored by Google. With this Settlement, Plaintiffs successfully obtained Google's agreement to remediate 100% of the data set at issue. Mao Decl. ¶ 12; Thompson Decl. ¶¶ 7–15.

11

For the data-remediation process, Google must delete information that makes private browsing data identifying. Google will mitigate this data by partially redacting IP addresses and generalizing user agent strings, which addresses one of Plaintiffs' re-identification theories supported by their technical expert. Ex. 1 § III.2.a. This change addresses Plaintiffs' allegations (and Google engineers' acknowledgement) that private browsing data is identifying due to the combination of IP address and user agent information. *E.g.*, Ex. 10 at -85 ("IP address + UA (user agent) can reveal individual user with high probability"). Google will also be required to delete the detailed URLs, which will prevent Google from knowing the specific pages on a website a user visited when in private browsing mode. Mao Decl. ¶ 12. This Court relied on these detailed URLs in rejecting Google's summary judgment argument on "contents." *See* Dkt. 969 at 26 ("'The URLs, by virtue of including the particular document within a website that a person views, reveal much more information . . . divulg[ing] a user's personal interests, queries, and habits.' So too here." (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 605)). Google's agreement to remove detailed URLs from the at-issue logs and keep only the domain-level portion of the URL (i.e., only the name of the website) will vastly improve user privacy by preventing Google (or anyone who gets their hands on the data) from knowing precisely what users were browsing.

Google must also delete the X-Client Data Header field from these logs (Ex. 1 § III.2.a), which is the field Google used to build its Incognito detection bits. This deletion prevents Google from creating similar bits in the future to detect Incognito traffic. *See* Dkt. 588 (May 2022 sanctions order) p. 4 ¶¶ 17–19 ("Google created these [] Incognito-detection bits to look specifically at whether there is an X-Client Data header in the request").

Mr. Lasinski's expert report provides a useful reference point for the enormity of the private browsing records that Google had been storing, and which will now be subject to deletion and remediation. *See* Dkt. 608-9 ¶¶ 188–90. These hundreds of billions of private browsing data records and more are subject to the broad deletion and remediation secured through the Settlement.

Plaintiffs' Unopposed Motion for                                    4:20-cv-03664-YGR-SVK
Final Approval of Class Action Settlement

**(3) Limits on Google's collection going forward**: Even though the Settlement already accounts for future data collection through disclosure changes, the Settlement also places further limits on Google's ability to collect data in the future. It does so by leveraging a change that Google rolled out in response to this lawsuit related to its use of third-party cookies. Google historically collected third-party cookies (i.e., Google's own "third-party" cookies deposited on users' browsers when they visited a non-Google websites) along with other private browsing data. Before this lawsuit, Google evaluated a potential change to Chrome Incognito mode that would block third-party cookies by default. Just after Plaintiffs filed this lawsuit, Google implemented this change for all Incognito users. As reflected in the Settlement, Google admits this lawsuit was the "substantial catalyst" for Google rolling this change out to all Incognito users. Ex. 1 § III.4.

Under the Settlement, Google must maintain this new default of blocking third-party cookies within Incognito mode for five years. Ex. 1 § III.5. This gives class members an option, presented on the Splash Screen, to block third-party cookies when using Incognito. The result is that Google will collect less data from users' private browsing sessions, and that Google will make less money from the data. The value of user data that will be protected is illustrated by the fact that blocking data tagged with Google's own "third-party cookies" in Incognito already results in Google losing nearly ███████ a year in global annual revenue. Dkt. 608-9 ¶ 35.

**(4) Removal of private browsing detection bits**: Google must delete all four of the identified private browsing detection bits (listed in Exhibit D to the Settlement). Ex. 1 § III.2.e. These were the detection bits that Google was sanctioned for concealing during discovery (twice). Unbeknownst to users, and without disclosure by Google, Google used these bits to track a user's decision to browse privately, and then label the data collected as private.

The Settlement puts a stop to this practice once and for all. Google will no longer infer private browsing using these detection bits. Google has further represented that there are no other detection bits for inferring Chrome's Incognito mode and has further agreed to no longer use any of the detections bits to identify or track any private browsing. Ex. 1 § III.2.e, Exhibit D.

Plaintiffs' Unopposed Motion for                                      4:20-cv-03664-YGR-SVK
Final Approval of Class Action Settlement

**(5) No class member damages release**: The Settlement only releases class members' claims "for injunctive, declaratory, or any other equitable non-monetary relief." Ex. 1 §§ I.12, II.1. It excludes for all class members "claims for damages that they may pursue on an individual basis." *Id.* § I.12. The amount of damages to be awarded to the class representatives will be decided through arbitration. *Id.* §§ 8–9. Consistent with the absence of any release of damages claims, class members other than the class representatives have filed and will be filing actions in California state court seeking such damages. *E.g.*, Ex. 11 (complaint filed by 50 plaintiffs in their individual capacities seeking monetary relief for the claims at issue in this litigation).

*Comprehensiveness of the injunctive relief*: In the Pretrial Statement, Google argued that any injunctive relief "must be limited to further clarifying Google's relevant disclosures." Dkt. 1029 at 23. Plaintiffs demanded, and have obtained, even more expansive relief. Plaintiffs secured the most important facets of injunctive relief they would have sought at trial—including key disclosure changes, data deletion and remediation for all logs identified during the Special Master process, removal of the detection bits, and hard limits to third-party cookie tracking— while eliminating the risk of trial and inevitable delay that would follow from any appeals. While Plaintiffs are confident the Court would have rejected Google's argument to limit injunctive relief to disclosure changes, there was no guarantee it would have granted the extensive relief secured by the Settlement.

*Value of this injunctive relief*: The Procedural Guidance for Class Action Settlements requires parties to provide "details about and the value of injunctive relief" from the Settlement. Here, the benefits conveyed to class members both from changes made by Google during the litigation and as required under this Settlement are worth more than $5 billion.[6]

One way to quantify this value is to apply Mr. Lasinski's analysis to Google's data deletion and remediation. When this litigation began, Google was storing private browsing data in permanent logs. As this Court previously recognized, Plaintiffs presented "evidence that there

---

[6] While Google "disagrees with the legal and factual characterizations contained in the Motion," *see supra* at n. 2, Google did not mention, let alone expressly object to, the value of the relief that the Settlement will provide to class members. *See* Declaration of Mark C. Mao ¶ 26; Ex. 12.

Plaintiffs' Unopposed Motion for                                    4:20-cv-03664-YGR-SVK
Final Approval of Class Action Settlement

is a market for their browsing history" and that "Google itself has piloted a program where it pays users" for their browsing history. Dkt. 969 at 33. Mr. Lasinski quantified the number of class members (approximately 136 million) and the value of the data Google obtained from their private browsing activities. Dkt. 608-9 ¶¶ 137–50, 165–84, 195. To assign a value to the data, he relied on the Ipsos Screenwise Panel through which Google paid users at least $3 per month per device for their browsing data that Google did not otherwise have access to without consent. *Id.* ¶¶ 137–150, 165–184. By requiring Google to delete or remediate the data it impermissibly collected, the Settlement is returning that value to class members. Assuming conservatively that each class member used just one device only twice per year (not per month) from June 2016 through December 2023, Google's data deletion and remediation yields a total value of $6.1 billion (136 million class members * 2 * $3 * 7.5 years = $6.12 billion). Assuming even more conservatively that they used just one device only once per year, that yields $3.06 billion. These are both conservative valuations of the benefits Plaintiffs have obtained.

The value of the limits imposed on Google's collection of private browsing data (via third-party cookie blocking) can also be measured. Mr. Lasinski's unjust enrichment damages models, which were based on Google's own internal projections, quantified the value of this privacy-enhancing change. Dkt. 608-9 ¶¶ 52–136. Google rolled out this change to all Incognito users in 2020, with this litigation as the substantial catalyst.[7] Mr. Lasinski's analysis reveals that blocking third-party cookies by default over the period June 2020 through December 2023 yields a value of about ▮▮▮▮▮▮. Going forward, Google's agreement to maintain this change for five years yields an additional ▮▮▮▮▮▮ in additional value ▮▮▮▮▮▮ * 5 years = ▮▮▮▮▮▮, for a combined total value of about ▮▮▮▮▮▮.

---

[7] This calculation is based on discounting Google's claimed ▮▮▮▮▮▮ in revenue losses from ChromeGuard to reflect the percentage of Alphabet's worldwide revenue from U.S. users ▮▮▮▮, the share of Incognito users with a registered Google Account ▮▮▮▮, and the share of signed-out private browsing ▮▮, which yields about ▮▮▮▮▮▮ in value ▮▮▮▮▮▮. Lasinski Report, Schedules 12.4, 2.1, 5.1, and 8.1. For 2021, similar apportionments yield an additional ▮▮ in value ▮▮▮▮▮▮. *Id.* Schedules 12.4, 2.1, 5.1, and 8.1. Holding the 2021 result constant for two additional years yields another ▮▮▮▮▮▮ in value ▮▮▮▮▮▮.

1      Without including any of the other injunctive relief detailed in the Settlement, these two

2  changes alone conservatively total between $4.75 billion and $7.8 billion.

3      ***Comparable settlements***: A comparison to other cases illustrates the value of the

4  injunctive relief provided by this Settlement. For example, *In re Capital One Consumer Data*

5  *Breach Litig.*, 2022 WL 17176495, at *1 (E.D. Va. Nov. 17, 2022), was a data breach case with

6  injunctive-relief components that improved data security and provided three years of identify-

7  theft protection. Case No. 19-md-02915-AJT-JFA, Dkt. 2251, at 3 (E.D. Va.). Similarly, *Adkins*

8  *v. Facebook*, another data breach case, was certified for settlement under Rule 23(b)(2) based on

9  Facebook's confirmation that security measures it implemented after litigation had commenced

10  would remain in place. Case No. 3:18-cv-05982, Dkt. 323 at 1 (N.D. Cal.). The relief here goes

11  much further by requiring fundamental changes to Google's data-collection practices, including

12  with respect to how Google stores data (the remediation requirements) and Google's ability to

13  track users' decisions to browse privately (the deletion of Google's private-browsing detection

14  bits). These requirements apply not only to data Google has already collected but to data that

15  Google collects in the future, providing for enhanced transparency and privacy for all people.

16      ***No impact on any other pending cases***: While the Texas Attorney General subsequently

17  filed a case against Google concerning private browsing, this Settlement is limited to the

18  injunctive relief claims of individuals who used the specified browsing modes.

19      ***CAFA notice***: Google confirmed that it will be providing CAFA notice.

20      ***No agreement on the amount of fees, costs, or service awards***: These amounts are left

21  solely to this Court's discretion. Google may contest the reasonableness of the amounts that

22  Plaintiffs request, but Google has agreed to pay any amount awarded, and the parties waived

23  any right to appeal this Court's decision. Class Counsel will separately petition the Court for

24  fees, costs, and service awards, which will be paid by Google without in any way depleting or

25  modifying the relief secured through this Settlement.

26

27

28

Plaintiffs' Unopposed Motion for                       4:20-cv-03664-YGR-SVK
Final Approval of Class Action Settlement

### III.    LEGAL STANDARD

In addressing whether to approve a class action settlement, this Court applies the overlapping *Hanlon* factors and criteria in Rule 23(e)(2).[8] According to *Hanlon*, courts balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental Case participant, and (8) the reaction of the class members to the proposed settlement. *Emetoh v. FedEx Freight, Inc.*, 2020 WL 6216763, at *3 (N.D. Cal. Oct. 22, 2020) (Gonzalez Rogers, J.) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Rule 23(e)(2) provides that a settlement may only be approved upon a finding that: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

### IV.    ARGUMENT

#### A.    Final approval is appropriate without preliminary approval or notice.

Consistent with prior rulings by the Court, the parties agreed that the appropriate next step following the Settlement was for Plaintiffs to file this final approval motion. Ex. 1 § II.5. This Settlement involves classes certified under Rule 23(b)(2) with no release of any class members' claims for monetary relief. Whether to provide notice is left to the Court's discretion. Fed. R. Civ. P. 23(c)(2). In seeking final approval, the parties were guided by this Court's

---

[8] *See Burnell v. Swift Transp. Co. of Arizona, LLC*, 2022 WL 1479506, at *8 n.5 (C.D. Cal. Apr. 28, 2022), *appeal dismissed sub nom. Saucillo v. Peck*, 2022 WL 16754141 (9th Cir. Oct. 4, 2022), and *aff'd sub nom. Saucillo v. Mares*, 2023 WL 3407092 (9th Cir. May 12, 2023) ("Fed. R. Civ. P. 23 was amended in 2018 to list four factors a district court should consider when evaluating a class action settlement. Fed. R. Civ. P. 23(e)(2). The Ninth Circuit in this case declined to decide 'how district courts should incorporate the [new] Rule 23(e)(2) factors into their analyses.' However, the Rule 23(e)(2) factors are similar to and substantially overlap with the *Hanlon* factors identified above.") (brackets in original).

decision in *Stathakos v. Columbia Sportswear Co.*, 2018 WL 582564 (N.D. Cal. Jan. 25, 2018) (Gonzalez Rogers, J.). In that case, the Court ruled that preliminary approval and notice were not required because Rule 23(b)(2) settlements are purely injunctive and do not impact class members' monetary claims. *Id*. at *3. The Court proceeded directly to final approval, without requiring any preliminary approval or notice. *Id.* ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required.") (citing, inter alia, *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *8–9 (N.D. Cal. Mar. 18, 2015) (holding that class notice was unnecessary)). As a practical matter, Plaintiffs are also proceeding straight to final approval to expedite this relief for the benefit of class members and avoid any further delay for the injunctive relief Google has agreed to implement.

> **B.** **Final approval is warranted based on the *Hanlon* factors.**

> **1.** **The strength of Plaintiffs' case.**

Under the first *Hanlon* factor, courts assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *6 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021). Here, the Settlement reflects the strength in Plaintiffs' position. Plaintiffs obtained these broad and valuable changes by Google only after defeating two motions to dismiss, certifying the injunctive classes, and defeating a motion for summary judgment, with Plaintiffs ready to proceed to trial. Although Plaintiffs remain confident that they would have succeeded had this case proceeded to trial, Plaintiffs asserted these claims in an ever-evolving privacy landscape. *See, e.g.*, *Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) (privacy class actions "are a relatively new type of litigation"). There was no guarantee that any results achieved at trial would survive subsequent motions practice and appellate review, or that Plaintiffs would be able to secure and defend on appeal injunctive relief and affirmative changes to Google's conduct at issue in this litigation. The Settlement thus satisfies the first *Hanlon* factor.

**2.     Risk, expense, complexity, and duration of further litigation.**

"In assessing the risk, expense, complexity, and likely duration of further litigation [under the second *Hanlon* factor], the court evaluates the time and cost required." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012). Although Plaintiffs were prepared for trial and confident that the jury would find in their favor, even a successful trial result has an inherent risk of limited remedies that are not as sweeping as the remedies Plaintiffs achieved through this Settlement. The duration of post-trial proceedings is an additional factor weighing in favor of approval. The additional costs of experts, attorney resources, and generally maintaining the lawsuit, balanced against the relief obtained, also weighs heavily in favor of approval. *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) (granting motion for final approval of class action settlement reached "on the eve of trial" in part where "prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay").

**3.     The risk of maintaining class action status.**

As to the third *Hanlon* factor, while Plaintiffs were confident that they could maintain class certification through trial, the possibility of decertification is always present. Google would have had the ability to challenge the Court's certification order on appeal. This potential vulnerability also militates in favor of settlement under *Hanlon*'s third factor. *E.g.*, *Ruiz v. XPO Last Mile, Inc.*, 2017 WL 6513962, at *5–6 (S.D. Cal. Dec. 20, 2017) (granting motion for final approval of class action settlement, noting, defendant could "appeal the propriety of the Court's class certification order").

**4.     The relief obtained through settlement.**

As detailed above, the Settlement provides the class with substantial value in the form of injunctive relief that protects all class members' privacy rights and provides lasting benefits. As in *Columbia Sportswear*, the "injunctive relief settlement stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse." 2018 WL 582564, at *4 (citation and quotation marks

Plaintiffs' Unopposed Motion for                                      4:20-cv-03664-YGR-SVK
Final Approval of Class Action Settlement

1    omitted) (brackets in original). This makes the Settlement especially valuable to all class

2    members, providing important accountability and transparency.[9]

3          The Ninth Circuit has noted that "assigning a precise dollar amount to the class benefit

4    may prove difficult where" the "relief obtained for the class is 'primarily injunctive in nature and

5    thus not easily monetized.'" *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 992 n.1 (9th Cir. 2023)

6    (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)). It has also

7    emphasized that "[w]hat matters most is the result for the class members" (*id.* at 988) and that

8    "lawsuits can provide considerable benefit to society through nonmonetary relief" (*id.* at 994–

9    95). Unlike in *Rhapsody*, where the court found that the benefit provided was "minimal" and

10   only benefited a small portion of potential class members, this Settlement provides valuable

11   injunctive relief for every class member. *See id.*

12         All class members will benefit from this injunctive relief without releasing any claims for

13   monetary damages. Ex. 1 § I.14. Class members remain free to bring individual damages claims.

14   *See Nat'l Fed'n of Blind of Cal. v. Uber Techs., Inc.*, 2016 WL 9000699, at *3, *9 (N.D. Cal.

15   July 13, 2016) (granting preliminary approval of a settlement in which "the class will not waive

16   their right to pursue damages claims").

17              **5.    The extent of discovery and stage of the proceedings.**

18         The fifth *Hanlon* factor clearly supports final approval. There were over 5.8 million pages

19   of documents produced by Google (plus many gigabytes of data), 49 depositions, 11 disclosed

20   experts, over two dozen hearings (including 2 evidentiary hearings which led to discovery

21   sanctions), 21 Special Master proceedings, over 1,000 docket entries, and extensive mediation

22   efforts before the parties finalized this Settlement. This Settlement was reached after all pretrial

23   filings and the Court's rulings on most of same. The extensive discovery and lengthy proceedings

24

---

25   [9] Courts routinely approve settlements for injunctive relief alone. *See, e.g.*, *Romero v. Securus Techs., Inc.*, 2020 WL 6799401 (S.D. Cal. Nov. 19, 2020); *Ang v. Bimbo Bakeries USA, Inc.*,

26   2020 WL 5798152, (N.D. Cal. Sept. 29, 2020) (same); *Lilly v. Jamba Juice Co.*, 2015 WL 2062858 (N.D. Cal. May 4, 2015) (same); *Kim v. Space Pencil, Inc.*, 2012 WL 5948951 (N.D.

27   Cal. Nov. 28, 2012) (same); *Goldkorn v. Cty. of San Bernardino*, 2012 WL 476279 (C.D. Cal. Feb. 13, 2012) (same); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 3715138 (D.

28   Ariz. Aug. 31, 2010) (same).

Plaintiffs' Unopposed Motion for                                    4:20-cv-03664-YGR-SVK
Final Approval of Class Action Settlement

fully support approval. *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017) (Gonzalez Rogers, J.), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) (granting motion for final approval of class action settlement that "occurred only after extensive litigation" and discovery).

### 6. The experience and views of counsel.

The sixth *Hanlon* factor asks the Court to address the recommendation of counsel and the level of experience backing that recommendation. *Grannan v. Alliant L. Grp., P.C.*, 2012 WL 216522, at *7 (N.D. Cal. Jan. 24, 2012). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Am. Apparel, Inc. v. S'holder. Litig.*, 2014 WL 10212865, at *14 (C.D. Cal. July 28, 2014); *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *Hanlon*, 150 F.3d at 1027. In moving for class certification, Class Counsel outlined their extensive experience in complex litigation, including privacy litigation. Dkts. 609, 609-8, 609-9, 609-10. The Court considered that record and found that Class Counsel's extensive experience satisfied the Rule 23(a) adequacy requirement. Dkt. 803 at 27. David Boies, Bill Carmody, and John Yanchunis—the three lead Plaintiffs' Counsel—draw on over a century of combined litigation experience and attest that the Settlement is an excellent result for the certified classes which provides valuable injunctive relief to each class member. Consolidated Decl. ¶¶ 25–34. Class Counsel drew on that experience to negotiate and secure this Settlement, and they now respectfully recommend final approval.

### 7. The presence of a governmental case participant.

The government did not participate in this case, so this *Hanlon* factor is not a consideration for this motion. *Askar v. Health Providers Choice, Inc.*, 2021 WL 4846955, at *4 (N.D. Cal. Oct. 18, 2021) (noting a lack of government participation and not weighing this factor in granting final approval). Google will provide CAFA notice, and the parties will provide the Court with information regarding any responses to such notice.

### 8. The reaction of the class members to the proposed settlement.

This factor is not considered where there is no notice. *Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2015) ("[B]ecause the Court previously decided in its preliminary approval that notice was not necessary, the reaction of the class is not considered in

weighing the fairness factors."). As one reference point, the class representatives fully support the Settlement. *See* Class Rep. Declarations.

**C.   Final approval is also warranted under Rule 23(e)(2).**

**1.   Class representatives and Class Counsel adequately represented the class.**

Final approval is warranted under Rule 23(e)(2)(A), which considers the adequacy of representation by the class representatives and their attorneys. This factor includes "the nature and amount of discovery" undertaken. Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note to 2018 amendment. The class representatives and their attorneys have provided relentless, excellent representation for over three years, fully satisfying this requirement. *Morrison v. Ross Stores, Inc.*, 2022 WL 17592437, at *3 (N.D. Cal. Feb. 16, 2022) (Gonzalez Rogers, J.) (finding that "the representative parties and class counsel have fairly and adequately represented the interests of the Class" in granting approval of an injunctive-relief-only settlement).

The class representatives were integrated into and involved with this litigation, reviewing and approving key filings and strategy decisions. Mao Dec. ¶ 13. Plaintiffs each responded to 17 interrogatories, 34 requests for production, and 55 requests for admission. *Id.* The class representatives also each sat for deposition. *Id.* Productions involved imaging each of their personal devices, negotiating search terms, and reviewing those documents before production. *Id.* The class representatives also participated in the Special Master process, which involved data collection from their devices, retrieving account information and settings, and culling through data to enable the experts and consultants to complete their analyses. *Id.* Plaintiffs remained involved with the mediation process and agreed that the injunctive relief that was obtained is the relief they sought by initiating and joining this litigation. *See* Class Rep. Declarations.

As detailed in the Background, Class Counsel zealously represented the classes throughout this litigation and in obtaining this Settlement. Class Counsel brought this case to the cusp of trial, settling only after extensive discovery and the Court's pretrial conference where jury instructions, motions in limine, witness lists, and exhibit lists were subject to the Court's scrutiny and through extensive mediation efforts. Class Counsel advanced more than seven

million dollars in litigation expenses and over 75,000 attorney hours on behalf of the classes with no assurances that those expenses would be reimbursed. Mao Decl. ¶ 14. These efforts were entirely self-funded without any third-party financing agreements. *Id.*

### 2.    The parties negotiated the settlement at arm's-length.

Final approval is also warranted under Rule 23(e)(2)(B), which considers whether the settlement was negotiated at arms-length. Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit has "identified three . . . signs [of collusion]: (1) 'when counsel receive[s] a disproportionate distribution of the settlement'; (2) 'when the parties negotiate a 'clear sailing arrangement,'; and (3) 'when the agreement contains a 'kicker' or 'reverter' clause.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (citing *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). All requirements are met in this case, even if inapplicable. *Campbell v. Facebook, Inc.*, 2017 WL 3581179, at *5 (N.D. Cal. Aug. 18, 2017) ("Arguably, [the] *Bluetooth* [collusion analysis] is not even applicable to this settlement because it does not involve a Rule 23(b)(2) damages class."); *see also Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *3 n.2 (N.D. Cal. Jan. 28, 2019).

The extensive discovery and motions practice in this case reflect an arm's length process. *Wannemacher v. Carrington Mortg. Servs., LLC*, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014); *see also Moreno*, 2019 WL 343472, at *5. Any concerns of collusion are further assuaged where, as here, the Settlement was reached only after class certification. *Cf. In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*, 895 F.3d 597, 610–11 (9th Cir. 2018). Before any settlement negotiations commenced, the Court resolved multiple motions to dismiss, dozens of discovery disputes, two sanctions motions, class certification, and summary judgment. Mao Decl. ¶ 11. Only after the Court's denial of Google's motion for summary judgment did the parties begin discussing potential resolution of this litigation. Ex. 1 at 2.

Judge Phillips' participation in the parties' extensive mediation further demonstrates the arm's-length nature of this Settlement. The "involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Rule 23(e)(2)(B) advisory committee's note

Plaintiffs' Unopposed Motion for
Final Approval of Class Action Settlement

4:20-cv-03664-YGR-SVK

to 2018 amendment; *accord Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018). Here, the parties finalized this Settlement after six months of extensive mediation supervised by (Ret.) Judge Phillips. Mao Decl. ¶ 10. With the assistance and supervision of Judge Phillips, the parties established a framework for the potential injunctive relief and, over the next few months, exchanged numerous proposals and counterproposals. *Id*.

None of the remaining warning signs of collusion are present. Plaintiffs will file a motion for an award of attorneys' fees, costs, and service awards, and Google is free to contest the reasonableness of the amounts requested. There is no "clear sailing" arrangement, nor is there a settlement fund from which unawarded money will revert to Google. The facts support final approval. *See, e.g.*, *Lim v. Transforce, Inc.*, 2022 WL 17253907, at *12 (C.D. Cal. Nov. 15, 2022); *Lusk v. Five Guys Enters. LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sep. 30, 2022).

### 3. The substantial relief obtained for the class.

Final approval is also warranted under Rule 23(e)(2)(C), which considers the relief provided to the class. As set forth above, Plaintiffs respectfully submit that the relief provided by the Settlement is exceptional. It far exceeds any requirements in terms of reasonableness and adequacy, particularly in light of expedited process for obtaining that relief, with Google already making changes to its disclosures. That Settlement provides immediate and valuable relief for all class members while avoiding the risks and delay of trial, post-trial motions, potential decertification, and appeals. Because there are no monetary benefits, there is no method of distribution to consider. The parties have agreed to abide by the Court's ruling on attorneys' fees, costs, and service awards, which will be paid by Google without in any way depleting or modifying the relief to be provided to class members or their right to separately seek monetary relief. Because the proposed relief is more than adequate, the proposed settlement passes muster under Rule 23(e)(2)(C). *See Morrison*, 2022 WL 17592437, at *4.

### 4. The settlement treats all class members equally.

Final approval is also warranted under Rule 23(e)(2)(D), which considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class

24

members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment. Here, the Settlement treats all class members the same, with valuable injunctive relief that applies equally to every class member. Pursuant to this Settlement, Google is undertaking concrete and significant efforts to delete and remediate data for all class members, to limit data collection going forward, to change its disclosures, and to prevent further use of the detection bits—changes designed to hold Google accountable and enhance transparency going forward for the benefit of all class members. This fully meets the requirements of Rule 23(e)(2)(D). *See Morrison*, 2022 WL 17592437 at *5; *see also In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 895 (N.D. Cal. 2020), *aff'd sub nom. In re Google Inc. St. View Elec. Comm'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021) (noting that each member benefited equally from the injunctive relief).

## V.      CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant this motion for final approval of the Settlement.

Dated: April 1, 2024

By */s/ Mark C. Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6800
Facsimile (415) 293-6899

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com

25

1  Rossana Baeza (*pro hac vice*)
   rbaeza@bsfllp.com
2  BOIES SCHILLER FLEXNER LLP
   100 SE 2nd Street, Suite 2800
3  Miami, FL 33130
   Telephone: (305) 539-8400
4  Facsimile: (305) 539-1304

5  Alison Anderson (CA Bar No. 275334)
   aanderson@bsfllp.com
6  M. Logan Wright (CA Bar No. 349004)
   mwright@bsfllp.com
7  BOIES SCHILLER FLEXNER LLP
   2029 Century Park East, Suite 1520
8  Los Angeles, CA 90067
   Tel.: (213) 629-9040
9
10 Amanda Bonn (CA Bar No. 270891)
   abonn@susmangodfrey.com
11 SUSMAN GODFREY L.L.P.
   1900 Avenue of the Stars, Suite 1400
12 Los Angeles, CA 90067
   Telephone: (310) 789-3100
13
14 Bill Christopher Carmody (*pro hac vice*)
   bcarmody@susmangodfrey.com
15 Shawn J. Rabin (*pro hac vice*)
   srabin@susmangodfrey.com
16 Steven Shepard (*pro hac vice*)
   sshepard@susmangodfrey.com
17 Alexander P. Frawley (*pro hac vice*)
   afrawley@susmangodfrey.com
18 Ryan Sila (*pro hac vice*)
   rsila@susmangodfrey.com
19 SUSMAN GODFREY L.L.P.
20 One Manhattan West, 50th Floor
   New York, NY 10001
21 Telephone: (212) 336-8330

22 John A. Yanchunis (*pro hac vice*)
23 jyanchunis@forthepeople.com
   Ryan J. McGee (*pro hac vice*)
24 rmcgee@forthepeople.com
   MORGAN & MORGAN, P.A.
25 201 N. Franklin Street, 7th Floor
   Tampa, FL 33602
26 Telephone: (813) 223-5505
   Facsimile: (813) 222-4736
27

28 Michael F. Ram, CA Bar No. 104805

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*

Plaintiffs' Unopposed Motion for
Final Approval of Class Action Settlement

4:20-cv-03664-YGR-SVK