**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>GOOGLE LLC,<br>        Defendant. | Case No.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: August 7, 2024<br>Time:  2:00 p.m.<br>Location: Courtroom 1 – 4th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

**Page**

I.    **INTRODUCTION** ........................................................................................ 2

II.   **ARGUMENT** ............................................................................................. 5

    A.    **Multiple Bases Support Class Counsel's Entitlement to Fees.** ...................... 5

    B.    **Class Counsel's Lodestar Supports the Fee Request.** ................................. 5

        1.    Class Counsel's Hourly Rates Are Reasonable. ...................................... 5

        2.    Class Counsel's Total Hours Are Reasonable. ....................................... 9

        3.    Class Counsel's Hours Are Especially Reasonable Given Google's
            Aggressive Approach to Discovery. ..................................................... 12

        4.    No Reduction Is Warranted as There Were No Unsuccessful Claims. .. 15

    C.    **A 3.5X Multiplier Is Appropriate.** ........................................................... 17

        1.    Contingent Nature of the Case ............................................................. 18

        2.    Importance of the Case, and the Difficulties of Litigating It ................ 19

        3.    Class Counsel's Success ....................................................................... 20

        4.    The Value of the Relief ........................................................................ 22

    D.    **Plaintiffs' Costs Are Reasonable and Reimbursable.** ................................. 23

    E.    **Plaintiffs' Commitment to the Case Merits $30,000 Service Awards.** ......... 25

III.  **CONCLUSION** ......................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Animation Workers*,
5
2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ..................................................................3, 7

*Banas v. Volcano Corp.*,
6
47 F. Supp. 3d 957 (N.D. Cal. 2014)...................................................................................6

7
*Becerra v. Radioshack Corp.*,
8
2014 WL 1266622 (N.D. Cal. Mar. 26, 2014) (Gonzalez Rogers, J.)....................................7

9
*Bernardi v. Yeutter*,
951 F.2d 971 (9th Cir. 1991) ...........................................................................................18
10

*Bitmouni v. PaySafe*,
11
Dkt. 103, No. 3:21-cv-641 (N.D. Cal. Feb. 2, 2024)............................................................7

12
*Calhoun v. Google*,
13
645 F. Supp. 3d 916 (N.D. Cal. 2022)...............................................................................19

14
*Californians for Alternatives to Toxics v. Kernen Constr. Co.*,
2022 WL 22227777 (N.D. Cal. Mar. 21, 2022) (Gonzalez Rogers, J.)..................................6
15

*In re Cap. One Consumer Data Sec. Breach Litig.*,
16
2022 WL 17176495 (E.D. Va. Nov. 17, 2022) ...................................................................19

17
*City of Plantation Police Officers' Employees' Retirement Sys. v. Jeffries*,
18
2014 WL 7404000 (S.D. Ohio Dec. 30, 2014)...............................................................17, 18

19
*Congdon v. Uber Techs., Inc.*,
2019 WL 2327922 (N.D. Cal. May 31, 2019) (Gonzalez Rogers, J.)....................................5
20

*Dang v. Cross*,
21
422 F.3d 800 (9th Cir. 2005) ...........................................................................................16

22
*del Toro Lopez v. Uber*,
23
2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) (Gonzalez Rogers, J.) ..................................25

24
*In re Dell Techs. Inc. Class V Stockholders Litig.*,
No. 2018-0816-JTL, 300 A.3d 679 (Del. Ch. 2023) ..........................................................12
25

*Edgerton v. State Pers. Bd.*,
26
83 Cal. App. 4th 1350 (Cal. Ct. App. 2000)......................................................................21

27
*Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*,
2017 WL 11632540 (C.D. Cal. Sept. 22, 2017) ..................................................................7
28

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
 2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) ....................................................3, 10, 11

*In re Facebook, Inc. Internet Tracking Litig.*,
 956 F.3d 589 (9th Cir. 2020) ........................................................................................17

*Gaston v. LexisNexis*,
 2021 WL 2077812 (W.D.N.C. May 24, 2021)............................................................18, 22

*Gates v. Deukmejian*,
 987 F.2d 1392 (9th Cir. 1992) .........................................................................................6

*Geertson Seed Farms v. Johanns*,
 2011 WL 5403291 (N.D. Cal. Nov. 8, 2011) ....................................................................16

*In re Genworth Fin. Sec. Litig.*,
 210 F. Supp. 3d 837 (E.D. Va. 2016) ...............................................................................11

*In re Google LLC St. View Elec. Commc'ns Litig.*,
 611 F. Supp. 3d 872 (N.D. Cal. 2020)..............................................................................24

*Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.*,
 2015 WL 1160584 (N.D. Cal. Mar. 13, 2015) (Gonzalez Rogers, J.)..................................16

*Hellyer v. Smile Brands Inc.*,
 Dkt. 95, No. 8:21-cv-1886 (C.D. Cal. Jan. 16, 2024)...........................................................8

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ......................................................................................................16

*Uphold Our Heritage v. Town of Woodside*,
 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) ....................................................3, 18, 19

*Int'l Woodworkers of Am., AFL-CIO, Loc. 3-98 v. Donovan*,
 769 F.2d 1388 (9th Cir. 1985) ........................................................................................24

*Iswed v. Caruso*,
 2013 WL 12093132 (W.D. Mich. Feb. 14, 2013) .............................................................16

*Ketchum v. Moses*,
 17 P.3d 735 (Cal. 2001).................................................................................................4

*Krumme v. Mercury Ins. Co.*,
 123 Cal. App. 4th 924 (Cal. Ct. App. 2004).....................................................................17

*Kumar v. Salov N. Am. Corp.*,
 2017 WL 2902898 (N.D. Cal. July 7, 2017) (Gonzalez Rogers, J.)...............................22, 23

*LeBlanc-Sternberg v. Fletcher*,
 143 F.3d 748 (2d Cir. 1998) ..........................................................................................20

*Lowery v. Rhapsody Int'l, Inc.*,
  75 F.4th 985 (9th Cir. 2023) .........................................................................21, 22

*MacDonald v. Ford Motor Co.*,
  142 F. Supp. 3d 884 (N.D. Cal. 2015)...................................................................23

*Mangold v. Cal. Public Utils*,
  67 F.3d 1470 (9th Cir. 1995) ................................................................................5

*Matera v. Google LLC*,
  2018 WL 11414641 (N.D. Cal. Feb. 9, 2018) ........................................................18

*Morgan v. United States Soccer Fed'n*,
  2023 WL 2558417 (C.D. Cal. Jan. 4, 2023)...........................................................24

*Myers v. Aetna Life Ins. Co.*,
  2021 WL 5532699 (C.D. Cal. Mar. 31, 2021) .........................................................6

*Netlist Inc. v. Samsung*,
  341 F.R.D. 650 (C.D. Cal. 2022)............................................................................7

*Newton v. Equilon Enterprises, LLC*,
  411 F. Supp. 3d 856 (N.D. Cal. 2019) (Gonzalez Rogers, J.)....................................6

*Nitsch v. DreamWorks Animation SKG Inc.*,
  2017 WL 2423161 (N.D. Cal. June 5, 2017)............................................................7

*In re PFA Ins. Marketing Litig.*,
  2024 WL 1145209 (N.D. Cal. Feb. 5, 2024) (Gonzalez Rogers, J.) ...................6, 24

*St. Louis Police Ret. Sys. v. Severson*,
  2014 WL 3945655 (N.D. Cal. Aug. 11, 2014) (Gonzalez Rogers, J.) ..........*passim*

*Stoll v. Musculoskeletal Inst. Chartered*,
  Dkt. 115, No. 8:20-cv-1798 (M.D. Fla. Nov. 14, 2022).............................................8

*In re Twitter Inc. Sec. Litig.*,
  2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) .....................................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................................................6

*Waldo v. Consumers Energy Co.*,
  726 F.3d 802 (6th Cir. 2013)................................................................................24

*Washington v. Cal. City Correction Ctr.*,
  871 F. Supp. 2d 1010 (E.D. Cal. 2012) ..................................................................3

*Yong Soon Oh v. AT & T Corp.*,
  225 F.R.D. 142 (D.N.J. 2004) ........................................................................18, 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

18 U.S.C. § 2520(b)(3) ...........................................................................................5, 24

Cal. Penal Code § 502(e)(2) .........................................................................................5

**Rules**

Fed. R. Civ. P. 23(h) ...................................................................................................5

Fed. R. Civ. P. 23(b)(2) ............................................................................10, 17, 18, 22

Fed. R. Civ. P. 23(b)(3) ...............................................................................................4

PLEASE TAKE NOTICE that on August 7, 2024, at 2:00 p.m., the undersigned will appear before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California to move the Court for an order granting attorneys' fees, costs, and service awards. Plaintiffs and Google met and conferred regarding this motion to try to resolve disputed issues, but they have not reached any agreement.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations with supporting exhibits of Mark Mao, James Lee, Bill Carmody, and John Yanchunis, the papers filed with Plaintiffs' Motion for Approval of Class Action Settlement (Dkts. 1096–97), all matters of which the Court may take judicial notice, other pleadings and papers on file in this action, and other written or oral argument that Plaintiffs may present to the Court.[1]

## ISSUE TO BE DECIDED

Whether the Court should award the requested attorneys' fees, costs, and service awards.

## RELIEF REQUESTED

Plaintiffs respectfully ask the Court to award $217,643,951.05 in attorneys' fees, $7,656,565.32 in costs, and $30,000 service awards to each of the five named Plaintiffs.

Dated: April 23, 2024

By: /s/ Mark Mao
Mark Mao

---

[1] Unless otherwise noted, all references to "Ex." are to the exhibits attached to the concurrently filed Mao Declaration. Throughout this motion, all emphases are added unless otherwise stated.

## I.   INTRODUCTION

This Court's certification order described how injunctive relief could bring "important changes to reflect transparency in the system." Dkt. 803 at 34. Class Counsel took their obligations seriously, litigating to the eve of trial and settling only after Google agreed to make critical changes to its practices. The settlement addresses the past, present, and future, providing immediate and substantial benefits to every class member, including deletion of private browsing data, restrictions on how Google stores data, changes to Google's disclosures, and limits on what Google may collect going forward. By any metric, the settlement is a win for the approximately 136 million class members whose data was illegally collected, stored, and used. More broadly, this case and this settlement affirm the importance of transparency and accountability.

This outcome was never assured, nor easy to achieve. Class Counsel squared off against a large team from Quinn Emanuel, one of the largest and most expensive law firms in the world, where associates routinely bill over $1,000 per hour. Google was also supported by a small army of in-house lawyers, numerous on-call engineers, and 300 contract attorneys, whom Google hired to complete "herculean" discovery efforts with years of "scorched-earth" litigation.

Those quoted descriptions are Google's words, but we agree. Class Counsel filed ***30 motions to compel*** to obtain the necessary discovery to prosecute this case. Dkt. 1097-1 at 4 & n.3. Google's twice-sanctioned discovery misconduct made already complicated and expensive discovery even more difficult, necessitating and later extending a data production process overseen by a technical special master, which required ***21 additional hearings and conferences***. *Id.* ¶ 7. Class Counsel also navigated two motions to dismiss (both denied in their entirety), a fully contested class certification motion, and a motion seeking summary judgment on every claim (also denied in its entirety). Only then could mediation begin. *See* Dkt. 1097-3 at 2 (Google taking the position that any prior mediation would have been "futile"). Mediation was yet another substantial undertaking, requiring over three months to reach a term sheet and two more months to finalize the settlement agreement. All along, Class Counsel prioritized the classes by focusing on injunctive relief and declining to negotiate for *any* amount of fees. Google has agreed that

Class Counsel is entitled to fees but reserved the right to contest the amount, if unreasonable. Both parties waived any right to appeal the fact or amount of any award.

This request turns on Class Counsel's $62,442,539.30 lodestar, which is based on reasonable rates and hours worked (after reducing certain rates and hours, as described below). The rates are reasonable, particularly because they are "the same rate[s] charge[ed to] clients, including corporations that are billed hourly, which provides a market-based cross-check." *In re Animation Workers*, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016). The total hours (78,880) are also reasonable given the extensive work required over nearly four years. If anything, these hours are comparatively low. Courts have credited significantly higher hours for cases that settled sooner. *E.g.*, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2023 WL 8445812, at *1-2 (N.D. Cal. Oct. 10, 2023) (awarding $181.25 million in fees following a settlement during fact discovery, and characterizing counsel's substantially higher 149,928 hours as "reasonable, especially because this litigation has been unusually prolonged and contentious"). This case was also "prolonged and contentious," particularly given Google's resistance to producing relevant discovery and its violation of no fewer than four court orders. Yet Class Counsel litigated to the eve of trial in roughly half the time. Class Counsel already provided detailed records to Google, including daily time entries, and they are providing the same to this Court for *in camera* review with this filing.

Class Counsel also respectfully requests a 3.5X multiplier, which is "well within the range of acceptability," where "[m]ultipliers can range from 2 to 4 or even higher." *Uphold our Heritage v. Town of Woodside*, 2008 WL 4868816, at *6 (Cal. Ct. App. Nov. 12, 2008) (affirming multiplier for non-monetary settlement).[2] The contingent nature of this case independently warrants a multiplier because Class Counsel incurred significant attorney time and costs without any guarantee of recovery. Multipliers "approximate market-level compensation for such

---

[2] Courts "may cite unpublished California appellate decisions as persuasive authority." *Washington v. Cal. City Correction Ctr.*, 871 F. Supp. 2d 1010, 1028 n.3 (E.D. Cal. 2012) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003)).

1   services, which typically includes a premium for the risk of nonpayment." *Ketchum v. Moses*, 17

2   P.3d 735, 745-46 (Cal. 2001).

3       Class Counsel's success provides another basis for the multiplier. All seven claims

4   survived two motions to dismiss, a contested class certification motion, and summary judgment.

5   These important rulings laid the foundation for the valuable relief secured with this settlement.

6   This Court previously awarded a multiplier for a non-monetary settlement that resulted in

7   "important" changes to company "policies." *St. Louis Police Ret. Sys. v. Severson*, 2014 WL

8   3945655, at *5-6 (N.D. Cal. Aug. 11, 2014) (Gonzalez Rogers, J.). This settlement does that and

9   more, including by requiring Google to delete and remediate billions of data records and to

10   provide increased privacy protections moving forward, relief that is worth billions. Dkt. 1097-1

11   at 2–3. Furthermore, because attorneys' fees will be paid by Google and not subtracted from any

12   common fund, any multiplier would not impact class members.

13       Google will inevitably argue that no multiplier is warranted because the Court declined

14   to certify a damages class. As explained below, that argument is legally meritless. It is also bad

15   policy. While Google would prefer a ruling that incentivizes counsel to quickly settle after a

16   denial of Rule 23(b)(3) certification, the better approach is to reward Class Counsel for risking

17   everything at summary judgment and vigorously litigating to the eve of trial, which was

18   necessary to obtain the best result. Any other message will enable giant companies like Google

19   to evade the accountability this Court has demanded from them. *See, e.g.*, Ex. 1 at 12:13-20 ("[I]t

20   concerns me that somehow you don't want to be held accountable for what you say.").

21       Class Counsel also respectfully seeks reimbursement of their costs. Google has agreed to

22   pay all costs "that would reasonably be paid by a fee-paying client, including expert fees," while

23   reserving the right to contest the reasonableness of the request. As with fees, the parties also

24   waived any right to appeal this Court's decision. Dkt. 1097-3 at 9. Full reimbursement is

25   warranted because all of Class Counsel's submitted costs are customary and reasonable. Finally,

26   service awards of $30,000 are warranted for each of the five named Plaintiffs given the significant

27   burden this case imposed on their time and privacy.

28

## II.     ARGUMENT[3]

### A.     Multiple Bases Support Class Counsel's Entitlement to Fees.

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Here, Google has agreed that Class Counsel is "entitled" to fees, reserving only the right to contest the reasonableness of the request. *See* Dkt. 1097-3 at 9. Even absent that agreement, multiple statutory bases support awarding fees. The ECPA provides for "a reasonable attorney's fee and other litigation costs reasonably incurred," 18 U.S.C. § 2520(b)(3), and the CDAFA permits the Court to "award reasonably attorney's fees," Cal. Penal Code § 502(e)(2). The remaining claims—all California claims—trigger entitlement to fees under California Code of Civil Procedure § 1021.5. *See, e.g.*, *Congdon v. Uber Techs., Inc.*, 2019 WL 2327922, at *2 (N.D. Cal. May 31, 2019) (Gonzalez Rogers, J.). "Because plaintiffs' claims in this action arise under California law, California law governs recovery of attorneys' fees." *Id.* at *2.[4] The settlement also contains a California choice-of-law provision, so California law applies to any dispute over the reasonableness of the fee request. Dkt. 1097-3 at 11.

### B.     Class Counsel's Lodestar Supports the Fee Request.

The lodestar method is appropriate for awarding fees in this case. *E.g.*, *St. Louis*, 2014 WL 3945655, at *1 (relying on the lodestar method to award fees for an injunctive-relief settlement). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* at *1. The lodestar here is $62,442,539.30, which is based on reasonable rates and hours worked.

#### 1.     *Class Counsel's Hourly Rates Are Reasonable.*

"To determine reasonable rates, the Court examines market rates in the relevant community, paying close attention to the fees charged by lawyers of reasonably comparable skill,

---

[3] Consistent with this District's Procedural Guidance for Class Action Settlements, this Motion incorporates the Background section of Plaintiffs' Motion for Final Approval. *See* Dkt. 1096.

[4] California law applies notwithstanding that Plaintiffs have one federal claim (the ECPA claim). *See Mangold v. Cal. Public Utils*, 67 F.3d 1470, 1478 (9th Cir. 1995).

experience and reputation." *Californians for Alternatives to Toxics v. Kernen Constr. Co.*, 2022 WL 22227777, at *1 (N.D. Cal. Mar. 21, 2022) (Gonzalez Rogers, J.). It is also "appropriate for counsel to use their current hourly rates at the time of the fee motion." *Newton v. Equilon Enterprises, LLC*, 411 F. Supp. 3d 856, 882 (N.D. Cal. 2019) (Gonzalez Rogers, J.) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)). Current rates are particularly warranted here because "Plaintiffs' attorneys have waited over three years to be compensated." *Gates v. Deukmejian*, 987 F.2d 1392, 1406-1407 (9th Cir. 1992). Class Counsel's current rates are listed in Exhibit 2 of the Mao Declaration, and the Carmody, Lee, and Yanchunis Declarations contain summaries of each timekeeper's experience and role in this case.

These rates are reasonable, as confirmed by numerous decisions and authorities. Ten years ago, in 2014, "hourly rates ranging from $355 to $1,095 per hour for partners and associates" fell "within the prevailing market rates for similar cases in the Northern District." *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014). Seven years ago, another court in this District approved "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017). Rates have increased, and this Court recently acknowledged that $1,600 rates for partners have been deemed "reasonable" for this District. *In re PFA Ins. Marketing Litig.*, 2024 WL 1145209, at *25 (N.D. Cal. Feb. 5, 2024) (Gonzalez Rogers, J.).

The reasonableness of Class Counsel's rates is further evidenced by Judge van Keulen's decision to award fees based on their actual rates in her first sanctions ruling, with no reductions. Dkt. 631. That approach was warranted, including because most partners bill below the $1,600 rate this Court has deemed reasonable. The Wolters Kluwer's Real Rate Report provides additional support for Class Counsel's rates. For San Francisco partners, the third quartile rate in 2023 was $1,124, which is higher than most Class Counsel partners' 2024 rates. Ex. 3 at 21; *see Myers v. Aetna Life Ins. Co.*, 2021 WL 5532699, at *4 (C.D. Cal. Mar. 31, 2021) (relying on Wolters "because it is based on actual legal billing, matter information, and paid and processed

invoices from a wide range of companies"). The third quartile rate for IP work in San Francisco was even higher—$1,352. *Id.* at 147. As for associates, a court in 2022 approved "hourly rates ranging from $965 to $1,060," which is higher than the 2024 rates for *all* Class Counsel associates. *Netlist Inc. v. Samsung*, 341 F.R.D. 650, 675-76 (C.D. Cal. 2022).

That clients pay Class Counsel's rates underscores their reasonableness. For Boies Schiller Flexner and Susman Godfrey, the rates for this submission are the same ones charged to hourly fee-paying clients, for all timekeepers. *See* Lee Decl. ¶ 65; Carmody Decl. ¶ 72. "The rates counsel customarily bills clients is also probative because it evinces the actual rate that the attorney can command in the market." *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, 2017 WL 11632540, at *5 (C.D. Cal. Sept. 22, 2017) (cleaned up); *see also Animation Workers*, 2016 WL 6663005, at *6 (approving then-$1,200 hourly rate for Susman Godfrey attorney Marc Seltzer (also part of this motion) because that "is the same rate that he charges clients, including corporations that are billed hourly, which provides a market-based cross-check"); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (similar). Notably, Quinn Emanuel (Google's counsel) argued the same in a recently filed fee petition, urging that firms' "normal and customary rates are the best evidence that the rate is comparable to the market rate." Motion for Attorney Fees at 12, *Health Republic Ins. Co. v. United States*, No. 1:16-cv-259-KCD (Fed. Cl. May 2, 2023), Dkt. 192. Class Counsel acknowledges that the rates for David Boies, Bill Carmody, and Marc Seltzer fall on the high end of the market, but these rates are warranted based on their experience and reputations. *See Becerra v. Radioshack Corp.*, 2014 WL 1266622, at *1 (N.D. Cal. Mar. 26, 2014) (Gonzalez Rogers, J.) (evaluating reasonableness of rates "in light of the Class Counsel's skill, experience, and expertise"); Lee Decl. ¶¶ 8-13; Carmody Decl. ¶¶ 73-75.

As for Morgan & Morgan, their rates and time records are routinely analyzed and approved by courts across the country. Recent approvals include: *Bitmouni v. PaySafe*, Dkt. 103, No. 3:21-cv-641 (N.D. Cal. Feb. 2, 2024) (approving fees and multiplier based on Mr. Yanchunis' $1,450 billing rate); *Hellyer v. Smile Brands Inc.*, Dkt. 95, No. 8:21-cv-1886 (C.D.

Cal. Jan. 16, 2024) (same); *Stoll v. Musculoskeletal Inst. Chartered*, Dkt. 115, No. 8:20-cv-1798 (M.D. Fla. Nov. 14, 2022) (approving rates and hours spent and awarding requested multiplier).

In this case, some Morgan & Morgan attorneys who worked on document review were billed at rates higher than those typically assigned to document-review lawyers, but this case presented anything but ordinary document review. In addition to having unfettered access to Google engineers and attorneys, Google hired 300 contract attorneys just to review documents for responsiveness, a relatively straightforward exercise. Dkt. 1097-1 at 5. Class Counsel needed to review and understand these documents, including dense technical ones littered with ever-changing internal Google codenames that confuse even Google's engineers. To top it off, over 700,000 documents were produced in September 2021 or later, with just four months before the January 2022 close of fact discovery, meaning that Class Counsel needed to move very quickly. Mao Decl. ¶ 7. The experienced Morgan & Morgan attorneys who helped with document review have technical educations and backgrounds and have demonstrated proficiencies in other litigations involving highly technical documents. Yanchunis Decl. ¶¶ 8, 16. Class Counsel appropriately tapped these experienced attorneys to efficiently prepare for depositions, motion practice, and trial. Even so, the rates used for this Motion are discounted well below these attorneys' regular hourly rates. *Id.*

The rates charged by Quinn Emanuel (Google's counsel) also support this fee petition. A 2023 Quinn Emanuel petition included **partner rates of $2,030 and $1,525,** with multiple associates billing over $1,000 per hour. Affidavit of David Cooper, *In re Dell Techs. Inc. Class V Stockholders Litig.*, Case No. 2018-0816-JTL (Del. Ch. Ct) (Mar. 17, 2023) (Ex. 16). In another petition, Quinn reported hourly rates of $1,045 for a third-year associate and $1,210 for a fifth-year associate, among other high rates. Declaration of Manisha M. Sheth at 3, *Rudi v. Wexner*, No. 2:20-cv-3068 (S.D. Ohio Dec. 14, 2021), Dkt. 26-9. Quinn associates appear to routinely bill over $1,000 per hour, which Quinn considers to be the "prevailing market rates for attorneys of comparable skill, experience, and qualifications." Joint Declaration of Berman and Neuwirth at 13, *Bartron v. Visa Inc.*, No. 1:11-cv-01831-RJL (D.D.C. Feb. 25, 2022), Dkt. 256-2; *see also*

*id.* Dkt. 256-7 at 1 (2022 petition in which seven Quinn associates reported rates of over $1,000).

By contrast, no associate for Class Counsel billed above $1,000 per hour. Even many partners billed below $1,000, including a partner from Susman Godfrey who handled significant arguments on the motions to dismiss, class certification, summary judgment, and the Pretrial Conference. Any reduction of Class Counsel's (already lower) rates would send a perverse message—that only attorneys defending corporate giants are entitled to their rates.

> **2.**   *Class Counsel's Total Hours Are Reasonable.*

Class Counsel proactively cut the following time: (1) all travel time in which a lawyer was not working; (2) all summer associate work; and (3) all time recorded by counsel for attending hearings and depositions in which the timekeeper did not have an active role (i.e., did not speak or play a critical role in preparing for the hearing or deposition).[5] The 78,880 remaining hours used to calculate the lodestar is reasonable given the extensive work this case required over nearly four years.[6] As detailed in Plaintiffs' approval motion (Dkt. 1097-1), that work included:

- Investigating the factual, technical, and legal bases for Plaintiffs' claims, and conferring with experts to develop the claims.

- Preparing Plaintiffs' initial Complaint and First Amended Complaint.

- Successfully opposing two motions to dismiss, in their entirety.

- Propounding 235 RFPs, 40 Interrogatories, and 75 RFAs.

- Responding to discovery, including 55 RFAs, 34 RFPs, and 17 Interrogatories.

- Filing ***30 motions to compel***, including discovery letter briefs.

- Participating in ***16 hearings*** with Judge van Keulen.

- Securing and reviewing ***935,644 documents*** produced by Google, totaling almost ***six million pages***, including from 43 Google custodians.

- Taking and defending ***51 depositions***, including 33 depositions of current and former Google employees and 13 expert depositions. Mao Decl. ¶ 6.

---

[5] Class Counsel includes in their lodestar the amount Judge van Keulen awarded in attorneys' fees for the first sanctions motion ($904,936.50) because Class Counsel seeks a multiplier on that time. But Class Counsel subtracted that $904,936.50 from their request to ensure there is no double-recovery. *See* Dkt. 631.

[6] Class Counsel has provided detailed billing records to Google, reflecting daily time entries, and Class Counsel is providing the same for this Court, *in camera*, which are current through March 31, 2024.

9

- Participating in a year-long "Special Master Process" overseen by Special Master Douglas Brush, which included numerous written submissions and ***21 hearings and conferences***, on top of the parties' discovery work with Judge van Keulen.

- Reviewing and analyzing 76GB of unstructured data Google produced during the Special Master Process, from 13,483 different files.

- Retaining, onboarding, and supervising 23 consulting and testifying experts to assist with day-to-day discovery and to prepare expert reports.

- Navigating expert discovery with ***18 expert reports***.

- On two occasions, successfully moving for discovery sanctions based on Google's violation of court orders, and preparing for and participating in two evidentiary hearings on these motions. Dkts. 587, 898.

- Near the close of discovery, successfully moving for leave to amend the Complaint to incorporate additional Google services. Dkt. 504.

- Briefing and arguing class certification, with Google opposing class certification in its entirety and using all of its allotted *Daubert* motions;[7] securing nationwide classwide certification under Rule 23(b)(2) on all seven claims. Dkt. 803.

- Overcoming Google's motion for summary judgment in its entirety, which sought judgment on all seven claims. Dkt. 969.

- Preparing all pretrial submissions, including filing and opposing nine motions *in limine* and 300 pages of disputed jury instructions and verdict forms, and preparing for and attending the Pretrial Conference.

- Beginning another "special master process"—this time with former Magistrate Judge Elizabeth Laporte—focused on evidentiary objections. Dkts. 1081, 1087.

- Preparing for trial (the case settled roughly one month before trial).

- Participating in five months of mediation, from commencement to final settlement.

A comparison to other cases illustrates the reasonableness of Class Counsel's hours. Start with *Facebook*, 2023 WL 8445812, at *2, which concerned Facebook's data collection. That court characterized ***149,928 hours as "reasonable***, especially because this litigation has been unusually prolonged and contentious." *Id.* The same is true here—where Plaintiffs persevered through years of discovery stonewalling, sanctioned discovery misconduct, and a lengthy Special Master process. Yet Class Counsel worked roughly half as many hours notwithstanding (i) that *Facebook* settled during discovery—even before expert reports were served—(ii) class counsel in *Facebook* took and defended fewer depositions (42 relative to 51), and (iii) the dockets contain

---

[7] Google would later seek and obtain leave to file an additional *Daubert* motion. Dkt. 988.

a similar number of entries (1138 in *Facebook*, as of the fees motion, relative to 1105 here, as of now). *See* Motion for Attorney Fees at 9, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843 (N.D. Cal. June 21, 2023), Dkt. 1139.

Another comparison is *In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at *1 (N.D. Cal. Nov. 21, 2022). Counsel worked 73,550 hours, which their fee expert characterized as "more modest than robust." Declaration of Professor William B. Rubenstein at 32, *Twitter*, No. 16-cv-05314 (N.D. Cal. Oct. 13, 2022), Dkt. 662-7. Class Counsel in this case worked almost the same number hours, notwithstanding that (i) *Twitter* involved substantially fewer documents (210,000 relative to 935,000), (ii) substantially fewer docket entries (660 relative to 1105), and (iii) fewer depositions (41 relative to 51). *See id.* at 33-34. These and other examples are summarized below:

| Case | Hours Worked | Case Statistics | Stage of Case |
|---|---|---|---|
| *Brown v. Google* | 78,880 | Documents Produced: Approx 6 million pages across 935,000 documents<br><br>Depositions: 51<br><br>Docket Entries:[8] 1105 | Settled on eve of trial |
| *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC, 2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) (privacy class action) | 149,928 (Dkt. 1140-6 at 22) | Documents Produced: Approx 6.95 million pages (Dkt. 1140 at 4)<br><br>Depositions: 42 (Dkt. 1140-6 at 24)<br><br>Docket Entries: 1138 | Settled near the close of fact discovery |
| *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314, 2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) (securities class action) | 73,550 (Dkt. 662-7 at 31) | Documents Produced: 210,000 documents (Dkt. 662-7 at 33)<br><br>Depositions: 41 (Dkt. 662-7 at 33)<br><br>Docket Entries: 660 | Settled on eve of trial |
| *In re Genworth Fin. Sec. Litig.*, No. 3:14-cv-682, 210 F. Supp. 3d 837 (E.D. Va. 2016) (securities class action) | 66,874 (Dkt. 208 at 54) | Documents Produced: 3.2 million pages (Dkt. 208 at 5)<br><br>Depositions: 30 (Dkt. 208 at 5)<br><br>Docket Entries: 204 | Settled while class certification and summary judgment motions were pending |

---

[8] For each case, the number listed is docket entry just before the motion for attorneys' fees.

| | | | |
|---|---|---|---|
| *In re Dell Techs. Inc. Class V Stockholders Litig.*, No. 2018-0816-JTL, 300 A.3d 679, (Del. Ch. 2023) (securities class action; Quinn Emanuel was class counsel in this case) | 53,000 (July 31, 2023 Opinion on Fee Award at 73) | Documents Produced: 2.9 million pages (Opinion on Fee Award at 74)<br><br>Depositions: 35 (Opinion on Fee Award at 75)<br><br>Docket Entries: 940 | Settled on eve of trial |

Class Counsel worked approximately the same number of hours or less compared to these other cases, which came just as close to trial and in some instances settled much sooner.

        3.     *Class Counsel's Hours Are Especially Reasonable Given Google's Aggressive Approach to Discovery.*

Class Counsel's hours would be even lower but for Google's hardline approach to defending the case. Google repeatedly resisted producing relevant documents and other discovery, leading Plaintiffs to file ***30 motions to compel***. Dkt. 1097-1 at 4 & n.3. For example, Google opposed Plaintiffs' request for document custodians beyond ten employees unilaterally selected by Google. *See* Dkts. 127, 202. It was only through Class Counsel's tireless efforts that Google eventually included as custodians, for example, the employees who described Incognito as "a lie" (Ex. 4, Chris Palmer), "broken" (*id.* Ex. 5, Sammit Adhya), and "not truly private" (*id.* Ex. 6, Lorraine Twohill). Plaintiffs' efforts led to Google's production of many key admissions, including documents involving Google CEO Sundar Pichai and admissions by other senior executives (including Parisa Tabriz's admission that Incognito was a "confusing mess", Ex. 7). Even for agreed custodians, Google fought Plaintiffs' efforts to apply proper search terms, hoping to withhold critical documents But Class Counsel persisted, including by securing key terms like "Incognito," which Google incomprehensibly resisted. Dkt. 148. Google then withheld relevant non-privileged documents as privileged, requiring additional rounds of motion practice that culminated in orders requiring Google to re-review wholesale categories of documents on its logs, and resulting ***in almost 1,500 documents coming off those logs***, including one where an employee wrote that ""we would never sa[y] that Google doesn't know who you are while you're Incognito," undermining Google's oft-repeated argument that the data is "anonymous." Dkt 605; Ex. 8 at -40.R; Dkt. 908 at 9-10.

Depositions were more of the same. Plaintiffs had to resort to motion practice just to secure many of their depositions, including because Google took the position that the default ten-per-side rule should apply. Dkt. 242-1 (order granting Plaintiffs' request for additional depositions). Google then made it difficult to depose key employees, including the head of Chrome Privacy (Sabine Borsay), insisting "Ms. Borsay will not be able to sit for a deposition" and requiring Plaintiffs to move (successfully) to compel it. Dkt. 447-1 at 4. When Google did agree to depositions, its employees sometimes provided what Judge van Keulen described as "incomplete and therefore misleading" testimony. Dkt. 588-1 at p. 16 ¶ 82. In other instances, Google made depositions unnecessarily complicated. When Plaintiffs served three 30(b)(6) notices, Google designated eight different witnesses, requiring more depositions. Mao Decl. ¶ 6.

Making matters more difficult, Google did not disclose several key witnesses, failing to identify *14* employees with knowledge about how Google uses private browsing data. *See* Dkt. 588-1 (May 2022 sanctions order) at 20; Dkt. 898 (March 2023 sanctions order); Ex. 9 at 83:3-9 (ordering document productions for newly disclosed witness Blake Lemoine and noting that "it sounds as if you've got on the plaintiffs' side, a potential whistleblower who really, in many ways, guts much of what [Google] sa[ys] if he's credible"). When Class Counsel discovered one of those undisclosed witnesses (Bert Leung), Google opposed any discovery into his documents as "unnecessary." Dkt. 588-1 at 22-23. Undeterred, Class Counsel successfully moved to compel production of his documents, and the ensuing production, near the close of discovery, revealed Google's use of private browsing detection bits. *Id.*

Similarly, Google's twice-sanctioned "discovery misconduct" vastly increased the number of hours needed to litigate this case. Dkt. 588 at 7; Dkt. 898. Over a 15-month period, Google violated four court orders—each time resulting in additional work—both to address Google's violations and to conduct follow-up discovery. Google's misconduct necessitated (and extended) the Special Master data-production process and led to two sanctions proceedings. None of this should have been necessary, and it was time consuming and expensive. During the summary judgment hearing, when Google's counsel alluded to "two and a half years of scorched-

earth discovery," this Court aptly responded: "you didn't produce things and you've been sanctioned multiple times, so [] *the scorched earth could be your fault*." Ex. 10 at 85:19–20.

That was exactly right. Had Google timely complied with the April 30, 2021 order, the first of the four orders it violated, the parties (and the Court) would have saved a lot of time. That order required Google to produce "all of" the named Plaintiffs' data. Dkt. 588-1 at 35 (citing Dkt. 147-1). The obvious place to start would be any logs with private browsing "detection bits"— i.e., logs that indisputably contain private browsing data. But Google did not disclose these bits until almost a year later. Another place to start would be logs that contain both signed-out, private browsing data and signed-in browsing data, particularly given Google's position throughout the case that private browsing data is "anonymous." Judge van Keulen even explained to Google that Plaintiffs were entitled to "test" its assertion that the data is anonymous. Ex. 11 at 20:7-8. But instead of identifying the (at least) one Google log that contains signed-in and signed-out data (*see* Dkt. 898 at 7), Google told the Court that "logs are internally segregated by whether you're logged into a Google account or aren't." Ex. 11 at 16:15-22. In the meantime, in summer 2021, Judge van Keulen appointed Special Master Brush to adjudicate the parties' disputes about Google's compliance with that April order, among other disputes. Dkt. 219. Had Google complied with the April order, the Special Master's involvement might not have been necessary.

The ensuing Special Master process was rigorous, time consuming, and costly. Over the year-plus engagement, the parties participated in *21 hearings and conferences* with the Special Master, many of which included Plaintiffs' technical consulting experts. Dkt. 1097-2 ¶ 7. The parties also prepared numerous written submissions to the Special Master, many times on short notice. This work required ongoing coordination with Plaintiffs' experts as everyone was quickly processing highly technical information about Google's logs and data infrastructure.

At a minimum, the process could have been much shorter and less demanding. But Google continued violating court orders, including a September 2021 order which established a framework for data productions, to be supervised by the Special Master, as well as a November

2021 order restarting that process after Google violated the September order.[9] Google's repeated violations also forced Plaintiffs to successfully move (over Google's objection) to extend the fact discovery schedule. *See* Dkt. 371 at 9. Discovery in this case was always going to be complex, but it did not need to be so long, nor so contentious.

Ultimately, Judge van Keulen found in May 2022 (after the close of discovery) that "***Google's unjustified failure to provide information regarding the Incognito-detection bits during discovery was improper and constitutes discovery misconduct***." Dkt. 588-1 at 29. As it turned out, this was only the tip of the iceberg. Google later disclosed more logs, more employees, and another detection bit, resulting in Judge van Keulen sanctioning Google a second time. "[***T***]***he discovery violations addressed in the May 22 Sanctions Order were far more extensive and thus more prejudicial, than was then known***." Dkt. 898 (March 2023 Sanctions Order) at 9. This Court ultimately upheld Judge van Keulen's recommendation for an adverse-inference jury instruction, reasoning that "those sanctions orders are meaningful [a]nd you should have produced things that you didn't produce." Ex. 9 at 78:1-2; *see also* Dkt. 1088 at 3. Having engaged in aggressive discovery tactics throughout the case that at times crossed over into outright discovery abuse—which unnecessarily complicated and extended discovery—Google cannot credibly object to Class Counsel's hours.[10]

> 4.    *No Reduction Is Warranted as There Were No Unsuccessful Claims.*

Google may argue that the absence of a damages class warrants a reduction to Class Counsel's lodestar. But that argument conflates Plaintiffs' legal claims with their requested relief.

---

[9] *See* Dkt. 273 (September Order establishing framework for data productions); Dkt. 299 at 8, ¶ 53 (October 2021 finding by Special Master Brush that "Plaintiffs' data . . . have not yet fully been produced."); Dkt. 331 (November 2021 Order by Judge van Keulen upholding the Special Master's finding that Google had not yet produced Plaintiffs' data); Dkt. 588-1 (May 2022 Sanctions Order) at 35 ("The Court agrees with Plaintiffs that Google violated all three orders," namely, the April, September, and November orders governing data productions).

[10] Google's "Statement of Non-Opposition" to the approval motion seeks to downplay the sanctions by stating that Google did not "*deliberately* conceal[]" evidence. Dkt. 1102 at 2. That framing conveniently omits the Magistrate Judge's finding that Google was "grossly negligent." Dkt. 588-1 at 41. Google's focus is also misplaced. Whether Google acted deliberately or not, its violation of four court orders undoubtedly increased the time Class Counsel spent on this case.

While courts *may* deduct time spent on "unsuccessful claims" (*Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.*, 2015 WL 1160584, at *3 (N.D. Cal. Mar. 13, 2015) (Gonzalez Rogers, J.) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983))), there are no unsuccessful "claims" here. All seven claims survived two motions to dismiss, class certification, and summary judgment. Money damages are one form of relief Plaintiffs sought, not a claim. "[A] plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley*, 461 U.S. at 435 n.11; *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) ("[A] plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee.").

Relying on *Hensley*, "courts have *emphatically* rejected" Google's (anticipated) argument to reduce hours based on an injunctive-relief outcome. *Iswed v. Caruso*, 2013 WL 12093132, at *4 (W.D. Mich. Feb. 14, 2013). *Iswed* is instructive. The defendant argued that "because [plaintiff was] granted only 'half' of the relief he requested—injunctive relief, but not monetary damages—the court should only award fees for half of the hours spent." *Id.* The court disagreed: "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised." *Id.* Here, as in *Iswed*, the "requests for monetary damages and injunctive relief largely overlap and are not easily separated," making any reduction arbitrary and unwarranted. Any reduction is even more inappropriate here, because the plaintiff in that case lost his bid for damages on the merits, following trial. Here, Class Counsel preserved individuals' right to sue for money, and many individuals are already pursuing such relief.

Moreover, the lack of a damages class made no difference to the work that Class Counsel needed to do (and did) on behalf of the classes. Carmody Decl. ¶ 71; Lee Decl. ¶ 66; Yanchunis Decl. ¶ 10. "Both the merits and remedies are inextricably related to the claim as a whole . . . . It seems unlikely that the *Hensley* Court intended attorneys to divide their hours between merits and relief given that it did not intend them to divide their time between related claims." *Geertson Seed Farms v. Johanns*, 2011 WL 5403291, at *5 n. 7 (N.D. Cal. Nov. 8, 2011).

1    Case in point is Class Counsel's work with Plaintiffs' damages expert, Michael Lasinski.

2    His classwide damages models (which survived *Daubert* (*see* Dkt. 803)) remained relevant after

3    class certification, both for summary judgment and the Rule 23(b)(2) trial. We know this because

4    Google tried and failed to exclude his models on the ground that no damages class had been

5    certified. This Court "largely denied" that *motion in limine*, "allow[ing] some evidence with

6    respect to defendant's profits and its alleged enrichment." Dkt. 1088 at 4-5. Google's unjust

7    enrichment remained relevant to, among other issues, "the degree [of Google's] intrusion,"

8    Google's "motives and objectives," and the discrepancy between Google's conduct and "social

9    norms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020).

10   Plaintiffs also relied on Mr. Lasinski to quantify the size of the class, and those calculations

11   would have been relevant to the Rule 23(b)(2) trial. *See* Dkt. 608-9 ¶ 195. For example, the jury

12   would have learned that Google's unlawful conduct impacted 136 million Americans who used

13   the at-issue private browsing modes, with Google unlawfully tracking them.

14       **C.    A 3.5X Multiplier Is Appropriate.**

15       "Courts applying California law *often award multipliers* of the lodestar to take into

16   account such factors as the contingent nature of the employment, the quality of the work,

17   difficulty of pretrial and trial preparation, importance of the suit, and the public nature of

18   plaintiffs' position." *St. Louis*, 2014 WL 3945655, at *5. Multipliers are appropriate even where

19   plaintiffs do not secure monetary relief. For example, in *Krumme v. Mercury Insurance Co.*, 123

20   Cal. App. 4th 924, 947 (Cal. Ct. App. 2004), the defendant argued that no multiplier could be

21   awarded since the "plaintiff began by seeking restitution but ended up with only injunctive

22   relief." The court rejected that argument and affirmed the award, including a multiplier. In *St.*

23   *Louis*, this Court awarded a 1.5X multiplier based on a settlement that required defendants to

24   disclose additional information to shareholders, thus "uph[o]ld[ing] important principles of

25   corporate governance." 2014 WL 3945655, at *6. In *City of Plantation Police Officers'*

26   *Employees' Retirement System v. Jeffries*, the court awarded a ***3X*** multiplier based on a settlement

27   that led to "changes to executive compensation," citing the importance of "rewarding attorneys

28

for the benefits secured." 2014 WL 7404000, at *19 (S.D. Ohio Dec. 30, 2014). In *Uphold our Heritage*, the California Court of Appeal affirmed a 2X multiplier for a mandamus action which challenged the proposed demolition of a historic house. 2008 WL 4868816, at *7. That multiplier was "well within the range of acceptability" because "[m]ultipliers can range from 2 to 4 or even higher." *Id.* The list goes on.[11]

The requested 3.5X multiplier here falls squarely within that "range of acceptability." This multiplier is warranted for four independent reasons: (i) the contingent nature of this case, (ii) the importance of the case and the difficulties of litigating it, (iii) Class Counsel's success, and (iv) the value of the relief secured.

### 1.    Contingent Nature of the Case

"The Ninth Circuit recently held that a district court '***must apply*** a risk multiplier to the lodestar when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Matera v. Google LLC*, 2018 WL 11414641, at *5 (N.D. Cal. Feb. 9, 2018) (awarding multiplier for injunctive-only class settlement (citing *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016))); *see also Bernardi v. Yeutter*, 951 F.2d 971, 975 (9th Cir. 1991) (reversing fee award because the district court "should have applied a multiplier of 2.0 to the lodestar figure").

All three requirements are met. *First*, Class Counsel took this case expecting to, if successful, receive a risk enhancement. Carmody Decl. ¶ 69.; Lee Decl. ¶ 63; Yanchunis Decl. ¶ 12. *Second*, Class Counsel's rates do not reflect the risk of nonpayment. Two of the firms (BSF and SG) routinely work for clients who pay the same hourly rates used to calculate the lodestar. Carmody Decl. ¶¶ 69, 72.; Lee Decl. ¶ 65. Morgan & Morgan's attorneys routinely achieve

---

[11] *See also Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (although plaintiffs did not follow through on their plan to seek (b)(3) class certification, awarding a ***2.15X*** multiplier based on a (b)(2) settlement which required the defendant-phone company to make changes to its directory assistance service); *Gaston v. LexisNexis*, 2021 WL 2077812, at *7 (W.D.N.C. May 24, 2021) (after unsuccessful attempt to secure liquidated damages, awarding a ***1.85X*** multiplier for a Rule 23(b)(2) settlement that "requires Defendants to implement certain business changes").

results with multipliers above their billed rates. Yanchunis Decl. ¶¶ 12-15. In this situation, "public policy favors a significant award of attorneys' fees **above** what Class Counsel would have charged on an hourly fee basis." *In re Cap. One Consumer Data Sec. Breach Litig.*, 2022 WL 17176495, at *5 (E.D. Va. Nov. 17, 2022). "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Uphold our Heritage*, 2008 WL 4868816, at *7.

*Third*, this case was risky. "[V]iewing this case from the outset, its outcome was far from certain and counsel took a substantial risk that they would not prevail and would be paid nothing for the major portion of their time and effort." *Uphold our Heritage*, 2008 WL 4868816, at *7. The related *Calhoun* case is instructive. After overcoming Google's consent arguments at the pleadings stage, the plaintiffs lost at summary judgment based on consent—following years of discovery. *See Calhoun v. Google, LLC*, 645 F. Supp. 3d 916, 922 (N.D. Cal. 2022). Here, the risk of nonpayment was compounded by Google's unwillingness to entertain settlement until after this Court denied summary judgment. *See* Dkt. 1097-3 at 2.

The nature of this case also made it far riskier than most contingency cases. It featured the perfect storm of a still-developing area of law, complex facts case requiring substantial technical and expert discovery, and an adversary that is one of the richest companies in the world and capable of burying most opponents through sheer muscle, no matter the strength of the case. Class Counsel countered Google's informational and financial advantages by coming together and making their own substantial long-term investment in this case, which is very difficult for plaintiff-side firms to do. That investment should be rewarded with a significant multiplier. Lawyers should be incentivized to take on tech behemoths, particularly in the absence of a government investigation triggering the case in the first place—as here.

### 2.   Importance of the Case, and the Difficulties of Litigating It

Courts may also award multipliers based on "the difficulty of pretrial and trial preparation" and the "importance of the suit." *St. Louis*, 2014 WL 3945655, at *5. This case was

difficult, to the say the least. Google hired one of the most expensive law firms in the world to lead its already large team of in-house counsel, engineers, and contract attorneys. Google's scorched-earth approach to discovery made the case unnecessarily contentious. Class Counsel filed **30 motions to compel** to obtain relevant discovery regarding Google's conduct, on top of two successful sanctions motions and the year-long Special Master process. In *St. Louis*, which likewise resulted in non-monetary relief, this Court awarded a 1.5X multiplier although "no discovery was ever conducted." *Id.* at *6. Class Counsel appropriately seeks a higher multiplier—having spent almost four years litigating, including years of scorched-earth discovery.

Finally, a multiplier is warranted because this case addressed important issues relating to user privacy. "[P]laintiffs have attempted to correct a wrong being perpetrated" on 136 million Americans who used private browsing modes. *See AT&T Corp.*, 225 F.R.D. at 154 (awarding multiplier based on a settlement that required the defendant-phone company to make changes to its practices). "[I]n an era where millions of Americans conduct their affairs increasingly through electronic devices, the assertion that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data is untenable." Dkt. 969 (MSJ Order) at 8 (quoting *Facebook*, 956 F.3d at 599). Class Counsel vigorously protected that right to privacy, and they have secured valuable injunctive relief for the classes, as explained below.

### 3. Class Counsel's Success

Class Counsel's success supports the multiplier. As summarized in the Background section of the Motion for Final Approval, *see* Dkt. 1097-1 at 3-9, Class Counsel's success included overcoming two motions to dismiss in their entirety, achieving nationwide class certification for both proposed classes on all seven claims, for approximately 136 million Americans, and defeating Google's summary judgment motion in its entirety. That success laid the foundation for obtaining valuable and immediate relief. "When a plaintiff obtains an injunction that carries a systemic effect of importance or serves a substantial public interest, a substantial fee award may be justified. ***This is such an injunction***." *LeBlanc-Sternberg v.*

*Fletcher*, 143 F.3d 748, 760 (2d Cir. 1998).[12] The relief takes four forms:

**Changes to Google's disclosures**: Google has rewritten its disclosures to specifically inform users that "Google" collects private browsing data, including by explicitly disclosing so on the Incognito Splash Screen. Google employees for years pushed for these disclosure changes; yet Google executives resisted, choosing instead to retain language its top executives described as "really fuzzy" and "hedging." Ex. 6 at -67; *see* also Dkt. 1097-1 at 10-11. Class Counsel has finally secured these important changes, thus ensuring Google may no longer deceive the "tens of millions" of Americans who Google's own counsel conceded "did not understand" Google's disclosures. *See* Ex. 1 at 14:19-20 (quoting Google's counsel). These "important changes" to Google's privacy "policies" justify a multiplier. *See St. Louis*, 2014 WL 3945655, at *6 (awarding multiplier for injunctive-relief settlement in part based on "the importance of the changes in corporate governing documents and policies").

**Deletion and remediation of private browsing data**: Google must delete and remediate *billions* of data records that reflect class members' sensitive, private browsing activities. For data not entirely deleted, Google must scrub the data of certain identifying information, including the specific webpages viewed, making it more difficult for Google or others to determine who the data came from and what they were browsing. As explained in the Thompson Declaration filed with the Motion for Final Approval, these requirements impact every relevant data source identified through the Special Master process. Dkt. 1097-17 ¶ 8. By "help[ing] to preserve the privacy rights" of tens of millions of Americans, Plaintiffs have achieved a "significant public benefit." *Edgerton v. State Pers. Bd.*, 83 Cal. App. 4th 1350, 1362 (Cal. Ct. App. 2000) (affirming multiplier based on the "importance of the privacy rights that were vindicated by the Injunction"). That "significant benefit" is what differentiates this case from *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 994–95 (9th Cir. 2023), which emphasized that "lawsuits can provide considerable

---

[12] Google's recently filed Statement of Non-Opposition quibbles with Plaintiffs' use of the term "injunctive relief," claiming the relief is more aptly described as "agreed remediation." Dkt. 1102 at 2. Google's spin ignores the portion of the settlement confirming this Court "will retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement." Dkt. 1097-3 at 11. In any event, the substance of the relief is what matters, not the label.

benefit to society through nonmonetary relief." Unlike in *Rhapsody*, where the court found that the benefit provided was "minimal" and only helped a small portion of class members, this settlement provides valuable injunctive relief for every class member, who will automatically benefit from the required data deletion and remediation without any need to opt-in.

**Limits on future data collection**: Google during this case changed Incognito so that its blocks third-party cookies by default for all users, thereby limiting the data that Google collects. The settlement requires Google to maintain this feature for five years, providing enhanced privacy for class members. The resulting "increase [to] consumer privacy protection" warrants a multiplier. *Gaston*, 2021 WL 2077812, at *7 (awarding multiplier for Rule 23(b)(2) class settlement that "requires Defendants to implement certain business changes").

**Removal of private-browsing detection bits**: This portion of the settlement exemplifies Class Counsel's success. The existence of these private-browsing detection bits, one subject of the sanctions orders, may never have been uncovered (much less deleted) but for Class Counsel's persistence. Their deletion ensures Google will no longer use the private-browsing detection bits to track private browsing users.

### 4.    The Value of the Relief

The multibillion-dollar value of the relief provides even more support for the multiplier. For settlements that include injunctive relief, "the Court must take into consideration the value of that relief [] when considering proportionality" of a fee award. *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *5 (N.D. Cal. July 7, 2017) (Gonzalez Rogers, J.) (citing *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). For example, in *Kumar*, this Court justified its fee award in part based on the "the estimated value of the injunctive relief." *Id.* at *8. While this Motion relies on the lodestar, the value of the relief can be used as a "as a cross-check or as an independent methodology." *Id.* "In the Ninth Circuit, the benchmark percentage for an attorney fee award is 25% of the total settlement value, including both monetary *and non-monetary recovery*." *Id.* at *7. Here, Class Counsel seeks approximately 7% of the estimated value of the relief secured through this litigation and settlement, well within the benchmark, "[e]ven if the

1    Court were to discount the value the settlement." *Id.* at *8.

2    　　　As explained in the Motion for Final Approval, the changes to Google's practices are

3    worth billions, based on Plaintiffs' damages expert's analyses. Dkt. 1097-1 at 14-15.[13] The data

4    deletion and remediation portion of the relief is worth between $3 billion to $6 billion, based on

5    the Ipsos Screenwise Panel through which Google paid users at least $3 per month (per device)

6    for their browsing data. By requiring Google to delete or remediate the data it impermissibly

7    collected, the settlement is returning that value to class members.[14]

8    　　　Google's obligation to continue blocking third-party cookies by default in Incognito for

9    the next five years yields an additional ██████████ in value, based on ████████████

10   ████████████████████████████████████████████████. In

11   addition, Class Counsel should be given credit for Google's decision to implement this cookie-

12   blocking feature for all users even before the settlement (i.e., for the period June 2020 through

13   December 2023). Class Counsel is entitled to fees under a "catalyst theory" because this lawsuit

14   prompted a "voluntary change in [Google's] conduct," namely, the 2020 rollout of this feature

15   to all Incognito users. *MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 891 (N.D. Cal. 2015).

16   "For claims brought under California law, the Ninth Circuit continues to recognize a catalyst

17   theory for entitlement to fees." *Kumar*, 2017 WL 2902898, at *5. Google likewise agrees this

18   lawsuit was "a substantial catalyst" for Google's implementation of this change in 2020. Dkt.

19   1097-3 at 9-10. The resulting catalyst credit yields an additional ██████████ in settlement value.

20   　　　**D.　　Plaintiffs' Costs Are Reasonable and Reimbursable.**

21   　　　Class Counsel also seeks $7,656,565.32 in reimbursable costs. *See* Carmody Decl. ¶¶ 77-

22   81; Lee Decl. ¶¶ 69-123; Yanchunis Decl. ¶¶ 17-19.[15] Google agrees that Class Counsel is

23

---

24   [13] These valuations are also conservative because they do not account for the disclosure changes
25   and Google's deletion of the private browsing detection bits—critical aspects of the settlement.

26   [14] The valuation could also be based on the cost of data removal services. Exs. 12 ($8.71 per
     month) and 13 ($6.49 per month). This approach also yields billions of dollars in value.

27   [15] Plaintiffs subtracted the costs Google was already ordered to pay by Magistrate Judge van
28   Keulen in her sanctions orders. Dkts. 631 ($66,778.59), 898 ($28,342).

1   entitled to recover costs, which the Settlement defines to include "any out-of-pocket costs that

2   would reasonably be paid by a fee-paying client, including expert fees." Dkt. 1097-3 at 3, 9. As

3   with fees, Google reserved the right to contest the reasonableness of the request, but Google has

4   agreed to pay any amount awarded, without any right to appeal the decision. *Id.*[16]

5          All of Class Counsel's submitted costs are typically paid by fee-paying clients, including

6   their own clients (in the case of BSF and SG). Carmody Decl. ¶ 77; Lee Decl. ¶¶ 69, 72. These

7   costs include expert fees (for testifying and consulting experts), special master fees, attorney

8   travel for hearings and depositions (flights and hotels), mediator fees, jury consultant fees, court

9   reporter fees, printing and delivery fees, filing fees, and legal research charges, among other costs

10  ordinarily billed to clients. This Court has agreed that such costs "are of the type that attorneys

11  working on a non-contingency basis bill to paying clients." *In re PFA*, 2024 WL 1145209, at *26

12  (addressing costs such as "travel expenses, research, court filing fees, transcripts and court

13  reporters, mediation expenses, experts, and document review expenses"). This is the norm. *See,*

14  *e.g.*, *Int'l Woodworkers of Am., AFL-CIO, Loc. 3-98 v. Donovan*, 769 F.2d 1388, 1392 (9th Cir.

15  1985) ("costs for telephone calls, postage, air courier and attorney travel expenses" are

16  recoverable); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (affirming

17  award reimbursing costs for "focus groups, mock trials, jury-selection services, and mediation"

18  because those costs "were reasonable and necessary to provide [plaintiff] with effective

19  representation"); *Morgan v. United States Soccer Fed'n*, 2023 WL 2558417, at *2 (C.D. Cal.

20  Jan. 4, 2023) (following class action settlement, awarding as costs "what class counsel expended

21  to pay for experts, mediation, filings, meals, travel, copying, and other costs that are also typically

22  billed to a paying client").

23

24

-----

25  [16] Even if Google had not agreed to pay these costs, Class Counsel would be entitled to them by
    law, including under their ECPA claim. *See* 18 U.S.C. § 2520(b)(3) (permitting fees "and other
26  litigation costs reasonably incurred"); *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F.
    Supp. 3d 872, 889 (N.D. Cal. 2020) (following settlement, holding that "Class Counsel are
27  entitled to the reimbursement of reasonable litigation expenses under . . . the ECPA"), *aff'd sub*
    *nom. In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021).

24

1

**E.      Plaintiffs' Commitment to the Case Merits $30,000 Service Awards.**

Plaintiffs respectfully seek $30,000 service awards for each of the five named Plaintiffs—totaling $150,000. As with fees and costs, Google has agreed to pay any service awards ordered by the Court and waived any right to appeal that decision. *See* Dkt. 1097-3 at 9.

These service awards are justified because this case imposed a significant burden on the named Plaintiffs. Google served voluminous discovery requests, requiring each named Plaintiff to respond to *55 RFAs, 34 RFPs, and 17 Interrogatories*. Dkt. 1097-2 ¶ 4. Every Plaintiff was also deposed for a full day. Sitting for deposition is a difficult and uncomfortable experience for any class representative, but the nature of this case made doing so even more challenging. For example, Google's counsel subjected the named Plaintiffs to intense questioning about their personal browsing habits, which is precisely what they expected to keep private from Google in the first place. *E.g.*, Ex. 14 at 31:2-33:7 (Google's counsel asking Plaintiff Trujillo to "give me some examples of something that you might not want someone else to know or see"); Ex. 15 at 209:7-211:8 (Google's counsel asking Plaintiff Byatt about his use of Incognito "to browse adult-oriented websites"). Each of the named Plaintiffs also participated in the data production process overseen by Special Master Brush, which required them to work with experts—yet another process that imposed on their time and privacy. Finally, to preserve potentially relevant data, each named Plaintiff permitted their personal devices to be imaged, another onerous and invasive task. This Court has issued $30,000 and $50,000 service awards in a case that imposed demanding burdens, and $30,000 is warranted here too. *del Toro Lopez v. Uber*, 2018 WL 5982506, at *3 (N.D. Cal. Nov. 14, 2018) (Gonzalez Rogers, J.) (awarding those amounts because the plaintiffs "were substantially involved throughout the litigation"); *see also* Dkts. 1097-23 ¶ 11 (Brown declaration explaining the burdens here); *see also* Dkt. 1097-24 ¶ 11 (Castillo); Dkt. 1097-25 ¶ 11 (Davis); Dkt. 1097-26 ¶ 12 (Trujillo); Dkt. 1097-27 ¶ 11 (Byatt).

**III.     CONCLUSION**

Plaintiffs respectfully ask the Court to award $217,643,951.05 in attorneys' fees, $7,656,565.32 in costs, and $30,000 service awards to each of the five named Plaintiffs.

Dated: April 23, 2024

By */s/ Mark Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com

Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*