# EXHIBIT 11

**Pages 1 - 209**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

| | |
|---|---|
| CHASOM BROWN, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| VS. ) | **NO. CV 20-03664-YGR** |
| ) | |
| GOOGLE LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Oakland, California
Wednesday, November 29, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
        BOIES SCHILLER FLEXNER LLP
        333 Main Street
        Armonk, NY 10504
  **BY: DAVID BOIES, ESQUIRE**

        BOIES SCHILLER FLEXNER LLP
        44 Montgomery Street, 41st Floor
        San Francisco, CA 94104
  **BY: MARK MAO, ESQUIRE**
      **BEKO REBLITZ-RICHARDSON, ESQUIRE**
      **JOSHUA STEIN, ESQUIRE**
      LAUREN LAVARE, ESQUIRE

        BOIES SCHILLER FLEXNER LLP
        100 SE 2nd Street
        Miami, FL 33131
  **BY: JAMES LEE, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                 Official Reporter

**APPEARANCES CONTINUED:**

For Plaintiffs:

        BOIES SCHILLER FLEXNER LLP
        725 S. Figueroa Street
        Los Angeles, CA 90017
**BY: LOGAN WRIGHT, ESQUIRE**

        SUSMAN GODFREY L.L.P.
        1900 Avenue of the Stars, Suite 1400
        Los Angeles, CA 90067
**BY: AMANDA BONN, ESQUIRE**

        SUSMAN GODFREY LLP
        1301 Avenue of the Americas
        New York, NY 10019
**BY: ALEXANDER FRAWLEY, ESQUIRE**
     **RYAN SILA, ESQUIRE**

        MORGAN AND MORGAN
        201 N. Franklin Street, 7th Floor
        Tampa, FL 33602
**BY: RYAN MCGEE, ESQUIRE**
     **JOHN A. YANCHUNIS, ESQUIRE**

For Defendant:

        QUINN EMANUEL URQUHART SULLIVAN LLP
        191 N. Upper Wacker Drive, Suite 2700
        Chicago, IL 60606
**BY: ANDREW SHAPIRO, ESQUIRE**
     **JOSEPH MARGOLIES, ESQUIRE**
     **TEUTA FANI, ESQUIRE**

        QUINN EMANUEL URQUHART SULLIVAN LLP
        865 South Figueroa Street, 10th Floor
        Los Angeles, CA 90017
**BY: STEPHEN BROOME, ESQUIRE**
     **RACHEL MCCRACKEN, ESQUIRE**
     **VIOLA TREBICKA, ESQUIRE**
     **CRYSTAL NIX-HINES, ESQUIRE**

        QUINN EMANUEL URQUHART SULLIVAN LLP
        51 Madison Avenue
        New York, NY 10010
**BY: JOMAIRE CRAWFORD, ESQUIRE**

1    **MS. NIX-HINES:** Wow.
2    **THE COURT:** Okay.
3    **MS. CRAWFORD:** Good morning, Your Honor. Jomaire
4 Crawford, Quinn Emanuel Urquhart Sullivan, for Google.
5    **THE COURT:** Okay. Good morning.
6    **MR. MARGOLIES:** Good morning, Your Honor. Joseph
7 Margolies from Quinn Emanuel for Google.
8    **THE COURT:** Okay. Good morning.
9    **MS. FANI:** Good morning, Your Honor. Teuta Fani from
10 Quinn Emanuel for Google.
11    **THE COURT:** Good morning.
12    Obviously lots of firepower on both sides and me and my
13 little team on this side.
14    Okay. We have a lot to do today. Who is leading on both
15 sides?
16    **MR. BOIES:** Your Honor, I will lead on our side,
17 although many other people will participate.
18    **THE COURT:** All right. Then stay at the microphone,
19 sir.
20    **MR. BROOME:** I think it depends on the issues,
21 Your Honor. We do have all of the different motions --
22    **THE COURT:** We will start with your trial readiness
23 binder. Motions will come later.
24    **MR. BROOME:** Okay. I believe that will be
25 Ms. McCracken.

1      **MR. BOIES:**  Your Honor, before we commence with the
2  Court's schedule, could I take a moment to update the Court on
3  discussions that we had with plaintiffs' counsel yesterday?
4      **THE COURT:**  With defense counsel?
5      **MR. BOIES:**  That we had with defense counsel
6  yesterday.
7      **THE COURT:**  Okay.  Go ahead.
8      **MR. BOIES:**  The Court is aware that we, rather
9  belatedly, made a motion for certification with respect to a C4
10 class.  We informed counsel for Google last night that we are
11 withdrawing that motion.  In light of that and in light of some
12 of the other developments in the case, including the difficulty
13 that we have had simplifying the case and dealing with the jury
14 instructions, we also informed Google that we were withdrawing
15 our demand for a jury trial.
16     **THE COURT:**  So that's interesting.  Do I have the
17 option of not allowing you to withdraw the jury demand?
18     **MR. BOIES:**  Well, they -- they can keep me from
19 withdrawing the jury demand.
20     **THE COURT:**  Are you keeping the jury demand?
21     **MR. SHAPIRO:**  So, Your Honor, we only learned about
22 this yesterday afternoon, and we're still processing it, but we
23 like our chances with a jury and we like the jury system, so
24 this came kind of out of the blue to us.  We welcome the
25 plaintiffs giving us a heads-up about it yesterday, but we

1   don't have a position yet.

2       And it's correct, that once a jury demand has been made,
3   the consent of the defendant is needed to withdraw it.  So we
4   don't have a position on that yet, Your Honor.  We have a lot
5   of jury instructions and verdict forms and everything we've
6   been working on, of course.

7           **THE COURT:**  Well, we do, and my -- you know, good or
8   bad, I write too much when I have to do a bench trial, and with
9   a jury trial, I don't have to write so much.  The jury just
10  gets to decide.

11          **MR. BOIES:**  Right.

12          **THE COURT:**  And the Ninth Circuit or most circuits
13  don't -- do not -- I think most circuits give jury verdicts a
14  bit more deference than they give district judges.

15          **MR. BOIES:**  Your Honor, I would say that if -- if the
16  Court -- we realize that we're making this decision late.  If
17  the Court would since prefer us not to do that, I think we
18  would not withdraw our jury demand.

19      We don't intend by this to put anybody out.  The defendant
20  had previously said that they thought it ought to be a bench
21  trial.  We thought by waiving the jury trial, it would expedite
22  things, but --

23          **THE COURT:**  Well, I mean --

24          **MR. BOIES:**  -- we're prepared to go either way.

25          **THE COURT:**  There are pros and cons, obviously.  I

1        **MS. BONN:**  Understood Your Honor.

2        **THE COURT:**  I give these instructions at the beginning
3    and I give them at the end.  That's the way I do it.  The
4    objections are overruled.

5        With respect to -- it appears as if -- okay.  Off the bat,
6    I am not your advocate, period.  You should never give me
7    anything that would suggest to the jury that I care one way or
8    the other who wins this case.  It is the jury's decision to
9    decide that.

10       So your statements frequently -- you know, that's why we
11   use models, because lawyers can't help themselves, and you
12   really should.  You can't help yourselves to somehow suggest
13   things should be in instructions that are merely a recitation
14   of your theory of the indication.

15       If by the end of two weeks they don't know what data we
16   are talking about, you have failed on both sides.  So why do I
17   need to explain that to them?

18       These are instructions for the end of the case, and you
19   think that they're not going to know what data we're talking
20   about?  So what are we going to call it?  I called it "at-issue
21   data" because that's the data that was at issue.  The point is
22   to try to get this to the jury packaged in a way where they can
23   make the decision.

24       So what are you going to call it at trial?  What are you
25   going to call it?

1           **MS. BONN:**  Plaintiffs -- it's been used throughout the
2   case -- have called it "private browser" or "private browsing
3   data" because you're in a private browsing mode.  So I just
4   think in practicality --
5           **THE COURT:**  That's what you are going to use?
6           **MS. BONN:**  That's what --
7           **THE COURT:**  And what are you going to use?
8           **MS. TREBICKA:**  Your Honor, the parties have called it
9   "at-issue data" throughout this case.  Private --
10          **THE COURT:**  Okay.  So look at what you're going to do.
11  You're going to rewrite this knowing that the other side is not
12  going to use the same term as you.  And I guarantee you that by
13  the end of the two weeks, they will know that you're not using
14  the same term.  But I'm not going to use your terms.  So figure
15  it out and rewrite it.
16      This is not a class action trial, and I am not inclined to
17  make it more complicated by suggesting that it is.
18          **MS. BONN:**  Yes, Your Honor.  I understand that.
19      One of the concerns that we have is that the reality of
20  our named plaintiffs' damage claims individually are like three
21  dollars a person, and I think that the jury is just going to be
22  confused and furious to be sitting here going *why are the*
23  *plaintiffs making us sit here in a jury box for a two-week*
24  *trial over a hundred dollars a plaintiff,* and I think that just
25  having -- we don't --

1        **THE COURT:** So how are you going to answer that
2    question?
3        **MS. BONN:** I think some context that they are also
4    issuing a finding that the Court will consider on behalf of the
5    class. That's it. We just want them to understand that what
6    they are finding matters not only for three dollars a plaintiff
7    or whatever it is, but the Court will take it into
8    consideration on behalf of the class as a whole. That is, I
9    think, important context for the jury not to be left with this
10   total misimpression that their time is just being wasted on a
11   fool's errand over a hundred dollars in federal court.
12       **THE COURT:** Response.
13       **MS. NIX-HINES:** Thank you, Your Honor.
14       Well, first of all, we would be happy to stip to a hundred
15   dollars total damages if opposing counsel would like.
16       In all seriousness, Your Honor, I think in all the
17   instructions that are before you, this is the one that is most
18   prejudicial to Google. There is absolutely no reason that
19   plaintiffs should be told anything about classwide damages.
20       They lost a damages class. There is no reason that the
21   jury -- and you can hear it even in the way counsel has
22   described it, that they want to indicate to the jury that there
23   are, in fact, millions of people behind these five plaintiffs
24   that -- that are the only things that they are deciding.
25       And it would be extremely prejudicial to Google. It would

1  convey that they've done something wrong, that there are a lot
2  of other people out there like the plaintiffs that have these
3  claims, and that is not, as Your Honor indicated this morning,
4  anything that the jury is going to be deciding.
5      And there is -- the probative value of that is minimal.
6  The prejudice is incalculable.
7      **MS. BONN:**  May I respond briefly on that?
8      The notion that the jury won't hear that Google's
9  practices affect millions of people is wrong on the merits
10 because some of our claims have an element that depends on
11 whether the conduct at issue is highly offense to a reasonable
12 person, and Google itself has taken the position that it
13 relates to whether it violates social norms.
14     So the notion that somehow the jury is going to be walled
15 off from the fact that Google wasn't simply cherrypicking these
16 five people and targeting them with Incognito collection, but,
17 rather, they engaged in a practice that led them to profit and
18 that actually that's why repeatedly they refused to make
19 changes to Incognito because within the company, there are
20 numerous documents -- and I'm thinking of one in particular
21 where Ms. Porter Felt said, "We received a directive not to
22 make any change to the Incognito language or otherwise that
23 could affect our revenue."
24     So the idea that somehow we can create a hermetically
25 sealed system where the jury is just only going to hear

```
 1
 2
 3                    CERTIFICATE OF REPORTER
 4          I certify that the foregoing is a correct transcript
 5   from the record of proceedings in the above-entitled matter.
 6
 7   DATE:   Sunday, December 3, 2023
 8
 9   *Pamela Batalo Hebel*
     _____
10   Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
     U.S. Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```