# EXHIBIT 12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

- - - - - - - - - - - - - - - - - - - - - - x

CHASOM BROWN, MARIA NGUYEN,
WILLIAM BYATT, JEREMY DAVIS, and
CHRISTOPHER CASTILLO, individually
and on behalf of all other similarly
situated,

        Plaintiffs,    Case No.
                     5:20-cv-03664-LHK

   -against-

GOOGLE LLC,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - x

          CONFIDENTIAL

      Zoom video conference deposition of
JESSE ADKINS, taken pursuant to notice,
was held remotely, commencing April 14,
2021, 11:00 a.m., before Leslie Fagin, a
Stenographic Court Reporter and Notary
Public in the State of New York.

               - - -

       MAGNA LEGAL SERVICES
   320 West 37th Street, 12th Floor
    New York, New York 10018
      (866) 624-6221



Page 2

1
2  REMOTE APPEARANCES:
3
4  BOIES SCHILLER & FLEXNER LLP
   Attorneys for Plaintiffs
5      44 Montgomery Street, 41st Floor
       San Francisco, California 94104
6  BY:    MARC C. MAO, ESQUIRE
         BEKO RICHARDSON, ESQUIRE
7      (Appearing via Zoom.)
8         -and-
9  BOIES SCHILLER & FLEXNER LLP
       100 SE 2nd Street, 28th Floor
10     Miami, Florida 33131
   BY:    JAMES LEE, ESQUIRE
11       ROSSANA BAEZA, ESQUIRE
       (Appearing via Zoom.)
12
13 SUSSMAN GODFREY, LLP
   Attorneys for Plaintiffs
14     1301 Avenue of the Americas
       32nd Floor
15     New York, New York 10019-6023
   BY:    ALEXANDER P. FRAWLEY, ESQUIRE
16     (Appearing via Zoom.)
17
   MORGAN & MORGAN
18 Attorneys for Plaintiffs
       201 N. Franklin Street, 7th Floor
19     Tampa, Florida 33602
   BY:    RYAN J. McGEE, ESQUIRE
20     (Appearing via Zoom.)
21
   QUINN EMANUEL
22 Attorneys for Defendant and the Witness
       865 S. Figueroa Street, 10th Floor
23     Los Angeles, California 90017
   BY:    STEPHEN BROOME, ESQUIRE
24       JOSEPH ANSORGE, ESQUIRE
       (Appearing via Zoom.)
25

Page 3

1
2  APPEARANCES:
3
4  ALSO PRESENT:
5    MATTHEW GUBIOTTI, Google Regal
6    KATHY RUCCOLO, Notary Public
7    DREW REIDMAN, Videographer
      Magna Legal Services
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1      J. Adkins - Confidential
2      THE VIDEOGRAPHER:  Good morning.
3  We are now on the record.
4      Today's date April 14, 2021 and the
5  time is now approximately 11:00 a.m.
6  This begins the videotaped deposition of
7  Jesse Adkins in the matter of Chasom
8  Brown, et al., verse Google, LLC.
9      Will the court reporter please
10 swear in the witness.
11 J E S S E   A D K I N S,  called as a
12   witness, having been duly sworn by a
13   Notary Public, was examined and testified
14   as follows:
15 EXAMINATION BY
16 MR. RICHARDSON:
17     Q.  Good morning, Mr. Adkins.  My name
18 is Beko Richardson.  I'm with Boies Schiller
19 & Flexner and I represent the plaintiffs.
20 Good morning.
21     A.  Good morning.
22     MR. BROOME:  Do you want to do
23   introductions on your side and then we
24   will do our side.
25     MR. RICHARDSON:  For plaintiffs,

Page 5

1      J. Adkins - Confidential
2  myself and also Marc Mao, my partner, is
3  attending the deposition.  I will let
4  other counsel for the plaintiffs
5  introduce themselves.
6      MS. BAEZA:  This is Rossana Baeza
7  from Boies Schiller for the plaintiffs,
8  as well.
9      MR. FRAWLEY:  Alexander Frawley
10 from Susman Godfrey for plaintiffs.
11     MR. McGEE:  Ryan McGee from Morgan
12 & Morgan, also for plaintiffs.
13     MR. BROOME:  Stephen Broome from
14 Quinn Emanuel representing Google and
15 the witness.
16     Joining me are Matthew Gubiotti
17 from Google Regal and Joseph Ansorge
18 from Quinn Emanuel.
19     Can I make a request that the
20 attorneys who are not asking questions,
21 stop their video so that we can -- the
22 witness can stay focused on the
23 questioner and myself.  Thanks.
24     And just a couple of other
25 housekeeping matters.  Beko, as we



Page 142

```
 1        J. Adkins - Confidential
 2    Website versus when they are not in a private
 3    browsing mode?
 4        A.  Again, I'm not aware of the service
 5    or we would even identify that.  Our services
 6    work the same, regardless of which browser.
 7    Generally, we make our web services work for
 8    web standards and it's up to the browser to
 9    also work towards those web standards and so
10    as long as we are all following the same
11    standards, the internet works, so we don't
12    design our services specific to a specific
13    web browser with specific features.  I think
14    our services work when they have the required
15    information that's necessary for the
16    operation of the service and if the
17    information is not available, the service
18    won't operate.
19        Q.  And that's based on how the Google
20    APIs are structured to function, right?
21        A.  Yes, that is correct, that we do
22    not -- again, you are talking about private
23    browsing mode, which I interpret as different
24    browsers have different configurations.
25        Again, as long as those browsers
```

Page 143

```
 1        J. Adkins - Confidential
 2    are working in accordance with web standards,
 3    these things should operate, they should
 4    still continue to function, so that's my
 5    answer, to the extent that we build services
 6    that work with web browsers, any web browser
 7    that is interoperable with web standards.
 8        Q.  Does Google have any profiles that
 9    include any of the private browsing
10    information Google collects when people visit
11    the Court's Website?
12        MR. BROOME:  Object to the form.
13        A.  I don't know what you mean by
14    profile.
15        Q.  Does Google have any profiles on
16    users?
17        MR. BROOME:  Object to the form.
18        A.  I don't know what you mean by
19    profiles.
20        Q.  In your work for Google, you've
21    never used the term, profile?
22        A.  I didn't say that.  I said, I don't
23    know what you mean by profile.
24        Q.  In connection with your work for
25    Google, have you used the term, profile?
```

Page 144

```
 1        J. Adkins - Confidential
 2        A.  Yes, I have used the word, profile.
 3        Q.  In connection with users of Google
 4    services, have you used the term, profile?
 5        A.  Not that I can recall.
 6        Q.  How have you used the term,
 7    profile, in your work for Google?
 8        A.  I would say we have, like, a
 9    profile of a type of partner or profile of a
10    certain configuration.  I mean, it's a pretty
11    common word, it's got a lot of purpose and a
12    lot of different meanings.
13        We certainly don't profile users,
14    we don't talk about profiling users, that's
15    not the intent or how our services work, so I
16    use the word, profile, but certainly not what
17    I think you are saying about profiling users.
18        Q.  So using your definition, is it
19    your testimony that Google has no profiles
20    that contain the private browsing information
21    Google collects when people visit the Court's
22    Website?
23        MR. BROOME:  Object to the form.
24    He didn't provide a definition.
25        Q.  You provided your understanding of
```

Page 145

```
 1        J. Adkins - Confidential
 2    profile in the context of your work for
 3    Google, correct?
 4        A.  No, I said I used the word and then
 5    I said I don't recall using the word,
 6    profiling users, in my work.  I don't believe
 7    I gave you a definition.
 8        Q.  So you can't answer my question
 9    whether or not Google has any user profiles,
10    period?
11        MR. BROOME:  Sounds like you need
12        to provide him an explanation of what
13        you mean by profiles.
14        MR. RICHARDSON:  Steve, can you let
15        him testify.  You can object, but I need
16        the witness to testify, not you.
17        MR. BROOME:  Objection, vague.
18        Q.  Mr. Adkins, do you recall my
19    question?
20        A.  Yes, I do.
21        Q.  Can you answer my question?
22        A.  Yes, I cannot answer your question
23    because I do not know what you mean by
24    profile.
25        MR. BROOME:  It's getting kind of
```

MAGNA
LEGAL SERVICES

Page 186

```
 1        J. Adkins - Confidential
 2   youtube.com or google.com, were there any
 3   actions taken that were accounted for in
 4   terms of delivering advertisements on the
 5   Court's Website?
 6        A.  No, not that I am aware of.
 7           MR. BROOME:  Object to the form.
 8        Q.  What about when people visited the
 9   Court's Website in a private browsing mode,
10   not logged into a Google account?  Were the
11   advertisements shown to them on the Court's
12   Website ever modified based on prior actions
13   by those users?
14        A.  In the case when the user visits
15   the Court's website in Chrome Incognito Mode,
16   there is no prior information on that browser
17   that is collected and sent and, therefore,
18   the search term is the primary, in this case,
19   only piece of data used for targeting the
20   ads, and there is no refinements made based
21   on prior user activity because there is no
22   link between that.  Those cookies don't exist
23   or they can't -- let me use better phrasing.
24           Those cookies are not sent to the
25   Google service in the Chrome Incognito Mode.
```

Page 187

```
 1        J. Adkins - Confidential
 2        Q.  Just to be clear, separate and
 3   apart from any cookies, it's your testimony
 4   that when a person visited the Court's
 5   Website, not logged into a Google account and
 6   in an Incognito Mode, the advertisements
 7   would not be modified or adjusted in any way
 8   based on any prior actions taken by that
 9   person?
10        A.  A clarification, are you implying
11   that we used other methods, other than the
12   Google logged in cookie to identify or, to
13   use your words, fingerprint the user?
14        Q.  I'm not implying anything.  I'm
15   just asking a question.  I'm trying to
16   clarify your answer, when you said that
17   Google only uses the search run on the
18   Court's Website to deliver advertisements to
19   a person whose in Incognito Mode and not
20   logged into a Google account, you
21   specifically referred to cookies, and I just
22   want to be clear that the advertisements
23   delivered to those individuals, when they ran
24   a search on the Court's Website, was not
25   modified or adjusted in any way based on any
```

Page 188

```
 1        J. Adkins - Confidential
 2   prior actions by the person, is that correct?
 3           MR. BROOME:  Object to the form.
 4        A.  I think that helped clarify.  I
 5   think we do not -- the Google services do not
 6   use any combination of identifiers to try to
 7   uniquely identify users, other than the
 8   Google logged in cookie and so, therefore,
 9   it's impossible because we don't conduct --
10   that's against our privacy policy.
11           We wouldn't be able to make those
12   kind of associations.  We would never do
13   something like that because it's against our
14   privacy policy, therefore, no, we -- the only
15   information we have about the user comes in
16   the case of personalizing a search ad
17   request, comes from the fact they are logged
18   into a Google service, they've accepted our
19   terms of service, they have ad
20   personalization, continued the term to stay
21   on, and they have full transparency and
22   control, they can see exactly what
23   information is used to personalize their ads.
24           There is absolutely no other
25   mechanisms to tailor, personalize or alter
```

Page 189

```
 1        J. Adkins - Confidential
 2   the ads shown on the Court's Website because
 3   we don't use any information to try to
 4   uniquely identify users, other than in the
 5   cases where they're logged into Google and,
 6   again, all of those prior privacy methods and
 7   protections are in place, so there is no, in
 8   your words, fingerprinting, so we have no
 9   ability to alter the ads because we don't
10   have any unique identifiers to try to do
11   that, nor would we ever try to create one.
12        Q.  If a user who has not logged into a
13   Google account went to google.com and
14   Incognito Mode and ran searches and then, in
15   that same Incognito tab, went to the Court's
16   Website and ran a search, would the ads
17   delivered to that person be modified or
18   adjusted in any way based on the searches
19   that had been run in that tab previously in
20   that Incognito browsing session?
21        A.  No.  The user has not created a
22   Google account and has not, again, accepted
23   the ads personalization and, you know, has
24   full transparency, control and ability to
25   delete that information, so, therefore,
```

MAGNA
LEGAL SERVICES

Page 190

1       J. Adkins - Confidential
2   again, in accordance with our privacy policy,
3   we would never, again, an anonymous user,
4   their prior searches on google.com, in the
5   same session, same tab Incognito Mode would
6   not alter the tabs on the Court's Website.
7   There is no interaction between those two
8   requests for ads.
9       Q.  With respect to advertisements
10  served by Google on websites, other than the
11  Court's Website, have those ever been
12  modified or adjusted in any way based on the
13  information Google collects when people visit
14  the Court's Website without being logged into
15  and in Incognito Mode?
16      Does my question make sense?
17      A.  No, it was long and I missed --
18      Q.  I can break it up.
19      A.  If I can take notes by the end, I
20  forget what the beginning was, if you can go
21  slower.
22      Q.  My prior questions were focused on
23  what Google used to deliver ads on the
24  Court's website during the prior
25  configuration.

Page 191

1       J. Adkins - Confidential
2       You understand that?
3       A.  Yes.
4       Q.  My questions now are how Google
5   delivers ads on other websites after someone
6   visits the Court's Website.
7       Do you understand that?
8       A.  Yes.
9       Q.  So my question is whether or not
10  Google has served ads on other websites that
11  are influenced or modified in any way based
12  on the information Google collected when
13  people visited the Court's Website, logged
14  out, and in Incognito Mode?
15      MR. BROOME:  Object to the form.
16      A.  So in the current configuration of
17  the Court's Website with programmable search
18  engine, there is no request for ads.  Those
19  searches are only stored with the search
20  service and, therefore, there is no
21  interaction with ads.
22      The user has not accepted any type
23  of privacy policy or anything like that, so,
24  no, their searches on other websites are not
25  altered or modified.  The ads delivered to

Page 192

1       J. Adkins - Confidential
2   them on other websites are in no way modified
3   by the searches they performed on the Court's
4   Website.
5       Q.  Your answer just focused on the
6   current configuration.
7       What about the prior configuration
8   for the Court's Website?
9       A.  I'm sorry, you asked about the
10  current configuration.  You are asking a new
11  question now?
12      Q.  Same question, prior Court's
13  configuration?
14      A.  Let me repeat it back to make sure
15  I have the correct one.  In the prior
16  configuration with the ads, you are asking
17  me, could the searches on the Court's Website
18  affect ads delivered on other websites?
19      Q.  Yes.
20      A.  And nothing to do with Chrome or
21  Incognito Mode?
22      Q.  Let's start with that question and
23  then we will go to the next part.
24      A.  My answer is, if the user was
25  logged in to Google services and we were able

Page 193

1       J. Adkins - Confidential
2   to read the cookie that identifies the
3   logged-in user, if the user has
4   personalization turned on, then the prior
5   configuration of the Court's Website which
6   requested ads, those searches can be used for
7   ads purposes later and so the user, again,
8   could go to myactivity.google.com and see
9   those searches that are associated with the
10  ads they requested, delete them or turn off
11  ads personalization if they wanted, but, yes,
12  those searches that also requested ads could
13  be used to modify the delivery of ads on
14  other third party websites.
15      Q.  What about when a user was in a
16  private browsing mode, such as Incognito,
17  could those searches on the Court's Website
18  be used to modify the delivery of ads on
19  other websites?
20      A.  As long as the user did not log
21  into a Google service on that same Incognito
22  tab, the user was logged out, those searches
23  and just the searches cannot be used to
24  modify or be used in concert with ads.
25      I'm going to reference back my


MAGNA
LEGAL SERVICES

Page 322

```
 1
 2                     - - -
 3               E X H I B I T
 4                     - - -
 5      EXHIBIT                          PAGE
 6      Exhibit 6 Programmable search engine   272
 7        terms of service
 8      Exhibit 7 Google's privacy policy      280
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 323

```
 1
 2                     - - -
 3           DEPOSITION SUPPORT INDEX
 4                     - - -
 5      Direction to Witness Not to Answer
        Page Line     Page Line  Page Line
 6      None
                       - - -
 7
        Request for Production of Documents
 8      Page Line     Page Line  Page Line
        None
 9
                       - - -
10
        Stipulations
11      Page Line     Page Line  Page Line
        None
12                    - - -
13      Questions Marked
        Page Line     Page Line  Page Line
14      None
                       - - -
15
        To Be Filled In
16      Page Line     Page Line  Page Line
        None
17                    - - -
18
19
20
21
22
23
24
25
```

Page 324

```
 1
 2              CERTIFICATE
 3
            I HEREBY CERTIFY that the witness,
 4      JESSE ADKINS, was duly sworn by me and that
        the deposition is a true record of the
 5      testimony given by the witness.
 6      _____
        Leslie Fagin,
 7      Registered Professional Reporter
        Dated: April 14, 2021
 8
 9
10
            (The foregoing certification of
11      this transcript does not apply to any
        reproduction of the same by any means, unless
12      under the direct control and/or supervision
        of the certifying reporter.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 325

```
 1
 2           ACKNOWLEDGMENT OF DEPONENT
 3          I,              , do hereby
        certify that I have read the foregoing pages,
 4      and that the same is a correct transcription
        of the answers given by me to the questions
 5      therein propounded, except for the
        corrections or changes in form or substance,
 6      if any, noted in the attached Errata Sheet.
 7
 8
        JESSE ADKINS              DATE
 9
10
        Subscribed and sworn
11      to before me this
            day of            , 2021.
12
        My commission expires:
13
14      Notary Public
15
16
17
18
19
20
21
22
23
24
25
```

