Mao Exhibit 18

quinn emanuel trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 | FAX (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(415) 875-6426**

WRITER'S INTERNET ADDRESS
**jonathantse@quinnemanuel.com**

January 13, 2021

**VIA E-MAIL**

Beko Reblitz-Richardson
Boies Schiller Flexner LLP
44 Montgomery St.
41st Floor
San Francisco, CA 94104
Phone: (415) 293-6804

Re:     **Google's Letter re November 25, 2020 ESI Meet and Confer**

Counsel:

I write to memorialize our November 25, 2020 meet and confer regarding Paragraph 4(b) of the First Modified Order Re: Discovery of Electronically Stored Information ("First Modified ESI Order") (Dkt. 91)[1] between Plaintiffs and Google, LLC ("Google") and in response to your December 7, 2020 letter. We disagree with many of the characterizations in your letter and do not adopt Plaintiffs' summary of the November 25 meet and confer. In the interest of moving the ESI discussions forward, we address the following points below.

**The Types of ESI That Should Be Preserved**

During the November 25, 2020 meet and confer, the parties agreed that they had previously discussed the categories of ESI sources that Google would not be obligated to preserve, which are listed in Paragraph 4(d) of the First Modified ESI Order. Google further explained that it is preserving *relevant* ESI sources under the reasonableness and proportionality standard as contemplated by the Federal Rules of Civil Procedure, the Court's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"), and the Court's Checklist for Rule 26(f) Meet

---

[1] Paragraph 4(b) of the First Modified ESI Order corresponds to Paragraph 4(a) of the prior ESI Order (Dkt. 80) that Plaintiffs identify in their December 7, 2020 letter. Hereinafter, all paragraph citations will refer to the First Modified ESI Order.

and Confer Regarding ESI ("ESI Checklist"). For example, the ESI Guidelines "encourage *reasonable* electronic discovery with the goal of limiting the cost, burden and time spent" and explain that the Rule 26 proportionality standard "should be applied to the discovery plan and its elements, including the preservation, collection, search, review, and production of ESI." ESI Guidelines, Guidelines 1.01 (emphasis added), 1.03. "Reasonable steps to preserve [ESI] ... does not call for perfection." Fed. R. Civ. P. 37(e) advisory committee's notes (2015).

In addition, the Sedona Principles, which the Northern District of California has cited with approval, provide that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 THE SEDONA CONF. J., no. 1, at 118 (2018) (hereinafter, "*The Sedona Principles*"), available at https://thesedonaconference.org/sites/default/files/publications/The%20Sedona%20Principles%20Third%20Edition.19TSCJ1.pdf; *see also In re Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, 2016 WL 7336411, at *1 (N.D. Cal. Oct. 14, 2016). In conformity with the above, Google is preserving relevant ESI sources under the reasonableness and proportionality standards. As Google explained on the call and as detailed further below, Google is preserving custodial data of individuals with roles and responsibilities relevant to the claims and defenses in the litigation. Google is further preserving and collecting relevant central repositories used by relevant members of its Chrome, Analytics, and Ad Manager teams.

**Document Retention Policies for the Relevant Time Period**

Plaintiffs also requested information pertaining to the retention policies of several categories of ESI sources and Google provided the following information:

**Emails.** Google informed Plaintiffs that emails at Google are generally subject to an 18-month retention policy, which is suspended once a custodian is put on a litigation hold. To the extent a custodian has previously been put on a litigation hold that is co-extensive with the litigation hold from this case, emails that pre-date the litigation hold in this case may also be preserved.

**Documents on Google Drive.** Google informed Plaintiffs that there is no automatic deletion policy for documents on Google Drive. Although documents in the trash on Drive are automatically deleted after 30 days, this policy is suspended for all custodians on litigation hold, who are instructed not to delete documents related to the subject matter of the lawsuit.

**Private Browsing Mode Data.** Plaintiffs asked Google about the retention period for the event-level user data that is collected while users are in private browsing mode. As we explained on the call, there are no logs or other documents that separately identify data collected through Ad Manager or Analytics from users in private browsing mode. We have further explained, in briefing and in our responses to Plaintiffs' discovery requests, that Ad Manager and Analytics do not distinguish between users who are in a private browsing mode and users who are not in a private browsing mode. Therefore, Plaintiffs' request that Google preserve any log that may reflect data from users in private browsing mode is essentially asking for the preservation of *any and all* logs reflecting event-level user data received through Ad Manager and Analytics.

Plaintiffs' request is also entirely disproportionate to the needs of the case and unnecessary given that the putative class here is limited to logged-out users. Further, the retention policies and periods on these logs (generally ranging between 6 to 18 months) are carefully calibrated to conform to Google's legal obligations and user expectation when users chose to delete data. Google cannot suspend these retention periods simply because Plaintiffs claim that the information is marginally relevant. Compounding the burden associated with Plaintiffs' request is the infeasibility of retaining these logs for the lengths of time that Plaintiffs seek. As an example, we explained on the phone that *billions* of entries are generated *daily* for event-level logs for Google Analytics and Google Ad Manager. Plaintiffs cite no authority holding that Google should be required to preserve every such log (to the extent that is even feasible) where Plaintiffs have not even articulated the relevance of the information. "A responding party's obligations under Rule 26(f) to meet and confer in good faith does not trump its right to evaluate unilaterally and select the procedures, methodologies, and technologies appropriate for preserving and producing its own ESI." *The Sedona Principles* at 118; 126. "[D]eference regarding the selection and implementation of the discovery process should be given to the party that will incur the costs." *Id.* at 121. In accordance with its discovery obligations, Google has been preserving relevant, proportional ESI throughout this litigation but cannot agree to "preserve all data collected while users are in a private browsing mode back to June 1, 2016" for the reasons discussed above.

In any event, Google is willing to continue discussing the availability of potentially relevant log-related information. Plaintiffs also need to articulate the relevance of the data on these logs, so that the parties can determine in good faith whether there is substitute information that will fulfill the needs of Plaintiffs and will entail a manageable preservation burden on Google.

**Auto-deletion by users.** The parties also discussed the user auto-deletion policy that was the subject of Mr. Pichai's June 24, 2020 blog post, available at https://blog.google/technology/safety-security/keeping-private-information-private/. Google explained that this policy was rolled out in May 2019 and relates only to data associated with the user's Google account. As Google explained on the call, the type of data at issue here is not relevant to the case and Google is not preserving on the back-end the data that users are deleting at their election. Thus, Google will not be preserving data that users choose to delete through the auto-deletion policy or otherwise.

**Chats.** Google informed Plaintiffs that off-the-record chats are ephemeral and that only chats that are on-the-record are being preserved. Google further informed Plaintiffs that its litigation hold instructs the custodians to set their chats to "on-the-record" when discussing relevant matters so that their relevant chats will be preserved. In addition, Google explained that its employees typically use Google Chats and that Google is not currently aware of other chat applications being used by preservation custodians to discuss relevant matters.

**Text messages.** Google explained that to the extent there are relevant text messages, custodians have been instructed to preserve those.

**Voicemails.** Google informed Plaintiffs that the litigation holds instruct custodians to preserve relevant voicemails.

3

**Sources of Custodial and Noncustodial Data**

Google explained that, consistent with the scope of discovery as outlined in its responses and objections to, and any subsequent agreement on, Plaintiffs' Requests for Production ("RFPs"), Google would review and produce documents from custodial and noncustodial sources. The parties are already meeting and conferring over Plaintiffs' First Set of RFPs, and plan to meet and confer over Plaintiffs' Second Set of RFPs. Once there are agreements on the scope of discovery, the parties expect to meet and confer on custodians and search terms to identify responsive documents for those requests that necessitate a review of custodial documents.

**The Custodians, or General Job Titles or Descriptions of Custodians**

**Hold Custodians.** Pursuant to the ESI Checklist, Google provided Plaintiffs with the "general job titles" of custodians for whom ESI will be preserved. *See* ESI Checklist § I. For Chrome, Google stated that ESI for relevant custodians is being preserved (including relevant decision makers) but that Google is not preserving ESI for everyone who works on Chrome, which would total thousands of people. For Google Ad Manager and Google Analytics, Google is preserving ESI for relevant custodians (including relevant decision makers). Google also identified employees working on Google Tag Manager, which supplies the Analytics tag, as well as software developers and other types of manager level personnel as custodians whose ESI is being preserved.

At this stage in litigation, Google has no obligation to identify hold custodians by name. It is premature to discuss specific search custodians at this time. The parties still need to meet and confer on the scope of discovery in light of the 149 RFPs Plaintiffs have served so far. Agreements on the scope of discovery will necessarily inform the identity and number of document custodians.

**Employees Identified in First Amended Complaint.** In response to Plaintiffs' inquiry as to whether all individuals referenced in their First Amended Complaint ("FAC") have been put on hold, Google responded that all relevant custodians have been put on hold. As explained above, Google is under no obligation to identify any of the hold custodians by name. Plaintiffs have not articulated any basis for why any of these individuals have relevant information, beyond the fact that Plaintiffs decided to identify them by name in the FAC. But just because an individual is named in the FAC does not make his or her documents relevant by default. There is nothing in the FAC that speaks to the relevance of the documents of those individuals named. As Google explained during the November 25 meet and confer, Google is not preserving Mr. Pichai's ESI for this litigation. There are no relevant allegations about Mr. Pichai's conduct or knowledge that would bear on any claim in the lawsuit.

**Individuals Involved With The 2008 Launch of Incognito Mode.** Plaintiffs asked whether Google would provide the names of the employees that were involved in the 2008 launch of Incognito mode. This is a discussion the parties can have during the custodian negotiations. As outlined below, Google is preserving relevant documents.

Related to the preservation period, Plaintiffs contend that the Court's First Modified ESI Order instructed Google to preserve ESI for all preservation custodians going back to June 2008. *See* Plaintiffs' December 7, 2020 Letter at 5. Google disagrees with Plaintiffs' interpretation of the ESI Order. The Court stated that "ESI created or received after June 1, 2008 will be preserved" "[f]or

4

*designated* custodians or descriptions of custodians." Dkt. 91 (First Modified ESI Order), Paragraph 4(a) (emphasis added). The parties have not yet designated any custodians or even descriptions of custodians for whom ESI from 2008 is relevant and therefore must be preserved. In any event, to avoid burdening the Court with a preservation issue, Google intends to preserve ESI for all hold custodians going back to June 1, 2008. Google's position remains that discovery of documents before June 2016 is not relevant or proportional to the needs of the case. The Court's order also confirmed that the preservation period is not coextensive with any search or production obligations. *Id.* ("In delineating the scope of preservation herein, the Court does not address the relevance or proportionality or otherwise assess any pending or future request for production.").

Google has now answered Plaintiffs' additional questions regarding the preservation of custodial documents except that Google has not identified *each* individual currently placed on hold. Therefore, Plaintiffs' claim they "are unable to evaluate the sufficiency of Google's steps to preserve custodial documents" is misplaced. In any event, that is not the inquiry here. It is not opposing party's right or obligation to "evaluate" the sufficiency of its adversary's preservation efforts. As *The Sedona Principles* confirm, a requesting party should not "prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery." *The Sedona Principles* at 123.

### A Description of Named Plaintiffs' Devices That Each Has Used to Access the Internet

Google asked Plaintiffs for information on the Plaintiffs' devices that were used to access the Internet during the Class Period. Plaintiffs provided the following high-level information:

- Chasom Brown: Android mobile phones and laptops;
- Maria Nguyen: iPhone and MacBook;
- William Byatt: Android mobile phones and Apple device;
- Jeremy Davis: iPhone and laptops; and
- Christopher Castillo: Samsung phone and laptop.

Google asked about a further identification of the devices the Named Plaintiffs used. As discussed, Google seeks the make, model, and identification number of those devices. Plaintiffs did not have that information to provide during the meet and confer but committed to providing that information after the meet and confer. Please let us know a date certain by which we will receive this information. Google further informed Plaintiffs that it intends to image the Named Plaintiffs' devices. Please confirm that Plaintiffs will make their devices available for imaging and a date certain for doing so.

With respect to the Named Plaintiffs' ESI, Plaintiffs told Google that the emails, documents, and texts of the Named Plaintiffs were being preserved. Google specifically identified some categories of ESI that should be preserved by Plaintiffs, including but not limited to, documents related to consent, such as any agreement with Google or third-party websites during the Class Period and when the Named Plaintiffs signed up for their Google account outside of the Class Period. In addition,

Plaintiffs should preserve, including by deactivating any auto-delete features or taking other steps if necessary, data related to their Internet browsing and other Internet activity. In other words, Plaintiffs should not alter any settings on browsers or apps through which they access the Internet to ensure that all data and settings related to their Internet browsing and other Internet activity is preserved. Google further requested that Plaintiffs provide the full universe of Google accounts associated with each Named Plaintiff. This is not designed to be an exhaustive list of Plaintiffs' preservation obligations.

Google intends to continue to fulfill its discovery obligations and hopes the parties can continue to meet and confer in good faith to resolve any future ESI dispute.

Sincerely,

/s/ *Jonathan Tse*
    Jonathan Tse