Mao Exhibit 22

# Exhibit F

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
1330 Broadway, Suite 630
Oakland, California 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **DECLARATION OF WILLIAM B. RUBENSTEIN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor<br>Hearing Date: September 7, 2023<br>Hearing Time: 1:00 p.m. |

1.      I am the Bruce Bromley Professor of Law at Harvard Law School and have been

recognized as a leading national expert on class action law and practice.  Class Counsel[1] seek a fee

---

[1] The Settlement Agreement states that "'Class Counsel' means Derek W. Loeser of Keller Rohrback L.L.P. and Lesley E. Weaver of Bleichmar Fonti & Auld LLP . . . ."  Class Action Settlement Agreement and Release, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Dec. 22, 2022), ECF No. 1096-2 at 8 [hereinafter "Settlement Agreement"]; *see also* Order Certifying Settlement Class; Granting Preliminary Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23(e)(1); and Approving Form and Content of Class Notice, *In re: Facebook, Inc. Consumer Privacy User*

of $181.25 million, which constitutes 25% of the $725 million settlement fund. Class Counsel have
retained me to assist the Court in reviewing whether this request is reasonable in the context of
this litigation.  After setting forth my qualifications to serve as an expert (Part I, *infra*), I provide
the Court with empirical and qualitative evidence, all of which would enable the Court to find that
Class Counsel's requested fee is well deserved.  Specifically:

- ***Empirical evidence provides support for the conclusion that Class Counsel's lodestar
  reflects reasonable billing rates*** (Part II, *infra*).  For purposes of this Declaration, my
  research assistants compiled a database of all billing rates explicitly approved by courts
  overseeing class action settlements in the Northern District of California in 2022 (344
  rates from 33 cases).  The billing rates Class Counsel employ for partners and
  partnership-track attorneys are slightly above (3.8% higher than) those approved rates.
  This is impressive in that the majority of cases in this comparison set were less complex
  matters (such as wage-and-hour cases) and only two resulted in settlements greater than
  $100 million.  The reasonableness of Class Counsel's rates is generally consistent
  across other categories of billers (staff attorneys and paralegals), with Class Counsel's
  blended hourly rate for all professionals ($609) falling 18.2% below the median and
  16.5% below the average of the comparison set.

- ***Empirical evidence and qualitative analysis provide support for the conclusion that
  Class Counsel's lodestar reflects a reasonable quantity of hours*** (Part III, *infra*).  My
  research assistants undertook a similar empirical evaluation of the number of hours
  Class Counsel billed, comparing that total to hours billed in seven settlements of
  roughly this magnitude ($525 million–$925 million) in a database of over 1,000 class
  action cases that I maintain.[2]  The total hours in this case is somewhat above the median
  of the comparison set, but 24% below the average.  In light of the discovery challenges
  that Class Counsel faced in litigating this case, these data provide support for the
  conclusion that Class Counsel's lodestar does not reflect churning or lodestar padding.
  A qualitative assessment of the time spent provides further context for that conclusion.

- ***Qualitative evidence concerning the risks Class Counsel took and the results they
  achieved provide support for the conclusion that they are entitled to a lodestar
  multiplier – and empirical evidence shows that the multiplier sought is lower than
  average multipliers in cases of this magnitude*** (Part IV, *infra*).  Class Counsel bore a
  significant risk by taking on a non-cookie cutter, relatively novel, significantly complex

---

*Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Mar. 29, 2023) (confirming appointment
of Class Counsel), ECF No. 1130 at 3.

[2] For an explanation of the database, see ¶ 10, *infra.*

case against an enormously well-funded adversary that employed one of the world's largest law firms to vigorously contest the claims. Class Counsel, two relatively small law firms, invested tens of millions of dollars of their own time and money pursuing the class's claims without any promise that the investment would pay off. While shouldering significant risk, Class Counsel delivered for the class, securing the largest data privacy settlement in U.S. history, a $725 million common fund, which will deliver monetary relief to any class member who steps forward to follow the simple, straightforward claiming process. Class Counsel's 25% fee request is almost exactly twice their lodestar; a 2 multiplier is slightly higher than the norm for all cases (1.5-level) but well below the norm for large fund cases (3-level) such as this.

2.      The requested 25% fee here is consistent with the Ninth Circuit's 25% benchmark, but percentage awards tend to decrease as fund sizes increase;[3] in cases of this magnitude, empirical evidence shows that the average percentage is somewhere between 12–18%.[4] However, such a percentage comparison recedes in importance in light of the lodestar cross-check and a series of qualitative factors required by the Ninth Circuit's jurisprudence. All of these data points are more insightful, as comparing percentages across cases provides little information about the quantity of Class Counsel's efforts and proposed profit (which are captured by the lodestar cross-check and its resulting multiplier) and provides no information about the particular risks Class Counsel shouldered or the strength of the settlement they secured for the class (which are captured by the Ninth Circuit's multi-factor test).[5] As applied here, the full record of the case provides strong support for the Court to find that Class Counsel's requested 25% award is reasonable.

---

[3] *See* 5 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §§ 15:80 to 15:81 (6th ed. & Supp. 2023) [hereinafter "*Newberg and Rubenstein on Class Actions*"].

[4] *Id.* at § 15:81.

[5] For these reasons, I have long argued that simply comparing percentages across cases without reference to the lodestar multiplier, and other qualitative factors, is a relatively meaningless exercise. *See, e.g., id.* at § 15:86 ("It is true in the abstract that a 25% award in one case and a 25% award in another case are both 25%, such that the percentage method ensures some level of consistency. But again, since that 25% figure, standing alone, provides so little information about the fee's relationship to profit, it is a rather meaningless form of consistency.").

3

# I.
## BACKGROUND AND QUALIFICATIONS[6]

3.      I am the Bruce Bromley Professor of Law at Harvard Law School.  I graduated from Yale College, *magna cum laude*, in 1982 and from Harvard Law School, *magna cum laude*, in 1986.  I clerked for the Hon. Stanley Sporkin in the U.S. District Court for the District of Columbia following my graduation from law school.  Before joining the Harvard faculty as a tenured professor in 2007, I was a law professor at the UCLA School of Law for a decade, and an adjunct faculty member at Harvard, Yale, and Stanford Law Schools while a public interest lawyer during the preceding decade.  I am admitted to practice law in the Commonwealth of Massachusetts, the State of California, the Commonwealth of Pennsylvania (inactive), the District of Columbia (inactive), the U.S. Supreme Court, six U.S. Courts of Appeals, and four U.S. District Courts.

4.      My principal area of scholarship is complex civil litigation, with a special emphasis on class action law.  I am the author, co-author, or editor of five books and more than a dozen scholarly articles, as well as many shorter publications (a fuller bibliography appears in my appended c.v.).  Much of this work concerns various aspects of class action law.  Since 2008, I have been the sole author of the leading national treatise on class action law, *Newberg on Class Actions*.  Between 2008 and 2017, I re-wrote the entire multi-volume treatise from scratch as its Fifth Edition and, subsequently, produced the treatise's Sixth Edition – *Newberg and Rubenstein on Class Actions* – which was published in 2022.  As part of this effort, I wrote and published a 692-page volume (volume 5 of the Sixth Edition) on attorney's fees, costs, and incentive awards;

---

[6] My full c.v. is attached as Exhibit A.

4

this is the most sustained scholarly treatment of class action attorney's fees and has been cited in numerous federal court fee decisions.  For five years (2007–2011), I published a regular column entitled "Expert's Corner" in the publication *Class Action Attorney Fee Digest*.  My work has been excerpted in casebooks on complex litigation, as noted on my c.v.

5.      My expertise in complex litigation has been recognized by judges, scholars, and lawyers in private practice throughout the country for whom I regularly provide consulting advice and educational training programs.  Since 2010, the Judicial Panel on Multidistrict Litigation (JPML) has annually invited me to give a presentation on the current state of class action law at its MDL Transferee Judges Conference, and I have often spoken on the topic of attorney's fees to the MDL judges.  The Federal Judicial Center invited me to participate as a panelist (on the topic of class action settlement approval) at its March 2018 judicial workshop celebrating the 50th anniversary of the JPML, *Managing Multidistrict and Other Complex Litigation Workshop*.  The Ninth Circuit invited me to moderate a panel on class action law at the 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop.  The American Law Institute selected me to serve as an Adviser on a Restatement-like project developing the *Principles of the Law of Aggregate Litigation*.  In 2007, I was the co-chair of the Class Action Subcommittee of the Mass Torts Committee of the ABA's Litigation Section.  I am on the Advisory Board of the publication *Class Action Law Monitor*.  I have often presented continuing legal education programs on class action law at law firms and conferences.

6.      My teaching focuses on procedure and complex litigation.  I regularly teach the basic civil procedure course to first-year law students, and I have taught a variety of advanced courses on complex litigation, remedies, and federal litigation.  I have received honors for my

5

teaching activities, including: the Albert M. Sacks-Paul A. Freund Award for Teaching Excellence, as the best teacher at Harvard Law School during the 2011–2012 school year; the Rutter Award for Excellence in Teaching, as the best teacher at UCLA School of Law during the 2001–2002 school year; and the John Bingham Hurlbut Award for Excellence in Teaching, as the best teacher at Stanford Law School during the 1996–1997 school year.

7.    My academic work on class action law follows a significant career as a litigator. For nearly eight years, I worked as a staff attorney and project director at the national office of the American Civil Liberties Union (ACLU) in New York City.  In those capacities, I litigated dozens of cases on behalf of plaintiffs pursuing civil rights matters in state and federal courts throughout the United States.  I also oversaw and coordinated hundreds of additional cases being litigated by ACLU affiliates and cooperating attorneys in courts around the country.  I therefore have personally initiated and pursued complex litigation, including class actions.

8.    I have been retained as an expert witness in about 100 cases and as an expert consultant in about another 30 or so cases.  These cases have been in state and federal courts throughout the United States, most have been class actions and other complex matters, and many have been MDL proceedings.  I have been retained to testify as an expert witness on issues ranging from the propriety of class certification, to the reasonableness of settlements and fees, to the preclusive effect of class action judgments.  I have been retained by counsel for plaintiffs, for defendants, and for objectors.

9.    Courts have appointed me to serve as an expert in complex fee matters:

- In 2015, the United States Court of Appeals for the Second Circuit appointed me to argue for affirmance of a district court order that significantly reduced class counsel's

6

fee request in a large, complex securities class action, a task I completed successfully when the Circuit summarily affirmed the decision on appeal.[7]

- In 2017, the United States District Court for the Eastern District of Pennsylvania appointed me to serve as an expert witness on certain attorney's fees issues in the National Football League (NFL) Players' Concussion Injury Litigation (MDL 2323). In my final report to the Court, I recommended, *inter alia*, that the Court should cap individual retainer agreements at 22%, a recommendation that the Court adopted.[8]

- In 2018, the United States District Court for the Northern District of Ohio appointed me to serve as an expert consultant to the Court on complex class action and common benefit fees issues in the National Prescription Opiate Litigation (MDL 2804).

- The United States District Courts for the Southern District of New York and the Eastern District of Pennsylvania have both appointed me to serve as a mediator to resolve complex matters in class action cases, including fee issues.

10.     One of the functions I can provide as an expert witness is to present empirical evidence of class action practices from other cases.  As part of my scholarly work on class action law, I have created and maintain a database containing data on over 1,000 class action lawsuits. Specifically, my research assistants coded the data from case reports appearing in the journal, *Class Action Attorney Fee Digest* (CAAFD).  CAAFD was published monthly from January 2007 to September 2011 for a total of 57 issues, and reported on 1,187 unique court-approved state and federal class actions.  For each case, a CAAFD case abstract describes the awarding court and judge, the subject matter of the dispute, the settlement/judgment benefits, the attorney fee and expense awards (both as requested by plaintiff's counsel and as approved by the court), the case filing and attorney fee award dates, any named plaintiff awards, and miscellaneous data on case

---

[7] *See In re IndyMac Mortg.-Backed Sec. Litig.*, 94 F. Supp. 3d 517 (S.D.N.Y. 2015), *aff'd sub nom. DeValerio v. Olinski*, 673 F. App'x 87 (2d Cir. 2016).

[8] *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at *1 (E.D. Pa. Apr. 5, 2018) ("I adopt the conclusions of Professor Rubenstein and order that IRPAs' fees be capped at 22% plus reasonable costs.").

and settlement/judgment administration. In creating the database from the CAAFD reports, my research team cross-checked the accuracy of a subset of federal reports against source documents from PACER; we found only one error – an understatement of the settlement benefit value by 2% – in 726 data fields, or fewer than 0.15% of fields. I am therefore confident about the accuracy of the data in my database and use it regularly as a source for my scholarship and expert witness work.

11.  Courts have often relied on my expert witness testimony in fee matters.[9]

12.  I have been retained in this case to provide an opinion concerning the issues set forth in the first paragraph, above. I am being compensated for providing this expert opinion. I

---

[9] *See, e.g.*, *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *Benson v. DoubleDown Interactive, LLC*, No. 18-CV-0525-RSL, 2023 WL 3761929, at *2 (W.D. Wash. June 1, 2023); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2022 WL 18108387, at *7 (E.D. Va. Nov. 8, 2022); *Reed v. Light & Wonder, Inc.*, No. 18-CV-565-RSL, 2022 WL 3348217, at *1-2 (W.D. Wash. Aug. 12, 2022); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK), 2021 WL 2453972 (S.D.N.Y. June 15, 2021); *In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *10-*12 (N.D. Cal. Feb. 26, 2021); *Kater v. Churchill Downs Inc.*, No. 15-CV-00612-RSL, 2021 WL 511203, at *1-*2 (W.D. Wash. Feb. 11, 2021); *Wilson v. Playtika Ltd.*, No. 18-CV-5277-RSL, 2021 WL 512230, at *1-*2 (W.D. Wash. Feb. 11, 2021); *Wilson v. Huuuge, Inc.*, No. 18-CV-5276-RSL, 2021 WL 512229, at *1-*2 (W.D. Wash. Feb. 11, 2021); *Amador v. Baca*, No. 210CV01649SVWJEM, 2020 WL 5628938, at *13 (C.D. Cal. Aug. 11, 2020); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018); *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 6305785, at *5 (M.D.N.C. Dec. 3, 2018); *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at *4 (E.D. Pa. Apr. 5, 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *3 (N.D. Cal. July 21, 2017); *Aranda v. Caribbean Cruise Line, Inc.*, No. 1:12-cv-04069, 2017 WL 1369741, at *5 (N.D. Ill. Apr. 10, 2017), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. 13-CV-02529 MMM, 2015 WL 12732462, at *44 (C.D. Cal. May 29, 2015); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2015 WL 2165341, at *5 (D. Kan. May 8, 2015); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010); *Commonwealth Care All v. Astrazeneca Pharm. L.P.*, No. CIV.A. 05-0269 BLS 2, 2013 WL 6268236, at *2 (Mass. Super. Aug. 5, 2013).

was paid a flat fee in advance of rendering my opinion, so my compensation is in no way contingent upon the content of my opinion.

13.     In analyzing these issues, I have discussed the case with the counsel who retained me.  I have also reviewed documents from this litigation, a list of which is attached as Exhibit B. At Class Counsel's request, I also read a draft of Professor Brian Fitzpatrick's expert declaration in this matter.  Finally, I have reviewed the case law and scholarship relevant to the issues herein.

\* \* \*

14.     The Ninth Circuit has articulated the legal standard for a fee petition as follows:

> Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. . . . The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.[10]

This Declaration will focus solely on the lodestar cross-check, as Class Counsel have retained another expert – Professor Fitzpatrick – to opine on the reasonableness of Class Counsel's requested percentage.   Applying Ninth Circuit fees law, the following sections consider the reasonableness of Class Counsel's proposed rates (Part II, *infra*); their hours (Part III, *infra*); and their proposed multiplier, in quantitative and qualitative (risks and results) terms (Part IV, *infra*).

---

[10] *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

## II.
### EVIDENCE SUPPORTING THE REASONABLENESS OF THE
### HOURLY RATES CLASS COUNSEL EMPLOY

15.     The *Manual for Complex Litigation* states:

> What constitutes a reasonable hourly rate varies according to geographic area and the attorney's experience, reputation, practice, qualifications, and customary charge. The rate should reflect what the attorney would normally command in the relevant marketplace.[11]

Applying these principles, the following subsections analyze the rates Class Counsel propose for

their (1) partners and partnership-track attorneys, (2) staff attorneys, and (3) paralegals, and then

(4) a concluding subsection analyzes the blended, or average, hourly rate across the entire lodestar.

### A.
### *Partner and Partnership-Track Hourly Rates*

16.     For purposes of this Declaration, I directed my research assistants to create a

database of hourly rates recently approved by judges in the Northern District of California

overseeing class action fee petitions, so as to have an empirical basis by which to assess the

reasonableness of Class Counsel's proposed rates. Using the Federal Judicial Center's database

listing all civil cases terminated in a given year,[12] my research assistants identified (a) all class

actions resulting in damages (b) terminated in the Northern District in 2022 with (c) judicially-

approved settlements. They then reviewed the order granting approval of class counsel's fees to

see if the court had explicitly approved hourly billing rates and whether those approved rates were

---

[11] *Manual for Complex Litigation (Fourth)*, § 14.122 (2004) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("'[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community . . . ."); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).

[12] *Civil Cases Filed, Terminated, and Pending from SY 1988 to Present*, Federal Judicial Center, https://www.fjc.gov/research/idb/civil-cases-filed-terminated-and-pending-sy-1988-present.

attributable to specific billers identified in the underlying fee petition.  This process yielded 33 total cases, listed in Exhibit C; no case meeting these criteria was excluded.  My team then reviewed Class Counsel's lodestar submissions in each of the 33 cases and extracted 344 individual hourly rates of partnership-track attorneys (partner, associate) to employ in our analysis.[13]  We adjusted all these rates to 2023 dollars using the U.S. Bureau of Labor Statistics' Producer Price Index-Office of Lawyers (PPI-OL) index.[14]  My research assistants also tracked down the year of first admission to the bar for each of the 344 identified attorneys.[15]

17.    Once each timekeeper's experience level had been identified and all of the dollar amounts had been set to 2023 levels, we plotted the rates, with the x-axis representing the number of years since the timekeeper's admission to the bar and the y-axis representing the timekeeper's hourly rate.  The resulting scatter plot, set forth below in Graph 1, provides a snapshot of judicially-approved hourly rates in 2022 Northern District of California class actions, with the blue line sketching the trend of rates across experience levels.

---

[13] This dataset does not include staff attorneys or "counsel" attorneys.  The reasonableness of Class Counsel's staff attorneys and "counsel" attorneys are assessed separately in ¶¶ 22-23, *infra*.

[14] This price database can be accessed here: https://www.bls.gov/ppi/databases/.  To specifically access the PPI-OL, first click on "One Screen" in the "Industry Data" row below "PPI Databases." Then select "541110 Offices of lawyers" as the industry and "541110541110 Offices of lawyers" as the product.

[15] The 33 cases actually yielded rates for 355 partnership-track attorneys, but we discarded 11 of the data points because we were not able to find the year of bar admission for those attorneys.

**GRAPH 1**
**JUDICIALLY-APPROVED HOURLY RATES IN 2022 N.D. CAL. CLASS ACTIONS**



18.     I next directed my research assistants to plot, in the same manner, the rates employed by Class Counsel in their lodestar submission.  Specifically, for each of the 39 partnership-track lawyers in their lodestar,[16] Class Counsel supplied us with the name, year of first admission to the bar, and proposed hourly rate.[17]  We plotted these rates onto the same type of x-y axis that we had employed for the Northern District of California comparison set.  The resulting scatter plot, set forth below in Graph 2, provides a snapshot of Class Counsel's billing rates, with the red line sketching the trend of Class Counsel's rates across experience levels.

---

[16] One firm labeled its staff as "partner" or "attorney"; our analysis assumed the latter were on a partnership track, an assumption Class Counsel confirmed.

[17] Class Counsel utilize their rates as of 2023 for all time spent on the litigation.  This approach comports with Supreme Court precedent authorizing the use of current rates as "an appropriate adjustment for delay in payment."  *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989).

**GRAPH 2**
**CLASS COUNSEL'S PROPOSED HOURLY RATES**



19.    Finally, we aggregated Graphs 1 and 2 onto a single scatterplot, Graph 3, with Northern District judicially approved rates in blue and Class Counsel's proposed rates in red.

**GRAPH 3**
**CLASS COUNSEL'S PROPOSED HOURLY RATES COMPARED TO JUDICIALLY APPROVED HOURLY RATES IN 2022 N.D. CAL. CLASS ACTIONS**



20.     As is visually evident in Graph 3, the two trend lines almost precisely track one another.  When the differences between the trend lines are compared,[18] Class Counsel's trend line is on average 3.8% above the trend line for rates approved in the Northern District.  That Class Counsel are charging rates at the norm is, if anything, surprising and impressive.  As evidenced by the Court's selection of them to lead this MDL, these firms are among the leading class action law firms in the United States, and the lawyers who worked on this case possess years of experience, have track records of success, and can be counted among the elite of the profession generally and this area of law specifically.  By contrast, the 2022 comparison set encompasses smaller class actions (only two cases exceeded $100 million in recovery) litigated by more local attorneys specializing in discrete areas (particularly wage-and-hour).

21.     In sum, this empirical evidence demonstrates that the rates Class Counsel employ in their lodestar submission are in line with rates approved by Northern District judges overseeing class actions that terminated in 2022.

**B.**
*Staff Attorney Rates*

22.     Separately from the comparison of partnership-track attorneys, we compared Class Counsel's proposed rates for staff attorneys to those charged by other firms for such attorneys.[19]

---

[18] We compared the distance between the two trend lines at the 39 points for which Class Counsel have a timekeeper and took the average of those 39 comparisons.

[19] While firms all have specific nomenclature for various types of attorneys, the term "staff attorney" generally applies to lawyers (a) on the firm's payroll; (b) typically paid full benefits like any other lawyer on payroll; and (c) typically housed at the firm (with the firm therefore bearing some overhead expenses).  These characteristics distinguish staff attorneys from contract attorneys (sometimes hired and paid through agencies, typically not provided benefits, and often housed off-site); at the same time, staff attorneys differ from firm associates in that they are generally not on a partnership track.  Given the central characteristics defining staff attorneys, most courts have

14

We undertook this analysis separately because staff attorney rates tend not to fluctuate with years of admission to the bar in the same manner that partnership-track attorney rates do, perhaps because their careers are less linear in nature.[20]   Accordingly, we consider the reasonableness of staff attorney rates solely on a case-by-case basis, looking at the weighted average hourly rate for staff attorneys (adjusted to 2023 dollars) in each of the four cases in our N.D. Cal. 2022 comparison set that had such attorneys in their lodestar submissions.[21]   The average rate (in 2023 dollars) in the four comparison cases – consisting of 15 timekeepers – ranged from a low of $438 to a high of $636, with a median rate of $453.  This is reflected in Graph 4, below, with the weighted average hourly rate in this case ($475) highlighted in red.

---

permitted class counsel to include their time in the lodestar cross-check calculation, as opposed to shifting these costs to the expense ledger.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *15 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("Because the staff attorneys have lower billing rates . . . this results in a lower lodestar, which factors into the Court's cross-check."); *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 377–78 (S.D.N.Y. 2013) (including staff attorneys in lodestar calculation).

In this case, Class Counsel confirmed that the timekeepers they label as "Staff Associate," "Special Projects Associate," "Senior Projects Associate," "Projects Associate," and "Discovery Analyst" fit the definition of "staff attorney" in the prior paragraph, and we accordingly classified them as such in this analysis.

[20] For example, in one case from our comparison set, two staff attorneys billed at $415 per hour, despite one having 11 years of experience and the other having 19 years of experience.  *See Vianu et al. v. AT&T Mobility LLC*, No. 3:19-cv-03602 (N.D. Cal. Aug. 15, 2022), ECF No. 153-1 at 22.

[21] We calculated the average hourly rate by dividing the total dollar amount billed for staff attorneys in a case by the total number of hours billed for staff attorneys.

**GRAPH 4**
**CLASS COUNSEL'S AVERAGE STAFF ATTORNEY RATE COMPARED TO**
**AVERAGE STAFF ATTORNEY RATES IN 2022 N.D. CAL. CLASS ACTIONS**



23.     As is visually evident, the staff attorney rates proposed by Class Counsel are in line with rates judges approved in other Northern District class actions terminated in 2022.  Class Counsel's average rate for staff attorneys ($475) is 5.0% above the median ($453) and 4.0% below the mean ($495) of the four cases in the comparison group.[22]

### C.
### *Paralegal Rates*

24.     My research assistants also collected information on the rates charged for paralegal work in the Northern District dataset described above.  The weighted average hourly rates for

---

[22] In this case, Class Counsel denominated a total of three lawyers as "counsel" in their lodestar submission.  On the assumption that "counsel," like staff attorneys, generally refer to lawyers not presently on a linear partnership track, we compared Class Counsel's proposed rates for its three "counsel" against the rates of 24 lawyers identified as "counsel" appearing in 12 cases in the comparison set.  Class Counsel's weighted average hourly rate for "counsel" ($813) was 2.7% higher than the median ($792) and 5.1% higher than the mean ($773).  Those differences are immaterial as Class Counsel's three "counsel" generated only about 3% of their total lodestar, and adjusting their lodestar to the average rate for "counsel" in the comparison set would accordingly have no impact on the lodestar multiplier.

paralegals in the comparison set (again calculated by dividing the total dollar amount billed for paralegals in a case by the total number of hours billed for paralegals, and again adjusted to 2023 dollars) ranged from a low of $160 to a high of $430, with the median case having a rate of $292. This is reflected in Graph 5, below, with the weighted average hourly rate in this case ($363) highlighted in red.

**GRAPH 5**
**CLASS COUNSEL'S AVERAGE PARALEGAL RATE COMPARED TO AVERAGE PARALEGAL RATES IN 2022 N.D. CAL. CLASS ACTIONS**



25.     As Graph 5 demonstrates, Class Counsel's average rate for paralegal work ($363) is at the higher end of the range of paralegal rates approved by Northern District judges in 2022 – it exceeds the rate in the median case ($292) by 24.4% and the average across all of the comparison cases ($298) by 21.7%.  However, if we exclude the less complex wage-and-hour cases from the comparison set, Class Counsel's average paralegal rate draws far closer to the norm, exceeding the rate in the median case ($354) by 2.3%, and the average rate across all of the cases ($328) by 10.5%.  Perhaps most importantly, Class Counsel's above-average paralegal rates are immaterial:

if Class Counsel billed all paralegal time at the comparison set's $298 mean rates, their lodestar would drop by 1.1%, and their lodestar multiplier would increase from 1.99 to 2.01.

## D.
### *Total Blended Hourly Rate*

26.     In addition to assessing the hourly rates of each lawyer, we also reviewed Class Counsel's blended hourly rate for the entire case.  The blended hourly rate is calculated by taking the total lodestar and dividing it by the total number of hours worked by all of the timekeepers (partners, counsel, associates, staff attorneys, and paralegals) in the case.  The resulting number provides the average billing rate of an hour expended on the case.

27.     Graph 6, below, compares Class Counsel's blended rate to the blended rates in the 33 comparison cases.  The blended rate in the comparison cases ranged from a low of $285 to a high of $974, with the median case having a rate of $744.  This is reflected in Graph 6, below, with the blended rate in this case ($609) highlighted in red.

18

**GRAPH 6**
**CLASS COUNSEL'S BLENDED HOURLY RATE COMPARED TO**
**BLENDED HOURLY RATES IN 2022 N.D. CAL. CLASS ACTIONS**



28.     As evident in Graph 6, Class Counsel's $609 rate falls 18.2% below the median case's blended rate ($744) and 16.5% below the average of all the comparison cases ($728).  This finding not only reflects the reasonableness of Class Counsel's proposed rates, but it also demonstrates that work was appropriately delegated to more cost-effective labor when appropriate.

\* \* \*

29.     In sum, empirical evidence supports the conclusion that Class Counsel's proposed hourly rates for partnership-track attorneys and staff attorneys are consistent with rates approved by courts in this District in class actions terminated in 2022; their paralegals rates are higher, but immaterially so, and their total blended hourly rate is well below average.  The Court could find that these are very impressive metrics for the level of lawyering required for a case of this magnitude, duration, and complexity.

19

## III.
## EVIDENCE SUPPORTING THE REASONABLENESS OF THE
## TOTAL HOURS CLASS COUNSEL BILL

30.     Counsel are entitled to be compensated for reasonable time spent at all points in the litigation.  Courts are cautioned to avoid engaging in an "*ex post facto* determination of whether attorney hours were necessary to the relief obtained."[23]  The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."[24]

31.     Class Counsel did not provide me – nor did I ask to see – a breakdown of each hour expended, as such a fine-grained lodestar audit is not required for purposes of the lodestar cross-check.[25]  That said, Class Counsel did inform me that they commissioned a lodestar audit to be undertaken by another expert.  Given that a lodestar audit has been performed elsewhere in this case, even though such a detailed review is not necessary for cross-check purposes, my own review is more general:  I examine the hours that Class Counsel billed in two ways: *first*, by a quantitative comparison to the hours expended in similarly large cases (¶¶ 32-33, *infra*); and *second*, by a qualitative analysis of the tasks undertaken (¶ 34, *infra*).

---

[23] *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

[24] *Id.*; *accord League of Residential Neighborhood Advocates v. City of Los Angeles,* 633 F. Supp. 2d 1119, 1133 (C.D. Cal. 2009) (noting that litigant's brief quoted language from *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992), and approving time expended).

[25] *See In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation,* 768 F. App'x 651, 654 (9th Cir. 2019) ("[When conducting a lodestar cross-check,] the district court may rely on attorney fee summaries rather than actual billing records.") (citation omitted); *Hefler*, 2018 WL 6619983, at *14 (noting, in context of lodestar crosscheck, that "trial courts need not, and indeed should not, become green-eyeshade accountants . . . [r]ather, the Court seeks to do rough justice, not to achieve auditing perfection") (cleaned up).

32.  *Quantitative Assessment.*  Only two cases in our 2022 Northern District dataset described above exceeded $100 million in recovery; on the assumption that there's a positive relationship between time and reward, the cases in that dataset do not therefore helpfully address the question of how many hours it might take to achieve a $725 million recovery.  Accordingly, I directed my research assistants to gather data from our own database (*see* ¶ 10, *supra*) of the hours expended in cases with settlements of comparable size.  Our dataset contained seven cases with settlement sizes ranging from $525 million to $925 million (in 2023 dollars), all of which we use in our analysis.[26]  The hours in these cases ranged from 39,347 to 677,000, depicted in Graph 7 below.

---

[26] In undertaking a similar analysis of another settlement in the Northern District recently – *In re Twitter Inc. Securities Litigation*, No. 4:16-cv-05314-JST (SK) (N.D. Cal. Oct. 13, 2022), ECF No. 662-7 at 31 – I had included another case, with very few total hours, on this list.  Upon closer review of that case in preparation of this Declaration, we learned that it was a claims-made settlement and the approximately $600 million value attributed to it was the parties' report of its potential total, not the amount in a true common fund.  I therefore chose to exclude it in this analysis.  Were we to include that case here, Class Counsel's total would still fall amidst the pack of the comparably sized settlements, having the sixth highest number of hours, with the median of the other eight cases falling between the fourth and fifth cases; and Class Counsel's total would be just 10% below the mean.

**GRAPH 7**
**CLASS COUNSEL'S TOTAL HOURS COMPARED TO**
**TOTAL HOURS IN CLASS SETTLEMENTS OF SIMILAR SIZE**



33.     As seen in Graph 7, Class Counsel's total hours (represented by the red bar) fall amidst the pack of the comparably sized settlements, just one step above the median.  Class Counsel's lodestar encompasses 149,929 hours, which is 24% below the average of 198,038 hours across the seven comparison cases.[27]  Class Counsel's total hours are accordingly in the normal

---

[27] Class Counsel's total hours encompass approximately 2,600 hours that they billed to their adversary in their sanctions motion, Joint Declaration of Derek K. Loeser and Lesley E. Weaver Regarding Fees and Costs Incurred Due to Sanctionable Misconduct, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Nov. 18, 2022), ECF No. 1080 at 11-14.  Given the Court's order granting in part the motion for sanctions, *see* Sanctions Order, *supra* note 29, Class Counsel have been compensated for some of this time. However, in making the sanctions award, this Court noted that the "only way to award sanctions here is with a rough-but-conservative estimate," *id.* at 51, which means that extracting a precise number of hours from the lodestar cross-check data in this petition – on the grounds that they have already been compensated – would be, at best, an inexact science.  Moreover, since even the full 2,600 hours billed in the sanctions motion amount to less than 2% of the 149,929 hours in the lodestar cross-check submission, extracting some portion of the former from the latter would have such an immaterial an impact on the empirical conclusions described in the text as to not be worth the exercise.

range for a litigation of this size[28] and, to the extent the total falls above the median case in my database, much of the excess is likely attributable (in whole or part) to what this Court characterized in its sanctions decision as the "sustained, concerted, bad-faith effort [by Facebook and Gibson Dunn] to throw obstacle after obstacle in front of the plaintiffs."[29]

34.    *Qualitative Assessment.*   Class Counsel moved for appointment as lead counsel in this MDL on June 21, 2018, exactly five years before the deadline for the present fee petition. Over those five years, Class Counsel have cumulatively logged 149,929 hours of time, or the equivalent of about 14 lawyers working close to full time[30] on the case throughout its duration. At first blush, 14 lawyers working full time for five years seems like a large number, but a closer

---

[28] Even excluding the high outlier case at the far right of the graph, the average of the remaining comparison cases is 118,211, with Class Counsel's hours sitting roughly the same amount above that average (27%) as it sits below that average (24%) with the outlier case included.

[29] Order Granting in Part Plaintiffs' Motion for Sanctions, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Feb. 9, 2023), ECF No. 1104 at 2 [hereinafter "Sanctions Order"]. While the total hours for which Class Counsel sought sanctions is relatively low, the Defendant's litigation tactics required an enormous commitment of hours by Class Counsel separate and apart from the few that fell into the sanctionable category. *See* Plaintiffs' Corrected Notice of Motion, Motion, and Memorandum in Support of Motion for Sanctions, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Sept. 15, 2022), ECF No. 1050-1 at 9-10 ("Plaintiffs are not seeking to recover all of the fees and costs that they incurred as a result of the discovery abuse. Plaintiffs are also not seeking to recover all of the fees incurred through each discrete course of misconduct. Rather, Plaintiffs focus on particular periods when the misconduct prejudiced Plaintiffs the most.").

[30] The total number of hours (149,929) divided by 5 years (29,986 hours/year) and 14 lawyers equates to about 2,142 hours/year for each lawyer. Roughly speaking, 2,200 hours/year may be considered as one lawyer working "full time." The National Association for Law Placement (NALP)'s most recent data available online, published in May 2016, reflect the hours billed by firms in 2013 and 2014. *Update on Associate Hours Worked*, NALP (May 2016), https://www.nalp.org/0516research. Those data show that, for lawyers at the largest firms (700+ lawyers), about 2/3 worked more than 2,200 hours/year, and the average number of hours worked in 2014 was 2,199. These data are a good referent in that Class Counsel litigated this case against a large law firm similar to those included in the NALP study.

examination of the work Class Counsel have undertaken in litigating this case – particularly the extraordinarily intensive discovery process – provides context that enables the Court to find that this number of hours is reasonable.  Given the uniquely protracted and challenging discovery process in this case, it is helpful to begin a qualitative analysis by reviewing that process and then to step back and review Class Counsel's work across the full arc of the litigation.

*The Scope of Discovery*

As to the scope of discovery, Class Counsel inform me that they:

- collected, reviewed, and produced more than 21,000 documents from Named Plaintiffs;

- provided more than 1,800 pages of responses to Facebook's interrogatories, requests for production, and requests for admission;

- procured more than 1.3 million documents from Facebook (comprising many millions of pages and structured data tables, some containing many thousands or more of lines);

- procured more than 1,300 pages of written discovery responses from Facebook;

- procured more than 430,000 documents from third parties in response to document subpoenas;

- prepared for and defended the depositions of the eight Named Plaintiffs (now Settlement Class Representatives), resulting in more than 49 hours and more than 2,000 transcribed pages of on-the-record testimony;

- prepared for and took the depositions of 34 current or former Facebook employees, 13 witnesses designated by Facebook pursuant to Rule 30(b)(6), and an additional witness designated by PricewaterhouseCoopers pursuant to Rule 30(b)(6), resulting in more than 300 hours and more than 13,200 transcribed pages of on-the-record testimony; and

- participated in more than 100 hours of discovery mediations, preceded by the submission of more than 200 pages of written submissions to the Court-appointed discovery mediators.

*The Scope of Discovery Disputes*

As to the discovery-related disputes, Class Counsel inform me that they:

- participated in more than 100 separate meet and confer sessions with Facebook and scores more sessions with over 50 third parties that Plaintiffs subpoenaed for document production;

- filed more than 60 discovery-related motions and responded to roughly 70 discovery-related motions;

- submitted approximately 2,200 pages of filings, including nearly 300 pages of dispositive and substantive discovery briefs, accompanied by more than 20,000 pages of exhibits; and

- participated in approximately 60 hearings, comprising more than 100 hours, before this Court, then-Magistrate Judge Corley, and Special Master Garrie.

*The Results of Discovery Disputes*

Much, if not all, of the above-cited work redounded to the class's benefit as Class Counsel report that they filed 11 successful motions to compel and successfully defeated two filed by the Defendant. Specifically, Class Counsel report that they:

- successfully moved to compel production of documents related to the App Developer Investigation;

- successfully moved to compel the production of additional Named Plaintiff data;

- successfully moved to compel production of Mark Zuckerberg's personal notebooks;

- successfully moved to compel production of the custodial files of Mark Zuckerberg and Sheryl Sandberg;

- successfully moved to compel the depositions of individuals deposed in earlier, related investigations;

- successfully moved to compel the production of an internal "secret sauce" memorandum;

- successfully moved to compel the production of additional financial documents;

- successfully moved to compel Facebook to provide additional time for Rule 30(b)(6) depositions;

- successfully moved to compel additional information about the production of documents from Facebook's internal "Quip" and "Task" systems;[31]

---

[31] Class Counsel report that the order resolving this motion was entered shortly before the Court entered a stay pursuant to the Parties' agreement in principle to settle the case, but that, if the stay

- successfully opposed Facebook's motion to compel the depositions of individual plaintiffs who had withdrawn as Named Plaintiffs;

- successfully opposed Facebook's appeal of discovery orders compelling the production of documents related to the App Developer Investigation and Named Plaintiffs data; and

- submitted extensive briefing in support of sanctions against Facebook and its counsel, comprising of more than 100 pages of briefs accompanied by more than 9,000 pages of declarations and exhibits, which ultimately led the Court to condemn Facebook's and its counsel's conduct and order sanctions of nearly $1 million.[32]

*Overall Arc of Litigation*

Stepping back to review the larger arc of the entire litigation, Class Counsel's work encompassed a large series of tasks. They inform me that they:

- undertook an extensive factual investigation of allegations that, starting in 2007, Facebook had shared user data without users' authorization, with third-party applications in numerous ways, including communicating with more than 500 current and former Facebook users about their practices concerning personal information and expectations of privacy on Facebook, analyzing extensive media coverage of Facebook's potential misuse of users' data, and scouring public reports and dockets for information about Facebook's data-sharing practices;

- linked that factual investigation to novel claims by researching relevant legal precedents and their application in a new factual context under state and federal law;

- screened potential clients and secured retention of the Class Representatives and numerous other plaintiffs;

- served limited discovery regarding Facebook's relationships and interactions with Aleksandr Kogan and the ThisIsYourLife app, evaluated the responses, and drafted allegations based on them;

---

had not been entered, Facebook may have been compelled to produce additional documents based on the information they returned.

[32] Class Counsel report that they also separately moved for sanctions based on the behavior of Facebook's counsel and designee at a Rule 30(b)(6) deposition but that the motion became moot when Facebook agreed to the relief Class Counsel sought, which included monetary payment and additional time to conduct Rule 30(b)(6) depositions.

- reviewed the complaints filed by other plaintiffs whose cases were consolidated into this MDL;

- prepared and filed a consolidated amended complaint informed by their investigation, by responses to limited discovery, and by allegations in other consolidated cases, while ensuring compliance with the pleading standards of Rule 8 and Rule 12, as interpreted by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007);

- responded to Facebook's initial motion to dismiss and subsequently prepared and filed an amended consolidated complaint in response to issues identified by the Court during a more than four-and-a-half-hour-long hearing;

- successfully opposed, in substantial part, Facebook's motion to dismiss the case, including in full for claims for violations of the Video Privacy Protection Act, negligence, and gross negligence; and in part for claims of public disclosure of private facts, intrusion into private affairs, violation of the California constitutional right to privacy, deceit by concealment, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violations of the Stored Communications Act;

- successfully moved to relate nine separate actions to this litigation;

- identified and worked extensively with consulting experts who assisted with technical and damages analyses;

- engaged in numerous rounds of mediation to produce a settlement, including at least three direct settlement mediations and multiple teleconferences before achieving a settlement in principle, and at least four direct settlement mediations to address issues that remained unresolved after reaching a settlement in principle;

- helped to memorialize and document the settlement terms in a final settlement agreement, including releases of liability, class action notices, and claim forms;

- shepherded the settlement agreement through preliminary approval; and

- obtained preliminary, and are now seeking final, approval of the settlement.

35.     In sum, the range and depth of Class Counsel's efforts set forth in the prior paragraphs add important context to the number of hours they expended. Combined with the data showing that the total number of hours is in the normal range for cases of this magnitude, these empirical and qualitative assessments enable the Court to find that the total hours Class Counsel

expended achieving this landmark settlement was reasonable. That conclusion finds further support in the fact that Class Counsel report that their hours were carefully audited by an independent expert prior to submission. These factors (the *ex post* audit, the reasonableness of the total hours compared to other cases of this magnitude, and the contextual analysis), combined with the fact that this litigation was bitterly hard fought across a number of years, provide significant support for the conclusion – particularly for cross-check purposes – that Class Counsel have neither churned artificial hours nor padded their lodestar.

## IV.
### EVIDENCE SUPPORTING THE REASONABLENESS
### OF THE PROPOSED MULTIPLIER

36. Class Counsel's fee request is about 1.99 times higher than their lodestar, as Class Counsel seek fees of $181,250,000 against a lodestar of $91,234,005.50.[33]

37. Class action attorneys, like all contingent fee lawyers, are generally entitled to a fee greater than their lodestar. Class action attorneys serve a critical social function in pursuing legal claims worth less than the cost of litigation (so-called "negative value claims"),[34] a function captured by the title "private attorneys general."[35] Fees are what incentivize an attorney to set up an entire legal practice around the pursuit of such negative value claims. Yet if the contingent fee

---

[33] Class Counsel received $800,217.38 in fees from the Defendant pursuant to their sanctions motion. *See* Sanctions Order, *supra* note 29, at 52. That was a lodestar-based award with no multiplier. Thus, if that amount is deducted from what Class Counsel now seek from the class *and* from Class Counsel's total lodestar, the multiplier resulting from the new calculation ($180,449,783/$90,433,788) would be 2.00, or immateriality different.

[34] For a discussion, see William B. Rubenstein, *Why Enable Litigation: A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. Rev. 709 (2006).

[35] For a discussion, see William B. Rubenstein, *On What a "Private Attorney General" Is – And Why It Matters*, 57 Vand. L. Rev. 2129 (2004).

attorney were paid at only her hourly rate, she would have no incentive to invest her time and

money in a client's case – she would take the far less risky path of representing clients who could

presently pay her on an hourly basis, as most corporate counsel are paid.

38.     The California Supreme Court summarized this by quoting two commentators:

> A contingent fee must be higher than a fee for the same legal services paid as they
> are performed. The contingent fee compensates the lawyer not only for the legal
> services he renders but for the loan of those services. The implicit interest rate on
> such a loan is higher because the risk of default (the loss of the case, which cancels
> the debt of the client to the lawyer) is much higher than that of conventional loans.[36]

> A lawyer who both bears the risk of not being paid and provides legal services is
> not receiving the fair market value of his work if he is paid only for the second of
> these functions. If he is paid no more, competent counsel will be reluctant to accept
> fee award cases.[37]

39.     The Ninth Circuit has similarly embraced the multiplied fee, noting that:

> [C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in
> common fund cases. This mirrors the established practice in the private legal
> market of rewarding attorneys for taking the risk of nonpayment by paying them a
> premium over their normal hourly rates for winning contingency cases. In common
> fund cases, attorneys whose compensation depends on their winning the case must
> make up in compensation in the cases they win for the lack of compensation in the
> cases they lose.[38]

40.     As the lodestar cross-check has long been a part of class action fee jurisprudence,

there is significant empirical evidence showing that the average percentage fee award embodies a

---

[36] *Ketchum v. Moses*, 17 P.3d 735, 742 (Cal. 2001) (quoting Richard A. Posner, *Economic Analysis of Law* 534, 567 (4th ed. 1992)).

[37] *Id.* (quoting John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981)).

[38] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (internal quotation marks and citations omitted).

positive lodestar multiplier.  In the five studies with pertinent data, set forth in Table 1, below, the average lodestar multiplier ranged from 1.42 to 3.89.

**TABLE 1**
**EMPIRICAL DATA ON LODESTAR MULTIPLIERS IN ALL CASES**

|  | YEARS STUDIED | NUMBER OF CASES | AVERAGE MULTIPLIER |
|---|---|---|---|
| Rubenstein & Krishna[39] | 2006–2011 | 790 | 1.42 |
| Eisenberg, Miller & Germano[40] | 2009–2013 | 294 | 1.48 |
| Fitzpatrick[41] | 2006–2007 | 204 | 1.65 |
| Eisenberg & Miller[42] | 1993–2008 | 368 | 1.81 |
| Logan, Moore & Moshman[43] | 1973–2003 | 1,120 | 3.89 |

---

[39] *See Newberg and Rubenstein on Class Actions, supra* note 3, at § 15:89 (citing William B. Rubenstein et al., *Class Action Fee Awards 2006–2011: An Empirical Study*).

[40] *See* Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 965 tbl. 12 (2017) [hereinafter "Eisenberg & Miller III"].

[41] *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 833–34 (2010).  This average encompasses cases using both a percentage method with a lodestar cross-check and pure lodestar cases.

[42] *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 272 tbl.14 (2010) [hereinafter "Eisenberg & Miller II"].  This multiplier dataset excludes cases with a multiplier of 1, but appears to include cases with multipliers both below and above 1.

[43] *See* Stuart J. Logan, Beverly C. Moore & Jack Moshman, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167, 167 (2003) [hereinafter "Logan, Moore & Moshman"].  This multiplier dataset appears to include cases that utilized a percentage-of-the-fund method for calculating fees (without a lodestar cross-check), as well as those using a lodestar method and mixed methods.  *Id.* at 169 (table headings).

41.     What these data show is that across decades of class action practice, in thousands of cases throughout the United States, in the **_average_** case, the percentage-of-the-fund method yielded an award to class counsel of about 1.5 times their normal hourly rates.

42.     All of the empirical studies with pertinent data[44] also show that multipliers tend to rise as the size of the class's fund increases.[45]  Thus, in Table 2, below, I present the data on the average lodestar multiplier in cases with larger common funds.[46]  The average multiplier in these larger-fund cases across the four studies is 3.20 (the average of the four numbers listed in the last column below), although, as the dollar figures in the second column show, the largest funds cases in the empirical studies are generally far more modest in size than this one.

---

[44] Professor Fitzpatrick's study, cited in Table 1, does not sort multiplier data by fund size.

[45] *See also In re Facebook Biometric Info. Priv. Litig.,* No. 21-15553, 2022 WL 822923, at *1 (9th Cir. Mar. 17, 2022) (noting that "[l]odestar multipliers tend to increase as the size of the class's fund increases").

[46] In each of the four studies cited, the authors investigated scaling impacts by splitting their data into 10 or 11 tranches with escalating common fund sizes.  Table 2 reports the results of the final tranche in each study; that is, the tranche with the highest settlement sizes in that study's dataset.

31

**TABLE 2**
**EMPIRICAL DATA ON MULTIPLIERS IN LARGER FUND CASES**

| | DEFINITION OF TRANCHE | CASES IN TRANCHE | AVERAGE MULTIPLIER |
|---|---|---|---|
| Eisenberg, Miller & Germano[47] | $67.5 million+ | 35 | 2.72 |
| Eisenberg & Miller[48] | $175.5 million+ | 40 | 3.18 |
| Rubenstein & Krishna[49] | $44.6 million+ | 89 | 2.39 |
| Logan, Moore & Moshman[50] | $100 million+ | 64 | 4.50 |

43.     The requested multiplier of 1.99 is therefore consistent with the average multiplier for all cases (1.42–3.89), and lower than the average multiplier for cases with larger settlement funds (2.39–4.50).[51]

_____

[47] *See* Eisenberg & Miller III, *supra* note 40, at 967 tbl.13.

[48] *See* Eisenberg & Miller II, *supra* note 42, at 274 tbl.15.

[49] *See* 5 *Newberg and Rubenstein on Class Actions*, *supra* note 3, at § 15:89 (citing William B. Rubenstein et al., *Class Action Fee Awards 2006–2011: An Empirical Study*).

[50] *See* Logan, Moore & Moshman, *supra* note 43, at 167.

[51] For example, in another recent large Facebook settlement in this District – the $650 million *Facebook Biometrics* settlement – Judge Donato approved a fee constituting a lower percentage (in the 15%-18% range) than sought here, but it embodied a multiplier of approximately 4.71. *See In re Facebook Biometric,* 2022 WL 822923, at *1 (affirming award).  In a declaration I prepared in support of class counsel's fee petition in that case, I noted that the 5-level multiplier class counsel sought there was "higher than the average multiplier in cases with similar fund sizes," though "not a complete outlier," and I appended an exhibit listing 67 cases with multipliers above 4.  Expert Declaration of Professor William B. Rubenstein, *In re: Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747-JD (N.D. Cal. Oct. 15, 2020), ECF No. 499-3 at ¶ 49 & Ex. C; *see also In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (noting that "Professor Rubenstein forthrightly acknowledges that 'the multiplier sought here is higher than the average multiplier in cases with similar fund sizes'" and approving multiplier of 4.71 as "reasonable in the circumstances here").  Here, although Class Counsel seek the Ninth Circuit benchmark 25% fee, that percentage constitutes a far more modest 2.0 multiple of their

44.    As courts have approved fee awards embodying multipliers in the 2 range sought here in appropriate circumstances, the sole question is whether Counsel's work in *this* case justifies this multiplier.  The Ninth Circuit offers several reasonableness factors to consider in making this assessment, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."[52]  In the following paragraphs, I sort these factors into two categories – risks and results – and consider each in turn.

45.    Ten independent factors demonstrate the riskiness of this case:[53]

- **Non-piggyback case.**    Many class actions follow on the heels of government enforcement actions, such as securities class actions that follow SEC enforcement actions or antitrust cases that follow Department of Justice actions.  Class counsel have a lower risk in such cases as their investigative costs may be lower; as they may be able to employ non-mutual offensive issue preclusion to establish liability without litigation;[54] and/or as the defendant has a natural incentive to settle with the government, thereby easing the road to settlement with the class.  In this case, an earlier Federal Trade Commission (FTC) enforcement action laid the groundwork for some of the allegations in the complaint,[55] but the FTC's subsequent new enforcement action, in light of the Cambridge Analytica scandal, is evidence that the prior consent decree had failed and new improprieties were at issue; moreover, the renewed FTC action appears to have unfolded in real time on a parallel track with this case,[56] not with this

---

lodestar, which, as noted in the text, is below the average in all the empirical studies of multipliers in large fund cases.

[52] *In re Bluetooth Headset*, 654 F.3d at 942 (citation omitted).

[53]  The point is not to look at Class Counsel's risks *ex post*, but rather to demonstrate the strength of the achievement compared to the risks *ex ante*.

[54] *See, e.g.*, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

[55] *See* First Amended Consolidated Complaint, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Feb. 22, 2019), ECF No. 257 at ¶¶ 672-690.

[56] *See, e.g.*, Pretrial Order No. 20:  Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Sept. 9, 2019), ECF No. 298 at 26 n.13 (noting "a pending case" in which the FTC had proposed a civil penalty against, and consent decree with, Facebook and explaining differences between that case in this).

case piggybacking on it. That synergy may have assisted the Plaintiffs in this case to some extent. But the allegations they proffer in their complaint so exceeded any enforcement by the FTC that their risks remain substantial and real.[57] Moreover, the First Amended Consolidated Complaint filed in this MDL similarly exceeded any of the bare-bones complaints that led up to the JPML's creation of this MDL, making apparent that Class Counsel independently had to fully investigate, theorize, and execute the case more or less from scratch, as described in greater depth in the prior section.

- *Novelty.* Many class actions are pursued by lawyers who specialize in particular areas (securities, antitrust, consumer, etc.) and can economize their practices and lower their risks by repeating efforts from one case to the next. This case shares that dynamic to a limited extent, as it is a data privacy case and, in applying to lead the MDL, the lawyers selected as Class Counsel each noted their expertise in this area.[58] However, data privacy cases arising out of social media networks like Facebook are still a relatively new area of law and the particular allegations at issue in this case were far more *sui generis* than run-of-the-mill. Unlike a repeat failure-to-pay-overtime employment case or failure-to-disclose-material-information securities case, almost nothing in the 424-page amended consolidated complaint in this case could have been recycled from past cases. The novelty significantly increased Class Counsel's risk.

- *Complexity.* All class action cases are typically more complex than the average contingent fee case – that is why the field is known as "complex litigation." But not many class actions involve as complicated a factual and legal setting as did this case: as just noted, the consolidated amended complaint ran to 424 pages and this Court's 71-page order considering Facebook's motion to dismiss that complaint encompassed 43 pages of legal and factual analysis. The level of intricacy and detail – not to mention the heavy lifting required in reviewing millions of pages and data tables – rendered this case far riskier than the average class action.

- *Uncertainty.* In many class actions, application of the antitrust, securities, or consumer laws is based on well-established precedent and enables counsel, at the outset, to gauge – with some certainty – the chances of success in the new case. Not so here: as just noted above, this case turned on the application of complex legal theories to an intricate factual setting, with one of the largest corporations in the world strongly opposing Class

---

[57] *See id.*

[58] *See* Letter from Lesley E. Weaver of Bleichmar Fonti & Auld re: Leadership Application, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Jun. 21, 2018), ECF No. 31; Letter from Derek W. Loeser of Keller Rohrback re: Leadership Application, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Jun. 21, 2018), ECF No. 41.

Counsel's approach to each factual and legal contention. The case embodied significant risk because the outcome was so uniquely unpredictable.[59]

- **High stakes.** Notwithstanding Meta's enormous valuation, this appears to be the largest private settlement it has ever entered. It surely did so in part because the risk of a trial loss was greater. Given the magnitude of this case, the company defended it with special interest and vigor. Indeed, the Defendant and its counsel contested nearly every aspect of this lawsuit to such an extreme that the Court found "by clear and convincing evidence that Facebook and Gibson Dunn acted in bad faith during much of the litigation . . . ."[60]

- **High expense.** Class Counsel report a lodestar and expenses above $90 million. This means that Class Counsel have loaned the class tens of millions of dollars – and risked losing every penny of it on the outcome of this case.

- **Unshared risk.** In most class action matters, particularly of this magnitude, the class is represented by a collection of plaintiffs' firms.[61] This means that the lawyers can spread the risk among the various firms. Here, two relatively small law firms undertook essentially 100% of the work for the class. For two firms of their size to shoulder the risk of nearly $100 million in lodestar is notable.

- **Well-funded Defendant**. Meta is one of the most well-capitalized corporations in the nation,[62] reaping annual revenues of $117 billion and boasting an enterprise valuation of over $600 billion.[63] While Class Counsel were funding this case themselves, with tens of millions of dollars of their own time and money, they were up against a Defendant with almost unlimited resources.

---

[59] Indeed, in a case pursued by the District of Columbia Attorney General's Office, the District's Superior Court recently entered summary judgment for Facebook on some of the issues that would have been tried here had this case not settled. *See D.C. v. Facebook, Inc.*, Civ. Action No. 2018-CA-008715 (June 1, 2023). This is further evidence of the risks Class Counsel faced here.

[60] *See* Sanctions Order, *supra* note 29, at 37.

[61] *See, e.g.*, *Manual for Complex Litigation* (Fourth), at § 10.22 (discussing presence of multiple counsel in complex litigation and advising judges on how to manage); *Judith Resnick et al., Individuals Within the Aggregate: Relationships, Representation, and Fees*, 71 N.Y.U. L. Rev. 296, 321 n.74 (1996) (describing a class action "in which some 60 firms are reportedly involved").

[62] *See* Fortune 500, *Meta Platforms*, https://fortune.com/company/facebook/fortune500/ (ranking Meta Platforms as the 27th largest company in the United States by revenue in 2022).

[63] *See* Yahoo! Finance, *Meta Platforms, Inc. (META) – Statistics*, https://finance.yahoo.com/quote/META/key-statistics (indicating trailing twelve-month revenues of $117 billion and enterprise value of $603 billion for Defendant Meta as of May 29, 2023).

- *Powerful defense firm*.  Meta exerted its financial strength by retaining high-priced counsel from Gibson, Dunn & Crutcher LLP, one of the largest,[64] most expensive, and well-respected firms in the country.[65]  Class Counsel's risk was increased significantly by the skill, depth, resources, and tenacity of the defense firm they faced.

- *Opportunity costs.*  It is fair to conclude that Class Counsel's extraordinary devotion of time and resources for about five years to this complex case prevented them from pursuing simpler, less risky, actions, many of which would have had a higher expectation of settlement and hence ease of recovery of a contingent fee, possibly a well-multiplied one.

46.    These ten points provide strong support for the conclusion that Class Counsel took large risks in litigating this case from inception to settlement.  Similar to an investor that takes large risks, these attorneys are entitled to a return on their commitment, so long as the risks they took paid off for their clients.  I will now turn to that analysis.

47.    At least six components of this case's outcome speak to the results Class Counsel obtained in this matter:

- *Significant monetary relief*.  The settlement amount – $725 million – is an extraordinary sum.  My own database has fund information on 1,017 settlements; when those settlement funds are adjusted to 2023 dollars, only 11 are larger than this, placing this settlement in the top 1%.[66]  Class Counsel report that this is the largest data privacy

---

[64] *See* Gibson Dunn, *https://www.gibsondunn.com/* (stating that the firm has "1800+ lawyers" in 20 offices worldwide); PublicLegal, *America's 350 Largest Law Firms*, https://www.ilrg.com/nlj250 (listing Gibson Dunn as 19th largest law firm in the United States by number of attorneys); ALM, *The 2022 Global 200 Ranked by Revenue*, https://www.law.com/international-edition/2022/09/20/the-2022-global-200-ranked-by-revenue/ (listing Gibson Dunn as 14th largest law firm in the world by revenue).

[65] *See* Vault, *2023 Vault Law 100*, https://legacy.vault.com/best-companies-to-work-for/law/top-100-law-firms-rankings (ranking Gibson Dunn as 10th most prestigious law firm in the United States).

[66] Without adjusting for inflation, only four settlements in my dataset are larger than $725 million, putting this settlement in the top 0.3%.

class action in U.S. history,[67] a conclusion that comports with research my students undertook.

- ***100% of class eligible for relief***.  The settlement agreement explains that the class, for settlement purposes, is defined as "all Facebook users in the United States during the Class Period," excluding only certain categories of users that have special affiliation with Meta, such as its "employees" and "officers, directors, [and] legal representatives."[68]  Any class member who meets these criteria is eligible to file a proof of claim form.

- ***Cash relief***.  Class actions sometimes end in settlements that return class members little direct compensation, occasionally nothing more concrete than coupons or recoveries going exclusively to third party *cy pres* recipients.[69]  The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "granting class members illusory nonmonetary benefits, such as discount coupons for more of defendants' products. . . ."[70]  The settlement secured in this case will deliver cash compensation directly to class members, a form of recovery that speaks highly of the case's outcome.

- ***Straightforward claims process.***  Class actions often end with settlements requiring class members to file claims. The claim-filing process may often dissuade class members from making the effort, particularly in small-claim situations. The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "imposing such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits. . . ."[71]  Here, the claim form is straightforward: class members need only fill in identifying information on a website, the manner in which they would like to receive their funds, an attestation to the veracity of the information – and then click submit.[72]

---

[67] Motion to Certify a Settlement Class and Grant Preliminary Settlement Approval, *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843-VC (N.D. Cal. Dec. 22, 2022), ECF No. 1096 at 24.

[68] Settlement Agreement, *supra* note 1, at ¶ 46.

[69] *See* 4 *Newberg and Rubenstein on Class Actions*, *supra* note 3, at §§ 12:7 to 12:13 (on nonpecuniary damages).

[70] *Manual for Complex Litigation (Fourth)* § 21.61 (2004).

[71] *Id.*

[72] In re: Facebook, Inc. Consumer Privacy User Profile Litigation – Submit Claim, https://facebookuserprivacysettlement.com/#submit-claim; *see also* Settlement Agreement, *supra* note 1, at 105-09.

- **No hint of collusion.** A critical concern in class suits is that the class's agents might be tempted to sell out the class by agreeing to a low recovery in return for a high fee. The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements that "[a]ctive judicial oversight of the settlement process [is necessary to] prevent collusion between counsel for the class and defendant and [to] minimize the potential for unfair settlements."[73] Here, there is not a hint of collusion – this case has been nothing but adversarial since its inception, encompassing about five years of hard-fought litigation, and even resulting in a successful sanctions motion against the Defendant and its counsel. There is no evidence whatsoever of Counsel selling out the class's interest.

- **Public interest.** While all class action settlements assist in the government's enforcement of the law,[74] this settlement provides an important and unique public service. Through their persistent and protracted efforts, Class Counsel have helped establish legal limits in a critical and developing field – the use of technology to invade privacy. That description sounds general, but unlike the mass of data privacy cases, the facts of this case are far more specific, targeted, and important: the sale of private data to third parties is an area of increasing national concern, and this settlement holding a major social media platform like Facebook accountable serves an important deterrence function.[75]

48. These ten risks and six results are evidence that Class Counsel, consisting of two relatively small law firms, took significant risks in investing substantial capital and labor in highly adversarial litigation without the promise of an easy return on that investment, and Class Counsel shouldered that risk superbly, prevailing at each critical juncture and generating a record-setting recovery for the class. This contextual review provides strong support for the conclusion that Class Counsel's 1.99 multiplier is reasonable.

---

[73] *Manual for Complex Litigation (Fourth)* § 22.923 (2004).

[74] *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) ("The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government.").

[75] *See Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 677–78 (7th Cir. 2013) ("A class action, like litigation in general, has a deterrent as well as a compensatory objective."); *see also* 1 *Newberg and Rubenstein on Class Actions*, *supra* note 3, at § 1:8 (discussing the deterrence function of class actions).

* * *

49.     I have testified that:

- Empirical analysis provides support for the conclusion that the hourly billing rates Class Counsel employ in their lodestar cross-check are reasonable.

- Empirical and qualitative analyses provide support for the conclusion that the total quantity of hours Class Counsel bill in their lodestar is reasonable.

- Empirical evidence supports the conclusion that the 1.99 lodestar multiplier reflected in Class Counsel's 25% fee request is below normal for settlements of this size, and a qualitative analysis of the risks Class Counsel shouldered and the results they achieved for the class provides strong support for the conclusion that such a multiplier is justified.

June 20, 2023
_____
William B. Rubenstein

# EXHIBIT A

`

# PROFESSOR WILLIAM B. RUBENSTEIN

Harvard Law School - AR323                                        (617) 496-7320
1545 Massachusetts Avenue                          rubenstein@law.harvard.edu
Cambridge, MA 02138

### ACADEMIC EMPLOYMENT

**HARVARD LAW SCHOOL, CAMBRIDGE MA**
    Bruce Bromley Professor of Law                                    2018-present
    Sidley Austin Professor of Law                                       2011-2018
    Professor of Law                                                     2007-2011
    Bruce Bromley Visiting Professor of Law                              2006-2007
    Visiting Professor of Law                              2003-2004, 2005-2006
    Lecturer in Law                                                      1990-1996
        *Courses*:    Civil Procedure; Class Action Law; Remedies
        *Awards*:    2012 Albert M. Sacks-Paul A. Freund Award for Teaching Excellence
        *Membership*:    American Law Institute; American Bar Foundation Fellow

**UCLA SCHOOL OF LAW, LOS ANGELES CA**
    Professor of Law                                                     2002-2007
    Acting Professor of Law                                              1997-2002
        *Courses*:    Civil Procedure; Complex Litigation; Remedies
        *Awards*:    2002 Rutter Award for Excellence in Teaching
                Top 20 California Lawyers Under 40, *Calif. Law Business* (2000)

**STANFORD LAW SCHOOL, STANFORD CA**
    Acting Associate Professor of Law                                    1995-1997
        *Courses*:    Civil Procedure; Federal Litigation
        *Awards*:    1997 John Bingham Hurlbut Award for Excellence in Teaching

**YALE LAW SCHOOL, NEW HAVEN CT**
    Lecturer in Law                                                    1994, 1995

**BENJAMIN N. CARDOZO SCHOOL OF LAW, NEW YORK NY**
    Visiting Professor                                                 Summer 2005

### LITIGATION-RELATED EMPLOYMENT

**AMERICAN CIVIL LIBERTIES UNION, NATIONAL OFFICE, NEW YORK NY**
    Project Director and Staff Counsel                                   1987-1995
    -Litigated impact cases in federal and state courts throughout the United States.
    -Supervised a staff of attorneys at the national office, oversaw work of ACLU attorneys
    around the country and coordinated work with private cooperating counsel nationwide.
    -Significant experience in complex litigation practice and procedural issues; appellate
    litigation; litigation coordination, planning and oversight.

**HON. STANLEY SPORKIN, U.S. DISTRICT COURT, WASHINGTON DC**
    Law Clerk                                                            1986-87

**PUBLIC CITIZEN LITIGATION GROUP, WASHINGTON DC**
    Intern                                                             Summer 1985

## EDUCATION

HARVARD LAW SCHOOL, CAMBRIDGE MA
      J.D., 1986, *magna cum laude*

YALE COLLEGE, NEW HAVEN CT
      B.A., 1982, *magna cum laude*
          Editor-in-Chief, YALE DAILY NEWS

## SELECTED COMPLEX LITIGATION EXPERIENCE

### *Professional Service and Highlighted Activities*

◊  *Author,* NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022); NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2019))

◊  *Speaker,* Judicial Panel on Multidistrict Litigation, Multidistrict Litigation (MDL) Transferee Judges Conference, Palm Beach, Florida (provided presentation to MDL judges on recent developments in class action law and related topics (2010, 2011, 2013-2019, 2023 (scheduled))

◊  *Panelist,* Federal Judicial Center, *Managing Multidistrict Litigation and Other Complex Litigation Workshop* (for federal judges) (March 15, 2018)

◊  *Amicus curiae,* authored *amicus* brief on proper approach to incentive awards in class action lawsuits in conjunction with motion for rehearing *en banc* in the United States Court of Appeals for the Eleventh Circuit (*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020))

◊  *Amicus curiae,* authored *amicus* brief in United States Supreme Court on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, 139 S. Ct. 1041 (2019))

◊  *Amicus curiae,* authored *amicus* brief in California Supreme Court on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 687 (Cal. 2016) (noting reliance on *amicus* brief))

◊  *Amicus curiae,* authored *amicus* brief in the United States Supreme Court filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◊  *Adviser,* American Law Institute, *Project on the Principles of the Law of Aggregate Litigation*, Philadelphia, Pennsylvania

◊  *Advisory Board, Class Action Law Monitor* (Strafford Publications), 2008-

◊  *Co-Chair,* ABA Litigation Section, Mass Torts Committee, Class Action Sub-Committee, 2007

◊  *Planning Committee,* American Bar Association, Annual National Institute on Class Actions Conference, 2006, 2007

◊   *"Expert's Corner"* (Monthly Column)*, Class Action Attorney Fee Digest,* 2007-2011

### *Judicial Appointments*

◊   *Co-Mediator.*   Appointed by the United States District Court for the Eastern District of Pennsylvania to help mediate a complex attorney's fees issue (*In re National Football League Players' Concussion Injury Litigation,* Civil Action No. 2:12-md-02323 (E.D. Pa. June-September 2022))

◊   *Meditator.*   Appointed by the United States District Court for the Southern District of New York to mediate a set of complex issues in civil rights class action (*Grottano v. City of New York*, Civil Action No. 15-cv-9242 (RMB) (May 2020-January 2021))

◊   *Expert consultant.*   Appointed by the United States District Court for the Northern District of Ohio, and Special Master, as an expert consultant on class certification and attorney's fees issues in complex multidistrict litigation (*National Prescription Opiate Litigation,* MDL 2804, Civil Action No. 1:17-md-2804 (N.D. Ohio Aug. 13, 2018; June 29, 2019; March 10, 2020))

◊   *Expert witness.*   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation,* 2018 WL 1658808 (E.D. Pa. April 5, 2018))

◊   *Appellate counsel.*   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016))

### *Expert Witness*

◊   Submitted expert witness declaration concerning constitutionality of proposed procedures for resolving aggregate claims within a bankruptcy proceeding (*In re PG&E Corporation and Pacific Gas and Electric Company,* Bankruptcy Case No. 19-30088 (N.D. Cal. Bankrpt. 2023))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Health Republic Insurance Company v. United States,* Civil Action No. 1:16-cv-0259C (Ct. Fed. Cl. 2023))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Benson, et al. v. DoubleDown Interactive, LLC, et al.,* Civil Action No. 2:18-cv-00525 (W.D. Wash. 2023))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fees request (*In re Twitter Inc. Securities Litigation,* Case No. 4:16-cv-05314 (N.D. Cal. October 13, 2022))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Ferrando v. Zynga Inc.,* Civil Action No. 2:22-cv-00214 (W.D. Wash. 2022))

◊   Submitted an expert witness declaration concerning reasonableness of proposed settlement in

nationwide securities class action, in light of competing litigation (*In re Lyft, Inc. Securities Litigation*, Case No. 4:19-cv-02690 (N.D. Cal. August 19, 2022))

◊    Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re: Zetia (Ezetimibe) Antitrust Litigation*, MDL No. 2836, 2:18-md-2836 (E.D. Va. July 12, 2022))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Reed v. Scientific Games Corp.,* Civil Action No. 2:18-cv-00565 (W.D. Wash. 2022))

◊    Submitted an expert witness declaration concerning reasonableness of proposed settlement in nationwide securities class action, in light of competing litigation (*In re Micro Focus International PLC Securities Litigation,* Master File No. 1:18-cv-06763 (S.D.N.Y., May 4, 2022))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Americredit Financial Services, Inc., d/b/a/ GM Financial v. Bell,* No. 15SL-AC24506-01 (Twenty-First Judicial Circuit Court, St. Louis County, Missouri, March 13, 2022))

◊    Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re: Marjory Stoneman Douglas High School Shooting FTCA Litigation*, Case No. 0:18-cv-62758 (S.D. Fla. February 7, 2022))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc*., No. 12-CV-0256 (LAK), 2021 WL 2453972(S.D.N.Y. June 15, 2021))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Kater v. Churchill Downs,* Civil Action No. 2:15-cv-00612 (W.D. Wash. 2020))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Wilson v. Playtika, LTD,* Civil Action No. 3:18-cv-05277 (W.D. Wash. 2020))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Wilson v. Huuuge,* Civil Action No. 3:18-cv-005276 (W.D. Wash. 2020))

◊    Submitted expert witness declarations and testified at fairness hearing concerning (1) reasonableness of attorney's fee request and (2) empirical data confirming robustness of class claims rate (*In re Facebook Biometric Information Privacy Litigation,* Civil Action No. 3:15-cv-03747-JD (N.D. Cal. (2020))

◊    Retained as an expert witness on issues regarding the Lead Plaintiff/Lead Counsel provisions of the Private Securities Litigation Reform Act of 1995 (PSLRA) (*In re Apple Inc. Securities Litigation.,* Civil Action No. 4:19-cv-02033-YGR (N.D. Cal. (2020))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Amador v. Baca*, Civil Action No. 2:10-cv-01649 (C.D. Cal. February 9, 2020))

◊    Submitted an expert witness declaration concerning reasonableness of class action settlement (*In re:*

*Columbia Gas Cases*, Civil Action No. 1877CV01343G (Mass. Super. Ct., Essex County, February 6, 2020))

◊   Submitted an expert witness declaration, and reply declaration, concerning reasonableness of attorney's fee request (*Hartman v. Pompeo*, Civil Action No. 1:77-cv-02019 (D.D.C. October 10, 2019; February 28, 2020))

◊   Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, 16-MD-2724 (E.D. Pa. May 15, 2019))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, relied upon by court in awarding fees (*Hale v. State Farm Mut. Auto. Ins. Co*., 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018))

◊   Submitted expert witness affidavit and testified at fairness hearing concerning second phase fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294 (New Hampshire Superior Court, Merrimack County (2018))

◊   Submitted expert witness report – and rebutted opposing expert – concerning class certification issues for proposed class action within a bankruptcy proceeding (*In re Think Finance,* Case No. 17-33964 (N.D. Tex. Bankrpt. 2018))

◊   Submitted expert witness declaration concerning specific fee issues raised by Court at fairness hearing and second declaration in response to report of Special Master (*In re Anthem, Inc. Data Breach Litigation,* Case No. 15-MD-02617-LHK (N.D. Cal. 2018))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request following plaintiffs' verdict at trial in consumer class action (*Krakauer v. Dish Network, L.L.C.,* Civil Action No. 1:14-cv-00333 (M.D.N.C. 2018))

◊   Submitted three expert witness declarations and deposed by/testified in front of Special Master in investigation concerning attorney's fee issues (*Arkansas Teacher Ret. Sys. v. State St. Bank & Trust Co.*, Civ. Action No. 1:11-cv-10230 (D. Mass. 2017-18))

◊   Retained as an expert witness on issues regarding the preclusive effect of a class action judgment on later cases (*Sanchez v. Allianz Life Insurance Co. of N. Amer.,* Case No. BC594715 (California Superior Court, Los Angeles County (2018))

◊   Retained as an expert witness and submitted report explaining meaning of the denial of a motion to dismiss in American procedure to foreign tribunals (*In re Qualcomm Antitrust Matter,* declaration submitted to tribunals in Korea and Taiwan (2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 3.0-liter settlement, referenced by court in awarding fees (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 3175924 (N.D. Cal. July 21, 2017))

◊   Retained as an expert witness concerning impracticability of joinder in antitrust class action (*In re*

*Celebrex (Celecoxib) Antitrust Litigation,* Civ. Action No. 2-14-cv-00361 (E.D. Va. (2017))

◊   Submitted an expert witness declaration and deposed concerning impracticability of joinder in antitrust class action (*In re Modafinil Antitrust Litigation,* Civ. Action No. 2-06-cv-01797 (E.D. Pa. (2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 2.0-liter settlement (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 1047834 (N.D. Cal., March 17, 2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Aranda v. Caribbean Cruise Line, Inc.,* 2017 WL 1368741 (N.D. Ill., April 10, 2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*McKinney v. United States Postal Service*, Civil Action No. 1:11-cv-00631 (D.D.C. (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Geancopoulos v. Philip Morris USA Inc.,* Civil Action No. 98-6002-BLS1 (Mass. Superior Court, Suffolk County))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Gates v. United Healthcare Insurance Company,* Case No. 11 Civ. 3487 (S.D.N.Y. 2015))

◊   Retained as an expert trial witness on class action procedures and deposed prior to trial in matter that settled before trial (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*In re High-Tech Employee Antitrust Litig*., 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015))

◊   Retained as an expert witness concerning adequacy of putative class representatives in securities class action (*Medoff v. CVS Caremark Corp.,* Case No. 1:09-cv-00554 (D.R.I. (2015))

◊   Submitted an expert witness declaration concerning reasonableness of proposed class action settlement, settlement class certification, attorney's fees, and incentive awards (*Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.,* Case No. CJ-2010-38, Dist. Ct., Beaver County, Oklahoma (2015))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Asghari v. Volkswagen Grp. of Am., Inc*., 2015 WL 12732462 (C.D. Cal. May 29, 2015))

◊   Submitted an expert witness declaration concerning propriety of severing individual cases from class action and resulting statute of repose ramifications (*In re: American   International Group, Inc. 2008 Securities Litigation,* 08-CV-4772-LTS-DCF (S.D.N.Y. (2015))

◊   Retained by Fortune Global 100 Corporation as an expert witness on fee matter that settled before testimony (2015)

◊   Submitted an expert witness declaration and testified at Special Master proceeding concerning reasonableness of attorney's fee allocation in sealed fee mediation (2014-2015)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*In re: Hyundai and Kia Fuel Economy Litigation,* MDL 13-02424 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Ammari Electronics v. Pacific Bell Directory*, Case No. RG0522096, California Superior Court, Alameda County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.,* Case No. CGC-10-497839, California Superior Court, San Francisco County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,* Case No. CGC-10-497840, California Superior Court, San Francisco County (2014))

◊   Retained as expert witness on proper level of common benefit fee in MDL (*In re Neurontin Marketing and Sales Practice Litigation,* Civil Action No. 04-10981, MDL 1629 (D. Mass. (2014))

◊   Submitted an expert witness declaration concerning Rule 23(g) selection of competing counsel, referenced by court in deciding issue (*White v. Experian Information Solutions, Inc.,* 993 F. Supp. 2d 1154 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning proper approach to attorney's fees under California law in a statutory fee-shifting case (*Perrin v. Nabors Well Services Co.,* Case No. 1220037974, Judicial Arbitration and Mediation Services (JAMS) (2013))

◊   Submitted an expert witness declaration concerning fairness and adequacy of proposed nationwide class action settlement (*Verdejo v. Vanguard Piping Systems,* Case No. BC448383, California Superior Court, Los Angeles County (2013))

◊   Retained as an expert witness regarding fairness, adequacy, and reasonableness of proposed nationwide

consumer class action settlement   (*Herke v. Merck,* No. 2:09-cv-07218, MDL Docket No. 1657 (*In re Vioxx Products Liability Litigation*) (E. D. La. (2013))

◊   Retained as an expert witness concerning ascertainability requirement for class certification and related issues (*Henderson v. Acxiom Risk Mitigation, Inc.,* Case No. 3:12-cv-00589-REP (E.D. Va. (2013))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement and performing analysis of Anet expected value@ of settlement benefits, relied on by court in approving settlement (*In re Navistar Diesel Engine Products Liab. Litig.*, 2013 WL 10545508 (N.D. Ill. July 3, 2013))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement and attorney's fee request (*Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236 (Mass. Super. Aug. 5, 2013))

◊   Submitted an expert witness declaration concerning propriety of preliminary settlement approval in nationwide consumer class action settlement (*Anaya v. Quicktrim, LLC,* Case No.  CIVVS 120177, California Superior Court, San Bernardino County (2012))

◊   Submitted expert witness affidavit concerning fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294, New Hampshire Superior Court, Merrimack County (2012))

◊   Submitted expert witness declaration and deposed concerning class certification issues in nationwide fraud class action, relied upon by the court in affirming class certification order (*CVS Caremark Corp. v. Lauriello,* 175 So. 3d 596, 609-10 (Ala. 2014))

◊   Submitted expert witness declaration in securities class action concerning value of proxy disclosures achieved through settlement and appropriate level for fee award (*Rational Strategies Fund v. Jhung,* Case No. BC 460783, California Superior Court, Los Angeles County (2012))

◊   Submitted an expert witness report and deposed concerning legal malpractice in the defense of a class action lawsuit (*KB Home v. K&L Gates, LLP,* Case No. BC484090, California Superior Court, Los Angeles County (2011))

◊   Retained as expert witness on choice of law issues implicated by proposed nationwide class certification (*Simon v. Metropolitan Property and Cas. Co.,* Case No. CIV-2008-1008-W (W.D. Ok. (2011))

◊   Retained, deposed, and testified in court as expert witness in fee-related dispute (*Blue, et al. v. Hill*, Case No. 3:10-CV-02269-O-BK (N.D. Tex. (2011))

◊   Retained as an expert witness in fee-related dispute (*Furth v. Furth*, Case No. C11-00071-DMR (N.D. Cal. (2011))

◊   Submitted expert witness declaration concerning interim fee application in complex environmental class action (*DeLeo v. Bouchard Transportation,* Civil Action No. PLCV2004-01166-B, Massachusetts Superior Court (2010))

◊  Retained as an expert witness on common benefit fee issues in MDL proceeding in federal court (*In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La. (2010))

◊  Submitted expert witness declaration concerning fee application in securities case, referenced by court in awarding fee (*In re AMICAS, Inc. Shareholder Litigation,* 27 Mass. L. Rptr. 568 (Mass. Sup. Ct. (2010))

◊  Submitted an expert witness declaration concerning fee entitlement and enhancement in non-common fund class action settlement, relied upon by the court in awarding fees (*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172-74 (C.D. Cal. 2010))

◊  Submitted an expert witness declaration concerning class action fee allocation among attorneys (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊  Submitted an expert witness declaration concerning settlement approval and fee application in wage and hour class action settlement (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊  Submitted an expert witness declaration concerning objectors' entitlement to attorney's fees (*Rodriguez v. West Publishing Corp.,* Case No. CV-05-3222 (C.D. Cal. (2010))

◊  Submitted an expert witness declaration concerning fairness of settlement provisions and processes, relied upon by the Ninth Circuit in reversing district court's approval of class action settlement (*Radcliffe v. Experian Inform. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013))

◊  Submitted an expert witness declaration concerning attorney's fees in class action fee dispute, relied upon by the court in deciding fee issue (*Ellis v. Toshiba America Information Systems, Inc.*, 218 Cal. App. 4th 853, 871, 160 Cal. Rptr. 3d 557, 573 (2d Dist. 2013))

◊  Submitted an expert witness declaration concerning common benefit fee in MDL proceeding in federal court (*In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo. (2009))

◊  Submitted an expert witness declaration concerning settlement approval and fee application in national MDL class action proceeding (*In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL Docket No.1735 (D. Nev. (2009))

◊  Submitted an expert witness declaration concerning fee application in national MDL class action proceeding, referenced by court in awarding fees (*In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F. Supp.2d 58 (D.D.C. (2009))

◊  Submitted an expert witness declaration concerning common benefit fee in mass tort MDL proceeding in federal court (*In re Kugel Mesh Products Liability Litigation*, MDL Docket No. 1842 (D. R.I. (2009))

◊  Submitted an expert witness declaration and supplemental declaration concerning common benefit fee in consolidated mass tort proceedings in state court (*In re All Kugel Mesh Individual Cases*, Master Docket No. PC-2008-9999, Superior Court, State of Rhode Island (2009))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Warner v. Experian Information Solutions, Inc.*, Case No.    BC362599, California Superior Court, Los Angeles County (2009))

◊   Submitted an expert witness declaration concerning process for selecting lead counsel in complex MDL antitrust class action (*In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL Docket No. 1869 (D. D.C. (2008))

◊   Retained, deposed, and testified in court as expert witness on procedural issues in complex class action (*Hoffman v. American Express*, Case No. 2001-022881, California Superior Court, Alameda County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Salsgiver v. Yahoo! Inc.*, Case No. BC367430, California Superior Court, Los Angeles County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Voight v. Cisco Systems, Inc.*, Case No. 106CV075705, California Superior Court, Santa Clara County (2008))

◊   Retained and deposed as expert witness on fee issues in attorney fee dispute (*Stock v. Hafif,* Case No. KC034700, California Superior Court, Los Angeles County (2008))

◊   Submitted an expert witness declaration concerning fee application in consumer class action (*Nicholas v. Progressive Direct*, Civil Action No. 06-141-DLB (E.D. Ky. (2008))

◊   Submitted expert witness declaration concerning procedural aspects of national class action arbitration (*Johnson v. Gruma Corp.,* JAMS Arbitration No. 1220026252 (2007))

◊   Submitted expert witness declaration concerning fee application in securities case (*Drulias v. ADE Corp.,* Civil Action No. 06-11033 PBS (D. Mass. (2007))

◊   Submitted expert witness declaration concerning use of expert witness on complex litigation matters in criminal trial (*U.S. v. Gallion, et al*., No. 07-39 (E. D. Ky. (2007))

◊   Retained as expert witness on fees matters (*Heger v. Attorneys' Title Guaranty Fund, Inc.,* No. 03-L-398, Illinois Circuit Court, Lake County, IL (2007))

◊   Retained as expert witness on certification in statewide insurance class action (*Wagner v. Travelers Property Casualty of America*, No. 06CV338, Colorado District Court, Boulder County, CO (2007))

◊   Testified as expert witness concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corporate Derivative Litigation*, Case No. 01098905, California Superior Court, Santa Barbara Cty, CA (2006))

◊   Submitted expert witness declaration concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corp. Corporate Derivative Litigation*, Case No. CV-03-11 RSWL (C.D. Cal. (2006))

◊   Retained as expert witness as to certification of class action (*Canova v. Imperial Irrigation District*, Case No. L-01273, California Superior Court, Imperial Cty, CA (2005))

◊   Retained as expert witness as to certification of nationwide class action (*Enriquez v. Edward D. Jones & Co.,* Missouri Circuit Court, St. Louis, MO (2005))

◊   Submitted expert witness declaration on procedural aspects of international contract litigation filed in court in Korea (*Estate of Wakefield v. Bishop Han & Jooan Methodist Church* (2002))

◊   Submitted expert witness declaration as to contested factual matters in case involving access to a public forum (*Cimarron Alliance Foundation v. The City of Oklahoma City,* Case No. Civ. 2001-1827-C (W.D. Ok. (2002))

◊   Submitted expert witness declaration concerning reasonableness of class certification, settlement, and fees (*Baird v. Thomson Elec. Co.*, Case No. 00-L-000761, Cir. Ct., Mad. Cty, IL (2001))

*Expert Consultant*

◊   Retained as an expert in confidential matter pending in international arbitration forum concerning litigation financing issues in complex litigation (2022-2023)

◊   Retained as an expert in matter pending in several federal courts concerning attorney's fees in class action setting (2022-2023)

◊   Retained as an expert witness on class action issues in complex mass tort MDL (*In re Roundup Products Liability Litigation,* Civil Action No. 3:16-md-02741-VC (N.D. Cal. (2020))

◊   Provided expert consulting services to Harvard Law School Predatory Lending and Consumer Protection Clinic concerning complex class action issues in bankruptcy (*In re: ITT Educational Services Inc.,* Case No. 16-07207-JMC-7A (Bank. S.D. Ind. 2020))

◊   Provided expert consulting services to law firm concerning complex federal procedural and bankruptcy issues (*Homaidan v. Navient Solutions, LLC*, Adv. Proc. No. 17-1085 (Bank. E.D.N.Y 2020))

◊   Provided expert consulting services to the ACLU on multi-district litigation issues arising out of various challenges to President Trump's travel ban and related policies (*In re American Civil Liberties Union Freedom of Information Act Requests Regarding Executive Order 13769*, Case Pending No. 28, Judicial Panel on Multidistrict Litigation (2017); *Darweesh v. Trump*, Case No. 1:17-cv-00480-CBA-LB (E.D.N.Y. (2017))

◊   Provided expert consulting services to law firm regarding billing practices and fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to law firm regarding fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to the ACLU of Southern California on class action and procedural issues arising out of challenges to municipality's treatment of homeless persons with disabilities (*Glover v. City of Laguna Beach*, Case No. 8:15-cv-01332-AG-DFM (C.D. Cal. (2016))

◊   Retained as an expert consultant on class certification issues (*In re: Facebook, Inc., IPO Securities and Derivative Litigation*, No. 1:12-md-2389 (S.D.N.Y. 2015))

◊   Provided expert consulting services to lead class counsel on class certification issues in nationwide class action (2015)

◊   Retained by a Fortune 100 Company as an expert consultant on class certification issues

◊   Retained as an expert consultant on class action and procedure related issues (*Lange et al v. WPX Energy Rocky Mountain LLC*, Case No. 2:13-cv-00074-ABJ (D. Wy. (2013))

◊   Retained as an expert consultant on class action and procedure related issues (*Flo & Eddie, Inc., v. Sirius XM Radio, Inc.*, Case No. CV 13-5693 (C.D. Cal. (2013))

◊   Served as an expert consultant on substantive and procedural issues in challenge to legality of credit card late and over-time fees (*In Re Late Fee and Over-Limit Fee Litigation*, 528 F.Supp.2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014))

◊   Retained as an expert on Class Action Fairness Act (CAFA) removal issues and successfully briefed and argued remand motion based on local controversy exception (*Trevino, et al. v. Cummins, et al.*, No. 2:13-cv-00192-JAK-MRW (C. D. Cal. (2013))

◊   Retained as an expert consultant on class action related issues by consortium of business groups (*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (E.D. La. (2012))

◊   Provided presentation on class certification issues in nationwide medical monitoring classes (*In re: National Football League Players' Concussion Injury Litigation,* MDL No. 2323, Case No. 2:12-md-02323-AB (E.D. Pa. (2012))

◊   Retained as an expert consultant on class action related issues in mutli-state MDL consumer class action (*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices & Prod. Liability Litig.*, MDL No. 2102 (S.D. N.Y. (2009))

◊   Retained as an expert consultant on class action certification, manageability, and related issues in mutli-state MDL consumer class action (*In re Teflon Prod. Liability Litig.*, MDL No. 1733 (S.D. Iowa (2008))

◊   Retained as an expert consultant/co-counsel on certification, manageability, and related issues in nationwide anti-trust class action (*Brantley v. NBC Universal*, No.- CV07-06101 (C.D. Cal. (2008))

◊   Retained as an expert consultant on class action issues in complex multi-jurisdictional construction dispute (*Antenucci, et al., v. Washington Assoc. Residential Partner, LLP, et al.,* Civil No. 8-04194 (E.D. Pa. (2008))

◊    Retained as an expert consultant on complex litigation issues in multi-jurisdictional class action litigation (*McGreevey v. Montana Power Company*, No. 08-35137, U.S. Court of Appeals for the Ninth Circuit (2008))

◊    Retained as an expert consultant on class action and attorney fee issues in nationwide consumer class action (*Figueroa v. Sharper Image*, 517 F.Supp.2d 1292 (S.D. Fla. 2007))

◊    Retained as an expert consultant on attorney's fees issue in complex class action case (*Natural Gas Anti-Trust Cases Coordinated Proceedings*, D049206, California Court of Appeals, Fourth District (2007))

◊    Retained as an expert consultant on remedies and procedural matters in complex class action (*Sunscreen Cases*, JCCP No. 4352, California Superior Court, Los Angeles County (2006))

◊    Retained as an expert consultant on complex preclusion questions in petition for review to California Supreme Court (*Mooney v. Caspari,* Supreme Court of California (2006))

◊    Retained as an expert consultant on attorney fee issues in complex common fund case (*In Re DietDrugs (Phen/Fen) Products Liability Litigation* (E. D. Pa. (2006))

◊    Retained as an expert consultant on procedural matters in series of complex construction lien cases (*In re Venetian Lien Litigation*, Supreme Court of the State of Nevada (2005-2006))

◊    Served as an expert consultant on class certification issues in countywide class action (*Beauchamp v. Los Angeles Cty. Metropolitan Transp. Authority*, (C.D. Cal. 2004))

◊    Served as an expert consultant on class certification issues in state-wide class action (*Williams v. State of California*, Case No. 312-236, Cal. Superior Court, San Francisco)

◊    Served as an exert consultant on procedural aspects of complex welfare litigation (*Allen v. Anderson*, 199 F.3d 1331 (9th Cir. 1999))

*Ethics Opinions*

◊    Retained to provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2017))

◊    Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2013))

◊    Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2011))

◊    Provided expert opinion on issues of professional ethics in implicated by nationwide class action practice (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics implicated by complex litigation matter (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2007))

*Publications on Class Actions & Procedure*

◊   NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022); NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2019)

◊   *Deconstitutionalizing Personal Jurisdiction:   A Separation of Powers Approach,* Harvard Public Law Working Paper No. 20-34, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3715068.

◊   *The Negotiation Class:   A Cooperative Approach to Class Actions Involving Large Stakeholders,* 99 TEXAS L. REV.73 (2020) (with Francis E. McGovern)

◊   *Profit for Costs*, 63 DEPAUL L. REV. 587 (2014) (with Morris A. Ratner)

◊   *Procedure and Society: An Essay for Steve Yeazell,* 61 U.C.L.A. REV. DISC. 136 (2013)

◊   *Supreme Court Round-Up – Part II*, 5 CLASS ACTION ATTORNEY FEE DIGEST 331 (September 2011)

◊   *Supreme Court Round-Up – Part I*, 5 CLASS ACTION ATTORNEY FEE DIGEST 263 (July-August 2011)

◊   *Class Action Fee Award* Procedures, 5 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2011)

◊   *Benefits of Class Action Lawsuits*, 4 CLASS ACTION ATTORNEY FEE DIGEST 423 (November 2010)

◊   *Contingent Fees for Representing the Government: Developments in California Law*, 4 CLASS ACTION ATTORNEY FEE DIGEST 335 (September 2010)

◊   *Supreme Court Roundup*, 4 CLASS ACTION ATTORNEY FEE DIGEST 251 (July 2010)

◊   *SCOTUS Okays Performance Enhancements in Federal Fee Shifting Cases – At Least In Principle,* 4 CLASS ACTION ATTORNEY FEE DIGEST 135 (April 2010)

◊   *The Puzzling Persistence of the AMega-Fund@ Concept*, 4 CLASS ACTION ATTORNEY FEE DIGEST 39 (February 2010)

◊   *2009: Class Action Fee Awards Go Out With A Bang, Not A Whimper*, 3 CLASS ACTION ATTORNEY FEE DIGEST 483 (December 2009)

◊   *Privatizing Government Litigation: Do Campaign Contributors Have An Inside Track?*, 3 CLASS ACTION ATTORNEY FEE DIGEST 407   (October 2009)

◊   *Supreme Court Preview*, 3 CLASS ACTION ATTORNEY FEE DIGEST 307 (August 2009)

◊   *Supreme Court Roundup*, 3 CLASS ACTION ATTORNEY FEE DIGEST 259 (July 2009)

◊   *What We Now Know About How Lead Plaintiffs Select Lead Counsel (And Hence Who Gets Attorney's Fees!) in Securities Cases*, 3 CLASS ACTION ATTORNEY FEE DIGEST 219 (June 2009)

◊   *Beware Of Ex Ante Incentive Award Agreements*, 3 CLASS ACTION ATTORNEY FEE DIGEST 175 (May 2009)

◊   *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 CLASS ACTION ATTORNEY FEE DIGEST 87 (March 2009)

◊   *2009: Emerging Issues in Class Action Fee Awards*, 3 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2009)

◊   *2008:   The Year in Class Action Fee Awards*, 2 CLASS ACTION ATTORNEY FEE DIGEST 465 (December 2008)

◊   *The Largest Fee Award – Ever!*, 2 CLASS ACTION ATTORNEY FEE DIGEST 337 (September 2008)

◊   *Why Are Fee Reductions Always 50%?: On The Imprecision of Sanctions for Imprecise Fee Submissions*, 2 CLASS ACTION ATTORNEY FEE DIGEST 295 (August 2008)

◊   *Supreme Court Round-Up,* 2 CLASS ACTION ATTORNEY FEE DIGEST 257 (July 2008)

◊   *Fee-Shifting For Wrongful Removals: A Developing Trend?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 177 (May 2008)

◊   *You Cut, I Choose:   (Two Recent Decisions About) Allocating Fees Among Class Counsel,* 2 CLASS ACTION ATTORNEY FEE DIGEST 137 (April 2008)

◊   *Why The Percentage Method?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 93 (March 2008)

◊   *Reasonable Rates: Time To Reload The (*Laffey*) Matrix,* 2 CLASS ACTION ATTORNEY FEE DIGEST 47 (February 2008)

◊   *The "Lodestar Percentage" A New Concept For Fee Decisions?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2008)

◊   *Class Action Practice Today: An Overview, in* ABA SECTION OF LITIGATION, CLASS ACTIONS TODAY 4 (2008)

◊   *Shedding Light on Outcomes in Class Actions*, *in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20-59 (Joseph W. Doherty, Robert T. Reville, and Laura Zakaras eds. 2008) (with Nicholas M. Pace)

◊   *Finality in Class Action Litigation: Lessons From Habeas,* 82 N.Y.U. L. REV. 791 (2007)

◇   *The American Law Institute's New Approach to Class Action Objectors' Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 347 (November 2007)

◇   *The American Law Institute's New Approach to Class Action Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 307 (October 2007)

◇   *"The Lawyers Got More Than The Class Did!":  Is It Necessarily Problematic When Attorneys Fees Exceed Class Compensation?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 233 (August 2007)

◇   *Supreme Court Round-Up,* 1 CLASS ACTION ATTORNEY FEE DIGEST 201 (July 2007)

◇   *On The Difference Between Winning and Getting Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 163 (June 2007)

◇   *Divvying Up The Pot: Who Divides Aggregate Fee Awards, How, and How Publicly?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 127 (May 2007)

◇   *On Plaintiff Incentive Payments,* 1 CLASS ACTION ATTORNEY FEE DIGEST 95 (April 2007)

◇   *Percentage of What?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 63 (March 2007)

◇   *Lodestar v. Percentage: The Partial Success Wrinkle,* 1 CLASS ACTION ATTORNEY FEE DIGEST 31 (February 2007) (with Alan Hirsch)

◇   *The Fairness Hearing:  Adversarial and Regulatory Approaches*, 53 U.C.L.A. L. REV. 1435 (2006) (excerpted in THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION 447-449 (Richard A. Nagareda ed., 2009))

◇   *Why Enable Litigation?  A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006)

◇   *What a "Private Attorney General" Is – And Why It Matters*, 57 VAND. L. REV.  2129 (2004) (excerpted in COMPLEX LITIGATION 63-72 (Kevin R. Johnson, Catherine A. Rogers & John Valery White eds., 2009)).

◇   *The Concept of Equality in Civil Procedure*, 23 CARDOZO L. REV. 1865 (2002) (selected for the Stanford/Yale Junior Faculty Forum, June 2001)

◇   *A Transactional Model of Adjudication*, 89 GEORGETOWN  L.J. 371 (2000)

◇   *The Myth of Superiority*, 16 CONSTITUTIONAL COMMENTARY 599 (1999)

◇   *Divided We Litigate:  Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*, 106 YALE L. J. 1623 (1997) *(*excerpted in COMPLEX LITIGATION 120-123 (1998))

### Selected Presentations

◊   *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 24, 2023 (scheduled)

◊   *Opioid Litigation:  What's New and What Does it Mean for Future Litigation?,* RAND Institute for Civil Justice and RAND Kenneth R. Feinberg Center for Catastrophic Risk Management and Compensation, RAND Corporation, October 22, 2020

◊   *The Opioid Crisis:  Where Do We Go From Here?"* Clifford Symposium 2020, DePaul University College of Law, Chicago, Illinois, May 28-29, 2020)

◊   *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2019

◊   *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 31, 2018

◊   *Attorneys' Fees Issues,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2018

◊   *Panelist,* Federal Judicial Center, Managing Multidistrict Litigation and Other Complex Litigation Workshop (for federal judges) (March 15, 2018)

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 1, 2017

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2016

◊   *Judicial Power and its Limits in Multidistrict Litigation,* American Law Institute, Young Scholars Medal Conference, *The Future of Aggregate Litigation*, New York University School of Law, New York, New York, April 12, 2016

◊   *Class Action Update & Attorneys' Fees Issues Checklist,* MDL Transferee Judges Conference, Palm Beach, Florida, October 28, 2015

◊   *Class Action Law,* 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop, Tucson, Arizona, January 26, 2015

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2014

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2013

◊   *Class Action Remedies,* ABA 2013 National Institute on Class Actions, Boston, Massachusetts, October 23, 2013

◊   *The Public Life of the Private Law: The Logic and Experience of Mass Litigation – Conference in Honor of Richard Nagareda,* Vanderbilt Law School, Nashville, Tennessee, September 27-28, 2013

◊   *Brave New World: The Changing Face of Litigation and Law Firm Finance*, Clifford Symposium 2013, DePaul University College of Law, Chicago, Illinois, April 18-19, 2013

◊   *Twenty-First Century Litigation: Pathologies and Possibilities: A Symposium in Honor of Stephen Yeazell,* UCLA Law Review, UCLA School of Law, Los Angeles, California, January 24-25, 2013

◊   *Litigation's Mirror: The Procedural Consequences of Social Relationships,* Sidley Austin Professor of Law Chair Talk, Harvard Law School, Cambridge, Massachusetts, October 17, 2012

◊   *Alternative Litigation Funding (ALF) in the Class Action Context – Some Initial Thoughts*, Alternative Litigation Funding: A Roundtable Discussion Among Experts, George Washington University Law School, Washington, D.C., May 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Brooklyn Law School Faculty Workshop, Brooklyn, New York, April 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Loyola Law School Faculty Workshop, Los Angeles, California, February 2, 2012

◊   *Recent Developments in Class Action Law and Impact on MDL Cases,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2011

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 26, 2010

◊   *A General Theory of the Class Suit*, University of Houston Law Center Colloquium, Houston, Texas, February 3, 2010

◊   *Unpacking The "Rigorous Analysis" Standard,* ALI-ABA 12th Annual National Institute on Class Actions, New York, New York, November 7, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of California (Boalt Hall) School of Law Civil Justice Workshop, Berkeley, California, February 28, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of Pennsylvania Law Review Symposium, Philadelphia, Pennsylvania, Dec. 1, 2007

◊   *Current CAFA Consequences: Has Class Action Practice Changed?,* ALI-ABA 11th Annual National Institute on Class Actions, Chicago, Illinois, October 17, 2007

◊   *Using Law Professors as Expert Witnesses in Class Action Lawsuits,* ALI-ABA 10th Annual National Institute on Class Actions, San Diego, California, October 6, 2006

◊   *Three Models for Transnational Class Actions*, Globalization of Class Action Panel, International Law Association 2006 Conference, Toronto, Canada, June 6, 2006

◊   *Why Create Litigation?:  A Positive Externalities Theory of the Small Claims Class Action*, UMKC

Law Review Symposium, Kansas City, Missouri, April 7, 2006

◊   *Marks, Bonds, and Labels:   Three New Proposals for Private Oversight of Class Action Settlements*, UCLA Law Review Symposium, Los Angeles, California, January 26, 2006

◊   Class Action Fairness Act, Arnold & Porter, Los Angeles, California, December 6, 2005

◊   ALI-ABA 9th Annual National Institute on Class Actions, Chicago, Illinois, September 23, 2005

◊   Class Action Fairness Act, UCLA Alumni Assoc., Los Angeles, California, September 9, 2005

◊   Class Action Fairness Act, Thelen Reid & Priest, Los Angeles, California, May 12, 2005

◊   Class Action Fairness Act, Sidley Austin, Los Angeles, California, May 10, 2005

◊   Class Action Fairness Act, Munger, Tolles & Olson, Los Angeles, California, April 28, 2005

◊   Class Action Fairness Act, Akin Gump Strauss Hauer Feld, Century City, CA, April 20, 2005

SELECTED OTHER LITIGATION EXPERIENCE

*United States Supreme Court*

◊   Served as *amicus curiae* and authored *amicus* brief on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, No. 17-961, October Term 2018)

◊   Co-counsel on petition for writ of *certiorari* concerning application of the voluntary cessation doctrine to government defendants (*Rosebrock v. Hoffman*, 135 S. Ct.1893 (2015))

◊   Authored *amicus* brief filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011)

◊   Co-counsel in constitutional challenge to display of Christian cross on federal land in California's Mojave preserve (*Salazar v. Buono*, 130 S. Ct. 1803 (2010))

◊   Co-authored *amicus* brief filed on behalf of constitutional law professors arguing against constitutionality of Texas criminal law (*Lawrence v. Texas*, 539 U.S. 558 (2003))

◊   Co-authored *amicus* brief on scope of *Miranda* (*Illinois v. Perkins*, 496 U.S. 292 (1990))

*Attorney's Fees*

◊   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa.

April 5, 2018))

◊   Appointed by the United States District Court for the Northern District of Ohio as an expert consultant on common benefit attorney's fees issues in complex multidistrict litigation, with result that the Court adopted recommendations (*In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2020 WL 8675733 (N.D. Ohio June 3, 2020))

◊   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016)).

◊   Co-counsel in appeal of common benefit fees decision arising out of mass tort MDL (*In re Roundup Prod. Liab. Litig.,* Civil Action No. 21-16228, 2022 WL 16646693 (9th Cir, 2022))

◊   Served as *amicus curiae* and co-authored *amicus* brief on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016))

### Consumer Class Action

◊   Co-counsel in challenge to antenna-related design defect in Apple's iPhone4 (*Dydyk v. Apple Inc.,* 5:10-cv-02897-HRL, U.S. Dist. Court, N.D. Cal.) (complaint filed June 30, 2010)

◊   Co-class counsel in $8.5 million nationwide class action settlement challenging privacy concerns raised by Google's Buzz social networking program (*In re Google Buzz Privacy Litigation,* 5:10-cv-00672-JW, U.S. Dist. Court, N.D. Cal.) (amended final judgment June 2, 2011)

### Disability

◊   Co-counsel in successful ADA challenge ($500,000 jury verdict) to the denial of health care in emergency room (*Howe v. Hull*, 874 F. Supp. 779, 873 F. Supp 72 (N.D. Ohio 1994))

### Employment

◊   Co-counsel in challenges to scope of family benefit programs (*Ross v. Denver Dept. of Health*, 883 P.2d 516 (Colo. App. 1994)); *(Phillips v. Wisc. Personnel Com'n*, 482 N.W.2d 121 (Wisc. 1992))

### Equal Protection

◊   Co-counsel in (state court phases of) successful challenge to constitutionality of a Colorado ballot initiative, Amendment 2 (*Evans v. Romer*, 882 P.2d 1335 (Colo. 1994))

◊   Co-counsel (and *amici*) in challenges to rules barring military service by gay people (*Able v. United States*, 44 F.3d 128 (2d Cir. 1995); *Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (*en banc*))

◊   Co-counsel in challenge to the constitutionality of the Attorney General of Georgia' firing of staff attorney (*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997))

### *Fair Housing*

◊    Co-counsel in successful Fair Housing Act case on behalf of group home (*Hogar Agua y Vida En el Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994))

### *Family Law*

◊    Co-counsel in challenge to constitutionality of Florida law limiting adoption (*Cox v. Florida Dept. of Health and Rehab. Srvcs.*, 656 So.2d 902 (Fla. 1995))

◊    Co-authored *amicus* brief in successful challenge to Hawaii ban on same-sex marriages (*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993))

### *First Amendment*

◊    Co-counsel in successful challenge to constitutionality of Alabama law barring state funding foruniversity student groups (*GLBA v. Sessions*, 930 F.Supp. 1492 (M.D. Ala. 1996))

◊    Co-counsel in successful challenge to content restrictions on grants for AIDS education materials (*Gay Men's Health Crisis v. Sullivan*, 792 F.Supp. 278 (S.D.N.Y. 1992))

### *Landlord / Tenant*

◊    Lead counsel in successful challenge to rent control regulation (*Braschi v. Stahl Associates Co.*, 544 N.E.2d 49 (N.Y. 1989))

### *Police*

◊    Co-counsel in case challenging DEA brutality (*Anderson v. Branen*, 27 F.3d 29 (2d Cir. 1994))

### *Prison Conditions*

◊    Co-counsel in appeal of class certification decision in damages class action arising out of conditions in St. Louis City Jail, *Cody, et al v. City of St. Louis,* Civil Action No. 22-2348 (8th Cir. 2023) (pending)

### *Racial Equality*

◊    Co-authored *amicus* brief for constitutional law professors challenging constitutionality of Proposition 209 (*Coalition for Economic Equity v. Wilson*, 110 F.3d 1431 (9th Cir. 1997))

SELECTED OTHER PUBLICATIONS

*Editorials*

◊   *Follow the Leaders*, NEW YORK TIMES, March 15, 2005

◊   *Play It Straight*, NEW YORK TIMES, October 16, 2004

◊   *Hiding Behind the Constitution*, NEW YORK TIMES, March 20, 2004

◊   *Toward More Perfect Unions,* NEW YORK TIMES, November 20, 2003 (with Brad Sears)

◊   *Don't Ask, Don't Tell, Don't Believe It*, NEW YORK TIMES, July 20, 1993

◊   *AIDS: Illness and Injustice*, WASH. POST, July 26, 1992 (with Nan D. Hunter)

BAR ADMISSIONS

◊   Massachusetts (2008)

◊   California (2004)

◊   District of Columbia (1987) (inactive)

◊   Pennsylvania (1986) (inactive)

◊   U.S. Supreme Court (1993)

◊   U.S. Court of Appeals for the First Circuit (2010)

◊   U.S. Court of Appeals for the Second Circuit (2015)

◊   U.S. Court of Appeals for the Fifth Circuit (1989)

◊   U.S. Court of Appeals for the Ninth Circuit (2004)

◊   U.S. Court of Appeals for the Eleventh Circuit (1993)

◊   U.S. Court of Appeals for the D.C. Circuit (1993)

◊   U.S. District Courts for the Central District of California (2004)

◊   U.S. District Court for the District of the District of Columbia (1989)

◊   U.S. District Court for the District of Massachusetts (2010)

◊   U.S. District Court for the Northern District of California (2010)

# EXHIBIT B

*In re: Facebook, Inc. Consumer Privacy User Profile Litigation*
Case No. 3:18-MD-02843-VC
U.S. District Court for the Northern District of California
San Francisco Division

## EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

EXHIBIT B
Partial List of Documents Reviewed by Professor Rubenstein
(other than case law and scholarship on the relevant issues)

**A.** ***In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-MD-02843 (N.D. Cal.)**

1. United States Judicial Panel on Multidistrict Litigation Transfer Order, ECF No. 1
2. Pretrial Order No. 1, ECF No. 2
3. Letter Notifying Court of Cambridge Analytica, LLC's Chapter 7 Bankruptcy Case, ECF No. 14
4. Lesley E. Weaver's Application to Serve in a Leadership Position, ECF No. 31
5. Lesley E. Weaver's Biography, ECF No. 31-1
6. Counsel Who Have Filed Cases in This Multi-District Litigation and Support Lesley E. Weaver's Application to Serve as Lead Counsel, ECF No. 31-2
7. Billing and Expense Protocol, ECF No. 31-3
8. James Cecchi's Application to Serve in a Leadership Position, ECF No. 33
9. Gary F. Lynch's Application to Serve in a Leadership Position, ECF No. 35
10. Derek W. Loeser's Application to Serve in a Leadership Position, ECF No. 41
11. Attachment A, Derek Loeser's Biography, ECF No. 41-1
12. Attachment B, Plaintiffs' Counsel Supporting Appointment of Derek Loeser for Leadership, ECF No. 41-2
13. Steve W. Berman's Application to Serve in a Leadership Position, ECF No. 64
14. Case Management Statement of Defendants Facebook, Inc. and Mark Zuckerberg, ECF No. 66
15. Pretrial Order No. 3, ECF No. 76
16. Response of Derek Loeser and Keller Rohrback L.L.P. to Pretrial Order No. 3, ECF No. 81
17. Biographies of Keller Rohrback Members, ECF No. 81-1
18. Norman E. Siegel's Response to Pretrial Order No. 3, ECF No. 83
19. Michael W. Sobol's Response to Pretrial Order No. 3, ECF No. 84
20. Lesley E. Weaver's Response to Pretrial Order No. 3, ECF No. 88
21. Biographies of BFA Members, ECF No. 88-1
22. Pretrial Order No. 4: Appointing Lead Counsel, ECF No. 102
23. [Proposed] Pretrial Order No. 8; Protocol for Common Benefit Work and Expenses, ECF No. 114
24. [Proposed] Pretrial Order No. 7 Regarding Duties and Authority of Co-Lead Counsel, ECF No. 115
25. Pretrial Order No. 7: Bankruptcy Counsel, ECF No. 119

26. Pretrial Order No. 8: Duties and Authority of Co-Lead Counsel, ECF No. 120
27. Pretrial Order No. 9: Protocol for Common Benefit Work and Expenses, ECF No. 121
28. Monthly Time Reports, ECF No. 121-1
29. Consolidated Complaint, ECF No. 148
30. Administrative Motion for Oral Argument on Fully-Briefed Motion to Remand for Lack of Subject Matter Jurisdiction, ECF No. 172
31. Defendant Robert Mercer's Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities, ECF No. 183
32. Notice of Motion and Motion by Defendant Facebook, Inc. to Dismiss Plaintiffs' Consolidated Complaint, ECF No. 184
33. Memorandum of Law in Support of Motion of Defendant Facebook, Inc. to Dismiss Plaintiffs' Consolidated Complaint, ECF No. 184-1
34. Notice of Joinder in Motion to Dismiss and Reservation of Rights by Non-Prioritized Defendants Mark Zuckerberg and Sheryl Sandberg, ECF No. 188
35. Plaintiffs' Opposition to Motion of Defendant Facebook, Inc. to Dismiss Plaintiffs' Consolidated Complaint, ECF No. 208
36. Plaintiffs' Opposition to Robert Mercer's Motion to Dismiss Plaintiffs' Consolidated Complaint, ECF No. 211
37. Order Requesting Further Supplemental Briefing Regarding Motion to Remand, ECF No. 216
38. Plaintiff's Second Supplemental Brief in Support of Motion to Remand, ECF No. 229
39. Supplemental Memorandum of Law Regarding Plaintiff Cook County's Motion to Remand in Response to the Court's December 6, 2018 Order, ECF No. 230
40. Defendant Robert Mercer's Reply in Support of Motion to Dismiss, ECF No. 233
41. Reply in Support of Motion of Defendant Facebook, Inc. to Dismiss Plaintiffs' Consolidated Complaint, ECF No. 234
42. Pretrial Order No. 14: Order Granting Mercer's Motion to Dismiss, ECF No. 240
43. Pretrial Order No. 15: Order Granting Motion to Remand, ECF No. 241
44. Pretrial Order No. 16: Order Re Hearing on Motion to Dismiss, ECF No. 243
45. Order After Hearing Granting Plaintiffs' Motion to Amend Complaint and Mooting Motion to Dismiss, ECF No. 247
46. First Amended Consolidated Complaint, ECF No. 257
47. Memorandum of Law in Support of Motion of Defendant Facebook, Inc. to Dismiss Plaintiffs' First Amended Consolidated Complaint, ECF No. 261-1
48. Plaintiffs' Opposition to Motion of Defendant Facebook, Inc. to Dismiss Plaintiffs' First Amended Consolidated Complaint, ECF No. 266
49. Reply in Support of Motion of Defendant Facebook, Inc. to Dismiss Plaintiffs' First Amended Consolidated Complaint, ECF No. 267
50. Pretrial Order No. 19: Guidance for Hearing on Motion to Dismiss Amended Complaint, ECF No. 273
51. Plaintiffs' Letter in Response to Court's May 29 Request to Provide Best Cases Re Subsequent Change to the Contract Terms of Service, ECF No. 280
52. Plaintiffs' Letter Identifying Allegations that Facebook Violated Users' Privacy Settings, ECF No. 281
53. Plaintiffs' Amended Letter Identifying Allegations that Facebook Violated Users' Privacy Settings, ECF No. 282

54. Defendants' Letter in Response to Court's May 29 Request to Provide Best Cases Re Subsequent Change to the Contract Terms of Service, ECF No. 283

55. Pretrial Order No. 20: Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint, ECF No. 298

56. Memorandum of Law in Support of Motion of Defendant Facebook, Inc. to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), ECF No. 318-1

57. Plaintiffs' Opposition to Defendant Facebook, Inc.'s Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), ECF No. 324

58. Joint Case Management Statement, ECF No. 326

59. Plaintiff Robert Zimmerman and Uxor Press's Case Management Statement with Regard to Defendant Facebook Inc.'s Administrative Motion to Relate Case No. 3:19-cv-04591-WHO to Case No. 3:18-md-02843-VC, ECF No. 327

60. Reply in Support of Motion of Defendant Facebook, Inc. to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), ECF No. 328

61. Pretrial Order No. 26: Order Denying Motion to Certify for Interlocutory Appeal, ECF No. 330

62. Pretrial Order No. 27: Questions for Case Management Conference, ECF No. 331

63. Plaintiffs' Brief in Response to Pretrial Order No. 28, ECF No. 340

64. Facebook's Supplemental Brief Regarding Proposed Case Schedule, ECF No. 342

65. Pretrial Order No. 30: Denying Facebook's Request to Phase Discovery, ECF No. 347

66. Pretrial Order No. 31: Order Requiring Letter Briefs Re Discovery Deadlines, ECF No. 349

67. Plaintiffs' Letter Responding to Pretrial Order No. 31, ECF No. 353

68. Defendant's Letter Responding to Pretrial Order No. 31, ECF No. 354

69. Pretrial Order No. 32: Case Management Schedule, ECF No. 356

70. Facebook's Answer to Plaintiffs' First Amended Consolidated Complaint, ECF No. 373

71. Stipulation and [Proposed] Order on Discovery Dispute Resolution Procedures, ECF No. 392

72. Stipulation and Order on Discovery Dispute Resolution Procedures, ECF No. 393

73. Plaintiffs' Administrative Motion Pursuant to Civil Local Rule 7-11 Re Participating Counsel Performing Common Benefit Work Related to Plaintiffs' Responses to Discovery, ECF No. 395

74. [Proposed] Order Approving Participating Counsel Performing Common Benefit Work Related to Plaintiffs' Responses to Discovery, ECF No. 395-1

75. Declaration of Cari C. Laufenberg in Support of Plaintiffs' Administrative Motion Re Participating Counsel Performing Common Benefit Work Related to Plaintiffs' Responses to Discovery, ECF No. 395-2

76. Joint Status Update, ECF No. 428

77. Order Approving Participating Counsel Performing Common Benefit Work Related to Plaintiffs' Responses to Discovery, ECF No. 433

78. Joint Status Update, ECF No. 449

79. Pretrial Order No. 38: Granting Motion for Leave to File Second Amended Consolidated Complaint, ECF No. 482

80. Second Amended Consolidated Complaint, ECF No. 491

81. Defendant Facebook, Inc.'s Memorandum of Law in Support of Motion to Dismiss Plaintiffs Naomi Butler and Peter Christley and Motion to Strike from SACC Claims that Have Been Dismissed with Prejudice, ECF No. 503-1

82. Plaintiffs' Opposition to Facebook, Inc.'s Motion to Dismiss Plaintiffs Naomi Butler and Peter Christley and Motion to Strike from SACC Claims that Have Been Dismissed with Prejudice, ECF No. 516

83. Summons in a Civil Action, Stephen K. Bannon, ECF No. 539

84. Defendant Facebook, Inc.'s Reply in Support of Motion to Dismiss Plaintiffs Naomi Butler and Peter Christley and Motion to Strike from SACC Claims that Have Been Dismissed with Prejudice, ECF No. 540

85. Order Granting Motion to Dismiss Plaintiffs Naomi Butler and Peter Christley, ECF No. 571

86. Facebook's Supplemental Answer, ECF No. 576

87. Defendant Facebook, Inc.'s Opening Brief in Support of its Claim of Confidentiality, ECF No. 643

88. Stipulation and [Proposed] Order Regarding Discovery Mediator, ECF No. 644

89. Plaintiffs' Opposition to Facebook Inc.'s Motion in Support of its Claim of Confidentiality, ECF No. 660

90. Block & Leviton LLP's Notice of Motion and Motion for Leave to Intervene and to Unseal, ECF No. 669

91. Stipulation and [Proposed] Order Regarding Withdrawal of Block & Leviton LLP's Motion for Leave to Intervene and Unseal, ECF No. 678

92. Defendant Facebook, Inc.'s Reply Brief in Support of its Claim of Confidentiality, ECF No. 681

93. Joint Letter Regarding Technology Assisted Review Discovery, ECF No. 697

94. Joint Letter Regarding App Development Investigation Discovery, ECF No. 699

95. Pretrial Order No. 40: Order Appointing Special Discovery Master, ECF No. 709

96. Stipulation and [Proposed] Supplemental Order Pursuant to Fed. R. Civ. P. 53 Appointing Special Master, ECF No. 728

97. Consent of Master and Affidavit, ECF No. 728-1

98. Protocol for Resolving Discovery Disputes – Order No. 1, ECF No. 733

99. Stipulation and Supplemental Order Pursuant to Fed. R. Civ. P. 53 Appointing Special Master, ECF No. 734

100. Order Regarding the Use of TAR, ECF No. 742

101. Order Regarding Motion to Compel Mark Zuckerberg Notebooks – Order No. 3, ECF No. 745

102. Order Regarding Production of ADI Related Documents, ECF No. 766

103. Amended Order Regarding Production of ADI Related Document, ECF No. 776

104. Order Re: Facebook's Appeal of Special Master's Order Regarding Depositions of Five Former Named Plaintiffs, ECF No. 805

105. Order Re: Facebook's Appeal of Special Master's Order Regarding ADI Materials, ECF No. 806

106. Order Re: Facebook's Appeal of Special Master's Order Regarding Production of Plaintiff Data, ECF No. 807

107. Pretrial Order No. 41: Amended Order Appointing Special Discovery Master, ECF No. 816

108. Amended Protocol for Resolving Discovery Disputes, ECF No. 821
109. Pretrial Order No. 42: Order Requiring Facebook to Designate Executive Responsible for Discovery Decisions, ECF No. 831
110. Facebook, Inc.'s Disclosure of Executive Pursuant to Pretrial Order No. 42 and Supplemental Case Management Statement, ECF No. 840
111. Plaintiffs' Response to Facebook, Inc.'s Disclosure of Executive Pursuant to Pretrial Order No. 42 and Supplemental Case Management Statement, ECF No. 841
112. Pretrial Order No. 43: Order Re Public Access to Special Master Hearings, ECF No. 859
113. Stipulation and Order Regarding Briefing on Motion for Sanctions, ECF No. 863
114. Opposition of Facebook, Inc., Gibson, Dunn & Crutcher LLP, and Orin Snyder to Plaintiffs' Motion for Sanctions, ECF No. 911
115. Declaration of Orin Snyder in Support of Opposition of Facebook, Inc., Gibson, Dunn & Crutcher, LLP, and Orin Snyder to Plaintiffs' Motion for Sanctions, ECF No. 912
116. Plaintiffs' Reply in Support of Motion for Sanctions, ECF No. 922
117. Notice of Settlement in Principle and Joint Request to Stay Action to Allow Parties to Seek Approval of the Class Action Settlement, ECF No. 1014
118. Plaintiffs' Corrected Notice of Motion, Motion, and Memorandum in Support of Motion for Sanctions, ECF No. 1050-1
119. Plaintiffs' Reply in Support of Motion for Sanctions, ECF No. 1050-2
120. Plaintiffs' Corrected Supplemental Brief in Support of Sanctions, ECF No. 1050-3
121. Plaintiffs' Notice of Lodging of Timelines of Events in Support of Plaintiffs' Motion for Sanctions, ECF No. 1058
122. Timeline of Deposition Issues Related to Plaintiffs' March 1, 2022 30(b)(6) Deposition Notice, ECF No. 1058-1
123. Timeline of Issues Related to Financial Documents, ECF No. 1058-2
124. Timeline of Issues Related to Named Plaintiff Depositions, ECF No. 1058-3
125. Timeline of Document Production Issues Related to Privilege Overdesignation, ECF No. 1058-4
126. Timeline of Discovery Issues Related to Production of Quips, ECF No. 1058-5
127. Timeline of Issues Related to Named Plaintiff Data, ECF No. 1058-6
128. Timeline of Issues Related to ADI Production, ECF No. 1058-7
129. Plaintiffs' Letter Responding to Two Questions the Court Posed at the September 15 Hearing on Sanctions, ECF No. 1061
130. Facebook, Inc., Gibson, Dunn & Crutcher LLP, and Orin Snyder's Brief in Response to the Court's Questions at the September 15, 2022 Hearing, ECF No. 1063
131. Plaintiffs' Supplemental Brief Regarding Fees and Costs Sought as Sanctions, ECF No. 1079
132. Joint Declaration of Derek W. Loeser and Lesley E. Weaver Regarding Fees and Costs Incurred Due to Sanctionable Misconduct, ECF No. 1080
133. Declaration of Steven Elia in Support of Settlement, ECF No. 1094
134. Declaration of Elizabeth Dunphy in Support of Settlement, ECF No. 1095
135. Plaintiffs' Notice of Motion and Motion to Certify a Settlement Class and Grant Preliminary Settlement Approval, ECF No. 1096
136. Declaration of Derek W. Loeser and Lesley E. Weaver in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Pursuant to Federal Rules of Civil Procedure 23(e)(1), ECF No. 1096-1

137. Class Action Settlement Agreement and Release, ECF No. 1096-2

138. Plan of Allocation, ECF No. 1096-3

139. Declaration of Jay C. Gandhi in Support of Preliminary Settlement Approval, ECF No. 1096-4

140. Declaration of Lynn A. Baker in Support of Preliminary Settlement Approval, ECF No. 1096-5

141. Keller Rohrback Firm Resume, ECF No. 1096-6

142. Bleichmar Fonti & Auld Firm Resume, ECF No. 1096-7

143. Compilation of Name Plaintiff Declarations, ECF No. 1096-8

144. Defendant's Statement in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 1097

145. Order Granting in Part Plaintiffs' Motion for Sanctions, ECF No. 1104

146. Notice Regarding Revisions to Proposed Order Granting Preliminary Approval and Proposed Notice of Class Action Settlement, ECF No. 1106

147. Further Notice Regarding Revision to Proposed Order Granting Preliminary Approval, ECF No. 1108

148. Amended [Proposed] Preliminary Approval Order (Redlined), ECF No. 1108-1

149. Amended [Proposed] Preliminary Approval Order, ECF No. 1108-2

150. Order Re Preliminary Approval Hearing, ECF No. 1109

151. State of New Mexico's Motion to Intervene, ECF No. 1111

152. Declaration of Corban S. Rhodes in Support of the State of New Mexico's Motion to Intervene, ECF No. 1111-1

153. Further Notice Regarding Revisions to Proposed Order Granting Preliminary Approval, Proposed Notice of Class Action Settlement, Proposed Claim Form, Proposed Long-Form Notice, and Proposed Short-Form Notice, ECF No. 1114

154. Amended Claim Form (Redlined), ECF No. 1114-1

155. Amended Claim Form, ECF No. 1114-2

156. Second Amended [Proposed] Preliminary Approval Order (Redlined), ECF No. 1114-3

157. Second Amended [Proposed] Preliminary Approval Order, ECF No. 1114-4

158. Second Amended Notice of Proposed Settlement of Class Action (Redlined), ECF No. 1114-5

159. Second Amended Notice of Proposed Settlement of Class Action, ECF No. 1114-6

160. Summary Notice of Settlement (Redlined), ECF No. 1114-7

161. Summary Notice of Settlement, ECF No. 1114-8

162. Plaintiffs' Response to New Mexico's Motion to Intervene, ECF No. 1116

163. Order Denying Motion to Intervene and Inviting Further Briefing, ECF No. 1117

164. Facebook, Inc.'s Preliminary Response to the State of New Mexico's Motion to Intervene, Filed Pursuant to the Court's March 1 Order, ECF No. 1118

165. Notice Regarding Filing of Proposed Opt-Out Form and Objection Form, ECF No. 1122

166. [Proposed] Opt-Out Form, ECF No. 1122-1

167. [Proposed] Objection Form, ECF No. 1122-2

168. Order Denying Motion to Intervene and Inviting Further Briefing, ECF No. 1127

169. Notice in Response to Court's Order Denying Motion to Intervene and Inviting Further Briefing, ECF No. 1128

170. Plaintiffs' Response to Order Denying Motion to Intervene and Inviting Further Briefing, ECF No. 1129

171. Order Certifying Settlement Class; Granting Preliminary Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23(e)(1); and Approving Form and Content of Class Notice, ECF No. 1130
172. Order Re Objections to Class Action Settlement, ECF No. 1131

**B. *Adkins v. Facebook, Inc.*, Case No. 3:18-cv-05982 (N.D. Cal.)**

173. Defendant Facebook, Inc.'s Opposition to Plaintiff's Motion for Attorneys' Fees, Litigation Costs, and Service Award, ECF No. 323
174. Declaration of Melanie M. Blunschi in Support of Defendant Facebook, Inc.'s Opposition to Plaintiff's Motion for Attorney's Fees, Litigation Costs, and Service Award, ECF No. 323-1
175. Holiday Inn Receipt, ECF No. 323-2
176. Plaintiffs' Amended Initial Disclosures Pursuant to Fed. R. Civ. P 26(a)(1)(A), ECF No. 323-3
177. Email Correspondence with Class Counsel, ECF No. 323-4
178. Proportion of Hours Billed by 35 Timekeepers with Highest Billing Rates, ECF No. 323-5
179. Fees Associated with Task Codes Relating to Expert Witnesses, ECF No. 323-6
180. Application of Discounts Proposed in Opposition Brief to Class Counsel's Lodestar, ECF No. 323-7
181. Class Counsel's Proposed Costs & Facebook's Proposed Reductions, ECF No. 323-8

**C. *Price v. Facebook, Inc. et al*., Case No. 3:18-cv-01732 (N.D. Cal.)**

182. Class Action Complaint, ECF No. 1
183. Plaintiff Schinder's Administrative Motion to Consider Whether Cases Should Be Related Under Local Rule 3-12(e), ECF No. 48

**D. *U.S. v. Facebook, Inc.*, Case No. 1:19-cv-02184 (D.D.C.)**

184. Complaint for Civil Penalties, Injunction, and Other Relief, ECF No. 1
185. Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief, ECF No. 2-1

**E. *D.C. v. Facebook, Inc.*, Case No. 2018-CA-008715 (D.C. Super. Ct.)**

186. Complaint for Violations of the Consumer Protection Procedures Act, filed 12/19/2018
187. Order Granting Facebook, Inc.'s Motion for Summary Judgment, filed 6/1/2023

# EXHIBIT C

*In re: Facebook, Inc. Consumer Privacy User Profile Litigation*
Case No. 3:18-MD-02843-VC
U.S. District Court for the Northern District of California
San Francisco Division

## EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

EXHIBIT C
Northern District of California Class Actions Terminated in 2022
With Fee Awards Explicitly Affirming Hourly Rates

1.  *AdTrader, Inc. v. Google LLC*, No. 5:17-cv-07082 (N.D. Cal. Nov. 1, 2022), ECF No. 407.

2.  *Barreras v. Wells Fargo Bank, N.A.*, No. 5:21-cv-00071 (N.D. Cal. Dec. 8, 2021), ECF No. 133.

3.  *Bautista v. Juul Labs, Inc.*, No. 4:20-cv-01613 (N.D. Cal. Jun. 22, 2022), ECF No. 149.

4.  *Camarlinghi v. Santa Clara County*, No. 5:21-cv-03020 (N.D. Cal. Dec. 16, 2022), ECF No. 84.

5.  *Cameron v. Apple Inc.*, No. 4:19-cv-03074 (N.D. Cal. Jun. 10, 2022), ECF No. 491.

6.  *Chinitz v. Intero Real Estate Services*, No. 5:18-cv-05623 (N.D. Cal. Oct. 28, 2022), ECF No. 305.

7.  *Durham v. Sachs Electric Co.*, No. 5:18-cv-04506 (N.D. Cal. Jun. 27, 2022), ECF No. 121.

8.  *Fleming v. Impax Laboratories Inc.*, No. 4:16-cv-06557 (N.D. Cal. Jul. 15, 2022), ECF No. 133.

9.  *Foster v. Adams and Associates, Inc.*, No. 3:18-cv-02723 (N.D. Cal. Feb. 11, 2022), ECF No. 244.

10. *Gillard v. Volkswagen Group of America, Inc.*, No. 4:17-cv-07287 (N.D. Cal. Sept. 12, 2022), ECF No. 150.

11. *Hubbard v. Henkel Corp.*, No. 4:19-cv-04346 (N.D. Cal. Jul. 25, 2022), ECF No. 51.

12. *In re Aqua Metals, Inc. Securities Litigation*, No. 4:17-cv-07142 (N.D. Cal. Mar. 2, 2022), ECF No. 182.

13. *In re Google Inc. Street View Electronic Communications Litigation*, No. 3:10-md-02184 (N.D. Cal. Mar. 18, 2020), ECF No. 211.

14. *In re Plaid Inc. Privacy Litigation*, No. 4:20-cv-03056 (N.D. Cal. Jul. 20, 2022), ECF No. 184.

15. *In re Zoom Video Communications, Inc. Privacy Litigation*, No. 3:20-cv-02155 (N.D. Cal. Apr. 21, 2022), ECF No. 249.

16. *Junkersfeld v. Per Diem Staffing Systems, Inc.*, No. 4:18-cv-07795 (N.D. Cal. Sept. 12, 2022), ECF No. 100.

17. *Kudatsky v. Tyler Technologies*, No. 3:19-cv-07647 (N.D. Cal. Nov. 17, 2021), ECF No. 137.

18. *Merante v. American Institute for Foreign Study, Inc.*, No. 3:21-cv-03234 (N.D. Cal. Dec. 20, 2022), ECF No. 61.

19. *Norton v. LVNV Funding, LLC*, No. 4:18-cv-05051 (N.D. Cal. Feb. 24, 2022), ECF No. 150.

20. *Nucci v. Rite Aid Corp.*, No. 3:19-cv-01434 (N.D. Cal. May 26, 2022), ECF No. 136.

21. *Parker v. Cherne Contracting Corp.*, No. 4:18-cv-01912 (N.D. Cal. Dec. 9, 2021), ECF No. 110.

22. *Ramirez v. Trans Union, LLC*, No. 3:12-cv-00632 (N.D. Cal. Dec. 15, 2022), ECF No. 428.

23. *Rodriguez v. Nike Retail Services, Inc.*, No. 5:14-cv-01508 (N.D. Cal. Jan. 27, 2022), ECF No. 166.

24. *Roe No. 1 and 2 v. Deja Vu Services, Inc.*, No. 3:19-cv-03960 (N.D. Cal. Nov. 29, 2022), ECF No. 130.

25. *Rollins v. Dignity Health*, No. 4:13-cv-01450 (N.D. Cal. Jul. 15, 2022), ECF No. 320.

26. *Samora v. Chase Dennis Emergency Medical Group, Inc.*, No. 5:20-cv-02027 (N.D. Cal. Jul. 29, 2022), ECF No. 83.

27. *Sica v. Construction & Turnaround Services, L.L.C.*, No. 4:21-cv-00188 (N.D. Cal. Jan. 7, 2022), ECF No. 42.

28. *Sica v. Madison Industrial Services Team, Limited Partnership*, No. 4:20-cv-08347 (N.D. Cal. Aug. 10, 2022), ECF No. 47.

29. *Taylor v. The Board of Trustees of the Leland Stanford Junior University*, No. 4:18-cv-05248 (N.D. Cal. Apr. 18, 2022), ECF No. 87.

30. *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744 (N.D. Cal. Mar. 17, 2022), ECF No. 303.

31. *Vianu v. AT&T Mobility LLC*, No. 3:19-cv-03602 (N.D. Cal. Nov. 8, 2022), ECF No. 164.

32. *Villatoro v. Walters & Wolf Interiors*, No. 4:20-cv-00609 (N.D. Cal. Mar. 4, 2022), ECF No. 55.

33. *Wilson v. Wholesome Harvest Baking, LLC*, No. 4:20-cv-05186 (N.D. Cal. Sept. 14, 2022), ECF No. 53.