# EXHIBIT 4

# Modified Redacted Version of Dkt. 1115-2

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No.
238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 629-90067
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br> Defendant. | Case No.: 4:20-cv-03664-YGR-SVK <br><br> **PLAINTIFFS' REPLY ISO MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS (DKTS. 1106-1007)** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Date: August 7, 2024 <br> Time: 2:30 p.m. <br> Location: Courtroom 1 – 4th Floor |

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ....................................................................................... 1

II.    ARGUMENT ............................................................................................. 2

       A.     A 3.5X MULTIPLIER IS APPROPRIATE................................................ 2

              1.     Contingent Nature of the Case ................................................. 4

              2.     Importance of the Case, and the Difficulties of Litigating It ................. 5

              3.     Class Counsel's Success, and the Value of the Relief............................. 6

       B.     CLASS COUNSEL'S LODESTAR SUPPORTS THE FEE REQUEST. ............. 8

              1.     Class Counsel's Hourly Rates Are Reasonable........................................ 8

              2.     Class Counsel's Total Hours Are Reasonable......................................... 9

       C.     PLAINTIFFS' COSTS ARE REASONABLE AND REIMBURSABLE. ............. 14

       D.     PLAINTIFFS' COMMITMENT TO THE CASE MERITS $30,000 SERVICE AWARDS. .. 15

III.   CONCLUSION ........................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4
*Adkins v. Facebook, Inc.*,
  2021 WL 1817047 (N.D. Cal. May 6, 2021)...........................................................................3
5

*Banas v. Volcano Corp.*,
6
  47 F. Supp. 3d 979 (N.D. Cal. 2014)......................................................................................15

7
*Campbell v. Facebook Inc.*,
  2017 WL 3581179 (N.D. Cal. Aug. 18, 2017)......................................................................11
8

9
*In re Cap. One Consumer Data Sec. Breach Litig.*,
  2022 WL 17176495 (E.D. Va. Nov. 17, 2022) .......................................................................4
10

*Congdon v. Uber Techs., Inc.*,
11
  2019 WL 2327922 (N.D. Cal. May 31, 2019) (Gonzalez Rogers, J.)...................................12

12
*Deanda v. Sav. Inv., Inc.*,
  2006 WL 8443522 (S.D. Cal. June 8, 2006) .........................................................................14
13

14
*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
  2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) .........................................................................9
15

*Gaston v. LexisNexis Risk Sols. Inc.*,
16
  2021 WL 2077812 (W.D.N.C. May 24, 2021)........................................................................3

17
*Hanrahan v. Statewide Collection, Inc.*,
  2022 WL 3998565 (9th Cir. Sept. 1, 2022)...........................................................................14
18

19
*Iswed v. Caruso*,
  2013 WL 12093132 (W.D. Mich. Feb. 14, 2013) .................................................................11
20

*John Meggs v. Gomez*,
21
  2018 WL 11355448, at *3 (N.D. Cal. 2018) .........................................................................15

22
*Krumme v. Mercury Ins. Co.*,
  123 Cal. App. 4th 924 (2004)..................................................................................................3
23

24
*LeBlanc-Sternberg v., Fletcher*,
  143 F.3d 748, 758 (2d Cir. 1998) ............................................................................................6
25

*Lowery v. Rhapsody Int'l, Inc.*,
26
  75 F.4th 985 (9th Cir. 2023).....................................................................................................7

27
*Matera v. Google LLC*,
  2018 WL 11414641 (N.D. Cal. Feb. 9, 2018) .......................................................................4
28

*MGMTL v. Strategic Tech.*,
    2023 WL 9229133 (E.D. La. Dec. 4, 2023) ....................................................................15

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ...................................................................10, 12, 13

*O'Bannon v. NCAA*,
    2016 WL 1255454 (N.D. Cal. Mar. 31, 2016) .............................................................15

*O'Neal v. City of Seattle*,
    66 F.3d 1064 (9th Cir. 1995) ........................................................................................11

*Pierce v. Cnty. of Orange*,
    905 F. Supp. 2d 1017 (C.D. Cal. 2012) ........................................................................3

*Red v. Kraft Foods Inc.*,
    680 F. App'x 597 (9th Cir. 2017) .................................................................................3

*Ridgeway v. Wal-Mart*,
    269 F. Supp. 3d 975 (N.D. Cal. 2017) .......................................................................13

*Rodgers v. Claim Jumper Rest., LLC*,
    2015 WL 1886708 (N.D. Cal. Apr. 24, 2015) (Gonzalez Rogers, J.) ....................................11

*St. Louis Police Retirement System v. Severson*,
    2014 WL 3945655 (N.D. Cal. Aug. 11, 2014) (Gonzalez Rogers, J.) ..............................3, 11

*Stathakos v. Columbia Sportswear Co.*,
    2018 WL 1710075 (N.D. Cal. Apr. 9, 2018) (Gonzalez Rogers, J.) ..........................3, 11, 12

*del Toro Lopez v. Uber*,
    2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) (Gonzalez Rogers, J.) .................................15

*In re Twitter Inc. Sec. Litig.*,
    2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ...........................................................15

*Z.F. v. Ripon*,
    2017 WL 1064679 (E.D. Cal. Mar. 21, 2017)...........................................................4, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Having refused to entertain settlement until after this Court denied Google's motion for summary judgment, Google now criticizes Class Counsel for spending the hours necessary to prepare the case for trial. Having concealed evidence and flat-out lied to the Court and Counsel about what it was actually doing, Google now criticizes Class Counsel for spending the hours necessary to uncover the facts and twice secure the entry of evidentiary sanctions. Having repeatedly asserted that the remedy Plaintiffs sought would be incredibly burdensome and even impossible, Google now says that relief was insignificant. Having admitted that Plaintiffs' lawsuit was not only the cause of the substantial relief represented by the Settlement Agreement but a catalyst for the earlier changes Google made after this case was filed, Google now tries to spin Plaintiffs' efforts as meaningless. On the eve of trial, facing evidentiary sanctions and the devastating testimony of an internal whistleblower, Google briefly appeared to take responsibility for its misconduct. Unfortunately, Google now reverts to its pattern of misrepresentations and doublespeak.

This was an excellent settlement for the class, with Class Counsel's significant commitment of time and money resulting in (1) substantially broader data deletion and remediation than what Google claimed was necessary, which addressed Analytics logging, (2) revised disclosures implemented prior to final approval, (3) important limits on Google's data collection, and (4) the destruction of private browsing bits that Google previously concealed.

Google's attempts at distortion provide no basis for its false representations and personal attacks. Google for example attacks Class Counsel for "disproven linking theories" – joining Incognito or private browsing data with normal browsing. But discovery *supported* those allegations, such as deposition testimony from Google whistleblower Blake Lemoine:

> Q.    If Google were to say that it never joins anyone's [I]ncognito or private browsing history with their normal Chrome account, would that be true or false?
> A.    That would be false…***they do it everyday***.

Ex. 17 to Supp'l Mao Decl. ("Ex.") at 179. It is no coincidence that Google agreed to settle immediately after Mr. Lemoine testified, with Plaintiffs ready to expose Google's lies at trial.

1    Google also stoops to hoping to embarrass Class Counsel over small costs, highlighting an Uber

2    ride to an alleged "day spa" (it wasn't, it was a restaurant) and a trip involving a "karaoke" bar,

3    ignoring that Mr. Lemoine requested to meet in a place where he would not be seen or heard.

4         What remains of the Opposition are half-hearted challenges. Google objects to the

5    (already discounted) hourly rates for a subset of attorneys who helped with document review,

6    relying on a misleading comparison between 20-year veterans at one firm and junior lawyers at

7    another. Other head-scratching objections include complaints about lawyers working "12-hour

8    days" and criticizing a lawyer for "reviewing documents" to prepare for a deposition she took.

9    Most egregious, Google double and even triple counts time entries it challenges, vastly inflating

10   the amount it seeks to deduct from the lodestar. No deductions are warranted.

11   **II.    ARGUMENT**

12        **A.    The 3.5X Multiplier Requested Is Appropriate.**

13        Google does not contest the Court's authority to award a multiplier. Google also does not

14   contest how, under California law, the "range of acceptability" for multipliers is "2 to 4 or even

15   higher." Mot. at 18 (quoting *Uphold our Heritage v. Town of Woodside*, 2008 WL 4868816, at

16   *7 (Cal. Ct. App. Nov. 12, 2008), which affirmed a multiplier for non-monetary relief).

17        Google mostly relies on a submission from Prof. Rubenstein to attack the multiplier.[1] He

18   first references 72 cases that he claims support Google (Supp'l Br. ¶¶ 7, 10), but he later

19   backtracks and admits that 68 of those cases are not "on point" because they lack the "particular

20   fact present here: the successful certification of a (b)(2) class." *Id.* ¶ 9. It is the remaining *four*-

21   case sample on which he grounds his opinion that awarding a multiplier would make this case an

22   "outlier." *Id.* ¶ 10. Equally unfounded is his claim that the relief obtained is "limited" (*id.* ¶ 20);

23   he is not qualified to evaluate Google's data systems. His opinions are lawyer spin, really meant

24   to help Google add citations beyond its page limit—not expert work.

25        Google's primary brief fares no better. It acknowledges the cases where courts have

---

[1] While he disclaims any desire "to tell the Court what the law is," Rubenstein argues at length about the cases most "on point," even distinguishing Plaintiffs' cases as not "instructive" or not "relevant." Supp'l Br. ¶¶ 4, 7-10 & n.6. That is impermissible legal argument.

awarded multipliers for injunctive relief, including where the plaintiffs tried and failed to secure monetary relief. Opp'n at 17 (discussing cases cited in Mot. at 17-18, where courts awarded multipliers of 3X, 2.15X, 2X, 1.85X. and 1.5X). Google says those cases are different because they were resolved early on, but that ignores Google's admission that it was unwilling to entertain settlement until *after* this Court denied summary judgment. Dkt. 1097-3 at 2.

Moreover, as this Court explained in *St. Louis Police v. Severson*, "particularly protracted litigation" *supports* a higher multiplier. 2014 WL 3945655, at *5 (N.D. Cal. Aug. 11, 2014) (1.5X multiplier for non-monetary settlement). One reason this Court declined to award an even higher multiplier in *Severson* was because that case settled before discovery, and counsel did not expend much "effort." *Id.* at *6. Here, Counsel appropriately seeks a higher multiplier after four years litigating, including extensive discovery and two rounds of sanctioned misconduct.[2] Google also misses the key part of *Krumme*, nowhere grappling with how it upheld a multiplier (over defendant's objection) where plaintiff "began by seeking restitution but ended up with only injunctive relief." *Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924, 947 (2004). Class Counsel here seeks a multiplier because they also achieved "a significant objective of the lawsuit." *Id.*

The cases Google cites are inapposite. In *Adkins*, the defendant "voluntarily adopted most of" the at-issue relief *before* the settlement, and so "the only truly novel element of the settlement agreement" was the "involvement of the court" and "an independent monitor." *Adkins v. Facebook, Inc.*, 2021 WL 1817047, at *6 (N.D. Cal. May 6, 2021). Yet the court refused to apply a negative multiplier, illustrating the absurdity of Google's request.[3] Google's focus on recently filed individual damages cases is also misplaced. No time spent on this case will be included in

---

[2] *See also Gaston v. LexisNexis Risk Sols. Inc.*, 2021 WL 2077812, at *7 (W.D.N.C. May 24, 2021) (following unsuccessful attempt to obtain classwide damages, awarding multiplier for (b)(2) settlement, including because counsel spent "large amounts of time and labor" on the case).
[3] In *Kraft Foods*, the plaintiffs "failed three times to certify a class" of any kind, and the defendant "stopped using most of the [challenged] phrases before [the] lawsuit was filed." *Red v. Kraft Foods Inc.*, 680 F. App'x 597, 599 (9th Cir. 2017). The relief in *Stathakos* was limited to product labeling changes. *Stathakos v. Columbia Sportswear Co.*, 2018 WL 1710075, at *1 (N.D. Cal. Apr. 9, 2018) (Gonzalez Rogers, J.). In *Pierce*, the plaintiffs lost many of their claims on the merits. *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1042 (C.D. Cal. 2012).

any fee request in those cases. Any concerns over "future" recovery are also "speculative," especially since Google intends to vigorously contest those cases. *Z.F. v. Ripon*, 2017 WL 1064679, at \*8 (E.D. Cal. Mar. 21, 2017). The multiplier is warranted here for three reasons:

### 1.  Contingent Nature of the Case.

Google criticizes Judge Koh's decision in *Matera*, where she explained that courts "**must apply** a risk multiplier to the lodestar" when three factors are met. *Matera v. Google LLC*, 2018 WL 11414641, at \*5 (N.D. Cal. Feb. 9, 2018) (injunctive-only settlement); Mot. at 18. Without applying those factors, Google claims that risk multipliers are only required in common-fund cases. The cases Google cites nowhere provide that limitation. Opp'n at 22. In any event, Google concedes that contingency risk usually supports a multiplier even if it doesn't mandate one.

Google has no response to how "the nature of this case [] made it far riskier than most contingency cases," particularly given the perfect storm of an ever-developing area of law, complex facts requiring significant expert discovery, and a wealthy adversary. Mot. at 19. Google also ignores *In re Cap. One Consumer Data Sec. Breach Litig.*, 2022 WL 17176495, at \*5 (E.D. Va. Nov. 17, 2022), which teaches that "public policy favors a significant award of attorneys' fees above what Class Counsel would have charged on an hourly fee basis." Mot. at 19. That is particularly true where, as here, two of the firms routinely work for fee-paying clients. *Id.* The fact that three firms "teamed up" to work this case (Opp'n at 22) does not make the case any less risky. Google cites no case law decreasing a fee award on that basis, nor would it make sense to do so. As the billing records reflect, all three firms contributed substantial attorney time and money, each bringing substantial expertise to this complicated case.

Finally, accepting Google's "policy" arguments would punish lawyers who successfully secure (b)(2) certification and then seek the best result through continued litigation—a particularly unfair outcome given Google's refusal to entertain settlement until after summary judgment. Opp'n at 23; Supp'l Br. ¶¶ 11-13; Dkt. 1097-3 at 2. Lawyers should be encouraged to pursue "important changes to reflect transparency in the system"—not discouraged. Dkt. 803 (Cert. Order) at 34. Prof. Rubenstein's statement about "disinentiviz[ing] weak claims" (Supp'l

1   Br. ¶ 13) is especially inapposite here, where Plaintiffs survived all dispositive motions.

2              2.       *Importance of the Case, and the Difficulties of Litigating It.*

3          Google implies there was no need for discovery into how Google collects, stores, and

4   uses the data because Google "admitted at the outset that it collects" the data and so the case

5   should have focused on "consent." Opp'n at 21. Whoever wrote that is unfamiliar with the 300-

6   page jury instructions, where Google contested virtually every element of every claim. Dkt. 1057.

7          Plaintiffs reasonably sought discovery to refute the many arguments Google raised

8   throughout the case. Google for example argued that Plaintiffs lacked standing because the data

9   is "orphaned" and "never associated with users' identifies" (Dkt. 908 at 9), but this Court rejected

10  that argument in part because "plaintiffs set forth evidence that Google does store their data with

11  unique identifiers." Dkt. 969 at 11; *see also id.* at 35 (rejecting Google's arguments on "highly

12  offensive," including because "plaintiffs have proffered evidence that the data collected here is

13  vast and sensitive"). Google also argued that private browsing data does not amount to the

14  "contents" of communications (Dkt. 908 at 19), another argument this Court rejected based on

15  evidence uncovered by Counsel, including data from the Special Master process, Dkt. 969 at 26.

16         Plaintiffs repeatedly uncovered discovery that undermined Google's representations

17  about the data, ***including false representations to the Court***. Taking just three examples:

18
| Google Representation | Reality |
|---|---|
| January 13, 2021 Letter from Google: "[T]here are no logs or other documents that separately identify data collected through Ad Manager or Analytics from users in private browsing mode." Ex. 18 at 2. | May 2022 Sanctions Order: "In this letter, Google fails to acknowledge that Google had been logging the 'is_chrome_incognito' and 'is_chrome_non_incognito' fields since 2017. ... Google's representations [] were incomplete and therefore misleading." Dkt. 588-1 ¶¶ 67, 69. |
| April 29, 2021 Representation from Google at Discovery Hearing: Google's "logs are internally segregated by whether you're logged into a Google account or aren't." Dkt. 1107-14 at 16:15-22. | May 2023 Summary Judgment Order: "Plaintiffs have evidence that Google stores users' regular and private browsing data in the same logs." Dkt. 969 at 11; *see also* Dkt. 898 at 13-14 (sanctioning Google for concealing this ▮▮▮▮▮). |
| November 29, 2023 Pretrial Conference: "Nothing that Mr. Lemoine can testify to will cut what Google is saying or destroy our defense." Ex. 19 at 82:18-83:13. | Lemoine Deposition: Google "reidentif[ies] users when they're in private browsing mode" and "join[s] a user's private browsing histories with their normal Chrome account." Ex. 17 at 203. |

27  Discovery was never going to be limited to "consent" (Opp'n at 21), and Class Counsel should

28
                                                    5

1    be rewarded—not criticized—for vigorously pursuing discovery to refute Google's arguments.

2        As for the importance of the case, look no further than the recent Congressional letter to

3    Google regarding Incognito mode, asserting that "[r]ecent litigation" (this litigation) calls certain

4    Google statements "into question." Ex. 20. Google for years denied tracking users in Incognito

5    mode, including to the press (*e.g.*, Ex. 21), and Plaintiffs had to uncover the truth by cutting

6    through Google's scorched-earth litigation tactics.

7                    3.    *Class Counsel's Success, and the Value of the Relief.*

8        Google ignores *LeBlanc-Sternberg v. Fletcher*, which instructs that "where both

9    monetary and equitable relief have been pursued, the size of the monetary recovery is not

10   necessarily the proper measure of the plaintiff's success." 143 F.3d 748, 758 (2d Cir. 1998) (cited

11   in Mot. at 20), "When a plaintiff obtains an injunction that carries a systemic effect of importance

12   or serves a substantial public interest, a substantial fee award may be justified." *Id.* at 760.

13       **Deletion and remediation**: Google does not contest this relief implicates *billions* of

14   records and applies to "every relevant data source identified through the Special Master process."

15   Mot. at 21 (citing Thompson Decl., Dkt. 1097-17). Nor does Google grapple with how this

16   framework accounts for Google's (erroneous) claim that it cannot identify private browsing data:

17   Class Counsel for that reason ensured the deletion is *over-inclusive*, thus guaranteeing

18   remediation of "100% of the data set at issue." Dkt. 1097-1 at 11 & n.5. Google has no response

19   to this because Google never claimed that it cannot "search and destroy" private browsing records

20   (as demonstrated by Plaintiffs and their experts); instead, Google agreed to over-inclusive

21   deletion as a matter of burden and cost. Supp'l Mao Decl. ¶¶ 4-6.

22       Google's assertion that this relief is "limited" to "legacy" data (Opp'n at 2, 19) is PR-

23   nonsense. As one example, Blake Lemoine explained how Google uses the data for AI. Ex. 17 at

24   203:2-10. More broadly, Google does not allow useless data to sit around. The docket is littered

25   with Google filings seeking relief from its preservation obligations, repeatedly complaining that

26   it is unduly burdensome to retain data it no longer uses. Dkts. 119, 543, 559, 591, 646, 782, 806.

27   Tellingly, Google routinely sought to seal such details relating to its surreptitious tracking, while

28                                            6

now claiming that its falsities were in the open and with consent. Clearly, Congress disagrees. Ex. 20. Even the employee tapped to write the supporting declaration would only say the deleted data is not "critical" to Google's business (whatever that means). Opp'n at 8.

Google also ignores substantial evidence proving the identifying nature of private browsing data. Mot. at 12. The remediation will make it more difficult to determine who the data came from and what they were browsing, including because it addresses specific aspects of what makes the data identifying. Google's assertion that Analytics logs are omitted is false. Google Analytics writes onto multiple sources, including Ad Manager logs, which were included in the remediation plan, and Google has represented—as part of the settlement—that it would sunset the products and remaining "Analytics log." Dkt. 1097-3 at Ex. C; Mao Supp'l Decl. ¶¶ 7-8.

Google's contention that the value of this relief "is neither quantifiable nor large" (Opp'n at 20) makes no sense (those two are mutually exclusive). Tellingly, Google raises no concrete dispute about Plaintiffs' valuation, nor challenge that remediation of billions of events reflecting the most intimate moments for 136 million class members may be more meaningful than a few dollars for each claimant. Mot. at 23. Plaintiffs have provided "considerable benefit to society through nonmonetary relief." *Lowery v. Rhapsody Int'l*, 75 F.4th 985, 994-95 (9th Cir. 2023).

**Changes to Google's disclosures**: Google tries to downplay these changes as "modest" (Opp'n at 7), but that claim is belied by the evidence, which Google does not address. Dkt. 1097-1 at 9-10. Employees for years demanded changes, including as far back as 2013, but executives resisted despite acknowledging to one another that the disclosures are "really fuzzy" and "hedging." *Id.* No more. Google's claim that most users were already aware of this now-disclosed practice is belied by its counsel's own admission that, in Google's best case, "tens of millions" had been deceived. Dkt. 1107-4 at 14:19-20 (quoting Google's counsel). Google also overlooks public statements in which it previously "deni[ed] tracking users of 'incognito.'" Ex. 21.

**Limits on future data collection**: Google agreed this case was "a substantial catalyst" for Google's "deployment" of this feature. Dkt. 1097-3 at 9. Perhaps only now understanding the implication for attorneys' fees, Google tries to rewrite that provision, contending that any catalyst

1   credit must be limited to deploying this feature "*slightly earlier than planned*." Opp'n at 20. That

2   is nonsense: the binding Settlement makes no mention of this. Dkt. 1097-3 at 9. Moreover,

3   Google has suppressed changes that impact profits (Dkt. 1097-1 at 9-10), and there is no

4   guarantee this feature *then in testing* would have been (or remained) "rolled out" due to corporate

5   greed. Now that "deployment" is mandatory—for five years—Google cannot walk back what it

6   has agreed to by the clear terms of the Settlement. Plaintiffs correctly seek consideration of the

7   value of this relief. Mot. at 23 (citing cases). Google does not even try to explain why their

8   valuation is overstated or wrong. Nor could Google, given that Plaintiffs ground their valuation

9   on expert testimony addressing internal Google financial analyses about this exact feature.

10          **Removal of private-browsing detection bits**: Relying on witnesses whom Magistrate

11  Judge van Keulen *excluded* from the case,[4] Google seeks to trivialize this relief, asserting these

12  bits have not been "used" in many years. Opp'n at 8. The record again undermines Google. As

13  explained in the March 2023 Sanctions Order, Google as recently as June 2022 (after the first

14  Sanctions Order) identified " ███ additional logs containing" these bits, including ███████████

15  ████████████████   ███████████  and  ██████████  Dkt. 898 at 5. This is important

16  relief for class members, where Google for many years—and in this litigation—falsely

17  represented that it did not track private browsing and could not identify such data as "private."

18          **B.      Class Counsel's Lodestar Supports the Fee Request.**

19          In addition to seeking a lower (or negative) multiplier, Google levels baseless attacks on

20  Class Counsel's lodestar. Class Counsel removed certain entries as duplicates (Dkt. 1110), and

21  the remaining lodestar ($62,265,047.70) is based on reasonable rates and hours worked.

22                  1.      *Class Counsel's Hourly Rates Are Reasonable.*

23          Google's only challenge to Counsel's hourly rates is the $676 rate for seven experienced

24  Morgan & Morgan ("MM") attorneys who in part assisted with reviewing documents. Opp'n at

25  11-12; Dkt. 1107-5 at 2 (listing these attorneys). These seven attorneys are MM employees, so

26  Google's "at-cost" critique is baseless. Yanchunis Supp'l Decl. ¶ 8. Google's request to reduce

27  ────────────────

28  [4] *See* Dkt. 588-1 at 40 (barring Google from relying on Leung or Liao "for any purpose").

their rates to $387.50 as the so-called "mid-point of their co-counsel's reviewer rates" relies on an apples-to-oranges comparison. The "co-counsel" rates belong to more junior SG and BSF staff attorneys.[5] Google also disregards the MM attorneys' substantial experience working on technical cases. Even still, Class Counsel already substantially discounted these MM attorneys' normal hourly rates (Mot. at 8; Dkt. 1107-22 ¶¶ 8, 16), and the reduced $676 rate applies to non-document review tasks as well (like motion to dismiss work), making any further reduction unwarranted (*e.g.*, Broome Ex. 3, Tab 1, 4/22/21, Entry 198).

Google barely grapples with Class Counsel's explanation of why they tapped more experienced attorneys to help review documents and quickly prepare for depositions, with Google producing 700,000 just months before the close of discovery. Mot. at 8. Google's only response is that the "vast majority" of documents "used" by Plaintiffs are "ordinary emails and chats." Opp'n at 12. Whoever wrote that never read Plaintiffs' expert reports, which synthesized troves of dense technical Google documentation and deposition transcripts discussing that documentation. *E.g.*, Dkts. 608-11, 608-12, 990-1; 608-9 (technical and damages reports). Google's proposal of $387.50 is also far less than what its counsel charges for paralegals. Dkt. 1107-19 at 3 (Quinn Emanuel fee petition seeking $455 hourly rate for paralegal work).

> ### 2.    *Class Counsel's Total Hours Are Reasonable.*

> #### a.    Google Does Not Engage with the Total Hours Data.

Google mostly ignores the Motion's discussion of why Counsel's 78,636.3 total hours are reasonable. Mot. at 9-17. Google skips over the chart illustrating how this total is similar to (and sometimes much lower than) comparable class cases that settled on the eve of trial (or sooner). Mot. at 11-12. Google's sole response is these cases are different because the settlements had monetary components (Opp'n at 20), but that argument misses the point of why these cases were cited. Mot. at 11-12 (citing, *e.g.*, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 8445812 (N.D. Cal. Oct. 10, 2023)). For example, the *Facebook* court characterized class counsel's 149,928 hours as "reasonable," and that case (i) settled during discovery—even

---

[5] Dkt 1107-21 ¶¶ 60-66 (SG); Dkt. 1107-20 ¶¶ 57-60 (BSF); Dkt. 1107-22 ¶¶ 8, 16 (MM).

before expert reports were served and (ii) included fewer depositions. Mot. at 10-11; Ex. 22 at 2 (Rubenstein opining those hours were "reasonable"). Class Counsel here did far more work on roughly half the hours. Counsel's hours here are also conservative because they do not seek compensation for the hundreds of hours they have spent or will spend responding to Google's questions, drafting this Reply, preparing for the hearing, and ensuring Google's compliance.

Google also mostly ignores how its obstructionist approach to discovery increased Class Counsel's workload. Mot. at 12-15. Google suggests that sanctions "are already accounted for" because Google paid attorneys' fees "incurred in those proceedings" (Opp'n at 5 n.5), but that award applied only to the first sanctions motion (Dkt. 631) and only to briefing and arguing the motion. It did not compensate counsel for time pursuing discovery—which was more complicated, time consuming, and expensive because of Google's sanctioned misconduct.

b.    Google's Selective Billing Challenges Are Unreliable.

Unable to argue that Class Counsel's total hours are unreasonable, Google just nitpicks their records. Opp'n at 12-15; Broome Ex. 3 (spreadsheet with Google's cuts). Combining all of its challenges, Google seeks an over 33% reduction in Class Counsel's lodestar. Broome Ex. 1. That number alters the analysis. "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). For any reduction higher than 10%, Google bears "the burden" of "com[ing] up with specific reasons for reducing the fee request," and if it fails to meet that burden, the court "should normally grant the award in full, or with no more than a haircut." *Id.* at 1116.

Google's failure is spectacular. ***Most egregiously, Google double-counts various entries, cutting the same amounts twice or three times and so on***. See Ex. 23 for a list of these duplicate cuts, which resulted in Google over-stating its challenges by many millions. Even if Google had not relied on duplicated counting, its proposed cuts should still be rejected, for each category.

"Vague Entries": "[P]laintiff's counsel can meet his burden of justifying his fees by simply listing his hours and identify[ing] the general subject matter of his time expenditures."

*Rodgers v. Claim Jumper Rest., LLC*, 2015 WL 1886708, at *10 (N.D. Cal. Apr. 24, 2015) (Gonzalez Rogers, J.). Here, Class Counsel provided far more granular information, submitting detailed time entries for each task. The entries Google challenges are nothing like the entries addressed in the cases it cites. *Compare* Broome Ex. 3, Tab 4, 8/16/21, #5259 (challenging entry for "Attending call with damages experts to discuss discovery"), *with Severson*, 2014 WL 3945655, at *3 (addressing entry that said "email counsel" "without any further descriptor").

"Clerical Tasks":[6] Google's entries are nothing like the "purely secretarial" work in its cases. Opp'n at 12 (citing *Rodgers*, 2015 WL 1886708, at *8); Broome Ex. 3, Tab 4. For example:

- Coordinate exhibit selection and upload for Porter Felt deposition. 11/15/21, #8826 (associate who second-chaired that deposition, the next day).

"Time Related to Rules 23(b)(3), 23(f), and 23(c)(4)": Google's argument amounts to more double-counting. If hours spent pursuing damages are stricken from the case, it makes no sense for Google to oppose a multiplier on the ground that Plaintiffs did not secure damages.

In any event, Google admits that courts have "rejected" similar requests to "automatically" deduct time where a party did not obtain monetary relief but did secure injunctive relief. Opp'n at 16 n.11; *see* Mot. at 15-16. No reduction is warranted because damages-certification work is "not a separate claim, but rather a method of pursuing [Plaintiffs'] ultimately successful claims." *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995); *see also Ripon*, 2017 WL 1064679, at *5 (no reduction because "[t]he class certification motion was based on common issues and facts relating to the litigation"). The cases Google cites do not support its position.[7]

Google's cuts are particularly misguided because "requests for monetary damages and injunctive relief largely overlap and are not easily separated." *Iswed v. Caruso*, 2013 WL 12093132, at *4 (W.D. Mich. Feb. 14, 2013). The entries challenged by Google bear this out, including: "Review and analyze Google documents on data joinability found by [experts] Lillian

---

[6] Counsel is deducting the "reserve space" entry that Google flagged. Opp'n at 13.

[7] The award in *Campbell* was "negotiated" by the parties, so the court was not called to consider these issues. *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *2 (N.D. Cal. Aug. 18, 2017). *Stathakos* is also not instructive on this issue, for the reasons explained, *supra* section II.A.

Dai and Chris Thompson," Broome Ex. 3, Tab 2, 10/16/21, Row 118, which is core to the dispute about whether the data is identifying. Google relatedly turns a blind eye to the Motion's explanation of why the lack of a damages class made no difference to the work that Class Counsel needed to do for the classes, including with respect their damages expert. Mot. at 16-17.

For the next categories, Google seeks a 25% "across-the-board" deduction on remaining lodestar, for another $13 million cut. Opp'n at 13; Broome Ex. 3, Tab 5. Google says this cut is warranted based on over $25 million in challenges, but many entries included are duplicate challenges. Ex. 23. In addition, Google's challenges are factually and legally baseless, again.

"Duplication": Google ignores that some duplication "is inherent in the process of litigating." *Moreno*, 534 F.3d at 1112. More concretely, Google's principal gripe that Class Counsel "routinely" "outnumber[ed] defense counsel at hearings and other events," Opp'n at 13, "lacks evidentiary support" because Google "failed to produce the underlying billing records of defense counsel," *Stathakos*, 2018 WL 1710075, at *5. The high-level chart that Google submits (Broome Ex. 2) is also incomplete; it omits the many in-house lawyers who worked on this case, at least one of whom attended virtually every deposition and hearing. Properly accounting for those attorneys would prove that Google lawyers outnumbered Class Counsel for at least 40% of the events. Broome Ex. 2. Regardless, "the Ninth Circuit has recognized that comparing the numbers of hours spent by opposing parties may not be an appropriate metric for assessing the reasonableness of hours billed." *Stathakos*, 2018 WL 1710075, at *5 (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001)). This Court has rejected the same argument.[8]

"Excessive Partner Time": Courts should not seek "to determine if different staffing decisions might have led to different fee requests." *Moreno*, 534 F.3d at 1115. That is particularly true here given the weakness of Google's challenges. It was not "excessive" for the partner who took a 30(b)(6) deposition to "review documents" "in preparation for [that] deposition." Broome Ex. 3, Tab 5, 3/9/22, #14510. Google misrepresents another partner's work on "scheduling

---

[8] *E.g.*, *id.*; *Congdon v. Uber Techs., Inc.*, 2019 WL 2327922, at *4 (N.D. Cal. May 31, 2019).

12

depositions." Opp'n at 14.[9] As for Google's complaint that BSF partners out-billed BSF associates, Google forgets the key role played by lead counsel, Mark Mao, the lawyer most knowledgeable about the at-issue technologies. No reduction is warranted where "lead counsel can doubtless complete the job more quickly[.]" *Moreno*, 534 F.3d at 1115.

"Internal Meetings": Class Counsel appropriately scheduled "teleconferencing with other attorneys to provide updates on the case," all the more appropriate given the complexity of this case. *Ridgeway v. Wal-Mart*, 269 F. Supp. 3d 975, 992 (N.D. Cal. 2017). Google's only real complaint is that it was excessive for "three or more attorneys" to bill for a standing weekly call, Opp'n at 14, apparently believing that only two lawyers may join a team call. The specific entries that Google challenges are just as puzzling, including, for example's Google's assertion that it was excessive for an associate to attend an in-person prep session the day before the Pretrial Conference at which he argued multiple motions. Broome Ex. 3, Tab 5, 11/28/23, #30674.

"Block Billing": Google tries to embarrass counsel by flagging entries which reflect mistakes,[10] and which could have been resolved through a call. By not calling, Google violated the parties' agreement on records. Ex. 24 (promising to "notify" Plaintiffs of any records "for which Google believes there may have been an inadvertent error or mistake"). The remaining challenges fare no better, including: "Conducting legal research in support of class certification reply and emailing trial team regarding the same." Broome Ex. 3, Tab 5, 8/23/22, #20810.

"Other Inefficiencies": Google cites no cases to support these cuts, and no wonder why. There is nothing improper about counsel working "dozens" of "12+ hour days" in a complicated case that lasted for four years. Opp'n at 15. The entries that Google identifies include a partner who billed 12 hours to prepare for *and take* a deposition that lasted for 10.5 hours (meaning the entry included the deposition itself and brief prep time beforehand). Broome Ex. 3, Tab 5, 3/2/22, #14065; Ex. 25. What is "troubling" about that? Opp'n at 15.

---

[9] He was in charge of "deposition assignments and scheduling,"—meaning creating a plan for selecting whom to depose, assigning lawyers to the depositions, and deciding when those depositions should take place. Broome Ex. 5, Tab 5, 12/29/21, #10781.

[10] Plaintiffs are reducing the challenged 23-hour entry to 13 hours and withdrawing the challenged 10-hour entry. Opp'n at 15; Supp'l Yanchunis Decl. ¶ 7; Rabin Decl. ¶ 4.

Google's gripe about work performed by lawyers "who did not appear" is similarly misplaced. *Id.* Counsel "may recover fees" if *either* of the following apply: "(1) the attorney at issue would have certainly been permitted to appear *pro hac vice* as a matter of course had he or she applied; or (2) if the work of the attorney did not rise to the level of appearing before the district court." *Hanrahan v. Statewide Collection, Inc.*, 2022 WL 3998565, at *1 (9th Cir. Sept. 1, 2022). All non-appearing timekeepers are eligible for fees. *See also* Dkts. 1107-20, -21, -22 (attorney bios). That includes the lawyers whom Google unprofessionally calls out. Opp'n at 6.

### C.    Plaintiffs' Costs Are Reasonable and Reimbursable.

Rather than meaningfully engage with Counsel's costs, Google mostly focuses on so-called "glaring examples" of improper ones. But these examples are falsely presented or moot. The Uber ride was to a restaurant (not a spa); the trip from a "karaoke bar" to another bar was for meeting the whistleblower (Mr. Lemoine) who was cautious and insisted on a location where he would not be seen or heard. Lee Supp'l Decl. ¶¶ 5-6. The TSA precheck charge was submitted in error and is withdrawn. Yanchunis Supp'l Decl. ¶ 5. Google was more interested in trying to embarrass Counsel than asking questions to identify mistakes, in violation of the agreement. Ex. 24. As for research charges, Google does not contest recoverability and instead only questions whether Counsel incurred these costs. Opp'n at 24. They did, unlike in the cases Google cites. *See* Rabin Decl. ¶¶ 6-7; Lee Supp'l Decl. ¶ 8. Google's challenge is perplexing given that its counsel includes these charges in its own class action submissions. Ex. 26 ¶ 10 & Ex. B-1.

Google's request to deduct 15% from all expert costs for lack of invoices disregards another agreement: that expert invoices need not be exchanged. Dkt. 272. Providing invoices would have also required an extensive privilege review (generating more lodestar). More importantly, Counsel reviewed these invoices before paying them, out of pocket, and submitted a declaration. Dkt. 1107-20 ¶¶ 71-82. A "declaration" from counsel "is sufficient to satisfy the Court that the fees were actually paid to the experts." *Deanda v. Sav. Inv., Inc.*, 2006 WL 8443522, at *4 (S.D. Cal. June 8, 2006) (rejecting argument that costs should be reduced because "because Plaintiff failed to submit an invoice or bill for the experts"). Google makes no argument

for why any costs should be doubted, which distinguishes the cases it cites.[11] Google also ignores the role it played in driving up expert costs, including throughout the Special Master process, and how its own counsel has incurred far more in expert fees (approximately $18 million) for another case with fewer testifying experts (3). Ex. 27 at 3; Ex. 28 ¶ 60. Google's request for an additional reduction to the damages expert's fees, based on the denial of (b)(3) certification, ignores this Court's ruling that his classwide models were relevant to the (b)(2) trial. Dkt. 1088.

For the mock trial, Google overlooks that it did not withdraw its own jury demand. Regardless, Plaintiffs' withdrawal of theirs has no impact on recoverability. *O'Bannon v. NCAA*, 2016 WL 1255454, at *5 (N.D. Cal. Mar. 31, 2016) (rejecting similar argument). "The mock trial sharpened Plaintiffs' trial presentation even though that trial was a bench trial." *Id.* Google's proposed cuts for 23(c)(4) and class administration work are similarly misguided (and inflated).[12] Google agreed to bear all costs that a fee-paying client would pay, Dkt. 1097-3 at 3, and clients would not expect to receive a refund for costs that contributed in a different way than initially anticipated*, see MGMTL v. Strategic Tech.*, 2023 WL 9229133, at *1 (E.D. La. Dec. 4, 2023).

### D. Plaintiffs' Commitment to the Case Merits $30,000 Service Awards.

Google objects to the request as "above the norm" but ignores the Motion's discussion of why this case was not normal. Google also ignores *del Toro Lopez v. Uber*, 2018 WL 5982506, at *3 (N.D. Cal. Nov. 14, 2018) (Gonzalez Rogers, J.), where this Court granted such awards to recognize the plaintiffs' "substantial[] involve[ment]." Each Plaintiff deserves the same.

## III. CONCLUSION

Plaintiffs respectfully request that the Court award $217,022,730.10 in fees, $7,656,495.32 in costs, and $30,000 service awards to each of the Named Plaintiffs.

---

[11] In *Banas v. Volcano Corporation*, the court only reduced the request after finding it "especially problematic" that over two-thirds of the relevant costs were traceable to unnamed researchers. 47 F. Supp. 3d 957, 979 (N.D. Cal. 2014). In *John Meggs v. Gomez*, the expert's invoice reflected less than the requested amount. 2018 WL 11355448, at *3 (N.D. Cal. 2018). Google's reliance on *Facebook* is misplaced because that case settled *before* class certification and summary judgment—far from trial. 2023 WL 8445812, at *3. That the *Twitter* securities case (2022 WL 17248115) had fewer costs is not a basis to reduce the costs in this cutting-edge privacy case.
[12] Google errs by assuming Prof. Issacharoff exclusively worked on (c)(4). Dkt. 1107-20 ¶ 83.

Dated: June 21, 2024

By */s/ Mark Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street
31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)

16

1  srabin@susmangodfrey.com
   Steven Shepard (*pro hac vice*)
2  sshepard@susmangodfrey.com
   Alexander P. Frawley (*pro hac vice*)
3  afrawley@susmangodfrey.com
   Ryan Sila (*pro hac vice*)
4  rsila@susmangodfrey.com
   SUSMAN GODFREY L.L.P.
5  One Manhattan West, 50th Floor
   New York, NY 10001
6  Telephone: (212) 336-8330
7
   John A. Yanchunis (*pro hac vice*)
8  jyanchunis@forthepeople.com
   Ryan J. McGee (*pro hac vice*)
9  rmcgee@forthepeople.com
   MORGAN & MORGAN, P.A.
10 201 N Franklin Street, 7th Floor
   Tampa, FL 33602
11 Telephone: (813) 223-5505
   Facsimile: (813) 222-4736
12
13 Michael F. Ram, CA Bar No. 104805
   mram@forthepeople.com
14 MORGAN & MORGAN
   711 Van Ness Ave, Suite 500
15 San Francisco, CA 94102
   Tel: (415) 358-6913
16
17 *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27