# EXHIBIT 10

# Version with confidentiality designations removed of Dkt. 1115-5

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                      OAKLAND DIVISION
 4
 5   CHASOM BROWN, WILLIAM BYATT,   )
     JEREMY DAVIS, CHRISTOPHER      )
 6   CASTILLO, and MONIQUE          )
     TRUJILLO, individually and on )
 7   behalf of all similarly        )
     situated,                      )
 8                                  )
                  Plaintiffs,       )
 9                                  )
                    vs.             )Case
10                                  )4:20-cv-03664-YGR-SVK
     GOOGLE LLC,                    )
11                                  )
                  Defendant.        )
12   _____)
13
14
15
16              VIDEO-RECORDED DEPOSITION OF
17                     BLAKE LEMOINE
18              Thursday, December 21, 2023
19                       Volume I
20
21
22   Reported by:
     CARLA SOARES
23   CSR No. 5908
24   Job No. 6377402
25   Pages 1 - 232
```

                                              Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                    OAKLAND DIVISION
 4
 5   CHASOM BROWN, WILLIAM BYATT,  )
     JEREMY DAVIS, CHRISTOPHER     )
 6   CASTILLO, and MONIQUE         )
     TRUJILLO, individually and on )
 7   behalf of all similarly       )
     situated,                     )
 8                                 )
                  Plaintiffs,      )
 9                                 )
                     vs.           )Case
10                                 )4:20-cv-03664-YGR-SVK
     GOOGLE LLC,                   )
11                                 )
                  Defendant.       )
12   _____)
13
14
15
16            VIDEO-RECORDED DEPOSITION OF BLAKE
17   LEMOINE, Volume I, taken on behalf of Defendant,
18   beginning at 9:34 a.m., and ending at 4:12 p.m., on
19   Thursday, December 21, 2023, before CARLA SOARES,
20   Certified Shorthand Reporter No. 5908.
21
22
23
24
25
```

Page  2

```
 1    APPEARANCES:
 2

 3    For the Plaintiffs:
 4         BOIES SCHILLER FLEXNER LLP
           BY:  JAMES LEE, Attorney at Law (via Zoom)
 5         100 SE 2nd Street, 28th Floor
           Miami, Florida 33131
 6         305.539.8400
           jlee@bsfllp.com

 7
 8         BOIES SCHILLER FLEXNER LLP
           BY:  MARK C. MAO, Attorney at Law
 9         BY:  JOSHUA M. STEIN, Attorney at Law
           44 Montgomery Street, 41st Floor
10         San Francisco, California 94104
           415.293.6800
11         mmao@bsfllp.com
           jstein@bsfllp.com

12
13         BOIES SCHILLER FLEXNER LLP
           M. LOGAN WRIGHT, Attorney at Law (via Zoom)
14         725 S. Figueroa Street, 31st Floor
           Los Angeles, California 90017
15         213.629.9040
           mwright@bsfllp.com

16
17         SUSMAN GODFREY
           BY:  RYAN SILA, Attorney at Law (via Zoom)
18         1301 6th Avenue, 32nd Floor
           New York, New York 10019
19         212.336.8330
           rsila@susmangodfrey.com

20
21         MORGAN & MORGAN
           BY:  RYAN J. McGEE, Attorney at Law (via Zoom)
22         201 N. Franklin Street, 7th Floor
           Tampa, Florida 33602
23         813.223.5505
           rmcgee@forthepeople.com

24
25
```

Page  3

```
 1    APPEARANCES (Continued):

 2

 3         QUINN EMANUEL URQUHART & SULLIVAN LLP
           BY:  ANDREW H. SCHAPIRO, Attorney at Law
 4         191 N. Wacker Drive, Suite 2700
           Chicago, Illinois 60606
 5         312.705.7400
           andrewschapiro@quinnemnauel.com
 6

 7         QUINN EMANUEL URQUHART & SULLIVAN LLP
           BY:  YUSEF AL-JARANI, Attorney at Law
 8         865 S. Figueroa Street, 10th Floor
           Los Angeles, California 90017
 9         213.443.3000
           yusefaljarani@quinnemanuel.com
10

11

12    ALSO PRESENT:  Reilly Leet, Video Operator

13

14                    --o0o--

15

16

17

18

19

20

21

22

23

24

25

                                          Page  4
```

```
 1                         INDEX
 2   WITNESS
 3   BLAKE LEMOINE                      EXAMINATION
     Volume I
 4
 5              BY MR. SCHAPIRO              14, 212
 6              BY MR. LEE                   154
 7
 8                       EXHIBITS
 9   NUMBER              DESCRIPTION           PAGE
10   Exhibit 1                                  17
11         LinkedIn Profile for Blake Lemoine
12
13   Exhibit 2                                  25
14         Declaration of Blake Lemoine
15
16   Exhibit 3                                  62
17         Document headed "Discover Trust &
18         Fairness Pre-Mortem,"
19         Bates GOOG-BRWN-00859979 - 9981
20
21   Exhibit 4                                  65
22         Email to Mark Meador from Blake Lemoine,
23         dated 6-4-22, Bates GOOG-BRWN-00859986 -
24         9989
25
```

Page 5

```
 1                          EXHIBITS
 2     NUMBER              DESCRIPTION              PAGE
 3     Exhibit 5                                    70
 4             Email to Sundar Pichai and Kent Walker
 5             from Blake Lemoine, dated 6-3-22,
 6             Bates GOOG-BRWN-00859963 - 9965
 7
 8     Exhibit 6                                    74
 9             Letter to Folks from Blake Lemoine,
10             Bates GOOG-BRWN-00859194 - 9195
11
12     Exhibit 7                                    81
13             E-mail string, top e-mail to Eileen
14             Naughton from Blake Lemoine, dated
15             3-24-20, Bates GOOG-BRWN-00859198 - 9200
16
17     Exhibit 8                                    85
18             E-mail string, top e-mail to Rachel
19             Amrani from Blake Lemoine, dated
20             4-5-22, Bates GOOG-BRWN-00859465 - 9468
21
22     Exhibit 9                                    89
23             E-mail string, top e-mail to Blake
24             Lemoine from Kent Walker, dated 4-6-22,
25             Bates GOOG-BRWN-00859471 - 9473

                                             Page 6
```

```
 1                        EXHIBITS

 2    NUMBER                  DESCRIPTION              PAGE

 3    Exhibit 10                                        93

 4             Email to Kent Walker from Blake Lemoine,

 5             dated 4-25-22, Bates GOOG-BRWN-00859496

 6

 7    Exhibit 11                                        96

 8             Email to trolle@google.com and

 9             lemoine@google.com from

10             lemoine@google.com, dated 4-25-22,

11             Bates GOOG-BRWN-00859499 - 9501

12

13    Exhibit 12                                        98

14             E-mail string, top e-mail to Blake

15             Lemoine from Blaise Aguera y Arcas,

16             dated 4-27-22, Bates GOOG-BRWN-00859502

17

18    Exhibit 13                                       101

19             Email to Heather Adkins from Blake

20             Lemoine, dated 4-28-22,

21             Bates GOOG-BRWN-00859519

22

23

24

25

                                             Page  7
```

```
1                        EXHIBITS
2     NUMBER              DESCRIPTION              PAGE
3     Exhibit 14                                   108
4             Email to Kent Walker and Sundar
5             Pichai from Blake Lemoine, dated
6             5-26-22, Bates GOOG-BRWN-00859843
7
8     Exhibit 15                                   111
9             Email to Rob Shilkin and Amira Fouad
10            from Blake Lemoine, dated 5-30-22,
11            Bates GOOG-BRWN-00859905
12
13    Exhibit 16                                   115
14            Email to sundar@google.com from
15            Blake Lemoine, dated 6-2-22,
16            Bates GOOG-BRWN-00859960
17
18    Exhibit 17                                   116
19            E-mail string, top e-mail to Tera
20            Hogan fro Blake Lemoine, dated
21            6-6-22, Bates GOOG-BRWN-00860009
22
23
24
25
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1                       EXHIBITS

 2    NUMBER                DESCRIPTION              PAGE

 3    Exhibit 18                                     120

 4              Email to tdelano@google.com and

 5              lemoine@google.com from

 6              tdelano@google.com, dated 5-24-22,

 7              Bates GOOG-BRWN-00859826 - 9834

 8

 9    Exhibit 19                                     122

10              E-mail string, top e-mail to Rachel

11              Amrani from Blake Lemoine, dated 5-27-22,

12              Bates GOOG-BRWN-00859852 - 9854

13

14    Exhibit 20                                     125

15              Document described as transcript of

16              conversation between LaMDA and Blake

17              Lemoine, Bates GOOG-BRWN-00859681 - 9686

18

19    Exhibit 21                                     133

20              E-mail string, top e-mail to Janel

21              Thamkul from Rachel Amrani, dated

22              5-11-22, Bates GOOG-BRWN-00859764 - 9768

23

24

25
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1                      EXHIBITS

 2   NUMBER              DESCRIPTION              PAGE

 3   Exhibit 22                                   136

 4           E-mail string, top e-mail to Rachel

 5           Amrani from Blake Lemoine, dated

 6           5-11-22, Bates GOOG-BRWN-00859755 - 9759

 7

 8   Exhibit 23                                   148

 9           Email to ml-discuss from Blake Lemoine,

10           dated 6-6-22, Bates GOOG-BRWN-00860010

11

12   Exhibit 24                                   168

13           E-mail string, top e-mail to Blake

14           Lemoine from Masrour Zoghi, dated

15           5-13-19, Bates GOOG-BRWN-00859039

16

17   Exhibit 25                                   179

18           Document headed "Discover Trust &

19           Fairness Pre-Mortem,"

20           Bates GOOG-BRWN-00859979 - 9981

21

22   Exhibit 26                                   208

23           Document described as transcript of

24           conversation between LaMDA and Blake

25           Lemoine, Bates GOOG-BRWN-00859541 - 9550
```

Page 10

1          REFERENCED EXHIBITS

2                (None.)

3

4

5      INSTRUCTIONS NOT TO ANSWER

6            PAGE        LINE

7             39          11

8

9             --oOo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1                    San Francisco, California

 2                  Thursday, December 21, 2023

 3                        9:34 a.m.

 4

 5              P R O C E E D I N G S

 6              THE VIDEO OPERATOR:  Good morning.  We are

 7     going on the record at 9:34 a.m. on December 21st,

 8     2023.

 9              Please note that the microphones are

10     sensitive and may pick up whispering and private        09:34:16

11     conversations.  Please mute your phones at this

12     time.  Audio- and video-recording will continue to

13     take place unless all parties agree to go off the

14     record.

15              This is Media Unit 1 of the video-recorded    09:34:27

16     deposition of Blake Lemoine, taken by counsel for

17     defendant, in the matter of Chasom Brown, et al.,

18     versus Google LLC, filed in the United States

19     District Court, Northern District of California,

20     Oakland Division, Case No. 4:20-cv-03664-YGR-SVK.      09:34:46

21              The location of the deposition is

22     44 Montgomery Street, 41st Floor, San Francisco,

23     California 94104.

24              My name is Reilly Leet, representing

25     Veritext Legal Solutions, and I'm the videographer.   09:35:13
```

                                                        Page 12

| | | |
|---|---|---|
| 1 | The court reporter is Carla Soares from the firm | 09:35:16 |
| 2 | Veritext Legal Solutions. | |
| 3 | I am not related to any party in this | |
| 4 | action, nor am I financially interested in the | |
| 5 | outcome. | 09:35:25 |
| 6 | Counsel and all present, including | |
| 7 | remotely, will now state their appearances and | |
| 8 | affiliations for the record, beginning with the | |
| 9 | noticing attorney. | |
| 10 | MR. SCHAPIRO:  I'm Andrew Schapiro, from | 09:35:34 |
| 11 | the law firm Quinn Emanuel, for Google.  With me is | |
| 12 | my colleague Yusef Al- -- | |
| 13 | MR. AL-JARANI:  -Jarani. | |
| 14 | MR. SCHAPIRO:  -- -Jarani. | |
| 15 | MR. LEE:  Good morning.  James Lee, Boies | 09:35:44 |
| 16 | Schiller Flexner, for the plaintiffs.  With me is | |
| 17 | Josh Stein and Mark Mao, also from Boies Schiller. | |
| 18 | We also have Logan Wright, Ryan Sila, and Ryan McGee | |
| 19 | for the plaintiffs. | |
| 20 | THE VIDEO OPERATOR:  Thank you. | 09:36:19 |
| 21 | Will the court reporter please swear in | |
| 22 | the witness, and then counsel may proceed. | |
| 23 | BLAKE LEMOINE, | |
| 24 | having been administered an oath, was examined and | |
| 25 | testified as follows: | 09:36:23 |

Page 13

1          The -- this is a well-known -- this is          14:53:00

2     actually a well-known property of machine learning

3     system called "transfer learning."  And it happens

4     to have negative consequences in the privacy space.

5     But usually it's a strength of these systems.          14:53:17

6          Q    If Google were to say that it never

7     reidentifies people and devices when they are in

8     private browsing mode, would that be true or false?

9          A    That would be false.

10         Q    Could Google's AI also join a person's          14:53:31

11    incognito or private browsing history with their

12    normal Chrome account?

13         A    Given a sufficiently powerful AI, yes.

14    And again, the kinds of AI being used in 2018 were

15    such models, but I do not know what the current          14:53:51

16    implementation is.

17         Q    And how would Google's AI do that?

18         A    So it will build a representation of kinds

19    of users.  That is the general way in which these

20    user modeling systems work, is they create          14:54:08

21    conceptual categories of similar users who have

22    similar behavior patterns.

23          The identifier which unifies a single

24    person's behavior is usually the GAIA ID.  But in

25    the case of non-personal logs, it will be something          14:54:26

Page 177

```
 1    like the Zwieback ID or something else which is a        14:54:28

 2    hash of other things.  And that's the attempt to

 3    anonymize it as well as removing certain kinds of

 4    data.

 5           However, since these AI are inherently, by        14:54:39

 6    design, trying to identify groups of users, in the

 7    Zwieback logs, even though an individual user's ID

 8    changes every day, the AI just discovers a group of

 9    users across multiple days who happen to behave the

10    same way.                                                14:55:07

11           And then it learns that category of users

12    that, in the implementation, seems to the AI as if

13    it's 100 different people on 100 different days.

14    The specific numbers of days is going to depend on

15    the current implementation of the wipeout window.        14:55:24

16           But then it's like, "A-ha.  I have this

17    category of these type of people."

18           And when you actually boil it down, that

19    actual group of people is just Julie.  It's just

20    Julie.                                                   14:55:39

21       Q   And are you confident that Google's AI

22    actually does join a person's incognito or private

23    browsing history with their normal Chrome account?

24       A   For some people, sometimes yes,

25    definitely.                                              14:55:57
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1      Q   If Google were to say that it never joins        14:55:58

2   anyone's incognito or private browsing history with

3   their normal Chrome account, would that be true or

4   false?

5      A   That would be false.  They never do it          14:56:06

6   intentionally, to my knowledge, but they do it every

7   day.

8          MR. LEE:  Can we mark the next exhibit?  I

9   believe it's Exhibit 25.  It will be Tab 7.

10         (Exhibit 25 was marked for identification       14:56:28

11      and is attached hereto.)

12         THE WITNESS:  Is this the third copy of

13   this, now?

14   BY MR. LEE:

15      Q   Have we already looked at it before?           14:57:04

16      A   I don't know.  I don't remember.

17      Q   I don't either.

18      A   Yes, there are two other copies of this.

19   But this is No. 25.

20         MR. LEE:  And, Logan, you don't need to         14:57:16

21   share screen since everyone has the physical.

22         MR. WRIGHT:  Got it.  It's introduced.

23         MR. LEE:  Thanks.

24      Q   All right.  Is this the report that you

25   prepared based, in part, on the experiments that      14:57:28

Page 179

```
 1    with Bishop Umbers, in the Archdiocese of Sydney, on        15:23:15

 2    the topic of artificial intelligence and the

 3    Catholic church and how those two intersect.

 4              And recently, the Pope published his

 5    New Year sermon on artificial intelligence and             15:23:28

 6    peace.  And it was heavily influenced by the topic

 7    that we've been discussing for that year.

 8         Q   Whether people agree with you or not, do

 9    your beliefs about how society should regulate or

10    protect AI as a philosophical or legal matter have         15:23:50

11    anything to do with your knowledge and understanding

12    of how Google's AI uses private browsing data

13    without users' knowledge or permission?

14         A   No.  The two are completely disconnected.

15    One is a simple technical explanation of what             15:24:06

16    happens with what probability, and then the other

17    is, "These are my opinions as a human."

18         Q   Google's lawyer spent some time today

19    discussing the reason you were fired from Google;

20    and specifically, the basis that was discussed was        15:24:33

21    the leaking of information about LaMDA.

22              Do you remember that?

23         A   Yes, I do.

24         Q   Can you explain why you were willing to go

25    public with your concerns about Google's development      15:24:47
```

Page 201

```
1    of LaMDA even if that meant that you could get          15:24:51

2    fired?

3         A   Primarily because this technology is going

4    to change the entire world.  Not just the lives of

5    the people who make it and use it, but everyday         15:25:00

6    people just going about their lives.

7              And Google wanted to ensure that they got

8    the kinds of regulations they wanted for the

9    technology before allowing the public to know that

10   it existed.                                             15:25:17

11        Q   Now, whether anybody agrees or disagrees

12   with your decision to go public about Google's

13   development of LaMDA, did that decision have -- did

14   you getting fired or you sharing information to the

15   public about LaMDA in any way impact your knowledge    15:25:36

16   and understanding of how Google's AI uses private

17   browsing data without users' knowledge or

18   permission?

19        A   I mean, I no longer have access to

20   Google's code, so I have less information.  But I       15:25:52

21   think in the sense that you meant the question, the

22   answer is no.

23        Q   Let's just be very direct.

24              Does Google's AI, algorithms, or machine

25   learning use private browsing data?                     15:26:09
```

Page 202

```
 1          A    Yes.                                    15:26:11

 2          Q    Does Google's AI, algorithms, or machine

 3    learning reidentify users when they're in private

 4    browsing mode?

 5          A    Yes.                                    15:26:17

 6          Q    Does Google's AI, algorithms, or machine

 7    learning join a user's private browsing histories

 8    with their normal Chrome account on the aggregate

 9    level?

10          A    Yes.                                    15:26:28

11          Q    To your knowledge, has Google ever

12    disclosed any of this to the public?

13          A    They have not.

14          Q    Mr. Lemoine, do users actually have a

15    choice to keep any of their private browsing from    15:26:38

16    Google?

17          A    A sentence that I heard frequently is,

18    "Look, their real choice is they can use our product

19    or they can go and be Amish."

20          Q    By that, do you mean -- well, strike that.  15:26:52

21               Is Google's position that if you don't

22    want Google to collect your information, the only

23    way to do that is to not use the internet?

24          A    I think the easiest way to answer that is

25    to point out an anecdote that gets repeated every    15:27:12
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1     time these discussions happen at Google.                15:27:16

 2               And that's a person -- someone's

 3     grandma -- it's always someone's grandma -- trying

 4     to use Google Maps navigation with "Location

 5     Tracking" turned off.                                    15:27:29

 6               And there's these bug reports of people

 7     who turn off "Location Tracking" who still expect

 8     directions to work.  And these people who do not

 9     understand Google's privacy settings or the way that

10     they impact actual behavior in the app are actively     15:27:44

11     mocked.

12               Things like, "Well, these are the idiots

13     that we're having to design these policies for, so

14     what does it even matter?  They obviously don't know

15     how the apps actually work.  So let's just give them    15:27:57

16     what they actually want and ignore what they are

17     asking for with respect to privacy."

18               To give another example, there will be

19     people who have location sharing turned off who will

20     search for "pizza parlors near me."  And in those       15:28:12

21     instances, Google will attempt to connect their

22     device back to their location in order to serve them

23     search results related to "pizza parlors near me."

24               In general, Google believes that its users

25     are incompetent to make decisions related to privacy    15:28:33
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby

3     certify:

4          That the foregoing proceedings were taken

5     before me at the time and place herein set forth;

6     that any witnesses in the foregoing proceedings,

7     prior to testifying, were administered an oath; that

8     a record of the proceedings was made by me using

9     machine shorthand which was thereafter transcribed

10    under my direction; that the foregoing transcript is

11    a true record of the testimony given.

12          Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review

15    of the transcript [ ] was [X] was not requested.

16          I further certify I am neither financially

17    interested in the action nor a relative or employee

18    of any attorney or any party to this action.

19          IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21    Dated: DECEMBER 22, 2023

22

23                    *Carla Soares*

24

                        CARLA SOARES

25                      CSR No. 5908

                                              Page 229

1   ANDREW H. SHAPIRO, ESQ.

2   andrewschapiro@quinnemnauel.com

3                                        DECEMBER 22, 2023

4   RE: BROWN V. GOOGLE LLC

5   6377402, BLAKE LEMOINE, JOB NO. 6377402

6   The above-referenced transcript has been

7   completed by Veritext Legal Solutions and

8   review of the transcript is being handled as follows:

9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12  __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, notating the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20  __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23  __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25

                                              Page 230

Federal Rules of Civil Procedure

Rule 30


(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.



DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.