**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 629-9040
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO, and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 4:20-cv-03664-YGR-SVK<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO CONTINUE THE FINAL APPROVAL HEARING (DKT. 1116)**<br><br>Judge:   Hon. Yvonne Gonzalez Rogers<br>Date:    August 7, 2024<br>Time:    2:30 p.m.<br>Location: Courtroom 1 – 4th Floor |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 1

III. LEGAL STANDARD ............................................................................................................ 5

IV. ARGUMENT ........................................................................................................................ 6

    A. There Is No Basis For Any Mandatory Intervention ..................................................... 6

        i. The Moving Parties have no asserted interest in the 23(b)(2) Settlement. ........................................................................................................... 6

        ii. There is no risk that the Moving Parties' interests will be impeded by the 23(b)(2) Settlement. ............................................................................. 8

        iii. Class Counsel and Plaintiffs adequately represented the interests of the Class. .................................................................................................................11

        iv. The Motion to Intervene is untimely. ................................................................... 12

    B. There Is No Basis for Any Permissive Intervention ................................................... 13

    C. There Is No Basis to Delay the Final Approval Hearing ........................................... 14

V. CONCLUSION .................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ............................................................................................... 13, 14

*Allen v. Hyland's Inc.*,
  2012 WL 12887827 (C.D. Cal. Aug. 28, 2012) ........................................................................ 5, 11

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ...................................................................................................... 11

*Brown v. Google LLC*,
  Case No. 22-80147, Dkt. 10 (9th Cir. Mar. 1, 2023) .................................................................... 12

*Calderon v. Clearview AI, Inc.*,
  2020 WL 2792979 (S.D.N.Y. May 29, 2020) ................................................................................ 6

*CE Design Ltd. v. King Supply Co.*,
  791 F.3d 722 (7th Cir. 2015) ........................................................................................................ 13

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) .................................................................................................... 5, 12

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ............................................................................................... 5, 6, 14

*Exec. Risk Spec. Ins. Co. v. Rutter Hobbs and Davidoff, Inc.*
  564 F. App'x 887 (9th Cir. Mar. 19, 2014) ............................................................................. 11, 12

*In re Cmty. Bank of N. Va.*,
  418 F.3d at 315 .......................................................................................................................... 7, 11

**Statutes**

28 U.S.C. § 1331 ................................................................................................................................ 13

28 U.S.C. § 1332 ................................................................................................................................ 13

28 U.S.C. § 1332(d) ........................................................................................................................... 13

28 U.S.C. § 1367 ................................................................................................................................ 13

**Rules**

Fed. R. Civ. P. 23(b)(2) .................................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) .................................................................................................... *passim*

Fed. R. Civ. P. 23(f) ............................................................................................................... 12

Fed. R. Civ. P. 24 ..................................................................................................................... 5

Fed. R. Civ. P. 24(a) ................................................................................................................ 6

Fed. R. Civ. P. 24(a)(2) ........................................................................................................... 5

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................................... 5

## I. INTRODUCTION

Movants belatedly request to intervene and delay the long-scheduled final approval hearing in this case. There is no legal or factual basis for either request.

First, Movants offer no reason that would justify intervention. They do not criticize, and would have no basis to criticize, the injunctive relief settlement (the "Settlement" or "Settlement Agreement"), which by any standard is extraordinary. They say they seek access to the tolling agreement (the "Tolling Agreement" or "Agreement") identified in Class Counsel's settlement approval filings. (Dkt. 1097-14 ¶ 179), but this Agreement is unrelated to the Settlement. It was separately negotiated and executed to protect the interests of clients seeking to bring individual damages claims that fall outside the scope of the Settlement. Mao Decl. ¶ 7. Nevertheless, Plaintiffs have never opposed providing a copy of the Tolling Agreement to Movants, and Plaintiffs have now obtained Google's permission to disclose the Tolling Agreement and submit it with this filing. *See* Ex. 1.

Second, there is no basis for delaying the hearing on final approval. The Tolling Agreement that is the focus of the Movants' application relates solely to damages claims and has nothing to do with the merits of the Settlement. The Court denied certification of a (b)(3) damages Class. The Court granted certification of a (b)(2) Class, whose injunctive relief claims have been settled. The damages claims of class members were not, and could not have been, affected by that Settlement, and it is that Settlement that is at issue on August 7, 2024. Similarly, the individual damages claims pending and to be brought have nothing to do with the motion for approval of the injunctive relief Settlement.

Whatever advantages or leverage Movants and their counsel seek by their effort to intervene in, and delay, this case, their motion is without merit.

## II. BACKGROUND

Soon after the Court denied Google's motion for summary judgment (Dkt. 969), Plaintiffs and Google (collectively, the "Parties") began negotiating the Settlement. The Parties retained former District Court Judge Layn Phillips—one of the most highly respected mediators in the country—who supervised multiple mediation sessions and arms-length negotiations over several

months. As the Court granted Rule 23(b)(2) certification (Dkt. 803), the Parties focused the Settlement on resolving Plaintiffs' claims for injunctive and equitable relief, and Plaintiffs secured robust, unassailable injunctive relief for each and every member of the certified injunctive class. *See* Dkt. 1096 at 2–3, 9–16 (describing injunctive relief secured). In doing so, Plaintiffs carefully safeguarded individuals' rights to bring their own claims against Google to seek damages for Google's improper collection, storage, and use of their private browsing data. Language making this point abundantly clear is provided in the Settlement itself:

> The Released Class Claims do not include any claim for monetary relief of any kind, including but not limited to any claims for statutory penalties, damages, unjust enrichment, disgorgement, restitution, punitive damages, or any other monetary claim within the scope of the Rule 23(b)(3) classes for which Plaintiffs sought and were denied certification.

Settlement (Dkt. 1097-3) at 4. On December 22, 2023, on the eve of trial, Plaintiffs and Google finalized a Term Sheet, which has now been implemented with the Settlement. On April 1, 2024, Plaintiffs filed an unopposed motion requesting the Court approve this "groundbreaking settlement that yields substantial benefits for every single class member." Dkt. 1096 at 2. Notwithstanding the public attention this Settlement has received—including from the U.S. House of Representatives (Dkt. 1115-8)—no government entity has objected to or otherwise expressed any issue with the Settlement, and Class Counsel has received no objection to the Settlement from any class member. Mao Decl. ¶ 3.

During this time and throughout this entire litigation, Class Counsel has been forthright with the Court, Congress, regulators, and the class members they represent. After the Court denied Rule 23(b)(3) certification, numerous individuals expressed interest in pursuing damages claims against Google. Counsel from Boies Schiller Flexner ("BSF") and Morgan & Morgan ("M&M") evaluated these requests, and determined they would be able to represent these clients while continuing to advocate for significant, meaningful injunctive relief on behalf of the certified Rule 23(b)(2) class. This makes sense: the Court certified an injunctive class while ordering that damages claims may only be pursued individually. *See* Dkt. 803.

After agreeing to represent these clients, BSF and M&M negotiated an agreement with Google to toll the statutes of limitation for these claims on their behalf. This was done in an

abundance of caution to ensure their claims remained timely while orchestrating the coordinated filing of what would be over 96,000 actions against Google, all filed in California Superior Court. There was never any overlap or any connection between the discussions to settle claims held by the Rule 23(b)(2) class, and the separate negotiation of the agreement to toll the damages claims held by their individual clients; the two documents do not impact each other whatsoever. Mao Decl. ¶ 7. Indeed, the third law firm representing the certified 23(b)(2) class, Susman Godfrey, is not representing the individuals seeking damages. BSF and M&M filed the first complaint on behalf of those clients on March 28, 2024 (the "Luna Complaint"). *See* Dkt. 1097-14.

Notwithstanding the fact that the Tolling Agreement and the individual damages cases do not impact settlement of this matter, Class Counsel disclosed both in their public filings. With their motion for final approval, Class Counsel provided a copy of the Luna Complaint, which states that the applicable statutes of limitation are tolled, in part, due to the Tolling Agreement:

> Any applicable statutes of limitations have been tolled under … the terms of the tolling agreement entered between Plaintiffs (and others) and Google, along with all amendments to that tolling agreement, which expressly tolled the statute of limitations for these claims through the termination of that agreement (and with the filing of this complaint).

Dkt. 1097-14 ¶ 179. The Luna Complaint has been publicly available on the Court's docket since April 1, 2024, and since then neither the Moving Parties,[1] or the regulators and government agencies who have been noticed under the Class Action Fairness Act ("CAFA"),[2] have objected to the Settlement. The Tolling Agreement is also referenced in the 1,933 other publicly available complaints filed on behalf of more than 96,000 other clients also seeking monetary relief for Google's collection, storage, and use of their private browsing data, which all contain the same language on the Tolling Agreement. The Moving Parties had access to all of this material for nearly four months.

Only after BSF and M&M began filing individual damages claims against Google on behalf of their clients, did the Potter Handy law firm begin following suit. On April 23, 2024,

---

[1] "Moving Parties" herein refers to the 185 individuals who have filed individual damages claims against Google for in California Superior Court.
[2] Google confirmed that CAFA notices were issued within 10 days after filing the settlement approval motion. Mao Decl. ¶ 3.

1  Potter Handy filed a complaint in California Superior Court that was similar to the Fourth
2  Amended Complaint in *Brown* ("4AC", Dkt. 886) and filed on behalf of the Moving Parties, all
3  of whom are residents of California. *See* Ex. 2 (the "Potter Handy Complaint") ¶ 125 ("Plaintiffs,
4  and each of them, are residents of California…"). There are some noteworthy differences
5  between the Potter Handy Complaint and the 4AC. First, the Potter Handy Complaint only asserts
6  California state law claims and does not include any Federal Wiretap Act claim, which Class
7  Counsel included in the 4AC. *See id.* ¶¶ 129–221. Second, the Potter Handy Complaint
8  acknowledges this Court's decision to certify the Rule 23(b)(2) class only and, accordingly,
9  requests only monetary relief:

> Plaintiffs assert claims that already survived past motions to dismiss and summary judgment in the *Brown* Lawsuit, where the federal court certified two nationwide classes under Rule 23(b)(2) to pursue these claims for purposes of obtaining injunctive relief. ***Plaintiffs now each seek monetary relief from Google***, including statutory damages.

*Id.* ¶ 120 (emphasis added), at 42 (injunctive relief not requested in prayer for relief). In short, because the Potter Handy Complaint seeks only monetary relief, and the Settlement only resolves injunctive relief and Chasom Brown's, William Byatt's, Jeremy Davis', Christopher Castillo's, and Monique Trujillo's (the "Named Plaintiffs") individual claims (but not those of others), there is no overlap between the relief sought in these documents.

After the Moving Parties filed their state court complaint, Potter Handy contacted BSF requesting a copy of the Tolling Agreement on June 10, 2024. *See* Ex. 3. The Moving Parties claim that "class counsel refused to provide a copy [of the Tolling Agreement]" but that is untrue. Dkt. 1116 ("Mot.") at 11. On June 11, 2024, the very next day, BSF informed the Moving Parties that it had no objection to Google providing a copy of the Tolling Agreement, but Class Counsel did not send it unilaterally without Google's permission because it contains a confidentiality provision. *See id*. Class Counsel have now received Google's permission to disclose the Tolling Agreement and include it as Exhibit 1 to this filing.

On July 2, 2024, Potter Handy filed a motion to intervene (the "Motion") on behalf of 185 individuals who have filed individual damages claims against Google in California Superior

| | |
|---|---|
| 1 | Court. Mot. Notably, the Motion does not even discuss the injunctive relief that Plaintiffs secured |
| 2 | with the Settlement, let alone raise any concerns about that injunctive relief. The Motion instead |
| 3 | seeks to both intervene and continue the final approval hearing. The Moving Parties seek to |
| 4 | intervene for three purported reasons: (1) to secure a copy of a Tolling Agreement, (2) to "obtain |
| 5 | access to all discovery exchanged in this action" and (3) to safeguard their "individual appellate |
| 6 | rights in this action." Mot. at 8. The Moving Parties also request a continuance of the August 7 |
| 7 | final approval hearing, based on the nebulous claim that they need to "obtain additional |
| 8 | information in order to properly evaluate the fairness of the proposed Settlement Agreement." |
| 9 | *Id*. at 10. Class Counsel respectfully opposes the Motion. |

### III. LEGAL STANDARD

Rule 24 permits intervention both permissively and as of right. *See* Fed. R. Civ. P. 24. An applicant may intervene as of right if he or she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). An applicant must demonstrate four requirements are satisfied to intervene as of right: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (internal quotations omitted).

Applicants may also intervene with the Court's permission if they have a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.24(b)(1)(B). "A court has discretion to grant permissive intervention when (1) the intervenor's case 'shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims.'" *Allen v. Hyland's Inc*., 2012 WL 12887827, at *3 (C.D. Cal. Aug. 28, 2012) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)). "Even if an applicant satisfies those threshold

requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412. "In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*.

## IV.   ARGUMENT

### A.   There Is No Basis for any Mandatory Intervention.

#### i.   The Moving Parties have no asserted interest in the Rule 23(b)(2) Settlement.

The Moving Parties—who seek only monetary relief from Google—have not demonstrated a significant protectable interest in the outcome of this action, which alone dooms their request for intervention under Rule 24(a).

As stated above, the Settlement only releases claims for "injunctive, declaratory, or any other equitable non-monetary relief" since only an injunctive class was certified against Google in this case. Settlement (Dkt. 1097-3) at 4. The Moving Parties recognized this in the Potter Handy Complaint, seeking only "monetary relief from Google" and no injunctive or equitable relief whatsoever. Ex. 2 ¶ 120, at 42. There is, therefore, no overlap between the monetary relief the Moving Parties seek and the injunctive relief conferred in the Settlement, and approving the Settlement would in no way impact the Moving Parties' ability to secure the monetary relief in state court. The fact that the Moving Parties did not separately sue for injunctive relief, or object to the injunctive relief secured in the Settlement, only prove that they too found the Settlement satisfactory.

The Moving Parties also have no interest in the Named Plaintiffs' individual damages claims. Because "no [damages] class has been certified anywhere, [the Moving Parties] ha[ve] no right to control the litigation and disposition of any [damages] claim[s] other than [their] own." *Calderon v. Clearview AI, Inc.*, 2020 WL 2792979, at *5 (S.D.N.Y. May 29, 2020) (denying motion to intervene, and citing numerous examples of other courts denying motions to intervene where the moving parties were putative class members). Because this Court denied class certification under Rule 23(b)(3), the Named Plaintiffs could only pursue damages individually, and the Moving Parties have no interest in any recovery the Named Plaintiffs obtain, just as the

1  Named Plaintiffs have no interest in any recovery the Moving Parties obtain in their individual
2  actions in state court.

3        While irrelevant, Plaintiffs briefly address the Moving Parties' suggestion that the Named
4  Plaintiffs are receiving "favorable treatment" insofar as their individual damages claims will be
5  addressed through arbitration. Mot. at 11. The Moving Parties argue they are treated less
6  favorably because they must file actions and prove up their cases, ***but this is precisely what the***
7  ***Named Plaintiffs have done for the past four years***. The Named Plaintiffs' individual claims are
8  in a different position than the Moving Parties because the Named Plaintiffs filed their cases
9  years ago, opened themselves up to invasive discovery, sat for depositions, spent time to actively
10 assist in litigation, and diligently prosecuted their cases through the eve of trial. It would therefore
11 make no sense for the Named Plaintiffs to be treated the same as other individual claimants who
12 have not done any of the above, rather than entering into a more streamlined process. If the
13 Moving Parties successfully litigate their individual claims against Google and take those cases
14 to the brink of trial, perhaps the Moving Parties will be able to participate in a similar arbitration
15 process. In any event, as noted above, the Named Plaintiffs' agreement to arbitrate their own
16 individual claims against Google in no way impacts the Moving Parties and their pursuit of
17 damages.

18       The Moving Parties' reliance on *In re Community Bank of Northern Virgnia* is misplaced,
19 and in fact undermines their Motion.[3] 418 F.3d 277, 314 (3d Cir. 2005). The Moving Parties
20 argue that since they are all absent class members they necessarily have an interest in the
21 Settlement. Mot. at 9; *see id.* at 314. That is untrue—the Moving Parties are not asserting the
22 interests of "absent class members" here since the Court did not certify a damages class. *Id*. The
23 Moving Parties only seek monetary relief, and the Moving Parties are already seeking this relief
24 on an individual basis in another court. Ex. 2 ¶ 120, at 42.

---

[3] "To be clear, we are in no way suggesting that absent class members who merely express dissatisfaction with specific aspects of the proposed settlement or that attorneys (who, after finding one or more class members as clients, and wish to share in the forthcoming fee), have the right to intervene. The goals of Rule 23 would be seriously hampered if that were permitted." *In re Cmty. Bank of N. Va.*, 418 F.3d at 315.

### ii. There is no risk that the Moving Parties' interests will be impeded by the Settlement.

Approval of the Settlement, which encompasses injunctive relief only, will in no way impede the Moving Parties' ability to secure the monetary relief they seek. No court—whether here or in California state court—has entered any ruling precluding the Moving Parties from pursuing damages from Google. Class Counsel was also careful to ensure that the Settlement did not impede any individuals' ability to bring individual claims for damages or appeal the Court's (b)(3) ruling (other than the Named Plaintiffs).

The Moving Parties nevertheless argue intervention is necessary to safeguard their following interests: (1) securing a copy of the Tolling Agreement, (2) "obtain[ing] access to all discovery exchanged in this action," and (3) "their "individual appellate rights in this action." Mot. at 8. None of these warrant intervention.

**The Tolling Agreement.** The Moving Parties' interest in the Tolling Agreement has nothing to do with *this* Settlement. The Tolling Agreement is not part of the Settlement, is not referenced in the Settlement Agreement, and was negotiated through a process completely divorced from the Settlement discussions. Most importantly, the Tolling Agreement is not related to the (b)(2) relief in any way; it concerns only BSF's and M&M's clients who brought individual damages claims in California state court. There is nothing extraordinary about the existence of a Tolling Agreement related to individual actions—which seek different relief than the Settlement and was filed in a separate court.

Try as they might to cast a shadow of suspicion over the Tolling Agreement, the Moving Parties fall far short of explaining why this Agreement impedes their rights. Since no counsel was appointed to represent the monetary interests of the putative Rule 23(b)(3) Class, no tolling agreement could be executed to toll damages on behalf of an uncertified damages class, and Google would not agree to one. Potter Handy has presented no legal authority showing the contrary. Absent such authority or agreement from Google, BSF and M&M executed a standard tolling agreement to protect the interests of their clients, which was negotiated and agreed to entirely separately from the Settlement. Mao Decl. ¶ 7. When the Court on May 1, 2023 denied

1  Class Counsel's request for clarification as to whether the Court's certification order tolled the statute of limitations on individual damages claims (Dkt. 941), Potter Handy should have been aware that statutes of limitation may have started to run when the Court denied Rule 23(b)(3) certification on December 12, 2022. Dkt. 803. Instead, Potter Handy waited until April 2024 to file lawsuits against Google. Mot. at 6. If Potter Handy was concerned about statutes of limitation running for their clients' claims, it could have easily filed sooner or negotiated a similar tolling agreement with Google. It did not. By contrast, BSF and M&M alone agreed to be retained by more than 96,000 individual clients and secured a Tolling Agreement for all of those clients. Potter Handy's wish for a do-over with respect to actions they never undertook as independent counsel for their own clients has nothing to do with a purported interest in the Settlement.

Besides, any interest the Moving Parties had in reviewing the Tolling Agreement is now moot, given Plaintiffs have disclosed it here. Any possible interest that either the Moving Parties or Potter Handy may have had to intervene based on the Tolling Agreement, has been extinguished. The Tolling Agreement also provides no basis on which to delay the final approval hearing. It is only 9 pages, and the Moving Parties are receiving it three weeks before the final approval hearing. They have plenty of time to concoct whatever arguments they will make.

**<u>Discovery Produced in This Case.</u>** Class Counsel in this case engaged in years of discovery, motion practice, Special Master proceedings, and sanctions hearings, and were prepared to the take the case to trial. It is therefore understandable that the Moving Parties would request access to the discovery already produced in this case, but they should do so in the court where their individual actions are pending rather than seeking an eleventh-hour delay of Settlement approval here. The Moving Parties are circumventing the meet-and-confer and motion to compel procedures in their state court case. The Moving Parties have made no effort to formally request this discovery in their state court actions, much less move the Santa Clara Superior Court for an order compelling this discovery. Other plaintiffs (including BSF and M&M's clients) will likely seek to use similar discovery in their cases, but they should do so through the proper procedures.

More importantly, the Moving Parties nowhere explain why it is necessary to amend the

Protective Order in this case. Mot. at 12. It isn't. The Protective Order already has a procedure for addressing this exact scenario—"a court order issued in other litigation that compels disclosure of any information or items" designated as protected material in this case. Dkt. 81 ¶ 10 (section describing what happens when protected material is subpoenaed or ordered produced in other litigation). If the Moving Parties file a motion to compel against Google in state court, and if that court orders Google to cross-produce documents that were produced in this case, then Google and Plaintiffs will each need to decide whether to seek a protective order in "the court from which the subpoena or order [is] issued"—*i.e.*, the state court. *Id.* The Moving Parties do not explain why this procedure is improper or how they would seek to change it. Regardless, any disputes about access to discovery materials from this case should be litigated in the state court actions. Intervention for this purpose should be denied.

**Appellate Rights.** The Moving Parties don't specify which "appellate rights" they seek to protect. Because their Motion does not raise any concerns about the agreed upon injunctive relief for the Rule 23(b)(2) Class Settlement, Plaintiffs interpret the Moving Parties as seeking to appeal the Court's denial of Rule 23(b)(3) certification. Mot. at 13; Dkt. 803.

That request would not be incompatible with the terms of the Settlement. As the Settlement Agreement makes clear, only the Named Plaintiffs extinguished their rights to appeal the Court's denial of 23(b)(3) certification, leaving the rights of the other class members (including the Moving Parties) unaffected. *See* Settlement (Dkt. 1097-3) at 1, 6 (stating "Plaintiffs' right to appeal the Court's order denying certification of the Rule 23(b)(3) class (ECF 803) is extinguished" and defining "Plaintiffs" as "Chasom Brown, William Byatt, Jeremy Davis, Christopher Castillo, and Monique Trujillo."). Since the Moving Parties' request to appeal the Court's denial of 23(b)(3) certification would not impact the Settlement, or this Court's ability to approve it, Plaintiffs take no position on whether they should be allowed to intervene on that basis, other than the reasons set forth herein (*i.e.*, why the Moving Parties are untimely and fail to show that the Court has jurisdiction over their requests).

However, the Moving Parties fail to explain how the denial of the Rule 23(b)(3) certification impedes their state court claims in any way. Indeed, the Moving Parties filed

individual actions in state court—and not a class action—presumably because the Moving Parties, like the more than 96,000 individuals that BSF and M&M represent in the individual actions, also found the findings of this Court otherwise suitable for individuals seeking damages outside the class context. Moreover, Plaintiffs have found no authority for the proposition that individual class members may intervene when they are not objecting to the underlying settlement agreement or the class certification motion and in fact have already filed their own individual lawsuits in a separate court regarding the identical dispute. The Moving Plaintiffs likewise don't cite any cases supporting such a circumstance.

### iii. Class Counsel and Plaintiffs have been vigorous advocates for the interests of the Class.

Class Counsel provided more-than-adequate representation on behalf of the Class throughout this litigation. Courts consider three criteria in determining whether representation is adequate: "(1) the interest of a party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) the present party is capable and willing to make such arguments; and (3) a proposed intervenor would not offer any necessary elements to the proceeding that other parties would neglect." *Exec. Risk Spec. Ins. Co. v. Rutter Hobbs and Davidoff, Inc.*, 564 F. App'x 887, 888 (9th Cir. Mar. 19, 2014) (cleaned up). "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises … [and] a compelling showing should be required to demonstrate inadequate representation. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *Allen*, 2012 WL 12887827, at *2 (citing *In re Cmty. Bank of N. Va.*, 418 F.3d at 315).

Here, the Motion does not propose any new arguments pertaining to settlement approval, or that Class Counsel would be uncapable or unwilling to make any new arguments.[4] *See* Mot.

---

[4] The Court has already found Class Counsel adequate: "As to counsel, the Court finds that counsel has extensive experience litigating privacy class actions and that given Counsel's experience, proposed class counsel can adequately represent the proposed class. Accordingly,

1  at 10–11. Instead, the Moving Parties argue that Class Counsel did not protect their individual
2  interests in seeking damages because they have "no expectation that class counsel will pursue
3  damages remedies" on behalf of the Moving Parties. Mot. at 11; *Exec. Risk Spec. Ins. Co.*, 564
4  F. App'x at 888. That is actually true—the Moving Parties are clients of Potter Handy and should
5  look to Potter Handy to do that. However, that does not mean that Class Counsel did not
6  adequately protect their interests in this case. Class Counsel vigorously sought damages
7  certification (Dkts. 609, 713), and when that was denied Class Counsel petitioned the Ninth
8  Circuit for permission to appeal this decision.[5] Class Counsel also sought clarification as to
9  whether the Court's order tolled the statute of limitations on individuals bringing damages claims
10 (Dkt. 832). Class Counsel was also careful to ensure that the Settlement did not impede any
11 individuals' ability to bring individual claims for damages or appeal the Court's (b)(3) ruling
12 (other than the named the Plaintiffs). Class Counsel has more than adequately protected the
13 Moving Parties' interests in seeking damages.

### iv. The Motion to Intervene is untimely.

15 The Moving Parties' Motion should also be denied as untimely. *Citizens*, 647 F.3d at 897.
16 The Court's decision to not certify a Rule 23(b)(3) class **nearly a year and a half ago**, and the
17 Ninth Circuit's denial of Plaintiffs' Rule 23(f) petition **well over a year ago** were publicly
18 reported by multiple news outlets, including Reuters, Tech Times, and Law Street. *See* Exs. 4–
19 6. Shortly after the Court denied 23(b)(3) certification, Class Counsel requested clarification on
20 whether the statues of limitation for Plaintiffs' damages claims remained tolled. Dkt. 832. While
21 the Court did not definitively answer this question, the Court's order suggests these limitations
22 periods may not be tolled. *See* Dkt. 941 at 2–3. Instead of moving to intervene once the Court
23 denied 23(b)(3) certification in December 2022, the Ninth Circuit rejected the Rule 23(f) petition
24 in March 2023, or once the Court declined to confirm damages claims were tolled in May 2023,
25 Potter Handy did nothing for a year. The Moving Parties tellingly expressed no concerns about

---

the Court finds that the adequacy requirement is met with respect to counsel and named plaintiffs." Dkt. 803 at 27. Nothing has since occurred which would upset this finding.
[5] *Brown v. Google LLC*, 22-80147, Dkt. 10 (9th Cir. Mar. 1, 2023).

1 Class Counsel's representation during this time, and only moved to intervene months after the
2 Settlement approval motion was filed and on the eve of the final approval hearing. Mao Decl. ¶
3 4. Indeed, the latest the Moving Parties can claim they were or should have been on notice of the
4 settlement terms and should have objected to any aspect of the Settlement was April 1, 2024, the
5 day Plaintiffs filed their unopposed Motion for Settlement Approval (and again, was widely
6 reported in the press). Dkt. 1096. Yet, the Moving Parties again did nothing for several months,
7 only objecting on the eve of the Settlement hearing.

8     Courts generally find such transparent efforts to intervene to stall settlement untimely.
9 *See Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015) ("We are not persuaded that
10 [intervenors'] motion was timely, because the motion was filed after four years of ongoing
11 litigation, on the eve of settlement . . ."); *see also CE Design Ltd. v. King Supply Co.*, 791 F.3d
12 722, 726 (7th Cir. 2015) ("At th[is] late stage the only object of the intervention could be to block
13 the settlement and put the class action suit back where it had been in 2009. So gratuitous an
14 extension of a multi-year litigation should not be encouraged."). That is particularly true here,
15 where the Moving Parties appear to have no real objective in intervening in the Settlement or
16 delaying its approval, other than gratuitously creating leverage through the threat of delay.

17     **B. There Is No Basis for Any Permissive Intervention.**

18     There is likewise no basis for permissive intervention here because this Court does not
19 have jurisdiction over the Moving Parties. This Court has jurisdiction in *Brown* for three reasons.
20 First, CAFA, 28 U.S.C. § 1332(d), provides subject matter jurisdiction because the matter is a
21 class action with an amount in controversy exceeding $5,000,000, and at least one class member
22 was a citizen of a state other than California or Delaware. Second, 28 U.S.C. § 1331 confers
23 subject matter jurisdiction over Plaintiffs' federal wiretap claim. Third and finally, 28 U.S.C. §
24 1367 confers supplemental jurisdiction over the Plaintiffs' remaining state law claims. The hooks
25 that confer jurisdiction over the *Brown* litigation are not present for the Moving Parties. The
26 Moving Parties are proceeding individually and they are not asserting any federal claims. *See* Ex.
27 2 ¶¶ 129–221. The Moving Parties are all residents of California. *See id*. ¶ 125 ("Plaintiffs, and
28 each of them, are residents of California …"); 28 U.S.C. § 1332. The deadline for any removal

passed, and those claims will proceed in state court. Accordingly, permissive intervention is inappropriate here. *See Donnelly*, 159 F.3d at 412 ("An applicant who seeks permissive intervention must prove … the court has an independent basis for jurisdiction over the applicant's claims.").

Permissive intervention is also inappropriate because it would cause undue delay and prejudice to the existing parties. *See id*. The Parties have been engaged in hard-fought litigation for over four years, and they worked under the supervision of Judge Phillips for more than four months to mediate and negotiate a compromise that provides substantial injunctive relief to the Rule 23(b)(2) class certified by this Court. Mao Decl. ¶ 5. While Google agreed to implement changes to its disclosures immediately, without waiting for final approval, other aspects of the negotiated injunctive relief will only be implemented upon approval by the Court. The Parties will undoubtedly suffer significant prejudice if their progress is thwarted by applicants who chose to wait until a month before the final approval hearing to file their Motion. *See Allen*, 787 F.3d at 1222 (Motion to intervene "threatened to prejudice settling parties by potentially derailing settlement.").

### C. There Is No Basis to Delay the Final Approval Hearing.

The Moving Parties have also not provided any basis for the Court to continue the final approval hearing, which was scheduled months ago after multiple attempts to find a date that accommodated counsel for the Parties and the Court. The Moving Parties seek a continuance "to obtain additional information in order to properly evaluate the fairness of the proposed Settlement Agreement." Mot. at 10. Putting aside what that even means, all the information the Moving Parties need to evaluate the Settlement has been publicly available on the docket for more than three months. *See* Dkts. 1096–99, 1102. Even if the tolling agreement BSF and M&M executed on behalf of their private clients were relevant to evaluating the Settlement (it is not) it surely will not take the Moving Parties more than three weeks read and evaluate this 9-page, largely boilerplate document and its addendums.

Nothing in the Motion demonstrates the Moving Parties had insufficient time, would benefit from additional time, or offered any good reason for continuing the final approval hearing

for this case which began four years ago without any assistance from the Moving Parties or their counsel. Moving the approval hearing would also delay the important injunctive relief provided with this Settlement. Furthermore, even if the Court allows intervention there is no reason to postpone the final approval hearing. Because the Moving Parties do not (and cannot) object to the Rule 23(b)(2) Settlement, the approval hearing should go forward and the Settlement should be approved regardless of whether the Court permits intervention. Their request to intervene is untethered to final approval.

## V. CONCLUSION

Plaintiffs respectfully ask the Court to deny the Moving Parties' Motion.

Dated: July 16, 2024

By /s/ Mark C. Mao
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520

Los Angeles, CA 90067
Tel.: (213) 629-9040
alanderson@bsfllp.com
mwright@bsfllp.com

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913

*Attorneys for Plaintiffs*