# Declaration of Mark C. Mao

# Exhibit 2

POTTER HANDY, LLP
Mark Potter, Esq., SBN 166317
Barry M. Walker, SBN 195947
Claire Cylkowski, Esq., SBN 335352
Mail: 100 Pine St., Ste. 1250
San Francisco, CA 94111
(858) 375-7385; (888) 422-5191 fax
serve@potterhandy.com
Attorneys for Plaintiff

E-FILED
4/23/2024 4:16 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
24CV436497
Reviewed By: L. Martinez

## SUPERIOR COURT OF CALIFORNIA
## SANTA CLARA COUNTY

Ivan Zermino, Adam Schultz, Christy Swint, et al.,

Plaintiffs,

v.

**GOOGLE LLC,**

Defendant.

Case No. 24CV436497

**COMPLAINT**

1. INVASION OF PRIVACY ACT VIOLATIONS, CAL. PENAL CODE §§ 631 & 632
2. VIOLATIONS OF THE COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA"), CAL. PENAL CODE §§ 502 ET SEQ.
3. INVASION OF PRIVACY;
4. INTRUSION UPON SECLUSION;
5. BREACH OF CONTRACT;
6. VIOLATION OF CA UCL, CAL BUS. & PROF CODE §§ 17200, *ET. SEQ.*
7. NEGLIGENCE PER SE
8. LARCENY / RECEIPT OF STOLEN PROPERTY, CAL. PENAL CODE §496(a), (c)
9. TRESPASS TO CHATTELS

DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiffs, **Ivan Zermino, Adam Schultz, Christy Swint, et al. (Attachment 1)** and each of them, individually (Hereinafter "Plaintiffs") file this Complaint against defendant Google LLC ("Google" or "Defendant"), and in support allege the following.

## SUMMARY:

1.  This lawsuit concerns Google's surreptitious interception, collection, saving, and selling of each of Plaintiffs' personal and sensitive user data while in "private browsing mode." "Private browsing mode" on Google Chrome is called "Incognito mode".

2.  Upon information and belief, Plaintiffs allege Google intercepts, tracks, collects, saves, and sells data from everyone using any of its services and platforms, without user consent.

3.  Through its consumer-facing products and services – and its business advertising and surveillance tools – Google amasses data about billions of people for the purpose of creating detailed user profiles in furtherance of targeted advertising, or for developing their own proprietary products to market.

4.  Google accomplishes its surreptitious interception and data collection through unlawful and unfair means.

5.  Google's services are ubiquitous on the internet as the majority of websites use Google Analytics and Ad Manager. To use these services, Google requires website developers to embed Google's code onto their websites and agree to its Privacy Policy. Google does not tell website developers that it tracks their visitors even when they are in "private browsing mode".

6.  Whenever account holders, like Plaintiffs, visit a website that is running Google Analytics, Ad Manager, or some similar Google service, Google's

software is tracking them.

7.   By design, Google's system is constantly tracking data. Once a user visits a website, the user's browser sends a "GET" request to the website to retrieve it. At the same time, the user's browser reads Google's code, which is embedded on the website. *Google's code instructs the user's browser to send a second and concurrent transmission directly to Google.* This second transmission tells Google *exactly* what a user's browser communicated to the website.

8.   Google then takes users' personal information and associates it with preexisting account holder profiles.

9.   The personal information that Google sells, shares, and uses includes the very sensitive private personal information Google **promises** it would not use for advertising purposes. The personal data identifies individual account holders, their devices, and their locations; the specific content of their Internet communications; including highly personal information Plaintiffs specifically seek to keep private.

10. Google's surreptitious tracking happened even when each of the Plaintiffs followed the steps that Google itself advised to safeguard their data.

11. Since 2016, Google has represented that users are "in control of what information [they] share with Google," leading users like Plaintiffs, and each of them, to reasonably believe that they had the power to limit what data Google tracks, collects, stores and shares with third parties.

12. Despite following Google's guidance for how to browse the web privately by using "Incognito mode" to prevent Google from saving their web and app activity data, **Google still intercepted, collected, and sold Plaintiffs' data.**

13. Google's surreptitious data harvesting enables Google to offer higher quality, more targeted, advertisements to users. This is at the core of Google's

Complaint

business: hundreds of billions of dollars in revenue come from selling targeted advertisements to other companies.

14. By stealing and then selling users' private information, Google prevents those users from monetizing their own data while unjustly enriching itself.

15. Google further unjustly benefits from this unlawful data collection by using the data to develop its own proprietary products to sell.

16. Google's practices infringe upon users' privacy and intentionally deceive consumers at a time when the users are expressly seeking to safeguard their important and valuable private data.

17. State privacy laws recognize and protect individuals' reasonable expectations of privacy in confidential communications under these circumstances, and these laws prohibit Google's unauthorized interception and subsequent use of these communications.

18.    Plaintiffs simply seek compensatory, statutory and punitive damages, and by its unlawful and outrageous conduct.

## **JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction over this action pursuant to Article VI, section 10 of the California Constitution and Code of Civil Procedure section 410.10.

20. This Court has personal jurisdiction over Defendant because it is headquartered in the State of California, county of Santa Clara, and purposefully avails itself of the laws, protections, and advantages of this State.

21. Venue is proper in this Court because Defendant conducts business in this County and reaped substantial profits from customers in this County. In addition, in its own Terms of Service, Defendant has agreed "…to submit to the exclusive jurisdiction of any state or federal court located in Santa Clara County, California (except for small claims court actions which may be

brought in the county where you reside), and waive any jurisdictional, venue, or inconvenient forum objections to such courts." Finally, a substantial part of the acts and conduct charged herein occurred in this County.

## FACTUAL ALLEGATIONS REGARDING GOOGLE

**A. Google's "Privacy Policy", "Privacy Controls", and "Incognito Mode" Landing Page, Each Falsely State that Users Can Prevent Google's Data Collection by Using "Private Browsing Mode"**

22. Google has repeatedly represented that users have control over what information is shared with Google and that users can prevent Google from tracking their browsing history and collecting their personal data online.

23. Google did not represent in any disclosure to Plaintiffs that it would continue to intercept, track, and collect communications even when they were in "private browsing mode."

24. Google never notified Plaintiffs that Google would intercept users' communications while in a private browsing mode, and that Google was doing so for purposes of creating user profiles or providing targeted advertisings. Google's representations instead misled Plaintiffs into believing that their communications during private browsing were not intercepted and used to create user profiles or provide targeted advertising.

### i. Privacy Policy

25. Plaintiffs allege dating back June 2016 until December 2023, Google's Privacy Policy (the "Privacy Policy"), has made numerous representations about how users can "control" the information users share with Google and how users can browse the web anonymously and without their communications with websites being intercepted.

26. Google's Privacy Policy starts by stating in the Introduction section that "you can adjust your privacy settings to control what we collect and how your

information is used" and that "[y]ou can choose to browse the web privately using Chrome in Incognito mode."

27. Upon information and belief, Plaintiffs allege that as far back as June 2016, Google's Privacy Policy has said, "We will respect the choices you make to limit sharing or visibility settings in your Google Account."

28. Upon information and belief, Plaintiffs allege that under "Your privacy controls" Google reiterates, "[y]ou have choices regarding the information we collect and how it's used."

29. Upon information and belief, Plaintiffs allege that on the "My Activity" section of the Privacy Policy, Google reiterates that "My Activity allows you to review and control data that's created when you use Google services, like searches you've done."

### ii.  Privacy Controls

30. Upon information and belief, Plaintiffs allege that users interested in controlling what Google collects are directed to the "Control Panel" of the Privacy Policy, where Google assures users that "[t]o browse the web privately, you can use private browsing" and that "[i]f you want to search the web without saving your search activity to your account, you can use private browsing mode in a browser (like Chrome or Safari)."[1]

31. Upon information and belief, Plaintiffs allege that when users click on "Go to My Activity" to control their data, they are presented with the option to "Learn more." When users click on "Learn more," they are taken to a page where they are supposed to be able to "View & control activity in your account." On that page, Google states that you may "[s]top saving activity temporarily. . . . You can search and browse the web privately," embedding a hyperlink to the "Search & Browse Privately" page.

---

[1] https://support.google.com/websearch/answer/4540094?.

Complaint

### iii.  How to Search & Browse Privately

32. On the "Search & Browse Privately" page, Google reiterates that the user, not Google, is "in control of what information [a user] . . . share[s] with Google . . . ." Google states simply that consumers enabling "private browsing mode" will allow consumers to "browse the web privately." [2]

33. There is nothing on this page about Google Analytics, Google Ad Manager, any other Google data collection tool, or where and which websites online implement such data collection tools when users are privately browsing.

34. Upon information and belief, Plaintiffs allege that from the "View & control activity in your account" page referenced above, a consumer can also click the link, "Find & control your Web & App Activity" on the right-hand side. On that page, Google again says that searching and browsing in "private browsing mode" will "turn off" any "search customization" "using search-related activity."

35. Upon information and belief, Plaintiffs allege that when users click the "Learn how" link, they are again redirected back to the "Search & Browse Privately" page. In other words, because Google repeatedly touts that users can "control" the information they share with Google and Google constantly refers users back to its recommendations on how users may "browse the web privately," users are left with only one reasonable impression—if they are searching or browsing the web in "private browsing mode," Google will honor their request to be left alone.

### iv.  Incognito Mode: Google's Own Private Browsing Mode

36. "Incognito mode" is Google's name for the "private browsing mode" of Google's own web browser software, Google Chrome.

---

[2] *See* SEARCH & BROWSE PRIVATELY,
https://support.google.com/websearch/answer/4540094?hl=en&ref_topic=3036132.

37. Upon information and belief, Plaintiffs allege the Incognito mode landing page tells users "You've gone incognito" and "Now you can browse privately" whenever a user enters Incognito mode.

38. Based on these Google representations, Plaintiffs and each of them, reasonably expected that Google would not collect their data while in Incognito mode. They reasonably understood "You've gone incognito" and "Now you can browse privately" to mean they could browse privately, without Google's continued tracking and data collection.

39. Google could have disclosed on this Incognito mode landing page that Google would track users and collect their data while they were browsing privately, but Google did not do that. Instead, Google included representations meant to assure users that they had "gone incognito" and could "browse privately" with only limited exceptions, none of which included Google's own tracking and data collection practices while users were in "private browsing mode".

40. Google's representations about how it does not track users under these conditions are false, and contrary to the new privacy laws and its 2011 Consent Decree. Not only do consumers (including Plaintiffs) not know about what Google is doing to collect data on them, they have no meaningful way of avoiding Google's data collection practices, even if they are following Google's instructions to "browse the web privately".

**B.  Google Surreptitiously Intercepts Communications Between Users and Websites to Collect Personal User Data and Communications Even When the Users are in "Private Browsing Mode"**

      **i.  The Data Surreptitiously Collected**

41. As described above, whenever a user (even a user in "private browsing mode", including Plaintiffs, and each of them) visits a website that is running

Complaint

Google Analytics or Google Ad Manager, Google's software scripts on the website surreptitiously direct the user's browser to send a secret, separate message to Google's servers in California.

42. This secret separate message contains: The "GET request" sent from the user's computer to the website; the IP address of the user's connection to the internet; information identifying the browser software the user is using, including any "fingerprint" data (as described further below); any "User-ID" issued by the website to the user, if available; Geolocation of the user, if available; Information contained in "Google cookies," which were saved by the user's web browser on the user's device at any prior time.

43. Google does not notify users of this secret Google software code designed to collect user data even while they are browsing privately, which is hidden from users and runs without any notice to users of the interception and data collection. This interception and data collection exceeded all contemplated and authorized use of their data. Users also have no way to remove the surreptitious code or to opt-out of its functionality.

44. Plaintiffs believe and, on that basis, allege Google specifically designed the software to render ineffective any barriers users may wish to use to prevent access to their information, including by browsing in Incognito mode or other private browsing modes.

45. Private browsing modes are supposed to provide users with privacy, as represented by Google, but Google's software by design circumvents those barriers and enables Google to secretly collect user data and profile users.

46. Google collects precisely the type of private, personal information users wish and expect to protect when they have taken these steps to control what information is shared with Google. Google's tracking occurred and continues to occur no matter how sensitive or personal users' online activities are.

Complaint

### ii. How Google Collects Data Using Google Analytics

47. The vast majority online website publishers on the internet utilize Google's website visitor-tracking product, "Google Analytics," in addition to other Google advertisement technology products (hereinafter the "Website"). Google Analytics provides data analytics and attribution about the origins of Website's traffic, demographics, frequency, browsing habits on the Website, and other data about visitors. Google Analytics is a "freemium" service that Google makes available to websites.[3] Google Analytics is essential to Google for its targeted advertisement services and makes Google Search and its rankings possible by tracking the billions of visits to various Websites every day.

48. To implement Google Analytics, Google requires that Websites embed Google's own custom code into their existing webpage code. When a user visits a website, their browser communicates a request to the Website's servers to send the computer script to display the Website. The user's browser then begins to read Google's custom code along with the Website's own code when loading the Website from the Website's server.

49. Thus, two sets of code run as part of the browser's attempt to load and read the Website pages—the Website's own code, and Google's embedded code.

50. Plaintiffs believe and, on that basis, allege Google's embedded code causes the second and concurrent secret transmission from the user's browser (on the user's computer or other connected device), containing the duplicated message between the user and the Website, to be combined with additional data such as the user's prior browsing history and other Google trackers and

---

[3] Google Analytics is "free" to implement, but the associated data and attribution reports come at a price tag when Websites want more specific information. To obtain more specific and granular data about visitors, Websites must pay a substantial fee, such as by paying for Google's DV360, Ad Hub, or Google Audience products.

identifiers, to be sent to Google's servers.

- **User-ID**

51. For larger websites and publishers that are able to pay Google's additional fees, Google offers an upgraded feature called "Google Analytics User-ID," which allows Google to map and match the user (including Plaintiffs) to a specific unique identifier that Google can track across the web. The User-ID feature allows Websites to "generate [their] own unique IDs, consistently assign IDs to users, and include these IDs wherever [the Websites] send data to Analytics." Because of Google's omnipresence on the web, the use of User-IDs can be so powerful that the IDs can identify related actions and devices and connect these seemingly independent data points.

52. This User-ID information is even more useful to Google than the individual websites. Across millions of websites, Google is able to use its secretly embedded computer scripts and User-IDs to compile what URLs the same users are viewing, even when they are in "private browsing mode", adding all of this information to Google's stockpile of user profiles.

- **Cookies**

53. Google also uses various cookies to supplement Google Analytics' tracking practices. Google Analytics contains a script that causes the user's browser to transmit, to Google, information from each of the Google Cookies already existing on the browser's cache. These Cookies typically show, at a minimum, the prior websites the user has viewed.

54. Google typically has its Cookies working with Google Analytics coded as "first party cookies," so that consumers' browsers are tricked into thinking that those Cookies are issued by the Website and not Google. This makes it difficult for consumers to block Google's Cookies, even if consumers tried to block or clear the cookies issued by "third parties."

Complaint

### ii. How Google Collects Data Using Ad Manager

55. In addition to Google Analytics, the majority of website publishers utilize another Google tracking and advertising product, called "Google Ad Manager" which also collects the users' URL viewing history.

56. Like Google Analytics, Google Ad Manager requires Google code to be embedded into the Website's code. When the user's browser sends a communication to the website, asking for content to be displayed (i.e., the URL), the embedded Google code causes the user's browser to display targeted Google advertisements. These targeted ads are displayed along with the Website's actual content. These advertisements are shown to the user on behalf of Google's advertising customers, allowing Google to make money.

57. Google Ad Manager also uses Approved Pixels and Cookies to track users across the internet. Like Google Analytics, Google Ad Manager begins collecting information on a user before the content for the webpage has even fully loaded.

58. Plaintiffs believe and therefore allege, that in order to maximize Google's revenue, Google Ad Manager is set up to automatically retarget a user based on information that Google has previously collected. Thereafter, Google continues to track and target the same user across the internet.

59. In many cases, the intercepted communications provide the "context" for targeted "contextual advertising" for Google, where Google combines the URL the consumer is viewing, with what Google knows about that user (e.g., Google Analytics User-ID, geolocation), to target the consumer in the "context" of his or her web experience. Because of Google's pervasive presence on the internet, its unparalleled reach, and its uncanny ability to so target consumers, advertisers are willing to pay a premium for Google's advertisement services.

60. As with Websites implementing Google Analytics, Websites using Ad

Complaint

Manager do not consent to Google collecting data for Google's own purposes while users have enabled "private browsing mode". On information and belief, Google never receives consent from Websites implementing Ad Manager that Google may continue to intercept user activity and user data for its own purposes when users are in a private browsing mode. Indeed, Google represents to consumers and Websites alike that it will adhere to its own Privacy Policy.

### iii. Google Analytics and Google Ad Manager Intercepts Communications and Collects Data from Users Even When in "Private Browsing Mode"

61. Plaintiffs believe and therefore allege that even when users are browsing the internet in "private browsing mode", Google continues to track them, profile them and profit from their data whenever they visit a website that uses Google Analytics or Google Ad Manager. Google collects precisely the type of private, personal information users wish and expect to protect when they have taken these steps to control what information is shared with Google. Google's tracking occurred and continues to occur no matter how sensitive or personal users' online activities are.

### iv. Google Collects "Fingerprinting" Data of Users in "Private Browsing Mode"

#### 1. X-Client-Data Header

62. Another powerful tool Google uses in building detailed profiles of users is the X-Client-Data Header.

63. Google's Chrome browser identifies every device upon the first installation of Chrome with a unique digital string of characters called Google's "X-Client-Data Header," such that Google uniquely identifies the device and user thereafter. Whenever Chrome is used, the Google browser is constantly transmitting this X-Client-Data Header to Google servers.

Complaint

64. *Through the X-Client-Data Header, Google can tell whether a user is in Incognito mode or not.* The X-Client Data Header is present in all Chrome-states except when the user is in Incognito mode. This feature effectively makes whether or not a user thinks they are browsing in private an additional data point that is sold.

65. The X-Client-Data Header allows Google to track Chrome users across the web, because it remains unchanged even if users "clear their browser cache" of cookies.[4]

### 2. GStatic

66. GStatic, which is a Google-hosted service for fonts, where Google loads the fonts displayed on the Website, instead of the Website's web server. A significant portion of Websites also use this service. Google sells this service as something that allegedly helps to reduce bandwidth and improve loading time, because Google is hosting the fonts. Plaintiffs believe and, on that basis, allege that GStatic is an additional way that Google identifies and tracks consumers, including when consumers are in "private browsing mode".

### 3. Google Approved Pixels

67. Google also authorizes Websites to place digital pixels ("Google Approved Pixels") embedded within the Websites' code.28 These pixels are typically created and maintained by "approved third parties" (such as comScore, a data broker registered with California's CCPA data broker registry).

68. When a user's web browser accesses a website containing a Google Approved Pixels, that browser responds to the pixel by generating a unique display. Each user's display is unique because it is generated in part, from certain digital signatures that are unique to each specific device (in

---

[4] *See* Thomas Claburn, *Is Chrome Really Secretly Stalking You Across Google Sites Using Per-Install ID Numbers? We Reveal the Truth*, THE REGISTER (Feb. 5, 2020), https://www.theregister.co.uk/2020/02/05/google_chrome_id_numbers/.

combination with the browser software running on the device). Plaintiffs believe and, on that basis, allege that by tracking these pixels and the unique resulting displays, Google and its data-broker partners are able to track and "measure" consumers across the web.

69. GStatic and Google Approved Pixels enable Google to identify consumers because the way the fonts and pixels are displayed on the browser help to uniquely identify whom the user is. This again is another set of data surreptitiously collected by Google via the consumer's browser which is added to the duplicated communications between the user and Websites, which Google collects even when users are in "private browsing mode".

## C. The Information Intercepted, Collected, Shared, and Sold, by Google Is Personal Information as Defined by California Law

70. California law defines "personal information" to include any "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." CAL. CIV. CODE § 1798.140(v)(1).

71. California law also includes a specific, non-exhaustive list of "personal information" that includes personal identifiers, online identifiers, IP addresses, email addresses, account names, characteristics of protected classifications, purchase history or consideration, Internet or other electronic network activity, including browsing history, geolocation data, employment-related information, education information, and "inferences drawn" from these sources "to create a profile about a consumer reflecting the consumer's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes." CAL. CIV. CODE § 1798.140(v)(1).

Complaint

72. The data that Google intercepts, collect, shares, and sells, is "personal information" under California law.

### 1. Google Creates User Profiles by Using Confidential Personal Information

73. As stated above, the core of Google's business model is targeted advertising. The bulk of Google's revenue comes from what companies pay Google for targeted advertising, both on Google Search and on various websites and applications that use Google services. The more accurately Google can track and target consumers, the more advertisers are willing to pay Google's high advertisement fees and services.

74. Google creates detailed "profiles" on each user and their devices, and then associates the data (collected from users in private browsing mode) with those users' pre-existing Google "profiles." Doing so improves the "profiles" and allows Google to sell more targeted ads to those users.

75. Google strives to build "profiles" on each individual (including Plaintiffs) and each of their devices. These "profiles" contain all the data Google can collect associated with each individual.

76. The "personal information" of Plaintiff, and each of them, that Google uses to identify and profile, includes, but is not limited to:

- **Google Analytics User-ID**

77. Google Analytics User-ID enables Google to associate the data collected from users in "private browsing mode" with specific and unique user profiles. Google does this by using a unique identifier of the user it collects from Websites, and Google Cookies that it collects across the internet on the same user. Google Analytics User-ID is "personal information" under California law because they are reasonably capable of being associated with and could reasonably be linked, directly or indirectly, with a particular consumer or household.

- **Google Cookies and cookie related identifiers.**

78. A cookie is a small text file that a web-server can place on a person's web-browser and computing device when that person's web browser interacts with the website server. Cookie-related identifiers include "beacons, pixel tags, mobile ad identifiers … and other forms of persistent or probabilistic identifiers that can be used to identify a particular consumer or device." CAL. CIV. CODE § 1798.140(x),(aj).

79. California law defines a "unique identifier" to expressly include "a persistent identifier that can be used to recognize a consumer, a family, or a device that is linked to a consumer or family, over time and across different services, including but not limited to … cookies, beacons, pixel tags, mobile ad identifiers, … or other forms of persistent or probabilistic identifiers that can be used to identify a particular consumer or device." Id. § 1798.140(aj).

80. Cookies and cookie-related identifiers are "personal information" under California law because they are reasonably capable of being associated with and could reasonably be linked, directly or indirectly, with a particular consumer or household.

- **Device Identifier**

81. A device identifier is a number that identifies a device. Device identifiers are commonly used to identify and track Internet communications of specific users. California law specifically lists "device identifiers" as "unique personal identifiers." CAL. CIV. CODE § 1798.140(aj). Device identifiers are "personal information" under California law because they are reasonably capable of being associated with and could reasonably be linked, directly or indirectly, with a particular consumer or household.

- **Geolocation**

82. California law specifically includes "geolocation data" in the definition of "personal information." See CAL. CIV. CODE § 1798.140(v)(1)(G).

Complaint

Geolocation is commonly used to identify and track Internet communications of specific users. The dissemination of geolocation data connected to network activity poses drastic privacy consequences for users – regardless of whether the specific content of their Internet communications is sold or shared.

- **IP address information.**

83. An IP address is a number that identifies a computer connected to the Internet. IP addresses are used to identify and route communications on the Internet. Google tracks IP addresses associated with specific users. Google keeps a record of every IP address that it has ever associated with an account holder in each account holder's Google Account. IP address information is transmitted to Google's servers during the private and non-private browsing sessions. Google correlates and aggregates all of this information to create profiles on the consumers. IP addresses are "personal information" as a matter of law. CAL. CIV. CODE § 1798.140(v)(1)(A).

- **User-Agent Information**

84. A user-agent is an identifier that identifies the application, operating system, and version of the application and operating system for a specific user making a communication.

85. A user-agent alone may or may not be personal information. However, when used in combination with other identifiers, it is capable of directly or indirectly identifying a specific individual or household.

86. When multiple devices share a specific IP address on a single network, Google associates additional User-Agent information with each IP address that it associates with a Google account holder.

87. User-Agent information is "personal information" under California law when disclosed in connection with an IP address because it is information that is reasonably capable of being associated with or could reasonably be linked, directly or indirectly, with a particular consumer or household."

Complaint

- **Browsing History and Information Regarding a Consumer's Interaction with an Internet Website, Application, or Advertisement**

88. California law expressly includes within the definition of "personal information" "Internet or other electronic network activity information, including but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet web site, application, or advertisements." CAL. CIV. CODE § 1798.140(v)(1)(F).

89. The information that Google disseminates about users is easily linked to individual users to personally identify them. Furthermore, Google is well aware that entities that regularly buy ad space maintain their own data sets and are capable of automatically cross-referencing their own data so as to identify the individual user.

- **Google "fingerprinting"**

90. Google "fingerprinting" is a method of identifying information regarding the consumer from various Google fingerprinting technologies that uniquely identify the device. Because every device and application installed has small differences, images, digital pixels, and fonts display differently for every device and application, just ever so slightly. By forcing a consumer to display one of its images, pixels, or fonts, online, Google are able to "fingerprint" their users and consumers across the internet, with or without their permission.

91. Fingerprint data is "personal information" because it identifies, relates to, describes, and is reasonably capable of being associated with, or could reasonably be linked directly to a particular consumer or household as described in CAL. CIV. CODE § 1798.140(v)(1).

///

**D. Google Rakes in Huge Profits from Its Surreptitious Collection of User Data**

92. Google's continuous tracking of users is no accident.

93. Google's enormous financial success results from its unparalleled tracking and collection of personal and sensitive user information and private communications (including Plaintiffs') and selling and brokering of that user information to optimize advertisement services.

94. Plaintiffs believe and, on that basis, allege Google profits from the data it collects – including the user data collected while users are in a private browsing mode – in at least three ways.

95. *First*, Google associates confidential communications and data with a user profile or profiles, to enrich Google's ability to charge its customers for advertisement-related services.

96. *Second*, Google then uses the intercepted confidential communications and user data (in combination with the user's profile) to direct targeted advertisements to consumers (including Plaintiffs and each of them).

97. *Third*, Google uses the results to improve Google's own algorithms and technology, such as Google Search and Bard AI.

98. The data Google collects contains consumers' personal viewing information. Google intercepts, collects, reads, analyzes the contents of, and organizes this data based on consumers' prior histories. Google creates "profiles" for each individual user and/or each individual device that accesses the Internet. Google seeks to associate as much information as possible with each profile because, by doing so, Google can profit from Google's ad-targeting services.

99. Likewise, Google Ad Manager is a service that generates targeted advertisements to be displayed alongside third-party websites' content. The user profiles, which Google creates and maintains using the collected user

data, are used by Google's algorithms to select which ads to display through Google.

100.    Plaintiffs believe and, on that basis, allege Google is paid handsomely for these advertisements by the third-party advertisers. Google is able to demand high prices for these targeted-advertising services because Google uses user profiles (including data that Google obtained from users while in "private browsing mode") to select and display advertisements targeted at those specific profiles.

101.    Plaintiffs are informed and believe that Google also benefits by using the data it collects to improve and refine existing Google products, services, and algorithms and also to develop new products, services and algorithms. This collection, usage, or monetization of user data renders moot the steps Plaintiffs have taken to try to control their information from being tracked or used by Google without their consent.

102.    The trackers that Google has across the internet tell Google where consumers went subsequent to searching on Google Search, and they allow Google to track what websites are popular and how often they are visited. By compiling not just consumer profiles, but vast surveys of human behavior across the majority of web browser activity, Google is able to create a more effective search product as compared to its competitors.

103.    Google reaps substantial profits from users, including Plaintiffs, by acquiring their sensitive and valuable personal information, which includes far more than mere demographic information and volunteered personal information like name, birth date, gender and email address.

104.    The information Google tracks have massive economic value. This value is well understood in the e-commerce industry, and personal information is now viewed as a form of currency. Likewise, the cash value of the personal user information unlawfully collected by Google can be

Complaint

1   quantified.

2        105.    Google itself was willing to compensate users for the exact type

3   of communications that Google illegally intercepted from Plaintiff. [5]

4        106.    A number of platforms on the market enable consumers to

5   monetize their own data and prevent tech companies from targeting them

6   absent their express consent.

7        107.    The California Consumer Protection Act (CCPA) recognizes that

8   consumers' personal data is a property right. Not only does the CCPA prohibit

9   covered businesses from discriminating against consumers that opt-out of data

10   collection, the CCPA also expressly provides that: "[a] business may offer

11   financial incentives, including payments to consumers as compensation, for

12   the collection of personal information, the sale of personal information, or the

13   deletion of personal information." Cal. Civ. Code §1798.125(b)(1). The CCPA

14   provides that, "[a] business shall not use financial incentive practices that are

15   unjust, unreasonable, coercive, or usurious in nature." Cal. Civ. Code §

16   1798.125(b)(4).

17        108.    Through its false representations and unlawful data collection,

18   Google is unjustly enriching itself at the cost of consumer choice, when the

19   consumer would otherwise have the ability to choose how they would

20   monetize their own data.

21        109.    Google's unlawful practices have been extensively litigated in a

22   class action lawsuit filed in federal court in June 2020, where the federal court

23   denied Google's motions to dismiss and for summary judgment and also

24   granted Rule 23(b)(2) certification for two nationwide classes seeking

25   injunctive relief. *Brown v. Google LLC,* No. 4:20-cv-03664-YGR-SVK, Dkts.

26   53, 82, 87, 89, 92, 113.  Google intentionally and falsely led users to believe

27

28   ―――――――――――――
[5] Jack Marshall, *Google Pays Users for Browsing Data*, DigiDay (Feb. 10, 2012),
https://digiday.com/media/google-pays-users-for-browsing-data/

that they could limit Google's data collection practices by setting their Chrome browser to Incognito mode. The claims for damages here are all based on facts alleged in the Brown Lawsuit.

110.    The Brown lawsuit led to discovery of admissions by Google employees in their own documents that Google was intentionally deceiving users.

**E. Tolling the Statute of Limitations**

111.    Any applicable statutes of limitations have been tolled under (1) the fraudulent concealment doctrine, based on Google's knowing and active concealment and denial of the facts alleged herein and (2) the delayed discovery doctrine, as Plaintiffs did not and could not reasonably have discovered Google's conduct alleged herein until shortly before the Complaint was filed.

112.    Google repeatedly and falsely represented that its users (including Plaintiffs and each of them) could prevent Google from tracking users and collecting their information, such as by using a browser in "private browsing mode."

113.    Google never disclosed that it would continue to track users and collect their data once these steps were performed, nor did Google ever admit that it would still attempt to intercept, collect, aggregate, and analyze user data so that it can continue to track individual users even when the user has followed Google's instructions on how to browse privately.

114.    Google also further misled users by indicating that data associated with them would be viewable through their account, but Google did not include the user data at issue in this lawsuit (data collected while in Incognito mode) in user accounts. Google's failure to do so is part of Google's active deception and concealment.

115.     Google's representations are false. Google did not provide users with control and permit them to browse privately, and Google instead continued to intercept users' communications and collect user data while users were in a private browsing mode. These Google representations, at a minimum, omitted material facts that would be necessary to make the statements made not misleading, as they left the false impression that Google did not intercept and collect users' data while they were in "private browsing mode".

116.     Moreover, Google's labeling of the relevant products "Incognito mode" and "private browsing" is, in and of itself, misleading absent clear disclosures about the ways in which Google intercepts and uses users' private data. Indeed, "incognito" is defined as "with one's identity concealed." Private is defined as "not known or intended to be known publicly: secret." However, as alleged above, Google in fact intercepts users' private data and then associates that data with the user's profile across its services—hardly "private" or "Incognito" at all.

117.     Plaintiffs reasonably relied upon Google's false and misleading representations and omissions that they controlled use of their data through private browsing modes such as Incognito mode and, based on those misrepresentations, reasonably believed that Google was not intercepting and using their private data when they were in such private browsing modes.

118.      Plaintiffs did not discover and could not reasonably have discovered, that Google was instead intercepting and using their data in the ways set forth in this Complaint until shortly before the lawsuit was filed in consultation with counsel.

119.     Plaintiffs exercised reasonable diligence to protect their data from interception. Indeed, that is precisely the reason *why* they used Google's "Incognito mode" and other private browsing modes. Yet they did not and

Complaint

could not have reasonably discovered their claims through the exercise of reasonable diligence until consulting with counsel shortly before the filing of this Complaint.

## PARTIES:

### PLAINTIFFS:

120.    Plaintiffs are individuals who are all within the scope of the certified nationwide classes in the *Brown* Lawsuit who have now decided to separately seek monetary relief from Google based on Google's unlawful acts. Plaintiffs assert claims that already survived past motions to dismiss and summary judgment in the *Brown* Lawsuit, where the federal court certified two nationwide classes under Rule 23(b)(2) to pursue these claims for purposes of obtaining injunctive relief. Plaintiffs now each seek monetary relief from Google, including statutory damages. Google has taken the position that any request for monetary relief involves certain individualized issues and should be tried separately.

121.    Plaintiffs, and each of them, are adult Google account holders who used Google's "Incognito mode" to browse the web privately to visit non-Google websites without signing in to any Google account. Although Plaintiffs did not know at the time, Plaintiffs are informed and believe Google was, at all relevant times, surreptitiously tracking their private web browsing activity.

122.    Plaintiffs, and each of them, accessed the internet to send and receive communications with websites on devices that were not shared, using Incognito mode in Chrome to visit websites privately and at no time did Plaintiffs give Google consent to track their internet use.

123.    Despite the lack of consent, Google surreptitiously tracked Plaintiffs' internet uses and intercepted Plaintiffs' communications with

websites, revealing the information Incognito mode promised to keep private.

124.    Google then sells the surreptitiously gained private personal information of Plaintiffs, causing irreparable damage to Plaintiffs' privacy rights and ability to control their own personal rights and data.

125.    Plaintiffs, and each of them, are residents of California and hereby bring California state law claims arising from Google's intentional and unauthorized interception and tracking of their internet communications and activity while in Incognito mode, and intentional and unauthorized invasion of consumer privacy.

**DEFENDANT:**

126.    Defendant Google is a Delaware limited liability company with a principal place of business at The Googleplex, 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google regularly conducts business throughout California and in this judicial district.  Google is one of the largest technology companies in the world and conducts product development, search, and advertising operations in this district.

**CALIFORNIA LAW APPLIES TO ALL PLAINTIFFS' CLAIMS**

127.    California's substantive laws apply to every Plaintiff, regardless of where in the United States they reside.  Google's Terms of Service explicitly states "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules."  As a result, Google concedes that it is appropriate for this Court to apply California law to this dispute as to all Plaintiffs.

128.    California's substantive laws may be applied to Plaintiff's claims under the *Due Process* and *Full Faith and Credit* Clauses of the United States Constitution, as California has significant contacts to the claims Plaintiffs

assert.  These contacts create state interests that ensure that the choice of California state law is not arbitrary or unfair.  Further, California has the greatest interest in applying its laws here.

## COUNTS

**COUNT ONE: VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA") CALIFORNIA PENAL CODE §§ 631 & 632**

129.    Plaintiffs hereby incorporate all foregoing paragraphs as if fully stated herein.

130.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§630 to 638. The Act begins with its statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

131.    California Penal Code § 631(a) provides, in pertinent part:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and *without the consent* of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees

27

Complaint

with, employs, or conspires with any person or persons to lawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars . . .

132.     California Penal Code § 632(a) provides, in pertinent part:

> A person who, intentionally and *without the consent* of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars…

133.     Under the above-referenced sections of the CIPA, a defendant must show it had the consent of *all* parties to a communication.

134.     Google has its principal place of business in California; designed and effectuated its scheme to illegally track its users while they were in "private browsing session"; and has adopted California substantive law to govern its relationship with its users.

135.     At all relevant times, Google's tracking and interceptions of Plaintiffs' internet communications while using Incognito mode was without authorization and consent from Plaintiffs or Websites. The interceptions by Google were offensive, unlawful, and outrageous.

136.     Google's surreptitious tracking of Plaintiffs' internet communications while in Incognito mode was intentionally designed to gain information about the content in the URLs Plaintiffs visited.

137.     The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, Google's deliberate and admittedly purposeful scheme that facilitated its interceptions falls under

Complaint

the broad statutory catch-all category of "any other manner":

    A. The computer codes and programs Google used to track Plaintiffs' communications while they were in Incognito mode;

    B. Plaintiffs' browsers and mobile applications;

    C. Plaintiffs' computing and mobile devices;

    D. Google's web and ad servers;

    E. The web and ad-servers of websites from which Google tracked and intercepted Plaintiffs' communications while they were using a web browser in Incognito mode;

    F. The computer codes and programs used by Google to effectuate its illegal tracking and interception of Plaintiffs' communications while browsing in Incognito mode; and

    G. The unlawful plan Google carried out to effectuate its tracking and interception of Plaintiffs' communications while using Incognito mode.

138.    The data collected by Google constituted "confidential communications," as that term is used in Section 632, because Plaintiffs had objectively reasonable expectations of privacy while browsing in "private browser mode."

139.    Plaintiffs have suffered actual losses by reason of these violations, including, but not limited to, violation of their rights to privacy and loss of value in their personally identifiable information.

140.    Plaintiffs have been injured by the violations of California Penal Code §§ 631and 632 and pursuant to California Penal Code §637.2, each seek damages for the greater of $5,000 per violation or three times the amount of actual damages.

Complaint

## COUNT TWO: VIOLATIONS OF THE COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA"), CAL. PENAL CODE § 502 ET SEQ.

141.    Plaintiffs hereby incorporate all foregoing paragraphs as if fully stated herein.

142.    Cal. Penal Code § 502 provides: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction." Smart phone devices with the capability of using web browsers are "computers" within the meaning of the statute.

143.    Google violated Cal. Penal Code § 502(c)(2) by knowingly accessing and without permission taking, copying, analyzing, and using Plaintiffs' "computer" browsing data.

144.    Google was unjustly enriched when it surreptitiously acquired Plaintiffs' sensitive and valuable personal information without permission and used it for Google's own financial benefit. Plaintiffs retain a stake in the profits Google earned from their personal browsing histories and other data because, under the circumstances, it is unjust for Google to retain those profits.

145.    Google accessed, copied, took, analyzed, and used data from Plaintiffs' computers in and from the State of California, where Google: (1) has its principal place of business; and (2) used servers that provided communication links between Plaintiffs' devices and Google, which allowed Google to access and obtain Plaintiffs' data. Accordingly, Google caused the access of Plaintiffs' computers from California, and is therefore deemed to have accessed Plaintiffs' computers in California.

146.     As a direct and proximate result of Google's unlawful conduct within the meaning of Cal. Penal Code § 502, Google has caused actual losses to Plaintiffs and has been unjustly enriched in an amount to be proven at trial.

147.     Plaintiffs seek compensatory damages and/or disgorgement of profits in an amount to be proven at trial.

148.     Plaintiffs are entitled to exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Google's violations were willful and, upon information and belief, Google is guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294.

149.     Plaintiffs are also entitled to recover their reasonable attorneys' fees pursuant to Cal. Penal Code § 502(e).

## COUNT THREE: INVASION OF PRIVACY

150.     Plaintiffs hereby incorporate all foregoing paragraphs as if fully stated herein.

151.     Google collected the data with the intent to intrude upon users' seclusion and invade their constitutional privacy. The California Constitution and common law protect consumers from invasions of their privacy and intrusion upon seclusion.

152.     The right to privacy in California's constitution creates a right of action against private entities such as Google.

153.     Plaintiffs' expectation of privacy is deeply enshrined in California's Constitution. Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, and privacy."

154.     The phrase "and privacy" was added by the "Privacy Initiative"

adopted by California voters in 1972. After voters approved a proposed legislative constitutional amendment designated as Proposition 11. Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating:

> The right of privacy is the right to be left alone…It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and personal freedom. BALLOT PAMP., PROPOSED STATS. & AMENDS. TO CAL. CONST. WITH ARGUMENTS TO VOTERS, GEN. ELECTION *26 (Nov. 7, 1972).

155.    The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Google.

156.    To plead a California constitutional privacy claim, a plaintiff must show an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

157.    As described herein, Google has intruded upon the following legally protected privacy interests:

i.   The California Invasion of Privacy Act as alleged herein;

ii.  The California Comprehensive Data Access and Fraud Act as alleged herein;

iii. A Fourth Amendment right to privacy contained on personal computing devices, including web-browsing history, as explained by the United States Supreme Court in the unanimous decision of

Complaint

*Riley v. California*;

iv. The California Constitution, which guarantees Californians the right to privacy;

v. Google's Privacy Policy and policies referenced therein and other public promises it made not to track or intercept Plaintiffs' communications or access their computing devices and web-browsers while in a private browsing session.

158.    Plaintiffs had a reasonable expectation of privacy under the circumstances in that Plaintiffs could not reasonably expect Google would commit unlawful and offensive acts in violation of federal and state civil and criminal laws; and Google affirmatively promised users it would not track their communications or access their computing devices or web-browsers while they were using a web browser while in "private browsing mode."

159.    Google's actions constituted a serious invasion of privacy in that it:

i. Invaded a zone of privacy protected by the Fourth Amendment, namely the right to privacy in data contained on personal computing devices, including web search and browsing histories;

ii. Violated dozens of state criminal laws on wiretapping and invasion of privacy, including the California Invasion of Privacy Act;

iii. Invaded the privacy rights of hundreds of millions of consumers (including Plaintiffs) without their consent;

iv. Constituted the unauthorized taking of valuable information from hundreds of millions of consumers (including Plaintiffs) through deceit; and

v. Further violated Plaintiffs' reasonable expectation of privacy via Google's review, analysis, and subsequent uses of Plaintiffs' private and other browsing activity that Plaintiffs considered

33

Complaint

sensitive and confidential.

160.     The surreptitious and unauthorized tracking of the internet communications of Plaintiffs, particularly where, as here, they have taken active (and recommended) measures to ensure their privacy, constitutes an egregious breach of social norms that is highly offensive.

161.     Google's invasion of privacy into Plaintiffs' internet communications and their computing devices, web-browsers, and applications, was highly offensive to a reasonable person in that they violated federal and state criminal and civil laws designed to protect individual privacy and against theft.

162.     Secret monitoring of private web browsing is highly offensive behavior.

163.     Following Google's unauthorized interception of the sensitive and valuable personal information, the subsequent analysis and use of that private browsing activity to develop and refine profiles on Plaintiffs violated their reasonable expectations of privacy.

164.     Wiretapping and surreptitious recording of communications is highly offensive behavior.

165.     Google lacked a legitimate business interest in tracking users while browsing the internet in Incognito mode without their consent.

166.     Plaintiffs have been damaged by Google's invasion of their privacy and they are entitled to just compensation and injunctive relief.

## **COUNT FOUR: INTRUSION UPON SECLUSION**

167.     Plaintiffs hereby incorporate all foregoing paragraphs as if fully stated herein.

168.     Plaintiffs asserting claims for intrusion upon seclusion must plead (1) intrusion into a private place, conversation, or matter; (2) in a

1  manner highly offensive to a reasonable person.

2  169.    In carrying out its scheme to track and intercept Plaintiff's
3  communications while they were in Incognito mode in violation of its own
4  privacy promises, Google intentionally intruded upon Plaintiffs' solitude or
5  seclusion in that it effectively placed itself in the middle of conversations to
6  which it was not an authorized party.

7  170.    Google's tracking and interception were not authorized by
8  Plaintiffs, the Websites with which they were communicating or Plaintiffs'
9  web-browsers.

10  171.    Google's intentional intrusion into their internet communications
11  and their computing devices and web-browsers was highly offensive to a
12  reasonable person in that they violated federal and state criminal and civil
13  laws designed to protect individual privacy and against theft.

14  172.    The taking of personally identifiable information from Plaintiffs
15  through deceit is highly offensive behavior, particularly where, as here,
16  Plaintiffs took active (and recommended) measures to ensure their privacy.

17  173.    Secret monitoring of private web browsing is highly offensive
18  behavior.

19  174.    Wiretapping and surreptitious recording of communications is
20  highly offensive behavior.

21  175.    Plaintiffs have been damaged by Google's invasion of their
22  privacy and are entitled to reasonable compensation including but not limited
23  to disgorgement of profits related to the unlawful internet tracking.

24

25  **COUNT FIVE: BREACH OF CONTRACT**

26  176.    Plaintiffs hereby incorporate all foregoing paragraphs as if fully
27  stated herein.

28  177.    Google's relationship with its users is governed by the Google

Complaint

Terms of Service, the Google Chrome and Chrome OS Additional Terms of Service, and the Chrome Privacy Notice, which incorporate and/or should be construed consistent with the Privacy Policy, the "Search & Browse Privately" page, and the Incognito Screen.

178.    On information and belief, the Chrome Privacy Policy has historically promised Plaintiffs that Google does not collect or use private browsing communications, including by explaining that "[y]ou can limit the information Chrome stores on your system by using Incognito mode" and that, within Incognito mode, "Chrome won't store certain information, such as: Basic browsing history information like URLs, cached paged text, or IP addresses of pages linked from the websites you visit [and] Snapshots of pages that you visit."

179.    The Privacy Policy, the Incognito landing screen, and the "Search & Browse Privately" page similarly promise that users can control Google's collection and use of their browsing data, including by enabling a private browsing mode such as Incognito mode, and that Google would not collect and use private browsing data.

180.    Google breached these promises.

181.    Plaintiffs fulfilled their obligations under the relevant contracts.

182.    As a result of Google's breach(es), Google was able to unlawfully obtain the personal property of Plaintiffs and earn unjust profits.

183.    Plaintiffs seek compensatory damages, consequential damages, and/or non-restitutionary disgorgement in an amount to be proven at trial.

## **COUNT SIX: CALIFORNIA UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF CODE § 17200 ET SEQ.**

184.    Plaintiffs hereby incorporate all foregoing paragraphs as if fully stated herein.

Complaint

185.    The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 (UCL). By engaging in the practices aforementioned, Google has violated the UCL.

186.    Google's "unlawful" acts and practices include its violation of the Federal Wiretap Act, 18 U.S.C. § 2510, et seq.; the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632; the California Computer Data Access and Fraud Act, Cal. Penal Code § 502, et seq.; and Invasion of Privacy.

187.    Google's conduct violated the spirit and letter of these laws, which protect property, economic and privacy interests and prohibit unauthorized disclosure and collection of private communications and personal information.

188.    Google's "unfair" acts and practices include its violation of property, economic and privacy interests protected by the statutes identified in paragraph 168.

189.    To establish liability under the unfair prong, Plaintiffs need not establish that these statutes were actually violated, although the claims pleaded herein do so.

190.    Plaintiffs have suffered injuries-in-fact, including the loss of money and/or property as a result of Google's unfair and/or unlawful practices. Plaintiffs have suffered unauthorized disclosure and taking of their personal information which has value, as demonstrated by its use and sale by Google. Plaintiffs have suffered harm in the form of diminution of the value of their private and personally identifiable data and content.

191.    Google's actions caused damage to, and loss of, Plaintiffs' property right to control the dissemination and use of their personal information and communications.

192.    Google reaped unjust profits and revenues in violation of the

Complaint

UCL. This includes Google's profits and revenues from their targeted-advertising and improvements of Google's other products. Plaintiffs seek restitution and disgorgement of these unjust profits and revenues.

### COUNT SEVEN: NEGLIGENCE PER SE

193.    Plaintiffs hereby incorporate all foregoing paragraphs as if fully stated herein.

194.    In California, negligence per se is a legal principle in which you are presumed to have acted negligently if you violate a statute and, in so doing, injure someone that the statute was designed to protect. Negligence per se. Evidence Code § 669.

195.    "Although compliance with the law does not prove the absence of negligence, violation of the law does raise a presumption that the violator was negligent. This is called negligence per se." (*Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1526 [119Cal.Rptr.3d 529]; *see also* Cal. Law Revision Com. com. to Evid. Code, § 669.)

196.    Under Evidence Code §669, negligence is presumed if the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

197.    As described herein, Google has intruded upon the following statutes, ordinances, or regulations:

    i.    California Invasion of Privacy Act ("CIPA") Penal Code §§ 631

1  and 632

2  ii. Comprehensive Computer Data Access and Fraud Act

3  ("CDAFA"), CAL. PENAL CODE § 502 ET SEQ Violated dozens

4  of state criminal laws on wiretapping and invasion of privacy,

5  including the California Invasion of Privacy Act;

6  iii. California Unfair Competition Law ("UCL"), CAL. BUS. &

7  PROF. CODE § 17200 ET SEQ.

8  198.    Defendant's negligence was a substantial factor in causing the

9  Plaintiffs' Personal Information and communications to be surreptitiously

10  intercepted and used for targeted advertising or for development of Google's

11  own proprietary products/services, and in doing so caused Plaintiffs' injuries.

12  199.    The damages suffered by Plaintiffs were the direct and

13  reasonably foreseeable result of Defendant's negligent breach of its duties to

14  adequately design, implement, and maintain reasonable practices to avoid

15  unlawful harvesting of user data and personal information without consent.

16  200.    Defendant's negligence directly caused significant harm to

17  Plaintiffs. As members of the public and users of Google's products and

18  services, Plaintiffs are one of the class of persons for whose protection the

19  statutes were adopted.

20

21  **COUNT EIGHT: LARCENY/RECEIPT OF STOLEN PROPERTY**

22  **Cal. Penal Code § 496(a), (c)**

23  201.    Plaintiffs hereby incorporate all foregoing paragraphs as if fully

24  stated herein.

25  202.    Defendant illegally obtained vast amounts of private information

26  to sell.

27  203.    Defendant's taking of Plaintiffs' Personal Information violated

28  Plaintiffs' Property Interests.

204.    Penal Code section 496(a) creates a cause of action against anyone who (1) receives any property that has been stolen or obtained in any manner constituting theft, knowing the property to be stolen or obtained, or (2) conceals, sells, withholds, or aids in concealing or withholding any property from the owner, knowing the property to be so stolen or illegally obtained.

205.    Under Penal Code Section 7, "the word 'person' includes a corporation as well as a natural person." Thus, Defendant is a person under 496(a).

206.    As discussed above, Defendant stole Plaintiff's Personal Information, Internet communications, and sensitive data to use for their targeted advertising services and product development. Google's practices generate massive profits at the expense of Plaintiffs' property interests. At no point did Plaintiffs consent to Defendant's pilfering of Plaintiffs' personal information and data.

207.    Defendant's conduct constitutes larceny/receipt of stolen property under Cal. Penal Code 496(a) because it: (1) knew that the information was stolen or obtained by theft, and with such knowledge, and (2) concealed, withheld, or aided in concealing or withholding said data from their rightful owners by unlawfully selling the data and saving the data to develop their own proprietary products.

208.    Plaintiffs did not consent to such taking and misuse of their Personal Information.

209.    Defendant's taking of Personal Information was intended to deprive the owners of said information of their ability to use their Personal Information in the way they choose.

210.    As a result of Defendant's actions, Plaintiffs and each of them, seek actual, treble, and punitive damages in an amount to be determined at

Complaint

trial. Plaintiffs and each of them, seek treble and punitive damages because Defendant's actions were malicious, oppressive and willful, and were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

211.    Plaintiffs seek restitution for the unjust enrichment obtained by Defendant as a result of the commercialization of Plaintiffs' sensitive data.

## COUNT NINE: TRESPASS TO CHATTLES

212.    Plaintiffs hereby incorporate all foregoing paragraphs as if fully stated herein.

213.    The common law prohibits the intentional intermeddling with personal property, which results in the deprivation of the use of the personal property, or impairment of the condition, quality, or value of the personal property.

214.    On multiple occasions, Defendant knowingly, willfully, intentionally, and maliciously gained unlawful access to Plaintiffs' Incognito mode browsing data with the intention to acquire the information and data contained therein.

215.    Plaintiffs and each of them owned their personal information and Incognito mode private browsing data.

216.    Through its conduct, Defendant intentionally interfered with Plaintiffs' possession of their property, and/or, injured their property interest when Defendant unlawfully took, used, and intentionally exercised wrongful control over their content and data for its own benefit.

217.    Plaintiffs and each of them did not consent to Defendant's interference with the possession of their personal information, Internet communications, and private browsing data.

218.    Plaintiffs and each of them were harmed by the unlawful, unauthorized interception, tracking, collecting, saving, and selling of their data because this: (1) substantially interfered with their ownership and intended possession of their data; (2) resulted in a loss of control of their data; and (3) decreased the value of their personal information by compromising it.

219.    Defendant's conduct was the proximate cause of Plaintiffs' harm.

220.    As a result of Defendant's unauthorized interference with Plaintiffs' property, Plaintiffs have been and will continue to be damaged as their personal information and private Incognito mode data continues to be at risk of exposure.

221.    Plaintiffs and each of them seek an award of actual damages to be determined at trial.

**PRAYER**:

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Award compensatory damages, including statutory damages where available, to Plaintiffs and each of them, against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

B. Order disgorgement of all of Defendant's profits that were derived, in whole or in part, from Google's interception and subsequent use of Plaintiffs' communications;

C. Award punitive damages in an amount to prevent Defendant's further misconduct;

D. Award Plaintiffs their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees, and;

E.  Grant Plaintiffs such further relief as the Court deems appropriate.

1

2                          **JURY TRIAL DEMAND**

3          Plaintiffs demand a trial by jury of all issues so triable.

4

5     Dated: April 11, 2024                    POTTER HANDY LLP

6

7                                      By: */s/ Barry M. Walker*

8                                          Barry M. Walker
                                           Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint

ATTACHMENT 1

| | Name | City | State |
|---|---|---|---|
| 1 | Adam Salcido | Bakersfield | CA |
| 2 | Adam Schultz | Chino Hills | CA |
| 3 | Albert Avila | Lakewood | CA |
| 4 | Alec Morris | Costa Mesa | CA |
| 5 | Alex Marroquin | Fremont | CA |
| 6 | Alex Robinson | Los Angeles | CA |
| 7 | Alex Solomon | San Francisco | CA |
| 8 | Ali Fotoohi | Fresno | CA |
| 9 | Alyssa Ramirez | Victorville | CA |
| 10 | Amber Adame | North Hills | CA |
| 11 | Andrea Gargas | San Bernardino | CA |
| 12 | Andrew Massaro | Santa Cruz | CA |
| 13 | Andrew Wallace | Roseville | CA |
| 14 | Angela Valdivia | Clovis | CA |
| 15 | Angelica Barden | Riverside | CA |
| 16 | Angelina Alvarado | Stockton | CA |
| 17 | Anna Riedel | Bass Lake | CA |
| 18 | Ashley Kiefert | Wrightwood | CA |
| 19 | Avrom Kohn | Huntington Beach | CA |
| 20 | Benjamin Renzulli | San Diego | CA |
| 21 | Benny Silva | Fresno | CA |
| 22 | Brandon Dickson | California City | CA |
| 23 | Brandon Kingcantwell | Visalia | CA |
| 24 | Brandy Sanders | Bakersfield | CA |
| 25 | Brett Savage | Chula Vista | CA |
| 26 | Brian Woodruff | Lodi | CA |
| 27 | Caitlin Vellos | Vacaville | CA |
| 28 | Carl Jennings | Santa Clara | CA |
| 29 | Carol Beth Thompson | Chico | CA |
| 30 | Cathy Thompson | San Pedro | CA |
| 31 | Cesar Alvarado | Los Angeles | CA |
| 32 | Charlene Clinger | Redding | CA |
| 33 | Charlene Manley | Anaheim | CA |
| 34 | Charlotte Roberson | Pacifica | CA |
| 35 | Chris Peterson | Clovis | CA |
| 36 | Chris Woodworth | Sacramento | CA |

Complaint

| 37 | Christian Husband | Corona | CA |
|----|-------------------|--------|-----|
| 38 | Christina Nedrebo | Riverside | CA |
| 39 | Christopher Lapinski | Elk Grove | CA |
| 40 | Christopher Meeks | Salinas | CA |
| 41 | Christy Swint | Twentynine Palms | CA |
| 42 | Cody Vilkin | Woodland Hills | CA |
| 43 | Corey Gillens | Arcadia | CA |
| 44 | Cory Drucker | Signal Hill | CA |
| 45 | Cynthia Alvarado | Mission Hills | CA |
| 46 | Daniel Carlisle | San Diego | CA |
| 47 | Daniel Chandler | Irvine | CA |
| 48 | Daniel Pedersen | Paradise | CA |
| 49 | Darius Bruner II | Fairfield | CA |
| 50 | David Dichter | Los Angeles | CA |
| 51 | David Vasquez | Whittier | CA |
| 52 | Delano Hanley | Long Beach | CA |
| 53 | Delilah Montecino | Monterey Park | CA |
| 54 | Denise Dardarian | Los Angeles | CA |
| 55 | Denise Frazier | Rodeo | CA |
| 56 | Desirae clymer | Oakland | CA |
| 57 | Desiree Salazar | Oroville | CA |
| 58 | Diane Larios | Watsonville | CA |
| 59 | Dionysius New York-Edwards | San Diego | CA |
| 60 | Dominic Lipari | Los Angeles | CA |
| 61 | Dre Sharma | Sunnyvale | CA |
| 62 | Dylan Benkley | Santa Barbara | CA |
| 63 | Eduardo Salas | Los Angeles | CA |
| 64 | Edwin Kulakkattolikel | San Jose | CA |
| 65 | Elaine Navarrette | Montebello | CA |
| 66 | Emi Bruemmer | San Rafael | CA |
| 67 | Eugene Erlikh | Los Angeles | CA |
| 68 | Garrett Luchaco | Dixon | CA |
| 69 | Geno Kang | Lancaster | CA |
| 70 | George Stiffman | Los Angeles | CA |
| 71 | Gizelle Victoria | Antioch | CA |
| 72 | Gizelle Victoria | Antioch | CA |
| 73 | Grace Jones | San Diego | CA |
| 74 | Haben Woldemariam | Los Angeles | CA |

45

Complaint

| 75 | Heather Martin | Northridge | CA |
|----|----------------|------------|-----|
| 76 | Ivan Zermeno | Torrance | CA |
| 77 | James Hill | Yucca Valley | CA |
| 78 | James Rivera | Victorville | CA |
| 79 | Jason Clark | Sonora | CA |
| 80 | Jason Davis | Merced | CA |
| 81 | Jay Sims | Westlake Village | CA |
| 82 | Jeffrey Tremblay | Lancaster | CA |
| 83 | Jeillianne Mendoza | San Jose | CA |
| 84 | Jennifer Gverovich | San Jose | CA |
| 85 | Jeramie Bryan | San Jose | CA |
| 86 | Jerrell Jordon | Oakland | CA |
| 87 | Jesus Guerrero | Moreno Valley | CA |
| 88 | Jethro Herrera | San Jose | CA |
| 89 | Jimmy Escobar | San Diego | CA |
| 90 | Jimmy Kashanian | Campbell | CA |
| 91 | John De La Torre | Imperial | CA |
| 92 | John Kroll | Anderson | CA |
| 93 | John Moore | Sacramento | CA |
| 94 | John Reyes | Menifee | CA |
| 95 | Jonathan Balk | Santa Monica | CA |
| 96 | Jonathan Miravalle | Clearlake Oaks | CA |
| 97 | Jose Avila | Baldwin Park | CA |
| 98 | Joseph Barrett | San Diego | CA |
| 99 | Joseph Friend | Chula Vista | CA |
| 100 | Joshua Jones | Sutter | CA |
| 101 | Joshua Monett | Vista | CA |
| 102 | Joshua Quirimit | Los Angeles | CA |
| 103 | Julianne Varin | Los Angeles | CA |
| 104 | Julio Banderas | La Habra | CA |
| 105 | Justin Jester | Olivehurst | CA |
| 106 | Kanan Morelock | Ventura | CA |
| 107 | Karen Moore | Ontario | CA |
| 108 | Karla Wise | Hanford | CA |
| 109 | Katrina Campbell McCorkle | Auberry | CA |
| 110 | Keith Lander | Chico | CA |
| 111 | Ketri Landrum | Spring Valley | CA |
| 112 | Kevin Ochoa | Rialto | CA |
| 113 | King Jennifer | Concord | CA |

Complaint

| | | | |
|---|---|---|---|
| 114 | Kristina Florian | Willow Creek | CA |
| 115 | Lakyra Turner | Sacramento | CA |
| 116 | Lauri Roberts | Modesto | CA |
| 117 | Lawna Young | Sacramento | CA |
| 118 | Leeanne Barnes | Sacramento | CA |
| 119 | Lindsey Sampson | Bolinas | CA |
| 120 | Lisa Tapia | Selma | CA |
| 121 | Luis Rodriguez | Fountain Valley | CA |
| 122 | Mac-Jay Loresto | Los Angeles | CA |
| 123 | Marcos Ramos | San Fernando | CA |
| 124 | Marcus Herron | Stockton | CA |
| 125 | Maretanna Curtis | Newport Beach | CA |
| 126 | Mario Paz | Los Angeles | CA |
| 127 | Mark Cousineau | Ventura | CA |
| 128 | Mark Trimble | Colton | CA |
| 129 | Marnie Evans | Riverside | CA |
| 130 | Maryam Kazemi | Rohnert Park | CA |
| 131 | Matthew Adamson | San Bernardino | CA |
| 132 | Matthew Jahn | Woodland | CA |
| 133 | Matthew Meza | Concord | CA |
| 134 | Michael Everly | San Diego | CA |
| 135 | Michael Molina | Valley Village | CA |
| 136 | Michael Nilsson | Arcata | CA |
| 137 | Michel Dunia | Santa Rosa | CA |
| 138 | Michelle Bustamante | Oakland | CA |
| 139 | Michelle Cooper | Compton | CA |
| 140 | Michelle Irwin | Dana Point | CA |
| 141 | Michelle Morris | Camino | CA |
| 142 | Miranda Henning | Folsom | CA |
| 143 | Mushun Richardson | Hayward | CA |
| 144 | Nancy Ganzon | Menifee | CA |
| 145 | Nicholaus Oliver | Hermosa Beach | CA |
| 146 | Nick Shen | San Francisco | CA |
| 147 | Nick Sodaro | Eureka | CA |
| 148 | Nicole OShea | San Diego | CA |
| 149 | Nikolas Chaplin | Manteca | CA |
| 150 | Nino Mejia | Torrance | CA |

Complaint

| 151 | Omar Mendez | Canoga Park | CA |
| 152 | Orlandus Squalls | long beach | CA |
| 153 | Patrick Sutton | Marina del Rey | CA |
| 154 | Randall Miller | San Luis Obispo | CA |
| 155 | Randy Smith | Bellflower | CA |
| 156 | Raymundo De Leon | Ontario | CA |
| 157 | Regina Armijo | Brea | CA |
| 158 | Rex Lawrence | Vista | CA |
| 159 | Richard Bradley | Los Angeles | CA |
| 160 | Richard Guajardo | Fresno | CA |
| 161 | Rick Krutilla | Martinez | CA |
| 162 | Robert Endres | Sacramento | CA |
| 163 | Robert Harrison on | Fairfield | CA |
| 164 | Robyn Learned | Sacramento | CA |
| 165 | Roger Jones II | Keyes | CA |
| 166 | Roxanne Varela | Lancaster | CA |
| 167 | Roy Hernandez | Elk Grove | CA |
| 168 | Ryan Rivera | Agoura Hills | CA |
| 169 | Ryan Sumida | Chico | CA |
| 170 | Ryan Weaver | Carmichael | CA |
| 171 | Samantha Dellia | Caruthers | CA |
| 172 | Sheila Gibson | Richmond | CA |
| 173 | Sheshe Davis | Redondo Beach | CA |
| 174 | Sonia Ighalo | San Leandro | CA |
| 175 | Sophia Allgood | Oakland | CA |
| 176 | Spike Jackson | Biggs | CA |
| 177 | Stephen Vaisa | Santa Ana | CA |
| 178 | Tarella Golden | Hawaiian Gardens | CA |
| 179 | Tristian Alvarado-Arana | San Francisco | CA |
| 180 | Tucker Potter | San Marcos | CA |
| 181 | Vanessa Bell | Richmond | CA |
| 182 | Victor Horner | Fresno | CA |
| 183 | Vincent Cowart | Los Angeles | CA |
| 184 | Vivian Jordan | Montague | CA |
| 185 | William Gorham | Escondido | CA |

Complaint