POTTER HANDY, LLP
Mark Potter, Esq., SBN 166317
Barry M. Walker, SBN 195947
James Treglio, Esq., SBN 228077
Claire Cylkowski, Esq., SBN 335352
Mail: 100 Pine St., Ste. 1250
San Francisco, CA 94111
(858) 375-7385; (888) 422-5191 fax
serve@potterhandy.com

Attorneys for Intervenors, Adam Salcido, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASOM BROWN, WILLIAM BYATT, JEREMY DAVIS, CHRISTOPHER CASTILLO and MONIQUE TRUJILLO individually and on behalf of all other similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>GOOGL LLC<br><br>    Defendant. | CASE NO.: 4:20-cv-03664-YGR-SVK<br><br>Assigned to the<br>Honorable Yvonne Gonzalez Rogers<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br>**[Civil Local Rule 7-9(b)(2)]**<br><br>DATE: October 8, 2024<br>TIME: 2:00 p.m.<br>COURTROOM: 1 – 4th Floor |

///

///

///

///

///

///

///

NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

# NOTICE OF MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

**PLEASE TAKE NOTICE** that movants — who are plaintiffs in the *Salcido v. Google, LLC* case filed in Santa Clara County Superior Court — hereby apply for leave to file a motion for reconsideration of the Court's denial of their motion to intervene in this case.

The motion for leave is proper under Civil Local Rule 7-9(b)(2), since a post-order change of law occurred when the Ninth Circuit published its decision in *Calhoun v. Google, LLC*, ___ 4th ___ (9th Cir. Aug. 20, 2024), 2024 WL 3869446.

The motion is supported by the following memorandum of points and authorities.

Dated:   September 3, 2024

                              POTTER HANDY, LLP

                              By: /s/ Mark Potter
                              Attorneys for Intervenors

---

1
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

# MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

## INTRODUCTION

Movants are incognito-mode users who were deceived by Google's misrepresentations and who previously attempted to intervene to prevent the named class representatives from voluntarily relinquishing the right to pursue certification of a damages class against Google. Dkt. 1116 at 2-8. This Court denied their motion to intervene. Dkt. 1130 at 1-3.

Eight days later, the Ninth Circuit issued its opinion in a related case against Google, *Calhoun v. Google, LLC*, ___ 4th ___ (9th Cir. Aug. 20, 2024), 2024 WL 3869446, which narrows the scope of the consent defense that previously persuaded this Court not to certify a damages class in the present case. *Id*. at *6-9; *See* Dkt. 803 at 28-32. Movants therefore respectfully move for leave to file a motion for reconsideration, due to a change of law. Civil L.R.7-9(b)(2).

The *Calhoun* decision clarifies that Google must establish consent based on the lay meaning of the language in its disclosures, not on any extraneous information available to expert users. *Calhoun* at *6-9. In light of *Calhoun*, a damages class is clearly viable against Google, because the lay meaning of Google's disclosures is an issue susceptible to common proof. The individualized questions that the Court thought were relevant pre-*Calhoun* — such as whether each class member was aware of the academic literature on private browsing — will simply drop out of the case. *Id*. at *9.

Because certification of a damages class is now clearly viable, it is imperative for movants to intervene to protect that right. Before *Calhoun*, perhaps the interests of the class were best served by a settlement that voluntarily relinquished their right to pursue certification of a damages class in exchange for injunctive relief. But the same cannot be said post-*Calhoun*. In light of the Ninth Circuit's decision, millions of incognito-mode users will have the opportunity to recover billions of dollars in damages from Google as a class — as long as their named representatives do not give that right away.

The circumstances have fundamentally changed, so the Court should reconsider its denial of the motion to intervene.

# ARGUMENT

## A. The motion for leave is proper, due to a change in law after the Court's order on the motion to intervene

### 1. Local Rule 7-9(b)(2) authorizes a motion for leave to file a motion for reconsideration based on a post-order change of law

Motions for reconsideration are governed by Local Rule 7-9. Subdivision (a) of the rule provides, in relevant part, that "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Civil L.R. 7-9 (a).

Subdivision (b) requires that the moving party specifically show "reasonable diligence in bringing the motion" and one of the three permissible grounds for reconsideration of an interlocutory order. Civil L.R. 7-9 (b). Among those permissible grounds is a "change of law occurring after the time of such order." Civil L.R.7-9(b)(2).

### 2. After the Court denied the motion to intervene, the Ninth Circuit issued a published opinion in *Calhoun v. Google, LLC*

This Court issued its order denying the motion to intervene on August 12, 2024. Dkt. 1130. Eight days later, on August 20, 2024, the Ninth Circuit issued a published opinion in *Calhoun v. Google, LLC*, ___ 4th ___ (9th Cir. Aug. 20, 2024), 2024 WL 3869446, which narrowed the scope of the consent defense available to Google in a parallel action involving its surreptitious collection of user data. *Id*. at *1.

The substantive relevance of the *Calhoun* decision to the Court's ruling on the motion to intervene is discussed in more depth below. From a procedural standpoint, the requirements of L.R. 7-9(b)(2) are satisfied because *Calhoun* represents a change in law that occurred after the Court issued its order.

### 3. Movants have exercised reasonable diligence in bringing *Calhoun* to the Court's attention

The filing of the present motion for leave to file a motion for reconsideration demonstrates that movants have exercised reasonable diligence, as required by L.R. 7-9(b). Because the *Calhoun* decision was not available at the time that the Court ruled on the motion to intervene, the appropriate focus of the "reasonable diligence" inquiry is how long it has taken movants to bring *Calhoun* to this Court's attention since the *Calhoun* opinion was issued on August 20, 2024.

The answer to that question is two weeks, which constitutes reasonable diligence under prior case law. *Compare, Malcolm Drilling Co., Inc. v. Davey Kent, Inc.*, 2021 WL 6199635, at *1 (N.D. Cal. Mar. 26, 2021) (motion for leave was timely when filed within 10 days) *with*, *Largan Precision Co., Ltd. v. Genius Electronic Optical Co., Ltd.,* 2015 WL 2063988, at *2 (N.D. Cal. May 4, 2015) ("waiting more than four weeks to file a motion for reconsideration" did not constitute reasonable diligence).

**B.    The *Calhoun* decision casts doubt on the Court's reasons for denying the motion to intervene, so the Court should reconsider its order**

### 1.    An underlying reason for the Court's ruling on the motion to intervene was its belief that Google had a viable consent defense

The Court denied the motion to intervene on the grounds that it was untimely and that movants failed to demonstrate the necessity of intervention to protect their interests. Dkt. 1130 at 2. In analyzing *Calhoun*'s relevance, we will address these grounds in reverse.

The second ground was premised on the Court's belief that the interests of the class as a whole — including the interests of the prospective intervenors — would be served by the proposed settlement agreement in which the named class representatives voluntarily relinquished their right to appeal the Court's refusal to certify a damages class. *Id*.

And *that* ruling — the one that the named representatives were agreeing not to appeal — was based on this Court's understanding of Google's affirmative defense of consent. Dkt. 803 at 28-32. Indeed, the Court stated in its order denying certification of the damages class that "consent remains the central disputed issue in this case." *Id*. at 32. It denied certification because it found "that individual issues of implied consent are likely to predominate over any common issues." *Id*.

Thus, although the Court's order on the motion to intervene did not expressly mention Google's consent defense, the viability of that defense was the unstated foundation of the order. *Compare* Dkt. 1130 at 2 *with* Dkt.

4
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

803 at 28-32. The Court was ruling that the proposed settlement did not harm intervenors' interests *because* the settlement was reasonable in light of the individualized questions raised by Google's consent defense.

When the Court stated that "individual claims can be asserted," its endorsement of that procedure was premised on its belief that class-wide adjudication was impossible due to Google's consent defense. Dkt. 1130 at 2. And when the Court stated, "there is no indication that class counsel have acted in any manner incompatible with movants' interests," it was expressing the opinion that counsel were making the right choice by relinquishing the right to pursue certification of a class that was nonviable in light of the individualized questions raised by Google's consent defense. *Id*. Everything came back to the Court's analysis of Google's consent defense when it denied certification of the damages class.

### 2. The *Calhoun* decision establishes that Google has no viable consent defense, because consent is measured solely from the lay meaning of Google's disclosures

The consent defense that the Court treated as viable in denying certification of a damages class no longer appears to be viable after the Ninth Circuit's decision in *Calhoun*. That change in law casts doubt on the Court's ruling on the motion to certify the damages class and, by extension, the ruling on the motion to intervene.

Like the present action, *Calhoun* is a suit brought by Google users who allege that the company surreptitiously collected their data in violation of contrary assurances in its privacy policy. *Calhoun*, 2024 WL 3869446 at *2. The difference between the two suits is which "mode" of Google's Chrome browser is at issue: *Calhoun* involves misrepresentations about the browser's "unsynced mode," while this case involves its "incognito mode." *Id*. at *8.

The *Calhoun* opinion calls the two cases "related," and notes that they involve some of the same alleged misrepresentations. *Id*. Indeed, the Ninth Circuit states in *Calhoun* that this Court made the correct decision when it denied Google's motion to dismiss in the present case. *Id*. However, in reversing the Court's decision to grant an equivalent motion to dismiss in *Calhoun*, the Ninth Circuit narrowed the scope of Google's consent defense

in ways that are inconsistent with this Court's analysis of the same defense in its ruling on the motion to certify a damages class in this case.

In the order denying certification of a damages class, this Court did not limit its analysis of Google's consent defense to the terms of Google's disclosures. Instead, it ruled that "[a] factfinder, in determining whether class members impliedly consented to the alleged conduct would have to determine the sources of information to which each class member was exposed." Dkt. 803 at 32. The Court believed that consent could be based on *exogenous* technical information, such as "media and academic reports discussing the privacy limitations of private browsing mode" or "a developer tool that users can use to see, in real time, what data is being collected when users are browsing in private mode." *Id*. at 31.

The Ninth Circuit rejected this broad approach to consent in *Calhoun*. It clarified that consent depends on "the terms of the various disclosures" and "whether a reasonable user reading them would think that he or she was consenting to the data collection." *Calhoun*, at *6.

The Ninth Circuit expressly repudiated any attempt to attribute knowledge to class members beyond what a layperson could glean from reading Google's disclosures. *Id*. at *9. As it explained: "Whether a 'reasonable' user of Google's computer software . . . consented to a particular data collection practice is not to be determined by attributing to that user the skill of an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon to understand what he or she is consenting to." *Id*.

The *Calhoun* opinion therefore directly undercuts this Court's rationale for denying certification of a damages class. This Court ruled that individual questions predominated, because it thought that it needed to look beyond the terms of Google's disclosures to conduct "individualized inquiries into the consent defense" based on each user's degree of technical knowledge. Dkt. 803 at 32, n. 12. *Calhoun* clarifies that the presence or absence of consent must actually be determined based solely on the lay meaning of the words in Google's disclosures. *Calhoun* at *6. This obviates the need for the individualized inquiries that precluded certification of a damages class.

### 3. *Calhoun* also resets the clock for intervention, which undercuts the Court's other ground for denying the motion to intervene

Let us assume, *arguendo*, that voluntary relinquishment of the right to pursue certification of a damages class was consistent with the interests of the class pre-*Calhoun*. The same is clearly not true post-*Calhoun*. There is now a glaring possibility that this Court's original ruling was in error, that if the ruling is not reconsidered that it will be reversed on appeal by the Ninth Circuit, and that the millions of users deceived by Google's misrepresentations about "incognito mode" will be able to recover damages against Google as a class.

The movants, as members of the damages class that appears to be viable post-*Calhoun*, seek to intervene so that the rights of the class will not be relinquished. This Court has already ruled that, based on the state of the law before *Calhoun*, it was not clear that intervention was warranted to protect the movants' interests. Dkt. 1130 at 2-3. The clock for intervening therefore necessarily runs from the issuance of the *Calhoun* decision on August 20, 2024. That is the date when it became clear that the proposed settlement was contrary to movants' interests, since it relinquished rights that are far more valuable post-*Calhoun* than pre-*Calhoun*.

"In analyzing timeliness . . . the focus is on the date the person attempting to intervene should have been aware his 'interests would no longer be protected adequately by the parties," rather than the date the person learned of the litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 934 F.2d 1092, 1095–96 (9th Cir. 1991), *quoting in part*, *Legal Aid Soc'y v. Dunlop*, 618 F.2d 48, 50 (9th Cir.1980); *accord*, *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880–81 (7th Cir. 2000) ("delay must be measured from the time the would-be intervenors learned . . . of the representative's shortcomings").

Even if the Court is correct that movants waited too long to seek intervention pre-*Calhoun*, that does not mean that they permanently forfeited their right to intervene in light of subsequent developments. The timeliness requirement is, after all, "not a tool of retribution to punish the tardy would-be intervenor…" *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). By filing this motion for leave to reconsider the denial of their

7
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

original motion, the prospective intervenors have acted within two weeks of the *Calhoun* decision being issued. Their attempt to vindicate their post-*Calhoun* rights is therefore timely.

## CONCLUSION

*Calhoun* demonstrates that this Court erred when it declined to certify a damages class. By extension, it calls into question the Court's denial of the motion to intervene for purposes of pursuing certification of that damages class. Movants therefore respectfully request that this Court grant them leave to file a motion for reconsideration.

Dated: September 3, 2024

                POTTER HANDY, LLP

                By: /s/ Mark Potter
                     Attorneys for Intervenors