**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice* forthcoming)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice*
forthcoming)
jyanchunis@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for the Luna Plaintiffs; additional
counsel listed in signature blocks below*

**COOLEY LLP**
Aarti Reddy (CA Bar No. 274889)
3 Embarcadero Center, 20th Floor
San Francisco, California  94111-4004
Telephone:     +1 415 693 2000
Facsimile:      +1 415 693 2222
areddy@cooley.com

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| GILBERT LUNA, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 4:20-cv-03664-YGR-SVK<br>Case No. 4:26-cv-03246-YGR<br><br>**JOINT STATUS SUBMISSION BY THE LUNA CASE PARTIES** |

Pursuant to the Court's May 13, 2026 order (Dkt. No. 1171), Plaintiffs and Google (together the "parties") submit this joint status statement.

**PLAINTIFFS' STATEMENT**

***Google's Proposed Remand.*** Plaintiffs originally filed these cases in state court in March 2024, over two years ago. Plaintiffs filed in state court rather than federal court in part out of consideration for this Court's heavy caseload and demanding schedule. Plaintiffs had hoped to work with Google in state court to move these cases forward efficiently, with a set of early bellwether trials building off the *Brown* discovery record and rulings.

While that litigation in state court should have been straightforward, Google instead: (1) sought dismissal, despite the fact that the claims already proceeded passed a motion to dismiss in *Brown*; (2) opposed priority trials for a small group of plaintiffs who were entitled to those trials by statute due to their age and health conditions; (3) sought to create a JCCP that stayed all litigation after one single *pro se* complaint was filed in another California state court, instead of seeking transfer; and (4) sought appellate review of multiple state court rulings.

Google then sought to remove these cases to federal court. To date, Google has removed 441 complaints to federal court (*Brown* Dkt. No. 1173), including removal of 41 complaints after this Court's May 13 order. Google had previously represented to the state court that it intended to seek removal of all of the cases filed by BSF and MM.

Now, Google has reversed course. On May 15, Google proposed that the parties instead agree to remand all cases back to state court. It now appears that Google's removal strategy was an attempt to impose crushing additional filing fees on Plaintiffs. Having failed at that, Google now wants to go back to state court. But Google's proposed agreement to remand these case comes with a catch — while Google has agreed to not file any motion to dismiss here in federal court, *Google insists on filing another motion to dismiss in state court*. Plaintiffs asked Google whether it would be willing to proceed without any further motion to dismiss in state court, where the state court already granted leave to amend, and Google refused. Google instead wishes to take the cases back to state court only if it can engage in yet another round of motions to dismiss and force Plaintiffs to

include additional allegations for all 96,000 inviduals in the complaints (something the state court has already considered and rejected).

Google's insistence on filing another motion to dismiss in state court is significant. In state court, it is unlikely Plaintiffs will have a hearing, let alone a decision, on a motion to dismiss before 2027. The state court has stayed all cases until the pleadings are resolved, leaving thousands of Plaintiffs to wait for their day in state court. The delay is even further compounded by Google's insistence that Plaintiffs also include additional allegations for every Plaintiff.  In state court, it may be years before we have our first bellwether trial. In other words, Google wishes to return to state court only if it is in a better position to delay the state court proceedings than it would have been had it never removed these cases to federal court.

Plaintiffs simply wish to efficiently litigate these claims so that these individual plaintiffs can obtain monetary relief as soon as possible. This process has been expensive, with millions in filing fees paid by Plaintiffs and many thousands of hours of lodestar spent so far litigating these issues with Google for two years in state court. As this Court commented, these individual cases is in a sense what Google "asked for" because Google "could have done it on a class-wide basis" but "didn't want to, and that's fine." *Brown* Aug. 7, 2024 Tr. at 51:17–52:24 (Dkt. No. 1131).

Plaintiffs propose the most efficient resolution of the cases would be to retain the 441 individual cases here (*i.e.* the first named Plaintiff from each removed complaint) and set prompt bellwether trials, with the balance of individuals from each complaint remanded to state court, as this Court has previously ordered. Plaintiffs welcome the opportunity to discuss with this Court how to move this set of 441 individual cases forward with bellwether trials based on the same pretrial rulings from *Brown*, with a focus on doing so efficiently and in a way that limits the burden on this Court.

***Rule 12 Motion.*** Google's counsel confirmed that Google will not file any Rule 12 motion, which will help streamline this litigation and reduce the burden on the Court.

***Short Form Complaint.*** The Court ordered the parties to meet and confer regarding the content of a short form complaint. The parties met and conferred on May 14 and May 15, 2026, and this submission includes Plaintiffs' proposed short form complaint.

Plaintiffs with their proposal tried to track what the Court ordered, which has two parts: "Each plaintiff who has a pending action in federal court shall be required to file an amended complaint which shall [1] identify the paragraphs in the *Luna* complaint that the plaintiff adopts and [2] shall provide some measure of detail regarding that plaintiff's injury."

For Part 1, Plaintiffs' proposal includes at the start a portion where each plaintiff with a pending action in federal court (the first-named plaintiffs in each of the complaints removed by Google) would identify the adopted paragraphs from the master complaint, which includes identifying the specific causes of actions asserted by each of these plaintiffs.

For Part 2, Plaintiffs' proposal is based on the format used by this Court in other cases and based on the Court's guidance. Along with the incorporated paragraphs from the master complaint, this includes all information necessary to meet the pleading requirements for these claims. While not included in the allegations in *Brown*, Plaintiffs propose including in this short form complaint information regarding the frequency of each plaintiff's use of Incognito mode: monthly, weekly, or daily. As Judge Koh ruled in 2021, with Google' statute of limitations defense, "each interception is a separate violation" (Dkt. 113 at 24), and including information regarding the frequency of use would assist the parties with evaluating the scope of the injury for each plaintiff. Plaintiffs also propose including information regarding the timing of each plaintiff's Incognito usage and the devices each plaintiff used when they browsed in Incognito mode. With allegations of each Plaintiffs' frequency of Incognito use, timing of Incognito use, and device information, Google will have more than enough notice to assess Plaintiffs' claims, including the scope of injury and approximation of damages at the pleading stage. This is more than enough to meet the requirements of notice pleading and complies with the Court's Order requiring "some measure of detail regarding that plaintiff's injury" (Dkt. 1171 at ¶ 6), while Google' proposal is far more demanding and burdens plaintiffs with details immaterial to their damages.

These short form complaints will allow the parties to then work together to move things forward. Starting with the Google account information, Plaintiffs and Google can work together to exchange information to develop a more complete understanding of how each plaintiff used Incognito mode, and the full scope of each plaintiff's injury. That would be based in part on each

plaintiff's recollection and also based on any Google records. The parties would work together to exchange information relevant to determing the number of violations and full scope of injury for each plaintiff, with information exchanged subject to a protective order.

If the Court agrees with Plaintiffs' proposal, Plaintiffs will be prepared to file these short form complaints within two (2) weeks. If the Court is inclined to require Plaintiffs to include additional information in these short form complaints, then Plaintiffs would respectfully seek additional time, to ensure they have time to obtain any additional information from each plaintiff.

This timeline applies to the cases Google has already removed. If Google chooses to remove additional cases to federal court, then Plaintiffs would likewise propose to file any additional short form complaint (if the Court agrees with Plaintiffs' proposal) within two (2) weeks of receiving notice from Google of that removal and assignment to this Court.

***Google's Request For Additional Allegations.*** Plaintiffs respectfully request that the Court reject Google's proposal to require additional information in these short form complaints.

Google's first request is that each plaintiff in the short form complaint also provide specific examples of which websites they browsed in Incognito mode. These examples are not necessary at the pleading stage. Examples of the websites each plaintiff visited in Incognito has little to no bearing on providing notice to Google, especially given the years of discovery in *Brown*. From *Brown*, we know that Google tracked people's Incognito browsing on almost every major website. For people who used Incognito, the reality is that Google promised privacy whenever they browsed the internet but was actually tracking them. This is why examples of *what* specific websites Plaintiffs browsed in Incognito mode is far less informative than *when* and *how often* Plaintiffs browsed (in concert with Google's pervasive collection efforts). For this reason, based on the conferrals with Google for this joint submission, Plaintiffs agreed to modify their proposed short form complaint to also include allegations regarding the timing of each plaintiff's Incognito usage, the frequency of Incongito usage, and the devices each Plaintiff used when they browsed in Incognito mode. Those details are far more probabtive for both establishing injury and the approximation of damages at the pleading stage than any examples of specific websites.

Google's request that Plaintiffs identify specific websites at the outset is also complicated by the fact that Google withheld discovery in *Brown* regarding which websites include which Google trackers. In *Brown*, the plaintiffs sought and Google refused to produce a complete list of websites with Google trackers, including the Google Analytics tracker. This led to a ruling by Magistrate Judge van Keulen limiting the arguments Google could make regarding which websites used which Google trackers. *Brown*, Dkt. No. 288–1 at 1 ("before Google can argue or assert that any specific website did not use Google Analytics, Google must respond to this interrogatory as to that website at least 30 days in advance of making any assertion or argument"). It was established in *Brown* that Google tracks Incognito browsing, collecting private browsing information when people use Incognito. Accordingly, identifying the relevant websites for these Plaintiffs is something to address with discovery, not the pleadings. The state court agreed with this approach, rejecting Google's demand that these Plaintiffs identify specific websites at the the pleading stage.

Google's second request is that each plaintiffs also allege that they were aware of marketplace to sell their data. This too is unnecessary at the pleading stage. Google has agreed to not file any Rule 12 motion, and the specifics regarding any awareness of marketplaces selling data can be addressed when the parties exchange information or during discovery.

Google's reliance on the class allegations in the *Brown* complaint to support its request that each plaintiff allege specific examples of websites browsed in Incognito and an awareness of a marketplace for data is off the mark. *Brown* was a class action, and only the class representatives included a few examples of their browsing and knowledge of websites that pay for browsing data to demonstrate their ability to represent those classes (i.e., for adequacy). None of the *Brown* class members provided the details that Google now demands at the pleadings stage, because like the Plaintiffs in these individual cases, adequacy was not at issue. The same is true here.

**GOOGLE'S STATEMENT**

***Removal and Remand.*** Google is mindful of the Court's direction that "having two jurisdictions conduct duplicative work, given limited resources, is inefficient." *Brown* Dkt. No. 1171 at ¶ 1. In response to that concern, Google proposes that the parties stipulate to have all of the related, removed cases remanded to state court rather than litigating the *Google Chrome Incognito Cases*

simultaneously in two forums. Google would then cease all removals of amended complaints filed in state court. Google's remand proposal would streamline the proceedings in a single forum.

Plaintiffs have ignored the Court's directive and refused this offer unless Google agrees to unreasonable and one-sided conditions. First, Plaintiffs' counsel insist that Google agrees to waive its right to a demurrer in state court as to all Plaintiffs they represent, ***even those whose claims have not been removed and even as to claims that have never been tested at the pleading stage below,*** like ECPA and the pen register claim that Plaintiffs plan to pursue in state court. 5/1/2026 CMC Tr. 17:8-18:3. At the same time, Plaintiffs refuse to commit to filing short form complaints in state court upon remand, effectively seeking to cherry-pick the portions of this Court's order that they wish to adopt in state court while avoiding the aspects they do not like. Google remains open to exploring solutions to heed this Court's directive to avoid litigating the *Luna* Plaintiffs claims in multiple jurisdictions; however, it cannot accept Plaintiffs' preconditions for remanding the claims to state court.

Further, Google does not provide a point-by-point rebuttal to Plaintiffs' lengthy and misleading discussion about the state court proceedings, as that is outside the scope of the Court's Order. *See Brown* Dkt. No. 1171. Google states only that Plaintiffs have mischaracterized those proceedings, including by faulting Google for exercising its rights to file a demurrer and successfully petitioning the J.C.C.P. for coordination. Google then promptly began removing after Plaintiffs first pled a federal ECPA claim ***two years*** into the litigation. Any delay here is of Plaintiffs' own making.

***12(b)(6) Motions.*** Google will not file a 12(b)(6) motion to dismiss the operative complaints in *Luna* and the related removed actions since the Court's remand order precludes such a filing "unless binding Ninth Circuit authority requires" the Court to consider new arguments. *Brown* Dkt. No. 1171 at ¶ 7.

***Short-Form Complaints.***

Google's proposed short-form complaint is attached as Exhibit B. For clarity, the yellow highlighting in the document indicates where Google's proposal differs from Plaintiffs' proposal.

The parties agree that each short form complaint for each individual plaintiff with claims pending in federal court should plead basic demographic and Google account information, most of

-6-

which is already pled in the existing federal complaints. This pre-existing information comprises: (1) each Plaintiffs' name, (2) residence or domicile (city and state), (3) whether each Plaintiff has an active Google Account, (4) whether each Plaintiff accessed Incognito mode on devices that were not shared and on which device types; and (5) the approximate timing of Incognito usage. In addition, pursuant to the Court's Order regarding short-form complaints in federal court,[1] Google proposes each individual plaintiff include the same facts previously pled by the named plaintiffs in *Brown* to provide "some measure of detail regarding that plaintiff's injury." *Brown* Dkt. No. 1171 at ¶ 6.

- **Examples of Website(s) Visited in Incognito Mode.** The crux of each Plaintiff's alleged injury is the specific data collected by Google. Each of the *Brown* plaintiffs alleged non-exhaustive examples of the websites they visited while in Incognito mode to provide Google with fair notice of their claimed injury. *See*, *e.g.*, *Brown* Fourth Amended Complaint, Dkt. No. 886 ("FAC"), ¶ 168 ("Mr. Brown visited several major websites" which "included but are not limited to Apartments.com, CNN.com, and *latimes.com*, and other private websites."); ¶ 178 ("Mr. Davis visited several major websites" which "included various news organizations' sites, crypto-currency sites, and other private websites"); ¶ 183 ("Mr. Castillo visited several major websites" which " included dating websites and other private websites"). Plaintiffs, at a minimum, must plead a general description of the types of websites they visited, as such information is relevant to their consent to the data collection, the nature of their alleged injury and whether Google's alleged interception was highly offensive.

- **Awareness of a Marketplace to Sell Personal Data.** Fundamental to each Plaintiff's alleged injury is their individual awareness of a marketplace to sell the at-issue personal data. Each of the *Brown* plaintiffs alleged an awareness of a marketplace to sell personal data. *See*, *e.g.*, *Brown* FAC ¶ 170 ("Mr. Brown is aware that he is able to sell his own personal

---

[1] Google reserves all rights to seek different and/or additional information in the fact sheets or other information gathering process for the plaintiffs proceeding in state court.

data, via other websites such as Killi (https://killi.io/earn/).”). Plaintiffs' awareness of a market for their information and intent to participate in that market is a key issue for determining economic injury for purposes of statutory standing and whether Plaintiffs have sufficiently alleged contract damages based on alleged loss in value of their personally identifiable information.[2]

***

Because Plaintiffs' claims here focus on ***individual*** damages, specific allegations as to the categories of damages each individual plaintiff allegedly suffered is necessary. Plaintiffs' boilerplate damages claims run the spectrum—emotional distress; loss of the benefit of the bargain; loss or diminution in value of data/content; loss of the right to control dissemination of personal information; and/or other injury, *e.g.*, *Luna* Compl. ¶ 516. But, Google is entitled to know at the outset which categories of damages each individual Plaintiff seeks. This is consistent with the Court's approach in *In re Social Media Adolescent Addiction*, whereby the short-form complaints required plaintiffs to identify “personal injuries alleged to have been caused by Defendants,” *e.g.*, addiction/compulsive use, eating disorder, depression, anxiety, self-harm, child-sex abuse, or CSAM violations. *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation* (the “*In re Social Media Adolescent Addiction*” Cases), 4:22-md-03047-YGR Dkt. No. 177 & Ex. A (Order re Master Short-Form Complaint and Demand for Jury Trial).

Finally, because Plaintiffs overwhelmingly reside outside California—over 85% by

---

[2] *See, e.g.*, *Doe v. Google LLC*, 2024 U.S.Dist.LEXIS 129037, at *27 (N.D. Cal. July 22, 2024) (“The loss of personal data is [] not sufficient to demonstrate economic injury . . . even when . . . there are allegations that the plaintiffs' personal data has a measurable monetary value and there is a market for such data that the plaintiffs could easily access” because “[s]uch allegations fail to explain why any alleged acquisition of personal information would necessarily mean that the plaintiffs could not still sell their data in the market they allege exist.”); *Roe v. Amgen Inc.*, 2024 U.S.Dist.LEXIS 101754, at *22 (C.D. Cal. June 5, 2024) (“[N]umerous courts in this circuit have held that the disclosure of a plaintiff's personal information, absent allegations that the plaintiff intend to participate in the markets to sell such information, does not constitute a monetary or property loss for purposes of UCL standing.”); *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1029 (N.D. Cal. 2012) (plaintiffs failed to allege contract damages where they “cite[d] to . . . an example of a company that offers to sell people's personal information” but did “not allege that they have made any attempt to do so.”).

Plaintiffs' counsel's own estimate—and seek the enforcement of California privacy laws in California courts (5/1/2026 CMC Tr. 21:21-22:1), they should plead the state in which their injury has primarily occurred. This information was pled in the *In re Social Media Adolescent Addiction* short-form complaints and is relevant both to the identification of plaintiffs for potential bellwether selection process and assessing whether Plaintiffs can maintain claims under California law. *In re Social Media Adolescent Addiction* Cases, Dkt. No. 177 & Ex. A at 10 ("Cit(ies) and state(s) where Plaintiffs primarily used Defendants' platforms").

***Response to Plaintiffs' Statement.*** Plaintiffs' proposed short-form complaint is inadequate for three key reasons: *First*, Plaintiffs are wrong that their proposal "tried to track what the Court ordered." The Court ordered the short-form complaints to "provide some measure of detail regarding that plaintiff's injury," *Brown* Dkt. No. 1171 at ¶ 6, and Plaintiffs' proposal fails to do so. Beyond the most basic demographic information, device type, and whether Plaintiffs had a Google Account or used Incognito at all, Plaintiffs propose only that each plaintiff plead whether they used Incognito monthly, weekly or daily and when the Plaintiff's use of Incognito began. While that general information may be relevant to assessing the ***amount*** of damages at issue, it provides no detail on the threshold question of ***whether or how*** each individual Plaintiff was purportedly injured by their Incognito use, or the categories of damages they seek for those alleged injuries.

*Second*, Plaintiffs are wrong that the Master Complaint "includes all information necessary to meet the pleading requirements for these claims." Plaintiffs must allege basic facts to comply with Rule 8 since they wish to remain in federal court. Presently, neither Plaintiffs' Master Complaint nor their proposed short-form complaint describes their injury as was pled by the named plaintiffs in *Brown*. For example, Plaintiffs refuse to provide any detail, even in general terms, regarding the websites visited by each Plaintiff, and insist this information can only be exchanged pursuant to a protective order during discovery.  This is contrary to the pleadings in the publicly-filed *Brown* complaint, where the named plaintiffs alleged examples and general descriptions of websites visited. *E.g.*, *Brown* FAC ¶ 168.

*Third*, Plaintiffs offer various additional reasons why they should not have to plead the same types of individual facts as the named Plaintiffs did in *Brown*. But Plaintiffs are being allowed to

avoid further Rule 12 challenges because the *Brown* complaint previously proceeded past the pleading stage. While Google is heeding this Court's directive and will not file a new Rule 12 motion, *e.g.*, 5/1/2026 CMC Tr. 10:6-10, the current Plaintiffs should not be allowed to benefit from the prior orders about the sufficiency of the *Brown* allegations without pleading the same types of facts as the *Brown* named Plaintiffs.[3]

The *In re Social Media Adolescent Addiction* short-form complaints—which Plaintiffs ignore—are a helpful guide: In that case, the short-form complaints included specific details about each plaintiff's alleged injury, including the state of injury, specific product use, the type of personal injury each plaintiff allegedly suffered, and the specific, individual causes of action asserted. *See In re Social Media Adolescent Addiction* Cases at Dkt. No. 177 & Ex. A. None of those allegations are pled in the Master Complaint or included in Plaintiffs' proposed short-form complaint.

*Timing of Short-Form Complaints.* With respect to the timing of the short-form complaints, if the Court accepts Plaintiffs' proposed short-form complaint, then Google agrees that Plaintiffs should file the short-form complaints within two weeks. If the Court accepts Google's proposed short-form complaint, however, Google opposes Plaintiffs' request for indefinite additional time to file those complaints. Instead, Google proposes that Plaintiffs file the short-form complaints within 60 days of an Order adopting Google's proposal; if not timely filed, the complaint should be dismissed without prejudice.

DATED: May 19, 2026

By: /s/ *Aarti Reddy*

Aarti Reddy (CA Bar No. 274889)
areddy@cooley.com
COOLEY LLP

DATED: May 19 , 2026

By: /s/ *Mark C. Mao*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

---

[3] Plaintiffs confusingly argue that the Court should relax their pleading burden because the absent class members in *Brown* did not plead individual facts. But absent class members do not plead claims in class action complaints. These Plaintiffs chose to file individual complaints for damages after the Court denied certification in *Brown*, and must therefore comply with Rule 8 pleading requirements.

3 Embarcadero Center, 20th Floor
San Francisco, California  94111-4004
Telephone:      +1 415 693 2000
Facsimile:      +1 415 693 2222

*Attorneys for Defendant Google LLC*

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice* forthcoming)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice* forthcoming)
jlee@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel: (213) 629-9040

John A. Yanchunis (*pro hac vice* forthcoming)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice* forthcoming)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
1390 Market Street, Ste 200,
San Francisco, CA 94102
Telephone: (415) 846-3862
Facsimile: (415) 358-6923

*Attorneys for the Luna Plaintiffs*

-11-                                    CASE NO. 4:26-cv-03246-YGR

**ATTESTATION**

I hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


DATED:  May 19, 2026                              By:     */s/ Mark C. Mao*
                                                          Mark Mao